UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------X

VIRGINIA L. GIUFFRE,

  PLAINTIFF,

V.

GHISLAINE MAXWELL,

  DEFENDANT.

----------------------------------------------X

15-cv-07433-RWS

## GHISLAINE MAXWELL'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Laura A. Menninger, Esq.
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Tel: 303.831.7364

Dated: November 30, 2015

# Table of Contents

I.   MS. MAXWELL'S STATEMENTS ARE PRIVILEGED ..........................................9

   A.  The Self-Defense Privilege Protects Ms. Maxwell's Statements..............................9

   B.  The Pre-Litigation Privilege Protects Ms. Maxwell's Statements ..........................14

II.  PLAINTIFF FAILED TO PLAUSIBLY PLEAD DEFAMATION .........................17

   A.  Viewed In Context, the Statements are Non-Actionable .......................................18

   B.  The Complaint Does Not Allege to Whom, Where or in What Manner the January 3 Statement Was Made ...........................................................................................22

   C.  Plaintiff Has Not Properly Pled Special Damages .................................................23

      a.  The Alleged Defamatory Statement is Not Defamatory *Per Se* ..........................23

      b.  Failure to Allege Special Damages Warrants Dismissal ....................................24

CONCLUSION ...........................................................................................................25

*Abrams v. United States*, 250 U.S. 616, 630 (1919) ......................................................... 17

*Adelson v. Harris*, 973 F. Supp.2d 467, 477 (S.D.N.Y. 2013) .......................................... 7

*Armstrong v. Simon & Schuster, Inc.*, 625 N.Y.S.2d 477 (1995) ..................................... 7

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ............................................................... 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ................................................ 7

*Biro v. Conde Nast*, 883 F.Supp.2d 441, 457 (S.D.N.Y. 2012) .................................... 7, 12

*Caplan v. Winslet*, 218 A.D.2d 148, 153 (1st Dep't 1996) ............................................... 13

*Celle v. Fillipino Reporter Enters, Inc.,* 209 F.3d 163 (2d Cir. 2000) ............................. 17

*Club Valencia Homeowners Ass'n, Inc. v. Valencia Associates*, 712 P.2d 1024  (Colo.

    App. 1985) ..................................................................................................................... 13

*Cohen v. Stevanovich*, 772 F.Supp.2d 416, 423 (S.D.N.Y. 2010) ..................................... 7

*Collier v. Possum Cereal Co., Ltd.*, 134 N.Y.S. 847, 853 (1st Dep't 1912) ...................... 9

*Couloute, Jr. v. Rynarz*, No. 11 CV 5986 (HB), 2012 WL 541089, (S.D.N.Y. 2012) ..... 17

*Cruz v. Marchetto*, No. 11 Civ. 8378, 2012 WL 4513484 (S.D.N.Y. 2012) .......... 7, 20, 21

*Culver v. Merrill Lynch & Co.*, 1995 US Dist. LEXIS 10017 (S.D.N.Y. 1995) .............. 13

*Deutsche Asset Mgmt, Inc. v. Callaghan*, No. 01 Civ 4426 CBM, 2004 WL 758303 ...... 16

*Dillon v. City of New York,* 704 N.Y.S.2d 1, 5 (1st Dep't 1999) ................................... 8,18

*Edwards v. Great Northern Ins. Co.*, No. 03 CV 2947 (NG) (RML), 2006 WL 2053717,

    (E.D.N.Y. July 21, 2006) ............................................................................................. 18

*Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541 (4th Cir. 1994) ............................ 8, 11

*Fowler v. New York Herald,* 172 N.Y.S. 423 (1st Dep't 1918) ........................................... 8

*Frechtman v. Gutterman*, 979 N.Y.S.2d 58 (1st Dep't 2014) ........................................... 14

*Front, Inc. v. Khalil*, 24 N.Y.3d 713, 720 (2015) .............................................................. 13

*Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F.Supp.2d 405 (S.D.N.Y. 2009) ................ 8

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 325 (1974) ...................................................... 17

*Hawkins v. City of New York*, No. 99 Civ. 11704 (RWS), 2005 WL 1861855 (S.D.N.Y.

Aug. 4, 2005) ..................................................................................................... 20, 21, 23

*Hoesten v. Best*, 821 N.Y.S.2d 40 (1st Dep't 2006) ........................................................... 12

*Independent Living Aids, Inc. v. Maxi-Aids, Inc.*, 981 F.Supp. 124 (E.D.N.Y. 1997) ...... 19

*International Publishing Concepts, LLC v. Locatelli*, 9 N.Y.S.3d 593, 2015 N.Y. Slip Op.

50049 (N.Y. Sup. Ct. Jan. 15, 2015) .............................................................................. 14

*J.P.R. Cafeteria, Inc. v. Kingsborough Community College of City University of New

York*, 847 N.Y.S.2d 902 (N.Y. Sup. Ct. Aug. 21, 2007) ................................................ 21

*Kane v. Orange Cnty. Publ'n*, 232 A.D.2d 526, 527 (2d Dept. 1996) ................................ 8

*Keohane v. Stewart*, 882 P.2d 1293 (Colo. 1994) ............................................................. 17

*Kforce, Inc. v. Alden Personnel, Inc.*, 288 F.Supp.2d 513, 516 (S.D.N.Y. 2003) ...... 16, 21

*Kirk v. Heppt*, 532 F.Supp.2d 586 (S.D.N.Y. 2008) .......................................................... 14

*Krepps v. Reiner*, 588 F.Supp.2d 471, 483 (S.D.N.Y. 2008) ............................................. 7

*Liberman v. Gelstein*, 80 N.Y.2d 429, 590 (N.Y. 1992) .................................................... 22

*McNamee v. Clemens*, 762 F.Supp.2d 584, 601 (E.D.N.Y. 2011) ..................................... 19

*Mencher v. Chesley*, 85 N.Y.S.2d 431 (N.Y. Sup. Ct. 1948) .............................................. 9

*Orenstein v. Figel,* 677 F.Supp.2d 706, 711 (S.D.N.Y. 2009) ............................................ 8

*Preston v. Hobbs,* 146 N.Y.S. 419 (1st Dep't 1914) ............................................................ 9

iv

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F.Supp.2d 489, 550 (S.D.N.Y. 2011) .................................................................................................. 22

*Sexter v. Warmflash, P.C. v. Margrabe*, 828 N.Y.S.2d 315 (1st Dep't 2007) ................. 14

*Shenkman v. O'Malley,* 157 N.Y.S.2d 290, 297-98 (1st Dep't 1956) ................................. 8

*Siegel v. Metropolitan Life Ins. Co.,* 32 N.Y.S.2d 658 (1st Dep't 1942) ........................... 8

*Thai v. Cayre Group, Ltd.*, 726 F.Supp.2d 323, 330 (S.D.N.Y. 2010) ............................. 23

*Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010) .............................. 16

*Thompson v. Bosswick*, 855 F.Supp.2d 67, 77 (S.D.N.Y. 2012) ................................ 21, 22

*TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1182-83 (10th Cir. 2007) ..................... 9

*Treppel v. Biovail Corp.*, No. 03 Civ. 3002 (PKL), 2005 WL 2086339, at *7 (S.D.N.Y. Aug. 30, 2005) ............................................................................................................... 7

*U.S. S.E.C. v. Power*, 525 F. Supp.2d 415, 418 (S.D.N.Y. 2007) ...................................... 3

*Wanamaker v. Columbian Rope Co.*, 713 F.Supp.533, 545 (S.D.N.Y. 1989) ................. 18

*Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 62 (2d Cir. 1993) ................................... 11

*Williams v. Burns*, 463 F.Supp. 1278, 1282 (D. Colo. 1979) .............................................. 9

*Yuan v. Rivera*, 1998 WL 63404, at *5 (S.D.N.Y. Feb. 17, 1998) ................................... 12

*Zerr v. Johnson*, 894 F. Supp. 374, 376 (D. Colo. 1995) ................................................. 16

<u>**INTRODUCTION**</u>

The Plaintiff in this case falsely and maliciously launched a media campaign

several years ago in the United Kingdom accusing Defendant Ghislaine Maxwell of

serious and criminal sexual abuse from 1999-2002.  Plaintiff repeated those allegations in

litigation pleadings to which Ms. Maxwell was not a party and which since have been

stricken as "immaterial and impertinent."  Those pleadings were widely circulated to the

public by various media outlets in the United States and abroad, further generating

interest in Plaintiff's spurious claims.  Plaintiff's allegations of sexual abuse extend

beyond just Ms. Maxwell and encompass many notable public figures, such as Prince

Andrew and Harvard Law Professor Alan Dershowitz, as well as un-named "numerous

American politicians, powerful business executives, foreign presidents, a well-known

Prime Minister, and other world leaders."  Plaintiff's targeting of such notable public

figures has served only to enhance the media spotlight on the false accusations directed at

Ms. Maxwell.

In response to Plaintiff's published claims, Ms. Maxwell (like Prince Andrew and

Professor Dershowitz), issued general denials to the allegations.  Those two denials form

the basis of this defamation action:  Plaintiff claims it defamatory for Ms. Maxwell to

have issued statements through her London agent that Plaintiff's allegations "are untrue,"

"shown to be untrue" and "obvious lies."

Long-settled New York law renders denials such as Ms. Maxwell's privileged

under the law and requires dismissal of this defamation action.  As one commentator

wrote in 1881, "If I am attacked in a newspaper, I may write to that paper to rebut the

charges, and I may at the same time retort upon my assailant, when such retort is a necessary part of my defense, or fairly arises out of the charges he has made against me." William Blade Odgers, *A Digest of the Law of Libel and Slander* (1st Am. ed. Bigelow 1881). Because Ms. Maxwell's denials were proportionate, relevant and not excessively publicized replies to Plaintiff's claims, rendered without malice, she is entitled to the privilege of self-defense and this Complaint should be dismissed. Moreover, because the denials when viewed in context demonstrate that they were pre-litigation demands to the British newspapers to cease and desist, they likewise are entitled to the litigation privilege.

Finally, the Complaint falls woefully short of a well-pled defamation claim. New York law makes clear that general denials, as compared to specific defamatory denials, are non-actionable in defamation. Plaintiff also neglected to state when, to whom and in what manner the statements were made and she omitted any special damages or facts establishing defamation *per se*.

Each of these reasons forms a separate and independent basis to dismiss the Complaint pursuant to Rule 12(b)(6). Ms. Maxwell seeks this Court's assistance in serving as a gatekeeper to dismiss this spurious defamation claim. Be clear: Maxwell absolutely denies VR's claims made about her in pleadings filed in cases to which she was not a party and in paid media interviews to trashy British publications.

"General denials are not actionable" in defamation. General denials issued as a part of a cease and desist to the news organizations publishing the false and salacious accusations are privileged. No special damages and no defamation *per se*.

# FACTUAL ALLEGATIONS[1]

Plaintiff has repeatedly and falsely accused Ms. Ghislaine Maxwell of sexual abuse occurring between 1999 and 2002.  Since 2009, Plaintiff has set forth these false claims in pleadings filed in various federal civil actions in Florida.  Compl. ¶ 8-21, 26-27.  Ms. Maxwell was not a party to any of those litigations: not the criminal case against Mr. Epstein (Compl. ¶ 14), any non-prosecution agreement between Mr. Epstein and the U.S. Attorney's Office (Compl. ¶¶ 11-13), the litigation concerning the Crime Victim's Rights Act (CVRA) still pending in U.S. District Court for the Southern District of Florida (Compl. ¶¶ 15-16), and not Plaintiff's 2009 civil suit against Mr. Epstein (Compl. ¶¶ 17-21).  No criminal charges were ever brought against Ms. Maxwell, and Plaintiff never sought to join Ms. Maxwell to any of her civil matters involving Mr. Epstein.

Plaintiff's accusations against Ms. Maxwell were not confined to legal proceedings, however.  Beginning in or around March 2011, Plaintiff granted "exclusive" interviews to the British press, using her real name, during which she repeated her false allegations against Ms. Maxwell and also levied accusations against countless prominent public figures such as Prince Andrew, Harvard Law professor Alan Dershowitz, and "a well-known businessman (whose pregnant wife was asleep in the next room), a world-renowned scientist, a respected liberal politician and a foreign head of state."  *See* Declaration of Laura A. Menninger  ("Menninger Decl.") Ex. A, at 3.

---

[1] This statement of facts is based on (1) the allegations set forth in the Complaint; and (2) documents referenced in the Complaint, but which were not attached to the pleading.  *U.S. S.E.C. v. Power*, 525 F. Supp.2d 415, 418 (S.D.N.Y. 2007) (J. Sweet) (On a motion to dismiss, "[t]he Court may also consider any documents…incorporated by reference into the complaint.").  Further, pursuant to Fed. R. Civ. P. 12(d), if the motion is treated as one for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

In response to Plaintiff's 2011 British tabloid interviews, on March 9, 2011 a "Statement on Behalf of Ghislaine Maxwell" was issued by Devonshires Solicitors ("2011 Statement"). Menninger Decl. Ex. B.[2]  The 2011 Statement provides in its entirety:

> Ghislaine Maxwell denies the various allegations about her that have appeared recently in the media.  These allegations are all entirely false.
>
> It is unacceptable that letters sent by Ms. Maxwell's legal representatives to certain newspapers pointing out the truth and asking for the allegations to be withdrawn have simply been ignored.
>
> In the circumstances, Ms. Maxwell is now proceeding to take legal action against those newspapers.
>
> "I understand newspapers need stories to sell copies.  It is well known that certain newspapers live by the adage, 'why let the truth get in the way of a good story.' However, the allegations made against me are abhorrent and entirely untrue and I ask that they stop," said Ghislaine Maxwell.
>
> "A number of newspapers have shown a complete lack of accuracy in their reporting of this story and a failure to carry out the most elementary investigation or any real due diligence.  I am now taking action to clear my name," she said.

Plaintiff did not bring suit against Ms. Maxwell for defamation based on the 2011 Statement.

More than three years later, on December 30, 2014, Plaintiff moved under Rule 21 to join the 2008 CVRA litigation in the U.S. District for the Southern District of Florida ("Joinder Motion"). Compl. ¶¶ 16, 26, 27.  Plaintiff included in her Joinder Motion "lurid details" concerning her supposed sexual abuse by Ms. Maxwell and other non-parties to that CVRA action, including professor Alan Dershowitz, "numerous American politicians, powerful business executives, foreign presidents, a well-known Prime Minister, and other world leaders." Menninger Decl. Ex. C at 4-5.  On April 7, 2015, U.S. District Court Judge Marra denied Plaintiff's Joinder Motion, ordered the portions of the Joinder Motion pertaining to non-parties

---

[2] Although the Complaint does not explicitly mention the 2011 Statement, it appears Plaintiff believes it to be the "additional" statement referenced on paragraphs 30 and 31 based on her production of the statement as a part of her Rule 26 disclosures.

such as Ms. Maxwell stricken as "immaterial and impertinent," and restricted the documents mentioning those "lurid details" from public access. *Id.*; Menninger Decl. Ex.D. Despite the court's attempt to shield the false statements, the bell could not be un-rung. The same day the Joinder Motion was filed, British and U.S. press began publishing numerous stories based on its contents. *See, e.g., Politico*, "Woman Who Sued Convicted Billionaire Over Sex Abuse Levels Claims at his Friends." (Dec. 31, 2014).[3]

According to the Complaint, it was on January 3, 2015, a few days after the Joinder Motion was publicly filed, that Ms. Maxwell is alleged to have "spoken through her authorized agent" to "issue an additional false statement to the media and public." Compl. ¶ 30. According to the Complaint, this January 3, 2015 Statement "contained the following deliberate falsehoods": (a) Plaintiff's sworn allegations "against Ghislaine Maxwell are untrue," (b) the allegations have been "shown to be untrue;" and (c) Plaintiff's "claims are obvious lies." *Id.* The January 3 Statement also "incorporated by reference" an "original response to the lies and defamatory claims" made by Ms. Maxwell, which response purportedly had described Plaintiff's allegations as "entirely false" and "entirely untrue." Compl. ¶ 31. Copies of the entire January 3 Statement and the "original response" were not included in or attached to the Complaint. The Complaint also did not detail where the January 3 Statement was made, to whom it was made, nor any factual assertion regarding its publication by any news media.

The Complaint supplies one additional purportedly defamatory statement. According to Plaintiff, on January 4, 2015, "a reporter on a Manhattan street" "asked Ms. Maxwell about [Plaintiff's] allegations" and Ms. Maxwell "responded" with the phrase: "I am referring to the statement that we made" ("January 4 Statement"). Compl. ¶ 37. This video was published by

---

[3] Available at http://www.politico.com/blogs/under-the-radar/2014/12/woman-who-sued-convicted-billionaire-over-sex-abuse-levels-claims-at-his-friends-200495 (accessed on November 30, 2015).

the *New York Daily News*.  (*Id.*)  Indeed, although not detailed in the Complaint, the *New York Daily News* website contains a video entitled "Ghislaine Maxwell declines comment on allegations she is a madam."[4]  The filmed portion of the encounter begins with Ms. Maxwell stating that "I wish you a happy new year and thank you so much;" whatever is said prior to that statement was not recorded.  A voice then inquires, "so you're basically not commenting, is that…"; Ms. Maxwell's response, perhaps "I'm referring to the statement that was made," is barely audible.  Another person questions, "is any of that true?"  Ms. Maxwell then responds "C'mon guys" and walks away.  According to the Complaint, this "response" demonstrates Ms. Maxwell's "continued…campaign to falsely and maliciously discredit" Plaintiff.  Compl. ¶ 37.

The Complaint does not allege damages in detail.  It generically asserts that Plaintiff has suffered "economic damage, psychological pain and suffering, mental anguish and emotional distress, and other direct and consequential damages."  Compl. Count 1 ¶ 19.  Further, Plaintiff claims she "incorporated an organization called Victims Refuse Silence, Inc., a Florida not-for-profit corporation" on December 23, 2014, approximately 10 days before the January 3 Statement.  Compl. ¶¶ 24-25.  Plaintiff's role with the corporation, her profession, and any basis for Ms. Maxwell to even know of the corporation's existence are not alleged, but the Complaint baldly asserts that the January 3 and 4 Statements "tended to injure [Plaintiff] in her professional capacity as the president of a non-profit corporation designed to help victims of sex trafficking."  Compl. Claim 1, ¶ 11.

## ARGUMENT

To survive dismissal, "a complaint must contain sufficient factual matter…to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)

_____

[4] Available at http://www.nydailynews.com/news/world/alleged-madame-accused-supplying-prince-andrew-article-1.2065505 (accessed November 30, 2015).

6

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility" means the claim must be supported by facts that establish more than "a sheer possibility that a defendant has acted unlawfully." *Cruz v. Marchetto*, No. 11 Civ. 8378, 2012 WL 4513484, at *3 (S.D.N.Y. Oct. a, 2012) (quoting *Cohen v. Stevanovich*, 772 F.Supp.2d 416, 423 (S.D.N.Y. 2010)).

In the defamation context, the Court acts as a gatekeeper and should dismiss claims in which the challenged statements are not "reasonably susceptible of a defamatory meaning." *Krepps v. Reiner*, 588 F.Supp.2d 471, 483 (S.D.N.Y. 2008) (Sweet, J.) (citing *Treppel v. Biovail Corp.*, No. 03 Civ. 3002 (PKL), 2005 WL 2086339, at *7 (S.D.N.Y. Aug. 30, 2005)). As courts in this district have recognized, there is "particular value" to resolving defamation claims at the pleading stage, as protracted litigation can have a chilling effect on the exercise of constitutionally protected freedoms. *Biro v. Conde Nast*, 883 F.Supp.2d 441, 457 (S.D.N.Y. 2012) (quoting *Armstrong v. Simon & Schuster, Inc.*, 625 N.Y.S.2d 477, 481 (N.Y. 1995).

# I.    MS. MAXWELL'S STATEMENTS ARE PRIVILEGED[5]

To succeed on a claim for libel, or defamation based on written statements, pursuant to New York law, a plaintiff must establish the "elements [of] a false statement, published *without privilege* or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation per se."

---

[5] Under New York's choice-of-law rules for defamation actions, the general rule is that "the state of the plaintiff's domicile (in this case, Colorado) will usually have the most significant relationship to the case" and therefore that state's law will govern. *Adelson v. Harris*, 973 F. Supp.2d 467, 477 (S.D.N.Y. 2013) (internal quotations omitted). However, in multistate cases such as this in which the alleged defamatory statement was published nationally, there is only a presumptive rule that the law of plaintiff's domicile applies. *Id.* That presumption may not hold when some other state has a more significant relationship to the issues or the parties. *Id.* Here, because Ms. Maxwell is a resident of New York, and one of the purported statements was made in New York, this state has arguably a more substantial relationship to the alleged tort than does Colorado. Nonetheless, the laws of Colorado and New York are substantially similar. For these reasons, Ms. Maxwell asks the Court to apply New York law, but will note any differences between the two laws when applicable.

*Dillon v. City of New York,* 704 N.Y.S.2d 1, 5 (1st Dep't 1999) (emphasis added).  "[I]n light of the incorporation of a lack of privilege into the elements of a defamation claim," a Court may properly dismiss a defamation such a claim pursuant to Rule 12(b)(6) where a qualified privilege is established.  *Orenstein v. Figel,* 677 F.Supp.2d 706, 711 (S.D.N.Y. 2009); *see also Fuji Photo Film U.S.A., Inc. v. McNulty,* 669 F.Supp.2d 405 (S.D.N.Y. 2009).

Ms. Maxwell's Statements are privileged both under the New York self-defense privilege and the pre-litigation privilege and the Complaint should therefore be dismissed.

### A.    The Self-Defense Privilege Protects Ms. Maxwell's Statements

"Every man has a right to defend his character against false aspersion.  It may be said that this is one of the duties that he owes to himself and to his family.  Therefore communications made in fair self-defense are privileged.  If I am attacked in a newspaper, I may write to that paper to rebut the charges, and I may at the same time retort upon my assailant, when such retort is a necessary part of my defense, or fairly arises out of the charges he has made against me."  William Blake Odgers, *A Digest of the Law of Libel and Slander* (1st Am. ed. Bigelow 1881).

New York, along with numerous other jurisdictions[6] and the Restatement (Second) of Torts, recognizes a qualified privilege to respond in self-defense to verbal defamatory attacks levied by another upon the speaker.  *See, e.g.*, *Kane v. Orange Cnty. Publ'n*, 232 A.D.2d 526, 527 (2d Dept. 1996) ("[S]ince the open letter was the [defendant's] response to unfavorable publicity against him—publicity concededly generated 'with the cooperation of plaintiffs'—it was covered by a qualified privilege."); *Shenkman v. O'Malley,* 157 N.Y.S.2d 290, 297-98 (1st Dep't 1956); *Siegel v. Metropolitan Life Ins. Co.,* 32 N.Y.S.2d 658 (1st Dep't 1942); *Fowler v. New York Herald,* 172 N.Y.S. 423 (1st Dep't 1918); *Preston v. Hobbs,* 146 N.Y.S. 419 (1st Dep't

---

[6] *See Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 155-60 & n.19 (4th Cir. 1994) (collecting cases).

1914); *Mencher v. Chesley*, 85 N.Y.S.2d 431 (N.Y. Sup. Ct. 1948) ("The pertinent authorities hold that a person subjects his own motives to discussion when he makes a public attack upon another. Legitimate self-defense is not limited to a mere denial of the charges, but it may include a proper counterattack in the forum selected by the plaintiff."); *see also* Restatement (Second) of Torts § 594 cmt. k (1977) ("A conditional privilege exists under the rule stated in this Section when the person making the publication reasonably believes that his interest in his own reputation has been unlawfully invaded by another person and that the defamatory matter that he publishes about the other is reasonably necessary to defend himself. The privilege here is analogous to that of self-defense against battery, assault or false imprisonment . . . Thus the defendant may publish in an appropriate manner anything that he reasonably believes to be necessary to defend his own reputation against the defamation of another, including the statement that his accuser is an unmitigated liar.").[7]

In *Collier v. Possum Cereal Co., Ltd.*, 134 N.Y.S. 847, 853 (1st Dep't 1912), the self-defense privilege was explained:

> The important question is whether the defendant had the right to impugn the motives of its assailant, if it did so honestly without malice and for the sole purpose of repelling the assault upon it, and not with the view of injuring the plaintiff. One who makes a public attack upon another subjects his own motives to discussion. It is a contradiction in terms to say that the one attacked is privileged only to speak the truth, and not to make a counter attack, or that legitimate self-defense consists only in denial of the charge or a statement of what is claimed to be the truth respecting its subject-matter. One in self-defense is not confined to parrying the thrusts of his assailant. Of course, the counter attack must not be unrelated to the charge, but surely the motives of the one making it

---

[7] Although the Colorado appellate courts apparently have not yet ruled on the issue of self-defense privilege, the 10th Circuit has deemed it a "safe presumption" that Colorado Supreme Court would adopt the various provisions of the Restatement (Second) of Torts (1977) as part of "its common law of defamation" based on its decisions and Uniform Jury Instructions. *See TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1182-83 (10th Cir. 2007); *see also Williams v. Burns*, 463 F.Supp. 1278, 1282 (D. Colo. 1979) (recognizing qualified privilege defense for protecting one's interest).

> are pertinent. The plaintiff selected the forum for the dispute, and in that forum it would certainly tend to repel, or minimize the harmful tendency of the charges to show that the one making them was actuated by an improper motive.

*See also* Sack, Robert D., *Sack on Defamation: Libel, Slander and Related Problems* (Practicing Law Inst., Apr. 2015 ed.) at Kindle Loc. 20357-20370 ("A person also has a right to defend himself or herself from charges of unlawful activity…The right to defend oneself against defamation is a recognized interest. An individual is privileged to publish defamatory matter in response to an attack upon his or her reputation; the speaker is given more latitude in such a situation than if the statements were not provoked.").

Each of the Statements attributed to Ms. Maxwell and her representatives regarding Plaintiff was issued in self-defense. Plaintiff ignited this controversy by asserting in the British press her public accusations that Ms. Maxwell had committed sexual abuse. Menninger Decl. Ex. A. (Plaintiff's interview with Daily Mail) Plaintiff further fanned the flames by filing in U.S. federal court on December 30, 2014 "immaterial and impertinent" "lurid details" in a public pleading which again accused Ms. Maxwell of committing sexual abuse. Menninger Decl. Ex. C. Given her many previous dealings with the media on this topic, Plaintiff clearly filed those public pleadings with knowledge (or more probably an intention) that such materials would be published by the press. Compl. ¶¶ 26, 27. Ms. Maxwell's January 3 Statement, according to the Complaint, states that the allegations "against Ghislaine Maxwell are untrue,'" the claims are "obvious lies," have been "shown to be untrue," and the "claims are all obvious lies." Each attributed statement responds directly to allegations and claims made by Plaintiff. Compl. ¶ 31. Likewise to the extent the claimed statement that "Ghislaine Maxwell's original response to the lies and defamatory claims remains the same" (Compl. ¶ 32) refers to an earlier statement describing Plaintiff's "factual assertions as 'entirely false' and 'entirely untrue," those also

respond directly to allegations and claims made by Plaintiff.[8]  And the January 4 Statement refers

to another "statement" and is therefore entitled to the same privileges as any other "statement."

Nor has Plaintiff demonstrated that the self-defense privilege was "abused" so as to

remove the defense.  According to the Second Circuit (interpreting New York law), once the

defendant has proved that she is entitled to a qualified privilege, there arises a rebuttable

presumption of good faith that may constitute a complete defense.  In order to rebut this

presumption, the plaintiff must demonstrate two things:  (1) that the statement was false, and (2)

that the defendant abused its qualified privilege. *Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57,

62 (2d Cir. 1993) (citations omitted).  With regard to self-defense, the "privilege may be lost…if

the reply:  (1) includes substantial defamatory matter that is irrelevant or non-responsive to the

initial statement; (2) includes substantial defamatory material that is disproportionate to the

initial statement; (3) is excessively publicized; or (4) is made with malice in the sense of spite or

ill will."  *Sack, supra*; Restatement (Second) of Torts, §§ 599, 603-605A (1977).

Here, Plaintiff has not—and cannot—establish that the privilege was lost.  Each of the

statements attributed to Ms. Maxwell is relevant, directly responsive, and proportional to

Plaintiff's accusations.  That the statements are "untrue," "obvious lies," "shown to be untrue" or

were "denied" are each the type of statements that the self-defense privilege seeks to protect.

*Foretich*, at 1560 ("To be responsive, a reply's contents must clearly relate to its supposed

objective—blinding the initial attack and restoring one's good name.  Statements that simply

deny the accusations, or directly respond to them, or express one's impressions upon first hearing

them are certainly responsive."); Restatement (Second) of Torts § 594 cmt. k ("The defendant

may publish…the statement that his accuser is an unmitigated liar.").  Further, the statements

---

[8] The January 4 Statement similarly refers to an earlier statement.  Compl. ¶ 37 ("I am referring to the statement that we made."))

contain no substantial defamatory material, much less a disproportionate amount.  Plaintiff has not alleged to whom the statements were made and thus cannot show that the supposed Maxwell statements were "excessively publicized."  In any event, given the viral circulation of Plaintiff's allegations against Ms. Maxwell, as any cursory internet search can attest, it would be impossible to argue that Ms. Maxwell's statements were "excessively publicized" relative to the accusations to which they were responsive.

Finally, Plaintiff offers no allegations to support her conclusory assertion that the Statements were made with "malice in the sense of spite or ill will."  To sufficiently plead "actual malice" the plaintiff must set forth "non-conclusory allegations that support a plausible inference of actual malice."  *Biro v. Conde Nast*,  2014 WL 4851901 at *2.  Bare allegations that the defendant knew or should have known that the statements were false is insufficient.  *Id.*[9]  To establish malice, a defamed plaintiff must show…that such malicious motivation was the one and only cause for the publication." *Hoesten v. Best*, 821 N.Y.S.2d 40 (1st Dep't 2006).  Given the content and context of the Statements, there are no grounds to conclude that a malicious motivation was the cause of their publication.  The January 3 Statement concludes that "Miss Maxwell denies allegations of an unsavory nature which have appeared in the British press and elsewhere and reserves her right to seek redress at the repetition of such claims."  Menninger Decl. Ex. E.  The clear motivation for the Statement was to deny the allegations and to place British newspapers on notice that they may be sued for repeating Plaintiff's false claims. Nothing in the Statement evinces a sense that it was published out of spite or ill will towards Plaintiff.  The Complaint's repeated use of the word "malice" and "ill-will" are nothing more than conclusory allegations based on surmise, conjecture and suspicion and do not suffice to

---

[9] Also, merely repeating the same conclusory allegation, as done in the Complaint, is equally insufficient. *Yuan v. Rivera*, No. 96 Civ. 6628 (HB) (LB), 1998 WL 63404, at *5 (S.D.N.Y. Feb. 17, 1998) ("This conclusory allegation, repeated throughout the complaint, falls shy of [stating a claim.]").

establish malice.  *See Culver v. Merrill Lynch & Co.*, 94 CIV. 8124 (LBS), 1995 WL 422203, at

*6 (S.D.N.Y. July 17, 1995) ("[A] complaint must contain more than conclusory allegations

based upon surmise, conjecture and suspicion.").

      The self-defense privilege thus applies and is reason enough to dismiss the Complaint.

### B.      The Pre-Litigation Privilege Protects Ms. Maxwell's Statements

      Statements made by attorneys and parties pertinent to good faith anticipated litigation are

conditionally privileged.[10]  Reasoning that "[w]hen litigation is anticipated, attorneys and parties

should be free to communicate in order to reduce or avoid the need to actually commence

litigation . . .Communication during this pre-litigation phase should be encouraged and not

chilled by the possibility of being the basis of a defamation suit."  *Front, Inc. v. Khalil*, 24

N.Y.3d 713, 720 (N.Y. 2015).[11]  The Court of Appeals in *Khalil* expressly declined to apply the

"general malice standard" to the pre-litigation privilege.  Instead, the court held the qualified

privilege is lost only where the party opposing dismissal "proves that the statements were not

pertinent to a good faith anticipated litigation."  *Id.*  The Court of Appeals then upheld the

dismissal of a defamation complaint premised upon pre-litigation letters including a demand and

cease-and-desist notice because the statements contained in these documents were privileged.

      In cases preceding *Khalil*, New York appellate courts made clear the litigation privilege

covers statements made in connection to "pending *or contemplated* litigation," *Caplan v.*

*Winslet*, 218 A.D.2d 148, 153 (1st Dep't 1996) (emphasis added), including "all pertinent

---

[10] Colorado law also recognizes a privilege for communications made "in reference to the subject matter of the *proposed* or pending litigation" and therefore, Ms. Maxwell's Statements are privileged whether this Court applies New York or Colorado law.  *See Club Valencia Homeowners Ass'n, Inc. v. Valencia Associates*, 712 P.2d 1024, 1027 (Colo. App. 1985) ("The purpose of this privilege…is to afford litigants the utmost freedom of access to the courts to preserve and defend their rights…").

[11] In England, where all statements except the January 4 Statement one were made, the litigation privilege is broader than in the United States.  As Justice Cardozo recognized, there the privilege exists whether the statements are relevant to the judicial proceedings or not.  *Andrews v. Gardiner*, 224 N.Y. 440, 445 (N.Y. 1918).

communications among the parties, counsel, witnesses and the court," regardless of "[w]hether a statement was made in or out of court, was on or off the record, or was made orally or in writing." *Frechtman v. Gutterman*, 979 N.Y.S.2d 58 (1st Dep't 2014) (quoting *Sexter v. Warmflash, P.C. v. Margrabe*, 828 N.Y.S.2d 315 (1st Dep't 2007)).  In *International Publishing Concepts, LLC v. Locatelli*, 9 N.Y.S.3d 593, 2015 N.Y. Slip Op. 50049 at *3-4 (N.Y. Sup. Ct. Jan. 15, 2015), letters and emails which detailed likely litigation and an intent to sue were extended the same pre-litigation privilege although sent to two non-parties who were only potentially affected by the litigation or witnesses to it.  *See also Kirk v. Heppt*, 532 F.Supp.2d 586 (S.D.N.Y. 2008) ("The privilege is broad, and embraces anything that may possibly or plausibly be relevant to the litigation.") (internal citations omitted).

Ms. Maxwell's 2011 Statement, incorporated by reference into the January 3 Statement, was issued by Devonshires Solicitors in London and explicitly sought to place the British tabloids on notice that litigation against them was forthcoming should they persist in printing Plaintiff's falsehoods. Menninger Decl. Ex. B.  The general denial of the first paragraph ("Ghislaine Maxwell denies the various allegations about her that have appeared recently in the media.  These allegations are all entirely false.") is followed by four paragraphs directly threatening litigation against newspapers:

> It is unacceptable that letters sent by Ms. Maxwell's legal representatives to certain newspapers pointing out the truth and asking for the allegations to be withdrawn have simply been ignored.
>
> In the circumstances, Ms. Maxwell is now proceeding to take legal action against those newspapers.
>
> "I understand that newspapers need stories to sell copies.  It is well known that certain newspapers live by the adage, 'why let the truth get in the way of a good story.'  However, the allegations made against me are abhorrent and entirely untrue and I ask that they stop," said Ghislaine Maxwell.

> "A number of newspapers have shown a complete lack of accuracy in their reporting of this story and a failure to carry out the most elementary investigation or any real due diligence. I am now taking action to clear my name," she said.

*Id.*

A statement issued by attorneys, asking the newspapers to cease and desist publication of Plaintiff's false allegations, stating an intent to "take legal action against those newspapers," pointing out the lack of accuracy in reporting and duly diligent reporting, and expressing again an intent to "take[e] action to clear" her name all demonstrate that the statement was "pertinent to good faith anticipated litigation" and should be afforded a litigation privilege. The newspapers were the potential parties to an action for repetition of the falsehoods, not some third-parties unaffiliated with potential claims held by Ms. Maxwell. *Cf. Kirk*, 532 F.Supp.2d at 594 (statements to malpractice insurance carrier entitled to privilege).

The January 3 Statement, issued by the same spokesperson as the 2011 Statement, likewise represents a statement "pertinent to" anticipated good-faith litigation. Following another general denial (i.e., the "allegations are untrue"), the statement goes on to say that they are "obvious lies" and "should be treated as such and not publicized as news, as they are defamatory. Ghislaine Maxwell's original response to the lies and defamatory statements remains the same. Maxwell strongly denies allegations of an unsavoury nature, which have appeared in the British press and elsewhere *and reserves her right to seek redress at the repetition of such claims.*" Menninger Decl. Ex. E. These statements are pertinent to anticipated litigation against the press who was reporting Plaintiff's falsehoods and should be afforded the same qualified privilege. *See Locatelli*, *supra* at *4 ("While such an injunction has not yet been sought, that fact should not be outcome determinative. Rather, it appears to have been intended at the time that these letters and emails were written…").

Finally, the January 4 Statement, in response to a request for comment as she left her apartment, "I am referring to the statement that was made," should be afforded the same privilege as any undefined "statement" to which it referred.

## II.     PLAINTIFF FAILED TO PLAUSIBLY PLEAD DEFAMATION

Under either New York or Colorado law, to state a cause of action for defamation, a plaintiff must prove: (1) defendant made a defamatory statement of fact concerning the plaintiff; (2) defendant published the statement to a third party; (3) defendant acted with the requisite fault; (4) the statement was false; and (5) resulting injury to the plaintiff. *Kforce, Inc. v. Alden Personnel, Inc.*, 288 F.Supp.2d 513, 516 (S.D.N.Y. 2003); *Zerr v. Johnson*, 894 F. Supp. 374, 376 (D. Colo. 1995). Regarding injury, plaintiffs must prove special damages—meaning economic or financial loss—unless the defamation falls within a category of defamation *per se*. *Kforce, Inc.,* 288 F. Supp.2d at 516; *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010) (defining special damages). Defamation *per se* constitutes a statement "which tends to disparage a person in the way of his office, profession or trade." *Id.* To be *per se* actionable, there must therefore be a direct link between the statement and the plaintiff's particular profession. *Id.*

Although state law applies to the merits of defamation claims, Rule 8 of the Federal Rules of Civil Procedure governs the pleading requirements in federal court. Under Rule 8, defamation allegations must be "simple, concise and direct," allowing the defendant sufficient notice of the communications complained of to allow the defendant to defend him or herself. *Deutsche Asset Mgmt, Inc. v. Callaghan*, No. 01 Civ 4426 CBM, 2004 WL 758303, at *12 (S.D.N.Y. April 7, 2004). Importantly, to meet this standard, plaintiff must specify who made the statements, when they were made, to whom they were made and in what context they were made. *Id.*

Here, the defamation claim is fatally deficient for three independent reasons: (1) when viewed in context, the statements are not actionable defamatory statements; (2) the Complaint does not allege to whom or where the statements were made; and (3) the Complaint lacks either allegations of special damages or facts from which defamation *per se* could be established. Each of these three faults, standing alone, is sufficient to warrant dismissal for failure to state a claim.

## A.  Viewed In Context, the Statements are Non-Actionable

The Complaint improperly contains only excerpts of Ms. Maxwell's Statements, thereby depriving the Court of the ability to adequately determine whether the Statements are actionable. The Supreme Court has long recognized the inherent difficulty in deciding defamation claims given the delicate balance between "the law of defamation and the freedoms of speech and press protected by the First Amendment." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 325 (1974). On the one hand, the law of defamation is designed to "redress and compensate individuals who suffered serious harm to their reputations due to the careless or malicious communications of others." *Keohane v. Stewart*, 882 P.2d 1293 (Colo. 1994). On the other hand, the First Amendment protects "society's interest in encouraging and fostering vigorous public debate." *Id.* (citing *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J. dissenting)).

Due to the complexity of these competing interests, it is essential for courts to resolve as a matter of law whether the particular words alleged to be defamatory are in fact defamatory— *i.e.* designed to cause reputational injury. *See Celle v. Fillipino Reporter Enters*, *Inc.,* 209 F.3d 163, 177 (2d Cir. 2000). To do so, defamatory statements must be considered in the context of the entire communication and the circumstances in which they were written. *Id.* at 178; *see also Keohane*, 882 P.2d at 1299. As one court aptly stated, "Courts will not strain to find defamation where none exists." *Couloute, Jr. v. Rynarz*, No. 11 CV 5986 (HB), 2012 WL 541089, at *5 (S.D.N.Y. Feb. 17, 2012).

In this case, Plaintiff is essentially asking this Court to "strain to find defamation" based on only snippets of Ms. Maxwell's January 3 and January 4 Statements provided in the Complaint. *See* Compl. ¶ 30. Her failure to provide the context within which the Statements were delivered alone warrants dismissal. *Dillon v. City of New York*, 261 A.D.2d 34, 39-40 (1st Dep't 1999) (plaintiff's failure to set forth the entirety of the alleged defamatory statement resulted in only vague and conclusory allegations requiring dismissal); *Edwards v. Great Northern Ins. Co.*, No. 03 CV 2947 (NG) (RML), 2006 WL 2053717, at *5 (E.D.N.Y. July 21, 2006) (dismissing defamation claim for plaintiff's failure, among other things, to plead the context in which the statements were made); *Wanamaker v. Columbian Rope Co.*, 713 F.Supp.533, 545 (S.D.N.Y. 1989) (same).

When Ms. Maxwell's statements are actually viewed in context, it becomes clear why Plaintiff only provided excerpts. The Complaint describes Ms. Maxwell's Statements as an attack on Plaintiff's honesty and truthfulness and a "concerted and malicious campaign to discredit Giuffre." Compl. ¶¶ 28, 29. In reality, the statements are far from an attack by Ms. Maxwell. When read in context and as set forth above, it is clear that the January 3 Statement was issued in self defense and in anticipation of good-faith litigation against the news media. The January 3 Statement appears, *inter alia*, in a telegraph article entitled "Prince Andrew denies having relations with 'sex slave' girl." Menninger Decl. Ex. E. The 12-page article contains denials by Prince Andrew and Alan Dershowitz. Buried among those allegations is the following response by Ms. Maxwell's spokesman:

> The allegations made against Ghislaine Maxwell are untrue. Miss Maxwell strongly denies allegations of an unsavory nature, which have appeared in the British press and elsewhere and reserves her right to seek redress at the repetition of such old defamatory claims.

Menninger Decl. Ex. E, at 2.  As discussed above, such a statement, which was unequivocally made in response to repeated reputation-harming allegations, is protected by both the privilege of self-defense and the pre-litigation privilege and therefore is not actionable.

Further, general denials such as the January 3 Statement are not actionable as defamatory statements.  *See McNamee v. Clemens*, 762 F.Supp.2d 584, 601 (E.D.N.Y. 2011) ("general denials of accusations aren't actionable"); *Independent Living Aids, Inc. v. Maxi-Aids, Inc.*, 981 F.Supp. 124, 128 (E.D.N.Y. 1997) (epithet "liar," in context, where it reflects a mere denial of accusations, was personal opinion and rhetorical hyperbole).  The context surrounding the January 3 Statement demonstrates it was a general denial made in self-defense and pre-litigation and therefore not actionable as a defamation claim.

Likewise, when viewed in context, it is equally clear that the January 4 Statement is not an actionable statement of fact.  The Complaint avers that "Maxwell continued her campaign to falsely and maliciously discredit" Plaintiff "when a reporter on a Manhattan street asked Maxwell" about the allegations and she "responded" by saying "I am referring to the statement that we made."  Compl. ¶ 37.  It also alleges that the *New York Daily News* "published a video" of "this response by Maxwell."  Yet the video found on the *New York Daily News* website of this encounter reveals substantially more context.  *See supra* at __.  First of all, Ms. Maxwell is accosted by the reporters as she emerged from an apartment on East 65th Street.  The video is entitled accurately enough "Ghislaine Maxwell declines comment on allegations she is a madam."[12]  The filmed encounter begins with Ms. Maxwell stating that "I wish you a happy new year and thank you so much."  A voice then inquires, "so you're basically not commenting, is

---

[12] Available at http://www.nydailynews.com/news/world/alleged-madame-accused-supplying-prince-andrew-article-1.2065505 (accessed November 30, 2015).

that…"; her response, "I'm referring to the statement that was made," is barely audible. Another person questions, "is any of that true?" Ms. Maxwell then responds "C'mon guys" and walks away.

The argument that the January 4 Statement is actionable defamation borders on frivolous. There are not even any questions which give the "interview" context, i.e., what the reporters said just before the camera clip begins, what "allegations" Ms. Maxwell was "responding" to. Certainly nothing in the context of the video mentions Plaintiff or her allegations. Any reasonable listener would understand the verbal video clip together with the heading "Ghislaine Maxwell declines comment on allegations she is a madam" to be just that—a declination to comment. The "statement that was made" is not even contextualized. Which statement? Made when and to whom? Even the Complaint characterizes the verbal words as a "response" to questions from a reporter. Even a strained reading of the allegations concerning the January 4 Statement does not demonstrate a defamatory meaning of and concerning Plaintiff, and any claim based thereon should be dismissed.[13]

### B. The Complaint Does Not Allege to Whom, Where or in What Manner the January 3 Statement was Made

It is long settled that "[f]ailure to state the particular person or persons to whom the allegedly slanderous or libelous comments were made as well as the time and manner in which the publications were made warrants dismissal." *Hawkins v. City of New York*, No. 99 Civ. 11704 (RWS), 2005 WL 1861855, at *18 (S.D.N.Y. Aug. 4, 2005); *see also Cruz*, 2012 WL 4513484, at *4 (dismissing a defamation claim for failure to specifically allege the "when, where or in what manner the statements were made").

---

[13] Without the January 4 Statement to the New York Daily News reporter, it is entirely unclear that this case has any nexus to the United States, much less New York.

In *Hawkins*, the Complaint generally alleged that the defendants made false representations of fact about the plaintiff to "other supervisors of [p]laintiff with [the] NYPD." *Id.* This Court held that by not identifying the *individuals* to whom the statement was allegedly made the claim was "fatally defective." *Id.* Likewise, in *J.P.R. Cafeteria, Inc. v. Kingsborough Community College of City University of New York*, 847 N.Y.S.2d 902 (N.Y. Sup. Ct. Aug. 21, 2007), the defendant alleged in a counterclaim that the plaintiff made libelous and slanderous statements to employees and agents of his employer *and the media*. *Id.* at *5. Again, because the counterclaim did not identify the particular persons to whom the defamatory comments were made, it was dismissed. *Id.; see also Cruz*, 2012 WL 4513484, at *4 (dismissing a complaint containing conclusory allegations that defendant made statements that ended up in the headlines and quoted in the media). Here, as in *Hawkins*, the Complaint does not allege to whom the January 3 Statement was made. Instead, it merely contains the general allegation that it was "issued…to the media and public." Compl. ¶ 30. This precedent establishes that merely identifying a group or organization to whom the statement was published, such as "the media" or "the NYPD" is insufficient. Thus, because the Complaint only identifies the "media and public" as the recipient of the January 3 Statement, the pleading is insufficient.

### C. Plaintiff Has Not Properly Pled Special Damages

#### a. The Alleged Defamatory Statement is Not Defamatory *Per Se*

Plaintiff also fails to properly establish either defamation *per se* or special damages. The pleading is therefore defective. *Thompson v. Bosswick*, 855 F.Supp.2d 67, 77 (S.D.N.Y. 2012); *Kforce*, 288 F.Supp.2d at 516. Defamation *per se* is limited in scope and is only applicable when there is a direct link between "a particular profession and a particular disreputable vice of that profession." *Id.* While explaining defamation *per se*, this Court quoted the following passage from *Prosser and Keeton on the Law of Torts* § 112, at 791 (5th ed. 1984):

21

> [I]t is actionable without proof of damage to say of a physician that he is a butcher…, of an attorney that he is a shyster, of a school teacher that he has been guilty of improper conduct as to his pupils, of a clergyman that is the subject of scandalous rumors, of a chauffeur that he is habitually drinking, of a merchant that his credit is bad or that he sells adulterated goods, of a public officer that he has accepted a bribe or has used his office for corrupt purposes…since these things discredit [one] in his chosen calling.

The New York Court of Appeals, elaborating on this same concept, further noted that the defamatory "statement must be made with reference to a matter of significance and importance for [the plaintiff's profession, trade or office], rather than a more general reflection upon the plaintiff's character or qualities." *Liberman v. Gelstein*, 80 N.Y.2d 429, 590 (N.Y. 1992). "The statement must be targeted at the specific standards of performance relevant to the plaintiff's business and must impute conduct that is 'of a kind incompatible with the proper conduct of the business, trade, profession or office itself.'" *Thompson*, 855 F.Supp.2d at 77 (quoting *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F.Supp.2d 489, 550 (S.D.N.Y. 2011)).

Here, it is impossible to determine a link between the January 3 or 4 Statements and Plaintiff's profession, because no profession is alleged. The only reference in the Complaint to Plaintiff's "profession" is in paragraphs 24 and 25 where she describes incorporating the Victims Refuse Silence, Inc. organization. Importantly, she allegedly incorporated that organization on December 23, 2014, approximately 10 days before the January 3 Statement. Compl. ¶ 24. Further, other than stating the intent and goals of this newly incorporated organization, she has not described any actions taken by the organization or provided any indication that the organization is currently operating nor detailed her "occupation" within the organization.

Given the close temporal proximity between the creation of Plaintiff's organization and the issuance of the Statements, it strains credulity to suggest that Ms. Maxwell even knew about

the organization or Plaintiff's supposed profession attendant thereto.  If Ms. Maxwell had never

heard of Victims Refuse Silence—which is likely—it is equally impossible to suggest that she

directed any statements towards Plaintiff's role therein.  Even accepting Plaintiff's allegations as

true, the January 3 Statement is at most a general reflection upon Plaintiff's character or

qualities.  More accurately, the Statement can only be characterized as a reaction to certain

specific allegations made by Plaintiff towards Ms. Maxwell.  According to clear precedent set by

this Court and the New York Court of Appeals, the Statement therefore is not defamation *per se*.

### b.    Failure to Allege Special Damages Warrants Dismissal

Because the January 3 Statement is not per se actionable even accepting the Plaintiff's

allegations as true, the Court then must scrutinize the Complaint for allegations of special

damages.  Special damages are generally considered financial or economic damages that are

"causally related to the alleged acts."  *Hawkins*, 2012 WL 4513484, at *19.  Special damages

"must be fully and accurately stated, with sufficient particularity to identify actual losses…The

particularity requirement is strictly applied, as courts will dismiss defamation claims for failure

to allege special damages with the requisite degree of specificity."  *Thai v. Cayre Group, Ltd.*,

726 F.Supp.2d 323, 330 (S.D.N.Y. 2010).  Plaintiff has not and cannot claim special damages as

a result of Ms. Maxwell's alleged defamatory statements.  Instead, her allegations of damages

are vague and conclusory and provide no factual basis to establish a causal connection to the

alleged defamation.  *See* Compl. ¶ 19 ("Maxwell's false statements have caused, and continue to

cause, Giuffre economic damage…").  This obvious pleading defect also mandates dismissal.

### CONCLUSION

For the reasons stated above, the Complaint fails to state a claim for which relief

can be granted.  Ms. Maxwell therefore respectfully requests that this Court dismiss the

Complaint with prejudice. In addition, in light of Plaintiff's failure to show any factual basis for her claim, Ms. Maxwell requests permission to move for attorneys' fees for the filing of this motion and any subsequent action necessary to prevent from further attempts by Plaintiff to direct additional unfounded and legally insufficient claims against Ms. Maxwell.

Dated: November 30, 2015.

Respectfully submitted,

*s/ Laura A. Menninger*
Laura A. Menninger, Esq.
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:   303.831.7364
Fax:        303.832.2628
lmenninger@hmflaw.com

*Attorney for Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on November 30, 2015, I electronically filed this *Ghislaine Maxwell's Memorandum of Law in Support of her Motion to Dismiss* with the Clerk of Court using the CM/ECF system which will send notification to the following:

Sigrid S. McCawley
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com

*s/ Brenda Rodriguez*
Brenda Rodriguez