# United States District Court
# Southern District of New York

Virginia L. Giuffre,

        Plaintiff,               Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

        Defendant.

_____/

### PLAINTIFF VIRGINIA L. GIUFFRE'S OPPOSITION AND INCORPORATED MEMORANDUM OF LAW TO DEFENDANT'S MOTION TO DISMISS

**BOIES, SCHILLER & FLEXNER LLP**

David Boies
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Sigrid McCawley (Pro Hac Vice)
Boies, Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

Ellen Brockman
Boies, Schiller & Flexner LLP
575 Lexington Ave
New York, New York 10022
(212) 446-2300

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 5

    I..     Maxwell's Statements Are Not Protected By A Qualified Privilege ..................... 5

        A.     It Is Premature For The Court To Determine Qualified Privilege .............. 7

        B.     The Qualified "Self-Defense" Privilege Does Not Exonerate
            Defendant From Her Malicious Defamatory Statements ........................... 9

            1.  The Statements Were Made With Malice And With Knowledge
               Of Their Falsity, Thus Defeating Any Privilege.. ................................ 9

            2.  Calling A Sexual Abuse Victim A "Liar" Is More Than
               A "General Denial" And Qualifies As Defamation ........................... 10

            3.  Defendant's Cited Cases Do Not Support Her Assertion
               Of The Self-Defense Privilege... ..................................................... 11

        C.     The Qualified Pre-Litigation Privilege Does Not Exonerate
            Defendant From Her Malicious Defamatory Statements. ........................ 13

            1.  Defendant's Statements Are Outside The Scope Of The
               "Pre-litigation" Qualified Privilege Because They Are Not
               Made "Pertinent To Anticipated Good Faith Litigation." .................. 14

            2.  Defendant's Statements Are Outside The Scope Of The
               "Pre-Litigation" Qualified Privilege Because They Were Made
               To Bully, Harass, And Intimidate ..................................................... 17

    II.     Ms. Giuffre Has Properly Pled A Defamation Claim ............................................ 18

        A.     Viewed In Context, Defendant's Assault On Ms. Giuffre
            Is Defamatory.. ........................................................................................ 18

        B.     The Complaint Alleges Whom, Where, And In What Manner
            The January Statement Was Made With Specificity And
            Supporting Facts ....................................................................................... 20

        C.     Ms. Giuffre Has Pled Defamation Per Se And Does Not Need
            To Plead Special Damages. ....................................................................... 23

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

Page

## Cases

*Albert v. Loksen*,
   239 F.3d 256 (2d Cir. 2001) .................................................................6

*Biro v. Conde Nast*,
   883 F. Supp. 2d 441 (S.D.N.Y. 2012) ...........................................7, 10

*Block v. First Blood Associates*,
   691 F. Supp. 685 (S.D.N.Y. 1988) ....................................................*passim*

*Brach v. Congregation Yetev Lev D'Satmar, Inc.*,
   265 A.D.2d 360, 696 N.Y.S.2d 496 (2d Dep't. 1999) ........................10

*Caplan v. Winslet*,
   218 A.D.2d 148, 637 N.Y.S.2d 967 (1996)........................................15

*Catalanello v. Kramer*,
   18 F. Supp. 2d 504 (S.D.N.Y. 2014) ..................................................20

*Celle v. Felipino Reporter Enterprises Inc.*
   209 F.3d 163 (2d Cir. 2000) ...............................................................23

*Colantonio v. Mercy Med. Ctr.*.
   115 A.D.3d 902, 982 N.Y.S.2d 563 (2014) ..........................................8

*Collier v. Postum Cereal Co.*,
   150 A.D. 169, 134 N.Y.S. 847 (App. Div. 1912)..................................8

*Davis v. Boeheim*,
   24 N.Y.3d 262, 22 N.E.3d 999 (2014) .....................................4, 10, 19

*Deutsche Asset Mgmt., Inc. v. Callaghan*,
   No. 01 Civ. 4426 CBM, 2004 WL 758303 (S.D.N.Y. Apr. 7, 2004)........................................22

*Dillon v. City of New York*,
   261 A.D.2d 34, 704 N.Y.S.2d (1999)............................................19, 21

*Edwards v. Great N. Ins. Co.*,
   No. 03CV2947(NG)RML, 2006 WL 2053717 (E.D.N.Y. July 21, 2006) ..............................19

*Edwards v. National Audubon Society, Inc.*,
   556 F.2d 113 (2d Cir. 1977) ...............................................................10

*Fowler v. New York Herald Co.*,
   184 A.D. 608, 172 N.Y.S. 423 (App. Div. 1918)..................................8

*Frechtman v. Gutterman*,
    115 A.D.3d 102, 979 N.Y.S.2d 58 (2014) .............................................................15

*Front v. Khalil*,
    24 N.Y.3d 713 (2015).........................................................................14, 16, 17, 18

*Ge Dandong v. Pinnacle Performance Ltd.*,
    966 F. Supp. 2d 374 (S.D.N.Y. 2013) ....................................................................3

*Idema v. Wager*,
    120 F. Supp. 2d 361 (S.D.N.Y. 2000) aff'd, 29 F. App'x 676 (2d Cir. 2002) .........................24

*Independent Living Aids, Inc. v. Maxi-Aids, Inc.*,
    981 F. Supp. 124 (E.D.N.Y. 1997) ......................................................................11

*Int'l Pub. Concepts, LLC v. Locatelli*,
    46 Misc. 3d 1213(A), 9 N.Y.S.3d 593 (NY Sup. Ct. 2015) ....................................15

*Kamchi v. Weissman*,
    125 A.D.3d 142, 1 N.Y.S.3d 169 (N.Y. App. Div. 2014) ........................................8

*Kaminester v. Weintraub*,
    131 A.D.2d 440, 516 N.Y.S.2d 234 (1987)...........................................................10

*Kane v. Orange Cty. Publications*,
    232 A.D.2d 526, 649 N.Y.S.2d 23 (1996)............................................................13

*Kirk v. Heppt*,
    532 F. Supp. 2d 586 (S.D.N.Y. 2008) ..................................................................15

*Lawson v. Stow*,
    2014 COA 26, 327 P.3d 340 .................................................................................21

*Liberman v. Gelstein*,
    80 N.Y.2d 429, 605 N.E.2d 344 (1992) ...............................................................24

*Long v. Marubeni Am. Corp.*,
    406 F. Supp. 2d 285 (S.D.N.Y. 2005) ....................................................................8

*Mase v. Reilly*,
    206 A.D. 434, 201 N.Y.S. 470 (App. Div. 1923)..................................................11

*Massre v. Bibiyan*,
    No. 12 CIV 6615 KPF, 2014 WL 2722849 (S.D.N.Y. June 16, 2014)...................25

*Matherson v. Marchello*,
    100 A.D.2d 233, 473 N.Y.S.2d 998 (1984)..........................................................23

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007) ...................................................................................3

*McNamee v. Clemens*,
  762 F. Supp. 2d 584 (E.D.N.Y. 2011) ................................................................4, 10

*Mencher v. Chesley*,
  193 Misc. 829, 85 N.Y.S.2d 431 (Sup. Ct. 1948) ...................................................8

*Park Knoll Associates v. Schmidt*,
  59 N.Y.2d 205, 451 N.E. 2d 182 (1983) ..................................................................6

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp*,
  813 F. Supp. 2d 489 (S.D.N.Y. 2011) ....................................................................24

*Roberti v. Schroder Inv. Mgmt. N. Am., Inc.*,
  No. 04CIV2404 (LTS) (THK), 2006 WL 647718 (S.D.N.Y. Mar. 14, 2006) ...........7

*Seung Jin Lee v. Tai Chul Kim*,
  16 Misc. 3d 1118(A), 847 N.Y.S.2d 899 (Sup. Ct. 2007) ......................................12

*Shenkman v. O'Malley*,
  2 A.D.2d 567, 157 N.Y.S.2d 290 (1956) ...........................................................8, 12

*Teicher v. Bellan*,
  7 A.D.2d 247, 181 N.Y.S.2d 842 (1959) ..................................................................8

*Thompson v. Bosswick*,
  855 F. Supp. 2d 67 (S.D.N.Y. 2012) ......................................................................24

*Wannamaker v. Columbian Rope Co.*,
  713 F. Supp. 533 (N.D.N.Y. 1989) *aff'd*, 108 F.3d 462 (2d Cir. 1997) ...............19

*Weldy v. Piedmont Airlines, Inc.*,
  985 F.2d 57 (2d Cir. 1993) .................................................................................6, 7

*Whelehan v. Yazback*,
  84 A.D.2d 673, 446 N.Y.S.2d 626 (1981) ...........................................................7, 9

*Worldhomecenter.com, Inc. v. M.J. Resurrection, Inc.*,
  No. 11 CIV. 3371 (RWS), 2012 WL 12922 (S.D.N.Y. Jan. 3, 2012) ........................5

Plaintiff Virginia L. Giuffre, by and through her undersigned counsel, hereby files this Opposition to Defendant's Motion to Dismiss, and in support thereof, states as follows:

## INTRODUCTION

This is an old and familiar story. A Defendant, who committed repeated acts of sexual abuse, publicly proclaims the victim is lying to try to deflect attention from the crimes and to bully the victim back into silence. But this story will not end here. Defamation law protects victims when they are courageous enough to stand up against their abuser's false character assaults.  Based on her well-pled Complaint, Ms. Giuffre has stated a defamation claim, and, therefore, is entitled to move forward with discovery to prove that Defendant's statements were not only false, but entirely fabricated out of malice.

The allegations Ms. Giuffre has made in her Complaint present a straightforward claim of defamation. As she alleges in her Complaint, convicted sex offender Jeffrey Epstein and Defendant, Ghislaine Maxwell, sexually abused Ms. Giuffre. Indeed, the Defendant herself recruited and groomed Ms. Giuffre to be sexually abused when Ms. Giuffre was only fifteen (15) years old. Over the next several years, Epstein and Defendant trafficked Ms. Giuffre to their friends worldwide. Ultimately, Ms. Giuffre escaped.

Several years later, having gained a sense of safety and perspective, Ms. Giuffre sought to join a long-running Crime Victims' Rights Act ("CVRA") lawsuit, which was brought by other young girls who were also abused, and sought to challenge Jeffrey Epstein's non-prosecution agreement which also pardoned co-conspirators. Through lawyers[1], Ms. Giuffre explained what Epstein and Defendant had done to her, prompting a broadside of attacks earlier this year from the

---

[1] Ms. Giuffre is represented in the CVRA case by a former Federal Judge for the District of Utah, Paul Cassell, and a victim's rights lawyer, Bradley Edwards. (Case No. 08-cv-80736-KAM, Southern District of Florida.)

Defendant.[2]

After sexually trafficking Ms. Giuffre for years, Defendant now has the audacity to broadcast that Ms. Giuffre is a "liar" and that her life story is concocted. And Defendant even claims that she is somehow "privileged" to launch these assaults.

Of course, the Court need not decide today who is lying and who is telling the truth. The narrow issue before the Court now is only whether Ms. Giuffre has pled an actionable defamation case. Ms. Giuffre's Complaint sets forth specific well-pled allegations that present the elements of a defamation claim, including precisely-described defamatory statements that the Defendant made with actual malice:

- Ms. Giuffre "became a victim of sexual trafficking and repeated sexual abuse after being recruited by Ghislaine Maxwell and Jeffrey Epstein when Giuffre was under the age of eighteen…Between 1999 and 2002, with the assistance and participation of Maxwell, Epstein sexually abused Giuffre at numerous locations including his mansions in West Palm Beach Florida and in this District." *See* Declaration of Sigrid McCawley ("McCawley Decl."), Ex. 1, Compl. at ¶¶ 8, 9 and 16.

- "As part of their sex trafficking efforts, Epstein and Maxwell intimidated Giuffre into remaining silent about what happened to her." *Id*. at ¶10.

- "With the assistance of Maxwell, Epstein was able to sexually abuse Giuffre for years until Giuffre eventually escaped." *Id*. at ¶18.

- "Ultimately as a mother and one of Epstein's many victims, Giuffre believes that she should speak out about her sexual abuse experience in the hopes of helping

---

[2] Defendant spends a significant amount of time in her Motion to Dismiss discussing Judge Marra's ruling in the CVRA case that dealt with Alan Dershowitz's Motion to Strike. Defendant flatly mischaracterizes the Order, which, in any event, is irrelevant to this Motion to Dismiss. In the CVRA case, Ms. Giuffre filed a joinder motion to attempt to join the other victims who were prosecuting the case. The Court found that joinder of another victim was unnecessary because the two named plaintiffs were sufficient to represent the group of victims in their claim that the government failed to properly notify them of the plea agreement with Jeffrey Epstein. Judge Marra held that "at this juncture in the proceedings" the details about the sexual abuse that Ms. Giuffre had suffered was unnecessary to the Court making a determination "of whether Jane Doe 3 [Ms. Giuffre] and Jane Doe 4 should be permitted to join [the other victims'] claim that *the Government* violated their rights under the CVRA. The factual details regarding with whom and where the Jane Does engaged in sexual activities are impertinent to this central claim (i.e. that they were known victims of Mr. Epstein and the Government owed them CVRA duties) especially considering that the details involve non-parties who are not related to the respondent Government." No. 08-cv-80736-KAM, D.E. 324 at 5 (emphasis original). The Judge explained that Ms. Giuffre would be entitled to participate as a witness in the case to offer her evidence as needed. (D.E. 324 at 8.)

others…Giuffre incorporated an organization called Victims Refuse Silence…Giuffre has now dedicated her professional life to helping victims of sex trafficking." *Id*. at ¶ 23-25.

- "In January 2015, Maxwell undertook a concerted and malicious campaign to discredit Giuffre and damage her reputation that Giuffre's factual reporting of what happened to her would not be credited." *Id*. at ¶ 28.

- "As part of Maxwell's campaign she directed her agent, Ross Gow, to attack Giuffre's honesty and truthfulness and accuse Giuffre of lying." *Id*. at ¶ 29.

- Defendant stated through her press agent that Ms. Giuffre's reports of her child sexual abuse were "obvious lies." *Id*. at ¶ 30.

- Defendant published the defamatory statements to third parties including: "issu[ing] an additional false statement to the media and public," and to "a reporter on a Manhattan street." *Id*. at ¶ 30, ¶ 3.

- "Maxwell made the…defamatory statements…in the Southern District of New York…in a deliberate effort to maliciously discredit Giuffre and silence her efforts to expose sex crimes committed around the world by Maxwell, Epstein and other powerful persons…" *Id*. at ¶ 32.

- "Maxwell's statements were published intentionally for the malicious purpose of further damaging a sexual abuse and sexual trafficking victim; to destroy Giuffre's reputation and credibility" and that Defendant "made her false statements knowing full well that they were completely false. Accordingly, she made her statements with actual and deliberate malice, the highest degree of awareness of falsity." *Id*. at ¶¶ 8-9.

- Defendant's defamatory statements "tended to injure Giuffre in her professional capacity as the president of a non-profit corporation designed to help victims of sex trafficking, inasmuch as they destroyed her credibility and reputation among members of the community that seek her help and that she seeks to serve."[3] *Id*. at ¶ 11.

In response to the straight-forward Complaint, Defendant first argues that she was

privileged to launch these attacks on Ms. Giuffre because of either a self-defense privilege or a

_____

[3] Defendant's effort to include information outside the four corners of the complaint should be rejected. *See Ge Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374 (S.D.N.Y. 2013) ("It is well-established that when deciding a motion to dismiss… a court's 'review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'") (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)). Notably, Defendant switches gears in her Reply in Support of her Motion to Stay and agrees that the Court "must limit itself to facts stated in the complaint." (Maxwell's Reply in Support of Stay Motion at 9). Accordingly, the 2011 article at Ex. A of Laura Menninger's Declaration in Support of her Motion to Dismiss should not be considered because it does not contain the actionable statement set forth in the Complaint. (*See* Declaration of Laura Menninger at Ex. A). By her own words, it must be disregarded.

pre-litigation privilege. As part of a motion to dismiss, these arguments must be rejected. First, qualified privileges are forfeited when the defamatory statement is made with malice and is false. Because Ms. Giuffre has specifically alleged that Defendant defamed her with actual malice, the privileges provide no defense. Second, the Court should not consider Defendant's qualified privilege argument at the Motion to Dismiss stage because it is premature. *See Block v. First Blood Associates*, 691 F. Supp. 685, 699-700 (Sweet, J.) (S.D.N.Y. 1988) (In a case in which another defendant claimed a pre-litigation privilege based upon statements to the press, this Court held, "[t]o prevail on a qualified privilege defense [defendant] must show that his claim of privilege does not raise triable issues of fact that would defeat it. Here, sufficient evidence has been adduced to support the inference that [defendant] acted with malice, and may not, therefore, claim a qualified privilege under New York law . . . a genuine issue as to malice and appropriate purpose has properly been raised and is sufficient to preclude summary judgment."). Defendant's asserted qualified privileges are merely affirmative defenses to be raised in her answer.

Third, Defendant discusses a 2011 statement, which is not the statement at issue, in an effort to confuse the Court into accepting her "pre-litigation privilege" argument. The actionable statement was Defendant's 2015 press release to the media charging Ms. Giuffre with lying about being sexually abused. New York's highest court found, in this exact situation, that where a sexual abuse victim is called a "liar," she has an actionable claim for defamation and it is more than a "mere denial." In *Davis v. Boeheim*, 245 N.Y.3d 262, 268, 22 N.E.3d 999 (2014), the court found that stating that a person is lying about their sexual abuse is "susceptible of a defamatory connotation" because the statement "tends to expose [Plaintiff] to public contempt, hatred, ridicule, aversion or disgrace." *See also McNamee v. Clemens,* 762 F. Supp. 2d 584, 602 (E.D.N.Y. 2011) (court explaining "[t]he statements that brand McNamee a liar and suggest that there are unknown facts that when disclosed will support Clemens' denials and that suggest that

the statements meet the definition of defamation go beyond a general denial of accusations or rhetorical name calling. The statements were direct and often forcefully made, there was nothing loose or vague about them."). Finally, Ms. Giuffre has pled all necessary elements of a defamation claim in detail with supporting facts. For those reasons, as explained in full below, Defendant's Motion to Dismiss should be denied.

## ARGUMENT

In ruling on a motion to dismiss, the Court must take all allegations in the Complaint as true and all inferences are drawn in favor of the pleader. *Worldhomecenter.com, Inc. v. M.J. Resurrection, Inc.*, (Sweet, J.) No. 11 CIV. 3371 (RWS), 2012 WL 12922, at *2 (S.D.N.Y. Jan. 3, 2012). "The issue 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Id*. Ms. Giuffre has stated a colorable claim with specificity, therefore, she is entitled to move forward and prove her claim.

## I.   Maxwell's Statements Are Not Protected By A Qualified Privilege.

Defendant's qualified privilege argument fails for three independent reasons, each requiring this Court to deny Defendant's Motion to Dismiss. First, a privilege is an affirmative defense, which must be pled in an answer to a complaint and then properly proved. A motion to dismiss is not a proper vehicle for presenting such an argument. Second, the qualified privileges raised by Defendant (self-defense and pre-litigation) are forfeited if they are abused.  Because Ms. Giuffre has alleged that Defendant launched her assault with actual malice and for an improper purpose, the privileges provide no defense. Third, the circumstances alleged by Defendant do not fit the privileges she is alleging: under New York law, no qualified privilege, - neither "self-defense" nor "pre-litigation" - applies to Defendant's statements.

As this Court has explained, "[u]nder New York law, a qualified or conditional privilege may exist where statements are made, without malice, in furtherance of a common interest. There

is no qualified privilege under New York law when such statements are spoken with malice, knowledge of their falsity, or reckless disregard for their truth." *Block* at 699 (Sweet, J.) (Internal citations omitted).

A defendant forfeits an alleged qualified privilege "by making a false, defamatory statement with 'malice' of either the common-law or constitutional variety." *Albert v. Loksen*, 239 F.3d 256, 272 (2d Cir. 2001). *See also Park Knoll Associates v. Schmidt,* 59 N.Y.2d 205, 211, 451 N.E.2d 182, 185 (1983) ("The complaint here contains sufficient allegations of malice to withstand the motion to dismiss.").

Even if a qualified privilege otherwise applies, it "is nevertheless forfeited if the defendant steps outside the scope of the privilege and abuses the occasion." *Weldy v. Piedmont Airlines, Inc*., 985 F.2d 57, 62 (2d Cir. 1993) (internal quotations omitted). In *Weldy*, the Second Circuit explained that a Plaintiff may defeat an assertion of a qualified privilege by demonstrating abuse of the privilege "by proving that the defendant acted (1) with common law malice, or (2) outside the scope of the privilege, or (3) with knowledge that the statement was false or with a reckless disregard as to its truth." *Id.* at 62. In this case, the Defendant has fulfilled all three of the above conditions.

Here, Ms. Giuffre has pled facts to support her claim that Defendant's defamatory statements are false, and were published with the "malicious intent of discrediting and further damaging [Ms. Giuffre] worldwide." *See* McCawley Decl., Ex. 1, Compl. at ¶ 1.  Defendant can cite to no authority that supports her position that publicly stating that a victim of sexual abuse is lying about being sexually abused as a minor child falls within ***any*** qualified privilege, and her assertion of that proposition is a complete misreading of the law.

6

A.  **It Is Premature For The Court To Determine Qualified Privilege.**

As an initial matter, under both federal and New York law, determining whether a qualified privilege applies is premature and should not be decided at the Motion to Dismiss stage because Ms. Giuffre is entitled to establish that Defendant knew the defamatory statement was false and made for an improper purpose, thereby extinguishing any claim for a qualified privilege. In another defamation case brought before this Court, in which the defendant also made defamatory statements to the press and then tried to claim the pre-litigation privilege, this Court held that where a genuine issue as to the malice and appropriate purpose has properly been raised, a determination on the application of the privilege was precluded, ***even at the summary judgment stage***. *See Block*, 691 F. Supp. at 699-700 (Sweet, J.); *see also Roberti v. Schroder Inv. Mgmt. N. Am., Inc.*, No. 04CIV2404 (LTS) (THK), 2006 WL 647718, at *9 (Swain, J.) (S.D.N.Y. Mar. 14, 2006) (Judge Swain found the same, denying the motion to dismiss on a defamation claim because "a claim of qualified privilege may be rebutted by a showing that the statement, or the implication thereof, was made with spite or ill will or with a high degree of awareness of [its] probable falsity" and plaintiff's complaint "could support a finding that the statement was made with the requisite high degree of awareness that it was probably false.") (internal quotations omitted);[4] *Weldy*, 985 F.2d at 63 (the Second Circuit found that whether the privilege had been abused and, therefore, lost was a question for the jury to decide.).

New York state courts, examining alleged qualified privileges in defamation cases, have held the same. For example, in *Whelehan v. Yazback*, 84 A.D.2d 673, 673, 446 N.Y.S.2d 626, 627

---

[4] Defendant misleadingly cites *Biro v. Conde Nast* for the proposition that the affirmative defense of privileges may be resolved on a motion to dismiss, but *Biro* dismissed claims based on **absolute privileges**, whose application required no factual determinations, but could be determined on the face of the pleadings, in contrast to the **qualified privileges** Defendant asserts here, which require a determination of malice and improper purpose. 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012) (dismissing some claims due to their being nonactionable opinion and protected by New York Civil Rights Law § 74 (fair report privilege) because the court need only "consider the allegations and the statements in the court records in order to determine whether the Article provides a 'fair and true' report of those allegations and statements, but will not consider the documents to be evidence of any of the facts stated therein.").

(1981), the court denied the motion for **summary judgment** based on the **affirmative defense** of

qualified privilege: "defendant's motion for summary judgment based on qualified privilege and

plaintiff's motion to strike this defense were properly denied since qualified privilege is a defense

to be pleaded and proved… and questions of fact exist as to its applicability here." Further, as the

*Bellan* court explained, when reversing an order dismissing a defamation claim, "the defendant

cannot prevail upon this motion on the ground of a qualified privilege. Qualified privilege is an

affirmative defense to be pleaded and proved by the defendant." *Teichner v. Bellan*, 7 A.D.2d 247,

252, 181 N.Y.S.2d 842 (1959).  *See also Colantonio v. Mercy Med. Ctr.*, 115 A.D.3d 902, 903,

982 N.Y.S.2d 563, 566 (2014) ("…this privilege…can be overcome by a showing of malice … At

this juncture [motion to dismiss], the allegations of malice that were set forth in the complaint …

preclude dismissal of the complaint…"); *Kamchi v. Weissman*, 125 A.D.3d 142, 159, 1 N.Y.S.3d

169, 182 (N.Y. App. Div. 2014) (the complaint "sufficiently alleged that [Defendant] made false

statements of fact with common-law malice so as to overcome the common interest qualified

privilege"); *Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 298 (S.D.N.Y. 2005) (denying a

motion to dismiss based, *inter alia*, upon an qualified privilege argument because the complaint

alleged the defamatory statements were made "with knowledge of their falsity," and supported that

claim "with at least some facts," and, therefore, "[n]othing more is required at this stage of

litigation [to maintain the claim]").[5] Accordingly, Defendant's qualified privilege arguments are

not ripe for judicial determination upon a Motion to Dismiss.

---

[5] Notably, the case law cited by Defendant also holds that qualified privilege is an issue for the jury to decide.  *See* Maxwell's Memorandum in Support of Motion to Dismiss ("MTD") at 8, *Shenkman v. O'Malley*, 2 A.D.2d 567, 576, 157 N.Y.S.2d 290, 299 (1956) (whether defendant's statement fell under the self-defense qualified privilege "cannot be said on the pleading alone," but instead is "a proper question for the jury to determine"); MTD at 8, *Fowler v. New York Herald Co.*, 184 A.D. 608, 611, 172 N.Y.S. 423, 425 (App. Div. 1918), ("Whether the defendant in its publication went beyond its legal privilege, and should be charged with malice, was a question of fact for the jury"); MTD at 9, *Mencher v. Chesley*, 193 Misc. 829, 832, 85 N.Y.S.2d 431, 434 (Sup. Ct. 1948) ("Plaintiff contends, however, that the defendant in any event went beyond his legal privilege in repelling the attack and that consequently his privilege affords him no protection . . . the question whether the defendant went beyond his privilege is one of fact for the jury to determine, and that it cannot be disposed of as a matter of law."); MTD at 9, *Collier v. Postum Cereal*

### B.  The Qualified Self-Defense Privilege Does Not Exonerate Defendant From Her Malicious Defamatory Statements

Defendant contends that her statements are subject to a qualified privilege because they were made in "self-defense." Defendant's statements went beyond simply denying the allegations; instead, she attacked the moral character of this sexual abuse victim by publicly proclaiming her claims of sexual abuse were "obvious lies" and suggesting that Defendant knew facts that were unknown to the public. Defamatory statements of that type, as explained further below, are not protected by a "self-defense" privilege, particularly when, as here, they are knowingly false.

### 1.  The Statements Were Made With Malice And With Knowledge Of Their Falsity, Thus Defeating Any Privilege.

Defendant's attempts to fit her defamatory statements against a victim of sexual abuse within the parameters of a qualified privilege must be rejected because Defendant made the statements with malice, knowing that they were false. Plaintiff will be able to show, without question, that Defendant knows that Plaintiff is not lying when she describes how Defendant recruited her for sex as an underage girl and when she describes the other trafficking activities Defendant engaged in. Once a defendant has proven the affirmative defense of qualified privilege, which Defendant has not yet done, that privilege is nonetheless defeated if "plaintiff can establish that the communication was actuated by malice." *See Block,* 691 F. Supp. at 699 (Sweet, J.); *Whelehan*, 446 N.Y.S.2d at 674 ("defendant's motion to dismiss the complaint for failure to state a cause of action should have been denied. Plaintiff's pleading of 'malice aforethought' is sufficient to avoid dismissal in view of the fact that qualified privilege is an affirmative defense to be pleaded and proved by defendant and that, when malice is required to be pleaded, conclusory

---

*Co.*, 150 A.D. 169, 179, 134 N.Y.S. 847 (App. Div. 1912) (evidence bearing on questions of privilege "were plainly questions for the jury").

allegations of malice have been held sufficient.").[6] As pled in the Complaint, Defendant knew the statements were false because Defendant engaged in and facilitated the sexual abuse of this minor child.

> 2. Calling A Sexual Abuse Victim A "Liar" Is More Than A "General Denial" And Qualifies As Defamation.

Though Defendant claims that she was merely issuing a "general denial," she went well beyond that and accused Ms. Giuffre of making claims that were "obvious lies," with the clear implication that Defendant had knowledge unknown to the audience that would support her statement. Under New York law, such a statement constitutes grounds for a defamation claim.  *See Davis*, 245 N.Y.3d at 268 (New York's highest court holding that stating someone is lying about sexual abuse is "susceptible of a defamatory connotation."); s*ee also McNamee v. Clemens*, 762 F. Supp. 2d 584 (E.D.N.Y. 2011) ("[a]n attack on a person's integrity by impugning his character as dishonest or immoral may form the basis of a defamation if an ordinary listener would tend to credit the statements as true."); *Kaminester v. Weintraub*, 131 A.D.2d 440, 516 N.Y.S.2d 234 (2d Dep't 1987) (statements accusing plaintiff of personal dishonesty were not constitutionally protected expressions of opinion); *Edwards v. Nat'l Audubon Soc., Inc.*, 556 F.2d 113, 121-22 (2d Cir. 1977) ("The appellees were charged with being 'paid to lie'. It is difficult to conceive of any epithet better calculated to subject a scholar to the scorn and ridicule of his colleagues than 'paid liar.' It is this completely foundationless accusation of venality that constitutes the essence of the calumny against the appellees."); *Brach v. Congregation Yetev Lev D'Satmar, Inc.*, 265 A.D.2d 360, 361, 696 N.Y.S.2d 496, 498 (2d Dep't 1999) (reversing an order of dismissal and reinstating

---

[6] Defendant cites *Biro v. Conde Nast*, 2014 WL 4851901 (S.D.N.Y. Sept. 30, 2014) for the proposition that Ms. Giuffre has not sufficiently pled malice. However, in *Biro*, the only accusation of malice was that the defendant "'knew or should have known' that the statements were false," and "the Complaint contains no factual allegations indicating that [defendant] acted recklessly in making that assumption – or had any reason to entertain doubts about the truth." *Id.*, 2014 WL 4851901, at *2. The facts here could not be more different: not only has Ms. Giuffre alleged that Defendant *knows* the allegations are false because she was an active participant in the sexual abuse, but she detailed Defendant's involvement with the corroborating evidence of her involvement.

defamation action based upon a publication stating that a court action was won "by lies and deceit," finding that the statements at issue were actionable statements of "mixed opinion," and noting that they suggested to the average reader that they were supported by some unknown facts); *Mase v. Reilly*, 206 A.D. 434, 436, 201 N.Y.S. 470, 472 (App. Div. 1923) (reversing dismissal of the complaint and holding: "The charge that a man is lying, at least, in a matter of public interest, is such a charge as tends to hold him up to scorn, as matter of law, and prima facie a complaint stating the making in writing of such a charge is good.").

Here, Defendant has attacked Ms. Giuffre's integrity, calling her dishonest and stating that her claims of abuse were "obvious lies," implying that Defendant knows certain facts unknown to her audience that support her opinion. An ordinary listener would tend to credit the statements as true because Defendant traveled with, and lived with, Ms. Giuffre while she was a child abuse victim. As the *Clemens* court explained: "Clemens' statements that McNamee is a liar are facts capable of being proven true or false by a determination of whether or not McNamee injected Clemens with steroids. The statements can be proven true or false by either truthful testimony or conclusive evidence." *Id.* at 601. Similarly, Defendant's statement that Ms. Giuffre is lying is a fact capable of being proven true or false by a determination of whether Ms. Giuffre was sexually abused by Defendant.

3. Defendant's Cited Cases Do Not Support Her Assertion Of The Self-Defense Privilege.

Interestingly, the only case Defendant cites wherein a court holds that calling someone a liar isn't defamatory, *Independent Living Aids, Inc. v. Maxi-Aids, Inc.*, 981 F. Supp. 124, 128 (E.D.N.Y. 1997), is a case that sounded in ***slander*** (spoken defamation), whereas this is a ***libel***

case (written defamation).[7] What constitutes defamation for libel under New York law is a much broader category, while defamation under slander is restricted to four specific categories of statements, as discussed *infra.* Ms. Giuffre has sufficiently pled ***libel***, and many New York courts have held that calling someone a liar constitutes libel. Buried in a string cite, and presented without explanation or argument, Defendant cites *Shenkman v. O'Malley*, 2 A.D.2d 567, 157 N.Y.S.2d 290, (1956), in which the Court reversed the lower court's striking of the affirmative defense of the self-defense qualified privilege. MTD at 8. Notably, *Shenkman* not only held that the self-defense qualified privilege was a question for the jury to decide, but it also held that this affirmative ***defense only applies when the defendant's statement is in response to another defamatory statement***: the "defamatory reply to attack, if it is to be privileged, must, among other things, be a reply to a defamatory attack." *Id*. at 576. Therefore, under *Shenkman*, in order to meet her burden, Defendant would have to prove - after the motion to dismiss stage - that Ms. Giuffre's accusations are defamatory - something she has not done, and never can, because the allegations of sexual abuse are true.

Defendant's other cases are also readily distinguished. For example, she cites *Kane v. Orange Cty. Publications*, 232 A.D.2d 526, 649 N.Y.S.2d 23 (1996) in support of her self-defense privilege, but this was an action brought pursuant to Civil Rights Law § 51, which authorizes a civil action when the name or likeness of any living person is used for advertising without written consent. Moreover, since it wasn't a defamation claim, the court never made a ruling as to whether to apply any privilege, but merely noted that the complaint allegations "correspond to elements of a cause of action sounding in libel" and, then, "further note[d]" that it would be "covered by a

---

[7] At least one New York court has found that calling someone a liar is defamation even under the slander standard. *See Seung Jin Lee v. Tai Chul Kim*, 16 Misc. 3d 1118(A), 847 N.Y.S.2d 899 (Sup. Ct. 2007) (denying a motion to dismiss when the defendant stated that the plaintiff "is a liar; she tried to cover all the truth; how could she serve the Lord with lies; and she and her followers are satanic.").

qualified privilege" if the complaint had been brought in libel – which it wasn't. There is no holding in *Kane* applicable to this case.

### C. The Qualified Pre-Litigation Privilege Does Not Exonerate Defendant From Her Malicious Defamatory Statements.

Defendant's assertion of the "pre-litigation privilege" is misplaced for several reasons, as detailed below, but primarily because the pre-litigation privilege is meant to protect parties to a justiciable controversy in their attempts to narrow or resolve their claims to avoid litigation. Defendant relies upon a vaguely-worded portion of a 2015 statement that she "reserves her right to seek redress at the repetition of such old defamatory claims."[8] The indeterminate portion of the 2015 statement does not so much as imply, let alone name, the person or entity against whom Defendant has supposedly "reserve[d] the right to seek redress," nor does it hint at what type of "redress" she may seek. This unclear and vaguely-worded statement is insufficient to shroud Defendant's defamatory statements, contained in a press release, with the protection of a qualified privilege that is intended to protect parties trying to resolve or narrow their issues in advance of litigation.

Due to that obvious deficiency, Defendant spends many pages of her brief discussing a statement she made four years ago, with the hope that the Court will evaluate *that* statement in making a determination on the pre-litigation privilege because she knows that no privilege attaches to her 2015 statements. But, no matter how much she references the 2011 statement, it is

---

[8] The January 3, 2015 statement, issued by Ross Gow, Maxwell's press agent and referred to by Maxwell provides: "The allegations made…against *Ghislaine Maxwell are untrue*. The original allegations are not new and have been fully responded to and *shown to be untrue*. Each time the story is retold it changes, with new salacious details about public figures. *(The woman's) claims are obvious lies* and should be treated as such and not publicized as news, as they are defamatory. Ghislaine Maxwell's original response to the lies and defamatory claims remains the same. Miss Maxwell strongly denies allegations of an unsavory nature, which have appeared in the British press and elsewhere and reserves her right to seek redress at the repetition of such claims." (emphasis added to mirror quotation in ¶ 30 of Plaintiff's Complaint. *See* McCawley Decl. at Ex. C, January 4, 2015 Express Article.

still not, and never will be, the statement at issue in this case.[9] There is no controversy over the

2011 statement.  Ms. Giuffre is bringing suit based on a defamatory statement made in 2015.

   1.  <u>Defendant's Statements Are Outside The Scope Of The "Pre-Litigation" Qualified
       Privilege Because They Are Not Made "Pertinent To Anticipated Good Faith
       Litigation."</u>

Defendant's statements are outside the scope of any pre-litigation privilege because they

are not pertinent to a good faith anticipated ligation, and because they were made for the improper

purpose of bullying, harassing, and intimidation. This Court has already held that summary

judgment based upon an asserted privilege protecting defamatory pre-litigation communications is

precluded when a plaintiff raises "a genuine issue as to malice and ***appropriate purpose.***" *Block,*

691 F. Supp. 685, 699 (Sweet, J.). Defendant's statements that she is lying and her claims of

sexual abuse are "obvious lies" are not pertinent to a good faith anticipated litigation but, instead,

they were made for an inappropriate purpose, to bully, harass, and intimidate Ms. Giuffre. As pled

in the Complaint, Defendant knew the statements were false because Defendant engaged in and

facilitated the sexual abuse of this minor child, therefore, they were made for the inappropriate

purpose of "bullying," "harassment," and "intimidation." *See Front v. Khalil*, 24 N.Y.3d 713, 720

(2015).

Defendant's statements were a message for the public, not a message to the attorneys for

the British press. They were also not made by an attorney, but by a press agent, and they did

nothing to reduce or avoid the need to actually commence litigation because they neither discussed

---

[9] The March 10, 2011 statement provides: "Ghislaine Maxwell denies the various allegations about her that have
appeared recently in the media. These allegations are all entirely false.  It is unacceptable that letters sent by Ms.
Maxwell's legal representatives to certain newspapers pointing out the truth and asking for the allegations to be
withdrawn have simply been ignored.  In the circumstances, Ms. Maxwell is now proceeding to take legal action
against those newspapers. 'I understand newspapers need stories to sell copies. It is well know that certain newspapers
live by the adage, "why let the truth get in the way of a good story". However the allegations made against me are
abhorrent and entirely untrue and I ask that they stop.' Said Ghislaine Maxwell. 'A number of newspapers have shown
a complete lack of accuracy in their reporting of this story and a failure to carry out the most elementary investigation
or any real due diligence.  I am now taking action to clear my name.' she said." *See* McCawley Decl. at Ex. B, March
2011 Statement.

a justiciable controversy with the British press nor demanded that the coverage discontinue. The 2015, statement plainly shows Defendant ***using the press*** to bully, intimidate, and harass Ms. Giuffre.

New York's pre-litigation qualified privilege does not apply to the facts in this case. Historically, statements made in the course of litigation were entitled to privilege from defamations claims "so that those discharging a public function may speak freely to zealously represent their clients without fear of reprisal or financial hazard." *Id.* at 718. A 2015 New York Court of Appeals case somewhat extended this privilege by holding that statements made by attorneys prior to the commencement of the litigation are protected by a qualified privilege if those statements are pertinent to a good faith anticipated litigation. *Id.* at 718. ("Although it is well-settled that statements made in the course of litigation are entitled to absolute privilege, the Court has not directly addressed whether statements made by an attorney on behalf of his or her client in connection with prospective litigation are privileged" . . . "to advance the goals of encouraging communication prior to the commencement of litigation" . . . "we hold that statements made prior to the commencement of an anticipated litigation are privileged, and that the privilege is lost where a defendant proves that the statements were not pertinent to a good faith anticipated litigation.").[10]

---

[10] The cases cited in Defendant's own brief in support of this qualified privilege argument all concern actual anticipated litigation over a justiciable controversy, where the protected communications involved statements like cease and desist letters and counsel's speech around the courthouse, and they exclusively involve statements made by attorneys, or statements to and among parties to the anticipated litigation, and, in one case, the affected malpractice insurance carrier. For example in, *Int'l Pub. Concepts, LLC v. Locatelli*, the communications at issue concerned cease and desist letters written by an attorney. 46 Misc. 3d 1213(A), 9 N.Y.S.3d 593 (N.Y. Sup. Ct. 2015). Similarly, in *Frechtman v. Gutterman*, the communication at issue was a letter sent by a client to his attorney terminating the representation. 115 A.D.3d 102, 103, 979 N.Y.S.2d 58, 61 (2014). In *Kirk v. Heppt*, the communication at issue was made by an attorney's client to the attorney's malpractice carrier concerning the client's justiciable controversy against the attorney. 532 F. Supp. 2d 586, 593 (S.D.N.Y. 2008). Finally, *Caplan v. Winslet*, cited by Defendant, is wholly inapposite to Defendant's argument as the statement at issue was not within the pre-litigation context at all, but in the course of ongoing litigation: the alleged defamatory statement was a lawyer-to-lawyer remark made exiting the courthouse. 218 A.D.2d 148, 150-51, 637 N.Y.S.2d 967 (1996). None of these cases involved statements that were widely publicized.

The Court of Appeals' reason for allowing this qualified privilege could not be more clear: "When litigation is anticipated, attorneys and parties should be free to communicate in order to reduce or avoid the need to actually commence litigation. Attorneys often send cease and desist letters to avoid litigation. Applying privilege to such preliminary communication encourages potential defendants to negotiate with potential plaintiffs in order to prevent costly and time-consuming judicial intervention." *Id*. at 719-20.

Under this rationale, the *Khalil* court found that an attorney's letters to the potential defendant were privileged because they were sent "in an attempt to avoid litigation by requesting, among other things, that Khalil return the alleged stolen proprietary information and cease and desist his use of that information." *Id*. at 720. Neither the dicta in *Khalil*, the policy rationale discussed, nor the holding suggests that the privilege should apply to a defamatory statement like the one at issue in this case. Here, unlike *Khalil*, the Defendant's statements were 1) made by a non-attorney; 2) concerning a non-party to the alleged anticipated litigation; 3) making a knowingly false statement; and 4) that was directed at, and disseminated to, the public at large. Defendant's statements cannot be can be considered "pertinent to a good faith anticipated litigation," such that the qualified privilege should apply.

Moreover, it strains credulity to ask the Court to somehow read the actionable 2015 press release, calling Ms. Giuffre's sex abuse claims "obvious lies," as any type of "cease-and-desist" statement. This statement was not a communication among the "attorneys and parties," and it did nothing to "reduce or avoid" or resolve any "anticipated" litigation.  Indeed, Defendant's statements make no reference to any cause of action, and they lie in stark contrast to the protected statements made in *Khalil* and in all the other cases Defendant cites.[11]

---

[11] Unsurprisingly, Defendant cites to no case in which this qualified privilege has been extended to internationally disseminated press releases slamming a ***non-party*** to the "anticipated" litigation.

Most important, Defendant may never prevail in asserting this qualified privilege because, in order to invoke this privilege, she must have "meritorious claims" for "good faith" litigation. Defendant has neither. Defendant cannot have a "meritorious claim" for "good faith anticipated litigation" because Ms. Giuffre's reports of her sexual abuse are true, Defendant knows that they are true, and Defendant made a knowingly false statement when she called Ms. Giuffre a liar. Under these circumstances, Defendant has no "meritorious" claim to make in "good faith" relating to either Ms. Giuffre's statements or their coverage in the press, thereby making her defamatory statements wholly outside the protection of this qualified privilege.

    2.  <u>Defendant's Statements Are Outside The Scope Of The "Pre-Litigation" Qualified Privilege Because They Were Made To Bully, Harass, And Intimidate.</u>

*Khalil* specifically states that the qualified privilege "does not protect attorneys who are seeking to bully, harass, or intimidate their client's adversaries by threatening baseless litigation or by asserting wholly unmeritorious claims, unsupported in law and fact, in violation of counsel's ethical obligations." *Khalil*, 24 N.Y.3d at 720. Defendant's defamatory statement, that a sexual abuse victim is lying about her abuse, is purposefully calculated to "bully, harass, or intimidate" that victim, and keep her silent about Defendant's wrongdoing. Again, this is an old story. Defendant, through her press release, is merely trying to discredit Ms. Giuffre in the public eye, and thereby deflect blame; calling Ms. Giuffre a liar has nothing to do with advancing her interest in any pretended litigation with the British press. Defendant used the press to defame, discredit, and intimidate Ms. Giuffre and, therefore, these statements lie wholly outside the scope of a qualified pre-litigation privilege. *See also Block,* at 699 (Sweet, J.) (denying summary judgment on the pre-litigation qualified privilege affirmative defense because there was "a genuine issue as to malice and ***appropriate purpose***").

In sum, the cases cited by both the Court of Appeals in *Khalil* and by Defendant's Motion to Dismiss applied this privilege only to statements made pertinent to good faith anticipated litigation, among interested parties, because this qualified privileged is designed to facilitate the negotiation, settlement, or refinement of claims prior to an action being filed. It should not be applied to a socialite using her press agent to disseminate defamatory statements to the entire world, least of all where it maligns a non-party to alleged anticipated litigation that cannot, in any event, be brought in good faith because of Defendant's personal role in the underlying sexual abuse.

## II.    **Ms. Giuffre Has Properly Pled A Defamation Claim.**

As a fallback argument, Defendant raises various alleged technical deficiencies in Ms. Giuffre's complaints. These arguments, too, are totally without merit. Defendant claims that Ms. Giuffre did not provide the "context" of Defendant's defamatory statement, but (1) a motion to dismiss is not a proper vehicle to litigate the "context" in which statements are made, and (2) Ms. Giuffre did, in fact, provide sufficient "context" under New York law. What's more, even if further context were appropriate in the pleadings, it would only show that Defendant deliberately made false, defamatory, and injurious statements about Ms. Giuffre. Defendant also alleges that Ms. Giuffre failed to provide sufficient detail. This claim, too, lacks any merit because the Complaint clearly specifies the nature of the statements made by Defendant.

### A.   **Viewed In Context, Defendant's Assault On Ms. Giuffre Is Defamatory.**

Defendant asks the Court to conclude, on a motion to dismiss, that "when viewed in context, the statements are not actionable defamatory statements."  MTD at p. 17. The Defendant does not advise the Court how it could possibly begin to make such a "context" determination. Presumably, the Court would have to have the full context for all statements covered by the Complaint and then evaluate the context for defamatory meaning. Of course, because Ms. Giuffre

has just filed her Complaint, a fully-developed record does not exist for any such evaluation. The Defendant's argument should be rejected for this reason.

Defendant also contends that because the Complaint did not set forth the immaterial and nonactionable portions of Defendant's defamatory press release, the Complaint is insufficiently pled, but that is not the standard under New York law. The Complaint does not employ "vague and conclusory allegation[s]"[12] without specifying "the actual defamatory words,"[13] nor does the Complaint fail to "set forth in any manner the words which he claims are actionable so as to give defendants notice of the statements at issue,"[14] as was the situation in the inapposite cases Defendant cites. To the contrary, the Complaint uses direct, word-for-word quotes of Defendant's press statements, giving all the particulars of their origination. For that reason, Ms. Giuffre's Complaint satisfies the pleading requirements.[15]

On the issue of context, this case is most closely akin to the recent New York Court of Appeals case *Davis v. Boeheim*, 24 N.Y.3d 262, 265, 22 N.E.3d 999 (2014). In *Boeheim*, plaintiffs were victims of sexual molestation by Bernie Fine, a former associate head basketball coach for Syracuse University. Following plaintiffs' accusations of sex abuse, James Boeheim, Fine's friend, published statements calling plaintiffs liars, and stating their allegations were financially motivated. Plaintiffs sued for defamation.

The Court of Appeals specifically held that such defamation allegations easily survive a motion to dismiss.  The Court explained that, on a motion to dismiss, a court "merely examines

---

[12] *Dillon v. City of New York,* 261 A.D.2d 34, 39-40, 704 N.Y.S.2d 1 (1999).

[13] *Edwards v. Great N. Ins. Co.,* No. 03cv2947(NG)(RML), 2006 WL 2053717, at *5 (E.D.N.Y. July 21, 2006).

[14] *Wanamaker v. Columbian Rope Co.,* 713 F. Supp. 533, 545 (N.D.N.Y. 1989) *aff'd,* 108 F.3d 462 (2d Cir. 1997) and *aff'd,* 108 F.3d 462 (2d Cir. 1997).

[15] Further, the Complaint incorporates by reference the remainder of Defendant's published statements in the January 3, 2015, statement. *See, e.g.,* McCawley Decl., Ex. 1, Compl. at ¶ 31, 37. All of Defendant's published statements are publically available, and Defendant has full notice of the statements at issue because she issued them to the press and Defendant does not deny making them.  In an abundance of caution, Plaintiff has the quotes herein and attached the press release statements to her declaration as Ex.'s B and C.

the adequacy of the pleadings," asking "whether the contested statements are reasonably susceptible of a defamatory connotation." 22 N.E.3d at 1003. (Internal citations omitted.) The Court emphasized that "[i]f, upon any reasonable view of the stated facts, plaintiff would be entitled to recovery for defamation, the complaint must be deemed to sufficiently state a cause of action." *Id.* The Court minded trial courts to be wary of dismissing claims at the outset in light of a plaintiff's "right to seek redress, and not have the courthouse doors closed at the very inception of an action, where the pleading meets [the] minimal standard necessary to resist dismissal of [the] complaint." *Id.* at 1003-04.

The Court of Appeals went on to find the complaint fully stated a cause of action because statements alleging that a person told lies about accusations of sexual abuse are "susceptible of a defamatory connotation" because they "tend[] to expose [Plaintiff] to public contempt, hatred, ridicule, aversion or disgrace." *Id.* at 1004. The Court of Appeals also emphasized that the statements were defamatory because they "are capable of being proven true or false, as they concern whether plaintiffs made false sexual abuse allegations against Fine in order to get money, and whether [one of the plaintiffs] had made false statements in the past." *Id.* at 1006. Of course, exactly the same points that the Court of Appeals made about the statements attacking the victims of Fine apply to Defendant's statements attacking Ms. Giuffre.

### B.  The Complaint Alleges Whom, Where, And In What Manner The January Statement Was Made With Specificity And Supporting Facts.

Ms. Giuffre has pled every element for a cause of action for defamation under New York and Colorado law which are substantively similar.[16] Under New York law, the elements of a defamation claim are: (1) a false statement, published to a third party; (2) without authorization or

---

[16] The defamatory statements were made in New York, the Defendant resides in New York, and there is no conflict between New York and Colorado law, therefore, New York has the most significant interest in the issue of this litigation and New York law should apply. *Catalanello v. Kramer*, 18 F. Supp. 3d 504, 511 (S.D.N.Y. 2014).

privilege; (3) fault, judged at a minimum by a negligence standard; and (4) special harm or defamation per se. *Dillon v. City of New York*, 261 A.D.2d 34 (1999).[17]

Ms. Giuffre has met every requirement in her Complaint. Ms. Giuffre explained in her Complaint that she "became a victim of sexual trafficking and repeated sexual abuse after being recruited by Ghislaine Maxwell and Jeffrey Epstein when Giuffre was under the age of eighteen…Between 1999 and 2002, with the assistance and participation of Maxwell, Epstein sexually abused Giuffre at numerous locations including his mansions in West Palm Beach, Florida, and in this District. With the assistance of Maxwell, Epstein was able to sexually abuse Giuffre for years until Giuffre eventually escaped." *See* McCawley Decl., Ex. 1, Compl. at ¶¶ 8, 9 and 16.  With respect to the first elements of a defamation claim, Giuffre has pled a defamatory statement concerning another: Defendant stated through her press agent that Ms. Giuffre's reports of her child sexual abuse were "obvious lies." *See* McCawley Decl., Ex. 1, Compl. at ¶ 30. Second, she has pled publication to a third parties, stating that Defendant's agent "issued an additional false statement to the media and public," and to "a reporter on a Manhattan street." *Id*. at ¶ 30, ¶ 37. Third, Ms. Giuffre has alleged more than "fault amounting to at least negligence on the part of the publisher;" she has alleged malice and that Defendant made the statements knowingly because Defendant herself participated in the abuse. *See* McCawley Decl., Ex. 1, Compl. at ¶ 9. ("Between 1999 and 2002, with the assistance and participation of Maxwell, Epstein sexually abused Giuffre at numerous locations including his mansion in West Palm Beach, Florida, and in this District."). Among other similar allegations, the Complaint states: "Maxwell's statements were published intentionally for the malicious purpose of further damaging a sexual

---

[17] *Accord, Lawson v. Sto*w, 2014 COA 26, ¶ 15, 327 P.3d 340, 345 (Under Colorado law, the elements of a defamation claim are "(1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication.").

abuse and sexual trafficking victim; to destroy Giuffre's reputation and credibility" and that Defendant "made her false statements knowing full well that they were completely false. Accordingly, she made her statements with actual and deliberate malice, the highest degree of awareness of falsity." Compl. at ¶¶ 8-9. Fourth, Ms. Giuffre pled defamation *per se*, alleging that the false statements "exposed Giuffre to public contempt, ridicule, aversion, and disgrace, and induced an evil opinion of her in the minds of right-thinking persons." Furthermore, the Complaint alleges that Defendant's defamatory statements "tended to injure Giuffre in her professional capacity as the president of a non-profit corporation designed to help victims of sex trafficking, inasmuch as they destroyed her credibility and reputation among members of the community that seeks her help and that she seeks to serve." *See* McCawley Decl., Ex. 1, Compl. at ¶ 11.

Not only has Ms. Giuffre fully pled defamation, but also the Complaint alleges many supporting facts, giving Defendant full notice of the nature of the action. Ms. Giuffre has "specif[ied] who made the statements, when they were made, to whom they were made and in what context they were made." *Deutsche Asset Mgmt., Inc. v. Callaghan*, No. 01 Civ 4426 CBM, 2004 WL 758303, at *12. As to "who" made the statements, Ms. Giuffre specified that Defendant's "agent, Ross Gow" gave the statement under Defendant's authority, and that Defendant made the statement in Manhattan. *See* McCawley Decl., Ex. 1, Compl. at ¶ 29 and ¶ 37. As to the "when," the Complaint alleges the very days they were made: "On or about January 3, 2014" and "[o]n or about January 4, 2015." *See* McCawley Decl., Ex. 1, Compl. at ¶ 29 and ¶ 37. Additionally, paragraphs 9 through 29 of the Complaint provides ample "context," narrating the factual history of Defendant's abuse of Ms. Giuffre and referring to Defendant's statements published by the media. These defamatory statements, as alleged in the Complaint, were widely disseminated internationally and online, as acknowledged by Defendant in the instant motion. MTD at p. 18. Accordingly, not only does the Complaint plead all of the elements of defamation

22

*per se*, but it gives ample factual backing to support those elements. Defendant does not deny

making these statements, nor challenge the accuracy of their dissemination by the media.

Finally, Defendant's statements impugning Ms. Giuffre honesty and calling her a liar are

especially defamatory because they disparage Ms. Giuffre in her profession as president and

founder of the not-for-profit whose mission is to fight sexual abuse and human trafficking. *Celle v.*

*Filipino Reporter Enterprises, Inc.*, 209 F.3d 163, 179-80 (2d Cir. 2000) ("[I]t is actionable

without proof of damage to say of a physician that he is a butcher ..., of an attorney that he is a

shyster, of a school teacher that he has been guilty of improper conduct as to his pupils, of a

clergyman that he is the subject of scandalous rumors, of a chauffeur that he is habitually drinking,

of a merchant that his credit is bad or that he sells adulterated goods, of a public officer that he has

accepted a bribe or has used his office for corrupt purposes … - since these things discredit [one]

in his chosen calling."). Defendant's statements that Ms. Giuffre lied about her own past sex abuse

discredits Ms. Giuffre in her "chosen calling" and profession of being an advocate for sex abuse

victims. They paint her as a faker. Defendant's statements tell the audience that Defendant knows

that Ms. Giuffre's professional endeavors are built upon a lie, thus destroying both Ms. Giuffre's

reputation and the reputation and credibility of her foundation.

## C.  Ms. Giuffre Has Pled Defamation *Per Se* And Does Not Need To Plead Special Damages.

Ms. Giuffre has sufficiently alleged defamation *per se* under New York law, suing in libel

based on Defendant's published defamatory statements. Ms. Giuffre need not plead or prove

special damages because the defamatory statements "tend to expose the plaintiff to public

contempt, ridicule, aversion or disgrace, or induce an evil opinion of [her] in the minds of right-

thinking person, and to deprive [her] of their friendly intercourse in society." *Matherson v.*

*Marchello*, 100 A.D.2d 233, 235, 473 N.Y.S.2d 998, 1000-01 (1984). Furthermore, Defendant is

wholly incorrect in stating that a defamation per se claim is limited to professionals who are defamed within the context of their profession and suffer damages relating to their profession.

Here, Defendant confuses, or deliberately conflates, slander and libel, two types of defamation with substantially different elements required to state a claim. Defendant cites *Liberman v. Gelstein*, for the proposition that, in order to be actionable, Defendant's statements "'must be made with reference to a matter of significance and importance for [the plaintiff's profession, trade or office].'" 80 N.Y.2d 429, 431, 605 N.E.2d 344 (1992). However, *Liberman* concerned a ***slander*** case. Slander is defamation that is ***spoken*** by defendant, and an action lies in slander for very limited types of speech. However, those limitations are irrelevant in this case because this case concerns ***libel***, a form of defamation that is a ***written or published statement*** (and, as such, typically far more widely disseminated). Pleading and proving libel *per se* is not limited to the four circumstances required for slander, but has a much broader definition.[18] Similarly, the other cases cited by Defendant, *Thompson v. Bosswick*, 855 F. Supp. 2d 67 (S.D.N.Y. 2012) and *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 503 (S.D.N.Y. 2011), also concerned slander, not libel and, therefore, their holdings are inapplicable.

Instead, in libel actions, the "challenged language is actionable per se if it tends to expose another to 'public hatred, shame, obloquy, contempt, ridicule, aversion, ostracism, degradation, or disgrace' or 'to induce an evil opinion of one in the minds of right-thinking persons and to deprive one of one's confidence and friendly intercourse in society' or tends to disparage a person in the way of his office, profession or trade." *Idema v. Wager*, 120 F. Supp. 2d 361, 367 (S.D.N.Y. 2000)

---

[18] "[S]lander per se" consists of statements (i) charging plaintiff with a serious crime; (ii) that end to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman. *Liberman v. Gelstein*, 80 N.Y.2d 429, 435, 605 N.E.2d 344 (1992).

*aff'd*, 29 F. App'x 676 (2d Cir. 2002) (internal citations omitted); *Massre v. Bibiyan*, No. 12 CIV. 6615 KPF, 2014 WL 2722849, at *10 (S.D.N.Y. June 16, 2014).

Ms. Giuffre has pled **libel** per se, as the statement that Defendant lied about being a sexual abuse victim is more than sufficient to expose her to "public contempt, ridicule, aversion, and disgrace, and induced an evil opinion of her in the minds of right-thinking persons." *See* McCawley Decl., Ex. 1, Compl. at ¶ 10. Additionally, Ms. Giuffre pled that "Maxwell's false statements also constitute libel per se inasmuch as they tended to injure Giuffre in her professional capacity as the president of a non-profit corporation designed to help victims of sex trafficking, and inasmuch as they destroyed her credibility and reputation among members of the community that seeks her help and that she seeks to serve." *See* McCawley Decl., Ex. 1, Compl. at ¶ 11. Accordingly, Ms. Giuffre has pled libel *per se*.

## CONCLUSION

Ms. Giuffre has set forth a well pled claim for defamation. The Court should accordingly deny Defendant's Motion to Dismiss and allow the case to proceed.

Dated: December 17, 2015

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By:  /s/ Sigrid McCawley
    Sigrid McCawley (Pro Hac Vice)
    Boies, Schiller & Flexner LLP
    401 E. Las Olas Blvd., Suite 1200
    Ft. Lauderdale, FL 33301
    (954) 356-0011

    David Boies
    Boies, Schiller & Flexner LLP
    333 Main Street
    Armonk, NY 10504

Ellen Brockman
Boies, Schiller & Flexner LLP
575 Lexington Ave
New York, New York 10022
(212) 446-2300

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 17, 2015, I electronically filed the foregoing

document with the Clerk of Court by using the CM/ECF system.  I also certify that the foregoing

document is being served this day on the individuals identified below via transmission of Notices of

Electronic Filing generated by CM/ECF.

Laura A. Menninger, Esq.
HADDON, MORGAN & FOREMAN, P.C.
150 East 10th Avenue
Denver, Colorado 80203
Tel: (303) 831-7364
Fax: (303) 832-2628
Email: lmenninger@hmflaw.com

/s/ Sigrid S. McCawley
Sigrid S. McCawley