UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Virginia L. Giuffre,

Plaintiff,

Ghislaine Maxwell,

Defendant.

Case No.:   15-cv-07433-RWS

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS COMPLAINT**

Laura A. Menninger
HADDON, MORGAN AND FOREMAN, P.C.
East 10th Avenue
Denver, CO 80203
303.831.7364

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 1

   I.    PLAINTIFF FAILED TO PLAUSIBLY PLEAD DEFAMATION ....................... 1

     A.   Plaintiff Failed to Adequately Plead a Defamation Claim. ................................ 1

     B.   Ms. Maxwell's Statement In Context Is Not Defamatory ................................. 3

  II.    MS. MAXWELL'S STATEMENTS ARE PROTECTED BY PRIVILEGE .......... 6

     A.   Qualified Privilege May Form the Basis for a Rule 12(b)(6) Dismissal ............. 6

     B.   Ms. Maxwell's Statements Are Protected by the Self-Defense Privilege .......... 7

     C.   Ms. Maxwell's Statements Are Protected by the Pre-Litigation Privilege ......... 9

CONCLUSION ....................................................................................................... 10

## INTRODUCTION

The primary focus of any defamation claim should be the alleged defamatory statements themselves. But Ms. Maxwell's statements have never been Plaintiff's primary focus in this case. Instead, in a transparent attempt to direct the Court's attention away from the actual issues under consideration—whether Ms. Maxwell's statements are truly defamatory, whether Plaintiff properly pled a defamation claim, and whether Ms. Maxwell was privileged to make her statements—Plaintiff spends the bulk of her opposition repeating the same conclusory, unsupported and false allegations that she was sexually abused by Ms. Maxwell. Plaintiff spends the remainder of her opposition selectively misunderstanding applicable federal and New York state defamation law. When correctly applying the law, it is clear that there are ample grounds for which this Court can, and should, dismiss Plaintiff's claim.

## ARGUMENT

## I.   PLAINTIFF FAILED TO PLAUSIBLY PLEAD DEFAMATION

### A.   <u>Plaintiff Failed to Adequately Plead a Defamation Claim.</u>

Apart from bombast, the Complaint fails to adequately plead a defamation claim. <u>First</u>, the Complaint's sentence fragments and selective quotes do not aver any defamatory statement. *Scholastic, Inc. v. Stouffer*, 124 F.Supp.2d 836, 849 (S.D.N.Y. 2000) (defamation claim "only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated"); *Dillon v. City of N.Y.,* 261 A.D.2d 34, 39-40 (1st Dep't 1999) (dismissing defamation complaint for, among other things, failing to specify the actual defamatory words). The only actual words attributed to Ms. Maxwell in the Complaint are: "against Ghislaine Maxwell are untrue," "shown to be untrue," "claims are obvious lies," and "I am referring to the statement that we made."  Compl. ¶ 30. Beyond that, Plaintiff relies on conclusory, self-serving and in some cases flatly incorrect characterizations of the published Statement. The Complaint refers to an "additional false

statement" made on January 3 (Compl. ¶ 30), but never explains the words it was "in addition to."  It describes a statement "incorporated by reference" issued "earlier,' (Compl. ¶ 31), but omits the earlier statement and to whom, when or where it was made.[1]  It alleges statements made "in the Southern District and elsewhere" by Ms. Maxwell's agent, Ross Gow, (Compl. ¶¶ 29, 30, 32), but attaches a 2011 statement attributed to Mr. Gow in London. McCawley Decl., Ex. 2. Because the Complaint lacks allegations of the subject Statement, with specificity and in context, the defamation claim should be dismissed.

Second, the Complaint does not contain allegations as *to whom* statement was made. In lieu of that information, Plaintiff offers only *who made* the statement, a point not in dispute. Pl.'s Opp'n at 22. As *to whom*, she alleges the statements were "widely disseminated" to the "media and public."  Pl.'s Opp'n at 22; Compl. ¶ 30. Twice this Court deemed similar pleadings insufficient. *Hawkins v. City of N.Y.*,  No. 99 Civ. 11704 (RWS), 2005 WL 1861855, at *18 (S.D.N.Y. Aug. 4, 2005) (pleading fatally defective due to "failure to identify…the individuals to whom the statement was allegedly made"); *Cruz v. Marchetto*, No. 11 Civ. 8378, 2012 WL 4513484, at *4 (S.D.N.Y. Oct. 1, 2012) (dismissing complaint which "alleges in a conclusory manner that . . . statements . . . ended up in the headlines and quoted in the media").

Third, the Complaint lacks sufficient allegations to establish defamation *per se*. Plaintiff insists that the pleading standard is far more lenient for libel claims than for slander claims. Pl.'s Opp'n at 24 (citing *Liberman v. Gelstein*, 80 N.Y.2d 429 (N.Y. 1992)). Not so. Rather, "the standard for determining whether a statement concerning a plaintiff's business, profession or trade is libelous *per se* follows the same rules, articulated in *Liberman*…, as the standard for slander *per se*."  *Id. Jewell v. NYP Holdings, Inc.*, 23 F.Supp.2d 348, 400 (S.D.N.Y 1998). In fact, addressing a *libel* claim, this Court specifically noted that "[d]efamation *per se* has been

---

[1]   Indeed, the Opposition further confounds by disclaiming the Complaint is based on the 2011 statement (Pl.'s Opp'n at 4, 13 ) but then suggests the Complaint incorporates that very statement (Pl.'s Opp'n at 19 & n.15).

defined both as statements that cast doubt on a particular quality at the very heart of the profession and statements that impugn the basic integrity of a business." *Kforce, Inc. v. Alden Personnel, Inc.*, 288 F.Supp.2d 513, 516 (S.D.N.Y. 2003).

Plaintiff nevertheless unsuccessfully attempts to establish a connection between the subject Statement and her "profession" by pointing to her incorporation of the Victims Refuse Silence, Inc. organization. Pl.'s Opp'n at 25. This is a red herring. No court has recognized "victim" as a "profession" as to which a plaintiff's integrity could be impugned. In any event, her status as a professional victim only sprang into existence a mere 10 days before the January 3 Statement was issued. Compl. ¶ 24. Unsurprisingly, the Complaint is devoid of any factual allegations that Ms. Maxwell knew about Plaintiff's newfound "chosen calling," nor that Ms. Maxwell *targeted* any statement at Plaintiff's "profession." *Thompson v. Bosswick*, 855 F. Supp.2d 67 (S.D.N.Y. 2012) ("The statement must be targeted at the specific standards of performance relevant to plaintiff's business…"); *Thai v. Cayre Grp., Ltd.*, 726 F.Supp.2d. 323, 336 (S.D.N.Y. 2010) (absence of "facts to support the inference that [the subject] statement imputed incompetence, incapacity or unfitness in the performance of [her] profession" as a bookkeeper warranted dismissal of defamation *per se* claim). Consequently, Plaintiff failed to adequately plead facts supporting defamation *per se* or any special damages, and the defamation claim should be dismissed.

### B.   Ms. Maxwell's Statement[2] In Context Is Not Defamatory

As to defamation claims, the Second Circuit holds "it is for the court to determine in the

---

[2] Plaintiff apparently has abandoned any claim concerning the January 4 **oral** statement attributed to Ms. Maxwell in the Complaint. *Cf.* Compl. ¶ 24 (oral statement by Maxwell); Pl.'s Opp'n at 11-12 (contrasting a case "that sounded in *slander* (spoken defamation), whereas this is a *libel* case (written defamation)"); *Id.* at 24 ("[A]n action lies in slander for very limited types of speech. However, those limitations are irrelevant in this case because this case concerns *libel*, a form of defamation that is a *written or published statement.*"). Plaintiff's Opposition also failed to address how that spoken statement could be construed as defamatory. *Compare* Mot. to Dism. at 5-6, 19-20 (video published under headline "Ghislaine Maxwell denies comment on allegations she is a madam" not defamatory); Pl.'s Opp'n (omitting any contrary argument).

first instance whether the words are susceptible of a defamatory meaning." *Idema v. Wager*, 29 Fed.Appx. 676, 678 (2d Cir. 2002). "In performing this task, the court must read the offending words *in the context of the whole article* and test them against the 'understanding of the average reader.'" *Id.* (emphasis added). Plaintiff suggests without citation that this contextual reading cannot be performed absent "a fully developed record." Pl.'s Opp'n at 18-19. The numerous cases she cites in which courts have been able to perform their evaluation – because the complaint included the entire subject statement – belie her claim. While Plaintiff purports to "use direct, word-for-word quotes of Defendant's press statements, giving all the particulars of their origination," (Pl.'s Opp'n at 19), the Complaint shows otherwise. This alone warrants dismissal. *Dillon*, 261 A.D.2d at 39-40 (dismissing defamation claim absent entire subject statement, noting "the defect is all the more curious in that [plaintiff] concedes being a recipient of the [complained of] letter, presumably enabling him to quote from it at length").

In apparent acknowledgement of her error, Plaintiff now includes a fuller version of the subject statement "in an abundance of caution" on the last page of her attorney's declaration. McCawley Decl., Ex. 3 at 2. When that statement (still incomplete, with an ellipsis and brackets) is read in context, no average reader could reasonably find it defamatory in meaning. First and foremost, the Statement is a general denial. No matter how many times Plaintiff baldly asserts she was "called a liar" or "dishonest," the words "liar" or "dishonest" appear nowhere therein. Thus, all of Plaintiff's legal arguments concerning the term "liar" are inapposite. Pl.'s Opp'n at 10-11.[3]  Indeed, the portion of the Statement referencing "obvious lies" immediately follows the sentence:  "Each time the story is retold it changes, with new salacious details about public figures."  Even Judge Marra noted in his April 7 Order that Plaintiff's latest story involves

---

[3] Plaintiff's reference to *Brach v. Congregation Yetev Lev D'Satmar, Inc.*, 696 N.Y.S.2d 496, 498 (2d Dep't 1999), is another example where a court found that the defendant did more than issue a general denial. There, the defendant published an article stating that the defendants won a court case "by lies and deceit" *and* called plaintiff a robber. *Id.* Plaintiff asks this Court to ignore the significance of the latter statement.

"lurid" claims concerning "numerous American politicians, powerful business executives, foreign presidents, a well-known Prime Minister, and other world leaders." Menninger Decl., Ex. C at 5. Plaintiff's story is palpably incredible, as even Judge Marra suggested in his Order.

In any event, New York courts uniformly agree general denials cannot alone give rise to defamation claims. *Indep. Living Aids, Inc. v. Maxi-Aids, Inc.,* 981 F.Supp.124, 127-28 (E.D.N.Y. 1997) ("Read in the context of the entire article, [defendant's] remarks, calling [plaintiff] and others 'liars' can only be understood as a denial of their accusations.")[4]; *Porter v. Saar*, 688 N.Y.S. 2d 137, 139 (1st Dep't 1999) ("The comments attributed to defendant…in the *New York Post* were in the nature of a general denial of plaintiff['s] accusations of misconduct, not an attack on plaintiffs."); *McNamee v. Clemens*, 762 F.Supp.2d 584, 601 (E.D.N.Y. 2011) ("[G]eneral denials aren't actionable."); *Davis v. Boeheim*, 24 N.Y.3d 262, 271-72 (N.Y. 2014).

Plaintiff unsuccessfully attempts to analogize the subject Statement to those in *Boeheim* and *Clemens*. Yet in both cases those statements clearly crossed the line from "general denial to specific accusations reasonably susceptible of a defamatory meaning." *Clemens*, 762 F.Supp.2d at 601. Ms. Maxwell's statement does not. First, in *Boeheim*, the defendant coupled statements regarding plaintiff's accusations as "false allegations" and "a lie" with detailed claims regarding the accusers as "liars" who were financially motivated. Specifically, Boeheim stated *inter alia* "I believe they saw what happened at Penn State [a similar case of sex abuse], and they are using ESPN to get money." *Id.* The N.Y. Court of Appeals while reiterating that "general denials are not actionable," found the assertion plaintiff lied "for monetary gain" would lead a "reasonable reader" to believe "the challenged statements were conveying facts about the…plaintiff." *Id.* Similarly, in *Clemens*, the defendant, in addition to denying plaintiff's allegations, called

---

[4] Plaintiff attempts to distinguish *Independent Living Aids* as a slander case. Pl.'s Opp'n at 11-12. It is a distinction without a difference. The allegedly defamatory statements there were contained in an interview intended for and ultimately published in a magazine article. 981 F.Supp.at 127-28. The court analyzed the context within which the statement was *written*. *Id.*

plaintiff "troubled and unreliable," accused him of fabricating evidence, threatened "anybody who [believes plaintiff] better start looking for a hell of a good lawyer," and stated he is "constantly lying. . . I warn you five to six months from now, any of you that have jumped on the bandwagon that Roger took steroids and assumed anything Brian McNamee had to say will be embarrassed." 762 F.Supp.2d at 591. Based on the aggressive nature of Clemens' statements towards the plaintiff, the court had an easy time concluding they went beyond general denials. *Id.* at 602. As the court noted, "[Clemens'] statements were direct and often forcefully made, there was nothing loose or vague about them." *Id.*

The Statement here stands in stark contrast to Boeheim and Clemens'. Each piece of Ms. Maxwell's alleged Statement shares one important characteristic: it decries Plaintiff's *allegations* as untrue, while saying nothing about Plaintiff herself. Ms. Maxwell never claimed Plaintiff had an ulterior motive (*Boeheim*), or attacked the accuser's mental state (*Clemens*), or referred to the accuser as a criminal (*Brach*, a robber; *Clemens* manufacturing evidence).

Throughout her Opposition, Plaintiff improperly puts various words in Ms. Maxwell's mouth, e.g., repeatedly attributing to her the words "liar" and "dishonest." Pl.'s Opp'n at 10-11. Of course, she cannot point to any publication in which Ms. Maxwell used those words. By Plaintiff's logic, a general denial may give rise to a defamation lawsuit. Pl.'s Opp'n at 10. Fortunately, the law provides otherwise. Because Ms. Maxwell simply denied Plaintiff's malicious accusations, her Statement is not actionable. *See Foretich v. Cap. Cities/ABC, Inc.*, 37 F.3d 1541, 1562-63 (4th Cir. 1991) (measured replies non-actionable despite using labels such as "heinous lies," "downright filth," and "filthy dirt…like from the bottom of a cesspool").

## II.     MS. MAXWELL'S STATEMENTS ARE PROTECTED BY PRIVILEGE

### A.     <u>Qualified Privilege May Form the Basis for a Rule 12(b)(6) Dismissal</u>

Plaintiff's protestations aside, numerous federal and state courts have dismissed

defamation complaints based on a qualified privilege. *See, e.g., Front, Inc. v. Khalil*, 24 N.Y.3d

713 (N.Y. 2015) (affirming motion to dismiss based on pre-litigation qualified privilege);

*Orenstein v. Figel*, 677 F.Supp.2d 706, 722 (S.D.N.Y. 2009); *Fuji Photo Film U.S.A., Inc., v.*

*McNulty*, 669 F.Supp.2d 405, 415-16 (S.D.N.Y. 2009). While conceding that the absence of

privilege is an element of defamation, Opp'n at 20-21, Plaintiff nevertheless cites to (primarily

N.Y. state) cases in which the plaintiffs, unlike herself, properly alleged **facts** which could serve

to defeat a qualified privilege. As New York's highest court found:

> While there are numerous cases in the books in which it is said that
> as to privileged communications the good faith of the defendant
> and the existence of actual malice are questions of fact for the jury,
> the expression must not be misunderstood. Those questions are for
> the jury *only where there is evidence in the case warranting their*
> *submission to the jury*, and the burden of proof is on the plaintiff.

*Shapiro v. Health Ins. Plan*, 7 N.Y.2d 56, 61 (N.Y. 1959) (emphasis added). As detailed below,

Plaintiff has failed to carry her pleading burden here.

### B.    Ms. Maxwell's Statements Are Protected by the Self-Defense Privilege

The long-recognized self-defense privilege "is available to one who has been defamed in

the first instance, and who, in response to the attack, responds in kind."  *Shenkman v. O'Malley*,

2 A.D.2d 567, 574 (1st Dep't 1956). The "respon[se] in kind" is what is at issue here. Plaintiff

concedes she began the public verbal assault on Ms. Maxwell. Compl. ¶ 17, 26-27.  Plaintiff also

correctly acknowledges that to defeat the privilege, the Complaint must properly allege it was

abused. Pl.'s Opp'n at 5. Abuse of privilege in this context requires a showing that the reply (1)

includes substantial defamatory matter irrelevant or non-responsive to the initial statement; (2)

includes substantial defamatory material disproportionate to the initial statement; (3) is

excessively publicized; or (4) *is made with malice in the sense of spite or ill will*."  Sack, Robert

D*., Sack on Defamation: Libel Slander and Related Problems* (Practicing Law Inst., Apr. 2015

ed.) at Kindle Loc. 20357-20370; Restatement (Second) of Torts, §§ 599, 603-605A (1977). It is

malice prong Plaintiff fundamentally misunderstands and inadequately pleads.

First of all, the malice, "in the sense of spite or ill will," must, post-*Twombly* and *Iqbal*[5],

be based on "factual content," not mere "legal conclusions, deductions or opinions couched as

factual allegations." *Thai v. Cayre Grp.*, 726 F.Supp.2d at 327; *see also Orenstein,* 677

F.Supp.2d at 711 (dismissing conclusory claims of malice where Complaint "provide[d] neither

factual support for these conclusions nor any explanation of why [defendant] would have an

interest in acting maliciously toward the [plaintiff]"); *Fuji Film*, 669 F.Supp.2d at 416

(dismissing complaint in which "allegations [defendant] acted maliciously are conclusory and

unsupported by factual allegations).[6] Here, Plaintiff resorted only to conclusory assertions of

malice, without factual support. *See* Compl. ¶¶ 8, 10, 17, 30, 32, 34-35, 37, Count I ¶¶ 1-5, 8.

Second, apart from her conclusory allegations, Plaintiff mistakenly claims she can defeat

malice simply by asserting the Statement was made with knowledge of its falsity. In the self-

defense context, not so. As described in *Buckley v. Vidal* with regard to malice in the context of

the self-defense privilege:

> The malice issue resolves itself into two questions—was it
> reasonable for [defendant] to believe that his interests in his own
> reputation had been unlawfully invaded by [plaintiff], and was the
> letter which he published in response thereto reasonably necessary
> to defend himself.

F.Supp. 1051, 1056 (1st Dep't 1971). In addressing the malice question, the court noted that the

truth of defendant's letter was irrelevant. Instead, the letter was privileged because it amounted

---

[5] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[6] Not surprisingly, Plaintiff does not cite to a single federal authority post *Twombly* and *Iqbal* in support of her argument that a qualified privilege can be defeated at the pleading stage by mere conclusory allegations of malice. Pl.'s Opp'n at 7-9. In any event, contrary state cases cited by Plaintiff contained more than conclusory allegations of malice. *Kamchi v. Weissman*, 1 N.Y.S.3d 169, 182 (2d Dep't 2014) (complaint *sufficiently* alleged malice supported by statements undermining Rabbi's authority *and* statements reflecting adversely on his competence as a rabbi); *Long Marubeni Am. Corp.*, 406 F.Supp.2d 285, 298 (S.D.N.Y. 2005) (malice supported "with at least some facts"). Likewise, in *Block v. First Blood Assoc.*, 691 F.Supp. 685, 699-700 (S.D.N.Y. 1988), this Court declined to grant summary judgment on the basis of a qualified privilege because "sufficient **evidence** [was] adduced to support the inference that [defendant] acted with malice," i.e., defendant threatened plaintiff with demand for attorneys' fees, which "may imply an intent to injure"—i.e. malice. *Id.*

to "a tempered and reasoned response…which constituted an appropriate reaction by [defendant] to a situation which seemed to threaten his reputation." *Id.* at 1056-57.

Here, as in *Buckley*, Ms. Maxwell's Statement was a "tempered and reasoned response" to Plaintiff's vicious character attacks. The Statement addressed only Plaintiff's allegations — calling them "untrue" —while avoiding any attack on Plaintiff's character generally. Plaintiff has not and cannot point to any facts in the Complaint showing the subject Statement "includes substantial defamatory matter that is irrelevant or non-responsive to the initial statement," or "that is disproportionate to the initial statement;" nor that the Statement was excessively publicized," relative to the wide publicity net cast by Plaintiff with her "exclusive interviews" to British media and now-stricken litigation declaration. Without any evidence that Ms. Maxwell "abused" the self-defense privilege, Plaintiff's conclusory allegations to the contrary fall far short of the federal pleading standards of *Twombly* and *Iqbal* and should not be accepted as true. *See Orenstein*, 677 F.Supp.2d at 711 ("[Plaintiff] does not allege malice plausibly to overcome the qualified privilege."); *see also Dillon*, 704 N.Y.S.2d at 7 ("Actual malice is not supported in these pleadings where allegations of ill-will and spite manifested by the letter *rest solely on surmise and conjecture*.") (emphasis added).

C.    **Ms. Maxwell's Statements Are Protected by the Pre-Litigation Privilege**

Each time Ms. Maxwell issued a statement in response to Plaintiff's accusations, she specifically noted that she would be forced to "seek redress," including legal redress, upon repetition by the press of the accusations. In 2011, Ms. Maxwell's attorneys informed various newspapers she intends to "take legal action" if the newspapers continue to print Plaintiff's defamatory accusations. Mot. to Dism. at 14; McCawley Decl., Ex. 2. The January 3 Statement reaffirmed her "original response" (from 2011), further noting she "strongly denies allegations of an unsavoury nature, which have appeared in the British press and elsewhere *and reserves her*

9

*right to seek redress at the repetition of such claims*."  *Id.* at 15; McCawley Decl., Ex. 3.

New York's highest court stated recently in *Khalil*, 24 N.Y.3d at 720, such statements, made in anticipation of litigation, are protected by a qualified privilege unless the statements were made with the intent to "bully, harass, or intimidate" their adversaries. True to form, Plaintiff baldly asserts that the Statement here was made "for an inappropriate purpose, to bully, harass, and intimidate Ms. Giuffre."  Pl.'s Opp'n at 14. There is simply no factual basis alleged in the Complaint, in Plaintiff's Opposition, or certainly in the Statement itself to evidence such an intent. *Cf. Buckley, supra* at 1056 ("There is nothing in either the content or tone of the letter which could possibly suggest, as Vidal contends, that Buckley's intent here was one of 'poisoning and closing the available publishing markets of defendant as an author and essayist, and so ruining him economically.'"). The privilege therefore applies so as to protect Ms. Maxwell from a claim of defamation.

## CONCLUSION

For the foregoing reasons, Ms. Maxwell respectfully requests that this Court grant her Motion to Dismiss.

Dated:  December 28, 2015.

Respectfully submitted,


*s/ Laura A. Menninger*
Laura A. Menninger (LM-1374)
HADDON, MORGAN AND FOREMAN, P.C.
East 10th Avenue
Denver, CO 80203
Phone:  303.831.7364
Fax:       303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*


CERTIFICATE OF SERVICE


I certify that on December 28, 2015, I electronically filed this *Reply Memorandum of Law*

*in Support of Motion to Dismiss Complaint* with the Clerk of Court using the CM/ECF system

which will send notification to all counsel of record including the following:


Sigrid S. McCawley
Boies, Schiller & Flexner, LLP
East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com

*s/ Brenda Rodriguez*