United States District Court
Southern District of New York

Virginia L. Giuffre,

    Plaintiff,               Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

    Defendant.
_____/

**PLAIINTIFF, VIRGINIA GIUFFRE'S MOTION TO COMPEL THE PRODUCTION OF
DOCUMENTS SUBJECT TO IMPROPER CLAIM OF PRIVILEGE**

BOIES, SCHILLER & FLEXNER LLP

Sigrid McCawley (*Admitted Pro Hac Vice*)
Boies, Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

David Boies
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Ellen Brockman
Boies, Schiller & Flexner LLP
575 Lexington Ave
New York, New York 10022
(212) 446-2300

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I. PRELIMINARY STATEMENT ............................................................................... 1

II. LEGAL ARGUMENT ............................................................................................... 2

    1. Legal Standard. ............................................................................................... 2

        a. New York Privilege Law Controls. ................................................... 2

        b. The Common Interest Privilege Does Not Apply. ............................. 3

    2. No Privilege Attaches To Communications Between Maxwell And
Non-Attorneys. ................................................................................................ 6

        a. Communications With Non-Attorney Jeffrey Epstein And
Non-Attorney Ross Gow. ................................................................... 6

        b. Communications Among Maxwell, Non-Attorney Ross Gow,
And Attorneys. ................................................................................... 7

        c. Communications Among Maxwell, Non-Attorney Mark Cohen,
And Attorney ...................................................................................... 9

        d. Communications Involving Maxwell And Brett Jaffe Or
Philip Barden ..................................................................................... 10

    3. Maxwell's Privilege Log Descriptions Are Inadequate. ............................... 12

CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

Page

**Cases**

*Allied Irish Banks v. Bank of Am., N.A.,*
   240 F.R.D. 96 (S.D.N.Y. 2007).................................................................................2, 3

*Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.,*
   499 F. Supp. 2d 475 (S.D.N.Y. 2007) .........................................................................12

*Browne of N.Y.C., Inc. v. AmBase Corp.,*
   150 F.R.D. 465 (S.D.N.Y. 1993).................................................................................3

*Century Indem. Co. v. Brooklyn Union Gas Co.,*
   22 Misc. 3d 1109(A), 880 N.Y.S. 2d 222 (Sup. Ct. 2008)..........................................11

*Chevron Corp. v. Donziger*
   296 F.R.D. 168 (S.D.N.Y. 2013)..........................................................................4, 6, 13

*Delta Fin. Corp. v. Morrison*,
   13 Misc. 3d 442, 820 N.Y.S. 2d 745 (Sup. Ct. 2006)...................................................3

*Dixon v. 80 Pine St. Corp.*,
   516 F. 2d 1278 (2d Cir. 1975) .....................................................................................2

*Egiazaryan v. Zalmayev*,
   290 F.R.D. 421 (S.D.N.Y. 2013)........................................................................passim

*Fine v. Facet Aerospace Prod. Co.,*
   133 F.R.D. 439 (S.D.N.Y. 1990) ...............................................................................11

*Finkelman v. Klaus*,
   2007 WL 4303538 (N.Y.Sup. Ct. Nov. 28, 2007).....................................................6, 7

*Grinnell Corp. v. ITT Corp.*
   222 F.R.D. 74 (S.D.N.Y. 2003)..................................................................................13

*In re Grand Jury Subpoena Duces Tecum Served Upon Shargel*,
   742 F.2d 61 (2d Cir. 1984) ........................................................................................10

*In re Nassau Cnty. Grand Jury Subpoena Duces Tecum Dated June 24, 2003*,
   4 N.Y. 3d 665, 797 N.Y.S. 2d 790, 830 N.E. 2d 1118 ................................................2

*In re Rivastigmine II Patent Litig.*,
   237 F.R.D. 69 (S.D.N.Y. 2006)...................................................................................7

*Klein, Varble & Associates, P.C. v. DeCrescenzo*,
   39 Misc. 3d 1240(A), 975 N.Y.S. 2d 366 (Sup. Ct. 2013) ................................................. 7, 9

*Nance v. Thompson Med. Co.*,
   173 F.R.D. 178 (E.D. Tex. 1997) ................................................................................................. 8

*NXIVM Corp. v. O'Hara*,
   241 F.R.D. 109 (N.D.N.Y. 2007) ................................................................................................. 8

*Pem-Am, Inc. v. Sunham Home Fashions, LLC*,
   No. 03 CIV. 1377JFKRLE, 2007 WL 3226156 (S.D.N.Y. Oct. 31, 2007) ................................ 4

*People v. Mitchell*,
   58 N.Y.2d 368, 461 N.Y.S. 2d 267, 448 N.E.2d 121 (1983) ...................................................... 3

*Safeco Ins. Co. of America v. M.E.S., Inc.*,
   No. 09-CV-3312, 2013 WL 1680684 (E.D.N.Y. Apr. 17, 2013) ............................................. 13

*Sarfati v. Bertino*,
   24 Misc. 3d 133(A), 890 N.Y.S.2d 371 (App. Term 2009) ..................................................... 10

*S.E.C. v. Yorkville Advisors, LLC*,
   300 F.R.D. 152 (S.D.N.Y. 2014) ..................................................................................... 1, 12, 13

*Stenovich v. Wachtell, Lipton, Rosen & Katz*
   195 Misc. 2d 99, 756 N.Y.S. 2d 376 (Sup. Ct. 2003) ............................................................... 11

*United States v. Ackert*,
   169 F.3d 136 (2d Cir. 1999) ......................................................................................................... 9

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991) ..................................................................................................... 11

*Von Bulow by Auersperg v. Von Bulow*,
   811 F. 2d 136 (2d Cir. 1987), 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed. 2d 498 (1987) ............ 3

**Statutes**

Fed. R. Civ. P. 26 .................................................................................................................... 15

Plaintiff Virginia L. Giuffre, by and through undersigned counsel, respectfully submits this Motion to Compel Production of Documents Subject to Improper Claim of Attorney-Client Privilege and Common Interest Privilege. For the reasons set forth below, this Court should grant Plaintiff's Motion in its entirety.

I.  **PRELIMINARY STATEMENT**

Defendant Maxwell asserts improper claims of attorney-client privilege and common interest in her privilege log in a wrongful attempt to withhold responsive documents from discovery. *See* Declaration of Sigrid McCawley ("McCawley Decl.") at Exhibit 1, Maxwell's Privilege Log[1]. The documents at issue include communications solely between Maxwell and other non-attorneys, and communications between Maxwell and an attorney in which third parties are present, waiving the privilege. New York privilege law does not recognize such communications as being privileged in any way. To the contrary, New York state and federal courts require that such communications be produced.

In addition, Maxwell has failed to furnish an adequate privilege log, making it impossible for Plaintiff to assess the propriety of the privilege claims, and that is grounds for rejecting a claim of privilege, as discussed below. *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 164 (S.D.N.Y. 2014).

Finally, Ms. Maxwell's privilege log states that she is withholding documents "pursuant to British law" and Colorado law. However, British law and Colorado law do not apply to this case, as Maxwell has already conceded. New York law applies to this case. *See* Defendant Ghislaine Maxwell's Memorandum of Law In Support of Motion to Dismiss [D.E. 15] ("Maxwell MTD") at 7. ("Here, because Ms. Maxwell is a resident of New York, and one of the purported statements was made in New York, this state has arguably a more substantial

---

[1] The number of each log entry has been added for ease of reference in this Motion.

1

relationship to the alleged tort . . . For these reasons, Ms. Maxwell asks the Court to apply New York law . . ."). Accordingly, the privileges she claims must be under New York law, and all other claims of purported privilege are invalid.

## II. LEGAL ARGUMENT

### 1. Legal Standard

#### a. New York Privilege Law Controls

New York law governs the analysis of attorney-client privilege claims in this diversity action arising out of New York law.[2] *See Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 102 (S.D.N.Y. 2007) ("Because this Court's subject matter jurisdiction is based upon diversity . . . state law provides the rule of decision concerning the claim of attorney-client privilege"), citing Fed.R.Evid. 501; *Dixon v. 80 Pine St. Corp.*, 516 F.2d 1278, 1280 (2d Cir.1975). The privilege laws of any other jurisdiction, including Colorado and the United Kingdom, do not apply to Ms. Maxwell's documents.

New York's statutory codification of the attorney-client privilege provides as follows: "an attorney or his or her employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his or her employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication ...." N.Y. C.P.L.R. § 4503(a)(1).

"The attorney-client privilege protects confidential communications between a lawyer and client relating to legal advice sought by the client." *In re Nassau Cnty. Grand Jury Subpoena Duces Tecum Dated June 24, 2003*, 4 N.Y.3d 665, 678, 797 N.Y.S.2d 790, 830 N.E.2d 1118

---

[2] In the Motion to Dismiss, Maxwell does not dispute that NY law applies. *See* D.E. 15, Maxwell MTD at 7.

2

(2005) (citing *Priest v. Hennessy*, 51 N.Y.2d 62, 68–69, 431 N.Y.S.2d 511, 409 N.E.2d 983 (1980)) (additional citation omitted). For the privilege to apply, the communication itself must be "primarily or predominantly of a legal character." *Delta Fin. Corp. v. Morrison*, 13 Misc. 3d 441, 444, 820 N.Y.S.2d 745, 748 (Sup. Ct. 2006) "The critical inquiry is whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client." *Allied Irish Banks*, 240 F.R.D. at 103 (2007) (finding that party had not met its burden showing the applicability of the attorney-client privilege nor met its burden showing that any privilege has not been waived).

The party asserting privilege carries the burden to prove every element of the privilege. *People v. Mitchell*, 58 N.Y.2d 368, 373, 461 N.Y.S.2d 267, 448 N.E.2d 121 (1983). The party asserting privilege also has the burden to establish that there has been no waiver. *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 428 (S.D.N.Y. 2013). Such showings must be based on competent evidence, usually through affidavits, deposition testimony, or other admissible evidence. *See Von Bulow by Auersperg v. Von Bulow*, 811 F.2d 136, 147 (2d Cir.), cert. denied, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *Bowne of N.Y.C., Inc. v. AmBase Corp.*, 150 F.R.D. 465, 472 (S.D.N.Y.1993). *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 428 (S.D.N.Y. 2013)

    b.  <u>The Common Interest Privilege Dose Not Apply</u>

Maxwell asserts a "common interest" privilege in entries 6, 7, 11, 14, 15, 19, and 20, but on their face, as Maxwell herself describes them, these entries do not qualify for this privilege because no attorney is involved in the communications. The common interest privilege also fails for entry 16 because Ms. Maxwell fails to satisfy her burden in making such a claim.

"New York courts applying the common interest rule to civil proceedings have often looked to federal case law for guidance." *Egiazaryan*, 290 F.R.D. at 433. "The common interest

3

rule is an extension of the attorney-client privilege and not an independent basis for privilege." *Pem-Am., Inc. v. Sunham Home Fashions*, LLC, No. 03 CIV. 1377JFKRLE, 2007 WL 3226156, at *2 (S.D.N.Y. Oct. 31, 2007). "In order for a communication to be privileged within the common interest rule, it . . . ***must still meet the requirements of a privileged attorney-client communication***." *Id*. (Emphasis added).

"[T]he so-called joint defense privilege or common interest rule . . . serves to protect the confidentiality of communications passing from one party ***to the attorney for another party*** where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 203 (S.D.N.Y. 2013) (internal quotation marks omitted) (emphasis added). "A party asserting it first must establish that the documents purportedly subject to the rule are in fact attorney-client communications subject to the attorney-client privilege." *Id*. Further:

> [a]s in all claims of privilege arising out of the attorney-client relationship, a claim resting on the common interest rule requires a showing that the communication in question was given in confidence and that the client reasonably understood it to be so given. And once the party claiming common interest privilege has established that ***the documents in question are subject to the attorney-client privilege***, it must further show that (1) it shares a common legal interest with the party with whom the documents or information were shared, and (2) the statements for which protection is sought were designed to further that interest.

*Id*. (internal quotes omitted, emphasis added). The "joint defense" or "common interest" privilege does not protect any of the documents for which Ms. Maxwell invokes the privilege.

The "common interest" or "joint defense" privilege can only be invoked when at least one attorney for one of the parties is present for the communication. *Egiazaryan v. Zalmayev,* 290 F.R.D. 421, 434 (S.D.N.Y. 2013) ("communications are protected where there is a disclosure by A to the attorney representing B and vice-versa"). Therefore, Maxwell's

4

communications with other parties, outside the presence of counsel for either party, does not come under the common interest or joint defense privilege under New York law, and Maxwell must produce these communications.

Despite there being no attorney involved in the communications, Maxwell asserts the common interest privilege in all her communications with convicted pedophile Jeffrey Epstein. *See* entries 6, 7, 11, 14, 15, 19, and 20, Maxwell Privilege Log. In addition to the reasons above, this assertion also fails because "[t]he common interest rule does not apply merely because two parties share the same attorney or **because one party has an interest in a litigation involving another party**. Rather, '[t]here must be a substantial showing by parties attempting to invoke the protections of the privilege of the need for a common defense as opposed to the mere existence of a common problem.' *Finkelman v. Klaus*, 2007 WL 4303538, at *4 (N.Y.Sup.Ct. Nov. 28, 2007)." *Egiazaryan v. Zalmayev*, 290 F.R.D. at 434. To be sure, Ms. Maxwell and Jeffrey Epstein share a common problem: they both trafficked an underage girl for prostitution. However, Ms. Maxwell has offered no proof of a common interest under the applicable law between herself and Epstein that would satisfy this doctrine, a doctrine which cannot be invoked anyway, due to the absence of the attorney-client privilege for these non-attorney communications.

The remaining document that purports to be covered by the "common interest" privilege, entry 16, is an email communication between Philip Barden, Esq. and Martin Weinberg, Esq. This assertion of privilege also fails. Ms. Maxwell has made no showing whatsoever that any "common interest" exists between Barden and Weinberg; she doesn't even identify who they are or what clients they represent. Therefore, this communication does not fall within that privilege.

5

Furthermore, the burden of establishing that a "common interest" privilege applies always rests upon the person asserting it. *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 203 (S.D.N.Y. 2013). This showing must be made on a document-by-document basis, and based on competent evidence, usually through the admission of affidavits, deposition testimony or other admissible evidence. *Id*. Ms. Maxwell has put forth no evidence or argument that there exists a joint defense agreement between the parties represented by Mr. Barden and Mr. Weinberg; therefore, Maxwell has not met her burden in establishing that a "joint defense" agreement even exists.

For the foregoing reasons, Ms. Maxwell should produce entries 6, 7, 11, 14, 15, 16, 19, and 20 because she cannot, as a matter of law, show that the common interest privilege exist as to entries 6, 7, 11, 14, 15, 19, and 20, and she has failed to satisfy her burden to make any showing that there exists a common interest agreement that would protect entry number 16.

2. **No Privilege Attaches to Communications Between Maxwell and Non-Attorneys**

    a. Communications with Non-Attorney Jeffrey Epstein and Non-Attorney Ross Gow[3]

Maxwell wrongly asserts a "common interest" privilege for communications with convicted pedophile Jeffrey Epstein in entries 6, 7, 11, 14, 15, 19, 20, and with Ross Gow in entries 3, 4, and 5. As discussed above, no privilege can attach because no legal advice was sought or rendered among these three non-attorneys. Moreover, neither billionaire Epstein nor Ms. Maxwell is a legal professional, paralegal, or part of a related trade, nor are they directly supervised by an attorney. Therefore, the communications made among each other are not covered by any privilege that attaches to the communications to those acting "under the authority

---

[3] Ms. Maxwell's communications with Gow are key documents in this case, as the sole claim concerns Ms. Maxwell defaming Ms. Giuffre in the press, yet Maxwell has arbitrarily refused to produce this highly relevant discovery.

6

or control of an attorney." *See, e.g., In re Rivastigmine II,* 237 F.R.D. 69, 82 (S.D.N.Y. 2006). Even if legal advice was being discussed back and forth among those non-attorneys, such communications still would not fall under the ambit of attorney-client privilege (or, derivatively, common interest privilege) under New York law. *See Finkelman v. Klaus*, 17 Misc. 3d 1138(A), 856 N.Y.S.2d 23 (Sup. Ct. 2007) ("[The attorney-client privilege] does not, however, cover communications between a non-lawyer and a client that involve the conveyance of legal advice offered by the non-attorney, except perhaps when the non-lawyer is acting under the supervision or the direction of an attorney."). Accordingly, there is no mechanism that would attach any privilege to the communications between Ms. Maxwell and Jeffrey Epstein and between Ms. Maxwell and Ross Gow.

      b.    <u>Communications among Maxwell, Non-Attorney Ross Gow, and Attorneys</u>

Ms. Maxwell wrongly asserts attorney-client privilege for communications among her press agent and attorneys in entries 8, 10, 12, 13, and 18. This also fails. Under New York law, coordination of a media campaign among counsel and a public relations firm is not "legal advice" subject to attorney-client privilege. *See Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 431 (S.D.N.Y. 2013) (finding waiver of attorney-client privilege when the public relations firm participated in attorney-client communications: "[the party] has not shown that [the public relation's firm's] involvement was necessary to facilitate communications between himself and his counsel, as in the case of a translator or an accountant clarifying communications between an attorney and client").[4]

---

[4] "It is settled that communications made between a client and lawyer in the presence of a third party are not privileged." *Klein, Varble & Associates, P.C. v. DeCrescenzo*, 39 Misc. 3d 1240(A), 975 N.Y.S.2d 366 (Sup. Ct. 2013) *aff'd as modified*, 119 A.D.3d 655, 988 N.Y.S.2d 897 (2014).

7

The *Egiazaryan* court explained: "[the public relations firm] was not competent to act as [the party's] attorney and the mere fact that it was inserted into the legal decisionmaking process does nothing to explain why [the public relation's firm's] involvement was necessary to [the party's] obtaining legal advice from his actual attorneys. Instead, it simply demonstrates the circumstances under which the waiver occurred." *Id*. *See also NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 141 (N.D.N.Y. 2007) (agency exception to the attorney-client privilege is inapplicable under New York law to communications with a public relations firm "providing ordinary public relations advice and assist[ing] counsel in assessing the probable public reaction to various strategic alternatives") (citation and internal quotation marks omitted); *Nance v. Thompson Med. Co.*, 173 F.R.D. 178, 182–83 (E.D.Tex. 1997) (waiver of attorney-client privilege occurred under New York law when otherwise privileged documents were shared with a public relations firm).

Ross Gow is a public relations professional. He is a managing partner at ACUITY Reputation in London, a public relations firm.[5] ACUITY Reputation does not provide legal advice, but instead helps clients "manage reputation and forge opinion through Public Relations, strategic communications and high-level networking."[6] Ms. Maxwell has made no representation or showing that Gow was "called upon to perform a specific litigation task that the attorneys needed to accomplish in order to advance their litigation goals - let alone a task that could be characterized as relating to the "'administration of justice.'" *Egiazaryan*, 290 F.R.D. at 432. Rather, Ross Gow "was involved in . . . public relations activities aimed at burnishing" Ms. Maxwell's image. *Id*.

---

[5] Upon information and belief, Ross Gow's LinkedIn profile, detailing his profession, *See* McCawley Decl. at Exhibit 2.

[6] ACUITY Reputation website at: http://acuityreputation.com/

Therefore, any attorney-client privilege that may, have attached to her communications with attorneys Jaffe and Barden[7], was waived through their disclosure to the third-party public relations professional because there has been no showing that Gow's involvement was necessary to facilitate communications between Ms. Maxwell and attorneys Jaffe and Barden. *See Egiazaryan*, 290 F.R.D. at 433. In fact, such a showing would be impossible for Ms. Maxwell to make under existing case law. There are no foreign language barriers or complex technical jargon barriers between Maxwell and her counsel that would require ***a public relations professional*** to act as an intermediary to translate the communications between attorney and client.[8] Gow is merely a public relations professional, working at a public relations firm, who issued a statement to the press on behalf of Ms. Maxwell. Accordingly, Maxwell's claims of attorney-client privilege for entries 8, 10, 12, 13, and 18 fail.

        c.      <u>The Communication among Maxwell, Not-Attorney Mark Cohen, and Attorney</u>

As stated above, "[i]t is settled that communications made between a client and lawyer in the presence of a third party are not privileged." *Klein, Varble & Associates, P.C. v. DeCrescenzo*, 39 Misc. 3d 1240(A), 975 N.Y.S.2d 366 (Sup. Ct. 2013) *aff'd as modified*, 119 A.D.3d 655, 988 N.Y.S.2d 897 (2014). The communication between Ms. Maxwell and Philip Barden, Esq. was in the presence of third party, non-attorney Mark Cohen. Therefore, Ms. Maxwell's claim of attorney-client privilege fails, and she must produce entry 17.

---

[7] Ms. Maxwell has not met her burden to demonstrate that any attorney-client privilege attaches to her communications with Jaffe and Barden. Indeed, she has not even alleged that they represent her.

[8] "[A] communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client." *United States v. Ackert*, 169 F.3d 136, 140 (2d Cir.1999).

9

d.  Communications Involving Maxwell and Brett Jaffe or Philip Barden

Maxwell has not carried out her burden of establishing that the attorney-client privilege attaches to the communications with Brett Jaffe, Esq. or Philip Barden, Esq. First, she has not even claimed that she has an attorney-client relationship with either Jaffe or Barden. Second, she has not claimed that the communications were seeking legal advice or receiving legal advice, as her "descriptions" are wholly inadequate, as discussed below. Every one of them simply states: "Communication re: legal advice." This is the same, rote description she gives even to her emails with non-lawyers.

As this Court is aware, not all communications with an attorney are privileged. The attorney-client privilege only encompasses confidential communications necessary to obtain informed legal advice and advocacy. *See In re Grand Jury Subpoena Duces Tecum Served Upon Shargel*, 742 F.2d 61, 62 (2d Cir.1984). Indeed, "[a] communication which has no direct relevance to the legal advice to be given, unlike a communication which relates to the subject matter of the attorney's professional employment, is a collateral matter, which is not privileged." *Sarfati v. Bertino*, 24 Misc. 3d 133(A), 890 N.Y.S.2d 371 (App. Term 2009).

The attorney-client privilege is also narrowly interpreted: "[s]ince the privilege prevents disclosure of relevant evidence and thus impedes the quest for truth, ... it must 'be strictly confined within the narrowest possible limits consistent with the logic of its principle.' ' *See In re Shargel*, 742 F.2d at 62 . (quoting 8 J. WIGMORE, EVIDENCE § 2291 (McNaughton rev. ed.1961)).

That Gow, a public relations professional, was involved in so many of the communications with Jaffe and Barden, creates a presumption that these communications focused on public relations matters, and were not centered on giving legal advice. The attorney-

10

client privilege "does not extend to business advice, even if provided by an attorney." *Stenovich v. Wachtell, Lipton, Rosen & Katz*, 195 Misc. 2d 99, 106-07, 756 N.Y.S.2d 367, 376 (Sup. Ct. 2003), citing *Fine v. Facet Aerospace Prod. Co.*, 133 F.R.D. 439, 444 (S.D.N.Y.1990). By the same principle, public relations advice, even if given by an attorney, is not privileged. For the foregoing reasons, Maxwell has not met her burden to show that these communications are privileged.

Finally, this Court should note that in Defendant's Initial Disclosures, she stated that "Email correspondence between Philip Barden and Ghislaine Maxwell concerning the issuance of statements to the press (March 2011 – January 2015)" are among the documents that "may be used to support Defendant's claim or defenses." Despite this statement in her Rule 26 disclosures, Maxwell still wrongfully asserts attorney-client privilege for these documents.

This is more evidence that this defendant is attempting to impermissibly use the attorney-client privilege as a sword and a shield, as her disclosures reveal she intends to selectively use these purportedly privileged documents to make her defense. New York law does not permit self-serving, selective disclosure of privileged materials. "[P]rivilege is a shield and must not be used as a sword. Where a party places the subject matter of a normally privileged communication or document at issue, or, where invasion of the privilege is required to determine the validity of the claim or defense and the application of the privilege would deprive the adversary of vital information, fairness requires the finding of waiver." *Century Indem. Co. v. Brooklyn Union Gas Co.*, 22 Misc. 3d 1109(A), 880 N.Y.S.2d 222 (Sup. Ct. 2008) (internal quotations and citations omitted). *See also United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he attorney-client privilege cannot at once be used as a shield and a sword. … The privilege takes flight if the relation is abused…. A defendant may not use the privilege to prejudice his

11

opponent's case or to disclose some selected communications for self-serving purposes. …Thus, the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications.") (internal quotations and citations omitted).

For all of the foregoing reasons, Ms. Maxwell should disclose these documents relevant to entry numbers 1, 2, and 9.

### 3. Maxwell's Privilege Log Descriptions Are Inadequate

"Failure to furnish an adequate privilege log is grounds for rejecting a claim of attorney client privilege." *Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, supra, 499 F.Supp.2d 475, 479 (S.D.N.Y. 2007). The information set forth in Maxwell's log is too sparse to comply with Federal Rule of Civil Procedure 26(b)(5) and Local Rule 26.2(a)(2)(B)'s requirement that a party asserting privilege disclose information sufficient "to enable other parties to assess the claim." The limited "descriptions" on the privilege log make it impossible for Plaintiffs to assess the propriety of the privilege claims.

Over, and over again, each and every entry on the Maxwell Privilege Log insufficiently describes the subject matter of the communications as "Communication re: legal advice." *See* McCawley Decl. at Composite Exhibit 1. Maxwell, has failed to comply with Local Rule 26.2(a)(2)(B), which requires that "the general subject matter of the communication" be stated in the privilege log. The "subject matter" is not stated; it does not even indicate the matter or general topic upon which the purported attorney-client communication was made. Therefore, there is no "basis to conclude that the document contains legal advice that reelects a client confidence." *Yorkville Advisors, LLC,* 300 F.R.D. at 164. With these unvarying and scanty descriptions, there is no way to assess if the withheld documents do, in fact, contain privileged material.

12

For example, in *Chevron Corp. v. Donziger*, the Court held that descriptions such as, "Email concerning litigation status and strategy," and "Email concerning litigation status and strategy re Lago Agrio litigation" were inadequate. No. 11 CIV. 0691 LAK JCF, 2013 WL 4045326, at *2 (S.D.N.Y. Aug. 9, 2013). Yet even those brief descriptions, rejected by the *Chevron* Court, are a surfeit of information and detail compared to Ms. Maxwell's paltry, one-size-fits-all "Communication re: legal advice." Therefore, controlling precedent requires a finding that the Maxwell Privilege Log is inadequate.[9]

Furthermore, the descriptions do not provide the titles or the roles of the authors and recipients, which also makes this privilege log inadequate. *See S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 164 (S.D.N.Y. 2014). For example, for claims of attorney-client privilege, Ms. Maxwell does not even assert that individuals such as Brett Jaffe, Philip Barden, or Martin Weinberg represent her, or that any attorney-client relationship exists between them. Furthermore, there is no explanation as to how she could possibly claim an attorney-client privilege with non-attorney Ross Gow and non-attorney Jeffrey Epstein, as discussed above.

For the foregoing reasons, Maxwell's Privilege Log fails to provide the information required by Federal Rule of Civil Procedure 26(b)(5) and Local Civil Rule 26.2(a)(2)(A), and it does not provide sufficient information to support the privilege claims asserted therein. Accordingly, this Court should find that Maxwell has waived her privilege claim for every entry which describes the subject matter as "Communication re: legal advice," or at the very least,

---

[9] At the very least, the Court must conduct an *in camera* inspection of these documents to test the propriety of a claim of privilege where no attorney is part of the communication and the privilege log description does not provide adequate detail. *See Grinnell Corp. v. ITT Corp.*, 222 F.R.D. 74, 78 (S.D.N.Y.2003) (examining privilege log as well as documents themselves in order to determine applicability of the privilege); *Safeco Ins. Co. of America v. M.E.S., Inc.,* No. 09–CV–3312, 2013 WL 1680684, at *4 (noting that "[i]n camera review is 'a practice both long-standing and routine in cases involving claims of privilege.'") (quoting *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 386 (2d Cir.2003)).

require Maxwell to submit the documents in question for *in camera* review to determine whether they are actually subject to any privilege claim.

## **CONCLUSION**

For the foregoing reasons, this Court should order Ms. Maxwell to produce the documents listed in her privilege log, or at the very least, conduct an *in camera* inspection to determine whether or not these documents are privileged under applicable law.[10]

Dated: February 26, 2016

                                                  Respectfully Submitted,

                                                  BOIES, SCHILLER & FLEXNER LLP

                             By: /s/ Sigrid McCawley
                                 Sigrid McCawley (Pro Hac Vice)
                                 Boies, Schiller & Flexner LLP
                                 401 E. Las Olas Blvd., Suite 1200
                                 Ft. Lauderdale, FL 33301
                                 (954) 356-0011

                                 David Boies
                                 Boies, Schiller & Flexner LLP
                                 333 Main Street
                                 Armonk, NY 10504

                                 Ellen Brockman
                                 Boies, Schiller & Flexner LLP
                                 575 Lexington Ave
                                 New York, New York 10022
                                 (212) 446-2300

---

[10] Ms. Maxwell's Privilege Log is also incomplete because she has unilaterally, arbitrarily, and wrongfully withheld production of responsive documents from a great portion of the Relevant Period, as addressed in detail in Ms. Giuffre's Motion to Compel the Production of Documents Subject to Improper Objections. Accordingly, to the extent that Ms. Maxwell claims responsive documents from the remainder of the Relevant Period are privileged, she must furnish a revised privilege log bearing description of those documents as well.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 26, 2016, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on the individuals identified below via transmission of Notices of Electronic Filing generated by CM/ECF.

    Laura A. Menninger, Esq.
    HADDON, MORGAN & FOREMAN, P.C.
    150 East 10th Avenue
    Denver, Colorado 80203
    Tel: (303) 831-7364
    Fax: (303) 832-2628
    Email: lmenninger@hmflaw.com

                          /s/ Sigrid S. McCawley
                            Sigrid S. McCawley