# United States District Court
## Southern District of New York

Virginia L. Giuffre,

      Plaintiff,               Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

      Defendant.

_____/


## PLAINTIFF, VIRGINIA GIUFFRE'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS SUBJECT TO IMPROPER OBJECTIONS

BOIES, SCHILLER & FLEXNER LLP

Sigrid McCawley (Pro Hac Vice)
Boies, Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

David Boies
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Ellen Brockman
Boies, Schiller & Flexner LLP
575 Lexington Ave
New York, New York 10022
(212) 446-2300

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

I.      PRELIMINARY STATEMENT ............................................................................... 1

II.     LEGAL ARGUMENT ............................................................................................. 3

        A.      Legal Standard. ........................................................................................... 3

        B.      Maxwell's General Objections Fail. ............................................................ 4

        C.      Maxwell's Specific Objections Fail. ............................................................ 8

                1.      Request No. 1 ................................................................................... 8

                        a.      Maxwell's Response. ............................................................ 8

                        b.      Maxwell's Objections Fail, As The Request Seeks Relevant
                                Discovery ............................................................................. 9

                2.      Request No. 3. .................................................................................. 9

                        a.      Maxwell's Response. ............................................................ 9

                        b.      Maxwell's Objections Fail, As The Request Seeks Relevant
                                Discovery ........................................................................... 10

                3.      Request No. 6. ................................................................................ 10

                        a.      Maxwell's Response. .......................................................... 10

                        b.      Maxwell's Objections Fail, As The Request Seeks Relevant
                                Discovery ........................................................................... 11

                4.      Request No. 7. ................................................................................ 12

                        a.      Maxwell's Response. .......................................................... 12

                        b.      Maxwell's Objections Fail, As The Request Seeks Relevant
                                Discovery ........................................................................... 12

                5.      Requests Nos. 8 and 33. ................................................................. 13

                        a.      Maxwell's Response. .......................................................... 13

                        b.      Request No. 33. .................................................................. 13

  c.  Maxwell's Response to Request No. 33. .................................................... 14

  d.  Maxwell's Objections Fail, As The Request Seeks Relevant
    Discovery. ................................................................................................ 14

6.  Request Nos. 10 and 11. ..................................................................................... 15

  a.  Request No. 10. ....................................................................................... 15

  b.  Maxwell's Response to Request No. 10. ................................................. 15

  c.  Request No. 11. ....................................................................................... 15

  d.  Maxwell's Response to Request No. 11. ................................................. 15

  e.  Maxwell's Objections Fail, As The Request Seeks Relevant
    Discovery. ................................................................................................ 16

7.  Request No. 15. ................................................................................................... 16

  a.  Maxwell's Response. .............................................................................. 16

  b.  Maxwell's Objections Fail, As The Request Seeks Relevant
    Discovery ................................................................................................. 17

8.  Request No. 17. ................................................................................................... 17

  a.  Maxwell's Response. .............................................................................. 17

  b.  Maxwell's Objections Fail, As The Request Seeks Relevant
    Discovery ................................................................................................. 18

9.  Request Nos. 21 – 24 .......................................................................................... 19

  a.  Maxwell's Response. .............................................................................. 19

  b.  Request No. 22. ....................................................................................... 19

  c.  Maxwell's Response to Request No. 22. ................................................. 19

  d.  Request No. 23. ....................................................................................... 19

  e.  Maxwell's Response to Request No. 23. ................................................. 19

  f.  Request No. 24. ....................................................................................... 20

  g.  Maxwell's Response to Request No. 24. ................................................. 20

h.     Maxwell's Objections To Requests 21-24 Fail, As The Requests Seek Relevant Discovery.................................................................20

10.     Request No. 32. .............................................................................21

     a.     Maxwell's Response. ..............................................................21

     b.     Maxwell's Objections Fail, As The Request Seeks Relevant Discovery .......................................................................21

11.     Request No. 34. .............................................................................22

     a.     Maxwell's Response. ..............................................................22

     b.     Maxwell's Objections Fail, As The Request Seeks Relevant Discovery .......................................................................22

12.     Request No. 37. .............................................................................23

     a.     Maxwell's Response. ..............................................................23

     b.     Maxwell's Objections Fail, As The Request Seeks Relevant Discovery .......................................................................23

13.     Request No. 39. .............................................................................24

     a.     Maxwell's Response. ..............................................................24

     b.     Maxwell's Objections Fail, As The Request Seeks Relevant Discovery .......................................................................24

CONCLUSION ...........................................................................................24

# **TABLE OF AUTHORITIES**

Page

## **Cases**

*Am. Rock Salt Co., LLC v. Norfolk S. Corp.*,
    228 F.R.D. 426 (W.D.N.Y. 2004) ............................................................6

*Edwards v. Am. Airlines, Inc.*,
    No. 95 CIV. 5356 (SAS), 1996 WL 432472 (S.D.N.Y. Aug. 1, 1996)....................1

*Gateway Logistics, Inc. v. Smay*,
    302 P. 3d 235 (Colo. 2013)....................................................................passim

*International Mining Co., Inc. v. Allen and Co.*,
    567 F. Supp.777 (S.D.N.Y. 1983) ............................................................2

*Ottoson v. SMBC Leasing and Finance, Inc.*,
    2015 WL 4597542 (S.D.N.Y. July 30, 2015)...........................................1

*State Farm Mut. Auto. Ins. Co. v. Fayda.*
    No. 14CIV9792WHPJCF, 2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015)............3, 23

*Stinson v. City of New York*,
    2015 WL 4610422 (S.D.N.Y.) July 23, 2015) ........................................1

*Zorn v. Howe*,
    276 A.D.2d 51, 716 N.Y.S. 2d 128 (2000)..............................................7

*Zubulake v. UBS Warburg LLC*,
    220 F.R.D. 212 (S.D.N.Y. 2003)...........................................................7

## **Statutes**

Fed. R. Civ. P. 26 ...............................................................................3, 22

Fed. R. Civ. P. 37 ................................................................................4, 8

Fed. R. Evid. 501 ..........................................................................passim

Plaintiff Virginia L. Giuffre, by and through undersigned counsel, respectfully submit this Motion to Compel Production of Documents in Response to Request Nos. 1-39 and to Compel Documents Subject to Improper Objections Including Refusals to Produce Documents from Highly Relevant Time Periods. For the reasons set forth below, this Court should grant Plaintiff's Motion in its entirety.

## I.    PRELIMINARY STATEMENT

Plaintiff first served her request for production of documents on defendant on October 27, 2015. Now, almost four (4) months later, and even after this Court denied defendant's attempts to stay discovery and directed a response, defendant is still refusing to produce highly relevant documents. Defendant is attempting to grant herself a *de facto* stay of discovery, without Court approval, by refusing to produce documents or generally comply with a party's clear and unequivocal discovery obligations[1]. Indeed, in response to thirty-eight (38) requests for production, the defendant has chosen to produce ***two emails***.[2] This represents a willful disregard of her discovery obligations, something this Court should not condone.

"Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Ottoson v. SMBC Leasing and Finance, Inc.,* (Sweet, J.) 2015 WL 4597542 at * 2 (S.D.N.Y. July 30, 2015) (granting motion to compel) (internal quotations omitted); *Stinson v. City of New York*, (Sweet, J.), 2015 WL 4610422 (S.D.N.Y. July 23, 2015) (granting in part motion to compel production).

In the Second Circuit, courts have dismissed actions where a party has demonstrated willful disregard for its discovery obligations. *Edwards v. Am. Airlines, Inc.*, No. 95 CIV. 5356

---

[1] Maxwell also waited four (4) months to produce her initial Rule 26 Disclosures which she just served on February 24, 2016.

[2] Notably, Maxwell even refuses to produce the defamatory press releases from her communications with her press agent Ross Gow, which are at the heart of this case.

(SAS), 1996 WL 432472, at *3 (S.D.N.Y. Aug. 1, 1996). *See also International Mining Co., Inc. v. Allen and Co.*, (Sweet, J.), 567 F.Supp 777 (S.D.N.Y. 1983) (failure to produce documents and supply adequate answers to interrogatories without justifiable excuse warranted the dismissal of the complaint). The blatant nature of the defendant's failure to participate in discovery is akin to the conduct for which the Second Circuit has awarded sanctions.

This case turns on whether or not Maxwell defamed Ms. Giuffre when she called Ms. Giuffre's account of her sexual abuse "obvious lies." Ms. Giuffre intends to establish that Maxwell's defamatory statement was untrue, and that Ms. Giuffre was telling the truth. To prove the truth of her sexual abuse, Ms. Giuffre seeks discovery of documents evidencing her sexual abuse and sexual trafficking by Maxwell and her associates, including convicted sex offender Jeffrey Epstein. Therefore, documents evidencing Ms. Giuffre's encounters with Maxwell, and documents evidencing Maxwell's communications with her co-conspirators, are plainly relevant and discoverable. For example, Request 6 seeks documents relating to Maxwell's communications with Sarah Kellen. At a prior deposition, Sarah Kellen invoked her Fifth Amendment privilege when asked:

Q. Would you agree with me that Ghislaine Maxwell provides underage girls to Mr. Epstein for sex?
    ***
A. Upon the instruction of my lawyer, I must invoke my Fifth Amendment privilege.
Q. Take a look at what we marked as Exhibit 10. Do you recognize the two people in that photograph?
A. On the instruction of my lawyer, I must invoke my Fifth Amendment privilege.
Q. Would you agree with me that's Ghislaine Maxwell on the right and Jeffrey Epstein on the left?
A. On the instruction of my lawyer, I must invoke my Fifth Amendment privilege.
    ***
Q. Do you recognize the young lady shown in Exhibit 11?
A. On the instruction of my lawyer, I must invoke my Fifth Amendment privilege.
Q. Do you agree with me that the young girl shown in Exhibit 11 was recruited by Ghislaine Mawell for sexual activity with Jeffrey Esptein?
    A. On the instruction of my lawyer, I must invoke my Fifth Amendment privilege.

*See* McCawley Decl. at Exhibit 1, March 24, 2010 Deposition Transcript of Sarah Kellen at 100-103.

Clearly, communications Maxwell had with Sarah Kellen are highly relevant to establishing Maxwell's involvement in trafficking underage girls. Yet, Maxwell is refusing to produce any communications with Sarah Kellen.

Moreover, defendant Maxwell has admitted that non-privileged,[3] relevant documents exist. She is simply refusing to produce them. *See* Declaration of Sigrid McCawley ("McCawley Decl.") at Exhibit 2, Defendant Maxwell's Response to Plaintiff's First Request for Production Requests Nos. 1, 3, 6, 7, 8, 9, 10, 11, 15, 17, 19, 21, 22, 23, 24, 32, 33, 34, and 37. Indeed, it is undisputed that Maxwell spent many years traveling with Ms. Giuffre. And, for years thereafter, Maxwell continued her association with convicted sex offender Jeffrey Epstein. Ms. Giuffre is entitled to those documents in discovery because they go directly to the claim at issue in this litigation. Therefore, this Court should compel her to produce them.

## II.  LEGAL ARGUMENT

### A.  <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 34(a), a party may request that another party produce documents in its possession as long as the documents are within the scope of Fed. R. Civ. P. 26(b), which allows for broad discovery regarding any non-privileged matter that is relevant to any party's claim or defense. Information within this scope of discovery need not be admissible in evidence to be discoverable. Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *State Farm Mut. Auto. Ins. Co. v. Fayda*, No.

---

[3] Ms. Maxwell's privilege claims all fail as addressed in Ms. Giuffre's Motion to Compel Production Based on Improper Claim of Privilege.

14CIV9792WHPJCF, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (granting motion to compel). If the opposing party objects to producing the documents, the party seeking production can file a motion to compel with the court pursuant to Fed. R. Civ. P. 37. Against this backdrop of broad discovery rights, Maxwell has refused to produce responsive documents.

## B. Maxwell's General Objections Fail

The centerpiece of Maxwell's general objections is her disingenuous limitation of her discovery responses to a short window of time that she has unilaterally selected. Maxwell wrongfully attempts to limit discovery to the month of December 30, 2014 – January 31, 2015 when her defamatory statement was issued and 1999 – 2002[4]. Maxwell's time period limitation clearly violates both the letter and spirit of Rule 26. For example, a communication by Maxwell's press agent regarding the plaintiff is just as relevant if it was made on February 1, 2015 as the one that was made on January 3, 2015 and it is clearly discoverable. These communications with her press agent are key documents in this case, as the sole claim concerns Ms. Maxwell defaming Ms. Giuffre in the press, yet Maxwell has arbitrarily refused to produce highly relevant discovery.

The abuse at issue in this case is alleged to have started in or around 1999 and there are relevant documents and communications from that point to the present in that Maxwell continued to associate with convicted pedophile Jeffrey Epstein up until at least 2015 as evidenced by her privilege log. *See* McCawley Decl. at Exhibit 3, Maxwell's Privilege Log. Accordingly, plaintiff defined the relevant period for purposes of her requests for production as 1999 – present. While that may seem like a substantial period of time, all of the publically

---

[4] Maxwell refers to her shortened time period as "the Relevant Time Period as defined in Paragraph 15" of her objections. To be clear, Ms. Giuffre's references herein to production for the "Relevant Time Period" refer to the Relevant Time Period of 1999 to the present as defined in her original requests for production.

available documents demonstrate that the whole period is highly relevant to the sexual abuse allegations. For example, the flight logs demonstrate that Maxwell was flying on Jeffrey Epstein's planes over 360 times from 1999 – 2005. In addition, Maxwell flew with plaintiff when she was a minor child in 2000 on Jeffrey Epstein's planes. The flight logs reveal that Maxwell continued to actively travel with Jeffrey Epstein and other unidentified "female" passengers through at least as late as September 5, 2005.[5] *See* McCawley Decl. at Exhibit 4.

Moreover, there is critical activity relevant to the abuse allegations happening in the mid-2000s as evidenced by the Palm Beach Police report that identified over 30 underage girls who were being victimized during that time period. In addition, house staff identifies Maxwell as the person in charge during this time period. *See* McCawley Decl. at Exhibit 5, Alfredo Rodriguez Deposition Transcript at 24-25.

The years of the mid to late 2000s are also highly relevant because that is during the time when convicted sex offender Jeffrey Epstein entered his plea deal with the government. Law enforcement conducted a trash pull from Jeffrey Epstein's residence in Florida and uncovered his house message pads. The message pads reveal that in 2004, Maxwell was coordinating "training" with underage girls as indicated by the redactions in the message pads. *See* McCawley Decl. at Exhibit 6, SAO 2830. Maxwell was also organizing "massages" for Epstein in 2004 with underage girls and indicating which girls she had lined-up on given days. *See* McCawley Decl. at Exhibit 6, SAO 02841.

Plaintiff here received a Victim Notification Letter on September 9, 2008. *See* McCawley Decl. at Exhibit 7. In 2009, an attorney sought Maxwell's deposition in connection

---

[5] Only a fraction of the flight logs were made publically available. Therefore there are likely other records in Maxwell's possession, custody and control that would demonstrate Maxwell traveling with underage females but to date she has refused to produce this information and indeed is limiting her responses to a very narrow window of time.

with various sexual abuse allegations and Maxwell dodged the deposition claiming that her mother was ill and she would be traveling outside the country with no plans of returning. Despite this claim to avoid her deposition, she then was photographed thereafter at Chelsea Clinton's wedding in Rhinebeck, New York. *See* McCawley Decl. at Composite Exhibit 8 Maxwell Deposition Notice; Subpoena and Cancellation Payment Notice, and January 13, 2015 Daily Mail Article with photograph. In 2011, Maxwell started issuing press statements through her agent Ross Gow. The offending defamatory statement was issued on January 3, 2015. As demonstrated by the timeline, discussed above, any documents that Maxwell has from the period from 1999 to the present are highly relevant. Ms. Giuffre respectfully requests that this Court direct Maxwell to produce all responsive documents for the time period from 1999 to the present.[6]

Defendant Maxwell has also asserted fundamentally improper general objections which should be overruled. *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 228 F.R.D. 426, 432 (W.D.N.Y. 2004) ("generalized objections that discovery requests are vague, overly broad, or unduly burdensome are not acceptable, and will be overruled.").

Maxwell's general objection to producing material that implicates "privacy interests" is equally misplaced. Maxwell does not have a "privacy interest" in the illegal sexual abuse and trafficking of Ms. Giuffre and other minors, nor does she have a "privacy interest" in the communications with her co-conspirators, including convicted sex offender, Jeffrey Epstein and

---

[6] Maxwell has asserted that she cannot find documents for Requests Nos.1, 2, 6, 12, 13, 14, 35 and 38. The Requests are set forth in Appendix A. To the extent that these requests incorporate her General Objection to the Relevant Period articulated in paragraph 15 of her Objections, Plaintiff requests that this Court require Ms. Maxwell to search for and produce any responsive documents from the 1999 to the present that may have been excluded from Maxwell's original search for the reasons stated above.

others.[7]  *See Zorn v. Howe*, 276 A.D.2d 51, 57, 716 N.Y.S.2d 128, 133 (2000) (finding no legitimate privacy interest in illegal activity).  Unsurprisingly, Maxwell cites no authority that would shield the production of those documents.[8]  These documents are responsive and relevant. The only proper objection Maxwell can make is an assertion of her Fifth Amendment privilege. Failing that assertion, she must produce them.

Furthermore, Maxwell claims that "prior to this litigation" she has "long had a practice of deleting emails after they have been read." First, Ms. Giuffre is entitled to a forensic examination of Maxwell's personal computers and devices to recover deleted emails and to discovery when and if Maxwell has performed a "swipe" of her computers/devices to permanently destroy deleted emails.

Second, in her Motion to Dismiss, Maxwell claims that in both 2011 and 2015 she anticipated litigation against tabloids.  Specifically, she stated that in 2011, "litigation . . . was forthcoming," and in 2015, she made her press release "'pertinent to' anticipated good-faith litigation." When litigation is anticipated, it is incumbent on the party to preserve documents. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y.2003) ("Once a party reasonably anticipates litigation, it must ... ensure the preservation of relevant documents.") Additionally, if Maxwell purposefully destroyed documents in 2015, this Court can instruct the jury to made an adverse inference against Maxwell or enter a default judgment in favor of Ms.

---

[7] Non-attorney Maxwell claims that her communications with co-conspirator, convicted pedophile, and non-attorney Jeffrey Epstein are privileged, a specious claim that is challenged in Plaintiff's Motion to Compel for Improper Assertion of Privilege.

[8] Maxwell cites a non-controlling and inapposite Colorado case. In *Gateway*, the moving party sought to inspect personal computers, smartphones, and other devices belonging to the defendant *and his wife*, who was a non-party to the case. The court remanded the decision on the motion to compel that discovery to the trial court, requiring that the trial court make findings of fact balancing the defendants' privacy interest with the plaintiffs' need for the information sought as required by another case. It did not hold that such materials were not discoverable. Notably, Maxwell does not cite to any New York case in opposing this request, nor does she cite to a case from any other jurisdiction that is at all on point.

Giuffre. *See* Rule 37(e)(2)(b),(c), Fed. R. Civ. P. ("If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court . . . upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may . . . instruct the jury that it may or must presume the information was unfavorable to the party; or dismiss the action or enter a default judgment.") Similarly, Maxwell was served with a subpoena decus tecum on September 21, 2009 seeking her testimony in relations to Epstein's underage sex ring. *See* McCawley Decl. at Composite Exhibit 8, 2009 Subpoena issued to Maxwell. Maxwell avoided that deposition by falsely claiming to be out of the country (she was, instead, photographed at Chelsey Clinton's New York wedding). *See* Composite Exhibit 8. Pursuant to that subpoena, Maxwell was placed on notice that her documents were relevant to pending litigation. All of these events triggering her duty to preserve documents center on Maxwell's role in Epstein's sex crimes; therefore, all of the documents she had a duty to preserve are relevant to this litigation. Defendant Maxwell must produce these documents or explain to the Court when and why they were destroyed.

### C.     Maxwell's Specific Objections Fail

1.     Request No. 1:  All documents relating to communications with Jeffery Epstein from 1999 – Present.

a.     Maxwell's Response:

Maxwell objects to this Request on the grounds that it is overly broad and unduly burdensome and calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence. Maxwell further objects to this Request to the extent it seeks documents or information protected by the attorney/client privilege, the work-product doctrine, the common interest privilege or any other applicable privilege.

Subject to and without waiving the above objections, Maxwell is withholding documents outside of the Relevant Periods described in paragraph 15, supra[9], and is withholding production of documents that are privileged pursuant to a common interest agreement.

        b.    Maxwell's Objections Fail, as the Request Seeks Relevant Discovery

Maxwell must produce documents for the entire Relevant Period as discussed above.

Communications with convicted sex offender Jeffrey Epstein for whom Defendant Maxwell is

alleged to have assisted him with his sexual trafficking activities are of the highest relevance in

this case, and must be produced. Additionally, Maxwell has asserted an improper privilege with

regard to these documents, which is addressed fully in Plaintiff's Motion to Compel for Improper

Claims of Privilege.

        2.    <u>Request No. 3</u>: All documents relating to communications with Andrew Albert Christian Edward, Duke of York (a.k.a. Prince Andrew) from 1999 – present.

        a.    Maxwell's Response:

Maxwell objects to this Request on the grounds that it is overly broad and calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence. Maxwell further objects to this Request to the extent it seeks documents or information protected by the attorney/client privilege, the work-product doctrine, or any other applicable privilege. Maxwell also objects to this Request to the extent it implicates her right to privacy. *Gateway Logistics, Inc. v. Smay*, 302 P .3d 235 (Colo.2013); Fed.R.Evid .501.

Subject to and without waiving the above objections, Maxwell will produce non-privileged documents responsive to this Request limited to the Relevant Periods described in

---

[9] Maxwell's reference to her "redefined" Relevant Period comes from paragraph 15 of her Responses and Objections which provides: "Ms. Maxwell objects to Instruction No. 1, in particular the definition of the "Relevant Period" to include July 1999 to the present, on the grounds that it is overly broad and unduly burdensome and calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence. The Complaint at paragraph 9 purports to describe events pertaining to Plaintiff and Defendant occurring in the years 1999 – 2002. The Complaint also references statements attributed to Ms. Maxwell occurring in January 2015. Defining the "Relevant Period" as July 1999 to the present" is vastly overbroad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and as to certain of the Requests, is intended for the improper purpose of annoying or harassing Ms. Maxwell and it implicates her privacy rights. Thus, Ms. Maxwell interprets the Relevant Period to be limited to 1999 – 2002 and December 30, 2014 – January 31, 2015 and objects to production of any documents outside that period, except as specifically noted."

paragraph15, supra, and with private phone numbers and related information redacted. Maxwell is withholding production of documents outside of such Relevant Periods.

      b.     Maxwell's Objections Fail, as the Request Seeks Relevant Discovery

Defendant Maxwell's communications with Prince Andrew, for the entire Relevant Period, are relevant to this litigation. Maxwell is alleged to have trafficked Ms. Giuffre to Prince Andrew when Ms. Giuffre was a minor. Indeed, there is photographic evidence of Prince Andrew with his arm around Virginia's waist, standing next to Maxwell, in Maxwell's London residence, when Virginia was a minor child. In the one email defendant did produce in Response to the Requests for Production, Maxwell instructs Prince Andrew to "call me" after Prince Andrew says he needs to speak about Virginia. *See* McCawley Decl. at Exhibit 9. Ms. Giuffre is entitled to all of the communications between Maxwell and Prince Andrew not only to show the communications between them regarding her trafficking, but also possible communications between them, that would establish Maxwell furnishing him with other females or discussing other individuals who may have been involved with this activity.

      3.    Request No. 6: All documents relating to communications with any of the following individuals from 1999 – present: Emmy Taylor, Sarah Kellen, Eva Dubin, Glen Dubin, Jean Luc Brunel, and Nadia Marcinkova.

      a.     Maxwell's Response:

Maxwell objects to this Request on the grounds that it is overly broad, unduly burdensome and/or propounded for the improper purpose of annoying or harassing Maxwell. Maxwell further objects to this Request on the grounds that it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Maxwell is withholding production of documents relating to communications with Nadia Marcinkova, Sarah Kellen and Eva Dubin that are outside of the Relevant Periods described in paragraph15, supra. Maxwell has been unable to locate any such documents relating to Ms. Marcinkova, Ms. Kellen or Ms. Dubin within the Relevant Periods. Maxwell also has been unable to locate any such documents responsive to this Request relating to Glen Dubin, Jean Luc Brunel or Emmy Taylor for any time period.

b.    Maxwell's Objections Fail, as the Request Seeks Relevant Discovery

Ms. Kellen was previously deposed regarding Jeffrey Epstein's underage sex ring. When asked about Maxwell's involvement in the sex trafficking, Ms. Kellen asserted her Fifth Amendment privileges and refused to answer.  Ms. Kellen's assertion implicates Maxwell in the sex trafficking activity.

Q. Would you agree with me that Ghislaine Maxwell provides underage girls to Mr. Epstein for sex?
***
A.  Upon the instruction of my lawyer, I must invoke my Fifth Amendment privilege.

See McCawley Decl. at Exhibit 1, March 24, 2010 Deposition Transcript of Sarah Kellen at 100-103.

Maxwell's communications with Ms. Kellen, at any time during the original Relevant Period, are relevant to the sexual abuse suffered by Ms. Giuffre and others at the hands of Maxwell, and should not be withheld.  Moreover, flight logs demonstrate that Sarah Kellen and Maxwell flew together multiple times, including with Ms. Giuffre.  *See* McCawley Decl. at Exhibit 4.

Similarly, Nadia Marcinkova was a co-conspirator of Maxwell and Epstein, and communicated with them frequently as evidenced by the message pads law enforcement retrieved from Epstein's residence. *See* McCawley Decl. at Exhibit 6.  Nadia Marcinkova also travelled on Jeffrey Epstein's planes with Maxwell.  *See* McCawley Decl. at Exhibit 4, flight logs.  Similarly, Emmy Taylor was Maxwell's assistant during this time frame and also travelled on Jeffrey Epstein's planes with Ms. Giuffre.  *See* McCawley Decl. at Exhibit 4.  These communications are relevant for the entire original Relevant Period and Maxwell must produce them.

Regarding Glen and Eva Dubin, flight logs demonstrate that they also travelled on Jeffrey Epstein's planes with Maxwell. Maxwell has acknowledged having communications with Eva Dubin, but she is refusing to turn them over. Eva and Glen regularly placed calls to Jeffrey Epstein and to Maxwell as evidenced by the police report trash pull of message pads. *See* McCawley Decl. at Exhibit 6, SAO2843, SAO2984, SAO2994, SAO3004, SAO3006, and SAO3009. Maxwell's communications with Glen and Eva Dubin are relevant for the entire original Relevant Period and should be produced.

4.   Request No. 7:  All video tapes, audio tapes, photographs or any other print or electronic media relating to females under the age of 18 from the period of 1999 – present.

a.   Maxwell's Response:

Maxwell objects to this Request on the grounds that it is overly broad, unduly burdensome and/or propounded for the improper purpose of annoying or harassing Maxwell. Maxwell further objects to this Request on the grounds that it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Maxwell has been unable to locate any documents responsive to this Request which relate or pertain to Plaintiff or any of the witnesses identified by Plaintiff in her Rule 26 disclosures. Maxwell is withholding production of other documents responsive to this Request, including things like mainstream newspapers, magazines, videos, DVDs or other media or family photographs which contain depictions of female children, including Maxwell herself as a child.

b.   Maxwell's Objections Fail, as the Request Seeks Relevant Discovery

To clarify, Ms. Giuffre is not seeking the depictions of children under the age of 18 that that include Maxwell as a child or Maxwell's relatives as children. Nor is Ms. Giuffre seeking mainstream images that are legally available, such as in mainstream newspapers, magazines, videos, or DVDs. Instead, Ms. Giuffre is seeking the depictions of underage girls possessed by Maxwell. For example, Alfredo Rodriguez, a former household manager for Epstein, testified that Maxwell kept images of naked girls on her personal computer whose identities are unknown to Ms. Giuffre:

Q. "Did they appear to be doing any sexual?
A. Yes, ma'am
Q. And in these instances were there girls doing sexual things with other girls?
A. Yes, ma'am.
Q. And I'm still talking about the pictures on Maxwell's computer.
A. Yes, ma'am."

*See* McCawley Decl. at Exhibit 5, Alfredo Rodriguez August 7, 2009, Dep. Tr. at 311-312.

Accordingly, Maxwell's depictions of females under the age of 18, goes to Ms. Giuffre's claims

of sexual abuse and should be produced for the entire original Relevant Period. These pictures

would reveal which underage girls Maxwell was interacting with and photographing or

videotaping which is highly relevant to this case. Importantly, this request is <u>not</u> limited to

depictions of Ms. Giuffre or the individuals in Ms. Giuffre's Rule 26 disclosures, as Maxwell

tries to assert in her Objection.

5. <u>Request Nos. 8 and 33</u>: All documents relating to your travel from the period of 1999 – present, including but not limited to, any travel on Jeffrey Epstein's planes, commercial flights, helicopters, passport records, records indicating passengers traveling with you, hotel records, and credit card receipts.

a. Maxwell's Response:

Maxwell objects to this Request on the grounds that it is overly broad, unduly burdensome and/or propounded for the improper purpose of annoying or harassing Maxwell. Maxwell further objects to this Request on the grounds that it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence. Maxwell also objects to this Request to the extent it implicates her right to privacy. *Gateway Logistics, Inc. v. Smay*, 302 P .3d 235 (Colo.2013); Fed.R.Evid. 501.

Subject to and without waiving the above objections, Maxwell is withholding production of documents outside of the Relevant Periods described in paragraph15, supra, and is withholding documents within the Relevant Period that are private and are not reasonably calculated to lead to the discovery of admissible evidence. The documents reflecting flight plans in Maxwell's possession do not identify passengers or manifests.

b. <u>Request No. 33</u>

All travel records between 1999 and the present reflecting your presence in: (a) Palm Beach Florida or immediately surrounding areas; (b) 9 E. 71st Street, New York, NY 10021; (c) New Mexico; (d) U.S. Virgin Islands; (e) any jet or aircraft owned or controlled by Jeffrey Epstein.

c.    Maxwell's Response to Request No.  33

Ms. Maxwell objects to this Request on the grounds that it is overly broad, unduly burdensome an/or proponed for the improper purpose of annoying or harassing Maxwell. This request is also duplicative and cumulative of Requests Nos. 8 and 14 above. Maxwell further objects to this Request to the extent that it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Maxwell has been unable to locate any documents responsive to this Request for the Relevant Periods as defined in paragraph 15, *supra*.  Maxwell is withholding production of documents outside of such Relevant Period.

d.    Maxwell's Objections Fail, as the Request Seeks Relevant Discovery

Popularly known in mainstream media as the "Lolita Express,"[10] Epstein is alleged to have used his private plane to traffic females across state lines for sexual purposes.  The flightlogs available at this time to Ms. Giuffre only show a fraction of the flights made by the Lolita Express, but even those logs show Maxwell and Ms. Giuffre on these flights multiple times.  *See* McCawley Decl. at Exhibit 4. This request concerning Maxwell's travel will show Maxwell's involvement in the trafficking, including Ms. Giuffre, across state lines with and for Epstein.

Jeffrey Epstein's private island is only reachable by helicopter or boat.  Maxwell was known to fly the helicopter to the private island transporting guests.  Therefore, her helicopter flight records will show which girls and other individuals that Maxwell flew to Epstein's private island.  The records will also demonstrate when and how many times Maxwell was operating the helicopter.

Maxwell's commercial flight, passport, hotel, and credit card records are highly relevant because they will show, for example, that she flew to Paris, France with Ms. Giuffre while Ms.

---

[10] *See, e.g.*, "All aboard the 'Lolita Express': http://www.dailymail.co.uk/news/article-2922773/Newly-released-flight-logs-reveal-time-trips-Bill-Clinton-Harvard-law-professor-Alan-Dershowitz-took-pedophile-Jeffrey-Epstein-s-Lolita-Express-private-jet-anonymous-women.html.

Giuffre was a minor child.  Additionally, these records will place Maxwell at other locations around the United States and internationally at the same times Ms. Giuffre was in those locations, which goes to the defamation claim in this case.  The records will also link her to other females who may have been trafficked for sex.  Finally, Maxwell's travel to Epstein's residences in Florida, New York, New Mexico, and USVI will support the allegations that Maxwell assisted Jeffrey Epstein with his sexual trafficking operation.  Accordingly, this is an improper objection. Defendant Maxwell has admitted that she is withholding responsive documents from production, and this Court should require her to produce them.

      6.   <u>Request Nos. 10 and 11</u>:

      a.   <u>Request No. 10</u>:   All documents relating to payments made from Jeffrey Epstein or any related entity to you from 1999 – present, including payments for work performed, gifts, real estate purchases, living expenses, and payments to your charitable endeavors including the TerraMar project.

      b.   Maxwell's Response to Request No. 10:

Maxwell objects to this Request on the grounds that it is overly broad, unduly burdensome and/or propounded for the improper purpose of annoying or harassing Maxwell. Maxwell further objects to this Request on the grounds that it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Maxwell has been unable to locate any documents responsive to this Request during the Relevant Periods as defined in paragraph15, *supra*. Maxwell is withholding production of documents outside of such Relevant Periods.

      c.   <u>Request No. 11</u>:   All documents relating to or describing any work you performed with Jeffrey Epstein, or any affiliated entity from 1999 –present.

      d.   Maxwell's Response to Request No. 11:

Maxwell objects to this Request in that the terms "work," "with" and "affiliated entity" are vague, undefined and susceptible of multiple meanings and definitions.  M. Maxwell objects to this Request on the grounds that it is overly broad, unduly burdensome and/or propounded for the improper purpose of annoying or harassing Maxwell. Maxwell further objects to this Request on the grounds that it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Maxwell has been unable to locate any documents responsive to this Request during the Relevant Periods as defined in paragraph15, *supra*. Maxwell is withholding production of documents outside of such Relevant Periods.

e. Maxwell's Objections Fail, as the Request Seeks Relevant Discovery

Maxwell recruited Ms. Giuffre and groomed her to perform sexual acts for Jeffrey Epstein. She also performed other services for Jeffrey Epstein, including recruiting and scheduling girls to perform "massages" for Epstein. The household staff testified that they took instructions from Maxwell. *See* McCawley Decl. at Exhibit 5, Rodriguez at 24-25. Therefore, her work for Epstein and related entities is relevant. Discovery concerning Maxwell's compensation, formal or informal, for the work she performed for convicted sex offender Jeffrey Epstein is highly relevant for the entire Relevant Period, from 1999 to the present, because Maxwell performed these services, and received compensation and gifts during this entire time period. For example, a 2003 Vanity Fair article, written before the Jeffrey Epstein scandal broke, describes Maxwell as someone who "seems to organize much of [Epstein's] life -- recently she was making telephone inquiries to find a California-based yoga instructor for him."[11] The police records also reveal that Maxwell recruited a female to work for Jeffrey Epstein. The message pads also reveal Maxwell regularly working for Jeffrey Epstein, including organizing his schedule for training underage girls. *See* McCawley Decl. at Exhibit 6, SAO2830. The work she performed for Epstein, and the compensation she received, is relevant to the claim in this case for the entire Relevant Period. Therefore, Maxwell must produce the documents she is withholding.

7. <u>Request No. 15</u>: All video tapes, audio tapes, photographs or any other print or electronic media taken at a time when you were in Jeffrey Esptein's company or inside any of his residences or aircraft.

---

[11] "The Talented Mr. Epstein," Vanity Fair, March 2003,
http://www.vanityfair.com/news/2003/03/jeffrey-epstein-200303

        a.    Maxwell's Response:

Maxwell objects to this Request on the grounds that it is overly broad, unduly burdensome and/or propounded for the improper purpose of annoying or harassing Maxwell. Maxwell further objects to this Request on the grounds that it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence. Maxwell further objects to this Request to the extent it implicates her right to privacy. *Gateway Logistics, Inc. v. Smay*, 302 P .3d 235 (Colo.2013); Fed.R.Evid . 501.

Subject to and without waiving the above objections, Maxwell has been unable to locate any documents responsive to this Request that are within the Relevant Periods described in paragraph15, supra. Maxwell is withholding production of documents outside of such Relevant Periods.

        b.    Maxwell's Objections Fail, as the Request Seeks Relevant Discovery

Maxwell must produce these documents for the entire Relevant Period, and not withhold any. Photographs and other electronic recordings with Jeffrey Epstein likely contain the image of other underage girls or trafficked women, and therefore, those photographs go to the claim in this case. Additionally, such depictions would reveal other potential witnesses in this case. Accordingly, Maxwell must not withhold these documents based on her revised time period limitation for discovery.

        8.    <u>Request No. 17</u>:   All documents relating to communications with you and Ross Gow from 2005 – present.

        a.    Maxwell's Response:

Maxwell objects to this Request on the grounds that it is overly broad, unduly burdensome and/or propounded for the improper purpose of annoying or harassing Maxwell. Maxwell further objects to this Request to the extent that it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence. Maxwell also objects to this request to the extent it seeks documents or information protected by the attorney/client privilege, the common interest privilege, the work-product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Maxwell is withholding documents responsive to this Request that are outside of the Relevant Periods defined in paragraph15, supra as well as the period of January 1, 2011 to December 31, 2011,and also withholding documents within the Relevant Periods that are privileged. Maxwell has been unable to locate any non-privileged documents that are within such Relevant Periods.

b.     Maxwell's Objections Fail, as the Request Seeks Relevant Discovery

Through her non-attorney[12], public relations professional, Maxwell made a defamatory statement to the press, and that statement is the genesis of this defamation lawsuit. The press quoted portions of this defamatory statement in its publications. The full statement, distributed to the press by Maxwell, through her agent Ross Gow, is clearly discoverable. Ms. Maxwell is in possession of that full statement. Ms. Maxwell admitted to having a January 2, 2015 "Email from Ross Gow to various news organizations," "Subject: 'Ghislaine Maxwell." Its date is the day before the known defamatory statements appeared in the press. It is clear that the full defamatory statement is contained within that January 2, 2015 email; it is increasingly clear that the full statement contains other defamatory remarks, which is why Ms. Maxwell is trying to hide it.

There are no privileges that attach to emails to the press or to press releases - their very purpose is wide dissemination. The fact that Maxwell has not disclosed this press release places her in clear violation of her discovery obligations: Ms. Giuffre is plainly entitled to the defamatory statement Maxwell released to the press upon which this lawsuit is based, including all communications with her press agent, and made by her press agent. Ms. Giuffre presumes that the full statement contains additional defamatory statements, which would explain Maxwell's spurious attempt to circumvent her discovery obligations by trying to convince the Court that a press release is somehow confidential and privileged.

In addition to the full statement released to the press, Ms. Giuffre is entitled to all previous drafts of the statement, and all communications Maxwell had with Mr. Gow regarding

---

[12] Ross Gow is not an attorney, and Maxwell has not alleged that he is an attorney. Upon information and belief, Ross Gow is merely a public relations professional who works for a PR firm that Maxwell employed. As a non-attorney, no attorney-client privilege attaches to Maxwell and Gow's communications. Maxwell's communications with Gow listed on the Maxwell privilege log are challenged in Plaintiff's Motion to Compel for Improper Claim of Privilege.

the statement. Accordingly, Ms. Giuffre is entitled to communications relating to Mr. Gow - particularly the January 2, 2015 email - for the entire Relevant Period.

9. <u>Request No. 21-24</u>: All telephone records associated with you including cellphone records from 1999 –present.

    a.    Maxwell's Response:

Maxwell objects to this Request on the grounds that it is overly broad, unduly burdensome, propounded for the improper purpose of annoying or harassing Maxwell, and seeks documents outside of Maxwell's possession, custody or control. Maxwell further objects to this Request to the extent that it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence. Maxwell further objects to this Request to the extent it implicates her right to privacy. *Gateway Logistics, Inc. v. Smay*, 302 P .3d 235 (Colo.2013); Fed.R.Evid. 501.

Subject to and without waiving the above objections, Maxwell has been unable to locate any documents responsive to this Request during the Relevant Periods defined in paragraph15, supra. Maxwell is withholding production of documents outside of such Relevant Periods.

    b.    <u>Request No. 22</u>: All documents relating to calendars, schedules or appointments for you from 1999 –present.

    c.    Maxwell's Response to Request No. 22:

Maxwell objects to this Request on the grounds that it is overly broad, unduly burdensome, propounded for the improper purpose of annoying or harassing Maxwell, and seeks documents outside of Maxwell's possession, custody or control. Maxwell further objects to this Request to the extent that it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence. Maxwell further objects to this Request to the extent it implicates her right to privacy. *Gateway Logistics, Inc. v. Smay*, 302 P. 3d 235 (Colo.2013); Fed.R.Evid. 501.

Subject to and without waiving the above objections, Maxwell has been unable to locate any documents responsive to this Request during the Relevant Periods defined in paragraph15, supra. Maxwell is withholding production of documents outside of such Relevant Periods.

    d.    <u>Request No. 23</u>: All documents relating to calendars, schedules or appointments for Jeffrey Epstein from 1999 –present.

    e.    Maxwell's Response to Request No. 23:

Maxwell objects to this Request on the grounds that it is overly broad, unduly burdensome, propounded for the improper purpose of annoying or harassing Maxwell, and seeks documents outside of Maxwell's possession, custody or control. Maxwell further objects to this

Request to the extent that it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence.

Maxwell further objects to this Request to the extent it implicates her right to privacy. *Gateway Logistics, Inc. v. Smay*, 302 P .3d 235 (Colo.2013); Fed.R.Evid. 501.

Subject to and without waiving the above objections, Maxwell has been unable to locate any documents responsive to this Request during the Relevant Periods defined in paragraph15, supra. Maxwell is withholding production of documents outside of such Relevant Periods.

        f.    <u>Request No. 24</u>: All documents relating to contact lists, phone lists or address books for you or Jeffrey Epstein from 1999 –present.

        g.    Maxwell's Response to Request No. 24:

Maxwell objects to this Request on the grounds that it is overly broad, unduly burdensome and/or propounded for the improper purpose of annoying or harassing Maxwell. Maxwell further objects to this Request to the extent that it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence. Maxwell further objects to this Request to the extent it implicates her right to privacy. *Gateway Logistics, Inc. v. Smay*, 302 P. 3d 235 (Colo. 2013); Fed.R.Evid. 501.

Subject to and without waiving the above objections, Maxwell has been unable to locate any documents responsive to this Request within the Relevant Periods defined in paragraph15, supra. Maxwell is withholding production of documents outside of such Relevant Periods.

        h.    Maxwell's Objections To Requests 21-24 Fail, as the Requests Seek Relevant Discovery

Requests Nos. 21-24 seek Maxwell's telephone records, Maxwell and Jeffrey Epstein's calendars, and Epstein's contact lists for the Relevant Period. Maxwell admits that she has documents responsive to these request that she refuses to produce. Contact with, meetings with, and contact information for the Maxwell and Epstein's underage victims and adult co-conspirators will prove that Ms. Giuffre is truthful regarding her sexual abuse.  The small grouping of message pads pulled by law enforcement reflect that Maxwell was making arrangements for Jeffrey Epstein and was in regular and frequent contact with him.  *See* SAO2847.  Records of telephone calls and meetings are critical to this case.  For example, in one of the two documents produced by Maxwell, she instructs co-conspirator Prince Andrew to "call

me." *See* McCawley Decl. at Exhibit 9. Another example is Jeffrey Epstein's "black book" with the contact information for underage girls and co-conspirators. *See* McCawley Decl. at Exhibit 10. Accordingly, Maxwell's refusal to produce similar documents is not supported by law, and this Court should order them to be produced. Similarly, Maxwell's and Mr. Epstein's calendars, schedules and appointments reveal who they met with and when, including underage girls and co-conspirators.

Maxwell and Epstein's illegal and abusive behavior is not only relevant for the period of time in which they trafficked Ms. Giuffre: their continued trafficking until Epstein's 2008 indictment, and their continued collaboration up through the present regarding the related civil suits also go to the claim in this case, and support Ms. Giuffre's account of her own sex abuse. Accordingly, Maxwell must produce the documents responsive to these four requests that she is withholding.

        10.     <u>Request No. 32:</u> All documents related to communications with or interaction with Alan Dershowitz from 1999 to present.

        a.     Maxwell's Response:

Maxwell objects to this Request on the grounds that it is overly broad, unduly burdensome and/or propounded for the improper purpose of annoying or harassing Maxwell. Maxwell further objects to this Request to the extent that it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence. Maxwell further objects to this Request as being interposed for an improper purpose, specifically Plaintiff and her counsel's civil litigation currently pending in Broward County, Florida in the matter of *Cassell v. Dershowitz*.

Subject to and without waiving the above objections, Maxwell will produce non-privileged documents responsive to this Request during the Relevant Periods defined in paragraph15, supra. Maxwell is withholding production of documents outside of such Relevant Periods.

        b.     Maxwell's Objections Fail, as the Request Seeks Relevant Discovery

Defendant Maxwell has been communicating with Alan Dershowitz about the sexual trafficking allegations as evidenced by the one email she produced. Maxwell's communications

with Dershowitz are directly relevant to the claim.  Maxwell has admitted that she has documents

responsive to this request,[13] but refuses to produce them under her arbitrary and self-serving

restrictive limitation to the Relevant Period.  Accordingly, this Court should require that

Defendant Maxwell produce her communications with Dershowitz.

       11.    <u>Request No. 34</u>:  All documents reflecting your ownership or control of
property in London between the years 1999 and 2002.

       a.    Maxwell's Response

Maxwell objects to this Request to the extent that it calls for the production of documents
that are irrelevant to this action and not reasonably calculated to lead to the discovery of
admissible evidence. Maxwell further objects to this Request on the grounds that it calls for
documents that are a matter of public record and are thus equally available to the Plaintiff.

Subjection to and without waiving the above objections, Maxwell is withholding
documents Responsive to this Request that are a matter of public record.

       b.    Maxwell's Objections Fail, as the Request Seeks Relevant Discovery

Defendant Maxwell and Jeffrey Epstein trafficked Ms. Giuffre when she was a minor

child to Prince Andrew in Maxwell's own home in London, as evidenced by the photograph of

Ms. Giuffre, Maxwell, and Prince Andrew taken in her London home when Ms. Giuffre was

only seventeen years old.  *See* McCawley Decl. at Exhibit 11. Evidence of Maxwell's property in

London evidences this incident of sexual trafficking, and it is therefore relevant.  The ownership

and property records are also relevant to establish whether any other individuals have ownership

rights in the property, like Jeffrey Epstein.  The recent amendments to Rule 26(b) allow courts to

take into account "the parties' relative access to relevant information."  Fed. R. Civ. P. 26(b)(1).

Maxwell admitted that she already has responsive documents in her possession that she is

choosing to withhold, purporting that they are "a matter of public record," without giving any

---

[13] Alan Dershowitz is not Maxwell's attorney, and Maxwell has not alleged that he is her attorney.
Therefore, no attorney-client privilege attaches to Maxwell and Dershowitz's communications. Maxwell
has listed communications with Dershowitz on her privilege log. That entry is challenged in Plaintiff's
Motion to Compel for Improper Claim of Privilege.

evidence or reasons supporting that statement, nor explaining how and whether such records can

be accessed by a foreigner. Indeed, Ms. Giuffre's access to property records in a foreign

jurisdiction is slight compared to Maxwell's access to documents already in her possession. The

party resisting disclosure bears the burden of establishing alternative sources for the information,

and Maxwell has not met that burden. *See State Farm Mut. Auto. Ins. Co. v. Fayda*, No.

14CIV9792WHPJCF, 2015 WL 7871037, at *4 (S.D.N.Y. Dec. 3, 2015) (internal citations and

quotations omitted). Accordingly, Maxwell must produce her property records.

12.   Request No. 37:  All documents reflecting communications you have had
with Bill or Hillary Clinton (or persons acting on their behalf), including all communications
regarding your attendance at Chelsea's Clinton's wedding ceremony in 2010.

a.   Maxwell's Response:

Maxwell objects to this Request on the grounds that it is overly broad, unduly
burdensome and/or propounded for the improper purpose of annoying or harassing Maxwell.
Maxwell further objects to this Request to the extent that it calls for the production of documents
that are irrelevant to this action and not reasonably calculated to lead to the discovery of
admissible evidence.

Subject to and without waiving the above objections, Maxwell has been unable to locate
any documents responsive to this Request for the Relevant Periods as defined in paragraph 15,
supra. Maxwell is withholding production of documents outside of such Relevant Periods.

b.   Maxwell's Objections Fail, as the Request Seeks Relevant Discovery

As recounted above, in 2009, an attorney sought Maxwell's deposition in connection with

various sexual abuse allegations and Maxwell said her mother was ill and she would be traveling

outside the country with no plans of returning.  Despite this claim to avoid her deposition, she

then was photographed at Chelsea Clinton's wedding in Rhinebeck, New York.  *See* McCawley

Decl. at Exhibit 8, Maxwell Deposition Notice; Subpoena and Cancellation Payment Notice, and

January 13, 2015 Daily Mail Article with photograph.  Maxwell admits that she has documents

responsive to this request, and this Court should require her to produce them.  Other

communications she has had with the Clintons about Ms. Giuffre or the allegations in this case

are also highly relevant, particularly given that Mr. Clinton travelled with Maxwell, Jeffrey Epstein and others on Jeffrey Epstein's plane a number of times, including a trip to Thailand.

13.    Request No. 39:  All documents reflecting training to fly a helicopter or experience flying a helicopter, including any records concerning your operation of a helicopter in the U.S. Virgin Islands.

a.    Maxwell's Response:

Maxwell objects to this Request to the extent that it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence. Maxwell further objects to this Request to the extent it implicates her right to privacy. *Gateway Logistics, Inc. v. Smay*, 302 P.3d 235 (Colo. 2013); Fed. R. Evid. 501.

Maxwell is withholding documents responsive to this Request as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

b.    Maxwell's Objections Fail, as the Request Seeks Relevant Discovery

Epstein's private island in the United States Virgin Islands is only accessible via boat or helicopter. Maxwell flew people back and forth from Epstein's island as part of her sexual trafficking of underage girls.  Records of Maxwell's operating a helicopter and training therefor is relevant to the claims of sexual abuse in this case.  Maxwell has admitted that she has responsive documents; therefore, this Court should require her to produce them.

## CONCLUSION

For the reasons set forth above, plaintiff Virginia Giuffre respectfully requests that the Court grant her Motion to Compel and direct Defendant Maxwell to produce documents responsive to Request Nos. 1 – 39 for the period of 1999 to the present.

Dated: February 26, 2016

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By:  /s/ Sigrid McCawley
       Sigrid McCawley (Pro Hac Vice)
       Boies, Schiller & Flexner LLP

401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

David Boies
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Ellen Brockman
Boies, Schiller & Flexner LLP
575 Lexington Ave
New York, New York 10022
(212) 446-2300

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 26, 2016, I electronically filed the foregoing

document with the Clerk of Court by using the CM/ECF system.  I also certify that the foregoing

document is being served this day on the individuals identified below via transmission of Notices of

Electronic Filing generated by CM/ECF.

Laura A. Menninger, Esq.
HADDON, MORGAN & FOREMAN, P.C.
150 East 10th Avenue
Denver, Colorado 80203
Tel: (303) 831-7364
Fax: (303) 832-2628
Email: lmenninger@hmflaw.com


/s/ Sigrid S. McCawley
Sigrid S. McCawley