**United States District Court**
**Southern District Of New York**

```
--------------------------------------------------X
                                              :
VIRGINIA L. GIUFFRE,                          :
                                              :
        Plaintiff,                            :
                                              :
v.                                            :
                                              :          15-cv-07433-RWS
GHISLAINE MAXWELL,                            :
                                              :
        Defendant.                            :
                                              :
                                              :
--------------------------------------------------X
```

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS
<u>SUBJECT TO IMPROPER CLAIM OF PRIVILEGE</u>**

Laura A. Menninger
HADDON, MORGAN, AND FOREMAN, P.C.
East 10th Avenue
Denver, CO 80203
303.831.7364

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

I.     Failure to Confer Fatal to Plaintiff's Motion ................................................ 2

II.     Defendant's Communication with Attorneys Philip Barden, Mark Cohen, and Brett Jaffe Are Protected by the Attorney-Client Communication Privilege (Entries 1, 2, 9 and 17) …………………………………………………………………………………..3

    A.     Choice of Law ................................................................................................. 3

    B.     Maxwell's Communications with her Attorneys Are Privileged ........................... 5

    C.     Plaintiff Well Aware These Attorneys Were Defendant's Counsel ...................... 7

III.     Communications Among Maxwell, Her Attorney, and Her Agent Protected by Attorney-Client Privilege (Entries 8, 10, 12, 13, and 18) ............................................. 8

IV.     Common Interest Privilege Protects Communications with Gow, Epstein and Others ...................................................................................................................... 10

    A.     Maxwell and her attorneys were involved in a common interest agreement with Epstein and his attorneys ................................................................................... 12

    B.     Maxwell and Epstein's attorneys communicated with one another pursuant to the common interest agreement (Entry 16) ................................................................. 13

    C.     Maxwell and Epstein shared their attorneys' respective legal advice, strategies and mental impressions pursuant to the common interest agreement (Entries 11- 15) ................................................................................................................ 13

    D.     Maxwell and Epstein exchanged documents pursuant to the common interest agreement in order to obtain legal advice (Entries 6, 7 and 19) .......................... 14

    E.     Ms. Maxwell and Epstein shared information and advice to be forwarded to the others' attorney for purposes of legal advice (Entries 14, 19 and 20) ................. 15

V.     Ms. Maxwell's Privilege Log Is Sufficient ................................................ 15

CONCLUSION ..................................................................................................................... 17

# TABLE OF AUTHORITIES

*Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 998 N.Y.S.2d 329, 331 .............. 11

*Anwar v. Fairfield Greenwich Ltd.,* 982 F.Supp.2d 260, 264 (S.D.N.Y. 2013) ................ 3

*Anwar*, *supra* (*citing Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 65 (S.D.N.Y. 2010)

................................................................................................................................ 4

*Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 499 F.Supp.2d 475, 479

(S.D.N.Y. 2007) .......................................................................................... 16

*Auto. Club of New York, Inc. v. Port Auth. Of New York & New Jersey*, No. 11 CIV. 6746

RKE HBP, 2012 WL 4791804, at *6 (S.D.N.Y. Oct. 9, 2012) ...................................... 2

*Cf. In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F.Supp.2d 321, 330

(S.D.N.Y. 2003) .......................................................................................... 9

*Chevron Corp v. Donziger,* 2013 WL 4045326 (S.D.N.Y. 2013) .................................... 17

*Egiazarayan v. Zalmayev*, 290 F.R.D. 421 (S.D.N.Y. 2013) ............................................. 9

*Gucci Am., Inc. v. Gucci,* No. 07–CV–6820 (RMB)(JCF), 2008 WL 5251989, at *1

(S.D.N.Y. Dec. 15, 2008) .................................................................... 12, 14, 15

*GUS Consulting GMBH v. Chadbourne & Parke LLP,* 858 N.Y.S.2d 591, 593 (Sup. Ct.

N.Y. Cnty. 2008) ...................................................................................... 11

*Hendrick v. Avis Rent A Car Sys., Inc.,* 944 F. Supp. 187, 189 (W.D.N.Y. 1996). ............ 8

*Mileski v. Locker,* 178 N.Y.S.2d 911 (Sup. Ct. Queens Cnty. 1958) ................................. 8

*Millenium Health LLC v. Gerlach,* 15-cv-7235 (WHP)(JLC), 2015 WL 9257444, at * 2

(S.D.N.Y. Dec. 18, 2015) .......................................................................... 12

*S.E.C. v. Yorkville Advisors, LLC,* 300 F.R.D. 152, 155 (S.D.N.Y. 2014) ...................... 16

*Shaeffler v. United States,* 806 F.3d 34, 40 (2d. Cir. Nov. 10, 2015) ............................. 15

*Stroh v. Gen. Motors Corp.,* 623 N.Y.S.2d 873, 874-75 (1st Dep't 1995) ........................ 8

*United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961). ........................................................ 10

*United States v. Schwimmer,* 892 F.2d 237 (2d Cir.1989) ................................................. 11

Defendant Ghislaine Maxwell, by and through undersigned counsel, hereby submits this Response to Plaintiff's Motion to Compel Production of Documents Subject to Improper Claim of Attorney-Client Privilege and Common Interest Privilege[1]. For the reasons outlined below, the Court should <u>deny</u> Plaintiff's Motion to Compel Production of Documents Subject to Improper Privileges.

## <u>INTRODUCTION</u>

Without a single conferral (despite multiple email and telephonic contacts between counsel in the interim weeks), Plaintiff unilaterally and frivolously challenges the assertions of privilege properly contained on a valid privilege log that Ms. Maxwell produced in response to Plaintiff's First Request for Production of Documents to Ghislaine Maxwell. Plaintiff feigns ignorance that Ms. Maxwell has been represented by Messrs. Philip Barden, Mark Cohen and Brett Jaffe during the last five years, yet submits to the Court documents demonstrating not only their representation but also Plaintiff's knowledge of said representations. Plaintiff claims that the presence of Ms. Maxwell's agent Ross Gow on communications with her attorney destroyed the privilege, despite binding New York law to the contrary. Plaintiff asserts that Ms. Maxwell and Mr. Epstein and their counsel were not in a common interest agreement without once having conferred regarding that fact and with knowledge that all of the elements of a common interest agreement are satisfied in this case.

---

[1] Ms. Maxwell previously submitted a joint response (Doc. #42) to Plaintiff's Motions to Compel in which she argues that Plaintiff's failure to confer prior to filing her motions is, alone, grounds for this Court to deny her Motions. If the Court is inclined, however, to decide Plaintiff's Motions on the merits, Ms. Maxwell hereby submits a response to the merits of Plaintiff's Motion to Compel Production of Documents Subject to Improper Privileges. This response is timely to Plaintiff's Motion, filed electronically on February 26, 2016.

Rule 37 requires a certification of good faith conferral, something Plaintiff concededly failed to do, in advance of filing a Motion to Compel. While Plaintiff wishes to pick and choose which Rules of Civil Procedure she thinks should apply to her litigation, the rules apply equally to both sides. Raising proper objections and interposing appropriate privileges are demanded by the Rules of Civil Procedure. Plaintiff's hyperbole regarding "stonewalling" and un-reasonable delays in discovery should be dismissed. All of the delays could have been prevented had she served Requests for Production that tailored to the issues in this case and not some book or media deals she hopes to fulfill in the future. Likewise, her frivolous positions concerning privilege have caused the delay she decries. Plaintiff's failure to confer, as well as the binding Second Circuit and New York case law, dictate that her Motion to Compel Production of Documents Subject to Improper Privileges should be denied.

## ARGUMENT

### I.       Failure to Confer Fatal to Plaintiff's Motion

Plaintiff failed to confer regarding this Motion in advance of its filing and failed to include the required certificate pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure (motion to compel "*must* include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action"). This significant deficiency alone warrants the denial of this Motion. *See, e.g., Auto. Club of New York, Inc. v. Port Auth. Of New York & New Jersey*, No. 11 CIV. 6746 RKE HBP, 2012 WL 4791804, at *6 (S.D.N.Y. Oct. 9, 2012) (failure to make any attempts to resolve any specific discovery disputes "alone is a sufficient ground for denying the motion [to compel]").

Issues concerning privilege such as Plaintiff presents here are precisely the type that should be the subject of conferral. Plaintiff could simply ask whether any particular attorney was representing Ms. Maxwell at a specific time. Plaintiff could ask for more detailed descriptions of documents on the privilege log. Plaintiff could ask why British law was asserted on the privilege log. Indeed, all of the cases cited by Plaintiff involve such conferrals prior to judicial intervention. Such conferral would not be futile in this case with respect to privileges going forward and this Court should enforce Plaintiff's Rule 37 obligations with respect thereto.

II.    **Defendant's Communications with Attorneys Philip Barden, Mark Cohen, and Brett Jaffe Are Protected by the Attorney-Client Communication Privilege (Entries 1, 2, 9 and 17)**

A.  **Choice of Law**

Regarding Ms. Maxwell's communications with Brett Jaffe in 2011 as noted on the privilege log, she does not dispute that these are covered by the attorney-client communication privilege as defined by New York state law. Mr. Jaffe is a New York attorney. Menninger Decl. at Ex. B. Similarly, Mark Cohen likewise is a New York attorney. *Id.* at Ex. C. Ms. Maxwell consulted both regarding litigation pending in the US. *Id.* at Ex. E, Maxwell Aff. at ¶ 9-12.

However, choice-of-law with respect to foreign attorney-client communications is governed by the "touch base" test. Under this test, the court must ascertain the country with which the communications "touch base." "[A] court should apply the law of the country that has the predominant or the most direct and compelling interest in whether [the] communications should remain confidential, unless that foreign law is contrary to the public policy of this forum." *Anwar v. Fairfield Greenwich Ltd.,* 982 F.Supp.2d 260, 264 (S.D.N.Y. 2013) (quoting *Astra Aktiebolag v. Andrx Parms., Inc.,* 208 F.R.D. 92, 98 (S.D.N.Y. 2002)). "Communications concerning legal proceedings in the United States or advice regarding United States law are

typically governed by United States privilege law, while communications relating to foreign legal proceedings or foreign law are generally governed by foreign privilege law." *Anwar*, *supra* (*citing Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 65 (S.D.N.Y. 2010)).

As will be described more fully below, the privilege concerning Ms. Maxwell's communications with Mr. Barden should be construed pursuant to British law. Ms. Maxwell, a dual-British / American citizen, retained Mr. Barden for the purposes of securing legal advice from a British lawyer for potential litigation in England under British law concerning press statements that were made in the British press. *Id.* at Ex. E. Likewise, to the extent that Mr. Gow was a participant in communications as between Mr. Barden and Ms. Maxwell, those also should be construed pursuant to British law. Mr. Gow is a British press relations specialist, hired as an agent consistent with British law, to render assistance to Ms. Maxwell's counsel in England, for purposes of potential litigation in England. *Id.*

Given the time allotted for response in connection with this Motion to Compel Documents Privileges and Plaintiff's failure to confer regarding this issue, Ms. Maxwell has not had sufficient time to secure appropriate affidavits, documents and legal opinions concerning British law's attorney-client privileges but has been advised that British law extends the attorney-client communication to any of a client's agents (also considered "associates" of the client). Should the Court be inclined to overlook Plaintiff's failure to confer, Ms. Maxwell respectfully requests an additional two weeks within which to secure appropriate documentation and supporting affidavits under British law with respect to the question of the attorney-client privilege under British law and its applicability to a client's agents. *See also* Fed. R. Civ. P. 44.1 (permitting Court to consider "any relevant material or source" to determine issue of foreign law).

Without waiver of the choice-of-law issue, Ms. Maxwell submits that the privilege also applies to her communications under New York law and so provides argument and authority herein on that law as well.

### B. Maxwell's Communications with her Attorneys Are Privileged

The two Requests for Production Implicated in this Motion are:[2]

**DOCUMENT REQUEST NO. 17**
All documents relating to communications with you and Ross Gow from 2005 – present.

**DOCUMENT REQUEST NO. 19**
All documents relating to your deposition scheduled in the matter of Jane Doe v. Epstein, 08-80893, United States Southern District of Florida.

As argued elsewhere, both of these Requests are overly broad and not relevant to any party's claim or "proportional to the needs of this case." FRCP 26(b)(1). Ms. Maxwell interposed her objections and also produced a privilege log containing any documents responsive to these requests which were privileged, specifically, documents covered by the attorney-client privilege.

Ms. Maxwell has been represented at various times by attorneys Brett Jaffe, Mark Cohen and Philip Barden. Mr. Jaffe represented Ms. Maxwell in connection with a scheduled deposition. *See* Menninger Decl. at Ex. E, Maxwell Aff. at ¶ 9. After Mr. Jaffe left the firm, his successor on the case was Mark Cohen. Both Mr. Jaffe and Mr. Cohen were affiliated with the law firm Cohen & Gresser, LLP. Mr. Cohen, a named partner, is still associated with that firm. *See id.* at Ex. C.

---

[2] The entry number 9, a communication solely between Ms. Maxwell and her attorney Philip Barden, was erroneously placed on the Privilege Log. It is not responsive to any of Plaintiff's discovery requests.

Ms. Maxwell also has been represented for quite some time in the United Kingdom by solicitor Philip Barden. Mr. Barden is a partner with Devonshires Solicitors. *See* Menninger Decl. at Ex. D. Devonshires Solicitors issued the cease and desist letter to the British press following Plaintiff's first paid interview with the *Daily Mail* in March 2011 in which she made false allegations about and concerning Ms. Maxwell. That cease and desist letter was attached to Defendant's Motion to Dismiss (Menninger Decl. in Support of Motion to Dismiss, Doc. #16-1, Ex. B) and to Plaintiff's Reply (McCawley Decl. in Reply, Doc. #24-2, Ex. 2).

Mr. Barden's representation of Ms. Maxwell relates to potential civil litigation in the United Kingdom concerning defamation. Ms. Maxwell's communications with Mr. Barden were made for the purpose of seeking and obtaining legal advice, and Mr. Barden provided such legal advice. Mr. Barden did not provide business advice to Ms. Maxwell. *See* Maxwell Aff. at ¶ 2. Likewise, Messrs. Jaffe and Cohen's representation of Ms. Maxwell related to and concerned a deposition. *Id.* at ¶ 9. Ms. Maxwell solicited legal advice from Messrs. Jaffe and Cohen for the purpose of that deposition and they in fact supplied legal advice.

Plaintiff speculates that Ross Gow "was involved in so many communications with Jaffe and Barden" that the purpose of the communications must have been public relations matters. First, not a single one of the communications with Jaffe involved Mr. Gow. Second, the privilege log does not contain all of the communications Plaintiff had with her attorneys. Rather, Plaintiff's Request Number 17 sought "all communications related to communications with you and Ross Gow from 2005 – present." Thus, the only communications with Mr. Barden on the privilege log are those between Mr. Gow and Mr. Barden in which Mr. Gow was a participant or which were otherwise included in other privileged communications.

Plaintiff further complains that Defendant's Rule 26 Disclosures revealed that Defendant "may" use the email communications between herself and Mr. Barden "to support Defendant's claims or defenses." (Pl.'s M. Compel at 11-12). Should Defendant choose to affirmatively waive her attorney-client privilege with Mr. Barden, those emails would likely lose their privileged status. However, that is not a decision Ms. Maxwell has yet reached, especially at this early stage of the litigation given she has not even filed her Answer or Counterclaims.

### C. Plaintiff Well Aware These Attorneys Were Defendant's Counsel

Plaintiff knew or should have known at the time she filed this Motion to Compel that Messrs. Jaffe, Cohen and Barden were Ms. Maxwell's attorneys. In Plaintiff's Motion to Compel based on Improper Objections, she actually supplied to the Court an exhibit which lists Mr. Jaffe as Ms. Maxwell's counsel. (Pl's Mot. Compel - Objections, Ex. 8, Doc. #36-9 at 11). Likewise, Mr. Jaffe worked at Cohen & Gresser, LLP. *Id.* The named partner of Mr. Jaffe's firm is Mark Cohen, as a simple internet search confirms. Menninger Decl. at Ex. C. Thus, Plaintiff had in her possession and actually provided to the Court proof that Ms. Maxwell was represented by these two attorneys. Her assertion that Ms. Maxwell "has not even claimed that she has an attorney-client relationship with … Jaffe" is patently frivolous. (Pl's M. Compel at 10). Likewise, her designation of Mark Cohen as a "non-attorney" (*id.* at 9) is similarly frivolous.

Further, Plaintiff submitted to the Court in Opposition to the Motion to Dismiss, a cease and desist letter issued by Devonshires Solicitors, Mr. Philip Barden's firm. *See* McCawley Decl. in Support of Plaintiff's Opp'n to Motion to Dismiss at Ex. 2. She also, admittedly, possesses Defendant's Rule 26 disclosures listing Mr. Barden as counsel for Ms. Maxwell and his communications with her as attorney-client privileged. (Pl.s' M. Compel at 11).

Finally, Ms. Maxwell's privilege log lists Mr. Barden and Mr. Jaffe as "Esq." and notes their communications are attorney-client privileged. Plaintiff presents no credible argument that Ms. Maxwell's communications with her counsel should not be afforded the attorney-client communication privilege.

Plaintiff's Motion with respect to entry numbers 1, 2, 9 and 17 should therefore be denied.

## III. Communications Among Maxwell, Her Attorney, and Her Agent Protected by Attorney-Client Privilege (Entries 8, 10, 12, 13 and 18)

Without waiver of Ms. Maxwell's position that British law should control the question, even under New York law, Mr. Gow's participation in communications among and between Ms. Maxwell and her counsel are privileged.

"New York courts have recognized that the attorney-client privilege may attach to communications between a client's agent and an attorney." *Hendrick v. Avis Rent A Car Sys., Inc.,* 944 F. Supp. 187, 189 (W.D.N.Y. 1996). "As a general rule, a communication by a client to his attorney by any form of agency employed or set in motion by the client is within the privilege." *Mileski v. Locker,* 178 N.Y.S.2d 911 (Sup. Ct. Queens Cnty. 1958); *see also First Am. Commercial Bancorp, Inc. v. Saatchi & Saatchi Rowland, Inc.,* 868 N.Y.S.2d 425, 427 (4th Dep't 2001) ("[w]hile communications made between a defendant and counsel in the known presence of a third party generally are not privileged, an exception exists for 'one serving as an agent of either attorney or client'"); *Stroh v. Gen. Motors Corp.,* 623 N.Y.S.2d 873, 874-75 (1st Dep't 1995) ("communications made to counsel through ... one serving as an agent of ... [the] client to facilitate communication, generally will be privileged").

Mr. Ross Gow is the agent for Ms. Maxwell, as Plaintiff acknowledges. Complaint ¶ 29 (Maxwell "directed her agent, Ross Gow"); ¶ 30 ("speaking through her authorized agent").

Plaintiff wrongfully relies on *Egiazarayan v. Zalmayev*, 290 F.R.D. 421 (S.D.N.Y. 2013) (Gorenstein, Magistrate J.). That case, unlike this one, involved a public-relations firm hired specifically for litigation purposes by counsel to conduct a litigation-related public relations campaign on behalf of the client. That public relations firm assisted in a media campaign thereafter, which was relevant to the lawsuit alleging violation of New York anti-SLAPP provision. The decision concerned a subpoena for documents that the client had shared with the public relations firm. *Id.* at *4.

By contrast, Mr. Gow acted as Ms. Maxwell's agent for a number of years. Maxwell Aff. at ¶ 6. He provided information to Mr. Barden, Ms. Maxwell's counsel, at Ms. Maxwell's request regarding press inquiries so as to further Mr. Barden's ability to give appropriate legal advice to Ms. Maxwell regarding potential defamation litigation in the United Kingdom. As Ms. Maxwell's agent, Mr. Gow's involvement in providing Mr. Barden with information was necessary and critical for Mr. Barden to render proper legal advice concerning, among other things, the law of "fair comment" under UK law. *Cf. In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F.Supp.2d 321, 330 (S.D.N.Y. 2003) ("the ability of lawyers to perform some of their most fundamental client functions – such as (a) advising the client of the legal risks of speaking publicly and of the likely impact of possible alternative expressions, (b) seeking to avoid or narrow charges brought against the client, and (c) zealously seeking acquittal or vindication – would be undermined seriously if lawyers were not able to engage in frank discussions of facts and strategies with the lawyers' public relations consultants.").

This case is particularly distinguishable from those relied upon by Plaintiff because the very nature of the issue in this case is defamatory statements to the press and responses thereto. Whereas public relations may not be an integral topic to other litigations (or potential litigations),

the need for input from a client's agent who is a press specialist is particularly potent when the issue is fair comment, litigation against the British press or the ability to respond to false statements levied by Plaintiff in the British press and elsewhere.  In a scenario such as this, the press specialist agent is as integral to the discussion as an accountant is to a litigation that concerns a client's finances. *See United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961).

Additionally, the communications among Mr. Gow, Mr. Barden and Ms. Maxwell occurred between January 9-21, 2015, a period which post-dates the issuance of Ms. Maxwell's only statement to the press on January 2, 2015 (and the alleged reference back to that statement on January 4, 2015).  *See* Complaint ¶ 30, 31, 37.  Plaintiff has not demonstrated that these post-press release documents are relevant, nor calculated to lead to relevant and admissible evidence.[3]

Mr. Gow acted as Ms. Maxwell's agent in communications to, with and among Ms. Maxwell and her attorney, Mr. Philip Barden on dates subsequent to the press release at issue here.  His provision of information was a necessary part of Mr. Barden's ability to give cogent legal advice to Ms. Maxwell concerning matters of litigation in the United Kingdom.  To the extent that New York law even applies to those communications, it shields involvement of a client's agent and Plaintiff's Motion with respect to entry numbers 8, 10, 12, 13 and 18 should therefore be denied.

## IV. Common Interest Privilege Protects Communications with Gow, Epstein and Others

"The purpose of the attorney-client privilege is to enable attorneys to give informed legal advice to clients, which would be undermined if an attorney had to caution a client about

---

[3]  Ms. Maxwell also objected to Request No. 17:  "All documents relating to communications with you and Ross Gow from 2005 – Present" on grounds other than privilege, including *inter alia*, "calls for production of documents that are irrelevant to this action and not reasonably calculated to the discovery of admissible evidence."  Plaintiff did not assert in her Motion to Compel – Improper Objections that the period subsequent to the issuance of the press release was relevant (See Doc. #35 at 17-18) and thus has waived that argument.

revealing relevant circumstances lest the attorney later be compelled to disclose those circumstances." *Shaeffler v. United States,* 806 F.3d 34, 40 (2d. Cir. 2015). "While the privilege is generally waived by voluntary disclosure of the communication to another party, the privilege is not waived by disclosure of communications to a party that is engaged in a 'common legal enterprise' with the holder of the privilege. Under *United States v. Schwimmer,* 892 F.2d 237 (2d Cir.1989), such disclosures remain privileged 'where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel ... in the course of an ongoing common enterprise ... [and] multiple clients share a common interest about a legal matter.' *Id.* at 243 'The need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter.' *Id.* at 243.'"[4] (emphases added).

As New York's Appellate Division, First Department recently found, "pending or reasonably anticipated litigation is not a necessary element of the common-interest privilege." *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.,* 998 N.Y.S.2d 329, 331 (1st Dep't 2014). Moreover, "a total identity of interest among the participants is not required under New York law. Rather, the privilege applies where an interlocking relationship' or a limited common purpose' necessitates disclosure to certain parties." *GUS Consulting GMBH v. Chadbourne & Parke LLP,* 858 N.Y.S.2d 591, 593 (Sup. Ct. N.Y. Cnty. 2008) (internal citations omitted).

---

[4] "The common interest privilege is an exception to the rule that the presence of a third party will waive a claim that a communication is confidential. It requires that the communication otherwise qualify for protection under the attorney-client privilege and that it be made for the purpose of furthering a legal interest or strategy common to the parties asserting it." *San Diego Gas & Elec. Co. v. Morgan Stanley Senior Funding, Inc.,* No. 150017/15, 2016 WL 634951, at *1 (1st Dep't Feb. 18, 2016).

Importantly for purposes of this case, "[t]he joint defense privilege may apply as between two individuals within a joint defense effort, regardless of the presence of an attorney." *Millenium Health LLC v. Gerlach,* 15-cv-7235 (WHP)(JLC), 2015 WL 9257444, at * 2 (S.D.N.Y. Dec. 18, 2015). "If information that is otherwise privileged is shared between parties that have a common legal interest, the privilege is not forfeited even though no attorney either creates or receives that communication. For example, if an attorney provides legal advice to a client ... the client can repeat that advice to a co-defendant outside the presence of any attorney without causing the privilege to be waived." *Gucci Am., Inc. v. Gucci,* No. 07–CV–6820 (RMB)(JCF), 2008 WL 5251989, at *1 (S.D.N.Y. Dec. 15, 2008).

**A. Maxwell and her attorneys were involved in a common interest agreement with Epstein and his attorneys.**

Beginning at least on December 30, 2014, Ms. Maxwell and her attorneys were engaged in a common interest agreement with Mr. Epstein and his attorneys. On that date, Plaintiff filed a pleading in the U.S. District Court for the Southern District of Florida falsely alleging that Ms. Maxwell participated in sex crimes against Plaintiff and others and also falsely alleged that Ms. Maxwell conspired with Mr. Jeffrey Epstein in sex crimes committed by him.[5] By her pleading, Plaintiff sought to join that Crime Victims' Rights Act litigation pursuant to pursue a remedy: force the Government to withdraw its non-prosecution agreement against Mr. Epstein so that she could pursue charges against him and others, including Ms. Maxwell. Plaintiff's sworn pleading contained false statements about both Ms. Maxwell and Mr. Epstein.

Her pleading was unsuccessful: In April 2015, District Court Judge Marra struck the portions of her pleading having to do with Ms. Maxwell and others, denied Plaintiff the ability to

---

[5] Curiously, Plaintiff has not even provided this pleading which she references in Complaint under her Rule 26(a)(1) obligations.

join as a party to that case, and suppressed portions of her pleading from public access. Prior to that, in January 2015, Ms. Maxwell and Epstein both shared a common legal interest in defending themselves against Plaintiff's false allegations. The fact that neither Ms. Maxwell nor Epstein was a party to a litigation involving Plaintiff is immaterial to their shared legal interest. *Ambac*, 998 N.Y.S.2d at 331. Likewise, that common shared interest extended not only to their lawyers (Barden and Cohen for Maxwell; Weinstein and Dershowitz for Epstein), but also to Ms. Maxwell's agent, Ross Gow, who had issued the January 2, 2015, press statement.

**B. Maxwell and Epstein's attorneys communicated with one another pursuant to the common interest agreement (Entry 16).**

The attorneys orally engaged in to a common interest agreement and in reliance on that agreement, shared documents, legal advice, impressions and strategies with one another to facilitate their common goal of exposing Plaintiff's false statements. Entry number 16 on the privilege log reflects such communications between Plaintiff's attorney, Philip Barden, and Epstein's attorney, Martin Weinberg on January 12-13, 2015. The emails' subject lines read: "Attorney Privileged Communication – subject to mutual interest privilege," and the contents include both attorneys' mental impressions, references to evidence, litigation strategy decisions and the like. Indeed, the emails would not be responsive to any request made by Plaintiff but for the fact that Ms. Maxwell's attorney forwarded the email chain to her and she forwarded it to Epstein, as discussed more fully below.

**C. Maxwell and Epstein shared their attorneys' respective legal advice, strategies and mental impressions pursuant to the common interest agreement (Entries 11-15).**

Ms. Maxwell and Epstein forwarded to one another emails they had received from their respective counsel containing counsel's mental impressions, legal advice and litigation strategy.

- Entry number 11 is an email from Ms. Maxwell forwarding to Epstein (without comment) emails reflected in entries 12 and 13, that is, communications from her

own attorney, Mr. Barden, to her (as to which Mr. Gow was copied on one, and directed to Mr. Gow and copied to Ms. Maxwell as to the other). Mr. Barden provided in emails at entries 12 and 13, legal advice to Ms. Maxwell.

- Entry numbers 14 and 15 likewise reflect emails on January 11 and January 13 wherein (a) Epstein forwards to Ms. Maxwell a communication to and from his attorney (Alan Dershowitz in that case); (b) Epstein forwards to Ms. Maxwell a communication from his attorney (Martin Weinberg in that case) regarding Weinberg's communications with Barden, and (c) Ms. Maxwell forwards to Epstein emails from her counsel, Mr. Barden, containing Mr. Barden's legal advice and mental impressions.

"If an attorney provides legal advice to a client ... the client can repeat that advice to a co-defendant outside the presence of any attorney without causing the privilege to be waived." *Gucci Am.,* 2008 WL 5251989, at *1; *accord Millenium Health,* 2015 WL 9257444, at * 2. Pursuant to their common interest agreement, Ms. Maxwell and Mr. Epstein shared their lawyers' advice to one another via email and thus "outside the presence of any attorney," without causing their privilege to be waived.

Plaintiff's Motion to Compel with Respect to entries 11-15 should therefore be denied.

### D. Maxwell and Epstein exchanged documents pursuant to the common interest agreement in order to obtain legal advice (Entries 6, 7 and 19).

Similarly, Ms. Maxwell engaged in communications with Mr. Epstein reflecting exchanges of documents pursuant to the common interest agreement. As reflected at entries numbered 6 and 7, Ms. Maxwell requests of Mr. Epstein a particular document and then send a different document to Mr. Epstein (as well as his counsel, Mr. Dershowitz) of importance to their common interest in disproving Plaintiff's false allegations.

Similarly, in entry number 19 as pertains to the January 21 email, Ms. Maxwell forwarded to Epstein a communication (entry number 18) received from her agent that was sent to Barden for purposes of obtaining legal advice. In the same way that sharing one's lawyer's

legal advice with a fellow member of the common interest agreement does not waive the privilege, nor does the sharing of documents. *Gucci, supra* ("If information that is otherwise privileged is shared between parties that have a common legal interest, the privilege is not forfeited even though no attorney either creates or receives that communication.").

**E. Ms. Maxwell and Epstein shared information and advice to be forwarded to the others' attorney for purposes of legal advice (Entries 14, 19 and 20).**

Entry numbers 14, 19 and 20 contain some emails between Ms. Maxwell and Mr. Epstein which reflect the sharing of their respective opinions, recollections, requests for information and advice. The purpose of these communications was to communicate information to be shared with their respective counsel for purposes of seeking and receiving legal counsel. These communications ought likewise to be privileged under the common interest agreement. "The need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter." *Shaeffler v. United States,* 806 F.3d 34, 40 (2d. Cir. Nov. 10, 2015) (quoting *United States v. Schwimmer,* 892 F.2d 237 (2d Cir.1989) ("While the privilege is generally waived by voluntary disclosure of the communication to another party, the privilege is not waived by disclosure of communications to a party that is engaged in a 'common legal enterprise' with the holder of the privilege.").

Plaintiff's Motion to Compel as pertains to entry numbers 14, 19 and 20 that reflect communications between Ms. Maxwell and Epstein for purposes of sharing information with their attorneys should be denied as well.

**V. Ms. Maxwell's Privilege Log Is Sufficient**

Finally, Plaintiff complains that Ms. Maxwell's privilege log insufficiently describes the "subject matter" of the communications. Plaintiff cites three cases from the Southern District of

New York, describes them as "controlling precedent" and demands an *in camera* review of the subject documents.

First, Ms. Maxwell's privilege log satisfies the requirements of FRCP 26(c)(5) and Local Rule 26.2(a)(2). Local Rule 26.2(a)(2)(A) governs "documents"[6] and requires "(i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients and, where not apparent, the relationship of the author, addressees, and recipients to each other." Notably, the Local Rule exempts the requirements where "divulgence of such information would cause disclosure of the allegedly privileged information." To have provided more detailed descriptions of the subject matter in this case would have revealed the privileged information contained within the documents and therefore the general descriptions are sufficient.

Second, this type of issue is ripe for conferral among the parties in advance of court intervention. The three cases cited by Plaintiff are instructive. In *Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 499 F.Supp.2d 475, 479 (S.D.N.Y. 2007), the privilege log did not indicate the nature of the privilege asserted nor the parties to the communications. Nevertheless, the parties engaged in conferral, after which additional documents and an amended privilege log were produced which still omitted key information. It was only then the magistrate judge found that the privilege had been waived. In *S.E.C. v. Yorkville Advisors, LLC,* 300 F.R.D. 152, 155 (S.D.N.Y. 2014), the privilege logs failed to include the identities of the parties, as well as the subjects of the communications. Over the course of nine months, the parties engaged in

---

[6] Plaintiff erroneously cites to the requirements of Local Rule 26.2(a)(2)(B) which apply to "oral communications," not relevant here.

several rounds of conferrals regarding the log, a pre-motion conference with the magistrate during which he found the log inadequate, and only then the requesting party sought leave to file a motion to compel.

Finally, in *Chevron Corp v. Donziger,* 2013 WL 4045326 (S.D.N.Y. 2013), the court held that, while the document descriptions were insufficient, the log nevertheless contained the authors, recipients, dates and specified a privilege and so the proper remedy was to afford the withholding party the "opportunity to supplement his privilege log with descriptions of communications adequate to allow [his opponent] to assess whether the privilege is properly asserted." *Id* at *3. Moreover, the complaint about the privilege log in that case arose after several rounds of motions to compel over the course of months.

Ms. Maxwell's privilege log complies with the Federal and Local Rules, any omitted information from the descriptions would have revealed the privileged information, and Plaintiff utterly failed to confer regarding any purported deficiencies. There is no ground for either finding a waiver of privilege or conducting an *in camera* review under these circumstances.

## <u>CONCLUSION</u>

For the foregoing reasons, Ms. Maxwell requests that Plaintiff's Motion to Compel Production of Documents Subject to Improper Claim of Privileges be denied. To the extent the Court is inclined to disallow Ms. Maxwell's assertion of attorney-client privilege with respect to communications with British solicitor, Mr. Philip Barden, Ms. Maxwell requests an Order permitting two weeks additional time to secure affidavits and other materials pertinent to British law concerning attorney-client privilege, including its protection for agents of the client.

Alternatively, Ms. Maxwell requests the Court to hold the Motion in abeyance until such time as the parties have actually met and conferred regarding the Motion's contents.

Dated: March 7, 2016.

Respectfully submitted,

/s/ Laura A. Menninger
Laura A. Menninger (LM-1374)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:   303.831.7364
Fax:      303.832.2628
lmenninger@hmflaw.com

*Attorney for Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on March 7, 2016, I electronically served this *DEFENDANT'S MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS SUBJECT TO IMPROPER CLAIM OF PRIVILEGE* via ECF on the following:

Sigrid S. McCawley
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com

/s/ Brenda Rodriguez
Brenda Rodriguez