Virginia L. Giuffre,

       Plaintiff,                 Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

       Defendant.
_____/

**PLAINTIFF, VIRGINIA GIUFFRE'S REPLY IN RESPONSE
TO DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW
IN RESPONSE TO PLAINTIFF'S MOTION TO COMPEL THE
<u>PRODUCTION OF DOCUMENTS SUBJECT TO IMPROPER OBJECTIONS</u>**

BOIES, SCHILLER & FLEXNER LLP

David Boies
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Sigrid McCawley (Pro Hac Vice)
Boies, Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

Ellen Brockman
Boies, Schiller & Flexner LLP
575 Lexington Ave
New York, New York 10022
(212) 446-2300

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

I. PRELIMINARY STATEMENT .................................................................................1

II. ARGUMENT ..............................................................................................................2

    A. Ms. Giuffre's Relevant Period Is Appropriate ...............................................2

        1. Defendant is Taking a Disingenuous Position Regarding Her Objections to Plaintiff's Time Period ...............................................2

        2. Ms. Giuffre's Post-2002 Discovery Requests Are Narrowly Tailored To Seek Specific, Relevant Evidence Of Defendant's Continued Involvement In Jeffrey Epstein's Underage Sex Trafficking ..........................................................................3

    B. Defendant's Objections Are Improper. ..........................................................5

    C. Defendant's Specific Objections Are Inappropriate ......................................6

        1. Request No. 1, Request No. 10, and Request No. 11 ..........................6

        2. Request No. 3. .....................................................................................7

        3. Request No. 6. .....................................................................................8

        4. Request No. 37. ...................................................................................8

        5. Request No. 7 and Request No. 15. .....................................................9

        6. Request No. 17. .................................................................................10

        7. Request No. 8, Request No. 33, and Request No. 39. ......................10

CONCLUSION ...............................................................................................................10

## TABLE OF AUTHORITIES

Page

**Cases**

*Anwar v. Fairfield Greenwich Ltd.*,
   982 F. Supp. 2d 260 (S.D.N.Y. 2013) ...................................................................................1

*Civil Aeronautics Bd. of Civil Aeronautics Auth. v. Canadian Colonial Airways*,
   41 F. Supp. 1006 (S.D.N.Y. 1940) .........................................................................................4

*In re A2P SMS Antitrust Litig.*,
   972 F. Supp. 2d 465 (S.D.N.Y. 2013) ...................................................................................1

*In re 650 Fifth Ave.*,
   No. 08 CIV. 10934 KBF, 2013 WL 1870090 (S.D.N.Y. Apr. 24, 2013)...................................6

Plaintiff Virginia L. Giuffre, respectfully submits this Reply in Response to Defendant's Supplemental Response to Plaintiff's Motion to Compel the Production of Documents Subject to Improper Objections [D.E. 45]. For the reasons set forth below, this Court should grant Ms. Giuffre's Motion to Compel in its entirety.

I.  PRELIMINARY STATEMENT[1]

After sitting on Ms. Giuffre's First Request for Production for *four months*, Defendant only produced *two documents*. Defendant acknowledges that she has other responsive documents, but she is withholding them from production.[2]

Flight logs demonstrate the incredibly close relationship between Defendant and convicted pedophile Jeffrey Epstein during the time they were abusing Ms. Giuffre and, then, other minors: Defendant flew on Jeffrey Epstein's private plane no less than *360 times*, and *over 20 times* with Ms. Giuffre when Ms. Giuffre was a minor child.[3] Message pads from Law Enforcement's trash pull of Jeffrey Epstein's Palm Beach mansion show Maxwell in regular contact with him, including Defendant arranging for Epstein to meet with *underage girls*. This evidence alone rebuts Defendant's specious objections that seeking documents relating to Defendant's trafficking of other underage girls is merely a "fishing expedition." Indeed, *over thirty underage girls* were recruited for Epstein's sex abuse, most of which were recruited after

---

[1] Ms. Giuffre views Defendant's "Supplemental Responses" (D.E. 45 and 46) as impermissible sur-replies. Defendant already filed a Response, and her "supplemental" responses were filed *after* Ms. Giuffre filed her Reply to Defendant's Response. *See In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 500 (S.D.N.Y. 2013) (striking sur-reply because it does not respond to "new issues which are material to the disposition of the question before the [C]ourt,"); *Anwar v. Fairfield Greenwich Ltd.*, 982 F. Supp. 2d 260, 263 (S.D.N.Y. 2013) ("the Court notes that Plaintiffs' letter is a sur-reply filed without permission of the Court and does not identify new controlling law, and therefore will not be considered."). To the extent that this Court has not yet made a *sua sponte* ruling to strike them from the docket to date, Ms. Giuffre hereby files her reply briefs within the time allotted under the Local Rules.

[2] She is also adamantly refusing to sit for her deposition. Most recently, Defendant is attempting to hold hostage Ms. Giuffre's effort to take Defendant's deposition by refusing to agree on a basic privilege log production parameters unless Ms. Giuffre agrees to cancel the most critical deposition in this case – that of the Defendant.

[3] These numbers are based only upon the partial and incomplete flight logs available to Ms. Giuffre at this time.

1

Ms. Giuffre escaped.[4] Therefore, discovery requests concerning Defendant's continued trafficking of minors, and continued contact with her co-conspirators (including payments from Epstein), are relevant and discoverable.

## II. ARGUMENT

### A. Ms. Giuffre's Relevant Period Is Appropriate

1. Defendant is Taking a Disingenuous Position Regarding Her Objections to Plaintiff's Time Period

Defendant argues that, "[g]iven the nature of her claim, the time period chosen by the Plaintiff [17 years] is grossly overbroad." (*See* D.E. 45 at 3.)[5]. However, Defendant's own document requests belie this contention. Defendant requested documents from ***an even greater period of time***, and many requests have ***no date restrictions*** ("NDR") whatsoever:

**Defendant's Requests:**

| Request | Years | Request | Years | Request | Years | Request | Years |
|---|---|---|---|---|---|---|---|
| No. 1 | 18 | No. 11 | N/A | No. 21 | 5 | No. 31 | NDR |
| No. 2 | 18 | No. 12 | 18 | No. 22 | 16 | No. 32 | NDR |
| No. 3 | NDR | No. 13 | 4 | No. 23 | 16 | No. 33 | NDR |
| No. 4 | NDR | No. 14 | 18 | No. 24 | 14 | No. 34 | NDR |
| No. 5 | 18 | No. 15 | 18 | No. 25 | NDR | No. 35 | 18 |
| No. 6 | NDR | No. 16 | 6 | No. 26 | NDR | No. 36 | NDR |
| No. 7 | 4 | No. 17 | 18 | No. 27 | NDR | No. 37 | NDR |
| No. 8 | 4 | No. 18 | 16 | No. 28 | NDR | | |
| No. | 18 | No. 19 | NDR | No. 29 | NDR | | |
| No. 10 | N/A | No. 20 | NDR | No. 30 | NDR | | |

For example, Defendant's Request No. 26 seeking "All Documents concerning any prescription drugs taken by You," has no date restrictions. Defendant, therefore, must believe that every prescription drug Ms. Giuffre has taken - from infancy - will likely be helpful to prove

---

[4] *See* Declaration of Sigrid McCawley ("McCawley Decl.") at Exhibit 1, Palm Beach Police Report.

[5] Defendant disregarded Ms. Giuffre's requested date range of 1999 to the present and unilaterally limited her production to the years 1999 – 2002 and for one month from December 31, 2014 to January 31, 2015.

2

or disprove the claim in this case.[6] Defendant cannot hold the position that documents relevant to the claim in this case arise solely from a self-serving fraction of the requested date range if collected from her, while concomitantly holding the position that documents from an even larger date rage are relevant when collecting from Ms. Giuffre. With her briefing in one hand, and her requests for production in the other, Defendant is engaging in double-speak. Accordingly, this Court cannot take Defendant's argument regarding the Relevant Period at face value, and should reject it.

        2.    <u>Ms. Giuffre's Post-2002 Discovery Requests Are Narrowly Tailored To Seek Specific, Relevant Evidence Of Defendant's Continued Involvement In Jeffrey Epstein's Underage Sex Trafficking</u>

As articulated in Ms. Giuffre's moving brief and her consolidated reply (D.E. 35, and 43), Ms. Giuffre has shown the relevance of her narrowly-tailored requests seeking certain documents from the period of time after Ms. Giuffre escaped Defendant's abuse. To recount, Defendant continued to recruit underage girls for sex with convicted sex offender Jeffrey Epstein after Ms. Giuffre escaped.[7] This fact is established by documentary evidence, sworn testimony, and other statements by third parties. Indeed, flight logs show Defendant traveling on the convicted sex offender's plane up to at least 2005; and police reports in the Palm Beach investigation reveal the abuse occurred into the mid-2000s.[8] In addition, message pads from law enforcement trash pulls from Jeffrey Epstein's home show that Defendant arranged to have underage girls come over for "training."[9]

---

[6] Despite issuing multiple requests like the one quoted above, Defendant's "Supplemental Response" brief complains of a "fishing expedition" by Ms. Giuffre seven times.

[7] Indeed, **over thirty underage girls** were recruited for Epstein's sex abuse. *See* McCawley Decl. at Exhibit 1.

[8] *See* McCawley Decl. at Exhibit 2, Flight Logs from Jeffrey Epstein's private plane and Exhibit 1, Palm Beach Police Report.

[9] *See* McCawley Decl. at Exhibit 3, Message Pads from Law Enforcement trash pulls of Jeffrey Epstein's Palm Beach home.

3

Documents showing Defendant recruiting underage girls from that time period are relevant because they help establish Ms. Giuffre's contention that Defendant recruited her while she was underage. Again, ***over thirty underage girls*** were recruited for Epstein's sex abuse in Florida alone, most of which were recruited after Ms. Giuffre escaped.[10] Such documents would show a pattern and practice of Defendant's behavior and also show Defendant's role within Jeffrey Epstein's criminal enterprise. That Ms. Giuffre was in Australia while Defendant continued her illegal activities does not lessen the weight of that evidence.[11] To the contrary, the fact that Defendant and Jeffrey Epstein recruited other girls for abuse gives more weight to Ms. Giuffre's allegations.

Furthermore, for the period after Epstein was indicted for sex crimes against children, documents showing Defendant's continued communications with Epstein and his associates, documents showing receipt of payments from Epstein, and documents showing her attempts to cover up her wrongful sexual abuse of minors are relevant.

There are already materials implicating Defendant's post-2008 involvement with Epstein and the related cover-up. For example, Defendant dodged a deposition in 2009 to avoid answering questions about the abuse of Ms. Giuffre and others.[12] Additionally, since 2005, when the investigation started, to the present, Defendant has been engaged in a joint defense agreement with Jeffrey Epstein.[13] And, Defendant has continued to communicate with convicted sex offender Jeffrey Epstein, at least, through 2015, when she made her defamatory statement.[14]

---

[10] *See* McCawley Decl. at Exhibit 1.

[11] "If it be that defendant has violated the provisions of law, and continues so to do, there is no good reason why the plaintiff may not produce evidence of defendant's continuing wrongful conduct." *Civil Aeronautics Bd. of Civil Aeronautics Auth. v. Canadian Colonial Airways*, 41 F. Supp. 1006, 1008 (S.D.N.Y. 1940).

[12] *See* McCawley Decl. at Exhibit 4, Notice of Deposition of Ghislaine Maxwell, Subpoena and Cancellation Payment Notice, and January 13, 2015 Daily Mail Article.

[13] *See* McCawley Decl. at Exhibit 5, January 12, 2016 Deposition Transcript of Alan Dershowitz at 527; *see also* March 7, 2016 Affidavit of Ghislaine Maxwell, attached at Exhibit E to D.E.47-5.

[14] This is evidenced by Defendant's privilege log, McCawley Decl. at Exhibit 6.

4

Documents evidencing these acts and occurrences after Epstein's indictment show her continued involvement in the conspiracy.

Defendant states that "this lawsuit presents one relatively simple question: is Plaintiff's claim that she was sexually abused by Jeffrey Epstein between 1999 and 2002 'with the assistance and participation of' Ms. Maxwell true?" (D.E. 45 at 1). She cannot claim that evidence of her involvement in Jeffrey Epstein's abuse of other girls, after 2002, does not tend to prove the allegations that Defendant was involved in the abuse of Ms. Giuffre.[15] In short, evidence of Defendant trafficking other girls, and evidence of Defendant covering up the abuse after the fact, is relevant to proving that she was involved in the abuse and trafficking of Ms. Giuffre. Defendant has admitted she has responsive documents for this period. Therefore, this Court should direct that she produce them.

### B. Defendant's Objections Are Improper

Defendant's argument against Ms. Giuffre's use of the phrase "all documents" or "relating to" is disingenuous because she uses those phrases in her requests to Ms. Giuffre. Defendant argues that the terms, "all documents" and "relate," are too broad to be employed in Requests for Production, thus making all of Ms. Giuffre's requests "fatally flawed." At the same time she makes this argument, Defendant has propounded 37 requests for production on Ms. Giuffre. Twenty-five of them seek "all documents" or "any documents." Twenty of them seek documents "relat[ing] to" or "reflecting" various topics. Only 8 of her 37 requests are free of these "obtuse" terms that she claims are "fatal defect[s]." Presumably, Defendant is neither conceding that the majority of her Requests for Production are "fatally flawed," nor is she

---

[15] Accordingly, Defendant's objections to Request Nos. 21, 22, 23, 24, and 27 are improper.

5

withdrawing the 29 of them. Accordingly, Ms. Giuffre respectfully requests the Court reject this argument.[16]

### C. Defendant's Specific Objections Are Inappropriate

1. **Request No. 1**: All documents relating to communications with Jeffrey Epstein from 1999-Present.
   **Request No. 10**: All documents relating to payments made from Jeffrey Epstein or any related entity to you from 1999-present, including payments for work performed, gifts, real estate purchases, living expenses, and payments to your charitable endeavors including the TerraMar Project.
   **Request No. 11**: All documents relating to or describing any work you performed with Jeffrey Epstein, or any affiliated entity from 1999-Present.

Jeffrey Epstein's message pads, pulled from trash by law enforcement, show that Defendant arranged for a minor child to come over to Jeffrey Epstein's house for "training".[17] The Palm Beach Police Department collected these incriminating message pads from Epstein's home. A member of Jeffrey Epstein's household staff, Juan Alessi, testified under oath that Defendant lived with Epstein, and ran his household.[18] These are just some examples of evidence showing that Defendant was employed by convicted sex offender Jeffrey Epstein to traffic minor children for him.

Despite this evidence, Defendant claims that discovery requests seeking evidence of work she performed for Epstein, the payments she received from Epstein,[19] and the communications she had with and about Epstein, constitutes a "fishing expedition." (D.E. 45 at 6.) These requests are not merely "reasonably calculated" to lead to the discovery of admissible evidence,

---

[16] In discovery disputes, "[w]hat is good for the goose is good for the gander." *In re 650 Fifth Ave.*, No. 08 CIV. 10934 KBF, 2013 WL 1870090, at *3 (S.D.N.Y. Apr. 24, 2013) (requiring that the government produce a privilege log in order to persist in its allegations that the defendants' privilege logs are inadequate).

[17] *See* McCawley Decl. at Exhibit 3, Message Pads from Jeffrey Epstein's house.

[18] *See* McCawley Decl. at Exhibit 7, Deposition Transcript of Juan Alessi.

[19] Indeed, substantial payments received from Epstein at key times during the Government investigation can show if he paid her in exchange for her silence. Evidence of Epstein (or Epstein's attorney, *see* McCawley Decl. at Exhibit 8, February 2, 2015 Page Six Article) paying for her New York home (recently listed at $19M), and evidence of Epstein's continued payments throughout the Relevant Period, are also indicative of Maxwell's ongoing involvement with Epstein.

but they zero-in on exactly the type of admissible evidence that would directly support Ms. Giuffre's claim of being sexually abused.

Defendant argues she should not have to produce communications related to Jeffrey Epstein and "rice pudding." Ms. Giuffre disagrees. Communications revealing Defendant's frequent and constant contact with Epstein, particularly regarding the minutia of his life, shows the depth of her access to, and involvement with, Epstein. Indeed, frequent communications showing how Defendant was the intimate caretaker of Epstein's private life - from rice pudding recipes to his predilection for underage girls - reveal her role as a participant in the trafficking and, importantly, thoroughly refute any affirmative defense she might make that she was unaware of the abuse.

> 2. **Request No. 3**: All Documents Relating To Communications With Andrew Albert Christian Edward, Duke Of York (A.K.A Prince Andrew) From 1999-Present.

Ms. Giuffre has alleged that Defendant trafficked Ms. Giuffre to Andrew while she was a minor child. Ms. Giuffre has a photograph of Andrew's arm around her bare waist in the presence of Defendant, in Defendant's London apartment, while Ms. Giuffre was under age. Defendant has never answered the question: what was this child doing in her London townhouse with them? Another witness has supplied some of the details on Ms. Giuffre's trafficking to Andrew. Johanna Sjoberg reported that "Virginia, another girl there, sat on a chair and had the puppet on her lap. Andrew sat on another chair, I sat on his lap and he put his hand on my breast. Ghislaine puppet's hand on Virginia's breast, then Andrew put his hand on mine . . .".[20] Accordingly, communications with Andrew are relevant, and they would likely show Defendant's arrangements to traffic Ms. Giuffre to him, and possibly the trafficking of other girls to him.

---

[20] *See* McCawley Decl. at Exhibit 9, September 23, 2007 Red Ice Creations Article.

7

3. **Request No. 6**: All Documents Relating To Communications With Any Of The Following Individuals From 1999 -The Present: Emmy Taylor, Sarah Kellen, Eva Dubin, Glen Dubin, Jean Luc Brunel, And Nadia Marcinkova

Both Sarah Kellen and Nadia Marcinkova asserted their Fifth Amendment privilege when asked under oath about Defendant's involvement in trafficking underage girls.[21] For example, co-conspirator Nadia Marcinkova testified:

> Q. Isn't it true that yourself, Ghislaine Maxwell and Sarah Kellen had access to a master of list of underage minor females names and phone numbers so they could be called for the purpose of coming to Jeffrey Epstein's house to be sexually molested? . . .
> A. Fifth.. . .
> Q. And also typical of Ghislaine Maxwell and Jeffrey Epstein to prostitute or pimp out underage minors to friends? . . .
> A. Fifth.[22]

Co-conspirator Jean Luc Brunel left a note for Epstein on a message pad saying he had a *sixteen-year-old girl* who could "teach Russian" to Epstein for "free."[23] Finally, Emmy Taylor, is photographed with Maxwell and Jeffrey Epstein on a trip to Europe with Ms. Giuffre when she was a minor, and the Dubins are on flight logs with Defendant and Epstein.[24] Therefore, the communications with these individuals are relevant, and show the sexual trafficking.

4. **Request No. 37**: All Documents Reflecting Communications You Have Had With Bill Or Hillary Clinton (Or Persons Acting On Their Behalf), Including All Communications

Defendant has a history of avoiding deposition in relation to sex abuse claims. In 2009, Maxwell's deposition was sought in connection with various sexual abuse allegations. Maxwell avoided her deposition, claiming her mother was ill, so she would be traveling outside the country with no plans of returning. Despite this claim to avoid her deposition, she was

---

[21] Contrary to Defendant's claims, Sarah Kellen did not assert her Fifth Amendment rights in response to every question in her deposition. *See* McCawley Decl. at Exhibit 11, March 24, 2010 Deposition Transcript of Sarah Kellen.

[22] See McCawley Decl. at Exhibit 10, April 13, 2010 Deposition Transcript of Nadia Marcinkova at 34 and 48.

[23] *See* McCawley Decl. at Exhibit 10, April 13, 2010 Deposition Transcript of Nadia Marcinkova.

[24] *See* McCawley Decl. at Exhibit 12, Picture taken by Ms. Giuffre of Defendant Maxwell, Jeffrey Epstein, and Emmy Taylor while she is in Europe. *See also* McCawley Decl. at Exhibit 2, Flight logs.

photographed shortly thereafter in the United States at Chelsea Clinton's wedding in Rhinebeck, New York.[25] Most recently, when Ms. Giuffre attempted to meet and confer on the procedure for the production of her privilege log, Defendant refused to reach any agreement relating to the procedural issue unless Ms. Giuffre would *cancel* the Defendant's deposition.

Further, other communications Defendant has had with the Clintons about Ms. Giuffre or the allegations in this case are also highly relevant, particularly given that former President Clinton travelled with Defendant, Jeffrey Epstein and others on Jeffrey Epstein's plane a number of times, including a trip to Thailand. Maxwell admits that she has documents responsive to this request, and this Court should require her to produce them.

> 5. **Request No. 7**: All Video Tapes, Audio Tapes, Photographs Or Other Print Or Electronic Media Relating To Females Under The Age Of 18 From The Period Of 1999-Present.
> **Request No. 15**: All video tapes, audio tapes, photographs or any other print or electronic media taken at a time when you were in Jeffrey Epstein's company or inside any of his residences or aircraft.

Regarding Request No. 7, Alfredo Rodriguez, Epstein's former house manager, testified that Defendant kept naked pictures of girls on her computer.[26] As explained in her moving brief, Ms. Giuffre is not seeking mainstream, legally available depictions of minors. She is seeking the photos described by Mr. Rodriguez and any other (non-family) under-age girls, including Ms. Giuffre, photographed or otherwise recorded by Defendant. Regarding Request No. 15, media depicting individuals in Epstein's company or inside his residences or aircraft are relevant to Ms. Giuffre's claims that she was trafficked to others.

---

[25] *See* McCawley Decl. at Exhibit 4, Maxwell Deposition Notice; Subpoena and Cancellation Payment Notice, and January 13, 2015 Daily Mail Article with photograph.

[26] *See* McCawley Decl. at Exhibit 13, Deposition Transcripts of Alfredo Rodriguez.

6. **Request No. 17**: All Documents Relating To Communications With You And Ross Gow From 2005 – Present.

Defendant's defamatory statements to the press were issued by Ross Gow, and it is the genesis of this action. Accordingly, requests seeking Defendant's communications with Gow are reasonably calculated to lead to admissible evidence. Additionally, Ms. Giuffre only seeks documents from Ross Gow from 2005 - present, because Defendant had not been publically implicated in an underage sex trafficking ring prior to 2005. Therefore, any other communications with Mr. Gow prior to that time are irrelevant.

7. **Request No. 8**: All Documents Relating To Your Travel From The Period Of 1999- Present, Including But Not Limited To, Any Travel On Jeffrey Epstein's Planes, Commercial Flights, Helicopters, Passport Records, Records Indicating Passengers Traveling With You, Hotel Records, And Credit Card Receipts.
**Request No. 33**: All Travel Records Between 1999 And The Present Reflecting Your Presence In: (A) Palm Beach Florida Or Immediately Surrounding Areas; (B) 9 E. 71st Street, New York , NY 10021; (C) New Mexico; (D) U.S. Virgin Islands; (E) Any Jet Or Aircraft Owned Or Controlled By Jeffrey Epstein.
**Request No. 39**: All documents reflecting training to fly a helicopter or experience flying a helicopter, including any records concerning your operation of a helicopter in the U.S. Virgin Islands.

These requests seek information about Defendant's sexually trafficking of minors, including documents relating to her flying girls to be with Epstein.[27] Related to the trafficking, Epstein's Caribbean property is only reachable via helicopter or boat, and Defendant's records of transporting underage girls or other individuals to that property are relevant to Ms. Giuffre's claims of Defendant's sexually trafficking her.

## **CONCLUSION**

Plaintiff respectfully requests that the Court grant her Motion to Compel.

---

[27] Ms. Giuffre is in possession of some of Epstein's private aircraft flight logs, but they are incomplete.

Dated: March 14, 2016

                              Respectfully Submitted,

                              BOIES, SCHILLER & FLEXNER LLP

                   By: /s/ Sigrid McCawley
                         Sigrid McCawley (Pro Hac Vice)
                         Boies, Schiller & Flexner LLP
                         401 E. Las Olas Blvd., Suite 1200
                         Ft. Lauderdale, FL 33301
                         (954) 356-0011

                         David Boies
                         Boies, Schiller & Flexner LLP
                         333 Main Street
                         Armonk, NY 10504

                         Ellen Brockman
                         Boies, Schiller & Flexner LLP
                         575 Lexington Ave
                         New York, New York 10022
                         (212) 446-2300

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 14, 2016, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on the individuals identified below via transmission of Notices of Electronic Filing generated by CM/ECF.

    Laura A. Menninger, Esq.
    HADDON, MORGAN & FOREMAN, P.C.
    150 East 10th Avenue
    Denver, Colorado 80203
    Tel: (303) 831-7364
    Fax: (303) 832-2628
    Email: lmenninger@hmflaw.com

                                                       /s/ Sigrid S. McCawley
                                                          Sigrid S. McCawley