# EXHIBIT 11
# PART 2

Page 97

1    MR. RHEINHART:  Same instruction.
2        THE WITNESS:  On the instruction of my
3    lawyer, I must invoke my Fifth Amendment
4    privilege.
5    BY MR. KUVIN:
6        Q.  Have you ever worked as a professional
7    model?
8        MR. RHEINHART:  May I consult?
9        MR. KUVIN:  Sure.
10       MR. RHEINHART:  You can answer the
11   question.
12       THE WITNESS:  Yes.
13   BY MR. KUVIN:
14       Q.  When?
15       A.  I don't remember.  I don't remember the dates.
16   It was at least maybe ten years ago.
17       Q.  And you're how old now?
18       MR. RHEINHART:  I'll instruct the witness
19   not to answer the question.  Nice try.
20           Instruct you not to answer based on
21       your Fifth Amendment privilege.
22       THE WITNESS:  On the instruction of my
23   lawyer, I'm going to invoke my Fifth Amendment
24   privilege.
25       MR. KUVIN:  I'm just trying to find out.

Page 98

1        MR. RHEINHART:  Like I said, good try.
2    Move on.
3    BY MR. KUVIN:
4        Q.  With respect to your work as a
5    professional model, what company did you work for?
6        MR. RHEINHART:  Instruct the witness not
7    to answer based on the Fifth Amendment
8    privilege.
9        THE WITNESS:  On the instruction of my
10   lawyer, I invoke my Fifth Amendment privilege.
11   BY MR. KUVIN:
12       Q.  What is your understanding of
13   Mr. Epstein's involvement with the modeling
14   industry?
15       MR. RHEINHART:  Standing objection, and
16   instruct the witness not to answer based on
17   Fifth Amendment, on that basis.
18       THE WITNESS:  Upon the instruction of my
19   lawyer, I must invoke my Fifth Amendment
20   privilege.
21   BY MR. KUVIN:
22       Q.  Were you ever promised anything regarding
23   your modeling career by Jean-Luc Brunel?
24       MR. RHEINHART:  Instruct the witness not
25   to answer based on Fifth Amendment, also

Page 99

1    assumes facts that have not been established
2    and it's compound.
3        THE WITNESS:  On the instruction of my
4    lawyer, I must invoke my Fifth Amendment
5    privilege.
6        MR. RHEINHART:  And to clarify the
7    objection is that it assumes that she's ever
8    met or knows anything about Jean-Luc Brunel.
9    BY MR. KUVIN:
10       Q.  Were you ever promised anything regarding
11   your modeling career by Jeffrey Epstein?
12       MR. RHEINHART:  Same objection, instruct
13   the witness not to answer.
14       THE WITNESS:  On the instruction of my
15   lawyer, I must invoke my Fifth Amendment
16   privilege.
17   BY MR. KUVIN:
18       Q.  You would agree with me that there is a
19   financial arrangement between Jean-Luc Brunel and
20   Jeffrey Epstein, do you not?
21       MR. RHEINHART:  Objection.  It assumes she
22   has any knowledge of either Mr. Epstein or
23   Mr. Brunel, and as to that she is going to
24   invoke her Fifth Amendment privilege.  The
25   question is compound and therefore ambiguous.

Page 100

1        THE WITNESS:  On the instruction of my
2    lawyer, I must invoke my Fifth Amendment
3    privilege.
4    BY MR. KUVIN:
5        Q.  Would you agree with me that
6    Ghislaine Maxwell provides underage girls to
7    Mr. Epstein for sex?
8        MR. RHEINHART:  Objection to the form.  It
9    assumes she knows anything at all about
10   Ghislaine Maxwell and asks her to assume that
11   she does, and therefore it is compound and
12   ambiguous, and I would instruct her not to
13   answer.
14       THE WITNESS:  Upon the instruction of my
15   lawyer, I must invoke my Fifth Amendment
16   privilege.
17       MR. KUVIN:  That's a good point.  Take a
18   look at what we'll mark as Exhibit 10.
19       (Plaintiff's Exhibit No. 10 was marked for
20   identification.)
21       MR. KUVIN:  All me to show it to the
22   camera first.
23       MR. RHEINHART:  Okay.
24       MR. KUVIN:  Okay.
25       THE WITNESS:  Okay.

Page 101

1  BY MR. KUVIN:
2      Q.  Take a look at what we marked as Exhibit
3  10.  Do you recognize the two people in that
4  photograph?
5      MR. RHEINHART:  I'll instruct the witness
6  not to answer based on her Fifth Amendment
7  privilege.
8      THE WITNESS:  On the instruction of my
9  lawyer, I must invoke my Fifth Amendment
10  privilege.
11  BY MR. KUVIN:
12      Q.  Would you agree with me that's
13  Ghislaine Maxwell on the right and Jeffrey Epstein
14  on the left?
15      MR. RHEINHART:  Objection to the form.  It
16  assumes that she knows who Ghislaine Maxwell
17  and Jeffrey Epstein are, and therefore it's
18  compound and ambiguous, and I would instruct
19  her not to answer.
20      THE WITNESS:  On the instruction of my
21  lawyer, I must invoke my Fifth Amendment
22  privilege.
23      MR. KUVIN:  Okay.  I will mark this as
24  Exhibit 11.
25

Page 102

1      (Plaintiff's Exhibit No. 11 was marked for
2  identification.)
3  BY MR. KUVIN:
4      Q.  Let me show you what we marked as
5  Exhibit 11.  Hang on one second.
6      MR. RHEINHART:  Sure.
7  BY MR. KUVIN:
8      Q.  Do you recognize the young lady shown in
9  Exhibit 11?
10      MR. RHEINHART:  I'll instruct the witness
11  not to answer based on her Fifth Amendment
12  privilege.
13      THE WITNESS:  On the instruction of my
14  lawyer, I must invoke my Fifth Amendment
15  privilege.
16  BY MR. KUVIN:
17      Q.  Do you agree with me that the young girl
18  shown in Exhibit 11 was recruited by Ghislaine
19  Maxwell to, for sexual activity with
20  Jeffrey Epstein?
21      MR. RHEINHART:  Objection to the form.  It
22  assumes she knows who the person is in Exhibit
23  11, and assumes she knows who Ghislaine Maxwell
24  is, and assumes she knows who Jeffrey Epstein
25  is, and is therefore compound.

Page 103

1      You're asking the witness three
2  questions at the same time, and I would
3  instruct her not to answer based on the
4  Fifth Amendment.
5      THE WITNESS:  On the instruction of my
6  lawyer, I must invoke my Fifth Amendment
7  privilege.
8      MR. KUVIN:  Just so we're clear, had she
9  answered the first two questions, then
10  obviously I wouldn't have to ask the third one
11  that has all of them in it but --
12      MR. RHEINHART:  If you had accepted her
13  answer, you would have known that she wasn't
14  going to answer these, and we could have saved
15  a few minutes.
16      MR. KUVIN:  And as you well know, I must
17  ask the question in order to gain the inference
18  at trial.
19      MR. RHEINHART:  I understand.
20      MR. KUVIN:  All right.
21      (Plaintiff's Exhibit No. 12 was marked for
22  identification.)
23  BY MR. KUVIN:
24      Q.  Do you recognize the gentleman that is
25  shown --

Page 104

1      MR. RHEINHART:  We'll have a job here.
2      MR. KUVIN:  That is true.
3  BY MR. KUVIN:
4      Q.  -- that is shown in Exhibit 12?
5      MR. KUVIN:  Let me hold this for the
6  camera first.
7      MR. RHEINHART:  I'm sorry.  Is there a
8  question pending?
9      MR. KUVIN:  Yes.
10  BY MR. KUVIN:
11      Q.  Do you recognize the gentleman shown in
12  Exhibit 12?
13      MR. RHEINHART:  I instruct her not to
14  answer based on the Fifth Amendment.
15      THE WITNESS:  On the instruction of my
16  lawyer, I must invoke my Fifth Amendment
17  privilege.
18  BY MR. KUVIN:
19      Q.  Would you agree with me that that is
20  Prince Andrew shown in Exhibit 12?
21      MR. RHEINHART:  Same instruction.
22      THE WITNESS:  On the instruction of my
23  lawyer, I must invoke my Fifth Amendment
24  privilege.
25

Page 105

BY MR. KUVIN:

Q.   Would you agree with me that you have been present where Jeffrey Epstein and Prince Andrew have had sexual relations with underage girls?

MR. RHEINHART:  Objection to the form, it's compound in that it assumes she knows who the person is in Picture 12, she knows who Prince Andrew is, and she knows who Jeffrey Epstein is.  It's compound and ambiguous, and I'll instruct her not to answer based on her Fifth Amendment.

THE WITNESS:  On the instruction of my lawyer, I must invoke my Fifth Amendment privilege.

BY MR. KUVIN:

Q.   Would you agree with me that Prince Andrew and Jeffrey Epstein used to share underaged girls for sexual relations?

MR. RHEINHART:  Same objection previously stated, requires her to also speculate who Prince Andrew is.  I instruct her not to answer based on the Fifth Amendment.

THE WITNESS:  On the instruction of my lawyer, I must invoke my Fifth Amendment privilege.

Page 106

MR. RHEINHART:  Also requires speculation as to who Jeffrey Epstein is as well.

BY MR. KUVIN:

Q.   Do you know who Prince Andrew is?

MR. RHEINHART:  I'll instruct her not to answer based on the Fifth Amendment.

THE WITNESS:  On the instruction of my lawyer, I must invoke my Fifth Amendment privilege.

MR. KUVIN:  It's almost 12:00.  Do you want to take a quick lunch?

MR. RHEINHART:  Sure.  How much longer do you think you will be, Mr. Kuvin, before we go on to other counsel?

MR. KUVIN:  Probably not that much longer.

MR. RHEINHART:  Okay.

MR. KUVIN:  I have to get through a couple of more generic stuff, and then get into the specifics of my cases and then --

MR. RHEINHART:  Okay.  So, we, but just so we have a sense of planning whether this is the right time for a lunch break.  You're not going to finish in the next 15 or 20 minutes?

MR. KUVIN:  No, not even close.

MR. RHEINHART:  Okay.  Let's take a lunch

Page 107

break now.

MR. KUVIN:  Okay.

THE VIDEOGRAPHER:  We're now off video record.  The time is 11:57 a.m.

(A luncheon recess was held.)

(Plaintiff's Exhibit No's 4 was marked for identification.)

(Plaintiff's Exhibit No. 5 was marked for identification.)

THE VIDEOGRAPHER:  We're now on video record.  The time is 1:02 p.m.

MR. KUVIN:  All right, counsel.  I'm going to ask a couple more general questions, and then when we get into the specifics of the individual girls, I just want to make sure, once again, on the record, as we've done in every deposition in this case, that we'll use the Plaintiff's full name with the understanding that the final transcript will only contain their initials, and there will be a key at the conclusion that's only provided to the parties in this case and their counsel to be kept confidential going forward.  But obviously, for the purposes of this deposition, we will be using full names.

Page 108

MR. RHEINHART:  Agreed.

MR. KUVIN:  Okay.  Is there any disagreement with that around the table?

MR. HOROWITZ:  Agreed.

MR. WEISSING:  Agreed.

MS. EZELL:  Agreed.

MR. KUVIN:  Jack, do you agree to the --

MR. GOLDBERGER:  I thought I'm not a part of it.

MR. KUVIN:  Well, you've been playing a part, so I want to make sure you agree.

MR. GOLDBERGER:  Yeah, I agree.  I agree.

MR. RHEINHART:  Hold on.  Let me just explain to her what we're talking about.

MR. KUVIN:  Please do.

MR. RHEINHART:  But when the transcript is typed up, it won't have her name it will just have initials.  But we'll get a code that explains the name.  So that way you would be asked if you recognize the name not a set of initials that you may not understand or a Jane Doe number that you do not know.

MR. KUVIN:  That's way too confusing. Okay?

MR. RHEINHART:  Correct.

Page 109

BY MR. KUVIN:

Q. Let's take a look at what I've marked -- premarked as Exhibit 4. It's a stack of documents, just so you understand what this is and your attorney can object or agree or disagree as he sees fit, but this is a stack of documents that was part of the trash pull from Jeffrey Epstein's home as part of the criminal investigation. Just so you're aware of what these are.

MR. RHEINHART: That was retrieved, that was retrieved by the Palm Beach Police Department from the trash --

MR. KUVIN: That's correct.

MR. RHEINHART: -- at the home of what is known to be Mr. Epstein's home?

MR. KUVIN: Correct.

MR. RHEINHART: Okay.

MR. KUVIN: All right. And that's not a question. I just wanted to kind of give you a context for what I'm going to be asking you about.

MR. RHEINHART: Thank you.

BY MR. KUVIN:

Q. All right. In taking a look at Exhibit 4, I'd like you to take a look at the front page, the

Page 110

first page of those documents.

Is that your handwriting, ma'am?

MR. RHEINHART: Instruct the witness not to answer based on the Fifth Amendment privilege.

THE WITNESS: At the instruction of my lawyer, I must exercise my Fifth Amendment right.

BY MR. KUVIN:

Q. And, in fact, that is your handwriting on this notepad, is it not?

MR. RHEINHART: Same instruction. It's the same question.

THE WITNESS: On the instruction of my lawyer, I must invoke my Fifth Amendment right.

BY MR. KUVIN:

Q. In this note do you agree that you arranged for an extension of one month on the rental car for a young lady under the age of 16?

MR. RHEINHART: Objection to the form. It is compound. It assumes that this is her handwriting. It doesn't identify who the young lady might be, and it's otherwise ambiguous, so I instruct her not to answer on the Fifth Amendment privilege in addition to the legal

Page 111

objection to the form.

THE WITNESS: At the instruction of my lawyer, I must invoke my Fifth Amendment privilege.

BY MR. KUVIN:

Q. Yes. Do you know Alex Hall?

MR. RHEINHART: Instruct the witness not to answer the question based on her Fifth Amendment privilege.

THE WITNESS: On the instruction of my lawyer, I must exercise my Fifth Amendment privilege.

BY MR. KUVIN:

Q. Will you agree with me that on the first page of Exhibit 4, you were to arrange for roses to be delivered to Jane Doe No. 103 at her high school performance?

MR. RHEINHART: Objection to the form. It's compound in that it assumes this is the witness's handwriting and assumes the witness knows a person by the name of Jane Doe No. 103 and the witness otherwise knows Jeffrey Epstein whose name is at the bottom of the paper, and therefore, it's compound and ambiguous, and instruct her not to answer.

Page 112

THE WITNESS: On the instruction of my lawyer, I must exercise my Fifth Amendment right.

MR. KUVIN: I forgot to mention this at the beginning, but objection to form usually covers all that stuff like vague and compound, and --

MR. RHEINHART: Okay.

MR. KUVIN: -- I'll leave it up to you, but objection to form as far as the civil arena context will cover all of those.

MR. RHEINHART: Just figured I'd make the record clear in case we ever have an issue, or in case you want to correct it based on what I believe to be the improper form, I will give you a chance to correct it.

BY MR. KUVIN:

Q. No problem. All right. On Page 2 of Exhibit 4, if you'd take a look at that. Is that your handwriting?

MR. RHEINHART: Instruct the witness not to answer based on the Fifth Amendment privilege.

THE WITNESS: On the instruction of my lawyer, I choose to exercise my Fifth Amendment

Page 113

1    right.
2    BY MR. KUVIN:
3       Q.  Do you know who Larry is, as referred to
4    in Page 2 of Exhibit 4?
5          MR. RHEINHART:  I'm sorry.  Can you --
6    BY MR. KUVIN:
7       Q.  Do you know who --
8          MR. RHEINHART:  -- restate the question?
9    BY MR. KUVIN:
10      Q.  Do you know who Larry is as referred to in
11   Page 2 of Exhibit 4?
12         MR. RHEINHART:  So, just so I'm clear,
13      what the question is, the document on its face
14      has the name Larry in it.  You're just asking
15      this witness whether she knows who this person
16      Larry is?
17         MR. KUVIN:  Correct.
18         MR. RHEINHART:  Instruct the witness not
19      to answer based on her Fifth Amendment
20      privilege.
21         THE WITNESS:  On the instruction of my
22      lawyer, I must invoke my Fifth Amendment right.
23   BY MR. KUVIN:
24      Q.  Do you know why Larry was recommending
25   that Mr. Epstein leave?

Page 114

1          MR. RHEINHART:  Objection to the form and
2    instruct the witness not to answer based upon
3    her Fifth Amendment privilege.
4          THE WITNESS:  On the instruction of my
5    lawyer, I must invoke my Fifth Amendment right.
6    BY MR. KUVIN:
7       Q.  Would you agree with me that Larry was
8    calling to warn Mr. Epstein to leave town because he
9    was going to be arrested?
10         MR. RHEINHART:  Objection to the form.
11      The question assumes facts that are not before
12      her, and it requires her to speculate, and also
13      implies that she knows anything at all about
14      Jeffrey Epstein, so I will instruct her not to
15      answer.
16         THE WITNESS:  On the instruction of my
17      lawyer, I wish to exercise my Fifth Amendment
18      right.
19   BY MR. KUVIN:
20      Q.  Take a look at Page 3 of Exhibit 4,
21   please.  Is that your handwriting?
22         MR. RHEINHART:  I'll instruct her not to
23      answer based on the Fifth Amendment privilege.
24         MR. KUVIN:  Before we do that, would you
25      consult with her?

Page 115

1          MR. RHEINHART:  Okay.  I would be happy
2    to.
3          MR. KUVIN:  I just want to clarify,
4    because I don't think --
5          MR. RHEINHART:  Okay.
6          MR. KUVIN:  I don't think this is a
7    problem, but I just want to clear it up.
8          MR. RHEINHART:  Thank you, Mr. Kuvin.
9    I'll let her answer that question.
10         MR. KUVIN:  Not a problem.
11         MR. RHEINHART:  So the question pending
12      is, is that your handwriting?
13         MR. KUVIN:  Correct.
14   BY MR. KUVIN:
15      Q.  Is this your handwriting?  Just yes or no.
16      A.  No.
17      Q.  Okay.  Thank you.  All right.  Let's look
18   at Page 4 of Exhibit 4.  All right.  This one's a
19   little different.  Is this your handwriting?
20         MR. RHEINHART:  Let me consult with her
21      again.
22            Okay.  That's fine.  You can answer
23         the question consistent with the
24         conversation we just had.
25         THE WITNESS:  No.

Page 116

1    BY MR. KUVIN:
2       Q.  Do you know who Danielle is as referred to
3    in this note of Page 4 of Exhibit 4?
4          MR. RHEINHART:  Instruct the witness not
5    to answer based on her Fifth Amendment
6    privilege.
7          THE WITNESS:  On the instruction of my
8    lawyer, I must exercise my Fifth Amendment
9    right.
10   BY MR. KUVIN:
11      Q.  All right.  Let's look at Page 5,
12   Exhibit 4.
13            Before we go to Page 5, rather, going
14      back to Page 4 for a minute.  Will you agree with me
15      that Danielle as referred to in Page 4 of Exhibit 4
16      is a girl that is under the age of 16?
17         MR. RHEINHART:  Object to the form.  You
18      previously asked if she knew who Danielle was,
19      and she invoked her Fifth Amendment privilege.
20      Since the new question presumes that she does
21      know who Danielle is she is going to invoke her
22      Fifth Amendment privilege upon my instruction.
23         MR. KUVIN:  All right.  Let's look at
24      Page 5.
25         MR. RHEINHART:  Let her answer.

Page 117

1   MR. KUVIN: I'm sorry, go ahead.
2   THE WITNESS: On the instruction of my
3   lawyer, I must invoke my Fifth Amendment
4   privilege.
5   BY MR. KUVIN:
6   Q. All right. Take a look at Page 5, if you
7   would. Have you ever ordered anything, anything
8   yourself from Amazon.com?
9   MR. RHEINHART: You're asking for herself
10  or anyone else if she has ever placed an order
11  with Amazon.com for any reason?
12  MR. KUVIN: I am asking whether she
13  personally has ever placed an order with a
14  company called Amazon.com.
15  MR. RHEINHART: Yes or no. You can answer
16  that.
17  THE WITNESS: Yes.
18  BY MR. KUVIN:
19  Q. Okay. So you would agree with me that you
20  know what Amazon.com is?
21  A. Yes.
22  Q. Okay. Now, have you ever placed an order
23  through Amazon.com for things to be delivered at
24  358 El Brillo Way?
25  MR. RHEINHART: Instruct the witness to

Page 118

1   invoke her Fifth Amendment privilege as to that
2   question.
3   THE WITNESS: On the instruction of my
4   lawyer, I must invoke my Fifth Amendment
5   privilege.
6   BY MR. KUVIN:
7   Q. Will you agree with me --
8   MR. RHEINHART: I'm sorry, Mr. Kuvin, for,
9   for the record, the page, pages of this exhibit
10  are not numbered, but the page we're looking at
11  purports to be a receipt for an order from
12  Amazon.com; is that correct?
13  MR. KUVIN: Correct. I just want her to
14  establish foundation before I got into
15  specifics.
16  MR. RHEINHART: No, but you referred to it
17  as Page 5, but they are not numbered, so I just
18  wanted to make sure that we're looking at the
19  same page on the exhibit.
20  MR. KUVIN: That is true. I'm just trying
21  to establish foundation for the questions I'm
22  about to ask her.
23  MR. RHEINHART: Understood.
24  BY MR. KUVIN:
25  Q. All right. Ma'am, would you agree with me

Page 119

1   that Page 5 of Exhibit 4 appears to be a receipt for
2   books ordered through Amazon.com?
3   MR. RHEINHART: You can answer that yes or
4   no.
5   THE WITNESS: It looks like a receipt from
6   Amazon.
7   BY MR. KUVIN:
8   Q. Okay. And did you place this order for
9   Jeffrey Epstein?
10  MR. RHEINHART: Instruct the witness not
11  to answer the question in that the question
12  presumes that she knows who Jeffrey Epstein is,
13  and therefore, I instruct her not to answer.
14  THE WITNESS: On advice of counsel, I must
15  invoke my Fifth Amendment privilege.
16  BY MR. KUVIN:
17  Q. Have you ever read the book identified in
18  Page 5 of Exhibit 4 called Slave Craft: Road Maps
19  for Erotic Servitude - Principals, Skills and Tools?
20  MR. RHEINHART: Instruct the witness not
21  to answer based on her Fifth Amendment
22  privilege.
23  THE WITNESS: On the instruction of my
24  lawyer, I must choose to invoke my Fifth
25  Amendment right.

Page 120

1   BY MR. KUVIN:
2   Q. Did you ever see that book I just
3   described at the home of Jeffrey Epstein on
4   358 El Brillo Way?
5   MR. RHEINHART: Objection to the form in
6   that it presumes she knows Jeffrey Epstein and
7   has ever been to 358 El Brillo Way. So, I
8   instruct her not to answer based on the Fifth
9   Amendment.
10  THE WITNESS: On the instruction of my
11  lawyer, I must choose to invoke my Fifth
12  Amendment right.
13  BY MR. KUVIN:
14  Q. Have you ever seen the book, Training With
15  Miss Abernathy: A Workbook for Erotic Slaves and
16  Their Owners, at the home of Jeffrey Epstein on
17  358 El Brillo Way?
18  MR. RHEINHART: Same objection and same
19  instruction as the previous question.
20  THE WITNESS: On the instruction of my
21  lawyer, I must choose to invoke my Fifth
22  Amendment right.
23  BY MR. KUVIN:
24  Q. Have you ever read that book that I just
25  described which is shown in Page 5 of Exhibit 4?

Page 121

1    MR. RHEINHART:  Same instruction.
2    THE WITNESS:  On the instruction of my
3  lawyer, I must choose to invoke my Fifth
4  Amendment right.
5  BY MR. KUVIN:
6    Q.  Let's look at the sixth page of Exhibit 4,
7  please.  Is that your handwriting?
8    A.  No.
9    Q.  All right.  Let's look at Page 7.  Is that
10  your handwriting?
11    A.  No.
12    Q.  Okay.  Look at the next page which would
13  be Page 8.  Is that your handwriting?
14    A.  No.
15    Q.  Let's see how much quicker this goes.
16  Let's look at Page 9.  Is that your handwriting?
17    A.  No.
18    Q.  Look at Page 9 again, if you would.
19    MR. RHEINHART:  When you say Page 9,
20  that's the page that purports to say 10:00.
21    MR. KUVIN:  Dr. Bard.
22    MR. RHEINHART:  -- Dr. Bard at the top?
23    MR. KUVIN:  Correct.
24    MR. RHEINHART:  Okay.
25

Page 122

1  BY MR. KUVIN:
2    Q.  Do you know who Dr. Bard is?
3    MR. RHEINHART:  Instruct the witness not
4  to answer based on the Fifth Amendment, because
5  this sheet of paper has Jeffrey Epstein's name
6  on the bottom, so the question implies that she
7  knows some connection between Dr. Bard and
8  Mr. Epstein.
9    MR. KUVIN:  Hang on a minute.  Based on
10  the objection, let me reword the question.
11  BY MR. KUVIN:
12    Q.  Independent from this note and independent
13  from anyone who may or may not be known as
14  Jeffrey Epstein, do you know anyone by the name of
15  Dr. Bard?
16    A.  I'm sorry.  Ask the question again.
17    Q.  Yes.  I don't want you to assume anything
18  from, the purpose of my question has anything to do
19  with someone who may be known as Jeffrey Epstein.
20    All I'm asking you is, generally, do
21  you know a person by the name of Dr. Bard?
22    MR. RHEINHART:  Let me consult.
23    MR. KUVIN:  Yes, yeah.
24    THE WITNESS:  At the advice of counsel, I
25  must invoke my Fifth Amendment right.

Page 123

1  BY MR. KUVIN:
2    Q.  This note, Page 9 of Exhibit 4, appears to
3  state that Sarah is trying to move -- and then
4  there's a blanked out name, for 11 then Brittany
5  could work at 6.  Do you know anyone with the name
6  Brittany?
7    MR. RHEINHART:  If she knows anyone in the
8  world by that name?
9    MR. KUVIN:  Yeah.  We could start with
10  that.
11    MR. RHEINHART:  I'm saying, in the
12  context, are you asking in the context of this
13  note which you just read, or are you asking,
14  generically, does she know anyone in the world
15  by the name of Brittany?
16    MR. KUVIN:  Why don't we first do it in
17  the context of this note.
18  BY MR. KUVIN:
19    Q.  Is this note referring to you when it
20  says, "Sarah"?
21    MR. RHEINHART:  Instruct the witness not
22  to answer based on her Fifth Amendment
23  privilege.
24    THE WITNESS:  On the advice of counsel, I
25  must invoke my Fifth Amendment right.

Page 124

1  BY MR. KUVIN:
2    Q.  In the context of this note, do you know
3  who Brittany is?
4    MR. RHEINHART:  Same instruction.
5    THE WITNESS:  On the advice of counsel, I
6  must invoke my Fifth Amendment right.
7  BY MR. KUVIN:
8    Q.  All right.  Let's look at Page 10.
9    MR. RHEINHART:  Mr. Kuvin, let me go back.
10    MR. KUVIN:  Sure.
11    MR. RHEINHART:  As to Page 1 of this
12  exhibit, I think you had asked the witness
13  whether this was her handwriting.
14    MR. KUVIN:  Do you want to have her go
15  back and answer?
16    MR. RHEINHART:  Yes, I would.  Having
17  consulted with her further, I will have her go
18  back to this question.
19    MR. KUVIN:  Let's do that.  I'll, I'll go
20  back and ask the question so that we can be
21  clear.
22  BY MR. KUVIN:
23    Q.  On the Exhibit 4, the first page of
24  Exhibit 4, ma'am, is that your handwriting?  Yes or
25  no.

Page 125

```
1        A. No.
2        Q. Okay. All right. Let's skip Page 10,
3    because I think that's just a duplicate, and go to
4    Page 11, if you would.
5        MR. RHEINHART: Page 11 is --
6        MR. KUVIN: It looks like DTG Operations,
7    d/b/a Dollar Rent a Car.
8        MR. RHEINHART: Got it. It's a printed
9    sheet, not a handwritten sheet.
10       MR. KUVIN: Correct.
11       MR. RHEINHART: Okay. Thank you.
12   BY MR. KUVIN:
13       Q. All right. Do you know a gentleman by the
14   name of Janusz Banasiak, spelled J-a-n-u-s-z,
15   B-a-n-a-s-i-a-k?
16       MR. RHEINHART: Instruct the witness not
17   to answer based on her Fifth Amendment
18   privilege.
19       THE WITNESS: On the instruction of, my
20   lawyer, I must invoke my Fifth Amendment
21   privilege.
22   BY MR. KUVIN:
23       Q. Ma'am, isn't it true that you rented cars
24   through Dollar Rent a Car for underage girls, girls
25   under the age of 18?
```

Page 126

```
1        MR. RHEINHART: Instruct the witness not
2    to answer based on the Fifth Amendment
3    privilege.
4        THE WITNESS: On the instruction of my
5    lawyer, I must invoke the Fifth Amendment
6    privilege.
7    BY MR. KUVIN:
8        Q. Did you rent any cars from Dollar Rent a
9    Car in West Palm Beach in the last five years?
10       MR. RHEINHART: Same instruction.
11       THE WITNESS: On the instruction of my
12   lawyer, I must invoke my Fifth Amendment
13   privilege.
14   BY MR. KUVIN:
15       Q. Let's take a look at Page 11.
16       MR. RHEINHART: If we can just -- let me
17   go back, Mr. Kuvin, to clarify the prior two
18   questions. When you say, "did you rent," did
19   you mean did she personally pay for the rental,
20   or was she, in any way, involved in arranging
21   the rental?
22       MR. KUVIN: The second part, in any way
23   involved in arranging for the rental of a
24   vehicle.
25       MR. RHEINHART: That's how I interpreted
```

Page 127

```
1    it in giving my advice, so thank you for
2    clarifying.
3        MR. KUVIN: Absolutely.
4    BY MR. KUVIN:
5        Q. All right. In Page 11 of Exhibit 4,
6    there's a reference in the top right-hand corner, a
7    message to a Mr. Goldsmith. Do you see that?
8        A. Uh-huh.
9        Q. Yes?
10       MR. RHEINHART: You have to say yes or no
11   on the record.
12       THE WITNESS: Yes, I see it.
13   BY MR. KUVIN:
14       Q. Okay. All right. Do you know who
15   Mr. Goldsmith is?
16       MR. RHEINHART: I instruct the witness
17   not to answer based on her privilege against
18   self-incrimination.
19       THE WITNESS: At the advice of counsel, I
20   must invoke my Fifth Amendment privilege.
21   BY MR. KUVIN:
22       Q. Is this your handwriting on exhibit -- on
23   the messages shown in Exhibit 4, Page 11?
24       MR. RHEINHART: Same instruction.
25       THE WITNESS: At the advice of counsel, I
```

Page 128

```
1    must invoke my Fifth Amendment privilege.
2        MR. RHEINHART: Hold on a second, Sarah.
3        MR. KUVIN: Yeah, check.
4        MR. RHEINHART: Okay. Can you repeat the
5    question again? Maybe I misheard it,
6    Mr. Kuvin.
7        MR. KUVIN: Yeah, not a problem. Let me
8    lay a little foundation for it.
9        MR. RHEINHART: That's okay. If you can
10   just ask the question again. I think I just
11   misheard what you were asking.
12   BY MR. KUVIN:
13       Q. Is this your handwriting shown on the
14   messages which is Page 11 of Exhibit 4?
15       A. No.
16       Q. Okay. Is this handwriting that of
17   Ms. Sjoberg?
18       MR. KUVIN: Johanna -- I'm sorry, Sjoberg,
19   Sjoberg? How do you pronounce it, Sjoberg?
20       MS. CADWELL: Sjoberg?
21       MR. KUVIN: I knew somebody would know.
22       MR. RHEINHART: Did we get a
23   pronunciation, I'm sorry?
24       MR. KUVIN: Yes.
25
```

Page 129

```
 1   BY MR. KUVIN:
 2      Q.  Is this the handwriting of
 3   Johanna Sjoberg, if you know?
 4          MR. RHEINHART:  Hold on.  Let me object to
 5      the form in that it presumes she knows what
 6      Ms. Sjoberg's handwriting is like or that she's
 7      ever known Ms. Sjoberg.  So before you ask the
 8      question, try to clarify that.
 9          MR. KUVIN:  Well, that's what I'm trying
10      to find out.
11   BY MR. KUVIN:
12      Q.  Do you recognize this as the handwriting
13   of Johanna Sjoberg?  And it can be a yes or no.
14          MR. RHEINHART:  My, my objection to the
15      form is that you, you haven't asked her whether
16      she actually knows who Johanna Sjoberg is, or
17      whether she would recognize her handwriting if
18      she saw it.
19          MR. KUVIN:  I would love to ask that
20      question if she'd answer it.
21          MR. RHEINHART:  Well, if she'll answer,
22      that's a different question.  But I think you
23      need to ask it first otherwise this question is
24      ambiguous.
25          MR. KUVIN:  All right.
```

Page 130

```
 1   BY MR. KUVIN:
 2      Q.  Not, not to beat a dead horse on the
 3   point, do you know Johanna Sjoberg?
 4          MR. RHEINHART:  I instruct the witness not
 5      to answer.
 6          THE WITNESS:  On advice of counsel, I must
 7      invoke my Fifth Amendment privilege.
 8   BY MR. KUVIN:
 9      Q.  Have you seen Johanna Sjoberg's
10   handwriting in the past?
11          MR. RHEINHART:  Objection to the form as
12      previously stated.  I'll instruct the witness
13      not to answer.
14          THE WITNESS:  On advice of counsel, I must
15      invoke my Fifth Amendment privilege.
16   BY MR. KUVIN:
17      Q.  Do you recognize Page 11 in Exhibit 4 as
18   the handwriting of Johanna Sjoberg?
19          MR. RHEINHART:  Objection to the form for
20      the reasons previously stated many, many times,
21      and I will instruct her not to answer.
22          THE WITNESS:  At the advice of counsel, I
23      must invoke my Fifth Amendment privilege.
24   BY MR. KUVIN:
25      Q.  Did you ever see these messages that
```

Page 131

```
 1   appear to be directed -- well, let me, let me back
 2   up.
 3          Page 11 of Exhibit 4 appears to be a
 4   message dated October 2nd, 2005, from Sarah.  Do you
 5   see that top left-hand corner?
 6      A.  Yes.
 7      Q.  Okay.  At 10:40 a.m.  My question is:  Did
 8   you call and leave a message at 10:40 a.m. on
 9   October 2, 2005, stating:  Julia's sick and she
10   can't come today?
11          MR. RHEINHART:  Instruct the witness not
12      to answer the question based on her Fifth
13      Amendment privilege.
14          THE WITNESS:  On the instruction of my
15      lawyer I must exercise my Fifth Amendment
16      privilege.
17   BY MR. KUVIN:
18      Q.  Upside down at the bottom of Page 11 is
19   another phone message dated 10/1 of 2005.  Appears
20   to be written to someone named Sarah.  Do you see
21   that?
22      A.  Yes.
23      Q.  Okay.  Do you --
24          MR. RHEINHART:  Is it written, I'm sorry,
25      is it written to someone named Sarah or it
```

Page 132

```
 1   appears to be a phone call from a person named
 2   Sarah?
 3          MR. KUVIN:  From a person named Sarah.
 4      Thank you.
 5   BY MR. KUVIN:
 6      Q.  Did you call someone, anyone on October 1
 7   of 2005 at 9:50 a.m., to confirm two people, one at
 8   11:00 and one at 4:00 p.m.?
 9          MR. RHEINHART:  Instruct the witness not
10      to answer based on her Fifth Amendment
11      privilege against self-incrimination since this
12      document was seized from Mr. Epstein's home.
13          THE WITNESS:  At the instruction of my
14      lawyer, I must invoke my Fifth Amendment
15      privilege.
16   BY MR. KUVIN:
17      Q.  Are you the Sarah that's referred to in
18   these phone messages that we've been looking at?
19          MR. RHEINHART:  Instruct the witness not
20      to answer.
21          THE WITNESS:  On the instruction of my
22      lawyer, I must invoke my Fifth Amendment
23      privilege.
24   BY MR. KUVIN:
25      Q.  Let's skip Page 12 and go to Page 13 of
```

Page 133

1   this same exhibit, if you would.  Okay.
2        Is that your handwriting on Page 13
3   which happens to be a note stating "Johanna S. is
4   coming"?
5        MR. RHEINHART:  Okay.  Hold on.  Can you
6   just show me what page you're looking at?
7   Okay.  We skipped a page.
8        THE WITNESS:  No.
9   BY MR. KUVIN:
10       Q.  Okay.  Do you recognize whose it is?
11       MR. RHEINHART:  Let me talk to you again.
12  BY MR. KUVIN:
13       Q.  If it's a yes, you might want to talk to
14  him; if it's a no, it might be quick.
15       A.  No, no.  Sorry.
16       Q.  Let's look at Page 14, same exhibit.  The
17  note on the right-hand side states, "The girl from
18  St. Bart's got sick so she won't be able to come.
19  Sarah got message from her."  First of all, just
20  generally, do you see the note I'm referring to?
21       A.  Yes.
22       Q.  Okay.  Do you know what that is talking
23  about?
24       A.  No.
25       Q.  Is that your handwriting?

Page 134

1        A.  No.
2        Q.  Did Mr. Epstein obtain girls under the age
3   of 16 from St. Bart's?
4        MR. RHEINHART:  Instruct the witness not
5   to answer.  Object to the form of the question
6   in that it presumes that she knows who
7   Mr. Epstein is.
8        THE WITNESS:  On advice of counsel, I must
9   invoke my Fifth Amendment privilege.
10  BY MR. KUVIN:
11       Q.  All right.  Let's take a look at the next
12  page.  Appears to be a note, phone message of -- I
13  can't read the date, 2005 to Jeffrey from
14  Melissa Hanes.  Just generally, do you see what I'm
15  talking about so we're on the same page here?
16       A.  Yes.
17       Q.  Okay.  Do you know who Melissa Hanes is?
18       A.  On the advice of counsel, I wish to invoke my
19  Fifth Amendment right.
20       Q.  All right.  The note appears to say:  She
21  called again, if she could work any time Monday
22  through Friday.
23       Do you know what that message
24  pertains to?
25       A.  On advice of counsel, I wish to invoke my

Page 135

1   Fifth Amendment right.
2   BY MR. RHEINHART:
3        Q.  Are you aware that Jeffrey Epstein would
4   refer to "work" as performing naked massages for
5   him?
6        MR. RHEINHART:  Object to the form of the
7   question.  It's compound and I instruct the
8   witness not to answer.
9        THE WITNESS:  On advice of counsel, I wish
10  to invoke my Fifth Amendment right.
11  BY MR. KUVIN:
12       Q.  Let's take a look at the next page, Page
13  16.  All right.  If we look at not the message, the
14  phone message, but the note next to that it says:
15  Haley on Saturday with Sage at 10:30.
16       Do you know who Haley is as referred
17  to in this note?
18       A.  On the advice of counsel, I must invoke my
19  Fifth Amendment right.
20       Q.  Do you know who Sage is as referred to in
21  this note?
22       A.  On the advice of counsel, I must invoke my
23  Fifth Amendment right.
24       MR. GARCIA:  I haven't heard the counsel
25  give any advice.

Page 136

1        MR. RHEINHART:  You don't know what we've
2   talked about outside of the room so...
3        MR. GARCIA:  Just changing the procedure
4   is all?
5        MR. RHEINHART:  I'm changing the procedure
6   for Mr. Kuvin.
7        MR. KUVIN:  I'm all happy for speed.
8   BY MR. KUVIN:
9        Q.  All right.  Let's look at Page 17 of
10  Exhibit 4.  It appears to be a phone message at the
11  bottom dated 9/1/05 to Jeffrey from Jean-Luc.  Let
12  me ask this:  Do you recognize the phone number
13  that's listed there of (646)286-7000?
14       MR. RHEINHART:  Instruct the witness not
15  to answer based on her Fifth Amendment
16  privilege and self-incrimination.
17       THE WITNESS:  On advice of counsel, I must
18  invoke my Fifth Amendment right.
19       MR. KUVIN:  Let me show this one to the
20  camera if I could.  If you could focus on the
21  bottom message for me.
22       THE VIDEOGRAPHER:  I can't really read
23  that.
24       MR. KUVIN:  Do I need to tilt it?
25       THE VIDEOGRAPHER:  I think you need to

Page 137

1    bring the whole paper up closer.
2         MR. KUVIN:  Towards you?
3         THE VIDEOGRAPHER:  Yes, towards the lens.
4         MR. KUVIN:  Just pass that up so we can
5    get a good shot of the bottom message.
6         THE VIDEOGRAPHER:  Up a little higher,
7    please.  Let it focus.  That's good.  Go out.
8    Okay.
9         MR. KUVIN:  All right.  Thank you very
10   much.
11   BY MR. KUVIN:
12        Q.  The message appears to read:  9/1/2005 to
13   Jeffrey, 8:08, Jean-Luc, telephone.  He has a
14   teacher for you to teach you how to speak Russian.
15   She is two times eight years old, not blonde.
16   Lessons are free and you can have first today if you
17   call.  Do you know what that message is referring
18   to?
19        MR. RHEINHART:  Instruct the witness not
20   to answer the question.  Object to the form of
21   the question because in that it presumes she
22   has knowledge of either Jeffrey or Jean-Luc or
23   that phone number.
24        THE WITNESS:  On the advice of counsel, I
25   wish to invoke my Fifth Amendment right.

Page 138

1    BY MR. KUVIN:
2         Q.  Would you agree with me that this message
3    is a message from Jean-Luc, that he's providing a
4    16-year-old girl to Jeffrey Epstein?
5         MR. RHEINHART:  Object to the form in that
6    it calls for speculation and also assumes facts
7    as to Mr. Jean-Luc and Mr. Epstein; therefore,
8    I instruct her to invoke her Fifth Amendment
9    privilege.
10        THE WITNESS:  On the instruction from my
11   lawyer, I must invoke my Fifth Amendment
12   privilege.
13   BY MR. KUVIN:
14        Q.  Skip the next page if you would, and the
15   following page will be Page 19 of Exhibit 4.  It
16   should be two messages.
17        MR. RHEINHART:  Show me what you're
18   looking at.
19        MR. KUVIN:  And the top left one says,
20   "Friday."
21        MR. RHEINHART:  Thank you.
22   BY MR. KUVIN:
23        Q.  The message on the left-hand side that
24   appears to be, have a date of 4/8/05 and a number 7
25   written on it.  It says:  Haley, 11:00 a.m.

Page 139

1         Do you -- first of all, do you see
2    that in front of you?  Are we talking about the same
3    thing here?
4         A.  Yes.
5         Q.  Okay.  Do you know who "Haley" is
6    referring to in this note?
7         MR. RHEINHART:  Instruct the witness not
8    to answer based on her Fifth Amendment
9    privilege.
10        THE WITNESS:  On the instruction of my
11   lawyer, I must invoke my Fifth Amendment
12   privilege.
13   BY MR. KUVIN:
14        Q.  Does your handwriting appear anywhere on
15   Page 19 here --
16        A.  On the --
17        Q.  -- on either note?
18        A.  On the advice of my lawyer, I must invoke my
19   Fifth Amendment privilege.
20        Q.  Is that your handwriting on the left in
21   the note that I just read that says:  Haley,
22   11:00 a.m.?
23        MR. RHEINHART:  Same instruction.
24        THE WITNESS:  On the instruction of my
25   lawyer, I must invoke my Fifth Amendment

Page 140

1    privilege.
2    BY MR. KUVIN:
3         Q.  All right.  Let's take a look at the next
4    page which is Page 20.  Is that your handwriting on
5    this paper?
6         MR. RHEINHART:  Let me talk to her.
7         THE WITNESS:  On the advice of my lawyer,
8    I wish to invoke my Fifth Amendment privilege.
9    BY MR. KUVIN:
10        Q.  Is this a list of girls that were being
11   provided to Jeffrey Epstein for sex?
12        MR. RHEINHART:  Objection to the form, the
13   standing objection previously stated.  I will
14   instruct the witness not to answer that
15   question.
16        THE WITNESS:  On the instruction of my
17   lawyer, I must invoke my Fifth Amendment
18   privilege.
19   BY MR. KUVIN:
20        Q.  Did Jeffrey Epstein not like girls that
21   had tattoos?
22        MR. RHEINHART:  Objection to the form
23   based on the standing objection and the same
24   instruction.
25        THE WITNESS:  On the instruction of my

Page 141

1    lawyer, I must invoke my Fifth Amendment
2    privilege.
3    BY MR. KUVIN:
4        Q.  Did Jeffrey Epstein not like girls that
5    had blonde hair?
6        MR. RHEINHART:  Standing objection and the
7    same instruction.
8        THE WITNESS:  On the instruction of my
9    lawyer, I must invoke my Fifth Amendment
10   privilege.
11   BY MR. KUVIN:
12       Q.  Take a look at the next page, if you
13   would.  This one.
14       MR. RHEINHART:  Thank you.
15   BY MR. KUVIN:
16       Q.  Is that your handwriting?
17       A.  On instruction of my lawyer, I must invoke my
18   Fifth Amendment privilege.
19       Q.  Is this an additional -- on Page 21, is
20   this an additional list of girls that were being
21   provided to Jeffrey Epstein for sex?
22       MR. RHEINHART:  I'm sorry.  Did we change
23   to a different page or the same page?
24       MR. KUVIN:  The same page.
25

Page 142

1    BY MR. KUVIN:
2        Q.  Is this an additional list of girls that
3    were --
4        MR. RHEINHART:  Thank you.
5    BY MR. KUVIN:
6        Q.  -- being provided to Jeffrey Epstein for
7    sex?
8        MR. RHEINHART:  Objection to the form.
9    The same objection and the same instruction.
10       THE WITNESS:  On the instruction of my
11   lawyer, I must invoke my Fifth Amendment
12   privilege.
13   BY MR. KUVIN:
14       Q.  Page 22.  Note on the right appears to
15   say:  Johanna has a friend, Andrea, that would like
16   to work tonight.  Do you know who Johanna is refer,
17   referring to in that note?
18       MR. RHEINHART:  Instruct the witness not
19   to answer based on the privilege against
20   self-incrimination.
21       THE WITNESS:  On the advice of my lawyer,
22   I wish to assert my Fifth Amendment right.
23   BY MR. KUVIN:
24       Q.  Do you know who Andrea is referring to in
25   that note?

Page 143

1        MR. RHEINHART:  Same instruction.
2        THE WITNESS:  On the advice of my lawyer,
3    I must choose to invoke my Fifth Amendment
4    right.
5    BY MR. KUVIN:
6        Q.  Do you know who E.W. is?
7        MR. RHEINHART:  Same instruction.
8        THE WITNESS:  On the advice of my lawyer,
9    I wish to invoke my Fifth Amendment privilege.
10   BY MR. KUVIN:
11       Q.  Do you know who L.M. is?
12       MR. RHEINHART:  Let me consult for a
13   second.
14       MR. KUVIN:  Yep.
15       (A discussion was held off the record.)
16       MR. RHEINHART:  Mr. Kuvin, I'm just asking
17   you to clarify.  Are you asking if she's ever
18   heard the name of these people or whether she's
19   actually ever met someone she knows to have
20   that name?
21       MR. KUVIN:  Second part, whether she knows
22   someone personally by that name.  I don't want
23   to know what somebody may have told her.
24       MR. RHEINHART:  Sure.
25       MR. KUVIN:  Certainly not attorneys or

Page 144

1    anything like that.  I want to know whether she
2    has any personal knowledge of someone by the
3    name of L.M.
4        MR. RHEINHART:  Okay.  Based on our
5    conversation, she can answer or not answer the
6    question.
7        THE WITNESS:  On the advice of my lawyer,
8    I choose to invoke my Fifth Amendment right.
9        MR. KUVIN:  Okay.  It's like a
10   cough/sneeze.
11       MR. GARCIA:  I tried to stifle it, but --
12       MR. GOLDBERGER:  You got it all over me.
13   Just kidding.
14       MR. GARCIA:  You don't want to get this.
15   I've had if for a couple of days.
16       MR. KUVIN:  What number are we on?  13.
17   That's why I always leave some with numbers
18   still on there to show the picture to the
19   camera.
20       Exhibit 13 will be pursuant to
21   confidentiality and the identities of the
22   girls involved in this case.
23       MR. RHEINHART:  As I presume the prior
24   questions were as well.
25       MR. KUVIN:  Yes.  Absolutely.  This is

Page 145

1  different because it's an exhibit.
2      MR. RHEINHART: Agreed.
3      MR. KUVIN: Okay.
4      (Plaintiff's Exhibit No. 13 was marked for
5  identification.)
6      MR. RHEINHART: We're moving off of
7  Exhibit 12?
8      MR. KUVIN: Yes.
9      MR. RHEINHART: I was looking at the next
10  exhibit.
11      MR. KUVIN: We're done with the trash.
12      MR. RHEINHART: Okay.
13  BY MR. KUVIN:
14      Q.  Just take a look at Exhibit 13. Do you
15  recognize the girl in that photograph?
16      A.  On the advice of my lawyer, I must choose to
17  exercise my Fifth Amendment privilege.
18      Q.  Do you agree with me that that girl shown
19  in that photograph is B.B.?
20      MR. RHEINHART: Objection to the form for
21  the reasons previously stated, causes her to
22  speculate, and I instruct her not to answer
23  based on her Fifth Amendment privilege.
24      THE WITNESS: On the advice of my lawyer,
25  I must choose to exercise my Fifth Amendment

Page 146

1  privilege.
2  BY MR. KUVIN:
3      Q.  Do you agree with me that you arranged to
4  have the girl shown in Exhibit 13 be brought to
5  Mr. Epstein's home for sex with Mr. Epstein?
6      MR. RHEINHART: Objection to the form as
7  compound, and also the standing objection, and
8  instruct the witness not to answer.
9      THE WITNESS: On the advice of my lawyer,
10  I must choose to exercise my Fifth Amendment
11  privilege.
12  BY MR. KUVIN:
13      Q.  Would you agree with me that the girl
14  shown in Exhibit 13 did, in fact, come to
15  Mr. Epstein's home in 2005?
16      MR. RHEINHART: Same objection previously
17  stated. It's compound as to the date, place,
18  person, and also presumes knowledge of
19  Mr. Epstein, so I would instruct her not to
20  answer.
21      THE WITNESS: On the advice of my lawyer,
22  I must choose to exercise my Fifth Amendment
23  privilege.
24  BY MR. KUVIN:
25      Q.  Do you agree with me that the girl shown

Page 147

1  in Exhibit 13 came to Mr. Epstein's home when she
2  was only 15 years old?
3      MR. RHEINHART: Objection to the form
4  based on the standing objection, also
5  speculation as to any age and instruct the
6  witness not to answer.
7      THE WITNESS: On the advice of my lawyer,
8  I must choose to exercise my Fifth Amendment
9  right.
10  BY MR. KUVIN:
11      Q.  Do you agree with me that when you
12  arranged to have this girl come to Mr. Epstein's
13  home, that you were aware that she was 15 years old?
14      MR. RHEINHART: Objection to the form. It
15  is compound. It assumes facts that are not
16  admitted by this witness, and it's ambiguous in
17  that regard, and therefore I instruct her not
18  to answer.
19      THE WITNESS: On the advice of my lawyer,
20  I must choose to exercise my Fifth Amendment
21  right.
22  BY MR. KUVIN:
23      Q.  Do you agree that when this girl was
24  brought to Mr. Epstein's home, that she performed a
25  massage on Mr. Epstein while he was naked?

Page 148

1      MR. RHEINHART: Objection to the form,
2  standing objection. The question assumes that
3  this witness has any knowledge of
4  Jeffrey Epstein or whether this person ever
5  came to Mr. Epstein's home. It is therefore
6  ambiguous, and I instruct her not to answer.
7      THE WITNESS: On the instruction of my
8  lawyer, I must choose to exercise my Fifth
9  Amendment right.
10  BY MR. KUVIN:
11      Q.  Do you agree with me that this girl shown
12  in Exhibit 13 was 15 years old at the time she was
13  asked by Jeffrey Epstein to remove her clothes?
14      MR. RHEINHART: Objection to the form. It
15  requires speculation and assumes facts relating
16  to Mr. Epstein and events that may have
17  occurred which this witness has no knowledge
18  and has not admitted any knowledge. And I
19  instruct her not to answer.
20      THE WITNESS: On advice of counsel I must
21  choose to exercise my Fifth Amendment right.
22  BY MR. KUVIN:
23      Q.  Do you agree that you described for the
24  girl as shown in Exhibit 13 -- by the way, her name
25  is B.B. -- that you described to B.B. how to set up

Page 149

1   the massage table in Jeffrey Epstein's bathroom?
2       MR. RHEINHART: Objection to the form for
3   the reasons previously stated, and instruct the
4   witness not to answer.
5       THE WITNESS: On the advice of counsel, I
6   must choose to exercise my Fifth Amendment
7   right.
8   BY MR. KUVIN:
9       Q.  Do you agree that you showed B.B. where
10  the massage oils are kept in Jeffrey Epstein's
11  bathroom in his home?
12      MR. RHEINHART: Objection to the form in
13  that it assumes knowledge of Jeffrey Epstein,
14  knowledge that this person was ever at
15  Jeffrey Epstein's home none of which is
16  admitted or acknowledged by this witness, and
17  instruct the witness not to answer.
18      THE WITNESS: On advice of counsel I must
19  choose to invoke my Fifth Amendment right.
20  BY MR. KUVIN:
21      Q.  Do you agree that you showed B.B., as
22  shown in Exhibit 13, where Mr. Epstein kept the
23  vibrators in his bathroom at his house?
24      MR. RHEINHART: Same objection as stated
25  to the previous question as to the form of the

Page 150

1   question, and instruct the witness not to
2   answer.
3       THE WITNESS: On advice of counsel, I must
4   choose to exercise my Fifth Amendment right.
5   BY MR. KUVIN:
6       Q.  Do you agree with me that in 2005 you
7   knowingly provided B.B., a 15-year-old girl, to
8   Mr. Epstein so that he could sexually abuse her?
9       MR. RHEINHART: Objection to the form as
10  to it calling for a legal conclusion as to
11  assuming multiple facts, since therefore
12  compound and instruct the witness not to
13  answer.
14      THE WITNESS: On advice of counsel, I must
15  choose to invoke my Fifth Amendment right.
16  BY MR. KUVIN:
17      Q.  Do you agree with me that B.B. was given
18  to Mr. Epstein to perform a naked massage of him
19  while he touched B.B.?
20      MR. RHEINHART: Objection to the form.
21  Standing objection and other facts that are
22  assumed in the question to which this witness
23  does not admit, and therefore the witness is
24  instructed not to answer the question.
25      THE WITNESS: On the instruction of my

Page 151

1   counsel, I must choose to invoke my Fifth
2   Amendment right.
3   BY MR. KUVIN:
4       Q.  Do you agree with me that during the
5   massage that B.B. was forced to give to Mr. Epstein,
6   that he touched her between her legs?
7       MR. RHEINHART: Objection to the form.  It
8   is ambiguous including the term "forced."  It
9   assumes facts that this witness has not
10  admitted or that this witness has not
11  acknowledged any personal knowledge and
12  instruct her not to answer.
13      THE WITNESS: On the instruction of my
14  lawyer, I must therefore invoke my Fifth
15  Amendment right.
16  BY MR. KUVIN:
17      Q.  Do you agree with me that Mr. Epstein
18  touched B.B. between her legs?
19      MR. RHEINHART: Objection to the form and
20  the question presumes knowledge of
21  Jeffrey Epstein.  Instruct the witness not to
22  answer.
23      THE WITNESS: On the instruction of my
24  lawyer, I must choose to invoke my Fifth
25  Amendment right.

Page 152

1   BY MR. KUVIN:
2       Q.  Do you agree with me that B.B. told
3   Mr. Epstein to stop touching him there -- touching
4   her there?
5       MR. RHEINHART: Same objection previously
6   stated to the last question and instruct the
7   witness not to answer.
8       THE WITNESS: On the instruction of my
9   lawyer, I must invoke my Fifth Amendment right.
10  BY MR. KUVIN:
11      Q.  Do you agree with me that you have
12  personal knowledge that after telling Mr. Epstein to
13  stop touching her between her legs, Mr. Epstein
14  apologized and then touched her again between her
15  legs?
16      MR. RHEINHART: Objection to the form and
17  the standing objection previously stated as
18  well as the question is compound and instruct,
19  and ambiguous, and I instruct the witness not
20  to answer.
21      THE WITNESS: On the instruction of my
22  lawyer, I must choose to exercise my Fifth
23  Amendment right.
24  BY MR. KUVIN:
25      Q.  Do you agree with me that Mr. Epstein

Page 153

1   specifically targeted young underage girls that were
2   economically disadvantaged for his own sexual
3   pleasure?
4          MR. RHEINHART:  Objection to the form.
5   Several of the terms are ambiguous and it
6   assumes knowledge of Mr. Epstein and his
7   habits, and therefore, I instruct the witness
8   not to answer the question.
9          THE WITNESS:  On the instruction of my
10  lawyer, I must choose to exercise my Fifth
11  Amendment right.
12  BY MR. KUVIN:
13     Q.  Do you agree with me that Mr. Epstein
14  would pay these girls 2 to $300 for this sexual
15  massage?
16         MR. RHEINHART:  Objection to the form.
17  Standing objection and assumes knowledge of
18  Mr. Epstein and his practices, so therefore, I
19  instruct the witness not to answer.
20         THE WITNESS:  On the instruction of my
21  lawyer, I must choose to invoke my Fifth
22  Amendment right.
23  BY MR. KUVIN:
24     Q.  Do you agree with me that you handed B.B.
25  $200?

Page 154

1          MR. RHEINHART:  Objection to the form,
2   instruct the witness not to answer.
3          THE WITNESS:  On the instruction of my
4   lawyer, I must choose to invoke my Fifth
5   Amendment right.
6   BY MR. KUVIN:
7      Q.  And just so we're clear, do you agree with
8   me that you handed B.B. in 2005, $200 after she was
9   in the bathroom with Mr. Epstein at his home?
10         MR. RHEINHART:  Objection to the form.
11  The question presumes knowledge of a person by
12  the name of B.B., therefore I instruct the
13  witness not to answer the question.
14         THE WITNESS:  On the instruction of my
15  lawyer, I must choose to invoke my Fifth
16  Amendment right.
17  BY MR. KUVIN:
18     Q.  Do you agree with me that Mr. Epstein had
19  a plan -- let me rephrase that.
20         Do you agree with me that Mr. Epstein
21  had an enterprise, a sexual enterprise, established
22  by which young girls would be brought to his home,
23  introduced to you, where you would then set up a
24  massage table, show them where the oils were, and
25  have these young girls under the age of 18, give

Page 155

1   Mr. Epstein naked massages?
2          MR. RHEINHART:  Object to the form.  It's
3   multiple layers of compound questioning,
4   includes terms like "enterprise" that are
5   ambiguous and may call for a legal conclusion
6   that this witness is not competent to give.  I
7   instruct the witness not to answer.
8          THE WITNESS:  On the instruction of my
9   lawyer, I must choose to exercise my Fifth
10  Amendment right.
11  BY MR. KUVIN:
12     Q.  Do you agree with me that there is a
13  staircase leading out of Mr. Epstein's kitchen in
14  his home on Palm Beach?
15         MR. RHEINHART:  Objection to the form,
16  presumes knowledge of Mr. Epstein or his home
17  on Palm Beach.  Instruct the witness not to
18  answer.
19         THE WITNESS:  On the instruction of my
20  lawyer, I must choose to invoke my Fifth
21  Amendment right.
22  BY MR. KUVIN:
23     Q.  Do you agree with me that when B.B. was
24  brought to Mr. Epstein's bathroom, that he walked
25  out of the shower wearing a towel?

Page 156

1          MR. RHEINHART:  Objection to the form in
2   that it presumes knowledge of B.B., that Ms.
3   B.B. was ever at Mr. Epstein's home, that this
4   witness knows anything about Mr. Epstein or his
5   home; therefore, the question is compound and
6   ambiguous, and I instruct her not to answer.
7          THE WITNESS:  On the instruction of my
8   lawyer, I must choose to assert my Fifth
9   Amendment right.
10  BY MR. KUVIN:
11     Q.  Do you know C.L.?
12     A.  On the instruction of my lawyer, I must choose
13  to assert my Fifth Amendment privilege.
14     Q.  Did you have C.L. -- excuse me, strike
15  that.  Did you tell C.L. to come over to
16  Mr. Epstein's home to give Mr. Epstein a massage?
17         MR. RHEINHART:  Objection to the form.
18  It's compound.  Stand objection, standing
19  objection, sorry.  Instruct the witness not to
20  answer.
21         THE WITNESS:  On the instruction of my
22  lawyer, I must choose to invoke my Fifth
23  Amendment right.
24  BY MR. KUVIN:
25     Q.  Did you introduce C.L. to Jeffrey Epstein?

39  (Pages 153 to 156)

Page 157

1    MR. RHEINHART: Objection to the form,
2  standing objection. Instruct the witness not
3  to answer.
4    THE WITNESS: On the instruction from my
5  lawyer, I must choose to invoke my Fifth
6  Amendment right.
7  BY MR. KUVIN:
8    Q. Do you agree with me that Mr. Epstein
9  threatened C.L. with physical violence?
10    MR. RHEINHART: Objection to the form, the
11  standing objection, as well as ambiguous as to
12  the term "threaten." Instruct the witness not
13  to answer.
14    THE WITNESS: Upon instruction from my
15  lawyer, I must choose to invoke my Fifth
16  Amendment right.
17  BY MR. KUVIN:
18    Q. Do you agree with me that Jeffrey Epstein
19  told C.L. that if she talks to anyone about what had
20  occurred at his home, bad things would happen to
21  her?
22    MR. RHEINHART: Objection to the form,
23  it's compound, and a standing objection. Also
24  assumes numerous other facts that this witness
25  has not acknowledge nor admitted, and therefore

Page 158

1  I instruct her not to answer.
2    THE WITNESS: On the instruction from my
3  lawyer, I must choose to invoke my Fifth
4  Amendment privilege.
5  BY MR. KUVIN:
6    Q. Would you agree with me that in 2005 that
7  Jeffrey Epstein was between the ages of 45 and 55
8  years old?
9    MR. RHEINHART: Objection to the form.
10  Standing objection as to any knowledge of
11  Jeffrey Epstein. Instruct the witness not to
12  answer.
13    THE WITNESS: The instruction of my
14  lawyer, I must choose to assert my Fifth
15  Amendment right.
16  BY MR. KUVIN:
17    Q. Would you agree with me that
18  Jeffrey Epstein has tremendous wealth?
19    MR. RHEINHART: Objection to the form as
20  stated in the previous question, and instruct
21  the witness not to answer.
22    THE WITNESS: On the instruction from the
23  lawyer, I must choose to invoke my Fifth
24  Amendment right.
25

Page 159

1  BY MR. KUVIN:
2    Q. Would you agree with see that you visited
3  a man by the name of Jeffrey Epstein while he was in
4  jail in Palm Beach County?
5    MR. RHEINHART: Objection to the form,
6  standing objection. Assumes other facts that
7  this witness has not acknowledged, and instruct
8  her not to answer.
9    THE WITNESS: Upon instruction from the
10  lawyer, I must choose to invoke my Fifth
11  Amendment right.
12  BY MR. KUVIN:
13    Q. Do you agree that you arranged to have
14  C.L. come to Jeffrey Epstein's home for a nude
15  massage?
16    MR. RHEINHART: Objection to the form,
17  standing objection previously stated.
18    THE WITNESS: On the instruction of my
19  lawyer, I must choose to invoke my Fifth
20  Amendment right.
21  BY MR. KUVIN:
22    Q. Do you agree that C.L. has been to
23  358 El Brillo Way on at least two occasions?
24    MR. RHEINHART: Objection to the form. It
25  assumes knowledge of C.L. and of 358 El Brillo

Page 160

1  Way, to which the witness has not acknowledged,
2  and instruct the witness not to answer.
3    THE WITNESS: On the instruction of my
4  lawyer, I must choose to invoke my Fifth
5  Amendment right.
6  BY MR. KUVIN:
7    Q. Do you agree that Mr. Epstein has an
8  odd-shaped penis?
9    MR. RHEINHART: Objection to the form of
10  the question. It assumes knowledge of
11  Mr. Epstein. It assumes knowledge of
12  Mr. Epstein's body parts, and instruct the
13  witness not to answer.
14    THE WITNESS: On advice -- on the
15  instruction of my lawyer, I must choose to
16  invoke my Fifth Amendment right.
17  BY MR. KUVIN:
18    Q. Have you seen Jeffrey Epstein's penis?
19    MR. RHEINHART: Objection to the form, and
20  we're getting awfully close to a line here, Mr.
21  Kuvin.
22    MR. KUVIN: I think the identity of
23  something that young 14 and 15-year-old girls
24  have seen is directly relevant to the issues in
25  this case. If they can describe it, then

1   obviously it's important because they are the
2   only ones that are answering questions in this
3   case.
4        MR. RHEINHART:  Well, people have rights.
5   People will assert their rights, and I am just
6   telling you, we're getting close to a line
7   here.
8        MR. KUVIN:  I think I'm being
9   respectful --
10        MR. RHEINHART:  You haven't crossed it yet
11   because I'm still here, but I'm just warning
12   you.
13            Instruct the witness not to answer
14        any question that presumes existence or
15        any knowledge of Jeffrey Epstein or any of
16        his body parts.
17        MR. KUVIN:  Okay.
18        THE WITNESS:  On the instruction of my
19   lawyer, I must choose to assert my Fifth
20   Amendment right.
21   BY MR. KUVIN:
22   Q.  Do you know whether or not Mr. Epstein has
23   any identifying characteristics to any of his
24   private genitalia?
25        MR. RHEINHART:  Objection to the form for

1   the reason previously stated, because it
2   presumes that she has any knowledge of who
3   Jeffrey Epstein is or what his body parts look
4   like, and I would instruct her not to answer.
5        THE WITNESS:  On the instruction of my
6   lawyer, I must choose to assert my Fifth
7   Amendment right.
8   BY MR. KUVIN:
9   Q.  Have you heard anyone other than your
10   lawyers that have described what any of
11   Mr. Epstein's body parts look like?
12        MR. RHEINHART:  Objection to the form.  It
13   is irrelevant what she's heard from other
14   people, and again, it presumes facts that she's
15   not acknowledged.  It is compound, and it is
16   harassing at this point.
17        THE WITNESS:  On instruction of my lawyer,
18   I must choose to invoke my Fifth Amendment
19   right.
20   BY MR. KUVIN:
21   Q.  Were you consulted with respect to the
22   non-prosecution agreement that was entered into with
23   the United States Attorney's Office for the Southern
24   District of Florida as it relates to this case?
25        MR. RHEINHART:  Which case?

1        MR. KUVIN:  The Epstein matter.
2        MR. RHEINHART:  I instruct the witness not
3   to answer.  Objection to the form as compound
4   and assumes the existence of Mr. Epstein which,
5   again, we are not acknowledging, and therefore
6   am instructing her not to answer.
7        THE WITNESS:  On the instruction of my
8   lawyer, I choose to assert my Fifth Amendment
9   right.
10   BY MR. KUVIN:
11   Q.  Are you aware that Mr. Epstein negotiated
12   for your immunity from prosecution in the
13   non-prosecution agreement that was entered into with
14   the United States Attorney's Office for the Southern
15   District of Florida?
16        MR. RHEINHART:  Again, objection to the
17        form for the reasons previously stated as to
18        the standing objection and instruct her not to
19        answer.
20        THE WITNESS:  On the instruction of my
21   lawyer, I must choose to invoke my Fifth
22   Amendment right.
23   BY MR. KUVIN:
24   Q.  Do you agree with me that B.B. was
25   emotionally traumatized as a result of the incidents

1   that occurred Jeffrey Epstein's home in 2005?
2        MR. RHEINHART:  Objection to the form.  It
3   assumes any knowledge of B.B. or any incidents
4   that would have occurred at a home purporting
5   to belong to a person by the name of Jeffrey
6   Epstein, and instruct her not to answer.
7        THE WITNESS:  Upon instruction from my
8   lawyer, I must choose to invoke my Fifth
9   Amendment right.
10   BY MR. KUVIN:
11   Q.  Do you agree with me that C.L. was
12   emotionally traumatized as a result of the incidents
13   that occurred at Jeffrey Epstein's home?
14        MR. RHEINHART:  Same objection as to the
15        previous question, and instruct the witness not
16        to answer.
17        THE WITNESS:  On the instruction of my
18   lawyer, I must choose to invoke my Fifth
19   Amendment privilege.
20   BY MR. KUVIN:
21   Q.  Do you know Jane Doe No. 102?
22        MR. RHEINHART:  Instruct the witness not
23   to answer based on Fifth Amendment privilege.
24        THE WITNESS:  On instruction of my lawyer,
25   I must choose to invoke my Fifth Amendment

Page 165

1    right.
2    BY MR. KUVIN:
3    Q.  Have you known Jeffrey Epstein to keep
4    underage, under the age of 18, sex slaves?
5    MR. RHEINHART:  Objection to the form both
6    as to ambiguity as to what you mean by "sex
7    slaves," and "keep," also the standing
8    objection as to any knowledge of Mr. Epstein
9    and instruct the witness not to answer.
10   THE WITNESS:  On the instruction of my
11   lawyer, I must choose to invoke my Fifth
12   Amendment right.
13   BY MR. KUVIN:
14   Q.  Where do most of the models come from that
15   are part of MC Squared Modeling Agency?
16   MR. RHEINHART:  Objection to the form.  It
17   assumes knowledge of an entity by the name of
18   MC Squared Modeling which the witness has not
19   acknowledged and therefore I instruct her not
20   to answer, and the question is compound.
21   THE WITNESS:  On the instruction of my
22   lawyer, I must choose to invoke my Fifth
23   Amendment privilege.
24   BY MR. KUVIN:
25   Q.  Who gets visas for the models at MC

Page 166

1    Squared, if you know?
2    MR. RHEINHART:  Same, same objection as to
3    the previous question, same instruction.
4    THE WITNESS:  On the instruction of my
5    lawyer, I must choose to invoke my Fifth
6    Amendment right.
7    BY MR. KUVIN:
8    Q.  Do you work with Jeffrey Epstein to get
9    visas for out-of-the-country models or models that
10   are -- strike that.
11   Do you work with Jeffrey Epstein to
12   get visas for girls that are underage and bring them
13   into the United States so that they can work as
14   models for MC Squared?
15   MR. RHEINHART:  Objection to the form and
16   assumes knowledge as to Mr. Epstein and as to
17   MC Squared and other matters that are not
18   admitted or acknowledged by this witness.  The
19   question is compound.  I would instruct her not
20   to answer.
21   THE WITNESS:  On the instruction from my
22   lawyer, I must choose to invoke my Fifth
23   Amendment right.
24   BY MR. KUVIN:
25   Q.  Do you know who owns 301 East 66th Street

Page 167

1    in New York?
2    MR. RHEINHART:  Instruct the witness not
3    to answer based on the Fifth Amendment
4    privilege.
5    THE WITNESS:  On the instruction of my
6    lawyer, I choose to invoke my Fifth Amendment
7    right.
8    BY MR. KUVIN:
9    Q.  Are you aware that various underage girls
10   brought in from out of the country live at 301 East
11   66th Street?
12   MR. RHEINHART:  Objection to the form.
13   It's compound, and instruct the witness not to
14   answer.
15   THE WITNESS:  On the instruction from my
16   lawyer, I must choose to invoke my Fifth
17   Amendment right.
18   BY MR. KUVIN:
19   Q.  You've stayed at that address before, have
20   you not?
21   MR. RHEINHART:  Instruct the witness not
22   to answer.
23   THE WITNESS:  On the instruction of my
24   lawyer, I must choose to invoke my Fifth
25   Amendment right.

Page 168

1    BY MR. KUVIN:
2    Q.  You've stayed there hundreds of times,
3    have you, hundreds of times have you not?
4    MR. RHEINHART:  Instruct the witness not
5    to answer.
6    THE WITNESS:  On instruction from my
7    lawyer, I must choose to invoke my Fifth
8    Amendment right.
9    BY MR. KUVIN:
10   Q.  Are you aware that Mr. Epstein obtains
11   visas for girls from out of the country to work as
12   models and then prostitutes them out?
13   MR. RHEINHART:  Objection to the form of
14   the question in that it is ambiguous and it
15   assumes numerous facts that have not
16   acknowledged that this witness has any
17   knowledge of, and the term "prostitutes them
18   out" is ambiguous, so I would instruct her not
19   to answer the question.
20   THE WITNESS:  On the instruction of my
21   lawyer, I must choose to invoke my Fifth
22   Amendment right.
23   BY MR. KUVIN:
24   Q.  You know what Radar Online is, do you not?
25   MR. RHEINHART:  Instruct the witness not

1    to answer the question based on her Fifth
2    Amendment privilege.
3         THE WITNESS:  On the instruction of my
4    lawyer, I must choose to invoke my Fifth
5    Amendment right.
6    BY MR. KUVIN:
7         Q.  In fact, you were around when
8    Jeffrey Epstein bought Radar Online, were you not?
9         MR. RHEINHART:  Objection to the form,
10   standing objection as to any knowledge of
11   Jeffrey Epstein or of Radar Online, and
12   instruct the witness not to answer.
13        THE WITNESS:  On the instruction from my
14   lawyer, I must choose to invoke my Fifth
15   Amendment right.
16   BY MR. KUVIN:
17        Q.  Are you aware that Jeffrey Epstein
18   accessed or obtained underage girls through his
19   Radar connection?
20        MR. RHEINHART:  Same objection as
21   previously stated to the last question and same
22   instruction.
23        THE WITNESS:  On the instruction from my
24   lawyer, I must choose to invoke my Fifth
25   Amendment privilege.

1    BY MR. KUVIN:
2         Q.  How many different properties does
3    Jeffrey Epstein own?
4         MR. RHEINHART:  Objection to the form,
5    standing objection.  Instruct the witness not
6    to answer.
7         THE WITNESS:  On the instruction of my
8    lawyer, I must choose to invoke my Fifth
9    Amendment right.
10   BY MR. KUVIN:
11        Q.  You've been to all of Jeffrey Epstein's
12   home, have you not?
13        MR. RHEINHART:  Same objection as
14   previously stated to the last question.  Same
15   instruction.
16        THE WITNESS:  On the instruction from my
17   lawyer, I must invoke my Fifth Amendment right.
18   BY MR. KUVIN:
19        Q.  You agree with me that Jeffrey Epstein
20   keeps a list of girls in the nearby areas around all
21   of his homes and properties?
22        MR. RHEINHART:  Objection to the form, for
23   the standing objection as well as ambiguous as
24   to "nearby," and "all of his properties," so I
25   instruct the witness not to answer.

1         THE WITNESS:  On the instruction from my
2    lawyer, I choose to invoke my Fifth Amendment
3    right.
4    BY MR. KUVIN:
5         Q.  Would you agree with me that Jeffrey
6    Epstein has a list of underage girls that live
7    within a close proximity to all of his different
8    homes in every different state?
9         MR. RHEINHART:  Objection to the form in
10   that it assumes Mr. Epstein has homes in every
11   single state and that she knows who Mr. Epstein
12   is, and therefore I instruct her not to answer.
13        THE WITNESS:  On advice of my lawyer, I
14   must choose to invoke my Fifth Amendment right.
15   BY MR. KUVIN:
16        Q.  You're aware Mr. Epstein has a home in New
17   York, right?
18        MR. RHEINHART:  Instruct the witness not
19   to answer, and standing objection of knowledge
20   of Mr. Epstein.
21        THE WITNESS:  On the instruction of my
22   lawyer, I must invoke my Fifth Amendment right.
23   BY MR. KUVIN:
24        Q.  Are you aware that he has a home in New
25   Mexico?

1         MR. RHEINHART:  By he, you mean
2    Mr. Epstein?
3         MR. KUVIN:  Yeah.
4         MR. RHEINHART:  Got to make sure the
5    question is clear.
6         MR. KUVIN:  Yes.
7         MR. RHEINHART:  Standing objection to the
8    form and instruct the witness not to answer.
9         THE WITNESS:  On the instruction from my
10   lawyer, I must choose to invoke my Fifth
11   Amendment privilege.
12   BY MR. KUVIN:
13        Q.  Are you aware he has a home in the U.S.
14   Virgin Islands?
15        MR. RHEINHART:  Same instruction, same
16   objection.
17        THE WITNESS:  On the instruction of my
18   lawyer, I must choose to invoke my Fifth
19   Amendment right.
20   BY MR. KUVIN:
21        Q.  And isn't it true that you kept a list of
22   underage girls that could service, in other words,
23   give Mr. Epstein naked massages in every place that
24   he has one of those homes I just described?
25        MR. RHEINHART:  Same objection as

Page 173

1  previously stated, the standing objection and
2  instruct her not to answer.
3      THE WITNESS:  On the instruction of my
4  lawyer, I must choose to invoke my Fifth
5  Amendment right.
6  BY MR. KUVIN:
7      Q.  Now, you're also aware, are you not, that
8  Jeffrey Epstein would pay other girls to bring
9  additional underage girls to him for naked massages,
10  are you not?
11      MR. RHEINHART:  Standing objection and
12  instruct the witness not to answer.
13      THE WITNESS:  On the instruction from my
14  lawyer, I must choose to invoke my Fifth
15  Amendment privilege.
16  BY MR. KUVIN:
17      Q.  And, in fact, you frequently would pay
18  other girls to bring additional girls under the age
19  of 18 to Mr. Epstein for naked massages?
20      MR. RHEINHART:  Objection to the form,
21  standing objection as to Mr. Epstein, also as
22  to any knowledge of any naked massages by
23  anybody to anybody.  Instruct the witness not
24  to answer.
25      THE WITNESS:  On the instruction of my

Page 174

1  lawyer, I choose to invoke my Fifth Amendment
2  right.
3  BY MR. KUVIN:
4      Q.  And there was a complete list of girls,
5  underage girls, that was stored on Mr. Epstein's
6  computer system; isn't that true?
7      MR. RHEINHART:  Objection to the form.
8  It's ambiguous as to what a complete list is,
9  and also a standing objection to any knowledge
10  of Mr. Epstein, and instruct the witness not to
11  answer.
12      THE WITNESS:  On the instruction from my
13  lawyer, I must choose to invoke my Fifth
14  Amendment privilege.
15  BY MR. KUVIN:
16      Q.  In fact, you've seen the list of underage
17  girls that exists on Mr. Epstein's computer, have
18  you not?
19      MR. RHEINHART:  Objection to the form,
20  standing objection.
21      THE WITNESS:  On the instruction from my
22  lawyer, I must choose to invoke my Fifth
23  Amendment right.
24  BY MR. KUVIN:
25      Q.  When underage minor females were brought

Page 175

1  to Mr. Epstein's house on Palm Beach, you were aware
2  that they were brought so that Mr. Epstein could
3  molest them, correct?
4      MR. RHEINHART:  Objection to the form as
5  to knowledge of Mr. Epstein, as to knowledge of
6  any home on Palm Beach, and ambiguous as to the
7  term "molest," and instruct the witness not to
8  answer.
9      THE WITNESS:  On the instruction from my
10  lawyer, I must choose to invoke my Fifth
11  Amendment right.
12  BY MR. KUVIN:
13      Q.  You're aware that Mr. Epstein raped
14  several underage minors in his bedroom?
15      MR. RHEINHART:  Objection to the form as
16  to knowledge of Mr. Epstein, and also ambiguous
17  as to the term "rape."
18      THE WITNESS:  On the instruction of my
19  lawyer, I must choose to invoke my Fifth
20  Amendment rights.
21  BY MR. KUVIN:
22      Q.  Do you know what the term "rape" means?
23      MR. RHEINHART:  Not as you used it.  If
24  you want to tell us what you mean by when you
25  used it, we'll be happy to answer --

Page 176

1      MR. KUVIN:  I want to know if --
2      MR. RHEINHART:  -- or evaluate your
3  question.
4      MR. KUVIN:  I want to know if she has her
5  own definition of what the phrase or word
6  "rape" means, so that we can use her definition
7  of that word.  I want to make sure it's
8  completely unambiguous.
9      MR. RHEINHART:  Your asking the question.
10  If you want to define the term, she'll respond
11  to your question.
12  BY MR. KUVIN:
13      Q.  Do you what the term or word "rape" means?
14      A.  Yes.
15      Q.  Okay.  What is your understanding of that
16  word?
17      MR. RHEINHART:  Now, we're not answering
18  that question.  It's your term.  It's your
19  question.  If you want to define it, you can go
20  ahead and define it.
21      MR. KUVIN:  Well, I beg --
22      MR. RHEINHART:  If you want to give her
23  specifics as to what she -- you can define it.
24      MR. KUVIN:  I beg to differ with you, and
25  I don't know that that's a proper objection.

Page 177

1    I'm asking her her understanding of the word.
2        MR. RHEINHART:  And I am instructing her
3    not to answer it because that question is not
4    likely to lead to discoverable evidence.  It's
5    simply meant to harass her.  And you can define
6    the term in your question.
7        MR. KUVIN:  Well, with all due respect,
8    it's certainly not to harass if there have been
9    girls that were alleging that they were raped.
10       MR. RHEINHART:  Well, you define what you
11   mean by when you say that they allege that they
12   have been raped, and she will be happy to
13   evaluate your question.
14       MR. KUVIN:  And that's what I'm trying to
15   understand.
16       MR. RHEINHART:  She's not going to
17   speculate on what you mean when you frame a
18   word in your question.
19       MR. KUVIN:  That's exactly what I'm trying
20   to do.  I'm trying to make sure that we are
21   using the same definition, so I would like to
22   use her definition of the word.
23       MR. RHEINHART:  Right.  She's not going to
24   answer it, so you can either move on we can
25   stop.

Page 178

1        MR. KUVIN:  Okay.  So you're instructing
2    her not to answer the question?
3        MR. RHEINHART:  I am instructing her not
4    to answer the question for the third time.
5        MR. KUVIN:  Okay.  I just want to be
6    clear.
7        MR. GARCIA:  What's the legal objection?
8        MR. RHEINHART:  I've already stated what
9    my legal objection is.  It's meant solely for
10   harassment.  It's not likely to lead to
11   discoverable evidence.
12   BY MR. KUVIN:
13       Q.  Okay.  For the purpose of my question, I
14   would like to, because your attorney won't allow you
15   to define the word "rape," I would like you to use
16   the word and understand the word "rape" to mean
17   sexual contact with an individual, including
18   sexual -- well, let me clarify here.  Hang on.  You
19   know what, if we're going to do it, let's do it
20   right since we can't use your definition.
21       MR. RHEINHART:  You can use whatever
22   definition you like, but you need to tell me
23   what it is.
24       MR. KUVIN:  Let's use the definition of
25   "rape" as defined by Florida law as oral, anal

Page 179

1    or vaginal penetration or union with the sexual
2    organ of another, or oral, anal or vaginal
3    penetration of another with any other object,
4    or with any object.  Excuse me.  All right?
5        MR. RHEINHART:  Okay.
6    BY MR. KUVIN:
7        Q.  Do you understand that definition as I
8    have explained it to you, or would you like me to
9    read it again?
10       A.  Read it again, please.
11       Q.  Absolutely.  Florida law defines "rape" as
12   oral, anal or vaginal penetration by, or union with
13   the sexual organ of another; or oral, anal or
14   vaginal penetration by another with any object.  And
15   obviously that is without the other's consent.
16       A.  You did not say that.
17       MR. RHEINHART:  Okay.
18   BY MR. KUVIN:
19       Q.  Adding without the other's consent,
20   obviously, to that definition.
21           Now, let's use that definition for
22   "rape," because that's as it's defined by Florida
23   law.  Using that definition, are you aware, as you
24   sit here today, that Jeffrey Epstein has raped
25   underage girls?

Page 180

1        MR. RHEINHART:  Standing objection to the
2    form of the question, and I would instruct the
3    witness not to answer.
4        THE WITNESS:  On the instruction of my
5    lawyer, I must choose to invoke my Fifth
6    Amendment right.
7    BY MR. KUVIN:
8        Q.  Are you aware as you sit here today that
9    Jeffrey Epstein raped B.B.?
10       MR. RHEINHART:  Objection to the form.
11   The question assumes that he did, or that she
12   has any knowledge of whether he did, so I
13   instruct the witness not to answer.
14       THE WITNESS:  On the instruction of my
15   lawyer, I must choose to invoke my Fifth
16   Amendment privilege.
17   BY MR. KUVIN:
18       Q.  Are you aware as you sit here today, that
19   Jeffrey Epstein -- well, let me rephrase that.
20           You are aware, are you not, as you
21   sit here today, that Jeffrey Epstein raped C.L.?
22       MR. RHEINHART:  Objection to the form as
23   leading, and also again assumes -- your
24   question assumes that she knows things that
25   she's not acknowledged that she knows or

Page 181

1    doesn't know, and I instruct her not to answer.
2         THE WITNESS:  On the instruction of my
3    lawyer, I must choose to invoke my Fifth
4    Amendment right.
5    BY MR. KUVIN:
6         Q.  Do you agree that Jeffrey Epstein has
7    raped hundreds of girls under the age of 18?
8         MR. RHEINHART:  Objection to the form,
9    standing objection as to any knowledge of
10   Jeffrey Epstein.  Instruct the witness not to
11   answer.
12        THE WITNESS:  On the instruction of my
13   lawyer, I must choose to invoke my Fifth
14   Amendment privilege.
15   BY MR. KUVIN:
16        Q.  You're aware, are you not, that
17   Jeffrey Epstein has raped hundreds of girls under
18   the age of 17?
19        MR. RHEINHART:  Objection to the form as
20   leading.  Instruct the witness not to answer
21   for the reasons previously stated to the last
22   the question.
23        THE WITNESS:  On the instruction of my
24   lawyer, I must choose to assert my Fifth
25   Amendment right.

Page 182

1    BY MR. KUVIN:
2         Q.  You're aware, as you sit here today, are
3    you not, that Jeffrey Epstein has raped hundreds of
4    girls under the age of 16?
5         MR. RHEINHART:  Objection to the form.
6    Standing objection.  It assumes numerous facts
7    mixed in a compound question, and therefore I
8    instruct the witness not to answer.
9         THE WITNESS:  On the instruction of my
10   lawyer, I must choose to assert my Fifth
11   Amendment right.
12   BY MR. KUVIN:
13        Q.  Isn't it true that Mr. Epstein had at
14   least one or two scheduled appointments for sex with
15   underage girls every day while he was here in Palm
16   Beach County in the year 2005?
17        MR. RHEINHART:  Objection to the form.
18   It's compound, standing objection as well, and
19   instruct the witness not to answer.
20        THE WITNESS:  On the instruction of my
21   lawyer, I must choose to invoke my Fifth
22   Amendment right.
23   BY MR. KUVIN:
24        Q.  Did you actually locate underage girls in
25   Palm Beach for Jeffrey Epstein to rape?

Page 183

1         MR. RHEINHART:  Same objection as
2    previously stated as to ambiguity and compound,
3    and instruct the witness not to answer.
4         THE WITNESS:  On the instruction of my
5    lawyer, I must choose to invoke my Fifth
6    Amendment right.
7    BY MR. KUVIN:
8         Q.  Have you ever had sexual contact in any
9    manner with any underage girls that were brought to
10   Mr. Epstein's home?
11        MR. RHEINHART:  Objection to the form.
12   Standing objection, compound, instruct the
13   witness not to answer.
14        THE WITNESS:  On the instruction of my
15   lawyer, I must choose to invoke my Fifth
16   Amendment right.
17   BY MR. KUVIN:
18        Q.  Did you keep an appointment book for
19   Mr. Epstein?
20        MR. RHEINHART:  Objection to the form,
21   standing objection.  Instruct the witness not
22   to answer.
23        THE WITNESS:  On the instruction of my
24   lawyer, I must choose to invoke my Fifth
25   Amendment right.

Page 184

1    BY MR. KUVIN:
2         Q.  Did you preserve a document that shows the
3    appointments kept for Mr. Epstein in the years 2004?
4         MR. RHEINHART:  Objection to the form, the
5    standing objection, compound question and
6    instruct the witness not to answer.
7         THE WITNESS:  On the instruction of my
8    lawyer, I must choose to invoke my Fifth
9    Amendment right.
10   BY MR. KUVIN:
11        Q.  Same question with respect to any
12   appointments kept for Mr. Epstein in 2005.
13        MR. RHEINHART:  Same objection previously
14   stated to the previous question.
15        THE WITNESS:  On the instruction of my
16   lawyer, I must choose to invoke my Fifth
17   Amendment right.
18   BY MR. KUVIN:
19        Q.  Same with respect to any appointments kept
20   for Mr. Epstein in 2006.
21        MR. RHEINHART:  Same objection as
22   previously stated to the last two questions.
23        THE WITNESS:  On the instruction of my
24   lawyer, I must choose to invoke my Fifth
25   Amendment privilege.

Page 185

```
 1   BY MR. KUVIN:
 2        Q.  Have you provided any appointment books to
 3   anyone with respect to appointments for Mr. Epstein?
 4            MR. RHEINHART:  Same standing objection as
 5        to knowledge of Mr. Epstein.  The question is
 6        compound and instruct the witness not to
 7        answer.
 8            THE WITNESS:  On the instruction of my
 9        lawyer, I must choose to invoke my Fifth
10        Amendment right.
11   BY MR. KUVIN:
12        Q.  Would Ep -- Mr. Epstein pay the underage
13   girls more money if they took off both their tops
14   and their bottoms?
15            MR. RHEINHART:  Objection to the form,
16        standing objection.  Instruct the witness not
17        to answer.
18            THE WITNESS:  On the instruction of my
19        lawyer, I must choose to invoke my Fifth
20        Amendment right.
21   BY MR. KUVIN:
22        Q.  Would Mr. Epstein pay the underage girls
23   more if they would actually touch his penis?
24            MR. RHEINHART:  Same instruction, same
25        objection.
```

Page 186

```
 1            THE WITNESS:  On the instruction of my
 2        lawyer, I must choose to assert my Fifth
 3        Amendment right.
 4   BY MR. KUVIN:
 5        Q.  Would Mr. Epstein pay the underage girls
 6   more if he would allow them to have sex with them?
 7            MR. RHEINHART:  Can you restate that
 8        again?
 9            MR. KUVIN:  Yes.
10   BY MR. KUVIN:
11        Q.  Would Mr. Epstein pay the underage girls
12   more money if they would allow him to have sex with
13   them?
14            MR. RHEINHART:  Objection to the form,
15        standing objection.  Instruct the witness not
16        to answer.
17            THE WITNESS:  On the instruction of my
18        lawyer, I must invoke my Fifth Amendment right.
19            MR. KUVIN:  Hang on one second.  You can
20        stop at any time I'll sign it.
21            MR. RHEINHART:  Mr. Kuvin, I don't know if
22        you're getting to a convenient breaking point
23        but --
24            MR. KUVIN:  Do you want to take a quick
25        one?
```

Page 187

```
 1            MR. RHEINHART:  Yeah, whenever you get to
 2        a convenient point in your questioning, I think
 3        we can use a break.  If you're in the middle of
 4        something, I don't want to stop you.
 5            MR. KUVIN:  No, this is fine.  We can take
 6        a quick break.  Five minutes?
 7            MR. RHEINHART:  Yes, thank you.
 8            THE VIDEOGRAPHER:  We're now off the
 9        record.  It is 2:08 p.m.
10            (A brief recess was held.)
```