Virginia L. Giuffre,

       Plaintiff,                Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

       Defendant.
_____/

**PLAINTIFF, VIRGINIA GIUFFRE'S REPLY IN RESPONSE TO
DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW IN RESPONSE
TO PLAINTIFF'S MOTION TO COMPEL THE PRODUCTION
<u>OF DOCUMENTS SUBJECT TO IMPROPER CLAIM OF PRIVILEGE</u>**

BOIES, SCHILLER & FLEXNER LLP

David Boies
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Sigrid McCawley (Pro Hac Vice)
Boies, Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

Ellen Brockman
Boies, Schiller & Flexner LLP
575 Lexington Ave
New York, New York 10022
(212) 446-2300

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| I. | PRELIMINARY STATEMENT | 1 |
| II. | ARGUMENT | 1 |
| | A. Under The Second Circuit's "Touch Base" Test, New York Law Applies. | 1 |
| | B. Under English Law, The Privilege Log Is Still Deficient. | 4 |
| |     1. The English "Legal Advice" Privilege Does Not Apply. | 4 |
| |         a. Confidentiality Under English Law. | 5 |
| |         b. Communication Via An Agent Under English Law. | 6 |
| |         c. Under English Law, The Communications Must Be For The Purpose Of Giving Or Receiving Legal Advice. | 6 |
| | C. Under New York Law, The Privilege Log Is Deficient. | 7 |
| CONCLUSION | | 8 |

# TABLE OF AUTHORITIES

Page

**Cases**

*Aetna Cas. & Sur. Co. v. Certain Underwriters at Lloyd's London*,
   176 Misc. 2d 605, 676 N.Y.S. 2d 727 (Sup. Ct. 1998) .................................................. 2

*Aetna Cas. & Sur. Co. v. Certain Underwriters at Lloyd's*
   263 A.D. 2d 367, 692 N.Y.S. 2d 384 (1999) ................................................................. 2

*Anwar v. Fairfield Greenwich Ltd,*,
   982 F. Supp. 2d 260 (S.D.N.Y. 2013) ........................................................................... 1

*Astra Aktiebolag v. Andrx Pharm., Inc.*,
   208 F.R.D. 92 (S.D.N.Y. 2002) ..................................................................................... 2

*Curley v. AMR Corp.*,
   153 F. 3d 5, (2d Cir. 1998) ............................................................................................. 4

*Egiazaryan v. Zalmayev*,
   290 F.R.D. 421 (S.D.N.Y. 2013) ................................................................................... 7

*In re A2P SMS Antitrust Litigation*,
   972 F. Supp. 2d 465 (S.D.N.Y. 2013) ........................................................................... 1

*In re Grand Jury Subpoenas Dated March 24, 2003*,
   265 F. Supp. 2d 321 (S.D.N.Y. 2003) ........................................................................... 7

*In re: Lyondell Chem. Co.*,
   543 B.R. 428 (Bankr. S.D.N.Y. 2016) ........................................................................... 4

*Nance v. Thompson Med. Co.*,
   173 F.R.D. 178 (E.D. Tex. 1997) .................................................................................. 7

*On Time Aviation, Inc. v Bombardier Capital, Inc.*,
   354 F. App'x 448 (2d Cir. 2009) .................................................................................... 2

*Pem-Am., Inc. v. Sunham Home Fashions, LLC*,
   No. 03 CIV. 1377JFKRLE, 2007 WL 3226156 (S.D.N.Y. Oct. 31, 2007) ................... 7

*Rutgerswerke AG & Frendo A.p.A. v. Abex Corp.*,
   No. 93 Civ. 2914 (JFK), 2002 WL 1203836 (S.D.N.Y. June 4, 2002) ......................... 4

*Tansey v. Cochlear Ltd.*,
   No. 13-CV-4628 SJF SIL, 2014 WL 4676588 (E.D.N.Y. Sept. 18, 2014) ................... 4

*USP Strategies v. London General Holdings Ltd.*,
  [2004] EWHC 373 (Ch) .................................................................................................5, 6

*Waugh v. British Railways Board*,
  [1980] AC 521 (H.L.) ........................................................................................................2

*West London Pipeline and Storage v Total UK*,
  [2008] 2 CLC 258 ..............................................................................................................5

**Statutes**

Fed. R. Civ. P. 26(b)(5) ...........................................................................................................7

Fed. R. Civ. P. 26.2(a)(2)(B) ...................................................................................................7

Fed. R. Civ. P. 44.1 .................................................................................................................4

Plaintiff Virginia L. Giuffre, by and through undersigned counsel, respectfully submits this Reply in Response to Defendant's Supplemental Memorandum of Law in Response to Plaintiff's Motion to Compel the Production of Documents Subject to Improper Claim of Privilege (D.E. 46).[1] For the reasons set forth below, this Court should grant Ms. Giuffre's Motions to Compel in their entirety.

## I. PRELIMINARY STATEMENT[2]

This Reply references and incorporates Ms. Giuffre's arguments on Defendant's improper assertion of privilege on Defendant's privilege log as iterated in Ms. Giuffre's Motion to Compel the Production of Documents Subject to Improper Claim of Privilege (D.E. 33). In order to comply with page limit restrictions, this Reply primarily addresses new arguments raised in Defendant's Supplemental Memorandum of Law in Response to Plaintiff's Motion to Compel the Production of Documents Subject to Improper Claim of Privilege (D.E. 46).

## II. ARGUMENT

### A. Under The Second Circuit's "Touch Base" Test, New York Law Applies

This Court need not even reach a choice-of-law analysis for three reasons. First, while Defendant claims that English privilege law applies, she does not claim a privilege under English law. For every entry on her privilege log, she claims attorney-client privilege, a privilege

---

[1] Ms. Giuffre notes that Defendant's combined "responses" are over the page limit pursuant to this Court's individual practice rules.

[2] Ms. Giuffre views Defendant's "Supplemental Responses" (D.E. 45 and 46) as impermissible sur-replies. Defendant already filed a Response, and her "supplemental" responses were filed *after* Ms. Giuffre filed her Reply to Defendant's Response. *See In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 500 (S.D.N.Y. 2013) (striking sur-reply because it does not respond to "new issues which are material to the disposition of the question before the [C]ourt,"); *Anwar v. Fairfield Greenwich Ltd.*, 982 F. Supp. 2d 260, 263 (S.D.N.Y. 2013) ("the Court notes that Plaintiffs' letter is a sur-reply filed without permission of the Court and does not identify new controlling law, and therefore will not be considered.").

To the extent that this Court has not yet made a *sua sponte* ruling to strike them from the docket to date, Ms. Giuffre hereby files her reply briefs within the time allotted under the Local Rules.

recognized by New York (and the remainder of United States jurisdictions). She does not claim the "legal advice privilege," the analog to the attorney-client privilege in England.

Second, English "legal advice privilege" law is substantially similar to that of New York's "attorney-client privilege" law (the privilege claimed in Defendant's privilege log), making the analysis unnecessary. *On Time Aviation, Inc. v. Bombardier Capital, Inc.*, 354 F. App'x 448, 450 (2d Cir. 2009) (declining to reach a choice of law analysis as the result would the same under the various jurisdiction's law). "The parties appear to agree that the relevant privilege law is that of New York, rather than of England . . . the court will follow the parties' decision to apply New York law. The English rule, ***which is apparently similar, appears also to require that legal advice be a predominant purpose of the communication*** (*see Waugh v. British Ry. Bd.*, [1980] AC 521 (H.L.)."[3] *Aetna Cas. & Sur. Co. v. Certain Underwriters at Lloyd's London*, 176 Misc. 2d 605, 609, 676 N.Y.S.2d 727, 730 (Sup. Ct. 1998) *aff'd sub nom. Aetna Cas. & Sur. Co. v. Certain Underwriters at Lloyd's*, 263 A.D.2d 367, 692 N.Y.S.2d 384 (1999) (Emphasis added). Therefore, because New York's "attorney-client privilege" is substantially similar to the British "legal advice privilege," this Court need not reach a choice-of-law analysis.

Third, the facts do not support the application of the choice-of-law test cited by defendant. In *Astra Aktiebolag v. Andrx Pharm., Inc*., the court explained, "[w]here, as here, alleged privileged communications took place in a foreign country or involved foreign attorneys or proceedings, this court defers to the law of the country that has the 'predominant' or 'the most direct and compelling interest' in whether those communications should remain confidential, unless that foreign law is contrary to the public policy of this forum." 208 F.R.D. 92, 98

---

[3] *Waugh v. British Ry. Bd.*, [1980] AC 521 (H.L.), attached hereto to the McCawley Decl. at Exhibit 1, states, at p. 521-522, "Held . . . that the due administration of justice strongly required that a document such as the internal inquiry report, which was contemporary, contained statements by witnesses on the spot and would almost certainly be the best evidence as to the cause of the accident, should be disclosed; that for the important public interest to be overridden by a claim of privilege the purpose of submission to the party's legal advisers in anticipation of litigation must be at least the dominant purpose for which it had been prepared."

2

(S.D.N.Y. 2002). Here, there are not sufficient facts to trigger the application of this "predominance" analysis, but several facts militate against its application. First, the communication as at issue did not "take place in a foreign country," as defendant participated in these communications from the United States.[4] Second, the communications at issue[5] did not all involve a "foreign attorney;" many were just between Defendant and her non-attorney press agent. Finally, this analysis does not apply as *there are no "foreign proceedings"* involved, as discussed in greater detail *infra*. Therefore, the Court need not reach a choice-of-law analysis because New York's attorney-client privilege law and English legal advice privilege law are substantially similar, and the facts do not trigger the application of Defendant's choice-of-law test.

However, should the Court choose to employ a choice-of-law analysis regarding the applicable privilege law, New York law controls. There were no foreign proceedings, the damage control on Defendant's tarnished New York socialite reputation was the predominant purpose of the communications involving Gow, and Defendant's reputation that was harmed, primarily, in New York where she resides. Finally, absent any declaration or other evidentiary showings that English law applies, this Court should find that New York law applies.

---

[4] Defendant addressed a journalist on a Manhattan street the day after her initial defamatory statement was released and she referred reporters to her statement.

[5] For example, Defendant claims attorney-client privilege with communications from Ross Gow to Defendant. *See* log entry from January 2, 2015 email on Defendant's Privilege Log.

## B. Under English Law, the Privilege Log is Still Deficient[6]

Should the Court determine Defendant has met her burden in showing that English law should apply to the determinations of privilege,[7] Ms. Giuffre submits that it must reach the same conclusion as under New York law: (1) there is no legal advice privilege (i.e. the English equivalent of attorney-client privilege) that attaches to the communications in which an attorney is not present, (2) no legal advice privilege attaches to communications with attorneys when made in the presence of a third party, such that the communications are not confidential and (3) no litigation privilege applies when litigation is not reasonably in prospect or ongoing at the time the communications are made.

### 1. The English "Legal Advice" Privilege Does Not Apply

Under English law, a document can be withheld from disclosure on grounds of legal advice privilege if it is: (1) a confidential communication; which passes between a client and his/her lawyer (including via an agent); and (2) which has come into existence for the purpose of giving

---

[6] This discussion in this brief on the application of English privilege law is based upon the legal opinions of attorneys in the London branch of the undersigned's law firm, as well as English case law, cited through and attached as exhibits.

Under Rule 44.1 of the Federal Rules of Civil Procedure, in determining foreign law, "the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. Rule 44.1 gives a court "wide latitude" to determine foreign law, *Rutgerswerke AG & Frendo S.p.A. v. Abex Corp.*, No. 93 Civ. 2914(JFK), 2002 WL 1203836, at *16 (S.D.N.Y. June 4, 2002), and the Second Circuit has "urge[d] district courts to invoke the flexible provisions of Rule 44.1 to determine issues relating to the law of foreign nations," *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir.1998).

"In making rulings regarding foreign law, courts have employed various methods: they have considered the plain text of applicable foreign law; made assumptions regarding the interpretation of translated foreign law sources; considered expert affidavits submitted by parties; evaluated experts' credibility; assessed experts' opinions and the basis of such opinions as supported by the foreign country's civil law, cases, treatises, and logic." *In re: Lyondell Chem. Co.*, 543 B.R. 428, 444 (Bankr. S.D.N.Y. 2016).

Accordingly, Ms. Giuffre respectfully requests that the Court consider the plain text of the attached case law should the Court decide to make a ruling based upon English law.

[7] "[T]he party relying on foreign law has the burden of showing such law bars production of documents." *Tansey v. Cochlear Ltd.*, No. 13-CV-4628 SJF SIL, 2014 WL 4676588, at *4 (E.D.N.Y. Sept. 18, 2014) (Internal quotation and citation omitted).

4

or receiving legal advice about what should prudently and sensibly be done in the relevant legal context. Where there is no attorney involved in the communication (such as those communications between Defendant and other non-attorneys), there can be no "legal advice" privilege under English Law.

a. <u>Confidentiality Under English Law</u>

Under English law, the fact that a third party is present at the time legal advice is sought/obtained (as with communications Defendant made with attorneys with a third party involved) does not necessarily prevent the communication from being confidential. If a communication is provided to a third party on express terms that it is to remain confidential and was not generally available outside the limited group of recipients, privilege will not necessarily be lost to the outside world (*USP Strategies v London General Holdings Ltd*, [2004] EWHC 373 (Ch)).[8] On that basis, Defendant must bear the burden of proving that the documents are privileged.[9] Defendant has not submitted any evidence, such as a Non-Disclosure Agreement, that expressly places Ross Gow under an obligation of confidence in respect to information received by him relating to legal advice/litigation. In absence of any express obligation of confidentiality, Ms. Giuffre submits that privilege does not attach to communications involving Ross Gow and the lawyer.

---

[8] *USP Strategies v London General Holdings Ltd*, [2004] EWHC 373 (Ch), attached hereto to the McCawley Decl. at Exhibit 2, states, "[i]f A shows a privileged document to his six best friends, he will not be able to assert privilege if one of the friends sues him because the document is not confidential as between him and the friend. But the fact six other people have seen it does not prevent him claiming privilege as against the rest of the world." I think that it follows from that that A would be able to restrain each of the friends from disclosing to the outside world what they were told on the basis that it remained privileged. The friends could not give secondary evidence of the privileged material – it would be "evidence of [privileged] communications", or their evidence would be "evidencing such communications" within the formulation in *Three Rivers*. By the same token, if a client summarizes or extracts advice in a letter to a third party, that written communication is capable of retaining or attracting the privilege which attached to the original advice, subject to waiver. It, too, is something which evidences a privileged communication."

[9] Under English law, "the burden of establishing that a communication is privileged lies on the party claiming privilege". *West London Pipeline and Storage v Total UK* [2008] 2 CLC 258, at para. 50, McCawley Decl. at Exhibit 3.

5

b. Communication Via An Agent Under English Law

Under English Law, communications between client and lawyer through an agent will be protected by legal advice privilege, but this will **_only apply_** in situations where the agent functions as no more than a mere conduit (e.g. a translator). Third parties engaged to provide their own intellectual input (e.g. accountants) will not be regarded as agents for the purposes of legal advice privilege. Whether Ross Gow functioned as a true agent for the purposes of privilege must be assessed by reference to the type of information that was being provided to the attorney. *USP Strategies v London General Holdings Ltd*, [2004] EWHC 373 (Ch). [10]

c. Under English Law, The Communication Must Be For The Purpose Of Giving Or Receiving Legal Advice

Ross Gow's website notes that he is a "Reputation Manager" – not a lawyer. Maxwell states that Mr. Gow provided information to Mr. Barden "regarding press inquiries so as to further Mr. Barden's ability to give appropriate legal advice to Ms. Maxwell regarding potential defamation litigation in the United Kingdom" (D.E. 46 at 9). Even if legal advice were obtained from Mr. Barden as a result of the information provided by Mr. Gow, it is not clear that the information provided by Ross Gow was itself confidential, particularly if it related to information that is already in the press/public domain. Maxwell should be put to prove that the written communications were confidential, came into existence specifically for the purpose of giving or

---

[10] *USP Strategies v London General Holdings Ltd*, [2004] EWHC 373 (Ch), attached hereto to the McCawley Decl. at Exhibit 2, states, "[i]f A shows a privileged document to his six best friends, he will not be able to assert privilege if one of the friends sues him because the document is not confidential as between him and the friend. But the fact six other people have seen it does not prevent him claiming privilege as against the rest of the world." I think that it follows from that that A would be able to restrain each of the friends from disclosing to the outside world what they were told on the basis that it remained privileged. The friends could not give secondary evidence of the privileged material – it would be "evidence of [privileged] communications", or their evidence would be "evidencing such communications" within the formulation in *Three Rivers*. By the same token, if a client summaries or extracts advice in a letter to a third party, that written communication is capable of retaining or attracting the privilege which attached to the original advice, subject to waiver. It, too, is something which evidences a privileged communication."

6

receiving legal advice and were not simply for damage control purposes to her socialite reputation relating to her intimate involvement with convicted sex offender Jeffrey Epstein.

C.   **Under New York Law, The Privilege Log Is Deficient**

Defendant submitted a 16-entry, facially deficient log under Federal Rule of Civil Procedure 26(b)(5) and Local Rule 26.2(a)(2)(B) and the governing case law.  First, Defendant attempts to wrongfully claim that the attorney-client privilege shields documents from production as to her communications with non-attorneys.  Second, Defendant improperly claims a "common interest" privilege applies to her communications with convicted sex offender – and non-attorney - - Jeffrey Epstein, for which no attorney-client privilege applies, thus, precluding the application of the "common interest" privilege.  This is simply wrong. "The common interest rule is an extension of the attorney-client privilege and not an independent basis for privilege." *Pem-Am., Inc. v. Sunham Home Fashions, LLC*, No. 03 CIV. 1377JFKRLE, 2007 WL 3226156, at *2 (S.D.N.Y. Oct. 31, 2007).  "In order for a communication to be privileged within the common interest rule, it . . . must still meet the requirements of a privileged attorney-client communication." *Id*. (Emphasis added).  *See Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 434 (S.D.N.Y. 2013) ("communications are protected where there is a disclosure by A to the attorney representing B and vice-versa").

Third, Defendant improperly claims the attorney-client privilege when the communications involved the presence of a third party not involved in providing legal services, such as Ross Gow or Mark Cohen.  *See Egiazaryan*, 290 F.R.D. at 431.[11]  Fourth, the descriptions of the

---

[11] Defendant attempts to base her argument on *In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F. Supp. 2d 321, 330 (S.D.N.Y. 2003), but that the facts are so different between that case and the instant case that the comparison is inapt. Instead, for this case, *Egiazaryan v. Zalmayev*, 290 F.R.D. 421 (S.D.N.Y. 2013) and *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 141 (N.D.N.Y. 2007) should control. *See also Nance v. Thompson Med. Co.*, 173 F.R.D. 178, 182–83 (E.D. Tex. 1997).  The bulk of the relevant authority, in circumstances similar to the case at hand, does not extend attorney-client privilege to communications with public relations firms - even if attorneys are present for the communications - and for good reason.  Public relations firms are not in the business of giving legal advice; they exist to manage their client's public

7

communications in the log are inadequate. Every single communication on the log, even those not involving any attorneys, is described as "Communication re: legal advice."

These sparse and unvaried descriptions simply do not comply with Federal Rule of Civil Procedure 26(b)(5) and Local Rule 26.2(a)(2)(B), and are not sufficient to support the privilege claims asserted therein.

Accordingly, this Court should find that Defendant has waived her privilege claim for every entry which describes the subject matter as "Communication re: legal advice," or at the very least, require Defendant to submit the documents in question for *in camera* review to determine whether they are actually subject to any privilege claim. In addition, the Court should direct the production of documents on the privilege log that involve communications between the two non-lawyers.[12]

## CONCLUSION

For the foregoing reasons this Court should order Defendant to produce the documents listed in her privilege log, or at the very least, conduct an *in camera* inspection to determine whether or not these documents are privileged under applicable law.

---

reputations. And management of her public reputation is why Defendant retains Gow, and has for many years. (D.E. 56 at 9).

[12] Defendant inexplicably states that Ms. Giuffre has somehow waived her argument that she is entitled to communications from Gow subsequent to the issuance of the press release. In the section on communications with Gow, Ms. Giuffre stated: Accordingly, Ms. Giuffre is entitled to communications relating to Mr. Gow - particularly the January 2, 2015 email - for ***the entire Relevant Period***. (D.E. 35 at p. 19, emphasis added). The Relevant Period is defined as 1999 through the present. Therefore, there is no waiver.

Dated: March 14, 2016

        Respectfully Submitted,

        BOIES, SCHILLER & FLEXNER LLP

By: /s/ Sigrid McCawley
    Sigrid McCawley (Pro Hac Vice)
    Boies, Schiller & Flexner LLP
    401 E. Las Olas Blvd., Suite 1200
    Ft. Lauderdale, FL 33301
    (954) 356-0011

    David Boies
    Boies, Schiller & Flexner LLP
    333 Main Street
    Armonk, NY 10504

    Ellen Brockman
    Boies, Schiller & Flexner LLP
    575 Lexington Ave
    New York, New York 10022
    (212) 446-2300

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 14, 2016, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on the individuals identified below via transmission of Notices of Electronic Filing generated by CM/ECF.

    Laura A. Menninger, Esq.
    HADDON, MORGAN & FOREMAN, P.C.
    150 East 10th Avenue
    Denver, Colorado 80203
    Tel: (303) 831-7364
    Fax: (303) 832-2628
    Email: lmenninger@hmflaw.com

                      /s/ Sigrid S. McCawley
                          Sigrid S. McCawley