# EXHIBIT 1

A.C.

A

[HOUSE OF LORDS]

WAUGH . . . . . . . . APPELLANT

AND

BRITISH RAILWAYS BOARD . . . . . RESPONDENTS

B
1979  May 16, 17, 21;          Lord Wilberforce, Lord Simon of Glaisdale,
      July 12                    Lord Edmund-Davies, Lord Russell of Killowen
                                 and Lord Keith of Kinkel

*Practice — Discovery — Privilege — Accident report by servants
    of railways board in pursuance of practice of board—Partly
    prepared for safety purposes and partly for obtaining legal
C   advice in anticipation of legal proceedings — Whether latter
    purpose to be dominant for claim to privilege to succeed—
    Whether form of wording of report conclusive as to purpose
    for which prepared*

The plaintiff's husband was employed by the defendant
railways board.  In a collision between locomotives, he
received injuries from which he died.  The practice of the
D   board when an accident occurred was that on the day of the
accident a brief report was made to the railway inspectorate,
soon afterwards a joint internal report ("the joint inquiry
report") was prepared incorporating statements of witnesses,
which was also sent to the inspectorate, and in due course a
report was made by the inspectorate for the Department of the
Environment.  The heading of the joint inquiry report stated
that it had finally to be sent to the board's solicitor for the
E   purpose of enabling him to advise the board.  The plaintiff
brought an action against the board under the Fatal Acci-
dents Acts, alleging that the collision had been caused by their
negligence, and sought discovery of, inter alia, the joint inquiry
report.  The board, who denied negligence and alleged that
the collision had been caused or contributed to by the
deceased's own negligence, refused to disclose the report on
the ground, as stated in an affidavit sworn on their behalf,
F   that one of the principal purposes of preparing it had been
so that it could be passed to their chief solicitor to enable
him to advise the board on its legal liability and, if necessary,
conduct their defence to the proceedings, and that it was
accordingly the subject of legal professional privilege.  On
an interlocutory application by the plaintiff for discovery of
the report, the master ordered discovery, but an appeal by the
board from his order was allowed by Donaldson J., and the
G   Court of Appeal by a majority (Eveleigh L.J. and Sir David
Cairns, Lord Denning M.R. dissenting) dismissed an appeal
by the plaintiff from Donaldson J.'s order.

On appeal by the plaintiff: —

*Held*, allowing the appeal, that the due administration of
justice strongly required that a document such as the internal
inquiry report, which was contemporary, contained statements
by witnesses on the spot and would almost certainly be the
H   best evidence as to the cause of the accident, should be dis-
closed; that for that important public interest to be overridden
by a claim of privilege the purpose of submission to the party's
legal advisers in anticipation of litigation must be at least the

dominant purpose for which it had been prepared; and that,  A
in the present case, the purpose of obtaining legal advice in
anticipation of litigation having been no more than of equal
rank and weight with the purpose of railway operation and
safety, the board's claim for privilege failed and the report
should be disclosed (post, pp. 531A–B, H—532B, 533B–D,
534F–G, 535B–C, 537E–G, 538A–B, 543C—545A, D–F).

. *Birmingham and Midland Motor Omnibus Co. Ltd.* v.
*London and North Western Railway Co.* [1913] 3 K.B. 850,  B
C.A.; *Ankin* v. *London and North Eastern Railway Co.* [1930]
1 K.B. 527, C.A. and *Ogden* v. *London Electric Railway Co.*
(1933) 49 T.L.R. 542, C.A. overruled.

· *Anderson* v. *Bank of British Columbia* (1876) 2 Ch.D. 644,
Sir George Jessel M.R. and C.A. and *Grant* v. *Downs* (1976)
135 C.L.R. 674 considered.

*Per curiam.* The fact that the report stated on its face
that it had finally to be sent to the board's solicitor for the  C
purpose of enabling him to advise it cannot be conclusive
as to the dominant purpose for which it was prepared (post,
pp. 531A, 538A–B, 539E–G, 545E–F).

Dictum of Lord Strathclyde, Lord President, in *Whitehill*
v. *Glasgow Corporation*, 1915 S.C. 1015, 1017 applied.

Decision of the Court of Appeal reversed.

The following cases are referred to in their Lordships' opinions:  D

*Anderson* v. *Bank of British Columbia* (1876) 2 Ch.D. 644, Sir George
  Jessel M.R. and C.A.

*Ankin* v. *London and North Eastern Railway Co.* [1930] 1 K.B. 527, C.A.

*Birmingham and Midland Motor Omnibus Co. Ltd.* v. *London and North
  Western Railway Co.* [1913] 3 K.B. 850, C.A.

*Conway* v. *Rimmer* [1968] A.C. 910; [1968] 2 W.L.R. 998; [1968] 1  E
  All E.R. 874, H.L.(E.).

*Crofter Hand Woven Harris Tweed Co. Ltd.* v. *Veitch* [1942] A.C. 435;
  [1942] 1 All E.R. 142, H.L.(Sc.).

*Crompton (Alfred) Amusement Machines Ltd.* v. *Customs and Excise
  Commissioners (No. 2)* [1974] A.C. 405; [1973] 3 W.L.R. 268;
  [1973] 2 All E.R. 1169, H.L.(E.).

*D.* v. *National Society for the Prevention of Cruelty to Children* [1978]  F
  A.C. 171; [1977] 2 W.L.R. 201; [1977] 1 All E.R. 589, H.L.(E.).

*Grant* v. *Downs* (1976) 135 C.L.R. 674; 11 A.L.R. 577.

*Jones* v. *Great Central Railway Co.* [1910] A.C. 4, H.L.(E.).

*Jones* v. *Monte Video Gas Co.* (1880) 5 Q.B.D. 556, C.A.

*Konia* v. *Morley* [1976] 1 N.Z.L.R. 455.

*Lawrence* v. *Campbell* (1859) 4 Drew. 485.

*Longthorn* v. *British Transport Commission* [1959] 1 W.L.R. 530; [1959]  G
  2 All E.R. 32.

*Northern Construction Co.* v. *British Columbia Hydro and Power Autho-
  rity* (1970) 75 W.W.R. 21.

*Ogden* v. *London Electric Railway Co.* (1933) 49 T.L.R. 542, C.A.·

*Reg. in Right of Canada* v. *Hawker Siddeley Canada Ltd.* (1976) 73
  D.L.R. (3d) 453.                                                        H

*Seabrook* v. *British Transport Commission* [1959] 1 W.L.R. 509; [1959]
  2 All E.R. 15.

*Southwark and Vauxhall Water Co.* v. *Quick* (1878) 3 Q.B.D. 315, C.A.

A

*Vernon* v. *Board of Education for the Borough of North York* (1975)
9 O.R.(2d) 613.
*Whitehill* v. *Glasgow Corporation*, 1915 S.C. 1015.

The following additional cases were cited in argument:

*Adam Steamship Co. Ltd.* v. *London Assurance Corporation* [1914] 3
K.B. 1256, C.A.

B

*Collins* v. *London General Omnibus Co.* (1893) 68 L.T. 831, D.C.
*Cook* v. *North Metropolitan Tramway Co.* (1889) 54 J.P. 263, D.C.
*London and Tilbury Railway Co.* v. *Kirk and Randall* (1884) 28 S.J. 688,
D.C.
*Westminster Airways Ltd.* v. *Kuwait Oil Co. Ltd.* [1951] 1 K.B. 134;
[1950] 2 All E.R. 596, C.A.
*Woolley* v. *North London Railway Co.* (1869) L.R. 4 C.P. 602.

C

INTERLOCUTORY APPEAL from the Court of Appeal.

By an action against the respondent defendants, the British Railways
Board, the appellant plaintiff, Alice Simpson Waugh (widow of John
Wallace Waugh, deceased), claimed damages against the board in respect
of the death of the deceased under the provisions of the Fatal Accidents

D

Acts 1846–1959, alleging that a collision between two of the board's
locomotives that had resulted in the death of the deceased, who had been
employed by the board, had been caused by the negligence of the board,
their servants or their agents. By their defence, the board denied negli-
gence, and alleged that the collision had been caused or contributed to by
the deceased's own negligence. The plaintiff sought discovery of an internal
inquiry report made by two officers of the board two days after the

E

accident, but the board refused discovery on the ground of legal pro-
fessional privilege. On an interlocutory application by the plaintiff, Master
Bickford Smith, on January 26, 1978, ordered disclosure of the report, but
Donaldson J., on May 8, 1978, allowed an appeal by the board from that
order. The Court of Appeal, on July 28, 1978, by a majority (Eveleigh L.J.
and Sir David Cairns, Lord Denning M.R. dissenting) dismissed an appeal

F

by the plaintiff. The plaintiff appealed by leave of the Court of Appeal.

The facts are set out in their Lordships' opinions.

*Peter Weitzman Q.C.* and *Michael Brent* for the plaintiff. Where a
report is brought into existence for several reasons or purposes only one
of which is to obtain professional legal advice in litigation that is pending
or anticipated, is it protected by legal professional privilege from dis-

G

covery? What is the test? There are a number of possible answers.
(1) It is enough to secure privilege if the intention to obtain legal advice is
*a* purpose, inter alia. (2) The intention to obtain legal advice must be at
least a *substantial* purpose. (3) The purpose for which the document is
brought into existence must be wholly or mainly that of obtaining profes-
sional legal advice, or it must have been " the *primary*," " the *substan-*

H

*tive*," or " the *dominant*," purpose (these different phrases have all been
used in the cases). (4) It must be the sole purpose. The plaintiff says
that the answer is (4), alternatively, possibly, (3).

As to the authorities, the following preliminary observations may be

made.  At one time, the practice differed as between equity and com- A
mon law.  (2) R.S.C., Ord. 24, r. 5, first came into existence in 1894 as
R.S.C., Ord. 31, r. 19A.  It was not until then that there was power in
the court to inspect the documents in respect of which privilege was
claimed.  The authorities fall into three groups: (i) pre-1913; (ii) *Birming-
ham and Midland Motor Omnibus Co. Ltd.* v. *London and North Western
Railway Co.* [1913] 3 K.B. 850 and *Ogden* v. *London Electric Railway
Co.* (1939) 49 T.L.R. 542; (iii) the cases after that, which do not add B
much.  *Southwark and Vauxhall Water Co.* v. *Quick* (1878) 3 Q.B.D. 315
is strong authority for the " sole purpose " test, and *Collins* v. *London
General Omnibus Co.* (1893) 68 L.T. 831 is also clear authority that at
that stage the test was the " sole purpose " test.  [Reference was made
to *Woolley* v. *North London Railway Co.* (1869) L.R. 4 C.P. 602;
*Anderson* v. *Bank of British Columbia* (1876) 2 Ch.D. 644; *London and
Tilbury Railway Co.* v. *Kirk and Randall* (1884) 28 S.J. 688; *Cook* v. C
*North Metropolitan Tramway Co.* (1889) 54 J.P. 263; and the Sixteenth
Report of the Law Reform Committee (Privilege in Civil Proceedings)
(1967) (Cmnd. 3472), pp. 8 (para. 17), 13.]

  *Birmingham and Midland Motor Omnibus Co. Ltd.* v. *London and
North Western Railway Co.* [1913] 3 K.B. 850 turns, to begin with, on
the form of words used in the affidavit (Eveleigh L.J. in the present case D
said that the judgment of Buckley L.J. there could be read in that way).
It was not, therefore, intended to deal with the proper principles or test to
be applied.  Alternatively, Buckley and Hamilton L.JJ. were by implica-
tion referring to the " dominant purpose " test.  The plaintiff relies on the
passage at p. 860: " The only authority . . ." Hamilton L.J. is at least
saying that there is no authority for the view that the purpose does not
at least have to be the primary or substantial purpose, and the judgment E
of Buckley L.J., even taken on its own, does not go to the extent of
contradicting that of Hamilton L.J.: see at p. 856: " It is not I think
necessary . . ."  (In *Southwark and Vauxhall Water Co.* v. *Quick,* 3
Q.B.D. 315, the word " merely " was used a number of times by Brett L.J.)
The argument in the *Birmingham* case was directed largely to the form
of the affidavit.  There is no suggestion in the report that there was any F
other purpose.  The judgment of Buckley L.J. relates primarily to the
wording of the affidavit rather than to the substance of it.  [Reference
was made to *Adam Steamship Co. Ltd.* v. *London Assurance Corpora-
tion* [1914] 3 K.B. 1256 and *Ankin* v. *London and North Eastern Rail-
way Co.* [1931] 1 K.B. 527.]

  *Ogden* v. *London Electric Railway Co.,* 49 T.L.R. 542, is moving to G
the position that, as a matter of substance, it is enough that one, substan-
tial, purpose for bringing the document into existence is that it shall be
available for legal advice.  This is inconsistent with the judgments in
*Southwark and Vauxhall Water Co.* v. *Quick,* 3 Q.B.D. 315.  Scrutton L.J.
misinterpreted that case, and wrongly extended what the *Birmingham* case
decided.  *Ogden* was wrongly decided, if it is authority that *a* substantial
purpose is sufficient.  *Westminster Airways Ltd.* v. *Kuwait Oil Co. Ltd.* H
[1951] 1 K.B. 134 is against the plaintiff: it shows that, since *Ogden,* the
courts have been following *Ogden* and taking the view that a substantial
purpose is enough.  There is a reference to " other purposes " at p. 143.

A.C.                    Waugh v. British Railways Board (H.L.(E.))

A  [Reference was made to *Seabrook* v. *British Transport Commission* [1959] 1 W.L.R. 509; *Longthorn* v. *British Transport Commission* [1959] 1 W.L.R. 530 and *Alfred Crompton Amusement Machines Ltd.* v. *Customs and Excise Commissioners (No. 2)* [1974] A.C. 405.]

    The privilege should only be accorded where it is necessary in order to achieve the purpose for which it is designed. Where the party would have brought the document into existence apart from the seeking of legal B advice, there is no need for the privilege. Before 1894, when only the affidavit was produced, the inability of the court to inspect the actual documents could lead to abuse or mistake. *Birmingham and Midland Motor Omnibus Co. Ltd.* v. *London and North Western Railway Co.* [1913] 3 K.B. 850 was the first case where the court examined what the affidavit had to say and also looked at the documents. Thus, the language of the affidavit was no longer vital. There were now two questions: C should the court inspect the documents, and was the form of words conclusive? Because the court could inspect the documents, the form of words was no longer conclusive. [Reference was made to *Grant* v. *Downs* (1976) 135 C.L.R. 674; *Wigmore's Law of Evidence* (1905), vol. iv, paras. 2317–2319 and R.S.C., Ord. 38, r. 29.]

    The plaintiff's submissions, in summary, are as follows. 1. *Ogden* v. D *London Electric Railway Co.,* 49 T.L.R. 542, was wrongly decided. One can go back to the situation before *Birmingham and Midland Motor Omnibus Co. Ltd.* v. *London and North Western Railway Co.* [1913] 3 K.B. 850, where, as was said in *Southwark and Vauxhall Water Co.* v. *Quick,* 3 Q.B.D. 315, the sole purpose test was the appropriate test. What is said by Lord Cross of Chelsea in *Alfred Crompton Amusement Machines Ltd.* v. *Customs and Excise Commissioners (No. 2)* [1974] E A.C. 405, with the concurrence of the others of their Lordships, is that the matter is now open for the House to decide what is the appropriate test to be applied—that is, presumably, that which is most desirable in the interests of justice. If privilege is to be accorded to a document, it is only to be accorded where that is necessary for the basic rationale of the rule, as expressed, inter alia, by Sir George Jessel M.R. in F *Anderson* v. *Bank of British Columbia* (1876) 2 Ch.D. 644, 648–649. If a document comes into existence in circumstances such that it cannot be shown that it would not have come into existence but for the purposes of litigation, then in truth the privilege does not serve the purpose that is the basis of the rule, but merely provides an adventitious advantage. This is particularly the case with large corporate employers who are obliged to collect knowledge, as in this case. These G points were made in *Grant* v. *Downs,* 135 C.L.R. 674, on which the plaintiff very much relies. The problem posed can best be met by applying the sole purpose test; alternatively, the dominant purpose test, on the basis that the dominant purpose is the one that, if it had not existed, would mean that the document would not have come into existence. Here, the litigation purpose is at the highest one of two equal H purposes.

    *Francis Irwin Q.C.* and *Frederick Marr-Johnson* for the board. The powers of the inspectors appointed by the Secretary of State are set out in section 4 of the Regulation of Railways Act 1871. The report of

**Waugh v. British Railways Board (H.L.(E.))**                [1980]

October 29, 1976, can be obtained by anyone from the Ministry of Transport or Her Majesty's Stationery Office.                                              A

    One of the objects of privilege is to prevent one party from seeing in detail what the other party's case is.  It is very difficult to define " substantial."  As to the tests, (1) once duality has been raised, there is no English case that has approved the sole purpose test.  The only case, relied on by the plaintiff, is *Grant* v. *Downs,* 135 C.L.R. 674.  (2) the dominant purpose test has not been used by any judge except Barwick    B C.J. in *Grant* v. *Downs.*  How does one assess dominance?  Dominance in whose eyes?  At what particular time?

    [LORD EDMUND-DAVIES.  In a civilised society, would not the dominant purpose be to find out what happened, so as to prevent it from happening again?]

    In this case, there was no dominant purpose.  The second report, the    C joint inquiry report of May 6, 1976, was really the collection of evidence. One difficulty of this approach is to distinguish between one aspect and another: which is the important one?  The answer here should therefore be that the real test here can be described as a " substantial purpose "— " *a* substantial purpose "—test, or an " appreciable purpose " test.  " An appreciable " means that it is something of consequence.  The board does    D not accept the substantial purpose test because there was not a substantial purpose here.  If there had been one, they would not go as far as to accept that test.  They would accept that it is a question of " dominant in whose eyes? "  Even there, there is difficulty, because one might have, for example, two members of a family charged with making a report about an accident that had happened to them: one might regard the dominant purpose of the report as liability, the other safety.  " *A* dominant pur-    E pose " means a substantial purpose without the need to inquire whether it was *the* dominant purpose.  There are two basic criteria: (1) that the test should be fair to both parties to the litigation; (2) that it should be simple to understand and easy to apply in practice.  Support for the " *a* substantial purpose " test is found in the judgment of Diplock J. in *Longthorn* v. *British Transport Commission* [1959] 1 W.L.R. 530, 534; see also *Konia*    F v. *Morley* [1976] 1 N.Z.L.R. 455 and the test that Eveleigh L.J. applied in the present case.  Provided that the board establish *a* substantial purpose, they concede that there may be cases—not this one—where there may be a more important function.  Thus, the substantial, appreciable purpose test ought to be applied.  It represents the law and practice of at least the last 60 years.  It is fair to both parties, in the sense that the privilege attaching to the document supports the case of the board in this instance.    G It has that advantage, but it precludes the plaintiff, on general grounds, from having access to information to which otherwise she would be entitled.

    [LORD SIMON OF GLAISDALE.  There are two conflicting principles— curiously, both advanced to further the administration of justice.  They point in different directions.  One usually tries to resolve such a conflict    H by finding a middle line.]

    That is the difficulty here: to find a workable middle line.  This advances the board's case for " substantial " or " appreciable."

A    [LORD RUSSELL OF KILLOWEN.  What about the preliminary accident
report?  There must also have been a report to the police?]

The accident report was not disclosed. The coroner's notes were dis-
closed. The board could hold two inquiries, one as to liability and one
as to safety. It could not then be said that the first would be disclosable.
The second would be.

The plaintiff says that *Southwark and Vauxhall Water Co.* v. *Quick,*
B   3 Q.B.D. 315, is strong authority for the sole purpose test. There, the
court was not concerned with any duality of purpose, and they were not
directing their mind to that point. Secondly, the plaintiff says that
*Birmingham and Midland Motor Omnibus Co. Ltd.* v. *London and
North Western Railway Co.* [1913] 3 K.B. 850 turned mainly on the
form of words used in the affidavit and was not, therefore, intended to
deal with the proper principles and the test to be applied; alternatively,
C   she suggests that Buckley and Hamilton L.JJ. were by implication referring
to the dominant purpose test. That case has been considered ever since
it was decided as settling matters of principle, and it is not correct to say
that within the language used the court were favouring the dominant
purpose test. There is no distinction between " primary " and " domin-
ant "; that is why one should prefer the substantial purpose test.

D   The plaintiff said that *Ogden* v. *London Electric Railway Co.,* 49
T.L.R. 542, was wrongly decided: Scrutton L.J. misinterpreted the
*Southwark and Vauxhall* case and extended what had been decided in the
*Birmingham* case. *Ogden,* like the *Birmingham* case, has been regarded
as settling matters of principle now for a great number of years; Scrutton
L.J. took a correct view of the *Southwark and Vauxhall* case and correctly
interpreted and applied the *Birmingham* case. The present state of the
E   law, based principally on the *Birmingham* case, the *Ogden* case and other
cases referred to in *Seabrook* v. *British Transport Commission* [1959]
1 W.L.R. 509, may be summarised as follows. (1) All communications
between a client or his legal adviser and third parties are prima facie
privileged if one of the purposes for which they are made is the purpose
of pending or contemplated litigation. (2) This purpose need not be the
F   " dominant " purpose for the document's existence, but it must be a
" substantial " or " appreciable " purpose. (3) Whether or not the pur-
pose is sufficiently substantial to attract the cloak of privilege will be a
question of fact and degree in every case. There is no magic in any
particular form of words, and (for example) it is not necessary that the
affidavit should state that information was obtained " solely " or " merely "
or " primarily " for the legal adviser. (4) Such a communication remains
G   privileged notwithstanding the fact that it is brought into existence as a
matter of routine, or in accordance with standing instructions, and not-
withstanding the fact that it may pass through various hands before
coming finally to the legal adviser.

If the test is dominant purpose, it is possible to argue that the dominant
purpose of the joint inquiry report was an inquiry into liability. The
H   " label " on the affidavit of the assistant to the general manager of the
board's Eastern Region in support of the board's claim of privilege and
on the joint inquiry report cannot be more than an indication of its pur-
pose. Paragraph 2 of the board's list of documents, stating that they have

**Waugh v. British Railways Board (H.L.(E.) )** [1980]

in their possession, custody or power the documents " relating to the A
matters in question in this action " enumerated in the first schedule, is
standard form.

*Marr-Johnson* following on the Commonwealth authorities. As to
*Grant* v. *Downs,* 135 C.L.R. 674, the House should have in mind the
principle set out by the majority there. Using shorthand, they applied the
sole purpose test. The judgment of the majority is based on a fallacy,
based on a misunderstanding of *Anderson* v. *Bank of British Columbia* B
(1876) 2 Ch.D. 644: see at pp. 687–689. It can be reduced to four pro-
positions. (1) An ordinary individual can always be compelled to dis-
close his own knowledge of relevant facts. (2) A corporation generally
has to acquire knowledge of relevant facts through the written communi-
cations of its agents. (3) It would be extraordinary if a corporation could
claim the benefit of a privilege that was not available to an ordinary
individual. (4) The majority conclude that, if the dual purpose claim C
is allowed the effect would be precisely that. The board agrees with
(3), but (4) does not follow from (1) and (2). (1) is correct, but " relevant
facts " means the basic facts of the transaction, the res gestae, one
might almost say: the written documents in an accident case—typically,
the entry in the accident book in a factory case—or, in a commercial
case, the bank account in question. *Anderson* v. *Bank of British* D
*Columbia* is probably right if one reads it from end to end. The facts
were wholly different from those in *Grant* v. *Downs.* That is plain,
especially from the judgment of Mellish L.J., at p. 658: ". . . as to the
question that we have to decide in this case . . ."

It is well-established that a client is entitled to act on behalf of his
legal adviser in obtaining information from third parties. A corporation
is in no different position from an individual. That point was made E
clearly by Cotton L.J. in *Southwark and Vauxhall Water Co.* v. *Quick,*
3 Q.B.D. 315, 321. There is no difference at all that the board is aware
of. It is plain from all the judgments in *Anderson* v. *Bank of British
Columbia,* 2 Ch.D. 644, particularly that of Mellish L.J., that all the docu-
ments there would legitimately have been the subject of discovery if the
bank had been in England: they were, in truth, bankers' records. F

The board is not aware of any case other than *Grant* v. *Downs,* 135
C.L.R. 674, where the sole purpose test has been applied. It is not right
to draw the line at that particular point. If one is to draw a line at
all, one should draw it where it is capable of being applied easily in
practice (it is not only High Court judges who have to apply it).
Apart from Australia, the Commonwealth authorities all apply the sub-
stantial purpose test, which does work adequately in practice. One G
might have two different safety officers, one concerned with safety, one
with liability. Or one might have a document 90 per cent. of which was
concerned with safety, 10 per cent. with liability. These Commonwealth
cases follow the practice in England and Wales, and in two of them where
the substantial purpose test was applied the claim to privilege failed:
*Northern Construction Co.* v. *British Columbia Hydro and Power* H
*Authority* (1970) 75 W.W.R. 21 and *Vernon* v. *Board of Education
for the Borough of New York* (1975) 9 O.R. (2d) 613. *Alfred Crompton
Amusement Machines Ltd.* v. *Customs and Excise Commissioners (No. 2)*

A.C.                        **Waugh v. British Railways Board (H.L.(E.) )**

A [1974] A.C. 405 was considered in *Reg. in Right of Canada* v. *Hawker Siddeley Canada Ltd.* (1976) 73 D.L.R. (3d) 453. [Reference was made to *Konia* v. *Morley* [1976] 1 N.Z.L.R. 455.]

*Weitzman Q.C.* in reply. One should not go through this report line by line, but should look at what the person says who inspired it. There is confusion in the board's argument between the function of pleadings on the one hand and particulars on the other. One should distinguish

B between the purpose for which the report was made and the use eventually made of its contents. As to the proposition that the test should be simple to understand and easy to apply, that is the whole question here. It is very difficult to say exactly where such a test as " *a* substantial purpose " draws the line. It seems as though the Law Reform Committee in its Sixteenth Report (Privilege in Civil Proceedings) (1967) (Cmnd.

C 3472) were recommending the dominant purpose test: see at p. 8, para. 17: " wholly or mainly."

Even if the board's historical summation of the authorities be right, the House in *Alfred Crompton Amusement Machines Ltd.* v. *Customs and Excise Commissioners (No.* 2) [1974] A.C. 405 regarded the matter as open for reconsideration.

It is quite impossible that the board should succeed on the dominant

D purpose test, because their affidavit falls far short of it. That was recognised by Eveleigh L.J.

As to the Commonwealth authorities, see *Grant* v. *Downs,* 135 C.L.R. 674: the Commonwealth cases more or less follow what was said in *Seabrook* v. *British Transport Commission* [1959] 1 W.L.R. 509 and *Longthorn* v. *British Transport Commission* [1959] 1 W.L.R. 530.

E Fairness and good sense suggest that the privilege should be limited to those cases where it is essential that it should be granted. Where a document would have been produced anyway, whether there was to be litigation or not, that suggests that the privilege is not necessary.

Their Lordships took time for consideration.

F
July 12. LORD WILBERFORCE. My Lords, the appellant's husband was an employee of the British Railways Board. A locomotive which he was driving collided with another so that he was crushed against a tank wagon. He received injuries from which he died. The present action is brought under the Fatal Accidents Acts 1846–1959 and this appeal arises out of an interlocutory application for discovery by the board of a report called the

G " joint inquiry report," made by two officers of the board two days after the accident. This was resisted by the board on the ground of legal professional privilege. The Court of Appeal, Eveleigh L.J. and Sir David Cairns, Lord Denning M.R. dissenting, refused the application.

When an accident occurs on the board's railways, there are three reports which are made. 1. On the day of the accident a brief report of the

H accident is made to the Railway Inspectorate. 2. Soon afterwards a joint internal report is prepared incorporating statements of witnesses. This too is sent to the Railway Inspectorate. Preparation of this report, it appears, is a matter of practice: it is not required by statute or statutory regula-

**Lord Wilberforce      Waugh v. British Railways Board (H.L.(E.) )      [1980]**

tion. 3. In due course a report is made by the Railway Inspectorate for the Department of the Environment.

    The document now in question is that numbered 2. The circumstances in which it came to be prepared, and the basis for the claim of privilege, were stated in an affidavit sworn on behalf of the board by Mr. G. T. Hastings, assistant to the general manager of the Eastern Region. I find it necessary to quote the significant passages in this affidavit.

> " 3. The general manager of the Eastern Region is required (as are the general managers of the other railways regions) to submit returns to the Department of [the] Environment in respect of accidents occurring on or about any railway . . . 6. It has long been the practice of the board and its predecessors to require that returns and reports on all accidents occurring on the railway and joint internal departmental inquiries into the causes of the said accident be made by the local officers of the board who would forward them to their superiors in order to assist in establishing the causes of such accidents. 7. Such reports and the statements of witnesses to such accidents are made for the purposes mentioned in paragraphs 3 and 6 of this affidavit and equally for the purpose of being submitted to the board's solicitor as material upon which he can advise the board upon its legal liability and for the purpose of conducting on behalf of the board any proceedings arising out of such accidents . . . 9. It is commonly anticipated by the board that: (a) where an employee of the board suffers personal injury or death at work or (b) where a passenger suffers loss [or] personal injury or death while on or about the railway a claim for damages will be made against the board and proceedings will ensue if liability is repudiated. The present action is brought as the result of a fatal accident suffered at work by the late husband of the plaintiff and it was anticipated from the very outset that a claim for damages would almost certainly ensue. 10. The documents in this action namely the reports made by the board's officers and servants and the report referred to in correspondence as the internal inquiry report for which the defendants have claimed privilege in part 2 of the first schedule of their list of documents dated November 11, 1977, came into existence by reason of the fact that the appropriate officer, in this case the divisional manager at Newcastle, in accordance with long standing practice was required to and did so call for such reports and statements. One of the principal purposes for so doing was so that they could be passed to the board's chief solicitor to enable him to advise the board on its legal liability and if necessary conduct its defence to these proceedings. 11. The internal inquiry report in fact states on the face of it that it has finally to be sent to the solicitor for the purpose of enabling him to advise the board."

This last paragraph refers to the wording which appears at the head of the report :

> " For the information of the board's solicitor: This form is to be used by every person reporting an occurrence when litigation by or against the B.R.B. is anticipated. It is to be provided by the person

A        making it to his immediate superior officer and has finally to be sent
to the solicitor for the purpose of enabling him to advise the B.R.B.
in regard thereto."

Whatever this heading may say, the affidavit makes it clear that the
report was prepared for a dual purpose: for what may be called railway
operation and safety purposes and for the purpose of obtaining legal
advice in anticipation of litigation, the first being more immediate than
B   the second, but both being described as of equal rank or weight. So
the question arises whether this is enough to support a claim of privilege,
or whether, in order to do so, the second purpose must be the sole purpose,
or the dominant or main purpose. If either of the latter is correct, the
claim of privilege in this case must fail.

My Lords, before I consider the authorities, I think it desirable to
C   attempt to discern the reason why what is (inaccurately) called legal pro-
fessional privilege exists. It is sometimes ascribed to the exigencies of the
adversary system of litigation under which a litigant is entitled within limits
to refuse to disclose the nature of his case until the trial. Thus one side
may not ask to see the proofs of the other side's witnesses or the
opponent's brief or even know what witnesses will be called: he must
D   wait until the card is played and cannot try to see it in the hand. This
argument cannot be denied some validity even where the defendant is a
public corporation whose duty it is, so it might be thought, while taking
all proper steps to protect its revenues, to place all the facts before the
public and to pay proper compensation to those it has injured. A more
powerful argument to my mind is that everything should be done in order
to encourage anyone who knows the facts to state them fully and candidly
E   —as Sir George Jessel M.R. said, to bare his breast to his lawyer: *Anderson
v. Bank of British Columbia* (1876) 2 Ch.D. 644, 699. This he may not do
unless he knows that his communication is privileged.

But the preparation of a case for litigation is not the only interest
which call for candour. In accident cases ". . . the safety of the public
may well depend on the candour and completeness of reports made by
subordinates whose duty it is to draw attention to defects": *Conway v.
F   Rimmer* [1968] A.C. 910, *per* Lord Reid, at p. 941. This however does
not by itself justify a claim to privilege since, as Lord Reid continues:

". . . no one has ever suggested that public safety has been endangered
by the candour or completeness of such reports having been inhibited
by the fact that they may have to be produced if the interests of the
G   due administration of justice should ever require production at any
time."

So one may deduce from this the principle that while privilege may
be required in order to induce candour in statements made for the purposes
of litigation it is not required in relation to statements whose purpose is
different—for example to enable a railway to operate safety.

H   It is clear that the due administration of justice strongly requires dis-
closure and production of this report: it was contemporary; it contained
statements by witnesses on the spot; it would be not merely relevant
evidence, but almost certainly the best evidence as to the cause of the

accident. If one accepts that this important public interest can be over-
ridden in order that the defendant may properly prepare his case, how
close must the connection be between the preparation of the document
and the anticipation of litigation? On principle I would think that the
purpose of preparing for litigation ought to be either the sole purpose
or at least the dominant purpose of it: to carry the protection further into
cases where that purpose was secondary or equal with another purpose
would seem to be excessive, and unnecessary in the interest of encouraging
truthful revelation. At the lowest such desirability of protection as might
exist in such cases is not strong enough to outweigh the need for all rele-
vant documents to be made available.

There are numerous cases in which this kind of privilege has been con-
sidered. A very useful review of them is to be found in the judgment
of Havers J. in *Seabrook* v. *British Transport Commission* [1959] 1
W.L.R. 509 which I shall not repeat. It is not easy to extract a coherent
principle from them. The two dominant authorities at the present time
are *Birmingham and Midland Motor Omnibus Co. Ltd.* v. *London and
North Western Railway Co.* [1913] 3 K.B. 850 and *Ogden* v. *London
Electric Railway Co.* (1933) 49 T.L.R. 542, both decisions of the Court
of Appeal. These cases were taken by the majority of the Court of
Appeal in the present case to require the granting of privilege in cases
where one purpose of preparing the document(s) in question was to enable
the defendants' case to be prepared whether or not they were to be
used for another substantial purpose. Whether in fact they compel such a
conclusion may be doubtful—in particular I do not understand the
*Birmingham* case to be one of dual purposes at all: but it is enough that
they have been taken so to require. What is clear is that, though loyally
followed, they do not now enjoy rational acceptance: in *Longthorn* v.
*British Transport Commission* [1959] 1 W.L.R. 530 the manner in which
Diplock J. managed to escape from them, and the tenor of his judgment,
shows him to have been unenthusiastic as to their merits. And in *Alfred
Crompton Amusement Machines Ltd.* v. *Customs and Excise Com-
missioners (No. 2)* [1974] A.C. 405 Lord Cross of Chelsea, at p. 432,
pointedly left their correctness open, while Lord Kilbrandon stated, at
p. 435, that he found the judgment of Scrutton L.J. in *Ogden* v. *London
Electric Railway Co.*, 49 T.L.R. 542, 543–544, " hard to accept." Only
Viscount Dilhorne (dissenting) felt able to follow them in holding it to be
enough if one purpose was the use by solicitors when litigation was
anticipated.

The whole question came to be considered by the High Court of
Australia in 1976: *Grant* v. *Downs*, 135 C.L.R. 674. This case involved
reports which had " as one of the material purposes for their preparation "
submission to legal advisers in the event of litigation. It was held that
privilege could not be claimed. In the joint judgment of Stephen, Mason
and Murphy JJ., in which the English cases I have mentioned were dis-
cussed and analysed, it was held that " legal professional privilege " must
be confined to documents brought into existence for the sole purpose of
submission to legal advisers for advice or use in legal proceedings.
Jacobs J. put the test in the form of a question, at p. 692: " . . . does
the purpose "—in the sense of intention, the intended use—" of supplying

A   the material to the legal adviser account for the existence of the material? " Barwick C.J. stated it in terms of " dominant " purpose. This is closely in line with the opinion of Lord Denning M.R. in the present case that the privilege extends only to material prepared " wholly or mainly for the purpose of preparing [the defendant's] case." The High Court of Australia and Lord Denning M.R. agree in refusing to follow *Birmingham and Midland Motor Omnibus Co. Ltd.* v. *London*

B   *and North Western Railway Co.* [1913] 3 K.B. 850 and *Ogden* v. *London Electric Railway Co.,* 49 T.L.R. 542, as generally understood.

My Lords, for the reasons I have given, when discussing the case in principle, I too would refuse to follow those cases. It appears to me that unless the purpose of submission to the legal adviser in view of litigation is at least the dominant purpose for which the relevant document was prepared, the reasons which require privilege to be extended to it cannot

C   apply. On the other hand to hold that the purpose, as above, must be the sole purpose would, apart from difficulties of proof, in my opinion, be too strict a requirement, and would confine the privilege too narrowly: as to this I agree with Barwick C.J. in *Grant* v. *Downs,* 135 C.L.R. 674, and in substance with Lord Denning M.R. While fully respecting the necessity for the Lords Justices to follow previous decisions of their court, I find

D   myself in the result in agreement with Lord Denning's judgment. I would allow the appeal and order disclosure of the joint report.

Lord Simon of Glaisdale. My Lords, the appellant's late husband, an employee of the respondents, was killed in an accident on part of their railway system. In accordance with their usual practice, shared by many industrial and commercial undertakings in such circumstances, a report

E   was made about the accident. As so often, the report came into being partly for the purpose of ascertaining whether the working system was defective and could be improved so as to obviate such accidents, partly for the purpose of informing the respondents' solicitors in case of the threat or initiation of litigation, which, at the time when the report was made, was contemplated by the respondents as possible or probable.

F   The report, as is usual, contains statements by all such persons as could throw light on the circumstances of the accident, the majority of whom could be witnesses in any ensuing litigation. Litigation having in fact been started by the appellant against the respondents, the former has sought disclosure of the report to assist her in the preparation and/or conduct of her case. The respondents resist its disclosure, on the ground that it is protected by legal professional privilege.

G   The situation being far from unusual, the issue has quite frequently been before the courts. The English authorities were meticulously reviewed by Havers J. in *Seabrook* v. *British Transport Commission* [1959] 1 W.L.R. 509. His conclusion was that he was bound by what had been said by the majority of the Court of Appeal in *Birmingham and Midland Motor Omnibus Co. Ltd.* v. *London and North Western Railway Co.*

H   [1913] 3 K.B. 850, and by the ensuing Court of Appeal decisions in *Ankin* v. *London and North Eastern Railway Co.* [1930] 1 K.B. 527 and *Ogden* v. *London Electric Railway Co.,* 49 T.L.R. 542. The law thus laid down was that such a report need not be disclosed if one of its purposes

534

Lord Simon
of Glaisdale                 Waugh v. British Railways Board (H.L.(E.))                [1980]

(even though subsidiary) was to inform the solicitor with a view to
litigation contemplated as possible or probable.  That this was the correct
distillation of the prevailing case law was recognised by Diplock J. in
*Longthorn* v. *British Transport Commission* [1959] 1 W.L.R. 530; though
he deftly avoided its application.  It was also recognised as the prevailing
English law, and applied, by various Canadian courts: see *Northern
Construction Co.* v. *British Columbia Hydro and Power Authority* (1970)
75 W.W.R. 21; *Vernon* v. *Board of Education for the Borough of North
York* (1975) 9 O.R.(2d) 613; *Reg. in Right of Canada* v. *Hawker Siddeley
Canada Ltd.* (1976) 73 D.L.R. (3d) 453.  In New Zealand, too, the
Court of Appeal held that to attract privilege its use in reasonably
apprehended litigation need not be the only purpose of the document
(though it must be an appreciable purpose): *Konia* v. *Morley* [1976] 1
N.Z.L.R. 455.  *Ankin* v. *London and North Eastern Railway Co.* [1930]
1 K.B. 527 and *Ogden* v. *London Electric Railway Co.,* 49 T.L.R. 542
being English Court of Appeal decisions, the law declared there was
binding on, and applied by the majority of, the Court of Appeal in the
instant case.

The earlier authorities are, however, by no means so categorical; and
the views of Hamilton L.J. in *Birmingham and Midland Motor Omnibus
Co. Ltd.* v. *London and North Western Railway Co.* [1913] 3 K.B. 850
were preferred, though not as a matter of decision, by the majority of the
members of the Appellate Committee in *Alfred Crompton Amusement
Machines Ltd.* v. *Customs and Excise Commissioners (No. 2)* [1974]
A.C. 405; and it was the *Birmingham* case which was the foundation of
*Ankin* and *Ogden.*  In *Grant* v. *Downs,* 135 C.L.R. 674, the majority of
the High Court in Australia took those earlier authorities into account
and also the doubt that had been thrown on the more recent ones in
*Alfred Crompton Amusement Machines Ltd.* v. *Customs and Excise
Commissioners (No. 2)*; and, weighing various other considerations, held
that to attract privilege the use of the document for reasonably anticipated
litigation must be its sole purpose.  Barwick C.J., at p. 677, " Having
considered the decisions, the writings and the various aspects of the
public interest which claim attention," thought that use of the document
either for legal advice or to be used in reasonably apprehended litigation
had to be the dominant purpose in order to attract privilege from dis-
closure.  The Law Reform Committee, in its Sixteenth Report (Privilege
in Civil Proceedings) (1967) (Cmnd. 3472) thought that, under the sub-
sisting English law, the test of privilege was that the document should
be " wholly or mainly " for the purpose of preparing one's case in
litigation then pending or contemplated (para. 17); and, although I do not
myself consider that that was the prevailing law (nor, indeed, I think, did
Lord Denning M.R. in the instant case, for all that he favoured it as the
test), the views of such an eminent committee are entitled to great
respect.

The upshot of this cursory conspectus of the authorities is that your
Lordships are, in my view, free to consider the issue on grounds of
principle and convenience, unembarrassed by previous authority, which,
rather, constitutes diverse springboards.  The appellant argues that the

A.C.                     **Waugh v. British Railways Board (H.L.(E.) )**          Lord Simon
                                                                                 of Glaisdale

A  correct test is that preferred by the majority of the High Court in *Grant* v. *Downs,* 135 C.L.R. 674, namely the sole purpose; or, alternatively, that preferred by Barwick C.J. in that case, namely the dominant purpose. The respondents argue that *Ankin* v. *London and North Eastern Railway Co.* [1930] 1 K.B. 527 and *Ogden* v. *London Electric Railway Co.,* 49 T.L.R. 542, were correctly decided, and that it is sufficient to attract privilege from disclosure if one of the purposes

B  (however subsidiary) is with a view to apprehended litigation.

The issue exemplifies a situation which frequently causes difficulties—where the forensic situation is covered by two valid legal principles which point each to a different forensic conclusion. Here, indeed, both principles subserve the same legal end—the administration of justice. The first principle is that the relevant rules of law should be applied to the

C  whole body of relevant evidence—in other words, in principle all relevant evidence should be adduced to the court. The report in question in this appeal undoubtedly contains information relevant to the matters in issue in the litigation here. The first principle thus indicates that it should be disclosed, so that the appellant may make use of it if she wishes.

The second general principle arises out of the adversary (in contradiction to the inquisitorial) system of administration of justice. Society

D  provides an objective code of law and courts where civil contentions can be decided. But it contents itself with so providing a forum and a code (and nowadays some finance for those who could not otherwise get justice). Having done so much, society considers that it can safely leave each party to bring forward the evidence and argument to establish his/her case, detaching the judge from the hurly-burly of contestation

E  and so enabling him to view the rival contentions dispassionately. It is true that this does not in itself give rise to legal professional privilege. Sir Thomas More, before his time for judicial and administrative responsibility, had a different system for the Utopians:

"For they thinke it most mete, that euery man shuld pleade his owne matter, and tell the same tale before the iudge, that he would tel to

F  his man of lawe. So shall there be lesse circumstaunce of wordes, and the trwth shal soner cum to light; whiles the iudge with a discrete iudgement doth waye the wordes of hym whom no lawier hath instruct with deceit; and whiles he helpeth and beareth out simple wittes agaynst the false and malicious circumuertions of craftie chyldren." (*Utopia,* 1516, tr. Ralph Robinson, 1551, Bk. 2, [ch. 7].)

G  This is all very fine; but that great moralist and master of common sense, Dr. Johnson, saw the snag. Quite apart from the descent of the judge into the arena:

"As it rarely happens that a man is fit to plead his own cause, lawyers are a class of the community, who, by study and experience, have acquired the art and power of arranging evidence, and of

H  applying to the points at issue what the law has settled. A lawyer is to do for his client all that his client might fairly do for himself, if he could." (Boswell, *Life of Johnson,* ed. Birkbeck Hill (1950), vol. v, 26).

So the adversary system calls for legal representation if it is to operate
with such justice as is vouchsafed to humankind.                          A

    , This system of adversary forensic procedure with legal professional
advice and representation demands that communications between lawyer
and client should be confidential, since the lawyer is for the purpose of
litigation merely the client's alter ego. So too material which is to go
into the lawyer's (i.e. the client's) brief or file for litigation. This is the
basis for the privilege against disclosure of material collected by or on      B
behalf of a client for the use of his lawyer in pending or anticipated
litigation: see Cotton L.J. in *Southwark and Vauxhall Water Co.* v.
*Quick* (1878) 3 Q.B.D. 315, 321–322; *D.* v. *National Society for the
Prevention of Cruelty to Children* [1978] A.C. 171, 231; Sixteenth
Report of the Law Reform Committee, paras. 17–21. Apart from
the limited exception of some expert evidence, for which the Rules        C
of the Supreme Court make express provision (Ord. 38, r. 37), a
party in civil litigation is not entitled to see the adversary's proofs of
what his witnesses will say at the trial; there has been no suggestion
that he should be so entitled; and any such development would require
the most careful consideration based on widespread consultation. The
report in question in this appeal undoubtedly contains material collected
by or on behalf of the respondents for the use of their solicitors in anti-   D
cipated litigation. The second principle thus indicates that the respon-
dents are entitled to claim that it is confidential as between themselves
and their solicitors and that they are not bound to disclose it.

    . Historically, the second principle—that a litigant must bring forward
his own evidence to support his case, and cannot call on his adversary
to make or aid it—was fundamental to the outlook of the courts of
common law. The first principle—that the opponent might be compelled   E
to disclose relevant evidence in his possession—was the doctrine of the
Chancery, a court whose conscience would be affronted by forensic success
contrary to justice obtained merely through the silent non-cooperation
of the defendant (see Y.B. 9 Ed. IV, Trin. 9), and which therefore had
some inclination to limited inquisitorial procedures. The conflict between
the Chancery and the courts of common law was, here as elsewhere,       F
ultimately resolved by compromise and accommodation.

    I can see no intrinsic reason why the one principle rather than the
other should prevail in a situation where they are counter-indicative.
Neither is absolute: both are subject to numerous exceptions. For
example, if a document protected by legal professional privilege (or
secondary evidence of it) has been obtained by the opposite party
independently—even through the default of the legal adviser—even by     G
dishonesty—either will probably be admissible: *Phipson on Evidence*,
12th ed. (1976), p. 241, para. 584; Sixteenth Report of the Law Reform
Committee, para. 31. The numerous exceptions to the principle that all
relevant evidence should be disclosed arise partly from historical reasons
(the tensions between the courts of common law, where questions of
fact were tried, and the Court of Chancery, where the remedy of discovery  H
was developed), partly from considerations of justice, partly from wider
social considerations: see *D.* v. *National Society for the Prevention of
Cruelty to Children* [1978] A.C. 171, at pp. 231 et seq. Thus the

A.C.                **Waugh v. British Railways Board (H.L.(E.))**      Lord Simon
                                                                     of Glaisdale

A  historical exclusion of hearsay evidence, " the best evidence " rule and
"without prejudice" communications are examples of exceptions to
the principle of adduction of all relevant evidence.  So too is the rule
excluding, in general, evidence going merely to the discredit of a witness,
even though the credibility of the witness may be decisive of the case.
But the exception which most nearly touches the issue facing your
Lordships was cogently invoked by James L.J. in this very connection by James L.J.
B  in *Anderson* v. *Bank of British Columbia*, 2 Ch.D. 644, 656:

> " . . . as you have no right to see your adversary's brief, you have
> no right to see that which comes into existence merely as the materials
> for the brief."

The adversary's brief will contain much relevant material; nevertheless,
C  you cannot see it because that would be inconsistent with the adversary
forensic process based on legal representation.  I would, though, draw
attention to the word " merely " in James L.J.'s dictum.

There *is*, then, no *a priori* reason why the one general principle should
yield to the other.  But in my judgment each party's main contention
would virtually result in the total exclusion of the principle relied on by
the other.  The rule in *Ogden* in effect means that reports such as that
D  in the instant case will always be excluded, because it is unlikely that
there is not in such circumstances even the subsidiary purpose of inform-
ing the legal advisers.  On the other hand, to enjoin that privilege can
only be claimed if the information of legal advisers is the sole purpose
of the report will in effect mean that such reports must always be dis-
closed, because it is unlikely that in such circumstances there will not be
E  even the subsidiary purpose of ascertaining whether the system of work
can be improved.  Indeed, in this type of report causation and fault can
hardly be kept apart.

Your Lordships will therefore, I apprehend, be seeking some inter-
mediate line which will allow each of the two general principles scope
in its proper sphere.  Various intermediate formulae as a basis for
the privilege have been canvassed in argument before your Lordships,
F  most based on some authority—the obtaining of legal advice was " an
appreciable purpose "; " a substantial purpose "; " *the* substantial
purpose "; it was " wholly or mainly " for that purpose; that was its
" dominant " purpose; that was its " primary " purpose.

Some of these are in my view too vague.  Some give little or no
scope to the principle of open litigation with the minimum exclusion of
G  relevant evidence.  The one that appeals most to me is " dominant "
purpose, as it did to Barwick C.J. in *Grant* v. *Downs*, 135 C.L.R. 674.
It allows scope to each of the governing principles.  It seems to me less
quantitative than " mainly "; and I think it would be easier to apply—
the law is already cognisant of the concept of a dominant purpose—in
the law of conspiracy, for example (see *Crofter Hand Woven Harris
H  Tweed Co. Ltd.* v. *Veitch* [1942] A.C. 435, especially at pp. 445
(Viscount Simon L.C.), 452 (Viscount Maugham) ), and in the law as to
fraudulent preference in bankruptcy (see *Halsbury's Laws of England*,
4th ed., vol. 3 (1973), pp. 496, 499, paras. 908, 913).

538

I would therefore overrule *Ankin* v. *London and North Eastern Railway Co.* [1930] 1 K.B. 527 and *Ogden* v. *London Electric Railway Co.*, 49 T.L.R. 542.    A

My noble and learned friend on the Woolsack has already cited the crucial passages from the affidavit of Mr. Hastings. These show that the procuring of legal advice or preparation for litigation was not the dominant purpose of the report. It follows that the claim for legal professional privilege fails, and the report must be disclosed.    B

Accordingly, I would allow the appeal.

LORD EDMUND-DAVIES. My Lords, the circumstances of the fatal accident on May 4, 1976, giving rise to this litigation have already been related by my noble and learned friend Lord Wilberforce. A copy of the short report sent the same day by the respondent board to the    C
Ministry of Transport in accordance with section 6 of the Regulation of Railways Act 1871 has been furnished to the appellant's solicitors. They have also been supplied with a copy of the report of October 29, 1976, prepared by the Railway Inspectorate of the Department of Transport. But what has not been disclosed is the May 6, 1976, report based upon a joint internal inquiry conducted by the board's personnel. The importance to the appellant of such a report, made only two days after    D
the accident and when the memory of witnesses were fresh, is manifest. But from the outset disclosure of its contents has been resisted. In their list of documents the board claimed that they were

". . . documents which came into existence and were made by the defendants or their officers or servants after this litigation was in contemplation and in view of such litigation for the purpose of    E
obtaining for and furnishing to the solicitor of the defendants evidence and information as to the evidence which will be obtained or otherwise for the use of the said solicitor to enable him to conduct the defence in this action or to advise the defendants."

But that the reports referred to were not made solely for litigation purposes emerged when the board, being nevertheless pressed for dis-    F
closure of the internal inquiry report, responded by an affidavit sworn by Mr. Hastings, assistant to the general manager of their Eastern Region. So important is it that I must quote from it at some length:

" 6. It has long been the practice of the board and its predecessors to require that returns and reports on all accidents occurring on the railway and joint internal departmental inquiries into the causes of    G
the said accident be made by the local officers of the board who would forward them to their superiors in order to assist in establishing the causes of such accidents. 7. Such reports and the statements of witnesses to such accidents are made for the purposes mentioned in paragraphs 3 and 6 of this affidavit and equally for the purpose of being submitted to the board's solicitor as material upon which    H
he can advise the board upon its legal liability and for the purpose of conducting on behalf of the board any proceedings arising out of such accidents. 8. This system of reporting accidents and making

A.C.              Waugh v. British Railways Board (H.L.(E.) )      Lord Edmund-Davies

A
    joint internal departmental inquiries into the causes of the said accidents and laying down the necessary instructions to the relevant staff to do so for the purposes aforesaid continues today.  9. It is commonly anticipated by the board that: (a) where an employee of the board suffers personal injury or death at work or (b) where a passenger suffers loss [or] personal injury or death while on or about the railway a claim for damages will be made against the

B
board and proceedings will ensue if liability is repudiated.  The present action is brought as the result of a fatal accident suffered at work by the late husband of the plaintiff and it was anticipated from the very outset that a claim for damages would almost certainly ensue.  10. The documents in this action namely the reports made by the board's officers and servants and the report referred to in correspondence as the internal inquiry report for which the defendants

C
have claimed privilege in part 2 of the first schedule of their list of documents dated November 11, 1977, came into existence by reason of the fact that the appropriate officer, in this case the divisional manager at Newcastle, in accordance with long standing practice was required to and did so call for such reports and statements. One of the principal purposes for so doing was so that they could

D
be passed to the board's chief solicitor to enable him to advise the board on its legal liability and if necessary conduct its defence to these proceedings.  11. The internal inquiry report in fact states on the face of it that it has finally to be sent to the solicitor for the purpose of enabling him to advise the board."

E
In the light of such affidavit, counsel for the appellant accepts that he cannot challenge that litigation arising out of the fatal accident was anticipated when the report of May 6, 1976, was prepared: see *Jones v. Monte Video Gas Co.* (1880) 5 Q.B.D. 556. The fact that the report states on its face that it has *finally* to be sent to the solicitor for the purpose of enabling him to advise the board cannot, however, be determinative of the outcome of this appeal, for, as the Lord President (Lord

F
Strathclyde) said in *Whitehill* v. *Glasgow Corporation*, 1915 S.C. 1015, 1017—quoted with approval by Lord Kilbrandon in *Alfred Crompton Amusement Machines Ltd.* v. *Customs and Excise Commissioners (No. 2)* [1974] A.C. 405, 435–436:

    " These words cannot alter the character of the report which is made by the employee for the purpose of informing his employers of the accident, and made at the time."

G
My Lords, in the light of their own affidavit, are the board entitled to resist disclosure?  There is a very large body of case law on the topic of legal professional privilege, much of which was reviewed in *Seabrook v. British Transport Commission* [1959] 1 W.L.R. 509 by Havers J., who quoted extensively from earlier decisions.  It would not, I think, be

H
helpful were I to make a further attempt to do that which that learned judge so admirably accomplished.  Instead, I propose to consider first whether Eveleigh L.J. and Sir David Cairns in the present case were right in holding that the earlier Court of Appeal decisions in *Birmingham*

*and Midland Motor Omnibus Co. Ltd.* v. *London and North Western
Railway Co.* [1913] 3 K.B. 850 and *Ogden* v. *London Electric Railway
Co.,* 49 T.L.R. 542 compelled them to dismiss the plaintiff's appeal from
the decision of Donaldson J. refusing disclosure.

In the *Birmingham* case Buckley L.J. (with whom Vaughan Williams
L.J. concurred) said, at p. 856:

> "It is not I think necessary that the affidavit should state that the
> information was obtained solely or merely or primarily for the
> solicitor, if it was obtained for the solicitor, in the sense of being
> procured as materials upon which professional advice should be
> taken in proceedings pending, or threatened, or anticipated."

That passage was cited with approval in *Ogden* v. *London Electric
Railway Co.,* the facts of which were strikingly similar to those of the
present case, Scrutton L.J. saying, at pp. 543–544, with reference to a
non-privileged purpose for which accident reports had been obtained:

> "It may be that that is part of the purpose of making the reports,
> but there is also the *substantial* purpose that if a writ is issued these
> are the materials that will be wanted by the solicitor conducting the
> litigation, and they are obtained for that purpose, among others, and
> as appears from the form at which we look . . . the reports are made
> on a form headed: 'For the information of the company's solicitors
> only,' which is a very important heading to have, because if you
> know that you are making a confidential report to the solicitor you
> are much more likely to state accurately what has happened than if
> you are afraid that somebody presently seeing that report may take
> proceedings against you in respect of the statements that you have
> made, which may be defamatory." (Italics added.)

I have already indicated my inability (in concurrence with Lord Denning
M.R. in the present case) to have regard to such a heading. Nevertheless,
*Birmingham and Midland Motor Omnibus Co. Ltd.* v. *London and
North Western Railway Co.* [1913] 3 K.B. 850 and *Ogden* v. *London
Electric Railway Co.,* 49 T.L.R. 542, are authorities for the proposition
that reports such as that compiled in the instant case two days after the
fatal accident are privileged even though they were obtained for other
purposes as well as to meet impending or anticipated litigation. And
they led the majority of the Court of Appeal to hold here that the
internal inquiry report need not be disclosed, Eveleigh L.J. going to the
length of saying:

> ". . . I believe that in so far as this court is concerned it has been
> firmly established that the documents in question in the present case
> are privileged. They were obtained for the purpose of being sent to
> the solicitors to serve in preparing the defendant's case for litigation
> which was anticipated. *And they would also be used for another
> very substantial and even more important purpose.* On the authori-
> ties I do not believe that this entitles me to say that the privilege
> which otherwise would have attached [to them] has been removed."
> (Italics added.)

541

A.C.                Waugh v. British Railways Board (H.L.(E.) )        Lord Edmund-Davies

A But Lord Denning M.R., in the course of his dissenting judgment, refused to be bound by such earlier Court of Appeal decisions. Instead, he adverted to the view expressed in the Sixteenth Report of the Law Reform Committee, para. 17, that

B "... it is, we think, essential ... that [a party] should be entitled to insist upon there being withheld from the court any material which came into existence ... wholly or mainly for the purpose of preparing his case in litigation then pending or contemplated by him."

Lord Denning M.R. added:

C " We should not extend it further. If material comes into being for a dual purpose—one to find out the cause of the accident—the other to furnish information to the solicitor—it should be disclosed, because it is not then ' wholly or mainly ' for litigation. On this basis all the reports and inquiries into accidents—which are made shortly after the accident—should be disclosed on discovery and made available in evidence at the trial."

Applying that test to the facts of this case, Lord Denning M.R. said:

D " The main purpose of this inquiry and report was to ascertain the cause of the accident and to prevent further accidents or similar occurrences. Its nearby purpose was to put before the departmental inspectorate. Its far-off purpose was to put before the solicitors of the board, should a claim be made and litigation ensue."

E My Lords, it will later emerge how closely I am at one with Lord Denning M.R. in this matter. I must, however, say that I am in respectful agreement with the view adopted by Eveleigh L.J. and Sir David Cairns that *Birmingham and Midland Motor Omnibus Co. Ltd.* v. *London and North Western Railway Co.* [1913] 3 K.B. 850 and *Ogden* v. *London Electric Railway Co.,* 49 T.L.R. 542, were binding upon the Court of Appeal and that none of the many other cases cited—such as *Jones* v. *Great Central Railway Co.* [1910] A.C. 4, *Alfred Crompton Amusement* F *Machines Ltd.* v. *Customs and Excise Commissioners (No. 2)* [1974] A.C. 405, *Seabrook* v. *British Transport Commission* [1959] 1 W.L.R. 509 and *Longthorn* v. *British Transport Commission* [1959] 1 W.L.R. 530— enabled them to escape from that thraldom. In these circumstances, I regard it as fortunate for justice that an appeal has reached this House, for in my judgment a grievous wrong might have been done had Master G Bickford Smith's original order in favour of disclosure not been finally upheld.

It is for the party refusing disclosure to establish his right to refuse. It may well be that in some cases where that right has in the past been upheld the courts have failed to keep clear the distinction between (a) communications between client and legal adviser, and (b) communications between the client and third parties, made (as the Law Reform Committee H put it)

"... for the purpose of obtaining information to be submitted to the client's professional legal advisers for the purpose of obtaining advice

542
Lord Edmund-Davies      **Waugh v. British Railways Board (H.L.(E.))**      [1980]

upon pending or contemplated litigation." (Sixteenth Report, para. 17 (c).)

A

In cases falling within (a), privilege from disclosure attaches to communications for the purpose of obtaining legal advice and it is immaterial whether or not the possibility of litigation were even contemplated, Kindersley V.-C. saying in *Lawrence* v. *Campbell* (1859) 4 Drew. 485, 490:

B

> " . . . it is not now necessary as it formerly was for the purpose of obtaining production that the communications should be made either during or relating to an actual or even to an expected litigation. It is sufficient if they pass as professional communications in a professional capacity."

But in cases falling within (b) the position is quite otherwise. Litigation, apprehended or actual, is its hallmark. Referring to "the rule which protects confidential communications from discovery as regards the other side," Sir George Jessel M.R. said in *Anderson* v. *Bank of British Columbia*, 2 Ch.D. 644, 649:

C

> "The object and meaning of the rule is this: that as, by reason of the complexity and difficulty of our law, litigation can only be properly conducted by professional men, it is absolutely necessary that a man, in order to prosecute his rights or to defend himself from an improper claim, should have recourse to the assistance of professional lawyers, and it being so absolutely necessary, it is equally necessary, to use a vulgar phrase, that he should be able to make a clean breast of it to the gentleman whom he consults with a view to the prosecution of his claim, or the substantiating his defence against the claim of others; that he should be able to place unrestricted and unbounded confidence in the professional agent, and that the communications he so makes to him should be kept secret, unless with his consent (for it is his privilege, and not the privilege of the confidential agent), that he should be enabled properly to conduct his litigation. That is the meaning of the rule."

D

E

F

And in the Court of Appeal James L.J. summed up the position, at p. 656, by speaking succinctly of

> " . . . an intelligible principle, that as you have no right to see your adversary's brief, you have no right to see that which comes into existence merely as the materials for the brief."

G

Preparation with a view to litigation—pending or anticipated—being thus the essential purpose which protects a communication from disclosure in such cases as the present, what in the last resort is the touchstone of the privilege? Is it sufficient that the prospect of litigation be merely one of the several purposes leading to the communication coming into being? And is that sufficient (as Eveleigh L.J. in the present case held) despite the fact that there is also " another . . . and even more important purpose " ? Is it enough that the prospect of litigation is a *substantial* purpose, though there may be others equally substantial? Is an

H

543

A.C.          Waugh v. British Railways Board (H.L.(E.) )     Lord Edmund-Davies

A *appreciable* purpose sufficient?  Or does it have to be *the main* purpose?
Or *one* of its *main* purposes (as in *Ogden* v. *London Electric Railway
Co.,* 49 T.L.R. 542)?  Ought your Lordships to declare that privilege
attaches only to material which (in the words of Lord Denning M.R.)
" comes within the words ' wholly or mainly ' for the purpose of
litigation " ?  Or should this House adopt the majority decision of the
High Court of Australia in *Grant* v. *Downs,* 135 C.L.R. 674, that legal
B professional privilege must be confined to documents brought into
existence for the *sole* purpose of submission to legal advisers for advice
or for use in legal proceedings?

An affirmative answer to each of the foregoing questions can be
supported by one or more of the many reported decisions.  And so can
a negative answer.  But no decision is binding upon this House, and
your Lordships are accordingly in the fortunate position of being free to
C choose and declare what is the proper test.  And in my judgment we
should start from the basis that the public interest is, on balance, best
served by rigidly confining within narrow limits the cases where material
relevant to litigation may be lawfully withheld.  Justice is better served
by candour than by suppression.  For, as it was put in the *Grant* v.
*Downs* majority judgment, at p. 686: " . . . the privilege . . . detracts
D from the fairness of the trial by denying a party access to relevant
documents or at least subjecting him to surprise."

Adopting that approach, I would certainly deny a claim to privilege
when litigation was merely one of several purposes of equal or similar
importance intended to be served by the material sought to be withheld
from disclosure, and a fortiori where it was merely a minor purpose.
E On the other hand, I consider that it would be going too far to adopt
the " *sole* purpose " test applied by the majority in *Grant* v. *Downs,*
which has been adopted in no United Kingdom decision nor, as far as
we are aware, elsewhere in the Commonwealth.  Its adoption would
deny privilege even to material whose outstanding purpose is to serve
litigation, simply because another and very minor purpose was also being
F served.  But, inasmuch as the *only* basis of the claim to privilege in such
cases as the present one is that the material in question was brought
into existence for use in legal proceedings, it is surely right to insist
that, before the claim is conceded or upheld, such a purpose must be
shown to have played a paramount part.  Which phrase or epithet should
be selected to designate this is a matter of individual judgment.  Lord
G Denning M.R., as we have seen, favoured adoption of the phrase employed
in the Law Reform Committee's Sixteenth Report, viz., " material which
came into existence . . . *wholly or mainly* " for the purpose of litigation
(para. 17).  " Wholly " I personally would reject for the same reason as
I dislike " solely," but " mainly " is nearer what I regard as the prefer-
able test.  Even so, it lacks the element of clear paramountcy which
H should, as I think, be the touchstone.  After considerable deliberation, I
have finally come down in favour of the test propounded by Barwick
C.J. in *Grant* v. *Downs,* 135 C.L.R. 674, in the following words, at
p. 677:

"Having considered the decisions, the writings and the various
aspects of the public interest which claim attention, I have come to
the conclusion that the court should state the relevant principle as
follows: a document which was produced or brought into existence
either with the *dominant* purpose of its author, or of the person or
authority under whose direction, whether particular or general, it
was produced or brought into existence, of using it or its contents
in order to obtain legal advice or to conduct or aid in the conduct
of litigation, at the time of its production in reasonable prospect,
should be privileged and excluded from inspection." (Italics added.)

*Dominant* purpose, then, in my judgment, should now be declared by
this House to be the touchstone. It is less stringent a test than " sole "
purpose, for, as Barwick C.J. added, 135 C.L.R. 674, 677:

". . . the fact that the person . . . had in mind other uses of the
document will not preclude that document being accorded privilege,
if it were produced with the requisite dominant purpose."

Applying such test to the facts of the present case, we have already
seen that privilege was claimed in Mr. Hastings's affidavit on several
grounds. Thus, the report of May 6, 1976, was produced in accordance
with the long-standing practice of the board regarding " accidents occur-
ring on or about any railway . . . in order to assist in establishing the
causes of such accidents," and this whether or not (so your Lordships
were informed) any personal injuries were sustained and even where
there was no prospect of litigation ensuing. This particular report was
called for in accordance with such practice and:

"*One of the principal purposes* for so doing was so that they could
be passed to the board's chief solicitor to enable him to advise the
board on its legal liability and if necessary conduct its defence to
these proceedings." (Italics added.)

Were the " sole purpose " test adopted and applied, on the board's own
showing their claim to privilege must fail. Then what of the " dominant
purpose " test which I favour? Dominance again is not claimed by the
board, but merely that use in litigation was " one of the principal
purposes." Such moderation is only to be expected in the face of a
claim arising out of a fatal accident. Indeed, the claims of humanity
must surely make the dominant purpose of any report upon an accident
(particularly where personal injuries have been sustained) that of discover-
ing what happened and why it happened, so that measures to prevent
its recurrence could be discussed and, if possible, devised. And, although
Barwick C.J. in *Grant* v. *Downs,* 135 C.L.R. 674, observed, at p. 677, that

". . . the circumstance that the document is a ' routine document '
will not be definitive. The dominant purpose of its production may
none the less qualify it for professional privilege,"

the test of dominance will, as I think, be difficult to satisfy when inquiries
are instituted and reports produced automatically whenever any mishap
occurs, whatever its nature, its gravity, or even its triviality.

A.C.          Waugh v. British Railways Board (H.L.(E))          Lord Edmund-Davies

A   My Lords, if, as I hold, "*dominant* purpose" be the right test of privilege from disclosure, it follows that the board's claim to privilege must be disallowed, and the same applies if the "*sole* purpose" test be applied.   I would therefore allow this appeal and restore the order of Master Bickford Smith in favour of disclosure.

B   LORD RUSSELL OF KILLOWEN.   My Lords, it has already been demonstrated by my noble and learned friend Lord Wilberforce that if, in order to attract privilege from its production, it is necessary that the joint internal report should owe its genesis to either the sole or the dominant purpose that it should be used for the purpose of obtaining legal advice in possible or probable litigation, the evidence in this case falls short of both those standards.   At the conclusion of the arguments in this appeal I was minded, while agreeing that anything less than the standard of the dominant purpose would not suffice to support a claim for privilege from production, to prefer the higher standard of the sole purpose, in line with as I understand them the judgments of the majority in the High Court of Australia in *Grant* v. *Downs*, 135 C.L.R. 674.   It appeared to me that such a standard had the merit of greater simplicity in a decision on a claim for privilege from production, as being a line easier to draw and to apply to the facts of a particular case.   However on reflection I am persuaded that the standard of sole purpose would be in most, if not all, cases impossible to attain, and that to impose it would tilt the balance of policy in this field too sharply against the possible defendant.   Moreover to select the standard of dominant purpose is not to impose a definition too difficult of measurement.   It is to be met with in other fields of the law, of which I need instance only the question in bankruptcy law whether there has been a fraudulent preference of a creditor.

C

D

E

In summary, therefore, my Lords, I am in agreement with the speech of my noble and learned friend Lord Wilberforce, and would allow this appeal and order the production to the plaintiff of the joint internal report.

F

LORD KEITH OF KINKEL.   My Lords, I have had the advantage of reading in draft the speech of my noble and learned friend Lord Wilberforce.   I agree with it, and accordingly I too would allow the appeal.

*Appeal allowed with costs.*

G

Solicitors: *Robin Thompson & Partners; Evan Harding.*

M. G.

H