United States District Court
Southern District of New York

Virginia L. Giuffre,

        Plaintiff,                  Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

        Defendant.
_____/

**PLAINTIFF, VIRGINIA GIUFFRE'S CONSOLIDATED REPLY IN OPPOSITION TO DEFENDANT'S MOTIONS TO DISQALIFY PROFESSOR CASSELL AND MR. EDWARDS FROM REPRESENTING MS. GIUFFRE**

Plaintiff Virginia L. Giuffre, by and through her undersigned counsel, respectfully submits this Consolidated Reply in Opposition to Defendant's Letters, Construed as Motions to Disqualify Professor Paul Cassell and Mr. Edwards from Representing Ms. Giuffre. For the reasons set forth below, this Court should deny both of Defendant's Letter Motions, and grant Professor Cassell and Mr. Edward's Motions to Appear Pro Hac Vice.

I. PROCEDURAL HISTORY

Upon Defendant's April 6, 2016, Letter in opposition to Professor Cassell's Motion for Appearance Pro Hac Vice, the Court set a hearing for April 13, 2016, on the issue of whether Ms. Giuffre will be allowed to have Professor Paul Cassell of the University of Utah College of Law enter an appearance on her behalf in this matter. *See* April 6, 2016 Order (DE 84). The Court directed that the letter be construed as a motion, allowing Ms. Giuffre to file a reply by Monday, April 11, 2016. *Id*. On April 8, 2016, Defendant filed a second letter motion contesting the Motion for Appearance Pro Hac Vic filed by Mr. Bradley Edwards. (DE 88). To conserve judicial resources, Ms. Giuffre hereby files a consolidated reply to both letters. Because some of

1

the representations and arguments in the letters opposing Professor Cassell and Bradley Edward's motion for admission pro hac vice appear to be inaccurate, this consolidated reply is being filed to clarify a few points of law and fact.

## II. ARGUMENT

For many months now, Professor Cassell and Mr. Edwards have actively worked to help represent Ms. Giuffre in this case, although not in a counsel of record capacity. Recently, it has become apparent that it may be useful for Ms. Giuffre if they became counsel of record in this case.

In this case, Ms. Giuffre has strong reasons for wanting Professor Cassell to be part of her legal team. Since returning to full time law teaching in 2007, Professor Cassell has developed a specialized expertise in crime victims' rights, an area in which he has co-written a leading law school casebook. *See* Beloof, Cassell & Twist, *Victims in Criminal Procedure* (3d ed. North Carolina Academic Press 2010). He has also litigated crime victims' rights matters before federal courts around the country, including the United States Supreme Court. *See, e.g., Paroline v. United States*, 134 S. Ct. 1710 (2014) (arguing before the Supreme Court on behalf of "Amy," a child pornography victim seeking restitution); *In re Antrobus*, 519 F.3d 1123 (10th Cir. 2008) (arguing for opportunity for victim to deliver a victim impact statement). His previous experience will be valuable to Ms. Giuffre as this case proceeds. Professor Cassell is also located in Salt Lake City, Utah, which is much closer to the location of many projected depositions in this case. And perhaps most importantly, Professor Cassell has been working closely with Ms. Giuffre as her attorney for nearly two years on issues related to her sexual abuse by Jeffrey Epstein and his co-conspirators -- including active work in legal research and other aspects of this case. Professor Cassell is a valuable part of Ms. Giuffre's legal team.

Likewise, for many months now, Mr. Edwards has actively worked to help represent Ms. Giuffre in this case, although not in a counsel of record capacity. Recently, it has also become apparent that it will be useful for Ms. Giuffre if Mr. Edwards became counsel of record in this case. In this case, Ms. Giuffre has strong reasons for wanting Mr. Edwards to be part of her legal team. Mr. Edwards is an attorney in Florida, who has a focus on representing crime victims, including sex offense victims. He is a board-certified civil trial attorney. He was been selected as one of the National Trial Lawyer Association's "Top 40 Under 40" and the National Academy of Personal Injury Attorney's Top 10 Under 40. His previous experience will be valuable to Ms. Giuffre as this case proceeds. And perhaps most important, Ms. Edwards has been working closely with Ms. Giuffre as her attorney for years on issues related to her sexual abuse by Jeffrey Epstein and his co-conspirators -- including active work in legal research and other aspects of this case. Mr. Edwards has worked as lead trial counsel on related cases and his knowledge of the witnesses and facts of the case is irreplaceable.

Defendant notes that Professor Cassell and Mr. Edwards have been involved with defamation litigation against Alan Dershowitz in Florida, *Edwards and Cassell v. Dershowitz*, No. 15-000072 (17th Cir. Court Fla.).  The parties to that lawsuit have jointly settled the claims, and the dismissal of the case should be entered in the next few days.

As the Court may be aware from earlier pleadings, that defamation action arose out of Professor Cassell and Bradley Edward's representation of Ms. Giuffre in a long-running pro bono crime victims' rights act case Professor Cassell is handling through the University of Utah appellate clinic, *Jane Doe 1 and Jane Doe 2 v. United States*, No. 9:08-cv-80736 (filed S.D. Fla. 2008).

Professor Cassell and Mr. Edwards represent not only Jane Doe 1 and 2 in that case, but also Ms. Giuffre – who attempted to join the action as "Jane Doe 3." While Judge Marra denied her motion to join, he specifically held that Jane Doe 3 "can participate in this litigated effort to vindicate the rights of similarly situated victims" (DE # 324 at 8) – thereby recognizing the important rights that he was asserting on behalf of Ms. Giuffre. On behalf of the Jane Doe 1 and Jane Doe 2, Professor Cassell and Bradley Edwards recently filed a 60-page summary judgment motion (DE #361). As that summary judgment motion makes clear, the claims raised in that case concern whether the U.S. Attorney's Office for the Southern District of Florida complied with its obligations to victims under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771.

Contrary to the suggestions of the Defendant here, the separate issues being litigated in Florida create no "conflict of interest" to Professor Cassell and Mr. Edwards' representation of Ms. Giuffre in this matter. In addition, Judge Marra has recently referred the parties to mediation at the end of May. If the mediation is successful, the case will be resolved.

Defendant appears to be taking the position that Professor Cassell and Bradley Edwards are somehow "witnesses" in this case. *See* Defendant's April 6, 2016 Letter at p. 2; Defendant's April 8, 2016 Letter at p. 3. That suggestion is meritless. Defendant seems to be arguing the far-fetched position that an attorney who works with a client automatically becomes a "witness" to those events and therefore separate counsel must be hired for any other legal needs. That is not the law.

In any event, regardless of what may happen at trial, it is surprising to see the Defendant has lodged an objection to Professor Cassell and Mr. Edward's appearance in this case at this pre-trial stage. As Defendant seems to concede, the case law is clear that any concerns about an attorney who might be a witness at trial only apply at trial. *See Williams v. Rosenblatt Sec. Inc.*,

4

No. 14-CV-4390 (JGK), 2016 WL 590232, at *8 (S.D.N.Y. Feb. 11, 2016) ("The [advocate-witness] rule does not bar counsel's participation in pre-trial proceedings."). As this Court has previously explained, "[t]he concerns underlying [the advocate-witness rule] arise out of an attorney's presence at trial. Allowing an attorney to continue his representation pre-trial does nothing to undermine those interests, and protects the clients' right to choose their own counsel." *Amusement Indus., Inc. v. Stern*, 657 F. Supp. 2d 458, 461 (S.D.N.Y. 2009) (*quoting Conigliaro v. Horace Mann School,* 1997 WL 189058, at *4 (S.D.N.Y. Apr. 17, 1997) (citations omitted)).

As a result, "courts in this District [i.e., the Southern District of New York] commonly deny disqualification motions." *Gormin v. Hubregsen*, No. 08CIV.7674(PGG), 2009 WL 508269, at *3 (S.D.N.Y. Feb. 27, 2009) (citing *Ritchie,* 2008 WL 4178152 at *14; *Stratavest Ltd. v. Rogers,* 903 F.Supp. 663, 668 (S.D.N.Y.1995) (Sweet, J.) ("it is too early at this point in the proceeding [*i.e.,* during discovery] to determine [whether counsel's testimony would be necessary]"; *McDonald v. Hammons,* 129 F.3d 114 (2d Cir.1997) (the need to disqualify counsel "frequently only becomes clear at the conclusion of the underlying litigation"); *Norman Reitman Co. v. IRB–Brasil Resseguros S.A.,* No. 01 Civ. 0265(RCC), 2001 WL 1132015, at *4 (S.D.N.Y. Sept.25, 2001) (denying motion to disqualify where "parties have just begun discovery and the case will not be ready . . . for trial for some time"); *Rosefield v. Orentreich,* No. 98 Civ. 2721(TPG), 1998 WL 567750, at *5–6 (S.D.N.Y. Sept.4, 1998) (denying motion to disqualify where it was not clear that case would proceed to trial or that counsel would be called to testify; "too much remains unknown")).

Courts have recognized that "[d]isqualification motions have become increasingly popular tools of the litigation process, being used ... for purely strategic purposes." *Laker Airways Ltd. v. Pan Am. World Airways*, 103 F.R.D. 22, 28 (D.D.C. 1984) (denying motion to

disqualify counsel). "Disqualification motions are subject to abuse for tactical purposes" resulting in "complex satellite litigation extraneous to the case before the court." *Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp. 2d 449, 455 (S.D.N.Y. 2000) (denying motion to disqualify counsel). Indeed, "courts have in recent years become more and more skeptical of motions to disqualify counsel, and they now approach them with cautious scrutiny." *Laker Airways Ltd.,* 103 F.R.D. at 28. *See also Ragdoll Prods. (UK) Ltd. v. Wal–Mart Stores, Inc.*, No. 99 CV 2101, 1999 WL 760209, at *1 (S.D.N.Y. Sept. 27, 1999) (holding that motions to disqualify are "subject to strict scrutiny").

In a civil case, constitutional considerations are at stake in a client's right to choose their counsel. "An individual's right to select an attorney who he believes is most capable of providing competent representation implicates both the First Amendment guarantees of freedom of association . . . and will not yield unless confronted with some overriding competing public interest." *Matter of Abrams*, 62 N.Y.2d 183, 196, 465 N.E.2d 1, 7-8, 476 N.Y.S.2d 494, 500-01 (N.Y. Ct. Apps. 1984).

Furthermore, "'[a] defendant's right to the counsel of his choice includes the right to have an out-of-state lawyer admitted *pro hac vice*.'" *United States v. Ries,* 100 F.3d 1469, 1471 (9th Cir.1996) (quoting *United States v. Lillie,* 989 F.2d 1054, 1056 (9th Cir.1993)). Thus, "a decision denying a *pro hac vice* admission necessarily implicates constitutional concerns." *Panzardi–Alvarez v. United States,* 879 F.2d 975, 980 (1st Cir.1989) (citation omitted).*United States v. Gonzalez-Lopez*, 399 F.3d 924, 929 (8th Cir. 2005), *aff'd and remanded,* 548 U.S. 140, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006).

Weighed against these compelling considerations, Defendant offers speculation about possible conflicts of interest (with whom is never specified) or breaches of ethical

6

responsibilities (in what way is unclear). But the overriding impression left by Defendant's motion is that she simply doesn't want to have Professor Cassell and Mr. Edwards to be a part of the opposing legal team. Her desire is, of course, no basis to deny the pending pro hac vice motion. *See Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 441 (1985) (Brennan, J., concurring) ("the tactical use of attorney-misconduct disqualification motions is a deeply disturbing phenomenon in modern civil litigation. When a trial court mistakenly disqualifies a party's counsel as the result of an abusive disqualification motion, the court in essence permits the party's opponent to dictate his choice of counsel.").

Finally, perhaps recognizing the lack of support for her position that disqualification is required, as a fallback position, Defendant asks the Court to "modify" the existing protective order to restrict Professor Cassell and Mr. Edwards from receiving any material designated as confidential in this case. *See* Defendant's April 6, 2016 Letter at p. 4; Defendant's April 8, 2016 Letter at p. 54. Professor Cassell and Mr. Edwards have been actively working on this case (although not as a counsel of record) since its inception. Accordingly, the Protective Order (DE 62) currently permits material to be shared with them:

> CONFIDENTIAL documents, materials, and/or information (collectively "CONFIDENTIAL INFORMATION") shall not, without consent of the party producing it or further Order of the Court, be disclosed *except that* such information may be disclosed to … attorneys actively working on this case.

Protective Order (DE 62), at ¶5(a).

As "attorneys actively working on this case," the Protective Order allows Professor Cassell and Mr. Edwards access to confidential information. Defendant has long been aware of Professor Cassell and Mr. Edwards' involvement in this case. Ms. Giuffre's Privilege Log, served on March 16, 2016, specifically communicates this fact by listing all of the attorneys

7

working on the above-captioned matter -- a list that includes both Professor Cassell and Mr. Edwards. Accordingly, Defendant's request to modify the Protective Order is untimely.

As Defendant must surely recognize, modifying the order would effectively disable Professor Cassell and Mr. Edwards from providing effective representation to Ms. Giuffre in this case. Some of the most significant materials in this case will, no doubt, be designated as "confidential" – presumably including some of the sensitive sexual abuse materials where their expertise on crime victims' rights will be most important. The only justification the Defendant can suggest for this modification is her belief that it will be impossible for Professor Cassell and Mr. Edwards to comply with the Protective Order's restrictions. Professor Cassell and Mr. Edwards have worked with confidentiality orders in many other cases, including cases involving sexual assault victims, and they are confident that compliance here will not be a problem. Therefore, the Court should not revise the previously-entered Protective Order to impose such disabling conditions on Professor Cassell and Mr. Edwards.

## **CONCLUSION**

For all these reasons, Plaintiff Giuffre and her attorneys Professor Cassell and Mr. Edwards, respectfully request that the Court grant Professor Cassell and Mr. Edwards's motions to enter an appearance pro hac vice on her behalf, and deny Defendant's letters (now construed as a motions).

Dated: April 10, 2016

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By: /s/ Sigrid McCawley
Sigrid McCawley (Pro Hac Vice)
Boies, Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

David Boies
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Ellen Brockman
Boies, Schiller & Flexner LLP
575 Lexington Ave
New York, New York 10022
(212) 446-2300

Paul Cassell (*Seeking Pro Hac Vice*)
S.J. Quinney College of Law, University of Utah
383 S. University Street
Salt Lake City, Utah 84112
(801) 858-5202
cassellp@law.utah.edu

Bradley J. Edwards *(Seeking Pro Hac Vice)*
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
(954) 524-2820
Email: brad@pathtojustice.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 10, 2016, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on the individuals identified below via transmission of Notices of Electronic Filing generated by CM/ECF.

>   Laura A. Menninger, Esq.
>   Jeffrey S. Pagliuca, , Esq.
>   HADDON, MORGAN & FOREMAN, P.C.
>   150 East 10th Avenue
>   Denver, Colorado 80203
>   Tel: (303) 831-7364
>   Fax: (303) 832-2628
>   Email: lmenninger@hmflaw.com
>   Email: jpagliuca@hmflaw.com

/s/ Sigrid S. McCawley
Sigrid S. McCawley