United States District Court
Southern District of New York

Virginia L. Giuffre,

    Plaintiff,                                              Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

    Defendant.
_____/

## PLAINTIFF VIRGINIA GIUFFRE'S MOTION FOR CLARIFICATION OF COURT'S ORDER AND FOR FORENSIC EXAMINATION

BOIES, SCHILLER & FLEXNER LLP

David Boies
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Sigrid McCawley (Pro Hac Vice)
Meredith Schultz (Pro Hac Vice)
Boies, Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I.     INTRODUCTION ........................................................................................................1

II.    CLARIFICATION OF THIS COURT'S MARCH 17, 2016 RULING ................................3

      A.    Documents Evidencing Communications and Interactions With Co-Conspirators ..................................................................................................3

      B.    Documents Concerning Sexual Abuse And Trafficking Of Females ............................4

III.   ARGUMENT – FORENSIC EXAMINATION ..................................................................7

CONCLUSION ..........................................................................................................................10

# TABLE OF AUTHORITIES

Page

**Cases**

*Byrnie v. Town of Cromwell, Bd. Of Educ,*,
  243 F.3d 93 (2d Cir. 2001) .................................................................................................. 8

*Genworth Fin. Wealth Mgmt., Inc. v. McMullan,*
  267 F.R.D. 443 (D. Conn. 2010) ....................................................................................... 10

*In re Vitamin C Antitrust Litig.,*
  No. 05 Civ. 453, 2013 WL 504257 (E.D.N.Y. Feb. 8, 2013) ........................................... 8

*Stinson v. City of New York*
  10 CIV. 4228 (RWS), 2015 WL 4610422 (S.D.N.Y. July 23, 2015) ...................... 9, 10

**Statutes**

Federal Rule of Civil Procedure 26 ........................................................................................ 8

**Other**

*In re: Pilot Project Regarding Case Management Techniques for Complex*
  *Civil Cases in the Southern District of New York*, M10-468 ......................................... 9

*Sedona Principles for Electronic Document Production*, Second Edition, 2007 ............ 9

Plaintiff Virginia L. Giuffre, by and through her undersigned counsel, respectfully submits this Motion for Clarification regarding this Court's Ruling at the March 17, 2016 hearing[1], and seeks a forensic examination of defendant's computers and states as follows.

## I.   INTRODUCTION

Ms. Giuffre served Defendant with discovery requests on October 27, 2015.  Now, mid-April of the following year, Defendant has still only produced exactly *two documents*.  Ms. Giuffre moved to compel Defendant to produce responsive documents and the Court held a hearing on March 17, 2016.  During the hearing, the Court granted in part, Ms. Giuffre's Motion to Compel.  Now, twenty-six (26) days later, Defendant has still failed to produce any additional documents.  In contrast, to date, Ms. Giuffre has produced over 4,700 pages of documents in response to Defendant's overbroad discovery requests.

Ms. Giuffre requested Defendant's production by April 6, 2016, which provided Defendant with twenty (20) days from the date of the Court's hearing compelling production. *See* Declaration of Sigrid McCawley ("McCawley Decl.") at Exhibit 1, March 28, 2016 Correspondence.  Defendant failed to respond and failed to produce anything, and therefore, Ms. Giuffre scheduled a "meet and confer" conference on April 11, 2016 to determine when, if ever, Defendant planned to produce the documents as directed by the Court.  *See* McCawley Decl. at Exhibit 2, April 7, 2016 Correspondence.

At the meet and confer, the Defendant took the position that she would not produce any additional documents until the Court ruled at the April 21, 2016 hearing on the Motion to Appear Pro Hac Vice of former federal Judge Paul Cassell, and Co-Counsel Brad Edwards' filings. Defendant's position, as Ms. Giuffre understands it, is that the documents are "confidential" and

---

[1] Ms. Giuffre respectfully requests that, if possible, this Motion for Clarification be set for hearing on an expedited basis in order to be heard at the hearing already scheduled on other related discovery issues on April 21, 2016 at 11:00 am.

1

she will not produce them until the Court rules on whether or not Ms. Giuffre's other lawyers, Paul Cassell and Bradley Edwards, are "actively working on this case" under the terms of the Protective Order, such that they are entitled to receive confidential information.  Ms. Giuffre views this as simply another attempt to stall and refuse to engage in discovery.

Fact discovery ends in a little over six weeks. Defendant's refusal to comply with her discovery obligations, and her refusal to turn over documents knowing that Defendant is being deposed on April 22, 2016, shows her belief that she can get away with producing a mere two emails and run out the clock on discovery.

It also became clear during the meet and confer conference that Defendant's interpretation of this Court's ruling was vastly different than Ms. Giuffre's understanding.[2]  Ms. Giuffre contends that the Court's ruling on March 17, 2016, granting in part Ms. Giuffre's Motion to Compel, held the following:

(1) Directed that the relevant time period of Defendant's search and production of documents would be 2000 – present.

(2) Directed the production of documents responsive to Ms. Giuffre's requests for production that sought Defendant's communications with certain, named individuals in the requests.  For example, Request no. 1 seeks all "communications with Jeffrey Epstein from 1999 – present."  Request no. 6 seeks all "communications with … Emmy Taylor, Sarah Kellen, Eva Dubin, Glen Dubin, Jean Luc Brunel and Nadia Marcinkova" from 1999 – present.) (The other requests that fit into this category are Request Nos. 1, 2, 3, 4, 6, 17, 32, 37, and 38).

(3) Directed the production of documents responsive to Ms. Giuffre's remaining requests but limited those documents to documents that relate to the subject matter of the "sexual abuse or sexual trafficking" of "females."  For example, Request No. 24 seeks "all documents relating to contact lists, phone lists or address books for you or Jeffrey Epstein from 1999 – present."  This request was limited by the Court to require production if the materials relate to the subject matter of "sexual abuse or sexual trafficking of females."  It is already public knowledge that law enforcement

---

[2] Defendant's understanding of the ruling is so narrow that in Defendant's view, the only remaining volume of documents she would be required to produce – other than the two initial documents she produced -- is approximately "50" pages of documents that presumably date from the last 18 months. Of course, she has still not produced these documents to Ms. Giuffre.

2

retrieved at least one "black book" wherein Jeffrey Epstein and the Defendant kept lists of females who were utilized for "massages." Now, in this civil discovery, Defendant should be producing contact lists or records she kept of the females she contacted to perform these "massages" for convicted sex offender Jeffrey Epstein. (The Requests that fall into this category relating to the sexual abuse and sex trafficking of females are Request Nos. 7, 8, 9, 10, 11, 15, 19, 21, 22, 23, 24, 33 and 39).

In contrast, Defendant's position, as Ms. Giuffre understands from the meet and confer, is that she only has to produce documents which include a communication with an individual which directly discuss or reference the sex abuse or sexual trafficking of females. Defendant contends that all other requests were denied. Accordingly, Ms. Giuffre requests clarification of this Court's ruling in order to further discovery in this case.

## II.     CLARIFICATION OF THIS COURT'S MARCH 17, 2016 RULING

### A.     Documents Evidencing Communications and Interactions with Co-Conspirators

Defendant admitted to withholding documents responsive to requests that sought documents concerning interactions and communications with particular, named individuals.[3] It is Ms. Giuffre's understanding that the Court directed the production of those documents. At the hearing, Ms. Giuffre argued in detail as to why documents showing communications between Maxwell and various individuals, for example, Sarah Kellen, are highly relevant.

> MS. McCAWLEY: For example, two of the people we asked for documents and communications with, Sarah Kellen and Nadia Marcinkova, when they were asked in their depositions about Ms. Maxwell sexually trafficking underage girls, both of those individuals took the Fifth. If there are documents between Ms. Maxwell and Sarah Kellen discussing those issues at any time from 1999 to present, we want those documents, your Honor. And while they say that day-to-day communications with Jeffrey Epstein wouldn't be relevant, they would. If they're communicating on a daily basis, that's relevant.

---

[3] *See* McCawley Decl. at Exhibit 3, Defendant's Responses and Objections to Plaintiff's Requests for Production, Requests Nos. 1, 3, 4, 6, 17, 32, 37, and 38.

See McCawley Decl. at Exhibit 4, March 17, 2016 Hearing before Judge Robert Sweet, at 28:2-12.  After hearing arguments, the Court ruled as follows:

> "I think any documents with named individuals, that's fine."

Judge Sweet, March 17, 2016, Hearing Transcript at 30:4-5. Despite this apparent ruling, Defendant has failed to produce the responsive documents.

Defendant also takes the position that she is not required to produce communications with these individuals unless they specifically discuss the "sexual abuse" or "sexual trafficking" of "females."  However, it is Ms. Giuffre's understanding that she is entitled to communications with the key named individuals, and it is not limited only to a document between the individuals explicitly discussing "sexual abuse."  Ms. Giuffre respectfully requests that the Court direct Defendant to produce the documents she has -- but is withholding -- as to Request Nos. 1, 3, 4, 6, 17, 32, 37, and 38.

### B.   Documents Concerning Sexual Abuse and Trafficking of Females

Ms. Giuffre interpreted this Court's ruling to award Ms. Giuffre discovery on her remaining requests for production (not specifically limited to named individuals) to the extent those requests relate to the "sexual abuse or sexual trafficking of females."  That ruling would include the following Request Nos. 7, 8, 9, 10, 11, 15, 19, 21, 22, 23, 24, 33, and 39. Specifically, the Court ruled:

> THE COURT: And then I would say any documents that relate to the duties to be performed by Maxwell.  And it may be that there are other definitional categories that would be appropriate but they don't occur to me at the moment. Now, let me ask the plaintiff, how do you want to define the activities?
>
> MS. McCAWLEY:  I'm comfortable defining "activities," your Honor.  I think you said any documents which relate to the activities of defendant with respect to the practice, which we would say would be sexual abuse or trafficking of minors.
>
> THE COURT:  OK.

4

MS. McCAWLEY:  And I think that everybody has an understanding of what that is.  So if there is emails about girls getting massages for those sorts of --

THE COURT:  All right.  So what do you all think about that?

MR. PAGLIUCA:  If we're limiting it to minors, which I understand this to be limited to, I think that's fine.  I mean, we are talking about -- the allegation in this case is, according to Ms. Giuffre, is that she was an underage minor, trafficked individual, and my client has vehemently denied that in the press and here.  And so that's the issue.  And I think if that's what we are talking about, we are fine with that.

MS. McCAWLEY:  Your Honor, can I just clarify really quickly?  There was trafficking of both underage and women that were over 18.  So I wouldn't feel comfortable limiting it to just the minors, under 18.

MR. PAGLIUCA:  You can't traffic somebody --

MS. McCAWLEY:  You can prosecute someone over international lines, and that is a federal offense if they are --

THE COURT:  Let's --

MR. PAGLIUCA:  That's not the definition.

THE COURT:  Let me -- if we skip the minors, what would it be?  It would be any -- yes, it would be any --

MS. McCAWLEY:  Females.

THE COURT:  The documents relating to trafficking, what for?

MS. McCAWLEY:  Sexual trafficking or sexual abuse of any female.

THE COURT:  That is OK.

MR. PAGLIUCA:  To be clear, we talking about something that is illegal, right?

THE COURT:  Are we?  I don't think it has to be illegal in the context of the defamation.

MR. PAGLIUCA:  Let me sort of recap, your Honor. Because the defamation is that Ms. Giuffre was a minor and from 1999 to 2002 somehow was, quote-unquote, sexually trafficked.

THE COURT:  Your client's statement is that she was a liar and -- I mean, I don't mean to prejudge that, but I mean that's the issue as I understand it.

MR. PAGLIUCA:  Well, and the Court narrowed this down in the Court's order on the motion to dismiss, which is that the statements relating to Ms. Maxwell's participation in the trafficking of the plaintiff were untrue or unfounded.  Those are the statements.

THE COURT:  OK.

5

MS. McCAWLEY:  Yes.

THE COURT:  Then I think it is conceivable that it wouldn't be limited to minors.  What I'm trying to say is if there were trafficking other than with minors, that might also be relevant to the existence of the practice.

MS. McCAWLEY:  Exactly.

THE COURT:  *OK.  So it isn't limited to minors.*

MS. McCAWLEY:  Thank you, your Honor.

See McCawley Decl. at Exhibit 4, March 17, 2016, Hearing Transcript at 30:10-33:1 (Emphasis added).

It is Ms. Giuffre's counsel's position that activities related to the sexual abuse or sexual trafficking are sought in many of Ms. Giuffre's requests for production.  For example, Request no. 7 seeks "All video tapes, audio tapes, photographs or any other print or electronic media relating to females under the age of 18 from the period of 1999 – present."  If there are pictures with Defendant, Jeffrey Epstein, and a female, and that female was being sexually trafficked or abused, the Defendant should produce that picture.  Alfredo Rodriguez, former house staff, testified in a prior case that Defendant had pictures of underage females on her computer.

> Q. "Did they appear to be doing any sexual?
> A. Yes, ma'am.
> Q. And in these instances were there girls doing sexual things with other girls?
> A. Yes, ma'am.
> Q. And I'm still talking about the pictures on Ms. Maxwell's computer.
> A. Yes, ma'am."

See Decl. of Sigrid McCawley at Exhibit 5, Alfredo Rodriguez August 7, 2009 Dep. Tr. at 311-312.  Yet, Defendant has failed to produce *any* documents in response to this request.  It is Ms. Giuffre's counsel's understanding that this Court required production of all documents related to sexual abuse or sex trafficking.

Through the April 11, 2016, meet and confer, it became apparent that opposing counsel's view is that, since Defendant denies sexually trafficking females, Defendant is not required to

6

produce documents that tend to show the sexual abuse or sexual trafficking, only documents that specifically discuss sexual trafficking.[4] Defendant's view would exclude from production documents such as flight manifests listing the girls Defendant flew over to Jeffrey Epstein's island, and payments made from Epstein to Defendant for her services. Under Ms. Giuffre's interpretation, such documents relate to the "sexual abuse and sex trafficking of females," and therefore are discoverable under this Court's ruling.

### III.    ARGUMENT - FORENSIC EXAMINATION

Ms. Giuffre attempted to negotiate an electronic protocol to ensure the proper collection of discovery materials, and Defendant rejected that proposal. *See* McCawley Decl. at Exhibit 6, March 10, 2016 Correspondence.  Ms. Giuffre's attorneys have expended considerable sums of money on the retention of an outside e-discovery management company to assist in a thorough collection, review, and production of responsive documents to ensure compliance with her discovery obligations.  Ms. Giuffre's attorneys have also spent many hours identifying, reviewing, and producing responsive documents. To date, Ms. Giuffre has produced nearly five thousand pages of documents, including documents responsive to Defendant's request that she produce 18 years of correspondence with her various family members.

In addition to searching hard-copy documents and other sources, Ms. Giuffre's counsel have imaged Ms. Giuffre's computer to collect its electronically stored data.  Further, Ms.

---

[4] Ms. Giuffre does not expect the evidence of sex trafficking to be found in, for example, a 2001 memo from Defendant to Jeffrey Epstein with a subject line stating "Our Sex Trafficking Plan."  Instead, Ms. Giuffre seeks evidence of sex trafficking akin to the evidence that is publicly available, such as the flight logs Ms. Giuffre produced showing Defendant taking Ms. Giuffre on more than 20 trips with Jeffrey Epstein when she was a minor, and the message pads seized by the police that Ms. Giuffre produced wherein Defendant supplied Epstein with the names and numbers of underage girls.  *See* McCawley Decl. at Exhibit 7, Flight Logs and Exhibit 8, message pads. Defendant was intimately involved in the day-to-day life of convicted sex offender Jeffrey Epstein, flying on his private planes over **360** times.  Yet she has only produced **two** responsive documents in this case.  Ms. Giuffre is entitled to such discovery to prove her claim at issue in this case, and Defendant should not be allowed to refuse to produce critically relevant information.

Giuffre's counsel captured all of Ms. Giuffre's emails in order to collect that electronically stored information (ESI). Ms. Giuffre has made this collection in compliance with a standard ESI Protocol that was provided to Defendant, but that Defendant has refused to comply with. Courts have found this to be the best practice to ensure compliance with Fed. R. Civ. P. 26.  Finally, Ms. Giuffre's counsel applied close to 200 broadly-drafted search terms to the collected ESI to locate documents that may be responsive to Defendant's far-reaching requests.  Despite this, and despite attempting to have dialogue about collection procedures, Defendant has refused to discuss her questionable collection processes that yielded a mere **two** responsive documents. Defendant's response during the meet and confer was that she didn't believe this dialogue was "appropriate."  Defendant's refusal necessitates a forensic review of her electronic data in order to ensure that Defendant is not wrongfully withholding discoverable material.[5]

Defendant has also declared that she regularly deletes documents. *See* McCawley Decl. at Exhibit 3, Defendant's Responses and Objections at ¶ 16.  As the Court knows, once litigation is contemplated, a person is under a duty not to destroy electronic information.  The duty to preserve arises, not when litigation is certain, but rather when it is "reasonably foreseeable." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001); *In re Vitamin C Antitrust Litig.,* No. 05 Civ. 453, 2013 WL 504257, at *9 (E.D.N.Y. Feb. 8, 2013) ("[T]he law is clear that the obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation, and that this obligation may arise prior to the filing of a suit if the litigation is reasonably anticipated.") (quotations omitted). A forensic exam can recover certain types of "deleted" data, and it can show how and when certain data was "deleted" or "erased."

---

[5] Defendant claims that she contemplated filing a lawsuit back in 2011.  Accordingly, at a minimum, she should have been retaining her electronic data from that date forward.

8

At the meet and confer, Ms. Giuffre sought again to have a dialogue about the discovery collection procedures as employed by Defendant, particularly since Defendant's search only yielded *two documents*. Defendant's counsel told Ms. Giuffre's counsel that it was not "appropriate" to disclose her document collection processes, and refused to provide any information regarding what type of search was done on Defendant's documents that, in fact, yielded a mere *two* responsive documents. What is the Defendant hiding?

Defendant's claim - that discussion and/or negotiation of ESI collection procedures is "inappropriate" - is perplexing. The US District Court for the Southern District of New York (SDNY) issued a Standing Order for certain types of cases that is instructive here as it addresses the discovery of electronically stored information, M10-468, *In re: Pilot Project Regarding Case Management Techniques for Complex Civil Cases in the Southern District of New York*. The M10-468 Order requires a Joint E-Discovery Submission, requiring the parties to address, prior to the preliminary conference, their (1) preservation obligations, (2) search and review protocols, and (3) sources of ESI production. Under this model order, the parties are required to discuss methods for search and review, including potential keyword searches, date restrictions, and whether backup files should be searched. *See also The Sedona Principles for Electronic Document Production*, Second Edition, 2007, at p ii: "Parties should confer early in discovery regarding the preservation and production of electronically stored information . . and seek to agree on the scope of each party's rights and responsibilities.". Given this authority, and given modern jurisprudence on the same, *e.g.*, *Stinson v. City of New York*, No. 10 CIV. 4228 RWS, 2015 WL 4610422, at *7 (S.D.N.Y. July 23, 2015) (Sweet, J.), it is further shocking that Defendant refuses to have a dialogue about the procedures she has undertaken to collect electronic documents.

Again, Defendant refuses to disclose *any* information whatsoever about what was done to collect Defendant's documents, including her ESI, and has produced only two documents. The secrecy and near complete failure to produce necessitates a forensic review. Therefore, Ms. Giuffre requests expert forensic examination of Defendant's computers to perform the following:

(1) Run basic search terms, including the names of the individuals in the discovery requests, to determine if Defendant properly searched her electronic data.

(2) Determine the pattern and practice of deletion utilized by Defendant.

(3) Determine whether Defendant ran any deletion programs on her computer, and the date they were run, including but not limited to, evidence of "wipes" of Defendant's hard drive.

Specifically, Ms. Giuffre's counsel requests that the Court order a neutral, third party forensic examiner, who would be subject to the Protective Order, to perform a forensic examination of Defendant's computers as described above.[6] *See Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443, 449 (D. Conn. 2010) ("grant[ing] the Plaintiff's motion to compel forensic imaging to be performed by a neutral court-appointed expert" under a confidentiality agreement).

## CONCLUSION

For the reasons set forth above, Ms. Giuffre respectfully requests clarification that this Court's March 17, 2016, Ruling requires the production of documents concerning named individuals in Request Nos. 1, 3, 4, 6, 17, 32, 37, and 38, documents concerning sex abuse and trafficking in Request Nos. 7, 8, 9, 10, 11, 15, 19, 21, 22, 23, 24, 33, and 39, and requests that the

---

[6] Alternatively, Ms. Giuffre seeks this Court to Order that Defendant image her computers, collect her email, and run negotiated search terms across the resultant data in order to identify responsive documents. *Stinson v. City of New York*, No. 10 CIV. 4228 RWS, 2015 WL 4610422, at *7 (S.D.N.Y. July 23, 2015) (Sweet, J.) (granting in part a motion to compel, holding "the Plaintiffs are entitled to all relevant and non-privileged documents within the ESI . . . [t]he parties shall meet and confer in order to set a search protocol . . .." *Stinson v. City of New York*, No. 10 CIV. 4228 RWS, 2015 WL 4610422, at *7 (S.D.N.Y. July 23, 2015).

Court allow a neutral third party to conduct a forensic exam be completed upon Defendant's computers as detailed above.

Dated: April 13, 2016

                                         Respectfully Submitted,

                                         BOIES, SCHILLER & FLEXNER LLP

                                     By: /s/ Sigrid McCawley
                                               Sigrid McCawley (Pro Hac Vice)
                                               Meredith Schultz (Pro Hac Vice)
                                               Boies, Schiller & Flexner LLP
                                               401 E. Las Olas Blvd., Suite 1200
                                               Ft. Lauderdale, FL 33301
                                               (954) 356-0011

                                               David Boies
                                               Boies, Schiller & Flexner LLP
                                               333 Main Street
                                               Armonk, NY 10504

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 13, 2016, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on the individuals identified below via transmission of Notices of Electronic Filing generated by CM/ECF.

Laura A. Menninger, Esq.
Jeffrey S. Pagliuca, Esq.
HADDON, MORGAN & FOREMAN, P.C.
150 East 10th Avenue
Denver, Colorado 80203
Tel: (303) 831-7364
Fax: (303) 832-2628
Email: lmenninger@hmflaw.com
Email: jpagliuca@hmflaw.com

                                                /s/ Sigrid S. McCawley
                                                    Sigrid S. McCawley