# EXHIBIT 6

# BOIES, SCHILLER & FLEXNER LLP

401 EAST LAS OLAS BOULEVARD • SUITE 1200 • FORT LAUDERDALE, FL 33301-2211 • PH. 954.356.0011 • FAX 954.356.0022

Sigrid S. McCawley, Esq.
E-mail: smccawley@bsfllp.com

March 10, 2016

**Via Electronic Mail**

Laura A. Menninger, Esq.
HADDON, MORGAN & FOREMAN, P.C.
150 East 10th Avenue
Denver, Colorado 80203

Re:   *Giuffre v. Maxwell,*
      **Case no. 15-cv-07433-RWS**

Dear Ms. Menninger:

This letter is to inform you of the form of Plaintiff's production and to seek an agreement on the format of both parties' productions going forward pursuant to Rule 34, Fed. R. Civ. P.

Per my March 8, 2016 letter, Plaintiff is preparing to make a first production of documents and related privilege log on Wednesday, March 16, 2016, to Defendant in response to Defendant's First Request for Production. Defendant's First Request for Production did not specify a form for producing electronically stored information. Accordingly, pursuant to Rule 34(b)(2)(D), Fed. R. Civ. P., Plaintiff states that the she intends to produce the documents in the form as described in the attached Stipulation.

By this letter, I am also seeking your agreement to the attached Stipulation relating to ESI, governing the parties' collection and production of documents in this case. If you agree, please return the attached Stipulation to me with your signature, and please let me know a time in the near future during which we can discuss search terms. I will then sign it and return a copy to you for your records.

Kindly let me know of your agreement by Monday, March 14, 2016.

Sincerely,

Sigrid S. McCawley, Esq.

SSM/ep
Enclosure

United States District Court
Southern District of New York

Virginia L. Giuffre,

       Plaintiff,            Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

       Defendant.

_____/

**STIPULATED DISCOVERY PLAN**
**FOR ELECTRONICALLY STORED INFORMATION**

Pursuant to Federal Rule of Civil Procedure 29, this Stipulated Discovery Plan for Electronically Stored Information (the "Stipulation") is entered into by and among the named parties in the above-captioned action, through their respective counsel of record.

    1.    Definitions: For purposes of this Stipulation:

(a) The term "Plaintiff" refers to Virginia Giuffre

(b) The term "Defendant" refers to Ghislaine Maxwell.

(c) The term "parties" refers collectively to Plaintiff and Defendant.

(d) The term "party" refers individually to Plaintiff or Defendant.

    2.    Electronic Discovery - The Collection and Culling of ESI: In a joint effort to balance the volume, relevance, and costs of the production and review process, the parties stipulate to the following involving the handling and production of electronically stored information ("ESI").

    (a)    Counsel for Defendant and Plaintiff will correspond regarding custodians and sources of documents from which they are collecting ESI for production in the above-

captioned action. The parties will work in good faith to identify, discuss, agree upon, and revise, if necessary, the custodians and sources of documents from which ESI is collected and reviewed for possible production in the matter to avoid an unduly burdensome production or retrieving a large quantity of non-responsive ESI. The parties agree that search terms and other techniques to identify potentially responsive ESI for review and possible production may be useful to allow document production to complete in a reasonable amount of time. To the extent that a party plans to use search terms to identify potentially responsive ESI, the parties agree to work in good faith to agree upon acceptable search terms that will assist in identifying potentially responsive ESI.

To the extent practicable, the parties shall use informal procedures, agreed upon through a meet-and-confer process, for the production of electronically stored information. The parties have proposed this detailed Stipulation in satisfaction of their obligations under Federal Rule of Civil Procedure 26(f)(3)(C) and to provide rules governing production of electronically stored information in the event that the parties are unable to agree to informal procedures that are satisfactory to all parties.

(b)  In the event of a dispute or disagreement, the parties will meet and confer in a good faith effort to resolve such dispute or disagreement which includes the production and review of a limited sampling of the information sought. Further, insofar as this Stipulation relates to the general protocol of identifying and producing ESI, any party may bring a motion to modify or clarify the application of this Stipulation to particular ESI or otherwise.

This Stipulation is designed, and shall be interpreted, to ensure a balance of the needs of the party requesting electronic discovery to obtain all responsive documents and information that can reasonably be produced while avoiding unnecessary burdens for the party

captioned action. The parties will work in good faith to identify, discuss, agree upon, and revise, if necessary, the custodians and sources of documents from which ESI is collected and reviewed for possible production in the matter to avoid an unduly burdensome production or retrieving a large quantity of non-responsive ESI. The parties agree that search terms and other techniques to identify potentially responsive ESI for review and possible production may be useful to allow document production to complete in a reasonable amount of time. To the extent that a party plans to use search terms to identify potentially responsive ESI, the parties agree to work in good faith to agree upon acceptable search terms that will assist in identifying potentially responsive ESI.

To the extent practicable, the parties shall use informal procedures, agreed upon through a meet-and-confer process, for the production of electronically stored information. The parties have proposed this detailed Stipulation in satisfaction of their obligations under Federal Rule of Civil Procedure 26(f)(3)(C) and to provide rules governing production of electronically stored information in the event that the parties are unable to agree to informal procedures that are satisfactory to all parties.

(b)  In the event of a dispute or disagreement, the parties will meet and confer in a good faith effort to resolve such dispute or disagreement which includes the production and review of a limited sampling of the information sought. Further, insofar as this Stipulation relates to the general protocol of identifying and producing ESI, any party may bring a motion to modify or clarify the application of this Stipulation to particular ESI or otherwise.

This Stipulation is designed, and shall be interpreted, to ensure a balance of the needs of the party requesting electronic discovery to obtain all responsive documents and information that can reasonably be produced while avoiding unnecessary burdens for the party

responding to a request for production or other production requirement. Nothing in this Stipulation is intended to be an exhaustive list of discovery obligations of a producing party or rights of the requesting party. To the extent additional obligations or rights not addressed in this Stipulation arise under the Federal Rules of Civil Procedure or applicable State or Federal statutes, they shall be controlling. All parties reserve their rights under the Federal Rules of Civil Procedure for matters relating to the production of information that are not specifically addressed in this Stipulation.

(c) Each party shall make a reasonable and diligent effort to search for and collect reasonably accessible and responsive ESI from the following sources for each of its designated custodian's: active e-mail accounts utilized during the relevant time period, ESI stored on each such custodian's computer hard-drive, and other locations (to the extent agreed upon by the parties) used by each such custodian to store potentially responsive ESI. The parties will filter the ESI they collect using search terms agreed upon by the parties. If a party identifies ESI that is not reasonably accessible but is likely to contain responsive non-duplicative information, it will provide to the other party a description of the source of the ESI that it claims is not reasonably accessible and the basis of the claim that the source is not reasonably accessible. (d) In addition, the parties shall collect reasonably accessible and responsive ESI from their computers (including laptop and notebook computers), tablets, mobile phones, electronic document repositories, or any other electronic file storage media, a party identifies following a reasonable and diligent investigation, as likely to contain responsive ESI. The search terms will be run against the ESI collected from the locations and devices listed above.

3. <u>Collection and Production of Hard Copy Documents</u>: The parties agree to conduct a reasonable search for and collect reasonably accessible, non-duplicative responsive hard-copy data in the possession of agreed-upon custodians. The parties agree to produce such hard copy documents in single-page TIFF format along with document level OCR text files and the following fields in a Concordance load file as described in Section 5 below:

(i) Custodian (Name of Custodian from which the file is being produced);
(ii) BegBates (Beginning Production Number);
(iii) EndBates (Ending Production Number);
(iv) Page count; and
(v) Path to OCR text file.

Each party shall bear the cost of converting the hard-copy paper documents it produces to TIFF format and for providing the load file.

4. <u>ESI - Processing and Production</u>: The parties stipulate to the following regarding the processing and production of documents that were originally maintained as ESI:

(a) EXCLUSIONS FROM PROCESSING: The parties may exclude from collection, review, and production ESI or data with file extensions that typically contain no meaningful user-created data and/or cannot be reviewed in any meaningful format. Specifically, the parties agree that they may exclude (i) files with the following extensions (provided that the file signature matches the extension): .COM, .EXE, .BAT, .DLL, .SYS, .VXD, .BIN, .ASH, .ASM, .B, .BAS, .BCP, .C, .CPP, .H, .C++, .CPL, .FRM, .MOD, .RH, .VB, .VBX, .XLV, .RC and (ii) those file types contained on the list established by the National Institute of Standards in Technology ("NIST") (collectively, the "Permitted Excluded Files"). To the extent that the either party wishes to exclude file types not included within the Permitted Excluded Files from processing, the parties will meet and confer to regarding any such request.

To the extent responsive, audio, video, photo, and other media files such as stand-alone audio, video, or graphic shall be produced in their native format. To the extent it would be impractical to produce responsive ESI as it is kept in the normal course of business the parties will meet and confer concerning the collection and production of those reports.

(b) DE-DUPLICATION: In order to reduce the volume of documents reviewed and produced, each party shall de-duplicate ESI using the SHA1 or MD5 hash value. Such de-duplication will be done across the universe of all ESI produced and will be performed at the family level. De-duplicated originals and metadata shall be securely retained.

(c) NON-E-MAIL ESI: The native format of all non-e-mail ESI will be maintained by each party. Non-e-mail ESI will be produced in single-page TIFF format (except for non-redacted Excel documents, which shall be produced in native format with a TIFF placeholder pursuant to Section 4(f) hereof) and corresponding document-level extracted text (or OCR for documents that are redacted) with the following metadata fields, to the extent available, in a Concordance load file as described in Section 5 below:

(i) Custodian (Name of Custodian from which file is being produced);
(ii) Author (Author of file from properties);
(iii) Doc Title (Title of file from properties);
(iv) Doc Subject (Subject of file from properties);
(v) Created Date (the date the file was created, in YYYYMMDD or MM/DD/YYYY format);
(vi) Created Time (the time the file was created in HH:MM:SS format);
(vii) Last Modified Date (the date the file was created in YYYYMMDD or MM/DD/YYYY format);
(viii) Last Modified Time (the time the file was created in HH:MM:SS format);
(ix) File Name (name of the file);
(x) File Ext (extension for the file);
(xi) Hash (SHA1 or MD5 hash value, or equivalent);
(xii) BegBates (beginning production number);
(xiii) EndBates (ending production number);
(xiv) BegAtt (BegBates of first document in the family)
(xv) EndAtt (EndBates of last document in the family)

 (xvi) ParentID (field contains the BegBates for the parent document (usually an e-mail) and is populated for all attachments within the family group);

 (xvii) AttachID (field contains the BegBates number for each attachment within the family group and is populated for the parent document within a family group);

 (xviii) Page count;

 (xix) For non-redacted Excel spreadsheets only, a native link (path to the native file as included in the production, e.g., d:\PROD001\natives\ABC00015.xls or d:\PROD001\natives\ABC00025.ppt). A TIFF placeholder with a link to the native files is required.

(d) ELECTRONIC MAIL: The native format of all electronic mail shall be maintained by the parties. Electronic mail shall be produced in single-page TIFF format and corresponding document-level extracted text (or OCR for redacted documents) with the following metadata fields, to the extent available, in a Concordance-ready load file as described in Section 5 below (except for attachments that are non-redacted Excel spreadsheets, which shall be produced in native format with a TIFF placeholder pursuant to Section 4(f) hereof):

 (i) Custodian (name of custodian from which file is being produced);

 (ii) From;

 (iii) CC;

 (iv) BCC;

 (v) To;

 (vi) Hash (SHA1 or MD5 hash value, or equivalent);

 (vii) Sent Date (date the e-mail was sent in YYYYMMDD or MM/DD/YYYY format);

 (viii) Sent Time (time the e-mail was sent in HH:MM:SS format);

 (ix) Received Date (date the email was received in YYYYMMDD or MM/DD/YYYY format);

 (x) Received Time (time the email was received in HH:MM:SS format);

 (xi) File Ext (extension for the file);

 (xii) BegBates (beginning production number);

 (xiii) EndBates (ending production number);

 (xiv) BegAtt (BegBates of the first document in the family);

 (xv) EndAtt (EndBates of last document in the family);

 (xvi) ParentID (field contains the BegBates for the parent document (usually an e-mail) and is populated for all attachments within the family group);

 (xvii) AttachID (field contains the BegBates number for each attachment within the family group and is populated for the parent document within a family group);

(xviii) Page count;
(xix) Email Subject.

Electronic mail shall be produced along with attachments in sequential order as part of a family, maintaining the parent-child relationship, to the extent the message or any attachment is responsive. If any message or attachment is responsive but is withheld based on privilege, the entire family may be withheld (to the extent necessary to protect privilege) provided, however, that if an email or attachment withheld pursuant to this sentence is not subject to an independent claim of privilege, the party withholding such email or attachment will ensure that it is otherwise included in its production.

(e) REDACTED ESI: Production of redacted ESI shall be subject to the general production requirements set forth herein, however the following metadata need not be provided for documents that are redacted: Doc Title, Doc Subject, Filename, Email Subject. Further, for each document that is redacted, the field "Redacted" shall be populated with the value "Yes" and OCR text files of the redacted document shall be provided.

(f) EXCEL SPREADSHEETS AND OTHER DATA THAT DOES NOT EASILY LEND ITSELF TO TIFFING: All Excel spreadsheets and other data that does not easily lend itself to TIFFing, including but not limited to, CSV files, audio files, and video files, shall be produced in native format with a TIFF placeholder, except if an Excel spreadsheet must be redacted in which case it shall be produced in TIFF format (provided, however, that if the party receiving a redacted Excel spreadsheet in TIFF format determines that a native version is necessary, the party producing the Excel spreadsheet shall make available a native version of the Excel spreadsheet with any redactions necessary to protect privilege (i.e. not the original native file)). This paragraph shall apply to all such ESI irrespective of whether it takes the form of standalone files or attachments to e-mails or other files. To the extent that any Excel spreadsheet

requires a confidentiality legend, the TIFF placeholder shall contain such confidentiality legend, and the filename of the Excel spreadsheet shall also include such confidentiality legend.

(g) ZIP FILES: All compressed or zipped ESI shall be unzipped or decompressed before production. To the extent a responsive, non-privileged electronic file contains embedded files, or links to other files, such embedded files or links to other files do not need to be produced initially, but to the extent the receiving party determines they are necessary, the parties will meet and confer regarding production of the native files. The parties agree that they need not produce all files in a zip folder in the event any individual file in the zip folder is responsive. To the extent that there are multiple files within a zip folder, each shall be considered a single document with respect to determining responsiveness (unless attached to an email, in which case the protocol in subsection (d) hereof shall apply).

(h) The parties agree to meet and confer in good faith if there are any other file types that encounter difficulties in the production preparation process and will discuss native production of such files if necessary.

5. Production of ESI & Hard Copy Documents: The parties agree to the following regarding production of all documents:

(a) The production of all documents shall be in Concordance-ready format and the following load files will be produced:

(i) Opticon load file compliant with Concordance to load the images;

(ii) Document level extracted text or OCR (for documents that have been redacted or documents without extractable text);

(iii) DAT file containing the fields specified herein, with the field names as otherwise provided herein, in the first row. The .DAT file shall be

8

provided with the following hierarchy of delimiters: field - (ASCII 20), quote - (ASCII 254), return value in data - (ASCII 174).

(b) Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image. Additionally, any applicable confidentiality legend shall be "burned" into the document image. No other legend or stamp will be placed on the document image other than a confidentiality legend or redactions (where necessary to protect the attorney-client communication privilege, work product doctrine, or other protection). If the page identifier or legend inadvertently obliterates, conceals, or interferes with any information from the source document, the receiving party shall request and the producing party shall produce a legible copy.

(c) Each page image file shall be named with the unique Bates Number of the page of the document in the case of single-page TIFFs, followed by the extension ".TIF."

(d) The parties shall honor reasonable and specific written requests for the production of native versions of files and color images to the extent such requests are not unduly burdensome, subject to any necessary redactions to protect the attorney-client or other privileges.

(e) The parties shall honor reasonable and specific written requests to make originals of any produced document available for inspection and copying, subject to any necessary redactions to protect the attorney-client or other privileges.

(f) The parties reserve the right to seek and to object to the costs arising from any discovery or from any improper conduct or bad faith of the litigants.

6. <u>Clawback Provision</u>: The parties agree that clawbacks of any inadvertently produced privileged material shall be made upon notice to the other party.

9

| BOIES, SCHILLER & FLEXNER LLP | HADDON, MORGAN & FOREMAN, P.C. |
|---|---|
| Sigrid McCawley (*Pro Hac Vice*)<br>401 E. Las Olas Blvd., Suite 1200<br>Ft. Lauderdale, FL 33301<br>Tel: (954) 356-0011<br>Fax: (954) 356-0022<br>Email: smccawley@bsfllp.com | Laura A. Menninger, Esq.<br>150 East 10th Avenue<br>Denver, Colorado 80203<br>Tel: (303) 831-7364<br>Fax: (303) 832-2628<br>Email: lmenninger@hmflaw.com |