# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

VIRGINIA L. GIUFFRE,

      Plaintiff,

v.

GHISLAINE MAXWELL,

      Defendant.

                          **15-cv-07433-RWS**

---------------------------------------------------X

### Defendant's Reply In Support of Motion to Compel Responses to Defendant's First Set of Discovery Requests to Plaintiff

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
East 10th Avenue
Denver, CO 80203
303.831.7364

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

ARGUMENT.......................................................................................................... 1

I.   PLAINTIFF MISREPRESENTED TO THIS COURT WHICH DOCUMENTS SHE
     HAS PRODUCED AND WITHHELD. .................................................................... 1

     A.  Plaintiff's Response is Misleading, At Best ............................................ 1

     B.  Plaintiff's Responses and Log Fail to Reveal Whether Privilege Claimed as to Any
         Category of Documents ........................................................................ 2

II.  PLAINTIFF IMPROPERLY WITHHELD RESPONSIVE DOCUMENTS ............. 3

     A.  Plaintiff Cannot Invoke a Public Interest Privilege .................................... 3

     B.  Retention and Fee Agreements Are Not Subject to the Attorney Client Privilege or
         Work Product Doctrine and Must Be Produced ........................................ 6

     C.  Plaintiff's Deposition Transcript in Dershowitz Matter and Her Settlement
         Agreement with Jeffery Epstein Should Be Produced................................ 7

     D.  Plaintiff Must Produce Medical Records and Releases ............................. 8

     E.  Documents Concerning Plaintiff's Claimed Prior Sexual Abuse Are Relevant and
         Discoverable................................................................................... 11

III. PLAINTIFF IMPROPERLY REFUSED INTERROGATORY RESPONSES ....... 13

     A.  Interrogatories are Permissible under Local Rule 33.3............................ 13

         1.   Local Rule 33.3(a) Allows Interrogatories Concerning Names of Witnesses and
              Custodians of Records –................................................................. 13

         2.   Local Rule 33.3(b) Also Allows Interrogatories as a "More Practical" Means of
              Obtaining Discovery..................................................................... 14

     B.  Plaintiff Refuses To Provide Her Residence, Domicile And Address Where She
         Lived During Alleged "Defamation."................................................. 15

     C.  Plaintiff's other incomplete and evasive answers are improper. ............... 16

IV.  MS. MAXWELL ENTITLED TO ATTORNEYS' FEES ....................................... 17

CONCLUSION ................................................................................................... 18

i

Defendant Ghislaine Maxwell, through counsel, hereby submits this Reply in Support of her Motion to Compel Responses to Defendant's First Set of Discovery Requests ("Motion"), in rebuttal to Plaintiff's Response in Opposition to Defendant's Motion to Compel ("Resp.").

## INTRODUCTION

Plaintiff's Response demonstrates exactly why the Motion was necessary.  Not until the Motion was filed did Plaintiff "supplement" her privilege log, specifically identify some of the documents she is withholding, produce relevant documents clearly in her possession, concede to providing information previously withheld, or provide previously requested verification of her interrogatory responses.  Even then, the supplemental information fails to comply with the Requests, and she failed to supplement valid and necessary interrogatory questions.  The objections Plaintiff persists in asserting are improper, and all but one category of documents (pictures of her children) must be produced.  Response to the Interrogatories is necessary prior to Ms. Maxwell's deposition to prevent Plaintiff's ambush tactics.[1]

## ARGUMENT

## I.   PLAINTIFF MISREPRESENTED TO THIS COURT WHICH DOCUMENTS SHE HAS PRODUCED AND WITHHELD.

### A.    Plaintiff's Response is Misleading, At Best

Plaintiff provided a list of documents she claims to have produced.  Resp. at 2.  She has not.

- Plaintiff claims she produced "copies of her tax returns."  *Id.*  Not so. Plaintiff produced one tax return, for 2006, prior to the Motion to Compel, and two more, 2005 and 2011, after.  She has yet to produce the remaining 15 years.

---

[1] Defendant will not waste the Court's time responding to Plaintiff's bloviated cries that Ms. Maxwell's discovery responses were deficient or that Ms. Maxwell has fewer discoverable documents than does she.  Plaintiff's motion to compel has already been litigated and largely denied.  In any event, Ms. Maxwell did not sexually abuse or traffic Plaintiff and therefore has no documents to substantiate Plaintiff's false claims.  Moreover, because she is the plaintiff and has put her credibility, motives, and character into question by virtue of her claims in this lawsuit, Plaintiff must be prepared to cough up any evidence – or more likely, contradictory evidence – that she and her 15 attorneys' have spent the last 5 years of unsuccessful litigation and media-spin to concoct.

- She said she has requested records from all of her medical provider records. Resp. at 16-19.  She has not.  She has disclosed only two medical care providers and refused to identify countless others from the relevant time period, including her treating family physician and OB/GYN from the period when she claims she was a "sex slave."

- She purports to have  "disclosed her address."  Resp. at 7.  Not true. Contemporaneous with filing her Response, her attorney provided by unverified letter an address in Australia where Plaintiff "temporarily resid[es]."

- She disingenuously argues that she "executed" her discovery responses. Resp. at 7.  She only did so a mere **two hours before filing her Response**.

- She asserts she produced all attachments to emails. Resp. at 6-7. She has not. As she ably illustrates in her own Response, Plaintiff went back, searched, and found the undisclosed attachment to an email.  Countless other attachments still have not been produced.

- She claims she is not withholding any documents based on "copyright" and "proprietary" objections.  In fact, she did withhold those documents – until this Court overruled her objection on March 17th.  (Transcript at 13-17).  She then provided thousands of pages of supposedly "copyright protected" and "proprietary" emails and correspondence (including emails she has *received* rejecting her book proposal).  Her "copyright" designations are frivolous.

- She touts the privilege log she claims lists all documents withheld pursuant to all privileges, including the "public interest privilege."  Yet, she only produced the April 4, 2016 log, listing the "public interest privilege" mere hours before filing her Response.  Her log is inaccurate and incomplete in numerous respects.

## B.  Plaintiff's Responses and Log Fail to Reveal Whether Privilege Claimed as to Any Category of Documents

Plaintiff misleadingly asserts the "only" documents she has withheld are those listed in her Response at 3.  Untrue.  The failure of Plaintiff to specifically state – as Defendant did[3] – as to which request she withheld "privileged" documents renders it impossible evaluate her privilege claims.  Plaintiff repeatedly asserts her talismanic objection that each RFP calls for "documents protected by the attorney client, work product, joint defense, public interest or any

---

[3]  *See, e.g.,* Def. Resp. to RFP 1 ("Subject to and without waiving the above objections, Ms. Maxwell is withholding documents outside of the Relevant Periods described in paragraph 15, supra, and is withholding production of documents that are privileged pursuant to a common interest agreement.").

2

other applicable privilege." Resp. to RFP 1-5, 9-20, 22-37.[4]   Then, Plaintiff says, she is

producing, has produced or will produce "non-privileged" documents.  *Id.*  In only <u>two specific</u>

<u>instances</u> did Plaintiff actually state she is "withholding privileged documents," *i.e.,* her

attorneys' fee agreements and the public interest privilege. Resp. to RFP 1, 2, 3, 4 (attached as

Exhibit A to Menninger Decl. In Support of Motion to Compel).  Yet, Plaintiff logged hundreds

of documents on her privilege log that are neither fee agreements <u>nor</u> "public interest" privileged

documents.  As to which Request are these documents responsive?  There is no way to know.

Obviously the documents relate to some other Request.  Plaintiff must be required to go through

each Response and state whether she is withholding documents on the basis of privilege or, if

based on an objection she raises, which objection.

## II.   PLAINTIFF IMPROPERLY WITHHELD RESPONSIVE DOCUMENTS

### A.   Plaintiff Cannot Invoke a Public Interest Privilege

On March 17, 2016, after Ms. Maxwell pointed out that no "investigative" privilege

applies, Plaintiff switched tactics and provided "Supplemental" Responses on March 22, 2016

which claimed for the first time a "public interest privilege."  Then, two weeks later, on April 4,

2016, she provided a log indicating a public interest privilege.  The log merely categorically lists

"approximately 57" documents by and between "[t]he law enforcement entity, Virginia Giuffre,

David Boies, Stan Pottinger, Sigrid McCawley, Paul Cassell, Brad Edwards," identifying the

"subject matter" as "correspondence re the currently ongoing criminal investigation of Defendant

and others," being withheld on the basis of "public interest" privilege. The log fails in numerous

respects:  It does not provide (a) the date or date ranges for the documents withheld; (b) the

---

[4] Plaintiff's Responses and Objections to Defendant's First Set of Discovery Requests are attached as Exhibit A,
Menninger Declaration, filed in support of the Motion to Compel (Doc. # 76).

addressor or addressee as any communication; (c) the "law enforcement entity" party to any communications; or (d) a description of the subject matter of any communication.

Ignoring the clear authority cited in the Motion, and without *any* support legal support, Plaintiff alleges belatedly that she has the right to ***invoke*** the public interest privilege.[5]  Not so. "The privilege belongs to the Government and must be asserted by it; ***it can neither be claimed nor waived by a private party***. It is not to be lightly invoked." *United States v. Reynolds*, 345 U.S. 1, 7 (1953) (emphasis supplied); *see also In re World Trade Center Bombing Litigation*, 686 N.Y.S.2d 743, 474 (1999) ("Entitlement to the privilege requires, therefore, that ***an agency*** claiming some special governmental-public interest 'cone of silence' demonstrate the ***specific*** public interest that would be jeopardized by an otherwise customary exchange of information."). Plaintiff as a private party has no right to invoke the public interest privilege, nor has she demonstrated any public interest that would be jeopardized.  How can the public possibly be harmed by disclosure of investigative information about Plaintiff's stories when she has told the story to every news outlet that would listen?

Since Plaintiff has no right to invoke the "public interest" privilege, it is immaterial whether Defendant could obtain the information from a third party.  Ms. Maxwell is unaware of any ongoing law enforcement investigation.  In fact, the U.S. Attorney's Office in Florida overseeing the CVRA case is not conducting any investigation of Ms. Maxwell and knows of no other law enforcement agency who is doing so.  Menninger Decl. Ex. at ¶¶ 2, 3.  Regardless, Ms. Maxwell is not required to seek information from a third party that is within Plaintiff's possession, custody or control, and as to which she has no privilege.

---

[5] The only authority cited by Plaintiff relates to the types of communications (i.e. communications made to public officers) to which public interest may attach *if the government* invokes the privilege.  Plaintiff cites no authority, and Defendant is aware of none, that permits a private litigant to invoke the privilege

4

The information is imperative to the defense of this defamation action, contrary to Plaintiff's bold and unsupported assertion. Resp. at 12. This entire action is premised on the veracity of Plaintiff's public statements about Ms. Maxwell to others, and Ms. Maxwell's denial of the same. If Plaintiff sought or participated in a criminal investigation and made assertions or sworn statements that vary from the accusations that she has made in public forums, it is clear impeachment evidence. If any investigation concluded Plaintiff's allegations were not credible, any statement that Plaintiff's allegations have been "shown to be untrue" are not defamatory. If the agency concluded that Plaintiff is not credible for any number of reasons, that may be admissible evidence under FRE 608.

Uncontroverted case law dictates that the governmental public interest privilege, even in the hands of the government, is very limited and requires a showing of the *specific public interest* that *would* be harmed by disclosure.

> [w]e do not hold that all governmental information is privileged or that such information may be withheld by a mere assertion of privilege. There must be **specific support** for the claim of privilege. … Such a determination is a judicial one and **requires that the governmental agency** come forward and show that the public interest *would indeed* be jeopardized by a disclosure of the information.

*Cirale v. 80 Pine St. Corp.,* 316 N.E.2d 301, 304 (1974) (emphasis added). Plaintiff concedes she has not put forward any specific public harm that **would** (not merely could) be caused by disclosure. Instead, she claims that *if ordered to do so* she can prove *to the Court* the public harm that may be caused through *in camera* review of unidentified documents. Resp. at 11. Civil litigation is not shadow boxing. Plaintiff cannot file suit and then hide relevant information that would disprove her claims, under cover of a privilege not available to her, claim an unidentified *public* harm, and refuse to identify the alleged public harm that could be caused to the Defendant. Plaintiff's invocation of a public interest privilege must be rejected.

### B. Retention and Fee Agreements Are Not Subject to the Attorney Client Privilege or Work Product Doctrine and Must Be Produced

Plaintiff also fails to cite to a single case that holds that retainer agreements, identity of clients or fee arrangements are subject to attorney client privilege.  They are not.  *See United States v. Pape,* 144 F.2d 778, 782 (2d Cir. 1944) (The "fact of retainer [and] identity of the client" are not privileged, because they do not qualify as "confidential communications" made for the purpose of securing legal advice); *Gaus v. Conair Corp.,* No. 94 Civ. 5693(KTD)(FM), 2000 WL 358387, at *3 (S.D.N.Y. Apr. 7, 2000).  Absent *any* authority holding fee agreements are privileged – the only basis asserted by Plaintiff for her withholding-- they must be produced.

Sidestepping any legal analysis of privilege, Plaintiff instead concocts a circular argument: because, she says, an engagement could exist without a written agreement, the written agreement will not prove or disprove the existence of an engagement for purposes of evaluating Plaintiff's privilege log, and therefore the agreements need not be produced.  First, Plaintiff waived any relevance objection; she only withheld the documents based on claimed attorney-client and work product privileges.[6]  Second, if the engagement letters limit the nature of the engagement (*i.e.* the client is Virginia Giuffre and the engagement relates to a defamation action), some of the claimed "privileged" documents are not actually privileged.  For example, numerous privilege log entries concern advice relating to Victims Refuse Silence, an organization Plaintiff and her attorney, Bradley Edwards, formed on December 23, 2014.[7]  If

---

[6] Response to Request No. 4  Ms. Giuffre objects to this request in that it seeks information that is protected by the attorney client, work product, joint defense and other applicable privileges. Ms. Giuffre is withholding documents based on this objection. Specifically, Ms. Giuffre is withholding documents reflecting the engagements between herself and her attorneys she has engaged in relation to the above-captioned action and other actions as *those documents involve privileged communications*.  (emphasis added).

[7] For example, Entry 134 of the privileged log is an email chain dated 4/17/2015, From Paul Cassell to brad@pathtojustice.com, cc Smccawley@BSFLLP.com, brittany@pathtojustice.com, eperez@BSFLLP.com, and robiejennag@y7mail.com, described as Email chain with Cassell, McCawley, Edwards, Garvin, Beloof, Henderson, Giuffre and BSF staff re legal advice re VRS registrations.  If there is no attorney client relationship with VRS, this is simply business advice and should not be withheld.

Boies Schiller does not represent Plaintiff regarding VRS, their attorneys' communications with Plaintiff and with her other attorneys, including Edwaards, are not privileged, if the subject is VRS.  If Plaintiff claims these communications are privileged because Victims Refuse Silence is a client without a retainer letter, Plaintiff's own reasoning proves why her response to Interrogatory No. 3 (requesting identification of attorneys who represent her, the dates of their engagement, and the nature of the engagement) is completely deficient.  Nowhere does she identify any of the listed counsel as representing her or VRS regarding any subject.  Both the engagement letters (showing client, fee and scope of representation) and a complete response to Interrogatory 3 are necessary to evaluate Plaintiff's privilege claims.

### C.    Plaintiff's Deposition Transcript in Dershowitz Matter and Her Settlement Agreement with Jeffery Epstein Should Be Produced

Plaintiff claims she cannot produce her deposition transcript in *Edwards and Cassell v. Dershowitz*, 15-000072, in Broward County, Florida because "[t]he Court specifically sealed the deposition transcript of this sex abuse victim and ordered it could not be publicly disclosed." Resp. at 16.  The claim that the transcript is "sealed" is a gross exaggeration of the applicable "Confidentiality" order.  The judge did not "seal" the transcript.  He ordered "[t]he deposition testimony of Non-Party Virginia Giuffre will be designated "Confidential" and not subject to "public" disclosure.  It may only be filed under seal."  Menninger Decl. Ex. C.  Plaintiff has already produced in this action numerous documents she marked as "confidential" and produced in the *Edwards & Cassell v. Dershowitz* action.

Plaintiff's counsel is the one who moved for the Confidentiality order in that case, drafted the proposed order entered, and could have sought more stringent protections, including precluding production of the deposition outside of the *Edwards* case.  Plaintiff's counsel did not, instead she asked for and got a prohibition on "public" disclosure.  Disclosure under the

Protective Order in this case is not "public" disclosure, and any filing of portions of that transcript in this case would be filed under seal here, and thus compliant with the Florida Order. There is no basis to withhold Plaintiff's deposition transcript.

With respect to Plaintiff's settlement agreement with Jeffrey Epstein, Ms. Maxwell posed a simple question – does the agreement provide an exception to the confidentiality provision for production pursuant to subpoenas or lawful discovery requests?  If so, the document should be produced.  Plaintiff refuses to answer this most basic question, presumably because the response would show that production is required without violation of the agreement.  Plaintiff is not entitled to impose unilateral hurdles of obtaining a "waiver" from a third party to produce a document if she has the right and ability to produce it without violating the agreement's terms.

### D.    Plaintiff Must Produce Medical Records and Releases

Defendant has requested, multiple times and in multiple ways, information concerning any medical and mental health treatment that Plaintiff has received for the period prior to, during and subsequent to, the time period that Plaintiff claims she was "sexually trafficked" by Defendant.  She has asked Plaintiff to identify her treatment providers, reveal what medications she was taking, has asked her to sign releases for her records from those providers, and has asked for any documents used to identify those providers.  See Interrog. 12-13, Interrog. Ex. A, RFP 1.

Plaintiff concedes, as she must, that she has waived her privacy rights with respect to these records based on her lawsuit, Resp. at 17, but claims that the issue is one of "relevancy" and "undue burden."  She agrees to produce, but has not, "medical records relating to her [alleged] sexual abuse at the hands of Epstein and Defendant, as well as all records relating to her injuries from the [alleged] defamations."  Resp. at 17.  She falsely asserts that she has "provided extensive medical records from the time when Defendant was sexually abusing and trafficking her."  *Id.* at 18.

8

In fact, Plaintiff has <u>not</u> produced her medical records from the period from 1998-2002, nor from other numerous boys and men she claims sexually abused her, nor from the period of time between 2002-present for injuries she either (a) attributes to Ms. Maxwell, or (b) would provide alternate causation for many of Plaintiff's significant and sustained mental health and substance abuse problems.  To wit:

- Plaintiff claimed to the FBI that the man who abused her "prior to" Epstein "gave her pharmaceutical drugs"  [GIUFFRE1236]

- Plaintiff's family told the press, that, prior to meeting Jeffrey Epstein, Virginia Roberts "sank into drug addiction. …'She smoked weed and didn't spend a lot of time at school.' Her elder brother Daniel took her to rehab aged just 15 or 16. Virginia was definitely troubled."[8]

- Plaintiff's family claims that, prior to meeting Epstein, Plaintiff had an eating disorder.[9]

- Plaintiff's friends revealed to the press that she met Epstein *while she was living in a drug rehabilitation facility*.[10]

- Plaintiff reported to the Daily Mail that she took "up to eight pills of Xanax a day" during the time she claims she was with Jeffrey Epstein.[11]

- Records in Plaintiff's possession reveal that, while she claims she was supposedly being held captive as a sex slave, her parents took her to family doctors, an imaging center and an OB/GYN in Florida.  [Mar-A-Lago 0041, 0051, 0054, 0057]

---

[8]   Susan Churcher, "Virginia Roberts's Aunt Reveals Jeffrey Epstein Girl Says I Am In Fear for My Life," *Daily Mail Online*, (Jan. 10, 2015).
[9]   *Id.*
[10]   Rich Schapiro, et al., "Jeffrey Epstein accuser was not a sex slave, but a money-hungry sex kitten, her former friends say,"  NY Daily News (Mar. 1, 2015)  ("In 1998, the 15-year-old Roberts was living in a substance abuse treatment facility in Lake Worth called Growing Together — according to Guderyon, who was there at the same time. That summer Roberts was recruited to provide massages for Epstein.").
[11]   Susan Churcher, "Prince Andrew and the 17-year-old-girl his sex offender friend flew to Britain to meet him," *Daily Mail Online* (Mar. 2, 2011).

Plaintiff has produced, thus far, only 1) records from a New York hospital,[12] 2) records from two Australian hospitals in 2003 for Plaintiff's gynecological problems, 3) the identities of a family care doctor in Colorado and a therapist in Australia.  She has not identified any of her other treatment providers from before meeting Epstein, including her drug rehabilitation facility, her medical source for "8 pills of Xanax" per day, her OB and family doctors from that time period in Florida, her other mental health records from Australia or Florida or in Colorado, nor for any of her many mental health and drug issues prior to meeting Epstein.

Plaintiff fails to rebut the case law Defendant cited[13] that requires Plaintiff to identify all of her physicians, psychologists and psychiatrists, and records from or releases for each because she has put her medical and psychological condition at issue by pleading emotional distress damages.  Plaintiff's treatment for medical or psychological damage, whether occurring prior to or after the time frame she claims she was being sexually trafficked, and her history of drug abuse and treatment are "likely to reveal evidence of alternative or intervening causes for the damages claimed by plaintiff." *Bruno v. CSX Transp., Inc.*, 262 F.R.D. 131, 133-34 (W.D.N.Y. 2009); *see also Zakrzewska v. New Sch.*, No. 06 CIV. 5463 (LAK), 2008 WL 126594, at *2 (S.D.N.Y. Jan. 7, 2008) (defense entitled to discovery of prior sexual history and treatment for bulimia and depressions which might show that emotional distress caused at least in whole or part by other events); *Rhodes v. Motion Indus., Inc.*, No. 1:07-CV-251, 2008 WL 4646110, at *5 (E.D. Tenn. Oct. 17, 2008) (discovery of prior sexual abuse compelled because other stressors besides the alleged abuse might be responsible for plaintiff's psychiatric condition).

As held in the cases cited by Plaintiff "[t]he burden of demonstrating that certain records are immune from discovery is on the party asserting such immunity" *Wachtman v. Trocaire*

---

[12] Contrary to Plaintiff's assertion, these documents do not mention Jeffrey Epstein or Ghislaine Maxwell being present.
[13] Motion to Compel at 18-19.

*Coll.*, 532 N.Y.S.2d 943, 944 (4th Dep't 1988).  Plaintiff has not met this burden.[14]  Instead, Plaintiff unilaterally imposed her own limitations.  She has refused to identify providers or produce records from (a) the period prior to meeting Defendant, including her drug abuse, eating disorders and claimed sexual abuse, (b) the period during the time she claims Defendant abused her, including her treating physician and OB/GYN, and (c) the period after she "fled" to Australia, when intervening life difficulties may be the true cause of any of her claimed psychic problems.  Because they are relevant to her current damage claims, Plaintiff should be required to fully respond to Interrogatory Nos. 12, 13 and Requests for Production 1, 2, with the limitation identified in footnote 13.

### E.   Documents Concerning Plaintiff's Claimed Prior Sexual Abuse Are Relevant and Discoverable

Plaintiff has told the entire world that she was a victim of repeated sexual abuse *prior to ever meeting Ghislaine Maxwell*.  In fact, these statements of prior abuse were part and parcel of Plaintiff's allegations published in Britain "and elsewhere" to which Maxwell responded and which forms the basis of this action.  In exchange for hundreds of thousands of dollars, Plaintiff told The Mail on Sunday in 2011:

> "Born in Sacramento, California, in August 1983, Virginia spent her early years on a small ranch on the West Coast of America.  This seemingly idyllic childhood ended when she was sexually molested by a man close to her family.
>
> The fallout from that led to her parents temporarily splitting up. Blaming herself, Virginia began to get into trouble aged 11, she was sent to live with an aunt but repeatedly ran away.
>
> Living on the streets, she was beaten up and slept with at least two older men in

---

[14] Defendant agrees that medical providers who treated Plaintiff for things such as chicken pox and the common flu might not have relevant information, and would have agreed to reasonable limitation has they been proposed. Defendant agrees to limit the request to exclude treatment related to common colds and flu, and Plaintiff's gynecological visits or hospital stays related to the births of her three children, except to the extent any of these records reference, refer to, or relate to her claimed mental health problems or her claimed sexual abuse.

return for food. 'I was a paedophile's dream,' she says."[15]

The press documented other instances of Plaintiff's claims that she was the victim of sexual abuse. *See* Oren Yanev, "EXCLUSIVE:  Alleged 'sex slave' of Jeffrey Epstein, Prince Andrew accused two men of rape in 1998, but was found not credible," NY Daily News (Feb. 23, 2015).  In that case, Plaintiff reportedly was living at a group home for drug abusers, ran away and later claimed that during her absence she was raped by two young men. *Id.*  After a months long investigation, the state's attorney concluded that Plaintiff was not credible and dropped the charges against the two. *Id.*  In that news story, Plaintiff's current counsel, Ms. Sigrid McCawley, vouches for her client's credibility in the 1998 case, yet simultaneously claims she has no law enforcement records of the incident.[16]

Now, after herself publishing her claims of prior abuse (or false claims of abuse) to the world, Plaintiff wants to shield Defendant from discovery related to her paid-for news story. Plaintiff does not attempt to justify her refusal to produce the records; her Response to the Motion to Compel simply states, without justification, that the records are being withheld.[17]

As discussed above, evidence of sexual abuse allegations prior to 1999 are relevant to alternative causation and claims of emotional distress damages. *Rhodes v. Motion Indus., Inc.*, 2008 WL 4646110, at *5; *Delaney v. City of Hampton,* 999 F.Supp. 794 (E.D.Va. 1997), *aff'd,* 135 F.3d 769 (4th Cir. 1998) (plaintiff's prior sexual abuse admissible under Rule 412 to show "other stressors in her life besides the alleged abuse by [the plaintiff] might be responsible for her psychiatric condition").  Likewise, given the nature of this defamation claim, as a witness,

---

[15]  Churcher, "Prince Andrew and the 17-year-old Girl," *supra.*

[16]  *Compare id.* (McCawley said "in a statement":  "For the prosecutors to describe her as not credible means only that they did not think they had sufficient evidence to win. But she was raped.") *with* Resp. to Req. No. 3 (Plaintiff "withholding [law enforcement records] that concern or relate to *any currently ongoing investigation* by any law enforcement agency under the public interest and other applicable privileges").

[17]  In fact, Resp. at 3, n.5, is the first time Plaintiff even revealed that she is withholding documents of supposed "prior abuse."

Plaintiff must testify about the credibility of her statement of sexual abuse at issue in this case. Plaintiff's previous instances of fabricating sexual abuse claims to law enforcement agencies and in the press are the permissible subject of cross-examination as "probative of the character for truthfulness or untruthfulness of [the witness]."  Fed. R. Evid. 608(b).

## III.   PLAINTIFF IMPROPERLY REFUSED INTERROGATORY RESPONSES

### A.   Interrogatories are Permissible under Local Rule 33.3

Contrary to Plaintiff's contention, this Court did not find on the March 24th telephonic hearing that Plaintiff need not respond to any interrogatories.  To the contrary, the Court requested additional briefing to be filed by March 31st, which is exactly why Ms. Maxwell filed her Motion to Compel on that date, including Plaintiff's failure to respond to interrogatories.

In her Response, Plaintiff largely failed to address the arguments regarding her deficient interrogatory responses, and therefore should be deemed to have waived any such arguments. Resp. at 2, 13-14, 20 and 22.  In any event, Ms. Maxwell's interrogatories comply with Local Rule 33.3 and Plaintiff should both be compelled to fully respond and should be sanctioned for her failure to fully and timely respond to Interrogatories 5-14.

### 1.   Local Rule 33.3(a) Allows Interrogatories Concerning Names of Witnesses and Custodians of Records –

Local Rule 33.3(a) permits at the outset of discovery interrogatories "seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents, including pertinent insurance agreements, and other physical evidence, or information of a similar nature."  Defendant's interrogatories do just that:

- 1 – addresses where Plaintiff lived, dates, names of witnesses who lived with her
- 2 – email and cellphone account names and numbers

- 3 – names of her attorneys, locations, and dates of representation
- 4 – existence, custodian and location of documents reflecting communications with law enforcement agencies
- 5 – existence, custodian and location of documents reflecting communications with media
- 6 – the exact "false statements" attributable to Ms. Maxwell, i.e., necessary to identify the location of witnesses and documents concerning whether those statements reflect a true and accurate account of what she said
- 7 – identities, location and existence of other defamers of Plaintiff, i.e., alternate sources of injury to Plaintiff
- 8 – names of witnesses, locations, who represent the "high profile individuals" she purportedly was sexually trafficked to by Defendant
- 9 – names of witnesses - employers, locations, dates of employment for purposes of obtaining her earnings records, affecting her computation of damages
- 10 – other sources of income, i.e., witnesses, locations, dates, for purposes of obtaining her earnings records, affecting her computation of damages
- 11 – facts concerning her "lost wages" and "loss of earning capacity," – i.e., seeking names of witnesses and existence and location of records that support her computation of damages
- 12 and 13 – identity and location of her health care providers – i.e., names of witnesses and existence and location of documents that support her claimed non-economic damages
- 14 – names, existence and location of witnesses to provide alternate sources of injury to Plaintiff that would refute her claimed non-economic damages.

Plaintiff nevertheless, completely refused to answer Nos. 5-14 and only gave partial, incomplete, and bad-faith responses to Nos. 1-4.  Her unjustifiable refusal to respond is sanctionable.

## 2.   Local Rule 33.3(b) Also Allows Interrogatories as a "More Practical" Means of Obtaining Discovery

Additionally, Local Rule 33.3(b) authorizes, "during discovery," interrogatories which "are a more practical method of obtaining the information sought than a request for production or deposition."  Defendant's interrogatories also qualify under this category --– the kind of minutiae

14

that Plaintiff is unlikely to "recall" at the time of her deposition, such as all cellphone numbers she has used, the dates she and her attorneys communicated with the media, etc.

### B.   Plaintiff Refuses To Provide Her Residence, Domicile And Address Where She Lived During Alleged "Defamation."

Plaintiff claims she was willing to, *and has already,* responded to Interrogatory 1 and complied with the requirement of Local Rule 26.1.[18]  This is untrue.  Rather, Plaintiff's counsel provided a statement (unverified by Plaintiff) that she "is temporarily residing in Australia to assist in caring for a sick relative and is located at [address in Australia]."  This is neither her permanent residence nor her domicile.[19]  The Federal Rules define a person's domicile as "the place where a person has 'his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" *Linardos v. Fortuna,* 157 F.3d 945, 948 (2d Cir. 1998).  While Plaintiff may temporarily reside at an Australia address, it is just that – "temporary."  If Plaintiff still maintains a home, receives mail, files taxes and lists a Colorado address as her residence, and intends to return to Colorado, she must provide that address – it is both her residence and her domicile.

In this defamation action, Plaintiff claims damages for "loss of standing in the community."  Menninger Decl., Ex D at 16 (Pl. Supp. Rule 26(a) Discl.).  A finder of fact will have to gauge the loss of standing in the community "primarily in light of the very communities in which the Plaintiff lives and works."  *In re Koperski*, 540 B.R. 394, 403-04 (Bankr. D. Minn. 2015).[20]  Ms. Maxwell is entitled to discovery to determine what Plaintiff's reputation in *her*

---

[18]  The Rule requires: "A party shall furnish to any other party, within seven (7) days after a demand, a verified statement setting forth: (a) If the responding party is a natural person, that party's residence and domicile, and any state or other jurisdiction of which that party is a citizen for purposes of 28 U.S.C. § 1332"  LCiv.R. 26.1.
[19]  Plaintiff has pled in her complaint, for purposes of establishing diversity jurisdiction, that she is a citizen of Colorado. Cplt. at 6.
[20]  *See also* N.Y. Pattern Jury Instr.--Civil 3:29 ("Defendant claims that plaintiff's reputation and standing in the community at the time defendant's statement was published was so [bad] that only slight, if any, harm could have

community was at the time the alleged defamatory statement to determine if there was any change to her reputation *in that community*. If Plaintiff's friends and neighbors already believed Plaintiff was a liar, Plaintiff was unknown in the community, or that community was unaware of the alleged "defamatory" statement, there no proof of loss of reputation. Yet, Plaintiff still refuses to identify the community she lives in now, provides only "approximate" date ranges for her residence in 2014-2015,[21] and provides no information on her residence from some unknown time in 2015 to present (other than her temporary location in Australia) making it impossible to determine Plaintiff's community at the time of the alleged defamatory statement (January 2015).

Plaintiff must be compelled to comply with Local Rule 26.1, providing her permanent residential address and domicile, and complete her responses to Interrogatory Number 2 providing exact dates of residency for all residences through present.

### C.    Plaintiff's other incomplete and evasive answers are improper.

Plaintiff's other scant interrogatory responses are incomplete and evasive. For example:

Plaintiff disclosed one email address, robiejennag@y7mail.com, which she certifies is the only one she has used from 1998 – present. However, she provided discovery documents showing emails to and from "Virginia Giuffre" and that account, plus additional accounts which she did not disclose including jennag1203@hotmail.com. (GIUFFRE3809).

Plaintiff purports to provide a list of all her attorneys, yet (as described *infra*) does not provide the dates or natures of their representation. Further, Plaintiff provided with her privilege log a "list of attorneys identified on her privilege log," which includes attorneys as "counsel for Virginia Giuffre" who are not identified in response to Interrogatory No. 3.

---

been caused by the statement. In deciding the amount of compensatory damages, you will take into consideration the evidence offered by both sides regarding plaintiff's reputation at the time defendant's statement was published.").

[21] Menninger Decl. Ex. A, Resp. to Interrog. No. 2:  "1270 J. Street, Penrose, CO 81240, from approximately 2014 – 2015."

Plaintiff also refuses to identify the dates and times she and her attorneys have communicated with law enforcement, citing as discussed earlier, the "public interest privilege." But it is clear that Plaintiff has had numerous encounters with law enforcement, in 1996-2002, and since 2011, that have nothing to do with any "currently ongoing" investigation.[22]

Plaintiff refuses to identify the employers she has had since 1998 and the dates of employment, or her other sources of income.

Plaintiff hides behind Local Rule 33, which does not prohibit such interrogatories, and unjustifiably utterly failed to respond.

## IV.   MS. MAXWELL ENTITLED TO ATTORNEYS' FEES

Defendant requested attorneys' fees for Plaintiff's failure to respond to 9 interrogatories, her incomplete and evasive answers to 4 interrogatories, her failure to execute her interrogatory responses, and her production (after the motion to compel) of documents, and her failure to produce relevant documents based on inapplicable privileges and objections.

In Response, Plaintiff does not justify her refusal to answer interrogatories, instead relying on the Local Rule that does not prohibit the type of interrogatories sought.  She concedes that she failed to sign her interrogatory responses until after the Motion to Compel, without justification.  And she does nothing to explain why she switched her "privilege" from numerous inapplicable ones to the equally inapplicable "public interest" privilege.

Based on these facts, sanctions in the form of attorneys' fees to be paid by Plaintiff and/or her attorney are appropriate. For example, despite being made aware of this deficiency in the Original Responses, Plaintiff again failed to sign the Supplemental Reponses, contrary to Rule 26(g) and 33(b)(5).   Fed. R. Civ. P. Rule 26(g); *Walls v. Paulson*, 250 F.R.D. 48 (D.D.C.

---

[22]   *See* Carol Graham, "Aunt reveals Jeffrey Epstein girl says I am in fear for my life," Daily Mail.com (Jan. 10, 2015) (At age 18, "while still in Epstein's orbit, Virginia was also working at the Roadhouse Grill, a burger bar in Palm Beach, when she was accused of stealing £200 from her employer.").

2008) (sanctioning Plaintiff for failure to sign Supplemental Interrogatory responses).  The

objections she maintains remain improper and unrecognized.  The sanction for improper

certifications of objections requires "the court, on motion or on its own, <u>must</u> impose an

appropriate sanction on the signer, the party on whose behalf the signer was acting, or both

[which] … may include an order to pay the reasonable expenses, including attorney's fees…."

Fed. R. Civ. P. 26(g)(3).

In this case, the Court must impose sanctions against Plaintiff and/or her counsel.  There

is simply no justification for Plaintiff's refusal to respond to these properly issued discovery

requests, and Plaintiff can provide none.  Not once does Plaintiff's counsel claim the discovery

requested is irrelevant or unnecessary, nor could she.  Instead, she interposes meritless objections

in order to delay these proceedings and force Ms. Maxwell to file a motion to obtain discovery.

## CONCLUSION

Wherefore, Defendant requests that the Court compel Plaintiff to:

1) Provide complete responses Interrogatories 1-4, and indicating what, if any, information is being withheld on the basis of objection;

2) Provide responses to Interrogatories 5-14, each of which she has failed to answer based on unfounded objections;

3) Specifically state for each objection made to the 37 Requests for Production what, if any, documents are being withheld and the specific objection under which it is being withheld;

4) Produce all documents requested in RFP's 1-37 that are within her possession, custody or control, or that of her attorneys, after a reasonable and diligent inquiry and search.

Defendant further requests the Court to 1) enter an Order for attorney costs and fees

associated with this Motion pursuant to C.R.C.P. 26 and 37(a)(4); 2) Ordering that Ms.

Maxwell's deposition shall not be held until Plaintiff has complied with the Court's Order, and

such other and further relief as the Court deems appropriate.

Dated: April 15, 2016.

Respectfully submitted,


*/s/ Laura A. Menninger*
Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:   303.831.7364
Fax:        303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*


# CERTIFICATE OF SERVICE

I certify that on April 15, 2016, I electronically served this *DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL RESPONSES TO DEFENDANT'S FIRST SET OF DISCOVERY REQUESTS TO PLAINTIFF* via ECF on the following:

Sigrid S. McCawley
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com


*/s/ Nicole Simmons*
Nicole Simmons

19