UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------X

VIRGINIA L. GUIFFRE,

                    Plaintiff,

                                              15 Civ. 7433 (RWS)

        - against -

                                              OPINION

GHISLAINE MAXWELL,

                    Defendant.

-------------------------------------------X

A P P E A R A N C E S:

        Counsel for Plaintiffs

        BOEIS, SCHILLER & FLEXNER LLP
        401 East Las Olas Boulevard, Suite 1200
        Fort Lauderdale, FL 33301
        By:  Sigrid S. McCawley, Esq.
             Meredith L. Schultz, Esq.


        Counsel for Defendants

        HADDON, MORGAN AND FOREMAN, P.C.
        150 East Tenth Avenue
        Denver, CO 80203
        By:  Laura A. Menninger, Esq.
             Jeffrey S. Pagliuca, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5 2 16

1

Sweet, D.J.

Plaintiff Virginia Giuffre ("Giuffre" or "Plaintiff") has moved to compel Defendant Ghislaine Maxwell ("Maxwell" or "Defendant") to produce documents withheld on the grounds of privilege. Based on the conclusions set forth below, the motion is granted in part and denied in part.

I.  **Prior Proceedings**

Plaintiff filed a complaint in this Court on September 21, 2015, alleging a single defamation claim. See Compl. As set forth in the Court's February 26, 2016 Opinion denying Defendant's motion to dismiss, this case concerns Defendant's statements denying Plaintiff's allegations concerning Defendant's role in Plaintiff's sexual abuse as a minor.

On February 26, 2016, Plaintiff filed the instant motion to compel Defendant to respond to interrogatories to which Defendant has claimed the protection of the attorney-client, attorney-client-agent, and common interest privileges. Oral argument was held on March 17, 2016. During argument, the Court held that in camera review was warranted for purposes of

2

determining whether privilege applied to the documents in question, and Defendant was directed to file any further submissions necessary to establish her privilege claim. On March 31, 2016, Defendant submitted a declaration and exhibits in opposition to Plaintiff's motion, at which point the matter was deemed fully submitted.

## II. The Privilege Claims at Issue

Defendant has withheld 99 pages of emails with communications involving various combinations of Brett Jaffe, Esq. ("Jaffe"), Mark Cohen, Esq. ("Cohen"), Philip Barden ("Barden"), Ross Gow ("Gow"), Brian Basham ("Basham"), ███████████, ███████████████████████████, and ███████ ███████████████████████████ The facts that follow summarize Defendant's assertions regarding her relationship to each of these individuals.

Defendant hired Jaffe, then of Cohen & Gresser LLP, to represent her in connection with legal matters in the United States at some indeterminate point in 2009. Def.'s Decl. of L.A. Menninger in Supp. Def.'s Resp. to Pl.'s Mot. to Compel Production of Docs. Subject to Improper Privilege, ECF. No. 47,

Ex. E, ¶ 9 ("Maxwell Decl."). Defendant does not set forth an end date to Jaffe's representation, but swears that when Jaffe left Cohen & Gresser, Mark Cohen continued as her counsel. Id. ¶ 11.

Defendant hired Barden of Devonshire Solicitors on March 4, 2011 to represent her in connection with legal matters in England and Wales. Id. ¶ 1. Defendant hired Gow, her "media agent," on the same date. Id. ¶ 6.

Defendant communicated with ████████████ pursuant to a common interest agreement between them and their respective counsel. Id. ¶ 16. Defendant understood ██████ to be acting as counsel for ██████ in 2015. Id. ¶ 14. Defendant likewise understood ████████████████████████ for some unidentified period of time. Id. ¶ 15.

Defendant has not established the nature of her relationship with Basham.

4

Defendant's withheld emails can be organized as follows[1]:

1. Communications with Jaffe on March 15, 2011, #1000-19.[2]
2. Communications with Gow on January 2, 2011, #1020-26.
3. Communications with Gow and Basham on January 2, 2015, #1027-1028.
4. Communications with Barden
     a. On January 10, 2015, #1045-51
5. Communications with Barden and Gow
     a. On January 10, 2015, #1044
     b. On January 9 and 10, 2015, #1052-55
     c. On January 11, 2015, #1055-58
     d. On January 21, 2015, #1088-90
6. Communications with ▮▮▮▮▮▮
     a. On January 6, 2015, #1029
     b. On January 11, 2015, #1055-58
     c. Between January 11 and 17, 2015, #1059-83, including forwarded email between Barden ▮▮▮▮▮▮ #1069-73, #1076-79, and including forwarded email between Barden, Defendant, and Cohen, #1068-69, 1074-76.
     d. Between January 21 and 27, 2015, #1084-1098, #1099.
7. Communications with ▮▮▮▮▮▮▮▮▮▮ on January 6, 2015, #1030-43.

Some emails were forwarded or carbon copied ("CC'd") later in the chain, leading to some overlap and duplication. Whether one party or another was a direct recipient or a CC'd recipient of an email is not significant for purposes of the privilege analysis, as the waiver issue is determined by the purpose of the third-party's inclusion in the communications, not necessarily whether the communication was directed toward them by copy or direct email. See e.g., Morgan v. New York State

---

[1] This organization is derived from Defendant's privilege log. Issues with respect to characterizations in the log will be addressed infra § V.
[2] All references preceded by # refer to the Bates stamp number of Defendant's in camera submissions.

Dep't of Envtl. Conservation, 9 A.D.3d 586, 588, 779 N.Y.S.2d
643, 645 (2004) (privilege lost when documents were carbon
copied to a third party); see also infra §IV.

Defendant claims the attorney-client privilege applies to
groups 1 and 5, the attorney-client-agent privilege applies to
groups 2 through 4, and the common interest privilege applies to
groups 6 and 7. See Def.'s In Camera Submissions, Ex. A
("Privilege Log").

III. Choice of Law

Defendant has invoked the protection of privilege for
communications with New York counsel Jaffe and London solicitor
Barden. Defendant does not dispute that the communications with
Jaffe are governed by the privilege law of New York State.
Def.'s Supp. Mem. of Law. in Resp. to Pl.'s Mot. to Compel
Production of Documents Subject to Improper Claim of Privilege,
ECF No. 46, at 3 ("Def.'s Supp. Opp."); see also Fed. R. Civ. P.
501; Allied Irish Banks v. Bank of Am., N.A., 240 F.R.D. 96, 102
(S.D.N.Y. 2007) ("Because this Court's subject matter
jurisdiction is based upon diversity . . . state law provides
the rule of decision concerning the claim of attorney-client

6

privilege."). However, Defendant submits that a choice of law
issue arises with respect to her communications with Barden. Id.
at 3-5.

Defendant has not specified whether she seeks to withhold
documents containing communications with Barden subject to the
British legal-advice or litigation privileges. Rather,
Defendant's privilege log lists the "attorney-client privilege"
with respect to the Barden communications and broadly asserts
that all privileges asserted are "pursuant to British law,
Colorado law and NY law." Privilege Log at 1. Defendant argues
"Ms. Maxwell's communications with Mr. Barden should be
construed pursuant to British law." Def.'s Supp. Opp. at 4.

It is only in Defendant's in camera filing that Defendant
has provided any legal argument supporting an assertion of
protection under British privilege law.[3]

Defendant's claim is based on two suppositions: first, that
"[t]he UK litigation privilege protects communications to and

_____

[3] Defendant argued in supplemental opposition that "Ms. Maxwell
has not had sufficient time to secure appropriate affidavits,
documents and legal opinions concerning British law's attorney-
client privileges," seeking additional time to submit these
materials. Def.'s Supp. Opp. at 4.

from a client and her attorney and to a third party[.]" Decl. of L.A. Menninger in Supp. Def.'s In Camera Submissions ("Menninger Decl.") ¶ 24 (emphasis in original). Second, that the scope of privilege is wider than explicit legal advice provided in the context of litigation, encompassing communications related to "actual or contemplated litigation." Id. (emphasis in original). Defendant supports these arguments with citation to Belabel v. Air India [1988] Ch. 317, Lord Taylor and its progeny Three Rivers DC v. Bank of England (Disclosure) (No. 4), [2005] 1 A.C. 610 and (No. 10) [2004] UKHL 48.

Lord Taylor's opinion in Belabel explicitly addresses "whether [the legal professional] privilege extends only to communications seeking or conveying legal advice, or to all that passes between solicitor and client on matters within the ordinary business of a solicitor." Balabel, Ch. 317, 321–332. Lord Taylor discusses at length whether communications between a solicitor and client are privileged if they do not contain explicit legal advice, ultimately deciding the scope of the privilege is wider. Id. at 330 ("the test is whether the communication or other document was made confidentially for the purpose of legal advice."). However, Defendant's citation does not support the statement for which it is directly cited: that waiver does not apply to communications including a third-party

8

if for the purpose of contemplated litigation. Plaintiff, with the aid of British counsel and without having seen Defendant's British law argument, submits an interpretation of British law directly contradicting Defendant's.[4]

This precarious support provides an insufficient foundation for the Court to apply foreign law to Defendant's claims. See Tansey v. Cochlear Ltd., No. 13-CV-4628 SJF SIL, 2014 WL 4676588, at *4 (E.D.N.Y. Sept. 18, 2014) ("the party relying on foreign law has the burden of showing such law bars production of documents." (quoting BrightEdge Techs., Inc. v. Searchmetrics, GmbH, 14-cv-1009-WHO, 2014 WL 3965062 *2 (N.D.Cal. Aug.13, 2014) (internal quotation marks omitted)).

Moreover, at least one New York court has found that British privilege law is "apparently similar" to New York's. Aetna Cas. & Sur. Co. v. Certain Underwriters at Lloyd's London,

---

[4] "Where there is no attorney involved in the communication ..., there can be no 'legal advice' privilege under English Law"; "[i]n absence of any express obligation of confidentiality, [Plaintiff] submits that privilege does not attach to communications involving Ross Gow and the lawyer."; "Under English Law, communications between client and lawyer through an agent will be protected by legal advice privilege, but this will only apply in situations where the agent functions as no more than a mere conduit." Pl.'s Reply in Response to Def.'s Supp. Mem. of L. in Resp. to Pl.'s Mot. to Compel the Production of Documents Subject to Improper Claim of Priv. at 4-6 (emphasis removed) ("Pl.'s Reply").

176 Misc. 2d 605, 609, 676 N.Y.S.2d 727 (Sup. Ct. 1998) (citing Waugh v British Rys. Bd., 1980 AC 521 [H.L.]), aff'd sub nom. Aetna Cas. & Sur. Co. v. Certain Underwriters at Lloyd's, 263 A.D.2d 367, 692 N.Y.S.2d 384 (1999). That court found that both doctrines "require that legal advice be a predominate purpose of the communication."[5] Id.

The privilege analysis under UK law parallels the analysis under New York law, requiring (i) a communication between an attorney and client, (ii) made in the course of the representation, (iii) for the purpose of providing legal advice. Compare Three Rivers DC (Disclosure) (No.4), [2005] 1 A.C. 610 with People v. Mitchell, 58 N.Y.2d 368, 373, 448 N.E.2d 121 (1983). The policy purposes of privilege in both jurisdictions also mirror one another. Compare Balabel at 324 ("[T]he basic principle justifying legal professional privilege arises from the public interest requiring full and frank exchange of confidence between solicitor and client to enable the latter to receive necessary legal advice.") with People v. Mitchell, 58 N.Y.2d 368, 373, 448 N.E.2d 121 (1983) ("[C.P.L.R. § 4503's] purpose is to ensure that one seeking legal advice will be able

---

[5] As reasoned infra, the predominate purpose of the communications is the primary issue with respect to Defendant's claim that privilege applies to the communications with Barden.

to confide fully and freely in his attorney, secure in the
knowledge that his confidence will not later be revealed to the
public to his detriment or his embarrassment"). Even the
purposes for which Defendant cites British law—to assert that
the scope of privilege can (i) encompass communications to non-
attorneys, (ii) made outside of the context of pending
litigation—are directly addressed by elements of New York law.
Respectively, (i) New York's agency and common interest
privileges extend the umbrella of attorney-client communications
to third parties, and (ii) the analysis regarding the
predominance of legal advice in the communications at issue and
Ambac Assur. Corp. v. Countrywide Home Loans, Inc.[6] both expand
the scope of privilege to protect certain content unrelated to
ongoing litigation. See infra § IV. Indeed, Defendant refers to
New York law citations to support her argument about the
protection provided "[p]ursuant to British legal authority."
Menninger Decl. ¶ 25 ("citing NY law for same principle."). A
choice of law analysis need not be reached where the law applied
is not outcome determinative. On Time Aviation, Inc. v.
Bombardier Capital, Inc., 354 F. App'x 448, 450 n.1 (2d Cir.
2009).

---

[6] 124 A.D.3d 129, 998 N.Y.S.2d 329 (2014) (holding litigation is
not per se necessary for application of the common interest
privilege).

Finally, applying the choice of law test results in
application of New York law. As has been held in this district:

> [w]here, as here, alleged privileged communications took
> place in a foreign country or involved foreign attorneys or
> proceedings, this court defers to the law of the country
> that has the "predominant" or "the most direct and
> compelling interest" in whether those communications should
> remain confidential, unless that foreign law is contrary to
> the public policy of this forum.

Astra Aktiebolag v. Andrx Pharm., Inc., 208 F.R.D. 92, 98
(S.D.N.Y. 2002) (quoting Golden Trade, S.r.L. v. Lee Apparel
Co., 143 F.R.D. 514, 522 (S.D.N.Y. 1992); Bayer AG v. Miles, Inc.
v. Barr Labs., Inc., No. 92 CIV. 0381 (WK), 1994 WL 705331, at
*4 (S.D.N.Y. Dec. 16, 1994)).

The Court has previously held that New York has the
predominate interest in this case. Giuffre v. Maxwell, No. 15
CIV. 7433 (RWS), 2016 WL 831949, at *2 n.2 (S.D.N.Y. Feb. 29,
2016) ("Because New York has the most significant interest, New
York law applies."). The potential litigation for which
Defendant sought Barden's advice never came to fruition and no
pending issues in or relating to Britain have been pled. Thus,
any consequence resulting from a ruling on the confidentiality
of the Barden communications will sound only in New York, the
situs of this case and the location of the allegedly defamatory
statements at issue. New York therefore has the predominate

interest in whether these communications remain confidential. The similarity between New York and British attorney-client privilege demonstrates that no public policy conflict exists. Consequently, New York law applies to all of Plaintiff's privilege claims.

## IV.  Applicable Standard

The purpose of the attorney-client privilege is to facilitate and safeguard the provision of legal advice; "to ensure that one seeking legal advice will be able to confide fully and freely in his attorney." Mitchell, 58 N.Y.2d at 373. New York law provides:

> Unless the client waives the privilege, an attorney or his or her employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his or her employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication, in any action[.]

N.Y.C.P.L.R. § 4503(a)(1).

The privilege only applies to attorney-client communications "primarily or predominately of a legal character." Rossi v. Blue Cross & Blue Shield of Greater N.Y.,

13

73 N.Y.2d 588, 594, 542 N.Y.S.2d 508, 540 N.E.2d 703 (1989))

(internal quotation marks omitted). However, reference to non-

legal matters in communications primarily of a legal character

are protected. Id. "The critical inquiry is whether, viewing the

lawyer's communication in its full content and context, it was

made in order to render legal advice or services to the client."

Id. (quoting Spectrum Sys. Int'l Corp. v. Chem. Bank, 78 N.Y.2d

371, 379, 575 N.Y.S.2d 809, 581 N.E.2d 1055 (1991)).

The presence of a third party during communication or

disclosure of otherwise confidential attorney-client

communications to a third party waives the privilege absent an

exception. People v. Osorio, 75 N.Y.2d 80, 84, 549 N.E.2d 1183,

1185 (1989). There exists an exception, referred to as the

agency privilege, when the third party facilitates the rendering

of legal advice, such as communications made by the client to

the attorney's employees, through an interpreter, or to "one

serving as an agent of either the attorney or client." Id.


Similarly, the common interest privilege extends the

attorney-client privilege to "protect the confidentiality of

communications passing from one party to the attorney for

another party where a joint defense effort or strategy has been

decided upon and undertaken by the parties and their respective

14

counsel." United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989). To show the common interest privilege applies, the party claiming its protection must show the communication was made in the course of the ongoing common enterprise with the intention of furthering that enterprise. Id. A limited common purpose necessitating disclosure is sufficient, and "a total identity of interest among the participants is not required under New York law." GUS Consulting GMBH v. Chadbourne & Parke LLP, 20 Misc. 3d 539, 542, 858 N.Y.S.2d 591, 593 (Sup. Ct. 2008).

Despite their shorthand names, neither the agency privilege nor the common-interest privilege operate independently; both may only exist to pardon the presumptive waiver that would result from disclosure of otherwise privileged attorney-client communications to a third party when that third-party is included under the umbrella of the agency or common-interest doctrines. See U.S. Bank Nat. Ass'n v. APP Int'l Fin. Co., 33 A.D.3d 430, 431, 823 N.Y.S.2d 361, 363 (2006) ("Before a communication can be protected under the common interest rule, the communication must satisfy the requirements of the attorney-client privilege."); Don v. Singer, 19 Misc. 3d 1139(A), 866 N.Y.S.2d 91 (Sup. Ct. 2008)("The attorney-client privilege may extend to the agent of a client where the communications are

15

intended to facilitate the provision of legal services to the client." (citations and internal quotation marks omitted)).

The party asserting protection bears the burden of proving each element of privilege and a lack of waiver. Osorio, 75 N.Y.2d at 84, 549 N.E.2d at 1185 (citations omitted); Egiazaryan v. Zalmayev, 290 F.R.D. 421, 428 (S.D.N.Y. 2013). "Such showings must be based on competent evidence, usually through affidavits, deposition testimony, or other admissible evidence." Id. (citing von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 147 (2d Cir.), cert. denied, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); Bowne of N.Y.C., Inc. v. AmBase Corp., 150 F.R.D. 465, 472 (S.D.N.Y. 1993)).

## V. Plaintiff's Motion to Compel is Granted in Part and Denied in Part

Consistent with the aforementioned standards, to survive the instant motion to compel, Defendant must establish (1) an attorney-client relationship existed, (2) the withheld documents contain a communication made within the context of that relationship, (3) for the purpose of obtaining legal advice, and (4) the intended confidentiality of that communication, and (5)

16

maintenance of confidentiality via a lack of waiver or an
exception to waiver such as extension via the common interest
privilege or the agency privilege. See e.g., Safeco Ins. Co. of
Am. v. M.E.S., Inc., 289 F.R.D. 41, 46 (E.D.N.Y. 2011) (applying
New York law) (citing Abu Dhabi Commercial Bank v. Morgan
Stanley, 08 CV 7508 (SAS), 2011 WL 4716334, at *2 (S.D.N.Y. Oct.
3, 2011)).

### 1.    Communications with Jaffe Are Privileged

     "An attorney-client relationship is established where there
is an explicit undertaking to perform a specific task."
Pellegrino v. Oppenheimer & Co., 49 A.D.3d 94, 99, 851 N.Y.S.2d
19 (2008). Defendant has sworn that she hired Jaffe in 2009 to
represent her in connection with a deposition. Maxwell Decl. ¶
9. Though Defendant has failed to specify the end-date of
Jaffe's representation, the in camera submissions demonstrate
that these communications were made within the context of an
ongoing attorney-client relationship for the purpose of
providing legal advice related to the specific task for which
Defendant hired Jaffe. Defendant intended that the
communications remain confidential. Maxwell Decl. ¶ 12-13. The
communications themselves were solely between attorney and

17

client, demonstrating lack of waiver. Accordingly, Defendant's submissions #1000-19 are privileged.

### 2. Communications with Gow Alone Must Be Produced

The email communications in this group, #1020-26, are solely between Gow and Defendant regarding release of a public relations statement in response to inquiries from journalists (contained as forwarded messages). No counsel is included, and Defendant provides no argument relevant to the application of privilege to emails devoid of any attorney-client communication. The only mention of content of a legal character refers to awaiting content from Barden, indicating that any communication with Barden was for the purpose of facilitating Gow's public relations efforts. Regardless, without an attorney-client communication to facilitate, it cannot be said that Gow's presence and input was necessary to somehow clarify or improve comprehension of Defendant communications with counsel, as the standard requires. See Egiazaryan, 290 F.R.D. at 431.[7] As such,

---

[7] Defendant argues Egiazaryan does not apply. Def.'s Supp. Opp. at 9. Defendant distinguishes that case as involving a public relations firm, where this case involves a public relations "agent." Id. As reasoned infra §V(5), the Court does not rely on Egiazaryan for the principle that a public relations firm (or agent or specialist) cannot be deemed an agent for purposes of privilege protection.

Defendant has not met her burden of demonstrating that the communications fall beneath the umbrella of attorney-client privilege and cannot be rehabilitated by the extension provided by the agency privilege. Defendant must produce the emails in #1020-26.

### 3. Communications with Gow and Basham Must Be Produced

These emails, documents #1027-28, are between Defendant and Gow, with Basham CC'd. Basham was therefore a third-party privy to these communications between Defendant and Gow. Defendant has not identified Basham. Therefore, Defendant has failed to establish an attorney-client relationship, an attorney-client communication of a predominately legal character, and lack of waiver. Accordingly, documents #1027-28 are not privileged and Defendant must produce these emails.

### 4. Communications with Barden Alone Are Privileged

Defendant submits in her supplemental reply and in camera submissions that these communications, #1045-51, are non-responsive as they contain only communications between Defendant and Barden and "[n]o other party participated in this email

correspondence." Menninger Decl. ¶ 11; Supp. Reply at 5 n.2.
Documents #1045-46 contain communications between Defendant and
Barden; however, documents #1047-51 include Gow (and contain
forwards from others). Documents #1047-51 will be addressed
*infra*, § V(5), as these documents are responsive to Plaintiff's
Document Request No. 17.[8] Defendant's representations of this
batch of communications being unclear, the Court addresses their
status.

Defendant has submitted that Barden has been her "UK
attorney ... for many years in connection with potential
defamation lawsuits against the UK press." Menninger Decl. in
Supp. Def.'s In Camera Submissions ¶¶ 9-10, Maxwell Decl. ¶¶ 1-
5. Defendant alleges she hired Barden to represent her regarding
these matters and Barden continues to represent her. Maxwell
Decl. ¶ 1.[9] Defendant submits that Barden issued a cease and

---

[8] "Plaintiff's Document Request No. 17: All documents relating to
communications with [Defendant] and Ross Gow from 2005-Present."
McCawley Decl. in Supp. Consolidated Reply in Supp. Mot. to
Compel Production of Docs. Subject to Improper Objections and
Improper Claim of Priv., ECF No. 44, Ex. 2, at 9.
[9] Defendant has not provided a contract or representation
agreement to substantiate the dates of the relationship, though
she alleges one exists. Menninger Decl. ¶ 17. Likewise, no
material substantiates Barden's role other than a largely blank
print-out from the Devonshires Solicitors website. Maxwell
Decl., Ex. D. This print-out does not contain Barden's legal
education, professional accreditation, or any other explicit
indication that he was qualified counsel at the time of the
communications other than the implicit logical assumption that

20

desist to British press, though no litigation ever materialized. Maxwell Decl. ¶ 5. Defendant's sworn affidavit, coupled with the content of the communications (including a comment by Barden referring to having been retained by Defendant) are sufficient to establish Barden undertook the specific task for which Defendant has alleged she hired him in sworn affidavit. See Pellegrino, 49 A.D.3d at 99. It is similarly established by these materials that these communications were made in the context of that relationship. Defendant's affidavit swears the communications were intended to be confidential. Maxwell Decl. ¶ 4.

Defendant has sworn that all of her communications with Barden were for the purpose of seeking legal advice. However, the content of the communications addresses matters not legal on their face (specifically, a press statement). See id. Not all communications between an attorney and client are privileged, and "one who seeks out an attorney for business or personal advice may not assert a privilege as to those communications." Matter of Bekins Record Storage Co., Inc., 62 N.Y.2d 324, 329, 465 N.E.2d 345 (1984). Moreover, even if inherently related to ongoing litigation, "[c]ase law makes clear that a media

---

having been called a "hard nosed litigator," he must have been qualified to practice law at some point in time.

21

campaign is not a litigation strategy." <u>Egiazaryan</u>, 290 F.R.D.
at 431 (citation omitted).

    Notwithstanding, the Court must consider the communications
in their full context. <u>Rossi</u>, 73 N.Y.2d at 594. Alone, it would
be difficult to deem communications that predominately address a
press statement as legal advice. Nevertheless, Defendant's
assertion that a press statement is a necessary precursor to
litigation "under the fair comment laws of the UK" changes the
context. <u>See</u> Menninger Decl. ¶ 20. Considering the legal
necessity of a press statement in the context of the legal issue
for which Defendant sought Barden's advice, the communication
with Barden is predominately for the purposes of providing legal
services. Defendant has therefore met her burden of establishing
Documents #1045-46 are privileged.

    **5.**    **Communications with Barden and Gow Must Be Produced**

    Defendant claims the protection of the attorney-client and
agency privileges apply to communications with Barden and Gow.
<u>See</u> Privilege Log. These communications include documents #1044,
1047-51 (as set forth above), 1052-58,[10] and 1088-90. Defendant's

---

[10] Two chains in this series, #1052-55 and #1055-5, appear to be
forwarded in their entirety ▇▇▇▇▇▇▇▇▇▇ The messages to

privilege log does not list #1063-64 as a communication between
Defendant, Barden, and Gow, but the chain nonetheless does
include a message between this group, and it is analyzed
accordingly.

Defendant argues "Gow is the agent for Ms. Maxwell," thus
taking advantage of the principle that attorney-client privilege
may apply to communications between an agent and the client's
counsel. Def.'s Supp. Opp. at 8. The test dividing agency (and
thus privilege protection) and lack thereof (and thus waiver) is
the necessity of the third-party in facilitating the
confidential communications between counsel and client.[11] Mileski
v. Locker, 14 Misc. 2d 252, 256, 178 N.Y.S.2d 911, 916 (Sup. Ct.
1958); accord Don, 866 N.Y.S.2d 91; Egiazaryan, 290 F.R.D. at
431.

Defendant's citations with respect to this issue are
inapposite, referring to agents who more explicitly facilitated
attorney-client communication.[12] Defendant's most relevant

---

will be addressed infra §V(6). The messages contained
between Defendant, Barden, and Gow are addressed in this
section.
[11] The title "agent" is not determinative of whether Defendant's
privilege assertion survives the applicable test.
[12] For example, Hendrick v. Avis Rent A Car Sys., Inc.. involved
a quadriplegic plaintiff who has been involved in a
"catastrophic" car accident rendering him unable to seek legal

citation is to In re Grand Jury Subpoenas, 265 F. Supp. 2d 321 (S.D.N.Y. 2003), which directly addressed the role of public relations consultants. That court found that:

> (1) confidential communications (2) between lawyers and public relations consultants (3) hired by the lawyers to assist them in dealing with the media in cases such as this (4) that are made for the purpose of giving or receiving advice (5) directed at handling the client's legal problems are protected by the attorney-client privilege.

Id. at 331. It has not been alleged that Barden hired Gow. In fact, Defendant swears that she hired Gow and Barden simultaneously. Maxwell Decl. ¶ 6. These facts are significant not as they relate to Gow's relationship to Defendant, but because they suggests that Gow's necessity in the provision of legal advice was not material to whether he was included in communications with Barden.

---

counsel both physically and emotionally. 944 F. Supp. 187, 189 (W.D.N.Y. 1996). Mileski v. Locker involved interpretation to surmount a language barrier. 14 Misc. 2d at 255, 178 N.Y.S.2d at 915-6. In First Am. Commercial Bancorp, Inc. v. Saatchi & Saatchi Rowland, Inc., unlike in the instant case, an exclusive agency agreement between the Defendant company and third party was provided to the court and upon which the court relied. Stroh v. General Motors Corp. involved a tragic underlying car accident wherein the 76-year old Plaintiff had lost control of her vehicle driven into a park. Stroh v. Gen. Motors Corp., 213 A.D.2d 267, 623 N.Y.S.2d 873 (1995). That court, "presented with an aged woman required to recall, and perhaps relive; what was probably the most traumatic experience of her life," held the presence of Plaintiff's daughter, who had selected Plaintiff's counsel and driven her to the law office, was necessary to facilitate Plaintiff's communications with counsel. Id. at 874-5.

Defendant has failed to positively establish that Gow was necessary to implementing Barden's legal advice. Defendant repeatedly refers to Gow as an agent and references that Gow provided information to Barden at Defendant's requests "so as to further Mr. Barden's ability to give appropriate legal advice." Defendant, as cited above, relies on fair-comment law to prove Gow's necessity in the relationship with Barden. Def.'s Supp. Opp. at 9. However, at best, this establishes only that Gow's input and presence potentially added value to Barden's legal advice. "[T]he necessity element means more than just useful and convenient but requires the involvement be indispensable or serve some specialized purpose in facilitating attorney client communications." Don, 866 N.Y.S.2d 91 (citing Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp., 1999 WL 378337, *4 (S.D.N.Y. 1999)).

The structure of fair comment law may require counsel to engage in public relations matters by providing a comment to press, but it does not follow that counsel is unable to communicate with his client on that issue without a public relations specialist. Advice on the legal implications of issuing a statement or its content is not predicated on public relations implications. Likewise, it has not been established that the Defendant was incapable of understanding counsel's

25

advice on that subject without the intervention of a "media agent" or that Gow was translating information between Barden and Defendant in the literal or figurative sense. That Gow issued the statement drafted by Barden or signed a contract with Defendant speaks to his intimate involvement, but not to his necessity. "[W]here the third party's presence is merely useful but not necessary, the privilege is lost." Allied Irish Banks, P.L.C., 240 F.R.D. at 104 (citation and internal quotation marks omitted). Defendant has not met her burden to establish hat Gow was necessary to facilitate the relationship with Barden, as the standard requires.

Similarly, Defendant has failed to establish that the predominate purpose of the communications in question was the ultimate provision of legal advice. Throughout the communications, Gow is involved for public relations matters.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████ Like several other exchanges involving Gow, this line of emails was prompted by an inquiry from a reporter. ██████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

26

████████████████████████████████████████████████ These are not
the necessary elements or evidence of facilitating legal advice
between client and counsel.

To be sure, some legal advice is included in the
communications between Barden, Defendant, and Gow. However, as
the quotes above demonstrate, both Barden and Gow provide
Defendant with what amounts to public relations, not legal,
advice. It is something between business and personal advice,
neither of which are privileged even when coming from counsel.
Matter of Bekins, 62 N.Y.2d 324. Furthermore, the protection of
privilege is presumptively narrow, not broad. In re Shargel, 742
F.2d 61, 62 (2d Cir. 1984) ("Since the privilege prevents
disclosure of relevant evidence and thus impedes the quest for
truth, ... it must be strictly confined within the narrowest
possible limits consistent with the logic of its principle."
(citation and internal quotation marks omitted)). Accordingly,
where Gow's necessity has not been established, Defendant cannot
include the entire field of public relations matters into the
realm of legal advice by virtue of a law that implicates press
coverage.

It has not been established that Gow's input on public
relations matters was necessary for Barden to communicate with

Defendant or provide legal advice, or that the primary purpose of these communications was the provision of legal advice. Consequently, Defendant has failed to demonstrate the elements necessary to sustain the protection of privilege with respect to the communications with Barden and Gow in documents #1044, 1047-51 (as set forth above), 1052-58, 1063-64, and 1088-90. Defendant must produce these emails.

### 6. Communications with

Defendant claims the protection of the common interest privilege applies to communications with                  specifically encompassing documents #1029, 1055-58, and 1059-83. These communications with                  include communications with others, and thus each batch will be addressed separately.

### a. Documents #1055-58, #1063-64, and #1088-90 Must Be Produced

The communications in each of these chains include messages between Defendant, Barden, and Gow that were ultimately forwarded to                  As reasoned above, attorney-client privilege does not apply to the underlying emails between Defendant, Barden, and Gow. Accordingly, they cannot be

28

rehabilitated by the common interest privilege. Thus, this field of documents and the common interest claim with ███ is narrowed to the communications with ███ found on #1055, #1063, and #1088, as the remainder of the documents in question have already failed to qualify as protected under the attorney-client and agency privileges.

To assert the common interest privilege, the party claiming its protection must establish (i) the documents in question are attorney-client communications subject to the attorney-client privilege, (ii) the parties involved share a common legal interest, and (iii) "the statements for which protection is sought were designed to further that interest." Chevron Corp. v. Donziger, 296 F.R.D. 168, 203 (S.D.N.Y. 2013) (citations omitted).[13] To merit any analysis regarding the presence of the attorney-client privilege, either the underlying forwarded messages must include communications protected by the attorney-client privilege, or the messages to ███ (excluding the forwarded materials) must themselves show some attorney-client communication.

---

[13] "New York courts applying the common interest rule to civil proceedings have often looked to federal case law for guidance." Egiazaryan v. Zalmayev, 290 F.R.D. 421, 433 (S.D.N.Y. 2013) (collecting cases).

As set forth above, the underlying communications that were sent to ████████ in this batch all fail to qualify as protected under the attorney-client privileges, because Defendant has failed to meet the predominance requirement and failed to demonstrate that Gow's inclusion did not constitute waiver pursuant to the agency privilege. The emails between Defendant and ████████ (excluding the forwarded communications that include Barden and Gow) do not themselves include counsel or even legal advice, and thus cannot themselves qualify as attorney-client communications, let alone privileged communications. Accordingly, these emails fail to meet the first element of the common interest privilege. Documents #1055-58, #1063-64, and #1088-90 must be produced in their entirety.

**b. Document #1059 is Privileged**

Document #1059 includes messages between ████ and ████████ . Unlike the emails including messages between Defendant, Barden, and Gow, the messages between ████████ ████████ merit an inquiry regarding the presence of a privileged attorney-client communication.

Defendant swears ███████ represented ███████ "span[ing]

several years, including 2015," when the email in question was

sent. Maxwell Decl. ¶ 14. Defendant has not produced an

affidavit from ██████████████ attesting to this fact or any

representation agreement. However, the communications contained

in Defendant's in camera submissions themselves demonstrate an

attorney-client relationship existed. ███████ refers to himself

on January 12, 2015 as "██████████ primary counsel" in

the present-tense and with respect to specific ongoing legal

matters. Accordingly, an attorney-client relationship is

established between ███████ and ███████ The communication from

███████ in document #1059 also demonstrates it was made within

the context of that relationship, both topically and

chronologically. Defendant's affidavit establishes her intent

that her communication with ███████ regarding legal advice was

to be kept confidential. Maxwell Decl. ¶ 16.


The law distinguishes between a common legal defense

interest, which cloaks related communications in privilege, and

a common problem, to which the privilege does not apply.

Egiazaryan, 290 F.R.D. at 434 (citing Finkelman v. Klaus, 2007

WL 4303538, at *4 (N.Y.Sup.Ct. Nov. 28, 2007)). "[A] limited

common purpose [that] necessitates disclosure" meets the

standard. Defendant and ███████ had more than a common problem

31

or a common interest in one another's vindication. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Defendant and

████████ therefore had a sufficiently common purpose that sharing

their legal advice was necessary to put forth a common defense.

Finally, the communication in document #1059 is

logistically related to furthering the common interest between

████████ and Defendant. Accordingly, document #1059 is

privileged.

### c. Documents #1060-61 Must Be Produced

Documents #1060-61 include messages between ████████

████████ which ████████ then forwarded to Defendant. Defendant has

sworn that she understands ████████████████████████

████████████████████████ " Maxwell Aff. ¶ 15. It is not

established when those years were, or even that the period of

time encompassed the communications in question. This belief is

completely uncorroborated, and no content within the

communications tends to show that ████████ was acting in a

representative capacity for ████████ To the contrary, the in

32

camera submissions with ████████ show him to be acting more

likely on his own behalf and in his own interest, discussing

articles or statements he intended to publish to protect his own

rights and reputation. In document #1060-61, ████████ forwarded

this information with a single word of warning to Defendant:

"Careful[.]" Like several other elements of the in camera

submissions, this communication tends to demonstrate that

████████ had a personal interests in conflict with ████████

at the time of the communications in question, arguably

precluding an attorney-client relationship. Defendant has

therefore failed to demonstrate any element of attorney-client

privilege applied to the communications between ████████ and

████████ Accordingly, there is no underlying attorney-client

communication to which the common interest privilege could

attach, and documents #1060-61 must be produced.

> **d. Documents #1029, #1062, #1065, #1066, #1080, #1081,
> #1082, #1083, #1084, #1085-87, #1091, #1092, #1093-
> 94, #1095-96, #1097, and #1098 Must Be Produced**

Each of these documents concerns emails solely between

Defendant and ████████ As reasoned above, Defendant and ████████

were in a common interest relationship for the purposes of these

emails. However, the common interest privilege does not apply to

all communications between two parties sharing a common

interest; a privileged attorney-client communication must still

33

be involved. Pem-Am., Inc. v. Sunham Home Fashions, LLC, No. 03
CIV. 1377JFKRLE, 2007 WL 3226156, at *2 (S.D.N.Y. Oct. 31, 2007)
(finding the common interest privilege did not apply where the
document in question was not a communication where in the party
claiming privilege sought confidential legal advice). For
example, counsel to two parties sharing a common interest may
communicate with one another to provide legal advice in
furtherance of that interest, id., or two parties sharing a
common interest may disclose the advice of their counsel in
furtherance of their interest. Egiazaryan, 290 F.R.D. at 434.
However, the common interest privilege only "operates to protect
privileges such as the attorney-client privilege that that would
otherwise be waived by disclosure." Id. These communications are
mostly mundane exchanges and contain no indication that there is
any underlying communication from any attorney, even with
respect to the few communications that discuss legal issues.
Defendant has not pled any other underlying privilege applies.
Accordingly, Defendant has failed to meet her burden and these
documents must be produced.

e. Documents #1067-1073 and #1074-79 Are Privileged

Documents #1067-1073 and #1074-79 are mostly duplicative.
In the #1074-79 series, communications between Barden, Defendant

34

and Cohen and between Barden and ███████ are forwarded. This same series is duplicated in #1067-73, with an additional email at the most recent end of the chain between ███████ and Defendant.

As discussed above, attorney-client relationships have been established for the relevant time periods between Defendant and Barden and between ████████████ Defendant submits Cohen, of Cohen & Gresser, LLP, continued as her counsel after Jaffe left Cohen & Gresser. Maxwell Decl. ¶ 11. Defendant has submitted a firm profile showing Cohen to be a Partner at Cohen & Gresser. Maxwell Decl., Ex. C. Cohen is copied on a single email from Barden containing legal advice in the context of the purposes for which Defendant hired Barden and, originally, Jaffe. The content of the email supports Defendant's contention that Cohen represented her in the United States, while Barden represented her interests in the UK. Accordingly, Cohen's presence did not waive attorney-client privilege. Privilege is therefore established to the underlying communications that were ultimately forwarded to ███████ Likewise, as reasoned above, Defendant was in a common interest relationship with ███████ with respect to advice relating to ████████████████ ███████ Consequently, this entire string of communications is privileged.

35

### f. Document #1099 Must Be Produced

Defendant's privilege log cites document #1099, an email between Defendant and ▮▮▮▮▮▮ as responsive but protected by the common interest privilege. This document was not provided for in camera review. Accordingly, Defendant has failed to meet her burden of establishing the elements of privilege apply and this document must be produced.

### 7. Communications with ▮▮▮▮ and ▮▮▮▮, Documents #1030-43, Must Be Produced

Documents #1030-43 contain a single email from Defendant to ▮▮▮▮▮▮▮▮▮▮▮ containing a lengthy attachment of a transcript ▮▮▮▮▮▮▮▮▮▮▮ As reasoned above, Defendant has failed to establish ▮▮▮▮▮▮▮ were in an attorney-client relationship. Defendant has not pled any information regarding ▮▮▮▮ or relating to the communications included in the attachment. Therefore, no underlying attorney-client privilege has been established and the common interest privilege cannot apply. These documents must be produced.

36

VI.  Conclusion

For the foregoing reasons and as set forth above,
Plaintiff's motion to compel is granted in part and denied in
part. Defendant is directed to produce documents as set forth
above on or before April 18, 2016.

This matter being subject to a Protective Order dated March
17, 2016, the parties are directed to meet and confer regarding
redactions to this Opinion consistent with that Order. The parties
are further directed to jointly file a proposed redacted version
of this Opinion or notify the Court that none are necessary within
two weeks of the date of receipt of this Opinion.

It is so ordered.

New York, NY
April /5, 2016

ROBERT W. SWEET
U.S.D.J.