**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------X

VIRGINIA L. GIUFFRE,

      Plaintiff,

v.

GHISLAINE MAXWELL,

      Defendant.

                                 **15-cv-07433-RWS**

------------------------------------------------------X


**<u>DEFENDANT'S MOTION TO COMPEL NON-PRIVILEGED DOCUMENTS</u>**


Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
East 10th Avenue
Denver, CO 80203
303.831.7364

Defendant Ghislaine Maxwell ("Ms. Maxwell") files this Motion to Compel Non-Privileged Documents contained on Plaintiff's Privilege Log.

## CERTIFICATE OF CONFERRAL

Pursuant to Federal Rule of Civil Procedure 37(a)(1), undersigned counsel certifies that she conferred with opposing counsel regarding the issues contained herein and attempted to reach resolution on these issues without need for Court intervention.  The parties have been unable to reach resolution on these issues.

## INTRODUCTION

Plaintiff asserts improper claims of attorney-client and work product privilege in her privilege log and wrongfully withheld documents based on these unsubstantiated claims. See Declaration of Laura Menninger ("Menninger Decl.") at Ex. A, Plaintiff's Privilege Log. Documents are also were improperly withheld on the basis of joint defense and/or common interest privileges.  Id.  The categories of improperly withheld documents include: 1) communications regarding media advice; 2) pre-existing documents transmitted to an attorney; 3) documents shared with or communicated to unidentified third parties, waiving any privilege; 4) documents primarily for the purpose of providing business advice; and 5) documents allegedly subject to an unidentified common interest or joint defense protection.  In addition, Plaintiff has failed to furnish an adequate privilege log, making it impossible for Plaintiff to assess the propriety of certain privilege claims.  This alone provides grounds for rejecting her asserted privileges. *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 164 (S.D.N.Y. 2014).

## ARGUMENT

I.    **The Attorney-Client and Work Product Privilege Standards and Limitations**

   *a.  The Attorney-Client Privilege*

1

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "In order to balance this protection of confidentiality with the competing value of public disclosure, however, courts apply the privilege only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable." *Mejia*, 655 F.3d at 132 (quotation marks and alterations omitted). Because the privilege "stands in derogation of the search for truth so essential to the effective operation of any system for justice ... the privilege must be narrowly construed." *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (citing *United States v. Nixon*, 418 U.S. 683, 710 (1974)). "The party asserting the privilege ... bears the burden of establishing its essential elements." *Mejia*, 655 F.3d at 132. "The party invoking the privilege also has the burden to show that the privilege has not been waived." *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 391 (S.D.N.Y. 2015).

   b. *Work Product Privilege*

The work-product privilege protects documents created by counsel or per counsel's directive, in anticipation of litigation. *See In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002,* 318 F.3d 379, 383 (2d Cir. 2003). The attorney work-product privilege "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles,* 422 U.S. 225, 238 (1975).  Again, the party asserting the work-product privilege "bears the heavy burden of establishing its applicability." *In re Grand Jury Subpoena Dated July 6, 2005,* 510 F.3d 180, 183 (2d Cir. 2007).

2

II.     **Attorney-Client Communications Regarding Public Relations are Not Privileged**

   a.  *Attorney communications relating primarily to public relations advice are not privileged, as already determined by this Court*

Plaintiff's privilege log contains 28 entries of documents withheld "re media communications" or "media issues" asserting privilege based on "AC Privilege and Work Product/joint defense/common interest."  Menninger Decl., Ex. B.[1]  Plaintiff's refusal to disclose these communications is paradoxical in light of Plaintiff's previous position in this case. Plaintiff argued to this Court on February 26, 2016 that communications with attorneys concerning public relations advice are not protected by the attorney-client privilege.  As stated by Plaintiff:

> As this Court is aware, not all communications with an attorney are privileged. The attorney-client privilege only encompasses confidential communications necessary to obtain informed legal advice and advocacy. *See In re Grand Jury Subpoena Duces Tecum Served Upon Shargel*, 742 F.2d 61, 62 (2d Cir.1984). Indeed, "[a] communication which has no direct relevance to the legal advice to be given, unlike a communication which relates to the subject matter of the attorney's professional employment, is a collateral matter, which is not privileged." *Sarfati v. Bertino*, 24 Misc. 3d 133(A), 890 N.Y.S.2d 371 (App. Term 2009).
>
> The attorney-client privilege is also narrowly interpreted: "[s]ince the privilege prevents disclosure of relevant evidence and thus impedes the quest for truth, ... it must 'be strictly confined within the narrowest possible limits consistent with the logic of its principle.' ' *See In re Shargel*, 742 F.2d at 62 . (quoting 8 J. WIGMORE, EVIDENCE § 2291 (McNaughton rev. ed.1961)).
>
> . . .
>
> The attorney-client privilege "does not extend to business advice, even if provided by an attorney." *Stenovich v. Wachtell, Lipton, Rosen & Katz*, 195 Misc. 2d 99, 106-07, 756 N.Y.S.2d 367, 376 (Sup. Ct. 2003), citing *Fine v. Facet Aerospace Prod. Co*., 133 F.R.D. 439, 444 (S.D.N.Y.1990). **By the same principle, public relations advice, even if given by an attorney, is not privileged.**

---

[1] For the Court's convenience, Plaintiff's privilege log has been converted from a PDF file to and Excel file so that the challenged log entries could be separated into discrete issues.  It is possible the conversion caused slight modifications the Plaintiff's log.  For that reason, the complete log in the format provided by Plaintiff is included in Exhibit A.

*Plaintiff, Virginia Giuffre's Motion To Compel The Production Of Documents Subject To Improper Claim Of Privilege*, Docket Entry ("DE") 33, at 10-11 (emphasis supplied).

On April 15, 2016, this Court entered an Order adopting Plaintiff's position and compelling the production of certain attorney-client communications related to public relations issues. The Court found "Not all communications between an attorney and client are privileged, and 'one who seeks out an attorney for business or personal advice may not assert a privilege as to those communications.'" (*citing In Matter of Bekins Record Storage Co. Inc.*, 62 N.Y.2d 324, 329 (1984)). This Court noted, "Alone, it would be difficult to deem communications that predominantly address a press statement as legal advice."[2] *Id.* at 20. It is apparent from the documents logged by Plaintiff that communications contained in her emails "amounts to public relations, not legal, advice." *Id.* at 27. The Court has determined advice of this nature "is something between business and personal advice, neither of which are privileged even when coming from counsel." *Id.* This is the law of the case and Plaintiff should be required to produce the 28 documents identified in the privilege log related to "media issues." Menninger Decl., Ex. B

> b. *Communications for the purposes of disseminating information to the press and other third parties are not privileged*

The logged communications relating to "media issues" also coincide with Plaintiff's various press statements, interviews and published articles. Where communications between an attorney and client are made for the purpose of disclosing that information to third parties or the public, no privilege attaches.

---

[2] The Court went on to analyze the issue in light of the fair comment laws of the UK, and did withhold certain documents that were necessarily for the purpose of legal advice under UK law. Of course, there is no suggestion that Plaintiff, a United States citizen with claims pending in various jurisdictions in the United States, consulted with her American counsel to obtain advice regarding the fair comment laws of the UK.

"Whenever the matters communicated to the attorney are intended by the client to be made public or revealed to third persons, ... the element of confidentiality is wanting." 5 McCormick on Evidence § 91 at 408 (Kenneth S. Broun, 6th ed. 2006). "[C]ommunications between client and attorney intended for publication or communication to third-parties, are not intended to be confidential when made in order to obtain legal assistance and therefore are not within the privilege." *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 83-84 (W.D.N.Y. 2011); *In re von Bulow,* 828 F.2d 94, 102 (2d Cir.1987) ("conversations not intended to be confidential, but ... meant to be passed on to third parties" are not privileged) (*citing United States v. Tellier,* 255 F.2d 441, 447 (2d Cir.1958)); *see also Calvin Klein Trademark Trust v. Wachner,* 124 F.Supp.2d 207, 209–10 (S.D.N.Y. 2000) (proposed press release relating to possible acquisition and memorandum requesting comments of potential seller's attorneys not confidential communication for the purpose of obtaining legal advice).

In light of Plaintiff's extensive media campaign and the timing of these purportedly privileged communications compared to statements made in the press by Plaintiff and her counsel, the information being conveyed appears to be for the purpose of conveying Plaintiff's story to the world.  There can be no expectation of confidentiality when the intent is to pass information to the press, and courts (like Plaintiff's counsel) routinely have recognized that "[a] media campaign is not a litigation strategy." *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 431 (S.D.N.Y. 2013).  No privilege attaches to these communications because the information conveyed was clearly intended to be published broadly as part of Plaintiff's ongoing media campaign.

      *c.*   *Stan Pottinger's engagement appears to be for the purpose of public relations, not legal, advice*

Included on the privilege log are 29 entries including Stan Pottinger as a person within the distribution chain.  *See* Menninger Decl., Ex. D.  Pottinger is an attorney.  According to public records, he is licensed to practice in the States of New York and California.  In more recent years, however, it appears that Pottinger's primary occupation is as a novelist.  *See* Menninger Decl., Ex. D.

It is entirely unclear what Pottinger's role is vis-a-vis Plaintiff, this litigation, or any matter on which he has communicated with Plaintiff.  Based on this Court's Order, Plaintiff has produced an "engagement" letter between herself and Pottinger.  *See* Menninger Decl., Ex. E. The Letter is dated ███████████████ but does not state the actual creation or execution date. *Id*.  The complete content of the letter is:

███████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████

*Id.*

What remains unclear is the nature of the engagement between Pottinger and Plaintiff.  In what capacity is he representing her on ███████████████████████

███████████  Pottinger has never appeared as counsel in any litigation in which Plaintiff is a party or a witness.  He has never signed a pleading.  He has never attended a hearing or deposition. The only thing that is obvious is that of the 263 specifically logged communications including Pottinger, 12 of them relate to "media issues" and one relates to advice regarding "potential public statements."  Menninger Decl., Ex C, Items 20-23, 25, 49, 56, 69, 99, 140-142 and 149. In light of Pottinger's primary occupation in the most recent years as a novelist, there is ample reason to suspect his primary role relates to communications with the media or Plaintiff's widely

---

[3] Pottinger is also included among the authors or recipients of the categorically logged communications related to various cases.

publicized desire to publish a book regarding the alleged ███████████████  If this is

the case, then like the other media and public relations communications, there is simply no

attorney-client privilege.  Ms. Maxwell requests that all communications including Pottinger be

submitted to the Court for in camera review to determine if the nature of the relationship and/or

communications are in his capacity as an attorney and the primary purpose of the communication

was the provision of legal, as opposed to media, book publication or public relations advice.

III.    **Documents do not Become Privileged Simply Because they are Transmitted to an Attorney**

Plaintiff has also logged a number of documents "providing information sought by

attorneys to provide legal advice, with attachment" or "conveying requested information to assist

in providing legal advice."  See Menninger Decl., Ex. F.  In some cases, the attachments are

logged; in others they are not.4  At this point, Ms. Maxell does not contest that the

communications (i.e. the actual email or letter) appear to be between certain attorneys and

Plaintiff.  The documents attached or transmitted in response to the communications, however,

are not automatically privileged just because they were transmitted to Plaintiff's attorneys.  This

is the only basis on which the documents are being withheld.  See e.g., Menninger Decl., Ex. F,

Item 108 ("Attached Information sought by attorneys to provide legal advice").  If these are, as it

seems, pre-existing documents, they do not become "privileged" simply because they were

provided to counsel.  *Colton v. United States*, 306 F.2d 633, 639 (2d Cir. 1962) ("Insofar as the

papers include pre-existing documents and financial records not prepared by [the party] for the

purpose of communicating with their lawyers in confidence, their contents have acquired no

special protection from the simple fact of being turned over to an attorney."); *Astra Aktiebolag v.*

---

4 Plaintiff concedes that the items logged at number 92 and 93 are not privileged, but claims they include a notice provision requiring notice to a third party prior to their production.  Plaintiff is providing the notice, and claims she will produce the documents if no objection is made.

*Andrx Pharm., Inc.*, 208 F.R.D. 92, 103 (S.D.N.Y. 2002) ("Attachments which do not, by their content, fall within the realm of the privilege cannot become privileged by merely attaching them to a communication with an attorney.") (quoting *Sneider v. Kimberly–Clark Corp.*, 91 F.R.D. 1, 4 (N.D.Ill. 1980)).

Similarly, and as set out more fully above, "communications between client and attorney intended for publication or communication to third-parties, are not intended to be confidential when made in order to obtain legal assistance and therefore are not within the privilege." *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 83-84 (W.D.N.Y. 2011) (collecting cases).  If and to the extent that the "attachments" are not pre-existing documents, but rather facts or other information intended for communication to third parties, there is no privilege in such factual statements.

IV.    **Plaintiff's failure to Disclose the "Professionals Retained by Attorneys to Aid in the Rendition of Legal Advice" Results in a Waiver of any Privilege Claim**

Plaintiff has chosen to "categorically" log thousands of documents relating to various litigations, including CVRA Case, Maxwell Case, Dershowitz Case, Epstein Case and a "catch all" generally describing what might be attorney-client communications or work product regarding "potential litigations."  Menninger Decl., Ex. G. The "categorically logged" documents include unidentified communications with or transmissions to "Professionals retained by attorneys to aid in the rendition of legal advice."  *Id.* These are not paralegals or other legal staff, who are listed separately.  These are un-identified third parties with whom information was shared that is now being withheld as privileged.

The log is completely deficient under Fed. R. Civ. P. 26(b)(5)(A)(ii), which requires that a party withholding documents on the basis of privilege "describe the nature of the documents,

communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, **will enable other parties to assess the claim**." (emphasis supplied).  The Local Rules are even more specific, and require a party withholding a document to identify "(i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other."  S.D.N.Y. LCiv.R 26.2(A).  Plaintiff fails to meet this standard.

The Rules provide that a privilege log containing the information required in Fed. R. Civ. P. 26(b)(5)(A)(ii) and S.D.N.Y. LCiv.R 26.2(A) must be served at the time objections are filed, and failure to do so may result in waiver of the privilege claims.  *See S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 162 (S.D.N.Y. 2014) (failure to provide adequate descriptions of the subject matter, authors and recipients of the withheld documents resulted in waiver of privilege)*; see also In re Chevron Corp.*, 749 F. Supp. 2d 170, 181 (S.D.N.Y.), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010).

Here, Plaintiff completely fails to comply with the required disclosures.  She attempts to invoke privilege over information conveyed to third parties[5] without any identification of who these "professionals" are, what their role is, or how they were necessary to aid in the retention of legal advice.  Ms. Maxwell requests that Plaintiff be compelled to produce the documents which

---

[5] The law is clear that the attorney-client privilege is waived when otherwise protected communications are transmitted to third parties. *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir.2015). ("A party that shares otherwise privileged communications with an outsider is deemed to waive the privilege by disabling itself from claiming that the communications were intended to be confidential.").  While there are limited exceptions to the waiver rule, the party asserting the privilege must establish that disclosure to a third party "was necessary for the client to obtain informed legal advice," which "requires that the involvement of the third party be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communication" *Green v. Beer*, No. 06 Civ. 4156 (KMW)(JCF), 2010 WL 3422723, at *3 (S.D.N.Y. Aug. 24, 2010).

were shared with these third party individuals and a ruling that any privilege over these communications has been waived by the failure to provide a proper log under Fed. R. Civ. P. 26(b)(5)(A)(ii) and S.D.N.Y. LCiv.R 26.2(A).

V.      **Business Advice Regarding Victims Refuse Silence is Not Privileged**

Plaintiff also has logged 28 documents relating to the entity Victims Refuse Silence ("VRS") Menninger Decl., Ex. H. This is an organization set up in December of 2014, purportedly for the purpose of helping victims of sexual abuse or sexual trafficking. The Articles of Incorporation were filed by Bradley Edwards (Plaintiff's counsel) mere days prior to the filing of the Joinder Motion in the CVRA Case in which various allegations were made about Ms. Maxwell, Alan Dershowitz and Prince Andrew. Menninger Decl., Ex. I. Brad Edwards is the registered Agent and a Director of VRS. *Id.*

First, at least three of the logged entries are obviously not privileged. They are simply communications "re: VRS communications." *See* Menninger Decl., Ex G, Items 132, 133 and 146. In other words, they are communications about what to say publically about VRS. They do not even purport to be related to legal advice, or necessary for the purpose of seeking legal advice.

Second, while many of the entries claim they are "re legal advice related to VRS," the claim is highly dubious. VRS has done pretty much nothing since its inception in 2014, according to Plaintiff. *See* Menninger Decl., Ex. J at 317:25-318:10. What type of legal advice does it need? It is not involved in any litigation, and it has already completed its corporate filings. What seem more probable is that the communications are related to purely business matters, such as setting up websites in an attempt to portray public proof that the organization is actually real, as opposed to a shell created for the purpose of concocting a damages theory for

Plaintiff's contemplated litigations.  The attorney-client privilege "does not extend to business advice, even if provided by an attorney." *Stenovich*, 756 N.Y.S.2d at 376.

Third, to the extent that the communications are with Edwards, there is every reason to believe that they relate to his status as a Director of VRS, acting in a business capacity and giving business advice.  In order to claim privilege, the attorney receiving or providing privileged communication must be acting as an attorney and not as a business advisor. 8 Wright & Miller, *Federal Practice and Procedure* § 2017, at 136 (1970).  "When a corporate officer also acts as general counsel, wearing 'two hats,' the nature of his communications must be closely scrutinized to separate business communications from legal communications, as the attorney-client privilege is narrow." *Fares Pawn, LLC v. Indiana*, No. 3:11-CV-136-RLY-WGH, 2012 WL 3580068, at *5 (S.D. Ind. Aug. 17, 2012).  Again, where the privilege log does not permit evaluation of whether the matter at issue was advice on merely business matters as opposed to legal advice, the party asserting the privilege waives the right to claim privilege. *See Yorkville Advisors, LLC*, 300 F.R.D. at 162; *see also In re Rospatch Sec. Litig.*, No. 1:90-CV-805, 1991 WL 574963, at *8 (W.D. Mich. Mar. 14, 1991) (privilege waived where information on log was insufficient to show if attorney, who was also a board member, was providing legal or business advice).

Simply put, in light of the business nature of the relationship between VRS and Edwards, the entries are deficient in providing the information necessary to evaluate the claim of privileged.  As discussed above, this should result in a waiver.

## VI.   Plaintiff Fails to Establish the Elements for Invoking the Common Interest and Joint Defense Doctrines

"The common interest rule is an extension of the attorney-client privilege and not an independent basis for privilege." *Pem-Am., Inc. v. Sunham Home Fashions*, LLC, No. 03 CIV.

1377JFKRLE, 2007 WL 3226156, at *2 (S.D.N.Y. Oct. 31, 2007).  "[T]he so-called joint

defense privilege or common interest rule . . . serves to protect the confidentiality of

communications passing from one party to the attorney for another party where a joint defense

effort or strategy has been decided upon and undertaken by the parties and their respective

counsel." *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 203 (S.D.N.Y. 2013) (internal quotation

marks omitted). "A party asserting it first must establish that the documents purportedly subject

to the rule are in fact attorney-client communications subject to the attorney-client privilege." *Id*.

Once the party claiming common interest privilege has established that the documents in

question are subject to the attorney-client privilege, it must further show that (1) it shares a

common legal interest with the party with whom the documents or information were shared, and

(2) the statements for which protection is sought were designed to further that interest. *Id*.

(internal quotes omitted).

"The common interest rule does not apply merely because two parties share the same

attorney or because one party has an interest in a litigation involving another party. Rather,

'[t]here must be a substantial showing by parties attempting to invoke the protections of the

privilege of the need for a common defense as opposed to the mere existence of a common

problem.' *Finkelman v. Klaus*, 2007 WL 4303538, at *4 (N.Y.Sup.Ct. Nov. 28, 2007)."

*Egiazaryan v. Zalmayev*, 290 F.R.D. at 434.

Plaintiff has included "common interest/joint defense" as a basis for withholding each

and every document included in the privilege log.  Yet, Plaintiff fails to identify who she has a

common interest with or why there is a need for a common defense.  There is no indication of

when the alleged joint defense arose, the subject matter of the defense, the common interest

involved or the persons with whom she claims a common interest.  Plaintiff's failure to provide

adequate descriptions of the subject matter, authors and recipients of the withheld documents resulted in waiver of privilege.  See *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 162 (S.D.N.Y. 2014).

## CONCLUSION

WHEREFORE, Ms. Maxwell requests that the Court Compel the production of 1) the items identified in Plaintiff's privilege log ID 2, 7, 9, 12-14, 19-28, 30-32, 34-41, 47, 49-51, 56-58, 61-73, 81-82, 84-85, 30-93, 98-99, 104, 106-109, 131-144, 146-151 and 153 (Menninger Decl., Exs. B, C, F and H); 2) any items "categorically" logged in items 125-128 &152 including either Stan Pottinger or any other "professional;" and 3) all documents withheld on the basis of the common interest/joint defense rules.

Dated: May 20, 2016.

Respectfully submitted,

/s/ Laura A. Menninger
Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:   303.831.7364
Fax:      303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on May 20, 2016, I electronically served this *Defendant's Motion To Compel Non-Privilege Documents* via ECF on the following:

Sigrid S. McCawley
Meridith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Paul G. Cassell
S.J. Quinney College of Law, University of Utah
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

Bradley J. Edwards
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

*/s/ Nicole Simmons*
Nicole Simmons

14