# United States District Court
# Southern District of New York

Virginia L. Giuffre,

        Plaintiff,               Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

        Defendant.

_____/

### PLAINTIFF'S REDACTED MOTION TO EXCEED PRESUMPTIVE TEN DEPOSITION LIMIT IN FEDERAL RULE CIVIL PROCEDURE 30(A)(2)(a)(ii)

Sigrid McCawley (Pro Hac Vice)
Meredith Schultz (Pro Hac Vice)
Boies Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Tel: (954) 356-0011

David Boies
Boies Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Bradley J. Edwards (Pro Hac Vice)
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Tel: (954) 524-2820

Paul G. Cassell (Pro Hac Vice)
S.J. Quinney College of Law
University of Utah
383 University St.
Salt Lake City, UT 84112
Tel: (801) 585-5202[1]

---

[1] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................. ii

I.  FACTUAL BACKGROUND ........................................................................ 2

    A.  Depositions Taken Thus Far By Ms. Giuffre. ....................................... 4

        1.  Ghislaine Maxwell (7 Hours) ................................................. 4

        2.  Johanna Sjoberg (3 ½ Hours). ............................................... 9

    B.  Future Depositions Sought By Ms. Giuffre. ......................................... 11

        3.  Juan Alessi (3 ½ Hours). ...................................................... 11

        4.  Maria Alessi (3 ½ Hours) ...................................................... 12

        5.  David Rodgers (3 ½ Hours) ................................................... 12

        6.  Rinaldo Rizzo (3 ½ Hours) .................................................... 12

        7.  Jean Luc Brunel (3 ½ Hours). ............................................... 13

        8.  Ross Gow (3 ½ Hours). ......................................................... 13

        9.  Dana Burns (3 ½ Hours) ....................................................... 13

        10.  Jo Jo Fontanella (3 ½ Hours). ............................................. 13

        11.  Detective Joe Recarey (3 ½ Hours). .................................... 14

        12.  Michael Reiter (3 ½ Hours) ................................................. 14

        13.  Emmy Taylor (3 ½ Hours). .................................................. 15

        14.  Alexandra Hall (3 ½ Hours). ............................................... 15

        15.  Nadia Marcinkova (3 ½ Hours) ........................................... 16

        16.  Sarah Kellen Vickers (3 ½ Hours). ..................................... 16

        17.  Jeffrey Epstein (3 ½ Hours). ............................................... 17

II.  DISCUSSION ............................................................................................. 17

CONCLUSION ........................................................................................................................22

# TABLE OF AUTHORITIES

Page

**Cases**

*In re Weatherford International Sec. Litigation,*
  No. 11 CIV. 1646 (LAK) (JCF), 2013 WL 5762923 (S.D.N.Y. Oct. 24, 2013)......................19

*LiButti v. United States,*
  107 F.3d 110 (2d Cir. 1997) .................................................................................................21

*Raniola v. Bratton,*
  243 F.3d 610 (2d Cir. 2001) .................................................................................................19

*Scott v. City of Sioux City, Iowa,*
  298 F.R.D. 400 (N.D. Iowa 2014) ........................................................................................19

**Other Authorities**

Federal Rule of Civil Procedure 29 ...........................................................................................17

Federal Rule of Civil Procedure 30 ...........................................................................................19

Plaintiff Virginia Giuffre, by and through her undersigned counsel, hereby files this motion to take approximately seven additional depositions in this case beyond the presumptive ten deposition limit. Ms. Giuffre's requests is still within the total number of hours allowed by the ten deposition limit because the parties have agreed that they will split the time for all third party witnesses such that Ms. Giuffre will only be expending at most 3 ½ hours at those additional depositions.  In an abundance of caution, even though Ms. Giuffre will not likely be exceeding the total number of hours allowed for depositions, she seeks leave from this Court to confirm that she may proceed with the additional depositions for the reasons stated below.

Ms. Giuffre has alleged that Defendant recruited females for Mr. Epstein, including underage females like herself, under the guise of working in a legitimate position - such as an assistant or as a massage therapist - only to almost immediately be coerced or enticed into engaging in sex for money.  Defendant has challenged the veracity of Ms. Giuffre, and appears to intend to argue that Ms. Giuffre cannot support the allegation that Ms. Maxwell recruited females for Mr. Epstein or that the females were coerced or enticed into sex.  The sexual abuse that lies at the heart of this case took place behind closed doors – doors of Jeffrey Epstein's various private mansions.  Unsurprisingly, Ms. Giuffre must find supporting circumstantial evidence to support her claims.  Moreover, because Mr. Epstein and Defendant were travelling between Mr. Epstein's numerous homes and thus many of the events relevant to this case took place more than 100 miles from the courthouse, Ms. Giuffre cannot compel most of the witnesses to appear via a trial subpoena.  Accordingly, Ms. Giuffre seeks leave to take more than the standard ten depositions in this case.  At this time, she seeks leave to take seven additional depositions, as articulated below.[2]

---

[2] Ms. Giuffre's counsel met and conferred with Defendant's counsel both in person and by phone in an effort to obtain agreement to proceed with these depositions but was unable to obtain an agreement. *See*

## I.   FACTUAL BACKGROUND

The Court is aware of the scope of this case from earlier pleadings and numerous hearings. Initially, Ms. Giuffre anticipated the scope of discovery on this case would be narrow, because many of the events (such as flying to London on one of Epstein's planes with Maxwell) were supported by seemingly indisputable evidence, such as flight logs, and because the Defendant's counsel initially suggested that she may invoke her Fifth Amendment rights.

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

---

McCawley Decl. at Exhibit 1, May 17, 2016 Email Correspondence from Sigrid McCawley to Laura Menninger and Jeff Pagliuca with proposed deposition calendar.  Ms. Giuffre's ability to determine exactly which depositions would need to be taken was hamstrung by the Defendant's refusal to sit for her deposition.  As the Court will recall, Ms. Giuffre made efforts to set Defendant's deposition starting in February 2016, yet Defendant did not sit for her deposition until after being ordered by the Court on April 22, 2016. ███████████████████████████████████████████████████  Ms. Giuffre's counsel started conferring with Defendant's counsel in February 2016 and has actively engaged in discussion about these depositions that Ms. Giuffre knew she needed to take.  On May 9, 2016, the parties conferred regarding deposition scheduling and Ms. Giuffre noticed depositions in accordance with the dates and locations that Defendant's counsel said were available, and, on May 17, 2016, provided her with a calendar outlining those dates.  *See* McCawley Decl. at Exhibit 1, May 17, 2016 Email Correspondence from Sigrid McCawley. Ms. Maxwell waited until one day before the first deposition scheduled to take place on May 31, 2016 to inform Ms. Giuffre's counsel that she refuses to attend the deposition of this subpoenaed witness unless Ms. Giuffre drops her request to seek additional depositions by way of this motion.  "If you intend to seek more than 10 depositions or to continue the discovery cut-off post July 1, then we will not be appearing at the depositions next week…" *See* McCawley Decl. at Exhibit 2, May 27, 2016 e-mail Correspondence from Laura Menninger to Bradley Edwards.  This obstruction of discovery by refusing to attend subpoenaed depositions that were noticed to her about one month ago on May 4, 2016 should not be condoned.  *See* McCawley Decl. at Exhibit 3, May 4, 2016 Notice of Service and Subpoena to Juan Alessi.  Defendant's counsel is also apparently refusing to appear at the other two depositions set for next week, of Maria Alessi set for Wednesday, June 1, 2016 and originally noticed on May 4, 2016 and Dave Rodgers set for Friday, June 3, 2016 and originally noticed on May 4, 2016.  While Ms. Giuffre had originally hoped to be able to conclude discovery on July 1, 2016, Defendant's refusal to attend depositions and agree to scheduling is putting Ms. Giuffre in a position where she will need additional time to complete discovery.  *See* McCawley Decl. at Exhibit 4, May 26, 2016 Letter from Sigrid McCawley.

███████████████   Therefore, Ms. Giuffre is now required to take the deposition of pilot Dave Rodgers to authenticate his pilot logs and the identity of the individuals on various flights.

In addition, as the Court knows, this case involves allegations that Ms. Giuffre was a victim of sexual abuse when she was under the age of 18 after being recruited by Ghislaine Maxwell and Jeffrey Epstein. ████████████████████████████ ████████████████████████████ ██████████████████████████████████ ████████████████████████████████ ████████████████████████████ Defendant has stated that these claims are obvious lies.

Aside from the deposition of the Defendant, Ms. Giuffre has taken the deposition of one other witness, ██████████████████████████ ████████████████████████████████ ███████████████████████████████ ███████████████████████████ ██████████████████████████████ ████████████████████████████ █████████████████████████ █████████████████████████████████ ██████████████████████

Accordingly, in this manner, Ms. Giuffre needs to depose other witnesses to show the veracity of her claim that Defendant recruited young females, unexperienced in massage, for sex with Jeffrey Epstein, proving that Defendant was lying when she called Ms. Giuffre a liar, and knew

at the time she made the defamatory statement that it was untrue. ████████████

████████████████████████████████████████████████████████

████████████████

Additionally, to prove Ms. Giuffre's allegations, that span multiple years, on multiple continents, and multiple locations, Ms. Giuffre has arranged a series of depositions of persons with direct knowledge of the relevant issues.  To prove her case, Ms. Giuffre believes that a minimum of seventeen depositions will be required.  In reviewing this list of depositions, it is important to understand that only one of them – the Defendant's – will consume a full seven hours of questioning by Ms. Giuffre's counsel, as permitted under the rules. *See* Fed. R. Civ. P. 30(d)(1).  Apart from the Defendant's deposition, all of the other depositions set by Ms. Giuffre have been pursuant to an agreement with Defendant's counsel that Ms. Giuffre will be given half of the seven hours to ask questions.  In the descriptions below, the time Ms. Giuffre will have to ask questions (or thus far has asked questions) is indicated:

**A.  Depositions Taken Thus Far By Ms. Giuffre**

1. **Ghislaine Maxwell (7 hours)**.  The defendant, of course, has relevant information in this case. ██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████















**B.    Future Depositions Sought by Ms. Giuffre**

Ms. Giuffre has also scheduled the following depositions.

3. **Juan Alessi (3 ½ hours)**.  Mr. Alessi's deposition is scheduled for May 31,

2016, in Florida[3].  Mr. Alessi was one of the employees in Epstein's mansion.  Mr. Alessi

provided witness statements to police during the criminal investigation in Palm Beach, and was

previously deposed in civil cases previously brought against Mr. Epstein.  Specifically, Juan

Alessi informed the Palm Beach Police Detective as follows: "Alessi stated that towards the end

of his employment, the masseuses were younger and younger.  When asked how young, Mr.

Alessi stated they appeared to be sixteen or seventeen years of age *at most*." (emphasis added.)

*See* McCawley Decl. at Composite Exhibit 7, Palm Beach Police Incident Report at p. 57.

On November 21, 2005, the Palm Beach Police Department took a sworn statement from

house employee Juan Alessi in which he revealed that girls would come over to give "massages"

and he observed Ms. Maxwell going upstairs in the direction of the bedroom quarters.  *See*

McCawley Decl. at Exhibit 8, November 21, 2005 Sworn Statement at 10.  He also testified that

after the massages, he would clean up sex toys that were kept in "Ms. Maxwell's closet."  *Id.* at

12-13.  He added that he and his wife were concerned with what was going on at the house (*Id.* at

14) and that he observed girls at the house, including one named "Virginia."  *Id.* at 21.  It is

anticipated that he will testify consistently with that previous testimony.

---

[3] As explained above, as of today, Defendant's counsel sent an email refusing to attend this deposition set
for Tuesday, May 31, 2016 (Monday is Memorial Day).  *See* McCawley Decl. at Exhibit 2.

4.  **Maria Alessi (3 ½ hours).**  Ms. Alessi's deposition is scheduled for June 1, 2016, in Florida.  She was, with her husband, household staff for Epstein in the Palm Beach home he shared with Defendant, and, it is anticipated, will corroborate many of the observations of her husband about minor girls and massages inside of Epstein's Florida mansion. Mr. Alessi referenced during his prior deposition the things that Ms. Alessi observed with respect to the sexual massages and involvement of minor girls. Mrs. Alessi is also anticipated to testify regarding Ms. Maxwell's close association with Mr. Epstein and knowledge the visitors.

5.  **Dave Rodgers (3 ½ hours).**  Mr. Rodgers's deposition is scheduled for June 3, 2016, in Florida.  Rodgers was one of the pilots for Epstein's private jets and will, it is anticipated, authenticate his flight logs showing Defendant and Ms. Giuffre together on the same flights. ███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

█████████████████████████████████████

████████████████████████████████

█████████████████████████████████████

████████████████████████████

6.  **Rinaldo Rizzo (3 ½ hours).** Mr. Rizzo is scheduled for June 10, 2016 and will be able to testify regarding his observations of Defendant and Epstein with underage girls (girls less than 18 years of age). Mr. Rizzo was originally set for deposition on May 13, 2016 which was noticed on April 11, 2016, and Defendant requested that Ms. Giuffre reschedule that deposition just days before the scheduled date.

7. **Jean Luc Brunel (3 ½ hours).**  Mr. Brunel's deposition is set for June 7, 2016, in New York.  He has relevant information because he has known Maxwell and Epstein for many years and was present with Epstein and Defendant on many occasions at Epstein's homes in New York, Palm Beach and the USVI, and he has personal knowledge of the disputed issues in this case

8. **Ross Gow (3 ½ hours).**  Mr. Gow is Defendant's press agent who issued the press statement at issue in this case on Defendant's behalf. He will be able to testify regarding the defamatory statement, its distribution, any other defamatory statements that were distributed, and any information he had regarding the basis for the statement.  Ms. Giuffre has requested that Defendant agree to produce Mr. Gow rather than requiring the time and expense of having to serve a subpoena on Mr. Gow, located in London, under the Hague convention, but counsel for Defendant has not agreed to produce Ross Gow for deposition.

9. **Dana Burns (3 ½ hours).**  Ms. Burns' deposition is set for June 8, 2016, in New York City. ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████

10. **Jo Jo Fontanella (3 ½ hours).**  Jo Jo Fontanella is a critical witness because he has been working as Jeffrey Epstein's butler in his New York mansion for a number of years

including during the time that Ms. Giuffre was staying the night at the mansion when she was a minor child. Virginia interacted with Mr. Fontanella frequently during the time she was with Mr. Epstein and the Defendant. Mr. Fontanella will be able to testify to what he observed at the New York mansion including his observation regarding the age and number of females who visited the house each day. Mr. Fontanella will be able to testify regarding Defendant's presence at the home at various times and what he observed Defendant doing while she was at the New York mansion.

11. **Detective Joe Recarey (3 ½ hours).** ██████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ The Palm Beach police report also includes statements about the Defendant. Detective Recarey is expected to testify regarding his investigation, what he observed, the evidence he collected from Mr. Epstein's Palm Beach mansion, the modus operandi of the Epstein organization, and the interviews he conducted with a number of females who were subject to abuse at the Palm Beach mansion. He will also testify regarding Jeffrey Epstein's, who is in a joint defense with Defendant, and his campaign to attack the credibility of the numerous minor children who reported sex offenses against him. Attacking the credibility of their victims, including Ms. Giuffre, is a part of Epstein and Defendant's modus operandi.

12. **Former Palm Beach Police Chief Michael Reiter (3 ½ hours).** Chief Reiter is scheduled for deposition on June 20, 2016. He was the Police Chief who was responsible for overseeing the Palm Beach Epstein investigation. He has made public statements about the 40

victims of Jeffrey Epstein's abuse. He has made public statements about the fact that after he started the investigation into the crimes that took place at the Palm Beach mansion, he was followed by strange men and "investigated".  He also has made public statements that he sent to victims regarding the failure of the government to properly handle the matter. Reiter is relevant to many issues, among others, Defendant's claimed innocence by the fact that she was never formally charged.

13.  **Emmy Taylor (3 ½ hours)**. ████████████████████████████████

████████████████████████████ Ms. Taylor is on flight logs to Europe with Ms. Giuffre and other locations in the United States. ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ Emmy Taylor will be able to testify as to what she observed and experienced during the years she was with Defendant and Epstein.  Ms. Giuffre is still attempting to locate Ms. Taylor, but she is believed to reside in London.

14.  ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████



15. **Nadia Marcinkova (3 ½ hours).** Ms. Marcinkova's deposition is set for June 16, 2016, in New York.[4] Ms. Marcinkova was specifically identified by the U.S. Attorney's Office for the Southern District of Florida as a "potential co-conspirator of Epstein" in the non-prosecution agreement it executed with Mr. Epstein as part of his guilty plea. She has relevant information because she observed the recruitment of underage girls for sex and, in fact, participated in sex acts with minors. She was also on numerous flights with Defendant ███ ███████████████████████████████ and she can provide valuable testimony about Maxwell's role in the recruitment of females.

16. **Sarah Kellen (a/k/a Sarah Kensignton or Sarah Vickers) (3 ½ hours).** Ms. Kellen's deposition is set for June 22, 2016, in New York. Ms. Kellen specifically identified by the U.S. Attorney's Office for the Southern District of Florida as a "potential co-conspirator of Epstein" in the non-prosecution agreement it executed with Mr. Epstein as part of his guilty plea. She has relevant information because she was present during the time when Virginia was with Epstein and the Defendant, and she travelled with all of them during this critical time period. ███

[4] Marcinkova, Kellen and Epstein have not been personally served and are all subject to Ms. Giuffre's Motion for Alternative Service [D.E. 160].

17. **Jeffrey Epstein (3 ½ hours).**   Ms. Giuffre's counsel have been in touch with Epstein's counsel and is continuing to work to schedule his deposition.  Epstein lies at the center of this case, and he can testify that Defendant recruited females for sex with him, including Mrs. Giuffre, under the offer of being a massage therapist, and ultimately paid these females for sex. He can testify that Defendant lured dozens if not hundreds of young females, including many underage females, to his residences for sexual purposes.

## II.  DISCUSSION

Ms. Giuffre has attempted to conduct discrete, focused discovery in this case to limit any burdens on the Defendant and on the Court.  Nonetheless, this case presents numerous challenges that require that she take more than ten depositions – ███████████████████████████

████████████████████████████████████████████████

████  Ms. Giuffre, however, is not seeking to exceed the allotted *hours* for depositions under Rule 45 -- only the *number* of depositions.  Ms. Giuffre seeks leave of Court to 7 additional depositions, for a total of seventeen depositions.

Under the rules, each party is entitled to take ten depositions which total seven hours each.  Fed. R. Civ. P. 29(d)(1).  Thus, the presumptive *time* limit for depositions is a total of seventy hours (10 depositions x 7 hours per deposition).   For the convenience of opposing counsel, Ms. Giuffre has stipulated that they may have half of the seven hour deposition time for each third party witness.  Thus, if the Court grants Ms. Giuffre's motion, she will end up taking less than seventy hours of deposition testimony.  Specifically, she will only take one deposition of seven hours (Defendant's) and sixteen depositions of three-and-a-half hours – a total of 66 and ½ hours of depositions.

In light of the accommodation she had extended to opposing counsel, Ms. Giuffre requested that opposing counsel agree that both sides could schedule additional depositions beyond the presumptive limit of ten.  Defendant refused to agree and is also in disagreement about the proposed schedule for depositions, despite the fact that Ms. Giuffre scheduled depositions based on the dates Defendant's counsel represented were available for depositions in this case.  At Defendant's counsel's request Ms. Giuffre scheduled depositions of witnesses who lived in the same geographical location on consecutive days to limit the travel time and expense. *See* McCawley Decl. at Exhibit 1.

Sadly, it appears that Defendant's counsel may be attempting to delay Ms. Giuffre's ability to obtain depositions because certain witnesses are avoiding service and others were difficult to locate, and the time period for the close of discovery is swiftly approaching. The Court will recall that the Defendant managed to delay her deposition until April 22, 2016, through unnecessary motion practice.  And now that the need to depose other witnesses has been established, Defendant's counsel are employing other delay tactics.  The Court currently has before it, for example, Ms. Giuffre's motion for leave to serve three deposition subpoenas by means other than personal service.  DE 160.  As recounted at greater length in that motion, three of the critical witnesses in this case – Jeffrey Epstein, Sarah Kellan, and Nadia Marcinkova – have all thus far managed to evade service of process, despite repeated, diligent, and expensive efforts at personal service.  Of course, all three of these witnesses are persons who have worked very closely with Defendant in the past.  Epstein is also in a joint defense agreement with Defendant.

In other situations, Ms. Giuffre has been forced to delay taking depositions because of Defense Counsel.  For example, Ms. Giuffre served a subpoena on Mr. Rizzo and opposing

counsel on April 11, 2016 for a deposition a month later on May 13, 2016.  Just days before the

deposition, Defendant's counsel said they didn't realize the deposition was scheduled and that

they could not proceed forward on that date. *See* McCawley Decl. at Exhibit 9, May 5, 2016 E-

mail Correspondence Regarding Scheduled Depositions.  This forced Ms. Giuffre's counsel to

have to reset the witness for June 10, 2016.  Of course, with each delay, Ms. Giuffre is

hamstrung in identifying which further witnesses need to be deposed.

Under Rule 30(a) of the Federal Rules of Civil Procedure, any party who wishes to

conduct more than ten depositions without stipulation by the opposing party must seek leave of

the court. Fed.R.Civ.P. 30(a)(2)(A)(i). Once such a motion is made, "[t]he court must grant a

request to exceed ten depositions unless the additional depositions would be unreasonably

cumulative or duplicative, the requesting party had a prior opportunity in discovery to obtain the

information sought, or the burden or expense of additional depositions would outweigh any

likely benefit." *In re Weatherford Int'l Sec. Litig.*, No. 11 CIV. 1646 LAK JCF, 2013 WL

5762923, at *2 (S.D.N.Y. Oct. 24, 2013) (*citing* Fed.R.Civ.P. 26(b)(2)(C); *Raniola v. Bratton*,

243 F.3d 610, 628 (2d Cir.2001)).  Given the liberal discovery allowed by the rules, the burden

on the party seeking additional depositions is not great.  Rule 30(a)(2)'s ten-deposition limit is "a

useful and appropriate 'Stop' sign, not as a 'Road Closed' sign. Once any party has taken ten

depositions, it makes perfect sense to require that party to demonstrate the need for more. But

that showing need not be onerous. If the need exists, discovery should not be prevented." *Scott*

*v. City of Sioux City, Iowa*, 298 F.R.D. 400, 402-03 (N.D. Iowa 2014).

As the Court can readily determine from the summary of anticipated testimony above,

none of the anticipated testimony is unreasonably cumulative or duplicative.  Rather, all of the

anticipated testimony goes to central and now-disputed issues in the case.  ██████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████

The Court can also readily determine that Ms. Giuffre has not had any prior opportunity to obtain discovery of the witnesses she seeks to depose.  The case is only now in the fact discovery phase, and she has had no opportunity to previously depose these third-party witnesses.

Finally, there is no substantial burden involved with deposing seven additional witnesses. Any assessment of burden must take into account the scope of the underlying case.  Ms. Giuffre is seeking both compensatory and punitive damages that would total millions of dollars.  Against that backdrop, a handful of additional depositions cannot be seen as unduly burdensome. Moreover, this is not a situation where Defendant lacks means to pay for counsel to attend the depositions.  Defendant's vast wealth does not appear to be in doubt.[5]

During the meet-and-confer on this issue, the Defendant's substantive reason for not stipulating to these additional depositions is that, with regard to three of the witnesses (Epstein, Kellan, and Marcinkova), it appears likely that they will invoke their Fifth Amendment right to refuse to answer some questions about Defendant's involvement in in the sexual abuse of Ms. Giuffre.  But until those witnesses actually take the Fifth, the conclusion that they will actually

---

[5]Defendant has thus far refused produce documents regarding the extent of her assets, arguing that until the punitive damages phase of this proceeding is reached the discovery is not relevant.  Nonetheless, public information suggests significant assets – and the possibility that she is transferring assets outside the reach of the Court's jurisdiction.  *See, e.g., Alleged Epstein Madam Sells $16M Manhattan Townhouse*, New York Post, Apr. 28, 2016 (available at http://nypost.com/2016/04/28/alleged-epstein-madam-sells-16m-manhattan-townhouse/).

take the Fifth is, at a minimum, premature.[6]  The witness may, for example, answer some questions and not others.  And, in any event, even if they take the Fifth when asked about Defendant's sexual abuse of minors, those invocations will quite likely be admissible against the Defendant at trial.

The Second Circuit has squarely held that a witness' invocation of Fifth Amendment rights can in proper circumstances be used against a party.   The Second Circuit's seminal decision is *LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997), which upheld the drawing of adverse inferences based on a non-party's invocation of a Fifth Amendment right to remain silent.  The Second Circuit instructed that, the circumstances of given case, rather than status of particular nonparty witness, determines whether nonparty witness' invocation of privilege against self-incrimination is admissible in course of civil litigation.  *Id.* at122-23.  The Circuit also held that, in determining whether nonparty witness' invocation of privilege against self-incrimination in course of civil litigation and drawing of adverse inferences is admissible, court may consider the following nonexclusive factors:

> (1) nature of witness' relationship with and loyalty to party;
>
> (2) degree of control which party has vested in witness in regard to key facts and subject matter of litigation;
>
> (3) whether witness is pragmatically noncaptioned party in interest and whether assertion of privilege advances interests of witness and party in outcome of litigation; and
>
> (4) whether witness was key figure in litigation and played controlling role in respect to its underlying aspects.

*Id.* at 124-25.

Clearly, many of these factors are going to weigh heavily in favor of drawing an adverse inference against Defendant.  For example, Jeffrey Epstein is a "pragmatically noncaptioned

---

[6] The Court should be aware that these are also the three witnesses who have been attempted to evade service of process.

party in interest" regarding issues of whether he and Defendant together sexually abused Ms.

Giuffre.  And Defendant is in a joint defense agreement with Epstein.  Also, some of the most

important events in this case took place in private bedroom where just three people were present

– Ms. Giuffre, Defendant, and Epstein.   With Defendant denying these events, the fact that

Epstein may take the Fifth could provide decisive information to the jury.

But the Court need not make any determinations now as to precisely how these factors

will play out.  Instead, it is enough to note that very important and unique evidence may be

secured from the deposition of each of these three individuals and therefore Ms. Giuffre should

be permitted to take their deposition.

## CONCLUSION

Ms. Giuffre respectfully requests that she be allowed to take a total seventeen depositions

in this case.

Dated: May 27, 2016

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By:  /s/ Sigrid McCawley
     Sigrid McCawley (Pro Hac Vice)
     Meredith Schultz (Pro Hac Vice)
     Boies Schiller & Flexner LLP
     401 E. Las Olas Blvd., Suite 1200
     Ft. Lauderdale, FL 33301
     (954) 356-0011

     David Boies
     Boies Schiller & Flexner LLP
     333 Main Street
     Armonk, NY 10504

     Bradley J. Edwards (Pro Hac Vice)
     FARMER, JAFFE, WEISSING,
     EDWARDS, FISTOS & LEHRMAN, P.L.

425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
 (954) 524-2820

Paul G. Cassell (Pro Hac Vice)
S.J. Quinney College of Law
University of Utah
383 University St.
Salt Lake City, UT 84112
(801) 585-5202[7]

---

[7] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 27th day of May, 2016, I electronically filed the

foregoing document with the Clerk of Court by using the CM/ECF system.  I also certify that the

foregoing document is being served this day on the individuals identified below via transmission

of Notices of Electronic Filing generated by CM/ECF.

      Laura A. Menninger, Esq.
      Jeffrey Pagliuca, Esq.
      HADDON, MORGAN & FOREMAN, P.C.
      150 East 10th Avenue
      Denver, Colorado 80203
      Tel: (303) 831-7364
      Fax: (303) 832-2628
      Email: lmenninger@hmflaw.com
            jpagliuca@hmflaw.com

                        /s/ Sigrid S. McCawley
                        Sigrid S. McCawley