# United States District Court
## Southern District of New York

Virginia L. Giuffre,

          Plaintiff,          Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

          Defendant.

_____/

### PLAINTIFF'S REDACTED RESPONSE IN OPPOSITION TO DEFENDANT'S <u>MOTION TO COMPEL NON-PRIVILEGED DOCUMENTS</u>

BOIES, SCHILLER & FLEXNER LLP

Sigrid McCawley (*Pro Hac Vice*)
Meredith Schultz (*Pro Hac Vice*)
Boies Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

David Boies
Boies Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 3

   A.  Defendant has failed to make a legitimate justification for *in camera* review. ................. 3

   B.  A Client Can Confidentially Confer with an Attorney Concerning Media Issues .............. 4

   C.  J. Stanley Pottinger is an attorney of record for Ms. Giuffre in this case. .......................... 5

   D.  Ms. Giuffre's categorical privilege log is sufficient under the Local Rules, and
       prevailing case law ...................................................................................................... 7

   E.  All Non-Privileged Responsive Attachments Were Produced to Defendant..................... 8

   F.  There is No Waiver for Communications Made to Professionals Retained by
       Attorneys ................................................................................................................... 10

   G.  Legal Advice to a Corporation and Its Officers is Privileged........................................... 14

   H.  Attorney-Client Privilege is Clearly Established for all Common Interest and Joint
       Defense Documents Withheld ................................................................................... 14

III.  CONCLUSION ................................................................................................ 17

<u>**TABLE OF AUTHORITIES**</u>

Cases

*Am. Broad. Companies, Inc. v. Aereo, Inc.,*
    No. 12 CIV. 1540 AJN, 2013 WL 139560 (S.D.N.Y. Jan. 11, 2013) ...................................... 7

*Bank of Brussels Lambert v. Chase Manhattan Bank,*
    175 F.R.D. 34 (S.D.N.Y.1997) ................................................................. 11

*In re Air Crash at Belle Harbor, New York on November 12, 2001,*
    241 F.R.D. 202 (S.D.N.Y., 2007) ............................................................. 12

*In re Copper Market Antitrust Litigation,*
    200 F.R.D. 213 (S.D.N.Y. 2001) ............................................................. 2, 3

*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,*
    731 F.2d 1032 (2d Cir. 1984) ................................................................... 13

*In re Grand Jury Subpoenas Dated March 24, 2003,*
    265 F.Supp.2d 321 (S.D.N.Y. 2003) .......................................................... 4

*Levy v. Young Adult Institute, Inc.*
    2015 WL 10846137  (S.D.N.Y. Dec. 22, 2015) .......................................... 10

*Long–Term Capital Holdings, LP v. United States,*
    No. 01 Civ 1290, 2003 WL 21269586 (D.Conn. May 6, 2003) ............................... 11

*OneBeacon Ins. Co. v. Forman Intern., Ltd.,*
    2006 WL 3771010 (S.D.N.Y.,2006) ......................................................... 12

*Pem-Am., Inc. v. Sunham Home Fashions, LLC,*
    No. 03 CIV. 1377JFKRLE, 2007 WL 3226156 (S.D.N.Y. Oct. 31, 2007) ............................. 14

*S.E.C. v. Yorkville Advisors*, LLC,
    300 F.R.D. 152 (S.D.N.Y. 2014) .............................................................. 8

*Streamline Capital, L.L.C. v.  Hartford Casualty Insurance Company,*
    2004 WL 2609575  (S.D.N.Y., Nov.17, 2004) ................................................ 3

*United States v. Bouchard Transp.,*
    No. 08-CV-4490 NGG ALC, 2010 WL 1529248 (E.D.N.Y. Apr. 14, 2010) ............................ 7

*United States v. Chen,,*
    *99 F.3d 1495, 1501 (9th Cir. 1996)* ...................................................... 4

*United States v. Kovel,*
    296 F.2d 918 (2d Cir.1961) ................................................................... 10

*Upjohn Co. v. United States*,
    449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ................................................ 8

**<u>Rules</u>**

Fed. R. Civ. P. 26(b)(4)(D) .......................................................................................... 10

Fed. R. Civ. P. 26(b)(4)(D)(ii) .................................................................................... 11

Fed. R. Civ. P. 26(b)(5)(A)(ii) ...................................................................................... 2

N.Y. C.P.L.R. § 4503(a)(1) .......................................................................................... 10

iii

Plaintiff Virginia L. Giuffre, by and through her undersigned counsel, hereby files this Response in Opposition to Defendant's Motion to Compel Non-Privileged Documents, and hereby states as follows.

## I.   INTRODUCTION

In this case, Defendant produced a privilege log that was invalid on its face. Defendant improperly claimed that communications between her and Jeffrey Epstein (both non-attorneys) were somehow protected by the attorney-client privilege. Defendant also improperly claimed that communications with attorneys in which non-attorney third-parties were present were somehow protected by the attorney-client privilege. They were not, and this Court ordered that Defendant produce those documents. ████████████████████████████

████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████

After having to reveal those documents, Defendant has now chosen to copy Ms. Giuffre's motion to compel -- using the exact same sentences and case cites. But Ms. Giuffre's privilege log is the exact opposite of Defendant's – which is why Ms. Giuffre objected to Defendant's privilege log earlier. It is valid on its face, and Defendant's instant motion is nothing more than a proverbial shot in the dark, improperly attempting to travel under the Court's prior order and obtain copies of unquestionably privileged material.

For example, unlike Defendant's original privilege log that this Court found inadequate, Ms. Giuffre is not trying to claim attorney-client privilege with communications to non-attorneys (such as Jeffrey Epstein and PR agent Ross Gow). And unlike Defendant's generic privilege log

1

descriptions (which merely said, in every entry, "Communication re: legal advice"), Ms. Giuffre's entries describe the subject matter of the communication and disclose all individuals on the email chain. Therefore, Defendant has no legitimate basis to challenge Ms. Giuffre's privilege log, rather she is filing scattershot challenges that lack legal and factual support.

Ms. Giuffre has completed a 153-entry privilege log, providing as much detail as possible without waiving the applicable privilege. The descriptions go beyond the requirements of Fed. R. Civ. P. 26(b)(5)(A)(ii) and the Local Rules, and all the claims facially meet the requirements of the Local Rules. *See In re Copper Market Antitrust Litigation*, 200 F.R.D. 213 (S.D.N.Y. 2001). Ms. Giuffre has produced all non-privileged communications, including communications with her attorneys that do not contain legal advice (*see, e.g.*, GIUFFRE003364; GIUFFRE003382; GIUFFRE003780; and GIUFFRE003379), and has produced a comprehensive privilege log.

Coupled with Defendant's other pending motion (frivolously claiming "waiver" of attorney-client privilege while not disclosing that the same argument had already been flatly rejected by a Florida judge), it is plain that Defendant lacks any good faith basis for seeking Ms. Giuffre's communications with her attorneys, and that this motion appears to be little more than a tit-for-tat exercise intended to cause Ms. Giuffre to spend time and resources on unnecessary motion practice, while simultaneously wasting judicial resources. The Court should not indulge Defendant's attempts to imprint the Court's prior ruling -- addressing a wholly different set of underlying facts -- onto this motion. The law does not support Defendant, and the Court should deny Ms. Maxwell's motion in its entirety.

## FACTUAL BACKGROUND

While the Defendant alludes generally to "inadequacies" in Ms. Giuffre's privilege log, she does not specifically discuss those inadequacies in her pleading. For the convenience of the

2

Court, Ms. Giuffre's 153-entry privilege log is attached to this pleading. Schultz Decl. at Exhibit 2. The Court may also with to compare this log with Defendant's 24-entry log, which is also attached to this pleading. Schultz Decl. at Exhibit 3.

## II.    ARGUMENT

### A. Defendant has Failed to Justify *in camera* review of Properly Logged Communications.

Before turning to the details of Defendant's arguments, it may be useful to briefly address a claim that seems to permeate her motion. Defendant asks for an in camera review of communications involving attorney Stan Pottinger. Defendant makes this request directly only for Pottinger communications. However, to the extent Defendant requests the Court undertake such review for the other categories of documents challenge, it would be equally unnecessary and without merit on the governing law. *See Streamline Capital, L.L.C. v. Hartford Casualty Insurance Company*, 2004 WL 2609575 at *1 (S.D.N.Y., Nov.17, 2004).

An in camera review is within the court's discretion, and here there is no justification for the court undertaking would be a pointless exercise. An in camera review would be appropriate only if there were some deficiency or reason for concern about Ms. Giuffre's privilege log. The requirements for a privilege log are well known to the Court. *See, e.g., In re Copper Market Antitrust Litigation*, 200 F.R.D. 213 (S.D.N.Y. 2001). In *In re Copper Market Antitrust Litigation*, the Court found the privilege log adequate because it "contains information concerning the date, type of document, author, addressees, a short description of each document and the privilege or immunity asserted with respect to each. Submissions by the parties in connection with this motion have made clear the relationship of authors and addressees to each other with respect to documents for which work-product immunity is claimed. Affidavits submitted in opposition to Plaintiffs' motion to compel make clear the context in which the

3

documents identified on the Privilege Log were generated." 200 F.R.D. 213, 223. Similarly, here Ms. Giuffre's privilege log contains the date, type of document, author, addressees (including all recipients on the email chain), a description of each document (that goes far beyond the non-description of "communication re: legal advice" that is on every entry of Defendant's log); and the privilege asserted with respect to each. Ms. Giuffre's submissions, representations, and affidavits make it clear the context in which the documents identified on the privilege log were generated. Accordingly, as in *In re Copper Market*, Ms. Giuffre's privilege log itself makes clear that Defendant's challenges are misplaced. Ms. Giuffre's privilege log is wholly valid on its face, and Ms. Giuffre has provided an abundance of detail to make the determination that a privilege applies. An *in camera* review would serve no purpose.

### B. A Client Can Confidentially Confer with an Attorney Concerning Media Issues.

Defendant's lead argument is that some of Ms. Giuffre's communications were not for the purpose of obtaining legal advice, but rather media advice. But the mere fact that a communication from an attorney has something to do with the media does not strip the communication of privilege. "If a person hires a lawyer for advice, there is a rebuttable presumption that the lawyer is hired 'as such' to give 'legal advice,' whether the subject of the advice is criminal or civil, business, tort, domestic relations, or anything else." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996).

*In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F.Supp.2d 321 (S.D.N.Y. 2003) is instructive. In that case, the Court found attorney-client privilege protected communication even when the attorneys were communicating with a third party *who was not the client*. By contrast, all the communications Defendant challenges here are pure attorney-client communications,

4

where Ms. Giuffre is involved in correspondence with her attorneys, including her attorney of record, Mr. Pottinger.

Additionally, contrary to what Defendant claims, the logged communications relating to "media issues" do not coincide with Ms. Giuffre's press statements, and this claim is unsubstantiated.

**C.      J. Stanley Pottinger, Esq. is an Attorney of Record for Ms. Giuffre in this Case Providing Legal Advice.**

Defendant cannot cite an on-point case where a court ordered an *in camera* inspection of documents sent to and from an attorney of record and his client regarding the case at issue. Defendant's attempt to draw a parallel to her public relations campaign to defame and discredit Ms. Giuffre by pretending that attorney Stan Pottinger is a public relations professional wholly fails. The facts and circumstances are not similar, particularly as Mr. Pottinger, an attorney of record in this case (unlike non-attorney Ross Gow), has had an active, day-to-day role in giving legal advice and strategy to Ms. Giuffre in the above captioned action and as a non-party witness in another action. *See* Schultz Decl. at Exhibit 4, Affidavit of Stan Pottinger ("Pottinger Affidavit"). First, Ms. Giuffre received legal advice from Mr. Pottinger regarding how to handle media inquiries in such a way as to not jeopardize her position in ongoing litigation. This constitutes legal advice from her attorney. Defendant does not, and indeed, cannot claim that a person cannot receive legal advice relating to the media, particularly when that person's statements could affect her position in ongoing litigation. Second, unlike the communications involving Ms. Maxwell's press agent, Ross Gow, Ms. Giuffre was receiving legal advice from her attorneys, and none of those communications were intended for dissemination to third parties.

5

Defendant states that Stan Pottinger's engagement appears to be for the purpose of public relations as opposed to legal advice, yet that is simply unsubstantiated speculation. To the contrary, Mr. Pottinger has actively represented Ms. Giuffre as her attorney in this action and as a non-party in the Dershowitz action. *See* Shultz Decl. at Exhibit 4, Affidavit of Stan Pottinger ("Pottinger Affidavit"). Defendant's primary "evidence" to back her fanciful claim that Mr. Pottinger is not providing Ms. Giuffre legal advice is the fact that Mr. Pottinger is a published author. Defendant admits that, aside from the categorical privilege log entries, Mr. Pottinger appears on the privilege log 48 times,[1] and of those 48 times, only 13 relate to media issues or public statements. Def.'s Br. at 6. These numbers speak for themselves and belie Defendant's argument, as the vast majority of his logged communications relate to representing Ms. Giuffre in litigation.

Moreover, there is "ample evidence" that Mr. Pottinger is involved in the day-to-day work, legal advice, and decisions concerning this litigation, including Mr. Pottinger's sworn statement. Despite Defendant's unsubstantiated claims, Mr. Pottinger has never provided advice to Ms. Giuffre relating to writing, publishing, or promoting a book or memoir, whatsoever. *See* Schultz Decl. at Exhibit 4, Pottinger Affidavit. If Defendant's counsel had inquired about Mr. Pottinger's role beyond the detailed descriptions on the privilege log (none of which point to public relations or literary advice/promotions), they would have been given this information. Accordingly, Defendant's argument that Mr. Pottinger is Ms. Giuffre's agent working on a book deal is nothing more than conjecture, conjecture that flies against facts set out in Ms. Giuffre's privilege log and the sworn statements in Mr. Pottinger's Affidavit.

---

[1] Defendant's brief states that there are 263 individual entries for which Stan Pottinger is part of the communication. That is incorrect, as there are only 153 entries on the entire log.

**D. Ms. Giuffre's categorical privilege log is sufficient under the Local Rules, and prevailing case law.**

Defendant also complains that Ms. Giuffre has categorically logged documents relevant to this case. Mot. to Compel at 8. Yet conspicuously absent from Defendant's brief when attacking Ms. Giuffre's categorical privilege log entries is any mention of the fact that categorical logs are expressly permitted under the Local Rules and prevailing case law. Local Civil Rule 26.2(c) states: "[e]fficient means of providing information regarding claims of privilege are encouraged, and parties are encouraged to agree upon measures that further this end. For example, when asserting privilege on the same basis with respect to multiple documents, it is presumptively proper to provide the information required by this rule by group or category. A party receiving a privilege log that groups documents or otherwise departs from a document-by-document or communication-by-communication listing *may not object solely on that basis* but may object if the substantive information required by this rule has not been provided in a comprehensible form." (Emphasis added).

Ms. Giuffre's categorical log entry is more than adequate under the Local Rules and the Federal Rules of Civil Procedure. Specifically, it states:



7

*See* Schultz Decl. at Exhibit 2, Ms. Giuffre's Privilege Log. The individuals listed who are

████████████████████████████

████████████████████████████████████████
████████████████

Defendant is familiar with the identities and roles of all attorneys listed because Ms. Giuffre

issued a "Privilege Log Identities" document identifying and describing all of the attorneys who

appear on the privilege log. *See* Schultz Decl. at Exhibit 7, Privilege Log Identities. Defendant is

not entitled to know the identities of any non-testifying experts ("Professionals retained by

attorneys to aid in the rendition of legal advice and representation") that may be retained by Ms.

Giuffre, as Rule 26 precludes from discovery the identity of an informal consulting expert.

Therefore, this unsubstantiated challenge to Ms. Giuffre's communications with non-testifying

experts demonstrates, once again, that Defendant did not bring this motion for any legitimate

purpose, as she is complaining about conduct authorized by Local Rules and governing case law.

### E.  All Non-Privileged Responsive Attachments Were Produced to Defendant

Defendant appears to suffer under a misunderstanding as to the language in the privilege log

descriptions. Privileged email communications that contained attachments have the language

"with attachment(s)" in the descriptions, but only those emails that contained attachments which

were withheld for privilege were individually logged (because all produced documents were not

included in the log). In short, all responsive, non-privileged documents were produced to

Defendant, regardless of whether they were a "parent" document or an attachment. Attachment

---

[2] Every attorney in this list is an attorney of record, except for Steven Zach, a partner at Boies
Schiller & Flexner, the law firm for four of the attorneys of record, and Brittany Henderson, who
is an attorney employed as an associate by counsel of record, Mr. Edwards, at the law firm
Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L.

documents that were not responsive to Defendant's production requests were neither logged nor produced.

Defendants included Log IDs 98, 143, and 144 in Exhibit F to the Declaration of Menninger, documents they believe "attach or include preexisting non-privileged documents." These three documents do not contain attachments of any kind, nor do their descriptions in the privilege log indicate, or imply, that they do. There are no attachments to these documents.

Defendants assert that Log ID 108, which is an attachment to Log ID 107, "seems" to be a "pre-existing document." Motion at 7. It is not. The document was prepared by Ms. Giuffre in an attempt to seek legal advice at the request of her attorneys and to convey information to them to assist in forming legal opinions and rendering legal advice. Attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice." *S.E.C. v. Yorkville Advisors*, LLC, 300 F.R.D. 152, 161 (S.D.N.Y. 2014) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). Defendant could have easily ascertained that no non-privileged "pre-existing" documents attached to logged privileged emails were withheld during the telephonic meet and confer, had Defendant's counsel raised this issue.

Additionally, Defendant does no more than speculate that communications intended to be published to third parties are included on Ms. Giuffre's privilege log. There are no such communications on the log. Simply because Defendant originally withheld and improperly logged communications with her non-attorney press agent, Ross Gow, which contained such communications, that does not mean that Ms. Giuffre did the same.

9

**F.  There is No Waiver for Communications Made to Professionals Retained by Attorneys**

Pursuant to the Local Rules and governing case law, Ms. Giuffre has made a categorical privilege log entry to account for privileged communications occurring ***after the commencement of litigation*** in this case. Communications between attorneys and clients, and other non-testifying experts retained to prepare for trial are privileged. It is widely recognized that, after litigation has commences, such communications are voluminous and therefore too burdensome to log individually. Should a party attempt to do so, the privilege log would need to be updated daily, if not hourly, to account for all of the privileged communications. *See, e.g., Am. Broad. Companies, Inc. v. Aereo, Inc.*, No. 12 CIV. 1540 AJN, 2013 WL 139560, at *2 (S.D.N.Y. Jan. 11, 2013) ("the Court notes that [parties] . . . are presented with a number of option that . . . could mitigate the burden . . . including . . . ***exclusion from the privilege logs of documents created after the commencement of litigation . . .***.") (emphasis added). *See also United States v. Bouchard Transp.*, No. 08-CV-4490 NGG ALC, 2010 WL 1529248, at *2 (E.D.N.Y. Apr. 14, 2010) ("First, privilege logs are commonly limited to documents created before the date litigation was initiated. This is due to the fact that, in many situations, ***it can be assumed that all documents created after charges have been brought or a lawsuit has been filed and withheld on the grounds of privilege were created "because of" that pending litigation.***") (Emphasis added). Indeed, Defendant does not really appear to agree with the argument, as there are no entries in *her* privilege log for any communications that took place after the commencement of litigation.

In crafting her robust and detailed categorical log entry for ***post-litigation*** privileged communications, Ms. Giuffre included other professionals retained to assist in litigation because it was expected at the time the categorical log entry was drafted that Ms. Giuffre would retain

10

and rely upon non-testifying experts in preparation for trial. Therefore, the language in that categorical log entry took into account that expectation so that, going forward, any communications with non-testifying experts would be accounted for by the previously-issued categorical entry.

Regarding the same, it was explained to counsel for Defendant in a meet-an-confer call that the log takes into account any communications between Ms. Giuffre and any retained, non-testifying experts and consultants (such as the e-discovery management firm of which this Court is already aware, *see* D.E. 71-4, Affidavit of Robert Conley). These communications are categorically protected under the work product doctrine, and Defendant wholly fails to argue or assert that any exception to the work product doctrine applies in this case. Indeed, she cannot.[3] Moreover, failure to list these professionals in Ms. Giuffre's log would risk waiver of their privilege.

In addition to codifying the work-product doctrine, the Federal Rules of Civil Procedure also establish that, "the [ ] facts known or opinions held" by a consulting expert are not discoverable." *See* Fed. R. Civ. P. 26(b)(4)(D).[4] There are four commonly articulated policy

---

[3] Additionally, to the extent these non-testifying experts assist in the rendition of legal services, such as rendering opinions related to Defendant's electronic discovery, those communications are protected by the attorney-client privilege. New York's statutory codification of the attorney-client privilege provides as follows: "an attorney or his or her employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his or her employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication ...." N.Y. C.P.L.R. § 4503(a)(1). *See also Levy v. Young Adult Institute, Inc.* 2015 WL 10846137 at *1 (S.D.N.Y. Dec. 22, 2015)("Confidential communications among an attorney, the client, and the attorney's agent or contractor are also privileged when made 'for the purpose of obtaining legal advice.'" (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir.1961)).

[4] Rule 26(b)(4)(D) states: "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed

11

considerations underlying the protection of facts or opinions known by consulting experts from discovery (1) the interest in allowing counsel to obtain the expert advice they need in order properly to evaluate and present their clients' positions without fear that every consultation with an expert may yield grist for the adversary's mill; (2) the view that each side should prepare its own case at its own expense; (3) the concern that it would be unfair to the expert to compel [her] testimony and also the concern that experts might become unwilling to serve as consultants if they suspected their testimony would be compelled; and (4) the risk of prejudice to the party who retained the expert as a result of the mere fact of retention. *Long–Term Capital Holdings, LP v. United States*, No. 01 Civ 1290, 2003 WL 21269586, at *2 (D.Conn. May 6, 2003) (internal quotations omitted) (quoting *Bank of Brussels Lambert v. Chase Manhattan Bank*, 175 F.R.D. 34, 45 (S.D.N.Y.1997)) (further citation omitted). All four factors are relevant here, and Defendant has made no showing under R. Civ. P. 26(b)(4)(D)(ii) to overcome them nor raised that argument.

To the contrary, with her two pending motions - including the instant motion - Defendant is actually seeking all communications between Ms. Giuffre and her attorneys, and all communications between Ms. Giuffre and any non-testifying experts she may retain. Neither law nor fact lends support to such a fanciful position. It is no different than if Ms. Giuffre filed a motion with this Court seeking all documents "concerning Giuffre,"[5] including written communications between Defendant and her counsel seeking legal advice, and including communications between Defendant's counsel and their non-testifying experts assisting them in

_____

by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."

[5] Such a request would be pursuant to Request No. 12 from Ms. Giuffre's Second Request for Production.

12

preparing for trial. Neither that hypothetical motion nor the instant motion can be filed in good faith.

More to the point, Defendant does not attempt to indicate how communications between Ms. Giuffre's attorneys and their consulting experts, such as e-discovery management firms, are at all relevant to this action.

And, again, it is instructive to compare what Defendant has done in her privilege log. Defendant is under the obligation to either produce or log her communications regarding Ms. Giuffre (as such documents are responsive to Ms. Giuffre's requests for production) through the present. Defendant has failed to do either, so she must be withholding documents created after the commencement of this litigation that are responsive to Ms. Giuffre's discovery requests. Defendant has not logged any of those communications, categorically or otherwise. As a result, it seems clear that she has failed in her discovery obligations under the applicable Federal Rules and Southern District of New York case law. By contrast, Ms. Giuffre has categorically logged all communications that may be responsive to Defendant's broad and over-reaching requests, and Ms. Giuffre should not be penalized for doing so; particularly in light of Defendant's blatant failure to log her responsive communications that may be protected by a privilege.

It's ironic that Defendant makes a waiver challenge when, she, herself has waived otherwise applicable privileges. Defendant's wholesale failure to log responsive, privileged documents created after litigation commenced constitutes waiver of Defendant's own attorney-client privilege regarding those documents. *See OneBeacon Ins. Co. v. Forman Intern., Ltd.*, 2006 WL 3771010, at *7 (S.D.N.Y.,2006) (Sweet, J.) (compiling cases and holding that documents are subject to production because the privilege was waived because the party failed to provide a privilege log: "the unjustified failure to list privileged documents on the required log of withheld

13

documents in a timely and proper manner operates as a waiver of any applicable privilege."). *See also In re Air Crash at Belle Harbor, New York on November 12, 2001*, 241 F.R.D. 202, 204 (S.D.N.Y., 2007) (Sweet, J.) ("Even if attorney-client and work-product privileges had been established, the privileges would have been waived due to Golan's failure to submit a privilege log in accordance with the requirements of Local Rule 26.2."). Accordingly, it is Defendant who has failed to meet her discovery obligations and has waived attorney-client privilege. But nothing in her motion demonstrates a failure by Ms. Giuffre

### G. Legal Advice to a Corporation and Its Officers is Privileged

Defendant offers no basis for her bald assertion that log entries that explicitly state they contain "legal advice related to VRS" are somehow "highly dubious." Motion at 10. Neither mere speculation, nor wishful thinking, can serve as a basis for challenging explicit statements in a privilege log. The amount of "activity" the corporation undertakes is irrelevant, as it is precisely to avoid "activity" that would place the corporation in legal jeopardy that legal advice is often sought. Plaintiff has not made blanket assertions of privilege to all communications involving Ms. Giuffre and Mr. Edwards, and has produced non-privileged communications between them. Accordingly, as these privilege log entries are valid on their face, Defendant has no basis upon which to challenge them.

### H. Attorney-Client Privilege is Clearly Established for all Common Interest and Joint Defense Documents Withheld

Defendant also challenges the common interest and joint defense assertions by Ms. Giuffre. Motion at 11-12. As Defendant correctly states: "[t]he common interest rule is an extension of the attorney-client privilege and not an independent basis for privilege." Motion at 11 (quoting *Pem-Am., Inc. v. Sunham Home Fashions, LLC*, No. 03 CIV. 1377JFKRLE, 2007 WL 3226156, at *2 (S.D.N.Y. Oct. 31, 2007). For no document has Ms. Giuffre asserted the

14

common interest/joint defense privilege as an **independent** basis for withholding, as Defendant tacitly acknowledges when she states that Ms. Giuffre "included" the privilege as the basis for withholding on the privilege log. Motion at 12. Each document withheld identifies the attorneys involved and explicitly asserts the underlying attorney-client privilege. *See* Privilege Log in Menninger Decl. at Ex. A. The assertion of the common interest/joint defense privilege serves merely to maintain the existing attorney-client privilege that already applies if those documents have been shared, or are shared in the future, with counsel to parties with whom Ms. Giuffre has a joint defense agreement.

Defendant's attempts to cast doubt upon the nature of Ms. Giuffre's joint defense agreement and question its nature, Motion at 12, are inconsistent with her previous stance in this matter: she has, herself, refused to produce her own Joint Defense Agreements.

15





16

## III.    CONCLUSION

Based upon the foregoing, Ms. Giuffre respectfully requests that this Court deny Defendant's

Motion to Compel in its entirety.

Dated: May 31, 2016.

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By:  /s/ Meredith Schultz
     Sigrid McCawley (*Pro Hac Vice*)
     Meredith Schultz (*Pro Hac Vice*)
     Boies Schiller & Flexner LLP
     401 E. Las Olas Blvd., Suite 1200
     Ft. Lauderdale, FL 33301
     (954) 356-0011

     David Boies
     Boies Schiller & Flexner LLP
     333 Main Street
     Armonk, NY 10504

17

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 31th day of May, 2016, I served the attached document

via Email to the following counsel of record.

Laura A. Menninger, Esq.
Jeffrey Pagliuca, Esq.
HADDON, MORGAN & FOREMAN, P.C.
150 East 10th Avenue
Denver, Colorado 80203
Tel: (303) 831-7364
Fax: (303) 832-2628
Email: lmenninger@hmflaw.com
        jpagliuca@hmflaw.com


/s/ Sigrid S. McCawley
    Sigrid S. McCawley

18