# United States District Court
# Southern District of New York

Virginia L. Giuffre,

       Plaintiff,            Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

       Defendant.

_____/

## RESPONSE TO MOTION TO COMPEL ATTORNEY-CLIENT COMMUNICATIONS AND ATTORNEY WORK PRODUCT MATERIALS

BOIES, SCHILLER & FLEXNER LLP

Sigrid McCawley (*Pro Hac Vice*)
Meredith Schultz (*Pro Hac Vice*)
Boies Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

David Boies
Boies Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 2

The CVRA Case ...................................................................................................................... 2

      The Dershowitz case ........................................................................................................ 4

      The Florida Court Rejects a Waiver of Attorney Clients Privilege Argument ............................. 5

      Ms. Giuffre's Deposition in the Defamation Case ........................................................... 7

      The Settlement of the Defamation Case ........................................................................... 7

LEGAL STANDARDS FOR WAIVER ................................................................................ 8

      A. Federal Rule of Evidence 502 Controls on the Issue of Waiver ................................. 8

      B. Florida Law .................................................................................................................. 9

      C.  Federal Law .............................................................................................................. 11

DISCUSSION ....................................................................................................................... 14

      I.  MS. GIUFFRE DID NOT WAIVE HER ATTORNEY-CLIENT PRIVILEGE
         WHEN EDWARDS AND CASSELL FILED AND PURSUED THEIR OWN
         DEFAMATION ACTION AGAINST ALAN DERSHOWITZ ................................. 14

         A.    The Florida Court Presiding over the Defamation Action Has Already Rejected the
              Same Waiver Claim that Defendant is Advancing Here. ................................................. 14

         B.    Actions by Cassell and Edwards Do Not Waive Ms. Giuffre's  Attorney-Client
              Privilege. ...................................................................................................................... 18

         C.    Ms. Giuffre's Confidential Communications With Her Attorneys Were  Never "At
              Issue" in the Florida Dershowitz Litigation. .................................................................. 19

         D.    Defendant Has Not Met the Other Requirements for Showing Waiver of  Attorney-
              Client Privilege ............................................................................................................ 21

         E.    Ms. Giuffre Will Not Seek to Use Confidential Attorney-Client  Communications
              in her Action Here. ...................................................................................................... 23

      II.  MS. GIUFFRE DID NOT WAIVE HER ATTORNEY-CLIENT PRIVILEGE BY
         DENYING FABRICATED EVICENCE DURING HER DEPOSITION. ................... 25

      III. EDWARDS AND CASSELL HAVE NOT WAIVED WORK-PRODUCT
         PROTECTION AND MAXWELL HAS NOT DEMONSTRATED NEED TO
         PENETRATE THE PROTECTION. ...................................................................... 27

         A.    Work Product Protection Has Not Been Waived. ......................................................... 27

         B.    Defendant Has Not Proven "Need" to Penetrate Work-Product Protection ................... 29

IV. COMMUNICATIONS WITH ATTORNEY JACK SCAROLA ARE COVERED  BY A
    JOINT DEFENSE AGREEMENT AND ARE THUS PROTECTED BY  ATTORNEY-
    CLIENT AND WORK-PRODUCTION PROTECTION. ........................................................ 31

CONCLUSION .................................................................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*Allen v. West Point-Pepperell, Inc.,*
   848 F.Supp. 423 (S.D.N.Y.1994) ................................................................ 13

*Allied Irish Banks v. Bank of Am., N.A.,*
   240 F.R.D. 96 (S.D.N.Y. 2007) ................................................................... 12

*Am. Re-Ins. Co. v. U.S. Fid. & Guar. Co.,*
   40 A.D.3d 486, 837 N.Y.S.2d 616 (2007) .................................................. 22

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas,*
   No. 04 CIV 10014 PKL,
   2009 WL 3111766 (S.D.N.Y. Sept. 28, 2009) ........................................... 14

*Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.,*
   210 F.R.D. 506 (S.D.N.Y. 2002) ................................................... 10, 13, 14

*Brookings v. State,*
   495 So.2d 135 (Fla. 1986) ........................................................................... 23

*Bus. Integration Servs., Inc. v. AT&T Corp.,*
   No. 06 CIV. 1863 (JGK), 2008 WL 318343 (S.D.N.Y. Feb. 4, 2008) .......... 18

*Butler v. Harter,*
   152 So.3d 705 (Fla. 1st DCA, 2014) ........................................................... 30

*Charter One Bank, F.S.B. v. Midtown Rochester, L.L.C.,*
   191 Misc. 2d 154, 738 N.Y.S.2d 179 (Sup. Ct. 2002) ............................... 28

*Coates v. Akerman, Senterfitt & Eidson, P.A.,*
   940 So.2d 504 (Fla. 2nd DCA 2006) .............................................. 11, 12, 20

*Columbia Hosp. Corp. of S. Broward v. Fain,*
   16 So.3d 236 (Fla. 4th DCA 2009) .............................................................. 31

*Connell v. Bernstein-Macaulay, Inc.,*
   407 F.Supp. 420 (S.D.N.Y.1976) ................................................................ 13

*Coyne v. Schwartz, Gold, Cohen, Zakarin & Kotler, P.A.,*
   715 So.2d 1021 (Fla. 4th DCA 1998) ......................................................... 21

*CSX Transp., Inc. v. Carpenter,*
   725 So.2d 434 (Fla. 2d DCA 1999) ............................................................. 30

*Delap v. State,*
   440 So.2d 1242 (Fla. 1983) ......................................................................... 22

*Diaz–Verson v. Walbridge Aldinger Co.,*
   54 So.3d 1007 (Fla. 2d DCA 2010) ............................................................. 20

*Dillenbeck v. Hess,*
   73 N.Y.2d 278, 290, 536 N.E.2d 1126 (N.Y. 1989) .................................... 14

*Does 1 and 2 v. United States,*
   817 F.Supp.2d 1337 (S.D. Fla. 2011) ........................................................... 2

*Does v. United States,*
   749 F.3d 999 (11th Cir. 2014) ...................................................................... 3

*Eastern Air Lines, Inc. v. Gellert,*
   431 So.2d 329 (Fla. 3d DCA 1983) ............................................................. 28

*Elliott Associates, L.P. v. Banco de la Nacion,*
   194 F.3d 363 (2d Cir. 1999) ........................................................................ 18

*Falco v. N. Shore Labs. Corp.,*
    866 So.2d 1255 (Fla. 1st DCA 2004)................................................................. 31
*Ferreira v. Capitol Specialty Ins. Corp.,*
    31 Misc. 3d 1209(A),
    929 N.Y.S.2d 199 (N.Y. Sup. Ct. 2011) .......................................................... 14
*First Union National Bank v. Turney,*
    824 So.2d 172 (Fla. 1st DCA 2002)................................................................. 10
*Ford Motor Co. v. Hall-Edwards,*
    997 So.2d 1148 (Fla. 3d DCA 2008) ............................................................... 10
*Genovese v. Provident Life and Accident Ins. Co.,*
    74 So.3d 1064 (Fla. 2011)........................................................... 12, 20, 29
Giuffre v. Maxwell, DE 135, 2016 WL 175918 ........................................... 12, 32
*Goldman, Sachs & Co. v. Blondis,*
    412 F.Supp. 286 (N.D.Ill.1976)....................................................................... 28
*Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc.,*
    300 F.R.D. 590 (S.D. Fla. 2014)......................................................... 10, 11, 21
*GUS Consulting GMBH v. Chadbourne & Parke LLP,*
    20 Misc. 3d 539, 858 N.Y.S.2d 591 (Sup. Ct. 2008) ...................................... 32
*Hagans v. Gatorland Kubota, LLC/Sentry Ins.,*
    45 So.3d 73 (Fla. 1st DCA 2010) ................................................................... 10
*Hearn v. Rhay,*
    68 F.R.D. 574 (E.D. Wash. 1975)................................................... 10, 13, 16
*HSH Nordbank AG New York Branch v. Swerdlow,*
    259 F.R.D. 64 (S.D.N.Y. 2009) ...................................................................... 26
*In re Bank of New York Mellon Corp. Forex Transactions Litig.,*
    66 F. Supp. 3d 406 (S.D.N.Y. 2014)................................................................ 14
*In re Bank of New York Mellon,*
    42 Misc. 3d 171, 177, 977 N.Y.S.2d 560 (Sup. Ct. 2013) .............................. 14
*In re Cnty. of Erie,*
    546 F.3d 222 (2d Cir. 2008)......................................................... 12, 13, 25
*In re von Bulow,*
    828 F.2d 94 (2d Cir. 1987)......................................................................... 14, 23
Jane Doe 1 v. United States,
    No. 9:08-cv-80736 (S.D. Fla. July 7, 2008)....................................................... 2
*Jane Does 1 and 2 v. United States,*
    950 F.Supp.2d 1262 (S.D. Fla. 2013) ............................................................... 3
*Jenney v. Airdata Wiman, Inc.,*
    846 So.2d 664 (Fla. 2d DCA 2003) ................................................................ 22
*Jenney v. Airdata Wiman, Inc.,*
    846 So.2d 664 (Fla. 2nd DCA 2003) .............................................................. 11
*Koon v. State,*
    463 So.2d 201 (Fla. 1985)......................................................................... 19, 22
*Lynch v. State,*
    2 So.3d 47 (Fla. 2008).................................................................................... 23
*McCullough v. Kubiak,*
    158 So. 3d 739 (Fla. 4th DCA, 2015) .............................................................. 22
*McWatters v. State,*
    36 So.3d 613 (Fla. 2010)................................................................................ 12

*Mitchell v. Superior Court*,
   37 Cal. 3d 591, 691 P.2d 642 (Cal. 1984) ................................................................. 26

*Montana v. United States*,
   440 U.S. 147 (1979) ................................................................................................... 17

*Montanez v. Publix Super Markets, Inc.*,
   135 So. 3d 510 (Fla. Dist. Ct. App. 2014) .............................................................. 26

*N. Broward Hosp. Dist. v. Button*,
   592 So.2d 367 (Fla. 4th DCA 1992) ....................................................................... 31

*Niesig v. Team I*,
   76 N.Y.2d 363, 558 N.E.2d 1030 (1990) ............................................................... 23

*Nomura Asset Capital Corp. v. Cadwalader, Wickersham & Taft LLP*,
   62 A.D.3d 581, 880 N.Y.S.2d 617 (N.Y. App. Div. 2009) ..................................... 25

*O'Brien v. Fed. Trust Bank, F.S.B.*,
   727 So. 2d 296 (Fla. Dist. Ct. App. 1999) ............................................................. 17

*Paradise Divers, Inc. v. Upmal*,
   943 So. 2d 812 (Fla. Dist. Ct. App. 2006) ......................................................... 28, 29

*Parklane Hosiery Co., Inc. v. Shore*,
   439 U.S. 322 (1979) ................................................................................................... 17

*Pereira v. United Jersey Bank*,
   Nos. 94 Civ 1565 & 94 Civ 1844, 1997 WL 773716 (S.D.N.Y. Dec.11, 1997) ...... 13

*Perrignon v. Bergen Brunswig Corp.*,
   77 F.R.D. 455 (N.D. Cal.1978) ................................................................................ 28

*Procacci v. Seitlin*,
   497 So. 2d 969 (Fla. Dist. Ct. App. 1986) ............................................................. 28

*Procter & Gamble Co. v. Swilley*,
   462 So.2d 1188 (Fla. 1st DCA 1985) ...................................................................... 30

*Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*,
   32 F.3d 851 (3d Cir.1994) ........................................................................................ 13

*Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.*,
   32 F.3d 851 (3d Cir. 1994) ....................................................................................... 11

*Rogers v. State*,
   742 So.2d 827 (Fla. 2d DCA 1999) ........................................................................ 12

*Rousso v. Hannon*,
   146 So.3d 66 (Fla. 3d DCA 2014) .......................................................................... 10

*Savino v. Luciano*,
   92 So.2d 817 (Fla. 1957) ..................................................................................... 12, 20

*Schetter v. Schetter*,
   239 So.2d 51 (Fla. 4th DCA 1970) ......................................................................... 18

*Schnell v. Schnall*,
   550 F. Supp. 650 (S.D.N.Y.1982) ........................................................................... 19

*Southern Bell Tel. & Tel. Co. v. Deason*,
   632 So.2d 1377 (Fla.1994) ....................................................................................... 30

*State v. T.A.*,
   528 So.2d 974 (Fla. 2d DCA, 1988) ....................................................................... 30

*Surf Drugs, Inc. v. Vermette*,
   236 So.2d 108 (Fla. 1970) ....................................................................................... 28

*Swidler & Berlin v. United States*,
   524 U.S. 399 (1998) ..................................................................................................... 8

*Taylor v. State*,
   855 So.2d 1 (Fla. 2003)................................................................................... 22

*Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*,
   1 A.D.3d 223, 767 N.Y.S.2d 228 (2003) ....................................................... 26

*Universal City Development Partners, Ltd. v. Pupillo*,
   54 So.3d 612, 614 (Fla. 5th DCA, 2011) ............................................... 28, 31

*West Bend Mutual Ins. Co. v. Higgins*,
   9 So.3d 655 (Fla. 5th DCA  2009) ................................................................ 29

*Zirkelbach Const. Inc. v. Rajan*,
   93 So.3d 1124 (Fla. 2d DCA 2012) .............................................................. 30

*Zois v. Cooper*,
   268 B.R. 890 (S.D.N.Y. 2001) ...................................................................... 17

## Statutes

18 U.S.C. § 3771(a)(9) ............................................................................................. 3
Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771 ......................................... 2
Fla. Stat. Ann. § 90.502 ........................................................................................ 26
Fla. Stat. Ann. § 90.502(1)(c) ................................................................................. 9
Fla. Stat. Ann. § 90.502(2).............................................................................. 11, 22
Fla. Stat. Ann. § 90.502(3)..................................................................................... 11
Fla. Stat. Ann. § 90.502(4)..................................................................................... 26
Fla. Stat. Ann. § 90.507 ......................................................................................... 12
N.Y. C.P.L.R. § 4503(a) ........................................................................................ 14
Pub. L. 114-22, Title I, § 113(a), (c)(1), May 29, 2015, 129 Stat. 240.................. 3

## Rules

Fed. R. Evid. 502(c)........................................................................................... 9, 18
Fed. R. Evid. 502(c)(1) .......................................................................................... 27
Fed. R. Evid. 502(c)(2) .......................................................................................... 27
Fed. R. Evid. 502 ......................................................................................... 1, 8, 27
Fla. R. Civ. P. 1.280(b)(3) ..................................................................................... 27

## Treatises

Charles W. Ehrhardt, 1 Fla. Prac., *Evidence* § 502.6 (2015 ed.) ........................ 18
Paul G. Cassell, Nathanael J. Mitchell & Bradley J. Edwards,
   *Crime Victims' Rights During Criminal Investigations? Applying the Crime*
   *Victims' Rights Act before Criminal Charges are Filed*, 104 J. CRIM. L. &
   CRIMINOLOGY 59 (2014) ........................................................................... 2

## Other Authorities

N.Y. C.P.L.R. 4503 (McKinney).............................................................................. 19

Plaintiff Virginia Giuffre, by and through her undersigned counsel, hereby files this response to Defendant's Motion to Compel All Attorney-Client Communications and Attorney Work Product Placed at Issue by Plaintiff and Her Attorneys (DE 164)**.**  The motion should be denied in its entirety.

## <u>INTRODUCTION</u>

Defendant argues Ms. Giuffre and two of her attorneys (Cassell and Edwards) have somehow placed "at issue" her confidential attorney-client communications and therefore have made a "sweeping waiver" of attorney-client privilege in this case.  Defendant, however, fails to cite the controlling law on this issue: Federal Rule of Evidence 502.  Enacted in 2008, Rule 502 was designed to block exactly the kind of argument Defendant is making.  Rule 502 provides that litigants are entitled to the *most* protective law on attorney-client privilege, either state law where the disclosure was made or federal law.  The alleged disclosures in this case were made in Florida, and under Florida law did not constitute any waiver of attorney-client privilege.  Indeed, Defendant does not reveal to the Court that the Florida judge who handled the case during which the alleged "waivers" occurred (the Dershowitz case) has already considered – and rejected in their entirety – the very arguments that Defendant is advancing here.

In addition, none of the alleged disclosures were made by Ms. Giuffre, who as the holder of the privilege is the only individual with authority to waive it.  Moreover, none of the alleged disclosures concerned the substance of confidential attorney-client communications. And finally, Ms. Giuffre will not be seeking to introduce or otherwise take advantage of any confidential attorney-client communications in this case.  Accordingly, for these and other reasons, the Court should deny Defendant's motion in its entirety.

## FACTUAL BACKGROUND

<u>The CVRA Case</u>

The facts relevant to this issue begin in 2008, when attorney Bradley J. Edwards (soon joined by co-counsel Professor Paul Cassell) filed a *pro bono* action in the Southern District of Florida under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771.  Filed on behalf of Jane Doe 1 (and later Jane Doe 2) the CVRA action alleged that federal government had failed to protect the rights of Jane Doe 1 and other similarly situated victims of sex offenses committed by Jeffrey Epstein.  *See* Declaration of Sigrid McCawley ("McCawley Decl.") at Exhibit 1, Complaint filed in Jane Doe 1 v. United States, No. 9:08-cv-80736 (S.D. Fla. July 7, 2008).  Jane Does 1 and 2 achieved many victories in the case, including a ruling that the CVRA rights of victims could apply before charges were filed, *Does 1 and 2 v. United States*, 817 F.Supp.2d 1337 (S.D. Fla. 2011);[1] that they had standing to challenge the non-prosecution agreement reached between the Government and Epstein, *Jane Does 1 and 2 v. United States*, 950 F.Supp.2d 1262 (S.D. Fla. 2013); and that plea negotiations were not protected from disclosure by any federal rule of evidence, *Does v. United States*, 749 F.3d 999 (11th Cir. 2014). Congress has also followed the developments in the case closely, recently amending the CVRA to insure that in the future crime victims receive notice of any non-prosecution agreement entered into by the Government.  *See* Pub. L. 114-22, Title I, § 113(a), (c)(1), May 29, 2015, 129 Stat. 240, 241 (adding 18 U.S.C. § 3771(a)(9) to give crime victims "[t]he right to be informed in a timely manner of any plea bargain or deferred prosecution agreement).

---

[1] *See generally* Paul G. Cassell, Nathanael J. Mitchell & Bradley J. Edwards, *Crime Victims' Rights During Criminal Investigations? Applying the Crime Victims' Rights Act before Criminal Charges are Filed*, 104 J. CRIM. L. & CRIMINOLOGY 59 (2014).

On December 30, 2014, Cassell and Edwards filed a Motion Pursuant to Rule 21 for

Joinder in the Action on behalf two additional victims: Jane Doe 3 and Jane Doe 4.  (Jane Doe 3,

Virginia Giuffre, subsequently decided to reveal her name).  The joinder motion argued that Jane

Does 3 and 4 should be allowed to join the two existing plaintiffs in the action because they had

suffered the same violations of their rights under the CVRA.  McCawley Decl., Exhibit 2, Jane

Does' 3 and 4 Joinder Motion.[2]  To establish that they were "victims" of Epstein's sex crimes

with standing to join the suit, Jane Does 3 and 4 alleged that they had suffered sexual abuse from

Epstein. ███████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████

████████████████████████████████

███████████████████████████████████

████████████████████████████████

███████████████████████████████████

████████████████████████████████

████████

       ██ ██ ████████████████████████

          ████████████████

[2] The Joinder Motion attached as an exhibit is a "corrected" motion, filed on January 2, 2015.  As discussed below, several paragraphs in this motion were later stricken by Judge Marra.
[3] ████████████████████████████████████

████████████████████████████████

██████████████████████████



Several months later, on April 7, 2015, the Court (Marra, J.) denied Jane Doe 3 and Jane Doe 4's motion for joinder.   McCawley Decl., Exhibit. 4, Order denying Jane Doe 3's motion to join.  With regard to the eight separate issues as to which the allegations ████████████ were relevant, the Court addressed only the first (establishing "victim" status) and found that the "factual details regarding with whom and where the Jane Does engaged in sexual activities are immaterial and impertinent to this central claim (i.e., that they were known victims of Mr. Epstein and the Government owed them CVRA duties), especially considering that these details involve non-parties who are not related to the respondent Government."  *Id.* at 5.[4]  Accordingly, the Court struck the factual details from the victims' pleading as unnecessary at that time.  The Court specifically recognized, however, that the details could be reasserted by the parties to the action – i.e., Jane Doe 1 and Jane Doe 2 – if they could "demonstrate a good faith basis for believing that such details are pertinent to a matter presented for the Court's consideration."  *Id.* at 6.  Following the Court's ruling, additional litigation has proceeded in the CVRA case.

<u>The Dershowitz case</u>

---

[4] ████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████

While the CVRA case was moving forward in the Southern District of Florida on behalf of Jane Does 1 and 2, separate litigation developed between the *pro bono* attorneys who had filed the lawsuit (Cassell and Edwards) and Dershowitz.  After the filing of the joinder motion in the CVRA case, Dershowitz took the airwaves to attack not only Jane Doe 3, but also Cassell and Edwards.  Typical of these attacks was one levelled on CNN, in which Dershowitz alleged:

> If they [Cassell and Edwards] had just done an hours' worth of research and work, they would have seen she is lying through her teeth. . . . They're prepared to lie, cheat, and steal.  These are unethical lawyers.  . . . They can't be allowed to have a bar card to victimize more innocent people.

*Hala Gorani – CNN Live* (Jan. 5, 2015).[5]

 Cassell and Edwards then filed a state law defamation action against Dershowitz in Broward County, Florida.  *See* McCawley Decl., Exhibit. 5, Complaint in *Edwards and Cassell v. Dershowitz*.  The complaint alleged that Dershowitz had engaged in a "massive public media assault on the reputation and character" of Cassell and Edwards.  *Id.* at 4.  Ms. Giuffre was *not* a party to this defamation lawsuit.

<u>The Florida Court Rejects a Waiver of Attorney Clients Privilege Argument</u>

As Cassell and Edwards' Florida defamation action moved forward, Dershowitz sought to make an argument that they had somehow waived their client's (Ms. Giuffre's) attorney-client privilege.  On September 8, 2015, Dershowitz filed a motion to compel Cassell and Edwards to produce documents and additional responses to interrogatories.  McCawley Decl., Exhibit. 6, Motion to Compel.  In his motion, Dershowitz argued that Cassell and Edwards "have waived any privilege or protection that would otherwise attach to responsive documents and information

---

[5]  Available at http://www.cnn.com/videos/world/2015/01/05/wrn-uk-sex-abuse-allegations-alan-dershowitz-intv.cnn.

by bringing this defamation action placing at issue the truthfulness of Jane Doe No. 3's allegations against Dershowitz . . . ." *Id.* at 3-5.  In his motion and reply pleading (McCawley Decl., Exhibit 8, Reply in Support of Motion to Compel), Dershowitz argued that Cassell and Edwards' actions throughout the case constituted a waiver of attorney-client privilege.

Cassell and Edwards responded, arguing that Ms. Giuffre was not a party of the defamation action and that she was the only person who could waive her privilege.  McCawley Decl., Exhibit 7 at 4-6, Response in Opposition to Motion to Compel.  Cassell and Edwards also argued that there had been no waiver because confidential attorney-client communications with Ms. Giuffre were not "at issue" in the defamation case.  *Id.*  at 6-9.  Cassell and Edwards also later filed a sur-reply, further elaborating on the argument that Ms. Giuffre had not waived any attorney-client privilege by publicly discussing her sexual abuse by Epstein and his associates. McCawley Decl., Exhibit 9, Sur-Reply in Support Opposition to Motion to Compel. Cassell and Edwards also explained that communications with Ms. Giuffre were protected not only beginning in March 2014, but even earlier than that date when Ms. Giuffre understood that she was obtaining legal services from Cassell and Edwards.  *Id.* at 1.

Following this extensive briefing on waiver issues,[6] on December 8, 2015, the Florida Court (Lynch, J.) ruled, ***denying Dershowitz's argument that attorney-client privilege had been waived***.  McCawley Decl., Exhibit 10, Order Denying Motion to Compel. Specifically, the Court denied the motion to compel, explaining "Pre March 2014 communications are protected by the work product privilege and the witness has not waived the communications that were protected by the attorney-client privilege.  Also, there was no waiver by the [Cassell and Edwards] by filing suit."  *Id.* at 1.

---

[6] And following the filing of Cassell and Edwards' summary judgment motion, filed on November 26, 2015.

<u>Ms. Giuffre's Deposition in the Defamation Case</u>

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

███████████████████████████

<u>The Settlement of the Defamation Case</u>

Ultimately, Cassell, Edwards, and Dershowitz agreed to settle their defamation case. That settlement included both a public statement and confidential monetary payments.  As part of the settlement, Cassell and Edwards withdrew their allegations against Dershowitz in the defamation case contained in the then-pending summary judgment motion.  McCawley Decl., Exhibit 12, Notice of Withdrawal of Summary Judgment Motion.  As explained in the notice of withdrawal of this motion, "the withdrawal of the referenced filings is not intended to be, and should not be construed as being, an acknowledgement by Edwards and Cassell that the allegation made by Ms. Giuffre were mistaken.  Edwards and Cassell do acknowledge that the public filing in the Crime Victims' Rights Act case of their client's allegation against Defendant Dershowitz became a major distraction from the merits of the well-founded Crime Victims' Rights Act by causing delay and, as a consequence, turned out to be a tactical mistake."  *Id.*  All these actions settling the Florida defamation case took place in Florida.

## LEGAL STANDARDS FOR WAIVER

### A. Federal Rule of Evidence 502 Controls on the Issue of Waiver

Defendant asks this Court to find that Ms. Giuffre has somehow waived her attorney-client privilege regarding various communications in this case. This is no small step. The attorney-client privilege is one of the "oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States,* 524 U.S. 399, 403 (1998)). The privilege's purpose is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." 524 U.S. at 403 (internal quotation marks omitted).

In setting out the legal standards pertaining to waiver of attorney-client privilege, Defendant fails to cite the controlling – and protective – law on the issue. In a federal case, issues of alleged waiver of attorney-client privilege must be resolved under the new standards in Federal Rule of Evidence 502. In 2008, Congress enacted Federal Rule of Evidence 502, which is entitled "Attorney-Client Privilege and Work Product; Limitations on Waiver." New rule 502 places a number of protections in place to reduce litigation over claims that a party has somehow "waived" attorney client privilege. *See generally* Adv. Comm. Note, Rule 502. Notably, Defendant does not discuss, or even cite, Rule 502 in her motion.

The issue currently before the Court is specifically controlled by Rule 502(c), which covers situations where a disclosure in a state proceeding is alleged, in a federal proceeding, to establish waiver. Rule 502(c) provides the *greater* of protections found in federal or state law:

> (c) Disclosure Made in a State Proceeding. When the disclosure is made in a state proceeding and is not the subject of a state-court order concerning waiver, the disclosure does not operate as a waiver in a federal proceeding if the disclosure:
> (1) would not be a waiver under this rule if it had been made in a federal proceeding; or
> (2) is not a waiver under the law of the state where the disclosure occurred.

As is readily apparent from the text of the rule, there are two separate ways in which a party can prove that no waiver of attorney-client privilege has occurred: (1) by demonstrating that no waiver exists under federal law; or (2) by demonstrating that no waiver exists under the state law where the disclosure occurred.  Between these two possibilities, the drafters of the rule decided to apply the ***most*** protective law that governs waiver.  *See* Fed. R. Evid. 502(c), Adv. Comm. Notes ("The [Advisory] Committee [on the Federal Rules of Evidence] determined that the proper solution for the federal court is to apply the law that is ***most*** protective of privilege and work product" (emphasis added)).

### B.  <u>Florida Law</u>

C.

Florida's protective law on the attorney-client privilege provides that neither an attorney nor a client may be compelled to divulge confidential communications between a lawyer and client which were made during the rendition of legal services. Fla. Stat. Ann. § 90.502(1)(c). Communication denotes more than just giving legal advice; it also includes giving information to the lawyer to enable him to render sound and informed advice. *Hagans v. Gatorland Kubota, LLC/Sentry Ins.*, 45 So.3d 73, 76 (Fla. 1st DCA 2010).

Under Florida law, while the burden of establishing the attorney-client privilege usually rests on the party claiming it, *First Union National Bank v. Turney*, 824 So.2d 172, 185 (Fla. 1st DCA 2002), when communications appear on their face to be privileged, the burden is on the party seeking disclosure to prove facts which would make an exception to the privilege applicable. *Ford Motor Co. v. Hall-Edwards*, 997 So.2d 1148, 1153 (Fla. 3d DCA 2008); *Rousso v. Hannon*, 146 So.3d 66, 70 (Fla. 3d DCA 2014). In this case, Defendant does not appear to dispute that an attorney-client privilege exists with regard to the communications between Ms. Giuffre and her attorneys.  Rather, Defendant's argument is that the privilege has somehow been

waived.  *See* Motion to Compel at 1-2.  Therefore, under Florida law, Defendant must shoulder the burden of overcoming the privilege.  (Of course, because Defendant failed to even cite, much less discuss, Florida law, she has not carried that burden.)

Defendant asserts that she can force disclosure of the privileged communications between Ms. Giuffre and her counsel under the "at issue" doctrine.  To establish this alleged waiver, Defendant's motion relies on a federal district court case – *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975), which was cited in *Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 210 F.R.D. 506. 509-10 (S.D.N.Y. 2002) (Ellis, M.J.).  *See* Motion to Compel at 8.  As discussed below, as a matter of controlling federal authority, these cases have been repudiated by the Second Circuit.  And to the same effect, Florida law also rejects the expansive *Hearn* approach to waiver.  *See Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc.,* 300 F.R.D. 590, 593-95 (S.D. Fla. 2014) (discussing Florida authorities).  Florida law disfavors waiver of the attorney-client privilege and will not readily find an "at issue" waiver.  *See Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc.*, 300 F.R.D. 590, 593 (S.D. Fla. 2014) (*citing Coates v. Akerman, Senterfitt & Eidson, P.A.,* 940 So.2d 504, 508 (Fla. 2nd DCA 2006) (refusing to find waiver based on the at-issue doctrine)).  In contrast to *Hearn*, under Florida law, at-issue waiver only occurs "when a party 'raises a claim that will *necessarily* require proof by way of a privileged communication.'" *Coates,* 940 So.2d at 508 (quoting *Jenney v. Airdata Wiman, Inc.,* 846 So.2d 664, 668 (Fla. 2nd DCA 2003)) (emphasis in original). Indeed, in 2014, the Southern District of Florida rejected the *Hearn* "at issue" analysis and instead, adopted the analysis of the Third Circuit as outlined in *Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851 (3d Cir. 1994). *Guarantee Ins*, 300 F.R.D. at 595. The Third Circuit deemed the *Hearn* test to be of "dubious validity" because, although it "dress[es] up [its] analysis with a checklist of factors, [it] appear[s] to rest on a

10

conclusion that the information sought is relevant and should in fairness be disclosed." *Id.* at 864. The Third Circuit specifically rejected *Hearne* because relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged. *Rhone*, 32 F.3d at 863.  Florida law tracks that of the Third Circuit.  *See* 300 F.R.D. at 593-95 (citing Florida case law).

 Also, under Florida law, the client – not her attorneys – holds the attorney-client privilege.  *See* Fla. Stat. Ann. § 90.502(3); *see also* Fla. Stat. Ann. § 90.502(2) (a client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client).  Some Florida courts have even recognized serious due process issues could be created by a procedure through which a client lost their privilege without an opportunity to be heard in the proceedings.  *See, e.g., Rogers v. State*, 742 So.2d 827, 829 (Fla. 2d DCA 1999). Under Florida law, so long as a client has a reasonable expectation of privacy in the communication, under § 90.507, the privilege is protected. *McWatters v. State*, 36 So.3d 613, 636 (Fla. 2010).   Also under Florida law, only the client – not her attorney – can waive attorney-client privilege.  *See Savino v. Luciano*, 92 So.2d 817 (Fla. 1957), *Coates v. Akerman, Senterfitt & Edison, P.A.*, 940 So.2d 504 (Fla. 2d DCA 2006), and *Genovese v. Provident Life and Accident Ins. Co.*, 74 So.3d 1064 (Fla. 2011).

## C.  Federal Law

Rather than discuss Florida privilege law, Defendant exclusively cites federal case law. *See* Mot. to Compel at ii-iii (table of authorities citing only federal cases).  Yet as this Court has previously held in ruling on an earlier privilege motion made by the Defendant, state law generally provides the rule of decision in this diversity case.  *See* Giuffre v. Maxwell, DE 135 at

6, 2016 WL 175918 at * 6 (applying New York privilege law) (*citing Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 102 (S.D.N.Y. 2007) ("Because this Court's subject matter jurisdiction is based upon diversity . . . state law provides the rule of decision concerning the claim of attorney-client privilege.")).  Accordingly, an argument can be made that New York *state* law applies in this case[7] – but Defendant does not explain why she jumps to federal law.

As explained above, in the particular context of a waiver argument, Federal Rule of Evidence 502 applies the *more* protective of state law or federal law in determining whether a waiver of privilege has occurred.  In this case, the controlling federal law is at least as protective as Florida law.  The controlling federal law here comes from the Second Circuit, including *In re Cnty. of Erie*, 546 F.3d 222 (2d Cir. 2008) – a case not even cited, much less discussed, by the Defendant.  In view of the importance of the attorney-client privilege, the Second Circuit in that case held that any finding of waiver should be made with "caution."  *Id.* at 228.

Rather than cite this controlling Second Circuit precedent, Defendant relies on a 2002 case from this Court applying the *Hearn* "at issue" doctrine.  *See* Mot. to Compel at 8 (*citing Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 210 F.R.D. 506. 509-10 (S.D.N.Y. 2002) (Ellis, Magistrate Judge) (*quoting Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).  Defendant goes on to argue that "courts have generally applied the *Hearn* [at issue] doctrine liberally, finding a broad waiver of attorney-client privilege where a party asserts a position 'the truth of which can only be assessed by examination of the privilege communication."  Mot. to Compel at 8 (internal quotation omitted).

Defendant fails to recognize that the Second Circuit has explicitly disavowed the *Hearn* doctrine.  In *In re Cnty. of Erie*, 546 F.3d 222 (2d Cir. 2008), the Second Circuit explained that "[c]ourts in our Circuit and others have criticized *Hearn* and have applied its tests unevenly."  *Id.*

---

[7] As a protective matter, Ms. Giuffre will also provide citations to New York state authorities in this response.

at 227-28.[8] The Second Circuit also noted that the *Hearn* test "has been subject to academic

criticism.  *See, e.g.,* Richard L. Marcus, *The Perils of Privilege: Waiver and the Litigator,* 84

MICH. L. REV. 1605, 1628-29 (1986); Note, *Developments in the Law-Privileged*

*Communications,* 98 HARV. L. REV. 1650, 1641-42 (1985) (identifying "the faults in the *Hearn*

approach").   In light of these strong criticisms of *Hearn*, the Second Circuit decided that "[w]e

agree with its critics that the *Hearn* test cuts too broadly and therefore conclude that the District

Court erred in applying it here. . . . Nowhere in the *Hearn* test is found the essential element of

*reliance* on privileged advice in the assertion of the claim or defense in order to effect a waiver."

546 F.3d at 229 (emphasis added).  The Second Circuit held that, for an "at issue" waiver to

occur, "a party must *rely* on privileged advice from his counsel to make his claim or defense."

*Id.* (emphasis added).

      In light of the Second Circuit's holding, recent cases from this Court have explained that

"reliance on privileged advice in the assertion of the claim or defense is an 'essential element' of

a claim of waiver."  *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas,* No. 04 CIV

10014 PKL, 2009 WL 3111766, at *16 (S.D.N.Y. Sept. 28, 2009).[9]  For the sake of

completeness, it may be relevant to note that New York state privilege law applies the same

---

[8]  The Second Circuit cited numerous cases, including cases from this Court – e.g., *Pereira v. United Jersey Bank,* Nos. 94 Civ 1565 & 94 Civ 1844, 1997 WL 773716, at *3 (S.D.N.Y. Dec.11, 1997) ("*Hearn* is problematic insofar as there are very few instances in which the *Hearn* factors, taken at face value, do not apply and, therefore, a large majority of claims of privilege would be subject to waiver."); *Allen v. West Point-Pepperell, Inc.,* 848 F.Supp. 423, 429 (S.D.N.Y.1994) (noting that district courts within this Circuit have reached conflicting decisions in the application of *Hearn,* and rejecting reliance "upon a line of cases in which courts have unhesitatingly applied a variation of the *Hearn* balancing test"); *Connell v. Bernstein-Macaulay, Inc.,* 407 F.Supp. 420, 422 (S.D.N.Y.1976) ("The actual holding in [*Hearn*] is not in point because the party there asserting the privilege had expressly relied upon the advice of counsel as a defense to the plaintiff's action."); *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.,* 32 F.3d 851, 864 (3d Cir.1994) (deeming *Hearn* to be of "dubious validity" because, although it "dress[es] up [its] analysis with a checklist of factors, [it] appear[s] to rest on a conclusion that the information sought is relevant and should in fairness be disclosed").

[9]  The *Aristocrat Leisure* case accordingly rejected a party's reliance on the same authority that Defendant relies upon here.  *See Aristocrat,* 2009 WL 3111766 at *16 n.6 (discussing *Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.,* 210 F.R.D. 506 (S.D.N.Y. 2010), and then noting in the next sentence that the *Hearn* test relied upon by *Bank Brussels*' "recently has been criticized by the Second Circuit on this very issue.").

specific and protective standard.  *See In re Bank of New York Mellon,* 42 Misc. 3d 171, 177, 977

N.Y.S.2d 560, 565 (Sup. Ct. 2013) ("'at issue' waiver occurs 'when the party has asserted a

claim or defense that he intends to prove by use of the privileged materials.' An example of an

affirmative act that does constitute 'at issue' waiver of privilege is a party's 'assert[ing] as an

affirmative defense [its] reliance upon the advice of counsel.'").[10]


## **DISCUSSION**

### I.     MS. GIUFFRE DID NOT WAIVE HER ATTORNEY-CLIENT PRIVILEGE WHEN EDWARDS AND CASSELL FILED AND PURSUED THEIR OWN DEFAMATION ACTION AGAINST ALAN DERSHOWITZ.

Defendant's lead argument is that Cassell and Edwards waived Ms. Giuffre's attorney-

client privilege when they filed and pursued a defamation action against Alan Dershowitz.  *See*

Mot. to Compel at 10.  This claim is meritless for numerous reasons, including the fact (not

disclosed by Defendant) that this very argument has been fully litigated before the Florida court

handling that defamation action, which specifically ***rejected*** any finding of waiver.


### A.     The Florida Court Presiding over the Defamation Action Has Already Rejected the Same Waiver Claim that Defendant is Advancing Here.

The claim that Cassell and Edwards somehow waived Ms. Giuffre's attorney-client by

pursuing their own, personal defamation action against Dershowitz has already been the subject

of extensive briefing – and, ultimately, a Florida court ruling.  Defendant has scoured the docket

---

[10]  New York and federal authorities also hold that when attorneys are not acting on the client's behalf, they cannot waive their client's privilege.  N.Y. C.P.L.R. § 4503(a); *Dillenbeck v. Hess*, 73 N.Y.2d 278, 290, 536 N.E.2d 1126, 1134 (N.Y. 1989) ("[T]he sine qua non of any evidentiary privilege is that it is personal to, and can only be waived by, the privilege holder.").  *See also In re von Bulow*, 828 F.2d 94, 100-01 (2d Cir. 1987) ("Of course, the privilege belongs solely to the client and may only be waived by him. An attorney may not waive the privilege without his client's consent."); *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 66 F. Supp. 3d 406, 410 (S.D.N.Y. 2014) (same); *Ferreira v. Capitol Specialty Ins. Corp.*, 31 Misc. 3d 1209(A), 929 N.Y.S.2d 199 (N.Y. Sup. Ct. 2011) ("CPLR 4503 makes clear that an attorney cannot waive the attorney-client privilege rather waiver is only effective when done by the beneficiary of the privilege or their personal representative.").

in the Dershowitz defamation case to collect every flyspeck of information that she believes support her argument that a "waiver" has taken place. *See* Mot. to Compel at 10-12 and numerous associated exhibits. But, remarkably, she has not revealed to this Court the most relevant information from the docket: that the Florida court considered the same waiver issues and rejecting the same arguments that the Defendant now advances. This Florida court ruling, applying Florida law, is controlling here.

As discussed above in the factual section of this response, in the Florida case, Dershowitz filed a motion to compel advancing legal and factual arguments identical to those the Defendant is advancing here. *See* McCawley Decl., Ex. 6 at 3, Dershowitz motion to compel (arguing that Cassell and Edwards "have waived any privilege or protection that would otherwise attach to responsive documents and information by bringing this defamation action placing at issue the truthfulness of Jane Doe No. 3's allegations against Dershowitz . . . ."). *Id.* at 3. Citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975), Dershowitz claimed that information Ms. Giuffre had confidentially provided to Cassell and Edwards as her attorneys had become "at issue" in the defamation action. McCawley Decl., Ex. 6 at 4-5. Dershowitz argued broadly that a whole host of alleged attorney-client communications were "at issue" in the case, including:

> (1) Jane Doe No. 3's allegations against Dershowitz asserted in the action captioned *Jane Doe #1, et al. v. United States of America*, Case No. 08-cv-80736 (S.D. Fla.) (the "Federal Action"); (2) [Cassell and Edwards'] investigation into Jane Doe No. 3's allegations against Dershowitz; (3) [Cassell and Edwards'] assertion in the Complaint that Dershowitz was an alleged participant in the criminal conduct committed by Jeffrey Epstein ("Epstein"); and (4) Jane Doe No. 3's whereabouts and activities during the time when she claims to have been "sex slave" for Epstein.

Ex. 6 at 3.  As the briefing on the issue continued, in an October 26, 2015 response filing, Dershowitz argued that Ms. Giuffre's public statements waived the privilege,[11] along with actions by her attorneys Cassell and Edwards.  Ex. 8 at 5-8.[12]

After all these arguments were fully briefed, the Florida court (Lynch, J.) *rejected* Dershowitz's arguments that any waiver of the attorney-client privilege had taken place. McCawley Decl., Ex. 10 at 1 ("Defendant/Counterclaim Plaintiff's Motion to Compel Production of documents and complete responses to interrogatories is hereby denied.").  In a December 8, 2015, order, Judge Lynch provided a short explanation of his reasoning and entered an order denying Dershowitz's waiver motion.  *Id.*

In her pending motion to compel, Defendant recycles the same arguments that Dershowitz made, such as the claim that Cassell and Edwards waived privilege by filing suit (Mot. Compel at 10), that her March 2011 interview with Scarola and Edwards was a waiver (*id.* at 10), and other similar claims (*id.* at 11-13).  But Dershowitz already litigated these issues a few months ago in the Dershowitz case – and his claims were rejected by the Florida court. Defendant is now collaterally estopped from relitigating these identical issues here, because Dershowitz had a full and fair opportunity to litigate those issues and Defendant was in a "common interest" agreement with Dershowitz at the time.  The doctrine of collateral estoppel protects litigants – and the courts – from relitigating identical issues and promotes efficiency by barring unnecessary litigation.  *See Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 (1979).  As this Court has explained, for collateral estoppel to apply, there must have been a full

---

[11] Dershowitz specifically listed the following public statements by Ms. Giuffre as illustrations of how she had waived her privilege: (1) Ms. Giuffre's March 5, 2011, interview with the *Daily Mail*; (2) Ms. Giuffre's April 7, 2011, recorded telephone interview with attorneys Jack Scarola and Brad Edwards; (3) the January 2015 release of Ms. Giuffre's diary by *Radar Online*; (4) Ms. Giuffre's statements to "numerous other third parties," including former boyfriends and the FBI; and (5) Ms. Giuffre's filing of this suit against Defendant.  Ex. 6 at 6-8.
[12] Dershowitz specifically argued that (among other illustrations) Cassell's answers to interrogatories and testimony at  his deposition in the case had waived privilege.  Ex. 8 at 11-12.

and fair opportunity to litigate the decision that now controls and the issue in the prior action must be identical to and decisive of the issue in the instant action. *Zois v. Cooper*, 268 B.R. 890, 893 (S.D.N.Y. 2001), *aff'd sub nom. In re* <u>Zois</u>, 73 F. App'x 509 (2d Cir. 2003). A non-party can be bound by a decision, so long as her interests were "effectively represented." *Zois*, 268 B.R. at 893.[13] As this Court can readily determine from reviewing the pleadings Dershowitz filed in the Florida case, *see* McCawley Decl. at Ex. 6 & 8, Dershowitz fully briefed identical issues to those presented here. And he was effectively representing Maxwell at the time. The elements of collateral estoppel apply.

Moreover, entirely apart from collateral estoppel doctrine, Judge Lynch's decision is highly persuasive. Judge Lynch was the presiding judge over the Dershowitz matter, so he was intimately familiar with (for example) what matters were "at issue" in that particular case. Moreover, Judge Lynch is, of course, a Florida judge skilled in applying Florida legal principles. His ruling on whether a waiver of attorney client privilege existed under Florida law should be given heavy weight here. *See Elliott Associates, L.P. v. Banco de la Nacion,* 194 F.3d 363, 370 (2d Cir. 1999). Finally, Defendant's briefing entirely ignores even the existence of Judge Lynch's ruling. In such circumstances where the Defendant has failed to offer any reason for questioning Judge Lynch's holding, this Court should follow Judge Lynch's lead and hold that no waiver of the attorney-client privilege exists under Florida law. And, because Florida law controlled when the disclosures took place, under Fed. R. Evid. 502(c), no waiver exists in this proceeding.

---

[13] *Zois* relied on New York law. Florida law is to the same effect, as is federal doctrine. *See O'Brien v. Fed. Trust Bank, F.S.B.,* 727 So. 2d 296, 298 (Fla. Dist. Ct. App. 1999) ("Collateral estoppel prevents relitigation of issues where the identical issues previously have been litigated between the parties or their privies."); *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

**B.      Actions by Cassell and Edwards Do Not Waive Ms. Giuffre's Attorney-Client Privilege.**

Not only has Judge Lynch already ruled on the attorney-client privilege issue, but his ruling was entirely correct.  Defendant's argument rests on the proposition that Cassell and Edwards had authority to waive Ms. Giuffre's privilege while they pursued ***their*** Florida defamation action.  But in filing their own, personal defamation claims against Dershowitz in a lawsuit where Ms. Giuffre was not a party, Cassell and Edwards were not acting on Ms. Giuffre's behalf.  Defendant never attempts to even explain, much less prove, how that defamation action could have benefitted Ms. Giuffre.  And Florida law is clear that when attorneys are not acting on the client's behalf, they cannot waive their client's privilege. *See* Charles W. Ehrhardt, 1 Fla. Prac., *Evidence* § 502.6 (2015 ed.); *Schetter v. Schetter*, 239 So.2d 51, 52 (Fla. 4th DCA 1970).

To find that an attorney waived his client's privilege, a clear record must exist concerning the attorney's attorney to waive privilege.  *See Bus. Integration Servs., Inc. v. AT&T Corp.*, No. 06 CIV. 1863 (JGK), 2008 WL 318343, at *2 (S.D.N.Y. Feb. 4, 2008).   Here, to the contrary, the record is clear that Ms. Giuffre did ***not*** authorize any waiver of her attorney-client privilege. *See* McCawley Decl., Ex. 13, affidavit of Ms. Giuffre (Ms. Giuffre did not authorize any waiver).  Accordingly, under Florida law, Cassell and Edwards' actions did not waive Ms. Giuffre's privilege.[14]

The main examples Defendant offers in support of her waiver argument come from a summary judgment motion that Cassell and Edwards filed.  *See* Mot. to Compel at 16.  Of

---

[14] For the sake of completeness, it is worth noting that both federal law and New York state law likewise require that a client waive attorney-client privilege.  *See, e.g., Schnell v. Schnall*, 550 F. Supp. 650, 653 (S.D.N.Y.1982) (no waiver of attorney-client privilege where attorney testified at hearing without presence or authorization of client); N.Y. C.P.L.R. 4503 (McKinney) ("Unless the client waives the privilege, an attorney . . . shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication, in any action, disciplinary trial or hearing, or administrative action, proceeding or hearing conducted by or on behalf of any state, municipal or local governmental agency or by the legislature or any committee or body thereof.").

course, that motion was filed on their behalf – not Ms. Giuffre's.  To be sure, that motion

contained  (among other supporting information) a sworn affidavit from Ms. Giuffre.[15]  But the

routine step of submitting an affidavit is not a waiver of attorney-client protections, as discussed

at greater length in Part II.D., *infra*.  And, in any event, Defendant does not include that affidavit

among her supporting materials to her motion, much less explain how the recitation of factual

information in that affidavit constitutes a waiver by Ms. Giuffre with respect to communications

with her attorneys. *See Koon v. State*, 463 So.2d 201, 203-04 (Fla. 1985) (no waiver when the

client merely discloses facts which were part of the communication with the client's attorney).

Ms. Giuffre has not waived ***her*** privilege.


### C.   Ms. Giuffre's Confidential Communications With Her Attorneys Were Never "At Issue" in the Florida Dershowitz Litigation.

Defendant's argument that Ms. Giuffre's attorney-client privilege has been waived under

the "at issue" doctrine also fails under Florida law because her confidential communications

were never at issue in the Dershowitz litigation.

Florida law on when confidential attorney-client communications are at issue comes from

the Florida Supreme Court's decision in *Savino v. Luciano*, 92 So.2d 817 (Fla. 1957). There, the

Florida Supreme Court announced the test for determining whether confidential communications

were "at issue" as whether a claim or defense would "***necessarily require*** that the privileged

matter be offered in evidence."  *Id.* at 819 (emphasis added); *see also Diaz–Verson v. Walbridge

Aldinger Co.*, 54 So.3d 1007, 1011 (Fla. 2d DCA 2010).  More recent decisions from Florida

---

[15] The "evidentiary support" for the summary judgment motion rested on 16 additional exhibits, including such obviously non-privileged materials as a Palm Beach Police Department report; flight logs from Epstein's jet; excerpts from deposition testimony of Epstein, Juan Alessi, Alfredo Rodriquez, and Alan Dershowitz; photographs; and Epstein's telephone directory. *See* Menninger Dec., Ex. E at 28.

have emphasized that *Savino* does not mean that a party waives attorney-client privilege merely by bringing or defending a lawsuit.  *Coates v. Akerman, Senterfitt & Edison, P.A.*, 940 So.2d 504 (Fla. 2d DCA 2006).  Instead, waiver occurs only when a party "must necessarily use the privilege information to establish its claim or defense." *Id.* at 510-11 (emphasis added).  Most recently, in *Genovese v. Provident Life and Accident Ins. Co.*, 74 So. 3d 1064, 1069 (Fla. 2011), *as revised on denial of reh'g* (Nov. 10, 2011), the Florida Supreme Court cited both *Coates* and *Savino* to hold that the "at issue" doctrine allows discovery of privileged material only when the holder of the privilege – the client – raises the advice of counsel as a claim or defense in the action and the communication is essential to the claim or defense.  *Id.*

Under these restrictive standards, Ms. Giuffre's communications were never at issue in her attorneys' personal, defamation case against Dershowitz.  Consider, for example, a typical allegation Cassell and Edwards' complaint:

> Immediately following the filing of what Defendant, Dershowitz, knew to be an entirely proper and well-founded pleading, Dershowitz initiated a massive public media assault on the reputation and character of Bradley J. Edwards and Paul G. Cassell accusing them of intentionally lying in their filing, of having leveled knowingly false accusations against the Defendant, Dershowitz, without ever conducting any investigation of the credibility of the accusations, and of having acted unethically to the extent that their willful misconduct warranted and required disbarment.

McCawley Decl., Ex. 5 at 4 (¶ 17).  As is immediately apparent, this allegation does not ***require*** an examination of Ms. Giuffre's confidential communications with her attorneys.  Instead, it requires an assessment of Dershowitz's state of mind with regard to his knowledge of the information that Cassell and Edwards had to support the filing of the allegations.  And, as supporting exhibits to the pleadings Cassell and Edwards filed made clear, the adequacy of their investigation could be readily established from many sources that did not have any connection to what Ms. Giuffre may or may not have told them in confidence.  *See, e.g.,* McCawley Decl., Ex.

3 at 26-38 (recounting information supporting allegations against Dershowitz, such as sworn testimony from household employees and invocations of the Fifth Amendment by Epstein and his co-conspirators).

To be sure, Dershowitz tried to make an argument that Ms. Giuffre's communications with her attorneys might have some arguable relevance to the case. But Judge Lynch rejected that very argument – and quite properly so. Relevance is insufficient to waive privilege under Florida law. *Guarantee Ins*, 300 F.R.D. at 594 (citing *Coyne v. Schwartz, Gold, Cohen, Zakarin & Kotler, P.A.*, 715 So.2d 1021, 1022 (Fla. 4th DCA 1998)). A client does not waive the attorney-client privilege simply because her credibility could be impeached by communications with her former attorney. *See Jenney v. Airdata Wiman, Inc.,* 846 So.2d 664, 668 (Fla. 2d DCA 2003). Accordingly, under Florida law, Ms. Giuffre's confidential communications with her attorneys were never at issue in the Florida litigation.[16]

### D. Defendant Has Not Met the Other Requirements for Showing Waiver of Attorney-Client Privilege.

For the foregoing reasons, Defendant has failed to make the required showing for an "at issue" waiver of attorney-client privilege. But even more fundamentally, Defendant has failed to establish other elements necessary to find a waiver of attorney-client privilege. Defendant repeatedly refers to routine litigation actions, such as the filing of in-court affidavits, as a basis for finding some kind of waiver of privilege. *See* Mot. to Compel at 16. But it is obvious that such actions do not waive attorney-client protection. Litigation requires some limited communication to third parties — including the court and opposing counsel — of information learned in the course of the attorney-client relationship. Therefore, Florida law recognizes an

---

[16] The same result would obtain under New York state law. *See, e.g., Am. Re-Ins. Co. v. U.S. Fid. & Guar. Co.*, 40 A.D.3d 486, 492, 837 N.Y.S.2d 616, 622 (2007) (the at-issue "doctrine applies where a party, through its affirmative acts, places privileged material at issue and has selectively disclosed the advice").

absolute privilege to protect attorneys' statements made in communications that are preliminary

to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a

judicial proceeding.  Fla. Stat. Ann. § 90.502(2); *see also McCullough v. Kubiak*, 158 So. 3d

739, 740 (Fla. 4th DCA, 2015).  A waiver of the attorney-client privilege occurs only if the client

voluntarily discloses in court the substance of a ***communication with her attorney***.  *See, e.g.,*

*Delap v. State*, 440 So.2d 1242, 1247 (Fla. 1983) (criminal defendant sought to use in court

favorably testimony from his investigator while blocking inquiry into other testimony).  No

waiver occurs when the client merely discloses facts which were part of the communication with

the client's attorney.  *See Koon v. State*, 463 So.2d 201, 203-04 (Fla. 1985); *see also Taylor v.*

*State*, 855 So.2d 1, 26 n.29 (Fla. 2003).  Thus, the privilege attaches to the communication with

counsel, not to the underlying facts.  *Brookings v. State*, 495 So.2d 135, 139 (Fla. 1986); *see also*

*Lynch v. State*, 2 So.3d 47, 66 (Fla. 2008).[17]  As a result, allegations that Giuffre disclosed to

third parties the same facts that she may have related to Cassell and Edwards, without any

evidence that she disclosed the substance of her confidential consultation with Edwards and

Cassell, cannot overcome her privilege.[18]

To hold otherwise would eviscerate the attorney-client privilege. Such a ruling would

mean that every time an attorney filed a declaration by his client that contained the factual basis

for the client's claim, the opposing party would have the right to examine all privileged

communications.  Defendant has not cited any authority either in Florida (or elsewhere) to

---

[17] New York state privilege law is to the same effect.  *See, e.g., Niesig v. Team I*, 76 N.Y.2d 363, 372, 558 N.E.2d
1030, 1034 (1990) (because "the privilege applies only to confidential communications with counsel (*see,* CPLR
4503), it does not immunize the underlying factual information . . . from disclosure to an adversary").

[18] As an illustration, Defendant notes that in 2011 Ms. Giuffre gave an interview to the *Daily Mail*.  Mot. to Compel
at 15.  But Defendant does not explain how that interview disclosed any attorney-client communications.  And
because any such disclosures would have been extrajudicial, they would be narrowly construed.  *In re von Bulow*,
828 F.2d 94, 103 (2d Cir. 1987).

support his extreme assertion that Ms. Giuffre waived her privilege simply by allowing an affidavit to be filed in a court proceeding.

Defendant also claims Cassell, at his deposition in the Dershowitz case, waived attorney-client privilege by discussing factual information related to his investigation of Ms. Giuffre's allegations (for example, flight log information). Cassell's deposition testimony did not constitute a waiver of Ms. Giuffre's attorney-client privilege. Indeed, Ms. Giuffre's own separate attorney (undersigned counsel, Ms. McCawley, from the law firm of Boies, Schiller & Flexner, LLP) raised a standing objection to Cassell answering any question that would require divulging any attorney/client communications. McCawley Decl., Ex. 14, deposition excerpt of Paul Cassell, Volume I, dated Oct. 16, 2015, at 39:24 – 40:2 ("Virginia Roberts does not waive her attorney/client privilege with her lawyers, and they are not entitled to testify as to information that she intended to be confidential that she communicated to her lawyers.").[19] Defendant also argues that because Cassell said at some (unspecified) point in his deposition that he "knew" some (unidentified) information about Ms. Giuffre, he must have been revealing attorney-client communications. Mot. to Compel at 17 ("Of course, the information [Cassell and Edwards] "knew" about [Ms. Giuffre was a direct result of her attorney-client communications with them . . . ."). But Cassell knew a vast amount of information about Ms. Giuffre from the factual record in the case, such as the flight logs demonstrating flights that she took with Epstein and Defendant on Epstein's jet. Defendant's logic is simply incorrect.

**E.    Ms. Giuffre Will Not Seek to Use Confidential Attorney-Client Communications in her Action Here.**

For all the reasons just explained, Ms. Giuffre has not waived her attorney-client privilege through events that occurred in the Dershowitz case. But one additional point bears

---

[19] In her "excerpts" from Cassell's deposition, Defendant has not included this portion. *See* Menninger Dec., Ex. L.

emphasis:  Defendant attempts to argue that the trial *in this case* will somehow be unfair if she does not receive access to confidential attorney-client communications that Ms. Giuffre had with her lawyers earlier.   Mot. to Compel at 20-21.  But regardless of what may or may not have been at issue in the Dershowitz case, confidential communications will not be at issue here.  For example, Defendant writes that "[i]t would be prejudicial for [Ms. Giuffre] to be able to support her claim in this case that she is not a liar using her attorney's testimony . . . ."  *Id.* at 21.  To be clear, Ms. Giuffre has no intention of calling, for example, Cassell and Edwards to testify at trial in an attempt to support her claims.  Thus, this will not be a case where it will be "misleading to the court or any jury to hear testimony from [Ms. Giuffre's] counsel about all the factual basis, work product and thought process on which they relied in making the allegations in the Joinder Motion," Mot. to Compel at 22, for the simple reason that that Ms. Giuffre's counsel will not be witnesses in the case.  Nor will Ms. Giuffre be presenting a "state of mind" defense that might require a more extensive inquiry into attorney-client communications.  *See In re Cty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (noting absence of good faith or state of mind issues as a reason for not finding "at issue" waiver of privilege); *Nomura Asset Capital Corp. v. Cadwalader, Wickersham & Taft LLP*, 62 A.D.3d 581, 582, 880 N.Y.S.2d 617, 618-20 (N.Y. App. Div. 2009) (finding no waiver where plaintiff disavowed any intention to use confidential attorney-client communications; relevance alone insufficient to put privileged materials "at issue" because, "if that were the case, a privilege would have little effect").

   To be sure, at trial Ms. Giuffre will present factual testimony supporting her version of events – just as, no doubt, Defendant will try to present testimony supporting her version.  But such testimony (from both sides) does not create any waiver of attorney-client privilege.  Instead, such testimony is simply the presentation of competing facts, from which the jury can decide

who is telling the truth.  None of this creates any need for Defendant to force Ms. Giuffre to

reveal confidential communications.

**II.     MS. GIUFFRE DID NOT WAIVE HER ATTORNEY-CLIENT PRIVILEGE BY
         DENYING FABRICATED EVICENCE DURING HER DEPOSITION.**



---

[20] Again, for sake of completeness, it is worth noting that federal and New York state law also contain a crime-fraud exception to the attorney client privilege. *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 73 (S.D.N.Y. 2009); *Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 1 A.D.3d 223, 224, 767 N.Y.S.2d 228 (2003) (attorney-client privilege "may not be invoked where it involves client communications that may have been in furtherance of a fraudulent scheme, an alleged breach of fiduciary duty or an accusation of some other wrongful conduct").

[21]

III.   **EDWARDS AND CASSELL HAVE NOT WAIVED WORK-PRODUCT PROTECTION AND MAXWELL HAS NOT DEMONSTRATED NEED TO PENETRATE THE PROTECTION.**

   **A.  Work Product Protection Has Not Been Waived.**

For many of the same reasons that Ms. Giuffre has not waived her attorney-client privilege, the work-product protection has not been waived.  Fed. R. Evid. 502's protections against waiver apply not only to the attorney-client privilege but also to the work-product doctrine.  On the facts of this case, Rule 502 thus extends all work-product protections that exist "under the law of the state where the disclosure occurred," Fed. R. Evid. 502(c)(2) – i.e., Florida law – as well as the protection that exists under federal law, Fed. R. Evid. 502(c)(1).

Florida law provides that work-product protections extend to "documents and tangible things otherwise discoverable" if a party prepared those items "in anticipation of litigation or for trial." Fla. R. Civ. P. 1.280(b)(3). The rationale supporting the work-product doctrine is that one party is not entitled to prepare his case through the investigative work product of his adversary where the same or similar information is available through ordinary investigative techniques and discovery procedures.  *Universal City Development Partners, Ltd. v. Pupillo*, 54 So.3d 612, 614 (Fla. 5th DCA, 2011). The work-product of the litigant, his attorney or agent, cannot be examined, absent rare and exceptional circumstances.  *Surf Drugs, Inc. v. Vermette*, 236 So.2d 108, 112 (Fla. 1970).

In Florida (as elsewhere), a party "can make a limited waiver of its . . . work product privilege." *Paradise Divers, Inc. v. Upmal*, 943 So. 2d 812, 814 (Fla. Dist. Ct. App. 2006).  A waiver by disclosure only includes "other unrevealed communications only to the extent that they are relevant to the communication already disclosed."  *Id.* (*citing Eastern Air Lines, Inc. v. Gellert*, 431 So.2d 329, 332 (Fla. 3d DCA 1983)).  Waiver by disclosure does "not mean . . . that

voluntary disclosure of confidential information effectively waives the privilege as to all conversations, or the whole breadth of discussion which may have taken place." *Procacci v. Seitlin*, 497 So. 2d 969, 969-70 (Fla. Dist. Ct. App. 1986) (*citing Goldman, Sachs & Co. v. Blondis,* 412 F.Supp. 286, 288 (N.D.Ill.1976)).  Instead, waiver by disclosure is confined to "that specific subject during that particular conversation." *Procacci*, 497 So. 2d at 970 (*quoting Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 461 (N.D. Cal.1978)).[22]

As with her attorney-client privilege argument, Defendant has not even cited Florida law on waiver of work-product protection, much less explained how she meets its demanding requirements.  Moreover, the illustrations she provides do not prove any general waiver of work-product protection.  For example, Defendant relies on the claim that Cassell and Edwards have waived work-product protection by disclosing a transcript of a portion of a 2011 telephone interview with Ms. Giuffre by attorneys Jack Scarola and Brad Edwards.  But that recorded interview was never a confidential communication between Mr. Giuffre and the lawyers, but rather (as the transcript of the call itself makes clear) a communication that could be presented "***to any jury that might ultimately have to hear these facts.***"  McCawley Decl., Ex. 15 at 1, transcript of Scarola/Edwards interview on April 7, 2011 (emphasis added).  In other words, the recorded call was simply the functional equivalent of an affidavit – and affidavits are routinely disclosed with waiving work product protections, under the law of Florida and elsewhere.

Defendant also argues that Cassell and Edwards waived work-product protection by filing a summary judgment motion in the Dershowitz case which contained supporting exhibits (e.g., flight logs, sworn testimony by third-party witnesses, and other evidence).  Mot. to Compel

---

[22] New York state law is to the same effect.  *See Charter One Bank, F.S.B. v. Midtown Rochester, L.L.C.*, 191 Misc. 2d 154, 159, 738 N.Y.S.2d 179, 186 (Sup. Ct. 2002) (" The disclosure of a document protected by the work-product rule does not result in a waiver of the privilege as to other documents.").

at 16.  But providing information in support of a summary judgment motion is a routine step that attorneys take every day.  While the materials produced are obviously not subject to work product protection, other materials and communications do not somehow become subject to discovery.  *Paradise Divers, Inc.*, 943 So. 2d at 814.

### B.  Defendant Has Not Proven "Need" to Penetrate Work-Product Protection.

Defendant's argument on work product protection also simply assumes that it is the same as the attorney-client privilege and can be waived under an "at issue theory."  But the "at issue" legal theory Defendant relies on to argue (incorrectly) that attorney-client privilege has been waived applies only to that privilege.  The work product doctrine is quite distinct from attorney-client privilege, and application of the privileges and exceptions to them differ.  *See West Bend Mutual Ins. Co.* v. *Higgins,* 9 So.3d 655, 656 (Fla. 5th DCA  2009); *Genovese v. Provident Life & Accident Ins. Co.*, 74 So. 3d 1064, 1068 (Fla. 2011), *as revised on denial of reh'g* (2011).  The function of the work product doctrine is to protect counsel's mental impressions.  *West Bend Mutual*, 9 So.3d at 656.  To pierce the privilege, Defendant must show "that the substantial equivalent of the material cannot be obtained by other means."  *Southern Bell Tel. & Tel. Co. v. Deason,* 632 So.2d 1377, 1385 (Fla.1994).  Defendant has not even identified any specific work-product she claims to need, much less shown why she cannot get the underlying information from other sources.

Under the law of Florida (and elsewhere[23]), to establish "need," a party must present testimony or evidence demonstrating the material requested is critical to the theory of the

---

[23]  Both federal and New York state law extend work product protections similar to those found in Florida law. *See, e.g., Hickman v. Taylor,* 329 U.S. 495, 511 (1947);  N.Y. Civ. Practice Law &  Rules § 3101(c) (McKinney). Indeed, New York state law may go even further than Florida's and extends "absolute" work-product protection. *See Charter One Bank, F.S.B. v. Midtown Rochester, L.L.C.*, 191 Misc. 2d 154, 159, 738 N.Y.S.2d 179, 185 (Sup. Ct. 2002) (section 3101(c) "affords absolute immunity from disclosure of attorney's work product.").

requestor's case, or to some significant aspect of the case. *Zirkelbach Const. Inc. v. Rajan*, 93 So.3d 1124, 1130 (Fla. 2d DCA 2012).  "[W]ell established in Florida is the principle that the unsworn analysis of a party's attorney and/or a bare assertion of need and undue hardship to obtain the substantial equivalent [is] insufficient to satisfy this showing." *Butler v. Harter*, 152 So.3d 705, 712 (Fla. 1st DCA, 2014); *see Procter & Gamble Co. v. Swilley*, 462 So.2d 1188, 1194 (Fla. 1st DCA 1985); *State v. T.A.*, 528 So.2d 974, 975 (Fla. 2d DCA, 1988) ("[R]epresentations by counsel not made under oath and not subject to cross-examination, absent a stipulation, are not evidence).  Further, Florida courts have held that "the showing of need encompasses a showing of diligence by the party seeking discovery of another party's work product." *Butler v. Harter*, 152 So.3d 705, 712 (Fla. 1st DCA, 2014); *see also CSX Transp., Inc. v. Carpenter*, 725 So.2d 434, 435 (Fla. 2d DCA 1999) (quashing order granting motion to compel discovery because the record did not contain affidavits supporting plaintiff's argument that it was unable to obtain the substantially equivalent information by other means without undue hardship); *Falco v. N. Shore Labs. Corp.,* 866 So.2d 1255, 1257 (Fla. 1st DCA 2004) (holding that need and undue hardship "must be demonstrated by affidavit or sworn testimony"); *N. Broward Hosp. Dist. v. Button*, 592 So.2d 367, 368 (Fla. 4th DCA 1992), ("[T]he unsworn assertions of plaintiff's counsel were insufficient to constitute a showing of need and undue hardship."), *called into doubt on other grounds as stated in Columbia Hosp. Corp. of S. Broward v. Fain*, 16 So.3d 236 (Fla. 4th DCA 2009).

Here, Defendant has ample information from which she can present her case.  At the core of this case is whether Ms. Giuffre "lied" when she said that the Defendant recruited her to be sexually abused by Jeffrey Epstein.  Defendant can, of course, testify to her interactions with Ms. Giuffre, as well as call other witnesses regarding the circumstances of those interactions.

30

Defendant can also get information from her close friend, Epstein, about the circumstances of the interactions.  Defendant and Epstein are not only good friends but they have a "common interest agreement" that facilitates transfer of information between the two of them.  Finally, to make her showing that she is unable to obtain "equivalent information" from other sources, Defendant would have to explain in detail what other steps she has taken to secure information from other sources, including not only Epstein but other witnesses present at Epstein's mansion.  Having failed to do any of this, Defendant has not made a sufficient showing to obtain work-product information.  *Pupillo*, 54 So.3d at 614.

**IV.  COMMUNICATIONS WITH ATTORNEY JACK SCAROLA ARE COVERED BY A JOINT DEFENSE AGREEMENT AND ARE THUS PROTECTED BY ATTORNEY-CLIENT AND WORK-PRODUCTION PROTECTION.**

As a tag-along argument at the end of her motion, Defendant argues that Ms. Giuffre has not established the existence of a common interest or joint defense agreement that embraces Jack Scarola, the attorney for Cassell and Edwards in the Dershowitz litigation.  Mot. to Compel at 23-24.  Disclosure of that agreement involved notice to the parties to the agreement.  Now that appropriate notice has been provided, the agreement can be – and has been – disclosed. *See* McCawley Decl., Ex. 16, common interest agreement.  In view of the existence of the valid agreement, it is clear that the referenced communications involving Scarola are protected.  *See, e.g.*, *Giuffre v. Maxwell,* No. 15 CIV. 7433 (RWS), 2016 WL 1756918, at *6 (S.D.N.Y. May 2, 2016) (noting common interest agreement protection) (*citing GUS Consulting GMBH v. Chadbourne & Parke LLP*, 20 Misc. 3d 539, 542, 858 N.Y.S.2d 591, 593 (Sup. Ct. 2008)).

<u>**CONCLUSION**</u>

Defendant's motion to compel should be denied in its entirety.

31

Dated: June 1, 2016

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By:  /s/ Sigrid McCawley
     Sigrid McCawley (Pro Hac Vice)
     Meredith Schultz (Pro Hac Vice)
     Boies Schiller & Flexner LLP
     401 E. Las Olas Blvd., Suite 1200
     Ft. Lauderdale, FL 33301
     (954) 356-0011

     David Boies
     Boies Schiller & Flexner LLP
     333 Main Street
     Armonk, NY 10504

     Bradley J. Edwards (Pro Hac Vice)
     FARMER, JAFFE, WEISSING,
     EDWARDS, FISTOS & LEHRMAN, P.L.
     425 North Andrews Avenue, Suite 2
     Fort Lauderdale, Florida 33301
      (954) 524-2820

     Paul G. Cassell (Pro Hac Vice)
     S.J. Quinney College of Law
     University of Utah
     383 University St.
     Salt Lake City, UT 84112
     (801) 585-5202[24]

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 1st day of June, 2016, I electronically filed the

foregoing document with the Clerk of Court by using the CM/ECF system.  I also certify that the

foregoing document is being served this day on the individuals identified below via transmission

of Notices of Electronic Filing generated by CM/ECF.

Laura A. Menninger, Esq.

---

[24] This daytime business address is provided for identification and correspondence purposes only and is not intended
to imply institutional endorsement by the University of Utah for this private representation.

Jeffrey Pagliuca, Esq.
HADDON, MORGAN & FOREMAN, P.C.
150 East 10th Avenue
Denver, Colorado 80203
Tel: (303) 831-7364
Fax: (303) 832-2628
Email: lmenninger@hmflaw.com
      jpagliuca@hmflaw.com

                                /s/ Sigrid S. McCawley
                                     Sigrid S. McCawley