EXHIBIT 8

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.:  CACE 15-000072

BRADLEY J. EDWARDS and
PAUL G. CASSELL,

      Plaintiffs/Counterclaim Defendants,

vs.

ALAN M. DERSHOWITZ,

      Defendant/Counterclaim Plaintiff.

_____/

### DEFENDANT/COUNTERCLAIM PLAINTIFF ALAN M. DERSHOWITZ'S REPLY TO PLAINTIFFS/COUNTERCLAIM DEFENDANTS' <u>RESPONSE TO MOTION TO COMPEL</u>

Defendant/Counterclaim Plaintiff ALAN M. DERSHOWITZ ("Dershowitz"), through counsel, hereby files his Reply to the Response filed by Plaintiffs/Counterclaim Defendants' BRADLEY J. EDWARDS ("Edwards") and PAUL G. CASSELL ("Cassell") (together, "Plaintiffs") in opposition to Dershowitz's Motion to Compel Production of Documents and Complete Responses to Interrogatories (the "Motion to Compel").[1]

### INTRODUCTION

At the outset of their Response, Plaintiffs spend several pages attempting to document at

---

[1] At issue are Plaintiffs/Counterclaim Defendants' discovery responses and objections in Dershowitz's Motion to Compel, as well as Edwards's Objection to Request No. 2 in Response to Dershowitz's Second Set of Document Requests and Cassell's Objection to Request No. 2 in Response to Dershowitz's Third Set of Document Requests, per Dershowitz's Amended Notice of Hearing dated September 10, 2015.  Plaintiffs served these additional discovery responses after Dershowitz's Motion to Compel had been filed with the Court but maintain, in part, the same objections.  Dershowitz therefore added them on to the presently scheduled hearing for purposes of efficiency, as opposed to preparing an entirely new amended motion.

length their discovery efforts.  It is undisputed that Edwards and Cassell have filed responses to Dershowitz's discovery requests and *commenced* their production of documents.  However, Edwards and Cassell are not the triers of fact who have authority to decide what is relevant, permissible, and proper discovery, through their own self-serving definition of "responsiveness."  As set forth in Dershowitz's Motion to Compel, Plaintiffs' interrogatory responses and document production are incomplete, with no date certain as to when they will be completed.  Moreover, Plaintiffs have asserted objections that have been waived or lack a sufficient basis in law or fact.

## SUMMARY OF REPLY ARGUMENT

1.    ***The Attorney-Client Privilege Has Been Waived.***[2] Plaintiffs argue in their Response that they have properly asserted the attorney-client privilege in response to Dershowitz's discovery requests and that Dershowitz's reliance on the "at issue" waiver doctrine is misplaced.  *See* Response, pp. 3-9.  In support of this argument, Plaintiffs contend that they (as counsel) cannot waive a privilege that belongs to their client, Virginia L. Giuffre, f/k/a Jane Doe No. 3 ("Giuffre").[3]  This argument fails for several reasons.  *First*, Giuffre herself has waived the privilege by making repeated and voluntary statements about her allegations about being a "sex

---

[2] Plaintiffs filed a privilege log in this lawsuit that broadly and only categorically asserts the attorney-client and work product privileges.  A copy of Plaintiffs' First Privilege Log is attached as **Exhibit A**.  Until Plaintiffs produce an itemized privilege log, Dershowitz cannot determine which particular documents are being withheld, let alone other relevant information about the withheld documents (*e.g.*, date, author, subject matter).  Because Dershowitz is not in a position to tailor his arguments to specific assertions of privilege, Dershowitz addresses the asserted privileges both broadly and categorically, as Plaintiffs have done.  Dershowitz also filed with the Court a Motion for Finding of Waiver Based on Plaintiffs' Failure to Provide a Privilege Log or, in the alternative, to Compel Plaintiffs to Provide an Itemized Privilege Log, which remains pending.  If the Court were to grant said Motion first, the Court's ruling may moot the subject Motion to Compel, in full or in part, with regard to privilege objections – at least, for the time being.

[3] At a recent public deposition in this case, Giuffre's given name was used on multiple occasions in the presence of her counsel, who did not raise any objection.  Giuffre has waived any purported "privacy interest" in proceeding anonymously.

slave" who was sexually trafficked by Jeffrey Epstein ("Epstein") to his purported associates. *Second*, Florida law is clear that an attorney's actions can result in a waiver of the client's privilege, even where those actions are not authorized by the client.   As set forth in the Motion to Compel, Plaintiffs have waived the attorney-client privilege for their communications with Giuffre by filing this defamation action and placing at issue the veracity of Giuffre's allegations against Dershowitz and their investigation into same.   Plaintiffs' own discovery responses and testimony have confirmed that they will rely on their communications with Giuffre to attempt to prevail on their claims and defeat Dershowitz's affirmative defenses, meaning that such communications are *inextricably merged* with this lawsuit.   Upholding Plaintiffs' assertion of the attorney-client privilege in these circumstances would result in nothing more than the concealment of the truth.   Plaintiffs' objections on the basis of the attorney-client privilege should be overruled.

　　　　2.　　　***Plaintiffs Have Waived Their Right To Rely On The Work Product Doctrine, And Dershowitz Has In Any Event Established A Need For The Withheld Information.***[4] Plaintiffs argue that Dershowitz has cited no authority and has not met his burden to show that Plaintiffs' assertion of the work product doctrine should be overcome.   Plaintiffs are again mistaken.   Dershowitz has identified specific work product that he needs to defend this case and that cannot be obtained from another source.   Moreover, Plaintiffs (the holders of the protection) have also waived their right to rely on the work product doctrine.   Dershowitz is therefore entitled to the requested discovery.

　　　　3.　　　***Plaintiffs' Remaining Objections Must Be Overruled.***   Plaintiffs represent that they have produced what they deem to be relevant and admissible discovery and have withheld

---

[4] *See supra*, fn. 2.

what they contend is irrelevant, inadmissible, and/or privileged discovery.  Again, Plaintiffs are

in error.  *First*, it is clear from a review of Plaintiffs' production as well as Plaintiffs' actions in

conducting discovery that their production is incomplete and unfinished.  *Second*, Plaintiffs'

general and broad references to thousands of pages of public litigation documents (including

non-substantive documents like notices of hearing, notices of deposition, etc.) in response to

Dershowitz's very specific discovery requests are insufficient.   Plaintiffs cannot compel

Dershowitz to go on a fishing expedition.  *Third*, discovery requests directed at Plaintiffs' and

Giuffre's bias, intent, motivation, and credibility seek information that is directly relevant and

subject to production.  For these reasons and as set forth in Dershowitz's Motion to Compel,

Plaintiffs' arguments fail.

       4.      In sum, the Court should (a) overrule Plaintiffs' objections to the discovery

requests, including in particular, those asserted on the basis of attorney-client privilege and work

product doctrine; (b) compel Plaintiffs to provide better answers to interrogatories and produce

all responsive documents in a timely manner; and (c) order Plaintiffs, upon completion of their

document production, to state that they have, in fact, completed production.

## REPLY ARGUMENT

**I.**      **Communications between Plaintiffs and Giuffre prior to the formation of the attorney-client relationship in March 2014 are not protected by the attorney-client privilege.**

       As an initial matter, any communications between Plaintiffs and Giuffre that pre-date the

formation of the attorney-client relationship in March 2014 are not privileged.  In their privilege

log – which Plaintiffs served on Dershowitz after the filing of the Motion to Compel – Plaintiffs

indicate that they began representing Giuffre in March 2014.  *See* **Ex. A**.  Plaintiffs' assertion of

the attorney-client privilege as to communications with Giuffre prior to March 2014 should

therefore be overruled, and Plaintiffs should be compelled to produce same.[5]

## II.     The attorney-client privilege between Plaintiffs and Giuffre has been waived.

In their Response, Plaintiffs maintain that the attorney-client privilege has not been waived with respect to their communications with Giuffre for two primary reasons: (1) Plaintiffs, as counsel, cannot waive the attorney-client privilege, which is owned by Giuffre; and (2) the elements of the at issue doctrine have not been established.  Both of these arguments fail.

### a.     Giuffre waived the attorney-client privilege through her voluntary public statements.

Assuming – contrary to established Florida law, as discussed below – that the attorney-client privilege can be waived only by the client, Giuffre has clearly waived any privilege for her communications with Plaintiffs relating to her experiences as a "sex slave."  On December 30, 2014, Plaintiffs filed a pleading in a federal proceeding titled "Jane Doe #3 and Jane Doe #4's Motion Pursuant to Rule 21 for Joinder in Action" (the "Joinder Motion"), on behalf of their client, Giuffre.  In the Joinder Motion, Plaintiffs and Giuffre alleged that "[Jeffrey] Epstein [ ] sexually trafficked the then-minor Jane Doe [#3], making her available for sex to politically-connected and financially-powerful people."  In several paragraphs that have since been ordered stricken from the record by United States District Judge Kenneth Marra as "lurid" allegations that were "unnecessary," "immaterial," and "impertinent," the Joinder Motion alleged that non-party Jeffrey Epstein ("Epstein") required Giuffre to have sexual relations with Dershowitz in

---

[5] To the extent that Plaintiffs contend that such communications are protected by a joint defense and/or common interest privilege, that privilege has been waived for the reasons discussed in Section II.  Likewise, to the extent that Plaintiffs contend that such communications are protected by the work product doctrine, that protection also has been waived, as set forth in Section III.

certain specific locations, among other allegations of criminal conduct by Dershowitz.[6]   Giuffre subsequently submitted multiple sworn affidavits repeating the allegations against Dershowitz, which likewise have been stricken from the record by Judge Marra as being "unnecessary," "immaterial," and "impertinent."

Although the Joinder Motion marked the first time that Plaintiffs and Giuffre publicly accused Dershowitz of sexual misconduct, Giuffre has previously made repeated and voluntary public statements regarding her allegations of sexual misconduct involving Epstein.   In particular:

- **Giuffre's Interviews with the Press.**  On March 5, 2011 (almost four years prior to the Joinder Motion), Giuffre gave an interview to the *Daily Mail*, a British tabloid publication, in which she described in detail how she was purportedly recruited by Epstein for sexual exploitation.  *See* Daily Mail Article dated March 5, 2011, attached as **Exhibit B**.  According to the *Daily Mail*, Giuffre was exceptionally descriptive in the interview; the tabloid noted that "for reasons of taste, not all of the details [provided by Jane Doe No. 3] can be included here."  *See* **Ex. B**.

- **Giuffre's Interviews with Counsel.**  On April 7, 2011, Giuffre was interviewed by Edwards and Plaintiffs' counsel of record in this case, Jack Scarola ("Scarola").  *See* Transcript of Interview of Giuffre dated April 7, 2011, attached as **Exhibit C**.  The interview focused on Giuffre's account of being purportedly sexually abused and sexually trafficked by Epstein, including to Epstein's friends.  *Id.*  Neither Edwards nor Scarola were Giuffre's counsel at the time.  *See **id.**,* pp. 1, 7; *see also* **Ex. A**,

---

[6] In light of Judge Marra's order, Dershowitz does not attach hereto any of the documents that contain or reference the stricken allegations.  A motion for leave to file the relevant documents under seal will be filed separately.

Privilege Log (asserting that the attorney-client relationship between Plaintiffs and Giuffre began in March 2014).  In a portion of one of her affidavits in the federal proceeding that has since been stricken from the record by Judge Marra, Giuffre cited this interview with Scarola and Edwards in support of her request to join that lawsuit as a plaintiff.[7]

- **Giuffre's Diary Released to the Press.**  On January 13, 2015, Radar Online published excerpts from Giuffre's personal diary that purportedly recount Giuffre's experiences meeting Epstein in September 1998 and then being one of Epstein's "sex slaves" for several subsequent years.  *See* Daily Mail Article dated January 15, 2015, attached as **Exhibit D**.[8]  The published excerpts – which presumably were released by Giuffre to the online publication, either directly or indirectly – depict explicit instances of purported sexual misconduct.  *See* **Ex. D**.

- **Giuffre's Statements to Numerous Other Third Parties.**  Giuffre also has publicly discussed her allegations of sexual abuse and sexual trafficking by Epstein and his purported associates on numerous occasions with third parties who are not her attorneys, including but not limited to former boyfriends (Anthony Figueroa and Philip Guderyon), the FBI, and additional journalists.  *See, e.g.*, **Ex. C,** pp. 17-18, 21; January 8, 2015 Inside Edition Report by Deborah Norville, interviewing Mr. Figuroa, the unverified transcript of which is attached as **Exhibit E** ("Q: Did she ever mention to you the lawyer Alan Dershowitz?; A: [Giuffre] had never mentioned anything about

---

[7] As discussed below, Edwards also disclosed a redacted version of the transcript of the interview with Giuffre in the civil litigation styled *Epstein v. Edwards*.

[8] Dershowitz states "purportedly" since excerpts of the diary are imaged in media articles, but the diary has not been produced by Plaintiffs in this case.

them having sex or brought up anything like that."); Daily Mail Article dated March 2, 2015, attached as **Exhibit F**.

- **Giuffre's Public Suit Against Ghislaine Maxwell.**  Most recently, on September 21, 2015, Giuffre commenced an action against Ghislaine Maxwell ("Maxwell") in the United States District Court for the Southern District of New York.  *See* Roberts/Maxwell Complaint dated September 21, 2015, attached as **Exhibit G** (the "Maxwell Action").  In her complaint in the Maxwell Action, Giuffre alleges that she was sexually abused and sexually trafficked by Epstein and Maxwell between 1999 and 2002 and that Maxwell defamed her by disputing Giuffre's allegations.  *See id*.

In sum, Giuffre has – as an adult – voluntarily and repeatedly discussed her alleged experiences as one of Epstein's "sex slaves," including her purported experiences being trafficked to Epstein's associates.  In that regard, Giuffre has also publicly disclosed and relied upon her conversation with Edwards and Scarola to support when she first came forward with her allegations of being a "sex slave."  In making these voluntary disclosures, Giuffre has waived her right to assert the attorney-client privilege as to matters concerning the same subject matter, *i.e.*, her experiences as a "sex slave" who was trafficked to Epstein's associates.  *See Hoyas v. State*, 456 So.2d 1225, 1229 (Fla. 3d DCA 1984) (as a matter of fairness, a client's voluntary and self-serving testimony as to a specific communication with an attorney results in a waiver as to all other communications to the attorney on the same subject matter).  Thus, even if Plaintiffs were correct that only the client can waive the attorney-client privilege (which they are not), Giuffre herself has waived the privilege on multiple occasions.

   **b. Plaintiffs waived the attorney-client privilege by bringing this defamation action and placing at issue the veracity of Giuffre's allegations against**

8

Dershowitz and their investigation into those allegations.

### i.   Plaintiffs, as counsel, can waive Giuffre's attorney-client privilege.

Plaintiffs are incorrect in arguing that Giuffre, as the privilege holder, is the only person who can waive the attorney-client privilege.  Florida law recognizes that – although the client owns the privilege – an attorney's purposeful actions can also result in a waiver of the client's privilege, even where (underline here) the attorney's actions were unauthorized.  *See, e.g.*, *Hamilton v. Hamilton Steel Corp.*, 409 So. 2d 1111, 1114 (Fla. 4th DCA 1982) (where the attorney who represented multiple defendants publicly announced the details of a settlement at a court hearing, the attorney-client privilege had been waived as to all matters relating to the negotiation of the settlement, even though some of the attorney's clients later attempted to invoke privilege); *Stevenson v. Stevenson*, 661 So. 2d 367, 369-70 (Fla. 4th DCA 1995 (wife could not claim privilege where her attorney's secretary had waived the privilege by voluntarily disclosing certain information to the husband's attorney).  *Cf. Abamar Hous. & Dev., Inc. v. Lisa Daly Lady Decor, Inc.*, 698 So. 2d 276, 278 (Fla. 3d DCA 1997) (outlining the circumstances in which counsel's inadvertent production of documents can result in a waiver of the attorney-client privilege).  Plaintiffs' own actions in filing the Joinder Motion and bringing this defamation action are therefore sufficient to give rise to a finding of waiver because, as discussed below, their actions have placed their communications with Giuffre directly at issue.

### ii.   Plaintiffs waived the attorney-client privilege by placing the privileged matters "at issue," as *inextricably merged* with and directly relevant to this lawsuit.

Plaintiffs incorrectly claim in their Response that Dershowitz has not met the elements of at issue waiver doctrine.  The tri-part test for determining whether the at issue waiver doctrine applies is:

> (1) assertion of the privilege was a result of some affirmative act, **such as filing suit**, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 447 (S.D. Fla. 1980) (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)) (emphasis added); *see also Savino v. Luciano*, 92 So. 2d 817, 819 (Fla. 1957) ("[W]hen a party has filed a claim, based upon a matter ordinarily privileged, the proof of which will necessarily require that the privileged matter be offered in evidence, [the Florida Supreme Court has held] that he has waived his right to insist, in pretrial discovery proceedings, that the matter is privileged."). As the court in *Hearn* put it:

> In an ordinary case the obstruction is not likely to be great, for attorney-client communications are usually incidental to the lawsuit, notwithstanding their possible relevance, and other means of proof are normally available. In this case, however, the content of defendant's communications with their attorney is **inextricably merged** with the elements of plaintiff's case and defendants' affirmative defense. These communications are not incidental to the case; they inhere in the controversy itself, and to deny access to them would preclude the court from a fair and just determination of the issues. To allow assertion of the privilege in this manner would pervert its essential purpose and transform it into a potential tool for concealment of unconstitutional conduct behind a veil of confidentiality. Under these circumstances, the benefit to be gained from disclosure far outweighs the resulting injury to the attorney-client relationship. The privilege should not apply.

*Hearn*, 68 F.R.D. at 582 (emphasis added); *see also Pitney-Bowes*, 86 F.R.D. at 447-48 (applying the *Hearn* test to hold that, by engaging in the affirmative act of filing suit, the plaintiff injected into "the very soul of this litigation" the attorney-client communications he sought to withhold and thus "waived the right to assert the attorney-client privilege with regard to these documents").

Here, the three elements of the at issue doctrine have all been satisfied. *First*, Plaintiffs' assertion of privilege is the direct result of their affirmative act in filing this action and alleging

that Dershowitz defamed them in his public responses to the false accusations of sexual misconduct leveled by Plaintiffs on Giuffre's behalf in the Joinder Motion.  *See* Compl. ¶ 17 (emphasis added).  But for the filing of this defamation lawsuit, Dershowitz would not have propounded the discovery requests in response to which Plaintiffs asserted the attorney-client privilege.  The first prong in the tri-part test is satisfied.  *See Pitney-Bowes*, 86 F.R.D. at 447.

*Second*, through Plaintiffs' affirmative act of filing this defamation action, Plaintiffs put the purportedly protected information "at issue" by making it directly relevant to the case.  Plaintiffs allege that Dershowitz defamed them by "initiat[ing] a massive public media assault on the reputation and character of [Edwards] and [Cassell] *accusing them of intentionally lying in their filing*, of having leveled knowingly false accusations against [Dershowitz] *without ever conducting any investigation of the credibility of the accusations, and of having acted unethically …*" – even though Dershowitz "knew [the filing in the Federal Action containing the allegations about Dershowitz] to be an entirely proper and well-founded pleading."  *See* Compl. ¶ 17 (emphasis added).  To prevail in this action, Plaintiffs must substantiate their allegations by (i) establishing that they conducted an investigation regarding the credibility of Giuffre's allegations against Dershowitz, and show to what extent; and (ii) establishing that the allegations asserted against Dershowitz by Giuffre and Plaintiffs in the Joinder Motion were, in fact, "well-founded," such that they acted ethically in filing the Joinder Motion.

Plaintiffs have already demonstrated that they will necessarily rely on their communications with Giuffre to attempt to prevail on their defamation claim and defeat Dershowitz's affirmative defenses.  For example, in their responses to Dershowitz's interrogatories, Plaintiffs answered that "with regard to when [Giuffre] has provided information related to [allegations against Dershowitz] to [Plaintiffs], [Giuffre] provided such information in

telephone calls with Brad Edwards beginning in 2011." *See* **Exhibit H.**  Similarly, at Cassell's recent deposition where he was questioned about the factual basis for including Giuffre's allegations against Dershowitz in the Joinder Motion, Cassell testified about a very small number of phone calls he had with Giuffre as well as his review of the transcript of Giuffre's 2011 interview with Scarola and Edwards.  *See* Deposition Transcript Excerpt of Paul Cassell, Volume I, dated October 16, 2015, at 103:21-24, attached as **Exhibit I**.  Thus, Plaintiffs' own testimony shows that the communications they contend are privileged are not merely relevant, but actually go to the heart of, and are *inextricably merged* with, the elements of Plaintiffs' claims and Dershowitz's defenses.  *See Hearn*, 68 F.R.D. at 582.  Dershowitz has met the second prong.

*Third*, application of the privilege would deny Dershowitz access to information that is vital to his defense – the third prong in the tri-part test.  To date, Plaintiffs have hidden behind the attorney-client privilege to selectively produce evidence regarding their conversations, emails, and/or interviews with Giuffre.  As noted above, Plaintiffs have already relied on the 2011 interview of Giuffre by Scarola and Edwards as well as other telephone calls and meetings with Giuffre to support their claims, but contend that the details and content of these other communications with Giuffre (*i.e.*, communications that could support Dershowitz's defenses) are properly withheld as privileged.  Plaintiffs should not be permitted to invoke privilege to preclude discovery and then later rely on the element of surprise when they pick and choose at trial which privileged evidence they wish to rely upon.  Dershowitz is entitled to access information that is vital to his defense now, and the third prong has been met.  *See Pitney-Bowes*, 86 F.R.D. at 447.

In sum, Dershowitz has met each and every element of the tri-part test for establishing an at issue waiver.  The communications and exchange of information between Giuffre and

Plaintiffs are not incidental to this case, but inhere to the subject controversy itself; to deny access to this information would preclude the Court from a fair and just determination of the issues. *See Hearn*, 68 F.R.D. at 582.  It would also preclude Dershowitz from establishing his defenses, including but not limited to proving that his statements about Plaintiffs were all constitutionally protected expressions of opinion or truthful factual assertions.  Upholding Plaintiffs' assertion of privilege would also allow Plaintiffs to continue to gather evidence months after the filing of the Joinder Motion on December 30, 2014, to attempt to support what otherwise was an inadequate investigation and shotgun filing, without Dershowitz being able to test the timing of Plaintiffs' receipt and review of that evidence.  Plaintiffs cannot be allowed to use the attorney-client privilege or, as addressed below, the work product doctrine, as both a sword and a shield.  Under these circumstances, the benefits to be gained from disclosure far outweigh the resulting injury to the attorney-client relationship. *Id*. at 582-583 ("[D]ue to the nature of this suit, which puts the legal advice defendants received directly in issue, the policy behind the privilege is outweighed by the necessity of disclosure and the privilege is inapplicable.").  Plaintiffs' objections should be overruled, and they should be compelled to produce all responsive documents.  *Id*. at 583 (the court ordered production of documents in addition to answers to interrogatories and depositions questions given waiver of attorney-client privilege, and because the documents were "at issue" in the case).

Plaintiffs' and Giuffre's waiver of the right to assert the attorney-client privilege requires Plaintiffs to produce all responsive documents as well.  *See Hearn*, 68 F.R.D. at 583 (the court ordered production of documents in addition to answers to interrogatories and depositions questions given waiver of attorney-client privilege, and because "at-issue" through affirmative defense).  *See Hearn*, 68 F.R.D. at 583.  No work product privilege remains.  Nonetheless,

Plaintiffs have on separate grounds waived the asserted work product privilege as well.

### III. Plaintiffs have waived their right to rely on the work product doctrine, and Dershowitz has in any event established a need for the information he seeks, which cannot be obtained from any other source.

Plaintiffs also maintain that the "at issue" doctrine does not apply to the work product doctrine, which is distinct from the attorney-client privilege in that its function is to protect counsel's mental impressions.  The latter point is not in dispute.  However, given the factual circumstances and the manner in which Plaintiffs have asserted objections based on the work product doctrine, Plaintiffs are otherwise in error.  Plaintiffs have waived their right to rely on the work product doctrine by voluntarily disclosing and relying on information they contend is protected by the work product doctrine.  Moreover, the discovery that Dershowitz seeks is relevant, in need, and cannot be obtained by Dershowitz from another source.  Plaintiffs' work product objection should therefore be overruled and production compelled.

"Work product can be divided into two categories: 'fact' work product (i.e., factual information which pertains to the client's case and is prepared or gathered in connection therewith), and 'opinion' work product (i.e., the attorney's mental impressions, conclusions, opinions, or theories concerning his client's case)."  *State v. Rabin*, 495 So. 2d 257, 262 (Fla. Dist. Ct. App. 1986) (citing *In re Sealed Case*, 676 F.2d 793, 810-11 (D.C. Cir. 1982)). Although opinion work product is generally "nearly absolutely privileged," fact work product is subject to discovery upon a showing of "need."  *Id.*; *see also* Fla. R. Civ. P. 1.280 (a party may obtain discovery of documents prepared in anticipation of litigation or for trial "upon a showing that the party seeking discovery has need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means").

Here, Dershowitz's discovery requests are narrowly tailored to seek only the factual

information and documentation pertaining to Giuffre's allegations against Dershowitz and Giuffre's credibility (*e.g.*, *interview notes of Giuffre, investigation into her credibility, efforts to verify her allegations of sexual misconduct and experiences as a "sex slave", etc.*). To the extent that such information is protected by the work product doctrine, that work product can be divided into two broad categories:  (i) work product involved with Plaintiffs' representation of Giuffre post-March 2014; and (ii) work product involved with Plaintiffs' representation of certain non-parties (or themselves) in other litigation factually related to Giuffre and her allegations of sexual misconduct that occurred prior to the formation of the attorney-client relationship between Plaintiffs and Giuffre in March 2014.

Plaintiffs – the owner of the work product protection, *see, e.g.*, *Rabin*, 495 So.2d at 263 – have waived their right to rely on the work product doctrine as to both of these categories.  As noted above, Plaintiffs interviewed Giuffre on April 7, 2011 about her experiences as a "sex slave."  *See* **Ex. C**.  Although the transcript of the interview is labeled as "Privileged… and/or Work Product," Edwards voluntarily chose to file the transcript in state court in the case of *Epstein v. Edwards*.  *See* Plaintiffs' Notice of Filing dated May 17, 2011, attached hereto as **Exhibit J**.  Plaintiffs and Giuffre also disclosed the substance of this interview in a portion of one of Giuffre's affidavits in the federal proceeding that has since been stricken from the record by Judge Marra.  As a result of these voluntary disclosures, Plaintiffs have waived any right to rely on the work product doctrine to withhold documents relating to the subject matter of Giuffre's interview.  *See, e.g.*, *Hoyas*, 456 So. 2d at 1229.

As to documents created after April 2014, Plaintiffs waived their right to rely on the work product doctrine through the filing of (i) the Joinder Motion and related Giuffre affidavits, and (ii) this defamation action, which places at issue the credibility of Giuffre's allegations and their

investigation into same.  As described above, the only way for Plaintiffs to meet their evidentiary burden here is by using information that might otherwise be protected by the work product doctrine – as again, it is all *inextricably merged*.

Even putting aside issues of waiver, Dershowitz has met his burden of establishing that the work product doctrine should be overcome here, as (a) he has a need for the materials that are encompassed by his discovery requests; and (b) such materials cannot be obtained by other means.  *See* Fla. R. Civ. P. 1.280(b)(4).  As to the first prong, the materials sought are highly relevant and pertinent.  Plaintiffs are seeking to protect their conversations with Giuffre and related credibility assessments or follow-up investigation materials, if any, in conjunction with their pre-March 2014 interviews of her, which were conducted as part of other litigation either involving the Plaintiffs themselves or other third parties.  Plaintiffs are also seeking to protect materials created after March 2014, which likewise are highly pertinent to the sufficiency of Plaintiffs' investigation of the credibility of Giuffre's allegations and the ethical nature of Plaintiffs' actions, among other things.   Indeed, Plaintiffs' assertions of irrelevance are belied by the questioning that occurred at Dershowitz's recent deposition, where Plaintiffs' counsel inquired in detail about the truth of Giuffre's allegations that she had sex with Dershowitz on multiple occasions when she was a minor.

Dershowitz has no other means of obtaining this discovery.  Giuffre and her present counsel, Boies, Schiller & Flexner LLP ("BSF"), are the two most obvious potential sources of information relating to the veracity of Giuffre's allegations against Dershowitz and Plaintiffs' investigation into same.  However, both of these non-parties have objected to the subpoenas issued to them by Dershowitz and have argued that they should be totally immune from

providing any discovery in this case.[9]    As to other non-parties who may have information relevant to Giuffre's allegations and/or Plaintiffs' investigation, Plaintiffs only broadly and categorically assert the work product protection and have not identified the names of these individuals or any specific documents being withheld on this basis.  Dershowitz is therefore unable to determine if another source or means is even available.  Plaintiffs are the only viable source of the discovery that Dershowitz seeks, which is critical for Dershowitz's defenses.

For each of the foregoing reasons, Plaintiffs' argument fails.  Plaintiffs have waived their right to rely on the work product doctrine.  And, in any event, Dershowitz has met his burden of establishing that the work product should be overcome, as the information he seeks is relevant, in need, and cannot be obtained by Dershowitz from another source.

## IV.    Plaintiffs' Remaining Objections Should Be Overruled.

Plaintiffs have produced what they deem to be relevant and admissible discovery and have withheld what they contend is irrelevant, inadmissible, and/or privileged.  Plaintiffs are attorneys – not the triers of fact.  As set forth above and in Dershowitz's Motion to Compel, the requested discovery is unquestionably relevant.  In supplement, Dershowitz further states:

*First*, it is clear from a review of Plaintiffs' production as well as Plaintiffs' actions in conducting discovery that their production is incomplete and unfinished.  As a few examples:

- *BE-000115, Correspondence dated January 23, 2015*, attached as **Exhibit K**: Plaintiffs produced an e-mail that makes reference to a "freelance TV producer" who is "to be included on Jack Scarola's e-mail distribution list for the Dershowitz suit."  Plaintiffs have not produced any e-mails or other correspondence directed to

---

[9] As the Court is aware, Giuffre and BSF filed Motions to Quash or for a Protective Order in response to the subpoenas for testimony and/or for documents that Dershowitz served on those non-parties.  A hearing on those motions is scheduled for November 2, 2015.

17

any "e-mail distribution list" of Scarola's, or e-mails directly from Scarola that can be characterized as such.

- *BE-000111, Correspondence dated January 24, 2015*, attached as **Exhibit L**: Plaintiffs produced an e-mail that makes reference to "a couple zip files concerning [Giuffre's] travel seen alongside Prince Andrew's engagements." Plaintiffs have not produced the zip files or the travel related documents, despite numerous requests by Dershowitz.[10] There is no basis for asserting that these materials are irrelevant, as they go to the credibility of Giuffre's allegations concerning Prince Andrew, which she made simultaneously with those concerning Dershowitz. There likewise is no basis for asserting that the materials are privileged, as it is apparent that a third party reporter was in possession of or created this responsive "zip file[]" which goes. *See* **Ex. L**.

- *BE-00029-31, Correspondence dated January 22, 2015*, attached as **Exhibit M**: Plaintiffs produced an e-mail that makes reference to an attachment, which is a .pdf titled "The Duke of York". *See* **Ex. M**. No attachment has been produced. Relatedly, Plaintiffs have not produced *any* attachments to e-mails following the production of the e-mail itself.[11]

- *"Blake-BBC-Email" dated January 3, 2015*, attached as **Exhibit N**: Plaintiffs produced an e-mail entitled "Blake-BBC-Email" on August 3, 2015 in supplemental response to Dershowitz's production request. *See* **Ex. N**. Notably, this e-mail was

---

[10] For that matter, Plaintiffs have not produced any documents concerning Giuffre's purported travel alongside Dershowitz.

[11] Of course, some identifiable attachments to emails such as the defamation Complaint, Dershowitz reasonably understands are produced elsewhere and of record in this case.

only produced after Dershowitz – who was independently aware of its existence through a third party member of the media – demanded that Plaintiffs produce it.  The subject line indicates that the e-mail provided was a "reply" to an e-mail from the recipient, Paul Blake; however, the original e-mail has not been produced.  *See* **Ex. N**. It is also generally the case that Plaintiffs' production of e-mails from the Searcy Denney firm were printed from the email inbox of Scarola's assistant, Mary Pirrotta, and involved her as a sender or recipient.  Despite request, Plaintiffs will not confirm that all of Scarola's e-mails have been searched and produced.

Based on the above, it is clear that Plaintiffs' production is incomplete.  Plaintiffs also have not provided sufficient detail in their discovery responses to allow Dershowitz to know when their production will be complete.  Counsel for Dershowitz has repeatedly asked Plaintiffs this question and to amend their discovery responses to document the same.  This has not happened. Without identification or advisement, is there ever a known end?  Plaintiffs must be compelled to complete their production, and when done, advise in their responses of the same.

*Second*, Plaintiffs cannot be permitted to rely on general and broad references to thousands of pages of public documents of record in other litigation in response to Dershowitz's tailored discovery requests.  Plaintiffs contend that Dershowitz has equal access to these litigation files (which are extensive and span many years), meaning that they have no obligation to produce the specific documents that are responsive to Dershowitz's requests.  But, one of the goals of Dershowitz's discovery requests is to learn which of these documents Plaintiffs actually relied upon in their investigation into Giuffre's allegations against Dershowitz.  As it stands now, Plaintiffs' responsive documents include notices of hearing, notices of deposition, and discovery motion practice, among other things, in unrelated litigation, which are clearly not responsive.

19

Dershowitz is not in a position to know which documents Plaintiffs used/reviewed, nor does he have an obligation to guess which documents Plaintiffs relied on. Plaintiffs should not be permitted to categorically respond and basically tell Dershowitz to "Go Fish." Plaintiffs must be compelled to identify which specific documents from these other lawsuits are responsive to Dershowitz's discovery requests.

*Third*, discovery directed at Plaintiffs' and Giuffre's bias, intent, motivation, and credibility are also highly relevant and subject to production. Plaintiffs have injected their credibility into this lawsuit through the filing of their defamation action – as they (along with Giuffre) are the three primary witnesses to their case. Dershowitz is entitled to cross-examine and address their credibility and bias. As set forth in his Motion to Compel, Dershowitz therefore is entitled to discovery regarding Plaintiffs' fee agreement(s) with Giuffre, as well as information relating to Giuffre's book, television, and movie deals, including any amount that Giuffre was paid for her media interviews and provision of documents to the media.

Plaintiffs unmistakably have not produced what is relevant and admissible discovery. Plaintiffs are not the triers of fact, and their arguments fail. Dershowitz is entitled to a defense and to discover information that may be used to cross-examine Plaintiffs and other key witnesses and attack their credibility.

## V.      Conclusion.

In conclusion, all three of the individuals involved in this action (Edwards, Cassell, and Giuffre) have waived the attorney-client privilege for their communications. Giuffre has voluntarily disclosed details of her purported experience as a "sex slave" in multiple fora, including by disclosing and relying on communications she had with Edwards. These voluntary disclosures have resulted in a waiver of Giuffre's privilege as to all communications concerning

the same subject matter.  Moreover, Plaintiffs – as Giuffre's counsel – have likewise waived the attorney-client privilege by filing this litigation and placing at issue Giuffre's allegations against Dershowitz and their investigation of same.  Discovery has already shown that Plaintiffs will rely on their communications with Giuffre to establish their claims and defeat Dershowitz's defenses. For the same reasons, Plaintiffs also have waived their right to rely on the work product doctrine. In any event, Dershowitz has met his burden of establishing that the work product doctrine should be overcome in these circumstances.  Allowing Plaintiffs to rely on the work product doctrine and/or the attorney-client privilege in these circumstances would result in nothing more than the concealment of the truth and deny Dershowitz access to information that is vital to his defense.

Dershowitz is entitled to a complete production of responsive information.  Plaintiffs' general and broad references to public documents filed in other litigation in response to specific discovery requests are improper.  Plaintiffs cannot compel Dershowitz to go on a fishing expedition.  Also, discovery directed at Plaintiffs' and Giuffre's bias, intent, motivation, and credibility are directly relevant and subject to production.  Plaintiffs' arguments fail.

WHEREFORE, Defendant/Counterclaim Plaintiff, ALAN M. DERSHOWITZ, respectfully requests this Honorable Court enter an Order (a) overruling Plaintiffs' objections to Dershowitz's discovery requests; (b) compelling Plaintiffs to produce all documents responsive to Dershowitz's First, Second and Third Sets of Document Requests in a timely manner, and state in any amended response when complete; (c) compelling Plaintiffs to provide complete responses to Dershowitz's First Sets of Interrogatories in a timely manner, and again, state in any amended response when complete; and (d) such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Thomas E. Scott*
Thomas E. Scott, Esq.
Florida Bar No. 149100
Thomas.scott@csklegal.com
Steven R. Safra, Esq.
Florida Bar No. 057028
Steven.safra@csklegal.com
COLE, SCOTT & KISSANE, P.A.
Dadeland Centre II, 14th Floor
9150 South Dadeland Boulevard
Miami, Florida 33156
Phone: (305) 350-5300
Fax: (305) 373-2294

Richard A. Simpson (pro hac vice)
rsimpson@wileyrein.com
Mary E. Borja (pro hac vice)
mborja@wileyrein.com
Ashley E. Eiler (pro hac vice)
aeiler@wileyrein.com
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
Phone:  (202) 719-7000
Fax:  (202) 719-7049

*Counsel for Alan M. Dershowitz*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a copy of the foregoing has been furnished by electronic mail (email) at email address: jsx@searcylaw.com, mep@searcylaw.com, scarolateam@searcylaw.com to: **Jack Scarola, Esq,** Searcy Denney Scarola Barnhart & Shipley, P.A., Counsel for Plaintiff, 2139 Palm Beach Lakes Blvd., West Palm Beach, Florida 33409, and I electronically filed the foregoing with the Clerk of Broward County by using the Florida Courts eFiling Portal this 27th day of October, 2015 .

*/s/ Thomas E. Scott*
Thomas E. Scott, Esq.