EXHIBIT 9

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT, IN
AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: CACE 15-000072

BRADLEY J. EDWARDS and PAUL G.
CASSELL,

     Plaintiff,

vs.

ALAN M. DERSHOWITZ,

     Defendant,

_____/

## PLAINTFFS/COUNTERCLAIM DEFENDANT EDWARDS AND CASSELL'S SUR-REPLY TO DEFENDANT/COUNTERCLAIM PLAINTIFF ALAN M. DERSHOWITZ'S REPLY TO RESPONSE TO MOTION TO COMPEL

Plaintiffs/Counterclaim Defendants Bradley J. Edwards and Paul G. Cassell, by and through their undersigned attorneys, hereby file this sur-reply in opposition to Defendant/Counterclaim Plaintiff Alan Dershowitz's reply regarding his motion to compel (hereinafter cited as "Dershowitz Reply"). Because his motion to compel lacks any merit, the court should deny it in its entirety.

### 1. Communications with Ms. Giuffre Before March 2014 are Protected Attorney Work Product.

Dershowitz first argues that Edwards and Cassell's communications with Ms. Giuffre before March 2014 are not covered by attorney-client protection. Edwards and Cassell, however, have recently amended their privilege log to correct an earlier failure to address this point. The privilege log now extends back to March 2011, the time at which Ms. Giuffre understood that she was obtaining legal services from Edwards and Cassell.

Edwards, Bradley vs. Dershowitz
Case No.:  CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 2 of 21

In any event, Dershowitz fails to recognize that from 2011 to 2014, Edwards and Cassell were performing legal services for other clients and thus these communications have work product protection.  As explained below, he cannot overcome the work product protection for these documents.

### 2.  Ms. Giuffre Has Not Waived Her Attorney-Client Privilege.

Dershowitz next argues that Ms. Giuffre, who is not a party to this lawsuit, has somehow waived her attorney-client privilege for communications relating to another lawsuit.   Dershowitz proceeds from this assumption that a person who makes *any* public statement about a subject waives her attorney-client privilege for all communications related to that subject.  This far-fetched position is not the law and, if accepted, would eviscerate attorney-client protections.

#### a. Ms. Giuffre did not waive her attorney-client privilege by disclosing the underlying facts of her sexual abuse.

Dershowitz's  lead  argument  is  that Ms. Giuffre somehow waived  her  attorney-client privilege concerning confidential communications with her attorneys by voluntarily disclosing to third  parties,  including  the  media, some  of  the  circumstances surrounding  her  sexual  abuse by Jeffery Epstein. But Dershowitz alleges only that Giuffre has voluntarily disclosed the *facts concerning* Epstein's  sexual  abuse – not  confidential communications that  she  had  with  her attorneys Edwards and Cassell.  No waiver exists.

A quick examination of the communications on which Dershowitz relies for his "waiver" argument shows how attenuated his position is:

Edwards, Bradley vs. Dershowitz
Case No.: CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 3 of 21

• Ms. Giuffre is quoted by the *Daily Mail* in March 2011 describing some of the

factual circumstances of her sexual exploitation by Epstein.  Dershowitz Reply at

a 6.  But that interview does not even mention any attorney that Ms. Giuffre had,

much less any communications that she had with Edwards and Cassell.  Edwards

and Cassell had  no communication with Ms. Giuffre until *after* this interview.

• Ms. Giuffre gave a recorded interview to attorneys Jack Scarola and Brad

Edwards in 2011.  *Id.* at 6-7.  But this particular communication was never

intended to be a confidential communication for the rendition of legal services, as

reflected  by (among  other  things) the  fact  that  it  was  a  recorded

conversation.  Indeed, the opening page of the transcript states the information

that Ms. Giuffre was providing in the recording was "going to be helpful to us *and*

*to any jury that might ultimately have to hear these facts*."  *Id.* at Ex. C, p. 1

(transcript of Scarola/Edwards interview on April 7, 2011) (emphasis added).

• Excerpts from Ms. Giuffre's diary are published by Radar Online in January

2015. *Id.* at 7.   But the staff of Radar Online had obtained these excerpts back in

2011, before  Edwards  and  Cassell  had  even  talked  to  Ms.  Giuffre.  And the

excerpts relate to Ms. Giuffre's sexual abuse by Epstein, not any attorney-client

communications.

Edwards, Bradley vs. Dershowitz
Case No.: CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 4 of 21

• Third parties recount statements allegedly made by Ms. Giuffre. *Id.* at 7-8. But these hearsay statements recounting alleged statements by Ms. Giuffre (many or all of which may have pre-dated 2014) in no way refer to communications between Ms. Giuffre and her lawyers, Edwards and Cassell.

• New York attorney David Boies files a lawsuit for Ms. Giuffre against Ghislaine Maxwell in September 2015. *Id.* at 8. Dershowitz never explains the curious proposition that the filing of a separate lawsuit by another attorney somehow waives that client's attorney-client privilege with regard to earlier confidential communications with other attorneys. And, of course, the carefully-drafted complaint in the Maxwell lawsuit in no way discloses or places at issue any attorney-client communications Ms. Giuffre may have had in an earlier, separate legal matter.

In short, Ms. Giuffre has not waived her attorney-client privilege concerning confidential communications with attorneys about her sexual abuse at the hands of Epstein, Dershowitz, and others. And accepting Dershowitz's remarkable position would mean that a sex abuse victim could never talk about her experiences without forfeiting her right to obtain confidential legal advice regarding the abuse. This position is not the law in this state (or anywhere else in this country), as even the lone case that Dershowitz cites in support makes clear. That one case holds that a decision by a client to reveal a "specific communication" to an attorney constitutes a

Edwards, Bradley vs. Dershowitz
Case No.: CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 5 of 21

waiver on matters connected with that "specific communication." *See id.* at 8 (*citing Hoyas v. State*, 456 So.2d 1225, 1229 (Fla. 3d DCA 1984) (holding only that "the client's offer of his or the attorney's testimony as to a *specific communication* to the attorney is a waiver as to all other communications to the attorney on the same matter (emphasis in original)).

Dershowitz has not even alleged — must less proven – that Ms. Giuffre herself is trying to use in this case (to which she is not a party) communications about the facts, which communications she had with Edwards and Cassell. In Florida, waiver of the attorney-client privilege occurs if the client voluntarily discloses in court the substance of a communication with her attorney. *See, e.g., Delap v. State*, 440 So.2d 1242, 1247 (Fla. 1983) (criminal defendant sought to use in court favorably testimony from his investigator while blocking inquiry into other testimony). But there is no waiver when the client merely discloses facts which were part of the communication with the client's attorney. *See Koon v. State*, 463 So.2d 201, 203-04 (Fla. 1985); *see also Taylor v. State*, 855 So.2d 1, 26 n.29 (Fla. 2003). The privilege attaches to the communication with counsel, not to the underlying facts. *Brookings v. State*, 495 So.2d 135, 139 (Fla. 1986); *see also Lynch v. State*, 2 So.3d 47, 66 (Fla. 2008). Thus, allegations that Giuffre disclosed to third parties the same facts that she related to Edwards and Cassell, without any evidence that she disclosed the substance of her confidential consultation with Edwards and Cassell, cannot overcome her privilege.

Edwards, Bradley vs. Dershowitz
Case No.:  CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 6 of 21

### b.Edwards and Cassell Have Not Waived Ms. Giuffre's Attorney-Client Privilege by Bringing this Lawsuit.

Dershowitz next maintains the *Edwards and Cassell* somehow have waived *Ms. Giuffre's* attorney-client privilege by filing their own defamation action against him.  Once again, this far-fetched position finds no support in Florida law.

### i.  Edwards and Cassell did not have authority to waive Giuffre's attorney client privilege and thus did not waive her privilege.

Dershowitz initially appears to argue that Edwards and Cassell, as legal counsel for Ms.Giuffre in a separate case, had authority to waive Ms. Giuffre's privilege in this defamation action, even without her consent. *See* Dershowitz Reply at 9.  As support for that extraordinary position, Dershowitz cites three Florida cases where the court found that an attorney's actions resulted in waiver of the clients' privilege: *Hamilton v. Hamilton Steel Corp.*, 409 So.2d 1111 (Fla. 4th DCA 1982), *Stevenson v. Stevenson*, 661 So.2d 367 (Fla. 4th DCA 1995), and *Abamar Hous. & Dev., Inc. v. Lisa Daly Lady Décor, Inc.*, 698 So. 2d 276 (Fla. 3d DCA 1997). But in each of these cases, the attorneys waived the attorney-client privilege while specifically acting *on behalf of* the privilege holders.  In filing their own, personal defamation claims against Dershowitz in a lawsuit where Ms. Giuffre is not even a party, it can hardly be said that Edwards and Cassell were acting on Ms. Giuffre's behalf. Dershowitz never attempts to even explain, much less prove, that the defamation action would benefit Ms. Giuffre.  Florida law is clear that when, as here, the attorneys are not acting on the client's

Edwards, Bradley vs. Dershowitz
Case No.: CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 7 of 21

behalf, they cannot waive their client's privilege. *See* Charles W. Ehrhardt, 1 Fla.

Prac., *Evidence* § 502.6 (2015 ed.); *Schetter v. Schetter*, 239 So.2d 51, 52 (Fla. 4th DCA 1970).

A client may assert the privilege even though the client is not a party to the action in which the

communication might be disclosed. *Gerheiser v. Stephens*, 712 So.2d 1252, 1255 (Fla. 4th DCA

1998); Charles W. Ehrhardt, 1 Fla. Prac., *Evidence* § 502.6 (2015 ed.). Even though Ms. Giuffre

is not a party to this defamation action, the privilege is hers. Because Edwards and Cassell were

not acting as representatives of Ms. Giuffre when they filed their defamation claims against

Dershowitz, they did not have authority to waive her privilege.

> **ii. Edwards and Cassell Did Not Place Ms. Giuffre's Confidential
> Communications at Issue by Filing this Defamation Action Against
> Dershowitz.**

Dershowitz next contends that Edwards and Cassell, even if acting without authority,

waived Ms. Giuffre's attorney-client privilege by filing this defamation action.  Under Florida

state law, Dershowitz has not met his burden of showing that Edwards and Cassell waived

Giuffre's attorney-client privilege.  Dershowitz relies on a three-part test outlined in two,

decades-old federal district court cases. *See* Dershowitz Reply at 9-10 (*citing Hearn v. Rhay*, 68

F.R.D. 574 (E.D. Wash 1975); and *Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444 (S.D. Fla.

1980)). But at most, these cases apply (a largely discredited version of) federal privilege law, not

Florida privilege law.  They are not controlling here and should not be followed.

As recognized by the U.S. District Court for the Southern District of Florida, which

decided *Pitney-Bowes*, the federal "at issue" doctrine is different from Florida's. *See Guarantee

Ins. Co. v. Hefferman Ins. Brokers, Inc.*, 300 F.R.D. 590, 594 (S.D. Fla. 2014).  And when the

Edwards, Bradley vs. Dershowitz
Case No.: CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 8 of 21

underlying claim is a Florida state law claim, then "Florida state law[] governs attorney-client

privilege issues." *Id.* As set out earlier in Plaintiff's Response to Defendant's Motion to Compel

at 6-9, under Florida's "at issue" standard, Dershowitz cannot show that Cassell and Edwards

waived Ms. Guiffre's attorney-client privilege. Dershowitz effectively concedes this point in his

reply brief by not explaining how any Florida authority could support his position.

Even if this court were inclined to consider applying federal rather than Florida law on

the "at issue" doctrine, *Hearn* and *Pitney-Bowes* are neither sound nor persuasive. These two

old cases have been rejected by much more recent and persuasive authority, most notably,

the U.S. District court for the Southern District of Florida, the same court that decided *Pitney-

Bowes* over thirty-five years ago. *See Guarantee Ins*, 300 F.R.D. at 594-96.

In 2014, the Southern District of Florida rejected the *Hearn* "at issue" analysis and instead,

adopted the analysis of the Third Circuit as outlined in *Rhone–Poulenc Rorer, Inc. v. Home

Indemnity Co.*, 32 F.3d 851 (3d Cir. 1994). *Guarantee Ins*, 300 F.R.D. at 595. The Third

Circuit deemed the *Hearn* test to be of "dubious validity" because, although it "dress[es] up [its]

analysis with a checklist of factors, [it] appear[s] to rest on a conclusion that the information

sought is relevant and should in fairness be disclosed." *Id.* at 864. The Third Circuit specifically

rejected *Hearne* because relevance is not the standard for determining whether or not evidence

should be protected from disclosure as privileged. *Rhone*, 32 F.3d at 863.

More recently, the Second Circuit has also rejected *Hearn*, noting that "[c]ourts in our

Circuit and others have criticized *Hearn* and have applied its tests unevenly." *In re City of Erie*,

546 F.3d 222, 227-28 (2d Cir. 2008). The Second Circuit also noted that the *Hearn* test "has

Edwards, Bradley vs. Dershowitz
Case No.:  CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 9 of 21

been subject to academic criticism." *See, e.g.*, Richard L. Marcus, *The Perils of Privilege: Waiver and the Litigator*, 84 Mich. L. Rev. 1605, 1628-29 (1986); Note, Developments in the Law-Privileged Communications, 98 Harv. L. Rev.. 1450, 1641-42 (1985) ("[T]he faults in the *Hearn* approach are (1) that it does not succeed in targeting a type of unfairness that is distinguishable from the unavoidable unfairness generated by every assertion of privilege, and (2) that its application cannot be limited.")." The academic criticism included not only *Hearn*, but also the follow-on decision of *Pitney-Bowes*. See, e.g., Note, Developments in the Law-Privileged Communications, 98 Harv. L. Rev. at 1643 (discussing *Pitney-Bowes'* application of *Hearn* and concluding this case "illustrates how poorly the *Hearn* affirmative act requirement addresses the problem of manipulation of a privilege.").

In light of these strong criticisms of *Hearn* (and *Pitney-Bowes*), the Second Circuit decided that "[w]e agree with its critics that the *Hearn* test cuts too broadly and therefore conclude that the District Court erred in applying it here. . . . Nowhere in the *Hearn* test is found the essential element of reliance on privileged advice in the assertion of the claim or defense in order to effect a waiver." The Second Circuit held that a much more substantial finding was required to find waiver of the important attorney-client privilege: "We hold that a party must rely on privileged advice from his counsel to make his claim or defense." 546 F.3d at 229.

Even if the Court were inclined to apply *Hearn*'s three-part test, Dershowitz is flatly wrong in describing its application to the facts of this case. Dershowitz claims Cassell, at his recent deposition, demonstrated his willingness to rely on confidential attorney-client communications to prove that Edwards and he had conducted an adequate investigation before

Edwards, Bradley vs. Dershowitz
Case No.: CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 10 of 21

filing sexual abuse allegations against Dershowitz. Nothing could be further from the truth. To

the contrary, Cassell provided more than fifty pages of deposition testimony about the adequacy

of the investigation – none of which involved confidential attorney-client communications. The

Court can review the relevant pages of the transcript to see how litigating the adequacy of the

investigation that Edwards and Cassell conducted will not require inquiry into any confidential

attorney-client communications. *See* Ex. A, Deposition Tr. Excerpt of Paul Cassell, Volume I,

dated Oct. 16, 2015, at 63:16 – 117:17. The Court can also confirm that Ms. Giuffre's own

separate attorney – Ms. McCawley from the law firm of Boies, Schiller & Flexner, LLP -- raised

a standing objection to Cassell answering any question that would require divulging any

attorney/client communications: "Virginia Roberts does not waive her attorney/client privilege

with her lawyers, and they are not entitled to testify as to information that she intended to be

confidential that she communicated to her lawyers." Ex. B, Deposition Tr. Excerpt of Paul

Cassell, Volume I, dated Oct. 16, 2015, at 39:24 – 40:2.

Out of the approximately 1300 lines of transcribed Cassell deposition testimony,

Dershowitz points to just three lines to support his position that attorney-client communications

"go to the heart of" Edwards and Cassell's defamation lawsuit. Dershowitz Reply at 12

(citing Cassell Depo. Tr at 103:21-24). But these three lines plainly do *not* concern confidential

attorney-client communications – as Cassell directly stated in his deposition. The relevant lines

are:

> 21      Another bit of information that I had was that in
> 22      *2011, I believe in early April -- this is not*
> 23      *attorney/client privileged information* from
> 24      Virginia Roberts. This is a telephone call that

Edwards, Bradley vs. Dershowitz
Case No.: CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 11 of 21

<pre>
25     she placed from Australia where she had been
1      essentially forced into hiding by Jeffrey
2      Epstein.
</pre>

Deposition Tr. Excerpt of Paul Cassell, Volume I, dated Oct. 16, 2015, at 103:21-104:2) (emphasis added). Cassell is referring only to the 2011 recorded and transcribed telephone call between Scarola and Edwards and Ms. Giuffre – the recorded telephone call that was specifically intended not to be a confidential communication to her lawyers but rather (as the transcript of the call itself makes clear) a communication that could be presented *"to any jury that might ultimately have to hear these facts."* Dershowitz Reply at Ex. C, p. 1 (transcript of Scarola/Edwards interview on April 7, 2011) (emphasis added).

In sum, Edwards and Cassell have not waived – and could not waive – Ms. Giuffre's attorney-client privilege by filing their own personal defamation action. And fully and fairly litigating that action will not require litigating the substance of any confidential communications that Ms. Giuffre has given to Edwards and Cassell.

### 3. Edwards and Cassell Have not Waived Their Work-Product Protections by Filing Their Defamation Action.

Dershowitz also argues that he is broadly entitled to pierce the work-product protection for Edwards and Cassell work to review such things as all materials relating to Edwards and Cassell's investigation into Ms. Giuffre's credibility and her allegations of Dershowitz's sexual abuse. Dershowitz Reply at 14-15. Here again, Dershowitz's argument do not withstand scrutiny.

Edwards, Bradley vs. Dershowitz
Case No.: CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 12 of 21

The work product privilege protects from discovery "documents and tangible things otherwise discoverable" if a party prepared those items "in anticipation of litigation or for trial." Fla. R. Civ. P. 1.280(b)(3). The rationale supporting the work product doctrine is that one party is not entitled to prepare his case through the investigative work product of his adversary where the same or similar information is available through ordinary investigative techniques and discovery procedures. *Universal City Development Partners, Ltd. v. Pupillo*, 54 So.3d 612, 614 (Fla. 5[th]DCA, 2011) citing *Deason*, 632 So.2d at 1384. The work-product of the litigant, his attorney or agent, cannot be examined, absent rare and exceptional circumstances. *Surf Drugs, Inc. v. Vermette*, 236 So.2d 108, 112 (Fla. 1970).

Under Florida Rules of Civil Procedure 1.280(b)(3), a party may obtain discovery of an opposing party's "documents . . . prepared in anticipation of litigation . . . only upon a showing that the party seeking discovery has need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *See generally S. Bell Tel. & Tel. Co. v. Deason*, 632 So.2d 1377, 1385 (Fla. 1985). Thus, Dershowitz bears the burden of demonstrating two things to overcome Edwards and Cassell's work product protection: (1) a need for the document sought; and (2) an inability to obtain equivalent information without undue hardship. Dershowitz has not shown "need" or "undue hardship."

Dershowitz has not offered any evidence to support his assertion of "need" for the work-product of Edwards and Cassell. To show "need," a party must present testimony or evidence demonstrating the material requested is critical to the theory of the requestor's case, or

Edwards, Bradley vs. Dershowitz
Case No.: CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 13 of 21

to some significant aspect of the case. *Zirkelbach Const. Inc. v. Rajan*, 93 So.3d 1124, 1130 (Fla.

2d DCA 2012). "[W]ell established in Florida is the principle that the unsworn analysis of a

party's attorney and/or a bare assertion of need and undue hardship to obtain the substantial

equivalent [is] insufficient to satisfy this showing." *Butler v. Harter*, 152 So.3d 705, 712 (Fla.

1st DCA, 2014); *see Procter & Gamble Co. v. Swilley*, 462 So.2d 1188, 1194 (Fla. 1st DCA

1985); *State v. T.A.*, 528 So.2d 974, 975 (Fla. 2d DCA, 1988)("[R]epresentations by counsel not

made under oath and not subject to cross-examination, absent a stipulation, are not evidence).

Further, some courts have held that "the showing of need encompasses a showing of diligence by

the party seeking discovery of another party's work product." *Butler v. Harter*, 152 So.3d 705,

712 (Fla. 1st DCA, 2014); *see also CSX Transp., Inc. v. Carpenter*, 725 So.2d 434, 435 (Fla. 2d

DCA 1999) (quashing order granting motion to compel discovery because the record did not

contain affidavits or testimony in support of the plaintiff's argument that it was unable to obtain

the substantial equivalent of the materials by other means without undue hardship); *Falco v. N.

Shore Labs. Corp.,* 866 So.2d 1255, 1257 (Fla. 1st DCA 2004) (holding that need and undue

hardship "must be demonstrated by affidavit or sworn testimony"); *N. Broward Hosp. Dist. v.

Button*, 592 So.2d 367, 368 (Fla. 4th DCA 1992), ("[T]he unsworn assertions of plaintiff's

counsel were insufficient to constitute a showing of need and undue hardship."), *called into

doubt on other grounds as stated in Columbia Hosp. Corp. of S. Broward v. Fain*, 16 So.3d 236

(Fla. 4th DCA 2009). Dershowitz has offered no evidence beyond bare assertions of his "need"

for the work-product of Edwards and Cassell. If the moving party fails to show that the

Edwards, Bradley vs. Dershowitz
Case No.: CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 14 of 21

substantial equivalent of the materials sought cannot be obtained by other means, the discovery

will be denied. *Pupillo*, 54 So.3d at 614.

Dershowitz appears to be arguing that he has no other way of defending this lawsuit

without obtaining protected work-product materials from Edwards and Cassell. But the central

issue in this defamation case is not what materials Dershowitz can extract through discovery

from Edwards and Cassell in November 2015, but rather what was *his* state of mind – and what

materials *he* possessed – when in January and February 2015 he asserted on worldwide television

broadcasts such things as that Edwards and Cassell had conspired with Ms. Giuffre to fabricate

evidence against him. Obviously discovery of materials from Edwards and Cassell now does has

no bearing on what Dershowitz himself knew nine months ago that could possibly have

supported his international media assault on the honesty, integrity, and professionalism of

Edwards and Cassell. As much as Dershowitz would like to turn this case into a "he said- she

said", one on one credibility contest between Ms. Giuffre and himself, that is not the way that

Dershowitz chose to frame the defamation issues when he knowingly accused Cassell and

Edwards of suborning perjury. While the Plaintiffs stand firmly behind the accuracy of Ms.

Giuffre's statements, any evidence that may be gathered today tending to suggest inaccuracies in

those statements, falls woefully short of proving that the Plaintiffs fabricated lies.

Dershowitz also has an ability to use other materials apart from work-product materials to

make his case about the alleged inadequacy of Edwards and Cassell's investigation about

Dershowitz's sexual abuse of Ms. Giuffre. But as explained earlier, Dershowitz has ample

information from which he can assess the adequacy of the investigation – including the more

Edwards, Bradley vs. Dershowitz
Case No.: CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 15 of 21

than fifty pages of explanation provided by Cassell during his recent deposition and the
thousands of pages of documents already disclosed in discovery and upon which Edwards and
Cassell relied in assessing the credibility of Ms. Giuffre. *See* Ex. A.

To make his showing that he is unable to obtain "equivalent information" from other
sources, the Court should also require Dershowitz to explain in detail what kind of information
he has attempted to obtain from his close personal friend (and convicted sex offender), Jeffrey
Epstein. As the Court is well aware, at the base of this case lies Jeffrey Epstein's sexual
trafficking of Ms. Giuffre to Epstein's friends, including Dershowitz himself. This case is thus
not simply a "he said, she said" – because Epstein stands as the link between Ms. Giuffre and
Dershowitz.

Dershowitz has already proven that he has an ability to get information from Epstein
when it serves his purposes. For example, CNN asked Dershowitz "I'm wondering, have you
spoken to Jeffrey Epstein about this since these allegations came out in this suit in the United
States?        Have        conservations        happened        there?"        Dershowitz
responded: "Sure. Sure. Certainly. I have been his lawyer and I did speak to him about it. I
wanted to make sure that his memory and mine coordinated about when I was on his island. He
was able to check, I was able to check. . . . .But our memories are clear . . . ." Exhibit C, Tr. of
CNN Interview of Alan Dershowitz (Jan. 5, 2015).

*To be clear, Edwards and Cassell believe that Epstein, if he testifies truthfully, will be
forced to admit that he sexually trafficked Ms. Giuffre to Dershowitz (and many other persons),
thereby establishing clearly what has happened to Ms. Giuffre. As the Court is aware, Edwards*

Edwards, Bradley vs. Dershowitz
Case No.: CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 16 of 21

*and Cassell have been proceeding diligently to secure this testimony from Epstein. Recently the*

*Court rejected Epstein's motion to quash the subpoena for his deposition.  But the critical point*

*for present purposes is that Dershowitz must show that he has made similar efforts to obtain this*

*kind of information for other sources and been unsuccessful before he can obtain work-product*

*protected material from Edwards and Cassell.*

As in earlier parts of his pleading, Dershowitz also relies on the claim that Edwards and

Cassell have waived work-product protection by disclosing a recorded telephone transcript of an

interview with Ms. Giuffre from 2011.  But here again, Dershowitz does not come to grip with

the fact that this transcript was not a confidential communication to Ms. Giuffre's attorneys, but

one that could be released by her lawyers to the jury or other decision-makers.  The disclosure of

this transcript does not broadly waive work-product protections.  Attorneys of all types routinely

work with their clients to develop statements or materials that can be released to the public – e.g.,

press releases, securities filings, legal pleadings, books, and the like.  The ultimate public release

of those materials obviously does not operate to waive work-product protections for all the

materials that are arguably factually-connected to the publicly-disclosed statement.

In Florida (as elsewhere), a party "can make a limited waiver of its . . . work product

privilege." *Paradise Divers, Inc. v. Upmal*, 943 So. 2d 812, 814 (Fla. Dist. Ct. App. 2006).  A

waiver by disclosure only includes "other unrevealed communications only to the extent that

they are relevant to the communication already disclosed." *Id.* (*citing E. Air Lines, Inc. v.*

*Gellert*, 431 So.2d 329, 332 (Fla. 3d DCA 1983)).  Waiver by disclosure does "not mean . . . that

voluntary disclosure of confidential information effectively waives the privilege as to all

Edwards, Bradley vs. Dershowitz
Case No.:  CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 17 of 21

conversations, or the whole breadth of discussion which may have taken place." *Procacci v.*

*Seitlin*, 497 So. 2d 969, 969-70 (Fla. Dist. Ct. App. 1986) (*citing Goldman, Sachs & Co. v.*

*Blondis,* 412 F.Supp. 286, 288 (N.D.Ill.1976)).  Instead, waiver by disclosure is confined to "that

specific subject during that particular conversation." *Procacci*, 497 So. 2d at 970 (*quoting*

*Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 461 (N.D.Cal.1978)).  Here, the limited

waiver made by Edwards and Cassell of the transcript of the phone interview with Guiffre on

April 7, 2011 does not constitute a waiver of work-product privilege as to other protected

investigative materials, mental impressions, or communications concerning other aspects of their

investigations.

In addition to relying on the 2011 telephone transcript, Dershowitz also stakes out the

sweeping position that he is entitled to see all work-product materials connected with Ms.

Giuffre simply by virtue of the fact Edwards and Cassell filed their defamation

action.  Dershowitz Reply at 15-16.  The Court should contrast this far-reaching claim with the

position that Dershowitz himself is taking with regard to his own defamation counterclaim

against Edwards and Cassell.  Rather than produce any materials connected with his discussions

with his friends and colleagues, Dershowitz has asserted work product protection over his

communications as follows:

> Prof. Dershowitz is asserting . . . . the work product doctrine to withhold or redact
> responsive documents and communications that (1) involve this action or the action
> styled Jane Doe No. 1, et al. v. United States, Case No. 9:08-cv-80736-KAM (S.D.
> Fla.) (the Sarah Neely, Nicholas Maisel, Carolyn Cohen, Harvey Silvergate, Mark
> Fabiani, Floyd Abrams, Jamin Dershowitz, Mitch Webber, Nancy Gertner, Anthony
> Julius, Charles Ogletree, Phillip Heymann, David Oscar Markus, Thomas Weigand,
> Jeanne Baker, Rick Pildes, Susan Rosen, Alex MacDonald, Stephen Gillers, Barbara

Edwards, Bradley vs. Dershowitz
Case No.: CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 18 of 21

Gillers, Rana Dershowitz, Ella Dershowitz, Elon Dershowitz, Nathan Dershowitz, Ben Brafman, Arthur Aidala, David Zornow, Charles Johnson, David Efron, Thomas Ashe, Joanne Ashe, and Alexi Ashe Meyers. Because all such communications and documents were created on or after December 30, 2014 -- the date upon which Prof. Dershowitz reasonably anticipated litigation involving Plaintiffs Bradley Edwards and Paul Cassell as a result of Jane Doe No. 3's false allegations -- Prof. Dershowitz will not be logging any of these communications or documents because it would be unduly burdensome and because the log itself would unfairly provide Plaintiffs with information about Defendant's ongoing defense activities."Federal Action"); and (2) involve one or more the following individuals with whom Prof. Dershowitz consulted for purposes of obtaining legal advice or who has assisted Prof. Dershowitz and his counsel in gathering evidence in support of his defenses: Thomas Scott, Steven Safra, Richard Simpson, Mary Borja, Ashley Eiler, Nicole Richardson, Ken Sweder, Kendall Coffey, Gabe Groisman, Ben Brodsky,

Ex. D, Defendant Alan Dershowitz's Privilege Log (Aug. 6, 2015). Dershowitz should not be permitted simultaneously to demand to see all the materials that Edwards and Cassell have collected during their multi-year representations of not only Ms. Giuffre but also several other clients while withholding all of the materials he has gathered.

Dershowitz finally argues that Edwards and Cassell have somehow waived worked product protections by filing the Joinder Motion for Ms. Giuffre in the CVRA case. But is obvious that this limited action does not waive work-product protection. Litigation requires some limited communication to third parties—including the court and opposing counsel—of information learned in the course of the attorney-client relationship. Therefore the law recognizes an absolute privilege to protect attorneys' statements made in communications that are preliminary to a proposed judicial proceeding, or in the institution of, or during the

Edwards, Bradley vs. Dershowitz
Case No.:  CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 19 of 21

course and as a part of, a judicial proceeding. Fla. Stat. Ann. § 90.502(2); *see also* Restatement

(Second) Torts § 586; *McCullough v. Kubiak*, 158 So. 3d 739, 740 (Fla. 4th DCA, 2015).

To hold otherwise would eviscerate the attorney-client privilege. That would mean that every

time an attorney filed a declaration by his client that contained the factual basis for the client's

claim, the opposing party would have the right to privileged communications.  In fact, if

Dershowitz's view were correct, then every time an attorney even filed a complaint setting out

the factual basis of a client's claim, the attorney-client privilege would be waived. Dershowitz

has not cited any authority either in Florida or elsewhere to support his extreme assertion that

Giuffre waived her privilege simply by agreeing to have her attorneys file her declaration with

the court.

**4.  Dershowitz's Miscellaneous Objections are Without Merit.**

Dershowitz also raises four specific requests regarding Edwards and Cassell's discovery

production.  None of these have merit.

**First, Dershowitz argues that he has not received emails regarding attorney Jack**

**Scarola's email distribution list.**  Dershowitz  has not received the list for good reason—no

such "email distribution list" exists.

Second, Dershowitz argues that Edwards and Cassell produced an email but not the

attached zip file associated with the email.  Edwards and Cassell are in the process of correcting

that oversight and producing that zip file to Dershowitz.

Third, Dershowitz argues that he does not have correspondence in which attorney Jack

Scarola sought to obtain information from Prince Andrew about his interactions with Ms.

Edwards, Bradley vs. Dershowitz
Case No.: CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 20 of 21

Giuffre. That information is in one of the attachments to the January 21, 2015, CVRA filing in

this case, which Dershowitz already possesses.

Fourth, Dershowitz refers to an email sent to reporter Paul Blake as a "reply" email and

asks for the earlier email to which there was a reply. But the exhibit he attached (Exhibit N)

does not contain the world "reply." Dershowitz appears to simply be confused on this issue.

**Conclusion**

For the reasons stated, Dershowitz's Motion to Compel should be denied.


I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via E-Serve

to all Counsel on the attached list, this _2ND_ day of _Nov._, 2015.


JACK SCAROLA
Florida Bar No.: 169440
Attorney E-Mail(s): jsx@searcylaw.com and
mcp@searcylaw.com
Primary E-Mail: _scarolateam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Fax:    (561) 383-9451
Attorney for Plaintiffs

JONI J. JONES
JOEL A. FERRE
Assistant Utah Attorneys General
Attorneys for Plaintiffs

Edwards, Bradley vs. Dershowitz
Case No.: CACE 15-000072
Sur Reply to Reply to Response to Motion to Compel
Page 21 of 21

## COUNSEL LIST

Sigrid Stone McCawley, Esquire
smccawley@bsfllp.com;
sperkins@bsfllp.com; ftleserve@bsfllp.com
Boies Schiller & Flexner, LLP
401 E Las Olas Boulevard., Suite 1200
Fort Lauderdale, FL  33301
Phone: (954)-356-0011

Thomas Emerson Scott, Jr., Esquire
Thomas.scott@csklegal.com;
Steven.safra@csklegal.com;
Renee.nail@csklegal.com;
shelly.zambo@csklegal.com
Cole Scott & Kissane P.A.
9150 S Dadeland Boulevard, Suite 1400
Miami, FL  33156
Phone: (305)-350-5329
Fax: (305)-373-2294
Attorneys for Alan M. Dershowitz

Bradley J. Edwards, Esquire
staff.efile@pathtojustice.com;
brad@pathtojustice.com;
maria@pathtojustice.com
Farmer Jaffe Weissing Edwards Fistos &
Lehrman, P.L.
425 N Andrews Avenue, Suite 2
Fort Lauderdale, FL  33301
Phone: (954)-524-2820
Fax: (954)-524-2822

Kenneth A. Sweder, Esquire
ksweder@sweder-ross.com
Sweder & Ross, LLP
131 Oliver Street
Boston, MA  02110
Phone: (617)-646-4466
Fax: (617)-646-4470
Attorneys for Alan M. Dershowitz

Ashley Eiler, Esquire
AEiler@wileyrein.com
Mary E. Borja, Esquire
MBorja@wileyrein.com
Richard A. Simpson, Esquire
RSimpson@wileyrein.com
Wiley Rein, LLP
1776 K Street NW
Washington, DC  20006
Phone: (202)-719-4252
Fax: (202)-719-7049
Attorneys for Alan M. Dershowitz

Joni J. Jones, Esquire
jonijones@utah.gov
Assistant Utah Attorney General
160 E 300 S
Salt Lake City, UT  84114
Phone: (801)-366-0100
Fax: (801)-366-0101
Attorneys for Paul Cassell