UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

VIRGINIA L. GIUFFRE,

    Plaintiff,

v.

GHISLAINE MAXWELL,

    Defendant.

15-cv-07433-RWS

---------------------------------------------------X

**DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL NON-PRIVILEGED DOCUMENTS**

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
East 10th Avenue
Denver, CO 80203
303.831.7364

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

I.   Plaintiff Concedes She Cannot Establish Privilege as to Media Communications ...... 1

II.  Plaintiff's *Post Hoc* Creation of New Documents to Support Her Assertion of
     Privilege Should Not Be Condoned ........................................................................ 3

III. Plaintiff Failed to Establish Privilege Over Documents Attached to Communications
     ............................................................................................................................... 7

IV.  Plaintiff Waived Privilege Relating to Unidentified "Professionals" ......................... 8

V.   Mere Assertion that VRS Communications Related to Legal Advice Is Insufficient .. 9

VI.  Plaintiff Cannot Revive A Waived Attorney-Client Privilege By Claiming A Joint
     Defense Agreement With Her Own Attorneys ........................................................ 10

CERTIFICATE OF SERVICE ........................................................................................ 13

Defendant Ghislaine Maxwell ("Ms. Maxwell") files this Reply In Support of her Motion to Compel Non-Privileged Documents contained on Plaintiff's Privilege Log, stating as follows:

**INTRODUCTION**

Plaintiff's disjointed and often confusing[1] Response to Defendant's Motion to Compel Non-Privileged Documents ("Response") completely misses point.  It is *Plaintiff's* burden to establish that any privilege exists with respect to the documents withheld.  The challenged documents are not privileged either because: a) they contain public relations advice relating to media communications or business advice relating to Victims Refuse Silence; or b) Plaintiff's log lacks sufficient information to establish any claim of privilege.  Plaintiff fails to explain or identify a proper privilege as to the challenged documents, nor has she amended her log to establish any such privilege, thereby waiving any privilege claim.  Perhaps most egregiously, Plaintiff apparently has *created* documents, including fee agreements, in an after-the-fact attempt to justify privileges as to her many various and interwoven attorney relationships, a practice this Court should not sanction.

For the reasons set forth in the Motion and this Reply, the documents identified in the Motion must be produced.

**I.  PLAINTIFF CONCEDES SHE CANNOT ESTABLISH PRIVILEGE AS TO MEDIA COMMUNICATIONS**

Plaintiff concedes, as she must, that she is bound by this Court's prior ruling that attorney communications primarily for the purpose of advising a client about media communications are not protected attorney-client communications.  *Giuffre v. Maxwell*, No. 15-civ-7433-RWS, 2016

---

[1] Plaintiff's lead argument -- that a request for *in camera* inspection "permeat[es]" Ms. Maxwell's motion -- is a red-herring.  The only documents Ms. Maxwell suggested might require *in camera* inspection are communications with Pottinger.  Mr. Pottinger is actually an attorney, so it is possible (although suspect) that he was rendering legal advice.  However, because Plaintiff failed to establish or has waived any claim of privilege on the remaining documents, they simply must be compelled.  There is no request for *in camera* review.

1

WL 1756918, at *8 (S.D.N.Y. May 2, 2016) ("Moreover, even if inherently related to ongoing litigation, '[c]ase law makes clear that a media campaign is not a litigation strategy.'"). Indeed, Plaintiff barely addresses the issue: she provided no additional support in the form of supporting affidavit, log amendment or otherwise to even suggest that the 28 documents regarding "media issues" are *primarily* for the purpose of seeking or providing *legal* (as opposed to business, personal or public relations) advice. Rather, she baldly asserts that they are. Given her failure to substantiate that these documents are protected attorney-client communications (as is her burden),[2] the documents must be produced.

Likewise, Plaintiff's arguments concerning Stanley Pottinger establish that, at a minimum, the 13 logged communications regarding "media issues" are not privileged.[3] Mr. Pottinger provided an affidavit,[4] however, in it, he fails to affirm that that his communications with Plaintiff regarding "media issues" were primarily for the purpose of providing legal advice. According to the Response "Ms. Giuffre received legal advice from Mr. Pottinger regarding how to handle media inquiries in such a way as to not jeopardize her position in ongoing litigation." Response at 5. That may be true. However, although "[s]ome attorneys may feel it is desirable at times to conduct a media campaign, but that does not transform their coordination of a campaign into legal advice." *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.,* 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003). Plaintiff simply has not carried her burden of showing that the logged communications meet the requirements for attorney-client communication protection.

---

[2] *See* Motion at 2.

[3] Correcting the typo in the Motion, there are 26 logged entries referencing Pottinger. Twenty-three of the 26 are individually logged communications, and three are part of categorical logs. Thirteen of the 23 – more than half – involve media communications or media issues.

[4] In light of Pottinger's Affidavit, Ms. Maxwell withdraws the request for *in camera* inspection of all of his communications. Notwithstanding the foregoing, Pottinger's communication regarding media issues or Victim's Refuse Silence remain subject to this motion, and, for the reasons stated in each of those sections, must be produced.

2

## II. PLAINTIFF'S *POST HOC* CREATION OF NEW DOCUMENTS TO SUPPORT HER ASSERTION OF PRIVILEGE SHOULD NOT BE CONDONED

Once again, Plaintiff persists in trying to fix her problems by quickly creating documents to protect her legal positions and slipping them into pleadings just before, or at the same time, as she files her response with the Court. As soon as Ms. Maxwell points out gross deficiencies in Plaintiff's disclosures and, after conferral, is forced to file a Motion to Compel, Plaintiff simply manufactures new evidence or "facts" to try to camouflage her failures.

First, Plaintiff avers: "[f]or the convenience of the Court, Ms. Giuffre's 153-entry privilege log is attached to this pleading." Response at 2-3. In fact, the attached exhibit is a new Supplemental Privilege Log *dated May 27, 2016*, which has been amended and supplemented in some unspecified way after the filing of the Motion to Compel on May 20, 2016.[5] Such sleight-of-hand is par for the course with this Plaintiff. *See, e.g.,* Defendant's Reply in Support of Motion to Compel Responses (Doc. # 92) at 1-3 (establishing *inter alia,* Plaintiff provided her address two hours before filing her response, amended and provided her privilege log contemporaneous with the filing of her response, all after filing of the Motion to Compel).

Second, Plaintiff relies heavily on the fact that "J. Stanley Pottinger, Esq. is an Attorney of Record for Ms. Giuffre in this Case." That statement is true, however, only because on May 25, 2016 -- after Ms. Maxwell filed the Motion pointing out that Mr. Pottinger had never entered an appearance anywhere or attended any proceeding on behalf of Plaintiff – he filed a Motion for Admission Pro Hac Vice[6] in this action, which has since been granted.

---

[5] Of course, Ms. Maxwell already attached a complete copy of the privilege log on which the Motion is based at Menninger Decl. at Ex. A.

[6] One does wonder why a New York licensed attorney who claims to be practicing in the State of New York at an address within the Southern District would need to move for *Pro Hac Vice* admission in the jurisdiction he allegedly practices if he truly does regularly practice law.

3

But by far the most egregious example of Plaintiff and her counsel's fabrication of documents to suit their needs *du jour* is their *post hoc* creation of engagement letters for Plaintiff's various counsel as a last ditch effort to support their otherwise unsubstantiated claims of privilege.  As the Court will recall, on March 31, Ms. Maxwell moved to compel answers to various interrogatories and requests for production, including an interrogatory asking Plaintiff to identify each of her attorneys, dates of their engagements, the subject matter of their representations and a request to produce all of their engagement letters.  (Doc. #75 at 13)  As then argued, this "information is necessary to test the validity of the information that has been withheld as privileged and logged by Plaintiff."  *Id.*  On April 21, 2016, the Court Ordered Plaintiff to provide complete responses to the interrogatory regarding identification of her attorneys and to produce the engagement letters.  Plaintiff has since produced a series of backdated (or completely un-dated) "engagement" letters between herself and her various counsel, all clearly created after the fact in an attempt to support otherwise unsubstantiated privilege claims.

Mr. Pottinger's so-called engagement letter is   Craftily, it does not state the actual date on which it was created or the date on which it was executed by either Mr. Pottinger or Plaintiff.  Menninger Decl, Ex. E.  The entire letter reads:

*Id.*[8]

---

[7] Mr. Pottinger is included in the categorical logging of documents withheld from the CVRA case dating from 2009 to present.  Thus, at a minimum, any communication with him pre-dating July 1, 2014 must be produced.

[8] The letter nowhere mentions Pottinger's alleged engagement to provide legal advice relating to Victim's Refuse Silence ("VRS"), which he now includes in the Affidavit in support of the Response.  Further, in her interrogatory responses, Pottinger is not included as an attorney representing Plaintiff regarding VRS.

4

Obviously Plaintiff's counsel only recently created this letter and did so only after Ms. Maxwell raised concerns regarding the true nature of the relationship between Plaintiff and her various "counsel." Specifically, the "contingency arrangement" between Plaintiff and Boies, Shiller & Flexner LLP ("BSF") ███████████████████████████████████████ ███████████████████████████████████████. Menninger Decl., Ex. K. ("Contingency Engagement").[9] Thus, the newly minted engagement letter with Mr. Pottinger was created at some point between March 10, 2016 and the date of its production on April 28, 2016 and dated in a manner to attempt to justify the privilege claim.

A similar *undated* letter was invented for Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman (FJW), P.L, and co-counsel, Paul G. Cassell, Esq. Menninger Decl., Ex. L. It states:



Again, while the letter is conveniently and purposefully undated, it ████████████ ████████████████████████████████ and therefore must have been created thereafter, presumptively sometime between April 21, 2016 and its April 26, 2016 production. Plaintiff's

---

[9] The March 10, 2016 Contingency Engagement differs notably from Boies Schiller's public statements concerning its representation of Plaintiff, in which they claimed to be acting *pro bono:*
   "According to a statement by Boies, Schiller & Flexner, the firm is representing Roberts on a pro bono basis: The firm's pro bono program focuses on meaningful cases including trying to assist women and children who are the victims of abuse. Boies Schiller & Flexner LLP took on Ms. Roberts' representation because she was a victim of abuse when she was a minor child."
*David Boies Is Now Representing Jane Doe #3* (Apr. 26, 2015), http://thecareerist.typepad.com/thecareerist/ 2016/04/alan-dershowitz-on-the-record.html  (last viewed May 9, 2016).

counsel again goes out of its way to prepare an engagement artfully crafted to substantiate the privilege claims letter *only after* being forced to produce any such documents.

The BSF Contingency Engagement, ████████████████, was created *after* Ms. Maxwell issued her First Set of Discovery Requests on February 12, 2016 which sought, *inter alia,* Plaintiff's attorneys' engagement letters. The agreement was created more than five months after the commencement of this action on September 21, 2015. The Contingency Engagement, and the other engagement letters incorporating it, all stand in gross violation of New York law governing engagement letters which mandate that an attorney "shall provide to the client a written letter of engagement before commencing the representation." 22 NYCRR 1215.1. They also violate New York rules regarding contingency fees, including a percentage fee in excess of the permissible amount in a personal injury action, and the presumed failure to file the agreement with the Officer of Court Administration. 22 NYCRR 691.20; *see also Louima v. City of New York,* No. 98 CV 5083 (SJ), 2004 WL 2359943, at *78 (E.D.N.Y. Oct. 5, 2004), *aff'd* 163 F. App'x 70 (2d Cir. 2006).

Caught in their deception, and having claimed privilege relating to a number of other matters (including VRS and communications with law enforcement entities), BSF also concocted another new engagement letter, ██████████████████ Menninger Decl., Ex. M. It certainly appears Plaintiff's counsel went out of its way to ensure the letter was not dated: the date is deleted from the BSF form letter template both in the top center of the first page and in the header on the second page, automatic date fields that appear in every other letter sent by BSF in this action. In this second engagement letter, BSF attempts to ██████████████████ ████ all matters over which they decided to assert, and attempt to support, privilege claims:

████████████████████████████████████████████
████████████████████████████████████████████



In light of all of Plaintiff's after-the-fact created evidence related to their engagements, it is far from clear "the context in which the documents identified on the privilege log were generated" – *i.e.*, that there was truly an attorney-client relationship, or the contours of that relationship including the nature or duration of the relationship. Response at 3-4. At most, one cannot simply take Plaintiff's counsel at their word; at worst, Plaintiff's counsel has engaged in the manufacture of evidence to support their claims of privilege.

### III. PLAINTIFF FAILED TO ESTABLISH PRIVILEGE OVER DOCUMENTS ATTACHED TO COMMUNICATIONS

Any "misunderstanding" as to language in the privilege log descriptions reflects Plaintiff's failure to provide adequate descriptions permitting an evaluation of her claimed privilege. If Plaintiff withheld a communication (potentially privileged) and not the attachment, why say "with attachment"? Why not say "attachment produced"? As to Entries 81-85, 90, 104 &106, Plaintiff could have – but did not - simply certify that she has produced the attachment.

Entry 107 is an email from Plaintiff to McCawley and Edwards dated 9/7/2015, noted as "Providing information sought by attorneys to provide legal advice, with attachment." Entry 108 is an undated Word document described as "Attached information sought by attorneys to provide legal advice," presumably the attachment to 107. No date or author is identified. The log fails to demonstrate that the actual document is *independently* privileged. It could be a preexisting non-privileged document, a press communication, or a Word document by someone besides Plaintiff.

The same holds true for Entries 143 and 144. Each is undated (making it impossible to determine if any attorney-client relationship existed) and each is described as ███████

7

███████████████████████████████████████████████████████

██████ One is a 26-page .pdf document and the other is a 23 page Word document. These could be anything; a .pdf document strongly suggests conveyance of a pre-existing document. There is simply insufficient information to test privilege, and Plaintiff fails to provide any basis to sustain the claim. To the extent any privilege could be established, it has been waived.

## IV.     PLAINTIFF WAIVED PRIVILEGE RELATING TO UNIDENTIFIED "PROFESSIONALS"

Plaintiff's response relating to categorical logging misses the point. First, Plaintiff argues post-litigation privilege logs are not required because it would require counsel to update the logs hourly. *See* Response at 10 (citing *Am. Broad. Companies, Inc. v. Aereo, Inc.*, No. 12 CIV. 1540 AJN, 2013 WL 139560, at *2 (S.D.N.Y. Jan. 11, 2013) and *United States v. Bouchard Transp.*, No. 08-CV-4490 NGG ALC, 2010 WL 1529248, at *2 (E.D.N.Y. Apr. 14, 2010). Ms. Maxwell agrees, which is precisely why she has not logged post-litigation privileged communications. Ms. Maxwell never stated, suggested or argued communications post-filing in this action must be logged. Plaintiff's contradictory argument, that Ms. Maxwell has somehow waived privilege by not logging post-litigation privileged communication -- is wholly without merit.

Rather, Ms. Maxwell takes issue with Plaintiff's categorically logged communications that include unidentified third party "professionals" in periods that are ***both*** pre[10]- and post-litigation, yet refusal to provide the information necessary to determine if a privilege exists, *as is required by the rules*. These "professionals" could be anyone, from press consultants to ghost writers – none of whom would be covered by privilege. To test this, Plaintiff must provide the

---

[10] Entries 125, 127, 128 & 152 all include time periods pre-dating the litigation through "present." While Plaintiff did not have to log communication post-litigation, she chose to do so. Having asserted that privilege, she must support it.

8

names of the individuals and the nature of their engagement.  Having failed to do so, any privilege (if it could actually be established) is waived.  *See* Motion at 9-10.

Further Plaintiff incorrectly claims the identity (as opposed to the opinions) of any non-testifying expert is not discoverable.  This is not the law.

> [T]he majority of courts hold that the identities of non-testifying experts, as opposed [to] the "facts known or opinions held" by such experts, is governed by Fed.R.Civ.P. 26(b)(1), providing for discovery of the "identity and location of persons who know of any discoverable matter," as opposed to (b)(4)(B), now (b)(4)(D). As a result, identity information is discoverable without a showing of "exceptional circumstances."

*Manzo v. Stanley Black & Decker Inc.*, No. CV 13-3963 JFB SIL, 2015 WL 136011, at *2 (E.D.N.Y. Jan. 9, 2015) (*citing Baki v. B.F. Diamond Constr. Co.,* 71 F.R.D. 179, 181–82 (D.Md. 1976)); *Eisai Co. v. Teva Pharm. USA, Inc.,* 247 F.R.D. 440, 441–42 (D.N.J. 2007).  Ms. Maxwell has not sought discovery of "facts known or opinions held" by any non-testifying expert.[11]  It is Plaintiff's burden to establish that any "professionals" are non-testifying experts or ancillary consultants such as an e-discovery consultant.  First and foremost, this requires identification of who they are and what they do.  Having failed to provide this information, any privilege has been waived.  *See* Motion at 9-10.

## V. MERE ASSERTION THAT VRS COMMUNICATIONS RELATED TO LEGAL ADVICE IS INSUFFICIENT

Plaintiff attempts to shift the burden of proving privilege from herself to Ms. Maxwell claiming VRS communications as "re: legal advice," and demanding Ms. Maxwell prove otherwise.  Not so: "[t]he party asserting the privilege ... bears the burden of establishing its essential elements."  *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).  As pointed out, particularly in light of Edwards's position as a director and founder of VRS, communications

---

[11] Plaintiff's argument that Ms. Maxwell has not made the showing required to obtain the opinions of non-testifying experts is convoluted at best.  How could Ms. Maxwell make such an argument when Plaintiff has failed to identify them?  It is Plaintiff's obligation to identify individuals included in privilege log.  Local R. 26.2(a)(2)(A).

9

regarding that organization are just as likely purely business matters and not for the purpose of seeking legal advice. Plaintiff fails to address this issue. She offers no affidavit supporting the fact that the communications are legal in nature nor does she include in her log further specifics to justify the privilege. Plaintiff does not discuss the entries relating to ▮▮▮▮▮▮▮▮ -- *i.e.*, communications about what communications VRS should make publicly. Most of the entries are emails between McCawley and Plaintiff yet are described as email *chains* involving BSF staff.[12] Which staff? Are these BSF IT staff who are helping design the VRS website? No one knows because the log is deficient. Perhaps most notably, there is no attempt to justify how Entry 147, an email *solely* between Plaintiff and rebecca.boylan@yahoo.com (a non-attorney, non-staff, non-party) could possibly be privileged.

Particularly in light of the *post hoc* creation of the engagement letters to attempt to cover VRS, it is impossible to simply take Plaintiff at her word that these actually represent communications for the purpose of legal advice.[13] Plaintiff again fails to meet her burden.

## VI. PLAINTIFF CANNOT REVIVE A WAIVED ATTORNEY-CLIENT PRIVILEGE BY CLAIMING A JOINT DEFENSE AGREEMENT WITH HER OWN ATTORNEYS

Remarkably, Plaintiff now claims to be in a Joint Defense Agreement[14] *with her own attorneys*, Bradley Edwards and Paul Cassell, as well as *their* attorney, Jack Scarola. Leaving

---

[12] *See* Entries 32-41, 61-67, 132, 134-136, 146-147 ("Email chain with Giuffre, McCawley and BSF staff regarding legal advice related to VRS").

[13] Plaintiff claims she has produced non-privileged communication relating to business issued between Edwards and herself relating to VRS, but does not identify any. Ms. Maxwell has not been able to locate these communications.

[14] Ms. Maxwell did not demand the production of the actual Joint Defense Agreement. Joint Defense Agreements are covered by the work product privilege; Ms. Maxwell has never argued otherwise. *See R.F.M.A.S., Inc. v. So.*, No. 06 CIV. 13114, 2008 WL 465113, (S.D.N.Y. Feb. 15, 2008) (While the relationship between defendants 'remains an area of potential inquiry,' a joint defense agreement is protected by the work-product doctrine, and that protection can only be overcome by a showing of substantial need.); *Amec Civil LLC v. DMJM Harris, Inc.*, No. 06-064 (FLW), 2008 WL 8171059 (D. N.J. 2008) ("Generally, joint defense agreements are protected by work product privilege, and are therefore not discoverable without showing substantial need… Here, the joint defense portions of the agreement were prepared in anticipation of litigation and therefore fall within the definition of attorney work product."); *Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-329, 2007 WL 3128422, at * (N.D. Okla. Oct. 24, 2007).

aside for a moment whether such an agreement is void as against public policy and in violation of New York Rule of Professional Conduct 1.7(a)(2) and Comment 10, any communication subject to the common interest privilege (as this Court has already ruled) "must satisfy the requirements of the attorney client privilege." 2016 WL 1756918, at *6.  As argued in Defendant's Motion to Compel All Attorney-Client Communications and Attorney Work Product (Doc. # 164), Plaintiff waived her attorney-client and work product privileges with attorneys Edwards and Cassell.  She cannot, therefore, revive those privileges by over-laying some novel "common interest" agreement with her own attorneys.

Furthermore, Jack Scarola (attorney for Edwards and Cassell in the Dershowitz case) is, according to Plaintiff, a party to the Joint Defense Agreement and identified in communications regarding the CVRA case (presumably under the joint defense agreement) at unspecified date ranges between 2011 and 2015.  *See* Menninger Decl., Ex. A, Entry 125.  To the extent these communication predate the Common Interest (the May 2015 JDA, or at the earliest the commencement of the Dershowitz Case in January 2015), the communications are not privileged and must be produced.

**WHEREFORE,** for the foregoing reasons and those set forth in Defendant's Motion to Compel Non-Privileged Document, Ms. Maxell requests that the relief requested therein be granted.

---

Ms. Maxwell simply stated "Plaintiff fails to identify who she has a common interest with or why there is a need for a common defense.  There is no indication of when the alleged joint defense arose, the subject matter of the defense, the common interest involved or the persons with whom she claims a common interest." Motion at 13.  In other words, Ms. Maxwell asked only for the non-privileged information about the agreement that substantiates the claim - the who, what and when.  Ms. Maxwell stands by her assertion of privilege relating to any written Joint Defense or Common Interest Agreement, which are, indeed, privileged.

Dated: June 6, 2016

                Respectfully submitted,

                */s/ Laura A. Menninger*
                Laura A. Menninger (LM-1374)
                Jeffrey S. Pagliuca (*pro hac vice*)
                HADDON, MORGAN AND FOREMAN, P.C.
                150 East 10th Avenue
                Denver, CO 80203
                Phone:   303.831.7364
                Fax:       303.832.2628
                lmenninger@hmflaw.com

                *Attorneys for Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on June 6, 2016, I electronically served this *Defendant's Reply In Support of Motion to Compel Non-Privileged Documents* via ECF on the following:

Sigrid S. McCawley
Meridith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

J. Stanley Pottinger
49 Twin Lakes Rd.
South Salem, NY 10590
StanPottinger@aol.com

*/s/ Nicole Simmons*
Nicole Simmons