UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------- x

VIRGINIA GIUFFRE,                                         :
                                                         :
                              Plaintiff,                 :
                                                         :
              - against -                                :    Index No. 15 Civ. 7433-RWS
                                                         :
GHISLAINE MAXWELL,                                       :    **ECF CASE**
                                                         :
                              Defendant.                 :
------------------------------------------------------------- x

## <u>DECLARATION OF SHARON CHURCHER</u>

Pursuant to 28 U.S.C. § 1746, I, SHARON CHURCHER, declare and state as follows:

1.      I am a resident of Westchester County, New York, and have lived continuously in

New York, working as a journalist, since 1983.

2.      On Saturday June 4, 2016, I was served in person at my home with a subpoena from

Defendant Ghislaine Maxwell commanding me to appear for a deposition on June 16, 2016, and

to produce certain documents at the deposition (the "Subpoena").  I make this declaration in

support of my motion to quash the Subpoena.

3.      The documents demanded by the Subpoena include communications going back

more than five years.  During those years, I have worked for two different news organizations

and as a freelance reporter.  The email addresses I used at each publication were different, and I

no longer have access to my full email account from my prior job.

4.      Since November 2014, I have been employed by American Media, Inc. ("AMI")

publisher of the *National Enquirer* (the "Enquirer") and RadarOnline.com ("Radar").  I

previously worked as the New York-based Chief American Correspondent of the British

newspaper *The Mail on Sunday* from 1992 through October 2013.  Prior to that, I was employed

by publications including *Business Week*, the *Wall Street Journal*, *New York Magazine*, *Penthouse Magazine*, and the syndicated television show *Now It Can Be Told*.  I also have worked as a freelance print and radio reporter, reporting stories for the Enquirer, the *Daily Mail*, the *Mail on Sunday*, *Radar Online* ("Radar"), GQ, Allure, Conde Nast Traveler, the New York Times Magazine and numerous other media outlets.  In particular, during the time between my employment at *The Mail on Sunday* and AMI, I worked as a freelance reporter for publications including *The Mail on Sunday*, the U.S. operation of its digital arm, the *Mail Online*, and the Enquirer.

5.      Since 2007, I have reported extensively on the criminal investigation into alleged sexual abuse of underage girls by American billionaire Jeffrey Epstein.  I have reported in particular on Epstein's alleged ties to Prince Andrew (son of Queen Elizabeth II).

6.      Much of my reporting has been based on interviews with the plaintiff in this case, who is referred to in the articles (and in the Subpoena) as "Virginia Roberts."

7.      A sampling of those articles (the "Articles") is attached hereto as exhibits to this Declaration.  Specifically:

   a.   On April 29, 2007, an article I wrote entitled *Prince Andrew's billionaire friend is accused of preying on girl of 14* was published in *The Mail on Sunday*. A true and correct copy of the online version of that article is attached hereto as Exhibit 1.

   b.   On March 2, 2011, an article I wrote entitled *Prince Andrew and the 17-year-old girl his sex offender friend flew to Britain to meet him* was published in *The Mail on Sunday*.  The articles I wrote during this period were the result of extensive investigation and reporting, during which I traveled to Australia to meet and

interview Ms. Roberts, who was living there at the time.  A true and correct copy
of the online version of that article is attached hereto as Exhibit 2.

c.   On March 5, 2011, an article I wrote (with Polly Dunbar) entitled *Teenage girl
recruited by paedophile Jeffrey Epstein reveals how she twice met Bill Clinton*
was published in *The Mail on Sunday*.  A true and correct copy of the online
version of that article is attached hereto as Exhibit 3.

d.   On March 7, 2011, an article I wrote entitled *Epstein's Girl Friday 'fixer': Dead
tycoon's daughter Ghislaine Maxwell and the girls she hired for paedophile's
stable* was published in *The Mail on Sunday*.   A true and correct copy of the
online version of that article is attached hereto as Exhibit 4.

e.   On January 3, 2015, an article I wrote entitled *WORLD EXCLUSIVE: The first
full account of the masseuse at the center of the explosive Prince Andrew 'sex
slave' drama...but is she telling the truth?* was published in *The Mail on Sunday*.
A true and correct copy of the online version of that article is attached hereto as
Exhibit 5.

f.   On January 6, 2015, an article I wrote entitled *World Exclusive: Prince Andrew
Teen 'Sex Slave' Tells All* was published in the Enquirer.  A true and correct copy
of an online post promoting the story with excerpts from the print version is
attached hereto as Exhibit 6.

g.   On January 13, 2015, an article I wrote entitled *'He Was Caressing Every Part Of
My Naked Body And Filling My Head With Endless Compliments About My
Blossoming Figure': Diary Entries of 'Teen Sex Slave' Detail Sordid Hook-Up
With Prince Andrew – In Her Own Handwriting* was published by Radar.  A true

and correct copy of the online version of that article is attached hereto as Exhibit 7.

    h.    On January 21, 2015, an article I wrote entitled *Bill Accused! Jeffrey Epstein 'Sex Slave' Demands 'Criminal Charges' Against Clinton, Dershowitz, & Prince Andrew – Explosive New Affidavit* was published by Radar.  A true and correct copy of the online version of that article is attached hereto as Exhibit 8.

8.    The Articles were all based on my newsgathering efforts.  My communications with unnamed sources referenced in the Articles were confidential and undertaken with the expectation that I would not disclose either the identity of the sources or the substance of any communications that were made in confidence.

9.    The Articles also relied on non-confidential sourcing, including statements from Ms. Roberts and her attorney Brad Edwards.  However, even sources who are quoted by name in the Articles also, at times, provided me with information on a confidential basis.

10.    My communications with Ms. Roberts date back to early 2011, when I interviewed her for the articles published in March 2011.  *See* Exhibits 2-3.  My communications with her (or her attorneys or other agents) continued through the years up to the present day.  At all times that I was communicating with her (or her agents), I was acting in my capacity as a journalist with Ms. Roberts (or her agents) as my source, always with the ultimate goal of gathering information to disseminate to the public as news.

11.    All of the materials listed in the "Documents to Be Produced" section of the Subpoena were (to the extent they ever existed) created or received by me in the course of my newsgathering efforts.  For example, any communications I had with law enforcement sources

regarding Virginia Roberts, whether confidential or not, were for the ultimate purpose of reporting the stories contained in the Articles.

12.    It is important to me that I emphasize the negative impact compelled production of the newsgathering documents and information Ms. Maxwell seeks would have on my career as a journalist.  Given the volume of articles I have written, the diverse scope of newsgathering activities I have engaged it, and the breadth of topics I cover, if I were required to give evidence in any civil or criminal matter related to my work, I would cease acting as a professional journalist and instead become a professional witness.  Moreover, my ability to obtain information from sources depends on my ability to assure them that I will not be compelled to produce information that might pertain in any way to a civil or criminal case.

13.    In sum, to ensure that I maintain my objectivity, do not jeopardize my relationship with confidential sources and avoid becoming an investigative arm for the government or civil litigants, it is essential that I am not compelled to produce documents relating to my newsgathering activities.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 15th day of June, 2016 in North Salem, New York.

Sharon Churcher