UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

----------------------------------------------------------------- x

VIRGINIA GIUFFRE,                                    :
                                                     :
                        Plaintiff,                   :
                                                     :
            - against -                              :       Index No. 15 Civ. 7433-RWS
                                                     :
GHISLAINE MAXWELL,                                   :       **ECF CASE**
                                                     :
                        Defendant.                   :
----------------------------------------------------------------- x


## MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY SHARON CHURCHER'S MOTION TO QUASH SUBPOENA

DAVIS WRIGHT TREMAINE LLP
Laura R. Handman
Eric J. Feder
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Telephone: (212) 489-8230
Facsimile:  (212) 489-8340
laurahandman@dwt.com
ericfeder@dwt.com

*Attorneys for Non-Party Sharon Churcher*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL BACKGROUND ............................................................................. 4

      A.    Ms. Churcher's News Coverage of the Parties in this Case ...................... 4

      B.    Defendant's Attempt to Obtain Unpublished Newsgathering Material
            from Churcher ............................................................................... 5

ARGUMENT ...................................................................................................... 6

  I.    THE SUBPOENA SEEKS DOCUMENTS THAT ARE PRIVILEGED
       FROM DISCLOSURE BY THE NEW YORK SHIELD LAW ........................... 6

      A.    To the Extent the Subpoena Seeks Information Received Pursuant to
            Promises of Confidentiality, Such Information Is Absolutely
            Privileged Under the Shield Law ................................................... 7

      B.    All of the Information Sought by the Subpoena Is, At a Minimum,
            Protected by the Qualified Privilege Under the Shield Law ...................... 9

           1.    The Information Sought by Ms. Maxwell Is Not "Highly
                Material and Relevant" to—Let Alone "Critical or Necessary
                to the Maintenance of"—Any Claim or Defense ......................... 12

           2.    Ms. Maxwell Has Not Exhausted Alternative Sources for the
                Information Sought by the Subpoena ........................................... 15

  II.    THE SUBPOENA SHOULD ALSO BE QUASHED UNDER RULE 45 FOR
       FAILURE TO ALLOW A REASONABLE TIME FOR COMPLIANCE
       AND IMPOSING AN UNDUE BURDEN ......................................................... 17

CONCLUSION .................................................................................................... 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re ABC*,
189 Misc. 2d 805, 735 N.Y.S.2d 919 (Sup. Ct. N.Y. Cty. 2001) ..................................7, 14, 15

*In re Application to Quash Subpoena to NBC*,
79 F.3d 346 (2d Cir. 1996)............................................................................. *passim*

*Baines v. Daily News L.P.*,
401845/2013, 2015 N.Y. Misc. LEXIS 4884
(Sup. Ct. N.Y. Cty. July 13, 2015).........................................................................7

*Baker v. Goldman Sachs & Co.*,
669 F.3d 105 (2d Cir. 2012)..................................................................8, 10, 11, 13

*In re Behar*,
779 F. Supp. 273 (S.D.N.Y. 1991)........................................................................13

*Brown & Williamson Tobacco Corp. v. Wigand*,
No. 101678/96, 1996 WL 350827 (Sup. Ct. N.Y. Cty. Feb. 28, 1996),
*aff'd*, 228 A.D.2d 187 (1st Dep't 1996).................................................................9

*Brown v. Hendler*,
No. 09 Civ. 4486(RLE), 2011 WL 321139 (S.D.N.Y. Jan. 31, 2011).............................18, 19

*In re CBS (Vacco)*,
232 A.D.2d 291, 684 N.Y.S.2d 443 (1st Dep't 1996) ...........................................15

*Flynn v. NYP Holdings, Inc.*,
235 A.D.2d 907, 652 N.Y.S.2d 833 (3d Dep't 1997).........................................8, 15

*Giuffre v. Maxwell*,
No. 15 Civ. 7433(RWS), 2016 WL 1756918 (S.D.N.Y. May 2, 2016) ...................6

*Giuffre v. Maxwell*,
No. 15 Civ. 7433(RWS), 2016 WL 831949 (S.D.N.Y. Feb. 29, 2016).............................6, 13

*Gonzales v. NBC*,
194 F.3d 29 (2d Cir. 1998)....................................................................2, 7, 10, 17

*In re Grand Jury Subpoenas Served on NBC*,
178 Misc. 2d 1052, 683 N.Y.S.2d 708 (Sup. Ct. N.Y. Cty. 1998) ..........................10

*Henry v. Morgan's Hotel Grp., Inc.*,
No. 15-CV-1789 (ER)(JLC), 2016 WL 303114 (S.D.N.Y. Jan. 25, 2016) ..........................19

*Holmes v. Winter*,
   3 N.E.3d 694, 22 N.Y.3d 300 (2013)..........................................................................3, 7, 8, 17

*In re McCray, Richardson, Santana, Wise, & Salaam Litig.*,
   928 F. Supp. 2d 748 (S.D.N.Y.), *aff'd*, 991 F. Supp. 2d 464 (S.D.N.Y. 2013)......................12

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.*,
   No. 03 Civ. 1382 RWS, 2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003)................................19

*O'Neill v. Oakgrove Constr.*,
   523 N.E.2d 277, 71 N.Y.2d 521 (1988)......................................................................... *passim*

*In re Pan Am Corp.*,
   161 B.R. 577 (S.D.N.Y. 1993)..................................................................................................16

*People v. Griffin*,
   No. 1438/92, 1992 WL 474518 (Sup. Ct. N.Y. Cty. Nov. 12, 1992) .....................................12

*People v. Iannaccone*,
   112 Misc. 2d 1057, 447 N.Y.S.2d 996 (Sup. Ct. N.Y. Cty. 1982) .........................................15

*Pugh v. Avis Rent A Car Sys., Inc.*,
   No. M8-85, 1997 WL 669876 (S.D.N.Y. Oct. 28, 1997) ...................................................9, 16

*Reuters Ltd. v. Dow Jones Telerate, Inc.*,
   231 A.D.2d 337, 662 N.Y.S.2d 450 (1st Dep't 1997) ...........................................................12

*Schoolcraft v. City of N.Y.*,
   No. 10 Civ. 6005(RWS), 2014 WL 1621480 (S.D.N.Y. Apr. 22, 2014)..............................2, 7

*United States v. Burke*,
   700 F.2d 70 (2d Cir. 1983).......................................................................................................14

*United States v. Cuthbertson*,
   630 F.2d 139 (3d Cir. 1980)......................................................................................................10

*Velez v. Hunts Point Multi-Serv. Ctr., Inc.*,
   29 A.D.3d 104, 811 N.Y.S.2d 5 (1st Dep't 2006) ..................................................................12

**Constitutional Provisions**

N.Y. Const. art. I, § 8 ....................................................................................................1, 2, 3, 6

**Statutes**

N.Y. Civ. Rights Law § 79-h ............................................................................................ *passim*

**Federal Rules**

Fed. R. Civ. P. 26(b)(1)................................................................................................19

Fed. R. Civ. P. 45 ............................................................................................. *passim*

Fed. R. Evid. 501 ...........................................................................................................6

**Other Authorities**

1990 McKinney's Session Laws, Memorandum of State Executive Department........................10

Non-party Sharon Churcher ("Churcher") through her counsel respectfully submits this Memorandum of Law in Support of her motion under Fed. R. Civ. P. 45 to quash the subpoena to testify at a deposition in a civil action and produce documents (the "Subpoena") in this case.

## PRELIMINARY STATEMENT

Sharon Churcher's involvement in this defamation case stems entirely from the fact that, in her capacity as a professional journalist, she wrote several news articles about the Plaintiff, Virginia Giuffre (referred to in the Subpoena as "Virginia Roberts," and hereinafter as "Ms. Roberts"), the Defendant Ghislaine Maxwell (who issued the Subpoena), and Jeffrey Epstein. These articles (the "Articles") were published over the course of nearly ten years by numerous publications, including *The Mail on Sunday*, the *National Enquirer*, and *Radar Online*, and were written by Ms. Churcher either as an employee of the publication or as freelance reporter. *See* Declaration of Sharon Churcher ("Churcher Decl.") ¶¶ 4-7 and Exs. 1-8.

The Subpoena, served just twelve days before the date of compliance, commands Churcher to sit for a deposition and produce a broad array of documents, including "[a]ll documents containing communications" with the Plaintiff and "[a]ll communications with any agent" for the Plaintiff. *See* Declaration of Laura R. Handman ("Handman Decl."), Ex. A (Subpoena), ¶¶ 1-2. Churcher's communications with Ms. Roberts alone date back more than five years to the reporting of articles that appeared in *The Mail on Sunday* in March 2011. The Subpoena does not limit the demand for these documents to any particular time period or topic, instead requiring Churcher to sift through a decade's worth of communications, from multiple email accounts with multiple employers.

The Subpoena must be quashed for two separate and independent reasons. **First**, all of the information sought in the Subpoena is protected from compelled disclosure by the New York

Reporters Shield Law, N.Y. Civ. Rights Law § 79-h ("Section 79-h").[1]  That statute, which stems

from the First Amendment and the press clause of the New York State constitution (art. I, § 8),

provides reporters with an *absolute* privilege against disclosure of any information received in

confidence, including the identity of confidential sources, and a qualified privilege for

unpublished newsgathering material, even when it is not otherwise confidential.  To overcome

the qualified privilege, the party seeking disclosure bears a heavy burden to clearly show that the

information sought is so "critical or necessary" to the case that the party's claim or defense

"virtually rises or falls" based on the information, and that the party has "exhaust[ed] all other

available sources" for the information.  *In re Application to Quash Subpoena to NBC* ["*Graco*"],

79 F.3d 346, 351, 353 (2d Cir. 1996) (internal citations omitted).  *See* Section 79-h(c).

All of the information sought by the Subpoena falls within either the absolute or qualified

privilege under the Shield Law.  A significant portion of the materials encompassed by the

Subpoena's document requests contain confidential communications and information, and are

therefore absolutely privileged from disclosure.  But confidential or not, all of the information

described by the document requests comprises unpublished information about—or obtained

during the course of—the newsgathering process.  Ms. Maxwell has not made any showing that

her defense "rises or falls" based on the information sought in the Subpoena, which, on its face,

is, at best, tangentially related to the dispute in this case.  And there are ample alternative sources

for the information.  (As a starting point, in order to obtain information about payments to, or

contracts or communications with, Ms. Roberts, the obvious alternative source is Ms. Roberts

---

[1] As discussed *infra*, note 3, the New York Shield Law applies to this case.  The Second Circuit also recognizes a qualified reporter's privilege under the First Amendment for both confidential and nonconfidential newsgathering information.  *See Gonzales v. NBC*, 194 F.3d 29 (2d Cir. 1998); *Schoolcraft v. City of N.Y.*, No. 10 Civ. 6005(RWS), 2014 WL 1621480 (S.D.N.Y. Apr. 22, 2014).  Although the "the federal and state policies" on the reporter's privilege are "congruent," *id. *4, as discussed further herein, the standards for overcoming the privilege are higher when the state Shield Law applies.

herself.)  Cumulative evidence that, at most, bears on the general credibility of the Plaintiff does not satisfy the Shield Law.  *See id.*

Since the documents requested are all protected under the Shield Law, Churcher should not be required to sit for a deposition that will presumably cover the same privileged topics.  As the New York Court of Appeals explained in its most recent decision on the Shield Law, where "the entire focus" of a reporter's testimony would be on privileged topics, "no legitimate purpose would be served by requiring the witness to go through the formality of appearing [to testify] only to refuse to answer questions concerning the information sought."  *Holmes v. Winter*, 3 N.E.3d 694, 706, 22 N.Y.3d 300, 319 (2013) (citing *Beach v. Shanley*, 465 N.E.2d 304, 307, 62 N.Y.2d 241, 248 (1984)).  Indeed, "[c]ompelling a reporter to appear [at a deposition] to respond to a subpoena that seeks information that is clearly cloaked with an absolute privilege can itself be viewed as a significant incursion into the press autonomy recognized in article I, § 8 [of the state constitution] and the Shield Law."  *Id.*

**Second**, even if the information sought in the Subpoena were not covered by the Shield Law, the Subpoena must be quashed under Rule 45 of the Federal Rules of Civil Procedure ("Rule 45") because it is unduly burdensome and does not provide reasonable time for compliance.  Twelve days is simply not sufficient to collect, review and produce over five years' worth of communications that span multiple places of employment (and therefore multiple email servers), and which indisputably include extensive communication with confidential sources that would need to be redacted.  Moreover, given the limited relevance and cumulative nature of the document requests, and the fact that Ms. Churcher is a non-party, the broad, un-cabined scope of the document requests renders the Subpoena unduly burdensome.

## FACTUAL BACKGROUND

**A.    Ms. Churcher's News Coverage of the Parties in this Case**

Ms. Churcher is a professional print journalist who has worked continuously in New York since 1983.  Churcher Decl. ¶ 1.  She is currently employed by American Media, Inc., which publishes the *National Enquirer* (the "Enquirer") and RadarOnline.com ("Radar"), where she has worked since November 2014.  *Id.* ¶ 4.  From 1992 through October 2013, she was employed as the New York-based Chief American Correspondent of *The Mail on Sunday*, a publication owned by Associated Newspapers of London, England.  During the interim she worked as a freelance reporter for publications including *The Mail on Sunday*, the U.S. operation of its digital arm, the *Mail Online*, and the Enquirer.  *Id.*

In her capacity as a journalist, Ms. Churcher has reported on the events that underlie this case going back to at least April 2007, when she wrote an article published in *The Mail on Sunday* about the alleged ties between Prince Andrew, the British royal, and convicted sex offender Jeffrey Epstein.  *See Id.* ¶ 5 & Ex. 1.  (The defendant, Ms. Maxwell, was mentioned in that article.)

Ms. Churcher first reported about the plaintiff, Ms. Roberts, in March 2011, when she wrote a series of articles published in *The Mail on Sunday* (and affiliated newspapers) containing extensive interviews with (and photographs of) Ms. Roberts, in which she "agreed to waive her anonymity and tell for the first time her deeply disturbing story."  Churcher Decl. Ex. 2 at 3; *see also* Churcher Decl. Ex 3.  Ms. Churcher traveled to Australia to meet and interview Ms. Roberts in person for those stories.  Churcher Decl. ¶ 7.b.

In January 2015, Ms. Churcher wrote a series of stories that appeared in several publications, including *The Mail on Sunday*, the Enquirer and Radar, containing extensive new details from Ms. Roberts about her involvement with Jeffrey Epstein, Ms. Maxwell, and Prince

Andrew, as well as excerpts from a handwritten "diary" about those experiences, which appeared

on Radar's website.  *See* Churcher Decl. Exs. 5-8.

From 2011 through the present day, Ms. Churcher has communicated extensively with

Ms. Roberts (or, in certain instances, agents for Ms. Churcher, including her attorneys),

exclusively in her capacity as a journalist communicating with sources.  Churcher Decl. ¶ 10.

**B.     Defendant's Attempt to Obtain Unpublished Newsgathering Material from Churcher**

On Saturday June 4, 2016, Ms. Churcher was served with the Subpoena by hand at her

home.  Churcher Decl. ¶ 2.  The Subpoena commands Ms. Churcher to appear at a deposition on

June 16, 2016.  The Subpoena also commands Ms. Churcher to bring with her to the deposition

several broad categories of documents:

> 1. All Documents containing communications with Virginia Roberts.
>
> 2. All communications with any agent for Virginia Roberts, including without limitation attorneys Bradley Edwards, Paul Cassell, David Boise [*sic*], Sigrid McCawley, Meredith Schultz, Stanely [*sic*] Pottinger, Ellen Brockman, Stephen Zach, Brittany Henderson, Bob Josefsberg, Katherine Ezell, Amy Ederi.
>
> 3. All Documents containing communications with Jason Richards.
>
> 4. All Documents containing communications with law enforcement agency concerning Virginia Roberts.
>
> 5. All Documents reflecting any payment of any money to Virginia Roberts.
>
> 6. All Documents reflecting any contract concerning Virginia Roberts.

Handman Decl. Ex. A at 6.

On January 9, 2016, counsel for Ms. Churcher spoke by phone to counsel for

Ms. Maxwell and requested an extension of the time to comply with the Subpoena.

Ms. Maxwell's counsel stated that she would agree to adjourn the date only if Ms. Churcher was

planning to comply with the Subpoena and not move to quash.  Handman Decl. ¶ 3.  Since

Churcher intended to file this motion, the return date was not adjourned.  *Id.* ¶ 4.  When asked

for more specific details about what information Ms. Maxwell hoped to elicit from

Ms.  Churcher, Maxwell's counsel stated that she could not share any further details in light of

the protective order entered in this case.  *Id.* ¶ 3.

## **ARGUMENT**

## I.    **THE SUBPOENA SEEKS DOCUMENTS THAT ARE PRIVILEGED FROM DISCLOSURE BY THE NEW YORK SHIELD LAW**

Under Rule 45(d)(3)(a)(iii), a court <u>must</u> quash a subpoena where it "requires disclosure

of privileged or other protected matter."

The New York Shield Law, or reporter's privilege, protects reporters from compelled

disclosure of both confidential information and sources, as well as non-confidential, unpublished

newsgathering materials and information, which is precisely what Ms. Maxwell seeks in her

Subpoena.[2]  While now codified in Section 79-h of the Civil Rights Law, the reporter's privilege

has its origins in the New York Constitution's free press provision (art. I, § 8), which provides

"the broadest possible protection to 'the sensitive role of gathering and disseminating news of

public events.'"  *O'Neill v. Oakgrove Constr.*, 523 N.E.2d 277, 281, 71 N.Y.2d 521, 529 (1988)

(quoting *Beach*, 62 N.Y.2d at 256 (Wachtler, J., concurring)).  Indeed, "New York public policy

as embodied in the Constitution and our current statutory scheme provides a mantle of protection

---

[2] This Court has already determined that New York substantive law applies to the sole claim in the case (defamation).  *See Giuffre v. Maxwell*, No. 15 Civ. 7433(RWS), 2016 WL 831949, at *2 n.2 (S.D.N.Y. Feb. 29, 2016).  Under Federal Rule of Evidence 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  This Court has further held that, because this case concerns a state law claim that is in federal court because of diversity of citizenship, evidentiary and discovery privileges are governed by New York law.  *See Giuffre v. Maxwell*, No. 15 Civ. 7433(RWS), 2016 WL 1756918, at *2 (S.D.N.Y. May 2, 2016) (citing *inter alia* Fed. R. Evid. 501).  Moreover, Churcher is a New York-based journalist.  Churcher Decl. ¶¶ 1, 4.  Accordingly, the New York Reporters Shield Law applies to the Subpoena.  *See also Graco*, 79 F.3d at 351(applying New York Shield Law where subpoena in Massachusetts wrongful death suit issued out of Southern District of New York to a New York-based broadcaster).

for those who gather and report the news – and their confidential sources – that has been recognized as **the strongest in the nation**."  *Holmes*, 22 N.Y.3d at 310 (emphasis added).

Accordingly, the New York Shield Law provides *absolute* protection of information "obtained or received in confidence" by a reporter, as well as for the identity of a confidential source.  Section 79-h(b).  The statute also provides qualified protection for non-confidential newsgathering information, which can be overcome only with a "clear and specific showing" that the information is "highly material and relevant," "critical or necessary to the maintenance of a party's claim" and "not obtainable from any alternative source."  Section 79-h(c).  The qualified privilege is a stringent one that imposes a "very heavy burden" on any party seeking to overcome it.  *In re ABC*, 189 Misc. 2d 805, 808, 735 N.Y.S.2d 919, 922 (Sup. Ct. N.Y. Cty. 2001).[3]

Here, a portion of the information that Ms. Maxwell seeks in the Subpoena is subject to absolute protection as confidential newsgathering information, and the rest receives qualified protection as nonconfidential newsgathering information.  Because Ms. Maxwell cannot meet the "very heavy burden" to overcome the privilege, the Subpoena must be quashed.

A.     **To the Extent the Subpoena Seeks Information Received Pursuant to Promises of Confidentiality, Such Information Is Absolutely Privileged Under the Shield Law**

The Shield Law provides an *absolute* privilege against the compelled disclosure of "news obtained or received in confidence or the identity of the source of such news."  Section 79-h(b).  The statute thus bars compelled disclosure of "news or its source obtained in confidence."  *Baines v. Daily News L.P.*, 401845/2013, 2015 N.Y. Misc. LEXIS 4884, at *4 (Sup. Ct. N.Y.

---

[3] The First Amendment/federal common law reporter's privilege recognized by the Second Circuit is slightly less stringent.  For both confidential and non-confidential information, the privilege is qualified.  For confidential information, the privilege can be overcome by the same showing as for *non*-confidential information under the Shield Law.  *See Gonzales*, 194 F.3d at 33.  For non-confidential information, the party seeking disclosure must show that "(1) 'that the materials at issue are of likely relevance to a significant issue in the case,' and (2) the materials at issue 'are not reasonably obtainable from other available sources.'"  *Schoolcraft*, 2014 WL 1621480, at *2 (quoting *Gonzales*, 194 F.3d at 36).

Cty. July 13, 2015); *Holmes*, 22 N.Y.3d at 308 (explaining that the statutory privilege "prohibits a New York court from forcing a reporter to reveal a confidential source"); *Flynn v. NYP Holdings, Inc.*, 235 A.D.2d 907, 652 N.Y.S.2d 833 (3d Dep't 1997) (explaining that, where documents are deemed confidential, a reporter is "afforded unqualified protection from having to divulge such sources or materials").

At a minimum, the Shield Law would absolutely preclude any inquiry into the identity of confidential sources on which Ms. Churcher relied in reporting the Articles (or any information that may reveal those sources' identities).  On their face, many of the Articles rely on confidential sources, including law enforcement sources.  *See, e.g.*, Churcher Decl. Ex. 2 at 8 ("a source"); *id.* Ex. 3 at 3 ("a law enforcement source"); *id.* Ex. 4 at 4 ("[massage] therapist, who does not wish to be named"); *id.* Ex. 8 at 2 ("a legal expert"; "a source familiar with the case"). And Churcher states in her declaration that, in reporting the Articles, she relied extensively on information received in confidence, as well as sources whose identities are confidential. Churcher Decl. ¶¶ 8-9.  To the extent any communications with those sources fall within the categories of the document requests (for example, confidential law enforcement sources (who are quoted in the Articles), or if a confidential source could arguably be considered an "agent for Virginia Roberts"), those communications are absolutely privileged from disclosure.  Moreover, although Ms. Roberts was plainly a non-confidential on-the-record source for several of the Articles, to the extent Ms. Roberts provided Churcher with any information on a confidential basis, that information would also be absolutely privileged.  *See Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 107 (2d Cir. 2012) ("New York's Shield Law provides journalists an absolute privilege from testifying with regard to news obtained under a promise of confidentiality . . . .").

Without knowing more precisely what specific information Maxwell is attempting to elicit with this Subpoena, it is impossible to delineate which information is subject to the absolute privilege and which is protected by the qualified privilege, but at least some significant portion of the information falling within the scope of the Subpoena's document requests is confidential information that is absolutely protected from compelled disclosure.

**B.      All of the Information Sought by the Subpoena Is, At a Minimum, Protected by the Qualified Privilege Under the Shield Law**

Section 79-h(c) of the Shield Law codifies the recognition by courts that the reporter's privilege serves "important interests beyond confidentiality," including "the privacy of editorial processes, the independence of the press and the need to allow the press to publish freely on topics of public interest without harassment and scrutiny by litigants seeking to conduct 'fishing expeditions' into [unpublished] materials in the hope that some relevant information may turn up." *Pugh v. Avis Rent A Car Sys., Inc.*, No. M8-85, 1997 WL 669876, at *5-6 (S.D.N.Y. Oct. 28, 1997).  In *O'Neill*, the New York Court of Appeals stressed the need for courts to exercise "particular vigilance . . . in safeguarding the free press against undue interference," and "prevent[ing] undue diversion of journalistic effort and disruption of press functions."  71 N.Y.2d at 528-29.  *See also Brown & Williamson Tobacco Corp. v. Wigand*, No. 101678/96, 1996 WL 350827, at *3 (Sup. Ct. N.Y. Cty. Feb. 28, 1996) ("Attempts to obtain evidence from [reporters] as nonparties would, if unrestrained, subject news organizations to enormous depletions of time and resources as well as seriously impede their ability to obtain materials from confidential sources."), *aff'd*, 228 A.D.2d 187 (1st Dep't 1996).

Similarly, in recognizing that the First Amendment reporter's privilege also applies to non-confidential newsgathering information, the Second Circuit has explained that the reporter's privilege reflects "broader concerns" beyond the confidentiality of a reporter's sources, noting

that the privilege is designed to protect against the burdens that would accrue if it were to become "standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through press files in search of information supporting their claims." *Gonzales*, 194 F.3d at 35.  The court explained further that those harms include "burden[ing] the press with heavy costs of subpoena compliance," increased requests for anonymity from sources anxious to avoid being "sucked into litigation," and "the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties." *Id.*  And New York courts have pointed out that the legislature's express purpose in passing the Shield Law was "to avoid 'problematic incursions into the integrity of the editorial process ….'"  *In re Grand Jury Subpoenas Served on NBC*, 178 Misc. 2d 1052, 1054-55, 683 N.Y.S.2d 708, 710-11 (Sup. Ct. N.Y. Cty. 1998) (quoting 1990 McKinney's Session Laws, Memorandum of State Executive Department, p. 2331–32)).  *See also United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980) ("[T]he compelled production of a reporter's resource materials can constitute a significant intrusion into the newsgathering and editorial processes.").

These principles were recently reaffirmed by the Second Circuit, applying the New York Shield Law, in *Baker v. Goldman Sachs*, 669 F.3d 105.  There, the plaintiffs sued their financial advisor over the alleged failure to accurately value a company—"L&H"—before it merged with the plaintiffs' company.  The *Wall Street Journal* had published stories questioning the valuation of L&H that same year, and the plaintiffs sought to depose one of the reporters on the stories, Jesse Eisinger, in order to support their theory that their financial advisor could (and should) have done the same degree of investigation into L&H as the newspaper reporters.  *See id.* at 108.  Eisinger moved to quash the deposition subpoena, and the district court granted the motion.

The plaintiffs had insisted that the primary purpose of the deposition was to have Eisinger simply confirm the details contained in the published article.  But the district court "found that the scope of questions could not be confined to published information, because even the most basic questions—such as who made the calls and interviewed the Korean companies [that were allegedly L&H customers]—were unpublished details of the newsgathering process."  *Id.* at 109.  Moreover, in seeking testimony to support their theory of the case, the plaintiffs "inevitably would have to ask questions regarding [the reporter's] techniques for conducting his investigation, the backgrounds of Eisinger's co-authors and the [*Wall Street Journal's*] editorial staff, and whether he consulted with any experts or other sources in the course of the investigation—all inquiries into the newsgathering process protected by the Shield Law."  *Id.* (internal quotation marks omitted).  Although none of that information was confidential, the court did not hesitate to hold that the "unpublished details of the newsgathering process" were nevertheless protected by the Shield Law, and because the testimony was not "critical or necessary" to maintain the plaintiffs' claims, the district court granted the motion to quash.  *Id.*

The Second Circuit affirmed, quoting the district court's analysis at length, and explaining that it was "***virtually self-evident*** that the Shield Law would protect Eisinger from compelled testimony."  *Id.* at 110 (emphasis added).  The same principles apply here.  All of the information sought by the document requests in the Subpoena pertain to either information obtained in the course of newsgathering, or "unpublished details of the newsgathering process."  *Id.* at 109-10.  And because Ms. Maxwell cannot make the clear showing necessary to overcome the qualified privilege to access this unpublished (even if non-confidential) newsgathering information, the Subpoena must be quashed.

1.    **The Information Sought by Ms. Maxwell Is Not "Highly Material and Relevant" to—Let Alone "Critical or Necessary to the Maintenance of"—Any Claim or Defense**

Under Section 79-h(c), the party seeking discovery from a reporter must "make a clear and specific showing" that the information she seeks is "highly material or relevant" and that the information is "critical or necessary to the maintenance of [the party's] claim, defense or proof of an issue material thereto." These two prongs overlap to an extent, but Ms. Maxwell cannot establish either one.

What is "material and relevant" is often interpreted broadly, but a court must "determine whether the materials sought are in fact relevant to a legitimate subject of inquiry [and not] permit the subpoena power to be used as a tool of harassment or for the proverbial 'fishing expedition' to ascertain the existence of evidence." *Reuters Ltd. v. Dow Jones Telerate, Inc.*, 231 A.D.2d 337, 342, 662 N.Y.S.2d 450, 453-54 (1st Dep't 1997) (quashing non-party subpoena). Subpoenas may not simply seek a vague array of information. To the contrary, where, as here, the subpoena is issued in the context of a pending civil action, "[i]t is well settled that the purpose of a subpoena duces tecum is to compel the production of specific documents that are relevant and material to facts at issue in a pending judicial proceeding." *Velez v. Hunts Point Multi-Serv. Ctr., Inc.*, 29 A.D.3d 104, 112, 811 N.Y.S.2d 5, 10 (1st Dep't 2006). "[B]road pronouncements" that fail to identify "a 'significant issue' in the case that the subpoenaed materials potentially address" are not sufficient to satisfy this prong. *In re McCray, Richardson, Santana, Wise, & Salaam Litig.*, 928 F. Supp. 2d 748, 757-58 (S.D.N.Y.), *aff'd*, 991 F. Supp. 2d 464 (S.D.N.Y. 2013).[4]

---

[4] Some courts impose a higher bar for the "highly material and relevant" prong, requiring in one criminal case that the information have the tendency to "prove or disprove who committed the alleged crime." *People v. Griffin*, No. 1438/92, 1992 WL 474518, at *2 (Sup. Ct. N.Y. Cty. Nov. 12, 1992) (holding that information sought "f[e]ll quite

The "critical or necessary" prong imposes an even higher bar: "[I]n order to find unpublished news to be critical or necessary within the meaning of § 79–h, there must be a finding that the claim for which the information is to be used *virtually rises or falls* with the admission or exclusion of the proffered evidence." *Graco*, 79 F.3d at 351 (internal quotation marks and citation omitted) (emphasis added). "The test is not merely that the material be helpful or probative, but whether or not the defense of the action may be presented without it." *Baker*, 669 F.3d at 108 (quoting *In re ABC*, 189 Misc. 2d 805, 808, 735 N.Y.S.2d 919, 922 (Sup. Ct. N.Y. Cty. 2001) (ellipses omitted and text deleted from quotation restored)); *see also O'Neill*, 71 N.Y.2d at 527 (the material sought must be "essential to the maintenance of the litigant's claim").[5]  By definition, evidence that is merely cumulative "cannot be 'necessary or critical' to an action so as to override the First Amendment privilege." *In re Behar*, 779 F. Supp. 273, 275 (S.D.N.Y. 1991) (citing *United States v. Burke*, 700 F.2d 70 (2d Cir. 1983)).

It is not clear how the information and testimony sought in the Subpoena is "highly material and relevant," let alone "critical or necessary" to Ms. Maxwell's defense.  This is a defamation case that turns on whether Ms. Roberts' accusations against Ms. Maxwell (and Mr. Epstein) are true, such that Ms. Maxwell's denials of those accusations would be false.  *See Giuffre*, 2016 WL 831949, at *2-4.  Ms. Churcher does not have any direct information that is relevant to the truth or falsity of those issues.  She reported news stories about the Epstein case based, in part, on interviews with Ms. Roberts.  But there is no suggestion that Ms. Churcher's communications with Ms. Roberts or her agents (or with law enforcement) will reflect any

---

short of the' clear and specific showing' required of the person seeking to compel disclosure of the non-confidential unpublished news").

[5] In *Graco*, the Second Circuit noted that the "critical or necessary" prong "must mean something more than 'useful,' particularly since the first statutory factor requires that the material sought must be shown to be 'highly material and relevant' in any event."  79 F.3d at 351.

firsthand knowledge of what did or did not happen between Ms. Roberts, Ms. Maxwell and

Mr. Epstein.  The Articles contain Ms. Churcher's reporting on the story Ms. Roberts told, but

the best witness for that story is, of course, Ms. Roberts herself, who is a party in this case.

To the extent that Ms. Maxwell may argue that documents reflecting any payment of

money to (or contracts with) Ms. Roberts would tend to affect Ms. Roberts' credibility, it is well

settled that evidence that goes to "general credibility" does not meet the "critical or necessary"

test.  *In re ABC*, 189 Misc. 2d at 808, 735 N.Y.S.2d at 922.  Ms. Maxwell's case will not "rise or

fall" based on whether she can show that Ms. Roberts received a financial benefit from the

publication of her story.  In any event, Ms. Maxwell may elicit testimony and obtain evidence on

that issue directly from Ms. Roberts herself (or from her bank records and other documents).

Further evidence of payments to Ms. Roberts (or contracts that Ms. Roberts entered into), if any,

would only be cumulative, which undercuts any argument that the information is "necessary or

critical."  *See Burke*, 700 F.2d at 77-78.[6]

To the extent that Maxwell seeks Churcher's communications with and about Ms.

Roberts to find evidence that might contradict or otherwise impeach testimony from Ms.

Roberts, it is well settled that, "[o]rdinarily, impeachment material is not critical or necessary to

the maintenance or defense of a claim."  *Graco*, 79 F.3d at 352 (holding that, "while it is clear

that any inconsistent statements by [the plaintiff] would be relevant to Graco's defense for

impeachment purposes, it is far from clear that they would be necessary within the meaning of

the Shield Law").  *See also In re ABC*, 189 Misc. 2d at 808, 735 N.Y.S.2d at 922 ("[W]hen the

Legislature speaks of unpublished news being critical or necessary to the proof of a claim or

---

[6] In any event, any information about payments or contracts with Ms. Roberts would be confidential proprietary business information and therefore independently subject to motion to quash under Rule 45(d)(3)(B).

defense, it does not have in mind general and ordinary impeachment materials or matters which might arguably bear on the assessment of credibility of witnesses.").

The striking lack of specificity apparent on the face of the Subpoena further demonstrates Ms. Maxwell's failure to meet the "critical or necessary" requirement.  She does not ask for communications on specific topics that would tend to impeach particular statements from Ms. Roberts—she simply asks for "[a]ll documents containing communications with Virginia Roberts," in the apparent hope that something useful will come of it.  That is precisely the kind of "'fishing expedition' into the work product of a reporter" that the Shield Law is "intended to prevent."  *People v. Iannaccone*, 112 Misc. 2d 1057, 1060, 447 N.Y.S.2d 996, 998 (Sup. Ct. N.Y. Cty. 1982).

### 2.     Ms. Maxwell Has Not Exhausted Alternative Sources for the Information Sought by the Subpoena

Under the Shield Law, New York courts permit "disclosure of non-confidential material only as a *last resort*."  *In re ABC*, 189 Misc. 2d at 808, 735 N.Y.S.2d 919, 921 (Sup. Ct. N.Y. Cty. 2001) (emphasis in original).  *See also O'Neill*, 71 N.Y.2d at 526-27 ("[A]ttempts to obtain evidence by subjecting the press to discovery as a nonparty would be widespread if not restricted on a routine basis.").  Thus, in order to overcome the privilege, even if the "critical or necessary" requirement were met, the party seeking disclosure must make a "clear and specific showing" that the information is "not obtainable from any alternative source."  Section 79-h(c).  This requires the party to show not only that it "attempted to obtain the information from other sources," but that it "exhaust[ed] all other available sources of information."  *Graco*, 79 F.3d at 353.  *See also In re CBS (Vacco)*, 232 A.D.2d 291, 292, 684 N.Y.S.2d 443, 444 (1st Dep't 1996) ("Notwithstanding [subpoenaing party's] excuses offered to the contrary, no clear and specific showing has been made that the relevant material was unavailable elsewhere."); *Flynn*, 235

A.D.2d at 909 ("Other than stating that the materials are not otherwise available, plaintiff has not detailed any efforts made to obtain the requested documents or the information contained therein.").  As the court in *In re Pan Am Corp.*, 161 B.R. 577, 585 (S.D.N.Y. 1993), pointed out: "At the very least, a party seeking to overcome a constitutional privilege on the basis of necessity must show that it has exhausted all other available non-privileged sources for the information. Here, Pan Am has not even worked up a sweat, much less exhausted itself."

Based on a review of the motion practice in the docket in this case, it is apparent that Ms. Maxwell has made some effort (and perhaps even "worked up a sweat") to obtain discovery in this case, but there is no indication that she has "exhausted" all non-journalist sources for the information sought by the Subpoena.  As noted above, information about payments, contracts and communications involving Ms. Roberts can be sought directly from Ms. Roberts.  To the extent she seeks email communications between Ms. Roberts and Ms. Churcher, even if Ms. Roberts did not have or produce a complete set of such communications, Ms. Maxwell can also seek—and, indeed, apparently has sought—such documents from the relevant internet service providers.  *See* ECF Nos. 205-208 (Motions to Quash Subpoenas to Apple, Inc. and Microsoft Corporation Seeking Production of All of Ms. Giuffre's Sent and Received Emails). She does not need a journalist to produce them.  And before Ms. Maxwell can demand to open up a reporter's files about communications with the various "agents" of Ms. Roberts she names in the Subpoena, she, of course, has the option of seeking discovery directly from those individuals.  *See Pugh*, 1997 WL 669876, at *4 (quashing subpoena for non-confidential outtakes from television news program where subpoenaing party had "not deposed . . . all of the individuals interviewed by [news program] on the issue of statements made to [news program] or any other media source").

As the Court of Appeals explained, "[t]he autonomy of the press would be jeopardized if resort to its resource materials, by litigants seeking to utilize the newsgathering efforts of journalists for their private purposes, were routinely permitted." *O'Neill*, 71 N.Y.2d at 526. In light of the lack of any showing that alternatives to seeking discovery from a reporter have been exhausted, the Subpoena must be quashed.

* * *

Given that all of the documents sought by the Subpoena are protected from disclosure under the Shield Law, "no legitimate purpose would be served" by requiring Ms. Churcher to sit for a deposition only to object to every substantive question on privilege grounds. *Holmes*, 22 N.Y.3d at 319. Indeed, that would be precisely the "undue diversion of journalistic effort and disruption of press functions" that both the Court of Appeals and the Second Circuit have warned against. *O'Neill*, 71 N.Y.2d at 528; *see also Gonzales*, 194 F.3d at 35 (expressing concern with the potential to "burden the press with heavy costs of subpoena compliance" that could "impair [the press's] ability to perform its duties"). Accordingly, the Subpoena should be quashed in its entirety under the Shield Law.

## II.   THE SUBPOENA SHOULD ALSO BE QUASHED UNDER RULE 45 FOR FAILURE TO ALLOW A REASONABLE TIME FOR COMPLIANCE AND IMPOSING AN UNDUE BURDEN

Setting aside the substantive reasons why the Subpoena must be quashed under the New York Shield Law, the Subpoena must also be quashed under Rule 45 because it does not allow a reasonable time for compliance and is unduly burdensome. *See* Fed. R. Civ. P. 45(d)(3)(A)(i), (iv).

Ms. Churcher was served with the Subpoena in person on Saturday June 4, 2016—twelve days (nine business days) before the scheduled deposition and production date. The Subpoena not only commands Ms. Churcher to appear for a deposition, it also demands a broad range of

documents, including "all documents containing communications" with Virginia Roberts and with any agent for Ms. Roberts.  (*See* Subpoena, Documents to be Produced ¶¶ 1-2.)  The Subpoena does not limit these demands to a particular time period or topic, instead simply asking for "all communications."

Ms. Churcher's reporter-source relationship with Ms. Roberts dates back more than five years and spans Ms. Churcher's employment with two separate news organizations (and as a freelancer), using multiple different email accounts.  *See* Churcher Decl. ¶ 10.[7]

Moreover, as discussed above, much of Ms. Churcher's communications with and about Ms. Roberts involved information that Ms. Churcher received in confidence.  Even if those communications were not protected as a whole by the Shield Law (which they are), at a minimum, all of these communications would need to be carefully reviewed to ensure that documents revealing the identities of confidential sources or any information that was received based on a promise of confidentiality was redacted or withheld.  It is simply not feasible to expect more than five years' worth of communications from multiple accounts to be collected, reviewed and appropriately redacted in a week and a half.

Although Rule 45 does not define what is a "reasonable time to comply," courts have generally found that at least fourteen days from the date of service (which is the deadline for serving objections to document requests) is "presumptively reasonable."  *Brown v. Hendler*, No. 09 Civ. 4486(RLE), 2011 WL 321139, at *2 (S.D.N.Y. Jan. 31, 2011) (citing *In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*, No. MISC 08–347(ARR)(MDG), 2010 WL 2219343, at *5 (E.D.N.Y. Feb. 5, 2010) (collecting cases)).  "Federal courts have . . . found compliance times of eight and seven days not to be reasonable."

---

[7] Ms. Churcher does not even retain full access to her email accounts at her prior employer (*The Mail on Sunday*).  Churcher Decl. ¶ 3.

*Id.* (holding that nine days was not reasonable under the circumstances).  But even fourteen days would be unreasonable here, given the breadth of the documents demanded and the efforts necessary to review and produce those documents.

Finally, the broad scope of the documents requested—with no limitation on time period or topic—is unduly burdensome given the, at best, tangential relevance of Ms. Churcher's testimony.  A non-party—and particularly a non-party journalist—should not be burdened with review of years' worth of communications based on little showing of any relevance or materiality.  *See Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, No. 03 Civ. 1382 RWS, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) (explaining that "'undue burden' depends upon 'such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed") (citation omitted).  And asking for essentially *all* communications related to Ms. Roberts (among other things) is hardly "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  *See Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789 (ER)(JLC), 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016) (granting motion to quash where subpoenaing party had not "satisfied the Court that [the] production of [the records sought] is proportional to the needs of the case").

Thus, the Subpoena should be quashed under Rule 45(d)(3)(A)(i) and (iv).

## **CONCLUSION**

For the foregoing reasons, Ms. Churcher respectfully requests that her motion to quash

Ms. Maxwell's Subpoena be granted.

Dated: New York, New York
        June 15, 2016

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP


By: /s/  Eric J. Feder

    Laura R. Handman
    Eric J. Feder

1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Tel:    (212) 489-8230
Fax:    (212) 489-8340
laurahandman@dwt.com
ericfeder@dwt.com

*Attorneys for Non-Party Sharon Churcher*

20