# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| VIRGINIA GIUFFRE, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | No. 15-cv-07433-RWS |
| | : | |
| GHISLAINE MAXWELL, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH (OR IN THE ALTERNATIVE MODIFY) SUBPOENA AND FOR A PROTECTIVE ORDER

Pursuant to Fed. R. Civ. P. 26 and 45, Jeffrey Epstein, through counsel, respectfully submits this memorandum of law in support of his motion to quash (or in the alternative modify) a subpoena *duces tecum* served on May 27, 2016 ("Subpoena") and for a protective order regarding the Subpoena. The Subpoena is attached to the accompanying Declaration of Gregory L. Poe ("Poe Decl.") as Exhibit 1. Mr. Epstein respectfully requests a hearing on this motion.

## INTRODUCTION

As Mr. Epstein's counsel has repeatedly informed counsel for plaintiff, Mr. Epstein will invoke his Fifth Amendment right to remain silent with respect to the Subpoena. Under the circumstances of this case, requiring compliance with the Subpoena would be unduly burdensome. A deposition of Mr. Epstein will not sufficiently advance a litigation purpose because an inadequate basis exists on which to permit adverse inferences against the party-defendant (Ghislaine Maxwell) based on Fifth Amendment invocations by a non-party (Mr. Epstein). Without a sufficient litigation purpose, any cost or inconvenience to Mr. Epstein is unnecessary and constitutes an undue burden.

If the Court allows the deposition to proceed, Mr. Epstein requests that the Subpoena be modified to prohibit videography because credibility issues do not exist where a non-party

deponent invokes the Fifth Amendment. In such circumstances, videography (especially in a case like this one with substantial media exposure) risks only embarrassment without sufficiently advancing any litigation purpose. That risk exists even where a protective order has been entered, as in this case (Dkt. 62), and even where designations are made under the protective order, because the order does not prohibit public disclosure in all circumstances. *Id.* ¶¶ 3, 11, 14.

## BACKGROUND

On May 27, 2016, counsel for Mr. Epstein in *Does* v. *United States*, No. 08-CV-80736-KAM (S.D. Fla.), Martin Weinberg, accepted service of the Subpoena subject to an agreement with plaintiff's counsel that any deposition would occur in the U.S. Virgin Islands and that Mr. Epstein reserves "all rights to contest the breadth of the subpoena and whether a deposition should be required at all" in light of the Fifth Amendment invocation that counsel for Mr. Epstein (since at least March 8, 2016) has represented to plaintiff's counsel would be made by Mr. Epstein in connection with the Subpoena. See Poe Decl., Exhibits 2, 6 (email correspondence). On June 9, 2016, undersigned counsel reiterated that position, asserted the Fifth Amendment privilege again, and stated objections to the Subpoena in a letter to plaintiff's counsel. See Poe Decl., Exhibit 7 (letter from G. Poe to S. McCawley). On June 12, 2016 (sixteen days after Mr. Weinberg accepted service), counsel for plaintiff for the first time asked Mr. Epstein's counsel for available deposition dates in June. Given the schedules of counsel for the parties and commitments on the part of Mr. Epstein and his counsel that preexisted June 12, it has not been possible to schedule a date in June (putting to one side Mr. Epstein's objections and this motion).

Mr. Weinberg represents Mr. Epstein as an intervenor in *Does*. In *Does*, two plaintiffs (represented by two of the lawyers representing plaintiff in this case – Messrs. Paul Cassell and Brad Edwards) are challenging under the Crime Victims Rights Act, 18 U.S.C. § 3771 ("CVRA"),

a non-prosecution agreement between Mr. Epstein and the U.S. Attorney's Office for the Southern District of Florida that is almost nine years old. Through counsel, Ms. Giuffre (identified in *Does* as Jane Doe No. 3, see Dkt. 23 (Opposition to Motion to Dismiss) at 2 n. 2) sought to join the action as an additional plaintiff. See *Does*, No. 08-CV-80736-KAM (S.D. Fla.), at, *e.g.*, *Does* Dkt. 282 (motion for limited intervention), *Does* Dkt. 289 (memorandum in opposition). The filings in *Does* included "'lurid details' concerning [plaintiff's] supposed sexual abuse by Ms. Maxwell and other non-parties to th[e] CVRA action, including professor Alan Dershowitz, 'numerous American politicians, powerful business executives, foreign presidents, a well-known Prime Minister, and other world leaders.'" Dkt. 15 (defendant Maxwell's motion to dismiss) at 4 (citations omitted). Among other things, the Honorable Kenneth A. Marra "denied Plaintiff's Joinder Motion, ordered the portions of the Joinder Motion pertaining to non-parties such as Ms. Maxwell stricken as 'immaterial and impertinent,' and restricted the documents mentioning those 'lurid details' from public access." *Id.* at 4-5 (citations omitted).

Mr. Epstein's good faith basis to invoke his Fifth Amendment right to remain silent is patent. Counsel for plaintiffs in *Does* (who also now represent plaintiff in this action) have made clear in *Does* that they seek, as a remedy for the alleged violation of the CVRA, rescission of the government's non-prosecution agreement with Mr. Epstein. See *Does*, No. 08-CV-80736-KAM, Dkt. 1; see also 950 F. Supp. 2d 1262, 1266-68 (S.D. Fla. 2013). Indeed, we do not understand plaintiff's counsel to dispute Mr. Epstein's good faith basis for invoking his Fifth Amendment privilege.

On March 8, 2016, counsel for Mr. Epstein informed plaintiff's counsel that Mr. Epstein would invoke his Fifth Amendment privilege in connection with any deposition and offered to provide an affidavit. Poe Decl., Exhibit 2. Nearly a month later, on April 6, counsel for plaintiff

responded that a videotape deposition would be necessary. *Id.* On April 11, counsel for Mr. Epstein offered to accept service on conditions:

> [I]if you will agree to schedule the depo[sition] near [Mr. Epstein's] Virgin Island[s] residence for a mutually agreeable date in June I can accept service so long as it is further agreed that the acceptance of service is subject to a reservation of rights to make any and all objections to the taking/scope of the deposition. Let me know. Available to discuss[.]"

See Poe Decl., Exhibit 3. Counsel for Mr. Epstein did not receive a response to that April 11 offer. (Counsel for plaintiff apparently take the position that they "do not have" the April 11 email. Dkt. 163-3 at 17.) On May 25, counsel for plaintiff and Mr. Weinberg communicated further regarding the deposition issue. *Id.*, Exhibit 4. The same day, while Mr. Weinberg's email to plaintiff's counsel was pending, counsel for plaintiff filed a motion for leave to use substitute service methods (Dkt. 160). That motion alleged that Mr. Epstein is "evasive." Dkt. 160 at 1, 3, 4. 8. The agreement to accept service that Mr. Weinberg offered on April 11 is the same agreement that counsel for plaintiff accepted on May 26-27. See Poe Decl. Exhibits 2, 6. Plaintiff withdrew the motion for leave to use substitute service methods on May 27 (Dkt. 175).

Whatever purpose plaintiff may have had for the now-mooted filing as to Mr. Epstein (Dkt. 160), that motion inaccurately tries to tarnish Mr. Epstein as "evasive." Even now, plaintiff persists in making those accusations despite Mr. Weinberg's April 11 email. See, *e.g.*, Plaintiff's Reply Brief in Support of Motion to Exceed 10-Deposition Limit (Dkt. 211) at 10 ("It took Ms. Giuffre's motion for alternative service (DE 160) to convince Jeffrey Epstein to allow his attorney to accept service of process."). In short, Mr. Epstein, through counsel, has been forthright regarding the Fifth Amendment issues, made appropriate efforts to agree on conditions for accepting service, and made his objections and reservations of rights known to plaintiff's counsel from the outset.

**ARGUMENT**

I.  **The Subpoena Should Be Quashed Because Requiring Mr. Epstein to Submit to a Deposition Would Impose an Undue Burden**

Under Rule 45, a court must "quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv); see, *e.g.*, *Usov* v. *Lazar*, No. 13 Civ. 818 (RWS), 2014 WL 4354691, *16 (S.D.N.Y. 2014) (Sweet, J.). The "status of a witness as a non-party to the underlying litigation entitles [the witness] to consideration regarding expense and inconvenience." *Id.* (citing *Kirschner* v. *Klemons*, No. 99–CV–4828, 2005 WL 1214330, *2 (S.D.N.Y. 2005); accord *Concord Boat Corp.* v. *Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996). See also *Watts* v. *SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) (stating that the "'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties."); *Misc. Docket Matter No. 1* v. *Misc. Docket No. 2*, 197 F.3d 922, 927 (8th Cir. 1999) ("[c]oncern for the burden upon non-parties carries 'special weight'" (quoting *Cusumano* v. *Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)); *Kim* v. *Nuvasive, Inc.*, No. 11cv1370–DMS (NLS), 2011 WL 3844106 (S.D. Cal. 2011) ("[n]on-parties deserve extra protection from the courts") (citing *High Tech Med. Instrumentation, Inc.* v. *New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995)). Courts "engage in a balancing test to determine whether undue burden exists." *Usov*, 2014 WL 4354691, *16 (citing *Aristocrat Leisure Ltd.* v. *Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 299–300 (S.D.N.Y. 2009) (in turn citing 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2463.1 (3d ed. 2008)).

Similarly, although it is not common to bar a deposition from occurring, see, *e.g.*, *Naftchi* v. *New York University Medical Center,* 172 F.R.D. 130, 132 (S.D.N.Y. 1997), a court has latitude under Fed. R. Civ. P. 26(c)(1) to issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense and may "prescribe[] a discovery method

5

other than the one selected by the party seeking discovery." Even among parties, the Court has discretion to impose discovery limitations where the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Atkinson* v. *Goord*, No. 01 CIV. 0761 (LAK/HBP), 2009 WL 890682 *1 (S.D.N.Y. 2009); see Fed. R. Civ. P. 26(b)(1). For the reasons discussed above, those concerns are *heightened* with respect to a non-party under Rule 45.

In this case, where it is clear that Mr. Epstein will invoke his Fifth Amendment privilege in connection with the Subpoena, and where the Court need not look beyond the position taken by plaintiff's counsel in *Does* to identify Mr. Epstein's good faith basis for the invocation, the plaintiff's apparent litigation purpose for subjecting Mr. Epstein to a deposition is to argue that a jury may draw an adverse inference against the defendant (Ms. Maxwell) based on invocations of the Fifth Amendment by a non-party (Mr. Epstein). Achieving that purpose, however, would require plaintiff to overcome the obstacle presented by *Libutti* v. *United States*, 107 F.3d 110 (2d Cir. 1997) (setting forth standards for when an adverse inference may be drawn against a party based on the invocation of the Fifth Amendment by a non-party). If no adverse inference is permissible based on Mr. Epstein's Fifth Amendment invocation, then Mr. Epstein's deposition would not advance the litigation interests of either party and would serve no litigation purpose but would require Mr. Epstein to bear the unnecessary cost and inconvenience of a deposition – in other words, an undue burden that Rule 45 prohibits.

In *Libutti*, the Court of Appeals held that one party to litigation may not categorically be excluded from having an adverse inference drawn against another party based on the invocation of the Fifth Amendment by a non-party. *Id.* at 123. The Court held that "a number of non-

exclusive factors" should "guide the trial court in making these determinations" including (1) the nature of the relevant relationships; (2) the degree of control of the party over the non-party witness; (3) "whether the assertion of the privilege advances the interests of both the non-party witness and the affected party in the outcome of the litigation;" (4) "[w]hether the non-party witness was a key figure in the litigation and played a controlling role in respect to any of its underlying aspects[];" and (5) "other circumstances unique to a particular case." *Id.* at 123-24. "[T]he overarching concern," the Court stated, "is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *Id.* at 124.

The *Libutti* standards do not support plaintiff's position here. The Complaint itself, even if taken as true, does not allege a relationship in which Ms. Maxwell exercised control over Mr. Epstein or vice versa. Nor has plaintiff explained how Mr. Epstein's assertion of his Fifth Amendment privilege will advance Ms. Maxwell's interests in the outcome of this defamation action. In another vein, plaintiff has asserted repeatedly in pleadings that Ms. Maxwell and Mr. Epstein have a common interest agreement. See, *e.g.*, Dkt. 172 at 14. But whatever import plaintiff may intend that assertion to have, it does not bear on the adverse inference analysis, which concerns the substance of the relationship – as *Libutti* itself shows. See, *e.g.*, 107 F.3d at 123-24; see also, *e.g.*, *Omni Food Sales* v. *Boan*, No. 06 Civ. 119 (PAC), 2007 WL 2435163, *4 (S.D.N.Y. 2007) ("Even if [an alleged joint] defense agreement existed, however, it would prove only a litigation alliance; it alone would not create privity.") Accordingly, Mr. Epstein's motions to quash and for a protective order should be granted.

II. **If Mr. Epstein is Required to Submit to a Deposition, Recording by Videography Should Not Be Permitted**

If Mr. Epstein is required to submit to a deposition, the subpoena should be modified to prohibit videography. Trial preparation is the only proper purpose for which a videotape recording

7

may be used. See, *e.g.*, *Joy* v. *North*, 692 F.2d 880, 893 (2d Cir. 1982) ("Discovery involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public."); see also *Stern* v. *Cosby*, 529 F. Supp. 2d 417, 422-23 (S.D.N.Y. 2007) ("Videotaped depositions are permitted to facilitate the presentation of evidence to juries; they are not intended to provide a vehicle for generating content for broadcast and other media.") (internal quotations omitted). The point of a videotape deposition is to record the demeanor of a deponent to assist the trier of fact in making credibility determinations regarding the witness. See, *e.g., Government of Virgin Islands* v. *Riley*, 754 F. Supp. 61, 65 (D.V.I. 1991) (allowing use of videotape deposition at trial because it allowed jury to observe the witness's demeanor and evaluate credibility). Where, as here, a non-party deponent will invoke his Fifth Amendment privilege, the foundation for videography erodes.

At the same time, a videotape recording creates a serious risk to a non-party deponent who invokes the Fifth Amendment. As one district court stated:

> The video of a person repeatedly invoking the Fifth Amendment in response to a series of questions is indeed striking, which is why it makes such a good 'soundbite' If the Special Prosecutor's investigation results in criminal charges against the Movants, the prosecutor would be forbidden from even alluding to the fact that the defendant declined to testify. But if the deposition video is broadcast on the local news, a large segment of the potential jury pool will have been exposed to the memorable image of the defendant doing just that.

*Hobley* v. *Burge*, 225 F.R.D. 221, 226 (N.D. Ill. 2004) (granting nonparty deponents' motion for entry of a protective order barring dissemination of deposition videotapes and transcripts); see also *Felling* v. *Knight*, No. IP 01-0571-C-T/K, 2001 WL 1782360, *3 (S.D. Ind. 2001) ("[V]ideotapes are subject to a higher degree of potential abuse than transcripts. They can be cut and spliced and used as sound-bites on the evening news.").

Although the Court's protective order lessens the risk of misuse and public disclosure, the order does not eliminate the risk. The order itself limits the scope of confidential information (Dkt. 62, ¶ 3), allows parties to object to confidentiality designations (*id.* ¶ 11), and does not categorically bar public disclosure (*id.* ¶ 14). The incendiary media exposure that resulted from filings in *Does* itself illustrates the severe risks at issue in this case. Precluding videography altogether is the only way to eliminate the potential harm and unfair prejudice to Mr. Epstein that we have identified.

## **CONCLUSION**

For the reasons stated above, and for any other reason that the Court may deem just and proper, Jeffrey Epstein respectfully requests that the Court quash the subpoena as unduly burdensome and enter a protective order as requested herein. If the Court does not grant that requested relief, Mr. Epstein respectfully requests that the Court prohibit videography as a means of recording. Mr. Epstein requests a hearing on this motion.

Respectfully submitted,

*/s/ Gregory L. Poe*
Gregory L. Poe (*pro hac vice* application pending)
Rachel S. Li Wai Suen (RS-1145)
Law Offices of Gregory L. Poe PLLC
The Executive Building
1030 15th Street, N.W., Suite 580 West
Washington, D.C. 20005
 (202) 583-2500
gpoe@gpoelaw.com
rliwaisuen@gpoelaw.com

*Counsel for Non-Party Jeffrey Epstein*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 16th day of June, 2016, I caused a true and correct copy of Jeffrey Epstein's Memorandum in Support of Motion to Quash (or in the Alternative Modify) Subpoena and for a Protective Order to be served via the Court's CM/ECF system on the following:

Sigrid S. McCawley
Meridith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

Bradley J. Edwards
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue Denver, CO 80203
Phone:   303.831.7364
Fax:     303.832.2628
lmenninger@hmflaw.com

/s/ Rachel S. Li Wai Suen
Rachel S. Li Wai Suen