UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X
                                                 ⋮
VIRGINIA L. GIUFFRE,                             ⋮
                                                 ⋮
         Plaintiff,                              ⋮
                                                 ⋮
v.                                               ⋮
                                                 ⋮          15-cv-07433-RWS
GHISLAINE MAXWELL,                               ⋮
                                                 ⋮
         Defendant.                              ⋮
                                                 ⋮
                                                 ⋮
-------------------------------------------------X


DEFENDANT'S COMBINED MEMORANDUM OF LAW
IN OPPOSITION TO EXTENDING DEADLINE TO COMPLETE DEPOSITIONS AND
MOTION FOR SANCTIONS FOR VIOLATION OF RULE 45


Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
East 10th Avenue
Denver, CO 80203
303.831.7364

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 3

LEGAL AUTHORITY ...................................................................................... 5

I.   PLAINTIFF'S LACK OF DILIGENCE ............................................. 6

     ███ ███████████ ................................................................. 6

     B.  Ross Gow ...................................................................................... 9

     C.  Jean Luc Brunel .......................................................................... 10

     D.  Jeffrey Epstein ............................................................................ 12

     E.  Nadia Marcincova and Sarah Kellen .......................................... 14

II.  FIFTH AMENDMENT BY EPSTEIN, KELLEN OR MARCINCOVA NOT ADMISSIBLE
     IN THIS CASE AGAINST MS. MAXWELL ...................................... 15

III. PLAINTIFF'S BAD FAITH DISCOVERY TACTICS SHOULD NOT BE REWARDED
     WITH EXTRA TIME ........................................................................ 18

     1.  Plaintiff's Rule 26 Revolving Door ............................................ 18

     2.  Plaintiff's Recurrent Rule 45 Violations .................................... 19

IV.  MS. MAXWELL'S GOOD FAITH EFFORTS TO CONDUCT DISCOVERY ............... 20

V.   GOOD CAUSE EXISTS TO TAKE RE-DEPOSE PLAINTIFF AND TO DEPOSE
     SHARON CHURCHER EXISTS ...................................................... 23

VI.  ALTERNATIVELY, ALL OTHER DEADLINES NEED TO BE EXTENDED ............... 24

CERTIFICATE OF SERVICE .......................................................................... 26

# TABLE OF AUTHORITIES

*Carlson v. Geneva City School Dist.*, 277 F.R.D. 90 (W.D.N.Y. 2011); *compare Reese v. Virginia Intern. Terminals, Inc.,* 286 F.R.D. 282 (E.D. Va. 2012) ............................................ 6

*Fox Industries, Inc. v. Gurovich,* No. 03–CV–5166, 2006 WL 2882580, *11 (E.D.N.Y. Oct. 6, 2006)..................................................................................................................................... 19

*Grochowski v. Phoenix Const.,* 318 F.3d 80, 86 (2d Cir.2003). ...................................................... 5

*Iantosca v. Benistar Admin. Svcs., Inc.*, 765 F.Supp.2d 79 (D. Mass. 2011) ................................. 6

*LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997) .......................................................... 16

*Murphy v. Board of Educ.,* 196 F.R.D. 220, 222 (W.D.N.Y.2000)............................................... 19

*Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.,* 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012)....................................................................................................................................... 5

*Sokol Holdings, Inc. v. BMD Munai, Inc.,* 05 Civ. 3749 (KMW)(DF), 2009 WL 2524611 at *7 (S.D.N.Y. Aug. 14, 2009)........................................................................................................ 5

*Usov v. Lazar*, 13-cv-818 (RWS), 2014 WL 4354691, at *15 (S.D.N.Y. Sept. 2, 2014)............. 20

Defendant Ghislaine Maxwell ("Ms. Maxwell") files this Combined Response ("Response") in Opposition to Plaintiff's Motion to Extend Deadline to Complete Depositions ("Motion") and Motion for Sanctions For Violation of Rule 45, and states as follows:

## INTRODUCTION

Apparently, Plaintiff seeks to take six (6) depositions beyond the scheduling order deadline of July 1, yet has failed to demonstrate good cause or diligence as to any.[1] The witnesses include (1) █████████████, a witness that Plaintiff initiated informal attempts to depose on June 9, and (2) Ross Gow, who Plaintiff began steps to depose under the Hague Convention in London last Friday, June 17. Plaintiff also seeks to untimely depose (3) Jean Luc Brunel, a witness she had noticed for a mid-June deposition, who apparently did not appear on that date with agreement and consent of Plaintiff's counsel.

The remaining three witnesses Plaintiff seeks to untimely depose are ones who repeatedly have expressed their intention to take the Fifth Amendment as to all questions posed. Counsel for (4) Jeffrey Epstein, offered to accept service on or about April 11 but Plaintiff ignored that offer for more than six weeks. Plaintiff only began on June 12 any attempt to schedule that deposition in the Virgin Islands. Last week, Mr. Epstein's counsel filed a Motion to Quash his deposition subpoena. The final untimely depositions sought by Plaintiff are for witnesses (5) Sarah Kellen and (6) Nadia Marcincova, about whom Plaintiff has made no public claims and thus, have no testimony relevant to this defamation action concerning whether Plaintiff's public

---

[1] In her Amended Corrected Reply In Support of Motion to Exceed Ten Depositions, Plaintiff represents that she only seeks to take three depositions beyond the limit of ten and that she no longer seeks depositions of witnesses Emmy Taylor, Dana Burns, JoJo Fontanilla, and Michael Reiter. (Doc. #224 at 2 n.4) She does not state her intentions with respect to other witnesses, like Maria Alessi, that she noticed but never deposed. However, comparing that Reply with her other motions, counsel has deduced the remaining witnesses from whom Plaintiff apparently seeks to secure deposition testimony in July. Plaintiff has already taken 6 depositions and another scheduled tomorrow. Thus by the close of discovery she will have taken 7 of her allotted 10 depositions.

allegations about Ghislaine Maxwell are – or rather are not – true.  The attempted service of subpoenas on Epstein, Kellen and Marcincova all violated Rule 45(a)(4) and should be sanctioned by this Court.

As to all of these witnesses, Plaintiff has fallen far short of the "good cause" required by Rule 16(b)(4) to modify the Scheduling Order.  In fact, for the most part, her failures to actively pursue depositions with these witnesses qualifies as <u>in</u>-excusable neglect:  She frittered away seven of the eight months of the discovery period and now has placed Ms. Maxwell, this Court, and the witnesses in the untenable position of trying to accommodate her last-minute scramble. In the absence of any acceptable excuses, and for the limited evidentiary value that most of the requested witnesses can provide, this Court should deny the request for the extra time to take these six depositions.

The only witnesses for whom depositions should be permitted following the discovery cut-off are:  (1) Ms. Sharon Churcher, Plaintiff's friend, advocate and former journalist with the *Daily Mail*, who filed a Motion to Quash her subpoena on the day before her scheduled deposition,[2] and (2) Plaintiff, who refused to answer questions at her deposition concerning highly relevant, non-privileged information.[3]

Alternatively, if the Court is to grant additional time for Plaintiff to take depositions, Ms. Maxwell will be unduly prejudiced without sufficient additional time to (a) secure any witnesses to rebut testimony gleaned from these witnesses, (b) conduct discovery of Plaintiff's retained experts, (c) submit a summary judgment motion which includes facts learned from these late depositions, and (d) prepare for trial.  Thus, if the Court grants Plaintiff's motion, the remaining deadlines in the Scheduling Order ought to be extended accordingly.

---

[2] Ms. Churcher's motion to quash will be heard this Thursday by the Court.
[3] Ms. Maxwell is filing simultaneously with this Response a Motion to Re-Open Plaintiff's Deposition.

## BACKGROUND

To divert attention away from her own lack of diligence, Plaintiff characteristically devotes much of her Motion blaming Ms. Maxwell and her counsel for her own problems with depositions.  Not only is Plaintiff's account factually inaccurate, none of it matters to whether she could timely complete the six depositions at issue.

For example, the scheduling of Ms. Maxwell's deposition (which depended, among other things, on an historic snowstorm, a disputed protective order, Plaintiff's failure to timely produce documents, and counsel's conflicting calendars, all of which have been amply documented with this Court)[4] does not inform any analysis regarding Plaintiff's lack of diligence in pursuing depositions of these six witnesses.  *See* Rule 26d)(3) ("Unless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice: (A) methods of discovery may be used in any sequence, and (B) discovery by one party does not require any other party to delay its discovery.").  Likewise, receipt of Ms. Maxwell's Rule 26 disclosures in February also had nothing to do with these witnesses.  *Id.*  Notably, each of the witnesses who Plaintiff now seeks to depose were known to her from the outset; all but ███████ ███████ were included in her initial Rule 26 disclosures served on November 11, 2015 and two of the six were specifically mentioned in Plaintiff's Complaint.

Finally, the fact that witness Rinaldo Rizzo had a deposition re-scheduled from April until June does not have any bearing on the issue presented by this motion.  Mr. Rizzo was deposed on June 14 and he has nothing to do with the remaining depositions.  Mr. Rizzo, in fact, was practically gleeful to be a witness: ███████████████████████████

███████████████████████████████████████████████

---

[4] Doc. #62 & Tr. of Hearing of Mar. 24 at 4.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████.[5]  Plaintiff's claim that Mr.

Rizzo is an "example of delay that has harmed [her] ability to obtain all depositions in a timely

manner" (Mot. at 3) is specious.

Contrary to Plaintiff's assertion, discovery began in this case on October 23, 2015,

following the parties' Rule 26(f) conferral.  *See* Fed.R.Civ.P. 26(d)(1).  At the Rule 16(b)

scheduling conference on October 28, 2015, this Court directed the parties to complete all fact

discovery by July 1, 2016.  (Doc. #13)  On November 30, 2015, contemporaneous with the filing

of her Rule 12(b) Motion to Dismiss, Ms. Maxwell also requested of this Court a stay of

discovery pursuant to Rule 26(c).  (Doc. #17)  That motion was denied on January 20, 2016, with

an additional two-week period granted to respond to Plaintiff's First Request for Production of

Documents.[6]  The discovery was thus never stayed.

Plaintiff erroneously asserts that that discovery "did not commence in this matter until"

February 8.  What she means is that she neglected to seek any non-witness depositions until then;

nothing in the Rules of Civil Procedure, this Court's Orders, or the law prevented Plaintiff from

doing so at any point after October 23, 2015.[7]  Plaintiff has had over eight months to subpoena

---

[5] *See,* Menninger Declaration, Ex. A (Rizzo deposition transcript excerpts).  Of course, Plaintiff's counsel has engaged in their own last-minute "unavailability" for a deposition scheduled by Ms. Maxwell, as to Plaintiff's former fiancé, a witness who is hostile, required numerous service attempts at great cost and inconvenience, and who then (because of Plaintiff's last minute unavailability) had to be re-served by a process server who swam through a swamp to get to his home, at additional cost and inconvenience.

[6] By agreement of the parties, the time to respond was extended an additional six days because defense counsel was in a jury trial at the time the Court's Order was handed down.

[7] *See, e.g.,* Pltf's Opp'n to Mot. to Stay (Doc. #20) at 17 n.8 ("As of the date of this filing, zero (0) disposition [sic] notices have been propounded on the Defendant.").

witnesses, schedule depositions and conduct them. Instead, she waited until the last minute and now complains of lack of time. Any lack of time is a product of her own bad faith and negligent litigation tactics and should not be sanctioned by this Court.

The failure to timely secure the depositions of the remaining six witnesses is through no fault of Ms. Maxwell or her counsel. As to these witnesses, Ms. Maxwell and her counsel have played no role in hindering Plaintiff's ability to depose the witnesses; in fact, as to four of the six Plaintiff attempted to serve subpoenas on the witnesses before ever providing notice to the defense, in clear violation of Rule 45(a)(4).

## <u>LEGAL AUTHORITY</u>

Rule 16(b) permits modification of a scheduling order only upon a showing of "good cause." To satisfy the good cause standard "the party must show that, ***despite its having exercised diligence***, the applicable deadline could not have been reasonably met." *Sokol Holdings, Inc. v. BMD Munai, Inc.,* 05 Civ. 3749 (KMW)(DF), 2009 WL 2524611 at *7 (S.D.N.Y. Aug. 14, 2009) (emphasis added) (*citing Rent-A-Center Inc. v. 47 Mamaroneck Ave. Corp.,* 215 F.R.D. 100, 104 (S.D.N.Y. 2003) (McMahon, J.)); *accord Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340 (2d Cir. 2000) (" '[G]ood cause' depends on the diligence of the moving party."); *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.,* 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (Engelmeyer, J.) ("To show good cause, a movant must demonstrate that it has been diligent, meaning that, despite its having exercised diligence, the applicable deadline could not have been reasonably met.").

Good cause depends on the *diligence* of the moving party in seeking to meet the scheduling order. *Grochowski v. Phoenix Const.,* 318 F.3d 80, 86 (2d Cir.2003). The Oxford Dictionary defines "diligence" as "careful and persistent work or effort." *See* "diligence" at http://www.oxforddictionaries.com/us/definition/american_english/diligence (last accessed on

June 18, 2016).  "Good cause" and diligence were not shown when a party raised the prospect of

a deposition nine days prior to the discovery deadline.  *Carlson v. Geneva City School Dist.*, 277

F.R.D. 90 (W.D.N.Y. 2011); *compare Reese v. Virginia Intern. Terminals, Inc.,* 286 F.R.D. 282

(E.D. Va. 2012) (depositions noticed very early in discovery period and movant engaged in

continuing meet-and-confer dialogue with defendants throughout five month discovery period);

*Iantosca v. Benistar Admin. Svcs., Inc.*, 765 F.Supp.2d 79 (D. Mass. 2011) (correspondence

indicated that the plaintiffs had tried on numerous occasions to schedule the depositions and to

extend the discovery schedule but that the defendants had either refused or failed to respond,

good cause found).

**ARGUMENT**

**I.     PLAINTIFF'S LACK OF DILIGENCE**

Plaintiff has demonstrated an extreme lack of diligence in securing the remaining six

depositions that she seeks.



Plaintiff's Motion failed to mention any desire to take the deposition of ███████████

██████.  No Notice of Deposition has been served and no scheduling of his deposition has

commenced.  Indeed, ████████████ first appeared on Plaintiff's Third Revised Rule 26

Disclosures two weeks ago on June 1.  Then, last week, in her Reply In Support of Motion to

Exceed Ten Depositions filed on June 13 ("Reply"), Plaintiff averred that ████████████

deposition is "necessary" because Ms. Maxwell "████████████████████████

████████████████████████████████████████

████████████████████████████."  Reply at 3.  This is utter

nonsense and nothing more than a transparent ploy by Plaintiff to increase media exposure for

her sensational stories through deposition side-show.   This witness has nothing relevant to add

6

to this case and Plaintiff has made no effort, much less one in good faith to timely secure his testimony.

Plaintiff admits she has "made not allegations of illegal actions by ██████████." *Id.* But Plaintiff has asserted that she ████████████████████████████████████████████ ████████████████████████████████████████████

██████. In one article, authored by Sharon Churcher, Plaintiff related:

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████

*See* Sharon Churcher, "████████████████████████ ████████████████████████████████████

████████████████████████ Similarly, in Plaintiff's ████████████████████

██████████████████████████, she writes:

████████████████████████████████████
████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
█████████████████████████████████████████
██████████████████████████████████████████
███████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
█████████████████████████████████████

Menninger Decl. Ex. B at 110.

Each and every part of Plaintiff's claims regarding ████████████ has conclusively

been proven false. ███████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████

      ███████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████  The only purpose for seeking this deposition is for the calculated media strategy that Plaintiff and her publicity-seeking attorneys have devised.

████████████████████████████████████████████████

████████████████████████████████████████████████

██████  Accordingly, Plaintiff's leave to modify the scheduling order to permit his deposition should be denied.

### B.  Ross Gow

As the Court likely recalls, Ross Gow actually issued the statement pertinent to this defamation suit.  Plaintiff has known about Ross Gow and his role in this lawsuit since the outset:  She referenced him repeatedly by name in the Complaint filed on September 21, 2015.  *See, e.g.,* Complaint paragraph 29 ("As part of Maxwell's campaign, she directed her agent, Ross Gow, to attack Giuffre's honesty and truthfulness and to accuse Giuffre of lying.").  Plaintiff also has been well aware throughout that Mr. Gow resides in London.  *See, e.g.,* Plaintiff's Motion to Compel Improper Privileges, at 8 (Doc. #33).

After filing that Complaint in September and litigating the Motion to Compel based on privileges related to Mr. Gow in March, Plaintiff took exactly zero steps to depose Mr. Gow until she filed this Motion.  Now, nine months after filing her Complaint, Plaintiff contends there is "not sufficient time" for her to "go through the Hague Convention for service on Mr. Gow" so as to "complete this process before the June 30, 2016 deadline."  Mot. at 4.  Indeed, Plaintiff only initiated that process three days ago, on Friday, June 17, two weeks shy of the discovery cut-off.

Plaintiff, once again, tries to blame Ms. Maxwell for her own lack of diligence by misrepresenting to this Court that "Ms. Giuffre asked that Defendant produce her agent, Mr.

Gow, for a deposition but Defendant has refused…despite acknowledging that Defendant plans to call Mr. Gow for testimony at trial." *Id.* In truth, Plaintiff sent a letter on May 23 which read in its entirety, "This letter is to seek your agreement to produce Ross Gow for deposition, as the agent for your client, Ms. Maxwell. We can work with Mr. Gow's schedule to minimize inconvenience. Please advise by Wednesday, May 25, 2016, whether you will produce Mr. Gow or whether we will need to seek relief from the Court with respect to his deposition." Menninger Decl. Ex. E. That was the first communication regarding any deposition of Mr. Gow. Two days later, defense counsel requested any "legal authority that would allow Ms. Maxwell to 'produce' Ross Gow for a deposition" or "any rule or case that would either enable or require her to do so." *Id.* Plaintiff never responded. She also has not explained when or how Ms. Maxwell "acknowledged" her "plans to call Mr. Gow for testimony at trial," nor why that is relevant to whether Plaintiff has demonstrated good cause for her own failure to take steps to depose a foreign witness deposition until June 17, for a witness she was aware before even filing the Complaint.

During the hearing on March 24, this Court stated that it would consider expect to see "good faith showing" of efforts to comply with the schedule and "an inability because of Hague Convention problems," before it would consider changing the Scheduling Order. Ms. Maxwell submits that waiting until June 17, two weeks before the end of discovery, to even begin the Hague Convention process falls far short of any such good faith showing and the request for leave to take Mr. Gow's testimony beyond July 1 should be denied.

### C.    Jean Luc Brunel

With regard to Jean Luc Brunel, Plaintiff simply asserts that he was "subpoenaed," and "set for mid-June deposition[]," but "through counsel" has "requested we change the dates of [his] deposition." Mot. at 4. That is her entire argument. She omits key facts that would,

instead, demonstrate her lack of diligence in securing Mr. Brunel's testimony and also show that she has waived any right to seek an out-of-time deposition.

Plaintiff first issued a Notice of a Rule 45 subpoena for documents from Mr. Brunel on February 16, at an address "c/o" attorney, Joe Titone.  No documents were ever produced pursuant to that subpoena.  Menninger Decl., Ex. F.  Then, on May 23, 2016, Plaintiff issued a new "Notice of Subpoena Duces Tecum," attached to which was actually a subpoena for deposition testimony to occur on June 8, at 9:00 a.m. in New York.  *Id.*  Again, the subpoena was addressed "c/o" attorney Robert Hantman.  Then, on June 2, Plaintiff's counsel sent an email that they had received "an email yesterday from Mr. Brunel's attorney saying he needs to reschedule. I believe he is trying to get us new dates today or tomorrow."  *Id.*  The "scheduled date" of June 8 came and went without any indication of any new dates provided by Mr. Brunel's counsel. The following week, Plaintiff's counsel stated in a phone conversation that Mr. Brunel's counsel said his client had gone to France and it was unclear when he would be returning to the United States.

Following the filing of the instant motion, counsel for Ms. Maxwell requested copies of the certificates of service for all of Plaintiff's Rule 45 subpoenas in this case.  Plaintiff's counsel provided certificates on June 14.  Notably absent was any certificate of service for Mr. Brunel. Thus, either Mr. Brunel was never served, or he was served and Plaintiff unilaterally extended his compliance date to an unscheduled time in the future.  Either way, the time to complain about a witness's non-compliance is at or near the time it occurs.  Failure to timely complain regarding non-compliance with a subpoena constitutes a waiver.  In any event, whether served or not, Mr. Brunel apparently promised to provide new dates before his deposition date came and went, did not do so, has left the country and not indicated a present intention to return.  Given Plaintiff's

11

role in failing to compel him to attend a deposition, no "good cause" has been demonstrated to take the deposition of Mr. Brunel after July 1.

### D.     Jeffrey Epstein

As with the other witnesses, Plaintiff has failed to demonstrate "good cause" for seeking to depose Jeffrey Epstein out of time.  Plaintiff claims that she was unable to secure service on Mr. Epstein until May 27, 2016, because his counsel "refused to accept service" until she filed her motion for alternative service.  The documents reflect the opposite:  Mr. Epstein's attorney agreed to accept service on April 11, 2016, and it was only on May 27, 2016, that *Plaintiff* agreed.  *See* Poe Declaration in Support of Motion to Quash Epstein Deposition, Ex. 3 (Doc. # 223-3).  Plaintiff fails to explain her strategic decision, or negligence, in failing to respond for over six weeks to Mr. Weinberg's email offering to accept service.  Indeed, in another failure of candor, Plaintiff's counsel also neglected to tell this Court about the email offer from Mr. Weinberg either in the instant motion or in her motion to serve Mr. Epstein by alternate means.  Mot. at 2; Doc. # 160.[8]

Plaintiff apparently now claims that she never received that email from Martin Weinberg. All of the preceding communications, however, indicate that Mr. Weinberg promptly responded to Ms. McCawley's inquiries.  *See, e.g.,* Poe Declaration, Ex. 2 (email of April 6 from Weinberg to McCawley (offering to let her know regarding acceptance of service on April 7)); email of McCawley in response ("That works fine – thank you.")).  Thus, if Ms. McCawley received no follow up response from Mr. Weinberg, as she now claims, when he had been corresponding

---

[8]  In another glaring omission from Plaintiff's submissions to the Court on the topic of the service of Mr. Epstein, Plaintiff's own counsel have strenuously litigated in other cases that Mr. Epstein is a <u>resident of Florida</u>, over his objection that he is a resident of the <u>U.S. Virgin Islands</u>.  *See, e.g.,* Menninger Decl., Ex. G (Motion to Quash Subpoena on Jeffrey Epstein, Broward County, Florida, 15-000072).  Yet, all of Plaintiff's purported attempts at service on Mr. Epstein were in <u>New York</u>.

with her previously theretofore, she had a duty to follow up on that inquiry.  A failure to do so is plain vanilla neglect.

Even after agreeing to the terms proposed by Epstein's counsel on May 27, that is, location of the deposition in the U.S. Virgin Islands and subject to right to oppose the subpoena, Plaintiff then waited an *additional three weeks* until June 12, to even attempt to schedule Epstein's deposition.  Epstein Memorandum in Support of Mot. to Quash at 2  (Doc. # 222).  Agreeing to take a deposition in the Virgin Islands on May 27, then waiting until June 12, to try to schedule a date for that deposition, when numerous other depositions had already been scheduled in New York, Florida, and California for the balance of June, is either neglect or strategic posturing by Plaintiff.  Either way, it does not amount to "good cause" for such a deposition to take place beyond July 1.

Finally, Plaintiff suggests, without factual foundation, that Ms. Maxwell played some role in Mr. Epstein's counsel's refusal to accept service.  *See* Mot. at 2 ("forced to personally serve the Defendant's former boyfriend, employer, and co-conspirator").  As the timeline and documents now reveal, however, Plaintiff failed to provide notice to Ms. Maxwell that she was attempting to serve a Rule 45 subpoena on Mr. Epstein for more than 7 weeks! *Id.*  Plaintiff states that she began her service attempts on March 7, 2016.  The very first Notice of Subpoena and Deposition served on Ms. Maxwell, however, is dated April 27.  Menninger Decl. Ex. H. Thus, between March 7 and April 27, Ms. McCawley engaged in repeated attempts to serve Mr. Epstein a Rule 45 subpoena (including a request for documents) without providing the proper notice to the parties pursuant to Rule 45(a)(4) ("If the subpoena commands the production of documents… , then *before it is served* on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party.") (emphasis added).  As detailed below, this was

13

not an isolated incident and merits sanction.  In any event, it is difficult to imagine how it is Ms. Maxwell's fault that Plaintiff could not serve Mr. Epstein when she was never put on notice of any attempt to do so.

Given that Plaintiff knew as of April 11 the conditions pursuant to which Mr. Epstein would accept service through counsel, yet waited until May 27 to agree to those terms, and then waited another nearly three weeks to attempt to schedule Mr. Epstein's deposition on a date available for his counsel and Ms. Maxwell's counsel, Plaintiff has fallen far short of demonstrating "good cause" for taking Mr. Epstein's deposition beyond the end of the fact discovery cut-off.

### E.    Nadia Marcincova and Sarah Kellen

Finally, Plaintiff seeks the depositions of two other witnesses – Sarah Kellen and Nadia Marcincova -- who, she complains, "despite being represented by counsel, have refused to accept service."[9]  Mot. at 3.  Plaintiff claims that her process servers tried for three weeks (from April 25 until May 18) to personally serve Ms. Kellen and Ms. Marcincova with subpoenas *duces tecum*.  She did not explain, however, why she waited until April to try to serve these two witnesses, about whom her attorneys have known since 2008.  She also has not explained to this Court any legally relevant or admissible evidence that either possess, nor how she intends to introduce that evidence in a trial of this defamation claim between Plaintiff and Ms. Maxwell.

Apart from these witnesses stated intent to take the Fifth Amendment which renders their testimony inadmissible, as discussed more fully below, neither witness has any relevant testimony to offer because Plaintiff never made a public statement about either one of them.

---

[9]  Actually, in Plaintiff's Motion for Leave to Serve Three Deposition Subpoenas by Means Other than Personal Service, Plaintiff details that Ms. Marcincova's counsel stated he no longer represents her. (Doc. #161 at 5) ("counsel for Ms. Giuffre reached out to Ms. Marcinkova's former counsel but he indicated that he could not accept service as he no longer represents her").  It is unclear then, why Plaintiff persists in representing to this Court that Ms. Marcincova instructed her counsel not to accept service, or why Plaintiff seeks to serve Ms. Marcincova through her *former* counsel.

Plaintiff did not include either woman in her Sharon Churcher-paid interviews, nor were they mentioned in Plaintiff's Joinder Motion of December 30, 2014. Thus, neither Plaintiff's allegations about Ms. Maxwell, nor Ms. Maxwell's denial of the same based on her personal knowledge, are implicated by anything that Ms. Kellen or Ms. Marcincova may have done with anyone else. Their testimony cannot corroborate Plaintiff's account, nor can it shed light on whether Ms. Maxwell's denial of that account is accurate, because Plaintiff's account did not mention either of them.

Finally as to these witnesses, Plaintiff once again documented her own failure to comply with Rule 45 in regard to attempts to serve these two witnesses. Six of the service attempts occurred on April 25 and April 26. Yet Plaintiff only provided Notice to Ms. Maxwell of her intent to serve the subpoenas on April 27. Menninger Decl. Ex. I.

## II. FIFTH AMENDMENT BY EPSTEIN, KELLEN OR MARCINCOVA NOT ADMISSIBLE IN THIS CASE AGAINST MS. MAXWELL

The depositions of Epstein, Kellen and Marcincova do not constitute "good cause" to modify the scheduling order in this case for the additional reason that they all have represented to Plaintiff their intention to assert the Fifth Amendment protection as to *all* questions and such assertion will not be admissible evidence in this trial. Indeed, counsel for Mr. Epstein recently filed a Motion to Quash his subpoena based on the same legal principle that his deposition is unduly burdensome in light of the fact that it will not lead to admissible evidence. (Doc. # 221, 222, 223) The Court should consider this additional factor to decline a finding of "good cause" for extending the discovery deadline.

Plaintiff wrongfully contends that any assertion of the Fifth Amendment during the depositions of Epstein, Kellen and Marincova will be admissible in the trial of this defamation matter (where none of those individuals are parties) based on an "adverse inference" that can be

15

drawn against Ms. Maxwell.  *See LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997).  In fact, none of the *LiButti* factors support her argument.  While noting that Ms. Maxwell anticipates more extensive briefing on this issue in support of Mr. Epstein's Motion to Quash, a few facts bear mentioning here:

- Ms. Maxwell was the employee of Mr. Epstein --in the 1990s -- not the other way around.  Mr. Epstein has never worked for or been in control of Ms. Maxwell.

- Ms. Maxwell and Mr. Epstein have had no financial, professional or employment relationship in more than a decade, many years before 2015 when the purportedly defamatory statement was published.  ████████████████████████ ████████████████████.

- Maxwell has not vested any control in Mr. Epstein "in regard to key facts and subject matter of litigation."  As the Court is well aware from review of emails submitted *in camera* (and later produced to Plaintiff):



- Epstein is not "pragmatically a non-captioned party in interest" in this litigation nor has he "played controlling role in respect to its underlying aspects."  Epstein is not, despie Plaintiff's suggestion, paying Ms. Maxwell's legal fees.  Plaintiff sought by way of discovery any "contracts," "indemnification agreements," "employment agreements" between Ms. Maxwell and Epstein or any entity associated with Epstein, from 1999 to the present.  Ms. Maxwell responded under oath that there are no such documents.  Epstein played no role in the issuance of the January 2 statement, nor has he issued any public statement regarding Plaintiff.  Indeed, Plaintiff and Epstein fully resolved any claims against one another by way of a confidential settlement in 2009, another action in which Ms. Maxwell had no role.

- Assertion of the privilege by Epstein does not advance any interest of Ms. Maxwell's.  Quite to the contrary, Epstein would be a key witness in her support, exonerating her from Plaintiff's allegations regarding sex abuse, sexual trafficking and acting as his "madam" to the stars.  As proof, one need look no further than ██████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

- Likewise, 

; *Id.*

These correspondences demonstrate that Ms. Maxwell has no control over Mr. Epstein in regards to the alleged defamation statement, he had no role in issuance of the statement, he has no benefit in the outcome of this litigation and he played no controlling role in its respect.

Similarly, there is not any evidence at all to support an adverse inference to be drawn from either Sarah Kellen nor Nadia Marcincova's assertion of the Fifth.  Ms. Maxwell hardly knows either woman, never worked with them, they have had nothing to do with this litigation and do not stand to benefit from it, especially as Plaintiff has never made any allegations about her involvement with either of the two of them, they are simply irrelevant to this defamation action.

## III.   PLAINTIFF'S BAD FAITH DISCOVERY TACTICS SHOULD NOT BE REWARDED WITH EXTRA TIME

### 1.   Plaintiff's Rule 26 Revolving Door

Plaintiff's army of lawyers (who collectively have been litigating matters related to Jeffrey Epstein since 2008) served their Rule 26 initial disclosures on November 11, 2015. Those disclosures listed 94 individual witnesses with knowledge regarding the facts of this case, yet provided addresses (only of their counsel) as to just two, Jeffrey Epstein and Alan Dershowitz.  Plaintiff then also listed categories of witnesses such as "all other then-minor girls, whose identities Plaintiff will attempt to determine" and "all pilots, chauffeurs, chefs, and other employees of" Ms. Maxwell or Jeffrey Epstein.  Plaintiff claimed as to her Rule 26 disclosures that "only a fraction of those individuals will actually be witnesses in this case, and as discovery progresses, the list will be further narrowed."  (Doc. #20 at 17)  The opposite has happened.

Between November 11 and March 11, Plaintiff trimmed her Rule 26 list of persons with knowledge from 94 to 69, inexplicably removing 34 names, but adding 12 more.  She removed,

for example, witnesses Andrea Mitrovich and Dara Preece, but added Senators George Mitchell, Bill Richardson and Les Wexner.

Then between March 11 and June 1, a few weeks before the discovery cut-off, Plaintiff added 20 more witnesses, including 

As to several of these newly added witnesses,

, Plaintiff promptly scheduled their depositions in June, despite having just disclosed their names on June 1.

Menninger Decl. Ex. K.

This is precisely the type of hide-and-seek that Rule 26 is designed to prevent.  While Ms. Maxwell anticipates filing in the near future a separate motion concerning Plaintiff's latest Rule 26 violations and seeking sanctions for the same, this Court can and should consider this behavior in determining whether Plaintiff has "good cause" to extend the discovery cut-off so that she can continue her gamesmanship.

### 2.    Plaintiff's Recurrent Rule 45 Violations

As this Court has previously held:

> Rule 45(b)(1) requires a party issuing a subpoena for the production of documents to a nonparty to "provide prior notice to all parties to the litigation," which has been interpreted to "require that notice be given prior to the *issuance* of the subpoena, not prior to its return date." *Murphy v. Board of Educ.,* 196 F.R.D. 220, 222 (W.D.N.Y.2000).  At least one court in this circuit has held that notice provided on the same day that the subpoenas have been served constitutes inadequate notice under Rule 45. *See, e.g., Fox Industries, Inc. v. Gurovich,* No. 03–CV–5166, 2006 WL 2882580, *11 (E.D.N.Y. Oct. 6, 2006). … The

---

[10] Rather than list his client's address in the custody of the U.S. Marshal's Office, Mr. Edwards said her address is "c/o" himself.

> requirement that prior notice "must be given has important underpinnings of fairness and efficiency." *Cootes Drive LLC v. Internet Law Library, Inc.,* No. 01–CV–9877, 2002 WL 424647, *2 (S.D.N.Y. Mar. 19, 2002). Plaintiff fails to provide an adequate explanation or argument for how a same-day notification satisfies Rule 45's requirements. *See, e.g., id.* ("[C]ounsel for the [offending party] offered no explanation or excuse for their failure to comply with the rule's strictures. They did not attempt to defend the timeliness of their notice. The [offending party's] admitted violation ... cannot be countenanced.").

*Usov v. Lazar*, 13-cv-818 (RWS), 2014 WL 4354691, at *15 (S.D.N.Y. Sept. 2, 2014) (granting motion to quash the subpoenas where notice given on the same day and served beyond 100 mile limitation of Rule 45). In that case, Plaintiff had provided *same day notice* of the issuance of a subpoena. Here, we have repeated attempts to serve a subpoena over the course of days before any notice was given to Ms. Maxwell. As described previously, Plaintiff has amply documented her own violations of the Rule by detailing her attempts to serve subpoenas *duces tecum* before ever providing notice to Ms. Maxwell with regards to witnesses Epstein, Kellen and Marcincova.

Likewise, with respect to witness, Alexandra Hall, Plaintiff served the subpoena prior to providing notice. *See* Menninger Decl. Ex. L. Served subpoenas <u>before</u> providing Notice under Rule 45. Accordingly, Plaintiff moves to quash the subpoenas on Epstein, Kellen and Marcincova as violations of Rule 45's notice provision. Ms. Maxwell further requests sanctions pursuant to Rule 37 for these documented violations.

With respect to Ms. Hall, who was deposed already earlier today, Ms. Maxwell believes that she did not offer any admissible testimony at her deposition. If Plaintiff's seek to introduce her testimony, the defense reserves the right to exclude such testimony both on evidentiary grounds as well as in violation of Rule 45's notice provision.[11]

## IV.   MS. MAXWELL'S GOOD FAITH EFFORTS TO CONDUCT DISCOVERY

---

[11]   Counsel for Ms. Maxwell only learned of the Rule 45 violation this past weekend after reviewing certificates of service provided by Plaintiff's counsel last week, without sufficient time to file a motion to quash the subpoena on Ms. Hall.

As already documented in previous pleadings, Ms. Maxwell's counsel has engaged in significant and repeated efforts to conduct discovery in this case in a professional, civil manner, especially as it relates to the depositions of non-parties.  On February 25, 2016, counsel for Ms. Maxwell requested that the lawyers confer by telephone to arrange a schedule for the non-party depositions to occur in various states and countries.[12]  Plaintiff ignored that request, and requests of the same ilk made on at least 6 different occasions in March and April.  It was only on two and ½ months later, on May 5, 2016, when Plaintiff's counsel finally responded with "as is becoming clear, both sides are going to be needing to be coordinating a number of depositions."[13]  She then proposed a calendar which scheduled 13 additional depositions for Plaintiff and only 2 days (actually ½ days) for defendant to depose her remaining witnesses. [14] Defendant provided a calendar which allowed for both sides to take remaining depositions, but Plaintiff ignored it and continued to schedule depositions on dates for witnesses without consulting defense counsel for their availability first.  Menninger Decl., Ex. M.

Because of the breakdown in communications, defense counsel was left with little choice but to (a) show up at each of Plaintiff's noticed depositions, in Florida and New York, and (b) issue subpoenas for witness depositions on other dates in June.  For example, Plaintiff issued a

---

[12] McCawley Decl. in Support of Request to Exceed Ten Deposition Limit, Exhibit 1 (Doc. # 173-1) at 28 (Letter of Menninger to McCawley (Feb. 25, 2015) ("I would suggest that rather than repeated emails on the topic of scheduling the various depositions in this case, or the unilateral issuance of deposition notices and subpoenas, you and I have a phone conference wherein we discuss which depositions are going to be taken, where, and a plan for doing them in an orderly fashion that minimizes travel and inconvenience for counsel and the witnesses.  As you are well aware from your own practice of law, attorneys have other clients, other court dates and other commitments to work around.  The FRCP and Local Rules contemplate courtesy and cooperation among counsel in the scheduling and timing of discovery processes.  This rule makes even more sense in a case such as this spanning various parts of the country where counsel must engage in lengthy travel and the attendant scheduling of flights, hotels and rental cars.")).

[13] *Id.* at 19.

[14] *Id.* at 1-3.

Notice of Deposition for Juan Alessi on May 31, 2016, without any conferral with counsel, in Florida, fully aware that defense counsel would be traveling from Colorado. Defense counsel, in fact, did have to travel on Memorial Day to Florida for the 9:00 a.m. May 31 deposition. Mr. Alessi, however, did not appear on that date, believing that his deposition was for June 1, the same day that his wife had been subpoenaed to appear and because he and his wife live an hour away from Ft. Lauderdale. Thus, despite defense counsel's herculean efforts, no deposition occurred on May 31. On June 1, Mr. Alessi appeared, but there was insufficient time to take his wife's deposition, who presumably made the one hour drive for naught. Also, defense counsel then had to travel to New York for the June 2 hearing and back to Florida for a deposition of another witness, Mr. Rogers, that had been scheduled without input from defense counsel.

Counsel for Plaintiff makes much of her efforts to serve witnesses Epstein, Marcincova and Kellen. She fails to advise the Court that Ms. Maxwell has been "forced" to expend great time, money and resources to serve Plaintiff's *own mother, father, former fiancé and former boyfriend*. As described before, the defense even re-scheduled the deposition of Plaintiff's former fiancé due to the last minute unavailability of Plaintiff's counsel, although all counsel were already in Florida and had expended hundreds of dollars to serve him. Plaintiff made no effort to help serve those closest to her, including her own family members. Unlike Plaintiff, however, Ms. Maxwell and her counsel are fully aware that such are the difficulties of litigation. We do not ascribe to Plaintiff the blame.

Having flown to Florida a total of four separate times to attend depositions of five of Plaintiff's noticed witnesses, defense counsel has borne the brunt of Plaintiff's mismanagement of counsel and witness time. Defense counsel scheduled their own Florida depositions of three witnesses to occur during two of the four trips. Defense counsel offered to, and did, schedule the

22

two Colorado non-party witnesses the same week in May, so as minimize Plaintiff's counsel's travel obligations.  Plaintiff, however, rescheduled the deposition of Mr. Rizzo in New York for a week <u>after</u> this Court had a hearing, rather than accommodating any attempt to have the New York deposition occur when all counsel were already present in NY.

To the extent the Court wishes to consider the good faith efforts of defense counsel in conducting depositions when deciding whether to grant Plaintiff additional time, defense has more than met their burden.

## V.   GOOD CAUSE EXISTS TO TAKE RE-DEPOSE PLAINTIFF AND TO DEPOSE SHARON CHURCHER EXISTS

In contrast to the lack of good cause to extend discovery for Plaintiff's six witnesses, Ms. Maxwell seeks leave of the Court to take depositions beyond June 30.  First, Ms. Maxwell properly served a deposition subpoena (and provided appropriate notice to Plaintiff's counsel) on Plaintiff's friend, confidante and former-Daily Mail journalist, Sharon Churcher for a deposition to occur in New York on June 16.  Menninger Decl. Ex. N.  On June 15, the day before her scheduled deposition, Ms. Churcher's counsel filed a Motion to Quash.  That motion is to be heard by this Court on June 23.  Should the Court deny the Motion to Quash, Ms. Churcher's deposition would need to be re-scheduled.  Dates in early July would be sufficient for counsel.

Similarly, Ms. Maxwell is filing simultaneously with this Motion a request to re-open the deposition of Plaintiff on the grounds, *inter alia*, that she failed to provide numerous documents (ordered to be produced by this Court) until <u>after</u> her deposition (and still has failed to provide others)[15], she materially changed substantive and significant portions of her testimony after the

---

[15] For example, Ms. Giuffre testified that she had approximately 8 boxes, which included documents pertinent to this case, which she shipped from her home in Colorado to Australia in October 2015 to an undisclosed location (at her deposition, she would not testify where in Australia the boxes were located), and that the boxes had not been searched for responsive documents.  Menninger Decl. Ex. D.  In repeated conferrals following her deposition, on May 19, her counsel finally agreed to secure the boxes.  As of today's date, the boxes still have not arrived,

fact through her *errata* sheet on May 31, and ████████████████████

████████████████████████████████████████████████████

████████████████████████████ *See, e g.,* Menninger Decl. Ex. D, referenced *supra*.  As

with Ms. Churcher's deposition, the re-opened deposition of Plaintiff could occur in early July,

assuming she provides the Court-ordered documents timely.

## VI.  ALTERNATIVELY, ALL OTHER DEADLINES NEED TO BE EXTENDED

Finally, Plaintiff glibly asserts that she seeks only 30 extra days to conduct her

depositions, but does not want any other dates moved.  Of course, that inures to her benefit and

to Ms. Maxwell's detriment.  July already was scheduled for expert disclosures (Plaintiff has yet

to disclose her retained expert, and thus the defense has been unable to secure a rebuttal expert).

Likewise, should any new information be learned in these late depositions that requires rebuttal,

Ms. Maxwell will be unable to secure such evidence on a timely basis.

Further, summary judgment motions are due in this case on August 3.  If depositions

continue throughout August, Ms. Maxwell's ability to include any late-learned information in her

anticipated motion will be jeopardized.  Finally, the trial is scheduled for October, continuing

fact discovery until August seriously impinges on Ms. Maxwell's ability to prepare for that trial,

including preparing witnesses, exhibits and testimony.

WHEREFORE, Ms. Maxwell requests that the Motion to Extend the Deadline to

Complete Depositions be denied; <u>alternatively</u>, if the deadline is extended for any of the listed

six witnesses, Ms. Maxwell requests that the dates for expert discovery, dispositive motions and

the trial date by extended as well.  Further, Ms. Maxwell requests sanctions for Plaintiff's

failures to comply with the notice provisions of Rule 45(a)(4).

---

apparently having been put on the slow boat to the US.  One can only imagine where on the high seas the boxes may be located now.  Of course, there were many alternative methods to search the boxes.  The unknown custodians in Australia for example could have simply looked in them to see whether they contained any responsive documents.

Dated: June 20, 2016.

                                      Respectfully submitted,


                                        */s/ Laura A. Menninger*
                                        Laura A. Menninger (LM-1374)
                                        Jeffrey S. Pagliuca (*pro hac vice*)
                                        HADDON, MORGAN AND FOREMAN, P.C.
                                        150 East 10th Avenue
                                        Denver, CO 80203
                                        Phone:   303.831.7364
                                        Fax:       303.832.2628
                                        lmenninger@hmflaw.com

                                        *Attorneys for Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on June 20, 2016, I electronically served this *DEFENDANT'S COMBINED MEMORANDUM OF LAW IN OPPOSITION TO EXTENDING DEADLINE TO COMPLETE DEPOSITIONS AND MOTION FOR SANCTIONS FOR VIOLATION OF RULE 45* via ECF on the following:

Sigrid S. McCawley
Meridith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

J. Stanley Pottinger
49 Twin Lakes Rd.
South Salem, NY 10590
StanPottinger@aol.com

*/s/ Nicole Simmons*
Nicole Simmons