UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
-----------------------------------------------------------------x

VIRGINIA GIUFFRE,

            Plaintiff,

    - against -                     Index No. 15 Civ. 7433-RWS

GHISLAINE MAXWELL,           **ECF CASE**

            Defendant.
-----------------------------------------------------------------x

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF NON-PARTY SHARON CHURCHER'S MOTION TO QUASH SUBPOENA

DAVIS WRIGHT TREMAINE LLP
Laura R. Handman
Eric J. Feder
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Telephone: (212) 489-8230
Facsimile:  (212) 489-8340
laurahandman@dwt.com
ericfeder@dwt.com

*Attorneys for Non-Party Sharon Churcher*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    MAXWELL HAS FAILED TO SHOW THAT CHURCHER WAS NOT ENGAGED IN PROTECTED NEWSGATHERING ACTIVITY ......................... 3

        A.    The "Primary Relationship" Between Churcher and Plaintiff Was Reporter and Source .............................................................................. 3

        B.    The Record Does Not Support Maxwell's Contention that Churcher Is a "Fact Witness," and Not a Journalist ......................................................... 6

    II.    MAXWELL HAS NOT MADE A CLEAR SHOWING TO OVERCOME THE PROTECTIONS OF THE SHIELD LAW ..................................................... 9

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re ABC*,
  189 Misc. 2d 805, 735 N.Y.S.2d 919 (Sup. Ct. N.Y. Cnty. 2001) ...........................................10

*Application of CBS Inc.*, 232 A.D.2d 291, 648 N.Y.S.2d 443 (1996) .............................................7

*In re Application to Quash Subpoena to NBC*,
  79 F.3d 346 (2d Cir. 1996)......................................................................................................2

*Baker v. Goldman Sachs & Co.*,
  669 F.3d 105 (2d Cir. 2012).....................................................................................................5

*Beach v. Shanley*,
  62 N.Y.2d 241, 465 N.E.2d 304 (1984)....................................................................................7

*Brown & Williamson Tobacco Corp. v. Wigand*,
  No. 101678/96, 1996 WL 350827 (N.Y. Sup. Ct. Feb. 28, 1996).............................................9

*Flynn v. NYP Holdings, Inc.*,
  235 A.D.2d 907, 652 N.Y.S.2d 833 (3d Dep't 1997) ................................................................2

*Gonzales v. NBC*,
  194 F.3d 29 (2d Cir. 1998).....................................................................................................10

*Guice-Mills v. Forbes*,
  12 Misc. 3d 852, 819 N.Y.S.2d 432 (Sup. Ct. N.Y. Cnty. 2006) ..............................................9

*In re McCray, Richardson, Santana, Wise, Salaam Litig.*,
  991 F. Supp. 2d 464 (S.D.N.Y. 2013)......................................................................................4

*People v. Iannaccone*,
  112 Misc.2d 1057, 1059, 447 N.Y.S.2d 996, 997 (Sup. Ct. N.Y. Cty. 1982) ...........................2

*United States v. Marcos*,
  No. 87 CR. 598 JFK, 1990 WL 74521 (S.D.N.Y. June 1, 1990).............................................5

*von Bulow v. von Bulow*,
  811 F.2d 136, 145 (2d Cir. 1987)....................................................................................3, 4, 5

**Other Authorities**

Fed. R. Civ. P. 45.............................................................................................................................1

Non-party Sharon Churcher ("Churcher"), through her counsel, respectfully submits this Reply Memorandum of Law in Further Support of her motion under Fed. R. Civ. P. 45 to quash the Supoena served by Defendant Ghislaine Maxwell (the "Motion").[1]

## PRELIMINARY STATEMENT

Nothing in Maxwell's filings rebuts the core, sworn statement from Sharon Churcher that, "at all times," when she was in communication with Plaintiff Virginia Giuffre (referred to as "Virginia Roberts") or her agents, Churcher "was acting in [her] capacity as a journalist with Ms. Roberts (or her agents) as [her] source[s], always with the ultimate goal of gathering information to disseminate to the public as news." Churcher Decl. ¶ 10. Maxwell attaches a series of email communications between Churcher and Plaintiff to her response to the Motion (the "Response") in an effort to show that Churcher was not gathering news, but was instead serving as a "friend and advisor to Plaintiff," in part to aid Plaintiff in her efforts to publish a book about her experiences with Jeffrey Epstein. Response at 1. But the fact that not every exchange between the two was an on-the-record interview does not transform the fundamental nature of the relationship from what it plainly is: a reporter and a source. Nor can the fact that Churcher may have at times conveyed "advice" on certain issues (which were directly related to newsgathering in any event) obscure the reality that Churcher, indisputably a professional journalist, published articles in numerous mass media publications based on information provided to her by Plaintiff throughout the period in which those communications took place.

In her Response, Maxwell pulls individual fragments of the communications out of context to try to show that Churcher was acting as a "fact witness," and not a journalist. But the inferences she draws are not reasonable—and certainly not sufficient to overcome the indisputable fact that Churcher was a reporter engaged in gathering news to publish.

Because the Shield Law applies, confidential information is absolutely protected and Maxwell must make a "clear showing" of all of the elements to overcome the protection for non-

---

[1] Defined, capitalized terms bear the same meanings as in Churcher's Memorandum of Law in Support of the Motion (Dkt. No. 218).

confidential information.  Section 79-h.  As set forth in Churcher's opening brief and at oral argument, Maxwell has not made this showing.  Even Maxwell's far-fetched accusations of Churcher's involvement in Plaintiff's alleged "fabrication and expansion of claims" (Response at 14) cannot establish that Maxwell's defense "virtually rises or falls" with the information sought, particularly when the degree to which Plaintiff's story did or did not "change" over time is evident already from the public record.  *In re Application to Quash Subpoena to NBC* ["*Graco*"], 79 F.3d 346, 351, 353 (2d Cir. 1996).  And as recent developments in the motion practice for the case have made clear, Maxwell has far from exhausted all available sources for the information she seeks from Churcher, a professional journalist.  Maxwell also continues to understate the scope of protection for confidential information.  That protection is not limited to the identities of confidential sources, but any information conveyed in confidence—even if that source is not anonymous or also conveyed non-confidential information.  *See* Section 79-h(b).

In sum, Maxwell has not demonstrated that this Subpoena is anything more than a fishing expedition based on a vague hope that information that Churcher gathered in the course of reporting news stories will somehow cast doubt on Plaintiff's claims.  The Shield Law protects such information and the Subpoena should be quashed.

## ARGUMENT

Notwithstanding the assertions of Maxwell's counsel that she is not seeking newsgathering materials protected by the Shield Law, the Response makes unambiguously clear that that is precisely what Maxwell is seeking.  Maxwell's Response states several times that what she primarily seeks are "interview notes, recordings, memos and other documentation in Churcher's possession regarding Plaintiff."  Response at 14.  These are quintessential newsgathering materials that fall squarely within the Shield Law's protection.  *See, e.g., Flynn v. NYP Holdings, Inc.*, 235 A.D.2d 907, 652 N.Y.S.2d 833 (3d Dep't 1997) (affirming quashing of subpoena for reporter's "research files" and "reporter's notes"); *People v. Iannaccone*, 112 Misc.2d 1057, 1059, 447 N.Y.S.2d 996, 997 (Sup. Ct. N.Y. Cty. 1982) (discussing application of Shield Law to "unpublished notes").

2

In her Response, Maxwell raises two arguments why the information she seeks is not protected from disclosure: (1) that the Shield Law does not apply at all because, at some point, Churcher ceased to be a reporter with respect to the Plaintiff; and (2) to the extent the Shield Law applies, Maxwell has met the three elements to overcome the qualified privilege for non-confidential materials. Neither argument holds up to scrutiny.

I.  **MAXWELL HAS FAILED TO SHOW THAT CHURCHER WAS NOT ENGAGED IN PROTECTED NEWSGATHERING ACTIVITY**

   A.  **The "Primary Relationship" Between Churcher and Plaintiff Was Reporter and Source**

The Second Circuit instructs that, in determining whether the reporter's privilege applies, the Court should look to the nature of the "primary relationship between" the respective parties to determine whether it "ha[s] as its basis the intent to disseminate the information to the public garnered from that relationship." *von Bulow v. von Bulow*, 811 F.2d 136, 145 (2d Cir. 1987). That intent must "exist[] at the inception of the newsgathering process." *Id.* at 144. Here, there can be no dispute that the "primary relationship" between Churcher and Plaintiff was that of a professional reporter gathering information from a source for news articles that were, in fact, subsequently published under Churcher's byline over the next several years.

In *von Bulow*, the court held that the reporter's privilege did not apply to notes that a woman, Andrea Reynolds, took while watching the criminal trial of Claus von Bulow nor to investigative reports she had commissioned about von Bulow's wife's children. Although Reynolds had been in negotiations at various points to publish articles and was tentatively putting together a manuscript of a book about the trial based on the information she had gathered, the court rejected her reporter's privilege argument because she did not have "the intent to disseminate information to the public" at the time that the information was gathered. *Id.* at 145. On the contrary, Reynolds, an "intimate friend" of von Bulow's, had stated that her "primary concern" in commissioning the reports was "vindicating Claus von Bulow" and "[her]

3

own peace of mind." *Id.* Even if she later decided to collect the information and publish it in a book, her intent at the time she gathered the information was not to publish it.

Subsequent decisions in this district have clarified that "the relevant time frame is not when *any* fact gathering for the subject of the subpoena began, but *when the information sought by the subpoena at issue was gathered*." *In re McCray, Richardson, Santana, Wise, Salaam Litig.* ["*McCray*"], 991 F. Supp. 2d 464, 467 (S.D.N.Y. 2013). In *McCray*, the City of New York sought outtakes from the making of a documentary on the "Central Park Five" case in connection with the civil lawsuit by the individuals who were wrongfully convicted in that case. The City argued that the privilege did not apply because the filmmakers first conducted interviews with one of the plaintiffs for a college thesis, and had gathered other information when she was briefly employed as a paralegal for the plaintiffs' counsel's former law firm. *Id.*

The district court affirmed the magistrate's quashing the subpoena. The court explained that, whereas in *von Bulow* all of the information at issue had been gathered by Reynolds "before she formed any intent to distribute information to the public," the "subpoenaed information in [*McCray*], namely the content of the interviews, was collected *after* [the filmmakers] decided to make a film that [they] would distribute to the public." *Id.* (emphasis added here). The court therefore rejected the City's attempt to use the fact that one of the filmmakers had *previously* gathered information unconnected to newsgathering as a backdoor to obtain material that clearly was obtained in the course of classic newsgathering.[2]

This is an even less close case. Maxwell cannot dispute that Churcher is, first and foremost, a professional journalist; that her intent from the very beginning of her relationship with the Plaintiff was to gather information to publish news stories; and that she did, in fact,

---

[2] The court further distinguished *von Bulow* because "[a]n interest in investigating and reporting on a matter, which stems from a previously established but attenuated professional relationship, is not comparable to a personal project motivated by the vindication of intimate friends." *McCray*, 991 F. Supp. 2d at 468. The court also explained that "many investigative journalists may have previous familiarity with a subject before beginning their work on a project," but that "[c]ourts would undermine the purpose of the reporter's privilege and severely curtail its applicability if the standard hinged on whether the reporter had previously researched the subject of the subpoena for a high school or college paper, and whether she intended to disseminate information to the public at that early stage." *Id.*

4

publish many news stories based on the information she learned from Plaintiff and other sources over the next several years. In other words, the "*primary relationship*" between them has always "ha[d] at its basis the intent to disseminate the information to the public garnered from that relationship." *von Bulow*, 811 F.2d at 145 (emphasis added).

The fact not every isolated exchange within that relationship took the form of the source conveying specific news to the reporter does not alter the fundamental nature of the relationship—and certainly does not permit Maxwell to access pure newsgathering materials such as "interview notes." Successful journalists must cultivate extensive networks of sources, and communicate with them regularly on a variety of topics. *See, e.g., United States v. Marcos*, No. 87 CR. 598 JFK, 1990 WL 74521, at *2 (S.D.N.Y. June 1, 1990) ("The underpinning of [the reporter's privilege] lies in the recognition that effective gathering of newsworthy information in great measure relies upon the reporter's ability to secure the trust of news sources."). Indeed, frequent, often informal communication with sources, even if not for the immediate purpose of gathering information for a specific article, is an integral part of the overall newsgathering process.[3] Accordingly, the Shield Law does not narrowly apply only to the specific exchanges where the source conveys "news." Instead, as the Second Circuit has held, the Shield law protects journalists from "inquiries into the newsgathering process," as a whole. *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 109 (2d Cir. 2012) (holding that Shield Law applied to "unpublished details of the newsgathering process," such as who made calls and interviewed particular sources, techniques for the reporters' investigation, and the backgrounds of the co-authors and editorial staff).

---

[3] *See generally* Beth Winegarner, *5 tips for journalists who want to do a better job of cultivating sources*, Poynter (June 8, 2012), http://www.poynter.org/2012/5-tips-for-journalists-who-want-to-do-a-better-job-of-cultivating-sources/176219/ ("Sources are one of a reporter's biggest assets. If you cover a regular beat, you'll find yourself talking to some of the same people pretty often. Over time, if you forge relationships with the right sources, you'll find that they can become the gateway to career-making scoops. … If you find someone you think will be a goldmine of information, check in with them regularly, even if you don't need to interview them. This is another good time for small talk, and to ask if there have been any developments on a topic you've discussed before."). (Churcher does not cite this article for the truth of what is stated, but rather as an example reflecting this common sense conventional wisdom.)

In any event, the e-mails that Maxwell submits to demonstrate that Churcher was not acting as a journalist, in fact, show that even as she was consulting with the Plaintiff on seemingly separate topics, her overarching intent remained newsgathering.



Because Churcher was (and is) a journalist using Plaintiff as a source, Maxwell should not be permitted to exploit her access to Plaintiff's communications—that show, unsurprisingly, that not every exchange with Churcher involved immediate provision of publishable information—to make an end-run around the clear protections of the Shield Law.

**B.    The Record Does Not Support Maxwell's Contention that Churcher Is a "Fact Witness," and Not a Journalist**

As an initial matter, Maxwell cites older decisions standing for the principle that the reporter's privilege "does not exist if the newsman is called on to testify what he personally observed." Response at 2-3. But those decisions predate the amendment of the Shield Law to apply to non-confidential information. And more recent New York appellate decisions make

6

clear that the Shield Law does not even "except situations where the reporter observes a *criminal* act." *Beach v. Shanley*, 62 N.Y.2d 241, 251-52, 465 N.E.2d 304 (1984) (emphasis added); *see also Application of CBS Inc.*, 232 A.D.2d 291, 292, 648 N.Y.S.2d 443, 444 (1996). Thus, the notion that Churcher may be compelled to testify simply because she "observed" firsthand some of the events about which Maxwell is inquiring in this *civil* case is not well founded.

In any event, the various accusations of Churcher being "personally involved in changing … stories" and Plaintiff's alleged "fabrication and expansion of claims" are not supported by the record. Response at 1, 14.



---

[5] *See generally* Edward Klein, *The Trouble with Andrew*, Vanity Fair (August 2011), *available at* http://www.vanityfair.com/news/2011/08/prince-andrew-201108 ("British libel laws are among the most stringent in the world, so when *The Mail on Sunday* and other newspapers ran the story about Andrew's rendezvous with Virginia Roberts in Ghislaine Maxwell's London home, they carried strong disclaimers saying there was no suggestion of any sexual contact between Prince Andrew and Roberts.").

[6] ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Churcher Decl. Ex. 5 ("The Palace has emphatically denied that the Prince has had relations with underage girls. Now, thanks to the court documents Miss Roberts lodged in Florida last week, The Mail on Sunday can publish the most complete story yet of how this young woman was exploited by Epstein's shuttered world of seedy sex and influence. … While fragments of her testimony to us were reproduced last week, only now can we present her comprehensive account with previously unpublished material.").



Finally, Maxwell's conclusory assertion that "[n]one of the communications" between Churcher and Plaintiff's attorneys/agents or law enforcement "are in a newsgathering capacity," Response at 8, is belied by Churcher's clear statements to the contrary and by the fact that individuals in those categories are quoted in the articles themselves (both by name and anonymously) as sources. *See* Churcher Decl. ¶¶ 8-10, and Exs. 2, 3, & 8.[7]

---

[7] Maxwell suggests that Churcher providing information to law enforcement results in "waiver of any protection of the Shield Law." But the case she cites also states that, "[w]ere this an issue of whether or not a journalist waives

8

In sum, Maxwell utterly fails to support her contention that "Churcher was not engaged in the news-gathering process," and the very fact that Churcher did, in fact, gather and publish news alone rebuts this claim. Because Churcher indisputably *was* engaged in the news-gathering process, the Shield Law applies.

## II. MAXWELL HAS NOT MADE A CLEAR SHOWING TO OVERCOME THE PROTECTIONS OF THE SHIELD LAW

As set forth in Churcher's opening brief, Maxwell cannot make the "clear showing" necessary to overcome the Shield Law protections for non-confidential newsgathering material. The unredacted Response does not alter this conclusion. Maxwell argues that "[t]he information sought from Churcher is highly material in proving that each time [Plaintiff's] story is told, new salacious detail are added." Response at 11; *see also id.* at 15 (arguing that the information is "critical to establishing" that fact). But Churcher's newsgathering materials (and testimony) are not needed to "prove" an assertion about the allegedly changing nature of a *public* "story." Similarly, to the extent that the Joinder Motion is inconsistent with published articles by Churcher, that would be apparent from the face of the articles themselves, and would not justify invading the Shield Law-protected newsgathering process.[8] And Maxwell's argument that Churcher's testimony is "critical or necessary" because it is "relevant to Plaintiff's credibility," which is "the central issue in the case" simply proves too much. In almost any civil lawsuit, the

---

the Shield Law by fact checking sources to ascertain the veracity of information used in news reports prior to publication, this court would not find waiver, as a journalist has an obligation to check their sources prior to publishing an article. Anything less would likely render them liable in a court of law." *Guice-Mills v. Forbes*, 12 Misc. 3d 852, 857, 819 N.Y.S.2d 432 (Sup. Ct. N.Y. Cnty. 2006). And to the extent that waiver occurs as to any particular piece of information, it is only as to "the specific information" that was disclosed. Shield Law 79-h(g); *Brown & Williamson Tobacco Corp. v. Wigand*, No. 101678/96, 1996 WL 350827, at *6 (N.Y. Sup. Ct. Feb. 28, 1996). Maxwell does not articulate <u>any</u> specific information for which protection was waived, and certainly has not established that all of Churcher's newsgathering activities were disclosed and are therefore unprotected.

[8] [redacted]

9

credibility of a party or witness will be a "central issue"—all the more so in a libel case, where truth or falsity of the underlying statements is at issue. Yet Maxwell cannot point to any authority for a wholesale "libel exception"—let alone a "plaintiff's credibility exception" to the Shield Law. *Cf. In re ABC,* 189 Misc. 2d 805, 808, 735 N.Y.S.2d 919 (Sup. Ct. N.Y. Cnty. 2001) ("[T]he privilege may yield only when the party seeking the material can define the specific issue, other than general credibility, as to which the sought-after interview provides truly necessary proof." (citing *U.S. v. Burke*, 700 F.2d 70 (2d Cir. 1983)).

Finally, even if the information sought were as "critical" as Maxwell contends, she has not yet established that she has turned to Churcher "only as a *last resort*." *Id.* For example, as subsequent motion practice shows, Maxwell is pressing to reopen Plaintiff's deposition and to obtain her emails directly from the internet service providers, and is still awaiting further document production from Plaintiff. *See* Dkt. Nos. 205, 207, 230; Minute Entry, June 23, 2016. There are also outstanding subpoenas to Plaintiff's counsel with motions to quash pending (*see* 2:16-mc-00602 (D. Utah)), and the Court already denied Jeffrey Epstein's motion to quash (Dkt. No. 252). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ There thus remain numerous "alternative sources" (Section 79-h(c)) for the information Maxwell seeks. She may not conscript Churcher as her "investigative arm" in the meantime. *Gonzales v. NBC*, 194 F.3d 29, 35 (2d Cir. 1998).

## CONCLUSION

For the foregoing reasons, Ms. Churcher respectfully requests that her motion to quash Ms. Maxwell's Subpoena be granted.

Dated: New York, New York
July 5, 2016

                                              Respectfully submitted,

                                              DAVIS WRIGHT TREMAINE LLP

                                              By: /s/  Eric J. Feder

       Laura R. Handman
       Eric J. Feder

1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Tel:    (212) 489-8230
Fax:   (212) 489-8340
laurahandman@dwt.com
ericfeder@dwt.com

*Attorneys for Non-Party Sharon Churcher*