UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIRGINIA GIUFFRE,

                    Plaintiff,

         -against-

GHISLAINE MAXWELL,

                    Defendant.

Index No. 15 Civ. 7433 (RWS)

**DECLARATION OF
ALAN M. DERSHOWITZ**

 

      **ALAN M. DERSHOWITZ** declares under penalty of perjury that the following
is true and correct:

      1.     I am a Professor of Law, Emeritus, at Harvard Law School, where I taught
criminal law, legal ethics and other subjects for 50 years.  As a criminal defense attorney, I have
also represented numerous individuals accused of crimes over the course of my career.  I am
personally familiar with the facts set forth in this declaration.

      2.     I submit this Declaration in support of my motion for permissive intervention
under Federal Rule of Civil Procedure 24(b), and to unseal certain judicial documents, or
alternatively to modify the stipulated Protective Order in this.  The documents I am seeking
relate directly to me.  The plaintiff in this case, Virginia Roberts Giuffre, through her counsel
and in publicly-filed declarations, has accused me of having sex with her and other young girls.
The allegation is utterly false—a fabrication from start to finish—but, because I am a
well-known law professor and lawyer, it has been widely covered and repeated in the press, both
here and around the world.  See ¶¶ 13-14, 26-27, *infra*.

3. In this application, I am seeking modest and narrowly tailored relief: an Order unsealing three documents that were filed with the Court in this case. Specifically, I seek to unseal ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████ In the alternative, I seek an Order lifting the stipulated Protective Order with respect to these three documents (the "Requested Documents"). ████████ are attached hereto collectively as Exhibit A, ██████████ is attached hereto as Exhibit B, and ████████████ is attached hereto as Exhibit M. In accordance with the Protective Order, I am filing the Requested Documents under seal, and redacting all substantive references to them, pending disposition of this application. Although I have erred on the side of strict confidentiality to avoid any semblance of violating the Court's Protective Order, I of course do not believe that these materials should remain sealed permanently. In the event the Court grants my application, I would also request that the Court unseal the Requested Documents along with all of the references to them in my motion papers that are being redacted from the public docket.

4. ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

5.     I have been a lawyer and law professor in the public eye for more than 50 years, and I have been happily married for 30 years.  Even as I have taken on unpopular causes and asserted controversial positions, I have always enjoyed a deserved reputation for rectitude in my personal life.  The false allegations lodged by Ms. Giuffre and her lawyers have sullied my reputation unfairly.  At nearly 78 years of age, I am determined to restore my reputation ▮

**My Representation of Jeffrey Epstein**

6.     Jeffrey Epstein, a financier who was accused of soliciting sex workers and having inappropriate sexual conduct with underage girls, was a client of mine.  I first was introduced to Mr. Epstein by a friend, Lynn Forester de Rothschild, in 1997.  Over the years, I attended a number of academic events where he and many others—including distinguished academics, business people, and others—were present.  At no time—either then or after I became his lawyer—did I ever see Mr. Epstein in the presence of underage girls, nor was I aware of any allegation of improper sexual conduct on his part prior to being retained as one of his lawyers.

7.     Mr. Epstein retained me as a criminal defense lawyer towards the end of 2006.  I was hired as part of a team of lawyers that included Roy Black, Gerald Lefcourt, Kenneth Starr, Martin Weinberg, and several others.  In 2008, Mr. Epstein pleaded guilty to certain offenses involving sex with minors.

8.     Virginia Roberts Giuffre, the plaintiff in this action, has alleged that she was one of Mr. Epstein's victims.  Ms. Giuffre has claimed that she was held as a "sex slave" and trafficked by Mr. Epstein, and that a number of men associated with Mr. Epstein had sexual

encounters with her that Mr. Epstein facilitated. Mr. Epstein's criminal conviction involved his conduct with respect to other girls; he was neither charged nor convicted in connection with his conduct toward Ms. Giuffre.

9.     Years after Mr. Epstein's guilty plea, as detailed below, Ms. Giuffre falsely claimed that I was one of the men to whom Mr. Epstein trafficked her. The actions that Ms. Giuffre attributes to me did not occur.  Indeed, they could not have:  my travel, work, and cell phone records, together with other documentary evidence, prove that I could not have been in locations in which she claims to have had sexual contact with me, including Little St. James, New Mexico, Mr. Epstein's home in Palm Beach, and Mr. Epstein's private jet.  These records and other evidence prove that I was not at any of those locations during the years Ms. Giuffre says she was with Mr. Epstein.

**2006-2011:  Ms. Giuffre Does <u>Not</u> Accuse Me of Sexual Misconduct In Her Initial Accounts**

10.     The first time Ms. Giuffre publicly accused me of sexual misconduct was in December 2014—by her own account, more than 12 years after her last encounter with Jeffrey Epstein.  In the intervening period, of course, a number of important things happened:  Ms. Giuffre had sued Mr. Epstein; she had been paid to sell her story to the media; she had drafted and sought to publish a "tell-all" memoir[1]; and Mr. Epstein had been investigated by law enforcement, charged, and pled guilty to offenses related to sex with minors.  I discuss these and related circumstances because they reflect on Ms. Giuffre's lack of credibility when it comes to her allegations against me, and on the need for me to have unencumbered access to and use of the Requested Documents as I seek to restore my personal and professional reputation.

---

[1] *See* Richard Shears & Martin Robinson, *Prince Andrew's 'sex slave' Virginia Roberts 'is writing a tell-all memoir about their alleged trysts at home of US billionaire Jeffrey Epstein,'* DAILYMAIL.COM, Jan. 6, 2015 http://www.dailymail.co.uk/news/article-2897615/Prince-Andrew-s-sex-slave-Virginia-Roberts-writing-tell-memoir.html.

11.     During the criminal investigation of Mr. Epstein, which spanned the years 2006 through 2008, Ms. Giuffre was interviewed by law enforcement and provided details about Mr. Epstein's alleged criminal acts.  At the time, I was one of Mr. Epstein's lawyers.  Ms. Giuffre did not allege to law enforcement that I engaged in sexual misconduct of any sort.  According to the Assistant United States Attorney in charge of negotiating Mr. Epstein's plea arrangement, while he was at the U.S. Attorney's Office, Ms. Giuffre never mentioned me as having been involved in any sexual misconduct, much less suggested that she had been trafficked to me by Mr. Epstein.  The Assistant United States Attorney told me and my lawyer that, had such an allegation been lodged, the Government would not have permitted me to continue to represent Jeffrey Epstein, nor would I have been ethically permitted to do so.

12.     In May 2009, Ms. Roberts filed a civil suit against Mr. Epstein, in which she alleged that Mr. Epstein required that she "be sexually exploited by Defendant's adult male peers, including royalty, politicians, academicians, businessmen, and/or other professional and personal acquaintances."  Again, the 2009 lawsuit did not mention me as an alleged perpetrator. *See* Ex. C (Complaint, *Jane Doe No. 102 v. Epstein*, No. 09-80656 (S.D. Fla.)).

13.     In or around early 2011, Sharon Churcher, a reporter for the British tabloid *The Daily Mail*, contacted Ms. Giuffre and then traveled to Australia to meet with her in person. (These contacts, and the existence of emails between Ms. Giuffre and Ms. Churcher in 2011, were discussed and disclosed in documents publicly filed in this case, *see, e.g.*, ECF Nos. 216-218, as part of the motion to quash Ms. Churcher's deposition subpoena.)  Ultimately, the *Daily Mail* published a series of stories, under Ms. Churcher's by-line, about Ms. Giuffre's involvement with Mr. Epstein.  Nowhere did the Churcher stories allege that I had engaged in

sexual misconduct.  As far as the published stories reveal, Ms. Giuffre never mentioned me in any of the interviews as someone with whom she had had sex.

14. ██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

██████████

**December 2014 Forward:  Ms. Giuffre and Her Lawyers Accuse Me**

15. Ms. Giuffre first made accusations against me after she retained Bradley Edwards and Paul Cassell as her attorneys.

16. In December 2014, Ms. Giuffre, represented by Messrs. Edwards and Cassell, filed a motion to join an action that had been initially filed in the United States District Court for the Southern District of Florida in 2008 by one of Mr. Epstein's alleged victims, who was designated as "Jane Doe." *Jane Doe #1 v. United States (Doe v. United States)*, No. 08-80736-CIV-MARRA (S.D. Fla.).  That action (the "CVRA Action"), which was brought under the federal Crime Victims' Rights Act, sought to challenge federal prosecutors' handling of plea negotiations with Mr. Epstein.

17. Between late 2014 and early 2015, Ms. Giuffre's attorneys—two of the same lawyers who represent her in this case—alleged in court filings that I had had sex with Ms. Giuffre on numerous occasions while she was a minor, including in Florida, on Mr. Epstein's private planes, in the British Virgin Islands, in New Mexico, and in New York.  They did not offer to prove these allegations or offer me an opportunity to dispute them; they simply inserted

6

them in the pleadings. While Ms. Giuffre's attorneys could have made the filings under seal (as much of the case file is sealed already), they elected to make the accusations against me part of the public record, intending, I believe, that they be widely reported.

18.     The allegations lodged against me were detailed, horrific, and utterly false. In two further court filings in the CVRA Action in or around early 2015, Ms. Giuffre provided perjurious declarations alleging that I had sex with her at least six times while when she was between the ages of sixteen and nineteen. She alleged that the sex occurred in New Mexico, New York, on Little St. James Island, in Mr. Epstein's house in Palm Beach, and on a private plane. She also falsely alleged that I had sex with other underage girls. Finally, Ms. Giuffre claimed that I was so comfortable with the sex that was going on that I would chat with Epstein while she was giving him oral sex. All of this is categorically false.[2]

19.     In April 2015, U.S. District Judge Kenneth A. Marra, the judge presiding over the CVRA Action, struck the allegations against me from Ms. Giuffre's filings under to Federal Rule of Civil Procedure 12(f). Judge Marra called the allegations against me "immaterial and impertinent," and characterized "striking the lurid details from Petitioners' submissions" as a "sanction." *See* Ex. D (Order Denying Petitioners' Motion to Join Under Rule 21 and Motion to Amend Under Rule 15, Apr. 7, 2015, *Doe v. United States*, ECF No. 324).

20.     Since she first accused me of sexual misconduct in her filings in the CVRA Action, Ms. Giuffre has stood by these accusations against me and repeated them numerous times.

---

[2] Even some of Ms. Giuffre's factual allegations concerning time she spent with Mr. Epstein have been undermined by the discovery of contrary facts. At one point, she asserted that she had been with Mr. Epstein before she turned sixteen, having met him after her father began working at the Mar-a-Lago Club in Palm Beach. Later, it emerged that her father did not start working at the club until well after her sixteenth birthday.

**2015-2016: The Defamation Case Brought by Ms. Giuffre's Lawyers Against Me**

21.     Having been falsely accused, in public documents, of sexual misconduct, I publicly defended myself, including by asserting that the lawyers representing Ms. Giuffre had not properly investigated her (false) allegations against me.  In January 2015, Ms. Giuffre's attorneys—Mr. Edwards and Mr. Cassell, two of the same lawyers who are representing her in the case at bar—sued me for defamation in a case styled as *Edwards v. Dershowitz*, Case No. CACE 15-000072 (Cir. Ct., Broward Cnty., Fla.)  The lawyers alleged that I had defamed them by publicly stating that it was improper and unethical for them, as officers of the court, to accuse me of sexual misconduct in public court filings without having appropriately investigated Ms. Giuffre's allegations.  I countersued, alleging that their claims about my supposed sexual encounters with Ms. Giuffre were defamatory.

22.     During discovery in the *Edwards v, Dershowitz* case, I subpoenaed Ms. Giuffre, requesting that she produce, among other items, "[a]ll statements, written or recorded, which you have provided to anyone that reference by name, Alan M. Dershowitz."  *See* Ex. E (Subpoena to Attend and Produce, Req. No. 7).  Ms. Giuffre objected to this request and refused to comply, ultimately moving to quash the subpoena.  *See* Ex. F (Motion to Quash) at 7-9 & n.2.  On November 4, 2015, the judge in *Edwards v. Dershowitz* granted certain aspects of Ms. Giuffre's motion to quash, but otherwise denied it, including with respect to Request 7.  *See* Ex. N (Email Concerning Court Orders, *Edwards v. Dershowitz*, Case No. CACE 15-000072 (Cir. Ct., Broward Cnty., Fla.)), Nov. 4, 2015).

23.     ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████ ██ ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

24.     In April 2016, I settled the defamation lawsuit with Mr. Cassell and Mr. Edwards. Pursuant to the settlement agreement, the parties released a joint statement in which Messrs. Cassell and Edwards admitted that it was a mistake to accuse me of sexual misconduct in their filings in the CVRA Action and withdrew those allegations. *See* Ex. H at 3 (Joint Statement).

25.     Also in April 2016, I released the results of a thorough investigation led by former FBI Director and federal judge Louis Freeh, which found that "the totality of the evidence" "refutes the allegations made against" me by Ms. Giuffre. *See* Ex. I (Freeh Statement).



**Ms. Giuffre and Her Lawyers "Stand By" Her False Allegations Against Me – Even After the Settlement of *Edwards v. Dershowitz***

26.     Despite the settlement in the defamation case, Judge Marra's order striking the allegations in the CVRA Action, and the results of Judge Freeh's investigation, Ms. Giuffre and her counsel have republished Ms. Giuffre's allegations against me.  On April 8, 2016, just after the settlement of the *Edwards* case, Mr. Cassell and Mr. Edwards made a court filing that stated that Ms. Giuffre "reaffirms" her allegations against me, and that their mistake in filing those allegations in the CVRA Action was merely "tactical."  *See* Ex. J (Notice of Withdrawal).  David Boies, another of Ms. Giuffre's attorneys in this case, was described as saying that Ms. Giuffre "stands by her allegations" against me.  *See* Casey Sullivan, *Alan Dershowitz Extends Truce Offer to David Boies Amid Bitter Feud*, BLOOMBERG LAW (Apr. 11, 2016), https://bol.bna.com/alan-dershowitz-extends-truce-offer-to-david-boies-amid-bitter-feud/.  Reckless statements like these—which falsely imply that I am guilty of sexual misconduct—are highly injurious to my reputation, especially when they come from otherwise-credible lawyers. [5]

27.     The claim that I engaged in sexual misconduct with Ms. Giuffre has also continued to receive attention in the press, despite the settlement and the joint statement released as a result thereof.  *See* Ex. K (Compendium of News Stories).  I am aware of at least two books that have been or will soon be published that discuss the allegations against me; one of these books, advertised in a press release just this week as "expos[ing] one of the most sordid human rights violation stories in the history of the United States," is being marketed as following "[o]n the heels of the sensational Alan Dershowitz defamation settlement case."  Press Release, *"TrafficKing": Conchita Sarnoff's Human Trafficking Book Is Now Available*, NEWSWIRE.COM ,

---

[5] I have compiled records of my whereabouts for the years in question, and these records show that I could not have been in the places that Ms. Giuffre alleges I was at the times she alleges.

Aug. 9, 2016, https://www.newswire.com/news/conchita-sarnoffs-book-trafficking-is-now-available-1384303. *See also* Richard Johnson, *Epstein Sex Scandal Book Clears Bill Clinton*, Page Six, Dec. 1, 2015, http://pagesix.com/2015/12/01/epstein-sex-scandal-book-clears-bill-clinton/ (discussing a book about "the Jeffrey Epstein sex slavery scandal [that] will be published with the help of best-selling author James Patterson" and referring to "allegations that Dershowitz had sex with" Ms. Giuffre). And I have learned that following the filing of the false accusations against me Ms. Giuffre sat for an interview with ABC News, as part of her efforts to increase public interest in (and the commercial value of) her "story." The interview was announced on social media by an organization with which Mr. Edwards is associated and was said to be slated to appear on ABC's Good Morning America, World News Tonight, and Nightline programs. While the ABC News interview has not yet run, there is no assurance that it will not run in the future. Moreover, Ms. Giuffre's willingness to sit for press interviews undermines any suggestion she might make that she has an ongoing interest in keeping her allegations of sexual abuse private. ████████████████████

████████████████████████████████████

████████████████████████

**This Case, My Involvement as a Witness, and My Discovery of Exculpatory Materials**

28.     As the Court knows, in 2015, Ms. Giuffre filed this action against Ghislaine Maxwell, a friend of Jeffrey Epstein. The suit alleges that Ms. Giuffre defamed Ms. Giuffre by denying that she, Ms. Maxwell, facilitated the trafficking of Ms. Giuffre and other girls and young women.

29.     In or about May 2016, I was named as a witness in this case by both plaintiff and defendant.

30.     Thereafter, I was contacted by defense counsel Ms. Laura Menninger, who said that she wanted me to testify.  Ms. Menninger informed me that a stipulated Protective Order (the "Protective Order") had been entered in this case, *see* Ex. L, under which discovery materials could be designated by either party as "confidential."  She asked me to read the Protective Order and to agree in writing to abide by its terms, which I did.  The Protective Order allows documents that were produced in discovery and that have been designated "confidential" to be shown to potential witnesses.

31.     To the best of my knowledge, the Protective Order is a "blanket" confidentiality agreement that has been so-ordered by this Court.  Accordingly, it is likely that the documents designated as "confidential" under the Protective Order have not been individually scrutinized by this Court to determine whether the designation is proper and/or that they are truly entitled to confidential treatment under the law in this Circuit.





35.

36.

37.

38. ███████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

39. ███████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████

███████████████████████████

█ ██████████████████████████████

██████████████████████████

███████████████████████████████████████

██████████████████████████████████

40. ███████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

████████████████████████████

41.     ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

███████████████████████

**Need for Public Access**

42.     The Requested Documents I am seeking by this application are ███████

████████████████████████████████████████████

█████████████████████████████████

43.     ██████████████████████████████████████

██████████████████████████████████████

        a.      ████████████████████████████████

                ██████████████████████████████████

                ███████████████████████████████

                ██████████████████████████████████

                ██████████████████████████████████

                ████████████████

        b.      ██████████████████████████████████

                ██████████████████████████████████

                ██████████████████████████████████

                ██████████████████████████████████

                ████████████

c.

d.

e.

f. ███████████████████████████████

███████████████████████████████

███████████████████████████████████

44. ███████████████████████████

██████████████████████████████████████

████████████████████

45. Ms. Giuffre has long been a willing and active participant in the publication and dissemination of her accusations. Indeed, according to documents publicly filed in the *Edwards* case, she sold her story to the press for $160,000 in 2011. As relates to me, Ms. Giuffre launched her continuing campaign of public character assassination by publicly filing false allegations of sexual abuse against me, knowing and intending, I believe, that they would be widely reported in the press. Most recently, she granted an interview to ABC News with the intent that it be broadcast on national television. ████████████████████████████ ███████████████ sealing presumptively public court filings would be a perverse mockery of the judicial system, the First Amendment, and fundamental fairness.

46. These materials are also essential to my defense against a motion to sanction me brought against me Ms. Giuffre, via her lawyers at Boies Schiller & Flexner LLP, in connection with the *Edwards* case. In that motion, Ms. Giuffre and her lawyers argue that I should be sanctioned for submitting an affidavit and testifying (truthfully) about exculpatory comments made to me by David Boies. After the parties in *Edwards* reached a settlement, Ms. Giuffre and her lawyers insisted on pressing their sanctions motion against me. The motion was denied by the trial judge, but Ms. Giuffre and her counsel have noticed and are pursuing an appeal.

47.    Because Ms. Giuffre and her lawyers continue to publicly stand by Ms. Giuffre's allegations with regard to the accusations against me, I am entitled, under the First Amendment and the common law, to access the Requested Documents ███████████████████████

██████████████████████████████

Dated: August 11, 2016
       Chilmark, Massachusetts

ALAN M. DERSHOWITZ