UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIRGINIA GIUFFRE,

               Plaintiff,

   -against-

GHISLAINE MAXWELL,

               Defendant.

No. 15 Civ. 7433 (RWS)

**MEMORANDUM OF LAW IN SUPPORT OF PROPOSED INTERVENOR ALAN M. DERSHOWITZ'S MOTION FOR PERMISSIVE INTERVENTION AND UNSEALING OF JUDICIAL DOCUMENTS, OR IN THE ALTERNATIVE MODIFICATION OF PROTECTIVE ORDER**

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

## TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ............................................................................................ iii-v

PRELIMINARY STATEMENT .......................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................4

    I.     MS. GIUFFRE'S ALLEGED RELATIONSHIP WITH
           JEFFREY EPSTEIN AND BELATED ACCUSATIONS
           AGAINST PROFESSOR DERSHOWITZ............................................................4

    II.    MS. GIUFFRE AND HER ATTORNEYS' CONTINUING
           INSISTENCE ON, AND REPETITION OF, ACCUSATIONS
           AGAINST PROFESSOR DERSHOWITZ............................................................5

████    ████████████████████████████████ ████████████

████    ██████████████████████████████████████████████

ARGUMENT ....................................................................................................................11

    I.     PROFESSOR DERSHOWITZ SHOULD BE PERMITTED TO INTERVENE
           UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(B) .............................11

           A.     There Is Significant Overlap Between the Subject Matter
                   of the Original Action and This Motion ...................................................12

           B.     There Is No Risk of Undue Delay or Prejudice ........................................12

           C.     Professor Dershowitz Has a Compelling Interest in Access
                   That Is Not Represented by Any Existing Party.......................................13

    II.    THE FIRST AMENDMENT AND THE COMMON LAW REQUIRE
           PUBLIC ACCESS TO THE REQUESTED DOCUMENTS...............................14

           A.     Legal Standard .........................................................................................14

                    1.    The Common Law Test .................................................................15

                    2.    The First Amendment Test .............................................................15

            B.     The Requested Documents Are Judicial Documents.................................16

            C.     The Common Law Right of Access Applies to the Requested
                   Documents ...............................................................................................17

              1.      The Weight of the Presumption of Access Is Strong .....................17

              2.      There Are No Countervailing Interests That Outweigh the Right of Access .......................................................................19

     D.     The First Amendment Guarantees Access to the Requested Documents .................................................................................20

III.    ALTERNATIVELY, THE PROTECTIVE ORDER SHOULD BE MODIFIED TO PERMIT DISCLOSURE OF THE REQUESTED DOCUMENTS ...............22

CONCLUSION ...................................................................................................26

PAGE NO(s).

**Cases**

*Alexander Interactive, Inc. v. Adorama, Inc.*,
No. 12 Civ. 6608, 2014 WL 4346174 (S.D.N.Y. Sept. 2, 2014) ..................................... 16

*Anderson v. Cryovac, Inc.*,
805 F.2d 1 (1st Cir. 1986) ............................................................................................. 16

*Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*,
263 F.3d 1304 (11th Cir. 2001) .................................................................................... 16

*Dandong v. Pinnacle Performance Ltd.*,
No. 10 Civ. 8086, 2012 WL 6217646 (S.D.N.Y. Dec. 3, 2012) ..................................... 16

*Diversified Grp., Inc. v. Daugerdas*,
217 F.R.D. 152 (S.D.N.Y. 2003) ................................................................................... 11

*Gambale v. Deutsche Bank AG*,
377 F.3d 133 (2d Cir. 2004) ......................................................................................... 22

*Gucci Am., Inc. v. Guess?, Inc.*,
No. 09 Civ. 4373, 2010 WL 1416896 (S.D.N.Y. Apr. 8, 2010) ..................................... 16

*In re EPDM Antitrust Litig.*,
255 F.R.D. 308 (D. Conn. 2009) .............................................................................. 23, 24

*In re Gushlak*,
No. 11-MC-0218, 2012 WL 3683514 (E.D.N.Y. July 27, 2012) ............................... 17, 19

*In re N.Y. Times Co.*,
828 F.2d 110 (2d Cir. 1987) .......................................................................................... 18

*In re Newsday, Inc.*,
895 F.2d 74 (2d Cir. 1990) ............................................................................................ 19

*In re Omnicom Grp., Inc. Secs. Litig.*,
No. 02 Civ. 4483, 2006 WL 3016311 (S.D.N.Y. Oct. 23, 2006) ............................... 17, 19

*In re September 11 Litig.*,
262 F.R.D. 274 (S.D.N.Y. 2009) ................................................................................... 23

*Jane Doe #1 v. United States of America*,
No. 08 Civ. 80736 (S.D. Fla.) .................................................................................... 4, 21

*Jessup v. Luther*,
227 F.3d 993 (7th Cir. 2000) ........................................................................................ 12

*Lenart v. Coach Inc.*,
    131 F. Supp. 3d 61 (S.D.N.Y. 2015)..............................................................................19

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
    998 F.2d 157 (3d Cir. 1993)........................................................................................16

*Long Island Lighting Co. v. Barbash*,
    779 F.2d 793 (2d Cir. 1985)........................................................................................18

*Louissier v. Universal Music Grp., Inc.*,
    214 F.R.D. 174 (S.D.N.Y. 2003) ................................................................................22

*Lugosch v. Pyramid Co. of Onodaga*,
    435 F.3d 110 (2d Cir. 2006)..............................................................................*passim*

*Mills v. Alabama*,
    384 U.S. 214 (1966) ....................................................................................................14

*Mokhiber v. Davis*,
    537 A.2d 1100 (D.C. Ct. App. 1988)....................................................................19, 21

*Newsday LLC v. Cnty. of Nassau*,
    730 F.3d 156 (2d Cir. 2013)........................................................................................14

*Nixon v. Warner Commc'ns, Inc.*,
    435 U.S. 589 (1978) ....................................................................................................13

*S.E.C. v. Oakford Corp.*,
    No. 00 Civ. 2426, 2001 WL 266996 (S.D.N.Y. Mar. 16, 2010) ................................17

*S.E.C. v. TheStreet.com*,
    273 F.3d 222 (2d Cir. 2001)..................................................................................22, 24

*Schiller v. City of N.Y.*,
    No. 04 Civ. 7922, 2006 WL 2788256 (S.D.N.Y. Sept. 27, 2006) ..........................13, 17

*Skyline Steel, LLC v. PilePro, LLC*,
    No. 13 Civ. 8171, 2015 WL 556545 (S.D.N.Y. Feb. 9, 2015) ..................................19

*Tradewinds Airlines, Inc. v. Soros*,
    No. 08 Civ. 5901, 2016 WL 3951181 (S.D.N.Y. July 20, 2016) ...........................23, 24

*U.S.P.S. v. Brennan*,
    579 F.2d 188 (2d Cir. 1978)........................................................................................11

*United States v. Amodeo (Amodeo I)*,
    44 F.3d 141 (2d Cir. 1995)..........................................................................................14

*United States v. Amodeo (Amodeo II)*,
    71 F.3d 1044 (2d Cir. 1995)...................................................................................14, 17

*United States v. Bryan*,
    339 U.S. 323 (1950)..................................................................................................... 18

*United States v. Erie Cnty.*,
    763 F.3d 235 (2d Cir. 2014)............................................................................. 15, 20, 21

*United States v. Erie Cnty.*,
    No. 09 Civ. 849, 2013 WL 4679070 (W.D.N.Y. Aug. 30, 2103).................................... 12

*United States v. Graham*,
    257 F.3d 143 (2d Cir. 2001)............................................................................... 15

*United States v. Martoma*,
    No. S1 12 Cr. 973, 2014 WL 164181 (S.D.N.Y. Jan. 9, 2014) ....................................... 20

*United States v. Sattar*,
    471 F. Supp. 2d 380 (S.D.N.Y. 2006)............................................................................ 16

*Vazquez v. City of N.Y.*,
    No. 10 Civ. 6277, 2014 WL 11510954 (S.D.N.Y. May 2, 2014).................................... 22

*Westmoreland v. CBS, Inc.*,
    752 F.2d 16 (2d Cir. 1984)............................................................................... 14

**Rules & Statutes**

Fed. R. Civ. P. 24...................................................................................................... 11, 14

Fed. R. Civ. P. 26.................................................................................................. 22, 24, 25

Fed. R. Civ. P. 45........................................................................................................... 18

**Other Authorities**

Casey Sullivan, *Alan Dershowitz Extends Truce Offer to David Boies Amid Bitter Feud*,
    BLOOMBERG LAW (Apr. 11, 2016), https://bol.bna.com/alan-dershowitz-extends-
    truce-offer-to-david-boies-amid-bitter-feud/ ..................................................... 6

**PRELIMINARY STATEMENT**

At nearly 78 years of age, Alan M. Dershowitz, the highly regarded Harvard Law professor, criminal defense lawyer, and author, is entitled to enjoy the reputation for strict personal rectitude that he has earned.  Unfortunately, however, over the course of the last year and a half, that reputation has been unfairly sullied, tainted by false and grotesque allegations of pedophilia and rape peddled to the press by Virginia Giuffre, the plaintiff in this lawsuit, and republished all over the world.  Professor Dershowitz has done everything in his power to combat this assault on his reputation, from proclaiming his innocence in public, to marshalling every bit of information within his control to demonstrate that the allegations cannot be true, to submitting to a full investigation of the charges by former federal judge and FBI Director Louis Freeh, who exonerated him.  And still the stories keep coming.

In this application, Professor Dershowitz seeks to intervene in this case for the limited purpose of obtaining relief that is modest and narrowly tailored:  the unsealing of

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ Unsealing of these three documents (the "Requested Documents") is required because they are all judicial documents to which a presumption of public access applies. In the alternative, if the Court declines to unseal the Requested Documents on the basis that they are judicial documents, Professor Dershowitz seeks modification of the Court's March 18, 2016 stipulated Protective Order to permit the dissemination of the Requested Documents. ████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████

    ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

    There is no basis for the Requested Documents to remain secret, much less for their secrecy to be maintained by court order. Ms. Giuffre has done everything in her power to publicize her false allegations against Professor Dershowitz: through her lawyers, she publicly filed the accusations in a federal court proceeding; she and her lawyers stood by her claims, in both court filings and public statements to the media, even after her lawyers had issued a public statement acknowledging that filing them had been a "mistake;" ██████████████████████

███████████████████████████████████████████████

████████████ ; and she even sought and obtained a lengthy interview with ABC News with the intent that it be broadcast on national television news programs. ███████████████

███████████████████████████████████

███████████████████████████████████

██████

Disclosing the Requested Documents would violate no right of privacy. █████████

███████████████████████████████████████████

███████████████████████████████████████

██████████████████████ Indeed, what Ms. Giuffre's own counsel have referred to as the "strong current media interest in the case"—which Ms. Giuffre has worked to sustain, including by selling her story—bolsters the public's right to access the Requested Documents. Were Ms. Giuffre to prevail in her efforts to suppress these documents of high public interest, the result would be absurd and unfair: Ms. Giuffre's false allegations would remain in the public record, while the innocent victim of her slanders would be barred from ████████████████ ████████. No one should be permitted to game the legal system so perversely.

The law recognizes Professor Dershowitz's right to the Requested Documents under the First Amendment, the common-law right of access to judicial documents, and governing Second Circuit jurisprudence, which forbids sealing and secrecy for their own sake. Here, having waived any privacy interest she may have had by both disseminating the allegations against Professor Dershowitz and by filing this lawsuit against Ghislaine Maxwell, Ms. Giuffre should not be heard to say that █████████████████████████████████████████ are somehow "confidential." They are not. This Court should grant Professor Dershowitz the right to intervene in this action and unseal the Requested Documents.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.    MS. GIUFFRE'S ALLEGED RELATIONSHIP WITH JEFFREY EPSTEIN AND BELATED ACCUSATIONS AGAINST PROFESSOR DERSHOWITZ**

In 2006, Professor Dershowitz was retained by financier Jeffrey Epstein to join a team of lawyers hired to defend Epstein against accusations that he had solicited sex workers and had inappropriate sexual encounters with underage girls.[1]  Declaration of Alan M. Dershowitz ("Dershowitz Decl.") ¶¶ 6-7.  In 2008, Epstein pleaded guilty to certain offenses involving sex with minors.  *Id.* ¶ 7.  Ms. Giuffre has alleged that she was one of Epstein's victims, although Epstein was neither charged nor convicted of any conduct toward her.  *Id.* ¶ 8.  Ms. Giuffre claims that she was held as a "sex slave" and trafficked by Epstein, who she alleges facilitated sexual encounters with a number of men.  *Id.*

In the period from 2006 through 2014, Ms. Giuffre submitted to interviews with law enforcement, told her story to the media, drafted a tell-all memoir, and filed a lawsuit alleging that Mr. Epstein had trafficked her to many of his prominent associates.  *Id.* ¶¶ 10-14.  During this period, Ms. Giuffre never once claimed to have had any sexual contact with Professor Dershowitz, much less that he had sexually abused her.  *Id.*  Then, in December 2014, Ms. Giuffre—represented by attorneys Bradley Edwards and Paul Cassell—filed a motion to join an action (the "CVRA Action") that had been initially filed in the United States District Court for the Southern District of Florida in 2008 by another of Mr. Epstein's alleged victims, who was designated as "Jane Doe."  *Jane Doe #1 v. United States of America*, No. 08 Civ. 80736 (S.D. Fla.) (hereinafter, *Doe v. USA*); Dershowitz Decl. ¶ 16.  In late 2014 and early 2015, Ms. Giuffre's lawyers alleged in public court filings in the CVRA Action that Mr. Dershowitz had had sex with Ms. Giuffre on numerous occasions while she was a minor, including in Florida, on

---

[1] Professor Dershowitz had been acquainted with Mr. Epstein through academic events for a number of years prior to his retention as Mr. Epstein's counsel, but had neither witnessed nor heard about allegations of sexual misconduct by Mr. Epstein before being hired to represent him.  Dershowitz Decl. ¶ 6.

Mr. Epstein's private planes, in the British Virgin Islands, in New Mexico, and in New York. Dershowitz Decl. ¶ 17. Unlike much of the record in the CVRA Action, these allegations were not sealed; instead, they were filed publicly without any evidence to support them and without affording Professor Dershowitz an opportunity to dispute them. *Id.* Although Ms. Giuffre elaborated these false allegations in subsequent filings, eventually, the presiding judge in the CRVA Action struck them as a sanction against the lawyers who had filed them. But the damage to Professor Dershowitz's reputation had been done—and it would persist. *Id.* ¶¶ 18-19.

In the wake of the grotesque allegation that he is a pedophile and a sex criminal, Professor Dershowitz loudly and publicly defended himself. In January 2015, Ms. Giuffre's attorneys, Mr. Edwards and Mr. Cassell, sued Professor Dershowitz for defamation, citing comments he made in his own defense. *Id.* ¶ 21. ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████ *Id.* ¶¶ 22-23. The defamation action ultimately settled in April 2016, and the parties released a joint statement in which attorneys Cassell and Edwards admitted that it was a mistake to accuse Professor Dershowitz of sexual misconduct in their filings in the CVRA Action and withdrew those allegations. *Id.* ¶ 24 & Ex. H. Also in April 2016, Professor Dershowitz released the results of a thorough investigation led by former FBI Director and federal judge Louis Freeh, which found that "the totality of the evidence" "refutes the allegations made against" Professor Dershowitz by Ms. Giuffre. *Id.* ¶ 25 & Ex. I.

## II. MS. GIUFFRE AND HER ATTORNEYS' CONTINUING INSISTENCE ON, AND REPETITION OF, ACCUSATIONS AGAINST PROFESSOR DERSHOWITZ

Despite the settlement of the defamation case and the resulting joint statement, the court order striking the "lurid" allegations against Professor Dershowitz in the CVRA Action, and the

results of Judge Freeh's investigation, Ms. Giuffre and her counsel have republished Ms.

Giuffre's allegations against Professor Dershowitz. *Id.* ¶ 26. For example, on April 8, 2016, just

after the settlement of the defamation case, Mr. Cassell and Mr. Edwards made a court filing that

stated that Ms. Giuffre "reaffirms" her allegations against him, and that their mistake in filing

those allegations in the CVRA Action was merely "tactical." *Id.* ¶ 26 & Ex. J. David Boies,

another of Ms. Giuffre's attorneys in this case, was described as saying that Ms. Giuffre "stands

by her allegations" against Professor Dershowitz. *See* Casey Sullivan, *Alan Dershowitz Extends*

*Truce Offer to David Boies Amid Bitter Feud*, BLOOMBERG LAW (Apr. 11, 2016),

https://bol.bna.com/alan-dershowitz-extends-truce-offer-to-david-boies-amid-bitter-feud/. These

statements—which falsely imply that Professor Dershowitz is guilty of sexual misconduct—are

highly injurious to his reputation, especially when they come from otherwise-credible lawyers.

*Id.* ¶ 26. The claim that Professor Dershowitz engaged in sexual misconduct with Ms. Giuffre

has also continued to receive attention in the press. *See id.* ¶ 27 & Ex. K. Professor Dershowitz

has learned that Ms. Giuffre sat for an interview with ABC News, presumably as part of her

efforts to increase public interest in (and the commercial value of) her "story." *Id.* ¶ 27. The

interview was announced on social media by an organization with which Mr. Edwards is

associated and was said to be slated to appear on ABC's Good Morning America, World News

Tonight, and Nightline programs. *Id.* While the ABC News interview apparently has not yet

run, there is no assurance that it will not run in the future. *Id.*



---

[2] The relevant excerpts of the Requested Documents are reproduced herein without any alterations or corrections to spelling, grammar, or typographical errors.









**ARGUMENT**

## I.   PROFESSOR DERSHOWITZ SHOULD BE PERMITTED TO INTERVENE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(B)

"On timely motion, the court may permit anyone to intervene," Fed. R. Civ. P. 24(b)(1),

provided the proposed intervenor "has a claim or defense that shares with the main action a

common question of law or fact," *id.* R. 24(b)(1)(B).  The decision to permit intervention under

Rule 24(b) is discretionary, *U.S.P.S. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978), though the

Court "must consider whether the intervention will unduly delay or prejudice the adjudication of

the original parties' rights," Fed. R. Civ. P. 24(b)(3).  "Additional relevant factors include the

nature and extent of the intervenors' interests, the degree to which those interests are adequately

represented by other parties, and whether parties seeking intervention will significantly

contribute to the full development of the underlying factual issues in the suit and to the just and

equitable adjudication of the legal questions presented." *Diversified Grp., Inc. v. Daugerdas*,

217 F.R.D. 152, 157 (S.D.N.Y. 2003) (internal quotation marks and alteration omitted).

"It is well-settled that intervention pursuant to Rule 24(b) is the proper procedure for a

third party to seek to modify a protective order in a private suit." *Id.* (collecting authorities).

Likewise, permissive intervention "has generally been found to be most appropriate for a non-party to intervene in order to assert the right to public access" for judicial documents.  *United States v. Erie Cnty.*, No. 09 Civ. 849, 2013 WL 4679070, at *5 (W.D.N.Y. Aug. 30, 2103) (collecting authorities), *rev'd on other grounds*, 763 F.3d 235 (2d Cir. 2014).  Here, all relevant considerations support granting Professor Dershowitz's motion for permissive intervention.

A.    **There Is Significant Overlap Between the Subject Matter of the Original Action and This Motion**

Many courts have held that a non-party's assertion of a right to access sealed or confidential litigation materials itself presents a question of law common among the parties and the proposed intervenor, satisfying the prerequisites for permissive intervention.  "[W]hen a district court enters a closure order, the public's interest in open access is at issue and that interest serves as the necessary legal predicate for intervention."  *Jessup v. Luther*, 227 F.3d 993, 998 (7th Cir. 2000).  "Because an intervenor asserting the right of public access is not becoming a party to the underlying merits of a case, further specificity is not required."  *Erie Cnty.*, 2013 WL 4679070, at *5.  Even if a more particularized showing of factual or legal commonality were needed, Professor Dershowitz could easily make it.  This lawsuit concerns the veracity of Ms. Giuffre's allegations of sexual abuse—allegations of which Professor Dershowitz has been a repeated target. ████████████████████████████████████████████ ████████████████████████████████████████████  Both parties have listed Professor Dershowitz as a key witness in this case, Dershowitz Decl. ¶ 29, and he is likely to provide testimony as the litigation proceeds.

B.    **There Is No Risk of Undue Delay or Prejudice**

Professor Dershowitz's motion seeks extremely narrow and tailored relief: the unsealing of a small number of already-filed documents or the modification of a blanket Protective Order as to one discovery document.  Dershowitz Decl. ¶ 3.  In the context of this complex case, where

a number of discovery disputes and other applications have been submitted to the Court in just the last few weeks, this modest request is unlikely to appreciably affect the schedule of the litigation or to delay its ultimate disposition. *See Schiller v. City of N.Y.*, No. 04 Civ. 7922, 2006 WL 2788256, at *3 (S.D.N.Y. Sept. 27, 2006) (noting that intervention "for the limited purpose of challenging strictures on the dissemination of information should not impede the progress of the litigation").

### C. Professor Dershowitz Has a Compelling Interest in Access That Is Not Represented by Any Existing Party

As the Supreme Court has recognized, the public's right to access judicial proceedings and documents extends well beyond those with direct interests in the subject matter of the litigation at issue: "American decisions generally do not condition enforcement of this right on a proprietary interest in the document or upon a need for it as evidence in a lawsuit." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (noting that "the citizen's desire to keep a watchful eye on the workings of public agencies" is a sufficient basis to compel access). Even if a more concrete stake were needed, Professor Dershowitz has a compelling interest in obtaining and disclosing the Requested Documents, ███████████████████████ ████████████████████████████████████████████████ He also plans to rely on them to defend against a request for sanctions against him that is pending on appeal in a Florida court. Dershowitz Decl. ¶ 46. Although Professor Dershowitz has valiantly fought to clear his name—by, among other efforts, marshaling incontrovertible proof of his innocence, asserting defamation claims in court, and commissioning a thorough investigation led by a respected former federal judge that exonerated him—he has found himself unable to stem the tide of media reports and public statements by Ms. Giuffre and her lawyers labeling him a pedophile and sexual abuser. ████████████████████████████████████████████████████

13

That interest is more than a sufficient basis to permit intervention under Rule 24(b).

## II.     THE FIRST AMENDMENT AND THE COMMON LAW REQUIRE PUBLIC ACCESS TO THE REQUESTED DOCUMENTS

### A.     Legal Standard

"Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013). "Underlying that First Amendment right of access is the common understanding that a major purpose of that Amendment was to protect the free discussion of governmental affairs." *Westmoreland v. CBS, Inc.*, 752 F.2d 16, 22 (2d Cir. 1984) (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)). Similarly, the common law right of access, which "is said to predate the Constitution," *United States v. Amodeo (Amodeo I)*, 44 F.3d 141, 145 (2d Cir. 1995), rests on "the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice," *United States v. Amodeo (Amodeo II)*, 71 F.3d 1044, 1048 (2d Cir. 1995).

Both the First Amendment and common law rights of access create a presumption against secrecy for "judicial documents." *See Newsday*, 730 F.3d at 164 (First Amendment); *Amodeo I*, 44 F.3d at 145-46 (common law). The Second Circuit has explained that "the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." *Amodeo I*, 44 F.3d at 145. Once an item's status as a "judicial document" has been established, the common law and the First Amendment demand distinct analyses to determine whether the presumption of access is overcome.

### 1. The Common Law Test

In determining the applicability of the common-law right of access to a given document, courts are charged with determining the *weight* of the presumption of access under the particular circumstances presented. The presumption applies to *all* judicial documents, but the strength of the presumption varies according to the importance of a given document in the judicial process. The weight afforded to the presumption of access is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch v. Pyramid Co. of Onodaga*, 435 F.3d 110, 119 (2d Cir. 2006). The Second Circuit has explained that "documents that directly affect an adjudication and play a significant role in determining litigants' substantive rights receive the benefit of a relatively strong presumption, while the public interest in other documents is not as pressing." *United States v. Graham*, 257 F.3d 143, 153 (2d Cir. 2001) (internal quotation marks and citations omitted). "Finally, after determining the weight of the presumption of access, the court must balance competing considerations against it." *Lugosch*, 435 F.3d at 120 (internal quotation marks omitted). "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Id.* (internal quotation marks omitted).

### 2. The First Amendment Test

Even where the common law right of access is found to be inapplicable, the First Amendment may still require disclosure of judicial documents. The First Amendment right of access is "stronger than its common law ancestor and counterpart." *United States v. Erie Cnty.*, 763 F.3d 235, 239 (2d Cir. 2014). In deciding First Amendment access claims, the Second Circuit considers "(a) whether the documents have historically been open to the press and general public (experience) and (b) whether public access plays a significant positive role in the

functioning of the particular process in question (logic)." *Id.* (internal quotation marks omitted). "Once a First Amendment right of access to judicial documents is found, the documents may be sealed only if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (internal quotation marks and alteration omitted).

### B. The Requested Documents Are Judicial Documents

For a document to appropriately be deemed a "judicial document," "[i]t is sufficient that the document was submitted to the Court for purposes of seeking or opposing an adjudication." *United States v. Sattar*, 471 F. Supp. 2d 380, 385 (S.D.N.Y. 2006). ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Accordingly, all qualify as "judicial documents."

Courts in this district[3] have repeatedly held that documents submitted in support of or opposition to a discovery motion are judicial documents. *See, e.g.*, *Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12 Civ. 6608, 2014 WL 4346174, at *2 (S.D.N.Y. Sept. 2, 2014) ("Here, the documents to be submitted are in support of a motion to compel discovery and presumably will be necessary to or helpful in resolving that motion. They are, therefore, judicial documents."); *Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086, 2012 WL 6217646, at *2 (S.D.N.Y. Dec. 3, 2012) (applying presumption of public access to papers filed in connection with a motion for reconsideration of a discovery order); *Gucci Am., Inc. v. Guess?, Inc.*, No. 09 Civ. 4373, 2010 WL 1416896, at *2 (S.D.N.Y. Apr. 8, 2010) (holding that "declarations and a

---

[3] Some federal Courts of Appeals have suggested that the presumption of access does not apply to documents filed in connection with discovery motions. *See, e.g.*, *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312-13 (11th Cir. 2001); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 11 (1st Cir. 1986). But the Second Circuit has never adopted such a rule, and the weight of district court authority in the Southern District of New York rejects this approach.

memorandum of law" seeking to limit discovery "clearly constitute 'judicial documents'"); *In re Omnicom Grp., Inc. Secs. Litig.*, No. 02 Civ. 4483, 2006 WL 3016311, at *2 (S.D.N.Y. Oct. 23, 2006) (holding that letter briefs and attached exhibits submitted to the court in connection with a privilege dispute were "submitted in this case to request the court to exercise its adjudicative powers in favor of the parties' respective views of a discovery dispute" and therefore were judicial documents); *Schiller*, 2006 WL 2788256, at *5 (holding that briefs and supporting papers submitted in connection with a dispute over the confidentiality of discovery materials were "created by or at the behest of counsel and presented to a court in order to sway a judicial decision" and were therefore "judicial documents that trigger the presumption of public access"); *S.E.C. v. Oakford Corp.*, No. 00 Civ. 2426, 2001 WL 266996, at *1 (S.D.N.Y. Mar. 16, 2001) (applying presumption of access to judicial documents to motion papers filed in connection with a discovery dispute); *see also In re Gushlak*, No. 11-MC-0218, 2012 WL 3683514, at *3 (E.D.N.Y. July 27, 2012) (holding that documents filed in support of and opposition to a motion for discovery assistance, including motions to quash, were judicial documents). ████████

████████████████████████████████████████

████████████████████████████████████

### C. The Common Law Right of Access Applies to the Requested Documents

#### 1. The Weight of the Presumption of Access Is Strong

Treating materials submitted in connection with a discovery motion as judicial documents that the public may presumptively access gives effect to the purposes of the common law right, which is to facilitate public monitoring of the exercise of judicial power. "Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior." *Amodeo II*, 71 F.3d at 1048.

████████████████████████████████████████████████

████████████████████████████████████████████████

████     *See* Fed. R. Civ. P. 45(g) (providing that the court "may hold in contempt a person who, having been served, fails without adequate excuse to obey [a] subpoena or an order related to it").  Compelling testimony is a quintessential exercise of coercive judicial power that the public is entitled to monitor.  *See United States v. Bryan*, 339 U.S. 323, 331-32 (1950) (elaborating the importance of balancing "the great power of testimonial compulsion" against exemptions "grounded in a substantial individual interest which has been found, through centuries of experience, to outweigh the public interest in the search for truth").  Just as disclosure of pretrial suppression proceedings in criminal cases "enhances the basic fairness of the judicial process and the appearance of fairness that is essential to public confidence in the system," *In re N.Y. Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987), affording access to proceedings concerning the permissibility of civil discovery provides an important check on the exercise of Article III power.

████████████████████████████████████████████████

████████████████████████████████████████████████

████     The Second Circuit has recognized that a district court's decisions concerning the scope and timing of discovery may "affect a party's substantial rights."  *Long Island Lighting Co. v. Barbash*, 779 F.2d 793, 795 (2d Cir. 1985).  As one court has aptly explained:

> The discovery process is clearly an important element of civil litigation.  The manner in which it proceeds may prove decisive to the outcome of particular disputes, and the availability of mandatory discovery has greatly affected the way in which our courts do justice.  Moreover, discovery procedures have become a continuing focus of controversy and reform within the judiciary and the legal community. This debate has arisen precisely because discovery is so important in trial practice. If we take as our standard that the public's right of access attaches to decisions 'of

> major importance to the administration of justice, then discovery
> motions and hearings fall within the ambit of this right.

*Mokhiber v. Davis*, 537 A.2d 1100, 1112 (D.C. Ct. App. 1988) (internal quotation marks and

citations omitted).   Courts in this district have repeatedly recognized that filings submitted in

connection with a motion to alter the pace or schedule of litigation are subject to public access.

*See, e.g.*, *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 72 (S.D.N.Y. 2015) (applying presumption of

public access to "papers filed in connection with [a] motion to stay"); *Skyline Steel, LLC v.*

*PilePro, LLC*, No. 13 Civ. 8171, 2015 WL 556545, at *4 (S.D.N.Y. Feb. 9, 2015) (same).

"While adjudication of the ultimate merits of the case arguably triggers the highest

degree of protection against sealing, this does not imply that motion papers addressed to a

discovery dispute do not trigger the public-access presumption."  *In re Omnicom Grp.*, 2006 WL

3016311, at *4. ████████████████████████████████████████████████

████████████████████████████████████████████ "those documents are entitled to the

strongest presumption of public access."  *In re Gushlak*, 2012 WL 3683514, at *4.

### 2. There Are No Countervailing Interests That Outweigh the Right of Access

The limited unsealing Professor Dershowitz seeks threatens none of the harms courts

have recognized as sufficient to outweigh the right of access to judicial documents. ████████

████████████████████████████████████████████████████████████████

Thus, the general rule "that the common law right of access is qualified by recognition of the

privacy rights of the persons whose intimate relations may thereby be disclosed," *In re Newsday,*

*Inc.*, 895 F.2d 74, 79 (2d Cir. 1990), has no application.  Nor does Ms. Giuffre possess any claim

to privacy concerning the information Professor Dershowitz seeks to unseal.  The ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Nothing could be less private ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████ "The information at issue . . . does

not involve the type of medical, health-related, family, or personal financial matter to which

courts grant the greatest protection."  *United States v. Martoma*, No. S1 12 Cr. 973, 2014 WL

164181, at *6 (S.D.N.Y. Jan. 9, 2014). ████████████████████████

████████████████████████████████████████████████

██████████████████████████

### D.     The First Amendment Guarantees Access to the Requested Documents

Even if the common law did not compel the conclusion that the Requested Documents

must be made public, the First Amendment would supply an alternative basis for their disclosure.

The First Amendment presumption of access to judicial documents applies when "experience

and logic" indicate that "the documents have historically been open to the press and general

public," and that "public access plays a significant positive role in the functioning of the

particular process in question."  *Lugosch*, 435 F.3d at 120 (internal quotation marks omitted).

With respect to the experience prong, the Second Circuit has held that "the notion of

public access to judicial documents is a capacious one: the courts of this country have long

recognized a general right to inspect and copy public records and documents, including judicial

records and documents," in order to facilitate public monitoring.  *Erie Cnty.*, 763 F.3d at 241

(internal quotation marks omitted).  Discovery motions and the documents supporting them are

routinely filed in courts across the country without sealing and with the understanding that such

documents are publicly accessible. And while the relatively recent history of modern civil discovery practice means there is no ancient common-law analogue to the contemporary discovery motion, "[t]his absence, of course, is not surprising, for compelled discovery is a child of the first Federal Rules of Civil Procedure adopted in 1938." *Mokhiber*, 537 A.2d at 1111. "It would make little sense to shut off access for what is, practically speaking, a new kind of judicial process just because that particular procedure did not exist at common law. Instead, the public should enjoy the right to view new kinds of proceedings when they are like traditional ones in this significant respect: that access will serve the same values and policies which underlie" the public right of access. *Id.* at 1112.

As to the logic prong of the Second Circuit's test, it is clear that public monitoring has an important role to play here. Ms. Giuffre's allegations against Professor Dershowitz have been the subject of significant public interest and have been discussed at length in an array of international news stories. Indeed, in the CVRA Action, Ms. Giuffre's own counsel cited "strong current media interest in the case" to *oppose* sealing the pleadings, pointing to Ms. Churcher's stories among others as examples. *Doe v. United States*, No. 08 Civ. 80736 (S.D. Fla.), ECF No. 51, at 7. "The issues involved are manifestly ones of public concern and therefore ones which the public has an interest in overseeing." *Erie Cnty.*, 763 F.3d at 242.

Because experience and logic dictate that the First Amendment right of access applies to the Requested Documents, their continued sealing would only be permissible on the basis of "specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." *Lugosch*, 435 F.3d at 126. Here, no such findings have ever been made; indeed, the Court has granted boilerplate sealing applications with no findings or judicial scrutiny whatsoever. *See, e.g.*, ECF No. 254. There would be no basis to find that continuing secrecy is warranted, let alone "essential to preserve higher values."

## III.   ALTERNATIVELY, THE PROTECTIVE ORDER SHOULD BE MODIFIED TO PERMIT DISCLOSURE OF THE REQUESTED DOCUMENTS

Even where discovery materials are found not to be judicial documents, that does not automatically entitle them to confidential treatment.  *See Vazquez v. City of N.Y.*, No. 10 Civ. 6277, 2014 WL 11510954, at *1 (S.D.N.Y. May 2, 2014).  Here, although Professor Dershowitz is in rightful possession of the Requested Documents, he is prohibited from disseminating them by the parties' stipulated, blanket Protective Order.  *See* Dershowitz Decl. Ex. L.  That order permits the parties to designate documents as confidential without particularized judicial scrutiny, which is how the Requested Documents became subject to a protective order in the first instance.  Because there is no basis for judicial protection of the Requested Documents, the Protective Order should be modified to permit its disclosure.

Federal Rule of Civil Procedure 26(c) permits issuance of a protective order only upon "good cause shown," and requires that such orders issue only "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  "[I]f good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection."  *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004) (internal quotation marks omitted).  A protective order requires "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" showing the harm that would result from disclosure.  *Louissier v. Universal Music Grp., Inc.*, 214 F.R.D. 174, 177 (S.D.N.Y. 2003).

The Second Circuit's general rule that a protective order should not be modified "absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need," *S.E.C. v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001), applies only when the parties have *reasonably* relied on the protective order in producing discovery.  That is not the case here, where the protective order is a sweeping and generic stipulation permitting the parties,

and not the Court, to set the standards for access.  "A blanket protective order is more likely to be subject to modification than a more specific, targeted order because it is more difficult to show a party reasonably relied on a blanket order in producing documents or submitting to a deposition."  *In re EPDM Antitrust Litig.*, 255 F.R.D. 308, 319 (D. Conn. 2009). "*Stipulated* blanket orders are even less resistant to a reasonable request for modification."  *Id.*

"An examination of Second Circuit case law reveals the following factors are relevant when determining whether a party has reasonably relied on the protective order[:] (1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order."  *In re September 11 Litig.*, 262 F.R.D. 274, 277 (S.D.N.Y. 2009) (internal quotation marks omitted). Here, all four factors weigh against a finding of reasonable reliance.  First, the Protective Order contains "expansive language granting the parties broad latitude to self-designate materials" as confidential, making it unreasonable for any party to rely on the prospect of indefinite and ironclad confidentiality protections in producing discovery.  *See EPDM*, 255 F.R.D. at 320. Second, the Protective Order allows challenges to confidentiality designations, *see* Dershowitz Decl., Ex. L ¶ 11, and permits the Court to modify the order "at any time" for good cause, *id.* ¶ 14.  "Given this provision, it is difficult to see how the [parties] can reasonably argue that they produced documents in reliance on the fact that the documents would always be kept secret." *Lugosch*, 435 F.3d at 126.

Third, "[t]he level of inquiry undertaken before the Order was entered also weighs in favor of modification because the Court 'so ordered' the parties' stipulation without having cause to determine whether all the documents covered actually warranted protection." *Tradewinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901, 2016 WL 3951181, at *2 (S.D.N.Y. July 20, 2016).  While this practice can be salutary to the extent it preserves judicial resources and

promotes efficiency in complex civil discovery, it strongly weakens the parties' claim to a reasonable expectation that every document marked confidential will remain subject to a Rule 26(c) order indefinitely. *See EPDM*, 255 F.R.D. at 319. "Finally, the nature of the reliance on the Order weighs in favor of modification because there is no indication that the [parties] relied on the Order to produce documents they would not have otherwise disclosed." *Tradewinds Airlines*, 2016 WL 3951181, at *2. ███████████████████████████

███████████████████████████████████████████

███████████████████████ *See Lugosch*, 435 F.3d at 125.

Even if the parties' reliance on the Protective Order could be deemed reasonable, which it cannot, Professor Dershowitz would handily satisfy *TheStreet.com*'s requirement of a compelling need or extraordinary circumstance. First, as one Court in this district explained recently, "courts within this circuit have found there to be a 'compelling need' or 'extraordinary circumstance' warranting modification where a blanket protective order is entered without a showing of good cause." *Tradewinds Airlines*, 2016 WL 3951181, at *2 (collecting authorities).

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████ Professor Dershowitz will also use the Requested Documents to defend against a sanctions motion that is pending in a state court in Florida, providing an independent basis to modify the Protective Order. *See id.* ¶ 46.

In contrast, there is no basis for a finding of good cause to protect the content of the Requested Documents ████████████████████████████████████ She cannot credibly claim that disclosure will cause her "annoyance, embarrassment, oppression, or undue burden or expense," *see* Fed. R. Civ. P. 26(c).  Indeed, Ms. Giuffre has waived any claimed to confidentiality.  She has publicly filed her accusations of sexual misconduct against an array of individuals, including Professor Dershowitz, in at least two lawsuits besides this one. Dershowitz Decl. ¶¶ 10-12, 15-20.  She has sold her story to the media and sat for extensive interviews with Ms. Churcher and other reporters about the very same allegations that are the subject of the Requested Documents.  *Id.* ¶¶ 13, 26-27.  She even "agreed to waive her anonymity" in order to disseminate her story publicly.  Sharon Churcher, *Exclusive: Girl at Center of Underage Sex Procurement Case That Scandalised America Describes How She Was Introduced to the Prince*, MAIL ON SUNDAY, Feb. 27, 2011.  More recently, Ms. Giuffre sat for an interview with ABC News, hoping to increase public interest in her allegations.  Dershowitz Decl. ¶ 27.  Although the interview has not yet aired, it could be broadcast at any time, likely repeating once again the same allegations for which Ms. Giuffre has claimed confidentiality in the context of litigation discovery.  *See id*.  And her lawyers have continued to give interviews insinuating Professor Dershowitz's guilt even after reaching a settlement with him and agreeing to release a public statement withdrawing their own public filing of the accusations against him. *See* Dershowitz Decl., Ex. H.

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

**CONCLUSION**

For the foregoing reasons, Professor Dershowitz respectfully requests that the Court grant his motion for permissive intervention and unseal the Requested Documents, or in the alternative modify the Protective Order to permit their dissemination.

Dated: August 11, 2016
       New York, New York

                                        EMERY CELLI BRINCKERHOFF
                                        & ABADY LLP


                                        _____/s/_____
                                        Andrew G. Celli, Jr.
                                        David A. Lebowitz

                                         600 Fifth Avenue, 10th Floor
                                        New York, New York 10020

                                        (212) 763-5000

                                        *Attorneys for Proposed Intervenor*
                                        *Alan M. Dershowitz*