UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

VIRGINIA L. GIUFFRE,

      Plaintiff,

v.

GHISLAINE MAXWELL,

      Defendant.

**15-cv-07433-RWS**

---------------------------------------------------X

**DEFENDANT'S RESPONSE TO MOTION TO**
**COMPEL PRODUCTION OF DOCUMENTS**

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
303.831.7364

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ..................................................................................................................... 1

I.    The objections and responses to the RFPs are proper. ................................................ 1

   A. RFP No. 1: Documents defense counsel "reviewed and/or relied upon" in a phone
      call with Plaintiff's counsel. ................................................................................... 1

   B. RFP Nos. 2-3: Documents concerning "how" the defense obtained "police
      report(s)." ................................................................................................................ 6

   C. RFP Nos. 6-7, 9-10: Joint defense agreements and related documents. .................... 9

   D. RFP No. 11: Communications between ███████████████
      █████. ............................................................................................................. 11

   E. RFP No. 12: Documents "concerning" Plaintiff, "whether or not they reference her
      by name." ............................................................................................................... 14

   F. RFP Nos. 17-18: Ms. Maxwell's "statements" to any person, group or entity. ...... 15

II.   Ms. Maxwell properly has asserted privileges. ......................................................... 17

   A. Email from Mr. █████ to Ms. Maxwell. .......................................................... 17

   B. Emails exchanged between █████████████████████.
      18

   C. Emails exchanged between ██████████████ and Ms. Maxwell's attorney... 19

III.  Plaintiff has failed to establish any ground for an invasive "forensic review" of
      Ms. Maxwell's electronic devices. ........................................................................... 20

CONCLUSION ............................................................................................................... 23

CERTIFICATE OF SERVICE ....................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*A.I. Credit Corp. v. Providence Washington Ins. Co., Inc.*, 1997 WL 231127, at *4 (S.D.N.Y. May 7, 1997) ...................................................................................... 9

*Abidor v. Napolitano*, 990 F. Supp. 2d 260, 280 (E.D.N.Y. 2013) ................................... 19

*Auto. Club of N.Y. v. Port Auth'y of N.J.*, No. 11 CIV. 6746 RKE HBP, 2012 WL 4791804, at *6 (S.D.N.Y. Oct. 9, 2012) ......................................................... 19

*Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) .................. 21

*Denim Habit, LLC v. NJC Boston, LLC*, No. 13CV6084ADSSIL, 2016 WL 2992124, at *6 (E.D.N.Y. May 23, 2016) ............................................................................. 5

*Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 273-74 (S.D.N.Y. 1999) 7

*Falana v. Kent State Univ.*, No. 5:08 CV 720, 2012 WL 6084630, at **3-4 (N.D. Ohio Dec. 6, 2012) ................................................................................................... 9

*Generac Power Sys. v. Kohler Co.*, 2012 WL 5463913, at *2 (E.D. Wis. Nov. 8, 2012) .. 9

*Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983) .................................. 5

*Heartland Surgical Specialty Hosp. v. Midwest Div.*, No. 05-2164-MLB-DWB, 2007 WL 950282, at *10 (D. Kan. Mar. 26, 2007) ....................................................... 9

*John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008) ........................................................ 21

*Lislewood Corp. v. AT&T Corp.*, No. 13 CV 1418, 2015 WL 1539051, at *4 (N.D. Ill. Mar. 31, 2015) .................................................................................................. 9

*Loving v. N'Namdi,* No. 05 Civ. 7966(JGK)(MHD), 2006 WL 3456311 at *1 (S.D.N.Y. Nov. 29, 2006) ................................................................................................ 21

*McCurdy Group v. Am. Biomed. Grp.*, 9 Fed. Appx. 822, 831, 2001 WL 536974, at *7 (10th Cir. 2001) ............................................................................................... 21

*McNally Tunneling Corp. v. City of Evanston*, 2001 WL 1246630, at *4 (N.D. Ill. Oct. 18, 2001) .......................................................................................................... 9

*Memory Corp. v. Ky. Oil Tech.*, No. C04-03843 RMW (HRL), 2007 WL 832937, at *3 (N.D. Cal. Mar. 19, 2007) ............................................................................... 20

*Mgmt. v. Ocwen Fin. Corp.*, No. 01-CV-01644-REB-CBS, 2010 WL 502721, at *24 (D. Colo. Feb. 8, 2010) ..................................................................................... 5

*Millenium Health LLC v. Gerlach*, No. 15-cv-7235 (WHP)(JLC), 2015 WL 9257444, at *2 (S.D.N.Y. Dec. 18, 2015) ................................................................. 17

*NOLA Spice Designs, LLC v. Haydel Enters.*, 2013 WL 3974535, at **3-4 (E.D. La. Aug. 2, 2013) .................................................................................... 22

*R.F.M.A.S., Inc. v. Mimi SO*, No. 06 Civ. 13114(VM)(MHD), 2008 WL 465113, at *1 (S.D.N.Y. Feb. 15, 2008) .......................................................................... 9

*Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015) ............................................ 12

*Simmons v. Adamy*, No. 08-CV-6147L, 2011 WL 839739, at *2 (W.D.N.Y. Mar. 7, 2011) ................................................................................................... 5

*Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 323-24 (N.D. Ill. 2005) ............................ 5

*Thompson v. Workmen's Cir. Multicare Ctr.*, No. 11 Civ. 6885(DAB)(HBP), 2015 WL 4591907, at *11 (S.D.N.Y. June 9, 2015) ...................................................... 20

*United States v. Adlman*, 134 F.3d 1194, 1202-03 (2d Cir.1998) ...................................... 9

*United States v. Bicoastal Corp.*, 1992 WL 693384, at *6 (N.D.N.Y. Sept. 28, 1992) ...... 9

*United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013) ....................................... 19, 20

*United States v. Int'l Longshoremen's Ass'n*, AFL-CIO, 2006 WL 2014093, at *1 (E.D.N.Y. July 18, 2006) ............................................................................... 9

*United States v. Schwimmer*, 892 F.3d 237, 243 (2d Cir 1989) ...................................... 12

Defendant Ghislaine Maxwell submits this Response to Plaintiff Virginia Giuffre's

Motion to Compel the Production of Documents (filed Aug. 9, 2016).

## PRELIMINARY STATEMENT

Plaintiff propounded 43 requests for production. Of these, 23 are not in issue at this time

by stipulation of the parties. Of the remaining 20, Plaintiff argues Ms. Maxwell's responses are

deficient as to 13. The arguments are meritless. Most of the arguments are premised on an

attempt to "compel" the production of documents that do not exist; a misreading of

Ms. Maxwell's response; or a misunderstanding of the facts or law. The Court should deny the

Motion to Compel.

## ARGUMENT

### I. The objections and responses to the RFPs are proper.

#### A. RFP No. 1: Documents defense counsel "reviewed and/or relied upon" in a phone call with Plaintiff's counsel.

This request sought production of documents that Ms. Maxwell's attorneys "reviewed

and/or relied upon" in a telephone call with Plaintiff's counsel during which, Plaintiff alleges,

Mr. Pagliuca "stated that (1) Plaintiff made false allegations concerning her sexual assault;

(2) she made them in roughly the same time frame that Plaintiff was abused by Jeffrey Epstein;

(3) that the allegations were made against a number of individuals in the area; and (4) that the

allegations were found to be unfounded by local police." Plaintiff sought production of the Palm

Beach County Sheriff's Office police reports purportedly reviewed by Mr. Pagliuca before the

telephone call. The police reports—which were redacted and released by the Sheriff's Office—

reveal that in 1997-1998 Plaintiff made false accusations of sexual assault against a number of

individuals; ultimately the prosecutor refused to prosecute a sexual assault case against them.

The police reports were produced to Plaintiff's counsel in April 2016.

In response, Ms. Maxwell objected that the request inaccurately characterized Mr. Pagliuca's statements, that it sought privileged information and that it sought information that exists in the public domain, e.g., Internet or court records, and is equally available to all parties. Subject to and without waiving the objections, Ms. Maxwell referred Plaintiff to documents within Plaintiff's possession, custody and control and to documents relating to Plaintiff's false allegations of sexual assaults in Ms. Maxwell's Second Supplemental Rule 26(a)(1)(A) disclosures. Among the documents disclosed were copies of redacted police reports from the Sheriff's Office.

**The request is nonsensical.** RFP No. 1 asked for production of documents that relate to "statements" that never were made. Mr. Pagliuca did not make these four statements: "(1) Plaintiff made false allegations concerning her sexual assault; (2) she made them in roughly the same time frame that Plaintiff was abused by Jeffrey Epstein; (3) that the allegations were made against a number of individuals in the area; and (4) that the allegations were found to be unfounded by local police." Because he did not make these four statements, the premise of the entire request for production is faulty: Ms. Maxwell cannot produce documents "reviewed and/or relied upon" by Mr. Pagliuca relating to "statements" that, in fact, he did not make. Mr. Pagliuca did state that Plaintiff made false allegations of sexual assault against others (persons other than Ms. Maxwell), but that is hardly news to Plaintiff and it hardly required "review[] and/or reli[ance] upon" any police report and, in fact, he did not review the now-produced redacted police reports (or any version of them) before the conferral with Plaintiff's counsel.

**The RFP and motion to compel assume facts that do not exist (and that Plaintiff cannot establish).** Plaintiff's RFP and motion presuppose that the *only way* Mr. Pagliuca could have known Plaintiff's previous false accusations of sexual assault is by reviewing unredacted

copies of the police reports, hence, the RFP's demand for copies of police reports that Mr. Pagliuca "reviewed and/or relied upon." The presupposition is preposterous. Information available through the Internet or the media discloses Plaintiff's previous false accusations against various individuals for alleged sexual misconduct. *See, e.g.*, Menninger Decl., Ex.C (GM_00120: *New York Daily News* article dated Feb. 23, 2015, reporting on records it obtained disclosing that "[m]onths before" Plaintiff allegedly became a "'sex slave' of … Epstein and allegedly took part in orgies with Prince Andrew and others, *she accused two young men of raping her but was found not credible*") (emphasis supplied).

Plaintiff is well aware of this reporting of her previous false accusations against others, and also of the fact that the *New York Daily News* was able to obtain the information relating to the false accusations. In the same article, Plaintiff's counsel Sigrid McCawley's claimed Plaintiff was "'victimized all over again with [the *New York Daily News*' access to] *the leak of sealed juvenile records*.'" *Id.* (GM_00121) (emphasis supplied). Notably neither here nor in her quoted remarks did Plaintiff's counsel provide any facts to support her claim that, in fact, there was a "leak" as opposed to a proper disclosure of redacted records under the open records laws. Nor is it clear—beyond predictable public-relations spin—why Plaintiff's counsel refers to police reports about Plaintiff's false sexual assault allegations as "juvenile records."

The redacted police reports themselves are in the public domain. Anyone in the world, including anyone Plaintiff has falsely accused of sexual misconduct, is free to request, review and read the reports and thereafter to discuss the reports with anyone in the world. *See id.* Plaintiff's counsel have acknowledged that the parties have no duty to search the Internet for documents responsive to requests for production. In any event, Plaintiff has failed to make any

showing that Mr. Pagliuca reviewed any document, let alone any police report, before the March 2016 conferral telephone call. Plaintiff's speculation cannot do service for evidence.

There is no merit to Plaintiff's seriously misleading—and substantially groundless— argument that various Florida statutes barred Mr. Pagliuca from having information about false allegations of sexual assault by Plaintiff in 1997-1998 when she was a juvenile. Plaintiff cites sections 39.202(6), 119.071, 794.026 and 985.04 & .036 of the Florida statutes as support for her arguments.[1] None of these statutes support her arguments. For example, section 119.071 exempts certain information from Florida's open-records laws. Subsection (2)(h)1.b. provides that "the *identity* of a person who is a victim of any sexual offense" (emphasis supplied) is exempt from the open-records laws. Here, the defense obtained identity-redacted copies of the police reports, and disclosed them to Plaintiff. Accordingly, the Sheriff's Office did not violate section 119.071 by producing to the defense identity-redacted copies of the police reports. In any event, the Sheriff's Office is not a party to this action; the Court has no jurisdiction over the Sheriff's Office; the Court has no jurisdiction to enforce a Florida statute; and whether or not the Sheriff's Office violated any Florida statute, the publicly available, redacted police reports are part of the record and constitute highly relevant evidence in this action.

Similarly, section 985.04(1)(a) provides that information relating to a juvenile obtained during the course of a juvenile-justice case is exempt from the open-records laws. Section 985.036(2) actually provides that the victim of an offense committed by a juvenile—including, presumably, false reporting of a crime—is entitled to obtain a copy of the juvenile-offense report and may reveal the report to anyone else to the extent "reasonably necessary in pursuit of legal

---

[1]Plaintiff also cited Fla. Stat. § 985.054. There is no such statute.

remedies." In any event, none of the parties has produced any records from any juvenile prosecution.

Nor does section 794.026 have any relevance to this action. That statute creates a cause of action by a sexual crime victim against any person who "prior to open judicial proceedings" communicates "the name, address, or other specific identifying information" concerning the victim. The statute is irrelevant here. One, the identifying information in the police reports in this case was *redacted*. Two, the case at bar is an "open judicial proceeding"[2] involving Plaintiff as an alleged sexual crime victim, and a number of such open judicial proceedings have preceded this one; accordingly, the statute is inapplicable. Three, although not mentioned by Plaintiff, the statute expressly provides that a sexual crime victim has *no cause of action* unless she can show the communication of her identifying information "was intentional and was done with reckless disregard for the highly offensive nature of the publication." Here, Plaintiff has made no effort to show there was any communication by the defense of her identifying information, let alone that it was intentional and done with reckless disregard.

Regardless, the Florida statutes are irrelevant to the question whether Ms. Maxwell should be compelled to produce documents described in RFP No. 1 that do not exist.

**The records requested are irrelevant.** Plaintiff has asserted a single claim for defamation based on Ms. Maxwell's denial of her outrageous allegations of "sex trafficking." The dispositive question is whether the denial was defamatory. RFP No. 1 seeks documents Mr. Pagliuca allegedly "reviewed and/or relied upon" in allegedly making statements stating that Plaintiff previously made false accusations of sexual assault. In particular, it appears Plaintiff has adopted a fanciful notion that Mr. Pagliuca illegally obtained an unredacted copy of police

---

[2] *See Miami Herald Publ'g Co. v. Chappell*, 403 So. 2d 1342, 1344 (Fla. Ct. App. 1981).

reports discussing Plaintiff's previous false accusations of sexual assault, and that she must be permitted—in discovery in her defamation action—to investigate and "prosecute" a "leak"[3] by a police agency of police reports. This is not the time or place for such an investigation and "prosecution." *Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983) (courts should remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests") (internal quotations omitted). Plaintiff must simply be satisfied that the defense has discharged its discovery obligations and, as a result, Plaintiff has a copy of the same *redacted* police reports the defense *legally* obtained from the Palm Beach County Sheriff's Office.

### B. RFP Nos. 2-3: Documents concerning "how" the defense obtained "police report(s)."

These RFPs require Ms. Maxwell to unravel and decipher badly written requests for production.

A party is not required to respond to a discovery request that is so badly written that she must hazard a guess as to what it is requesting. *See Simmons v. Adamy*, No. 08-CV-6147L, 2011 WL 839739, at *2 (W.D.N.Y. Mar. 7, 2011) (denying motion to compel where "the interrogatory [was] otherwise incomprehensible"), *cited with approval in Denim Habit, LLC v. NJC Boston, LLC*, No. 13CV6084ADSSIL, 2016 WL 2992124, at *6 (E.D.N.Y. May 23, 2016); *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-CV-01644-REB-CBS, 2010 WL 502721, at *24 (D. Colo. Feb. 8, 2010) ("a responding party is entitled to answer a poorly phrased interrogatory as it was drafted"; "'the defendants were only obligated to answer the questions that were asked, and were not required to guess that information beyond that which was specified was being sought'") (quoting *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 323-24 (N.D. Ill. 2005)).

---

[3]This Resp., at 3.

RFP No. 2 requires Ms. Maxwell to produce documents "concerning how … such police report … (as referenced in Interrogatory No. 1)[] came into your possession." There *is* no Interrogatory No. 1; so *a fortiori* there *is* no reference to a police report. To the extent we read the request's "Interrogatory No. 1" to mean "Request for Production No. 1," it still is of no help, since RFP No. 1 itself *does not* "reference" a police report.

There are additional problems with RFP No. 2. The parties have exchanged numerous police reports dating back to the 1990s and concerning numerous alleged crimes by a number of discrete individuals. The RFP is far from clear what police reports it might be referring to.

> Produce all documents concerning how *any such police report*, or how any such recounting, retelling, summary or description of any such police report (as referenced in Interrogatory No. 1), came into Your possession. This request includes, but is not limited to, all documents concerning how, when, and by whom *such reports* [sic] (or descriptions of reports) were obtained from a minor child's sealed juvenile records and files.

(Emphasis supplied.) The first sentence refers to a single police "report"; the second refers to multiple, i.e., "such *reports*" (emphasis supplied). With the exception of "Your," none of the terms is defined. The second sentence heaps the irrelevant onto the confusion: the parties have not exchanged any "sealed juvenile records and files."

The RFP as a whole trafficks in irrelevance. This is an action for defamation based on a denial of Plaintiff's allegation of sexual misconduct. It is inconceivable that the means by which the defense *during the pendency of this action* obtained any redacted police report[4] has any bearing on the defamation claim. It is worth noting that Plaintiff is not claiming it is missing any police reports regarding her—and she is the only person who would know how many police reports she is referenced in. To say, therefore, that Plaintiff's actions—asking to "compel" production of documents responsive to this RFP and inviting the Court to help Plaintiff

---

[4]All local police reports the defense has disclosed to Plaintiff have been redacted.

"investigate" imagined violations of Florida law—constitute "collateral litigation" gives more

credit than is due. *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 273-74

(S.D.N.Y. 1999) (Sweet, J.) ("[W]hile discovery rules are broad, they do not permit discovery of

matters that are [not] relevant to the issues in the case….").

RFP No. 2's sweeping language calls upon Ms. Maxwell to identify documents

concerning "how" a "police report" came into our possession—without identifying what police

report is being referenced—and to produce those documents. This blatantly calls for attorney-

client communications and attorney work product, e.g., a request from Ms. Maxwell to counsel

or from counsel to an investigator to obtain a "police report" concerning Plaintiff. It also is so

overbroad that it blatantly calls for information subject to the joint-defense privilege.

RFP No. 3 is similarly badly written. It required Ms. Maxwell to produce documents

> concerning how information or knowledge of the local police's findings or
> opinions concerning Ms. Giuffre's allegations of sexual assault as a minor child
> came into Your possession, including but not limited to documents concerning
> any statements made by law enforcement or any state attorney, written or oral,
> concerning such allegations.

None of the terms is defined except for "Your." Accordingly, it is unclear what specific "local

police's *findings or opinions*" Plaintiff is referring to. Ms. Maxwell responded in part that she

disclosed responsive documents in her Second Supplemental Fed. R. Civ. P. 26(a)(1)(A)

disclosures.

RFP No. 3 suffers from additional fatal flaws. The request requires Plaintiff to identify

and produce documents concerning (a) "how" the defense came to possess "information or

knowledge" of "findings or opinions" of some unspecified "local police," and (b) "statements"

by any "law enforcement" or "any state attorney," whether "written or oral."

As discussed above in connection with RFP No. 2, none of this information has any

bearing whatsoever on Plaintiff's single defamation claim. It is wholly irrelevant "how" the

defense obtained information or knowledge of a law enforcement agency's findings or opinions that Plaintiff falsely accused individuals of sexual assault.

The request is so overbroad that it blatantly calls for information protected by the attorney-client privilege, joint defense privilege, and attorney work product doctrine. Plaintiff argues that no privilege protects communications with "non-client third parties, particularly when those communications are with public administration personnel for the purpose of seeking police records." Mot. Compel, at 7. The argument assumes, incorrectly, how the defense obtained the police reports, e.g., through a writing directed to "public administration personnel." It also ignores the breadth of RFP No. 3.

The request would require wholesale production of privileged communications between (a) Ms. Maxwell's attorneys and Ms. Maxwell, (b) defense counsel and their agents, and between (c) defense counsel with joint defense or common interest privileges concerning obtaining or receiving "local police[] findings or opinions" and "statements made by any law enforcement or any state attorney." As an example, if through defense counsel's investigation it learned from a witness about a Plaintiff's false allegations of sexual assault—which then led to its request for the redacted police reports—this RFP improperly would require production of documents relating to defense counsel's investigation.

### C.   RFP Nos. 6-7, 9-10: Joint defense agreements and related documents.

These RFPs sought production of joint defense agreements, and documents "concerning" such agreements, ███████████████████████████████████████ ████████████.

With respect to ███████████████████████████████████ ████████████████████████████.

████████████████████████████████████████

███████████████████████. Contrary to Plaintiff's argument, a joint defense agreement

prepared in anticipation of litigation is protected by the common interest doctrine, the joint

defense privilege, and the attorney work product doctrine. *See, e.g.*, *Lislewood Corp. v. AT&T*

*Corp.*, No. 13 CV 1418, 2015 WL 1539051, at *4 (N.D. Ill. Mar. 31, 2015) (joint-defense

agreement was protected from disclosure by common interest doctrine and attorney work product

immunity); *Heartland Surgical Specialty Hosp. v. Midwest Div.*, No. 05-2164-MLB-DWB, 2007

WL 950282, at *10 (D. Kan. Mar. 26, 2007) ("Defendants assert the applicability of the joint-

defense privilege to the joint-defense agreement itself because the agreement is a document

made by counsel for Defendants in furtherance of Defendants['] joint defense of Heartland's

allegations. Heartland does not appear to dispute this characterization.") (citation omitted);

*Falana v. Kent State Univ.*, No. 5:08 CV 720, 2012 WL 6084630, at **3-4 (N.D. Ohio Dec. 6,

2012) (holding that joint defense agreement was protected from disclosure by "attorney-client

privilege/common interest privilege and work-product doctrine"); *Generac Power Sys. v. Kohler*

*Co.*, 2012 WL 5463913, at *2 (E.D. Wis. Nov. 8, 2012) (holding that joint defense agreement

was protected by common interest doctrine and work product doctrine) (citing cases). In

*R.F.M.A.S., Inc. v. Mimi SO*, No. 06 Civ. 13114(VM)(MHD), 2008 WL 465113, at *1 (S.D.N.Y.

Feb. 15, 2008), this Court held:

> As a general matter, a joint-defense agreement fits within the broad definition of
> work product, which embraces documents prepared because of the prospect of
> litigation. *See United States v. Adlman*, 134 F.3d 1194, 1202-03 (2d Cir.1998).
> Indeed, most courts to address the matter have so found or assumed. *See, e.g.*,
> *McNally Tunneling Corp. v. City of Evanston*, 2001 WL 1246630, at *4 (N.D. Ill.
> Oct. 18, 2001); *A.I. Credit Corp. v. Providence Washington Ins. Co., Inc.*, 1997
> WL 231127, at *4 (S.D.N.Y. May 7, 1997); *United States v. Bicoastal Corp.*,
> 1992 WL 693384, at *6 (N.D.N.Y. Sept. 28, 1992); *see also United States v. Int'l*
> *Longshoremen's Ass'n*, AFL-CIO, 2006 WL 2014093, at *1 (E.D.N.Y. July 18,
> 2006).

Ms. Maxwell and her counsel ████████████████████. It was entered into in anticipation of litigation. *See* Menninger Decl. ¶ 2. Accordingly, the agreement is protected from disclosure by the joint defense privilege, the common interest doctrine, and the attorney work product doctrine.

It is noteworthy that the JDA has no relevance whatsoever to Plaintiff's single claim for defamation. For example, it would not bear on the truthfulness of Ms. Maxwell's denial of Plaintiff's claim of sexual misconduct; it would not bear on whether Ms. Maxwell published the denial; and it would not bear on whether Ms. Maxwell had actual malice at the time of any publication. Plaintiff's argument for relevance is nonsense. She claims the JDA ██████████ ██████████████████████████████████████████████ ████████████████████. Not only would a joint defense agreement show no such thing, but even if it did it would be utterly irrelevant. This is a defamation case in which Plaintiff alleges she suffered reputational harm because Ms. Maxwell denied Plaintiff's salacious allegations. "Conspiracies" and "ongoing relationships" have no conceivable relevance to the elements of a defamation claim. Particularly is that true ████████████████ *after* the alleged defamatory statements allegedly were published.

**D.   RFP No. 11: Communications between ████████████████ ██████████████████.**

RFP No. 11 sought production of documents concerning Ms. Maxwell's attorneys' and agents' communications with ████████████████████ for a 17-year time frame, from 1999 through 2016. Ms. Maxwell objected to the request on the ground it sought documents protected by the attorney-client privilege, the common interest privilege, and the work product doctrine. The defense noted it is withholding communications between defense counsel and ██████████████.

Plaintiff argues in her Motion to Compel that the Court's April 15, 2016, Opinion controls, and requires Ms. Maxwell to produce the requested documents. The argument badly mischaracterizes the Court's April 15 Opinion. That Opinion has nothing to do with whether communications between Ms. Maxwell's attorneys and ███████████████ are protected by any privilege or immunity.

The Opinion addressed Ms. Maxwell's assertion of privilege as to these communications involving █████████: (a) communications between ███████████████ that the latter forwarded to Ms. Maxwell (April 15 Opinion, at 32); and (b) an email from Ms. Maxwell to ██████████████ (*id.* at 36). The Court found there was insufficient information to establish ██████████████████████, and accordingly held the communications were not privileged. *Id.* at 32-33, 36. None of the Court's rulings on any privilege between ██████████████ has any bearing on whether there is any privilege between Ms. Maxwell's attorneys and ██████████████.

There is an attorney-client privilege protecting communications between Ms. Maxwell and her attorneys and between ██████████████. ████████; *see* Menninger Decl. ¶¶ 1-2. Both Ms. Maxwell's attorneys ████████████ have created work product that is protected from disclosure by the attorney work product doctrine. ████████; Menninger Decl. ¶¶ 2, 5 & 6.

"[T]he common interest privilege extends the attorney-client privilege to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." April 15 Opinion, at 14-15 (internal quotations omitted). A limited common purpose necessitating disclosure is sufficient, and a total identity of interest among the

participants is not required. *Id.* at 15. Parties may share a "common legal interest" even if they are not parties in ongoing litigation. *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015). The common interest rule serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel. *Id.* "It is therefore unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply." *Id.* (internal quotations and brackets omitted).

To show the common interest privilege applies, the party claiming its protection must show the communication was made in the course of the ongoing common enterprise with the intention of furthering that enterprise. April 15 Opinion, at 15; *see United States v. Schwimmer*, 892 F.3d 237, 243 (2d Cir 1989) (privileged communications disclosed to outsider remain privileged "where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel of an ongoing common enterprise and multiple clients share a common interest about a legal matter").

As set forth in the Declaration of Laura A. Menninger at ¶ 2: Ms. Maxwell shares a common interest with both ███████████████████████. In her story about "sexual trafficking███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████. Depending on the factual or legal issue, ████████████████

████████████████████████████████████████████

██████████████████████████—have exchanged information subject to protection under the attorney-client privilege or the attorney work product doctrine. At least one of the

principal purposes of exchanging this information was to pursue and consider pursuing an ongoing common enterprise as to which all the information-exchanging participants have a common intent to further that enterprise.

### E. RFP No. 12: Documents "concerning" Plaintiff, "whether or not they reference her by name."

This request required Ms. Maxwell to produce:

> all documents **concerning** Virginia Giuffre (a/k/a Virginia Roberts), *whether or not they reference her by name*. This request includes, but is not limited to, all communications, diaries, journals, calendars, blog posts (whether published or not), notes handwritten or not), memoranda, mobile phone agreements, wire transfer receipts, or any other document that concerns Plaintiff in any way, whether or not they reference her by name.

(Emphasis supplied.) A request more sweeping than this one would be hard to imagine.

In this defamation action brought by Plaintiff Virginia Giuffre a/k/a Virginia Roberts, the parties have exchanged many thousands of pages of documents. The parties cumulatively have hundreds of pages of documents subject to privilege that they have not exchanged. *Every single one* of these thousands of pages of documents—whether exchanged by the parties or held by them under a privilege—"concern[s]" Plaintiff. If they did not, they would not have been exchanged or placed on a privilege log. This entire case "concerns" Plaintiff.

Not even Plaintiff seriously argues that this RFP is reasonable. Her argument to compel the unreasonable consists of three sentences. *See* Mot. Compel, at 11. Conspicuously missing is any explanation of why a request for "all documents concerning" Plaintiff would not require review and production of every document the defense has in this case.

We note that notwithstanding the overbreadth of RFP No. 12, before Plaintiff propounded that request the defense already has produced from Ms. Maxwell's files all documents containing Plaintiff's name.

14

### F.   RFP Nos. 17-18: Ms. Maxwell's "statements" to any person, group or entity.

RFP No. 17 required Ms. Maxwell to produce:

> all documents concerning any statement made by You or on Your behalf to the press or any other group or individual, including draft statements, concerning Ms. Giuffre, by You, Ross Gow, or any other individual, from 2005 to the present, including the dates of any publications, and if published online, the Uniform Resource Identifier (URL) [sic] address.

Besides "you" and "your," none of the terms is defined.

Many pages of responsive documents were produced to Plaintiff well before this RFP was propounded. In response to the RFP, Ms. Maxwell interposed a number of objections, e.g., the request is cumulative; it is duplicative; it seeks information in the public domain; it calls for documents protected from disclosure by the attorney-client privilege, the work-product doctrine or other privilege or immunity. However, Ms. Maxwell answered. She said she "has been unable to locate any *additional* documents responsive to this Request" (emphasis supplied).

Plaintiff's argument is twofold. Her first argument misleadingly suggests Ms. Maxwell has produced no documents responsive to the request. To support the misleading suggestion, Plaintiff badly misquotes Ms. Maxwell's answer as simply saying she is "'unable to locate' documents concerning her statement." Mot. Compel, at 12. As discussed in the previous paragraph, Ms. Maxwell answered she could not in response to the RFP locate any "additional" documents. That fully answers the RFP.

The second argument is an implicit general disagreement with Ms. Maxwell's answer. Plaintiff appears to argue that there "must be" more responsive documents. *See id.* Such a speculative argument is entitled to no weight. The Court cannot "compel" the production of documents that do not exist.

To the extent Plaintiff argues that the defense has the burden of conducting Internet searches for the purpose of locating responsive documents, we simply note that in the July 26, 2016, conferral on discovery issues all counsel agreed none of the parties had any obligation to "troll the Internet" searching for documents responsive to discovery requests.

Finally, RFP No. 17 is absurdly broad. It requires Ms. Maxwell to produce "all" documents "concerning" "*any statement*" made by Ms. Maxwell or "on [her] behalf" to "any … group or individual" "concerning" Plaintiff. This clearly and unreasonably includes any communication by Ms. Maxwell or her agents to her lawyers and other professionals with whom her communications are privileged. For example, if Ms. Maxwell made a "statement" in an email to undersigned counsel concerning this action—which undoubtedly "concerns" Plaintiff—the email is subject to this request. This is not an enforceable request.

RFP No. 18 requests documents in a grammatically tortured way: "Produce all documents concerning which individuals or entities You or Your agents distributed or sent any statements concerning Ms. Giuffre referenced in Request No. 18 made by You or on Your behalf." The request appears to ask for documents "concerning" individual or entities *to which* Ms. Maxwell distributed or sent statements concerning Plaintiff. Ms. Maxwell gave the same response she gave to RFP No. 17.

Plaintiff again makes the misleading suggestion that Ms. Maxwell previously has produced no documents to her. In fact, the defense previously produced responsive documents and said it could not locate any "additional" documents. That is fully responsive.

Plaintiff argues "only [Ms. Maxwell] has access to a comprehensive list of her defamatory statements and of the outlets to which she distributed them." Mot. Compel, at 12. The presumptuous argument is meritless. Insofar as we are aware, no such "comprehensive list"

exists. Beyond Plaintiff's bald, factually unsupported and speculative statement, Plaintiff gives

neither the Court nor us any reason to believe *she* is aware of such a list. Plaintiff's contention

appears to be another argumentative—but factually baseless—"there must be more documents"

assertion. That is not a valid basis to request a court to compel production of documents.

**II.   Ms. Maxwell properly has asserted privileges.**

In Argument C of her Motion to Compel, Plaintiff says the defense improperly asserted

privilege as to various documents. We incorporate here by reference the discussions above

regarding the defense's assertion of privilege. We address here Plaintiff's argument that privilege

was improperly interposed with respect to specific documents.

**A.   Email from Mr. ▇▇▇▇ to Ms. Maxwell.**



that was labeled "Attorney-Client Privilege."

The common interest doctrine protects the email from disclosure. ▇▇▇▇▇▇

_____

[5]The Motion to Compel makes vague references to the email Plaintiff seeks to compel
production of. Insofar as we can tell, Plaintiff is seeking production of Item 22.



April 15 Opinion, at 31-32. ███████████████████████████████

███████████████████████████████, thereby establishing an attorney-client

privilege, it is irrelevant for purposes of the joint defense privilege and common interest doctrine

███████████████████████████████. *See Millenium Health LLC v. Gerlach*,

No. 15-cv-7235 (WHP)(JLC), 2015 WL 9257444, at *2 (S.D.N.Y. Dec. 18, 2015).

For these reasons, ███████████████████████████████████

█████████ is protected from discovery by the attorney-client privilege, the joint defense

privilege and the common interest doctrine.

**B. Emails exchanged between** █████████████████████████
█████████.

Item 23 of the Privilege Log lists various emails between ████████████████████

█████████████████████████████.

These emails are subject to the attorney work product rule and the common interest

doctrine under the same analysis this Court used to evaluate ███████████████

███████████████████████████.[6] *See* April 15 Opinion, at 30-32. Here, Plaintiff

_____

[6]Plaintiff argues that the defense has failed to establish the existence of a joint defense
agreement. The existence of a joint defense agreement, however, is irrelevant to whether there
exists a common interest between two persons that insulates their otherwise privileged or
immune communications from being discovered. *See Schwimmer*, 892 F.2d at 243-44. Such a

admits ████████████████████████████. *See* Mot. Compel, at 15. ████████████

████████████████████████████████████. *See* ███████████3. The emails between

██████████████████████ contain their mental impressions, conclusions, opinions and

theories concerning issues relating to ongoing legal matters, including this action. *See* ████████

█████████████████████. As with Ms. Maxwell ████████████, *see* April 15 Opinion, at 31-

32, Ms. Maxwell and ███████████ have "more than a common problem or a common interest

in one another's vindication. Both are implicated by the overarching narrative that ███████

committed sexual abuse and sex trafficking," *id.* *See* ███████████; Menninger Decl. ¶¶ 4-5.

Therefore, each has "a common defense of proving or arguing that narrative to be false," April

15 Opinion, at 32. ███████████████████ therefore have "a sufficiently common

purpose that sharing their legal advice was necessary to put forth a common defense," *id.* *See*

████████████████████████.[7] Additionally, ████████████████████████████

████████████████████████████████████████████████

█████████████████████████

**C.   Emails exchanged between** ██████████████████████ **and Ms. Maxwell's attorney.**

Item 24 of the Privilege Log lists emails exchanged between ████████████████████

████████████████████████████████████.

These emails are subject to the attorney work product rule and the common interest

doctrine under the same analysis this Court used to evaluate ████████████████████

---

common interest ████████████████████████████████████

█████████.

[7]It hardly need be said that the settlement of ███████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████



████████████████████████. *See* April 15 Opinion, at 30-32. Here, Plaintiff admits that ███████████████████████. *See* Mot. Compel, at 16. ██████████ ██████████████████████████. ████████████. The emails between █████████████████████ contain their mental impressions, conclusions, opinions and theories concerning issues relating to ongoing legal matters, including this action. *See* Menninger Decl. ¶¶ 4, 6███████████. Their common interest was described by this Court on pages 31-32 of its April 15 Opinion.

### III.   Plaintiff has failed to establish any ground for an invasive "forensic review" of Ms. Maxwell's electronic devices.

Plaintiff argues she should be permitted to conduct a "forensic review" of Ms. Maxwell's electronic devices; such a review is warranted, Plaintiff argues, because Ms. Maxwell noted in her responses to Plaintiff's RFPs that before commencement of this litigation Ms. Maxwell regularly deleted her emails after reading them. Mot. Compel at 16. The argument is meritless.

First, contrary to Federal Rule of Civil Procedure 37(a)(1), the Local Rules and this Court's oral order at the March 17, 2016, hearing, Plaintiff failed to confer with defense counsel regarding any "forensic review" of Ms. Maxwell's electronic devices. Plaintiff's counsel's conferral letter (*see* Schultz Decl., Ex.3) does not mention any concern over Ms. Maxwell's practice—engaged in before commencement of this action—of deleting read emails, let alone propose a "forensic review" of her electronic devices. The failure to confer is alone sufficient to deny the Motion to Compel. *See Auto. Club of N.Y. v. Port Auth'y of N.J.*, No. 11 CIV. 6746 RKE HBP, 2012 WL 4791804, at \*6 (S.D.N.Y. Oct. 9, 2012).

Second, the courts have recognized that "[a] comprehensive forensic search of a computer, whether a desktop or a laptop, involves a significant invasion of privacy," *Abidor v. Napolitano*, 990 F. Supp. 2d 260, 280 (E.D.N.Y. 2013) (citing *United States v. Galpin*, 720 F.3d

436, 447 (2d Cir. 2013)). *See* Advisory Comm. Notes to 2006 Amendments to Federal Rules of Civil Procedure ("Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy…. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems."), *quoted with approval in Thompson v. Workmen's Cir. Multicare Ctr.*, No. 11 Civ. 6885(DAB)(HBP), 2015 WL 4591907, at *11 (S.D.N.Y. June 9, 2015); *see also United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013) ("[t]he potential for privacy violations occasioned by an unbridled, exploratory search of a hard drive is enormous").

Because personal computers contain highly personal and sensitive material courts generally require a heightened showing of good cause. *See, e.g., Memory Corp. v. Ky. Oil Tech.*, No. C04-03843 RMW (HRL), 2007 WL 832937, at *3 (N.D. Cal. Mar. 19, 2007) (citing cases involving "extreme situations" warranting mirror imaging of computer). Plaintiff has made no showing of good cause, let alone a heightened one. Her request for such an extraordinary invasion of Ms. Maxwell's privacy is grounded on nothing more than pure conjecture. As requested by Plaintiff, the defense ran certain Plaintiff-selected search terms to identify emails sought by Plaintiff. Because the search had no hits on two of Ms. Maxwell's four email accounts, Plaintiff argues, "there is *strong indicia* that [Ms. Maxwell] deleted relevant documents." Mot. Compel, at 16 (emphasis supplied).

This "reasoning" is fundamentally flawed. Ms. Maxwell stated in her responses to the RFPs that "prior to this litigation [she] has long had a practice of deleting emails after they have been read." Menninger Decl., Ex.B ¶ 16, at 3. We suggest that two very sensible reasons why the search produced no hits in two of the four email accounts is because no emails containing the search terms ever existed in those two email accounts or because before this litigation occurred

any such emails had been routinely deleted. In either case, Plaintiff would have no basis for a forensic review of Ms. Maxwell's electronic devices.

Plaintiff's suggestion that deletion of emails *at any time and for any reasons* constitutes grounds for forensic examination of computers is meritless. To support a request for forensic examination based on spoliation, Plaintiff must show the evidence at one time existed. Yet she cannot do that. Having shown that the evidence once existed, Plaintiff then must further establish that Ms. Maxwell "having control over the evidence had an obligation to preserve it at the time it was destroyed," *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001). Yet Plaintiff cannot do this either.

There is an independent ground to deny the request for forensic examination: Plaintiff has failed to specify the purpose, methodology and time frame of any such examination. Without this threshold information, "it is inappropriate to grant plaintiff access to [Ms. Maxwell's] computers," *Thompson*, 2015 WL 4591907, at *2 (citing *Loving v. N'Namdi,* No. 05 Civ. 7966(JGK)(MHD), 2006 WL 3456311 at *1 (S.D.N.Y. Nov. 29, 2006) ("We are not inclined in any event to approve testing without a specification of purpose, methodology and time-frame.")).

Plaintiff thus is left with nothing to support her request for a forensic examination but her unfounded accusation that after this litigation commenced Ms. Maxwell destroyed relevant emails. "[M]ere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures," *John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008), such as forensic examination of computers. *See McCurdy Group v. Am. Biomed. Grp.*, 9 Fed. Appx. 822, 831, 2001 WL 536974, at *7 (10th Cir. 2001) ("drastic" discovery measure of physical inspection of computer hard drive was not warranted merely because movant was "apparently skeptical that [non-movant] produced copies of all relevant and

nonprivileged documents from the hard drive(s)"); *Memry Corp.*, 2007 WL 832937, at *3 ("[A] mere desire to check that the opposition has been forthright in its discovery responses is not a good enough reason" for a court order compelling an exhaustive computer forensic examination."); *see also John B.*, 531 F.3d at 460 ("Civil litigation should not be approached as if information systems were crime scenes that justify forensic investigation at every opportunity to identify and preserve every detail.") (internal quotations omitted).

In short, an unfounded accusation cannot warrant the extraordinary relief Plaintiff seeks. *See, e.g., NOLA Spice Designs, LLC v. Haydel Enters.*, 2013 WL 3974535, at **3-4 (E.D. La. Aug. 2, 2013) (denying request for computer forensic examination where non-moving party "has not willfully defaulted on its discovery obligations in a way that would justify the requested examination," moving party's argument for examination was based on "mere skepticism and mere desire to check that the opposition has been forthright in its discovery responses," and moving party's rationale was premised on its having not received materials "it suspects should exist") (internal quotations omitted).

## CONCLUSION

For the foregoing reasons the Court should deny the Motion to Compel.

August 19, 2016

Respectfully submitted,


/s/ Laura A. Menninger
Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Tel: 303.831.7364
Fax: 303.832.2628
lmenninger@hmflaw.com

*Attorneys for Defendant Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on August 19, 2016, I electronically served this *DEFENDANT'S RESPONSE TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com


Bradley J. Edwards
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu


J. Stanley Pottinger
49 Twin Lakes Rd.
South Salem, NY 10590
StanPottinger@aol.com


*/s/ Nicole Simmons*
Nicole Simmons

25