UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

VIRGINIA L. GIUFFRE,

      Plaintiff,

v.

GHISLAINE MAXWELL,

      Defendant.

**15-cv-07433-RWS**

-------------------------------------------------X

**Defendant's Reply in Support of Motion to Compel Responses to
Defendant's Second Set of Discovery Requests to Plaintiff, and for Sanctions**

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
East 10th Avenue
Denver, CO 80203
303.831.7364

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.   PLAINTIFF'S INTERROGATORY RESPONSES ARE DEFICIENT. ............................. 2

II.  PLAINTIFF'S ANSWERS TO THE REQUESTS FOR ADMISSION ARE DEFICIENT.
     ........................................................................................................................... 15

III. PLAINTIFF'S RESPONSES TO REQUESTS FOR PRODUCTION ARE DEFICIENT. 16

CONCLUSION ....................................................................................................................... 21

CERTIFICATE OF SERVICE ................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*Bauman v. 2810026 Canada Ltd.*, No. 15-CV-374A(F), 2016 WL 402645, at *1 (W.D.N.Y. Feb. 3, 2016) .......................................................................................................................... 14

*Bruno v. CSX Transp., Inc.*, 262 F.R.D. 131, 133-34 (W.D.N.Y. 2009) ..................................... 15

*Pokigo v. Target Corporation*, 2014 WL 6885905, at **2-3 (W.D.N.Y. Dec. 8, 2014) ............. 15

*Walls v. Paulson*, 250 F.R.D. 48 (D.D.C. 2008) ......................................................................... 33

**Rules**

Fed. R. Civ. P. 26(g)(1) .............................................................................................................. 34

Fed. R. Civ. P. 26(g)(3) .............................................................................................................. 34

Fed. R. Civ. P. 37(a)(5) .............................................................................................................. 34

Defendant Ghislaine Maxwell submits this Reply in support of her Motion to Compel Responsive Answers to her Second Set of Discovery Requests, and for Sanctions because of Plaintiff's repeated and baseless failure to answer the discovery requests and for her counsel's baseless assertion of objections.

## PRELIMINARY STATEMENT

Plaintiff is seeking damages exceeding $80 million. Yet, as trial approaches, she and her counsel have continued to stonewall our attempts to obtain basic information to defend against her defamation claim. So, for example, Plaintiff persists in refusing to answer an interrogatory requiring her to specify all the allegedly false statements by Ms. Maxwell that supposedly are the subject matter of this lawsuit. Instead, Plaintiff and her counsel tease only, stating that they have provided some of the statements but it would be "unduly burdensome" for them to provide all the allegedly false statements that are the subject of this lawsuit. It is remarkable that nearly a year after Plaintiff brought this defamation action, Ms. Maxwell still does not know the entirety of the allegedly false statements she is to be defending against.

Even more remarkable is Plaintiff's argument that Ms. Maxwell's Motion to Compel is an improper elevation of "a routine discover [sic] dispute" into an event for which sanctions are appropriate. There is nothing "routine" about Plaintiff's refusal to provide basic information needed to defend against her claim, her evasive and incomplete answers to simple discovery requests, and her counsel's assertion of substantially groundless—frivolous—objections. This constitutes discovery misconduct for which sanctions are appropriate under Federal Rule of Civil Procedure 37(a)(5)(A). Only sanctions will discourage Plaintiff from engaging repeatedly in this kind of misconduct, forcing Ms. Maxwell to spend ever increasing amounts in discovery litigation to obtain basic information needed to defend against this $80 million lawsuit.

1

**ARGUMENT**

## I.   Ms. Maxwell complied with Local Rule 37.1.

Local Rule 37.1 requires that a party moving for resolution of a discovery dispute must specify and quote or set forth verbatim in the motion papers each discovery request and response on which the motion seeks relief. Plaintiff argues that the "entire motion" should be denied because the Motion to Compel "failed to do this" as to the "majority of discovery items" at issue. Resp. 1-2. This is another example of Plaintiff's assertion of substantially baseless arguments.

Verbatim quotation of the discovery and response is necessary, Plaintiff says, because "[u]pon [sic] a motion to compel, a Court is called upon to evaluate the discovery requests *as well as the responses and objections*," and it is important for it to consider the "entire data sets put forth in response to the interrogatories." Resp. 2. Plaintiff's argument evokes the idiom about the pot and the kettle. In February Plaintiff moved to "compel production of documents subject to improper claim of attorney-client privilege and common interest privilege." Doc.33, at 1 (capitalization altered). The motion argued that Ms. Maxwell's objections and assertions of privilege as to various requests for production were improper. *See id.* at 1-2. Nowhere in this 19-page motion or in the supporting papers did Plaintiff set forth verbatim the requests and responses that the motion sought relief on. As a result, in evaluating Plaintiff's motion the Court could not consider the "entire data sets put forth" in Ms. Maxwell's discovery responses.

Regardless, Plaintiff's complaint is meritless. In her discovery responses, Plaintiff—with an eye toward Local Rule 37.1's requirement that a movant set forth verbatim the discovery requests and responses—has engaged in a creative abuse of Local 37.1. When responding to discovery requests, Plaintiff's counsel routinely interposed a series of "objections," *combined with pages of argument and string citations to cases*—none of which constitutes an objection. Plaintiff's response to Interrogatory 14 is illustrative. That interrogatory required Plaintiff to

2

identify anyone who subjected her to illegal or inappropriate sexual contact, conduct or assault. In response, Plaintiff's counsel interposed a *five-page, 1,462-word* "objection." Of course much of it was not any kind of proper objection. It read like a brief, because Plaintiff intended it to be one, and intended that it would be included in any motion to compel (else Plaintiff would argue a "violation" of Local Rule 37.1, as she has here).

We did two things to comply with Local Rule 37.1. One, in the motion, which without Plaintiff's counsel's prolix legal arguments and argumentative string citations was 37 pages long, we quoted verbatim Plaintiff's objections while doing our best to omit her arguments and argumentative string citations, i.e., her brief. We said in footnote 4, page 14, of the motion that "Plaintiff's voluminous arguments and argumentative citations to case law—inserted into her multi-page 'objections'—are omitted in this Motion." Two, we attached as Exhibit B to Ms. Menninger's declaration in support of the Motion to Compel "a true and correct copy of Plaintiff's Responses" to Ms. Maxwell's Second Set of Discovery Requests. *See* Doc.355 ¶ 2 & Ex.B. We are fully in compliance with Local Rule 37.1.

## II.  Plaintiff's responses to interrogatories were deficient.

### A.  Interrogatory No. 5.

***Plaintiff's counsel's communications with media representatives.*** Plaintiff's resistance to providing information about her counsel's communications with the media rests on her unreasonable reading of the interrogatory. To avoid answering, Plaintiff "reads" the interrogatory as requiring her counsel to provide information about all media communications they ever have had in their lives regarding any subject matter whatsoever. Such an unreasonable "reading" violates Local Rule 26.4(b), which requires that "[d]iscovery requests shall be read *reasonably*" (emphasis supplied). So read, this interrogatory is limited to communications Plaintiff and her attorneys have had with media representatives concerning the subject matter of this lawsuit.

3

Plaintiff's argument that her counsel's communications with the media are not relevant and therefore not discoverable is meritless. A party may obtain discovery on any matter relevant to "any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial so long as it appears "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Plaintiff's argument that the defense "fail[ed] to explain" how her counsel's communications with the media are relevant, Resp. 3, is a willful head-in-the-sand argument. It ignores not only our argument on page 6 of the Motion to Compel, where we set forth the defenses to which the communications are palpably relevant, but also the law governing Plaintiff's very lawsuit. For example, Plaintiff and her agents' (i.e., her lawyers') communications—the quantity and the substance—bear directly on the extent to which Plaintiff should be considered a public figure. To establish plaintiff is limited-purpose public figure, defendant must show plaintiff "(1) successfully invited public attention to [her] views … to influence others …; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) *maintained regular and continuing access to the media.*" *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136-37 (2d Cir. 1984) (emphasis supplied), *quoted in Enigma Software Grp USA, LLC v. Bleeping Computer LLC*, No. 16 Civ. 57 (PAE), 2016 WL 3773394 (S.D.N.Y. July 8, 2016). Plaintiff is well aware that the extent to which she is a public figure is a central issue in this action. *See* Doc.189, at 7.

As another example, Plaintiff's counsel are well aware that various media representatives, including news reporters, have uncovered facts relevant to this lawsuit and have *disclosed these facts* to Plaintiff's counsel in written communications. On the day of oral

4

argument on reporter Sharon Churcher's motion to quash the subpoena issued to her, counsel for Ms. Maxwell received a voicemail from Ms. Churcher to Plaintiff's counsel Paul Cassell. In that voicemail, Ms. Churcher invited Mr. Cassell to speak with her "on a deep background basis" about an affidavit apparently by Plaintiff that contains testimony "close to perjury" and sought Mr. Cassell's "advice"—if it would not present a "conflict" for him:

> I, ah, *as you know*, um, feel almost like a friend of Virginia's. Uh, I have got something. *I think the FBI affidavit was pretty close to perjury*. Give me a call when you get a chance, um, on a deep background basis *if it's not going to be a conflict for you*. Um, it's something that I wanted to get your advice on.

Menninger Decl. in Supp. of Reply re Mot. to Compel, Ex.A (emphasis supplied). The voicemail indicates Ms. Churcher and Mr. Cassell have engaged in other communications. Based on this voicemail, it is understandable Plaintiff is resisting discovery of media communications with her counsel, but there is no question such communications are powerfully relevant to the factual issues in this case, including Plaintiff's own credibility and her counsel's potential involvement in directing and influencing media coverage of Plaintiff's narrative.

***Plaintiff's communications with media representatives.*** Plaintiff's response to our motion to compel her communications with media representative illustrates the kind of gamesmanship the defense is facing. In response to Interrogatory No. 5, Plaintiff interposed multiple objections, such as the objection that the interrogatory imposed upon her an "undue burden" because she would have to "catalogue *literally hundreds* of communications that she has already produced in this case." Menninger Decl. in Supp. of Mot. to Compel, Ex.B, at 5 (emphasis supplied). "Notwithstanding" her many objections, Plaintiff responded, the "responsive communications … are found" among 7,566 pages of documents she previously produced. *Id.*

5

After forcing Ms. Maxwell to file a motion to compel citing cases holding that a party may not answer an interrogatory by referring to thousands of pages of documents, Plaintiff *now* comes clean (in a half-baked way). When communicating with the *Court* Plaintiff *now* does *not* claim there are "literally hundreds of communications"; instead, she says "t███████ ██████████████████████████████." Resp. 4 (emphasis supplied); *see id.* 5 (noting there are "███████████████████"). Instead of referring the defense to 7,566 pages of documents, Plaintiff *now* provides a narrower Bates range of documents within which are the ███ documents. *See id.* at 4 n.3. Rule 37(a)(5)(A) specifically accounts for this kind of discovery misconduct—frivolously stonewalling until a motion to compel is filed, then supplying a (more) responsive answer:

> If … the requested discovery is provided after the motion was filed … the court must … require the party … whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

In footnote 4 of her response, Plaintiff rattles off a series of Bates number ranges, giving the impression to the Court she is specifying where among the 7,566 pages of documents she's produced the ██████████ are located. The impression is a misleading one. The Bates range covers 1,901 pages. Included among the Bates range are hundreds of pages of medical records, her resumes, residential sales contracts, flight itineraries, papers from other lawsuits, and education records. Plaintiff does not dispute the case law condemning the practice of responding to interrogatories by referring the propounding party to a mass of documents. She cannot comply with the law prohibiting this practice by telling us to "fetch" ██████████ from 7,566 pages or 1,901 pages of documents.

We are not sympathetic to Plaintiff's argument that she should not be required to give a responsive answer to the interrogatory because she simply would be "writing down" information

6

from each of the "approximately" ███████. For one, the interrogatory requires Plaintiff to disclose the amount of income Plaintiff and her attorneys received in exchange for communicating with the media, and the dates they received the income. *See* Mot. Compel, at 2-3. None of this information would be in the approximately ███████. Regardless, the failure to provide this information is non-responsive and warrants sanctions. For another, contrary to her representations to the contrary, *see* Resp. 4, Plaintiff and her counsel are well aware that the "███████████████████" do not constitute "██," *id.*, the communications they have had with media representatives. For example, the defense is aware Plaintiff has been interviewed on camera by the media; yet Plaintiff has failed to disclose these communications. Another example is the voicemail Plaintiff's counsel received from a reporter. *See* This Reply, at 5.

### B.   Interrogatory No. 6.

Interrogatory No. 6 required Plaintiff to "[i]dentify any 'false statements' attributed to Ghislaine Maxwell which were 'published globally, including within the Southern District of New York' as You contend *in paragraph 9 of Count 1 of Your Complaint*." Menninger Decl. in Supp. Of Mot. to Compel, Ex.A, at 4 (quoting Doc.1 ¶ 9, at 9; emphasis supplied). For each such "false statement, Plaintiff was required to provide, *inter alia*, "the exact false statement," the date of its publication, the publishing entity, and the URL for any internet version of such publication. *Id.*



Plaintiff argues that she "████████████████████████ ████████████████████████," and in answer to Interrogatory No. 6 she "████████████████████████." Resp. 5. Plaintiff "██ ████████████████" she continues, of "████████████████████." *Id.* (emphasis supplied). The argument uses a disingenuous sleight of hand—to argue about how Plaintiff answered an interrogatory that Ms. Maxwell did not ask.

Interrogatory No. 6 did not ask Plaintiff to identify "███████████ ██████████." It asked her to provide identify all "false statements" (a term *Plaintiff* used in her Complaint) attributed to Ms. Maxwell that were "published globally" (a phrase *Plaintiff* used in her Complaint) "as You contend in paragraph 9 of Count 1 of Your Complaint." As the interrogatory makes clear, Plaintiff cannot deny knowing every "false statement[]" "published" anywhere in the world that she "contend[ed]" in paragraph 9 of Count 1 of *her Complaint* was attributed to Ms. Maxwell. She cannot deny that because she—and only she—is aware of every false statement to which she was referring in paragraph 9 of Count 1 of her Complaint.

Separately, Plaintiff argues she answered the interrogatory by providing a chart listing various URLs where statements by Ms. Maxwell or by others attributed to Ms. Maxwell might be found in Internet publications. Resp. 6-7. This is a red herring that constitutes an "evasive or incomplete … answer," Fed. R. Civ. P. 37(a)(4). Plaintiff cannot provide "the exact false statement" she attributes to Ms. Maxwell by listing URLs containing an article that contains an alleged statement by Ms. Maxwell. In the URL for *The Telegraph*, for example, four statements are ███████████████████████████ Which of these four statements, if any, is referenced in paragraph 9 of Count 1 of Plaintiff's Complaint? Only Plaintiff knows, but she isn't telling. Plaintiff's refusal to specify the exact statement that she claimed in paragraph 9 was false is an evasive or complete answer subjecting her to sanctions. The same is true for every other allegedly false statement referenced in paragraph 9 that Plaintiff has refused to specify, as required in the interrogatory.

Plaintiff's argument that she has provided "███████" (via the list of URLs) of allegedly false statements is similarly an evasive and incomplete answer. An "███████" suggests Plaintiff knows of *more* statements but is not disclosing them. That is an evasive and non-responsive

8

answer. Regardless, proving URL "███████" of where an article can be found is not a specification of the "exact false statement" referenced in paragraph 9.

### C.   Interrogatory No. 7.

This interrogatory required Plaintiff to state whether she "believe[s]" she has been defamed by anyone other than Ms. Maxwell and, if so, provide additional information, such as "the exact false statement" and the date of its publication.

Having now seen Plaintiff's response to our Motion to Compel, we respectfully submit that her response to Interrogatory No. 7 is another example of discovery gamesmanship. In the response, Plaintiff objected on "attorney-client/work product privilege grounds" and then answered: "Alan Dershowitz published statements about Ms. Giuffre in January 2015 and thereafter that remain in the public realm." Menninger Decl. in Supp. of Mot. to Compel, Ex.B, at 9. Notably, Plaintiff made no effort to identify "the exact false statement" Professor Dershowitz allegedly made or to provide the date of its publication or other information required by the interrogatory.

Plaintiff's response to the Motion to Compel is revealing of her discovery gamesmanship. There, unlike in her discovery responses, Plaintiff discloses she is well aware of what the interrogatory is requesting—she states that Professor Dershowitz ████████████████ ████████████████████ and cites to a January 22, 2015, news article. Resp. 9. This is yet another example of how Plaintiff provides evasive and incomplete answers until she has caused Ms. Maxwell to expend time and money to move to compel. It is willful discovery misconduct warranting Rule 37 sanctions.

Plaintiff's effort to show—in motion-to-compel proceedings—that she is "coming clean" in her discovery response is wanting. Her Rule 37 response merely highlights that she is well aware of statements made by others, e.g., Professor Dershowitz, that she "believes" are

defamatory *yet she has failed to answer the interrogatory* by providing the requested

information, such as the "exact false statement." As discussed above, it is evasive to simply refer

the defense to an "article" that contains numerous statements by numerous third parties, since it

is impossible for the defense to know which of the statements Plaintiff believes is defamatory.

The balance of Plaintiff's response to the Motion to Compel is more of the same strategy

used with regard to Interrogatory No. 6: She creates a strawman argument by "reading" the

interrogatory so that it asks for something that, in fact, it does not. For Interrogatory No. 7,

Plaintiff "reads" it to require her to "███████████████████████████████████████████

████." Resp. 8. She then proceeds to knock down the strawman by suggesting she could not

possibly find all instances of defamation against her. *See id.* at 8-10. This is not good faith

discovery litigation.[1]

Plaintiff repeats her objection that the interrogatory "████████████████████████

██████████████████████." Resp. 8. This is a frivolous objection. Rule 33(a)(2)

provides in relevant part: "An interrogatory is not objectionable merely because it asks for an

opinion or contention that relates to … *the application of law to fact*…" (emphasis supplied). *See*

*E.E.O.C. v. BNSF Ry. Co.*, No. 12-02634-JWL-KGG, 2014 WL 2589182, at *2 (D. Kan. June

10, 2014) ("it is improper to object that an interrogatory requests a legal conclusion").

### D.   Interrogatory No. 8.

This interrogatory required Plaintiff to identify the individuals referenced in pleadings to

which she alleged she was sexually trafficked, and to provide other details for each episode of

alleged sexual trafficking. Plaintiff refused to answer, arguing that she already identified some

---

[1] Another strawman argument Plaintiff makes is that it is unduly burdensome for her to

"████████████████████████████████████████████████████." Resp. 8-9. Of

course no one has asked her to ████████████. She has been asked to identify statements made

by nonparties that she "believes" are defamatory; she was not asked to ████████████████

such statements.

such individuals during her deposition testimony. In her Rule 37 response, Plaintiff repeats that argument. It is meritless.

During her deposition Plaintiff identified a few individuals to whom she claimed she had been trafficked, but she also claimed not to be able to remember others. Accordingly, it was perfectly appropriate to propound an interrogatory to determine whether the passage of time and the aid of others and her documents she could recall additional individuals to whom she allegedly had been trafficked.

Even if she could not in good faith identify additional individuals, that is *not* the full scope of the interrogatory. Interrogatory No. 8 required that for each person Plaintiff claims she was trafficked to, Plaintiff was to provide the following information: the date of any such sexual trafficking; the location of any such sexual trafficking; any witnesses to any such sexual trafficking; "any Income You received in exchange for such sexual trafficking"; and "any Documents You have to support or corroborate Your claim of such sexual trafficking." Plaintiff made *no attempt whatsoever* to provide this information. It is another example of her willful refusal to provide discovery answers and instead to stubbornly throw up frivolous objections.

### E.   Interrogatory No. 13.

Plaintiff argues that an interrogatory requiring her to identify her health care providers is "███████████████████." None of the cases Plaintiff cites bears on Interrogatory No. 13 in the context of this action. None of those cases involved a plaintiff who has claimed $30 million in noneconomic damages as the result of a *denial* of a wild and fabricated claim that the plaintiff was the victim of "sex trafficking." Nor in any of those cases was the defendant able to articulate facts establishing the highly relevant nature of the medical records to the claim and defenses at issue. We did so. *See* Mot. Compel, at 14-18.

11

Plaintiff's argument that the interrogatory seeks "███████" records is nonsense. One of the factual predicates underlying the interrogatory—establishing that it seeks Rule 26(b)(1)-relevant information—is the evidence that in 1998-1999, when Plaintiff has sworn she was a minor-victim of "sex trafficking," she in fact was an inpatient resident at a Florida drug rehabilitation facility. *See id.* at 15, 18. This is highly relevant information.

The Court should compel Plaintiff to provide medical records pre-dating 1999, specifically her records relating to her substance-abuse treatment in 1998-1999. Plaintiff argues, "████████████████████████" the Court's April 21 ruling. Resp. 17. This ignores the reason we gave on pages 14-15 of the Motion to Compel. There we noted that the Court's April 21 ruling concerned a wholly different issue. We now have evidence (via the testimony of her own mother) that during the time when Plaintiff swore that Mr. Epstein and Ms. Maxwell subjected her to sex trafficking—1998—she in fact was an inpatient resident at a drug rehabilitation facility. We are entitled to discover those records to impeach her testimony and establish that she swore falsely.

As for Plaintiff's assertion of the "physician-patient privilege," any such privilege has been waived. *See, e.g.*, *Bruno v. CSX Transp., Inc.*, 262 F.R.D. 131, 133-34 (N.D.N.Y. 2009) (finding physician-patient privilege waived and granting discovery of medical records relating to plaintiff's substance abuse and mental health treatment where disclosure was likely to reveal evidence of alternative or intervening causes for the damages claimed by plaintiff); *Pokigo v. Target Corp.*, No. 13-CV-722A SR, 2014 WL 6885905, at *2 (W.D.N.Y. Dec. 8, 2014) ("Where, as here, plaintiff has significant pre-existing and ongoing mental and physical conditions which can reasonably be expected to impact her claim for damages resulting from this incident, defendant is entitled to full discovery regarding plaintiff's treatment history.").

Notably, Plaintiff has failed to justify her evasive and non-responsive answer relating to her medical expenses. Despite the late stage in this case and while she is pursuing "medical expenses of not less than $100,000," Plaintiff refuses to provide details about these alleged medical expenses. *See* Mot. Compel, at 18. That is improper, and warrants the imposition of sanctions.

As with Interrogatory Nos. 6-8, Plaintiff focuses exclusively on the preface of Interrogatory No. 13 and deliberately ignores the subparts. Subparts a-g of Interrogatory No. 13 required Plaintiff to provide the following information: the health care provider's name, address, and telephone number; the type of consultation, examination, or treatment provided; the dates Plaintiff received consultation, examination, or treatment; whether such treatment was on an in-patient or out-patient basis; the medical expenses to date; whether health insurance or some other person or organization or entity has paid for the medical expenses; and for each such provider "execute the medical and mental health records release attached hereto as Exhibit A." Mot. Compel, at 13. Although Plaintiff listed a number of health care providers, some or all of the foregoing requested subpart information was missing *as to each one* of the providers Plaintiff listed.

### F.   Interrogatory No. 14.

***FRE 412 does not bar discovery of Plaintiff's prior sexual activities.*** Plaintiff agrees that her prior sexual activities are discoverable regardless of Rule of Evidence 412 so long as they "███████████████████████████████████." Resp. 21 (internal quotations omitted). We have demonstrated the relevance of Plaintiff's prior sexual activities. *See* Mot. Compel, at 20-21.

***There is no "harassment."*** The premise of Plaintiff's claim that the interrogatory is "harassing" is that it asks for information pertaining to Plaintiff's "sexual abuse." What Plaintiff

characterizes as undiscoverable "sexual abuse," however, relates directly to _the very facts_
_Plaintiff put in issue in this lawsuit_. Plaintiff alleged repeatedly in her Complaint that she was
"a victim of sexual trafficking and abuse _while she was a minor child_." Doc.1 ¶ 1 (emphasis
supplied); _see id._ ¶ 8 (alleging Plaintiff was "victim of … sexual abuse" after she was recruited
when she was "under the age of eighteen"); _id._ ¶ 18 (alleging Plaintiff was "a _minor girl_" when
she was "recruited … to become a victim of sex trafficking" and was subjected to "_sexual[]_
_abuse_ … for years") (emphasis supplied).

This lawsuit arose after Ms. Maxwell publicly denied Plaintiff's public accusations that
Ms. Maxwell "recruited" her into "sexual trafficking and abuse." _See_ Doc.1 at 5-7. In a
statement, Ross Gow asserted that Plaintiff's claims of being a minor-victim of a sex trafficking
scheme were false. _See, e.g._, _id._ at 6. Ms. Maxwell has defended in part on the ground that the
statements she or Mr. Gow made were "substantially true." _See_ Doc.54 ¶ 32, at 9. One means of
establishing that her or Mr. Gow's statements were substantially true is to prove that Plaintiff
beginning when she was a "minor," and continuing to the present time, made salacious false
allegations of sexual abuse for the purpose of, _inter alia_, attracting public attention, generating
media stories and making money.

Plaintiff argues it is a "



. Resp. 25. The facts are otherwise. _See_ Doc.384, Ex.C (_New York Daily News_ article,
"Alleged 'sex slave' … accused 2 men of rape in 1998, but was found not credible"). To the
extent, therefore, that Plaintiff is

Resp. 25, it is the result of her own false statements and it is directly relevant
to Ms. Maxwell's defense of Plaintiff's defamation claim.

***There has been no violation of the Protective Order.*** Plaintiff argues the defense violated the Protective Order by stating there is an abundance of evidence suggesting that well before she met Ms. Maxwell, Plaintiff had ███████████████████████ ███████ Mot. Compel, at 20. Resp. 25. This information should have been ██████████ Plaintiff argues, ████████████████████████████████ ███████████████████████. *Id.* The argument is frivolous.

After Plaintiff designated the police reports as confidential, the defense objected to the designation under Paragraph 11 of the Protective Order. Thereafter Plaintiff failed within ten days to move the Court for a ruling on whether the reports should be subject to the terms of the Protective Order. Under the Protective Order, such a failure resulted in the reports "los[ing] [their] designation as Confidential" and they "*shall not thereafter be treated as Confidential*." Doc.62 ¶ 11, at 5 (emphasis supplied; capitalization altered).

Additionally, Plaintiff assumes the reports are the only means of obtaining information about her previous false claims of sexual abuse. In fact, Plaintiff and her counsel know that the redacted police reports are in the public domain and that the media apparently have obtained the same reports from the Palm Beach County Sheriff's Office and have reported on Plaintiff's previous false claims of sexual abuse. *See* Doc.383, at 1-4.

### III. Plaintiff's answers to the requests for admission are deficient.

#### A. RFA Nos. 1-8, 13.

Like her deficient responses to the requests for admissions, Plaintiff rambles on to explain why she partially denied some of the requests. Resp. 26-28. In the rambling, Plaintiff gives various details of her education and background to explain why she thought she was 15 years old when she was "recruited" but in fact was 16 or 17. *See id.* None of it has any relevance to our Motion to Compel.

15

Plaintiff violated Rule 36(a)(4). That rule requires the party answering a request for admission to "specify the part admitted and qualify or deny the rest." Instead of complying with this rule, Plaintiff merely answered, "Denied in part." In her Response to the Motion to Compel, Plaintiff fails to explain how she complied with Rule 36 (a)(4). We respectfully suggest this is a confession of the Motion to Compel as it relates to RFA Nos. 1-8 and 13.

### B.   RFA No. 12.

Plaintiff argues that her objection—without answering at all—is proper because Ms. Maxwell 

Resp. 30. That is tortured reasoning for failing to answer a request for admission. Regardless, it confers no immunity for violation of Rule 36.

If as Plaintiff claims the request consists of a ▬▬▬▬▬▬▬ Rule 36 requires that she deny the request. Plaintiff may not refuse to answer because she believes that if she truthfully denies the request, the defense might later ▬▬▬▬▬▬ ▬▬▬▬ in answering the request. If that were the case, no litigant ever would answer a request for admission.

### IV.   Plaintiff's responses to requests for production are deficient.

### A.   RFP No. 1.

We respectfully submit Plaintiff's gamesmanship is revealed in connection with this RFP. In her response to the RFP, Plaintiff refused to produce any documents. Instead she lodged multiple objections: attorney-client privilege, work product doctrine, "wildly overly [sic] broad and unduly burdensome, etc. After forcing Ms. Maxwell to move to compel, Plaintiff then provides some responsive information, e.g., Resp. 34. As noted above, such discovery misconduct warrants sanctions under Rule 37(a)(5)(A).

RFP No. 1 required Plaintiff to produce all communications and documents identified in Interrogatory Nos. 5-14. Plaintiff resisted production of documents identified in Interrogatory Nos. 5-8 and 13-14 for the same reasons it resisted answering those interrogatories. We already have addressed, above, Plaintiff's evasive and non-responsive answers to those interrogatories. We incorporate that discussion here.

*As to Interrogatory No. 9.* This required production of documents relating to Plaintiff's employment. *See* Resp. 32. Plaintiff admits she failed to produce any documents. She should be compelled to do so. Plaintiff suggests her employment records are now irrelevant ██████████ ██████████████████████████ *Id.* 34. This argument incorrectly assumes that the employment records are relevant only to Plaintiff's alleged economic damages. In fact, however, her employment records also bear on the credibility of her testimony. She has testified having been sexually trafficked on occasions when, in fact, she was employed at regular 9 a.m.-5 p.m. jobs by employers other than Mr. Epstein. Records of such employment would establish that she testified falsely about having been sexually trafficked during that time period.

*As to Interrogatory No. 10.* This required production of documents relating to income Plaintiff received other than her employment. *See* Resp. 32. Plaintiff refused to produce any documents, arguing that she "already produced her responsive document." *Id.* 34. Her argument is false. For example, she has failed to produce any documents relating to her receipt of payment from settlements of lawsuits she has brought or threatened to bring against, among others, individuals to whom she claimed she was sexually trafficked.

*As to Interrogatory No. 11.* This required production of documents relating to Plaintiff's contention she suffered lost wages, past and future loss of earning capacity, and actual earnings of "not less than $5,000,000." *See id.* 32. Plaintiff refused to produce any documents, arguing the

documents are not relevant because she ██████████████████████ *Id.* 34. These

documents remain relevant. Plaintiff and her counsel signed Rule 26 disclosures claiming she

suffered lost wages-related damages of "not less than $5,000,000." The discovery to date reveals

that Plaintiff at no time suffered such damages. In short, the discovery suggests that Plaintiff and

her counsel violated Rule 26(g)(1), which provides that a signature with respect to a disclosure is

a certification that the disclosure is "complete and correct as of the time it is made" and is "not

interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly

increase the cost of litigation." Production of responsive documents—or Plaintiff's inability to

produce documents substantiating her Rule 26(a)(1)(A)(iii) disclosures—would supply direct

evidence of a violation of Rule 26(g)(1), which would warrant sanctions under Rule 26(g)(3).

### B.   RFP No. 4.

This request requires production of communications between Plaintiff and her counsel,

on the one hand, and various witnesses, on the other hand. Plaintiff refuses to produce a single

document. To justify this refusal, Plaintiff makes general arguments about the ████████████

████████████████████████████████████████████████████ Resp.

36.

Such non-specific arguments do not immunize a party from producing documents.

Otherwise, any litigant could resist production of documents merely by arguing generally that the

request is overbroad and the privileges of third parties are implicated. Notably, Plaintiff does not

argue that the RFP seeks production of irrelevant documents. There is a compelling need for

such documents. Upon information and belief, Plaintiff and her counsel have communicated with

witnesses who directly or indirectly have disagreed with or refuted Plaintiff's allegations of "sex

trafficking," as well as Ms. Maxwell's role in any of Mr. Epstein's conduct with underage

females. Plaintiff should be compelled to produce the documents. To the extent a privilege

applies, she is required to produce a privilege log.

### C.   RFP Nos. 9 & 10.

These requests seek communications between Plaintiff and her attorneys, on the one

hand, and witnesses in *Doe #1 v. United States*, No. 08-ev-80736-KAM (S.D. Fla.), and in the

*Dershowitz* litigation, on the other hand. Plaintiff admits there is significant overlap between that

case and the case at bar, since Plaintiff herself was involved in both actions and since both

actions concerned the alleged "sex trafficking" scheme described in the Complaint in this action.

Having admitted the factual overlap in the cases, Plaintiff is in no position then to claim that

Plaintiff and her attorneys' communications with witnesses in the *Doe* and *Dershowitz* cases are

not relevant to the case at bar. As an example, many of the witnesses in the *Doe* and *Dershowitz*

cases have direct or indirect knowledge about Plaintiff's claims that she was the minor-victim of

a "sex trafficking" scheme. Upon information and belief, Plaintiff and her counsel have

communicated with witnesses who directly or indirectly have disagreed with or refuted

Plaintiff's allegations of "sex trafficking," as well as Ms. Maxwell's role in any of Mr. Epstein's

conduct with underage females.  The existence or not of such a scheme is a central issue in the

case at bar, since Ms. Maxwell has asserted an affirmative defense of substantial truth.

### D.   RFP Nos. 11 & 12.

These requests require production of statements obtained by Plaintiff and her attorneys

from witnesses in the CVRA and *Dershowitz* cases. As noted in the previous discussion of RFP

Nos. 9 & 10, there is no doubt that witness statements from those cases are relevant and

discoverable in this case. Many of the witnesses overlap in the case at bar. Upon information and

belief, Plaintiff and her counsel have obtained statements from witnesses who directly or

indirectly have disagreed with or refuted Plaintiff's allegations of "sex trafficking," and with

Ms. Maxwell's role in any of Mr. Epstein's conduct with underage females.  Yet without citing a single case, Plaintiff merely waves her hand and says, in effect, there are too many relevant documents for her to produce any. *See* Resp. 40-42. That is a blatant violation of her obligations under Rule 34.

### E.  Plaintiff persistently has failed to verify her interrogatory responses, despite defense counsel's request.

The failure to sign under oath interrogatory answers is a violation of Rule 33(b)(5), and subjects the non-signing party to sanctions, *see Walls v. Paulson*, 250 F.R.D. 48 (D.D.C. 2008). In this case, defense counsel notified Plaintiff's counsel that she had failed to verify her interrogatory responses and requested such verification. *See* Mot. Compel, at 34. She refused to do so, and she has not done so notwithstanding the pendency of the Motion to Compel.

Plaintiff argues that after Ms. Maxwell filed the Motion to Compel, she " ███████████ ████████████████████████ █ ████████████████████████ Resp. 1 n.1. This argument is false. Plaintiff has never served, let alone signed under oath, any responses to "amended interrogatories." On July 1, 2016, Plaintiff served her responses to Ms. Maxwell's Second Set of Discovery Requests. Plaintiff did not verify any of the interrogatory responses. *See* Doc.355-1, Ex.B, at 43. On August 17, 2016—after the Motion to Compel was filed—Plaintiff served her "Supplemental Responses to Defendant's Interrogatories 6, 12 and 13." *See* Menninger Decl. in Supp. of Reply re Mot. to Compel, Ex.C. On the last page of these Supplemental Responses, Plaintiff affixed her *unsworn* signature. *See id.*, Ex.C, at 13.

The repeated violation of Rule 33(b)(5) warrants sanctions under *Walls*.

---

[2]Ms. Maxwell has never propounded any "amended interrogatories." We assume Plaintiff is referring to her August 17, 2016, supplemental responses to three interrogatories, as discussed later in the text following this footnote reference.

### V.   Ms. Maxwell is entitled to attorney fees incurred in making this Motion.

In another act of gamesmanship, Plaintiff "reads" the Motion to Compel to say that we have requested attorney fees only in connection with her repeated failure to sign her discovery responses. That is simply false.

On page 34 of the Motion to Compel, we stated, "Ms. Maxwell is entitled to attorney fees incurred *in making this Motion*" (emphasis supplied). On page 35, we urged that Plaintiff's discovery misconduct—including but not limited to failure to sign as required by Rule 33(b)(5)—warranted sanctions under Rule 37(a)(5) (discovery misconduct necessitating the filing of a motion to compel) and Rule 26(g)(1) (misconduct by a lawyer in asserting objections for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." On page 36, in her prayer for relief Ms. Maxwell requested that the Court award her attorney fees and costs incurred "in preparing and prosecution this Motion."

Plaintiff and her counsel's discovery misconduct must be discouraged through sanctions. Otherwise, they will continue to refuse to answer discovery requests and to interpose factually and legally frivolous objections as part of their scheme to prevent the defense's access to information needed to defend this action.

### CONCLUSION

For the foregoing reasons, the Court should grant the relief requested on pages 35-36 of the Motion to Compel.

August 25, 2016

Respectfully submitted,


/s/ Laura A. Menninger
Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:   303.831.7364
Fax:       303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on August 25, 2016, I electronically served this *Defendant's Reply in Support of Motion to Compel Responses to Defendant's Second Set of Discovery Requests to Plaintiff, and for Sanctions* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu


Bradley J. Edwards
Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

J. Stanley Pottinger
49 Twin Lakes Rd.
South Salem, NY 10590
StanPottinger@aol.com


*/s/ Nicole Simmons*
Nicole Simmons

23