# United States District Court
# Southern District of New York

Virginia L. Giuffre,

        Plaintiff,            Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

        Defendant.

_____/

### RESPONSE IN OPPOSITION TO MOTION TO INTERVENE (DE 362)

Sigrid McCawley (Pro Hac Vice)
Meredith Schultz (Pro Hac Vice)
BOIES, SCHILLER & FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. ii

I.  INTRODUCTION ....................................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 3

          ▪  ████████████████████████████████████

          B.  The Litigation Involving Dershowitz - The Florida Defamation Case .................. 5

II.  DERSHOWITZ RELEASES CONFIDENTIAL INFORMATION IN VIOLATION
      OF A FLORIDA COURT ORDER ................................................................................ 8

III.  THE PROTECTIVE ORDER IN THIS CASE ............................................................... 9

IV.  ARGUMENT ............................................................................................................ 10

          A.  Legal Standard ................................................................................................ 10

          B.  These Are Not Judicial Documents and Therefore Should Not be Disclosed ...... 11

          C.  Even Were the Court to Deem the Documents to be Judicial Documents, the
             Presumption of Access is Weak ........................................................................ 15

          D.  No Right of Access Exists Under the First Amendment ..................................... 18

          E.  The Second Circuit Has a Presumption Against Modifying Protective Orders
             Upon Which Parties Reasonably Relied .............................................................. 20

             1.  The Record in this Case Shows That the Protective Order Was Not
                 Improvidently Granted ........................................................................ 20

             2.  The Parties and Deponents in This Case Have Reasonably Relied Upon
                 the Protective Order ............................................................................ 21

             3.  Dershowitz Seeks These Materials For an Illegitimate Purpose Which
                 Disqualifies Him from Relief ................................................................ 22

             4.  Under This Court's Order, Non-Parties Cannot Challenge Confidentiality
                 Designations and Dershowitz has Already Agreed to be Bound by the
                 Parties' Confidentiality Designations ..................................................... 24

V.  CONCLUSION ......................................................................................................... 25

i

## <u>TABLE OF AUTHORITIES</u>

Page

<u>Cases</u>

*Alexander Interactive, Inc. v. Adorama, Inc.*,
No. 12 Civ. 6608, 2014 WL 4346174 (S.D.N.Y. Sept. 2, 2014) ...................................... 15, 16

*Anderson v. Cryovac, Inc.*,
805 F.2d 1 (1st Cir.1986) ................................................................................................ 13

*Bond v. Utreras*,
585 F.3d 1061 (7th Cir.2009) ......................................................................................... 13

*Calloway v. Westinghouse Elec. Corp.*,
115 F.R.D. 73 (M.D. Ga. 1987) ...................................................................................... 24

*Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*,
263 F.3d 1304 (11th Cir.2001) ....................................................................................... 13

*Dandong v. Pinnacle Performance Ltd.*,
No. 10 Civ. 8086, 2012 WL 6217646 (S.D.N.Y. Dec. 3, 2012) ..................................... 15

*Dorsett v. County of Nassau*,
289 F.R.D. 54 (E.D.N.Y. 2012) .................................................................................. 22, 23

*Dorsett v. County of Nassau*,
762 F.Supp.2d 500 (E.D.N.Y. 2011) ............................................................................... 17

*Edmondson v. State of Neb. ex. rel. Meyer*,
383 F.2d 123 (8th Cir. 1967) .......................................................................................... 25

*Flynn v. Hubbard*,
82 F.2d 1084 (1st Cir. 1986) ........................................................................................... 25

*Forsyth County v. U.S. Army Corps of Engineers*,
2009 WL 1312511 (N.D. Ga. May 8, 2009) ................................................................... 25

*Gosmile, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*,
2012 WL 1382557 (S.D.N.Y. 2012) ............................................................................... 14

*In re September 11 Litigation*,
262 F.R.D. 274 (S.D. N.Y. 2009) ................................................................................... 21

*In re Teligent, Inc.*,
640 F.3d 53 (2d Cir.2011) ............................................................................................... 21

*In re Zyprexa Injunction*,
474 F.Supp.2d 385 (E.D.N.Y. 2007) .......................................................................... 17, 19

*Iridium India Telecom Ltd. v. Motorola, Inc.*,
  165 Fed.Appx. 878 (2d Cir.2005) ........................................................... 23

*Jane Doe No. 2 v. Epstein*,
  No. 9:08-cv-80119-cv-KAM (S.D. Fla. Sept. 8, 2009) ............................. 4

*Joy v. North*,
  692 F.2d 880 (2d Cir.1982) ...................................................................... 17

*Kamakana v. City and County of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) ................................................................. 12

*Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*,
  998 F.2d 157 (3d Cir. 1993) ..................................................................... 13

*Levin v. U.S.*,
  633 Fed. Appx. 69 (2nd Cir. 2016) ...................................................... 1, 10

*LiButti v. United States*,
  107 F.3d 110 (2d Cir. 1997) ....................................................................... 5

*Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*,
  1996 WL 346352 (S.D.N.Y. June 26, 1996) ........................................ 1, 10

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
  156 F.Supp.3d 425 (S.D.N.Y. 2016) ........................................................ 17

*Lugosch v. Pyramid Co. of Onondaga*,
  435 F.3d 110 (2d Cir. 2006) ..................................................................... 15

*Martindell v. International Telephone & Telegraph Corp.*,
  594 F.2d 291 (2d Cir.1979) ...................................................................... 22

*MasterCard Intern. Inc. v. Visa Intern. Service Ass'n, Inc.*,
  471 F.3d 377 (2d Cir. 2006) ..................................................................... 11

*Medical Diagnostic Imaging, PLLC v. Carecore Nat., LLC*,
  2009 WL 2135294 (S.D.N.Y. 2009) ......................................................... 23

*Newsday LLC v. County of Nassau*,
  730 F.3d 156 (2d Cir. 2013) ............................................................... 19, 20

*Nixon v. Warner Communications, Inc.*,
  98 S.Ct. 1306, 435 U.S. 589 (1978) ......................................................... 24

*S.E.C. v. TheStreet.Com*,
  273 F.3d 222 (2d Cir. 2001) ..................................................................... 14

*Stern v. Cosby*,
    529 F.Supp.2d 417 (S.D.N.Y. 2007)....................................................................... 16

*U.S. v. Amodeo ("Amodeo I")*,
    44 F.3d 141 (2d Cir. 1995)........................................................................... *passim*

*U.S. v. Amodeo ("Amodeo II")*,
    71 F.3d 1044 (2d Cir. 1995)......................................................................... *passim*

## **Rules**

Fed. R. Civ. P. 24(b)(3).................................................................................... 1, 10

## **Other Authorities**

8A Richard L. Marcus,
    Federal Practice and Procedure § 2044.1 (3d ed. Westlaw 2012) ........................... 21

ALAN DERSHOWITZ, TAKING THE STAND: MY LIFE IN THE LAW (2013) ...................................... 24

*"Did Dershowitz Shell Out Big Bucks to Get Settlement in Sex Case?"*
    by Vivia Chen, April 12, 2016............................................................................ 9

Federal Practice and Procedure § 2044.1 (3d ed. Westlaw 2012) .............................. 21

*How Alan Dershowitz Bullied Rape Victims to Protect a Serial Child Molester,"*
    by Rania Khalek, January 10, 2015 ...................................................................... 5

*The Talented Mr. Epstein*, by Vicky Ward, in *Vanity Fair* (Jan. 2005) ........................ 3

*Vanity Fair Reminds Us When Jeffrey Epstein Wasn't a Creep*,
    by Ray Gustini, in *The Wire* (June 21, 2011) ...................................................... 3

## I.      INTRODUCTION

The Court has before it a request from a non-party (Alan Dershowitz) to intervene in this case for the purpose of extracting and publicizing several emails and a draft manuscript from the Protective Order that has long been entered in this case. Dershowitz does not seek public access of these documents for the legitimate purpose of informing the public on this Court's adjudication of its Article III powers. Instead, Dershowitz make clear that his purpose is to advance his own agenda, and continue to wage his media war on Ms. Giuffre, as he has already appeared on national news calling her a "prostitute" and a "bad mother."[1] This is not the typical intervention case where a non-party seeks documents it lacks access to, or where a news organization seeks to inform the public on court proceedings. Here, Alan Dershowitz seeks to inject himself into this litigation for the wrongful purpose of conducting a public smear campaign of Ms. Giuffre. He has no interests beyond his own. And, he has already violated another court order directing him to stop wrongfully leaking confidential information to the media. Unsurprisingly, Dershowitz's motion fails to cite a single case in which a court granted a non-party, who already possessed the sealed documents in dispute, the right to freely disseminate those documents in the public domain for self-serving purposes.

His motion for permissive intervention is committed to the discretion of the Court, and the Court should deny it. Fed. R. Civ. P. 24(b)(3); *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 1996 WL 346352, at *4 (S.D.N.Y. June 26, 1996) (Sweet, J.) (denying leave to intervene); *Levin v. U.S.*, 633 Fed. Appx. 69, 70 (2nd Cir. 2016) (affirming denial of motion to intervene, "[b]ecause of the fact-intensive nature of an intervention decision, we review for 'abuse of discretion' a district court's order denying intervention . . . by permission.")

---

[1] McCawley Dec. at Exhibit 1, Local 10 News, January 22, 2015.

███████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████  ██████████████████████ His attenuated reasoning hardly

provides the kind of compelling reason needed to pierce the Protective Order. Instead,

Dershowitz seeks these documents for the primary purpose of conducting a media blitz against

Ms. Giuffre in advance of trial – clearly to assist his joint defense partner, Defendant Maxwell,

by poisoning the jury pool in this case.

Dershowitz has no legal basis for his request. The documents in questions are not judicial

documents, and thus neither a First Amendment nor common law right of access applies.

Moreover, both the parties in this case have long reasonably relied on the existing Protective

Order. ████████████████████████████████████

████████████████████ If Dershowitz is permitted to cherry pick the documents

that he finds favorable and extract them from the protective order to serve his purposes, it would

seem only fair that Ms. Giuffre be permitted to lift the protective order from currently-

confidential documents and testimony in the court file which would support her position.

This Court entered the Protective Order "upon a showing of good cause." Dershowitz is

not a party to this litigation and provides no sound reason for modification. Accordingly, this

Court should deny Dershowitz's motion in its entirety.



2

## II.   FACTUAL AND PROCEDURAL BACKGROUND







Finally, in Dershowitz's vociferous attacks on Ms. Giuffre here, the Court will see an eerie parallel to the Jeffrey Epstein criminal investigation. Back in 2005, when the Palm Beach Police Department was first investigating Epstein's sexual abuse, the Department accumulated overwhelming evidence placing underage girls at Epstein's residence who gave statements that they were being sexually abused, the accounts bearing chillingly similar details. As he did to Ms. Giuffre, Dershowitz called those girls liars and defamed them as prostitutes,[14] in an effort to convince the State Attorney that these girls could not even believably establish that they had ever even gone to Epstein's mansion. Later, Dershowitz would remarkably write to tell the Justice Department that "Epstein never targeted minors."

**B.    The Litigation Involving Dershowitz - The Florida Defamation Case[15]**



Dershowitz also misleadingly describes the Florida defamation action[16] between himself and Cassell and Edwards.  Remarkably, Dershowitz fails to note that same documents he seeks here (to use in the next installment of his media campaign) are the ***exact type of documents*** that Judge Lynch quashed from Dershowitz's subpoena he served on Ms. Giuffre in the Florida Action. In short, a judge has already ruled that Dershowitz should be denied access to these documents. This baseless motion is nothing more than an attempt to make an end-run around Judge Lynch's Order, by coming to ***this*** Court, and asking for what he was denied by another court.

Indeed, Dershowitz fails to reveal three significant facts to this Court. First, Dershowitz fails to reveal to this Court is that he has already been sharply rebuked by a Florida judge for his efforts to take confidential materials to the media. Second, Dershowitz fails to tell this Court that the *only* ongoing component to his Florida Action concerns sanctions ***against him*** for violating that Court's Order by his continuing to reveal confidential materials. Third, Dershowitz fails to tell this Court that the judge in the Florida Action already denied his request to access these materials.[18] The parties to the Florida Action have settled all claims. ███████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

Ms. Giuffre was not a party to the litigation between the attorneys in the Florida Action. During the course of the litigation, however, Dershowitz subpoenaed discovery from Ms.

---

[16] *Edwards and Cassell v. Dershowitz*, Case No. CACE 15-000072, in the Circuit Court of the 17th Judicial circuit in and for Broward County, Florida (the "Florida Action"), presided over by Judge Lynch.

[17] ████████████████████████

[18] McCawley Dec. at Exhibit 12, November 12, 2015 Order on Motion to Quash.

Giuffre. 

████████████████████████████████████████

████████████████████████████████████████

████████████████████

## II.   DERSHOWITZ RELEASES CONFIDENTIAL INFORMATION IN VIOLATION OF A FLORIDA COURT ORDER

The pending sanction motion in the Florida Court is an illustrative example of how Dershowitz willingly violates Court orders. On December 11, 2015, in a transparent attempt to play his case to the media rather than try it before the court, Dershowitz filed a false affidavit with the Florida court purporting to describe confidential settlement communications with Giuffre's counsel and attempting to discredit Giuffre. He filed his affidavit in the public court file, despite knowing Ms. Giuffre's standing objections. He then alerted the media (specifically the *New York Times*) to these statements. After Giuffre filed an emergency motion to seal the affidavit, the court found in favor of Ms. Giuffre that the communications in the affidavit were in fact confidential settlement negotiations that should not have been disclosed and granted Giuffre's motion. McCawley Dec., Ex. 15. During the hearing, the Florida court admonished Dershowitz not to reveal any other confidential settlement negations:

> MS. MCCAWLEY: Your Honor, if the intent here is to continue to spew the confidential settlement negotiations and have Dershowitz go to New York or other locations to say these things again, I would object to that. I think this Court needs to be very stern in its response that these are not appropriate to be disclosed.
>
> *THE COURT: Well, I think he is aware of that.*
>
> MR. SAFRA [Dershowitz's attorney]: I'm aware, and I will convey to my client. . .[22]

Ms. Giuffre had a pending motion for sanctions against Dershowitz for his conduct in wrongfully revealing and flatly mischaracterizing these settlement disclosures. McCawley Dec.

---

[22] McCawley Dec. at Exhibit 14, December 18, 2015, Emergency Motion to Seal Hr. Tr. at 25:23-26:9 (emphasis added).

Sealed Ex. 16, Motion for Sanctions. Before that motion was heard, Dershowitz willfully

violated the court's order and again disclosed the confidential settlement communications, for

which Giuffre again sought sanctions. McCawley Dec. Sealed Ex. 17, Supplement to Motion for

Sanctions.  However, before the sanction motions were heard, Dershowitz settled the underlying

litigation. Dershowitz has insisted upon keeping confidential the monetary settlement that

resolved the claims against him.[23] The trial court declined to retain jurisdiction to hear Ms.

Giuffre's sanctions claims after the settlement. Ms. Giuffre's attorneys have appealed the ruling

to the Florida Court of Appeals and filed an opening brief on August 25, 2016.

## III.   THE PROTECTIVE ORDER IN THIS CASE

This is a case concerning sex abuse of minors, brought by a woman who was herself a

minor victim of sex abuse. Accordingly, this Court has recognized from the outset the paramount

importance of a protective order in this case, announcing at one of the first hearings in the case

that that "of course there should be a protective order in this case."[24] Thereafter, on March 18,

2016, "[u]pon a showing of good cause," the Protective Order was entered (DE 62 at p.1). The

following month, ████████████████████████████████████████████

Furthermore, as this Court will remember, ████████████████████

██████████████████████████████████████████████████████

---

[23] "Did Dershowitz Shell Out Big Bucks to Get Settlement in Sex Case?" by Vivia Chen, April 12, 2016 at
http://thecareerist.typepad.com/thecareerist/2016/04/did-dershowitz-shell-out-money-for-settlement-in-case-sex.html
[24] March 17, 2016, Hearing Transcript at 4:25-5:1. McCawley Dec. at Exhibit 18.

███████████████████████████████ Indeed,

this Court temporarily placed the entire docket under seal. June 23, 2016, Order. DE 251. Under

these rulings, both parties designated hundreds of pages of materials confidential under the

Court's Order.

## IV.    ARGUMENT

### A.    Legal Standard

The Court may deny Dershowitz's motion without even reaching the merits of whether

the contested documents are judicial documents, which they absolutely are not. Fed. R. Civ. P.

24(b)(3); *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 1996 WL 346352, at *4 (S.D.N.Y.

June 26, 1996) (Sweet, J.) (denying leave to intervene); *Levin v. U.S.*, 633 Fed. Appx. 69, 70

(2nd Cir. 2016) (affirming district court's denial of motion to intervene, explaining "[b]ecause of

the fact-intensive nature of an intervention decision, we review for 'abuse of discretion' a district

court's order denying intervention . . . by permission."). Accordingly, this Court can deny

Dershowitz's motion on the grounds that taking these documents to the media ██████████

████████ and because, having sat on the documents for months, the motion is untimely.[28]

Dershowitz 's motion mentions, then proceeds to ignore, the policy rationale that

underlies both the First Amendment and common law right of access to judicial documents. Both



legal principles exist so that courts may have accountability to the public; they do not exist to

enable individuals on a personal vendetta to advance a public smear campaign against a victim of

childhood sexual abuse. *U.S. v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*") ("The

presumption of access is based on the need for federal courts, although independent—indeed,

particularly because they are independent—to have a measure of accountability and for the

public to have confidence in the administration of justice."). Indeed, the motion to intervene is

devoid of any citations to precedent that allows an individual to exploit these bedrock legal

principles solely for his personal benefit, rather than the public at large. Furthermore, the Court

should not overlook the fact that that Dershowitz ***already possesses*** these documents because

they were sent to him by Maxwell's counsel who has named him as a witness, and, as

demonstrated below, the Second Circuit does not provide a right of access to protected material

when an individual seeks to use it solely for harm.

> **B.      These Are Not Judicial Documents and Therefore Should Not be Disclosed**

The Court can end its legal analysis of this motion quickly, as, contrary to Dershowitz's

suggestion, the documents in question are not judicial documents. This fact is fatal to the motion,

as neither the First Amendment nor the common law right of access applies in a scenario where

the materials in question are not judicial documents. *U.S. v. Amodeo*, 44 F.3d 141, 145 (2d Cir.

1995) ("*Amodeo I*") (noting material must be a "judicial document" to be "accessible to the

public").

Dershowitz  only became aware of the documents he now seeks because Ms. Giuffre

produced them in discovery. It is established law in the Second Circuit that documents simply

exchanged in the civil discovery context do not come within the purview of the First Amendment

or the common law right of access. "Documents that play no role in the performance of Article

III functions, such as those passed between the parties in discovery, lie entirely beyond the

11

presumption's reach…" *Amodeo II*, 71 F.3d at 1050. Dershowitz suggests that because a subpoenaed third party filed one of the documents as an attachment to a motion to quash, and because Defendant filed the others as an exhibit to an opposition to extend discovery, that converts them into judicial documents and triggers the presumption of access. This argument is unavailing. The Second Circuit has held that the "mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access. We think that the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." *Amodeo I*, 44 F.3d at 145.

A review of the case law reveals that ***every circuit*** to have directly addressed this point has found that documents filed as exhibits to non-dispositive discovery motions ***do not qualify*** as judicial documents. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("We have, however, carved out an exception to the presumption of access to judicial records for a sealed discovery document [attached] to a non-dispositive motion, such that the usual presumption of the public's right of access is rebutted") (internal citation and quotations omitted); *Bond v. Utreras*, 585 F.3d 1061, 1075 n. 8 (7th Cir.2009); *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312–13 (11th Cir.2001) (holding that "material filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right"); *Anderson v. Cryovac, I*nc., 805 F.2d 1, 10 (1st Cir.1986) ("Although we agree that the public has a right of access to some parts of the judicial process, we conclude that this right does not extend to documents submitted to a court in connection with discovery proceedings."); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157,

164 (3d Cir. 1993) ("holding that discovery motions and supporting materials are subject to a presumptive right of access would make raw discovery, ordinarily inaccessible to the public, accessible merely because it had to be included in motions precipitated by inadequate discovery responses or overly aggressive discovery demands. This would be a holding based more on expediency than principle.").

Therefore, five federal appellate courts have already rejected the argument that Dershowitz advances here. Dershowitz acknowledges that the Second Circuit has not yet reached this specific issue, but the holdings in *Amodeo I* and *Amodeo II* demonstrate that when the Second Circuit reaches this issue, it will reach exactly the same result. In *Amodeo II* the Second Circuit held that documents "passed between the parties in discovery, lie entirely beyond the presumption's reach…" *Amodeo II*, 71 F.3d at 1050. In *Amodeo I* the Second Circuit noted the "mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Amodeo I*, 44 F.3d at 145. Additionally, in the case cited by Dershowitz, *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 233 (2d Cir. 2001), the Second Circuit rejected an argument that would "transform every document that a court reviews into a 'judicial document' presumptively open to the public, despite well-settled law to the contrary."

The Second Circuit has held (1) discovery materials are not judicial documents; (2) the mere filing of a document with the court does not render it a judicial document; and (3) a court simply reviewing a piece of discovery material does not make the document a "judicial document." Therefore, there is no question that the Second Circuit would resolve the issue at hand in exactly the same way that every other circuit to address the issue has. This Court should follow every other circuit, and the guidance from the Second Circuit, and find that the mere

filing of a piece of discovery material as part of a non-dispositive discovery motion does not convert the material into a judicial document.

Finally, the ███████████ cannot qualify as "judicial documents" on the separate and independent basis that the Court has not considered them, as the motion to which they are attached is still pending.[29] Here again, Dershowitz's motion misses the point of the First Amendment and common law rights of access. It is not the filing of a piece of discovery that makes it a judicial document, it is the Court's ***review and consideration*** of that document that converts the document's status. *Gosmile, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 2012 WL 1382557, at *1 (S.D.N.Y. 2012) ("Court did not weigh these documents [attached as exhibits] in its review of the parties' motions, considers them immaterial to the motions, and therefore does not consider them to be judicial documents."). As Ms. Giuffre has shown, these principles exist for the accountability of the courts to the public, not for the personal benefit of an individual.

In the face of this uniform precedent from the courts of appeal, Dershowitz cites only to a handful of district court opinions, many of which do not support the relief he seeks. For example, in Dershowitz's first-cited case, *Alexander Interactive, Inc. v. Adorama, I*nc., No. 12 Civ. 6608, 2014 WL 4346174, at *2 (S.D.N.Y. Sept. 2, 2014), the Court proceeded to deny access and instead sealed the materials at issue. In *Dandong v. Pinnacle Performance Ltd*., No. 10 Civ. 8086, 2012 WL 6217646, at *2 (S.D.N.Y. Dec. 3, 2012) the court noted the materials at issue were nothing more than legal argument, and it gave the parties time to show "good cause" for keeping the documents sealed. The Court can reject these outlier opinions out of hand, as they do not comport with the holdings of the First, Third, Seventh, Ninth and Eleventh Circuits, nor are they in-line with the Second Circuit's case law in *Amodeo I*, *Amodeo II* and *TheStreet.Com*.

---

[29] It may well be the case that the Court never considered ███████████████ in ruling on the motion for extension of time in relation to the opposition motion to which it was attached. The Order makes no mention of it. DE June 20, 2016, Order. If the Court did not consider those exhibits, they do not qualify as judicial documents.

There simply is no legal basis for this Court to find that the documents Dershowitz seeks qualify as "judicial documents." First, it is not clear that this Court has even reviewed or considered them, and if it has not, that fact alone is dispositive. Second, the law throughout the country is clear that routine, raw discovery materials submitted as exhibits to non-dispositive discovery motions do not convert into "judicial documents" and trigger a right of public access. The Court should find that these documents are not "judicial documents" and summarily deny Dershowitz's motion.

### C.   Even Were the Court to Deem the Documents to be Judicial Documents, the Presumption of Access is Weak

Even if the Court found these documents to be judicial documents - which they categorically are not - Dershowitz's motion still fails because the common law presumption of access is extremely weak and easily overcome here by countervailing factors. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006) (noting that if a court finds documents to be judicial, it must then assess the weight of the presumed access and determine if countervailing factors override the presumption).

Once again, Dershowitz's own cited cases are his undoing. In *Alexander Interactive*, the Court found that because the documents were submitted merely as exhibits to a motion to compel, "the presumption in favor of public access is weak."2014 WL 4346174 at *2. It then proceeded to seal the documents in question, despite acknowledging the public right of access. *See also Stern v. Cosby*, 529 F.Supp.2d 417, 422 (S.D.N.Y. 2007) ("the presumption of public access - if any - that attaches to the transcript and videotape is low, at best. No such presumption attaches at all to the videotape, and even if the transcript is filed for purposes of a motion to compel, the presumption that would attach to the transcript would be low. On any such motion, I

would not be making any decision on the merits, but I would simply be reviewing excerpts of the transcripts to resolve a discovery dispute.").

This ruling is in-line with the Second Circuit's directive regarding how to assess the weight of the presumption of access. "[T]he presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Amodeo II*, 71 F.3d at 1049. This is not a situation where the documents were relied upon as part of a dispositive summary judgment motion (where the presumption is highest). If the Court relied on the documents at all, which is not clear, it was for the limited purpose of determining entitlement to discovery. In this context, as the courts in *Alexander Interactive, Stern* and *Amodeo II* noted, the presumption is weakest. *Amodeo II*, 71 F.3d at 1050 ("Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason."). *Joy v. North*, 692 F.2d 880, 893 (2d Cir.1982) ("Discovery involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public."); *In re Zyprexa Injunction*, 474 F.Supp.2d 385, 423 (E.D.N.Y. 2007) ("Nonparties who are prohibited from accessing confidential documents . . . cannot claim an infringement on their freedom of speech: The right to speak and publish does not carry with it the unrestrained right to gather information. . . Discovery involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public.") (internal citations and quotations omitted); *Dorsett v. County of Nassau*, 762 F.Supp.2d 500, 519 (E.D.N.Y. 2011) ("Assuming for the sake of argument that the

IAU Report did satisfy the judicial document inquiry, since the Report was passed between the parties in discovery, it lies entirely beyond the presumption's reach.").

Given that the presumption of access here is weak, if it exists at all, Ms. Giuffre easily overcomes it with her countervailing evidence. ██████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████ *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F.Supp.3d 425, 445 N7 (S.D.N.Y. 2016) ("As for competing considerations that counsel in favor of allowing the parties to file their briefs under seal, the privacy interests of the parties in preventing the public disclosure of private business figures and communications are not insignificant. The Court therefore concludes that the balance of interests is in favor of allowing the parties' briefs to be filed under seal."). This decision is particularly instructive here, as it involved summary judgment filings, where the access presumption is highest, as opposed to the discovery brief exhibits at issue here, where the presumption is lowest.

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████

17

otherwise protected material to enable a non-party to conduct a public smear campaign. *Amodeo II*, 71 F.3d at 1051 ("The nature and degree of injury must also be weighed. This will entail consideration not only of the sensitivity of the information and the subject but also of how the person seeking access intends to use the information…***personal vendettas…need not be aided***.") (Emphasis added).

In sum, the documents Dershowitz seeks involve no presumption of access whatsoever, as they are not judicial documents, but were the Court to find otherwise, the applicable presumption of access would be the lowest that exists under Second Circuit law. Ms. Giuffre requests that, in accord with the governing law, the Court hold that ████████████████ outweigh any weak presumption of access.

## D.    No Right of Access Exists Under the First Amendment

Dershowitz should not have advanced a First Amendment right of access argument because it is wholly without merit. First and foremost, the documents at issue must be "judicial documents" to trigger a First Amendment right of access, and, as stated above, the materials at issue here are not. *Newsday LLC v. County of Nassau*, 730 F.3d 156, 166 (2d Cir. 2013) ("We must conduct an independent review of the Report to determine (a) ***whether it is a judicial document*** to which the First Amendment right applies") (emphasis added).

Should the Court find otherwise, there remains no right of access under the First Amendment. As the Second Circuit has said, "[e]ven when it applies, moreover, the First Amendment right creates only a *presumptive* right of access." *Id.* at 164 (Emphasis original). The right does not attach here because Dershowitz's motion fails the Second Circuit's "experience and logic" test for triggering a First Amendment right of access. That test "asks both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Id.*

18

Dershowitz's motion fails both parts of the test. "Protective orders prohibiting dissemination of materials discovered before trial are not the kind of classic prior restraint that require[ ] exacting First Amendment scrutiny." *In re Zyprexa Injunction*, 474 F.Supp.2d at 417 (Internal quotations omitted).

███████████████████████████████████████████████████████

████████████████████ That argument is meritless, as it ignores the existence of the Protective Order in this case. Moreover, there is no "historical openness" to the press of a party's raw discovery materials, quite the opposite. As Ms. Giuffre established above, the Second Circuit has found that there is no public right of access to material exchanged in discovery. *Amodeo II*, 71 F.3d at 1050 (documents "passed between the parties in discovery, lie entirely beyond the presumption's reach…"). And again, the Court should not lose sight of the policy rationale behind the First Amendment right of access: the accountability of the courts to the public.

███████████████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████████████████

19

█████████████████████████████████████████████████████████

█████████████████████████████ Second, public interest in a case would only

matter if the material was sought to allow the public to monitor the Court's actions (which is

why the courts in this district often recognize a *news agency's* standing to challenge protective

orders[32]), not to feed any purported interest in Dershowitz personally. Again, the First

Amendment right protects **the public's** right to oversee the function of the Court; it does not exist

█████████████████████████████████████████ *Newsday*, 730 F.3d at

164 ("the need for public access to court proceedings is grounded in the need for federal courts ...

to have a measure of accountability and **for the public to have confidence in the administration**

**of justice**.") (emphasis added). The Court must reject Dershowitz's misguided attempt to

manipulate a public right for his personal benefit.

  E.   **The Second Circuit Has a Presumption Against Modifying Protective Orders Upon Which Parties Reasonably Relied**

  The Second Circuit has expressly acknowledged that its protective order modification test

has, as a general matter, a "strong presumption against the modification of a protective order, and

orders should not be modified absent a showing of improvidence in the grant of the order or

some extraordinary circumstance or compelling need." *In re Teligent, Inc.,* 640 F.3d 53, 59 (2d

Cir. 2011) (affirming denial of motion to lift confidentiality provisions of the protective order).[33]

  1.   **The Record in this Case Shows That the Protective Order Was Not Improvidently Granted**

---

[32] ███████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

[33] 8A Richard L. Marcus, Federal Practice and Procedure § 2044.1 (3d ed. Westlaw 2012) (asserting that the Second Circuit has "embraced a very restrictive attitude toward modification of protective orders," "emphasiz[ing] the need to foster use of protective orders as a means of facilitating discovery as a reason for resisting modification that would tend to make the orders appear unreliable").

Despite Dershowitz's argument, the Protective Order, entered "[u]pon a showing of good cause," was not improvidently granted. (DE 62 at p.1). Indeed, even after the entry of the Protective Order, ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ Indeed, "*once a discovery protective order is in place, the applicable standard requires plaintiff seeking to modify the order to show improvidence in the grant of the protective order* or some extraordinary circumstance or compelling need." *In re September 11 Litigation*, 262 F.R.D. 274 (S.D. N.Y. 2009). Dershowitz's attempts to claim improvidence, carelessness, or shortsightedness of this Court in granting the Protective Order are unavailing. To the contrary, this Court has, ██████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████



2.  <u>**The Parties and Deponents in This Case Have Reasonably Relied Upon the Protective Order**</u>

The Second Circuit has been hesitant to permit modifications that might "unfairly disturb the legitimate expectations of the parties or deponents." *Dorsett v. County of Nassau*, 289 F.R.D. 54, 64 (E.D.N.Y. 2012). Indeed, "[i]t is presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." *Id.*, 289 F.R.D. at 64 (E.D.N.Y. 2012) (internal citations and quotations omitted) (denying motion to lift

████████████████████████████████████████████████ ██████████████████████████████████████████████████████

confidentiality of report of policing failures surrounding the murder of a young mother).

"Consequently, in a major decision in this field, *Martindell v. International Telephone &
Telegraph Corp.*, 594 F.2d 291 (2d Cir.1979), the Second Circuit determined that 'absent a
showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary
circumstance or compelling need ... a witness should be entitled to rely upon the enforceability of
a protective order against any third parties.'" *Id.*, quoting M*artindell v. International Telephone
& Telegraph Corp.*, 594 F.2d at 296 (denying governmental access for criminal investigative
purposes civil deposition transcripts taken under a protective order).

In this case, Ms. Giuffre - and multiple other deponents - reasonably relied on this
Court's Protective Order in giving testimony and producing documents.



*Medical Diagnostic Imaging, PLLC v. Carecore Nat.,
LLC*, 2009 WL 2135294, at *4 (S.D.N.Y. 2009) (denying motion to modify protective order
because parties and third parties have reasonably relied upon the terms of the protective order).
Under *Martindell*, this Court cannot take away those protections after the fact.[36]

### 3.   Dershowitz Seeks These Materials For an Illegitimate Purpose Which Disqualifies Him from Relief

"A litigant's purpose in seeking modification of an existing protective order is also
relevant for determining whether to grant a modification. Requests to modify protective orders so
that the public may access discovery materials is arguably subject to a more stringent

---

[36] "The Second Circuit has explicitly rejected the notion that the *Martindell* standard should be limited to cases
where the government seeks to modify a protective order. Rather, *Martindell* has been applied even when the third
party seeking access to discovery is a private litigant. *Dorsett v. County of Nassau*, 289 F.R.D. at 66, citing *Iridium
India Telecom Ltd. v. Motorola, Inc.*, 165 Fed.Appx. 878, 880 (2d Cir.2005).

presumption against modification because there is no public right of access to discovery materials." *Dorsett,* 289 F.R.D. at 65 (Internal citations and quotations omitted). Dershowitz's own words admit the true purpose behind the instant motion, and wholly contradict the flimflam he has presented to this Court: *"My goal is to bring charges against the client and require her to speak in court."*[37]

Indeed, in over 50 statements to the press, he has explained to the world (if not this Court) his reasons for maintaining his attacks on Ms. Giuffre in the media, in which he has publicly called her a "prostitute" and a "bad mother" to her three minor children. McCawley Dec. at Exhibit 20, Local 10 News, January 22, 2015. For example, Dershowitz has made the following statements:

- "The end result of this case should be she [Jane Doe No. 3] should go to jail, the lawyers should be disbarred and everybody should understand that I am completely and totally innocent." McCawley Dec. at Exhibit 21, CNN International, New Day, January 6, 2015.

- Dershowitz also stated, in an interview in Newsmax, that he is "considering" bringing a lawsuit against Jane Doe No. 3. "And we're considering suing her for defamation as well, but right now she was trying to hide in Colorado and avoid service, but we found her and we served her and now she'll be subjected to a deposition."[38]

By his own words, Dershowitz wants to intimidate and harass Ms. Giuffre with the specter of his sending her "to jail."[39]

Even Dershowitz's own cited cases militate against the Court feeding his proposed public relations campaign: *Nixon v. Warner Communications, Inc.*, 98 S.Ct. 1306, 1312, 435 U.S. 589, 598 (1978) ("It is uncontested that the right to . . . copy judicial records is not absolute . . . access has been denied where court files might have become a vehicle for improper purposes"). In

---

[37] McCawley Dec. at Exhibit 22, Australian Broadcasting System (ABC), January 6, 2015.
[38] McCawley Dec. at Exhibit 23, Newsmax, April 8, 2015
[39] Dershowitz has previously written: "There's an old saying: 'If you have the law on your side, bang on the law. If you have the facts on your side, bang on the facts. If you have neither, bang on the table.'  I have never believed that, but I do believe in a variation on that theme: If you don't have the law or legal facts on your side, argue your case in the court of public opinion." ALAN DERSHOWITZ, TAKING THE STAND: MY LIFE IN THE LAW (2013).

*Nixon*, the Supreme Court warned that lower courts should "exercise an informed discretion as to the release" of materials, because, "[o]therwise, there would exhibit a danger that the court could become a partner in the use of the subpoenaed material to gratify private spite or promote public scandal, with no corresponding assurance of public benefit." *Nixon v. Warner Communications, Inc.*, 98 S.Ct. at 1315, 435 U.S. at 603 (internal citations and quotations omitted).Under *Nixon*, this Court should not allow itself to be Dershowitz's partner in gratifying his private spite ██

████████████████████████████████████████████████[40]

### 4.   Under This Court's Order, Non-Parties Cannot Challenge Confidentiality Designations and Dershowitz has Already Agreed to be Bound by the Parties' Confidentiality Designations in Exchange for Receipt of Documents

The Protective Order (DE 62) does not allow non-parties, like Dershowitz, to make a challenge to the confidentiality designations or the efficacy of the Order. To the contrary, the Protective Order only states that parties can object to the confidentiality designations: "A party may object to the designation of particular CONFIDENTIAL INFORMATION by giving written notice to the party designating the disputed information . . . it shall be the obligation the party designating the information as CONFIDENTIAL to file an appropriate motion requesting that the Court determine whether the disputed information should be subject to the terms of this Protective Order." (DE 62 at ¶ 11, p. 4). This Court's Protective Order does not allow for non-parties to challenge these designations. Accordingly, Dershowitz cannot challenge the designations under this Order.

---

[40] Similarly, under applications to intervene under Rule 24(a), numerous courts have declined to allow a mere "reputational" interest to justify intervention. *Calloway v. Westinghouse Elec. Corp.*, 115 F.R.D. 73, 74 (M.D. Ga. 1987) ("interest in his reputation alone . . . does not constitute the required interest relating to the property or transaction which is the subject of the present action necessary to allow intervention"); *Flynn v. Hubbard*, 82 F.2d 1084, 1093 (1st Cir. 1986) ("the church "merely claim[ed] a generalized injury to reputation [that] identifies no legal detriment arising from a default judgment against Hubbard."); *Edmondson v. State of Neb. ex. rel. Meyer*, 383 F.2d 123 (8th Cir. 1967) ("The mere fact that Edmondson's reputation is thereby injured is not enough [to support intervention]."); *Forsyth County v. U.S. Army Corps of Engineers*, 2009 WL 1312511, at *2 (N.D. Ga. May 8, 2009) (interest in protecting its reputation . . . is not direct, substantive, or derived from a legal right").

Importantly, Dershowitz admits that he has agreed to be bound by the provisions of the Protective Order in exchange for receiving the documents. Accordingly, he has agreed to the confidentiality restrictions placed on the documents, no matter what the documents contained. As Dershowitz explicitly admits that he agreed to be bound by the Protective Order so that he could be privy to all of the discovery in this case, he also agreed to be bound by its confidentiality provisions, as well as the provisions that only allow parties to bring challenges to the Protective Order.

## V.     CONCLUSION

Based on the foregoing, the Court should deny Dershowitz's motion in its entirety.

August 29, 2016

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By: /s/ Sigrid McCawley
    Sigrid McCawley (Pro Hac Vice)
    Meredith Schultz (Pro Hac Vice)
    Boies Schiller & Flexner LLP
    401 E. Las Olas Blvd., Suite 1200
    Ft. Lauderdale, FL 33301
    (954) 356-0011

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on August 29, 2016, I electronically filed the foregoing

document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing

document is being served to all parties of record via transmission of the Electronic Court Filing

System generated by CM/ECF.

Laura A. Menninger, Esq.
Jeffrey Pagliuca, Esq.
HADDON, MORGAN & FOREMAN, P.C.
150 East 10th Avenue
Denver, Colorado 80203
Tel: (303) 831-7364
Fax: (303) 832-2628
Email: <u>lmenninger@hmflaw.com</u>
       <u>jpagliuca@hmflaw.com</u>

<u>/s/ Meredith Schultz</u>
Meredith Schultz

26