UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIRGINIA GIUFFRE,

                Plaintiff,

  -against-

GHISLAINE MAXWELL,

                Defendant.

No. 15 Civ. 7433 (RWS)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PROPOSED INTERVENOR ALAN M. DERSHOWITZ'S MOTION FOR PERMISSIVE INTERVENTION AND UNSEALING OF JUDICIAL DOCUMENTS, OR IN THE ALTERNATIVE MODIFICATION OF PROTECTIVE ORDER**

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ................................................................................................... ii-iii

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ................................................................................................................................ 2

    I.    THE PUBLIC HAS A RIGHT TO ACCESS THE REQUESTED
         DOCUMENTS ............................................................................................................... 2

         A.    The Requested Documents Are Judicial Documents
               to Which a Strong Presumption of Access Applies ..................................... 2

         B.    Professor Dershowitz's Motives Are Proper, and Are Irrelevant
               Anyway ........................................................................................................ 4

    II.   MS. GIUFFRE HAS ARTICULATED NO BASIS FOR CONTINUED
         SECRECY ..................................................................................................................... 5

    III.  EVEN IF THE REQUESTED DOCUMENTS ARE NOT PRESUMPTIVELY
         PUBLIC, THERE IS NO BASIS FOR A PROTECTIVE ORDER ........................ 6

         A.    The Presumption Against Modification of a Protective Order
               Does Not Apply ........................................................................................... 6

         B.    Even If the Presumption Applied, Extraordinary Circumstances
               Exist to Justify Modification ....................................................................... 9

CONCLUSION ........................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Alexander Interactive, Inc. v. Adorama, Inc.*,
  No. 12 Civ. 6608, 2014 WL 4346174 (S.D.N.Y. Sept. 2, 2014) ......................................... 4

*Allen v. City of N.Y.*,
  420 F. Supp. 2d 295 (S.D.N.Y. 2006) ................................................................................. 7

*Anderson v. Cryovac, Inc.*,
  805 F.2d 1 (1st Cir. 1986) .................................................................................................... 3

*Atmospherics, Ltd. v. Hansen*,
  269 A.D.3d 343 (2d Dep't 2000) ......................................................................................... 5

*Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*,
  263 F.3d 1304 (11th Cir. 2001) ........................................................................................... 3

*Cohen v. Cohen*,
  No. 09 Civ. 10230, 2015 WL 4469704 (S.D.N.Y. June 29, 2015) ...................................... 9

*Fournier v. Erickson*,
  242 F. Supp. 2d 318 (S.D.N.Y. 2003) .............................................................................. 7, 8

*Gucci Am., Inc. v. Guess?, Inc.*,
  No. 09 Civ. 4373, 2010 WL 1416896 (S.D.N.Y. Apr. 8, 2010) .......................................... 4

*In re Agent Orange Prod. Liab. Litig.*,
  821 F.2d 139 (2d Cir. 1987) ................................................................................................. 9

*In re EPDM Antitrust Litig.*,
  255 F.R.D. 308 (D. Conn. 2009) ....................................................................................... 7, 8

*In re Gushlak*,
  No. 11 MC 0218, 2012 WL 3683514 (E.D.N.Y. July 27, 2012) ......................................... 4

*In re Omnicom Grp., Inc. Secs. Litig.*,
  No. 02 Civ. 4483, 2006 WL 3016311 (S.D.N.Y. Oct. 23, 2006) ........................................ 4

*JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*,
  960 F. Supp. 2d 383 (E.D.N.Y. 2013) ................................................................................. 6

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
  998 F.2d 157 (3d Cir. 1993) ................................................................................................. 2

*Lown v. Salvation Army, Inc.*,
  No. 04 Civ. 01562, 2012 WL 4888534 (S.D.N.Y. Oct. 12, 2012) ...................................... 8

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 (2d Cir. 2006) ................................................................................ 3, 7, 9

*Lytle v. JPMorgan Chase*,
    810 F. Supp. 2d 616 (S.D.N.Y. 2011) ......................................................................... 5

*Mokhiber v. Davis*,
    537 A.2d 1100 (D.C. 1988) ............................................................................... 2, 3, 4

*Newsday LLC v. Cnty. of Nassau*,
    730 F.3d 156 (2013) ..................................................................................................... 3

*Nixon v. Warner Commc'ns, Inc.*,
    435 U.S. 589 (1978) ..................................................................................................... 2

*Phillips v. Gen. Motors*,
    307 F.3d 1206 (9th Cir. 2002) ..................................................................................... 3

*Prescient Acquisition Grp., Inc. v. MJ Publ'g Trust*,
    487 F. Supp. 2d 374 (S.D.N.Y. 2007) .......................................................................... 5

*Rosado v. Bridgeport Roman Catholic Diocesan Corp.*,
    970 A.2d 656 (Conn. 2009) ..................................................................................... 2, 3

*S.E.C. v. Oakford Corp.*,
    No. 00 Civ. 2426, 2001 WL 266996 (S.D.N.Y. Mar. 16, 2001) ................................. 4

*S.E.C. v. TheStreet.Com*,
    273 F.3d 222 (2d Cir. 2001) ......................................................................................... 6

*Schiller v. City of N.Y.*,
    No. 04 Civ. 7922, 2006 WL 2788256 (S.D.N.Y. Sept. 27, 2006) .............................. 4

*Tradewinds Airlines, Inc. v. Soros*,
    No. 08 Civ. 5901, 2016 WL 3951181 (S.D.N.Y. July 20, 2016) ................................ 9

*United States v. Amodeo (Amodeo II)*,
    71 F.3d 1044 (2d Cir. 1995) ..................................................................................... 3, 5

*United States v. Bagley*,
    473 U.S. 667 (1985) ................................................................................................... 10

*von Bulow v. von Bulow*,
    811 F.2d 136 (2d Cir. 1987) ......................................................................................... 9

**Rules & Statutes**

Civil Rights Law § 79-h(c) ................................................................................................. 9

Fed. R. Civ. P. 26 ......................................................................................................... 9, 10

## PRELIMINARY STATEMENT

Virginia Roberts Giuffre's opposition is a study in misdirection: it dismisses Professor Dershowitz's desire to clear his name as a "vendetta," and it posits that ███████ ████████████████████████████████████████████████ ████████████████ are irrelevant. Far from requiring a "web of circumstantial inferences," Pl. Br. at 2, the Requested Documents show that 

Professor Dershowitz is entitled to make these facts public. Ms. Giuffre has waived any privacy in her accusations by selling her story to the press and soliciting maximum public attention for her accusations against Professor Dershowitz and others. Her jealous guarding of the Requested Documents is not motivated by any privacy interest she possesses in their contents—she articulates none—but rather by a desire to avoid a full airing and robust discussion of the actual facts. Ms. Giuffre wishes to cherry-pick "facts," level heinous and false accusations against Professor Dershowitz, in court filings and in media interviews, and continue to use the powers of this Court to protect her from contrary evidence being made public.

That is not just unfair; it is also unconstitutional. As the Second Circuit has long recognized, litigants cannot file documents in court to seek a litigation advantage while



1

simultaneously shielding those documents from public view. The courts are presumptively public, and the public has a right to monitor the judicial process—particularly as concerns Ms. Giuffre's accusations, which her own attorneys have argued (in opposing restrictions on public access to court filings detailing them) are the subject of "strong current media interest." Nor does the fact that Professor Dershowitz is not himself a news agency negate his access rights: "The First Amendment generally grants the press no right to information about a trial superior to that of the general public." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 609 (1978).

In their tortured efforts to assert that it was proper to publicly accuse Professor Dershowitz of raping children, Ms. Giuffre's lawyers unwittingly reveal just how baseless these accusations really are. The Reply Declaration of Alan M. Dershowitz confronts, and disproves, Ms. Giuffre's allegations point by point. But now that those accusations have been made—in public and in court papers, again and again—Professor Dershowitz cannot be forced to respond with one rhetorical hand tied behind his back. The motion should be granted.

## ARGUMENT

### I.  THE PUBLIC HAS A RIGHT TO ACCESS THE REQUESTED DOCUMENTS

#### A. The Requested Documents Are Judicial Documents to Which a Strong Presumption of Access Applies

Ms. Giuffre's ignores that courts are "split as to whether discovery related motions and their associated exhibits should be considered judicial documents." *Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, 970 A.2d 656, 683 (Conn. 2009). *Compare, e.g.*, *Mokhiber v. Davis*, 537 A.2d 1100, 1112 (D.C. 1988) (holding that discovery motions "fall within" the presumption of access to judicial documents "precisely because discovery is so important in trial practice"), *with, e.g.*, *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993) (disagreeing with *Mokhiber* but noting "valid reasons why one could conclude that the common law presumptive right of access to pretrial motions is equally applicable to discovery motions").

The Second Circuit has not weighed in, as Ms. Giuffre acknowledges. But she is wrong to assert that the Second Circuit will follow those courts that have adopted a categorical rule against treating discovery motion papers as judicial documents. Several of those courts have reached such a rule only by relying on legal propositions that the Second Circuit has roundly rejected. For example, some Circuits hold that filings are only judicial documents when they are relied upon by a court in determining the "merits" of a suit or a litigant's "substantive rights," or that "confidential" documents filed in connection with non-dispositive motions are categorically beyond the reach of the presumption of access. *See, e.g.*, *Phillips v. Gen. Motors*, 307 F.3d 1206, 1213 (9th Cir. 2002); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312 & n.11 (11th Cir. 2001); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986). But the Second Circuit has rejected these cramped constructions of the public's rights. *See, e.g.*, *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 164 (2013) ("we have held that the First Amendment right applies, among other things, to . . . pretrial motions and written documents submitted in connection with them"); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006) (rejecting the suggestion "that different types of documents might receive different weights of presumption based on the extent to which they were relied upon in resolving the motion"); *United States v. Amodeo (Amodeo II)*, 71 F.3d 1044, 1049-50 (2d Cir. 1995) (noting that some presumption of access exists with respect to "*any* . . . document which is presented to the court to invoke its powers or affect its decisions" (emphasis added)).

The Second Circuit generally "construes judicial documents more broadly" to include "documents that are filed with the court that reasonably may be relied upon in support of *any part* of the court's adjudicatory function." *Rosado*, 970 A.2d at 678 (emphasis added) (describing the Second Circuit's approach as consistent with *Mokhiber*). This explains the nearly uniform consensus among the district courts bound by its decisions in applying the presumption

of access to discovery motion papers.  *See, e.g.*, *Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12 Civ. 6608, 2014 WL 4346174, at *2 (S.D.N.Y. Sept. 2, 2014); *In re Gushlak*, No. 11 MC 0218, 2012 WL 3683514, at *3 (E.D.N.Y. July 27, 2012); *Gucci Am., Inc. v. Guess?, Inc.*, No. 09 Civ. 4373, 2010 WL 1416896, at *2 (S.D.N.Y. Apr. 8, 2010); *In re Omnicom Grp., Inc. Secs. Litig.*, No. 02 Civ. 4483, 2006 WL 3016311, at *2 (S.D.N.Y. Oct. 23, 2006); *Schiller v. City of N.Y.*, No. 04 Civ. 7922, 2006 WL 2788256, at *5 (S.D.N.Y. Sept. 27, 2006); *S.E.C. v. Oakford Corp.*, No. 00 Civ. 2426, 2001 WL 266996, at *1 (S.D.N.Y. Mar. 16, 2001).  But other than inviting the Court to "reject these outlier opinions out of hand," Pl. Br. at 14, Ms. Giuffre attempts no rejoinder to the *reasoning* of *Mokhiber* and its progeny: that modern discovery motions are *core* judicial processes that "may prove decisive to the outcome of particular disputes" and therefore must be open to public monitoring.  *Mokhiber*, 537 A.2d at 1112 (observing that "the availability of mandatory discovery has greatly affected the way in which our courts do justice").  This Court should adopt this persuasive rationale.

          **B.**      **Professor Dershowitz's Motives Are Proper, and Are Irrelevant Anyway**

Ms. Giuffre's repeated attempts to cast Professor Dershowitz's motion as part of a "vendetta" against her are as ironic as they are false.  Ms. Giuffre publicly and falsely accused Professor Dershowitz of sex crimes, then spent years attempting to profit from those allegations and disseminate them as widely as possible.  She now seeks to hijack this Court's Article III powers to hamstring Professor Dershowitz's ability to meet those accusations in the very public fora in which she has intentionally and repeatedly made them.  Her newfound concerns about a "media war" were nowhere in evidence when she sold her story to the media for six figures in 2011, taped an interview with ABC News, and smeared Professor Dershowitz through surrogates even after her lawyers had admitted it was a mistake to accuse him of raping young girls.

4

In any event, the Second Circuit has expressly held that the motive of the person seeking disclosure of judicial documents is "irrelevant to defining the weight accorded to the presumption of access." *Amodeo II*, 71 F.3d at 1050.[2]  The rights at issue are those of the public at large, and the law is clear that access must be granted on that basis alone.

## II.   MS. GIUFFRE HAS ARTICULATED NO BASIS FOR CONTINUED SECRECY

Ms. Giuffre's feeble attempts to conjure justifications for continuing to seal the Requested Documents do not withstand scrutiny. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *See Atmospherics, Ltd. v. Hansen*, 269 A.D.3d 343, 343 (2d Dep't 2000) ("An essential prerequisite to legal protection against the misappropriation of a trade secret is the element of secrecy."). ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ are precisely the kind of "broad allegations of harm unsubstantiated by specific examples or articulated reasoning" that cannot satisfy the high standard for sealing judicial documents. *See Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 630 (S.D.N.Y. 2011).  Even if Ms. Giuffre did have ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, that would not outweigh Professor Dershowitz's interest in defending his reputation. *See Prescient Acquisition Grp., Inc. v. MJ Publ'g Trust*, 487 F. Supp. 2d 374, 376 (S.D.N.Y. 2007) (rejecting "the notion that a generalized

---

[2] The Second Circuit held in *Amodeo II* that motive considerations "are best weighed as part of an assertion by a person or firm of a right of privacy based on an anticipated injury as a result of disclosure," *not* as a factor going to the weight of the presumption of access.  71 F.3d at 1050.  Ms. Giuffre has no right of privacy over accusations of repugnant criminal conduct she has spent years levying through the courts and the media.  The Second Circuit's cautioning that "personal vendettas . . . need not be aided," *id.* at 1051, therefore has no application.

5

concern of adverse publicity concerning a public figure is a sufficiently compelling reason that outweighs the presumption of access."). Tellingly, Ms. Giuffre does not even attempt to explain how ▇▇▇.

Moreover, even if the Requested Documents could be considered private in another context, Ms. Giuffre long ago waived any privacy interest in their contents. She has made public accusations of sexual misconduct against Professor Dershowitz and others repeatedly in lawsuits and in paid media interviews, *see* Dershowitz Decl. ¶¶ 10-13, 15-20, 26-27, and clearly has no interest in keeping those allegations ▇▇▇ ▇▇▇. Indeed, Ms. Giuffre does not dispute that her counsel deliberately filed her accusations against Professor Dershowitz publicly in the CVRA Action. Accordingly, "[a]ny countervailing privacy interest of [Ms. Giuffre] cannot defeat the strong presumption of public disclosure where the material [she] seeks to seal is already in the public domain." *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 397 (E.D.N.Y. 2013).

### III.  EVEN IF THE REQUESTED DOCUMENTS ARE NOT PRESUMPTIVELY PUBLIC, THERE IS NO BASIS FOR A PROTECTIVE ORDER

#### A.  The Presumption Against Modification of a Protective Order Does Not Apply

Ms. Giuffre stakes her opposition to the modification of the Protective Order on a legal rule that plainly does not apply. The Second Circuit's presumption against modification of a protective order applies *only* where any reliance on the Order is reasonable. *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 231 (2d Cir. 2001) ("Where a litigant or deponent could not reasonably have relied on the continuation of a protective order a court may properly permit modification of the order."). But Ms. Giuffre never addresses the factors courts in the Second Circuit have recognized as bearing on the reasonableness of reliance: "(1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook

6

before granting the order; and (4) the nature of reliance on the order." *In re EPDM Antitrust Litig.*, 255 F.R.D. 308, 318 (D. Conn. 2009). All four factors weigh against Ms. Giuffre.

First, she cannot dispute that the Protective Order "grants sweeping protection to most, if not all, discovery material produced in [this] litigation, even discovery material that a party would have been required to disclose in the absence of a protective order." *Id.* at 319. The Protective Order defines the scope of its confidentiality protections circularly to include "information that is confidential," effectively imposing *no* limit on the secrecy the parties can unilaterally mandate without particularized judicial scrutiny. *See* Dershowitz Decl. Ex. L ¶ 3. It is therefore precisely the kind of order that courts routinely modify. *In re EPDM*, 255 F.R.D. at 319 ("Although such blanket protective orders may be useful in expediting the flow of pretrial discovery materials, they are by nature overinclusive and are, therefore, peculiarly subject to later modification. *Stipulated* blanket orders are even less resistant to a reasonable request for modification." (internal quotation marks and citation omitted)); *Fournier v. Erickson*, 242 F. Supp. 2d 318, 341 (S.D.N.Y. 2003) (granting modification of protective order where stipulated order "allowed for unilateral designation of an exhibit as protected material, and it did not list specific documents, or delineate the kinds of documents, contemplated for protection").

Second, the Protective Order expressly contemplates challenges to confidentiality designations and judicial modifications to the scope of its protections. *See* Dershowitz Decl. Ex. L ¶¶ 11, 14. "These provisions make it "difficult to see how [Ms. Giuffre] can reasonably argue that [she] produced documents in reliance on the fact that the documents would always be kept secret." *Lugosch*, 435 F.3d at 126 ("the confidentiality order specifically contemplates that relief from the provisions of the order may be sought at any time"); *accord Allen v. City of N.Y.*, 420 F. Supp. 2d 295, 301 (S.D.N.Y. 2006); *In re EDPM*, 255 F.R.D. at 321.

Third, this Court has never made a particularized finding that the Requested Documents specifically merit judicially-enforced confidentiality. Under such circumstances, "it cannot be presumed that every piece of discovery filed under the Order is actually worthy of such a high level of protection." *In re EPDM*, 255 F.R.D. at 322; *accord Fournier*, 242 F. Supp. 2d at 341. Ms. Giuffre twists this uncontroversial observation, implying that Professor Dershowitz has somehow impugned the Court's integrity or competence merely by pointing out the obvious fact that the Court has not reviewed every document designated confidential under the Protective Order to determine whether good cause has been shown . While blanket protective orders can help streamline discovery, *In re EPDM*, 255 F.R.D. at 322, the lack of particularized judicial scrutiny dooms Ms. Giuffre's claim of reasonable reliance. *Fournier*, 242 F. Supp. 2d at 341.

Finally, the nature of Ms. Giuffre's claimed reliance weighs heavily *against* applying the presumption against modification. Ms. Giuffre's *only* arguments about her reasonable reliance on the Protective Order concern *other* discovery she has produced, *not* the Requested Documents. Pl. Br. at 22 (discussing ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ But reasonable reliance is determined on a document-by-document basis. *See, e.g.*, *Lown v. Salvation Army, Inc.*, No. 04 Civ. 01562, 2012 WL 4888534, at *4 (S.D.N.Y. Oct. 12, 2012). Ms. Giuffre has *never* presented any semblance of a justification for the Court to maintain the secrecy of ▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and whose contents she has selectively disclosed already in numerous media appearances over the course of several years, let alone ▬▬▬▬

Ms. Giuffre plainly did not produce, much less create, the Requested Documents in reliance on the Protective Order. "[W]here the parties have not given up any rights and indeed would have been *compelled* to produce the discovery materials even in the absence of a protective order, the presumption against modification is not as strong." *In re EPDM*, 255

8

F.R.D. at 323; *Lugosch*, 435 F.3d at 125-26. That is clearly the case here, where the documents in question are, essentially, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.*, *Cohen v. Cohen*, No. 09 Civ. 10230, 2015 WL 4469704, at *4 (S.D.N.Y. June 29, 2015) (discussing discoverability of a plaintiff's own statements concerning the subject matter of the lawsuit). No good cause exists for the issuance of a Court Order protecting Ms. Giuffre's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮—which she has selectively disclosed in the media and to the highest bidder for years—from causing her "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

### B. Even If the Presumption Applied, Extraordinary Circumstances Exist to Justify Modification

Even if Ms. Giuffre had relied reasonably on the Protective Order, which she did not, it would still be subject to modification. As an initial matter, the overbreadth of a Protective Order *itself* "amounts to the type of extraordinary circumstances" necessary to justify modification. *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 148 (2d Cir. 1987); *accord Tradewinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901, 2016 WL 3951181, at *2 (S.D.N.Y. July 20, 2016) (collecting authorities). More importantly, Professor Dershowitz's need to defend himself against Ms. Giuffre's repeated, false, public accusations that he is a child rapist is an "extraordinary circumstance" that should be enough to justify modifying the Protective Order as concerns ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[3] Although Ms. Giuffre dismisses the Requested Documents as irrelevant, they indisputably ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[3] The fact that the Emails involve communications with a reporter neither implicates any privilege nor justifies confidentiality protections. The Emails are in Ms. Giuffre's possession and were produced by Ms. Giuffre—not a journalist—in discovery. New York's shield law, Civil Rights Law § 79-h(c), only "professional journalists and newscasters," and protects information that "is not obtainable from any alternative source." The fact that Ms. Giuffre is the source of the Emails thus defeats any claim of privilege. Similarly, the qualified federal journalist's privilege cannot be invoked by non-journalists, and is therefore not a basis for Ms. Giuffre to resist disclosure of her own statements to a journalist or a journalist's statements to her. *See von Bulow v. von Bulow*, 811 F.2d 136, 145 (2d Cir. 1987). In any event, Ms. Giuffre has already produced the Requested Documents in discovery to her adversary, so any privilege claim is waived.

███████████████████████████████████████████████████████████

█████████████████████████████████████████. Just as a prosecutor would be bound to disclose such ███████████████████████████████

█████████████, *United States v. Bagley*, 473 U.S. 667, 676 (1985), Professor Dershowitz should able to use them to defend against accusations that he committed heinous crimes.

    Ms. Giuffre's filings here continue the public smear campaign against Professor Dershowitz that she and her lawyers have affirmatively opted to prosecute in the media and on public court dockets.[4]  They seek the continued freedom to make their case against Professor Dershowitz in public by selectively disclosing Ms. Giuffre's statements and accusations, while co-opting this Court's powers under Rule 26 to handicap Professor Dershowitz from ██████ ████████████████████████████████████████████████.

    Alan Dershowitz never met Virginia Giuffre until after she accused him of raping her repeatedly when she was a child.  She chose to bring this lawsuit, subjecting herself to the same Rule 26 requirements all litigants face.  Discovery has now showed that, years before she ever accused Professor Dershowitz, Ms. Giuffre ████████████████████████████ ██████████████████████████████████████████████████████████████████████. It has also revealed that ███████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████.  Prohibiting Professor Dershowitz from revealing these exculpatory facts to the public, even as accusations of his involvement in repugnant criminal acts continue to be republished in book after book and interview after interview, would be a perversion of the discovery rules.  The Court should not countenance such a disgraceful misuse of the courts.

---

[4] Ms. Giuffre has not denied that accusations against me were leaked to the press.

10

## CONCLUSION

For the foregoing reasons, Professor Dershowitz respectfully requests that the Court grant his motion for permissive intervention and unseal the Requested Documents, or in the alternative modify the Protective Order to permit their dissemination.

Dated: September 15, 2016
       New York, New York

                                        EMERY CELLI BRINCKERHOFF
                                        & ABADY LLP

                                        /s/
                                        Andrew G. Celli, Jr.
                                        David A. Lebowitz

                                        600 Fifth Avenue, 10th Floor
                                        New York, New York 10020

                                        (212) 763-5000

                                        *Attorneys for Proposed Intervenor*
                                        *Alan M. Dershowitz*