UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

VIRGINIA L. GIUFFRE,

      Plaintiff,

v.

GHISLAINE MAXWELL,

      Defendant.

                             **15-cv-07433-RWS**

-------------------------------------------------X


**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL
DATA FROM DEFENDANT'S (NON-EXISTENT) UNDISCLOSED EMAIL
ACCOUNT AND FOR AN ADVERSE INFERENCE INSTRUCTION**


Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
303.831.7364

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 1

I.     PLAINTIFF HAS FAILED TO CONFER UNDER RULE 37(A)(1) OR THIS COURT'S
       ORDER.................................................................................................................. 1

II.    MS. MAXWELL HAS DISCLOSED AND SEARCHED ALL EMAIL ACCOUNTS ........ 3

III.   SANCTIONS AGAINST MS. MAXWELL NOT WARRANTED, RATHER COSTS
       OUGHT TO BE AWARDED TO HER .......................................................................... 7

CONCLUSION .............................................................................................................. 13

CERTIFICATE OF SERVICE ......................................................................................... 15

Defendant Ghislaine Maxwell ("Ms. Maxwell") files this Response to Plaintiff's Motion To Compel Data From Defendant's (Non-Existent) Undisclosed Email Account and For an Adverse Inference Instruction and states as follow:

## INTRODUCTION

Plaintiff continues in her course of re-litigating issues, multiplying these proceedings and misstating the record.  In what amounts to the fourth Motion on forensic examination of Ms. Maxwell's computers and email accounts, Plaintiff now trumps up a claim that some unidentified and "undisclosed" email account should have been searched and was not.  To the contrary, Ms. Maxwell has spent thousands of dollars to forensically image all of her devices, searching every account to which she has access, conducting extremely broad and over-reaching searches for the search terms Plaintiff requested and in complying with this Court's Orders.  The result of these exercises proved, as Ms. Maxwell has always maintained, that all non-privileged relevant and responsive documents in her possession, custody and control had already been searched for and produced prior to the excessive and redundant briefing on these issues, resulting in no additional production.  Plaintiff's Motion must be denied because no "undisclosed" email account exists and Ms. Maxwell has fully complied with this Court's Orders.

## ARGUMENT

## I.   PLAINTIFF HAS FAILED TO CONFER UNDER RULE 37(A)(1) OR THIS COURT'S ORDER

Despite the clear requirements of Rule 37(a)(1) requiring a certificate of conferral prior to filing any motion to compel, and this Court's standing order regarding conferral on all discovery issues prior to Motions practice, the sum total of Plaintiff's stated conferral attempt is a footnote stating that a letter was sent on September 23, 2016 "inquiring about the undisclosed account" – a letter not included in the exhibits to the Motion.  Ms. Maxwell has been clear that she has

searched all accounts that she can access.  Had Plaintiff bothered to follow up on this alleged communication, Ms. Maxwell would have reaffirmed that there is no "undisclosed" email account.  Instead, Plaintiff filed this frivolous and vexatious motion to waste both the Court and Ms. Maxwell's time and needlessly multiply these proceedings.

Courts in this district routinely deny motions based on failure to confer prior to the motion when such conferral is required by the Rules or Court Order.  *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.,* No. 96 Civ. 7590 (DAB) JCF, 1998 WL 67672, at *3 (S.D.N.Y. 1998) ("Under ordinary circumstances,..., the failure to meet and confer mandates denial of a motion to compel."); *Excess Ins. Co. v. Rochdale Ins. Co.*, No. 05 CIV. 10174, 2007 WL 2900217, at *1 (S.D.N.Y. Oct. 4, 2007) (Sweet, J.) (denying motion and cross motion based on failure to confer, noting "[m]ere correspondence, absent exigent circumstances not present here, does not satisfy the requirement"); *Myers v. Andzel*, No. 06 CIV. 14420 (RWS), 2007 WL 3256865, at *1 (Sweet, J.) (S.D.N.Y. Oct. 15, 2007) (denying motion based on failure to confer).

The Court has been abundantly clear on the necessity for conferral prior to motions practice.  In the March 17, 2016 hearing, the Court ordered that prior to motions practice, the parties were to set an agenda on the disputed issue in writing and have a meeting of substance prior to filing a motion.  "So I would say exchange writing as to what it's going to be and have a meeting.  It doesn't have to be in person, but it certainly has to be a significant meeting; it can't be just one ten-minute telephone call. So that's how I feel about the meet and confer."  Tr. p. 3. As shown in the Plaintiff's motion, no such call has occurred.

Based on Plaintiff's failure to confer as required by both the Federal Rules and this Court's standing order, Ms. Maxwell requests that the Motion be denied and attorneys' fees and costs of responding be awarded to Ms. Maxwell.

## II.     MS. MAXWELL HAS DISCLOSED AND SEARCHED ALL EMAIL ACCOUNTS

### a.  All Devices Have Been Forensically Searched for Responsive Emails

As requested by Plaintiff and Ordered by the Court, Ms. Maxwell's computer and all of her electronic devices have been forensically imaged, searched for the search terms requested by Plaintiff, and all responsive documents produced.  This expensive, costly and time consuming exercise in futility simply confirmed that all responsive documents, including all responsive emails, were produced in March and April 2016.

Most significantly, the devices were searched for all emails—whether saved or deleted – and irrespective of which account they came from; not a single responsive email was located from any ███████████ and no emails were located from ████████ or any other secret, hidden, "undisclosed" email account, as Plaintiff speculates must exist.

### b.  The ████████ account

The first two accounts discussed in the Motion have already been fully discussed in prior briefings and at length in conferral conferences.[1]  *See* DE 320.  In addition to the search of Ms. Maxwell's computer and devices, the first account, ████████████████, was forensically searched on its server using the search terms proposed by Defendants and as required by the Court.  The search uncovered no responsive documents from any time period.  *See* DE 320.  This included both emails in the account, deleted emails, and any other information relating to the account retained on the ██████ server.  There can simply be no claim for an adverse inference where Plaintiff has already received exactly what she requested – a forensic search of the account for her own defined terms.  It resulted in nothing.

---

[1] Plaintiff conveniently omits the fact that the ████████████████████████████████ ████████████████████████████████████████████████████████.

     ***c.  The*** ██████████████

The second account, █████████████████, is, as Ms. Maxwell has repeatedly explained to Plaintiff's counsel, an account that she does not recognize, that she does not recall having ever logged onto, and for which she has no password.  *See* DE 320.  Ms. Maxwell tried every avenue available online through ████████ to reset the password or otherwise access the account.  In fact, when one attempts to recover a password for that account, the system states "The email address you entered is not an ██████████████ address or ID."  According to *Plaintiff*, such a message means the account has been permanently deleted by the host company.  Plaintiff's counsel, Meredith Shultz, wrote on May 17, 2016, regarding an account of Plaintiff's (that she claims she cannot access but for which relevant and responsive emails were located on her computer):

> "Regarding her ████████ address, it appears that the account has been permanently deleted by the host Company.  One method of telling if an account still exists for live.com (**and for most web mail systems**) is to perform an account password recovery.  When you enter the e-mail address and enter the captca code and hit Next, the website states that it does not recognize the email address.  This means that the account has been permanently deleted from live.com's system."

Menninger Decl., Ex. A.

     Plaintiff does not, and cannot, explain why she thinks that her own ██████████ email address has been permanently deleted by the host company, yet based on the exact same set of data, she thinks that an email account that Ms. Maxwell does not recall ever using (and from which no documents exist on her devices) from ████████ still remains on its system.  If there is some way to access the account, Plaintiff hasn't said what it is.  Ms. Maxwell simply has no way to access this account and has no information, save Plaintiff's rank speculation.[2]

---

[2] Plaintiff has an account from which actual documents *have* been produced – proving she did use the account (unlike Ms. Maxwell's ████████ account) and it contains relevant information.  Yet Plaintiff claims she

4

Because Plaintiff claimed she cannot access her ███████ account, Ms. Maxwell subpoenaed ██████ for the documents.  Plaintiff moved to quash the subpoena to obtain the information contained in the account and has refused to sign the release provided to her that would allow the production of that information under the terms of a subpoena issued to ██████.  Menninger Decl,. Ex. B.  Tellingly, Plaintiff did not issue a subpoena to ████████ regarding this account to see if it existed, has content or could be accessed.  Instead, she seeks the drastic and improper sanction of an adverse inference knowing that it is far more beneficial to her than actually receiving information from ███████ which would reveal nothing exists.

### d.   There is no "Undisclosed" Account

Plaintiff next argues that she is entitled to an adverse inference based on the failure to search a phantom e-mail account that she presumes (without support and based on pure speculation) must have existed, which she has never asked about in discovery, claiming that such an account was improperly "undisclosed" and not searched.  Plaintiff bases her absurd argument on statistics suggesting that someone like Ms. Maxwell "likely" had an email account in the 2000 to 2002 timeframe and a specious claim that Ms. Maxwell has never *denied* having an email account from 2000 to 2002.  Motion at 2.  Notably absent from the Motion is a single interrogatory, request for admission, or deposition question in which Ms. Maxwell was asked to provide all email addresses she has used *or* asked if she ever had an email account in 2000 to 2002.  No such question was ever posed to Ms. Maxwell on this issue.[3]  How could she possibly deny the existence of an account when she was never asked the question?

---

cannot access her ████████ account because she does not remember the password and does not have sufficient personal information to provide to gain access to the account.  DE 207; DE 441.  This is not dissimilar to Ms. Maxwell who does not even remember the account let alone the password.

[3] By contrast, Ms. Maxwell requested that Plaintiff identify all email and social media accounts which she had used since 1998.  Plaintiff provided false information, and purposefully omitted accounts that have since been discovered, one of which Plaintiff still has failed to forensically search and disclose its responsive documents.

Plaintiff asks this Court to infer the existence of an undisclosed "email" account for Ms.

Maxwell in the 2000-2002 timeframe based on witness accounts that ███████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████.[4]   To the

extent there was ████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████.

     "Whether a party subject to a document request can be compelled to comply depends on

two preliminary questions: (1) assuming the requested documents exist, does the party have

possession, custody or control over them, and (2) if the party has such possession, custody or

control, can the party be compelled to conduct a reasonable search for and, if found, to produce

the documents." *Gross v. Lunduski*, 304 F.R.D. 136, 142 (W.D.N.Y. 2014).  Ms. Maxwell is not

in the possession, custody or control of the server or any information it may contain.  "Where

---

[4] It appears this is what was also being described by ████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████

6

control is contested, the party seeking production of documents bears the burden of establishing

the opposing party's control over those documents." *Alexander Interactive, Inc. v. Adorama, Inc.*,

No. 12 CIV. 6608 (PKC) (JCF), 2014 WL 61472, at *3 (S.D.N.Y. Jan. 6, 2014).  Plaintiff has

made no showing that Ms. Maxwell has any control over the hypothetical documents she

suspects may be on ████████████████████.  As has been made clear by Mr. Epstein's

refusal to produce any documents in this matter or provide any testimony, instead invoking his

Fifth Amendment privilege, there is no manner in which Ms. Maxwell could require Mr. Epstein

to provide any information on Mr. Epstein's private server.  Notably, no such "messages" were

located on any of Ms. Maxwell's devices or within her email accounts.

Simply put, there are no emails from any accounts, systems or electronic storage devices

over which Ms. Maxwell has possession, custody or control that have not been searched and

from which responsive non-privileged documents produced.

## III. SANCTIONS AGAINST MS. MAXWELL NOT WARRANTED, RATHER COSTS OUGHT TO BE AWARDED TO HER

Plaintiff completely fails to identify which, if any, of the Rules of Civil Procedure she

relies on to claim any right to request sanctions, let alone to receive an adverse inference

instruction.  The argument appears premised on a claim that Ms. Maxwell has not complied with

the Court's Order – a completely inaccurate claim:

On June 20, 2016, this Court ordered:

Defendant is ordered to collect all ESI by imaging her computers and collecting all email and text messages on any devices *in Defendant's possession or to which she has access* that Defendant used between the period of 2002 to present. Defendant is further directed to run mutually- agreed upon search terms related to Plaintiff's requests for production over the aforementioned ESI and produce responsive documents within 21 days of distribution of this opinion.

This was done.  Plaintiff then expanded her request, imposed additional search terms, and

added conditions concerning the manner in which she wanted devices searched. On August 9,

2016, the Court entered an Order adopting Plaintiff's expanded request and methodology. All accessible email accounts and devices, including deleted files and emails, were searched – again – at significant expense. Again, no additional non-privileged responsive documents were located. There is no non-compliance and no basis for any sanctions, let alone the draconian sanction of an adverse inference.

### a. Plaintiff Fails to Identify or Prove the Factors Required for Sanctions Based on Alleged Violation of a Court Order

Absent from Plaintiff's motion is the actual legal standard required for imposition of sanctions, and certainly no argument or citation exist in this case to carry the burden of establishing the factors. In light of the fact that Ms. Maxwell has complied, Plaintiff has failed to demonstrate the minimum hurdle for any sanction. Thus, the factors are not addressed here, nor can they be addressed on Reply. What is clear is that the sanction of an adverse inference is not identified as a sanction that should or could be considered under the rules concerning the failure to comply with a Court Order. *See* Fed. R. Civ. P. 37(b)(2)(A).

### b. Controlling Law Prohibits an Adverse Inference Instruction

An adverse inference instruction is considered an "extreme sanction" that "should not be given lightly." *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 220 (S.D.N.Y. 2003). More importantly Plaintiff completely ignores the 2015 changes to Fed. R. Civ. P 37(e)(2), which now permits an adverse inference instruction only when the court finds that a spoliating party purposefully and willfully destroys evidence and that party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). The new Rule 37 "rejects cases such as *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99

(2d Cir. 2002)[5], that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence." Fed. R. Civ. P. 37(e)(2) Advisory Committee's Note to 2015 Amendment; *see also Thomas v. Butkiewicus*, No. 3:13-CV-747 (JCH), 2016 WL 1718368, at *7 (D. Conn. Apr. 29, 2016) (recognizing abrogation of *Residential Funding*).   There is no claim of spoliation – no information has been lost or destroyed since the threat or initiation of litigation when there would have been a duty to preserve.   There is no bad faith.   Ms. Maxwell has completely complied with all Court Orders and there are no accessible accounts or electronic devices that have not been searched.

  i.   *The cases cited by Plaintiff are not the controlling standards, and Plaintiff fails to establish the elements required for an adverse inference*

Plaintiff relies heavily on her previously briefed motion requesting an adverse inference relying on factors in a single case, *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 108 (2nd Cir. 2002).   This case sets forth the standard for an adverse inference based on the inherent powers of the Court (not under Rule 37(b)) where the party failed to produce relevant documents prior to the commencement of trial.   *Id.* ("where, as here, an adverse inference instruction is sought on **the basis that the evidence was not produced in time for use at trial**, the party seeking the instruction must show (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had "a culpable state of mind"; and (3) that the missing evidence is "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense").   By contrast, however, courts have repeatedly noted that an adverse inference, and application of the *Residential Funding* test, are not appropriate for a mere delay in production, especially when all documents are produced prior to depositions and trial.   *See*

---

[5] This is the primary case relied on by Plaintiff in support of both of her Motions for an adverse inference.

*Psihoyos v. John Wiley & Sons, Inc.*, No. 11CV01416, 2012 WL 3601087 (S.D.N.Y. June 22, 2012) (refusing to grant adverse inference instruction where Plaintiff did not confer to obtain requested discovery, and noting "Plaintiff does not cite to a single case where an adverse inference instruction was ordered based on the late production of a document").[6]  Here, there was no delay in production – there was and is nothing additional to produce.  All documents were produced well in advance of trial, prohibiting an adverse inference.

Even if the *Residential Funding* factors were applicable, Plaintiff fails to carry her burden of proving those factors are present in this case.  Defendant does not contest that she is obligated to comply with this Court's Orders.  She has done so.  She has collected all of her electronically stored information, and run all agreed upon search terms – and then re-run the searches when Plaintiff further expanded her demands.  The result of the application of these search terms is proof that she has been compliant with her discovery obligations all along.  No new non-privileged documents were captured through utilization of the process demanded by Plaintiff.  As Ms. Maxwell previously stated in response to the Motion for forensic examination, she had run comprehensive search terms, thoroughly reviewed her records and previously produced all responsive documents in her possession.[7]

The second factor, that "the party that failed to timely produce the evidence had 'a culpable state of mind'" is likewise lacking.  There is no claim of Defendant acting with a

---

[6] *See also Phoenix Four, Inc.,* No. 05 CIV. 4837(HB), 2006 WL 1409413, at *7 (S.D.N.Y. May 23, 2006) (holding that a sanction as severe as an adverse inference was not warranted where defendants came forward with the evidence, even though it was after the close of discovery); *Williams v. Saint–Gobain Corp.,* No. 00 Civ. 502, 2002 WL 1477618, at *2 (W.D.N.Y. June 28, 2002) (holding that no basis for adverse inference instruction existed where defendant failed to produce emails until the eve of trial and there was no evidence of bad faith); *In re A & M Florida Properties II, LLC*, No. 09-15173 (AJG), 2010 WL 1418861, at *6 (Bankr. S.D.N.Y. Apr. 7, 2010) (declining to impose adverse inference instruction where documents were belatedly produced, but there was no bad faith).

[7] Plaintiff's argument that she has been or will be prejudiced is illogical given that there are no documents that have not been produced, and there never have been any responsive documents missing from production.

10

culpable state of mind, nor is any argued.  How can one have a culpable state of mind where there are no additional accounts to search or documents to be produced?

Finally, and perhaps most importantly, Plaintiff fails to provide a shred of evidence that "the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  *Residential Funding Corp.*, 306 F.3d at 108.  As discussed, completion of the multiple levels of forensic searches resulted in no responsive non-privileged documents.  The hypothetical "undisclosed" email account does not exist.  There can simply be no claim that there are any "missing" documents, let alone that they are relevant to Plaintiff's claims or defenses. *Giarrizzo v. Holder*, No. 07-CV-0801 MAD/GHL, 2012 WL 716189, at *3 (N.D.N.Y. Mar. 5, 2012) (refusing request for adverse inference where Plaintiff failed to demonstrate relevance prong stating "Plaintiff only identifies the alleged missing documents and speculates, without proof, that the documents support his claim. Indeed, plaintiff has not proven that the aforementioned documents exist"); *Sovulj v. United States*, No. 98 CV 5550FBRML, 2005 WL 2290495, at *5 (E.D.N.Y. Sept. 20, 2005) (plaintiff could not meet the requirements for obtaining an adverse inference because assertion that missing evidence was relevant was pure speculation); *see also Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 439 (S.D.N.Y. 2010) (collecting spoliation cases holding that an adverse inference is inappropriate without proof beyond mere speculation allegedly lost information was relevant). "Without proof that defendant's actions, 'created an unfair evidentiary imbalance, an adverse inference charge is not warranted.'" *Giarrizzo*, 2012 WL 716189, at *2 (*citing Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 291 (S.D.N.Y. 2009)).  Here, Plaintiff cannot demonstrate that there *is any* missing or non-produced information.  She hypothecates a non-existent email account and speculates that it must have discoverable relevant evidence.  She has

made no attempt to provide any proof or even proffer of relevance beyond mere speculation.

Thus, an adverse inference is impermissible.

ii. *Ms. Maxwell has never deleted any relevant emails*

Ms. Maxwell has never "admitted" to deleting any emails that 1) might have any

relevance to this case, or 2) after she was under a preservation obligation.[8]  Rather, she has a

regular practice of deleting spam emails, as do most people.  Specifically, she testified:

A.



---

[8] By contrast, Plaintiff admits that in 2013 while she was in the process of trying to implead herself into the CVRA case and under a preservation obligation, she and her husband

Menninger Decl., Ex. D at 64-65; 194-21.



Menninger Decl., Ex. C at 370.

This Court permitted the forensic examination of all on Ms. Maxwell's electronic devices to ensure that there were no deleted emails or files that might contain relevant information.  In that forensic examination, the entire devices and accounts were searched, including all deleted emails and files.  Again, as stated, no relevant non-privileged documents resulted from this extensive and exhaustive examination.  Plaintiff received the relief that she requested – a forensic examination – to ensure that no information had been lost or destroyed.  It has not. Plaintiff cannot now claim that the non-existent hypothetical emails she suspected existed can form the basis for the severe and improper sanction of an adverse inference.

## CONCLUSION

Plaintiff has now litigated this issue on four separate occasions, received a complete and exhaustive forensic examination, and the result is exactly what Ms. Maxwell has always contended – there is no relevant non-privileged information that was not originally produced. Having failed to find the smoking gun – because there is none – Plaintiff now weaves a convoluted argument attempting to get an adverse inference instruction because she cannot prove her case based on the actual law and facts.  Such an inference is contrary to law, the rules of evidence, and the very notion of a fair trial.  It is impermissible and must be denied.

**WHEREFORE**, Defendant Ghislaine Maxwell request that this Court 1) **DENY** Plaintiff's Motion To Compel Data From Defendant's Undisclosed Email Account and For an

13

Adverse Inference Instruction, and 2) for attorneys' fees and costs associated with responding to this Motion pursuant to 37(a)(5)(B), and such other and further relief as this Court deems just.

Dated: October 24, 2016

Respectfully submitted,

*/s/ Laura A. Menninger*

Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:   303.831.7364
Fax:       303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*

14

## CERTIFICATE OF SERVICE

I certify that on October 24, 2016, I electronically served this *Defendant's Response to Plaintiff's Motion to Compel Data from Defendant's (Non-Existent) Undisclosed Email Account and for an Adverse Inference Instruction* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

J. Stanley Pottinger
49 Twin Lakes Rd.
South Salem, NY 10590
StanPottinger@aol.com

*/s/ Nicole Simmons*
Nicole Simmons