**United States District Court**
**Southern District of New York**

Virginia L. Giuffre,

               Plaintiff,                     Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

               Defendant.

_____/

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DATA FROM DEFENDANT'S UNDISCLOSED EMAIL ACCOUNT AND FOR AN ADVERSE INFERENCE INSTRUCTION

      Plaintiff, Virginia Giuffre, by and through her undersigned counsel, hereby files this Reply in Support of her Motion to Compel Data from Defendant's Undisclosed Email Account and for Adverse Inference Instruction.

      This Court Ordered Defendant to search for and produce documents from **all** her email accounts from 1999-present, but she has produced no email prior to 2009, and still refuses to disclose the email accounts she used prior to that date. Defendant represents to the Court that there is no undisclosed email address, yet in the following sentence, she begins a three-page description of her undisclosed email account ███████████████████████. Accordingly, there is an undisclosed account, but Defendant, still, does not produce from it, nor even reveal its name. Defendant's willful and continued refusal to obey this Court's Orders regarding her electronic discovery obligations warrants an adverse inference instruction to the jury, or at a minimum, warrants allowing an independent third party to conduct a forensic review of all of Defendant's electronic data as explained further herein.

## I.    DEFENDANT'S UNDISCLOSED ACCOUNT

**A.  The Defendant had a Duty to Search from and Produce All Accounts**

In her continued refusal to disclose the email account she used from 1999-2002, Defendant offers a red herring argument, stating: "notably absent from the Motion is a single interrogatory, request for admission, or deposition question in which Ms. Maxwell was asked to provide all email addresses she has ever used." Resp. Br. at 5. Defendant did not need a specific instruction to search within and produce from ***all*** of her accounts - such a request is presumed by the use of the terms "all" or "any," in the interrogatories and the requests for production. It is also presumed by the absence of any limiting language, or restrictions to certain accounts. For example, Ms. Giuffre's first Request sought "[a]ll documents relating to communications with Jeffrey Epstein from 1999 – present."

More important, however, it was ***this Court's own Order*** that required Defendant to search for, and produce from, all accounts from 1999 through the present. *See* Schultz Dec. at Exhibit 1, August 9, 2016, DE 352 at p. 1-2, Order directing Defendant to "capture all of the sent/received emails from Defendant's multiple email accounts, including . . . ***any other email accounts Defendant has used*** in the past or currently uses." (Emphasis added).  There can be no excuse for failure to do so and no excuse for continuing to refuse to disclose all of her email accounts.

**B.  Substantial Data is Missing from the Defendant.**

Significant data is missing from the Defendant.  Tellingly, Defendant still does not deny that she had a personal email account before 2002 that she used to communicate. And, tellingly, she still does not disclose what it is. Instead, Defendant has produced a miniscule amount of emails in this case and has not produced any e-mail dated prior to July 18, 2009.  The Court should direct Defendant to disclose the e-mail account she was using and disclose whether the

account still exists.

Consider what the Defendant could have said in her response – but did not say.  Defendant could have said that she used an email account from 1999-2002 and could have provided the identity of the account. She did not say that. Though implausible, she could have said that she did not use any email account whatsoever from 1999-2002. She did not say that either. She could have disclosed the domain name of that account. She did not. She could have explained that she deleted her account; that her account had been destroyed by the provider; or that she can no longer access her account for various other reasons. She did not say any of those things. As a result, Defendant offers no accounting whatsoever for her email communications from 1999-2002.

Defendant spills a lot of ink in subsection (d), describing what she refers to as J (Resp. Br. at 5). Defendant does not forthrightly state that th███████████████████████████████████ she should have disclosed this account. Yet, even in her latest response, Defendant does not disclose what the email address is.  She fails even to disclose the "local part" or the name of the mailbox that comes before the "@" symbol, as well as the domain name, which follows. Further, she fails to

---

[1] July 18, 2009 is the earliest-dated email Defendant has produced in this litigation. (GM_00069)

disclose how she, herself, used the email account. All she says is that ███████████

█████████ (Resp. Br. at 6).[2]

Defendant, apparently, has done nothing to recover her still-undisclosed email account

████████████████████████████████████████████████████████████████████.

A blanket statement of "unavailability" is incredible – particularly without any description of the

steps she has taken to make the emails available.   Without taking any efforts to recover her

emails ████████████████, she offers a bland conclusory statement that "there is no

manner in which Ms. Maxwell could require Mr. Epstein to provide any information on Mr.

Epstein's private server." (Resp. Br. at 7).  Yet Defendant and Epstein are currently ███████

████████████████████████████████████████████████████████████████

████████████ Notably, Defendant does not produce any proof of her efforts to try to gain access

to the account ███████████ so she can comply with her discovery obligations in this case.

Whether or not it is █████████████████, it should not have taken a motion to compel to

prod Defendant into even suggesting that she used another email account from 1999-2002 to

communicate. And, importantly, her brief is *only a suggestion* of that fact. Nowhere in her brief

does Defendant actually state that she had an account ██████████████. Despite pages

of protestations that she cannot access the documents ████████████████ she never

actually discloses to the Court whether or not she had an account ██████████ in the first

place. Defendant cannot have it both ways: she cannot seek be absolved of for failure to produce

from an inaccessible account while continuing to refuse to admit that such an account even

exists.

Additionally, Defendant claims to have performed a forensic exam on her Mindspring

---

[2] Ironically, Defendant's intimation that there is an undisclosed account is directly beneath a
heading that states: "There is no 'Undisclosed' Account."

account. According to testimony, t█████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████ Accordingly, Defendant fails to meet her burden under Rule 26(b)(2)(B), Fed. R.

Civ. P., to show that the information is not reasonably accessible because of undue burden or

cost.

## II.    AN ADVERSE INFRERENCE INSTRUCTION IS WARRANTED

In this litigation as the Court will recall, Defendant first refused to produce any documents

at all - Ms. Giuffre had to litigate for Defendant to commence discovery (DE 28). Defendant then

refused Ms. Giuffre's proposed ESI protocol, and refused to negotiate an alternative. Defendant

then proceeded to make her production, which consisted of *only two documents* (DE 33 and 35).

All the while, Defendant was refusing to sit for her deposition until ultimately directed to do so

by the Court (DE 106). Even more egregious, Defendant's counsel did not collect Defendant's

electronic documents or run search terms, but allowed Defendant to pick and choose what

documents she wanted to produce, which explains the fact that Defendant's initial production

consisted of merely two documents. *See* May 12, 2016, Sealed Hearing transcript at 5-9 (Mr.

Pagliuca: "After we went through the RFPs, Ms. Maxwell went through two email accounts, the

email account at the Terramar and her personal email account Gmax. Those are the only two

email accounts that she had access or has access to." . . . Ms. Schultz: "It should be an attorney's

judgment whether or not a document is responsive, not at the discretion of the party defendant to

look through her computer with absolutely no attorney supervision or any accountability for her

search process, especially one that is done completely in secret . . . [t]he fact that defendant has

shown so much recalcitrance in even discussing the discovery process is in itself telling that this

hasn't been completed correctly.")

Ms. Giuffre had to then litigate, extensively, to force Defendant to perform a proper collection and search, and, correctly, in response to the Motion to Compel, this Court directed Maxwell to gather all of her electronic data and run designated search terms. *See* August 9, 2016, Order (DE 352) directing Defendant to gather her electronic data and run search terms. Ms. Giuffre also had to litigate for documents Defendant withheld on a wrongful claim of privilege, many of which were not privileged on their face. Ultimately this Court ███████████████ ████████████████████████████████████████████████████████████ ███████████████████.

Remarkably, Defendant complains in her brief about the inconvenience caused by the Court ordering her to search her electronic documents (Resp. Br. at 3).  But such a routine search is merely Defendant's basic obligation under Rule 26 and Rule 34.  Ms. Giuffre should not have been forced to seek a Court Order to get such obviously relevant materials from Defendant.  The Federal Rules of Civil Procedure are designed in such a way as to disallow parties to hide relevant information, including the non-disclosure of potential sources of discoverable information, like Defendant's email address on ████████████████. As noted by Magistrate Judge Francis, "The overriding theme of recent amendments to the discovery rules has been open and forthright sharing of information by all parties to a case with the aim of expediting case progress, minimizing burden and expense, and removing contentiousness as much as practicable.... If counsel fail in this responsibility—willfully or not—these principles of an open discovery process are undermined, coextensively inhibiting the courts' ability to objectively resolve their clients' disputes and the credibility of its resolution." *U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.*, 2013 WL 1728933, at *7 (S.D.N.Y.,2013) (Internal citations and quotations

omitted).

Even today, Defendant claims that after running over 200 key search terms, some of which include the names of her admitted close friends and boyfriend, she has not located a single responsive document.  The only conclusion that can reasonably be drawn is that she has deleted relevant documents – not simply her "spam" documents, as she would have the Court believe.  It is implausible that she would not have any responsive documents after running these search terms. Courts allow a forensic review of the electronic data including e-mail accounts to determine whether a deletion program has been run and to show the number of hits yielded by the search terms, and to provide a sampling to the Court to evaluate whether there indeed are responsive documents within the search term hits. Of course, by refusing to disclose even the name of her account ███████████, let alone attempt to collect it, any such exercise would be futile.[3]

Defendant has set a course of failure to meet her discovery obligations, and with this Response Brief,[4] she continues that tack: she fails to even identify what email addresses she used

---

[3] Defendant should be required to provide access to her accounts and her electronic data to an independent third party forensic reviewer to perform these searches to determine, among other things, the date range of the accounts, whether deletion programs have been utilized on the accounts, and whether there are search term hits in the e-mail accounts and electronic data.  Ms. Giuffre, at the Court's direction, can submit a forensic review protocol for the Court's consideration.

[4] *See, e.g.*: Plaintiff's Response in Opposition to Defendant's Motion to Stay Discovery (DE 20); Defendant's Motion to Stay - Denied (DE 28); Plaintiff's February 26, 2016 Letter Motion to Compel Defendant to Sit for Her Deposition (DE 63) - Granted (DE 106); Plaintiff's Motion to Compel Documents Subject to Improper Claim of Privilege (DE 33), Granted in Part (DE 73); Plaintiff's Motion to Compel Documents Subject to Improper Objections (DE 35), Granted in part (106); Plaintiff's Response in Opposition to Defendant's Motion for a Protective Order Regarding Defendant's Deposition (DE 70) - Defendant's Motion Denied (DE 106); Plaintiff's Motion for Forensic Examination (DE 96) - Granted in part (June 20, 2016 Sealed Order); Plaintiff's Motion to Compel Defendant to Answer Deposition Questions (DE 143), Granted (June 20, 2016 Sealed Order); Plaintiff's Motion for Adverse Inference Instruction (DE 279), Pending; Plaintiff's Motion to Enforce the Court's Order and Direct Defendant to Answer

starting in 1999, in contravention of this Court's Order (DE 352). This behavior, combined with all of the previous refusals to search for and produce documents (which, after litigation, resulted in this Court's Order to Defendant to search for and produce documents), is sufficient grounds for this Court to give an adverse inference instruction under prevailing case law, as detailed in the moving brief. At some point, Defendant should be held accountable for her gamesmanship. Ms. Giuffre respectfully submits that time is now.[5] The Court should deliver to the jury an adverse inference instruction.[6]

### III.   MS. GIUFFRE MADE EFFORTS TO CONFER THAT WERE DISREGARDED BY DEFENDANT

Rather than explain why she has failed to produce all relevant emails, Defendant spends much of her opposition suggesting to the Court – quite incorrectly – that Ms. Giuffre did not try to confer with Defendant on this discovery issue. But the only failure to confer here is on the part of Defendant. As explained in the moving brief, Ms. Giuffre sent a letter to Defendant conferring on this very issue. Defendant wholly failed to respond to this letter. Sadly, this is not an isolated occurrence. Defendant has simply failed to respond to a number of conferral letters Ms. Giuffre's counsel have sent. Indeed, as the Court is aware from previous filings (DE 290, July 18, 2016, Letter Response in opposition to Motion to Strike), Defendant has made a habit of ignoring

---

Deposition Questions (DE 315), and Pending; Plaintiff's Motion to Reopen Defendant's Deposition (DE 466), Pending.

[5] Defendant also has the temerity to seek attorneys' fees and costs from Ms. Giuffre. Of course, for the reasons articulated here, that request is frivolous.

[6] Ms. Giuffre proposes the following instruction: Defendant had a duty to collect and produce relevant data from her email accounts from 1999 to the present. Defendant failed to collect and produce relevant emails from some of those accounts. You may consider that this evidence would have been unfavorable to Defendant on the issue of her defense that her alleged defamatory statements were true.

counsel's repeated, written requests to meet and confer on various issues.[7] The undersigned's September 23, 2016, letter was simply another conferral letter that Defendant chose to ignore.

Defendant's implicitly concedes this pattern of ignoring conferral letters in her response. To support her claim that Ms. Giuffre had somehow failed to confer, Defendant writes that "[h]ad [Ms. Giuffre] bothered to *follow up* on this *alleged* communication, Ms. Maxwell would have reaffirmed that there is no 'undisclosed' email account." Defendant's Resp. Br. at 2 (emphasis added). Defendant has it exactly backwards. It is Defendant's responsibility to be "bothered" to answer Ms. Giuffre's initial conferral letter. Ms. Giuffre should not be expected to "follow up" with subsequent letters on the same subject, waiting for Defendant to deign to respond. Simply put, Ms. Giuffre did attempt to confer on this issue, and Defendant refused. Three weeks went by while Defendant sat on Ms. Giuffre's letter, refusing to engage on this subject.

Rather than explain why she failed to respond to (yet another) of Ms. Giuffre's conferral letters, Defendant slyly suggests that Ms. Giuffre never sent the letter. Defendant describes the letter as an "alleged" communication, and further tells the Court that the "alleged" letter "was not included in the exhibits to the Motion." (Resp. Br. at 1.) Yet there is no doubt that the communication was sent to, and received by, Defendant. ████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

---

[7] The following examples are some conferral letters sent by Ms. Schultz, counsel for Ms. Giuffre, that Defendant's counsel have chosen to ignore, including: a May 20, 2016, letter regarding confidentiality designations (*See* DE 201); a June 8, 2016, letter regarding deficiencies in Defendant's production; a June 13, 2016, letter regarding the same; a June 30, 2016, letter regarding search terms; and a July 14, 2016, letter regarding the same.

████████████████████████████████   Sadly, Defendant's innuendo is not confined to her most recent response, as throughout this litigation, Defendant has repeatedly made deliberately misleading statements to the Court[8] and some explicitly false claims.[9]  For present purposes, the key point is that Ms. Giuffre fully fulfilled her conferral obligation.

**IV.   CONCLUSION**

For the foregoing reasons, the Court should direct Defendant to disclose both the local part and the domain name of **<u>all</u>** her email accounts, including those from 1999-2009, and allow a neutral third-party expert to recover responsive data from those accounts (based upon the search terms this Court previously ordered) and allow a forensic review of all of Defendant's electronic data to ensure compliance with this Court's Order.  In addition, in view of the pattern of obstructive behavior, the Court should give to the jury an adverse inference instruction.

October 28, 2016

---

[8] ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By:  /s/ Sigrid McCawley
    Sigrid McCawley (Pro Hac Vice)
    Meredith Schultz (Pro Hac Vice)
    Boies Schiller & Flexner LLP
    401 E. Las Olas Blvd., Suite 1200
    Ft. Lauderdale, FL 33301
    (954) 356-0011
    David Boies
    Boies Schiller & Flexner LLP
    333 Main Street
    Armonk, NY 10504

    Bradley J. Edwards (Pro Hac Vice)
    FARMER, JAFFE, WEISSING,
    EDWARDS, FISTOS & LEHRMAN, P.L.
    425 North Andrews Avenue, Suite 2
    Fort Lauderdale, Florida 33301
    (954) 524-2820

    Paul G. Cassell (Pro Hac Vice)
    S.J. Quinney College of Law
    University of Utah
    383 University St.
    Salt Lake City, UT 84112
    (801) 585-5202[10]

---

[10] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 28, 2016, I electronically filed the foregoing

document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing

document is being served to all parties of record via transmission of the Electronic Court Filing

System generated by CM/ECF.

Laura A. Menninger, Esq.
Jeffrey Pagliuca, Esq.
HADDON, MORGAN & FOREMAN, P.C.
150 East 10th Avenue
Denver, Colorado 80203
Tel: (303) 831-7364
Fax: (303) 832-2628
Email: lmenninger@hmflaw.com
        jpagliuca@hmflaw.com


/s/ Meredith Schultz
Meredith Schultz