# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

VIRGINIA L. GIUFFRE,

    Plaintiff,

v.

GHISLAINE MAXWELL,

    Defendant.

-------------------------------------------------X

JUDGE SWEET CHAMBERS

**15-cv-07433-RWS**

## DEFENDANT'S MOTION FOR SANCTIONS BASED ON
## PLAINTIFF'S INTENTIONAL DESTRUCTION OF EVIDENCE

*Spoliation has not been established at the time of the Plaintiff's acts and the motion is denied.*

*So ordered.*

*Sweet*
*USDJ*
*1-19-17*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/19/17

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
303.831.7364

Defendant Ghislaine Maxwell ("Ms. Maxwell") hereby submits this Motion for Sanctions Based on Plaintiff's Intentional Destruction of Evidence and further states as follows:

## INTRODUCTION

In 2013, after Plaintiff was in the process of attempting to join the Crime Victims' Rights Act litigation ("CVRA Litigation") represented by her current counsel, Plaintiff willfully and deliberately burned her long-kept journal in a bonfire in her backyard. According to Plaintiff, the journal contained her thoughts, memories and information concerning the time she claims she was a "sex slave." While incinerating this key piece of evidence, Plaintiff made a deliberate decision to preserve photographs from the same time period because, she claims, those pictures were "evidence" – evidence she believed would be favorable to the story she had decided to tell. One can only assume then that the journal contained the opposite: evidence unfavorable to Plaintiff and inconsistent with the story she ultimately submitted to the Court in the CVRA case. Presumably, the journal documented that the newest iteration of her story contained in the CVRA litigation differed materially from her prior "memories," which were written when she was not planning litigation and not motivated to exaggerate and fabricate details about her memories and events. Rather than having her new story impeached by her own words, she destroyed the unfavorable evidence. Such willful and intentional destruction of evidence warrants an adverse inference jury instruction, if not outright dismissal of Plaintiff's claims.

## BACKGROUND FACTS

As the Court is well aware, Plaintiff first decided to publicize her story concerning Jeffery Epstein in 2011. In February 2011, she participated for a substantial sum of money in a week-long series of interviews with reporter Sharon Churcher in advance of a series of sensationalist articles published in February and March 2011 in the *Daily Mail*. Those articles contain a series of stories that vary substantially from the accounts published by Plaintiff in late

1

2014 as a part of her CVRA joinder motion. The *Daily Mail* articles state, for example, that (a) Ms. Maxwell was not present during Mr. Epstein's first meeting with Plaintiff, nor did she participate in any alleged sexual encounters; (b) there is "no suggestion" that Plaintiff had any sexual interaction with Prince Andrew at any time; and (c) there was no mention of Plaintiff ever meeting, let alone having sexual encounters with, Professor Alan Dershowitz.

After the publication of those articles, Sharon Churcher introduced Plaintiff to attorney Brad Edwards. Edwards was then (and now) actively litigating his own personal civil case against Mr. Epstein as well as pursuing the CVRA action in an attempt to void the non-prosecution agreement between Mr. Epstein and the Government. According to Plaintiff's discovery responses:

> Brad Edwards (along with other Farmer, Jaffe attorneys) represents Ms. Giuffre as a non-party in the litigation styled as Jane Doe #1 and Jane Doe #2 v. United States, Case No. 08-80736-CIV-Marra, Southern District of Florida, starting in 2011. ["the CVRA Litigation"]

> Brad Edwards provided Ms. Giuffre with legal advice concerning media inquiries Ms. Giuffre had received starting in 2011.

> Paul Cassell provided Ms. Giuffre with legal advice concerning potential legal action starting in early 2011.

Menninger Decl., Ex. A, at p. 9-10. Thus, as early as 2011, Plaintiff was represented as a non-party, attempting to become a party, to the CVRA Action. As the Court is well aware, it was Plaintiff's Joinder Motion in the CVRA action (filed by Edwards and Paul Cassell), that immediately preceded the purportedly defamatory denial by Ghislaine Maxwell three days later that forms the statement at issue in this case.

In 2013, Plaintiff relocated her family to Florida for the purpose of progressing forward with joining the CRVA litigation.[1] In the process of that move, she purposely destroyed

---

[1] A. When I moved from Australia I had a bunch of paperwork I just kind of threw out. I didn't bring

2

documents, including copies of her contract with Sharon Churcher and the Daily Mail showing

the payments she received for marketing her story. Menninger Decl., Ex. B, 129:15-130:6.

More disturbingly, after relocating to Florida and pursuing joinder in the CVRA action, Plaintiff

and her husband willfully and intentionally destroyed hundreds of documents, including a

journal containing between 85 and 300 pages of notes of Plaintiff's thoughts, feelings and

memories about her past, in a backyard bonfire. In her deposition in the Dershowitz litigation,

Plaintiff described her purposeful destruction of this evidence as follows:

Q. The booklet that you gave pages from to Ms. Churcher where is that booklet?

A. Burned.

Q. When did you burn it?

A. In, I think it was 2013. Me and my husband had a bonfire.

Q. What did you put in the bonfire?

A. Any kind of memories that I had written down about all the stuff going on.

Q. Had you written anything about Professor Dershowitz?

A. He could have been there, yes.

Q. And you burned that?

A. I wanted to burn my memories. I wanted to get rid of it. It was very painful stuff.

Q. Other than what you had written down did you burn anything else? I don't mean the wood, when you talk about burning your memories, what were you burning?

A. I was burning like memories, thoughts, dreams that I had, just everything that was kind of affiliated with the abuse I endured, and there was a lot of it in there. My husband is pretty spiritual so he said the best thing to do would be burn them.

Q. Is there anything you decided to keep and not burn?

---

everything with me.
Q. Why did you choose to move back to the United States at that time?
A. I mean, there's a couple good reasons why I moved back. You know, first and foremost I haven't seen my family in a long time; and secondly, I wanted to see something happen with the -- I was trying to join the CVRA case so I was hoping by moving back I would see that progress. Menninger Decl., Ex. B, 130:4-14.

A. Just the photographs.

Q. Anything else that you can think of?

A. Photographs, that's it.

Q. Approximately when in 2013 was this bonfire?

A. I don't know what month it was.

Q. Did you do it outside?

A. Yeah, it was outside. I wasn't going to do it in my living room.

Q. Did it feel good to be close to the fire because it was cold out or was it a summertime bonfire?

A. I believe I had just bought my house in Titusville, Florida. I bought my house in, I think, I either got it October or November of 2013. It would have been around probably November.

Q. Why did you decide to keep the photos?

A. They're evidence.

. . .

Q. Did you ever look to see if you had any personal notes in your writing that pertain to Professor Dershowitz?

A. Like from my old journal, the one that I burned?

Q. From anywhere. Did you ever make an effort to look?

A. Dershowitz could have been in my journal, he could have been. We're talking about an 85 page, if not more, you know, things that I had written to get my story out of my head and into pages; and yes, Dershowitz could have been in there, but that's up in the clouds now, bonfire.

Q. That's what you call your journals, what you burned, right?

A. Yes.

Q. And you wrote that journal in order to collect your thoughts?

A. To get everything out of here and on to paper.

Menninger Decl., Ex. B 64:6-65:23; 194:2-21.

4

In her first deposition in this action, Plaintiff described her purposeful destruction of this evidence as follows:

Q. Do you have any notes of all these people that you were sent to?

A. No, I don't.

Q. Where are your notes?

A. I burned them.

Q. When did you burn them?

A. In a bonfire when I lived at Titusville because I was sick of going through this shit.

Q. Did you have lawyers who were representing you at the time you built a bonfire and burned these notes?

A. I've been represented for a long time, but it was not under the instruction of my lawyers to do this. My husband and I were pretty spiritual people and we believed that these memories were worth burning.

Q. So you burned notes of the men with whom you had sex while you were represented by counsel in litigation, correct?

MR. EDWARDS: Object to the form.

A. This wasn't anything that was a public document. This was my own private journal, and I didn't want it anymore. So we burned it.

Q. (BY MS. MENNINGER) When did you write that journal?

A. Just over time. I started writing it probably in, I don't know, I can't speculate, 2012, 2011.

Q. So you did not write this journal at the time it happened?

A. No.

Q. You started writing this journal approximately a decade after you claim you finished being sexually trafficked, correct?

A. Yes.

Q. And you started writing a journal after you had a lawyer, correct?

A. Correct.

5

Q. Including Mr. Edwards, who is sitting right here, correct?

A. Correct.

Q. What did that journal look like?

A. It was green.

Q. And what else?

A. It was just a spiral notebook.

Q. Okay. And what did you put into that green spiral notebook?

A. Bad memories. Things that I've gone through, lots of things, you know. I can't tell you. There was a lot of pages. It was over 300 pages in that book.

Q. Did you ever show that book to your lawyers?

A. No.

Q. Did you show that book to anyone?

A. My husband.

Q. Did you show it to anyone else besides your husband?

A. No.

Q. Did you tear out pages and give them to Sharon Churcher?

A. No, I wrote -- those pages that you're talking about, I wrote for her specifically. She wanted to know about the Prince Andrew incident.

Q. So that's a different piece of paper?

A. Yeah, that's just random paper.

Q. So you had a green spiral notebook that you began sometime in 2011 or 2012 in which you wrote down your recollections about what had happened to you, and you burned that in a bonfire in 2013. Did I get that right?

A. You got that right.

Menninger Decl. Ex. C at 205:13-208:9.

6

Additionally, in the Dershowitz litigation, Plaintiff also described a second notebook, a "dream book" that she claimed to still have in her possession as of January 16, 2016, four months after the present litigation was filed. This "dream book" has not been produced in this litigation despite request[2], and Plaintiff has now claimed that she does not have any diaries or journals other than what she had destroyed. Specifically, Plaintiff testified:

Q. Have you made any other notes, though, since then to help you when you think of things?

A. Yes, sometimes like I said, sometimes when I read my affidavits and stuff like that, you know, and I think of something else like a description of something that I forget about, you know what I mean, then yeah, I'll go back and I'll write it in the journal, you know, for instance, you know, what another girl would have looked like. Even though I can't identify her name or her age or anything like that, but I do remember like flashes of blonde, little things like that, but nothing -- I don't have any more journals.

Q. But those notes, they help your memory?

A. Sometimes. I'm a very visual person.

Q. And they help you with your affidavits?

A. No, they don't help me with my affidavits, my affidavits are already done, I just go back and it helps my memory. It helps me bring stuff out.

Q. What do you do with those notes?

A. Nothing, literally nothing. They're in a notebook that if I need to write it down. I have a dream notebook as well where I'll just write down my dreams and stuff. I do nothing, no one is seeing it.

Q. You read it? You keep it?

A. Yeah, I keep it.

Q. Okay. Have you gone back and read that recently?

A. No.

Q. Okay. You continue to make entries into it?

---

[2] Menninger Decl. Ex. D, Plaintiff's Second Amended Supplemental Response And Objections To Defendant's First Set Of Discovery Requests To Plaintiff, RFPs 16, 28 and 34.

7

A. Not so much about Dershowitz. It's mostly like feelings, dreams, you know, past things that I've gone through. Like I said, not so much pertaining to Dershowitz himself.

Q. And that's separate from your dream book?

A. No, it's all in one.

Q. Is it a spiral bound notebook?

A. Yes, it's just a cheap, like, actually it's in my kid's closet.

Menninger Decl. Ex. B at 194:22-196:10.

With respect to the dream book, either Plaintiff has also destroyed this evidence after the initiation of the litigation, or is willfully and improperly withholding it from production in the matter.

## LEGAL STANDARD

Each litigant has an obligation to take reasonable measures to preserve all potentially relevant documents. That obligation arises even pre-suit, if "the party 'should have known that the evidence may be relevant to future litigation.'" *MASTR Adjustable Rate Mortgages Trust 2006-0A2 v. UBS Real Estate Secs., Inc.,* 295 F.R.D. 77, 82 (S.D.N.Y.2013) (quoting *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir.1998)); *accord University of Montreal Pension Plan v. Bank of America Secs., LLC,* 685 F.Supp.2d 456, 465–66 (S.D.N.Y.2010) *abrogated on other grounds, Chin v. Port Auth. of N.Y. & New Jersey,* 685 F.3d 135, 162 (2d Cir. 2012).

"Spoliation is 'the destruction of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *MASTR Adjustable Rate Mortgages Trust,* 295 F.R.D. at 82 (quoting *Byrnie v. Town of Cromwell Board of Educ.,* 243 F.3d 93, 107 (2d Cir.2001)). A party seeking sanctions based on the destruction of evidence must demonstrate:

(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable

8

state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Residential Funding Corp. v. Degeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir.2002)[3] (quotations omitted). The Second Circuit has held that the requisite "culpable state of mind" may encompass simple negligence as gross negligence and most certainly covers deliberate misconduct. The degree of culpability affects the choice of remedies. *See Sekisui American Corp. v. Hart,* 945 F.Supp.2d 494, 503–04 (S.D.N.Y. 2013); *MASTR Adjustable Rate Mortgages Trust,* 295 F.R.D. at 84; *Orbit One Communications, Inc. v. Numerex Corp.,* 271 F. R.D.2d 429, 438 (S.D.N.Y. 2010).

The moving party has the burden to demonstrate both that the destroyed materials meet the relevance standard of Rule 26(b)(1), and that such evidence would have been favorable to the discovering party. *See MASTR Adjustable Rate Mortgages Trust,* 295 F.R.D. at 85–86 (citing cases). The burden is "not onerous," *id.* at 86, since it is difficult to prove what is contained in documents that have been destroyed. To require a detailed showing in such circumstances poses the danger that "the spoliator [may] profit from its" own misconduct. *Id.* (quoting *Orbit One,* 271 F.R.D. at 440). If the destruction of evidence was done in bad faith (*i.e.,* willfully or intentionally), that alone justifies a finding that the material that was lost was relevant to claims or defenses in the case. *Residential Funding,* 306 F.3d at 109.

If the moving party meets the burden to demonstrate destruction of relevant evidence, the court has broad discretion in choosing appropriate sanctions to remedy the injury to the

---

[3] *Residential Funding* has been superseded by statute with respect Electronically Stored Information ("ESI") in the 2015 amendments to 37(e) of the Federal Rules of Civil Procedure, which now require willful or purposeful destruction of ESI, as opposed to negligence or gross negligence, to impose terminating sanctions or adverse inference instructions. Because this matter concerns the destruction of a physical journal, not ESI that might be recoverable or available through other sources, Rule 37(e) is instructive but not controlling. Regardless, because the destruction at issue was willful and intentional (not merely negligent or grossly negligent), *Residential Funding* and its progeny remain good law respecting the willful destruction of evidence.

9

discovering party. *See, Fujitsu Ltd. v. Federal Express Corp.,* 247 F.3d 423, 436 (2d Cir.2001);

*Zebulake v. UBS Warburg LLC,* 229 F.R.D. 422, 430 (S.D.N.Y.2004). The goal of the remedy is

to "(1) deter the parties from engaging in spoliation; (2) place the risk of an erroneous judgment

on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same

position [she] would have been in absent the wrongful destruction of evidence by the opposing

party.'" *University of Montreal Pension Plan,* 685 F.Supp.2d at 469 (quoting *West v. Goodyear

Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999)); *accord Chen,* 685 F.3d at 162 (quoting

*Byrnie,* 243 F.3d at 107).

     The court should determine the remedy "based on the relative fault of the party against

whom sanctions are sought and the prejudice suffered by the party seeking sanctions." *Treppel,*

249 F.R.D. at 123–24 (quoting *Klezmer v. Buynak,* 227 F.R.D. 43, 51 (E.D.N.Y.2005)). The

available remedies, from "least harsh to most harsh," start with ordering more discovery, and

range to cost-shifting, to adverse-inference instructions, to preclusion and, finally, to entry of a

default or dismissal ("terminating remedies"). *University of Montreal Pension Plan,* 685

F.Supp.2d at 469 (citing cases). Terminating remedies are justified "in only the most egregious

cases" for example, when "a party has engaged in perjury, tampering with evidence, *or

intentionally destroyed evidence by burning*, shredding, or wiping out computer hard drives."

*Id.* at 469–70 & n.48.

## ARGUMENT

## I.    PLAINTIFF ADMITTED EACH ELEMENT OF INTENTIONAL SPOLIATION

     Plaintiff admitted at her depositions to each factor required for a finding of spoliation.

First, Plaintiff, the party having control over the evidence, had an obligation to preserve the

journal at the time it was destroyed. As Plaintiff has confessed, she was represented by Bradley

10

Edwards and Paul Cassell in 2013 at the time she burned the journal. One purpose of that representation was to participate in the then-pending CVRA Litigation, which was filed by Edwards and Cassell to void the non-prosecution agreement between Mr. Epstein and the Government. As Plaintiff admits, the journal at issue included all of her memories, thoughts and feelings about the time she was associated with Epstein, the very basis for her attempt to join the CVRA action. Knowing that the litigation was pending, and moving to Florida with a primary motivation to join that litigation, a duty to preserve was indisputable.

The purposeful lighting of a fire and permanent destruction of a handwritten, un-replicated journal satisfies the definition of destruction with a culpable state of mind. "Where a party seeks to demonstrate intent, that intent need not be directed at spoliation of evidence to the other party's detriment. Rather, any intentional destruction suffices." *Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 47 (S.D.N.Y. 2014); *Byrnie,* 243 F.3d at 107–09 (noting that "intentional destruction of documents in the face of a duty to retain those documents is adequate" to show a "culpable state of mind"); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 388 (S.D.N.Y. 2015).

The relevance of the documents to the pending litigation need not be proven in this case, but nevertheless has been admitted by Plaintiff. "When evidence is destroyed in bad faith (*i.e.,* intentionally or willfully), that fact alone is sufficient to demonstrate relevance." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003); *Byrnie*, 243 F.3d at 109; *compare* Fed R. Civ. P. 37(e)(2) (permitting adverse inference or dismissal of claims for intentional for destruction of ESI, noting that "Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information. This is because the finding of intent required by the subdivision can support not only an inference that the lost information was

11

unfavorable to the party that intentionally destroyed it, but also an inference that the opposing

party was prejudiced by the loss of information that would have favored its position. Subdivision

(e)(2) does not require any further finding of prejudice.). The act of lighting a bonfire and

torching evidence is the definition of intentional and willful destruction with the intent to deprive

its use in known pending litigation.

Plaintiff's testimony only solidifies that the presumption of relevance is proper. The

alleged defamatory statement that is central to this case is important in this context. The alleged

defamatory press release states:

> Each time the story is re told it changes with new salacious details about public
> figures and world leaders and now it is alleged by Ms Roberts that Alan
> Derschowitz [sic] is involved in having sexual relations with her, which he denies.
>
> Ms Roberts claims are obvious lies and should be treated as such and not publicised as
> news, as they are defamatory.

By Plaintiff's own admission, the journal containing her memories kept between 2011

and 2013 that she burned may or may not have mentioned Mr. Dershowitz. If it did not, it is

specific evidence that the claim of sexual interactions with Ms. Dershowitz was fabricated at a

later date – in other words, an obvious lie. Likewise, any different or contrary "memories"

concerning interacting with Prince Andrew, or any other of the public figures Plaintiff now

claims to have had sexual interactions with, go to the defense of truth – that Plaintiff's story

changes each time it is told. Indeed, based on information and allegations from the Dershowitz

litigation, there is reason to suspect that Plaintiff acted in concert with or was encouraged by her

attorneys to embellish her story, including the inclusion of Mr. Dershowitz in her story. If this

occurred, there is reason to suspect that Plaintiff's "thoughts and feelings" regarding these

pressures were also included in her journal.

12

There is no way to recreate this journal or to reveal what Plaintiff was thinking or her memories as contained in a journal she kept for herself, not to be made public. It clearly contained relevant information – information that would support a claim or defense in this matter. Of course, we will never know because, in Plaintiff's own words, "that's up in the clouds now." It was purposefully and willfully destroyed.

## II.   SEVERE SANCTIONS ARE APPROPRIATE

When deciding appropriate sanctions for this purposeful destruction, one must bear in mind the three goals of sanctions for spoliation: (1) deterring the parties from engaging in spoliation; (2) placing the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restoring the prejudiced party to the same position she would have been in absent the wrongful destruction of evidence by the opposing party. As is apparent by the recent amendments to Fed. R. Civ. P. 37(e)(2)(B)&(C), where there has been intentional destruction of evidence, the proper sanctions for consideration in a jury context are instructing the jury that it may or must presume the information was unfavorable to the party or b) dismissing the action or entering a default judgment.

### A.   Terminating Sanctions are Appropriate

"A terminating sanction is justified in only the most egregious cases, such as where a party has engaged in perjury, tampering with evidence, or intentionally destroying evidence by burning, shredding, or wiping out computer hard drives." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 469–70 (S.D.N.Y. 2010), *abrogated on other grounds by Chin v. Port Auth. of N.Y. & New Jersey*, 685 F.3d 135 (2d Cir. 2012).

In 2013, knowing that her goal was to join the CVRA action by telling a story of allegedly being forced to be a "sex slave" at the age of 15, trafficked to "numerous prominent American politicians, powerful business executives, foreign presidents, a well-known Prime

13

Minister, and other world leaders," she destroyed her private journal that would contradict and impeach the story she was about to tell. This type of intentional destruction of key evidence is precisely the type of conduct that warrants the terminating sanction of dismissal of Plaintiff's claims. *McMunn v. Memorial Sloan–Kettering Cancer Ctr.,* 191 F.Supp.2d 440, 446–62 (S.D.N.Y.2002) (dismissing plaintiff's claims for intentionally and in bad faith lying during depositions, destroying potentially critical evidence which could have harmed her case, repeatedly lying and misleading defendant to prevent the deposition of key witnesses, editing certain tapes before turning them over to defendant so that they would provide stronger evidence in plaintiff's favor, and engaging in a sham transaction to unfairly bolster her claim); *Miller v. Time–Warner Commc'ns,* No. 97 Civ. 7286, 1999 WL 739528, at \*2–\*4 (S.D.N.Y. Sept. 22, 1999) (granting dismissal where plaintiff deliberately erased a harmful handwritten notation and committed perjury in pre-trial proceedings); *Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13 CIV. 2493 KBF, 2014 WL 3844796, at \*16 (S.D.N.Y. Aug. 5, 2014) (ordering dismissal of suit and consideration of attorneys' fees and cost of entire suit for intentional spoliation finding any lesser sanction "would fail to account for the prejudice or to sufficiently penalize [Plaintiff] or deter others from engaging in such misconduct"); *Gutman v. Klein*, No. 03CV1570(BMC)(RML), 2008 WL 4682208, at \*12 (E.D.N.Y. Oct. 15, 2008), *report and recommendation adopted,* No. 03 CIV. 1570 (BMC), 2008 WL 5084182 (E.D.N.Y. Dec. 2, 2008), aff'd, 515 F. App'x 8 (2d Cir. 2013) (granting default judgment for permanent deletion of files and noting "lesser sanctions such as adverse inferences are ill-suited to a case like this, where the spoliator has, in bad faith, irretrievably deleted computer files that likely contained important discovery information").

14

**B.      Ms. Maxwell is entitled to an Adverse Inference Instruction**

At a minimum, the purposeful destruction of the journal containing key impeachment evidence, coupled with the destruction or withholding of the "dream book," require the imposition of an adverse inference instruction. An adverse inference instruction can take many forms, again ranging in degrees of harshness. "The harshness of the instruction should be determined based on the nature of the spoliating party's conduct—the more egregious the conduct, the more harsh the instruction." *Pension Comm. of Univ. of Montreal Pension Plan*, 685 F. Supp. 2d at 70.

"When a spoliating party has acted willfully or in bad faith, a jury can be instructed that certain facts are deemed admitted and must be accepted as true. At the next level, when a spoliating party has acted willfully or recklessly, a court may impose a mandatory presumption." *Id.* (collecting cases). Here, there is no question that Plaintiff's conduct was willful – burning or shredding documents is the definition of willful conduct. In light of the admitted relevance of the information contained in (or not contained in) the journal, the only way to place the risk of an erroneous judgment on the Plaintiff who wrongfully created the risk by burning key evidence, and restoring Ms. Maxwell to the same position she would have been in absent the wrongful destruction of evidence is through mandatory adverse inference instructions. If the case is not dismissed, the jury should be instructed that Plaintiff purposely destroyed her journal, and that the jury should presume that the information contained in that journal would have supported Ms. Maxwell's contentions and be detrimental to Plaintiff's claims.

**WHEREFORE**, Defendant Ghislaine Maxwell request that this Court 1) dismiss Plaintiff's claim based on her intentional destruction of evidence, or, in the alternative, 2) tender to the jury an adverse inference instruction that it should presume the information contained in

15

the destroyed documents would have supported Ms. Maxwell's contentions and been detrimental

to Plaintiff's claims.

Dated: December 9, 2016

Respectfully submitted,

*/s/ Laura A. Menninger*
Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice)*
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303.831.7364
Fax: 303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*

16

**CERTIFICATE OF SERVICE**

I certify that on December 9, 2016, I electronically served this *DEFENDANT'S MOTION FOR SANCTIONS BASED ON INTENTIONAL DESTRUCTION OF EVIDENCE* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

J. Stanley Pottinger
49 Twin Lakes Rd.
South Salem, NY 10590
StanPottinger@aol.com

*/s/ Nicole Simmons*
Nicole Simmons

17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------X

VIRGINIA L. GIUFFRE,

    Plaintiff,

v.

GHISLAINE MAXWELL,

    Defendant.

-------------------------------------------------X

              **15-cv-07433-RWS**

**Declaration of Laura A. Menninger in Support of Defendant's Motion**
**For Sanctions Based On Plaintiff's Intentional Destruction Of Evidence**

I, Laura A. Menninger, declare as follows:

1.  I am an attorney at law duly licensed in the State of New York and admitted to practice in the United States District Court for the Southern District of New York. I am a member of the law firm Haddon, Morgan & Foreman, P.C., counsel of record for Defendant Ghislaine Maxwell in this action. I respectfully submit this Declaration in Support of Defendant's Motion for Sanctions Based on Plaintiff's Intentional Destruction of Evidence.

2.  Attached as Exhibit A (filed under seal) is a true and correct copy of Plaintiff's Second Amended Supplemental Response and Objections to Defendant's First Set of Discovery Requests to Plaintiff, Interrogatory Response 3, dated April 29, 2016.

3.  Attached as Exhibit B (filed under seal) are true and correct copies of excerpts from the January 16, 2016 deposition of Virginia Roberts Giuffre in the *Edwards et. al v. Dershowitz*, designated Confidential under the Protective Order.

4.   Attached as Exhibit C (filed under seal) are true and correct copies of excerpts from

the May 3, 2016 deposition of Virginia Giuffre, designated Confidential under the Protective

Order.

5.   Attached as Exhibit D (filed under seal) is a true and correct copy of Plaintiff's

Second Amended Supplemental Response and Objections to Defendant's First Set of Discovery

Request to Plaintiff, dated April 29, 2016.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  December 9, 2016.

                                        *s/ Laura A. Menninger*
                                        Laura A. Menninger

## CERTIFICATE OF SERVICE

I certify that on December 9, 2016, I electronically served this *Declaration of Laura A. Menninger in Support of Defendant's Motion For Sanctions Based on Plaintiff's Intentional Destruction of Evidence* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu


J. Stanley Pottinger
49 Twin Lakes Rd.
South Salem, NY 10590
StanPottinger@aol.com


*/s/ Nicole Simmons*
Nicole Simmons

3