H1j6giua

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

VIRGINIA L. GIUFFRE,

           Plaintiff,

      v.                                15 CV 7433(RWS)

GHISLAINE MAXWELL,

           Defendant.

------------------------------x
                                        New York, N.Y.
                                        January 19, 2017
                                        12:00 noon

Before:

                HON. ROBERT W. SWEET,

                                        District Judge

                     APPEARANCES

BOIES, SCHILLER & FLEXNER, LLP
     Attorneys for Plaintiff
BY:  SIGRID S. McCAWLEY

HADDON MORGAN and FOREMAN
     Attorneys for Defendant
BY:  JEFFREY S. PAGLIUCA
```

1           (In open court; case called)

2           THE COURT:  Please be seated.

3           I will hear from the movant.

4           MR. PAGLIUCA:  Good afternoon, your Honor.  Jeff

5   Pagliuca appearing on behalf of Ms. Maxwell, the defendant in

6   this action.

7           THE COURT:  Please to hear you.

8           MR. PAGLIUCA:  Thank you, your Honor.

9           Your Honor, I will be brief.  There is an extensive

10  amount of writing on this.  I want to just touch on a couple of

11  things.

12          MS. McCAWLEY:  Your Honor, I don't mean to interrupt,

13  but before we start there is confidential information in this

14  case that has been raised in these motions that were filed

15  under seal and we can try to argue around that.  I just wanted

16  to apprise the Court that with respect to my presentation I do

17  have some information that would trigger things that the

18  defendant has said in the case that have been marked as

19  confidential.

20          My apologies.

21          THE COURT:  I will hear you.

22          MR. PAGLIUCA:  Should I continue, your Honor?

23          THE COURT:  Go ahead.

24          MR. PAGLIUCA:  The first issue with regard to this

25  spoliation motion relates to the relevance of the documents

1    that were destroyed.  There are two sets of documents that
2    we're talking about.
3            THE COURT:  I have read the papers.
4            MR. PAGLIUCA:  I cannot imagine more relevant
5    documents in a case like this.
6            THE COURT:  I can't imagine anything less relevant
7    than the second group of documents.  Give me a break.  Leave
8    that aside.  I haven't remembered any one of my dreams now for
9    a couple of years but okay.  Yes, I hear you.
10           MR. PAGLIUCA:  Your Honor, on that point perhaps the
11   Court doesn't fully understand what is discussed when that is
12   being called a dream journal.  In deposition testimony the
13   plaintiff talked about writing down not only dreams but factual
14   recitations related to events described in the complaint.
15           THE COURT:  Right.
16           MR. PAGLIUCA:  So there will be relevant writings
17   contained in that particular document.
18           THE COURT:  Right anything else?
19           MR. PAGLIUCA:  Yes, your Honor.  That is the first
20   issue here, the relevance of these particular documents.
21           This is a defamation case and words are important in
22   this case.
23           THE COURT:  That's true.
24           MR. PAGLIUCA:  Those words written down by a plaintiff
25   prior to filing the litigation, some 300 pages of words,

H1j6giua

becomes significant in the context of this case where my client is alleged to have made a defamatory remark that is prefaced by the words "Every time this story is told, it changes." So that is why this becomes important in the context of this litigation.

The plaintiff here has been represented and has been involved in litigation since 2009, your Honor. She first was involved in litigation against Mr. Epstein. She then was involved and continuously represented from 2011 forward by Mr. Cassell and Mr. Edwards. Mr. Cassell has in fact published on this journal that we're talking about, apparently having looked at it and apparently having represented to the media that this journal was relevant to the claims that the plaintiff was making. It seems to me then that the plaintiff and her lawyers are under an obligation to maintain this evidence. They did not. Thus, the motion.

THE COURT: Gotcha.

MR. PAGLIUCA: Thank you, your Honor.

MS. McCAWLEY: Your Honor, Sigrid McCawley for the plaintiff, Virginia Giuffre. I am just going to touch on a couple points and I am trying to try to avoid anything that is confidential.

With respect to the duty to preserve, which is really the first prong of the test here in a sanction motion, my client had no duty to preserve in 2013 for a defamation action

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    that the defamatory words were not spoken until January 2nd of
2    2015.  She couldn't have known at the time of this incident in
3    2013 that Ms. Maxwell was going to defame her in January of
4    2015.  Because of that problem, the defendant has tried to
5    bootstrap this to another litigation, the Crimes Victims Rights
6    Act case, which is pending in the Southern District of Florida.
7    As the Court may know that case indication involves victims of
8    Mr. Epstein, who have alleged that they were not properly
9    notified by the U.S. Government of the plea deal that was set
10   forth between the government and Epstein.  So the subject
11   matter of that case is whether or not there was proper notice
12   to those victims.
13           My client Virginia Giuffre was noticed as a victim by
14   the U.S. Government.  She sought to join that case.  The
15   government already had two plaintiffs.  She was not allowed to
16   join that case.  Her joinder motion was not until 2014.  Again,
17   this incident that is set forth in the papers was in 2013.  If
18   you look at the *Pfizer* case, which is 288 F.R.D. 297, it is
19   from the Southern District of New York in 2013, it sets forth a
20   nice test and shows why that just because there is other
21   potential pending litigation that does not mean that there is
22   an automatic duty to preserve.
23           In *Pfizer* the same two drugs were at issue, the Bextra
24   drug and the Celebrex drug, and the Court held that even those
25   drugs were at issue in the prior case, the earlier case, there

1  was no duty to preserve because that prior case was about
2  enzymes in the drug and the later case was a securities class
3  action.  So they were two different cases with different causes
4  of action and there was no duty to preserve.
5         With respect to the other prongs of that test in
6  addition to having to prove that there was a duty to preserve
7  at the time the document was destroyed, the other prong is that
8  there must be willful and culpable destruction.  Without
9  getting into the plaintiff's testimony because the courtroom is
10 full with respect to what we set forth in our papers, I believe
11 that shows that there wasn't culpable conduct.  This was an act
12 of healing as sort forth in there.
13        Lastly, Maxwell has not met the third prong, which is
14 the defendant must show that the evidence would have been more
15 favorable to her.  She must show some kind of extrinsic
16 evidence showing that the documents would have been favorable
17 or helpful to her.
18        If the Court will allow me, I would like to provide
19 the Court just a small binder that has the information in it so
20 that I don't have to say it out loud.  It is certain pieces
21 that we have already provided that have been attached to our
22 filings but in summary form.
23        If I can approach?
24        THE COURT:  Sure.  I take it your have given it to
25 counsel.

1    MS. McCAWLEY: Yes. Two for the clerks and one for
2    you. It is a summary to what is attached to our filing.
3    So with respect to that, that sets forth the evidence
4    that we believe shows that there is absolutely no way the
5    defendant could show that this information if it existed would
6    have been helpful to her case in any way due to the repeated
7    incidents of abuse that are set forth in that information.
8    Unless the Court wants to entertain argument on the
9    dreams notebook, I will set that aside.
10    I just would like to address two more points. One is
11    that this issue was first raised in May of this year. So their
12    Second Circuit case law, the *Mercy* case, which says it is
13    untimely to wait this long for bringing a motion for sanctions.
14    We have a separate trial in this case in March and they waited
15    until nine months after they first raised the issue to bring it
16    to the Court's attention with this motion. We believe that is
17    improper.
18    Lastly, with respect to the e-mail where they
19    referenced Mr. Cassell, who has been a lawyer for Virginia
20    Giuffre in this case, that e-mail was clipped into their brief
21    with ellipses. The ellipses has the key missing information
22    that shows that Mr. Cassell stated that he did not have this
23    piece of information and has never had it. So if you look at
24    the actual document itself, which is attached as an exhibit,
25    you will see if you read the e-mail in its entirety, it hasn't

1  been properly represented in my view.  In addition what that
2  was referencing is the clips of her handwriting were used in
3  different journal pieces and not the actual journal.  It has to
4  be read in the context of the article and read it in its
5  entirety with respect to the e-mail.
6           In summary, your Honor, we believe they have not met
7  the standard sanctionable conduct in this case and we request
8  that the Court please deny the request for sanctions.
9           THE COURT:  Anything further?
10          MR. PAGLIUCA:  Briefly, your Honor.
11          First with regard to this timeliness issue, the case
12 that they cite has nothing to do with this issue that is before
13 the Court.
14          Just in terms of the discovery process, we have been
15 chasing documents since the inception of this case and we've
16 been met with resistance at every turn.  The plaintiff having
17 brought this litigation had the obligation to produce the
18 information that we've been requesting and we've been met with:
19 Well, it's in a box somewhere.  I don't know where it is.  I
20 moved.  So this is the culmination of those efforts.  It is
21 incumbent on the plaintiff having brought this litigation to
22 produce relevant documents upon request, number one, and to
23 preserve relevant documents during both the pendency of this
24 case and the cases that came before.
25          The plaintiff's lawyers know about these things.  Just

1   by way of a little bit of background, Mr. Cassell and
2   Mr. Edwards are former prosecutors.  Mr. Edwards is a personal
3   injury lawyer.  Mr. Edwards knows what relevant evidence is and
4   knows that he has an obligation to talk to his client about
5   obtaining those kinds of things that are ultimately going to be
6   requested and produced in the litigation.  That didn't happen
7   here.  It didn't happen because the evidence was destroyed.
8            We are then in a position of having to take the word
9   of the plaintiff that, Oh, gee, it wouldn't have helped you.
10  The inference is it would have helped us and it was destroyed
11  because it would have helped us.  There was an intentional
12  destruction of this evidence.  We have met all of the prongs
13  and the Court should enter sanctions for the destruction of
14  this evidence.
15           Thank you.
16           THE COURT:  I have endorsed the motion.  Spoliation
17  has not been established at the time of plaintiff's acts and
18  the motion is denied.
19           Thank you.
20           MS. McCAWLEY:  Thank you, your Honor.
21           There is one last scheduling item we agreed could be
22  raised as we have a moment with you.  It shouldn't take more
23  than 30 seconds.  That is our scheduling order in this case,
24  which is Docket Entry 455, we set forth dates when certain
25  items are due and the Court has set two hearings.  We're

1   getting ready for trial obviously and the Court has set a
2   hearing on February 2nd on certain motions *in limine*s, the
3   challenges to the experts, and then the motion for summary
4   judgment on the 9th.  They wouldn't be fully briefed according
5   to our scheduling order at those times.  The parties are
6   requesting if the Court would consider having those hearings on
7   the following Thursday, February 16th so that it will be fully
8   briefed.
9            THE COURT:  Sure.
10           MR. PAGLIUCA:  Your Honor, would you like us to submit
11  something in writing on that?
12           THE COURT:  It's up to.
13           MS. McCAWLEY:  Thank you, your Honor.
14                                 o0o