**United States District Court**
**Southern District of New York**

Virginia L. Giuffre,

               Plaintiff,              Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

               Defendant.

_____/


### RESPONSE IN OPPOSITION TO MOTION TO INTERVENE (DE 550)

Sigrid McCawley (Pro Hac Vice)
Meredith Schultz (Pro Hac Vice)
BOIES, SCHILLER & FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................ii

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     BACKGROUND ....................................................................................................... 6

III.    LEGAL ARGUMENT............................................................................................... 7

        A.      This Court Can Deny the Motion Before Reaching the Merits ..............................7

        B.      Cernovich's Attempt to Distinguish his Motion from Dershowitz's Fails:
                Cernovich Acts as Dershowitz's Proxy and Dershowitz's Illegitimate Purpose
                is Imputed to Cernovich (and Cernovich has an Illegitimate Purpose of His
                Own) ...................................................................................................................7

        C.      The (One-Sided) Materials Cernovich Seeks to Publish are Exactly the Type
                of Materials that are Appropriate for a Protective Order .........................................9

        D.      Cernovich's Attempt to Make a Distinction About Summary Judgment
                Materials Also Fails ............................................................................................10

        E.      The Second Circuit Has a Presumption Against Modifying Protective Orders
                Upon Which Parties Reasonably Relied ................................................................11

                1.      The Record in This Case Shows That the Protective Order Was Not
                        Improvidently Granted...............................................................................12

                2.      Both the Parties and Deponents in This Case Have Reasonably Relied
                        Upon the Protective Order ........................................................................13

                3.      Cernovich Fails to Overcome the Presumption to Maintain the
                        Protective Order .......................................................................................14

CONCLUSION........................................................................................................................ 17

CERTIFICATE OF SERVICE ................................................................................................ 19

# TABLE OF AUTHORITIES

Page

**Cases**

*AT & T Corp.v. Sprint Corp.*,
  407 F.3d 560 (2d Cir. 2005)..................................................................... 15

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
  814 F.3d 132 (2d Cir. 2016)..................................................................... 16

*Dorsett v. County of Nassau*,
  289 F.R.D. 54 (E.D.N.Y. 2012) ..................................................... 7, 13, 14

*E\*Trade Fin. Corp. v. Deutsche Bank AG*,
  582 F. Supp. 2d 528 (S.D.N.Y. 2008)....................................................... 17

*E.E.O.C. v. Nat'l Children's Ctr., Inc.*,
  146 F.3d 1042 (D.C. Cir. 1998) ................................................................ 15

*Globe Newspaper Co. v. Superior Court*,
  457 U.S. 596 (1982) .................................................................................. 16

*Hartford Courant Co. v. Pellegrino*,
  380 F.3d 83 (2d Cir. 2004)........................................................................ 16

*In re Continental Ill. Secs. Litig.*,
  732 F.2d 1302 (7th Cir. 1984) .................................................................. 16

*In re Iowa Freedom of Info. Council*,
  724 F.2d 658 (8th Cir. 1983) .................................................................... 15

*In re Orion Pictures Corp.*,
  21 F.3d 24 (2d Cir. 1994).................................................................... 15, 17

*In re Pineapple Antitrust Litig.*,
  2015 U.S. Dist. LEXIS 122438 (S.D.N.Y. Aug. 7, 2015)......................... 17

*In re September 11 Litigation*,
  262 F.R.D. 274 (S.D. N.Y. 2009) ....................................................... 12, 13

*In re Teligent, Inc.*,
  640 F.3d 53 (2d Cir. 2011)........................................................................ 12

*Katzman v. Victoria's Secret Catalogue*,
  923 F. Supp. 580 (S.D.N.Y. 1996) ........................................................... 17

*Levin v. U.S.*,
633 Fed. Appx. 69 (2nd Cir. 2016) .................................................................. 7

*Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*,
1996 WL 346352 (S.D.N.Y. June 26, 1996) ...................................................... 7

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
156 F. Supp. 3d 425 ........................................................................................ 11

*Lugosch v. Pyramid Co. of Onondaga*,
435 F.3d 110 (2d Cir. 2006) ........................................................................... 10

*Martindell v. International Telephone & Telegraph Corp.*,
594 F.2d 291 (2d Cir.1979) ............................................................................. 14

*Medical Diagnostic Imaging, PLLC v. Carecore Nat., LLC*,
2009 WL 2135294 (S.D.N.Y. 2009) ................................................................ 14

*N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth.*,
684 F.3d 286 (2d Cir. 2011) ........................................................................... 16

*Newman v. Graddick*,
696 F.2d 796 (11th Cir. 1983) ........................................................................ 17

*Newsday LLC v. Cty. of Nassau*,
730 F.3d 156 (2d Cir. 2013) ........................................................................... 17

*Nixon v. Warner Communications, Inc.*,
98 S.Ct. 1306, 435 U.S. 589 (1978) .............................................................. 8, 9

*Press-Enter. Co. v. Superior Court*,
478 U.S. 1 (1986) ............................................................................................ 16

*Publicker Indus., Inc. v. Cohen*,
733 F.2d 1059 (3d Cir. 1984) .......................................................................... 17

*Richmond Newspapers v. Virginia*,
448 U.S. 555 (1980) ........................................................................................ 16

*Rushford v. New Yorker Magazine, Inc.*,
846 F.2d 249 (4th Cir. 1988) .......................................................................... 16

*Schiller v. City of N.Y.*,
2006 U.S. Dist. LEXIS 70479 (S.D.N.Y. Sep. 27, 2006) ................................ 15

*Suen v. Las Vegas Sands, Inc.*,
No. A493744-C at 8 (Apr. 16, 2013) ............................................................... 16

*U.S. v. Amodeo ("Amodeo II")*
   71 F.3d at 1044 (1995)................................................................................................. 9, 11, 12

*United States v. Myers (In re Nat'l Broad. Co.)*
   635 F.2d 945 (2d Cir. 1980)................................................................................................ 17

*United States v. Erie Cty.*,
   763 F.3d 235 (2d Cir. 2014)........................................................................................... 16, 17

*Westmoreland v. CBS, Inc.*,
   752 F.2d 16 (2d Cir. 1984)................................................................................................... 17

## **Rules**

Fed. R. Civ. P. 24(b)(3)................................................................................................................ 7

## I. PRELIMINARY STATEMENT

On the heels of this Court denying Alan Dershowitz's request to publish selections of Defendant's filed documents in his motion to intervene, Dershowitz's close associate has filed another motion to intervene, seeking substantially the same relief.

Proposed Intervenor and purported "journalist" Michael Cernovich requests that this Court grant him intervenor status for the purpose of unsealing and publishing a single filing from the above-captioned case: Defendant's Motion for Summary Judgment, along with its nearly 700 pages of exhibits. He claims that "[t]he public has a right to see Maxwell's Motion for Summary Judgment and the press is here to show it to them." Mot. at 1. Curiously, Mr. Cernovich does not request to see any other sealed portion of the extensive record in this case (now spanning 586 docket entries). Nor does he seek access to Ms. Giuffre's Response in Opposition to Defendant's Motion for Summary Judgment. Indeed, his cherry-picking of just one filing by Defendant to publicize belies his stated position that "all Parties to this litigation have committed a transgression" by filing documents under seal purusant to this Court's Orders.

Cernovich also claims that his motion for unsealing is somehow "distinct from Professor Dershowitz's" motion . Mot. at 9. Yet, Cernovich's motion clearly echoes the motion to intervene brought by Alan Dershowitz.[1] Indeed, one of the documents Dershowitz sought to publicize is attached, in full, to Defendant's motion for summary judgment, and the other documents Dershowitz sought to publicize are described in detail by deposition testimony attached to Defendant's motion for summary judgment. In truth, both motions seek the same relief – to selectively publish certain documents supporting  Defendant's position in this litigation.

[1] Dershowitz has since appealed this Court's ruling on his motion to intervene to publish select documents filed by Defendant, which is currently pending in the Second Circuit. It is our understanding that Dershowitz will shortly be moving to dismiss his appeal.

This seeming "concidence" is less remarkable given the strong ties shared by Dershowitz and Cernovich. Cernovich, pictured below, is the executive producer of a film starring[2] none other than Alan Dershowitz[3]:



Online film promotions claim the following:



Indeed, a clip of Dershowitz's starring role in the film is featured by its promotional website:[4]



---

[2] *See* http://www.silencedmovie.com/ (highlighting added).
[3] http://www.imdb.com/title/tt6282878/.
[4] *Id*.

Cernovich has not be shy about broadcasting his relationship with, and influence by, Alan

Dershowitz, and last summer tweeted:



Cernovich also attributes his inspriation to attend law school to Dershowitz:[5]

Alan Dershowitz is a left-wing lawyer who has fought for the free speech rights of neo-Nazis. Dershowitz has also been barred from speaking at many college campuses because his pro-Israel speeches have been falsely labelled as "hate speech." Meeting Dershowitz was a personal joy of mine, as his book "The Best Defense: The Courtroom Confrontations of America's Most Outspoken Lawyer of Last Resort" inspired me to go to law school.

As the Court is aware, (and as, no doubt, Cernovich is aware from reviewing the

Complaint), this is a case that involves the Defendant's sexual abuse  and trafficking of Ms.

---

[5] https://www.dangerandplay.com/2016/12/01/who-is-in-silenced-the-best-documentary-on-free-speech-ever/ (highlighting added).

3

Giuffre while she was a minor child. As the Court is also aware, evidence relating to the sexual abuse and trafficking of minors and other young women is contained in many of the documents in this case. This Court's Protective Order (DE 62) protects both the identities and the cirucmstances surrounding victims of sexual abuse. The Court has already ruled that the Protective Order should not be disturbed by an intervenor seeking to publish self-selected parts of the record, and nothing in the instant motion should lead to a different conclusion.

Additionally, Cernovich's previous statements regarding sexual assault belie his professed purpose of promoting "openness in the judicial branch," (Mot. at 3), and instead point to an illegitimate and improper purpose for seeking to publish these documents-a personal vendetta, that is wholly divorced from anything related to the public right of access to the Courts.

Cernovich appears to have a personal interest (to use his words) in "slut sham[ing]" women. Multiple websites, including Wikipedia.com, captured various tweets issued by Cernovich.[6] Cernovich's tweets show that his interest in sexual assault is not simply journalistic, as he claims, but instead betrays a purient interest to fetishize rape:

> The hotter the sex, the more closely it resembles rape.
>
> — Mike Cernovich (@Cernovich) October 15, 2011

Another tweet he issued expressed an opinion that "[d]ate rape does not exist," indicating that he does not believe someone can be raped by an acquaintance:

---

[6] http://www.mediaite.com/online/fox-news-under-fire-after-inviting-rape-apologist-on-as-guest/ http://www.thedailybeast.com/articles/2016/08/09/why-did-fox-news-welcome-date-rape-apologist-mike-Cernovich.html.

> Have you guys ever tried "raping" a girl without using force? Try it. It's basically impossible. Date rape does not exist.
>
> — Mike Cernovich (@Cernovich) August 12, 2012

Needless to say, the girls and young women who have provided testimony or other information for this case discussed sexual abuse. Based on Cernovich's published comments, it is likely that he will not only expose details relating to sexual assault of Ms. Giuffre, but to improperly expose identities of other victims merely to satisfy his personal interest in such matters. Indeed, it appears that Cernovich harbors a special antipathy for victims of sexual assault, saying "why should I care when women are raped?"

> A whore will let her friend ruin your life with a false rape case. So why should I care when women are raped? http://t.co/eUsQtLiv
>
> — Mike Cernovich (@Cernovich) January 30, 2012

According to *The New Yorker*, Cernovich "was accused of raping a woman he knew; the charge was later dropped, but a judge ordered him to do community service for midemeanor battery."[7]

Cernovich also published his ideas on the importance of "slut sham[ing]" women, particularly in relation to women of a certain race:

> Not being a slut is the only proven way to avoid AIDS. If you love black women, slut shame them. https://t.co/e3NUaTUZvD
>
> — Mike Cernovich (@Cernovich) February 5, 2016

---

[7] http://www.newyorker.com/magazine/2016/10/31/trolls-for-trump.

AIDS is not the only deadly disease he has used to attack women in relation to sexual activity and rape. He has also tweeted, "Who cares about breast cancer and rape? Not me."[8]

Far from being a legitimate "journalist" reporting on news, Cernovich simply uses electronic media to engage in his own personal vendetta:

> Fat/ugly women seek out dominant men to abuse them. Then they seek sympathy from others. "He's so mean.".
> Hence why women troll Twitter.
>
> — Mike Cernovich (@Cernovich) July 2, 2014

Due to the sensitive nature of the subject matter of this litigation – including but not limited to the sexual assault of numerous minors – this Court entered a Protected Order as stipulated by the Parties (DE 62). It is wholly inappropriate for an individual with the personal vendettas discussed above, not to mention close ties with the previous proposed intervenor, to be able to intervene in this case to obtain access to sensitive materials relating to child sexual assault and sex trafficking.

II.    BACKGROUND

This is a case concerning sex abuse of minors, brought by a woman who was herself a minor victim of sex abuse. Accordingly, this Court has recognized from the outset the paramount importance of a protective order in this case, announcing at one of the first hearings in the case that "of course there should be a protective order in this case." Thereafter, on March 18, 2016, "[u]pon a showing of good cause," the Protective Order was entered (DE 62 at p.1). In reliance

---

[8] *Id.*

on these rulings, both parties have now designated hundreds of pages of materials confidential under the Court's Order.

## III.    LEGAL ARGUMENT

### A.    This Court Can Deny the Motion Before Reaching the Merits

The Court may deny Cernovich's motion without reaching the merits based on its discretion. Fed. R. Civ. P. 24(b)(3); *See, e.g., Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 1996 WL 346352, at *4 (S.D.N.Y. June 26, 1996) (Sweet, J.) (denying leave to intervene); *Levin v. U.S.*, 633 Fed. Appx. 69, 70 (2nd Cir. 2016) (affirming district court's denial of motion to intervene, explaining "[b]ecause of the fact-intensive nature of an intervention decision, we review for 'abuse of discretion' a district court's order denying intervention . . . by permission."). As the documents Cernovich seeks to publish are substantively the same as those Dershowitz sought to publish, this Court can deny Cernovich's motion on the grounds that publishing the documents he seeks would prejudice Ms. Giuffre. Indeed, (as explained in her previous briefing) it would be extremely prejudicial to Ms. Giuffre should the Court allow Cernovich to publish– out of the hundreds of documents filed under seal in this case –Defendant's motion for summary judgment and exhibits alone, not simply because such a publication wouuld be grossly one-sided, but also because Defendant's Motion for Summary Judgment and Rule 56.1 Statement of Fact is rife with misstatements and falsehoods.

### B.    Cernovich's Attempt to Distinguish his Motion from Dershowitz's Fails: Cernovich Acts as Dershowitz's Proxy and Dershowitz's Illegitimate Purpose is Imputed to Cernovich (and Cernovich has an Illegitimate Purpose of His Own)

"A litigant's purpose in seeking modification of an existing protective order is also relevant for determining whether to grant a modification." *Dorsett v. County of Nassau*, 289 F.R.D. 54, 65 (E.D.N.Y. 2012). Dershowitz's failed attempt to publicize the same documents

admitted his illegitimate purpose behind his motion: "My goal is to bring charges against the client and require her to speak in court." *See* McCawley Dec. at Exhibit 1, Australian Broadcasting System (ABC), January 6, 2015.

Indeed, in over fifty statements to the press, he has explained to the world (if not this Court) his reasons for maintaining his attacks on Ms. Giuffre in the media, in which he has publicly called her a "prostitute" and a "bad mother" to her three minor children. *See* McCawley Dec. at Exhibit 2, Local 10 News, January 22, 2015. By his own words, Dershowitz wanted to intimidate and harass Ms. Giuffre with the specter of his sending her "to jail."

Aligned in purpose, Cernovich and Dershowitz's motivations are equally illegitimate. Here Cernovich is someone who is a "rape apologist"[9] and advocates "slut shaming"[10]. The Court should not provide him access to sensitive materials describing the sexual assault of minors and women identifying those victims.

*Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598 (1978), explained that "[i]It is uncontested that the right to . . . copy judicial records is not absolute . . . access has been denied where court files might have become a vehicle for improper purposes." *Nixon* instructed that lower courts should "exercise an informed discretion as to the release" of materials, because, "[o]therwise, there would exhibit a danger that the court could become a partner in the use of the subpoenaed material to gratify private spite or promote public scandal, with no corresponding assurance of public benefit." *Nixon v. Warner Communications, Inc.*, 435 U.S. at 603 (internal citations and quotations omitted).

---

[9] http://www.thedailybeast.com/article/2016/08/09/why-did-fox-news-welcome-date-rape-apologist-micke-Cernovich.html

[10]

http://www.mediaite.com/online/fox-news-under-fire-after-inviting-rape-apologist-on-as-guest/
http://www.thedailybeast.com/articles/2016/08/09/why-did-fox-news-welcome-date-rape-apologist-mike-Cernovich.html.

Under *Nixon*, this Court should not allow itself to be Cernovich's partner in gratifying his "private spite" for victims of sexual by giving him depictions of sexual assault to read and publish. Nor should the Court gratify Dershowitz's private spite for Ms. Giuffre by allowing Cernovich to act as his proxy. This Court's refusal to allow Dershowitz to publish materials due to his illegitimate purpose also should bar Cernovich's motion to publish the same and similar materials for his own personal illegitimate purposes.

Moreover, Cernovich's public statements already generally besmirch rape victims. The Second Circuit does not allow a court to unseal private and otherwise protected material to enable a non-party to conduct a public smear campaign. *U.S. v. Amodeo ("Amodeo II")*, 71 F.3d at 1044, 1051 ("The nature and degree of injury must also be weighed. This will entail consideration not only of the sensitivity of the information and the subject but also of how the person seeking access intends to use the information…***personal vendettas…need not be aided***.") (Emphasis added).

Cernovich's apparent personal vendetta against victims of sexual assault and Cernovich's personal relationship with Dershowitz (who has a personal vendetta against Ms. Giuffre) constitute *prima facie* evidence that he seeks the revelation of these materials for an improper personal vendetta. Therefore in accordance with governing law, this Court should hold that the privacy interests in the materials Cernovich (and Dershowitz) seek outweigh any weak presumption of access.

## C. The (One-Sided) Materials Cernovich Seeks to Publish are Exactly the Type of Materials that are Appropriate for a Protective Order

Cernovich's motion also fails because the common law presumption of access is easily overcome here by countervailing factors, namely that the materials at issue contain sensitive information regarding the sexual assault of minors. *Lugosch v. Pyramid Co. of Onondaga*, 435

F.3d 110, 119–20 (2d Cir. 2006) (noting that if a court finds documents to be judicial, it must then assess the weight of the presumed access and determine if countervailing factors override the presumption). And in this case, where so much of the evidence relates to sexual assault, and sexual assault of minors, there are great countervailing factors to maintain this Court's Protective Order. Cernovich's brief is entirely silent on the fact that the sealed documents in this case relate to the sexual assault of minors (a fact he is no doubt aware of by his admitted reading Plaintiff's response in opposition to Dershowitz's motion to intervene).[11] His brief fails to make a showing to the Court (or, indeed, offer any explanation at all) as to why some unspecified interested in publicly revealing documents concerning the sexual assault of minors should take precedence over the well-reasoned Protective Order this Court not only entered but repeatedly reaffirmed.

### D. Cernovich's Attempt to Make a Distinction About Summary Judgment Materials Also Fails

Courts routinely maintain the seal over materials for which confidentiality is important, including summary judgment materials. *See Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 445 N7 (S.D.N.Y. 2016) ("As for competing considerations that counsel in favor of allowing the parties to file their briefs under seal, the privacy interests of the parties in preventing the public disclosure of private business figures and communications are not insignificant. The Court therefore concludes that the balance of interests is in favor of allowing the parties' [summary judgment] briefs to be filed under seal."). This ruling is in-line with the Second Circuit's directive regarding how to assess the weight of the presumption of access. "The presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the

---

[11] "This is a case concerning sex abuse of minors, brought by a woman who was herself a minor victim of sex abuse." Ms. Giuffre Response in Opposition to Dershowitz's Motion to Intervene at 9.

federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Amodeo II*, 71 F.3d at 1049.

Cernovich fails to make a showing that the documents he seeks – including the nearly 700 pages of exhibits - directly affect adjudication of this case. Briefing on summary judgment has not yet closed. Indeed, Ms. Giuffre only filed her Response in Opposition to Defendant's Motion for Summary Judgment two days ago. It is unclear whether the Court will rely upon Defendant's voluminous exhibits to her Motion for Summary Judgment, as Defendant's Motion for Summary Judgment is wholly without merit, and should be summarily denied.   If the motion is denied, then there will be no "adjudication" as a result of the motion- the jury will make the adjudication at trial- a trial that will be open to the public.

"Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Amodeo II*, 71 F.3d at 1050. The pages and pages of exhibits (for example) attached to Defendant's summary judgment will play, at best, a neglible role in resolving this lawsuit.  Accordingly, the documents sought by Cernovich (and Deshowitz) are not unlikely to play any significant role in this case and access should be denied.

### E.     The Second Circuit Has a Presumption Against Modifying Protective Orders Upon Which Parties Reasonably Relied

The Second Circuit has expressly acknowledged that its protective order modification test has, as a general matter, a "strong presumption against the modification of a protective order, and orders should not be modified absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need." *In re Teligent, Inc.*, 640 F.3d 53, 59 (2d Cir. 2011) (affirming denial of motion to lift confidentiality provisions of the protective order).

Indeed, "once a discovery protective order is in place, the applicable standard requires party seeking to modify the order to show improvidence in the grant of the protective order or some extraordinary circumstance or compelling need." *In re September 11 Litigation*, 262 F.R.D. 274 (S.D. N.Y. 2009). Cernovich does not come close to making that demanding showing.

Cernovich's failure to make that showing stands out in sharp relief when he argues that the "privacy concerns" of third-parties who are protected by the Court's Protective Order – third parties who only agreed to testify under auspices of the Protective Order, and who testified about highly sensitive information concerning their own sexual assault – are "insufficient when contrasted with the rights of the people to have open courts." Mot. at 8. Unsurprisingly, Cernovich cites no case in any jurisdiction to support such a fantastical claim. Cernovich's comes to this Court to argue that it should not protect testimony and evidence about sexual assault and the sexual assault of minors with absolutely no authority supporting his position. For that reason alone, this Court should deny this baseless motion.

1.  The Record in This Case Shows That the Protective Order Was Not Improvidently Granted.

Despite Cernovich's argument, the Protective Order, entered "[u]pon a showing of good cause," was not improvidently granted. (DE 62 at p. 1). "I want to be sure that we can enforce the confidential aspect of that agreement, and I think that could be critical down the line." Indeed, it is well-settled that "once a discovery protective order is in place" modification is only justified where the party seeking access can "show improvidence in the grant of the protective order or some extraordinary circumstance or compelling need." *In re September 11 Litigation*, 262 F.R.D. 274 (S.D. N.Y. 2009). Cernovich's attempts to claim improvidence, carelessness, or shortsightedness of this Court in granting the Protective Order are unavailing. To the contrary, this Court has, twice, found the case warrants a stringent Protective Order, and has specifically

expressed concern for its ongoing efficacy. Indeed, with jury selection in this case right around the corner, releasing these materials now could taint the jury pool. Cernovich offers no sound reason for modifying the order.

2.  <u>Both the Parties and Deponents in This Case Have Reasonably Relied Upon the Protective Order</u>

The Second Circuit has been hesitant to permit modifications that might "unfairly disturb the legitimate expectations of the parties or deponents." *Dorsett v. County of Nassau*, 289 F.R.D. 54, 64 (E.D.N.Y. 2012). Indeed, "[i]t is presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." 289 F.R.D. at 64 (E.D.N.Y. 2012) (internal citations and quotations omitted) (denying motion to lift confidentiality of report of policing failures surrounding the murder of a young mother). "Consequently, in a major decision in this field, *Martindell v. International Telephone & Telegraph Corp.,* 594 F.2d 291 (2d Cir.1979), the Second Circuit determined that 'absent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary y circumstance or compelling need ... a witness should be entitled to rely upon the enforceability of a protective order against any third parties.'" *Id*., quoting *Martindell v. International Telephone & Telegraph Corp.*, 594 F.2d at 296 (denying governmental access for criminal investigative purposes civil deposition transcripts taken under a protective order).

In this case, Ms. Giuffre - and multiple other deponents - reasonably relied on this Court's Protective Order in giving testimony and producing documents. Indeed, Ms. Giuffre has given testimony about being sexually assaulted furnished personal medical records, and produced personal emails with close family members in reasonable reliance upon of the Protective Order. *Medical Diagnostic Imaging, PLLC v. Carecore Nat., LLC*, 2009 WL 2135294, at *4 (S.D.N.Y. 2009) (denying motion to modify protective order because parties and

third parties have reasonably relied upon the terms of the protective order). Third-party witnesses have done the same. Under *Martindell*, this Court cannot take away those protections after the fact.

                  3.     <u>Cernovich Fails to Overcome the Presumption to Maintain the Protective Order</u>

Tellingly, Cernovich cites no civil case in which a court modified a protective order to give an intervener access to information about the sexual assault of a minor (when the intervener was not the handicapped victim's mother). Instead, Cernovich cites authority that is inapposite and self-evidently distinguishable.

For example, in many of the cases Cernovich cited the court **denied** the motion. *See AT & T Corp.v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) (the court **denied** the motion for intervention for failure to show "the Protective Order was improvidently granted or that either extraordinary circumstances or a compelling need exist"); *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 661 (8th Cir. 1983); *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994).

In *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998), where the motion was granted, the intervener was **mother of a handicapped sexual assault victim** – someone with a completely legitimate interest in the case, unlike the instant filer. In *In re Pineapple Antitrust Litig.*, 2015 U.S. Dist. LEXIS 122438, at 5 (S.D.N.Y. Aug. 7, 2015), the motion was granted because it as a "long-closed civil lawsuit…," not an ongoing litigation as is the case here. *Schiller v. City of N.Y.*, 2006 U.S. Dist. LEXIS 70479, at 5 (S.D.N.Y. Sep. 27, 2006) is also readily distinguishable. When the motion was brought by a legitimate news media company – the New York Times – the Court found that intervention "for the limited purpose of challenging strictures on the dissemination of information s**hould not impede the progress of the litigation.**" (Emphasis added). There is no such limited purpose here, and any release of

confidential material prior to the trial would most certainly impede the progress of the litigation, as it would likely be used as a tool to intimidate witnesses expected to be called at trial and to taint the jury pool.

Further, Cernovich cites a Nevada case involving Dershowitz, and quotes from what appears to be a statement made by one of the attorneys in the case. *See Suen v. Las Vegas Sands, Inc.*, District Court, Clark County, Nevada, Case No. A493744-C at 8 (Apr. 16, 2013). Additionally, in *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) the Court only allowed intervention ***"[a]fter parties settled the action"*** – not one month prior to the commencement of trial.

To continue, *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 10 (1986); *Richmond Newspapers v. Virginia*, 448 U.S. 555, 580 n.17 (1980); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 605 (1982); and *United States v. Myers (In re in re Nat'l Broad. Co.)*, 635 F.2d 945 (2d Cir. 1980) are inapposite because they involved criminal proceedings. *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004) in inapposite because it involved the right of access to docket sheets (something Cernovich already has).*United States v. Erie Cty.*, 763 F.3d 235, 236 (2d Cir. 2014) is inapposite because the intervention took place after the settlement agreement.

*N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2011) cuts against Cernovich's argument as the Court stated: "Accordingly, we have recognized that "a person's physical safety" as well as "the privacy interests of individuals" such as witnesses, third parties, and those investigated in connection with a legal violation, may "warrant closure."" Here, privacy interests of both parties and third parties warrant closure, which also makes

inapposite the holding in *United States v. Erie Cty.*, 763 F.3d 235, 236 (2d Cir. 2014) (Sealing did not invoke "privacy concerns.").

Cernovich then cites to a series of cases, many of which are out-of-circuit, that are also inapposite:

- *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253-54 (4th Cir. 1988)

  - "In the absence **of some overriding interest in favor of keeping discovery documents under seal**, once documents are submitted in support of motion for summary judgment, they should be unsealed…"

  - "It appears from the record that the Order was entered to facilitate **pre-trial discovery**." Here there is an overriding interest in favor of keeping the Protective Order, as explained above.

- *In re Continental Ill. Secs. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984)

  - Only reasons given for maintaining confidentiality: attorney-client privilege, work product immunity and effective functioning of special litigation committees. By contrast, protecting minor victims of sexual assault is at stake with this case.

- *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984) - Factually different – it involved the transcript of hearing ruling on confidential information, but also involved another other motion.

- *Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983) - District court gave no reason for limiting press access.

- *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) - Bankruptcy, confidentiality upheld

- *Westmoreland v. CBS, Inc.*, 752 F.2d 16, 22 (2d Cir. 1984) - Televised coverage **not** allowed

In addition, Cernovich cites cases concerning cameras in the courtroom – cases which have absolutely no bearing on the issue at hand. *See Katzman v. Victoria's Secret Catalogue*, 923 F. Supp. 580, 588 (S.D.N.Y. 1996); *E\*Trade Fin. Corp. v. Deutsche Bank AG*, 582 F. Supp. 2d 528, 531 (S.D.N.Y. 2008).

Finally, it is worth noting that this case is set for trial March 13. Accordingly, the public's interest in learning about many other matters in this case will be fully satisfied in the very near future. Cernovich offers no reason why the court cannot delay exposure of the materials in question for another few weeks.

Cernovich has wholly failed to make any showing to justify disturbing this Court's Protective Order, entered for good cause. To the contrary, his comes to the Court with strong indicia of truly improper purposes of unsealing such sensitive material.

## **CONCLUSION**

Based on the foregoing, the Court should deny Cernovich's motion in its entirety.

Dated: February 2, 2017

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By: /s/ Meredith Schultz
Sigrid McCawley (Pro Hac Vice)
Meredith Schultz (Pro Hac Vice)
Boies Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

David Boies
Boies Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Bradley J. Edwards (Pro Hac Vice)
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820

Paul G. Cassell (Pro Hac Vice)
S.J. Quinney College of Law
University of Utah
383 University St.
Salt Lake City, UT 84112
(801) 585-5202[12]

---

[12] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on February 2, 2017, I electronically filed the foregoing

document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing

document is being served to all parties of record via transmission of the Electronic Court Filing

System generated by CM/ECF.

Laura A. Menninger, Esq.
Jeffrey Pagliuca, Esq.
HADDON, MORGAN & FOREMAN, P.C.
150 East 10th Avenue
Denver, Colorado 80203
Tel: (303) 831-7364
Fax: (303) 832-2628
Email: lmenninger@hmflaw.com
        jpagliuca@hmflaw.com


/s/ Meredith Schultz
        Meredith Schultz