UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
VIRGINIA L. GUIFFRE,                          :
                                              :
                          Plaintiff,          :
                                              :        Case No.: 15-cv-7433 (RWS)
           -against-                          :
                                              :
GHISLAINE MAXWELL,                            :        **REPLY TO PLAINTIFF'S**
                                              :        **OPPOSITION TO MOTION TO**
                          Defendant.          :        **INTERVENE AND UNSEAL**
                                              :
---------------------------------------------------------x

Movant Mike Cernovich hereby files his reply to Plaintiff's Response in Opposition to Motion to Intervene (Docket No. 589) (hereinafter the "Opposition").

Plaintiff Virginia L. Giuffre ("Plaintiff" or "Giuffre") responds to Mr. Cernovich's Motion to Intervene and Unseal with invective and wild accusations, but presents no legal reason for the Court to set aside the First Amendment's mandate that court proceedings, at this stage, be open to the public.  In fact, Giuffre has not even provided a basis to overcome the common law presumption of openness in judicial proceedings.  Giuffre, instead of making a convincing argument about the law or the facts, has unfortunately chosen to concoct a wild tale of conspiracy theories, ulterior motives, and personal vendettas.  Plaintiff's arguments are unsupported by law or fact.

One week after Cernovich sought to intervene and unseal the summary judgment pleadings, counsel for Plaintiff filed yet another action in this District against Defendant Ghislaine Maxwell ("Maxwell"), as well as Jeffrey Epstein, based on allegations similar to those in this case.  *See Jane Doe 43 v. Jeffrey Epstein, et al.*, Case No. 1:17-cv-00616-JGK (S.D.N.Y. Jan. 26, 2017) (complaint).  Maxwell has now been accused of running or being involved in a child sex trafficking ring in multiple lawsuits.  Maxwell's involvement in sex trafficking is newsworthy on its face.  Indeed, the Daily Mail published an article about the most-recent lawsuit.  *See* Gould, Martin, "EXCLUSIVE: Pedophile Jeffrey Epstein is accused of luring an

underage girl into his elaborate sex trafficking enterprise under the guise of using his wealth and connections to get her into a prestige NYC college", Daily Mail (Jan. 27, 2017).[1]  If it was not newsworthy, it would not have been leaked to the press.

Mr. Cernovich understands the sensitivity of these issues; he has no personal interest in learning about or exposing what happened to Giuffre or publishing any of the intimate facts involving her victimization (in fact, he would not ordinarily oppose her redacting the details of her abuse – however, he is not in a position to stipulate to this Court suspending the First Amendment right of access).  Mr. Cernovich's journalistic focus is on Maxwell and in reporting on Jeffrey Epstein's accusations.[2]  In fact, in the 2016 presidential election, Epstein's activities were the focus of political attacks on Democrats and Republicans alike.  There can be little more newsworthy than the story here – being played out in the people's courtroom.

## 1.0    Half-Baked Conspiracy Theories

It is unfortunate that Giuffre has opposed Mr. Cernovich's efforts report on Maxwell and, by extension, Epstein.[3]  It appears that Plaintiff's Opposition is rooted in fabricated tales about Mr. Cernovich's relationship with Prof. Alan Dershowitz.  Giuffre correctly identifies Prof. Dershowitz as but one of at least fifty people interviewed for the movie *Silenced: Our War on Free Speech* (Danger & Play Prods. 2016).[4]  *Silenced* included interviews with rabbis, Imams, priests, social media personalities, comedians, computer hackers, lawyers, college students, musicians, and even so-called "online trolls."  *Silenced* was a look at what free speech meant in

---

[1]    Available at <http://www.dailymail.co.uk/news/article-4164082/Pedophile-Jeffrey-Epstein-accused-new-sex-traffick-case.html> and attached the Declaration of Jay M. Wolman, filed herewith, as Exhibit 1 (last accessed February 9, 2017).

[2]    Epstein pleaded guilty to prostituting a minor under Fla. Stat. § 796.03, a crime punishable by up to fifteen years' imprisonment.  *See* Fla. Stat. § 775.082(3)(c); *State of Fla. v. Jeffrey E. Epstein,* Case No. 0809381 (Palm Beach, Fla. Jun. 30, 2008).  In what appears to have been a sweetheart deal, Epstein was only given an 18-month sentence and served but 13 months.  *See* "High-profile cases:  Crimes that shook Palm Beach through the decades", Palm Beach Daily News (Feb. 2, 2017), available at <http://www.palmbeachdailynews.com/news/local/high-profile-cases-crimes-that-shook-palm-beach-through-the-decades/9B1wc5GHCMqHHUOeFotwBI/> and attached to the Declaration of Jay M. Wolman, filed herewith, as Exhibit 2 (last accessed February 9, 2017).

[3]    Maxwell did not oppose the relief sought by Mr. Cernovich.

[4]    The full cast list is available at <http://www.silencedmovie.com>, and attached to the Declaration of Jay M. Wolman, filed herewith, as Exhibit 3.  Plaintiff's Opposition truncates the list.

America in 2016, and documented such issues as cyber-bullying, online shaming, and self-censorship.  Ironically, Giuffre now seeks to hold a documentary about the First Amendment against the journalist who produced the documentary, now that he also seeks to speak up for his, and truly everyone's, First Amendment rights.  Giuffre correctly observes that in promoting the film on Twitter, Cernovich promoted the fact that Prof. Dershowitz's appeared in it.[5]  The fact that Cernovich's previous journalistic endeavors like *Silenced* focused on a player in this case only strengthens his journalistic interest in the case, it does not diminish his credibility.

Finally, Giuffre accurately quoted Cernovich's inspiration by Prof. Dershowitz's legal writing.  He is a best-selling author who was involved in numerous high-profile cases. The Court would be hard pressed to find a lawyer who was not affected by Prof. Dershowitz. More important, the Court would be hard pressed to see how these allegations mean anything close to what Plaintiff asserts or bar the First Amendment right of access.

To suggest that Mr. Cernovich is somehow acting for Prof. Dershowitz is simply false, and the allegations and suppositions in the Opposition are meritless.  Mr. Dershowitz is one of the greatest litigators in history.  He hardly needs to enlist the assistance of a proxy to litigate his interests.  Mr. Cernovich is not a shadowy co-conspirator of Prof. Dershowitz simply because he interviewed Prof. Dershowitz in a movie about the First Amendment.  Otherwise, Plaintiff's counsel should be considered a double agent – after all, Prof. Dershowitz's wrote of "Supreme Injustice:  How the High Court Highjacked Election 2000" (Oxford Univ. Press 2001).[6]  Plaintiff provides nothing more than shameful and unprofessional table-pounding for their argument that Mr. Cernovich and Prof. Dershowitz are in cahoots, and the Court should not give this theory any credence.  Whatever interests Prof. Dershowitz may have, they are separate and apart from Mr. Cernovich's First Amendment oriented goals.

---

[5]   The still image of the video clip on page 7 of the Opposition shows Prof. Dershowitz in the same outfit as the one in the Twitter image on page 8.  This is because, as the tweet itself indicates, it was from that very day.

[6]   Mr. Boies argued for Vice President Gore in *Bush v. Gore,* 531 U.S. 98 (2000).

Mr. Cernovich does not seek to "besmirch" Plaintiff and there is no "illegitimate purpose" behind his Motion.  Plaintiff attempts to throw mud at Mr. Cernovich to support this argument, but none of the "evidence" she provides establishes anything of relevance.  None of the quotes attributed to Mr. Cernovich in any way suggest he supports sex trafficking or the abuse of minors, and her suggestion that Mr. Cernovich will expose the identities of other victims is, to put it generously, ethereal.  But even if her arguments were supportable, the First Amendment is not governed by a journalist's biases; otherwise the Daily News could not publish positive stories about the Mets.  As the Second Circuit explained, "consideration of the [journalist's] ultimate interest in the case should not affect the weight of the presumption [of access]."  *Lugosch v. Pyramid Co.*, 435 F.3d 110, 123 (2d Cir. 2006).  There is no legitimate dispute that Mr. Cernovich is a member of the media and there is no question that this case is a matter of public interest.  Plaintiff appears to think that only members of the media who seek to promote her personal agenda have a valid interest in reporting on this case.  Fortunately for the public, this is not law.[7]

## 2.0    The Public's First Amendment Rights Must Not be Denied

In misunderstanding Mr. Cernovich's motives and conflating him with Prof. Dershowitz, Plaintiff mischaracterizes the substance of the motion.  Mr. Cernovich is *not* seeking to modify the Protective Order (Docket No. 62).  He seeks to restore it.

### 2.1    The Protective Order Contemplates Confidential Materials Not Being Sealed

The Court originally entered a protective order that permitted review of requests to seal under the requirements of the Second Circuit.  In the interest of judicial economy, however, that order was modified without either party briefing the governing law.  The discovery Protective Order, as originally entered, states:

> Whenever a party seeks to file any document or material containing CONFIDENTIAL INFORMATION with the Court in this matter, it shall be accompanied by a Motion to Seal pursuant to Section 6.2 of the Electronic Case Filing Rules & Instructions for the Southern District of New York.

---

[7]    Ironically, if Cernovich has a bias, it would be in *favor* of Giuffre's positions.

*See* Protective Order (Docket No. 62), March 17, 2016, at p. 4.   Mr. Cernovich's motion addresses the Order of June 24, 2016 (Docket No. 250) setting forth how the parties are to file unredacted documents under seal, and the Standing Order of August 9, 2016 (Docket No. 348). These orders abrogated the requirements of Section 6.2 of the Electronic Case Filing Rules & Instructions for the Southern District of New York.   The August 9, 2016, Standing Order notably stated that "[a] party wishing to challenge the sealing of any particular submission may do so by motion." (Docket No. 348).   Thus, Mr. Cernovich is doing precisely what this Court requires. His challenge would not modify any order, rendering irrelevant Plaintiff's arguments related to the standard for modifying a Rule 26(c) protective order.   To the extent the motion is construed as one seeking to modify the June 24 and August 9, 2016 order, there is good cause to do so.

### 2.2   The Summary Judgment Pleadings Must Be Unsealed

Although it is more efficient to permit the parties to freely file matters under seal, that efficiency must give way to First Amendment and common law rights of access. Under established Second Circuit precedent:

> Proceedings may be closed and, by analogy, documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.  Such findings may be entered under seal, if appropriate. Broad and general findings by the trial court, however, are not sufficient to justify closure.

*In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (internal citations and quotation marks omitted).   The record does not reflect any such specific, on the record findings; there are only broad and general findings.

The parties have well exceeded any basis for sealing.   In reaffirming *In re N.Y. Times Co.*, the Second Circuit recently observed that "[t]o overcome the First Amendment right of access, the proponent of sealing must 'demonstrat[e] that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"   *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 144 (2d Cir. 2016) quoting *In re N.Y. Times Co., supra.*

Here, neither Maxwell nor Giuffre have put forth any reason for the broad redactions and sealing appearing first in Maxwell's summary judgment filings and subsequently in Giuffre's Opposition thereto.  Specifically, no reasons were put forth to seal or redact (a) all 68 pages of the Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Docket No. 541); (b) Exhibits D, G-Z, AA-CC, EE-KK & MM (32 of 38 exhibits) (Docket No. 542);[8] (c) a Rule 56.1 Statement of Fact referenced by Plaintiff at p. 12 of her Opposition, but not even identifiable on the docket; (d) all of the pages (total unknown) of "Plaintiffs' [sic] Response to Defendant's Motion for Summary Judgment" (Docket No. 586); (e) all of the pages (total unknown) of Plaintiff's Statement of Contested Facts and Plaintiff's Undisputed Facts (Docket No. 586-1); (f) all of the Declaration of Sigrid McCawley (total pages unknown) (Docket No. 586-2); and (g) all of Plaintiff's Exhibits 1-50 (Docket No. 586-3).[9]  Rather, Giuffre thinks that Mr. Cernovich must show why it was inappropriate to file these documents under seal.  That is not how this works.

Plaintiff cites to *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979) for the proposition that a protective order should not be set aside absent improvidence or a compelling need, but it is inapposite here.  *See* Opposition at p. 18.  In *Martindell*, the issue was direct access to deposition transcripts unrelated to adjudication of the merits of the case.  *See* 594 F.2d at 292.  Here, in contrast, the parties procured discovery under a protective order that "by its very terms was applicable solely to the pretrial stages of the litigation," such that sealing was not automatic under Docket Entry No. 62, even as modified.  *In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 147 (2d Cir. 1987) (distinguishing *Martindell*), *certiorari denied* 484 U.S. 953 (1987). Thus, any "reliance on such a sweeping, temporary protective order simply was misplaced." *Id.*; *see also SEC v. TheStreet.com*, 273 F.3d 222, 231 (2d Cir. 2001) (observing the presumption against access to documents produced pursuant to a protective order where there was reasonable

---

[8]   Plaintiff appears to have tallied these as "nearly 700 pages of exhibits".  Opposition at p. 16.
[9]   Mr. Cernovich presumes Defendant will file her reply brief under seal as well, similarly without making the requisite demonstration.

reliance, per *Martindell*, does not withstand the presumption in favor of access to judicial documents).  Giuffre's only argument for maintaining the seal on these records is reliance on an order that did not automatically seal the documents in question, where no one has attempted to justify the seal.  This does not trump Mr. Cernovich's First Amendment rights or the rights of the general public.

### 2.2.1   Summary judgment pleadings are judicial documents which are presumptively accessible to the public

Contrary to Plaintiff's false assertion, Mr. Cernovich is not seeking a "one-sided" unsealing (Opposition at p. 12).  He expressly sought to unseal all documents "filed or *to be filed* under seal in relation to" the summary judgment motion.  *See* Notice of Motion (Docket No. 550) (emphasis added).  At the time the motion was filed, Giuffre had not yet filed her opposition, but, by its terms, that opposition and all other filings are encompassed in the relief requested.  Mr. Cernovich may or may not seek to unseal the documents that "are substantially the same as those Dershowitz sought to publish" (Opposition at p. 12); he has no way of knowing what Prof. Dershowitz sought, nor is it of any event to him.  Nonetheless, Prof. Dershowitz sought to unseal documents during the course of discovery, and appears to have a personal interest in it (which is not to delegitimize his right to access either).  This is entirely different from Mr. Cernovich only seeking to unseal the documents made part of the summary judgment pleadings.

Plaintiff argues that the sealed documents do not "directly affect adjudication of this case" (Opposition at p. 16) based on her assertion that she will defeat summary judgment. This is internally inconsistent.  If she defeats summary judgment, that most certainly directly affects adjudication of the case.  The summary judgment documents will, in whole or in part, contribute to the Court's disposition of the summary judgment motion.  Moreover, materials submitted in connection with motions for summary judgment, regardless of their merit or the ultimate disposition, are precisely those documents to which the right of public access attaches. *See Lugosch v. Pyramid Co.*, 435 F.3d 110, 122-23 (2d Cir. 2006) ("As a matter of law, then, we

hold that the contested documents – by virtue of having been submitted to the court as supporting material in connection with a motion for summary judgment – are unquestionably judicial documents under the common law.")[10]

### 2.2.2   Plaintiff has not met her burden of showing a seal is appropriate

Although Plaintiff suggests that Mr. Cernovich has the burden of making a showing to unseal (Opposition at pp. 17-20), the burden actually lies with the party seeking to deny public access.  *See In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 222-23 (S.D.N.Y. 2006) ("a party seeking a protective order sealing trial, other court hearings, or motions and accompanying exhibits filed with the court must satisfy a more demanding standard of good cause").  Plaintiff has failed to demonstrate good cause.

In this Circuit, a party wishing to foreclose the First Amendment right of access must:

[1] "advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure."

*N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 304 (2d Cir. 2011).  Plaintiff has not met these factors.

As to the first factor, Plaintiff seems to proffer the following reasons the documents should be sealed:  the protection of minor victims of sex crimes from further trauma and embarrassment; and the encouragement of such victims to come forward and testify in a truthful and credible manner.  Even these noble reasons were found insufficient by the Supreme Court to deny journalists' First Amendment right of access.  *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607, 102 S. Ct. 2613, 2620 (1982); accord *N.Y. Civ. Liberties Union*, 684 F.3d at 303-06 (observing that *Globe Newspaper* barred automatic closure whenever minors testified,

---

[10]   Curiously, Plaintiff implies that she will not seek to seal the courtroom for trial should she successfully oppose summary judgment.  Opposition at p. 22.  Presumably, the parties would submit the same evidence and testimony at trial as they do for summary judgment, as a jury would need to weigh the disputed evidence and the credibility of the witnesses.  This is precisely what makes summary judgment pleadings judicial documents, for the very same evidence and testimony may be what the Court uses to award judgment to Defendant when there is no genuine issue of material fact in dispute.  If Plaintiff would have the trial open, she undermines her entire opposition to Mr. Cernovich's motion, as she evidently has no problem with this information being a matter of public record.

but rather required a case-by-case determination).   Furthermore, Plaintiff provides no explanation as to how this interest would actually be implicated by unsealing the documents.

With respect to the second factor, as stated above, Mr. Cernovich does not wish to expose Plaintiff to further trauma or embarrassment.   Upon review of the documents, Mr. Cernovich may well decide not to publish some of the materials.[11]   The First Amendment right of access, however, is paramount.   The existing sealing order, which permitted the parties to file all of the material under seal at their own, not the Court's, discretion, is overbroad.

With respect to the third factor, previous alternatives were in place, where the parties could propose narrowly tailored redactions.   The parties have since disregarded this approach and decided to seal entire pleadings without explanation or justification.   And, as noted, there have been no specific findings by the Court, susceptible to appellate review, as to particular sealed material, as required by the fourth factor.

**3.0    Conclusion**

Mr. Cernovich is sympathetic to Plaintiff's plight.   However, when the Article III power of the Court is invoked, "access to testimony and documents" makes monitoring necessary to instill in the public "confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings."   *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).   Mr. Cernovich is certainly supportive of gaining this access without causing further trauma to Plaintiff. Regardless of Plaintiff's purported interest in confidentiality, however, the public is entitled to know what the Court is adjudicating especially where, as here, the allegations are part of a matter of great public concern.

---

[11]    In fact, he considers the sordid details of Ms. Giuffre's abuse to be the least newsworthy elements in this story.

Dated: February 9, 2017.                    Respectfully submitted,

                                            /s/ Jay M. Wolman
                                            Jay M. Wolman (JW0600)
                                            RANDAZZA LEGAL GROUP, PLLC
                                            100 Pearl Street, 14th Floor
                                            Hartford, CT 06103
                                            Tele:   702-420-2001
                                            Fax:    305-437-7662
                                            Email: ecf@randazza.com

                                            *Attorneys for Proposed Intervenor,*
                                            *Michael Cernovich d/b/a Cernovich Media*

CASE NO. 15-cv-7433 (RWS)

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of February 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

/s/ Jay M. Wolman
Jay M. Wolman