UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/27/17

-------------------------------------X

VIRGINIA GIUFFRE,

                Giuffre,                  15 Civ. 7433

   -against-

                                      OPINION

GHISLAINE MAXWELL,

                Maxwell.

-------------------------------------X

A P P E A R A N C E S:

       Counsel for Giuffre

       BOIES, SCHILLER & FLEXNER LLP
       401 East Las Olas Boulevard, Suite 1200
       Fort Lauderdale, FL 33301
       By:   Sigrid S. McCawley, Esq.
            Meredith L. Schultz, Esq.

       Counsel for Maxwell

       HADDON, MORGAN AND FOREMAN, P.C.
       150 East Tenth Avenue
       Denver, CO 80203
       By:   Laura A. Menninger, Esq.
            Jeffrey S. Pagliuca, Esq.

**Sweet, D.J.**

The defendant Ghislaine Maxwell ("Maxwell" or the "Maxwell") has moved pursuant to Rule 56, Fed. R. Civ. P., for summary judgment dismissing the complaint of plaintiff Virginia L. Giuffre ("Giuffre" or the "Giuffre") alleging defamation. Upon the facts and conclusions set forth below, the motion is denied.

The contested facts derived from discovery subject to the Protective Order of March 17, 2016 have been redacted.

## I.  Prior Proceedings

Since the filing of the complaint on September 21, 2015, setting forth Giuffre's claim of defamation by Maxwell, this action has been vigorously litigated, as demonstrated by the 704 docket entries as of March 8, 2017. At issue is the truth or falsity of a January 2015 statement issued by Maxwell. Discovery has proceeded, a joint pretrial order has been filed, and the action is set for trial on May 15, 2017. The instant motion was heard and marked fully submitted on February 16, 2017.

**II.    The Facts**

The facts have been set forth in Maxwell's Memorandum of Law in Support of Maxwell's Motion for Summary Judgment, Southern District of New York, Local Rule 56.1; Giuffre's Statement of Contested Facts and Giuffre's Undisputed Facts; and Maxwell's Reply to Giuffre's Statement of Contested Facts and Giuffre's Undisputed Facts pursuant to Local Civil Rule 56.1. They are not in dispute except as noted below.



































































[redacted]

[redacted]

[redacted]

[redacted]

37















45

46







.







### III.   The Applicable Standard

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

52

*Id.* The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting *Anderson*, 477 U.S. at 249). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

While the moving party bears the initial burden of showing that no genuine issue of material fact exists, *Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005), in cases where the non-moving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "It is ordinarily sufficient for the movant to point

to a lack of evidence . . . on an essential element of the non-
movant's claim . . . . [T]he nonmoving party must [then] come
forward with admissible evidence sufficient to raise a genuine
issue of fact for trial . . . ." *Jaramillo v. Weyerhaeuser Co.*,
536 F.3d 140, 145 (2d Cir. 2008) (internal citations omitted);
*see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d
14, 18 (2d Cir. 1995) ("Once the moving party has made a
properly supported showing sufficient to suggest the absence of
any genuine issue as to a material fact, the nonmoving party ...
must come forward with evidence that would be sufficient to
support a jury verdict in his favor").

## IV. The Motion for Summary Judgment on Republication Grounds is Denied

Maxwell has moved for summary judgment dismissing
Giuffre's complaint on the grounds that Maxwell is not liable
for the republication of her Press Release by the media. Because
as a matter of law the issuer of a press release is responsible
for its publication, the motion is denied.

In New York, liability for a republication "must be
based on real authority to influence the final product." *Davis*

54

*v. Costa-Gavras*, 580 F. Supp. 1082, 1096 (S.D.N.Y. 1984); *see also Hoffman v. Landers*, 146 A.D.2d 744, 747 (N.Y. App. Div. 2d Dep't 1989) ("One who makes a defamatory statement is not responsible for its recommunication without his authority or request by another over whom he has no control."). Where a defendant "had no actual part in composing or publishing," he cannot be held liable "without disregarding the settled rule of law that no man is bound for the tortious act of another over whom he has not a master's power of control." *Davis*, 580 F. Supp. at 1096 (internal quotation marks and citation omitted). The New York Court of Appeals summarized New York's republication liability standard in *Geraci v. Probst*, 938 N.E.2d 917 (N.Y. 2010), stating that

> one who . . . prints and publishes a libel[] is
> not responsible for its voluntary and
> unjustifiable repetition, without his authority
> or request, by others over whom he has no control
> and who thereby make themselves liable to the
> person injured, and that such repetition cannot
> be considered in law a necessary, natural and
> probable consequence of the original slander or
> libel.

938 N.E.2d at 921 (internal quotation marks and citation omitted). Thus, "conclusive evidence of lack of actual authority [is] sufficiently dispositive that the [court] 'ha[s] no option but to dismiss the case . . . .'" *Davis*, 580 F. Supp. at 1096

(quoting *Rinaldi v. Viking Penguin, Inc.*, 420 N.E.2d 377, 382
(N.Y. 1981)).

However, New York law assigns liability to individuals
for the media's publication of press releases. New York
appellate courts have held that an individual is liable for the
media publishing that individual's defamatory press release. *See*
*Levy v. Smith*, 132 A.D.3d 961, 962-63 (N.Y. App. Div. 2d Dep't
2015) ("Generally, [o]ne who makes a defamatory statement is not
responsible for its recommunication without his authority or
request by another over whom he has no control . . . . Here,
however, . . . the appellant intended and authorized the
republication of the allegedly defamatory content of the press
releases in the news articles."); *see also* RESTATEMENT (SECOND) OF
TORTS § 576 (1977) ("The publication of a libel or slander is a
legal cause of any special harm resulting from its repetition by
a third person if . . . the repetition was authorized or
intended by the original defamer, or . . . the repetition was
reasonably to be expected.")

The facts as set forth above establish that Maxwell
approved the Press Release. The Press Release was sent to
between six and 30 media representatives by Gow as an employee

56

of Acuity Reputation, the public relations firm hired by
Maxwell. The initial sentence of the Press Release - "Please
find attached a quotable statement on behalf of Maxwell" -
communicates Maxwell's authorization for the media recipients of
the Press Release to publish it. *See Nat'l Puerto Rican Day
Parade, Inc. v. Casa Pubs., Inc.*, 79 A.D.3d 592, 595 (N.Y. App.
Div. 1st Dep't 2010) (affirming the refusal to dismiss
defamation counts against a defendant who "submitted an open
letter that was published in [a] newspaper, and that [the
defendant] paid to have the open letter published," finding that
the defendant "authorized [the newspaper] to recommunicate his
statements.").

Maxwell has cited *Geraci v. Probst* in support of her
position, but *Geraci* is distinguishable from the instant action.
In *Geraci*, the defendant sent a letter to the Board of Fire
Commissioners, and, more than three years later, a newspaper
published the letter. The court held that the defendant was not
liable for that belated publication, "made years later without
his knowledge or participation." 938 N.E.2d at 919. Here, unlike
in *Geraci*, the Press Release was not published "without [her]
authority or request," but rather with Maxwell's authority and

by her express request. Gow's testimony establishes Maxwell's
authority and control over the Press Release:

> Q. When you sent that email were you acting pursuant to
> Ms. Maxwell's retention of your services?
>
> A. Yes, I was
>
>    \*\*\*
>
> Q. The subject line does have "FW" which to me indicates
> it's a forward. Do you know where the rest of this
> email chain is?
>
> A. My understanding of this is: It was a holiday in the
> UK, but Mr. Barden was not necessarily accessible at
> some point in time, so this had been sent to him
> originally by Ms. Maxwell, and because he was
> unavailable, she forwarded it to me for immediate
> action. I therefore respond, "Okay, Ghislaine, I'll go
> with this."
>
> It is my understanding that this is the agreed
> statement because the subject of the second one is
> "Urgent, this is the statement" so I take that as an
> instruction to send it out, as a positive command:
> "This is the statement."

Maxwell also cites *Davis v. Costa-Gavras*, involving a
libel claim against an author who wrote a book about a military
coup in Chile. 580 F. Supp. at 1085. Years after the author
published the book, a third-party publishing house republished
the book in paperback form and a third-party filmmaker released
a movie based on the book. The book author did not actually
participate in the republications, though he was aware of the

projects. The court held that the author of the book could not
be held liable for the republications, explaining that a "party
who is 'innocent of all complicity' in the publication of a
libel cannot be held accountable." 580 F. Supp. at 1094
(internal citations omitted). The court further noted that
"active participation in implementing the republication
resurrects the liability." *Id.* Likewise, in *Karaduman v.
Newsday, Inc.*, 416 N.E.2d 557 (1980), also cited by Maxwell, the
court held that reporters of a series of articles on narcotics
trade "cannot be held personally liable for injuries arising
from [the] subsequent republication in book form absent a
showing that they approved or participated in some other manner
in the activities of the third-party republisher." *Id.* at 559-
560. However, the court explicitly noted that this result was
required because "the record [wa]s barren of any concrete
evidence of the reporters' involvement in the republication of
the newspaper series." *Id.* at 540.

Here, there is evidence in the record that Maxwell
"actively participated" in influencing the media to publish the
Press Release, *Davis*, 580 F. Supp. at 1094, and "approved" of
and sought the publication of the press release, *Karaduman*, 416
N.E.2d at 560. Maxwell retained a public relations media

59

specialist. The Press Release was sent by Maxwell's express request. Gow's testimony about the process leading up to the dissemination of the Press Release indicates that Maxwell did, indeed, "authorize or intend" for the media recipients to publish the statement. Because there are sufficient facts to demonstrate Maxwell's authority and control over the publication of the Press Release, Maxwell's liability for the Press Release's publication survives the motion for summary judgment.

Maxwell has additionally asserted that subjecting her to liability for republication is "particularly unfair" because excerpts of the Press Release, rather than the whole statement, were published. Def.'s Reply at 9. Maxwell cites to *Rand v. New York Times Co.*, 75 A.D.2d 417 (N.Y. App. Div. 1st Dep't 1980), in which a newspaper paraphrased the defendant's opinion, essentially "excis[ing] the opinion from the context in which it was given." *Id.* at 424. No similar alteration, sanitization, hyperbolizing, or paraphrasing of Maxwell's statements has been established here. Nor does the record establish that any statements of Maxwell's were taken out of context; rather, they were directly quoted, accurately and unchanged. The publication of Maxwell's statement that Giuffre's claims are "obvious lies"

does not distort or misrepresent the message Maxwell intended to convey to the public with the Press Release.

Because the purpose of the issuance of the Press Release was publication, Maxwell is liable for its content and the motion for summary judgment on the grounds of non-liability for republication is denied.

## V. The Motion for Summary Judgment to Dismiss the Defamation Claim on the Ground of Substantial Truth is Denied

Maxwell has asserted that the Press Release is substantially true and that the defamation claim should therefore be dismissed. *See* Def.'s Br. at 39. Whether or not Giuffre lied about Maxwell's involvement in the events that Giuffre has alleged took place is the intensely contested factual issue that is the foundation of this action. Accordingly, summary judgment is not appropriate. See *Mitre Sports Intern. Ltd. v. Home Box Office, Inc.*, 22 F. Supp. 3d 240, 255 (S.D.N.Y. 2014) (denying summary judgment because it would require the Court to decide disputed facts to determine whether the statement at issue was substantially true); *Da Silva v. Time Inc.*, 908 F. Supp. 184, 187 (S.D.N.Y. 1995) (denying motion for summary judgment because there was a genuine issue of

material fact as to whether defamatory photo and caption were
true).

Under New York law, "truth is an absolute, unqualified
defense to a civil defamation action" and "'substantial truth'
suffices to defeat a charge of libel." Jewell v. NYP Holdings,
Inc., 23 F. Supp. 2d 348, 366 (S.D.N.Y. 1998) (internal
quotation marks and citations omitted). A statement is
substantially true if the statement would not "have a different
effect on the mind of the reader from that which the pleaded
truth would have produced." Id. (quoting Fleckenstein v.
Friedman, 193 N.E. 537, 538 (N.Y. 1934)). Thus, "it is not
necessary to demonstrate complete accuracy to defeat a charge of
libel. It is only necessary that the gist or substance of the
challenged statements be true." Printers II, Inc. v.
Professionals Publishing, Inc., 784 F.2d 141, 146 (2d Cir.
1986); see also Korkala v. W.W. Norton & Co., 618 F.Supp. 152,
155 (S.D.N.Y. 1985) ("Slight inaccuracies of expression are
immaterial provided that the defamatory charge is true in
substance.") (internal quotation marks and citation omitted);
Sharon v. Time, Inc., 609 F.Supp. 1291, 1294 (S.D.N.Y. 1984)
("Defendant is permitted to prove the substantial truth of this
statement by establishing any other proposition that has the

same 'gist' or 'sting' as the original libel, that is, the same
effect on the mind of the reader.").

The Honorable Loretta A. Preska has noted that cases
addressing whether a statement is substantially true "fall along
a broad spectrum." *Jewell*, 23 F. Supp. at 367. There are cases
in which a statement is non-actionable because it is completely
true. *See, e.g.*, *Carter*, 233 A.D.2d 473, 474 (N.Y. App. Div. 2d
Dep't 1996) (claim that defendant committed libel by informing
the authorities that plaintiff was endorsing checks made payable
to the defendant and depositing them in plaintiff's account held
non-actionable where plaintiff had in fact endorsed checks made
payable to the defendant). There are cases where "one struggles
to identify any area of ambiguity as to truth." *Jewell*, 23 F.
Supp. at 368; *see, e.g.*, *Miller v. Journal-News*, 211 A.D.2d 626,
627 (N.Y. App. Div. 2d Dep't 1995) (statement that plaintiff was
"suspended" substantially true where plaintiff was placed on
"administrative leave"). There are cases where the line between
the statement and the admitted truth is more tenuous, but the
overall "gist" cannot be said to be substantially different.
*See, e.g.*, *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298,
302-03 (2d Cir. 1986) (holding that statement which implied that
plaintiff was then currently an adulterer was substantially true

63

where plaintiff had ceased being an adulterer but had "unabashedly committed adultery" for thirteen of seventeen years). Finally, there are "those cases in which a defendant simply asks too much in asserting that a statement is substantially true because the difference between the two is plainly substantial." *Jewell*, 23 F. Supp. at 368. For example, the court in *Da Silva*, 908 F. Supp. at 186-87, held that a photograph of plaintiff which identified her as a prostitute was not substantially true where the plaintiff had been a prostitute for some six years but was not at the time of publication.

After reviewing this spectrum of cases, the facts upon which Maxwell bases her argument are insufficient to allow this Court to find substantial truth as a matter of law. A material dispute of fact exists as to the "admitted truth" or the "reality" in this case. █████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████ The details and significance of the facts offered are highly contested, and therefore cannot establish the "substantial truth" of the Press Release. "[R]easonable jurors could conclude that the statements

64

. . . are not substantially true." *Boehner v. Heise*, 734 F.
Supp. 2d 389, 399 (S.D.N.Y. 2010).

The motion for summary judgment to dismiss the
defamation on the ground of substantial truth is denied as not
having been established by undisputed material facts.

## VI.  The Defamation Claim is Not Barred by New York Law

Maxwell has moved to dismiss the complaint on the
ground that the Press Release is opinion and protected by the
pre-litigation privilege under New York law. Because New York
law does not support Maxwell's position, the motion for summary
judgment based on the characterization of the Press Release as
opinion and as protected by a pre-litigation privilege is
denied.

*1.    The Press Release is Not Opinion.*

As previously held, Maxwell's statement that Giuffre's
claims of sexual assault are lies is not an expression of
opinion:

65

> First, statements that Giuffre's claims 'against
> [Maxwell] are untrue,' have been 'shown to be
> untrue,' and are 'obvious lies' have a specific
> and readily understood factual meaning: that
> Giuffre is not telling the truth about her
> history of sexual abuse and [Maxwell]'s role, and
> that some verifiable investigation has occurred
> and come to a definitive conclusion proving that
> fact. Second, these statements (as they
> themselves allege), are capable of being proven
> true or false, and therefore constitute
> actionable fact and not opinion. Third, in their
> full context, while [Maxwell]'s statements have
> the effect of generally denying Giuffre's story,
> they also clearly constitute fact to the reader.

*Giuffre v. Maxwell*, 165 F. Supp. 3d 147, 152 (S.D.N.Y. 2016).

This Court further concluded that

> [Giuffre] cannot be making claims shown to be
> untrue that are obvious lies without being a
> liar. Furthermore, to suggest an individual is
> not telling the truth about her history of having
> been sexually assaulted as a minor constitutes
> more than a general denial, it alleges something
> deeply disturbing about the character of an
> individual willing to be publicly dishonest about
> such a reprehensible crime. [Maxwell]'s
> statements clearly imply that the denials are
> based on facts separate and contradictory to
> those that [Giuffre] has alleged.

*Id.*

Maxwell argues that the "context" of the entire
statement "tested against the understanding of the average
reader" should be that of a press release as a whole being read
only by journalists. Def.'s Br. at 22 (quoting *Aronson v.
Wiersma*, 483 N.E.2d 1138, 1139 (1985)). However, the ultimate

66

audience for a press release is the public. The motion to
dismiss opinion clearly addressed this issue:

> Sexual assault of a minor is a clear-cut issue;
> either transgression occurred or it did not.
> Either Maxwell was involved or she was not. The
> issue is not a matter of opinion, and there
> cannot be differing understandings of the same
> facts that justify diametrically opposed opinion
> as to whether Maxwell was involved in Giuffre's
> abuse as Giuffre has claimed. Either Giuffre is
> telling the truth about her story and Maxwell's
> involvement, or Maxwell is telling the truth and
> she was not involved in the trafficking and
> ultimate abuse of Giuffre.

*Giuffre*, 165 F. Supp. at 152.

Maxwell has urged that these conclusions at the motion
to dismiss stage should be revisited and revised when
considering the summary judgment motion since the standard for
deciding a Rule 12(b)(6) motion is different from the standard
for deciding a Rule 56 motion. In deciding a 12(b)(6) motion,
the court must accept as true the factual allegations and draw
all inferences in the plaintiff's favor; a plaintiff need only
state a claim that is "plausible on its face." *Id.* at 149
(internal quotation marks and citation omitted). In contrast,
for a Rule 56 motion, the plaintiff defending the motion may not
"rest on [the] allegations" in her complaint. *Anderson*, 477 U.S.
at 249.

67

In deciding its motion to dismiss opinion, the Court relied on *Davis v. Boeheim*, 22 N.E.3d 999 (2014), and held that the three allegedly defamatory statements in the Press Release have a specific and readily understood factual meaning, are capable of being proven true or false, and "clearly constitute fact to the reader." *Giuffre*, 165 F. Supp. at 152. The Court determined that "[t]he dispositive inquiry" for purposes of deciding whether an allegedly defamatory statement is fact or nonactionable opinion is whether "a reasonable reader could have concluded that the statements were conveying facts about the plaintiff." *Id.* at 151 (internal quotation marks and citation omitted). To answer that inquiry, three factors enumerated in *Davis* were applied. *See id.* These three factors are the same as the four factors in *Immuno AG v. Moor-Jankowski*, 567 N.E.2d 1270 (N.Y. 1991); the difference is that the *Davis* court collapsed the *Immuno AG's* third and fourth factors into one. *See Davis*, 22 N.E.3d at 1005. "[T]he critical aspect of the inquiry, as articulated in the third factor set forth above, is to view the statements in context." *Jewell*, 23 F. Supp. 2d at 377. This contextual analysis "proceeds on two levels, the 'broader social setting' of the statements, as well as their 'immediate context.'" *Id.* (citing *Immuno*, 567 N.E.2d at 1280).

Maxwell acknowledges that the Court properly applied *Davis* at the motion to dismiss stage, but argues that the third factor, especially, benefits from the evidence presented in the motion for summary judgment. *See* Def.'s Br. at 32. In other words, Maxwell argues that "the Court did not have the 'full context'" of the Press Release or the "broader social context and surrounding circumstances of the statement." *Id.* At the motion to dismiss stage, the text of the Press Release had not yet been produced, nor had there been production of emails or deposition testimony regarding the Press Release.

The developed record necessitates the same conclusion as at the motion to dismiss stage. The context and surrounding circumstances remain the same. The publication was intended by Maxwell to reach the average reader, not simply the reporters, Barden's intent, a factual issue in contest, notwithstanding. The issue of truth or falsity is a factual determination, not a matter of opinion. *See Giuffre*, 165 F. Supp. 3d at 152 ("[S]tatements that Giuffre's claims 'against [Maxwell] are untrue,' have been 'shown to be untrue,' and are 'obvious lies' have a specific and readily understood factual meaning.").

2.    *The Pre-Litigation Privilege is Inapplicable.*

Maxwell has contended that the pre-litigation privilege as enunciated in *Front, Inc. v. Khalil*, 28 N.E.3d 15, 16 (N.Y. 2015), applies. *See* Def.'s Br. at 33.

"A privileged communication is one which, but for the occasion on which it is uttered, would be defamatory and actionable." *Park Knoll Assocs. v. Schmidt*, 451 N.E.2d 182, 184 (N.Y. 1983). "[I]t is well-settled that statements made in the course of litigation are entitled to absolute privilege." *Front*, 28 N.E.3d at 18. The privilege that protects statements made in the course of litigation "can extend to preliminary or investigative stages of the process, particularly where compelling public interests are at stake." *Rosenberg v. MetLife, Inc.*, 866 N.E.3d 439, 443 (N.Y. 2007). In *Front*, the New York Court of Appeals ruled that the privilege for "statements made by attorneys prior to the commencement of litigation" is qualified rather than absolute. *Id.* at 16. Specifically, the Court held that an attorney's statements made before litigation has commenced are privileged if (1) the attorney has "a good faith basis to anticipate litigation" and (2) the statements are "pertinent to that anticipated litigation." *Id.* at 20.

70

The anticipated litigation, according to the Press
Release, was "redress at the repetition of such old defamatory
claims." *See* Press Release. According to Barden, Maxwell's
lawyer, he participated in the preparation of the Press Release,
the purpose of the Press Release was to dissuade the media from
publishing Giuffre's allegations, and the implication of the
Press Release was that any redress sought by Maxwell would be
against the media. Giuffre has disputed Barden's claim that the
Press Release was his own statement.

Certain of the cases cited by Maxwell in support of
the privilege can be distinguished, according to Giuffre, in
that they involve communications to or from parties to the
ultimate litigation. *See, e.g.*, *Kirk v. Heppt*, 532 F. Supp. 2d
586, 593 (S.D.N.Y. 2008) (the communication at issue was made by
an attorney's client to the attorney's malpractice carrier
concerning the client's justiciable controversy against the
attorney over which the clients actually sued); *Black v. Green
Harbour Homeowners' Ass'n, Inc.*, 19 A.D.3d 962, 963 (N.Y. App.
Div. 3d Dep't 2005) (privilege applied to a letter sent by a
home owner's association board of directors to the association's
members informing them of the status of litigation to which the

71

association was a party). Giuffre contends that "there was no
statement made by anyone before the commencement of litigation
because litigation never commenced." *See* Pl.'s Opp'n at 42.

Here, the communication at issue was sent to members
of the media, and no litigation took place between Maxwell and
the media recipients of the Press Release.

However, the pre-litigation privilege is not limited
to statements between parties and their lawyers. "While the
communications at issue in *Front* were among lawyers and
potential parties, the New York Court of Appeals did not
explicitly require the recipient of the challenged statements to
be a lawyer or potential party." *Feist v. Paxfire, Inc.*, No. 11
CIV. 5436 (LGS), 2017 WL 177652, at *5 (S.D.N.Y. Jan. 17, 2017);
*see Front*, 28 N.E.3d at 16-17. The Second Circuit "summarily
rejected this interpretation when it applied *Front* to an
attorney's communications to the press." *See Tacopina v.
O'Keeffe*, 645 F. App'x 7, 8 (2d Cir. 2016) ("Even crediting [the
plaintiff]'s allegation that [the attorney] shared the affidavit
with the Daily News before filing it in court, Tacopina has
still not sustained his burden of showing that the statements
were not pertinent to a good faith anticipated litigation.").

72

Though a statement made to a non-party may be privileged, the pre-litigation privilege does not apply here because the Press Release cannot be considered a "statement[] made by [an] attorney." *Front*, 28 N.E.3d at 16. Whether Maxwell's attorney, Barden, had a hand in drafting the Press Release, and the extent to which he may have been involved, is a disputed issue of fact. The record evidence establishes that, regardless, the Press Release is properly attributable to Maxwell. Maxwell retained a public relations firm and sent her representative there, Gow, a forwarded email with the statements that were to be used in the Press Release. Maxwell instructed Gow to send it, as he testified in his deposition. While Maxwell herself did not disseminate the email to the media recipients, neither did Barden. The statement was sent out by Gow.

Additionally, the alleged defamatory statements in the Press Release were attributed to Maxwell, and not to her attorney or his agents. The email stated that the Press Release was a "statement on behalf of" Maxwell and notified the media recipients that "[n]o further communication will be provided by her [Maxwell] on this matter." There is no evidence in the email

that the Press Release was anything near an attorney's statement; Barden was not even copied on the email.

The pre-litigation privilege is intended to protect attorneys from defamations claims "so that those discharging a public function may speak freely to zealously represent their clients without fear of reprisal or financial hazard." *Id.* at 18. Where the statement cannot be attributed to an attorney, there is no justification for protecting it by privilege.

In addition, as this Court concluded in denying Maxwell's motion to dismiss, "[t]here is no qualified privilege under New York law when such statements are spoken with malice, knowledge of their falsity, or reckless disregard for their truth." *Giuffre*, 165 F. Supp. 3d at 155 (internal quotation marks and citation omitted). It is Giuffre's contention that Maxwell knew the statements were false because she engaged in and facilitated the sexual abuse of Giuffre. Therefore, according to Giuffre, they were not made in good faith anticipation of litigation, and instead were made for the inappropriate purpose of "bully[ing]," "harass]ment]," and "intimid[ation]." *See Front*, 28 N.E.3d at 19 (2015). According to Giuffre, there is ample record evidence that Maxwell acted

74

with malice in issuing the Press Release, thereby making the
pre-litigation privilege inapplicable.

Because of the existence of triable issues of material
fact rather than opinion and because the pre-litigation
privilege is inapplicable, the motion for summary judgment is
denied.

**VII. Conclusion**

For the reasons set forth above, the motion for summary judgment is denied.

The parties are directed to jointly file a proposed redacted version of this Opinion consistent with the Protective Order or notify the Court that none are necessary within one week of the date of receipt of this Opinion.

It is so ordered.

**New York, NY**
**March 27, 2017**

ROBERT W. SWEET
**U.S.D.J.**

76