```
     HB85giuA

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    VIRGINIA L. GIUFFRE,

4                 Plaintiff,              New York, N.Y.

5            v.                           15 Civ. 7433 (RWS)

6    GHISLAINE MAXWELL,

7                 DEFENDANT.

8    ------------------------------x

9                                         November 8, 2017
                                          11:15 a.m.
10
     Before:
11
                     HON. ROBERT W. SWEET,
12
                                          District Judge
13

14
                          APPEARANCES
15

16   BOIES, SCHILLER & FLEXNER, LLP
          Attorneys for Plaintiff
17   BY:  SIGRID S. McCAWLEY

18   HADDON, MORGAN & FOREMAN, P.C.
          Attorneys for Defendant Maxwell
19   BY:  LAURA A. MENNINGER
          JEFFREY S. PAGLIUCA
20
     STEPTOE & JOHNSON, LLP
21        Attorneys for Defendant Epstein
     BY:  MICHAEL C. MILLER
22        JUSTIN CHU
          MICHAEL KEOUGH
23            -and-
          DARREN INDYKE
24

25
```

1            (Case called)
2            THE COURT:  I will hear from the movant.
3            MR. MILLER:  Good morning, your Honor.  Mike Miller
4    from the law firm of Steptoe & Johnson, and just for the
5    record, Justin Chu and Michael Keough, and Darren Indyke who
6    represents Mr. Epstein personally is also here on our side.
7            THE COURT:  Thank you.
8            MR. MILLER:  Your Honor, we move to intervene and for
9    a modification of the protective order issued in this case.
10           There has been no objection made to our motion to
11   intervene, no objection to our motion to modify except with
12   respect to the scope.  It is my understanding that the
13   defendants in that action, the Maxwell defendants, take no
14   position on our application.  Judge Koeltl has expressed a
15   willingness to consider the information that we are seeking by
16   way of this modification.
17           THE COURT:  Incidentally, as I understand it, what we
18   are talking about are the subpoenaed documents of the plaintiff
19   in the other case.  How do you all refer to it?
20           MR. MILLER:  We refer to it as Jane Doe.
21           THE COURT:  Okay.
22           MR. MILLER:  Let me back up and give you background.
23           THE COURT:  No, no.  Thanks very much.
24           MR. MILLER:  Okay.
25           THE COURT:  But everything is resolved except for the

HB85giuA

documents which were subpoenaed --

MR. MILLER: Well, so --

THE COURT: -- in the case which I had?

MR. MILLER: Well, yes and no.

The deposition transcript, they've consented to a modification with respect to the deposition transcript. A number of specific documents they've consented to a modification with respect to those documents. They've objected to modification with respect to two categories. One set of them are a bunch of photographs. I have looked at them, nothing prurient about them, they all predate the statute of limitations time period and were used during the deposition.

THE COURT: Yes, but generically I am correct, am I not, it was stuff that was subpoenaed in my case and designated confidential?

MR. MILLER: I believe it was voluntarily produced, number one, and by Jane Doe after she filed.

THE COURT: Yes, but designated confidential by the plaintiff.

MR. MILLER: Well, interestingly enough, the plaintiff --

THE COURT: I know, switched. Yes.

MR. MILLER: -- withdrew their objection to the confidential designation.

THE COURT: Yes.

1     MR. MILLER:  Jane Doe and the plaintiff did that.
2     THE COURT:  Yes, but the defendant didn't agree with
3  that and so it never materialized.  Judicial estoppel?  Maybe.
4  Maybe.  But nobody has briefed that and who wants to go into
5  that thicket.
6     MR. MILLER:  I love judicial estoppel but I think we
7  have made the point, your Honor, in our brief that it is
8  somewhat disingenuous for them to argue --
9     THE COURT:  I understand that, but all I am telling
10 you to focus on is that it was covered by -- the material we
11 are talking about, whatever it is, I don't care what it is,
12 that material was designated as confidential in my case.
13    MR. MILLER:  Exactly, and that's why we are here.
14    THE COURT:  Okay.
15    MR. MILLER:  That's why we are here.
16    THE COURT:  And it is only those documentary, whatever
17 those documents are, photographs, whatever they are.
18    MR. MILLER:  Photographs and e-mails.
19    THE COURT:  Yes, okay.  That's what we are talking
20 about.
21    MR. MILLER:  It is a hundred percent what we are
22 talking about.
23    THE COURT:  Okay.
24    MR. MILLER:  As I mentioned, they already agreed
25 subject, obviously, your approval, that the deposition

1   transcript can be used in our case.  They also agreed that a
2   bunch of the e-mails can be used, it is just a small category
3   of the remainder.
4            THE COURT:  Gotcha.
5            MR. MILLER:  Judge Koeltl, as I mentioned, has
6   expressed a willingness to consider this information, he has
7   already adjourned our motion briefing twice pending resolution
8   of this motion before you.  All of these documents are clearly
9   eventually subject to discovery in the other case.  They're all
10  relevant to the motion to dismiss.  We provided you with a --
11           THE COURT:  Thank you very much.
12           MR. MILLER:  But so they're relevant to the issues
13  that have been raised in that substantial motion to dismiss.
14           THE COURT: Yes.  Good.  Maybe yes, maybe no.  Thank
15  you.  That's not my problem.
16           MR. MILLER:  We have just two quick observations.  We
17  are more than happy to have a protective order or
18  confidentiality order in the other case govern the material
19  that is really the subject of our application today.  We have
20  no problems, we just want to use it to support our motion to
21  dismiss, number one.  Number two, I just want to say as you
22  consider this application, do keep in mind, as we have
23  discussed, that Jane Doe and the plaintiff both objected to the
24  confidentiality designation in the first place; and secondly,
25  some of the documents --

1           THE COURT:  Wait a minute.  Say that again.

2           MR. MILLER:  Sure.

3           So, one of the documents that was submitted to the
4  Court in connection with this motion is a letter from counsel
5  for the defendant and the counsel for the defendant provided,
6  as an exhibit, a letter from the Boies Schiller firm which at
7  that time represented both the plaintiff and Jane Doe in your
8  action.  In that letter, very brief letter dated May 5th of
9  2017, it is a letter to Laura Menninger who is present in court
10 today.

11          THE COURT:  Yeah, yeah.  They withdrew.  Yeah, yeah.

12          MR. MILLER:  Exactly.  And that's the point I am
13 making.

14          THE COURT:  Yes, but that -- thanks very much but that
15 does not affect the designation which was made in my view
16 because it was not consented, was not resolved.

17          MR. MILLER:  Well, as we have mentioned in our brief,
18 the same parties that objected to the designation are now
19 seeking to enforce the designation.

20          THE COURT:  I recognize that.

21          MR. MILLER:  And amongst the documents --

22          THE COURT:  Parenthetically -- well, I don't want to
23 be rude.  You are sort of a new boy to this overall problem.  I
24 don't know what you have done to deserve this burden but, yes,
25 the switching of positions of parties is not a unique situation

1  in this entire circumstance, not very -- I mean, it has
2  happened before.  However, I get your -- I understand your
3  point.
4         MR. MILLER:  I am here looking to fight over a small
5  piece of the beach, and a small piece of the beach IS that
6  they've already agreed subject to your approval to a
7  modification with most of what we want and the stuff that they
8  do want to maintain confidentiality over was part of the
9  deposition transcript that they already have agreed to be
10 modified, subject to a modification, and, quite frankly, it is
11 just a reversal that I think should bear on the Court's
12 consideration of the merits of our application.
13        THE COURT:  Yes.
14        MR. MILLER:  Last -- pretty much last -- amongst the
15 documents that the plaintiff is arguing should now continue to
16 be covered by confidentiality are e-mails which show that the
17 very photographs that they're also trying to keep confidential
18 were emailed by Ms. Doe to the press at a point in time --
19        THE COURT:  To?
20        MR. MILLER:  To the media.
21        THE COURT:  Ah.
22        MR. MILLER:  When she was openly and notoriously
23 trying to peddle her story to the press.  And I am sure you are
24 going to say that that's not unique to that fact pattern
25 either.

1      THE COURT:  What an unusual circumstance.
2      MR. MILLER:  But, the e-mails tell the story of what
3  happened 10 years ago.  The e-mails talk about her
4  contemporaneous views of those things.  They attach the
5  photographs.  It is kind of absurd in a way.  We are asking for
6  a small modification so we can use these documents in support
7  of our motion to dismiss.  We are happy to be handcuffed up and
8  down the block in return for our ability to use it for any
9  other purpose.  All we want is to support the motion to dismiss
10 with these documents.
11     THE COURT:  Thank you very much.
12     MR. MILLER:  Thank you, your Honor.
13     Anybody else want to be heard?
14     MS. MENNINGER:  Your Honor, good morning.  On behalf
15 of Ms. Maxwell, Laura Menninger appearing.
16     THE COURT:  Welcome back.
17     MS. MENNINGER:  Thank you, your Honor.  It is good to
18 be back.
19     THE COURT:  Oh, well.
20     MS. MENNINGER:  I only want to make one small point
21 following upon Mr. Miller's argument.
22     We do take issue with the deposition of Jane Doe being
23 used in an unfettered way in the new Jane Doe case.  It is not
24 simply about the subpoenaed documents.  We did ask that her
25 deposition be designated confidential.  We have no problem with

the intervenors being allowed to intervene, being given access to those documents which they already have, but we do have a problem with that deposition transcript then becoming sort of used so generously should the Jane Doe case proceed past the motion to dismiss stage. We would ask that a protective order in that case mirror the one that your Honor signed in our case.

        MR. MILLER: We embrace that, your Honor.

        THE COURT: Yes. Let me ask you --

        MR. MILLER: Yes, your Honor?

        MS. McCAWLEY: Just making sure I get heard.

        THE COURT: Let me ask you, who designated the deposition as confidential?

        MS. MENNINGER: I believe both parties did, your Honor at the time of the deposition.

        THE COURT: One other question. What was the date of the settlement? In Giuffre. We are in Giuffre.

        MS. MENNINGER: I think it was May 11th or so.

        MS. McCAWLEY: That sounds about right.

        MS. MENNINGER: I don't have my calendar.

        MR. PAGLIUCA: Roughly May 11th, your Honor, somewhere in that time frame.

        THE COURT: It wasn't roughly, it was a date.

        MR. PAGLIUCA: I don't remember the exact date. It was a moving target for about a week before finalizing the agreement.

THE COURT: This I recognize but there is a date of settlement. It is relevant because of this counter-designation issue.

MS. MENNINGER: Yes, your Honor. I believe the case was dismissed somewhere later in May, approximately May 25th, but I know --

THE COURT: What was the date when I breathed a deep sigh of relief? What was that date? I don't care when you all agreed, when did it become public, the settlement?

MS. MENNINGER: Not until May 25th. We vacated the trial May 11th or so.

THE COURT: May 25th is the date that I was notified that the case was settled and it was dismissed.

MS. MENNINGER: Correct.

THE COURT: Is that right?

MS. MENNINGER: I believe so, your Honor. My calendar is electronic and I just don't have it.

THE COURT: There is a very simple solution. You could say to me, why don't I look at the docket. Leave that aside.

MS. MENNINGER: So, your Honor, we did ask in our letter, and I reask now that the deposition transcript which we did designate as confidential, I believe along with plaintiff and Jane Doe's counsel, asking for it to be held confidential, that it only be disseminated to the parties in the Jane Doe

1    case, not to any potential witness in that case because that

2    becomes then the exception that swallows the rule and it -- I

3    think we saw in the Giuffre matter that anybody could be a

4    potential witness, essentially.

5             MR. MILLER:  Your Honor, we have no objection to that.

6             THE COURT:  Yes, ma'am.

7             MS. McCAWLEY:  Hi, your Honor.  Good morning.

8             I would like to start by focusing on the fact that we

9    are not seeking this relief, obviously it is Mr. Epstein who is

10   a defendant in the Jane Doe 43 case, he is a non-party seeking

11   relief.  This issue has been before the Court two times

12   previously where a non-party has come before the Court seeking

13   to modify the protective order with respect to designations.

14            I also want to point out we do disagree with the

15   proposal by Maxwell's counsel with respect to a protective

16   order in the Koeltl case for a number of reasons.  One, Maxwell

17   has not appeared in that case, she has evaded service, and we

18   have had to go seek alternative service in that case so it

19   would be inherently unfair for counsel in this case to dictate

20   a protective order in that case which has not been considered

21   before the Court yet.  So, that, I take issue with.  Judge

22   Koeltl should have the ability to hear the parties out on a

23   protective order in that case, we should be able to make our

24   arguments for that protective order.  It shouldn't just be that

25   a protective order here, that they're adding layers to in that

1  case without us being able to raise it properly on behalf of
2  that client in that case.
3      So, with respect to that proposal, we disagree with
4  it.  We are not seeking to release the deposition transcript,
5  that is, Mr. Epstein and his group.  They have not participated
6  in discovery in the Koeltl case yet, it is at the motion to
7  dismiss stage, discovery is stayed.  When he says that the
8  Court's entertaining this, they sought the documents and he
9  said you are going to need to go to Judge Sweet because if you
10 have control of those documents but they're subject to a
11 protective order, I can't allow you to use them, you have to go
12 to Judge Sweet to seek that relief.
13     He wasn't encouraging them to utilize these documents
14 at the motion to dismiss stage so I want to make that clear.
15 This is just him allowing them to entertain that motion before
16 you for documents that they possess as a non-party who, mind
17 you, never produced any discovery in this case.  So, they want
18 to utilize documents they obtained from this case in a second
19 case while not producing anything themselves and not engaging
20 in discovery in that case at this time.  We have asked for the
21 deposition in that case of Mr. Epstein in order to hit these
22 issues of statute of limitations and jurisdiction.  They won't
23 agree to it.
24     So, we bend over backwards by trying to avoid a
25 hearing in front of you and allow them to have the pieces of

what they needed, they want it all and that's not acceptable. So, we are here before you, your Honor, it is a non-party, we don't believe that they're entitled to these documents. There is a number of reasons. First, your In Re: Teligent case which is a Second Circuit case that we cited in our papers that talks about modification to protective orders, you have cited that in your other opinions with respect to nonparties, they have not set forth a sufficient or compelling basis for the need for these documents. There will be discovery in Judge Koeltl's cases, they will get her deposition, we will get to take their deposition, and that's not an issue for this Court, that's an issue that will take place in that case.

Also, with respect to your's ruling in In Re: Giant, which was your order talking about what should be considered at the motion to dismiss stage, it shouldn't be outside the four corners of the complaint. That's what they're seeking to do but that is an issue for Judge Koeltl, not an issue for this case. Your Honor's decision here is simple. This is a non-party seeking to modify a protective order without a sound basis for doing so and that request should be denied, your Honor. So, I point you to your October 2nd order in response to that and, again, the fact that they have not substantiated compelling basis for the need for these documents at this time.

Thank you, your Honor.

MR. MILLER: May I be heard briefly?

HB85giuA

1             THE COURT:  Sure.

2             MR. MILLER:  Your Honor, nobody has objected to our
3    application to intervene and if the Court grants that
4    application to intervene, we are a party, technically, for
5    purposes of seeking modification of the protective order,
6    number one.  Number two, nobody is objecting to our request to
7    modify the protective order, they're only objecting to the
8    scope.  Number three, Judge Koeltl has adjourned the motion
9    practice two times waiting for a decision on this issue before
10   this Court.  He is clearly willing to consider, make whatever
11   decision he wants about the weight, but he is willing to
12   consider what we are seeking permission to use.  Number four,
13   this is not a discovery proceeding.  We are not asking for
14   discovery, we already have the documents, we just want to make
15   sure we don't run a foul of your order.

16            Number five.  We have satisfied all of the elements
17   required for modification of a protective order under the
18   International Equity Investments case from March of 2010 and I
19   could go through all of those but I think the reality is
20   they've already acknowledged that modification is okay, it is
21   just the question of the scope.

22            THE COURT:  Well, let me tell you what I think
23   preliminarily.

24            This issue raises what does the protective order mean.
25   Is the protective order a device that will immunize the

1  materials for all time for all purposes?  So, I have got to
2  figure out what you all agreed to and what I signed.  It is as
3  simple as that.
4          MR. MILLER:  Can I offer a little judgment onto that
5  in that respect?
6          The discovery that's at issue here was provided in the
7  matter before you, your Honor, after Jane Doe started her
8  lawsuit that we are handling in front of Judge Koeltl.  It is
9  all clearly stuff that she knew had to be in play eventually in
10 terms of discovery in the case that she had already started.
11         THE COURT:  Well, so as far as I'm concerned, so what?
12 I mean, it is my order and I have got to determine what is
13 covered by it, what isn't.  There seem to be some things that
14 are quite clear but I will just have to work that out in my own
15 mind and I obviously will have to do it promptly because I
16 don't want to hold up Judge Koeltl as he tastes the delights of
17 his case.
18         So, I think I have everything that I need.  Thank you
19 all very much.  Nice to see you again.
20         MS. McCAWLEY:  Thank you, your Honor.
21         MR. MILLER:  Thank you, your Honor.
22         MS. MENNINGER:  Thank you, your Honor.
23         THE COURT:  I will reserve decision.
24                              o0o
25