UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| VIRGINIA L. GIUFFRE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| - against - | : | Case No. 15-cv-7433 (RWS) |
| | : | |
| GHISLAINE MAXWELL, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PROPOSED
INTERVENORS JULIE BROWN AND MIAMI HERALD MEDIA COMPANY'S
<u>MOTION TO INTERVENE AND UNSEAL</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ..............................................................................................1

I.    INTERVENORS' COVERAGE OF ALLEGATIONS AGAINST JEFFREY EPSTEIN AND GHISLAINE MAXWELL ............................................................2

II.    THE OVERBROAD SEALING ORDER AND PRIOR ATTEMPTS TO UNSEAL ........3

III.   THE ORDER DENYING THE MOTIONS TO UNSEAL ..................................................6

ARGUMENT .............................................................................................................................6

I.    MIAMI HERALD MEDIA HAS THE RIGHT TO INTERVENE AS A NEWS ORGANIZATION ...............................................................................................7

II.    THE PRESUMPTION OF OPENNESS UNDER THE COMMON LAW AND FIRST AMENDMENT APPLY TO THE DOCUMENTS AT ISSUE .............................................8

      A.    The First Amendment and Common Law Provide For a Presumption of Access to Judicial Documents. ............................................................................8

      B.    The Documents at Issue Qualify As Judicial Documents. ...................................11

III.   THE DOCKET SHOULD BE UNSEALED BECAUSE THERE ARE NO COMPELLING CIRCUMSTANCES IN THIS CASE THAT OVERCOME THE PUBLIC'S RIGHT OF ACCESS .............................................................................13

IV.   THE PARTIES HAVE NOT ESTABLISHED GOOD CAUSE FOR SEALING NON-JUDICIAL DOCUMENTS, IF ANY. ....................................................................15

CONCLUSION .........................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alexander Interactive, Inc. v. Adorama, Inc.*,
    No. 12 CIV. 6608 PKC JCF, 2014 WL 4346174 (S.D.N.Y. Sept. 2, 2014) ....................................... 12

*Allen v. City of New York*,
    420 F. Supp. 2d 295 (S.D.N.Y. 2006) ............................................................................................. 15

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
    814 F.3d 132 (2d Cir. 2016) ............................................................................................ 9, 11, 14

*Bernstein v. O'Reilly*,
    Case No. 17-cv-9483 (April 3, 2018) ............................................................................................... 9

*Carlson v. Geneva City Sch. Dist.*,
    277 F.R.D. 90 (W.D.N.Y. 2011) ..................................................................................................... 15

*Condit v. Dunne*,
    225 F.R.D. 113 (S.D.N.Y. 2004) ..................................................................................................... 15

*E*Trade Fin. Corp. v. Deutsche Bank AG*,
    582 F. Supp. 2d 528 (S.D.N.Y. 2008) .............................................................................................. 9

*Equal Emp't Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*,
    146 F.3d 1042 (D.C. Cir. 1998) ....................................................................................................... 8

*FDIC v. Ernst & Ernst*,
    677 F.2d 230 (2d Cir. 1982) ............................................................................................................. 8

*Gambale v. Deutsche Bank*,
    377 F.3d 133 (2d Cir. 2004) ........................................................................................................... 15

*Globe Newspapers, Co. v. Superior Court*,
    457 U.S. 596 (1982) ........................................................................................................................ 10

*Hardy v. Kaszycki & Sons*,
    No. 83-CV-6346 (LAP), 2017 WL 6805707 (S.D.N.Y. Nov. 21, 2017) ..................................... 9, 14

*Havens v. Metropolitan Life Insurance Co.*,
    No. 94 CIV. 1402 (CSH), 1995 WL 234710 (S.D.N.Y. April 20, 1995).......................................... 15

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
    MDL No. 1358, 2013 WL 3531600 (S.D.N.Y. July 12, 2013) ......................................................... 10

*In re NASDAQ Market-Makers Antitrust Litig.*,
    164 F.R.D. 346 (S.D.N.Y. 1996)....................................................................................................... 7

*In re Omnicom Grp., Inc. Sec. Litig.*,
   No. 02 CIV. 4483 ...................................................................................................... 9, 12

*In re Pineapple Antitrust Litig.*,
   No. 04 MD. 1628 RMB MHD, 2015 WL 5439090 (S.D.N.Y. Aug. 10, 2015) ................................... 7

*In re Terrorist Attacks on Sept.*
   11, 2001, 454 F. Supp. 2d 220 (S.D.N.Y. 2006) ........................................................... 15

*Landmark Commc'ns, Inc. v. Virginia*,
   435 U.S. 829 (1978) ...................................................................................................... 10

*Lugosch v. Pyramid Co. of Onondaga*,
   435 F.3d 110 (2d Cir. 2006) ................................................................................... passim

*Mitchell v. Fishbein*,
   227 F.R.D. 239 (S.D.N.Y. 2005) ................................................................................... 15

*Nebraska Press Ass'n v. Stuart*,
   427 U.S. 539 (1976) ...................................................................................................... 10

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978) ...................................................................................................... 10

*Press-Enterprise Co. v. Superior Court*,
   464 U.S. 501 (1984) ...................................................................................................... 10

*Savitt v. Vacco*,
   No. 95-CV-1842(RSP/DRH), 1996 WL 663888 (N.D.N.Y. Nov. 8, 1996) ......................... 7

*Schiller v. City of New York*,
   No. 04 CIV. 7921(KMK), 2006 WL 2788256 (S.D.N.Y. Sept. 27, 2006) ..................... 7, 12

*Sec. and Exch. Comm'n v. TheStreet.Com*,
   273 F.3d 222 (2d Cir. 2001) ............................................................................................. 7

*Under Seal v. Under Seal*,
   273 F. Supp. 3d 460 (S.D.N.Y. 2017) ................................................................... 8, 11, 14

*United States v. Erie Cnty.*,
   763 F.3d 235 (2d Cir. 2014) ........................................................................................... 14

*United States v. Sattar*,
   471 F. Supp. 2d 380 (S.D.N.Y. 2006) ........................................................................... 11

*Wilson v. Am. Motors Corp.*,
   759 F.2d 1568 (11th Cir. 1985) ....................................................................................... 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 24 ............................................................................................................. 1, 7

Fed. R. Civ. P. 26(c) .................................................................................................................. 15

U.S. Const. amend. I .............................................................................................................. passim

## PRELIMINARY STATEMENT

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, the Miami Herald Media Company (the "Miami Herald"), and Julie Brown, investigative journalist for the Miami Herald ("Julie Brown" and together with Miami Herald, the "Intervenors"), respectfully submit this memorandum of law in support of their motion to intervene and unseal all of the documents in the above-captioned action that have been filed under seal or redacted.  These judicial documents are germane to the Miami Herald's ongoing coverage of dozens of underage minors who were victims of Jeffrey Epstein, the South Florida financier who pleaded guilty in 2008 to solicitation of minors for prostitution and was suspected of involvement in a larger sex-trafficking organization.  These documents are presumptively public, under both the common law and the First Amendment to the United States Constitution, but have been sealed pursuant to an improvidently granted protective order (ECF No. 62) (the "Protective Order") that allowed the parties to the above-caption actions ("Parties") to designate information as confidential without the particularized judicial scrutiny required by the law prior to sealing.  Though two previous motions to unseal have been denied, the reasoning underlying the denial – the imminence of trial, and potential impact on a jury – is no longer relevant because the case has been settled.

The Parties in this action have made use of the public courts to litigate a claim of intense public interest.  They may not do so in secret without a specific finding of compelling interest. Since this has not occurred, and no other interest outweighs the public right of access, Intervenors' motion should be granted.

1

## FACTUAL AND PROCEDURAL BACKGROUND

I. **INTERVENORS' COVERAGE OF ALLEGATIONS AGAINST JEFFREY EPSTEIN AND GHISLAINE MAXWELL**

The Miami Herald is the second largest newspaper in South Florida.  Established in 1903, it is circulated in Miami-Dade, Broward County, and Monroe County, as well as in the Caribbean and Latin America.  Julie Brown is an investigative journalist at the Miami Herald with over twenty years of experience.  For over three years, the Miami Herald has reported on and investigated Mr. Epstein and others who were involved in the sexual abuse of underage girls.  Recent court filings, both in federal and state court, have raised new allegations about his involvement in a wider sex-trafficking ring. The Miami Herald has covered, among other subjects, the initial investigation by the Palm Beach state attorney, the FBI and the U.S. Attorney's Office, the negotiations between those law enforcement agencies and Mr. Epstein's legal defense team, and the ultimate decision by the U.S. Attorney's Office to sign a non-prosecution agreement that was negotiated in secret and sealed in return for a guilty plea to a lesser state crime.  The deal, which was not revealed until well after it was signed and Mr. Epstein was sentenced, resulted in him serving 13 months of an 18-month sentence.  He now lives in the U.S. Virgin Islands.

The Miami Herald has also reported on civil matters related to the original criminal case against Mr. Epstein, which include the now-settled above-captioned action.  Here, the underlying claim is a defamation action brought by Virginia Giuffre ("Ms. Giuffre" or "Plaintiff") against Ghislaine Maxwell ("Ms. Maxwell" or "Defendant") on the grounds that Ms. Maxwell, in coordination with Mr. Epstein, "facilitated [] sexual abuse" of Ms. Giuffre and "wrongfully subjected Giuffre to public ridicule, contempt and disgrace by…calling Giuffre a liar in published statements." (ECF. No. 1.)  Specifically, Court transcripts in the Giuffre/Maxwell case make several references to Ms. Maxwell being the "madame" of Mr. Epstein's sex-trafficking enterprise,

and to witnesses who may be able to provide evidence of a wider, cross-border sex-trafficking ring.

In connection with its ongoing investigation, the Miami Herald has sought to access public court filings that will shed light on the scope of Epstein's crimes and address serious questions about whether there was any undue influence that tainted the investigation.  These include how the Epstein case was disposed of by the criminal justice system, whether victims were treated properly, whether Epstein's victims were unfairly kept in the dark, whether Epstein was given favorable treatment because of his wealth and status, in short, whether the public interest was served.  These questions have yet to be answered because many of the records that could provide responsive information have been sealed.  The public, including Epstein's victims, has the right to know how Mr. Epstein's case was prosecuted.  The law provides the public with the presumption of access in order to hold our legal instutitions accountable and to maintain confidence that they will protect the most vulnerable in our society.

## II.   THE OVERBROAD SEALING ORDER AND PRIOR ATTEMPTS TO UNSEAL

During litigation of the defamation claim, the Court, upon Defendant's motion, entered an overly broad Protective Order stating, *inter alia*:

> This Protective Order shall apply to all documents, materials, and information, including without limitation, documents produced, answers to interrogatories, responses to requests for admission, deposition testimony, and other information disclosed pursuant to the disclosure or discovery duties created by the Federal Rules of Civil Procedure.
> ***
> Information designated "CONFIDENTIAL" shall be information that is confidential and implicates common law and statutory privacy interests of (a) plaintiff Virginia Roberts Giuffre and (b) defendant Ghislaine Maxwell.
> ***
> Designation of a document as CONFIDENTIAL INFORMATION shall constitute a representation that such document has been

3

reviewed by an attorney for the designating party, that there is a valid and good faith basis for such designation, made at the time of disclosure or production to the receiving party, and that disclosure of such information to persons other than those permitted access to such material would cause a privacy harm to the designating party. Whenever a party seeks to file any document or material containing CONFIDENTIAL INFORMATION with the Court in this matter, it shall be accompanied by a Motion to Seal pursuant to Section 6.2 of the Electronic Case Filing Rules & Instructions for the Southern District of New York.

\*\*\*

A party may object to the designation of particular CONFIDENTIAL INFORMATION by giving written notice to the party designating the disputed information. The written notice shall identify the information to which the objection is made.  If the parties cannot resolve the objection within ten (10) business days after the time the notice is received, it shall be the obligation of the party designating the information as CONFIDENTIAL to file an appropriate motion requesting that the Court determine whether the disputed information should be subject to the terms of this Protective Order. If such a motion is timely filed, the disputed information shall be treated as CONFIDENTIAL under the terms of this Protective Order until the Court rules on the motion. If the designating party fails to file such a motion within the prescribed time, the disputed information shall lose its designation as CONFIDENTIAL and shall not thereafter be treated as CONFIDENTIAL in accordance with this Protective Order. In connection with a motion filed under this provision, the party designating the information as CONFIDENTIAL shall bear the burden of establishing that good cause exists for the disputed information to be treated as CONFIDENTIAL.

Essentially, the Protective Order allowed the Parties the autonomy to designate portions of the docket as "confidential" and further allowed those designated portions to remain confidential unless the non-designating party objected.

Following the Protective Order, Defendant designated her deposition as confidential and submitted at least 13 letter motions to file documents under seal, including exhibits to discovery motions (*see, e.g.*, ECF. No. 167), and discovery motions themselves. (*See, e.g.*, ECF No. 236.) Each of the letter motions was so-ordered.  Plaintiff also submitted at least 22 motions to file

4

documents under seal, including additional discovery motions (*see, e.g.*, ECF No. 245), and a Motion for an Adverse Inference Instruction.  (*See* ECF No. 278.)  The Court so-ordered each of these motions.  After at least 35 motions on the part of Plaintiff and Defendant, the Court issued an order stating that the parties were no longer required to seek court approval to designate confidential information:

> To reduce unnecessary filings and delay, it is hereby ordered that letter motions to file submissions under seal pursuant to the Court's Protective Order, ECF No. 62, are granted.  The Protective Order is amended accordingly such that filing a letter motion seeking sealing for each submission is no longer necessary.  A party wishing to challenge the sealing of any particular submission may do so by motion.

(ECF No. 348.)

In addition to the wholesale sealing of certain motions, the entire body of Defendant's motion for summary judgment – 68 pages – was redacted (*see* ECF No. 538) and over half of the order denying Defendant's motion for summary judgment was redacted. (ECF No. 872.)

In response to the sealing, two separate parties moved to intervene and to unseal selected filings.  The first, Alan Dershowitz, himself implicated in the Epstein scandal, moved to intervene and to unseal three documents or in the alternative to modify the Protective Order (the "Dershowitz Motion").  (ECF No. 362.)    The documents that Mr. Dershowitz targeted are currently unidentifiable because the Dershowitz Motion was partially redacted, and the order denying the motion to unseal was itself sealed.  The second individual, podcast host and investigative journalist Michael Cernovich, moved to intervene and unseal Defendant's Motion for Summary Judgment (the "Cernovich Motion"). (ECF No. 550.)  The portion of the Cernovich motion seeking to unseal the Motion for Summary Judgment was also denied.

III.     **THE ORDER DENYING THE MOTIONS TO UNSEAL**

The order on the Cernovich Motion (which, unlike that on the Dershowitz Motion, was not sealed) reasoned that both the sensitive nature of the material at issue and the procedural status of the case merited closure.  Regarding the former reason, the Court stated that "privacy interests of both parties and third parties warrant disclosure with respect to discovery materials." (ECF No. 892, at 8.)  Regarding the latter reason, the Court emphasized that, due to the ongoing status of the litigation and the imminence of trial, "a release of contested confidential discovery material could conceivably taint the jury pool."  (*Id.*, at 7.)  Summarizing, the court stated: "Because of the sensitive nature of the materials designated as confidential, involving allegations of sexual abuse and trafficking of minors, and because we are mere weeks from assembling a jury for trial, the importance of leaving these materials protected by the Protective Order outweighs any public interest in their publication." (*Id.*, at 9.)

Messrs. Dershowitz and Cernovich both appealed to the Second Circuit.  (ECF Nos. 500 and 915.)  TheaAppeals are currently pending.

On May 24, 2016, Plaintiff and Defendant entered into a settlement agreement.  Now, the Miami Herald seeks to unseal all sealed documents on the docket, including the Parties' depositions and documents submitted in support of motions, and to remove any redactions from filed documents unless there remains a compelling need for closure.

## ARGUMENT

As a representative of the public interest in the transparency of our courts, the Miami Herald seeks to intervene in this matter to unseal documents germane to a subject of intense media coverage and public import.  Despite the sensitive nature of some of the materials under seal, the law affords the presumption of openness, under the common law and the First Amendment to the U.S. Constitution, more weight.  Even if the Parties have reasons compelling enough to overcome

this presumption, the Parties were not required, as they should have been, to articulate those reasons. Instead, the Parties benefited from a presumption of closure.

Of particular importance, a main reason denying the prior motions to unseal – the on-going status of the litigation – is no longer relevant because the litigation has been settled. While certain redactions may remain necessary to shield personal medical information or the identities of crime victims, the majority of the materials sought here can and should be disclosed. For these reasons, explained in further detail below, the Miami Herald respectfully requests that the Court unseal all sealed files on the docket, and remove any redactions from partially redacted documents.

I.    **THE MIAMI HERALD HAS THE RIGHT TO INTERVENE AS A NEWS ORGANIZATION**

Under the law of this Circuit, news organizations are routinely permitted to intervene and be heard on issues involving public access to proceedings and documents, including challenges to discovery protective orders, pursuant to Rule 24 of the Federal Rules of Civil Procedure, either as a matter of right or permissively. *See, e.g., Sec. and Exch. Comm'n v. TheStreet.Com*, 273 F.3d 222, 227 n.4 (2d Cir. 2001); *Schiller v. City of New York*, No. 04 CIV. 7921(KMK)(JC), 2006 WL 2788256, at *2 (S.D.N.Y. Sept. 27, 2006); *In re NASDAQ Market-Makers Antitrust Litig.*, 164 F.R.D. 346, 350-51 (S.D.N.Y. 1996); *Savitt v. Vacco*, No. 95-CV-1842(RSP/DRH), 1996 WL 663888, at *7 (N.D.N.Y. Nov. 8, 1996) ("The Second Circuit Court of Appeals and its district courts have consistently held that news agencies have standing to challenge protective orders in cases of public interest."). Accordingly, this Court should permit Intervenors to intervene for the limited purpose of advocating for public access to these proceedings.

This motion is timely. Intervention has been granted years into litigation - and even long after a case has concluded. *See In re Pineapple Antitrust Litig.*, No. 04 MD. 1628 RMB MHD, 2015 WL 5439090, at *2 (S.D.N.Y. Aug. 10, 2015) ("There is no legal authority of which we are

aware … to the effect that there is a deadline by which such a journalistic request for access to documents must be asserted, and certainly no requirement that the application be made before the lawsuit is closed."); *Equal Emp't Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1047 (D.C. Cir. 1998) ("Intervention to challenge confidentiality orders may take place long after a case has been terminated.") (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 779 (3d Cir. 1994)); *see also Wilson v. Am. Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985) (non-party permitted to intervene after judicially approved settlement in order to challenge a seal on court documents); *FDIC v. Ernst & Ernst*, 677 F.2d 230, 231-32 (2d Cir. 1982) (non-party permitted to intervene and challenge a stipulated confidentiality order two years after a judicially approved settlement).  The public and the Miami Herald are entitled to access these records and proceedings at any time.

## II.  THE PRESUMPTION OF OPENNESS UNDER THE COMMON LAW AND FIRST AMENDMENT APPLY TO THE DOCUMENTS AT ISSUE

### A.  The First Amendment and Common Law Provide For a Presumption of Access to Judicial Documents

The public holds an affirmative, enforceable right of access to judicial records under both the common law and the First Amendment to the U.S. Constitution.  *See Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 467 (S.D.N.Y. 2017) (noting that the common law and First Amendment provide "related but distinct presumptions in favor of public access to court … records") (quoting *Newsday LLC v. Cnty. Of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013)).  Both regimes protect the values of transparency and accountability in the judicial process through procedural requirements, and both place heavy burdens on parties seeking to seal judicial records to ensure that the courts do not sacrifice the public's right of access to the desires of the litigations.  *See generally Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) (First Amendment and common law right to judicial documents); *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02 CIV. 4483 RCC/MHD, 2006 WL 3016311, at *1 (S.D.N.Y. Oct. 23, 2006) (an application to seal "must address and

overcome the presumption of public filing that finds its twin sources in the common-law right of public access to judicial documents and the qualified First Amendment right to attend judicial proceedings. The two are entirely complementary.").

Historically, at common law, "both civil and criminal trials have been presumptively open." *E\*Trade Fin. Corp. v. Deutsche Bank AG*, 582 F. Supp. 2d 528, 531 (S.D.N.Y. 2008) (citing *Richmond Newspapers v. Virginia*, 448 U.S. 555, 580 n.17 (1980)).  Recently, the Second Circuit reiterated the common law presumption in *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016).  In *Bernstein*, the Second Circuit emphasized the "general right to inspect and copy…judicial records and documents." *Id.* at 142 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).  It further explained that the weight of the presumption is a function of: "(1) the role of the material at issue in the exercise of Article III judicial power and (2) the resultant value of such information to those monitoring the federal courts, balanced against competing considerations such as 'the privacy interests of those resisting disclosure.'" *Id.* (internal quotation marks omitted).  The presumption weakens where "testimony or documents play only a negligible role in the performance of Article III duties," but even so, there remains a "prediction of public access." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d at 121.  Moreover, even if a court determines that the interests of those seeking closure outweigh the presumption of access, "sealing must be supported by specific findings."  *Hardy v. Kaszycki & Sons*, No. 83-CV-6346 (LAP), 2017 WL 6805707, at \*6 (S.D.N.Y. Nov. 21, 2017) (citing *United States v. Amodeo*, 44 F.3d 141, 148 (2d Cir. 1995)); *see also Bernstein v. O'Reilly*, Case No. 17-cv-9483 (S.D.N.Y. April 3, 2018) (denying motion to seal where defendant failed to "present compelling countervailing factors that could overcome the presumption of public access" to court records.).

The First Amendment presumption of access is even stronger.  As the U.S. Supreme Court has said time and again, the First Amendment requires open courts and court records to ensure the "appearance of fairness [that is] so essential to public confidence in the system." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 508 (1984).  The media's access to judicial proceedings and records keeps the public informed and helps instill public confidence in both the process and the results of trials.  *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559-60 (1976); *Nixon*, 435 U.S. at 609.  "The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 838-39 (1978).

The First Amendment access right imposes a heavy burden on those who seek to limit public access to justify the restriction.  *See Globe Newspapers, Co. v. Superior Court*, 457 U.S. 596, 606 (1982) ("the State's justification in denying access must be a weighty one"); *Lugosch v. Pyramid Co.*, 435 F.3d 110 at 126 (First Amendment "gives rise to a higher burden on the party seeking to prevent disclosure than does the common law presumption"); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, MDL No. 1358, 2013 WL 3531600, at *2 (S.D.N.Y. July 12, 2013) ("Once properly invoked, the public's right of access to judicial documents under the First Amendment must be given strong weight.") (internal quotation marks omitted).  As the Supreme Court explained in *Globe Newspapers*, the standard to be met is a strict one: "Where . . . the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest."  457 U.S. at 606-07 (1982).

In this case, the Protective Order improperly reversed the common law and First Amendment presumption of openness to one of closure.  Instead of requiring the Parties to

demonstrate a compelling need for closure, the Protective Order effectively rubber-stamped any information designated as confidential by the Parties.  The Court then reaffirmed the presumption of closure by lifting the requirement in the original Protective Order that required the parties to submit letter motions in order to seal documents.  (ECF No. 348.)  Though the original Protective Order provided the non-designating party with a mechanism to dispute a confidentiality designation (ECF No. 62, ¶ 11), this did not, and cannot, replace the public's baseline right to access.

**B.**   **The Documents at Issue Qualify As Judicial Documents**

All of the documents that the Miami Herald seeks to unseal – in whole or in part – qualify as "judicial documents" to which applies the common law and First Amendment presumption of access.   Recently, this court noted that "[g]enerally, the presumption of access applies to all documents filed with the court." *Under Seal*, 273 F. Supp. 3d at 269; *see also United States v. Sattar*, 471 F. Supp. 2d 380, 385 (S.D.N.Y. 2006) (generally, a document is a  "judicial document" if it is "submitted to the Court for the purposes of seeking or opposing adjudication."); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)  (a judicial document is one that is "relevant to performance of judicial function and useful in judicial process").  Defendant's motion for summary judgment fits this definition squarely because it presents the substantive reasons for final adjudication.  *See Bernstein,* 814 F.3d at 136 (holding that motions for summary judgments, as well as reports submitted in connection with a motion for summary judgment, are entitled a strong presumption of access).

The remaining documents, the majority of which are those submitted in opposition or support to discovery motions, also qualify.[1]  Citing the broad rule in *Lugosch*, the court in *Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12 CIV. 6608 PKC JCF, 2014 WL 4346174, at *2 (S.D.N.Y. Sept. 2, 2014), stated that "documents to be submitted are in support of a motion to compel discovery [] presumably will be necessary to or helpful in resolving that motion. They are, therefore, judicial documents."  Similarly, in *In re Omnicom Grp.*, the court held that a "series of letter briefs with accompanying exhibits…certainly qualify as judicial documents."   2006 WL 3016311 at *2.  These briefs were submitted, "to request the court to exercise its adjudicative powers in favor of the parties' respective views of a discovery dispute."  *Id.*; *see also Schiller*, 2006 WL 2788256, at *5 (holding that briefs and supporting papers submitted in connection with a dispute over the confidentiality of discovery materials were "created by or at the behest of counsel and presented to a court in order to sway a judicial decision" and were therefore "judicial documents that trigger the presumption of public access").  The docket entries and accompanying exhibits, including deposition testimony, sealed by the following orders are therefore "judicial documents": ECF Nos. 100, 145, 158, 163, 167, 183, 186, 196, 344 (entries related to motions to compel); ECF Nos. 168, 178, 197, 209, 236, 256, 273, 285, 319, 249 (entries related to motions to serve deposition subpoenas, exceed deposition limits, reopen Plaintiff's deposition, or complete depositions); ECF Nos. 266, 282, 285, 297, 328, 350 (entries related to motion for adverse inference); ECF Nos. 125, 329 (entries related to motions concerning forensic examination of computer); ECF No. 146 (entries related to brief in support of privilege claimed for Plaintiff's *in camera* submission); ECF no. 354, 275 (entries related to Defendant's response to non-party's

---

[1] The Miami Herald is only able to identify the nature of the sealed documents that were filed before the Court issued its order (ECF. No. 348), which lifted the requirement that the Parties file a letter motion in order to designate information as confidential and seal.

motion to quash subpoena); ECF No. 281, 286 (entries related to Plaintiff's sur-reply); ECF No. 322 (entries related to Plaintiff's proposed search terms); ECF. No. 332 (entries related to exhibit accompanying Plaintiff's notice of supplemental authority); ECF. 351 (entries related to motion for protective order).

III.    **THE DOCKET SHOULD BE UNSEALED BECAUSE THERE ARE NO COMPELLING CIRCUMSTANCES IN THIS CASE THAT OVERCOME THE PUBLIC'S RIGHT OF ACCESS**

In light of the First Amendment and common law presumption against closure and the First Amendment's stringent, "compelling reason" standard, the interests of the Parties are insufficient when weighed against the public's right of access.

As a preliminary matter, one of the main reasons for closure identified in the Court's denial of the Cernovich Motion – the ongoing status of the litigation – is no longer relevant because the case has settled.  Accordingly there is no more risk that the "release of contested confidential discovery materials could conceivably taint the jury pool." (ECF No. 892, at 7.)  Any weight given to the fact that, at the time of the denial of the Cernovich motion, the case was "mere weeks from assembling" trial, should be disregarded.  The legal rights of the parties are now settled, and if the public's interest in this matter was at all tempered in light of the on-going litigation, it is now renewed.

Further, even if the case remained open, the privacy interests of the litigants do not outweigh the public's right of access under the First Amendment.  Ms. Giuffre's allegations have been the subject of significant public interest and have been covered at length by the Miami Herald and other members of the news media.  Coverage is ongoing, and there are several aspects of the story that require further investigation.  As such, the judicial documents in question involve issues that are "manifestly ones of public concern and therefore ones in which the public has an interest in overseeing."  *United States v. Erie Cnty.*, 763 F.3d 235, 242 (2d Cir. 2014); *see also Under Seal*

13

273 F. Supp. 3d at 472 (unsealing entire docket and holding that public right of access outweighed defendant's concern of adverse publicity and her reliance on previously executed confidentiality agreement); *Bernstein*, 814 F.3d at 143-44 (attempt to seal complaint against law firm alleging that partners engaged in kick-back scheme was properly denied where complaint was of "legitimate interest to the public" and where disclosure would not reveal details of an ongoing investigation, pose a risk to witnesses, endanger national security, reveal trade secrets, or implicate duty to protect attorney-client material or confidential client information); *Hardy*, 2017 WL 6805707, at *6-7 (unsealing transcript of settlement between workers' union and, *inter alia*, the Trump Organization and holding that, under common law and the First Amendment, public interest outweighed reliance on sealing order and the "generalized interest" in promoting settlement).

Neither of the Parties have presented the "specific, on-the-record findings" that establish a compelling reason for sealing or redaction. *Lugosch*, 435 F.3d at 126. Quite the opposite – the Court initially granted at least 35 letter motions to seal documents, the vast majority with *de minimis* justification. *See, e.g.* ECF No. 285 (So-ordering sealing where Defendant reasoned "Exhibits contain content designated as confidential by the parties pursuant to the Protective Order"); ECF No. 236 (So-ordering the sealing where Defendant reasoned "These Motions, Declarations, and Exhibits contain content designated as confidential by the parties pursuant to the protective order"). The Court then lifted any requirement for justification whatsoever when it ceased to require letter motions prior to sealing. In sum, the parties did not – and were not required to – rebut the presumption of access afforded by the common law and the First Amendment, much less establish the prerequisite "compelling interest" needed to justify sealing.

IV.   **THE PARTIES HAVE NOT ESTABLISHED GOOD CAUSE FOR SEALING NON-JUDICIAL DOCUMENTS, IF ANY**

Even if the Court were to hold that the documents at issue are not "judicial documents" the Parties have not met the "good cause" standard that is still required to justify closure of other documents. "[T]he party seeking a protective order has the burden of showing that good cause exists for issuance of that order.  However, it is equally apparent that the obverse also is true, i.e., if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection." *Gambale v. Deutsche Bank*, 377 F.3d 133, 142 (2d Cir. 2004) (quotation marks and citation omitted); *Mitchell v. Fishbein*, 227 F.R.D. 239, 254 (S.D.N.Y. 2005) (movant must demonstrate good cause for order barring public dissemination of discovery materials); *Condit v. Dunne*, 225 F.R.D. 113, 115 (S.D.N.Y. 2004) (same).

To show good cause under Rule 26(c), parties must demonstrate that disclosure will cause a clear and serious injury via a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  *Havens v. Metropolitan Life Insurance Co.*, No. 94 CIV. 1402 (CSH), 1995 WL 234710, at *10 (S.D.N.Y. April 20, 1995) (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)); *see also Carlson v. Geneva City Sch. Dist.*, 277 F.R.D. 90, 94 (W.D.N.Y. 2011) (requiring "defined, specific, and serious injury") (citation omitted); *Allen v. City of New York*, 420 F. Supp. 2d 295, 302 (S.D.N.Y. 2006) (to establish good cause, a party must demonstrate that "a clearly defined and serious injury … would result from disclosure of the document." (internal citations and quotation marks omitted)); *In re Terrorist Attacks on Sept*. 11, 2001, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (ordinarily good cause demonstrated "when a party shows that disclosure will result in a clearly defined, specific and serious injury") (internal citations and quotation marks omitted).  In this case, the blanket

Protective Order allows the Parties to seal presumptively public information merely by designation, without any judicial scrutiny at all, and therefore the good cause standard is not satisfied.

## **CONCLUSION**

For the foregoing reasons, the Miami Herald's motion to intervene and unseal all sealed or redacted docket entries should be granted.

Dated:  April 6, 2018                              Respectfully Submitted,


                                                   /s Christine N. Walz
                                                   HOLLAND & KNIGHT LLP
                                                   Sanford L. Bohrer
                                                   Christine N. Walz
                                                   31 West 52nd Street
                                                   New York, NY  10019
                                                   Telephone:  212.513.3200
                                                   Fax:  212.385.9010

                                                   *Attorneys for Movants/Intervenors*
                                                   *Julie Brown and Miami Herald Media Company*

#55775939_v1