UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

VIRGINIA L. GIUFFRE,

    Plaintiff,

v.

GHISLAINE MAXWELL,

    Defendant.

15-cv-07433-RWS

---------------------------------------------------X

# Ms. Maxwell's Response to Miami Herald's Motion to Unseal

Laura A. Menninger
Jeffrey S. Pagliuca
Ty Gee
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
303.831.7364

Defendant Ghislaine Maxwell, through counsel, submits this Response to the Miami Herald's motion to intervene and make public all documents filed under seal or redacted (Docs.935-936).

## INTRODUCTION

The Miami Herald is late to this closed case. It seeks to intervene in a case that was resolved more than a year ago. And it seeks *post facto* to examine a relatively few sealed and redacted documents submitted among more than 900 court filings. That is only the beginning of the extraordinary nature of its request.

Then there is the Miami Herald's blithe disregard of the Court's compelling reasons for permitting the parties to seal materials. This case involved plaintiff's claim she had been "forced" to be a "child" "sex slave" for a long list of prominent men. She accused Ms. Maxwell of helping to enslave her and, when Ms. Maxwell denied plaintiff's gratuitously salacious allegations, sued her for "defamation." During the course of discovery the parties produced or obtained significant information about plaintiff's alleged sex activities involving dozens of nonparties. While there was no trial and therefore no factual findings, the defense believed its investigation and the discovery significantly undermined, if not disproved, a large number of plaintiff's sex allegations. Regardless, the case ended with a truce under which neither side had an opportunity to marshal the evidence in her favor to prove her case or to disprove her opponent's case. Into this truce the Miami Herald wishes to enter to selectively pick through the most salacious, sensitive and prurient information.

It does not ennoble the Miami Herald's desire to view dozens of pages of sex-related documents and salacious information by characterizing its request to make this material public as a pursuit of "investigative journalism." The alleged acts of sex and sexual activities and the identity of nonparty-participants in these activities require no "investigation" by a newspaper,

1

and their disclosure serves no legitimate goal of journalism, certainly not the kind the Miami Herald claims to practice. Indeed none of the descriptions of alleged sexual activities or unsupported claims of sex with nonparties would be relevant to the Herald's claimed investigation of a "cross-border sex-trafficking ring," Mot. to Unseal, at 3.

## FACTS

Plaintiff set the stage for discovery by making in her complaint a series of salacious and provocative allegations gratuitous to her defamation claim. She alleged she was the "victim of sexual trafficking and abuse while she was a minor child" and that Ms. Maxwell "facilitated" plaintiff's sexual abuse and "wrongfully" subjected plaintiff to "public ridicule, contempt and disgrace" by denying plaintiff's allegations. She alleged that over the course of a decade she had been sexually abused at "numerous locations" around the world with prominent and politically powerful men. As it turned out to be typical with the plaintiff, she omitted details of her dozens or hundreds of alleged sexual encounters with these prominent and powerful men. That, she suggested, was left to discovery by Ms. Maxwell under the rules of civil procedure.

As this Court is aware, the parties early on disagreed on the discoverability of certain information. For example, plaintiff requested discovery of all Ms. Maxwell's sexual activities. Ultimately the Court created the boundaries of discoverable matters and at the parties' request entered a protective order that allowed the parties to provide discovery on highly private and sensitive subjects that could not be disclosed to the public without a further order of this Court. The Protective Order "provided confidentiality for information the parties determine would 'improperly annoy, embarrass or oppress any party, witness or person providing discovery in this case.'" *Giuffre v. Maxwell*, No. 15 Civ. 7433, 2017 WL 1787934, at *1 (S.D.N.Y. May 2, 2017) (quoting Doc.62, at 1).

2

As the Court also is aware, the parties brought within the Protective Order numerous documents and information—from parties and third parties—that on their face qualify for the most robust protection afforded by Rule 26(c). For example, many of the documents and much of the information designated confidential included a wide range of allegations of sexual acts involving plaintiff and nonparties to this litigation, the identities of nonparties who either allegedly engaged in sexual acts with plaintiff or who allegedly helped facilitate the acts, plaintiff's sexual history and prior allegations of sexual assault, and her medical history. This is why the Court noted the last time a media representative sought unsealing in May 2017: "This Court has, three times, found the issues presented in the action warrant a Protective Order, and has specifically expressed concern for its ongoing efficacy." *Id.* at *2.

The Miami Herald has identified no change in the circumstances from the Court's 2017 ruling. Indeed the only change in circumstance is that shortly after the Court's remark the case was settled and has remained dormant until now.

## ARGUMENT

**The Miami Herald has failed to establish that any sealed document should be unsealed.**

**Standard of review.** There are two authorities for a request to unseal sealed materials. Neither is unlimited; both require the exercise of this Court's discretion. One is the common law right of public access to judicial documents; the other is the "qualified First Amendment right . . . to access certain judicial documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). The Miami Herald asserts both in support of its request that this Court indiscriminately unseal and make public everything that it "three times," *Giuffre*, 2017 WL 1787934, at *2, found warranted sealing under its Protective Order. Neither supports the relief requested.

Before the common law right of access can attach, "a court must first conclude that the documents at issue are . . . 'judicial documents.'" *Lugosch*, 435 F.3d at 119. "[T]he mere filing of a paper or document with the court" does not convert the paper into a judicial document. A judicial document is a paper filed with the court that "must be relevant to the performance of the judicial function and useful in the judicial process." *Id.*

Upon a finding that a paper is a judicial document, the common law "presumption of access" attaches. *Id.* The court must then determine the weight of that presumption; that determination is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* The information generally will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to ensure their irrelevance. *Id.* Finally, after deciding the weight of the presumption, the court must balance that weight against the weight of the "countervailing factors," including "the privacy interests of those resisting disclosure." *Id.* at 120.

The Second Circuit has established two approaches for determining whether the public and press have a qualified First Amendment right to access certain judicial documents. The "experience and logic" approach requires the court to consider whether the documents historically have been open to the press and public and whether public access "plays a *significant positive role* in the functioning of the particular process in question." *Id.* (emphasis supplied). The second approach considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings. *Id.* Even if such a qualified right is found as to a particular judicial document, the document may remain sealed

4

upon specific, on-the-record findings that sealing is necessary to preserve higher values and is narrowly tailored to achieve that aim. *Id.* at 124.

**Discussion.** Without knowing the contents of any of the sealed documents, the Miami Herald says it wants every sealed document unsealed and made public. Mot. to Unseal, at 16. Yet the Miami Herald readily acknowledges that it is not entitled to any unsealing relief unless it can establish, for example under the common law-right analysis, that each document it seeks to unseal is a judicial document and that the weight of presumption afforded to that document outweighs the countervailing factors supporting sealing. Similarly with regard to the qualified First Amendment-right analysis, it acknowledges its motion should be denied unless it has established the right attaches to a particular sealed document and that, for example, public access to that sealed document plays "a significant positive role" in the functioning of the particular judicial process in question, that is, the judicial process in which the document was relevant.

To begin with, many of the sealed documents identified by the Miami Herald, *see id.* at 11-13, are not documents "relevant to the performance of the judicial function and useful in the judicial process," *Lugosch*, 435 F.3d at 119. They are not judicial documents. As an example, although the Miami Herald plants its flag squarely on the summary judgment papers, it is not a foregone conclusion that every paper attached to a summary judgment paper must be a judicial document. *See, e.g., id.* at 122 (indicating that presumption of access applies to document submitted to court in adjudicatory proceeding so long as document is "relevant" to that proceeding). Exhibit I, cited in Ms. Maxwell's motion for summary judgment, is plaintiff's supplemental discovery response; among other things it included a list of her health care providers for a period of years and referenced numerous pages of medical records. Such personal, confidential and sensitive medical information would militate against its designation as

5

a judicial document, since that information did not bear on the summary judgment issues. As another example, Exhibit M to the summary judgment motion was plaintiff's passport application from 2001; it contains sensitive and confidential information. We relied on the exhibit for collateral purposes, *e.g.*, establishing plaintiff's location or employment status. It hardly qualifies as a judicial document. *See, e.g.*, *id.* at 121 ("At the low end of the continuum, where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason.") (internal quotations and brackets omitted).

More examples are unnecessary, since the Miami Herald fails to conduct any "judicial document" analysis of its own. Its categorical—and conclusory—statement "[a]ll of the documents that the Miami Herald seeks to unseal . . . qualify as 'judicial documents,'" Mot. to Unseal, at 11, does not qualify as an analysis.

At the risk of stating the obvious, the Miami Herald has no hope of carrying its burden of unsealing every sealed document. Because it has not seen each document it has no ability to assess whether a particular document is a judicial document, if so what weight should be assigned to the presumption attached to it, and how that weight should be balanced against the privacy interests supporting nondisclosure. That is to say, it cannot perform the unsealing analysis the Second Circuit requires.

For the same reason, this problem of proof extends to whatever qualified First Amendment right the Miami Herald might have. In fact, although the Herald claims the qualified presumption of access under the First Amendment "is even stronger," *id.*, in a case like this the opposite is true. This is a defamation case which plaintiff's counsel candidly said in open court she intended to litigate as a sexual-assault case. The defense strenuously objected to this

approach. We urged the court to limit significantly the introduction of salacious and gratuitous sex evidence that we said was entirely irrelevant to the question of defamation and was intended to garner sympathy from and prejudice the jury against Ms. Maxwell. The case was settled before the Court decided the question to what extent plaintiff's evidentiary presentation should be limited. In this context, the Miami Herald cannot demonstrate that the sealed sex documents historically would have been open to the press and public and that public access to these document would "play[] a significant positive role in the functioning," *Lugosch*, 435 F.3d at 120, of the judicial process. No one knows, because the case was settled. Even if the Herald could make that showing, this Court nonetheless may "continue[] sealing . . . the documents" after making specific findings that sealing is necessary to preserve higher values. *See id.* at 124.

The Court's *Lugosch* analysis should take into account two additional factors. One is the Miami Herald's inexplicable and unjustified delay in seeking relief from the Protective Order. The newspaper admits it was well aware of Mr. Epstein, plaintiff and Ms. Maxwell "[f]or over three years," Mot. to Unseal, at 2, and knew of the existence of this action from its commencement, *see id.* While the Herald has cited cases suggesting there is no hard deadline for a "journalistic request for access to documents," *id.* at 8, the facts in the cases it cites bear no resemblance to the facts here: Salacious and uncorroborated allegations of sex with numerous prominent men that never were adjudicated, that were irrelevant to the elements of a defamation claim, and that were subject to exclusion by the Court's pretrial rulings. Delay by a nonparty seeking unsealing bears on the *Lugosch* factors. For example, that it took an unseal movant a year after a case was resolved without an adjudication must be relevant to (a) whether public access to a particular document "plays a significant positive role in the functioning of the particular [judicial] process," *Lugosch*, 435 F.3d at 120; and (b) the weight that should be

assigned to the presumption of access to a document because of the document's role "in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts," *id.* at 119. It hardly need be said that an unsealed judicial document one year after a nonadjudicatory settlement of a case should not carry the same weight it had when the case was pending before an Article III judge.

The second factor the Court should consider is the parties' and the nonparties' reliance on the privacy and confidentiality afforded them by the Protective Order and this Court's repeated rulings reaffirming the sanctity and importance of the Order. The Protective Order authorized the parties to designate as "confidential" any information that met Rule 26(c)'s standards; once so designated the information could only be disclosed to nonparties if the nonparties also received a copy of the Protective Order and agreed to be bound by it. *See* Doc.39-1 at 5-6. Under the order only the parties had the authority to challenge the confidentiality of a designation. The parties did not challenge the designations of any of the documents at issue in the Miami Herald's motion. It would be unfair and highly prejudicial to the parties to grant the relief sought by the Herald, a nonparty, namely, removing the confidentiality designations on documents upon which the parties were relying to protect their privacy and confidential and sensitive information.

In *SEC v. TheStreet.com*, 273 F.3d 222, 231 (2d Cir. 2001), the Second Circuit reaffirmed its holding in *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979), that there is "a general and strong presumption *against access* to documents sealed under [a] protective order when there was reasonable reliance upon such an order." However, the court noted, judicial documents nonetheless "deserve a presumption in favor of access." 273 F.3d at 231 (italics omitted).

8

Five years later, the Second Circuit in *Lugosch* had an opportunity to revisit the effect of a party's reliance on a protective order. The order at issue in *Lugosch* provided, "This Confidentiality Order shall not prevent *anyone* from applying to the Court for relief therefrom." 435 F.3d at 126 (emphasis supplied). The Second Circuit relied exclusively on this language to reject the *Lugosch* defendants' argument that they had relied on the confidentiality order when disclosing sensitive and private information. *See id.* The reliance, the court held, was not justified because of the presence of the language authorizing nonparties to challenge the parties' confidentiality designations. The Second Circuit's use of that language to reject the defendants' argument in *Lugosch* suggests that, in a different case in which the parties' reliance on a protective order was *reasonable*, it would be improper to permit a nonparty to upset the parties' reliance on a protective order and cause private and sensitive documents to be unsealed and made public *post facto.* If this was not the Second Circuit's message it simply would have dismissed the *Lugosch* defendants' reliance argument by holding that any reliance on a Rule 26(c) protective order is unreasonable as a matter of law because any nonmovant at any time—during the pendency of a case, or years after—may move to unseal any document subject to a protective order. We note that the Miami Herald's late-by-a-year motion underscores the unfairness of upsetting the parties' justifiable reliance that the Protective Order would maintain the privacy of the Confidential-designated documents.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion to unseal.

Respectfully submitted,

*s/ Laura A. Menninger*
Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
Ty Gee (*pro hac vice*)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:   303.831.7364
Fax:      303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on April 27, 2018, I electronically served this *Response to Miami Herald's Motion to Unseal* via ECF on the following:

| | |
|---|---|
| Sigrid S. McCawley<br>Meredith Schultz<br>BOIES, SCHILLER & FLEXNER, LLP<br>401 East Las Olas Boulevard, Ste. 1200<br>Ft. Lauderdale, FL 33301<br>smccawley@bsfllp.com<br>mschultz@bsfllp.com | Paul G. Cassell<br>383 S. University Street<br>Salt Lake City, UT 84112<br>cassellp@law.utah.edu |
| Bradley J. Edwards<br>FARMER, JAFFE, WEISSING, EDWARDS,<br>FISTOS & LEHRMAN, P.L.<br>425 North Andrews Ave., Ste. 2<br>Ft. Lauderdale, FL 33301<br>brad@pathtojustice.com | J. Stanley Pottinger<br>49 Twin Lakes Rd.<br>South Salem, NY 10590<br>StanPottinger@aol.com |

*/s/ Holly Rogers*
Holly Rogers