HOLLAND & KNIGHT LLP
Sanford L. Bohrer
Christine N. Walz
31 West 52nd Street
New York, NY 10019
Telephone: 212.513.3200
Fax:  212.385.9010

*Attorneys for Movants/Intervenors*
*Julie Brown and Miami Herald Media Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIRGINIA L. GIUFFRE, :<br>:<br>Plaintiff, :<br>:<br>- against - :<br>:<br>GHISLAINE MAXWELL, :<br>:<br>Defendant. :<br>: | Case No. 15-cv-7433 (RWS) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PROPOSED
INTERVENORS JULIE BROWN AND MIAMI HERALD MEDIA COMPANY'S
MOTION TO INTERVENE AND UNSEAL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 3

    I.     RESPONDENT BEARS THE BURDEN OF ESTABLISHING A COMPELLING REASON
            FOR CLOSURE ................................................................................................... 3

    II.    THE DOCUMENTS REQUESTED ARE JUDICIAL DOCUMENTS ..................................... 5

    III.   EVEN IF THE DOCUMENTS AT ISSUE ARE NOT "JUDICIAL DOCUMENTS" THE
            PROTECTIVE ORDER SHOULD HAVE REQUIRED THAT THE PARTIES
            DEMONSTRATE GOOD CAUSE FOR SEALING ............................................................. 8

    IV.   THE MOTION IS TIMELY AND SUPPORTED BY PLAINTIFF ......................................... 9

CONCLUSION ..................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
No. 14-CV-6867 (VEC), 2016 WL 1071107 (S.D.N.Y. Mar. 18, 2016), *aff'd*, 814
F.3d 132 (2d Cir. 2016) ........................................................................................... 3, 4, 6

*Bernsten v. O'Reilly*,
No. 17 CIV. 9483 (DAB), 2018 WL 1615840 (S.D.N.Y. Apr. 3, 2018) ......................... 3, 5

*Diversified Grp., Inc. v. Daugerdas*,
217 F.R.D. 152 (S.D.N.Y. 2003) ...................................................................................... 7

*Fournier v. Erickson*,
242 F. Supp. 2d 318 (S.D.N.Y. 2003) ......................................................................... 8, 9

*In re Omnicom Grp.*,
No. 02 Civ. 4483 RCC/MHD 2006 WL 3016311 (S.D.N.Y. Oct. 23, 2006)...................... 6

*In re Pineapple Antitrust Litig.*,
No. 04 MD. 1628 RMB MHD, 2015 WL 5439090 (S.D.N.Y. Aug. 10, 2015) ................... 9

*Lugosch v. Pyramid Co. of Onondaga*,
435 F.3d 110 (2d Cir. 2006) ................................................................................... 4, 6, 7

*Lytle v. JPMorgan Chase*,
810 F. Supp. 2d 616 (S.D.N.Y. 2011) ......................................................................... 3, 6

*Natixis Financial Products LLC v. Bank of America, N.A.*,
10 Civ. 3656, 2016 WL 7165981 (S.D.N.Y., Dec. 7, 2016) ........................................... 6

*New York v. Actavis*,
PLC, No. 14 CIV. 7473, 2014 WL 5353774 (S.D.N.Y. Oct. 21, 2014)............................. 5

*Savitt v. Vacco*,
No. 95-CV-1842(RSP/DRH), 1996 WL 663888 (N.D.N.Y. Nov. 8, 1996)......................... 9

*Under Seal v. Under Seal*,
273 F. Supp. 3d 460, 467 (S.D.N.Y. 2017) .................................................................. 3, 6

*United States v. Amodeo*,
71 F.3d 1044 (2d Cir. 1995) ...................................................................................... 3, 4

*United States v. Erie County*,
No. 09-CV-849S, 2013 WL 4679070 (W.D.N.Y. Aug. 30, 2013), *rev'd on other
grounds*, 763 F.3d 235 (2d Cir. 2014).............................................................................. 9

*Video Software Dealers Ass'n v. Orion Pictures*,
21 F.3d 24 (2d Cir. 1994) ................................................................................................ 5

**OTHER AUTHORITIES**

U.S. Const. amend I ..................................................................................................................... 1, 3, 5

Proposed Intervenors Julie Brown and the Miami Herald Media Company (the "Miami Herald") respectfully submit this reply memorandum of law in further support of their motion for leave to intervene and to unseal the docket of the above-captioned action.

## PRELIMINARY STATEMENT

Respondents Ghislaine Maxwell's ("Respondent" or "Maxwell") motion in opposition to Proposed Intervenors' motion to intervene and to unseal (ECF No. 944) ("Opp. Mot.") completely misconstrues the legal doctrine governing public access to court records.  She argues, without basis and in contravention of common law and the First Amendment to the U.S. Constitution, that it is the Miami Herald's burden to establish a right to access: "Miami Herald has no hope of carrying *its burden* of unsealing every sealed document."  Opp. Mot. at 6.  It is Maxwell, and not Proposed Intervenors, who carries the burden to establish a compelling reason for closure.  Not only does Maxwell fail to do this, she makes the circular argument that, because the documents are already (improperly) sealed, Proposed Intervenors cannot point to their content as a basis for unsealing. This is precisely why there is a presumption of openness, and not closure.

Maxwell makes these arguments in order in order to keep secret information that is material to a matter of profound public concern.  This effort is contrary to the position of the plaintiff in the underlying case and the Miami Herald, as surrogate of the public.  The motion to intervene and unseal was brought in order to gain access to records that are germane to its ongoing coverage of crimes committed by Jeffrey Epstein, the South Florida financier who pleaded guilty in 2008 to solicitation of minors for prostitution and was suspected of involvement in a larger sex-trafficking organization.   Serious questions remain as to whether the Epstein case was disposed of appropriately, whether victims were treated properly, and whether Epstein was given favorable treatment because of his wealth and status.  The Miami Herald seeks to paint a full and fair picture

of this matter, but is currently unable to do so because numerous records that could shed light on these issues have been sealed.

Importantly, the plaintiff ("Plaintiff" or "Ms. Giuffre") in this case – a possible victim of Mr. Epstein and Ms. Maxwell – does not object to unsealing.  On the contrary Ms. Giuffre "does not oppose [Proposed Intervenors'] Motion to Intervene and Unseal to the extent it seeks to unseal all docket entries, and not simply select entries, including the unsealing of all trial designated deposition transcripts." Plaintiff's Response to Proposed Intervenors Julie Brown and Miami Herald Media Company's Motion to Intervene and Unseal (ECF No. 945) ("Guiffre Response"), at 3.  Plaintiff's position alleviates the Court's concern, expressed in its previous denial of Michael Cernovich's motion to intervene and unseal (ECF Nos. 550-52) (the "Cernovich Motion"), that disclosure of sensitive information "involving allegations of sexual abuse and trafficking of minors" would harm Plaintiff.  (ECF Nos. 892 at 9.).[1]

Finally, the Court's second reason for denying the Cernovich Motion – the ongoing status of the litigation – is no longer an issue since the case has settled.  Respondent Maxwell attempts to characterize Proposed Intervenors' motion as "too-late," but ignores that previous motions to unseal were denied precisely because litigation was ongoing.  *See id.*, ("because we are mere weeks from assembling a jury for trial, the importance of leaving these materials protected by the Protective Order outweighs any public interest in their publication at this time.").  Proposed Intervenors' motion is not untimely.  Now, especially so with the support of Plaintiff, is the appropriate time to unseal this docket.  This will allow the Miami Herald to continue to report on

---

[1]  Before the above-captioned case was settled, there were two motions to intervene and to unseal portions of the docket: the Cernovich Motion (ECF Nos. 550-52) and a motion brought by Alan Dershowitz (the "Dershowitz Motion") (ECF Nos. 362-64).  The order denying the Dershowitz Motion was filed under seal and movants do not have access to the Court's reasoning.  *See* ECF. No. 496.

2

matters of clear public interest and give the public the opportunity to learn more about how wealthy and powerful men are able to act as sexual predators with little or no consequence.

## **ARGUMENT**

### I.   **RESPONDENT BEARS THE BURDEN OF ESTABLISHING A COMPELLING REASON FOR CLOSURE**

Respondent Maxwell argues – incorrectly – that Proposed Intervenors bear the burden of establishing the right to access the judicial documents at issue:   "[W]ith regard to the qualified First Amendment-right Analysis, [the Miami Herald] acknowledges *its motion should be denied unless it has established the right attaches to a particular sealed document.*"  Opp. Mot. at 5; *see also id.* at 6 ("Miami Herald has no hope of carrying *its burden* of unsealing every sealed document.")  This argument contravenes the baseline presumption of access that this Court has upheld time and time again.   *See United States v. Amodeo*, 71 F.3d 1044, 1047 (2d Cir. 1995) ("*Amodeo II*") (a report determined to be a judicial document was "presumptively subject to public inspection") (internal quotation marks omitted); *Bernsten v. O'Reilly*, No. 17 CIV. 9483 (DAB), 2018 WL 1615840, at *1 (S.D.N.Y. Apr. 3, 2018) ("There is a long-established general presumption in favor of public access to judicial documents.") (internal quotation marks omitted); *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 467 (S.D.N.Y. 2017) (recognizing that the common law and First Amendment provide "related but distinct presumptions in favor of public access to court … records"); *Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 621 (S.D.N.Y. 2011) ("The burden of demonstrating that [judicial documents] should be sealed rests on the party seeking such action.").  Proposed Intervenors have never recognized that they carry the burden – on the contrary, the burden was and remains Respondent Maxwell's.

The presumption in favor of access to judicial documents is automatic and attaches *before* any balancing of interests is to occur.  *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,

No. 14-CV-6867 (VEC), 2016 WL 1071107, at *7 (S.D.N.Y. Mar. 18, 2016), *aff'd*, 814 F.3d 132 (2d Cir. 2016)*; see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 113 (2d Cir. 2006) (holding contested documents were judicial documents "to which a presumption of *immediate* access applie[d]".) (emphasis added).  In *Bernstein*, this Court clarified the proper order in which the presumption, and its weight, are to be analyzed:

> [The] balancing test only comes into play after a document has been held to be a judicial document subject to the presumption of access; the *strength* of the presumption can vary based on the role of the material at issue in the exercise of Article III judicial power.

2016 WL 1071107, at *7 (emphasis in original) (internal quotation marks omitted).

This presumption is grounded in principles of transparency and government accountability.  As recognized by the Second Circuit:

> [P]rofessional and public monitoring is an essential feature of democratic control. Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior. Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings. Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions.

*Amodeo II*, 71 F.3d  at 1048.  The importance of these core democratic principles is precisely why Respondent Maxwell's arguments are unavailing.  Maxwell argues that "Miami Herald has no hope of carrying its burden of unsealing every sealed document.  Because it has not seen each document it has *no ability to assess* whether a particular document is a judicial document…".  Opp. Mot. at 6 (emphasis added).  The very purpose of the presumption of access is to allow the public to monitor the materials that are filed in our federal courts.  To hold otherwise, as Respondent Maxwell encourages, would allow litigants to seal any document of their choosing, simply by

pointing to the fact that it was sealed in the first place.  That reasoning is circular, and the resulting situation is absurd.

Because the appropriate legal baseline is – contrary to Maxwell's contention – one of openness, attempts to seal judicial documents must be "carefully and skeptically review[ed] ... to insure that there really is an extraordinary circumstance or compelling need" to seal the documents from public inspection. *Video Software Dealers Ass'n v. Orion Pictures*, 21 F.3d 24, 27 (2d Cir. 1994); *see also Bernsten*, 2018 WL 1615840, at *5 (denying motion to seal where defendant failed to "present compelling countervailing factors that could overcome the presumption of public access" to court records.).  Indeed, decisions to seal must be supported by "specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *New York v. Actavis*, PLC, No. 14 CIV. 7473, 2014 WL 5353774, at *3 (S.D.N.Y. Oct. 21, 2014) (citing  *Lugosch*, 435 F.3d at 124).

Neither the original Protective Order (ECF. No 62), nor, especially so, the amendment to the Protective Order (ECF. No 348) contain the compelling reasons for closure required by the law.  As exhibited by the numerous motions to seal that were so-ordered, the Protective Order effectively rubber-stamped the litigants' designation of confidential material.  And the amendment to the Protective Order went further by affirming that each confidentiality designation would be granted *automatically*, and only subject to review upon the non-moving party's challenge.  (ECF. No. 348.)  As such, the Protective Order, and its amendment inappropriately shifted the burden from the party seeking closure to the one seeking access. This is contrary to the high standard required for closure under both the First Amendment and the common law.

## II.    THE DOCUMENTS REQUESTED ARE JUDICIAL DOCUMENTS

Respondent argues that the documents at issue are not judicial documents.  There is no legal basis for that contention because all documents filed with the court are generally considered

judicial documents.  *Under Seal*, 273 F. Supp. 3d at 467; *cf. Natixis Financial Products LLC v. Bank of America, N.A.*, 10 Civ. 3656, 2016 WL 7165981, at *3 (S.D.N.Y. Dec. 7, 2016) ("The papers at issue here were never submitted to the Court, and so no such presumption [of access] exists.")

There is no question that  "dispositive motions," like the motion for summary judgment at issue here, "are adjudications, and [a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." *Under Seal*, 273 F. Supp. 3d at 470 (citing *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982); *see also Lugosch*, 435 F.3d at 121 ("there is a presumption of access to documents submitted on a summary judgment motion"); *Bernstein*, 814 F.3d at 136 (holding that motions for summary judgments, as well as reports submitted in connection with a motion for summary judgment, are entitled a strong presumption of access); *Lytle*, 810 F. Supp. 2d at 622 ("As a threshold matter, there is no question that the summary judgment filings at issue here constitute judicial documents to which the presumption of public access applies.").  Respondent has identified no authority to the contrary – instead she merely makes the self-serving and dubious claim that some of the documents submitted *in support of the summary judgment motion* "did not bear on the summary judgment issues."  Opp. Mot. at 4-5.

Indeed, documents filed in support of non-dispositive motions are also considered judicial documents subject to the public right of access.  *See Alexander Interactive, Inc. v. Adorama*, *Inc.*, No. 12 CIV. 6608 PKC JCF, 2014 WL 4346174, at *2 (S.D.N.Y. Sept. 2, 2014) ("documents to be submitted are in support of a motion to compel discovery [] presumably will be necessary to or helpful in resolving that motion. They are, therefore, judicial documents."); *In re Omnicom Grp.*, No. 02 Civ. 4483 RCC/MHD 2006 WL 3016311, at *2 (S.D.N.Y. Oct. 23, 2006) (a "series of letter

6

briefs with accompanying exhibits…certainly qualify as judicial documents."); *Schiller*, 2006 WL 2788256, at *5 (briefs and supporting papers submitted in connection with a dispute over the confidentiality of discovery materials were "created by or at the behest of counsel and presented to a court in order to sway a judicial decision" and were therefore "judicial documents that trigger the presumption of public access").

In *Schiller*, the Court disagreed with the decision issued a previous case, *Diversified Grp., Inc. v. Daugerdas*, 217 F.R.D. 152 (S.D.N.Y. 2003), which held that only summary judgment documents -- and not the remaining documents related to "a discrete discovery issue"-- were "judicial documents."  In doing so, the *Schiller* Court reasoned that:

> The court's analysis appears to conflate the initial determination of whether material qualifies as a judicial document with the subsequent decision of how much weight to accord the presumption of access that attaches. It is only with respect to the latter issue that the nature of the ultimate adjudication becomes relevant; for example, greater weight may be assigned to the presumption of access where information is submitted in connection with a dispositive motion than where it is presented on a discovery dispute.

2006 WL 2788256, at *4.  As this reasoning makes clear, the *Diversified Grp.*, opinion incorrectly concluded that  the *type of document* at issue governs whether the document is a "judicial document."  In fact, a judicial document is simply one that is "relevant to performance of judicial function and useful in judicial process."  *Lugosch*, 435 F.3d 110, 119 (2d Cir. 2006).  As explained above, this includes discovery motions.  Only *after* the judicial determination is made may courts proceed to balance the *weight* of the presumption of access.  *Id.*

Respondent here makes the same error as the court in *Diversified Grp.*  In arguing that a particular document submitted in support of a summary judgment motion is not a judicial document, Respondent quotes *Lugosch*: "where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to

little more than a prediction of public access absent a countervailing reason," 435 F.3d at 119; Opp. Mot. at 6.  Respondent ignores that, in this very quote, the Court was analyzing the weight of the presumption of access, not whether the presumption exists in the first place.

By pointing out that several of the sealed documents contain either sensitive medical information (e.g. medical records) or irrelevant biographical information (e.g. Maxwell's passport application) (Opp. Mot. at 5-6), Respondent is doing precisely what should have been done at the outset: providing specific reasons why particular documents, or portions thereof, may be properly sealed.  As explained in depth in section I of this memorandum, it is Respondent's burden to justify sealing, and not the reverse.

## III. EVEN IF THE DOCUMENTS AT ISSUE ARE NOT "JUDICIAL DOCUMENTS" THE PROTECTIVE ORDER SHOULD HAVE REQUIRED THAT THE PARTIES DEMONSTRATE GOOD CAUSE FOR SEALING

Non-judicial documents are also presumptively open, and closure requires that a litigant establish good cause for sealing.  *Fournier v. Erickson*, 242 F. Supp. 2d 318, 342 (S.D.N.Y. 2003), is instructive.  In *Fournier*, this Court vacated a Stipulated Protective Order, in which the parties provided for the designation of material produced during discovery as protected material to be filed under seal.  *Id.* at 340.  This Court first noted that, once a protective order is issued, a party seeking to modify the protective order must show its improvidence or some extraordinary circumstance or compelling need."  *Id.* at 341 (citing *Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000)).  However, the protective order at issue – like the Protective Order in this case – improperly allowed the parties to designate material as confidential without judicial review:

> The Stipulated Protective Order not only asked the Court to defer to the parties' judgment on confidentiality but it also allowed for unilateral designation of an exhibit as protected material, and it did not list specific documents, or delineate the kinds of documents contemplated for protection.  *Defendants were never required to show good cause for sealing the various documents.*  This is the same kind of deference and pervasive protection without Court

> review that the Second Circuit found to constitute "extraordinary
> circumstances" justifying the unsealing of documents.

*Id.* at 341 (emphasis added). The Court pointed out the problem with such an order:

> [E]ach party could circumvent the "good cause" standard for
> protection and simultaneously shift the burden to his adversary to
> *unseal* a document while benefitting from the more rigorous
> "extraordinary circumstances" standard that would apply merely by
> unilaterally designating any given document as protected.

*Id.* (emphasis in original).  As a result, the protective order was vacated, and the parties were

instructed to "correct this state of affairs [in future motion practice] by specifically identifying each

document at issue and making arguments specifically pertaining to each one." *Id.* at n. 6; *see also*

*Savitt v. Vacco*, No. 95-CV-1842(RSP/DRH), 1996 WL 663888, at *5 (N.D.N.Y. Nov. 8, 1996)

(declining to issue a broad protective order and instead ordering defendants to submit "specific

suggestions as to each document or notation which they believe should be placed under seal.").  If

Respondent seeks to seal or redact any documents filed with the Court, the same should ordered

here.

## IV.   THE MOTION IS TIMELY AND SUPPORTED BY PLAINTIFF

Respondent cites no authority for her argument that Intervenors' motion is "late-by-a-year."

She cannot do so because it is well established that there is "certainly no requirement that [an]

application [for access] be made before the lawsuit is closed." *In re Pineapple Antitrust Litig.*, No.

04 MD. 1628 RMB MHD, 2015 WL 5439090, at *2 (S.D.N.Y. Aug. 10, 2015); *see also United*

*States v. Erie County*, No. 09-CV-849S, 2013 WL 4679070, *6 (W.D.N.Y. Aug. 30, 2013), *rev'd*

*on other grounds*, 763 F.3d 235 (2d Cir. 2014) ("[I]ntervention for the purpose of challenging

confidentiality orders is permissible even years after a case has been closed.").  Indeed, unlike the

previous motions to intervene (the Cernovich Motion, ECF. Nos. 362-64 and the Dershowitz

Motion, ECF Nos. 550-52) which were brought during active litigation, Proposed Intervenors'

motion has more weight because the case has now settled. This Court denied the Cernovich Motion in part because of the ongoing status of the litigation, and the risk that "a release of contested confidential discovery material could conceivably taint the jury pool." (ECF No. 892, at 7.) This risk is no longer relevant.

Moreover, Plaintiff, the party with the most sensitive information at stake, supports unsealing this docket. Like the Miami Herald, and unlike previous motions to intervene, Plaintiff supports the unsealing of the entire docket, so the public has access to the full picture of the lawsuit. Efforts to protect Plaintiff's privacy interests are therefore unnecessary.

Finally, if Respondent Maxwell believes that unsealing would result in the public disclosure of sensitive medical information, Proposed Intervenors submit that documents containing such information should be specifically identified and presented to the court for *in camera* review.

In sum, the potential harms that the original Protective Order, and the order denying the Cernovich Motion, sought to avoid no longer exist. To the extent that unsealing presents a risk that discrete pieces of personal information may be disclosed, *in camera* review and a narrow sealing order will obviate this problem.

## <u>CONCLUSION</u>

For the foregoing reasons, Proposed Intervenors' motion to intervene and to unseal all sealed or redacted docket entries should be granted.

Dated: May 4, 2018

Respectfully Submitted,

/s Christine N. Walz
HOLLAND & KNIGHT LLP