1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   VIRGINIA L. GIUFFRE,

4                    Plaintiff,

5            v.                              15 CV 7433 (RWS)

6   GHISLAINE MAXWELL, et al.,

7                    Defendants.

8   ------------------------------x
                                         New York, N.Y.
9                                        May 9, 2018
                                         12:10 p.m.
10
    Before:
11
                         HON. ROBERT W. SWEET,
12
                                            District Judge
13
                              APPEARANCES
14
    BOIES, SCHILLER & FLEXNER LLP
15       Attorneys for Plaintiff
    BY:  SIGRID S. McCAWLEY
16
    HOLLAND & KNIGHT
17       Attorneys for Movant MIAMI HERALD MEDIA CO.
    BY:  SANFORD L. BOHRER
18       MADELAINE J. HARRINGTON

19  HADDON MORGAN AND FOREMAN, P.C.
         Attorneys for Defendant Ghislaine Maxwell
20  BY:  JEFFREY S. PAGLIUCA
         LAURA A. MENNINGER
21
    EMERY CELLI BRINCKERHOFF & ABADY LLP
22       Attorneys for Intervenor Alan M. Dershowitz
    BY:  ANDREW G. CELLI
23
    RANDAZZA LEGAL GROUP PLLC
24       Attorneys for Invervenor Julie Brown
    BY:  JAY MARSHALL WOLMAN
25

1          THE COURT:  I'll hear the movant in Giuffre.

2          MR. BOHRER:  Your Honor, may I deal with one

3 preliminary thing first?

4          THE COURT:  Sure.

5          MR. BOHRER:  My assistant working with me,

6 Ms. Harrington -- she's done everything to get admitted.  She

7 has an admission date in July, but she's not actually admitted

8 to the court.

9          Is it okay if she sits here with me?

10          THE COURT:  Of course.  Delighted to have you.

11          MR. BOHRER:  Are you allowed to admit her?

12          THE COURT:  Certainly I'll admit her pro hac vice.

13          MR. BOHRER:  Thank you, your Honor.

14          Your Honor, my name is Sandy Bohrer with the law firm

15 of Holland & Knight.  We represent the *Miami Herald*.  We're

16 seeking to intervene.  We're the third party that's sought to

17 intervene.

18          The *Miami Herald* does investigative reporting.  My

19 reporter is an award-winning investigative reporter.  We're

20 seeking access to the entire file.  I realize that before us,

21 two people came in and sought access to different portions of

22 the file.  But I think the circumstances have changed now and

23 the situation has changed now such that the Court should be in

24 a position where it should look favorably on our motion.

25          First, your Honor, one of the things that's changed is

1      there is no impending trial.  If the Court recalls, in your

2      order --

3                THE COURT:  I do recall.

4                MR. BOHRER:  The case has been settled.

5                The second one is the Court was concerned about the

6      revelation of embarrassing information or, worse perhaps I

7      suppose, private information, about the plaintiff.  But the

8      plaintiff now, with regard to my motion -- and obviously her

9      counsel can speak for herself -- has agreed to our motion if it

10     results in opening the whole file.  So I think that the

11     underpinnings for the last order are not there anymore and we

12     have to find another way, if this motion to unseal is to be

13     denied.

14               My clients aren't here for prurient interest, and of

15     course we would agree to things like redacting names and

16     substituting initials and things like that.  They don't

17     identify the names of victims of sexual assaults.

18               But the law is such that we have to decide what

19     standard applies.  But in any event, a standard applies.  In

20     the Court's original order, the confidentiality order, it gave

21     the parties a lot of latitude to determine something to be

22     confidential, and then it could be challenged later.

23               And then subsequently after, it looked to us from an

24     incomplete view of the record, 35 motions, the Court said that

25     basically the parties no longer have to send a letter to the

1    Court, and that left to the parties the discretion to

2    determine --

3              THE COURT:  No.  I don't think that's quite right.  I

4    think the order said you could proceed by letter rather than my

5    motion.  That's all.

6              MR. BOHRER:  Yes.

7              THE COURT:  But the same provisions applied.  It was,

8    in effect, a you-had-to-be-there.  The motions, to say the

9    least, were multitudinous.

10             MR. BOHRER:  We got a taste of that, your Honor.

11   There are two ways of looking at judicial access in our federal

12   court system.  One is the common law right of access to

13   documents, and the other is the First Amendment.

14             I'll go into it in a minute.  Either way, there was to

15   be a showing by the party seeking to seal that a particular

16   test has been met with regard to the document at issue.

17             The courts have held pretty strictly, according to our

18   appellate courts, that it's a document-by-document basis.  I

19   understand from what the Court just said that a

20   document-by-document basis is kind of a problem in this file,

21   but that is the law.

22             So if it is a judicial document, then the common law

23   right applies and we have a certain standard.  If it's a

24   document recognized by the First Amendment as a judicial

25   document, then we have a different test.  So, if it's not a

1    judicial document, for example, you still have to show a good

2    cause, "you" being the party seeking to seal, not the party in

3    my position.

4              And in the *Fournier* case which we cite in our

5    papers -- that case says you can't just simply do it.  You're

6    going to have to show on a case-by-case, document-by-document

7    basis to the trial court that there is a basis for it.  So

8    what's a judicial document, and everybody seems to have their

9    idea about what it is.

10             In *Lugosch*, if I'm pronouncing that correctly, the

11   Second Circuit says it's "a document relevant to performance of

12   judicial function and useful in judicial process."  I want to

13   stress, your Honor, that I understand that documents can be

14   filed for purposes that lawyers shouldn't file them.

15             Someone could file a complaint making a bunch of

16   allegations just to get it in a newspaper and the allegations

17   aren't true and they take a dismissal after the newspaper

18   humiliates a defendant.  But that's not where we are, and

19   that's not what we're looking for.

20             We're looking for papers, for example, relating to

21   summary judgment, after we've gotten past the what's

22   frivolous/what's meritless basis, what is an issue of fact for

23   trial or not.  So relevant to performance judicial function and

24   useful in judicial process is a good standard, and it's a

25   Second Circuit standard.

1           The Second Circuit's decision in the *Under Seal*

2     case -- these are all cases cited in our papers -- says there

3     is a presumption of access to all filed documents, and I

4     understand that lawyers, although not necessarily in this case,

5     can file documents for inappropriate purposes, not to be

6     judicially resolved.  But clearly dispositive motions have a

7     presumption of access and are judicial documents.

8           There's *Logosch* and a bunch of other cases we cited,

9     including the Second Circuit's decision *Joy*.  The *Lytle* case we

10    cite makes it a point that there is no question that those are

11    judicial documents.

12          We've also asked for, because we don't know exactly

13    what else is in the record, for things like motions to compel

14    or motions for a protective order, the other side of that.  Not

15    knowing what's in them, we can't be sure that there is not a

16    basis in a particular paper for sealing or redacting a portion

17    of that paper.  We don't know because none of it is public.

18          But there are cased that cited -- *Alexander*

19    *Interactive* is one of them -- that say there is a presumption

20    of access to those papers too because there is a judicial

21    function associated with every one of those motions, every

22    single one of them.

23          Again, we assume -- and *Logosch* made a point of

24    this -- that lawyers, when they file papers, know that Rule 11

25    means you don't file papers that are irrelevant to the issue

1    before the court for some improper purpose.

2         So we're assuming everything in this file was filed --

3         THE COURT:  My mentor in this business was J. Edward

4    Lumbard.  When I was an assistant United States attorney,

5    Lumbard would have meetings of the office and try to educate us

6    on appropriate conduct and rules and whatever.  One of J.

7    Edward's rules was never assume a God damn thing.  I make that

8    comment because of your assumptions.

9         MR. BOHRER:  Well, I'm trying to --

10        THE COURT:  I understand your problem.  Because of the

11   record here, clearly I do understand.  But I couldn't resist.

12   I apologize.

13        MR. BOHRER:  I accept, your Honor.

14        The only opposition at this point at this stage is by

15   Defendant Maxwell.  Defendant Maxwell has a slim set of papers

16   in opposition, and they don't really dispute any of the basic

17   principles I've just gone over.

18        If you find that a document is a judicial record,

19   according to *Logosch*, you can only seal those records based on

20   findings made in the public record demonstrating that closure

21   is essential to preserve higher values and is narrowly tailored

22   to that interest.  That comes from Supreme Court decisions.

23        So we're at a point where, had my client been looking

24   at this issue earlier, it would be easier to do.  But the fact

25   is all of the records that were sealed in this file were sealed

 1    without a determination by the Court that met the standard in

 2    *Logosch* or met the standard I noted in *Fournier*, the good-cause

 3    standard where the Court has to make a finding.

 4            Ms. Maxwell's lawyers do point out that there are

 5    documents in the file that won't qualify for access or won't

 6    require redaction.  For example, it could be an attorney-client

 7    privilege document.  It could be something that's embarrassing

 8    that's irrelevant to the proceedings.

 9            Again, I can't assume whether that's right or wrong,

10    but I noted that of the two examples she gave, one of them had

11    to do with plaintiff and plaintiff's passport information, and

12    plaintiff has agreed to open the whole file up.

13            Now, maybe they'll have some things they'll want to

14    redact -- we don't have a problem with those -- Social Security

15    numbers, that sort of thing.  My client and my reporter write

16    about those things all the time.  She writes about children.

17    She writes about public officials whose information needs to be

18    redacted for safety purposes.

19            But the bottom line, your Honor, is without

20    on-the-record findings meeting one test or the other, good

21    cause if it's not a judicial document or the higher standard if

22    it is, the record must be open.  The and truth is that

23    Ms. Maxwell has not asserted that there is anything in the

24    record to support that.

25            The truth also is that something, for example, the

 1   motion for summary judgment -- and I have read the redacted

 2   order granting the motion for summary judgment -- without such

 3   a showing all has to be opened up.  The motions to compel would

 4   have to be opened up.  Yes, there might be redactions, and my

 5   client is willing to cooperate in all regards to that.  We do

 6   this all the time.  I do other public records and judicial

 7   records access.  But the bottom line is that this has to be

 8   done, or the records have to be open entirely.

 9           Now, there are a couple little points, whether our

10   motion is timely.  The law is pretty clear that it was timely.

11   We cited a whole series of decisions.  One of them is the

12   *Pineapple Antitrust* case.  There is no deadline for filing a

13   motion such as my client's.

14           The second one is there is the argument that, well,

15   there may be some people who relied on the order, provided

16   information with a confidentiality notation of some kind, and

17   what about them.

18           I think there are a few things to say about that:

19   First, if the confidentiality order was not entered and the

20   confidentiality determination not made in accordance with the

21   law, the order is not valid.  And it's unfortunate, but it

22   still gets opened up.

23           The second thing is -- and *Logosch* makes this point --

24   with even the confidentiality the Court entered, which seemed

25   to me, the initial one, the standard one that lawyers use all

1    over the United States, it provides for people coming back in

2    and saying, I challenge it.  I want to open it up.  I want to

3    unseal it.

4            So no one, as the Second Circuit said, should assume

5    it's closed forever once it gets in a court record.  We're not

6    seeking things that were never filed.  We're not seeking

7    records that could have been filed but weren't filed.  We're

8    just seeking access to this court file.

9            My client is doing a report, which unfortunately is

10   all too timely today, about a sexual predator and a sexual

11   trafficking scheme, and this case relates very much to it.

12           We have a lot of information in Florida where

13   Mr. Epstein committed his crimes, but when she learned about

14   this case, we realized that there is more there.

15           Our purpose is not prurient.  It is to inform the

16   public.  It is to prevent things like this from happening and

17   to prevent such abuses.  This is the purpose of the press in

18   America.

19           We're the watchdogs.  We make sure things don't slip

20   by.  We make sure things are done right.  We make sure that

21   people like Mr. Epstein and people associated with him,

22   allegedly including Ms. Maxwell, are held up to public scrutiny

23   such that other people won't do it in the future and the right

24   gets done.

25           So, your Honor, we ask that the motion be granted;

1    that the file be unsealed.  Thank you.

2             MS. McCAWLEY:  Your Honor, may I be heard on behalf of

3    the plaintiff?  Just briefly.  Our position is very simple here

4    with respect to Virginia.

5             Our position is if one docket entry is opened, all

6    must be opened.  There can be nothing in between because what

7    would happen is if, for example, as what was presented to the

8    Court previously, only a few documents were unsealed, only a

9    partial piece of testimony was unsealed, that would create an

10   incomplete record.

11            Virginia is prepared to stand up to her abusers, but

12   she can't do so with her hands tied behind her back.  She has

13   to have the entire record available.  It's either all or

14   nothing.  Anything less than that would be inherently unfair to

15   her because obviously we have operated under the confines of

16   this protective order throughout the case.  So while we do

17   oppose a selective disclosure, we don't contest, as long as

18   there is an entire disclosure.

19            What that means, your Honor, is with respect to all of

20   the record entries -- so, for example, the summary judgment,

21   while that had certain information that was presented to the

22   Court, it didn't have everything.

23            So after the summary judgment, your Honor will

24   remember there was other witness testimony that was presented

25   and put in the court record.  There were designations for trial

 1   that were put in the court record that tell the story of the

 2   abuse.

 3            So in order for her to be able to respond to public

 4   attacks on her, she has to have the information available to

 5   her.  If it's sealed, she has to abide by that seal.  So she

 6   would be in a terrible position if she wasn't able to defend

 7   and support her own position with the testimony of those others

 8   who echoed her position.

 9            So, your Honor, that's where we stand on this.  We

10   firmly believe that in order for the complete story to be told

11   and to be public, if that's what's going to happen, it has to

12   be the entire record.  Anything less than that would be

13   inherently unfair to the plaintiff.  Thank you.

14            MR. PAGLIUCA:  Good afternoon, your Honor.

15            THE COURT:  Welcome back.

16            MR. PAGLIUCA:  Thank you.  It's good to see you again.

17            Your Honor, as unpleasant as this may be, I think it's

18   important to go back over the history of the protective order

19   in this case and some of the many squabbles and disputes -- and

20   I emphasize the word "many" -- that the parties had in

21   connection with the discovery in this case.

22            The Court may recall that about two years ago,

23   March 17, 2016, Ms. McCawley, Ms. Menninger, and I were in the

24   courtroom.  At that point in time, Ms. McCawley was very

25   anxious to depose my client in a very short period of time.

1          The position of the parties then was we'll sit for a

2    deposition, but we need a protection order in place before we

3    do that, and it has to be agreed upon and ordered by the Court.

4          I mention this, your Honor, because throughout the

5    history of this case, the protection order has played a central

6    part and has been relied on by the parties, the Court, and the

7    witnesses and relied on in a way that I believe, frankly, that

8    Ms. McCawley's position is not well-founded here because indeed

9    there are many judicial admissions by the parties to this case

10   during the course of the case where they relied on and asked

11   the Court to endorse and protect the parties and the witnesses

12   under the protection order.

13         So the first example of this, your Honor, which I

14   think is important with regard to the reliance issue is that

15   March 17, 2016, hearing before your Honor.

16         Ms. McCawley was pressing hard for a deposition date,

17   and we hadn't gotten all of the documents, and we hadn't had a

18   protective order.  And Ms. McCawley says -- and this is at page

19   9 of that transcript, your Honor, dated March 17, 2016 --

20   "Your Honor, if I can have the deposition of the defendant in

21   this case and move this case forward, I will agree to their

22   protective order.  I just want that deposition."

23         And the Court says:  "Yes."

24         Then Ms. McCawley says:  "It is that important to me."

25   Then she says:  "Your Honor, you can today enter the protective

1   order that they submit.  I will disregard my objections if I

2   get the deposition."

3           The Court:  "You will agree now to the protective

4   order?"

5           Ms. McCawley:  "Yes.  If it means I can get her

6   deposition, yes, I will do that."

7           The Court:  "oh, okay.  Good.  Well, that's solved

8   then."

9           Well, that solved it for the course of this case,

10  your Honor, and it should solve it now.

11          The Court may then recall that we sat for that

12  deposition, and we disagreed about many of the questions that

13  were asked to our client because of her privacy concerns.

14          Ms. Maxwell has and had a constitutional right of

15  privacy and, on my advice, refused to answer a number of

16  questions related to what I will loosely characterize as her

17  "adult sexual conduct."

18          We were back in front of the Court on a plaintiff's

19  motion to compel answers to those questions where we asserted

20  Ms. Maxwell's privacy interest in not responding to those

21  questions.

22          We cited to the Court a number of cases, including *Doe

23  v. Bolton*, a U.S. Supreme Court case, which holds:  "Personal

24  sexual conduct is a fundamental right protected by the right to

25  privacy."

1          In response to that, the plaintiffs said to the Court:

2     "well, your Honor, we have a protective order in place, and

3     that assures Ms. Maxwell's right to privacy in answering those

4     kinds of questions."  And that was their response in docket

5     number 152 which was filed with the Court on May 11, 2016.

6          And the Court accepted that response and held, in

7     compelling Ms. Maxwell to answer those questions, her private

8     questions about her own life -- the Court ruled that:  "The

9     privacy concerns are alleviated by the protection order in this

10    case drafted by the defendant."

11         So we lived with the protection order, and we answered

12    those questions.  And that order was entered by the Court on

13    June 20, 2016.

14         I don't agree with the movant's counsel, and I don't

15    assume, your Honor, that the documents in this case were filed

16    for a good purpose.  I complained early and often to this Court

17    about statements made by opposing counsel and documents filed

18    with the Court which I viewed to be not judicial documents, not

19    necessary for the determination of any issue in this case, but

20    simply filed in some effort to try to get the story that they

21    were promoting out to the Court.

22         There is virtually no document that was presented to

23    this Court that, in my view, throughout the majority of this

24    case, had a legitimate function other than to advance the

25    agenda of the plaintiff in this case.

```
 1                I move on to the witnesses in this case who relied on

 2      this protection order, your Honor.  There were 29 depositions

 3      taken in connection with this case.  Many of these witnesses

 4      were represented by lawyers.  Many of these witnesses did not

 5      want to be deposed, and the Court may recall that the Court had

 6      to issue a number of orders compelling the deposition testimony

 7      of many of the witnesses.

 8                The Court's protection order was a significant factor

 9      in securing the testimony of these witnesses.  Counsel for both

10      parties would get contacted by either the deponent or the

11      lawyer for the deponent.  And they would raise concerns about

12      what's going to happen to my testimony?  Who is going to get

13      access to it?  You are asking me about many private issues.

14                And this would include alleged victims of Mr. Epstein

15      who did not want to testify in deposition who were represented

16      by lawyers.  It would include other people who were accused by

17      plaintiff's counsel as participants with Mr. Epstein.

18                I will give one example to the Court.  I will refer to

19      this witness only as Nadia.  She was deposed, compelled to be

20      deposed, after much litigation.  She was represented by a

21      lawyer here, Erica Dubno.

22                We start the record in that deposition with Ms. Dubno

23      saying:  "We believe this deposition is pursuant to a

24      protective order.  We want to ensure the confidentiality of

25      everything that occurs during this deposition and that all
```

1    parties agree to a protective order for confidentiality of this

2    deposition."  That's at page 6 of Nadia's transcript.

3         Mr. Edwards was in attendance at that deposition,

4    your Honor, and assured the witness and her lawyer:  "This and

5    the other depositions that are designated as confidential are

6    being treated as confidential by the Court."  That's what

7    Mr. Edwards, plaintiff's counsel, tells the witness and her

8    lawyer.

9         I indicated:  "I have no objection to this deposition

10   being deemed confidential and subject to the protection order,"

11   And Mr. Edwards agree, "No objection."  That occurred a number

12   of times during the course of this case.

13        So we have these third parties who, through no fault

14   of their own, are being questioned about extremely sensitive

15   personal matters and are doing so under compulsion and with the

16   understanding that they are protected by this Court's

17   protective order.

18        So the fact that the plaintiff is somewhat

19   flip-flopping here on this issue I think is really of no

20   consequence because it is the Court's order.  It is not

21   Ms. McCawley's order.  It's not my order.  It's the Court's

22   order.

23        It was stipulated to by the plaintiff, and the

24   plaintiff relied on it.  And in my view, these are judicial

25   admissions that can't be taken back at this point because they

 1    were relied on to advance their position during the course of

 2    the litigation, and you can't change that now because there is

 3    some other agenda here.

 4            The other thing that I think is interesting, if you

 5    read carefully the plaintiff's papers, is they're not really

 6    agreeing to really anything.  What they're agreeing to is maybe

 7    it's okay if the entire record gets unsealed, but, gee.  There

 8    are things in there that we think probably shouldn't be

 9    unsealed anyway, and we're going to need to talk about that

10    down the road, which I think leads to then a discussion of kind

11    of what we're talking about in the universe of documents here

12    that the Court has to consider.

13            The Court is well aware that there are over 900

14    filings in this case, and I would group those into largely two

15    categories.  The first would be discovery squabbles by the

16    parties, and then the second would be the flurry of pretrial

17    motions that the Court was deluged with shortly before trial a

18    year ago and then the summary judgment motion.

19            The Court did not rule on, I would say, the vast

20    majority of the pretrial motions that were pending when the

21    parties settled the case.  I don't recall, frankly, how many of

22    those that there were, but I know that there were banker's

23    boxes of papers that the Court had that were under

24    consideration for those motions.

25            I break these categories out because indeed the

1    overwhelming record in this case is that these are not judicial

2    documents, and in fact, the Court didn't rule on a huge number

3    of the filings that were before the Court.  So I don't see how

4    anyone could consider these to be judicial documents because I

5    don't believe that they were considered by the Court, given the

6    settlement of the parties.  So that's the universe of what

7    we're talking about here.

8         The *Lugosch* case -- the subject matter of that is a

9    motion to intervene with regard to a summary judgment motion.

10   Here we have a different situation.  The intervenor, late to

11   the party by three years at this point, asks to unseal 900

12   filings with this Court.

13        So I don't understand how you can sit on your hands

14   for three years and then come in and say, well, there's this

15   enormous public interest in this case which, by the way, the

16   *Miami Herald* has not published one article about this case,

17   your Honor.  Not one.  So there is no interest in this case.

18   They may be interested in Mr. Epstein, but I'm not here

19   representing Mr. Epstein.

20        We know -- and the Court knows this -- that just

21   because something gets filed, it's not a judicial document, and

22   it's not entitled to any sort of access presumptively.

23        So let's assume for a moment that there is something

24   that the Court considers a judicial document in this pile.  We

25   first to have to look at has the movant established that this

1    is a judicial document.

2              I don't have the burden of establishing whether these

3    are judicial documents or not, and the Court is in a position

4    of determining whether these are judicial documents, not me and

5    not the movant.

6              Then we talk about the weight of presumption of

7    access.  And, again, the vast majority of all of the papers

8    before the Court were not germane, in my view, to any of the

9    Court's determinations here.  They were, in my view, simply

10   added for effect and had really no purpose in connection with

11   the pleadings.

12             The Court has to do a balancing test.  This is a

13   nonexclusive list of factors, but two of the factors that are

14   discussed in *Lugosch* are the privacy interests of those

15   resisting discovery, judicial efficiency, and then there is a

16   discussion about reliance on the protection order.  The Court

17   can use any of those factors to find that any of these

18   documents should not be disclosed or not accessible by the

19   public or the media.

20             Judicial economy was in fact advanced, your Honor, by

21   the way that these documents were handled and should be

22   handled.  The Court addressed this issue in its opinion I think

23   issued on June 20 -- let me find the date.  Sorry.  November 2,

24   2016, your Honor.

25             I think sort of presaging some of these issues, I

1   quote the Court to the Court:  "By the very nature of this

2   action, issues of credibility and reputation abound concerning

3   sensitive personal conduct."

4          The parties and the Court recognized early on the good

5   cause for the protective order which was entered "to protect

6   the discovery and dissemination of confidential information or

7   information which improperly annoy, embarrass, or oppress any

8   party, witness, or person providing discovery in this case."

9          The Court went on to say that there is no dispute that

10   the documents, at least with regard to this order, were

11   confidential and that they were, the Court found, properly

12   designated as such.

13          All of the documents that have been submitted in

14   connection with this case are highly sensitive confidential

15   documents that relate to very private matters of many

16   individuals.

17          Everyone associated with this case relied heavily on

18   this protection order throughout the conduct of this case, and

19   that includes the Court, the witnesses, and the parties.

20          I think that the Court has, at least twice now, found

21   that this protection order should remain in effect.  And it

22   should continue the protection order because the privacy

23   interests and the reliance, certainly of Ms. Maxwell, on the

24   protection order outweigh any need or presumption of

25   disclosure.

1          Thank you, your Honor.

2          MR. WOLMAN:  Your Honor, my name is Jay Wolman.  I

3    represent Intervenor Michael Cernovich.

4          May I be heard for a minute?

5          THE COURT:  Sure.

6          MR. WOLMAN:  My brother at the bar mentioned the

7    changing positions of plaintiff in this matter, but let's first

8    focus on the changing position of the defendant.

9          We moved for unsealing the summary judgment motion,

10   all the attachments, all the opposition, the order that would

11   be forthcoming.  At that time Ms. Maxwell did not oppose, but

12   now, only after settlement, only after a year, do we have her

13   finally coming in to say, well, now it should be remaining

14   sealed.

15         Similarly, as your Honor is probably aware, we have

16   appealed your Honor's order to the Second Circuit.  Ms. Giuffre

17   has appeared to argue against it, but Ms. Maxwell hasn't.

18         So right now with Ms. Giuffre's position, if she's

19   saying you can release summary judgment materials but we want

20   other things released as well, then really there is no barrier

21   to the Second Circuit reversing your Honor's order at this

22   point and at least, at a minimum, releasing the summary

23   judgment materials because Ms. Maxwell certainly hasn't argued

24   that that should be prohibited.  Only now has she changed her

25   position.

1          As to Ms. Giuffre, when we were here previously,

2     your Honor, the plaintiff was arguing that there were privacy

3     interests and reasons why it should not be released.  She's not

4     arguing that anymore.  All she's saying now is that there is

5     secondary gain.  She wants a secondary use to be able to

6     release the rest.  And certainly we don't object to releasing

7     the rest of the materials.

8          But at least as to the summary judgment materials,

9     there is no basis to keep X under seal because Y is also kept

10    under seal.  That is not a rule.  That's not a thing under the

11    law.  There is not a single precedence cited for that

12    proposition because every document is considered in its

13    individuality.

14         I want to address one other point here that seems to

15    get conflated.  It was conflated in the prior arguments.  It's

16    conflated here.  It was conflated, unfortunately, I believe in

17    your Honor's prior order.

18         There is the protective order issued under Rule 26(c)

19    that provided for confidentiality designations.  We're not here

20    about that.  We are here about the sealing order under

21    Rule 5.2, and that has its own separate standard for sealing,

22    documents that may or may not have been designated confidential

23    under a Rule 26(c) order, but findings as to 5.2 individually

24    need to be made, and they were not made here.

25         There may be grounds why something that's designated

1    confidential may need to be sealed under 5.2, but it's not

2    automatic.  And in fact, your Honor started out by saying that

3    the parties still had to submit letters at one point.

4          Your Honor changed that requirement and allowed the

5    parties to just submit filings under seal.  They had to publish

6    redacted versions, but they were able to submit unredacted

7    under seal with public redactions, which is why even last night

8    Professor Dershowitz's counsel was still filing something

9    automatically with redactions, because that order is still in

10   place.

11         So we need to bifurcate the issues of what is proper

12   to be sealed under 5.2, and certainly the summary judgment

13   materials should not have been sealed and should be unsealed

14   right now.

15         It is not too late for the news to be interested.  It

16   was not late a year ago when we were interested, and certainly

17   we would have that access, should the Second Circuit grant it

18   to us anyhow.

19         So now under 5.2, we need to look at it.  And even to

20   the summary judgment materials Ms. Maxwell argued in her papers

21   that there are some documents that may need certain redactions

22   or were irrelevant.

23         If they were irrelevant in her motion for summary

24   judgment, why was she attaching them to her summary judgment

25   motion.  They certainly need to be relevant to the judicial

1    function of this Court.

2         The Court may consider *Alexander Interactive* for why

3    everything else are judicial documents and should be unsealed.

4    Thank you, your Honor.

5         MR. CELLI:  Your Honor, may I be heard?  I'm Andrew

6    Celli for Alan Dershowitz.  Good afternoon.

7         Very briefly, your Honor, as your Honor is aware, Alan

8    Dershowitz is an intervenor in this case.  We have been

9    litigating for nearly two years to unseal portions of this

10   record.  And our appeal, along with Mr. Cernovich's appeal, is

11   pending in the Second Circuit as we speak.

12        We just want to say that we generally support the

13   application of the *Miami Herald*.  We filed a letter along these

14   lines last night, and that letter directs the Court's attention

15   to document number 902 on the docket which was a letter that we

16   wrote to your Honor in June of 2017 more or less predicting

17   this exact turn of events and calling for -- this may be the

18   only time we agree with Ms. Giuffre's counsel on virtually

19   anything -- a fulsome release of information if there is going

20   to be any release at all.

21        So I just wanted to make that point orally.  It's in

22   our letter, and we appreciate the Court's consideration.

23        THE COURT:  I've read it.

24        MR. CELLI:  Thank you, sir.

25        MR. BOHRER:  Your Honor, might I be heard briefly in

1    reply?

2              THE COURT:  Of course.

3              MR. BOHRER:  Thank you.

4              Your Honor, I don't think I need to add anything to

5    what the plaintiff said.

6              Defendants' counsel -- they filed a response, but

7    nothing he said today was in the response.  Basically he's

8    saying, take my word for it.  Everything should stay sealed,

9    and that's exactly what the courts say you cannot do.

10             So he talks about reliance on the order and reliance

11    by witnesses.  We don't have anything in the record to indicate

12    what witnesses relied on what, but I will say this:

13    Depositions are not judicial records.  Filed depositions, if

14    filed for a proper purpose, are.

15             I don't know what was told to these witnesses or not

16    told to them.  I do know that we can protect them by

17    eliminating their names and substituting some kind of

18    initialing system that doesn't identify them.  This is just the

19    point.  They need to come in and show you.

20             It struck me that when they talk about reliance on the

21    order, your order, it says:  "This protective order may be

22    modified by the Court at any time for good cause."

23             So everyone looking at it knows just what the Court in

24    *Lugosch* was saying.  You can't rely on a confidentiality order

25    to be forever.  Once a document gets filed, it's at risk of

1   being disclosed, even if it was filed under seal and even if

2   the sealing was appropriate in the circumstances but later

3   becomes inappropriate.

4           So the *Lugosch* case again at 126 makes it quite clear

5   that you can't just rely on a confidentiality order which

6   actually isn't designed for this purpose.

7           The Court will recall your initial order said if you

8   want to seal something, confidential is one category.  If you

9   want to seal something, as counsel just said, you have to file

10  a motion under seal.  There is a local rule on sealing.

11          Counsel for Ms. Maxwell suggested that there are

12  documents that were filed that were relevant.  I won't assume

13  what he said was correct because I can't assume one way or the

14  other, but basically he said over and over again, take my word

15  for it.  Everything should stay sealed.

16          And I say over and over again that's not what the

17  Second Circuit and, indeed, the Supreme Court of the

18  United States will permit.  It has to be done on a

19  document-by-document basis.

20          Whatever he said, there is a way to do that on the

21  record.  Whatever he said should be sealed.  There is a way to

22  handle that on the record.  I'm not asking this Court to do

23  that, but in Florida where I practice more, most of the time,

24  judges routinely allow me to participate in in-camera

25  examinations -- videos, documents, hearings, testimony -- to

1    help the Court determine whether something should be kept out

2    of the public eye.

3            I do that with an agreement to never reveal to my

4    client anything that I saw, observed, heard, learned during

5    that process.  The reason for that is it speeds it up.  It

6    speeds it up because it helps keep the lawyers honest.

7            Counsel said there are 900 filings.  Okay.  We aren't

8    even able to see what a bunch of these documents are by name.

9    More importantly, Ms. Maxwell does not say anything about how

10   the law actually applies here.

11           And I want to just stress that on judicial documents,

12   recognizing that this case is settled and it's not pending for

13   a jury trial anymore.  In *Lugosch* they talk about how access

14   should be generally speaking, always permitted when it's a

15   case-dispositive motion.

16           When I get to the conclusion -- I don't know how there

17   is any way to read *Lugosch* as anything but supporting our

18   position -- the court says, the Second Circuit, the

19   United States Court of Appeals says:  "We hold that documents

20   submitted to a court in support of or in opposition to a motion

21   for a summary judgment are judicial documents to which a

22   presumption of immediate public access attaches under both the

23   common law and the First Amendment."

24           And they talk about the higher burden.  If it's a

25   First Amendment covered document, it can only be overcome by a

1    specific on-the-record finding that higher values necessitate a

2    narrowly tailored sealing.  None of that was done here, and

3    they're not urging it.

4           They're continuing to urge wholesale sealing.  That's

5    wrong.  The Second Circuit actually said it could go back to

6    the district court, and if these folks want to push the issue

7    on what should be sealed and what shouldn't, they should do it.

8           But then the Second Circuit said:  "We take this

9    opportunity to emphasize that the district court must make its

10   findings quickly."

11          And they go into, word after word and sentence after

12   sentence, about how important it is that public access, if it's

13   to be there, not be delayed any further.  The decision in the

14   case is inescapable.  Their ruling, at least as it goes to

15   anything that's case dispositive, is inescapable.

16          The authorities we cited for other acts of the

17   judiciary, judicial acts that relate to documents, are

18   unrebutted.  Ms. Maxwell's lawyers, neither here today orally

19   nor in their papers, said anything that we said about that is

20   wrong.  So where we are is very clear.

21          To determine whether docket entry 781 is a judicial

22   record, I can't do that.  I'm happy to participate in an

23   in-camera process.  I'm happy to participate if a magistrate

24   judge or a special master is appointed in a way where I have to

25   maintain the secrecy until the Court orders it.

1    But the fact is if 781 is a judicial document or not

2    has never been determined.  Is 684.  I don't know what's in

3    these documents.  So, your Honor, we're left with what the

4    Second Circuit said we need to do.

5    We need to go, if Ms. Maxwell's lawyers really want to

6    do it, document-by-document.  But first I think the Second

7    Circuit is quite clear.  All of the papers relating to summary

8    judgment have to be opened.  I don't think there is a way of

9    escaping that.

10    We are always open, on behalf of my client, in this

11    proceeding or others, to talking about what might be private

12    and needs to be protected or redacted.  But Ms. Maxwell has

13    turned everything on its head.  The rule is we have access

14    unless they can show it shouldn't be done, and they haven't

15    done it.

16    And talking about things that I have no knowledge

17    about and suggesting to the Court that you should make a

18    ruling, again, based on something where no showing is made, is

19    just wrong.

20    I should have the opportunity -- everyone in the

21    public should have the opportunity if they want to -- to come

22    in and say, no.  No.  We think that should be public.

23    And the burden is on the party, in this case,

24    Ms. Maxwell, to show you why it shouldn't be public, and they

25    haven't done that.  And just saying it doesn't make it true.

1   We believe the motion should be granted and the file opened to

2   the public.  Thank you.

3            THE COURT:  Thank you very much.  I will reserve

4   decision.

5            (Adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25