UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

|  | X |
|---|---|
| VIRGINIA GIUFFRE, | : |
| Plaintiff, | : |
| | : |
| against | : |
| | : |
| GHISLAINE MAXWELL, | : |
| | : |
| Defendant. | X |

Case No. 15-cv-7433(RWS)

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that Julie Brown and Miami Herald Media Company ("Miami Herald"), Intervenors in the above-captioned case, hereby appeal to the United States Court of Appeals for the Second Circuit from the Memorandum and Order dated August 24, 2018, and entered in this action on August 27, 2018.

Dated:   September 26, 2018
         New York, New York

Respectfully submitted,

/s/ *Christine N. Walz*

Sanford L. Bohrer
Sandy.Bohrer@hklaw.com
Christine N. Walz
Christine.Walz@hklaw.com
Madelaine J. Harrington
Madelaine.Harrington@hklaw.com
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Telephone: 212.513.3200
Fax:  212.385.9010

*Attorneys for Intervenors Julie Brown*
*and Miami Herald Media Company*

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

VIRGINIA GIUFFRE,

                    Plaintiff,                    15 Civ. 7433
                                                  OPINION
      -against-

GHISLAINE MAXWELL,

                    Defendant.

----------------------------------------X

A P P E A R A N C E S:


      Counsel for Intervenors Julie Brown
      & Miami Herald Media Company

      HOLLAND & KNIGHT LLP
      31 West 52nd Street
      New York, NY 10019
      By:   Christine N. Walz, Esq.
            Sanford L. Bohrer, Esq.


      Counsel for Plaintiff Virginia Giuffre

      BOIES SCHILLER & FLEXNER LLP
      401 E. Las Olas Boulevard, Suite 1200
      Fort Lauderdale, FL 33301
      By:   Sigrid S. McCawley, Esq.
            Meredith L. Schultz, Esq.

      BOIES SCHILLER & FLEXNER LLP
      333 Main Street
      Armonk, NY 10504
      By:   David Boies, Esq.

      EDWARDS POTTINGLER LLC
      425 North Andrews Avenue, Suite 2
      Fort Lauderdale, FL 33301
      By:   Bradley J. Edwards, Esq.

S.J. QUINNEY COLLEGE OF LAW
UNIVERSITY OF UTAH[1]
383 University Street
Salt Lake City, UT 84112
By:  Paul G. Cassell, Esq.


Counsel for Defendant Ghislaine Maxwell

HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
By:  Laura A. Menninger, Esq.
     Jeffrey S. Pagliuca, Esq.
     Ty Gee, Esq.


Counsel for Intervenor Michael Cernovich

RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
By:  Jay M. Wolman, Esq.


Counsel for Intervenor Alan Dershowitz

EMERY CELLI BRINCKERHOFF & ABADY, LLP
600 Fifth Avenue, 10th Floor
New York, NY 10020
By:  Andrew G. Celli, Jr., Esq.

---

[1]     This daytime business address is provided for
identification and correspondence purposes only and is not
intended to imply institutional endorsement by the University of
Utah for this private representation.

Table of Contents

I. Prior Proceedings .......................................... 2

II. The Motion to Intervene is Granted ........................ 11

III. The Issues and the Applicable Standards.................. 13

IV.  The Motion to Unseal the Discovery Documents is Denied.... 24

V. The Summary Judgment Judicial Documents ................... 26

VI.  The Motion to Unseal the Summary Judgment Judicial Documents is Denied ..................................................... 30

VII. Conclusion............................................... 38

**Sweet, D.J.**

Third-party proposed intervenors The Miami Herald
Media Company (the "Miami Herald") and investigative journalist
for the Miami Herald Julie Brown ("Brown") (collectively, the
"Intervenors"), have moved pursuant to Federal Rule of Civil
Procedure 24 to intervene in this defamation action brought by
plaintiff Virginia Giuffre ("Giuffre" or the "Plaintiff")
against defendant Ghislaine Maxwell ("Maxwell" or the
"Defendant") and to unseal all of the documents previously
sealed in this action.

Resolution, clarity and certainty, sometimes delayed,
are hallmarks of the judicial process. The present motions
challenge certain resolutions of this settled and closed action
and raise significant issues, the conduct of the discovery
process, the enforceability of confidentiality agreements and
protective orders, the privacy rights of parties and witnesses,
the public interest and the role of the media, and the
transparency of the judicial process.

This defamation action from its inception in September
2015 to its settlement in May 2017 has been bitterly contested
and difficult to administer because of the truth or falsity of

1

the allegations concerning the intimate, sexual, and private conduct of the parties and of third persons, some prominent, some private. The instant motions renew that pattern and require a reexamination of the effort to provide an appropriate resolution of the issues presented by the litigation.

Upon this reexamination and the conclusions set forth below, the motion to intervene is granted, and the motion to unseal is denied as to the documents produced in the discovery process and as to the summary judgment judicial documents based on the difficult balancing of the conflicting principles described below.

## I.    **Prior Proceedings**

In early 2011 Giuffre, in an interview with journalist Sharon Churcher ("Churcher") which was published in two British tabloids, described Maxwell's alleged role as someone who recruited or facilitated the recruitment of young females for sexual activity with Jeffrey Epstein ("Epstein"), that she, Giuffre, had been interviewed by the Federal Bureau of Investigation ("FBI") in 2011, and that she had discussed Maxwell's involvement in the described sexual abuse. Maxwell issued a statement denying this account on March 9, 2011.

2

On January 1, 2015, Giuffre moved to join two alleged victims of Epstein who had initiated an action under the Crime Victims' Rights Act against the United States, purporting to challenge Epstein's plea agreement. Giuffre's joinder motion (the "Joinder Motion") included numerous details about Giuffre's sexual abuse and listed the perpetrators of her abuse. Giuffre repeatedly named Maxwell in the Joinder Motion as being personally involved in the sexual abuse and sex trafficking scheme created by Epstein.

On January 3, 2015, Maxwell again issued a statement, responding to the allegations made in connection with Giuffre's Joinder Motion. Maxwell stated that Giuffre's allegations "against Ghislaine Maxwell are untrue" and that Giuffre's "claims are obvious lies" (the "January 3 Statement").

Giuffre filed her complaint in this action on September 21, 2015 (the "Complaint"), setting forth her claim of defamation by Maxwell arising out of the Maxwell January 3 Statement. Giuffre alleged she was the "victim of sexual trafficking and abuse while she was a minor child" and that Maxwell "facilitated" Giuffre's sexual abuse and "wrongfully" subjected Giuffre to "public ridicule, contempt and disgrace" by denying Giuffre's allegations. Giuffre further alleged that over

3

the course of a decade she had been sexually abused at "numerous locations" around the world with prominent and politically powerful men.

Vigorous litigation was undertaken by the parties, as demonstrated by the 950 docket entries as of August 27, 2018, including a motion to dismiss the Complaint which was denied by opinion of February 29, 2016 (the "February 29 Opinion"). The primary issue presented was the truth or falsity of the January 3 statement issued by Maxwell, which in turn challenged all the previous statements made to the press by Giuffre and in Giuffre's Joinder Motion. This resulted, understandably, in a lengthy and tumultuous discovery process resulting in 18 hearings and 15 decisions.

After hearing counsel, it was determined that fact discovery would be completed on July 29, 2016,[2] *see* Proposed Discovery and Case Management Plan, Aug. 1, 2016, ECF No. 317. Both parties early on recognized the extreme sensitivities and privacy interests arising out of an effective discovery process involving the truth or falsity of the allegations at issue. The

---

[2]     The parties reserved the right to extend this deadline where the parties so agreed, or for good cause shown. *See* Proposed Discovery and Case Management Plan, Aug. 1, 2016, ECF No. 317.

4

consequent protective order was entered into by the parties on agreement, and endorsed by the Court on March 17, 2016 (the "Protective Order"), and the sealing order was ordered by the Court on August 9, 2016 (the "Sealing Order"), for the purpose of protecting the discovery and dissemination of confidential information to be exchanged in this action. *See* Protective Order, ECF No. 62. This Protective Order allowed the parties to provide discovery on highly private and sensitive subjects without it being disclosed to the public, absent an additional order of this Court. The Protective Order served "to protect the discovery and dissemination of confidential information or information which will properly annoy, embarrass, or oppress any party, witness, or person providing discovery in this case." ECF Dkt. 62. The Protective Order applied broadly "to all documents, materials, and information, including without limitation, documents produced, answers to interrogatories, responses to requests for admission, deposition testimony, and other information disclosed pursuant to the disclosure or discovery duties created by the Federal Rules of Civil Procedure." *Id.* ¶ 1.

The Protective Order also provided the procedures to designate any such material as confidential, and to challenge such designations. *Id.* ¶¶ 8-10. Upon review by an attorney

acting in good faith, the designating party was to designate certain confidential information as "CONFIDENTIAL," triggering a set of protections as to that document for the duration of the action. *Id.* ¶ 8. When a party filed material designated as confidential with the Court, it was to additionally file a Motion to Seal pursuant to Section 6.2 of the Electronic Case Filing Rules & Instructions for the Southern District of New York. *Id.* ¶ 10. Absent consent of the producing party, designated documents "shall not . . . be disclosed."[3] *Id.* ¶ 5.

At the conclusion of the case, the parties could elect either to return the confidential material to the designating party or destroy the documents. *Id.* ¶ 12. The Protective Order

---

[3]     The necessary exceptions to this rule are as follows:

> [S]uch information may be disclosed to: a) attorneys actively working on this case; b) persons regularly employed or associated with the attorneys actively working on this case whose assistance is required by said attorneys in the preparation for trial, at trial, or at other proceedings in this case; c) the parties; d) expert witnesses and consultants retained in connection with this proceeding, to the extent such disclosure is necessary for preparation, trial or other proceedings in this case; e) the Court and its employees . . . in this case; f) stenographic reporters who are engaged in proceedings necessarily incident to the conduct of this action;  g) deponents, witnesses, or potential witnesses; and h) other persons by written agreement of the parties.

*Id.* ¶ 5.

specified that it "shall have no force and effect on the use of any CONFIDENTIAL INFORMATION at trial." *Id.*

From March 17, 2016 to August 9, 2016, 26 motions to seal were filed with the Court pursuant to the Protective Order, each of which were granted. On August 9, 2016, an order amended the Protective Order as follows:

> To reduce unnecessary filings and delay, it is hereby ordered that letter motions to file submissions under seal pursuant to the Court's Protective Order, ECF No. 62, are granted. The Protective Order is amended accordingly such that filing a letter motion seeking sealing for each submission is no longer necessary. A party wishing to challenge the sealing of any particular submission may do so by motion.

Sealing Order, ECF No. 348. One hundred sixty-seven documents were sealed pursuant to the Sealing Order.

On August 11, 2016, Intervenor Alan Dershowitz ("Dershowitz" or "Intervenor Dershowitz") moved to unseal three documents: (1) portions of a Reply Brief submitted by Churcher in support of her motion to quash the subpoena served on her; (2) emails between Churcher and Giuffre submitted in connection with the same motion; and (3) a draft of a manuscript prepared by Giuffre submitted in connection with a motion to extend a time deadline. *See* Dershowitz Motion to Intervene, Aug. 11, 2016, ECF Nos. 362-64. Other than the requested documents which

7

he sought in order to make a public statement, Dershowitz agreed
to be bound by the Protective Order. *See* Dershowitz Decl., ECF
No. 363 ¶ 30. On November 2, 2016, the motion was denied on the
basis that these documents "were submitted with respect to the
discovery process rather than in connection with the disposition
of any substantive issue, and therefore are not judicial
documents" such that no presumption of access exists. *Giuffre v.
Maxwell*, No. 15 Civ. 7433 (RWS) (S.D.N.Y. Nov. 2, 2016), ECF No.
496. Appeal has been filed on that decision.

Pursuant to several amendments, a trial date of May
25, 2017 was determined. *See* Order, Oct. 30, 2015, ECF No. 13;
Amended Proposed Discovery and Case Management Plan, Sept. 30,
2016, ECF No. 451; Amended Second Discovery and Case Management
Plan, Feb. 27, 2017, ECF No. 648; Joint Letter, May 8, 2017, ECF
No. 912.

Expert discovery was completed on November 30, 2016.
*See id.*

Twenty-nine motions *in limine* were filed by the
parties between January 5, 2017 and May 1, 2017, on which
decision was reserved. *See* ECF Nos. 520, 522, 524, 526, 528,

530, 533, 535, 561, 563, 567, 608, 663-667, 669, 671, 673, 675,
677, 679, 681, 683, 685-86, 689, 691.

Maxwell filed a motion for summary judgment on January
6, 2017, which was heard on February 16, 2017 and denied by an
opinion filed on March 22, 2017. *See* Sealed Document, March 24,
2017, ECF No. 779 (the "Summary Judgment Opinion"). The parties,
in accordance with the agreed upon procedures, were directed to
jointly file a proposed redacted version of the Summary Judgment
Opinion consistent with the Protective Order. The agreed upon
redacted opinion was filed with the Court and made public on the
docket on April 27, 2017 (the "Redacted Opinion"). *See* Redacted
Opinion, April 27, 2017, ECF No. 872.

On January 19, 2017, Intervenor Michael Cernovich
("Cernovich" or "Intervenor Cernovich") made a motion to unseal
the materials submitted in connection with Maxwell's motion for
summary judgment, which the Court denied on May 3, 2017 (the
"May 3 Opinion") on the basis that Cernovich "ha[d] not
established a compelling need for the documents obtained in
discovery which undergird the summary judgment decision."
*Giuffre v. Maxwell*, No. 15 Civ. 7433 (RWS) (S.D.N.Y. May 3,
2017), ECF No. 892. "This action is currently scheduled for

9

trial in mid-May and a release of contested confidential
discovery materials could conceivably taint the jury pool." *Id.*

The parties arrived at a settlement and jointly
stipulated to dismiss this action on May 24, 2017. *See*
Stipulation of Voluntary Dismissal, ECF No. 916; Joint
Stipulation for Dismissal, ECF No. 919. The settlement
presumably is pursuant to the Protective Order and remains
confidential with terms known only to the parties. This case was
closed on May 25, 2017.

On April 9, 2018, the Miami Herald filed the instant
motion, contending that all sealed documents in this action are
presumptively public under both common law principles and the
First Amendment to the U.S. Constitution, and were sealed
pursuant to an improvidently granted protective order, which
allowed the parties to designate information as confidential
without the particularized judicial scrutiny required by the law
prior to sealing. *See* ECF No. 62. The motion was joined by
Intervenor Dershowitz, who requested that he be advised of any
documents unsealed in order to request unsealing of additional
documents to protect his interests, and by Intervenor Cernovich.
Argument was heard on May 9, 2018, at which time this motion was
considered fully submitted.

## II.  **The Motion to Intervene is Granted**

Federal Rule of Civil Procedure 24 provides
intervention of right under Rule 24(a) to anyone who "claims an
interest relating to the property or transaction that is the
subject of the action, and is so situated that disposing of the
action may as a practical matter impair or impede the movant's
ability to protect its interest, unless existing parties
adequately represent that interest." Fed. R. Civ. P. 24(a).
Permissive intervention may be granted to anyone "who has a
claim or defense that shares with the main action a common
question of law or fact." Fed. R. Civ. P. 24(b).

Because courts, including this one, "have repeatedly
recognized that members of the press (and other non-parties) may
seek to pursue modification of confidentiality orders that have
led to sealing of documents filed with the court," and since
"the appropriate procedural mechanism to do so is a motion to
intervene," the motion of Brown and the Miami Herald to
intervene is granted. *See In re Pineapple Antitrust Litig.*, No.
04 Md. 1628 (RMB) (MHD), 2015 WL 5439090, at *2 (S.D.N.Y. Aug.
10, 2015); *Giuffre v. Maxwell*, No. 15 Civ. 7433 (RWS) (S.D.N.Y.
Nov. 2, 2016), ECF No. 496 (Opinion Granting Dershowitz Motion
to Intervene); *Giuffre v. Maxwell*, No. 15 Civ. 7433 (RWS)

11

(S.D.N.Y. May 3, 2017), ECF No. 892 (Opinion Granting Cernovich
Motion to Intervene).

Although the case was closed by the Clerk of Court on
May 25, 2017 pursuant to the settlement agreement, "intervention
for the purpose of challenging confidentiality orders is
permissible even years after a case is closed." *United States v.
Erie Cnty., N.Y.*, No. 09 Civ. 849S, 2013 WL 4679070, at *6
(W.D.N.Y. Aug. 30, 2013), *rev'd on other gds.*, 763 F.3d 235 (2d
Cir. 2014); *see also In re Pineapple Antitrust Litig.*, 2015 WL
5439090, at *2 ("[T]here is no implication in the caselaw or in
common sense why the passage of more than three years should
disable a journalist from seeking unsealing."). Moreover,
"[w]hether deemed an intervention as of right under Rule 24(a)
or a permissive intervention under Rule 24(b), intervention by
the press-a step preliminary to determining whether any sealed
documents should be disclosed-should be granted absent some
compelling justification for a contrary result." *In re Pineapple
Antitrust Litig.*, 2015 WL 5439090, at *2 (footnote omitted).

Accordingly, the motion to intervene is granted, and
it is appropriate to reopen the case for the disposition of the
instant motion.

## III. **The Issues and the Applicable Standards**

The issues presented by the parties engage vital
societal concepts, the privacy rights of individuals, the
judicial process to establish truth or falsity, the transparency
of that process, and freedom of information and of the press. On
these concepts our Circuit has rendered helpful guidance.[4]

---

[4]     *See United States v. HSBC Bank USA, N.A.*, 863 F.3d 125
(2d Cir. 2017) (noting discovery documents lie beyond the
presumption of public access); *Bernstein v. Bernstein Litowitz
Berger & Grossmann LLP*, 814 F.3d 132 (2d Cir. 2016) (weighing
value of public disclosure of complaint against privacy
interests in favor of access); *Newsday LLC v. Cnty. of Nassau*,
730 F.3d 156 (2d Cir. 2013) (finding First Amendment right of
access to contempt proceeding); *N.Y. Civil Liberties Union v.
N.Y.C. Transit Auth.*, 684 F.3d 286 (2d Cir. 2012) (qualified
First Amendment right of public access attached to TAB hearings
conducted by New York City Transit Authority); *United States v.
Aref*, 533 F.3d 72 (2d Cir. 2008) (finding that where classified
information presented at trial, if disclosed, would jeopardize
national security weighed against public access); *Lugosch v.
Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) (existence
of confidentiality order alone did not defeat presumption of
public access); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83
(2d Cir. 2004) (establishing qualified First Amendment right of
access to sealed docket sheets); *Sec. Exch. Comm'n v.
TheStreet.com*, 273 F.3d 222 (2d Cir. 2001) (holding pretrial
deposition testimony were not "judicial documents"); *DiRussa v.
Dean Witter Reynolds Inc.*, 121 F.3d 818 (2d Cir. 1997) (sealing
file pursuant to confidentiality agreement between parties was
not abuse of discretion); *United States v. Amodeo,* 44 F.3d 141
(2d Cir. 1995) ("*Amodeo I*") (finding it proper for district
court to edit and redact judicial document to allow access to
appropriate portions after weighing competing interests); *United
States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) ("*Amodeo II*")
(presumption of access afforded to particular document filed
with court varies with document's relevance to exercise of
Article III functions); *Gardner v. Newsday*, 895 F.2d 74, 79 (2d
Cir. 1990) (balancing newspaper's common law right of access

Because of the nature of this defamation action, the particular allegations at issue involving sexual conduct, and the need to be able to rely on court determinations, this motion presents a unique pattern for decision.

Legal scholars and jurists have long sought to refine the boundaries of privacy, or "the right to be let alone," but the result remains a mosaic, the development of which can be traced more to the unraveling of case law than the priority of certain rights over others. *See* Louis Menand, *Why Do We Care So Much About Privacy?*, THE NEW YORKER, June 18, 2018.

The legal implications of privacy have been considered in relation to "telegraphy, telephony, instantaneous photography (snapshots), dactyloscopy (fingerprinting), Social Security numbers, suburbanization, the Minnesota Multiphasic Personality Inventory, Fourth Amendment jurisprudence, abortion rights, gay liberation, human-subject research, the Family Educational Rights and Privacy Act, '60 Minutes,' Betty Ford, the 1973 PBS documentary 'An American Family,' the Starr Report, the memoir craze, blogging, and social media." *Id.* at 6; *see e.g.*, *Smith v.*

---

with defendant's privacy rights); *Joy v. North*, 692 F.2d 880 (2d Cir. 1982) (distinguishing between documents obtained in discovery from those filed pursuant to an adjudication for purposes of the "judicial document" determination).

14

*Maryland*, 442 U.S. 735 (1979) (holding no reasonable expectation of privacy in phone numbers dialed); *Assoc. Press v. U.S. Dep't of Defense*, 554 F.3d 274 (2009) (finding Guantanamo detainees enjoy a privacy interest in the nondisclosure of their names and identifying information in records containing allegations of abuse by military personnel and by other detainees); *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) (holding Freedom of Information Act ("FOIA") recognizes surviving family members' right to personal privacy with respect to their close relative's death-scene images).

Privacy has also been "associated with privilege (private roads and private sales)," *see United States v. Knotts*, 460 U.S. 276, 282 (1983) (holding that defendant enjoyed a reasonable expectation of privacy when driving on his premises, but that no such expectation extended to his travel on public thoroughfares), "with confidentiality (private conversations)," *see Katz v. United States*, 389 U.S. 347, 351 (1967) (holding that defendant did not shed his reasonable expectation of privacy in holding a private conversation in a public phone booth), "with noncomformity and dissent," *see Warden v. Hayden*, 387 U.S. 295, 323 (1967) (Douglas, J., dissenting) ("Those who wrote the Bill of Rights believed that every individual needs both to communicate with others and to keep his affairs to

himself. That dual aspect of privacy means that the individual should have the freedom to select for himself the time and circumstances when he will share his secrets with others and decide the extent of that sharing."), "with shame and embarrassment," *see Perlman v. U.S. Dep't of Justice*, 312 F.3d 100, 106 (2d Cir. 2002), *vacated and remanded*, 541 U.S. 970 (2004), *aff'd*, 380 F.3d 110 (2d Cir. 2004) (per curiam) (witnesses and third parties "possess strong privacy interests, because being identified as part of a law enforcement investigation could subject them to 'embarrassments and harassment'"), "with the deviant and the taboo . . .," *see Lawrence v. Texas*, 539 U.S. 558, 573 (2003) (holding that persons in a homosexual relationship may seek autonomy in their consensual sexual conduct in the home just as heterosexual persons do), "and with subterfuge and concealment," *see U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989) (holding that an individual's interest in nondisclosure of an FBI rap sheet was the sort of personal privacy interest that Congress intended FOIA law enforcement exemption to protect); *see* Menand, *supra* at 6.

In the law, "privacy functions as a kind of default right when an injury has been inflicted and no other right seems to suit the case." Menand, *supra* at 6. The right to privacy

16

might emanate from one or many Amendments to the Constitution. For example, the right prohibiting the government from obtaining heat wave information from within one's home by way of sense-enhancing technology not in general public use arises from notions of privacy rooted in Fourth Amendment jurisprudence, *see Kyllo v. United States*, 533 U.S. 27, 34 (2001), while the right of a woman, with certain exceptions, to pursue an abortion beyond the state's police powers exists in the zones of privacy arising from the First, Fourth, Fifth, Ninth and Fourteenth Amendments, *see Roe v. Wade*, 410 U.S. 113, (1973) (holding that constitutional right of privacy is broad enough to encompass woman's decision whether or not to terminate her pregnancy, but that this right is not absolute in that the state may properly assert important interests in safeguarding health, in maintaining medical standards and in protecting potential life).

The montage of privacy law that has developed around these disparate concepts does not lend itself to easy determinations of privacy rights. Nevertheless, certain things enjoy an undisputed right to privacy: trade secrets, *see Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475-76 (1974) (the holder of a trade secret is protected against the disclosure or unauthorized use of the trade secret); sexual activity (although of what kind it remains to be determined), *compare Lawrence*, 539

17

U.S. 558 (making it unconstitutional to criminalize homosexual
relations) *with Eisenstadt v. Baird*, 405 U.S. 438 (1972)
(holding unconstitutional Massachusetts statute permitting
married persons to obtain contraceptives but prohibiting
distribution of contraceptives to single persons); and personal
characteristics—such as the radiation of heat from one's home,
*Kyllo*, 533 U.S. 27, and the unamplified sound of one's voice,
*Katz*, 389 U.S. 347—which make up Fourth Amendment jurisprudence.
These privacy rights, in the context of this action, are
balanced against the public's right to access rooted in First
Amendment and common law jurisprudence.

There are two "related but distinct presumptions in
favor of public access to court . . . records: a strong form
rooted in the First Amendment and a slightly weaker form based
in federal common law." *Newsday LLC v. Cnty. of Nassau*, 730 F.3d
156, 163 (2d Cir. 2013). Generally, the public holds an
affirmative, enforceable right of access to judicial records
under both the common law and the First Amendment to the U.S.
Constitution. "The presumption of access is based on the need
for federal courts, although independent—indeed, particularly
because they are independent—to have a measure of accountability
and for the public to have confidence in the administration of
justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir.

18

1995) ("*Amodeo II*"). However, "the right to inspect . . .
judicial records is not absolute. Every court has supervisory
power over its own records and files, and access has been denied
where court files might have become a vehicle for improper
purposes" such as using records "to gratify spite or promote
scandals" or where files might serve "as reservoirs of libelous
statements for press consumption." *Nixon v. Warner Commc'ns,
Inc.*, 435 U.S. 589, 598 (1978); *see also Amodeo II*, 71 F.3d at
1051 (internal quotation marks and citation omitted) ("Courts
have long declined to allow public access simply to cater to a
morbid craving for that which is sensational and impure.").

Pretrial discovery is intended to aid the parties in
their search for truth. *See Hickman v. Taylor*, 329 U.S. 495, 501
(1947) (celebrating that "[t]he deposition-discovery regime set
out by the Federal Rules of Civil Procedure is an extremely
permissive one to which courts have long 'accorded a broad and
liberal treatment to effectuate their purpose that civil trials
in the federal courts [need not] be carried on in the dark,'"
and that discovery is a powerful tool for "the parties to obtain
the fullest possible knowledge of the issues and facts before
trial."). It is presumed that the trial itself will make the
final determination of truth or falsity. The boundary between

19

discovery and trial is sometimes, as here, blurred. The effort
is assisted by the definition of "judicial documents."

Whether discovery or trial, "a court must first
conclude that the documents at issue are indeed 'judicial
documents.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110,
119 (2d Cir. 2006); *see also id.* (noting that "only judicial
documents are subject to a presumptive right of public access,
whether on common law or Fist Amendment grounds."). If the
document is a judicial document, courts next ask whether the
presumption of access is a product of the common law right of
access, or of the more robust First Amendment right to access
certain judicial documents. *Id.* at 119-20. It is a given
accepted by the Protective Order that the trial and all trial
documents are accessible and public absent special
circumstances.

Under the common law approach, once a document is
classified as a judicial document, the presumption of access
attaches. *Id.* at 119. The court must then determine the weight
of the presumption of access, which is a function of "the role
of the material at issue in the exercise of Article III judicial
power" and "the resultant value of such information to those
monitoring the federal courts." *See id.; Stern v. Cosby*, 529 F.

20

Supp. 2d 417, 420 (S.D.N.Y. 2007) (internal citations omitted)
("the court must determine the weight of the presumption, that
is, whether the presumption is an especially strong one that can
be overcome only by extraordinary circumstances or whether the
presumption is a low one that amounts to little more than a
prediction of public access absent a countervailing reason or
whether the presumption is somewhere in between."). Documents
traditionally fall somewhere on a continuum "from matters that
directly affect an adjudication to matters that come within a
court's purview solely to ensure their irrelevance." *Amodeo II*,
71 F.3d at 1049. Such a presumption under the common law may be
overcome by demonstrating that sealing serves to further other
"substantial interests," such as "a third party's personal
privacy interests, the public's safety, or preservation of
attorney-client privilege." *Under Seal v. Under Seal*, 273 F.
Supp. 3d 460, 467 (S.D.N.Y. 2017) (collecting cases).

However, the First Amendment "provides the public and
the press a constitutional right of access to all trials,
criminal or civil." *Id.* at 468 (citing *Richmond Newspapers, Inc.
v. Virginia*, 448 U.S. 555, 580 (1980)) (internal citation
omitted). This right applies specifically to "related
proceedings and records" and "protects the public against the
government's arbitrary interference with access to important

21

information." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012) (citations omitted). As noted above, the Protective Order specified that confidential material would not be protected with respect to any document proffered at trial.

The Second Circuit has recognized two approaches for determining whether the First Amendment right of access extends to particular judicial records. *Lugosch*, 435 F.3d at 120. In the first approach, the "logic and experience" test, a court evaluates whether the documents are those that "have historically been open to the press and general public" and for which "public access plays a significant positive role in the functioning of the particular process in question." *Id.* Courts applying the "logic and experience" test have generally found a presumption of openness, based on the common law approach. *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004).

In the second approach, First Amendment protection attaches to judicial documents "derived from or a necessary corollary of the capacity to attend the relevant proceedings." *Id.* at 93. Accordingly, the Second Circuit has found "the right to inspect [judicial] documents derives from the public nature

of particular tribunals." *Id.; see also id.* (observing that "[o]ther circuits that have addressed [the] question have construed the constitutional right of access to apply to written documents submitted in connection with judicial proceedings that themselves implicate the right of access.").

To be clear, the First Amendment creates only a presumptive right of access. *Newsday*, 730 F.3d at 164-65. "What offends the First Amendment is the attempt to do so without sufficient justification." *N.Y. Civil Liberties Union*, 684 F.3d at 296. Under either approach, a presumptive right of access may be overcome by "specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124. The party seeking to keep the judicial documents under seal carries the burden of demonstrating that higher values overcome the presumption of public access, *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997), and such a showing must be supported by "findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enter. Co. v. Superior Court of Cal., Riverside Cnty.*, 464 U.S. 501, 510 (1984).

## IV. The Motion to Unseal the Discovery Documents is Denied

The parties early on agreed that the release of confidential information inherent to the discovery process could expose the parties to annoyance, embarrassment, and oppression given the highly sensitive nature of the underlying allegations. The parties mutually assented to entering into the Protective Order. The parties relied upon its provisions, as did dozens of witnesses and other non-parties. Documents designated confidential included a range of allegations of sexual acts involving Plaintiff and non-parties to this litigation, some famous, some not; the identities of non-parties who either allegedly engaged in sexual acts with Plaintiff or who allegedly facilitated such acts; Plaintiff's sexual history and prior allegations of sexual assault; and Plaintiff's medical history. The Protective Order has maintained the confidentiality of these sensitive materials. One hundred sixty-seven discovery documents were added to the docket and sealed pursuant to the Protective Order.

Further, upon the issuance of an opinion by this Court, the parties were directed to jointly file a proposed redacted version consistent with the Protective Order as set forth above. The parties submitted the Redacted Opinion to

24

maintain the confidentiality established by the Protective
Order.

Except as discussed below, the documents sealed in the
course of discovery were neither relied upon by this Court in
the rendering of an adjudication, nor "necessary to or helpful
in resolving [a] motion." *See Alexander Interactive, Inc. v.
Adorama, Inc.*, No. 12 Civ. 6608 (PKC) (JCF), 2014 WL 4346174, at
*2 (S.D.N.Y. Sept. 2, 2014). Moreover, our Circuit has "long
recognized that documents 'passed between the parties in
discovery[] lie entirely beyond the . . . reach' of the
presumption of public access." *United States v. HSBC Bank USA,
N.A.*, 863 F.3d 125, 139 (2d Cir. 2017); *see also Sec. Exch.
Comm'n v. Am. Int'l Grp.*, 712 F.3d 1, 24 (D.C. Cir. 2013)
("[T]hough filing a document with the court is not sufficient to
render the document a judicial record, it is very much a
prerequisite."). To provide "unthinkable access to every item
turned up in the course of litigation would be unthinkable."
*Amodeo II*, 71 F.3d at 1048. Accordingly, the motion to unseal
the discovery documents is denied.

25

## V.    The Summary Judgment Judicial Documents

Under the common law and First Amendment, the primary
inquiry is whether the documents at issue are "judicial
documents." To be a judicial document, "the item filed must be
relevant to the performance of the judicial function and useful
in the judicial process." *Lugosch*, 435 F.3d at 119; *see HSBC
Bank USA, N.A.*, 863 F.3d at 134 ("The threshold merits question
in this case is whether the [sealed document] is a judicial
document, as only judicial documents are subject to a
presumptive right of public access, whether on common law or
First Amendment grounds."). In making such a determination,
courts consider the "relevance of the document's specific
contents to the nature of the proceeding" and the degree to
which "access to the document would materially assist the public
in understanding the issues before the . . . court, and in
evaluating the fairness and integrity of the court's
proceedings." *Bernstein v. Bernstein Litowitz Berger & Grossmann
LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (citing *Newsday LLC*, 730
F.3d at 166-67) (alteration omitted).

Documents filed with the court vary in their status as
'judicial documents.' At one end of the continuum, "[t]he mere
filing of a paper or document with the court is insufficient to

26

render that paper a judicial document subject to the right of public access." *United States v. Amodeo,* 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). Likewise, the filing of "deposition transcripts, interrogatories, and documents exchanged in discovery" with a court is not sufficient to reach the status of judicial document, and to consider them as such "would constitute a radical expansion of the 'public access' doctrine." *HSBC Bank USA, N.A.*, 863 F.3d at 139 (citing *Amodeo II*, 71 F.3d at 1048); *accord Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) ("Discovery involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public. Private matters which are discoverable may, upon a showing of cause, be put under seal under Rule 26(c), in the first instance."). At the other end, the "case law is clear that pleadings and summary judgment papers . . . are judicial documents upon filing." *Id.* at 141-42. The Second Circuit has repeatedly held that all documents submitted in support of a motion for summary judgment, whether or not relied upon, "are unquestionably judicial documents under the common law." *Lugosch*, 435 F.3d at 123. The same applies for complaints. *See Bernstein*, 814 F.3d at 140 (internal citation omitted) ("A complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of the lawsuit,

and access to the complaint is almost always necessary if the public is to understand a court's decision.").

Somewhere in the middle lie documents "submitted . . . in support of a motion to compel discovery [which] . . . presumably will be necessary to or helpful in resolving that motion. They are, therefore, judicial documents." *Alexander Interactive, Inc.*, 2014 WL 4346174, at *2; *see also In re Omnicom Grp., Inc. Sec. Litig.*, No. 02 Civ. 4483 (RCC) (MHD), 2006 WL 3016311, at *2 (S.D.N.Y. Oct. 23, 2006) (internal citation omitted) (finding that a "series of letter briefs with accompanying exhibits . . . certainly qualify as judicial documents" because they are "relevant to the performance of the judicial function and useful in the judicial process.").

The Summary Judgment Opinion refers to facts drawn from Maxwell's Memorandum of Law in Support of Maxwell's Motion for Summary Judgment; Maxwell's Rule 56.1 Statement of Material Facts; Giuffre's Statement of Contested Facts and Giuffre's Undisputed Facts; and Maxwell's Reply to Giuffre's Statement of Contested Facts and Giuffre's Undisputed Facts pursuant to Local Civil Rule 56.1 (the "Factual Statements").

28

The Factual Statements, citing the evidence upon which they rely, formed the basis of or the recital of both uncontested and disputed material facts contained in the Summary Judgment Opinion. The recital and the Factual Statements constitute the evidentiary mirror of the issues presented by the Complaint. That recital described the issues to be resolved at trial, if, as was the case, the summary judgment was denied. This portion of the Summary Judgment Opinion and the Factual Statements (the "Summary Judgment Judicial Documents") reveals the substance of the evidence jointly deemed confidential by the parties. It was therefore redacted by the parties.

As a matter of law, papers submitted in support of the summary judgment motion are "judicial documents" triggering a presumption of access subject to balancing under the First Amendment and common law if they "directly affect an adjudication." *Lugosch*, 435 F.3d at 123 ("As a matter of law, we hold that the contested documents—by virtue of having been submitted to the court as supporting material in connection with a motion for summary judgment—are unquestionably judicial documents under the common law."). The Summary Judgment Judicial Documents are therefore judicial documents subject to a presumption of access.

29

## VI.   The Motion to Unseal the Summary Judgment Judicial Documents is Denied

Intervenors contend that the Summary Judgment Judicial Documents should be unsealed because they carry a strong presumption of access under both the First Amendment and common law, and there are no compelling reasons to keep them sealed.

Because it has been determined that the Summary Judgment Opinion and the materials submitted in connection with it are judicial documents, the weight of the presumption under the common law must be determined, in addition to any countervailing factors. *See Bernstein*, 814 F.3d at 143 (citing *Lugosch*, 435 F.3d at 119-20) (internal quotation marks omitted) (noting that the final step of the inquiry as to the summary judgment papers is the "weight-of-the-presumption analysis: balancing the value of public disclosure and countervailing factors.").

Intervenors assert that because Defendant's motion for summary judgment fits squarely into the definition of a judicial document, those materials are entitled to the strongest presumption of access. Maxwell contends that the Intervenors are not in a position to determine the weight of the presumption

30

afforded each summary judgment document because they have not seen each document.

While the Summary Judgment Judicial Documents are entitled to a presumption of access, this presumption is less "where a district court *denied* the summary judgment motion, essentially postponing a final determination of substantive legal rights, [because] the public interest in access is not as pressing." *See Amodeo II*, 71 F.3d at 1049 (quoting *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1342 n.3 (D.C. Cir. 1985) (internal quotation marks omitted) (emphasis in original) (alteration added)). Because the motion for summary judgment was denied by the Court on March 22, 2017, the Summary Judgment Judicial Documents are entitled to a lesser presumption of access.

"Notwithstanding the presumption of access under both the common law and the First Amendment, the documents may be kept under seal if 'countervailing factors' in the common law framework or 'higher values' in the First Amendment framework so demand." *Lugosch*, 435 F.3d at 125. At common law, the presumption of access may be overcome by demonstrating that "sealing will further other substantial interests such as a third party's personal privacy interests, the public's safety,

31

or preservation of attorney-client privilege." *Under Seal*, 273

F. Supp. 3d at 467; *see Amodeo II*, 71 F.3d at 1050 (describing

law enforcement interests and privacy of third persons as

factors that weigh against the presumption of access); *United

States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (affirming a

sealing order "[g]iven the legitimate national-security concerns

at play"); *Lugosch*, 435 F.3d at 125 (stating that attorney-

client privilege "might well be . . . a compelling reason" to

overcome the presumption of access); *see also Sec. Exch. Comm'n

v. TheStreet.com*, 273 F.3d 222, 234 (2d Cir. 2001) (noting that

where the presumption in favor of public access does not apply,

and a document was filed under seal pursuant to a protective

order, "a strong presumption against public access" applies if a

party to the protective order objects on privacy grounds and

establishes "reasonabl[e] reli[ance] on the protective order.").


Here, the primary countervailing factor is "the

privacy interests of those resisting disclosure." *Amodeo II*, 71

F.3d at 1050; *see also Gardner v. Newsday*, 895 F.2d 74, 79 (2d

Cir. 1990) ("[T]he common law right of access is qualified by

recognition of the privacy rights of the persons whose intimate

relations may thereby be disclosed."). The Second Circuit has

repeatedly held that "[t]he privacy interests of innocent third

parties . . . should weigh heavily in a court's balancing

equation." *Id.* at 79-80; *see also Amodeo II*, 71 F.3d at 1051
("Such interests, while not always fitting comfortably under the
rubric 'privacy,' are a venerable common law exception to the
presumption of access.").

In assessing the weight to be accorded an assertion of
a right of privacy, "courts should first consider the degree to
which the subject matter is traditionally considered private
rather than public." *Amodeo II*, 71 F.3d at 1051. For example,
"[f]inancial records of a wholly owned business, family affairs,
illnesses, embarrassing conduct with no public ramifications,
and similar matters will weigh more heavily against access than
conduct affecting a substantial portion of the public." *Id.*; *but
see United States v. Silver*, No. 15 Cr. 93 (VEC), 2016 WL
1572993, at *6 n.5 (S.D.N.Y. April 14, 2016) (emphasizing that
"the expectation of privacy in an amorous relationship where
official government business and personal benefit are
intertwined is necessarily less than an amorous relationship
between wholly private citizens or between a private citizen and
a government official where there is no intersection with state
business. In the case of the former, there is the ever-present
risk of public scrutiny and a legitimate public interest in
ensuring that government officials are acting in the public's
interest rather than in the private interest of a paramour.").

33

This is a defamation case involving the truth or falsity of the underlying allegations of the sexual assault and sexual trafficking of minors involving public and private persons. The Summary Judgment Judicial Documents openly refer to and discuss these allegations in comprehensive detail. This establishes a strong privacy interest here.

The "nature and degree of injury must also be weighed," which means that consideration must also be given to "the sensitivity of the information and the subject but also of how the person seeking access intends to use the information." *Amodeo II*, 71 F.3d 1051.

The privacy interests of Maxwell, Giuffre, Dershowitz, as well as dozens of third persons, all of whom relied upon the promise of secrecy outlined in the Protective Order and enforced by the Court, have been implicated. It makes no difference that Giuffre and Dershowitz have chosen to waive their privacy interests to the underlying confidential information by supporting this motion, as Maxwell has not agreed to such a waiver.

More importantly, the dozens of non-parties who provided highly confidential information relating to their own

34

stories provided that information in reliance on the Protective
Order and the understanding that it would continue to protect
everything it claimed it would. This interest is amplified
where, as here, the Summary Judgment Judicial Documents "contain
sensitive and personal information about the sexual abuse of []
minor[s]." *Kavanagh v. Zwilling*, 997 F. Supp. 2d 241, 256
(S.D.N.Y. 2014). To disregard this protection now would be to
implicate the rights of dozens of individuals who shared private
information under the trusted understanding that it would remain
sealed. *See Gardner*, 895 F.2d at 79 ("[T]he privacy interests of
innocent third parties as well as those of defendants that may
be harmed by disclosure of the Title III material should weigh
heavily in a court's balancing equation . . . . The job of
protecting such interests rests heavily with the trial judge,
since all the parties who may be harmed by disclosure are
typically not before the court.").

The same considerations apply under the First
Amendment, where the "presumption is rebuttable upon
demonstration that suppression 'is essential to preserve higher
values and is narrowly tailored to serve that interest.'"
*Hartford Courant Co.*, 380 F.3d at 96 (quoting *Press-Enterprise
Co. v. Superior Court of Cal., Riverside Cnty.*, 464 U.S. 501,
510 (1984)) (internal citation omitted). What must be determined

35

is the "harm to a compelling interest," *Under Seal*, 273 F. Supp.
3d at 469, balanced against, in this case, a generalized public
interest. So long as "specific, on the record findings are made
demonstrating that 'closure is essential to preserve higher
values and is narrowly tailored to serve that interest,'" the
documents may be sealed. *In re N.Y. Times Co.*, 828 F.2d 110, 116
(2d Cir. 1987) (citing *Press-Enterprise Co.*, 464 U.S. 510).

The compelling interest is the privacy interest
discussed above. It is also the integrity of the judicial
process.

The parties by their conduct have demonstrated
reliance on the Protective Order and its provisions. It is not
necessary to have forty years of judicial experience to know
that reliance on the confidentiality agreement with respect to
the evidence relating to the truth or falsity of the Giuffre
allegations was a significant, if not determinative, factor in
the confidential settlement arrived at. That one of the parties
to that settlement, Giuffre, no longer opposes unsealing does
not vitiate the strength of the agreement. Indeed given the
entire context of the litigation it may demonstrate the need to
compel the parties to stick to their bargain. *See id.* (noting
that this Circuit is instructed to "give added weight to fair

36

trial and privacy interests where requiring disclosure will have a potential chilling effect on future movants.").

While the Intervenors cite to the public interest, there are no particulars identified that point to the need for evidence gathered from the period from 2015 to 2016 concerning events that took place over 15 years ago. *See Lugosch*, 435 F.3d at 125 ("Notwithstanding the presumption of public access . . . , the documents may be kept under seal if . . . 'higher values' in the First Amendment framework so demand.").

Further, as the Supreme Court noted in *Nixon v. Warner Communications, Inc.*, 435 U.S. at 589, "courts have the power to insure that their records are not used to gratify private spite or promote public scandal, and have refused to permit their files to serve as reservoirs of libelous statements for press consumption." (internal quotation marks omitted).

The unsealing of the Summary Judgment Judicial Documents would both promote scandal arising out of unproven potentially libelous statements—particularly in light of the allegations relating to the sexual abuse of minors by public figures, and defeat the compelling privacy interests of the parties and non-parties who relied on the Protective Order.

37

In light of the above, the "extraordinary circumstances," *Stern*, 529 F. Supp. 2d at 420, have been established. The common law and First Amendment presumptions of access have been outweighed in favor of maintaining the sealing agreed upon by the parties and relied upon by third parties.

## VII. Conclusion

Based on the facts and conclusions set forth above, the Intervenors' motion to intervene is granted, and this motion to unseal is denied and the action is closed.

It is so ordered.

New York, NY
August 27, 2018

_____
ROBERT W. SWEET
U.S.D.J.