18-2868; 16-3945-cv(L)
*Brown v. Maxwell; Dershowitz v. Giuffre*

N.Y.S.D. Case #
15-cv-7433(RWS)

# In the

# United States Court of Appeals

## for the Second Circuit

---

AUGUST TERM 2018

No. 18-2868-cv

JULIE BROWN, MIAMI HERALD COMPANY,
*Intervenors-Appellants,*

v.

GHISLAINE MAXWELL,
*Defendant-Appellee,*

v.

VIRGINIA L. GIUFFRE,
*Plaintiff-Appellee.*

---

No. 16-3945-cv(L)
No. 17-1625 (CON)
No. 17-1722(CON)

ALAN M. DERSHOWITZ, MICHAEL CERNOVICH, DBA CERNOVICH
MEDIA,
*Intervenors-Appellants,*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Jul 03 2019

CERTIFIED COPY ISSUED ON 07/03/2019

v.

VIRGINIA L. GIUFFRE,
*Plaintiff-Appellee,*

v.

GHISLAINE MAXWELL,
*Defendant-Appellee.*[*]

─────

On Appeal from the United States District Court
for the Southern District of New York

──────────

ARGUED: MARCH 6, 2019
DECIDED: JULY 2, 2019

──────────

Before: CABRANES, POOLER, and DRONEY, *Circuit Judges*.

──────────

Intervenors-Appellants Alan Dershowitz, Michael Cernovich, and the Miami Herald Company (with reporter Julie Brown) appeal from certain orders of the United States District Court for the Southern District of New York (Robert W. Sweet, *Judge*) denying their respective motions to unseal filings in a defamation suit. We conclude that the

───────────────

[*] The Clerk of Court is directed to amend the captions as set out above.

2

District Court failed to conduct the requisite particularized review when ordering the sealing of the materials at issue. At the same time, we recognize the potential damage to privacy and reputation that may accompany public disclosure of hard-fought, sensitive litigation. We therefore clarify the legal tools that district courts should use in safeguarding the integrity of their dockets. Accordingly, we **VACATE** the District Court's orders entered on November 2, 2016, May 3, 2017, and August 27, 2018, **ORDER** the unsealing of the summary judgment record as described further herein, and **REMAND** the cause to the District Court for particularized review of the remaining sealed materials.

Judge Pooler concurs in this opinion except insofar as it orders the immediate unsealing of the summary judgment record without a remand.

—————

SANFORD L. BOHRER (Christine N. Walz, Madelaine J. Harrington, New York, NY, *on the brief*), Holland & Knight LLP, Miami, FL, *for Intervenors-Appellants Julie Brown and Miami Herald.*

TY GEE (Adam Mueller, *on the brief*), Haddon, Morgan and Foreman, P.C., Denver, CO, *for Defendant-Appellee Ghislaine Maxwell.*

3

PAUL G. CASSELL (Sigrid S. McCawley, Boies Schiller Flexner LLP, Ft. Lauderdale, FL, *on the brief*), S.J Quinney College of Law, University of Utah, Salt Lake City, UT, *for Plaintiff-Appellee Virginia L. Giuffre.*

ANDREW G. CELLI JR. (David A. Lebowitz, *on the brief*), Emery, Celli, Brinckerhoff & Abady LLP, New York, NY, *for Intervenor-Appellant Alan M. Dershowitz.*

MARC RANDAZZA (Jay Marshall Wolman, Las Vegas, NV, *on the brief*), Randazza Legal Group, PLLC, Hartford, CT, *for Intervenor-Appellant Michael Cernovich.*

———————

JOSÉ A. CABRANES, *Circuit Judge*:

Intervenors-Appellants Alan M. Dershowitz ("Dershowitz"), Michael Cernovich ("Cernovich"), and the Miami Herald Company (with reporter Julie Brown, jointly the "*Herald*") appeal from certain orders of the United States District Court for the Southern District of New York (Robert W. Sweet, *Judge*) denying their respective motions to unseal filings in a defamation suit. We conclude that the District Court failed to conduct the requisite particularized review when ordering the sealing of the materials at issue. At the same time, we

recognize the potential damage to privacy and reputation that may accompany public disclosure of hard-fought, sensitive litigation. We therefore clarify the legal tools that district courts should use in safeguarding the integrity of their dockets. Accordingly, we **VACATE** the District Court's orders entered on November 2, 2016, May 3, 2017, and August 27, 2018, **ORDER** the unsealing of the summary judgment record as described further herein, and **REMAND** the cause to the District Court for particularized review of the remaining sealed materials.

## I. BACKGROUND

### A. *Jeffrey Epstein's Conviction and the CVRA Suit*

The origins of this case lie in a decade-old criminal proceeding against financier Jeffrey Epstein ("Epstein"). On June 30, 2008, Epstein pleaded guilty to Florida state charges of soliciting, and procuring a person under the age of eighteen for, prostitution. The charges stemmed from sexual activity with privately hired "masseuses," some of whom were under eighteen, Florida's age of consent. Pursuant to an agreement with state and federal prosecutors, Epstein pleaded to the state charges. He received limited jail-time, registered as a sex offender, and agreed to pay compensation to his victims. In return, prosecutors declined to bring federal charges.

Shortly after Epstein entered his plea, two of his victims, proceeding as "Jane Doe 1" and "Jane Doe 2," filed suit against the Government in the Southern District of Florida under the Crime Victims' Rights Act ("CVRA"). The victims sought to nullify the plea

agreement, alleging that the Government failed to fulfill its legal obligations to inform and consult with them in the process leading up to Epstein's plea deal.[1]

On December 30, 2014, two additional unnamed victims—one of whom has now self-identified as Plaintiff-Appellee Virginia Giuffre ("Giuffre")—petitioned to join in the CVRA case. These petitioners included in their filings not only descriptions of sexual abuse by Epstein, but also new allegations of sexual abuse by several other prominent individuals, "including numerous prominent American politicians, powerful business executives, foreign presidents, a well-known Prime Minister, and other world leaders," as well as Dershowitz (a long-time member of the Harvard Law School faculty who had worked on Epstein's legal defense) and Defendant-Appellee Ghislaine Maxwell ("Maxwell").[2]

Dershowitz moved to intervene, seeking to "strike the outrageous and impertinent allegations made against him and to request a show cause order to the attorneys that have made them."[3] Exercising its authority to "strike from a pleading an insufficient

---

[1] On February 21, 2019, the Florida District Court ruled that federal prosecutors had violated the CVRA by failing to adequately notify the two victims-plaintiffs of the plea deal. The District Court has not yet determined the appropriate remedy. *See Doe 1 v. United States*, 359 F. Supp. 3d 1201, 1204–17 (S.D. Fla. 2019).

[2] *Doe 1 v. United States*, No. 08-CV-80736-KAM, 2015 WL 11254692, at *2 (S.D. Fla. Apr. 7, 2015) (internal quotation marks omitted).

[3] *Id.* (internal quotation marks and brackets omitted).

defense or any redundant, immaterial, impertinent, or scandalous matter . . . on its own,"[4] the Florida District Court (Kenneth A. Marra, *Judge*) *sua sponte* struck all allegations against additional parties from the pleadings, including those against Dershowitz, and therefore denied Dershowitz's motion as moot.[5]

The stricken allegations, however, quickly found their way into the press, and several media outlets published articles repeating Giuffre's accusations. In response to the allegations, on January 3, 2015, Maxwell's publicist issued a press statement declaring that Giuffre's allegations "against Ghislaine Maxwell are untrue" and that her "claims are obvious lies."[6]

### B. Giuffre Sues Maxwell

On September 21, 2015, Giuffre filed the underlying action against Maxwell in the Southern District of New York. Giuffre alleged that Maxwell had defamed her through this and other public statements. Extensive and hard-fought discovery followed. Due to the volume of sealing requests filed during discovery, on August 9, 2016, the District Court entered a Sealing Order that effectively ceded control of the sealing process to the parties themselves. The Sealing Order disposed of the requirement that the parties file individual letter briefs to request sealing and prospectively granted all of the parties'

---

[4] Fed. R. Civ. P. 12(f).

[5] *Doe 1*, 2015 WL 11254692, at *2–3.

[6] *See Giuffre v. Maxwell*, 325 F. Supp. 3d 428, 434 (S.D.N.Y. 2018).

future sealing requests. In total, 167 documents—nearly one-fifth of the docket—were filed under seal. These sealed documents include, *inter alia*, motions to compel discovery, motions for sanctions and adverse inferences, motions *in limine*, and similar material.

On January 6, 2017, Maxwell filed a motion for summary judgment. The parties submitted their memoranda of law and supporting exhibits contesting this motion under seal. On March 22, 2017, the District Court denied the motion in a heavily redacted 76-page opinion. Once again, the entire summary judgment record, including the unredacted version of the District Court opinion denying summary judgment, remained under seal. On May 24, 2017, Maxwell and Giuffre executed a settlement agreement, and the case was closed the next day.

### C. Motions to Intervene and Unseal

Over the course of the litigation before Judge Sweet, three outside parties attempted to unseal some or all of the sealed material. On August 11, 2016, Dershowitz moved to intervene, seeking to unseal three documents that, he argues, demonstrate that Giuffre invented the accusations against him. On January 19, 2017, Cernovich, an independent blogger and self-described "popular political journalist,"[7] moved to intervene, seeking to unseal the summary judgment record, and Dershowitz joined his motion. On April 6, 2018, after the case had settled, the *Herald* moved to intervene and unseal

---

[7] Br. Appellant (Cernovich) 4.

the entire docket. The District Court granted each of these motions to intervene, but denied the related requests to unseal in orders entered November 2, 2016, May 3, 2017, and August 27, 2018, respectively.

The Appellants timely appealed from each of the orders denying their respective motions to unseal. Although each Appellant seeks the release of a different set of documents, all argue that the District Court failed to analyze the documents individually or properly apply the presumption of public access to court documents. We therefore ordered that the appeals be heard in tandem and held argument on March 6, 2019.

On March 11, 2019, we issued an order to show cause why we "should not unseal the summary judgment motion, including any materials filed in connection with this motion, and the District Court's summary judgment decision."[8] The parties timely filed their responses.

## II. DISCUSSION

There are two categories of sealed material at issue in these appeals: (1) the summary judgment record, which includes the parties' summary judgment briefs, their statements of undisputed facts, and incorporated exhibits; and (2) court filings made in the course of the discovery process and with respect to motions *in limine*. In this Opinion, we explain that our law requires the unsealing of the

---

[8] *Giuffre v. Maxwell*, No. 18-2868-cv, Docket No. 138.

summary judgment materials and individualized review of the remaining sealed materials.

While the law governing public access to these materials is largely settled, we have not yet adequately addressed the potential harms that often accompany such access. These harms are apparent. Over forty years ago, the Supreme Court observed that, without vigilance, courts' files might "become a vehicle for improper purposes."[9]   Our legal process is already susceptible to abuse. Unscrupulous litigants can weaponize the discovery process to humiliate and embarrass their adversaries. Shielded by the "litigation privilege,"[10] bad actors can defame opponents in court pleadings or depositions without fear of lawsuit and liability. Unfortunately, the presumption of public access to court documents has the potential to exacerbate these harms to privacy and reputation by ensuring that damaging material irrevocably enters the public record.

We therefore take the opportunity to describe the tools available to district courts in protecting the integrity of the judicial process, and emphasize the courts' responsibility to exercise these powerful tools. We also caution the public to critically assess allegations contained in judicial pleadings.

---

[9] *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).

[10] *See* notes 46–47 and accompanying text, *post*.

### A. Standard of Review

When reviewing a district court's decision to seal a filing or maintain such a seal, "we examine the court's factual findings for clear error, its legal determinations de novo, and its ultimate decision to seal or unseal for abuse of discretion."[11]

### B. The Summary Judgment Materials

With respect to the first category of materials, it is well-settled that "documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment."[12] In light of this strong First Amendment presumption, "continued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim."[13]

---

[11] *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016).

[12] *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006). We observe that our holding in *Lugosch* relies on the general principle that parties may "be assumed to have supported their papers with admissible evidence and non-frivolous arguments." *Id.* at 122. Insofar as a district court has, through striking a filing, specifically found that assumption inapplicable, the categorical rule in *Lugosch* may not apply. *See* notes 42–43 and accompanying text, *post*.

[13] *Id.* at 124. Examples of such countervailing values may include, depending on the circumstances, preserving "the right of an accused to fundamental fairness in the jury selection process," *Press-Enter. Co. v. Superior Court*

In this case, the District Court erred in several respects.[14] First, it failed to give proper weight to the presumption of access that attaches to documents filed in connection with summary judgment motions. The District Court reasoned that the summary judgment materials were "entitled to a lesser presumption of access" because "summary judgment was denied by the Court."[15] In assigning a "lesser presumption" to such materials, the District Court relied on a single sentence of dicta from our decision in *United States v. Amodeo*.[16] We have since clarified, however, that this sentence was based on a "quotation from a partial concurrence and partial dissent in the D.C. Circuit . . . [and] is thus not the considered decision of either this court or the D.C. Circuit."[17] In fact, we have expressly rejected the proposition that "different types of documents might receive different

---

*of California, Riverside Cty.*, 464 U.S. 501, 510 (1984); the protection of attorney-client privilege, *Lugosch*, 435 F.3d at 125; "the danger of impairing law enforcement or judicial efficiency," *SEC. v. TheStreet.Com*, 273 F.3d 222, 232 (2d Cir. 2001); and "the privacy interest of those who resist disclosure," *id.*

[14] Our discussion here focuses specifically on the District Court's denial of the *Herald's* motion to unseal the entire record. Because this decision grants relief to all Appellants, we need not discuss any separate, additional error in the District Court's denial of the earlier motions to unseal.

[15] *Giuffre,* 325 F. Supp. 3d at 444.

[16] 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*") ("One judge [in the District of Columbia Circuit] has pointed out, for example, that where a district court *denied* the summary judgment motion, essentially postponing a final determination of substantive legal rights, the public interest in access is not as pressing." (internal quotation marks omitted; emphasis in original)).

[17] *Lugosch*, 435 F.3d at 121.

weights of presumption based on the extent to which they were relied upon in resolving [a] motion [for summary judgment]."[18]

Second, in contravention of our precedent, the District Court failed to review the documents individually and produce "specific, on-the-record findings that sealing is necessary to preserve higher values."[19] Instead, the District Court made generalized statements about the record as a whole.[20] This too was legal error.

Finally, upon reviewing the summary judgment materials in connection with this appeal, we find that there is no countervailing privacy interest sufficient to justify their continued sealing. Remand with respect to these documents is thus unnecessary. Accordingly, and to avoid any further delay,[21] we order that the summary judgment documents (with minimal redactions) be unsealed upon issuance of our mandate.[22]

---

[18] *Id.* at 123.

[19] *Id.* at 124.

[20] *See, e.g., Giuffre,* 325 F. Supp. 3d at 445 (summarily concluding that all "[t]he Summary Judgment Judicial Documents openly refer to and discuss these allegations [of sexual assault and sexual trafficking] in comprehensive detail, and that those allegations "establish[] a strong privacy interest here").

[21] *Cf. Lugosch*, 435 F.3d at 127 (ordering that "the mandate shall issue forthwith" to expedite the unsealing process).

[22] Upon issuance of our mandate, a minimally redacted version of the summary judgment record will be made accessible on the Court of Appeals docket. We have implemented minimal redactions to protect personally identifying information such as personal phone numbers, contact lists, birth dates, and social

### C.  The Remaining Sealed Materials

The law governing disclosure of the remaining sealed material in this case is only slightly more complex. The Supreme Court has recognized a qualified right "to inspect and copy judicial records and documents."[23] In defining "judicial records and documents," we have emphasized that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access."[24] Instead, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document."[25]

As our precedent makes clear, a court "perform[s] the judicial function" not only when it rules on motions currently before it, but also when properly exercising its inherent "supervisory powers."[26] A

---

security numbers. We have also redacted the names of alleged minor victims of sexual abuse from deposition testimony and police reports, as well as deposition responses concerning intimate matters where the questions were likely only permitted—and the responses only compelled—because of a strong expectation of continued confidentiality. *See* Fed. R. Civ. P. 5.2. While we appreciate the views expressed in Judge Pooler's separate opinion, the panel majority believes that the efforts invested by three former district judges in reviewing these materials adequately address those concerns.

[23] *Nixon*, 435 U.S. at 597–98.

[24] *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*").

[25] *Id.*

[26] *Cf. United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 135 (2d Cir. 2017) (explaining that, in considering whether the report of a monitor charged with assessing compliance with a deferred prosecution agreement is a judicial

document is thus "relevant to the performance of the judicial function" if it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision.[27] Accordingly, if in applying these standards, a court determines that documents filed by a party are *not* relevant to the performance of a judicial function, no presumption of public access attaches.[28]

Once an item is deemed relevant to the exercise of judicial power, "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those

---

document, "[i]f the district court's conception of its supervisory power in this context were correct, the Monitor's Report would quite obviously be relevant to the performance of the judicial function and useful in the judicial process" (internal quotation marks omitted)). Whether a specific judicial decision constitutes a "performance of the judicial function" is a question of law. Accordingly, we review such determinations *de novo*. *Id.* at 134.

[27] *Amodeo I*, 44 F.3d at 145–46 (concluding that documents were relevant to the performance of a judicial function because they would have "informed" the district court's decision whether to discharge or retain a Receiver); *see also FTC. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 409 (1st Cir. 1987) (citing Federal Rule of Evidence 401's "having any tendency" definition of relevance in determining whether documents were "judicial documents").

[28] As we explain below, there are several (often preferable) tools beyond sealing that district courts can use to protect their dockets from becoming a vehicle for irrelevant—and potentially defamatory—accusations. *See* Section D, *post.*

monitoring the federal courts."[29] Thus, while evidence introduced at trial or in connection with summary judgment enjoys a strong presumption of public access, documents that "play only a negligible role in the performance of Article III duties" are accorded only a low presumption that "amounts to little more than a prediction of public access absent a countervailing reason."[30] Documents that are never filed with the court, but simply "passed between the parties in discovery, lie entirely beyond the presumption's reach."[31]

The remaining sealed materials at issue here include filings related to, *inter alia*, motions to compel testimony, to quash trial subpoenae, and to exclude certain deposition testimony. All such motions, at least on their face, call upon the court to exercise its Article III powers. Moreover, erroneous judicial decision-making with respect to such evidentiary and discovery matters can cause substantial harm. Such materials are therefore of value "to those monitoring the federal courts."[32] Thus, all documents submitted in connection with, and relevant to, such judicial decision-making are subject to at least some presumption of public access.[33]

---

[29] *Amodeo II*, 71 F.3d at 1049.

[30] *Id.* at 1050.

[31] *Id.*

[32] *Id.* at 1049.

[33] In previous decisions, we have identified an important exception to this general rule: the presumption of public access does *not* apply to material that is submitted to the court solely so that the court may decide whether that same

Although a court's authority to oversee discovery and control the evidence introduced at trial surely constitutes an exercise of judicial power, we note that this authority is ancillary to the court's core role in adjudicating a case. Accordingly, the presumption of public access in filings submitted in connection with discovery disputes or motions *in limine* is generally somewhat lower than the presumption applied to material introduced at trial, or in connection with dispositive motions such as motions for dismissal or summary judgment.[34] Thus, while a court must still articulate specific and substantial reasons for sealing such material, the reasons usually need not be as compelling as those required to seal summary judgment filings.

Here, the precise basis for the District Court's decision to deny the motion to unseal these remaining materials is unclear. In the three paragraphs devoted to the issue, the District Court emphasized the potential for embarrassment "given the highly sensitive nature of the underlying allegations," and concluded that "the documents sealed in the course of discovery were neither relied upon by [the District] Court in the rendering of an adjudication, nor necessary to or helpful in resolving a motion."[35] It is therefore unclear whether the District Court held that these materials were not judicial documents (and thus are

---

material must be disclosed in the discovery process or shielded by a Protective Order. *See TheStreet.Com*, 273 F.3d at 233.

[34] *Amodeo II*, 71 F.3d at 1049–50.

[35] *Giuffre*, 325 F. Supp. 3d. at 442 (internal quotation marks and brackets omitted).

not subject to a presumption of public access), or found that privacy interests outweighed a limited right of public access.

On either interpretation, however, the District Court's holding was error. Insofar as the District Court held that these materials are not judicial documents because it did not rely on them in adjudicating a motion, this was legal error. As explained above, the proper inquiry is whether the documents are relevant to the performance of the judicial function, not whether they were relied upon.[36] Indeed, decision-makers often find that a great deal of relevant material does not ultimately sway their decision. And insofar as the District Court held that privacy interests outweigh the presumption of public access in each of the thousands of pages at issue, that decision—which appears to have been made without particularized review—amounts to an abuse of discretion.[37]

In light of the District Court's failure to conduct an individualized review of the sealed materials, it is necessary to do so now. We believe the District Court is best situated to conduct this review. The District Court can directly communicate with the parties, and can therefore more swiftly and thoroughly consider particular objections to unsealing specific materials. Relatedly, the District Court can obtain the parties' assistance in effecting any necessary redactions, and in notifying any outside parties whose privacy interests might be

---

[36] *See* text accompanying notes 12–18 and 26–28, *ante.*

[37] *See In re City of New York*, 607 F.3d 923, 943 n.21 (2d Cir. 2010) (explaining that "abuse of discretion" is a nonpejorative, legal "term of art").

implicated by the unsealing. Accordingly, we remand the cause to the District Court to conduct such a particularized review and unseal all documents for which the presumption of public access outweighs any countervailing privacy interests.

### D. Protecting the Integrity of Judicial Proceedings

While we disagree with the District Court's disposition of the motions to unseal, we share its concern that court files might be used to "promote scandal arising out of unproven potentially libelous statements."[38] We therefore describe certain methods courts can employ to protect the judicial process from being coopted for such purposes.

The Supreme Court has explained that "[e]very court has supervisory power over its own records and files" to ensure they "are not used to gratify private spite or promote public scandal" or "serve as reservoirs of libelous statements for press consumption."[39] This supervisory function is not only within a district court's power, but also among its responsibilities.

In practice, district courts may employ several methods to fulfill this function. They may, for instance, issue protective orders forbidding dissemination of certain material "to protect a party or person from annoyance, embarrassment, oppression, or undue

---

[38] *Giuffre*, 325 F. Supp. 3d at 447.

[39] *Nixon*, 435 U.S. at 598 (internal quotation marks).

burden" and require that filings containing such material be submitted under seal.[40] If parties then seek to file such materials, the court may deny them leave to do so.[41] District courts may also seek to counteract the effect of defamatory statements by explaining on the record that the statements appear to lack credibility. Moreover, under Federal Rule of Civil Procedure 12(f), the district court may strike such material from the filings on the grounds that it is "redundant, immaterial, impertinent, or scandalous."[42] Because such rejected or stricken material is not "relevant to the performance of the judicial function" it would not be considered a "judicial document" and would enjoy no presumption of public access.[43] Finally, in appropriate

---

[40] Fed. R. Civ. P. 26(c); *see also TheStreet.Com*, 273 F.3d at 229–30.

[41] *See, e.g.*, S.D.N.Y. Electronic Case Filing Rules & Instructions, February 1, 2019 Edition, Rule 6.1, http://nysd.uscourts.gov/ecf/ECF%20Rules%20020119%20Final.pdf.

[42] Fed. R. Civ. P. 12(f). Courts may strike material from the pleadings either "on its own" or **"**on motion made by a party." *Id.* Although motions to strike material *solely* "on the ground that the matter is impertinent and immaterial" are disfavored, when material is also "scandalous," no such presumption applies. *Cf. Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976); *see also Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992) ("Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice."); *Wine Markets Int'l, Inc. v. Bass*, 177 F.R.D. 128, 133 (E.D.N.Y. 1998) ("Motions to strike are not generally favored, except in relation to scandalous matters."); *Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613, 617–18 (1st Cir. 1988) (categorizing as scandalous "matter which impugned the character of defendants").

[43] *Amodeo I*, 44 F.3d at 145.

circumstances, district courts may impose sanctions on attorneys and parties under Federal Rule of Civil Procedure 11(c).[44]

### E.  A Cautionary Note

We conclude with a note of caution to the public regarding the reliability of court filings such as those unsealed today.

Materials submitted by parties to a court should be understood for what they are. They do not reflect the court's own findings. Rather, they are prepared by parties seeking to advance their own interests in an adversarial process. Although affidavits and depositions are offered "under penalty of perjury," it is in fact exceedingly rare for anyone to be prosecuted for perjury in a civil proceeding.[45] Similarly,

---

[44] In relevant part, Rule 11 provides:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that . . . it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . . [T]he court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation . . . . The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11. *See also Amodeo II,* 71 F.3d at 1049 (describing sanctions available to the court).

[45] Sonia Sotomayor & Nicole A. Gordon, *Returning Majesty to the Law and Politics: A Modern Approach*, 30 Suffolk U. L. Rev. 35, 47 n.52 (1996) ("Perjury cases are not often pursued . . . .").

pleadings, complaints, and briefs—while supposedly based on underlying evidentiary material—can be misleading. Such documents sometimes draw dubious inferences from already questionable material or present ambiguous material as definitive.

Moreover, court filings are, in some respects, particularly susceptible to fraud. For while the threat of defamation actions may deter malicious falsehoods in standard publications, this threat is non-existent with respect to certain court filings. This is so because, under New York law (which governs the underlying defamation claim here), "absolute immunity from liability for defamation exists for oral or written statements made . . . in connection with a proceeding before a court."[46] Thus, although the act of filing a document with a court might be thought to lend that document additional credibility, in fact, allegations appearing in such documents might be less credible than those published elsewhere.[47]

---

[46] *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718 (2015); *see also Kelly v. Albarino*, 485 F.3d 664, 666 (2d Cir. 2007) (adopting the reasoning of the District Court explaining that this privilege is "the broadest of possible privileges"); Restatement (Second) of Torts § 587 (1977) ("A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding."). *But see* note 47, *post*.

[47] While common law courts have generally interpreted the litigation privilege broadly, they nevertheless maintain an important (if rarely implemented) limitation on its scope: to qualify for the privilege, a statement must be "material and pertinent to the questions involved." *Front*, 24 N.Y.3d at 718 (quoting *Youmans*

We have long noted that the press plays a vital role in ensuring the public right of access and in enhancing "the quality and safeguards the integrity of the factfinding process."[48] When faithfully observing its best traditions, the print and electronic media "contributes to public understanding of the rule of law" and "validates [its] claim of functioning as surrogates for the public."[49]

At the same time, the media does the public a profound disservice when it reports on parties' allegations uncritically. We have previously observed that courts cannot possibly "discredit every statement or document turned up in the course of litigation," and we have criticized "the use by the media of the somewhat misleading term 'court records' in referring to such items."[50] Even ordinarily critical

---

*v. Smith*, 153 N.Y. 214, 219–20 (1897)). It follows, then, that immaterial and impertinent statements are (at least nominally) actionable, particularly when they are "so needlessly defamatory as to warrant the inference of express malice." *Id.* (same). It seems to us that when a district court strikes statements from the record pursuant to Fed. R. Civ. P. 12(f) on the ground that the matter is "impertinent" and "immaterial," it makes the very same determination that permits a defamation action under the common law. We think the judicial system would be well served were our common law courts to revitalize this crucial qualification to the litigation privilege.

[48] *Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir. 1984) (quoting *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 606 (1982)).

[49] *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572–73 (1980) (plurality opinion) (internal quotation marks omitted).

[50] *Amodeo II*, 71 F.3d at 1049.

23

readers may take the reference to "court papers" as some sort of marker of reliability. This would be a mistake.

We therefore urge the media to exercise restraint in covering potentially defamatory allegations, and we caution the public to read such accounts with discernment.

### III. CONCLUSION

To summarize, we hold as follows:

(1) Materials submitted in connection with a motion for summary judgment are subject to a strong presumption of public access.

(2) The summary judgment record at issue will be unsealed upon issuance of our mandate, subject to minimal redactions.[51]

(3) Materials submitted in connection with, and relevant to, discovery motions, motions *in limine*, and other non-dispositive motions are subject to a lesser—but still substantial— presumption of public access.

(4) The District Court is directed to review the remaining sealed materials individually and unseal those materials as appropriate.

---

[51] *See* note 22, *ante.*

(5) District courts should exercise the full range of their substantial powers to ensure their files do not become vehicles for defamation.

For the foregoing reasons, we **VACATE** the orders of the District Court entered on November 2, 2016, May 3, 2017, and August 27, 2018, **ORDER** the unsealing of the summary judgment record as described herein, and **REMAND** the cause to the District Court for particularized review of the remaining materials.

In undertaking this task, the District Court may be well-served by ordering the parties to submit to the Court unredacted, electronic copies of the remaining sealed materials, as well as specific, proposed redactions. The District Court may also order the parties to identify and notify additional parties whose privacy interests would likely be implicated by disclosure of these materials.

In the interests of judicial economy, any future appeal in this matter shall be referred to this panel.

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit

25

POOLER, *Circuit Judge, dissenting in part*:

I join the Court's opinion in every respect but one: the decision to unseal the summary judgment record ourselves. I agree that all or most of the material must be unsealed. Nevertheless, in my view, the district court is better suited to the task. As the Court's opinion recognizes in connection with the remaining sealed materials, the district court is better positioned to communicate with the parties and any nonparties whose privacy interests might be affected by unsealing. On that score, it is worth clarifying here the breadth of the Court's unsealing order: it unseals nearly 2000 pages of material. The task of identifying and making specific redactions in such a substantial volume is perilous; the consequences of even a seemingly minor error may be grave and are irrevocable. Moreover, although I share the majority's concern about avoiding delay, I would alleviate that concern through other means—perhaps with an order directing the district court to act expeditiously and by making clear what types of limited redactions are and are not appropriate. In sum, I would unseal the district court's summary judgment decision only and leave the remainder of the materials for the district court to review, redact, and unseal on remand.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

CERTIFIED COPY ISSUED ON 07/03/2019