J94PGIUC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

VIRGINIA L. GIUFFRE,

              Plaintiff,

         v.                          15 CV 7433 (LAP)

GHISLAINE MAXWELL,

              Defendant.

------------------------------x
                                 New York, N.Y.
                                 September 4, 2019
                                 9:06 a.m.
Before:
              HON. LORETTA A. PRESKA,

                                 District Judge

                     APPEARANCES

BOIES, SCHILLER & FLEXNER, LLP
     Attorneys for Plaintiff
BY:  SIGRID S. McCAWLEY
     JOSHUA I. SCHILLER

HADDON MORGAN AND FOREMAN
     Attorneys for Defendant
BY:  JEFFREY S. PAGLIUCA

EMERY CELLI BRINCKERHOFF & ABADY, LLP
     Attorneys for Intervenor Alan M. Dershowitz
BY:  ANDREW G. CELLI
     DAVID A. LEBOWITZ

HOLLAND & KNIGHT
     Attorneys for Intervenors Julie Brown and Miami Herald
     Media Company
BY:  CHRISTINE WALZ

KRIEGER KIM & LEWIN LLP
     Attorneys for Anonymous Third Party, John Doe
BY:  NICHOLAS J. LEWIN
     PAUL M. KRIEGER
```

J94PGIUC

```
1              (In open court)

2              THE COURT:  Good morning, ladies and gentlemen.  Won't

3      you be seated.  Giuffre against Maxwell.

4              Counsel, please tell me how your client pronounces her

5      name.

6              MS. McCAWLEY:  It's Giuffre, Virginia Giuffre.

7              THE COURT:  Yes, ma'am.  Ms. McCawley?

8              MS. McCAWLEY:  Sigrid McCawley on behalf of Virginia

9      Giuffre, and I have my partner here with me Josh Schiller.

10             THE COURT:  Yes, thank you.  Good morning.

11             Counsel for Ms. Maxwell?

12             MR. PAGLIUCA:  Good morning, your Honor.  My name is

13     Jeff Pagliuca.  I'm appearing on behalf of Ms. Maxwell.

14             THE COURT:  Thank you.

15             Counsel for Mr. Dershowitz?  Mr. Celli?

16             MR. CELLI:  Good morning, your Honor.  It's Andrew

17     Celli.  I'm here with my colleague, David Lebowitz for Alan

18     Dershowitz.

19             THE COURT:  Yes, sir.  Good morning.

20             Mr. Lewin, Mr. Krieger, where are you?  Good morning.

21             MR. LEWIN:  Good morning, Judge.  Nicholas Lewin and

22     Paul Krieger for a non-party, styled as John Doe.

23             THE COURT:  Yes, sir.

24             And Ms. Walz?

25             MS. WALZ:  Yes, your Honor.  Christine Walz on behalf
```

J94PGIUC

1    of the Miami Herald and Julie Brown.

2              THE COURT:  Yes, ma'am.  Thank you.

3              Counsel, have you had a conversation about how we're

4    going to do this?

5              MS. McCAWLEY:  Yes, your Honor.

6              THE COURT:  Yes, ma'am.

7              MS. McCAWLEY:  The parties have conferred.  We had a

8    long conference call to discuss the various issues that are at

9    hand here.  As the Court well knows, the Second Circuit has

10   returned this case to you for the purpose of assessing public

11   access --

12             THE COURT:  So I hear.

13             MS. McCAWLEY:  -- to the docket.  That's correct.

14             So we have done is we've had some dialogue about that.

15   We have some different proposals that we would like to present

16   to the Court.

17             As an initial matter, the Court will find that there

18   is some guidance that has come to the Court post the decision

19   of the Second Circuit.  So your fellow judge, Judge Furman, has

20   dealt with this issue very recently in *Sperion v. The City of*

21   *New York*, a very similar issue, where he had an unsealing order

22   and in light of --

23             THE COURT:  Tell me what you people have decided you

24   want to do.

25             MS. McCAWLEY:  Sure.  From our perspective, from the

4

J94PGIUC

1    plaintiff's perspective, we proposed an unsealing that would be

2    a review of the docket in a staggered form, starting from the

3    back of the docket forward.  So we have the stipulation of

4    dismissal, and what we've done is staggered it in pieces so

5    that the parties would be able to have an opportunity to review

6    that, as well as giving non-parties an opportunity to object,

7    to the extent that they're noticed in any of those filings, and

8    that we would submit -- anybody who wanted to make a proposal

9    for keeping a document sealed, would submit that to the Court.

10   So it would be a staggered form.

11           THE COURT:  I mean, you saw Mr. Lewin's letter.

12           MS. McCAWLEY:  Correct.

13           THE COURT:  He had a very specific proposal.  I'm not

14   saying they have to be that, but --

15           MS. McCAWLEY:  Yes, I can go through the --

16           THE COURT:  You don't have to do it in tranches.  It

17   seems you, parties, should have already had a conversation

18   about what you agree should be unsealed.

19           MS. McCAWLEY:  Well, there is a difference of opinion

20   as to that, certainly.

21           THE COURT:  There's nothing you can agree on?

22           MS. McCAWLEY:  At this point, we have talked about the

23   structure and there has been no agreement as to what documents

24   would remain sealed.  So what -- and I do have a specific

25   proposal, your Honor, as to which document --

J94PGIUC

1          THE COURT:  Okay.  Let's hear it.

2          MS. McCAWLEY:  So as an initial matter, the idea of

3    working from the back forward would be because the bulk of the

4    documents were submitted prior to trial.  So we were, you know,

5    on the eve of trial at the time the stipulation of dismissal

6    was entered.

7          So we're working from docket entry 657, back to the

8    motions in limine.  As the Second Circuit had noted, the

9    motions in limine, which were submitted on 3-3 of 2017, and so

10   that's docket 917 back to 657; so it's a chunk of, say, 300 or

11   so docket entries that we would have the parties submit.  To

12   the extent anyone is objecting to unsealing, they would submit

13   that proposal at that time.

14         And then the next batch would be from 657 back to 287,

15   which is an order on a motion for sanctions.

16         And then the final batch would be 287 back to docket

17   entry 62, which is the day that the Court entered -- that the's

18   the docket entry that the Court entered the confidentiality

19   stipulation.

20         And to the extent that there is any concern about any

21   of the submissions that were post the dismissal of the case,

22   there was some confidential submissions in the later filings

23   with the Miami Herald and others in this case, that would be

24   reviewed at the very back end because that's the smallest

25   portion.

J94PGIUC

1          So that's the proposal that we had.  And in our view,

2     as the plaintiff has submitted to the Second Circuit

3     previously, our proposal is to redact only those items that are

4     Social Security numbers, the names of minor victims, as well as

5     any highly sensitive, personal medical information.  So that is

6     the proposal we made to the Second Circuit when we handled it

7     at the summary judgement sealing of materials.

8          THE COURT:  How do you people intend to address the

9     non-party claim that Mr. Lewin wrote about?

10         MS. McCAWLEY:  Yes, so with respect to the non-party

11    claims, as part of this process, anybody whose information, for

12    example the deponent -- there were non-party deponents in this

13    case -- would be notified if their name appeared in the

14    grouping, to be given the opportunity to submit an objection,

15    if they had one, with respect to any of the filings within that

16    docket section.

17         THE COURT:  All right.  Who would like to comment on

18    that?

19         MR. PAGLIUCA:  Your Honor, again, Jeff Pagliuca.

20         THE COURT:  Yes.  Mr. Celli.

21         MR. PAGLIUCA:  This is Jeff Pagliuca on behalf of

22    Ms. Maxwell, your Honor.

23         THE COURT:  Yes, sir.

24         MR. PAGLIUCA:  Your Honor, I have a different process

25    in mind.

J94PGIUC

 1              THE COURT:  Did you people not talk about this?

 2              MR. PAGLIUCA:  We did talk, your Honor.  Like most

 3       everything in this case, there's generally not been agreement

 4       about how to resolve the issues, unfortunately.

 5              In my view, your Honor, there should be -- the parties

 6       should identify globally what I would call category one,

 7       category two and category three documents.  Category one would

 8       be non-judicial documents; category two would be what I would

 9       call negligible-role judicial documents; category three would

10       be judicial documents.

11              Those issues would be presented to the Court by the

12       parties.  The Court could decide the category one, category two

13       issues.  To the extent that there are any remaining judicial

14       documents, which frankly, your Honor, in my review of the

15       900-and-some-odd filings in this case, I would say most, if not

16       all, in my view, certainly post the protection order, are going

17       to be in the category one or category two documents, either

18       non-judicial documents or negligible-role judicial documents.

19              THE COURT:  Give me some examples of generically

20       non-judicial documents.  Motions for an extension or something

21       stupid like that?

22              MR. PAGLIUCA:  Motions for extension, deposition

23       designations.  So the Court knows, there were 29 depositions

24       taken in this case.  The vast majority were out of state, and

25       so the trial, which was scheduled for May 15, was going to be

J94PGIUC

```
1    largely by video deposition.  So there were literally thousands
2    of deposition designations and counter-designations and
3    objections to those designations.
4         That motion -- that motion practice, with the
5    designation, counter-designations and objections, were never
6    ruled on by Judge Sweet in advance of trial.  And I think it's
7    important also for this Court to understand that on the eve of
8    trial, one week before trial, when this case settled, there
9    were 50 -- five-O -- motions pending in this case.  Five-O
10   motions pending that had not been ruled on by the Court.
11        The majority of those were either 702 challenges to
12   experts, motions in limine, or the deposition designation
13   issues.  I can't imagine that a deposition designation would be
14   a judicial document.  It is simply a party giving notice that
15   I'm going to play this portion of a deposition at trial.  It
16   requires no action by the Court, absent an objection.
17        Similarly, the counter-designation requires no action
18   by the Court, absent an objection.  And I follow that up with
19   the objections, which were never considered by Judge Sweet, I
20   think would also fall in either the non-judicial document
21   category or the negligible judicial document category because,
22   really, what the Court is doing is ruling on an objection, and
23   if a designation is not a judicial document, I can't imagine
24   that a Court ruling on a hearsay objection in advance of trial,
25   meaning that the testimony would not be played to the jury or
```

J94PGIUC

made public, in the event that the objection is sustained, I

can't imagine, frankly, that that is a judicial document, but

if it is, it is a negligible judicial document, in my view.

          THE COURT:  I thought the Second Circuit was of the

view that the Court's ruling on the evidence that's coming in

to trial is a core judicial function.  I hear you that Judge

Sweet didn't get to that before the people settled, but...

          MR. PAGLIUCA:  I think --

          THE COURT:  Kind of weigh those two.

          MR. PAGLIUCA:  I think that they are discovery

documents, your Honor, because --

          THE COURT:  They're not discovery documents.  It's not

like you took the deposition and you just filed it.  As we

know, we don't do that in this district.

          But my question is, how do we weigh the designation of

trial evidence, even though not ruled on, against the Circuit

saying that running trial evidence is a core judicial function?

          MR. PAGLIUCA:  I don't see this as a core judicial

function, your Honor, because we don't know how this was going

to play out, frankly.  These things were submitted to the Court

and nothing happened to them.  Judge Sweet could have said, I'm

just going to wait, and if this gets played at trial, I'll make

these rulings as they come.  I don't know.

          The same as with the 702 issues, your Honor.  These

are discovery documents that are being objected to, and by

J94PGIUC

1    necessity, we have to place the issue before the Court.  But

2    something that is inadmissible should not become a core

3    judicial document by virtue of the fact that one party

4    inappropriately is trying to submit evidence to a jury that

5    shouldn't be allowed.

6         THE COURT:  All right.

7         MR. PAGLIUCA:  So those are the kinds of things that I

8    think need to be addressed first.  What is a non-judicial

9    document?  What is a non --

10        THE COURT:  Okay.  But here's the question:  How are

11   we going to minimize everybody's work?  From what you're

12   saying, there would have to be a bunch of rulings upfront,

13   document by document, about non-judicial, negligibly judicial,

14   and judicial documents.  And then probably we'd have to go back

15   again, right, and weigh, for example, the negligibly judicial

16   documents?

17        MR. PAGLIUCA:  Well, I think, your Honor, yes, there

18   is some work involved in this.

19        THE COURT:  Yes.

20        MR. PAGLIUCA:  Yes, I agree, but I think, fairly

21   quickly, we will get to a point where the Court is going to

22   decide, you know, are these categories, I will say simple

23   designations, are they judicial documents or not.  If the Court

24   says they're not, we move on.

25        Okay.  Now, we have the next, which are objections to

J94PGIUC

1   designations, deposition designations.  The Court then says,

2   well, I'm going to decide that they are in one of these

3   categories, and then we move on.

4           The reason I'm proposing this, your Honor, is I will

5   skip to the end, which is, frankly, I agree with the submission

6   by Mr. Krieger and Mr. Lewin.  I think it was very well thought

7   out.  I think it's the appropriate way to notify non-parties.

8           The thing that they don't know is that under their

9   proposal, there are probably hundreds of people that would need

10  to be designated, and I am suggesting that we do a review of

11  core, you know, category one, two, three.

12          THE COURT:  I see.  You want to do the categories

13  first, so that if a big category involving the non-parties is

14  ruled out, then we don't have to bother all the non-parties?

15          MR. PAGLIUCA:  Correct, your Honor.  Because in these

16  29 depositions, there are dozens, if not hundreds, of names of

17  other people.  In the documents that were attached to various

18  pleadings, there are literally hundreds of pages of

19  investigative reports that mention hundreds of people.

20          There is a piece of evidence that I will generically

21  refer to as "an address book" that has a thousand names in it

22  probably, and so, you know, if we are going to notify people

23  who may have --

24          THE COURT:  I understand.

25          MR. PAGLIUCA:  That's the problem.  That's what I am

J94PGIUC

1    proposing, your Honor.  I don't think it's that onerous,

2    frankly, given that most of these documents fall into either

3    discovery dispute documents, motion in limine documents, or

4    deposition designation documents.  So I think it would be a

5    fairly easy task for everyone to go through those.

6         THE COURT:  Says you.  Let me just hear from anyone,

7    and then we'll go back to Ms. McCawley.  Yes, ma'am.

8         MS. WALZ:  I think that counsel is mistaken that this

9    is going to be an easy task and that these documents are not

10   going to be judicial documents.  I think that, for the most

11   part, everything --

12        THE COURT:  The question is only how are we going to

13   do it more easily, most easily, and I agree with you, counsel

14   is mistaken, it's not going to be easy.  The question is what

15   is the most easy way?

16        MS. WALZ:  So we think that having some guidance from

17   the Court upfront about what documents are going to be judicial

18   documents would be very helpful.

19        THE COURT:  Okay.  So you're with him.

20        MS. WALZ:  Judicial documents, yes, but not having the

21   parties decide amongst themselves whether they are judicial

22   documents or not.  Obviously, the intervenors would want to be

23   involved in any further discussion about that, and we think

24   that having --

25        THE COURT:  But if the parties agree, which it sounds

J94PGIUC

1    unlikely, but of course, they have to try to do it themselves

2    first.

3          MS. WALZ:  If they agree that it's a non-judicial

4    document.

5          THE COURT:  They agree whatever category it's in.

6          MS. WALZ:  We think that --

7          THE COURT:  As a category.

8          MS. WALZ:  As to the category, I think it's unlikely

9    that the parties are going to agree; so I think setting up a

10   schedule where we can get guidance from the Court as to that,

11   where there's briefing from the parties and having that occur

12   on a very --

13         THE COURT:  Expedited.

14         MS. WALZ:  -- expedited basis is the best way of

15   approaching that for now.

16         THE COURT:  And you don't disagree with counsel's

17   three categories.

18         MS. WALZ:  Judicial documents, non-judicial documents.

19         THE COURT:  And negligibly judicial documents.

20         MS. WALZ:  I disagree with the assertion that anything

21   is negligibly a judicial document.

22         THE COURT:  I think the Court of Appeals did give

23   counsel a little support on this one.

24         MS. WALZ:  A middle ground in between the two, we

25   would agree to that.

J94PGIUC

1          THE COURT:  Okay.  Who else wants to be heard before

2     we go back to Ms. McCawley?

3          MR. CELLI:  Your Honor, Andrew Celli for Alan

4     Dershowitz.  I don't have much to add, except to say that

5     Mr. Dershowitz's position is that there should be maximum

6     disclosure with maximum speed.

7          THE COURT:  I don't care.  Do you disagree with what

8     counsel has just said?

9          MR. CELLI:  We agree with the Herald.  We think that

10    procedure makes sense, and we would want to, obviously,

11    participate as intervenors in the case.  We are the ones who

12    originally brought the matter for an application for openness;

13    so we want to participate as well.

14          THE COURT:  Yeah, yeah, yeah.

15          Mr. Lewin?

16          MR. LEWIN:  Thank you, your Honor.  If anything, this

17    entire discussion illustrates why the protocol we proposed is

18    right.  If there are areas where the parties can agree, that

19    makes it easy.  Moreover, we agree with three -- sort of ideas

20    that there are three categories.  Of course, that's a

21    simplification.  The Second Circuit has said there are

22    continuum of documents.

23          THE COURT:  Yes, yes, yes.

24          MR. LEWIN:  Right?  So there has to be some way to

25    sort of categorize things.

J94PGIUC

<pre>
 1              THE COURT:  Okay.  But here's the question that

 2     counsel raised.  In some of these documents, there are

 3     literally a thousand people, and I think what they're trying to

 4     do is to minimize the efforts they have to go through to notify

 5     people and the effort which the non-parties might have to go

 6     through which, at the end of the day, might turn out to be for

 7     nothing.  What do you say to that?

 8              MR. LEWIN:  Judge, it's never great to be in a

 9     position of saying this is the judge's issue, but this is

10     precisely why the Second Circuit, since at least 1987, has said

11     this responsibility rests heavily on the shoulders of the

12     district judge because it is --

13              THE COURT:  Of course, the district judge always asks

14     the lawyers what they think.

15              MR. LEWIN:  Of course.

16              THE COURT:  What do you think?

17              MR. LEWIN:  Of course, Judge.  But again, I will point

18     out Judge Kaplan, just yesterday, issued an opinion, which we

19     can hand up, in *United States v. Gatto*, which is 17 CR 686, in

20     which he reviews a series of documents that were of great

21     public interest that intervenors requested.  The Judge assesses

22     the extraordinary privacy interest of non-parties -- well,

23     Judge, if you let me finish --

24              THE COURT:  Did you hear me say anything?

25              MR. LEWIN:  -- that the documents should remain under
</pre>

16

J94PGIUC

1    seal.  It may well be the case, especially after this triaging

2    of the documents, that the Court is able to wholesale knock out

3    documents and maintain them under seal because the privacy

4    interests of the subject matter in this case are --

5              THE COURT:  Of course, but you say you want to be

6    heard, and I don't -- I mean, one thing we might do is, if we

7    go down this road, is go ahead and do all the briefing

8    expeditiously, and then to the extent that we think perhaps

9    some of it should be unsealed, then worry about giving notice.

10             MR. LEWIN:  That is precisely what we proposed in our

11   protocol, Judge, which is that the first step, the parties

12   identify and agree on the issues.

13             THE COURT:  I hear you.

14             Ms. McCawley.

15             MS. McCAWLEY:  Yes, your Honor.  The efficiency that I

16   see in the proposal of starting from the back forward, in that

17   sense, is that the bulk of what we're talking about here is in

18   that back half of the docket; so the depositions, which I do

19   believe are judicial documents -- and we submitted

20   designations -- for all the reasons your Honor just said, those

21   get considered; the motions in limine, which the Second Circuit

22   has already said weigh in the favor of judicial documents; the

23   motions to compel --

24             THE COURT:  I don't understand why we do don't it all

25   at once.

J94PGIUC

1              MS. McCAWLEY:  That's what I'm saying.  So we do that

2      at once in that one batch, that implicates the earlier

3      documents because there are only pieces of those --

4              THE COURT:  I'm only do this one time.

5              MS. McCAWLEY:  Exactly.

6              THE COURT:  Why wouldn't we adopt counsel's suggestion

7      of putting the documents in categories, but do them all?  I

8      mean, they're all going to --

9              MS. McCAWLEY:  I see what you're say.

10             THE COURT:  -- be put into categories.

11             MS. McCAWLEY:  I understand what you're saying.  So

12     it's twofold.  I just believe that the first piece would be

13     more efficient because you would not be dealing with judicial,

14     non-judicial, et cetera, because you're dealing with the back

15     half when those objections can be raised.

16             THE COURT:  Yes.  You guys disagree as to whether

17     those are judicial or not.

18             MS. McCAWLEY:  It sounds like there is some

19     disagreement, your Honor.

20             THE COURT:  No kidding.

21             MS. McCAWLEY:  So I do think that another alternative

22     is to do the entire docket, separating those out.  The only

23     problem there is you're layering it twice, right?  So you're

24     going to have the debate over judicial, non-judicial,

25     et cetera, and then the notification period, and then the

18

J94PGIUC

1    review of the documents.

2           So it seems that that's what I was doing, the bulk in

3    the first part of the most significant documents, to try to

4    move it forward in a more expeditious manner.  But we're open,

5    if the Court feels it would be better to do a layer of

6    judicial, non-judicial first, before the notification, that's

7    certainly something it's amenable to.

8           THE COURT:  I think we may as well do that.  I mean,

9    the suggestion of notifying a thousand people on something that

10   may ultimately easily be determined to be non-judicial --

11          MS. McCAWLEY:  Sure.  I just, for the record, in my

12   view, knowing the documents, I don't believe that's an accurate

13   statement of the amount of people that would be notified in

14   these materials, but setting that aside --

15          THE COURT:  In the generically described documents,

16   that's about the number.

17          MS. McCAWLEY:  Well, in that generically described

18   document, that document is already public; so there's that

19   issue, as well.

20          THE COURT:  What about that?  Do we think that the

21   other documents will implicate that number of people?

22          MS. McCAWLEY:  The other documents, for example --

23          THE COURT:  I'm sorry.  I was asking Mr. Pagliuca.

24          MS. McCAWLEY:  I'm sorry.

25          MR. PAGLIUCA:  There are hundreds of other people

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J94PGIUC

1    implicated in the other documents, your Honor, and the Second

2    Circuit has already redacted some of that from the summary

3    judgement material, which would then, I think, have to be

4    redacted if it were, in fact, a judicial document, from those

5    documents.  So that may take care of some of that problem,

6    but --

7              THE COURT:  So do I.

8              MR. PAGLIUCA:  -- there are a large body of names that

9    haven't been redacted.  There are a lot of people, your Honor.

10             THE COURT:  Okay.  Did you want to add anything else?

11             MS. McCAWLEY:  No, your Honor.

12             THE COURT:  Anybody else?

13             All right.  Would you folks get together.  Let's do

14   expedited briefing on what is or is not in any of the three

15   categories.  To the extent you can, it's, obviously, going to

16   be helpful to be able to group the documents.

17             How are we going to keep this under control in terms

18   of the length of briefing?  Anybody?

19             MS. McCAWLEY:  Well, your Honor --

20             THE COURT:  Go ahead.

21             MS. McCAWLEY:  Excuse me.  This is Sigrid McCawley.

22   One option would be, obviously, we're grouping, as I've gone

23   through, and we have the docket itself.  One idea would be to

24   just have that as an exhibit and group -- mark those so that

25   the legal briefing is limited to referring to what's in the

J94PGIUC

1    exhibit.  So in other words, there's a regular, normal-size

2    brief of, you know, 20 pages.

3              THE COURT:  There is not going to be a normal-size

4    brief on each one of these things, at all.

5              MS. McCAWLEY:  I'm sorry, I meant on the categories

6    you're suggesting, and then referring to the exhibit.

7              THE COURT:  I don't care if you refer to the exhibits,

8    and you probably have to, but the titles of the categories, you

9    know, deposition designations, and objections, probably, right?

10   Are they the same category?  Documents otherwise just attached

11   to pleadings.  What else?  Motions in limine documents?

12             MS. McCAWLEY:  Yes, correct.  Motions to compel.

13             THE COURT:  What else?  Motions to compel documents.

14   What else?

15             MS. McCAWLEY:  There were also some discovery

16   disputes, adverse inferences, things of that nature that had

17   things attached.

18             THE COURT:  Okay.

19             MS. McCAWLEY:  So there are logical categories within

20   the --

21             THE COURT:  All right.  But let's say we end up with

22   ten or fewer.  Five pages, four, five pages against; three

23   pages in reply for each of those categories.  This is not hard

24   stuff, right?

25             MS. McCAWLEY:  Right.

J94PGIUC

1          THE COURT:  Sir?

2          MR. PAGLIUCA:  I think that's fine, your Honor.  I'm

3     trying to envision, though, when we are talking about the

4     category two documents.  There is -- I suppose if it's simply

5     the designations that these fall into that category, that's one

6     thing, but if we are arguing about the balancing that the Court

7     has to do about sealing or unsealing, that's way more

8     complicated.

9          THE COURT:  I thought we were going to first consider

10     which category the documents went into.  Then, let's say,

11     there's a ruling on that.  Judicial, we know what we have to

12     do.  Non-judicial, we know what we have to do.  It then seems

13     to me, much as it pains me to say it, you probably get a second

14     shot at the medium category.

15          MR. PAGLIUCA:  I think that's right, your Honor, and

16     I'm going to suggest now, we're going to revisit this if we get

17     there, but it's likely more of a conversation and an argument

18     about those, than doing that in writing because there's quite a

19     bit to each of those different pieces.

20          THE COURT:  All right.  We can get to that when we get

21     to that and see how much it is.

22          MR. PAGLIUCA:  And can you repeat for me, your Honor,

23     the page limitations?

24          THE COURT:  I was thinking five pages for sealing,

25     five pages against sealing, and three pages in reply.  Double

J94PGIUC

1    spaced.

2          And, Mr. Lewin, do not write those teeny, little

3    footnotes.  The rules say 12 point-type text in footnotes.  I

4    can't read those teeny, little footnotes.

5          MR. PAGLIUCA:  And, your Honor, that is per category?

6    So if we have ten categories, we are going to --

7          THE COURT:  Yes, sir.  Don't expand it past ten,

8    though; you'll be killed.  What else?

9          MR. PAGLIUCA:  That's all for me, your Honor.

10          THE COURT:  Now, the non-parties might want to be

11    heard on these things, right?  What do you want to do?  The

12    original parties, do you want to agree on your categories, and

13    then to the extent that the non-party wishes to be heard on a

14    category, you get to weigh in as well?  Any reason not to do

15    that?

16          MR. PAGLIUCA:  Here's what I see the practical problem

17    with that, your Honor, is that they don't know what are in

18    these documents.

19          THE COURT:  Absolutely.

20          MR. PAGLIUCA:  So it's going to be difficult.

21          THE COURT:  Well, but perhaps they want to say

22    something.

23          MR. PAGLIUCA:  That's fine, but --

24          THE COURT:  And Ms. Walz is going to say unseal the

25    whole thing, right?

J94PGIUC

1              MR. PAGLIUCA:  Right, of course.  I don't see the

2     efficacy of having non-parties involved in this initial --

3              THE COURT:  Well, what I'm saying is you people get

4     your categories together.  You people say whatever you want to

5     say, and to the extent any of them wishes to be heard, they can

6     put five pages in too.

7              MR. PAGLIUCA:  That's fine, your Honor.  I don't have

8     a problem with that.

9              THE COURT:  All right?  And presumably, you would do

10    it at the time of the response, the response that says

11    unsealed; so that the proponent of sealing would have the

12    opportunity, in the reply, to reply to the non-party as well.

13    Is that all right with you people?

14             MR. CELLI:  That's fine, your Honor.

15             THE COURT:  Okay.  What else, friends?  Can we have

16    the --

17             MR. CELLI:  Just to be clear, your Honor?

18             THE COURT:  Yes, sir.

19             MR. CELLI:  I'm sorry.  That's five pages per category

20    for each of the --

21             THE COURT:  Yes, sir.

22             MR. CELLI:  Thank you.

23             THE COURT:  May we have the categories in a week?  And

24    the first round a week after that?  A week, a week, a week, can

25    we do that?

J94PGIUC

1          MR. PAGLIUCA:  I think that's going to be very

2     difficult for me, your Honor, given my schedule.

3          THE COURT:  What's the issue?

4          MR. PAGLIUCA:  I have multiple hearings and trials

5     over the next two weeks.

6          THE COURT:  Who's working with you on this?

7          MR. CELLI:  Mr. Gee and Ms. Menninger, who I also know

8     are very busy right now.

9          THE COURT:  You know, we've got to get this done.

10         MR. PAGLIUCA:  I understand, your Honor, but I was

11    going to suggest 30 days for the initial round.

12         THE COURT:  No, no.  We're going to do it -- what's

13    the word?

14         MS. WALZ:  Expedited.

15         THE COURT:  Thank you, ma'am.

16         Two weeks for the categories, and then a week, a week,

17    a week.

18         Anything else, friends?  Thank you.  Nice to see you

19    all.

20         MS. McCAWLEY:  Thank you, your Honor.

21         MR. LEWIN:  Thank you, Judge.

22         THE COURT:  Morning.

23         (Adjourned)

24

25