**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

VIRGINIA L. GIUFFRE,

          Plaintiff,                    Case No.: 15 Civ. 7433 (LAP)

v.

GHISLAINE MAXWELL,

          Defendant.

_____/

**PLAINTIFF'S BRIEF IN SUPPORT OF**
**<u>UNSEALING CATEGORIES OF DOCUMENTS</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

   I.    CATEGORY 1:  MOTIONS TO COMPEL AND RELATED MOTIONS FOR
         PROTECTIVE ORDERS AND COURT ORDERS ....................................... 3

   II.   CATEGORY 2:  MOTIONS IN LIMINE RE ADMISSIBILITY OF EVIDENCE
         AND RELATED ORDERS .............................................................................. 6

   III.  CATEGORY 3:  MOTIONS IN LIMINE RE EXPERT TESTIMONY OF
         EVIDENCE AND RELATED ORDERS .......................................................... 9

   IV.  CATEGORY 4:  TRIAL DEPOSITION DESIGNATIONS AND COUNTER-
         DESIGNATIONS ............................................................................................ 11

   V.   CATEGORY 5:  OBJECTIONS TO TRIAL DEPOSITION DESIGNATIONS
         AND COUNTER-DESIGNATIONS ................................................................ 12

   VI.  CATEGORY 6:  FILINGS RELATED TO THIRD-PARTY INTERVENORS
         AND RELATED ORDERS .............................................................................. 14

   VII. CATEGORY 7:  FILINGS RELATED TO THIRD-PARTY (OTHER THAN
         INTERVENORS) – AND RELATED ORDERS ............................................ 15

   VIII. CATEGORY 8:  CASE MANAGEMENT DOCUMENTS ....................................... 16

   IX.  CATEGORY 9:  ADVERSE INFERENCES/SANCTIONS MOTIONS/MOTION
         TO STRIKE OR EXCLUDE EVIDENCE ................................................... 17

CONCLUSION ..................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander Interactive, Inc. v. Adorama, Inc.*,
No. 12 Civ. 6608, 2014 WL 4346174 (S.D.N.Y. Sept. 2, 2014) ................................................ 3

*Brown v. Maxwell*,
929 F.3d 41 (2d Cir. 2019) ............................................................................................. *passim*

*Hardy v. Kaszycki & Sons*,
No. 83 Civ. 6346, 2017 WL 6805707 (S.D.N.Y. Nov. 11, 2017) ............................................ 2

*Lown v. Salvation Army, Inc.*,
No. 4 Civ. 01562, 2012 WL 4888534 (S.D.N.Y. Oct. 12, 2012) ........................................... 12

*Schiller v. City of New York*,
No. 04 Civ. 7921, 2006 WL 2788256 (S.D.N.Y. Sept. 27, 2006) ................................... 3, 5, 15

*Thevenine v. City of Troy*,
No. 16 Civ. 1115, 2019 WL 3759275 (N.D.N.Y. Aug. 9, 2019) ............................................ 3

Plaintiff, Virginia Giuffre hereby responds to Ghislaine Maxwell's Brief In Support of Maintaining Categories of Documents Under Seal, Dkt. 991, and states as follows.

## INTRODUCTION

Of the nine categories of documents that the parties agreed upon for purposes of the Court's unsealing analysis, Maxwell concedes that eight consist of "judicial documents,"[1] Dkt. 991 at 2, which carry with them a presumption of public access.  By her own admission, therefore, in light of direction from the Second Circuit in *Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019), the Court will need to review each of the documents within these categories "and produce specific, on-the-record findings that sealing is necessary to preserve higher values" before ordering that the Court is able to keep them under seal.  *See* Dkt. 991 at 22 (noting that "the remaining categories . . . should be addressed in Step 2 using the standards set forth in *Brown*").  In the pages that follow,[2] Ms. Giuffre explains her position on how the Court should address unsealing of the documents within each category.

---

[1] In an effort to agree upon the categories without burdening the Court, Giuffre accepted 7 of Maxwell's proposed categories, only requesting that she be entitled to designate two different categories, and requested that one category be split into two.  Specifically, Giuffre (i) proposed two additional categories for "Trial Motions and Trial Submissions" and (ii) "Motions re Depositions"; and objected to Maxwell's insistence that documents concerning trial deposition designations, counter-designations, and the objections to those designations be divided into two separate categories.  Dkt. 986 at 1.  For the purposes of this response, Giuffre adopts the numbers used in Maxwell's brief.

[2] Giuffre takes no position on Maxwell's request for leave to "submit all the briefing in one document" (which Giuffre was not consulted on), as opposed to filing nine separate briefs.  Dkt. 991 at 2.  Because Maxwell elected to do the former, however, Giuffre files her response in a similar fashion.

The only category that Maxwell claims "contains exclusively non-judicial documents" is Category 4 (Trial Deposition Designations and Counter-Designation).[3] But this category describes materials that are clearly judicial documents because it includes all proposed trial testimony. "In determining whether a document is a judicial document, a court must evaluate the degree of judicial reliance on the document in question and the relevance of the document's specific contents to the nature of the proceeding and whether access to the document would materially assist the public in understanding the issues before the court and in evaluating the fairness and integrity of the court's proceedings." *Hardy v. Kaszycki & Sons*, No. 83 Civ. 6346, 2017 WL 6805707, at *2 (S.D.N.Y. Nov. 11, 2017) (Preska, J.) (internal quotation marks and alterations omitted). The materials in all of the categories proposed, including Category 4, easily meet this standard. The parties' proposed trial testimony reflects the evidence that each side intended to introduce at trial, and were submitted together with (and are necessary to make sense of) *other* judicial documents falling within Category 5 (Objections to Trial Deposition Designations and Counter-Designations), which Maxwell concedes are judicial documents. Judge Sweet would not have been able to rule on the parties' arguments for or against admitting or excluding evidence without the accompanying proposed trial testimony, as marked on the deposition transcripts themselves. Maxwell's description of these materials as merely "start and end times for the video-recorded deposition testimony of various witnesses" is misleading. Pursuant to their agreement to do so, the parties submitted to the Court full deposition transcripts with each side's proposed trial testimony designations marked in different colors. The thousands of pages of testimony present in these boxes of materials, which were submitted to the Court in order for it to rule on whether or

---

[3] Giuffre believes that Maxwell's brief contains a typographical error when it identifies "Category 5" (and not Category 4) as the one containing non-judicial documents. In any event, the documents in each category are judicial documents.

not they could be presented to the jury (and members of the public who would attend trial), are core judicial documents that should be published as soon as possible.

The remainder of Maxwell's brief asserts that all of the documents at issue are only "negligibly judicial documents." For the reasons set forth below, this is incorrect. Each of the documents currently under seal is relevant to the merits of the parties' dispute and was submitted to the Court as part the exercise of its judicial function. Under the First Amendment and the common law, these materials must be made available for the public to review, notwithstanding the fact that Maxwell believes that their publication may cause her further embarrassment. *See Thevenine v. City of Troy*, No. 16 Civ. 1115, 2019 WL 3759275, at *3 (N.D.N.Y. Aug. 9, 2019) (relying on *Brown v. Maxwell*, and also noting that "[t]he fact that the result of that process may exonerate or embarrass a particular individual is a natural outcome of the case itself and is not a proper basis to seal filings and arguments in connection with this Court's judicial function. Indeed, such an argument could be made in connection with any case accusing a defendant of misconduct.").

## ARGUMENT

## I.   CATEGORY 1:  MOTIONS TO COMPEL AND RELATED MOTIONS FOR PROTECTIVE ORDERS AND COURT ORDERS

Each of the documents falling within Category 1, which concerns motions to compel and related motions for protective orders, is a judicial document. "Documents created by or at the behest of counsel and presented to a court in order to sway a judicial decision are judicial documents that trigger the presumption of public access." *Schiller v. City of New York*, No. 04 Civ. 7921, 2006 WL 2788256, at *5 (S.D.N.Y. Sept. 27, 2006). Discovery motions—including motions to compel or for protective orders—are therefore judicial documents, as are any accompanying declarations, affidavits, and exhibits attached thereto. *See Alexander Interactive,*

*Inc. v. Adorama, Inc.*, No. 12 Civ. 6608, 2014 WL 4346174, at *2 (S.D.N.Y. Sept. 2, 2014) (holding that "the documents to be submitted are in support of a motion to compel discovery and presumably will be necessary to or helpful in resolving that motion.  They are, therefore, judicial documents.")

Maxwell concedes that, at a minimum, the vast majority of documents falling within Category 1 are judicial documents.  Dkt. 991 at 5 (identifying "132 docket entries" within category and only 5 claimed to be non-judicial).  Maxwell cites to the Second Circuit's ruling in *Brown v. Maxwell* for the proposition that the five docket entries consist entirely of non-judicial documents because they were "[m]aterials submitted to the court solely so that the court may decide whether they must be disclosed in the discovery process or shielded by a protective order."  *Id.* (identifying Dkts. 141, 370, 806, 830, and 841).  Maxwell's interpretation of *Brown* is incorrect.

In *Brown*, the Second Circuit noted that "motions to compel testimony, to quash trial subpoenae, and to exclude certain deposition testimony. . . call upon the court to exercise its Article III powers."  *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019).  Because "erroneous judicial decision-making with respect to such evidentiary and discovery matters can cause substantial harm," the documents are "of value 'to those monitoring the federal courts'" and "subject to at least some presumption of public access."  *Id.*  The presumption, therefore, is that all the materials falling within Category 1 are judicial documents subject to a presumption of access.[4]

In a footnote, the *Brown* court noted an "exception to this general rule:  The presumption of public access does *not* apply to material that is submitted to the court solely so that the court may decide whether *that same material* must be disclosed in the discovery process or shielded by

---

[4] Moreover, a simple review of the filings listed by Maxwell establish that they clearly were judicial documents relevant to the trial in this matter.  *See, e.g.*, Dkts. 806, 830, 841 (relating to issues that could impact witnesses at trial).

a Protective Order." *Id*. at 50 n.33 (emphasis added).  Maxwell cannot avail herself of that exception here because the five docket entries Maxwell identifies include redacted submissions and accompanying exhibits that withhold information above and beyond the specific documents or information that were the subject to a motion for a protective order.  For example, Maxwell identifies Dkt. 370, which involves a motion for a protective order regarding her own personal financial information that could be presented at trial for the purpose of plaintiff's punitive damage claim.  Dkt. 991 at 5; *see also* Sealed Order dated Nov. 2, 2016.  The Court cannot conclude, without reviewing the document itself that the information withheld from those documents is the "same material" for which the specific protective order would have applied.  Rather, the Court will need to review the redactions to the motion itself to ensure that its redactions are limited to Maxwell's financial information, as opposed to anything else she designated as Confidential under the Protective Order.  *See Schiller*, 2006 WL 2788256, at *4 (distinguishing between a document "submitted in connection with a motion to determine whether it should be sealed and protective order issued" and "briefs of counsel or supporting affidavits presented in support of the motion").  In addition, the Court will need to ascertain whether or not the withheld exhibit should remain under seal because every part of it contains sensitive information, or if instead it should be published with limited redactions.

Because each document in Category 1 is a judicial document, the Court will have to ascertain whether or not Maxwell is able to overcome the presumption of public access.  In addition to being premature, Maxwell's self-serving assertion that these materials "concerned issues wholly collateral to the lawsuit's merits" is also unfounded, and will be easily refuted during the Court's document-by-document review.

For the foregoing reasons, the Court should hold that the documents in Category 1 are judicial documents, to which a presumption of access applies.

## II.      CATEGORY 2:  MOTIONS IN LIMINE RE ADMISSIBILITY OF EVIDENCE AND RELATED ORDERS

Maxwell concedes that the documents falling within in Category 2, concerning motions in limine on the admissibility of evidence proposed for trial, are judicial documents.  Dkt. 991 at 7. This makes sense, given that a court's determinations as to the evidence the parties may use at trial is a quintessential judicial function.   Nonetheless, Maxwell raises several arguments that this category of documents should be considered "negligible" judicial documents—whatever that may mean.  In any event, each argument is meritless.

First, Maxwell argues that much of the evidence is inadmissible because Giuffre planned to introduce documents and testimony concerning Jeffrey Epstein's sex trafficking scheme which, according to her, "allegedly occur[ed] between approximately 2000-2008."  Maxwell's feigned disbelief that Epstein's involvement could have played a role had the case gone to trial is unpersuasive.  Paragraph 8 of the complaint states in unambiguous terms:  "Virginia Giuffre became a victim of sex trafficking and repeated sexual abuse after being recruited by Ghislaine Maxwell and Jeffrey Epstein when Giuffre was under the age of eighteen.  Between 1999 and 2002, with the assistance and participation of Maxwell, Epstein sexually abused Giuffre at numerous locations . . . ."  Dkt. 1 ¶¶ 7-8.  The very fact that, even at this late date, Maxwell still describes Epstein's actions as "allegedly occurring" (as opposed to just "occurring") during those years proves why this evidence was relevant to Giuffre's case, was probative, and was certainly admissible.  Maxwell's narrative throughout the litigation had been that Giuffre was lying about her victimization by Epstein and Maxwell; this evidence would have defeated that defense.

In any event, Maxwell's suggestion that the Court should conclude in secret, based on briefs and accompanying materials that remain under seal, that Judge Sweet would have held these materials inadmissible runs afoul of how the Second Circuit handled this same argument with respect to the summary judgment materials on appeal.  On March 11, 2019, the Second Circuit issued an order to show cause why the summary judgment materials should not be unsealed. *Brown*, 929 F.3d at 46.  In response, Maxwell made the same argument she makes now, stating: "We object to the disclosure of any materials that were inadmissible under the rules of evidence and were the subject of multiple pending and later-filed motions to exclude their use.  Virtually all of the exhibits attached to the Plaintiff's Summary Judgment Response were subject to significant *in limine* motions and were inadmissible for any legitimate evidentiary purpose."  Case No. 18-2868, Doc. 149 at ¶5 (2d Cir. Mar. 19, 2019).  The Second Circuit rejected this line of argument entirely, ordering the summary judgment record unsealed with only "minimal redactions." *Brown*, 929 F.3d at 48.

Second, Maxwell argues that this evidence should be kept under seal because "[t]he media have failed to heed any of the advice handed down by the Second Circuit in this case but instead quote whole cloth from false allegations made in court papers."  Dkt. 991 at 8-9.  In other words, Maxwell believes that the Court should not publish these materials because, if it did, the media would report on it.  This logic is the exact opposite of the consideration required by the First Amendment, the common law, and the principles underlying a free society.  Not only is the media capable of reporting on these materials fairly, but the public is capable of fairly judging for itself the credibility of any unsealed materials.  Maxwell's arguments to the contrary are mere conjecture and the Court should not keep this evidence locked away based on such baseless claims.

Third, Maxwell hypothesizes that "[Ms. Giuffre] and her lawyers are actively seeking to indict Ms. Maxwell and use information provided pursuant to a protective order to do so." Dkt. 991 at 9.  This argument is illogical.  Neither Giuffre nor her attorneys have the ability to indict anyone; only prosecutors working for a state or federal government can do that.  But even if the publication of these materials did lead to criminal prosecution, that risk would not be a "danger of impairment of law enforcement."  *Id*.  To the contrary, it would be in the furtherance of law enforcement efforts if the Court were to make information available for each law enforcement agency to assess if any prosecution is warranted.  Maxwell provides no support for her assertion that the criminal justice system would be hindered by the disclosure of these documents, as opposed to being aided by them.

Finally, Maxwell argues that "[i]t is in the interest of judicial efficiency to maintain the status of these documents because of the difficulty associated with a page-by-page line-by-line review of material."  *Id*. at 10.  But Maxwell's estimate of the difficulty relies on the false premise that the Court would begin by presuming the information should remain under seal unless it could demonstrate otherwise.  This is the exact opposite of the presumption the law requires: *public access* is presumed.  It is also the polar opposite of the approach the Second Circuit followed.  The Second Circuit unsealed the summary judgment record in its entirety, applying redactions only for a handful of discrete categories of information.  *Brown*, 929 F.3d at 48 & n.22.[5]

For the foregoing reasons, the Court should hold that the documents falling within Category 2 are judicial documents with a strong presumption of public access.

---

[5] Maxwell goes so far as to suggest that the Court should keep under seal documents that "may or may not have been released by another Court."  Dkt. 991 at 7 n.5.  The idea that this Court can or should keep under seal documents that are already public is nonsensical.

## III.    CATEGORY 3:  MOTIONS IN LIMINE RE EXPERT TESTIMONY OF EVIDENCE AND RELATED ORDERS

The third category of documents cover motions in limine "related to the admissibility of all or part of a purported expert's opinion." Dkt. 991 at 10.  Maxwell concedes that the documents falling within this category are judicial documents but asserts that because she "generally objected" to portions of Giuffre's experts' reports, the Court should keep these materials sealed.  *Id.*  Each of Maxwell's arguments is meritless.

First, as noted above, Maxwell's assertion that any portion of Giuffre's experts' testimony was inadmissible is incorrect as a matter of law and, in an event, irrelevant to the analysis of whether or not the Court may prevent the public from reviewing the parties' arguments for and against the introduction of evidence that would have been used at trial.  This is why the Second Circuit rejected each and every one of Maxwell's inadmissibility arguments when it unsealed the summary judgment record.

Second, Maxwell argues that these documents should not be published because "discovery rarely takes place in public" and "the system created by Rule 26 contemplates that the exchange of information will occur with minimal judicial involvement."  *Id*. at 11 (internal quotation marks and alteration omitted).  Maxwell confuses, however, the stage in the litigation that the parties filed these motions.  The parties did not file these motions in the course of fact or expert discovery.  Rather these motions were filed on the eve of trial, in order for Judge Sweet to decide what testimony could be introduced before the jury as evidence.  Maxwell cannot shoehorn motions in limine that the parties filed on the eve of trial into a category of documents that would consist of materials exchanged in discovery pursuant to Rule 26.[6]  If Maxwell's reasoning were correct, then

---

[6] As noted throughout, none of the documents subject to unsealing were merely exchanged by the parties during the course of discovery.  Rather, they were filed either in support of or opposition to contested motions that the Court was called upon to resolve.  *See* Dkt. 983 at 9

the Second Circuit erred when it unsealed similar materials included in the summary judgment record.  It did not, and the Court should adopt the same approach here with respect to motion in limine materials.

Third, Maxwell states that "the various experts are presumably free to offer their opinions directly to the media should the Plaintiff wish to authorize the dissemination of these defamatory, unscientific, and unsupportable statements." *Id*. at 12.  Presumably, the implication is that if they did so, Maxwell would sue Giuffre for defamation.  Because truth is an absolute defense to any defamation claim, Giuffre would gladly accept Maxwell's invitation to have the materials published if she were able to do so.  But Giuffre does not believe, given Maxwell's confidentiality designations under the Protective Order and the existence of this unsealing process, that she has the ability to "authorize the dissemination" of the materials in Category 3 absent a court order.  The Court should note Maxwell's consent for this information to be published, however, and consider publishing this set of documents immediately, with redactions similar to what the Second Circuit applied.  Any concern that this would result in the publication of "defamatory, unscientific, and unsupportable statements," could be addressed by the Court's issuance of a cautionary note regarding the reliability of any conclusions contained therein. *See Brown*, 929 F.3d at 52 (allowing publication of similar materials with the following note: "We conclude with a note of caution to the public regarding the reliability of court filings such as those unsealed today.  Materials submitted by parties to a court should be understood for what they are.  They do not reflect the court's own findings.").

---

("They're not discovery documents.  It's not like you took the deposition and you just filed it. As we know, we don't do that in this district.").

The Court should hold that the materials within Category 3 are judicial documents that should be published with minimal redactions.

## IV.    CATEGORY 4:  TRIAL DEPOSITION DESIGNATIONS AND COUNTER-DESIGNATIONS

Category 4 encompasses thousands of pages of deposition transcripts that the parties submitted directly to Judge Sweet in advance of trial with pages marked with each side's respective "designations" of the portions to be presented to the jury at the trial as testimony.  The same set of materials delivered to the Court included the parties' objections to these trial testimony designations, which Maxwell treats as Category 5 (discussed below).  Trial deposition designations are core judicial documents, as they reflect the evidence and testimony that each side intends to introduce at trial.  *See* Dkt. 983 at 9 (noting that "the Second Circuit was of the view that the Court's ruling on the evidence that's coming in to trial is a core judicial function"); *see also id.* at 10 ("They're not discovery documents.  It's not like you took the deposition and you just filed it.").  In fact, Judge Sweet had to review the proposed trial testimony designations for each witness to determine how he would rule on objections to the testimony that would be presented to the jury.

As noted above, the trial deposition designations and counter-designations were submitted together with (and are necessary to make sense of) *other* judicial documents falling within Category 5 (Objections to Trial Deposition Designations and Counter-Designations), which Maxwell concedes to be judicial documents.  Judge Sweet would not have been able to rule on the parties' arguments for or against admitting or excluding evidence without the accompanying designations, as marked on the trial deposition transcripts themselves.  Maxwell's description of these materials as merely "start and end times for the video-recorded deposition testimony of various witnesses" is misleading.  Pursuant to their agreement to do so, the parties submitted to the Court full deposition transcripts with each side's designations marked in different colors.  The

testimony present in these boxes of materials, which were submitted to the Court in order for it to rule on whether or not they could be presented to the jury at a public trial (and viewed by the members of the public who would have attended trial), are core judicial documents that should be published as soon as possible. *See Lown v. Salvation Army, Inc.*, No. 4 Civ. 01562, 2012 WL 4888534, at *1 (S.D.N.Y. Oct. 12, 2012) (referring to "deposition designations discussing Gutheil's separation and certain of the documents" and noting that "[t]he parties agree that all of the materials at issue here are 'judicial documents'").

For the foregoing reasons, the Court should hold that the documents in Category 4 are judicial documents, for which a strong presumption of access applies.

## V.   CATEGORY 5:  OBJECTIONS TO TRIAL DEPOSITION DESIGNATIONS AND COUNTER-DESIGNATIONS

The documents in Category 5 concern the parties' objections to proposed trial testimony deposition designations and counter-designations.  Because they exist in the same set of materials described in Category 4, they should be treated as judicial documents as well.  Indeed, the section of Maxwell's brief that addresses this category merely recites the chronology of how the parties' objections were filed, without any explanation as to why these materials should be assessed separately from the other documents submitted to Judge Sweet as part of the same set of deposition materials.

Maxwell concedes that "[o]n or about March 31, 2017, Plaintiff submitted highlighted copies of transcripts to the Court and served Defense counsel with an electronic link to download a copy of what was emailed to the Court."  Dkt. 991 at 16.  Giuffre did not, however, provide the Court with these material ex parte.  Indeed, Maxwell's inaccurate representation to this Court that she was unaware of the materials submitted to the Court is directly refuted by the communications described below and attached hereto.  The parties collaborated to compile and submit these

documents in order to assist the Court in its resolution of the parties' evidentiary disputes.  For example, on March 1, 2017, Maxwell's counsel, Laura Meninger, wrote Giuffre's counsel: "I propose that both sides aim to submit any changes [to the designations], as well as one set of depo transcripts marked with both sides designations and objections, by March 24th."[7]  On March 31, 2017, Giuffre's counsel provided Maxwell's counsel with credentials to access the same materials that were provided to the Court.[8]  The parties expended considerable effort designating, counter-designating, and marking deposition transcripts so that Judge Sweet would be in a position to rule on what evidence the parties could introduce at trial.  This illustrates the critical role that these documents were to play in the judicial process and contradicts Maxwell's assertion that they are either non-judicial documents or negligible judicial documents.

Maxwell also asserts that "[i]t is unclear what, if anything, happened to the linked documents," suggesting that the Court either never received or did not review the materials provided.  *Id.*  This is patently untrue.  As Giuffre explained in her September 20, 2019, letter, "Judge Sweet actively reviewed the materials submitted."  Dkt. 988.  This was shown through the correspondence between Judge Sweet's chambers and Plaintiff's counsel, which was appended as an exhibit to Giuffre's letter.  *Id.* at Ex. A.  In response, Maxwell did not dispute that the Court received the materials, and instead argued that there is no proof that he "ever reviewed any of the depositions, counter-designations, or objections."  Dkt. 989 at 2.  But the Court had the printed versions of these materials in front of him at the April 5, 2017, hearing on the parties' objections, and Judge Sweet stated on the record that he would in fact be reviewing them.  Dkt. 903 at 31 (Court noting that it had "two and a half feet of depositions to review with objections").  That

---

[7] A copy of the March 1, 2017 email is attached as Exhibit A hereto.

[8] A copy of a March 31, 2017 email between counsel is attached as Exhibit B hereto.

Judge Sweet's chambers wrote Giuffre's counsel on April 27, 2019, to ensure that there was nothing missing for the Court to rule on means that the Court had been reviewing the materials through that date, and was about to issue a decision.  *See* Dkt. 998-1 at 1 ("I just want to make sure that there is nothing MISSING from the Binder that the Judge needs to rule on.").

For the foregoing reasons, the Court should hold that the documents in Category 5 are judicial documents, for which a strong presumption of access applies.

## VI.   CATEGORY 6:  FILINGS RELATED TO THIRD-PARTY INTERVENORS AND RELATED ORDERS

Category 6 concerns filings related to third-party intervenors such as Alan Dershowitz. Maxwell's brief concedes both that these are judicial documents, and that the Second Circuit unsealed each and every summary judgment document that would have fallen into this category. *See* Dkt. 991 at 17-18 ("Because they also were attached to summary judgment pleadings, some of those sealed attachments have already been unsealed by the Second Circuit in *Brown*."). Moreover, of the three intervenors Maxwell specifically names—Alan Dershowitz, Michael Cernovich, and Julie Brown—one (Cernovich) has requested to withdraw from this case, and another is advocating for unsealing as much of the record as possible, as fast as possible.  *See* Dkt. 981 (Cernovich requesting not to participate in unsealing process); Dkt. 983 at 14 ("I don't have much to add, except to say that Mr. Dershowitz's position is that there should be maximum disclosure with maximum speed").

Maxwell argues that many of the "documents attached to Plaintiff's opposition to intervention are not judicial documents" because they were documents from a "separate lawsuit between Plaintiff's counsel and Mr. Dershowitz in Florida state court."  Dkt. 991 at 18.  But as the Court is aware, each of the actions involving Dershowitz arise out of the same subject matter as this one: Epstein's sex-trafficking conspiracy.   The documents were relevant to the Court's

determination as to whether or not he could intervene.  In any event, the Court's decisions on those motions are exercises of its judicial power, and the public has a right to access the underlying record upon which it ruled.

For the foregoing reasons, the Court should hold that the documents in Category 6 are judicial documents, for which a presumption of access applies.

## VII.   CATEGORY 7:  FILINGS RELATED TO THIRD-PARTY (OTHER THAN INTERVENORS) – AND RELATED ORDERS

Category 7 consists of filings related to third-parties other than those who intervened. Maxwell argues that many of these documents are duplicative of those in Category 1, which covers documents relating to motion to compel.  Dkt. 991 at 19.  But to the extent these materials are also motions to compel, to comply with subpoenas, or for protective orders, those are all judicial documents to which a presumption of access applies, as discussed above with regard to Category 1. *See Schiller*, 2006 WL 2788256, at *5 ("Documents created by or at the behest of counsel and presented to a court in order to sway a judicial decision are judicial documents that trigger the presumption of public access.").  Indeed, Defendant has included in this category documents relating to a third-party witness who Plaintiff was seeking to call as a trial witness.  Dkts. 640-641, 707-709.  Those submissions included evidence relating to why her testimony would be highly relevant to a jury.  Maxwell's remaining arguments on this category are meritless.

Maxwell concedes that these materials are judicial documents, but points out that "the privacy rights of non-parties are involved [and], per the Second Circuit's direction, any such non-party should be given notice and opportunity to be heard on any countervailing arguments regarding their disclosure."  Dkt. 991 at 19.  This observation is pointless, however, as the Court has already considered this and indicated that non-parties would be notified and given the

opportunity to be heard.  *See* Dkt. 983 at 15 (discussing how "to notify people and the effort which the non-parties might have to go through").

Maxwell next argues that "many of the attachments to these third party pleadings are of the type normally exchanged between the parties but not filed in Court, such as Rule 26 disclosures with witness names and addresses, or discovery responses."  *Id.*  But the very fact that these documents are subject to unsealing means that they are not documents that were merely "exchanged between the parties."  Rather, they were affirmatively submitted in support of a request for judicial action, and Maxwell has not articulated specific countervailing arguments that the information contained in the submissions should remain under seal.

For the foregoing reasons, the Court should hold that the documents in Category 7 are judicial documents, for which a presumption of access applies.

## VIII.   CATEGORY 8:  CASE MANAGEMENT DOCUMENTS

Category 8 encompasses materials concerning "case management," which the parties used as a catch-all for filings that did not fall neatly into any of the other categories.  Because they pertain "to the Court's management of the case," they are judicial documents for which a presumption of access applies.  Dkt. 991 at 20.  Maxwell's arguments that these materials are only "negligible" judicial documents are unfounded.

First, Maxwell's attempt to minimize the importance of these materials by labeling them as "ministerial pleadings" is misleading.  *Id.*  The very example Maxwell identifies proves that she is mistaken.  On May 27, 2016, Giuffre filed a motion to conduct more than ten depositions. Dkt. 172.  In order to establish that additional depositions were necessary, Giuffre was required to include substantive discussion of what the parties needed to prove at trial, what the testimony was to date, and what she expected the testimony of the additional deponents would show.  Given that Maxwell is aware of what these documents contain, it is astounding that she would argue that they

16

are "irrelevant to the Court's case management analysis." Dkt. 991 at 20. Rather, they were vital the Court's decision to ultimately grant leave for Giuffre to take additional depositions.

Second, Maxwell argues that the documents should remain under seal because, according to her, "many of the documents attached to the case management pleadings are 'redundant, immaterial, impertinent, [and/] or scandalous,' were 'not relevant to the performance of the judicial function,' and therefore should be afforded no presumption of access and either stricken or kept under seal." *Id*. at 21. The Court should reject this argument, which the Second Circuit already rejected, in its entirety.

In her response to the Second Circuit's order to show cause as to why the summary judgment materials should not be sealed, Maxwell raised this same baseless argument: "We object to the disclosure of any materials submitted to the district court, and any related factual allegation, without any valid Rule 56 purpose. This includes materials Ms. Giuffre's counsel submitted with the sole intention that they eventually would be revealed to the public to advance her non-Rule 56-related ulterior purposes, including the purpose of gaining publicity and notoriety and creating an environment in which she could continue to profit from her allegations." Case No. 18-2868, Doc. 149 at ¶4. The Second Circuit correctly ignored this unfounded objection concerning similar documents when it ordered the entirety of the summary judgment record unsealed. The Court should do the same here.

For the foregoing reasons, the Court should hold that the documents in Category 8 are judicial documents, for which a presumption of access applies.

## IX.   CATEGORY 9:  ADVERSE INFERENCES/SANCTIONS MOTIONS/MOTION TO STRIKE OR EXCLUDE EVIDENCE

Category 9 consists of materials concerning adverse inferences, sanctions motions, and motions to strike or exclude evidence. This category includes filings directly relating to what

evidence the Judge was going to allow to go before the jury based on the imposition of an adverse inference and therefore is highly relevant to the Court's judicial function. *See* Dkts. 279 & 338; Sealed Orders dated Nov. 2, 2016 and March 23, 2017.  Maxwell ignores this category, and instead addressed them as part of Categories 1 and 2, which concern discovery-related motions and motions related to the admissibility of evidence.  Dkt. 991 at 21.  Because Maxwell concedes that both Categories 1 and 2 contain judicial documents, these materials will move on to "Step 2" no matter the specific category to which they are assigned.  Giuffre notes, however, that a court's determinations as to the evidence the parties may use at trial is a quintessential judicial function, and to that extent these materials are distinct from Category 1 documents, which concern only motions to compel discovery.

For the foregoing reasons, the Court should hold that the documents in Category 9 are judicial documents, for which a presumption of access applies.[9]

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiff Virginia Giuffre respectfully requests that the Court hold that each of the parties' enumerated categories contain judicial documents carrying with it the presumption of public access, and that Maxwell has not identified any category of documents that may remain under seal without the review required by the Second Circuit.

---

[9] Similarly, Giuffre (i) proposed two additional categories for "Trial Motions and Trial Submissions," Dkts. 591, 601, 622, 662, 766. 822, 859, 875, 893, 895, 908, 909, and (ii) "Motions re Depositions," Dkts. 160, 161, 172, 173, 189, 190, 203, 204, 211, 212, 224, 306, 307. Maxwell's brief does not address these categories because she viewed them to be "superfluous." Dkt. 991 at 1.  To the extent these materials are addressed in other categories, Giuffre incorporates her arguments from those categories.  The parties' submissions in the lead-up to trial are core judicial documents, as they pertain to the arguments they intended to make at trial and the evidence they intended to introduce, including the witnesses to be called.

Dated: October 2, 2019.

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By: /s/ Sigrid McCawley
    Sigrid McCawley (Pro Hac Vice)
    Meredith Schultz (Pro Hac Vice)
    Boies Schiller & Flexner LLP
    401 E. Las Olas Blvd., Suite 1200
    Ft. Lauderdale, FL 33301
    (954) 356-0011

    Paul G. Cassell (Pro Hac Vice)
    S.J. Quinney College of Law
    University of Utah
    383 University St.
    Salt Lake City, UT 84112
    (801) 585-5202[10]

    *Counsel for Plaintiff, Virginia Giuffre*

---

[10] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the 2nd day of October, 2019, I served the attached

document via CM/ECF and e-mail to the following counsel of record.

Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (pro hac vice)
Ty Gee (pro hac vice)
Haddon, Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303.831.7364
Fax: 303.832.2628
lmenninger@hmflaw.com
jpagliuca@hmflaw.com
tgee@hmflaw.com

Nicholas J. Lewin
Paul M. Krieger
KRIEGER KIM & LEWIN LLP
500 Fifth Avenue
New York, NY 10110
Telephone: 212-390-9550

Bradley J. Edwards
Stan J. Pottinger
EDWARDS POTTINGER LLC
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@epllc.com
stan@epllc.com

Christine N. Walz
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Christine.walz@hklaw.com

Jay M. Wolman
Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
jmw@randazza.com
mjr@randazza.com

*/s/ Sigrid McCawley*
Sigrid S. McCawley

EXHIBIT 1

**From:** Laura Menninger <lmenninger@hmflaw.com>
**Sent:** Wednesday, March 1, 2017 9:27 PM
**To:** Sigrid McCawley; Jeff Pagliuca; Ty Gee; Nicole Simmons
**Cc:** Meredith Schultz; Brad Edwards (brad@pathtojustice.com); Paul Cassell (cassellp@law.utah.edu)
**Subject:** RE: Giuffre v. Maxwell, Case No.: 15-cv-07433-RWS

**Categories:** Red Category


Sigrid –

Thank you for offering to jointly submit typographical corrections to the deposition designations for both parties.  We will be happy to join in a request for correction, but due to scheduling conflicts including (as you know) Jeff's daughter's wedding this week, we are unable to do so by your proposed date of March 3.

Since the depo objections are not being argued until April 6, I propose that both sides aim to submit any changes, as well as one set of depo transcripts marked with both sides designations and objections, by March 24th.

Will you agree to that date?

Thanks,
Laura




**Laura A. Menninger**
**Haddon, Morgan and Foreman, P.C.**
**150 East 10th Avenue**
**Denver, Colorado 80203**
**Main 303.831.7364 FX 303.832.2628**
**lmenninger@hmflaw.com**
**www.hmflaw.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain information that is confidential or legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please notify the sender by telephone or return e-mail and delete the original transmission and its attachments without reading or saving it in any manner. Thank you.

EXHIBIT 2

| | |
|---|---|
| **From:** | Sandra Perkins |
| **Sent:** | Friday, March 31, 2017 11:11 AM |
| **To:** | nsimmons@hmflaw.com; lmenninger@hmflaw.com; jpagliuca@hmflaw.com; tgee@hmflaw.com |
| **Cc:** | Meredith Schultz; Sigrid McCawley; Aneisha Christie |
| **Subject:** | Giuffre v. Maxwell re Service of Highlighted Transcript Designations (via secured FTP Site) |

Nicole, please see directions below for obtaining copies of the highlighted transcript designations that are being provided to the Judge today for next week's hearing. Please kindly reply to this e-mail once you have downloaded the materials so that I know that you have received them.

I will send you a password in a separate e-mail for security reasons. Thank you, Sandra

Instructions on accessing the BSF FTP server.

If it's only a couple of files to access, you may use https://bsfftp.bsfllp.com/thinclient/ to upload or download the files with the credentials provided below. For multiple files and folders we recommend using an FTP Client like FileZilla.

Please consult with your IT department before downloading and installing ANY software.

1) Download FileZilla Client here: https://filezilla-project.org/download.php?show_all=1

2) Open FileZilla and click on "File" then "Site Manager" then click on "New Site"
   FileZilla Client Settings:
   Host: bsfftp.bsfllp.com
   Port: 22
   Protocol: SFTP – SSH File Transfer Protocol
   Username: **yam9ftl**
   Password: supplied in a separate email



3) File may be copied and pasted over to your folder of preference on your own computer (i.e. downloads, documents, etc.).

**Sandra Perkins Borger**
Paralegal

**BOIES SCHILLER FLEXNER** LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL, 33301
(t)  +1 954 377 4219
(m) +1 954 356 0011
sperkins@bsfllp.com
**www.bsfllp.com**

2