UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIRGINIA L. GIUFFRE,

        Plaintiff,                  Case No.: 15 Civ. 7433 (LAP)

v.

GHISLAINE MAXWELL,

        Defendant.
_____/

**PLAINTIFF'S BRIEF IN OPPOSITION TO JOHN DOE SUBMISSION**

No one knows who John Doe is, and by his own admission he "lacks specific knowledge about the contents of the Sealed Materials." Dkt. 980 at 1.  As a result, John Doe is in no position to speculate (let alone dictate) how the Court should approach and consider the categories of documents that the parties have agreed upon, to say nothing of offering wholly new categories for the Court's consideration.

John Doe's "non-party brief" fails to follow the Court's instructions from the September 4, 2019, hearing.  At that hearing, the Court instructed the *parties* to agree upon the number of categories of documents to be briefed.  The Court then set a briefing schedule for both the parties and non-parties to argue whether the documents within those categories should remain under seal despite the presumption of public access to court documents under the First Amendment and the common law.  Dkt. 983 at 22-23; *see also* Dkt. 984.  Ignoring the categories that the parties agreed to, John Doe's response identifies three *separate* categories of documents that he claims are non-judicial, and then attempts to dictate to the Court how it "should set forth the rest of its review process and the role of non-parties."  Dkt. 990 at 2-5.  The Court has already made clear that it will do exactly that; John Doe's arguments are unnecessary.

The Court should disregard John Doe's submission.  It is incorrect as to the law, incorrect as to the facts (which he admittedly does not have access to as a non-party), and incorrect as to the procedure that the Court established for briefing the categories of documents that would be considered either judicial or non-judicial documents.  *See* Dkt. 980 at 1 ("As a non-party to these proceedings, Doe lacks specific knowledge about the contents of the Sealed Materials.").

Indeed, John Doe's role going forward should be to identify himself, wait until he is notified as to the documents in which his name appears, and participate then.  It would be an odd procedure to allow a mystery man, who is possibly himself implicated in the Epstein-related factual

1

background of this case, to serve as a de facto Special Master over a process governing which documents the public is allowed to access concerning this matter involving the serious issue of abuse of minors.

**1. Who Is John Doe?**

John Doe has no right to proceed under a pseudonym, and his continued participation in this case without disclosing his identity taints these proceedings. John Doe should have requested permission to proceed under a pseudonym before his counsel appeared on September 3, 2019; his counsel should not have argued at the September 4, 2019, hearing without revealing who his client was; and his stated concern that "[u]nsealing references to non-parties would throw those non-parties into the middle of this frenzy, and unfairly do irreparable harm to their privacy and reputational interests," provides no basis for allowing him to litigate behind a curtain. Dkt. 980 at 3. There is no reason John Doe should be treated differently from any of the parties, non-parties, and intervenors whose names have already been revealed. The law relating to filing documents under seal is not intended to allow individuals who participated in actionable conduct to prevent the public from knowing their identity.

Consistent with the general presumption of public access to court documents, the law requires that parties name themselves, as doing so "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008). For this reason, courts permit parties to proceed anonymously only "in a limited number of exceptions." *Mottola v. Denegre*, 12 Civ. 3465, 2012 WL 12883775, at *1 (S.D.N.Y. Jun. 8, 2012) (Preska, J.) (identifying factors courts should consider and denying motion to proceed under a pseudonym). John Doe's generic invocation of a potential "harm . . . to privacy and reputational interests" falls far short of any

cognizable exception. *See generally Thevenin v. City of Troy*, No. 16 Civ. 1115, 2019 WL 3759275, at *3 (N.D.N.Y. Aug. 9, 2019) ("The fact that the result of that process may exonerate or embarrass a particular individual is a natural outcome of the case itself and is not a proper basis to seal filings and arguments in connection with this Court's judicial function. Indeed, such an argument could be made in connection with any case accusing a defendant of misconduct.").

The Second Circuit in *Brown* listed a number of ways that the Court could minimize or prevent the types of harms John Doe speculates he will suffer. *Brown v. Maxwell*, 929 F.3d 41, 48 & n.22 (2d Cir. 2019). It did not include what John Doe seeks to do here. Simply put, allowing individuals such as John Doe (who could be one of the individuals implicated in the Epstein conspiracy) to proceed anonymously in these unsealing proceedings is not one of the permissible "tools" the Second Circuit identified. *Id.* at 44, 47, 51-52.

### 2. Filings Related to Unadjudicated Motions or Requests

John Doe argues that "[d]ocuments that were filed in connection with motions or other requests which were never adjudicated or acted upon by Judge Sweet are, categorically, non-judicial documents." Dkt. 990 at 2. This argument is meritless and arguably frivolous. In any event, it is foreclosed by the Second Circuit's opinion in *Brown*, which explicitly held that these same documents *are* judicial documents. *Brown*, 929 F.3d at 50 ("Insofar as the District Court held that these materials are not judicial documents because it did not rely on them in adjudicating a motion, this was legal error."). In addition to the summary judgment materials, the Second Circuit described "the remaining sealed materials at issue here [to] include filings related to, *inter alia*, motions to compel testimony, to quash trial subpoena, and to exclude certain deposition testimony." *Id.* As the court explained,

> All such motions, at least on their face, call upon the court to exercise its Article III powers. Moreover, erroneous judicial decision-making with respect to such

3

> evidentiary and discovery matters can cause substantial harm. Such materials are therefore of value to those monitoring the federal courts. Thus, *all documents submitted in connection with, and relevant to, such judicial decision-making are subject to at least some presumption of public access*.

*Id*. (internal quotation marks and footnote omitted; emphasis added). The Second Circuit was not speaking of these types of materials in the abstract; this holding applied to the specific documents that John Doe now argues are "non-judicial documents." *See id*. (referring to "the District Court's decision to deny the motion to unseal these remaining materials").

In a footnote, John Doe attempts to limit this holding to documents where a court in fact ruled on a motion, but did not specifically rely on a particular document. *See* Dkt. 990 at 3 n.3 ("The question then is not whether the court in fact relied on the document, but rather whether the document would tend to influence such a decision. But, critically, to get to that point in the analysis, a court first must *act*."). This is illogical for at least two reasons. First, the Court should not assume that the Second Circuit incorrectly believed that the materials it held to be judicial documents were part of motions that Judge Sweet had already decided. The court was aware of the status of the docket, and noted that the Miami Herald's motion to intervene and unseal the entire docket occurred on April 6, 2018, "after the case had settled." *Brown*, 929 F.3d at 46. When the Second Circuit held that "the proper inquiry is whether the documents are relevant to the performance of the judicial function, not whether they were relied upon," it meant for the holding to apply to this specific situation. *Id*. at 50.

Second, it cannot be that a document only becomes a "judicial document" after a court reaches a final decision with respect to the motion for which it was submitted, and not during the pendency of that decision. Under that logic, Complaints and Answers are not judicial documents until a case is resolved, oral arguments could be closed to the public so long as a judge does not rule from the bench, and trials could take place in secret until a verdict is announced. That is not

4

the law. *See Schiller v. City of New York*, 4 Civ. 7921, 2006 WL 2788256, at *5 (S.D.N.Y. Sept. 27, 2006) ("Documents created by or at the behest of counsel and presented to a court in order to sway a judicial decision are judicial documents that trigger the presumption of public access.").

### 3. Documents Filed for an "Improper Purpose"

John Doe argues that "[i]nsofar as Judge Sweet determined that a filing, or a portion of a filing, was comprised of inadmissible evidence or contained frivolous arguments . . . or was redundant, immaterial, impertinent, or scandalous or lacking credibility, that filing or portion thereof is non-judicial." Dkt. 990 at 4 (internal quotation marks, citations, and alterations omitted). This observation is pointless, however, as there are no documents subject to unsealing that Judge Sweet previously determined to fit any of the above descriptions. John Doe's next observation, that "this Court has the affirmative obligation to identify any such filings and *sua sponte* strike it from the record or deem it non-judicial," *id*., is equally pointless. Because the Second Circuit already described its "supervisory function" as "among its responsibilities," the Court did not need John Doe to remind it of what the opinion and order remanding the case said. *Brown*, at 929 F.3d at 51.

The question now before the Court is whether even a single document can somehow be deemed to have been filed for an "improper purpose." None can. Nothing was filed for an improper purpose, and any suggestion otherwise is utterly without support. It is important to note that Maxwell had the opportunity during the underlying matter to move to strike material that she deemed "impertinent or scandalous" and she did not do so. Maxwell attempted to raise this same argument in response to the Second Circuit's order to show cause as to why the summary judgment record should not be unsealed. She asserted, in conclusory fashion, that the summary judgment record "include[d] materials Ms. Giuffre's counsel submitted with the sole intention that they

5

would be revealed to the public to advance her non-Rule 56-related ulterior purposes." Case No. 18-2868, Doc. 149 at ¶4.  She also submitted a chart of each of the documents that she alleged Giuffre filed for an "improper purpose."  Maxwell's argument was without foundation, because the documents in question were obviously quite relevant to the issues discussed in the briefs to which they were attached.  And, in any event, the Second Circuit rejected this argument when it published the entirety of the summary judgment record, and the Court should do the same here.

### 4. "Non-Filed or Improperly Filed Documents"

John Doe argues that "filings that were not properly 'filed with the court'" are non-judicial documents, and suggests that "hard copy documents that were submitted *ex parte* to Judge Sweet and without notice to the defendant – such as those described by [Ms. Giuffre's] supplemental filing, *see* DE 988 – are not judicial documents." Dkt. 990 at 4-5.  This argument is useful only to the extent it illustrates how John Doe's participation in this process is counterproductive, given his lack of familiarity with the documents subject to unsealing and what occurred in the underlying litigation.  As set forth in Giuffre's response to Maxwell's brief, the parties collaborated to provide Judge Sweet with sets of the deposition transcripts with both side's designations marked in different colors.  Dkt. 993 at 12-13 (attaching correspondence between counsel); Dkt. 988-1 (correspondence between Ms. Giuffre's counsel and Judge Sweet's chambers referencing and confirming the materials filed).

At best, John Doe's representation to the Court that these documents were improperly filed reflects a lack of diligence on his part.  John Doe concedes that he "lacks specific knowledge about the contents of the Sealed Materials."  Dkt. 980 at 1.  That does not, however, excuse either him or his counsel from making a reasonable inquiry before making any factual representations as to what the parties did or did not do before Judge Sweet.  At worst, John Doe's argument reflects an

unfounded criticism of Judge Sweet's case management practices to the extent John Doe suggests that the judge should have required the parties to formally file everything they submitted under seal, or that the Court's staff should have generated an ECF notice for each instance when it received a filing from the parties. John Doe cites no authority for the contention that a document that does not have a corresponding ECF entry is not a "filing" or proper submission for the Court's consideration. The trial deposition designations were submitted to Judge Sweet for his consideration and ruling and he was in fact considering them as evidence by the reference he made to them at the April 5, 2017 hearing. Dkt. 903 at 31. While John Doe desperately wants to preclude these trial deposition designations from being unsealed, they are judicial documents that were directly related to the trial in this matter and they should be unsealed under Second Circuit precedent. *See Lown v. Salvation Army, Inc.*, No. 4 Civ. 01562, 2012 WL 4888534, at *1 (S.D.N.Y. Oct. 12, 2012) (referring to deposition designations as "judicial documents").

### 5. The Review Process and the Role of the Non-Parties

As stated above, neither the parties nor the Court needs John Doe to remind them that a review process will be necessary in order to provide notice to non-parties. The review protocol is not, however, the subject of this round of briefing.

To be clear, as Ms. Giuffre has previously explained, all of the documents in question are judicial documents, and accordingly the entire record should be unsealed, subject to redactions similar to what the Second Circuit applied. The various steps in John Doe's protocol requiring the parties to make joint submissions to the Court are a transparent attempt to delay this process. The law is clear that any burden of keeping records under seal belongs to the proponent of sealing, and Ms. Giuffre objects to any suggestion that she should be compelled to assist in efforts to deny the public access to these materials. For example, in a recent order, Judge Furman ordered, in light of

*Brown*, that "*any party that believes any currently sealed documents should remain under seal shall file a letter-motion . . . explaining why each such instance of redaction or sealing is consistent with the presumption in favor of public access to judicial documents and narrowly tailored to serve whatever interest justifies it.*" *New York ex rel. Khurana v. Spherion Corp.*, No. 15 Civ. 6605, 2019 WL 3294170, at *2 (S.D.N.Y. July 19, 2019) (emphasis added). Similarly, the burden for keeping documents under seal should fall entirely on Maxwell in the first instance, and on any non-party that Maxwell identifies after that non-party receives notice.

Ms. Giuffre also objects to John Doe's proposal that "[u]nless expressly stated otherwise, all notices, submissions, and filings made pursuant to this Order should remain permanently sealed." Dkt. 980 at 9. It is hard to imagine that the Second Circuit, which held that the district court's sealing of the record constituted an abuse of discretion, would sanction this Court's supervision of such an off-the-record quasi-proceeding. John Doe's suggestion that the Court conduct secret proceedings in order to keep this case's record a secret further illustrates why the Court should not permit him to proceed under a pseudonym.

## **CONCLUSION**

For the reasons set forth above, Plaintiff Virginia Giuffre respectfully requests that the Court adhere to the parties' document categories for briefing, treat each category as containing judicial documents that require a document-by-document review before any can remain under seal, and order John Doe to reveal himself.

Dated: October 2, 2019

                                  Respectfully Submitted,

                                  By: /s/ Sigrid McCawley
                                  Sigrid McCawley (Pro Hac Vice)
                                  Meredith Schultz (Pro Hac Vice)
                                  Boies Schiller & Flexner LLP
                                  401 E. Las Olas Blvd., Suite 1200
                                  Ft. Lauderdale, FL 33301
                                  (954) 356-0011

                                  Paul G. Cassell (Pro Hac Vice)
                                  S.J. Quinney College of Law
                                  University of Utah
                                  383 University St.
                                  Salt Lake City, UT 84112
                                  (801) 585-5202[1]

                                  *Counsel for Plaintiff, Virginia Giuffre*

---

[1] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

9

**CERTIFICATE OF SERVICE**

      **I HEREBY CERTIFY** that on the 2nd day of October, 2019, I served the attached document via CM/ECF and e-mail to the following counsel of record.

Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (pro hac vice)
Ty Gee (pro hac vice)
Haddon, Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303.831.7364
Fax: 303.832.2628
lmenninger@hmflaw.com
jpagliuca@hmflaw.com
tgee@hmflaw.com

Jay M. Wolman
Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
jmw@randazza.com
mjr@randazza.com

Nicholas J. Lewin
Paul M. Krieger
KRIEGER KIM & LEWIN LLP
500 Fifth Avenue
New York, NY 10110
Telephone: 212-390-9550

Bradley J. Edwards
Stan J. Pottinger
EDWARDS POTTINGER LLC
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@epllc.com
stan@epllc.com

Christine N. Walz
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Christine.walz@hklaw.com

                                      */s/ Sigrid McCawley*
                                      Sigrid S. McCawley