UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

VIRGINIA L. GIUFFRE,

    Plaintiff,

v.	15-cv-07433-LAP

GHISLAINE MAXWELL,

    Defendant.

---------------------------------------------------X

## Ms. Maxwell's Reply Brief In Support Of Maintaining Categories Of Documents Under Seal

Laura A. Menninger
Jeffrey S. Pagliuca
Ty Gee
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
303.831.7364

Defendant Ghislaine Maxwell, through her counsel, submits this Reply Brief in support of maintaining categories of documents under seal.

## Preliminary Statement

Three persons/groups (collectively "the Sealing Opponents" or "Opponents") are requesting the unsealing of every sealed court filing in this case: plaintiff Giuffre; intervenor Dershowitz; and intervenors Julie Brown and Miami Herald (collectively "Miami Herald"). So they present more or less similar arguments. We request leave to address their three separate briefs in a single reply brief. We submit this will be more succinct and efficient and less repetitious for the Court.

As the Court predicted at the September 4, 2019 hearing, the parties and non-parties on remand will agree on very little about sealing. There is a reason for that. The Sealing Opponents' categorical positions—"Everything must be unsealed!"— follow from and are informed by their different motivations.

Mr. Dershowitz is the defendant in a lawsuit identical to this one. Since at least 2011 plaintiff has been selling her story to the media, telling ever more salacious stories about her alleged sexual encounters with ever more prominent men. Whenever anyone denies her allegations, she and her coterie of lawyers threaten to sue or sue for tens of millions of dollars for "defamation." Mr. Dershowitz find himself, as Ms. Maxwell did, defending a defamation lawsuit in name only. Plaintiff and her lawyers convert their defamation claim to one of sexual abuse against the defamation defendant. So to prove plaintiff is a liar, Mr. Dershowitz is interested in unearthing all of the many false and salacious allegations plaintiff ever has made. The Miami Herald has its own economic interests. What media would decline to seize any morsel or crumb of uncorroborated allegation or salacious gossip revealed in this case? Certainly not the Miami Herald or any of the other media scrapping for Epstein scoops.

1

As for plaintiff Giuffre, she eagerly agreed to a protective order in this case so that she could wield the judicial machinery as an expansive civil grand jury to extract and coerce witnesses to reveal private, sensitive and confidential information. Having acquired the information and having gratuitously submitted much of the information in sealed court submissions, Ms. Giuffre changed course. With this lawsuit producing no more money, Ms. Giuffre wants to use its information to profit from generating new lawsuits—and media coverage—through her well-worn strategy: Accuse a prominent person of participating in Epstein's misconduct; if they deny the allegations, sue them for "defamation." And on it continues. Ms. Giuffre and her lawyers, in short, are using the court defamation-proof submissions in this case as a "reservoir[] of libelous statements" to "gratify private spite or promote public scandal" and "for press consumption," *Brown v. Maxwell*, 929 F.3d 41, 51 (2d Cir. 2019) (internal quotations omitted), all in service of the next lawsuit against yet another prominent person with deep pockets.

Ms. Maxwell—and likely all the non-parties who participate in this sealing-unsealing proceeding—hold to this view. The sealed materials include thousands of pages containing confidential, sensitive and private information about persons and unsubstantiated allegations that were extracted under the Court's Protective Order, that were entirely collateral to the merits of plaintiff's defamation claim, that never were considered or ruled on by the Court, and/or that plaintiff submitted to the Court for no valid purpose. The Sealing Opponents' reputational (Dershowitz) and financial (the other Opponents) interests are diametrically opposed to Ms. Maxwell's and the non-parties'.

Because of their respective motivations, the Sealing Opponents' legal positions against sealing are predictable. They deny any court submission could be a non-judicial document.

Unlike the Second Circuit in *Brown*, they believe every court submission must have a heavy presumption of access. And they do not recognize any document as being "negligibly judicial," 9/4/19 Tr., at 10, the term this Court used to describe a judicial document that, for example, does not implicate "the court's core role in adjudicating a case," *Brown*, 929 F.3d at 50. *See* 9/4/19 Tr., at 10, 13; *Brown*, 929 F.3d at 49-50 ("documents that play only a negligible role in the performance of Article III duties are accorded only a low presumption that amounts to little more than a prediction of public access absent *a* countervailing reason") (emphasis supplied; internal quotations omitted).

### *Brown*'s Standard of Review - Non-Judicial and Negligibly Judicial Documents

The Sealing Opponents see in black and white, where documents either are non-judicial documents or judicial documents. *Brown* sees a world of color, and so it pointedly described a continuum ranging from no presumption of access (a non-judicial document) to a low presumption of access to, at the far end, a high presumption of access (e.g., a motion for summary judgment). *See* 929 F.3d at 49-50. While the sealed materials cannot easily or neatly be placed into categories correlating to each point along the range, there is no doubt the Sealing Opponents will have to yield to these *Brown* principles as to documents within the nine categories:

- A court performs a judicial function "when it rules on motions currently before it." *Id.* at 49. *A fortiori* if the court never considered a motion before it, e.g., if the case is settled and dismissed with prejudice before it ever rules on the motion, then the court is not performing and never has performed a judicial function as to that motion. Therefore it is not a judicial document and "no presumption of public access attaches." *Id.* (footnote omitted).

- When a paper is filed with the court and the court considers but has not ruled on it, there is no reason to treat it differently from the "never considered" motion. Even if it were treated differently, the weight of the presumption would be slight indeed. The paper's value to "those monitoring the federal courts" would be "negligible," *id.*, since the federal court would have exercised no judicial authority in connection with the paper.

3

- In general, documents that "play only a negligible role in the performance of Article III duties are accorded only a low presumption that amounts to little more than a prediction of public access absent a countervailing reason." *Id.* at 49-50 (internal quotations and footnote omitted). The more "ancillary to the court's core role in adjudicating a case," *id.* at 50, the lower is the weight of the presumption of access and the lower is the threshold interest needed to overcome the presumption.

- When a party files a paper for an improper purpose, e.g., "to promote scandal arising out of unproven potentially libelous statements," *id.* at 51 (internal quotations and footnote omitted), then by definition it "is not relevant to the performance of the judicial function[,] . . . would not be considered a judicial document and would enjoy no presumption of public access," *id.* at 52 (internal quotations and footnote omitted).

## Discussion

**I. Category 1: Motions to compel and related motions and court orders.**

Plaintiff Giuffre argues we have "concede[d] that, at a minimum, the vast majority of documents falling within Category 1 are judicial documents." Doc.993 at 3. We respectfully ask the Court to use caution in reading plaintiff's counsel's arguments. In this litigation, plaintiff frequently has mischaracterized what we and others have said. That is the case here. We did not "concede" "at a minimum" that "the vast majority of documents" within Category 1 are judicial documents. We said "[s]ome of the items" in Category 1 are non-judicial documents and gave five examples. Doc.991 at 5. And we said some filings in Category 1 are negligibly judicial documents in that the weight of the presumption of access is slight. *Id.* at 5-6.

Mr. Dershowitz argues: "Maxwell overstates the law in contending that discovery motions categorically 'are not judicial documents and therefore are not afforded a presumption of access,'" Doc.992 at 1 (quoting Ms. Maxwell's Brief). This argument shows Mr. Dershowitz is not above mischaracterizing his opponent's position to set up a straw man argument for himself. We said, "Materials submitted to the court solely so that the court may decide whether they must be disclosed in the discovery process or shielded by a protective order are not judicial documents and therefore are not afforded a presumption of access. *Brown*, 929 F.3d at 49 n.33."

4

Doc.991. That is not an "overstate[ment]" of the law. It is a near-verbatim statement from *Brown*.

*Brown* held that materials submitted to a court solely so it can decide whether the materials should be disclosed by a party are not judicial documents. 929 F.3d at 50 n.33. The Miami Herald argues that the "only document" Ms. Maxwell says is covered by *Brown*'s footnote 5 exception is Doc.370. Doc.994 at 4. This is a mischaracterization by another Sealing Opponent. We said "[s]ome of the items in Category 1" are non-judicial documents. Then we said, "For example, Doc.370 is a motion for an order protecting from disclosure . . . Ms. Maxwell's personal financial information." Doc.991 at 5. Doc.370 is not the only paper in Category 1 that would warrant protection under *Brown*'s footnote 5.

Throughout its brief the Miami Herald argues we failed to identify a compelling or other countervailing interest that would outweigh a presumption of access or we failed to carry our burden of establishing such an interest. *E.g.*, Doc.994 at 5, 7. It is a nonsensical thing to say. The Miami Herald had a lawyer at the September 4 hearing. At the hearing the Court engaged in a dialog with the Herald's lawyer and with the other lawyers. In this dialog the Court made it clear that in this first step the parties were to identify no more than ten categories of documents for the purpose of trying to find categories of non-judicial documents. *See* Doc.991 at 2. Briefing and argument on the merits of sealing and unsealing would be completed in the second step, which hasn't happened yet. *See id.* at 2-3.

II. **Category 2: Motions in *limine* re admissibility of evidence and related orders.**

We said papers in this category were negligibly judicial documents because of plaintiff's improper attempt to transform her defamation lawsuit into a *de facto* sex trafficking lawsuit against Mr. Epstein, who was not a defendant. She tried to do so by seeking to introduce evidence wholly irrelevant to her defamation claim. *See* Doc.991 at 6-7. Plaintiff claims not to

5

know what negligibly judicial documents "may mean." Doc.993 at 6. That is just willful ignorance. Plaintiff's counsel was present at the September 4 hearing when the Court three times referred to "negligibly judicial" documents. *See* 9/4/19 Tr. at 10, 13.

Plaintiff mischaracterizes her own lawsuit, once again, to try to transform it from a defamation lawsuit to a lawsuit by her against Mr. Epstein. *See* Doc.993 at 6. She cannot escape her own claim. She asserted a claim for defamation against Ms. Maxwell because Ms. Maxwell denied plaintiff's claims that Ms. Maxwell was involved with plaintiff's salacious allegations of sexual encounters. Plaintiff during the course of the lawsuit—and now and presumably in her lawsuit against Mr. Dershowitz—claims she must be allowed to "prove" Mr. Epstein sexually trafficked her and others. But Mr. Epstein is not a defendant in this lawsuit and, most importantly, plaintiff brought a defamation claim. *Limine* motions filed to prevent plaintiff from introducing her speculative, salacious and always-uncorroborated allegations about sexual encounters with others do not become anything beyond negligibly judicial documents simply because of plaintiff's improper litigation ambitions.

Plaintiff's attempt to use the *Brown* court's release of summary judgment materials to justify the wholesale unsealing of Category 2 papers is unavailing. As the *Brown* court itself indicated, its unsealing of the summary judgment materials was based on an analytical framework very different from the one that must be applied to non-summary judgment material. *Compare Brown*, 929 F.3d at 47-48 (analysis of summary judgment materials, which are entitled to "a strong presumption of public access") *with id.* at 49-51 (remanding to district court question whether non-summary judgment materials, which may contain non-judicial documents or documents with "a low presumption" of access).

Mischaracterizing what we said, plaintiff argues we said unsealing is not appropriate because then "the media would report on it." Doc.993 at 7. As noted, the media will seize on anything salacious that sells newspapers. That alone does not militate against unsealing. What does militate against unsealing, as the *Brown* court suggested, is plaintiff's deliberate submission of irrelevant, scandalous and false information to the court with the intent that it will be unsealed by the court so that she can use it for profit with "absolute immunity from liability" because it was submitted "in connection with a proceeding before a court," *Brown*, 929 F.3d at 52; *see id.* at 51; *see also id.* at 52 ("[C]ourt filings are . . . particularly susceptible to fraud. For while the threat of defamation actions may deter malicious falsehoods in standard publications, this threat is non-existent with respect to certain court filings. This is so because [of the litigation privilege].").

### III. Category 3: *Limine* motions re expert testimony of evidence and related orders.

Plaintiff again argues that because the Second Circuit released summary judgment materials, this Court should apply the same analysis and release her experts' inadmissible testimony. As discussed above, the argument is meritless: inadmissible expert reports and testimony that are the subject of *limine* motions are not equivalent to summary judgment materials. *See Brown*, 929 F.3d at 47-50.

All, or virtually all, the *limine* motions never were decided. That makes them non-judicial documents. To the extent they are judicial documents that are negligibly judicial documents since they "play only a negligible role in the performance of Article III duties" and are accorded only a low presumption that "amounts to little more than a prediction of public access absent a countervailing reason." *Id*. at 49-50 (internal quotations and footnote omitted).

Plaintiff says she would "gladly" publish her expert materials to the public and invite a lawsuit by Ms. Maxwell for "defamation." Doc.993, at 10. This illustrates plaintiff's litigation

7

mentality. Litigation is her business, and prurient, inadmissible, uncorroborated and false allegations are her currency. It also underscores the Second Circuit's caution to trial courts to ensure their records and files do not "serve as reservoirs of libelous statements for press consumption." *Brown*, 929 F.3d at 51 (internal quotations and footnote omitted). Plaintiff is arguing for the creation of just such a reservoir for her profit motives.

## IV. Category 4: Trial deposition designations and counter-designations.

The parties designated and counter-designated many hundreds of pages from deposition transcripts. Such designations are made routinely under Rule 32(a)(6) in virtually every trial in which out-of-state witnesses are deposed. They give notice to the other party that the designator might use testimony from part of a deposition transcript and the counter-designator may respond with notice that she may use testimony from part of the transcript. Such designations are not judicial documents because they do not require any judicial action.

Plaintiff argues the designations and counter-designations are "core judicial documents, as they reflect the evidence and testimony that each side intend[ed] to introduce at trial," and are directly related to the parties' objections to the designations and counter-designations. Doc.993, at 11. Plaintiff faces three insurmountable problems. One, there was no trial. None of the designations ever were introduced at trial. Contrary to plaintiff's argument designations do not constitute testimony that a party "intend[s] to introduce at trial"; they constitute notice that if a witness is not available and if that party believes it to be advantageous, it *may choose* to introduce some or all of the designated testimony. That hardly makes the designations and counter-designations remotely similar to summary judgment evidence, let alone trial testimony. Two, designations themselves are not motions and do not request any judicial action. Therefore they cannot constitute judicial documents under *Brown*. Three, to the extent any designations were the subject of an objection, there is no indication the Court ever read or considered, let

8

alone ruled on, the objections. Plaintiff's speculation from a paralegal's email communications with the Court's law clerk falls far short of proving the Court ever read or considered the designations. Speculation cannot transform the designations into judicial documents. Even if they are judicial documents, they would be afforded the slightest presumption of access, rebutted by the slightest privacy interest of a party or non-party.

### V. Category 5: Objections to trial deposition designations and counter-designations.

Objections to Rule 32(a)(6) designations constitute judicial documents in that they request judicial action. But as discussed in connection with Category 4 materials, the objections are not judicial documents if the Court never read or considered the objections (or the designations to which a party was objecting) before the case was settled and dismissed with prejudice. Even if the Court had considered the objections without ever ruling on them, they would not be judicial documents. Alternatively they would be judicial documents with an exceedingly low presumption of access, since the Court would be considering—without ruling on—whether a designation *might* be admissible *if* a party at trial actually introduced the transcript of testimony. Plaintiff's argument that the parties "expended considerable effort designating, counter-designating and marking deposition transcripts so that Judge Sweet would be in a position to rule on what evidence the parties could introduce at trial," Doc.993 at 16, is irrelevant. How hard the parties worked to designate transcripts has zero relevance to whether a court submission is a judicial document or what level of presumption of access it should be afforded.

### VI. Category 6: Filings related to third-party intervenors and related orders.

As set forth in our Brief, while some of the filings relating to third-party intervenors are judicial documents subject to a low presumption of access, some are non-judicial documents. As plaintiff did in connection with other filings, when she opposed the third parties' intervention

9

motion, plaintiff attached numerous materials that were "irrelevant . . . and potentially defamatory," *Brown*, 929 F.3d at 49 n.28, and that appeared to be submitted gratuitously. These are not judicial documents.

## VII. Category 7: Filings related to third-parties other than intervenors, and related orders.

The Category 1 discussion is applicable here. Plaintiff did not advance any arguments worthy of addressing in this Reply.

Mr. Dershowitz sets up yet another straw man argument—that we are wrong "to the extent" we contend third parties who were compelled to participate in the discovery process are presumptively entitled to sealing. Doc.992 at 2. We didn't contend that. We do contend that private, confidential and sensitive information should remain sealed when it is provided by non-parties and parties in reliance on protective orders. The Second Circuit has acknowledged and applied what Mr. Dershowitz calls a "presumption [of] sealing," Doc.992 at 2, when parties and non-parties rely on protective orders. *See Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979), *cited with approval in SEC v. TheStreet.com*, 273 F.3d 222, 232 (2d Cir. 2001), *cited with approval in Brown,* 929 F.3d at 47 n.13; *see id.* at 48 n.22 (redacting information from judicial documents "because of a strong expectation of continued confidentiality"); *see Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 603 (1978).

The Miami Herald argues, without citation to authority, that to the extent materials in this category contain allegations of sex-trafficking or sexual abuse of minors "there is no privacy interest to be protected, or alternatively, any privacy interest is vastly outweighed by the substantial public interest in disclosure of such allegations." Doc.994 at 11-12. It is an extraordinary and senseless argument that encourages and financially rewards plaintiff and other profiteers from making the most outrageous allegations of criminal sexual conduct. To begin

10

with, nowhere did the Second Circuit in *Brown* or any other case hold that when an allegation concerns a particular subject then *a fortiori* there is no right of privacy. The Supreme Court and the Second Circuit in fact have rejected the Miami Herald's implicit contention that the media should be entitled to all allegations of misconduct, and more so when the allegations are more brazen, false or licentious. Both have declared that trial courts must not permit its records and files—regardless of subject matter—to be used to gratify private spite or "'promote public scandal'" or to "'serve as reservoirs of libelous statements for press consumption,'" *Brown*, 929 F.3d at 51 (quoting *Nixon*, 435 U.S. at 598).

**VIII. Category 8: Case management documents.**

While some of the materials in this category are judicial documents entitled to a very weak presumption of access, some are not judicial documents at all. Plaintiff predictably argues that all the materials in this category are judicial documents that should be afforded a high presumption of access, but she fails to explain how all the materials in this category and their voluminous exhibits are "relevant to the performance of the judicial function."

**IX. Category 9: Adverse inferences, sanction motions, and motion to strike or exclude evidence.**

We stand on the Brief as to this category.

## Conclusion

The Court should determine that Category 4 consists of non-judicial documents that should remain sealed. The remaining categories, which contain both non-judicial documents and negligibly judicial documents, should be addressed in Step 2 using the standards set forth in *Brown*.

Dated: October 9, 2019.

Respectfully submitted,

*s/ Ty Gee*

Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice)*
Ty Gee (*pro hac vice*)
Haddon, Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303.831.7364
Fax:    303.832.2628
lmenninger@hmflaw.com
*Attorneys for Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on October 9, 2019, I electronically served this *Ms. Maxwell's Reply Brief in Support of Maintaining Categories of Documents Under Seal* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
Stan J. Pottinger
EDWARDS POTTINGER LLC
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com
StanPottinger@aol.com

Christine N. Walz
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Christine.walz@hklaw.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

Andrew G. Celli
David Lebowitz
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue at Rockefeller Center
10th Floor
New York, NY 10020
acelli@ecbalaw.com
dlebowitz@ecbalaw.com

Jay M. Wolman
Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
jmw@randazza.com
mjr@randazza.com

*/s/ Nicole Simmons*
Nicole Simmons