**KRIEGER KIM & LEWIN** LLP

500 Fifth Avenue                                                                                                                    Telephone: (212) 390-9550
New York, NY 10110                                                                                                          www.KKLllp.com

December 5, 2019

By ECF

The Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      **Re:** *Giuffre v. Maxwell*, No. 15 Civ. 7433 (LAP)

Dear Judge Preska:

In the first paragraph of her brief, Plaintiff asserts that "documents submitted with a motion are unquestionably judicial documents by virtue of having been submitted to the Court." Docket Entry ("DE") 1008 at 1 (internal quotation marks and citation omitted). That claim is incontrovertibly wrong.[1]

"[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Amodeo*, 44 F.3d at 145. Rather, a filing "must be relevant to the performance of the judicial function *and* useful in the judicial process in order for it to be designated a judicial document." *Brown*, 929 F.3d at 49 (citation omitted; emphasis supplied). The term "judicial function" is specifically defined: "a

---

[1] Plaintiff's argument is contradicted by *United States v. Amodeo*, 44 F.3d 141 (2d Cir. 1995), and its progeny. And Plaintiff's argument is contradicted by the requirement that, to be "judicial," a filing must: (i) be "relevant to the performance of the judicial function," *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019); (ii) be "useful in the judicial process," *id.*; (iii) contain "admissible evidence and non-frivolous arguments," *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 122 (2d Cir. 2006); and (iv) not be "redundant, immaterial, impertinent, or scandalous," *Brown*, 929 F.3d at 51 (citation omitted); *see also id.* at 51 n.42.   In short, Plaintiff's interpretation that a document filed with a motion is *ipso facto* judicial is mistaken.

court performs the judicial function . . . when *it rules* on motions currently before it . . . [and] when properly *exercising* its inherent supervisory powers." *Id.* (internal quotation marks, emendations and citation omitted; emphasis supplied).

Thus, in order to constitute a judicial document, a filed document must both (1) be relevant to an actual exercise of judicial authority; and (2) be useful in the exercise of that judicial action. Filings that do not meet both requirements are not "judicial documents."[2]

This dual requirement flows from the rationale for presuming public access to judicial documents in the first place: namely, "the role those documents played in determining litigants' substantive rights – conduct at the heart of Article III – and from the need for public monitoring of that conduct." *Amodeo*, 71 F.3d at 1049; *see also Lugosch*, 435 F.3d at 123 (explaining that "the rationale behind access is to allow the public an opportunity to assess the correctness of the judge's *decision*" (citation omitted; emphasis supplied)).

If litigants settle a case, they leave the court without any authority to "rule[]" or "exercis[e]" its Article III authority; motions not ruled upon before settlement are not just unadjudicated – they are unadjudicable. *See* U.S. Const. art. III, § 2, cl. 1. Accordingly, documents submitted in connection with unadjudicable motions do not – and cannot – enable the public to monitor, understand and assess judicial determination of litigants' substantive rights. And that is so precisely because, as a result of the litigants' affirmative decision to moot the motion via a negotiated settlement, an Article III court lacks the Constitutional authority to

---

[2] As John Doe and Defendant have previously observed, *see* DE 990 at 3 n.3; DE 997 at 1-2; DE 1005 at 5, Plaintiff repeatedly attempts to recast this argument as being concerned with whether a court in-fact relies upon a document in rendering a decision. However, John Doe's argument is not – as Plaintiff contends – that, to be judicial, a document must in-fact be relied upon by a court in reaching a decision. Rather, certainly in the present posture of this case, the point is that there is no possibility that Judge Sweet relied on a document in reaching a decision when he made *no decision in the first place*.

determine litigants' rights.  In other words, particularly when evaluating whether to unseal filings relating to unadjudicated motions after a case has been settled, a filing made in connection with such an unadjudicated – and unadjudicable – motion is irrelevant to the judicial function and neither played, nor can in the future play, any role in the judicial process.

In fact, less than two months ago, the Court of Appeals expressly held that "court action" is the essential lynchpin in this Circuit's sealing jurisprudence.  *Trump v. Deutsche Bank AG*, 940 F.3d 146, 152 (2d Cir. 2019).  The Court there held that if a document (1) is not "relevant to any issue [that the Court] need[s] to decide" and (2) is not "a record of any court action," then "it is not a 'judicial document.'"  *Id.* at 151-52.  The conclusion is simple and inescapable: where there never was, and never will be, any "court action," there can be no "judicial documents."  *Id.* The D.C. Circuit has come to the same conclusion:

> [N]ot all documents filed with courts are judicial records.  Just as a document would not be a public record when it does not eventuate in any official action or decision, whether something is a judicial record depends on the role it plays in the adjudicatory process. . . .  *[T]he concept of a judicial record assumes a judicial decision, and with no such decision, there is nothing judicial to record*. . . .  Disclosure of the reports would do nothing to further judicial accountability.

*S.E.C. v. Am. Int'l Grp.*, 712 F.3d 1, 3-4 (D.C. Cir. 2013) (internal quotation marks and citations omitted; emphasis supplied).  And that is so precisely because unsealing such documents vindicates no public interest.

So, if unsealing presently sealed documents filed in connection with unadjudicated and unadjudicable motions does not serve any public interest in monitoring courts and their determination of litigants' substantive rights, what legitimate public interest does it serve?

None.

Indeed, this is where the Court of Appeals' admonition in this very case comes powerfully into play: "we share [Judge Sweet's] concern that court files might be used to promote scandal

arising out of unproven potentially libelous statements." *Brown*, 929 F.3d at 51 (internal quotation marks and citation omitted)[3]; *see also* DE 980 at 2-3.  Using a settled case as the vehicle for publicly unleashing unproven and – in light of the parties' negotiated settlement – unprovable and unrebuttable allegations against non-parties is improper.  It would be in service of no cognizable public interest.  Indeed, it would be flatly contrary to the public interest.[4]

Plaintiff's arguments contradict these clear legal principles, and rely upon cases that have a dispositive difference from this case: none involve motions that were not only unadjudicated, but were forever unadjudicable.  Perhaps the most egregious, and illustrative, example of Plaintiff's misplaced reliance is *Lugosch,* 435 F.3d 110.  *Lugosch* involved a *then-pending* summary judgment motion in the district court – a live dispute regarding a dispositive motion that had been pending for months.  *Id.* at 113-17.  The appellants, media-intervenors, appealed an *interlocutory order* that held their unsealing motion in abeyance until the district court ruled on that summary judgment motion.  *Id.*  The *Lugosch* court held that papers submitted in connection with the then-pending motion were judicial documents, notwithstanding the fact that the motion was still pending.  *Id.* at 120-21.  That holding, of course, was *explicitly predicated* on the dual

---

[3] *See also id.* at 47 ("Our legal process is already susceptible to abuse. . . .  Shielded by the 'litigation privilege,' bad actors can defame opponents in court pleadings or depositions without fear of lawsuit and liability.  Unfortunately, the presumption of public access to court documents has the potential to exacerbate these harms to privacy and reputation by ensuring that damaging material irrevocably enters the public record.")

[4] First, as has been abundantly set forth elsewhere, publishing immunized, unproven and (due to the settlement) unrebuttable allegations regarding non-parties runs headlong into this Court's obligation to protect non-parties.  *See*, *e.g.*, DE 980 at 2-3; DE 990 at 5 n.5; *see also In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (stating that non-party privacy interests "should weigh heavily in a court's balancing equation in determining what portions of [sealed documents] should remain sealed or should be redacted").  And the sealed filings are not the only vehicle to make participants' stories public.  As we have set forth previously, nothing precludes participants in this matter from publicly disclosing their allegations.  *See* DE 980 at 6.

understandings that: (1) the district court would in fact decide the motion, and (2) the documents in question would be relevant to that eventual adjudication. *See*, *e.g.*, *id.* at 121 (explaining that the future summary judgment ruling would be "an adjudication [which is] a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny" (citation omitted)). It was not a question of if, it was only a question of when. The *sine qua non* of *Lugosch* was thus that there would be a ruling on the summary judgment motion, and that the documents in question would be relevant to it. And that was important because the basis for that forthcoming ruling "should . . . be subject to public scrutiny." *Id.*[5]

Finally, Plaintiff argues that unsealing these documents is required to permit the public to monitor "the District Court's inaction." DE 1008 at 5. But after years of litigation and Judge Sweet's resolution of dozens of motions, including a summary judgment motion, Plaintiff elected, on the eve of trial, to settle. There is no judicial "inaction" to monitor. This is not a case, like *Lugosch*, where the district court did not act or delayed acting. Far from it. Had the Plaintiff wished to forgo the pecuniary gain and finality of a settlement and proceed to trial, and thereby make her evidence public, that was her right. She elected not to do so. To now argue that en masse unsealing is required to monitor judicial inaction is meritless.

---

[5] Plaintiff's reliance on *Eagle Star Ins. Co. Ltd. v. Arrowood Indem. Co.*, No. 13 Civ. 3410 (HB), 2013 WL 5322573 (S.D.N.Y. Sept. 23, 2013) (Baer, J.), and *Abidor v. Johnson*, No. 10 Civ. 4059 (ERK), 2016 WL 3102017 (E.D.N.Y. June 2, 2016), is similarly misguided. Not only are both decisions unpublished, non-precedential district court opinions, they are also readily distinguishable. In *Eagle Star*, which dealt with arbitration awards – which are intrinsically judicial – Judge Baer explicitly gave notice that the documents at issue might be unsealed, and the documents at issue related to a dispositive motion. Here, there is no reason to think that any of the unadjudicated motions are dispositive, and no notice of unsealing was offered – quite the opposite, in fact. *See Eagle* Star, 2013 WL 5322573, at *2 (citing cases specifically addressing the extent to which *arbitration awards* are intrinsically judicial documents). *Abidor*, in turn, involved a situation in which the presiding judge had expressly requested to see the documents at issue, and in which there had been prior, relevant adjudications – the relevant motion was a motion for *reconsideration*.

      Respectfully submitted,
      KRIEGER KIM & LEWIN LLP

By: _____
      Nicholas J. Lewin
      Paul M. Krieger