UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



VIRGINIA L. GIUFFRE,

              Plaintiff,

-against-

GHISLAINE MAXWELL,

              Defendant.

15 Civ. 7433 (LAP)

OPINION & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    In its December 16, 2019 Order, the Court concluded that "only motions actually decided by Judge Sweet--along with documents relevant to Judge Sweet's decisions on those motions--are properly considered judicial documents to which a presumption of public access attaches." (See dkt. no. 1016.) The Court now writes to explain the basis for that Order.

    At this point, Plaintiff Virginia Giuffre ("Ms. Giuffre"), Defendant Ghislaine Maxwell ("Ms. Maxwell"), Intervenor Miami Herald Media Company ("the Herald"), and Interested Party John Doe ("Doe," and, collectively with Ms. Giuffre, Ms. Maxwell, and the Herald, "the Parties") are more than well-versed in the facts and procedural history of this case. Accordingly, the Court sees no reason for an in-depth rehashing of that factual background in this opinion.

    Of essential note, the Court ordered the Parties on October 28, 2019 to "inform the Court by letter . . . of the motions

that were decided in this case." (<u>See</u> Order on Decided Motions, dated October 28, 2019 [dkt. no. 998], at ¶ 1.) In that same order, the Court instructed the parties to submit to the Court "their views on the effect of a motion's being undecided on whether the motion papers are or are not a judicial document." (<u>Id</u>. ¶ 4.) The Parties thereafter submitted letter briefing on whether a motion's being decided (or not being decided) had any critical effect on whether that document should be labeled a judicial document. (<u>See</u> Maxwell Brief ("Maxwell. Br."), dated November 12, 2019 [dkt. no. 1005]; Giuffre Brief ("Giuffre. Br."), dated November 12, 2019 [dkt. no. 1008]; (<u>see also</u> John Doe Brief ("Doe Br."), dated December 5, 2019 [dkt. no. 1012]; Miami Herald Opposition to John Doe Brief ("Herald Br."), dated December 12, 2019 [dkt. no. 1014].)

"Sealing documents filed with a court implicates a common law and qualified First Amendment right of access to such documents." <u>Trump v. Deutsche Bank AG</u>, 940 F.3d 146, 150 (2d Cir. 2019) (citing cases). That "right of public access to judicial documents is firmly rooted in our nation's history." <u>Lugosch v. Pyramid Co. of Onondaga</u>, 435 F.3d 110, 119 (2d Cir. 2006). The federal courts, however, cannot be monitored "without access to testimony and documents that are used in the performance of [the courts'] Article III functions." <u>U.S. v. Amodeo</u>, 71 F.3d 1044, 1048 (2d Cir. 1995) ("<u>Amodeo II</u>"). Thus,

the purpose behind this presumption of public access is simple: it ensures that "federal courts, although independent . . . have a measure of accountability" and allows "for the public to have confidence in the administration of justice." Id.

The first step in the unsealing process--and the sole question that the Court considers in this opinion--is to evaluate whether documents in question are "judicial" documents. Trump, 940 F.3d at 150. This is because no common law right to public access can attach to documents that are not "judicial" in nature. Lugosch, 435 F.3d at 119 ("Before any such common law right can attach . . . a court must first conclude that the documents at issue are indeed 'judicial documents.'"). The Court of Appeals has made it clear that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document." United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I"). Instead, a document may be coined a judicial document only if it is "relevant to the performance of the judicial function and useful in the judicial process." Id. The scope of this limitation is significantly less clear.

The natural place to start is with the question of what exactly the "judicial function" is. The Court of Appeals has stated that courts "perform[] the judicial function . . . when [they] rule[] on motions currently before [them]" and when they

3

are "properly exercising [their] inherent supervisory powers." Brown v. Maxwell, 929 F.3d 41, 49 (2d Cir. 2019) (internal quotations and citations omitted). That language speaks to the constitutional authority of the federal courts. Indeed, the Court of Appeals has explicitly explained that "[d]ocuments that play no role in the performance of Article III functions . . . lie entirely beyond the [reach of the presumption of public access]." Amodeo II, 71 F.3d at 1050 (emphasis added); see also Stand Inv. Charted, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., 621 F. Supp.2d 55, 63 (S.D.N.Y. 2007) ("Because the [] documents did not in any way figure into the Court's performance of its Article III functions, the documents do not qualify as judicial."). Thus, a document may only be judicial in nature--and thus subject to the presumption of public access--if it is somehow relevant to the exercise of the judicial power vested in the federal courts by Article III of the Constitution of the United States. See U.S. Const. art. III, § 1.

The core of Article III's judicial power "is the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction." Muskrat v. United States, 219 U.S. 346, 361 (1911); see also Murphy v. Nat'l Collegiate Athletic Ass'n, 138 S.Ct. 1461, 1485 (2018) (Thomas, J., concurring) (Traditionally, courts have understood the judicial power to be "fundamentally, the power to

4

render judgments in individual cases."). The essence of the judicial power is thus adjudicative. Article III's case or controversy requirement, see U.S. Const. art. III, § 2, cl. 1, however, underscores that the judicial power does not--and cannot--exist in a vacuum. Instead, it can only exist in the context of real disputes between parties before the Court, i.e., situations in which the courts are capable of "determining litigants' substantive rights." Amodeo II, 71 F.3d at 1049. "Without a suit, without parties," however, "the judicial power is absent." Craig A. Stern, What's a Constitution Among Friends? Unbalancing Article III, 146 U. Pa. L. Rev. 1043, 1055 (1998).

In this case, the underlying litigation between Ms. Giuffre and Ms. Maxwell has long since settled. Accordingly, "[a]ll disputes regarding the underlying merits of the action have been rendered moot by the settlement." LaForest v. Honeywell Intern. Inc., 569 F.3d 69, 74 (2d Cir. 2009). There is thus is no live controversy to which the judicial power can extend. With respect to motions left undecided by Judge Sweet, there was never, and now never can be, a judicial decision-making process

that would trigger the public's right to access the undecided motions and the documents relevant to them.[1]

Giuffre argues that the documents at issue are nonetheless judicial because they, at one point prior to the settlement of the litigation between Ms. Giuffre and Ms. Maxwell, called on the Court to exercise its Article III powers. (Giuffre Br. at 2 (citation omitted).) This argument relies heavily on this Court's opinion in Eagle Star Ins. Co. Ltd. v. Arrowood Indem. Co., in which Judge Baer found that papers filed in connection with a fully briefed motion in a case that settled prior to a decision on that motion were judicial because "[a]t the time of filing . . . [they were] filed for the Court's consideration in ultimately adjudicating the case." No. 13 Civ. 3410, 2013 WL

---

[1] Ms. Giuffre has expressed concern that "[i]f an undecided motion were deemed a non-judicial document merely because it had not yet been decided, then a court could never deem a pending motion a judicial document." (See Giuffre Br. at 4.) This is a red herring. There is a stark difference between a motion that is not yet decided and one that can never be decided. (See Doe Br. at 2 ("[M]otions not ruled on before settlement are not just unadjudicated - they are unadjudicable."); see also infra n. 3.) Importantly, describing a motion as "pending" presupposes an eventual decision. See Pending, Black's Law Dictionary (11th ed. 2019) (Defining "Pending" as "[r]emaining undecided" or "awaiting decision."). The motions left untouched by Judge Sweet, however, cannot be considered pending because any controversy between the parties that would allow for an adjudication of the issues therein has been extinguished by the parties' settlement. Viewed in this light, the Court sees no reason why a finding that undecided and unadjudicable motions are non-judicial has any effect whatsoever on its ability to find pending motions in active litigation to be judicial in nature.

6

5322573, at *2 (S.D.N.Y. Sept. 23, 2013). But this does not appear to be a hard and fast rule--indeed, this Court has previously taken the opposite tack to unsealing mooted motions. For example, in Int'l Equity Invest., Inc. v. Opportunity Equity Partners Ltd., Magistrate Judge Ellis rejected an intervenor's request to modify a protective order in order to access certain documents filed in connection with a motion for a preliminary injunction that was resolved via stipulation before a judicial ruling. Judge Ellis found that the documents were not judicial, and therefore not subject to the presumption of access, in part because the Court could not "make a substantive determination" of the issues in light of the motion's mootness. No. 05 Civ. 2745(JGK)(RLE), 2010 WL 779314, at *3-4 (S.D.N.Y. Mar. 2, 2010). District Judge Koeltl later adopted Judge Ellis's ruling over objections from the intervenor. See Mem. & Order, dkt. no. 663, No. Civ. 2745(JGK)(RLE) (S.D.N.Y. April 12, 2010).[2]

---

[2] The intervenor's objection centered primarily on whether Judge Ellis correctly applied the presumption against modification of protective orders, not whether he correctly determined that the documents in question were non-judicial. In fact, the intervenor's objection to Judge Ellis's ruling acknowledged that the undecided motion and associated documents were not judicial documents for purposes of the presumption of public access. The intervenor emphasized that Judge Ellis "precisely follow[ed] the law" in concluding that the relevant documents were not judicial. Because the Court "did not use any of the disputed documents to make any substantive rulings," the intervenor noted, it could be "easily concluded that the documents were

(Footnote Continued on Following Page)

Faced with these two approaches and considering the lack of clear guidance from the Court of Appeals,[3] the Court chooses the path that adheres most closely to the overarching purpose of the presumption of public access. That is, the presumption exists to monitor judicial decision-making. See Amodeo II, 71 F.3d at 1049 (Explaining that the existence of the presumption is rooted in the need for "public monitoring" of "the role [that the relevant] documents played in determining litigants' substantive rights."). Here, however, there is simply no decision to be made, no exercise of the judicial power that can take place, and no court action for the public to monitor. Ms. Giuffre suggests that, because the undecided motions were submitted to the Court way back when, "they can fairly be assumed to play a role in the court's deliberations." (Giuffre Br. at 3.) But Ms. Giuffre neglects to explain why her speculation as to Judge Sweet's

---

'not within the category of judicial documents.'" See Intervenor's Response in Support of Objection to Judge Ellis's Op. & Order at 8, 8 n.2, dkt. no. 661, No. Civ. 2745(JGK)(RLE) (S.D.N.Y. March 31, 2010).

[3] Both Ms. Giuffre and the Herald appear to suggest that the Court of Appeals' decision in Lugosch, 435 F.3d 110 (2d Cir. 2006), has suitably addressed the issue of whether undecidable motions can be judicial documents. (See Giuffre Br. at 4; see also Herald Br. at 2-3.) The Court disagrees. As discussed in Doe's briefing, that case involved the unsealing of materials relevant to a pending motion for summary judgment in active litigation, not motions that were rendered moot by settlement of a case. (See Doe Br. at 4-5.) Indeed, the Lugosch court's holding specifically applied to "contested documents." See 435 F.3d at 122-23 (emphasis added).

deliberations, without more, is sufficient to render a document "judicial" where those deliberations--if they even occurred--cannot result in a judicial act of any sort.

Moreover, the Court of Appeals has made it crystal clear that the universe of documents that can be considered "judicial" is not limitless. See Amodeo II, 71 F.3d at 1048 ("[A]n abundance of statements and documents generated in federal litigation actually have little or no bearing on the exercise of Article III judicial power."); see also Newsday LLC v. County of Nassau, 730 F.3d 156, 167 n.15 (2d Cir. 2013) (Emphasizing that "the category of 'judicial documents' should not be readily expanded."). Ms. Giuffre, however, appears to argue that any document that (1) has been filed with a court; (2) requests some manner of relief; and (3) comes to a judge's attention in any way, is a judicial document, whether decided, undecided, justiciable, or nonjusticiable. (See Giuffre Br. at 3.) Such an approach would effectively obliterate any limitation on what can be afforded the presumption of public access. If every document that comes to a judge's attention after filing is "relevant to the judicial function," then practically every paper filed with the Court would be judicial in nature. This flies in the face of the Court of Appeals' directive that "mere filing of a paper or document with the court is insufficient to

9

render that paper a judicial document." Amodeo I, 44 F.3d at 145.

Finally, the Court is mindful of the fact that there is a great deal of public intrigue surrounding the unsealing of the documents at issue here. With that in mind, the Court emphasizes that this ruling is a narrow one. Notwithstanding the fact that the undecided motions and the papers associated with them are not judicial documents, they may eventually be unsealed because they are in some way relevant to Judge Sweet's actual decisions--which are numerous--that are certainly subject to the presumption of public access. Ms. Giuffre raises such a possibility in her briefing, suggesting that the undecided motions can "fairly be assumed to [have played] a role in [Judge Sweet's] deliberations as to other rulings." (See Giuffre Br. at 4 (quoting Lugosch, 435 F.3d at 123).) At this stage in the unsealing process, the Court declines Ms. Giuffre's invitation to assume categorically that the undecided motions are germane to Judge Sweet's rulings on the decided motions but nonetheless acknowledges the realistic possibility that they are relevant and thus ripe for unsealing.[4]

---

[4] For this reason, the Court does not find compelling Ms. Giuffre's and the Herald's concern that they "had a presumptive right to access [the undecided motions] at any point prior to the case settling, but that those rights were extinguished upon the case settling." (See Herald Br. at 2.)

CONCLUSION

For the foregoing reasons, the Court concludes that motions that were not decided by Judge Sweet and the papers associated with those motions are not judicial documents subject to the presumption of public access.

**SO ORDERED.**

Dated:   New York, New York
         January 13, 2020

_____
LORETTA A. PRESKA
Senior United States District Judge