# KRIEGER KIM & LEWIN LLP

500 Fifth Avenue                                                                                           Telephone: (212) 390-9550
New York, NY 10110                                                                                                    www.KKLllp.com

June 22, 2020

By ECF

The Honorable Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street, Room 2220
New York, NY 10007-1312

        Re:    *Giuffre v. Maxwell,* **15 Civ. 7433 (LAP) ("*Maxwell*")**

Dear Judge Preska:

      We write on behalf of a non-party, John Doe, regarding the letter filed by Alan Dershowitz on June 12, 2020, in the above-referenced case ("*Maxwell*") and in *Giuffre v. Dershowitz*, No. 19 Civ. 3377 (LAP) ("*Dershowitz*").  *See Maxwell*, DE 1058-1.  By that letter, Dershowitz sets forth his intent to seek an order compelling Plaintiff Giuffre "and others" to produce "all filings and discovery materials, including third-party discovery," from *Maxwell*, including documents governed by the *Maxwell* Protective Order and sealed materials (the "Sealed Documents") presently under review by this Court pursuant to the agreed-upon protocol.  *Id.*

      This marks Dershowitz's second – or, by some measures, third – attempt to make an end-run around this Court's carefully constructed unsealing protocol.  Just as the Court denied Dershowitz's prior attempts, it should deny this one.[1]

    **A.**    **This Court's Rejection of Dershowitz's Initial Attempts to Oppose or Circumvent the Protocol**

      Earlier this year, after substantial input from and discussion with the parties, the Court finalized the protocol for the individualized review of the Sealed Documents that was mandated by the Second Circuit.  *Maxwell*, DE 1044.  Dershowitz, as an intervenor, opposed this protocol

---

[1] A decision on whether to grant Dershowitz's motion for leave to file his proposed motion to compel Giuffre "and others" to produce discovery could have a substantial and real-time effect on the ongoing unsealing review pursuant to the Court's carefully crafted protocol.  Accordingly, and notwithstanding our familiarity with the Court's Individual Practice 2(A), we have filed this letter on the underlying merits of the proposed motion to urge the Court not to even grant Dershowitz leave to file that motion in the first place.

from the start, and unsuccessfully requested that the Court simply release the Sealed Documents for public consumption.  *Maxwell*, DE 992.

Rejecting Dershowitz's position, the Court specifically structured the protocol to afford notice to those persons identified or otherwise interested in the Sealed Documents and to allow such affected persons the opportunity to object and be heard.  As made clear by the prior filings with this Court and the Second Circuit, the affected persons include non-parties who provided discovery subject to the understanding that such responses would be maintained as confidential under the terms of the Protective Order.  *See, e.g.*, *Maxwell*, DE 944.  That discovery apparently included probing inquiries on facts and allegations of an intensely private nature.  Indeed, as Judge Sweet observed, this matter involved "allegations concerning the intimate, sexual, and private conduct of the parties and of third persons, some prominent, some private," *Giuffre v. Maxwell*, 325 F. Supp. 3d 428, 433 (S.D.N.Y. 2018), and "the release of confidential information inherent to the discovery process could expose the parties to annoyance, embarrassment, and oppression given the highly sensitive nature of the underlying allegations," *id.* at 442.

In yet another bid to bypass the protocol, last October, Dershowitz also sought, in *Dershowitz*, the "immediate[]" production of two non-public sets of documents, including Giuffre's partially sealed deposition taken in *Maxwell*.  *Dershowitz*, DE 71.  This Court denied that request as well, on November 5, 2019, observing that Dershowitz "ha[d] not provided the Court with any justification for departing from the Court-ordered unsealing process in *Giuffre v. Maxwell*."  *Dershowitz*, DE 85.

> **B.**     **Dershowitz's Present, Expanded Second (or Third) Bite at the Apple and Giuffre's Acquiescence to the Same**

With his objections to the protocol overruled in *Maxwell*, and having already failed to circumvent it once in *Dershowitz*, Dershowitz now doubles down.  He proposes a new means of short-circuiting this process, contending that he should be entitled to *all* records in Giuffre's and others' possession, including records that were designated in discovery as confidential – in other words, not just the Sealed Documents, but all discovery materials.  Dershowitz's latest effort proposes an unfettered release of records to him without any notice to, or opportunity to hear objections from, affected non-parties, including those who, in *Maxwell*, provided the requested discovery, without further objection, *contingent upon* a judicial assurance of confidentiality.

The fact that Giuffre – who also opposed the Protocol and sought the release of all Sealed Documents – does not oppose Dershowitz's motion is of no moment.  Indeed, it proves the point, by underscoring the caution with which the Court should approach Dershowitz's request.  And, in any event, a non-party that produces information in discovery remains entitled to the protection of confidentiality under the terms of a protective order, regardless of whether a party later seeks – or acquiesces to – the release of that information.  Those non-parties "have a right to be protected against becoming victims of litigation cross-fire."  *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 653 F. Supp. 957, 960 (S.D.N.Y. 1987) (explaining, in denying request for discovery, that while "the protective order has been in force . . . numbers of non-parties have been deposed or provided documents on assurance of the confidentiality of their

testimony or of the material which they furnished"); *see also, e.g.*, *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979).

These circumstances starkly frame the need for this Court to protect the privacy and reputational rights of non-parties. And that need here is reflected in – and accords precisely with – the long-standing law of this Circuit that (regardless of the parties' position on the matter) non-parties retain the right to protection of their privacy and reputational interests, and the responsibility to protect those non-party rights "rests heavily upon the shoulders" of the district court. *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987); *see also Brown v. Maxwell*, 929 F.3d 41, 51 (2d Cir. 2019).

### C. Dershowitz's Unfounded Criticism of the Protective Order

Separate and apart from the gamesmanship of trying to exclude non-parties from participation in this process, Dershowitz's argument to modify the Protective Order to gain access to all filings and discovery material in *Maxwell* runs counter to the *Maxwell* Protective Order, and thus counter to law. Courts in this Circuit strongly disfavor attempts by collateral litigants to modify protective orders entered in other cases. The Second Circuit has held that where there has been reasonable reliance by a party or non-party in providing discovery pursuant to a protective order, a district court should not modify that order "absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need." *S.E.C. v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) (quoting *Martindell*, 594 F.2d at 296). Dershowitz does not, and cannot, make any such showing here.

As Dershowitz acknowledges, several factors are considered in determining whether such extraordinary circumstances exist: (1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order. *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 318 (D. Conn. 2009). While Dershowitz properly identifies these factors, he repeatedly mischaracterizes the terms of the *Maxwell* Protective Order. A review of its actual terms – as opposed to Dershowitz's straw-man rewrites – illustrates with clarity that none of these factors support modification.

#### 1. Scope of the Protective Order

In reviewing a protective order, the court should examine "whether the order is a blanket protective order, covering all documents and testimony produced in a lawsuit, or whether it is specifically focused on protecting certain documents or certain deponents for a particular reason." *Id.* at 319. Dershowitz asserts that the *Maxwell* Protective Order is a "blanket order" that covers "all" documents "without consideration as to whether a specific document actually contains justifiably confidential material." *Maxwell*, DE 1058-1 at 2. Not so.

The preamble of the Protective Order states that it protects "the discovery and dissemination of confidential information or information which will improperly annoy, embarrass, or oppress any party, witness, or person providing discovery in this case." This

language closely tracks the permissible grounds for a protective order under Federal Rule of Civil Procedure 26(c)(1). And the Second Circuit has specifically endorsed the use of protective orders such as this. *See, e.g.*, *S.E.C. v. Rajaratnam*, 622 F.3d 159, 181 (2d Cir. 2010) ("[A] district court may issue protective orders 'for good cause to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" (quoting Fed. R. Civ. P. 26(c)). Indeed, in this case, the Circuit stated that a district court could fulfill its responsibility to ensure that its records and files are not used to "gratify private spite or promote public scandal" or "serve as reservoirs of libelous statements for press consumption" by "issu[ing] protective orders forbidding dissemination of certain material to protect a party or person from annoyance, embarrassment, oppression, or undue burden and requir[ing] that filings containing such material be submitted under seal." *Brown*, 929 F.3d at 51 (quotation marks and citation omitted) (quoting Fed. R. Civ. P. 26(c)). Thus, the Protective Order protects the very subject matter that Rule 26 and the Second Circuit identify as deserving of protection.

Contrary to Dershowitz's assertions, the Protective Order also includes mechanisms to ensure that confidentiality designations are justifiable. *See* Section 8 (stating that designation of information as confidential constitutes a representation by the attorney for the designating party that there is a valid and good-faith basis for the designation); Section 11 (providing a process for parties to make objections to, and timely seek the Court's resolution of, confidentiality designations).

### 2.   Language of the Protective Order

Courts next look to the express language of the protective order. *See In re Ethylene*, 255 F.R.D. at 320. Here, there is no language suggesting that the duration of the Protective Order was limited. To the contrary, Section 12 of the Protective Order provides that confidential materials will remain so designated through "the conclusion of the case," at which time they will be returned to the designating party or destroyed.

Dershowitz makes the unremarkable observation that the Protective Order contains generic language permitting future modifications "for good cause." *Maxwell*, DE 1058-1 at 2 (referencing Section 14 of the Protective Order). That does not negate reasonable reliance upon an indefinite term, however, given that it is "always the case" that protective orders are subject to modification by the court. *Dorsett v. Cty. of Nassau*, 289 F.R.D. 54, 65–66 (E.D.N.Y. 2012). Regardless of whether a protective order acknowledges the possibility of modification inherent in all such orders, parties may reasonably rely on orders that contain no temporal limits and that provide for confidentiality protections to continue after the action concludes, particularly where, as here, the Protective Order calls for the return or destruction of the requested files. *See id.*

### 3.   Level of Inquiry by the Court

Dershowitz makes another unremarkable observation: that the Court entered the Protective Order "with no individualized determination for specific documents." *Maxwell*, DE 1058-1 at 2. Dershowitz elects to neglect the obvious fact that the Protective Order was issued early in the litigation, at a stage when it was entirely reasonable to make "the conscious decision

to implement the Protective Order to allow for broad and quick discovery." *United States v. Calderon*, No. 3:15-CR-25 (JCH), 2017 WL 6453344, at *4 (D. Conn. Dec. 1, 2017). Moreover, as discussed above, the Protective Order did not give parties "open-ended and unilateral deference' to protect whichever discovery materials they choose," *In re Ethylene*, 255 F.R.D. at 321 (quotation marks and citation omitted), but rather established a robust process for challenging confidentiality designations – making early implementation of the Protective Order, even when it was too early to make rulings about specific documents, all the more appropriate. Indeed, it is ironic that Dershowitz, by his motion, seeks to evade the protocol's robust individualized review that he finds lacking in the Protective Order.

### 4. Nature of the Reliance

Finally, courts examine the ways in which those from whom discovery is sought – both parties and non-parties – conducted themselves in reliance on a protective order. For example, courts consider whether discovery was provided that otherwise could have been challenged by seeking specific protection under Rule 26(c). In such cases, "[b]ecause a party or a deponent's agreement to provide materials or testimony is based solely on the maintenance and enforceability of the protective order, a stronger presumption against modification must logically apply." *In re Ethylene*, 255 F.R.D. at 323.

One key provision of the *Maxwell* Protective Order – the substance of which courts have found dispositive in denying modification – is found in Section 4, which provides that information designated as "confidential . . . *shall not be disclosed or used for any purpose except the preparation and trial of this case*" (emphasis added). Dershowitz's instant application seeks to use these materials for an entirely different purpose in an entirely different case and thus runs directly against this provision.

In *Jose Luis Pelaez, Inc. v. Scholastic, Inc.*, 312 F. Supp. 3d 413 (S.D.N.Y. 2018), the court denied a movant's attempt to modify a protective order to obtain discovery produced by the defendant, against which the movant was litigating in a collateral matter. The court found it dispositive that the parties had agreed "to use confidential information produced under the Protective Order in connection with [that] case only," and the court concluded that "it [wa]s reasonable that in conducting discovery [the defendant] relied on the provision limiting the use of confidential information to [that] case." *Id.* at 416–17; *see also Nielsen Co. (U.S.), LLC v. Success Sys., Inc.*, 112 F. Supp. 3d 83, 121 (S.D.N.Y. 2015) (finding that "the parties were justified in believing that the Protective Order would not be modified for purposes external to [their] lawsuit"); *In re Sept. 11 Litig.*, 262 F.R.D. 274, 277 (S.D.N.Y. 2009) (holding that a producing party is "entitled to rely" on its confidentiality designations where no party has exercised its right to challenge the designations and the time for making a challenge has lapsed). Here too, it was reasonable for parties and non-parties to rely upon the assurances provided in Section 4 of the Protective Order.

\*    \*    \*

In sum, Dershowitz has not shown there is an "extraordinary circumstance or compelling need" for modifying the Protective Order.[2]  "Although fostering judicial economy and avoiding duplicative discovery are laudable goals . . . they hardly amount to extraordinary circumstances or compelling need." *Md. Cas. Co. v. W.R. Grace & Co.*, No. 83 Civ. 7451 (SWK), 1994 WL 419787, at *9 (S.D.N.Y. Aug. 10, 1994) (denying collateral litigant's motion to modify protective order).  And, in any event, the wholesale importation of thousands of documents from *Maxwell* to *Dershowitz* – and the concomitant unsealing challenges they carry with them – would not foster judicial economy or efficient discovery.  Indeed, Dershowitz's approach would have the opposite effect: it would unnecessarily replicate, *en masse*, the unsealing challenges the Court, parties and non-parties face in this case.

In light of the foregoing, the Protective Order should not be modified.

**D.  Dershowitz's Acceptance of the Discovery Subject to the Terms of the Protective Order Affords Limited Protection**

There is an additional consideration necessitating opposition to this request.  Even assuming arguendo that Dershowitz would gain access to the requested records only subject to the terms of the *Maxwell* Protective Order, that condition would afford little protection here – where Dershowitz has consistently and adamantly opposed confidentiality and pressed his dispute with Giuffre through out-of-court public declarations.

Indeed, Dershowitz apparently has already evinced an unwillingness to comply with the terms of protective orders.  Although we do not have access to the Sealed Documents and the confidential discovery materials, Giuffre's filing notes that Dershowitz has improperly referenced the contents of sealed materials in his public filings.  *See Dershowitz*, DE 141.  Dershowitz denies the contention, *see Dershowitz*, DE 142, but then declares that he should not be obligated to file his contemplated motion under seal – again indicating his practice and intent to wage his ongoing dispute with Giuffre in the press.  Non-parties should not become casualties in this battle.

---

[2] Dershowitz's letter cites *TradeWinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901 (JFK), 2016 WL 3951181 (S.D.N.Y. July 20, 2016), in which the court permitted modification of a protective order.  That decision, however, is readily distinguishable.  There, the court found that all of the *In re Ethylene* factors weighed *against* a finding that a party reasonably relied on the protective order.  *Id.* at *2.  Moreover, Judge Keenan there emphasized that, "importantly, because the proposed modifications maintain the same protections regarding public disclosure, there is no significant prejudice to any party."  *Id.*  Here, by contrast, Dershowitz is attempting to skirt the protections afforded by the unsealing protocol established in *Maxwell*, and, for the reasons discussed below, his agreement to abide by the terms of the Protective Order provides little comfort.  Thus, granting Dershowitz's request would result in significant prejudice to parties and non-parties who produced information in reliance upon the Protective Order and the protocol.

The privacy rights of non-parties may also be put at risk by attempts to bypass this Court's earlier rulings, by appending to filings in *Dershowitz* irrelevant or marginally relevant materials from *Maxwell* for the purpose of according those materials judicial-document status. *See Giuffre v. Maxwell*, No. 15 Civ. 7433 (LAP), 2020 WL 133570 (S.D.N.Y. Jan. 13) (holding that documents associated with unadjudicated motions are categorically non-judicial), *reconsideration denied*, 2020 WL 917057 (S.D.N.Y. Feb. 26, 2020). This is not a hypothetical concern; in her objections relating to the first round of documents reviewed pursuant to the protocol, Maxwell identified numerous documents that she contends were filed (by Giuffre) for an improper purpose. *See Maxwell*, DE 1057 at 6. These types of filings may already be – or may become – an issue for the Court and parties (and non-parties) to deal with in *Dershowitz*. But facilitating further opportunities for Dershowitz to litigate his case in the court of public opinion rather than a court of law, by unnecessarily providing access to a trove of sensitive discovery and sealed filings, is not something this Court should countenance.[3]

### E. Conclusion

For these reasons, John Doe respectfully submits there is no basis for modifying the Protective Order to allow Dershowitz access to the Sealed Documents and other discovery materials, and urges the Court to deny his motion for leave to file his proposed motion.

Respectfully Submitted,
KRIEGER KIM & LEWIN LLP

By: /s/ Nicholas J. Lewin
Nicholas J. Lewin
Paul M. Krieger

cc (by ECF): *Maxwell* Counsel of Record (15 Civ. 7433 (LAP))

cc (by email): *Dershowitz* Counsel of Record (19 Civ. 3377 (LAP))

---

[3] This highlights yet another issue regarding Dershowitz's request – namely, that he provides no suggestion as to how the host of interested parties in *Maxwell* may monitor and, as necessary, object to Dershowitz's ongoing use of these materials in *Dershowitz*. The Court, as well as the parties and various non-parties, are expending considerable resources facilitating the unsealing process in *Maxwell* – a process that will be made exponentially more complicated and difficult if the entire set of materials at issue is reproduced in another case.