```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| VIRGINIA L. GIUFFRE,<br><br>        Plaintiff,<br><br>-against-<br><br>ALAN DERSHOWITZ,<br><br>        Defendant. | No. 19 Civ. 3377 (LAP) |
| VIRGINIA L. GIUFFRE,<br><br>        Plaintiff,<br><br>-against-<br><br>GHISLAINE MAXWELL,<br><br>        Defendant. | No. 15 Civ. 7433 (LAP)<br><br>MEMORANDUM & ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

　　Before the Court is a request by Defendant Alan Dershowitz ("Mr. Dershowitz") to modify the protective order entered in Giuffre v. Maxwell, No. 15 Civ. 7433 (S.D.N.Y.), to permit him access to "all filings and discovery materials, including third-party discovery" from that case.  (See Dershowitz Letter Requesting Pre-Motion Conference on Motion to Modify the Protective Order ("Dershowitz June 12 Letter"), dated June 12, 2020 [dkt. no. 133 in 19 Civ. 3377].)  Mr. Dershowitz originally sought the Court's leave to fully brief a motion to modify the protective order in Maxwell pursuant to Rule 2.A of this Court's individual practices.  The parties from both Giuffre v. Dershowitz, No. 19 Civ. 3377

1

(S.D.N.Y.), and Maxwell submitted a number of letters in response to Mr. Dershowitz's request and participated in oral argument on June 23, 2020.[1]  In light of that developed record, the Court elects to rule on Mr. Dershowitz's request on the merits without further briefing.

For the reasons that follow, Mr. Dershowitz's request is denied.  In addition, the Court rules that certain discovery materials from the Maxwell case are not properly in possession of Plaintiff Virginia Giuffre's ("Ms. Giuffre") current counsel and thus must be destroyed under the plain terms of the Maxwell protective order.

### 1. The Maxwell Protective Order

At the heart of the dispute is the protective order entered in Maxwell by Judge Robert W. Sweet.  (See Protective Order (the "Maxwell Protective Order"), dated March 17, 2016 [dkt. no. 62 in 15 Civ. 7433].)[2]

---

[1] (See Giuffre Response to Dershowitz Letter ("Giuffre June 17 Letter"), dated June 17, 2020 [dkt. no. 141 in 19 Civ. 3377]; Maxwell Response to Dershowitz Letter, dated June 17, 2020 [dkt. no. 1059 in 15 Civ. 7433]; Dershowitz Reply to June 17 Giuffre Letter, dated June 18, 2020 [dkt. no. 142 in 19 Civ. 3377]; Dershowitz Reply to June 17 Maxwell Letter, dated June 18, 2020 [dkt. no. 1060 in 15 Civ. 7433]; John Doe Response to Dershowitz Letter, dated June 22, 2020 [dkt. no. 1062 in 15 Civ. 7433]; Transcript of June 23 Oral Argument ("Transcript"), dated June 26, 2020 [dkt. no. 1069 in 15 Civ. 7433].)
[2] Given the parties' familiarity with them, the Court will not otherwise recount the facts underlying either the Maxwell or the Dershowitz action.

2

The Maxwell Protective Order, despite the angst it is now causing, is unremarkable in form and function. Like many protective orders, Judge Sweet entered the Maxwell Protective Order in 2016 to "protect the discovery and dissemination of confidential information or information that will improperly annoy, embarrass, or oppress any party, witness, or person providing discovery in [Maxwell]." (Id.) The order accordingly permits the parties to designate as CONFIDENTIAL certain materials produced in discovery that "are confidential" and that implicate "common law and statutory privacy interests" of Ms. Giuffre and Maxwell Defendant Ghislaine Maxwell ("Ms. Maxwell"). (Id. ¶ 3.) Under the order, materials properly marked CONFIDENTIAL "shall not be disclosed or used for any purpose except the preparation and trial of [Maxwell]," (id. ¶ 4), and may only be disclosed to specific enumerated groups, including "attorneys actively working on this case" and "persons regularly employed or associated with the attorneys who are working on this case," (id. ¶¶ 5(a)-(h)). The Maxwell Protective Order further provides that, upon the conclusion of the Maxwell litigation, all materials (or copies of materials) designated CONFIDENTIAL shall be returned to the party that designated them CONFIDENTIAL or, alternatively, destroyed. (Id. ¶ 12.)

**2. Cooper & Kirk's Possession of the <u>Maxwell</u> Materials**

Before getting to the heart of the matter, i.e., Mr. Dershowitz's request, the Court was troubled to learn at the June 23 oral argument that replacement counsel for Ms. Giuffre, Cooper & Kirk, had received from Ms. Giuffre's former counsel, Boies Schiller Flexner,[3] the <u>Maxwell</u> materials at issue in their entirety.  Asked to explain how those materials came into the firm's possession, attorneys from Cooper & Kirk explained that they had obtained access to the materials because Ms. Giuffre retained them "both to represent her in [<u>Giuffre v. Dershowitz</u>] and to represent her in conjunction with the Boies Schiller firm in the <u>Maxwell</u> case."  (Transcript at 9:15-19.)

The Court is not privy to the full details of Ms. Giuffre's arrangement with Cooper & Kirk, but, in any event, they would do little to obviate the Court's concern.  The <u>Maxwell</u> Protective Order "must be interpreted as it[s] plain language dictates." <u>Geller v. Branic Intern. Realty Corp.</u>, 212 F.3d 734, 738 (2d Cir. 2000)(quoting <u>City of Hartford v. Chase</u>, 942 F.2d 130, 135 (2d Cir. 1991)).  And, whatever Cooper & Kirk's intentions in requesting and obtaining the <u>Maxwell</u> materials from Boies

---

[3] This Court disqualified Boies Schiller Flexner from continued representation of Ms. Giuffre in its October 16, 2019 Opinion & Order.  (<u>See</u> Opinion & Order re: Defendant's Motion to Disqualify Counsel for Plaintiff and to Dismiss the Complaint, dated October 16, 2019 [dkt. no. 67].)  Ms. Giuffre retained Cooper & Kirk to represent her shortly thereafter.

4

Schiller, the Maxwell Protective Order explicitly provides that (1) discovery materials designated CONFIDENTIAL cannot be disclosed or used outside of the confines of the Maxwell action and (2) that properly designated discovery materials may only be disclosed to specific groups of individuals, including attorneys "actively working on" the Maxwell litigation.  (See Maxwell Protective Order, ¶¶ 4, 5(a).)

Cooper & Kirk is sunk on either score.  As a practical matter, the Court would be surprised--shocked, even--if Cooper & Kirk was not in some sense "using" the Maxwell discovery in its representation of Ms. Giuffre in her action against Mr. Dershowitz.  And, even if it was not doing so, Cooper & Kirk is not "actively working on" the Maxwell matter such that disclosure of discovery materials to it would be permissible under the plain terms of the protective order.  (See id.)  First, the Maxwell Protective Order governs the "preparation and trial" of Ms. Giuffre's since-settled claims against Ms. Maxwell, (id. ¶ 4), meaning Cooper & Kirk necessarily cannot play an active role in litigating them.  Second, even assuming arguendo that the Maxwell Protective Order could permit the disclosure to Cooper & Kirk, and despite Cooper & Kirk's representation that it was retained to represent Ms. Giuffre in Maxwell, the firm has not, from what the Court can tell, been actively working on the case.  To wit, no Cooper & Kirk attorney has entered an appearance in Maxwell, no Cooper & Kirk attorney

5

has attended any of the (numerous) conferences that have taken place in that matter since the firm was retained by Ms. Giuffre, and no Cooper & Kirk attorney has filed any letter, brief, or motion with the Court. Whatever Cooper & Kirk's participation in the Maxwell unsealing litigation, it does not appear to be "active."

Accordingly, the Court concludes that Cooper & Kirk's possession of the Maxwell discovery materials violates the plain terms of the Maxwell Protective Order.[4] All of those materials and any material, including work product, derived from the Maxwell materials (other than the deposition of Ms. Giuffre in Maxwell[5]) shall be destroyed. Counsel shall submit an affidavit detailing the steps taken to do so. Furthermore, to the extent that it is doing so, Cooper & Kirk shall cease use of the Maxwell materials in its preparation of Ms. Giuffre's action against Mr. Dershowitz.

---

[4] The Court also notes, as Mr. Dershowitz's counsel did at oral argument on June 23, that it would be unfair for Ms. Giuffre's counsel to have access to the Maxwell discovery materials while Mr. Dershowitz does not. While the Court rejects Mr. Dershowitz's request to modify the Maxwell Protective Order, it will not in the same breath force him to litigate this action with one arm tied behind his back.

[5] At a hearing before the Court on December 2, 2019, the Court ordered Ms. Giuffre to turn over her deposition transcript from Maxwell to Mr. Dershowitz. (See Transcript at 21:2-7.)

3. **Mr. Dershowitz's Request to Modify the Maxwell Protective Order**

As mentioned above, see supra at 1, Mr. Dershowitz seeks to modify the Maxwell Protective Order to gain access to all materials from that litigation. The Court concludes that modification is not justified for a number of reasons.

The Court of Appeals has held that where there has been reasonable reliance by a party or non-party in providing discovery pursuant to a protective order, a district court should not modify that order "absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need." S.E.C. v. TheStreet.com, 273 F.3d 222, 229 (2d Cir. 2001). In determining whether such extraordinary circumstances exist, the Court considers several factors, including: (1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order. In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig., 255 F.R.D. 308, 318 (D. Conn. 2009).

At a broad level, Mr. Dershowitz has simply not demonstrated the existence of an "extraordinary circumstance or compelling need," TheStreet.com, 273 F.3d at 229, that counsels in favor of modification. The thrust of Mr. Dershowitz's request is that wholesale production of the Maxwell materials to him will "promote

7

efficiency and avoid duplication" in his defense of Ms. Giuffre's claims.  (See Dershowitz June 12 Letter.)  That is all well and good, but while "fostering judicial economy and avoiding duplicative discovery are laudable goals . . . they hardly amount to extraordinary circumstances or compelling need." Md. Cas. Co. v. W.R. Grace & Co., No. 83 Civ. 7451 (SWK), 1994 WL 419787, at *9 (S.D.N.Y. Aug. 10, 1994).

Moreover, the Court is not convinced that the production of the Maxwell materials to Mr. Dershowitz would even vindicate those important objectives beyond making life easier for Mr. Dershowitz. The sheer breadth of Mr. Dershowitz's request is worth reiterating: he seeks "all filings and discovery materials, including third-party discovery" from the Maxwell litigation, a years-long affair with over a thousand docket entries.  (Dershowitz June 12 Letter (emphasis added)).  In other words, it is not a targeted strike that Mr. Dershowitz proposes, but a carpet bombing.  And, while Mr. Dershowitz contends it is "obvious" that Ms. Giuffre "has made relevant . . . all of the discovery from Maxwell,"" he has not beyond conclusory assertions demonstrated a congruence between the Maxwell action and his own that would warrant such an indiscriminate approach.

A brief comparison of the Maxwell and Dershowitz actions makes this clear.  Ms. Giuffre's now-settled action against Ms. Maxwell

8

alleged that Ms. Maxwell was a ringleader in Jeffrey Epstein's sex-trafficking scheme, a trusted lieutenant of Epstein's who facilitated his purported trafficking of underage girls to prominent individuals. Ms. Giuffre's defamation action against Mr. Dershowitz alleges that Mr. Dershowitz was one of the prominent individuals who took advantage of Epstein and Ms. Maxwell's trafficking scheme and that Ms. Giuffre was forced to have intercourse with Mr. Dershowitz when she was underage. Ms. Giuffre alleges that Mr. Dershowitz's false denial of such contact defamed her. To be sure, the two actions are related because they involve the alleged behavior of individuals who were in Epstein's substantial orbit, but they are not coextensive, and Ms. Giuffre's action against Mr. Dershowitz relates primarily to a much narrower range of conduct than what was at issue in her action against Ms. Maxwell. The Court is thus skeptical that judicial economy would be served by handing Mr. Dershowitz a mountain of discovery from a separate case that may not even be relevant to his defense or to his counterclaims against Ms. Giuffre.

Furthermore, the requested modification might not serve the interests of judicial economy because it would threaten to undercut the ongoing unsealing process in Maxwell. The Court spent months, with substantial input from the parties, fashioning a procedure for unsealing the Maxwell filings that properly takes into account the privacy interests of the scores of third parties named in those

9


documents. (See dkt. nos. 1026-1044 in 15 Civ. 7433.) That process involves actively soliciting objections from non-parties and extensive briefing from the parties in response to those objections. (See Unsealing Protocol, dated March 31, 2020 [dkt. no. 1044 in 15 Civ. 7433].) Critically, the agreed-upon unsealing procedure can only work as intended if non-parties are willing to participate. Handing over to Mr. Dershowitz all of the materials from Maxwell, which would necessarily include all of the sealed filings that are the subject of the unsealing protocol, would threaten that balance. Non-parties may question the legitimacy of that process if Mr. Dershowitz can obtain, without any regard whatsoever for their interests, the sealed materials for the mere reason that disclosure would make mounting his defense and litigating his counterclaims against Ms. Giuffre more convenient. The Court will not risk collateral damage to the Maxwell unsealing process by modifying the protective order.[6]

---

[6] Bubbling underneath the debate about modification of the Maxwell Protective Order is a more practical concern: the temptation that the Maxwell materials might inspire for a litigant in Mr. Dershowitz's position. As a general matter, Mr. Dershowitz's battle with Ms. Giuffre has proceeded in very public--and frequently toxic--fashion. See, e.g., Alan Dershowitz Twitter Posts from June 22, 2020, available at https://twitter.com/AlanDersh (suggesting that Ms. Giuffre should be "prosecuted and sent to prison" for perjury). More importantly, and perhaps reflecting Mr. Derhsowitz's desire to defend himself in the public eye, Counsel for Mr. Dershowitz noted at oral argument that "Professor Dershowitz obviously wants all

(Footnote continues on following page.)

Finally, to the extent that an analysis of the EPDM factors is necessary, see supra at 7, the Court concludes that the fourth factor--the nature of reliance on the order by producing parties--alone justifies rejecting Mr. Dershowitz's request for modification.  Integral to this conclusion is the fact that the Maxwell Protective Order prohibits information designated as CONFIDENTIAL from being "disclosed or used for any purpose except for the preparation and trial of [the Maxwell] case."  (Maxwell Protective Order ¶ 4.) This provision functioned as a powerful mechanism for inducing parties to provide discovery in a contentious litigation.  Indeed, this Court has gone so far as to describe similar clauses as "key provision[s]" of their respective protective orders.  Jose Luis Pelaez, Inc. v. Scholastic, Inc.,

---

(Continued) information [contained in the Maxwell materials] to be out there, to be public . . . because he believes it exonerates him."  (Transcript at 21:21-24.)

    This raises concerns for reasons that should be obvious.  While the Court does not believe that Mr. Dershowitz would do anything so brazen as purposely to publicize the Maxwell sealed materials, the fact that he is defending his reputation might incent him, naturally, to be more cavalier with the sealed materials where they are helpful to him.  The potential for this has already reared its head--Mr. Dershowitz's June 12 letter requesting modification arguably contained public characterizations of the sealed materials, a fact that "troubled" Ms. Giuffre, (Giuffre June 17 Letter).  Thus, given the public character of this litigation and what is at stake for the litigants, production of the Maxwell materials to Mr. Dershowitz would raise additional risk of leakage from the materials at issue in the Maxwell unsealing process into filings in the Dershowitz action.  This would further undermine the unsealing process in Maxwell.

11

312 F. Supp. 3d 413, 417 (S.D.N.Y. 2018).  The presence of such provisions accordingly proves critical to the modification analysis--that producing parties are "justified in believing that a protective order would not be modified for purposes external to the lawsuit in which it was entered" may be a dispositive factor in denying modification of a protective order.  Nielsen Co. (U.S.), LLC v. Success Sys., Inc., 112 F. Supp.3d 83, 121 (S.D.N.Y. 2015); see also Jose Luis Pelaez, 312 F. Supp. 3d at 416-17.

    Here, there is no question that the plain terms of the Maxwell Protective Order would justify such an expectation.  The Maxwell Protective Order incentivized parties to provide sensitive information in discovery by explicitly promising that said information would only be wielded in connection with litigating the claims at issue in that case and that case only.  Had the parties producing discovery in Maxwell under the auspices of the protective order anticipated that their information could eventually be turned over to make litigation of a related, but entirely separate, case more convenient, they may have never produced information in the first place.  The Court accordingly concludes that such reliance on the Maxwell Protective Order precludes modification.

CONCLUSION

For the reasons discussed above:

(1) Cooper & Kirk shall destroy (a) all materials from Giuffre v. Maxwell, No. 15 Civ. 7433, currently in its possession, save for the transcript of Ms. Giuffre's deposition in that case and (b) all work product derived from the Maxwell materials.  Cooper & Kirk shall submit to the Court an affidavit detailing the steps that it took to destroy the materials. In addition, to the extent it is doing so, Cooper & Kirk shall cease all use of the Maxwell materials--outside of Ms. Giuffre's deposition transcript--in its work on Ms. Giuffre's action against Mr. Dershowitz.

(2) Mr. Dershowitz's request to modify the Maxwell Protective Order [dkt. no. 133 in 19 Civ. 3377] is denied.

**SO ORDERED.**

Dated:    New York, New York
          July 1, 2020

_____
LORETTA A. PRESKA
Senior United States District Judge