

Haddon, Morgan and Foreman, P.C
Ty Gee

150 East 10th Avenue
Denver, Colorado 80203
PH 303.831.7364  FX 303.832.2628
www.hmflaw.com
tgee@hmflaw.com

July 29, 2020

Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: Reconsideration of the Court's July 23 Ruling
    *Giuffre v. Ghislaine Maxwell*, No. 15 Civ. 7433 (LAP)

Dear Judge Preska:

As counsel for Ms. Maxwell we write to request that the Court vindicate its Protective Order and punish its violation. Ms. Maxwell's two deposition transcripts were designated "Confidential" and subject to the protection of the Protective Order. Both transcripts ended up in the hands of the government, which used them to bring an indictment against Ms. Maxwell, charging her with, among other things, perjury in her deposition testimony. This is a serious violation of the Protective Order, and merits the commencement of contempt proceedings.

We also write to seek reconsideration of the Court's July 23, 2020 ruling concluding that the transcripts of Ms. Maxwell's April 2016 deposition and Doe 1's deposition should be unsealed in their entirety (with the exception of non-party names). We recognize that a reconsideration motion is an extraordinary request, but we suggest it is appropriate under the circumstances. There are new facts since Ms. Maxwell lodged her objections to the unsealing of the transcript of her deposition, and there is a need to correct clear error or prevent manifest injustice relating to the unsealing of the transcript.

We respectfully request that the Court keep sealed Ms. Maxwell's and Doe 1's deposition transcripts and any sealed or redacted order or paper that quotes from or discloses information from the transcripts ("deposition material"). We do not seek unnecessary delay; however, if the Court denies our request for reconsideration, we do wish to seek relief from the Second Circuit. Accordingly, in the event the Court denies this reconsideration request, we ask that the Court stay any unsealing of the deposition material for at least two business days to give us time to apply to the Second Circuit for a stay of the unsealing order pending appeal. As the

Honorable Loretta A. Preska
July 29, 2020
Page 2

courts have recognized, temporary stays of unseal orders are appropriate so that "[t]he genie is [not] out of the bottle," *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004), before the interested parties have an opportunity to seek review of the orders. *See, e.g.*, *United States v. Martoma*, No. S1 12 CR 973 PGG, 2014 WL 164181, at *8 (S.D.N.Y. Jan. 9, 2014) ("The Court stays immediate disclosure of these materials to permit Defendant to make application to the U.S. Court of Appeals for the Second Circuit for a more extended stay."); *Brown v. Maxwell,* 929 F.3d 41, 54 (2d. Cir. 2019) (recognizing likelihood of future appeals in this matter).

**1. There are new, intervening and significant facts since briefing closed on the first round of review of sealed materials.** After many months of relentless negative media coverage of Mr. Epstein and allegations that Ms. Maxwell was involved in his criminal activities, the government secured an indictment against her. On July 2, one day after Ms. Maxwell filed her reply in support of her objection to unsealing documents containing references to Does 1 and 2, the government staged a dramatic, forced entry at dawn into her home and arrested her. EXHIBIT A, at 3.

Immediately after Ms. Maxwell's arrest, Acting U.S. Attorney Audrey Strauss held a press conference and made numerous comments attacking Ms. Maxwell's credibility and expressing her opinion of Ms. Maxwell's guilt, e.g., that she was guilty of "l[ying]" in her deposition "because the truth, as alleged, was almost unspeakable." *Id.* Plaintiff's counsel piled on, offering their own opinions about Ms. Maxwell's guilt. For example, Mr. Edwards opined that Ms. Maxwell was "a main facilitator" of Mr. Epstein's crimes who "started the whole thing." *Id.* Ms. McCawley praised the prosecutors: "[They] have done an incredible job and they're being very meticulous, they want to make sure that the Indictments stick. . . . They took a lot of time to be very careful and thoughtful and that gives me a lot of hope that [Ms. Maxwell] will remain in prison for the remainder of her life. . . . [Ms. Maxwell] was really the central figure . . . ." *Id.* at 6.

Ms. Maxwell's motion for an order barring such extrajudicial comments led Judge Nathan to admonish "counsel for all involved parties [to] exercise great care to ensure compliance with this Court's local rules, including Local Criminal Rule 23.1, and the rules of professional responsibility." EXHIBIT B. She further "warn[ed] counsel and agents for the parties and counsel for potential witnesses that going forward it will not hesitate to take appropriate action in the face of violations of any relevant rules." *Id.* Judge Nathan said she would ensure "strict compliance" with the rules and "ensure that the Defendant's right to a fair trial will be safeguarded." *Id.*

On July 8 the government filed a superseding indictment alleging that Ms. Maxwell "assisted, facilitated, and contributed" to Mr. Epstein's abuse of minors. The indictment quickly turned to this civil action, alleging that in 2016 Ms. Maxwell made "efforts to conceal her conduct"

Honorable Loretta A. Preska
July 29, 2020
Page 3

by "repeatedly provid[ing] false and perjurious statements" in deposition testimony. EXHIBIT C ¶ 8.

Quoting verbatim from Ms. Maxwell's April 2016 deposition transcript, the indictment alleges Ms. Maxwell gave false testimony (a) when she testified "I don't know what you're talking about" in response to a question whether Mr. Epstein "ha[d] a scheme to recruit underage girls for sexual massages . . . [i]f you know"; and (b) when she testified, "I'm not aware of anybody that I interacted with [other than plaintiff] who was 17 at this point." *Id.* ¶ 21. None of these questions and answers was used in the summary judgment papers or released by the Second Circuit. The transcript containing this testimony is sealed.

**2. The Court should commence proceedings to vindicate the government and plaintiff's violation of the Protective Order.** Only two parties—plaintiff and Ms. Maxwell—and their counsel had proper access to the transcripts of Ms. Maxwell's deposition. The transcripts, which were designated "Confidential," were the subject of the Protective Order strictly limiting the persons to whom the parties may disclose "Confidential"-designated documents. For example, the parties could only disclose such documents to "attorneys actively working on this case" and "persons regularly employed or associated with the attorneys who are working on this case." Doc.62, *quoted in* Doc.1071 at 3. This language was negotiated by the parties to specifically *exclude* an exception for investigations by law enforcement.

On February 26, 2016, counsel for plaintiff proposed protective order language that would have allowed for a "law enforcement" exception: Paragraph I(a)4 of plaintiff's draft proposed that: "CONFIDENTIAL information shall not be disclosed or used for any purpose except the preparation and trial of this case and any related matter, including but not limited to, investigations by law enforcement." *See* Exhibit D at 3. This language was rejected by Ms. Maxwell because of her concerns that plaintiff and her lawyers were acting as either express or *de facto* agents of the Government. The language agreed upon, and made an Order of this Court specifically excluded an exception for law enforcement. Had the language not been made an order of the Court, Ms. Maxwell would have proceeded in a different fashion. She relied on this language and the protection afforded to her by this Court under established Second Circuit law.

In its Order dated July 1, 2020, the Court said it was "troubled" to learn that plaintiff's successor counsel, Cooper & Kirk, had received from plaintiff's former counsel, Boies Schiller Flexner, various discovery materials that were subject to the Protective Order. Doc.1071 at 4. The Court rejected Cooper & Kirk's suggestion that it properly was a recipient of the material:

> [W]hatever Cooper & Kirk's intentions in requesting and obtaining the *Maxwell* materials from Boies Schiller, the *Maxwell* Protective Order explicitly provides that (1) discovery materials designated CONFIDENTIAL cannot be

Honorable Loretta A. Preska
July 29, 2020
Page 4

> disclosed or used outside of the *Maxwell* action and (2) that properly designated discovery materials may only be disclosed to *specific groups of individuals*, including attorneys "actively working on" the *Maxwell* litigation.

Doc.1071 at 4-5 (emphasis supplied)

Five things are plain. **One**, as the indictment and superseding indictment establish, the government has a copy of the transcripts from Ms. Maxwell's April and July 2016 depositions, both of which were designated "Confidential." **Two**, the government had no ability legally to obtain the deposition transcripts. In *Martindell v. International Telephone and Telegraph Corp.*, 594 F.2d 291, 293 (2d Cir. 1979), *cited with approval in In re Teligent, Inc.*, 640 F.3d 53, 58 (2d Cir. 2011), the government moved in a civil action to which it was not a party for access to transcripts of depositions twelve witnesses, including some of the civil defendants. The government said it was investigating possible violations of federal criminal laws, including perjury, subornation of perjury, obstruction of justice and conspiracy. The government:

> speculated that the pretrial deposition testimony might be relevant to its investigation into matters similar to those that had been the subject of the *Martindell* action and might be useful in appraising the credibility, accuracy and completeness of testimony given by witnesses in the Government's investigation or might provide additional information of use to the Government. The Government, moreover, feared that unless it could obtain the deposition transcripts, it would be unable to secure statements from the witnesses because they would claim their Fifth Amendment rights in any investigative interviews by the Government.

594 F.2d at 293. The district court denied the government's request, holding that "the deposition testimony had been given in reliance upon the protective order, thus rendering unnecessary invocation by the witnesses of their Fifth Amendment rights, that the requested turnover would raise constitutional issues, and that principles of fairness mandated enforcement of the protective order." *Id.* The Second Circuit affirmed:

> In the present case the deponents testified in reliance upon the Rule 26(c) protective order, absent which they may have refused to testify. . . . [T]he witnesses were entitled to rely upon the terms of a concededly valid protective order and Judge Conner did not abuse his discretion in refusing to vacate or modify that order.

*Id.* at 296-97.

**Three**, the government did not obtain a copy of the deposition transcripts from Ms. Maxwell or her counsel. **Four**, following plaintiff's counsel's admitted violation of the Protective Order

Honorable Loretta A. Preska
July 29, 2020
Page 5

earlier this month, it is clear now that there has been a *second* violation of the Protective Order in a manner consistent with the plaintiff's intent and goals—namely, the prosecution of Ms. Maxwell and the pursuit of a sentence that would imprison her "for the remainder of her life," EXHIBIT A, at 3. **Five**, no one should be permitted to violate this Court's Protective Order with impunity.

As it did in connection with plaintiff's violation of the Protective Order via her attorneys, the Court should enter orders to determine the nature and extent of the violation of the Order, identify those persons who violated the Order, and impose appropriate sanctions. Until this process is completed, the Court should stay any disclosure of the transcripts of Ms. Maxwell's deposition and deposition material. We respectfully submit that in the event the Court finds a violation of the Protective Order, this Court should direct the government to return to the Court any copies of the deposition transcripts and enter an order to show cause why the person(s) who violated the Order should not be held in contempt. *See, e.g.*, *Blum v. Schlegel*, 108 F.3d 1369 (2d Cir. 1997); *Hunt v. Enzo Biochem, Inc.*, 904 F. Supp. 2d 337, 340 (S.D.N.Y. 2012).

**3. The indictment provides a compelling reason not to unseal the transcript of Ms. Maxwell's deposition.** That Ms. Maxwell was under criminal investigation, the Court ruled, "is not entitled to much weight here." Tr. of July 23 Hearing, at 5. The Court said Ms. Maxwell had not explained how the sealed material could inappropriately influence potential witnesses or victims. *Id.* The effect of Ms. Maxwell's indictment, arrest, upcoming trial and of Judge Nathan's efforts to ensure a fair trial was not discussed in our objections since none of these things had happened before briefing was closed.

Two cases are instructive. In each the courts indicated that in deciding whether to unseal materials it was important to give weight to the impact on a criminal defendant's right to a fair trial. In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978), a number of media moved the district court to release audio tapes admitted into evidence in the trial of four of President Nixon's former advisors. The media intended to copy the tapes for broadcasting and sale to the public. District Judge Sirica denied the motion, principally on the ground that the rights of the four defendants, who had been convicted and had filed notices of appeal, would be prejudiced if they prevailed in their appeals. 435 U.S. at 595, 602 n.14. Judge Sirica noted that the transcripts of the audio tapes had been released to the public. *Id.* at 595. The D.C. Circuit Court of Appeals held Judge Sirica abused his discretion.

The Supreme Court reversed the court of appeals and rejected the media's arguments that release of the tapes was required under the common law right of access and the First Amendment. The Court noted apparently with approval that (a) "Judge Sirica's view" that "the public's 'right to know' did not . . . overcome the need to safeguard the defendants' rights on appeal," and (b) "Judge Sirica's principal reason for refusing to release the tapes

Honorable Loretta A. Preska
July 29, 2020
Page 6

[was] fairness to the defendants, who were appealing their convictions." *Id.* at 595, 602 n.14. The Court indicated that the public interest in access to the tapes properly was balanced against "the duty of the courts," *id.* at 602, including the duty to ensure fairness to the defendants, *see id.* at 602 n.14.

In *In re New York Times Co.*, 828 F.2d 110 (2d Cir. 1987), *cited with approval in United States v. Longueuil*, 567 Fed. App'x 13, 16 (2d Cir. 2014), Judge Weinstein denied the media's motion to unseal papers filed in connection with an unsuccessful defense motion to suppress evidence obtained by electronic surveillance. He found that "defendants' interest in a fair trial and the interests of third parties [referenced in] the motion papers justified continued sealing of the papers." 828 F.2d at 112; *see id.* at 112 (defendants opposed unsealing on the grounds it would prejudice their Sixth Amendment right to a fair trial, their privacy rights, and third parties' privacy rights). The Second Circuit vacated the order in part because "the wholesale sealing" of the motion papers was "more extensive than necessary to protect defendants' fair trial rights, their privacy rights, and the third persons' privacy interests. *Id.* at 116. The court noted, "now that the jury has been impaneled, defendants' fair trial rights can certainly be adequately protected by sequestration." *Id.*

In *Nixon* and *New York Times*, the courts properly were concerned about the effect of unsealing materials notwithstanding that they were core judicial documents—audio tapes admitted into evidence at the merits trial and motion papers seeking suppression of evidence which the judge denied. And the courts continued to hold these concerns even after the defendants had been convicted and had launched appeals (*Nixon*) and after the petit jury had been empaneled (*New York Times*).

The courts have recognized that the right to a fair criminal trial is a compelling interest in "weighing the interests advanced by the parties in light of the public interests and the duty of the courts," *Nixon*, 435 U.S. at 602. *See United States v. Cicale*, No. 05-CR-60-2 (NGG), 2018 WL 388941, at *3 (E.D.N.Y. Jan. 11, 2018) ("Compelling interests warranting closure of a courtroom—and, by extension, sealing of court documents—'may include the defendant's right to a fair trial . . . .'") (quoting with alterations *United States v. Doe*, 63 F.3d 121, 128 (2d Cir. 1995)); *United States v. Martoma*, No. S1 12 CR 973 PGG, 2014 WL 164181, at *4 (S.D.N.Y. Jan. 9, 2014) ("A court's conclusion that a qualified First Amendment right of access to certain judicial documents exists does not end the inquiry, however. 'Courts must balance the right [of access] against other important values, like the Sixth Amendment right of the accused to a fair trial . . . and the defendant's . . . privacy interests.'") (internal quotations omitted; quoting *United States v. Rajaratnam*, 708 F. Supp. 2d 371, 374-75 (S.D.N.Y. 2010)); *Travelers Indem. Co. v. Excalibur Reins. Corp.*, 3:11-CV-1209 CSH, 2013 WL 4012772, at *3 (D. Conn. Aug. 5, 2013) ("The public's right to access court documents is not, however, absolute in that it may be surmounted by a party's showing that sealing will further other substantial interests, for example, a criminal defendant's right to a fair trial or a third party's privacy

interests."); *United States v. McVeigh*, 119 F.3d 806, 813 (10th Cir. 1997) (upholding district court's sealing of discovery materials deemed inadmissible at trial, holding that "disclosure of such [materials] would play a negative role in the functioning of the criminal process, by exposing the public generally, as well as potential jurors, to incriminating evidence that the law has determined may not be used to support a conviction"), *cited with approval in United States v. Avenatti*, (S1) 19 CR 373 PGG, 2020 WL 70952, at *3 (S.D.N.Y. Jan. 6, 2020).

Based on these cases, the Court may make specific findings supporting the sealing of Ms. Maxwell's deposition transcript: The Court may take judicial notice, as Judge Nathan herself may have, of the widespread negative media publicity and speculation directed at Mr. Epstein and Ms. Maxwell. *See Condit v. Dunne*, 317 F. Supp. 2d 344, 358 (S.D.N.Y. 2004). We attach a compilation of such articles in EXHIBIT E. The Court also may take judicial notice of Ms. Maxwell's arrest and indictment, and the government's charge against her based on her answers in a deposition transcript that was subject to this Court's Protective Order. The unsealing of Ms. Maxwell's deposition transcript would result in substantial negative media publicity and speculation in an internet world in the same way that Judge Sirica found release of the audio tapes in *Nixon* would generate publicity and affect those defendants' right to a fair trial. And the Court may take judicial notice of Judge Nathan's own concerns about the need for counsel for the parties and witnesses in the criminal case to comply with Local Criminal Rule 23.1 to "safeguard" and "protect [Ms. Maxwell's] right to a fair trial by an impartial jury," EXHIBIT C. The public's right of access to Ms. Maxwell's deposition transcript is substantially outweighed by the compelling interest in ensuring her right to a fair trial. Particularly is this true in light of the other countervailing interests discussed in our objection papers and below.

**4. The deposition transcripts obtained by the government and the indictment's perjury counts place in a new light plaintiff's earlier litigation conduct—suggesting the planned use of Ms. Maxwell's deposition as a perjury trap.** Throughout much of the first year of this litigation plaintiff through her counsel had represented to the Court and defense counsel that plaintiff was privy to and participating in an ongoing criminal investigation in which Ms. Maxwell was a "person of interest." Doc.101 at 2. Toward that end plaintiff withheld documents responsive to defense discovery requests for any documents relating to such a criminal investigation; plaintiff asserted such documents were subject to a law enforcement, "investigative" or public interest "privilege." *Id.* at 2-3. In response to Ms. Maxwell's motion to compel the production of documents, plaintiff submitted the "law enforcement materials" *ex parte* and *in camera* to the Court. Doc.128. Ms. Maxwell objected to the submission of the materials *ex parte* and *in camera*. Doc.130. The Court denied the motion to compel. Doc. 264-1. The materials never have been produced to the defense.

Based on plaintiff's claim of an ongoing investigation, Ms. Maxwell requested, prior to her deposition, that plaintiff disclose any alleged "on-going criminal investigation by law

enforcement" or alternatively to stay this action pending completion of any such investigation. Doc.101. In part, Ms. Maxwell needed information concerning any such investigation to assess "the impact on any 5th Amendment privilege." *Id.* at 2, 4-5. Judge Sweet denied that motion. The day before Ms. Maxwell's deposition, the Court ordered that "[a]ny materials that the plaintiff has with respect to any criminal investigations will be turned over [by plaintiff] except for any statements made by plaintiff to law enforcement authority." Tr. of Apr. 21, 2016 at 21. Plaintiff produced no such materials and Ms. Maxwell was deposed the next day. In reliance on the protective order which included no exception for any law enforcement need or subpoena and based on plaintiff's failure to disclose any "on-going criminal investigation," she did not assert the 5th Amendment during that deposition.

This background is given a new context in light of (a) the provision of the sealed transcripts to the government without court authorization and (b) the indictment and perjury charges lodged against Ms. Maxwell based upon the transcripts. Under *Martindell*, decided forty years ago and still binding precedent in this district, it is settled law that the government may not breach a protective order to gain access to deposition transcripts in a civil lawsuit. As the Second Circuit held in that case, the government "may not . . . simply by picking up the telephone or writing a letter to the court . . . insinuate itself into a private civil lawsuit between others." 594 F.2d at 294. The court rejected the government's argument that the district court's "solicitude for the witnesses' Fifth Amendment" over the government's desire for the deposition transcripts was an abuse of discretion. It held that "a more significant counterbalancing factor" is the civil rules' goal of encouraging witnesses to participate in civil litigation:

> Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences. In short, witnesses might be expected frequently to refuse to testify pursuant to protective orders if their testimony were to be made available to the Government for criminal investigatory purposes in disregard of those orders.

594 F.2d at 296. After balancing the interests at stake, the court held that absent improvidence in issuing the protective order or some extraordinary circumstance or compelling need, witnesses must be permitted to rely on the protective order's enforceability. *Id.* The protective order should not be vacated or modified "to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation, either as evidence *or as the subject of a possible perjury charge.*" *Id.* (emphasis supplied).

The procedural history of this litigation culminating in plaintiff's gratuitously attaching the entire transcripts of both Ms. Maxwell's depositions to court submissions, and leaking or

Honorable Loretta A. Preska
July 29, 2020
Page 9

causing someone to leak the transcripts to the government, which then charged Ms. Maxwell with perjury counts, suggest plaintiff in conjunction with the government sought to circumvent *Martindell*: they set a perjury trap for Ms. Maxwell when plaintiff took her deposition. Ms. Maxwell requests that this Court examine the law enforcement materials submitted *ex parte* and *in camera* in connection with its vindication of the Protective Order. In the meantime we respectfully submit it is appropriate to maintain the seal over the depositions.

**5. Ms. Maxwell's reliance on the Protective Order is entitled to substantial weight.** In its July 23 ruling the Court did not address a substantial ground Ms. Maxwell asserted in support of her objection to unsealing her deposition transcript. The first countervailing interest Ms. Maxwell presented was that she reasonably relied on the Protective Order in disclosing intimate information about her personal life. Doc.1057 at 4-5. As we pointed out, *id.* at 5, even without any evidentiary or other showing from an interested party, the Second Circuit in *Brown v. Maxwell* protected from disclosure "deposition responses concerning intimate matters where the questions were likely only permitted—and the responses only compelled—because of a strong expectation of continued confidentiality."929 F.3d 41, 48 n.22 (2d Cir 2019). The Protective Order was entered before Ms. Maxwell's deposition was taken; in fact plaintiff's counsel explicitly consented to the Order because "'I just want [Ms. Maxwell's] deposition . . . . It is that important to me.'" Doc.1073 at 8 (quoting Doc.66 at 9). The Court may make specific findings supporting the sealing of the transcript based on the information Ms. Maxwell supplied from the court submissions. *See id.* We incorporate by reference here the facts asserted and arguments made in the objection and reply in support of this countervailing interest.

For the foregoing reasons we respectfully request that the Court reconsider its decision to unseal (1) the transcripts of Ms. Maxwell's and Doe 1's depositions, and (2) court submissions excerpting from, quoting from or summarizing the contents of the transcripts.

Very truly yours,

Ty Gee

C: Counsel of Record *via* ECF