-------------------------------------------------X

VIRGINIA L. GIUFFRE,

     Plaintiff,

v.

GHISLAINE MAXWELL,

      Defendant.

-------------------------------------------------X

**15-cv-07433-RWS**

# MOTION TO COMPEL ALL ATTORNEY-CLIENT COMMUNICATIONS AND ATTORNEY WORK PRODUCT
## <u>PLACED AT ISSUE BY PLAINTIFF AND HER ATTORNEYS</u>

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
East 10th Avenue
Denver, CO 80203
303.831.7364

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

CERTIFICATE OF CONFERRAL ......................................................................................... 1

INTRODUCTION .................................................................................................................... 1

BACKGROUND FACTS RELEVANT TO DISPUTE ........................................................... 2

    1.  Correspondence re: Jane Doe #1 and Jane Doe #2 v. United States ................................... 2

    2.  Correspondence re: Giuffre v. Maxwell, 15-cv-07433-RWS ............................................ 2

    3.  Correspondence re: Bradley Edwards and Paul Cassell v. Alan Dershowitz ..................... 3

    4.  Correspondence re: Jane Doe No. 102 v. Jeffrey Epstein .................................................. 3

    5.  Categorical Entry re: correspondence potential legal action against entities and individuals 3

**I.    The Attorney-Client and Work Product Privilege Standards and Limitations** ............. 7

    *a.  The Attorney-Client Privilege* ........................................................................................... 7

    *b.  Work Product Privilege* ...................................................................................................... 7

**II.   Plaintiff and her Attorneys Waived Attorney-Client and Work Product Privileges by Putting Plaintiff's Representation At Issue in the Dershowitz Case** .............................. 8

    *a.  Plaintiff's Waiver of the Attorney-Client Privilege* .......................................................... 10

    *b.  Edwards and Cassell's Waivers of Attorney-Client and Work Product Privilege in the Dershowitz Case* ............................................................................................................... 15

    *c.  The elements for finding an at issue waiver are satisfied* .................................................. 18

**III.  There is No Privilege as to Communications with Scarola** ........................................... 22

    *a.  There is no Attorney-Client Relationship* ....................................................................... 22

    *b.  Work Product Privilege has been Waived* ...................................................................... 23

    *c.  There is no basis to claim common interest or joint defense privilege* ............................. 23

CONCLUSION ........................................................................................................................ 24

CERTIFICATE OF SERVICE .................................................................................................. 25

# TABLE OF AUTHORITIES

*Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 210 F.R.D. 506, 509-10 (S.D.N.Y. 2002) ....................................................................................................................... 9

*Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 488 (S.D.N.Y. 1993)....... 15, 21

*Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) ......................... 8

*Chevron Corp. v. Salazar*, 275 F.R.D. 437, 445-46 (S.D.N.Y. 2011) ........................................ 10

*Chin v. Rogoff & Co., P.C.*, No. 05 CIV. 8360(NRB), 2008 WL 2073934, at *6 (S.D.N.Y. May 8, 2008) ................................................................................................................................. 21

*Drimmer v. Appleton,* 628 F.Supp. 1249, 1252 (S.D.N.Y.1986)................................................. 20

*In re Horowitz,* 482 F.2d 72, 82 (2d Cir.) .................................................................................... 20

*In re von Bulow*, 828 F.2d ..................................................................................................... 15, 20

*In re. Steinhardt Partners,* 9 F.3d 230, 235 (2d Cir. 1993) ………………………………………9

*Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 39-40 (E.D.N.Y. 2013). .................... 9

*McGrath v. Nassau Cty. Health Care Corp.*, 204 F.R.D. 240, 244 (E.D.N.Y. 2001) .............. 9, 22

*Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir.2015)………………………………….........16

*S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 162 (S.D.N.Y. 2014).................................. 25

*United States ex rel Edney v. Smith,* 425 F.Supp. 1038, 1052 (E.D.N.Y. 1976) ......................... 20

*United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991 ............................................... 9, 15

*United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) ............................................................ 8

*United States v. Nobles,* 422 U.S. 225, 238 (1975). ....................................................... 9

*United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997) ........................................... 15

*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ................................................ 8

*Urban Box Office Network, Inc. v. Interfase Managers, L.P.,* No. 01 Civ. 8854, 2004 WL 2375819, at *3–4 (S.D.N.Y. Oct. 21, 2004) ........................................................... 10

*Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 391 (S.D.N.Y.2015) ........................................ 8, 24

Defendant Ghislaine Maxwell ("Ms. Maxwell") files this Motion to Compel All

Attorney-Client Communications and Attorney Work Product Placed At Issue By Plaintiff and

Her Attorneys ("Motion"), and as grounds therefore states as follows:

## CERTIFICATE OF CONFERRAL

Pursuant to Federal Rule of Civil Procedure 37(a)(1), undersigned counsel certifies that

she conferred with opposing counsel regarding the issues contained herein and was unable to

resolve the matter.

## INTRODUCTION

Plaintiff and her attorneys have tied a Gordian knot of overlapping litigations, client

representations and joint defense agreements. Through these multiple litigations and

representations, they attempt to strategically leverage attorney-client communications and

attorney work product to their tactical advantage by selectively disclosing information.

Simultaneously, they desperately seek to avoid disclosure of related materials they know are

unfavorable, would destroy Plaintiff's claim that she has been truthful, and reveal her attorneys'

knowledge of Plaintiff's false statements in multiple sworn filings and her concerted media

campaign. The law, however, does not permit such a manipulation of the attorney-client and

work product privileges. Rather, the selective disclosure of privileged materials results in a

waiver of privilege as to all such material. This waiver is broad-sweeping when, as here, the

persons asserting the privileges have affirmatively put the subject matter of the materials at issue.

In the most recent of their serial litigations (apart from this case), Plaintiff's own

attorneys Bradley Edwards ("Edwards) and Paul Cassell ("Cassell") sued Harvard Law Professor

Alan Dershowitz ("Dershowitz") for defamation in Florida state court. The subject matter of that

litigation concerned whether Mr. Dershowitz defamed Plaintiff's attorneys by claiming

a) Plaintiff is lying; b) Edwards and Cassell knew Plaintiff is lying; c) Edwards and Cassell helped

Plaintiff lie and helped her concoct her stories; d) Edwards and Cassell failed to properly investigate Plaintiff's allegations before filing pleadings and sworn statements on Plaintiff's behalf; and e) Edwards and Cassell were motivated to take these actions by a desire to achieve personal economic gain. This litigation put at issue all communications between Plaintiff and her attorneys as well as her attorneys' complete work product in the investigations of Plaintiff's stories and accusations. The truth of the matters put at issue in the Dershowitz litigation can only be tested by examination of privileged materials, resulting in a sweeping waiver.

## BACKGROUND FACTS RELEVANT TO DISPUTE

In her privilege log, Plaintiff has "categorically" logged five separate groups of documents she has withheld on the basis of "AC Privilege and Work Product/joint defense/common interest." The documents are identified as:

1.      Correspondence re: Jane Doe #1 and Jane Doe #2 v. United States, Case No. 08-80736-CIV-Marra, pending in the Southern District of Florida. ("CVRA Case")

Plaintiff withheld documents purportedly to and from her attorneys (and others) related to legal advice regarding the CVRA Case (to which Plaintiff is not a party), and documents purportedly giving attorney mental impressions related to the CVRA Case and "evidence" related thereto. Declaration of Laura A. Menninger ("Menninger Decl.."), Exhibit A.

   (i)  The date range of the documents is 2011 – Present. *Id.*
   (ii) Persons identified as involved in the communications are: Plaintiff Virginia Giuffre ("Giuffre"), Brad Edwards ("Edwards"), Paul Cassell ("Cassell"), Brittany Henderson ("Henderson"), Sigrid McCawley ("McCawley"), Meredith Schultz ("Shultz"), David Boies ("Boies"), Jack Scarola ("Scarola"), Stan Pottinger ("Pottinger"), Ellen Brockman ("Brockman"), Legal Assistants ("Legal Assistants"), Professionals retained by attorneys to aid in the rendition of legal advice and representation ("Other Professionals"). *Id.*

2.      Correspondence re: Giuffre v. Maxwell, 15-cv-07433-RWS, pending in the Southern District of New York ("Maxwell Case"). *Id.*

   (i)  The date range of the documents is September 21, 2015– Present. *Id.*

2

(ii) Persons identified as involved in the communications are: Giuffre, Edwards Cassell, Henderson, McCawley, Schultz, Boies, Pottinger, Stephen Zach ("Zach"), Brockman, Legal Assistants and Other Professionals. *Id.*

3.      Correspondence re: Bradley Edwards and Paul Cassell v. Alan Dershowitz ("Dershowitz Case"), Case No. 15000072, pending in the Seventeenth Judicial Circuit, Broward County, Florida. ("Dershowitz Case"). *Id.*

(i)  The date range of the documents is January 2015 -Present. *Id.*
(ii) Persons identified as involved in the communications are: Giuffre, Edwards Cassell, Henderson, McCawley, Schultz, Boies, Pottinger, Zach, Brockman, Legal Assistants and Other Professionals.  *Id.*

4.      Correspondence re: Jane Doe No. 102 v. Jeffrey Epstein ("Epstein Case"), Case No. 09-80656-CIV-Marra/Johnson (Southern District of Florida) ("Epstein case")

(i)  The date range of the documents is 2009 – Present
(ii) Persons identified as involved in the communications are: Giuffre, Bob Josefsberg, Katherine W. Ezell, Amy Ederi, other Podhurst attorneys, Legal Assistants, and Professionals retained by attorneys to aid in the rendition of legal advice.  *Id.*

5.      "This categorical entry is regarding correspondence potential legal action against entities and individuals." (same description re potential litigation)

(i)  The date range of the documents is from January 2015 –Present.
(ii) Persons identified as involved in the communications are: Giuffre, Edwards Cassell, Henderson, McCawley, Schultz, Boies, Pottinger, Zach, Brockman, Legal Assistants and Other Professionals.

Plaintiff is withholding "Approx. 1.3 kilobytes [of documents] overlapping with other cases" based on the categorically logged entries in Paragraph 1.

According to her most recent interrogatory response, Plaintiff has been represented in various litigation matters identified above as follows:

(a)      Pottinger, Boies, and McCawley (along with other Boies Schiller & Flexner LLP ("Boies Schiller") attorneys represent Ms. Giuffre as a non-party in the Dershowitz Case, starting in February 2015.

(b)      Edwards (along with other Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L. attorneys), Cassell, Pottinger, Boies and McCawley and Boies Schiller attorneys represent Ms. Giuffre in the Maxwell case, "the complaint of which was filed in September, 2015."  *Id.*

(c)     Cassell represents Ms. Giuffre as a non-party in the CVRA Case, starting in May of 2014.  *Id.*

(d)     Edwards and other Farmer, Jaffe attorneys represent Ms. Giuffre as a non-party in the CVRA Case, starting in 2011.  *Id.*

(e)     Cassell provided Ms. Giuffre with legal advice concerning potential legal action starting in early 2011.  *Id.*

(f)     Cassell, Edwards and other Farmer, Jaffe attorneys, Pottinger, Boies (along with other Boies Schiller attorneys) represent Ms. Giuffre regarding investigations into potential legal action starting in the second half of 2014.  *Id.*

(g)     According to Plaintiff, she has never been represented by Scarola.

Menninger Decl., Ex. B at 4.

<u>The CVRA Case</u>

In the CVRA Case, Edwards (starting in 2011) and Cassell (starting in May 2014) have represented Plaintiff in attempting to obtain joinder in the pending action.  On December 30, 2014, Cassell and Edwards filed a pleading titled "Jane Doe #3 and Jane Doe #4's Motion Pursuant to Rule 21 for Joinder in Action" in the CVRA Case. Menninger Decl., Ex C (the "Joinder Motion").  The Joinder Motion contained a number of allegations on behalf of "Jane Doe # 3," who is actually Ms. Giuffre, the Plaintiff in this case.  The allegations include that "Epstein also sexually trafficked the then-minor Jane Doe [#3], making her available for sex to politically-connected and financially-powerful people."  The "politically-connected and financially powerful people" identified by Edwards and Cassell by name in the Joinder Motion as having had sexual relations with Jane Doe #3 were Prince Andrew, Duke of York ("Prince Andrew"),  Ms. Maxwell, Jean Luc Brunel ("Brunel") and Alan Dershowitz ("Dershowitz"). *Id.* at 3-6.[1]

---

[1] The judge in the CVRA case subsequently struck these allegations, stating "[a]t this juncture in the proceedings, these lurid details are unnecessary to the determination of whether Jane Doe 3 and Jane Doe 4 should be permitted to join Petitioners' claim that the Government violated their rights under the CVRA. The factual details regarding with whom and where the Jane Does engaged in sexual activities are immaterial and impertinent to this central claim

Following the Joinder Motion, Dershowitz made numerous public appearances in which he vigorously denied the allegations, stated that Edwards and Cassell "are lying deliberately," and that if Cassell and Edwards "had just done an hours' worth of work, they would have seen she [Plaintiff] is lying through her teeth." *See* Menninger Decl., Ex. E at 9-10.

<u>The Dershowitz Case</u>

On January 6, 2015, Edwards and Cassell initiated litigation against Dershowitz - the Dershowitz Case. *See* Menninger Decl., Ex. F.

In the Dershowitz Case, Edwards and Cassell sued Dershowitz for defamation claiming that Dershowitz's public statements – that they and their client were lying and that they failed to investigate their client's claims – were false. The Complaint by Edwards and Cassell alleged that "[i]mmediately following the filing of what Dershowitz knew to be an entirely proper and well-founded pleading, Dershowitz initiated a massive public media assault on the reputation and character of Bradley J. Edwards and Paul G. Cassell accusing them of intentionally lying in their filing, of having leveled knowingly false accusations against the Dershowitz without ever conducting any investigation of the credibility of the accusations, and of having acted unethically to the extent that their willful misconduct warranted and required disbarment." Menninger Decl., Ex. F, ¶ 17.

Edwards and Cassell claimed as false Dershowitz's statements that "Edwards and Cassell failed to minimally investigate the allegations advanced on behalf of their client [Virginia Giuffre] and even that they sat down with her to contrive the allegations." Menninger Decl., Ex. E at 9. During the Dershowitz litigation, Edwards and Cassel responded to interrogatories and requests for production issued by Dershowitz. Menninger Decl., Ex. G. Interrogatory No.1 asked:

(i.e., that they were known victims of Mr. Epstein and the Government owed them CVRA duties), especially considering that these details involve non-parties who are not related to the respondent Government. These unnecessary details shall be stricken." *See* Menninger Decl., Ex. D.

"State verbatim or as close as possible Each statement by Dershowitz that You assert defamed You," to which Edwards and Cassel responded with nine pages of statements made by Dershowitz in the press where Dershowitz states: 1) Plaintiff is lying; 2) Edwards and Cassel know Plaintiff is lying; 3) Edwards and Cassel helped Plaintiff lie and "put words in her mouth"; and 4) Edwards and Cassel failed to properly investigate Plaintiff's allegations before publicizing Plaintiff's statements. Menninger Decl., Ex. G at 3-11.

Edwards and Cassell further stated that the listed Dershowitz press statements were defamatory because "[t]he factual assertions contained or implied in the statements quoted in answer to Interrogatory Number 1 were not true, notably with regard to claims that Edwards and Cassell were deliberately lying, had failed to conduct an investigation of the allegations before filing them, had manipulated or conspired with Jane Doe No. 3 to make intentionally false allegations about Mr. Dershowitz, and that Plaintiffs were motivated to participate in the filing of knowingly false accusations against the Defendant by a desire to achieve personal economic gain." Menninger Decl., Ex. G at 11, Response to Interrog. 2.

At the time the Dershowitz Case was filed, Edwards, Cassell and Boies represented Plaintiff regarding "potential litigations." *See supra* at ¶ 3f.

Plaintiff, Edwards and Cassell claim to be in a joint defense or common interest agreement relating to the Dershowitz Case (Menninger Decl., Ex. H at 205:19-206:7), although no such agreement has ever been produced.

Plaintiff and her counsel actively participated in the Dershowitz Case. Plaintiff provided a declaration in the Dershowitz Case in support of the claims against Dershowitz. Menninger Decl., Ex. I. Plaintiff also sat for a deposition in the Dershowitz Case and testified in a manner expected to support Edwards' and Cassell's claims. Menninger Decl., Ex. H. Her counsel filed 12 pleadings in that matter.

# I.    The Attorney-Client and Work Product Privilege Standards and Limitations

### a.    The Attorney-Client Privilege

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "In order to balance this protection of confidentiality with the competing value of public disclosure, however, courts apply the privilege only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable." *Mejia*, 655 F.3d at 132. Because the privilege "stands in derogation of the search for truth so essential to the effective operation of any system for justice ... the privilege must be narrowly construed." *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (citing *United States v. Nixon*, 418 U.S. 683, 710 (1974)). "The party invoking the privilege also has the burden to show that the privilege has not been waived." *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 391 (S.D.N.Y.2015).

### b.    Work Product Privilege

The work-product privilege protects documents either created by counsel or at counsel's directive, in anticipation of litigation. *See In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002,* 318 F.3d 379, 383 (2d Cir. 2003). The attorney work-product privilege "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles,* 422 U.S. 225, 238 (1975). Again, the party

asserting the work-product privilege "bears the heavy burden of establishing its applicability." *In re Grand Jury Subpoena Dated July 6, 2005,* 510 F.3d 180, 183 (2d Cir. 2007). Work product "includes both opinion work product, such as an attorney's mental impressions or legal theories, and fact work product, such as factual investigation results." *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 39-40 (E.D.N.Y. 2013), *aff'd,* 29 F. Supp. 3d 142 (E.D.N.Y. 2014). "Both the attorney-client and work-product privileges may be waived if a party puts the privileged communication at issue by relying on it to support a claim or defense." *Id.*

## II.     Plaintiff and her Attorneys Waived Attorney-Client and Work Product Privileges by Putting Plaintiff's Representation At Issue in the Dershowitz Case

"The [attorney-client] privilege may implicitly be waived when [a party] asserts a claim that in fairness requires examination of protected communications." *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991); *see also McGrath v. Nassau Cty. Health Care Corp.*, 204 F.R.D. 240, 244 (E.D.N.Y. 2001) ("Parties may waive any work product protection by putting the privileged information at issue"). Courts determine whether a subject matter has been placed at issue based on whether "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party to information vital to his defense." *Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 210 F.R.D. 506, 509-10 (S.D.N.Y. 2002) (*quoting Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D.Wash.1975)). "[C]ourts have generally applied the *Hearn* [at issue] doctrine liberally, finding a broad waiver of attorney-client privilege where a party asserts a position "the truth of which can only be assessed by examination of the privileged communication." *Bank Brussels Lambert*, 210 F.R.D. at 508.

After a party voluntarily discloses attorney-client communications or work-product information "to an adversary in one proceeding, it cannot withhold the same documents on the basis of privilege in a subsequent proceeding, even if that subsequent proceeding involves a different adversary." *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 445-46 (S.D.N.Y. 2011); *see also In re Steinhardt Partners,* 9 F.3d 230, 235 (2d. Cir. 1993) ("The waiver doctrine provides that voluntary disclosure of work product to an adversary waives the privilege as to other parties [in a subsequent proceeding].")); *Urban Box Office Network, Inc. v. Interfase Managers, L.P.,* No. 01 Civ. 8854, 2004 WL 2375819, at *3–4 (S.D.N.Y. Oct. 21, 2004) (applying same principle to waive attorney-client privilege). This, of course, makes sense because "where a party voluntarily undertakes actions that will predictably lead to the disclosure of [a] document, then waiver will follow." *Chevron Corp.*, 275 F.R.D. at 445-46 (*internal citations omitted).*

"The scope of the attorney-client privilege waiver is determined on a case by case basis by considering the context of the waiver and the prejudice caused to the other party by permitting partial disclosure of privileged communications." *McGrath*, 204 F.R.D. at 244 (E.D.N.Y. 2001) (citing *In re Grand Jury Proceedings*, 219 F.3d 175, 190 (2d Cir.2000)). "As in the attorney-client context, fairness and prejudice concerns define the scope of any work product waiver." *Id.* at 192. Factors considered by the Second Circuit to find a broad waiver appropriate include "(1) whether substantive information has been revealed; (2) prejudice to the opposing party caused by partial disclosure; (3) whether partial disclosure would be misleading to a court; (4) fairness; and (5) consistency." *Id.*

Edwards and Cassell sued Dershowitz for defamation claiming that Dershowitz's public statements about their representation of client were false.  At the time those claims were filed, Edwards and Cassell represented Plaintiff in the CVRA Case.  She was also represented by Edwards, Cassell and Boies regarding "potential litigation."  The statements Edwards and Cassell claimed as false included that "Edwards and Cassell failed to minimally investigate the allegations advanced on behalf of their client [Virginia Giuffre] and even that they sat down with her to contrive the allegations."  The allegations Edwards and Cassell failed to minimally investigate and/or contrived where the allegations made by Plaintiff in the CVRA Joinder Motion.  Dershowitz counterclaimed against Edwards and Cassell suing them for 1) the publication of the false allegations of Giuffre in the Joinder Motion and 2) defamation for their extra-judicial false statements concerning Dershowitz and his alleged involvement with Giuffre.

Plaintiff and her counsel McCawley actively participated in the Dershowitz Case and affirmatively waived any attorney-client privilege over Plaintiff's communications.  Plaintiff produced documents, sat for a deposition (Menninger Decl., Ex. H) and provided a sworn declaration (Menninger Decl., Ex. I). Through her participation in the case, Plaintiff specifically discussed her communications with Edwards and Cassell.  In her sworn declaration, she discussed the following attorney communications:

- Her conversation with Brad Edwards in 2011 when she first told him her story.  This was followed by a telephone conversation with Edwards and his attorney, Scarola, which was recorded with her knowledge and consent and which has been filed in multiple court papers and given to the press[2]  (Menninger Decl., Ex I at ¶ 55-56);

---

[2] Edwards participated in this call as Plaintiff's attorney.  Plaintiff believed that the conversation was covered by attorney-client privilege.  *See* Menninger Decl., Ex. J, (email between Plaintiff and Sharon Churcher crafting communication to Edwards regarding publication of privileged communication). Yet, when the conversation was sent to the press, and used in later court filings, Plaintiff did nothing to stop the publication of this privileged

- Her discussions with Edwards and Cassell of her representation in the CVRA Case (*id.* at ¶ 61);

- Her directions to counsel to pursue criminal charges (*id.* at ¶ 65);

- In her conversations with her attorneys "no one" has "pressured" her to identify Dershowitz as a person who allegedly abused her (*id.* at ¶ 67);

- Her authorization to her attorney to file various affidavits including her stories (*id.* at ¶ 67);

- Her attorneys' belief in the truth of her statements (*id.* at ¶ 68).

Plaintiff's waiver of her attorney-client privilege was solidified during her deposition in the Dershowitz Case. At the conclusion of questioning by Dershowitz's counsel, and after off the records discussions between and among McCawley, Edwards, Cassell and Jack Scarola (counsel for Edwards and Cassell), Mr. Scarola then asked Plaintiff a series of questions directly discussing her communications with her counsel. McCawley made no objection and Plaintiff responded to each question. Scarola asked if Edwards pressured or encouraged her to lie:

Q. Has Brad [Edwards] ever pressured you or encouraged you in any way or under any circumstances at any time to provide false information about Jeffrey Epstein?

A. Never.

Q. Has he ever pressured you or encouraged you at any time or in any way, under any circumstances to provide false information about anyone or anything?

A. Never.

Menninger Decl., Ex. H at 202:5-202:12. Scarola asked similar questions concerning Cassell. *Id.* at 202-03. The questioning, however, was not limited to Plaintiff's conversations with Edwards and Cassell. Scarola's final question, again answered without objection by McCawley, was:

---

communication. This alone is sufficient to waive the attorney-client privilege communication as between Edwards and Plaintiff. *See infra*, p. 19-20.

Q. Apart from any efforts made by Jeffrey Epstein or agents on behalf of Jeffrey Epstein to silence you or to have you refrain from providing true and accurate information about the interactions that you had with Jeffrey Epstein and others to whom you were trafficked by Jeffrey Epstein, has anyone apart from that circumstance pressured you or encouraged you to provide false information about any of the topics that were covered during the course of your examination? . . .

A. No.

Menninger Decl., Ex. H at 203:18-204:7.

There is no mechanism by which Plaintiff could respond to any of these questions with the answer "never" unless she is recollecting and relying on the content of each and every communication she had with Edwards, Cassell and any other person (including each and every one of her attorneys) about the "topics covered" in the deposition. The topics covered in the deposition were wide ranging including the full breadth of statements she and her counsel had made in the CVRA Case, identification of the "high powered" individuals with whom she claims to have had sexual relations, when and how she allegedly met Epstein, the timing and specifics of her alleged encounters with Dershowitz, Prince Andrew, Maxwell and others, and her interviews with and statements to media outlets. In other words, the topics included every story Plaintiff has ever told concerning the time she claims she was a "sex slave."

Notably, the Special Master overseeing Plaintiff's deposition in the Dershowitz Case immediately recognized the waiver. On re-direct, the following colloquy occurred:

Q BY MS. BORJA (Dershowitz' counsel): Now, I understand from your testimony that Mr. Edwards did not pressure you to give false information about this matter, is that fair?

A. That's fair.

Q. Tell me everything that Mr. Edwards told you about this matter?

MS. MCCAWLEY: Objection, that's privileged and she has not waived any privilege. She's not here testifying as to what she discussed with her lawyers.

SPECIAL MASTER: You know, it's an interesting point. I'm going to grant your motion for privilege, but I'm going to suggest to you that there might be a strong argument to be made that those questions opened some of the door. I'm going to let the judge decide that. But you can go ahead, ask the questions, we'll put it on the record for later determination, and it's going to force, to be blunt, this among other things may force the witness to come back and complete the deposition. Just let's be aware of that.

Menninger Decl., Ex. H at 205:15-206:10.

This testimony directly placed Plaintiff's attorney-client communications and work product at issue in the Dershowitz Case. Edwards and Cassell took the affirmative position that Dershowitz's statements that Edwards and Cassell helped Plaintiff fabricate her stories were false and defamatory. *See* Menninger Decl., Ex E, p. 2 ("Dershowitz went so far as to repeatedly accuse Edwards and Cassell of criminal misconduct in actively suborning perjury and fabricating the allegations of misconduct against him - acts that would warrant their disbarment from the legal profession. . . . Put simply, Dershowitz has made highly defamatory allegations that have no basis in fact"). Communications between Plaintiff and her attorney were a central issue in the claims brought by Edwards and Cassell, and Plaintiff voluntarily testified regarding those communications.

Plaintiff was acutely aware of how the information was being utilized in the Dershowitz Case. According to Plaintiff, she is a party to a joint defense or common interest agreement with Messrs. Edwards and Cassell. When the Dershowitz Case was filed, a mere week after the filing of the Joinder Motion on Plaintiff's behalf, Edwards and Cassell represented Plaintiff, who Dershowitz had also threatened to sue. Thus, Edwards and Cassell allegedly act both as Plaintiff's attorneys and her joint-defense or common interest partners. Plaintiff was aware that what was, or in this case was allegedly not, said between her and her attorney would be affirmatively used by her counsel/joint defense partners in support of their claims. She authorized the disclosure and testified, both with the assistance of McCawley.

Plaintiff, on behalf of her joint defense partners, provided evidence to support the factual claim neither Edwards or Cassell (nor anyone else) asked Plaintiff to lie about her stories of alleged sexual abuse and trafficking. The only way the truth of that issue can be tested is through the examination of all her communications about her stories, with attorneys or otherwise. *See Bowne v. AmBase Corporation,* 150 F.R.D. 465, 488 (S.D.N.Y.1993), *aff'd by* 161 F.R.D. 258 (S.D.N.Y.1995) (otherwise privileged communications put in issue where party "asserts a factual claim the truth of which can only be assessed by examination of a privileged communication"); *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991) ("[a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes. Thus, the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications."); *In re von Bulow,* 828 F.2d at 101–02 ("[I]t has been established law for a hundred years that when the client waives the privilege by testifying about what transpired between her and her attorney, she cannot thereafter insist that the mouth of the attorney be shut. From that has grown the rule that testimony as to part of a privileged communication, in fairness, requires production of the remainder."); *United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997) (criminal defendant who testified that she was never advised by her attorney of the fifth amendment implications of proceeding *pro se* put at issue all communications with her former attorney and her knowledge of the law as informed by her attorney-client communications).

"[T]he attorney-client privilege cannot at once be used as a shield and a sword. . . . A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (internal citations omitted); *Locascio*, 357 F.Supp.2d 536, 550 (E.D.N.Y. 2004) ("The privilege

14

may not simultaneously be used as a shield and a sword; where a defendant opens the door by waiving the attorney-client privilege, . . . the [party] cannot open the door only to the information he would like to admit.")  Plaintiff has used her attorney communications as a sword on behalf of her joint defense partners, and therefore her communications with her attorneys are no longer shielded.

Plaintiff also testified that she shared her conversations and communications with Edwards to unrelated third parties.  In particular, she shared her communications with a reporter for the Daily Mail Online, Sharon Churcher.  *See* Menninger Decl., Ex. K, at 297:5-300:6.  There is no doubt that sharing attorney-client communications with a third-party, particularly when that third party is a member of the press, acts to waive any claim of privilege.  *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir.2015). ("A party that shares otherwise privileged communications with an outsider is deemed to waive the privilege by disabling itself from claiming that the communications were intended to be confidential.").

b.  *Edwards and Cassell's Waivers of Attorney-Client and Work Product Privilege in the Dershowitz Case*

In addition to Plaintiff's direct waiver, Plaintiff's counsel/joint defense partners Edwards and Cassell waived both attorney-client privilege and protection of their work product by putting those matters at issue in the Dershowitz Case.  The scope of the subject matter put at issue in the Dershowitz Case could not be broader.  Edwards and Cassell pleaded and argued at every conceivable turn that: 1) they had a good faith belief that Ms. Giuffre's allegations – communicated to them by Giuffre -- were true; 2) they conducted a thorough investigation of Ms. Giuffre's claims (their work product regarding Plaintiff and her allegations); 3) that Ms. Giuffre and her story were credible; 4) they did not have any communications or encourage

Plaintiff to fabricate facts or portions of her stories; and 5) they were not motivated in taking their actions by potential financial gain . Edwards and Cassell point to both communications with Plaintiff and their own work product in an attempt to prove their claims.

By way of example, in the Motion for Summary Judgement in the Dershowitz Case, Edwards and Cassell make the following assertions, citing attorney-client-privileged communications and work product documents in support of their claims and defenses:

- "Ms. Giuffre has submitted a sworn affidavit, not only attesting to the truthfulness of her allegations against Dershowitz <u>but also about the fact that she told her lawyers about these claims</u>." (emphasis supplied) (attorney-client communications);

- "The assertions of sexual abuse are more than adequately corroborated by compelling circumstantial evidence which is detailed at length by Cassell in his deposition." (work product/investigations);

- "Regardless of whether Dershowitz sexually abused Ms. Giuffre, Edwards and Cassell clearly had a good faith basis for relying on the sworn representations of their client." (attorney-client communications, attorney thought process);

- "Edwards and Cassell had clearly conducted extensive investigation into the basis for Ms. Giuffre's allegations" (work product);

- "the undisputed record evidence establishes that Edwards and Cassell had every right following their detailed investigation to rely on Ms. Giuffre's credibility" (attorney-client communication, work-product and investigations, thought process and credibility assessments);

- "The good faith basis for Edwards and Cassell's reliance on Giuffre's allegations is laid out in detail by Professor Cassell in more than 50 pages of sworn testimony during his deposition. *See* Depo. Transcript of Paul Cassell (Oct. 16 & 17, 2015), at 61-117 (Exhibit #3)" (attorney investigative activities, work-product and attorney thought process based on what they "knew" through attorney-client communications).

- "Edwards and Cassell clearly had a powerful basis for believing their client's allegation that she had been sexually abused by Dershowitz, particularly where she had made this allegation to them as far back as 2011" (attorney-client communications)

- "Dershowitz made false and defamatory statements by alleging that two experienced and capable attorneys who thoroughly investigated and believed Ms. Giuffre's allegations in good faith should be disbarred" (work-product, investigation of alleged acts and investigation of credibility).

Menninger Decl., Ex E, at 1-13.

In addition to the Motion for Summary Judgment, Mr. Cassell in his deposition spent more than 50 pages detailing the investigations and assessment of all of the evidence used as a factual basis for the Joinder Motion in the CVRA Case on behalf of Plaintiff. Menninger Decl., Ex. L at 61-117. During this soliloquy, Cassell details his and Edwards thought processes in assessing the claims, their evaluation of the evidence they reviewed, and all other information that he had to believe Plaintiff's stories. He specifically refers to Plaintiff, their evaluation of the evidence in light of the information they "knew" about Plaintiff, and their evaluation and thought process of how the evidence supported her stories. Of course, the information they "knew" about Plaintiff was a direct result of her attorney-client communications with them, and their evaluation of that evidence in the case is clearly work product. In reciting the work product he believes supports "Virginia's" story, Cassell states that this is "important to Virginia" and "I want to do a good job for Virginia Roberts on -- on representing all the -- the evidence that is available to support her." Menninger Decl.., Ex. L at 102:1-3 & 118:7-8. Having put these matters directly at issue, and utilizing both their work-product and attorney-client communications in support of the claims, there is a complete waiver of protection over 1) the content of communications between Plaintiff and her attorneys, and 2) her attorneys' work product and thought process in investigating and "reasonable belief" in the claims.[3]

---

[3] In a joint press release relating to the settlement of the *Dershowitz Case*, Plaintiff and her attorneys again affirmatively cite to Plaintiff's communications with them, their investigation of her statements, and their assessment of her credibility. The references include the time frame prior to their initial filing as well as information discovered throughout the course of the Dershowitz Cases. In that press release, Edwards and Cassel stated "Edwards and Cassell maintain that they filed their client's allegations in good faith and performed the necessary due diligence to do so, and have produced documents detailing those efforts." *Menninger Decl.*, Ex. M, p.1. The press release continues in stating that it was a "mistake" to have filed sexual misconduct allegations against Dershowitz citing, among other things, "the records and other documents produced by the parties." *Id*. at 2. These public statements provide a further waiver over the work product that led to the public acknowledgement that filing the lawsuit and reliance on Plaintiff's allegations was a "mistake."

As discussed above, "courts have generally applied the [at issue] doctrine liberally, finding a broad waiver of attorney-client privilege where a party asserts a position "the truth of which can only be assessed by examination of the privileged communication." *Bank Brussels Lambert*, 210 F.R.D. at 508. All of the factors for waiver have been met: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party to information vital to his defense." *Id.* 210 F.R.D. at 509-10. Here, Edwards and Cassell, with the full knowledge and consent of Plaintiff, took the affirmative act of filing and participating in the Dershowitz Case. Through this affirmative act, they put at issues what Plaintiff told her attorneys, whether it was true, whether her attorneys helped her concoct additional allegations that would help her position, whether they adequately investigated her claims, their basis for believing Plaintiff was credible, and if they and their client were motivated to file false claims by a desire for financial gain.

As discussed above, Plaintiff voluntarily and affirmatively waived the attorney-client privilege through her testimony. That alone is sufficient to find an at issue waiver. Plaintiff also permitted the waiver of the attorney-client privilege by permitting Edwards and Cassell to put her communications with them and her attorneys' work product at issue with her full knowledge and consent. Plaintiff is a party to a joint defense agreement with Edwards and Cassell. She and her attorneys were involved in communication about the Dershowitz Case beginning in January 2015. The case was preemptively filed to beat Dershowitz to the courthouse, before he could act on his public statements that he intended to sue both Plaintiff and her attorneys for, among other

things, defamation. Plaintiff did nothing to stop her counsel from filing the Complaint, despite the fact that it would necessarily put her communications with her counsel at issue. And, she actively participated in the litigation. Indeed, the testimony of Cassell makes clear that the purpose of the litigation was for Plaintiff's benefit, and that he wanted to do a "good job" for her.

Normally, an attorney cannot waive the attorney-client privilege without his client's knowledge and consent. *In re von Bulow*, 828 F.2d at 101. But, "[a] client may nonetheless by his actions impliedly waive the privilege or consent to disclosure." *Id.*, 828 F.2d 94, 101 (2d Cir. 1987) (citing *See United States ex rel Edney v. Smith*, 425 F.Supp. 1038, 1052 (E.D.N.Y. 1976) (implied waiver), *aff'd,* 556 F.2d 556 (2d Cir.), *cert. denied,* 431 U.S. 958 (1977); *Drimmer v. Appleton,* 628 F.Supp. 1249, 1252 (S.D.N.Y.1986) (implied consent); *Wigmore, supra,* § 2327)). In certain circumstances, an attorney may have "an implied authority to waive the privilege on behalf of his client." *Drimmer,* 628 F.Supp. at 1251; *see also In re von Bulow*, 828 F.2d at 101. "It is the client's responsibility to ensure continued confidentiality of his communications." *Id.* If a client is aware of her attorney's waiver of privilege and takes no action to preserve confidentiality, the privilege is lost. *Id.; In re Horowitz,* 482 F.2d 72, 82 (2d Cir.), *cert. denied,* 414 U.S. 867 (1973) ("[i]t is not asking too much to insist that if a client wishes to preserve the privilege under such circumstances, he must take some affirmative action to preserve confidentiality").

This situation is analogous to a client asserting advice of counsel as a defense, a situation in which an at issue waiver of the full scope of attorney-client communications is automatic. *See Bilzerian,* 926 F.2d at 1292 (defendant's testimony that he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required into issue, directly implicating his conversations with counsel); *Chin v. Rogoff & Co., P.C.*, No.

05 CIV. 8360(NRB), 2008 WL 2073934, at *6 (S.D.N.Y. May 8, 2008) (in suit for damages against tax advisor for negligence in providing tax advice, reliance and causation could only be assessed through invading the attorney-client privilege and examining the nature of counsel's advice to determine different advice was given by attorneys). The at issue waiver is complete "even if a party does not attempt to make use of a privileged communication" *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 488 (S.D.N.Y. 1993) (*discussing Bilzerian*, 926 F.2d 1285); *Chin,* 2008 WL 2073934, at *6 (waiver occur even where client does not reference attorney communications if review of communications is necessary to establish an element of a claim). Here, Edwards and Cassell put the issue of their "good faith" reliance on Plaintiff's communications to them affirmatively at issue, as well as their investigation of what she told them in those communications. Having done so with Plaintiff's knowledge and consent, and without her protest, the waiver is complete.

The application of the privilege here, after it has been selectively waived, denies Ms. Maxwell information vital to her defense. By way of very limited example, in the case at bar, Plaintiff claims that she was defamed when Ms. Maxwell stated that the allegations Plaintiff made in the Joinder Motion, included allegations regarding Dershowitz, Ms. Maxwell and Prince Andrew, were false. In the Joinder Motion Edwards and Cassell boldly state "Epstein required Jane Doe #3 to have sexual relations with Dershowitz on numerous occasions while she was a minor, not only in Florida but also on private planes, in New York, New Mexico, and the U.S. Virgin Islands." Menninger Decl., Ex. C at 4. Edwards and Cassell, however, had doubts about Plaintiff's allegations based on their own investigation, including whether Dershowitz and Plaintiff were ever on Epstein's plane together. Cassell identified flight logs Edwards and he reviewed as supporting the allegations made by Plaintiff. Menninger Decl., Ex. L at 69-70. He

admits, however, that there is not a single log entry that put Dershowitz and Plaintiff on the same plane.[4] Having put at issue their investigation and "good faith belief" in Plaintiff's stories, they must provide all information about anything that both supports *and* undermines Plaintiff's story and their own belief in the credibility of that story.

Plaintiff will undoubtedly attempt to prop-up her claims that she was telling the truth through use of the investigative material, work product, mental impressions and opinions on her credibility offered by her attorneys/joint defense partners, Edwards and Cassell. Ms. Maxwell cannot be denied access to information showing her attorney's work and investigation shows Plaintiff's stories were fabricated, including the details uncovered demonstrating Plaintiff's lack of credibility.

Each of the factors considered by the Second Circuit to find a broad waiver weighs in favor of finding such a waiver here. The factors are "(1) whether substantive information has been revealed; (2) prejudice to the opposing party caused by partial disclosure; (3) whether partial disclosure would be misleading to a court; (4) fairness; and (5) consistency." *McGrath v. Nassau Cty. Health Care Corp.*, 204 F.R.D. 240, 244.

Cassell and Edwards have revealed in extensive detail their work-product demonstrating why they believed Plaintiff's allegations and incorporated them in the Joinder Motion. It would be prejudicial for Plaintiff to be able to support her claim in this case that she is not a liar using her attorney's testimony and work product, while preventing discovery of work-product and communications that would prove otherwise or cast doubts on Plaintiff's credibility. It would be

---

[4] My question, Mr. Cassell, is: You reviewed the flight logs, correct?
A. Correct.
Q. You reviewed them in some detail, correct?
A. Correct.
Q. Is there any entry on those flight lines -- logs that you read as putting Professor Dershowitz and Miss Roberts on the same plane?
A. No.
Menninger Decl., Ex. L 206:3-11.

misleading to the court or any jury to hear testimony from Plaintiff's counsel about all the factual basis, work product and thought process on which they relied in making the allegations in the Joinder Motion, but refusing to permit Ms. Maxwell discovering or presenting contradicting information that Plaintiff's attorneys had, including information that led them to conclude that it was a "mistake" to have filed sexual misconduct allegations against Dershowitz. Fairness and consistency require that Plaintiff and her attorneys be required to disclose all work product and attorney-client communications relating their investigations of Plaintiff's statements and story as alleged in the CVRA Case, their investigations of the allegations, their assessment of the credibility of the allegations, and contradictory evidence uncovered.

## III. There is No Privilege as to Communications with Scarola

Plaintiff listed on her privilege log Jack Scarola, Edwards and Cassell's attorney, as an individual who received or sent communications or documents relating to the CVRA Case. The log does not state what these documents are, instead including them as part of the "categorical" logging. The "Types of Privileges" identified are Attorney Client, Work Product, and Joint Defense/Common Interest. It is entirely unclear how any of these protections can be invoked regarding communications including Scarola or over documents provided by or to him.

### a. There is no Attorney-Client Relationship

Plaintiff specifically states in her interrogatory responses that Scarola is not and has never been her attorney. Thus, there can be no attorney-client-communications between Plaintiff and Scarola. If there were, Plaintiff has clearly and voluntarily waived any privilege.

### b. Work Product Privilege has been Waived

In 2011, Scarola acted as Edward's attorney in a case captioned *Epstein v. Edwards*, Case No. 502009CA040800XXXMB, in the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County, Florida (the "Epstein v. Edwards Case."). That action is still pending. According to the most recent discovery responses, Edwards represented Plaintiff in the CVRA Case at the same time. *SOF,* ¶(d).

On April 7, 2011, Edwards, Scarola and Plaintiff had a telephone conversation, recorded with the knowledge and consent of Plaintiff. Menninger Decl., Ex N at 1. The content of the conversation is a detailed interview of Plaintiff recounting her story of her time with Epstein. The transcript of that conversation, clearly marked "Work Product," has been produced widely and attached to multiple court filings. It was used affirmatively in the Epstein v. Edwards Case and filed on May 17, 2011 in that case. *See* Menninger Decl., Ex. O (Notice of Filing). It was also used affirmatively in the CVRA Case. *See* Menninger Decl., Ex. P, DE #290, Exhibit 3. It was produced in this case and in the Dershowitz Case by Plaintiff and her counsel. *See* Menninger Decl., Ex. Q. It apparently was also transmitted to the press. *See* Menninger Decl., Ex. J.

As discussed above, putting information contained in this "work product" document at issue waives of any protection and extends to any and all work product of Scarola related to Plaintiff or her claims and stories.

### c. There is no basis to claim common interest or joint defense privilege

It bears repeating that "[t]he party asserting the privilege ... bears the burden of establishing its essential elements." *Mejia*, 655 F.3d at 132; *see also Wultz v. Bank of China Ltd.*,

304 F.R.D. 384, 391 (S.D.N.Y.2015) ("The party invoking the privilege also has the burden to show that the privilege has not been waived.").

Plaintiff provides no basis for claiming a common interest or joint defense with *anyone* related to the CVRA case. The only two people Scarola represents, to Ms. Maxwell's knowledge, are Edwards and Cassell. They are the attorneys in the CVRA case, and by definition should not have a personal or common interest with the parties in that litigation. Regardless, it is Plaintiff's burden to establish that such and interest exists, who is involved, and Scarola's role. Having failed to provide any of the information necessary to establish the applicability of these privileges, they are waived. *See S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 162 (S.D.N.Y. 2014) (failure to provide adequate descriptions of the subject matter, authors and recipients of the withheld documents resulted in waiver of privilege). There is simply no basis for withholding any communication with or work product of Scarola.

## CONCLUSION

Plaintiff and her lawyers waived any privilege as to their communications related to the subject matters of (a) the CVRA litigation and (b) the *Edwards and Cassell v. Dershowitz* Case. Similarly, Plaintiff's lawyers waived any claim of work product to material gathered in relation to those litigations.

Accordingly, Ms. Maxwell requests that the Court enter an order finding (a) a waiver of the attorney-client privilege as to the subject matter of the CVRA and Dershowitz litigations and (b) a work product exemption for materials gathered in relation to those matters. She further requests an Order directing Plaintiff to provide Ms. Maxwell with all documents as to which such the attorney-client privilege and work product have been waived.

Dated: May 26, 2016.

Respectfully submitted,

/s/ Laura A. Menninger
Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:   303.831.7364
Fax:        303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on May 26, 2016, I electronically served this *Motion to Compel all Communications and Work Product Put At Issue by Plaintiff and Her Attorneys* via ECF on the following:

Sigrid S. McCawley
Meridith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

Bradley J. Edwards
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

/s/ Nicole Simmons
Nicole Simmons