**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------X

VIRGINIA L. GIUFFRE,

      Plaintiff,

v.

GHISLAINE MAXWELL,

      Defendant.

**15-cv-07433-RWS**

-------------------------------------------------X

<u>**MOTION TO REOPEN DEPOSITION OF PLAINTIFF VIRGINIA GIUFFRE**</u>

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
East 10th Avenue
Denver, CO 80203
303.831.7364

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 1

I.    PLAINTIFF'S PRODUCTION OF KEY DOCUMENTS AFTER HER DEPOSITION
      NECESSITATES ADDITIONAL EXAMINATION ............................................................ 3

      A.    Plaintiff failed to identify her health care providers and produce their records prior to
            her deposition, despite this Court's order .................................................................. 3

      B.    Plaintiff failed to produce emails form her iCloud and hotmail accounts ...................... 6

      C.    Plaintiff has failed to produce her employment records .................................................. 8

      D.    Plaintiff has failed to produce her education records ....................................................... 9

      E.    Plaintiff has filed amended Rule 26 disclosures identifying new witnesses ................... 9

II.   PLAINTIFF'S COUNSEL INSTRUCTED PLAINTIFF NOT TO ANSWER
      RELEVANT, NON-PRIVILEGED QUESTIONS IN HER FIRST DEPOSITION ........ 10

III.  PLAINTIFF MADE MATERIAL CHANGES TO HER DEPOSITION THAT
      COMPLETELY CONTRADICT HER SWORN TESTIMONY ..................................... 13

CERTIFICATE OF SERVICE ....................................................................................... 16

i

# TABLE OF AUTHORITIES

*Ganci v. U.S. Limousine, Ltd.*, No. 10-3027, 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011) .................................................................................................................................... 1

*Harris v. Bornhorst*, 513 F.3d 503, 525-26 (6th Cir. 2008) ........................................................ 10

*Hlinko v. Virgin Alt. Airways*, No. 96 Civ. 2873(KMW)(THK), 1997 WL 68563, at *1 (S.D.N.Y. Feb. 19, 1997) ........................................................................................................... 2, 12

*Keck*, 1997 WL 411931, at *2 (S.D.N.Y. July 22, 1997) ............................................................. 1

*Miller v. Massad-Zion Motor Sales Co.*, No. 3:12 CV 1363, 2014 WL 4979349, at *2 (D. Conn. Oct. 6, 2014) ............................................................................................................................ 2

*Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. CV135475JSAKT, 2016 WL 1180194, at *3 (E.D.N.Y. Mar. 25, 2016) ........................... 1,2,3

*Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 F.R.D. 697, 701 (S.D. Fla. 1999)10

*Redwood v. Dobson*, 476 F.3d 462, 467-68 (7th Cir. 2007) ......................................................... 9

*Vincent v. Mortman*, No. 04 Civ. 491, 2006 WL 726680, at *1–2 (D. Conn. Mar. 17, 2006) ....... 1

Pursuant to Federal Rule of Civil Procedure 30(a)(2), Defendant Ghislaine Maxwell seeks leave of the Court to reopen the deposition of Plaintiff Virginia Giuffre, and as grounds therefore states as follows:

## INTRODUCTION

Plaintiff has engaged in an active effort to hide relevant information and prevent the fair examination of Plaintiff on her claims.  Due to these multiple and repeated discovery violations, key information and documents were unavailable to Ms. Maxwell prior to Plaintiff's depositions on May 3, 2016.  Some obviously relevant documents and disclosures remain concealed and are the subject of pending frivolous efforts by Plaintiff to evade her discovery obligations.

Recently, Plaintiff completely changed her Rule 26(a) initial disclosures and added multiple new witnesses while deleting many others.  In addition, in the initial deposition, Plaintiff's counsel improperly prevented Plaintiff from testifying regarding key relevant non-privileged information without basis or justification.

Finally, Plaintiff has now provided an errata sheet to her sworn depositions testimony in which she materially and substantially contradicts her own testimony.  For these reasons, Plaintiff's depositions must be reopened to examine her on newly discovered evidence and her contradictory statements.

## ARGUMENT

"A person who has previously been deposed in a matter may be deposed again, but only with leave of the court." *Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. CV135475JSAKT, 2016 WL 1180194, at *3 (E.D.N.Y. Mar. 25, 2016) (quoting *Sentry Ins. v. Brand Mgmt. Inc.*, No. 10 Civ. 347, 2012 WL 3288178, at *8 (E.D.N.Y. Aug. 10, 2012); Fed. R. Civ. P. 30(a)(2)(B).  Under Rule 30(a)(2)(B), courts "frequently permit a

1

deposition to be reopened where the witness was inhibited from providing full information at the first deposition" or "where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition." *Vincent v. Mortman*, No. 3:04 CV 491 (JBA), 2006 WL 726680, at *1 (D. Conn. Mar. 17, 2006) (quoting *Keck v. Union Bank of Switzerland,* 1997 WL 411931, at *1 (S.D.N.Y. July 22, 1997).  "Leave should be granted to the extent that doing so is consistent with the factors set forth in Rule 26(b)(2), such as 'whether the second deposition of the witness would be unnecessarily cumulative, whether the party requesting the deposition has had other opportunities to obtain the same information, and whether the burden of a second deposition outweighs its potential benefit.'" *Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd.*, 2016 WL 1180194, at *3 (quoting *Sentry Ins.*, 2012 WL 3288178, at *8).

"Courts will typically re-open a deposition where there is new information on which a witness should be questioned." *Id.* (quoting *Ganci v. U.S. Limousine, Ltd.*, No. 10-3027, 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011)).  This encompasses situations in which other discovery has disclosed conflicting evidence on which a party should be questioned, when discovery responses and relevant information are produced after the previous deposition, and when affidavits produced conflict with the deponent's previous testimony. *See, e.g, Vincent v. Mortman*, No. 04 Civ. 491, 2006 WL 726680, at *1–2 (D. Conn. Mar. 17, 2006) (allowing plaintiff to reopen deposition when one witness' deposition contradicted defendants' deposition and medical records); *Keck*, 1997 WL 411931, at *2 (S.D.N.Y. July 22, 1997) (deposition reopened where affidavit provided evidence conflicting with witness testimony); *Sentry Ins.*, 2012 WL 3288178, at *8 (permitting reopening of deposition based on production of document deponent unjustifiably failed to produce prior to deposition).

Requests to reopen depositions routinely are granted after a deponent materially changes her prior testimony in contradiction to previous sworn testimony. *Miller v. Massad-Zion Motor Sales Co.*, No. 3:12 CV 1363, 2014 WL 4979349, at *2 (D. Conn. Oct. 6, 2014); *Hlinko v. Virgin Atl. Airways*, No. 96 Civ. 2873(KMW)(THK), 1997 WL 68563, at *1 (S.D.N.Y. Feb. 19, 1997). "In addition, courts will also re-open a deposition 'where the witness was inhibited from providing full information at the first deposition.'" *Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd.*, 2016 WL 1180194, at *3 (quoting *Miller*, 2014 WL 4979349, at *2 (D. Conn. Oct. 6, 2014)). All of these factors are present in this case, necessitating the re-opening of Plaintiff's deposition.

## I.   PLAINTIFF'S PRODUCTION OF KEY DOCUMENTS AFTER HER DEPOSITION NECESSITATES ADDITIONAL EXAMINATION

### A.   Plaintiff failed to identify her health care providers and produce their records prior to her deposition, despite this Court's order

On April 21, 2016 this Court ordered Plaintiff to produce her medical records and identify all of her health care providers from 1999 to present and produce their medical records. Menninger Decl., Ex. A at 20-21. Undersigned counsel diligently followed up via phone and correspondence and requested that all information relating to Plaintiff's medical treatment be provided prior to Plaintiff's May 3, 2016 deposition precisely so that the deposition would not need to be reopened. Menninger Decl., Ex. B. On April 29, 2016, after telling this Court that she had disclosed *all* of her health care providers, Plaintiff served Second Amended Supplemental Responses & Objections, identifying *15 new health care providers*. Menninger Decl., Ex. C at 18-20.[1] For some providers, records were produced; for many, they were not. *Id.*

---

[1] Treatment providers identified included 1) Dr. Steven Olson, 2) Dr. Chris Donahue, 3) Dr. John Harris 4) Dr. Majaliyana 5) Dr. Wah, 6) Dr. Sellathuri, 7) Royal Oaks Medical Center, 8) Dr. Carol Hayek, 9) NY Presbyterian Hospital, 10) Campbelltown Hospital, 11) Sydney West Hospital, 12) Westmead Hospital, 13) Dr. Karen Kutikoff, 14) Wellington Imaging Associates, and 15) Growing Together.

At Plaintiff's May 3, 2016 deposition, Plaintiff identified an additional health care provider not identified in her Interrogatory responses and for whom no records had been produced. Specifically, Plaintiff identified a psychiatrist, Judith Lightfoot, who is located in Australia. Menninger Decl., Ex. D at 308-14 & 328-31. Plaintiff specifically claims that she has talked with Dr. Lightfoot regarding the impact of Ms. Maxwell's allegedly defamatory statement. *Id.* at 313-14. She claims to have been talking to Dr. Lightfoot from October 2015 to the present on a weekly basis. *Id.* at 334. Dr. Lightfoot also allegedly treated Plaintiff in 2011 (*prior* to the acts giving rise to this lawsuit), and apparently diagnosed Plaintiff ██████

████████████████████. *Id.* at 329. On June 12, 2016 (after Plaintiff's deposition), Plaintiff produced a single record from Dr. Lightfoot, an intake form from 2011. Menninger Decl., Ex. E. The remaining documents from Dr. Lightfoot, including records related to treatment from 2015 to present, have not been produced. Information relating to this treatment is critical, and Ms. Maxwell has not been able to thoroughly examine Plaintiff on her treatment by Dr. Lightfoot because her identity was not disclosed prior to Plaintiff's deposition, and her complete records still have not been produced.

At her deposition, Plaintiff also identified one of her current treating physicians as Dr. Donahue, ████████████████████████████████████. Menninger Decl., Ex. D at 335-38. ████████████████████████████████ ████████████████████████████. *Id.* Yet, to date, his records have not been provided.

On May 25, 2016, Plaintiff sent Ms. Maxwell additional records obtained from Plaintiff's treatment at Centura in June 2015. Those documents identify another medical provider, Dr. Michele Streeter, never previously disclosed. Menninger Decl., Ex. F at 4.

Lynn Miller, Plaintiff's mother, was deposed on May 24, 2016.  During that deposition, Ms. Maxwell learned that Plaintiff was treated for ████████████████████████ ███████████████████████████████████████████████████████████████████.



Menninger Decl., Ex. G at 144.  On June 1, 2016, Plaintiff produced additional documentation ████████████████████████████████████████████████████████████ ████████████████████.  These documents identify three *additional* undisclosed health care professionals who treated Plaintiff, including Dr. Scott Robert Geiger, Dr. Joseph Heaney, and Donna Oliver P.A.  Menninger Decl., Ex. H.

One of the medical providers that was disclosed, and for whom some documents had been produced prior to Plaintiff's deposition was Dr. Steven Olson.  During Dr. Olson's deposition on May 26, 2016, Ms. Maxwell learned that he had records in his laptop that had not been produced prior to his deposition.  Again, these records were produced after Plaintiff was deposed.[2]  Menninger Decl., Ex. I at 36.

In short, at Plaintiff's first deposition, Ms. Maxwell learned of the identity of Plaintiff's treating psychiatrist, but did not have the ability to fully question Plaintiff regarding her treatment because of the late disclosure.  Since then, at least four additional health care providers have been identified.  Post-deposition medical records for at least four different physician visits, including Plaintiff's treatment ████████████████████████████ pre-dating the alleged defamatory statement have been produced.  Plaintiff still has failed to produce any records from:  (a) Dr. Donahue, (b) Dr. Hayek, (c) Dr. Kutikoff, (d) Wellington Imaging Associates, (e) Growing Together, (f) post 2011 records from Dr. Lightfoot, and (g) the remaining documents for treatment by Dr. Olson.  All of the new information that has come to

---

[2] At the deposition, copies were produced that were difficult to read.  Despite requests, legible copies have not been provided.

light, and the information that has yet to be produced, justifies the reopening of Plaintiff's deposition.

**B.      Plaintiff failed to produce emails form her iCloud and hotmail accounts**

By interrogatory, Plaintiff was asked to identify "email address, email account, cellphone number and cellphone provider, social media account and login or screen name, text or instant messaging account name and number, that You have used, applied for or been supplied between 1998 and the present." Menninger Decl., Ex. C at 8-9. Plaintiff responded, identifying a single email address and three telephone numbers. Plaintiff's counsel verified those discovery requests pursuant to Rule 33(b)(5).

Through a detailed review of the documents produced by Plaintiff in discovery, Ms. Maxwell uncovered Plaintiff has used at least three other email accounts – one on iCloud, one on live.com, and one on hotmail.com during the relevant time periods. Plaintiff's counsel confesses that prior to being confronted on the issue, they never reviewed the emails in the accounts for relevant information. Menninger Decl., Ex. J. The claims that counsel did not know these email accounts exist is belied by the fact that they have now included "privileged" communications from at least one of the accounts on their privilege log demonstrating and indicating there are probably privileged communications in the account they have not reviewed. Thus, they both knew about the accounts and corresponded with Plaintiff using those accounts, yet failed to disclose the accounts or to review them for relevant information.

It was not until Ms. Maxwell subpoenaed records from Apple on June 8, 2016, that – two days later – Plaintiff finally produced emails from the iCloud account. Menninger Decl., Ex. K. Plaintiff still has failed to review or produce any documents from her live.com account or her

6

hotmail account.[3]  Plaintiff's attorneys claim they cannot access these accounts, or that those accounts have been closed.  *See* Doc. #207.  Through the service of a subpoena on Microsoft, Ms. Maxwell's counsel has learned this is untrue.  The hotmail account remains "active" and Microsoft has preserved the information in that account.  Ms. Maxwell's counsel provided the release from Microsoft so that the emails can be accessed.  Menninger Decl. Ex. L.  Plaintiff has refused to execute the release to permit the document production.  The hotmail account is active, can be accessed, and Plaintiff has simply failed to review these accounts for relevant information or permit discovery of relevant evidence.

The limited information produced from the iCloud account shows that responsive information exists.  The production includes Plaintiff's communications with FBI agent Jason Richards in 2014 and suggests that Plaintiff was in regular communication with him at various times, particularly in mid-2014.  Despite this, few pieces of correspondence with Agent Richards have been produced.  Plaintiff also produced an email to Christina Pyror of the FBI but not any response to that email.

The iCloud account also discloses a previously undisclosed potential witness, Sharon Rikard, a person working at a not-for-profit relating to sexual trafficking victims.  Apparently, in March 2015 (well after the alleged defamatory statement), Plaintiff *for the first time* was doing something to attempt to make Victims Refuse Silence look like a real organization.  This timing is important because it demonstrates Plaintiff was not in the purported profession of helping victims *prior* to the alleged defamatory statements (January 2015), and therefore cannot claim that the alleged defamatory statement related to her profession at the time the statement occurred.

---

[3] Ms. Maxwell has issued subpoena for records from all of these accounts.  Plaintiff had filed a motion for protective order, and thus is still trying to prevent access to relevant discovery.

It is completely unknown what other relevant and probative information will be

uncovered in Plaintiff's previously hidden accounts, including her hotmail account.  What is

clear is that Ms. Maxwell has had no opportunity to depose Plaintiff about these issues,

necessitating the reopening of her deposition.

### C.    Plaintiff has failed to produce her employment records

In the April 21, 2016, hearing, the Court also ordered that Plaintiff produce records

relating to her employment history, including identifying her employer, dates of employment,

nature of employment and earnings.  Menninger Decl., Ex. A at 25.  These documents are

directly related to Plaintiff's damages claims for lost earnings and loss of earning potential – *i.e.*

Plaintiff's own actual historic earnings necessarily informs the basis for any claimed loss of

earnings.  Based on the resumes provided by Plaintiff in discovery, Ms. Maxwell also requested

personnel record releases for all employers listed on Plaintiff's resume, which were provided on

April 29, 2016.  Prior to Plaintiff's deposition, no employment records had been produced.

At Plaintiff's deposition, Plaintiff admitted that much of her resume was fabricated and

replete with lies.  Menninger Decl., Ex. D at 67-90.  At least 3 of the employers included on the

resume were jobs she never held – she researched the internet to find places where she might

have worked, listed them as actual jobs, and then fictionalized her job description.  With respect

to other employers, she expanded the end date of employment to fabricate a continual work

history.  Plaintiff ultimately admitted that she has not held a single paid employment position

since 2006.

After Plaintiff's deposition, Plaintiff provided additional documentation concerning her

employment history.  Through employment records releases (requested well before Plaintiff's

deposition), Ms. Maxwell obtained employment records from Employment and Training

Australia, one of Plaintiff's non-fabricated employers.  Those records include pay history,

showing that Plaintiff's wage rate was under $28,000 per year.[4]  Until now, Ms. Maxwell has not

had the information necessary to examine Plaintiff on this lost income aspect of her damages

claims.

### D.   Plaintiff has failed to produce her education records

In the April 21, 2016, hearing, the Court also ordered Plaintiff to turn over her education

records.  Again, this information, or forms to permit the release of the information, were

provided well in advance of the Plaintiff's scheduled deposition, specifically February 12, to

permit full examination on these issues.  Again, Plaintiff did not provide the releases until mere

days before her deposition, and only after this Court's order.  Since Plaintiff's deposition,

various education documents have been obtained through those releases, specifically documents

from Plaintiff's various high schools, including Wellington High School, Royal Palm High, and

Survivor's Charter School.  The records contain substantial information conflicting with

Plaintiff's previous testimony.  Ms. Maxwell is entitled to examine Plaintiff on this previously

undisclosed evidence.

### E.   Plaintiff has filed amended Rule 26 disclosures identifying new witnesses

Finally, on June 1, 2016, weeks after her deposition and in the final month of the fact

discovery period, Plaintiff filed her "Third Revised" Rule 26 disclosures.  She has expanded her

list of witnesses with relevant information from 69 specific witnesses to 87.  She curiously

removed witnesses previously disclosed.  With regard to all of these witnesses, she fails to

identify who they are and what information they allegedly have that is relevant to the case.  The

stock description for each person is "Has knowledge of Ghislaine Maxwell and Jeffery Epstein's

sexual trafficking conduct and interaction with underage minors."  Menninger Decl, Ex. N at 14.

---

[4] Plaintiff's Rule 26(a) disclosure claims lost income as "estimated lost income of $180,000 annually, Present value of $3,461,000 to $5,407,000.  This is based solely on the "average" earning of a woman Plaintiff's age.  Obviously, any actual lost earnings must be based on Plaintiff's *own* earning history and work records, which is vastly different.

These disclosures provide no actual information, such as the type of alleged knowledge, basis of the knowledge or how the information is in any way relevant to this single count defamation case.  She also has amended her document disclosures list but has failed to produce any of the new documents she has identified, despite repeated requests for these documents.  *Id.* at 16.

These late disclosures are clearly improper and should be stricken under Rule 37(c), a matter for a different motion.  Nevertheless, these material changes include witnesses that were obviously known to Plaintiff since the inception of the case.  Ms. Maxwell is entitled to question Plaintiff on these disclosures to determine what, if any, relevant information these newly disclosed witnesses might have.

In total, Plaintiff has produced over 256 additional documents since her deposition, and other documents have been obtained through previously withheld releases.  As will be briefed separately, there are multiple additional documents that have still not been produced.  Of the information uncovered, much of it directly contradicts Plaintiff's previous sworn discovery responses and her sworn deposition testimony.  This is precisely the type of situation that requires reopening Plaintiff's deposition.

## II.   PLAINTIFF'S COUNSEL INSTRUCTED PLAINTIFF NOT TO ANSWER RELEVANT, NON-PRIVILEGED QUESTIONS IN HER FIRST DEPOSITION

Plaintiff was instructed by her attorney not to answer certain questions during her deposition without basis.  The questions did not seek privileged information, were completely appropriate, and directly relevant to issues in case.

It is axiomatic that counsel at a deposition "may instruct a deponent not to answer ***only when necessary to preserve a privilege***, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  Fed. R. Civ. P. 30(c)(2); *Redwood v. Dobson*, 476 F.3d 462, 467-68 (7th Cir. 2007) ("Counsel for the witness may halt the deposition and apply for a

protective order, see [Rule 30(d)(3)], but must not instruct the witness to remain silent.");

*Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 F.R.D. 697, 701 (S.D. Fla. 1999)

(counsel "may instruct the witness not to answer or may halt the deposition.  Fed.R.Civ.P.

30(d)(3). Counsel may do so, though, only if he intends to move for a protective order under

Rule 30(d)(3)"); *Harris v. Bornhorst*, 513 F.3d 503, 525-26 (6th Cir. 2008) ("despite the lack of

relevancy of the questions to the claims asserted, absent a privilege or protective order, a

deponent must answer questions posed at a discovery deposition").  Where counsel improperly

instructs a witness not to answer, courts routinely require the deposition to be reopened.  *Keck*,

1997 WL 411931, at *1.

    At Plaintiff's first deposition, Plaintiff was instructed not to answer three different areas

of inquiry where there was simply no basis for claiming any privilege or right to protection.

Plaintiff has never moved for a protective order on these lines of inquiry because there is no

basis for prohibiting the discovery.

    First, Plaintiff was asked to identify any statements printed or published by Sharon

Churcher, the *Daily Mail* reporter who spent several days meeting with Plaintiff and published

numerous stories regarding Plaintiff in 2011 and thereafter.  Plaintiff testified that despite her

very close relationship with Ms. Churcher, she no longer trusts Ms. Churcher and that Churcher

did not accurately report portions of what Plaintiff told her.  Menninger Decl., Ex. D at 216-26.

When Plaintiff was asked to describe the statements Ms. Churcher reported that were inaccurate,

Plaintiff's counsel refused to allow testimony unless Plaintiff was given all of Ms. Churcher's

articles and had a chance to review them.  Menninger Decl., Ex. D at 215-26.  He refused to let

Plaintiff testify based on her own independent recollection.  *Id.*  This is simply improper, and

alone serves as a valid basis for reopening the deposition.

The second area of inquiry on which Plaintiff was prohibited from testifying was her communications with law enforcement since 2014, in particular regarding Ms. Maxwell. Menninger Decl. Ex. D at 244-45.  Counsel refused to let Plaintiff answer these questions despite this Court's order that Plaintiff was to turn over all documents concerning communications with law enforcement, excepting only Plaintiff's *own* statements to law enforcement which would be provided for *in camera* review.  Menninger Decl., Ex. A at 24.  Rather than complying with this very clear order, Plaintiff's counsel refused to provide *any* documents regarding communications with law enforcement agencies (including their own), and submitted all documents for *in camera* review.  Ms. Maxwell is entitled to all documents concerning contacts with law enforcement (both her attorney's communications, which have been ordered to be produced, and her own statements, which the Court should order be produced), and to question Plaintiff regarding the same.

The third question Plaintiff was prohibited from answering concerned her consultations with an undisclosed psychiatrist sometime after 2015.  Plaintiff's counsel indicated this is a consulting expert.  Even if that is the case, Ms. Maxwell is entitled to the identity of this health care provider.  *Manzo v. Stanley Black & Decker Inc.*, No. CV 13-3963 JFB SIL, 2015 WL 136011, at *2 (E.D.N.Y. Jan. 9, 2015) (identity of non-testifying experts discoverable); *Baki v. B.F. Diamond Constr. Co.*, 71 F.R.D. 179, 181–82 (D. Md. 1976) (same); *Eisai Co. v. Teva Pharm. USA, Inc.*, 247 F.R.D. 440, 441–42 (D.N.J. 2007) (same).

In light of the clearly improper instructions not to answer non-privileged relevant questions, Plaintiff's deposition must be reopened.

12

III.    **PLAINTIFF MADE MATERIAL CHANGES TO HER DEPOSITION THAT COMPLETELY CONTRADICT HER SWORN TESTIMONY**

  The final and perhaps most compelling reason to reopen Plaintiff's deposition is the fact that Plaintiff filed an errata sheet for her deposition in which she materially contradicts her prior sworn testimony.  Menninger Decl., Ex. M.  A court may reopen a deposition if the changes to the transcript are made without adequate reasons, or if they are so substantial as to render the transcript incomplete or useless. *See Hlinko*, 1997 WL 68563, at[*]1 (citing *Allen & Co. v. Occidental Petroleum Corp.*, 49 F.R.D. 337, 341 (S.D.N.Y.1970)); *see also Miller*, 2014 WL 4979349, at *2.

  Plaintiff's errata changes are astounding, literally reflecting complete contradictions of her actual sworn testimony by changing "yes" answers to "no," and indicating "clarification of answer" as the basis for total revision.  A vast majority of the 20 changes regard a very specific date testified to by Plaintiff in her deposition that has a profound impact in this matter, as her attorneys are fully aware.  Specifically, Plaintiff was confronted with the fact that on no less than 10 occasions she has sworn under oath she met Ms. Maxwell in 1999, when she was 15 years old.  This is a lie.  Plaintiff pinpoints this date based on the fact that she was working at the Mar-A-Lago spa.  Discovery has uncovered that Plaintiff did not work for the Mar-A-Lago until 2000, and Plaintiff's self-prepared resume states that it was not until August of 2000 when she was 17 years old.  Plaintiff had been well coached on how to answer to the prior perjured testimony, being prompted to claim that her sworn statements were a "mistake," and that she only learned her dates of employment at the Mar-A-Lago through discovery.  Menninger Decl., Ex. D at 26. The question was then posed about *when* she "learned" of her mistake based on discovery, to which Plaintiff clearly and unequivocally responded on no less than six occasions that she learned her dates of employment at Mar-A-Lago in *mid-2015* – before many of her

13

sworn statements.  After a break in the deposition and being coached by her counsel, Plaintiff pulled back on her conviction regarding the date, and became less certain of the time frame, but still put the time frame in late 2015.  *Id.* at 66.  After her deposition, she *completely* changed the date she "learned" she was employed at Mar-A-Lago in 2000 to a firm date of mid-February 2016, over six months later than the date to which she originally testified based on her own independent recollection. Menninger Decl., Ex. M.

This is not the only substantive and completely contradictory change in the testimony. Plaintiff revised her very clear and distinct answer that she traveled to France three times to claims that she travelled to France "a few" times, and modified the credentials of her mental health care provider – the previously undisclosed Dr. Judith Lightfoot – from psychiatrist to psychologist.

The impact of the original (presumably true) testimony is a matter for another motion, as is the effect of the true reasons the changes were made.  For purposes of this motion, what is important is that substantive contradictory changes by errata require that, at a minimum, Plaintiff be examined on the revisions.

WHEREFORE, for the foregoing reasons, Ms. Maxwell requests that the Court permit Plaintiff's deposition to be reopened for up to seven additional hours of examination, and order that Plaintiff pay the costs and fees associated with deposition pursuant to Fed. R. Civ. P. 30(d)(2).

Dated: June 20, 2016

Respectfully submitted,

/s/ Laura A. Menninger

Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:   303.831.7364
Fax:       303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*

15

## CERTIFICATE OF SERVICE

I certify that on June 20, 2016, I electronically served this *DEFENDANT'S MOTION TO REOPEN DEPOSITION OF PLAINTIFF VIRGINIA GIUFFRE* via ECF on the following:

Sigrid S. McCawley
Meridith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

J. Stanley Pottinger
49 Twin Lakes Rd.
South Salem, NY 10590
StanPottinger@aol.com

*/s/ Nicole Simmons*
Nicole Simmons

16