# KRIEGER KIM & LEWIN LLP

500 Fifth Avenue                                                                                         Telephone: (212) 390-9550
New York, NY 10110                                                                                       www.KKLllp.com

August 19, 2020

By ECF

The Honorable Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street, Room 2220
New York, NY 10007-1312

      Re:    *Giuffre v. Maxwell,* 15 Civ. 7433 (LAP) ("*Maxwell*")

Dear Judge Preska:

      We write on behalf of a non-party, John Doe, for two purposes:

      First, pursuant to the Court's direction in its August 4, 2020 Order, DE 1097 (as amended by DE 1104), we write regarding the proposed disclosure of confidential *Maxwell* materials requested by Alan Dershowitz – his fourth attempt to acquire *Maxwell* materials subject to the Protective Order, DE 62 (the "Protective Order").

      Second, and relatedly, we write regarding the unsealing process. While non-party participation may well be helpful to the Court regarding unsealing, the Court's protocol and legal precedent dictate that the absence of such participation should not factor negatively into the Court's balancing of considerations – as it is ultimately the responsibility of this Court, and not the parties or even non-parties, to protect non-party privacy interests.

**I.**    <u>**Mr. Dershowitz's Proposed Disclosure of Confidential *Maxwell* Materials**</u>

      Nothing material has changed since Mr. Dershowitz's last application to receive materials protected by the Protective Order or otherwise filed under seal in the instant matter. The Court properly denied that application – which constituted Mr. Dershowitz's third attempt to bypass the Protective Order. *See* DE 1071 (the "Modification-Denial Order").

      Frankly, it was not seemingly a close question for this Court. *See id.*

      Nor should it have been. Long-standing law proscribes precisely this kind of *post hoc* modification of a protective order. And the rationale for that precedent – especially the reasonable reliance of non-parties – is cast in stark relief by the circumstances of this case. In fact, Mr. Dershowitz's present application simply narrows his prior application down to those materials that most acutely affect non-party privacy interests. Mr. Dershowitz's proffered need for these materials – expedience – is plainly not the kind of "extraordinary circumstance or

compelling need" that would justify a modification. In contrast, there are compelling reasons to maintain the Protective Order, the modification of which is "perilous for multiple reasons," including that such modifications "undermine confidence in protective orders" and may well subject individuals to "annoyance, embarrassment, oppression, or undue burden or expense." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 246-47 (2d Cir. 2018) (citation omitted); *see also Minpeco, S.A. v. Conticommodity Servs., Inc.*, 653 F. Supp. 957, 960 (S.D.N.Y. 1987); *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979).

And the fact that Ms. Giuffre and Mr. Dershowitz are of one mind when it comes to Mr. Dershowitz's proposal is of no moment. No matter how many times they repackage the same request, the *Dershowitz* parties are singularly ill-suited to guarding *Maxwell* non-party privacy interests.

The Court should – indeed, for the reasons set forth previously by Your Honor, must – deny Mr. Dershowitz's present proposal to improperly gain discovery.

### A. This Court's Modification-Denial Order Was Correct

The provision of a wide swath of *Maxwell* discovery materials to Mr. Dershowitz requires modification of the Protective Order. In the circumstances of this case, such modification is flatly precluded by law – just as this Court correctly held in last month's Modification-Denial Order.

### 1. Modification of the Protective Order is Not Justified Under the *EPDM* Factors and Governing Law

This Court previously concluded that, as with his prior requests, Mr. Dershowitz has failed to make "a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need." Modification-Denial Order at 7 (quoting *S.E.C. v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001)); *see also id.* at 7-13; *Cravath, Swaine & Moore LLP*, 895 F.3d at 247; *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 318 (D. Conn. 2009) (explaining that in considering a motion to modify a protective order, the Court considers: (1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order).

Little further need be said in this regard, as the Court's prior conclusions remain correct and are dispositive. In sum and substance:

- The Protective Order remains "unremarkable in form and function," Modification-Denial Order at 3, and therefore the first and second *EPDM* factors, concerning the Protective Order's scope and language, heavily favor non-modification.

- Mr. Dershowitz's present request for confidential *Maxwell* materials, like the prior one (and the two before that), is prohibited by the plain terms of the Protective Order. *See* Protective Order ¶¶ 4-5, 12.

- In fact, the materials Ms. Maxwell designated confidential in *Maxwell* should neither have remained in Ms. Giuffre's possession nor been shared with other counsel. *See id.*; *see also* Modification-Denial Order at 3-6. If the parties had abided by the Protective Order, Mr. Dershowitz's requests would be moot. *See* Protective Order ¶ 12 (requiring, at the conclusion of the case, the return or destruction of materials designated confidential). In other words, compliance with Judge Sweet's order would have meant that these documents would either no longer be, or never have been, in the possession of the parties who are presently colluding to share them. *See* Modification-Denial Order at 3-6. Non-compliance should not be rewarded via modification of the Protective Order to provide *post hoc* cover to the *Dershowitz* parties.

- "Mr. Dershowitz has simply not demonstrated the existence of an extraordinary circumstance or compelling need that counsels in favor of modification." *Id.* at 7 (quotation marks and citation omitted). The Court concluded that Mr. Dershowitz's proffered bases for modification – even if well-founded, which the Court rightly doubted – were beside the point: "That is all well and good, but while fostering judicial economy and avoiding duplicative discovery are laudable goals they hardly amount to extraordinary circumstances or compelling need." *Id.* at 7-8 (quotation marks and emendations omitted).

- This Court has already concluded that, "to the extent that an analysis of the *EPDM* factors is necessary . . . the nature of reliance on the order by producing parties . . . *alone* justifies rejecting Mr. Dershowitz's request for modification." *Id.* at 11 (emphasis added). As discussed in detail below, this conclusion remains powerfully correct. *See infra* Parts I.A.2, I.B.

- Acceding to Mr. Dershowitz's request, and modifying a protective order upon which this Court has already concluded that non-parties relied, will severely undermine non-party confidence in the unsealing process. Handing to Mr. Dershowitz, to use however he sees fit in *Dershowitz*, the same documents that non-parties may seek to protect in *Maxwell,* is a substantial disincentive to non-party participation in the unsealing process. That is so for multiple reasons, including distrust of the adequacy of the privacy protections built into the process and recognition of the futility of such protections and of the process itself. *See* Modification-Denial Order at 9-10. The "temptation," *id.* at 10 n.6, to use the sealed *Maxwell* materials in *Dershowitz* in such a way as to render them judicial documents – particularly in light of Mr. Dershowitz's track record in this regard[1] – as well as the use of the information contained in the

---

[1] *See id.* Notably, in 2016, in response to Mr. Dershowitz's first attempt to "pierce" the Protective Order, Ms. Giuffre objected, arguing that "Alan Dershowitz seeks to inject himself into this litigation for the wrongful purpose of conducting a public smear campaign of Ms. Giuffre. . . . [H]e has already violated another court order directing him to stop wrongfully leaking confidential information to the media." DE 406 at 1-2.

sealed materials to predicate subpoenas, which will result in the *de facto* disclosure of those materials, means that modifying the Protective Order now to grant Mr. Dershowitz access to those documents will fairly be perceived by affected non-parties as striking the death knell against this Court's carefully balanced unsealing protocol.

2. <u>Reliance on the Protective Order, Alone, Justifies Rejecting Modification</u>

As noted above, the Court has already concluded that, "to the extent that an analysis of the *EPDM* factors is necessary . . . the fourth factor – the nature of reliance on the order by producing parties – *alone justifies rejecting Mr. Dershowitz's request for modification*." Modification-Denial Order at 11 (emphasis added). And the Court has explained in no uncertain terms that parties were justified in their expectation that the Protective Order would not be modified "for purposes external to the lawsuit in which it was entered." *Id.* at 12 (citation omitted).

> [T]here is no question that the plain terms of the *Maxwell* Protective Order would justify such an expectation. The *Maxwell* Protective Order incentivized parties to provide sensitive information in discovery by explicitly promising that said information would only be wielded in connection with litigating the claims at issue in that case and that case only. Had the parties producing discovery in *Maxwell* under the auspices of the protective order anticipated that their information could eventually be turned over to make litigation of a related, but entirely separate, case more convenient, they may have never produced information in the first place. The Court accordingly concludes that such reliance on the *Maxwell* Protective Order precludes modification.

*Id.* This remains true and, here, is outcome-determinative.

Years ago, in a different case, involving different parties, represented by different lawyers, non-parties likely made strategic decisions regarding their own responses to discovery demands – including whether and how to challenge those demands – based upon reliance on Judge Sweet's (unremarkable) Protective Order. Many did so in relation to demands that sought to elicit deeply personal private information. Moreover, the history of this case must be considered: for years, Ms. Giuffre vigorously *opposed* the release of the Sealed Materials. *See*, *e.g.*, DE 406 (2016), DE 589 (2017). In other words, at the time that the parties and non-parties negotiated the provision of confidential discovery materials in this case, it was a case in which *both parties* – Ms. Maxwell and Ms. Giuffre – sought to litigate this case privately.[2]

By means of one example, in 2016, in opposing Mr. Dershowitz's first attempt to gain confidential *Maxwell* materials, Ms. Giuffre responded that Mr. Dershowitz's "attenuated reasoning hardly provides the kind of compelling reason needed to pierce the Protective Order."

---

[2] By contrast, "Mr. Dershowitz's battle with Ms. Giuffre has proceeded in very public – and frequently toxic – fashion." Modification-Denial Order at 10 n.6.

DE 406 (Aug. 29, 2016) at 2.  Critically, she also conceded that "both the parties in this case *have long reasonably relied on the existing Protective Order*." *Id.* (emphasis added).

It was in that context, and in reliance on the Protective Order, that myriad non-parties weighed whether and how to respond to the parties' discovery demands.  This reliance was just as reasonable for non-parties as it was for the parties themselves who also "have long reasonably relied on the . . . Protective Order." *Id.*

Accordingly, the Court's "conclu[sion] that such reliance on the *Maxwell* Protective Order precludes modification" because "there is no question that the plain terms of the *Maxwell* Protective Order would justify" an expectation that it would not be modified to permit production, years later, of confidential materials to a different party in a different case for a different purpose, is as correct today as it was when the Court made it last month.  Modification-Denial Order at 12.

### B.  Nothing Material Has Changed Since Mr. Dershowitz's Last Application

Indeed, that conclusion applies with even greater force to Mr. Dershowitz's present proposal.  On this point, there can be little dispute:  Mr. Dershowitz has effectively distilled his request down to a narrower set of documents that target – with pinpoint accuracy – fundamental non-party privacy interests.  *See* DE 153 (*Dershowitz*) at 3 (requesting, among other things: (1) "the names and identities of *all* deponents, subpoena recipients, and affiants in the *Maxwell* case," *id.* at 3 (emphasis added); and (2) "*[a]ll* documents produced, or deposition or written testimony given," by a lengthy list of non-parties identified in an appendix, *id.* App. A (emphasis added)).

Of course, that is Mr. Dershowitz's whole point, and the Court plainly recognizes this fact.  *See* DE 1097 at 1-2 (the Court observing that the presently requested materials "will undoubtedly disclose names and information about numerous of the Does whose names have heretofore been [sealed]," and that their disclosure may therefore both "undermine [this Court's] careful unsealing process" and "infringe on the privacy or other countervailing interests against disclosure of the Does without their having notice and an opportunity to be heard").

If anything, Mr. Dershowitz's refined set of documents forcefully highlights why the present (fourth) request for access must be denied.

### C.  *Ovem Lupo Commitere*: The Fact that the *Dershowitz* Parties Have Agreed to this Proposal Is of No Moment

The fact that Mr. Dershowitz and Ms. Giuffre agree with each other that this Court should modify the Protective Order to provide Mr. Dershowitz capacious discovery to which he is not entitled should be irrelevant.  The Protective Order was meant to protect the interests of numerous individuals beyond just the parties, and the Court maintains a duty to safeguard those interests.  *See infra* Part II.

At present, the single objective Ms. Giuffre and Mr. Dershowitz apparently share is their desire to make the entirety of this matter public.

If one former party in *Maxwell* and a new party in *Dershowitz* – a totally different case – could simply agree to modify the Protective Order, it would grant one of the original parties a perpetual and unilateral right to terminate the Protective Order without the consent of other affected persons – flying in the face of established law and fatally undermining reasonable reliance of parties and non-parties alike upon a protective order.  *See*, *e.g.*, *Cravath, Swaine & Moore LLP*, 895 F.3d at 47 (reversing a district court's conclusion that modification of a protective order was "the cheapest and easiest thing to do" in part because, especially in light of the "vital function" such orders play, that modification would "undermine confidence in protective orders").  Permitting the *Dershowitz* parties' agreement to influence modification in *Maxwell* would, in short, create an exception that would swallow the rule.

## II. The Court's Ongoing Unsealing Process in *Maxwell*

The parties propose to provide notice to all remaining non-parties at once, arguing that this will help to streamline the unsealing process moving forward.  *See* DE 1100 at 2; DE 1099 at 1.  We believe this would be a substantial mistake, as it will increase the possibility that non-party information will be unsealed without full consideration and balancing of non-party privacy interests, especially as a result of inadequate non-party notification – a problem that has apparently already arisen with respect to one of the two Does for whom notification was attempted.[3]

Nevertheless, this proposal highlights an issue that warrants attention: regardless of how the Court notifies affected non-parties, and whether non-parties participate, it remains the exclusive province of *the Court* to protect non-party privacy interests.  In other words, there

---

[3] Ms. Maxwell has apparently "obtained new contact information for Doe 1 from a separate civil suit," and she suggests "providing the Notice to Doe 1 at the new address for any *future* pleadings that implicate his or her deposition."  DE 1100 at 2-3 (emphasis added).  It would seem plain that the protocol's "best efforts" requirement obliges the parties again to try to notify Doe 1, just as Ms. Maxwell suggests.  DE 1044 ¶ 2(b); *see* DE 1100 at 2-3.  But Ms. Giuffre objects, even for prospective filings undergoing review.  *See* DE 1099 at 3-4.

This additional notification is not about giving either party "another bite at the apple" or inviting re-litigation of prior decisions; it is about protecting the legitimate privacy interests of Doe 1 and the other non-parties.  It is no fault of theirs if notice is provided to the wrong address; they maintain the right to receive actual notice of this matter and to be afforded an opportunity to be heard.  The protocol requires the parties to "use their best efforts" to notify non-parties, which it defines as "identifying the most current address available for the nonparty in a public records database or other readily available source."  DE 1044 ¶ 2(b).  If "best efforts" is to mean anything, it must mean that, to the extent the parties learn of new contact information, they must actually use it.

ought to be no connection between a non-party's non-participation in the unsealing process and the Court's determination about the strength of the privacy interests at stake for that non-party.

During the July 23, 2020 conference, the Court ruled upon the unsealing of materials relevant to five docket entries, specifically with respect to Does 1 and 2. In the course of setting forth its rationale, the Court observed that neither Doe 1 nor Doe 2 requested excerpts of the materials at issue that pertained to them or filed objections to the unsealing of such materials. *See* July 23, 2020 Conference Tr. at 3:7-13. The Court did not, of course, state that the absence of a response from either non-party in any way influenced its decision-making. But the Court also did not make the converse statement – that the absence of a response was immaterial to its ruling.

The provisions of the protocol that provide an opportunity for non-party participation were thoughtfully and carefully crafted by this Court to robustly *permit* non-party participation. But as the protocol makes clear, a non-party's lack of participation – intentional or not – should not influence the responsibility for protecting non-party privacy interests, which lies ultimately with this Court. Paragraph 3(f) of this Court's unsealing protocol reads in relevant part as follows:

> A Non-Party's participation in this protocol is optional. . . . Non-Parties are under no obligation to object, and a Non-Party's decision not to do so shall not be deemed consent to the unsealing of any Sealed Materials. The solicitation and receipt of objections from Non-Parties who wish to participate is intended merely to aid the Court in balancing privacy and other interests against the public's right of access. The Court will conduct a particularized review of the Sealed Materials and weigh the competing interests regardless whether it receives any Non-Party Objection.

DE 1044 ¶ 3(f). As such, the protocol rightly establishes that a non-party's "optional" participation is designed "merely to aid the Court" in conducting its balancing of the relevant interests, which the Court will do "regardless" of whether or not a non-party participates in the unsealing review protocol. *Id.*

The protocol's treatment of the significance *vel non* of the absence of a response from a non-party is exactly right. That is so, first, because it comports with the uncertainties associated with non-party notification and his or her decision to participate in this unsealing process in the circumstances of this case; and, second, because it comports with the case precedent that makes the protection of non-party privacy interests the responsibility of the Court.

Non-parties may not participate in the unsealing protocol for myriad reasons. Principally, they may simply not receive notice – as underscored by the discussion above. *See supra* note 3; *see also*, *e.g.*, DE 1073 at 4 (noting that there is no evidence that Doe 1 received notice). But even if a non-party does receive notice – and even if that non-party possesses strong privacy interests that might warrant continued sealing – he or she might, rationally and understandably, be reluctant to participate in this unsealing protocol. Aside from the complex merits-assessment of the strength of any proffered objection, making any submission to this Court entails obvious risk

August 19, 2020
Page 8 of 8

of further privacy violations, notwithstanding the protections the Court has built into its protocol. Indeed, the instant litigation powerfully exemplifies just this risk. *See supra* Part I. Accordingly, even those non-parties who in fact receive notice may well elect not to participate, on the understanding that the Court will, as the protocol says, conduct its own balancing "regardless" of non-party participation.

And, indeed, precedent mandates the protocol's approach: "[t]he job of protecting [non-party privacy rights] rests heavily upon the shoulders of the trial judge." *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987); *see also United States v. Cohen*, 366 F. Supp. 3d 612, 624 (S.D.N.Y. 2019) (holding that, notwithstanding a party's "generalized representations" about non-parties' privacy interests, it is the obligation of *the Court itself* to "independently assess[] their privacy interests"); *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 3:11-CV-1209 (CSH), 2012 WL 13029602, at *9 (D. Conn. May 10, 2012) (citing *In re New York Times* for the proposition that the Court maintains the obligation to protect non-parties' privacy interests).

Respectfully Submitted,
KRIEGER KIM & LEWIN LLP

By: _____
Nicholas J. Lewin
Paul M. Krieger

cc (by ECF):   *Maxwell* Counsel of Record (15 Civ. 7433 (LAP))

cc (by email): *Dershowitz* Counsel of Record (19 Civ. 3377 (LAP))