**TODD & WELD LLP**
One Federal Street
27th Floor
Boston, MA 02110
(617) 720-2626

**AIDALA, BERTUNA & KAMINS, PC**
546 Fifth Avenue, 6th Floor
New York, NY 10036
(212) 486-0011

August 24, 2020

**VIA ECF**

The Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:   ***Giuffre v. Dershowitz***, **Case No 19-cv-3377-LAP**
> ***Giuffre v. Maxwell**,* **Case No. 15-Civ-7433-LAP**

Dear Judge Preska:

Defendant Alan Dershowitz ("Dershowitz") respectfully writes the Court in response to the letter filed by John Doe ("Doe") on August 19, 2020 (*Giuffre v. Maxwell* Dkt. No. 1105) in opposition to Dershowitz's request that Plaintiff Virginia Giuffre ("Giuffre") produce to him in *Giuffre v. Dershowitz* ("*Dershowitz*") certain confidential discovery materials and sealed filings from the *Giuffre v. Maxwell* ("*Maxwell*") matter.

Although the Court initially denied Dershowitz's request to modify the *Maxwell* Protective Order (Dkt. No. 144), after it came to light that Giuffre's counsel in *Dershowitz* possesses and has reviewed confidential and sealed materials from *Maxwell*, the Court subsequently directed the parties in *Dershowitz* to confer regarding "reasonable accommodation concerning Mr. Dershowitz's requests for various filings and discovery materials from *Giuffre v. Maxwell*" so as to be "practical" and "avoid making this issue into a lengthy and expensive sideshow[.]" (Dkt. No. 152). The parties in *Dershowitz* have done just that and have presented a "reasonable" approach in which Giuffre has no objection to producing certain enumerated categories from among the *Maxwell* confidential materials and sealed filings in her possession so long as the Court deems them relevant and grants her permission to do so.

This proposal has been laid out in Dershowitz's and Giuffre's Joint Letter to the Court filed on July 29, 2020 (Dkt. No. 153). Accordingly, Dershowitz has requested that Giuffre's counsel be permitted to produce to Dershowitz all categories of documents listed on Appendix A of Defendant's July 10, 2020 letter to the Court (Dkt. No. 150), *with the documents otherwise remaining subject to all terms and conditions of the Maxwell Protective Order*. Dershowitz submits that this is the only solution short of disqualification to remedy the grossly unfair information imbalance which presently exists in this case. Such a remedy is warranted here and consistent with the teachings of *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308 (D. Conn. 2009) ("*EPDM*"), as will be discussed below.

Doe's letter in opposition to the Joint Letter submitted to the Court by the parties in *Dershowitz* rehashes the arguments he has made previously regarding the unsealing of documents in *Maxwell*. Doe's arguments are largely all variations on the theme that the *Maxwell* Protective Order cannot be modified without defeating the reasonable expectations of the parties and non-parties who provided discovery in reliance upon that Protective Order. Critically, however, Doe does not state that *he* provided *any* discovery in reliance on the Protective Order, and a careful reading of Doe's letter strongly suggests that he did not.[1] The central argument of Doe's letter therefore likely has no application to Doe himself. In any event, even as applied to non-parties who unlike Doe *did* provide discovery pursuant to the *Maxwell* Protective Order, controlling law counsels that to the extent those individuals expected the Protective Order could never be modified, that expectation was plainly unreasonable.

Finally, it bears emphasizing that virtually all of the prominent individuals accused by Giuffre concerning whom Dershowitz seeks discovery have already been publicly identified by name in deposition testimony which has been unsealed in *Maxwell*. *See* Exhibit A. Thus, particularly to the extent that what is really at issue here is the naming of these individuals in confidential documents and not the disclosure to Dershowitz of discovery these individuals themselves provided, the solution suggested by Dershowitz really does not infringe any valid privacy interest and is eminently reasonable and fair to all concerned parties.[2]

## I.     Doe cannot have reasonably relied on the Protective Order if he did not even provide discovery in *Maxwell*.

When a party has reasonably relied on a protective order in providing discovery, modification is proper when there is "improvidence in the grant of [the] order or some extraordinary circumstance <u>or</u> compelling need." *Martindell v. Int'l Tel. & Tel. Corp.,* 594 F.2d 291, 296 (2d Cir. 1979)) (emphasis added). Importantly, however, the *Martindell* presumption against modification simply does not apply if a party did not provide discovery in reliance upon the protective order in questions, such as where discovery was provided before the protective order was in place. *S.E.C. v. TheStreet.com*, 273 F.3d 222, 233-34 (2d Cir. 2001). "Absent such reliance, the *Martindell* standard 'never [comes] into play,'" and the court is free to modify the order at its

---

[1] Dershowitz has reason to believe that Doe is a certain friend of Jeffrey Epstein's whom Giuffre in her unpublished manuscript alleged she was lent to for sexual purposes. His name has been redacted from the version of the manuscript unsealed as part of the summary judgment record in *Maxwell*, and he is one of the very few individuals to have been accused by Giuffre in her manuscript but not in the deposition testimony unsealed in the *Maxwell* case. Insofar as Doe is continuing to oppose Dershowitz's access to confidential materials from *Maxwell* in order to prevent Dershowitz from obtaining an unredacted copy of the manuscript, it should be noted that Giuffre has already produced an unredacted copy of the manuscript to Dershowitz in this case. So if Dershowitz is correct about Doe's identity, it is not at all clear what Doe is hoping to accomplish through continuing to inject himself into this matter.

[2] Although Dershowitz can certainly subpoena Doe in this litigation, it appears that Doe may not be in possession of the documents he is asking the Court to withhold from Dershowitz. This is therefore not an adequate solution to the present problem.

discretion after balancing the parties' interests. *EPDM*, 255 F.R.D. at 318 (quoting *S.E.C. v. TheStreet.com*, 594 F.2d at 234). Accordingly, if the Court determines that Doe did not provide any documents or testimony in *Maxwell*, the Court should reject all his arguments which are premised upon supposed "reasonable reliance" on the Protective Order.

## II.     Does overstates the reliance interests and the extent to which they would be frustrated by Dershowitz being granted confidential access to certain materials.

Regardless of whether Doe even has standing to argue reasonable reliance, he grossly overstates the case for reasonable reliance on the *Maxwell* Protective Order given the presence of several factors here which counsel in favor of modification. As the court in *EDPM* explained:

> An examination of Second Circuit case law reveals the following factors are relevant when determining whether a party has reasonably relied on the protective order: (1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order. Additional considerations that may influence a court's decision to grant modification include: the type of discovery materials the collateral litigant seeks and the party's purpose in seeking a modification.

*EPDM* 255 F.R.D. at 318.

*Scope*. Regarding scope, the *EDPM* court explained that "[a] blanket protective order is more likely to be subject to modification than a more specific, targeted order because it is more difficult to show a party reasonably relied on a blanket order in producing documents or submitting to a deposition." *EPDM*, 255 F.R.D. at 319. "A blanket protective order grants sweeping protection to most, if not all, discovery materials produced in a litigation, even discovery material that a party would have been required to disclose in the absence of a protective order." *Id.* at 19. "On the other hand, protective orders focused on a particular document or the testimony of a few key people are often granted after a specific request by a party and involve a more pointed inquiry by the court into the need for confidentiality." *Id.*

There can be no serious question here that the *Maxwell* Protective Order is a "blanket" type order which allowed the parties to indiscriminately apply confidential designations to apparently the vast majority of discovery in the case. Indeed, it was precisely this potential for abuse which motivated Giuffre to oppose (unsuccessfully) Ms. Maxwell's form of protective order which Judge Sweet ultimately adopted verbatim. *See Giuffre v. Maxwell* Dkt. No. 40. This factor accordingly weighs in favor of modification.

*Language anticipating modification*. "Where the deponent or party could not have reasonably relied on the protective order to continue indefinitely, a court may properly permit modification of the order." *EPDM*, 255 F.R.D. at 318. A protective order that expressly "anticipates the potential for modification" or "contains specific procedures for disclosing confidential materials to non-parties" is more susceptible to modification. *Id.* at 320. The language of the *Maxwell* Protective Order expressly contemplated future modifications and non-party disclosures. Paragraph 5 allows confidential information to be disclosed to numerous

categories of individuals, including "deponents, witnesses, or potential witnesses" or "by written agreement of the parties." Likewise, Paragraph 14 allows modification of the order by the Court "at any time for good cause." Finally, Paragraph 13 provides that the Protective Order "shall have no force and effect on the use of any [confidential information] at trial[.]" The parties thus clearly contemplated that the Protective Order may be modified in the future and would not prevent the public disclosure of information at trial, rendering unreasonable any long-lasting reliance.

*Level of court inquiry*. The less a court inquires into the parties' "good cause" for seeking a protective order, the more likely the order can be modified without frustrating the parties' reasonable expectations. *EPDM*, 255 F.R.D. at 318. While the parties in *Maxwell* did not stipulate to a protective order, the Court entered a verbatim version of Ms. Maxwell's proposed order with no opinion explaining its good cause determination or how it should apply to individual documents, over an objection from Giuffre that the order was too broad and would lead to abuse. *See Giuffre v. Maxwell* Dkt. No. 40. In granting this Protective Order, the Court deferred to the parties to agree how to designate each document. Moreover, the Court subsequently relinquished all control over confidentiality determinations with respect to filing under seal with a blanket sealing order. The Second Circuit in *Brown v. Maxwell* held that, in doing so, the district court improperly "failed to conduct the requisite particularized review when ordering the sealing of the materials at issue." 929 F.3d 41, 44 (2d Cir. 2019). The Court's lack of scrutiny concerning the use (and abuse) of the Protective Order counsels in favor of reasonable modification.

*Nature of reliance*. "Where a party or deponent, in reliance on the protective order, gives up its right to refuse to testify, or to produce documents it would not otherwise be compelled to produce, the heightened *Martindell* presumption against modification naturally applies." *EPDM*, 225 F.R.D. at 322. "Conversely, where the parties have not given up any rights and indeed would have been compelled to produce the discovery materials even in the absence of a protective order, the presumption against modification is not as strong. In such cases, the protective order has been granted to parties concerned about disclosing non-public information and as a convenience to avoid time-consuming discovery disputes and document-by-document good cause showings." *Id.* at 323.

Doe particularly relies on the fourth factor, nature of reliance, in his argument that Dershowitz should not be provided access to the *Maxwell* material from Giuffre. However, Doe's argument in this regard is flawed. The court in *EPDM* was clear to distinguish between the reasonableness of the reliance of party who gave up a right, in reliance of a protective order, not to provide testimony or documents, as opposed to a party who would have been compelled to produce discovery materials whether or not there existed a protective order – such as in this case. As to the fourth factor, the *EPDM* court stated:

> *Where a party or deponent, in reliance on the protective order, **gives up** its right to refuse to testify, or to produce documents it would not otherwise be compelled to produce, the heightened Martindell presumption against modification naturally applies. ... For example, deponents may agree to give up their Fifth Amendment right against self-incrimination in reliance on the protective order. Id. In such cases, but for the protective order, the party seeking that testimony would be unable to acquire it. ... **Conversely, where the parties have not given up any rights and***

*indeed would have been compelled to produce the discovery materials even in the absence of a protective order, the presumption against modification is not as strong.*

*EPDM*, 255 F.R.D. at 323 (emphasis added)

Here, with the exception of Ms. Maxwell herself, there is no suggestion that any individual providing discovery in *Maxwell* would have invoked the Fifth Amendment or risked contempt of court rather than provide discovery had the Protective Order not existed. Certainly, such an argument is wholly inapplicable to individuals like Doe who (apparently) did not provide any discovery but were merely named in discovery provided by others. Doe has not articulated that he has given up any rights bestowed upon him under the law in reliance of the Protective Order prior to providing information, documents and/or testimony in *Maxwell*. Therefore, he is susceptible to being compelled to produce the same information, documents and/or testimony in this matter, and cannot claim that he reasonably relied on the Protective Order. As such, Doe's attempt to frustrate the production of sealed and confidential information in *Maxwell* by Giuffre to Dershowitz, in a manner acceptable to the Court, fails.

**III.    Dershowitz has a "compelling need" for the information sought sufficient to overcome any reasonable reliance.**

Limited modification of the Protective Order to allow Dershowitz confidential access to the materials sought is appropriate here both because the *EPDM* factors discussed above sufficiently rebut the presumption against modification, and because Dershowitz has shown a "compelling need" for the information which outweighs any interest in withholding the material from him. The discovery is sought not just to make a "collateral" attack on Plaintiff's credibility, but much more importantly, to disprove Giuffre's claims that Dershowitz defamed her by calling her a "serial liar" and stating that she has a "documented history of lying about prominent people." Am. Compl., Dkt No. 117 at ¶ 17(p); ¶ 17(n)(i). Dershowitz's truthful speech is constitutionally protected and he must be allowed discovery necessary for him to vindicate those constitutional rights.

In addition, and just as importantly, the discovery sought from the *Maxwell* case is believed to be particularly relevant to Dershowitz's defense of the sexual assault claims which Giuffre has brought against him on the theory that he was "on notice" that she was being sexually trafficked by Epstein merely by observing her in Epstein's home. *Id.* ¶ 38. (Dershowitz never met Giuffre and never had sex with her, but he is entitled to prove that the allegation fails for other reasons as well). Giuffre has further alleged that Dershowitz was a "co-conspirator" of Jeffrey Epstein and Ghislaine Maxwell, *id.* at ¶¶ 6, 52, and, in essence, that anyone setting foot in any Epstein's residences, including Dershowitz, was or should have been aware Epstein was engaged in the sex trafficking of minors. *See id.* at ¶¶ 61-63, 71. Dershowitz is entitled to discover evidence and present it to the jury that the so-called acts comprising "trafficking" which Giuffre alleges put him on notice that she did not consent in fact *never happened*.

Dershowitz can only do this by offering evidence to the jury that the specific acts of alleged trafficking claimed by Giuffre with the individuals she has affirmatively placed at issue *never*

*occurred*.  This means, among other things, placing the falsely accused men under oath and eliciting their denials.  Although this will obviously have the attendant effect of undermining Giuffre's credibility, this evidence is not "collateral."  Rather, it is evidence which goes directly to an affirmative allegation of the complaint – whether the trafficking alleged by Giuffre that Dershowitz supposedly was on notice of ever happened.  *See, e.g., Kephart v. Wandstradt*, 1986 WL 16158, at *1 (6th Cir. 1986) (distinguishing "direct testimony concerning evidence alleged in the complaint" from impeachment on a "collateral matter").  It would be fundamentally unfair to allow Giuffre to continue to press these allegations where she and her attorneys have had the full benefit of discovery already conducted concerning these allegations which is in her possession and which is being withheld Dershowitz and his attorneys.  As the Court has already acknowledged, Dershowitz should not be forced to "litigate this action with one arm tied behind his back." (Dkt. No. 144).

For the foregoing reasons and the reasons explained in his prior filings on this subject, Dershowitz respectfully requests that the Court permit modification of the Protective Order in *Maxwell* to allow the exchange of discovery and information as detailed in the Dershowitz's and Giuffre's Joint Letter to the Court (Dkt. No. 153).

Respectfully Submitted,

*/s/ Howard M. Cooper*
Howard M. Cooper

*/s/ Imran H. Ansari*
Imran H. Ansari

CC:    *Counsel of Record via ECF (Giuffre v. Dershowitz, Case No. 19-Civ-3377-LAP)*
       *Counsel of Record via ECF (Giuffre v. Maxwell, Case No. 15-Civ-7433-LAP)*