UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Virginia L. Giuffre,
          Plaintiff,                                    Case No.: 15-cv-07433-LAP
v.
Ghislaine Maxwell,
          Defendant.
_____/

**THE GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS'
MEMORANDUM OF LAW IN SUPPORT OF EX PARTE MOTION TO INTERVENE
AND FOR  CONFIDENTIAL ACCESS TO JUDICIAL RECORDS AND DISCOVERY
DOCUMENTS**

The Government of the United States Virgin Islands (the "USVI") moves to intervene in

this action for the limited purpose of obtaining confidential access to both:  (a) all sealed

documents related to the parties' motions for summary judgment [ECF No. 540 to 543, 586 to

586-3, 620 to 621, and 872]; and (b) all unfiled discovery deposition transcripts and exhibits

thereto.  The USVI seeks to modify the Protective Order [ECF No. 62] solely to be granted

confidential access to these materials, and, if granted access, agrees to be bound by the Protective

Order.

The USVI seeks confidential access to these sealed documents and unfiled discovery

materials because they are very likely relevant to its pending Virgin Islands Criminally

Influenced and Corrupt Organizations Act ("CICO") enforcement action against the Estate of

Jeffrey E. Epstein and several Epstein-controlled entities before the Superior Court of the U.S.

Virgin Islands.  *See* Exhibit A hereto (USVI's operative First Amended Complaint, filed

February 11, 2020).  Access to other judicial documents in this action has already been granted

to intervening private parties in interest, *see Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019), and

also is the subject of ongoing litigation before this Court.  *See*, *e.g.*, ECF No. 1096-1108.  The

1

Court therefore should grant the USVI's motion and enter an order allowing the USVI to intervene as of right or by leave and to obtain confidential access to all sealed documents relating to the parties' motions for summary judgment and all unfiled deposition transcripts and exhibits thereto for use in its pending law enforcement action against the Epstein Estate.

**BACKGOUND**

Under Virgin Islands law, the CICO authorizes the USVI through its Attorney General to prosecute a civil action against any persons engaged in a pattern of criminal activity through association with any enterprise.  14 V.I.C. §§ 605, 607.  The USVI alleges in its CICO action that decedent Jeffrey E. Epstein engaged in a criminal sexual trafficking enterprise in the Virgin Islands, wherein he used his vast wealth and property holdings and a deliberately opaque web of corporations and companies to transport young women and girls to his privately-owned islands where they were held captive and subject to severe and extensive sexual abuse.  *See* Ex. A, ¶¶ 40-114.  Epstein and his associates lured these girls and young women to his island with promises of modeling and other career opportunities.  *Id*., ¶ 49.  Once they arrived, though, they were sexually abused, exploited, and held captive.  *Id.*

By way of background, Epstein's privately-owned islands in the Virgin Islands were essential to the sex-trafficking enterprise.  Little St. James is a secluded, private island, nearly two miles off-shore from St. Thomas with no other residents while Epstein resided there.  *Id.*, ¶ 66.  It is accessible only by private boat or helicopter, with no public or commercial transportation servicing the island.  *Id.*  Flight logs show that between 2001 and 2019, girls and young women were transported to the Virgin Islands and then helicoptered to Little St. James. *Id.*, ¶ 46.  Air traffic controller reports state that some victims appeared to be as young as 11 years old.  *Id*., ¶ 51.  Evidence also shows that when two of the victims, one age 15, attempted to

escape from Little St. James, Epstein was able to organize search parties, locate them, return them to his house, and then confiscate the 15-year old girl's passport to hinder her ability to escape again. *Id.*, ¶¶ 57-58.

Epstein's Virgin Islands-based corporations and companies also played central roles in the criminal sex-trafficking enterprise. CICO action Defendant Plan D, LLC, for example, knowingly and intentionally facilitated the trafficking scheme by flying underage girls and young women into the Virgin Islands to be delivered into sexual servitude. *Id.*, ¶ 97. CICO action Defendants Great St. Jim, LLC and Nautilus, Inc.—for which CICO action Defendants and Epstein Estate Executors Darren Indyke and Richard Kahn served, respectively, as Secretary and Treasurer—knowingly participated in the Epstein Enterprise and facilitated the trafficking and sexual servitude of underage girls and young women by providing the secluded properties at, from, or to which Epstein and his associates could transport, transfer, maintain, isolate, harbor, provide, entice, deceive, coerce, and sexually abuse them. *Id.*, ¶¶ 23-29, 98.

The Government alleges that Epstein and the CICO Defendants violated CICO by committing and conspiring to commit criminal human trafficking offenses based upon the foregoing conduct. *See id.*, ¶¶ 115-170 (Counts I-VIII). The Government further alleges that they violated CICO by committing and conspiring to commit various child-abuse, neglect, rape, unlawful-sexual-contact, prostitution, and sex-offender-registry-related offenses based upon the foregoing sexual-abuse conduct. *See id.*, ¶¶ 171-258 (Counts IX-XIX). The Government also alleges that Defendants engaged in a civil conspiracy to conceal the unlawful sexual abuse alleged. *See id.*, ¶¶ 281-287 (Count XXII).

In the present motion, the USVI seeks access to the following sealed documents and unfiled discovery:

- (a) All currently sealed documents filed in support of Defendant Ghislaine Maxwell's motion for summary judgment (ECF No. 540 to 543, inclusive);

- (b) All currently sealed documents filed in support of Plaintiff Virginia L. Giuffre's opposition to Defendant's motion for summary judgment (ECF No. 586 to 586-3, inclusive);

- (c) All currently sealed documents in support of Defendant's Reply in support of motion for summary judgment (ECF No. 620 to 621, inclusive);

- (d) All currently sealed parts of the Court's Opinion on Defendant's motion for summary judgment (ECF No. 872);

- (e) All currently unfiled discovery deposition transcripts and exhibits thereto in this action.

The USVI expects that these sealed documents and unfiled discovery contain critical information related to Epstein's criminal enterprise in the Virgin Islands and beyond, and will be invaluable for its CICO law enforcement action against the Estate and other named parties.[1]

## LEGAL ARGUMENT

### A.   The USVI's Motion to Intervene Should be Granted.

Federal Rule of Civil Procedure 24 provides for intervention as of right by anyone claiming "an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Rule 24(b) permits intervention to anyone "who has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Rule 24(b) gives the Court "broad discretion to permit a nonparty to intervene where the that party's claims and the pending civil action share questions of law and fact and where such intervention would not

---

[1] The USVI has attempted to obtain these documents by serving a Virgin Islands Court-issued subpoena, domesticated by a New York Court, upon counsel for Plaintiff herein, who was unable to produce the documents because of this Court's Protective Order.

'unduly delay and prejudice the adjudication of the rights of the original parties.'" *Bridgeport Harbour Place I, LLC v. Ganim*, 269 F. Supp. 2d 6, 8 (D. Conn. 2002) (internal citation omitted).

District courts in this Circuit have permitted government actors to intervene in civil actions. *See Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992). Where an intervening party seeks modification of a protective order to allow access to documents, this Court has found a motion to intervene to be the appropriate mechanism. *See Giuffre v. Maxwell*, 325 F. Supp. 3d 428, 444 (S.D.N.Y. 2019), *rev'd on other grounds, Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019); *Giuffre v. Maxwell*, No. 15 Civ. 7433 (RWS) (S.D.N.Y. Nov. 2, 2016), ECF No. 496 (Opinion Granting Dershowitz Motion to Intervene); *Giuffre v. Maxwell*, No. 15 Civ. 7433 (RWS) (S.D.N.Y. May 3, 2017), ECF No. 892 (Opinion Granting Cernovich Motion to Intervene). Intervention may be permitted even years after a case has been administratively closed. *Counihan v. Allstate Ins. Co.*, 907 F. Supp. 54 (E.D.N.Y. 1995); *AB v. Rhinebeck Cent. Sch. Dist.*, 224 F.R.D. 144, 155 (S.D.N.Y. 2004) (noting the "district court has discretion with regard to determining the timeliness of a motion to intervene.").

Under Rule 24(a), this Court and others in this Circuit recognize a four-part test for a non-party to be granted intervention as of right:

> Upon 1) timely application anyone shall be permitted to intervene in an action when the applicant claims 2) an interest relating to the property or transaction which is the subject of the action and 3) the applicant is so situated that the dispositions of the action may as a practical matter impair or impede the applicant's ability to protect that interest, 4) unless the applicant's interest is adequately represented by existing parties.

*Rhinebeck Cent. Sch. Dist.*, 224 F.R.D. at 155 (citing *Wash. Elec. Cooperative, Inc. v. Mass. Municipal Wholesale Elec. Co.*, 922 F.2d 92, 96 (2d Cir. 1990)). For timeliness, courts consider "'(1) how long the applicant had notice of the interest . . . ; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any

unusual circumstances militating for or against a finding of timeliness.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (quoting *United States v. Pitney Bowes*, Inc., 25 F.3d 66, 70 (2d Cir. 1994)).  The interest asserted must be "'direct, substantial, and legally protectable'" and not "'speculative or remote.'" *Abondolo v. GGR Holbrook Medford, Inc.*, 285 B.R. 101, 109 (E.D.N.Y. 2002) (quoting *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001)).

Under Rule 24(b), courts in this Circuit consider the following factors in assessing whether to grant permissive intervention:

> (i) whether permitting the intervention would unduly delay or prejudice the adjudication of the dispute among the original parties to the litigation; (ii) the nature of the intervenor's interests; (iii) whether those interests could be adequately represented by existing parties; and (iv) whether permitting intervention will assist in developing and resolving the factual and legal disputes in the litigation.

*In re Visa Check/MasterMoney Antitrust Litig*., 190 F.R.D. 309, 312 (E.D.N.Y. 2000). When considering permissive intervention, "courts must examine whether intervention will prejudice the parties to the action or cause undue delay." *Abondolo*, 285 B.R. at 110.

Pursuant to Rule 24, the USVI has a right to intervene in this action.  Turning first to the Rule 24(a) four-part test, the USVI satisfies each of the factors. The timeliness of the USVI's Motion is not at issue because this litigation has closed, and there is no prejudice to the parties. Moreover, intervention has been permitted years after a litigation has ended.  *See Giuffre*, 325 F.Supp. 3d at 437.  Therefore, the USVI satisfies this factor.

The USVI also asserts interests that are "'direct, substantial, and legally protectable.'" *Abondolo*, 285 B.R. at 109 (internal citation omitted).  The USVI has a substantial law enforcement interest to protect in its CICO enforcement action currently pending in the Virgin Islands. The Attorney General of the Virgin Islands is responsible for advocating for the public's

6

interest and enforcing the criminal laws of the Virgin Islands.  *See* 3 V.I.C. § 114(3) (USVI Attorney General has power and duty to "prosecute in the name of the People of the Virgin Islands, offenses against the laws of the Virgin Islands"); 14 V.I.C. § 607(a) (USVI "Attorney General . . . may institute civil proceedings against any person . . . in order to obtain relief from conduct constituting a violation or in order to prevent or restrain a violation of any provision or provisions of [the CICO].").  To protect and uphold that law enforcement responsibility, the USVI seeks to intervene in this action.  The individuals involved with *this* action, both named parties and non-parties, are potentially victims, perpetrators and/or witnesses to the conduct at issue in the USVI's CICO enforcement action.  Moreover, the facts of this case substantiate at least some of the USVI's claims, making it necessary to seek intervention to access information that will aid in the enforcement of both federal law and the laws of the Virgin Islands.

The USVI also satisfies factors three and four because, absent intervention, its ability to prove its causes of action in its law enforcement action may be hindered.  *Rhinebeck Cent. Sch. Dist.*, 224 F.R.D. at 156.  No party to the present litigation has the responsibility of either protecting the interests of the people of the Virgin Islands or enforcing its laws, as the USVI itself does.  Moreover, the USVI also may be hindered absent intervention because this action involves testimony by and/or about Epstein, whereas his direct testimony is unavailable in the CICO action due to his death while in federal custody.  Furthermore, the allegations brought in the present complaint are demonstrably distinct from those brought by the USVI in its CICO enforcement action.  Therefore, the USVI satisfies this and all factors for intervention as of right.

The USVI also satisfies Rule 24(b)'s requirements for permissive joinder, as a nonparty whose claims "share questions of law and fact" with the litigation and whose intervention "would not 'unduly delay and prejudice the adjudication of the rights of the original parties.'"

*Bridgeport Harbour*, 269 F. Supp. 2d at 8 (internal citation omitted).  The USVI's intervention would not unduly delay or prejudice the adjudication of the dispute among the original parties to the litigation because this litigation is closed (*other than with respect to pending disputes over unsealing and third-party access to documents*) and because the USVI's substantial interests, discussed *inter alia*, were not represented by the existing parties.  *In re Visa Check/MasterMoney Antitrust Litig.*, 190 F.R.D. at 312.

For all of the reasons set forth, the USVI's Motion to Intervene should be granted.

**B.      The USVI's Motion for Access to Sealed Documents Should be Granted.**

The First Amendment and federal common law each establish a presumption in favor of access to certain judicial documents.  *Guzik v. Albright*, No. 16-CV-2257 (JPO), 2018 U.S. Dist. LEXIS 196006, at *9 (S.D.N.Y. Nov. 16, 2018); *see Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004).  The initial issue on a non-party's request for access to a document filed in a court is whether it is a "judicial document."  *Trump v. Deutsche Bank AG*, 940 F.3d 146, 150-51 (2d Cir. 2019) (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)). Merely filing a document with a court "'is insufficient to render that paper a judicial document subject to the right of public access.'"  *Trump*, 940 F.3d at 150 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")).

To be designated a judicial document, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process."  *Amodeo*, 44 F.3d at 145.  Judicial documents are considered on a "continuum," ranging from "matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*"); *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 583 (S.D.N.Y. 2009).  "Especially

great weight is given to documents that are material to particular judicial decisions and thus critical to 'determining litigants' substantive rights -- conduct at the heart of Article III -- and . . . public monitoring of that conduct.'" *All Funds*, 643 F. Supp. 2d at 583 (quoting *Amodeo II*, 71 F.3d 1049).

Federal courts "'employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law.'" *United States v. Doe*, No. 3:19-MC-00027-AWT, 2019 U.S. Dist. LEXIS 36605, at *3 (D. Conn. Mar. 6, 2019) (quoting *Newsday LLC v. County of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013)). In the Second Circuit, courts utilize two methods approaching the First Amendment right. *Doe*, 2019 U.S. Dist. LEXIS 36605, at *3. The "experience-and-logic" approach applies to both judicial proceedings and documents, and asks "both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Lugosch*, 435 F.3d at 120. The second, applied only when the court considers documents in proceedings covered by the First Amendment, asks whether the documents "are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Id.*

For the "experience-and-logic" approach, courts employ a two-pronged inquiry. *Doe*, 2019 U.S. Dist. LEXIS 36605, at *4; *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004). First, courts must consider "whether the place and process have historically been open to the press and general public. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8, 106 S. Ct. 2735 (1986) ("*Press-Enterprise II*"). Second, courts must consider "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.*; *Hartford*, 380 F.3d at 92 ("The courts that have undertaken this type of inquiry have generally

invoked the common law right of access to judicial documents in support of finding a history of

openness.").  For the second approach, access to judicial documents has been "derived from or a

necessary corollary of the capacity to attend the relevant proceedings."  *Hartford*, 380 F.3d at 93.

The federal common law right to access judicial documents attaches with different weight

depending on two factors.  *Doe*, 2019 U.S. Dist. LEXIS 36605, at *6.  Those factors assess "the

role of the material at issue in the exercise of Article III judicial power and the resultant value of

such information to those monitoring the federal courts."  *Amodeo II*, 71 F.3d at 1049.  The

common law right must be weighed against countervailing interests favoring privacy, namely:

> (1) the need for public access to the documents at issue; (2) the extent of previous
> public access to the documents; (3) the fact that someone has objected to
> disclosure, and the identity of that person; (4) the strength of any property and
> privacy interests asserted; (5) the possibility of prejudice to those opposing
> disclosure; and (6) the purposes for which the documents were introduced during
> the judicial proceedings.

*United States v. Harris*, 204 F. Supp.3d 10, 16-17 (D.D.C. 2016); *Doe*, 2019 U.S. Dist. LEXIS

36605, at *6-7.  Only when competing interests outweigh the presumption may access be denied,

and "[w]here the presumption of access is 'of the highest' weight, as to material sought by the

public or press, the material 'should not remain under seal absent the most compelling reasons.'"

*Lugosch*, 435 F.3d at 123 (quoting *Joy v. North*, 692 F.2d 880 (2d Cir. 1982)); *Guzik v. Albright*,

No. 16-CV-2257 (JPO), 2018 U.S. Dist. LEXIS 196006, at *6-7 (S.D.N.Y. Nov. 16, 2018)

(noting neither "the mere '[b]road and general' invocation of a privacy interest," nor "[v]ague

allusion to unelaborated primacy concerns" warrants denial of access.) (quoting *In re N.Y. Times

Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).

The sealed documents to which the USVI seeks access here are judicial documents under

both the common law and First Amendment analysis.  *See Brown*, 929 F.3d at 47; *Lugosch*, 435

F.3d at 123 (noting documents submitted in support a motion for summary judgement, whether

or not relied upon, "are unquestionably judicial documents under the common law."). And, as at least one Court has found that "there is no countervailing privacy interest sufficient to justify their continued sealing." *Brown*, 929 F.3d at 48. Due to the "strong First Amendment presumption," denial of access to the summary judgment documents "may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values . . . ." *Id.* at 47. Here, as the Court noted in *Brown*, none exist. *Id.* at 48.

Moreover, the USVI seeks access to the summary judgment documents for use in its own law enforcement action. *See generally Foltz v. State Farm Mut. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) ("Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding wasteful duplication of discovery."). Since the USVI seeks access to the sealed documents for use in its own related law enforcement action, subject to a protective order that will maintain appropriate confidentiality, and not to publicize the information contained therein, any concerns related to the privacy of parties identified therein is absent. The Court thus should grant the USVI access to these sealed documents.

C.     **The USVI's Motion for Confidential Access to Unfiled Discovery Documents Should be Granted.**

The Court also should modify the existing Protective Order (ECF No. 62) to permit the USVI to confidentially access any discovery deposition transcripts and exhibits that have not been filed with the Court. The Second Circuit has held that "[w]here there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) 'absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need.'" *SEC v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) (quoting *Martindell v. IT&T Corp.*, 594 F.2d 291, 296 (2d Cir. 1979)). Here, two

circumstances support the Court's modification of the Protective Order to grant the USVI confidential access to unfiled discovery deposition documents.

First, the existing Protective Order (ECF No. 62) is a blanket protective order, not a targeted order making findings with respect to particular documents or testimony.  Courts in this Circuit, including this Court, have held that litigating parties have lesser reliance interests in blanket protective orders than in more targeted orders.  *See*, *e.g.*, *In re EPDM Antitrust Litig.*, 255 F.R.D. 308, 319 (D. Conn. 2009) ("When considering a motion to modify, it is relevant whether the order is a blanket protective order, covering all documents and testimony produced in a lawsuit, or whether it is specially focused on protective certain documents or certain deponents for a particular reason.  A blanket protective order is more likely to be subject to modification than a more specific, targeted order because it is more difficult to show a party reasonably relied on a blanket order in producing documents or submitting to a deposition."); *Nielsen C. (U.S.), LLC v. Success Systems, Inc.*, 112 F. Supp. 3d 83, 120 (S.D.N.Y. 2015) ("A broad protective order is less likely to elicit reliance 'because it is more difficult to show a party reasonably relied on a blanket order in producing documents or submitting to a deposition.'") (quoting *In re EPDM*, 255 F.R.D. at 319).  Since the Protective Order does not address specific deposition testimony or exhibit documents, the parties do not have demonstrated reliance interests in applying the Order to this testimony or these documents.

Second, the USVI's interest in obtaining access to testimony and documents in this action relating to Epstein's sex-trafficking conduct that also is at issue in its CICO law enforcement action is considerable.  The USVI seeks access to this discovery through this action because it already has been provided and therefore *at the very least* may be obtained more expeditiously herein than through duplicative discovery in its separately-filed action.  *See generally In re*

12

*EPDM*, 255 F.R.D. at 324 ("Whether the collateral litigant could retrieve the same materials in question through its own discovery requests or whether it is attempting to subvert a limitation on discovery, such as the close of the factual record, should be taken into account.  Certainly, if the litigant could access the same materials and deposition testimony by conducting its own discovery, it is in the interest of judicial efficiency to avoid such duplicative discovery."); *Foltz*, *supra*, 331 F.3d at 1131 ("Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding wasteful duplication of discovery.").

Moreover, the USVI's interest in accessing this discovery may be far greater than a matter of procedural efficiency.  In light of Epstein's death in federal prison after the discovery in this action was taken, his direct testimony is unavailable to the USVI.  Thus, any testimony by or about Epstein in this action may be critical to the USVI's law enforcement action.

Either or both of these considerations provide compelling grounds for modifying the Protective Order to grant the USVI access to unfiled discovery deposition transcripts and exhibits to those depositions in this action.

## CONCLUSION

For all of the foregoing reasons, the USVI respectfully moves this Court to GRANT the Ex Parte Motion to Intervene and for Access to Judicial Records and Discovery Documents.

Dated: September 1, 2020

Respectfully submitted,

/s/ *William H. Narwold*
William H. Narwold, Esq.
Motley Rice LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103

13

Tel:    860-882-1676
Fax:    860-882-1682
Email: bnarwold@motleyrice.com

*Counsel of Record for Proposed Intervenor*
*Government of the United States Virgin Islands*

# <u>EXHIBIT</u>

# <u>A</u>

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

GOVERNMENT OF THE UNITED STATES
VIRGIN ISLANDS,

               PLAINTIFF,

    V.

DARREN K. INDYKE, in his capacity as the
EXECUTOR FOR THE ESTATE OF JEFFREY E.
EPSTEIN and ADMINISTRATOR OF THE 1953
TRUST; RICHARD D. KAHN, in his capacity as
the EXECUTOR FOR THE ESTATE OF JEFFREY
E. EPSTEIN, and ADMINISTRATOR OF THE
1953 TRUST; ESTATE OF JEFFREY E. EPSTEIN,
THE 1953 TRUST, PLAN D, LLC; GREAT ST.
JIM, LLC; NAUTILUS, INC.; HYPERION AIR,
LLC; POPLAR, INC., SOUTHERN TRUST
COMPANY, INC.; JOHN AND JANE DOES

               DEFENDANTS,

Case No.:

**ACTION FOR DAMAGES**

<u>JURY TRIAL DEMANDED</u>

---

**<u>FIRST AMENDED COMPLAINT</u>**

    **COMES NOW**, the Government of the United States Virgin Islands ("Government") and

files this First Amended Complaint against the above-named Defendants and in support thereof,

would show unto the Court as follows:

**JURISDICTION AND PARTIES**

    1.    The Attorney General of the United States Virgin Islands (herein after "Virgin

Islands") brings this action on behalf of the Plaintiff, Government of the Virgin Islands, pursuant

to 3 V.I.C. § 114 and her statutory authority to enforce the laws of the Virgin Islands, and advocate

for the public interest, safety, health and well-being of persons in the Virgin Islands.

2.      This Court has subject matter jurisdiction over this civil matter pursuant to 4 V.I.C. § 76 and 14 V.I.C. § 607.

3.      This Court has personal jurisdiction over the parties pursuant to 5 V.I.C. § 4903.

4.      The Virgin Islands is an unincorporated territory of the United States.  It consists of St. Thomas, St. Croix, St. John, and Water Island, and more than 40 surrounding islands and Cays, some of which are privately owned.  Among these privately owned islands are Little St. James and Great St. James.

5.      Jeffrey E. Epstein ("Epstein") was a resident of the Virgin Islands and he maintained a residence on Little St. James, which he acquired in 1998 and in 2016 he also purchased Great St. James.

6.      Epstein registered as a sex offender in the Virgin Islands in 2010.  He was a Tier 1 offender under Virgin Islands law based upon his Florida conviction of procuring a minor for prostitution.  As a Tier 1 offender, Epstein was required to register annually with the Virgin Islands Department of Justice ("VIDOJ") and give advance notice of his travel to and from the Virgin Islands.  Epstein was also subject to random address verification by VIDOJ.

7.      Epstein was found dead on August 10, 2019 while in custody in New York for sex crimes.

8.      Defendant Darren K. Indyke ("Defendant Indyke") is co-executor of the Estate of Jeffrey E. Epstein and Administrator of The 1953 Trust.

9.      Defendant Richard D. Kahn ("Defendant Kahn") is co-executor of The Estate of Jeffrey E. Epstein and Administrator of The 1953 Trust.

10.     Defendant, the Estate of Jeffrey E. Epstein ("Estate"), created upon Epstein's death, is domiciled in the Virgin Islands.  On August 15, 2019, Defendants Indyke and Kahn filed a

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **3** of **55**

Petition for Probate and Letters Testamentary which included Epstein's last will and testament with the Probate Division of the Superior Court of the Virgin Islands.

11.     The Petition reports the value of the real and personal property in The Estate located in the Virgin Islands at $577,672,654.00 dollars.

12.     According to the Petition, the assets in the Virgin Islands thus far includes:

      a.   $56.5 million in cash;

      b.   $127 million in fixed income and equity investments;

      c.   $195 million in hedge fund and private equity investments; and

      d.   $18.5 million in planes, boats, and automobiles.

The Estate has not yet valued his fine arts, antiques, and other valuables.

13.     The Estate also includes shares of various corporate entities which hold residences and real property used by Epstein, namely:

      a.   Brownstone in New York City valued at $56 million;

      b.   Ranch in New Mexico valued at $72 million;

      c.   Gated home in Palm Beach, Florida, valued at $12 million;

      d.   Seven units in an apartment building in Paris, valued at $8 million; and

      e.   Great St. James and Little St. James, collectively valued at $86 million.

14.     The Estate is responsible to pay damages for the acts committed by Epstein and the Epstein Enterprise described below.

15.     Defendant The 1953 Trust ("The Trust") was created by Epstein, who "amended and restated" its terms only two days before his suicide. That same day, Epstein revised his Last Will and Testament, transferring all of his "property, real and personal, wherever situated" to The Trust.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page 4 of 55

16.     The Trust also contains Epstein's financial assets and is also responsible to pay damages for the acts committed by Epstein and the Epstein Enterprise described below. Defendants Indyke and Kahn, filed a Certificate of Trust in the Superior Court of the Virgin Islands for The Trust on August 26, 2019.

17.     Epstein maintained a deliberately complex web of Virgin Islands corporations, limited liability companies, foundations, and other entities, not all of which are yet known to the Government of the Virgin Islands, through which he carried out and concealed his criminal conduct.

18.     Epstein regularly created new entities in the territory and transferred properties and funds between them in order to preserve and shield Epstein's assets and to facilitate and conceal the unlawful acts described in this Complaint.

19.     These entities held properties, including Little St. James and Great St. James, at which Epstein trafficked and sexually abused women and underage girls. Epstein owned and arranged for private planes, helicopters, boat and automobiles to transport victims to, from, and within the Virgin Islands, and provided money to pay these young women and underage girls.

20.     Epstein sat at the hub of this web, serving as president, member, manager, or director of each of the entities and, upon information and belief, directing their activities.

21.     Defendant, Nautilus, Inc., is a corporation established and organized under the laws of the Virgin Islands.  It was incorporated on November 22, 2011.

22.     According to records of the Virgin Islands Recorder of Deeds, Nautilus, Inc. owns Little St. James, a/k/a Parcel Number 109803010100, a parcel of 3.1 million square feet valued at $3.2 million, with buildings and improvements valued at $4 million.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page 5 of 55

23.    Epstein was president and director of Nautilus, Inc., which corporate filings describe as "holding property for personal use." Defendants Indyke and Kahn are the secretary and treasurer of Nautilus, Inc., respectively.  The Estate values Epstein's holdings of Nautilus, Inc., which holds title to Little St. James at $63.9 million.

24.    A deed recorded with the Virgin Islands Recorder of Deeds on December 30, 2011 reflects that the property was transferred from a Delaware entity, L.S.J., LLC, to Nautilus, Inc. for "TEN DOLLARS ($10.00) and other good and valuable consideration." The quitclaim deed lists Jeffrey Epstein as the sole member of L.S.J., LLC, which it acquired Little Saint James via a warranty deed dated April 27, 1998.

25.    As described below, Epstein engaged in a pattern and practice of trafficking and sexually abusing young women and female children on this private, secluded island of Little St. James where Epstein and his associates could avoid detection of their illegal activity from Virgin Islands and federal law enforcement and prevent these young women and underage girls from leaving freely and escaping the abuse.

26.    Thus, Nautilus, Inc. participated in carrying out, facilitating and concealing Epstein's crimes, hence Little St. James became an instrumentality of those crimes.

27.    Defendant, Great St. Jim, LLC, is a limited liability company established and organized under the laws of the Virgin Islands.  Great St. Jim, LLC was organized on October 26, 2015.  Great St. Jim, LLC, according to records of the Virgin Islands Recorder of Deeds, owns at least three properties that make up Great St. James acquired on January 28, 2016:  Parcel Number 109801010100, consisting of 3.5 million square feet and valued at $17.5 million; Parcel Number 109801010200, consisting of 450,000 square feet of land, valued at $2.8 million; and Parcel Number 109801010300, 1.2 million square feet of land, valued at $2.7 million.  According to a

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **6** of 55

warranty deed filed with the Virgin Islands Recorder of Deeds, Epstein, through Great St. Jim, LLC, acquired the last two parcels for $5 million each.

28.     Epstein is listed as manager and a member of Great St. Jim, LLC and the nature of its business is described as "holding assets."

29.     Upon information and belief, Epstein purchased these Great St. James properties—the island with closest proximity to Little St. James—to further shield his conduct on Little St. James from view, prevent his detection by law enforcement or the public, and allow him to continue and conceal his criminal enterprise.  Epstein's significant investment in the purchase of Great St. James demonstrates his intent to expand his illegal operation in the Virgin Islands for years to come.  Thus, Great St. Jim, LLC participated in carrying out, concealing, facilitating and continuing Epstein's crimes, and Great St. James became an instrumentality of those crimes.

30.     Defendant, Poplar, Inc., is a corporation established and organized under the laws of the Virgin Islands.  Poplar, Inc. was incorporated on November 22, 2011.  Epstein was president and director of Poplar, Inc., and its purpose was described in corporate filings as "holding property for personal use."   Defendants Indyke and Kahn are secretary and treasurer of Poplar, Inc., respectively.

31.     A certificate of incumbency provided to the Department of Planning and Natural Resources ("DPNR") also lists Epstein as president of Poplar, Inc. and expressly authorizes the incorporators to conduct "transactions related to permitting matters submitted on behalf of Great St. Jim, LLC."

32.     Poplar, Inc. is listed as the signatory for the 2017 Annual Report for Great St. Jim, LLC, and the signature appears to be Epstein's.  The Petition for Probate and Letters Testamentary

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page 7 of 55

filed by The Estate lists Poplar, Inc. as holding title to Great St. James. Thus, Poplar, Inc. participated in carrying out, concealing, facilitating and continuing Epstein's crimes.

33.    Defendant, Plan D, LLC is a limited liability company established and organized under the laws of the Virgin Islands. In its original Articles of Organization, filed October 19, 2012, and Annual Report filings, Epstein's pilot, Larry Visoski, was listed as Plan D, LLC's sole manager/member. However, the July 31, 2019 Annual Report revealed Epstein as the principal behind Plan D, LLC.

34.    Upon information and belief, Plan D, LLC owns one or more of the airplanes and helicopters that Epstein used to transport young women and children to and from the Virgin Islands to carry out the criminal pattern of activity described below. Among the airplanes owned by Plan D, LLC is a Gulfstream with N-number N212JE. Flight logs and travel notices indicate that Epstein used this plane to traffic and transport and young women and underage girls to the Virgin Islands.

35.    Defendant, Hyperion Air, LLC is a limited liability company established and organized under the laws of the Virgin Islands on October 19, 2012. Jeffrey Epstein is a manager/member of Hyperion Air, LLC, along with his pilot, Larry Visoski. The purpose of Hyperion Air, LLC is listed in its Annual Report as "holding assets."

36.    Hyperion Air, LLC is the registered owner of a Bell helicopter with N-number N331JE and a Keystone helicopter with N-number N722JE. Upon information and belief, Epstein used these helicopters to transport young women and underage girls between St. Thomas and Little St. James.

37.    Defendant Southern Trust Company, Inc. was originally incorporated in the Virgin Islands on November 18, 2011 as Financial Informatics, Inc., but changed its name to Southern

Trust Company in September 2012.  Southern Trust Company is a tenant at American Yacht Harbor in Red Hook, St. Thomas, and Epstein is a "passive investor" in IGY-AYH, d/b/a American Yacht Harbor.  By the end of 2013, according to its corporate filings, Southern Trust Company has assets of $198.5 million; four years later, its assets reached $391.3 million.  From 2011 until at least 2018, Jeffrey Epstein was the President/Director of Southern Trust Company, and Defendants Kahn and Indyke were Treasurer/Director and Secretary/Director, respectively. Epstein was the sole owner of Southern Trust Company.

38.    John and Jane Does represent individuals and entities whose identities or involvement with Epstein are currently unknown.  The Government of the Virgin Islands will amend the Complaint to add these individuals and entities when discovered.

39.    The Attorney General brings this action to seek all remedies available to the Government of the Virgin Islands in enforcing its laws and protecting the public interest and public safety.  These claims are distinct from, and are not intended to supplant, the claims of victims who were unconscionably harmed by Jeffrey Epstein and his associates.

## FACTUAL ALLEGATIONS
### A.  The Conduct of the "Epstein Enterprise" in the Virgin Islands

40.    Epstein and his associates, including Defendants, identified and recruited female victims, including children, and transported them to the Virgin Islands where they were abused and injured. Epstein, through and in association with Defendants, trafficked, raped, sexually assaulted and held captive underage girls and young women at his properties in the Virgin Islands.

41.    Epstein created a network of companies and individuals who participated in and conspired with him in a pattern of criminal activity related to the sex trafficking, forced labor, sexual assault, child abuse, and sexual servitude of these young women and children.  Epstein and

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **9** of **55**

his associates trafficked underage girls to the Virgin Islands, held them captive, and sexually abused them, causing them grave physical, mental, and emotional injury.

42.     To accomplish his illegal ends, Epstein formed an association in fact with multiple Defendants and others (both companies and individuals) who were willing to participate in, facilitate, and conceal Epstein's criminal activity in exchange for Epstein's bestowal of financial and other benefits, including sexual services and forced labor from victims.

43.     This illicit association of Epstein, Defendants, and his associates constitute what is referred to herein as the "Epstein Enterprise." Epstein's associates in the Epstein Enterprise, including, but not limited to, those named as Defendants knowingly facilitated, participated in, and concealed Epstein's illegal conduct.

44.     Epstein used his wealth and power to create the Epstein Enterprise which engaged in a pattern of criminal activity in the Virgin Islands by repeatedly procuring and subjecting underage girls and young women to unlawful sexual conduct, sex trafficking, and forced labor.

45.     The Epstein Enterprise engaged in a pattern of criminal activity in the Virgin Islands (and elsewhere) with the criminal purpose and goal of placing a steady supply of vulnerable female children and young women into sexual servitude in service of Epstein's desires, and those of his associates. The Epstein Enterprise maintained and made available young women and underage girls for the purpose of engaging them in forced labor and sexual activities and used coercion and deception to procure, abuse, and harbor its victims.

46.     Flight logs and other sources establish that between 2001 and 2019 the Epstein Enterprise transported underage girls and young women to the Virgin Islands, who were then taken via helicopter or private vessel to Little St. James where they were then deceptively subjected to

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page 10 of 55

sexual servitude, forced to engage in sexual acts and coerced into commercial sexual activity and forced labor.

47.    In furtherance of its criminal activities, the Epstein Enterprise used its aircrafts to transport the young women and underage girls to the Virgin Islands for purposes of sexual abuse and exploitation.

48.    The Epstein Enterprise facilitated and participated in the sexual molestation and exploitation of numerous girls between the age of 12 and 17 years old.

49.    On the pretext of providing modeling opportunities, careers and contracts, associates of the Epstein Enterprise, funded by the Epstein Enterprise, lured and recruited young women and underage girls to travel to locations including the Virgin Islands where, upon information and belief, based on the pattern and practice of the Epstein Enterprise, they were sexually abused and exploited.

50.    Associates in the Epstein Enterprise recruited both victims and abusers into the Epstein Enterprise, participated in sexual acts of rape and abuse of minors and witnessed Epstein and others engage in sexual acts with children.

51.    As recent as 2018, air traffic controllers and other airport personnel reported seeing Epstein leave his plane with young girls some of whom appeared to be between the age of 11 and 18 years.

52.    Upon information and belief, based on Epstein's pattern of trafficking and sexually abusing young girls, the Epstein Enterprise trafficked and abused these girls, and others, in the Virgin Islands through 2018.

53.    When sued in civil court for committing sex trafficking and sex crimes, Epstein never denied engaging in sexual acts with underage females and procuring underage females for

Case 1:15-cv-07433-LAP   Document 1111-1   Filed 09/01/20   Page 12 of 55
GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page 11 of 55

prostitution, but instead consistently invoked his Fifth Amendment privilege against self-incrimination.

54.     Upon information and belief, the Epstein Enterprise kept a computerized list of underage girls who were in or proximate to the Virgin Islands, and able to be transported to Epstein's residence at Little St. James in the Virgin Islands.

55.     The Epstein Enterprise engaged in a pattern of criminal conduct by trafficking children and young women and placing them in sexual servitude and forced labor in the Virgin Islands.  The Epstein Enterprise repeatedly violated 14 V.I.C. §§ 133 to 138, which prohibit trafficking and sexual abuse. The Epstein Enterprise also repeatedly violated laws against child abuse and neglect, including 14 V.I.C. § 505, which defines the crime of child abuse as knowingly or recklessly causing "a child to suffer physical, mental, or emotional injury," or causing a child to be placed in a situation where such injury is foreseeable, and 14 V.I.C. § 506, which applies, as here, where the child suffers serious physical, mental, or emotional injury as a result of that abuse. The harm to Epstein's victims was both fully foreseeable and deeply damaging.

56.     The Epstein Enterprise knowingly recruited, transported, transferred, harbored, received, procured, obtained, isolated, maintained, and enticed young women and girls to engage in forced labor (such as providing massages) and, ultimately, sexual servitude at his little St. James residence.

57.     A 15 year old victim was forced into sexual acts with Epstein and others and then attempted to escape by swimming off the Little St. James island.  Epstein and others organized a search party that located her and kept her captive by, among other things, confiscating her passport.

58.     Another victim, who was first engaged in provide massages to Epstein, was then forced to perform sexual acts at Little St. James in the Virgin Islands.  When she attempted to

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **12 of 55**

escape from the "private island," Epstein and a search party found her, returned her to his house, and suggested physical restraint or harm if she failed to cooperate.

59.     The Epstein Enterprise deceptively lured underage girls and women into its sex trafficking ring with money and promises of employment, career opportunities and school assistance.   The Epstein Enterprise preyed on their financial and other vulnerabilities, and promised victims money, shelter, gifts, employment, tuition and other items of value.   For example, participants in the Epstein Enterprise targeted young and underage females under the pretext that they would be paid substantially merely to provide massages to him and others. However, once drawn in, victims were then pressured and coerced to engage in sexual acts.

60.     The Epstein Enterprise forced underage victims to recruit others to perform services and engage in sexual acts—a trafficking pyramid scheme.

61.     The Epstein Enterprise paid girls for each "meeting," with additional money if they brought additional girls.  Epstein reportedly required three meetings per day.

62.     The Epstein Enterprise used the term "work" as a code for sexual abuse, and, upon information and belief, reportedly kept computer records of the contact information for the victims.

63.     Consistent with his creation and use of a complex web of entities to carry out and conceal the criminal trafficking enterprise in the Virgin islands, the Epstein Enterprise sometimes paid young women and underage girls he exploited and trafficked through his charitable foundations.

64.     Once the girls and women were recruited, participants in the Epstein Enterprise enforced their sexual servitude of victims by coercion, including but not limited to, confiscating passports, controlling and extinguishing external communications, and threatening violence. They

Case 1:15-cv-07433-LAP   Document 1111-1   Filed 09/01/20   Page 14 of 55
GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **13** of **55**

also made fraudulent statements to family members of victims, claiming victims were being well cared for and supported financially in college and other educational opportunities.

65.    The Epstein Enterprise transported, held, sexually abused, trafficked, and concealed women and children at his property in the Virgin Islands dozens of times over nearly two decades.

### B. The "Epstein Enterprise" Abused Privileges of Residency to Carry out its Criminal Scheme

66.    The Epstein Enterprise in 1998 acquired Little St. James in the Virgin Islands as the perfect hideaway and haven for trafficking young women and underage girls for sexual servitude, child abuse and sexual assault. Little St. James is a secluded, private island, nearly two miles from St. Thomas with no other residents.  It can be visited only by private boat or helicopter; no public or commercial transportation is available to carry persons on or off the island, and no bridge connects the island to St. Thomas.  Epstein had easy access to Little St. James from the private airfield on St. Thomas, only 10 minutes away by his private helicopter, but the women and children he trafficked, abused, and held there were not able to leave without his permission and assistance, as it was too far and dangerous to swim to St. Thomas.

67.    In 2016, upon information and belief, using a straw purchaser to hide Epstein's identity, the Epstein Enterprise acquired Great St. James the nearest island to Little St. James.  By then, Epstein was a convicted sex offender.  Upon information and belief, the Epstein Enterprise purchased the island for more than $20 million because its participants wanted to ensure that the island did not become a base from which others could view their activities or visitors. By acquiring ownership and control of Great St. James to the exclusion of others, the Epstein Enterprise created

additional barriers to prevent those held involuntarily on Little St. James from escaping or obtaining help from others.

68.    Great St. James and Little St. James are environmentally sensitive locations, with native coral and wildlife protected by federal and territorial law and enforcement authorities. The Department of Planning and Natural Resources ("DPNR") regulates and monitors construction in the Coastal Zone to protect, maintain and manage the precious natural resources of the Virgin Islands. Under its authority, DPNR repeatedly issued citations and assessed thousands of dollars of fines for violations of the Virgin Islands construction code and environmental protection laws on both Little St. James and Great St. James—significant penalties to the agency and to the average resident of the Virgin Islands. But because of Epstein's enormous wealth, these fines had little effect in curbing or stopping the Epstein Enterprise's unlawful conduct or conforming its activities to the law.

69.    As a result of illegal construction activity of the Epstein Enterprise, the Virgin Islands has incurred, and will incur, significant expenses to remove the illegal construction or remediate its effects on natural resources in and around Little St. James and Great St. James. The extent of the potential environmental damage is unknown at this time as the illegal construction has not been removed or remediated.

70.    The Epstein Enterprise continues to attempt to prevent or limit DPNR authorities from conducting random inspections on the Little St. James and Great St. James necessary to comply with Virgin Islands law.

71.    The Epstein Enterprise's violation of the construction and environmental laws was part of a pattern of behavior in flouting the laws of the Virgin Islands and holding itself above the law. Upon information and belief, as described above, the Epstein Enterprise undertook

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **15** of **55**

construction at Great St. James after 2016 to continue the scheme to carry out and conceal his trafficking and sexual abuse of young women and children in the Virgin Islands. These actions are also indicative of the Epstein Enterprise's disregard for Virgin Islands' law. The Epstein Enterprise used the Virgin Islands' land, resources, people, and laws for its illicit purposes. Rather than participating lawfully in this community, the Epstein Enterprise took advantage of the secluded nature of the islands in furtherance of its crimes.

72.     As a result of its deplorable and unlawful conduct, the Epstein Enterprise has subjected the Virgin Islands to public portrayals as a hiding place for human trafficking and sex crimes.

## C. The "Epstein Enterprise" Fraudulently Concealed its Conduct

73.     The Epstein Enterprise fraudulently concealed its actions to prevent detection by the Government of the Virgin Islands.

74.     The secluded properties at Little St. James and Great St. James were repeatedly used by the Epstein Enterprise as the locations for unlawfully soliciting, transporting, transferring, harboring, receiving, providing, isolating, patronizing, maintaining, deceiving, coercing, and sexually abusing young women and children and concealing these crimes.

75.     The Epstein Enterprise was able to hide the trafficking ring from law enforcement, despite the fact that Epstein was a registered sex offender. Given the isolation of the Little St. James and Great St. James and the nature of the crimes and of the victims targeted by the Epstein Enterprise, the activities of the Epstein Enterprise were not readily detectable. Moreover, Epstein's great wealth and power likely made witnesses reluctant to report their observations to the local law enforcement.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page 16 of 55

76.     Upon information and belief, the Epstein Enterprise prevented its employees from cooperating with law enforcement.  Employees and others were required to sign confidentiality agreements that prohibited them from speaking to or sharing information with law enforcement. If they were contacted by law enforcement they were to notify the Epstein Enterprise and be represented by Epstein's counsel.

77.     The employees were directed not to communicate or interact with guests visiting Little St. James and were also directed not to disclose to anyone events that occurred on the island.

78.     Monitoring a sex offender with his own private islands and the resources to fly victims in and out on private planes and helicopters presented unique challenges and allowed the Epstein Enterprise to limit scrutiny by the Government of the Virgin Islands.

79.     Sexual Offender Registration and Community Protection Act ("SORCPA") 14 V.I.C. § 1721, *et. seq.* requires sex offenders to register in their resident jurisdictions and to make periodic in-person appearances to verify and update their registration information.

80.     Epstein renewed his registration each year in the Virgin Islands.  In addition, beyond this statutory requirement, the Virgin Islands periodically visited—or attempted to visit—Little St. James to conduct additional address verifications.

81.     At his last verification in July 2018, Epstein refused to permit Virgin Islands Department of Justice Investigators, assisted by United States Marshals, to enter Little St. James beyond its dock, claiming that the dock was his "front door."  Instead, Epstein arranged to be met at his office on St. Thomas.

82.     Epstein also misled the Government regarding his travel plans. On March 19, 2019, the Virgin Islands was notified that Epstein would be traveling to France for 10 days on the private plane owned by Plan D, LLC.  His notification form did not disclose travel to any other countries.

Case 1:15-cv-07433-LAP   Document 1111-1   Filed 09/01/20   Page 18 of 55
GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **17** of **55**

It was later found by law enforcement authorities that Epstein also travelled to Vienna and Monaco during that trip.

83.     Similarly, the Epstein Enterprise sought to prevent DPNR from conducting routine site visits to inspect unpermitted and potentially damaging construction activity on Great St. James. The Epstein Enterprise repeatedly objected to DPNR's inspections referring to them as "invasions" of Epstein's constitutional right to privacy in his home, which he described defined as the entire island.   These DPNR inspections are required for all construction and Virgin Islands residents are required to cooperate with the inspections to assure compliance with the law throughout the construction phases.

84.     These efforts represent Epstein Enterprise's intent to conceal its unlawful activity on Little St. James and Great St. James.

85.     The Epstein Enterprise also created numerous corporations and limited liability companies in the Virgin Islands to help conceal its unlawful activity.  Most of these companies were created in 2011 and 2012, soon after Epstein registered as a sex offender in the Virgin Islands.

86.     Epstein's pilot, Larry Visoski is identified as  member or co-member in companies that serviced and maintained  the planes that the Epstein Enterprise used to traffick young women and children – Freedom Air Petroleum, LLC (registered November 28, 2011 to hold assets); and JEGE, LLC (registered October 19, 2012 to hold assets).

87.     Other Epstein entities include LSJ Employees, LLC (registered October 27, 2011 to provide services); Southern Financial, LLC (registered February 25, 2013 to provide services) and LSJ Emergency, LLC (registered December 2, 2015 to provide services).

88.     Some of these companies held considerable assets:  Financial Informatics, Inc. (incorporated November 18, 2011, also known as Southern Trust Company, Inc.) had assets of

approximately $391 million in 2015; and Financial Trust Company, Inc. (incorporated November 6, 1998) had assets of $212 million when it publicly filed its last balance sheet in 2012.

89.     Though often absent in the original incorporation or registration documents or annual filings, Epstein ultimately appeared as president, director, manager, or sole member of each of these companies.  Upon information and belief, the purpose of this complex array of corporate entities—some of which may still be discovered—was to allow Epstein to shelter his assets in order to fund, carry out, and conceal his identity and pattern of criminal conduct.

90.     The Estate continues to engage in a course of conduct aimed at concealing the criminal activities of the Epstein Enterprise.  On November 24, 2019, Epstein's Estate filed an Expedited Motion for Establishment of a Voluntary Claims Resolution Program in the Superior Court of the Virgin Islands. ("Motion").  According to the Motion, the proposed program was to be designed to "establish an independent and voluntary claims resolution program for purposes of resolving sexual abuse claims against Jeffrey E. Epstein." (Motion, at 1).

91.     The program proposed by the Estate, whose executors are trustees of The 1953 Trust and officers in at least two Epstein entities, imposes confidentiality requirements and requires any claimant accepting an award under the program to sacrifice any other claims against "any person or entity arising from or related to Mr. Epstein's conduct." (Motion, at 5).  It acts to conceal the criminal activities of the Epstein Enterprise and shield its participants from liability and accountability for the injury they caused to the victims.

92.     Two days before his death, Epstein amended The Trust and his Last Will and Testament.  Upon information and belief, he did so, as part of a pattern and ongoing effort to conceal and shield his assets from potential recovery by claimants.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **19** of **55**

### D. The "Epstein Enterprise" Violated Numerous Virgin Islands Laws

93.     The pattern of criminal activity engaged in by Epstein and other participants in the Epstein Enterprise violated 14 V.I.C. §§ 605 and 607 of the Criminally Influenced and Corrupt Organizations Act ("CICO").

94.     The Epstein Enterprise also violated Title 14, Chapter 3A, The Virgin Islands Uniform Prevention of and Remedies for Human Trafficking Act relating to Trafficking of Persons; Title 14, Chapter 24, relating to Child Protection and Child Abuse and Neglect; Title 14, Chapter 81, relating to Prostitution and Related Offenses; Title 18, Chapter 85, relating to Rape and Sexual Assault and other related offenses, as well as other Virgin Islands laws.

95.     The Epstein Enterprise violated Virgin Islands laws by engaging in the human trafficking of underage girls and young women and commercial sex with young women and underage girls by force, fraud, enticement, or coercion, which serve as predicates to the Epstein Enterprise's violations of CICO.

96.     Certain participants who recruited women and underage girls to be trafficked and forced into sexual servitude themselves were sexually trafficked and abused by the Epstein Enterprise and may be afforded the protections of 14 V.I.C. § 145.

97.     Specifically, Plan D, LLC knowingly and intentionally facilitated the trafficking scheme by flying underage girls and young women into the Virgin Islands to be delivered into sexual servitude. Plan D LLC repeatedly made flights from the mainland to St. Thomas with Epstein and underage girls and young women for the purpose of engaging in sexual activity on Little St. James. On some occasions, they would transport Epstein and female children by

helicopter to Little St. James. On other occasions, Epstein and the young women and girls would be transported by boat.

98.    Great St. Jim, LLC and Nautilus, Inc. knowingly participated in the Epstein Enterprise and facilitated the trafficking and sexual servitude of young women and underage girls by providing the secluded properties at, from, or to which Epstein and his associates were able to transport, transfer, receive, maintain, isolate, harbor, provide, entice, deceive, coerce, and sexually abuse underage girls and young women.

99.    The Epstein Enterprise engaged in a continuing course of unlawful conduct.

100.    After Epstein's suicide, the Epstein Enterprise continued to exist as each of the participants continued to conspire to prevent detection of the breadth and scope of the Epstein Enterprise's criminal wrongdoing and to prevent accountability. These conspiratorial acts are ongoing.

101.    The conduct of the Epstein Enterprise offends the core purpose of the Virgin Islands Uniform Prevention of and Remedies for Human Trafficking Act, 14 V.I.C. §131 *et seq*, and violates CICO, enacted to "curtail criminal activity and lessen its economic and political power in the Territory of the Virgin Islands by establishing new penal prohibitions and providing to law enforcement and the victims of criminal activity new civil sanctions and remedies." 14 V.I.C. § 601.

102.    The Epstein Enterprise is an illicit enterprise within the meaning of 14 V.I.C. §§ 604 and 605.

103.    The Government is entitled to recover civil penalties, damages and other remedies and to extinguish and recoup from the Epstein Enterprise any and all financial and other benefits, and any personal and real property that was used during the course of, or intended for use in the

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **21** of **55**

course of the conduct or criminal activity in violation of the laws of the Virgin Islands. The
Government is entitled to obtain through divestiture, forfeiture, or other equitable relief all
properties and instrumentalities used by the Epstein Enterprise in the criminal pattern of trafficking
and sexual abuse in the Virgin Islands, including but not limited to Great St. James and Little St.
James, and all other remedies and penalties permitted by law in the interest of justice.

### E.   The Epstein Enterprise Used Corporate Entities to Defraud the Government and Fund its Criminal Activities

104.   In October 2012, the Southern Trust Company applied for economic benefits from
the Economic Development Commission ("EDC"). The EDC is a subsidiary of the Virgin Islands
Economic Development Authority ("EDA"), a semi-autonomous governmental instrumentality
created and governed pursuant to 29 VIC § 1101.

105.   In sworn testimony at a public hearing on the tax incentive application conducted
by the EDC on November 15, 2012, Epstein and his attorney, Ericka Kellerhals, described
Southern Trust Company as providing "cutting edge consulting services" in the area of
"biomedical and financial informatics."

106.   The EDC granted Southern Trust Company a 10-year package of economic
incentives running from February 1, 2013 until January 31, 2023 that included a 90% exemption
from income taxes and 100% exemptions from gross receipts, excise, and withholding taxes in the
Virgin Islands.

107.   Between 2013 and 2019, Southern Trust Company employed 13 different
individuals (not including Epstein). Of those 13 individuals, 11 served in administrative or support
roles: six as personal, administrative, or executive assistants, receptionists, or as a driver/helper,
one as an office manager, one as a clerk, and three in accounting or payroll functions (though only

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **22** of **55**

one was licensed as a certified public accountant). There was one network administrator/IT manager, and a second who was added in 2019.

108.   In fact, several of those individuals seemed to perform other personal services for Jeffrey Epstein. Though he was reported by Southern Trust Company to be resident of the Virgin Islands, the network administrator/IT manager was issued a Florida driver's license, which listed an address in Miami. Further, he appears, in fact, to have served as Epstein's driver and picked up luggage and cargo from Epstein's private planes on his behalf.

109.   Another executive assistant lived at 301 E. 66th Street, Apartment 11B, New York, New York. Epstein's address book lists units various units in this building as providing "Apt. for models" and she is publicly identified as a model. As noted above, the Epstein Enterprise used modeling opportunities and contracts as a pretext for recruiting underage girls and young women into its sex trafficking scheme.

110.   During several time periods, Southern Trust Company affirmed to EDC that it had no employees who were non-residents, even though it employed non-residents.

111.   Despite having only one full-time employee working on information technology during the bulk of the period, Southern Trust Company reportedly generated net income of $50.3 million in 2013, $67.5 million in 2014, $52.8 million in 2015, and $4.8 million in 2016 and $17.1 million in 2017, with aggregate income of $117.8 million in 2014, $170.6 million in 2015, $175.3 million in 2016 and $192.4 million in 2017, or aggregate income for the period of $656 million.

112.   For the period between January 1, 2013 and December 31, 2017, Southern Trust Company received tax exemptions totaling $73.6 million.

113.   As of December 31, 2017, Southern Trust Company, Inc. elected to file its income tax as an S-corporation, which elects to pass corporate income, losses, deductions and credits

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **23** of **55**

through to its sole shareholder—Jeffrey Epstein—for tax purposes. For this time period, Epstein's

income tax exemption was $71.3 million.

114.    Based upon these facts, it is clear that Southern Trust Company did not perform the

"informatics" business represented to the EDC and could not have generated the business income

attributable to that business.   Instead, upon information and belief, Southern Trust Company

existed to secure tax benefits for Epstein, to employ individuals associated with the Epstein

Enterprise, and to provide a source of income to support his criminal activities and properties in

the Virgin Islands.


**COUNT ONE**
**Human Trafficking – Trafficking an Individual**
**Violation of the Criminally Influenced and Corrupt Organizations Act ("CICO"),**
**14 V.I.C. § 600 *et seq*.; and 14 V.I.C §133**

115.    The Government restates and realleges paragraphs 1 to 115 of this Complaint as if

fully set forth herein.

116.    At all times material herein, each Defendant directly and indirectly participated in

or associated with the Epstein Enterprise, an illicit enterprise.

117.    The Epstein Enterprise engaged in two or more occasions of conduct that constitute

criminal predicate acts as defined by CICO, including, but not limited to, knowingly recruiting,

transporting, transferring, harboring, receiving, providing, obtaining, isolating, maintaining, or

enticing female children and young women in the furtherance and performance of forced labor,

sexual servitude and commercial sexual activity in violation of Virgin Islands laws codified in 14

V.I.C. §§ 133-138.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **24** of **55**

118.    Defendants through a pattern of criminal activity acquired and maintained, directly

or indirectly, an interest in or control of the Epstein Enterprise or real property.

119.    Defendants benefited, directly and indirectly, from the pattern of criminal activity

conducted by the Epstein Enterprise.

120.    At all times material herein, Defendants engaged in said pattern of criminal activity

that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO.

14 V.I.C. §600 *et seq.*

## COUNT TWO
### Human Trafficking – Trafficking an Individual
**Conspiracy to Violate the Criminally Influenced and Corrupt Organizations Act**
**14 V.I.C. § 600 *et seq.* and  14 V.I.C §133**

121.    The Government restates and realleges paragraphs 1-120 of this Complaint as if

fully set forth herein.

122.    At all times material herein, each Defendant joined in a conspiracy to violate laws

prohibiting human trafficking.

123.    Each Defendant engaged in acts that revealed its intent to join and participate in the

criminal conspiracy by recruiting, transporting, transferring, harboring, receiving, providing,

obtaining, isolating, maintaining or enticing female children and young women in the furtherance

and performance of forced labor, sexual servitude and commercial sexual activity in violation of

Virgin Islands laws codified in 14 V.I.C. § 133 -138.

124.    Defendants knowingly benefited financially and/or obtained other non-financial value from participation in the Epstein Enterprise, which has engaged in human trafficking, forced labor, sexual servitude and commercial sexual activity of girls and young women in knowing or reckless disregard of the laws of the Virgin Islands.

125.    At all times material herein, each Defendant conspired with Epstein and other Defendants to fulfill the primary criminal purposes of the Epstein Enterprise: human trafficking, forced labor, and sexual servitude. 14 V.I.C. §604(j).

126.    At all times material herein, Defendants engaged in said pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO. 14 V.I.C. §600 *et seq*.

## COUNT THREE
### Human Trafficking – Forced Labor
### Violation of the Criminally Influenced and Corrupt Organizations Act ("CICO"), 14 V.I.C. § 600 *et seq*.; and  14 V.I.C §134

127.    The Government restates and realleges paragraphs 1-126 of this Complaint as if fully set forth herein.

128.    At all times material herein, each Defendant directly and indirectly participated in or associated with the Epstein Enterprise, an illicit enterprise.

129.    The Epstein Enterprise engaged in two or more occasions of conduct that constitute criminal predicate acts as defined by CICO, including, but not limited to, knowingly using coercion to compel underage girls and young women to provide labor or services by forced labor in violation of 14 V.I.C. § 134.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page 26 of 55

130.  The Epstein Enterprise knowingly provided or obtained the labor services of individuals by means of force, threats of force, physical restraint, and/or threats of physical restraint; by means of serious harm or threats of serious harm; by means of abuse or threatened abuse of law or legal processes; and by means of the Epstein Enterprise with the intent to cause individuals to believe that, if individuals did not perform such labor or services, individuals would suffer serious harm or physical restraint.

131.  Defendants through a pattern of criminal activity directly and indirectly participated in or associated with the Epstein Enterprise, an illicit enterprise.

132.  Defendants through a pattern of criminal activity acquired and maintained, directly or indirectly, an interest in or control of the Epstein Enterprise or real property.

133.  Defendants benefited, directly and indirectly, from the pattern of criminal activity conducted by the Epstein Enterprise.

134.  At all times material herein, Defendants engaged in said pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO. 14 V.I.C. §600 *et seq.*

### COUNT FOUR
### Human Trafficking – Forced Labor
### Conspiracy to Violate the Criminally Influenced and Corrupt Organizations Act, 14 V.I.C. § 600 *et seq.*; and  14 V.I.C §134

135.  The Government restates and realleges paragraphs 1-134 of this Complaint as if fully set forth herein.

136.  At all times material herein, each Defendant joined in a conspiracy to violate laws prohibiting human trafficking.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page 27 of 55

137.    Each Defendant engaged in acts that revealed its intent to join and participate in the

criminal conspiracy by knowingly using coercion to compel underage girls and young women to

provide labor or services by forced labor in violation of 14 V.I.C. § 134.

138.    Defendants knowingly benefited financially and/or obtained other non-financial

value from participation in the Epstein Enterprise, which has engaged in human trafficking, forced

labor, sexual servitude and commercial sexual activity of girls and young women in knowing or

reckless disregard of the laws of the Virgin Islands.

139.    At all times material herein, each Defendant conspired with Epstein and other

Defendants to fulfill the primary criminal purposes of the Epstein Enterprise:  human trafficking,

forced labor, and sexual servitude.  14 V.I.C. §604(j).

140.    At all times material herein, Defendants engaged in said pattern of criminal activity

that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO.

14 V.I.C. §600 *et seq*.

## COUNT FIVE
### Human Trafficking – Sexual Servitude
### Violation of the Criminally Influenced and Corrupt Organizations Act ("CICO"),
### 14 V.I.C. § 600 *et seq*.;  14 V.I.C §135

141.    The Government restates and realleges paragraphs 1-140 of this Complaint as if

fully set forth herein.

142.    At all times material herein, each Defendant directly and indirectly participated in

or associated with the Epstein Enterprise, an illicit enterprise.

143.    The Epstein Enterprise engaged in two or more occasions of conduct that constitute

criminal predicate acts as defined by CICO, including, but not limited to, knowingly maintaining

or making available minors for the purpose of engaging the minors in commercial sexual activities

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **28** of **55**

or using coercion or deception to force young women to engage in commercial sexual activity in violation of 14 V.I.C. § 135.

144.    On the pretext of providing modeling opportunities, careers and contracts, Defendants facilitated the transporting  or recruiting of young women and girls or  lured and recruited young women and  underage girls to travel to the Virgin Islands where they engaged in sexual acts with Epstein and others.  In some instances, young women and underage girls were given scholarships, money, gifts or other items of value in exchange for engaging in sexual acts with Epstein and others.

145.    Defendants through a pattern of criminal activity directly and indirectly participated in or associated with the Epstein Enterprise, an illicit enterprise.

146.    Defendants through a pattern of criminal activity acquired and maintained, directly or indirectly, an interest in or control of the Epstein Enterprise or real property.

147.    Defendants benefited, directly and indirectly, from the pattern of criminal activity conducted by the Epstein Enterprise.

148.    At all times material herein, Defendants engaged in said pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO. 14 V.I.C. §600 *et seq*.

## COUNT SIX
### Human Trafficking – Sexual Servitude
**Conspiracy to Violate the Criminally Influenced and Corrupt Organizations Act**
**14 V.I.C. § 600 *et seq*.;  14 V.I.C §135**

149.    The Government restates and realleges paragraphs 1-148 of this Complaint as if fully set forth herein.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **29** of **55**

150. At all times material herein, each Defendant joined in a conspiracy to violate laws prohibiting human trafficking.

151. Each Defendant engaged in acts that revealed its intent to join the criminal conspiracy by knowingly maintaining or making available minors for the purpose of engaging the minors in commercial sexual activities or using coercion or deception to force young women to engage in commercial sexual activity in violation of 14 V.I.C. § 135.

152. On the pretext of providing modeling opportunities, careers and contracts, Defendants facilitated the transporting or recruiting of young women and girls or lured and recruited young women and underage girls to travel to the Virgin Islands where they engaged in sexual acts with Epstein and others. In some instances, young women and underage girls were given scholarships, money, gifts or other items of value in exchange for engaging in sexual acts with Epstein and others.

153. Defendants knowingly benefited financially and/or obtained other non-financial value from participation in the Epstein Enterprise, which has engaged in human trafficking, forced labor, sexual servitude and commercial sexual activity of girls and young women in knowing or reckless disregard of the laws of the Virgin Islands.

154. At all times material herein, each Defendant conspired with Epstein and other Defendants to fulfill the primary criminal purposes of the Epstein Enterprise: human trafficking, forced labor, and sexual servitude. 14 V.I.C. §604(j).

155. At all times material herein, Defendants engaged in said pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO. 14 V.I.C. §600 *et seq.*

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page 30 of 55

## COUNT SEVEN
**Human Trafficking – Patronizing Minors and Victims of Sexual Servitude**
**Violation of the Criminally Influenced and Corrupt Organizations Act ("CICO"),**
**14 V.I.C. § 600 *et seq.*;  14 V.I.C §§ 136-37**

156.    The Government restates and realleges paragraphs 1-155 of this Complaint as if fully set forth herein.

157.    At all times material herein, each Defendant directly and indirectly participated in or associated with the Epstein Enterprise, an illicit enterprise.

158.    The Epstein Enterprise engaged in two or more occasions of conduct that constitute criminal predicate acts as defined by CICO, including, but not limited to, knowingly giving, agreeing to give, or offering to give items of value to young women and minors so that the young women and minors would engage in commercial sexual activity with Epstein, other Defendants, and other individuals in violation of 14 V.I.C. §§ 136-137.

159.    In some instances, young women and underage girls were given scholarships, money, gifts or other items of value in exchange for engaging in sexual acts with Epstein and others.

160.    Defendants through a pattern of criminal activity directly and indirectly participated in or associated with the Epstein Enterprise, an illicit enterprise.

161.    Defendants through a pattern of criminal activity acquired and maintained, directly or indirectly, an interest in or control of the Epstein Enterprise or real property.

162.    Defendants benefited, directly and indirectly, from the pattern of criminal activity conducted by the Epstein Enterprise.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **31** of **55**

163.    At all times material herein, Defendants engaged in said pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO 14 V.I.C. §600 *et seq.*

## COUNT EIGHT
### Human Trafficking – Patronizing Minors and Victims of Sexual Servitude
### Conspiracy to Violate the Criminally Influenced and Corrupt Organizations Act
### 14 V.I.C. § 600 *et seq.*;  14 V.I.C §§ 136-37

164.    The Government restates and realleges paragraphs 1-163 of this Complaint as if fully set forth herein.

165.    At all times material herein, each Defendant joined in a conspiracy to violate laws prohibiting human trafficking.

166.    Each Defendant engaged in acts that revealed its intent to join and participate in the criminal conspiracy by knowingly giving, agreeing to give, or offering to give items of value to young women and minors so that the young women and minors would engage in commercial sexual activity with Epstein, other Defendants, and other individuals in violation of 14 V.I.C. §§ 136-137.

167.    In some instances, young women and underage girls were given scholarships, money, gifts or other items of value in exchange for engaging in sexual acts with Epstein and others.

168.    Defendants knowingly benefited financially and/or obtained other non-financial value from participation in the Epstein Enterprise, which has engaged in human trafficking, forced labor, sexual servitude and commercial sexual activity of girls and young women in knowing or reckless disregard of the laws of the Virgin Islands.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page 32 of 55

169.   At all times material herein, each Defendant conspired with Epstein and other Defendants to fulfill the primary criminal purposes of the Epstein Enterprise: human trafficking, forced labor, and sexual servitude.

170.   At all times material herein, Defendants engaged in said pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO 14 V.I.C. §600 *et seq.*

## COUNT NINE
### Child Abuse and Neglect
**Violation of the Criminally Influenced and Corrupt Organization Act ("CICO"),**
**14 V.I.C. § 600 *et seq.*;  14 V.I.C §§ 505, 506 and 507**

171.   The Government restates and realleges paragraphs 1-170 of this Complaint as if as if fully set forth herein.

172.   At all times material herein, each Defendant directly and indirectly participated in or associated with the Epstein Enterprise, an illicit enterprise.

173.   The Epstein Enterprise engaged in two or more occasions of conduct that constitute criminal predicate acts as defined by CICO, including, but not limited to, knowingly or recklessly causing a child to suffer physical, mental or emotional injury, or knowingly or recklessly causing a child to be placed in a situation where it is reasonably foreseeable that such child may suffer physical, mental or emotional injury, in violation Virgin Islands criminal laws prohibiting Child Abuse and Neglect in Title 14 V.I.C. § 500 *et. seq.*

174.   As a result of the Epstein Enterprise's actions numerous young girls suffered serious physical, mental and emotional injury.

175.   Defendants through a pattern of criminal activity acquired and maintained, directly or indirectly, an interest in or control of the Epstein Enterprise or real property.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **33** of **55**

176.    Defendants benefited, directly and indirectly, from the pattern of criminal activity

conducted by the Epstein Enterprise.

177.    At all times material herein, Defendants engaged in a pattern of criminal activity

that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO.

14 V.I.C. §600 *et seq.*

## COUNT TEN
### Child Abuse and Neglect
### Conspiracy to Violate the Criminally Influenced and Corrupt Organizations Act,
### 14  V.I.C. § 600 *et seq.*;  14 V.I.C §§ 505, 506 and 507

178.    The Government restates and realleges paragraphs 1-177 of this Complaint as if as

if fully set forth herein.

179.    At all times material herein, each Defendant joined in a conspiracy to violate laws

prohibiting child abuse and neglect.

180.    Each Defendant engaged in acts that revealed its intent to join and participate in the

criminal conspiracy as they knowingly or recklessly caused a child to suffer physical, mental or

emotional injury, or knowingly or recklessly caused a child to be placed in a situation where it is

reasonably foreseeable that such child may suffer physical, mental or emotional injury, in violation

Virgin Islands criminal laws prohibiting Child Abuse and Neglect in Title 14 V.I.C. § 500 *et seq.*

181.    As a result of Defendants' actions, numerous young girls suffered serious physical,

mental and emotional injury.

182.    Defendants knowingly benefited financially and/or obtained other non-financial

value from participation in the Epstein Enterprise, which has engaged in human trafficking, forced

labor, sexual servitude and commercial sexual activity of girls and young women in knowing or

reckless disregard of the laws of the Virgin Islands.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page 34 of 55

183.   At all times material herein, each Defendant conspired with Epstein and other Defendants to fulfill the primary criminal purposes of the Epstein Enterprise: human trafficking, forced labor, and sexual servitude. 14 V.I.C. §604(j).

184.   At all times material herein, Defendants engaged in a pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO. 14 V.I.C. §600 *et seq.*

**COUNT ELEVEN**
**Aggravated Rape**
**Violation of the Criminally Influenced and Corrupt Organization Act ("CICO"),**
**14 V.I.C. § 600 *et seq.*;  14 V.I.C § 1700a**

185.   The Government restates and realleges paragraphs 1-184 of this Complaint as if fully set forth herein.

186.   At all times material herein, each Defendant directly and indirectly participated in or associated with the Epstein Enterprise, an illicit enterprise.

187.   The Epstein Enterprise engaged in two or more occasions of conduct that constitute criminal predicate acts as defined by CICO, including, but not limited to, conduct that constituted or facilitated the rape of minors by force, intimidation, or the perpetrator's position of authority over the victim.

188.   Epstein and others, using force or intimidation, engaged in sexual intercourse with underage girls without their consent in violation of 14 V.I.C. § 1700a.

189.   As a result of the Epstein Enterprise's actions, numerous underage girls suffered serious physical, mental and emotional injury.

190.   Defendants through a pattern of criminal activity acquired and maintained, directly or indirectly, an interest in or control of the Epstein Enterprise or real property.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page 35 of 55

191.    Defendants benefited, directly and indirectly, from the pattern of criminal activity conducted by the Epstein Enterprise.

192.    At all times material herein, Defendants engaged in a pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO. 14 V.I.C. §600 *et seq.*

**COUNT TWELVE**
**Aggravated Rape**
**Conspiracy to Violate the Criminally Influenced and Corrupt Organizations Act,**
**14 V.I.C. § 600 *et seq*.;  14 V.I.C § 1700a**

193.    The Government restates and realleges paragraphs 1-192 of this Complaint as if fully set forth herein.

194.    At all times material herein, each Defendant joined in a conspiracy to violate laws prohibiting aggravated rape.

195.    Each Defendant engaged in acts that revealed its intent to join and participate in the criminal conspiracy by engaging in conduct that constituted or facilitated the rape of minors by force, intimidation, or the perpetrator's position of authority over the victim.

196.    Epstein and others, using force or intimidation, engaged in sexual intercourse with underage girls without their consent in violation of 14 V.I.C. § 1700a.

197.    As a result of Defendants' actions, numerous underage girls suffered serious physical, mental and emotional injury.

198.    Defendants knowingly benefited financially and/or obtained other non-financial value from participation in the Epstein Enterprise, which has engaged in human trafficking, forced labor, sexual servitude and commercial sexual activity of girls and young women in knowing or reckless disregard of the laws of the Virgin Islands.

199.   At all times material herein, each Defendant conspired with Epstein and other Defendants to fulfill the primary criminal purposes of the Epstein Enterprise: human trafficking, forced labor, and sexual servitude. 14 V.I.C. §604(j).

200.   At all times material herein, Defendants engaged in a pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO. 14 V.I.C. §600 *et seq.*

## COUNT THIRTEEN
### Rape in the Second Degree
### Violation of the Criminally Influenced and Corrupt Organization Act ("CICO"), 14 V.I.C. § 600 *et seq.*; 14 V.I.C § 1702

201.   The Government restates and realleges paragraphs 1- 200 of this Complaint as if fully set forth herein.

202.   At all times material herein, each Defendant directly and indirectly participated in or associated with the Epstein Enterprise, an illicit enterprise.

203.   The Epstein Enterprise engaged in two or more occasions of conduct that constitute criminal predicate acts as defined by CICO, including, but not limited to, conduct that constituted or facilitated the rape of girls under 18 years of age.

204.   Epstein and others who engaged in rape were over 18 years old at the time of the incidents.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page 37 of 55

205.    As a result of the Epstein Enterprise's actions, numerous minors suffered serious physical, mental and emotional injury.

206.    Defendants through a pattern of criminal activity acquired and maintained, directly or indirectly, an interest in or control of the Epstein Enterprise or real property.

207.    Defendants benefited, directly and indirectly, from the pattern of criminal activity conducted by the Epstein Enterprise.

208.    At all times material herein, Defendants engaged in a pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO. 14 V.I.C. §600 *et seq*.

**COUNT FOURTEEN**
**Rape in the Second Degree**
**Conspiracy to Violate the Criminally Influenced and Corrupt Organizations Act,**
**14 V.I.C. § 600 *et seq*.; 14 V.I.C § 1702**

209.    The Government restates and realleges paragraphs 1-208 of this Complaint as if fully set forth herein.

210.    At all times material herein, each Defendant joined in a conspiracy to violate laws prohibiting rape in the second degree.

211.    Each Defendant engaged in acts that revealed its intent to join and participate in the criminal conspiracy by engaging in conduct that constituted or facilitated the rape of girls under 18 years of age.

212.    Epstein and others who engaged in rape were over 18 years old at the time of the incidents.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page 38 of 55

213.    As a result of Defendants' actions, numerous minors suffered serious physical, mental and emotional injury.

214.    Defendants knowingly benefited financially and/or obtained other non-financial value from participation in the Epstein Enterprise, which has engaged in human trafficking, forced labor, sexual servitude and commercial sexual activity of girls and young women in knowing or reckless disregard of the laws of the Virgin Islands.

215.    At all times material herein, each Defendant conspired with Epstein and other Defendants to fulfill the primary criminal purposes of the Epstein Enterprise:  human trafficking, forced labor, and sexual servitude.  14 V.I.C. §604(j).

216.    At all times material herein, Defendants engaged in a pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO. 14 V.I.C. §600 *et seq*.


**COUNT FIFTEEN**
**Unlawful Sexual Contact in the First or Second Degree**
**Violation of the Criminally Influenced and Corrupt Organization Act ("CICO"),**
**14 V.I.C. § 600 *et seq*.;  14 V.I.C §§ 1708 and 1709**

217.    The Government restates and realleges paragraphs 1- 216 of this Complaint as if as if fully set forth herein.

218.    At all times material herein, each Defendant directly and indirectly participated in or associated with the Epstein Enterprise, an illicit enterprise.

219.    The Epstein Enterprise engaged in two or more occasions of conduct that constitute criminal predicate acts as defined by CICO, including, but not limited to, using or facilitating the

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **39** of **55**

use of force or coercion to accomplish sexual contact or engaging in sexual contact with a minor

between 13 and 16 years of age.

220.     Epstein and others who engaged in the sexual contact were over 18 years old at the

time of the incidents.

221.     As a result of the Epstein Enterprise's actions numerous young women and minors

suffered serious physical, mental and emotional injury.

222.     Defendants through a pattern of criminal activity acquired and maintained, directly

or indirectly, an interest in or control of the Epstein Enterprise or real property.

223.     Defendants benefited, directly and indirectly, from the pattern of criminal activity

conducted by the Epstein Enterprise.

224.     At all times material herein, Defendants engaged in a pattern of criminal activity

that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO

14 V.I.C. §600 *et seq*.

**COUNT SIXTEEN**
**Unlawful Sexual Contact in the First or Second Degree**
**Conspiracy to Violate the Criminally Influenced and Corrupt Organizations Act,**
**14 V.I.C. § 600 *et seq*.;  14 V.I.C §§ 1708 and 1709**

225.     The Government restates and realleges paragraphs 1 - 224 of this Complaint as if

as if fully set forth herein.

226.     At all times material herein, each Defendant joined in a conspiracy to violate laws

prohibiting unlawful sexual contact.

227.     Each Defendant engaged in acts that revealed its intent to join and participate in the

criminal conspiracy by using or facilitating the use of force or coercion to accomplish sexual

contact or engaging in sexual contact with a minor between 13 and 16 years of age.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **40** of 55

228.     Epstein and others who engaged in the sexual contact were over 18 years old at the time of the incidents.

229.     As a result of Defendants' actions, numerous young women and minors suffered serious physical, mental and emotional injury.

230.     Defendants knowingly benefited financially and/or obtained other non-financial value from participation in the Epstein Enterprise, which has engaged in human trafficking, forced labor, sexual servitude and commercial sexual activity of girls and young women in knowing or reckless disregard of the laws of the Virgin Islands.

231.     At all times material herein, each Defendant conspired with Epstein and other Defendants to fulfill the primary criminal purposes of the Epstein Enterprise:  human trafficking, forced labor, and sexual servitude.  14 V.I.C. §604(j).

232.     At all times material herein, Defendants engaged in a pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO 14 V.I.C. §600 *et seq.*

**COUNT SEVENTEEN**
**Prostitution and Keeping House of Prostitution**
**Violation of the Criminally Influenced and Corrupt Organizations Act ("CICO"),**
**14  V.I.C. § 600 *et seq.*: 14 V.I.C. §§ 1622, 1624**

233.     The Government restates and realleges paragraphs 1 - 232 of this Complaint as if fully set forth herein.

234.     At all times material herein, each Defendant directly and indirectly participated in or associated with the Epstein Enterprise, an illicit enterprise.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **41** of **55**

235.     The Epstein Enterprise engaged in two or more occasions of conduct that constitute criminal predicate acts as defined by CICO, including the engaging in or facilitating the knowing and/or reckless abuse of minors through the acts alleged herein.

236.     The Epstein Enterprise knowingly persuaded, induced, enticed, and/or coerced women and children to travel to the Virgin Islands to engage in prostitution and/or sexual activity, and/or attempted to do the same.

237.     The Epstein Enterprise kept, maintained, and/or permitted his property at Little St. James to be used for the purpose of prostitution, lewdness or assignation with knowledge or reasonable cause to know the same.

238.     The Epstein Enterprise received or offered or agreed to receive women and children at his property at Little St. James for the purposes of prostitution, lewdness or assignation, and/or permitted women and children to remain there for such purposes.

239.     The Epstein Enterprise directed, took, transported, and or offered or agreed to take or transport women and children to Little St. James with the knowledge or reasonable cause to know that the purpose of such directing, taking or transporting was prostitution, lewdness or assignation.

240.     The Epstein Enterprise knew or should reasonably have known that individuals that were the subjects of the actions described in this Count were minors.

241.     As a result of Defendants' actions, numerous young women and minors suffered serious physical, mental and emotional injury.

242.     Defendants through a pattern of criminal activity acquired and maintained, directly or indirectly, an interest in or control of the Epstein Enterprise or real property.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page 42 of 55

243. Defendants benefited, directly and indirectly, from the pattern of criminal activity conducted by the Epstein Enterprise.

244. At all times material herein, Defendants engaged in a pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO. 14 V.I.C. §600 *et seq.*

## COUNT EIGHTEEN
### Prostitution and Keeping House of Prostitution
### Conspiracy to Violate the Criminally Influenced and Corrupt Organizations Act,
### 14 V.I.C. § 600 *et seq.*: 14 V.I.C. §§ 1622, 1624.

245. The Government restated and realleges paragraph 1 - 244 of this Complaint as if fully set forth herein.

246. At all times material herein, each Defendant joined a conspiracy to laws against prostitution.

247. Each Defendant engaged in acts that revealed its intent to join and participate in the criminal conspiracy by engaging in or facilitating the persuasion, inducement, enticement or coercion of women and children to travel to the Virgin Islands to engage in prostitution and/or sexual activity, and/or attempted to do the same; keeping, maintaining, and/or permitting Epstein's property at Little St. James, to be used for the purpose of prostitution, lewdness or assignation with knowledge or reasonable cause to know the same; receiving, offering, or agreeing to receive individuals at his property at Little St. James for the purposes of prostitution, lewdness or assignation, and/or permitted women and children to remain there for such purposes; and directing, taking, transporting, and/or offering or agreeing to take or transport women and children to Little St. James with the knowledge or reasonable cause to know that the purpose of such directing,

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **43** of **55**

taking or transporting was prostitution, lewdness or assignation, in violation of 14 V.I.C. §§ 1622 and 1624.

248.    Defendants knew or should reasonably have known that individuals that were the subjects of the actions described in this Count were minors.

249.    As a result of Defendants' actions numerous young women and minors suffered serious physical, mental and emotional injury.

250.    Defendants knowingly benefited financially and/or obtained other non-financial value from participation in the Epstein Enterprise, which has engaged in human trafficking, forced labor, sexual servitude and commercial sexual activity of girls and young women in knowing or reckless disregard of the laws of the Virgin Islands.

251.    At all times material herein, each Defendant conspired with Epstein and other Defendants to fulfill the primary criminal purposes of the Epstein Enterprise:  human trafficking, forced labor, and sexual servitude.  14 V.I.C. §604(j).

252.    At all times material herein, Defendants engaged in a pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO 14 V.I.C. §600 *et seq*.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **44** of **55**

## COUNT NINETEEN
### Sex Offender Registry
### Violation of the Criminally Influenced and Corrupt Organizations Act ("CICO"), 14 V.I.C. § 600 *et seq.*:  14 V.I.C. § 1721 *et seq.*

253.    The Government restates and realleges paragraphs 1- 240 of this Complaint as if fully set forth herein.

254.    Epstein was required to, and did, register under the Virgin Islands Sexual Offender Registration and Community Protection Act ("SORCPA") codified at 14 V.I.C. § 1721 *et seq.*

255.    SORCPA requires that offenders required to register provide information relating to intended travel in foreign commerce.

256.    On at least two occasions, Epstein traveled to Vienna and Monaco without disclosing that travel to the Virgin Islands sex offender registry.

257.    Epstein's failure to disclose this travel before, during, or even after his travel was knowing.

258.    Epstein's violation SORPCA was part of a pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise.  14 V.I.C. §604(j).

## COUNT TWENTY
### Fraudulent Conveyance
### Violation of the Criminally Influenced and Corrupt Organizations Act ("CICO"), 14 V.I.C. § 600 *et seq.*:  14 V.I.C. §§ 832-833

259.    The Government restates and realleges paragraphs 1- 258 of this Complaint as if fully set forth herein.

260.    At all times material herein, each Defendant directly and indirectly participated in or associated with the Epstein Enterprise, an illicit enterprise.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **45** of **55**

261.    Each Defendant engaged in two or more occasions of conduct that constitute

criminal predicate acts as defined by CICO, including, but not limited to transferring assets to and

between various entities controlled by Epstein and the Epstein Enterprise to avoid, defeat, hinder

or delay claims against them.

262.    Upon information and belief, in an effort to defeat the claims of creditors and avoid

the oversight of the court probating his estate, Epstein, days before his death, transferred significant

assets, including assets held by other Defendants, into The 1953 Trust.

263.    At the time of these transfers, Epstein had numerous actions pending against him

related to his trafficking and sexual assaults seeking financial judgments.

264.    Through these transfers, Epstein and the Epstein Enterprise fraudulently removed

property and effects beyond the jurisdiction of the probate court.

265.    Epstein and the Epstein Enterprise were parties to the fraudulent conveyance of the

property, real or personal, and/or the interests or rights arising out of property, contracts, or

conveyances of Epstein and the Epstein Enterprise.

266.    Epstein and the Epstein Enterprise acted with the intent to defeat, hinder, or delay

creditors and claimants, including the Government of the Virgin Islands, in collecting on their

judgements, debts and demands.

267.    Defendants through a pattern of criminal activity acquired and maintained, directly

or indirectly, an interest in or control of the Epstein Enterprise or real property.

268.    Defendants benefited, directly and indirectly, from the pattern of criminal activity

conducted by the Epstein Enterprise.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **46** of **55**

269.    At all times material herein, Defendants engaged in a pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO. 14 V.I.C. §600 *et seq.*

## COUNT TWENTY-ONE
### Fraudulent Conveyance
### Conspiracy to Violate the Criminally Influenced and Corrupt Organizations Act,
### 14 V.I.C. § 600 *et seq.*:  14 V.I.C. §§ 832-833

270.    The Government restates and realleges paragraphs 1 to 269 of this Complaint as if fully set forth herein.

271.    At all times material herein, each Defendant joined in a conspiracy to commit fraudulent conveyances.

272.    Each Defendant engaged in acts that revealed its intent to join and participate in the criminal conspiracy, including, but not limited to, transferring assets to and between various entities controlled by Epstein and the Epstein Enterprise to avoid, defeat, hinder or delay claims against them.

273.    Upon information and belief, in an effort to defeat the claims of creditors and avoid the oversight of the court probating his estate, Epstein, days before his death, transferred significant assets, including assets held by other Defendants, into The 1953 Trust.

274.    At the time of this transfer, Epstein had numerous actions pending against him related to his trafficking and sexual assaults seeking financial judgments.

275.    Through this transfer, Epstein and the Epstein Enterprise fraudulently removed property and effects beyond the jurisdiction of the probate court.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **47** of **55**

276.    Epstein and the Epstein Enterprise were parties to the fraudulent conveyance of the property, real or personal, and/or the interests or rights arising out of property, contracts, or conveyances of Epstein and the Epstein Enterprise.

277.    Epstein and the Epstein Enterprise acted with the intent to defeat, hinder, or delay the Government of the Virgin Islands and other creditors and claimants to collect on their judgements, debts and demands.

278.    Defendants knowingly benefited financially and/or obtained other non-financial value from participation in the Epstein Enterprise, which has engaged in human trafficking, forced labor, sexual servitude and commercial sexual activity of girls and young women in knowing or reckless disregard of the laws of the Virgin Islands.

279.    At all times material herein, each Defendant conspired with Epstein and other Defendants to fulfill the primary criminal purposes of the Epstein Enterprise:  human trafficking, forced labor, and sexual servitude.  14 V.I.C. §604(j).

280.    At all times material herein, Defendants engaged in a pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO. 14 V.I.C. §600 *et seq.*

## COUNT TWENTY-TWO
### Civil Conspiracy

281.    The Government restates and realleges paragraphs 1 - 280 of this Complaint as if fully set forth herein.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **48** of **55**

282. Defendants acted in concert and joined with others to perform the wrongful acts identified in Counts 1 to 13, among others, concealing the sexual abuse of minor females by unlawful means.

283. Each co-conspirator knew, or in the exercise of reasonable care should have known, about the conduct of the others and about the common unlawful scheme.

284. These unlawful acts could not have been carried to the length and extent accomplished without the common understanding shared by Epstein and the Epstein Enterprise Defendants.

285. Each of the Defendants had a duty to report, stop or terminate the wrongful conduct, but instead each Defendant concealed, assisted and furthered the wrongful acts by use of civil conspiracy.

286. As a direct and proximate result of Defendants' conspiracy, the Virgin Island has been injured.

287. Each co-conspirator is jointly and severally liable for the acts alleged herein.

**COUNT TWENTY-THREE**
Fraudulent Claims Upon the Government
Violation of the Criminally Influenced and Corrupt Organizations Act ("CICO),
14 V.I.C. § 600 *et seq*.; 14 V.I.C. § 843

288. The Government restates and realleges paragraphs 1-287 of this Complaint as if fully set forth herein.

289. At all times relevant and material herein, each Defendant directly and indirectly participated in or associated with the Epstein Enterprise, an illicit enterprise.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **49** of **55**

290.    Each Defendant engaged in two or more occasions of conduct that constitute criminal predicate acts as defined by CICO, including, but not limited to, making fraudulent claims upon the Government.

291.    The Epstein Enterprise misrepresented the purpose, activities, employment, and income of the Southern Trust Company, Inc., in order to obtain and maintain valuable tax incentives in order to fund the criminal activities of the Epstein Enterprise. In addition, the Epstein Enterprise used Southern Trust Company to employ, pay, and conceal the activities of participants in the criminal activities of the Enterprise.

292.    The Epstein Enterprise made and presented an application for tax incentives, testimony, and quarterly reports to the EDC, a commission of the Government, regarding the Southern Trust Company, knowing such claims to be false, fictitious, or fraudulent; knowingly and willfully falsified, concealed or covered up material facts regarding the Southern Trust Company; made false or fraudulent statements or representations about the purpose, activities, income, and employment of Southern Trust Company; and made and submitted false affidavits knowing the same to contain any fraudulent or fictitious statement or entry.

293.    These false statements and documents included affidavits, testimony, an application, and other documents that misrepresented that Southern Trust Company was engaged in, and failed to disclose it did not and could not carry out, in its stated purpose of providing consulting services in financial and biomedical informatics.

294.    Defendants knowingly benefited financially and/or obtained other non-financial value from participation in the Epstein Enterprise, which has engaged in human trafficking, forced labor, sexual servitude, and commercial sexual activity of underage girls and young women in knowing and reckless disregard of the laws of the Virgin Islands.

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **50** of **55**

295.    Defendants through a pattern of criminal activity acquired and maintained, directly or indirectly, an interest in or control of the Epstein Enterprise or real property.

296.    Defendants benefited, directly and indirectly, from the pattern of criminal activity conducted by the Epstein Enterprise.

297.    At all times material herein, Defendants engaged in a pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO. 14 V.I.C. §600 *et seq.*

## COUNT TWENTY-FOUR
Fraudulent Claims Upon the Government
Conspiracy to Violate the Criminally Influenced and Corrupt Organizations Act,
14 .I.C. § 600 *et seq.*; 14 V.I.C. § 843

298.    The Government restates and realleges paragraphs 1 to 297 of this Complaint as if fully set forth herein.

299.    At all times material herein, each Defendant joined in a conspiracy to commit fraudulent conveyances.

300.    Each Defendant engaged in acts that revealed its intent to join and participate in the criminal conspiracy, including, but not limited to, transferring assets to and between various entities controlled by Epstein and the Epstein Enterprise to avoid, defeat, hinder or delay claims against them.

301.    The Epstein Enterprise misrepresented the purpose, activities, employment, and income of the Southern Trust Company, Inc., in order to obtain and maintain valuable tax incentives in order to fund the criminal activities of the Epstein Enterprise. In addition, the Epstein

Case 1:15-cv-07433-LAP   Document 1111-1   Filed 09/01/20   Page 52 of 55
GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **51** of **55**

Enterprise used Southern Trust Company to employ, pay, and conceal the activities of participants in the criminal activities of the Enterprise.

302.    The Epstein Enterprise made and presented an application for tax incentives, testimony, and quarterly reports to the EDC, a commission of the Government, regarding the Southern Trust Company, knowing such claims to be false, fictitious, or fraudulent; knowingly and willfully falsified, concealed or covered up material facts regarding the Southern Trust Company; made false or fraudulent statements or representations about the purpose, activities, income, and employment of Southern Trust Company; and made and submitted false affidavits knowing the same to contain any fraudulent or fictitious statement or entry.

303.    These false statements and documents included affidavits, testimony, an application, and other documents that misrepresented that Southern Trust Company was engaged in, and failed to disclose it did not and could not carry out, in its stated purpose of providing consulting services in financial and biomedical informatics.

304.    Defendants knowingly benefited financially and/or obtained other non-financial value from participation in the Epstein Enterprise, which has engaged in human trafficking, forced labor, sexual servitude, and commercial sexual activity of underage girls and young women in knowing and reckless disregard of the laws of the Virgin Islands.

305.    At all times material herein, each Defendant conspired with Epstein and other Defendants to fulfill the primary criminal purposes of the Epstein Enterprise:  human trafficking, forced labor, and sexual servitude.  14 V.I.C. §604(j).

306.    At all times material herein, Defendants engaged in a pattern of criminal activity that was not isolated but was related to the affairs of the Epstein Enterprise in violation of CICO. 14 V.I.C. §600 *et seq.*

## Notice of Allegation of
## PUNITIVE DAMAGES

307.    The purpose of punitive damages in the common law is to punish the defendant for outrageous conduct that is reckless or intentional and to deter others from engaging in such conduct in the future.

308.    This Complaint describes intentional conduct so egregious, persistent, and injurious that it shocks the conscience and offends a civilized society.

309.    Punitive damages are especially important in the case of persons or companies that have so money, assets, and power that mere fines, penalties, and economic damages are simply not sufficient.

310.    At all times material herein, Epstein and the Epstein Enterprise engaged repeatedly in wrongful acts which were intentional and outrageous.  The Government gives notice that it intends to pursue the possibility of punitive damages in any jury verdict.

### PRAYER FOR RELIEF

**WHEREFORE**, the Government respectfully requests that the Court:

A.      Enter a judgment in favor of the Government and against Defendants on all counts;

B.      Declare that Defendants, through the Epstein Enterprise, have engaged in a pattern of criminal activity  in the Virgin Islands including but not limited to human trafficking, forced labor and sexual servitude of female children and young women, unlawful sexual contact,  child sexual abuse, child abuse and neglect, rape, prostitution civil conspiracy and other offenses elated offenses,  and civil conspiracy;

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page 53 of 55

C.     Pursuant to 14 V.I.C. § 610, enforce and maintain the criminal activity liens the Government is filing contemporaneously with this lawsuit, or shall file in connection with this action;

D.     Pursuant to 14 V.I.C. § 607(a)(1) and 14 V.I.C. § 141, issue an order forfeiting and divesting in favor of the Government of the Virgin Islands all of Defendants' interests in any real and personal property within the territory of the U.S. Virgin Islands used to facilitate the criminal enterprise carried out by the Epstein Enterprise, including but not limited to Little St. James Island and Greater St. James Island;

E.     Issue an order forfeiting to the Government of the Virgin Islands any proceeds or funds obtained by Defendants, whether directly or indirectly, during the course of the criminal activity of the Epstein Enterprise;

F.     Pursuant to 14 V.I.C. § 607(a)(1), require Defendants to divest themselves of any real property or other interests in favor of the Government of the Virgin Islands used to further the goals of the Epstein Enterprise;

G.     Pursuant to 14 V.I.C. § 607(a)(3) and (5), order the dissolution of the Epstein Enterprise, including but not limited to, order the dissolution of the corporate Defendants;

H.     Pursuant to 14 V.I.C. § 607(a)(2) enter an injunction to prevent the further criminal conduct, and concealment of the criminal conduct, by the Epstein Enterprise;

I.     Pursuant to 14 V.I.C. § 607(a)(4), order the revocation of any and all licenses, permits and approvals that had been granted by any agency of the Territory, and require the repayment of any tax benefits that had been bestowed on any Defendant;

J.     Pursuant to 14 V.I.C. § 607(a)(6)(e), award the Government the maximum civil penalty for each and every violation of law committed by the Epstein Enterprise;

GVI v. Estate of Jeffrey Epstein
GVI's First Amended Complaint
Page **54** of **55**

K. Pursuant to 14 V.I.C. § 607, award treble damages and all other available remedies, including attorneys' fees and costs;

L. Award compensatory and punitive damages for Defendants' civil conspiracy;

M. Void the transfer of assets as fraudulently conveyed to the The 1953 Trust;

N. Award such equitable relief, including disgorgement of all ill-gotten gains, as may be just and proper and appropriate, pursuant to 14 V.I.C. § 608(c)(4), to protect the rights of victims and innocent persons in the interest of justice and consistent with the purposes of CICO;

O. Assess and award a judgment in favor of the Government and against the Defendants for attorneys' fees and costs and pre- and post-judgment interest; and

P. Award any and all other relief this Court deems appropriate.

**The Government demands a jury trial on all issues so triable.**

**RESPECTFULLY SUBMITTED,**

Dated: <u>February 5, 2020</u>

**GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS**

**DENISE N. GEORGE, ESQUIRE**
**ATTORNEY GENERAL**
V.I. Department of Justice
Office of the Attorney General
34-38 Kronprindsens Gade
GERS Building, 2nd Floor
St. Thomas, U.S.V.I. 00802
Telephone:  (340) 774-5666
Email: Carol.Jacobs@vi.gov
Email: Ariel.Smith@doj.vi.gov