**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------X

VIRGINIA L. GIUFFRE,

      Plaintiff,

v.

GHISLAINE MAXWELL,

      Defendant.

**15-cv-07433-LAP**

------------------------------------------------------X

**MS. MAXWELL'S OBJECTION TO THE GOVERNMENT OF THE**
**UNITED STATES VIRGIN ISLANDS' *EX PARTE* MOTION TO**
**INTERVENE AND FOR CONFIDENTIAL ACCESS TO JUDICIAL**
**RECORDS AND DISCOVERY DOCUMENTS**

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
303.831.7364

Defendant Ghislaine Maxwell ("Ms. Maxwell") files this Objection to the Government of the United States Virgin Islands' (the "USVI" or "Government") *Ex Parte* Motion to Intervene and for Confidential Access to Judicial Records and Discovery Documents ("Motion") and states as follows:

## INTRODUCTION

The Government seeks to intervene in this five-year old, closed civil defamation action between two private civil litigants, Plaintiff Giuffre and Defendant Ms. Maxwell.  The Government contends that intervention will assist in its action to enforce the Virgin Islands Criminally Influenced and Corrupt Organizations Act ("CICO") against the Estate of Jeffrey E. Epstein.  The Estate of Jeffrey E. Epstein is not, of course, a party to this closed civil defamation case.  The Government seeks two categories of documents: 1) summary judgment materials that are already publicly available due to their release on the Second Circuit Court's docket on August 9, 2019; and 2) "all currently unfiled discovery deposition transcripts and exhibits thereto in this action." Memorandum of Law (Doc. # 1111), p. 4.  Requests for either category are inappropriate and should be denied.

With respect to the first category, the Second Circuit already determined the full permissible extent of modification of the Protective Order in this case as it governs the summary judgment materials, and thus the Second Circuit's mandate prohibits further litigation on additional access.  With respect to the second category, the Government's request to modify the Protective Order to gain access "to all currently unfiled discovery deposition transcripts and exhibits thereto in this action"  must be rejected pursuant to controlling Second Circuit law.  Under *Martindell v. Internat'l Tel. & Tel. Corp.,* 594 F.2d 291 (2d Cir.1979), the Government bears the burden to show some "extraordinary circumstance" or "compelling need" justifying

modification of a protective order governing discovery in a civil action.  The  Government failed to satisfy this heightened burden in their pleadings and cannot satisfy it.

## ARGUMENT

### I.   THE GOVERNMENT CANNOT INTERVENE OR MODIFY THE PROTECTIVE ORDER FOR ACCESS TO NON-JUDICIAL DISCOVERY MATERIALS

The Government buries the lead in its Motion.  It first seeks four sets of documents, all of which are actually summary judgment materials that have already been unsealed and to which the USVI, like the public at large, already has access.  *See Brown v. Maxwell*, Case No. 18-2868 (2d Cir.), Doc. #s 275-287.  The Government then fills pages of briefing on issues of public access to judicial records, matters that have already been resolved in this case by the Second Circuit and this Court.  But the Government really seeks – and is not entitled to – "[a]ll currently unfiled discovery deposition transcripts and exhibits thereto in this action."  (Doc. # 1111., p. 4). The Government knows it carries the burden of demonstrating the "compelling need or exceptional circumstances" necessary to intervene and modify the Protective Order. (*Id*.,, p. 12). But, because it cannot plausibly argue that it meets this burden, it clutters the record with irrelevant arguments on matters conclusively resolved.  This clutter thinly disguises an attempt to gain intervention for the purposes of obtaining the documents in category 2, an overly-broad and improper request.

### A.   The *Martindell* standard is the applicable standard; *Martindell* requires a compelling need or exceptional circumstances to justify government intervention

The moving party, a federal agency of the United States, purports to seek both intervention as a matter of right and permissive intervention.  (Doc. # 1110).  However, only permissive intervention is at issue here because "[w]here the federal government seeks to modify a protective order in a private suit, the proper procedure is to seek permissive intervention under

Rule 24(b)."  *Daniels v. City of New York*, 200 F.R.D. 205, 207 (S.D.N.Y. 2001)

(*citing Martindell*, 594 F.2d at 294 ).  Before the Rule 24(b) factors can be considered, the

Government must meet the standards set forth in *Martindell*.  Under *Martindell*, witnesses and

parties must be permitted to rely – indeed, are "entitled to rely" – on a protective order's

enforceability against third parties, absent improvidence in issuing the protective order or some

extraordinary circumstance or compelling need.  *Martindell*, 594 F.2d at 296.

      As a fellow court in this district explained in *Daniels v. City of New York*, "[c]ourts

generally apply one of three standards when faced with a request to modify a protective order.

The *Martindell* standard is generally applicable ***when a government agency*** seeks modification

of a protective order governing discovery in a civil action." 200 F.R.D. at 207-08 (citing

*Martindell,* 594 F.2d at 296) (emphasis added).  "Under this standard, the burden is on ***the***

***Government*** to show 'some extraordinary circumstance or compelling need' justifying

modification of the protective order." *Id.* (emphasis added). The USVI wholly ignores its burden

and the reasons therefor as set out in *Martindell*.  Instead, it cites to inapplicable cases where

*private* parties seek to assert public interests to gain access to information; these cases are

inapposite to the question at issue here and they raise different standards and considerations.

      The *Martindell* court held that the government "may not . . . simply by picking up the

telephone or writing a letter to the court . . . insinuate itself into a private civil lawsuit between

others."  *Id.*  The Second Circuit rejected the government's argument that the district court's

"solicitude for the witnesses' Fifth Amendment" over the government's desire for the deposition

transcripts was an abuse of discretion.  *Id.* at 295  It held that "a more significant

counterbalancing factor" is the civil rules' goal of encouraging witnesses to participate in civil

litigation:

> Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences. In short, witnesses might be expected frequently to refuse to testify pursuant to protective orders if their testimony were to be made available to the Government for criminal investigatory purposes in disregard of those orders.

*Id.* at 296.  After balancing the interests at stake, the court concluded that the protective order should not be vacated or modified "to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation, either as evidence or as the subject of a possible perjury charge." *Id.* (emphasis added).

Particularly pertinent in *Martindell* was the fact that the party seeking access was the federal government, which has at its disposal special investigatory powers not available to private litigants.

> [T]he Government as investigator has awesome powers which render unnecessary its exploitation of the fruits of private litigation. Normally the Government may institute or continue a grand jury proceeding and, in connection therewith, subpoena witnesses to testify, regardless of whether they have already testified or furnished documentary evidence in civil litigation. In addition, it may subpoena both witnesses and documents for the trial of charges already filed against others . . . . Should the witnesses then invoke their Fifth Amendment privilege, the Government has the power to offer immunity in exchange for their testimony pursuant to 18 U.S.C. § 6002.

*Id*. (*citing  Kastigar v. United States,* 406 U.S. 441 (1972)).  As in *Martindell*, here it is the federal government that seeks to intervene to modify a protective order. And, like in *Martindell*, the purpose of the intervention is to assist with a pending matter involving a non-party to this case.

*Daniels v. City of New York*  is instructive.  In *Daniels*, the S.D.N.Y. judge prevented intervention and modification of a protective order despite the fact that the federal government's powers were more limited than they are in the instant case.  In that case, the U.S. Attorney for the Southern District of New York sought access to discovery materials in a private class action litigation against the City of New York relating to stop and frisk policies and applications.

4

*Daniels,* 200 F.R.D. at 207.  The government argued there that the materials would aid in its investigation of potential constitutional violations by the New York Police Department ("NYPD").  *Id.*  The government sought access to certain weekly database material, as well as NYPD's Street Crime Unit ("SCU")'s "demographic information, disciplinary information, SCU tactical deployment plans, and internal memoranda" – *i.e.,* non-filed discovery materials – all of which were subject to a protective order in that civil matter.  *Id.*  As here, "the Government argue(s) that the standard governing access by a private party to a matter of public interest (*i.e.*, the *Agent Orange[1]* standard) should apply."  *Id.*  The court rejected that argument.  The court did so despite the government's lack of the ability to convene a grand jury (due to the statute under which it was investigating) or issue subpoenas (because no case had yet been filed).  "Nonetheless, the Government has the 'awesome power' of using its virtually limitless resources to sue the City" and to "provide the Government with discovery tools it would otherwise not have merely because it is the Government and not a private party is both counterintuitive and illogical."  *Id.* at 209.  The SDNY court thus held that the "*Martindell* standard remains the appropriate standard to apply to the Government's request to intervene" for purposes of modifying a protective order.  *Id.*

---

[1] The *Daniels* Court explained that under *In re Agent Orange Prod. Liab. Litig.,*104 F.R.D. 559  567-68 (E.D.N.Y.1985), *aff'd on different grounds,*821 F.2d 139 (2d Cir.1987), explained "[w]hen a private party asserts a public interest in order to gain access to information, the burden is on the party seeking to maintain the confidentiality order to show that there is 'good cause' for continued confidentiality." *Daniels v. City of New York*, 200 F.R.D. 205, 207 (S.D.N.Y. 2001).  It may be true that "[w]hen a **private party** seeks access to confidential information concerning a private matter, a court should consider the following factors: (1) good cause (for either modification or continued confidentiality); (2) the nature of the protective order; (3) the foreseeability at the time of the original protective order of the modification now requested; and (4) the parties' reliance on the protective order." *Id.* (emphasis added). However, the USVI, like the government in *Daniels*, is not a "private party."

Here, there is no restriction on the Government's awesome powers or ability to subpoena witnesses, obtain documents, and protect its interest in "enforcing the criminal laws of the Virgin Islands."  It has filed a case in the Superior Court of the U.S. Virgin Islands, enjoys full subpoena power, and wields the almost limitless powers of the United States federal government.  There is no question that *Martindell* applies on these facts.

### B.    The Government cannot meet the *Martindell* standard

Application of *Martindell* requires that the Motion to Intervene and Modify the Protective Order must be denied. "Under the *Martindell* standard, the Government has the burden of demonstrating either extraordinary circumstances or a compelling need justifying modification of the protective order." *Daniels*, 200 F.R.D. at 209.  The Government cannot meet that burden here, nor has it attempted to.  Instead, the Government argues that it should have unfettered access to "all unfiled discovery deposition transcripts and exhibits thereto" without regard for need or content "because they are very likely relevant to its pending Virgin Islands Criminally Influenced and Corrupt Organizations Act ("CICO") enforcement action against the Estate of Jeffrey E. Epstein and several Epstein-controlled entities before the Superior Court of the U.S. Virgin Islands." (Doc. # 1111, p. 1).  Despite the Government's suggestion otherwise, relevance is not the standard for government modification of a protective order on which participants in an in an unrelated private matter relied.

### 1.    The Government's stated "needs" are not compelling

The Government claims two "needs," both of which have been rejected under the *Martindell* standard.  First, it argues it is a "matter of procedural efficiency" to obtain discovery from this case that may relate to the claims it is prosecuting against the Epstein Estate.  (Doc. # 1111, p. 13).  It is well settled in this Circuit that mere "convenience" of the Government does not establish the extraordinary circumstances necessary for the Government to overcome the

burden required to modify a protective order in a private litigation.  A protective order should not be modified "merely to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation," particularly when there are other means of securing information, such as subpoenas and grand jury proceedings. *Martindell*, 594 F.2d at 296.  This is the conclusion that other courts in this Circuit have reached in similar circumstances.  *See, e.g.*, *Med. Diagnostic Imaging, PLLC v. Carecore Nat., LLC,* 06 Civ. 7764 (CS) (THK), 2009 WL 2135294, at *3 (S.D.N.Y. July 16, 2009) ("While the Court appreciates the need for efficiency, it is hardly an extraordinary or compelling circumstance."); *Maryland Casualty Co. v. W.R. Grace Co.,* No. 83 Civ. 7451 (SWK) (LB), 1994 WL 419787, at *3 (S.D.N.Y. Aug. 10, 1994) ("Although fostering judicial economy and avoiding duplicative discovery are laudable goals — and perhaps would be sufficient motivation to modify a protective order in the Ninth or Tenth Circuits — they hardly amount to extraordinary circumstances or compelling need.").

In the USVI case, by initiating a civil action, the Government has the "advantage of all the discovery devices available to any civil litigant including subpoena power and party discovery." *Daniels*, 200 F.R.D. at 207 n.3.  The Government can subpoena or depose any or all of the witnesses who may have testified or provided documents in this defamation matter, and obtain the evidence that relates *to the USVI case*, rather than to this single count action for defamation.  The witnesses on whom such subpoenas are served can comply with, or seek protections or modifications from, the Superior Court of the U.S. Virgin Islands, and decisions regarding the obligation to comply or the need for protections will be made in that court and will be related to that litigation.  *See Medical Diagnostic Imaging*, 2009 WL 2135294, at *6 (noting that the burden of production of previously produced confidential materials in another litigation "will thus fall on the recipients of those requests to provide responses" and not on the

Government).  The Government is not, however, entitled to eviscerate the protections of the

Protective Order in this case, solely for the purpose of "procedural efficiency" – or, to knock off

the items on its own investigative to-do lists.

The death of Mr. Epstein is likewise not the basis of a compelling need. *See IIT v.*

*International Controls Corporation*, 76 Civ. 1547 (CES), 2009 WL 309492, at *1 (S.D.N.Y.

Sep. 21, 2009) ("The death of a fugitive fraudster does not create the kind of compelling need or

extraordinary circumstances to warrant unsealing confidential settlement agreements.").  Mr.

Epstein's death does not result in the Government's *need* for access to the information in this

case, not in the least because the Government will be unlikely to find "critical" information in

Mr. Epstein's testimony.  While it is true, of course, that Mr. Epstein is not available to testify in

the Government's case, it is also no secret that he did not testify in this case *either*.  Instead, as

he stated he would, he invoked his Fifth Amendment rights against self-incrimination on every

question (see Doc. # 222). There can be no information in this unrelated defamation action that is

"critical to the USVI's law enforcement action," given Mr. Epstein's refusal to respond to

questions when compelled to do so in a deposition years ago.

### 2. The flimsy "needs" do not outweigh the reliance interests and Fifth Amendment rights of the witnesses and litigants

The witnesses and parties in the instant case have relied on, and continue to rely on, the

Protective Order. The most important factor in the *Martindell* balancing is that reliance.  "A

witness should be entitled to rely upon the enforceability of a protective order against any third

parties, including the Government, and that such an order should not be vacated or modified

merely to accommodate the Government's desire to inspect protected testimony for possible use

in a criminal investigation, either as evidence or as the subject of a possible perjury charge."

*Martindell*, 594 F.2d at 296.  This entitlement is particularly pronounced where, as here, many

witnesses relied on the Protective Order in providing information in civil litigation and forewent invoking their Fifth Amendment rights.  In the USVI criminal enforcement action, witnesses may still invoke those privileges and "the Government has the power to offer immunity in exchange for their testimony pursuant to 18 U.S.C. § 6002."  *Martindell*, 594 F.2d at 296.

Ms. Maxwell's reliance on the Protective Order as a basis for not asserting her Fifth Amendment privilege against self-incrimination and participating in civil discovery is reason enough to deny the present motion.  While the Government in the USVI is proceeding civilly against Mr. Epstein's Estate, that is no assurance of their ultimate use of the materials they seek. The USVI's stated interest is in "advocating for the public's interest and enforcing the criminal laws of the Virgin Islands" and their Motion rightly declares that the "USVI Attorney General has power and duty to 'prosecute in the name of the People of the Virgin Islands, offenses against the laws of the Virgin Islands.'" (Doc. # 1111, p. 7).  Confidentiality in the context of information that may be incriminating or "damaging to reputation and privacy" is the very purpose of protective orders. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35–36 (1984) ("The prevention of the abuse that can attend the coerced production of information under a State's discovery rule is sufficient justification for the authorization of protective orders."). The discovery material should remain sealed to vindicate Ms. Maxwell and other individuals' reasonable reliance on the judicial promise of confidentiality.  *See TheStreet.Com*, 273 F.3d at 229–31 (recognizing the importance of reliance interests in assessing whether to allow access to sealed documents (citing *Martindell*, 594 F.2d at 296)); *see also Brown v. Maxwell*, 929 F.3d 41, 48 n.22 (2d Cir. 2019) (recognizing the propriety of sealing deposition material "concerning intimate matters where the questions were likely only permitted—and the responses only

compelled—because of a strong expectation of continued confidentiality" (citing Fed. R. Civ. P. 5.2)).

Now that Ms. Maxwell has been indicted, there is no question that all discovery material must remain subject to the Protective Order. "Whether the defendant has been indicted has been described as 'the most important factor' to be considered in the balance of factors." *Maldanado v. City of New York*, Case No. 17-cv-6618 (AJN), 2018 WL 2561026, at *2 (S.D.N.Y. June 1, 2018). To retract this Court's promise of confidentiality and effectively – undeniably – eviscerate Ms. Maxwell's Fifth Amendment rights, both in the pending criminal action in the Southern District of New York and in any actual or potential action (civil or criminal) in the United States Virgin Islands, would plainly contravene *Martindell*.

Additionally, it is worth noting Ms. Guiffre has already considered – and advanced to her advantage – the purpose of a witness's reliance on confidentiality.  Mr. Epstein's deposition testimony itself, including its videotaping, was compelled by this Court over a Motion to Quash filed by Mr. Epstein.  (Doc. # 221 & 222).  Mr. Epstein specifically raised concerns regarding the potential for the Protective Order in this matter to be  subject to modification by third parties – in other words, he was concerned about precisely what the Government seeks to do here.  (Doc. # 222, p. 9).  But Plaintiff argued in seeking to compel his testimony that the deposition *would be subject to the Protective Order*, thus highlighting the exact concerns raised in Mr. Epstein's Motion. (Doc. # 276, p. 29:19-22). In denying the Motion to Quash, this Court *forced* Mr. Epstein to rely on the continuing confidentiality promised by the Protective Order in this case to ensure that the deposition, or video thereof, would not be used in any other matter (by the government or otherwise) or released in the public domain.  (Doc. # 252).  It is precisely this type of reliance on a protective order, particularly by a non-party in an unrelated civil matter who

was compelled to testify over objection, that prohibits the Government from modifying the Protective Order and accessing these documents.

The assertion that information "*about* Epstein" by other witnesses is no longer available because of his passing is just non-sensical. The Government enjoys complete subpoena and discovery powers in its case in the U.S. Virgin Islands. The convenience of gaining information without the need to gather such information itself is not, and has never been, a compelling need or sufficient basis to demonstrate extraordinary circumstances in this Circuit. Further, to cut off those witnesses' rights to seek protections from subpoenas and testimony in the Virgin Islands case, when they have relied on the Protective Order in this case in providing testimony, violates *Martindell*. Having failed to meet its extraordinary burden, the Government's Motion to intervene or modify the Protective Order should be denied.

## C.    Denial of the Motion is necessary for consistency in this case

The Court should also deny the request for reasons of consistency with its other Orders in this case relating to Protective Order modification. This Court has already found that the type of broad-strokes access to discovery covered by the Protective Order is inappropriate. This Court must reach the same conclusion here. This Court's reasons for denying modification of the Protective Order for discovery material requested by Professor Dershowitz are equally applicable here. The Government's sweeping request for access to all discovery materials must be denied because:

- "the confidentiality provisions of the Maxwell protective order 'functioned as a powerful mechanism for inducing parties to provide discovery in a contentious litigation,'" (Doc. # 1113, p. 5);

- "Second, and relatedly, the . . . the gravity of the privacy interests of nonparties—particularly nonparties who are alleged victims of Jeffrey Epstein's sexual abuse—weighs heavily against the unilateral disclosure that (the intervenor) seeks. Those interests are particularly acute given that the psychological and emotional wellbeing of survivors of alleged sexual assaults may be implicated by such a broad disclosure." *Id.* at 6.

The Government here seeks *all* filed and unfiled discovery material, specifically including information relating to "both named parties and non-parties, (who) are potentially victims, perpetrators and/or witnesses to the conduct at issue in the USVI's CICO enforcement action." (Doc. # 1111, p.7). This request implicates the same privacy concerns that this Court considered as "heavily" weighing against an intervenor's interests. Finally, like Mr. Dershowitz's original Motion, the Government here seeks all deposition material and exhibits, sealed or unsealed, without any limitations on the scope of the needs of their case against Mr. Epstein's estate. (Doc. # 1113, p. 6). But, by contrast to Mr. Dershowitz's needs, what was or was not said in this single count defamation action is not relevant to the claims or defenses in the USVI matter. The requested modification is merely a way for the Government to bypass conducting its own discovery. The privacy interests this Court has guarded before still require protection and should not be discarded merely for the Government's convenience.

## II.    INTERVENTION IS IMPROPER FOR ACCESS TO SUMMARY JUDGMENT MATERIALS THAT HAVE ALREADY BEEN UNSEALED

The Government's request to intervene to seek to modify the Protective Order is perplexing for another reason. The Government states that it seeks summary judgment related material. But the Second Circuit has already determined the precise extent to which these particular sealed materials – the summary judgment briefings, attachments and decision – are

judicial documents and what portions thereof were subject to unsealing "under both the common

law and First Amendment analysis." Motion p. 10-11, *clarifying Brown*, 929 F.3d at 47. The

extent to which the summary judgment materials are subject to unsealing under common law and

the First Amendment is subject to the mandate rule. Any additional unsealing for the

Government, if that is what it is being requested, would require application of the heightened

*Martindell* standard.

### A.     The extent of available access to judicial material including summary judgment briefings is subject to the mandate rule

"The mandate rule 'compels compliance on remand with the dictates of the superior court

and forecloses relitigation of issues expressly or impliedly decided by the appellate

court.'" *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (*quoting United States v.

Bell*, 5 F.3d 64, 66 (4th Cir. 1993)). There can be no question that the Second Circuit has

expressly decided the scope of the modification to the Protective Order on "(1)

the summary judgment record, which includes the parties' summary judgment briefs, their

statements of undisputed facts, and incorporated exhibits; and (2) court filings made in the

course of the discovery process and with respect to motions *in limine*." *Brown*, 929 F.3d at 46-

47. As to the summary judgment materials, the Second Circuit went so far as to determine *itself*,

over dissent, the specific summary judgment materials that were unsealed and what redactions

would be made. *Id.* at 48 ("we order that the summary judgment documents (with minimal

redactions) be unsealed upon issuance of our mandate."). The Second Circuit stated:

> Upon issuance of our mandate, a minimally redacted version of the
> summary judgment record will be made accessible on the Court of
> Appeals docket. We have implemented minimal redactions to
> protect personally identifying information such as personal phone
> numbers, contact lists, birth dates, and social security numbers. We
> have also redacted the names of alleged minor victims of sexual
> abuse from deposition testimony and police reports, as well as
> deposition responses concerning intimate matters where the

> questions were likely only permitted—and the responses only
> compelled—because of a strong expectation of continued
> confidentiality. See Fed. R. Civ. P. 5.2.

*Brown*, 929 F.3d at 49 n.22 (emphasis added). Those materials are publicly available on the

Second Circuit's Docket, entries 275-287.  In light of that mandate, this Court cannot change or

modify the scope of the summary judgment materials that may be unsealed for anyone under the

First Amendment and common law standards for public access articulated by the court.  *Id*. at 50.

It certainly cannot do so for the Government, which has a heightened *Martindell* extraordinary

circumstance burden for modification of the Protective Order.  This limitation on this Court's

authority is particularly important because the redactions were made because the Second Circuit

conclusively found there to be a "strong expectation of continued confidentiality" in such

materials.  *Id.* at 49 n.22; *Martindell*, 594 F.2d at 296–97 ("In the present case the deponents

testified in reliance upon the Rule 26(c) protective order, absent which they may have refused to

testify. . . . (T)he witnesses were entitled to rely upon the terms of a concededly valid protective

order."); *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) ("It is presumptively

unfair for courts to modify protective orders which assure confidentiality and upon which the

parties have reasonably relied.").

     The Government does not specifically request modifications to the Protective Order for

other sealed judicial documents – *i.e.,* materials submitted in connection with, and relevant to,

discovery motions, motions *in limine*, and other non-dipositive motions.  Those, too, are subject

to the mandate rule. This Court is in the process of determining, on an individualized basis, the

scope of public access to and unsealing of those materials – a process  mandated by the Second

Circuit. (Doc. # 1044).  The Government will have whatever access to materials this Court

decides to grant to the public.  Any access beyond that must meet the *Martindell* burden.  The

Government has not attempted to, and cannot, meet that burden.

### III.     THE FED. R. CIV. P. 24(A) OR (B) FACTORS ARE MOOTED, BUT CANNOT BE MET REGARDLESS

"Where the federal government seeks to modify a protective order in a private suit, the proper procedure is to seek permissive intervention under Rule 24(b)." *Daniels*, 200 F.R.D. at 207; *see Martindell*, 594 F.2d at 294 ("The proper procedure, as the Government should know, was either to subpoena the deposition transcripts for use in a pending proceeding such as a grand jury investigation or trial, in which the issue could be raised by motion to quash or modify the subpoena, *see* Rule 17(c), Fed. R. Crim. P., or to seek permissive intervention in the private action pursuant to **Rule 24(b)**, Fed. R. Civ. P., for the purpose of obtaining vacation or modification of the protective order.") (emphasis added).

The *Daniels* Court denied  the government's motion  to intervene for the limited purpose of modifying the protective order because the Government "failed to demonstrate an extraordinary circumstance or compelling need for the confidential materials in issue." *Daniels*, 200 F.R.D. at 210.  The denial did not follow specific consideration of any of the Fed. R. Civ. P., 24(b) factors.  *Id.*  The *Daniels* logic is clear:  if the Government cannot meet the *Martindell* standards for modification of the Protective Order, permissive intervention making the Government party to the suit serves no purpose and must be denied.  In other words, in government-intervention cases, the analysis of both intervention and modification of the protective order are combined under the *Martindell* analysis, or, rather, the *Martindell* standard, applied first, can then render the 24(b) factors irrelevant.

*Martindell* itself counsels this result. The Second Circuit noted that the district court had *de facto* granted the government intervention without any proper motion or analysis.  *Martindell*, 594 F.2d at 294.  Nevertheless, promoting substance over form, the Court ruled that because it was improper for the government to obtain the relief of modifying the protective order without

showing a compelling need or extraordinary circumstances, it was unnecessary to remand on the issue of the propriety of intervention. *Id.* The result of requiring the procedural step of a motion to intervene, or permitting or denying intervention, would nevertheless result in denial of modification of the protective order and termination of the case as to the non-party intervenor. *Id.*; *see also Minpeco S.A. v. Conticommodity Services, Inc.*, 832 F.2d 739, 742 (2d Cir. 1987) (finding that order granting government motion to intervene, but denying motion to modify protective order in civil action that did not satisfy *Martindell* standard was immediately appealable despite government being "party" to the underlying pending case due to the grant of intervention). If the Government cannot meet the *Martindell* burden for modification of the Protective Order – its sole basis for intervention in this closed civil case – the analysis of the permissive, discretionary granting of intervention is simply superfluous.

Review of the four factors for permissive intervention explains why. When a claim for intervention is "permissive" under Rule 24(b), "(t)he court considers substantially the same factors" as it does when the claim is "of right" under Rule 24(a), which require an applicant to "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." "*R*" *Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006). Factors two and four of the permissive intervention test, both related to the Government's stated "interests," are precisely what has to be measured against *Martindell*'s compelling need or extraordinary circumstance test. Here, the Government claims a "law enforcement interest." (Doc. # 1111, p.6-7). The court in *Martindell* conceded "the public interest in obtaining all relevant evidence required for law enforcement purposes." 594 F.2d at 296. However, it found this interest less compelling in light

of the fact that "'the Government as investigator has awesome powers' which render unnecessary its exploitation of the fruits of private litigation." *Id.* (*quoting GAF Corp. v. Eastman Kodak Co.,* 415 F. Supp. 129, 132 (S.D.N.Y. 1976)).  To allow intervention under Rule 24(b) based on the Government's stated "law enforcement interest to protect in its CICO enforcement action currently pending in the Virgin Islands" would permit the intervention "interests" standards to swallow the *Martindell* rule.

The Government gives short shrift to the "timeliness" factor, citing to cases permitting intervention in closed cases years after closure.  "In exercising its discretion to determine whether an application is timely, a district court should evaluate the application's timeliness against the totality of the circumstances before the court." *Farmland Dairies v. Commissioner of New York State Department of Agriculture and Markets,* 847 F.2d 1038, 1044 (2d Cir. 1988) (internal quotation omitted).  Those circumstances include: "(1) the length of time the applicant **knew or should have known** of his interest before making the motion; (2) prejudice to existing parties resulting from the applicant's delay; (3) prejudice to the applicant if the motion is denied; and (4) the presence of unusual circumstances militating for or against a finding of timeliness." *Duttle v. Bandler & Kass*, 147 F.R.D. 69, 72 (S.D.N.Y. 1993) (emphasis supplied).

This case was filed on September 21, 2015. (Doc. # 1).  The Protective Order, a public document, was entered March 18, 2016. (Doc. # 62).  The case was closed May 25, 2017. (Doc. # 919).  Various media and other persons intervened and moved for the unsealing of judicial records, most notably Brown on March 6, 2018. (Doc. # 935).  That motion for intervention and unsealing has been decided, appealed, decided on appeal, and the USCA mandate issued August 9, 2019. (Doc. # 977).  Mr. Epstein was indicted in the Southern District of New York on July 18, 2019.  *United States District Court, Southern District of New York*, *Case No.* 19-CR-490.

The Government filed its case in the Virgin Islands on February 5, 2020.  (Doc. # 1110, Ex. A).
This case, and the Jeffery Epstein related cases, have garnered extraordinary public attention and
vast publicity.  Among the most highly publicized events was Mr. Epstein's death on August 10,
2019.  Yet, the Government did not file its *Ex Parte* Motion until September 1, 2020.

The Government's filing is over two and a half years after the intervention to seek sealed
documents in *Brown*, the summary judgment record for which the Government seeks here.  It is
over a year after Mr. Epstein's death – the single circumstance other than "efficiency" the
Government cites in support of its Motion.  These substantial delays militate against a finding of
timeliness. *See Butler, Fitzgerald Potter v. Sequa Corp.*, 250 F.3d 171, 182 (2d Cir. 2001)
(twelve-month delay was untimely); *In re Holocaust Victim Assets Litigation*, 225 F.3d 191, 198-
199 (2d Cir. 2000) (eight-month delay before motion to intervene was untimely); *United States v.
New York*, 820 F.2d 554, 557 (2d Cir. 1987) (motion to intervene denied where there was a
fifteen-month delay after applicant knew or should have known of interest); *Duttle*, 147 F.R.D. at
73 (fifteen month delay between notice of interest in litigation and filing of motion to intervene
untimely, particularly after case had settled).

In the interim, Ms. Maxwell has been arrested and was indicted on July 2, 2020, with a
superseding indictment issued July 8, 2020.  Ms. Maxwell's reliance on the Protective Order in
this case is now substantially more profound, as must be considered under *Martindell*.  The
interplay between the Protective Order in this case and the criminal prosecution of Ms. Maxwell
– which has quoted from Ms. Maxwell's sealed depositions in *this* case – together with the
prejudice to Ms. Maxwell caused by the USVI's undue delay, and the unusual circumstances of
this case, all strongly militate against a finding of timeliness.  These facts further militate against

giving any agency of the federal government sensitive discovery materials that were produced and obtained on the promise of confidentiality.

Factor 3 in the permissive intervention analysis also weighs against intervention. The disposition of the action cannot impair the Government's rights. The case has been closed for two and a half years. The Government cannot claim that the settlement of a defamation lawsuit between two private parties in any way affected its interest in law enforcement, or its ability to commence and fully prosecute the action it has against the Estate of Mr. Epstein. If this case had never occurred at all, the USVI's rights and interests in its current case against Mr. Epstein's estate would have been unchanged.

## CONCLUSION

Wherefore, for the forgoing reasons, Defendant Ghislaine Maxwell requests that The Government of the United States Virgin Islands' (the "USVI" or "Government") *Ex Parte* Motion to Intervene and for Confidential Access to Judicial Records and Discovery Documents be DENIED.

Dated: September 16, 2020

Respectfully submitted,

*/s/ Laura A. Menninger*
Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:   303.831.7364
Fax:       303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on September 16, 2020, I electronically served this *Ms. Maxwell's Objection to the Government of the United States Virgin Islands' Ex Parte Motion to Intervene and for Confidential Access to Judicial Records and Discovery Documents* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
Stan J. Pottinger
EDWARDS POTTINGER LLC
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com
StanPottinger@aol.com

Christine N. Walz
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Christine.walz@hklaw.com

William H. Narwold
Motley Rice LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
bnarwold@motleyrice.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

Imran H. Ansari
AIDALA, BERTUNA & KAMINS, P.C.
546 Fifth Avenue
6th Floor
New York, NY 10036
iansari@aidalalaw.com

Jay M. Wolman
Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
jmw@randazza.com
mjr@randazza.com

/s/ Nicole Simmons
Nicole Simmons