**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Virginia L. Giuffre,
    Plaintiff,                                      Case No.: 15-cv-07433-LAP
v.
Ghislaine Maxwell,
    Defendant.
_____/

**THE GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS'
REPLY MEMORANDUM IN SUPPORT OF EX PARTE MOTION
TO INTERVENE AND FOR CONFIDENTIAL ACCESS TO
JUDICIAL RECORDS AND DISCOVERY DOCUMENTS**

The Government of the United States Virgin Islands (the "USVI") submits this reply memorandum in support of its motion to intervene (Doc. 1110) in this action for the limited purpose of obtaining confidential access to both:  (a) all still-sealed documents related to the parties' motions for summary judgment [ECF No. 540 to 543, 586 to 586-3, 620 to 621, and 872]; and (b) all unfiled discovery deposition transcripts and exhibits thereto.

## INTRODUCTION

The USVI seeks confidential access to these materials because they are very likely both relevant and necessary to its pending Virgin Islands Criminally Influenced and Corrupt Organizations Act ("CICO") civil enforcement action against the Estate of Jeffrey E. Epstein and several Epstein-controlled entities before the Superior Court of the U.S. Virgin Islands.  *See* USVI Ex. A (CICO Action First Amended Complaint) ("FAC") (Doc. 1111-1).

Defendant Ghislaine Maxwell (Maxwell) and non-party John Doe (Doe) oppose the proposed intervention and access on the grounds that the USVI does not meet the applicable standard for modifying the Protective Order.  *See Martindell v. IT&T Corp.*, 594 F.2d 291, 296 (2d Cir. 1979) (party moving to modify protective order must show an "extraordinary circumstance or compelling need" for modifying).  They are incorrect. There are at least two circumstances connected with this litigation that give rise to the USVI's compelling need.

The first is Jeffrey Epstein's passing after he was deposed as a fact witness in this action, but before the USVI filed its action and could obtain his testimony therein.  Maxwell and Doe both argue that Epstein's deposition is of no relevance to the USVI's case because Epstein invoked the Fifth Amendment in response to every question.  *See* Maxwell Objection (Doc. 1118) at 8; Doe Objection (Doc. 1119) at 3 (citing Maxwell Objection).  Even if so, and putting aside waiver of confidentiality from this disclosure, Epstein's invocation of his Fifth Amendment

1

to refuse to testify in response to deposition questions has evidentiary value in the Virgin Islands' civil CICO litigation.  *See*, *e.g.*, *Collazos v. U.S.*, 368 F.3d 190, 204 (2d Cir. 2004) ("[A]n adverse interest may be drawn against a civil forfeiture claimant who invokes his Fifth Amendment right not to testify[.]") (*citing U.S. v. U.S. Currency in the Amount of $119,984.00*, 304 F.3d 165, 176-77 (2d Cir. 2002)); *N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*, 657 F. Supp. 2d 410, 415 (S.D.N.Y. 2009) ("Plaintiffs are entitled to an adverse inference regarding Reidy's stipulated invocation of her Fifth Amendment right against self-incrimination to 268 separate questions . . . .").  The USVI thus has a compelling need for Epstein's deposition testimony even in the form of refusals to answer questions because this may be the only available testimonial evidence from him on the subject matter in question.

The second circumstance establishing a compelling need for the USVI to gain access through modification of the Protective Order is that even the identity of the deponent witnesses is not known or otherwise knowable.  In *Martindell*, the Second Circuit emphasized the federal government's substantial investigatory powers as weighing against a finding of compelling need to modify a protective order.  *See* 594 F.2d at 296.  Maxwell and Doe both pick up on this theme.  *See* Maxwell Opp. at 4-6; Doe Opp. at 3.  In *Martindell* itself, however, the district court gave the Justice Department access to the names of witnesses who were deposed.  *See* 594 F.2d at 293.  Absent access to even that information, which the USVI proposes to obtain in a manner that preserves any victim's right to maintain anonymity as set forth below, *see infra* § D, the USVI's investigatory powers would be significantly hindered.

For each of these reasons, the USVI should be granted permissive intervention under Fed. R. Civ. P. 24(b) and should be granted confidential access to still-sealed summary judgment filings and unfiled deposition discovery through modification of the Protective Order.

2

**ARGUMENT**

**A.     The USVI Has Compelling Need for Access to Jeffrey Epstein's and Other Witnesses' Depositions.**

The USVI alleges in its CICO action that Epstein created and participated in a criminal sex trafficking enterprise in the Virgin Islands, wherein he used his vast wealth and property holdings and a deliberately opaque web of corporations and companies to transport young women and girls to his private islands, where they were held captive and subject to severe and extensive sexual abuse.  *See* USVI Ex. A (FAC) (Doc. 1111-1), ¶¶ 40-114.

Epstein himself was central to the enterprise.  He created and directed the companies whose aircraft transported the young women and girls, owned and maintained the secluded islands to which they were transported, and provided sources of funding for this activity.  *Id.*, ¶¶ 17-37.  He also was directly involved in luring these young women with false promises of modeling and other career opportunities, keeping them in captivity, and subjecting them to sexual abuse.  *Id.*, ¶¶ 49-64.

Maxwell and Doe both acknowledge that Epstein was deposed in this action, and do not dispute that the USVI has no opportunity to depose him due to his passing.  *See* Maxwell Obj. at 8 ("[I]t is true, of course, that Mr. Epstein is not available to testify in the Government's case . . . ."); Doe Obj. at 3 (acknowledging Epstein's passing).

Maxwell goes so far as to describe the substance of Epstein's statements made during his deposition.  *See* Maxwell Obj. at 8 ("While it is true, of course, that Mr. Epstein is not available to testify in the Government's case, it is also no secret that he did not testify in this case *either*. Instead, as he stated he would, he invoked his Fifth Amendment rights against self-incrimination on every question (see Doc. #222).") (emphasis in original).  This public disclosure by a party should waive any protection of the Epstein deposition transcript and exhibits.  *See, e.g.*, *U.S. v.*

3

*Gangi*, 1. F. Supp. 2d 256, 263 (S.D.N.Y. 1998) ("If a party voluntarily discloses a privileged document, it waives the privilege for that document and cannot later seek to keep the document confidential."). For this reason alone, the Court may grant access to Epstein's deposition.

Maxwell and Doe both nonetheless argue that the USVI cannot establish compelling need for the Epstein deposition because it allegedly has no evidentiary value. *See* Maxwell Obj. at 8 (because Epstein invoked his Fifth Amendment right, "the Government will be unlikely to find 'critical' information in Mr. Epstein's testimony."). This is incorrect. The Second Circuit, this Court, and other courts have held repeatedly that a party in civil litigation may be subject to an adverse inference for invoking its Fifth Amendment right not to testify in response to deposition questions. *See*, *e.g.*, *Collazos*, *supra*, 368 F.3d at 204; *N.Y. Dist. Council of Carpenters*, *supra*, 657 F. Supp. 2d at 415; *Penfield v. Venuti*, 589 F. Supp. 250, 254 (D. Conn. 1984) ("It is equally clear, however, that a refusal to answer questions upon assertion of the [Fifth Amendment] privilege is relevant evidence from which the trier of fact in a civil action may draw whatever inference is reasonable in the circumstances."); *Sound Solutions, LLC v. V.I. Water & Power Auth.*, No. ST-12-CV-88, 2014 V.I. LEXIS 74, *8 n.27 (V.I. Super. Ct. Sept. 19, 2014) ("'The Fifth Amendment does not forbid adverse inferences where the privilege is claimed by a party to a civil cause.'") (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).

Since Maxwell and Doe agree (as they must) that Epstein is unavailable to testify in the USVI's CICO action and since his allegedly repeated invocations of the Fifth Amendment privilege in his deposition in this action would constitute substantive testimony on the questions asked in civil litigation, the USVI has compelling need for and should be granted access to his deposition transcript and exhibits.

4

B.     **The USVI Has Compelling Need for Access to Other Witness Depositions.**

Maxwell and Doe both devote significant parts of their Objections to arguing that the USVI cannot possibly establish a need to modify the protective order for access to confidential information because the USVI, as a litigant and government, has other investigatory resources at its disposal. *See* Maxwell Obj. at 6 ("Here, there is no restriction on the Government's awesome powers or ability to subpoena witnesses, obtain documents, and protect its interest in enforcing the criminal laws of the Virgin Islands."); *id.* at 7 ("The Government can subpoena or depose any or all of the witnesses who *may have* testified or provided documents in this defamation matter . . . .") (emphasis added); Doe Obj. at 3 ("The government has sufficient investigatory powers that it is unnecessary for it to 'exploit[] . . . the fruits of private investigation.'") (quoting *Martindell*, 594 F.2d at 296 (alterations in Objection)). This, too, is incorrect.

Maxwell and Doe ignore a critical difference between the federal government's position in *Martindell* and the USVI's position here. In *Martindell*, the Second Circuit noted that the federal government has the "awesome powers" to "institute or continue a grand jury proceeding and, in connection therewith, subpoena witnesses to testify, regardless of whether they have already testified or furnished documentary evidence in civil litigation." 594 F.2d at 296. This was true. But it also was true that the federal government *knew who testified* in the civil action and could focus its investigation accordingly because the district court had arranged for it to receive a list of the testifying witnesses. *See id.* at 293 ("At Judge Conner's request, counsel for the defendants in the action furnished the Department of Justice . . . with a list of 14 witnesses who had been deposed in the case.").

Here, by contrast, the USVI does not know who has testified in depositions that are sealed or otherwise shrouded by confidentiality designations. This is why the highlighted

5

language above from Maxwell's Objection is critical.  She argues that the USVI may subpoena or depose any of the witnesses who *may have* testified herein, which tacitly acknowledges that the USVI does not know who these witnesses are and may have no way to identify them as potential witnesses.  Absent this knowledge, the USVI's referenced litigation and investigatory powers are far more limited than what the Second Circuit addressed in *Martindell*.

Furthermore, providing an avenue to disclose discovery related to victims would allow the USVI to avoid re-deposing witnesses whose testimony may not be relevant to Epstein's alleged crimes in the Virgin Islands, or re-taking testimony where it is sufficient.  This avoids subjecting survivors to unnecessary discovery and it therefore further protects their interests.

For this reason, too, the USVI should be granted access to the sealed summary judgment documents and unfiled deposition discovery in the manner set forth below, *see infra* § D, so that it has an opportunity to identify potential witnesses without disturbing the privacy interests of victims who wish to remain anonymous.

### C. **Maxwell's and Doe's Objections Based on Reliance Interests Are Insufficient.**

Maxwell and Doe both place great emphasis on witnesses' and the parties' reliance on the Court's Protective Order in participating in discovery.  *See* Maxwell Obj. at 8-11 ("The witnesses and parties in the instant case have relied on, and continue to rely on, the Protective Order."); Doe Obj. at 3 (describing interest in "protecting people (like the parties and numerous non-parties here) who reasonably relied on the Protective Order").  These interests may be substantial, but they are not determinative.

Maxwell emphasizes, *inter alia*, Jeffrey Epstein's purported reliance on the protective order in appearing for his deposition, which he did only after the Court ordered him to do so (Doc. 252).  *See* Maxwell Obj. at 10 ("In denying the Motion to Quash, this Court *forced* Mr.

6

Epstein to rely on the continuing confidentiality promised by the Protective Order in this case to ensure that the deposition, or video thereof, would not be used in any other matter . . . .") (emphasis in original).  This mischaracterizes both Epstein's motion and the Protective Order itself to create a greater reliance interest than actually existed.

Epstein moved to quash the subpoena for his deposition in full recognition that the Protective Order did not provide absolute protection against disclosure for use in any other matter.  *See* Epstein Memo. of Law in Support of Motion to Quash (Doc. 222) at 2 ("That risk [of embarrassment from videography] exists even where a protective order has been entered, as in this case (Dkt. 62), and even where designations are made under the protective order, because the order does not prohibit public disclosure in all circumstances."); *id.* at 9 ("Although the Court's protective order lessens the risk of misuse and public disclosure, the order does not eliminate the risk.  The order itself limits the scope of confidential information (Dkt. 62, ¶ 3), allows parties to object to confidentiality designations (*id.* ¶ 11), and does not categorically bar public disclosure (*id.* ¶ 14).").  Since Epstein objected based on concerns about public disclosure (not case-specific access), recognized that the Protective Order was not absolute, and appeared for his deposition only under a Court order, he did not have any heightened or particularized reliance interest in the Protective Order never being modified.

The Court also should reject Maxwell's separate argument that her recent criminal indictment necessitates that "*all* discovery material must remain subject to the Protective Order." Maxwell Obj. at 10 (emphasis added).  Maxwell contends that her "reliance on the Protective Order as a basis for not asserting her Fifth Amendment privilege against and participating in civil discovery is reason enough to deny the present motion." *Id.* at 9.  It is not.  The Fifth Amendment privilege applies to a party or witness's own testimony and certain instances of

7

document production. *See*, *e.g.*, *U.S. v. Doe*, 741 F.3d 339, 343 (2d Cir. 2013) ("The Fifth Amendment privilege might protect an individual from being required to produce documents, even if the documents' contents are not protected by the privilege, when the witness's simple act of producing the documents could be used against the witness – for example, in those cases when the simple fact that the witness possessed the documents would be incriminating."). Maxwell cannot assert a Fifth Amendment-based reliance interest based upon *other persons'* testimony or document production. And Maxwell points the Court to nothing in her own document production that would fall within the scope of the Fifth Amendment privilege. Absent such a showing, her argument thus likewise presents no basis for finding a heightened or particularized reliance interest in the Protective Order never being modified.

In considering the parties' and other witnesses' reliance interests, it also bears re-emphasis that the Protective Order in this case is a blanket order, not one targeted to specific discovery items. *See Nielsen C. (U.S.), LLC v. Success Systems, Inc.*, 112 F. Supp. 3d 83, 120 (S.D.N.Y. 2015) ("A broad protective order is less likely to elicit reliance 'because it is more difficult to show a party reasonably relied on a blanket order in producing documents or submitting to a deposition.'") (quoting *In re EPDM Antitrust Litig.*, 255 F.R.D. 308, 319 (D. Conn. 2009)). In this respect, the asserted reliance interests here are different from and lesser than those addressed by this Court in *Daniels v. City of New York*, 200 F.R.D. 205 (S.D.N.Y. 2001), a case on which Maxwell places great emphasis. *See* Maxwell Obj. at 4-5. In *Daniels*, the Court found good cause for maintaining confidentiality of the City's documents under a "carefully crafted" protective order. *See* 200 F.R.D. at 210 ("The protective order at issue has been carefully crafted to protect only limited materials upon a showing of good cause or agreement by the parties. *No party can unilaterally designate confidential materials.*")

(emphasis added).  The Protective Order here is broader, permitting unilateral designation by any party or witness upon provision of notice.  *See* Protective Order (Doc. 62), ¶¶ 7-8 (documents); ¶ 9 (depositions).  Maxwell, Doe, and other witnesses thus have lesser reliance interests in continued denial of access than do parties and witnesses in cases with more targeted orders.

For each of these reasons, the Court should hold that the reliance interests invoked by Maxwell and Doe do not support denial of the USVI's motion for confidential access.

### D. The USVI's Need for Access is More Compelling and More Aligned with Victims than Were the Interests Asserted in the Dershowitz Motions.

Maxwell and Doe also emphasize the Court's rulings addressing non-party Alan Dershowitz's motions for access to confidential materials (Doc's 1071, 1113).  *See* Maxwell Obj. at 11-12; Doe Obj. at 3-4.  These rulings should *support* the USVI's motion for two reasons.

First, the Court granted Dershowitz's motion for access in part, ordering Plaintiff to produce to him "all sealed materials and discovery that mentions Mr. Dershowitz, excluding material produced by or material (or portions of material) discussing a specific nonparty Doe whose privacy interests are the subject of a separate sealed order to be provided to Ms. Giuffre."  Doc. 1113 (Sept. 9, 2020 Order) at 7.  This order, tailored to the scope of the claim in the separate action against Dershowitz, supports granting the USVI access to sealed and unfiled confidential material at least to the extent they relate to activity in the Virgin Islands of Jeffrey Epstein or any other CICO action Defendant—i.e., the Epstein Estate, its Co-Executors, and various Epstein-related entities.

Second, the Court's recognition of "the gravity of the privacy interests of nonparties— particularly nonparties who are alleged victims of Jeffrey Epstein's sexual abuse[,]" *id.* at 5, is well taken by the USVI, which seeks access subject to the Protective Order's requirements and in a manner that respects the privacy interests of victims who wish to remain anonymous.  In this

9

respect, the USVI is differently situated as a party *prosecuting* civil claims against the Epstein Estate and Epstein-related entities than is Dershowitz as a party defending against claims by an alleged Epstein victim.  The Court has recognized the latter posture as potentially posing a heightened threat to alleged victims' privacy.  *See* Doc. 1071 (July 1, 2020 Memorandum and Order) at 10-11 n.6 ("Bubbling underneath the debate about modification of the Maxwell Protective Order is a more practical concern: the temptation that the Maxwell materials might inspire for a litigant in Mr. Dershowitz's position. . . . [T]he fact that he is defending his reputation might incent him, naturally, to be more cavalier with the sealed materials where they are helpful to him.").  The USVI does not have this kind of personal interest that is adverse to victims' interests, as is demonstrated by Plaintiff's support for its investigation.  *See* Doc. 1117 (Plaintiff's Sept. 16, 2020 letter).

The USVI thus requests that the Court grant it access to all sealed summary judgment documents and unfiled deposition discovery as follows.  Any document or discovery that identifies an otherwise anonymous victim be produced with the victim's identity redacted, but with the victim's lawyer separately identified.  The USVI's lawyer then may communicate with the victim's lawyer to determine whether or to what extent she wishes to maintain anonymity in connection with the USVI's case against the Epstein Estate.  In this manner, and for the reasons set forth, the USVI should be granted intervention and confidential access.

## CONCLUSION

For all of the reasons set forth herein and in its moving papers, the USVI respectfully moves this Court to GRANT the Ex Parte Motion to Intervene and for Confidential Access to Judicial Records and Discovery Documents.

Dated:  September 24, 2020

Respectfully submitted,

/s/ *Michael J. Quirk*
Michael J. Quirk, Esq.
Motley Rice LLC
40 West Evergreen Avenue, Suite 104
Philadelphia, PA 19118-3324
Tel:     610-579-9932
Email: mquirk@motleyrice.com

William H. Narwold, Esq.
Motley Rice LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Tel:     860-882-1676
Fax:    860-882-1682
Email: bnarwold@motleyrice.com

*Counsel of Record for Proposed Intervenor
Government of the United States Virgin Islands*

## **CERTIFICATE OF SERVICE**

I certify that on September 24, 2020, I electronically served this Reply Memorandum in Support of Motion to Intervene and for Confidential Access to Judicial Records and Discovery Documents via ECF upon counsel of record for all parties.

/s/ *Michael J. Quirk*
Michael J. Quirk