United States District Court
Southern District of New York

Virginia L. Giuffre,

      Plaintiff,           Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

      Defendant.

_____/

## PLAINTIFF'S MOTION TO COMPEL DEFENDANT
## TO ANSWER DEPOSITION QUESTIONS FILED UNDER SEAL[1]

Plaintiff Virginia Giuffre, by and through her undersigned counsel, hereby files this Motion to Compel Defendant to Answer Deposition Questions. During her recent deposition, Defendant refused to answer numerous questions about allegedly "adult" sexual activity related to Jeffrey Epstein. Because this activity is highly relevant to this case, Defendant should be ordered to answer questions about it.

As the Court is aware, this defamation case involves Ms. Giuffre's assertions that she and other females were recruited by Defendant to be sexually abused by Jeffrey Epstein under the guise of being "massage therapists." *See* Complaint, (DE 1), at ¶ 27 (Giuffre "described Maxwell's role as one of the main women who Epstein used to procure under-aged girls for sexual activities and a primary co-conspirator and participant in his sexual abuse and sex trafficking scheme"). In response to these assertions, Defendant has made the sweeping claim that Ms. Giuffre's assertions are "entirely false" and "entirely untrue." Complaint, DE 1, at ¶ 31.

---

[1] Defendant has labelled her entire deposition transcript as Confidential at this time. Counsel for the parties conferred at the deposition regarding answering questions.

1

Yet during her deposition, Defendant refused to answer any questions that she construed as having something to do with "consensual adult sex." Defense counsel supported that position that "frankly, [that's] none of your business and I instruct the witness not to answer." *See* Declaration of Sigrid S. McCawley ("McCawley Decl.") at Exhibit 1, Tr. of Maxwell Depo. (Apr. 22, 2016) at 21. The result was that at a number of points throughout her deposition, Defendant refused to answer questions about subjects integral to this lawsuit, including questions about what the alleged "massage therapists" were doing at Jeffrey Epstein's house and the sexual nature of those massages.

For example, Defendant refused to answer questions about whether she had given Jeffrey Epstein a massage:

> Q. Have you ever given Jeffrey Epstein a massage?
>
> MR. PAGLIUCA: Object to the form, foundation. And I'm going to instruct you not to answer that question. I don't have any problem with you asking questions about what the subject matter of this lawsuit is, which would be, as you've termed it, sexual trafficking of Ms. Roberts.
>
> To the extent you are asking for information relating to any consensual adult interaction between my client and Mr. Epstein, *I'm going to instruct her not to answer* because it's not part of this litigation and it is her private confidential information, not subject to this deposition.
>
> MS. McCAWLEY: You can instruct her not to answer. That is your right. But I will bring her back for another deposition because it is part of the subject matter of this litigation so she should be answering these questions. This is civil litigation, deposition and she should be responsible for answering these questions.
>
> MR. PAGLIUCA: I disagree and you understand the bounds that I put on it.
>
> MS. McCAWLEY: No, I don't. I will continue to ask my questions and you can continue to make your objections.
>
> Q. Did you ever participate from the time period of 1992 to 2009, did you ever participate in a massage with Jeffrey Epstein and another female?
>
> MR. PAGLIUCA: Objection. Do not answer that question. Again, to the extent you are asking for some sort of illegal activity as you've construed in

> connection with this case I don't have any problem with you asking that question. To the extent these questions involve consensual acts between adults, frankly, they're none of your business and *I will instruct the witness not to answer.*
>
> MS. McCAWLEY: This case involves sexual trafficking, sexual abuse, questions about her having interactions with other females is relevant to this case. She needs to answer these questions.
>
> MR. PAGLIUCA: I'm instructing her not to answer.
>
> MS. McCAWLEY: Then we will be back here again.

*See* McCawley Decl. at Exhibit 2, Tr. of Maxwell Depo. (Apr. 22, 2016) at 19-22 (emphasis added).

Defendant's participation in massages with Epstein is a central part of this case. Ms. Giuffre has explained that during her first sexual encounter with Jeffrey Epstein, it was Defendant who provided instruction on how to do it and how to turn the massage into a sexual event. Obviously, proof that Defendant had previously massaged Epstein – include massages with sexual component – would provide important corroboration for Ms. Giuffre's testimony at trial. And proof that Defendant was involved in massages will further help prove that statements to the press that Virginia's allegations were "obvious lies" was itself an obvious lie.

As another example, Defendant refused to answer questions about her knowledge that ▓▓▓▓ was hired to work for Epstein and provided massages. In the police report, ▓▓▓▓ admitted that Maxwell recruited her to work for Epstein. *See* McCawley Decl. at ▓▓▓▓▓▓▓▓▓▓▓▓

Yet during Defendant's deposition, she refused to answer questions regarding ▓▓▓▓

> Q. Do you know what tasks ▓▓▓▓ was hired to performance?
> A. She was tasked to answer telephones.
> Q. Did you ever ask her to rub Jeffrey's feet? . . .
> A. I believe that I have read that, but I don't have any memory of it.

3

Q. Did you ever tell [redacted] that she would get extra money if she provided Jeffrey massages?

A. I was always happy to give career advice to people and I think that becoming somebody in the healthcare profession, either exercise instructor or nutritionist or professional massage therapist is an excellent job opportunity. Hourly wages are around 7, 8, $9 and as a professional healthcare provider you can earn somewhere between as we have established 100 to $200 and to be able to travel and have a job that pays that is a wonderful job opportunity. So in the context of advising people for opportunities for work, it is possible that I would have said that she should explore that as an option.

Q. Did you tell her she would get extra money if she massaged Jeffrey?

A. I'm just saying, I cannot recall the exact conversation. I give career advice and I have done that.

Q. Did you ever have [redacted] massage you?

A. I did.

Q. How many times?

A. I don't recall how many times.

Q. Was there sex involved?

A. No. . . .

Q. Did you ever have sexual contact with [redacted]

MR. PAGLIUCA: Object to the form and foundation. You need to give me an opportunity to get in between the questions.
*Anything that involves consensual sex on your part, I'm instructing you not to answer.*

Q. Did you ever have sexual contact with [redacted]

A. [MR. PAGLIUCA?] Again, she is an adult --

Q. I'm asking you, did you ever have sexual contact with [redacted]?

A. I've just been instructed not to answer.

Q. On what basis?

A. You have to ask my lawyer.

*See* McCawley Decl. at Exhibit 4, Tr. of Maxwell Depo. (Apr. 22, 2016) at 60-62 (emphasis added).

Here again, this information is critical to the case. Among other things, these questions are designed to show a *modus operani* ("M.O") for Epstein and Maxwell – specifically, how they recruited for a non-sexual massage than converted the massage into sexual activities.

One last illustration comes from Defendant's refusal to answer about her knowledge of Epstein's sexual interests during massages:

> Q. Does Jeffrey like to have his nipples pinched during sexual encounters?
>
> MR. PAGLIUCA: Objection to form and foundation.
>
> A. I'm not referring to any advice on my counsel. I'm not talking about any adult sexual things when I was with him.
>
> Q. When Jeffrey would have a massage, would he request that the masseuse pinch his nipples while he was having a massage?
>
> A. I'm not talking about anything with consensual adult situation.

*See* McCawley Decl. at Exhibit 5, Tr. of Maxwell Depo. (Apr. 22, 2016) at 82.

While Epstein himself might also provide answers to these questions, it appears likely that he will assert his Fifth Amendment privilege regarding his sexual activities. Accordingly, Ms. Giuffre must pursue questioning of Maxwell to obtain information on this subject. Here again, information about Epstein's sexual idiosyncrasies will provide important corroboration to Ms. Giuffre's testimony that she had sexual interactions of an identical nature with Epstein.

These refusals are not an isolated instance. Instead, similar refusals to answer questions occurred repeatedly throughout the deposition. *See, e.g.*, McCawley Decl. at Composite Exhibit 6. 52-55; 64-65; 82; 92-93; 137-38; 307-09.

The Court should compel Defendant to answer all these questions. In addition to the specific points made above, the "big picture" here reveals how vital such discovery is. At the core of Ms. Giuffre's allegations is the allegation that Defendant lured her into a sexual situation with the offer of a job making money as a massage therapist; that Epstein always habitually tried

5

to turn massages into sex (that was his modus operandi and plan all along); and that Maxwell recruited other females for an ostensibly proper position, such as therapeutic masseuse, with knowledge that the intent was for that person would be pressured to provide sexual gratification to Epstein. As a result, Epstein's use of massages for sexual purposes is a central part of this case.

And Defendant's role in those massages – and knowledge of the purposes of those massages – is a critical piece of evidence showing her state of mind when she attacked Ms. Giuffre's assertions as "entirely untrue." Ms. Giuffre intends to prove at trial that Defendant knew full well the sexual purpose for which she was recruiting females – including underage females like Ms. Giuffre. Ms. Giuffre is entitled to explore Defendant's knowledge of the sexual activities that took place under the guise of "massages." Otherwise Defendant will be able to portray to the jury an inaccurate picture of that what was happening at Epstein's house what nothing more than run-of-the-mill massage therapy. *See, e.g.*, McCawley Decl. at Exhibit 7, Tr. of Maxwell Depo. (Apr. 22, 2016) at 51 ("Q: Did [the pay for massage therapists] vary on what sexual acts they performed? . . . A: No, it varied depending on how much time, some massage therapists charge more and some charge less.").

Defendant's refusal to answer questions about alleged "adult" consensual sex also blocks Ms. Giuffre from seeking legitimate discovery in this case. By refusing to answer questions about her and Epstein's sexual activities with alleged "adults," Defendant is essentially given the ability to refuse to answer any sexual question she does not wish to answer. Defendant simply has to deem the question as involving "consensual adult sex" and no need be given. The result is to leave Ms. Giuffre with no way of exploring the identity of these alleged adults, the ages of these alleged adults, and indeed whether they were adults at all. This allows Defendant to claim

that she is unaware of any sexual activity involving underage females, because (she claims) the only sexual activity she was aware involved adults.

The Court should compel Ms. Maxwell to answer all questions about her knowledge relating to sexual activities with Epstein and other females while at Epstein's various homes. *See* Fed. R. Crim. P. 37(a)(3)(B)(i); *see, e.g., Kelly v. A1 Tech.*, No. 09 CIV. 962 LAK MHD, 2010 WL 1541585, at *20 (S.D.N.Y. Apr. 12, 2010) ("Under the Federal Rules, when a party refuses to answer a question during a deposition, the questioning party may subsequently move to compel disclosure of the testimony that it sought. The court must determine the propriety of the deponent's objection to answering the questions, and can order the deponent to provide improperly withheld answers during a continued deposition" (internal citations omitted)). Of course, the party objecting to discovery must carry the burden of proving the validity of its objections, particularly in light of "the broad and liberal construction afforded the federal discovery rules . . . ." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014). For purposes of a deposition, the information sought "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 561 (S.D.N.Y. 2013) (*citing* Fed.R.Civ.P. 26(b)(1)).

Defendant cannot carry her burden of showing that the questions asked are not reasonably calculated to lead to the discovery of admissible evidence. This is a case in which sexual activities lie at the heart of the issues in dispute. As a result, it is hardly surprising to find that discovery pertains to alleged "adult" sexual activities – and questions about such subjects are entirely proper. *See, e.g., Condit v. Dunne*, 225 F.R.D. 100, 113 (S.D.N.Y. 2004) (in defamation case, "Plaintiff is hereby ordered to answer questions regarding his sexual relationships in so far

as they are relevant to a defense of substantial truth, mitigation of damages, or impeachment of plaintiff."); *Weber v. Multimedia Entm't, Inc.*, No. 97 CIV. 0682 PKL THK, 1997 WL 729039, at *3 (S.D.N.Y. Nov. 24, 1997) ("While discovery is not unlimited and may not unnecessarily intrude into private matters, in the instant case inquiry into private matters is clearly relevant to the subject matter of the suit. Accordingly, plaintiff Misty Weber shall respond to defendants' interrogatories concerning her sexual partners . . . .").

Generally speaking, instructions from attorneys to their clients not to answer questions at a deposition should be "limited to [issues regarding] privilege." *Morales v. Zondo, Inc.*, 204 F.R.D. 50, 54 (S.D.N.Y. 2001). In this case, defense counsel ranged far beyond the normal parameters of objections and sought to decide for himself what issues were relevant. That was improper and the Court should order a resumption of the Defendant's deposition so that she can answer questions about her knowledge of sexual activity relating to Jeffrey Epstein.

## CONCLUSION

Defendant should be ordered to sit for a follow-up deposition and directed to answer questions regarding her knowledge of alleged "adult" sexual activity.

Dated: May 5, 2016

                                          Respectfully Submitted,

                                          BOIES, SCHILLER & FLEXNER LLP

                                    By: _____
                                          Sigrid McCawley (Pro Hac Vice)
                                          Meredith Schultz (Pro Hac Vice)
                                          Boies Schiller & Flexner LLP
                                          401 E. Las Olas Blvd., Suite 1200
                                          Ft. Lauderdale, FL 33301
                                          (954) 356-0011

                                          David Boies
                                          Boies Schiller & Flexner LLP

333 Main Street
Armonk, NY 10504

Bradley J. Edwards (Pro Hac Vice)
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820

Paul G. Cassell (Pro Hac Vice)
S.J. Quinney College of Law
University of Utah
383 University St.
Salt Lake City, UT 84112
(801) 585-5202[2]

---

[2] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 5th day of May, 2016, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on the individuals identified below via transmission of Notices of Electronic Filing generated by CM/ECF.

    Laura A. Menninger, Esq.
    Jeffrey Pagliuca, Esq.
    HADDON, MORGAN & FOREMAN, P.C.
    150 East 10th Avenue
    Denver, Colorado 80203
    Tel: (303) 831-7364
    Fax: (303) 832-2628
    Email: lmenninger@hmflaw.com
           jpagliuca@hmflaw.com

                                              /s/ Sigrid S. McCawley
                                              Sigrid S. McCawley