Case 1:15-cv-07433-RWS   Document 135-15   Filed 08/02/16   Page 1 of 41

# EXHIBIT 3
# (Filed Under Seal)

Case 1:15-cv-07433-LAP Document 1127-15 Filed 10/22/20 Page 2 of 41

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:08-cv-80736-KAM

JANE DOE #1 and JANE DOE #2,

      Petitioners,

vs.

UNITED STATES OF AMERICA,

      Respondent.

_____/

## PLAINTIFFS RESPONSE TO MOTION FOR
## LIMITED INTERVENTION BY ALAN M. DERSHOWITZ

COME NOW petitioners Jane Doe No. 1 and Jane Doe 2, as well as movants Jane Doe No. 3 and Jane Doe No. 4 ("the victims"[1]), to respond in opposition to Mr. Dershowitz's motion for limited intervention (DE 282). Dershowitz moves to intervene to strike a proffer made by Jane Doe No. 3 of facts that support her pending motion to join this action. The Court should deny the motion. Dershowitz has not established any direct interest in this Crime Victims' Rights Act (CVRA) action that would entitle him to intervene as of right under Fed. R. Civ. P. 24(a). Nor has he met Rule 24(b)'s standards for discretionary intervention for four reasons: First, Dershowitz has another forum in which to litigate and defend his reputational interests – a pending defamation action regarding this very case; second, Dershowitz (and other persons Jane Doe No. 3 specifically alleged abused her) have not availed themselves of other opportunities to defend their reputational interests; third, Dershowitz lacks any basis to strike allegations that are directly relevant to pending issues in this case; and fourth and finally, Jane Doe No. 3 attests in a

---

[1] As promised in their motion to join (DE 280), Jane Doe No. 3 and Jane Doe No. 4 do not seek to expand the number of pleadings filed in this case. If allowed to join this action, they would simply support the pleadings already being filed by Jane Doe No. 1 and Jane Doe No. 2 – including this opposition.

sworn affidavit (attached as Exhibit 1) that all her allegations are true – an affidavit consistent with compelling corroborating evidence.

## BACKGROUND AND COURSE OF PROCEEDINGS

Because this case has been proceeding for more than six-and-a-half years, it is useful to summarize some of the events pertinent to Dershowitz's intervention motion and Jane Doe No. 3's related and pending motion for joinder. As the Court is aware, on July 7, 2008, a young woman identified as Jane Doe No. 1 filed an emergency petition to enforce her rights under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, alleging that the Government had failed to provide her rights with regard to a plea arrangement it was pursuing with Jeffrey Epstein. The Court rapidly held a hearing. During that hearing, victim's counsel (having previously made a proffer of the relevant circumstances to Government counsel) orally moved to have Jane Doe No. 2 added into the case as another "victim" under the CVRA. Government counsel had no objection to adding her to the case, apparently believing that, in light of the sexual abuse perpetrated against her, she met the "victim" definition in the statute. DE 15 (Tr. July 11, 2008) at 14.

The Court then instructed the parties to attempt to reach a stipulated set of facts. Over the next several years, the Government took conflicting positions on whether it would stipulate to facts provided by Jane Doe No. 1 and Jane Do. 2, ultimately refusing to stipulate to any facts. *See generally* DE 225-1 at 2-4. Unable to obtain stipulations by the Government, in 2011 the victims filed a summary judgment motion alleging 53 proposed undisputed facts (DE 48), along with a motion to have the Court accept those facts because of the Government's failure to contest them (DE 49). On September 26, 2011, the Court allowed the case to move forward. DE 99. The Court, however, declined to accept victims' argument that it should simply accept their facts

2

because of the Government's failure to contest their facts, directing instead that discovery should proceed. *Id.* at 11.

In light of the Court's direction, on October 11, 2011, the victims filed discovery requests with the Government, including requests specifically seeking information about Dershowitz, Prince Andrew, and others. Further efforts from the Government to avoid any discovery followed (*see generally* DE 225-1 at 4-5),[2] ultimately leading to a further Court ruling in June 2013 that the Government should produce documents. DE 189. The Government then produced about 1,500 pages of irrelevant materials to the victims (DE 225-1 at 5), while simultaneously submitting 14,825 pages of relevant materials under seal to the Court. The Government claimed that these pages were "privileged" for various reasons, attaching an abbreviated privilege log. Jane Doe No. 1 and Jane No. 2 objected to those claims of privilege, *see generally* DE 225 and DE 265, and also to the Government's failure to specify in its privilege log the names of all the persons involved in the materials (DE 265 at 1-2). These issues remain pending today.[3]

In the summer of 2014, undersigned counsel for Jane Doe No. 1 and Jane Doe No. 2 contacted Government counsel to request their agreement to add an additional victim to this case: a young woman Jeffrey Epstein sexual abused when she was under age. On August 20, 2014, counsel sent a letter to U.S. Attorney Wilfredo Ferrer requesting the Government's consent to a stipulated motion to simply add her into the case (as had been done earlier with Jane Doe No. 2). Counsel attached a draft proposed motion that would have blandly recounted that she was similarly situated to Jane Doe No. 1 and Jane Doe No. 2. *See* Exhibit 2. The proposed motion

---

[2] Jeffrey Epstein also attempted to block discovery of materials in this case, leading to an Eleventh Circuit ruling that the victims' discovery efforts were proper. *Doe v. Epstein*, 749 F.3d 999 (11th Cir. 2014).

[3] Remarkably, even though the Court directed the Government to begin producing discovery in June 2013, the Government has yet to finish that production some 19 months later.

did not include any of the facts surrounding her abuse, relying instead on a stipulation to secure

the Court's anticipated approval.

Three months later, having received no response from the Government, victims' counsel

sent an additional letter to Mr. Ferrer, requesting agreement to add an additional victim to the

case – a young woman identified in current pleadings as Jane Doe No. 3[4]:

> Dear Mr. Ferrer:
>
> I sent you a letter in August requesting your office's stipulation to our adding Jane Doe #[4] in this case. Unfortunately, we did not receive a response from your office. We are hopeful that your lack of a response was simple oversight.
>
> In addition to following up on the August letter, we are now requesting your Stipulation to the adding of Jane Doe #[3] as well. Her true name is [redacted]…. As we expressed in our personal meetings a couple years ago, we don't understand the tactical decision to be adversarial to victims of known sexual abuse on every point in this litigation. Now that many of those issues we discussed have been resolved in our favor, it seems to make even more sense to avoid engaging in unnecessary battles that could only serve the purpose of delaying the victims' rights to have this case resolved on its merits.
>
> As I indicated in my August letter requesting your stipulation to the adding of Jane Doe #[4], adding Jane Doe #[3] will also not delay matters, so long as we can stipulate to her being added. Without a stipulation, we foresee litigation over this point, which will produce nothing but additional delay – and further question about your Office's commitment to full protection of victims' rights under the Crime Victims Rights Act.
>
> Your office is very familiar with [redacted] and her circumstance. She was sexually trafficked and abused by Mr. Epstein (and others at the direction of Mr. Epstein) not only in this jurisdiction but throughout the United States and beyond. . . .
>
> . . . . [E]ven if you were to object and prevail on the motion to add her to the current litigation, the only consequence would be that Ms. [name redacted] would then file a separate CVRA lawsuit, something she is entitled to do because the CVRA contains no time limit. . . .We have, throughout this case, consciously avoided filing anything that would unnecessarily cast your office in a bad light, and it is again with that in mind that we request your stipulation here. We need this stipulation by December 10, 2014 to avoid delaying any other aspects of this case. We will not file any pleadings on this subject before that date.

---

[4] In the letter to Mr. Ferrer, the woman identified in current court pleadings as Jane No. 3 is referred to as "Jane Doe No. 4." For consistency with the court pleadings, the designations in correspondence have been modified here – as indicated by brackets – to track the current designation in the pleadings.

*See* Exhibit 3. Weeks went by and the Government – once again -- did not respond to counsel's request for a stipulation. This prompted a further email from counsel to the AUSA's handling this matter to inquire about the status of request:

> When we spoke a few months ago, I told you that we represented [Jane Doe No. 3] and were considering adding her to this suit. At the time of our call we asked if you would agree to our adding her, and I understood that you would have to check with others. Consequently, I sent a couple of letters to Mr. Ferrer that I have attached to this email. I was hoping for a response letting me know that the Office would not oppose the amendments adding Doe 3 and 4… . I realize our 11/19 letter asked for a response by the 10th. However, I was hoping you could give me some indication whether we will get an answer before the 10th (and perhaps what that answer will be), because if there will not be an agreement to adding these Plaintiffs then I want to get the Motion prepared.

*See* Exhibit 4; *see also* Exhibit 5 (short response regarding trying to get an answer).

On December 10, 2014, despite having had four months to provide a position, the Government responded by email to counsel that it was seeking more time, indicating that the Government understood that victims' counsel might need to file a motion with the court on the matter immediately: "The U.S. Attorney is on travel and I do not have an answer for you on whether the government will agree to the addition of two new petitioners. I appreciate you not filing your motion until December [15], 2014. If you need to file the motion, we understand. Thanks." *See* Exhibit 6.

Rather than file a motion immediately, victims' counsel waited and continued to press the Government for a stipulation. *See* Exhibits 7**,** 8, and 9. Finally, on December 23, 2014 – more than four months after the initial request for a stipulated joinder into the case – the Government tersely indicated its objection, without indicating any reason: "Our position is that we oppose adding new petitioners at this stage of the litigation." *See* Exhibit 10.

Because the Government now contested the joinder motion, undersigned counsel prepared a more detailed pleading explaining the justification for granting the motion. One week after receiving the Government's objection, on December 30, 2014, Jane Doe No. 3 and Jane Doe No. 4 filed a motion (and later a corrected motion) seeking to join the case. DE 279 and DE 280.[5] Uncertain as to the basis for the Government's objection, the motion briefly proffered the circumstances of Jane Doe No. 3 and Jane Doe No. 4 that would qualify them as "victims" eligible to assert rights under the CVRA. *See* 18 U.S.C. 3771(e) ("For the purposes of this chapter, the term 'crime victim' means a person directly and proximately harmed as a result of the commission of federal offense . . . ."). With regard to Jane Doe No. 3, the motion indicated that when she was a minor, Jeffrey Epstein had trafficked her to Dershowitz and Prince Andrew (among others) for sexual purposes. Jane Doe No. 3 stated that she was prepared to prove her proffer. *See* DE 280 at 3 ("If allowed to join this action, Jane Doe No. 3 would prove the following . . . . "). The motion also provided specific reasons why Jane Doe No. 3's participation was relevant to the case, including the pending discovery issues regarding Dershowitz and Prince Andrew. DE 280 at 9-10 (explaining several reasons participation of new victims was relevant to existing issues).

After the motion was filed, various news organizations published articles about it. Dershowitz also made numerous media statements about the filing, including calling Jane Doe No. 3 "a serial liar" who "has lied through her teeth about many world leaders." http://www.cnn.com/2015/01/06/us/dershowitz-sex-allegation/. Dershowitz also repeatedly

---

[5] Dershowitz argues that Jane Doe No. 3 violated Local Rule 15.1 by failing to attach a proposed amended complaint. DE 282 at 2. But Jane Doe No. 3 was simply following the same approach that Jane Doe No. 2 had taken earlier, by filing a *motion* to join rather than a proposed *amendment* to pleadings.

called undersigned legal counsel for Jane Doe No. 3 "two sleazy, unprofessional, disbarable lawyers." *Id.* On January 5, 2015, Dershowitz filed the pending motion to intervene. DE 282.

## DISCUSSION

Dershowitz's motion to intervene relies on Fed. R. Civ. P. 24(a) (mandatory intervention) and 24(b) (permissive intervention). Neither argument for intervention is well-founded.

## I. DERSHOWITZ'S ALLEGED "REPUTATIONAL" INTERESTS DO NOT SATISFY RULE 24(A)'S REQUIREMENTS FOR INTERVENTION AS OF RIGHT.

Dershowitz first claims that he meets Rule 24(a)'s requirements for mandatory intervention. Rule 24(a) requires that the Court allow a person to intervene in a case if that person "claims an interest relating to the property or transaction that is the subject of that action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect his interest, unless existing parties adequately represent that interest." Dershowitz contends he meets Rule 24(a)'s requirements because he has a "reputational" interest in the matter, specifically an interest in contesting Jane Doe No. 3's allegation that Jeffrey Epstein trafficked her to Dershowitz for sexual purposes.

Numerous courts have declined to allow a mere "reputational" interest to justify mandatory intervention. For example, *Calloway v. Westinghouse Elec. Corp.*, 115 F.R.D. 73 (M.D. Ga. 1987), denied a motion to intervene where the alleged interest was a doctor's "own reputation and academic credibility." *Id.* at 74. The court denied intervention because "a witness' interest in his reputation alone . . . does not constitute the required 'interest relating to the property or transaction which is the subject of the present action' necessary to allow intervention as a matter of right. To find otherwise would invite intervention every time a court is required to determine the credibility of a witness." *Id.* Similarly, *Flynn v. Hubbard*, 82 F.2d

1084, 1093 (1st Cir. 1986), affirmed the denial of the Church of Scientology's request for intervention in part because "the church "merely claim[ed] a generalized injury to reputation [that] identifies no legal detriment arising from a default judgment against Hubbard." *Id.* at 1093 (Coffin, J., concurring). *See also Edmondson v. State of Neb. ex. rel. Meyer*, 383 F.2d 123, (8th Cir. 1967) ("The mere fact that Edmondson's reputation is thereby injured is not enough [to support intervention]. Edmondson's representative has pointed to no legal detriment flowing from this possible finding of the trial court, and we can find none."); *Forsyth County v. U.S. Army Corps of Engineers*, No. 2:08–CV–0126–RWS, 2009 WL 1312511, at *2 (N.D. Ga. May 8, 2009) (denying intervention because an "interest in protecting its reputation . . . is not direct, substantive, or derived from a legal right").[6]

The Court has previously considered – and rejected – a similar effort to intervene on a "reputational" claim. That claim was made by Bruce Reinhart who – like Dershowitz – had previously represented Jeffrey Epstein's interests in related litigation. Reinhart moved to intervene in this case to contest the victims' allegations that Reinhart (a former prosecutor in the U.S. Attorney's Office investigating Epstein) received confidential, non-public information about the investigation. The victims specifically alleged that Reinhart had "joined Epstein's payroll shortly after important decisions were made limiting Epstein's criminal liability" and that Reinhart had gone on to improperly represent Epstein-related witnesses in various civil suits. *See* DE 99 at 12 (discussing DE 48 at 23). Reinhart filed a sworn affidavit admitting that he had represented Epstein-related clients, but claiming that he did not possess any such confidential information. He sought to intervene to challenge the victims' arguments.

---

[6] Dershowitz cites dicta in *Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 20-21 (E.D.N.Y. 1996), that a reputational interest can support intervention. But *Sackman* did not analyze the issue; rather it simply cited another case, *Penthouse Int'l, Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 373, 392 (2d Cir. 1981), which in turn contains no analysis of the issue or any such holding.

After a hearing, the Court denied Reinhart's motion, finding that his interest in litigating the validity of the victims' allegations was too attenuated to support intervention. DE 99 at 13.[7] The Court's rationale applies equally here and should lead the Court to deny Dershowitz's motion. Dershowitz claims that his situation is distinguishable in view of how "harmful" (DE 282 at 6) he believes the current allegations are. But the degree of indignation at allegations is not a sound basis for allowing intervention. As the Court previously explained, it "cannot permit anyone slighted by allegations in court pleadings to intervene and conduct mini-trials to vindicate their reputation." DE 99 at 13.

Dershowitz does have an alternative ground he could try to advance for intervention. As Jane Doe No. 3 pointed out in her motion to join the case, Dershowitz personally helped to negotiate the non-prosecution agreement (NPA) at issue in this case, which bars *his* prosecution in the Southern District of Florida as a "potential co-conspirator of Epstein." DE 280 at 4 (quoting NPA at 5). The Court has previously allowed Epstein to prospectively intervene in any proceedings that might involve invalidating the NPA. DE 246. Dershowitz can make a similar motion if he identifies himself as a potential co-conspirator involved in crimes covered by the NPA. But lacking such an allegation, his existing motion does not allege any concrete impairment of his interests supporting mandatory intervention.

## II. DERSHOWITZ HAS NOT SHOWN THAT THE COURT SHOULD ALLOW PERMISSIVE INTERVENTION UNDER RULE 24(B).

---

[7] During the hearing on Reinhart's intervention motion, the Government stood silent about the accuracy of Reinhart's affidavit. Much later, after the Court had denied the motion, the Government admitted that it possessed information contradicting Reinhart's sworn affidavit. *See* DE 225-1 at 9-10, ¶¶ 43-45 ("in answering the victims' Requests for Admissions, the Government has admitted that it possess information that Reinhart learned confidential non-public information about the Epstein case and he discussed the Epstein case with other prosecutors.").

Dershowitz also contends that the Court should exercise its discretion to allow permissive intervention in this case under Fed. R. Civ. P. 24(b). The rule grants discretion to the court to allow intervention by a person who has "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b); *accord Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (permissive intervention allowed only where "a claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties."). A district court's ruling on such intervention is reviewed only for abuse of discretion. *Stone v. First Union Corp.*, 371 F.3d 1305, 1309 (11th Cir. 2004); *see also AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561–62 (2nd Cir. 2005) ("[a] denial of permissive intervention has virtually never been reversed" because of the considerable discretion afforded to district courts).

In ruling on a motion for permissive intervention, the Court must consider all relevant factors, including "the nature and extent of the intervenor's interest." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009). Here, Dershowitz lacks a "claim or defense" in common with the CVRA action. Instead, Dershowitz intends to advance satellite arguments, including raising questions about the credibility of crime victims that the Government apparently does not intend to present.[8] Allowing his intervention would thus create a clear risk of adding undue delay to what is already a long-running case. *Cf. id.* (affirming district court decision to deny intervention that would "consume additional time and resources of

---

[8] For example, in the media Dershowitz has called Jane Doe No. 3 – an alleged victim of international sex trafficking while she was a minor – "a serial perjurer, serial liar, serial prostitute." Washington Post, Morning Mix, http://www.washingtonpost.com/news/morning-mix/wp/2015/01/06/alan-dershowitz-takes-legal-action-after-being-named-with-prince-andrew-in-sex-ring-case/ .

both the Court and the parties that have a direct stake in the outcome of the proceedings"). Moreover, several other important factors weigh against allowing intervention.

## A. DERSHOWITZ CAN LITIGATE HIS REPUTATIONAL INTERESTS IN A PENDING DEFAMATION ACTION IN BROWARD COUNTY CIRCUIT COURT.

In the opening paragraph of his court pleading, Dershowitz claims he has "no remedy" to defend his reputation. DE 81 at 1. And yet, in his statements to the media, Dershowitz has made clear that he intends to defend his reputational interests in a pending defamation action. The Court need not allow duplicative litigation on the same reputational issues.

After Jane Doe No. 3 filed her motion to intervene, Dershowitz attacked her in the media as a "serial perjurer." He also repeatedly named and attacked her attorneys – i.e., undersigned legal counsel Edwards and Cassell – branding them, among other disparaging names, "two sleazy, unprofessional, disbarable lawyers." Dershowitz repeated his attacks on numerous worldwide media outlets, saying such things as victims' counsel "are prepared to lie, cheat and steal. These are unethical lawyers" (CNN Program "The World Right Now with Hala Gorani," Jan. 5, 2015) and that counsel "willfully and deliberately made this up in order to gain a litigation advantage, [to] line their pockets with money" (The Last Word with Lawrence O'Donnell – MSNBC (Jan. 8, 2015).

Following these statements, on January 6, 2015, attorneys Edwards and Cassell, represented by Jack Scarola, Esq., filed a defamation action in Broward County Circuit Court. *See* Exhibit 11 at ¶ 17 (alleging Dershowitz has "initiated a massive public media assault on the reputation and character" of undersigned counsel, by "accusing them of intentionally lying in their filings, of having leveled knowingly false accusations against [Dershowitz], without ever conducting any investigation of the credibility of the accusations"). The attorneys also served

discovery requests on Dershowitz, as well as a notice of deposition. Dershowitz has yet to agree to a deposition date.

Faced with a defamation action against him, Dershowitz stated that he was "thrilled" by the development because it "gives me a chance to litigate the case. I can expose their corruption. I can show how fraudulent the allegations are. This makes my day." Wall St. Journal Law Blog, http://blogs.wsj.com/law/2015/01/06/jane-doe-lawyers-sue-dershowitz-for-defamation/ (Jan. 6, 2015); *see also* UMAR News, https://www.youtube.com/watch?v=KXzcxsiQv7Q (Jan. 4, 2015) ("I just need *a* legal proceeding . . . to call witnesses … to prove my case" (emphasis added)).

Given that Dershowitz has the opportunity to litigate his concerns in the other case, this Court need not – and should not – allow permissive intervention in this one. *See, e.g., Morgan v. Sears, Roebuck & Co.*, 124 F.R.D. 231 (1988) (declining intervention in one case where litigation on a similar issue was already underway elsewhere). Permissive intervention in this case would, for example, presumably lead to Dershowitz (and, in turn, undersigned legal counsel) seeking duplicative discovery to that which is already being sought in Broward County Circuit Court. One forum is enough to litigate reputational issues.

## B. DERSHOWITZ SHOULD NOT BE ALLOWED TO INTERVENE IN THIS ACTION WHEN HE HAS DECLINED TO DEFEND HIS REPUTATION IN OTHER ACTIONS.

Dershowitz also claims that he has not been given an opportunity to address his connection to Epstein's sex trafficking. DE 282-1 at 3. This is untrue. Indeed, Dershowitz has been given (at least) three separate opportunities to provide information concerning his involvement in Epstein's offenses. Because Dershowitz has not availed himself of any of those prior opportunities, the Court should deny his motion to intervene now.

2009

12

On about September 17, 2009, one of undersigned counsel (Brad Edwards) arranged to have Dershowitz served with a subpoena for deposition in connection with a civil case brought by one of the underage females who had sued Epstein (*Doe v. Epstein*, No. 9:08-cv-80893-KAM (S.D. Fla.)). At that point, Dershowitz understood that counsel for many of Epstein's victims believed that mounting evidence pointed toward his role extending beyond merely being an attorney for Epstein. That deposition ultimately did not occur, and Dershowitz made no effort to provide information about his knowledge of relevant information.

<u>2011</u>

In 2011, in the state case of *Epstein v. Edwards* (No. 502009CA040800XXXXMBAG (Palm Beach Cty. Cir. Ct.)), counsel for Edwards (Jack Scarola, Esq.) contacted Dershowitz to seek his cooperation in answering questions about his knowledge of Epstein's sex trafficking. On August 15, 2011, Dershowitz indicated that he wanted more information before would decide whether to cooperate: "If you would let me know what non-privileged information you would seek from me, I would then be able to decide *whether* to cooperate." *See* Exhibit 12 (emphasis added).

On August 23, 2011, Scarola sent a letter to Dershowitz, explaining that there was no intent to inquire about attorney-client information, but adding: "[w]e do, however, have reason to believe that you have personally observed Jeffrey Epstein in the presence of underage females, and we would like the opportunity to question you under oath about these observations." *See* Exhibit 13. Dershowitz declined to cooperate, so on September 7, 2011, Scarola again sent a letter to Dershowitz, noting that while there was "no obligation" to disclose the basis for wanting a deposition, the reason was that "[m]ultiple individuals have placed you in the presence of Jeffrey Epstein on multiple occasions and in various locations when Jeffrey Epstein was in the

company of underage females subsequently identified as victims of Mr. Epstein's criminal molestations. This information is derived from both sworn testimony and private interviews." Exhibit 14. Despite providing Dershowitz with the basis for wanting his deposition, and the assurance that questions regarding privileged information would not be asked, Dershowitz did not cooperate.

<u>2015</u>

After Jane Doe No. 3 moved to intervene in this case, Dershowitz said "what they [victims' counsel] have done is so under-handed . . . not giv[ing] me an opportunity to disprove it. That's Kafkaesque." UMAR News, https://www.youtube.com/watch?v=KXzcxsiQv7Q. Following public statements such as these, on January 3, 2015, attorney Jack Scarola immediately sent an e-mail to Dershowitz, requesting an opportunity to take his deposition:

> Dear Mr. Dershowitz:
>
> Statements attributed to you in the public media express a willingness, indeed a strong desire, to submit to questioning under oath regarding your alleged knowledge of Jeffrey Epstein's extensive abuse of underage females as well as your alleged personal participation in those activities. As I am sure you will recall, our efforts to arrange such a deposition previously were unsuccessful, so we welcome your change of heart. Perhaps a convenient time would be in connection with your scheduled appearance in Miami on January 19. I assume a subpoena will not be necessary since the deposition will be taken pursuant to your request, but please let us know promptly if that assumption is inaccurate.… Thank you for your anticipated cooperation.

Exhibit 15. As of the date of this filing, Dershowitz has completely ignored this request, while simultaneously continuing to publicly protest his inability to challenge the allegations against him in a legal proceeding.

In light of these opportunities that have been extended to Dershowitz previously to answer any questions about his knowledge of (and even participation in) Epstein's sex trafficking, his claim that he needs a forum in this Court to defend his reputation rings hollow.[9]

For the sake of completeness – and to show a sinister pattern – it is also worth noting that each of the other four individuals Jane Doe No. 3 identified by name in her motion (Jeffrey Epstein, Ghislaine Maxwell, Jean Luc Brunel, and Prince Andrew) have also all been afforded opportunities to explain themselves – and all four have declined to take them.

*Epstein*. The Court is familiar with Jeffrey Epstein's repeated invocations of the Fifth Amendment when asked questions about his sexual abuse of young girls, including Jane Doe No. 1, Jane Doe No. 2, and Jane Doe No. 3. *See generally* Exhibit 16 at 1-7.

*Maxwell*. In 2009, undersigned counsel (Brad Edwards) served Ghislaine Maxwell with a subpoena for a deposition in a civil case against Jeffrey Epstein. After extensive discussion and coordinating a convenient time and place, as well as ultimately agreeing to a confidentiality agreement prepared by Maxwell's attorney, at the eleventh hour Maxwell's attorney informed the undersigned that Maxwell's mother was very ill and that consequently Maxwell was leaving the country with no plans to return. The deposition was cancelled. Yet a short time later, Maxwell was photographed at Chelsea Clinton's wedding in Rhinebeck, New York, confirming the suspicion that she was indeed still in the country and willing to say anything to avoid her deposition.

---

[9]  The difficulty in scheduling this deposition also fits into a pattern for Dershowitz. In around 2005 to 2006, Dershowitz was Jeffrey Epstein's "primary" lawyer. When the Palm Beach Police Department tried to interview Epstein, Dershowitz pretended that Epstein was willing to answer questions. Dershowitz set up, then cancelled, Epstein interviews with the police "several times." *See B.B. v. Epstein*, No. 502008CA037319XXXX MB AB, Depo. of Police Chief Michael Reiter at 80 (Palm Beach Cty. Cir. Ct. Nov. 23, 2009).

*Brunel.* In 2009, undersigned counsel (Brad Edwards, representing Jane Doe) served Jean Luc Brunel with a subpoena for a deposition before this court in *Doe v. Epstein*, No. 9:08-cv-80119-KAM (S.D. Fla.). Brunel's attorney asked counsel for Jane Doe to postpone the scheduled deposition date. Jane Doe's counsel agreed, and then Brunel's attorney cancelled the rescheduled deposition date. Brunel's counsel represented that Brunel was outside the country and thus unavailable. But later sworn deposition testimony revealed that Brunel was actually inside the country at this time – indeed, he was hiding at Epstein's Palm Beach home. All this was brought to the Court's attention via a motion for sanctions. DE 483. This is just another example of the inner circle of Epstein's friends refusing depositions to answer questions.

*Prince Andrew.* In 2011, Jack Scarola, representing Brad Edwards in the *Epstein v. Edwards* case, faced procedural impediments to obtaining a sworn deposition from a member of the British Royal family. Accordingly, he publicly invited the voluntary testimony of Prince Andrew, explaining: "We would be very keen to speak with Prince Andrew, given his relationship with Jeffrey Epstein. . . . We have reason to believe that Prince Andrew has been in the company of Mr. Epstein while Mr. Epstein has been in the company of under-aged children." http://effiefolkerts.blogspot.com/2011/03/convicted-paedophile-jeffrey-epstein-is.html. Prince Andrew never responded.

Two weeks ago, after Jane Doe No. 3 and Jane Doe No. 4 moved to join in this action, a spokesperson for Prince Andrew denied Jane Doe No. 3's allegations, without providing any explanation of what the Prince was doing with this minor girl late at night in a private setting. Accordingly, on January 14, 2015, Jack Scarola sent Prince Andrew a certified letter requesting his voluntary cooperation in answering questions about his sexual interactions with Jane Doe No.

3. *See* Exhibit 17. The letter requested an opportunity to take a statement under oath from Prince Andrew. Federal Express has informed us that the letter has been refused by the recipient.

In light of these avoided opportunities by Dershowitz – as well as Epstein, Maxwell, Brunel, and Prince Andrew – to answer questions under oath regarding Epstein's trafficking of young girls, there is no good reason that the Court should now allow a special, discretionary opportunity to intervene to respond to the allegations.

## C. DERSHOWITZ SHOULD NOT BE ALLOWED TO INTERVENE TO STRIKE ALLEGATIONS RELEVANT TO ISSUES PENDING BEFORE THE COURT.

The Court should also deny Dershowitz's motion for intervention because it would be a pointless exercise.

Citing Rule 12(f) of the Federal Rules of Civil Procedure, Dershowitz seeks to intervene to strike "immaterial, impertinent, or scandalous matter." DE 282 at 7. Dershowitz contends that Jane Doe No. 3's allegations regarding sexual contacts with him "have nothing to do with any relevant issues in this case." *Id.* at 3. Courts generally "disfavor the motion to strike . . . ." *Moore's Federal Practice* § 12.37[1] (3d ed. 2014) (internal citation omitted). "Striking allegations from a pleading 'is a drastic remedy to be resorted to only when required for the purposes of justice,' and only when the allegations to be stricken have 'no possible relation to the controversy.'" *Larise Atlantis, Inc. v. Pac. Ins. Co.*, No. 10-61583-CIV, 2011 WL 1584359 at *2 (S.D. Fla. 2011) (*quoting Augustus v. Bd. of Pub. Instruction,* 306 F.2d 862, 868 (5th Cir.1962)). "If there is *any doubt* as to whether the allegations might be an issue in the action, courts will deny the motion." *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000) (emphasis in original). Just as with a motion to dismiss for failure to state a claim, in ruling on a motion to strike "the Court must view the pleadings in a light most favorable to the

pleading party." *Id.*  Any motion to strike by Dershowitz would be meritless, because Jane Doe No. 3's allegations are pertinent to at least eight pending issues.

### 1.  *The Pending Motion to Intervene.*

Of course, the first reason that Jane Doe No. 3 made her allegations was to support her pending motion to join this action.  As the Court has seen from the chronology recounted above, victims' counsel engaged in months of efforts to reach a stipulated motion for joinder by Jane Doe No. 3 and Jane Doe No. 4 that would not have required reciting any specific factual allegations.  The U.S. Attorney's Office refused to provide any answer to that request, until finally tersely objecting (without providing any rationale).  Once the joinder motion became contested, Jane Doe No. 3 then needed to proffer allegations supporting her entry into the case.

To join this CVRA action, Jane Doe No. 3 must first show that she is the "victim" of a federal crime, 18 U.S.C. § 3771(e) – and, further, that the crime is one that implicates persons covered by the NPA.  Jane Doe No. 3 alleged that she was sexually abused by Jeffrey Epstein.  But she also focused much of her joinder motion on the fact that she was the victim of a "sex trafficking scheme" organized by Epstein.   DE 280 at 3.   To prove she is a victim of sex trafficking in violation of 18 U.S.C. § 1591, Jane Doe must demonstrate that she was recruited, transported, or harbored while under the age of 18 and "cause[d] to engage in a commercial sex act."   Accordingly, she briefly described the trafficking scheme, including identifying several persons to whom she was trafficked (i.e., Dershowitz and Andrew).[10]  The fact that Dershowitz

---

[10] In his motion, Dershowitz alleges that Jane Doe No. 3 identified these two names solely to stir up media attention.  DE 282 at 2.  But Dershowitz does not address the obvious reasons for the identification – i.e., that he was an attorney who helped draft the NPA and that a sex act with Prince Andrew in London affected "foreign commerce" – part of a jurisdictional requirement of the statute.  *See* 18 U.S.C. § 1591(a)(1).  In addition, Jane Doe No. 3 has also alleged that she was trafficked to "many other powerful men, including politicians and powerful business executives."  Ex. 1 at ¶ 58.  The names of these persons could have been included in her pleading and would have created significantly more media attention than

(and Prince Andrew) engaged in a "sex act" with her is simply a required element of her proof that she is the victim of a sex trafficking crime.

Sexual trafficking is not the only crime that could support Jane Doe No. 3's joinder in this case. There are also various federal sex offenses, such as travel with intent to engage in illicit sexual conduct, 18 U.S.C. § 2423(b), which Jane Doe No. 3's proffer supported. And perhaps most obviously, Jane Doe No. 3 was the victim of a conspiracy under 18 U.S.C. § 371. Dershowitz, of course, was a co-conspirator against her – thereby directly implicating the NPA. In her pleading, Jane Doe No. 3 alleged only the *fact* that a sex act took place, not the *nature* of the sex act nor any "unnecessary detail." *Begay v. Public Service Co. of New Mexico*, 710 F.Supp.2d 1161 (D. N. Mex. 2010).[11]

   2. *The Pending Discovery Issues.*

Another reason Jane Doe No. 3 cited in her pleading for specifically naming Dershowitz (and Prince Andrew) is that the Court has before it a pending discovery dispute involving documents relating to these two people. *See* DE 280 at 10 (*citing* DE 225 at 7-8 (discussing DE 48 at 16-18)). As the Court is aware, on December 1, 2011, Jane Doe No. 1 and Jane Doe No. 2 propounded a Request for Admission (RFA) asking the Government to admit that it possesses "documents, correspondence or other information reflecting contacts with the Department

---

the names that she did include. If the Court would like proof of this assertion, counsel would request leave to provide an *ex parte,* sealed submission of the names of the other immediately recognizable persons who either observed or participated in the trafficking of Jane Doe No. 3.

[11] Where sexual issues are relevant to a case, they must not be stricken. *See, e.g., Zdenek v. School Bd. of Broward County,* No. 07-CV-61110, 2007 WL 4521489, at *2 (S.D. Fla. Dec. 19, 2007) ("given the Eleventh Circuit standards on what constitutes actionable sexual harassment, the allegations in question [with one exception] do not rise to the level of what is considered 'redundant, immaterial, impertinent, or scandalous'"); *Dawe v. Corr. USA,* No. CIVS071790LKKEFB, 2009 WL 2591146 at *3 (E.D. Cal. Aug. 20, 2009) ("these statements [referring to sexual contact] are made in the . . . larger context of alleging that the defendants' financial misconduct stemmed in part from an intention to cover up sexual misconduct. As such, the court agrees that the allegations are no more scandalous than those that would be asserted in any cause of action relating to sexual harassment.").

between May 2007 and September 2008 on behalf of Jeffrey Epstein by . . . (b) Andrew Albert Christian Edward (a/k/a Prince Andrew, Duke of York); (c) Harvard Law Professor Alan Dershowitz." While the Government denied that it had documents reflecting contacts by Prince Andrew, it specifically admitted possessing documents reflecting contacts by Dershowitz. Gov't Answer to RFA #6. The two victims further requested the Government admit that it possessed "information (including telephone logs and emails) reflecting contacts between Bruce E. Reinhart and persons/entities affiliated with Jeffrey Epstein (including . . . Harvard Law Professor Alan Dershowitz). The Government admitted this fact. Gov't Answers to RFA #16.

These RFA's tie into a major discovery battle that is currently before the Court. Related to the RFA's, on October 3, 2011, Jane Doe No. 1 and Jane Doe No. 2 propounded Request for Production (RFP) #8, seeking "all correspondence, documents, and other information regarding Epstein's lobbying efforts to persuade the Government to give him a more favorable plea arrangement and/or non-prosecution agreement, including efforts by . . . Andrew Albert Christian Edward (a/k/a Prince Andrew, Duke of York), [and] Harvard Law Professor Alan Dershowitz." The two victims also propounded RFP #21, requesting all documents relating to the NPA, including documents in the Government's possession from "defense attorneys representing Epstein (including . . . Alan Dershowitz)" and from "agents acting in support of Epstein (including . . . Andrew Albert Christian Edward (a/k/a Prince Andrew Duke of York))."

The Government responded to these (and other RFPs) by asserting privilege over 14,825 pages of documents that it provided to the Court. [12] But contrary to the Court's specific direction, the Government did not provide a log that "clearly identifies each document[] by author(s), addressee(s), recipient(s), date, and general subject matter . . . ." DE 190 at 2. Accordingly,

---

[12] The Government has also raised relevancy objections to producing the documents, as discussed below.

there is no way to determine which of the documents that the Government has provided to the Court are responsive to which of the victims' discovery requests – including which documents relate to Dershowitz. *See* DE 265 at 1-2. The Government then asserted a host of privileges, including qualified privileges, such as deliberative process privilege, investigative privilege, and the work product doctrine. Qualified privileges require the Court to engage in a far-ranging inquiry that balances competing interests. As the victims have recounted in their (currently-pending) objections to the Government's assertion of privilege, the Court must weigh such things as "the 'seriousness' of the litigation" (DE 265 at 9), "the importance of the information sought to the plaintiff's case" (DE 265-1 at 22), and whether there is a "compelling need" for disclosure (DE 265 at 14). Clearly Jane Doe No. 3's allegations factor into this balancing of interests about production of documents relating to Dershowitz (and others).

### 3. Motive

When the Court ultimately rules on the underlying substantive issue of whether the Government violated the victims' rights, motive will be a central issue. The Government has repeatedly asserted benign motivations for not revealing the NPA to the victims, and the victims have strongly contested those assertions. *See, e.g.,* DE 266 at 10 ("Motive is clearly in dispute in this case . . . ."). The NPA itself contains several unusual provisions that invite debate over how they came into existence – such as the "confidentiality" provision that illegally barred disclosure to the victims and the "blank check" co-conspirator immunity provision discussed immediately below. An important question is whether these strange provisions were crafted accidentally – or as part of a deliberate plan to keep the victims in the dark, as the victims are contending. *See, e.g.,* DE 48 at 11 (alleging that the Government and defense counsel decided that the NPA should be "kept from public view because of the intense public criticism that would have

resulted from allowing a politically-connected billionaire who had sexually abused more than 30 identified minor girls to escape from federal prosecution with only a county court jail sentence"). The fact that an important attorney on the defense team had strong personal reasons for resolving the case without a public trial bears directly on this question, by showing motivation to reach a secret deal. Dershowitz's need to keep his abuse secret, and his direct personal knowledge of Epstein's abuse, also goes to issues revolving around whether the defense team engaged in a "yearlong assault on the prosecution and prosecutors," as alleged by former U.S. Attorney Alexander Acosta. *See* DE 266 at 12.[13]

Issues pertaining to motive can always be pursued, particularly when a case is in an early discovery phase. *See, e.g., Gelabert v. State,* 407 So. 2d 1007, 1010 (Fla. 5th DCA 1981). And "motive is always relevant in a criminal case, even if it is not an element of the crime." *United States v. Hill*, 643 F.3d 807, 843 (11th Cir. 2011) (internal quotation omitted).

When speaking not to the Court but rather to the media, Dershowitz has clearly admitted the relevance of Jane Doe No. 3's allegations about him to issues of motive. Speaking on CNN, for example, Dershowitz stated that he was being "targeted" precisely because his involvement in Epstein's sexual trafficking would help "blow up" the plea agreement:

---

[13] In his Supplement to his Motion for Limited Intervention, Dershowitz claims that only information relevant to this case is information known by the Government before September 24, 2007 – the latest date on which, according to Dershowitz, the Government made the decision not to pursue federal criminal charges against Epstein. DE 285 at 1. Dershowitz appears to be unaware that the Government told the victims well after that date that the Government was still "investigating" the case. DE 48 at 16. In addition, what knowledge the Government had of Epstein's trafficking crimes before September 24, 2007, is very much a disputed issue. For example, the victims believe that among the 14,825 pages of discovery currently before the Court *in camera* are many documents proving the Government's had knowledge while it was negotiating the NPA that Epstein was trafficking underage girls for sex to Dershowitz and others. Indeed, it is likely that documents pertaining to the trafficking of Jane Doe No. 3 herself are found in those pages, and she would ask the Court to pay particular attention to such documents as part of its *in camera* review. This evidence provides a further reason the Government wanted to conceal the NPA from the victims – and the public: to avoid the outcry that would have arisen if it was known that prosecutors were giving such a lenient deal to an international sex trafficker.

> [The victims] want to be able to challenge the plea agreement. I was one of the lawyers who organized the plea agreement. I got the very good deal for Jeffrey Epstein. . . . And if they [i.e., victims' counsel] could find a lawyer who helped draft the agreement who also was a criminal, having sex – wow – *that could help them blow up the agreement.* So they sat down together, the three of them – these two sleazy, unprofessional, disbarrable lawyers, Paul Cassell, a former federal judge [and] current professor, and another sleazy lawyer from Florida, Brad Edwards – . . . and said who would fit into this description: A lawyer, who knows Epstein, who helped draft …? Ha, Dershowitz! So they and the woman got together and contrived and made this up.[14]

Similarly, on the Meredith Vieira Show, Dershowitz alleged that allegations against him "fit the profile" of what it could take to vacate the plea.[15] Of course, Jane Doe No. 3 (and her attorneys) are prepared to show they did not "contrive" the allegations. Dershowitz's name was not drawn from a hat. Rather, he was added to the pleading because Jane Doe No. 3 identified him as one of her abusers. And once she proves the truth of her sworn allegations, then – as Dershowitz himself colorfully puts it – the victims have additional relevant evidence that will help them to "blow up" the plea.

   4.   *The NPA's "Blank Check" Co-Conspirator Immunity Provision and the Scope of the Remedy that the Victims Might Obtain.*

   Jane Doe No. 3 explained in her motion to intervene that Dershowitz helped negotiate a NPA that contained a sweeping provision that provided immunity in the Southern District of Florida not only to Epstein, but also to '"any potential co-conspirators of Epstein." DE 280 at 4 (*quoting* NPA at 5).[16] This provision is very unusual – a proverbial "blank check" blocking federal criminal prosecution of people who are not specifically identified – raising an inference

---

[14] http://www.cnn.com/2015/01/06/us/dershowitz-sex-allegation/ (Jan. 6, 2015) (emphasis added).

[15] http://meredithvieirashow.com/videos/alan-dershowitz-defends-himself/ (Jan. 8, 2015).

[16] In his "supplemental" response, Dershowitz asserts that other defense attorneys negotiated that provision. DE 285 at 4. Jane Doe No. 3 disputes this claim and requests discovery on it, as it seems far-fetched to believe that Dershowitz did not see that NPA that his client ultimately signed.

that the defense team may have had ulterior or unidentified motives for pressing for the provision.

More broadly, knowledge of the persons who are covered by this provision is directly relevant to the scope of the remedy that the victims may be able to obtain from the Court if they prevail on the merits of their claim. The Court has already received briefing from the victims and the Government on the remedy issue – and has prospectively allowed Epstein to intervene on any issue involving rescission of the NPA. DE 246. The victims all intend to seek rescission of the co-conspirator provision as part of any relief in this case. The fact that several of Jane Doe No. 3's sexual abusers – i.e., Dershowitz, Maxwell, Brunel, and Prince Andrew – are currently covered by the provision will thus be relevant to the scope of the remedy that the victims can obtain and the persons that they can seek to have prosecuted.

5. *Interface Issues.*

The Court has previously ruled that the victims' CVRA claim "implicates a fact-sensitive equitable defense which must be considered in the factual context of the entire interface between Epstein, the relevant prosecutorial authorities and the federal offense victims . . . ." DE 189 at 12 n.6. Part of that "entire interface" is Epstein's defense team – which included Dershowitz. And Jane Doe No. 3 is one of the victims – indeed, an international sex trafficking victim. Her important factual allegations about extremely serious international trafficking crimes being swept under the rug in a dubious and secret non-prosecution agreement provide a critical piece of the "factual context" that the Court must consider.

6. *The "Crime/Fraud" Exception to the Attorney-Client Privilege and Other Privileges.*

Jane Doe No. 1 and Jane Doe No. 2 have specifically raised the argument that a crime/fraud/misconduct exception applies to the Government's assertion of attorney-client

privilege over various documents. DE 265 at 5-6. Based on Jane Doe No. 3's allegations, communications between the Epstein defense team and the Government appear to furthered a crime – i.e., Dershowitz's conspiracy with Epstein to engage in, and conceal, sex trafficking. And Government prosecutors' internal discussions may have unwittingly furthered that crime. *See In re Grand Jury Investigation*, 445 F.3d 266, 275-76 (3rd Cir. 2006) (attorney's lack of knowledge of the crime being furthered not relevant to crime-fraud exception).

    7. *Right to be "Treated with Fairness" Issues.*

    In his "supplemental" pleading, Dershowitz seems to assume that the victims are raising only a claim about their right to "confer" with prosecutors. DE 285 at 1-2. But Jane Doe No. 1 and Jane Doe No. 2 also have a much broader, over-arching claim of a violation of their right "to be treated with fairness" under 18 U.S.C. § 3771(a)(8). *See* DE 48 at 36. Jane Doe No. 3 was known to the United States Attorney's Office at the time of the Epstein investigation, as evidenced by her inclusion in the NPA's attachment identifying known victims. The fact that Jane Doe No. 3 – a victim of international sex trafficking – was kept in the dark about the plea deal will provide further evidence of a violation of the right to be treated with fairness. The scope of her abuse – and the fact that the prosecution of crimes against her in the Southern District of Florida is now blocked by an agreement negotiated by one of her abusers – also all go to violations of the fairness right.

    8. *Jane Doe No. 3 Will Be a Witness for Jane Doe No. 1 and Jane Doe No. 2 at Trial.*

    Finally, the record in this case should reflect that Jane Doe No. 1 and Jane Doe No. 2 intend to call Jane Doe No. 3 as a witness in any hearing or trial that the Court may schedule in this matter. The Government's violation of her rights is clearly evidence of a common scheme

or plan to keep crime victims in the dark, made admissible in any hearing by virtue of Fed. R. Evid. 404(b).

For each of these eight reasons, Jane Doe No. 3's allegations against Dershowitz are plainly relevant to this case and therefore his attempt to intervene to strike them is futile.[17]

### D. DESHOWITZ SHOULD NOT BE ALLOWED TO INTEVENE TO STRIKE JANE DOE NO. 3'S ALLEGATIONS BECAUSE SHE HAS SWORN TO THEIR TRUTH AND THEY ARE ALL SUPPORTED BY STRONG CORROBORATING EVIDENCE.

Dershowitz finally claims that he should be allowed to intervene because Jane Doe No. 3's allegations against him are false. In support of this position, he attaches a carefully-crafted, self-serving declaration. But a litigant's mere claim that contrary allegations are false provides no legal basis for striking them. *See Moore's Federal Practice* § 12.37[3A] (3d ed. 2014) ("Rule 12 does not provide any authority to strike pleadings on the basis of falsity" because doing so would "effectively [be] a resolution on the merits, which is not appropriate at the pleading stage."). At early stages of litigation, "[t]he court accepts all well-pleaded allegations as true" and views factual allegations "in the light most favorable to the non-moving party." *Johnson v. Nobu Associates South Beach, LP*, No. 9:10-cv-21691-KAM, 2011 WL 780028 at *2 (S.D. Fla. 2011). In any event, to rebut Dershowitz's false claims directly, Jane Doe No. 3 now provides her own sworn affidavit, attached as Exhibit 1,[18] repeating under oath the allegations that her

---

[17] A ninth reason now also exists that the allegations are relevant, given that the Government recently-raised the argument that the Jane Doe No. 3 has failed to meet a six-year statute of limitations specified in 18 U.S.C. § 2401. DE 290. Jane Doe No. 3 will contest whether that statute of limitations even applies. But Jane Doe also intends to raise an equitable estoppel argument – that the statute was tolled while she was in hiding in Australia due to the danger posed by Epstein and his powerful friends. Her factual allegations – including the specific identities of those powerful persons – are clearly relevant to demonstrating the factual underpinnings for her estoppel argument.

[18] In paragraph 52 of Exhibit 1, the name of a sexual participant and eye-witness was redacted out of an abundance of caution, because while she was not a minor at the relevant time she is believed to have

attorneys proffered in her earlier motion – i.e., that Epstein sexually trafficked Jane Doe No. 3 to numerous persons, including Dershowitz. If the Court believes it would be useful, Jane Doe No. 3 requests an evidentiary hearing to prove she is telling the truth[19] and directs the Court's attention the following substantial information supporting her sworn statement.[20] To be clear, what follows is just part of the compelling information supporting Jane Doe No. 3's allegations.

Any assessment of Jane Doe No. 3's sworn statement (and Dershowitz's protestations of innocence) must begin with two incontestable facts: First, Dershowitz is an extremely close personal friend of Epstein's. In fact, in 2005 (before the scandal of the criminal prosecution broke) Dershowitz stated "I'm on my 20th book. . . . The only person outside of my immediate family that I send drafts to is Jeffrey." *The Talented Mr. Epstein*, by Vicky Ward, in *Vanity Fair* (Jan. 2005).[21] Dershowitz has also been quoted as saying that, even if Epstein went bankrupt, "I would be as interested in him as a friend if we had hamburgers on the boardwalk in Coney Island and talked about his ideas." *Vanity Fair Reminds Us When Jeffrey Epstein Wasn't a Creep*, by Ray Gustini, in *The Wire* (June 21, 2011).

Second, Jeffrey Epstein brazenly abused numerous girls in his Florida mansion, his New York mansion, and several other places that Dershowitz apparently admits he visited. *See* DE 282-1 at 1-3 (Dershowitz affidavit discussing visits to Epstein). Proof of the notorious abuse

---

originally been a victim of Epstein's sexual abuse while a minor. She is now a well-known actress whose identity we have unilaterally protected in this context.

[19] Jane Doe No. 3 asks that the evidentiary hearing be held after discovery phase in this case is completed, because she believes that the Government possesses significant information that, if disclosed, would fully support her allegations. She requests the Government acknowledge this fact in any response it files.

[20] *Cf.* The Last Word with Lawrence O'Donnell – MSNBC (Jan. 8, 2015), http://www.msnbc.com/the-last-word/watch/alan-dershowitz-on-allegations--totally-false-381942851573 (Dershowitz: "Right now, they have accused me of these . . . things without a single affidavit, without a single piece of evidence.").

[21] More recently, Dershowitz has disclaimed knowing Epstein well, stating that during the relevant time he was a mere "social acquaintance" and that "I was at [Epstein's] home for parties with a large number of mostly scientists, mostly men, dinner parties, intellectual gatherings." UMAR News, https://www.youtube.com/watch?v=KXzcxsiQv7Q (Jan. 4, 2015).

starts with the NPA, under which Epstein agreed to register as a sex offender and provide compensation to approximately forty girls who he had sexually abused. Additional girls who he abused (such as movant Jane Doe No. 4) were not included in the NPA. Combined with the sworn testimony in the underlying civil cases, the NPA demonstrates persuasively that Epstein committed hundreds and hundreds of acts of sexual abuse against young girls – ostensibly "massage therapists" – during the relevant time period. *See* Exhibit 16 at 2 (collecting testimony). A small sample of the girls that Epstein sexually abused includes Jane Does Nos. 1, 2, 3, and 4, as well as S.G., A.D., V.A., N.R., J.S., V.Z., J.A., J.E., M.L., M.D., D.D, and D.N. – all girls between the ages of 13 and 17. *Id.* at 7-8.

Given the astonishing number of victims, and the detailed descriptions from many of them, Epstein's abuse of young girls clearly occurred on a "daily" basis. *See* Ex. 1 at ¶ 17. Indeed, according to his scheduled appointments, evidenced by the message pads retrieved by the Palm Beach Police Department, on some days Epstein engaged in sex with multiple girls.[22]

In 2009, one of Epstein's household employees, Juan Alessi, was deposed about the parade of young "massage therapists" entering Epstein's Palm Beach mansion. He started working for Epstein in about January 1999. He testified that Jane Doe No. 3[23] was one of the girls who came to Epstein's mansion regularly when she was in the age range of 15 to 19. Juan Alessi Depo. at 46:21- 47:4, 48:18-25, *Jane Doe No. 2 v. Epstein*, No. 9:08-cv-80119-cv-KAM (S.D. Fla. Sept. 8, 2009) (excerpts attached as Exhibit 18).

Alessi also saw many celebrities came to the Florida mansion, including not only Prince Andrew and his wife Sarah but also "a very famous lawyer that I'm sure you know, Alan

---

[22] Upon request, victims counsel could provide the Court with these materials for review. The materials contain the names of minor victims of sexual assault, so sealed transmission would be necessary.

[23] In the deposition, Jane Doe No. 3 is identified by initials.

Dershowitz." *Id.* at 70:9-25. Alessi testified that Dershowitz came to the mansion "pretty often . . . at least four or five times a year" and would stay "two [or] three days." *Id.* at 73:22-25. Jane Doe No. 3 came to the house when Dershowitz was there. *Id.* at 73:18-20. And – importantly – Dershowitz got massages while he was visiting Epstein's home. Alessi answered "yes" when asked whether Dershowitz "had massages sometimes when he was there," and explained that "[a] massage was like a treat for everybody." *Id.* at 74:1-4. The private, upstairs room where Dershowitz got his "massages" was one that contained a lot of vibrators – Maxwell had "a laundry basket . . . full of those toys" in that room. *Id.* at 76:11-15.

In 2009, one of Epstein's most trusted employees was also deposed: Alfredo Rodriguez, the butler at Epstein's Palm Beach mansion. Rodriguez testified under oath that Dershowitz was at Epstein's mansion when underage girls were there to give massages. Alfredo Rodriguez Depo. at 278:13-25, 279:9-280:2, *Jane Doe No. 2 v. Epstein* (excerpts attached as Exhibit 19).[24] Rodriguez also testified that Dershowitz stayed at the house in his role as Epstein's friend, as opposed to being his lawyer (*id.* at 279:5-8; 385:1-6) and that Dershowitz was present alone at the home of Jeffery Epstein, without his family, in the presence of young girls. *Id.* at 199:12-13, 279:9-12, 426:16-25, 427:1. In fact, Rodriguez described that when the underage girls would come over, Dershowitz would drink wine and read books on the couch. *Id.* at 426:16-25; 427:1.

As is familiar to this Court, after Rodriguez's deposition, he attempted to sell a 97-page document that he appropriated from Epstein's computer. The document contained Epstein's telephone directory – as well as a list of apparent young girls in various locations, including

---

[24] According to press reports, Rodriguez recently passed away. *See* "Houseman who cleaned pedophile Jeffrey Epstein's sex toys and feared he would make him 'disappear' takes billionaire's secrets to the grave after he died just law week," http://www.dailymail.co.uk/news/article-2897939/Houseman-cleaned-pedophile-Jeffrey-Epstein-s-sex-toys-feared-billionaire-make-disappear-takes-secrets-grave.html (Jan. 6, 2015).

Florida, New York, New Mexico, and the U.S. Virgin Islands. An FBI undercover employee (UCE) set up a meeting with Rodriguez to exchange $50,000 in "buy money" for the document. Following the exchange, the FBI arrested Rodriguez for obstruction of justice related to the attempted sale of this document (which Rodriguez called "the Holy Grail"). According to an FBI agent's ensuing report, Rodriguez "discussed in detail the information contained within the book, and identified important information to the UCE." *See United States v. Rodriguez*, No. 9:10-cr-80015-KAM, DE 3 at 5 (S.D. Fla. Dec. 9, 2009). While all of the details of the verbal information explained by Rodriguez to that agent have not been disclosed,[25] the documents have been. While there are hundreds of names, addresses, and phone numbers in the document, Rodriguez apparently circled only a select few entries. For instance, he circled each of the sections listing the girls that provided "massages" for Epstein in various locations. This includes the various confirmed under-age Florida victims. Additionally, a few other individuals in the book were circled. The logical presumption is that Rodriguez circled specific individuals, identifying them as persons who were involved in the illicit activities. One of the few people Rodriguez circled was Alan Dershowitz. *See* Exhibit 20.

Moving up from household help to the next echelon in Epstein's criminal conspiracy, three individuals the NPA lists by name as Jeffrey Epstein's co-conspirators are Sarah Kellen, Nadia Marcinkova, and Adrianna Mucinska. Extensive investigation demonstrated that Nadia Marcinkova participated in several of the sex acts with underage girls (including Jane Doe 1) and that Sarah Kellen and Adrianna Mucinska were heavily involved in procuring underage girls for Epstein to sexually abuse. *See, e.g.,* Exhibit 16 at 12, 20. Of particular relevance here, all three

---

[25] It has been disclosed that Rodriguez said that "he had witnessed nude girls whom he believed were underage at the pool area of [Epstein's] home, knew that [Epstein] was engaging in sexual contact with underage girls, and had viewed pornographic images of underage girls on computers in [Epstein's] home." DE 3 at 7.

implicated Dershowitz by invoking their Fifth Amendment right against self-incrimination [26] when asked questions about Dershowitz's connection to Epstein's abuse – including a specific question about whether Dershowitz had been involved with massages by young girls. Sarah Kellen took the Fifth when asked:

> Have you seen a gentleman by the name of Alan Dershowitz at the home of Jeffrey Epstein before?
>
> Do you know Alan Dershowitz?
>
> Are you aware of friendship between [Alan] Dershowitz and Jeffrey Epstein?
>
> When [Alan] Dershowitz comes to Palm Beach, he stays at the El Brillo mansion, doesn't he?
>
> [H]as [Alan] Dershowitz ever been there when young ladies came to give massages?
>
> *Has [Alan] Dershowitz ever been the beneficiary of those massages [given by young ladies at Epstein's mansion]?*[27]

Sarah Kellen Depo. at 211:16-18, 317:5, 436-37:25-1, 437:9-10; 437:18-19, 437-38: 25-1, *Jane Doe No. 2 v. Epstein*, No. 8:09-cv-80119-KAM (Mar. 24, 2010) (emphasis added) (excerpts attached as Exhibit 21). Nadia Marcinkova pled the Fifth when asked:

> Do you know what Jeffrey Epstein's relationship is with Alan Dershowitz?
>
> That's somebody [i.e., Dershowitz] who you know to have stayed at Jeffery Epstein's house on many occasions, correct?
>
> And also somebody who you know to have been at the house when E.W. was in Jeffrey Epstein's bedroom getting sexually abused, correct?

---

[26] Of course, in a proceeding such as this one, the victims are entitled to an inference in their favor when a witness takes the Fifth Amendment rather than answer a relevant question where that witness is associated with the other side of the case or otherwise in an adverse position to the victims. *See, e.g., LiButti v. United States*, 107 F.3d 110, 124 (2d Cir. 1997).

[27] Interestingly, defending the deposition of Sarah Kellen was Bruce Reinhart, a former prosecutor in the U.S. Attorney's Office when the Epstein NPA was negotiated. Reinhart had confidential, non-public information about the prosecution's case against Epstein. *See* note 7, *supra*.

Alan Dershowitz is also somebody that you also know to have been at the house when L.M. was being sexually abused in Jeffrey Epstein's bedroom, correct?

Generally, Alan Dershowitz is familiar with Jeffrey Epstein's habit of engaging in sexual acts with minors on a daily basis, correct?

When Alan Dershowitz was in town, Jeffrey Epstein did not break his schedule for Alan Dershowitz, meaning he continued to sexually abuse minors despite Alan Dershowitz being a guest in the house?

Nadia Marcinkova Depo. at 56:22-25; 57:1-25, 58: 1-10, *Jane Doe v. Epstein*, No. 9:08-cv-80893-KAM (April 13, 2010) (excerpts attached as Exhibit 22). And Adrianna Mucinska took the Fifth when asked:

Have you ever met Alan Dershowitz?

When Alan Dershowitz stays at Jeffrey Epstein's house, isn't it true that he has been at the house when underage minor females have been in the bedroom with Jeffrey Epstein?

Have you ever flown on the airplane [privately owned by Jeffrey Epstein] with Alan Dershowitz before?

Adrianna Mucinska Depo. at 37:6, 37:8, 81:25, *Jane Doe v. Epstein*, No. 9:08-cv-80893-KAM (Mar. 15, 2010) (excerpts attached as Exhibit 23).[28]

Finally, moving to the top of the conspiracy, Epstein himself has been questioned repeatedly, taking the Fifth when asked about Dershowitz's awareness of underage girls. For example, when Epstein took the Fifth when asked during his deposition "[h]ave you ever socialized with Alan Dershowitz in the presence of females under the age of 18?" Jeffrey Epstein Depo. at 90, *Epstein v. Edwards*, No. 502009CA040800XXXXMB (Palm. Beach Cty. Cir. Ct. Mar. 17, 2010) (excerpts attached as Exhibit 24). Indeed, going a step further, on October 8, 2009, Epstein took the Fifth when asked whether he even knew Dershowitz was a

---

[28] Mucinska also took the Fifth when asked about the involvement of Prince Andrew, Ghislaine Maxwell, and Jean Luc Brunel. *Id.* at 37:3, 85:12, 85:13.

professor at Harvard. *B.B. v. Epstein*, No. 502008CA03731XXXXMB, Epstein Depo. Tr. at 122 (Palm Beach Cty. Cir. Ct. Oct. 8, 2009).

In short, all the key conspirators in Epstein's sexual trafficking ring who could be asked about Derhowitz's involvement took the Fifth.[29] This "[s]ilence is . . . evidence of the most persuasive character." *United States ex rel. Bilokumsky v. Tod,* 263 U.S. 149, 153-54 (1923) (Brandeis, J.), *quoted in Baxter v. Palmigiano*, 425 U.S 308, 319 (1976). And that silence takes on an even more sinister cast when combined with the fact that Epstein's sexual interest in young girls would have been obvious to someone like Dershowitz, Epstein's close personal friend who was present at the very locations when abuse was taking place. *See* Ex. 1 at ¶ 17.

Additional credibility to Jane Doe No. 3's sworn statement is provided by clear evidence of a common scheme or plan, admissible under Fed. R. Evid. 404(b). As is clear from the evidence recounted above, Jane Doe No. 3's allegations against Jeffrey Epstein are overwhelmingly corroborated by numerous other girls and Epstein's private flight logs demonstrating Jane Doe No. 3's travel with him while under 18 years old. In addition, her allegations against Prince Andrew are strongly corroborated. For example, while Buckingham Palace has recently denied that Prince Andrew had sexual contact with Jane Doe No. 3, it has not attempted to explain what led to the Prince having his picture taken with his arm around a 17-year-old American girl at night in London in an intimate setting in a private residence. Nor has the Palace explained what Ghislaine Maxwell is doing there and who took that picture – while Jane Doe No. 3 has provided a sworn affidavit that the photographer was Prince Andrew's close friend (as well as sex trafficker and now-registered sex offender): Jeffrey Epstein. Jane Doe No.

---

[29] As noted earlier, two other key conspirators – Ghislaine Maxwell and Jean Luc Brunel – evaded depositions to avoid answering any questions under oath.

3 has also made strong, credible claims against Jean Luc Brunel – corroborated allegations that parallel those made by others. *See* Exhibit 16 at 22.

In contrast to this interlocking web of corroborating evidence, the Court should examine what Dershowitz says in his affidavit – and, more important, fails to say. The Court will notice that Dershowitz devotes only a single sentence in his affidavit to his activities at Epstein's Palm Beach and New York mansions. *See* DE 282-1 at 3 ("As to Mr. Epstein's homes in New York City and Palm Beach, I categorically state that I never had any sexual contact with Jane Doe #3."). The Court may immediately wonder about the following questions: How long did Dershowitz spend at these homes? Was he with his wife and family, as he has suggested in television interviews? How many times was he there overnight? Did Dershowitz ever see any of the dozens and dozens of young girls whom Epstein was sexually abusing? Did Dershowitz ever get a "massage" from one of these young girls?

The Court may also wish to contrast Dershowitz's very narrow affidavit with his more sweeping statements to the media. On popular television programs, Dershowitz has emphatically denounced Jane Doe No. 3 as a liar and said he can prove "conclusively" that he has never even met her.[30] Yet in his sworn affidavit, Dershowitz does not repeat that broad claim.[31] Nor does Dershowitz ever address his knowledge of other young girls, in addition to Jane Doe No. 3, abused by Epstein in those houses.

---

[30] *See, e.g.,* http://www.cnn.com/2015/01/05/europe/prince-andrew-sex-abuse-allegations/index.html ("Q: "Have you ever met this woman named [Jane Doe No. 3]?" A: "No. Absolutely not, I don't know who she is."); CNN News Day http://www.cnn.com/videos/tv/2015/01/05/bts-newday-alan-dershowitz-prince-andrew-sex-scandal-allegations.cnn (Jan. 5, 2015) ("I never met this woman. I never touched her. I was never massaged by her. There was no contact, no contact whatsoever – and I will prove it conclusively.").

[31] In the media, Dershowitz has also offered to execute a waiver of the statute of limitations to enable Jane Doe No. 3 to file charges against him. Shortly after Dershowitz first made that offer, Jack Scarola, Esq., provided Dershowitz with a waiver form for him to sign. Dershowitz declined to sign the form and later advised, through his counsel, that he was "considering" whether to waive the statute of limitations.

In his affidavit, Dershowitz also cagily states that he sent a letter to an attorney who was seeking a deposition, recounting that in that letter he (Dershowitz) said he was "not a witness to any alleged crimes." DE 282-1 at 3. But Dershowitz does not repeat under oath the broad claim that he never witnessed any alleged crimes – presumably because he is aware of certain child abuse reporting obligations that might be at issue if he did so.

Against this mounting evidence of guilt, Dershowitz suggests in his affidavit that aircraft flight manifests will exonerate him. DE 282-1 ("I was on that plane on several occasion as the manifests will show, but never under circumstances where it would have been possible to have sex with Jane Doe #3."). In media statements, Dershowitz has repeatedly brought up the manifests as proof of innocence.[32] Coincidentally and remarkably, it was Dershowitz himself, acting as Epstein's attorney, who personally collected and then provided flight manifests to the Palm Beach Police Department. *See, e.g.,* Police Detective Joe Recarey Depo. at 281, *Jane Doe No. 2 v. Epstein,* No. 9:08-cv-80119-KAM (Mar. 19, 2010). (excerpts attached as Exhibit 29) Dershowitz provided manifests covering just the 10 months: January 1, 2005, through October 17, 2005, During civil litigation, believing that these flight manifests were grossly incomplete, counsel subpoenaed Epstein for complete flight logs. Epstein failed to provide any information at all. Counsel were then forced to request flight logs from Epstein's various private pilots.

One of Epstein's pilots, David Rogers, provided certain flight logs covering some flights from a much broader time frame: 1997–2005. This production confirmed that the flight

---

[32]  *See, e.g., The Today Show*, Jan. 5, 2015 ("She claims I had sex with her in the airplanes, manifests of the flights will show I was never on the airplanes with her."); *Hala Gorani – CNN Live*, Jan. 5, 2015 ("As far as the planes are concerned, there are flight manifests. They will prove I was never on any private airplane with any young women.").

information Dershowitz provided to police was incomplete. A comparison of the flight manifests and logs confirms that the flight logs provided by Rogers were also incomplete. A cursory review of both logs reveals that together the logs produced cover only a small fraction of the flights taken and the passengers on board. While this is obvious for multiple reasons, a few examples may help to make this point. For instance, the flight records provided by Dershowitz for a February 3, 2005, flight from CMH (Columbus, Ohio) to PBI (Palm Beach, Florida), indicate that in addition to Jeffrey Epstein, Sarah Kellen, Nadia Marcinkova, and Jean Luc Brunel, on board were three "females." The existence of these three "females" is conspicuously absent from the Rogers' logs. *Compare* Composite Exhibit 25 *with* Composite Exhibit 26 (Rodgers Logs). Other flights, such as the March 18, 2005 flight from New York to Florida, taken by Maxwell, Epstein and Dana Burns are missing altogether from the Rogers logs. Likewise, flights that appear on the Rogers logs are missing from the logs produced by Dershowitz. Multiple examples lead to the clear conclusion that all produced logs are incomplete and may well have been heavily sanitized. For example, on February 9, 1998, Dershowitz flew on Epstein's private plane from Palm Beach, Florida, to Teterboro, New Jersey. One of the passengers is listed as "1 female." Exhibit 27. Who is that "female" – and what is her age? Similarly, Jane Doe No. 3 appears on a July 16, 2001, flight from Santa Fe, New Mexico to Teterboro, New Jersey, along with Epstein, Maxwell and Emmy Tayler. Yet there is no earlier flight that would have landed Jane Doe No. 3 in New Mexico. According to the logs, the next flight is from Palm Beach to the U.S. Virgin Islands on July 23, 2001, although Jane Doe No. 3 does not appear. The impression is that she remained in the New Jersey area. However, on July 28, 2001, Jane Doe No. 3 is on a flight with Epstein from the Virgin Islands back to Palm Beach. *See* Exhibit 26. How did she get to the Virgin Islands?

The flight logs provide evidence of some of the individuals who were on some of the flights - nothing more. Accordingly, it would not be surprising to find that some of these flight logs do not mention Dershowitz, because they were likely designed to hide evidence of criminal activity – or perhaps later cleansed of such evidence. With that said, some interesting things do appear in the flight logs. Unlike any other of Epstein's numerous criminal defense attorneys, Dershowitz appears in the flight logs for flights on Epstein's private planes produced by pilot Rogers on numerous occasions. Dershowitz also appears on flights with various females, including Epstein's known procurer of underage girls, Sarah Kellen. And, in contrast to recent media suggestions by Dershowitz, his family does not appear on any of the flights with him.

Jane Doe No. 3 is listed on the logs as a passenger at a time when she is under age 18. While the logs do not show Dershowitz on the same flight with her, it is abundantly clear that the logs do not contain evidence of all of the flights that she was on and that they are grossly incomplete. The flight logs do confirm that she was transported by Epstein to Florida, New York, London, New Mexico, and the U.S. Virgin Islands – locations where she states under oath that Epstein forced her to have sex with various individuals, including Dershowitz.

Finally, in Dershowitz's vociferous attacks on Jane Doe No. 3, the Court will see an eerie parallel to the Jeffrey Epstein criminal investigation. Back in 2005, when the Palm Beach Police Department was first investigating Epstein's sexual abuse, it interviewed more than a dozen minor girls. These girls all provided information about abuse similar to the abuse that Jane Doe No. 3 says she suffered in Florida. The Department accumulated overwhelming evidence placing underage girls at Epstein's residence with no obvious legal purpose. The logical explanation was that these young girls were being truthful when they told law enforcement that Epstein (and others) were sexually abusing them.

Rather than acknowledge sexual abuse of these girls, Dershowitz blustered down to Florida to meet with the State Attorney and to viciously attack the credibility of these victims – to call them liars, defame them as prostitutes, and convince the State Attorney that these girls could not even believably establish that they had ever even gone to Epstein's mansion. *See, e.g.,* Depo. of Police Chief Michael Reiter at 53-55, 102-06, *B.B. v. Epstein,* No. 502008CA037319 XXXX-MB-AB (Palm Beach Cty. Cir. Ct. Nov. 23, 2009) (excerpts attached as Exhibit 28); *see also* Depo. of Police Detective Joe Recarey at 301-302 and 309-10, *Jane Doe No. 2 v. Epstein,* No. 9:08-cv-80119-KAM (S.D. Fla. Mar. 19, 2010) (excerpts attached as Exhibit 29)   Later, Dershowitz would write to tell the Justice Department that "███████████████████" Letter from Gerald Lefcourt & Alan Dershowitz, July 6, 2007 to U.S. Atty.'s Office for the S.D. Fla (attached as Exhibit 30).  Now, nearly a decade later, there should be no doubt in anyone's mind that the minor girls who cooperated with the authorities told the truth about their sexual abuse inside Epstein's home -- and that Dershowitz's attack on their credibility was duplicitous. In fact, according to credible eyewitness testimony recounted above, Dershowitz was clearly present in the home while some of these girls were being abused.  The Court should not allow Dershowitz's similar bullying tactics to succeed in this case.[33]

## CONCLUSION

Dershowitz's motion for intervention (DE 282) should be denied.

---

[33] In the media, Dershowitz has said that he will prove that Jane Doe No. 3 is lying "beyond any doubt by physical and documentary evidence."  The Last Word with Lawrence O'Donnell – MSNBC (Jan. 8, 2015) http://www.msnbc.com/the-last-word/watch/alan-dershowitz-on-allegations--totally-false-381942851573.  The Court should compare this media assertion with the materials that Dershowitz files along with his reply brief.

DATED: January 21, 2015

Respectfully Submitted,

Bradley J. Edwards
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone (954) 524-2820
Facsimile (954) 524-2822
E-mail: brad@pathtojustice.com

and

Paul G. Cassell
*Pro Hac Vice*
S.J. Quinney College of Law at the
  University of Utah[*]
332 S. 1400 E.
Salt Lake City, UT 84112
Telephone: 801-585-5202
Facsimile: 801-585-6833
E-Mail: cassellp@law.utah.edu

*Attorneys for Jane Doe #1 and Jane Doe #2*

---

[*] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on January 21, 2015, on the following

using the Court's CM/ECF system:

Dexter Lee
A. Marie Villafaña
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
(561) 820-8711
Fax: (561) 820-8777
E-mail: Dexter.Lee@usdoj.gov
E-mail: ann.marie.c.villafana@usdoj.gov

*Attorneys for the Government*

Thomas Scott
thomas.scott@csklegal.com
COLE, SCOTT & KISSANE, P.A.
Dadeland Centre II
9150 South Dadeland Boulevard, Suite 1400
Miami, Florida 33156
Telephone: (305) 350-5300
Facsimile: (305) 373-2294

-and-

Kendall Coffey
kcoffey@coffeyburlington.com
Gabriel Groisman
ggroisman@coffeyburlington.com
Benjamin H. Brodsky
bbrodsky@coffeyburlington.com
COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive, PH 1
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261

*Attorneys for Alan Dershowitz*

/s/ Bradley J. Edwards