# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------X
:
VIRGINIA L. GIUFFRE,
:
        Plaintiff,
:
v.                                                         **15-cv-07433-LAP**
:
GHISLAINE MAXWELL,
:
        Defendant.
:
:
--------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF OBJECTIONS TO UNSEALING SEALED MATERIALS RELATED TO DOCKET ENTRIES 231, 279, 315, 320, & 335

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
303.831.7364

Defendant Ghislaine Maxwell files this Memorandum of Law in Support of Objections to Unsealing Sealed Materials Related to Docket Entries 231, 279, 315, 320, & 335, and states as follows:

**Introduction**

Ms. Maxwell submits this Memorandum of Law in support of her objection to the unsealing of her July 22, 2016 deposition testimony, any excerpts of that testimony and any pleadings that quote from that testimony.  She further objects to the unsealing of any of the other witnesses' deposition testimony and their excerpts or quotes, as well as plaintiff's counsels' commentary on the credibility of witnesses, vitriol and argument within their pleadings based on the deposition testimony.  Filed contemporaneously is a chart reflecting Ms. Maxwell's specific objections to each of the pleadings and exhibits at issue.  Ex. A.  Ms. Maxwell incorporates by reference the Countervailing Interests she previously briefed and the legal bases therefore.  *See* DE 1057.[1]

The Second Circuit already determined that Ms. Maxwell's July 2016 deposition was compelled and that her answers related to sexual activity were given in reliance on the Protective Order in this case.  That mandate rule and the law of the case bar disclosure of other unsealed portions of that deposition.  Moreover, the release of deposition testimony and lawyer vitriol into

---

[1]  The Countervailing Interests include:
1.  Reasonable reliance on the Protective Order by a party or non-party ("CI-1").
2.  Prevention of the abuse of court records and files ("CI-2").[1]
3.  Annoyance, embarrassment, oppression, undue burden ("Privacy Interests") ("CI-3").
4.  Preserving the fundamental rights of suspects or others under criminal investigation ("CI-4").
5.  Improper submission of documents thereby weaponizing judicial documents ("CI-5").
6.  Untrustworthy, unreliable, and incorrect information ("CI-6").
7.  Non-Judicial Documents ("CI-7").

1

the media frenzy attendant to these proceedings will jeopardize Ms. Maxwell's right to a fair criminal trial, in violation of Supreme Court precedent and Local Rule 23.1.  Finally, the materials at issue should not be released publicly because the criminal court overseeing Ms. Maxwell's criminal prosecution has not yet had an opportunity to determine whether the evidence will be admissible at trial or suppressed.

## I.   As the Second Circuit Already Determined, Ms. Maxwell Relied on the Protective Order When She Answered Questions Regarding Sexual Activity in Her July 2016 Deposition (CI-1, CI-3)

Judge Sweet ruled on June 16, 2016 that Ms. Maxwell must sit for a second deposition on eight topics *all* "relating to [her] own sexual activity" and "her knowledge of the sexual activity of others."  (DE 316-6 at 10)  Judge Sweet overruled Ms. Maxwell's privacy objections finding her "privacy concerns are alleviated by the protective order in this case."  *Id.*  Indeed, plaintiff urged the Protective Order as a reason for Judge Sweet to compel these answers from Ms. Maxwell.  *See* DE 152 at 1 ("Such questions are entirely appropriate in the discovery phase of this case, particularly where any answers will be maintained as confidential under the Protective Order in this case.").

Ms. Maxwell relied on the Protective Order itself, plaintiff's promise that her answers would remain under seal, and Judge Sweet's Order that she answer the questions. She appeared at the July 2016 deposition and answered hundreds of pages worth of questions concerning her "own sexual activity" and "her knowledge of the sexual activities of others."  From the very first question through the last, Ms. Maxwell provided answers involving her ███████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

 Not satisfied, plaintiff moved

for yet a third deposition, and the pleadings and exhibits related to that motion (DE 315) are at

issue now, including the entire July 2016 deposition transcript.[2]

A number of the pages from the July 2016 deposition later were attached to plaintiff's

response in opposition to Ms. Maxwell's motion for summary judgment.  (DE 586-3, Ex. 11 at 1-

197)  The Second Circuit panel, despite the "strong presumption of access" afforded to summary

judgment documents, ruled that all of Ms. Maxwell's questions and answers concerning sexual

activity from the July 2016 deposition should remain sealed.  The court held that the strong

presumption of access was rebutted as to:

> these "deposition responses concerning intimate matters where the questions were
> likely only permitted—and the responses only compelled—because of a strong
> expectation of continued confidentiality. *See* Fed. R. Civ. P. 5.2."

*Brown v. Maxwell*, 929 F.3d at 47, 49 n.22 (2d Cir. 2019).  The Second Circuit *sua sponte*

redacted the July 2016 deposition questions and answers concerning any sexual activity

contained in the summary judgment exhibits.  *See* Ex. B.

The mandate rule and law of the case dictate that this Court may not unseal any portions

of Ms. Maxwell's July 2016 deposition due to Ms. Maxwell's clear reliance on the Protective

Order at the time she gave the compelled testimony and the violation of her privacy interests that

such unsealing would cause.

---

[2] *See* DEs 315, 316, 316-6, 316-7, 316-8, 339, 340, 340-1, 340-3, 340-4, 368, 369, 369-1, 369-1, 369-2, 369-3, 369-9.

> The law of the case doctrine has two branches. The first requires a trial court to follow an appellate court's previous ruling on an issue in the same case. This is the so-called "mandate rule." The second and more flexible branch is implicated when a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court. It holds "that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case," unless "cogent" and "compelling" reasons militate otherwise.

*United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (internal citations omitted).

The mandate rule bars disclosure of any pages that were redacted by the Second Circuit. The law of the case doctrine bars disclosure of any other "deposition responses concerning intimate matters where the questions were likely only permitted—and the responses compelled—because of a strong expectation of continued confidentiality." The Second Circuit implicitly ruled that Ms. Maxwell had overcome the "strong presumption of access" afforded to summary judgment submissions. Here, the at-issue deposition testimony relates to the lowest presumption of access, i.e., discovery dispute pleadings. *Brown*, 929 F.3d at 49 n.22.

There is no dispute that Ms. Maxwell relied on the Protective Order when she sat for and responded to questions during the July 2016 deposition. Ms. Maxwell opposed the second deposition. Plaintiff assured her and the Court that the July 2016 deposition was covered by the Protective Order. And Judge Sweet compelled the testimony only because any "privacy concerns are alleviated by the Protective Order in this case, drafted by Defendant," (DE 316-6 at 10). These facts bring the deposition well within the protection afforded by the Second Circuit's case law governing access to judicial documents. *See Martindell v. Int'l Tel. & Tel. Co.*, 594 F.2d 291, 296–97 (2d Cir. 1979) ("In the present case the deponents testified in reliance upon the Rule 26(c) protective order, absent which they may have refused to testify. . . . [T]he witnesses were entitled to rely upon the terms of a concededly valid protective order."); *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) ("It is presumptively unfair for courts to modify

4

protective orders which assure confidentiality and upon which the parties have reasonably relied.").

The Second Circuit has further specifically found that countervailing interests include "the privacy interest of those who resist disclosure." *Brown*, 929 F.3d 41, 48 n.13 (*quoting SEC v. TheStreet.Com*, 273 F.3d 222, 232 (2d Cir. 2001)). Both the mandate rule and the fact that this compelled testimony – directly implicating privacy rights concerning sexual activities – was given specifically in reliance on the Protective Order, require this Court to hold that Ms. Maxwell's reliance and right to privacy countervail any prediction of public access as to any portion of her July 2016 deposition.  To be clear, absent (1) the Protective Order and (2) the Court's order compelling the testimony subject to the Protective Order, Ms. Maxwell would have declined to answer further questions.

## II.   Third Party Reliance on Protective Order (CI-1, CI-3)

Under the law of the case doctrine, this Court also must heavily weigh the countervailing interest of reliance on the Protective Order of Non-Parties who provided deposition testimony. This Court previously held in relation to Professor Dershowitz's request to receive sealed materials that "the confidentiality provisions of the Maxwell protective order 'functioned as a powerful mechanism for inducing parties to provide discovery in a contentious litigation.'" (DE 1113 at 5)

Does 1 and 2 wrote this Court and expressed their desire to not have their names released. (DE 1125)  Although they did not thereafter submit any objection, this Court has already ruled that "an objection by Does 1 and 2 to the release of their names is itself an objection to unsealing." *Id.* at 3.  Based on these *pro se* objections to the release of their names, this Court may find that releasing any deposition testimony for Doe 1 would contravene the reliance on the

Protective Order that this Court has already found "functioned as a powerful mechanism for inducing parties to provide discovery" in this action.

There are other witnesses whose testimony was secured with promises of confidentiality pursuant to the Protective Order and whose deposition testimony is attached to the at-issue motions.  They include ████████████████████████.  *See*, *e.g*., DEs 258-1, 258-2, 258-3, 258-4.  Each were represented by counsel during their depositions and each counsel requested confidentiality.  That some of these witnesses have or have not requested excerpts or have or have not lodged objections to unsealing does not undercut their reasonable reliance on the Protective Order at the time they provided deposition testimony.  *See* DE 1108 at (3)(f) ("A Non-Party's participation in this protocol is optional.  … Non-Parties are under no obligation to object, and a Non-Party's decision not to do so shall not be deemed consent to the unsealing of any Sealed Materials.").

### III.   Ms. Maxwell's Right to a Fair Criminal Trial Will Be Compromised by Release of Her Deposition and the Testimony of Other Potential Trial Witnesses (CI-4)

As the world is aware, Ms. Maxwell was indicted on July 2, 2020 and charged with six crimes.  *United States v. Maxwell,* 20-cr-330 (DE 17) ("Criminal Action").  The indictment alleges Ms. Maxwell committed crimes from 1994 to 1997 while in the employment of and association with Jeffrey Epstein, as well as perjury in her depositions in *this case* in 2016, including during the July 2016 deposition at issue in this unsealing.  *Id.* The U.S. Attorney's Office prosecuting the criminal case has not yet disclosed any details concerning Rule 404(b) evidence that it might seek to introduce in the criminal case, nor has either side disclosed their witness lists or exhibits.  Discovery is not yet complete.  The criminal trial is scheduled to commence July 12, 2021.

The Constitution guarantees to Ms. Maxwell the right to a fair trial. Under the mandate in this case, the Second Circuit found that "examples of [] countervailing values may include, depending on the circumstances, preserving 'the right of an accused to fundamental fairness in the jury selection process.'" *Brown*, 929 F.3d at 48 n.13 (*quoting Press-Enter. Co. v. Sup. Court of Cal., Riverside Cnty.*, 464 U.S. 501, 510 (1984)); *see also Nixon v. Warner Communic'ns, Inc.*, 435 U.S. 589 (1978) ("right to inspect and copy judicial records is not absolute"). The qualified right to access of the media must be balanced against and, in some cases yield to, the paramount interests of a criminal defendant. *See Press-Enter.*, 478 U.S. at 9. "[N]o right ranks higher than the right of the accused to a fair trial." *Id.*

The Supreme Court has noted that in cases that arouse intense public interest, "adverse publicity can endanger the ability of the defendant to receive a fair trial." *Gannett Co. v. Depasquale*, 443 U.S. 368, 378 (1979) (affirming New York Court of Appeals decision to exclude press from criminal suppression hearing). Trial judges are entrusted with an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. *See id.* at 376. "[B]ecause of the Constitution's pervasive concern for these due process rights, a trial judge may surely take protective measures even when they are not strictly and inescapably necessary." *Id.* "After the commencement of the trial itself, inadmissible prejudicial information about a defendant can be kept from a jury by a variety of means. When such information is publicized during a pretrial proceeding, however, it may never be altogether kept from potential jurors." *Id.* at 378-79 (1979).

It is no answer to observe that this Court is not presiding over the criminal trial. In one way, that is the very point: Judge Nathan is presiding over the criminal trial; her court is co-equal to this one. Judge Nathan has stated she will not countenance conduct by the government, its agents, and counsel for witnesses that could have an effect on Ms. Maxwell's constitutional

rights: "The Court will ensure strict compliance with [the Court's local rules and the rules of professional responsibility] and will ensure that the Defendant's right to a fair trial will be safeguarded."  DE 28, No. 20-cr-330 (AJN) (July 23, 2020). This Court of course is presiding over a proceeding that does not exist in a vacuum. Every word in every paragraph in every document filed in this case is being scrutinized by the "media," i.e., the mainstream media and every business, blogger and individual with a web access or a social media account. It is not possible to overstate the close relationship between the documents plaintiff wants to unseal in this case and the criminal prosecution the government is pursuing next door. Indeed one of the very documents at issue in this Objection is the specific subject of the indictment and will serve as one of the government's key trial exhibits. For all intents and purposes, this Court and this proceeding are functionally adjuncts of the criminal case.

The question is not whether Judge Nathan in theory could undertake steps that might ameliorate the prejudicial effect of an unsealing in this case. Rather the question is why she should need to. And why Ms. Maxwell, whose liberty is at stake, should need to rely on such steps. As the Supreme Court suggested in *Nixon*, this Court has its own constitutional duty to prevent the *risk* of harm to a fundamental constitutional right by refusing to unseal materials, and that duty powerfully overrides the public's comparatively meager interest in avoiding delay in gaining access to a document that may be admitted in open court at the criminal trial.

### A.  Unprecedented Pretrial Publicity Caused by Unsealing of Materials in this Case

There can be no doubt that matters concerning Ms. Maxwell's case have been excessively and extensively reported.  The press, the government, and plaintiff have made every effort to try Ms. Maxwell as a proxy for the now deceased Mr. Epstein.  The prejudice caused by the flood of coverage that comes with every new unsealing event in this case cannot be overstated.  *See*

*Brown,* 929 F.3d at 51 ("we share [district court's] concern that court files might be used to 'promote scandal arising out of unproven potentially libelous statements' and 'similarly, pleadings, complaints, and briefs—while supposedly based on underlying evidentiary material— can be misleading. Such documents sometimes draw dubious inferences from already questionable material or present ambiguous material as definitive").

By way of example, the unsealing that occurred on October 23, 2020, including the release of Ms. Maxwell's April 2016 deposition, generated over 390 internet news stories in the days and weeks following the unsealing.  *See* Ex. C.  One of the articles from NPR article quoted line by line various portions of Ms. Maxwell's testimony.[3]  Plaintiff's attorney, who also represents one of the accusers contained in the Maxwell indictment, is quoted by NPR as stating:

> "The public should know today's unsealing is only a small part of the total evidence," Giuffre's lead attorney, Sigrid McCawley, told NPR. "As the evidence comes out, it will be clear why Ms. Maxwell and others who enabled Jeffrey Epstein are fighting so hard to keep it concealed. As our client Virginia Giuffre bravely asserts, they did not act alone."

*Id.*  Ms. McCawley also stated the unsealing of Ms. Maxwell's first deposition was "a long time coming and a welcome step towards revealing the evidence of the scope and scale of the Jeffrey Epstein and Ghislaine Maxwell sex trafficking ring."[4]  Plaintiff's counsel undoubtedly wants, and is trying to have, Ms. Maxwell to be tried in the press, not in the courtroom. They want nothing more than to cause the irretrievable loss of Ms. Maxwell's right to a fair trial and impartial jury.  Continued unsealing grants them that wish.

Further, despite the redactions proposed by plaintiff in the unsealing process, at least one press source claimed to "crack" the redactions to identify witnesses and potential testimony by or

---

[3] https://www.npr.org/2020/10/22/926590153/jeffrey-epstein-update-read-the-deposition-that-ghislaine-maxwell-fought-to-hide
[4] https://www.bbc.com/news/world-us-canada-54647570

about them.[5] The article specifically lists 25 individuals whose names have been identified

despite redactions, and requests readers to help decode additional names. *Id.* There is certainly

no doubt that the unsealing event has raised public animus against Ms. Maxwell, implicating her

constitutional right to a fair trial and unbiased jury.

**B. Deposition Testimony and Names of Witnesses from This Action Constitute Evidence in the Criminal Case**

The Sealed Items contain information relevant to the Criminal Action that may or may

not later be determined inadmissible in that trial.

First, the July 2016 deposition itself is quoted in the indictment as the basis for Count 6:

Perjury. *See* DE 17 at 16-17, 20-cr-330 (AJN). Unless suppressed, the deposition transcript will

most certainly be a trial exhibit. The government will be required to show in the Criminal

Action that the quoted statements from the July 2016 Deposition were material to *this* lawsuit.

*See United States v. Berardi,* 629 F.2d 723, 727 (2d Cir.1980) (18 U.S.C. § 1623(a) "is

contravened only when the perjury is committed in response to a question which bears upon the

matters within the investigation's purview"); *United States v. Zagari,* 111 F.3d 307, 329 (2d

Cir.1997) (statement must be "material to the proceeding in which it is given"). When made

during a civil deposition, statements are material if "a truthful answer might reasonably be

calculated to lead to the discovery of evidence admissible at the trial of the underlying

suit." *United States v. Kross,* 14 F.3d 751, 754 (2d Cir.1994).

---

[5] "It turns out, though, that those redactions are possible to crack. That's because the deposition—which you can read in full here—includes a complete alphabetized index of the redacted and unredacted words that appear in the document. For example, after cracking the redactions, we know that Maxwell was asked about an email that Dershowitz allegedly sent to Epstein. In that email, Dershowitz reportedly wrote that he was 'working on several possible articles about unfairness in the legal process that allows false charges to be inserted into legal documents.'" https://slate.com/news-and-politics/2020/10/ghislaine-maxwell-deposition-redactions-epstein-how-to-crack.html

Second, Doe 1 will likely testify as a witness – either for the prosecution or the defense – in the Criminal Action, as well as in the *Giuffre v. Dershowitz* civil case pending before this Court. ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ It is impossible to know at this early stage in the Criminal Action which other witnesses from this case will be called to testify there, but the overlap of allegations and subject matter is beyond dispute.

### C. Release of Evidence That May Be Deemed Inadmissible in the Criminal Action Risks Tainting and Prejudicing the Jury Pool

The deposition testimony and witness names and information that may be revealed in this unsealing may or may not be presented (or even admissible) in the Criminal Action.  Judge

---

[6] ████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████

Nathan has set a timetable for briefing motions to suppress that begins in January 2021. Disclosure of witnesses, Rule 404(b) and 415 evidence, *Jencks* and *Giglio* material is unlikely to occur until later next year.  Yet, to release this potentially inadmissible evidence publicly now, to be widely disseminated by all of the media, poses a serious risk of jeopardizing Ms. Maxwell's ability to convene a fair and impartial jury who has not been exposed to the potentially inadmissible evidence.

By way of example, Ms. Maxwell will challenge in the Criminal Action the means by which the government came into possession of her *sealed* deposition testimony from this case for presentation to the grand jury and use in the indictment, without ever providing her notice or an opportunity to be heard.  The binding Second Circuit precedent, *Martindell v. Int'l Tel. & Tel. Co.,* 594 F.2d 291 (2d Cir. 1979), explains why.  In that case, the government was investigating possible violations of federal criminal laws, including perjury.  *Id.* at 293.  The Second Circuit held that the government "may not…simply by picking up the telephone or writing a letter to the court…insinuate itself into a private civil lawsuit between others."  *Id.*

> Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences. In short, witnesses might be expected frequently to refuse to testify pursuant to protective orders if their testimony were to be made available to the Government for criminal investigatory purposes in disregard of those orders.

*Id.* at 296. After balancing the interests at stake, the Court held that absent improvidence in issuing the protective order or some extraordinary circumstance or compelling need, witnesses must be permitted to rely on the protective order's enforceability. *Id.*  The protective order should not be vacated or modified "to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation, either as evidence or as the subject of a possible perjury charge." *Id.* (emphasis added). Unsealing the deposition material in

this case would sanction a *Martindell* violation (or at least prejudge the issue) and prejudice Ms. Maxwell's right to seek relief in the criminal case. Ms. Maxwell has a strong claim that the government violated *Martindell.* Publicly releasing what may prove to be inadmissible evidence in the Criminal Action will violate Ms. Maxwell's right to a fair trial.

*Sheppard v. Maxwell*, 384 U.S. 333 (1966), is instructive. In that case, the Supreme Court held the trial court violated defendant's due process rights when it failed to take precautions to prevent dissemination of "evidence [made] available to the news media which was never offered in the trial." *Id.* at 360. It found that "[m]uch of the 'evidence' disseminated in this fashion was clearly inadmissible. The exclusion of such evidence in court is rendered meaningless when news media make it available to the public." *Id.* The Supreme Court addressed the need for courts to take strong measures to ensure that a defendant's due process rights are not hindered by excessive publicity, including publicity "involving incriminating matter not introduced at the trial." *Id.* at 362.

> From the cases coming here we note that unfair and prejudicial news comment on pending trials has become increasingly prevalent. Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, ***the trial courts must take strong measures to ensure that the balance is never weighed against the accused.***

*Id.* (emphasis supplied).

The *Sheppard* Court further noted, "Despite his awareness of the excessive pretrial publicity, the trial judge failed to take effective measures against the massive publicity which continued throughout the trial or to take adequate steps to control the conduct of the trial." *Id.* "Since the state trial judge did not fulfill his duty to protect Sheppard from the inherently prejudicial publicity which saturated the community and to control disruptive influences in the

courtroom, we must reverse the denial of the habeas petition." *Id.* at 363.  To protect the

defendant's rights, the Supreme Court noted that the:

> trial court might well have proscribed extrajudicial statements by any lawyer, ***party, witness, or court official which divulged prejudicial matters***, such as the refusal of Sheppard to submit to interrogation or take any lie detector tests; any statement made by Sheppard to officials; ***the identity of prospective witnesses or their probable testimony***; any belief in guilt or innocence; or like statements concerning the merits of the case.

*Id.* (emphasis supplied.) The Supreme Court further held that "the court should have made some

effort to control the release of leads, information, and gossip to the press by police officers,

witnesses, and the counsel for both sides.  Much of the information thus disclosed was inaccurate,

leading to groundless rumors and confusion." *Id. at* 359.

"The Sixth Amendment right to an impartial jury and the due process right to a

fundamentally fair trial guarantee to criminal defendants a trial in which jurors set aside

preconceptions, disregard extrajudicial influences, and decide guilt or innocence 'based on the

evidence presented in court.'" *Skilling v. United States*, 561 U.S. 358, 438 (2010) (dissenting

opinion) (*quoting Irvin* v. *Dowd*, 366 U.S. 717, 723 (1961)).  "Community passions, often

inflamed by adverse pretrial publicity, can call the integrity of a trial into doubt.  In some

instances, this Court has observed, the hostility of the community becomes so severe as to give

rise to a 'presumption of [juror] prejudice.'" *Id.* (quoting *Patton* v. *Yount*, 467 U.S. 1025, 1031

(1984)).  There is no doubt that the unsealing of Ms. Maxwell and other witnesses' depositions in

this case, with the attendant publicity and improper extrajudicial comments of plaintiff's counsel,

will render this a case in which juror prejudice must be presumed.

Local Criminal Rule 23.1 ("Free Press-Fair Trial Directives") prohibits all participants in

a criminal case from disseminating information to the public "if there is a substantial likelihood

that such dissemination will interfere with a fair trial or otherwise prejudice the due

administration of justice."[7] The Rule further provides that a presumption of interference with a fair trial attaches to categories of documents including "the character or reputation of the accused," "**the existence or contents of any confession, admission or statement given by the accused**, or the refusal or failure of the accused to make any statement," "the identity, testimony or credibility of prospective witnesses," "the possibility of a plea of guilty to the offense charged or a lesser offense," and "information the lawyer or law firm knows is likely to be inadmissible at trial and would if disclosed create a substantial likelihood of prejudicing an impartial trial," and "[a]ny opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case."

This Court has the ability to protect Ms. Maxwell's due process rights by not unsealing these discovery-dispute documents, including "statement[s] given by the accused." The information set to be unsealed 1) might divulge the identity of potential witnesses or their probable or possible testimony, or 2) release information that may release leads or gossip (contained as vitriolic arguments in the discovery pleadings and their attachments), or 3) disclose inaccurate information, or 4) the express opinions and arguments of plaintiff's counsel as to the accused's guilt or merits of the case. Ms. Maxwell's countervailing due process interests eviscerate the "prediction" of public access or unsealing of any documents presently subject to the unsealing process.

## IV. Plaintiff waives any objection to unsealing not timely asserted

Ms. Maxwell has no privacy interest in a number of the documents at issue in this round

---

[7] By virtue of their public representation of one of the accusers listed in the indictment and other witnesses, plaintiff's counsel in this action are covered by Local Criminal Rule 23.1 for purposes of the Criminal Action. *See* DE 27 at 4 & DE 28, No. 20-cr-330 (AJN).

of unsealing that pertain to plaintiff.  Barring a timely objection from plaintiff,[8] Ms. Maxwell

lists in Exhibit A the docket entries to which she expresses no objection to unsealing.

## <u>Conclusion</u>

For the foregoing reasons, Ms. Maxwell respectfully requests that the Court grant her

objections to unsealing.


Dated: November 12, 2020


Respectfully submitted,


*/s/Laura A. Menninger*
Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
Haddon, Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303.831.7364
Fax:     303.832.2628
lmenninger@hmflaw.com
*Attorneys for Ghislaine Maxwell*

---

[8] In the first round of unsealing proceedings in this case, plaintiff failed to timely object to the unsealing of numerous records related to her.  Rather, in response to Ms. Maxwell's objections to unsealing, she simply listed on her response chart that she objected to unsealing her medical records.  (DE 1073 at 19-20)  Without explanation, the Court presumably recognized that plaintiff relied on the Protective Order when disclosing confidential materials, kept sealed numerous records related to Ms. Giuffre despite her failure to timely object.  (DE 1068-1, 1077)

## CERTIFICATE OF SERVICE

I certify that on November 12, 2020, I electronically served this *Memorandum in Support of Objections to Unsealing Sealed Materials Related to Docket Entries 231, 279, 315, 320, & 335* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
Stan J. Pottinger
EDWARDS POTTINGER LLC
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com
StanPottinger@aol.com

Christine N. Walz
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Christine.walz@hklaw.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

Andrew G. Celli
David Lebowitz
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue at Rockefeller Center
10th Floor
New York, NY 10020
acelli@ecbalaw.com
dlebowitz@ecbalaw.com

Jay M. Wolman
Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
jmw@randazza.com
mjr@randazza.com

*/s/ Nicole Simmons*
Nicole Simmons

17