UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIRGINIA L. GIUFFRE

                    Plaintiff,

-against-

GHISLAINE MAXWELL,

                    Defendant.

15 Civ. 7433 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

   The Government of the United States Virgin Islands (the
"USVI") has moved (1) to intervene in the above-captioned action
pursuant to Rule 24 of the Federal Rules of Civil Procedure and
(2) should intervention be permitted, for confidential access to
sealed judicial records and discovery documents.  (See Notice of
Ex Parte Motion to Intervene and for Confidential Access to
Documents, dated Sept. 1, 2020 [dkt. no. 1110]; Memorandum of Law
in Support of Ex Parte Motion ("USVI Br."), dated Sept. 1, 2020
[dkt. no. 1111]; Reply Memorandum in Further Support of Ex Parte
Motion to Intervene and for Access to Documents ("Reply Br."),
dated Sept. 24, 2020 [dkt. no. 1122].)  Defendant Ghislaine Maxwell
("Ms. Maxwell") and non-party John Doe ("Doe") have opposed the
USVI's motion.  (See Defendant Ghislaine Maxwell's Memorandum of
Law in Opposition to USVI Ex Parte Motion to Intervene and for
Confidential Access to Documents ("Maxwell Opp. Br."), dated Sept.
16, 2020 [dkt. no. 1118]; John Doe Letter in Opposition to USVI

Motion ("Doe Opp."), dated Sept. 22, 2020 [dkt. no. 1119].) Plaintiff Virginia Giuffre does not oppose the USVI's motion. (See Letter from Sigrid S. McCawley, dated Sept. 16, 2020 [dkt. no. 1117].)

For the reasons detailed below, the USVI's motion is GRANTED IN PART and DENIED IN PART.

I.   FACTUAL BACKGROUND

The USVI's motion relates to the protective order entered in this action in March 2016 by the late Judge Robert W. Sweet. (See Protective Order ("Protective Order"), dated Mar. 17, 2016 [dkt. no. 62].)  As previously observed by the Court, that protective order is "unremarkable in form and function" in that it, like most protective orders, seeks to "protect the discovery and dissemination of confidential information or information that will improperly annoy, embarrass, or oppress any party, witness, or person providing discovery in [Giuffre v. Maxwell]."  (See Memorandum & Order, dated July 1, 2020 [dkt. no. 1071], at 3.) Under the terms of the order, discovery materials properly marked confidential pursuant to the protective order "shall not be disclosed or used for any purpose except the preparation and trial of [Giuffre v. Maxwell]," (Protective Order ¶ 4), and may only be disclosed to specific enumerated groups, including, among other groups, "attorneys actively working on this case" and "persons

regularly employed or associated with the attorneys actively working on this case," (id. ¶¶ 5(a)-(h)).

The protective order has been a primary theater of battle in this litigation over the past several months.[1]  Most notably, it has been the subject of two separate requests seeking modification brought by Alan Dershowitz, defendant in the related action Giuffre v. Dershowitz, No. 19 Civ. 3377, this summer alone. (See Letter from Howard M. Cooper, dated June 12, 2020 [dkt. no. 133 in 19 Civ. 3377]; Joint Letter from Nicole J. Moss & Christian G. Kiely, dated July 29, 2020 [dkt. no. 153 in 19 Civ. 3377].)  Specifically, Mr. Dershowitz first sought modification of the protective order to permit him blanket access to all sealed materials and discovery at issue in this litigation for use in his defense of Ms. Giuffre's claim of defamation against him, a request that the Court denied as, among other things, overbroad. (See Memorandum & Order, dated July 1, 2020 [dkt. no. 144 in 19 Civ. 3377].)  After Mr. Dershowitz renewed his request to modify the protective order and narrowed the universe of materials to which he was seeking access, the Court permitted a very limited disclosure to Mr. Dershowitz of all sealed

---

[1] The ferocious litigation over this protective order seems to invite the use of military terminology. (See Memorandum & Order, dated July 1, 2020 [dkt. no. 1071], at 8 (describing scope of proposal for modification of the protective order as "not a targeted strike . . . but a carpet bombing.").)

materials and discovery that mention him.  (See Order, dated Sept. 9, 2020 [dkt. no. 174 in 19 Civ. 3377].)

Here, the USVI seeks access to an array of sealed materials from this litigation, see infra at 7, because of their potential relevance to its pending Virgin Islands Criminally Influenced and Corrupt Organizations Act ("CICO") enforcement action against the Estate of Jeffrey E. Epstein and several Epstein-controlled entities before the Superior Court of the U.S. Virgin Islands. (See CICO Complaint ("CICO Compl."), dated Feb. 11, 2020 [dkt. no. 1111-1].)  The USVI asserts in its CICO action that Epstein ran a criminal sex trafficking operation in the Virgin Islands, "wherein he used his vast wealth and property holdings and a deliberately opaque web of corporations and companies to transport young women and girls to his privately-owned islands where they were held captive and subject to severe and extensive sexual abuse."  (See USVI Br. at 2 (citing CICO Compl. ¶¶ 40-114).)

II.  APPLICABLE LAW

a. Intervention

Where a non-party, such as the USVI here, "seeks to modify a protective order in a private suit, the proper procedure is to seek permissive intervention under Rule 24(b)."  Daniels v. City of New York, 200 F.R.D. 205, 207 (S.D.N.Y. 2001) (citing Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291, 294 (2d Cir. 1979)).

See also Abdelal v. Kelly, 2017 WL 1843291, at *1 (S.D.N.Y. May 5, 2017) (collecting cases).

Rule 24(b), which governs permissive intervention, provides in relevant part that, "on timely motion," any party may intervene who "has a claim or defense that shares with the main action a common question of law or fact."  See Fed. R. Civ. P. 24(b). Permissive intervention under Rule 24(b) is committed to the broad discretion of the Court.  See AT&T Corp. v. Sprint Corp., 407 F.3d 560, 561 (2d Cir. 2005)(recognizing "the broad discretion of the district court when considering permissive intervention"); H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc., 797 F.2d 85, 89 (2d Cir. 1986)("The district court's discretion under Rule 24(b)(2) is very broad.").  In exercising its discretion, the Court is required by rule to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); see also Calderon v. Clearview AI, Inc., 2020 WL 2792979, at *7 (S.D.N.Y. May 29, 2020)("[T]he court's primary consideration is whether intervention will unduly delay or prejudice the adjudication of the rights of the parties whose lawsuits are being 'invaded.'").

Several other factors historically serve as guardrails for the Court's discretion in permitting intervention under Rule 24(b).  Those factors include "the nature and extent of the intervenors' interests, whether their interests are adequately

represented by the other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."  Id. (quoting U.S. Postal Serv. v. Brennan, 579 F.2d 188, 191–92 (2d Cir. 1978)).

      b. Modification of the Protective Order

The standard set forth by the Court of Appeals in Martindell v. Int'l Tel. & Tel. Corp. applies where, as here, "a government agency seeks modification of a protective order governing discovery in a civil action." Daniels, 200 F.R.D. at 207 (citing Martindell, 594 F.2d at 296).  Under the Martindell standard, it is the government's burden to demonstrate "some extraordinary circumstance or compelling need" that would justify upsetting the status quo imposed by a civil protective order.  Martindell, 594 F.3d at 296.

    III. DISCUSSION

      a. Permissive Intervention

The Court concludes that permissive intervention is warranted here.  First, and most critically, intervention will not "unduly delay or prejudice the adjudication of the rights of the parties whose lawsuits are being 'invaded[,]'" Calderon, 2020 WL 2792979, at *7, as the merits of this litigation were resolved years ago via settlement.  Second, the USVI's interest in this litigation,

i.e., its law enforcement interest in access to the relevant sealed materials, has not been adequately represented by the original parties' litigation of the merits of this case or by the ongoing unsealing process.  See In re Visa Check/MasterMoney Antitrust Litig., 190 F.R.D. 309, 312 (E.D.N.Y. 2000).

      b. Modification of the Protective Order

The USVI has requested modification of the protective order so that it may obtain confidential access to the following materials:

- All currently sealed documents filed in support of Defendant Ghislaine Maxwell's motion for summary judgment (dkt. nos. 540-43);

- All currently sealed documents filed in support of Plaintiff Virginia L. Giuffre's opposition to Defendant's motion for summary judgment (dkt. no. 586 and attached exhibits);

- All currently sealed documents in support of Defendant's Reply in support of motion for summary judgment (dkt. nos. 620-21);

- All currently sealed parts of the Court's Opinion on Defendant's motion for summary judgment (dkt. no. 872); and

- All currently unfiled discovery deposition transcripts and exhibits thereto in this action.

(See USVI Br. at 3-4.)[2]

---

[2] In its opening brief, the USVI dedicated a significant amount of space to the argument that it should be granted access to the relevant materials pursuant to the presumption of public access to judicial documents guaranteed by the First Amendment and by federal common law.  (See USVI Br. at 8-11.)  However, the USVI seemingly abandoned that argument on reply.  Given the USVI is seeking

*(Footnote continues on the following page.)*

As an initial matter, the USVI's request for access to all currently sealed documents related to Ms. Maxwell's motion for summary judgment is curious.  The Court of Appeals has already unsealed the summary judgment record, which includes the parties' summary judgment briefs, their statements of undisputed facts, and incorporated exhibits, i.e., exactly the materials that the USVI requests access to here.  Brown v. Maxwell, 929 F.3d 41, 47-48 (2d Cir. 2019).  The USVI's request for those materials is accordingly denied as moot.

With respect to the USVI's request for currently unfiled deposition transcripts and attached exhibits, the Court declines to grant that request in full.  However, the Court acknowledges that there are some unique circumstances in this case that provide compelling grounds for a limited modification of the protective order.  The Court will first discuss several issues that counsel against the broader disclosure that the USVI requests, i.e., of all deposition transcripts and attached exhibits.

First, the USVI makes arguments that are largely duplicative of arguments that Mr. Dershowitz raised in support of modification over the summer--arguments that the Court rejected.  For example,

---

confidential access to the relevant materials and not their public release, the Court does not think it necessary to address whether the materials in question are judicial documents to which the presumption of public access attaches.

the USVI questions whether parties providing testimony in this case could have reasonably relied on the protective order because it is a "blanket" order, i.e., one that does not govern specific documents or testimony. (Compare USVI Br. at 12, with Letter from Howard M. Cooper, dated June 12, 2020 [dkt. no. 1058-1], at 2.) However, the Court has already concluded--twice--that the producing parties were entitled to rely on the protective order's promise that confidential information would not be "disclosed or used for any purpose except for the preparation and trial of [the Maxwell] case." (Memorandum & Order, dated July 1, 2020 [dkt. no. 1071], at 11; see also Order, dated Sept. 9, 2020 [dkt. no. 1113] at 5.)  The USVI points to no changed circumstance that would require the Court to perform an about-face on that conclusion.

Similarly, the USVI seeks the requested materials as a matter of "procedural efficiency." (USVI Br. at 12-13.)  The Court has also rejected this exact argument as a ground for modification of this protective order.  As the Court previously found with respect to Mr. Dershowitz's attempts to modify the protective order in this case, while efficiency is a "laudable" goal, it "hardly amount[s] to extraordinary circumstances or compelling need." (See Memorandum & Order, dated July 1, 2020 [dkt. no. 1071], at 8 (quoting Md. Cas. Co. v. W.R. Grace & Co., No. 83 Civ. 7451 (SWK), 1994 WL 419787, at *9 (S.D.N.Y. Aug. 10, 1994).)  Again, the USVI

does not explain why its desire for efficiency--while laudable--
carries more weight than did Mr. Dershowitz's.

The USVI also offers as a primary ground for modification its
"considerable" law enforcement interest in accessing the relevant
documents for use in its investigation of Epstein's estate.  (USVI
Br. At 12.).  That interest is--almost by definition--not
extraordinary.  The USVI's investigation of Epstein's estate
indisputably vindicates multiple, substantial public interests,
most notably shining a light on how Epstein utilized the Virgin
Islands to facilitate his alleged sex trafficking operation.  As
Hamlet said, however, there's the rub--law enforcement
investigations, criminal or civil, that fulfill some substantial
public interest are a dime-a-dozen.  As this Court has previously
noted, finding that extraordinary circumstances are present simply
because law enforcement is investigating a matter of great public
interest "would effectively eviscerate the Martindell standard,"
Daniels, 200 F.R.D. at 210.[3]

The analysis does not end there, however.  There are present
here--as is tradition with this litigation--some unusual

---

[3] The Court also rejects the USVI's contention that its lack of
"personal interest that is adverse to victims' interests" counsels
in favor of a broad modification (see Reply Br. at 10).  Whether
the Government's interest, i.e., prosecuting civil claims against
the Epstein Estate and related entities, is arguably nobler than
Mr. Dershowitz's interest in gaining access to the sealed materials
for use in his personal defense against Ms. Giuffre's claim of
defamation, is neither here nor there in the Court's analysis.

circumstances, identified by the USVI in its reply papers, that make a compelling case for a limited modification of the protective order.

A common thread between Ms. Maxwell's and Doe's oppositions to the USVI's request for modification is that the USVI, as a government actor, does not have a compelling need for the materials because "the Government as investigator has awesome powers" which "render unnecessary its exploitation of the fruits of private litigation."  See Martindell, 594 F.2d at 296 (citations omitted).[4] This is true enough, and the Court agrees with both Ms. Maxwell and Doe on this point to the extent that it applies to the full range of documents requested by the USVI.  However, the USVI's substantial investigatory powers are only relevant to the extent that they can effectively deploy them.  Here, there are two circumstances that substantially limit the USVI's ability actually to wield those powers.  Those circumstances strengthen the case

---

[4] To be sure, Martindell involved a criminal investigation, which meant that the Government could take a number of significant steps that are unavailable in the USVI's civil action here.  594 F.2d at 296 (noting that the Government "may institute or continue a grand jury proceeding," "subpoena witnesses to testify," or, where witnesses invoke their Fifth Amendment privilege, "offer immunity in exchange for their testimony").  However, this principle holds true even in civil matters, where federal and state governments "have at their disposal special investigatory powers not available to private litigants."  H.L. Hayden Co. of N.Y., Inc. v. Simens Med. Sys., Inc., 106 F.R.D. 551, 556 (S.D.N.Y. 1985) (noting the same with respect to civil antitrust cases).

that the USVI has a compelling need for a limited modification of the protective order.

The first of those circumstances is Epstein himself.  Epstein was, of course, the central player in the purported trafficking scheme that the USVI is investigating in the CICO action, as he allegedly "created and directed the companies whose aircraft transported the young women and girls, owned and maintained the secluded islands to which they were transported, and provided sources of funding for this activity."  (USVI Reply Br. at 3 (citing CICO Compl. ¶¶ 17-37).)  There can thus be little doubt that Epstein's prior testimony in this action is putatively valuable to the USVI.  As the Court has already discussed, this on its own is not enough to justify modification, see supra at 10, but here Epstein's demise presents an additional complicating factor: unlike other witnesses who previously testified in this case, the USVI obviously cannot subpoena and depose Epstein at a later date.  That the USVI does not have the same investigative flexibility with respect to Epstein that it does with other witnesses is a compelling reason to modify the protective order to allow the USVI confidential access to Epstein's deposition and the attached exhibits.

The arguments raised by Ms. Maxwell and by Doe with specific respect to Epstein's deposition do not diminish the USVI's case for access to the transcript.  Most notably, both Ms. Maxwell and

Doe further state that the USVI should be denied access to Epstein's deposition transcript because it is of little evidentiary value given Epstein's invocation of his Fifth Amendment right against self-incrimination on every question. (See Maxwell Opp. at 8; Doe Opp. at 3 ("[T]he USVI will not find any meaningful information in Mr. Epstein's deposition transcript.").) The Court disagrees for two reasons. First, as a practical matter, the USVI's CICO action is a civil enforcement action, and a USVI court can thus draw an adverse inference from Epstein's invocation of his Fifth Amendment rights at his deposition. See, e.g., Collazos v. U.S., 368 F.3d 190, 204 (2d Cir. 2004); N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc., 657 F. Supp. 2d 410, 415 (S.D.N.Y. 2009). Second, the substance of the deposition questions may on their own be fruitful--a jumping off point for the USVI's significant investigatory powers. The Court accordingly disagrees that Epstein's deposition is of no use whatsoever in the USVI's investigation, as Ms. Maxwell and Doe appear to contend.[5]

---

[5] Ms. Maxwell also argues that Epstein's death itself is of no moment, citing IIT v. Int'l Controls Corp., No. 76 CIV. 1547 (CES), 2009 WL 3094942 (S.D.N.Y. Sept. 28, 2009) in support of that proposition. (Maxwell Opp. at 8 ("The death of Mr. Epstein is . . . not the basis of a compelling need.").) That case involved the proposed modification of a protective order to allow movant--a plaintiff who had won a fraud judgment against a defendant who had since fled to Cuba and had reportedly died

*(Footnote continues on the following page.)*

Second, the USVI is limited by the fact that it does not know, beyond guesswork, who has actually provided testimony in this case. As the USVI points out, in <u>Martindell</u>, the Government could easily leverage its investigatory powers in part because it had already been provided with a list of witnesses who had testified in the relevant civil action.  <u>See</u> 594 F.2d at 293 ("At Judge Conner's request, counsel for the defendants in the action furnished the Department of Justice . . . with a list of 14 witnesses who had been deposed in the case.").  Here, the USVI has no such knowledge. Accordingly, the USVI has a compelling need for a list of those individuals who provided testimony in this case.  The USVI may subpoena and depose those individuals in due course.

---

there--access to a sealed envelope purportedly containing instructions from the former judge (who had also died since the judgment) regarding what to do in the event that the fraudster returned to the United States.  The Court denied movant's request for modification because the movant had not demonstrated an extraordinary circumstance or compelling need justifying the relief.

From the Court's read, however, <u>IIT</u> is inapplicable. Critical to the Court's conclusion that the movant had not demonstrated a compelling need for modification was the fact that the sealed envelope did not in fact contain instructions about how to handle the former defendant's return to the United States at all, but rather various confidential settlement agreements ostensibly unrelated to the core issues on the motion.  With that in mind, Judge Pauley noted that "[t]he death of a fugitive fraudster does not create the kind of compelling need or extraordinary circumstances to warrant unsealing confidential settlement agreements." <u>IIT</u>, 2009 WL 3094942, at *1.  This makes sense, because the former-defendant's death would not have played one way or another into any need to see the settlement agreements.

While the Court will permit disclosure to the USVI of (1) Epstein's deposition transcript and the attached exhibits, and (2) a list of the individuals who have provided testimony in this case, it remains mindful of its previous recognition of "the gravity of the privacy interests of . . . nonparties who are alleged victims of Jeffrey Epstein's sexual abuse." (Order, dated Sept. 9, 2020 [dkt. no. 1113], at 7.) Those interests weigh no less heavily now that it is law enforcement seeking modification of the protective order instead of a private litigant. In order to protect those interests, the USVI proposes redacting the identities of otherwise-anonymous Epstein victims in any disclosure and providing the contact information of their counsel. (USVI Reply Br. at 10.) That solution, however, is unwieldy given the fact that many victims may be unrepresented. As such, the Court finds that a simple sealed disclosure of the list of deponents, including victims, to the USVI is appropriate here.

In order to make crystal clear to the USVI the significance of the privacy interests here, the Court will provide separately to the USVI a copy of the sealed order explaining why it excluded from its prior production to Mr. Dershowitz materials related to a certain nonparty Doe with "particularly weighty privacy interests" in the sealed materials at issue in this case. (See Order, dated Sept. 9, 2020 [dkt. no. 1113], at 4 n.2.) Further, the Court expects the USVI to conduct its investigation in a manner

that properly respects the wellbeing of Epstein's victims and any victim's desire to remain out of the public eye.

IV.  <u>CONCLUSION</u>

In light of the foregoing, the USVI's motion to intervene in this case (dkt. no. 1110) is <u>GRANTED</u> and its motion for confidential access to sealed materials (dkt. no. 1110) is <u>GRANTED IN PART</u> and <u>DENIED IN PART</u>.  No later than December 10, 2020, Plaintiff Virginia Giuffre shall provide to the USVI, under seal:

1. A copy of the transcript of Jeffrey Epstein's deposition, as well as the exhibits attached thereto.

2. A list of all individuals who have previously been deposed in this case.

The USVI may use these materials solely in connection with the USVI's pending Virgin Islands Criminally Influenced and Corrupt Organizations Act enforcement action against the Estate of Jeffrey E. Epstein and several Epstein-controlled entities, as described in the USVI's CICO Complaint. (See CICO Complaint, dated Feb. 11, 2020 [dkt. no. 1111-1].)  Counsel for the USVI shall be subject to sanctions for any unauthorized public disclosure of the identities of Epstein's victims.

Separately, the Court shall provide to the USVI a copy of a prior order, docketed under seal, explaining why the Court-ordered disclosure to Mr. Dershowitz of materials mentioning him (See Order, dated Sept. 9, 2020 [dkt. no. 1113]) would exclude material

16

produced by or material (or portions of material) discussing a certain nonparty Doe with particularly weighty privacy interests (id. at 4 n.5).

**SO ORDERED.**

Dated:     New York, New York
           November 25, 2020

_Loretta A. Preska_
_____
LORETTA A. PRESKA
Senior United States District Judge