# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

VIRGINIA L. GIUFFRE,

      Plaintiff,

v.

GHISLAINE MAXWELL,

      Defendant.

**15-cv-07433-RWS**

-------------------------------------------------X


### DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR RULE 37(b) &(c) SANCTIONS FOR FAILURE TO COMPLY WITH <u>COURT ORDER AND FAILURE TO COMPLY WITH RULE 26(a)</u>

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
East 10th Avenue
Denver, CO 80203
303.831.7364

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

BACKGROUND FACTS .......................................................................................................... 2

ARGUMENT ............................................................................................................................. 9

   A.     Plaintiff's Cannot Avoid Sanctions through Belated Production of Documents and Information Improperly Withheld....................................................................................... 11

   B.     Ms. Maxwell has been Prejudiced, Although Prejudice Is Not Required for Imposition of Rule 37 Sanctions .......................................................................................... 133

   C.     Preclusion of Plaintiff's Claims for Emotional Distress and Physical and Psychological Damages is Warranted ...................................................................................... 14

CERTIFICATE OF SERVICE ............................................................................................... 17

Defendant Ghislaine Maxwell ("Ms. Maxwell") files this Reply ("Reply") to Plaintiff's Response in Opposition to Defendant's Motion for Rule 37(b) &(c) Sanctions for Failure to Comply with Court Order and Failure to Comply with Rule 26(a) ("Response"), as follows:

## INTRODUCTION

Plaintiff filed this Complaint in September 2015 seeking $30 million of non-economic damages related to her psychological damage from a defamation which, she claims, occurred in January 2015. In her Rule 26 disclosures served November 11, 2015, she included not a single treating physician to support this claim. As she now admits, Plaintiff only began to request her own medical records on April 5, 2016 – 15 months after the supposed defamation, 8 months after filing suit, 8 weeks after the defense requested the records, 2 weeks after the Motion to Compel was filed, and 1 day after she informed the Court that she had "already sent releases to all of her medical care providers." The records Plaintiff requested on April 5, and produced mere days before her deposition on May 3, omitted *more than 15 treatment providers*, including ones known specifically to Plaintiff's counsel and other doctors Plaintiff clearly knew of because she had seen just them days earlier.

Plaintiff's Response is devoted to (a) extraneous, irrelevant and selective quotations from witnesses who know nothing about her medical records or treatment,[1] and (b) incomplete and inaccurate representations that she has, since the Court's Order, disclosed some of her providers and produced some of their records. Essentially, Plaintiff argues that her failure to identify her

---

[1] In her own flagrant attempt to direct attention away from sanctionable litigation tactics, Plaintiff includes in her "Introduction" and her "Conclusion" inaccurate, incomplete, misleading deposition testimony from certain witnesses in this case. That testimony has no bearing on the issue of whether Plaintiff violated a Court Order to produce medical records (indeed none of the witnesses discussed know a single thing about Plaintiff's medical conditions), and Plaintiff's Introduction and Conclusions should be stricken as impertinent and scandalous. Similarly, Plaintiff devotes pages to inaccurate accounts of Ms. Maxwell's productions and discovery, which also should be stricken as irrelevant and impertinent.

own treatment providers and produce their records was the product of excusable neglect: a failed memory, doctors who will not respond to two inquiries, and other factors beyond her control.

In fact, Plaintiff still has not fully answered Interrogatory Numbers 12 and 13, which seeks the identities of her providers, the dates and nature of her treatments, and releases for each. Nor has she acted in good faith to comply with the Court Order that she do so; the majority of the newly produced records only came *after* the defense conducted independent investigation, learned of other providers' identities, brought it to Plaintiff's attention, gave her releases to sign, and then, and only then, did Plaintiff "provide releases" or "disclose records." Her claimed lack of memory as to the names of all of her providers "going back decades," does not excuse her failures. The doctors at issue are ones she had seen in the *days* and *weeks* immediately preceding her incomplete Interrogatory response and, ███████████████████████, are well known personally to her counsel.

Rule 26 is designed to place the burden on a party claiming damages to disclose persons with knowledge related to their claims. Rule 37 is designed to encourage parties to comply with Court orders and discovery obligations; fault only comes into play when assessing the severity of the sanction. Plaintiff has not undertaken a good faith effort to comply with the Court's Order or with Rule 26's mandate concerning her astronomical request for non-economic damages.

<u>**BACKGROUND FACTS**</u>

Ms. Maxwell identified in her Motion specific categories of documents that still have not been disclosed despite the Court Order to do so:

1. Records from Drs. Donohue, Hayek, Kutikoff, Wellington Imaging Associates, Growing Together, post-2011 records from Judith Lightfoot and complete records from Dr. Olson.

2. Responses to Interrogatory Numbers 12 and 13, specifically with regard to dates and nature of treatment for Drs. Donohue, Hayek, Kutikoff, Wellington Imaging Associates, Growing Together and Dr. Olson.

Motion at 5.  Since filing the Motion, ***additional*** failures have been identified.  Specifically:

3. Records from:  (a) Dr. John Bowen, (b)  (g) medical records of a non-"psychological nature" from Judith Lightfoot.

4. Responses to Interrogatories with respect to the above treatment providers as well as Dr. Peter Del Mar (a newly disclosed provider) who she saw in November 2015.

Plaintiff has failed to demonstrate good faith in disclosing the doctors nor in retrieving their records in compliance with this Court's Order and Rule 26's mandates.

**<u>Drs. Donohue and Del Mar</u>**

Plaintiff claims she "innocently remembered" Dr. Donohue during her May 3 deposition though she had not remembered him a few days earlier for her April 29 Interrogatory Responses. Plaintiff produced records for Dr. Donohue on <u>June 28</u>, the same day her Response was filed regarding this Motion.  Dr. Donohue's records note the following from April 12:  "I received a letter from her lawyers in the US yesterday requesting her medical records.  I will include today's consult notes in the file to be sent.  However, prior to today, I had never seen her before as a patient."  *See* Menninger Decl., Ex. O.  Thus, Plaintiff sent a release to a doctor *before* she saw him, and then he provided records to her (by his own account) on April 12 that were not produced until June 28.  Finally, while Plaintiff claims she innocently "forgot" about Dr. Donohue when signing interrogatories on April 29, she saw him just *17 days* earlier.

The Donohue records reveal a completely new doctor as well.  On November 19, 2015, two months after filing this case,

██████ Plaintiff without explanation still has not formally disclosed Dr. Del Mar in her Interrogatory Responses nor in her Rule 26 disclosures.

Dr. Donohue is indisputably significant in his relevance to this case. ████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████. Yet, at every turn, Plaintiff has failed to disclose these treatment providers or provide their records.

**Dr. Hayek**

Plaintiff claims that (a) she was treated by Dr. Hayek "over seven years ago" (Resp. at 9) but then also (b) lists Dr. Hayek in response to Interrogatory No. 12, which asks Plaintiff to identify health care providers who treated Plaintiff subsequent to any alleged defamation. Menninger Decl. Ex. F. Plaintiff claims that she attempted to get records from Dr. Hayek on

March 8 and April 28, has emailed and called the doctor but "has no input on Dr. Hayek's document retention policies."

If the Court accepts Plaintiff's representation that she has not seen Dr. Hayek in 7 years, Plaintiff must explain her failure to respond to Interrogatory No. 13, seeking *inter alia*, the date of treatments, nature of treatments, etc. for any provider like Dr. Hayek who has seen Plaintiff prior to the defamation.  Plaintiff has not done so.

**<u>Kutikoff, Wellington Imaging, Growing Together</u>**

Plaintiff indisputably has done nothing to retrieve her medical records from Dr. Karen Kutikoff, from Wellington Imaging, or from Growing Together, nor has she responded to the Interrogatory asking for the dates and nature of her treatment with them and their contact information. *Id.*

In fact, Plaintiff did not disclose these providers, all of whom Plaintiff saw in the years 1999-2002; it was the defense who served a subpoena on Mar-a-Lago for Plaintiff's employment records, got the names of Kutikoff and Wellington Imaging from their records and then *provided them to Plaintiff.* ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ She also has not offered any explanation for her failure to do the same, instead putting the burden on the defense to obtain her old records.

**Ms. Lightfoot**

Plaintiff responds that she innocently "remembered" Ms. Lightfoot during her deposition and that she *has* produced Ms. Lightfoot's records. ███████████████████

██████████████████████████████████████████████████

███████████ It defies common sense that she only "remembered" someone on May 3, 2016 that she talks to "every Monday." Moreover, Plaintiff sought her records on May 4, 2016 and produced a 2011 intake form on May 12, 2016. Now, on the date she filed her Response, she produced a document stating that "all records of a psychological nature have been presented." Are there records of Ms. Lightfoot of a non-"psychological nature"?

Plaintiff claims that Lightfoot has "produced all of Ms. Giuffre's records, thereby indicating that she does not keep more current records." (Resp. at 11). The Interrogatories are not limited to the name of the health care provider or their records. The Interrogatories seek "a. the Health Care Provider's name, address, and telephone number; b. the type of consultation, examination, or treatment provided; c. the dates You received consultation, examination, or treatment; d. whether such treatment was on an in-patient or out-patient basis; e. the medical expenses to date; f. whether health insurance or some other person or organization or entity has paid for the medical expenses; and g. for each such Health Care Provider, please execute the medical and mental health records release attached hereto as Exhibit A." Menninger Decl. Ex. F.

The claims that neither Ms. Lightfoot nor Plaintiff have current records falling within the scope of these requests makes no sense. ████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████  ██████████████████████████████████████

Plaintiff still has failed to include Ms. Lightfoot, the dates of her treatment, the nature of her treatment, or the medical expenses in her Interrogatory responses. ███████████

██████████████████████████████████████████████████████

████████████████████

Dr. Olson and the Five Other Colorado Doctors

Plaintiff did disclose Dr. Olson and she provided *some* of his medical records on April 29. But that is only part of the story. Before any such records were produced, it was the defense who served a subpoena on Dr. Olson for his records and his deposition testimony on May 24. *See* Menninger Decl., Ex. Q. Subsequently, Dr. Olson's counsel informed defense counsel that there were both additional records for Dr. Olson that were housed with Centura Health (his hospital's owner) and also that Centura had records related to Plaintiff that were not related to Dr. Olson. Defense counsel who brought all of this to the attention of Plaintiff's counsel, as their own records reveal. *See* Decl. of McCawley, Ex. 6 at 1-6. Only because the *defense* found Plaintiff's medical providers in Colorado, *and gave the release to Plaintiff*, were the other Colorado doctors revealed. *Id.* Based on the release, sent by the defense to Plaintiff, additional records from Centura were produced on May 25 and June 1, after Dr. Olson's deposition. Those records reveal that Plaintiff was seen three other times at the hospital in Colorado, none of which

---

[2] It was Ms. Lightfoot's accountant who responded to the June 27, 2106 query from Plaintiff's counsel, making a lack of explanation regarding the financial aspect all the more telling. Menninger Decl. Ex. T.

█████████████████████████████████████████████████████

█████████████████████████████ ▪ ███████████████████████

█████████████████████████████████████████████████████

████████████████████████████████

Plaintiff still has failed to include Ms. Lightfoot, the dates of her treatment, the nature of her treatment, or the medical expenses in her Interrogatory responses. ████████████████

█████████████████████████████████████████████████████

████████████████████████████

Dr. Olson and the Five Other Colorado Doctors

Plaintiff did disclose Dr. Olson and she provided *some* of his medical records on April 29. But that is only part of the story. Before any such records were produced, it was the defense who served a subpoena on Dr. Olson for his records and his deposition testimony on May 24. *See* Menninger Decl., Ex. Q. Subsequently, Dr. Olson's counsel informed defense counsel that there were both additional records for Dr. Olson that were housed with Centura Health (his hospital's owner) and also that Centura had records related to Plaintiff that were not related to Dr. Olson. Defense counsel who brought all of this to the attention of Plaintiff's counsel, as their own records reveal. *See* Decl. of McCawley, Ex. 6 at 1-6. Only because the *defense* found Plaintiff's medical providers in Colorado, *and gave the release to Plaintiff*, were the other Colorado doctors revealed. *Id.* Based on the release, sent by the defense to Plaintiff, additional records from Centura were produced on May 25 and June 1, after Dr. Olson's deposition. Those records reveal that Plaintiff was seen three other times at the hospital in Colorado, none of which

---

[2] It was Ms. Lightfoot's accountant who responded to the June 27, 2106 query from Plaintiff's counsel, making a lack of explanation regarding the financial aspect all the more telling. Menninger Decl. Ex. T.

7

were ever included in any fashion on her Interrogatory Responses. Indeed, to date, complete Interrogatory Responses relating to these treatments have never been provided.

Plaintiff makes two extraordinary claims with regard to these records. First, she claims she "produced the medical records associated with her emergency treatment" and thus has not deliberately hid or failed to disclose these records. Resp. at 4; *see also id.* ("Ms. Giuffre made those records available to Defendant."). The key facts are tellingly omitted: Plaintiff only produced those records after Ms. Maxwell independently learned of the three hospital visits, after defense counsel contacted Centura's lawyers, obtained a release, sent it to Plaintiff and then she signed it. These medical care providers are all people to whom Plaintiff made statements concerning her mental health in 2015, the months immediately following the alleged defamation.

████████████████████████████████████████████████████████

████████████████ Plaintiff's failure to ever include these providers -- or the fact that she received emergency room medical treatments in March, April and May 2015 – is more than simple oversight. Moreover, Plaintiff did not mention any of these providers in her deposition testimony, as Plaintiff falsely claims. Resp. at 6.

Second, Plaintiff claims she did not include these records because she did not "learn, know or remember off the top of her head the names of the Emergency Room staff." Resp. at 4. This claim is spurious: Plaintiff was seen *three times* in the hospital in 2015 and could not have simply forgotten to mention that fact at all in her April 2016 Interrogatory Responses or to call the hospital and get her own records related to the incidents. ████████████████████

████████████████████████████████████████████████████████

████████████ ████████████████████████████████████████

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. So, even if Plaintiff did not remember, she has offered no explanation for her counsel to "forget" about her medical treatment for that incident.

## ARGUMENT

Rules 26, 33, 34 and 37 do not make it the opposing party's obligation to ferret out information that is already in the possession, custody, and control of a party or their counsel. Before Court intervention, Plaintiff refused to answer a single interrogatory related to her medical treatment. After Ms. Maxwell filed a Motion to Compel, Plaintiff (a) represented to this Court that she had already sent releases for the records when she had not, and (b) sought only a few records from a few treatment providers, omitting health care providers she had recently seen just months or weeks prior to responding to the Interrogatory.

It was only through Defendant's independent investigation, subpoenas, and diligence that the following treatment providers became known at all in this case: Drs. Devanasan, Kutikoff, Wellington Imaging, Growing Together, Drs. Del Mar, Streeter, Geiger, Heaney, Oliver, and Centura Health. There are still numerous others who have not been disclosed and from whom records have not been obtained.▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiff has failed to include these providers, as well as Drs. Streeter, Geiger, Heaney, and P.A. Oliver in her Interrogatory responses that directly requested all health care providers from 1999 until the present, which this Court ordered to be answered.

---

[3] These records are relevant in that Plaintiff has complained to two providers, Drs. Harris and Olson, ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮

In *Cine Forth-Second St. Theatre Corp v. Allied Artists Pictures Corp*, 602 F.2d 1062, 1067 (2d Cir. 1979), the Second Circuit "held it was proper to preclude plaintiff from offering proof of damages as a sanction for its failure to provide adequate answers to damages interrogatories even if plaintiff was not guilty of willfulness, so long as it was guilty of gross negligence." Wright, Miller and Marcus, FEDERAL PRACTICE AND PROCEDURE § 2284 (2010). "Negligent, no less than intentional, wrongs are fit subjects for general deterrence. And gross professional incompetence no less than deliberate tactical intransigence may be responsible for the interminable delays and costs that plague modern complex lawsuits." *Cine Forty-Second Street*, 602 F.2d at 1067.

In this case, Plaintiff has acted either willfully or with gross negligence in complying with the Court's Order and her Rule 26 obligations. When a party files a single count defamation suit seeking $30 million in non-economic damages, competent counsel will generally have already gathered their client's medical records or set about doing so soon after the case is filed. Indeed, in fulfilling Rule 11 pleading obligations, medical records that either support (or disprove) the requested damages should be considered *prior* to filing suit.

Here, the bulk of Plaintiff's failures to comply with the Court Order concern medical professionals that Plaintiff has seen subsequent to the alleged defamation in January 2015 and during the pendency of her lawsuit against Ms. Maxwell. There was the ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████████████████████

████████████████████████████████████████. With respect to

these providers, it has largely been through defense counsel's persistence that Plaintiff has

provided the names of two and records from the others. As demonstrated in the attached chart,

with respect to the majority of medical records, they have only been provided once uncovered by

defense counsel, and many have yet to be provided. *See* Menninger Decl., Ex. R. This is a

blatant violation of discovery obligations and this Court's Order and Plaintiff should be

sanctioned.

     Plaintiff provides two responses to the actual substance of the Motion 1) there is no harm

because ***once discovered*** by the defense, medical releases "that have been requested" have been

signed and the documents have been produced; and 2) there is no prejudice because they have

offered to permit the re-deposition of Plaintiff on newly revealed medical providers and

belatedly produced documents. The law does not permit a Plaintiff to willfully violate a Court's

order, fail to properly respond to interrogatories by providing incomplete and inaccurate

information, and then avoid sanctions simply because they provide a portion of the information

once they are caught by the opposing party.

    **A.**    **Plaintiff's Cannot Avoid Sanctions through Belated Production of Documents and Information Improperly Withheld**

    Plaintiff's primary argument for avoidance of Rule 37 sanctions is that "Ms. Giuffre has

executed releases for all of the providers Defendant ***requested.***" *Response* at p. 1, 9, 17, 18 and

21. Plaintiff is careful to include the phase "requested" by Defendant because the only releases

she has provided are for medical providers specifically identified by name by Defendant that

have been uncovered through Defendant's independent investigation. But, that is not compliance

with the discovery obligations or Defendant's Interrogatories. The Interrogatories at issue asked

*Plaintiff* to identify all of her health care providers **and provide a release for each of them**. Menninger Decl. Ex. F, Interrogatories 12 and 13. Plaintiff failed to identify all of her health care providers in her Response and still has not done so; she only provided releases for specific providers *discovered by defendant* through independent investigation and specifically requested. Plaintiff cannot be permitted to hide the identity of treatment providers and then avoid sanctions by complying once caught in her improper conduct.

"The sanctions imposed by Rule 37 for obstructing or failing to comply with discovery procedures would be hollow indeed if they could be imposed only on those whose efforts at concealment proved to be successful. Plaintiff may not properly escape the consequences of his own wrongful conduct because the defendants were diligent and persistent enough to overcome the obstacles which he placed in their path." *Nittolo v. Brand*, 96 F.R.D. 672, 676-77 (S.D.N.Y. 1983); *Penthouse Intl., Ltd. v. Playboy Enterprises, Inc.,* 663 F.2d 371, 390 (2d Cir. 1981) (affirming dismissal pursuant to Rule 37 where plaintiff refused to produce certain records in violation of court discovery order and where false testimony, material misrepresentations by counsel and foot-dragging were used in an effort to prevent defendant from getting at the relevant records, despite subsequent production of the records); *Radetsky v. Binney & Smith, Inc.*, No. 85 CIV. 4379 (PNL), 1989 WL 234026, at *35 (S.D.N.Y. Dec. 13, 1989) (recommending dismissal of the case under Rule 37, despite the fact than many of documents withheld had subsequently been produced based on the defense's investigation, because "Plaintiff's continued obstreperous conduct has prejudiced defendant's ability to develop his case and resulted in additional expense to the litigants and the court system.").

**B.** **Ms. Maxwell has been Prejudiced, Although Prejudice Is Not Required for Imposition of Rule 37 Sanctions**

Likewise, Plaintiff's willingness to be re-deposed on belatedly disclosed medical treatments, medical records, and treatment providers is not relevant to the question of Rule 37 sanctions, nor does it moot the issue. First, it does not fully cure the discovery abuses. As demonstrated above, the belatedly disclosed records produced on the day of the Response to this Motion reveal multiple intervening causes of Plaintiff's claimed medical and emotional distress damages. ████████████████████████████████████████████

████████████████████████████████████████

████████████████████. The defense did not have this information prior to depositions of other medical providers or deponents and could not question them on these issues. While the deposition period has been extended for a month, there is insufficient time to: a) track down additional and remaining medical providers and records; b) conduct an orderly examination of their records; c) determine which providers are the most necessary to depose given the remaining number of depositions available and the location of several of the providers in Australia; or d) re-depose individuals who should have been questioned on these issues. Simply re-opening Plaintiff's deposition does not cure the prejudice caused by the belated productions.

Nor does the belated disclosure of certain records cure this prejudice or weigh against the imposition of Rule 37 sanctions. The Second Circuit has "consistently rejected the 'no harm, no foul' standard for evaluating discovery sanctions." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010). The purpose of Rule 37 goes beyond merely curing prejudice. It also serves a specific and general deterrent effect. *Id.* (citing *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)). As the Second Circuit noted "[e]ven when a party finally (albeit belatedly) complies with discovery orders after sanctions are imposed, these

purposes may still justify the sanctions [of default judgment]." *Id.* To permit a party to avoid Rule 37 sanctions based on the purposeful avoidance and delay in providing key relevant and discoverable information would disserve the deterrence purpose of Rule 37. "[I]f parties are allowed to flout their obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules. . . . Under the deterrence principle of [*National Hockey League*], plaintiff's hopelessly belated compliance should not be accorded great weight. Any other conclusion would encourage dilatory tactics, and compliance with discovery orders would come only when the backs of counsel and the litigants were against the wall." *Id.* (quoting *Cine Forty–Second St. Theatre,* 602 F.2d at 1068).

## C. Preclusion of Plaintiff's Claims for Emotional Distress and Physical and Psychological Damages is Warranted

Plaintiff's attempt to distinguish the authority warranting the preclusion of her damages claims for emotional distress and physical and psychological injury is unavailing. As proven by her most recent productions, her discovery abuses are equally as purposeful, prejudicial, and sanctionable as those in the cited cases where the Court has dismissed the cases entirely.

Since this Court's Order at the April 21, 2016 hearing, despite the Plaintiff's counsel representation to undersigned counsel and this Court that the identities and all medical records for Plaintiff's treatment providers after the alleged defamation had been provided, *fifteen additional treatment providers have been disclosed, at least nine of them after Plaintiff's deposition. This is not, as Plaintiff argues, a simple failure of memory related to treatment* "years and years ago." These treatment providers had all seen Plaintiff literally days, weeks, and

months before the Court hearing.  These are treatment providers who all have discoverable information on alternate causes of Plaintiff's alleged injuries.

*At a minimum,* Plaintiff was and is capable of identifying the physicians and psychologists who have treated her; the matter is fully in her control.  These were providers who she is currently seeing or has seen in the recent past, who have prescribed her medication, and who are treating her for emotional and mental issues, the very conditions for which she seeks damages.  There can be no argument that the failure to identify and produce records from these doctors was anything but an intentional and willful violation of the discovery rules and this Court's Order.

This is but one example of Plaintiff's discovery misconduct.  Plaintiff repeatedly has produced requested documents only when the non-production of the documents had been or was about to be discovered.  In addition to the examples discussed in the opening brief, most recently, the day prior to the deposition of Detective Joseph Recarey (noticed by Plaintiff), over 650 pages of previously undisclosed documents relating to his investigation of Jeffery Epstein were provided by Plaintiff.  This late production occurred despite the fact that Defendant requested all documents relating to communications with or investigations by law enforcement, which Plaintiff claimed she had produced.[4]

Plaintiff's pattern of discovery abuses and failure to disclose necessary and required information makes clear that no lesser sanction will deter Plaintiff's continuing discovery abuses. The purpose of Rule 37 sanctions, "to 'ensure that a party will not benefit from its own failure to comply,' to 'obtain compliance with a particular order issued,' and to 'serve a general deterrent

---

[4] Plaintiff lodged an objection to communications regarding "ongoing" investigations, but did not object to production of documents regarding Det. Recarey's 2006 investigation.  Moreover, weeks prior to the deposition, Plaintiff amended her Rule 26 disclosures to include these as documents on which she planned to rely, yet failed to produce them until the day before the deposition, despite multiple requests for production of all newly listed Rule 26 documents.

effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.'" *Szafrankowska v. AHRC Home Care Servs., Inc.,* 2008 WL 186206, *1 (S.D.N.Y. Jan. 22, 2008) (quoting *Update Art,* 843 F.2d at 71); *see also S. New England,* 624 F.3d at 149.

Any action short of precluding Plaintiff's recovery of claims for physical, psychological and emotional distress damages will fall short of serving Rule 37's purpose to "ensure that a party will not benefit from its own failure to comply" with court orders. *S. New England,* 624 F.3d at 149. To permit Plaintiff to get away with her purposeful non-compliance would reward her by allowing her to conceal relevant discoverable information. Some of this information may be dispositive on the lack of causation between Ms. Maxwell's alleged defamatory statement and Plaintiff's alleged physical symptoms and emotional distress.

WHEREFORE, for the forgoing reasons and those set forth in the Motion, Ms. Maxwell request that the relief requested in the Motion be granted.

Dated: July 8, 2016

Respectfully submitted,

*/s/ Laura A. Menninger*
Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303.831.7364
Fax: 303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*

**CERTIFICATE OF SERVICE**

I certify that on July 8, 2016, I electronically served this *REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR RULE 37(B) &(C) SANCTIONS FOR FAILURE TO COMPLY WITH COURT ORDER AND FAILURE TO COMPLY WITH RULE 26(A)* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

J. Stanley Pottinger
49 Twin Lakes Rd.
South Salem, NY 10590
StanPottinger@aol.com

*/s/ Nicole Simmons*
Nicole Simmons