UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- x
                            :

UNITED STATES OF AMERICA,      :

            v.           :     20 Cr. 330 (AJN)

                            :

GHISLAINE MAXWELL,        :

      Defendant.         :

                            :

-------------------------------------------------- x

**MEMORANDUM OF GHISLAINE MAXWELL
IN SUPPORT OF HER MOTION UNDER THE DUE PROCESS CLAUSE TO
SUPPRESS ALL EVIDENCE OBTAINED FROM THE GOVERNMENT'S SUBPOENA
TO ▮▮▮▮▮▮▮▮▮▮ AND TO DISMISS COUNTS FIVE AND SIX**

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Mark S. Cohen
Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue New
York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100


*Attorneys for Ghislaine Maxwell*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

TABLE OF EXHIBITS ................................................................................................... iv

INTRODUCTION AND SUMMARY OF THE ARGUMENT .................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

    A.    The Protective Order in *Giuffre v. Maxwell* .................................................... 2

    B.    Maxwell's April and July 2016 depositions ..................................................... 4

    C.    The Settlement And ███████████ Refusal To Comply With The Protective Order ..... 6

    D.    The Government's False Statements To ███████████ ............................................. 6

    E.    ███████████ Separately Rejects An Identical Gambit By The Government ............... 10

ARGUMENT ................................................................................................................. 11

    A.    Pursuant To Its Inherent Power, This Court Should Suppress The Evidence Obtained From ███████████, And Dismiss Counts Five And Six, Which Are The Fruits Of That Evidence ................................................................................................. 11

        1.    The role of protective orders in civil litigation. ........................................ 11

        2.    The government circumvented the protective order. ................................... 12

        3.    The government violated due process. ....................................................... 14

        4.    This court possesses the inherent authority to order suppression. .............. 15

    B.    At A Minimum, This Court Should Order A Hearing At Which Maxwell May Inquire Into The Circumstances Surrounding The Government's Misrepresentations To ███████████ ........................................................................................... 16

CONCLUSION .............................................................................................................. 16

Certificate of Service ................................................................................................... 18

i

# TABLE OF AUTHORITIES

**Cases**

*Benkovitch v. Gorilla, Inc.*, No. 2:15-cv-7806 (WJM), 2017 WL 4005452 (D.N.J. Sept. 12, 2017) .................................................................................................................................. 17

*Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019) ......................................................... 3, 6

*Chambers v. NASCO, Inc.*, 510 U.S. 32 (1991) ............................................................ 17

*Chemical Bank v. Affiliated FM Ins. Co*., 154 F.R.D. 91 (S.D.N.Y. 1994) .......................... passim

*Franks v. Delaware*, 438 U.S. 154 (1978) .................................................................... 18

*Giglio v. U.S.*, 405 U.S. 150 (1972) ............................................................................ 16

*Giuffre v. Maxwell*, 325 F. Supp. 3d 428 (S.D.N.Y. 2018) ............................................ 6

*Klein v. Weidner*, Civ. No. 08-3798, 2017 WL 2834260 (E.D. Pa. June 30, 2017) .................... 17

*Manhattan Review LLC v. Yun*, 16 Civ. 0102 (LAK) (JCF), 2017 WL 11455317 (S.D.N.Y. Sept. 21, 2017) .......................................................................................................... 17

*Martindell v. Int'l Tel. & Tel. Corp.,* 594 F.2d 291 (2d Cir. 1979) ........................................ 12, 13

*S.E.C. v. TheStreet.Com*, 273 F.3d 222 (2d Cir. 2001) ................................................... 12

*Stewart v. Hudson Hall LLC*, 20 Civ. 885 (SLC), 2020 WL 7239676 (S.D.N.Y. Dec. 9, 2020) . 12

*United States v. Avellino*, 136 F.3d 249 (2d Cir. 1998) .................................................. 16

*United States v. Cortina*, 630 F.3d 1207 (7th Cir. 1980) ................................................ 16

*United States v. Lambus*, 897 F.3d 368 (2d Cir. 2018) .................................................. 16

*United States v. Paredes-Cordova*, No. S1 03 CR. 987DAB, 2009 WL 1585776 (S.D.N.Y. June 8, 2009) .......................................................................................................... 18

*United States v. Rajaratnam*, 719 F.3d 139 (2d Cir. 2013) ............................................ 18

*United States v. Valentine*, 820 F.2d 565 (2d Cir. 1987) ............................................... 16

*Young v. United States*, 481 U.S. 787 (1987) .............................................................. 16

**Other Authorities**

Norman Mailer, "An Appeal to Lillian Hellman and Mary McCarthy," 5/11/80 New York Times
.................................................................................................................................... 2

Stephen Rex Brown, *Manhattan federal prosecutors declined to pursue Jeffrey Epstein and Ghislaine Maxwell case in 2016*, New York Daily News (Oct. 13, 2020) ............................... 9

**Rules**

Fed. R. Civ. P. 1 ...................................................................................................................... 12

**Constitutional Provisions**

U.S. CONST. amend. V ............................................................................................................. 15

## TABLE OF EXHIBITS

EXHIBIT A: Civil Protective Order

EXHIBIT B: Giuffre Protective Order Proposal

EXHIBIT C: ██████████████████████████████████████████

EXHIBIT D: Transcript, 3/26/2019

EXHIBIT E: Transcript, 4/9/2019

EXHIBIT F: ████████████████████

EXHIBIT G: ███████████████████████████████████████
██████████████████████

EXHIBIT H: ████████████████████

EXHIBIT I: ███████████████████

Ghislaine Maxwell moves to suppress all evidence the government obtained from a grand jury subpoena it issued to ███████████████████ and to dismiss Counts Five and Six, which are the fruits of that unlawful subpoena.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Counts Five and Six allege that Maxwell committed perjury during two civil depositions conducted by Boies Schiller in a defamation action it filed against Maxwell on behalf of one of the firm's clients. *Giuffre v. Maxwell*, Case No. 15-cv-7433 (LAP) (S.D.N.Y). A Protective Order entered in that case prohibited the parties and their lawyers from sharing confidential discovery material (including the two Maxwell depositions) with anyone else, *including* with the government and law enforcement. Faced with that Protective Order, the government issued a ███████████████████████████████████████████████ ██████████████████████████████. By proceeding *ex parte,* the government ensured that no one before the court would be able to contest the accuracy of its representations in support of its application.

The government then took full advantage. ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████████.

To paraphrase Mary McCarthy's philippic about Lillian Hellman, every word of the government's representation was untrue, "including 'and' and 'the.'"[1] The government knew what was in the █████████████████████ had provided that information well before the investigation began. The government did indeed have previous contact with ███████. And ███████ █████████ was *instrumental* in fomenting the Maxwell prosecution.

The record is surpassingly clear:  But for the █████████████████████████ ███████████████████ never would have permitted the circumvention of the civil Protective Order, on which Maxwell relied in agreeing to sit for her depositions. This Court therefore has both the authority and the duty to suppress the fruits of that misrepresentation, including the █████████████████████ and the two perjury counts based on those transcripts. If the Court is disinclined to exercise that inherent authority on the present record, Maxwell should be granted a hearing to examine the circumstances that resulted in the ████████████████████████ ████████████████.

## FACTUAL BACKGROUND

### A.  The Protective Order in *Giuffre v. Maxwell*

Counts Five and Six of the superseding indictment allege that Maxwell committed perjury during two civil depositions taken in *Giuffre v. Maxwell*, a civil defamation case Virginia Giuffre filed in 2015. Giuffre claimed that Maxwell defamed her when Maxwell's attorney-hired press agent denied as "untrue" and "obvious lies" Giuffre's numerous allegations, over the span of four years, that Maxwell had participated in a scheme to cause Giuffre to be "sexually abused and trafficked" by Jeffrey Epstein.

---

[1] *See* Norman Mailer, "An Appeal to Lillian Hellman and Mary McCarthy," 5/11/80 New York Times.

Giuffre, a public figure required to prove actual malice, had an uphill battle—even she was constrained to acknowledge that many of her public statements were false. Using a time-honored if unfortunate litigation tactic, her lawyers at Boies Schiller therefore sought to turn the lawsuit into a proxy prosecution of Epstein. Not surprisingly, discovery in the case was bitter, hard-fought, and wide-ranging. It spanned more than a year and included large document productions, many responses to interrogatories, and thirty-some depositions, including depositions of Giuffre and Maxwell as well as several third parties. *See Brown v. Maxwell*, 929 F.3d 41, 46, 51 (2d Cir. 2019) (explaining that discovery was "hard-fought" and "extensive" and noting that the court file, which includes only some of the documents created during discovery, totals in the "thousands of pages").

Giuffre sought and obtained a wide variety of private and confidential information about Maxwell and others, including information about financial and sexual matters. *Brown*, 929 F.3d at 48 n.22. Given the intimate and highly confidential nature of the discovery exchanged between the parties, the district court entered a stipulated Protective Order. *See* Ex. A. The Protective Order included a mechanism for one party to challenge another party's confidentiality designation (such a challenge never occurred) and provided that it did not apply to any information or material disclosed at trial. (Because the case settled before trial, that sole exception to the Protective Order was never triggered.)

Notably, Boies Schiller *sought* to add a "law enforcement" exception to the Protective Order, doubtless because the firm was eager to enlist the government in its campaign against Maxwell. In particular, Boies Schiller proposed to include a provision stating that "CONFIDENTIAL information shall not be disclosed or used for any purpose except the preparation and trial of this case *and any related matter, including but not limited to, investigations by law enforcement*." Ex. B ¶ 1(a)(4) (emphasis supplied). Maxwell flatly rejected

this proposal, and it was never included in the Protective Order. Ex. A.[2] To the contrary, the

order strictly limited the parties' disposition of Confidential Material, including at the conclusion

of the case. In particular, paragraph 12 of the order provided that:

> [a]t the conclusion of this case, unless other arrangements are agreed upon, each
> document and all copies thereof which have been designated as CONFIDENTIAL
> shall be returned to the party that designated it CONFIDENTIAL, or the parties
> may elect to destroy CONFIDENTIAL documents. Where the parties agree to
> destroy CONFIDENTIAL documents, the destroying party shall provide all parties
> with an affidavit confirming destruction.

Ex. A ¶ 12.

### B.  Maxwell's April and July 2016 depositions

Relying on the confidentiality protections of the Protective Order, Maxwell declined to

invoke her privilege against compulsory self-incrimination and agreed to testify at her April

2016 deposition. In that deposition, ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

Following the deposition, Giuffre moved to compel Maxwell to answer additional

intimate and personal questions that she had previously declined to answer. In support of the

motion, Boies Schiller assured the district court that "[s]uch questions are entirely appropriate in

the discovery phase of this case, particularly where any answers will be maintained as

confidential under the Protective Order in this case."

---

[2] This proposal was rejected because of justifiable concerns about the misuse and abuse of this
information by plaintiff and her lawyers including the selection and misleading leaking of confidential
material to the media, other false claimants, and the government.

The district court granted the motion. In requiring Maxwell to answer highly intrusive

questions "relating to [her] own sexual activity" and "her knowledge of the sexual activity of

others," the court held that Maxwell's "privacy concerns are alleviated by the protective order in

this case."

Secure in the belief that the Protective Order would be honored, Maxwell appeared at a

second deposition, in July 2016, and answered hundreds of pages worth of questions about ███

██████████████ and ████████████████████████ From the very first

question, Maxwell discussed ████████████████████████

████████████████████████████████████

████████████████████████. She was asked ██████████████████

████████████████████████████████████

████████████████████████████████████.

She was asked ████████████████████████████████

████████████████████████████████████

██████████████████████.

Count Six of the superseding indictment alleges that Maxwell provided false testimony

when she testified during her July 2016 deposition that: (1) she could not recall whether sex toys

or devices were used in sexual activities at Epstein's Palm Beach house; (2) she did not know

whether Epstein possessed sex toys or devices used in sexual activities; (3) she wasn't aware that

Epstein was having sexual activities with anyone other than herself when she was with him; and

(4) she never gave anyone, including Accuser-2[3], a massage.

---

[3] The indictment refers to the accusers as Minor Victim-1, Minor Victim-2, and Minor Victim-3.
We will refer to them as Accuser-1, Accuser-2, and Accuser-3.

### C.   The Settlement And Boies Schiller's Refusal To Comply With The Protective Order

In 2017, the parties settled the defamation claim, and the case was dismissed. *Giuffre v. Maxwell*, 325 F. Supp. 3d 428, 436 (S.D.N.Y. 2018), *vacated and remanded sub nom. Brown*, 929 F.3d 41. As the district court found, "a significant, if not determinative, factor" in reaching a settlement was its confidentiality. *Id*. at 446.

After the case was settled and concluded, Maxwell repeatedly invoked Paragraph 12 of the Protective Order and demanded that Giuffre either return or destroy all confidential information, including her deposition transcripts. Boies Schiller refused. ██████ ████████████████ ██████████ ████████████ ████ ██████████████████ █████████████ ████████████████████████████████.

### D.   The Government's False Statements To ████████████████

Only in August 2020, after she was indicted in this case, did Maxwell finally learn that the government had obtained the ██████████ file by grand jury subpoena. Maxwell also learned that, to overcome the strictures of the Protective Order, the government had instituted an *ex parte* proceeding before ████████████████████████████ (S.D.N.Y). ██████. Needless to say, neither Maxwell nor her attorneys were given the opportunity to oppose that application or to contest the government's representations in support of the application. This was all in direct violation of Paragraph 14 of the Protective Order, which provides that the order may be modified by the court only "for good cause shown *following notice to all parties and an opportunity to be heard*." Ex. A ¶ 14 (emphasis added).

In its *ex parte* application, the prosecutors professed that they had sought out ██████ ████████████████████████████████████████████████████████████

6

████████████████████████████████████████████████████████████████████

████████████████████████████████████████" That ████████████████████████ the

government claimed, indicated that the ████████████████████████████████████

████████████████████████████████████████ Nowhere did the government

acknowledge that ████████████ had in fact approached the prosecutors multiple times well

before the grand jury subpoena issued.

In March 2019, in the first appearance before ████████████, the Government

continued this refrain, ████████████████████████████████████████████████

████████████████ The prosecutor ████████████████████—which sought all ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

Ex. D, p 17. For all the government knew, according to the Assistant U.S. Attorney, what he was

seeking was ████████████████████████████ Ex. D, p 19.

The government appeared a second time before ████████████ in April 2019. Ex. E.

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████ Ex. E, p 2. The Assistant U.S. Attorney told ████████████████████████████

████████████████████████████████████████████, omitting mention of any

contacts between ████████████ and the government prior to that time:

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



Ex. E, 99 pp 2–3.

Those representations were false. At the time the government claims it began the investigation (█████████████████████), its knowledge of the civil case was *not* based exclusively on public filings. It knew that ███████ possessed relevant information because █████ had come to the government asking it to open an investigation. In particular, on February 29, 2016, AUSA Amanda Kramer met with attorneys from Boies Schiller, who "urged Kramer to open an investigation of" Epstein and Maxwell.[4] Then, after Maxwell's two depositions, David Boies himself apparently approached the government in the summer of 2016, asking "if the Southern District would consider charging Maxwell with perjury." *Brown*, *supra* n.2. Said Mr. Boies:

> "We were saying to anyone who would listen: We've got clients who were abused. Some of them were underage. We have the evidence. There's a whole record that's been developed. We can establish beyond any reasonable doubt there was a massive sex trafficking ring going on."

*Id.*

---

[4] Stephen Rex Brown, *Manhattan federal prosecutors declined to pursue Jeffrey Epstein and Ghislaine Maxwell case in 2016*, New York Daily News (Oct. 13, 2020), https://www.nydailynews.com/new-york/ny-jeffrey-epstein-maxwell-case-20201013-jmzhl7zdrzdgrbbs7yc6bfnszu-story.html.

At that time, however, the government did not act. Boies "was particularly frustrated by the failure to pursue a perjury charge [against Maxwell]," reported one person, who recalled him saying, "We have her dead to rights."[5] *Id.* All of this contradicts The government's representations to ██████████████, who specifically ████████████████████████████████ ████████████████████████████████

Reassured by the government that ████████████████████████ modified the Protective Order so that ████████████ could comply with the subpoena. Ex. F. ████████ ████████████ found that ████████████████████████████████████████████ ████████████████████████████████████████████. In making this finding, ████████ ████████ relied on the Assistant U.S. Attorney's misrepresentations, and she ████████████████ ████████████████████████████████ from the subpoena at issue in *Chemical Bank*. Said ████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████

Ex. G, p 21.

---

[5] Ms. Maxwell strenuously disagrees with Mr. Boies' comments.  We reference them here only to show their connection to the perjury counts that the government subsequently charged.

Contrary to the government's misrepresentations, ██████████ *did* foment the investigation (or at least it tried to). And the evidence of "collusion" between the government and ██████████ was ample, tracing to at least early 2016 and precisely designed to have Maxwell charged with perjury.[6] ███ ██████████ ██████████████

███████████████████████████████████████████

████████████████████████ ████████████████████

████████████████████████████

### E. ██████████ **Separately Rejects An Identical Gambit By The Government**

Around the same time that ██████████ granted the government's *ex parte* request, ██████████████ rejected an identical request from the government in a different civil case, ██████████████████████ recognized the government's conduct for what it was: an attempt to deprive Maxwell of notice and an opportunity to be heard. Ex. H. Indeed, ██████████ rebuffed the government even after it alerted her to ██████████ order. Ex. I. As ██████████ found, ██████████

████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████ Ex. H, p

6. ████████████████████████████—that ████████

████████ was all too eager for the government to investigate and prosecute Maxwell:

---

[6] Maxwell has not yet been provided discovery of whether ██████████ shared actual sealed materials or the contents of sealed materials during its meetings with the United States Attorney's Office in 2016. As noted below, the bare minimum that is required here is an evidentiary hearing to probe the extent to which ██████████ "colluded," in a *Chemical Bank* sense, with the prosecutor's office.



Ex. H, p 6.

## ARGUMENT

**A. Pursuant To Its Inherent Power, This Court Should Suppress The Evidence Obtained From ▮▮▮▮▮▮▮, And Dismiss Counts Five And Six, Which Are The Fruits Of That Evidence**

### 1.  The role of protective orders in civil litigation.

Protective orders serve a "vital function" in civil litigation. *Martindell v. Int'l Tel. & Tel. Corp.,* 594 F.2d 291, 295 (2d Cir. 1979). They promote "the 'secure the just, speedy, and inexpensive determination' of civil disputes, by encouraging full disclosure of all evidence." *Id.* (quoting Fed. R. Civ. P. 1). "If protective orders were easily modified . . . parties would be less forthcoming in giving testimony and less willing to settle their disputes." *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 230 (2d Cir. 2001). In particular, as here, "witnesses might be expected frequently to refuse to testify pursuant to protective orders if their testimony were to be made available to the Government for criminal investigatory purposes in disregard of those orders." *Martindell*, 594 F.2d at 295–96. Parties thus rely on protective orders, and courts strictly enforce them. *See, e.g.*, *Stewart v. Hudson Hall LLC*, 20 Civ. 885 (SLC), 2020 WL 7239676, at *2 (S.D.N.Y. Dec. 9, 2020) ("In the Second Circuit, there is a strict standard for modification of a protective order entered by a district court." (citation and quotation marks omitted)).

This case illustrates just how crucial a protective order is. The Maxwell depositions sought highly intrusive evidence of the most personal aspects of Maxwell's life. Her sexual practices. Her sexual preferences. Her sexual partners. In urging the district court to permit these extraordinary intrusions—in what should have been a simple defamation case—▮▮▮▮▮▮

expressly invoked the assurances of the Protective Order. So did the district court in permitting these intrusions and ordering Maxwell to sit for a second deposition. Maxwell likewise relied on the Protective Order in choosing to render such intimate details, rather than assert her Fifth Amendment privilege as she had every right to do.

And why shouldn't Maxwell have relied on the Protective Order? The central protection in the Order was that none of Maxwell's answers could be disclosed to the government. Boies Schiller had expressly sought a law enforcement exception but was rebuffed. Instead, the law firm was required either to return the confidential material or, at Maxwell's option, to destroy it. Maxwell had every reason to take that assurance seriously, even if ███████████ did not.

### 2.   The government circumvented the protective order.

Faced with a duly entered Protective Order—which quite deliberately *omitted* any "law enforcement" exception—the government had lawful options to pursue the confidential *Giuffre* discovery. It could have moved to intervene in the civil case and to amend the Protective Order. It could have issued a subpoena for the materials and given Maxwell an opportunity to respond. *Martindell*, 594 F.2d at 294. It could even have applied for a search warrant, assuming (counterfactually) that it could show probable cause in support of such a warrant.

The government did none of those things. Instead, ███████████  ███████████. This was not among the lawful options available to the government.

It cannot fairly be disputed that ███████████ ruling to amend the Protective Order was based on the government's misrepresentations. Immediately before issuing her decision, ███████████ held a hearing with the *sole purpose* of asking the prosecutor, ███████████ ███████████ stated reason for so inquiring was to ensure that the government and ███████████ had not coordinated as the parties

had in the *Chemical Bank* case. In no uncertain terms, ███████████ explained why she had

haled the prosecutor back into court:

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
█████████████████████████

Ex. E, p 2.

In *Chemical Bank,* a protective order precluded parties to a civil case from disclosing

confidential documents to others. 154 F.R.D. at 92–93. Despite this prohibition, counsel for the

defendant approached the Manhattan District Attorney's Office and suggested that it had

evidence of criminal violations relating to the case. *Id.* at 93. A grand jury issued a subpoena,

and the defendant produced to the government various confidential documents without

complying with any of the specific procedures or exceptions provided in the protective order. *Id.*

Once this collusion came to light, the district court reprimanded the defendant for its "disregard

of the [protective] order[]" and admonished its behavior as "contrary to the traditions of the Bar

which dictate that court orders be respected." *Id.*

In addressing the government's application here, ███████████ specifically asked

whether ███████████ had acted as the defendant did in *Chemical Bank*. The prosecutor omitted

any mention of his office's previous meetings with the firm, and falsely led the court to believe

that ███████████ had not encouraged its investigation. Reassured by the misrepresentations,

███████████ commented:

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

13

████████████████████████████████████████████
███████████████████████████

Had ████████████ known the truth, ████ likely would not have granted the government's application to modify the Protective Order to allow ████████████ to comply with the subpoena.

### 3.   The government violated due process.

The government's conduct cannot be squared with elemental due process. U.S. CONST. amend. V. Pursuant to this guarantee, "[t]he responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict." *Young v. United States*, 481 U.S. 787, 803 (1987). The government engages in misconduct and violates due process when it materially misrepresents facts before a court. *See United States v. Valentine*, 820 F.2d 565, 570 (2d Cir. 1987) (holding that the government violated due process and reversing conviction when the government mischaracterized the substance of grand jury testimony).

The prosecutor may well have known that his representations to ████████████ were false (or at best misleading). But the Assistant U.S. Attorney's personal knowledge doesn't matter. "An individual prosecutor is presumed . . . to have knowledge of all information gathered in connection with his office's investigation of the case." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998); *see also Giglio v. U.S.*, 405 U.S. 150, 154 (1972) ("The prosecutor's office is an entity and as such it is the spokesman for the Government. A promise made by one attorney must be attributed, for these purposes, to the Government."). At the barest minimum, a federal prosecutor has a duty to check the entire file to ensure that his representations to a federal judge, submitted on behalf of the office he serves and under oath, are true and complete. The Assistant U.S. Attorney did not discharge that basic function.

**4.   This court possesses the inherent authority to order suppression.**

Incident to its inherent power to superintend proceedings, this Court has the authority to suppress the fruits of the government's misrepresentation. *See, e.g.*, *United States v. Cortina*, 630 F.3d 1207, 1214 (7th Cir. 1980) ("The court has inherent authority to regulate the administration of criminal justice among the parties before the bar . . . . [by] exclud[ing] evidence taken from the defendant by willful disobedience of law." (citation omitted)); *United States v. Lambus*, 897 F.3d 368, 386 (2d Cir. 2018) ("It is within the court's inherent authority to suppress evidence gathered unlawfully in order to maintain the integrity of its own proceedings . . . ."); *Benkovitch v. Gorilla, Inc.*, No. 2:15-cv-7806 (WJM), 2017 WL 4005452, at *2 (D.N.J. Sept. 12, 2017) ("District courts have 'inherent authority' to impose a variety of sanctions, including . . . suppression of evidence . . . .").

It does not matter that the government made its misrepresentations to ███████████ and not directly to this Court. "As long as a party receives an appropriate hearing, . . . the party may be sanctioned for abuses of process occurring beyond the courtroom . . . ." *Chambers v. NASCO, Inc.*, 510 U.S. 32, 57 (1991). "Courts have held that inherent authority sanctions may be imposed for misconduct in another court where the misconduct is . . . in some way related to the case before the sanctioning court." *Klein v. Weidner*, Civ. No. 08-3798, 2017 WL 2834260, at *6 (E.D. Pa. June 30, 2017) (citation and alteration omitted); *Manhattan Review LLC v. Yun*, 16 Civ. 0102 (LAK) (JCF), 2017 WL 11455317, *7 n.3 (S.D.N.Y. Sept. 21, 2017) ("The inherent power . . . can punish conduct before a different court if it is intimately related to the relevant case." (citing *Klein*, 2017 WL 2834260, at *4)). Here, the government's misrepresentation to ███████████ was not simply "related" to Counts Five and Six; only by the government's deception was it able to obtain the factual predicate for those counts. Accordingly, the Court may exercise its inherent authority to suppress that evidence. And it should.

15

**B.  At A Minimum, This Court Should Order A Hearing At Which Maxwell May Inquire Into The Circumstances Surrounding The Government's Misrepresentations To** ▬▬▬▬▬▬

If the Court is disinclined to grant relief on the present record, then at a minimum it should hold an evidentiary hearing to probe the government's misstatements to ▬▬▬▬▬▬ and the extent to which the prosecutor's office had, in fact, coordinated with ▬▬▬▬ prior to the issuance of the grand jury subpoena. These factual issues go directly to whether the predicate finding for ▬▬▬▬▬▬ ruling—namely, that no *Chemical Bank* collusion had occurred—was mistaken. *See, e.g., United States v. Paredes-Cordova*, No. S1 03 CR. 987DAB, 2009 WL 1585776, at *1 (S.D.N.Y. June 8, 2009) ("An evidentiary hearing is normally required to address motions to suppress where a factual issue is in dispute.").

An evidentiary hearing is warranted for an additional reason as well: If it turns out that the prosecutor *knew* (or was reckless in not knowing) that ▬▬▬▬ had previously approached his office, both before and after the Maxwell depositions, in an effort to stir up a criminal prosecution and dangled the deposition transcripts as a carrot, then suppression would be warranted on that basis alone. *Cf. Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) ("*Franks* instructs a district court to hold a hearing to determine whether the alleged misstatements or omissions in the warrant or wiretap application were made intentionally or with reckless disregard for the truth and, if so, whether any such misstatements or omissions were material.").

## CONCLUSION

For these reasons, this Court should: (1) suppress all evidence the government obtained from ▬▬▬▬ and any other evidence derived therefrom; or (2) suppress the April and July 2016 depositions and all evidence derived therefrom; and (3) dismiss Counts Five and Six. Maxwell requests an evidentiary hearing on this Motion.

16

Dated: January 25, 2021

Respectfully submitted,

*s/ Jeffrey S. Pagliuca*

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364


Mark S. Cohen
Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue New York, NY 10022 Phone:
212-957-7600


Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

**Certificate of Service**

I hereby certify that on January 25, 2021, served by email, pursuant Rule 2(B) of the Court's individual practices in criminal cases, the *Memorandum of Ghislaine Maxwell in Support of Her Motion Under the Due Process Clause to Suppress All Evidence Obtained from the Government's Subpoena to* ███████████ *and to Dismiss Counts Five And Six* upon the following:

Alison Moe
Maurene Comey
Andrew Rohrbach
Lara Pomerantz
U.S. Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
Alison.moe@usdoj.gov
Maurene.comey@usdoj.gov
Andrew.Rohrbach@usdoj.gov
Lara.Pomerantz@usdoj.gov

*s/ Christian R. Everdell*