UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

VIRGINIA L. GIUFFRE,

    Plaintiff,

v.

GHISLAINE MAXWELL,

    Defendant.

**15-cv-07433-LAP**

---------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTIONS TO
UNSEALING SEALED MATERIALS RELATED TO DOCKET ENTRIES
345, 356, 362, 370, 422, 468 & 640**

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
303.831.7364

Defendant Ghislaine Maxwell files this Memorandum of Law in Support of Objections to Unsealing Sealed Materials Related to Docket Entries 345, 356, 362, 370, 422, 468 & 640, and states as follows:

## INTRODUCTION

Purportedly, this unsealing process is meant to afford "those monitoring the federal courts" access to "judicial records and documents," *i.e.,* "items … relevant to the performance of the judicial function and useful in the judicial process." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019).  Unsealing should not, however, advance the use of court files to "become a vehicle for improper purposes" or to reward "[u]nscrupulous litigants [who] can weaponize the discovery process to humiliate and embarrass their adversaries." *Id.* at 47.  One might accordingly expect that the public discourse following disclosure would turn on the soundness of Judge Sweet's rulings to the various motions based on the redactions that were finally revealed or the exhibits used to support those decisions.  Yet, to the contrary, following each round of unsealing thus far, not a single legal commentator nor media analyst has served the function of "monitoring the federal courts."  Rather, the online comments following the last round of unsealing in this case include:[1]

- "Guess the only thing she can do now is hang herself in her cell, which is under close guard."

- "I hope she has a good time in women's prison. She's going wind up in isolation because allowing her the general population is too risky. You earned it sweetie."

- "That's rich....that cow can burn in hell too for what she did."

---

[1] *See, e.g.* Shayna Jacobs and Rosalind S. Helderman, "Ghislaine Maxwell, in newly unsealed deposition, claimed to have no knowledge of Epstein's sex crimes," WASHINGTON POST Jan. 28, 2021) (located at https://www.washingtonpost.com/national-security/ghislaine-maxwell-deposition-jeffrey-epstein/2021/01/28/761d7738-60b0-11eb-afbe-9a11a127d146_story.html) (last visited Feb. 4, 2021).

- "Looks like probable perjury to me."

- "Liar, liar . . . ."

- "Perhaps she should rot and die... oops I mean... stay in prison until her memory improves . . . ."

- "Ah, has she ever heard of perjury?"

- "Gosh, Ghislaine Maxwell really seems to have a terrible memory! Even as far back as 2016 in that deposition: all those 'I don't recall's' and 'I am not aware's' sure seem to fly in the face of the numerous women who have come forward to assert that she groomed them for this despicable pedophile. I sincerely hope she rots in prison. It won't erase the trauma that all of his victims have experienced, but at least it will hold her accountable."[2]

If we have learned nothing else between November 3, 2020 and January 6, 2021, we have learned that the power of repetition of a false narrative instills lies with the illusion of truth.

Ms. Maxwell previously has argued to this Court, albeit unsuccessfully, that the continuation of the unsealing process during the midst of her criminal prosecution and trial fundamentally violates her due process rights, in violation of the Second Circuit's express articulation that a "countervailing interest" includes "preserving the right of an accused to fundamental fairness in the jury selection process." *Id.* at 47 n.13 (citation omitted). Not only has the pretrial publicity occasioned by unsealing perhaps irrevocably poisoned the potential jury pool against her, but unsealing also has released evidence potentially inadmissible in the criminal action and revealed potential witnesses and their potential testimony. The post-unsealing commentary and tabloid coverage alone decisively demonstrate the extent to which the public at large has formed pre-conceived notions of Ms. Maxwell's guilt based on "evidence" in the form of likely-inadmissible attachments to discovery-dispute pleadings.

---

[2] The Court should note that this is from one of the few sites that still permits public comment. Many news sites have disabled public comment, making the scope of harm imperceptible.

The demonstrated results of the unsealing have been the use of court files as "a vehicle for improper purposes" through the reiteration and repetition of plaintiff's false narrative. As the Second Circuit cautioned: "Shielded by the 'litigation privilege,' bad actors can defame opponents in court pleadings or depositions without fear of lawsuit and liability. *Unfortunately, the presumption of public access to court documents has the potential to exacerbate these harms to privacy and reputation by ensuring that damaging material irrevocably enters the public record.*" *Id.* at 47.

Ms. Maxwell restates and reincorporates her previous arguments concerning her countervailing interests. In light of the previous rulings, however, Ms. Maxwell assumes that the Court will take a consistent position in declining to consider those interests as outweighing the limited right to public access of the discovery-related motions at issue in this round. While the attached chart reflects her specific objections to specific documents at issue in this round, this memorandum of law serves to advance only a few additional arguments with legal support applicable to the current set of discovery-related motions.

I. **DOCUMENTS UNSEALED BY THE SECOND CIRCUIT SHOULD NOT AUTOMATICALLY BE RE-RELEASED IN THE CONTEXT OF THE UNSEALING OF DISCOVERY-RELATED MOTIONS**

The release by the Second Circuit of confidential materials related to the summary judgment motion should not pre-determine this Court's current decision whether to release discovery-related pleadings and exhibits. As recent communications to the Court from Non-Party Doe 171 make clear, the re-release of (high-presumption of access) summary judgment materials results in the ineluctable re-publication and re-harm to Non-Parties such as Doe 171 who were never afforded the opportunity to object to the release of their name, and consequential privacy harms, occasioned by the Second Circuit's *sua sponte* redaction choices. This was, of course, the dissent's prescient fear when noting "[t]he task of identifying and making specific redactions

4

in such a substantial volume is perilous; the consequences of even a seemingly minor error may be grave and are irrevocable." *Brown*, 929 F.3d at 54.

The Second Circuit, and this Court, repeatedly have emphasized that Non-Party names and personally identifying information are highly sensitive and deserving of protection. *Id.* at 51 ("the District Court can obtain the parties' assistance in effecting any necessary redactions, and in notifying any outside parties whose privacy interests might be implicated by the unsealing.").[3] The *Brown* remand ordered a document-by-document review of "the remaining sealed materials" in a two-step manner: first, to determine "if [the document] would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers," and second, by balancing any countervailing interests against the "low presumption that 'amounts to little more than a prediction of public access absent a countervailing reason.'" *Id.* at 49 (citation omitted). The *Brown* panel – and the Order and Protocol for Unsealing Decided Motions (Dkt. 1108) – are silent as to how to approach previously-unsealed materials. A strict application of the *Brown* directive and this Protocol seems to suggest that the Court must undertake such analysis regardless of whether a document has previously been released or is otherwise publicly available. As Mr. Nicholas Lewis, counsel for a Non-Party Doe, recently wrote to this Court:

> The fact that publicly disclosed 'information' exists is not determinative. *See, e.g., United States v. Gatto,* No. 17 Cr. 686 (LAK), 2019 WL 4194569, at *8 (S.D.N.Y. Sept. 3, 2019) (refusing to unseal documents even when 'some information relating to the documents in question already has been discussed on the public

---

[3] *See also, Giuffre v. Dershowitz*, No. 19 Civ. 3377 (LAP), Dkt. No. 144 at 9-10 (S.D.N.Y. July 1, 2020) ("The Court spent months, with substantial input from the parties, fashioning a procedure for unsealing the *Maxwell* filings that properly takes into account the privacy interests of the scores of third parties named in those documents. (*See* Dkt. Nos. 1026-1044 in 15 Civ. 7433). That process involves actively soliciting objections from non-parties and extensive briefing from the parties in response to those objections."); *Giuffre v. Dershowitz*, No. 19 Civ. 3377 (LAP), Dkt. No. 174 at *5 (S.D.N.Y. Sep. 9, 2020) ("Indeed, protecting such interests [of nonparties] is one of the core purposes of the unsealing process in *Maxwell*.").

>record or reported in the media' and observing that governing law dictates that the existence of such public information 'does not mean that the third-parties concerned have lost any remaining privacy interests in their contents'). It is merely a factor to be considered by the Court in balancing competing interests to determine whether the seal should be maintained or removed.

(Dkt. 1192 at 2).

At the very least, under the Protocol, all Non-Parties[4] should be afforded a say in this Court before the release of information pertaining to them, even if the information previously was released by the Second Circuit in a different context. The Second Circuit was dealing with "documents submitted to a court for its consideration in a summary judgment motion" as "to which a strong presumption of access attaches, under both the common law and the First Amendment." *Brown*, 929 F.3d 41 at 47. This Court has already recognized that "the motions at issue [here] . . . are, as noted, discovery motions. Accordingly, the presumption of public access is somewhat less weighty than for a dispositive motion." Dkt. No. 1196, Tr. of Jan. 19, 2021 Hearing at 3. Unlike the Protocol process, the only Non-Party who weighed in on the release of their name in the summary judgment materials was Alan Dershowitz; as to the rest, the Second Circuit apparently just made a guess as to who would want their privacy rights protected.

Further, at the time of the *Brown* ruling, Ms. Maxwell was not under indictment, and thus the due process concerns briefed in Ms. Maxwell's Round 2 unsealing briefings [DEs 1149 & 1166] were not directly considered by the Second Circuit in its unsealing of summary judgment

---

[4] Doe 171 is an obvious example of this problem, but there are many others. By way of example, in Round 2 of unsealing, Dkt. No. 393-1 was a composite exhibit containing deposition testimony of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Three of these Does have requested excerpts of materials relating to them, and two have already filed objections to unsealing. The Court Ordered that these materials "were unsealed by the Second Circuit and shall remain unsealed, subject to the redactions ordered by the circuit on page 24 of the composite exhibit." Dkt. No. 1196, Tr. of Jan. 19, 2021 Hearing at 24.

6

materials.  Yet, the decision itself suggests that had an indictment been pending, its decision might have been different.  *Brown*, 929 F.3d at 48 n.13 (countervailing values include preserving "the right of an accused to fundamental fairness in the jury selection process").

In the Second Circuit's unsealing, no consideration was given to Ms. Maxwell's due process rights and there was no input by Non-Parties as to their privacy interests or reliance on the protective order.  No Non-Party other than Prof. Dershowitz appeared before the Second Circuit to argue for protection of their privacy interests.  Indeed, until the Second Circuit documents were released, those Non-Parties who were mentioned (rather than deposed) would have had no knowledge that their names, identities, or other information might be contained therein.  As a result, the inclusion of a document or exhibit in the unsealed summary judgment material should not "automatically" make materials un-sealable again, especially not "in the same manner" as they were unsealed in connection with the summary judgment motion.  Any person who is named or mentioned in those materials should be given the same consideration in this unsealing process as a person who was fortunate enough not to have their name included in something filed with the summary judgment motion, especially since their information may or may not have been appropriately redacted by the Second Circuit.

While this court cannot "reseal" materials already released, it can prevent against the proliferation and further re-circulation of information that violates the privacy rights and protective order reliance of the Non-Parties (and parties) in this matter.

## II.     THE COURT SHOULD NOT RE-RELEASE EXHIBITS TO DISCOVERY MATERIALS

Many of the exhibits (and indeed plaintiff's motions) in the upcoming unsealing process are cumulative and duplicative.  As is apparent from the docket, plaintiff's counsel had a habit of re-attaching the same materials to numerous pleadings in the *Giuffre* litigation.  Repetitively

7

releasing the same materials does not foster any "oversight" of the judicial system, rather it feeds the media frenzy and instills the false belief that there are additional "newly unsealed" materials, thus giving rise to a new round of speculation and venom against the presumptively-innocent accused. Re-circulating and disseminating the same materials, each time kicking off another media frenzy and further poisoning the jury pool without any consideration whether each exhibit had the "tendency" to influence Judge Sweet's rulings, further violates Ms. Maxwell's due process rights. Reinforcing the false narrative that plaintiff and her attorneys concocted does nothing more than imbed those thoughts into the mind of the public and the jury pool.

To that end, Ms. Maxwell requests that any documents (in particular exhibits to motions) previously unsealed in this process should not repeatedly be unsealed in each round. Rather, to the extent the Court finds the exhibit is appropriately unsealed in connection with a later motion, the Order or record should simply include a reference to the previously unsealed document where the information can be located. This process will keep the docket uncluttered by hundreds of "released" documents which are, in fact, just copies of previously released documents.

### III. FURTHER UNSEALING PROCESS.

Finally, as to sealed material located in the summary judgment materials unsealed by the Second Circuit, Ms. Maxwell requests that the Court acknowledge the release but include both the Second Circuit redactions *and* redact the names, testimony, and identifying information of Non-Parties until the particularized review of each Doe is heard and considered by this Court. The Court should thereafter refer to the unsealed version with expanded redactions if these documents appear in subsequent rounds under the Protocol.

The Court should not "re-unseal" exhibits to the discovery motions simply because they are already publicly available. Rather, when an exhibit contains already unsealed material, the document would not be unsealed "in the same manner" as a previous document. Instead, the

Court should refer to the previous unsealed document in any oral ruling on the document. For instance, in this round, as to Dkt. No. 389-3, a portion of Doe 1's deposition already released in Round 2, rather than "unseal" as per 369-7 (from Round 2), the Court should order "previously unsealed; refer to pages 28, 52-54 of DE 269-7."

While it is true that to some extent the horse may be out of the barn on this information, re-release of the information only further violates the rights of Non-Parties and Ms. Maxwell, dredging up information and providing an excuse for re-publication. Attempting to mitigate the damages previously done is especially important given both the less weighty presumption of access to these materials, and greater importance of accounting for countervailing interests in the unsealing of these non-dipositive discovery motions. It further limits the risk of human error in recreating redacted documents in a consistent manner, which may result in inadvertent disclosure of information. While this will in no way alleviate the damages done to Ms. Maxwell's due process rights, it might at least minimize the impacts of continuous repetition.

## IV. DOCUMENT SPECIFIC CONSIDERATIONS

Pursuant to the Court's preference, Defendant's position on a document-by-document basis is included in the chart attached as Exhibit A. The Defendant provides the following specific notes related to certain materials.

Docket Entry 356 and related materials are duplicative of Dkt. No. 316 and related materials addressed in Round 2. Ms. Maxwell does not believe the court should readdress or re-unseal these materials.

Docket Entry 362 and associated pleadings relate to Alan Dershowitz's motion to intervene and modify the protective order. Ms. Maxwell generally takes no position on these materials (other than the redaction of names and identifying information). We note, however, that some of the materials may be subject to protective orders in other matters.

9

Docket Entry 388 (the Response to the motion at Dkt. No. 370) should remain redacted in its current form, which only excludes information that the Court has previously ordered should remain under seal – *i.e.* the names on non-parties and personally identifying information.

Docket Entry 422 is not actually a "decided motion." Rather, the parties entered a joint stipulation. Docket Entries 423-1 and 423-4 of that group include plaintiff's discovery responses and initial disclosures, which themselves are almost entirely comprised of information related to Non-Parties. In light of this being an undecided motion, these basic discovery materials should remain sealed.

Docket Entry 640 and all of the related materials concern Doe 147. That Doe has requested excerpts and filed objections. Ms. Maxwell believes the entire grouping should be postponed until that Doe is addressed in this process.

## **CONCLUSION**

Ms. Maxwell's substantial, constitutional, and Second Circuit mandated countervailing interests require a continued finding by the Court that the various Sealed Documents at issue here remained sealed. Ms. Maxwell accepts that the Court is not likely to change its position, but requests that the Court not compound the injury and throw gas on the fire by re-releasing already publicly available materials that only serve to harm Ms. Maxwell's constitutional rights, reiterate the plaintiff's and prosecution's false narrative, and serve no purpose in protecting First Amendment interests given that the information is already available.

Dated: February 5, 2021

        Respectfully submitted,

        */s/ Laura A. Menninger*
        Laura A. Menninger (LM-1374)
        Jeffrey S. Pagliuca (*pro hac vice*)
        HADDON, MORGAN AND FOREMAN, P.C.
        150 East 10th Avenue
        Denver, CO 80203
        Phone:   303.831.7364
        Fax:     303.832.2628
        lmenninger@hmflaw.com

        *Attorneys for Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on February 5, 2021, I electronically served this *Memorandum in Support of Objections to Unsealing Sealed Materials Related to Docket Entries 345, 356, 362, 370, 422, 468 & 640* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
Stan J. Pottinger
EDWARDS POTTINGER LLC
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com
StanPottinger@aol.com

Christine N. Walz
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Christine.walz@hklaw.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

Andrew G. Celli
David Lebowitz
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue at Rockefeller Center
10th Floor
New York, NY 10020
acelli@ecbalaw.com
dlebowitz@ecbalaw.com

Jay M. Wolman
Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
jmw@randazza.com
mjr@randazza.com

*/s/ Nicole Simmons*
Nicole Simmons