**In the United States District Court
for the Southern District of New York**

---------------------------------------------------X

VIRGINIA L. GIUFFRE,

     Plaintiff,

v.

GHISLAINE MAXWELL,

     Defendant.

---------------------------------------------------X

15-cv-07433-LAP

**MS. MAXWELL'S COMBINED REPLY IN FURTHER SUPPORT OF
OBJECTIONS TO UNSEALING SEALED MATERIALS RELATED TO
DOCKET ENTRIES 345, 356, 362, 370, 422, 468 & 640**

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
303.831.7364

## INTRODUCTION[1]

Plaintiff cannot get her story straight.

In her Response in Opposition to Motion to Intervene, DE 406, plaintiff fought strenuously to preclude Professor Dershowitz's access to unredacted discovery motions and the attachments thereto.  Her reasons were many and varied.  She contended, for example, that "[f]ar from assisting the public in reviewing this Court's work, Dershowitz seeks to spread misinformation, engage in hateful personal attacks, and taint the jury pool that will hear Ms. Giuffre's case. The Court should not allow such callous abuse of a First Amendment right, particularly as there is no merit to Dershowitz's claim (Br. at 21) that 'public monitoring has an important role to play here.'" *Id.* at 19.  Plaintiff stressed that "the protective order was not improvidently granted," that Judge Sweet "has articulated [his] concern for preserving the protections of the Protective Order," and that the "parties and deponents in this case have reasonably relied upon the Protective Order."  *Id.* at 20-21.  Plaintiff made clear that it was improper to modify the Protective Order to unseal documents when the "primary purpose of conducting a media blitz against Ms. Giuffre in advance of trial —clearly to assist his joint defense partner, Defendant Maxwell, by poisoning the jury pool in this case." *Id.* at 7.

Plaintiff also insisted, repeatedly, that the discovery documents attached to discovery motions – the very documents at issue in *this* unsealing process – were **not** judicial documents, because the "mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." She proclaimed that "[a] review of the case law reveals that every circuit to have directly addressed this point has found that documents

---

[1] Ms. Maxwell herein replies to the responses of both plaintiff and intervenors Julie Brown and Miami Herald Media Company to avoid needless repetition.  We request that the Court accept this 10¼-page Combined Reply in lieu of two separate ten-page briefs.

filed as exhibits to non-dispositive discovery motions do not qualify as judicial documents." *Id.* at 12 (citations omitted). Plaintiff continued, stating that "[e]ven if the Court found these documents to be judicial documents - which they categorically are not - Dershowitz's motion still fails because the common law presumption of access is extremely weak and easily overcome here by countervailing factors." DE 406 at 19. Plaintiff then relied on the very cases Ms. Maxwell now cites regarding the low presumption of access, the non-judicial nature of the attachments to discovery motions, and her countervailing interest in reliance on the protective order. *Id.* at 15-18. Plaintiff won that motion, with the Court adopting her arguments and citing authorities in full. DE 496 (Nov. 2, 2016 Order) at 18-21.

Now that it is Ms. Maxwell's right to due process in a criminal trial, plaintiff completely reverses course and contends that "Maxwell's criticisms are misguided because they are based on the proposition that public access to the courts is only warranted if the access is ultimately used specifically to monitor the federal courts." Resp. at 1; *contra* DE 406 at 19 ("And again, the Court should not lose sight of the policy rationale behind the First Amendment right of access: the accountability of the courts to the public."). Now that it is Ms. Maxwell's objection to disclosure, plaintiff conveniently claims that all materials attached to discovery motions are "judicial documents." Resp. at 4 n.2; *contra* DE 406 at 19 ("documents filed as exhibits to non-dispositive discovery motions do not qualify as judicial documents"). Now, plaintiff shrugs off the countervailing interest of reliance on the Protective Order because it is Ms. Maxwell's reliance, not her own, at stake.

Judge Sweet's ruling on the Motion to Intervene by Professor Dershowitz *and* his denial of the Motion to Unseal are controlling and should foreclose unsealing the attachments to the Motions at issue in this round.

2

I. **JUDGE SWEET RULED THAT THE ATTACHMENTS TO DISCOVERY MOTIONS WERE *NOT* RELEVANT TO THE COURT OVERSEEING THIS CASE OR DETERMINING MOTIONS**

Judge Sweet, the Article III Judge who entered the Protective Order and ruled on every motion presently subject to unsealing, unfortunately passed away before he could determine on a "document by document" basis whether to unseal. Because he was the judge presiding over these motions, only he could say if the documents "filed by the parties" as attachments to the discovery motions were "relevant" to his performance of the judicial function in issuing his orders. Before his passing, however, Judge Sweet made a factual finding that "[e]xcept as discussed below [relating to summary judgment documents], the documents sealed in the course of discovery were neither relied upon by this Court in the rendering of an adjudication, nor 'necessary to or helpful in resolving [a] motion,'" thereby finding that the attachments to the discovery pleadings were not be "judicial documents." *Giuffre v. Maxwell*, 325 F. Supp. 3d 428, 442 (S.D.N.Y. 2018) (*quoting Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12 Civ. 6608 (PKC) (JCF), 2014 WL 4346174, at *2 (S.D.N.Y. Sept. 2, 2014)) (emphasis added). The Second Circuit remanded for Judge Sweet to make this finding on a "document by document" basis, focusing on "relevance" rather than "reliance." *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019). Judge Sweet, however, had previously specifically cited to the "one hundred sixty-seven documents [that] were sealed pursuant to the Sealing Order" and found they were *neither* necessary nor helpful – *i.e.,* not relevant – to his performance of his judicial functions. *Giuffre*, 325 F. Supp. 3d at 442.

While this Court cannot read Judge Sweet's mind, it can read his opinion. He details, in length, the definitions of "judicial documents," finding the attachments to the discovery motions did not qualify as such. Judge Sweet specifically noted that the legal standard as *relevance*. *Giuffre*, 325 F. Supp. 3d at 442 ("[t]o be a judicial document, 'the item filed must be *relevant* to

3

the performance of the judicial function and useful in the judicial process'") (*citing Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 115 (2d Cir. 2006)). He further held that "[d]ocuments filed with the court vary in their status as 'judicial documents.' At one end of the continuum, '[t]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access.'" *Giuffre*, 325 F. Supp. 3d at 443 (*quoting United States v. Amodeo*, 44 F.3d 141, 145). "Likewise, the filing of 'deposition transcripts, interrogatories, and documents exchanged in discovery' with a court is not sufficient to reach the status of judicial document, and to consider them as such 'would constitute a radical expansion of the 'public access' doctrine.'" *Id.* (*quoting United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 139 (2d Cir. 2017) (*citing Amodeo II*, 71 F.3d at 1048)). The Second Circuit later affirmed this standard. *Brown*, 929 F.3d at 49 ("mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access").

Applying these standards, Judge Sweet determined that the attachments to the discovery motions *that he decided* were not *relevant* to *his* performance of his judicial functions because they "were neither relied upon by this Court in the rendering of an adjudication, *nor 'necessary to or helpful in resolving [a] motion'*" and therefore were not judicial documents. *Giuffre*, 325 F. Supp. 3d at 442 (emphasis added). This Court has the unenviable task of presiding over these unsealing proceedings on motions over which it did not preside in the first instance. The only true authority on whether the attachments to the discovery motions are actually judicial documents – Judge Sweet – determined they were *not* relevant to his performance of Article III duties. And how could they be?

For example, in this round, excerpts from the depositions of Non-Party Does 162, 151, 1, and 67 (DEs 389-1, 389-2, 389-3, 389-4) have no relevance to Judge Sweet's ruling on the Motion for Protective Order regarding the Personal Financial Information of the Defendant (DE

4

370). That motion relates to protecting the personal financial information of the defendant. The Non-Party testimony had no bearing whatsoever on the legal issue and is completely irrelevant. The information was included simply to harass and embarrass Ms. Maxwell and to repeat plaintiff's false narrative. With respect to his ruling on DE 370, there is not a single citation in Judge Sweet's Order to any of the attachments, or to plaintiff's citations to the attachments. *See* DE 496 (Nov. 2, 2016 Order) at 13-16.

This Court should be bound by (or at least defer to) Judge Sweet's determination that the discovery dispute attachments filed under seal were not judicial documents because they were not "relevant to the performance of the judicial function and useful in the judicial process" over which he presided. *Giuffre*, 325 F. Supp. 3d at 442. Any blanket finding that all documents attached to discovery motions are "judicial documents" is legal error and expressly contrary to the Second Circuit's determination that the court must, on a document by document basis, determine if an attachment "reasonably [has] the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers." *Brown*, 929 F.3d at 49. In light of Judge Sweet's finding that the attachments to the motions *did not* influence the Court's rulings and that they were not relevant or "necessary or helpful," all attachments should presumptively be deemed non-judicial documents. Unless a participant advocating unsealing can demonstrate an attachment's actual relevance to the motion or order at issue – *i.e.,* show that they were *relevant* to the actual motion and its determination – the attachment should be deemed a non-judicial document and remain sealed because there is no presumption of public access. Plaintiff and Intervenors have not, and cannot, demonstrate that *any* of the exhibits to discovery motions contained in this round were relevant to Judge Sweet's ultimate determinations.

5

## II. MS. MAXWELL DID NOT "WAIVE" HER COUNTERVAILING INTEREST BY FOLLOWING THIS COURT'S DIRECTIVES

The Court has explicitly expressed a preference for a chart format identifying a party's position and countervailing interest for reviewing unsealing of documents, based on plaintiff's original provision of such a chart. Transcript of July 23, 2020 at 2; Transcript of January 19, 2021 at 10. Plaintiff now takes the patently absurd position that "all arguments in favor of sealing documents aside from those specifically addressed in Maxwell's brief should be deemed waived" (Response at 9), despite Ms. Maxwell's specific preservation of the arguments in a non-repetitious fashion in her chart, in the manner requested by the Court (Objections at 4). Following the Court's guidance cannot be deemed a basis for waiver of these fundamental rights.

## III. PLAINTIFF'S SPECIFIC RESPONSES ARE IMPROPER

Plaintiff advocates "re-releasing" DE 356.  The Court need only look at the docket to see that DE 356 is the refiling of DE 316 (stricken due to a filing error), which was ruled on in Round 2, and released pursuant to the Court's Order at DE 1201.  It is a pure waste of time and judicial economy to revisit or "re-unseal" duplicative entries that were simply refiled a second time due to filing errors and serves no public right to access purpose.

If the multiple deposition and discovery documents from a different proceeding attached to Docket Entry 362 are subject to a protective order in that other matter, and the plaintiff choses to violate that order, that is her choice.

Docket Entry 422 was a motion that was never decided.  The endorsed letter ordering production, by its terms, "mooted" the motion based on a stipulation between the parties.  DE 437, 438.  That endorsed letter is the one and only document relevant to Judge Sweet's ruling and is already public.  The mooted motion was never fully briefed, never ripe for review, and had no relevance to the court reviewing and endorsing the agreed stipulation. These moot filings are

6

not judicial documents, served no purpose in Article III functions, and there is no presumption at all for public access.

    IV.    **REPETITIVE UNSEALING SERVES NO FIRST AMENDMENT PURPOSE AND ONLY SERVES TO FURTHER EVISCERATE MS. MAXWELL'S DUE PROCESS RIGHTS**

It strains credibility to assert that this Court has not issued an automatic "blanket" order releasing all exhibits that match those attached to the summary judgment pleadings in the same manner as released in the Second Circuit. Plaintiff repeats her earlier stated position: "Unseal in full.; Note: These pages of this deposition transcript were released by the Second Circuit without redactions." *See, e.g.*, DE 1167-2, items 369-6; 369-7; 369-8; 369-9; 393-1; 393-2; 401-3. The Court adopted plaintiff's position, ruling without any analysis of each document. *See* Transcript of January 19, 2021 at 9 ("Finally, excerpts of any deposition testimony for nonparty Does in the Court of Appeals that has already been unsealed may be unsealed here also with redactions, if any, ordered by the Court of Appeals."). The Court made no evaluation on the record whether the exhibit was relevant to the decided motion (*i.e.*, a judicial document with respect to the *specific motion* at issue) or if additional redactions are required to protect the countervailing interest of Parties or Non-Parties under the less weighty standard applicable to these discovery motions. *See id.* at 21, 24, 26. While the rulings have been "by document," it is no less a "blanket" ruling.

Re-release of documents overlooks the function of this process to protect the First Amendment right to public access and monitoring of the courts, a purpose already served once there is public access. There is no further interest to be served by re-release, nor can plaintiff or the Miami Herald claim one exists. By contrast, Ms. Maxwell's Due Process Rights – a strong

7

countervailing interest[2] -- are continually and irreparably injured with each re-release.

As recognized by the U.S. Supreme Court, simply because materials are improperly disseminated in the first instance does not mean the Court cannot, and should not, prevent further dissemination of improperly released material.  In *United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983), lawyers in the Justice Department's Civil Division had access to certain grand jury materials for two years before the Ninth Circuit held that those lawyers were not entitled to the materials under Rule 6(e)(3)(A)(i). The Supreme Court found that the case was not moot despite the information's already improper dissemination. "The controversy here is still a live one. . . . Each day this order remains effective the veil of secrecy is lifted higher by disclosure to additional personnel and by the continued access of those to whom the materials have already been disclosed. We cannot restore the secrecy that has already been lost but we can grant partial relief by preventing further disclosure.'" *Id.* at 423 n.6 (*quoting In re Grand Jury Investigation No. 78-184 (Sells, Inc.),* 642 F.2d 1184, 1187-88 (9th Cir. 1981)); *see also United States v. Smith*, 123 F.3d 140, 155 (3d Cir. 1997) (barring further release and government disclosures of the putative grand jury secrets contained in a sentencing memorandum released to the press noting that "even if the dissemination by members of the public continues, the order barring further disclosure of any secret grand jury material will at least narrow that dissemination").

Plaintiff's hypocrisy is again notable in this argument.  In the underlying matter in this case – plaintiff's alleged defamation upon being called a "liar" – plaintiff premised her entire damages calculation on the *re-publication* of the allegedly defamatory statement, whether re-publication by the press, by herself, by her attorneys in court filings, or otherwise.  Plaintiff's

---

[2] "Examples of such countervailing values may include, depending on the circumstances, preserving "the right of an accused to fundamental fairness in the jury selection process." *Brown*, 929 F.3d at 48 n.13 (*citing Press-Enter. Co. v. Superior Court of California, Riverside Cty.*, 464 U.S. 501, 510 (1984)).

argument was that the continual repetition and republication of the alleged defamatory statements (much of it self-inflicted) caused her damage.  *See* DE 581 at 3-8.  Yet, plaintiff asks this Court to re-publish her own false and defamatory statements about Ms. Maxwell, repeated *ad nauseum* in irrelevant arguments in discovery briefs, knowing that they are "[s]hielded by the 'litigation privilege,'" and thus allows them as "bad actors [to] defame opponents in court pleadings or depositions without fear of lawsuit and liability." *Brown*, 929 F.3d at 47.  Plaintiff asks that this information be re-published as often as possible, no matter how repetitious or irrelevant, for the sole purpose of infringing on Ms. Maxwell's right to due process and a fair trial.  Re-releasing already publicly available documents serve no public access interest and only further hinders Ms. Maxwell's right to a fair trial, which must countervail.

V.  **THE PROTOCOL FOR UNSEALING CANNOT BE REVISED OR REVISITED WITHOUT FULL BRIEFING AND THEN RE-NOTICE TO ALL OF THE NON-PARTIES OF ANY CHANGES**

The request for an affirmative modification of the unsealing protocols by plaintiff and the Miami Herald in response to Ms. Maxwell's objections to specific documents is procedurally improper.  Both argue that despite the fact that this unsealing – and the focus of the objections – is intended to be related only to Does 1 and 2, that the Court should instead rule on the countervailing interests of every other Doe mentioned in the briefing or the attached exhibits, unless they have timely filed specific objections. This dramatic change to the Protocol violates both Ms. Maxwell's due process rights and the right to privacy of each Non-Party Doe.  The Court has already rejected this same proposal by plaintiff's counsel, *see* January 11, 2021 Order (DE 1189), and should do so again here.

Plaintiff boldly proclaims that because, for example, Doe Number 67's time for objection has expired, the Court "will not at any point in the future have more information about Doe 67's countervailing interests than it currently has."  That is simply untrue. The Does all fall into

9

different categories, with different countervailing interests, and different reasons why their identities should remain sealed.  In some cases, these Does are known to be potential witnesses at Ms. Maxwell's criminal trial  –  although Ms. Maxwell and her counsel are prohibited from disclosing such information to the Court under the Protective Order in the criminal case.  Because the Court's Protocol dictates that the materials remain sealed until each specific Doe is under consideration, Ms. Maxwell's objections did not, and could not have, addressed specific Does or Ms. Maxwell's countervailing interests as it relates to those Does. To fully brief such issues, depending on the Doe, Ms. Maxwell might well be required to seek modification of the criminal case's protective order to fully inform this Court of the countervailing interests prohibiting unsealing.

      Nor has anyone been given the opportunity to advocate on behalf of the individuals, who may or may not have actually received their notices, or worse, are not in a financial position to engage counsel to help protect their privacy interests (or even identify what interest may be in jeopardy) if they wanted to object. Based on the protocols that were sent to these witnesses as part of the process, they expect that their names, identifying information and testimony will remain sealed until we are at a later stage in the process – *i.e.* when their "Doe Number" is up for consideration.

      Doe 67 presents an apt example.  While notice was sent to this Doe by return receipt requested, the notice was returned to defense counsel as undeliverable.  Portions of Doe 67's testimony is incriminating to the deponent and was given in reliance on the Protective Order.  Since notice never was apparently received, and in light of the testimony at issue, the Doe should at least be given the consideration of having defense counsel advocate this witness's interests at the appropriate time under the Protocol.  The Court has recognized that each individual Doe's interests must be considered, regardless of filing an objection.  Abandoning the Protocol now

without the opportunity to specifically brief issues relating to each Doe is an abuse of the very process designed by the Court.  And if the Protocol is changed in such a fashion, notice of the new Protocol should be sent to each of the Non-Party Does.  The Court should not now dismantle the well thought-out and systematic procedures designed to protect both Party and Non-Party countervailing interests.

## CONCLUSION

For the foregoing reasons, Ms. Maxwell respectfully requests that the Court grant her objections to unsealing.

Dated: February 19, 2021

Respectfully submitted,

*/s/Laura A. Menninger*
Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
Haddon, Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303.831.7364
Fax:    303.832.2628
lmenninger@hmflaw.com
jpagliuca@hmflaw.com
*Attorneys for Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on February 19, 2021, I electronically served this *Combined Reply in Further Support of Objections to Unsealing Sealed Materials Related to Docket Entries 345, 356, 362, 370, 422, 468 & 640* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
Stan J. Pottinger
EDWARDS POTTINGER LLC
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com
StanPottinger@aol.com

Christine N. Walz
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Christine.walz@hklaw.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

Andrew G. Celli
David Lebowitz
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue at Rockefeller Center
10th Floor
New York, NY 10020
acelli@ecbalaw.com
dlebowitz@ecbalaw.com

Jay M. Wolman
Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
jmw@randazza.com
mjr@randazza.com

*/s/ Nicole Simmons*
Nicole Simmons