UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIRGINIA GIUFFRE,

        Plaintiff,

-against-

GHISLAINE MAXWELL,

        Defendant.

Index No. 15 Civ. 7433 (RWS)

**DECLARATION OF
ALAN M. DERSHOWITZ**

        **ALAN M. DERSHOWITZ** declares under penalty of perjury that the following is true and correct:

        1.     I am a Professor of Law, Emeritus, at Harvard Law School, where I taught criminal law, legal ethics and other subjects for 50 years.  As a criminal defense attorney, I have also represented numerous individuals accused of crimes over the course of my career.  I am personally familiar with the facts set forth in this declaration.

        2.     I submit this Declaration in support of my motion for permissive intervention under Federal Rule of Civil Procedure 24(b), and to unseal certain judicial documents, or alternatively to modify the stipulated Protective Order in this.  The documents I am seeking relate directly to me.  The plaintiff in this case, Virginia Roberts Giuffre, through her counsel and in publicly-filed declarations, has accused me of having sex with her and other young girls.  The allegation is utterly false—a fabrication from start to finish—but, because I am a well-known law professor and lawyer, it has been widely covered and repeated in the press, both here and around the world.  See ¶¶ 13-14, 26-27, *infra*.

1

3.      In this application, I am seeking modest and narrowly tailored relief: an Order unsealing three documents that were filed with the Court in this case. Specifically, I seek to unseal portions of a brief (the "Reply Brief") and certain emails (the "Emails") that were submitted in connection with a motion to quash a testimonial subpoena directed to British tabloid journalist Sharon Churcher, and a draft of Ms. Giuffre's memoir ("Manuscript") that was filed in connection with a motion to extend the parties' deadline for deposition discovery. In the alternative, I seek an Order lifting the stipulated Protective Order with respect to these three documents (the "Requested Documents"). The Emails are attached hereto collectively as Exhibit A, the Manuscript is attached hereto as Exhibit B, and the Reply Brief is attached hereto as Exhibit M. In accordance with the Protective Order, I am filing the Requested Documents under seal, and redacting all substantive references to them, pending disposition of this application. Although I have erred on the side of strict confidentiality to avoid any semblance of violating the Court's Protective Order, I of course do not believe that these materials should remain sealed permanently. In the event the Court grants my application, I would also request that the Court unseal the Requested Documents along with all of the references to them in my motion papers that are being redacted from the public docket.

4.      As described more fully below, the Requested Documents, separately and together, demonstrate that the allegations of sexual misconduct lodged and repeated by Ms. Giuffre are nothing more than a recent fabrication— a made up story designed to increase commercial interest in Ms. Giuffre's book manuscript, and promote its sale to a publisher and eventually to readers. Accessing these materials, and making them public, is essential to my ability to defend myself against false charges that are still being repeated by Ms. Giuffre and her

lawyers today, as well as a sanctions motion against me that, while denied by the trial judge, is currently being appealed by Ms. Giuffre's lawyers.

5.  I have been a lawyer and law professor in the public eye for more than 50 years, and I have been happily married for 30 years. Even as I have taken on unpopular causes and asserted controversial positions, I have always enjoyed a deserved reputation for rectitude in my personal life. The false allegations lodged by Ms. Giuffre and her lawyers have sullied my reputation unfairly. At nearly 78 years of age, I am determined to restore my reputation by uncovering and publicly disclosing the evidence of my absolute innocence.

**My Representation of Jeffrey Epstein**

6.  Jeffrey Epstein, a financier who was accused of soliciting sex workers and having inappropriate sexual conduct with underage girls, was a client of mine. I first was introduced to Mr. Epstein by a friend, Lynn Forester de Rothschild, in 1997. Over the years, I attended a number of academic events where he and many others—including distinguished academics, business people, and others—were present. At no time—either then or after I became his lawyer—did I ever see Mr. Epstein in the presence of underage girls, nor was I aware of any allegation of improper sexual conduct on his part prior to being retained as one of his lawyers.

7.  Mr. Epstein retained me as a criminal defense lawyer towards the end of 2006. I was hired as part of a team of lawyers that included Roy Black, Gerald Lefcourt, Kenneth Starr, Martin Weinberg, and several others. In 2008, Mr. Epstein pleaded guilty to certain offenses involving sex with minors.

8.  Virginia Roberts Giuffre, the plaintiff in this action, has alleged that she was one of Mr. Epstein's victims. Ms. Giuffre has claimed that she was held as a "sex slave" and trafficked by Mr. Epstein, and that a number of men associated with Mr. Epstein had sexual

3

encounters with her that Mr. Epstein facilitated. Mr. Epstein's criminal conviction involved his conduct with respect to other girls; he was neither charged nor convicted in connection with his conduct toward Ms. Giuffre.

9. Years after Mr. Epstein's guilty plea, as detailed below, Ms. Giuffre falsely claimed that I was one of the men to whom Mr. Epstein trafficked her. The actions that Ms. Giuffre attributes to me did not occur. Indeed, they could not have: my travel, work, and cell phone records, together with other documentary evidence, prove that I could not have been in locations in which she claims to have had sexual contact with me, including Little St. James, New Mexico, Mr. Epstein's home in Palm Beach, and Mr. Epstein's private jet. These records and other evidence prove that I was not at any of those locations during the years Ms. Giuffre says she was with Mr. Epstein.

**2006-2011: Ms. Giuffre Does <u>Not</u> Accuse Me of Sexual Misconduct In Her Initial Accounts**

10. The first time Ms. Giuffre publicly accused me of sexual misconduct was in December 2014—by her own account, more than 12 years after her last encounter with Jeffrey Epstein. In the intervening period, of course, a number of important things happened: Ms. Giuffre had sued Mr. Epstein; she had been paid to sell her story to the media; she had drafted and sought to publish a "tell-all" memoir[1]; and Mr. Epstein had been investigated by law enforcement, charged, and pled guilty to offenses related to sex with minors. I discuss these and related circumstances because they reflect on Ms. Giuffre's lack of credibility when it comes to her allegations against me, and on the need for me to have unencumbered access to and use of the Requested Documents as I seek to restore my personal and professional reputation.

---

[1] *See* Richard Shears & Martin Robinson, *Prince Andrew's 'sex slave' Virginia Roberts 'is writing a tell-all memoir about their alleged trysts at home of US billionaire Jeffrey Epstein,'* DAILYMAIL.COM, Jan. 6, 2015 http://www.dailymail.co.uk/news/article-2897615/Prince-Andrew-s-sex-slave-Virginia-Roberts-writing-tell-memoir.html.

4

11. During the criminal investigation of Mr. Epstein, which spanned the years 2006 through 2008, Ms. Giuffre was interviewed by law enforcement and provided details about Mr. Epstein's alleged criminal acts. At the time, I was one of Mr. Epstein's lawyers. Ms. Giuffre did not allege to law enforcement that I engaged in sexual misconduct of any sort. According to the Assistant United States Attorney in charge of negotiating Mr. Epstein's plea arrangement, while he was at the U.S. Attorney's Office, Ms. Giuffre never mentioned me as having been involved in any sexual misconduct, much less suggested that she had been trafficked to me by Mr. Epstein. The Assistant United States Attorney told me and my lawyer that, had such an allegation been lodged, the Government would not have permitted me to continue to represent Jeffrey Epstein, nor would I have been ethically permitted to do so.

12. In May 2009, Ms. Roberts filed a civil suit against Mr. Epstein, in which she alleged that Mr. Epstein required that she "be sexually exploited by Defendant's adult male peers, including royalty, politicians, academicians, businessmen, and/or other professional and personal acquaintances." Again, the 2009 lawsuit did not mention me as an alleged perpetrator. *See* Ex. C (Complaint, *Jane Doe No. 102 v. Epstein*, No. 09-80656 (S.D. Fla.)).

13. In or around early 2011, Sharon Churcher, a reporter for the British tabloid *The Daily Mail*, contacted Ms. Giuffre and then traveled to Australia to meet with her in person. (These contacts, and the existence of emails between Ms. Giuffre and Ms. Churcher in 2011, were discussed and disclosed in documents publicly filed in this case, *see, e.g.*, ECF Nos. 216-218, as part of the motion to quash Ms. Churcher's deposition subpoena.) Ultimately, the *Daily Mail* published a series of stories, under Ms. Churcher's by-line, about Ms. Giuffre's involvement with Mr. Epstein. Nowhere did the Churcher stories allege that I had engaged in

sexual misconduct. As far as the published stories reveal, Ms. Giuffre never mentioned me in any of the interviews as someone with whom she had had sex.

14. Two 2011 emails between Ms. Giuffre and Ms. Churcher that were exchanged in this period do *mention* me—but only as a lawyer for Jeffrey Epstein and as a famous person. In neither email does Ms. Giuffre or Ms. Churcher allege that I engaged in sexual misconduct. To the contrary, the emails strongly suggest that I did not, and one even says that there is "no proof" of any such misconduct by me. These emails are among the Requested Documents. *See* ¶¶ 34-39, *infra*.

**December 2014 Forward: Ms. Giuffre and Her Lawyers Accuse Me**

15. Ms. Giuffre first made accusations against me after she retained Bradley Edwards and Paul Cassell as her attorneys.

16. In December 2014, Ms. Giuffre, represented by Messrs. Edwards and Cassell, filed a motion to join an action that had been initially filed in the United States District Court for the Southern District of Florida in 2008 by one of Mr. Epstein's alleged victims, who was designated as "Jane Doe." *Jane Doe #1 v. United States (Doe v. United States)*, No. 08-80736-CIV-MARRA (S.D. Fla.). That action (the "CVRA Action"), which was brought under the federal Crime Victims' Rights Act, sought to challenge federal prosecutors' handling of plea negotiations with Mr. Epstein.

17. Between late 2014 and early 2015, Ms. Giuffre's attorneys—two of the same lawyers who represent her in this case—alleged in court filings that I had had sex with Ms. Giuffre on numerous occasions while she was a minor, including in Florida, on Mr. Epstein's private planes, in the British Virgin Islands, in New Mexico, and in New York. They did not offer to prove these allegations or offer me an opportunity to dispute them; they simply inserted

6

them in the pleadings. While Ms. Giuffre's attorneys could have made the filings under seal (as much of the case file is sealed already), they elected to make the accusations against me part of the public record, intending, I believe, that they be widely reported.

18. The allegations lodged against me were detailed, horrific, and utterly false. In two further court filings in the CVRA Action in or around early 2015, Ms. Giuffre provided perjurious declarations alleging that I had sex with her at least six times while when she was between the ages of sixteen and nineteen. She alleged that the sex occurred in New Mexico, New York, on Little St. James Island, in Mr. Epstein's house in Palm Beach, and on a private plane. She also falsely alleged that I had sex with other underage girls. Finally, Ms. Giuffre claimed that I was so comfortable with the sex that was going on that I would chat with Epstein while she was giving him oral sex. All of this is categorically false.[2]

19. In April 2015, U.S. District Judge Kenneth A. Marra, the judge presiding over the CVRA Action, struck the allegations against me from Ms. Giuffre's filings under to Federal Rule of Civil Procedure 12(f). Judge Marra called the allegations against me "immaterial and impertinent," and characterized "striking the lurid details from Petitioners' submissions" as a "sanction." *See* Ex. D (Order Denying Petitioners' Motion to Join Under Rule 21 and Motion to Amend Under Rule 15, Apr. 7, 2015, *Doe v. United States*, ECF No. 324).

20. Since she first accused me of sexual misconduct in her filings in the CVRA Action, Ms. Giuffre has stood by these accusations against me and repeated them numerous times.

---

[2] Even some of Ms. Giuffre's factual allegations concerning time she spent with Mr. Epstein have been undermined by the discovery of contrary facts. At one point, she asserted that she had been with Mr. Epstein before she turned sixteen, having met him after her father began working at the Mar-a-Lago Club in Palm Beach. Later, it emerged that her father did not start working at the club until well after her sixteenth birthday.

7

**2015-2016: The Defamation Case Brought by Ms. Giuffre's Lawyers Against Me**

21. Having been falsely accused, in public documents, of sexual misconduct, I publicly defended myself, including by asserting that the lawyers representing Ms. Giuffre had not properly investigated her (false) allegations against me. In January 2015, Ms. Giuffre's attorneys—Mr. Edwards and Mr. Cassell, two of the same lawyers who are representing her in the case at bar—sued me for defamation in a case styled as *Edwards v. Dershowitz*, Case No. CACE 15-000072 (Cir. Ct., Broward Cnty., Fla.) The lawyers alleged that I had defamed them by publicly stating that it was improper and unethical for them, as officers of the court, to accuse me of sexual misconduct in public court filings without having appropriately investigated Ms. Giuffre's allegations. I countersued, alleging that their claims about my supposed sexual encounters with Ms. Giuffre were defamatory.

22. During discovery in the *Edwards v, Dershowitz* case, I subpoenaed Ms. Giuffre, requesting that she produce, among other items, "[a]ll statements, written or recorded, which you have provided to anyone that reference by name, Alan M. Dershowitz." *See* Ex. E (Subpoena to Attend and Produce, Req. No. 7). Ms. Giuffre objected to this request and refused to comply, ultimately moving to quash the subpoena. *See* Ex. F (Motion to Quash) at 7-9 & n.2. On November 4, 2015, the judge in *Edwards v. Dershowitz* granted certain aspects of Ms. Giuffre's motion to quash, but otherwise denied it, including with respect to Request 7. *See* Ex. N (Email Concerning Court Orders, *Edwards v. Dershowitz*, Case No. CACE 15-000072 (Cir. Ct., Broward Cnty., Fla.)), Nov. 4, 2015). Nonetheless, emails and manuscripts referencing me by name—including those that are now among the Requested Documents—were never produced to me in the *Edwards* litigation.

23. In January 2016, Ms. Giuffre sat for a deposition in the *Edwards* defamation lawsuit. During that deposition, she claimed that Mr. Epstein pressured her to have sex with me and a number of other prominent men, who she named. She also testified, under oath, that she never emailed with Ms. Churcher or other members of the press about me. *See* Ex. G (Deposition Transcript and Signed Errata Sheet, filed under seal[3]) at 120. Three of her lawyers were present at the deposition and said nothing as Ms. Giuffre falsely denied the existence of such emails.[4] The Requested Documents demonstrate that these statements were false.

24. In April 2016, I settled the defamation lawsuit with Mr. Cassell and Mr. Edwards. Pursuant to the settlement agreement, the parties released a joint statement in which Messrs. Cassell and Edwards admitted that it was a mistake to accuse me of sexual misconduct in their filings in the CVRA Action and withdrew those allegations. *See* Ex. H at 3 (Joint Statement).

25. Also in April 2016, I released the results of a thorough investigation led by former FBI Director and federal judge Louis Freeh, which found that "the totality of the evidence" "refutes the allegations made against" me by Ms. Giuffre. *See* Ex. I (Freeh Statement).

---

[3] This transcript is confidential pursuant to an Order of the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, which provides that it is "not subject to public disclosure" and "may only be filed under seal." Accordingly, I am filing it under seal here. I take no position as to whether it must remain sealed on the docket of the instant action.

[4] Mr. Edwards and Mr. Cassell were present for this testimony as parties, and Ms. Sigrid McCawley, a partner at Boies Schiller & Flexner LLP, was present as Ms. Giuffre's counsel. Although it would later become known to me that, in fact, such emails did exist and were highly probative of my innocence, none of these three lawyers said or did anything, at the deposition or afterward, to suggest that Ms. Giuffre's testimony required correction. Ms. Giuffre later provided pages of corrections as to *other* matters in the deposition, but made no correction concerning *this* aspect of the testimony, and no mention was ever made of the Emails, which are now among the Requested Documents. *See* Ex. G at 215 (signed) & Errata Sheet.

**Ms. Giuffre and Her Lawyers "Stand By" Her False Allegations Against Me – Even After the Settlement of *Edwards v. Dershowitz***

26. Despite the settlement in the defamation case, Judge Marra's order striking the allegations in the CVRA Action, and the results of Judge Freeh's investigation, Ms. Giuffre and her counsel have republished Ms. Giuffre's allegations against me. On April 8, 2016, just after the settlement of the *Edwards* case, Mr. Cassell and Mr. Edwards made a court filing that stated that Ms. Giuffre "reaffirms" her allegations against me, and that their mistake in filing those allegations in the CVRA Action was merely "tactical." *See* Ex. J (Notice of Withdrawal). David Boies, another of Ms. Giuffre's attorneys in this case, was described as saying that Ms. Giuffre "stands by her allegations" against me. *See* Casey Sullivan, *Alan Dershowitz Extends Truce Offer to David Boies Amid Bitter Feud*, BLOOMBERG LAW (Apr. 11, 2016), https://bol.bna.com/alan-dershowitz-extends-truce-offer-to-david-boies-amid-bitter-feud/. Reckless statements like these—which falsely imply that I am guilty of sexual misconduct—are highly injurious to my reputation, especially when they come from otherwise-credible lawyers.[5]

27. The claim that I engaged in sexual misconduct with Ms. Giuffre has also continued to receive attention in the press, despite the settlement and the joint statement released as a result thereof. *See* Ex. K (Compendium of News Stories). I am aware of at least two books that have been or will soon be published that discuss the allegations against me; one of these books, advertised in a press release just this week as "expos[ing] one of the most sordid human rights violation stories in the history of the United States," is being marketed as following "[o]n the heels of the sensational Alan Dershowitz defamation settlement case." Press Release, *"TrafficKing": Conchita Sarnoff's Human Trafficking Book Is Now Available*, NEWSWIRE.COM ,

---

[5] I have compiled records of my whereabouts for the years in question, and these records show that I could not have been in the places that Ms. Giuffre alleges I was at the times she alleges.

10

Aug. 9, 2016, https://www.newswire.com/news/conchita-sarnoffs-book-trafficking-is-now-available-1384303. *See also* Richard Johnson, *Epstein Sex Scandal Book Clears Bill Clinton*, Page Six, Dec. 1, 2015, http://pagesix.com/2015/12/01/epstein-sex-scandal-book-clears-bill-clinton/ (discussing a book about "the Jeffrey Epstein sex slavery scandal [that] will be published with the help of best-selling author James Patterson" and referring to "allegations that Dershowitz had sex with" Ms. Giuffre). And I have learned that following the filing of the false accusations against me Ms. Giuffre sat for an interview with ABC News, as part of her efforts to increase public interest in (and the commercial value of) her "story." The interview was announced on social media by an organization with which Mr. Edwards is associated and was said to be slated to appear on ABC's Good Morning America, World News Tonight, and Nightline programs. While the ABC News interview has not yet run, there is no assurance that it will not run in the future. Moreover, Ms. Giuffre's willingness to sit for press interviews undermines any suggestion she might make that she has an ongoing interest in keeping her allegations of sexual abuse private. Indeed, it is my belief that Ms. Giuffre repeated on camera much of what she wrote in her Manuscript—even as she asks that the Manuscript be kept "confidential" under this Court's stipulated Protective Order.

**This Case, My Involvement as a Witness, and My Discovery of Exculpatory Materials**

28.     As the Court knows, in 2015, Ms. Giuffre filed this action against Ghislaine Maxwell, a friend of Jeffrey Epstein. The suit alleges that Ms. Maxwell defamed Ms. Giuffre by denying that she, Ms. Maxwell, facilitated the trafficking of Ms. Giuffre and other girls and young women.

29.     In or about May 2016, I was named as a witness in this case by both plaintiff and defendant.

30. Thereafter, I was contacted by defense counsel Ms. Laura Menninger, who said that she wanted me to testify. Ms. Menninger informed me that a stipulated Protective Order (the "Protective Order") had been entered in this case, *see* Ex. L, under which discovery materials could be designated by either party as "confidential." She asked me to read the Protective Order and to agree in writing to abide by its terms, which I did. The Protective Order allows documents that were produced in discovery and that have been designated "confidential" to be shown to potential witnesses.

31. To the best of my knowledge, the Protective Order is a "blanket" confidentiality agreement that has been so-ordered by this Court. Accordingly, it is likely that the documents designated as "confidential" under the Protective Order have not been individually scrutinized by this Court to determine whether the designation is proper and/or that they are truly entitled to confidential treatment under the law in this Circuit.

32. After I agreed to the terms of the Protective Order, Ms. Menninger sent me certain email correspondence between Ms. Giuffre and Ms. Churcher, together with the 2011 draft of Ms. Giuffre's memoir, and the papers filed with respect to a motion to compel Ms. Churcher's tetsimony. I learned that these materials existed when I was told of them by Ms. Menninger.

33. Based on my review of the documents Ms. Menninger provided to me, I have come to learn that in the first part of 2011, Ms. Giuffre and Ms. Churcher corresponded extensively by email.

34. Two email exchanges, and the Manuscript, are among the Requested Documents. The Emails, dated May 10-11, 2011 and June 8, 2011, discuss, among other topics, Ms. Giuffre's Manuscript detailing her alleged experiences with Mr. Epstein and other prominent people. *See* Ex. A.

35. The May 10-11, 2011 Emails appear to show that it was Ms. Churcher who first suggested to Ms. Giuffre that she include me in her memoir. While Ms. Churcher wrote in one May 2011 email that there is "no proof" that I am "a pedo[phile]," she suggested that Ms. Giuffre probably met me while she was involved with Mr. Epstein. Ms. Churcher urged Ms. Giuffre: "Don't forget Alan Dershowitz," noting I would be a "good name for your pitch" to prospective publishers, since I am a famous lawyer who wrote a book called *Reversal of Fortune*, about the Claus Von Bulow case, upon which a major motion picture was based. *See* Ex. A at GIUFFRE004096-97.

36. In the June 8 Email, Ms. Churcher corresponded with an agent, Mr. Jarred Weisfeld, on Ms. Giuffre's behalf to promote Ms. Giuffre's book; Ms. Giuffre was copied on the message. Although, in that message, Ms. Churcher discussed the allegation that Mr. Epstein had arranged for Ms. Giuffre to have sex with prominent people, Ms. Churcher only mentioned me as one of Mr. Epstein's lawyers, together with Kenneth Starr, not as someone who had abused Ms. Giuffre. *See* Ex. A at GIUFFRE004029.

37. The 2011 Manuscript, *see* Ex. B, further corroborates the fact that I never had any sexual contact with Ms. Giuffre. The draft mentions my name only on one occasion. In the Manuscript, Ms. Giuffre alleges that I once walked into a room while she was in bed after a sexual encounter with Jeffrey Epstein, and that I was there to discuss business with Mr. Epstein.[6] *See id.* at 112. This never happened—but, more importantly, the Manuscript contains no mention anywhere of any sexual contact between me and Ms. Giuffre, or between me and any

---

[6] Although the draft falsely alleges I witnessed intimate contact between Mr. Epstein and Ms. Giuffre, even that made-up encounter is alleged to have occurred *after* Ms. Giuffre turned eighteen years of age. The story is also alleged to have occurred during a period that pre-dates my representation of Mr. Epstein, when I had no business relationship of any kind with Mr. Epstein.

13

other person, even though it does explicitly describe sexual encounters Ms. Giuffre allegedly had with other people, including a professor of psychology at Harvard who she identified by name and physical characteristics.

38. The May 10-11 and June 8 Emails were filed under seal in connection with the motion to quash Sharon Churcher's deposition subpoena. ECF No. 247-1 (under seal). The 2011 Manuscript was filed under seal in connection with a motion to extend the parties' deposition discovery deadline. ECF No. 229-2 (under seal).

39. Finally, Ms. Menninger showed me the briefing submitted under seal in connection with Sharon Churcher's motion to quash her deposition subpoena. I understood the purpose of her sharing these briefs with me to be so that I could, as a witness, understand what Ms. Giuffre and Ms. Churcher were alleging to be the nature and content of their relationship. Among other things, the Reply Memorandum of Law submitted on behalf of Ms. Churcher asserts the following:

> Churcher makes no suggestion that [Ms. Giuffre] had sexual contact with Dershowitz. To the contrary, she states that there was '*no proof*' that he was a 'pedo'– which directly contradicts such a suggestion in itself – but only that [Ms. Giuffre] 'probably met him when he was hanging out with [Jeffrey Epstein]'.

Reply Brief, ECF No. 263 (under seal), at 8 (emphasis in original brief). For the Court's ease of reference, the Reply Brief is attached hereto in unredacted form as Exhibit M (under seal).

40. Neither the Emails nor the Manuscript were disclosed to me or my lawyers in the lawsuit between me and Messrs. Edwards and Cassell, despite my specific discovery request to Ms. Giuffre for "all statements, written or recorded, which you have provided to anyone that reference by name, Alan M. Dershowitz." *See* Ex. E, Req. No. 7.

41. I did not know until after my own defamation case settled, when Ms. Menninger alerted me to these documents, that Ms. Giuffre and her attorneys had failed to produce them during my defamation case (in contravention of the November 2015 court order), and that Ms. Giuffre had lied about their existence during her January 2016 deposition in front of her attorneys, who did not correct her testimony.

**Need for Public Access**

42. The Requested Documents I am seeking by this application are the May 10-11 and June 8, 2011 Emails, the Manuscript, and the Reply Memorandum of Law submitted on behalf of Ms. Churcher on the motion to quash her deposition subpoena.

43. The Requested Documents that I seek to unseal, taken together with other evidence currently in the public record, prove, on information and belief, the following:

    a. Before her email correspondence with Sharon Churcher in 2011, Ms. Giuffre did not in any way accuse me of sexual abuse, although she had accused other prominent people of abusing her and had plenty of opportunity to do so, having been interviewed by Ms. Churcher over the course of several days. As she well knew, I never had any contact with her, sexual or otherwise.

    b. In an exchange of emails in 2011, Ms. Churcher, who was advising Ms. Giuffre about how to maximize her payments for selling her story, first raised the idea of mentioning me in connection with the alleged abuse, despite the fact that there was "no proof" that I was involved, because I am famous.

c. After receiving this email, Ms. Giuffre did in fact put me in her book draft, but she conspicuously did not accuse me of any sexual abuse or even any sexual contact, even though she explicitly mentioned others by name.

d. In a subsequent email exchange between Ms. Churcher, Ms. Giuffre, and Mr. Halperin, Ms. Churcher described several categories of prominent individuals with whom Ms. Giuffre claimed to have had sexual encounters. My name, along with that of Kenneth Starr, is mentioned in the letter, but *only* as one of the lawyers who negotiated Mr. Epstein's plea agreement. Had Ms. Churcher been told by Ms. Giuffre that I was among the prominent individuals who had participated in sexual activities with her, surely I would not have been mentioned only as Mr. Epstein's lawyer in a letter whose thrust was the "amazing names" of those who allegedly abused Ms. Giuffre. Ms. Churcher's lawyer has confirmed, in the Reply Brief, that I was not among the prominent individuals that Ms. Giuffre was accusing of sexual misconduct.

e. Ms. Giuffre lied during her January 2016 deposition in my defamation case against Mr. Edwards and Mr. Cassell. Among numerous other false statements, she testified (in the presence of Mr. Edwards, Mr. Cassell, and Ms. McCawley) that there were no emails between herself and Ms. Churcher that mentioned me by name. I did not learn of these emails until after I had settled my claims against Mr. Cassell and Edwards.

    f.  The Reply Brief filed on Ms. Churcher's behalf affirmatively argues that Ms. Churcher was "not suggesting" that I had sex with Ms. Giuffre, but merely was reminding Ms. Giuffre that Mr. Epstein and I knew each other.

  44.  The Requested Documents strongly corroborate my denials of Ms. Giuffre's malicious and false allegations against me, and they undermine her credibility by showing that she has lied under oath about me.

  45.  Ms. Giuffre has long been a willing and active participant in the publication and dissemination of her accusations. Indeed, according to documents publicly filed in the *Edwards* case, she sold her story to the press for $160,000 in 2011. As relates to me, Ms. Giuffre launched her continuing campaign of public character assassination by publicly filing false allegations of sexual abuse against me, knowing and intending, I believe, that they would be widely reported in the press. Most recently, she granted an interview to ABC News with the intent that it be broadcast on national television. To now allow her to hide strong evidence undermining her claims by sealing presumptively public court filings would be a perverse mockery of the judicial system, the First Amendment, and fundamental fairness.

  46.  These materials are also essential to my defense against a motion to sanction me brought against me Ms. Giuffre, via her lawyers at Boies Schiller & Flexner LLP, in connection with the *Edwards* case. In that motion, Ms. Giuffre and her lawyers argue that I should be sanctioned for submitting an affidavit and testifying (truthfully) about exculpatory comments made to me by David Boies. After the parties in *Edwards* reached a settlement, Ms. Giuffre and her lawyers insisted on pressing their sanctions motion against me. The motion was denied by the trial judge, but Ms. Giuffre and her counsel have noticed and are pursuing an appeal.

47. Because Ms. Giuffre and her lawyers continue to publicly stand by Ms. Giuffre's allegations with regard to the accusations against me, I am entitled, under the First Amendment and the common law, to access the Requested Documents and use them to defend my reputation. The Requested Documents are exculpatory and necessary to my defense.

Dated: August 11, 2016
Chilmark, Massachusetts

_____
ALAN M. DERSHOWITZ