**McCAWLEY DECLARATION**

# EXHIBIT 18

1

G3hdgium

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
3   VIRGINIA L. GIUFFRE,
4              Plaintiff,              New York, N.Y.
5          v.                         15 Civ. 7433(RWS)
6   GHISLAINE MAXWELL,
7              Defendant.
8   ------------------------------x
9                                     March 17, 2016
                                      2:18 p.m.
10
    Before:
11
                    HON. ROBERT W. SWEET,
12
                                      District Judge
13
                         APPEARANCES
14
    BOIES, SCHILLER & FLEXNER LLP
15       Attorneys for Plaintiff
    BY:  SIGRID S. McCAWLEY
16
    HADDON MORGAN AND FOREMAN, P.C.
17       Attorneys for Defendant
    BY:  JEFFREY PAGLIUCA
18       LAURA A. MENNINGER
19
20
21
22
23
24
25

                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

G3hdgium

1          THE COURT:  Thank you all very much.  I'm sorry for

2   the inconvenience that I have imposed upon you.  I'm sorry

3   about the inconvenience that you have imposed upon me.

4          But having said all of that, this really is the first

5   time that we've had an opportunity, I think, to get together on

6   this case.  And let me just say, I think -- I mean, I'm not

7   sure but I think I understand the difficulties of this case.

8   There is an emotional element, obviously, throughout the case

9   on both sides, and I understand that.  Fortunately, we're

10  blessed by excellent counsel and it would be nice if they can

11  avoid adopting the emotional flavor of their clients, and I

12  presume that they will be able to do that, it certainly will

13  help, because these issues are going to be difficult and I'm

14  well aware of it.

15         Now, at the outset, there is some discussion in these

16  papers about meet and confer.  Let me make clear what I would

17  like from this day forward.  On any discovery issues, I would

18  like to have a meet and confer.  Now, I understand that defense

19  counsel are living in God's country and they're not cursed with

20  the metropolitan residence.  I salute their good judgment in

21  that.  And so I will say that I will not require you to meet in

22  person, but I will require you to meet.

23         And I would say this.  If you have a meet and confer,

24  I would like to have correspondence between the parties as to

25  what the subject is so that there is an agreed agenda that's

G3hdgium

```
 1   written and we know that both sides know what it is, and that
 2   will help me if, ultimately, the problem gets back to me.  So I
 3   would say exchange writing as to what it's going to be and have
 4   a meeting.  It doesn't have to be in person, but it certainly
 5   has to be a significant meeting; it can't be just one
 6   ten-minute telephone call.
 7           So that's how I feel about the meet and confer.
 8           Now, I'm not going to get into whether that's relevant
 9   or not to the problems which we face today.  That's just going
10   forward.  As I say, I do hope that you all can -- it won't be
11   easy, but if you deal with these problems as the excellent
12   professionals that you are without the emotional implications,
13   having said that.
14           Now, how to go forward today?  My thought is the
15   following.  I have read your papers, and to say that I
16   understand the problems would be, I guess, a lie, but I'm
17   trying and you'll help me.  I have a list of what I think our
18   issues are and I would like to go through this with you, and
19   then when I'm finished, if we have missed something, I'm sure
20   you will correct me.  And I'd be pleased to hear if I determine
21   something, if you think that I'm wrong, that's fine, too.  I
22   mean, you can tell me why you think I'm wrong.
23           Now, the first problem is the document -- the issue
24   about improper privilege claims.  As I understand that issue,
25   it is the presence of Gow, Cohen and maybe somebody else as
```

G3hdgium

1    defeating the privilege, on the one hand.  On the other hand,

2    the assertion by the defense that their participation as

3    whatever they are, managers, public relations people, whatever,

4    is necessary for the rendering of legal advice.

5            Parenthetically, there is a subtext there about whose

6    law applies.  Let me say, I think we are going to apply New

7    York law in this case.  British law may become relevant in some

8    way or other down the road, but for this privilege purpose, I

9    think that's where we are.

10           I think what I would like is I would like any

11   materials that -- the obligation to establish this privilege is

12   obviously Ms. Maxwell's, and I would like any materials that

13   she wants to present to me about these meetings to establish

14   that it was necessary for the rendering of legal advice, I'll

15   review those materials in camera and try to reach a decision.

16   I may need something further after I have looked at them, but I

17   think that's the way I ought to deal with that particular

18   privilege issue.

19           There is a list of documents as to which objections

20   have been made on a variety of bases.  I will say probably a

21   catalog of every objection known to the mind of excellent

22   attorneys, and I think we will try to deal with those this

23   afternoon and maybe we'll fail, but let's put those aside just

24   for the moment.

25           The question about a protective order, of course there

5

G3hdgium

1    should be a protective order in this case.  You are good

2    lawyers and you have been around this track more times than I

3    have and so you can prepare consensually a better protective

4    order than I can, and I urge you to do that.  And, in fact, I

5    will give you two weeks to do that.  Should you fail, you can

6    present whatever materials you wish to me and I will decide

7    what the protective order is going to be.  That's not a good

8    idea because you know the case better than I do, obviously, and

9    so I urge you to resolve it by your litigation skills and not

10   leave it up to the ignorant district court judge who doesn't

11   really get into this kind of thing very often.  So you run a

12   risk if you leave it to me.

13          Now, I would say two weeks, and then if you can't get

14   an agreement, maybe three weeks from now we wrestle with that.

15   Hopefully we won't.  I have to do that.

16          The deposition -- the defendant of course will be

17   deposed, and we can work out right now when.  Obviously, you

18   don't want that deposition until the protective order is

19   completed.  So what do we do about that?  Do you want to deal

20   with that today, the actual date of the deposition, or should

21   we pass that until we accomplish the protective order?  What do

22   you all think about that?

23          MS. McCAWLEY:  Can I be heard on that, your Honor?

24   This is Sigrid McCawley.  I am counsel for Ms. Giuffre.

25          With respect to the deposition date, the 25th was the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

G3hdgium

1  date that my opposing counsel proposed as possibly being

2  available.  So we set it for that date, which is next Friday.

3  We also offered to hold that deposition transcript confidential

4  until such time as the protective order could be issued so that

5  there is no barrier to us being able to take this deposition.

6         THE COURT:  How about that?  Is that OK?

7         MR. PAGLIUCA:  Frankly, it is not, your Honor, and the

8  reason is we, clearly from the papers submitted so far and the

9  exchange of counsel, we have a significant disagreement at this

10  point as to what the word "confidential" actually means, and we

11  have proposed to the plaintiff a protective order that we

12  believe is appropriate and neutral --

13         THE COURT:  Well, maybe I can -- can we get over -- if

14  that's the primary issue on the protective order, can we deal

15  with that now?

16         MR. PAGLIUCA:  I think there is a secondary -- well,

17  it may not even be secondary.  There is another issue that is

18  directly related to that, your Honor, and that is the lack of

19  production of documents from the plaintiff.  The Court has not

20  seen these papers yet, but there are in my view significant

21  deficiencies with the Rule 26 disclosures.  There have been

22  failure to produce documents.  And it is unfair at this point

23  to push these depositions forward without the required exchange

24  of discovery.

25         THE COURT:  Let me ask the plaintiff.  You really --

7

G3hdgium

1          MS. McCAWLEY:  Could I be heard on that?  Thank you,
2     your Honor.  I'm sorry, I didn't mean to interrupt you.
3          THE COURT:  What do you think?
4          MS. McCAWLEY:  Right.  The issue is so I issued my
5     deposition notice before they even served discovery requests.
6          THE COURT:  OK.  All right.
7          MS. McCAWLEY:  I've done 3,000 pages.  They've done
8     two emails.
9          THE COURT:  Look, doesn't it make sense to resolve any
10    document discovery issues perhaps before the deposition?
11         MS. McCAWLEY:  I don't think so, your Honor.  I want
12    the testimony of this defendant in order to move this case
13    forward.  Our discovery closes in July.  I issued my discovery
14    requests in October.  I have not gotten the deposition of the
15    defendant yet.  This is a date she is available.  She is not
16    leaving the country.  She is not going anywhere.  I have her in
17    town next Friday.
18         I'll even agree to their protective order if it means
19    I can get her deposition, your Honor.  I just need to get this
20    case moving forward.  I need one deposition, the deposition of
21    the defendant in this case, who has called my client a liar.
22    We are entitled to depose her and see if she is going to answer
23    the questions about why she was --
24         THE COURT:  All right.  OK.
25         MS. McCAWLEY:  I am entitled to answers.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

G3hdgium

```
 1              THE COURT:  Well --
 2              MR. PAGLIUCA:  Your Honor, I think this is a good
 3    meeting and it is a meeting that should have happened a long
 4    time ago.  Let me say to the Court that we proposed to meet
 5    with plaintiff's counsel early on in this case to put together
 6    a discovery schedule that made sense.  We proposed that orally
 7    and in writing.  That proposal was ignored and rebuffed.  And
 8    counsel for the plaintiff then unilaterally scheduled a bunch
 9    of depositions without conferring on dates.  Unilaterally,
10    here's the dates, here are the depositions.  We then tried to
11    work through that issue, at the same time trying to work
12    through the protective order issue and the document issue, and
13    we get no response.  And I think the agenda here is to gain a
14    tactical advantage by not responding to these requests.
15              THE COURT:  Well, I can't believe that lawyers would
16    seek a tactical advantage.  I can't believe such a thing.
17              MR. PAGLIUCA:  I am shocked.
18              THE COURT:  OK.  Tell you what we're going to do.
19    We'll -- three weeks, let's see.  Her deposition -- this
20    question about document production, that hasn't been teed up,
21    so I don't know --
22              MS. McCAWLEY:  And can I be heard on that really
23    quickly?  I mean, If that were the standard, that they could
24    wait to --
25              THE COURT:  No.  It hasn't been teed up, I agree.
```

9

G3hdgium

1                  (Pause)

2                  OK.  Then I think what we should do is I'm assuming we

3     will resolve the protective order problem -- we've sort of slug

4     over the -- can we resolve what's confidential?  Is that

5     possible?  Could we do that this afternoon, or is that too

6     complicated?

7                  MS. McCAWLEY:  Your Honor, I can have the deposition

8     of the defendant in this case and move this case forward.  I

9     will agree to their protective order.  I just want that

10    deposition.

11                 THE COURT:  Yes.

12                 MS. McCAWLEY:  It is that important to me.

13                 THE COURT:  I get your point.  I understand that.  But

14    at the same time, I think, given the nature of all that lies in

15    this, I think it is fair to say no side would like to have this

16    aired, and so we've got to have a protective order that

17    everybody feels comfortable with.

18                 MS. McCAWLEY:  Your Honor, you can today enter the

19    protective order that they submit.  I will disregard my

20    objections if I get the deposition.

21                 THE COURT:  Will you agree now to the protective

22    order?

23                 MS. McCAWLEY:  Yes.  If it means I can get her

24    deposition, yes, I will do that.

25                 THE COURT:  Oh, OK.  Good.  Well, that solved that.

G3hdgium

1           MR. PAGLIUCA:  It is not as simple as that, your

2    Honor, because this quid pro quo, I'll agree to their

3    protective order if I can have the deposition on the 25th,

4    doesn't solve the problem.

5           THE COURT:  At least we've separated it.  She has

6    agreed to the protective order.  OK?  So that's done.  OK?

7           Now, why can't we have her deposition upon, whatever

8    it is, a week from Friday?

9           MS. McCAWLEY:  Friday, the 25th, this coming Friday, a

10   week from tomorrow.

11          THE COURT:  Oh, a week from tomorrow, yes.

12          MS. McCAWLEY:  Yes.

13          MS. MENNINGER:  Your Honor, we served discovery

14   requests on plaintiff on February 12th.

15          THE COURT:  Well, look, that's nice.  That's good.

16   But I don't have that, and I think she's right that there is no

17   rule that says you have to get your discovery requests

18   satisfied before the deposition, so --

19          MS. MENNINGER:  Your Honor, the responses were due

20   last night yesterday, so that is prior to Ms. Maxwell for the

21   25th.  However, as a part of producing that discovery response,

22   they have said they're going to take a month to roll out their

23   production, not just --

24          THE COURT:  Look.  I'll tell you what let's do.  I

25   don't have that, but let's -- we'll hold the deposition date.

G3hdgium

1    When we get through with the rest of this stuff, we'll find out

2    if there is something in particular that you want prior to next

3    Friday and see what that is and see if we can get it.  How is

4    that?

5            (Pause)

6            OK.  Who pays for what and counsel, all of that?

7    Those are interesting problems and who knows how they all come

8    out.  I think all of that is best served by reserving them

9    until the conclusion of the case, which is what I shall do.

10           The plaintiff wants to produce on a rolling basis and

11   to amend or add to the privilege log as the production goes

12   forward.  I don't see any problem with that.

13           MS. MENNINGER:  Your Honor, that's actually the issue

14   I was just alluding to.  I understand -- and I have said I

15   don't have a problem with plaintiff producing her documents

16   over the course of the month because she has said that it is a

17   hardship for her to produce them all last night, which is when

18   they were due.  However, she's trying to take our client's

19   deposition in the middle of her rolling production, in other

20   words, show up at the deposition with the documents she happens

21   to get --

22           THE COURT:  That's what I'm saying.  Maybe what we'll

23   do is to deal with the document production issue separately.

24           MS. MENNINGER:  OK.

25           THE COURT:  And if there are some documents that

G3hdgium

1    really seem to be important and they cannot be produced, then

2    maybe we'll put over the -- we'll see how that works.

3              MS. McCAWLEY:  Your Honor, I may be able to short

4    circuit this.

5              THE COURT:  Pardon me?

6              MS. McCAWLEY:  I may be able to short circuit this a

7    little bit.  We produced 3,000 pages last night.  We are

8    continuing that production.  We are moving as fast as we can.

9    We produced a privilege log with over 134 entries on it.  We

10   are continuing to move that forward as quickly as we can.

11             With respect to her deposition, your Honor, I'm happy

12   to provide them in advance every document I will be using at

13   her deposition.  In other words, if that is their issue, if it

14   means I can get her deposition next Friday, I will share with

15   them any document I intend to use at that deposition.

16             THE COURT:  That seems to solve the problem, don't you

17   think?

18             MS. MENNINGER:  Your Honor, I have to disagree.  I got

19   this responsive objection last night at 9:30 p.m., while I was

20   here in New York.  I've taken a look at it, and I can give your

21   Honor a sense of the types of objections that plaintiff has

22   lodged to our document request.  For example, their client sold

23   her diary to Radar Online.  It was published on Radar Online.

24   This diary contains plaintiff's allegations against my client.

25   So I asked for the diary that was sold to Radar Online.

G3hdgium

1           THE COURT:  You get it.

2           MS. MENNINGER:  It is copyright and proprietary

3    protected.  We're not going to produce it.  So that's the kind

4    of example --

5           THE COURT:  No.  You get it.

6           MS. McCAWLEY:  She doesn't have a diary.  She might be

7    referring to something else.  I mean, my client doesn't have a

8    diary to produce.  She doesn't have one.  Those were

9    handwritten notes that she gave a reporter.  She doesn't have

10   one.

11          THE COURT:  So you are saying --

12          MS. McCAWLEY:  That request is broader.  I mean --

13          THE COURT:  No.

14          MS. McCAWLEY:  I didn't know we were going to be

15   addressing my requests today --

16          THE COURT:  -- as to the diary, you say it doesn't

17   exist.  There is no diary, there are no notes, and whatever

18   there is has been the subject of the printed material?

19          MS. McCAWLEY:  Yes.

20          MS. MENNINGER:  Excerpts -- excerpts, your Honor, with

21   my client's name on them in plaintiff's handwriting were sold

22   to Radar Online, not the entire document.  And when I asked for

23   the entire document, I was told that it is proprietary and

24   copyright protected.

25          THE COURT:  What is "proprietary"?

G3hdgium

1           MS. McCAWLEY:  I think she's referring to a broader

2       request.  My client doesn't have a diary, which is what she's

3       addressing right now.  I don't have my requests in front of me,

4       your Honor.  We were here on their requests.  But if you want

5       to read the whole request, I can try and remember what --

6           THE COURT:  What are we talking --

7           MS. McCAWLEY:  Did they say I was withholding

8       documents?  I don't think I said I was withholding documents on

9       that request.  But, again, I don't have it in front of me and I

10      apologize.

11          MS. MENNINGER:  The request number 16 reads:  "Any

12      diary, journal, or calendar concerning your activity between

13      '96 and '02."

14          Response:  Ms. Giuffre objects to this request to the

15      extent it seeks proprietary- and copyright-protected material.

16      Ms. Giuffre objects in that it seeks information protected by

17      the attorney-client privilege, the attorney work product

18      privilege, the joint defense, interest privilege, the agency

19      privilege, the investigative privilege, the spousal privilege,

20      the accountant/client privilege, and any other applicable

21      privilege."

22          THE COURT:  Hot dog.  I tell you, that's great.

23          MS. McCAWLEY:  But did I say I didn't have --

24          THE COURT:  Shall we use that as the standard

25      objection to every document request and then let's forget about

G3hdgium

1     it?  OK, let's do this.

2              MS. McCAWLEY:  Your Honor, may I be heard on just one

3     point on this issue?

4              If the standard were that someone could wait in a case

5     to request documents and then push off depositions by

6     continuing to file new requests, it's apparently --

7              THE COURT:  Yes.  I hear you.  I understand that

8     point.  Look, obviously if there are documents that are covered

9     by the privilege, they have to be identified and logged.  So

10    that's the privilege.

11             I don't know, what is this proprietary thing?  What is

12    that all about?

13             MS. McCAWLEY:  To the extent she has commercially

14    valuable material that she has written, that's covered by --

15    it's covered by the protective order basically, that it would

16    be produced in a confidential format with a copyright-protected

17    format.  So it is a general objection --

18             THE COURT:  So she will produce that, she will produce

19    everything --

20             MS. McCAWLEY:  If she has something like that, yes.

21    Like I said, we produced 3,000 pages yesterday.

22             THE COURT:  And calendars and all of the rest of them?

23             MS. McCAWLEY:  To the extent she has any of that, we

24    will produce it, your Honor.

25             THE COURT:  All right.  In other words, you are going

16

G3hdgium

1    to produce everything except anything that you have that you

2    claim privilege as to which you will log?

3              MS. McCAWLEY:  Yes.  We have been logging --

4              THE COURT:  Well --

5              MS. MENNINGER:  Your Honor, on this particular one,

6    she says her client does not have any nonprivileged documents

7    created during the time period responsive to this request, and

8    then there are no privileged documents related to this log on

9    the privilege log.  So I don't have any way to read this

10   request in a privilege log and figure out whether there are

11   noncopyright materials that weren't withheld or there are

12   privileged because all of these privileges were raised --

13             THE COURT:  I take it that what's being said is that

14   she has no privileged documents that would be covered by that

15   request?

16             MS. MENNINGER:  That's not what the objection says.

17   And, your Honor, since she sold her handwritten notes about my

18   client to Radar Online, I know they exist because they were

19   excerpted on the Internet.

20             THE COURT:  Yes, but she said she doesn't have them.

21   She said -- I mean, correct me if I am wrong.

22             MS. McCAWLEY:  No, she doesn't have them.  But, your

23   Honor, I am happy to have -- first of all, she hasn't conferred

24   on these issues that we are talking about here today.  I am

25   happy to address them fully.  I feel very comfortable with our

G3hdgium

```
 1   discovery production in this case.  We will continue to roll it

 2   out; we have done it timely.  Unlike like the defendants, who I

 3   served their discovery requests October 27th, your Honor.  We

 4   are now in March.  I received two emails, two emails in

 5   response.  I produced 3,000 pages --

 6               MS. MENNINGER:  Your Honor, she is --

 7               (Unintelligible crosstalk)

 8               THE COURT:  Ladies, we're not going to get anywhere if

 9   we "who struck John."

10               MS. McCAWLEY:  I understand, your Honor.

11               I think I proposed something very fair by saying that

12   I would share with her any document I intend to use at that

13   deposition.  I just need the deposition.

14               THE COURT:  I understand.  I got you.  OK.

15               Now, you will identify any document -- I mean, you

16   tell them -- give them any documents that you are going to use

17   in the deposition.

18               MS. McCAWLEY:  Yes.

19               THE COURT:  OK.  Now, is there -- the business of this

20   production on -- you are going to have to -- well, wait a

21   minute.  Let me put it this way.  The objections to this 16 are

22   overruled except for the privilege.  OK?

23               MS. MENNINGER:  Your Honor, I've proposed dates for my

24   client to be available in two or three weeks, once we have

25   received a complete document production, which was due last
```

18

G3hdgium

1   night, and I have been told we're not going to talk about dates

2   in two or three weeks.  We haven't asked to set them out into

3   May or June.  We've just asked for the documents that were due

4   last night to be produced to us before our client's deposition.

5   This isn't some kind of game.  It's just she's been litigating

6   this case for seven years --

7              THE COURT:  OK.  Well, we've dealt with the first

8   objection.  Now, is there another one?

9              MS. McCAWLEY:  Right.  So we're here on my motion to

10  compel production of documents.  I am just getting a little

11  confused because I don't -- we are here -- my motion to compel

12  production of documents from her based on my request that --

13             THE COURT:  Let's not worry about the --

14             MS. McCAWLEY:  OK.  I just wanted to be clear.  I

15  don't have in front of me the request that she is referring to.

16             THE COURT:  OK.  Anything else that you think you need

17  besides the documents she is going to use, the response to 16?

18  Anything else --

19             MS. MENNINGER:  Your Honor --

20             THE COURT:  -- that is critical for the deposition?

21             MS. MENNINGER:  Your Honor, these were filed last

22  night at 9:30 p.m., the 3,000 pages were produced to my office,

23  which is in Colorado.  I haven't looked at the 3,000 pages that

24  were produced last night.  I will have to ask leave of the

25  Court to go back, look at the documents that were produced and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

19

G3hdgium

1    see what I am missing.

2              THE COURT:  All right.  If you want to, you can come

3    back on Thursday next week and we can argue about whether or

4    not the deposition should go forward on Friday.

5              MS. MENNINGER:  OK.

6              THE COURT:  That is all right with me.

7              MS. MENNINGER:  That is acceptable, your Honor.

8              THE COURT:  OK.  So maybe we've solved that problem.

9    OK.  Maybe.

10             Now, on the improper objections by the defendants.  I

11   suppose I can assume that the defendants' objections are just

12   exactly the same as the plaintiff's objections.

13             MR. PAGLIUCA:  No, your Honor.  They are not.

14             MS. McCAWLEY:  Oh, I'm sorry.  This is my motion to

15   compel.  Can I just address it initially so that I can lay out

16   for the Court what the issues are that we are raising on the

17   motion to compel?

18             THE COURT:  I'm sorry.

19             MS. McCAWLEY:  This is my motion to compel now.  Can I

20   address -- am I able to address that?

21             THE COURT:  Yes.

22             MS. McCAWLEY:  So with respect to our motion to compel

23   the documents from the defendant, as you know, your Honor,

24   there are two main objections that I think have to be overcome

25   in order for us to get that production properly.  The first

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G3hdgium

1   main objection is the fact that they are objecting to the time

2   period.  So we have sought requests from 1999, which is in

3   around the time when my client contends she was involved with

4   these individuals, to the present.  They objected that that

5   time period is overly broad.  They only agreed to produce for

6   the period of 1999 to 2002 and for one month, from December 31,

7   2014 to January 31, 2015.  So they cut out all the years in

8   between and anything post January 31, 2015.

9           Now, with respect to your Honor maybe saying why would

10   that time period be relevant, the entire time period is

11   relevant for a number of reasons.  First, in 1999, that's when

12   my client first recalls being --

13           THE COURT:  We can agree -- I think we can agree at

14   the outset that '99 to what is it?

15           MS. McCAWLEY:  2002.

16           THE COURT:  2002 is relevant.

17           MS. McCAWLEY:  Right.

18           THE COURT:  So what we're talking about is the -- what

19   happened in 2002?

20           MS. McCAWLEY:  My client was sent to Thailand by

21   Mr. Epstein and Ms. Maxwell for a training and to pick up

22   another --

23           THE COURT:  So she is no longer --

24           MS. McCAWLEY:  And she left.  She fled to Australia.

25           THE COURT:  OK.

G3hdgium

1              MS. McCAWLEY:  So with respect to these requests, I

2    just want to -- you know, because the Court has mentioned this

3    and it is worthy of referencing, that if you look at the

4    defendants' request to us, they actually request a longer time

5    period; they request from 1996 to the present.  So while they

6    don't want us to -- they don't want to produce to us except for

7    that short window, they are requesting the entire period.  In

8    some cases they request -- and I did a chart.  Your Honor,

9    would you mind if I just pass this up to you for reference?

10             THE COURT:  OK.

11             MS. McCAWLEY:  I did a chart, I believe it is on page

12   10, and it has for you the various requests and what the time

13   periods are, and for many of the requests there is no time

14   period at all.

15             MR. PAGLIUCA:  I have it.  I don't need it.

16             MS. McCAWLEY:  Oh, you have that?

17             MR. PAGLIUCA:  I do not need it.

18             MS. McCAWLEY:  OK.  I'm sorry.

19             So that time period shows that many of those requests

20   don't have a time period at all; so it is even broader, from

21   infancy to present.  So, in fairness, our requests are 1999 to

22   the present, which we believe is the critical time period.

23             Now, what happens in 2002?  So my client does flee to

24   Australia away from these individuals, but the conduct

25   continues.  So we have, for example, the law enforcement trash

G3hdgium

1    pulls that show the message pads of the back and forth of

2    arranging these underaged minors to come for massages, things

3    of that nature.  We have the flight logs that show Ms. Maxwell

4    flying 360 times with Jeffrey Epstein, 20 of which were with my

5    client when she was underage.  We have the Palm Beach police

6    report, which shows over 30 minors who reported during that

7    time period, to up until now 2006, being abused in that

8    circumstance in Palm Beach.  Then we have the arrest that

9    happens of Jeffrey Epstein in 2006.

10           Thereafter, my client in 2008 is -- I'm sorry, she

11   receives from the U.S. government a victim notification letter.

12   At that point, in 2009, Ms. Maxwell's deposition is sought in

13   underlying civil cases.  She flees from that deposition, says

14   her mother is ill in England, she has to leave the country,

15   cannot be deposed.  She then shows up three weeks later at

16   Chelsea Clinton's wedding.  So clearly she was around, she was

17   able to do something, but she avoided that deposition.  Her

18   testimony was never taken in that case.

19           So that's in 2009.  Then we have in 2011 my client is

20   interviewed by the FBI about the issues that have happened.

21   Then we have in 2011 Ms. Maxwell starts issuing different

22   statements to the press.  She continues that, issues a

23   statement in 2015, which is the statement that we are here

24   about in this case.

25           So I contend, your Honor, that all of those years have

23

G3hdgium

1    relevant information in them with respect to my client.

2              THE COURT:  OK.  I understand.

3              Let's hear from the defendant.

4              MR. PAGLIUCA:  So, your Honor, I have tried to refrain

5    from responding in kind, but the problem here is all of this --

6    the agenda behind all of this is not really the issue in this

7    case but it is to make inflammatory statements like counsel

8    just made as fact when they are speculation, at best, your

9    Honor, and to pack into the record things that are demonstrably

10   not true but counsel says them like they are true and then

11   refers to her own declaration to support the fact of what she

12   is saying may or may not be true.  So let's get to the issue

13   here in terms of the relevant timeframe.

14             First, the plaintiff goes to Thailand on her own

15   volition, gets married, and moves to Australia, where she

16   resides for some 12/13 years after, and has no contact with

17   Ms. Maxwell or Mr. Epstein.  So everything that happens from

18   2002 forward has absolutely nothing to do with the plaintiff in

19   this case, and she has absolutely no personal knowledge about

20   what did or didn't happen in Florida or elsewhere from that

21   timeframe forward.

22             You know, I carefully, your Honor, read your ruling on

23   the motion to dismiss, and I believe that you characterized the

24   issue in this case very narrowly, and that is is what the

25   plaintiff said about Ms. Maxwell, and from 1999 to 2002, true

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G3hdgium

1     or not.  Those two individuals have the facts that relate to

2     that, and anything outside of that, quite frankly, is opinion

3     and not a subject matter of this litigation.

4              Now, you have to focus not only on this expansive

5     timeframe in which the plaintiff is not even in this

6     hemisphere, which is combined with the overbroad requests that

7     don't ask for things that might be arguably relevant under a

8     404(b) analysis -- you know, for example, did this happen with

9     Ms. Maxwell and someone else in 2005, let's say -- those aren't

10    what the requests are.  The requests are for all communications

11    for 17 years with plug in the individual, all documents

12    relating to whatever you want to plug in there for 17 years.

13    And so those two things combined create a grossly overbroad and

14    unmanageable document request.  Hence, the objections.

15             Now, had we had the ability to confer about this, we

16    may have been able to get down to, here, these are really the

17    relevant timeframes, or you need to modify your requests for

18    production to say things like any communication with Jeffrey

19    Epstein related to the plaintiff, any communication with this

20    person related to the plaintiff.  But that's not what the

21    requests are.  And so what you are left with is an unmanageable

22    pile of requests for production of documents.

23             I will note, your Honor, so the Court has this in

24    context, there are 39 requests that have been proposed to

25    Ms. Maxwell.  She has no responsive documents, and I've so

G3hdgium

```
 1    indicated to 17 of those requests.  So we then winnow this down

 2    to the ones that we are objecting to for very good reason.  The

 3    timeframe we have proposed is the appropriate timeframe.  If

 4    there are narrowly tailored requests for production for

 5    something that may be relevant outside that timeframe, then

 6    they should propose that and not what they are proposing

 7    currently, which makes the entire process unwieldy and

 8    unreliable.

 9          MS. McCAWLEY:  Your Honor, the underlying issue in

10    this case is whether or not Ms. Maxwell lied when she said my

11    client was not subject to the abuse that she said she was

12    subject to.  So in order to prove that, for defamation with

13    malice, we have to prove that my client was abused by these

14    individuals, that these individuals did take advantage of her

15    in the way that she expressed.

16          What's relevant to that is the sexual trafficking

17    ring.  If after my client left they are also trafficking other

18    underaged girls repetitively, that is relevant to prove the

19    truth of my client's allegations as well.  We are entitled to

20    that in discovery, your Honor.  One of the requests is the

21    documents relating to communications of Jeffrey Epstein.  If

22    she is e-mailing Jeffrey Epstein about the girls she's going to

23    send over to him in 2004, before he is arrested, that's

24    relevant to my client's claim, your Honor.  So we shouldn't be

25    told that we're not entitled to these documents or that we're
```

G3hdgium

1    only entitled to two emails out of all of our requests.

2            In addition, he says that there are 17 requests that

3    they have no documents for, your Honor, but, again, they have

4    restricted the time period to this very short window and then

5    they answered in their responses.  OK.  So --

6            MR. PAGLIUCA:  That is not true.  If you read --

7    actually read the response, there is no restriction because we

8    have looked and there are no documents.  We're actually trying

9    to move this ball forward, your Honor, and what's happening

10   here is we keep getting sucked back into this morass of maybe

11   something happened.  If you listen to the words that counsel is

12   saying, your Honor, it is very illustrative of the fishing

13   expedition.  If there is this, then it is relevant.  But that

14   is not what they are asking for.  And you have to go back to

15   the request.  "All documents" -- Request No. 1:  "All documents

16   relating to communications with Jeffrey Epstein from 1990 to

17   present."  Well, that's not all documents concerning

18   trafficking or underaged girls, that's all documents relating

19   to, which could be anything in the universe.

20           Those are the reasons why I objected.

21           Request No. 3:  "All documents relating to

22   communications with Andrew Albert Christian Edward, Duke of

23   York, from 1990 to present."  You know, what the heck does a

24   communication with the Duke in 2013, any old communication,

25   have to do with anything in this case?  Nothing.  If you

G3hdgium

1    said -- if you give me a request for production of documents

2    that said give me any documents that talk about your press

3    release with the Duke, well, that might be relevant and

4    discoverable, but these are grossly overbroad.

5          If they had conferred with us, we would have been able

6    to narrow this down, but they haven't because there is an

7    agenda here that, quite frankly, I don't understand, your

8    Honor.  But what I think it is is to simply pack the record,

9    the written record and the oral record, with these very

10   specious, quite frankly, disgusting allegations about my

11   client, and that's not what we're here for.  If they want

12   something, they should ask for it specifically.  If they just

13   want to, you know, kind of throw things around -- if this, then

14   that -- then that's what we're about here.

15         MS. McCAWLEY:  Your Honor --

16         THE COURT:  All right.  I think I understand this

17   issue.

18         What else do we have?  We have the timeframe and the

19   specificity.

20         MS. McCAWLEY:  Right.  So, your Honor, there is the

21   timeframe for the request, and then, right, I assume that they

22   are alleging that these are overbroad in some way as --

23         THE COURT:  I would rather think I just heard that.

24         MS. McCAWLEY:  Right.  Exactly.  So, your Honor, just

25   to touch on that very quickly.  Not only -- and you will see it

G3hdgium

```
 1    in our papers, but we also give specific examples of why these
 2    are relevant, for example, and not overbroad.  For example, two
 3    of the people we asked for documents and communications with,
 4    Sarah Kellen and Nadia Marcinkova, when they were asked in
 5    their depositions about Ms. Maxwell sexually trafficking
 6    underaged girls, both of those individuals took the Fifth.  If
 7    there are documents between Ms. Maxwell and Sarah Kellen
 8    discussing those issues at any time from 1990 to present, we
 9    want those documents, your Honor.  And while they say that
10    day-to-day communications with Jeffrey Epstein wouldn't be
11    relevant, they would.  If they're communicating on a daily
12    basis, that's relevant.
13            THE COURT:  I understand that point.
14            MS. McCAWLEY:  So, your Honor, those are the two key
15    issues as I understand it, the time period and then the
16    overbreadth of the request, that they have been objecting to.
17            And, your Honor, we just obviously want discovery in
18    this case to move it forward.
19            THE COURT:  All right.  So we've got that.  I
20    understand that.  Is there any other broad category?
21            MS. McCAWLEY:  No.  Those are the two issues, as I
22    understand it, the date range which they've limited --
23            THE COURT:  If we resolve those two, have we resolved
24    the objections to the document demand?
25            MS. McCAWLEY:  That's my understanding, that they
```

G3hdgium

1   should be producing at that point.

2           THE COURT:  All right.

3           MR. PAGLIUCA:  Well, there are privilege issues that

4   remain unresolved.

5           THE COURT:  No.  We're going to deal with the

6   privilege issues.

7           MR. PAGLIUCA:  I just didn't want you to think --

8           THE COURT:  No.  I would be pleased to hear anybody if

9   they want to be heard on my proposal on the privilege --

10          MR. PAGLIUCA:  No.  I think that is fine, your Honor.

11  I just didn't want to let that be unsaid.

12          The other thing I need to add in this discussion,

13  though, your Honor, is this.  You know, the plaintiff

14  repeatedly now tries to distance herself from her own requests

15  for production by comparing, for example, the timeframe at

16  issue to the timeframe that Ms. Maxwell believes the plaintiff

17  should be responding to.

18          THE COURT:  OK.  All right.  We'll take a short

19  recess.

20          (Recess)

21          THE COURT:  Please be seated.  Thank you very much.

22          The motion is granted and denied.  Does that help?

23          MR. PAGLIUCA:  Perfect, your Honor.

24          THE COURT:  Let's do this.  This is an effort to keep

25  this going forward.

G3hdgium

1          I think a blanket coverage of all documents is too

2    broad.  I think the period is relevant -- I mean, it could be

3    relevant.  I don't say it is but it could be relevant.  So the

4    period is all right, that is, the 2000 and later.  I think any

5    documents with named individuals, that's fine.

6          As to "too broad categories," here's my problem and

7    maybe you can help me.  Any documents which relate to any

8    activity of the defendant with respect to the practice which

9    has been alleged.  Now, I don't want to try to define what that

10   is, and I hope you all today will define that.  And then I

11   would say any documents that relate to the duties to be

12   performed by Maxwell.  And it may be that there are other

13   definitional categories that would be appropriate but they

14   don't occur to me at the moment.

15         Now, let me ask the plaintiff, how do you want to

16   define the activities?

17         MS. McCAWLEY:  I'm comfortable defining "activities,"

18   your Honor.  I think you said any documents which relate to the

19   activities of defendant with respect to the practice, which we

20   would say would be sexual abuse or trafficking of minors.

21         THE COURT:  OK.

22         MS. McCAWLEY:  And I think that everybody has an

23   understanding of what that is.  So if there is emails about

24   girls getting massages for those sorts of --

25         THE COURT:  All right.  So what do you all think about

G3hdgium

1    that?

2              MR. PAGLIUCA:  If we're limiting it to minors, which I

3    understand this to be limited to, I think that's fine.  I mean,

4    we are talking about -- the allegation in this case is,

5    according to Ms. Giuffre, is that she was an underaged minor,

6    trafficked individual, and my client has vehemently denied that

7    in the press and here.  And so that's the issue.  And I think

8    if that's what we are talking about, we are fine with that.

9              MS. McCAWLEY:  Your Honor, can I just clarify really

10   quickly?

11             There was trafficking of both underaged and women that

12   were over 18.  So I wouldn't feel comfortable limiting it to

13   just the minors, under 18.

14             MR. PAGLIUCA:  You can't traffic somebody --

15             MS. McCAWLEY:  You can prosecute someone over

16   international lines, and that is a federal offense if they

17   are --

18             THE COURT:  Let's --

19             MR. PAGLIUCA:  That's not the definition.

20             THE COURT:  Let me -- if we skip the minors, what

21   would it be?  It would be any -- yes, it would be any --

22             MS. McCAWLEY:  Females.

23             THE COURT:  The documents relating to trafficking,

24   what for?

25             MS. McCAWLEY:  Sexual trafficking or sexual abuse of

G3hdgium

1   any female.

2           THE COURT:  That is OK.

3           MR. PAGLIUCA:  To be clear, we talking about something

4   that is illegal, right?

5           THE COURT:  Are we?  I don't think it has to be

6   illegal in the context of the defamation.

7           MR. PAGLIUCA:  Let me sort of recap, your Honor.

8   Because the defamation is that Ms. Giuffre was a minor and from

9   1999 to 2002 somehow was, quote-unquote, sexually trafficked.

10          THE COURT:  Your client's statement is that she was a

11  liar and -- I mean, I don't mean to prejudge that, but I mean

12  that's the issue as I understand it.

13          MR. PAGLIUCA:  Well, and the Court narrowed this down

14  in the Court's order on the motion to dismiss, which is that

15  the statements relating to Ms. Maxwell's participation in the

16  trafficking of the plaintiff were untrue or unfounded.  Those

17  are the statements.

18          THE COURT:  OK.

19          MS. McCAWLEY:  Yes.

20          THE COURT:  Then I think it is conceivable that it

21  wouldn't be limited to minors.  What I'm trying to say is if

22  there were trafficking other than with minors, that might also

23  be relevant to the existence of the practice.

24          MS. McCAWLEY:  Exactly.

25          THE COURT:  OK.  So it isn't limited to minors.

G3hdgium

1           MS. McCAWLEY:  Thank you, your Honor.

2           THE COURT:  Anything else?

3           MS. McCAWLEY:  No, your Honor.  I just wanted to have

4    an understanding, because maybe I'm not a quick study, but as

5    to what your ruling is with respect to the deposition?  I

6    understand that I agreed to waive any --

7           THE COURT:  Where we are is the deposition is going

8    forward.  If they want to come forward and seek to adjourn it,

9    I will hear it next Thursday.

10          MS. McCAWLEY:  OK.  So it is set for Friday.  If they

11   come to you on Thursday, we argue about that?

12          THE COURT:  Yes.

13          MS. McCAWLEY:  But it is going forward on Friday?

14          THE COURT:  Yes.

15          MS. McCAWLEY:  Thank you, your Honor.

16          MS. MENNINGER:  Your Honor, with respect to the

17   document responses and production that we received last night,

18   I would ask the Court for an expedited briefing schedule so

19   that can be heard next Thursday as well.

20          THE COURT:  Sure.

21          MS. MENNINGER:  Because I have looked at them and I

22   think that there are some very facially invalid --

23          THE COURT:  Sure.  That is fine.

24          MS. MENNINGER:  -- responses.

25          THE COURT:  That is OK.

34

G3hdgium

1           MS. MENNINGER:  So I would ask your Honor -- it is

2    Thursday now -- I would ask, if I could, to file the motion --

3    I mean, we're not going to have--

4           THE COURT:  By noon Wednesday?

5           MS. MENNINGER:  By noon on Wednesday, and then we'll

6    be back to your Honor on Thursday.

7           THE COURT:  Yes.

8           MS. McCAWLEY:  Can I have it on Tuesday so I can

9    respond, or no?

10          THE COURT:  Well, it's a short fuse.  All right.  I

11   would say by close of business -- if you make whatever you want

12   to do with that by the close of business on Tuesday instead of

13   noon Wednesday, that gives you -- I just cheated you out of --

14   I did a good thing.  I did a good thing.  I permitted you to

15   have a nice night's sleep on Tuesday.

16          MS. MENNINGER:  And, your Honor, I think if I heard

17   your Honor correctly, that if we had other issues with respect

18   to our client's deposition, we could raise those and have that

19   for next Thursday as well?

20          THE COURT:  Yeah, but it's going to be -- yes.  Sure.

21   Listen, I can't prevent lawyers from making mistakes -- or,

22   excuse me, making motions.  So do whatever you --

23          MS. MENNINGER:  As much as you might like to.

24          THE COURT:  So do whatever you want to do.

25          MS. MENNINGER:  All right.  Thank you, your Honor.

G3hdgium

```
 1              THE COURT:  Anything else?

 2              MS. McCAWLEY:  That's it, your Honor.  Thank you.

 3              THE COURT:  Do you think the four of us are going to

 4    survive this experience?

 5              MS. McCAWLEY:  I think so, your Honor.

 6              THE COURT:  Yeah?  OK.  Let's hope so.

 7              MS. McCAWLEY:  Thank you, your Honor.

 8              THE COURT:  Anything else?

 9              MS. McCAWLEY:  In a period of time.

10              MR. PAGLIUCA:  Nothing further, your Honor.

11              THE COURT:  OK.  Thanks.

12

13                              -  -  -

14

15

16

17

18

19

20

21

22

23

24

25
```