McCAWLEY DECLARATION

# EXHIBIT 19

1

G4LMGIUC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   VIRGINIA L. GIUFFRE,

4                    Plaintiff,

5           v.                          15 Civ. 7433 (RWS)

6   GHISLAINE MAXWELL,

7                    Defendant.

8   ------------------------------x
                                    New York, N.Y.
9                                   April 21, 2016
                                    11:05 a.m.
10
    Before:
11
                    HON. ROBERT W. SWEET,
12
                                    District Judge
13
                        APPEARANCES
14
    BOIES, SCHILLER & FLEXNER LLP
15       Attorneys for Plaintiff
    BY:  SIGRID STONE McCAWLEY
16       -and-
    FARMER, JAFFE, WEISSING, EDWARDS, FISTOS & LEHRMAN, P.L.
17  BY:  BRAD EDWARDS
         -and-
18  PAUL G. CASSELL

19  HADDON, MORGAN & FOREMAN
         Attorneys for Defendant
20  BY:  LAURA A. MENNINGER
         JEFF PAGLUICA
21

22

23

24

25

2

G4LMGIUC

```
 1              (Case called)

 2              THE COURT:  Welcome back.  I have read the papers.

 3   Who knows.  I might have missed something, but I think I've got

 4   it fairly well under control.  I would be pleased to hear

 5   anything anybody wants to tell me in addition to what you've

 6   already given me.

 7              MS. McCAWLEY:  Your Honor, this is Sigrid McCawley.  I

 8   would like to start, if it's convenient with the Court, with

 9   the pro hac vice motions that are pending because we would like

10   counsel to be able to anticipate in these proceedings.  Would

11   that be all right if I started with that?

12              THE COURT:  I don't care.

13              MS. McCAWLEY:  Thank you.  Your Honor, you have before

14   you two pro hac vice motions.  My client, Virginia Giuffre,

15   would like to have counsel of record in the case be added as

16   Professor Paul Cassell and Brad Edwards.  We have presented

17   those pro hacs to your Honor.  This is the first time in my

18   years of practice that I've had a contested one, so I've looked

19   at the case law surrounding that and I think it is very clear

20   that a client is entitled to counsel of choice in a case.

21              In this matter she has selected these lawyers.  They

22   have been working with her.  They had been working on this

23   matter for many months now.  We need them as counsel of record

24   in the case now because we are going to have depositions

25   throughout the country where, for example, Professor Cassell is
```

3

G4LMGIUC

1   in Utah.  He will be able to handle the Colorado depositions

2   and things of that nature.  We are here because those pro hac

3   vice motions are being contested.  The core piece of that is

4   the argument that they should not be allowed to seek

5   confidential information in this case.

6          Your Honor will remember that I was before you a

7   couple of weeks ago again trying to get the deposition of the

8   defendant, which is set for tomorrow, but still hasn't occurred

9   yet.  And in order to expedite that process I agreed to the

10  protective order that was put in front of the Court and I

11  waived all of my objections to that in order to be able to

12  facilitate and move that deposition forward.  That protective

13  order provides that attorneys who are actively working on the

14  case can receive confidential material.

15         My opposing counsel has interpreted that to mean that

16  that must be a counsel of record in the case.  We disagree with

17  that interpretation.  I wouldn't have agreed to a protective

18  order knowing that they were already working on the case.  If

19  that were the situation, as your Honor can understand in this

20  case, the majority of the material has been marked

21  confidential, so it would prohibit my cocounsel from working on

22  behalf of their client.

23         Your Honor, I'm here to request on behalf of my

24  client, Virginia Giuffre, that she be entitled to have her

25  counsel of record of choice in this matter.  If your Honor will

4

G4LMGIUC

1   indulge me, I would like Mr. Cassell to address his pro hac

2   motion, please.

3          MR. CASSELL:  Good morning, your Honor, Paul Cassell.

4   I'm a law professor.

5          THE COURT:  I don't want to hear it.  Sorry.  No.

6   Thanks very much.

7          MR. CASSELL:  Thank you, your Honor.

8          THE COURT:  Anything from the defense.

9          MR. PAGLIUCA:  Yes, your Honor.  Jeff Pagliuca on

10  behalf of Ms. Maxwell.

11          Your Honor, I have never opposed a pro hac motion in

12  my 34 years of practice, so this is a first for me.  But it is

13  clear, your Honor, that these lawyers will be witnesses in this

14  case.

15          THE COURT:  This we don't know.  I can't make that

16  determination now.  Anything else?

17          MR. PAGLIUCA:  Yes.

18          THE COURT:  You may be totally right, but I don't

19  know.

20          MR. PAGLIUCA:  Your Honor, here is the problem.  This

21  case is about the plaintiff's false allegations.

22          THE COURT:  Yes.  I think I picked up on that.

23          MR. PAGLIUCA:  These are the lawyers that wrote the

24  false allegations.

25          THE COURT:  I think I picked up on that, too.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

G4LMGIUC

1          MR. PAGLIUCA:  These are the lawyers that admitted

2    that these were false allegations.

3          THE COURT:  I know.  I don't have to tell you, you

4    know, there is going to be all kinds of privilege issues, all

5    kinds of issues about whether or not they have to testify.  We

6    are not at that stage.  I cannot and I will not decide that

7    now.

8          What else?

9          MR. PAGLIUCA:  There is a problem with the sharing of

10    confidential information with these lawyers.  These lawyers

11    have both personal and professional interests.

12          THE COURT:  I understand that.  I get that point.

13    Anything else?

14          MR. PAGLIUCA:  No, your Honor.

15          THE COURT:  This is what we will do on the pro hac.

16    Everybody agrees, nobody, maybe in the world, but nobody in

17    this courtroom, including me, has dealt with this kind of

18    problem before.  That's perhaps only one of a number of issues

19    that are unique about this case.  That's neither here nor

20    there.  Clearly, the plaintiff has the right to consult with

21    any lawyer she chooses.  However, the materials here are

22    sensitive.  I don't know the extent to which they have been

23    designated confidential, but I'm quite sure that a substantial

24    number of them have been, by the very nature of the case, I

25    guess.  Let me put it this way.  I want to be sure that we

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

G4LMGIUC

1    enforce the confidentiality appropriately.

2            Now, with those preliminary thoughts in mind I am

3    going to deny the motion at this time because I know that there

4    is a statement, some kind of a statement from the mediator in

5    the Florida action.  When I get a piece of paper that says the

6    Florida action is dismissed, a court order or whatever, then

7    this motion can be renewed.

8            Also, I want an affidavit from the two lawyers that

9    there is no matter in which they are personally involved, that

10   they are making no claim, there is no claims, there is no

11   litigation in which they are involved.  The reason I say that

12   is that I would not grant the application for a pro hac status

13   to a party in this or a related litigation.  If I get those

14   affidavits and the statement about the closure of the Florida

15   case in which they are a party, then the application can be

16   renewed and at that point I would be probably inclined, unless

17   something else comes up or unless the defense tells me

18   something that I don't now know, I would grant the application

19   that brings us to the order itself and the meaning of the

20   order.  I think active in the litigation is the key phrase.

21   The plaintiff has listed the people that she considers would be

22   appropriate and it's these two gentleman and I think one other

23   person, and that's fine.  That is the definition.

24           However, I'm also going to ask the parties to agree

25   upon an order that would expand the confidentiality agreement

7

G4LMGIUC

1    to this extent, to require the plaintiff to indicate to me and

2    to the defense if there is anyone else who is going to be

3    active in the litigation.  I'll tell you why I feel this way.

4    I want to be sure that we can enforce the confidential aspect

5    of that agreement, and I think that could be critical down the

6    line.  That's the reason for those requests.

7            Now, we also have a motion to compel.

8            MS. McCAWLEY:  Your Honor, can I just get

9    clarification very quickly because I don't want to have to come

10   back to the court so I want to make sure I'm following

11   correctly.  Your ruling, because we have a deposition tomorrow

12   that counsel was going to be assisting me with, particularly on

13   the Fifth Amendment --

14           THE COURT:  Can't have access unless I get these

15   materials by then.  If I do, that's something else.  If I do,

16   fine.  Otherwise, they can't have access to the confidential

17   data.  They can assist.

18           MS. McCAWLEY:  Can I just point something out to the

19   Court as well.

20           THE COURT:  The plaintiff can have any lawyer she

21   wants.  The question is the confidential materials.

22           MS. McCAWLEY:  Can I just point the Court to one more

23   issue, because this is their protective order.  They now said

24   to the Court that these two individuals are witnesses or

25   potential witnesses.  The protective order allows in Section G

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

G4LMGIUC

1     confidential material to go to deponents, witnesses or

2     potential witnesses.

3             THE COURT:  That's a different issue.  I have not

4     dealt with that.  Obviously anybody who is a witness may have

5     access to the confidential material, because they have to buy

6     into the confidentiality order in order to do that.  But they

7     are outside of it at the moment.

8             MS. McCAWLEY:  Your ruling is, they cannot attend the

9     deposition tomorrow?

10            THE COURT:  They can.  Anybody can attend the

11    deposition that anybody wants to have, but they can't

12    participate in it.  They can't have access to the confidential

13    material until we get this matter straightened out.  Ok.

14            MS. McCAWLEY:  I understand, your Honor.

15            MR. PAGLIUCA:  Your Honor, we will be designating the

16    testimony as confidential.

17            THE COURT:  You see.  There you go.  That's life.  I

18    can't believe that this entire testimony is going to be

19    confidential.  Honestly, you all are too much.  Ok.  If that's

20    what you do, you know that's not going to work because not all

21    of this stuff at issue is going be to confidential.  No, no

22    way.  What is your name?  Ok.  We will deal with tomorrow's

23    problem tomorrow.

24            MR. PAGLIUCA:  Ok, your Honor.

25            THE COURT:  The compel.  Anybody want to add anything

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

G4LMGIUC

1   on that?

2          MS. MENNINGER:  Yes, your Honor.  Laura Menninger on

3   behalf of Ms. Maxwell.  I have taken the liberty, your Honor,

4   of just making a very short little cheat sheet of the

5   outstanding issues, if I may approach.

6          THE COURT:  Yes.  It will be interesting to see if

7   yours is the same as the one we have prepared.  Yours is much

8   longer than ours.

9          MS. MENNINGER:  Your Honor, I'm happy to address all

10  of the ones on mine.  I certainly am also happy to take

11  direction from the Court regarding issues that you believe to

12  still be of more interest.

13         THE COURT:  As I say, I've read your papers.  I would

14  be pleased to hear anything you want to add that you think is

15  not covered or you want to respond or anything like that.

16         MS. MENNINGER:  Your Honor, one of the largest and

17  most significant pieces to us are the assertions by plaintiff

18  that her own communications with law enforcement are somehow

19  protected by --

20         THE COURT:  I'm prepared to deal with that.

21         MS. MENNINGER:  The second one, your Honor, and it

22  relates somewhat to the issues already presented on the pro hac

23  motions, are our requests for the fee agreements with all of

24  plaintiff's various 15 or so lawyers who purport to be

25  representing her.  Your Honor, I can find no case law that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G4LMGIUC

1  suggests that the agreements are privileged, as plaintiff

2  argues.  She has refused to identify when these individuals

3  began their representations, the nature of the representations.

4        THE COURT:  There is a little confusion here, at least

5  in my mind, as to what we are talking about.  I certainly

6  understand the two gentlemen whose applications I have just

7  dealt with and the third person, who I take it is affiliated

8  with the Boies firm.

9        Obviously, over time the plaintiff has probably

10  conferred with other lawyers.  But who cares?  Let's assume she

11  has talked to 20 more lawyers.  You want all those retainers?

12  That doesn't make any sense.  What is the universe we are

13  talking about?

14        MS. MENNINGER:  Your Honor, I certainly understand all

15  of the members of the Boies firm that currently represent her.

16  The third individual, if I understand correctly, is a gentleman

17  by the name of Stan Pottinger.  He is a lawyer of some renown.

18  He is also an author of best-selling books.  He is listed quite

19  frequently on plaintiff's privilege log as being part and

20  parcel of advice being given to her on, quote/unquote, media

21  issues.

22        THE COURT:  That is one.

23        MS. MENNINGER:  Your Honor, there are other persons

24  listed on their privilege log.  Many are listed as counsel for

25  plaintiff, but others are listed.  Attorney giving advice to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G4LMGIUC

1    victim's --

2            THE COURT:  Is what you want the retainer agreements,

3    if there are any, whatever the arrangements are, with anybody

4    on the privilege log that is listed as rendering advice?

5            MS. MENNINGER:  Yes, your Honor.  That, I think, would

6    be appropriate because some of our biggest issues concern the

7    privilege log.

8            THE COURT:  I understand.

9            What else?

10           MS. MENNINGER:  Your Honor, we have asked for, but

11   been denied by plaintiff, her own deposition testimony in the

12   Florida action.  In that case the Court entered a confidential

13   order --

14           THE COURT:  I'm prepared to deal with it.

15           MS. MENNINGER:  Your Honor, the next topic are

16   plaintiff's medical records.

17           THE COURT:  I think I understand that.  There is one

18   thing, though.  Are there any pre-'99 medical records?

19           MS. MENNINGER:  Your Honor, the case law is quite

20   clear that injuries that were preexisting --

21           THE COURT:  I'm sorry.  Excuse me.  Go ahead.

22           MS. MENNINGER:  Plaintiff has alleged that the

23   defamation of this action triggered or caused her to reflect

24   back upon her alleged sexual abuse.  She has also alleged, for

25   example, that many, several, three, I think, at last count, or

G4LMGIUC

1    four individuals had sexually abused her prior to ever meeting

2    Mr. Epstein.

3            If she has evidence that she already was suffering

4    from depression or some type of mental health disorder before

5    meeting our client, Ms. Maxwell, or Mr. Epstein, then her

6    flashbacks, if you will, could be related to other incidents

7    that she has put out in the press.  And she, I believe, has

8    also told the press that she was in a drug rehabilitation

9    facility at the time that she met Mr. Epstein.

10           Obviously, to the extent she was under the influence

11   of drugs, which is what she has told the press, at the time she

12   met him, she persisted in being addicted to drugs during the

13   time that she knew Mr. Epstein, and it certainly relates to all

14   of her requests for, I believe she has requested $30 million in

15   damages, your Honor, not just from the defamation, but also

16   harkening back to what she claims were her years as a sex abuse

17   victim.

18           THE COURT:  What's the basis of your statement that we

19   will call it the flashback?

20           MS. MENNINGER:  Your Honor, I believe --

21           THE COURT:  Because, quite frankly, I was unaware of

22   that.  Is that my error?  Are you telling me something that's

23   not quite right?

24           MS. MENNINGER:  Your Honor, I believe that is what

25   plaintiff has alleged in her complaint.  If you can give me a

G4LMGIUC

1   moment.  To the extent she is now alleging she suffers from

2   emotional distress from any preexisting --

3          THE COURT:  That's from the defamation.

4          MS. MENNINGER:  She claims it's from the defamation.

5   However, your Honor, if she has preexisting conditions that

6   were truly the cause of whatever emotional injury she claims

7   that she now possesses --

8          THE COURT:  Correct me if I'm wrong, and perhaps

9   plaintiff will make it clear, my understanding is that the

10  injuries alleged result from the claim of the alleged

11  defamation, period.

12         MS. MENNINGER:  Your Honor, she has claimed emotional

13  distress from the defamation, yes.  We are requesting evidence

14  that would show that she has preexisting emotional conditions.

15         THE COURT:  Not from the defamation.

16         MS. MENNINGER:  Not from the defamation.  From the

17  many, many other things that have occurred in her life

18  predating even her meeting Mr. Epstein and Ms. Maxwell, as she

19  has told the press, not because we told the press that.

20         Your Honor, it is difficult, if not impossible, to

21  address her claimed $30 million emotional distress from a

22  defamation statement that was a denial of her allegations

23  versus any emotional distress or emotional conditions she

24  already had before any such statement was made.

25         Similarly, your Honor, we have asked for discovery of

G4LMGIUC

1    her claimed prior sexual abuse.  She has, again, put in the

2    press a number of statements regarding that, and I can't

3    imagine that it is to the extent she claims privacy now, those

4    might be relevant in our case both on credibility and also

5    damage issues.

6         Your Honor, we have asked for a lot of other

7    interrogatories and documents that go to her damage claims, her

8    education records, her work history.  She has refused to answer

9    any questions before where she has worked.  She has refused to

10   answer any questions about where she went to school.  All of

11   these are appropriate under the local rule for interrogatories.

12        Finally, your Honor, we have asked for her contracts

13   with media.  She has refused to disclose those.  She has

14   refused to disclose her tax returns that show all of the

15   payments that she has received from various media sources.

16        THE COURT:  I take it your view of any funds from the

17   media would operate to reduce her damages.

18        MS. MENNINGER:  Your Honor, it also shows her motive

19   and bias in bringing this case.  To the extent she has been

20   paid for her stories to the media, which she has, she has

21   admitted that she has been paid hundreds of thousands of

22   dollars for giving these stories to the media.

23        But to the extent that she is now bringing this

24   defamation claim, if she is still either planning to receive

25   more money from the media, she has a motive and bias to make

G4LMGIUC

1   her story consistent with her previous stories.  She has

2   claimed $5 million in lost wages, your Honor.  This is a person

3   who has worked primarily as a waitress in the last 15 years,

4   until her media sensational story was purchased from her by

5   some British press.

6           THE COURT:  Anything else?

7           MS. MENNINGER:  Your Honor, the other issues are

8   addressed in our papers.  We have highlighted her incomplete

9   production on several fronts and her refusal to answer any

10  interrogatories.  So I would rest on my papers with respect to

11  the other arguments.  Thank you.

12          MS. McCAWLEY:  Thank you, your Honor.  I'd like to be

13  very clear here, your Honor.  Discovery production, I've tried

14  to do that in our papers.  But listening to opposing counsel

15  I'm concerned maybe she hasn't reviewed the documents we have

16  produced.  We have clearly produced all of the media

17  communications she has, including records --

18          THE COURT:  All the media.

19          MS. McCAWLEY:  All of the media communications.  She

20  has issued wildly broad requests in this case which we have

21  complied with.  We ran over 200 search terms.  Her request No.

22  5 alone seeks communications with over 100 individuals.  And we

23  have complied, your Honor.  This is coming from the defendant

24  who until Monday night, when you directed her to produce

25  privileged information, has only produced two e-mails in this

G4LMGIUC

1    case.

2          Your Honor, we have complied with our production.  We

3    have produced the materials that she is saying we have not

4    produced.  It's incorrect.  We have produced her school records

5    that we have.  We have produced her tax records that we have.

6    We have produced all of those items that we have.

7          With respect to her medical records I am going to

8    direct you to the case that is cited in our brief as the Evanko

9    case and it was a similar circumstance to here.  It was a Title

10   VII case where there were emotional distress damages being

11   alleged and the Court found that the other side could not have

12   carte blanche ruling over all of her medical records from the

13   time she was born to the present.  We met and conferred on two

14   hours on their discovery requests, your Honor.  We agreed to

15   produce all of her medical records that we had from 1999 to

16   2002 and anything else we had that was related to the sexual

17   abuse she endured at the hands of the defendant and

18   Mr. Epstein.  We have agreed to produce those.

19         We have already started producing those records from

20   the various doctors, from the treating physicians.  Those are

21   in their production.  Should they be entitled to things that

22   happened prior to that?  Absolutely not, your Honor.  They are

23   not entitled to a full-scale production of everything that's

24   happened in this young lady's life.  She was abused by these

25   individuals.  She shouldn't be reabused by having to disclose

17

G4LMGIUC

1   things that happened prior to her time with them.  Your Honor,

2   we do object to the production of that material.

3           THE COURT:  The flashback allegation.

4           MS. McCAWLEY:  I think what she may be referring to, I

5   have not heard that term used, I think what she may be

6   referring to was the fact that this is a defamation claim and

7   the person who defamed my client was also an abuser, we allege.

8   So when she is defamed by the person who abused her and that

9   abuser is calling her a liar, that caused her significant

10  emotional distress.  It's different than if some other

11  individual that she had not had contact with called her a liar.

12  When she is talking about a flashback, maybe that's what she is

13  referring to, but we don't have the word flashback anywhere in

14  our complaint.

15          THE COURT:  No.  I made that up.

16          There will be no claim by the plaintiff that the

17  defamation caused her distress by making her aware or as a

18  result of the prior sexual abuse.

19          MS. McCAWLEY:  The sexual abuse by the defendants?

20          THE COURT:  No.

21          MS. McCAWLEY:  Sexual abuse by others.

22          THE COURT:  Yes.

23          MS. McCAWLEY:  No.  Sexual abuse that relates to the

24  Epstein period, yes.

25          THE COURT:  That I understand.

G4LMGIUC

1          MS. McCAWLEY:  I think we are on the same page.

2          THE COURT:  I think talking about the earlier period.

3          MS. McCAWLEY:  Prior to Epstein, no, no, she doesn't

4    have a claim with respect to that.

5          THE COURT:  Anything else?

6          MS. McCAWLEY:  Your Honor, I just want to point out

7    again that our production -- you asked us to complete that.  We

8    have gone through and run over 200 search terms.  We have

9    produced all of those communications she has had with all of

10   those individuals.  The things that we have not produced are

11   the criminal investigation records.  I know your Honor is going

12   to address that.  I would like to be very clear there.

13          The point there is that she has said in the motion to

14   stay papers that she filed Tuesday that she needs to have that

15   information so she can decide whether she is going to be

16   asserting her Fifth Amendment privilege.  Truthful testimony

17   shouldn't have to be crafted, your Honor.  She shouldn't need

18   to know what agency is investigating her in order to decide

19   whether or not she is going to be asserting her Fifth Amendment

20   privilege.

21          We do have with us, your Honor, for an in camera

22   submission, if you would like it.  That is the way that courts

23   have dealt with this issue in the past.  When there is a claim

24   from an agency that the disclosure of that investigation could

25   harm the investigation, we can submit that to you for in camera

G4LMGIUC

1    review so you are aware of the ongoing investigation.  But it

2    is my view that that needs to be protected.

3            As you probably know, the history of these cases with

4    Mr. Epstein, there were a variety of things that went on in

5    that investigation, so there is reason to keep an investigation

6    in this situation protected so that they can properly

7    investigate and move forward with that without being inhibited

8    by other individuals.  Your Honor, I would ask that that remain

9    protected.  It's covered by her very, very broad requests,

10   which is why we had to lodge those objections.  I would

11   appreciate your Honor considering our arguments with respect to

12   that issue.

13           The other things, your Honor, that she has raised is,

14   for example, she had asked for the Epstein settlement agreement

15   and that was one of the things that she asked for.  We agreed

16   to produce that if we got the waiver from Mr. Epstein because

17   we can't produce it without that waiver.

18           I believe that covers it, your Honor.  If you have any

19   questions, I would be happy to answer them.

20           THE COURT:  Thanks very much.

21           Thank you all for all the clarification that you've

22   given me.  I much appreciate it.

23           With respect to the retainers and the dates of

24   representation, that information will be provided for any

25   attorney that's listed on the privilege log.

                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

G4LMGIUC

1          The plaintiff has told me that they have now supplied

2    all the education and employment records that they have.  I

3    think if there is any question about that, if the defense is

4    skeptical, I would ask the counsel for the plaintiffs to make

5    that statement on the record, not necessarily here, but by way

6    of a statement to the Court and principally to the defendant.

7          On the question of residences, that's, in my view, not

8    a contention interrogatory because of the nature of this case.

9    I think it's more like listing witnesses.  So I would say that

10   the plaintiff should supply all residences.

11         The Dershowitz deposition will be produced under the

12   confidentiality provision.  As I read what I've been given,

13   it's to be held in confidence and it will remain in confidence,

14   but it will be produced.

15         Yes, the tax returns should be produced.  15 years

16   seems like -- I see.  Ok.  15 years.

17         The medical records of the period '99 to 2002 will be

18   produced and the plaintiff will indicate whether that

19   production is complete or, if it isn't complete, when it will

20   be complete.

21         As for the pre-'99 medical records, based on where we

22   are at the moment, I do not believe that those are relevant.

23   Because the damage issue relates, in my view, solely to the

24   defamation.  If that changes in any way, I will revisit that

25   issue.

G4LMGIUC

1            The criminal investigation.  Any materials that the

2    plaintiff has with respect to any criminal investigations will

3    be turned over except for any statements made by the plaintiff

4    to law enforcement authority and those statements, if there are

5    such, will be submitted in camera, and I will review them.

6            I hope that clears up our problems.  Tell me if I have

7    failed in my effort to do so.  Yes, ma'am.

8            MS. MENNINGER:  Your Honor, two quick things, I think.

9    With respect to medical records, we also certainly believe that

10   the period from the time the statement was made in January 2015

11   until the present, because she has claimed emotional distress

12   from that defamation --

13           THE COURT:  Sure, yes.

14           MS. MENNINGER:  The problem is, we have asked through

15   interrogatory what were the names of the medical providers

16   because they have not disclosed who her medical providers were.

17   So there is no way for us to tell whether the records in fact

18   have been sought from and produced with respect to each of

19   those medical providers.  I will say that other records in the

20   possession of plaintiff lists other doctors who they have not

21   asked for records from or releases.

22           THE COURT:  Let's see if we can clear that up.

23           MS. McCAWLEY:  We have disclosed the names.  She has

24   those names.  We have also disclosed records, the more recent

25   records.  We have not contested that.

G4LMGIUC

1           With respect to the interrogatories, your Honor ruled

2    on this previously, but there is a local Rule 33.3, which is

3    why we didn't serve interrogatories in this case at this point.

4    She is deposing the plaintiff in two weeks, next week, whenever

5    it is, and can certainly ask those questions as well.  But we

6    have disclosed the names of the providers.

7           MS. MENNINGER:  They have not, your Honor.

8           THE COURT:  Look.  Wait just a moment.  You two are

9    lawyers.  Now, that is not an issue about which you should

10   differ.  Go over in the corner right now, both of you, and

11   let's make it clear who is telling me the right story.  Now.

12          I take it that I misunderstood the colloquy and that

13   this matter has been resolved.

14          MS. McCAWLEY:  Your Honor, I think there was a

15   misunderstanding with respect --

16          THE COURT:  I was sure.

17          MS. McCAWLEY:  Dr. Olsen has been noticed for

18   deposition in Colorado already.  In my view, we have disclosed

19   the doctors.  Ms. Menninger says that there is other doctors

20   that have been disclosed in documents that we have not yet

21   listed to her.  I think in discovery we are finding

22   additional --

23          THE COURT:  You think you may not have discovered that

24   your client has had some doctors --

25          MS. McCAWLEY:  In the past.  We are talking about

G4LMGIUC

1   years and years ago.  The recent doctors we have disclosed they

2   have noticed for deposition.

3           THE COURT:  What else?

4           MS. MENNINGER:  Your Honor, with respect to the

5   employment and education records, as you heard plaintiff say,

6   she has disclosed, quote/unquote, what she has.  Under local

7   rule 33.3, we are allowed to ask for the names of witnesses

8   with knowledge at the outset of the case, and they might be

9   custodians of records.  We asked her who have been your

10  employers.  She won't tell us who her employers have been.  She

11  has just gone through her computer and say if I have an

12  employment record I'll give it to you, but I am not going to

13  tell you who her employers were.

14          THE COURT:  She will.

15          MS. MENNINGER:  Same thing with the education records.

16  We asked her to list where she had gone to school and tell us

17  where it is.  She won't do it.  Those are the things where my

18  skepticism arises from.

19          Largely, to the extent your Honor has ordered the

20  production of whatever materials, criminal investigation

21  materials that were not to be submitted in camera, those were

22  the ones that involved plaintiff's statements, we would like

23  the other materials that they have brought with them today to

24  give to your Honor that do not encompass their client's

25  statements to law enforcement.

G4LMGIUC

```
 1              THE COURT:  I don't know whether there are such.  Is

 2    it possible that nothing in this lawsuit is clear?  Well, I

 3    tried to make it clear what should be produced and what

 4    shouldn't.  Anything that has been submitted to any law

 5    enforcement officer by the plaintiff I will take in camera.

 6    Anything other than that with respect to any law enforcement

 7    should be produced.

 8              MS. MENNINGER:  Thank you, your Honor.

 9              THE COURT:  Thank you, all.  I think we have the

10    pleasure of your company -- do we need you next week?  We are

11    up to date, aren't we?

12              MS. McCAWLEY:  Your Honor, we have a motion with

13    respect to our discovery that's set for next Thursday.

14              THE COURT:  That's fine.

15              MS. McCAWLEY:  Just before we adjourn, because

16    Mr. Cassell had a question, and I just want to make sure that I

17    understand, with respect to tomorrow's deposition, they are

18    entitled to attend but have to leave the room if confidential

19    information is disclosed?

20              THE COURT:  That's where we are at the moment, unless

21    it changes.

22              MR. PAGLIUCA:  Your Honor, with regard to next

23    Thursday, both Ms. Menninger and I have other matters that are

24    previously scheduled and it would be impossible for us to take

25    care of those matters and be here at the same time.  I'm
```

25

G4LMGIUC

1   wondering what the Court would like to do about that.

2           THE COURT:  First of all, you know how we play this

3   game.  You don't ask me first.  You ask your opponent first.

4   Have you done that?

5           MR. PAGLIUCA:  I have not, your Honor.

6           THE COURT:  Will you?

7           MR. PAGLIUCA:  I certainly will, your Honor.

8           THE COURT:  Now.

9           MR. PAGLIUCA:  Absolutely.

10          THE COURT:  You can go over to the corner, too.

11          MR. PAGLIUCA:  I think we need a corner bar on this,

12  your Honor.

13          Ms. McCawley, I'm wondering if we can get a mutually

14  convenient date to hear that matter as opposed to next

15  Thursday.

16          MS. McCAWLEY:  Of course.

17          MR. PAGLIUCA:  That was simple enough, your Honor.

18          MS. McCAWLEY:  Your Honor, one more thing.  I didn't

19  realize that my counsel can submit that stipulation to you

20  because that case has been settled --

21          THE COURT:  If I get something that closes that case

22  and I get the affidavit that there are no other matters in

23  which they have any claims or defenses relating to any of these

24  statements, that will do it.

25          MS. McCAWLEY:  Your Honor, so I know, if we can submit

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

26

G4LMGIUC

 1   that by fax this afternoon, will they be able to attend the

 2   deposition tomorrow?

 3          THE COURT:  I would think so, if I think those are

 4   adequate representations and so on.  The statement from a

 5   mediator doesn't mean anything to me.  Something that has a

 6   court sign to it.  That I understand.  But the mediator saying

 7   that it's settled doesn't work for me.

 8          MR. CASSELL:  Your Honor, maybe Mr. Edwards could

 9   briefly explain Florida procedure.  The case has been

10   dismissed, but it does not require a Court's signature.

11   Mr. Edwards can elaborate more fully on that.

12          MR. EDWARDS:  Sure.  If I may.  There are two ways in

13   which a case can be dismissed in Florida.  One is by way of a

14   court order.  The other is by way of a stipulation.  That is

15   what was done.  There was a stipulation of dismissal signed by

16   both parties, that being the plaintiff and the defendants and

17   counsel, that has been done and that was dismissed.

18          THE COURT:  That's filed in the case.

19          MR. EDWARDS:  That's filed in the case and filed in

20   the court.

21          THE COURT:  Do you have a copy of that?

22          MR. EDWARDS:  I can get a copy of it immediately.

23          THE COURT:  Give it to the defense.  If they have any

24   problems, they will let me know.  That sounds all right to me.

25   What do I know about Florida except that it's flat and hot.

G4LMGIUC

1    Your representation sounds right.

2           MR. EDWARDS:  Additionally, just with respect to the

3    affidavit, there needs to be an affirmation that we have no

4    other claims that relate to the statements in this case.  Is

5    that what we are saying?

6           THE COURT:  I think it should be broader than that.  I

7    think it should be -- look.  I don't think it would be

8    appropriate if there is any possibility for either of you to

9    being a party.  That's what I'm after.  And having any

10   proceedings against you arising out of the situation with the

11   plaintiff.  I think it would be inappropriate for you to be

12   counsel if you have the potentiality of being a party, either

13   plaintiff or defendant, in any proceedings.  If I get an

14   affidavit saying that you're unaware of any claims against you

15   or any intention to make a claim arising out of the

16   circumstances surrounding this lawsuit, that should be broad.

17   I think that would satisfy me.

18          MR. EDWARDS:  Ok.

19          MR. CASSELL:  I'll be filing those materials this

20   afternoon, your Honor.  My plan is to attend --

21          THE COURT:  The defense has a thought on this.

22          MR. PAGLIUCA:  Your Honor, I am looking at documents

23   from Florida.  One is a docket sheet captioned:  Epstein v.

24   Brad Edwards and Paul G. Cassell, Lower Tribune Cases 15 000072

25   which shows that that matter is still pending.  There is

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

28

G4LMGIUC

1   another case, as I understand it, Edwards v. Epstein and

2   Rothstein, which is also pending.  I can confer about this,

3   your Honor.

4           THE COURT:  Let's do this.  When do you plan to return

5   to the snow fields?

6           MR. PAGLIUCA:  There is still snow on the ground, your

7   Honor.  Well, Friday night or Saturday morning is my current

8   plan.

9           THE COURT:  That's great.  Whatever the applicants

10  have on this subject, please turn it over.  You all can work

11  out how you are going to do that.  Turn it over to the defense.

12  And if there is anything you want me to do, I would be prepared

13  to do it tomorrow.  But that way I hope we can get it cleared

14  up.

15          MS. McCAWLEY:  Your Honor, we do have the deposition

16  of the defendant scheduled for tomorrow.

17          THE COURT:  Then everybody will be having a nice time

18  together.  Maybe you can all go out and have lunch, have a

19  drink, and exchange these documents and go away happy.  Not

20  likely, but perhaps, depending on where you have lunch.

21          MS. McCAWLEY:  Thank you, your Honor.

22          THE COURT:  Anything else?

23          MS. MENNINGER:  Nothing.

24          THE COURT:  Thank you, all.

25          One thing.  I would appreciate it if counsel would get

                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

29

G4LMGIUC

1    together on my request for additional coverage in the

2    confidentiality agreement.

3             MS. McCAWLEY:  Sure.

4             THE COURT:  Thanks a lot.

5                                 o0o

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25