# United States District Court
# Southern District of New York

Virginia L. Giuffre,

       Plaintiff,                    Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

       Defendant.

_____/

**DECLARATION OF PAUL G. CASSELL IN SUPPORT OF PLAINTIFF'S OPPOSITION TO PROPOSED INTERVENOR ALAN M. DERSHWOITZ'S MOTION FOR PERMISSIVE INTERVENTION**

I, Paul G. Cassell, declare that the below is true and correct to the best of my knowledge as follows:

**BACKGROUND**

1. I am a licensed attorney in the state of Utah. I am authorized to practice before this Court pursuant to this Court's Order granting my Application to Appear Pro Hac Vice.

2. I respectfully submit this Declaration in opposition to Proposed Intervenor Alan M. Dershowitz's Motion for Permissive Intervention and Unseal of Judicial Documents, or in the Alternative Modification of the Protective Order.

3. I am the Ronald N. Boyce Presidential Professor of Criminal Law and University Distinguished Professor of Law at the S.J. Quinney College of Law, where I teach criminal procedure, criminal, and crime victims' rights.

1

## THE FLORIDA CRIME VICTIMS RIGHTS ACT CASE

4.  Since July 2008, I have been involved in important and precedent-setting crime victims' rights litigation in the Southern District of Florida trying to protect the rights of various victims under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771. Along with Florida co-counsel Bradley J. Edwards, I have been pursuing a federal case pro bono on behalf of two young women who were sexually abused as underage girls by Dershowitz's close personal friend – Jeffrey Epstein.

5.  On July 7, 2008, Mr. Edwards filed an emergency petition to enforce the rights of "Jane Doe No. 1" and "Jane Doe No. 2" under the CVRA, 18 U.S.C. § 3771, alleging that the Government had failed to provide them rights with regard to a plea arrangement it was pursuing with Epstein. DE 1,[1] *Jane Doe No. 1 and Jane Doe No. 2 v. United States*, No. 9:08-cv-80736 (S.D. Fla.). As the case developed, it became clear that the U.S. Attorney's Office for the Southern District of Florida had concealed from Epstein's victims a non-prosecution agreement (NPA) that they had reached with Epstein.

6.  During the litigation, Mr. Edwards and I have won several important victories for our clients, including a ruling that the CVRA can apply to protect crime victims' rights even before an indictment is filed. *See* Paul G. Cassell, Nathanael J. Mitchell & Bradley J. Edwards, *Crime Victims' Rights During Criminal Investigations? Apply the Crime Victims' Rights Act Before Criminal Charges are Filed,* 104 J. CRIM. L. & CRIMINOLOGY 58, 67-69 (2014) (describing litigation concerning Epstein).

7.  In the course of that case, on October 11, 2011, the victims filed discovery requests with the Government, including requests specifically seeking information about

---

[1] In this section of the Declaration, all references to docket entries will be to CVRA case in the Southern District of Florida, No. 9:08-cv-80736.

2

Dershowitz, ███████, and others. Further efforts from the Government to avoid producing any discovery followed (*see* generally DE 225-1 at 4-5),[2] ultimately leading to a further Court ruling in June 2013 that the Government should produce documents. DE 189. The Government then produced about 1,500 pages of largely irrelevant materials to the victims (DE 225-1 at 5), while simultaneously submitting 14,825 pages of relevant materials under seal to the Court. The Government claimed that these pages were "privileged" for various reasons, attaching an abbreviated privilege log.

8. While these discovery issues were pending, in the summer of 2014, Mr. Edwards and I contacted Government counsel to request their agreement to add two additional victims to the case, including Ms. Virginia Giuffre (who was identified in court pleadings as "Jane Doe No. 3"). Edwards and I sought to have her added to the case via stipulation, which would have avoided the need to include any detailed facts about her abuse. Weeks went by and the Government – as it had done on a similar request for a stipulation to add another victim – did not respond to counsel's request for a stipulation.

9. Finally, on December 10, 2014, despite having had four months to provide a position, the Government responded by email to counsel that it was seeking more time, indicating that the Government understood that victims' counsel might need to file a motion with the court on the matter immediately. DE 291 at 3-5. Rather than file a motion immediately, victims' counsel waited and continued to press the Government for a stipulation. *See id.* at 5. Finally, on December 23, 2014 – more than four months after the initial request for a stipulated joinder into the case – the Government tersely indicated its objection, without indicating any

---

[2] Jeffrey Epstein also attempted to block discovery of materials, leading to an Eleventh Circuit ruling that the victims' discovery efforts were proper. *Doe v. Epstein*, 749 F.3d 999 (11th Cir. 2014).

3

reason: "Our position is that we oppose adding new petitioners at this stage of the litigation." See DE 291 at 5.

10. Because the Government now contested the joinder motion, Edwards and I prepared a more detailed pleading explaining the justification for granting the motion. One week after receiving the Government's objection, on December 30, 2014, Ms. Giuffre (i.e., Jane Doe No. 3) and Jane Doe No. 4 filed a motion (and later a corrected motion) seeking to join the case. DE 279 and DE 280. Uncertain as to the basis for the Government's objection, the motion briefly proffered the circumstances that would qualify the two women as "victims" eligible to assert rights under the CVRA. *See* 18 U.S.C. 3771(e) (defining "crime victim" protected under the Act). With regard to Ms. Giuffre, the motion indicated that when she was a minor, Jeffrey Epstein had trafficked her to Dershowitz and ▮▮▮▮▮▮▮▮ (among others) for sexual purposes. Jane Doe No. 3 stated that she was prepared to prove her proffer. *See* DE 280 at 3 ("If allowed to join this action, Jane Doe No. 3 would prove the following . . . ."). The motion also provided specific reasons why Jane Doe No. 3's participation was relevant to the case, including the pending discovery issues regarding Dershowitz and ▮▮▮▮▮▮▮▮. DE 280 at 9-10 (explaining several reasons participation of new victims was relevant to existing issues).

11. After the motion was filed, various news organizations published articles about it. Dershowitz also made numerous media statements about the filing, including calling Jane Doe No. 3 "a serial liar" who "has lied through her teeth about many world leaders." http://www.cnn.com/2015/01/06/us/dershowitz-sex-allegation/. Dershowitz also repeatedly called Edwards and me "two sleazy, unprofessional, disbarable lawyers." *Id.* He made many similar remarks of an equivalent character, and also stated in media appearance that if we had

4

done one hour of work investigating Ms. Giuffre's allegations of sexual abuse against him, we would have immediately seen that those allegations were false.

12.     On January 5, 2015, Dershowitz filed a motion to intervene to argue to have the allegations stricken. DE 282. Dershowitz also argued that Ms. Giuffre had not provided a sworn affidavit attesting to the truth of her allegations.

13.     On January 21, 2015, Edwards and I filed a response for our clients, Ms. Giuffre and Jane Doe No. 4. DE 291. The response enumerated nine specific reasons why Ms. Giuffre's specific allegations against Dershowitz were relevant to the case, including the fact that Ms. Giuffre needed to establish that she was a "victim" in the case, that pending discovery requests concerning Dershowitz-specific documents were pending, and that Dershowitz's role as a defense attorney in the case was highly relevant to the motive for the Government and defense counsel to conceal the plea deal from the victims. DE 291 at 17-26 & n.17. The response included a detailed affidavit from Ms. Giuffre about the sexual abuse she had suffered from Epstein, Dershowitz, and other powerful persons. DE 291-1.

14.     On February 6, 2015, Edwards and Cassell filed a further pleading (and affidavit from Ms. Giuffre, *see* DE 291-1) in support of her motion to intervene.

15.     On April 7, 2015, Judge Marra denied Ms. Giuffre's motion to join the case. Judge Marra concluded that "at this juncture in the proceedings" details about the sexual abuse she had suffered was unnecessary to making a determination "of whether Jane Doe 3 and Jane Doe 4 should be permitted to join [the other victims'] claim that *the Government* violated their rights under the CVRA. The factual details regarding with whom and where the Jane Does engaged in sexual activities are impertinent to this central claim (i.e., that they were known victims of Mr. Epstein and the Government owed them CVRA duties), especially considering

5

that the details involve non-parties who are not related to the respondent Government." DE 324 at 5 (emphasis in original). While Judge Marra struck those allegations, he emphasized that "Jane Doe 3 is free to reassert these factual details through proper evidentiary proof, should [the victims] demonstrate a good faith basis for believing that such details are pertinent to a matter presented for the Court's consideration. Judge Marra then denied Ms. Giuffre's motion to join the case, but allowed her to participate as trial witness: "The necessary 'participation' of [Ms. Giuffre] . . . in this case can be satisfied by offering . . . properly supported – and relevant, admissible, and non-cumulative – testimony as needed, whether through testimony at trial . . . or affidavits supported in support [of] the relevancy of discovery requests." DE 324 at 8 (emphasis deleted).

16. In a later supplemental order, Judge Marra stated that the victims "may re-refile these documents omitting the stricken portions." DE 325. The victims have since refiled these documents.

17. The CVRA case continues to be litigated, and the victims filed a comprehensive motion for summary judgment earlier this year. *See* DE 361 (filed Feb. 10, 2016; government response not yet filed).

## THE FLORIDA DEFAMATION CASE

18. In about early January 2015, following the filing of Ms. Giuffre's motion to join the CVRA case, Dershowitz launched a media attack not only on Ms. Giuffre but also on Mr. Edwards and me. Dershowitz repeatedly and publicly attacked the two of us, saying such things as "if these lawyers, these sleazy unprofessional, unethical lawyers, Paul Cassell and Brad Edwards, if they had just done an hours' worth of research and work, they would have seen she is lying through her teeth." http://www.cnn.com/videos/world/2015/01/05/wrn-uk-sex-abuse-allegations-alan-dershowitz-intv.cnn.

6

19. Rather than try these questions in the media, Mr. Edwards and I filed a defamation action in Florida against Dershowitz. We were represented by well-known Florida attorney Jack Scarola.

20. During the course of the defamation action, I explained the significant work – far in excess of one hour – that Mr. Edwards and I had done to investigate Ms. Giuffre's sworn allegations that Dershowitz had repeatedly sexually abused her. I explained that work at length in my deposition in the case. Attached hereto as Sealed Exhibit 1 is a true and correct copy of the first day of my deposition testimony in the case. Pages 61-117 explain some of the work that Mr. Edwards and I did to corroborate Ms. Giuffre's allegations before filing them in the CVRA case.

21. My deposition testimony includes the following information that Mr. Edwards and I relied upon in believing the truth of Giuffre's allegations:

  a. The Palm Beach Police Department put together an 87-page report based on witness interviews and other evidence documenting sexual abuse of dozens of minor girls occurring in Epstein's Florida mansion – a location where Ms. Giuffre said Dershowitz had abused her;

  b. The Palm Beach police report showed the sexual abuse was occurring on a daily basis and, indeed, in some cases as much as two or three times in one day in circumstances that would have made it obvious to a visiting guest that young girls were coming to the home for sexual purposes;

  c. Flight logs for Epstein's private jet showed that Epstein (accompanied by Ms. Maxwell) flew Ms. Giuffre to the New York City area, a location where Ms. Giuffre said Dershowitz had abused her;

7

d. Epstein's flight logs appeared to be disguising the identity of all of the passengers on Epstein's plane by using such notations as "one female."

e. A very well-regarded Florida lawyer (Bob Josefsberg), who was selected by the U.S. Government to represent the victims of Epstein's sexual abuse, had found Ms. Giuffre to be credible and in 2009 filed a civil complaint for her alleging not only sex abuse by Epstein but also by "academicians" -- a group into which Dershowitz fell;

f. Shortly after Josefsberg filed the complaint for Ms. Giuffre alleging "academicians" had abuse her, one of Josefsberg's partners, Ms. Ezell, began conducting depositions in Epstein-related cases asking about Dershowitz's awareness of sexual abuse;

g. Dershowitz showed up on flight logs for Epstein's private jet, including a flight with an (apparently young) woman named ▮▮▮▮ who did not appear to serve any business purpose for Epstein;

h. When asked about Dershowitz, Epstein took the Fifth rather than indicate that Dershowitz was not involved in any criminal activities – a fact from which an obvious adverse inference could be drawn that Dershowitz was, indeed, involved in Epstein's crimes;

i. In moving down from the top of Epstein's criminal conspiracy to the next echelon, three women – ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ – *all* took the Fifth when asked about Dershowitz's awareness of Epstein's sexual abuse of underage girls or whether Dershowitz was involved in massages with young girls;

8

j. ████████████████████████ were all covered by a highly unusual non-prosecution agreement (negotiated by, among others, Epstein defense attorney Alan Dershowitz) that provided immunity from prosecution for sex trafficking not only to Epstein but also to his "potential co-conspirators";

k. One of Epstein's household employees, Juan Alessi, said that Dershowitz visited Epstein's Palm Beach mansion four or five times a year, staying two or three days when he went there – and Alessi was able to identify a photograph of Ms. Giuffre as someone who was at the mansion as the same time as Dershowitz;

l. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████;

m. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

n. Dershowitz had indicated in 2003 that he was an extremely close friend of Epstein – indeed, that the only person outside his immediately family with whom he shared drafts of his books was Epstein;

o. Attempts had been made to depose Dershowitz or otherwise obtain information from him about his knowledge of Epstein's sexual abuse in 2009, 2011, 2013, and January 2015, and he had avoided all those efforts;

9

p. Dershowitz had told the Palm Beach Police Department that he was going to make Epstein available to answer questions about sex abuse of underage girls, but then repeatedly rescheduled those meetings, ultimately never producing Epstein – a pattern of deception that appeared to be designed to deliberately delay the investigation;

q. Dershowitz's pattern of avoiding depositions (and helping Epstein avoid questioning) was consistent with a pattern of other persons who were involved in Epstein's international sex trafficking organization evading efforts to obtain information from them;

r. Ms. Giuffre had alleged abuse by other powerful friends of Epstein, including ███████████████████████████████████████ ███████████████████████████████ (where she said the sex abuse had taken place).

Sealed Exhibit 1, Depo. of Paul Cassell (Oct. 16 & 17, 2015), at 61-117.

22. Ms. Giuffre was not a party to the litigation between Dershowitz, Mr. Edwards, and me.

23. During the course of the litigation, however, Dershowitz sought to obtain discovery from Ms. Giuffre. In particular, Dershowitz sought to obtain from Ms. Giuffre (a non-party to the action) all of her emails with the media. The Court denied his discovery request. Attached hereto as Sealed Exhibit 2 is a true and correct copy of the court's order denying that discovery.

24. Dershowitz produced many documents in the course of discovery in that case – and, ironically, he placed many document under a protective order in Florida. Attached hereto as

Sealed Exhibit 3 is a true and correct copy of the court's protective order, which Dershowitz used to keep documents under seal.

25. On January 16, 2016, Dershowitz took Ms. Giuffre's deposition. As noted earlier, Ms. Giuffre recounted in detail repeated acts of sexual abuse by Dershowitz. *See* McCawley Dec., Ex. 4 at 88-91.

26. Ultimately, Dershowitz settled the defamation case. That settlement included both a public statement and confidential monetary payments. As part of the settlement, Edwards and I withdrew our allegations against Dershowitz in the defamation case contained in the then-pending summary judgment motion and Dershowitz withdrew his allegations of unethical conduct, as reflected in the Notice of Withdrawal of Motion for Partial Summary Judgment attached hereto as Sealed Exhibit 4.

27. As Mr. Edwards and I explained in the notice of withdrawal of this motion, "the withdrawal of the referenced filings is not intended to be, and should not be construed as being, an acknowledgement by Edwards and Cassell that the allegation made by Ms. Giuffre were mistaken. Edwards and Cassell do acknowledge that the public filing in the Crime Victims' Rights Act case of their client's allegation against Defendant Dershowitz became a major distraction from the merits of the well-founded Crime Victims' Rights Act by causing delay and, as a consequence, turned out to be a tactical mistake." *Id.*

28. Contrary to representations made by Dershowitz in his brief (DEC ¶24 at pg. 5), in settling our personal defamation case against Dershowitz, Edwards and I have *never* reached any conclusion that Ms. Giuffre – our client -- was mistaken in her allegations that Dershowitz sexually abused her.

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Paul G. Cassell  
Paul G. Cassell, Esq.

Dated: August 29, 2016.

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By: /s/ Meredith Schultz  
Sigrid McCawley (Pro Hac Vice)  
Meredith Schultz (Pro Hac Vice)  
Boies Schiller & Flexner LLP  
401 E. Las Olas Blvd., Suite 1200  
Ft. Lauderdale, FL 33301  
(954) 356-0011

Bradley J. Edwards (Pro Hac Vice)  
FARMER, JAFFE, WEISSING,  
EDWARDS, FISTOS & LEHRMAN, P.L.  
425 North Andrews Avenue, Suite 2  
Fort Lauderdale, Florida 33301  
 (954) 524-2820

Paul G. Cassell (Pro Hac Vice)  
S.J. Quinney College of Law  
University of Utah  
383 University St.  
Salt Lake City, UT 84112  
(801) 585-5202[3]

---

[3] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on August 29, 2016, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served to all parties of record via transmission of the Electronic Court Filing System generated by CM/ECF.

    Laura A. Menninger, Esq.
    Jeffrey Pagliuca, Esq.
    HADDON, MORGAN & FOREMAN, P.C.
    150 East 10th Avenue
    Denver, Colorado 80203
    Tel: (303) 831-7364
    Fax: (303) 832-2628
    Email: lmenninger@hmflaw.com
           jpagliuca@hmflaw.com

                                            /s/ Meredith Schultz
                                               Meredith Schultz