# United States District Court
# Southern District of New York

Virginia L. Giuffre,

               Plaintiff,               Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

               Defendant.

_____/


### REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL (DE 345)


               Sigrid McCawley (Pro Hac Vice)
               Meredith Schultz (Pro Hac Vice)
               BOIES, SCHILLER & FLEXNER LLP
               401 E. Las Olas Blvd., Suite 1200
               Ft. Lauderdale, FL 33301
               (954) 356-0011

Plaintiff Virginia Giuffre ("Ms. Giuffre"), by and through her undersigned counsel, hereby files this Reply in Support of her Motion to Compel (DE 345).

I.    **ARGUMENT**

    A.    **This Court should Order Production of Documents Responsive to Requests Nos. 1-3**

Defendant characterizes the police reports (and information therein) concerning Ms. Giuffre as a minor as both "highly relevant" (Br. at 4) and "irrelevant" to this action (Br. at 5). On page 4, Defendant claims that actual police reports are "highly relevant," stating: "the publicly available, redacted police reports are part of the record and constitute highly relevant evidence in this action." But, on the very next page, when discussing the information gleaned from those police reports that Mr. Pagliuca had prior to the conferral call, Defendant claims the information from the police reports is "irrelevant," stating: "**The records requested are irrelevant.** Plaintiff has asserted a single claim for defamation based on Ms. Maxwell's denial of her outrageous allegations of 'sex trafficking.' The dispositive question is whether the denial was defamatory. RFP No. 1 seeks documents Mr. Pagliuca allegedly 'reviewed and/or relied upon' in allegedly making statements stating that Plaintiff previously made false accusations of sexual assault." (Br. at 5). (Emphasis original).

How Defendant purports to distinguish between the actual police reports as "relevant," and the information contained in the police reports as "irrelevant," is unexplained. However, logic would dictate that if the police reports are "relevant," so, too, is the information contained therein and how it was acquired. For that reason, this Court should grant Ms. Giuffre's requests Nos .1-3.

Defendant states that the material responsive to Ms. Giuffre's requests Nos. 2-3 constitute "privileged communications between (a) Ms. Maxwell's attorneys and Ms. Maxwell, (b) defense counsel and their agents, and between (c) defense counsel with joint defense or common interest privileges concerning obtaining or receiving 'local police[] findings or opinions' and 'statements

1

made by law enforcement or any state attorney.'" (Br. at 9). Ms. Giuffre understands this winding sentence to mean that documents responsive to Requests Nos. 2-3 constitute communications between Defendant and Jeffrey Epstein and Alan Dershowitz or their counsel. As discussed at length in the moving brief, Defendant bears the burden to show that there is a joint defense agreement among them, but she refuses to disclose the joint defense agreement, and this Court, months ago, has already ordered Defendant to turn over her communications with Epstein and Dershowitz that she purported were privileged. (*See* April 15, 2016 Order). Accordingly, this Court should grant Ms. Giuffre's requests Nos. 2-3.

**B.     This Court should Order Production of Documents Responsive to Requests Nos. 6-7; 9-10; and 11.**

These requests concern joint defense agreements between and among Defendant, Epstein, and Dershowitz, and communications among counsel for Defendant and Epstein and Dershowitz. In Defendant's objections submitted to Ms. Giuffre in response to the request for the joint defense agreement between her and Dershowitz, she stated that she "has been unable to locate any documents responsive to this Request." In her brief, she says that "there is no joint defense agreement to produce." (Br. at 9). There are two problems with this position.

First, Defendant is withholding responsive documents consisting of communications between Dershowitz/Dershowitz's counsel and Epstein/Epstein's counsel. Defendant does not, and cannot, refute the case law that puts the burden on establishing a joint defense privilege applies on the party claiming it, which must be shown through evidence. Defendant has put forth no evidence of these agreements. In fact, Defendant states that no such agreement exists with Dershowitz, and she is refusing to reveal the agreement with Epstein. Even if any privileges apply to the actual joint defense agreement with Epstein (and, in many cases, Courts find no privilege applies whatsoever), Defendant has to make that showing. This response brief does not

make that showing. "Such showings must be based on competent evidence, usually through affidavits, deposition testimony, or other admissible evidence." *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 428 (S.D.N.Y. 2013) (citations omitted). Defendant has put forth no affidavits or testimony, but, instead, filed declarations of counsel for Epstein and Dershowitz, indicating their "belief" that a common interest exists.[1] Should the Court consider these declarations to be "competent evidence" to establish that a joint defense agreement exists between Defendant and Dershowitz and Epstein (though neither declaration state that an agreement exists), Ms. Giuffre submits that it should not have taken motion practice to elicit such "evidence" as it is Defendant's burden to produce this evidence.

Second, these agreements are plainly relevant to the defamation claim in this case. This Court has previously ordered Defendant to produce emails in which both Epstein and Dershowitz were active in assisting Defendant draft defamatory statements against Ms. Giuffre. *See* April 15, 2016 Order. Defendant has set forth the defense that her defamatory statements are "substantially true," and "cannot realistically have cause impairment to Plaintiff's reputation." The emails between and among Defendant, Epstein, and Dershowitz, show that that the three of them conspired specifically to damage Ms. Giuffre's reputation. They also reveal that Defendant's defamatory statements are not "substantially true." The joint defense agreement(s) show Defendant's ongoing and continued relationship with Dershowitz and Epstein, which is relevant to her defenses. Both of these individuals had a hand in Defendant's statements to the public. At the very least, the Court should conduct an *in camera* review of any joint defense agreements that exist to determine their relevance to both the defamation claim and the multiple affirmative defenses offered by Defendant. *See Steuben Foods, Inc. v. GEA Process Engineering, Inc.*, 2016

---

[1] Strangely, Defendant redacted both the names of counsel and the names of Epstein and Dershowitz in these filings.

3

WL 1238785, at *2 (W.D.N.Y., 2016) (granting Plaintiff's motion to compel production of paragraph 5 of defendant's joint defense agreement, since that paragraph is relevant to the claims and defenses).

      C.      **This Court should Order Production of Documents Responsive to Requests No 12.**

In this request, Ms. Giuffre seeks the documents that concern her. Defendant tells the Court, "[c]onspicuously missing is any explanation of why a request for 'all documents concerning' Plaintiff would not require review and production of every document the defense has in this case." (Br. at 14). Both common sense and common attorney competencies belies this statement.[2] First, it is expected that the overwhelming majority of documents "concerning" Ms. Giuffre are attorney-client communications or work product created after the filing of this lawsuit. Such documents do not even require extensive review as they are protected by privilege, and can be categorically logged pursuant to the Local Rules and governing case law.[3] Therefore, there is no merit to Defendant's burden claim.

Moreover, throughout the months of motion practice concerning these issues, and throughout all of the meet and confers, Defendant's counsel has **_never_** presented a case supporting the far-fetched position that non-privileged documents in the possession of the

---

[2] Furthermore, Ms. Giuffre's correspondence suggesting just how these documents can be collected electronically without undue burden also belies any claim of ignorance on how to collect and produce documents responsive to this request without reviewing "thousands" of presumptively privileged communications.

[3] *See also* Southern District of New York Local Civil Rule 26.2(c); *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 2013 WL 139560, at *2 (S.D.N.Y. Jan. 11, 2013) ("the Court notes that [parties] . . . are presented with a number of option that . . . could mitigate the burden . . . including . . . ***exclusion from the privilege logs of documents created after the commencement of litigation*** . . ..") (Emphasis added); *United States v. Bouchard Transp.*, 2010 WL 1529248, at *2 (E.D.N.Y. Apr. 14, 2010) ("First, privilege logs are commonly limited to documents created before the date litigation was initiated. This is due to the fact that, in many situations, ***it can be assumed that all documents created after charges have been brought or a lawsuit has been filed and withheld on the grounds of privilege were created "because of" that pending litigation.***") (Emphasis added).

Defendant, and containing explicit references to Ms. Giuffre, are irrelevant and not subject to discovery.

What should be reviewed and produced are the documents in Defendant's possession concerning Ms. Giuffre that are outside the scope of privilege. This would include, for example, Defendant's communications with third parties that concern Ms. Giuffre. The Court has already seen examples of some of these communications in its *in camera* review, and it ordered Defendant to produce Defendant's communications concerning Ms. Giuffre that she exchanged with Epstein, ████████, and others. This request targets documents like those. Defendant has not argued any burden applies to such a collection.

Furthermore, if Defendant had collected her electronic data pursuant to this Court's order, an electronic search - few key strokes - would both identify these documents and eliminate the communications to/from Defendant's attorneys that fall under the ambit of privilege.

This is a basic request for documents concerning one of the parties, and one that would be issued in almost any litigation. Defendant's continued refusal to produce documents concerning Ms. Giuffre is made in bad faith and shows that she is hiding additional incriminating documents[4] (including those regarding a recently-discovered defamatory statement in the January 8, 2015, article, discussed, *infra*, at p. 6-7). An adverse inference instruction is appropriate in this circumstance, as more fully briefed in Ms. Giuffre's August 8, 2016, Memorandum of Law on the same (DE 338).

---

[4] After the close of discovery and after the depositions have been taken in this matter, just days ago, Defendant produced a critical e-mail asserting that it's exclusion from production was a "clerical error." The e-mail proves that the Defendant has continued ██████████████████████

**D.      This Court Should Order Production of Documents Responsive to Requests No 17 and 18.**

Requests Nos. 17 and 18 seek documents "concerning any statement made by You or on Your behalf to the press or any other group or individual, including draft statements, concerning Ms. Giuffre, by You, ███████, or any other individual, from 2005 to the present, including the dates of any publications, and if published online, the Uniform Resource Identifier (URL) address" and "all documents concerning which individuals or entities You or Your agents distributed or sent any statements concerning Ms. Giuffre referenced in Request No. 17 made by You or on Your behalf." In other words, Ms. Giuffre is seeking what statements about Ms. Giuffre Defendant distributed and to whom. This is another basic request, particularly in a defamation case. Moreover, the only person who knows the full extent of Defendant's defamation of Ms. Giuffre is Defendant.

In her brief, Defendant states that "the defense previously produced responsive documents." It is likely that Defendant is referring to the press release email communication from ████████████████████. The defamatory statements contained therein are referenced in Ms. Giuffre's Complaint.

Since filing the instant motion, Ms. Giuffre has become aware that Defendant caused additional defamatory statements to be published. This is important. Ms. Giuffre has discovered an article that refers to a *different* defamatory statement, not contained in the above-state press release. *See* McCawley Dec. at Exhibit 2, January 8, 2015, The Sun (online) article: "Prince Andrew's pal Ghislaine 'groped teen girls,'" (Miss Maxwell's spokesman branded the accusations against her a "web of lies and deceit" — adding: "None of these allegations are on oath. "These girls are saying anything they want for money."). Communications bearing this language are responsive to these requests, as is the publication in which Ms. Giuffre discovered

6

it. Defendant has produced no documents at all related to this statement made by her representative.

This is a statement made to a major publication on behalf of Defendant. "Reasonable inquiry," as required by Rule 26, Fed. R. Civ. P., would have *easily* yielded documents relating to this statement issued on Defendant's behalf. Yet, Defendant did not produce documents relating to that defamatory statement, and is now caught in another discovery violation for her failure to produce documents related to that January 8, 2015, statement.

Defendant cannot refuse to provide Ms. Giuffre with the extent of the publication of Defendant's defamatory statements nor can she decide, merely, to provide self-selected documents relating to the defamatory statements Ms. Giuffre knows about at the time. Wanting to hide the fact that her defamation was on a greater scale than originally known to Ms. Giuffre is not a proper objection, and withholding from discovery Defendant's additional defamation constitutes a discovery violation. The Court should order Defendant to fully comply with the requests in Nos. 17 and 18, including the production of documents related to the statement issued on her behalf to The Sun as reported in the January 8, 2015, article, above.

E.    **The Documents Improperly Logged**

Defendant has withheld communications with Alan Dershowitz's counsel claiming a common interest/joint defense privilege. As stated above, Defendant claims that there exist no joint defense agreement between her and Mr. Dershowitz. (Br. at 9). Yet, Defendant has agreed to provide non-party Dershowitz all the discovery materials in this case, and Dershowitz has clearly agreed to assist Defendant in this litigation.

It is Ms. Giuffre's position that an agreement must still be evidenced in order to invoke the common interest/joint defense privilege by affidavit or similar evidence. *See Von Bulow by Auersperg v. Von Bulow*, 811 F.2d 136, 147 (2d Cir.), cert. denied, 481 U.S. 1015, 107 S.Ct.

1891, 95 L.Ed.2d 498 (1987); *Bowne of N.Y.C., Inc. v. AmBase Corp.*, 150 F.R.D. 465, 472 (S.D.N.Y.1993). *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 428 (S.D.N.Y. 2013). A "declaration" from Dershowitz's counsel stating that she "believe[s] Professor Dershowitz and Defendant Ghislaine Maxwell have a common interest"[5] is not evidence of a joint defense agreement, and Defendant still fails to carry her burden. Accordingly, this Court should compel the production communications with Dershowitz's counsel. The "declaration" of Epstein's counsel similarly falls short. ██████████ ("I consider Mr. Epstein and his lawyers and Ms. Maxwell and her lawyers to have a common interest.") Therefore, if the Court finds that these declarations do not satisfy Defendant's burden under *Egiazaryan*, it should compel Defendant to produce those documents.

**F.      A Forensic Review is Appropriate in these Circumstances**

Since filing the instant motion, Defendant has produced another communication between her and ██████ and another email between her and Jeffrey Epstein. Defendant explained that they were not produced "following the Court's *in camera review* in April" due to "clerical error." *See* McCawley Dec. at Exhibit 3, August 16, 2016 letter form Laura Menninger.[6] One of these documents is an April 2015, email between Defendant and Epstein.

Defendant complains to the Court that a forensic review would invade her privacy (br. at 20-21), while at the same time, she and her joint defense partner both seek to strip away Ms. Giuffre's privacy by revealing confidential documents under the Protective Order. However,

---

[5] Declaration of Mary E. Borja (DE 387).
[6] In one of the communications, she states that she would like ██████ " to reply to "one further allegation" and Epstein writes back, "ok." This document was not produced until after the close of discovery, and therefore, Defendant was never deposed on (1) why she was seeking Epstein's permission for a having ██████ make a "reply;" (2) what Epstein's relationship was with ██████ (3) or who drafted the original communication at the bottom of the email, as it does not appear to have been created by either Defendant or Epstein. (Pending before this Court is Ms. Giuffre's motion to reopen Defendant's deposition.) (DE 315/356). *See* GM_01143-1144.

Defendant fails to mention that a forensic review would not give Ms. Giuffre - or the Court, or anyone in the world - access to, or knowledge of "highly sensitive information" that is not directly responsive or directly relevant to this case. Ms. Giuffre requested a forensic exam by an independent, third-party technician (not conducted by Ms. Giuffre or her agents), who would be bound by the terms of this Court's Protective Order or any other strictures necessary to maintain Defendant's privacy. Therefore, this argument is without merit.

Additionally, Defendant's case law is easily distinguishable. *Abidor v. Napolitano*, 990 F. Supp. 2d 260, 280 (E.D.N.Y. 2013), is a case brought by criminal defense lawyers challenging the inspection by governmental entities (Immigration and Customs Enforcement and Customs and Border Protection) of electronic devices individuals brought across the border under Fourth Amendment grounds.[7] Of course, there are no Fourth Amendment implications in this case raised by having a neutral third-party (who is not a state actor) assist Defendant in recovering relevant/deleted material from her electronic data in this civil case. Similarly, *U.S. v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013), is a criminal case involving possession of child pornography, evidence of which was found through a government search of a party's computer. These cases are inapposite.

Furthermore, in her Rule 45 subpoenas to Microsoft and Apple, Defendant sought ***unfettered access all of Ms. Giuffre's sent and received email*** (and attendant metadata), regardless of the relevance, and regardless of content. Defendant's subpoenas, combined with her argument made to this Court to support them, surely belies Defendant's expressed concern

---

[7] Of course, the Fourth Amendment protects individuals from search and seizure by ***state actors***, and states: ""'[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

about privacy. (This Court quashed those subpoenas, *see* June 23, 2016, Minute Entry).

Defendant cannot argue to the Court *in June* that it is appropriate for her to receive unfettered

access to every email Ms. Giuffre ever sent or received from two accounts, and then, *in August*,

argue to the Court that it is inappropriate for a neutral third-party to review Defendant's

electronic documents for deleted (or unproduced) responsive documents - a process through

which, importantly, neither Ms. Giuffre nor the Court gets access to all of Defendant's data

(unlike Defendant's subpoenas which would give all data directly to her). To the contrary,

neither Ms. Giuffre nor the Court would ever see or know about Defendant's personal data

unless it is non-privileged, and directly responsive to the requests for production that this Court

has already, specifically allowed.

     Finally, Defendant denies using ▮▮▮▮▮▮▮▮▮▮ account for anything other

than spam, despite the fact that the account was set up by Jeffrey Epstein for the purpose of

sending electronic communications to members of his household. *See* DE 338; Alessi Dep. Tr. at

223:5-225:17. (June 1, 2016) (McCawley Decl. at Exhibit 4); ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (McCawley Decl. at Exhibit

5). Defendant denies knowledge of ▮▮▮▮▮▮▮▮ and has not pursued access to

that account, despite the fact that the account name bears her initials and was part of her contact

information gathered by the police from Epstein's home, and turned over to the Palm Beach

County State Attorney as part of the investigation and prosecution of Epstein. *See* (DE 280-2),

Palm Beach County State Attorney's Office, Public Records Request No.: 16-268, Disc 7 at p.

2305 (GIUFFRE007843). Yet, Defendant has **not disclosed** what email account she did use

while she abused Ms. Giuffre, and has never searched that account nor produced documents from

it. Accordingly, a forensic exam is called for at this time.

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By:  /s/ Meredith Schultz
      Sigrid McCawley (Pro Hac Vice)
      Meredith Schultz (Pro Hac Vice)
      Boies Schiller & Flexner LLP
      401 E. Las Olas Blvd., Suite 1200
      Ft. Lauderdale, FL 33301
      (954) 356-0011

      David Boies
      Boies Schiller & Flexner LLP
      333 Main Street
      Armonk, NY 10504

      Bradley J. Edwards (Pro Hac Vice)
      FARMER, JAFFE, WEISSING,
      EDWARDS, FISTOS & LEHRMAN, P.L.
      425 North Andrews Avenue, Suite 2
      Fort Lauderdale, Florida 33301
      (954) 524-2820

      Paul G. Cassell (Pro Hac Vice)
      S.J. Quinney College of Law
      University of Utah
      383 University St.
      Salt Lake City, UT 84112
      (801) 585-5202[8]

---

[8] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on August 24, 2016, I electronically filed the foregoing

document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing

document is being served to all parties of record via transmission of the Electronic Court Filing

System generated by CM/ECF.

        Laura A. Menninger, Esq.
        Jeffrey Pagliuca, Esq.
        HADDON, MORGAN & FOREMAN, P.C.
        150 East 10th Avenue
        Denver, Colorado 80203
        Tel: (303) 831-7364
        Fax: (303) 832-2628
        Email: lmenninger@hmflaw.com
              jpagliuca@hmflaw.com


                        /s/ Meredith Schultz
                        Meredith Schultz