UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

VIRGINIA L. GIUFFRE,

  Plaintiff,

v.

GHISLAINE MAXWELL,

  Defendant.

------------------------------------------------------X

15-cv-07433-RWS

# DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER REGARDING PERSONAL FINANCIAL INFORMATION

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
303.831.7364

# TABLE OF CONTENTS

I. MS. MAXWELL'S PERSONAL FINANCIAL INFORMATION IS IRRELEVANT AND NOT DISCOVERABLE, EXCEPT TO THE LIMITED ISSUE OF PUNITIVE DAMAGES ................................................................................................................... 1

    A. Requests For Production Specifically State They Relate Only to Punitive Damages, Acknowledging the Information is Otherwise Irrelevant ..................................... 1

    B. Sale of Townhome is Irrelevant and Not Calculated to Lead to the Discovery of Admissible Evidence ........................................................................................... 2

    C. Ms. Maxwell Already Has Fully Responded to All Discovery Requests Relating to Payments Made to Her By Epstein ..................................................................... 5

II. THE DISCOVERY REQUESTS ARE OVERLY-BROAD, UNDULY BURDENSOME AND EXCEED LIMITED DISCOVERY PERMITTED BY COURTS ON THE ISSUE OF PUNITIVE DAMAGES. ............................................................................................. 6

    A. Appropriate Timing for Financial Discovery is After Entry of a Verdict on Issues of Liability and Punitive Damages, or, at a Minimum, After Determination of Summary Judgment Motion ................................................................................................. 7

    B. Scope of Financial Discovery Must Be Limited to Least Invasion of Private Financial Affairs, i.e., a Sworn Net Worth Affidavit ....................................................... 11

III. PLAINTIFF'S MISREPRESENTATIONS OF LAW AND FACTS MUST BE IGNORED ............................................................................................................. 13

CERTIFICATE OF SERVICE ................................................................................. 14

Defendant Ghislaine Maxwell ("Ms. Maxwell") files this Reply in Support of Motion for Protective Order Regarding Personal Financial Information, and states as follows:

## I. MS. MAXWELL'S PERSONAL FINANCIAL INFORMATION IS IRRELEVANT AND NOT DISCOVERABLE, EXCEPT TO THE LIMITED ISSUE OF PUNITIVE DAMAGES

Acknowledging that the 22 broad and sweeping requests for productions of every single piece of Ms. Maxwell's personal and business financial information far exceed any discovery permissible to the limited issue of punitive damages, Plaintiff changes tactics claiming the discovery *also* relates to 1) Ms. Maxwell's alleged potential sale of assets in this country and 2) Ms. Maxwell's alleged financial dependence on Mr. Epstein. This last ditch effort to save the clearly overly broad, unduly burdensome and irrelevant discovery must fail.

### A. Requests For Production Specifically State They Relate Only to Punitive Damages, Acknowledging the Information is Otherwise Irrelevant

Plaintiff concedes, as she must, that Ms. Maxwell's financial information is completely irrelevant to the single claim – defamation – and all defenses in this matter. Plaintiff offers no argument that Ms. Maxwell has put her financial information at issue. Unlike Plaintiff,[1] Ms. Maxwell has not filed any claims. She has not sought any damages. She has not averred a single defense that in any way implicates her own financial information.

Plaintiff presents no argument that the personal financial information sought relates to, or would tend to prove or disprove, any element of a claim or defense in this matter. Fed. R. Civ. P. 26(b)(1). Plaintiff provides no evidence or law supporting any claim of relevance to the all-inclusive personal, private, and in some cases, business financial information sought. Plaintiff

---

[1] Plaintiff makes the illogical claim that she has been required to provide this information so Ms. Maxwell should have to provide the same information. Of course, Plaintiff seeks over $80 Million dollars in compensatory damages based on her alleged loss of reputation and emotional distress, putting her personal financial information directly at issue. Ms. Maxwell has made no such claims. Remarkably, Plaintiff still refuses to disclose both the Settlement Agreement and the vast sum of money she has already obtained from Jeffrey Epstein related to her claims, despite their much greater relevance to this action. A further Motion to Compel and for sanctions regarding her instransigence is forthcoming.

1

ignores controlling law that obligates her to meet a heightened burden above and beyond typical Rule 26 standards when seeking such broad, sensitive personal financial information. Certainly, Plaintiff falls far short of demonstrating *both* that the requested financial information is "relevant to the subject-matter of the action and that there is a compelling need therefor because the information contained therein is not 'otherwise readily obtainable.'" *Hamm v. Potamkin*, No. 98-civ-7245 (RWS), 1999 WL 249721 (S.D.N.Y. 1999).

Indeed, Plaintiff tacitly conceded the *only* potential basis for discovery of any information relating to Ms. Maxwell's finances is the bald claim for punitive damages. She specifically captioned the 22 discovery requests "DOCUMENT REQUESTS CONCERNING PUNITIVE DAMAGES." *See Menninger Decl.* Ex. A (Plaintiff's Second Request For Production Of Documents To Defendant Ghislaine Maxwell Nos. 21 to 43). These are the requests subject to the instant Motion for Protective Order.

Plaintiff's newly minted arguments that Ms. Maxwell's financial situation bears any relevance beyond the limited issue of punitive damages must be seen for what it is: a last ditch effort to obtain clearly overly broad, wide-ranging, impermissible discovery and to harass Ms. Maxwell. The information Plaintiff seeks far exceeds anything courts have authorized in regards to financial discovery related to punitive damages and this Court should therefore provide grant a Protective Order shielding such irrelevant information from discovery in this matter

**B. Sale of Townhome is Irrelevant and Not Calculated to Lead to the Discovery of Admissible Evidence**

Plaintiff's first red-herring argument for the "relevance" of Ms. Maxwell's financial information is that the April 2016 sale of Ms. Maxwell's townhome in Manhattan somehow demonstrates "consciousness of criminal guilt and civil liability" and that Plaintiff is "entitled to explore all the circumstances surrounding the timing and consummation of this sale, including

2

whether Defendant has now secreted these assets someplace where they may be difficult to reach, such as in the United Kingdom." Resp. at 3.  This argument is fundamentally flawed for five reasons.

First, the very news articles cited by Plaintiff document that the townhome had been on the market for sale *for over a year* - i.e., since at least April of 2015, over six months before Plaintiff filed this lawsuit.  *See* http://nypost.com/2016/04/28/alleged-epstein-madam-sells-16m-manhattan-townhouse/ (last accessed Aug. 29, 2016).  Thus, Ms. Maxwell's decision to sell the property, made long before this litigation, by definition could not have been informed by this litigation or demonstrate "consciousness" of guilt or civil liability.

Second, Plaintiff's claim that information regarding the sale of this property would be admissible at trial is simply wrong. Plaintiff offers a single *criminal* case, *United States v. Amuso*, which addressed the admissibility of evidence of physical flight from the jurisdiction as proof of consciousness of guilt. 21 F.3d 1251, 1258 (2d Cir. 1994).  Plaintiff failed to cite a single *civil* litigation in which evidence of the sale of property at fair market value to an unrelated third party in an arms-length transaction of a house that was listed for sale *prior to* any pending or threatened litigation could possibly be admitted as evidence of "consciousness of guilt."[2]  Such evidence is precluded by Fed. R. Evid. 401 402 and 403.  Permitting any evidence regarding the sale of this property at the liability phase of the trial would be tantamount to permitting financial worth information to influence a finding of liability and punitive damages, evidence expressly prohibited under New York law as applied in both state and federal courts, as Plaintiff acknowledges.  *Rupert v. Sellers*, 48 A.D.2d 265, 272, 368 N.Y.S.2d 904, 912 (4th Dep't 1975) ("defendant's wealth should not be a weapon to be used by plaintiff to enable him to

---

[2] By contrast, during the pendency of this lawsuit, Plaintiff assisted her husband in moving back to Australia while he has an active warrant out for his arrest in Colorado.

induce the jury to find the defendant guilty of malice, thus entitling plaintiff to punitive damages"); *accord*, *Chilvers v. New York Magazine Company, Inc.*, 453 N.Y.S.2d 153 (N.Y.Co.Sup.Ct. 1982).

Third, if this case were ever to reach a trial that included a claim for punitive damages, *and* the jury found that punitive damages were appropriate, proceeds from the sale of this property, if any, would be included in the net worth affidavit, which Ms. Maxwell has offered to provide at that stage of trial.

Fourth, the sale of Ms. Maxwell's home was not "secret" and has not been hidden. It is pure unsupported speculation that sale proceeds are being "secreted" away, as Plaintiff suggests by her repeated use of hedge words surrounding the false allegation. Plaintiff's only source for this claim: the New York Post and the Page 6 gossip page. Resp. at 5. Curiously, Plaintiff's counsel has refused to produce their own communications with the media.[3] Perhaps that is because the "story" originated with them. Before the article about Ms. Maxwell's townhome was published, Plaintiff's one time literary agent offered, "If it helps, have your attorney write a suggested column-oriented item re. your case and if it's written in 'journalistic style,' ▇ and I can pop it off to Emily [a 'friend of mine'], as a possible piece for her renowned Page Six column. It is called 'pure favor time' to Emily from the owner of the item…" Menninger Decl., Ex. D. To this, Plaintiff replied, "it is in no favour or intention for me to put myself and story out there for nothing. I will contact Brad Edwards to see if he would still like to do a piece with Emily, and maybe even later down the track, when all is said and done there just might be a helluva piece for the page 6." *Id.*

---

[3] *See* Defendant's Motion to Compel at 5 (Doc. # 354) (documenting Plaintiff's counsel's refusal to produce their "hundreds" of emails with the media concerning Plaintiff).

4

In any event, Ms. Maxwell need not stop her normal life or freeze all of her financial affairs simply because she has been named a defendant in a spurious litigation. The completion of her previously contemplated sale of her New York townhome does not open her to probing pre-judgment discovery based on a purely speculative and baseless allegation. Fed. R. Civ. P. 69 provides for such discovery only *after* entry of judgment. "As a general rule, discovery concerning an adversary party's assets is not permitted during the course of the litigation unless it is relevant to the merits of a claim. … such discovery is properly reserved for post-judgment proceedings, when a judgment creditor seeks the information necessary to permit it to enforce the judgment." *See Sequa Corp. v. Gelmin*, No. 91 CIV. 8675 (DAB), 1995 WL 404726, at *2 (S.D.N.Y. July 7, 1995) (internal quotations and citations omitted).

Fifth, this unremarkable and completely irrelevant sale of a home to an unrelated third party purchaser relates only to one of the 22 contested Requests for Production (Number 26). Simply selling one's home does not somehow "open the door" to the rest of Ms. Maxwell's sensitive and private financial information contained in the other 21 discovery requests seeking, for example, all of tax returns, bank statements, and every other conceivable piece of financial information, none of which has any relevance to the claims or defenses in this matter. Plaintiff provides no legal basis to claim it should.

### C. Ms. Maxwell Already Has Fully Responded to All Discovery Requests Relating to Payments Made to Her By Epstein

Plaintiff continues in her pattern of misrepresenting the record and Ms. Maxwell's discovery responses. She argues, for example, that "the financial information will help to establish an important link between Defendant and Jeffrey Epstein." Resp. at 4. Again, the only "financial information" Plaintiff points to is the sale of the New York townhouse and unsupported speculation in on an online news publication about the ownership of that

5

townhome.[4]  Yet, Plaintiff completely fails to explain how this speculation has any relevance to the *actual* claims or defenses in this single count claim of defamation.

Ms. Maxwell has fully responded to all requests for production of documents relating to any and all financial transactions and ties between herself and Mr. Epstein *from 1999 to present*, including Request Nos. 10, 11 and 20 of the Plaintiff's First Discovery Requests and Nos. 13 and 14 of Plaintiff's Second Discovery Requests.  Indeed, with respect to the specific time period covered by the Requests for Production subject to this Motion for Protective Order – 2015 to present – Ms. Maxwell has provided specifically in Response to Interrogatory 5:  "From the time period of January 1, 2015 through the present, Ms. Maxwell has had no payments made or things of value transferred to her, including loans, by Jeffrey Epstein or any entity or person affiliated with or controlled by him."  Simply put, Ms. Maxwell already has disclosed the absence of any financial ties between herself and Mr. Epstein that would be covered by the instant document requests.  No such ties exist.  Any requests concerning such ties are cumulative and duplicative, and should be precluded on this additional basis.

**II.     THE DISCOVERY REQUESTS ARE OVERLY-BROAD, UNDULY BURDENSOME AND EXCEED LIMITED DISCOVERY PERMITTED BY COURTS ON THE ISSUE OF PUNITIVE DAMAGES.**

Ms. Maxwell acknowledges that courts in New York have permitted limited discovery of a defendant's finances when punitive damages issues are permitted to go to a jury.  Because of the sensitive nature of the information and the privacy rights of any defendant who has not put their financial status at issues, courts have been careful to limit that discovery to the least invasive means.  As well, the discovery should be had, if at all, only when it is absolutely certain that the case will actually proceed to the jury on the issue of the amount of punitive damages.

---

[4] Plaintiff's argument that Ms. Maxwell has no assets of her own and is living off of Mr. Epstein (Resp. at 5), of course, directly contradicts her previous spurious argument that Ms. Maxwell is secreting millions of dollars of assets out of the country.

This holds particularly true in this case where the Plaintiff has shown a blatant disregard for confidentiality obligations and regularly misrepresents record evidence. These tendencies were recently displayed last Thursday when Plaintiff filed a public pleading in the Florida Appeals Court announcing portions of terms of a settlement agreement between Plaintiff's attorneys and Alan Dershowitz, which she acknowledged were subject to confidentiality requirements. Likewise, in the Response to this Motion, Plaintiff includes multiple improper, irrelevant and misleading statements, demonstrating why protection of Ms. Maxwell's personal financial information is particularly important in light of Plaintiff's litigation tactics.

### A. Appropriate Timing for Financial Discovery is After Entry of a Verdict on Issues of Liability and Punitive Damages, or, at a Minimum, After Determination of Summary Judgment Motion

In this District, there is a split in authority regarding the appropriate timing for discovery related to punitive damages claims. Some courts prohibit such discovery until a post-liability verdict permitting punitive damages, some permit *limited* pretrial discovery only after resolution of dispositive motions, and some afford only disclosure of a financial affidavit prior to dispositive motions. *See, e g., Hazeldine v. Beverage Media, Ltd.*, No. 94 CIV. 3466 (CSH), 1997 WL 362229, at *2-*3 (S.D.N.Y. 1997) (discussing split in authority); *Davis v. Ross*, 107 F.R.D. 326, 327 (S.D.N.Y. 1985) (no pre-trial discovery); *Rupert v. Sellers*, 48 A.D.2d 265 (1975) (same); *Collens v. City of New York*, 222 F.R.D. 249, 254 (S.D.N.Y. 2004) (same). None, however, have permitted the type of discovery sought by Plaintiff prior to dispositive motions.

To say the least, this case has been contentious. Plaintiff has hurled vicious attacks against Ms. Maxwell, including misrepresenting record facts to the Court in an attempt to jade the perception of Ms. Maxwell, including on topics such as Ms. Maxwell's adult consensual sexual activities. Last week, Plaintiff's counsel filed in a public pleading apparently confidential information regarding the settlement terms of Mr. Edwards and Cassell's settlement with

7

Professor Dershowitz.  Ironically, that entire pleading concerns Plaintiff's appeal of a denial of her motion for sanctions concerning whether Professor Dershowitz improperly disclosed admissions by the Boies, Schiller firm.[5]  Most tellingly, Plaintiff in her current Response hurls unsupported and spurious claims about Ms. Maxwell's supposed "hiding of assets" her vast wealth, her tremendous "conspiracy," and uses as support, media speculation.  It would appear that Plaintiff intends to generate, and then use, unsupported media speculation to (a) support her overreaching discovery requests, and (b) taint the jury pool in this jurisdiction.

In sum, given the media attention focused on this case, and Plaintiff's apparent willingness to publicly disclose confidential information, not to mention Plaintiff's counsels' undisclosed communications with the media, Ms. Maxwell rightfully remains skeptical of Plaintiff's ability to abide by the terms of this Court's Protective Order when it comes to confidential financial information.

In other cases involving higher profile individuals and matters, the courts have been seemingly disinclined to afford such discovery, at least prior to the resolution of dispositive motions.  *See, e.g., Davis v. Ross*, 107 F.R.D. 326, 327 (S.D.N.Y. 1985) ("[Diana] Ross should not be compelled to disclose private facts to *anyone* —even to someone who has agreed to keep the information confidential—until it is found that plaintiff is entitled to punitive damages"); *McNamee v. Clemens*, 2013 WL 6572899 (E.D.N.Y 2013) (in defamation action against Walter Clemens, denying disclosure of sensitive and personal financial information, claimed to be related only to issue of punitive damages, as premature before dispositive motions).

In circumstances such as these, the procedure followed in a similarly contentious case by this Court, *Guccione v. Flynt,* may be the appropriate compromise.  In that case, this Court

---

[5] Of course, Plaintiff and her counsel are the ones who originally filed their Motion for Joinder in the CVRA litigation making the spurious claims about Ms. Maxwell and then *withdrew* those pleadings as a part of their settlement with Professor Dershowitz.

8

directed the defendant to prepare a financial affidavit to be held by his counsel "until the time of trial at which time it will be turned over to counsel for their use only and subject to a confidentiality order and will be made public only after a special verdict has been returned awarding punitive damages." No. 83-civ-8020 (RWS), 1985 WL 255, at *1 (S.D.N.Y. 1985). Balancing Ms. Maxwell's significant privacy interests against Plaintiff's discovery and filing abuses, this is a case in which Ms. Maxwell should not be required to provide her sensitive personal financial information to Plaintiff and her counsel. Without this protection, the information will likely be subject to misuse in filings made to the Court and potentially inappropriately leaked either to the press or during a liability phase of a bifurcated trial.[6]

Plaintiff's attempt to distinguish this case from *Tyco Int'l Ltd. v. Walsh*, No. 02-CV-4633 (DLC), 2010 WL 3000179, at *1 (S.D.N.Y. July 30, 2010), because this case will be tried to a jury, is unavailing. As the Second Circuit has held:

> Since it often would be prejudicial to a defendant to attempt to litigate its financial condition during the trial on the issues of liability and compensatory damages, the preferred method of accommodating the various interests is to delay trial as to the amount of an award of punitive damages until the usual issues of liability and compensatory damages have been tried, along with the matter of whether the defendant's conduct warrants any award of punitive damages at all. If the *jury* finds in favor of the claimant on all of these issues, the parties should then be allowed to present evidence with respect to the amount of the punitive damage award. *See Rupert v. Sellers,* 48 A.D.2d at 268–72, 368 N.Y.S.2d at 909–12; *Varriale v. Saratoga Harness Racing, Inc.,* 76 A.D.2d 991, 992, 429 N.Y.S.2d 302, 303–04 (3d Dep't 1980).

*Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 373–74 (2d Cir. 1988). If the Second Circuit considers a bifurcated trial the "preferred method," then a minimal delay to exchange a financial affidavit cannot be disfavored. The Court's method in *Guccione v. Flynt* accomplishes the goals of information exchange without inconvenience to the jury. "Since the purpose of presenting to

---

[6] Indeed, Plaintiff's argument relating to the sale of Ms. Maxwell's home suggests that Plaintiff *intends* to improperly insert Ms. Maxwell's financial status to the jury during the liability phase of trial for the purpose of improperly swaying the jury to find against Ms. Maxwell on liability.

9

the jury the amount of defendant's wealth is only to furnish to them a guide for suitable punishment, there is no need for a plaintiff to explore the details of a defendant's assets and liabilities. A mere statement of defendants' respective total net worth is sufficient." *Rupert,* 368 N.Y.S.2d at 913; *accord Hazeldine* 1997 WL 362229, at *2-*3 ("Plaintiff needs no more [than a net worth statement] to establish her punitive damages claim.").

At a minimum, a protective order should be issued protecting any financial discovery until after the determination of dispositive motions. Importantly, the vast majority of courts permitting limited pretrial discovery permit such discovery *only after* determination of dispositive motions, including those cases relied on by Plaintiff. *See Tillery v. Lynn,* 507 F.Supp. 399 (S.D.N.Y. 1985) (relied on by Plaintiff, Resp. at 8-9) (granting limited discovery only *after* denying summary judgment); *Pasternak v. Dow Kim,* 275 F.R.D. 461, 463 (S.D.N.Y. 2011) (relied on by Plaintiff, Resp. at 7) (discovery for punitive damages not warranted where defendant intended to file motion for summary judgment); *Copantitla v. Fiskardo Estiatorio, Inc.,* No. 09 CIV. 1608 RJH JCF, 2010 WL 1327921, at *16 (S.D.N.Y. Apr. 5, 2010) (same).

Contrary to Plaintiff's protestations, summary judgment in this single count defamation claim is highly probable, in particular on the claim for punitive damages. While this is not the proper forum to litigate the merits of Ms. Maxwell's forthcoming summary judgment motion, the record evidence demonstrates that Plaintiff's published statements were rankly untrue, making Ms. Maxwell's denial of those statements substantially true.[7] Plaintiff has been forced to admit that her repeated claims and sworn statements that she became a "sex slave" in 1999 when she was 15 years old are untrue. She wholly fabricated the time she spent during her "Sweet 16th Birthday" party with Mr. Epstein and Ms. Maxwell, as she reported to the press. None of the

---

[7] Plaintiff attempts to make much ado about the use of the terminology "substantial truth," ignoring that it is the actual legal standard of the truth defense to defamation. *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298 (2d Cir. 1986).

witnesses have corroborated Plaintiff's claim that she was "sexually trafficked." Plaintiff's counsel has withdrawn the Joinder Motion in which Plaintiff made that allegation. These, along with the numerous other of Plaintiff's factual misrepresentations, will be fully briefed at the appropriate time in the summary judgment papers. Because of the provable lies in Plaintiff's pleadings and public statements, the "defamatory" statement cannot be malicious and will not support a claim for punitive damages. There can be no evidence of "hatred, ill will, spite or wanton, reckless, or willful disregard of the rights of another" through the making of an accurate statement. *Prozeralik v. Capital Cities Communications*, 82 N.Y.2d 466, 479 (1993).

As discussed below, because the limited scope of any financial information permitted related to punitive damages, a net worth statement produced after determination of summary judgment does not prejudice Plaintiff in any way. No further discovery is required or should be permitted. Again, in light of the malicious nature and misleading statements filed in this matter, Ms. Maxwell should not be required to turn over her personal financial information exposing it to similar misuse where its only relevance (the punitive damages claim) will likely be mooted at summary judgment.

**B. Scope of Financial Discovery Must Be Limited to Least Invasion of Private Financial Affairs, i.e., a Sworn Net Worth Affidavit**

Ironically, the very cases Plaintiff relies on to claim she is entitled to pre-trial discovery of financial information for punitive damages purposes instead proved that her discovery requests are vastly overbroad, unduly burdensome and inappropriate. For example, in *Hazeldine,* 1997 WL 362229, at *2-*3, relied on by the Plaintiff, the court specifically "conclude[d] that plaintiff's current requests for financial discovery are overbroad." *Id.* at 4. There the Plaintiff sought "three years of tax returns; information regarding real estate holdings, motor vehicles, investments, and bank and brokerage accounts; documents regarding personal loans; and,

11

documents reflecting net worth. Plaintiff also requests Beverage Media's financial statements for 1995–96." *Id.* at *1. After analysis of case law throughout the jurisdiction, and balancing the defendant's privacy interest in personal financial information against the needs of the case, the court concluded:

> Slone's legitimate privacy interests outweigh plaintiff's need for all the specific types of financial information requested. Accordingly, Slone need only produce a financial affidavit in the form of a personal balance sheet listing his assets and liabilities. This affidavit should also include a general statement of Slone's net worth. Equivalent information should be produced by Beverage Media. **Plaintiff needs no more to establish her punitive damages claim.**

*Id.* Similarly, in a case heavily relied on by Plaintiff, this Court cited the logic of *Hazeldine* with approval, prohibited broad discovery requests including tax returns, limited preliminary pre-trial discovery to "a financial affidavit containing a statement of its total net worth and listing its income, assets, and liabilities for the past three years." *Hamm*, 1999 WL 249721, at *2 (S.D.N.Y. Apr. 28, 1999); *accord Collens v. City of New York*, 222 F.R.D. 249, 254 (S.D.N.Y. 2004) (denying discovery because more efficient and less intrusive means for obtaining financial information include an affidavit from defendant declaring her net worth.)

Plaintiff provides no basis other than unsupported speculation to diverge from this well established and long settled practice. Contrary to Plaintiff's assertion, this methodology has been regularly applied to individual defendants, not just corporations with audited financial statements, as was the case in *Hazeldine, Rupert, Hamm and Collens*. Certainly, the 22 requests for every single piece of financial information possessed by Ms. Maxwell from bank statements, to tax returns, credit cards, real and personal property holding, stocks, bonds, trusts, and holdings in businesses (including the business' tax returns and income statements) far exceed the well-established practice of providing a net worth statement. A sworn net worth statement is all Plaintiff needs relevant punitive damages claim.

## III. PLAINTIFF'S MISREPRESENTATIONS OF LAW AND FACTS MUST BE IGNORED

Plaintiff's distasteful and unprofessional insertion of irrelevant and improper argument, misleading allegations and convoluted citations to out-of-context and inaccurately recited deposition testimony do not deserve consideration by this Court. These misrepresentations are regularly repeated in almost all of Plaintiff's filings despite their irrelevance to a particular motion. Corrections to many of the misrepresentations are addressed in Ms. Maxwell's Defendant's Motion For Leave To File A Sur-Reply Or, Alternatively, To Strike Plaintiff's Misrepresentations Of Fact To The Court (Doc. # 400), incorporated by reference herein.

Plaintiff chooses to insert non-sequitur *ad hominem* attacks into each of her motion papers in an attempt to distract the reader from the substance of the Motion at issue. The Court should not be sidetracked from the fact that Plaintiff has not provided a single basis on which to claim that the extensive, highly sensitive protected personal financial information Plaintiff seeks is relevant to any claim or defense in this matter. Nor should it be distracted from the fact that the law prohibits disclosure of this information at this point in the proceedings, prior to a finding of liability for punitive damages, or at a minimum after determination of summary judgment. If anything, these diatribes should make clear that Ms. Maxwell's personal financial information is in need of greater protection from Plaintiff's misuse of discovery.

**WHEREFORE**, for the reasons stated herein and in the Motion for Protective Order, Ms. Maxwell requests that the Court Grant her Motion for Protective Order as stated in the Motion.

Dated: August 29, 2016

                      Respectfully submitted,

                      */s/ Laura A. Menninger*
                      Laura A. Menninger (LM-1374)
                      Jeffrey S. Pagliuca (*pro hac vice*)
                      HADDON, MORGAN AND FOREMAN, P.C.
                      150 East 10th Avenue
                      Denver, CO 80203
                      Phone: 303.831.7364
                      Fax: 303.832.2628
                      lmenninger@hmflaw.com

                      *Attorneys for Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on August 29, 2016, I electronically served this *Defendant's Reply in Support of Motion for Protective Order Regarding Personal Financial Information* via ECF on the following:

| | |
|---|---|
| Sigrid S. McCawley<br>Meredith Schultz<br>BOIES, SCHILLER & FLEXNER, LLP<br>401 East Las Olas Boulevard, Ste. 1200<br>Ft. Lauderdale, FL 33301<br>smccawley@bsfllp.com<br>mschultz@bsfllp.com | Paul G. Cassell<br>383 S. University Street<br>Salt Lake City, UT 84112<br>cassellp@law.utah.edu |
| Bradley J. Edwards<br>FARMER, JAFFE, WEISSING, EDWARDS,<br>FISTOS & LEHRMAN, P.L.<br>425 North Andrews Ave., Ste. 2<br>Ft. Lauderdale, FL 33301<br>brad@pathtojustice.com | J. Stanley Pottinger<br>49 Twin Lakes Rd.<br>South Salem, NY 10590<br>StanPottinger@aol.com |

                      */s/ Nicole Simmons*
                      Nicole Simmons