
Sigrid S. McCawley<br>
Telephone: (954) 356-0011<br>
Email: smccawley@bsfllp.com

July 28, 2021

**VIA ECF**

The Honorable Loretta A. Preska
District Court Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re: *Giuffre v. Maxwell*,
          **Case No. 15-cv-7433-LAP**

Dear Judge Preska,

    The Parties write in response to the Court's July 1, 2021, direction that the Parties meet and confer and propose to the Court ways to streamline the present unsealing process, as detailed in the Unsealing Protocol. ECF No. 1108. The Parties met and conferred on July 26, and discussed ways in which the sealing process can proceed more efficiently. The Parties therefore present the following options to the Court.

### Plaintiff's Proposal

    At the July 1, 2021, hearing, the Court observed that, in order streamline and accelerate the unsealing process, "it would be useful to consider all the folks from whom we have received objections at one time." Hr'g Tr. 16:20-22. Plaintiff agrees, and proposes that Court address all of the Non-Party Objections submitted and the documents those objections pertain to. Pursuant to section 2(d) of the Court's Order and Protocol for Unsealing Decided Motions, sixteen non-parties submitted Non-Party Objections in November and December of last year.[1] Addressing these Non-Party Objections now will allow the Court to adjudicate all remaining legal arguments against unsealing at once, and will drastically streamline the unsealing process.

    At the July 26 meet and confer, Maxwell's counsel expressed that they would be unable to carry out the Court's suggestion due to scheduling conflicts until January of next year, and asserted

---

[1] The Non-Party Objectors' documents cover approximately 200 to 250 docket entries, a list of which the Parties can exchange in advance of briefing and submit to the Court as an attachment to their briefs with recommendations on a document-by-document basis. Many of these documents have already been reviewed during the review for Does 1 and 2.

BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com



The Honorable Loretta A. Preska
July 28, 2021
Page 2

that addressing all remaining objections at once would be unduly burdensome. As an initial matter, the Court should deny Maxwell's de facto application for a five-month stay, and require her to demonstrate good cause to justify any further delays to an unsealing process that the Second Circuit ordered two years ago. Moreover, it is unclear what, if any, burden Maxwell has in the briefing for Non-Party Objections. Maxwell asserts that she will need time to review each Non-Party Objection to decide whether or not to submit a Party Objection under section 2(e) of the Protocol, but Maxwell is not *required* to file a separate Party Objection for any Non-Party, and should already know by now whether or not she intends to assert her own objections, given that she has had these objections for over seven months. Further, because many of the Non-Party Objectors' documents have already been addressed during the review relating to Does 1 and 2, Maxwell has already asserted objections on her own behalf to many of the documents that will be at issue.

In any event, Plaintiff is willing to confer with Maxwell in good faith to address ways to alleviate her burden. For example, Plaintiff asked whether Maxwell would be willing to proceed with Non-Party Objectors in two groups of eight (she declined). Plaintiff would also agree to allowing each Party thirty (30) days to file their first brief (extending the default deadlines set forth in sections 2(d) and 2(e) of the Protocol). Plaintiff also believes that the Parties can respond to the Non-Party Objections in omnibus briefs (with extended page limits if necessary), as opposed to preparing sixteen separate filings. In short, if the Court orders the Non-Party Objections to be handled in the next round, Plaintiff will work with Defendant to adopt a mutually acceptable means of doing so.[2]

Finally, Plaintiff believes that the Court, during the course of its review of individual docket entries, can decide whether or not to unseal the names of Non-Parties who have not filed objections. Plaintiff agrees that the Court should make a "particularized finding" for each Doe considering "the countervailing interests of any particular Doe," ECF No. 1196 at 32, but believes that the Court can conduct such an analysis in the course of reviewing the documents at issue for any given round. By now, the Court is familiar with each of the arguments Maxwell asserts against unsealing, and has reviewed the Non-Party Objections as well. If the document being considered contains the name of a non-objecting Non-Party, the Court can consider at that time whether or not there is the potential that countervailing interests could outweigh the presumption of access. If not, the Court should unredact those names at that time to prevent the need to revisit the same document for each non-objecting Doe. That certain Non-Parties have not been located does not detract from this point. Consistent with the Protocol, Parties used their "best efforts" to attempt service and, in any event, when Plaintiff asked Maxwell if she had any concerns about *specific* Non-Parties, she was unable to provide a list of names. Plaintiff also asked whether there should

---

[2] At meet and confer, Maxwell discussed the future burden of preparing redactions *after* the Court rules on the Non-Party Objections. But the logistics of mechanically implementing the Court's eventual order for these documents can be addressed after the Court rules. Whenever that happens, Plaintiff will be willing to negotiate (with both Maxwell and the Non-Party Objectors) a reasonable schedule for preparing and filing the documents ordered to be released.



The Honorable Loretta A. Preska
July 28, 2021
Page 3

be a renewed attempt to re-serve the Non-Parties with no return address, but Maxwell refused because her objection would remain even for a Non-Party that was actually served but did not object. In short, Maxwell's concerns about Non-Parties who may not have received notification are not an impediment to the Court's ability to review documents that mention them.

Plaintiff disagrees with Maxwell's counterproposals, which inadequately streamline the unsealing process. Maxwell believes that we should continue down the list of decided motions for another Doe, but with the Court handling more motions at one time. Respectfully, maintaining the status quo would keep in place all of the inefficiencies the Court and the Parties have identified to date, and is non-responsive to the Court's request that the Parties suggest ways to "move through more quickly" and "speed the process." Maxwell also suggested that, "after the *Maxwell* criminal trial also is concluded," all remaining Non-Parties could be divided into four "categories" ((i) Epstein employee, (ii) Epstein affiliate, (iii) victim, etc.) so that they can be addressed in groups. Such an approach, however, would delay speeding up the process until after her criminal proceedings,[3] and will only to lead to more disputes. Even deciding what groups should exist and what to call them will likely lead to disagreement, and the process of deciding which Non-Party fits into which group will inevitably lead to disagreement. Certain individuals, for example, may fit into both the "employee" and "victim" categories, depending on the parameters used and one's view of the underlying facts relating to that individual. The Parties will also inevitably disagree about whose documents should be prioritized in the review (victims or "public figures").

### Defendant's Proposal

Ms. Maxwell respectfully requests that the Court accelerate the unsealing process in two respects. First, she proposes that the Court conclude the motion-by-motion unsealing by reviewing the final sets of motions in significantly larger groups, i.e., approximately 10-15 motions per grouping. Second, and after the conclusion of the motion-by-motion analysis, she requests the Court to review the *Does* in categories (whether objecting, non-objecting or the largest group, non-responsive) by four types of individual, specifically, (a) employees, (b) "public figures," (c) alleged victims, and (d) family and friends of the parties or Mr. Epstein. This proposal will, in counsel's view, appropriately advance the goal of a speedier review while accounting for the significant practical hurdles that would arise by shifting immediately to a *Doe*-by-*Doe* undertaking.

Practical considerations presented by a shift in process to a *Doe*-based inquiry at this juncture are numerous. Ms. Maxwell's criminal trial is scheduled to begin with jury selection on

---

[3] Maxwell asserts that addressing additional Does at this time "risks prejudicing Ms. Maxwell's right to a fair trial." She has already conceded, however, that she "previously has argued to this Court, albeit unsuccessfully, that the continuation of the unsealing process during the midst of her criminal prosecution and trial fundamentally violates her due process rights." ECF No. 1208 at 3. Should she choose to make this same argument (again), she may do so in her briefing concerning Non-Party Objections.



November 15, 2021. Counsel for Ms. Maxwell works at a very small litigation firm, with eight full-time lawyers and two paralegals. Even apart from the Maxwell criminal trial, undersigned counsel plus the one paralegal who have represented Ms. Maxwell for nearly six years have two other major, multiple-week trials scheduled for almost the entirety of September and October 2021. Practically speaking, the entire Maxwell team have scant time outside of a courtroom in the coming months and through the end of the year. Undertaking *any* unsealing review at this juncture with its briefing and redactions and reviews will present an incredible resource-allocation problem. To shift the method of review will undercut the process established by counsel to efficiently but effectively follow the Unsealing Protocol as currently drafted. Plaintiff is incorrect; Ms. Maxwell is not requesting a *de facto* stay of the unsealing, rather pointing the Court to practical difficulties that will fall disproportionately on this small firm during the midst of three back-to-back post-pandemic trial settings in complex cases while also reviewing the hundreds of excerpts that pertain to the Objecting *Does* (and the non-objecting *Does*, as discussed below).

Further, and perhaps more problematic, the release of deposition testimony from, or evidentiary and advocate references to, individual *Does* (which includes many likely testifying witnesses in the criminal trial), in the very weeks leading up to jury selection and testimony risks prejudicing Ms. Maxwell's right to a fair trial. Local Crim. R. 23.1(d)(4) (release of the "identity, testimony or credibility of prospective witnesses" "presumptively involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice").

Defendant's proposal to conclude the motion-by-motion analysis first will avoid these pitfalls. By taking on the remainder of the motions in significantly larger groups that include more pleadings than previously done at a time should be less burdensome in the coming rounds because there is unlikely to be much different or additional briefing that has not already been litigated to and resolved by the Court. Thus, with the exception of *Doe* names and references, the public will most immediately gain access to the greatest majority of the now-sealed pleadings in the shortest amount of time.

After the conclusion of the motion-by-motion analysis, which presumably would occur after the *Maxwell* criminal trial also is concluded, the Court could then turn to review of the *Does* by category. Having already completed the review of the motions, the Court and parties will be most familiar with the content of all the motions and will be able to focus exclusively on briefing, and resolving, the types of privacy interests afforded to the different types of *Does*. Counsel anticipates that the legal and factual issues will best be considered based on the type of *Doe* at issue. Public figures presumably have a different privacy interest than a family member or friend of a party. Employees of Epstein are differently situated from alleged victims of his. The consolidated briefing based on witness type will allow for consideration of those differences, but provide an ability to focus on the *Doe*-type's privacy interests.

Ms. Maxwell believes that Plaintiff's proposal, shifting immediately to the objecting *Does* as a group, would be ill-advised. There are approximately 200-300 excerpts that have been sent



to the objecting *Does*. Plaintiff glosses over the complications attendant to considering these 200-300 different pleadings in one (or even two) groupings. Dividing the objecting *Does* into two groups would not change the number of pleadings considered at once because many of those pleadings would be covered in both groupings. These *Does* are a diverse group with a myriad of asserted privacy interests. Briefing would have to occur with respect to each: Under the Protocol, Ms. Maxwell would need an opportunity to argue for continued sealing as to each, Plaintiff presumably will argue for unsealing as to each, and then the *Does* and Ms. Maxwell would need to draft replies in support of sealing. Even a cursory review of the filed objections reveal numerous compelling reasons for continuing to maintain under seal on much of the objecting *Doe*'s excerpts. Assuming the Court agrees, it seems likely that the public will not immediately gain access to many sealed materials. Further, because neither Ms. Maxwell nor the government have yet shared their criminal trial witness lists pursuant to Judge Nathan's scheduling Order, it will be impossible to advise the Court that any particular *Doe* is anticipated to be a trial witness in November.

Plaintiff also incorrectly asserts that Ms. Maxwell declined to provide a list of non-responding *Does* about which she has privacy concerns. Rather, there are approximately 186 *Does* on the list, and counsel said that there are groups about which there are concerns but did not have an oral list of such *Does* ready on request during the call. Defense counsel is prepared to provide such a list to the Court when the *Doe* process begins. Remarkably, Plaintiff is well-aware of numerous individuals, including her own family members and friends, who testified under express promises of confidentiality and were extremely reluctant to get involved, yet feigns ignorance that these individuals (who have not filed objections, if they even received the Notice) might have a privacy interest at stake. Plaintiff's counsel declined to say whether they have new contact information for any of the *Does* for which no address was known by the parties, nor explain why a further attempt to contact these individuals would likely add any clarity to the process.

Approaching the *Does* in categories will have the added benefit of having only a few responses and replies due in a particular round as the Objecting *Does* will be spread out amongst the groups. Additionally, the defense's proposal will save for last the most laborious task, one which is likely to yield the least amount of unsealed materials, that is, the review of excerpts pertaining to those *Does* who never received notice of the Protocol or who failed to provide a position one way or the other regarding unsealing. At paragraph 3(f) of the Protocol (DE 1108), this Court held the following:

> A Non-Party's participation in this protocol is optional….Non-Parties are under no obligation to object, and a Non-Party's decision not to do so shall not be deemed consent to the unsealing of any Sealed Materials. The solicitation and receipt of objections from Non-Parties who wish to participate is intended merely to aid the Court in balancing privacy and other interests against the public's right of access.



The Honorable Loretta A. Preska
July 28, 2021
Page 6

      The Court will conduct a particularized review of the Sealed Materials and weigh the competing interests regardless whether it receives any Non-Party Objection.[4]

      Because many of the *Does* were not able to be located, the burden apparently falls to Ms. Maxwell's counsel to alert the Court to factors and evidence that would tend to favor maintaining their name under seal. Ms. Maxwell has previously detailed the example of Doe # 84, an alleged victim of Epstein's when she was a minor. She testified at a deposition, represented by counsel, under the express promise of confidentiality under the Protective Order. During the deposition, this Doe testified that she had undergone extensive therapy to overcome the trauma and did not want to be involved in the proceedings at all. The Second Circuit *sua sponte* redacted this Doe #84's name from otherwise unsealed summary judgment pleadings. *See, e.g., Brown v. Maxwell*, Case No. 18-2868 (2d. Cir. 2019), DE 280 at 22-23; DE 281 at 8, 10 and 18; DE 282 at ¶ 9; DE 283 at Ex. 7. Notice of the Protocol was served on Doe #84's attorney but was returned undelivered to defense counsel, for reasons unknown. There are approximately 150 other *Does* who provided no response. While some of their materials can be reviewed without the benefit of context, there are numerous others for which counsel for *both* parties have information regarding the *Doe's* desire to remain anonymous. Thus far, only Ms. Maxwell's counsel has brought such information to the Court's attention. Following the conclusion of the criminal trial, her counsel and staff will be in a better position to search through our files to alert the Court to any such similar circumstances among the non-responding *Does*.

                                       Sincerely,

                                         */s/ Sigrid S. McCawley*
                                         Sigrid S. McCawley

                                         */s/ Laura Menninger*
                                         Laura Menninger

cc:  Counsel of Record   (via ECF)

---

[4] The Second Circuit remanded this case to the district court to "conduct a particularized review and unseal all documents for which the presumption of public access outweighs any countervailing privacy interests." *Brown v. Maxwell*, 929 F.3d 41, 51 (2d Cir. 2019).