## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

VIRGINIA L. GIUFFRE,

                Plaintiff,                      Case No.: 15 Civ. 7433 (LAP)

v.

GHISLAINE MAXWELL,

                Defendant.
_____/

## PLAINTIFF'S BRIEF IN RESPONSE TO NON-PARTIES
## 17, 53, 54, 55, 56, 73, 93, AND 151'S OBJECTIONS TO UNSEALING

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ....................................................................................................3

    I.    Legal Standard ........................................................................3

    II.   Doe 17's Objection Should Be Overruled and Materials Relating to Doe 17 Should Be Unsealed. ...........................................................5

    III.  Doe 53 Does Not Oppose Unsealing. ...........................................7

    IV.  Doe 54 Does Not Generally Object to Unsealing ...............................8

    V.   Documents Concerning Does 55 and 56 Should Be Unsealed. .................9

    VI.  Doe 73's Objection Should Be Overruled and Materials Concerning Doe 73 Should Be Unsealed. ........................................................12

    VII.  Doe 93's Objection Should Be Overruled and Materials Related to Doe 93 Should Be Unsealed. ........................................................13

    VIII. Doe 151's Objection Should Be Overruled and Materials Relating to Doe 151 Should Be Unsealed. ........................................................13

CONCLUSION.................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alicia B. Through Cynthia B. v. Malloy*,
    No. 3:16-cv-00065 (SRU), 2016 WL 9782480 (D. Con. Dec. 20, 2016) ..............................10

*Bernstein v. Bernstein Litowitz Berger & Grossman LLP*,
    814 F.3d. 132 (2d Cir. 2016) .........................................................................................12, 15

*Bernstein v. O'Reilly*,
    307 F. Supp. 3d 161 (S.D.N.Y. 2018) ............................................... 12, 14, 15, 16

*Brown v. Maxwell*,
    929 F.3d 41 (2d Cir. 2019) .......................................................................................4, 7, 8

*DiRussa v. Dean Witter Reynolds Inc.*,
    121 F.3d 818 (2d Cir. 1997) ...................................................................................4

*In re Parmalat Sec. Litig.*,
    258 F.R.D. 236 (S.D.N.Y. 2009) ...........................................................4, 7, 10, 13

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 (2d Cir. 2006) ...................................................................................3, 4

*Lytle v. JPMorgan Chase*,
    810 F. Supp. 2d 616 (S.D.N.Y. 2011) ................................................................4, 5, 10, 14

*Rotger v. Montefiore Med. Ctr.*,
    No. 1:15-CV-7783-GHW, 2018 WL 11214575 (S.D.N.Y. Mar. 30, 2018).................5, 14

*S.E.C. v. TheStreet.Com*,
    273 F.3d 222 (2d Cir. 2001) ...................................................................................8

*United States v. Amodeo*,
    44 F.3d 141 (2d Cir. 1995) .....................................................................................3

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995) ...........................................................................6, 7, 10

*United States v. Aref,*
    533 F.3d 72 (2d Cir. 2008) .....................................................................................11

*United States v. Avenatti*,
    No. (S1) 19 CR. 373 (PGG), 2020 WL 70952 (S.D.N.Y. Jan. 6, 2020) .........................passim

*United States v. Litvak*,
    No. 3:13-cr-19 (JCH), 2015 WL 328876 (D. Conn. Jan. 23, 2015) .......................................10

*United States v. Maxwell*,
   No. 20-CR-330 (AJN), 2021 WL 5967913 (S.D.N.Y. Dec. 15, 2021)................................2, 3

*Wells Fargo Bank, N.A. v. Wales LLC*,
   993 F. Supp. 2d 409 (S.D.N.Y. 2014)...........................................................................14, 16

Pursuant to the Court's November 15, 2021, Amended Order concerning the briefing schedule for the Non-Party Objectors, Plaintiff Virginia Giuffre files this Brief in Response to Non-Parties 17, 53, 54, 55, 56, 73, 93, and 151's Objections to unsealing docket entries containing references to them. Attached as Exhibit A hereto is a chart of Plaintiff's position as to each document.

## PRELIMINARY STATEMENT

During the July 1, 2021, hearing in this matter, the Court suggested that to streamline and accelerate the unsealing process, the Original Parties and the Court first consider all of the non-parties who have submitted objections to unsealing. Hr'g Tr. 16:20-22. Following direction from the Court, the Original Parties met and conferred on October 20, and agreed to split the objecting non-parties into groups, and address the objections of Does 17, 53, 54, 55, 56, 73, 93, and 151 first. Dkt. 1232. Upon review of the objections of those Does, it is apparent that their objections essentially mirror objections to unsealing that this Court has already rejected: that unsealing certain documents might be embarrassing, would expose non-parties to media attention, and could result in some unfortunate association between the non-parties and Jeffrey Epstein or Ghislaine Maxwell. In the face of extensive prior briefing on objections just like these, the Court's unsealing process has been quite consistent: with the exception of a narrow set of circumstances which are generally not present here, documents have been unsealed notwithstanding generalized concerns about annoyance or embarrassment.

As this Court has recognized, generalized aversion to embarrassment and negativity that may come from being associated with Epstein and Maxwell is not enough to warrant continued

1

sealing of information.[1]  This is especially true with respect to this case of great public interest, involving serious allegations of the sex trafficking of minors.  *See* July 23, 2020, Hr'g Tr. 4:10-16 ("In the context of this case, especially its allegations of sex trafficking of young girls, the Court finds that any minor embarrassment or annoyance resulting from disclosure of Ms. Maxwell's mostly nontestimony about behavior that has been widely reported in the press is far outweighed by the presumption of access.").  In the limited instances where this Court has found that sealing remains appropriate, it has been quite narrow and limited to information about intimate sexual relationships with consenting adults, medical records,[2] and the names of minor victims.

Now that Maxwell's criminal trial has come and gone, there is little reason to retain protection over the vast swaths of information about Epstein and Maxwell's sex-trafficking operation that were originally filed under seal in this case.  At Maxwell's trial, non-parties to this action, including victims, family members of victims, Epstein and Maxwell's friends and employees, and law enforcement officers all testified in open court about information that has remained sealed from the public in this case.  Those witnesses used their full names and the full names of others, except for three victims who were minors at the time of their abuse.  *See United States v. Maxwell*, No. 20-CR-330 (AJN), 2021 WL 5967913, at *1 (S.D.N.Y. Dec. 15, 2021).  The abundance of public information now widely available about Epstein and Maxwell's scheme

---

[1]     July 23, 2020, Hr'g Tr. 4:3-7 ("With respect to the argument that the material constitutes personal information which might lead to annoyance or embarrassment if unsealed, Ms. Maxwell proffers little more than her ipsi dixit; she provides no specifics as to these conclusions."); Jan. 19, 2021, Hr'g Tr. 7:7-10 ("Ms. Maxwell's interest in keeping private the details of her sexual relationships with consenting adults warrants the sealing of those portions of her testimony (and any materials that reference them).").

[2]     Jan. 19, 2021, Hr'g Tr. 7:19-23 ("The Court finds, as it did for the last round of motions it considered for unsealing, that Ms. Giuffre's privacy interests in her medical records, where they reference the medical treatment she received, outweigh any public interests in those materials.").

through the thousands of pages of publicly available trial transcripts cuts against any continued sealing in this case, aside from the narrow circumstances previously identified by the Second Circuit and this Court. Accordingly, Plaintiff has endeavored to highlight for the Court the instances in which certain of the non-party objectors were discussed at the Maxwell criminal trial in light of the "important consideration" of "whether the information sought to be kept confidential is already public." *United States v. Avenatti*, No. (S1) 19 CR. 373 (PGG), 2020 WL 70952, at *6 (S.D.N.Y. Jan. 6, 2020).

Further, Judge Nathan denied Maxwell's request to allow certain of her defense witnesses at her criminal trial to testify under pseudonyms, which was largely based on the objection raised by numerous of the non-party objectors here—unwanted media attention. Judge Nathan squarely rejected the defense's argument that "anonymity is necessary to protect its witnesses from scrutiny and harassment because of the significant publicity this case has garnered" because "these generalized concerns are present in every high-profile criminal case. They do not present the rare circumstances that prior courts have found justify the use of pseudonyms." *Maxwell*, 2021 WL 5967913 at *2. The Court should likewise reject this objection here, overrule the objections of Does 17, 53, 54, 55, 56, 73, 93, and 151, and unseal the judicial documents pertaining to them, with only limited exception.

## ARGUMENT

### I.    Legal Standard

"The common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). Indeed, as has been reiterated throughout this unsealing process, there is a presumption of public access to judicial documents. *United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir. 1995). Judicial documents are those documents that are "relevant to the performance of the judicial function and

3

useful in the judicial process." *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019). "Materials submitted in connection with, and relevant to, discovery motions, motions *in limine*, and other non-dispositive motions are subject to a lesser—*but still substantial*—presumption of public access." *Id.* at 53 (emphasis added); *see also* July 23, 2020, Hr'g Tr. 2:23-3:2 ("The documents at issue here relate to discovery motions previously decided by Judge Sweet, and so the Court concludes that they are judicial documents to which the presumption of public access attaches.").

To justify the sealing of judicial documents, courts must "review the documents individually and produce 'specific, on-the-record findings that sealing is necessary to preserve higher values.'" *Id.* at 48 (quoting *Lugosch*, 435 F.3d at 124). "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds Inc*., 121 F.3d 818, 826 (2d Cir. 1997). Accordingly, the Non-Party objectors bear the burden of identifying with specificity countervailing interests that outweigh the presumption of public access. *See Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 621, 628–30 (S.D.N.Y. 2011).[3]

"[B]road allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *In re Parmalat Sec. Litig*., 258 F.R.D. 236, 244 (S.D.N.Y. 2009); *see also* Jan. 16, 2020, Conf. Tr. at 7:9–12, 21–23 ("[W]hat we are looking for from you is a specific explanation of why the document should remain sealed or the redactions should continue specific to that document. I think that's what the Court of Appeals told us we have to do."). Whether a

---

[3] Following *Brown*, minimal redactions have been applied to (1) "personally identifying information such as personal phone numbers, contact lists, birth dates, and social security numbers"; (2) "the names of alleged minor victims of sexual abuse"; and (3) "deposition responses concerning intimate matters where the questions were likely only permitted—and the responses only compelled—because of a strong expectation of continued confidentiality." *Brown*, 929 F.3d at 48 n.22.

protective order is in place does not negate the public's right to access the documents. *See Rotger v. Montefiore Med. Ctr.*, No. 1:15-CV-7783-GHW, 2018 WL 11214575, at *1 (S.D.N.Y. Mar. 30, 2018) ("[A] 'Confidential' designation made pursuant to a protective order does not by itself overcome the presumption of public access once the document containing the designation becomes a judicial document.").

Finally, whether the document in question is already public counsels against continued sealing. *United States v. Avenatti*, No. (S1) 19 CR. 373 (PGG), 2020 WL 70952, at *6 (S.D.N.Y. Jan. 6, 2020) ("In considering whether sealing is appropriate, an important consideration is, of course, whether the information sought to be kept confidential is already public."); *Lytle*, 810 F. Supp. 2d at 626 ("While the conduct at issue may be potentially embarrassing to these employees . . . their names are already in the public record, and have been for several years."). "It's not the job of the Court to police press coverage and alert the public when reporting on unsealed materials as yesterday's news when the unsealed material is already public." July 1, 2021, Hr'g Tr. 7:5-8. *see id.* July 1, 2021, Hr'g Tr. 6:6-11

## II.   Doe 17's Objection Should Be Overruled and Materials Relating to Doe 17 Should Be Unsealed.

Doe 17 is mentioned in four documents on the list of decided motions before the Court: Docket Entries 280-1 (a letter attached to a discovery motion), 321-1 (a letter attached to a discovery motion), 363-7 (a deposition transcript attached to a motion to intervene), and 423-4 (Rule 26 disclosures attached to a discovery motion). ███████████████████████

███████████████████████████████████████

███████████████████████████████████████ Doe 17's

objections is, essentially, that Doe 17 does not want to be associated with Maxwell and Epstein

because, as they write, "if [the material is] allowed to be made public, [it] will cause [them], to say the least, annoyance and embarrassment."  Doe 17 Obj. at 1.  Doe 17 further writes that disclosure of this information will cause them severe anxiety and distress.  Doe 17 does not cite a single legal authority suggesting that these concerns outweigh the presumption of public access.  In any event, Doe 17's objections are not enough to rebut the presumption of public access.

*First*, three of the documents only mention Doe 17's name in the context of discovery search terms or a Federal Rule of Civil Procedure Rule 26 disclosure.  The list of search terms that include Doe 17's name include no personal or private information about them, and simply list Doe 17's name among many others.  Doe 17 remarks that they have "never been a witness to any conduct relevant to this lawsuit" and that when the accusations against Epstein were publicized in the media, they were "shocked and did not want to have anything to do with him."  Doe 17 Obj. at 1.  But that is not a reason to continue sealing, and, even if it were, it would not surmount the presumption of access and the public's interest in the significant allegations and subject matter at issue in this case.  *See United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995).  Regardless, Plaintiff agrees to redact Doe 17's address in Docket Entry 423-4, which should alleviate their privacy concerns.

*Next*, with respect to the mention of Doe 17's name in a deposition, Doe 17 has not shown any specific reason for keeping the material sealed.  Although Doe 17 denies that the allegation about them in the deposition is true, determining whether an excerpt is true or not is not the Court's job with respect to unsealing; rather, the Court's role is to weigh any countervailing privacy interests and determine whether those interests rebut the presumption of public access.

 Here, Doe 17 does not rebut the presumption of public access.  The deposition transcript is attached to a substantive motion to intervene that was decided by the Court, and is accordingly

a judicial document entitled to a presumption of public access even weightier than the presumption attaching to discovery motions.  Doe 17's assertion that unsealing would cause them "extreme personal, physical, and reputational harm" that in turn has caused health problems is too generalized to warrant sealing, especially given the narrow categories of information the Court has kept sealed thus far:  information concerning sexual relations between consenting adults, medical records, and certain documents that might have prejudiced Maxwell's now concluded criminal trial. *See In re Parmalat Sec. Litig.*, 258 F.R.D. at 244; July 23, 2020, Hr'g Tr. 4:3-7.  Moreover, sealing is meant to protect innocent third parties. *See, e.g.*, *Amodeo*, 71 F.3d at 1051 (explaining that the "privacy interests of *innocent third parties*" is part of the Court's consideration) (emphasis added) (internal quotation marks and citations omitted); *Brown*, 929 F.3d at 48 n.22 (redacting names of minor *victims*).  In any event, any purported privacy concerns raised by Doe 17 are less weighty given that they remains free to publicly address any allegations made against them.  *See Amodeo*, 71 F.3d at 1051 ("Similarly, a court may consider whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein.").  Accordingly, with the exception of redacting the address, the documents mentioning Doe 17 should be unsealed.

III.    **Doe 53 Does Not Oppose Unsealing.**

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████  Doe 53 is mentioned in 36

documents associated with decided motions.[4]   Doe 53 "does not oppose the unsealing of any of

---

[4]    DEs 122-7, 150-1, 172, 173-6, 204-2, 212-2, 229-1, 232-4, 249, 258-1, 272-5, 315, 316, 316-4, 320, 321-1, 321-2, 321-3, 321-4, 321-5, 321-6, 338, 338-2, 338-3, 338-5, 339, 340-3, 340-4, 340-9, 363-7, 369-1, 369-6, 389-2, 393-1, 423-4, and 450-1.

the excerpts provided to" them.  Doe 53 Obj. at 1.  Accordingly, the Court should unseal the documents mentioning Doe 53.[5]  That Doe 53 consents to unsealing should moot any dispute to the contrary, as it is Doe 53's privacy interests that the Court must weigh, and Doe 53 has affirmatively indicated that they consent to unsealing.  *Brown v*, 929 F.3d at 47 n.13 (noting that it's the "privacy interest of those who resist disclosure" that serve as a countervailing interest) (quoting *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 232 (2d Cir. 2001) (emphasis added)).

## IV.    Doe 54 Does Not Generally Object to Unsealing

Doe 54 is mentioned in 31 documents associated with decided motions.[6]



Doe 54 does not oppose unsealing any of these documents, aside from a single question in Docket Entry 450-1, which they contend was a transcription error.  Doe 54 Obj. at 1    Plaintiff does not dispute that there may have been a transcription error, but this does not justify sealing at all, let alone the sealing of the question itself (to which Doe 54 concedes there is no error).  Doe 54 does not object to unsealing the remaining docket entries, and, accordingly, those should be unsealed.  As it is Doe 54's interests at issue, Doe 54's consent to unsealing moots any dispute to the contrary.

---

[5]    Plaintiff understands that reference to other Non-Party Does who have not yet been addressed should remain sealed consistent with the practice in prior rounds of unsealing.

[6]    DEs 122-7, 150-1, 173-5, 173-6, 204-2, 228, 229-1, 232-4, 249, 272-5, 320, 321-1, 321-2, 321-3, 321-4, 321-5, 321-6, 338, 338-2, 338-3, 339, 340-3, 340-4, 363-7, 369-1, 369-6, 389-2, 393-1, 407-9, 423-4, and 450-1.

**V.     Documents Concerning Does 55 and 56 Should Be Unsealed.**

███████████████████████████████████████████████████

██████████████████  ██████████████████████████████

██████████████  Does 55 and 56 are mentioned in Docket Entries 204-2, 212-2, 258-1, and 340-9: four excerpts[7] from the same deposition transcript. Other excerpts of that deposition are already public and have been widely reported on. Both Does 55 and 56's objections are predicated on the notion that the deposition itself is unreliable and that their privacy interests warrant continued sealing. Neither reasons surmount the presumption of public access such to warrant continued sealing.

*First*, the veracity of the deposition mentioning Does 55 and 56 has no bearing on the instant unsealing inquiry. Does 55 and 56 both raise doubt as to the motives of the deponent and why they testified as they did. But that is neither here nor there—this Court is not tasked with making a decision on the credibility of the deponent. It is not the role of this Court at this juncture to determine the reliability of the deposition testimony; rather, the "Court's mandate is to undertake a particularized review of each document and to: (1) evaluate the weight of the presumption of public access to the materials; (2) identify and evaluate the weight of any countervailing interests; and (3) determine whether the countervailing interests rebut the presumption." Jan. 19, 2021, Hr'g Tr. 2:22-3:3. Indeed, both Does acknowledge that the Court does not need to determine the veracity of the deposition testimony as part of this analysis. Doe 55 & 56 Objs. 1 n.2.

*Next*, apart from questioning the veracity of the deposition testimony, both Does 55 and 56 fail to demonstrate countervailing interests that outweigh the presumption of public access.

---

[7]     Doe 56 is also indirectly mentioned in another document, which itself is a quote from the deposition that directly references them. DE 339.

Instead, both Does conclude that the material would negatively impact their privacy and that unsealing would harm them by associating them with Maxwell and Epstein, regardless of whether the underlying conduct surrounding their mention could be proven.  Doe 55 & 56 Objs. 4-6.  But that sort of broad and generalized allegation of harm is not enough to counsel in favor of sealing.  *See In re Parmalat Sec. Litig.*, 258 F.R.D. at 244.  Further, the names of both Does 55 and 56 have already been the subject of media attention in connection with Epstein and Maxwell, militating the risk of any specific harm resulting from any unwanted attention to the deposition where they are mentioned.  *Cf. Avenatti*, 2020 WL 70952, at *6; *Lytle*, 810 F. Supp. 2d at 626; July 1, 2021 Hr'g Tr. 7:5-8 ("It's not the job of the Court to police press coverage and alert the public when reporting on unsealed materials as yesterday's news when the unsealed material is already public.").[8] Further, Does 55 and 56's argument that they did not have a chance to refute the Deponent's testimony is unavailing given their continued ability to do so now—there is simply nothing stopping them from responding to the deponent's testimony if they contend it is false.  *See Amodeo*, 71 F.3d at 1051.

Accordingly, given the public's interest in monitoring the judicial functions overseeing this case, that with important and national ramifications that have been widely reported in the media, the deposition material should be unsealed in full.

---

[8]     Both *Alicia B. Through Cynthia B. v. Malloy*, No. 3:16-cv-00065 (SRU), 2016 WL 9782480 (D. Con. Dec. 20, 2016), and *United States v. Litvak*, No. 3:13-cr-19 (JCH), 2015 WL 328876 (D. Conn. Jan. 23, 2015), are in inapposite.  In *Malloy*, the court remarked that in the context of whether to seal a settlement agreement, "the Second Circuit repeatedly has held that there is no established presumption of public access with respect to confidential settlement discussions, terms and documents."  2016 WL 9782480, at *1.  And *Litvak* was about whether to redact a defendant's children's names in connection with exhibits to his sentencing memorandum. 2015 WL 328876, at*1.  There, the court "perceive[d] no public interest in knowing the children's full names" given the specific context.  *Id.* at *2.  Here, the public interest in knowing the subject matter of this litigation, that of serious allegations of sex trafficking, is profoundly strong.

If the Court were to allow any sealing of these materials, it should, at most, redact only these Does' names. *United States v. Aref,* 533 F.3d 72, 83 (2d Cir. 2008) ("Although we affirm the district court in this case, we reinforce the requirement that district courts avoid sealing judicial documents in their entirety unless necessary."). There are already numerous excerpts of the deposition at issue publicly available, and it is no secret that the deponent testified in this matter. *E.g.* DE 1200-17, 1201-4. Accordingly, Doe 55 and 56's argument that the deponent's known affiliation with them would reveal their identities falls flat. Does 55 & 56 Objs. at 5. And contrary to Doe 55 and 56's suggestion, much of the deposition testimony at issue would not, in fact, give away their identities because the excerpts of testimony make no mention of the deponent's relationship with them or even their connection to Epstein.



**VI.    Doe 73's Objection Should Be Overruled and Materials Concerning Doe 73 Should Be Unsealed.**

Doe 73's name appears in seven documents attached to decided discovery motions: Docket Entries 235-1, 249-13, 280-1, 321-1, 321-5, 321-6, and 423-4.  They are all in connection with letters discussing search terms and Rule 26 disclosures.  In the Rule 26 disclosures, their address is listed as being unknown, and no specific address is provided.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮ Doe 73's objection to unsealing is based on their general aversion to being associated with Maxwell and Epstein, and their claims that they had no knowledge of any of the underlying claims predicating this action.

Be that as it may, this Court is not determining whether Doe 73 has any knowledge of the underlying claims, and, like Doe 17, Doe 73's general aversion to being affiliated with Maxwell and Epstein is not a reason to continue sealing and is not enough to surmount the public's interest in this action, given the claims at issue.  *E.g., Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d. 132, 144-45 (2d Cir. 2016) ("Broad and general findings and conclusory assertions are insufficient to justify deprivation of public access to the record.") (internal quotation marks and citations omitted); *Bernstein v. O'Reilly*, 307 F. Supp. 3d 161, 169 (S.D.N.Y. 2018) ("Generalized concerns of adverse publicity do not outweigh the presumption of public access.") (internal quotation marks, alterations, and citations omitted).  Moreover, Doe 73's note that unsealing "could cause substantial embarrassment" is speculative, and their remarks as to what others have commented about them are irrelevant to this instant decision of unsealing.  Doe 73 Obj. at 2.  Accordingly, Doe 73's objection should be overruled and the materials at issue unsealed.

VII.    **Doe 93's Objection Should Be Overruled and Materials Related to Doe 93 Should Be Unsealed.**

Non-Party Objector Doe 93 is mentioned in three deposition excerpts associated with decided motions:  Docket Entries 173-6, 363-7, and 369-1. █████████████████████

███████████████████████████████████████████████████████████████████████

█████████████████    They write that they have "no relevance to the issues in this dispute" and that "[g]iven the sensitive and potentially salacious issues" at issue, the materials should remain sealed.  Doe 93 Obj. at 1.  The conclusory remark that Doe 93 has no relevance to this action and that it has "attracted significant publicity," is, again, the sort of broad and unsubstantiated reasoning that this Court and others has rejected time and gain.  *See, e.g.*, July 23, 2020, Hr'g Tr. 4:3-7 ("With respect to the argument that the material constitutes personal information which might lead to annoyance or embarrassment if unsealed, Ms. Maxwell proffers little more than her ipsi dixit; she provides no specifics as to these conclusions."); *In re Parmalat Sec. Litig.*, 258 F.R.D. at 244 ("[B]road allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test.").

Accordingly, Doe 93's objection should be overruled and their material unsealed, as they have not articulated a compelling reason to rebut the presumption of public access.

VIII.   **Doe 151's Objection Should Be Overruled and Materials Relating to Doe 151 Should Be Unsealed.**

Doe 151 is mentioned in 47 documents attached to decided motions.[9]  Doe 151 fails to meet their burden to keep sealed the documents mentioning them.  At bottom, Doe 151's objection centers on a) the fact that they testified pursuant to a protective order, b) that they are trying to live

---

[9]     DEs 203, 204, 204-2, 211, 212, 212-2, 224, 228, 229-1, 249-4, 249-13, 257, 258, 258-10, 261, 280-1, 315, 316, 316-4, 321-1, 321-5, 321-6, 338, 338-1, 338-4, 338-5, 339, 340, 340-4, 340-9, 368, 369, 369-2, 369-6, 388, 389, 389-2, 392, 393-1, 400, 423-4, 450-1, 567, 568, 568-1, 606, and 631.

a private life and do not want any attention stemming from disclosure, and c) they "will be hounded and pursued by the media for comment and elaboration." These reasons, yet again, do not justify continued sealing.

For starters, Doe 151 and material associated with them has already been widely reported in the media. Indeed, some material mentioned in their objection has already been unsealed by the Second Circuit in 2019 (and not "leaked," as Doe 151 suggests in their objection). Consistent with prior rulings, material previously unsealed or already public should be unsealed. *See Avenatti*, 2020 WL 70952, at *6; *Lytle*, 810 F. Supp. 2d at 626. Moreover, that Doe 151 maintained the belief that materials would remain confidential does not counter the public's right of access to those materials—nor does Doe 151 explain what information they provided during the deposition that they would not have otherwise provided absent the promise of confidentiality. *See Rotger*, 2018 WL 11214575, at *1 ("[A] 'Confidential' designation made pursuant to a protective order does not by itself overcome the presumption of public access once the document containing the designation becomes a judicial document."). Doe 151's belief in the confidentiality of certain materials is irrelevant to their judicial function and the public's right of access. *See Bernsten*, 307 F. Supp. 3d at 168 ("Courts in this District have long held that bargained-for confidentiality does not overcome the presumption of access to judicial documents."); *Wells Fargo Bank, N.A. v. Wales LLC*, 993 F. Supp. 2d 409, 414 (S.D.N.Y. 2014) ("That it contains a confidentiality clause is not binding here, given the public's right of access to 'judicial documents.'").

With respect to their privacy concern, Doe 151's involvement in the underlying action has already been widely reported. Indeed, their objection notes that they have declined media inquiries in pursuit of their privacy. Doe 151 Obj. at 1. Doe 151's concern of future, and at this point speculative, media attention is unpersuasive, as they have already explained that they have been

subject to media attention, have declined to engage, and will "continue to refuse comment" going forward. *Id.* at 6. Based on their objection, it is not clear what difference unsealing of the instant materials will have on Doe 151's privacy given what has already been released and reported on. With respect to Doe 151's health concerns, although Plaintiff would not want to put anyone's health in jeopardy, much of the information about Doe 151 is already largely public; thus, any privacy concerns cannot defeat the presumption of public access.

Even if Doe 151 had not been contacted by the media before, general aversion to further publicity and media attention is not a sufficient enough basis to rebut the presumption of public access. *Bernsten*, 307 F. Supp. 3d at 169; July 1, 2021, Hr'g Tr.5:21–5 ("Moreover, although certain materials contained within the unsealed documents may have provided tabloid fodder, it does not diminish the importance of making public materials that could reasonably tend to influence the Court's decision on a motion."). The public's interest in the materials mentioning Doe 151 and their impact on the underlying case outweigh Doe 151's generalized concern about future publicity, and Doe 151 has not carry their burden of showing that these documents should continue to remain sealed. *See* July 23, 2020, Hr'g Tr. 4:10-16 ("In the context of this case, especially its allegations of sex trafficking of young girls, the Court finds that any minor embarrassment or annoyance resulting from disclosure of Ms. Maxwell's mostly nontestimony about behavior that has been widely reported in the press is far outweighed by the presumption of access."); *see also Bernstein*, 814 F.3d at 144-45 (broad and conclusory assertion are insufficient justification for sealing). Regardless, Doe 151's reasons for not engaging with the media are

irrelevant to this analysis, and to the extent they feel unduly limited in their ability to respond, they can seek appropriate recourse.[10]  Accordingly, their objection should be overruled.

**CONCLUSION**

For the foregoing reasons, the Court should unseal the material at issue absent the limited instances to contrary noted above.

Dated:  January 12, 2022

Respectfully Submitted,

/s/ Sigrid S. McCawley

Sigrid S. McCawley
(Pro Hac Vice)
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

*Counsel for Plaintiff Virginia Giuffre*

---

[10]    Besides their general aversion to publicity, Doe 151 also mentioned that their ▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮ inhibits their ability to comment in response.  Doe 151 Obj. at 3, 6.  Be that as it may, "Courts in this District have long held that bargained-for confidentiality does not overcome the presumption of access to judicial documents." *Bernsten*, 307 F. Supp. 3d at 168; *Wells Fargo Bank, N.A.*, 993 F. Supp. 2d at 414.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ whatever that may entail, has no bearing on this Court's analysis of the presumption of public access.