# KRIEGER KIM & LEWIN LLP

500 Fifth Avenue
New York, NY 10110

Telephone: (212) 390-9550
www.KKLllp.com

April 18, 2022

By ECF

The Honorable Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street, Room 2220
New York, NY 10007-1312

    Re:  *Giuffre v. Maxwell*, 15 Civ. 7433 (LAP)

Dear Judge Preska:

  We write respectfully on behalf of non-party John Doe in response to the Memorandum of Intervenors Julie Brown and The Miami Herald Media Co. (collectively, "Intervenors"). *See* DE 1248. The Intervenors' requests to unseal should be denied.

A. **Intervenors' First Proposition of Law:** For minor victims of sexual abuse, "redactions should be applied sparingly to shield only information that would identify those who have not already been publicly identified." DE 1248, at 2.

  **The Reality:** Courts routinely seal records concerning underage victims – well beyond replacing their names with initials – and victims do not forego their rights to privacy merely because they have played a role in a civil or criminal case against perpetrators.

  As an initial matter, Intervenors seek to unseal documents concerning the alleged sexual abuse of minors over the express wishes of those victims. Yet, by relying on inapposite case law and urging legal propositions that are, in fact, contrary to Second Circuit precedent, Intervenors' brief only underscores that the Court should resist allowing its records to result in the publishing of "the painful and sometimes disgusting details of a . . . case," that "promote public scandal." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (internal quotation marks omitted).

  In support of their claim that "there is no basis" to continue respecting the privacy rights of an "already . . . disclosed" victim's identity and circumstances, *id.* at 3, Intervenors point to *Thomas v. Colvin*, 2015 WL 4240721 (S.D.N.Y. July 13, 2015), a habeas case wherein the government – not an abuse victim – filed a motion to seal and not out of concern for victim privacy. *See id.* at *3 ("The respondents d[id] not contend that the [state-court documents] were filed under seal or redacted in the state court to protect the identity of the victim of sexual abuse." (internal quotation marks omitted)), but in a nominal attempt to comply with New York Civil Rights Law ("CRL") § 50-b(1). Moreover, the government did not address the constitutional access issues implicated in the instant case. *See id.* ("Other than relying on CRL §

50–b . . . the respondents did not assert any other interest whose weight may compete with the weight of the presumption given to the public's right of access to judicial documents.").[1]

More to the point, what minimal support *Thomas* could offer Intervenors is undermined by the Second Circuit's decision in *Mirlis v. Greer*, 952 F.3d 51 (2d Cir. 2020), which afforded much more weight to victim privacy where – as is the case here – the victim himself "vigorously opposed" unsealing in an "attempt to *protect* his [own] privacy," and rejected the same privacy-waiver argument that Intervenors now put forward. *Id*. at 55–56, 67 (emphasis in original). There, the Second Circuit reversed a trial court's order permitting the release of a videotaped deposition of a non-party adult discussing the sexual abuse he suffered as a minor, even though the video had been played publicly for the jury in the underlying trial, and even though a transcript of his statements during that deposition remained publicly available during and after the trial. *Id*. at 55, 65–67. Rather than waive his privacy rights, the availability of the same information from other sources *weighed against* providing further, additional public access to the details of his abuse. *See id*. As the Court explained:

> [T]he availability of a transcript of the deposition does not in our view necessarily eliminate or even diminish a party's privacy interest in the publication or copying of a video of those proceedings. To the contrary: That the substance of the desired content is publicly available in some format (*i.e.*, a transcript) tends in the circumstances presented here to cut against the public interest in the release of the content in a different form (*i.e.*, video), since the primary public interest—general availability of the relevant information—has already been served. . . .
>
> The Supreme Court in [*Nixon*, 435 U.S. at 609] explained, in declining to compel the release of audio tapes, that the public interest in accessing audio recordings is weaker where "[r]eporters also were furnished transcripts of . . . tapes," reasoning that the fact that "[t]he contents of th[ose] tapes were given wide publicity" negated any "question of a truncated flow of information to the public." . . . Here, as in *Nixon*, *the substantive information conveyed to the jury in the video . . . has been made public and has been written about in the local press*, to all appearances largely satisfying the legitimate public interest in the trial.

*Id*. at 65–66 (emphasis added); *see also United States v. Gatto*, 2019 WL 4194569, at *8 (S.D.N.Y. Sept. 3, 2019) (Kaplan, J.) (just because "some information relating to the documents in question already has been discussed on the public record or reported in the media does not

---

[1] CRL § 50-b(1) requires public officials to ensure that "[t]he identity of any victim of a sex offense . . . shall be confidential." Intervenors do not cite the facts from *Thomas* indicating that the government's motion to seal was deficient for multiple reasons, including, among others, that: (1) the government did not move to seal the state-court records until they had already been publicly available on the federal docket for eight months; (2) the government made a conclusory claim that mere redactions were "not a viable possibility," without providing any justification for such an assertion; and (3) the court rejected the government's request to protect the victim's daughter because, by its own terms, CRL § 50–b was drafted to protect only victims of sexual abuse, not the victims' family members. *See Thomas v. Colvin*, 2015 WL 4240721, at *2–*3 (S.D.N.Y. July 13, 2015).

mean that the third-parties concerned have lost any remaining privacy interests in their contents.").

Consider, furthermore, the troubling incentives of Intervenors' proposition – that by participating in a civil case (especially pursuant to the promise of protection by a protective order), the Doe victims must forego their right to personal privacy. Such an outcome, of course, "would hardly encourage them to give live testimony at trial." *Id.* at 67; *cf. United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (noting that law enforcement "may be heavily reliant upon the voluntary cooperation of persons who may want or need confidentiality . . . [i]f that confidentiality cannot be assured, cooperation will not be forthcoming"). And, Intervenors' recognition that the "identity of . . . victim[s]" and the "circumstances surrounding the abuse," DE 1248, at 2–3, are already public is all the more reason *to reject* the Intervenors' argument for unsealing, since they have no need for information that is "readily available" and "wide[ly] accessible," *Mirlis*, 952 F.3d at 67.

For their argument that the redactions of names alone is sufficient, Intervenors rely on *McCord v. Reardon (McCord I)*, 2020 WL 5342637 (E.D.N.Y. Sept. 4, 2020), another habeas case in which the state government (and not the victim) sought to seal the state court record in its entirety, including, "among other things, over 800 pages of trial transcripts, 230 pages of appellate briefing, and a voluminous motion to vacate Petitioner's sentence." *McCord v. Reardon (McCord II)*, 2020 WL 8642132, at *1 (E.D.N.Y. Nov. 30, 2020) (internal quotation marks omitted). While the court in *McCord I & II* denied the government's request for whole-sale sealing – and later granted a narrower motion to file a redacted version of the state court record using only victim initials – Intervenors do not address the facts rendering that case inapposite:

*First*, *McCord* suffers from the same defects as *Thomas*. In a cursory attempt to comply with CRL § 50-b(1), which, as the court noted, did not even apply since the petitioner had not been convicted of any sexual offense, the government again submitted "deficient" briefing that failed to justify sealing. *See McCord I*, 2020 WL 5342637, at *1–2, *1 n.1.

*Second*, the *McCord* court conceded that safeguarding a sexual assault victim's identity is "a compelling reason" not just to redact names, but to "*limit the general public's access to [complete] documents filed in a case*." *Id.* at *2 (emphasis added; internal quotation marks omitted).

*Third*, *McCord*'s reasoning calls into question whether habeas cases are even relevant here – a point Intervenors seem to take as a given. Habeas involves a federal court's review of a state court's resolution of a federal law, giving due deference to the state court's decision. *See Wainwright v. Sykes*, 433 U.S. 72, 80 (1977). By the very nature of such a claim, "the presumption of access [to records] is at its apex . . . because the [federal] court must rely directly on the state court record to adjudicate the merits of [the habeas] petition." *Winkfield v. Duncan*, 2013 WL 360400, at *2 (E.D.N.Y. Jan. 24, 2013). This likely explains why the court in *McCord II* found use of victim initials – as opposed to sealing of state-court records – sufficient to safeguard privacy interests, because, again, the petitioner *had not been convicted* of a sexual offense, so facts relating to that charge would presumably play a lesser, if negligible, role in

resolving the petitioner's claim. *See McCord II*, 2020 WL 8642132, at *2. And where habeas courts do decline to seal certain state-court records in their entirety, they observe what the Second Circuit first made explicit in *Amodeo*, and reiterated in *Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019): That the presumption to access is greater where the material at issue plays a greater role in the court's "exercise of Article III judicial power." *Id.* at 50. It makes sense, then, that in habeas cases involving sex crimes convictions, the presumption of access is greater.

Nevertheless, even with such a presumption, *McCord* itself notes that courts overseeing habeas cases brought by petitioners convicted of sexual offenses regularly seal entire state records or documents. *See McCord II*, 2020 WL 8642132, at *1–2 (citing *Diaz v. Artus*, 2015 WL 277410, at *3 (W.D.N.Y. 2015) (sealing state-court record to protect victim's privacy where petitioner was charged and convicted of crimes involving sexual abuse of a child); *Stewart v. Hunt*, 2012 WL 4107825, at *1 n.2, n.3 (N.D.N.Y. 2012) (state-court records filed under seal and the victim and family members referred to by initials); *Martich v. Smith*, 2009 WL 2043894, at *1 n.4 (S.D.N.Y. 2009) (same)). And they are hardly alone in doing so.[2]

Here, Intervenors short circuit the analysis, wholly bypassing the second half of the determination – that is, "the weight to be given the presumption of access" as "governed by the role of the material . . . in the exercise of Article III" authority, and "the resultant value of such information to those monitoring the federal courts." *Brown*, 929 F.3d at 49. That analytical jump is unwarranted outside the habeas setting where one cannot necessarily conclude that the presumptive right to access is at its "apex." And should the Court take any guidance from habeas cases, even there "*it is common for courts in this District to grant requests for sealing orders to protect a sexual assault victim's identity*." *Murphy v. Warden of Attica Corr. Facility*, No. 20 Civ. 3076 (PAE), 2020 WL 6866403, at *2 (S.D.N.Y. Nov. 23, 2020) (emphasis added). Contrary to the Intervenors' representations, therefore, sealing is proper to protect victim identity and *does* indeed "extend to the acts or circumstances surrounding the abuse referenced in the documents." DE 1248, at 2.

---

[2] As one court put it: "Although a presumption in favor of public access exists, the basis for sealing the records at issue—protecting the identity of the sexual assault victim—provides a compelling reason to limit such access. Indeed, it is common for courts in this District to grant requests for sealing orders to protect *a sexual assault victim's identity*." *Murphy v. Warden of Attica Corr. Facility*, 2020 WL 6866403, at *2 (S.D.N.Y. Nov. 23, 2020) (emphasis added); *see also Najera v. Lilley*, 2022 WL 515660, at *2 (S.D.N.Y. Jan. 14, 2022) (sealing certain state-court transcripts "in their entirety," and permitting filing of the state court decision only in a "redacted format," and collecting cases); *Kemp v. Noeth*, 2021 WL 1512712, at *2 (S.D.N.Y. Apr. 15, 2021) ("[F]iling these documents under seal—rather than redacting the necessary portions—is warranted in this case. . . . The impracticality of redacting the victim's name and the fallibility of the redacting software urge the conclusion that sealing is 'narrowly tailored' in light of the 'higher values' at issue."); *Scott v. Graham*, 2016 WL 6804999, at *1 (S.D.N.Y. Nov. 17, 2016) (granting request to file response to habeas petition under seal to protect identity of victim and collecting cases); *Veronese v. Malloy*, No. 11 Civ. 1243 (GLS) (RFT), 2011 WL 6012023, at *1 n.2 (N.D.N.Y. Oct. 21, 2011) ("Because these documents identify the minor who was a victim of a sex offense, we direct that the Complaint be sealed."), *report and recommendation adopted*, 2011 WL 6012011 (Dec. 1, 2011); *Archbold v. Hessel*, No. 08 Civ. 3898 (SHS) (FM), 2011 WL 2671527, at *1 n.1 (S.D.N.Y. June 20, 2011) (noting motion to file state court records under seal was granted to protect identity of sexual assault victim), *adopted as modified*, 2011 WL 2946169 (July 19, 2011); *Hardison v. Artus*, No. 06 Civ. 322 (LTS) (AJ), 2006 WL 1330064, at *1 n.2 (S.D.N.Y. May 16, 2006) (noting state court records sealed to protect privacy of sexual assault victim pursuant to Section 50-b of the N.Y. Civil Rights Law), *report and recommendation adopted*, 2006 WL 1763678 (June 23, 2006).

    **B.**     <u>**Intervenors' Second Proposition of Law**</u>: The non-party Does lack sufficient privacy interests "to warrant redacting their identities," much less sealing whole documents relating to them. *Id.* at 3–4.

    <u>**The Reality**</u>: This Court has already identified the important rights that non-parties have in keeping their own sensitive, private information private.

Ignoring this Court's past Orders, Intervenors again cite to non-binding, distinguishable case law to insist that the non-party Does' "desire not to be associated with this lawsuit" is not a sufficient reason to warrant sealing, or even mere redacting of their identities. *Id.* at 4.

Specifically, the Intervenors cite *Moussouris v. Microsoft Corp.*, No. 15 Civ. 1483 (JLR), 2018 WL 2017296, at *1 (W.D. Wash. Apr. 26, 2018), *report and recommendation adopted*, 2018 WL 2091320 (May 3, 2018), which concerned not the subject of sexual abuse of minors, but disclosure of the names of personnel involved with the plaintiffs' discrimination claims against Microsoft. *Moussouris*' reference to identification of non-parties also had to do with "[m]anagers, supervisors and other decision-makers directly involved in Plaintiffs' employment." *Id.* at *2. Thus, in addition to the fact that Microsoft failed to identify any "privacy interest [they had] in not being associated with Plaintiffs' employment," their identities were, rather, quite "important to Plaintiffs' claims." *Id.*

Here, on the other hand, the Court has already issued an Order continuing the sealing of information related to non-parties, and setting forth the procedure to challenge sealing, thereby necessarily acknowledging that non-parties, in fact, *do* have a protectable privacy interest in keeping these materials sealed. *See Giuffre v. Maxwell*, 2020 WL 1547377 (S.D.N.Y. Mar. 31, 2020) (Preska, J.). Indeed, pledging to "conduct an individualized review of each Sealed Item" in "accordance with *Brown v. Maxwell*," the Court expressly identified the non-party interests that are worth protecting here:

> 1. <u>Non-Parties List:</u> Plaintiff Virginia Giuffre and Defendant Ghislaine Maxwell (collectively, the "Original Parties") each have submitted under seal a list of non-parties whose privacy, reputational or other interests may be implicated by the unsealing of the Sealed Materials (each, a "Non-Party," and collectively, the "Non-Parties"). Because the Original Parties did not agree on one or more Non-Parties to be included in the list, the Court has resolved all such disagreements and shall issue to the Original Parties a Court-approved Non-Parties List, which shall be sealed. The Non-Parties shall include but are not limited to: *(a) persons who produced or answered discovery based upon the representation or understanding that the discovery would be subject to the Protective Order previously issued in this action; (b) persons who are identified as having allegedly engaged in sexual acts with Plaintiff, or other alleged victims, or allegedly facilitated such acts; (c) persons whose intimate, sexual, or private conduct is described in the Sealed Materials; and (d) persons who are alleged to have been victimized.*"

*Id.* at *1 (emphasis added).

April 18, 2022
Page 6 of 7

      Unsurprisingly, the Court's recognition of these interests is on all fours with binding precedent. More than once, the Second Circuit has cautioned that "the privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation," and "are a venerable common law exception to the presumption of access." *Amodeo*, 71 F.3d at 1050–51 (quoting *Application of Newsday, Inc.*, 895 F.2d 74, 79–80 (2d Cir. 1990); internal quotation marks omitted); *cf. Sealed Plaintiff No. 1 v. Farber*, 212 F. App'x 42 (2d Cir. 2007) ("[A] person's status as a juvenile sex abuse victim is clearly the type of 'highly personal' information that we have long recognized as protected by the Constitution from governmental dissemination absent a substantial government interest in disclosure.").

      Moreover, disclosure of materials that "relate to potential [legal] violations of third-parties . . . carries the risk of significant reputational and professional repercussions for those referenced in the documents." *Gatto*, 2019 WL 4194569, at *8 ("[T]he materials relate to potential rule violations of third-parties not on trial in this action, which might be regarded by certain segments of the public as scandalous conduct. Disclosure carries the risk of significant reputational and professional repercussions for those referenced in the documents."). And again, that some information relating to the documents in question has been made public does not eviscerate the continuing privacy interests of non-parties. *See id.*[3]

      Importantly, this Court recognized that such third parties include those who produced discovery in reliance on "the representation or understanding that the discovery would be subject to the Protective Order previously issued in this action." *Giuffre*, 2020 WL 1547377, at *1. Third-party "cooperation is . . . often essential to judicial efficiency," and "[i]f [public] release is likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access." *Amodeo*, 71 F.3d at 1050. This consideration carries equal weight in the civil setting, including in cases involving sexual abuse of underage victims. And, as noted above, "[a] holding otherwise could be expected to disincentivize naturally reluctant victim-witnesses from facilitating their depositions in the first place; it would hardly encourage them to give live testimony at trial." *Mirlis*, 952 F.3d at 67. "Unlimited access," therefore, should not come at the cost of "adverse[] affect[s] [to] law enforcement interests or judicial performance." *Amodeo*, 71 F.3d at 1050–1051.

C.   **Intervenors' Third Proposition of Law:** "[I]t is not the Court's role to weigh the veracity or credibility of the statements contained within to determine whether disclosure is warranted." DE 1248, at 4.

    **The Reality:** Contrary to the Intervenors' claim, it is the Court's role to assess the reliability of the materials and claims at issue.

---

[3]   Intervenors discount the possibility that revealing third-party information may have the secondary effect of revealing information about child abuse victims – even though the court in another of their cited cases, *United States v. Maxwell*, No. 20 Cr. 330 (AJN), 2021 WL 5967913 (S.D.N.Y. Dec. 15, 2021), made this same observation. In denying defendant's request to permit her supportive witnesses to testify anonymously, the *Maxwell* court explained that it allowed for both victim witnesses and *non-victim* witnesses for the prosecution to testify under pseudonyms "because the disclosure of their identities would necessarily reveal the identities of the alleged victims." *Id.* at *1. Accordingly, even bare disclosure of names or information concerning potential non-victims, like Jane Doe 12, poses a risk to the victims' privacy interests.

April 18, 2022
Page 7 of 7

Lastly, intervenors cite to *Krause v. Rhodes*, 535 F. Supp. 338, 354 (N.D. Ohio 1979), *affirmed*, 671 F.2d 212 (6th Cir. 1982), for the proposition that "[i]t is not the Court's role to weigh the veracity or credibility of the statements contained within to determine whether disclosure is warranted." DE 1248, at 4. But the Second Circuit has held that it is: "*The court should consider the reliability of the information. Raw, unverified information should not be as readily disclosed as matters that are verified. Similarly, a court may consider whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein.*" *Amodeo*, 71 F.3d at 1051 (emphasis added); *see also Gatto*, 2019 WL 4194569, at *7 (same).

Materials likely to contain "misinformation" and "untrustworthy or simply incorrect" details only serve to mislead, rather than enlighten the public. *Amodeo*, 71 F.3d at 1052. And, as Intervenors point out, the non-parties referred to in these materials are, indeed, *non-parties*, meaning that "[t]hey will not have the opportunity to test the reliability of the information contained in these materials nor respond adequately to any inferences that might be drawn on the basis of this information." *Gatto*, 2019 WL 4194569, at *8. "In other words, the documents are of a sensitive nature, and the degree of potential injury is high." *Id*.

Redactions short of sealing – including the kind Intervenors propose here, *i.e.*, limited exclusively to redaction of names – can exacerbate this misleading effect. *See Amodeo*, 71 F.3d at 1052 ("Most important, much of Part 1 has been rendered unintelligible as a result of redactions. . . . Release of Part 1 is thus more likely to mislead than to inform the public. It would circulate accusations that cannot be tested by the interested public because the sources and much of the subject matter are shrouded by the redactions."); *accord Kemp*, 2021 WL 1512712, at *2 ("The impracticality of redacting the victim's name and the fallibility of the redacting software urge the conclusion that sealing is 'narrowly tailored' in light of the 'higher values' at issue.").

Intervenors' request for unsealing should be denied.

          Respectfully Submitted,
          KRIEGER KIM & LEWIN LLP

By: _____
     Nicholas J. Lewin
     Paul M. Krieger

cc (by ECF):   *Maxwell* Counsel of Record (15 Civ. 7433 (LAP))