UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIRGINIA L. GIUFFRE,

        Plaintiff,                        Case No.: 15 Civ. 7433 (LAP)

v.

GHISLAINE MAXWELL,

        Defendant.
_____/

**PLAINTIFF'S REPLY BRIEF IN RESPONSE TO NON-PARTIES
12, 28, 97, 107, 144, 147, 171, AND 183'S OBJECTIONS TO UNSEALING**

Pursuant to the Court's November 15, 2021 Amended Order, Plaintiff Virginia Giuffre files this Reply to Non-Parties 28, 97 and 144's Objections to unsealing.

## PRELIMINARY STATEMENT

Does 12, 28, 97, and 144 have submitted replies in response to Plaintiff's March 18, 2022 brief. Dkt. 1247. Does 147, 171, and 183 did not submit any replies. Because Plaintiff has taken no position with respect to Doe 12's objections, *see* Dkt. 1247 at 20, Plaintiff only addresses Does 28, 97 and 144's replies. The Court should overrule their objections.[1] In its April 19, 2022, ruling concerning the first set of Non-Party Objectors, the Court ordered that certain documents would remain under seal where (i) a Non-Party Objector's name was only mentioned in "a case of mistaken identity"; (ii) Non-Party Does were minors at the time who "played no part in the allegations that form the basis of this action"; or (iii) Non-Party Does have "not been accused of wrongdoing." Apr. 19, 2022, Hr'g Tr. at 6:1; 6:13-14; 6:19-21; 7:2-5.[2] As to the remaining Does under consideration, the documents do not support an argument that any was named in "a case of mistaken identity," that they were innocent minors, or that they were adults who have not been "accused of wrongdoing."

---

[1]   Attached as Exhibit A is an amended list of the docket entries at issue, which corrects the entry for Dkt. 235-12 that was previously mislabeled as Dkt. 235-13 for Doe 171. Plaintiff also takes no position on Dkt. 423-4, which was submitted in connection with Dkt. 422, which the Court previously ruled was outside the scope of public access. July 1, 2021 Hr'g Tr. at 3:18-22.

[2]   Plaintiff reserves the right to challenge the standard the Court applied in its April 19, 2022, ruling, as well as its factual conclusions. For example, Plaintiff contests that Doe 17 was named only by mistake (as opposed to the cited testimony being mistaken only about what her alias was), and that Does 73 and 93 were not "involved in any of the conduct underlying this action" or "accused of any wrongdoing" because they worked for Epstein in a "financial capacity" or because Plaintiff could not remember their names at deposition.

**ARGUMENT**

**I.   Doe 144 Has Not Rebutted the Presumption of Public Access.**

In their reply submission, Doe 144 again presents three principal reasons that the Court should not unseal material mentioning them: (1) that the presumption of public access here is low; (2) that any public value of the material is limited because, according to Doe 144, they "contain scandalous and unfounded allegations" (Doe 144 Apr. 8, 2022, Obj. at 3); and (3) Doe 144's privacy interests outweigh any presumption of public access.  As detailed in Plaintiff's March 18, 2022 Response (Dkt. 1247), Doe 144 is unable to rebut the public presumption of access with respect to this material, and their objection should be overruled.

Doe 144 first argues as to the weight of the presumption of public access.  In their reply, Doe 144 reiterates that they have "accurately cited precedent stating that the presumption of access to materials filed in connection with discovery or other ancillary motions is 'lower than the presumption applied to material introduced at trial, or in connection with dispositive motions such as motions for dismissal or summary judgment.'" Doe 144 Apr. 8, 2022, Obj. at 2 (internal citation omitted).  The Second Circuit has held, however, that "[m]aterials submitted in connection with, and relevant to, discovery motions, motions *in limine*, and other non-dispositive motions are subject to a lesser—*but still substantial*—presumption of public access." *Brown v. Maxwell*, 929 F.3d 41, 53 (2d Cir. 2019) (emphasis added).  As the *Brown* court explained, "[a] document is . . . relevant to the performance of the judicial function if it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Id*. at 49 (internal citations omitted).  Whether Judge Sweet actually relied on the materials is therefore irrelevant under *Brown*.

2

Next, Doe reiterates the argument from their initial objection that any public value to the materials is undermined by the fact, according to them, that they "contain scandalous and unfounded allegations and thus warrant sealing under the standard in *Amodeo*." Doe 144 Apr. 8, 2022, Obj. at 3.  As Plaintiff explained before, this process is a balancing test, and "Court's mandate is to undertake a particularized review of each document and to: (1) evaluate the weight of the presumption of public access to the materials; (2) identify and evaluate the weight of any countervailing interests; and (3) determine whether the countervailing interests rebut the presumption." Jan. 19, 2021, Hr'g Tr. at 2:22-3:3.  Although the *Amodeo* court noted that "Courts have long declined to allow public access simply to cater to a morbid craving for that which is sensational and impure,"[3] it also recognized that this was in the context of balancing against the presumption of access.  *See United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995) (internal citations omitted).

Doe 144 is not the arbiter of what is "scandalous" or "unfounded allegations."  Taken to its logical conclusion, Doe 144's argument implies that the Court should presumptively seal material about non-parties if a non-party takes issue with the materials' content or considers it

---

[3]   Doe also cites to the Supreme Court's cautionary note to courts against permitting "their files to as reservoirs of libelous statements for press consumption." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); Doe 144 Apr. 8, 2022, Obj. at 3.  The *Nixon* court's remark to that effect is, however, limited.  In support of that notion, the *Nixon* court cited early 20th and late 19th century state case law concerning libel actions against the press, as well as about what can be included in pleadings. *Park v. Detroit Free Press Co.*, 72 Mich. 560, 568 (1888) (action against defendant media outlet); *Cowley v. Pulsifer*, 137 Mass. 392, 393 (1884) ("This is an action against the owners and publishers of the Boston Herald for a libel printed in that newspaper."); *Munzer v. Blaisdell*, 48 N.Y.S.2d 355, 356 (1st Dep't 1944) ("Plaintiff claims that the libelous words are so shocking and scandalous that they should not receive publicity. If that is so, on filing her complaint, she may move to have the court seal the papers."); *see also Sanford v. Boston Herald-Traveler Corp.*, 318 Mass. 156, 158 (1945) ("Moreover, we are not prepared to concede that the general right of inspection of public records enables one in every instance to publish such records broadcast without regard to the truth of defamatory matter contained in them.").  Here, that Doe 144, among others, is mentioned in documents underlying this action is a different issue.

"scandalous." That is not the law; there is a presumption of access. Although Doe 144 attempts to argue that "Plaintiff seems to imply, that courts should *automatically* treat sworn testimony as reliable," (Doe 144 Apr. 8, 2022, Obj. at 4), absent a compelling reason otherwise, sworn testimony does carry an inherently higher degree of reliability, something implicit in *Amodeo.* 71 F.3d at 1054 ("The accusations are all unsworn, and some or all may be of doubtful veracity, possibly stemming in part from apparent personality conflicts."); *cf. United States v. Colon*, 1:18-CR-00244, 2021 WL 4994318, at *4 (W.D.N.Y. Mar. 31, 2021) ("an informant's testimony under oath is 'significantly more reliable' than other informant information, because the testifying informant faces the sanction of a perjury prosecution." (internal citations omitted)).

Doe 144's reliance on *United States v. Gatto*, 17-cr-686 (LAK), 2019 WL 4194569 (S.D.N.Y. Sept. 3, 2019), and *Kelly v. City of New York*, No. 01. Civ. 8906 (AGSDF), 2003 WL 548400 (S.D.N.Y. Feb. 24, 2003), is misplaced. Doe 144 Apr. 8, 2022, Obj. at 4. As Plaintiff explained in her initial brief, *Gatto* is distinguishable because the "documents consists of hearsay, speculation, and rumor." *Gatto*, 2019 WL 4194569, at *8. In their reply, Doe 144 centers on the *Gatto* court's note that the non-parties there "will not have the opportunity to test the reliability of the information contained in these materials nor respond adequately to any inferences that might be drawn on the basis of this information." *Id.* But, in balancing against the presumption of public access, the court there reasoned that "the presumption of access to the redacted information contained in the sentencing memorandum is minimal because it was utterly immaterial to the sentence that the Court imposed" and that the "arguments were immaterial in determining the sentence that the defendants received." *Id.* Here, by contrast, there is no showing that the materials at issue were "utterly immaterial" to the discovery motions they are attached to, and this Court has

4

already ruled that decided discovery motions are subject to a presumption of public access. July 23, 2020, Hr'g Tr. at 2:23-3:2; Apr. 19, 2022, Hr'g Tr. at 3:19-22.

*Kelly* is distinguishable because it was in the context of issuing a protective order.  2003 WL 548400, at *5.  Contrary to Doe 144's assertion, the public's interest in the present case, one involving the sex trafficking of minors, is not the same as the equal protection claim in *Kelly*, which involved issues concerning the propriety of certain tax filings. *See* July 23, 2020, Hr'g Tr. 4:10-16 ("In the context of this case, especially its allegations of sex trafficking of young girls, the Court finds that any minor embarrassment or annoyance resulting from disclosure of Ms. Maxwell's mostly nontestimony about behavior that has been widely reported in the press is far outweighed by the presumption of access.").[4]

Finally, Doe 144 claims that Plaintiff ignored their privacy and reputational interests.  Doe 144 Apr. 8, 2022, Obj. at 6-7.  But it is Doe 144's burden to "make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection. . . ."  *See In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009). Here, the only countervailing interest Doe 144 has presented is that they have a good reputation and has contributed meaningfully to society, and that release of the materials at issue may thus tarnish that reputation.  Doe Obj. at 2, 4, 6-9; Doe 144 Apr. 8, 2022, Obj. at 1, 6-8.  This countervailing interest is far from the sort of specific interest required to justify continued sealing of documents to which the public has a right to access: "broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *Parmalat*, 258 F.R.D. at 244;

---

[4]  *United States v. Cohen*, 366 F. Supp. 3d 612 (S.D.N.Y. 2019), is distinguishable.  That case was about the unsealing of materials related to searches conducted by the FBI and in connection with an investigation.  *Id.* at 617-18.  With respect to the non-parties at issue in that case, there was no indication that their identities were already publicly disclosed, *id.* at 624, which, as explained below, diminishes any countervailing factors against unsealing.

5

*see also* Jan. 16, 2020, Hr'g Tr. at 7:9–12, 21–23 ("[W]hat we are looking for from you is a specific explanation of why the document should remain sealed or the redactions should continue specific to that document."). And "a generalized concern of adverse publicity concerning a public figure is [not] a sufficiently compelling reason that outweighs the presumption of access." *Prescient Acquisition Grp. v. MJ Public Trust*, 487 F. Supp. 2d 374, 375 (S.D.N.Y. 2007) (rejecting opposition to unsealing on the basis that the celebrity status of Michael Jackson would make the record "subject to sensational media accounts"). This is especially so when some of the documents at issue are entirely innocuous, like lists of search terms.

Doe 144 also challenges Plaintiff's argument that their privacy and reputational interests are undercut by the fact that they have been subject to media attention. Dkt. 1247 at 10.[5] But "[i]n considering whether sealing is appropriate, an important consideration is, of course, whether the information sought to be kept confidential is already public." *United States v. Avenatti*, (S1) 19 Cr. 373 (PGG), 2020 WL 70952, at *6 (S.D.N.Y. Jan. 6, 2020); *see also Shetty v. SG Blocks, Inc.*, 20-CV-550 (ARR) (MMH), 2021 WL 4959000, at *4 (E.D.N.Y. Oct. 26, 2021) ("The Second Circuit and courts within it have repeatedly found sealing improper where the relevant material was already made public"). In an attempt to counter that argument, Doe 144 argues that "*Avenatti* does not mandate unsealing just because [Doe 144] has been the subject of media attention in connection with allegations made in this case." Doe 144 Apr. 8, 2022, Obj. at 7. Plaintiff does not claim anything is automatic; rather, that Doe 144 has already been subject to media attention

---

5   *Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987), is inapposite. That case was about "(1) whether the public's qualified First Amendment right of access to criminal trials extends to the pretrial motion papers filed here under seal, whether or not a hearing on the motion is held; and (2) to what extent, if any, must a court consider in determining whether public access is appropriate the fact that Title III material is contained within such motion papers." *Id.* at 113.

diminishes their countervailing privacy and reputational interests. As Doe 144's objection makes clear, their name has already been subject to media attention. Doe 144 Obj. at 4-6. The only countervailing interests that Doe 144 asserts are related to potential reputational harm—the weight of that countervailing interest is necessarily affected by the fact that Plaintiff's allegations about Doe 144's conduct are already public and have thus already affected Doe 144's reputation. *See United States v. Avenatti*, 2020 WL 70952, at *6; *see also Shetty*, 2021 WL 4959000, at *4.

Moreover, in response to Plaintiff's observation that Doe 144 has not explained why they are unable to respond publicly to any allegations made against them that they contend are false, Doe 144 has responded that Plaintiff should instead be required to repeat her statements "in a public forum outside the context of the litigation. . . ." Doe 144 Apr. 8, 2022, Obj. at 8. But Plaintiff's ability to repeat her allegations now is irrelevant to the unsealing analysis over these judicial documents—"the burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). Doe 144 also attempts to argue that they did not have the opportunity to respond to Plaintiff's allegations in "the given litigation," but Plaintiff's allegations were made in this litigation and the Court has provided them with that very opportunity to respond. If the Court unseals the documents at issue, Doe 144 will be free to file their objection and other submissions publicly on the docket.[6]

---

[6]  *United States v. Silver*, 15-CR-93 (VEC), 2016 WL 1572993 (S.D.N.Y. Apr. 14, 2016), and *United States v. Smith*, 985 F. Supp. 2d 506 (S.D.N.Y. 2013), are inapposite. In *Silver*, the court noted that the non-parties had "not otherwise been connected to or named in Defendant's criminal prosecution." 2016 WL 1572993, at *6. Here, Doe 144 has been publicly connected to Plaintiff's claims in this underlying litigation. In *Smith*, the court was deciding a motion for a protective order in a criminal matter, not a sealing motion, and found, with respect to the privacy interests of third parties, that the materials at issue were not judicial documents at all. 985 F. Supp. 2d at 525-26.

II. **Doe 97 Has Not Rebutted the Presumption of Public Access and They Were Not "Mistakenly Identified" by Plaintiff.**

Doe 97 filed a reply brief highlighting their contention that they are a "victim of mistaken identity due to [their] relatively common name." Doe 97 Reply at 1. Doe 97 also submitted a supplemental reply on April 20, after the Court held a hearing on other non-party objections and found that there was no value to unsealing Doe 17's name because: "When asked about this Doe at her deposition, plaintiff Giuffre testified that she believed Doe 17 also went by another specified name 'if it's the same woman I'm thinking of.' Doe 17 never went by the specified name, and thus this is a case of mistaken identity." Apr. 19, 2022, Hr'g Tr. at 5:22–6:1. Doe 97 cites to this ruling to argue that the Court should keep their name under seal. Doe 97 Supp. Reply at 1.

Even if "mistaken identity" is a valid ground for continued sealing (and Plaintiff contests the Court's holding that Doe 17 was such a case), Doe 97's circumstances are different than Doe 17's. Doe 97 has been directly accused of sexually abusing Plaintiff at the direction of Jeffrey Epstein. Sealing is meant to protect "innocent third parties," not those accused of wrongdoing. *See Amodeo*, 71 F.3d at 1050. Doe 97 says that they have never met Plaintiff. Doe 97 Obj. ¶ 3. But if an individual accused of wrongdoing could shield from the public allegations against them simply by asserting that their accused is mistaken, allegations of wrongdoing would always be filed under seal. This is simply not how the presumption of public access works.

Further, unlike Plaintiff's testimony about Doe 17, Doe 97 simply highlights that Plaintiff's testimony about them was "speculative" because she did not know which ▇▇▇▇ employed them, not that she was unsure of whether it was them to whom she was trafficked. Doe 97 Obj. ¶ 3; Doe 97 Reply at 1; Doe 97 Supp. Reply at 1.[7] In fact, in the same excerpt from which Doe 97

---

[7] Contrary to Doe 97's suggestion, Plaintiff was not "asked to identify a person with" Doe 97's name during her deposition. Doe 97 Reply at 1. Instead, she directly testified that she was trafficked to Doe 97, and was then asked who he was. 363-7 at 24:16–22, 25:21–25.

8

selectively quotes in their reply, Plaintiff confirmed that she was "sexually trafficked to" Doe 97 (D.E. 363-7 at 24:6–22), stated exactly where she met them with no hesitation (*id*. at 26:1–5), and even ***directly refuted*** the examiner's suggestion that she had confused Doe 97 with someone with a similar name (*id*. at 26:24–27:1). In other excerpts to which Doe 97 objects, Plaintiff confirmed that Maxwell told her "to go give a massage to" Doe 97 (Dkt. 185-11 at 200:13–15) and testified numerous times that she was trafficked to Doe 97 (Dkt. 235-4 at 189:24–193:18, 200:13–15). Given the fact that the Plaintiff was a minor who was being sexually trafficked across the world, it is not surprising that she did not know where Doe 97 works and the testimony simply does not support a conclusion that Doe 97's name appeared as a case of "mistaken identity."

Finally, Plaintiff's allegation about Doe 97 was unsealed by the Second Circuit. *See, e.g.*, *Giuffre v. Maxwell*, Case No. 18-2868, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The coverage of this allegation was extensive.[8] As this Court has found: "It's not the job of the Court to police press coverage and alert the public when reporting on unsealed materials as yesterday's news when the unsealed material is already public." July 1, 2021, Hr'g Tr. at 7:5-8.

And again, as Doe 97 contends, their name is very common. Doe 97 admits that this has mitigated any harm that could have been caused by the release of their name in the Second Circuit materials, but contends if the Court were to release *these* materials "any privacy afforded by Doe 97's common name would evaporate." Doe 97 Reply at 1. Doe 97 provides no support for this

---

[8] *See, e.g.*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9

speculation—that they were not harmed by the release of the Second Circuit materials, but that they will in fact be harmed by the release of these additional materials that contain similar accusations against them. Doe 97 has failed to meet their burden to "make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection." *See In re Parmalat Sec. Litig.*, 258 F.R.D. at 244.

III. **Doe 28 Has Not Rebutted the Presumption of Public Access.**

Doe 28 submitted a "response" brief on April 20, 2022, nearly two weeks *after* the deadline set by the Court and less than two days before the parties' deadline for filing reply briefs. Dkt. 1245. Accordingly, the Court should decline to consider this untimely submission. Even if the Court were inclined to consider the late filing, Doe 28's response merely repeats the vague and conclusory assertions contained in their original objection. As set forth in Plaintiff's opening brief, Doe 28's name should be sealed only to the extent the documents describe instances of potential sexual abuse that *they themselves* may have suffered. As to all other documents (i.e., documents describing Doe 28's participation in the abuse of others), Doe 28 has failed to rebut the presumption of public access. Although Doe 28's submissions seek to portray Doe 28 as a victim, the documents at issue make clear that they were instead an integral co-conspirator in Epstein's sex-trafficking operations. For the avoidance of doubt, Doe 28 is alleged to have ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and has been accused of trafficking girls to Epstein and his cohort. *See* Dkt. 338 at 9. Given these facts, Doe 28's non-specific concerns about "speculation from the public" are insufficient to overcome the presumption of public access to these judicial documents.

## CONCLUSION

For the foregoing reasons, the Court should reject Does 28, 97, and 144 objections.

Dated:  April 22, 2022					Respectfully Submitted,

							/s/ Sigrid S. McCawley

							Sigrid S. McCawley
							(Pro Hac Vice)
							BOIES SCHILLER FLEXNER LLP
							401 E. Las Olas Blvd., Suite 1200
							Ft. Lauderdale, FL 33301
							(954) 356-0011

							*Counsel for Plaintiff Virginia Giuffre*