# EXHIBIT A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - x

VIRGINIA L. GIUFFRE,

       Plaintiff,

  -against-             Case No.:
                         15-cv-07433-RWS

GHISLAINE MAXWELL,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - x

           **CONFIDENTIAL**

      Videotaped deposition of RINALDO RIZZO, taken pursuant to subpoena, was held at the law offices of Boies Schiller & Flexner, 333 Main Street, Armonk, New York, commencing June 10, 2016, 10:06 a.m., on the above date, before Leslie Fagin, a Court Reporter and Notary Public in the State of New York.

              - - -

       MAGNA LEGAL SERVICES
    1200 Avenue of the Americas
     New York, New York 10026
        (866) 624-6221



### Page 2

```
 1
 2    APPEARANCES:
 3    FARMER JAFFE WEISSING EDWARDS FISTOS &
      LEHRMAN, P.L.
 4            Attorneys for Plaintiff
              425 N. Andrews Avenue
 5            Fort Lauderdale, Florida 33301
       BY:    BRAD EDWARDS, ESQUIRE
 6
 7
      HADDON MORGAN FOREMAN
 8    Attorneys for Defendant
              150 East 10th Avenue
 9            Denver, Colorado 80203
       BY:    JEFFREY S. PAGLIUCA, ESQUIRE
10
11
      FREEMAN LEWIS LLP
12    Attorneys for the Witness
              228 East 48th Street
13            New York, New York 10017
       BY:    ROBERT LEWIS, ESQ.
14
15
      Also Present:
16
         RODOLFO DURAN, Videographer
17
18
19
20
21
22
23
24
25
```

### Page 3

```
 1
 2         THE VIDEOGRAPHER:  This is DVD No.
 3    1 in the video-recorded deposition of
 4    Rinaldo Rizzo, in the matter of Virginia
 5    Giuffre versus Ghislaine Maxwell, in the
 6    United States District Court, Southern
 7    District of New York.  This deposition
 8    is being held at 333 Main Street in
 9    Armonk, New York, June 10, 2016, at
10    approximately 10:06 a.m.
11         My name is Rodolfo Duran.  I am the
12    legal video specialist.  The court
13    reporter is Leslie Fagin, and we're both
14    in association with Magna Legal
15    Services.
16         Will counsel please introduce
17    themselves.
18         MR. EDWARDS:  Brad Edwards.  I
19    represent the plaintiff, Virginia
20    Giuffre.
21         MR. PAGLIUCA:  Jeff Pagliuca,
22    appearing on behalf of Ms. Maxwell.
23         MR. LEWIS:  Robert Lewis, with the
24    firm of Freeman Lewis, LLP,
25    representing the deponent, Rinaldo
```

### Page 4

```
 1             R. Rizzo - Confidential
 2    Rizzo.
 3         THE VIDEOGRAPHER:  Will the court
 4    reporter please swear in the witness.
 5    R I N A L D O   R I Z Z O,
 6       called as a witness, having been duly
 7       sworn by a Notary Public, was
 8       examined and testified as follows:
 9    EXAMINATION BY
10    MR. EDWARDS:
11       Q.  Mr. Rizzo, can you tell us your
12    full name for the record?
13       A.  Rinaldo A. Rizzo.
14       Q.  And what is your date of birth?
15       A.  
16       Q.  What is your address?
17       A.  
18    
19       Q.  What is your educational
20    background?
21       A.  I have a management degree with a
22    minor in business law from Texas A&M
23    University, and I have a degree in applied
24    science in hospitality and culinary arts from
25    the Culinary Institute of America.
```

### Page 5

```
 1             R. Rizzo - Confidential
 2       Q.  Are you married?
 3       A.  Yes.
 4       Q.  Who are you married to?
 5       A.  
 6       Q.  How long have you been married?
 7       A.  We've been together 27 years, so
 8    22.
 9       Q.  And do you have children?
10       A.  Yes.
11       Q.  How many?
12       A.  One.
13       Q.  Since graduating, what has been
14    your profession?
15       A.  It is called private service or
16    domestic service.
17       Q.  What does that mean?
18       A.  My role is to work within a family
19    as a desired position that's offered to me,
20    and most of it's been in management or
21    support of household staff.
22       Q.  Was there a time when you worked in
23    the household of Glenn Dubin and Eva Anderson
24    Dubin?
25       A.  Yes.
```



Page 126

```
 1       R. Rizzo - Confidential
 2   fired abruptly at this point, right?
 3       A.  Correct.
 4       Q.  You went and retained counsel to
 5   sue the Dubins, their entity and ███,
 6   all of them, right?
 7       A.  Correct.
 8       Q.  I take it you were deposed in
 9   connection with that litigation, correct?
10       A.  Correct.
11       Q.  Now, during that litigation, that
12   litigation meaning the reference in Exhibit
13   3, 13-cv-8864, did you ever tell anyone about
14   the interactions with Mr. Epstein that you
15   described here today?
16       A.  No, I did not.
17       Q.  That was not a part of your
18   lawsuit, correct?
19       A.  Could you restate the question?  I
20   don't understand what --
21       Q.  You didn't raise that as an issue
22   as to why you were suing the Dubins in 2013,
23   right?
24       A.  No, I did not.
25           THE VIDEOGRAPHER:  The time is
```

Page 127

```
 1       R. Rizzo - Confidential
 2   12:41.  We are going off the record.
 3       (Recess.)
 4           THE VIDEOGRAPHER:  The time is
 5   12:47 p.m.  We are back on the record.
 6   This begins DVD No. 3.
 7   BY MR. PAGLIUCA:
 8       Q.  I just have a few more questions.
 9   I'm going to finish off with your employment.
10           So after this lawsuit was
11   concluded, referenced in Exhibit 3, have you
12   worked since then?
13       A.  No, I have not.
14       Q.  Has your wife worked since then?
15       A.  On and off, yes.
16       Q.  How is it that you are currently
17   supporting yourself?
18       A.  I'm on disability.
19       Q.  That's as a result of your back
20   injury?
21       A.  Yes, and my hip injury.
22       Q.  I didn't realize you had a hip
23   injury, I'm sorry.  Is that Social Security
24   disability?
25       A.  Yes, it is.
```

Page 128

```
 1       R. Rizzo - Confidential
 2       Q.  The lawsuit with the Dubins
 3   referenced in Exhibit 3 was settled, I take
 4   it?
 5       A.  Correct.
 6       Q.  That was pursuant to a confidential
 7   settlement agreement?
 8       A.  Correct.
 9       Q.  And I am assuming that you received
10   a sum of money to settle that litigation, is
11   that correct?
12       A.  Correct.
13       Q.  And I'm not going to ask you the
14   details about that, but in case I need to do
15   something, let me put it this way.  If I
16   choose to subpoena that settlement agreement
17   from the Dubins, are you going to have any
18   objection to that, or is it all right if we
19   do that as far as you are concerned?
20       A.  I would have to discuss it with my
21   lawyer.
22           MR. PAGLIUCA:  I can talk to you
23       about that, if we decide to do it.
24       Q.  I just want to turn now, and this
25   is the last series of questions I have, what
```

Page 129

```
 1       R. Rizzo - Confidential
 2   you did in advance of coming here today.
 3           Have you talked to Mr. Edwards
 4   before?
 5       A.  Yes.
 6       Q.  And when have you talked to Mr.
 7   Edwards?
 8       A.  I don't recall the exact date and
 9   time.
10       Q.  Did Mr. Edwards call you or did you
11   call Mr. Edwards first?
12       A.  I called him.
13       Q.  When did you call Mr. Edwards?
14       A.  I don't recall the exact date and
15   time.
16       Q.  Years ago, days ago, months ago?
17       A.  It's been at least over a year.
18       Q.  Why did you call Mr. Edwards?
19       A.  At the time I was having a very
20   hard time with my attorney.  My wife and I
21   had discussed the issue.  As my wife put it,
22   we needed an attorney with balls and she had
23   been keeping track of the Jeffrey Epstein
24   issue, and basically in our conversation --
25           MR. LEWIS:  Let me stop you there.
```

Page 130

```
 1        R. Rizzo - Confidential
 2      There is a privilege of spousal
 3   privilege, so please don't disclose
 4   conversations you had with your wife.
 5        THE WITNESS:  Sorry.
 6        MR. LEWIS:  You can answer the
 7   question why you called, but you don't
 8   need to disclose anything about
 9   conversations with your wife.
10      A.   I was looking for an attorney that
11   basically could handle this kind of
12   situation, and I felt like, from what I had
13   read, that Mr. Edwards was probably someone I
14   needed to attain, if I could.
15      Q.   And so the, you referenced
16   dissatisfaction with an attorney.  I'm
17   assuming that was the attorney that filed
18   this 13-cv-8664 action, is that correct?
19      A.   Correct.
20      Q.   So you weren't happy with that
21   lawyer and you were looking for a more
22   aggressive lawyer?
23      A.   Correct, or someone that could work
24   with my lawyer.
25      Q.   The point being you were looking to
```

Page 131

```
 1        R. Rizzo - Confidential
 2   recover some form of compensation, I take it,
 3   from the Dubins or Mr. Epstein?
 4      A.   I was hoping -- how does Mr.
 5   Epstein --
 6      Q.   I don't know.  I'm asking the
 7   question.
 8      A.   That's incorrect.
 9      Q.   You were seeking to get
10   compensation from the Dubins, though?
11      A.   Correct.
12      Q.   And that was the point of you
13   calling Mr. Edwards is that, however you
14   learned it, you learned about the Epstein
15   litigation and you knew Mr. Edwards was
16   involved in the Epstein litigation?
17      A.   Correct.
18      Q.   The point of you contacting Mr.
19   Edwards was to see if he could represent you
20   in some litigation involving the Dubins in
21   which you would collect money, is that right?
22      A.   Correct.
23      Q.   And so when you called Mr. Edwards,
24   what do you recall telling him?
25        MR. LEWIS:  At this point, I object
```

Page 132

```
 1        R. Rizzo - Confidential
 2   on attorney/client privilege grounds.
 3   The conversation is privileged for the
 4   purpose of seeking legal advice.
 5        MR. PAGLIUCA:  I don't understand.
 6   Mr. Edwards is the lawyer for the
 7   witness.
 8        MR. LEWIS:  I am the lawyer for the
 9   witness.
10        MR. PAGLIUCA:  I know, I'm not
11   asking about you.
12        MR. LEWIS:  He called Mr. Edwards
13   for the purpose to determine whether Mr.
14   Edwards could represent him in some
15   capacity in that other lawsuit, so the
16   conversations is privileged.
17        MR. PAGLIUCA:  I'm going to
18   disagree, and you know we may need to
19   revisit that issue respectfully.
20        MR. LEWIS:  Fair enough.
21        MR. PAGLIUCA:  Let me put some
22   parameters on this that don't ask for
23   communications.
24        MR. LEWIS:  Ask a question and I
25   will object or not.
```

Page 133

```
 1        R. Rizzo - Confidential
 2      Q.   I think you said you called Mr.
 3   Edwards about a year ago?
 4      A.   More or less, correct.
 5      Q.   I didn't print out the docket
 6   sheet, but do you recall when you settled the
 7   13-cv-8664 case?
 8      A.   To the best of my recollection, I
 9   think it was in December.
10      Q.   Of?
11      A.   I don't recall.  I mean, it's last
12   year.
13      Q.   Without telling me what you told
14   Mr. Edwards, what was the purpose of your
15   calling -- I think you already told me this,
16   so I won't reask it.  Never mind.
17        Did you just speak with Mr. Edwards
18   over the phone?
19      A.   Correct, yes.
20      Q.   And I take it Mr. Edwards did not
21   become your lawyer in connection with any
22   litigation against the Dubins, correct?
23        MR. LEWIS:  You may answer that.
24      A.   Correct.
25      Q.   And Mr. Edwards in some fashion
```



34 (Pages 130 to 133)

Page 134

```
 1        R. Rizzo - Confidential
 2   indicated to you that he wasn't going to be
 3   your lawyer in connection with litigation,
 4   correct?
 5        MR. LEWIS:  Objection.  Do not
 6     answer that on privilege grounds.
 7     Q.  Mr. Edwards never became your
 8   lawyer, is that right?
 9     A.  Correct.
10     Q.  After that conversation, did you
11   have any -- after you understood that Mr.
12   Edwards was not your lawyer, did you have
13   further conversations with Mr. Edwards?
14     A.  No, I did not.
15     Q.  You may object to this, but I need
16   to ask this question.  In the first
17   conversation that you had with Mr. Edwards,
18   did you tell Mr. Edwards the things that
19   you've told us here today?
20        MR. LEWIS:  Objection.  Do not
21     answer.
22        MR. PAGLIUCA:  Privilege?
23        MR. LEWIS:  Yes.
24        MR. PAGLIUCA:  So just so the
25     record is clear, it seems to me this
```

Page 135

```
 1        R. Rizzo - Confidential
 2     would be a subject matter waiver of
 3     everything that he has talked about.  I
 4     don't know why it makes a difference if
 5     he is talking about it now and he told
 6     Mr. Edwards, I think he can talk about
 7     what he said to Mr. Edwards.  It seems
 8     to me there is a waiver here.
 9        MR. LEWIS:  You are presuming what
10     he said to Mr. Edwards.  And secondly,
11     just because, even if that were the
12     case, I'm not saying it is, just because
13     you testify to incidents which you tell
14     your attorney about doesn't mean the
15     disclosures to your attorney are not
16     privileged.
17        MR. PAGLIUCA:  Fair enough.  We can
18     argue about this later if we need to.
19   BY MR. PAGLIUCA:
20     Q.  Other than Mr. Edwards and your
21   wife and your current attorney, have you
22   talked to anyone else about the things that
23   you've talked about here today?
24     A.  No, I have not.
25     Q.  I think you answered this question,
```

Page 136

```
 1        R. Rizzo - Confidential
 2   but I want to make sure.
 3        After that first conversation with
 4   Mr. Edwards, did you speak with Mr. Edwards
 5   again in advance of this deposition today?
 6        MR. LEWIS:  You may answer that.
 7     A.  No, I have not.
 8     Q.  Do you know, did Mr. Edwards
 9   provide a list of questions to your lawyer,
10   who is here today, for you to provide those
11   answers to your lawyer to give to Mr.
12   Edwards?
13        MR. LEWIS:  I advise the witness to
14     only answer that question to the extent
15     he knows it outside of any conversations
16     that he might have had with me, which
17     are privileged.
18     A.  No.
19     Q.  So let me explain that question,
20   and here is my issue with that, and I don't
21   know if this happened or didn't happen, but
22   if there are questions that are given
23   proposed to you by Mr. Edwards and you give
24   them to the client with the expectation he is
25   going to give that information to you to give
```

Page 137

```
 1        R. Rizzo - Confidential
 2   to Mr. Edwards, it's not privileged.
 3        MR. LEWIS:  I can represent that
 4     didn't happen.
 5        MR. PAGLIUCA:  That solves the
 6     problem.
 7     Q.  I'm just closing the loop on this
 8   and then we are done.
 9        Have you spoken to anyone who is
10   affiliated with Mr. Edwards, either another
11   lawyer in his office, paralegal, an
12   investigator, about the things that you've
13   talked about here today?
14     A.  No, I have not.
15        MR. PAGLIUCA:  That's all I have.
16        MR. EDWARDS:  I don't have any
17     questions.  I appreciate you taking the
18     time.  Sorry about your injury.
19        THE VIDEOGRAPHER:  The time is
20     12:58 p.m. and we are going off the
21     record.
22     (Recess.)
23        THE VIDEOGRAPHER:  Back on the
24     record.
25        MR. PAGLIUCA:  The parties have
```