# United States District Court
# Southern District of New York

Virginia L. Giuffre,

                Plaintiff,                 Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

                Defendant.

_____/


## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR DEFENDANT'S RULE 37(b) &(c) SANCTIONS FOR FAILURE TO COMPLY WITH COURT ORDER AND FAILURE TO COMPLY WITH RULE 26(a)

## TABLE OF CONTENTS

Page

TABLE OF AUTHORTIES .................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................. 2

I.      MEDICAL PROVIDER IDENTITIES .......................................................................... 2

II.     MEDICAL RECORDS ............................................................................................... 7

        A.      Dr. Donahue ............................................................................................... 9

        B.      Dr. Hayek .................................................................................................... 9

        C.      Dr. Kutikoff, Wellington Imaging Associates ("Wellington Imaging") , and
                Growing Together ..................................................................................... 10

        D.      Ms. Lightfoot ............................................................................................ 10

        E.      Dr. Olson .................................................................................................. 11

III.    MS. GIUFFRE HAS PROVIDED DISCOVERY IN ACCORDANCE WITH HER
        DISCOVERY OBLIGATIONS ................................................................................... 12

IV.     DEFENDANT CAN SHOW NO PREJUDICE ............................................................. 13

V.      MS. GIUFFRE HAS BEEN FULLY COMPLIANT IN DISCOVERY .......................... 15

LEGAL ARGUMENT ........................................................................................................ 17

I.      DEFENDANT CANNOT SHOW NON-COMPLIANCE, AND HAS PUT FORTH
        NO COLORABLE LEGAL ARGUMENT FOR SANCTIONS ....................................... 17

II.     THERE WAS NO INFORMATION "WITHHELD", AND THEREFORE, NO
        PREJUDICE ........................................................................................................... 19

III.    MS. GIUFFRE HAS FULFILLED HER REQUIREMENTS REGARDING HER
        RULE 26 DISCLOSURES ........................................................................................ 19

IV.     THIS COURT SHOULD NOT STRIKE MS. GIUFFRE'S CLAIMS FOR
        MEDICAL AND EMOTIONAL DISTRESS DAMAGES .............................................. 22

CONCLUSION ................................................................................................................. 23

i

# TABLE OF AUTHORITIES

Page

**Cases**

*Candelaria v. Erickson*,
    2006 WL 1636817 (S.D.N.Y. 2006) ................................................................ 12

*Celle v. Filipino Reporter Enters. Inc.*,
    209 F.3d 163 (2d Cir.2000) ............................................................................. 20

*Design Strategy, Inc. v. Davis*,
    469 F.3d 284 (2d Cir. 2006) ............................................................................ 14

*Gurvey v. Cowan, Liebowitz & Lathman, P.C.*,
    2014 WL 715612 (S.D.N.Y. 2014) .................................................................. 18

*In re Consol. RNC Cases*,
    2009 WL 130178 (S.D.N.Y. Jan. 8, 2009) ................................................. 22, 23

*In re Dana Corp.*,
    574 F.3d 129 (2d Cir. 2009) .............................................................................. 6

*In re Weiss*,
    703 F.2d 653 (S.D.N.Y. 1983) ......................................................................... 18

*Murray v. Miron*,
    2015 WL 4041340 (D. Conn., July 1, 2015) .................................................... 21

*Naylor v. Rotech Healthcare, Inc.*,
    679 F. Supp. 2d 505 (D. Vt. 2009) .............................................................. 20, 21

*Nittolo v. Brand*,
    96 F.R.D. 672 (S.D.N.Y.1983) ........................................................................ 22

*Robertson v. Dowbenko*,
    443 F. App'x 659 (2d Cir. 2011) ...................................................................... 20

*Scheel v. Harris*,
    No. CIV.A. 3:11-17-DCR, 2012 WL 3879279 (E.D. Ky. Sept. 6, 2012) ............... 21

*Skywark v. Isaacson*,
    1999 WL 1489038 (S.D.N.Y. Oct. 14, 1999) ................................................... 22

**<u>Rules</u>**

Fed. R. Civ. P. 26 ................................................................................................ *passim*

Fed. R. Civ. P. 26(a) ...................................................................................... 1, 19

Fed. R. Civ. P. 26(a)(1) ......................................................................................... 21

Fed. R. Civ. P. 26(a)(1)(A)(iii) ............................................................................. 21

Fed. R. Civ. P. 26(a)(5) .......................................................................................... 6

Fed. R. Civ. P. 37 ........................................................................................... 18, 24

Fed. R. Civ. P. 37 (b) & (c) .................................................................................... 1

Fed. R. Civ. P. 37(c)(1) ......................................................................................... 21

## <u>INTRODUCTION</u>

As more and more witnesses come forward testifying about Defendant's involvement in the sexual abuse of young girls, Defendant's discovery arguments have become more removed from the merits of this case and increasingly strident in their tone.  The latest example of this genre is the instant motion in which the Defendant boldly proclaims that Ms. Giuffre is "playing a game of catch and release" by deliberately "withholding information" regarding her medical care.  Yet the basis for these strong charges turns out to be nothing more than the fact that, when asked to produce a listing of medical care providers that Ms. Giuffre has seen in the last seventeen years – during a period of time when she lived in Australia, then Florida, then Colorado, finally returning to Australia – she was unable to recall all of the providers.  Ms. Giuffre and her attorneys have worked diligently to provide this listing to Defendant and, as new information has become available, or as Ms. Giuffre has been able to recall another provider, the information has been disclosed.  Indeed, Ms. Giuffre signed every medical records release that Defendant requested. There has been no deliberate "withholding" of information, much less withholding of information that would warrant the extreme sanction of precluding Ms. Giuffre from presenting her claims to a jury.

Moreover, this baseless motion for sanctions comes on the heels of disturbing testimony corroborating what lies at the core of this case –Defendant was involved in facilitating the sexual abuse of young girls with Jeffrey Epstein.  One witness, Rinaldo Rizzo, was in tears as he recounted Defendant bringing a 15-year-old girl to his employer's home who, in utmost distress, told him that Defendant stole the young girl's passport and tried to make her have sex with

1

Epstein, and then threatened her.[1] ███████████████████████████████

████████████████████████████████████████████████████████████

██████████████████ Another witness, ████████, testified that Defendant recruited her

from her school campus to have sex with Epstein with lies about being her personal assistant.[3]

Two other witnesses, one an underage victim (████████) and the other, the police detective

who ultimately ended up investigating Epstein (Detective Joseph Recarey, Retired), gave

testimony about how Epstein used other women to recruit minors to have sex with him.[4]  Most

recently, a witness testified that Defendant would call him and ask him to bring over young girls

that she would provide to Epstein. *See* McCawley Decl. at Exhibit 9, *ROUGH* Deposition

Transcript of ████████ at 162:8-19. It is against this backdrop that Defendant has filed a

motion seeking sanctions.  The motion is a transparent effort to deflect attention from the merits

of Ms. Giuffre's claim by inventing "willful" discovery violations and should be rejected in its

entirety.

## FACTUAL BACKGROUND

### I.    MEDICAL PROVIDER IDENTITIES

As the Court is aware, Defendant has requested that Ms. Giuffre provide the names and

medical records of every medical provider she has ever had, for any type of treatment, since

1999.  This would be no easy task for anyone, and Ms. Giuffre has had many medical providers

---

[1] *See* McCawley Decl. at Exhibit 1, Excerpts from the June 10, 2016 Deposition of Rinaldo
Rizzo.
[2] *Id.*
[3] *See* McCawley Decl. at Exhibit 2, Excerpts from the May 18, 2016 Deposition of ████

*See* McCawley Decl. at Exhibits 3 and 4, Excerpts from the June 20, 2016 Deposition of
████████ and Excerpts from the June 21, 2016 Deposition of Joseph Recarey.

in multiple locations.  So she and her legal counsel have worked diligently to track them down through a search that has spanned nearly two decades and two continents.

Ms. Giuffre made her initial disclosures on this subject in an answer to an interrogatory that she served on April 29, 2016.  Ms. Giuffre listed 15 health care providers that she could recall at the time.  Four days later, on May 3, 2016, Defendant deposed Ms. Giuffre.  During the deposition, Ms. Giuffre's memory was jogged and she was able to recall two additional providers: Judith Lightfoot and Dr. Christopher Donahue.[5]

Defendant, however, seeks to magnify the innocent recollection of two additional providers at Ms. Giuffre' deposition by misleadingly claiming that "[i]t is only through deposition testimony that Ms. Maxwell became aware of *at least five* - if not more - treating health care physicians."  (Mtn. at 1).  This claim, too, is inaccurate.  Beyond Ms. Lightfoot and Dr. Donahue, Defendant apparently adds to the list of "withheld" doctors by referring to treating physicians who cared for Ms. Giuffre on a one-off basis in the Emergency Room.  It is unsurprising that a patient would have trouble remembering an emergency room physician's name. But the real point here is that, in any event, the information was disclosed through documents produced, so there is absolutely no "failure to disclose" as Defendant wrongfully alleges**.**  *See* Centura Health Records (GIUFFRE005498-005569).

Defendant then states that, in her deposition, "Ms. Giuffre claims she was not treated by any other physicians," and then states that other records revealed "three *additional* health care

---

[5] Defendant's argument that Ms. Giuffre was trying to "hide" these providers is illogical and wholly contradicted by the fact that Ms. Giuffre disclosed these providers.  Defendant never explains how Ms. Giuffre can be "hiding" providers while testifying about them and producing their records.

professionals who treated Plaintiff, including Dr. Scott Robert Geiger, Dr. Joseph Heaney,[6] and

Donna Oliver P.A." (Mtn. at 4, emphasis original). ██████████████████████████████

████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████

Defendant is trying to make it seem as if Ms. Giuffre deliberately hid the names of

treating physicians in the Emergency Room.  As stated above, Ms. Giuffre produced these

records so she is clearly not hiding anything.  Not learning, not knowing, or not remembering off

the top of one's head the names of Emergency Room staff encountered during a medical

emergency is not only unsurprising and understandable, but is also not a discovery violation.



Here, Defendant attempts to make something out of nothing.  This is particularly true as

*Ms. Giuffre made these records available to Defendant.*  As evidenced by the details recounted

in Defendant's brief, Ms. Giuffre produced these Emergency Room records to Defendant, and

therefore, she is wholly compliant in her discovery obligations.[7]

---

[7] Indeed, Ms. Giuffre did not merely sign releases for the release of these records, but Ms. Giuffre's counsel spent considerable time and effort in attempts to procure these records for Defendant, as detailed in Ms. Giuffre's counsel's correspondence.  *See* McCawley Decl. at Composite Exhibit 5, May 2016 Emails from Meredith Schultz to Laura Menninger.

4

Additionally, Defendant's motion lists 15 providers[8] Ms. Giuffre gave to Defendants in her interrogatories (Mtn. at 3), but then states that "Plaintiff failed therein to identify any treatment providers prior to the alleged defamation, despite the Court's order concerning 1999-2015." (Mtn. at 4). This statement, too, is wildly incorrect. Of the list of 15 providers, the overwhelming majority of them are providers "prior to the alleged defamation."[9] For example, Ms. Giuffre produced records from N.Y. Presbyterian Hospital. (GIUFFRE003258-3290). Not only do the dates on the records (e.g., July 9, 2001) demonstrate they are prior to the defamation, but Defendant has independent knowledge that this provider pre-dates Defendant's defamation. Indeed, *Defendant is the one who brought her to that hospital, while she was a minor.* Therefore, Defendant's statement in her brief that "Plaintiff failed therein to identify any treatment providers prior to the alleged defamation, despite the Court's order concerning 1999-2015" (Mtn. at 4) is inaccurate.

Defendant continues with another misleading statement: "As of today's date . . . and 10 days before the end of fact discovery in this case, Ms. Maxwell has learned of at least five additional doctors" (Mtn. at 5), and then, again, names Ms. Lightfoot, Dr. Geiger, Dr. Heaney, Donna Oliver P.A., and Dr. Streeter. Defendant did not learn of these providers 10 days prior to the close of discovery, but much earlier, as the previous page of Defendant's brief recounts.

---

[8] (1) Dr. Steven Olson; (2) Dr. Chris Donahue; (3) Dr. John Harris; (4) Dr. Majaliyana; (5) Dr. Wah Wah; (6) Dr. Sellathuri; (7) Royal Oaks Medical Center; (8) Dr. Carol Hayek; (9) NY Presbyterian Hospital; (10) Campbelltown Hospital; (11) SydneyWest Hospital; (12) Westmead Hospital; (13) Dr. Karen Kutikoff; (14) Wellington Imaging Associates; (15) Growing Together.

[9] Providers from that list that treated Ms. Giuffre **prior to Defendant's defamation** include: (1) Dr. John Harris; (2) Dr. Majaliyana; (3) Dr. Majaliyana; (4) Dr. Wah Wah; (5) Dr. Sellathrui; (6) Royal Oaks Medical Center; (7) Dr. Carol Hayek; (8) NY Presbyterian Hospital; (9) Sydney West Hospital; (10) Westmead Hospital; (12) Wellington Imaging Associates; (13) Growing Together.

Defendant's next statement is equally misleading "documents relating to these doctors were not provided until after their identities became known through deposition or other independent investigation by Ms. Maxwell." (Mtn. at 5). Their identities became known to Defendant because Ms. Giuffre disclosed the name of Ms. Lightfoot in her deposition, and because Ms. Giuffre herself produced emergency room records to Defendant – documents bearing the names of the other providers. Accordingly, these five additional names were provided to Defendant by Ms. Giuffre herself, through (1) *her* deposition testimony; and (2) *her* document production.

Defendant is now asking this Court to enter extraordinary sanctions because those names were not provided in response to an interrogatory, ***but, instead, were provided through Ms. Giuffre's testimony and Ms. Giuffre's document production***. This is an improper request. It is unsurprising that Defendant cannot cite to a single case in which any type of sanctions were awarded under even remotely similar circumstances. Indeed, the purpose of the various aspects of discovery provided by Rule 26(a)(5), Fed. R. Civ. P., is to provide more fulsome information. *C.f. In re Dana Corp.*, 574 F.3d 129, 150 (2d Cir. 2009) ("the various discovery methods are more complementary than fungible"). Here, Ms. Giuffre provided her medical information through interrogatory response, through testimony, and through document production. Ms. Giuffre has met her obligation under both this Court's Order and Rule 26. There has been no failure to disclose: Ms. Giuffre provided the names and testified about her treatment. Accordingly, this motion should be denied in its entirety.

## II.     MEDICAL RECORDS

Defendant states that Plaintiff has failed to produce any records from (a) Dr. Donahue, (b) Dr. Hayek, (c) Dr. Kutikoff, (d) Wellington Imaging Assocs., (e) Growing Together, (f) post

2011 records from Ms. Lightfoot, and (g) the remaining documents for treatment by Dr. Olson. (Mtn. at 5). This is also incorrect. There has been no "failure," as discussed, in turn, below. Moreover, if records from any providers have not been produced, it is not Ms. Giuffre's "failure," but rather, the failure of the providers, particularly as Ms. Giuffre has executed releases for her records from all these providers. Ms. Giuffre and her counsel have been diligent in compiling nearly two decades of medical records from various states and countries. The chart below provides an overview the efforts undertaken by Ms. Giuffre and the production to Defendant as a result.

| MEDICAL PROVIDER | HEALTHCARE PROVIDED | ACTION TAKEN | RELATED GIUFFRE PRODUCTION |
|---|---|---|---|
| Dr. Olsen | Primary Care Physician | 3/8/16 Letter Request | Giuffre 005342-005346 St. Thomas More Hospital Records (Dr. Olsen) Giuffre 005492-005496 St. Thomas More Hospital Records (Dr. Olsen) |
| Centura Health | ███████████ | 5/23/16 Letter Request | Giuffre 005498 Centura Health Release Form (All Medical Records) Giuffre 005501-005569 Responsive Records (Centura Health) |
| Dr. Carol Hayek | Psychiatrist | 3/8/16 Ltr Request 4/28/16 Ltr Request | Giuffre and counsel contacted physician's office via telephone and email to follow up. |
| Dr. Chris Donahue | ███████████ | 4/5/16 Ltr Request | Giuffre 006631-006635 (Dr. Donahue) |
| Dr. John Harris/Dr. Majliyana | ███████████ | 4/5/16 Ltr Request | Giuffre 005315 005322 The Entrance Medical Centre (Dr. John Harris and Dr. Darshanee Mahaliyana) |
| Dr. Wah Wah | ███████████ | 4/5/16 Ltr Request | Giuffre 005339 005341 Central Coast Family Medicine (Dr. Wah Wah) |
| Dr. Sellathuri | ███████████ | 4/5/16 Ltr Request | Giuffre 005089 005091 ("Dr. M. Sella") |
| Royal Oaks | Has no treatment records | 4/5/16 Ltr | Giuffre 005347 005349 Royal Oaks |

| MEDICAL PROVIDER | HEALTHCARE PROVIDED | ACTION TAKEN | RELATED GIUFFRE PRODUCTION |
|---|---|---|---|
| Medical Center | | Request | Medical Center's Response (No Records) |
| NY Presbyterian Hospital | ███████████ | Produced | Giuffre 003258 003290 New York Presbyterian Hospital |
| Campbelltown Hospital/ Sydney West Hospital | ███████████ | Produced | Giuffre 003193 003241 Camselltown Hospital/Camden Hospital (Dr. Elbeaini) Giuffre 003242 003257 Macarthur Health Service (Dr. Elbeaini) |
| Sydney West Hospital / Westmead Hospital | ███████████ | Produced | Giuffre 003291-003298 Sydney West/Westmead Hospital |
| Dr. Karen Kutikoff | | Release Provided to Defendant's Counsel | 04/29/16 Sent via e-mail signed release to Menninger (obtain records directly). |
| Wellington Imaging Associates | | Release Provided to Defendant's Counsel | 04/29/16 Sent via e-mail signed release to Menninger (obtain records directly). |
| Growing Together | | Release Provided to Defendant's Counsel | 04/29/16 Sent via e-mail signed release to Menninger (obtain records directly). |
| Ms. Judith Lightfoot | Psychologists | 5/4/16 Ltr Request | Giuffre 005431-005438 Medical Release Form with documents (Ms. Lightfoot) Giuffre 006636 Correspondence stating no further records available. |
| Dr. Scott Robert Geiger | ███████████ | ER Treating Physician | Giuffre 005498-005569 Centura Health Medical Release Form (Requested Entire Medical Record) |
| Dr. Joseph Heaney | ███████████ | ER Treating Physician | Giuffre 005498-005569 Centura Health Medical Release Form (Requested Entire Medical Record) |
| Donna Oliver, PA | ███████████ | ER Treating Physician Referral ENT | Giuffre 005498-005569 Centura Health Medical Release Form (Requested Entire Medical Record) |
| Dr. Michele Streeter | ███████████ | ER Treating Physician | Giuffre 005498-005569 Centura Health Medical Release Form (Requested Entire Medical Record) |

Accordingly, as the Court can see with reference to the Bates labels in the above chart, Ms. Giuffre has be compliant in producing her medical records. Indeed, she has signed releases for all records requested by Defendant, and has produced all records released by the providers. In addition to signing all releases for medical providers requested by Defendant, the work associated with compiling the records and following up with providers (as shown by the above chart) clearly demonstrates Ms. Giuffre's good faith and persistence in her deliberate and thorough pursuit of providing Defendant with her medical records. That is reason alone to deny Defendant's unsupported request for sanctions.

A.     Dr. Donahue

Plaintiff dutifully signed a release for medical records and provided it to Dr. Donahue on April 5, 2016, and sent a copy to the Defendant so counsel was on notice of the efforts being taken to secure medical records. *See* McCawley Decl. at Composite Exhibit 6, Dr. Donahue letter and Release Form. Ms. Giuffre's counsel has received records from Dr. Donahue since the Defendant filed the instant motion, and immediately provided those records to Defendant. *See* chart above, GIUFFRE00006631-006635.

B.     Dr. Hayek

Dr. Hayek treated Ms. Giuffre over seven years ago. Ms. Giuffre signed a release form for Dr. Hayek's records, sent the release form on March 8, 2016, and provided a copy of the form to Defendant. Having not received any records, the undersigned sent a follow-up letter to Dr. Hayek on April 28, 2016, to request the records. Upon information and belief, Dr. Hayek does not keep patient's medical records for longer than seven years, and, therefore, no longer has any records pertaining to Ms. Giuffre. Ms. Giuffre *and her counsel* have made inquiries to Dr.

Hayek's office via telephone and email, but, to date, have not received any response.  Again, Ms. Giuffre has no input on Dr. Hayek's document retention policies, and therefore, the lack of production of records from Dr. Hayek cannot be attributed to Ms. Giuffre.

      C.      <u>Dr. Kutikoff, Wellington Imaging Associates ("Wellington Imaging") , and Growing Together</u>

Plaintiff provided Defendant's counsel executed medical release forms for Dr. Kutikoff, Wellington Imaging, and Growing Together on April 29, 2016. *See* McCawley Decl. at Composite Exhibit 7.  Accordingly, Ms. Giuffre has no direct knowledge as to what, if anything, these three providers produced to Defendant's counsel.  Ms. Giuffre has done everything in her power to make them available to Defendant, a fact that Defendant cannot dispute.  Again, there has been no "failure" by Ms. Giuffre here, as Ms. Giuffre has signed and sent the necessary release forms for the records *to be sent directly to Defendant*.[10]

      D.      <u>Ms. Lightfoot</u>

Defendant admits that Ms. Giuffre produced Ms. Lightfoot's records in footnote 4 of her brief on page 11, yet on page 16, Defendant wrongfully states Plaintiff has not produced Dr. Lightfoot's records. Despite the self-contradictory briefing, Ms. Lightfoot has produced records. *See* chart above, Giuffre005431-005438, Medical Release Form with documents.  As with the other providers, Ms. Giuffre has executed and sent medical records release forms to Ms. Lightfoot, and has thus met her discovery obligations.  To follow up on Defendant's wrongful claims that Ms. Giuffre has somehow "withheld" more current records (despite executing a release for *all* records); Ms. Giuffre followed up with Ms. Lightfoot, who provided to Ms.

---

[10] Upon information and belief, Ms. Lightfoot is not a medical doctor, but an Australian "Consulting Psychologist."

Giuffre's counsel correspondence stating that she has produced all of Ms. Giuffre's records (*see* chart above, Giuffre006636), thereby indicating that she does not keep more current records.

     E.     Dr. Olson

Defendant claims that Ms. Giuffre failed to produce "the remaining documents for treatment by Dr. Olson," but this is a wild inaccuracy.  (And, Ms. Giuffre would refer the Court to a short excerpt from Dr. Olson's deposition in which Dr. Olson explains in his own words his production. *See* McCawley Decl. at Exhibit 10, Dr. Olson Deposition Excerpt.) First, Ms. Giuffre signed a release for *all* records that Dr. Olson had.  *See* McCawley Decl. at Composite Exhibit 6, March 8, 2016, Release for Dr. Olson records.  Dr. Olson produced records Bates labeled GIUFFRE005342-005346 and GIUFFRE005492-005496. Dr. Olson then testified in his deposition that he kept a record on his laptop that was not a part of the medical records produced by his hospital. *Id.* During the deposition, he printed that record and gave it to Defendant's counsel. *Id.* Now, Defendant's counsel is claiming that this set of facts constitutes a discovery violation that warrants sanctions. There is no failure to produce here. Ms. Giuffre executed a medical release that provided for all of Ms. Giuffre's medical records with regard to Dr. Olson, and records were produced.  It was Dr. Olson who failed to include his "laptop records" among the records that were produced.

Ms. Giuffre knew nothing of the "laptop records" until Dr. Olson's deposition, and Dr. Olson provided them at that time, a fact Defendant admits in a footnote in her Motion to Reopen Ms. Giuffre's Deposition.  In that brief, Defendant complains that they were not "produced" until after Ms. Giuffre was deposed.  That is a distortion. Defendant already had such documents from Dr. Olson himself. Ms. Giuffre included those documents *that both sides received in the deposition* as part of her next production, so that they would bear a Bates label for tracking

purposes. It was a formality since both sides already had the record.  Defendant states: "Despite requests, legible copies have not been provided."  Defendant uses the passive voice here, presumably to avoid making clear the fact that the requests for legible copies would need to be made to Dr. Olson, who controls the records, not to Ms. Giuffre, who long ago authorized the release of all records. The existence of a record that a witness failed to produce prior to a deposition is not a discovery violation from Ms. Giuffre.

## III.   MS. GIUFFRE HAS PROVIDED DISCOVERY IN ACCORDANCE WITH HER DISCOVERY OBLIGATIONS

The fact is that Ms. Giuffre has executed a release form for each and every medical care provides that Defendant asked for. Defendant cannot contradict this statement.  Ms. Giuffre produced medical records she had in her possession (such as New York Presbyterian records), early in discovery.  From that point, other medical records were sought and obtained, with Ms. Giuffre facilitating their production from the providers by executing and sending release forms and paying all applicable fees for their release.  Moreover, counsel for Ms. Giuffre has kept Defendant fully apprised of such efforts, even giving Defendant copies of all releases that have been issued, and providing updates on Ms. Giuffre's continued efforts to obtain medical records beyond signing releases.  *See* McCawley Decl. at Composite Exhibits 5 and 6.

Executing and sending medical release forms to all of the medical providers satisfies Ms. Giuffre's discovery obligations with regard to her medical records, and Defendant cannot cite to a case that states otherwise.  *See*, e.g., *Candelaria v. Erickson*, 2006 WL 1636817, at *1 (S.D.N.Y. 2006) (requiring the execution of updated medical release forms to satisfy discovery obligations).  The fact that Defendant has presented this weak tea to the Court - concerning the actions of third-parties Ms. Giuffre does not control - shows just how baseless the motion is.

## IV.   DEFENDANT CAN SHOW NO PREJUDICE

12

Defendant claims to be prejudiced because a small fraction of the medical providers were revealed at Ms. Giuffre's deposition, four days after her interrogatory response. This argument is moot. Ms. Giuffre has agreed to reopen her deposition for Defendant's questions regarding those medical providers. Second, Defendant intimates, but does not actually claim, that she wants to depose Ms. Lightfoot, and states that there is not sufficient time: "arranging for and taking the deposition of Ms. Lightfoot . . . is nearly impossible," suggesting to the Court that there is some prejudice to Defendant there. (Mtn. at 11). However, Defendant's behavior (and a close reading of Defendant's brief) suggests that Defendant doesn't actually want to depose Ms. Lightfoot; instead, she just wants to *appear to the Court* as prejudiced by not taking her deposition. First, Defendant *never noticed her deposition* despite knowing her identity for nearly two months - since May 3, 2016. Second, Defendant is careful not to claim in her brief that she *actually wants to depose Ms. Lightfoot*, all the while suggesting that she has suffered some prejudice with respect to not taking Ms. Lightfoot's deposition. Defendant's lack of actual desire to take her deposition stems from the 2011 records Ms. Lightfoot produced - records predating Defendant's defamation by years. ███████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████

███████████████ This is the reason Defendant is careful not to claim in her brief that she actually wanted to depose Ms. Lightfoot, and this is the reason why Defendant never noticed her for deposition. ████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████

Defendant's claims concerning deposing Dr. Donahue are similarly specious.  First, despite knowing about Dr. Donahue since at least April 29, 2016 (a fact she admits in her brief "Dr. Donahue may have been named" (Mtn. at 16)): Defendant has never issued a Notice of Deposition for Dr. Donahue.  Defendant cannot claim any prejudice with respect to Dr. Donahue.

Additionally, Defendant acts in bad faith when she claims that medical records from Dr. Donahue were "purposefully hidden by Plaintiff" (Mtn. at 11) when Defendant knows that Ms. Giuffre executed and sent a medical release for Dr. Donahue on April 5, 2016, for all of his records.  *See* McCawley Decl. at Composite Exhibit 6, Dr. Donahue Medical Release.  As stated above, this argument is moot because the records concerning Dr. Donahue (and other providers at his practice) have been produced to Defendant.

Finally, though Ms. Giuffre does not control how quickly providers respond to her releases (though her counsel has spent considerable time following-up with providers, urging their speedy release, and paying all applicable fees), Ms. Giuffre has agreed to reopen her deposition for questions concerning provider records that were produced subsequent to her deposition.  Therefore, Ms. Giuffre has eliminated any prejudice Defendant could claim to suffer with respect to taking Ms. Giuffre's deposition.  *See* Giuffre006631-006635.

A factor relevant to the appropriateness of sanctions under Rule 37 for discovery violations is the "prejudice suffered by the opposing party."  *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).  Here, Defendant cannot claim any prejudice resulting from her empty claims of "discovery violations." Accordingly, sanctions are inappropriate.

**V.    MS. GIUFFRE HAS BEEN FULLY COMPLIANT IN DISCOVERY**

It is the Defendant in this case that has failed to comply with discovery at every turn. Defendant has refused to produce any documents whatsoever without this Court entering an Order directing her to do so.  The only reason Plaintiff has documents from Defendant at all is because of this Court's denial of Defendant's stay requests and the Court's rulings on Ms. Giuffre's Motion to Compel for Improper Claim of Privilege (wherein Defendant was ordered to turn over documents that did not even involve communications with counsel) and her Motion to Compel for Improper Objections.  Even then, Defendant's counsel refused to even take the routine step of looking at Defendant's email and other electronic documents to find responsive documents, but produced, instead, only what Defendant wanted to produce.  Ms. Giuffre had to bring a Motion for Forensic Examination and the Court had to order that Defendant's counsel actually produce documents from Defendant's electronic documents, something that has not yet been done to date.  Indeed, Defendant did not make her initial disclosure until February 24, 2016 several months *after* the deadline for these disclosures.  Additionally, while Ms. Giuffre started her efforts to take the Defendant's deposition in February, 2016, Defendant did not actually sit for her deposition until after being directed to do so by the Court, on April 22, 2016.

Furthermore, during the deposition, Defendant refused to answer a myriad of questions, and therefore, this Court recently ordered Defendant to sit for her deposition again.  *See* June 20, 2016, Order resolving eight discovery motions entered under seal and granting Plaintiff's Motion to Compel Defendant to Answer Deposition Questions (D.E. 143).

Ms. Giuffre has had to litigate, multiple times, for Defendant to make any document production, and Ms. Giuffre has had to litigate, also multiple times, for Defendant to be deposed. *See* Plaintiff's Response in Opposition to Defendant's Motion to Stay Discovery (DE 20); Plaintiff's February 26, 2016, Letter Motion to Compel Defendant to Sit for Her Deposition;

Plaintiff's Motion to Compel Documents Subject to Improper Claim of Privilege (DE 33);

Plaintiff's Motion to Compel Documents Subject to Improper Objections (DE 35); Plaintiff's

Response in Opposition to Defendant's Motion for a Protective Order Regarding Defendant's

Deposition (DE 70); Plaintiff's Motion for Forensic Examination (DE 96); Plaintiff's Motion to

Compel Defendant to Answer Deposition Questions (DE 143).  Ms. Giuffre has had to expend

considerable time and resources simply to have Defendant meet her basic discovery obligations

in this case.

Now, having completely stonewalled on discovery, making every produced document

and even her own deposition the result of extensive and unnecessary litigation, taking positions

that are contrary to the Federal Rules and wholly contrary to prevailing case law, Defendant

claims that Ms. Giuffre has been "non-compliant since the outset of discovery."  (Mtn. at 11).

This statement is completely inaccurate.

Defendant makes a number of unsubstantiated claims regarding law enforcement

materials, photographs, and email accounts.  Most of these issues have been resolved pursuant to

this Court's orders.  *See* June 20, 2016, Order entered under seal denying Defendant's motion to

compel law enforcement materials; June 23, 2016, Minute Entry. Ms. Giuffre merely points out

that Defendant not only failed to review, search, or produce Defendant's email, from any of her

multiple accounts, but also wholly failed to disclose her terramarproject.org email account or her

ellmax.com email account.

Regarding photographs, counsel for Ms. Giuffre has gone to considerable expense to

recover boxes that Ms. Giuffre thought may contain photographs, including paying

approximately $600.00 for shipping of the boxes to ensure production of any recent information.

Accordingly, Defendant articulates no legitimate complaint in this section of her brief.

16

## LEGAL ARGUMENT

I.   **DEFENDANT CANNOT SHOW NON-COMPLIANCE, AND HAS PUT FORTH
NO COLORABLE LEGAL ARGUMENT FOR SANCTIONS**

Sanctions are not appropriate in this case because Defendant cannot show non-compliance. Through the normal course of discovery, Ms. Giuffre produced her medical providers to Defendant, as Defendant admits in her moving brief.  Defendant's complaint boils down to the fact that Ms. Giuffre remembered at deposition two providers (Ms. Lightfoot and Dr. Donahue) that she did not recall when compiling her long list of providers in response to Defendant's interrogatory four days prior.  That does not constitute non-compliance.  That is not sanctionable behavior.  And, Defendant cannot cite any case in which a court found differently. Additionally, though Defendant attempts to ascribe blame to Ms. Giuffre for any medical records that have not been sent by providers (or medical records that may not exist), the uncontested fact is that Ms. Giuffre has executed releases for all of the providers Defendant requested.  Again, Defendant can point to no case in which sanctions were awarded over medical records where the party signed all applicable releases.  Accordingly, Defendant's motion should be denied.[11]

Even Defendant's own cases cited in her brief are inapposite and do not suggest that sanctions are appropriate in this case.  For example, in *Davidson v. Dean,* the plaintiff "refused to consent to the release of mental health records" for periods for which he was seeking damages

---

[11] What *does* constitute sanctionable behavior is testimonial obduracy that includes "denying memory of the events under inquiry," a tactic Defendant took in response to a multitude of questions at her deposition, as more fully briefed in Ms. Giuffre's Motion to Compel Defendant to Answer Deposition Questions (DE 143), granted by this Court on June 20, 2016.  *See In re Weiss,* 703 F.2d 653, 663 (S.D.N.Y. 1983) (holding that "the witness's . . . disclaimers of knowledge or memory, has also been dealt with as contemptuous conduct, warranting sanctions that were coercive, punitive, or both.  It has long been the practice of courts viewing such testimony as false and intentionally evasive, and as a sham or subterfuge that purposely avoids giving responsive answers, to ignore the form of the response and treat the witness as having refused to answer.").

and for which the Court ordered him to provide releases.  204 F.R.D. 251, 254 (S.D.N.Y. 2001).

By contrast, Ms. Giuffre has executed each and every release for medical records requested by

Defendant. In *In re Payne*, Rule 37 sanctions were not even at issue: an attorney was

reprimanded for "default[ing] on scheduling orders in fourteen cases, resulting in their dismissal

. . . fili[ing] stipulations to withdraw a number of appeals only after his briefing deadlines had

passed," etc. 707 F.3d 195, 198-99 (2d Cir. 2013).  Similarly, in *Gurvey v. Cowan, Liebowitz &*

*Lathman, P.C.*, 2014 WL 715612, at *2 (S.D.N.Y. 2014), sanctions were awarded because, *inter*

alia, "my . . . Order explicitly limited discovery to plaintiff's malpractice and breach-of-fiduciary

duty claims . . . However . . . plaintiff has sought discovery of extraordinary breadth that is far

beyond the scope of the two claims . . . [and] disregarded my Order . . .  by failing to explain in

writing how each of her discovery requests to CLL is relevant to the remaining claims."

Accordingly, as stated above, Defendant has not put forth any colorable legal argument for

sanctions under Rule 37.

## II.   THERE WAS NO INFORMATION "WITHHELD," AND THEREFORE, NO PREJUDICE

Defendant cannot be taken seriously when she claims that "Plaintiff is obviously trying to

hide" her treatment related to domestic violence, ████████████████████████████

████████████████████████████████████████ Given that fact,

Defendant's incendiary claim defies logic. All these things that Defendant claims were

deliberately "withheld" or "hidden" are things that Ms. Giuffre provided to Defendant in the

normal course of discovery, as described at length above.  Defendant cannot claim any prejudice

regarding the manner in which she received this information, and, indeed, does not.[12]

Accordingly, sanctions are wholly inappropriate.

## III.   MS. GIUFFRE HAS FULFILLED HER REQUIREMENTS REGARDING HER RULE 26 DISCLOSURES[13][14]

Regarding Ms. Giuffre's computation of damages, Ms. Giuffre has pled defamation *per se* under New York law, where damages are presumed. *Robertson v. Dowbenko*, 443 F. App'x 659, 661 (2d Cir. 2011). Plaintiff provided amounts, damage calculations and supporting evidence required under Rule 26. Plaintiff is retaining experts to support her Rule 26 Disclosures, and expert reports and disclosures are not due at this time. Defendant takes issues with Ms. Giuffre's computation of damages in her Rule 26 disclosures but fails to cite to a single case that requires more from her, let alone more from a Plaintiff claiming defamation *per se*. Indeed, the case law supports that Plaintiff has fully complied with her Rule 26 obligations. *See Naylor v. Rotech Healthcare, Inc.*, 679 F. Supp. 2d 505, 510 (D. Vt. 2009).

In good faith, Ms. Giuffre has produced a multitude of documents and information regarding her damages. Defendant does not cite to a single case that even suggests she is required to do more. What Defendant purports to lack is expert discovery and an expert report on computation of damages. Rule 26(a)(1), governs "initial disclosures," disclosures to be made at

---

[12] This is particularly true regarding the timing of Ms. Giuffre's deposition, as Ms. Giuffre has agreed to reopen her deposition concerning any medical information that Defendant did not receive in advance of her deposition.

[13] Defendant references her Motion to Compel Rule 26(a) disclosures (DE 64) that she filed on March 22, 2016, but failed to mention that, after a hearing, this Court denied that motion with leave to refile (DE 106).

[14] Defendant repeatedly attempts to conflate the required disclosures under Federal Rule of Civil Procedure 26(a) and the disclosures ordered by this Court on April 21, 2016, in an apparent effort to 'backdate' those required disclosures.

the beginning of litigation,  prior to the completion of expert work. It does not entitle a party to expert discovery at this stage in the case.

Ms. Giuffre has pleaded and will prove defamation *per se*, where damages are presumed. *Robertson v. Dowbenko*, 443 F. App'x at 661 ("As the district court correctly determined, Robertson was presumptively entitled to damages because he alleged defamation per se."). Under New York law, defamation per se, as alleged in this case, presumes damages, and special damages do not need to be pled and proven.  *See Celle v. Filipino Reporter Enters. Inc*., 209 F.3d 163, 179 (2d Cir.2000) (Second Circuit holding that "[i]f a statement is defamatory per se, injury is assumed.  In such a case 'even where the plaintiff can show no actual damages at all, a plaintiff who has otherwise shown defamation may recover at least nominal damages,'" and confirming an award of punitive damages) (Emphasis added).

Additionally, Ms. Giuffre has claimed punitive damages for the defamation per se. "[C]ourts have generally recognized that ... punitive damages are typically not amenable to the type of disclosures contemplated by Rule 26(a)(1)(A)(iii), and have held that the failure to disclose a number or calculation for such damages was substantially justified."  *See Murray v. Miron*, 2015 WL 4041340 (D. Conn., July 1, 2015).  *See also Scheel v. Harris*, No. CIV.A. 3:11-17-DCR, 2012 WL 3879279, at *7 (E.D. Ky. Sept. 6, 2012) (finding that a failure to provide a precise number or calculation for their punitive damages claim is substantially justified pursuant to Fed. R. Civ. P. 37(c)(1)).

Accordingly, Ms. Giuffre's disclosures comply with Rule 26 for the computation of damages.  *See Naylor v. Rotech Healthcare, Inc.*, 679 F. Supp. 2dat 510 ("The Court is skeptical of the need for so much additional discovery, since the only open issue on the defamation claim seems to be damages.  Miles's email itself provides evidence of the statement and publication to

a third party.  Damages will depend on [plaintiff] Naylor's testimony and perhaps evidence from

a few other sources, such as Naylor's family and friends, or Streeter [one of defendant's

clients].")  Ms. Giuffre has provided the calculations evidencing how she arrived at her damage

figures and has provided a myriad of documents upon which she also will rely in proving

damages.  This includes supporting documents showing average medical expenses computed by

her average life expectancy.  "'[N]on-economic damages based on pain and suffering ... are

generally not amenable to the type of disclosures contemplated by Rule 26(a)(1)(A)(iii).'"

*Scheel v. Harris,* No. CIV.A. 3:11-17-DCR, 2012 WL 3879279, at *7 (E.D. Ky. Sept. 6, 2012)

(holding that plaintiff's failure to disclose a number or calculation for such damages was

substantially justified).

## IV.   THIS COURT SHOULD NOT STRIKE MS. GIUFFRE'S CLAIMS FOR MEDICAL AND EMOTIONAL DISTRESS DAMAGES

Defendant cites four cases in support of her request for this Court to strike her claims for

medical and emotional distress damages, and each one of them militates against any such relief

being awarded in this case.  In the first, *Nittolo v. Brand,* sanctions were awarded in a personal

injury action because, *inter alia,* the plaintiff went to his physician and took away his medical

records before defendant had a chance to use the court-ordered release to access them, and the

Court found the plaintiff lied under oath about taking away the records.  96 F.R.D. 672, 673

(S.D.N.Y.1983).  By contrast, Ms. Giuffre has signed every medical release form requested by

Defendant and provided all medical records that they yielded.

Defendant's second case is equally inapposite.  In *Skywark v. Isaacson,* Court found that

the plaintiff "began his pattern of lying about at least three matters of extreme significance to his

claim for damages;" lied to his experts and lied under oath; and "never provided defendants with

the promised [medical release] authorizations."  1999 WL 1489038 at *3, *5, *11 (S.D.N.Y. Oct.

21

14, 1999).  The facts could not be more dissimilar to the case at hand, where Ms. Giuffre has provided truthful testimony regarding her medical history and has executed all medical releases.

Defendant's third case continues in the same pattern.  In *In re Consol. RNC Cases*, "all Plaintiffs either expressly refused to provide mental health treatment records or simply failed to provide such records during the course of discovery."  2009 WL 130178, at *2 (S.D.N.Y. Jan. 8, 2009).  Defendant's fourth case is similarly inapposite by Defendant's own description, turning on failure to provide medical releases.  (Mtn. at 19).

Importantly, Defendant represents to the Court that she seeks the "sanction of striking the claim or precluding evidence only on the damages that relate to the withheld documents and information."  (Mtn. at 19).  This is confusing for two reasons. First, Ms. Giuffre has provided information about the providers that she has knowledge of and has provided releases for their medical records, so the sanction she seeks could not apply to any of the providers in Defendant's brief. Second, there are no "withheld documents."  Ms. Giuffre has not withheld any medical records, and, indeed, has authorized the release of all records sought by Defendant.  Accordingly, there are no "withheld records" upon which sanctions could be applied. And, again, there has been no violation of this Court's Order.

## CONCLUSION

Since filing the instant motion for sanctions, two other witnesses - witnesses subpoenaed by Defendant herself in order to mount her defense - have given testimony to support Ms. Giuffre. Most recently, Defendant's witness, ███████████, testified he witnessed Defendant

22

escort young girls he brought over to Epstein's home to Epstein for sex acts, and testified that Defendant called him on the phone, asking him to bring girls over to Epstein's house.[15]



Accordingly, at this stage in discovery, it is not just the flight logs showing Defendant flying with Epstein and Ms. Giuffre over twenty times when she was a minor; it is not just the message pads from law enforcement's trash pulls that show Defendant arranging to have an underage girl come over to Epstein's house for "training;" it is not just the police report; it is not just the photographs of Defendant and other men with Ms. Giuffre when she was a minor.

Now, there is actual, live testimonial evidence that Defendant was a procurer of young girls for sex with Jeffrey Epstein, with whom she shared a home and a life, thus validating Ms. Giuffre's claims.  Therefore, this baseless motion for sanctions is more a reflection of the

---

[15] *See* McCawley Decl. at Exhibit 9, Excerpts from the June 24, 2016 *ROUGH* Deposition Transcript for the Deposition of ▮▮▮▮▮▮▮▮.

abundant testimonial evidence condemning Defendant than any type of imagined discovery

violation on behalf of Ms. Giuffre.

     Ms. Giuffre respectfully requests that it be denied in its entirety.


Dated:  June 28, 2016.

                            Respectfully Submitted,

                            BOIES, SCHILLER & FLEXNER LLP

                 By:  /s/ Sigrid McCawley
                     Sigrid McCawley (Pro Hac Vice)
                     Meredith Schultz (Pro Hac Vice)
                     Boies Schiller & Flexner LLP
                     401 E. Las Olas Blvd., Suite 1200
                     Ft. Lauderdale, FL 33301
                     (954) 356-0011

                     David Boies
                     Boies Schiller & Flexner LLP
                     333 Main Street
                     Armonk, NY 10504

                     Bradley J. Edwards (Pro Hac Vice)
                     FARMER, JAFFE, WEISSING,
                     EDWARDS, FISTOS & LEHRMAN, P.L.
                     425 North Andrews Avenue, Suite 2
                     Fort Lauderdale, Florida 33301
                     (954) 524-2820

                     Paul G. Cassell (Pro Hac Vice)
                     S.J. Quinney College of Law
                     University of Utah
                     383 University St.
                     Salt Lake City, UT 84112
                     (801) 585-5202[16]

---

[16] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the 28th day of June, 2016, I served the attached document

via Email to the following counsel of record.

Laura A. Menninger, Esq.
Jeffrey Pagliuca, Esq.
HADDON, MORGAN & FOREMAN, P.C.
150 East 10<u>th</u> Avenue
Denver, Colorado 80203
Tel: (303) 831-7364
Fax: (303) 832-2628
Email: <u>lmenninger@hmflaw.com</u>
        <u>jpagliuca@hmflaw.com</u>

<u>/s/ Sigrid S. McCawley</u>
        Sigrid S. McCawley

26