Exhibit 3

(File Under Seal)

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

VIRGINIA L. GIUFFRE,

      Plaintiff,

v.

GHISLAINE MAXWELL,

      Defendant.

-------------------------------------------------X

15-cv-07433-RWS

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW IN
RESPONSE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION
OF DOCUMENTS SUBJECT TO IMPROPER OBJECTIONS**

Laura A. Menninger
HADDON, MORGAN, AND FOREMAN, P.C.
East 10th Avenue
Denver, CO 80203
303.831.7364

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.    PLAINTIFF'S CHOSEN RELEVANT PERIOD FOR DISCOVERY IS GROSSLY

OVERBROAD AND NOT REASONABLY RELATED TO HER CLAIM........................ 3

II.    MS. MAXWELL'S SPECIFIC OBJECTIONS ARE PROPER ............................................ 4

III.    EACH OF MS. MAXWELL'S OBJECTIONS IS APPROPRIATE.................................... 6

IV.    PLAINTIFF'S FAILURE TO CONFER WITH MS. MAXWELL PRIOR TO FILING

HER MOTIONS TO COMPEL IS DISPOSITIVE ........................................................ 13

## TABLE OF AUTHORITIES

*Avante Int'l Tech., Inc. v. Hart Intercivic, Inc.,* No. CIV. 07-169-DRH, 2008 WL 2074093 ........ 5

*Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 665 (D. Kan. 1999) ...... 5

*Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 273-74 (S.D.N.Y. 1999) .......... 2

*Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1520 (10th Cir.1995) ........................................ 2

*Hardrick v. Legal Services Corp.,* 96 F.R.D. 617, 618 (D.D.C.1983) .......................................... 2

*In re Urethane Antitrust Litig.,* No. 04-MD-1616-JWL-DJW, 2008 WL 110896 ........................ 5

*McGee v. Hayes,* 43 Fed.Appx. 214, 217 (10th Cir. 2002) ........................................................... 2

*Meeker v. Life Care Ctrs. of Am.,* No. 14-CV-02101-WYD- NYW, 2015 WL 4400533 ............. 4

*Parsons v. Jefferson-Pilot Corp.,* 141 F.R.D. 408, 412 (M.D.N.C. 1992) .................................... 5

*Piacenti v. Gen. Motors Corp.,* 173 F.R.D. 221, 223 (N.D.Il1.1997) ........................................... 3

*Roda Drilling Co. v. Siegal,* No. 07-CV-400-GFK-FHM, 2008 WL 2234652 ............................. 5

*Tottenham v. Trans World Gaming Corp.,* No. 00 Civ. 7697 (WK), 2002 WL 1967023 ............. 2

*Zenith Electronics Corp. v. Exzec, Inc.,* No. 93 C 041, 1998 WL 9181 ........................................ 3

# INTRODUCTION[1]

Plaintiff initiated this action purportedly in reaction to statements attributed to Ghislane Maxwell on January 3, and 4, 2015.  The first of the two statements, according to Plaintiff's complaint, was issued by Ross Gow in the United Kingdom.  The second was made by Ms. Maxwell in New York when she was accosted by reporters on the street.  Both statements were brief, contained no factual content, and can best be described as general denials of allegations made by Plaintiff against Ms. Maxwell, to wit, that Ms. Maxwell "assisted" and participated in sexual abuse of the Plaintiff between 1999 and 2002.

Plaintiff does not claim that any sexual abuse occurred after 2002 or that she had any contact with Ms. Maxwell after 2002.  Indeed, according to Plaintiff, in 2002 she relocated, first to Thailand and then to Australia, where she married and started a family.  Given that she has been thousands of miles away from the United States for more than a decade it is unlikely that Plaintiff has any personal knowledge about events involving Jeffrey Epstein after she left the country and broke off all contact with both Mr. Epstein and Ms. Maxwell.

It would seem, then, that this lawsuit presents one relatively simple question:  is Plaintiff's claim that she was sexually abused by Jeffrey Epstein between 1999 and 2002 **"with the assistance and participation of"** Ms. Maxwell true?

Discovery that might be relevant to this relatively simple question could, theoretically, include the names of people that observed the Plaintiff from 1999 to 2002; records establishing the Plaintiff's whereabouts between 1999 and 2002; communications about the Plaintiff from

---

[1] Ms. Maxwell previously submitted a joint response (Doc. #42) to Plaintiff's Motions to Compel in which she argues that Plaintiff's failure to confer prior to filing her motions is, alone, grounds for this Court to deny her Motions.  If the Court is inclined, however, to decide Plaintiff's Motions on the merits, Ms. Maxwell hereby submits a response to the merits of Plaintiff's Motion to Compel Production of Documents Subject to Improper Objections.  This response is timely to Plaintiff's Motion, filed electronically on February 26, 2016.

1999 to 2002; and where Ms. Maxwell was located in relation to the Plaintiff during this time frame.  Plaintiff, however, does not seem to be interested in her claim.  Rather, Plaintiff's pleadings are filled with other, more newsworthy and salacious allegations about which Plaintiff has no personal knowledge.  And, because her core claim has no merit, Plaintiff like a remora, has repeatedly attempted to attach herself to these events that purportedly occurred while she was on another continent raising a family.

Federal Rule of Civil Procedure 26(b)(1) provides, in relevant part, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party …."

Although the scope of discovery is deliberately broad, a Court is not "required to permit plaintiff to engage in a `fishing expedition' in the hope of supporting his claim." *McGee v. Hayes,* 43 Fed.Appx. 214, 217 (10th Cir. 2002) (unpublished opinion); *see Tottenham v. Trans World Gaming Corp.,* No. 00 Civ. 7697 (WK), 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) ("Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support") (quotations omitted); *Hardrick v. Legal Services Corp.,* 96 F.R.D. 617, 618 (D.D.C.1983) (courts should remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests") (quotation omitted). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1520 (10th Cir.1995) (quotation omitted); *see also Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 273-74 (S.D.N.Y. 1999) (J. Sweet) ("[W]hile discovery rules are broad, they do not permit discovery of matters that are [not] relevant to the

2

issues in the case…"). Although relevance in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Zenith Electronics Corp. v. Exzec, Inc.,* No. 93 C 041, 1998 WL 9181, at *2 (N.D.Ill.1998) (quoting *Piacenti v. Gen. Motors Corp.,* 173 F.R.D. 221, 223 (N.D.Ill.1997)).  Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." *Id.* (quotation omitted).

## ARGUMENT

## I.   PLAINTIFF'S CHOSEN RELEVANT PERIOD FOR DISCOVERY IS GROSSLY OVERBROAD AND NOT REASONABLY RELATED TO HER CLAIM

Plaintiff has not limited the temporal scope of her discovery requests.  Instead, she demands production of various documents (or documents related to those documents) for the last 17 years.  Given the nature of the claim, the time period chosen by the Plaintiff is grossly overbroad.

As instructed by Fed. R. Civ. P. 34, Ms. Maxwell objected to the 17-year time period and limited the requests to a more reasonable time frame: the period during which Plaintiff claims to have been abused and one month prior to the purported defamation.  Plaintiff has offered no plausible explanation for her expansive time frame as discussed below.

The gist of Plaintiff's temporal relevance argument is that, according to Plaintiff, Ms. Maxwell communicated or associated with Mr. Epstein after 2002 up to 2015. And, according to Plaintiff, Mr. Epstein was suspected of or committed a sex crime after 2002.  Therefore, says Plaintiff, everything in that time frame is relevant.  This is nonsense.  Plaintiff, given her absence from the country, cannot argue that she was victimized during this time frame.  Ms. Maxwell has never been charged with nor accused of any crime by a prosecuting body.  Ms. Maxwell has

3

never been identified as an accomplice to any crime allegedly committed by Mr. Epstein; and

Ms. Maxwell has never been the subject of a civil lawsuit for sexual abuse under any theory of

liability.

The relevant issue, as framed by Plaintiff's complaint, is did Ms. Maxwell assist or

participate in Plaintiff's alleged sexual abuse by Mr. Epstein.  General phone records, flight logs,

or other documents having nothing to do with Plaintiff, who was in Australia, are simply too

tangential and remote to be relevant even under the most broad definitions of relevance.

Accordingly, Ms. Maxwell's objection is well founded and should be sustained by the Court.

## II.    MS. MAXWELL'S SPECIFIC OBJECTIONS ARE PROPER

Ms. Maxwell notes that all of Plaintiff's requests are fatally flawed as a result of her use

of the phrases "all documents relating to" or "relating to" as part of her requests for production

of documents.  *See, e.g.,* Requests Nos. 1, 3, 6,7, 8, 10, 11, 17, 22, 23, 24, 32 and 33.  Where the

phrase "relating to" is not employed, Plaintiff uses equally obtuse synonyms such as "reflecting"

(Requests Nos. 34, 37) or "associated with." (Request No. 21).

"Relate" is a broad term. *See, e.g.,* WEBSTER'S NEW WORLD DICTIONARY 1198 (2d Coll.

Ed. 1986) (defining "relate" to mean, *inter alia,* "to connect or associate, as in thought or

meaning; show as having to do with," "to have some connection or relation (to)," and "to have

reference (to)").   Courts have condemned the use of "related to" as overbroad and have refused

to compel a responding party to answer discovery requests using the term. *See, e.g., Meeker v.*

*Life Care Ctrs. of Am.,* No. 14-CV-02101-WYD- NYW, 2015 WL 4400533, at *4 (D. Colo. July

20, 2015) (denying motion to compel response to interrogatory that required identification of all

documents that "relate to" drills or safety security training exercises "over a decade long span,"

and holding that interrogatory was "facially overbroad, and potentially sweep[s] in incidents that

are not proximate in location, time, and may not even be remotely of the "same type"); *Avante*

4

*Int'l Tech., Inc. v. Hart Intercivic, Inc.,* No. CIV. 07-169-DRH, 2008 WL 2074093, at *3 (S.D. Ill. May 14, 2008) ("the court finds that the request to identify 'all documents that refer or relate to each such person's contribution' to be overbroad and unduly burdensome, and sustains the objection to that part of the interrogatory"); *In re Urethane Antitrust Litig.,* No. 04-MD-1616-JWL-DJW, 2008 WL 110896, at *1 (D. Kan. Jan. 8, 2008) (holding that a discovery request is overly broad and unduly burdensome on its face if it uses an "omnibus term" such as "relating to," because "such broad language 'make[s] arduous the task of deciding which of numerous documents may conceivably fall within its scope'"); *Roda Drilling Co. v. Siegal,* No. 07-CV-400-GFK-FHM, 2008 WL 2234652, at *2 (N.D. Okla. May 29, 2008) (finding that "many of the parties' requests for production of documents are overbroad, as they request 'all documents' relating to or concerning a subject"), *reconsideration denied in part*, 2008 WL 3892067 (N.D. Okla. Aug. 14, 2008); *Cotracom Commodity Trading Co. v. Seaboard Corp*., 189 F.R.D. 655, 665 (D. Kan. 1999) (holding that challenged discovery request was facially overbroad due to its use of the "omnibus phrase 'relating to'"); *Parsons v. Jefferson-Pilot Corp.,* 141 F.R.D. 408, 412 (M.D.N.C. 1992) ("[b]road and undirected requests for all documents which relate in any way to the complaint are regularly stricken as too ambiguous").

And, Plaintiff has expanded the dictionary definition of "relate" in her definition section to make any attempt at deciding what documents might fall within the requests impossible. Because all of the requests suffer from this fatal defect the court should sustain the objection and deny the motion to compel.  However, there is more.

**III.      EACH OF MS. MAXWELL'S OBJECTIONS IS APPROPRIATE**

1.      Request No. 1:  All documents relating to communications with Jeffrey Epstein from 1999-Present.

This request unabashedly seeks any record of 17 years of "communications" with Jeffrey Epstein.  If, for example, Ms. Maxwell wrote a note to herself that a mutual friend discussed a recipe for rice pudding with Mr. Epstein in 2013 this "document" would be subject to production.  The request is not limited by subject matter and therefore encompasses everything.  This is a classic fishing expedition calculated to annoy, and harass  Ms. Maxwell.

The rational for the request is particularly disturbing:  Plaintiff, with no evidence other than her self-serving and contradictory statements states:  " Communications with convicted sex offender Jeffrey Epstein for whom Defendant Maxwell is alleged to have assisted with his sexual trafficking activities are of the highest relevance in this case and must be produced."  (Pl.'s M. Compel at 9).  That's it.  No evidence, just hyperbole.  The request is not limited to communications about trafficking or even communications related to the Plaintiff.  This stunningly overbroad request fails and Ms. Maxwell's objection should be sustained.

2.      Request No. 3:  All documents relating to communications with Andrew Albert Christian Edward, Duke of York (a.k.a  Prince Andrew) from 1999-present.

Even more tangential than Request No.  1, this request ask for "all documents relating to communications" for 17 years with Prince Andrew.  Again, the request is not limited by any subject matter or person.  It is not limited to communications about the Plaintiff, it is not even limited to communications about females.  The purported justification for this overbroad request is Plaintiff's unsupported claim that "Maxwell is alleged [by Plaintiff and no one else] to have trafficked Ms. Giuffre to Prince Andrew when she was a minor."  (Pl's M. Compel at 10).  Plaintiff's unsatisfactory explanation for this request is that it may, uncover "communications between them regarding her trafficking" and "possible" communications regarding other females

or other individuals "involved with this activity". (*Id.*)   The request, however, as propounded, asks for much more than is rationally related to that explanation.   The use of the word "possible" reveals that this request is a classic, prohibited fishing expedition.   The request is overbroad and Ms. Maxwell's objection should be sustained.

      3.      Request No. 6:  All documents relating to communications with any of the following individuals from 1999 -the present:  Emmy Taylor, Sarah Kellen, Eva Dubin, Glen Dubin, Jean Luc Brunel,  and Nadia Marcinkova.

This request is also not limited by subject matter or person and is, actually, six separate requests for production of documents.   As support for these overbroad requests Plaintiff attached a deposition transcript from a separate litigation to which Ms. Maxwell was not a party in which the witness, Sarah Kellen, asserts her right to remain silent.  (*Id.* at 11).   Plaintiff neglects to disclose that Ms. Kellen asserted her Fifth Amendment right to every question asked of the witness.   She refused to answer basic questions such as her then current address (3.24.2010 Tr. at 10); and what company she worked for as a model (*id.* at 97).   There is no inference to be drawn from the, apparently unchallenged, assertions of privilege in an action that Ms. Maxwell was not a party and did not participate.   There is no legal authority to support the claim that Ms. Kellen's assertion of a privilege somehow spills over to become evidence relating to Ms. Maxwell.

Plaintiff also attached partial documents purporting to be flight logs and phone records that, according to Plaintiff, establish communication with some of the listed individuals.   Again, Ms. Maxwell's reaction to this is "so what" because there is no nexus between any of this alleged evidence and Plaintiff's claims.   Like the other requests the question is not reasonably targeted to obtain communications about the Plaintiff or even "sex trafficking."

7

4.   Request No. 7:  All video tapes, audio tapes, photographs or other print or electronic media relating to females under the age of 18 from the period of 1999-present.

This request appears to cover books, DVDs, CDs, personal photographs and every other type of media that might "relate to" females under the age of 18.  To respond to this request Plaintiff would apparently have Ms. Maxwell comb through her library to find literature "relating to" girls.  A copy of the Nancy Drew series would be responsive to this request.  Photographs of Ms. Maxwell as a child would be included.  Any CD referencing a "girl" might be responsive.  The list goes on and on.  And, because Plaintiff failed to confer about this request before filing her motion to compel her self-imposed limitations are too little, too late.  This request, as written is patently overbroad and the objection should be sustained.

Further, the attached testimony from Mr. Rodriguez, again occurring in a proceeding to which Ms. Maxwell was not a party, lacks foundation and credibility.  (*Id.* at 12)  It also, apparently, has nothing to do with the Plaintiff.

5.   Request No. 8 :  All documents relating to your travel from the period of 1999-present, including but not limited to, any travel on Jeffrey Epstein's planes, commercial flights, helicopters, passport records, records indicating passengers traveling with you, hotel records, and credit card receipts. ; and

Request No.  33:  All travel records between 1999 and the present reflecting your presence in: (a) Palm Beach Florida or immediately surrounding areas; (b) 9 E. 71st Street, New York , NY 10021; (c) New Mexico; (d) U.S. Virgin islands; (e) any jet or aircraft owned or controlled by Jeffrey Epstein.

Request Number 33 appears to be subsumed by the globally inclusive, unrestricted Request Number 8.  Both requests fail in many ways.  First, Plaintiff was living in another continent for the vast majority of the time covered by these requests.  Plaintiff, by her own admission, was not traveling anywhere with Ms. Maxwell or Mr. Epstein after 2002.  It would be reasonable, then, to assume that none of the requested records would establish any nexus

between Ms. Maxwell's post-2002 travel and the events at issue in Plaintiff's claim.  If Plaintiff wanted records establishing her travel with Mr. Epstein or Ms. Maxwell that is what she should have asked for.  Instead, she asked for every piece of information relating to Ms. Maxwell's travel by planes, trains, automobiles, helicopters, boats, horses and bicycles.

Read literally, Request Number 8 would require the production of 17 years of receipts for the purchase of gasoline at the neighborhood gas station, taxi receipts, lunch receipts, etc. for 17 years. The only records not covered would be those relating to Ms. Maxwell's residence, which unfortunately, is covered by another overbroad request, Request Number 34.  Although slightly more limited, Request Number 33 remains impermissibly overbroad.  Again, Plaintiff was not in the northern hemisphere after 2002 so could not have been in these places.  Further, the phrases "immediately surrounding areas" "travel records" are impermissibly vague.

6.      Request No. 10:  All documents relating to payments made from Jeffrey Epstein or any related entity to you from 1999 – present, including payments for work performed, gifts, real estate purchases, living expenses, and payments to your charitable endeavors including the TerraMar project.

Request Number 10 is overbroad because it asks for, essentially, any document that relates to anything of value, no matter how small, given from Mr. Epstein to Ms. Maxwell (or their respective related entities) for 17 years.  It is not targeted to any person, event, or job.  The request could be interpreted in many ways and could include any financial, banking or accounting record compiled over a 17-year time frame.  As such, the request fails and Ms. Maxwell's objection should be sustained.

7.      Request No. 11:  All documents relating to or describing any work you
        performed with Jeffrey Epstein, or any affiliated entity from 1999-present.

Request Number 11 is unintelligible.  Ms. Maxwell does not know what this request

means and should not have to guess.  Because the request is too vague to respond to the

objection should be sustained.

8.      Request No. 15:  All video tapes, audio tapes, photographs or any other print or
        electronic media taken at a time when you were in Jeffrey Epstein's company or
        inside any of his residences or aircraft.

This request is another obvious fishing expedition.  It is not limited by person, place or

time and apparently includes pre-1999 material.  According to Plaintiff, she hopes that these

records will contain the image of "other underage girls or trafficked women," which, according

to Plaintiff "go to the claim in this case". (Pl's M. Compel at 17).  Again, Plaintiff was not,

according to her complaint, involved with Mr. Epstein before 1999 or after 2002.  Plaintiff does

not articulate how this material might "go to the claim in this case" and, accordingly, Ms.

Maxwell's objection should be sustained.

9.      Request No. 17:  All documents relating to communications with you and Ross
        Gow from 2005 – present.

For the reasons stated repeatedly above, this request is also overly broad as there are no

limitations for subject matter or person.  Further, Plaintiff has offered no explanation as to the

seemingly random time period of 2005 – present.

More importantly, Ms. Maxwell has objected to this request on the grounds that it seeks

documents protected by the attorney/client privilege and/or the work product doctrine.  As

discussed in her Supplemental Memorandum of Law in Response to Plaintiff's Motion to

Compel Documents Subject to Improper Privilege, Ms. Maxwell's withholding of these

documents as privileged is proper.

10

10.     Request No. 21: All telephone records associated with you including cell phone records from 1999 – present.

Request No. 22:  All documents relating to calendars, schedules or appointments for you from 1999 – present.

Request No. 23:  All documents relating to calendars, schedules or appointments for Jeffrey Epstein from 1999 – present.

Request No. 24:  All documents relating to contact lists, phone lists or address books for you or Jeffrey Epstein from 1999 – present.

These requests seek "all documents" "associated" with Ms. Maxwell's phone records and "all documents" "relating to" "the schedules and address books" of Ms. Maxwell and Jeffrey Epstein for 17 years.  Plaintiff, again, offers no coherent explanation as to how any of these records might relate to her claim, in this case, **that she was defamed.**  Because of the excessive scope of the requests the objections should be sustained.

11.     Request No. 32 :  All documents related to communications with or interaction with Alan Dershowitz from 1999 – present.

Here, Plaintiff is asking for information about communications with Alan Dershowitz for 17 years.  Plaintiff's only argument in support of this request is "Maxwell's communications with Dershowitz are directly relevant to the claim." (Pl's M. Compel at 22).   Perhaps Ms. Maxwell's communications with Mr. Dershowitz about Plaintiff may be discoverable and even relevant.  Any and all documents "relating to communications" are not.  Accordingly, the objection should be sustained.

12.     Request No. 34:  All documents reflecting your ownership or control of property in London between the years 1999 and 2002.

Whether Ms. Maxwell owned or controlled property in London between 1999 and 2002 is not relevant to any issue in this case.  Plaintiff claims that a photograph of her when she was 17 somehow establishes she was "trafficked".  She offers no actual explanation, however, for

11

how "documents reflecting" ownership or control of any "London" property is relevant or discoverable.  The request is overbroad, not relevant, and the objection should be sustained.

13.    Request No. 37: All documents reflecting communications you have had with Bill or Hillary Clinton (or persons acting on their behalf), including all communications

Whether or not Ms. Maxwell communicated with any member of the Clinton family is not relevant to any issue in this case.  Again, Plaintiff asks for "all documents reflecting communications" for a 17-year time period.  The only support for the request is Plaintiff's unsubstantiated claim that in an unrelated action Ms. Maxwell did not attend a deposition scheduled for July 1, 2010 because she had to attend to her mother.  However, according to Plaintiff, Ms. Maxwell, 30 days later, attended the wedding of Chelsea Clinton.  Taking care of an elderly mother in England and attending a wedding ceremony are not mutually exclusive events.  This, again, has nothing to do with any issue in this case and the objection should be sustained.

13.    Request No. 39: All documents reflecting training to fly a helicopter or experience flying a helicopter, including any records concerning your operation of a helicopter in the U.S. Virgin Islands.

Seventeen years of "all documents reflecting training to fly a helicopter " are not relevant to any issue in this case.  Plaintiff does not allege that Ms. Maxwell flew her to a private island by helicopter; she does not allege that she has personal knowledge of someone actually being flown by Ms. Maxwell to a private island for the purpose of "sexual trafficking of underage girls."   She simply demands 17 years of documents because she says they are relevant.  The request is overbroad and not relevant and Ms. Maxwell's objection should be sustained.

IV.    **PLAINTIFF'S FAILURE TO CONFER WITH MS. MAXWELL PRIOR TO FILING HER MOTIONS TO COMPEL IS DISPOSITIVE**

It is likely that a conferral could have minimized many of the issues described above. Accordingly in addition to the substantive problems with the requests, detailed above, Plaintiff's Motions to Compel should be denied for the reasons articulated in Ms. Maxwell's separate response regarding the lack of any conferral (Doc. # 42) incorporated by reference.

Dated:  March 7, 2016

Respectfully submitted,

*/s/ Laura A. Menninger*
Laura A. Menninger (LM-1374)
HADDON, MORGAN AND FOREMAN, P.C.
East 10th Avenue
Denver, CO 80203
Phone:  303.831.7364
Fax:      303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*

CERTIFICATE OF SERVICE

I certify that on March 7, 2016, I electronically filed this *Defendant Ghislaine Maxwell's Supplemental Memorandum of Law in Opposition to Plaintiff's Motion to Compel the Production of Documents Subject to Improper Objections* with the Clerk of Court using the CM/ECF system which will send notification to all counsel of record including the following:

Sigrid S. McCawley
Boies, Schiller & Flexner, LLP
East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com

                                               */s/ Brenda Rodriguez*