UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

VIRGINIA L. GIUFFRE,

    Plaintiff,

v.

GHISLAINE MAXWELL,

    Defendant.

15-cv-07433-RWS

------------------------------------------------X

**DEFENDANT'S SUBMISSION REGARDING "SEARCH TERMS" AND NOTICE OF COMPLIANCE WITH COURT ORDER <u>CONCERNING FORENSIC EXAMINATION OF DEVICES</u>**

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
East 10th Avenue
Denver, CO 80203
303.831.7364

Defendant Ghislaine Maxwell ("Ms. Maxwell") respectfully files the following Submission Concerning Search Terms and Notice of Compliance with Court Order regarding Forensic Examination of Devices, as follows:

## INTRODUCTION

Defense counsel has already run the amended list of search terms proposed by Plaintiff on each applicable device and as to each email account to which Ms. Maxwell has access. Based on those searches, not one single additional responsive and non-privileged document has been identified. Ms. Maxwell's original search for responsive documents was complete at the time it was conducted in February 2016. The recent forensic imaging and searches have merely confirmed as much. Plaintiff has sent defense counsel, this Court and Ms. Maxwell on a costly, time-consuming and burdensome wild goose chase that has yielded not so much as a single goose feather. It is time to call off the hunt.

## Submission Concerning Search Terms

### The Requests for Production

Ms. Maxwell served Responses and Objections to Plaintiff's First Discovery Requests on February 8, 2016. Those requests sought, *inter alia*:

- all communications with thirteen specific witnesses, namely Jeffrey Epstein, Virginia Roberts, ████████████, Alan Dershowitz, ████████ Glenn and Eva Dubin, ████████████ ████████████ (RFPs 1, 2, 3, 4, 6, 17, 32 and 37)

- documents relating to various topics include massages (RFP 5 and 29), travel records (RFPs 8, 9, 14 and 39), a civil deposition in 2010 (RFP 19), and Ms. Maxwell's professional affiliation with Jeffrey Epstein (RFPs 10, 11, 12, 15, 20, 23, 24, 30);

- documents relating to any contact between Ms. Maxwell and law enforcement (RFP 13 and 38);

- photos of females under the age of 18 (RFP 7), of any time inside a home or aircraft of Epstein (RFP 15), of Plaintiff (RFP 18);

1

- documents relating otherwise to Plaintiff including her hospital records (RFP 25), passport (RFP 26), monetary payments made to her (RFP 27), her employment (RFP 28), and any person to whom she gave a massage (RFP 29).

Ms. Maxwell conducted a thorough search of her email systems and her devices prior to her production on February 8, 2016. All documents identified as responsive were reviewed by counsel and either produced or placed on a privilege log. The First Responses were the subject of litigation in March and April 2016. This Court limited the scope of a number of the requests (*see* Transcript of March 17, 2016 and Order of April 15, 2016 (Doc. # 098), and Ms. Maxwell later produced, pursuant to this Court's Order, documents that originally had been withheld pursuant to privilege. As of April 18, Ms. Maxwell's production of documents responsive to Plaintiff's First Request for Production of Documents was complete.

Plaintiff served a Second set of Requests for Production on April 14. Those Requests primarily concerned police reports about Plaintiff's various contacts with law enforcement and how the defense was able to obtain those publicly-available documents (RFP's 1-5, 19). The Second Requests also sought:

- Joint Defense Agreements with Mr. Epstein and Mr. Dershowitz (RFPs 6, 7, 9 and 10) and communications with Mr. Dershowitz's counsel (RFP 11);
- "all documents concerning Virginia Giuffre" (RFP 12);
- any contracts with or agreement for legal fees to be paid by Epstein (RFP 13-15);
- documents concerning public statements made by Ms. Maxwell (RFP 17-18).

Again, Ms. Maxwell and her counsel conducted a thorough search and produced any responsive non-privileged documents.

**To date, Ms. Maxwell has produced 1,130 pages of documents.** Litigation concerning whether the searches conducted were thorough enough then ensued leading to the instant submission.

2

Search Terms

On June 20, 2016, this Court Ordered

Defendant is ordered to collect all ESI by imaging her computers and collecting all email and text messages on any devices in Defendant's possession or to which she has access that Defendant used between the period of 2002 to present. Defendant is further directed to run *mutually- agreed upon search terms related to Plaintiff's requests for production* over the aforementioned ESI and produce responsive documents within 21 days of distribution of this opinion.

On June 30, 2016, Plaintiff's counsel provided a list of 368 search terms. See Menninger Decl. Ex. A. Plaintiff's proposal included astoundingly broad terms, to wit:

- "Terramar" -- both the name of Ms. Maxwell's non-profit and ████████ ████████
- ████████
- ████████
- "max*" – part of Ms. Maxwell's last name, as well as all of her paternal relatives' names.
- "GM" -- Ms. Maxwell's initials.
- common words such as "hotel," suite, villa, "bed," "bath," and "lingerie."

Plaintiff's originally proposed search terms would literally hit on every single email from either Ms. Maxwell's personal or her business email addresses, as well as every document related to the non-profit, The Terramar Project, that Ms. Maxwell founded and runs.

Plaintiff's originally proposed terms also failed to relate to the actual discovery requests upon which they were to be based. For search terms 124-341, Plaintiff took her own Rule 26 disclosures, separated the first and last names of each witness she had identified, and asked that they be searched individually (along with "wild card character searches"), even though, as described above there were only 13 specific witnesses for whom Plaintiff had actually sought all communications. For example, Plaintiff wanted the names ████████

3

searched yet there is no RFP related to those names, nor the vast majority of the other listed first and surnames.[1]

By correspondence of July 14, Ms. Maxwell's counsel specifically identified the problematic terms, agreed to a limited list, and requested a substantive conferral call on this issue. *See* Menninger Decl., Ex. B. In that correspondence, Defendant's counsel gave specific reasons for the objection to a number of the terms that were problematic in that they called for the search of common words, names or phrases that would likely result pulling documents completely unrelated to this case. *Id.* Counsel also suggested proposed limiting terms with respect to names of individuals to appropriately limit the scope and target the search. *Id.* (suggesting limitations on searches of names to "make some effort to match them to actual people who have some relationship to this case (like first name /3 last name or some parts thereof)").

After explaining the appropriate and well-reasoned objections to certain terms, defense Counsel agreed to search *over 110 of Plaintiff's proposed search terms*, despite the fact that many of those terms were objectionable. *Id.* ("Although many of your other search terms are a

---

[1] On or about June 27, 2016, Plaintiff's counsel Bradley Edwards and Defendant's counsel Jeffery Pagliuca held a telephone meet and confer conference on a number of issues. Among the issues raised by Mr. Pagliuca was the overbreadth of the proposed search terms. The discussion was left that Mr. Edwards would talk with Plaintiff's team of lawyers to narrow the scope, as Mr. Pagliuca understood it. Thus, contrary to the representation in the Motion, Ms. Maxwell's counsel *did inform* Plaintiff's counsel of their disagreement with the proposed search terms. As well, Mr. Pagliuca informed Mr. Edwards that because he, Laura Menninger and Ms. Maxwell were all traveling on vacations in the weeks before and after the 4th of July holiday, that they would need additional time to comply with the Court's Order and provide the production. Mr. Pagliuca and Mr. Edwards agreed that productions would be made prior to Ms. Maxwell's second deposition, scheduled by agreement on July 22, 2016.
  Based on this discussion, defense counsel was blindsided when they received the Motion for Sanctions, anticipating that they would soon be receiving a substantially limited and modified list of proposed search terms to permit search and production prior to the July 22 deposition. In the interim, all of Ms. Maxwell's electronic devices had been sent for imaging.
  Defense counsel corresponded with Plaintiff's counsel upon receipt of the Motion for Sanctions, requesting that it be withdrawn (without prejudice), pending completion of conferral on the search terms as required by this Court's specific and general orders on conferral. It appears there was a miscommunication between Plaintiff's own counsel on this issue, as well as between counsel for both of the parties; but, it was clearly just that – a miscommunication and misunderstanding on where things stood.

4

tremendous stretch, I can agree to them in the interest of getting the search done on a timely basis.").[2]  Having heard nothing from Plaintiff's counsel by the close of business on July 15, 2016, Ms. Maxwell's counsel ran the 110 of Plaintiff's proposed terms on the forensic images of Ms. Maxwell's electronic devices and email accounts, including both ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Because of the breadth of the 110 terms proposed by Plaintiff, the original search resulted in **approximately 9,000 documents** and communications containing one or more term in the content or meta-data.  The volume of the documents is explained by the breadth of the terms searched, resulting in pulling non-relevant, non-responsive information from Ms. Maxwell's electronic devices and emails, including thousands of underwater photos related to Ms. Maxwell's non-profit, the word "passport" due to the fact that the Terramar Project includes an "ocean passport" program, as well as numerous family holiday photos.  All of the documents were reviewed individually by counsel for Ms. Maxwell for responsiveness to Plaintiff's discovery request, pursuant to this Court's Order.  Of those documents, the only responsive documents were either communications between Ms. Maxwell and current counsel or were communications with, or prepared at the request of, Ms. Maxwell's UK Counsel, Philip Barden,

---

[2] Defense counsel specifically requested a telephone conference to discuss any of the other terms, noting that the search would need to proceed over the weekend to permit review and production of any documents prior to Defendant's deposition on July 22, 2016. *Id.* ("***I am available by telephone today and tomorrow to discuss the issues raised herein***.  If I do not hear from you, I will presume that you are in agreement to the remainder of the terms being run on the devices.").  Plaintiff's counsel did not timely respond to the July 14, 2016 letter, the clearly articulated counter-proposed terms (over 110 of the 368 proposed by Plaintiff), or set a time to discuss the articulated objections to other terms.  Instead, on July 18, 2016, Plaintiff's filed a response to the Letter Motion to Strike for Failure to Confer,  inexplicably and inaccurately claiming 1) that defendant is running "secret search terms" and 2) claiming that defendant's counsel refused to confer *despite the clear conferral letter and request for telephone conference.  See July 18, 2016 Letter to the Court from M. Shultz.*

[3] Plaintiff also requested searches of old email accounts of Defendant ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Ms. Maxwell has been able to access the ▮▮▮▮▮▮▮▮▮" account and it contains no responsive documents.  Ms. Maxwell has been unable to access ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and does not recall ever using that account.

5

in anticipation of a potential lawsuit in the United Kingdom. *See* Menninger Decl. at paragraph 8. The documents concerning Mr. Barden have been added to the privilege log. *Id*.

Upon receipt of Plaintiff's Response to the Letter Motion to Strike for Plaintiff's failure to confer, the undersigned reiterated that there were no "secret search terms" and that Plaintiff's own proposed terms were used, as limited. *See* Menninger Decl., Ex. C. Defense counsel also reiterated the request for Court Ordered conferral, again offering times to confer that would permit any additional terms to be run, documents reviewed and production of non-privileged responsive documents (if any) prior to Ms. Maxwell's July 22, 2016 second deposition. *Id*.

Plaintiff's Revised List of Search Terms

Finally, on July 19, 2016, Plaintiff's counsel agreed to a telephone call with the undersigned to discuss the lack of responsive documents to the 110 search terms already run, as well as the remaining objectionable terms and their purported relevance. During the call, Plaintiff's counsel argued that their proposed search terms numbered 124-341 were relevant because they were witness names "related to massages" (RFP 5). That justification was clearly lacking because the terms included names like "Dore Louis," who is a lawyer for witness Johana Sjoberg and whose wife works with Ms. McCawley. They also included Plaintiff's treating physician Karen Kutikoff, Plaintiff's literary agent Jarred Weisfeld, Plaintiff's mother ████ ████ Detective Joe Recarey, Mr. Edwards' law partner Scott Rothstein, and countless other people who would have no knowledge of any massages nor otherwise were related to the discovery requests at issue. *See* Menninger Decl. Ex. A. Moreover, Ms. Maxwell already had run the Plaintiff's proposed terms related to massages, including "massage," "masseuse," "masseur," and "therapy." In effect, Plaintiff proposed search terms sought to expand her discovery requests from communications with a discrete set of individuals to *all communications*

6

with anyone that Plaintiff believed was or might be a witness, although no discovery requests called for such communications.

Consequently, during the conferral call, Plaintiff's counsel agreed to withdraw the vast majority of objectionable terms. She also agreed to supply a list of witnesses who she believes truly might in some way relate to "massages" and submit that to defense counsel. *See* Menninger Decl., Ex. D. Plaintiff thereafter provided an additional 66 terms, all names, which Plaintiff claims she has some reason to believe are "related to massages." Menninger Decl. Ex. E. Ms. Maxwell does not believe that searching these terms is appropriate, because, for example, the names include a journalist (Vicky Ward), Mr. Epstein's elderly secretary, and various business people that form part of Plaintiff's false narrative regarding her "sex trafficking," and searching for names in the absence of a topic (i.e., massages) is well-beyond the actual requests for production.

Nevertheless, Ms. Maxwell did in fact run all of the names proposed by Plaintiff against the forensic images of Ms. Maxwell's computers and her email accounts. The second search yielded 284 additional documents, each of which were reviewed individually by counsel for Ms. Maxwell. Menninger Decl. paragraph 8 and 9. Again, not a single responsive, non-privileged document was located; the vast majority of documents were pleadings from this case.

The complete list of terms run against Ms. Maxwell's electronic devices and email accounts as agreed to by the parties is attached. Menninger Decl., Ex. F. Compliance with the Court's Order to run agreed to terms was completed by July 21, 2016, prior to Ms. Maxwell's second deposition.

7

Other Email Accounts

In addition to her home and work email addresses, Plaintiff also requested that Ms. Maxwell access two other email accounts that Plaintiff believes are associated with Ms. Maxwell, specifically ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

Ms. Maxwell has used the ▇▇▇▇▇▇ account as a "spam account," i.e., an account address to use when registering for retail sales notifications and the like. Nevertheless, undersigned counsel gained access to that account and searched all of the documents contained therein, including in folders for inbox, trash and sent. The email account contained no responsive documents.

Ms. Maxwell does not recall ever using an account with ▇▇▇▇. She has attempted unsuccessfully to access that account. Counsel's own attempts to access the account yields a message: "The email address you entered is not an ▇▇▇▇ email address or ID." Counsel for Ms. Maxwell has no reason to believe that the account exists.

## Conclusion

WHEREFORE, counsel for Ms. Maxwell through a certified forensic examiner has:

a. imaged the hard-drives of Ms. Maxwell's devices;

b. imaged the servers containing emails from Ms. Maxwell's personal and business email accounts;

c. searched those forensic images for the search terms *proposed by Plaintiff* – including 110 from the first list and the additional 66 terms sent on July 19.

Counsel for Ms. Maxwell has reviewed the documents obtained from the searches described above as well as thoroughly searched the email account ▇▇▇▇▇▇▇▇.

No additional responsive, non-privileged documents were identified in that process. An updated privilege log reflecting communications with Mr. Barden has been produced to Plaintiff.

8

Ms. Maxwell hereby respectfully requests that:

i. Plaintiff Virginia Giuffre's Motion for an Adverse Inference Instruction Pursuant to Rule 37(b), (e) and (f), Fed. R. Civ. P., be stricken;

ii. Ms. Maxwell be awarded the costs of engaging the forensic examiner.

Dated: August 1, 2016.

Respectfully submitted,

*/s/ Laura A. Menninger*
Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303.831.7364
Fax: 303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on August 1, 2016, I electronically served this *Defendant's Submission regarding "Search Terms" and Notice of Compliance with Court Order Concerning Forensic Examination of Computer Device* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

J. Stanley Pottinger
49 Twin Lakes Rd.
South Salem, NY 10590
StanPottinger@aol.com

*/s/ Nicole Simmons*
Nicole Simmons