UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                    :

VIRGINIA L. GUIFFRE,               :
                                    :

                Plaintiff,       :          Case No.: 15-cv-7433 (LAP)
                                    :

-against-                           :
                                    :

GHISLAINE MAXWELL,           :
                                    :

                Defendant.      :
                                    :
--------------------------------------------------------x

## <u>MEMORANDUM OF LAW IN SUPPORT OF PROPOSED INTERVENOR TGP COMMUNICATIONS, LLC D/B/A THE GATEWAY PUNDIT'S MOTION TO INTERVENE AND UNSEAL</u>

RANDAZZA | LEGAL GROUP

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF LAW.................................................................................................6

   1.0      The Gateway Pundit May Properly Intervene ................................................7

   2.0      Analysis ........................................................................................................10

      2.1     Historical and Constitutional Presumptions ............................................10

         2.1.1   Common Law Right to Access.................................................................10

         2.1.2   The First Amendment Compels Access ..................................................12

      2.2     Standard for Sealing a Court Record ........................................................13

         2.2.1   The Compelling Reason Standard Applies to the Documents at Issue .................14

         2.2.2   There is Neither a "Compelling Reason" nor "Good Cause" to Seal the Epstein Client List ....................................................................................................15

   3.0      Conclusion ...................................................................................................15

   CERTIFICATE OF SERVICE...................................................................................17

RANDAZZA | LEGAL GROUP

## TABLE OF AUTHORITIES

**CASES**

*AT & T Corp. v. Sprint Corp.*,
  407 F.3d 560 (2d Cir. 2005) ............................................................................7

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
  814 F.3d 132 (2d Cir. 2016) ................................................................9, 11, 12

*Brown v. Maxwell*,
  929 F.3d 41 (2d Cir. 2019) ..........................................................................4, 6

*Craig v. Harney*,
  331 U.S. 367 (1947) .........................................................................................6

*E.E.O.C. v. Nat'l Children's Ctr., Inc.*,
  146 F.3d 1042 (D.C. Cir. 1998) .......................................................................7

*E*Trade Fin. Corp. v. Deutsche Bank AG*,
  582 F. Supp. 2d 528 (S.D.N.Y. 2008) .............................................................8

*Globe Newspaper Co. v. Superior Court*,
  457 U.S. 596 (1982) .......................................................................................10

*Hartford Courant Co. v. Pellegrino*,
  380 F.3d 83 (2d Cir. 2004) ........................................................................9, 10

*In re Continental Ill. Secs. Litig.*,
  732 F.2d 1302 (7th Cir. 1984) .......................................................................10

*In re Iowa Freedom of Info. Council*,
  724 F.2d 658 (8th Cir. 1983) .........................................................................10

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  164 F.R.D. 346 (S.D.N.Y. 1996) .....................................................................7

*In re Orion Pictures Corp.*,
  21 F.3d 24 (2d Cir. 1994) ..............................................................................10

*In re Pineapple Antitrust Litig.*,
  2015 U.S. Dist. LEXIS 122438 (S.D.N.Y. Aug. 7, 2015) ................................7

*Katzman v. Victoria's Secret Catalogue*,
  923 F. Supp. 580 (S.D.N.Y. 1996) ................................................................10

*Kelly v. City of New York*,
  2003 U.S. Dist. LEXIS 2553, 2003 WL 548400 (S.D.N.Y. Feb. 24, 2003) ................8

*Lugosch v. Pyramid Co.*,
  435 F.3d 110 (2d Cir. 2006) ..........................................................................11

*Maryland v. Baltimore Radio Show, Inc.*,
  338 U.S. 912 (1950) .........................................................................................8

RANDAZZA | LEGAL GROUP

*N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth.*,
   684 F.3d 286 (2d Cir. 2011) ........................................................................10

*Newman v. Graddick*,
   696 F.2d 796 (11th Cir. 1983) ....................................................................10

*Newsday LLC v. Cty. of Nassau*,
   730 F.3d 156 (2d Cir. 2013) ........................................................................11

*Nixon v. Warner Communications*,
   435 U.S. 589 (1978) ..................................................................................8, 9

*NML Capital, Ltd. v. Republic of Arg.*,
   No. 2:14-cv-492-RFB-VCF, 2014 U.S. Dist. LEXIS 173780 (D. Nev. Dec. 12, 2014) ............7

*Press-Enter. Co. v. Superior Court*,
   478 U.S. 1 (1986) ..........................................................................................9

*Publicker Indus., Inc. v. Cohen*,
   733 F.2d 1059 (3d Cir. 1984) ......................................................................10

*Richmond Newspapers v. Virginia*,
   448 U.S. 555 (1980) ............................................................................8, 9, 10

*Rushford v. New Yorker Magazine, Inc.*,
   846 F.2d 249 (4th Cir. 1988) ......................................................................10

*Schiller v. City of N.Y.*,
   2006 U.S. Dist. LEXIS 70479 (S.D.N.Y. Sep. 27, 2006)............................7

*SEC v. TheStreet.com*,
   273 F.3d 222 (2d Cir.  2001) ................................................................10, 11

*Suen v. Las Vegas Sands, Inc.*,
   District Court, Clark County, Nevada, Case No. A493744-C (Apr. 16, 2013)..........................9

*United States v. Amodeo II*,
   71 F.3d 1044 (2d Cir. 1995) ....................................................................9, 11

*United States v. Burr*,
   25 F. Cas. 1 (No. 14,692) (CC Va. 1807)....................................................9

*United States v. Epstein*,
   Case No. 1:19-cr-00490 (S.D.N.Y. filed July 2, 2019) ................................4

*United States v. Erie Cty.*,
   763 F.3d 235 (2d Cir. 2014) ..............................................................10, 11, 12

*United States v. Maxwell*,
   Case No. 1:20-cr-00330 (S.D.N.Y. Dec. 29, 2021)....................................4

*United States v. Myers (In re in re Nat'l Broad. Co.)*,
   635 F.2d 945 (2d Cir. 1980) ........................................................................11

*Westmoreland v. Columbia Broad. Sys., Inc.*,
   752 F.2d 16 (2d Cir. 1984) ....................................................................10, 11

RANDAZZA | LEGAL GROUP

**STATUTES**

18 U.S.C. § 2 ..........................................................................................................4

18 U.S.C. § 371 ......................................................................................................4

18 U.S.C. § 1591 ....................................................................................................4

18 U.S.C. § 2423 ....................................................................................................4

**RULES**

Fed. R. Civ. P. 24 ..................................................................................................7

RANDAZZA | LEGAL GROUP

**MEMORANDUM OF LAW**

Jeffrey Epstein was indicted for 1) Sex Trafficking Conspiracy, 18 U.S.C. § 371, and 2) Sex Trafficking, 18 U.S.C. §§ 1591(a)(b)(2), and 2. *See United States v. Epstein,* Case No. 1:19-cr-00490 (S.D.N.Y. filed July 2, 2019). Following his death a month later,[1] twenty-three women testified that Jeffrey Epstein abused and trafficked them.[2] Previously, "[o]n June 30, 2008, Epstein pleaded guilty to Florida state charges of soliciting, and procuring a person under the age of eighteen for, prostitution. The charges stemmed from sexual activity with privately hired "masseuses," some of whom were under eighteen, Florida's age of consent. Pursuant to an agreement with state and federal prosecutors, Epstein pleaded to the state charges." *Brown v. Maxwell*, 929 F.3d 41, 45 (2d Cir. 2019)

Ghislaine Maxwell was convicted of 1) Conspiracy to Entice Minors to Travel to Engage in Illegal Sex Acts, 18 U.S.C. § 371; 3) Conspiracy to Transport Minors with Intent to Engage in Criminal Sexual Activity, 18 U.S.C. § 371; 4) Transportation of a Minor with Intent to Engage in Criminal Sexual Activity, 18 U.S.C. §§ 2423(a) and 2; 5) Sex Trafficking Conspiracy, 18 U.S.C. § 371; and 6) Sex Trafficking of a Minor, 18 U.S.C. §§ 1591(a), (b)(2), and 2. *See United States v. Maxwell,* Case No. 1:20-cr-00330 (S.D.N.Y. Dec. 29, 2021). Four women testified to abuse they suffered at the hands of Ghislaine Maxwell.[3] Here, the plaintiff sued Maxwell over her denial of "allegations of sexual abuse by several other prominent individuals, 'including numerous prominent American politicians, powerful business executives, foreign presidents, a well-known Prime Minister, and other world leaders,' as well as Dershowitz (a long-time member of the

---

[1] Curiously, he died the very day after this Court's summary judgment record was unsealed by the Second Circuit.

[2] Reinstein, Julia, *23 Women Stood in Court and Said Jeffrey Epstein Abused Them*, Buzzfeed News (Aug. 27, 2019), available at https://www.buzzfeednews.com/article/juliareinstein/jeffrey-epstein-women-victims-testify-court-quotes

[3] Del Valle, Lauren, and Levenson, Eric, *4 Women Testified at Ghislaine Maxwell's Trial that They were Sexually Abused*, CNN (Dec. 15, 2021) available at https://www.cnn.com/2021/12/15/us/ghislaine-maxwell-trial-accusers/index.html

RANDAZZA | LEGAL GROUP

Harvard Law School faculty who had worked on Epstein's legal defense)" and Maxwell herself. *Brown*, *supra* at 45.

Yet, despite all of these charges and allegations, the government has not revealed to whom, other than Epstein himself, these women (minors at the time) were trafficked.  The world is clamoring for information as to who these world-renowned abusers are (hereinafter the "Epstein Client List").  Perhaps Epstein and Maxwell were well-organized and kept a client list; perhaps one has been compiled by the Department of Justice or another third-party; or perhaps it may be susceptible to compilation from an inspection of extant records.

Movant-Intervenor TGP Communications, LLC, d/b/a The Gateway Pundit wishes to report on the Epstein Client List.  Although this Court has been engaged in a process to unseal records that never should have been denied public access in the first place, the records of these proceedings are replete with pseudonymous parties and some documents (or portions thereof) remain under seal.  To the extent any document or portion thereof is sealed and it names an alleged client of Jeffrey Epstein, *i.e.* a person to whom a minor was allegedly sexually trafficked, that document or portion should be immediately unsealed.  The public has a right to know.

**1.0    The Gateway Pundit May Properly Intervene**

TGP Communications d/b/a The Gateway Pundit ("Movant", "Intervenor", or "TGP") is a news publication consisting of news, commentary, punditry, and analysis.[4]  As many Americans continue to lose trust in the purportedly unbiased nature of older newspapers and networks, TGP highlights that it is addressing this gap as a trusted news source for the stories and views that are largely untold or ignored by traditional news outlets.[5]  One of its core values is that it "must have courage in order expose the truth about powerful interests that may be angered by our coverage."[6]  As the Second Circuit highlighted, "the press plays a vital role in ensuring the public right of access and in enhancing the quality and safeguards the integrity of the factfinding process. When

---

[4] *See* https://www.thegatewaypundit.com/about/.
[5] *See id.*
[6] *Id.*

RANDAZZA | LEGAL GROUP

faithfully observing its best traditions, the print and electronic media contributes to public understanding of the rule of law" and "validates [its] claim of functioning as surrogates for the public." *Brown, supra* at 53 (internal quotation marks and citations omitted).

Part of TGP's mission is conducting investigative journalism in pursuit of an open government. The sealing of documents that might identify Epstein's clients prevents the public from learning about wrongdoing by high level government officials, media moguls, and high profile business-people. Police departments regularly post mugshots and names of working-class prostitution clients who get ensnared in street-level prostitution stings. That is considered to be a matter of public concern. It is virtually certain that Epstein's clients were not simple working-class private citizens. Whoever participated in this sex trafficking scheme is a matter of public concern.

TGP cannot conduct its Fourth Estate function if this Court allows the worst criminals to hide in the shadows outside of the normal sunlight of transparency and accessibility. The public has a right to know who trafficked these girls.

The former judge assigned to this case committed a transgression, shielding from scrutiny that which rightfully should be exposed to sunlight. As the Second Circuit concluded, "in contravention of our precedent, the District Court failed to review the documents individually and produce specific, on-the-record findings that sealing is necessary to preserve higher values." *Brown*, *supra* at 48. The courts do not belong to Epstein's clients – they belong to the people. *Craig v. Harney*, 331 U.S. 367, 374 (1947) ("what transpires in the court room is public property"). Although the Court originally ordered that the parties had to seek leave to file under seal (ECF No. 62), Judge Sweet subsequently amended that Order to permit the parties to substitute their judgment for the Court's and seal any document they chose. *See* Order of August 8, 2016, ECF No. 348.

 The Second Circuit found this blanket sealing order unlawful, unsealing summary judgment materials itself and ordering this Court to undertake a "particularized review of the

RANDAZZA | LEGAL GROUP

remaining materials." *Brown, supra* at 45.  Although TGP is appreciative of the Court's efforts to unseal since that decision, the most crucial information that the public is demanding to know remains hidden.  Though it may be possible that, somehow, no names of the abusers appear in the records that remain sealed, this is unlikely, and the Court should focus on unsealing those documents or portions thereof that remain sealed.  Although others have previously intervened to facilitate unsealing, the task of unsealing the client list appears to have remained outstanding.

Under Rule 24(b)(2), "[o]n timely motion, the court may permit anyone to intervene who is given a conditional right to intervene by a federal statute or has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(2) (colons and alphanumerals omitted).  Permissive intervention is permitted where, as here, a member of the public seeks intervention to modify a protective order and inspect court documents.  *AT & T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) ("[P]ermissive intervention is the proper method for a nonparty to seek a modification of a protective order."); *see also E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998) (collecting cases and stated that "despite the lack of a clear fit with the literal terms of Rule 24(b), every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders.").  Here, Movant is seeking access to this Court's records, specifically any and all documents that identify Epstein and Maxwell's clients, *i.e.* the powerful men to whom these girls were trafficked.

The motion is timely.  "When a member of the public moves to intervene to unseal judicial records, the motion to intervene is timely as long as the documents remain under seal because sealing places the public's interest in open access in controversy."  *NML Capital, Ltd. v. Republic of Arg.*, No. 2:14-cv-492-RFB-VCF, 2014 U.S. Dist. LEXIS 173780, at *11 (D. Nev. Dec. 12, 2014).  Movant has a significantly protectable interest in this case, as TGP has been following and reporting on the issues in this case, and have contributed to providing the public with information regarding this case.  *See generally* https://www.thegatewaypundit.com/?s=epstein.  "[I]ntervention

RANDAZZA | LEGAL GROUP

by the press – a step preliminary to determining whether any sealed documents should be disclosed – should be granted absent some compelling justification for a contrary result." *In re Pineapple Antitrust Litig.*, 2015 U.S. Dist. LEXIS 122438, at 5 (S.D.N.Y. Aug. 7, 2015); *see also Schiller v. City of N.Y.*, 2006 U.S. Dist. LEXIS 70479, at 5 (S.D.N.Y. Sep. 27, 2006) (noting that: "The Times may well have an absolute right of intervention in the circumstances of this case"); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 164 F.R.D. 346, 351 (S.D.N.Y. 1996) (granting intervention as of right to newspaper to seek modification of protective order and access to documents in judicial proceeding); *and see Kelly v. City of New York*, 2003 U.S. Dist. LEXIS 2553, 2003 WL 548400, *3 (S.D.N.Y. Feb. 24, 2003) (newspaper intervention granted so that it may "articulate the public interest in access to the records at issue"). Movant's intervention is appropriate to protect not only its own interest in covering this case, but also to protect the interests of the public at large.

## 2.0    Analysis

As discussed herein, there is no proper basis to deny Movant access to the information at issue. There are both common law and First Amendment rights of access. The Parties have not provided any compelling reason why those rights should be abridged.

### 2.1    Historical and Constitutional Presumptions

There is both a First Amendment and common law right of access to court records. Both remind us that there is a strong presumption of openness in the judicial branch. That presumption should not be laid aside lightly.

#### 2.1.1    Common Law Right to Access

The common law right to access is long-established. *See Nixon v. Warner Communications*, 435 U.S. 589, 597 (1978). In *Nixon*, the Supreme Court recognized the federal common law right "to inspect and copy public records and documents." *Id.* This right extends to motions filed in civil cases. "[H]istorically both civil and criminal trials have been presumptively open." *E\*Trade Fin. Corp. v. Deutsche Bank AG*, 582 F. Supp. 2d 528, 531 (S.D.N.Y. 2008) (citing *Richmond Newspapers v. Virginia*, 448 U.S. 555, 580 n.17 (1980)); *see also id.* at 599

10

RANDAZZA | LEGAL GROUP

(Stewart, J., concurring); *and see Maryland v. Baltimore Radio Show, Inc.*, 338 U.S. 912, 920 (1950) ("one of the demands of a democratic society is that the public should know what goes on in courts").

Courts have consistently noted that access to courts and court records is important for public education, public trust, and the integrity of the court system.  "[A] trial courtroom also is a public place where the people generally and representatives of the media have a right to be present, and where their presence historically has been through to enhance the integrity and quality of what takes place."  *Richmond Newspapers*, 448 U.S. at 587 (1980).  The press play a vital role in ensuring that the public can view the workings of the judicial process.  "What better way to demonstrate to the public that its courts are fair and just than to say to the public, 'come and view the proceedings yourself and judge for yourself?'"  *Suen v. Las Vegas Sands, Inc.*, District Court, Clark County, Nevada, Case No. A493744-C at 8 (Apr. 16, 2013).  Here, access to the court records, especially the Epstein Client List, are particularly important because this case involves claims of public concern.  The secretive adjudications in this case have cast doubt on the system and the people are left wondering if another politician, celebrity, or business person has been tied to any of the already public, and quite disturbing, allegations.

The Second Circuit reinforced the common law presumption in *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) ("The courts have long recognized the "general right to inspect and copy public records and documents, including judicial records and documents.") (citing *Nixon*, 435 U.S. at 597, 598 & n.7).  "This right is said to predate the Constitution."  *Bernstein* 814 F.3d at 142 (citing *United States v. Amodeo II*, 71 F.3d 1044, 1048 (2d Cir. 1995)) (internal quotation marks omitted).

RANDAZZA | LEGAL GROUP

### 2.1.2   The First Amendment Compels Access

The First Amendment requires public access to court proceedings.  *See Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 10 (1986);[7] *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004) (the public and the press have a "qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.").  This is long unquestioned in the criminal context, but the Supreme Court has made it clear that this extends to civil cases.  *Richmond Newspapers*, 448 U.S. at 580 n.7.  "[T]he First and Fourteenth Amendments clearly give the press and the public a right of access to trials themselves, civil as well as criminal." *Id*. at 599 (Stewart, J. concurring).  "[T]he First Amendment guarantees a qualified right of access not only to criminal but also to civil trials and to their related proceedings and records.  *N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth*., 684 F.3d 286, 298 (2d Cir. 2011) (citing *Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 22 (2d Cir. 1984)); *see also Hartford Courant*, 380 F.3d at 93 (2d Cir. 2004) (finding a right to civil and criminal docket sheets).

Notably, every circuit that has considered whether the First Amendment requires public access in civil cases has concluded it does.  *See*, *e.g.*, *Rushford v. New Yorker Magazine, Inc*., 846 F.2d 249, 253-54 (4th Cir. 1988); *In re Continental Ill. Secs. Litig*., 732 F.2d 1302, 1308 (7th Cir. 1984); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984); *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 661 (8th Cir. 1983); *Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983).  "The First Amendment requires that court proceedings be open to the public, and by extension the news media, absent the most clearly articulated and compelling reason for closing them in a particular circumstance."  *Katzman v.  Victoria's Secret Catalogue*, 923 F. Supp. 580, 588 (S.D.N.Y. 1996).  The First Amendment, "protects the public's right to have access to judicial documents [and] has been understood to be stronger than its common law ancestor and

---

[7]    Historically, the Supreme Court noted: "Long ago in the celebrated trial of Aaron Burr for treason, for example, with Chief Justice Marshall sitting as trial judge, the probable-cause hearing was held in the Hall of the House of Delegates in Virginia, the courtroom being too small to accommodate the crush of interested citizens."  *Id.* citing to *United States v. Burr*, 25 F. Cas. 1 (No. 14,692) (CC Va. 1807).

RANDAZZA | LEGAL GROUP

counterpart." *United States v. Erie Cty.*, 763 F.3d 235, 236 (2d Cir. 2014).  No compelling reason for secrecy exists here.  This defies the constitutional mandate that legal proceedings are inherently public affairs.  *Richmond Newspapers*, 448 U.S. at 580; *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605 (1982).

### 2.2    Standard for Sealing a Court Record

The Court should begin from a strong presumption in favor of access and, "[i]n most cases, a judge must carefully and *skeptically* review sealing requests to insure that there really is an extraordinary circumstance or compelling need."  *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (emphasis added); *see also SEC v. TheStreet.com*, 273 F.3d 222, 232 (2d Cir.  2001); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91(2d Cir. 2004) ("The Supreme Court [has] recognized that the First Amendment grants both the public and the press a qualified right of access" to judicial proceedings.); *Westmoreland v. CBS*, Inc., 752 F.2d 16, 22 (2d Cir. 1984) ("There is, to be sure, an abundance of support in the cases for a constitutionally grounded public right of access to the courtroom."); *United States v. Myers (In re in re Nat'l Broad. Co.)*, 635 F.2d 945 (2d Cir. 1980) (finding that there is an especially strong presumption requiring extraordinary circumstances to justify restrictions).   "Once a First Amendment right of access to judicial documents is found, the documents may be sealed only if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.  And, broad and general findings by the trial court are not sufficient to justify closure." *United States v. Erie Cty.*, 763 F.3d 235, 236 (2d Cir. 2014).

The starting point is to determine whether the documents at issue are "judicial documents" for which a presumption of access applies.  *See SEC v. TheStreet.Com*, 273 F.3d 222, 231 (2d Cir. 2001) ("[A] subspecies of sealed documents in civil cases—so-called 'judicial documents'— deserve a presumption in favor of access.")  When evidence is used in a dispositive motion or its opposition, there must be a compelling reason to shield it from public view.  Generally, a "[f]inding that a document is a "judicial document" triggers a presumption of public access." *Newsday LLC*

RANDAZZA | LEGAL GROUP

*v. Cty. of Nassau*, 730 F.3d 156, 167 n.15 (2d Cir. 2013).   Documents that directly affect adjudication or are used, "to determine litigants' substantive legal rights, the presumption of access is at its zenith…and thus can be overcome only by extraordinary circumstances." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (citing *Lugosch v. Pyramid Co*., 435 F.3d 110, 121 (2d Cir. 2006) and *United States v. Amodeo II*, 71 F.3d 1044 (2d Cir. 1995)) (internal quotation marks omitted).   The locus of the inquiry is whether the document "is presented to the court to invoke its powers or affect its decisions." *Bernstein*, 814 F.3d at 142.

### 2.2.1   The Compelling Reason Standard Applies to the Documents at Issue

To the extent the identities of the Epstein clients appear in judicial documents, there must be compelling reasons to seal them.   "Since such a document is the basis for the adjudication, only the most compelling reasons can justify sealing." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 136 (2d Cir. 2016).   The claimed compelling reasons must be supported by specific factual findings. *United States v. Erie Cty.*, 763 F.3d 235, 236 (2d Cir. 2014). The compelling reason and facts must show more than mere conjecture, and more than embarrassment, incrimination, or wider exposure of the facts to the public. *Bernstein*, 814 F.3d at 144 (finding that information that was embarrassing or suggested the party was complicit in a kickback scheme fell, "woefully short of the kind of showing which raises even an arguable issue as to whether it may be kept under seal") (internal citation omitted).   The "privacy concerns" of sex traffickers cannot be a compelling reason to hide these documents from the public.   Anything that Maxwell or those who abused these girls consider embarrassing or raise a concern of incrimination cannot be held back from the public for those reasons, as the press has the right to report on the happenings of the judiciary.   For a party to prevail on a showing of a compelling reason to seal a court record, that party must present specific factual findings sufficient to overcome the presumption that court records will be open to the public.   TGP is aware of no compelling reasons to seal this information.

14

RANDAZZA | LEGAL GROUP

### 2.2.2    There is Neither a "Compelling Reason" nor "Good Cause" to Seal the Epstein Client List

The Court must apply the stringent compelling reason standard to judicial documents. Although the Second Circuit demands a strong presumption for judicial documents, the traffickers could not, hypothetically even meet a lower "good cause" standard.  The Second Circuit rightly concluded that the "remaining sealed materials at issue…are subject to at least some presumption of public access." *Brown, supra* at 50.  The Court must be "articulate specific and substantial reasons for sealing such material". *Id.*  There are no such reasons to seal the Epstein Client List, to the extent clients are identified in the records that remain sealed.  Maxwell did not have standing to raise absent third party privacy concerns.  More importantly, even if she did, the concerns raised are insufficient when contrasted with the rights of the people to have open courts. If the "absent third parties" are public figures, and it is highly likely they are, then this would be a matter of great public interest.  Here, Movant has no way of knowing.  Ultimately, mere privacy concerns are insufficient to warrant sealing of records.  This is not a case involving merely spurious and defamatory allegations—Maxwell and Epstein are convicted criminals for their participation in the sex trafficking at issue.  Had Epstein not suddenly died upon the release of this Court's summary judgment records, while jailed on a federal indictment for sex trafficking, this information likely would have been revealed at his trial, based on the number of victims that testified following his death.  If the Epstein Client List is in the Court's file, it must be unsealed.

### 3.0    Conclusion

Maxwell, individually and as a proxy for Epstein, is a public figure and the case has been covered by multiple state and national media outlets.  The media has a vested interest in these and all court proceedings, and the public in the United States and beyond have a strong interest in how the courts are used to shield perpetrators of heinous acts. If TGP is not permitted to intervene and view the Epstein Client List, to the extent it can be ascertained from records remaining sealed, it will suffer great impairment, as it cannot perform their Fourth Estate function without access to

RANDAZZA | LEGAL GROUP

public documents.  By extension, the public will be harmed because it will be deprived of its right to know.

Dated: July 28, 2022.                                     Respectfully Submitted,

*/s/ Marc J. Randazza*
Marc Randazza, (*Pro Hac Vice* forthcoming)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Tel:    702-420-2001
Email:  ecf@randazza.com

*/s/ Jay M. Wolman*
Jay M. Wolman (JW0600)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel:    702-420-2001
Email:  ecf@randazza.com

*/s/  John C. Burns*
John C. Burns  (*Pro Hac Vice* forthcoming)
Burns Law Firm
P.O. Box 191250
St. Louis, Missouri 63119
Tel:      314-329-5040
Email:   john@burns-law-firm.com

*Attorneys for Movant/Putative Intervenor,*
*TGP Communications, LLC d/b/a The*
*Gateway Pundit*

RANDAZZA | LEGAL GROUP

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on July 28, 2022 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

                                  */s/ Jay M. Wolman*
                                  Jay M. Wolman

RANDAZZA | LEGAL GROUP