UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

VIRGINIA L. GIUFFRE,

    Plaintiff,

v.

GHISLAINE MAXWELL,

    Defendant.

15-cv-07433-RWS

------------------------------------------------X

**Defendant's Combined Motion To Compel Non-Party Witness To Produce Documents
and Respond To Deposition Questions, And
<u>Response to Motion for Protective Order for Non-Party Witness</u>**

Laura A. Menninger
Jeffrey S. Pagliuca
Ty Gee
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
303.831.7364

# TABLE OF CONTENTS

STATEMENT OF CONFERRAL ................................................................................................ 1

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

I. MS. RANSOME HAS FAILED TO PROVIDE AN APPROPRIATE PRIVILEGE LOG, THEREBY EFFECTING A WAIVER OF PRIVILEGE .......................................................... 4

II. DOCUMENTS RELATED TO *JANE DOE 43 V. JEFFREY EPSTEIN, ET AL.,* 17-CV-00616-JGK (S.D.N.Y.) ARE HIGHLY RELEVANT TO MS. RANSOME'S TESTIMONY IN THIS ACTION ................................................................................................................. 5

III. MS. RANSOME UNJUSTIFIABLY REFUSED TO ANSWER RELEVANT DEPOSTION QUESTIONS, AND SHE MUST BE COMPELLED TO RE-APPEAR AND RESPOND. 10

IV. MS. RANSOME MUST BE REQUIRED TO PRODUCE REPONSIVE DOCUMENTS THAT HAVE BEEN WITHELD WITHOUT BASIS, AND IDENTIFY ANY OTHER DOCUMENTS WITHELD ................................................................................................ 12

CONCLUSION ........................................................................................................................... 14

CERTIFICATE OF SERVICE ................................................................................................... 17

Defendant Ghislaine Maxwell ("Ms. Maxwell") files this Combined Motion to Compel Non-Party Witness to Produce Documents and Respond to Deposition Questions, and Response to Motion for Protective Order for Non-Party Witness (ECF 640)[1] and further states as follows:

**STATEMENT OF CONFERRAL**

The undersigned has conferred with Mr. Stanley Pottinger, who represents both Plaintiff and non-party witness Ms. Ransome, via email and telephone on the issues raised in this motion and has been unable to resolve these issues without court intervention.

**INTRODUCTION**

Counsel for Plaintiff, also counsel for non-party witness Sarah Ransome, in mid-January belatedly disclosed a "new witness" counsel apparently had known about for months.[2] Plaintiff then asked this Court to re-open discovery for the deposition of Ms. Ransome, promised to make her available "immediately" for deposition and agreed to accept a subpoena for her to produce documents, in an attempt to "cure" her own late disclosure. Now, after having created a last-minute scramble to conduct discovery on facts far removed in time and circumstance from Plaintiff's defamation claim, Plaintiff now complains that too much is being asked of her "witness." Plaintiff protests that the requested documents and testimony sought -- all of which relate to Ms. Ransome's allegations and credibility -- are irrelevant to this single count defamation action. Of course, the defense has said since learning of her that Ms. Ransome's story is irrelevant to this case. But, if Plaintiff insists that Ms. Ransome should testify at trial, she must comply with properly served and propounded subpoena for testimony and records.

---

[1] To avoid excessive and duplicative briefing on overlapping issues, Ms. Maxwell is submitting her Response to the Motion for Protective Order together with her Motion to Compel.

[2] In their letter motion to the Court of January 19 as well as during the hearing of February 2 on this topic, Plaintiff claimed she had "recently" learned of this "new" witness. As it turns out, Plaintiff's counsel Bradley Edwards, Paul Cassell and Stanley Pottinger had already signed a fee agreement to represent this witness more than two months earlier, on November 7, 2016. Plaintiff's counsel still has not explained why they waited more than two months to disclose the witness, nor why they represented to the Court that she was a "recent" discovery.

1

**BACKGROUND**

Plaintiff first identified Sarah Ransome as a witness on January 13, 2016, a mere two months before trial was scheduled to begin. In evaluating the relevance of the documents sought in the third-party subpoena to Ms. Ransome, and the questions posed to her in the February 17 deposition, it is important to understand how Ms. Ransome first came forward as a witness. Based on her deposition testimony, sometime in October of 2016, Ms. Ransome read an article in the New York Post written by Maureen Callahan regarding a recently published book by James Patterson concerning Jeffrey Epstein. *See* Menninger Decl. Ex. A (Ransome Dep.) at 36:25-43:24. The article details multiple things, including that Mr. Epstein has routinely settled out of court many civil cases brought against him by various women. *See* Menninger Decl., Ex. B. After reading the article, Ms. Ransome contacted Ms. Callahan via email resulting in several communications with Ms. Callahan, none of which have been produced. *See* Menninger Decl. Ex. A at 36:25-43:24. Ms. Callahan apparently did nothing with this information, in part, quite possibly, because of the lack of trustworthiness of Ms. Ransome's story.

Then, at some unknown time in early November, Ms. Ransome contacted the Boies Schiller firm and spoke with Sigrid McCawley. *Id.* at 24:25-28:5. The exact date of the first communication between the Boies Schiller firm and Ms. Ransome is unclear because she has refused to produce her telephone records, emails, or a log of any conversations and communications she deems privileged as required by the Rules. In an unusual twist, on November 7, 2016, Ms. Ransome signed an engagement letter with Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L., Stanley Pottinger and Paul Cassell (all of whom also represent

Plaintiff) to represent her as a non-party witness in this matter on a pro-bono basis.[3] Based on the documents produced, however, she is not represented by Boies Schiller or its attorneys. *See* Menninger Decl. Ex. C. Quite notably, despite taking on the representation of Ms. Ransome as of November 7, 2016, Ms. Ransome was not identified as a person with knowledge under Rule 26 until over two months later on January 13, 2017.

On January 26, 2017, Ms. Ransome filed a civil complaint against Jeffrey Epstein, Ghislaine Maxwell, ███████████████████████, under 18 USC § 1595, alleging the following damages:

> "injury and pain; emotional distress; psychological and psychiatric trauma; mental anguish; humiliation; confusion; embarrassment; loss of self esteem; loss of dignity; loss of enjoyment of life; invasion of privacy; and other damages associated with Defendants' actions. Plaintiff will incur medical and psychological expenses. These injuries are permanent in nature and Plaintiff will continue to suffer from them in the future."

*See* Menninger Decl. Ex. D ("Jane Doe 43 Complaint"), ¶ 64. As well, the Complaint alleges the right to civil forfeiture of Mr. Epstein's planes, his New York mansion and his private island. *Id.* ¶¶ 62 & 63. The Complaint was filed by the Boies Schiller firm presumably on a contingency fee basis. The engagement letter for that matter has not been produced, despite the fact that it is not privileged and its obvious relevance to testing any claim of privilege. In that case, Ms. Ransome seeks millions, if not hundreds of millions, of dollars from the Defendants, including Ms. Maxwell, through her now free legal counsel, all in exchange for providing favorable testimony in this case. The motivation for fabrication of testimony could not be more acute. The majority of the discovery sought goes to this issue. It is highly relevant, probative, and must be produced.

---

[3] It does not appear that any of the communications concerning this representation discuss the limited nature of the representation, the obvious conflicts of interest, or a knowing and intentional waiver of those conflicts by both Ms. Ransome and Plaintiff.

3

**I.     MS. RANSOME HAS FAILED TO PROVIDE AN APPROPRIATE PRIVILEGE LOG, THEREBY EFFECTING A WAIVER OF PRIVILEGE**

Ms. Ransome has refused to produce all but a handful of documents. *See* Menninger Decl. Ex. E, Responses and Objections to Subpoena ("Responses"). With respect to many categories, and in her general objections, she claims the documents sought are "fundamentally privileged communications between a non-party and her counsel." *Id.* Responses 1-3. While she may assert that privilege under Fed.R.Civ.P. 45(E)(2)(A), she also is required to produce a log of all documents withheld based on any alleged privilege or protection:

> (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
>
>   (i) expressly make the claim; and
>
>   (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

An "unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege," *OneBeacon Ins. Co. v. Forman Int'l Ltd.,* 04 CIV. 2271(RWS), 2006 WL 3771010, at *7–8 (S.D.N.Y. Dec. 15, 2006). As this Court noted in *OneBeacon Ins. Co.,* the waiver of privilege is equally applicable where there is a failure to produce a privilege log under Rules 45 and 26. *Id.* (citing *In re Application for Subpoena to Kroll,* 224 F.R.D. 326, 328 (E.D.N.Y. 2004) ("Rule 45 requires that the party claiming a privilege prepare a privilege log.... Failure to submit a privilege log may be deemed a waiver of the underlying privilege claim.")); *Labatt Ltd. v. Molson Breweries,* Nos. 93 CV 75004, 94 CV 71540(RPP), 1995 WL 23603 (S.D.N.Y. Jan. 20, 1995), *aff'd, Dorf & Stanton Commc'ns, Inc.,* 100 F.3d 919, 923 (Fed.Cir.1997) (upholding determination that privilege had been waived due to failure to satisfy Rules 45(d)(2) and

26(b)(5)); *see also In re Grand Jury Subpoena,* 274 F.3d 563, 575-76 (1st Cir.2001) (stating that a "party that fails to submit a privilege log" pursuant to Fed. R. Civ. P. 45(d)(2) "is deemed to waive the underlying privilege claim").

Of course, the need for a log to assess any alleged claims of privilege is particularly necessary in this case. It is entirely unclear when Ms. Ransome became represented, and by whom, and related to what matter(s). What is clear is that there is at least one, if not more, of her communications with the Boies Schiller firm when Plaintiff was an unrepresented non-party potential witness. Indeed, the Boies Schiller firm claims they *do not* represent her as a witness in this litigation. Thus, any communication between Boies Schiller and Ms. Ransome relating to her testimony *in this case* is not protected by any privilege and must be produced. Of course, without the required log it is impossible to determine how many improperly categorized "privileged" communications exist. Based on Ms. Ransome's failure to provide a privilege log, any claim of privilege has been waived.

## II. DOCUMENTS RELATED TO *JANE DOE 43 V. JEFFREY EPSTEIN, ET AL.,* 17-CV-00616-JGK (S.D.N.Y.) ARE HIGHLY RELEVANT TO MS. RANSOME'S TESTIMONY IN THIS ACTION

In her Responses, Ms. Ransome argues primarily that the documents sought are not related to her witness testimony in this case. The objection reads:

> Ransome further objects to this request in that the face of the request demonstrates that the Defendant is abusing the subpoena power by serving a subpoena on a non-party that seeks discovery unrelated to the underlying matter, but instead allegedly relevant to another Federal Action styled ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ Ransome objects to this Request as overbroad, harassing, and not calculated to lead to discoverable evidence relevant to the Defamation Action.

*See* Menninger Decl. Ex. E, Responses 9-30.

This argument is perplexing. In Plaintiff's Motion to Reopen Discovery, Plaintiff (through Ms. McCawley, who does not represent witness Ransome, but does represent Jane Doe

5

43 (i.e., Plaintiff Ransome)) claimed that Ms. Ransome's experience (*i.e.* the basis for her claims in *Jane Doe 43*) are "highly relevant" to this action. Presumably, Ms. Ransome's testimony in this case will be precisely what she alleged in the *Jane Doe 43* Complaint. Logic follows that either 1) the information relevant to that action is relevant to her testimony in this case, or 2) her testimony is entirely irrelevant to this single count defamation action. We would suggest that the latter is true, as is the case with all other alleged victim witnesses, none of whom know the Plaintiff in this case at all. The proper course of action, then, should be to exclude Ms. Ransome's testimony altogether because, in Ms. Ransome's counsel's own words, the information is not relevant to this single count defamation action.

If the Court determines that Ms. Ransome's testimony is at all relevant, then all of the information sought is relevant to her participation as a witness in this action. First and most fundamentally, the *Jane Doe 43* action seeks millions if not hundreds of millions worth of assets as "civil forfeiture." It appears (although Ms. Ransome refused to answer) that she is unemployed, with no source of income other than from her partner, and lives in a house or apartment rented by him in Spain. *See* Menninger Decl., Ex. A at 9:17-12:21. She came out of the woodwork to provide testimony after reading an article that extensively describes this lawsuit and Mr. Epstein's settlement of other lawsuits. She seeks to testify, by contrast to every other witness ever identified, that 1) Ms. Maxwell was actively involved as an assistant to Mr. Epstein in late 2006 to early 2007, and 2) that she was "lent out" to other people, including Alan "Dershavitz" (as she pronounces it). *See* Menninger Decl., Ex. F (Ransome Affidavit). These are two pieces of testimony that Plaintiff has desperately sought to corroborate with witnesses, and there is more than a mere possibility that these pieces of Ms. Ransome's testimony were suggested to her by Plaintiff's counsel/her counsel. In *Jane Doe 43*, Ms. Ransome, through

6

Plaintiff's counsel, seeks, among other things, civil forfeiture of two private jets, a mansion in New York, and a private island in the U.S. Virgin Islands. One can hardly imagine a better motive to fabricate testimony than that type of lottery win. To make it even better, there is no purchase price for the ticket, because the people who want the testimony are willing to front the cost of the litigation either on a contingency or pro-bono basis.

"Evidence tending to show a witness's bias or motive to fabricate testimony or evidence presented at trial is nearly always relevant." *In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288 DLC, 2005 WL 375315, at *8 (S.D.N.Y. Feb. 17, 2005) (citing *United States v. Abel,* 469 U.S. 45, 52 (1985)); *Middleton v. Walker*, No. 09-CV-5548 JS, 2014 WL 2208177, at *5 (E.D.N.Y. May 27, 2014) ("Nevertheless, 'extrinsic proof *tending to establish a reason to fabricate* is never collateral and may not be excluded on that ground.'") (quoting *People v. Hudy*, 73 N.Y.2d 40, 56 (1988)). Moreover, "'bias of a witness is not a collateral issue.'" *Id.* (quoting *United States v. James,* 609 F.2d 36, 46 (2d Cir.1979)) *see also see also Abel,* 469 U.S. at 52 (noting that under the common law, a showing of bias by extrinsic evidence was always permitted).

The discovery sought concerning Ms. Ransome's financial information, employment, the nature of her engagement with counsel (including the financial structure of those relationships) all goes to Ms. Ransome's motivation to provide the fabricated testimony she plans to give and bias in this matter. This includes the following document production requests:

1. All Documents containing Communications with Virginia Roberts Giuffre, or any of her attorneys, agents, investigators, from the period 1999-present.

2. All fee agreements for Your engagements with any attorneys for the purpose of pursuing any civil or criminal claims regarding Jeffrey Epstein, Ghislaine Maxwell, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

29. A copy of Your most recent paycheck, paycheck stub, earnings statement and any bank statement, credit card statement and any Document reflecting any money owed by You to anyone.

7

The remaining document requests are specifically targeted to obtain impeachment evidence concerning Ms. Ransome's story, as told in the *Jane Doe 43* Complaint and her affidavit submitted in support of Plaintiff's Letter Motion to Re-open Discovery in this case. There is nothing harassing about these requests for production. They seek relevant information concerning Plaintiff's claims and allegations against Ghislaine Maxwell, Jeffrey Epstein, ▮ ▮ and documents that would show that the claims are not true, particularly as they relate to Ms. Maxwell:

3. All Documents that reference, relate to, or mention, whether by name or otherwise, the following individuals: Virginia Roberts, Ghislaine Maxwell, Jeffrey Epstein, ▮ ▮. (Complaint ¶¶33-58)

4. All Communications You have had in whatever form with any other female who you ever witnessed at or in a property, home, business, plane or automobile other vehicle owned or controlled by Jeffrey Epstein.

5. All Communications You have had with ▮, Virginia Roberts, Ghislaine Maxwell, Jeffrey Epstein, ▮.

6. Any photographs containing any image of Virginia Roberts, Ghislaine Maxwell, Jeffrey Epstein, ▮.

7. Any photographs taken by You, or containing any image of You, at, in or near any home, business, private vehicle (including airplane), or any other property owned or controlled by Jeffrey Epstein.

8. Any photographs that depict any home, business, private vehicle (including airplane), or any other property owned or controlled by Jeffrey Epstein.

9. All of Your passports, travel visas, or permissions to live, work or study in a foreign country, related to the years 2005-present.

10. All Communications regarding any of Your passports, visas, visa applications, or other permission to live, work or study in a foreign country, for the years 2005-present.

11. All Documents referencing any commercial plane tickets, boarding passes, or any other mode of travel during the time period 2006-2007.

12. Any credit card receipt, canceled check, or any other Document reflecting travel by You during the time period 2006-2007.

13. All phone records for any cellphone owned, used or possessed by You during the years 2006-2007.

14. All Documents reflecting or relating to any Communications between Jeffrey Epstein or Ghislaine Maxwell and either of Your parents, step-parents or other family members. (Complaint ¶ 53)

15. All Documents reflecting any money, payment, valuable consideration or other remuneration received by You from Jeffrey Epstein or any person known by You to be affiliated with Jeffrey Epstein.

16. All bank statements, credit card statements, money transfer records, or other statements from any financial institution in Your name, in whole or in part, for the years 2006-2007.

17. Any Documents concerning Your residency during the years 2006-2007, including leases, rental agreements, rent payments, deeds, or trusts.

19. Any Document reflecting any of Your post-secondary training or educational degree or course of study, to include transcripts, payments for tuition, courses taken, dates of attendance and grades received. (Complaint ¶ 37, 53-55; financial motivation based on lack of education or training to facilitate employment)

20. Any application for college, university, or any other post-secondary institution, or technical college, fashion college, modeling training or any similar institution, submitted by You or on Your behalf during the years 2005 – present. (Complaint ¶ 37, 53-55; financial motivation based on lack of education or training to facilitate employment))

21. All Documents reflecting any moneys received by You in exchange for any "modeling" by You. (Complaint ¶ 38)

22. All modeling contracts signed or entered into by You. (Complaint ¶ 38)

23. Any calendar, receipt, Communication or Document reflecting your whereabouts during the calendar years 2006-2007.

24. Any Documents reflecting Your medical, mental health or emergency care or other treatment for any eating disorder, malnourishment, kidney malfunction, emotional problems, psychological or psychiatric disorders, sexually transmitted diseases, and therapy records, and any prescriptions for any of the above categories. (Complaint ¶ 52, 64; motivation to fabricate)

25. Any Documents containing any Communications You have had with any law enforcement agency.

26. Any Documents that reflect any criminal charges, tickets, summonses, arrests, investigations concerning You or witnessed by You.

27. Any Documents containing any statement regarding Your experience or contact with Virginia Roberts, Ghislaine Maxwell, Jeffrey Epstein, ███████████████, ███████████, including without limitation any Communication with anyone, any diary, journal, email, letter, witness statement, and summary.

28. Any civil complaint or civil demand filed by You or on Your behalf by which You have ever sought damages or compensation of any form or nature.

30. A copy of your Facebook, Instagram, Twitter, and any other social media application or program for the years 2006-2007 and from 2015 – present.

While Ms. Ransome has provided *some* documents responsive to Questions 2, 3, 5, 6, 7, and 8, as discussed below, the productions are incomplete and an unknown volume of documents have been withheld. Having purposefully interjected herself into this litigation, and initiating another litigation based on the same allegations about which she now plans on testifying in this case, Ms. Ransome must be compelled to produce each of these clearly relevant categories of documents.

### III. MS. RANSOME UNJUSTIFIABLY REFUSED TO ANSWER RELEVANT DEPOSTION QUESTIONS, AND SHE MUST BE COMPELLED TO RE-APPEAR AND RESPOND

The Motion for Protective Order relates primarily to certain deposition questions posed to Ms. Ransome which her counsel (and at times, Plaintiff's counsel) improperly instructed her not to answer. Each question relates to Ms. Ransome's claims, credibility, bias and motivation for fabrication of her testimony, requiring responses.

**Category 1 - Personal current financial information.**

Ms. Ransome refused to answer whether she has any source of income. She stated that her partner rents the home she lives in, implying he financially supports her, but would not state what he does. *See* Menninger Decl. Ex. A at 9:17-12:21. As such, her partner's income (or relative lack thereof) and Ms. Ransome's financial position or ability to earn a living relate

10

directly to her motivation to fabricate testimony to seek (a substantial amount of) money in in the Jane Doe 43 litigation. Any concerns about disclosure of this information can be alleviated by production under the protective order.

**Category 2** - **The cell phone number of her partner**.

Ms. Ransome testified that she first called the Boies Schiller firm on her partner's phone, and that the majority of her other conversations with counsel were on that same phone. *See* Menninger Decl. Ex. A at 24:25-28:5. Given the belated disclosure of this witness, and that the first contact happed sometime before November 7, 2016, the date of initial contact and number of contacts in between are highly relevant to the issue of late disclosure. Thus, subpoenas for these records may be required. Any concerns about providing this information can be alleviated by production under the protective order.

**Category 3 – Allegedly privileged communications with Alan Dershowitz**

Ms. Ransome refused to answer questions concerning her alleged conversations with Mr. Dershowitz sometime in late 2006 or early 2007, claiming they were related to a legal matter and that she believed Mr. Dershowitz was her attorney. *See* Menninger Decl. Ex. A at 172:18-173:12; 180:20-185:23; 199:3-23. Ms. Ransome confirmed in her deposition that Mr. Epstein was present during all conversations she claims to have had with Mr. Dershowitz. She further confirms that Mr. Epstein was there to "support" her and "look after" her regarding some unspecified legal matter, but he was not a party or interested in the dispute. *See* Menninger Decl., Ex. A at 199:3-23. It is axiomatic that any conversations between Ms. Ransome and Mr. Dershowitz in the presence of Jeffrey Epstein, a third party, are not protected by privilege. *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 289 F.R.D. 41, 46 (E.D.N.Y. 2011) ("Generally, communications made between a defendant and counsel in the known presence of a third party are not privileged."). Ms. Ransome must be compelled to respond to these questions.

**Category 4 – Ms. Ransome's current medical provider**

    Ms. Maxwell will withdraw this question.

**The Witness's Abandoned Objections**

    Notably absent from the Motion for Protective Order are several other questions posed to Ms. Ransome that she was instructed not to answer without any claim of privilege or protection. Ms. Ransome should also be required to answer these questions, in particular since she has not sought a protective order on these lines of questioning, nor could she.

1. Her partner's occupation (motivation for fabrication)
2. Her parents' addresses (she claims that they spoke with Ms. Maxwell and Mr. Epstein and have knowledge of her "coming forward")
3. Where she was staying while in NY (paid for by Plaintiff's Counsel, motive for fabrication and bias)
4. Whether Alan Dershowitz contacted anyone on her behalf (communications with others by counsel not privileged)
5. Her stepmother's phone number and email address and physical address (she claims that they spoke with Ms. Maxwell and Mr. Epstein)
6. When she provided her photos to her lawyer (*date* of communication and production to attorney not privileged)

There simply was no basis for instructing the witness not to answer these questions, all of which are relevant and none of which are privileged. Ms. Ransome should be compelled to re-appear to answer all questions previously posed to her where she was instructed to answer, excepting the name of her current doctor who prescribed her SSRI medication.

**IV.    MS. RANSOME MUST BE REQUIRED TO PRODUCE REPONSIVE DOCUMENTS THAT HAVE BEEN WITHELD WITHOUT BASIS, AND IDENTIFY ANY OTHER DOCUMENTS WITHELD**

    In addition to being required to re-appear and respond to non-privileged questions, it became clear at Ms. Ransome's deposition that her counsel has withheld from production a number of relevant and responsive documents.

    The first and most obvious category of withheld documents are email communications between Ms. Ransome and her acquaintances while associated with Mr. Epstein (including the

12

people she has sued). Counsel for Ms. Ransome only produced selective portions of email chains. By way of example, Menninger Decl. Exhibit G shows an email chain containing six communications she had with ███████████, an alleged co-conspirator, yet only two of those emails were produced. The emails produced are in "screenshot" format rather than providing a complete production of the emails with metadata. Menninger Decl. Exhibit H shows 14 separate communications with ████████, an alleged co-conspirator, yet only four (4) emails were produced. Again, they were produced in "screenshot" format rather than providing a complete production of the emails with metadata. The same incomplete productions occur with respect to ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Ms. Ransome must be compelled to produce these documents which likely contain impeachment information, as well as any other documents that are being withheld regarding communications between her and any person whom she claims to have met through Mr. Epstein, or relating to or referencing any of the Defendants in the Jane Doe 43 Complaint.

Ms. Ransome also admitted to possessing multiple email communications with the reporter Maureen Callahan, her first contact in attempting to "come forward" with her story. These emails, including a picture she claims to have sent Ms. Callahan, are obviously responsive to RFP 3 for "All Documents that reference, relate to, or mention, whether by name or otherwise, the following individuals: Virginia Roberts, Ghislaine Maxwell, Jeffrey Epstein, ████████ ████████████████████████████████████████" There is no basis for withholding these documents, and they must be produced.

Ms. Ransome also failed to provide a complete copy of her application to the Fashion Institute of Technology ("F.I.T."), despite the fact that her claims center around an alleged

13

promise by Mr. Epstein to help her get into F.I.T. – *i.e.* the alleged benefit she was promised. The few documents produced suggest that the denial of admission to F.I.T. (if that is what occurred) is more likely a result of lack of required credentials or her failure to timely complete the application process. Either way, the complete application must be produced.

Ms. Ransome also testified that some of the photographs she produced were not taken by her, but were given to her on a disk by ▮▮▮▮▮. *See* Menninger Decl. Ex. A at 336:6-18. She could not however, identify which picture she claims to have taken, and which were included on this disk. *Id*. 340:19-341:5. The subpoena to Ms. Ransome requested the native format copies of all pictures (many of which are digital) so that the metadata, including the dates the photographs were taken, can be discerned. *See* Menninger Decl. Ex. I, Instruction 7 ("Responsive electronically stored information (ESI) shall be produced in its native form; that is, in the form in which the information was customarily created, used and stored by the native application employed by the producing party in the ordinary course of business."). Fed. R. Civ. P. 45(e)(1) requires production of documents in their native form, as specified, including all metadata. This includes a copy of the physical disk containing the photograph allegedly given to Ms. Ransome by ▮▮▮▮▮, and the fronts and backs of any physical pictures.

## CONCLUSION

As the adage goes, be careful what you ask for. Plaintiff, Ms. Ransome and their shared counsel asked to reopen discovery relating to Ms. Ransome. They promised to make her and any information that she may have immediately available. They must now do what they promised.

WHEREFORE, Defendant requests the entry of an Order:

1. Compelling production of all documents responsive to the subpoena, including communications with counsel because privilege has been waived. These include specifically, but are not limited to:

14

    a. Her current passport, and all missing pages excluded from the passport produced

    b. Her emails with Maureen Callahan, including ones wherein she sent photograph of her and her boyfriend referenced in her deposition

    c. Her FIT application

    d. The disc of photos provided to her by ▆▆▆▆▆▆▆▆ – containing the metadata

    e. All photographs either previously produced or withheld, with metadata or, if in hard copy, including the front and back of the photo

    f. All emails from ▆▆▆▆▆▆▆▆ by, between, or referencing any Defendant in Jane Doe 43, or communicating with any person Ms. Ransome knew through Jeffrey Epstein, or that related to her claims in this case and the *Jane Doe 43* complaint.

2. Requiring Ms. Ransome to re-appear for deposition and respond to all questions as to which she was instructed not to answer in her first deposition, excluding the name of her current prescribing doctor; and

3. Denying the Motion for Protective Order

Dated: March 2, 2017

        Respectfully submitted,

        */s/ Laura A. Menninger*
        Laura A. Menninger (LM-1374)
        Jeffrey S. Pagliuca (*pro hac vice*)
        *Ty Gee (pro hac vice)*
        HADDON, MORGAN AND FOREMAN, P.C.
        150 East 10th Avenue
        Denver, CO 80203
        Phone:   303.831.7364
        Fax:     303.832.2628
        lmenninger@hmflaw.com

        *Attorneys for Ghislaine Maxwell*

**CERTIFICATE OF SERVICE**

I certify that on March 2, 2017, I electronically served this *Defendant's Motion to Compel Non-Party Witness to Produce Documents, Respond to Deposition Questions, and Response to Motion for Protective Order* via ECF on the following:

| | |
|---|---|
| Sigrid S. McCawley<br>Meredith Schultz<br>BOIES, SCHILLER & FLEXNER, LLP<br>401 East Las Olas Boulevard, Ste. 1200<br>Ft. Lauderdale, FL 33301<br>smccawley@bsfllp.com<br>mschultz@bsfllp.com<br><br>Bradley J. Edwards<br>FARMER, JAFFE, WEISSING, EDWARDS,<br>FISTOS & LEHRMAN, P.L.<br>425 North Andrews Ave., Ste. 2<br>Ft. Lauderdale, FL 33301<br>brad@pathtojustice.com | Paul G. Cassell<br>383 S. University Street<br>Salt Lake City, UT 84112<br>cassellp@law.utah.edu<br><br>J. Stanley Pottinger<br>49 Twin Lakes Rd.<br>South Salem, NY 10590<br>StanPottinger@aol.com<br><br>*/s/ Nicole Simmons*<br>Nicole Simmons |