# United States District Court
# Southern District of New York

Virginia L. Giuffre,

       Plaintiff,                Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

       Defendant.
_____/

## PLAINTIFF'S UNREDACTED REPLY IN SUPPORT OF MOTION TO COMPEL DEFENDANT TO ANSWER DEPOSITION QUESTIONS

Plaintiff Virginia Giuffre, by and through her undersigned counsel, hereby files this Reply in Support of her Motion to Compel Defendant to Answer Deposition Questions. Instead of allowing Ms. Giuffre to take a full and complete deposition, Defendant flatly refused to answer questions critical to the key issues in this case. Contrary to Defendant's assertions, Ms. Giuffre is not engaged in a "fishing expedition" but rather seeks to ask highly-focused questions specifically relevant to this case. In particular, Ms. Giuffre seeks to ask the Defendant questions regarding her participation in or knowledge of sexual activities connected with Jeffrey Epstein's sexual abuse of females. Such questions are entirely appropriate in the discovery phase of this case, particularly where any answers will be maintained as confidential under the Protective Order entered in this case.

As the Court is aware from previous pleadings, at the heart of this case lies the issue of Defendant's knowledge that Ms. Giuffre was sexually abused by Jeffrey Epstein. Indeed, as the Defendant boldly acknowledges in her response (at p. 2), she intends to argue at trial that (among other things) she "never arranged for or asked [Ms. Giuffre] to have sex with anyone." At trial,

1

Ms. Giuffre intends to strongly disprove Defendant's false assertions and to demonstrate that Defendant recruited Ms. Giuffre to be involved in massages of a sexual nature with Epstein.

To develop evidence to support her position, Ms. Giuffre recently deposed Defendant about the central subjects in her case. Defendant flatly refused to answer a number of questions, and for the majority of the others, gave varying versions of "I don't recall." For example, when faced with the police report which contains statements from approximately thirty (30) different victims during a time frame which the Defendant acknowledges she was actively working for Epstein at his various homes, Defendant challenged the veracity of the victims' reports:

> "Q. Are you saying these 30 girls are lying when they gave these reports to police officers?
> A. I'm not testifying to their lies. I'm testifying to Virginia's lies."

*See* Declaration of Sigrid McCawley ("McCawley Decl.") at Exhibit 1, April 22, 2016 Deposition of Defendant at p. 89-90; 83-84. While Defendant was working with Epstein during the time period when these underage girls were visiting Jeffrey's home, Defendant claimed to be at the house maybe once in 2005. *Id.* at p. 84. Yet, according to flight manifests, in that same general time period, Defendant was listed as a passenger at least eleven times either landing in or departing from West Palm Beach, Florida on Jeffrey Epstein's private plane. *See* McCawley Decl. at Exhibit 1, April 22, 2016 Depo Tr. at p. 84; *see also* McCawley Decl. at Composite Exhibit 2, Flight Logs from Jeffrey Epstein's private planes.

Moreover, again according to flight logs, Defendant was on Epstein's planes over 300 times – including 23 times with Ms. Giuffre when Ms. Giuffre was underage. Yet, quite remarkably, Defendant claimed she "couldn't recall" even one of those flights. *See* McCawley Decl. at Exhibit 1, April 22, 2016 Deposition of Defendant at p. 120-122.

2

Defendant even testified that she did not recall having Ms. Giuffre at her London townhome with Prince Andrew. Defendant stuck to this incredible story despite flight logs establishing her traveling to London with Ms. Giuffre and despite a photograph the three – Ms. Giuffre, Prince Andrew and Defendant – all standing together in Defendant's home. *See* McCawley Decl. at Exhibit 1, April 22, 2016 Deposition of Defendant at p. 108-111. Defendant's deposition consisted almost entirely of "I don't recalls" or "I refuse to answer that question"[1] and also included a physical outburst that knocked the court reporter's computer off the conference room table. *See* McCawley Decl. at Exhibit 1, April 22, 2016 Deposition of Defendant at 207-208.

Among the many questions that Defendant refused to answer at her deposition were a number of questions designed to show that Defendant was well aware that, for Epstein, a "massage" was actually a code word sexual activity – i.e., not a therapeutic massage but rather activity that involved sexual gratification for Epstein. Defendant refused to answer all such questions, asserting that they involved "private adult sexual relationships" which did not "relate in any way" to Ms. Giuffre's claims. *Id.* at p. 4. But Defendant's involvement in such "relationships" with Epstein would show that she knew full well the fate that was in store for Ms. Giuffre when she accepted Defendant's invitation to come and provide "massages" to Epstein. Defendant admitted that she worked for Epstein from 1992 to 2009. *See* McCawley Decl. at

---

[1] For example, when asked:
"Q. Have you ever said to anybody that you recruit girls to take the pressure off you, so you won't have to have sex with Jeffrey, have you said that?
A. ***You don't ask me questions like that.*** First of all, you are trying to trap me, I will not be trapped. You are asking me if I recruit. I told you no. Girls meaning underage, I already said I don't do that with underage people and as to ask me about a specific conversation I had with language, we talking about almost 17 years ago when this took place. ***I cannot testify to an actual conversation or language that I used with anybody at any time.***"

*See* McCawley Decl. at Exhibit 1, April 22, 2016 Depo Tr. at p. 94-95.

3

Exhibit 1, April 22, 2016 Deposition of Defendant at p. 10-11, 410. As the Court knows, the Palm Beach Police Report demonstrates multiple incidents of "massages" being given by untrained minor children that involved sexual acts. *See* McCawley Decl. at Exhibit 3, Palm Beach Police Report. Defendant is also identified in that Palm Beach Police Report. *See* McCawley Decl. at Exhibit 3, Palm Beach Police Report at p. 75-76. And the details of Epstein's sexual activities with Defendant (for example) are highly relevant to this case, because they will help corroborate Ms. Giuffre's testimony that, while she was underage, she also engaged in sexual activity of an identical nature with Epstein.

To allow Defendant to avoid answering these questions would preclude Ms. Giuffre from getting critical evidence in this case. Consider, for example, Defendant recruiting an eighteen year-old girl to be an "assistant," bringing that girl to Epstein's home, telling her she could make more money if she would give Epstein a massage, and then instructing her to give a massage that involved sexual acts. Under Defendant's theory of discovery, Ms. Giuffre would be precluded from deposing her on that topic because the actions would culminate in "consensual adult sex." Yet, that scenario would fully validate the pattern of events that occurred with Ms. Giuffre when she was under the age of eighteen. It would obviously show a "modus operandi" by Jeffrey Epstein and Defendant, which is clearly admissible under Fed. R. Evid. 404(b).

Moreover, such inquiries are crucial to impeaching the Defendant at trial. During her deposition, Defendant attempted to characterize her work for Epstein as nothing more than a normal job handling hiring for the various mansions. *See* McCawley Decl. at Exhibit 1, April 22, 2016 Deposition Tr. of Defendant at p. 9-12. Ms. Giuffre should be able to contest that assertion by having Defendant fully answer questions about whether that alleged "job" involved

4

sexual activities, including orchestrating the hiring of females and converting massages into sexual encounters.

Defendant attempts to paint the picture that Ms. Giuffre somehow is interested in all sexual relationships that the Defendant may have been involved with. That is not true. Ms. Giuffre has no intention of asking unbridled questions. To be clear, Ms. Giuffre intends to ask Defendant only questions that involve the following very narrow and crucial subject areas: (1) Defendant's sexual relationship with Epstein from 1992 to 2009 – the time period in which she worked for Jeffrey Epstein and which Epstein (with the assistance of Defendant) was engaging in sexual acts with females under the cover of "massage"; (2) Defendant's sexual interactions with any person in Epstein's presence during that time period; (3) Defendant's sexual activities at Epstein's residences, including his private island "Little St. Jeff's," or his aircraft during that time period; (4) Defendant's sexual activities with identified participants in Epstein's sexual abuse during that time period; and (5) Defendant's sexual interactions that occurred during or through what began as a "massage"; and (6) Defendant's interactions with females to introduce to Jeffrey Epstein for the purpose of performing work, including sexual massages.

Defendant claims that such questions are a mere "fishing expedition" without acknowledging the fact that these questions go to critical issues in this case. Other witnesses have testified regarding Defendant's involvement in recruiting females for sex under the cover of a "massage." During the investigation of Jeffrey Epstein, certain household staff was deposed. Alfredo Rodriguez, who was Jeffrey Epstein's household manager, testified that the Defendant frequently stayed in Jeffrey Epstein's home and assisted with bringing in young girls to act as "masseuses" for Jeffrey Epstein.

> Q. "Okay. Going back to where we started here was, does Ghislaine Maxwell have knowledge of the girls that would come over to Jeffrey Epstein's house that are in

> roughly the same age group as C. and T. (minor children) and to have a good time as you put it?
> A. Yes.
> Q. And what was her involvement and/or knowledge about that?
> A. She knew what was going on."

*See* McCawley Decl. at Exhibit 4, Alfredo Rodriguez July 29, 2009 Dep. Tr. at 176-177. *See also* McCawley Decl. at Exhibit 4, Alfredo Rodriguez July 29, 2009 Depo Tr. at 96-101 (noting that high school age girls come to the home where Jeffrey Epstein and Ms. Maxwell reside). Juan Alessi, another household employee, also testified that young girls were regularly present at Jeffrey Epstein's home where Ghislaine Maxwell resides. *See* McCawley Decl. at Exhibit 5, Juan Alessi November 21, 2005 Sworn Statement at p. 15-16, 21. Specifically, Juan Alessi informed the Palm Beach Police Detective as follows: "Alessi stated that towards the end of his employment, the masseuses were younger and younger. When asked how young, Mr. Alessi stated they appeared to be sixteen or seventeen years of age *at most*." (emphasis added.) *See* McCawley Decl. at Exhibit 3, Palm Beach Police Report at p. 57.

During Juan Alessi's November 21, 2005 Sworn Statement taken by the Palm Beach Police Department, Mr. Alessi revealed that girls would come over to give "massages" and he observed Ms. Maxwell going upstairs in the direction of the bedroom quarters. *See* McCawley Decl. at Exhibit 5, Juan Alessi November 21, 2005 Sworn Statement at 10. He also testified that after the massages, he would clean up sex toys that were kept in "Ms. Maxwell's closet." *Id*. at 11-13. *See also* McCawley Decl. at Exhibit 6, Juan Alessi September 8, 2009 Depo Tr. at p. 76-77. He added that he and his wife were concerned with what was going on at the house (*Id*. at 14) and that he observed girls at the house, including one named "Virginia." *Id*. at 21.

Mr. Rodriguez also testified that Defendant also had naked pictures of girls performing sexual acts on her computer. *See* McCawley Decl. at Exhibit 7, Alfredo Rodriguez August 7, 2009 Dep. Tr. at 311-312; *See also* McCawley Decl. at Exhibit 6, Juan Alessi September 8, 2009

6

Depo Tr. at p. 40-41 ("I know she [Maxwell] went out and took pictures in the pool because later on I would see them at the desk or at the house. And nude - 99.9 percent of the time they were topless. They were European girls.").

> Q. "Did they appear to be doing any sexual?
> A. Yes, ma'am.
> Q. And in these instances were there girls doing sexual things with other girls?
> A. Yes, ma'am.
> Q. And I'm still talking about the pictures on Ms. Maxwell's computer.
> A. Yes, ma'am."

Upon leaving his employment, Rodriguez testified that Defendant threatened him that he should not tell anyone about what happened at the house:

> A. "I have to say something. Mrs. Maxwell called me and told me not to ever discuss or contact her again in a threaten(ing) way.
> Q. When was this?
> A. Right after I left because I call one of the friends for a job and she told me this, but, you know, I feel intimidated and so I want to keep her out…
> Q. She made a telephone call to you and what precisely did she say?
> A. She said I forbid you that you're going to be – that I will be sorry if I contact any of her friends again…She said something like don't open your mouth or something like that. I'm a civil humble, I came as an immigrant to service people, and right now you feel a little –I'm 55 and I'm afraid. First of all, I don't have a job, but I'm glad this is on tape because I don't want nothing to happen to me. This is the way they treat you, better do this and you shut up and don't talk to nobody and—
> Q. When you say this is the way they treat, who specifically are you talking about when you say that word they?
> A. Maxwell."

*See* McCawley Decl. at Exhibit 4, Alfredo Rodriguez July 29, 2009 Dep. Tr. at 169 – 172.

In sum, at the core of this case are statements made by Ms. Giuffre that she was recruited, by Defendant, to be paid as a masseuse, yet was enticed or coerced into engaging in sexual acts with Epstein and Defendant for money. She has further explained that the recruitment of females through the offer of some legitimate position was the typical way in which Defendant and Epstein lured unsuspecting females to the house before converting the relationship into a sexual

7

one. Ms. Giuffre has described the frequency of these "massages", the sexual tendencies of the participants, the manner in which the massages became sexual in nature, and Defendant's role at each stage.

In response, Defendant has called Ms. Giuffre's entire account "untrue" and "obvious lies." Defendant has instead tried to portray her role as nothing more than an Epstein employee performing typical household management duties. Any personal knowledge Defendant has of Epstein's sexual tendencies, habits, and use of massage for sex is entirely relevant to either corroborate Ms. Giuffre's account. Likewise, Defendant's participation in any sexual acts with Epstein, in his presence, on his properties, using his mode of converting massages into sex, or with females will directly corroborate Ms. Giuffre's account. On the other hand, without access to the answers to these inquiries, Ms. Giuffre will be unable to expose the bias of Defendant, unable to thoroughly cross-examine Defendant's position that she was just a lowly employee, and most importantly unable to demonstrate through the Defendant's own admissions that Ms. Giuffre's statements about Epstein and Defendant were absolutely true – and not "obvious lies."

Finally, Defendant fails to recognize that, for the discovery purposes at issue here, relevance "is an extremely broad concept." *Am. Fed'n of Musicians of the United States & Canada v. Sony Music Entm't, Inc.*, No. 15CV05249GBDBCM, 2016 WL 2609307, at *3 (S.D.N.Y. Apr. 29, 2016). And once relevance is shown, "the party resisting discovery bears the burden of demonstrating that, despite the broad and liberal construction afforded the federal discovery rules, the requests are irrelevant, or are overly broad, burdensome, or oppressive." *Id.* Here, the requests are not "overly broad" as Ms. Giuffre's specific explanations of the targets of her questions make clear. Moreover, answering the questions is not "oppressive," particularly given the fact that Defendant has placed *all* substantive aspects of the Deposition under seal. Of

course, once Defendant answers the question – and her answers are placed under seal – the parties can file any further motions that may be required to determine whether the answers may be introduced at trial.

## CONCLUSION

Defendant should be ordered to answer questions regarding sexual activity connected with Epstein's sexual abuse and sexual trafficking organization as specifically identified above

Dated: May 11, 2016

                                                Respectfully Submitted,

                                                BOIES, SCHILLER & FLEXNER LLP

By: /s/ Sigrid McCawley
     Sigrid McCawley (Pro Hac Vice)
     Meredith Schultz (Pro Hac Vice)
     Boies Schiller & Flexner LLP
     401 E. Las Olas Blvd., Suite 1200
     Ft. Lauderdale, FL 33301
     (954) 356-0011

     David Boies
     Boies Schiller & Flexner LLP
     333 Main Street
     Armonk, NY 10504

     Bradley J. Edwards (Pro Hac Vice)
     FARMER, JAFFE, WEISSING,
     EDWARDS, FISTOS & LEHRMAN, P.L.
     425 North Andrews Avenue, Suite 2
     Fort Lauderdale, Florida 33301
     (954) 524-2820

     Paul G. Cassell (Pro Hac Vice)
     S.J. Quinney College of Law
     University of Utah
     383 University St.
     Salt Lake City, UT 84112
     (801) 585-5202[2]

---

[2] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on the 11th day of May, 2016, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on the individuals identified below via transmission of Notices of Electronic Filing generated by CM/ECF.

    Laura A. Menninger, Esq.
    Jeffrey Pagliuca, Esq.
    HADDON, MORGAN & FOREMAN, P.C.
    150 East 10th Avenue
    Denver, Colorado 80203
    Tel: (303) 831-7364
    Fax: (303) 832-2628
    Email: lmenninger@hmflaw.com
           jpagliuca@hmflaw.com

                                            /s/ Sigrid S. McCawley
                                                Sigrid S. McCawley