**United States District Court**
**Southern District of New York**

Virginia L. Giuffre,

Plaintiff, Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

Defendant.
________________________________/

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO EXCEED PRESUMPTIVE TEN DEPOSITION LIMIT**

Sigrid McCawley
BOIES, SCHILLER & FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

## TABLE OF CONTENTS

Page

I. THE PROPOSED DEPOSITIONS ARE IMPORTANT TO THE FUNDAMENTAL CLAIMS AND DEFENSES IN THIS CASE, AND NONE ARE DUPLICATIVE. ........ 1

II. MS. GIUFFRE IS SEEKING HIGHLY RELEVANT TRIAL TESTIMONY. .................. 6

III. MS. GIUFFRE'S REQUEST IS TIMELY. .......................................................................... 9

## TABLE OF AUTHORITIES

Page

**Cases**

*Atkinson v. Goord*,
No. 01 CIV. 0761 LAKHBP, 2009 WL 890682 (S.D.N.Y. Apr. 2, 2009)....3

*Gen. Elec. Co. v. Indem. Ins. Co. of N. Am.*,
No. 3:06-CV-232 (CFD), 2006 WL 1525970 (D. Conn. May 25, 2006)....9

*LiButti v. United States*,
107 F.3d 110 (2d Cir. 1997)....8

**Rules**

Fed. R. Evid. 404(b)....7

Fed. R. Evid. 415(a)....7

Plaintiff Virginia Giuffre, by and through her undersigned counsel, hereby files this reply in support of her Motion to Exceed Presumptive Ten Deposition Limit. The motion should be granted because Ms. Giuffre has shown good cause for needing to exceed the ten deposition limit and in light of recent developments, Ms. Giuffre has streamlined her request, and now seeks only a total of three additional depositions. Notably, while Defendant contests Ms. Giuffre's motion, Defendant has herself unilaterally – **and without seeking any Court approval –** set ***twelve*** witnesses for deposition in this matter. In contrast to Defendant's unilateral action, Ms. Giuffre has properly sought this Court's permission. The Court should grant her motion and allow her to take the three additional depositions.

## I. THE PROPOSED DEPOSITIONS ARE IMPORTANT TO THE FUNDAMENTAL CLAIMS AND DEFENSES IN THIS CASE, AND NONE ARE DUPLICATIVE.

Defendant argues that the depositions Ms. Giuffre seeks to take are somehow "duplicative" of each other. Even a quick reading of the Defendant's pleading makes clear this is untrue. Defendant repeatedly gives her own narrow view of what existing witnesses have said. For example, Defendant argues that Ms. Sjoberg "did not corroborate that [Ms. Giuffre] is telling the truth." Defendant's Response at 5. Defendant's characterization is untrue.[1] But, as the mere

[1] Defendant wholly mischaracterized Ms. Sjoberg's testimony as involving "professional massages." Defendant's Resp. at 5. In fact, Ms. Sjoberg testified that, when she was a twenty-one-year-old college student, Defendant (not Jeffrey Epstein) recruited and hired her under the pretext of being a personal assistant to provide sexual massages. As one example of this testimony, Sjoberg testified that Defendant became angry with her for not "finishing your job" when Defendant was the one who ended up having to bring Epstein to orgasm when Ms. Sjoberg did not. *See* McCawley Dec at Exhibit 1, Sjoberg Dep. Tr. at 142:25-143:14(Q. What did you understand Maxwell to mean when you said that you hadn't finished the job, with respect to the camera? A. She implied that I had not brought him to orgasm. Q. So is it fair to say that Maxwell expected you to perform sexual acts when you were massaging Jeffrey? A. I can answer? Yes, I took that conversation to mean that it what was expected of me.) Ms. Sjoberg's testimony also shows that Defendant was a predator of young women and girls, and that her business was to provide girls for Jeffrey Epstein to have sex with. *Id*. at 141:3-5; 150:16-151:2 (Q. Did Maxwell ever ask you to bring other girls over to – for Jeffrey? A. Yes. Q. I want to go back to this: You testified to two things just now with Sigrid that you said were implied to you. A. Okay. Q. The

fact of this dispute confirms, this case is going to be hotly contested and the weight of the evidence on each side is going to be vitally important. The Court is well aware of many other civil cases where the parties have taken far more than ten depositions by mutual agreement. Defendant's refusal to agree to a few more depositions here is simply an effort to keep all the relevant facts from being developed.

Since Ms. Giuffre filed her initial motion seeking seven additional deposition, she has worked diligently to try to streamline the necessary depositions and has discovered new information concerning witnesses and their knowledge of the claims in this case. Accordingly, Ms. Giuffre currently brings before this Court a significantly shorter list[2] of witnesses she needs to depose to prove her claim, with some alterations. To be clear, Ms. Giuffre has narrowed her request and is now only seeking an additional three depositions from the Court as follows:

For descriptions concerning the depositions already taken (Defendant; Ms. Sjoberg; Mr. Alessi; Mr. Rodgers; and Mr. Rizzo), and those yet to be taken (Mr. Epstein; Mr. Gow; [REDACTED] Ms. Kellen; Ms. Marcinkova; Mr. Recarey; and Mr. Brunel), Ms. Giuffre references and incorporates her descriptions in the moving brief. The only remaining witness is William Jefferson Clinton. His deposition is necessary for the following reason:

---

first one was it would take pressure off of Maxwell to have more girls around? A. Right. Q. What exactly did Maxwell say to you that led you to believe that was her implication? A. She said she doesn't have the time or desire to please him as much as he needs, and that's why there were other girls around.).
That Ms. Sjoberg never saw Ms. Giuffre give a massage to Ms. Maxwell is immaterial. Ms. Sjoberg was with Defendant and Epstein when Ms. Giuffre was a minor child, and corroborates Ms. Giuffre's accounts concerning her being trafficked to Prince Andrew. *Id*. at 21-22. Ms. Giuffre refers the Court to Ms. Sjoberg's deposition testimony in its entirety (DE 173-5). It is depositions like this - verifying Ms. Giuffre's account of being recruited by Defendant for sex with Epstein – that Defendant is trying avoid. However, multiple other witnesses have testimony that supports Ms. Giuffre's claims, in different and various ways, and Ms. Giuffre needs that testimony to prove her defamation claim against Defendant.

[2] Ms. Giuffre is no longer seeking the deposition testimony of Emmy Taylor, [REDACTED], Jo Jo Fontanella, and Michael Reiter.

- In a 2011 interview, Ms. Giuffre mentioned former President Bill Clinton's close personal relationship with Defendant and Jeffrey Epstein. While Ms. Giuffre made no allegations of illegal actions by Bill Clinton, Ms. Maxwell in her deposition raised Ms. Giuffre's comments about President Clinton as one of the "obvious lies" to which she was referring in her public statement that formed the basis of this suit. Apart from the Defendant and Mr. Epstein, former President Clinton is a key person who can provide information about his close relationship with Defendant and Mr. Epstein and disapprove Ms. Maxwell's claims.

Ms. Giuffre is still working diligently with opposing counsel, these witnesses, and their attorneys on scheduling, as well as identifying other witnesses who may have factual information about the case. But, at this time, she seeks this Court's approval for an additional three depositions – depositions that will not consume the full seven hours presumptively allotted.

All three prongs of the three-factor test to evaluate a motion for additional depositions strongly support granting the motion. *Atkinson v. Goord*, No. 01 CIV. 0761 LAKHBP, 2009 WL 890682, at *1 (S.D.N.Y. Apr. 2, 2009). First, as reviewed in detail on a witness-by-witness basis above, the discovery sought is not duplicative. The proposed deponents include the individual who assisted in making the defamatory statement, women Defendant Maxwell hired to recruit girls for Jeffrey Epstein, an individual with intimate knowledge of Defendant and Epstein's sexual trafficking ring, other victims of Jeffrey Epstein (including a then underage victim), Mr. Epstein himself, and other witnesses who can corroborate important pieces of Ms. Giuffre's statements or refute Ms. Maxwell's statements and positions. These witnesses' testimony will corroborate Ms. Giuffre's account of Defendant being a recruiter of females for Epstein and corroborate the type of abuse she and others suffered. Sadly, Ms. Giuffre is far from the only one of Defendant's victims, and there are other witnesses whose testimony is necessary in order to demonstrate the truth of Ms. Giuffre's claims and the falsity of the statements made by Defendant.

Second, if Ms. Giuffre is denied these depositions, she will not have had the opportunity to obtain the information by other discovery in this case. The Court will recall from Ms. Giuffre's opening motion that Defendant's surprising lack of memory has, in no small part, caused the need for additional depositions. *See* Motion at 5-8 (listing 59 examples of memory lapses during Ms. Maxwell deposition, including inability to remember events recorded on aircraft flight logs or a photograph). Defendant offers no explanation for her convenient forgetfulness. Moreover, evidence of being recruited by Defendant and being sexually assaulted is not something Ms. Giuffre can obtain through requests for production or through interrogatories. The only way of obtaining such evidence is from witness testimony by those who were victimized, those who assisted Defendant in recruiting and abuse, and those who observed the recruiting or the abuse. For example, Rinaldo Rizzo, an estate manager for a friend of Defendant and Epstein's, testified about an episode where Defendant had threatened a terrified 15 year old girl and confiscated her passport to try to make her have sex with Epstein on his private island: *See* McCawley Decl. at Exhibit 2, Rizzo Deposition [3] Mr. Rizzo testified about another episode where Defendant gave instructions to, and presided over, a group of eleven girls

[3] [redacted]

as young as 14 years old playing a "kissing game" with and for Jeffrey Epstein.[4] Finally, the Defendant appears to be concealing critical evidence of the sexual abuse that other witnesses have testified she possesses. [redacted]. Yet Defendant has failed to produce a single photo in this case. *See* McCawley Decl. at Exhibit 3, Alessi Deposition at 36-41. Document discovery and interrogatories are not helpful in obtaining this type of evidence: depositions are needed.

Third, the burden and expense of this proposed discovery is limited to three additional depositions. Defendant in this case is a multi-millionaire with able counsel. Three depositions will not cause her undue burden, expense, or inconvenience. These depositions are important to resolving issues in this case. Given that very few witnesses reside within 100 miles of the courthouse and therefore cannot be compelled to trial, this request for only three additional depositions is a reasonable request.

While Defendant opposes Ms. Giuffre's request for Court approval of more than ten depositions, she has unilaterally noticed more than ten depositions without bothering to seek approval. As of the date of this filing, Defendant's counsel has issued ***twelve*** subpoenas for

---

4 [redacted]

deposition testimony – the almost the exact same number Ms. Giuffre is seeking.[5] Defendant cannot credibly oppose Ms. Giuffre's additional depositions while she, herself, is trying to take more than ten without leave of court.[6]

It is plain why Defendant does not want these depositions to go forward. Ms. Sjoberg, Mr. Alessi, and Mr. Rizzo's testimony was harmful to Defendant's case, and the additional depositions will provide further evidence that Defendant acted as Jeffrey Epstein's madam, proving the truth of Ms. Giuffre's statements that Defendant proclaimed publically as "obvious lies."

## II. MS. GIUFFRE IS SEEKING HIGHLY RELEVANT TRIAL TESTIMONY.

All of the people Ms. Giuffre seeks to depose have discoverable and important information regarding the elements of Ms. Giuffre's claims. Ms. Giuffre stated that Defendant recruited her and other young females for sex with Jeffrey Epstein. The people she now seeks to depose are all witnesses who can testify to Defendant working essentially as a madam for Jeffrey Epstein, recruiting young females for Epstein, or corroborate other important aspects of her statements. The fact that Defendant recruited girls, some of which were underage, for Epstein makes Ms. Giuffre's claim that she was also recruited by Defendant to ultimately have sex with Epstein and others more credible – and that Defendant's denials of any involvement in such recruiting is a bald-faced lie. Witnesses will testify that Defendant's recruitment and management of the girls for Jeffrey Epstein was a major aspect of Defendant's job, and that Ms.

---

[5] Defendant's counsel has taken the deposition testimony of (1) Ms. Giuffre; (2) Ms. Giuffre's mother (Lynn Miller); (3) Ms. Giuffre's father (Sky Roberts); and (4) Ms. Giuffre's physician (Dr. Olson). Defendant's counsel has noticed the following witnesses for deposition: (5) Mr. Austrich; (6) Mr. Figueroa; (7) Ms. Degorgieou; (8) a known victim of Jeffrey Epstein; (9) Mr. Weisfield; (10) Ms. Churcher; (11) Ms. Boylan; and (12) the 30(b)(6) witness for Victims Refuse Silence.

[6] Defendant has unilaterally scheduled - without consulting counsel for Ms. Giuffre - at least two of these depositions for days when depositions of Ms. Giuffre's witnesses have been set.

Giuffre's account of her sexual abuse and Defendant's involvement accords perfectly with other witnesses' accounts of what Defendant's job was for Epstein.[7]

That other young females were similarly recruited by the Defendant is evidence that Ms. Giuffre is telling the truth about her experiences – and thus direct evidence that Defendant defamed her when calling her a liar. Clearly, if Ms. Giuffre can establish that Defendant's modus operandi was to recruit young females for Epstein, that helps corroborate Ms. Giuffre's own testimony that Defendant recruited her for the same purposes and in the same manner. Although the Court need not make a final ruling on this evidentiary issue now, Rule 404(b) itself makes such testimony admissible. *See* Fed. R. Evid. 404(b) (other act "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."). Indeed, even more specifically than the general provisions of Rule 404(b), Rule 415 makes these other acts admissible, due to the fact that those involved in sexual abuse of minors have a strong propensity for repeating those crimes. *See* Fed. R. Evid. 415(a)( ("In a civil case involving a claim for relief based on a party's alleged sexual assault or child molestation, the court may admit evidence that the party committed any other sexual assault or child molestation.").

Entirely apart from corroborating Ms. Giuffre's own individual abuse, however, Defendant fails to recognize that in calling Ms. Giuffre a "liar", she was attacking all aspects of Ms. Giuffre's account – including Ms. Giuffre's statements that Defendant served generally as a recruiter of girls for Epstein and that Epstein sexually abused the underage girls that were

[7] Defendant's specious suggestion that Ms. Giuffre heard about the other girls whom she recruited for sexual purposes and then decided to "hop on the band wagon" (Defendant's Resp. at 8 n.7) tacitly admits that Defendant procured a "band wagon" of girls for Jeffrey Epstein to abuse. Moreover, Defendant cannot refute the documentary evidence that she was on Epstein private jet with Ms. Giuffre over 20 times while Ms. Giuffre was a minor – flights that Defendant is, quite conveniently, now unable to recall. Motion at 5-8.

brought to him. Thus, in this defamation case, the testimony of these witnesses are admissible not only to bolster Ms. Giuffre's testimony about her individual abuse, but because they are simply part of the body of statements whose truth or falsity is at issue in this case.

In addition, one of the witnesses that Ms. Giuffre seeks to depose is registered sex offender Jeffrey Epstein, who stands at the center of the case. Indeed, some of the most critical events took place in the presence of just three people: Ms. Giuffre, defendant Maxwell, and Epstein. If Epstein were to tell the truth, his testimony would fully confirm Ms. Giuffre's account of her sexual abuse. Epstein, however, may well attempt to support Defendant by invoking the Fifth Amendment to avoid answering questions about his sexual abuse of Ms. Giuffre. Apparently privy to her former boyfriend Epstein's anticipated plans in this regard,[8] Defendant makes the claim that it would be a "convoluted argument" to allow Ms. Giuffre to use those invocations against her. Defendant's Resp. at 3. Tellingly, Defendant's response brief cites no authority to refute that proposition that adverse inference can be drawn against co-conspirators. Presumably this is because, as recounted in Ms. Giuffre's opening brief (at pp. 20-22), the Second Circuit's seminal decision of *LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997), squarely upheld the drawing of adverse inferences based on a non-party's invocation of a Fifth Amendment right to remain silent. The Second Circuit instructed that, the circumstances of given case, rather than status of particular nonparty witness, determines whether nonparty witness' invocation of privilege against self-incrimination is admissible in course of civil litigation. *Id*. at122-23. The Second Circuit also held that, in determining whether nonparty witness' invocation of privilege against self-incrimination in course of civil litigation and

[8] In discovery, Defendant Maxwell has produced several emails between Epstein and herself discussing Ms. Giuffre.

drawing of adverse inferences is admissible, court may consider the following nonexclusive factors:

> (1) nature of witness' relationship with and loyalty to party;
> (2) degree of control which party has vested in witness in regard to key facts and subject matter of litigation;
> (3) whether witness is pragmatically noncaptioned party in interest and whether assertion of privilege advances interests of witness and party in outcome of litigation; and
> (4) whether witness was key figure in litigation and played controlling role in respect to its underlying aspects.

*Id*. at 124-25. Ms. Giuffre will be able to establish that all these factors tip decisively in favor of allowing an adverse inference. Accordingly, her efforts to depose Epstein, Marcinkova, and Kellen seek important information that will be admissible at trial.

## III. MS. GIUFFRE'S REQUEST IS TIMELY.

Defendant also argues that this motion is somehow "premature." Defendant's Resp. at 2-3. Clearly, if Ms. Giuffre had waited to file her motion until later, Defendant would have argued until the matter came too late. The motion is proper at this time because, as of the date of this filing, fact discovery closes in 17 days (although Ms. Giuffre has recently filed a motion for a 30-day extension of the deadline). In order to give the Court the opportunity to rule as far in advance as possible – thereby permitting counsel for both side to schedule the remaining depositions – Ms. Giuffre brings the motion now. She also requires a ruling in advance so that she can make final plans about how many depositions she has available and thus which depositions she should prioritize. [9]

[9] Defendant tries to find support for her prematurity argument in *Gen. Elec. Co. v. Indem. Ins. Co. of N. Am.*, No. 3:06-CV-232 (CFD), 2006 WL 1525970, at *2 (D. Conn. May 25, 2006). However, in that case, the Court found a motion for additional depositions to be premature, in part, because "[d]iscovery has not even commenced" . . . and the moving party "ha[d] not listed with specificity those individuals it wishes to depose." Of course, neither of these points applies in this case at hand: the parties are approaching the close of fact discovery, and Ms. Giuffre has provided detailed information about each individual she has deposed already and still seeks to depose.

An additional reason this motion is appropriate now is that, despite Ms. Giuffre's diligent pursuit of depositions, many witnesses have cancelled their dates, failed to appear, or wrongfully evaded service. These maneuvers have frustrated Ms. Giuffre's ability to take their depositions in a logical and sequential fashion, complicating the planning of a deposition schedule. For example, on April 11, 2016, Ms. Giuffre served notice on Defendant's counsel for the deposition of Rinaldo Rizzo, setting it for May 13, 2016. Nearly a month later, just a few days before that properly noticed deposition, Defendant's counsel requested that it be rescheduled, and, therefore, that deposition did not take place until June 10, 2016. Additionally, three other important witnesses evaded Ms. Giuffre's repeated efforts to serve them. It took Ms. Giuffre's motion for alternative service (DE 160) to convince Jeffrey Epstein to allow his attorney to accept service of process. The Court also has before it Ms. Giuffre's motion to serve Sarah Kellen and Nadia Marcinkova by alternative service. These witnesses' evasion of service delayed the taking of their depositions, and, as of the date of this filing, none have been deposed yet.

## CONCLUSION

For all these reasons, Ms. Giuffre should be allowed to take three more depositions than the presumptive ten deposition limit – a total of thirteen depositions.

Dated: June 13, 2016.

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By: /s/ Sigrid McCawley

Sigrid McCawley (Pro Hac Vice)
Boies Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

David Boies
Boies Schiller & Flexner LLP

333 Main Street
Armonk, NY 10504

Bradley J. Edwards (Pro Hac Vice)
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820

Paul G. Cassell (Pro Hac Vice)
S.J. Quinney College of Law
University of Utah
383 University St.
Salt Lake City, UT 84112
(801) 585-5202[10]

[10] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on the 13th day of June, 2016, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on the individuals identified below via transmission of Notices of Electronic Filing generated by CM/ECF.

Laura A. Menninger, Esq.
Jeffrey Pagliuca, Esq.
HADDON, MORGAN & FOREMAN, P.C.
150 East 10th Avenue
Denver, Colorado 80203
Tel: (303) 831-7364
Fax: (303) 832-2628
Email: lmenninger@hmflaw.com
jpagliuca@hmflaw.com

/s/ Sigrid S. McCawley
Sigrid S. McCawley