UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

VIRGINIA L. GIUFFRE,

    Plaintiff,

v.

GHISLAINE MAXWELL,

    Defendant.

15-cv-07433-RWS

---------------------------------------------------X

**REPLY IN SUPPORT OF MOTION TO REOPEN DEPOSITION OF PLAINTIFF VIRGINIA GIUFFRE**

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
East 10th Avenue
Denver, CO 80203
303.831.7364

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.  PLAINTIFF'S PRODUCTION OF KEY DOCUMENTS AFTER HER DEPOSITION
    NECESSITATES ADDITIONAL EXAMINATION ........................................................ 2

    A.  Plaintiff failed to identify her health care providers and produce their records prior to
        her deposition, despite this Court's order ................................................................ 2

    B.  Plaintiff failed to produce emails from her iCloud and Hotmail accounts ....................... 4

    C.  Plaintiff failed to address issue of her employment records ........................................ 5

    D.  Newly obtained education records and other witness testimony contradict Plaintiff's
        deposition ............................................................................................................. 5

    E.  Plaintiff identified new witnesses in her Rule 26 disclosures after her deposition .......... 6

II. PLAINTIFF'S COUNSEL INSTRUCTED PLAINTIFF NOT TO ANSWER RELEVANT,
    NON-PRIVILEGED QUESTIONS IN HER FIRST DEPOSITION ..................................... 7

III. PLAINTIFF CONCEDES THAT HER ERRATA SHEET IS PROPERLY THE SUBJECT
     FOR RE-OPENED DEPOSITION ............................................................................... 9

IV. RESTRICTIONS TO TWO HOURS AND VIA VIDEOTAPE UNJUSTIFIED .................... 9

CERTIFICATE OF SERVICE ............................................................................................ 12

Defendant Ghislaine Maxwell submits this Reply to Plaintiff's Opposition ("Response") to Motion to Reopen Deposition of Plaintiff ("Motion"), and as grounds therefore states as follows:

### INTRODUCTION[1]

Plaintiff concedes the reopening of her deposition based on (a) the late production of records concerning Plaintiff's medical and mental health treatment, (b) her unjustifiable refusal to answer questions related to statements the media "got wrong," (c) material edits to her deposition testimony through her errata sheet. Plaintiff did not address her newly disclosed employment records and thus it should be deemed admitted. Apparently, she still contests questions regarding other items not disclosed until <u>after</u> her deposition, including (a) iCloud and Hotmail emails, (b) school records from Forest Hills High School, Wellington High School and Survivors Charter school, and (c) witnesses newly identified in her Third and Fourth Revised Rule 26 disclosures. There is no legally principled reason to exclude these topics during Plaintiff's reopened deposition and Ms. Maxwell should be permitted to examine Plaintiff based on this information produced *after* her deposition although requested *before*.

The other limitations proposed by Plaintiff are not appropriate. Due to the quantity of documents and the number of topics, two hours will be insufficient to appropriately inquire. Moreover, Plaintiff's deposition should be in person; she chose to move to Australia from Colorado during the pendency of this case and has been in the US for weeks attending witness depositions and other litigation matters by her own choosing. Deposition by videoconference will be extremely cumbersome to accomplish given the hundreds of pages of documents to be

---

[1] Defendant conferred with counsel for Plaintiff regarding this Motion prior to its filing. By email of May 8, 2016, Mr. Pagliuca requested conferral regarding Plaintiff's refusal to answer questions at her deposition. That conferral was held on May 9 and May 10. Mr. Edwards offered, for example, to consider whether a verified representation by Plaintiff all of the statements that the media "got wrong" would suffice instead of a re-opened deposition.

1

covered and which were necessitated by Plaintiff's late disclosures and refusal to answer questions at her first deposition.

## ARGUMENT

I. **PLAINTIFF'S PRODUCTION OF KEY DOCUMENTS AFTER HER DEPOSITION NECESSITATES ADDITIONAL EXAMINATION**

   A. **Plaintiff failed to identify her health care providers and produce their records prior to her deposition, despite this Court's order**

Plaintiff concedes that numerous medical records were not produced until after her May 3rd deposition, to wit:



2

Furthermore, there remain numerous doctors from the relevant time frame for whom <u>no</u> records have been provided.  In addition to all of the treatment providers from 1999-2002, no records have been provided by Plaintiff for:



Menninger Decl., Ex. O.

Plaintiff, while not opposing the reopening of the deposition for documents produced after that date, writes to refute supposed "baseless suggestions of impropriety."  Yet, her Response contains additional impropriety.  Plaintiff repeatedly asserts that she *has* produced and disclosed documents but her chart and her arguments neglect to mention that those documents were only sought and produced *after* the deposition, indeed up to and including the very same day she filed her Response on June 28.  Her claim that she could not "remember" Dr. Donohue or Judith Lightfoot until her deposition is hard to believe given she had consulted with them in the days and weeks just before her Interrogatory Responses.  *Id*.; Ex. D at 334-35.  Further, all of the 2015-2016 medical records from Colorado were only produced because *the defense*, not

---

² Defendant's Interrogatories sought the identities and locations of Plaintiff's health care providers, the dates of treatment, the nature of the treatment, medical expenses to date, and releases for each.  Inexplicably, despite this Court's Order to answer the interrogatory, Plaintiff still has not provided the dates of treatment, the nature of treatment or any information concerning expenses for *any* of her providers.

Plaintiff, sent a subpoena to Dr. Olson and his hospital for records and then learned that Plaintiff had been seen by other doctors there and secured a release which the *defense* sent to Plaintiff. As detailed more fulsomely in the Reply in Support of Sanctions filed contemporaneously, the late disclosures were not due to Ms. Giuffre and her attorneys going to "great lengths" to track down records; they have only responded to requests for doctor's records when the *defense* has brought to their attention missing doctors and records. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

Given Plaintiff's agreement to submit to questioning based on the late-disclosed records, it is hardly worth the Court or counsel's time to again correct the record as to each of Plaintiff's misstatements. In lieu, Ms. Maxwell hereby incorporates by reference her Reply in Support of Motion for Sanctions which addresses many of Plaintiff's misstatements concerning production of her health care providers' identities and their records.

      **B.**      **Plaintiff failed to produce emails from her iCloud and Hotmail accounts**

Plaintiff objects to further questioning regarding emails from her iCloud and Hotmail accounts and submits that Ms. Maxwell's claims regarding these missing emails "are simply false" because she "produced every relevant document from her iCloud account." Resp. at 8. Plaintiff ignores the most important fact: <u>she produced them after the deposition</u> and only after Ms. Maxwell issued a subpoena to the email providers. The emails were produced on <u>June 10</u>, more than one month after Plaintiff's deposition. *See* Menninger Decl., Ex. K.

Similarly, following Ms. Maxwell's subpoena to Hotmail, that company has now confirmed that Plaintiff has an active account with them and that the account has been used by

4

Plaintiff since the beginning of this case. Plaintiff concededly did not search that account for responsive documents but has represented to this Court that she will sign the release provided by Microsoft, obtain the records and search the account. Thus, any responsive emails from that account likewise will not have been available at the time of Plaintiff's deposition.

Plaintiff does not argue the responsive emails are not relevant, nor can she. Thus, Ms. Maxwell should be entitled to reopen Plaintiff's deposition to inquire regarding those emails as well as any that are produced from the Hotmail account.

### C. Plaintiff failed to address issue of her employment records

In her Response, Plaintiff did not address Ms. Maxwell's request to reopen Plaintiff's deposition regarding late-disclosed employment records. Accordingly, the issue should be deemed admitted and inquiry into Plaintiff's employment based on the new records permitted.

### D. Newly obtained education records and other witness testimony contradict Plaintiff's deposition

Plaintiff testified at her deposition that she began working at Mar-a-Lago during a break from her GED classes, that she believed it was a summer job, and that while she cannot pinpoint the exact date, it was to the best of her recollection in or about June 2000 when she was still 16 years old. Menninger Decl., Ex. D at 57. This Court ordered Plaintiff to produce her education records and, mere days before her deposition, Plaintiff signed releases for some of the institutions she attended in Florida. Defendant obtained records pursuant to those releases <u>after</u> the deposition (despite having sought them by discovery request in February). The transcripts from Royal Palm Beach and Forest Hills High School directly contradict Plaintiff's story. In fact, they are highly relevant because they show that Plaintiff was <u>in school</u> during the summer of 2000, finishing on August 15, 2000, when she was 17 years old. Appropriate areas of inquiry at a reopened deposition of Plaintiff would be matching her story up to the records and

5

demonstrating that she did not start working at Mar-a-Lago until she was 17 years old --- despite her well-publicized claims that she was a "sex slave" for Jeffrey Epstein from the age of 15 years old beginning in 1998.

Furthermore, testimony from other witnesses in this case, including Plaintiff's former boyfriend Tony Figueroa, materially contradict Plaintiff's claims. Mr. Figueroa testified on June 24 that he and Plaintiff were enrolled in an all-day high school and that they attended school together every day and that Plaintiff was not working for Epstein. Menninger Decl., Ex. P. Based on these newly discovered records, Mr. Figueroa confirmed that time period as October 2001 – March 2002, directly contradicting Plaintiff's deposition testimony that she was a "sex slave" for 4 years from 1998-2002 and that she was with Epstein constantly during that four year period.

Based on the newly discovered education records and other witness testimony concerning those records, Ms. Maxwell should be entitled to question Plaintiff at her continued deposition about those records. Ms. Maxwell lacked those records at the time of Plaintiff's deposition because Plaintiff refused to produce her education records, Ms. Maxwell had to file a Motion to Compel and obtain a Court Order before Plaintiff would sign a release for the records. Therefore, there is no basis for Plaintiff to object to a continued deposition regarding the newly obtained records and witness testimony.

E. **Plaintiff identified new witnesses in her Rule 26 disclosures after her deposition**

Plaintiff does not address the fact that she added 28 new witnesses to her Rule 26 disclosures after her deposition.[3] The new witnesses added by Ms. Maxwell to her Rule 26 list

---

[3] The only mention Plaintiff makes is asking the Court to deny Ms. Maxwell's motion to strike the new witnesses. Ms. Maxwell stated that her motion to strike would be by *separate* motion (Mot. at 10), thus there is no motion to strike.

6

are almost entirely ones that were taken off Plaintiff's list. Presumably, they have information relevant to this case and Ms. Maxwell is entitled to question Plaintiff on these disclosures to determine what, if any, relevant information these newly disclosed witnesses might have.

## II. PLAINTIFF'S COUNSEL INSTRUCTED PLAINTIFF NOT TO ANSWER RELEVANT, NON-PRIVILEGED QUESTIONS IN HER FIRST DEPOSITION

Plaintiff's counsel glosses over their instruction to Plaintiff not to answer questions at her deposition regarding non-privileged issues.

During her deposition, the following exchange occurred:

> **Q: You did not read the articles published by Sharon Churcher about your stories to Sharon Churcher?**
> A: I have read some articles about what Sharon Churcher wrote. And a lot of the stuff that she writes she takes things from my own mouth and changes them into her own words as journalists do. And I never came back to her and told her to correct anything. What was done was done. There was nothing else I can do.
>
> **Q: So even if she printed something that were untrue you didn't ask her to correct it, correct?**
> A: There was things that she printed that really pissed me off, but there was nothing I could do about it. It's already out there.
>
> **Q: She printed things that were untrue, correct?**
> A: I wouldn't say that they were untrue. I would just say that she printed them as journalists take your words and turn them into something else.
>
> **Q: She got it wrong?**
> A: In some ways, yes.
>
> **Q: Did she print things in her articles that you did not say to her?**
> MR. EDWARDS: I object and ask that the witness be given the opportunity to see the document so that she can review it and answer that question accurately. Otherwise she's unable to answer the question. I'm not going to allow her to answer.
>
> **Q: Did Sharon Churcher print things that you did not say?**
> MR. EDWARDS: I'm going to instruct my client not to answer unless you give her what it is that you're talking about that was printed. And she will tell you the answer, the accurate answer to your question. Just without the document to refresh her recollection and see it, she's not going to answer the question.
>
> **Q: Did Sharon Churcher print things that you did not say?**
> MR. EDWARDS: Same objection. Same instruction not to answer.

7

>**Q: Did Sharon Churcher print things that you felt were inaccurate?**
>MR. EDWARDS: Same objection. Same instruction. If she sees the document, she's going to answer every one of these questions.
>
>**Q: Did any other reporter print statements that you believe are inaccurate?**
>MR. EDWARDS: Same objection. Same instruction.
>
>**Q: Did any reporter print statements about Ghislaine Maxwell that were inaccurate?**
>MR. EDWARDS: Same objection. Same instruction.

Menninger Decl., Ex. D at 220-23.

At no time did Plaintiff say she "could not remember" what Churcher "got wrong." Mr. Edwards refused to allow her to answer the question unless her recollection was "refreshed," even though she never said she lacked a recollection. This is a patently improper instruction not to answer, as well as improper suggestion to his client that she needed to have a "refreshed" memory by looking at articles from Ms. Churcher. The instruction not to answer was improper and Plaintiff should be required to answer all questions regarding inaccuracies in the media reports of this case. Indeed, it is hard to conceive of an area more directly relevant to this single-count defamation case in which Ms. Maxwell has said that Plaintiff's statements to the press were lies, and now even Plaintiff is saying that the press "got it wrong".

Plaintiff's counsel similarly would not allow Plaintiff to answer questions regarding her communications with law enforcement, specifically regarding Ms. Maxwell. Ms. Maxwell respectfully disagrees that this area should be off limits. Efforts by a Plaintiff to have another party charged with a crime, including any statement made during the course of those efforts, are clearly relevant, reflect bias and motive, and may be used for impeachment. There is no privilege which attaches to a civil litigant's prior statements to law enforcement and to the extent

8

any such statements exist, Ms. Maxwell should be permitted to inquire regarding the statements and the circumstances of surrounding their issuance, during Plaintiff's reopened deposition.

Ms. Maxwell disagrees with Plaintiff's contention regarding the identity of her expert but agrees not to inquire into that topic during the reopened deposition in light of the upcoming expert disclosure deadlines.

In light of the clearly improper instructions not to answer non-privileged relevant questions, Plaintiff's deposition must be reopened.

### III. PLAINTIFF CONCEDES THAT HER ERRATA SHEET IS PROPERLY THE SUBJECT FOR RE-OPENED DEPOSITION

Because Plaintiff concedes, as she must, that changes to her deposition testimony as reflected on her errata sheet are proper areas of inquiry, Ms. Maxwell perceives no need for additional argument regarding the materiality of Plaintiff's changes although they were not based on "misspellings and the like" as Plaintiff avers.

### IV. RESTRICTIONS TO TWO HOURS AND VIA VIDEOTAPE UNJUSTIFIED

Ms. Maxwell has identified a significant number of areas of inquiry for reopened deposition and two hours is insufficient to accomplish that goal. Ms. Maxwell seeks leave to reopen Plaintiff's deposition regarding belatedly disclosed records from:



- Email records from iCloud and Hotmail regarding interactions with the FBI
- School records regarding the time period of 1999-2002
- 18 newly listed witnesses
- Any published news stories that Plaintiff concedes were inaccurate
- Plaintiff's interactions with law enforcement regarding Ms. Maxwell.

9

All of these are properly the subject of additional inquiry at a deposition and to address them will require more than two hours. While Ms. Maxwell does not believe that seven hours will be necessary, she did not use all of the first seven hours based on Plaintiff's refusal to answer relevant non-privileged questions and believes that she will be able to finish her examination on these topics within a reasonable period of time, most likely between 4-5 hours.

Further, such deposition should be done live and in person, not via videotape from Australia. Video conference depositions are exceedingly difficult and cumbersome when handling the number of records at issue here – medical records, school records, employment records and emails, as well as press statements, errata sheets and the like. Counsel will not have the ability to hand over documents to the witness as needed.

Plaintiff argues that her childcare needs require her to be in Australia. Notably, Plaintiff has spent several weeks in the U.S. attending in person the depositions of her former fiancé and boyfriend in Florida (and calling them in advance of their testimony) and, upon information and belief, attending to other litigation and personal matters. Plaintiff lived in Colorado at the time she filed this litigation and made a decision to return to Australia after doing so. She and her counsel failed to disclose relevant doctors and medical records, emails, employment and school records in advance of her deposition, and she was instructed not to answer relevant, non-privileged questions. She chose to change her deposition testimony after the fact.

WHEREFORE, Ms. Maxwell respectfully requests a reopened deposition of Plaintiff to include the topics of:

1. Any documents disclosed after May 3 regarding:
    a. Plaintiff's medical and mental care
    b. Plaintiff's employment
    c. Plaintiff's education
    d. Plaintiff's emails from her iCloud and Hotmail accounts

10

2. Any question she was instructed not to answer regarding:
    a. Inaccurate statements attributed to her in the press;
    b. Her communications with law enforcement about Ms. Maxwell;

3. Any changes to her deposition testimony as reflected on her errata sheet.

Ms. Maxwell asks the Court to deny Plaintiff's request that the reopened deposition be limited to two hours or occur via remote means. Finally, Ms. Maxwell requests costs incurred in bringing this Motion based on counsel's improper instructions not to answer relevant and non-privileged questions.

Dated: July 8, 2016

Respectfully submitted,

*/s/ Laura A. Menninger*
Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:   303.831.7364
Fax:     303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*

11

## CERTIFICATE OF SERVICE

I certify that on July 8, 2016, I electronically served this *REPLY IN SUPPORT OF DEFENDANT'S MOTION TO REOPEN DEPOSITION OF PLAINTIFF VIRGINIA GIUFFRE* via ECF on the following:

Sigrid S. McCawley  
Meredith Schultz  
BOIES, SCHILLER & FLEXNER, LLP  
401 East Las Olas Boulevard, Ste. 1200  
Ft. Lauderdale, FL 33301  
smccawley@bsfllp.com  
mschultz@bsfllp.com  

Bradley J. Edwards  
FARMER, JAFFE, WEISSING, EDWARDS, FISTOS & LEHRMAN, P.L.  
425 North Andrews Ave., Ste. 2  
Ft. Lauderdale, FL 33301  
brad@pathtojustice.com  

Paul G. Cassell  
383 S. University Street  
Salt Lake City, UT 84112  
cassellp@law.utah.edu  


J. Stanley Pottinger  
49 Twin Lakes Rd.  
South Salem, NY 10590  
StanPottinger@aol.com  


*/s/ Nicole Simmons*  
Nicole Simmons