Exhibit 4

(File Under Seal)

G1ETGIUA

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   VIRGINIA L. GIUFFRE,

4                   Plaintiff,

5           v.                              15 CV 7433 (RWS)

6   GHISLAINE MAXWELL,

7                   Defendant.

8   ------------------------------x
                                        New York, N.Y.
9                                       January 14, 2016
                                        12:00 p.m.

10  Before:

11                      HON. ROBERT W. SWEET,

12                                      District Judge

13                          APPEARANCES

14
    BOIES, SCHILLER & FLEXNER
15        Attorneys for Plaintiff
    BY:  SIGRID McCAWLEY
16
    HADDON, MORGAN & FOREMAN
17        Attorneys for Defendant
    BY:  LAURA MENNINGER
18

19

20

21

22

23

24

25

G1ETGIUA

1        (In open court)

2        THE COURT:  I will hear from the movant.

3        MS. MENNINGER:  Thank you, your Honor, Laura Menninger

4   on behalf of the defendant Maxwell.  We are the movant for the

5   purposes of today's hearing.  I filed both a motion to dismiss

6   the complaint, which is based on one claim of defamation, as

7   well as a motion to stay discovery during the pendency of our

8   motion to dismiss the complaint.

9        At the heart of this case, your Honor, defamation is

10  about words, specifically false and defamatory words, about the

11  plaintiff published to another by the defendant with a certain

12  level of culpability and resulting injury.  Depending on the

13  context of the words, the content of the statement, the

14  relationship of the speaker and the listener, depending on the

15  time, place and manner of the statement, the Court may find the

16  words to be actionable or not, privileged or not, defamatory in

17  meaning or not.

18       The central problem with this particular complaint,

19  your Honor, is that all of the key elements of defamation are

20  conspicuously absent.  Cutting through the hyperbole and the

21  rhetoric contained in the complaint, one is still left

22  wondering what words are actually at issue.  Is it the three

23  sentence fragments contained in paragraph 30 against Ghislaine

24  Maxwell are untrue, shown to be untrue, claimed or obvious

25  lies, or does it include some additional or extra false

G1ETGIUA

1    statements that are referenced but never explained in

2    paragraphs 31 and 34?  In what context were any of these

3    sentence fragments published?  What, if anything, were they in

4    response to?

5        Your Honor has found in previous cases, such as

6    Hawkins v. City of New York, that the failure to identify the

7    individuals to whom the statement allegedly was made and the

8    content of that statement is fatally defective to an attempt to

9    state a libel or slander cause of action.

10       In this case, in this complaint, plaintiff has barely

11   even attributed a few sentence fragments to my client,

12   Ms. Maxwell.  She stripped them of any context.  She hasn't

13   provided the entire statement in which those sentence fragments

14   were contained, nor the articles in which any of those

15   sentences might have appeared.  She has not pled facts, which,

16   as this Court knows, post-Twombly, must be included, not just

17   legal conclusions.  She has not pled facts demonstrating actual

18   malice, nor any special damages or facts that would support

19   defamation per se.  Because of the many pleading failures, your

20   Honor, I do not believe this complaint should stand.

21       The Second Circuit made quite clear that your Honor

22   has an important gatekeeping function in a defamation case.

23   The Court must ascertain whether the statement, when judged in

24   context, has a defamatory meaning, and also whether it is

25   privileged.

G1ETGIUA

1        As your Honor also found in <u>Cruz v. Marchetto</u>, you

2   cannot rely, as the plaintiff tries to do here, on the less

3   stringent pleading requirements that predated <u>Twombly</u> and

4   <u>Iqbal</u>, and furthermore, that the plaintiff must plead facts

5   which support either defamation per se or special damages.

6        Here, your Honor, while there are statement fragments

7   contained in the complaint at paragraph 31, there's not even a

8   complete sentence attributed to my client, Ms. Maxwell.  That,

9   your Honor, has been found on numerous occasions to be

10  insufficient to state a cause of action for defamation.

11       Furthermore, the complaint does not state to whom any

12  such statements were made.  There is a general allegation that

13  the statements were made, quote, to the media and public, but

14  no media is identified, no publications are identified.  While

15  the complaint states at one point that it was published and

16  disseminated around the world, not a single publication is

17  mentioned or attached to the complaint.

18       And furthermore, the complaint fails to state where in

19  fact the statements were made.  Although it does state the

20  statements were made in the Southern District of New York, it

21  attributes those sentence fragments to a press agent who is

22  admittedly located in London.

23       Finally, your Honor, there is a lot of confusion

24  contained in the paperwork with regard to the standard of

25  malice that must be pled.  Again your Honor has found, and

G1ETGIUA

1    numerous other Southern District Courts have found likewise,

2    that malice in this context is malice in the sense of spite or

3    ill will.  Looking to the complaint, your Honor, there's not a

4    single conclusory or factually-supported allegation that would

5    give rise to a finding of malice.  And that, your Honor,

6    likewise is fatal to the complaint.

7           Finally, in terms of pleading deficiencies, plaintiff

8    in this case has tried to allege defamation per se by claiming

9    her profession is as a professional victim.  In other words,

10   ten days before she claims my client made statements about her,

11   plaintiff founded a nonprofit through her organization, through

12   her attorneys in Florida, called Victims Refuse Silence, and

13   thereby states that any attempt to impugn anything she says is

14   defamation per se.

15          There is no support in the case law for a profession

16   of being a victim, your Honor.  And likewise, there's no

17   factual support to suggest, and the cases require, that the

18   statements attributed to my client, Ms. Maxwell, have anything

19   to do with her nonprofit organization, nor that my client was

20   even aware of an organization founded a mere ten days earlier

21   and which doesn't appear to have any actual business conduct

22   related to it.

23          So your Honor, I think for all those reasons, the

24   complaint is insufficiently pled and should be dismissed.

25          Our papers go on a little bit further, your Honor, to

1    also argue that to the extent any of these sentence fragments

2    can be pieced together, the statements, at most, are a general

3    denial.  In other words, plaintiff admits in the complaint that

4    she started a media campaign against my client, she issued some

5    very salacious allegations against my client in the British

6    press and in some pleadings that she filed in Florida.  And

7    after having done that, my client, she says, issued a statement

8    that the allegations are quote, unquote, untrue.

9            Repeatedly, cases both in New York State and federal

10   courts have found general denials are not actionable, that

11   individuals have a right, when they have been accused of

12   misdeeds in the press, to respond, so long as they don't abuse

13   that privilege.  And by abuse of privilege, that means

14   including numerous defamatory extraneous statements about the

15   person to whom they are responding and/or excessively

16   publicizing their response.

17           In this case, your Honor, the statement the

18   allegations are untrue is about as plain vanilla as one can

19   find.  There's no better way to issue a general denial than to

20   just say that the allegations are untrue, without more.

21   There's not a single reference to plaintiff herself.

22           Although, in opposition, plaintiff claims to have been

23   called a liar, complains that she was called dishonest, she

24   doesn't actually point to any statement which contains those

25   words, nor any statement which actually refers to her as a

G1ETGIUA

1    person, simply to the allegations which her client had issued,

2    and frankly, allegations which had been circulated in the

3    press.

4           So saying the allegations are untrue is tantamount to

5    a general denial, and that is one additional reason, your

6    Honor, that I think the complaint should be dismissed.

7           Thank you.

8           MS. McCAWLEY:  Good morning, your Honor.  May I

9    approach with a bench book?

10          THE COURT:  Sure.

11          MS. McCAWLEY:  Thank you.

12          THE COURT:  I think in duplicate.  Do you have another

13   copy?

14          MS. McCAWLEY:  Sure, of course.

15          Good morning, your Honor, my name is Sigrid McCawley,

16   I'm with the law firm of Boies, Schiller & Flexner representing

17   the plaintiff in the case, Virginia Giuffre.

18          With all due respect to my colleague, I think she read

19   a different complaint than the one submitted in this case.  She

20   left out significant factual details from the complaint that

21   plead actual defamation.

22          This is an old story.  A woman comes forth and finally

23   gets the courage to tell about the sexual abuse she endured,

24   and her abusers come public and call her a liar and say her

25   claims are, quote, obvious lies.  That quote is in our

G1ETGIUA

1    complaint.

2         Your Honor, this is an actionable defamation case.

3    Fortunately for women who have been abused in this manner, the

4    law of defamation stands by their side.  It does not allow

5    someone to publically proclaim they're a liar and issue

6    character assaults on them without ramifications.

7         After those statements were made, we filed this

8    defamation lawsuit.  Virginia Giuffre was only 15 years old

9    when she was recruited by Maxwell to be sexually abused by both

10   Maxwell and Jeffrey Epstein, who is a convicted pedophile and

11   billionaire.  She was harmed for many years before she finally

12   found her way to Thailand and escaped clear to Australia where

13   she hid out for ten years before the FBI interviewed her and

14   she made her statement public.

15        Your Honor, this is a very serious case of abuse.  My

16   client never sued Ms. Maxwell until she came out and called her

17   a liar publically for claiming her allegations of sexual abuse

18   were false.  That's actionable defamation.  We have seen that

19   in cases recently, and I will walk you through those.

20        Now while this story may sound hard to believe, it

21   happened, and there were over 30 female childhood victims in

22   Florida alone that came forward and gave statements to law

23   enforcement about this same type of abuse.

24        Unfortunately, due to Epstein's vast wealth and power,

25   he was able to get off with a very light sentence.  And his

G1ETGIUA

1     co-conspirators were also part of that plea agreement, that

2     non-prosecution agreement, and were not prosecuted.  That

3     agreement is being challenged by two other victims in Florida

4     in a case in front of Judge Marra case called the Crime

5     Victims' Rights Act case.

6            I want to mention that while my colleague didn't

7     mention it in her opening, she does mention it in her papers, I

8     contend that the order she referenced in her papers by Judge

9     Marra, which we included a copy of for you, has been

10    misrepresented.  That order did allow my client -- on page 6 it

11    says, quote, Jane Doe 3 is free to assert factual allegations

12    through proper evidentiary proof should she identify a basis

13    for believing such details are pertinent to the matter.

14           So while the paper suggested she was deemed to have

15    impossible allegations or that those allegations were untrue,

16    that's absolutely not what the court said in Florida, so I want

17    to correct that for the record before we begin.

18           What we have here is a defamation case.  As the Court

19    well knows, defamation -- this is a libel per se case where the

20    words were published in writing.  And as you know, libel per se

21    is when a word tends to expose another to public hatred, shame,

22    contempt or ridicule.  I see no other allegation that could be

23    worse than calling a sex abuse victim a liar.  To lie about

24    sexual abuse has to be one of the most scornful things

25    available, and that is subject to defamation.

G1ETGIUA

1           Now in the papers -- and I will just touch on this

2     briefly because my colleague did not touch on it significantly

3     here and I don't want to waste the Court's time, but she

4     alleged a number of privileges that she believes Ms. Maxwell

5     should be able to hide behind in order to preserve these

6     defamatory statements.

7           I impart on your Honor that a determination as to

8     whether any of those privileges apply would be premature at

9     this stage.  That's your case, which is Block v. First Blood,

10    691 F.Supp. 685.  In that case you dealt with one of the

11    privileges she is asserting here, the prelitigation privilege,

12    and you found that it would be premature, even at the summary

13    judgment stage, to be analyzing whether or not that was

14    applicable.

15          So what we have here is qualified privileges being

16    asserted as to defamatory statements.  The two qualified

17    privileges she asserts are the self-defense privilege and the

18    prelitigation privilege.  So in other words, if the defamatory

19    statements survive, she says, nevertheless the privileges

20    preclude the case from going forward.

21          The self-defense privilege has been addressed by the

22    highest court of New York just as recent as this year, and

23    that's in the case of Davis v. Boeheim.  And that was case

24    where the Syracuse basketball coach was accused by two victims

25    that were childhood victims who later as adults came forward

G1ETGIUA

1   and set forth their allegations against him.  One of his

2   colleagues came forth and called those victims liars publicly,

3   same thing that happened in this case.  And the court there

4   said that the case cannot be dismissed, it has to proceed

5   forward, and they are entitled to prove those allegations were

6   false, that the victims were not liars, and indeed they were

7   subject to the abuse they were subject to.

8          Another case that is recent which I supplemented with

9   your Honor is the Cosby case.  It's recent out of

10  Massachusetts, and very similarly there -- in fact, the

11  statements weren't even as strong as Ms. Maxwell's statements

12  here.  In our complaint, Ms. Maxwell calls our client's

13  allegations of sexual abuse, quote, obvious lies, issued by

14  press release nationally and internationally to the media.  And

15  we do cite to the media that it is sent to.  That's in

16  paragraph 30, 36 and 37, international media, national media

17  and the New York Daily Post, who interviewed Ms. Maxwell on a

18  New York street.  So that is alleged in detail in our

19  complaint.

20         But in Cosby the court said, quote, suggestions that a

21  plaintiff intentionally lied about being sexually assaulted

22  could expose that plaintiff to scorn and ridicule, and

23  therefore, Bill Cosby's statements could be found to have a

24  defamatory meaning, and the court allowed the case to proceed

25  past the motion to dismiss stage.

G1ETGIUA

1          We also have the <u>McNamee v. Clemens</u> case which you may

2     be familiar with.  It's another New York case involving Roger

3     Clemens where he had been alleged to have engaged in steroid

4     use.  His trainer stated that publicly.  He came forward and

5     called his trainer a liar publicly, and the court found that

6     that statement that he is a liar was actionable defamation that

7     survived the motion to dismiss, because publicly proclaiming

8     someone a liar is actionable defamation.  It is not mere

9     denial, it is actionable defamation.

10          So those are the cases I would like to direct the

11     Court's attention to.  Again, on page 10 of our opposition we

12     have a litany of cases that deal with the issue of calling

13     someone a liar and that being actionable defamation.

14          She also asserts the prelitigation privilege, and that

15     is a privilege addressed in your <u>Block v. First Blood</u> case.

16     That privilege is intended to protect communications between

17     parties, typically attorneys, in advance of litigation in order

18     for them to narrow the scope of the litigation or to negotiate

19     a resolution in advance of litigation.  That prelitigation

20     privilege does not cover public statements by Ms. Maxwell's

21     hired press agent that are given to the national and

22     international media for the purposes of defaming my client,

23     calling her allegations of sexual abuse untruths and calling

24     them, quote, obvious lies.  So that prelitigation privilege

25     does not apply.

G1ETGIUA

1          The Khalil case, which is cited in the defendant's

2    brief, actually has a great passage in there that describes if

3    the allegation is made for an improper purpose, in other words,

4    if it is made for a wrongful purpose or to harass or seek to

5    press or intimidate the victim, then it is not something that

6    the defendant can avail themselves to as a privilege.

7          Now, just briefly, the opposition also stated that our

8    complaint is deficient in other manners; for example, that we

9    haven't properly alleged the to whom, as I referenced.  You can

10   look at paragraphs 30, 36 and 37 to see that.  That is a

11   technical pleading deficiency that she is raising there.  We do

12   meet the standards of Twombly.  We have pled detailed facts

13   that our client was sexually abused as a minor child.  We pled

14   other facts about that abuse.  And Ms. Maxwell intentionally

15   and maliciously came out and called her a liar in order to

16   protect her own self.

17         So that is what we have put in our complaint.  The

18   Hawkins case that she references and the Cruz case that she

19   references are vastly different.  In Cruz there wasn't even an

20   allegation of defamation, and the court was reading into the

21   complaint whether or not there could have been defamation.

22   Here we stated specifically who made the statement, when she

23   made the statement, where she made the statement, why she made

24   the statement.  That is all we need to do.  It's more than

25   sufficient to plead a case of defamation in this instance.

G1ETGIUA

1            With respect to the allegations that we haven't pled

2     properly libel per se, I want to be clear we pled that in two

3     ways.  And the case law is a case cited in the defendant's

4     brief, and it's <u>Jewell</u>, and it does a very good job of parsing

5     out the difference between slander and libel, and there is a

6     difference in the case law, as your Honor knows.

7            In the instance of libel, the written words, <u>Cardozo</u>

8     has said, it stings, it stings longer, so therefore, in

9     pleading libel per se, you don't have to plead special damages

10    in the way that you do for slander.

11           The <u>Matherson</u> case, which is out of New York, also

12    articulates that.  The difference, it says, quote, on the other

13    hand, a plaintiff suing on libel need not plead or prove

14    special damages if the defamatory statement tends to expose the

15    plaintiff to public contempt, ridicule, aversion, or disgrace.

16    And that is exactly what we have pled in this case, that the

17    statements that our client lied about the sexual abuse she

18    endured as a minor were statements that exposed her to that

19    public contempt and ridicule.

20           She has also pled libel per se with respect to her

21    profession.  While my colleague may make light of the fact that

22    she is involved in helping victims that -- people who are

23    victims of sexual trafficking, that is what she has dedicated

24    her life to doing.  And to come out and publicly proclaim her a

25    liar about sexual abuse harms the nonprofit and harms the work

G1ETGIUA

1   she has been doing.  She has been harmed personally by saying

2   her claims are, quote, obvious lies, and she has been hurt

3   professionally in that manner, and we allege both things in our

4   complaint.

5         Your Honor, Virginia has been beaten down many times

6   in her life, but the law of defamation stands at her side.  I

7   pray upon you that you will consider the complaint and not

8   dismiss it, because her claims should be able to be proven in

9   this Court.  Thank you.

10         THE COURT:  Thank you very much.

11         Anything further?

12         MS. MENNINGER:  If I may, your Honor.

13         Again, plaintiff comes before you claiming she has

14   been called a liar.  There is no statement attributed to my

15   client, in the complaint or elsewhere, in which my client has

16   called plaintiff a liar.  There are three sentence fragments

17   contained in the complaint, the allegations against Ms. Maxwell

18   are untrue, and that her claims are obvious lies.

19         Your Honor, it is a meaningful distinction.  I can

20   explain a little bit of the background here.  Plaintiff came

21   forward and gave an interview in the press in 2011 claiming

22   that my client was somehow involved with Mr. Epstein's sexual

23   abuse of her.  She gave an exclusive interview to a British

24   newspaper in which she made that allegation, plaintiff did, and

25   was paid for it.

G1ETGIUA

1           My client issued a general denial in 2011 saying that

2     the allegations were untrue.  At that time, plaintiff said

3     that, although she had been in contact with the likes of Prince

4     Andrew in London and Bill Clinton and other famous people,

5     there was no suggestion that those people had engaged in any

6     kind of improper sexual contact with her.

7           Fast forward a few years.  Some other women who

8     claimed they were victims of Mr. Epstein's abuse filed a

9     lawsuit in Florida and they asked the court to undo a plea

10    agreement that had been entered into by the U.S. attorney's

11    office down in Florida or that the U.S. attorney's office

12    somehow worked with the state authorities in crafting, and

13    those two other women, not plaintiff, litigated for I think

14    seven years now whether or not they should have been informed

15    earlier about whatever plea agreement was going to go on with

16    Mr. Epstein.

17          Well, December 30 of 2015, plaintiff filed a motion to

18    join that Victims' Rights Act litigation, and in her motion to

19    join the Victims' Rights Act litigation she filed a

20    declaration, in which, as I understand it thirdhand based on

21    the judge down there's order, she claimed to have been involved

22    in sexual relations with Prince Andrew, with world leaders, a

23    former prime minister of some country or other, Mr. Alan

24    Dershowitz.  She made a number of spurious allegations, and one

25    of them involved my client, Ms. Maxwell.

G1ETGIUA

```
 1              Well, within minutes of filing that motion to join
 2    that action, lo and behold, her story hits the British press.
 3    Whether or not that was at her lawyer's instigation, I don't
 4    know, but they have been courting the press in a number of
 5    ways, so I wouldn't be surprised.
 6              The press comes calling and asked my client and
 7    Mr. Dershowitz and Prince Andrew and everyone else whether any
 8    of the allegations contained in this legal pleading are true.
 9    Buckingham Palace issued a statement flatly denying the claims
10    made by plaintiff here.  Mr. Dershowitz came out even stronger
11    and not only flatly denied it but did in fact call her a liar
12    and said, among other things, if she lied about me, she
13    probably lied about all these other world leaders that she
14    claims she was involved with at the age of 17 and 18, and that
15    the story dates back to '99 when she claims these activities
16    occurred.  And so he came out and actually called her a liar.
17              Buckingham Palace said her claims were absolutely
18    untrue.  At the end of one article, in which the two comments
19    about plaintiff were contained, is a statement attributed to my
20    client, Ms. Maxwell, and her statement reads, the claims
21    against Ghislaine Maxwell are untrue.  She has now made
22    additional statements about world leaders, and those claims are
23    obvious lies.  So that part about obvious lies come after the
24    part about claims against world leaders and famous politicians
25    and the like.
```

G1ETGIUA

1          Well, I tried to go to the Florida action to find

2     where these allegations were that apparently plaintiff believes

3     my client's statement was in relation to.  And guess what?

4     Judge Marra down in the Southern District of Florida has

5     stricken the declaration from public access.  He has stricken

6     the actual paragraphs making all of these allegations, and has

7     restricted from public access the documents that contained the

8     allegations.  And he issued an order, and I attached that

9     order, because I believe the Court can consider it taking

10    judicial notice, to my declaration here on the motion to

11    dismiss.

12         In the order, just so we're all clear, I'm not

13    misrepresenting what happened, as I was just accused doing,

14    Judge Marra held, after describing what he called lurid

15    allegations, he found they were impertinent and immaterial to

16    the motion to join the Victims' Rights Act filed by plaintiff.

17    He said that they concerned non-parties, including my client,

18    who was not there and able to defend herself within the

19    litigation, and he denied her request to join that action

20    finding that she waited a long time.  While she may be a

21    witness to things that are concerned down there, she does not

22    need to join the action in order to assert rights that the

23    other plaintiffs down there are already asserting.

24         Then he goes on in the order to remind her counsel of

25    their Rule 11 obligations to only include pertinent materials.

G1ETGIUA

1    And he was not denying they would ever be able to, but seems to

2    seriously question whether or not admissible non-cumulative

3    evidence of the things that were claimed would ever be heard in

4    his court.

5              So I don't actually have a copy of whatever it is that

6    was claimed down there because it's not publicly available, and

7    it certainly was not mentioned in the complaint, wasn't

8    attached to the complaint, it's just somewhere out there that

9    the press has picked up on and published.

10             In the meantime, Mr. Dershowitz is now involved in

11   ongoing battles with plaintiff's lawyers down in Florida.  They

12   cross claimed one another for defamation.  And she's been

13   participating in that litigation as a non-party as well,

14   although it concerns her attorneys and the same exact

15   allegations.

16             So while others have called her a liar, notably

17   Mr. Dershowitz, and others have denied claims that plaintiff

18   has made, including Buckingham Palace, and while Judge Marra

19   down there has found her claims impertinent and immaterial to

20   the allegations going on in Florida, Ms. Maxwell has not

21   actually ever called her a liar.

22             And your Honor, all of these cases that plaintiff

23   cites to, Davis v. Boeheim, McNamee v. Clemens, all of those

24   cases had complaints which had attached to them the actual

25   statements at issue.

G1ETGIUA

```
 1              I think in the McNamee v. Clemens case there were some
 2    27 exhibits attached to the amended complaint where Mr. Clemens
 3    had been on 60 Minutes and given statements to reporters and
 4    gone on at length calling the plaintiff in that case,
 5    Mr. McNamee, a liar, calling him a liar 25 ways to Sunday,
 6    talking about his financial motives, his potential financial
 7    gain, et cetera.
 8              Likewise, in the Davis v. Boeheim case, Mr. Boeheim
 9    gave a press conference in which he called the accusers liars.
10    He questioned their financial incentives following the Sandusky
11    case to be coming forward then, and he went on at length about
12    all of the reasons why they might be coming forward now with
13    their, quote, unquote lies.
14              In each of those cases, McNamee v. Clemens and Davis
15    v. Boeheim, the New York Court of Appeals, as well as the
16    Federal Court in the Eastern District of New York, made clear
17    that the one thing that is not actionable is a general denial.
18    And then they talk about why Mr. Boeheim's comments and
19    Mr. Clemens' comments went well beyond what anyone might
20    consider a general denial.  And fortunately, those cases
21    actually had records which included the statements, included
22    the articles in which the statements were made, so the Court
23    could engage in the sort of analysis that it must, that is, to
24    decide whether, in context, the statement has a defamatory
25    meaning.
```

G1ETGIUA

1           So I think even now, saying that my client called her

2    client a liar is just not supported by a single fact in the

3    complaint.  While the complaint makes conclusory statements

4    like it was a campaign questioning her dishonesty and all of

5    that, when you get right down to the actual statements, which

6    this Court has held on numerous occasions must actually be

7    spelled out in a defamation case, the only statements are,

8    quote, sentence fragments like allegations against Ghislaine

9    Maxwell are untrue.

10           And by the way, looking at those news articles, one

11   might see that they actually are talking about allegations that

12   have lodged in the British press.  They don't refer to

13   Ms. Roberts, as she was then known, they don't refer to

14   anything about her, they don't call her a liar, they don't

15   question her financial motives, although I'm sure she has some.

16   So if you look at the cases Davis v. Boeheim, McNamee v.

17   Clemens, you will see Ms. Maxwell's statements, even to the

18   extent they're alleged, fall well within the general denial

19   privilege.

20           I think it's inaccurate to quote, with regard to the

21   prelitigation privilege, the statements attributed to

22   Ms. Maxwell that reserved her right to seek redress from the

23   British press for the repetition of what she said were untrue

24   allegations.  And that is something that, under British law,

25   one must assert or waive.  So if you don't, under British law,

G1ETGIUA

1    put the press on notice that you are challenging the veracity

2    of statements that the British press is publishing, then you

3    will have been deemed to have waived your right to do so in the

4    future.

5         We cited <u>Khalil v. Front</u>, which is a New York Court of

6    Appeals case from last year.  It was actually affirming the

7    dismissal of a case on a motion to dismiss.  So while plaintiff

8    claims that privileges like this can't be decided at the motion

9    to dismiss stage, the New York Court of Appeals directly found

10   otherwise.  And there they said that if a statement is made in

11   anticipation of litigation, whether or not -- I think they used

12   the word "contemplated" litigation, whether or not the

13   litigation actually occurred is not material, but if they are

14   made in anticipation of potential litigation then they are

15   entitled to the prelitigation privilege.

16        So not only do I believe that the statements

17   themselves are non-defamatory general denials, but insofar as

18   they were issued to put the British press on notice, that

19   repetition of them may give rise to litigation.  They also

20   should be afford the prelitigation privilege that the New York

21   Court of Appeals has recognized.  Thank you.

22        THE COURT:  Thank you very much.  I will reserve

23   decision.

24                              o0o

25