United States District Court
Southern District of New York

Virginia L. Giuffre,

       Plaintiff,                  Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

       Defendant.

_____/

### PLAINTIFF'S MOTION TO ENFORCE THE COURT'S ORDER AND DIRECT DEFENDANT TO ANSWER DEPOSITION QUESTIONS FILED UNDER SEAL[1]

Plaintiff Virginia Giuffre, by and through her undersigned counsel, hereby files this Motion to Compel Defendant to Answer Deposition Questions. On June 20, 2016, this Court Ordered Defendant to sit for a second deposition because her refusal to answer questions posed in her first Deposition (June 20, 2016 Sealed Order, filed in redacted version at D.E. 264-1). Yet, during her second deposition, Defendant again refused to answer numerous questions regarding sexual activity related to Jeffrey Epstein in contravention of this Court's Order. Accordingly, the Court should direct her to fully answer the relevant questions.

### FACTUAL BACKGROUND

As the Court is aware, this defamation case involves Ms. Giuffre's assertions that she and other females were recruited by Defendant to be sexually abused by Jeffrey Epstein under the guise of being "massage therapists." *See* Complaint, DE1, at ¶ 27 (Giuffre "described Maxwell's role as one of the main women who Epstein used to procure under-aged girls for sexual activities

---

[1] Defendant has labelled her entire deposition transcript as Confidential at this time.

and a primary co-conspirator and participant in his sexual abuse and sex trafficking scheme").

Numerous other witnesses, with knowledge of Defendant's activities, have testified to the same:

- *See* Schultz Declaration ("Schultz Decl.") at Composite Exhibit 1, Excerpts from May 18, 2016, Deposition of Johanna Sjoberg at p. 34:20-35:1. "Q. And did you -- what did you understand her to mean? A. [Maxwell] was implying that I did not get Jeffrey off, and so she had to do it. Q. And when you say "get Jeffrey off," do you mean bring him to orgasm? A. Yes." . . . "How long did you work for Jeffrey and Ghislaine? A: I believe it was five years, 2001 to 2006. Q. And how many massages did Epstein receive per day on average? THE WITNESS: Three." *Id.* at pg. 30:15-25. . . "Q. Did Jeffrey ever tell you why he received so many massages from so many different girls? A. He explained to me that, in his opinion, he needed to have three orgasms a day. It was biological, like eating." *Id.* at p.32: 9-16.

- *See* Schultz Decl. at Composite Exhibit 2, Excerpts from June 24, 2016, Deposition of Tony Figueroa at pg. 200:5-18; 96:8-15. "Q. …when Ghislaine Maxwell would call you during the time you were living with Virginia, she would ask you what specifically? A. Just if I had found any other girls just to bring to Jeffrey. Q. Okay. A. Pretty much every time there was a conversation with any of them it was either asking Virginia where she was at, or asking me to get girls." "Q What has -- what is that? A. That her [Virginia] and Maxwell and Jeffrey would obviously be doing stuff, all three of them together. Like I said that they would all go out to clubs to pick up girls and try to find them to bring back for Jeffrey. And then she told me about how, like I said, her and Ms. Maxwell and Jeffrey were all intimate together on multiple occasions."

- *See* Schultz Decl. at Composite Exhibit 3, Excerpts of June 21, 2016, Deposition of Detective Recarey at pg. 29:11-20. "Q. "Okay. During your investigation, what did you learn in terms of Ghislaine Maxwell's involvement, if any? THE WITNESS: Ms. Maxwell, during her research, was found to be Epstein's long-time friend. During the interviews, Ms. Maxwell was involved in seeking girls to perform massages and work at Epstein's home."

- *See* Schultz Decl. at Composite Exhibit 4, Excerpts from June 10, 2016, Deposition of Rinaldo Rizzo at pg. 52:8. "A. What happens next when Ghislaine Maxwell and Jeffrey Epstein and a 15-year-old girl walk into Eva Anderson's home? . . . "A. She proceeds to tell my wife and I that, and this is not -- this is blurting out, not a conversation like I'm having a casual conversation. That quickly, I was on an island, I was on the island and there was Ghislaine, there was Sarah, she said they asked me for sex, I said no. And she is just rambling, and I'm like what, and she said -- I asked her, I said what? And she says yes, I was on the island, I don't know how I got from the island to here. Last afternoon or in the afternoon I was on the island and now I'm here. And I said do you have a -- this is not making any sense to me, and I said this is nuts, do you have a passport, do you have a phone? And she says no, and she says Ghislaine took my passport. And I said what, and she says Sarah took her passport and her phone and gave it to Ghislaine Maxwell, and at that point she said that she was threatened." *Id.* at pg. 56:2-24

2

- *See* Schultz Decl. at Composite Exhibit 5, Excerpts from June 1, 2016, Deposition of John Alessi at pg. 28:6-15. "Q.  And over the course of that 10-year period of time while Ms. Maxwell was at the house, do you have an approximation as to the number of different females -- females that you were told were massage therapists that came to the house?  THE WITNESS:  I cannot give you a number, but I would say probably over 100 in my stay there." *Id.* at pg. 30:15-25 "Q:  Did you go out looking for the girls -- A.  No.  Q.  -- to bring -- A.  Never. Q.  -- as the massage therapists? A.  Never. Q.  Who did?  A.  Ms. Maxwell, Mr. Epstein and their friends, because their friends relayed to other friends they knew a massage therapist and they would send to the house.  So it was referrals."

In response to Ms. Giuffre's assertions about Defendant recruiting of females for sexual purposes, Defendant has made the sweeping claim that Ms. Giuffre's assertions are "entirely false" and "entirely untrue."  Complaint, DE 1, at ¶ 31.  Accordingly, this Court directed as follows:

> Defendant is ordered to answer questions relating to ***Defendant's own sexual activity*** (a) with or involving Jeffrey Epstein ("Epstein"), (b) with or involving Plaintiff, (c) with or involving underage females known to Epstein or who Defendant believed or intended might become known to Epstein, or (d) involving or including massage with individuals Defendant knew to be, or believed might become, known to Epstein. Defendant is also directed to answer questions relating to ***her knowledge of sexual activities of others*** (a) with or involving Epstein, (b) with or involving Plaintiff, (c) with or involving underage females known to Epstein or who Defendant believed were known or might become known to Epstein, or (d) involving or including massage with individuals Defendant knew to be or believed might become known to Epstein.  (FN. Each of the aforementioned lists are disjunctive.) The scope of Defendant's answers are not bound by time period, though Defendant need not answer questions that relate to none of these subjects or that is clearly not relevant, such as sexual activity of third-parties who bear no knowledge or relation to the key events, individuals, or locations of this case.

*See* Schultz Decl. at Exhibit 6, Sealed June 20, 2016, Order at p. 10 (Emphasis added).

Despite this instruction from the Court, during her deposition, Defendant refused to answer many questions related to "sexual activity with or involving Jeffrey Epstein, with or involving Plaintiff . . . or involving or including massage with individuals Defendant knew to be or believed were known to might become known to Epstein." The result was that at a number of

3

points throughout her deposition, Defendant refused to answer questions about subjects integral to this lawsuit, including questions about a student, Joanna Sjoberg, who Defendant recruited from her school to give massages to, and have sex with, Jeffrey Epstein under the guise of hiring her to answer phones.

For example, Defendant refused to answer questions about recruiting Ms. Sjoberg for sex with Epstein:

> Q.   So is it fair to say that Johanna was initially hired to answer telephones, according to your testimony?
>
> MR. PAGLIUCA:  This has already been testified to Mr. Boies. We are repeating testimony now.
>
> MR. BOIES: I think in the context of the witness' answers, these are fair questions. Now, I've asked you before, if you want to instruct her not to answer, if you want to go to the judge, we are happy to do that, but I would suggest in the interest of moving it along, that you stop these speeches.
>
> MR. PAGLIUCA: You are not moving it along is the problem, so maybe we should call the court and get some direction here, because I am not going to sit here and rehash the testimony we already gave.
>
> MR. BOIES: That's fin[e]. [At this point a telephone call was placed to Judge Sweet's chambers].

*See* Schultz Decl. at Composite Exhibit 7, Excerpts from July 22, 2016, Deposition of Ghislaine Maxwell at pg.78:17-79:14.

> MR. BOIES: So how did it happen, Ms. Maxwell, that Joanna, who had been hired to answer the phones, ended up giving massages to you and Mr. Epstein.
>
> MR. PAGLIUCA: I'm going to instruct you not to answer the question. This has been previously , the subject of your former deposition, it doesn't fall into any of the categories ordered by the court, and so you don't need to answer that.

*Id.* at pg.81:15-25.

Defendant's counsel's instruction not to answer was improper. This Court's Order stated: "Defendant is also directed to answer questions relating to her knowledge of sexual activities of others . . . involving or including massage with individuals Defendant knew to be or believed

4

might become known to Epstein." Ms. Sjoberg is an important witness in this case – one of the witnesses Ms. Giuffre has deposed. She is an individual Defendant knew to be known to Epstein, who knew and interacted with Ms. Giuffre when Ms. Giuffre was underage, and who participated in massage and sexual activities with Epstein. Defendant knew that Ms. Sjoberg was known to Epstein as Defendant recruited her to massage Epstein and participate in sexual activities during those massages. And Ms. Sjoberg testified directly about Defendant's involvement, including Defendant's offer or an expensive camera in exchange for sex:

> Q. Was there anything you were supposed to do in order to get the camera?
>
> A: I did not know that there were expectations of me to get the camera until after. She [Maxwell] had purchased the camera for me, and I was over there giving Jeffrey a massage. I did not know that she was in possession of the camera until later. She told me -- called me after I had left and said, I have the camera for you, but you cannot receive it yet because you came here and didn't finish your job and I had to finish it for you.
>
> Q. And did you -- what did you understand her to mean?
>
> A. She was implying that I did not get Jeffrey off, and so she had to do it.
>
> Q. And when you say "get Jeffrey off," do you mean bring him to orgasm?
>
> A. Yes.

*See* Schultz Declaration at Composite Exhibit 1, Excerpts from May 18, 2016 Deposition of Johanna Sjoberg at p. (P. 34:5-35:1).

> Q: …. What did you understand Maxwell to mean when she said you hadn't finished the job, with respect to the camera?
>
> A: She implied that I had not brought him to orgasm.
>
> **Q. So is it fair to say that Maxwell expected you to perform sexual acts when you were massaging Jeffrey?**
>
> **A: Yes, I took that conversation to mean that is what was expected of me."**

*Id.* at p. 142:25-143:14 (Emphasis added).

In the wake of this specific deposition testimony from Ms. Sjoberg, during her own recent deposition, Defendant continued to refuse to testify about Ms. Sjoberg's massages and sexual activity with Epstein:

> Q. Did Mr. Epstein pay Johanna for the massages that she gave Mr. Epstein?
>
> Mr. Pagliuca: You just asked this question, and I told her not to answer. I will tell her not to answer again for the same reasons.
>
> Q. Do you know how much Mr. Epstein paid Johanna to give massages?
>
> Mr. Pagliuca: Same instruction to the witness. Why do you believe this is within the scope of the court's order?
>
> Mr. Boies: Because of the court's reference to massages, and because I think how much a girl who was hired to answer the phone was paid to give a "massage" goes to whether there actually was or was not sexual activity involved.
>
> Mr. Pagiluca: The witness has testified there wasn't.
>
> Mr. Boies: Perhaps it will surprise you, I think it should not, that I do not believe in my deposition I need to simply accept her characterization without cross-examination. Now that's something the judge can decide, but a question as to how much this young girl was being paid for a "massage," I think goes directly to the issue of sexual activity.

See Schultz Decl. at Composite Exhibit 7, Excerpts from July 22, 2016 Deposition of Ghislaine Maxwell at pg. 82:25-84:6.

Additionally, Defendant refused to answer questions concerning the sexual abuse involving herself, Mr. Epstein, and Annie and Maria Farmer, described in a Vanity Fair article:

> "What do you have on the girls?" [Epstein] would ask the question over and over again. What I had "on the girls" were some remarkably brave first-person accounts. Three on-the-record stories from a family: a mother and her daughters [Maria Farmer, Annie Farmer, and their mother] who came from Phoenix. The oldest daughter, an artist whose character was vouchsafed to me by several sources, including the artist Eric Fischl, had told me, weeping as she sat in my living room, of how Epstein had attempted to seduce both her and, separately, her younger sister, then only 16. He'd gotten to them because of his money. He promised the older sister patronage of her art work; he'd promised the younger funding for a trip abroad that would give her the work experience she needed on her resume for a place at an Ivy League university, which she desperately wanted - and would win. The girls' mother told me by phone that she had thought her daughters would

6

be safe under Epstein's roof, not least because he phoned her to reassure her, *and she also knew he had Ghislaine Maxwell with him at all times.* When the girls' mother learned that *Epstein had, regardless, allegedly molested her 16-year-old daughter*, she'd wanted to fight back.

"I Tried to Warn You about Sleazy Billionaire Jeffrey Epstein in 2003," Vicky Ward, January 6, 2015, *Daily Beast* Article (Emphasis added). Defendant would not answer many questions concerning her role with in the molestation of these girls while she was sharing a house with Maria Farmer and Jeffrey Epstein:

> Q. Do you know whether or not Maria Farmer was ever at Mr. Wexner's property in Ohio?
>
> Mr. PAGLIUCA: Can you tell me how that relates to this order, counselor?
>
> MR. BOIES: Yes, I think it goes directly to the sexual activity related to Maria Farmer and what Mr. Epstein was doing with Maria Farmer. Again, you can instruct not to answer.
>
> MR. PAGLIUCA: I'm trying to understand why you are asking these questions before I -
>
> MR. BOIES: I'm asking these questions because these are people who not only have been publicly written about in terms of the sexual activity that they were put into in connection with Mr. Epstein, but the person who wrote about them is someone who talked to the witness about it, and I think that this is more than easily understood cross-examination.
>
> MR. PAGLIUCA: Your question was, do you know whether or not Maria Farmer was ever at Mr. Wexner's property in Ohio.
>
> MR. BOIES: Yes. And if you let her answer, you will see where it leads. If you won't let her answer, the judge is going to determine it. And I just suggest to you that you stop these speeches and stop debating, because you are not going to convince me not to follow-up on these questions. If you can convince the court to truncate the deposition, that's your right, but all you're doing is dragging this deposition out.
>
> MR. PAGLIUCA: You have the opportunity to give me a good faith basis why you are asking these questions.
>
> MR. BOIES: I have given you a good faith basis.
>
> MR. PAGLIUCA: You haven't.

7

>MR. BOIES: Then instruct not to answer.
>
>MR. PAGLIUCA: I am giving you the opportunity to say why you are asking the questions, and why I'm telling her not to answer and I am entitled to know that.
>
>MR. BOIES: You are not entitled to know why I'm asking the question. You are only entitled to know that it relates to the subject matter that I am entitled to inquire about, and I don't think the judge is going to think that, you know, where Mr. Epstein shipped Maria Farmer off to is outside the scope of what I'm entitled to inquire about.

*See* Schultz Decl. at Composite Exhibit 7, Excerpts from July 22, 2016 Deposition of Ghislaine Maxwell at pg. 99:6-101:20.

Defendant's counsel also stopped a line of questioning in which Defendant was asked if she recalled several girls Tony Figueroa brought over to give a "massage" to Epstein. The Court will recall that Mr. Figueroa previously testified in this case that he brought underage girls to Epstein at Defendant's behest, and that Defendant called him, asking him to bring the girls.[2] Accordingly, at Defendant's recent deposition, Ms. Giuffre's counsel attempted to follow up on this subject:

>Q. Have you ever heard the name of Carolyn Andriamo, A-N-D-R-I-A-M-O?
>
>A. I don't recollect that name at all.

---

[2] Tony Figueroa testified that Defendant called him and asked him to bring girls over, and that there were no "legitimate" massages: "Q. Any of the girls that you are aware of having gone to the house - either because you brought them or Virginia - as you sit here today, do you believe any of them were brought over to be legitimate masseuse? A. Nope." *See* Schultz Decl. at Composite Exhibit 2, Excerpts from June 24, 2016, Deposition of Tony Figueroa at pg. 245:1-8. "Q. And how long would you and one of these girls sit there and have this small talk with Ms. Maxwell? A. No more than 10 or 15 minutes. Q. All right and what were you waiting for? A. Pretty much her to take them upstairs. And then I would leave. Like I would have to wait for them to be like, 'All right. Well we're ready.' And I would be like 'All right. See you later.' And then I'd leave. And they would go do whatever." *Id.* at pg. 193:14-25. "Q. During this 2001 period, if you were driving Virginia and other girl to the house, what type of girls would you be driving? A. Pretty much like young looking teenagers 16, 17. Really pretty. You know." *Id.* at pg. 182:4-10.

MR. PAGLIUCA: Mr. Boies, those names are on Exhibit 26, which we have already gone over and she said she didn't recognize those people, so now we are just repeating things that we went over.

MR. BOIES: I am in the context of seeing if I can refresh her recollection, because these are women that ▬▬▬▬▬ who she also does not recall, brought over to Mr. Epstein's residences, and I also want to make a very clear record of what her testimony is and is not right now.

Again, you can instruct her not to answer if you wish.

MR. PAGLIUCA: I'm trying to get to nonrepetitive questions here. You basically asked the same question three times. Then we get a pile of notes that get pushed up to you, you read those. Then you ask those three times, and then we go to another question. So it's taking an inordinately long amount of time and it shouldn't.

MR. BOIES: I think that is a demonstrably inaccurate statement of what has been going on, and I attribute -- maybe I shouldn't attribute it at all. But if you want to instruct not to answer, instruct not to answer. If you don't, again, all I will do is request that you cease your comments. I can't do that. All I can do is seek sanctions afterwards.

See Schultz Decl. at Composite Exhibit 7, Excerpts from July 22, 2016, Deposition of Ghislaine Maxwell at pg. 154:20-156:10.

Based on Defendant's refusal to answer questions related to specific girls, Mr. Boies was forced to discontinue asking questions about these victims.

Defendant also refused to answer questions concerning the "sexual activities of others . . . involving or including massage with individuals Defendant knew to be or believed might become known to Epstein," when she refused to answer a question about the records she kept of the young girls who would perform massage and sexual activities with Epstein:

Q. Was there a list that was kept of women or girls who provided massages?

MR. PAGLIUCA: This has been previously deposed on. This is not part of the court's order, I will tell her not to answer.

MR. BOIES: You are going to tell her not to answer a question that says was there a list of women or girls who provided massages?

MR. PAGLIUCA: She has been previously deposed on this subject.

9

MR. BOIES: I think this is squarely in the court's order, but if you instruct her not to answer, you instruct her not to answer.

MR. PAGLIUCA: We'll find out.

*Id.* at pg. 184:14-185:6.

Q. "In 2005, were you aware of any effort to destroy records of messages you had taken of women who had called Mr. Epstein in the prior period?

MR. PAGLIUCA: Don't answer that question. It's outside the court's order.

*Id.* at pg. 177:5-11.

Ample evidence in this case establishes that not only did Defendant recruit underage girls for massage and sexual activities with Epstein, but that she participated in calling the girls; getting other people to bring girls; talking to the girls; taking massages from and leaving messages about the girls; and scheduling the girls to come over. Accordingly, questions concerning written records documenting Defendant's involvement in, and knowledge of, the girls who "massaged" Epstein is clearly within the ambit of this Court's Order. For example, a message from July of 2004 records Defendant, "Ms. Maxwell," giving a message to Mr. Epstein as message from ▓▓▓▓ (an underage girl who was **14 years old** on the date of the message) that "▓▓▓▓ is available on Tuesday no one for tomorrow." *See* GIUFFRE001465.



See Schultz Decl. at Composite Exhibit 8, Messages Involving Defendant[3]. In the investigation of Mr. Epstein's sex crimes against minors, law enforcement was able to confirm identities of underage victims through the use of the names recorded these messages, which were recovered from Epstein's trash.[4] Accordingly, the messages, and the girls described therein, are fully within the ambit of this Court's Order.

---

[3] GIUFFRE001523; GIUFFRE001427; GIUFFRE001451; GIUFFRE001454; GIUFFRE001460; GIUFFRE001461; GIUFFRE001464; GIUFFRE001465; GIUFFRE001436; GIUFFRE001435; GIUFFRE001472; GIUFFRE001474; GIUFFRE001492; GIUFFRE001553; GIUFFRE001388; GIUFFRE001555; GIUFFRE001556; GIUFFRE001557; GIUFFRE001392; GIUFFRE001526; GIUFFRE001530; GIUFFRE001568; GIUFFRE001536; GIUFFRE001538; GIUFFRE001541; GIUFFRE001546; GIUFFRE001399; GIUFFRE001402; GIUFFRE001405; GIUFFRE001406; GIUFFRE001449; GIUFFRE001409; GIUFFRE001410; GIUFFRE001411; GIUFFRE00; etc.

[4] Palm Beach Police Officer Recarey was deposed about information pulled by police officers from trash discarded by Epstein from his home:

> Q. The next line down is what I wanted to focus on, April 5th, 2005. This trash pull, what evidence is yielded from this particular trash pull?
>
> THE WITNESS: The trash pull indicated that there were several messages with written items on it. There was a message from HR indicating that there would be

11

Finally, Defendant also refused to answer foundational questions that are necessary to precede questions authorized by this Court, such as:

- "In terms of preparing for this deposition, what documents did you review?" *See* Schultz Decl. at Composite Exhibit 7, Excerpts from July 22, 2016, Deposition of Ghislaine Maxwell at 174:2-4.

- Now, have you ever engaged in oral sex? *Id.* at 18:14-15.

- Q. Did you ever have oral sex with anyone in any of Mr. Epstein's five homes that you've identified other than Mr. Epstein? *Id.* at 20:7-10.

- Did you, in the 1990s and 2000s, engage in sexual activities other than intercourse with women other than what you have testified to already? *Id.* at 89:24-90:3.

---

> an 11:00 appointment. There were other individuals that had called during that day.
>
> Q. And when you would -- when you would see females' names and telephone numbers, would you take those telephone numbers and match it to -- to a person?
>
> THE WITNESS: We would do our best to identify who that person was.
>
> Q. And is that one way in which you discovered the identities of some of the other what soon came to be known as victims?
>
> THE WITNESS: Correct.

*See* Schultz Decl. at Composite Exhibit 3, Excerpts of June 21, 2016 Deposition of Detective Recarey at pg. 42:14-43:17. Recarey went on to describe the importance of the information:

> Q. Did you find names of other witnesses and people that you knew to have been associated with the house in those message pads?
>
> THE WITNESS: Yes.
>
> Q. And so what was the evidentiary value to you of the message pads collected from Jeffrey Epstein's home in the search warrant?
>
> THE WITNESS: It was very important to corroborate what the victims had already told me as to calling in and for work.

*Id.* at 78:25 -79:15.

12

In sum, Defendant refused to answer important questions relating to the following topics that were authorized by this Court's Order: (1) Defendant's information relating to and knowledge of the circumstances of Johanna Sjoberg performing massages and sex acts upon Epstein; (2) Defendant's information relating to and knowledge of the circumstances relating to the abuse of Maria Farmer and her sister by Defendant and Epstein; (3) Defendant's information relating to and knowledge of any lists or records of girls who gave "massages" to Epstein; (4) Defendant's involvement with messages (or related documents) showing Defendant's knowledge of, and involvement in, the scheduling of underage girls for massage and sex with Epstein, and any destruction of evidence related to these messages (or related records); (5) foundational questions that were necessary precedent to asking questions authorized by this Court's Order; and (6) all related questions that arise out of any response Defendant provides within the parameters of the Court's June 20, 2016, Order.

## DISCUSSION

The Court should compel Ms. Maxwell to answer questions in the topic areas where she refused to answer during her recent deposition. Topics 1 - 4 above are central parts of this case, and Topics 5 and 6 link directly to central parts of this case. Ms. Giuffre, and now other knowledgeable witnesses, have explained and testified that Defendant not only had knowledge of Epstein's massages and sexual activity with others, but she actively facilitated the sexual massages through recruiting young females and underage girls for the purpose of "massage" and sexual activity. And proof that Defendant both had knowledge of, and was involved in, these schemes and encounters, will further help prove that Defendant's statements to the press that Virginia's allegations were "obvious lies" was itself an obvious lie.

The questions Defendant refused to answer fall squarely within this Court's earlier order. Defendant can have no legitimate basis for obstructing the search for truth by refusing to answer. The Court should, again, compel Defendant to answer all these questions. *See* Fed. R. Crim. P. 37(a)(3)(B)(i); *see, e.g., Kelly v. A1 Tech.*, No. 09 CIV. 962 LAK MHD, 2010 WL 1541585, at *20 (S.D.N.Y. Apr. 12, 2010) ("Under the Federal Rules, when a party refuses to answer a question during a deposition, the questioning party may subsequently move to compel disclosure of the testimony that it sought.  The court must determine the propriety of the deponent's objection to answering the questions, and can order the deponent to provide improperly withheld answers during a continued deposition" (internal citations omitted)).  Of course, the party objecting to discovery must carry the burden of proving the validity of its objections, particularly in light of "the broad and liberal construction afforded the federal discovery rules . . . ." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014).  For purposes of a deposition, the information sought "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 561 (S.D.N.Y. 2013) (*citing* Fed.R.Civ.P. 26(b)(1)).

Defendant cannot claim that such questions were outside the scope of this Court's order, as they directly relate to (1) her knowledge of individuals who provided "massage" to Epstein and (2) her knowledge of sexual activities of others with or involving Epstein. Defendant's knowledge of the individuals involved in the sex/"massages" relating to Epstein, and her knowledge about the sex/"massage" related to Epstein is precisely what this Court directed her to answer. *See also, Condit v. Dunne*, 225 F.R.D. 100, 113 (S.D.N.Y. 2004) (in defamation case, "Plaintiff is hereby ordered to answer questions regarding his sexual relationships in so far as

14

they are relevant to a defense of substantial truth, mitigation of damages, or impeachment of plaintiff."); *Weber v. Multimedia Entm't, Inc.*, No. 97 CIV. 0682 PKL THK, 1997 WL 729039, at *3 (S.D.N.Y. Nov. 24, 1997) ("While discovery is not unlimited and may not unnecessarily intrude into private matters, in the instant case inquiry into private matters is clearly relevant to the subject matter of the suit. Accordingly, plaintiff Misty Weber shall respond to defendants' interrogatories concerning her sexual partners . . . ."). Moreover, generally speaking, instructions from attorneys to their clients not to answer questions at a deposition should be "limited to [issues regarding] privilege." *Morales v. Zondo, Inc.*, 204 F.R.D. 50, 54 (S.D.N.Y. 2001). In this case, defense counsel once again ranged far beyond the normal parameters of objections and gave instructions directly in contravention of this Court's Order directing Defendant to answer exactly the type of questions posed to her.

In light of Defendant's willful refusal to comply with this Court's Order directing Defendant to answer questions related to the Court's June 20, 2016, Order, including topics enumerated above, Ms. Giuffre also seeks attorneys' fees and costs associated with bringing this motion, as well as fees and costs associated with re-taking Defendant's deposition.

## CONCLUSION

Defendant should be ordered to sit for a follow-up deposition and directed to answer questions regarding the topics enumerated above.

Dated: July 29, 2016

                                  Respectfully Submitted,

                                  BOIES, SCHILLER & FLEXNER LLP

                          By:  /s/ Sigrid McCawley
                              Sigrid McCawley (Pro Hac Vice)

Meredith Schultz (Pro Hac Vice)
Boies Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

David Boies
Boies Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Bradley J. Edwards (Pro Hac Vice)
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
 (954) 524-2820

Paul G. Cassell (Pro Hac Vice)
S.J. Quinney College of Law
University of Utah
383 University St.
Salt Lake City, UT 84112
(801) 585-5202[5]

---

[5] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on the 29th day of July, 2016, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on the individuals identified below via transmission of Notices of Electronic Filing generated by CM/ECF.

>Laura A. Menninger, Esq.
>Jeffrey Pagliuca, Esq.
>HADDON, MORGAN & FOREMAN, P.C.
>150 East 10th Avenue
>Denver, Colorado 80203
>Tel: (303) 831-7364
>Fax: (303) 832-2628
>Email: lmenninger@hmflaw.com
>       jpagliuca@hmflaw.com

>/s/ Sigrid S. McCawley
>Sigrid S. McCawley