**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------X

VIRGINIA L. GIUFFRE,

      Plaintiff,

v.

GHISLAINE MAXWELL,

      Defendant.

**15-cv-07433-RWS**

---------------------------------------------------X

**Response in Opposition to Plaintiff's Motion to Enforce the Court's Order and**
**<u>Direct Defendant to Answer Deposition Questions Filed Under Seal</u>**

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
East 10th Avenue
Denver, CO 80203
303.831.7364

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................ 2

I.   PLAINTIFF'S FAILURE TO IDENTIFY THE SPECIFIC QUESTIONS CLAIMED
     UNANSWERED REQUIRES DENIAL OF THE MOTION ............................................. 8

II.  THE REQUESTED TOPIC AREAS ARE CUMULATIVE, DUPLICATIVE AND NO
     GOOD CAUSE EXISTS FOR PERMITTING ADDITIONAL DEPOSITION TIME...... 10

III. COUNSEL INSTRUCTED MAXWELL NOT TO ANSWER TO ENFORCE THE
     COURT'S ORDER AND TO PREVENT HARASSMENT BY PLAINTIFF'S COUNSEL
     ......................................................................................................................... 13

     A.   Objected to Question Number 1: ...................................................................... 13

     B.   Objected to Questions Number 2 and 3. ............................................................ 14

     C.   "Objected" to Question Number 4. .................................................................... 15

     D.   "Objected" to Question Number 5 ..................................................................... 15

     E.   "Objected" to Question Number 6 ..................................................................... 15

     F.   Objected to Question Number 7 ......................................................................... 16

     G.   Objection to Question Number 8 ....................................................................... 17

     H.   Objections to Questions 9, 10, and 11. .............................................................. 17

CERTIFICATE OF SERVICE ....................................................................................... 25

Defendant Ghislaine Maxwell, by and through her counsel, hereby submits the following Response in Opposition ("Response") to Plaintiff's Motion to Enforce the Court's Order and Direct Defendant to Answer Deposition Questions Filed Under Seal ("Motion"), as follows:

## INTRODUCTION

This lawsuit presents one relatively simple question:  is Plaintiff's claim that she was sexually abused, sexually trafficked and held as a "sex slave" by Jeffrey Epstein between 1999 and 2002 "with the assistance and participation of" Ms. Maxwell substantially true?  Plaintiff already has admitted, under oath, that substantial portions of her story are untrue; she has so far refused to say under oath what other lies printed by the press about her story are untrue, but has admitted that journalist Sharon Churcher "got it wrong."  For example, Plaintiff has admitted that she did not meet Ms. Maxwell or Mr. Epstein in 1999 (or in 1998) at the age of 14 or 15, as she previously has sworn and as she told members of the press.  Declaration of Jeffrey S. Pagliuca ("Pagliuca Decl."), Composite Ex. A (Testimony of Plaintiff Virginia Giuffre on May 3, 2016), at 26-27, 220-226.  Plaintiff admitted that she did not spend her sweet 16th birthday with Mr. Epstein and Ms. Maxwell as she included in her book manuscript, her Jane Doe #102 Complaint and in the story she sold to the Daily Mail.  *Id.* at 102.   Plaintiff's counsel has admitted that it was a mistake to sue Alan Dershowitz for defamation, after he provided them documentation establishing he never was in their client's presence, nor did he have sex with her.  Pagliuca Decl., Ex. B.  And Plaintiff's story about attending a dinner party with Bill Clinton on Little St. James was debunked by none other than former FBI head, Louis Freeh.  *Id.*

Yet, undeterred, Plaintiff and her counsel continue to use this lawsuit to seek discovery of matters far afield of the one simple question posed in the defamation claim, to explore events that occurred well past 2002, when Plaintiff lived in Australia and had no contact with Ms. Maxwell or Mr. Epstein.  The current witch-hunt has now expanded into the private personal life

of defendant Ghislaine Maxwell.  The harassing, extended, repetitive, cumulative and redundant continued deposition of Ms. Maxwell should be concluded.

## **FACTUAL BACKGROUND**

On April 22, 2016 Plaintiff deposed Ms. Maxwell for a full seven hours.  The transcript of that deposition is 418 pages long. Ms. Maxwell did not assert any privilege against self-incrimination and was questioned extensively about, among other things:  her relationship with Jeffrey Epstein, her knowledge of "sexual trafficking," sex with minors, non-consensual sex, sex involving the Plaintiff and others, sex involving Plaintiff and Mr. Epstein, sex involving the Plaintiff and Ms. Maxwell, sex involving the Plaintiff, Ms. Maxwell and Mr. Epstein.  She was asked questions about whether she recruited girls for Ms. Epstein to have sex with, her knowledge of Ms. Epstein's sex with a number of people.  She was asked questions about "sex toys," pornographic images, child pornography, and nudity at Mr. Epstein's house.  Ms. Maxwell answered these questions, and many others, to the best of her ability.  *See* Pagliuca Decl., Composite Exhibit C (Transcript of (First) Deposition of Ghislaine Maxwell on April 22, 2016).

During her **first** deposition, Ms. Maxwell was freely questioned and testified about the following:

- She never had a sexual encounter with Plaintiff, ever.  *Id.* at 76:3-11.

- She never saw Plaintiff massage Mr. Epstein.  *Id.* at 75:12-24.

- She never saw Jeffrey Epstein and Plaintiff in a sexual situation.  *Id.* at 75:23- 76:l.

- She did not have a set of outfits for Plaintiff to wear. *Id.* at 69:1-24, and again at 117:4-15.

- She had no knowledge of any non-consensual sex acts involving Mr. Epstein. *Id. at* 55:5-15.

- She never had non-consensual sex with anyone. *Id.* at 62:19-20 & 63:23-25.

- She did not train Plaintiff to "recruit" other girls for massages or sexual massages.  *Id.* at 81:21- 82:7.

- She never arranged for or asked Plaintiff to have sex with anyone. *Id. at* 58:6-11.

- She never gave a massage with Plaintiff in the room with Mr. Epstein.  *Id. at* 19:16-21.

- She never gave a massage to Mr. Epstein with a female that was under the age of 18 in the room.  *Id.* at 22:11-14.

- She never observed Mr. Epstein having a massage given by an individual, a female, who was under the age of 18.  *Id.* at 22:15-18.

- She never had sex with███████████.  *Id. at* 38:19-23.

- She never observed Jeffrey Epstein having sex with ███████████  *Id.* at 38:24- 39:2.

- She was unaware if Jeffrey Epstein was having sexual contact with ███████████ when she was 13 years old.  *Id.* at 39:3-5.

- She was never involved in an orgy with ███████████.  *Id.* at 40:16-18.

- She had no knowledge of whether ███████████ was involved with sex with Jeffrey Epstein and girls over the age of 18.  *Id.* at 46:13-16.

- She had no knowledge of whether ███████████ recruited other girls for sex with Jeffrey Epstein.  *Id.* at 46:17-21.

- She did not know the precise nature of Jeffrey Epstein's relationship with Sara Kellen. *Id.* at 48:5-6.

- She was unaware of any sexual acts with masseuses and Jeffrey Epstein that were non-consensual.  *Id.* at 55:5-15.

- She discussed her knowledge of Annie Farmer. *Id.* at 55:17- 56:20.

- She had no knowledge of Annie Farmer telling the police that Jeffrey Epstein sexually assaulted her.  *Id.* at 56:16-20.

- She had no knowledge of Emmy Taylor having sex with Jeffrey Epstein.  *Id.* at 65:10-15.

- She never had sex with Jeffrey Epstein, Plaintiff, and Emmy Taylor.  *Id.* at 65:8-10.

- She had no knowledge of Emmy Taylor bringing females to the house to massage Jeffrey Epstein.  *Id.* at 67:5-13.

- She had no knowledge about a basket of sex toys. *Id.* at 70:25- 75:4 and again at 242:3-243:13.

3

- She was unaware of Jeffrey Epstein ever having his nipples pinched while having sex with a minor. *Id.* at 82:23-83:4.

- She never met anyone underage in London to provide a massage for Jeffrey Epstein. *Id.* at 97:25-98:5.

- She had no knowledge about Jean Luc Brunel bringing girls to Jeffrey Epstein for the purpose of providing massages. *Id.* at 99:2-21.

- She never participated in obtaining visas for foreign girls. *Id.* at 100:9.

- She did not believe it was Jeffrey Epstein's preference to start sex with a massage. *Id.* at 100:10-20.

- She never trained a female under the age of 18 at Jeffrey Epstein's home. *Id.* at 157:5-10.

- She has no knowledge whether ███████ ever asked females to come over to see Jeffrey Epstein for the purpose of sexual massage. *Id.* at 268:21-24.

- She had no knowledge of any sexual relationship between Jeffrey Epstein and Anouska DiGeorgio. *Id.* at 305:5-23.

- She was aware of ████████ and understood that she was Jeffrey Epstein's girlfriend and spent a lot of time with him in 1999-2000. *Id. at* 364:5-365:11.

Because Ms. Maxwell had not, by virtue of becoming a defendant in this case, injected her entire personal sexual history into this litigation counsel for Ms. Maxwell, during the first 7 hour deposition, instructed Ms. Maxwell to not answer questions related to consensual sexual activity with adults.  No objection was raised, and no instruction to not answer lodged, to questions regarding Ms. Maxwell's knowledge of sexual activity (consensual or non-consensual) by Mr. Epstein or others with children, Plaintiff, or other persons.  No objections were made, or instructions to not answer, to questions about whether Ms. Maxwell assisted Mr. Epstein in the alleged sexual trafficking of the Plaintiff from 1999 to 2002. Ms. Maxwell answered questions about sexual trafficking, prostitution, her job with Mr. Epstein, and police reports related to Mr. Epstein.  Ms. Maxwell was questioned, without any instruction not to answer, about message pads, phone lists, the hiring practices related to massages, hiring practices in general, whether Jeffrey Epstein had a scheme to recruit underage girls for sexual massages and whether Jeffrey

Epstein's assistants would arrange times for underage girls to perform sexual massages. Pagliuca Decl., Ex. C at 253-55.  She was extensively questioned about various message pads recovered from Jeffrey Epstein's home by the Palm Beach Police Department.  *Id.* at 147:23-167:23.  She was extensively questioned regarding her knowledge about Johanna Sjoberg. *Id*. at 307:6-312:12.  She was extensively questioned about a list containing names and phone numbers under the heading "Massage Florida." *Id.* at 313:18 – 334:8.  Simply stated, with the exception of her adult consensual sex life, Plaintiff was free to question Ms. Maxwell, and in fact questioned Ms. Maxwell on any topic.  Importantly, Plaintiff's original motion recognized this fact, seeking only to response Plaintiff on one subject: "Defendant should be ordered to sit for a follow-up deposition and directed to answer questions regarding her knowledge of alleged "adult" sexual activity."  Plaintiff's Motion to Compel Deposition Questions, WHEREFORE Clause, at 10 (Doc. # 143).

On June 20, 2016 the Court issued its Order allowing Ms. Maxwell to be re-deposed on a limited basis.  The Court authorized questioning relating to:

1.  Ms. Maxwell's sexual activity with or involving Jeffrey Epstein;

2.  Ms. Maxwell's sexual activity with or involving the Plaintiff;

3.  Ms. Maxwell's sexual activity with or involving underage females;

4.  Ms. Maxwell's sexual activity involving or including massage with individuals Ms. Maxwell knew were or were likely involved with Mr. Epstein;

5.  Ms. Maxwell's knowledge of sexual activities of others with or involving Epstein;

6.  Ms. Maxwell's knowledge of sexual activities of others with or involving Plaintiff;

7.  Ms. Maxwell's knowledge of sexual activity of others with underage females known to Epstein or believed to be known to Epstein;

8.  Ms. Maxwell's knowledge of sexual activity of others involving massage with individuals Ms. Maxwell knew or believed might be known to Epstein.

The continued deposition was expressly limited to the above eight categories, and the Court instructed that Ms. Maxwell "need not answer questions that relate to none of these subjects or that is clearly not relevant, such as sexual activity of third-parties who bear no knowledge or relation to key events, individuals, or locations of this case." Order of June 20, 2016 at 10 (Doc. # 264-1). Presumably the Court did not authorize repetitive questioning about topics that had been asked and answered in the prior deposition.

Ms. Maxwell had already been subjected to, and fully answered, questions related the majority of the 8 topics in her first 7-hour deposition. Questions related to topics 2, 3, 5, 6, and 7 had all been answered in the negative, *i.e.,* Ms. Maxwell did not have any sexual contact with the Plaintiff (2), did not have sexual contact with any underage females (3), did not have any sexual contact with anyone during a massage (4); had no knowledge of Epstein's sexual activity other than with Ms. Maxwell (5); had no knowledge of sexual activity with others and the Plaintiff (6); and Ms. Maxwell's knowledge of sexual activity of others with minors. Topics 4 and 8 had been substantially answered, in the negative. The instruction not to not to answer questions about sexual activity and massages was limited to any activity involving consensual adults. *See* Plaintiff's Motion to Compel Deposition Questions at 10 (Doc. #143).

Given that the majority of the questions had already been posed and answered over a full seven-hour time period one might reasonably assume that Ms. Maxwell's second deposition would be short and direct. Unfortunately, Plaintiff's counsel chose to ignore the Court's Order, repeatedly sought to reopen previously completed deposition topics and tried to ask questions about new topics completely unrelated to the limited purpose authorized. Pagliuca Decl., Ex. D (Transcript of (Second) Deposition of Ghislaine Maxwell on July 22, 2016). The entire deposition was far beyond the specific request made by Plaintiff in her Motion that Ms. Maxwell

be required to answer questions about adult consensual sexual activity – the only questions on which instructions were given in the first deposition. Yet, broad latitude was given by counsel in the deposition, permitting pages of duplicative, redundant examination on countless topics which had already been asked and fully answer in the first disposition.  By way of example:

| Duplicative Topic of Questioning | First Deposition (Exhibit C) | Second Deposition (Exhibit D) |
|---|---|---|
| Circumstances surrounding her first meeting of Plaintiff and if she held herself out as a professional masseur | 14:9-19:18 35:11-36:20 213:5-220:3 | 65:4-70:5 |
| If she saw women under the age of 18 (first deposition) or 21 (second deposition) at Epstein's houses | 12:22-14:8; 22:15-24:9; 99:2-100:4; 122:19-122:14 | 71:20-73:18 |
| Her knowledge of Ms. Sjoberg, her job, how she was hired, and if Ms. Maxwell ever received massages from Ms. Sjoberg | 59:7-63:16; 286:23-293:13; 307:6-312:12 | 74:2-78:19[1] |
| Knowledge of or meetings with Maria or Annie Farmer | 55:20-56:20; 62:21-25 | 95:14-98:10; 103:19-113:22 |
| Her knowledge of Nadia Marcinkova and interactions with Mr. Epstein | 40:19-47:14 | 120:22-122:5; 126:22-129:12 |

---

[1] Consistent with Ms. Maxwell's testimony, Ms. Sjoberg testified that 1) all massages she gave to Ms. Maxwell were ordinary professional massages, and never of a sexual nature; 2) Ms. Maxwell and she never engaged in any sexual activity, nor was it ever requested; and 3) all interactions she had at Mr. Epstein's property of a sexual nature were consensual activities while she was an adult.  Pagliuca Decl., Ex. E, at 94-96; 101; *see generally* Response at 20-21, *infra*.

| Duplicative Topic of Questioning | First Deposition (Exhibit C) | Second Deposition (Exhibit D) |
|---|---|---|
| Her knowledge of Sara Kellen, when she last spoke to Ms. Kellen, what Ms. Kellen's job was, and her knowledge of sexual relations between Ms. Kellen and Mr. Epstein | 47:15-49:18; 56:21-57:11; 254:25-256:8; 328:21-329:6; 396:4-21; 411:14-412:22 | 117:14-118:9; 125:2-126:2 |
| Her interactions with Alfredo Rodriguez | 329:7-330:12; 331:9-335:10 | 129:15-132:6 |
| Her knowledge concerning Jean Luc Brunel's sexual activities or interaction with Mr. Epstein | 379:22-380:18; 99:14-21; 116:19-117:3; 166:21-167:23 | 150:6-17 |
| Her knowledge of the identities of a list name titled "Massage – Florida" from an address book marked in the first deposition and discussed at length | 312:15-334:8 | 179:16 -184:15 |

**THE QUESTIONS**

## I.   PLAINTIFF'S FAILURE TO IDENTIFY THE SPECIFIC QUESTIONS CLAIMED UNANSWERED REQUIRES DENIAL OF THE MOTION

Plaintiff broadly, and inaccurately, claims now that at her second deposition, Ms. Maxwell "refused to answer many questions" related to sexual activity or "refused to answer questions about subject integral to this lawsuit."  Motion at 3-4.  This assertion is patently dispelled by a review of the second deposition transcript which is 193 pages long.  Pagliuca Decl., Ex. D.  The deposition began at 9:04 a.m. and concluded at 2:51 p.m.  The total time Ms. Maxwell testified in this deposition was 4 hours and 52 minutes for a total combined deposition

8

time of 11 hours and 52 minutes.  A total of 787 questions were posed to Ms. Maxwell in the second deposition.  Ms. Maxwell answered every question posed to her that fell within the scope of the June 20 Order, many that were outside the scope, and countless questions that had been asked and answered in her first deposition.

It is difficult to discern precisely what questions Plaintiff is complaining about in her Motion because of her generalized and non-specific complaints. Plaintiff fails to cite to a single instruction not to answer that 1) falls within the scope to the Court's Order and 2) that was not answered when properly rephrased to fall within the scope of the Order.  S.D.N.Y. Local Rules require that:

> A party seeking or opposing relief under Fed. R. Civ. P. 26 through 37 inclusive, or making or opposing any other motion or application, **shall quote or attach only those portions of the depositions**, interrogatories, requests for documents, requests for admissions, or other discovery or disclosure materials, **together with the responses and objections thereto, that are the subject of the discovery motion or application**, or that are cited in papers submitted in connection with any other motion or application. See also Civil Local Rule 37.1.

The failure to comply with Rule 37.1 and set forth the particular questions or responses Plaintiff claims are deficient is "enough to require denial of the motion."  *Sibley v. Choice Hotels Int'l*, No. CV 14-634 (JS) (AYS), 2015 WL 9413101, at *5 (E.D.N.Y. Dec. 22, 2015) (denying motion to compel where party failed to identify the specific questions and responses to interrogatories claimed deficient); *see also Kilkenny v. Greenberg Traurig, LLP*, No. 05 CIV. 6578NRB, 2008 WL 371808, at *1 (S.D.N.Y. Feb. 7, 2008) (denying motion to compel where specific questions and objection were not provided,  noting rule 37.1 is "This is not an academic or ritual requirement. . . . Court cannot be tasked with performing the functions of Kilkenny's legal counsel [by identifying claimed deficiencies] and thereby seen as advocating for one party over another."; *Frattalone v. Markowitz,* No. 91 CIV. 5854 (LMM), 1994 WL 494878, at *3

(S.D.N.Y. Sept. 9, 1994) (permitting reopening of deposition only if party could specifically identify areas of inquiry previously foreclosed).  To the extent Plaintiff has not identified specific questions that Ms. Maxwell was instructed not to answer she has waived any issue related to the questioning.

## II.     THE REQUESTED TOPIC AREAS ARE CUMULATIVE, DUPLICATIVE AND NO GOOD CAUSE EXISTS FOR PERMITTING ADDITIONAL DEPOSITION TIME

Plaintiff's proffered "topic areas" that she would like to re-open the deposition to cover – again – makes clear that what she is asking for is additional time – in excess of the almost 12 hours she has already had – to ask questions that have already been answered.  This is impermissible under Rule 30(d)(1) which prohibits depositions in excess of 7 hours seeking the type of duplicative and cumulative testimony Plaintiff seeks.

The only testimony cited in the Motion are instances in which Ms. Maxwell had already fully testified on the topic area.  First, she cites questions concerning Johanna Sjoberg, a witness who has been deposed in this case.  What Plaintiff ignores is that Ms. Maxwell had already been fully examined concerning her knowledge about Ms. Sjoberg and answered every question, with the exception of a single questions regarding adult consensual sexual activity which was answered in the second deposition.  *See* Pagliuca Decl., Ex. C at 59:7-63:16; 286:23-293:13; 307:6-312:12 & Ex. D at 77:24 – 78:6 ("Q. Did Mr. Epstein, insofar as you believe, engage in sexual activities with Johanna? A.  I would not know.  I would say no.  Q.  Did you engage in sexual activities with Johanna? A.  No.").  Despite this, leeway was given, and 5 pages of repeated testimony concerning Ms. Sjoberg commenced and was permitted until the duplicative nature of the testimony was simply too much. *See* Pagliuca Decl., Ex. D at 74:2-78:19.

Second, Plaintiff inaccurately complains that Ms. Maxwell refused to answer questions concerning sexual activity involving two women named Annie and Maria Farmer.  Motion at 6. Not so.  Ms. Maxwell answered questions for fully **13 pages** of her deposition concerning the Farmers.  *See* Pagliuca Decl., Ex. D at 95-98 and 103-113.  Ms. Maxwell answered **well over 76 questions** relating to Annie and Maria Farmer including who they are, when she met them, whether she ever saw them at Epstein's homes or her own home, whether Epstein ever had sex with them, whether they worked for Epstein, whether they flew on planes together, gave or received massages, participated in any sexual activities with one another, where they lived, the description of their living environments, and whether journalist Vicky Ward ever told Ms. Maxwell that Epstein had engaged in sexual activities.  *Id.*  This was on top of the questions that Ms. Maxwell had already answered at her **first** deposition that were nearly identical:  who are the Farmers, how did you meet them, whether they ever made any allegations of sexual abuse by Epstein, or whether Ms. Maxwell had ever had non-consensual sexual contact with Annie Farmer.  Pagliuca Decl., Ex. C at 95:14 -98:10 & 103:19-113:22.  In fact, at the first deposition, Ms. Maxwell did not refuse to answer a single question regarding the Farmers.  Thus, all of the questions at the second deposition were redundant, cumulative and outside of the Court's Order. The only question that Ms. Maxwell refused to answer was:  "What did Vicky Ward tell you about Maria Farmer when she talked to you?," after which she answered another 10 pages of questions that centered around whether Vicky Ward had said specific things regarding the Farmers.  Pagliuca Decl., Ex. D at 103-113.  Ms. Maxwell has already flatly denied she had any knowledge of the allegations posited by reporter Vicky Ward.

Plaintiff is not permitted to re-depose Ms. Maxwell on issues already covered, or which she had the opportunity to cover, in the first 7-hour deposition, particularly in light of the

additional 4.5 hours permitted in the second deposition and the fact that she answered in the second deposition the only pertinent questions permitted by the Court Order.  *See* Fed. R. Civ. P. 30(d)(1) ("the court must allow additional time **consistent with Rule 26(b)(1) and (2)** if needed to fairly examine the deponent") (emphasis added).  Rule 30(d)(1) requires a court to guard against redundant or disproportionate discovery, stating that any additional deposition time must be consistent with Rule 26(b)(1) and (2), prohibiting, among other things, cumulative and duplicative testimony.  The duplicative nature of the "topics" requested by Plaintiff is demonstrated by the previously cited testimony.  It is compounded by the fact that Ms. Sjoberg has fully testified concerning how she came to work for Epstein, what she did while working for him, and how she was paid.  *See* This Response at 20-21, *infra.*  The redundancy of the requested testimony (much of which is outside the scope of the Order) prohibits a finding of good cause for reopening – yet again – Ms. Maxwell's testimony.  *See Kleppinger v. Texas Dep't of Transp.*, 283 F.R.D. 330, 333 (S.D. Tex. 2012) ("a party seeking a court order to extend the duration of the examination must show 'good cause' to justify such an order" including showing information is not duplicative and cumulative).

Of course, Ms. Maxwell and her counsel had no desire to subject Ms. Maxwell to a third deposition, thus permitting many questions that far exceeded the scope of the Order.  When called on to explain how extraneous questions were proper, Plaintiff's counsel refused to proffer why certain questions were within the Court's order leaving Ms. Maxwell's counsel no option, on a few occasions, to instruct Ms. Maxwell to not answer.  Plaintiff's counsel's refusal to simply explain how objectionable questions were within the scope of the permitted deposition makes clear that they were not, and should act as a waiver**.**  *See, e.g.,* Pagliuca Decl., Ex. D at 99-101.

### III.   COUNSEL INSTRUCTED MAXWELL NOT TO ANSWER TO ENFORCE THE COURT'S ORDER AND TO PREVENT HARASSMENT BY PLAINTIFF'S COUNSEL

The only questions to which counsel for Ms. Maxwell instructed her not to answer were those that she had already answered or were outside the Court's Order permitting a re-opening of the deposition. Fed. R. Civ. P. 30(c)(2) (instruction not to answer appropriate "when necessary to … enforce a limitation ordered by the court"). Plaintiff loosely points to eleven questions in her Motion. She omits parts in which the question had already been answered, and she implies an instruction not to answer where none was given. None of the cited questions merits the re-opening of Ms. Maxwell's deposition for a third bite at the apple.

### A.   Objected to Question Number 1:

*"So how did it happen, Ms. Maxwell, that Joanna, who had been hired to answer phones, ended up giving massages to you and Mr. Epstein."*

In Ms. Maxwell's first, 7 hour, deposition she was questioned extensively about her relationship with Ms. Sjoberg. *See* Pagliuca Decl. Ex. C at 59-63; 112-113; & 307-309. Consistent with the Defendant's position at that time, Plaintiff was free to ask, and asked, questions about Ms.Sjoberg with the exception of consensual adult sexual contact. The only instruction to not answer was limited to consensual adult sexual contact, of which there was none. (Although in fact, Ms. Maxwell testified in her first deposition that the massages with Ms. Sjoberg did not involve sex.). *See* Pagliuca Decl. Ex. C at 61:14-15..

In Ms. Maxwell's second, 4.5 hour deposition, she was again questioned extensively about Ms. Sjoberg. The questioning begins on page 74 of the transcript. Plaintiff's counsel asked dozens of questions about Ms. Sjoberg without any instruction to not answer. When the questions became repetitive to the questions asked at the first deposition and strayed outside the

Court's Order counsel for Ms. Maxwell sought guidance form the Court, which was not available.

Notwithstanding that the examination was repetitive, Ms. Maxwell responded to questions, without instruction not to answer, that were within the Court's Order.  She testified that she did not have any sexual relationship or contact with Ms. Sjoberg and was unaware of any sexual contact between Mr. Epstein and Ms. Sjoberg.  *See* Pagliuca Decl. Ex. D at 77:24-78:6.  She also testified about Ms. Sjoberg and massages, both in her first deposition and the second.  *See* Pagliuca Decl. Ex. C at 59-63; 112-113; & 307-309 and Ex. D at 74-82:8.

When the question about Ms. Sjoberg  answering phones for was asked for the *fourth time*, the instruction not to answer was given.  These questions had been asked in the first deposition, could have been asked in greater detail in the first deposition, and were answered in both depositions prior to the instruction not to answer being given:  Ms. Sjoberg was hired to answer phones and sometime after that went to massage school and began giving massages.  Ms. Maxwell was not sure how the transition occurred but believed "that she went to massage school and became a professional masseuse."  *Id.,* at 75:10-11.

## B.   Objected to Questions Number 2 and 3.

*"Did Mr. Epstein pay Johanna for the massages that she gave Mr. Epstein?"*
*"Do you know how much Mr. Epstein paid Johanna to give massages?"*

Plaintiff has selectively and misleadingly provided only a portion of the transcript related to this issue and ignores the fact that Plaintiff, in the first deposition, asked questions on the same topic.  Moreover, Ms. Maxwell previously testified that she did not pay Ms. Sjoberg and did not know who paid her.  *See* Pagliuca Decl. Ex. C at 59-63; 112-113; & 307-309 and Ex. D at 82:2-7.

14

### C.      "Objected" to Question Number 4.

*"Do you know if Maria Farmer was ever at Mr. Wexner's property in Ohio?"*

This question is completely outside the Court's June 20, 2016 Order as it does not relate to Ms. Maxwell, Mr. Epstein, massages, sex, or any property identified in this case.  Regardless, the witness was never instructed to not answer the question and did not refuse to answer questions about the Farmers.  After the question was posed, counsel for Ms. Maxwell simply asked for an explanation as to how the question was within the Court's Order.  The witness was not instructed not to answer.  It appears that after considering the request for a proffer as to how the question was within the Court's Order, the question was withdrawn and a different question was posed:  "Mr. Boies:  Let me approach it this way." … Did Ms. Ward tell you that?"  The questioning about the Farmers continues many pages thereafter.  *See* Pagliuca Decl., Ex. D at 99-113.

### D.      "Objected" to Question Number 5

Without any record support Plaintiff claims that "Defendant's counsel also stopped a line of questioning in which defendant was asked if she recalled several girls Tony Figueroa brought over to give a 'massage' to Epstein."  Plaintiff cites no specific instruction not to answer because one was never given.  Ms. Maxwell answered questions about Mr. Figueroa and was questioned extensively regarding lists of names, about which Ms. Maxwell had no knowledge.  Plaintiff was not forced to "cease questioning" about any person.  The questioning occurred and Ms. Maxwell responded.

### E.      "Objected" to Question Number 6

*"Was there a list that was kept of women or girls who provided massages?"*

The "list" was introduced as Exhibit 13 to Ms. Maxwell's first deposition. Ms. Maxwell was questioned extensively about the "list" and testified, without objection about the list.  In her

second deposition, the same Exhibit 13 was introduced and Ms. Maxwell was asked, without objection, questions relating to specific names on Exhibit 13.  *See* Pagliuca Decl., Ex. C at 312-334 and Ex. D at 179- 89.

Exhibit 13 was a document prepared by someone other than Ms. Maxwell, was not maintained by Ms. Maxwell and over which Ms. Maxwell had no control.  Given the extensive testimony on the subject in both depositions, it was appropriate to instruct the witness to not answer the question.  This debate, however is unnecessary because the question was asked again in a slightly different form and answered:  Q: "Did you, or insofar as you are aware anyone, maintain a list of females that provided massage services to Mr. Epstein at his residences?"  A: "I don't know anything about a list."  *Id*., Ex. D at 185:13-20.  No follow up questions were asked after this answer.

### F.    Objected to Question Number 7

*"In 2005, were you aware of any effort to destroy records of messages you had taken of women who had called Mr. Epstein in the prior period?"*

Ms. Maxwell was previously deposed about documents purportedly seized when Mr. Epstein's house was searched by the Palm Beach Police Department.  *See* Pagliuca Decl., Ex. C at 312-19.

The Court's June 20, Order did not reopen the deposition to allow for baseless questions about the destruction of evidence in 2005.  Alleged destruction of records has nothing to do with any of the 8 areas that the Court addressed.  Accordingly, the objection is well founded.  Plaintiff's tortured explanation about how the question fits into the Court's Order is nonsense.

16

### G.     Objection to Question Number 8

*"In terms of preparing for this deposition, what documents did you review?"*

Ms. Maxwell was instructed to not answer the question as it related to privileged communications between Ms. Maxwell and counsel.  Ms. Maxwell was asked if any of the documents refreshed her recollection about any of the events that occurred.  Her response was: "No."  A follow up question was asked as to whether counsel provided Ms. Maxwell with any documents and the answer was "One, I believe."

The communication between Ms. Maxwell and counsel was privileged, did not refresh her recollection, and the question was properly objected to.

### H.     Objections to Questions 9, 10, and 11.

*"Now have you ever engaged in oral sex?"*

*"Did you ever have oral sex with anyone in any of Mr. Epstein's five homes that you've identified other than Mr. Epstein?"*

*"Did you, in the 1990s and 2000s, engage in sexual activities other than intercourse with women other than what you have testified already?"*

All of these questions were prohibited by the Court's Order because they were related to unidentified "third-parties who bear no knowledge or relation to the key events, individuals, or locations of this case."

The question "Now have you ever engaged in oral sex?" is not tied to any person place, event or time.  It is clearly out of bounds.  Ms. Maxwell did, in fact, answer the question about oral sex with individuals other than Mr. Epstein when the locations were specified*, i.e,* planes; New York; Palm Beach; New Mexico; Paris; and the Virgin Islands.  *See* Pagliuca Decl., Ex. D, Excerpts from July22, 2016 Maxwell Deposition pp. 21-23.  (The answer was "no".).

The question: "Did you, in the 1990s and 2000s, engage in sexual activities other than intercourse with women other than what you have testified already?" is also prohibited by the Court's Order as it is not tied to a person, location, or key event associated with this case.

Federal Rule of Civil Procedure 26(b)(1) provides, in relevant part, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party …."  Although the scope of discovery is deliberately broad, a Court is not "required to permit plaintiff to engage in a `fishing expedition' in the hope of supporting his claim." *McGee v. Hayes*, 43 Fed.Appx. 214, 217 (10th Cir. 2002) (unpublished opinion); *see also Tottenham v. Trans World Gaming C*orp., 2002 WL 1967023, at *2 (S.D.N.Y.2002) ("Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support") (quotations omitted); *Hardrick v. Legal Services Corp.*, 96 F.R.D. 617, 618 (D.D.C.1983) (courts should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests.") (quotation omitted).  "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir.1995) (quotation omitted).

Although relevance in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Zenith Electronics Corp. v. Exzec, Inc*., No. 93 C 041, 1998 WL 9181, at *2 (N.D.I11.1998) (quoting *Piacenti v. Gen. Motors Corp*., 173 F.R.D. 221, 223 (N.D.I11.1997)).  Courts have also recognized that "[t]he legal tenet that relevancy in

the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." *Id.* (quotation omitted).

Under Rule 26(c) of the Federal Rules of Civil Procedure any party may move the court, for good cause shown, for a protective order regarding pretrial discovery "which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c). "Although the Rule contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." *Seattle Times Company v. Rhinehart*, 467 U.S. 20, 35 (1984).

It is important to consider, again, that Ms. Maxwell is the defendant in this action.  She has not put her private affairs at issue.  She simply denied that she assisted Jeffrey Epstein in the sexual trafficking of the Plaintiff.  It is also important to recognize that Ms. Maxwell is not Mr. Epstein and Mr. Epstein's alleged conduct after Plaintiff left the country is not an issue in this defamation case.  The Plaintiff has no personal knowledge of any of Mr. Epstein's activities after 2002.  Accordingly, any statements by Plaintiff about Mr. Epstein's activities occurring after 2002 are her opinions, not facts that are subject to any defamation claim.

## I.   THE PURPORTED "FACTUAL BACKGROUND" CITED BY PLAINTIFF IS NOT RELEVANT TO THE ISSUES IN THE CASE OR THIS MOTION

As Carl Sandburg famously said, "If the facts are against you, argue the law. If the law is against you, argue the facts. If the law and the facts are against you, pound the table and yell like hell."  In this case, rather than pound the table, Plaintiff tries to distract from the issues at hand – whether Ms. Maxwell fully answered all questions posed – by pointing to selective misleading quotes from various other witnesses who have been deposed in this case.  When viewed in their entirety, those witnesses neither support Plaintiff's single claim for defamation nor her claim for

relief in this Motion.  In direct contradiction to Plaintiff's fabricated story, the witnesses actually

testified as follows:

**Johanna Sjoberg** worked as a masseuse for Jeffrey Epstein **for 5 years** from 2001-2006,

while she was aged 21-26, including 1 ½ years that Plaintiff claims she was his "sex slave".  As

to that experience, Ms. Sjoberg testified:

- She never saw underage girls with Jeffrey Epstein or Ms. Maxwell and was "surprised" by the allegations of underage girls.  Pagliuca Decl., Ex. E at 102.  She never witnessed anyone underage in the presence of Epstein and Maxwell.  *Id.* at 29.  She only witnessed masseuses who were her age or older and they wore "normal" clothes. *Id.* at 31-32.
- She never was asked by Epstein or Maxwell to give sexual massages to any of their friends or any famous people and the massages she gave Epstein's friends were purely non-sexual.  *Id.* at 112-116.

- She never gave any type of sexual massages to Ghislaine Maxwell. Ms. Maxwell never asked her to get naked during a massage, never asked for any sexual contact with her, and she remained appropriately draped during any massages.  Ms. Maxwell was never present when she gave massages to Mr. Epstein. *Id.* at 95-97.

- Plaintiff appeared to Ms. Sjoberg to be some type of assistant who possibly also gave massages to Epstein.  *Id.* at 19.  She never seemed traumatized, she never reported to her any inappropriate requests or contact by Epstein or Maxwell, never said she had been sexually trafficked, she freely came and went.  *Id.* at 113-16.  In the only massage by Plaintiff of Epstein that Ms. Sjoberg observed, Plaintiff was fully clothed, on a beach, and it was non-sexual.  *Id.* at 27.  Ms. Sjoberg never saw Plaintiff in the presence of any famous people, apart from Prince Andrew and she did not observe anyone asking Plaintiff to do anything sexual, nor did Plaintiff report to her that anything sexual had occurred, even though Ms. Sjoberg inquired.  *Id.* at 85, 87, 113 & 120.  Plaintiff disappeared from the Epstein home about June 2001 when attempts to contact her led to a seemingly drugged-out boyfriend who could not explain her whereabouts.  *Id.* at 92.

- Despite hundreds of times in the Epstein home, Ms. Sjoberg only saw a few photos of adult women in topless poses in the bathroom of Epstein, there was no child pornography in the homes, and she does not recall any naked photos of Plaintiff.  *Id.* at 25, 29, 42, 103-106.

- Ms. Sjoberg observed no orgies or sexual contact occur in the open at Epstein's homes or on his planes.  *Id.* at 94, 102.

- Ms. Maxwell asked her if she knew any friends who might be interested in being masseuses, but the one she brought was an adult; Ms. Maxwell never asked for "underage" participants. *Id. at* 141, 152-53.

- Whatever sexual contact occurred between Ms. Sjoberg and Mr. Epstein was between "consenting adults," as she told the police in 2006, and she only was "expected" to have sexual intercourse in 2005, after she had worked for him for 4 years. *Id.* at 101, 147.

- Ms. Sjoberg respects Ms. Maxwell and is impressed by her talents. *Id.* at 55, 94-95, 97-98, 147 She have a lot of fun the last time they hung out in 2006. *Id.* at 98.

**Joe Recarey**, the lead investigator of Jeffrey Epstein from the Palm Beach County Police Department, testified at his deposition, that (in contrast to Plaintiff's claims):

- He and other investigators interviewed approximately 30-33 females in connection with the case and identified approximately 17 victims.  Pagliuca Decl., Ex. F at 179, 334.

- Ms. Maxwell was never a suspect in their investigation, was not a target of the grand jury investigation, nothing of Ms. Maxwell's was seized from the home during execution of the search warrant, and Ms. Maxwell was never observed at the Epstein home during the police surveillance.  *Id. at* 177, 211-12,214-16, 257.

- None of the victims identified Ms. Maxwell as having "recruited" them to come give massages to Epstein.  *Id.* at 180-82, 191-93, 195.

- None identified Ms. Maxwell as even being at the house when they were there, or paying them, or instructing them on what to wear or how to act, or ever of having spoken to them.  *Id.*

- None were ever sexually trafficked to other men; Jeffrey Epstein was the only person with whom they had any sexual contact. *Id.* at 300-301.

- None were ever asked to spend the night with Epstein, or travel with them.  *Id.*

- He did not observe any child pornography or any photos of naked women in the home when he went to help install cameras to catch a thief in Mr. Epstein's home in 2002 (who turned out to be butler Juan Alessi). *Id.* at 288-90.

**Juan Alessi**.  He served as the butler for approximately 10 year period at Mr. Epstein's home in Palm Beach.  He testified that:

- The majority of masseuses that came to the house were over the age of 20. Pagliuca Decl., Ex. G at 200.

- Mr. Epstein and Ms. Maxwell found the massage therapists from the high-end spas nearby, including the Breakers, Boca Raton and Mar-a-Lago, as Mr. Alessi confirmed when he called them at their jobs to arrange home visits. *Id. at* 187-88.

- The massage therapists were paid by check. *Id.* at 166.

- Plaintiff was working at one of these spas when she was hired, wearing an old-fashioned nurse's type uniform. *Id.* at 174.

- Contrary to Plaintiff's main story, she did not go upstairs with Mr. Epstein the first time she came over and he did not drive her home. *Id.* at 192.

**Tony Figueroa** – Plaintiff's live-in boyfriend during the time that she worked for Mr.

Epstein, testified that:

- He and Plaintiff used a substantial quantity of drugs during this time period which affected both of their memories. Pagliuca Decl., Ex. H at 129-32 (describing their daily use of "weed," their joint regular use of "Xanax," as well as use of cocaine, Xanax, Ecstasy and acid).

- Jeffrey Epstein is the one who called him and asked him to bring other females to give massages. *Id.* at 104-107. In particular, Mr. Figueroa *denied* that Ms. Maxwell ever asked him to bring a girl to Jeffrey:

  > Q: Did Jeffrey call you directly about getting more girls?
  > A: Yes.
  > Q: On the phone?
  > A: uh-huh (affirmative)
  > Q: What did he say?
  > A: He was just asking me if I had any other girls that wanted to come work…
  > Q: And did he pay – he paid you personally?
  > A: Yeah. He handed me $200 for every girl that I walked in that door, whether they did stuff with him or not.
  > Q: In cash?
  > A: Cash.
  > **Q: Did you ever get paid by Ms. Maxwell for that?**
  > **A: No.**
  > **Q: Did you ever bring a girl to Ms. Maxwell?**
  > **A: No.**
  > **Q: Did Ms. Maxwell ever call you and ask you to bring a girl to her?**
  > **A: No.**
  > **Q: Did Ms. Maxwell ever call you and ask you to bring a girl to Jeffrey?**

**A:  No.**

*Id. at* 106-07.

- He did not have any discussions with these females (who were adult) about what was entailed with the job other than massages.  *Id.* at 104-105.

- Later in his testimony, upon leading questions from Mr. Edwards, Mr. Figueroa committed a complete about-face:

  Q:  Would Ghislaine Maxwell call you?
  A:  I think she might have actually called me once or twice.  I'm not positive, but I'm pretty sure she did….
  Q:  …What did you say?  What did she say?
  A:     She would just ask me if I had anybody lined up, so…..for Jeffrey.

- Mr. Figueroa testified that he was arrested for grand theft the same night that he dropped Plaintiff off to go to Thailand, he served time, and only recently had his rights restored. *Id. at* 67-69.

**Rinaldo Rizzo.**  Mr. Rizzo was a butler for Mr. Glenn and Dr. Eva Dubin at their home in upstate New York.  In addition to his history of litigation against the Dubins and his admitted hope to receive compensation from his testimony, his deposition is so palpably incredible as to be potentially sanctionable.  ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████  Pagliuca Decl., Ex. I at 11.  In any event, none of Mr. Rizzo's testimony related to Ms. Maxwell's participation in massages, sex with underage minors, or sex with adults, and thus is further irrelevant to the issues presented by the Motion.

## <u>CONCLUSION</u>

Because Ms. Maxwell fully answered all questions within the Court's Order (and many that were not) at her continued deposition, she respectfully requests the Court deny Plaintiff's

Motion to Enforce the Court's Order and Direct Defendant to Answer Deposition Questions Filed Under Seal.  Further, because Plaintiff brought this Motion without a valid basis to assert that she refused to answer any question that was (a) within this Court's Order and (b) not already responded to either at her first deposition or during this deposition, Ms. Maxwell requests that the fees and costs associated with defending this Motion be imposed on Plaintiff, her counsel or both.

Respectfully submitted,

/s/ Jeffrey S. Pagliuca

Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:  303.831.7364
Fax:     303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on August 8, 2016, I electronically served *Response in Opposition to Plaintiff's Motion to Enforce the Court's Order and Direct Defendant to Answer Deposition Questions Filed Under Seal* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

J. Stanley Pottinger
49 Twin Lakes Rd.
South Salem, NY 10590
StanPottinger@aol.com

*/s/ Nicole Simmons*
Nicole Simmons

25