# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

VIRGINIA L. GIUFFRE,

      Plaintiff,

v.

GHISLAINE MAXWELL,

      Defendant.

**15-cv-07433-RWS**

-------------------------------------------------X


### Defendant's Motion to Compel Responses to
### <u>Defendant's Second Set of Discovery Requests to Plaintiff, and for Sanctions</u>


Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
East 10th Avenue
Denver, CO 80203
303.831.7364

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.   PLAINTIFF'S INTERROGATORY RESPONSES ARE DEFICIENT. ............................. 2

II.   PLAINTIFF'S ANSWERS TO THE REQUESTS FOR ADMISSION ARE DEFICIENT.
      .................................................................................................................................. 21

III.   PLAINTIFF'S RESPONSES TO REQUESTS FOR PRODUCTION ARE DEFICIENT. 25

CONCLUSION ..................................................................................................................... 35

CERTIFICATE OF SERVICE .................................................................................................. 37

# TABLE OF AUTHORITIES

**Cases**

*Bauman v. 2810026 Canada Ltd.*, No. 15-CV-374A(F), 2016 WL 402645, at \*1 (W.D.N.Y. Feb. 3, 2016) ........................................................................................................... 14

*Bruno v. CSX Transp., Inc.*, 262 F.R.D. 131, 133-34 (W.D.N.Y. 2009) ..................................... 15

*Pokigo v. Target Corporation*, 2014 WL 6885905, at \*\*2-3 (W.D.N.Y. Dec. 8, 2014) .............. 15

*Walls v. Paulson*, 250 F.R.D. 48 (D.D.C. 2008) .......................................................................... 33

**Rules**

Fed. R. Civ. P. 26(g)(1) .................................................................................................................. 34

Fed. R. Civ. P. 26(g)(3) .................................................................................................................. 34

Fed. R. Civ. P. 37(a)(5) .................................................................................................................. 34

Defendant Ghislaine Maxwell moves under Federal Rule of Civil Procedure 37(a)(3)(B) to compel Plaintiff Virginia Giuffre to provide responsive answers to Ms. Maxwell's Second Set of Discovery Requests, attached as Exhibit A to Declaration of Laura A. Menninger ("Menninger Decl.").

*Certificate of conferral.* Undersigned counsel certifies counsel for Ms. Maxwell has conferred with Plaintiff's counsel regarding the subject matter of this Motion. Based on the conferral, Plaintiff's counsel wrote a letter declining to supplement any of the responses to the Second Set of Discovery Requests.

## PRELIMINARY STATEMENT

Plaintiff has brought a lawsuit alleging Ms. Maxwell defamed her. The defamation consisted of Ms. Maxwell's defensive statements denying Plaintiff's repeated, false allegations that Ms. Maxwell had subjected plaintiff to "sex trafficking" while Plaintiff was 15 years old. Plaintiff alleged in her Rule 26(a)(1)(A)(iii) disclosures that she has suffered noneconomic injury of "not less than" $30 million, medical expenses of "not less than" $100,000, and lost earnings of "not less than" $5 million.[1] She also has requested punitive damages of $50 million.

Despite claiming defamation damages exceeding ***$80 million***, Plaintiff routinely has stonewalled our efforts to obtain basic information about the nature of the alleged defamation and the scope of her alleged damages. Plaintiff's frustration of our discovery efforts has impeded our ability to prepare a defense.

Illustrative is Interrogatory No. 6, propounded on Plaintiff in Ms. Maxwell's Second Set of Discovery Requests, which are at issue in this Motion. We are entitled to know each allegedly defamatory statement that is the subject of this lawsuit. Plaintiff and her counsel have alleged

---

[1] Seven months after claiming she had suffered $5 million in "past and future lost wages" and "past and future los[t] … earning capacity and actual earnings," Plaintiff on June 24, 2016, abruptly withdrew all claims for alleged lost wages, earning capacity and "actual earnings."

that Ms. Maxwell has published "numerous" false statements, yet Plaintiff stubbornly refuses to identify each of these allegedly false statements. Interrogatory No. 6 asked simply that for each allegedly false statement, Plaintiff "identify … the exact false statement."  True to form, Plaintiff identified only statements referenced in her Complaint and refused to provide any other "exact false statement[s]" allegedly published by Ms. Maxwell.

**ARGUMENT**

This Motion concerns improper objections and evasive and other improper responses to six interrogatories, eleven requests for admissions, and six requests for production of documents. *See* Menninger Decl., Ex. B (Plaintiff's Responses and Objections to Ms. Maxwell's Second Set of Discovery Requests).  The Court should compel Plaintiff to:

- submit responsive answers to the interrogatories, and identify what information, if any is being withheld on the basis of which objection;
- answer the requests for admissions in compliance with Rule 36(a)(4);
- for each objection to a request to produce, identify what documents are being withheld on the basis of which objection; and
- produce all documents that are the subject of requests for production at issue in this Motion.

We respectfully submit that Plaintiff's responses were not made in good faith and the objections were not interposed in good faith and, accordingly, the Court should award Ms. Maxwell reasonable attorney fees and costs incurred in bringing this Motion.

**I.  Plaintiff's interrogatory responses are deficient.**

**Interrogatory No. 5.** Identify each Communication that You or Your Attorneys have had with any author, reporter, correspondent, columnist, writer, commentator, investigative journalist, photojournalist, newspaper person, freelance reporter, stringer, or any other employee of any media organization or independent consultant to the same, including:

a. the date of any such Communication;

b. the form of any such Communication, whether oral or written and if written, the format of any such Communication;

c. the identities of all persons involved in such Communication, including the identity of the media organization with whom the agent is or was affiliated;

d. the article title, date of publication, and means of publication of any article, report, or re-printing of any such Communication made by You or Your Attorneys;

e. the amount of Income that You and/or Your Attorneys received in exchange for any such Communication;

f. the dates on which You and/or Your Attorneys received any such Income for any such Communication.

**Response**:

Ms. Giuffre objects to this interrogatory in that it violates Rule 33 as its subparts, in combination with the other interrogatories, exceed the allowable twenty-five interrogatories. Ms. Giuffre objects in that it seeks information protected by the attorney-client privilege, work product protections, and any other applicable privilege or protection as stated in the General Objections.

Ms. Giuffre further objects to this interrogatory on the grounds that it is overly broad and unduly burdensome as it is not limited in time, manner, or subject matter. The request is grossly over broad in that it does not require the communication to have *any connection* with Ms. Giuffre or this case whatsoever. Indeed, a response to this interrogatory would require each of Ms. Giuffre's attorneys to research and find any communication they *have ever had* with a journalist, for every year of their practice, regardless of what case was involved, and regardless of what year the communication was made. Ms. Giuffre's attorney's, collectively, have worked on hundreds (if not thousands) of matters, and collectively have well over 100 years of combined practice experience. Accordingly, a request that each of these attorneys list *all communications with the media* is facially overbroad.

Additionally, Ms. Giuffre objects to this Interrogatory because a response would cause Ms. Giuffre the incredible and undue burden of having to catalogue literally hundreds of communications that she has already produced in this case.

Moreover, Ms. Giuffre objects because this interrogatory calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence. Communications with the media regarding cases that bear no relation to the subject matter of this case, from decades in the past, are facially invalid and not calculated to lead to the discovery of admissible evidence.

Ms. Giuffre additionally objects to the extent that this interrogatory seeks the communications of her attorneys, any author, reporter, correspondent, columnist, writer, commentator, investigative journalist, photojournalist, newspaper person, freelance reporter, stringer, or any other employee of any media organization or

3

independent consultant as such interrogatory is overly broad and unduly burdensome. Furthermore, Ms. Giuffre is not obligated to produce anything currently in the possession of Defendant Maxwell or her attorneys.

Notwithstanding such objections, Ms. Giuffre has already produced her responsive communications, which are found in documents Bates labelled GIUFFRE000001 to GIUFFRE007566.

**Objection 1.**[2]

***The interrogatory does not exceed the limit.*** Plaintiff alleged Interrogatory No. 5 exceeds the 25-interrogatory limit. Plaintiff is wrong. She failed to take into account that the Second Set of Discovery Requests merely repeated five (5) interrogatories that were propounded in the First Set of Discovery Requests.  Defendant objected in her Responses to the First Set on the ground the interrogatories were propounded prematurely.  Plaintiff double-counted those interrogatories.

Second, Plaintiff's argument is wrong because she counted every subpart as a separate interrogatory, regardless of whether all the subparts are related by subject matter. That is an improper way to count interrogatories. Rule 33(a)(1) itself provides that for a subpart to count as a separate interrogatory, it must be "discrete." Among the courts that have dealt with this issue, "there has developed a common denominator on how to weigh an interrogatory's subparts as independent and discrete." *Bartnick v. CSX Transp.*, No. 1:11-CV-1120 GLS/TRF, 2012 WL 1565057, at *2 (N.D.N.Y. Apr. 27, 2012).  An interrogatory's subparts are to be counted as separate and discrete subparts only "if they are not logically or factually subsumed within and necessarily related to the primary question," *id.* (citing cases).

Further, Local Rule 26.3(c) provides a uniform meaning of "identify" with respect to persons and documents and requiring the "type," date, addressee and recipient of documents or, alternatively, production of same and as to persons, the name, addresses and last known place of

---

[2]Many of Plaintiff's objections were repeated for numerous interrogatory responses. To avoid repetition in this Motion, we number each discrete objection serially.

employment.  Here, each of the interrogatories—even those like No. 5 with subparts—propounded by Ms. Maxwell constitute a single interrogatory under Rule 33(a)(1).

**Objection 2.**

***Plaintiff's unreasonable reading of the interrogatory.*** Plaintiff objected that the interrogatory is not limited in "time, manner or subject matter."  The objection is not well taken. Local Rule 26.4(b) provides in part that "[d]iscovery requests shall be read *reasonably*" (emphasis supplied). So read, this interrogatory is limited to communications Plaintiff and her attorneys have had with media representatives concerning the subject matter of this lawsuit. Notably, setting aside Plaintiff's unreasonable interpretation of the interrogatory, Plaintiff provided no responsive answer whatsoever.

Plaintiff also argued that with respect to her attorneys the interrogatory required the attorneys to disclose their communications with media representatives "for every year of their practice, regardless of what case was involved, and regardless of what year the communication was made." That is an unreasonable—absurd—interpretation of the interrogatory.

**Objection 3.**

***There is no undue burden.*** Plaintiff objected that the interrogatory imposes upon her an "undue burden" because she would have to "catalogue literally hundreds of communications that she has already produced in this case." So long as Plaintiff admitted—as she does—that her and her attorneys' communications with media representatives regarding the subject matter of this lawsuit are relevant, she cannot complain of an "undue burden" because she and her attorneys have communicated "hundreds" of times with media representatives. Such an unreasonable view of the law would permit a party to resist providing relevant information by claiming she has too much relevant information.

**Objection 4.**

***The requested information is relevant.*** Piggybacking on Objection 2, Plaintiff objected that "Communications with the media regarding cases that *bear no relation to the subject matter of this case*, from decades in the past, are … not calculated to lead to the discovery of admissible evidence" (emphasis supplied). As already discussed, the interrogatory requested information about Plaintiff's and her attorneys' communications with media representatives concerning the subject matter of this action.  Plaintiff and her attorney's communications with the media are directly relevant to numerous defenses available to Ms. Maxwell, including without limitation, her self-defense privilege, whether Plaintiff is a limited public figure, Ms. Maxwell's right to fair comment, that Ms. Maxwell's comments did not affect Plaintiff's reputation, Plaintiff's contributory negligence, Plaintiff's failure to mitigate, and Plaintiff's damages are the proximate result of her own conduct or the conduct of others.

**Objection 5.**

***No privilege applies.*** Plaintiff has interposed the attorney-client privilege and the work product doctrine.[3]  It is inconceivable that Plaintiff or her attorneys have a good faith basis to interpose the attorney-client privilege or work product doctrine over their communications with media representatives. In any event, they have failed to explain any factual basis for interposing the privilege or doctrine.

---

[3]Plaintiff also attempted to interpose "any" objection listed in her "general objections." In her "general objections" Plaintiff asserted—generally and redundantly—"any applicable privilege, including but not limited to, attorney client privilege, work product privilege, joint defense privilege, public interest privilege, and any other applicable privilege [sic]." Such a broad, general and generic assertion of privilege is ineffective to preserve any privilege, even if one existed. *P. & B. Marina, Ltd. P'ship v. Logrande*, 136 F.R.D. 50, 54 (E.D.N.Y. 1991) ("A general allegation or blanket assertion that the privilege should apply is insufficient to warrant protection."), *aff'd sub nom. P&B Marina Ltd. v. LoGrande*, 983 F.2d 1047 (2d Cir. 1992).

**Plaintiff's deficient answer.** "Notwithstanding" her objections, Plaintiff "answered" by referring the defense to 7,566 pages of documents ("Ms. Giuffre has already produced her responsive communications, which are found in documents Bates labelled GIUFFRE000001 to GIUFFRE007566.").  The vast majority of these documents do not contain any communications between Plaintiff and her lawyers, on the one hand, and media representatives, on the other. The answer is improper. *See, e.g.*, *In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2327, 2013 WL 8744561, at *3 (S.D.W. Va. July 26, 2013) (finding interrogatory responses insufficient where they instructed plaintiffs to search mass of documents for requested information); *Nickerman v. Remco Hydraulics, Inc.*, No. C 06-2555SI, 2007 WL 3407437, at *3 (N.D. Cal. Nov. 13, 2007) ("Despite repeated admonitions against doing so, plaintiffs continue to provide general and vague responses and to direct defendants to masses of documents…. Neither defendants nor the Court should be expected to comb through literally thousands of pages of documents searching for documents that might support plaintiffs' IIED claims.").

---

**Interrogatory No. 6.** Identify any "false statements" attributed to Ghislaine Maxwell which were "published globally, including within the Southern District of New York" as You contend in paragraph 9 of Count 1 of Your Complaint, including:

> a. the exact false statement;

> b. the date of its publication;

> c. the publishing entity and title of any publication containing the purportedly false statement;

> d. the URL or internet address for any internet version of such publication; and

> e. the nature of the publication, whether in print, internet, broadcast or some other form of media.

**Response:**

Ms. Giuffre objects because the information interrogatory above is in the possession of Defendant who has failed to comply with her production obligations

in this matter, and has failed to comply with her production obligations with this very subject matter. See Document Request No. 17 from Ms. Giuffre's Second Request for Production of Documents to Defendant Ghislaine Maxwell.1 Maxwell has not produced all "URL or Internet addresses for any internet version of such publication" that she directed her agent, Ross Gow, to send.

Ms. Giuffre further objects because the information requested above is in the possession of Defendant's agent, who caused the false statements to be issued to various media outlets. Ms. Giuffre has not had the opportunity to depose Maxwell's agent Ross Gow; therefore, this answer remains incomplete. Consequently, Ms. Giuffre reserves the right to modify and/or supplement her responses, as information is largely in the possession of the Defendant and her agent.

Ms. Giuffre objects to this interrogatory in that it violates Rule 33 as its subparts, in combination with the other interrogatories, exceed the allowable twenty-five interrogatories. Ms. Giuffre objects to this request because it is in the public domain. Ms. Giuffre also objects in that it seeks information protected by the attorney-client/work product privilege, and any other applicable privilege stated in the General Objections.

Notwithstanding such objections, Ms. Giuffre has already produced her responsive communications, which are found in documents Bates labelled GIUFFRE000001 to GIUFFRE007566.

**Objection 6.**

***Plaintiff cannot answer by stating that Ms. Maxwell already has the information.***

Plaintiff "object[ed]" to the interrogatory because the answer to the interrogatory, she alleged, "is in the possession of [Ms. Maxwell]" and her agent, or "is in the public domain." Such an objection is improper:

> [T]o the extent defendant objects that certain requests … seek information equally available to plaintiff, "courts have unambiguously stated that this exact objection is insufficient to resist a discovery request." *St. Paul Reinsurance Co., Ltd., CNA v. Commercial Fin. Corp.,* 198 F.R.D. 508, 514 (N.D. Iowa 2000); *see also City Consumer Servs., Inc. v. Horne,* 100 F.R.D. 740, 747 (D. Utah 1983) ("It is 'not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record.'" (citation omitted)); *United States v. 58.16 Acres of Land,* 66 F.R.D. 570, 573 (E.D. Ill.1975) ("Generally, an interrogatory is proper although the information sought is equally available to both parties."). Thus, plaintiff's motion to compel a response to Interrogatory no. 13 should be granted.

*National Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009).

**Subpart objection.** Plaintiff argued Ms. Maxwell's interrogatories exceed the limit. This already is addressed above in the discussion of Objection 1.

**Objection 7.**

***No privilege applies.*** Plaintiff objected that the information requested in the interrogatory is "protected by the attorney-client/work product privilege, and any other applicable privilege." The assertion of privilege is frivolous. The interrogatory requested the false statements that Plaintiff attributes to Ms. Maxwell and that were published anywhere in the world. These statements are the very subject of this lawsuit. No such statement is subject to a privilege belonging to Plaintiff.

**Plaintiff's deficient answer.** "Notwithstanding" her objections, Plaintiff answered by referring the defense to the documents she previously had produced "Bates labelled GIUFFRE000001 to GIUFFRE007566." As discussed above, it is improper to answer an interrogatory by referring to an undifferentiated mass of documents.

Plaintiff also "supplement[ed]" her answer with a "list of publications." This answer is non-responsive. The interrogatory required Plaintiff, among other things, to provide each "exact false statement" that she attributes to Ms. Maxwell and that was published anywhere in the world. This entire case centers on Plaintiff's claim that Ms. Maxwell published false statements about Plaintiff and now Plaintiff refuses to identify those statements.  The question is not whether Ms. Maxwell knows what statements have been made in the press; the question is which statements does Plaintiff contend are false.

**Interrogatory No. 7.** State whether You believe that You have ever been defamed by anyone other than Ghislaine Maxwell. If so, as to each alleged act of Defamation, state

> a. the exact false statement;

> b. the date of its publication;

> c. the publishing entity and title of any publication containing the purportedly false statement;

> d. the URL or internet address for any internet version of such publication; and

> e. the nature of the publication, whether in print, internet, broadcast or some other form of media.

**Response:**

Ms. Giuffre objects to this interrogatory in that it violates Rule 33 as its subparts, in combination with the other interrogatories, exceed the allowable twenty-five interrogatories. Ms. Giuffre also objects in that it seeks information protected by the attorney-client/work product privilege, and any other applicable privilege stated in the General Objections.

Without waiving the aforementioned objections, Alan Dershowitz published statements about Ms. Giuffre in January 2015 and thereafter that remain in the public realm. Ms. Giuffre does not have knowledge as to every time and place that she was defamed by Dershowitz, and she is not required to provide such an exhaustive list as all relevant instances of defamation are available through public sources, and identification of the numerous publically made statements would be unduly burdensome. Furthermore, upon information and belief, all defamatory statements made towards Ms. Giuffre by Dershowitz are within the knowledge and possession of Maxwell and her attorneys or can be easily obtained by contacting Dershowitz.

**Subpart objection.** This is addressed above in the discussion of Objection 1.

**Privilege assertion.** This is addressed above in the discussion of Objection 7. For the same reasons discussed there, this interrogatory does not request any privileged information. It is inconceivable that a statement about Plaintiff that allegedly is false and published would be protected from discovery by a privilege held by Plaintiff.

**Plaintiff's deficient answer.** "Notwithstanding" her objections, Plaintiff purported to answer the interrogatory. The answer is woefully deficient. She answered that she had been

defamed by Alan Dershowitz, but she failed to provide any information about the allegedly defamatory statements made by Mr. Dershowitz. For example, she failed to disclose "[t]he exact false statement[s]" made by Mr. Dershowitz, the date of the publication, the publishing entity, and the other information required in the interrogatory.

As justification for her failure to answer the interrogatory fully, Plaintiff argued she "does not have knowledge as to every time and place that she was defamed by Dershowitz." That argument is meritless. This interrogatory required Plaintiff to disclose *her* knowledge as to each of the interrogatory's subparts. She improperly failed to disclose this information.

Plaintiff argued that "identification of the numerous publically [sic] made statements would be unduly burdensome." She also argued that Mr. Dershowitz's defamatory statements "are within the knowledge and possession of [Ms. Maxwell] and her attorneys or can be easily obtained by contacting [Mr. Dershowitz]." Neither was a responsive answer. To the extent they were offered as objections, they are meritless. *See National Acad. of Recording Arts & Scis.*, 256 F.R.D. at 682 (cited in discussion of Objection 5).

---

**Interrogatory No. 8.** Identify the individuals referenced in Your pleadings filed in the U.S. District Court for the Southern District of Florida, *Jane Doe 1 and Jane Doe 2 v. United States of America*, 08-cv-80736-KAM, as the "high-profile non-party individuals" to whom Mr. Jeffrey Epstein sexually trafficked You, "including numerous prominent American politicians, powerful business executives, foreign presidents, a well-known Prime Minister, and other world leaders," including as to each episode of alleged sexual trafficking:

    a. the date of any such sexual trafficking;

    b. the location of any such sexual trafficking;

    c. any witnesses to any such sexual trafficking;

    d. any Income You received in exchange for such sexual trafficking; and

    e. any Documents You have to support or corroborate Your claim of such sexual trafficking.

**Response:**

Ms. Giuffre objects to this interrogatory in that it violates Rule 33 as its subparts, in combination with the other interrogatories, exceed the allowable twenty-five interrogatories. Ms. Giuffre also objects in that it seeks information protected by the attorney-client/work product privilege, and any other applicable privilege stated in the General Objections.

Ms. Giuffre refers to the list of witnesses identified in her Revised Rule 26 Disclosures. Also, notwithstanding previously-noted objections, Ms. Giuffre testified in *Edwards v. Cassell*, Broward County Case Number CACE 15-000072 on January 16, 2016, regarding the subject matter requested. *See* GIUFFRE005094- GIUFFRE007566. Ms. Giuffre additionally testified regarding the subject matter requested in this interrogatory on in the above-captioned case in her deposition on May 3, 2016. Additionally, Ms. Giuffre was trafficked to other individuals whose name she never learned or whose names she does not remember. Identification of any other individuals would be irrelevant and unduly burdensome. Moreover, as specifically provided in Rule 33.3(b), "[d]uring discovery, interrogatories other than those seeking information described in paragraph (a) [] may only be served (1) if they are a more practical method of obtaining the information sought than a request for production or a deposition or (2) if ordered by the Court." Because Ms. Giuffre has provided an answer to this interrogatory in her deposition, which was a more practical method of obtaining the information sought, this interrogatory is improper under the Local Rules as well as wholly duplicative.

**Subpart objection.** This is addressed above in the discussion of Objection 1.

**Privilege assertion.** This is addressed above in the discussion of Objection 6. It is inconceivable that any privilege applies to the identities of individuals to whom Plaintiff alleges she was sexually trafficked. This is a frivolous assertion of privilege.

**Plaintiff's deficient answer.** Instead of identifying individuals as required by the interrogatory, Plaintiff instead "refer[red]" to her Rule 26 disclosures, her testimony in a Florida state case, and her earlier deposition in this case. This is non-responsive and evasive, in violation of Rule 37(a)(3). *See, e.g., Public Storage v. Sprint Corp.*, No. CV 14-2594-GW PLAX, 2015 WL 1057923, at *17 (C.D. Cal. Mar. 9, 2015) ("Plaintiffs may not answer the interrogatory by generally referring Defendant to the pleadings filed in this case, documents produced, opt-in questionnaires, depositions, or declarations…. [A] responding party may not answer an interrogatory by directing the party propounding the interrogatory to find answers from

previously produced documents or identified witness lists."), *appeal dismissed* (Mar. 30, 2016);

*Smith v. Trawler Capt. Alfred, Inc.*, No. 2:12-CV-2866-DCN, 2014 WL 1912067, at *3 (D.S.C.

May 13, 2014) ("Smith's cursory references to the pleadings, his deposition, and his medical

records are not responsive answers to defendants' interrogatories."); *DirectTV, Inc. v. Puccinelli*,

224 F.R.D. 677, 680 (D. Kan. 2004) ("defendant may not direct plaintiffs to find answers from

previously produced documents or identified witness lists") (internal quotations omitted).

**Interrogatory No. 13.** Identify any Health Care Provider from whom You received any treatment for any physical, mental or emotional condition, including addiction to alcohol, prescription or illegal drugs, that You suffered from prior to the Alleged Defamation by Ghislaine Maxwell, including:

a. the Health Care Provider's name, address, and telephone number;

b. the type of consultation, examination, or treatment provided;

c. the dates You received consultation, examination, or treatment;

d. whether such treatment was on an in-patient or out-patient basis;

e. the medical expenses to date;

f. whether health insurance or some other person or organization or entity has paid for the medical expenses; and

g. For each such Health Care Provider, please execute the medical and mental health records release attached hereto as Exhibit A.

**Response:**

Ms. Giuffre objects to this interrogatory because it violates this Court's Order. The Court has excluded the production of medical records from prior to 1999, stating, "the damage issue relates, in my view, solely to the defamation." (April 21, 2016, Hearing Transcript at 20:23-24). This holding applies to pre-1999 medical records. As this interrogatory is not limited to the time period ordered by this Court, Ms. Giuffre objects.

Ms. Giuffre objects to this interrogatory in that it is overbroad and not limited in scope to the medical information relating to the abuse she suffered from Defendant and Jeffrey Epstein.

Ms. Giuffre objects because Rule 26 does not allow discovery that is so burdensome as to require a Herculean effort by an adult to track down every possible prescription ever written for Ms. Giuffre, or every physician who ever treated Ms. Giuffre, even as a small child. Such a request is not only impractical

13

and unduly burdensome, but likely impossible. Accordingly, such an interrogatory is merely for the purpose of imposing a burden on Ms. Giuffre and her attorneys, not to mention the purposes of harassment.

Pursuant to the Rules, if requested documents are not yielded in a "reasonable inquiry," Ms. Giuffre is not obligated to expend all of her time and resources on a quest to gather medical files from her birth to the present to find any prescriptions ever written for her for anything at all.[4]  Ms. Giuffre is not certain as to her the sum of her medical expenses from 1999 to the present, and therefore is unable to answer that subpart. Ms. Giuffre is not aware of what health insurance carrier or other organization paid for her historical medical expenses unless it is identified on the records produced to the Defendant.

Finally, Ms. Giuffre objects in that it seeks information protected by the doctor-patient privilege, and any other applicable privilege stated in the General Objections. Ms. Giuffre further objects to this interrogatory in that it violates Rule 33 as its subparts, in combination with the other interrogatories, exceed the allowable twenty-five interrogatories. Ms. Giuffre further objects to this request in that it is overbroad and seeks confidential medical information of a sex abuse victim and is not limited in scope to the issues in this case.

Without waiving such objections, Ms. Giuffre has already produced her responsive documents Bates labelled GIUFFRE000001 to GIUFFRE007566, and supplements such documents as follows….[5]

**Objection 8.**

***Pre-1999 medical records are discoverable.*** Plaintiff had requested damages allegedly suffered from being the "victim of sex trafficking" dating back to 1999. On April 21, 2016, the Court ruled that Plaintiff's damages are limited to harm from the alleged defamation. Regarding Ms. Maxwell's request for records pre-dating 1999, the Court said: "As for the pre-'99 medical records, based on where we are at the moment, I do not believe that those are relevant … [b]ecause the damage issue relates … solely to the defamation." Tr. 20:21-24 (Apr. 21, 2016).

Plaintiff objected to this interrogatory on the ground it requested pre-1999 medical information in "violat[ion]" of the Court's ruling. The objection should be overruled. The issue

---

[4]Plaintiff's voluminous arguments and argumentative citations to case law—inserted into her multi-page "objections"—are omitted in this Motion.

[5]Immediately following this paragraph was a tabular chart listing names of healthcare providers, the healthcare provided, Plaintiff's counsel's efforts undertaken to obtain records, and documents produced to the defense. On July 29, 2016, Plaintiff supplemented the chart.  The supplementation did not cure the deficiencies.

before the court in April concerned discovery of Plaintiff's medical records because those records bore on her claim she had suffered "sex trafficking" damages. Interrogatory No. 13 does not seek medical information for that purpose.

Plaintiff has alleged she has suffered more than $30 million in noneconomic damages from the allege defamation; she intends to request an additional $50 million in punitive damages related at least in part on the alleged conduct that caused the noneconomic damages. The defense intends to show that Plaintiff for financial and other improper reasons manufactured her allegations of "sex trafficking" and created from whole cloth her alleged $30 million in noneconomic damages from "defamation." Some of the most relevant and material evidence concerns pre-1999 medical records and information, which contradict some of Plaintiff's sworn testimony about the alleged "sex trafficking." For example, Plaintiff has testified Mr. Epstein and Ms. Maxwell subjected her to sex trafficking in 1998. Yet, in 1998 Plaintiff was an inpatient resident at a drug rehabilitation facility. As another example, Plaintiff has alleged that Ms. Maxwell's denial in 2015 of Plaintiff's allegations of sex trafficking caused her to ingest ever greater quantities of anti-anxiety and other prescription medications, for which Plaintiff is seeking noneconomic damages. Yet, Plaintiff's pre-1999 medical records will establish that Plaintiff was a longtime drug addict—addicted to prescription and other drugs.

Additionally, based on Plaintiff's claims of having suffered $30 million in mental pain and anguish, among other noneconomic damages, Ms. Maxwell is entitled to pre-1999 medical records to establish the mental and emotional baseline for Plaintiff and to determine her preexisting mental and emotional condition, since under no circumstances is Ms. Maxwell liable for Plaintiff's preexisting mental and emotional condition. *See, e.g.*, *Bauman v. 2810026 Canada Ltd.*, No. 15-CV-374A(F), 2016 WL 402645, at *1 (W.D.N.Y. Feb. 3, 2016); *Pokigo v. Target*

*Corp.*, 2014 WL 6885905, at **2-3 (W.D.N.Y. Dec. 8, 2014) (plaintiff's preexisting mental and physical conditions relevant to plaintiff's damage claim); *Bruno v. CSX Transp., Inc.*, 262 F.R.D. 131, 133-34 (W.D.N.Y. 2009) (granting discovery of plaintiff's medical records relating to plaintiff's substance abuse and mental health treatment where disclosure was likely to reveal evidence of alternative or intervening causes for the damages claimed by plaintiff).

**Objection 9.**

***The interrogatory is not overbroad.*** The interrogatory required Plaintiff to identify healthcare providers who treated her for specified conditions, e.g., mental conditions and addiction, "prior to" any alleged defamation of her by Ms. Maxwell. Plaintiff's "overbreadth" objection argued that the interrogatory was not "limited in scope to the medical information relating to the abuse she suffered from Defendant and Jeffrey Epstein." The premise is wrong. Plaintiff, who is suing for more than $80 million in damages and who claims to have suffered more than $30 million in noneconomic damages, including "pain and suffering," cannot be heard to complain about an interrogatory requesting the identities of healthcare providers who treated her before the alleged defamation-related injuries. Plaintiff's pre-defamation physical and mental condition is the baseline for her claim for damages and is therefore highly relevant. *See, e.g.*, This Mot., at 15-16 (citing cases).

**The interrogatory is not unduly burdensome.** We incorporate here the discussion above on Objection 3, and supplement as follows. Plaintiff implicitly concedes that her physical and mental condition before the alleged defamation is relevant to this lawsuit. Her complaint about burdensomeness suggests only that her "pre-defamation" physical and mental condition was so complex or required so much medical attention that it would be unduly burdensome for her to "track down" all her medical providers. The simple answer is twofold. One, relevant and

discoverable information does not become immune from discovery or "unduly burdensome" because there is a lot of it. Two, when a plaintiff alleges, as here, that she has suffered more than $30 million in physical and mental injury from an allegedly defamatory denial of her claim of sex trafficking, the defense is entitled to know her physical and mental condition before and after the alleged defamation.

Relatedly, Plaintiff argued that if she has made a "reasonable inquiry," she cannot be required to "expend all of her time and resources on a quest to gather medical files." To begin with, the interrogatory does not require Plaintiff to "gather medical files." Additionally, the interrogatory does not require Plaintiff to expend "all of her time and resources" to gather documents, and Plaintiff has not done so. Finally, although Plaintiff has provided the identity of some healthcare providers, it is far from clear she has made a "reasonable inquiry" required by the interrogatory.

**No privilege applies.** The assertion of the doctor-patient privilege is frivolous. The identities of Plaintiff's healthcare providers are not subject to privilege. Regardless, Plaintiff has placed her physical and mental condition and the identities of those who treated her condition in issue by alleging $50 million worth of physical and mental injuries.

**Subpart objection.** This is addressed above in the discussion of Objection 1.

**Plaintiff's deficient answer.** "Without waiving [her] objections," Plaintiff answered she "has already produced her responsive documents" and referred the defense to 7,566 pages of undifferentiated documents. The answer is non-responsive. Interrogatory 13 is not a request for production of documents. Additionally, as discussed above at page 7 of this Motion, it is improper for a party to answer an interrogatory by reference to an undifferentiated mass of documents.

By way of example only, Plaintiff's mother, father, boyfriend, and ex-fiance all have testified that in 1998 and 1999, ███████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████.

Further, Plaintiff has claimed as losses "medical expenses of 'not less than' $100,000," yet her interrogatory response states simply that she "is not certain as to her the sum of her medical expenses from 1999 to the present, and therefore is unable to answer that subpart. Ms. Giuffre is not aware of what health insurance carrier or other organization paid for her historical medical expenses." This is non-responsive. It is insufficient to claim that one is "not certain" of the answers as to medical expenses when she is seeking 'not less than' $100,000 in damages from that category.

**Interrogatory No. 14.** Identify any Person who You believe subjected You to, or with whom You engaged in, any illegal or inappropriate sexual contact, conduct or assault prior to June 1999, including the names of the individuals involved, the dates of any such illegal or inappropriate sexual contact, conduct or assault, whether Income was received by You or anyone else concerning such event, whether a police report was ever filed concerning such event and the outcome of any such case, as well as the address and location of any such event.

**Response:**

Ms. Giuffre objects to this request in that it is overbroad and invades Ms. Giuffre right to privacy (including her constitutionally-protected right of privacy) by seeking confidential information relating to the sexual abuse of a minor sex abuse victim. Ms. Giuffre objects to this request in that it seeks sexual assault information for a period prior to the sexual abuse at issue in this matter, and for a period when she was a minor child. The Court has excluded the production of medical records from prior to 1999, stating, "the damage issue relates, in my view, solely to the defamation." (April 21, 2016, Hearing Transcript at 20:23-24). This holding applies equally to pre-1999 sexual assault....

Additionally, it has become increasingly clear that Defendant's counsel is seeking these documents for the improper purpose of harassment ....

Ms. Giuffre also objects to this request because such events would have taken place in Florida, and information relating to those events is protected from

disclosure by law. Florida statutes protect "[a]ny information in a videotaped statement of a minor who is alleged to be or who is a victim of sexual battery . . . which reveals that minor's identity." Fla. Stat. § 119.071. Additionally, Fla. Stat. 985.036 protects records where a juvenile is a victim of a crime. Further, Section 794.026, Fla. Stat., creates a civil right of action against an individual who communicates to others, identifying information concerning the victim of a sexual offense. Additionally, Second, Fla. Stat. § 985.04 and Fla. Stat. § 985.054 make juvenile law enforcement records confidential from members of the public, and states that information obtained by a law enforcement agent participating in the assessment of a juvenile is confidential. Finally, certain of the police reports implicate Ms. Giuffre's involvement with the Florida Department of Children and Families, see e.g., GM_00750, and if such reports are part of the State's Department of Children and Families' records, they are confidential pursuant to Fla. Stat. § 39.202(6). Accordingly, Ms. Giuffre objects to this request ….

Ms. Giuffre additionally objects to this request in that it is sought solely to harass, and intimidate Ms. Giuffre who is a victim of sexual abuse by the Defendant. Ms. Giuffre objects on the basis that Defendant is not entitled to a full-scale production of everything that has happened throughout the entire course of her life time [sic], particularly the time sought in this request which predates Defendant's meeting and abuse of Ms. Giuffre….

Furthermore, discovery concerning Ms. Giuffre's prior sexual assault is not relevant to the claim at issue in this case, the defenses at issue, or the damages claimed, and therefore well outside the scope of discovery permitted by Fed. R. Civ. P. 26…. Giving testimony on such irrelevant, but painful, topics would be extraordinarily embarrassing, oppressive, and traumatic for Ms. Giuffre, and it is wholly irrelevant to any party's claim or defense. Accordingly, such discovery is not sought in good faith.

This request is particularly improper as it cannot conceivably lead to admissible evidence….

Ms. Giuffre objects to this interrogatory in that it violates Rule 33 as it, in combination with the other interrogatories, exceed the allowable twenty-five interrogatories. Ms. Giuffre objects in that it seeks information protected by the attorney-client/work product privilege, and any other applicable privilege stated in the General Objections.

Additionally, to the extent that it is available to Ms. Giuffre, all of this information is already in the possession of Maxwell as she obtained and produced police reports regarding Ms. Giuffre, which Ms. Giuffre did not have in her possession. Ms. Giuffre was also questioned for seven hours in her May 3, 2016, deposition by Defendant's attorney….

**Objection 10.**

19

*Plaintiff has no valid "privacy" objection.* This interrogatory requested the identity of individuals who Plaintiff believes "subjected [her] to, or with whom [she] engaged in, any illegal or inappropriate sexual contact, conduct or assault prior to June 1999," and basic information relating to such improper actions, *e.g.,* date, whether a police report was filed. None of this illegal or inappropriate sexual contact, conduct or assault is within the right to privacy. To the extent any right of privacy is applicable, the Court's Protective Order affords Plaintiff all the privacy to which she is entited.

**Objection 11.**

*There is no "harassment."* Federal Rule of Evidence 412, commonly referred to as the rape-shield law, does not apply in a defamation action such as this where the evidence would be offered to show that the alleged defamatory statements are true or did not damage plaintiff's reputation. *See* Advisory Committee Notes, 1994 Amendments, Federal Rule of Evidence 412 ("in a defamation action involving statements concerning sexual misconduct in which the evidence is offered to show that the alleged defamatory statements were true or did not damage the plaintiff's reputation, neither Rule 404 nor this rule will operate to bar the evidence"). Certainly, if evidence of prior alleged sexual assaults (whether unfounded or not) are admissible in this action, *ipso facto* they are discoverable under the standards of Rule 26 previously articulated.

Plaintiff has alleged Ms. Maxwell's denial of Plaintiff's allegations of sex trafficking caused her to suffer in excess of $30 million in compensatory damages. There is an abundance of evidence suggesting that well before she met Ms. Maxwell, Plaintiff had engaged in illegal sex activities or falsely claimed she was the victim of illegal sex activities. Information relating to

this subject is hardly harassing. To the contrary, it constitutes evidence relevant to the defense of this action.

**Objection 12.**

*No law bars a responsive answer to this interrogatory.* Plaintiff argued that Florida laws bar the interrogatory and relieve her of the obligation to provide a responsive answer. This is a frivolous argument. The Florida laws prohibit Florida agencies from disclosing certain information about sexual assault victims. Plaintiff is not a state agency. None of the laws is relevant to this action, where a defamation plaintiff claiming to be the victim of sexual trafficking sues a defendant for reputational injury and is required in discovery to provide information about illegal sex activities.

**Subpart objection.** This is addressed above in the discussion of Objection 1.

**No privilege applies.** The discussion above relating to Objection 6 applies here. None of Plaintiff's illegal sex activities, whether she was a willing participant or a victim, is cloaked with any privilege.

**Plaintiff's deficient answer.** Plaintiff suggested she is not required to answer because the requested information "is already in the possession of [Ms. Maxwell]." As discussed on page 8 of this Motion, a party may not resist a discovery request by asserting that the party seeking discovery "already is in possession" of the requested information.

**II.   Plaintiff's answers to the requests for admission are deficient.**

Plaintiff's responses to the following requests for admissions are deficient:

**RFA No. 1.** Admit that you were not 15 years old when you first met Ghislaine Maxwell.

**Response**:

Denied in part. At the time Ms. Giuffre made the statement, many years after the events occurred, she firmly believed she was 15 years old when she was

recruited away from her job at Mar-a-Lago by Ghislaine Maxwell. She later obtained some records from Mar-a-Lago which indicated that she was employed there during the year 2000. From January, 2000 through August 9, 2000, she was 16 years old; from August 9, 2000 through December 2000 she was 17 years old. While she now knows, based on this discovery, that she was not 15 years old, she now has conclusive proof that she was an underage minor when Ghislaine Maxwell approached her, recruited her, introduced her to Jeffrey Epstein, and sexually trafficked her as an underage minor.

**RFA No. 2.** Admit that you were not 15 years old when you first met Jeffrey Epstein.

**Response**:

Denied in part. At the time Ms. Giuffre made the statement, many years after the events occurred, she firmly believed she was 15 years old when she was recruited away from her job at Mar-a-Lago by Ghislaine Maxwell. She later obtained some records from Mar-a-Lago which indicated that she was employed there during the year 2000. From January, 2000 through August 9, 2000, she was 16 years old; from august 9, 2000 through December 2000 she was 17 years old. While she now knows, based on this discovery, that she was not 15 years old, she now has conclusive proof that she was an underage minor when Ghislaine Maxwell approached her, recruited her, introduced her to Jeffrey Epstein, and sexually trafficked her as an underage minor.

**RFA No. 3.** Admit that you were not 15 years old at the time you claim you were sexually trafficked by Jeffrey Epstein.

**Response**:

Denied in part. At the time Ms. Giuffre made the statement, many years after the events occurred, she firmly believed she was 15 years old when she was recruited away from her job at Mar-a-Lago by Ghislaine Maxwell. She later obtained some records from Mar-a-Lago which indicated that she was employed there during the year 2000. From January, 2000 through August 9, 2000, she was 16 years old; from August 9, 2000 through December 2000 she was 17 years old. While she now knows, based on this discovery, that she was not 15 years old, she now has conclusive proof that she was an underage minor when Ghislaine Maxwell approached her, recruited her, introduced her to Jeffrey Epstein, and sexually trafficked her as an underage minor.

**RFA No. 4.** Admit that Ghislaine Maxwell did not celebrate your 16th birthday with You.

**Response**:

Denied in part. At the time Ms. Giuffre made the statement, many years after the events occurred, she firmly believed she was 15 years old when she was recruited away from her job at Mar-a-Lago by Ghislaine Maxwell. She later obtained some records from Mar-a-Lago which indicated that she was employed

there during the year 2000. From January, 2000 through August 9, 2000, she was 16 years old; from August 9, 2000 through December 2000 she was 17 years old. While she now knows, based on this discovery, that she was not 15 years old, she now has conclusive proof that she was an underage minor when Ghislaine Maxwell approached her, recruited her, introduced her to Jeffrey Epstein, and sexually trafficked her as an underage minor. While she now knows, based on this discovery, that it could not have been her 16th birthday that Ghislaine celebrated, she now has conclusive proof that she was an underage minor when Ghislaine Maxwell approached and recruited her for illegal purposes, and she remembers celebrating a birthday with Ghislaine Maxwell.

**RFA No. 5.** Admit that Ghislaine Maxwell did not make a joke on your 16th birthday after You blew out an array of candles and said You "would be soon getting too old for Jeffrey's taste, and soon they'd have to trade me in."

**Response**:

Denied in part. At the time Ms. Giuffre made the statement, many years after the events occurred, she firmly believed she was 15 years old when she was recruited away from her job at Mar-a-Lago by Ghislaine Maxwell. She later obtained some records from Mar-a-Lago which indicated that she was employed there during the year 2000. From January, 2000 through august 9, 2000, she was 16 years old; from august 9, 2000 through December 2000 she was 17 years old. While she now knows, based on this discovery, that she was not 15 years old, she now has conclusive proof that she was an underage minor when Ghislaine Maxwell approached her, recruited her, introduced her to Jeffrey Epstein, and sexually trafficked her as an underage minor. While she now knows, based on this discovery, that it was not her 16th birthday that she celebrated with Ghislaine Maxwell, she now has conclusive proof that she was an underage minor when Ghislaine Maxwell approached and recruited me for illegal purposes, and she remember celebrating a birthday with Ghislaine Maxwell, during which she made the referenced joke.

**RFA No. 6.** Admit that you did not work at Mar-a-Lago when you were 15 years old

**Response**:

Denied in part. At the time Ms. Giuffre made the statement, many years after the events occurred, she firmly believed she was 15 years old when she was recruited away from her job at Mar-a-Lago by Ghislaine Maxwell. She later obtained some records from Mar-a-Lago which indicated that she was employed there during the year 2000. From January, 2000 through August 9, 2000, she was 16 years old; from August 9, 2000 through December 2000 she was 17 years old. While she now knows, based on this discovery, that she was not 15 years old, she now has conclusive proof that she was an underage minor when Ghislaine Maxwell approached her, recruited her, introduced her to Jeffrey Epstein, and sexually trafficked her as an underage minor.

23

**RFA No. 7.** Admit that you did not work for Jeffrey Epstein for four years.

**Response**:

Denied in part. At the time she made the statement, many years after the events occurred, and based purely from memory without the assistance of any documents, she firmly believed she was with Jeffrey Epstein over a four year period. With the assistance of various records obtained after she made that statement, she now knows that she was not with Jeffrey Epstein for four years. She was sent to Thailand by Jeffrey Epstein in September 2002 and that was the last time she saw him.

**RFA No. 8.** Admit that You did not spend four years as an underage sex slave for Jeffrey Epstein.

**Response**:

Denied in part. At the time she made the statement, many years after the events occurred and based purely from memory without the assistance of any documents, she firmly believed she was with Jeffrey Epstein over a four year period. With the assistance of various records obtained after she made that statement, she now knows that she was not with Jeffrey Epstein for four years; however she was a sex slave for Jeffrey Epstein for years.

**RFA No. 13.** Admit that You never observed Al Gore on the island of Little St. James.

**Response**:

Denied in part. Her memory from 15 or more years ago is that it was on the island where she met Mr. Gore, although she has testified that she could have been incorrect on that location. While traveling with Epstein and Maxwell, she met so many people and was taken to so many places as a minor that perfect recall of exact locations is difficult, but based on her best recollection, denied.

In Request for Admissions Nos. 1-8 and 13, Plaintiff answered "[d]enied in part" and then provided a narrative that implicitly admitted the request for admission while explaining why she believed otherwise at an earlier time. None of these responses is proper. Rule 36(a)(4) provides in relevant part:

If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and *when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest*.

(emphasis supplied).  Plaintiff denied only "a part of a matter" and therefore was required to

"specify the part admitted."  In Request for Admissions Nos. 1-8 and 13, Plaintiff failed to

specify any part that was admitted. Her answers violate Rule 36.

---

**Request for Admission No. 12.** Admit that You never had a conversation with Bill Clinton regarding him flying with Ghislaine Maxwell in a helicopter.

**Response**:

  Objection. Defendant Maxwell has clearly incorrectly interposed and comingled the facts which comprise the foundation of this request for admission. Ms. Giuffre has never alleged that she "had a conversation with Bill Clinton regarding him flying with Ghislaine Maxwell in a helicopter." Instead, Ms. Giuffre has alleged, "I flew to the Caribbean with Jeffrey and then Ghislaine Maxwell went to pick up Bill [Clinton] in a huge black helicopter that Jeffrey had bought her." Sara Nathan, Bill Clinton Pictured with Jeffrey Epstein's Social Fixer, Daily Mail, (12 January 2015).

  As a threshold matter, a court must determine whether the statements set forth in a request for admissions satisfy the formal requirements of Rule 36 ....

  Consequently, Ms. Giuffre objects to answering this request for admission as it is based on "half-truths," which make it impossible to answer without a qualified response.

---

Plaintiff objected to this request for admission and provided no answer. That is improper.

The request required Plaintiff to admit whether she had a conversation with President Clinton

regarding him flying in a helicopter with Ms. Maxwell. Either she is able to admit this request in

full or in part, or she is able to deny the request in full or in part, as Rule 36 requires. She may

not object and refuse to admit or deny.

### III.   Plaintiff's responses to requests for production are deficient.

---

**RFP No. 1.** All Communications and Documents identified in Interrogatories 5-14, above.

**Response:**

  Ms. Giuffre objects in that it seeks information protected by the attorney-client/work product privilege, and any other applicable privilege stated in the General Objections. Ms. Giuffre objects to this request on the grounds that it is

---

wildly overly broad and unduly burdensome, and calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence, as described more fully above in response to the interrogatories. For example, Interrogatory Number 5, would cover documents spanning over 100 years collectively from attorneys, and compliance with this production request would be literally impossible due to the untethered scope of the request. Ms. Giuffre objects to this request in that it seeks to invade the privacy rights of a sex abuse victims, and is meant for the improper purpose of harassing and intimidating this victim.

**No privilege applies.** As discussed above in connection with Plaintiff's assertion of privilege in her interrogatory responses, *see, e.g.*, This Motion, at 9, no privilege applies to the information requested in Interrogatory Nos. 5-14. Nor does any privilege apply to the communications and documents identified in those interrogatories.

**The RFP is not overbroad.** Plaintiff's overbreadth objection appears to be the same as its overbreadth objection interposed in response to the interrogatories. For the reasons discussed in response to Plaintiff's Objection 9, *see* This Motion, at 16, the objection is meritless.

**The RFP is not unduly burdensome.** Plaintiff's burdensomeness objection is premised on an unreasonable reading of the interrogatories. That objection is meritless. *See* This Motion, at 5.

**The RFP does not implicate Plaintiff's right to privacy.** As discussed above, *see* This Motion, at 20, Plaintiff has no right to privacy to the information requested in the interrogatories or to the related communications and documents.

**RFP No. 4.** All Documents relating to any Communications between or among You or Your attorneys or any agent for You or Your attorneys, and any of the following individuals or with their attorneys, agents or representatives:

a. Any witness disclosed in Plaintiff's Rule 26(a) disclosures;

b. Any witness disclosed in Defendant's Rule 26(a) disclosures;

c. Any witness identified by You in response to Interrogatory No. 8 and No. 14.

26

**Response**:

Ms. Giuffre objection to this request on the grounds that it is overly broad and unduly burdensome in that it is not limited in time, and it seeks documents relating to hundreds of individuals. Ms. Giuffre objects because compliance with this request is unduly burdensome. For example, this request seeks documents relating to over 100 individuals, and has no date or time limitations or subject matter limitations whatsoever. Ms. Giuffre objects to this request in that documents responsive to this request are within the possession, custody and control of the defendant and Jeffrey Epstein with whom she claims a joint defense privilege and defendant has refused to produce responsive documents to Ms. Giuffre's request seeking communications between the Defendant and Ms. Giuffre and between Jeffrey Epstein and Ms. Giuffre. Ms. Giuffre objects in that it seeks information protected by the attorney-client/work product privilege, and any other applicable privilege stated in the General Objections. Specifically, counsel's communications with witnesses are protected under the work product doctrine. Ms. Giuffre objects to this request in that it is sought solely to harass and intimidate Ms. Giuffre, and invade her privacy, by seeking her private communications with her various family members, including aunts, uncles and parents and siblings. Ms. Giuffre further objects as this request calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence.

Ms. Giuffre is withholding production of documents that are privileged pursuant to the attorney-client privilege, the work product privilege, and the public interest privilege. Ms. Giuffre is also withholding electronic renditions of photographs that depict the faces of her minor children, including school portraits and other photographs taken that reveal the faces of her minor children.

Ms. Giuffre additionally objects to the extent that this request seeks the communications of her attorneys, as such request is overly broad and unduly burdensome. This is especially true given that certain attorneys for Ms. Giuffre additionally represent other individuals listed on the Rule 26 Disclosures in separate legal matters, and revelation of such communications would violate privileges that do not belong to Ms. Giuffre, but rather belong to other victims of sexual abuse who have not waived such privileges. Accordingly, Ms. Giuffre is withholding these documents from production based on her objections.

Subject to and without waiving the above objections, Ms. Giuffre has already produced documents Bates labelled GIUFFRE000001 to GIUFFRE007566, which includes her communications with many of the individuals set forth in this request. However, producing documents with the additional, newly-added individuals would be overly burdensome, as there is no limitation as to time period, scope or subject-matter.

The objections are meritless. As to burdensomeness, the relevance of the requested communications is obvious, as the witnesses all have information relevant to the factual issues in

this case. Plaintiff argued that the request encompasses "over 100" witnesses; notably, however, Plaintiff did not claim she and her attorneys have communicated with even 20, let alone 100, witnesses, nor has she disclosed the volume of documents actually implicated by this request; so Plaintiff has failed even to make a prima facie case of burdensomeness. As to "privacy," no such right to privacy is implicated in this request; even if it were, the Court's Protective Order more than adequately protects that right. As to assertions of privilege or immunity over any responsive document, to the extent any privilege or immunity applies, Plaintiff must comply with her duties under Local Rule 26.2 and Federal Rule 26(b)(5).

The "objection" that Plaintiff has no duty to produce because the defense "already has" the requested documents is meritless. *See* This Motion, at 8 (citing cases).

That Plaintiff's attorneys represent or have represented other clients and have had non-privileged, non-immunized communications with the witnesses described in the request is not a relevant fact for purposes of discovery in this case. So long as the Plaintiff and her attorneys have responsive documents, those documents must be produced.

**Plaintiff's deficient response.** Notwithstanding her objections, Plaintiff responded that she previously produced 7,566 documents, some of which, she said, include requested documents. That is a deficient response. In violation of Rule 34(b)(2)C), Plaintiff has failed to state whether she is withholding documents. Additionally, Plaintiff may not answer a Rule 34 request by referring the defense to a mass of undifferentiated documents. *DirecTV*, 224 F.R.D. at 682 (holding that Rule 34 response referring opponent to previous production was "improper": "Plaintiff was required to identify the particular documents or to organize and label them to correspond to these specific requests. There is nothing in the record indicating that Plaintiff did so. Thus, Plaintiff's partial responses to these requests did not comply with Rule 34(b).").

**RFP No. 9.** All Documents concerning any Communications between You or Your attorneys and any witness in the case captioned Jane Doe #1 and Jane Doe #2 v. United States, Case No. 08-ev-80736-KAM, in the U.S. District Court for the Southern District of Florida ("CVRA" case).

**Response**:

Ms. Giuffre objects to this request on the grounds that it is overly broad and unduly burdensome, particularly as it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence, and because it would require the review of hundreds of thousands of documents which would take hours upon hours of attorney time. Ms. Giuffre objects in that it seeks information protected by the attorney-client/work product privilege, and any other applicable privilege stated in the General Objections.

With regard to communications by Ms. Giuffre's attorneys, this request seeks clearly privileged materials, because Ms. Giuffre's attorneys represent not only Ms. Giuffre (Jane Doe 3) in the CVRA matter, but also Jane Doe 1, Jane Doe 2, and Jane Doe 4. Any communications between the four Jane Does, via Ms. Giuffre's attorneys, would be plainly subject to attorney client protection, not to mention work product protection as well.

With regard to contact with "witnesses," the request is vague, unduly burdensome, and overbroad. The CVRA case centers on issues surrounding whether the U.S. Government failed to confer and otherwise protect the rights of victims (including Janes Does 1, 2, 3, and 4) during plea negotiations with Jeffrey Epstein. Accordingly, some of the main "witnesses" in the case are the Government prosecutors who handled the plea negotiations. Several of the same prosecutors who handled the plea negotiations are also involved in defending the CVRA case. The CVRA has been in litigation for nearly eight years, and there have extensive communications with the prosecutors (including communications concerning approximately 10,000 pages of documents that were requested by victims' counsel and provided to Judge Marra for in camera review). The request appears designed to target all of these communications, and such communications, going back eight years, would necessitate a review of several hundreds of thousands of emails over that time to identify communications with the Government prosecutors. The burden would be substantial and the relevance would be essentially non-existent. Whatever communications Ms. Giuffre's attorneys would have had with government prosecutors about CVRA notifications concerning a prosecution of Epstein would not shed light on whether Defendant Maxwell defames Ms. Giuffre in attacking her as, for example, a liar.

Moreover, many materials related to this case remain under Judge Marra's protective order. Accordingly, before Ms. Giuffre's counsel could even have the option to release certain materials that the Government has provided to him as an attorney in the case, defendant Maxwell would have to approach Judge Marra and seek a modification of the protective order.

The request is also vague because it is not clear precisely what "witnesses" Defendant Maxwell is concerned about. There have, for example, between communications between Ms. Giuffre's lawyers and lawyers for Mr. Epstein and Mr. Dershowitz connected with procedural and other aspects of this case. Again, the relevance of such communications seems basically non-existent to the action. But because the case has spanned eight years, collecting such communications would be difficult and overly burdensome. Moreover, Defendant Maxwell has a close working relationship and/or joint defense arrangement with both Mr. Epstein and Mr. Dershowitz. There is no reason to burden Ms. Giuffre's attorneys will collecting such communications when she can collect them in other ways.

**RFP No. 10.** All Documents concerning any Communications between you or your attorneys and any witness or potential witness in Edwards and Cassell v Dershowitz ("Dershowitz" case).

**Response**:

Ms. Giuffre objects to this request on the grounds that it is overly broad and unduly burdensome, particularly as it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence, and because it would require the review of hundreds of thousands of documents which would take hours upon hours of attorney time. It is not clear what the phrase "concerning" is designed to cover. As a third-party witness in that action, Ms. Giuffre had numerous communications with, for example, her attorneys in relation to that matter, and therefore, these communications are subject to the attorney client privilege and protected by the work product doctrine. It unclear what documents "concerning" communications with "witnesses" refers to, and it could expansively cover a vast number of documents, emails, and other communications that have taken place over the course of this litigation.

With regard to communications by Ms. Giuffre's attorneys, this request seeks clearly privileged materials (or materials covered by the work product doctrine).

With regard to "witnesses" or "potential witnesses," the request is vague, unduly burdensome, and overbroad. The Dershowitz case centers on issues surrounding whether the Ms. Giuffre's lawyers (Edwards and Cassell) had conduct a sufficient investigation before filing a motion to join Jane Doe 3 (and Jane Doe 4) into the CVRA case. That investigation involves not only attorney-client materials, but also work product protections for Jane Doe 1 and Jane Doe 2. This request, then, covers communications going back eight years, and it would involve a review of several hundreds of thousands of emails over that time to identify communications relevant to the potential "witnesses" who might have been able to shed light on the claims in the CVRA case and, in turn, whether sex abuse had been committed by Alan Dershowitz. The burden would be substantial and the relevance would be essentially non-existent. Such a burden is not countenanced by Rule 26 or the prevailing case law. Whatever communications Ms. Giuffre's attorneys may have had as part of their (work product protected)

investigation would not shed light on whether Defendant Maxwell defames Ms. Giuffre in attacking her as, for example, a liar.

The request is also vague because it is not clear precisely what "witnesses" Defendant Maxwell is concerned about. There have, for example, between communications between Ms. Giuffre's lawyers and lawyers for Mr. Epstein and Mr. Dershowitz Again, the relevance of such communications seems basically non-existent to the action. But because their investigations have spanned eight years, collecting such communications would be difficult. Moreover, Defendant Maxwell has a close working relationship and/or joint defense arrangement with both Mr. Epstein and Mr. Dershowitz. There is no reason to burden Ms. Giuffre's attorneys with collecting such communications when she can collect them in other ways. Indeed, in light of the fact that Maxwell and Dershowitz have a close working relationship, it is unduly burdensome that Maxwell seeks these items not from her ally but from attorneys for her legal adversary.

RFP Nos. 9 and 10 request documents concerning communications between Plaintiff or her attorneys and various witnesses. Because the responses are substantially identical, we combine here the discussion of both RFPs and Plaintiff's respective responses.

As to alleged burdensomeness and overbreadth, we refer the Court to the discussion above of the same objections interposed in response to RFP No. 4. As to relevance, such communications with witnesses certainly bear on Plaintiff's claim and Ms. Maxwell's defense, see Fed. R. Civ. P. 26(b)(1). As to assertions of privilege or immunity over any responsive document, to the extent any privilege or immunity applies, Plaintiff must comply with her duties under Local Rule 26.2 and Federal Rule 26(b)(5).

**RFP No. 11.** Any statement obtained by You or Your attorneys from any witness or potential witness in the CVRA case.

**Response**:

Ms. Giuffre objects to this request on the grounds that it is overly broad and unduly burdensome, particularly as it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence, and because it would require the review of hundreds of thousands of documents which would take hours upon hours of attorney time. Ms. Giuffre objects in that it seeks information protected by the attorney-client/work product privilege, and any other applicable privilege stated in the General Objections.

Ms. Giuffre objects because the term "statement" is vague and ambiguous, unduly burdensome and overbroad. With regard to communications to Ms. Giuffre's attorneys, this request seeks clearly privileged materials, because Ms. Giuffre's attorneys represent not only Ms. Giuffre (Jane Doe 3) in the matter, but also Jane Doe 1, Jane Doe 2, and Jane Doe 4.

The CVRA case centers on issues surrounding whether the U.S. Government failed to confer and otherwise protect the rights of victims (including Janes Does 1, 2, 3, and 4) during plea negotiations with Jeffrey Epstein.

The CVRA has been in litigation for nearly eight years, and there have extensive communications with the prosecutors (including communications concerning approximately 10,000 pages of documents that were requested by victims' counsels and provided to Judge Marra for in camera review). It is not clear whether the request is designed to request all of these communications as "statements," but if it does capture these communications going back eight year, it would involve a review of several hundreds of thousands of emails over that time to identify communications with the Government prosecutor. The burden would be substantial and the relevance would be essentially non-existent. Whatever statements Ms. Giuffre's attorneys obtained from government prosecutors about CVRA notifications concerning a prosecution of Epstein would not shed light on whether Defendant Maxwell defames Ms. Giuffre in attacking her as, for example, a liar. Moreover, many materials remain under Judge Marra's protective order. Accordingly, before Ms. Giuffre's counsel could even have the option to release certain materials that the Government has provided to him as an attorney in the case, defendant Maxwell would have to approach Judge Marra and seek a modification of the protective order.

The request is also vague because it is not clear precisely what "statements" Defendant Maxwell is concerned about. There have, for example, between communications between Ms. Giuffre's lawyers and lawyers for Mr. Epstein and Mr. Dershowitz connected with procedural and other aspects of this case. Again, the relevance of such communications seems basically non-existent to the action. But because the case has spanned eight years, collecting such communications would be difficult. Moreover, Defendant Maxwell has a close working relationship and/or joint defense arrangement with both Mr. Epstein and Mr. Dershowitz. There is no reason to burden Ms. Giuffre's attorneys will collecting such statements when she can collect them in other ways.

**RFP No. 12.** Any statement obtained by You or Your attorneys from any witness or potential witness in the Dershowitz case.

**Response**:

Ms. Giuffre objects to this request on the grounds that it is overly broad and unduly burdensome, particularly as it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence, and because it would require the review of hundreds of thousands of documents which would take hours upon hours of attorney time. Ms.

Giuffre objects in that it seeks information protected by the attorney-client/work product privilege, and any other applicable privilege stated in the General Objections.

Ms. Giuffre objects because the term "statement" is vague and ambiguous, unduly burdensome and overbroad. The Dershowitz case centers on issues surrounding whether the Ms. Giuffre's lawyers (Edwards and Cassell) had conduct a sufficient investigation before filing a motion to join Jane Doe 3 (and Jane Doe 4) into the CVRA case. That investigation involves not only attorney-client materials, but also work product protections for Jane Doe 1 and Jane Doe 2. The request potentially covers communications or "statements" going back eight years, and it would involve a review of several hundreds of thousands of emails over that time to identify "statements" made by any "witness" or "potential witness" who might have been able to shed light on whether sex abuse had been committed by Alan Dershowitz. The burden would be substantial and the relevance would be essentially non-existent Whatever communications Ms. Giuffre's attorneys may have had as part of their (work product protected) investigation would not shed light on whether Defendant Maxwell defames Ms. Giuffre in attacking her as, for example, a liar.

With regard to communications to Ms. Giuffre's attorneys, this request seeks clearly privileged materials, because Ms. Giuffre's attorneys represent not only Ms. Giuffre (Jane Doe 3) in the matter, but also Jane Doe 1, Jane Doe 2, and Jane Doe 4 in the CVRA litigation.

The CVRA has been in litigation for nearly eight years, and there have extensive communications with the prosecutors (including communications concerning approximately 10,000 pages of documents that were requested by victims' counsels and provided to Judge Marra for in camera review). It is not clear whether the request is designed to request all of these communications as "statements," but if it does capture these communications going back eight year, it would involve a review of several hundreds of thousands of emails over that time to identify communications with the Government prosecutor. The burden would be substantial and the relevance would be essentially non-existent. Whatever statements Ms. Giuffre's attorneys obtained from government prosecutors about CVRA notifications concerning a prosecution of Epstein would not shed light on whether Defendant Maxwell defames Ms. Giuffre in attacking her as, for example, a liar.

The request is also vague because it is not clear precisely what "statements" Defendant Maxwell is concerned about. There have, for example, between communications between Ms. Giuffre's lawyers and lawyers for Mr. Epstein and Mr. Dershowitz connected with procedural and other aspects of these cases. Again, the relevance of such communications seems basically non-existent to the action. Moreover, Defendant Maxwell has a close working relationship and/or joint defense arrangement with both Mr. Epstein and Mr. Dershowitz. In light of the fact that Maxwell and Dershowitz have a close working relationship, it is

unduly burdensome that Maxwell seeks these items not from her ally but from attorneys for her legal adversary. There is no reason to burden Ms. Giuffre's attorneys will collecting such statements when she can collect them in other ways.

RFP Nos. 11 and 12 request statements Plaintiff has obtained from witnesses in related cases. Because the responses are substantially identical, we combine here the discussion of both RFPs and Plaintiff's respective responses.

As to alleged burdensomeness and overbreadth, we refer the Court to the discussion above of the same objections interposed in response to RFP No. 4. As to relevance, the written statements of the witnesses certainly bear on Plaintiff's claim and Ms. Maxwell's defense, *see* Fed. R. Civ. P. 26(b)(1). As to Plaintiff's blanket assertions of privilege or immunity over witness statements, to the extent any privilege or immunity applies, Plaintiff must comply with her duties under Local Rule 26.2 and Federal Rule 26(b)(5). While some witness statement might qualify for work product protection, it is clear that some do not, e.g., witness statements that do not reveal an attorney's mental impressions. *See, e.g.*, *Tuttle v. Tyco Elecs. Installation Servs., Inc.*, No. 2:06-CV-581, 2007 WL 4561530, at *2 (S.D. Ohio Dec. 21, 2007) ("Affidavits are normally not protected by the work product doctrine for the very reason that an affidavit purports to be a statement of facts within the personal knowledge of the witness, and not an expression of the opinion of counsel. Further, Defendants should not be frustrated in their ability to test the perception and credibility of these affiants.") (internal quotations omitted).

**Plaintiff has failed to sign her interrogatory responses.**

Rule 33(b)(5) requires that a party answering interrogatories sign her answers. Plaintiff has failed to do so, despite a request from defense counsel. This violation of Rule 33(b)(5) subjects Plaintiff to sanctions. *See, e.g.*, *Walls v. Paulson*, 250 F.R.D. 48 (D.D.C. 2008)

Ms. Maxwell is entitled to attorney fees incurred in making this Motion.

Under Rule 37(a)(5), if a party is required to file a motion to compel discovery responses and the motion is granted or disclosure or discovery is provided after filing, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  By signing the objections, Plaintiff's counsel certified the responses and objections were: (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Fed. R. Civ. P. 26(g)(1). The sanction for improper certifications of objections requires "the court, on motion or on its own, *must* impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."  Fed. R. Civ. P. 26(g)(3).

Sanctions are appropriate here. Plaintiff's counsel have interposed improper, sometimes frivolous, objections, and Plaintiff without any substantial justification has simply refused to answer discovery requests.

## CONCLUSION

For the foregoing reasons, the Court should compel Plaintiff to:

1. Overrule Plaintiff's objections to discovery requests;

2. Provide complete responses Interrogatories 5-8, 13-14, and state what information, if any, information is being withheld on the basis of objection;

3. Provide answers to requests for admissions that comply with Rule 36;

4. Specifically state for each objection made to the requests for production what, if any, documents are being withheld and the specific objection under which it is being withheld;

5. Undertake a reasonable and diligent inquiry for all documents requested in RFP Nos. 1, 4, 9-12 that are in her possession, custody or control, and produce them.

Ms. Maxwell further requests under Fed. R. Civ. P. 26(g) and 37(a)(5) that the Court enter an

Order for attorney costs and fees incurred in preparing and prosecuting this Motion.


Dated: August 10, 2016


Respectfully submitted,


*/s/ Laura A. Menninger*
Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:   303.831.7364
Fax:        303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*


36

## CERTIFICATE OF SERVICE

I certify that on August 10, 2016, I electronically served this *Defendant's Motion to Compel Responses to Defendant's Second Set of Discovery Requests to Plaintiff, and for Sanctions* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
Farmer, Jaffe, Weissing, Edwards, Fistos &
Lehrman, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

J. Stanley Pottinger
49 Twin Lakes Rd.
South Salem, NY 10590
StanPottinger@aol.com

*/s/ Nicole Simmons*
Nicole Simmons