United States District Court
Southern District of New York

Virginia L. Giuffre,

      Plaintiff,            Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

      Defendant.
_____/

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO ENFORCE THE COURT'S ORDER AND DIRECT DEFENDANT TO ANSWER DEPOSITION QUESTIONS

Plaintiff, Virginia Giuffre, by and through her undersigned counsel, files this Reply in Support of her Motion to Enforce the Court's Order and Direct Defendant to Answer Deposition Questions. Defendant argued that Mr. Boies' questions were outside this Court's Order. That is simply untrue. Defendant refused to answer questions that go to heart of the type of questions this Court specifically ordered Defendant to answer: they could not be more on-point.

None of Defendant's arguments change the language of this Court's Order. None of Defendant's arguments change the questions Defendant refused to answer. Accordingly, Ms. Giuffre's motion should be granted.

I.     PRELIMINARY STATEMENT

Defendant begins her brief with snippets of her self-serving testimony. As the Court is aware, all of this testimony is directly contradicted by the myriad of other witnesses in this case who have testified at deposition, including Defendant's own witness, Tony Figueroa. Defendant has claimed in her deposition that she did not procure girls for sex with Epstein nor notice the

1

hundreds of young girls who came and went from the home she shared with Epstein. Her testimony is directly refuted by multiple witnesses.

**Tony Figueroa**, Defendant's own witness, testified that Defendant called him directly, asking him to bring girls over, that he did bring girls under the age of 18 over, and that he knew about Defendant's threesomes with Ms. Giuffre and Epstein.[1]

**Johanna Sjoberg** testified that Defendant recruited her for sex with Epstein under the guise of answering phones. That phone job lasted <u>one</u> day, because her second day Defendant asked her to start giving massages, and it soon made it clear that Sjoberg's purpose was to bring Epstein to orgasm so Defendant didn't have to all of the time.[2]

Chillingly, **Rinaldo Rizzo**, Defendant's friend's house manager, through tears, described how Defendant tried to force a 15 year old Swedish girl to have sex with Epstein through threats and stealing her passport.[3]

**Juan Alessi**, Epstein's house manager, testified that Defendant was one of the people who procured the over 100 girls he witnessed visit Epstein, and that he had to clean Defendant's sex toys.[4]

**Lynn Miller** testified that Defendant became Ms. Giuffre's "new momma,"[5] though Defendant claims that she would not even remember Ms. Giuffre were it not for these

---

[1] See McCawley Decl. at Composite Exhibit 4, Figueroa June 24, 2016 Dep. Tr. Vol. 1 at 96-97 and 103 (Figueroa testified that Plaintiff told him about threesomes with Defendant and Epstein which included the use of strap-ons); and Vol. 2 at 200 (Figueroa testified that Defendant called him inquiring if he had found any other girls for Epstein).
[2] See McCawley Decl. at Exhibit 5, Johanna Sjoberg's May 18, 2016 Dep. Tr. at 8-9, 13, 33-35, 142-143.
[3] See McCawley Decl. at Exhibit 6, Rinaldo Rizzo's June 10, 2016 Dep. Tr. at 52-60.
[4] See McCawley Decl. at Exhibit 7, Juan Alessi's June 1, 2016 Dep. Tr. at 28, 52-54.
[5] See McCawley Decl. at Exhibit 8, Lynn Miller's May 24, 2016 Dep. Tr. at 115.

proceedings (apparently, also forgetting the 23 flights she shared with Ms. Giuffre on Epstein's private jet,[6] known colloquially as the "Lolita Express"[7]).

**Police Detective Joseph Recarey**, who led the investigation of Epstein, testified that Defendant procured underage girls for Epstein.[8] Indeed, *on the morning that Recarey executed the search warrant* on Epstein's Palm Beach Property, Defendant, herself, called Epstein's housekeeper **Louella Rabuyo**, and told her not to come over to their house that day until the afternoon.[9]

And though Defendant refused to admit that she flew with Ms. Giuffre,[10] Epstein's pilot, **Dave Rodgers,** testified that the passenger listed on his flight log bearing the initials – GM – was in fact Ghislaine Maxwell and Rodgers was the pilot on at least 23 of the flights in which Defendant flew with Plaintiff.[11]

---

[6] *See* Maxwell's April 22, 2016 Dep. Tr. at 78-79, 144 (barely recollects Plaintiff at all); *see also* McCawley Decl. at Exhibit 9, Excerpted Rodgers Dep. Ex. 1 (flight records evidencing Defendant (GM) flying with Ms. Giuffre).

[7] *See* McCawley Decl. at Exhibit 10, "All aboard the 'Lolita Express': Flight logs reveal the many trips Bill Clinton and Alan Dershowitz took on pedophile Jeffrey Epstein's private jet with anonymous women" at The Daily Mail, http://www.dailymail.co.uk/news/article-2922773/Newly-released-flight-logs-reveal-time-trips-Bill-Clinton-Harvard-law-professor-Alan-Dershowitz-took-pedophile-Jeffrey-Epstein-s-Lolita-Express-private-jet-anonymous-women.html (January 22, 2015).

[8] *See* McCawley Decl. at Exhibit 11, Detective Joseph Recarey's June 21, 2016 Dep. Tr. at 29-30.

[9] *See* McCawley Decl.at Exhibit 12, Louella Rabuyo's October 20, 2009 Dep. Tr. at 81-83.

[10] *See* McCawley Decl. at Exhibit 1 Maxwell's April 22, 2016 Dep. Tr. at 120-127, 132-133 and 145.

[11] *See* McCawley Decl. at Exhibit 13, David Rodgers' June 3, 2016 Dep. Tr. at 18, 34-36; *see also* Exhibit 9, Excerpted Rodgers Dep. Ex. 1 at flight #s 1433-1434, 1444-1446, 1464-1470, 1478-1480, 1490-1491, 1506, 1525-1526, 1528, 1570 and 1589.

Both **Sarah Kellen** and **Nadia Marcinkova** invoked the Fifth Amendment when asked about Defendant trafficking girls[12] in a previous action, and both failed to show up for their depositions in this case.

Also in a previous action, **Alfredo Rodriguez**, another house manager, testified that Defendant "knew what was going on" with the underage girls, and threatened him about telling others.[13]

Tellingly, Defendant has not been able to procure a single witness - not one - who can testify that Defendant did not procure girls for sex with Epstein and did not participate in the sex. Even one of her own witnesses, Tony Figueroa, testified that she both procured girls and participated in the sex. Indeed, those who knew her well, who spent considerable time in her and Epstein's shared household, have testified that she was Epstein's procuress.

With every deposition taken, the chorus of voices accusing Defendant of being a procurer of girls for Epstein grows louder and stronger, corroborating Ms. Giuffre's account, and proving that Defendant defamed her when she called her a liar.[14]

In her Response brief, Defendant puts forth the number of questions posed to her in her deposition; however, the important number is omitted: how many questions she actually answered. What Defendant fails to tell the Court is how many questions - and how much deposition time - was taken up by Defendant engaging in improper behavior. Defendant spent much of her time refusing to answer basic questions so that they had to be repeated multiple

---

[12] *See* McCawley Decl. at Exhibits 14-15, Sarah Kellen's March 24, 2010 Dep. Tr. at 37-40, 100; and Nadia Marcinkova's April 13, 2010 Dep. Tr. at 29-35, 47-49.
[13] *See* McCawley Decl. at Exhibit 16, Alfredo Rodriguez' July 29, 2009 Dep. Tr. at 176-177; 169-172.
[14] Defendant claims that "Plaintiff's counsel has admitted that it was a mistake to sue Alan Dershowitz for defamation, after he provided them documentation establishing he never was in their client's presence, nor did he have sex with her." This is simply untrue.

4

times. She also spent much of her time feigning incomprehension of simple sentences and common words, also causing the same question to be posed to her multiple times. For example, defendant pretended not to understand the question, "Do you believe that Epstein abused minors?," causing it to be repeated multiple times.

> Q. . . . do you believe that Jeffrey Epstein abused any minor children?
> A. Can you repeat the question please and break it down so it's more understandable.
> Q. Now that you have the police report that I showed you this morning that you had an opportunity to look at.
> A. You gave it to me, I did not look at it.
> Q. The questions that I asked you about the police report -- you are aware there is a police report?
> A. I am aware there is a police report.
> Q. You are aware there was a criminal investigation of Jeffrey Epstein?
> A. I am aware that there was that.
> Q. Now that you are aware of those two things and having talked to Jeffrey Epstein, do you believe Jeffrey Epstein sexually abused minors?
> A. Can you reask the second part of that question please.
> Q. Sure. The two documents we were talking about, the document and the investigation, you said you are aware of and after having talked to Jeffrey Epstein, do you believe Jeffrey Epstein sexually abused minors?
> A. What do you mean I talked to Jeffrey, you need to break the question down further.
>
> ***
>
> Q. Let's take those two things. After knowing those two things, do you believe that Jeffrey Epstein abused minor children?
> A. Can you explain what you mean by the question actually.
> Q. I think the question speaks for itself. I will try again. I will say it one more time because I want you to be able to understand it. Knowing that you have the police report here and knowing about the criminal investigation, do you believe that Jeffrey Epstein sexually abused minors?

This sequence goes on and on. Counsel for Ms. Giuffre had to ask Defendant whether she believed Epstein abused minors ***fourteen more times*** after this exchange.[15] Still, Defendant never answered the question. *See* McCawley Decl. at Exhibit 1, Maxwell's April 22, 2016 Dep.

---

[15] *See* McCawley Decl. at Exhibit 1, Maxwell's April 22, 2016 Dep. Tr. at 170, 171, 173 (twice), 174 (twice), 175 (twice), 176 (twice), 178, 182 (twice), and 183. Counsel for Ms. Giuffre had to repeat other questions when Defendant did not answer them (e.g., asking about Defendant's knowledge of abuse of minors in Epstein's home, *See* McCawley Dec. at Exhibit 1, Maxwell's April 22, 2016 Dep. Tr. at 90, 168-169).

Tr. at 168:18 - 181:24. It appears that Defendant's misleading tally of questions posed to her includes all the times questions were repeated or needlessly re-worded due to her obstructionist deposition tactics.

Indeed, Defendant, who claimed her professional role with Epstein was to pay the pool guy,[16] has a master's degree from Oxford University's Balliol College. Yet, throughout the deposition, she feigned incomprehension of basic questions, and even of basic words. Defendant pretended she did not know what a "puppet" is. *See* McCawley Decl at Exhibit 1, Maxwell's April 22, 2016 Dep. Tr. at 287-290.  Other examples of Defendant's feigned incomprehension of basic questions to avoid answering questions can be found attached at Exhibit 1, Maxwell's April 22, 2016 Dep. Tr. at 8:23-9:18 (pretending she did not know what a "female" is); 51:13 - 54:14  (pretending she didn't understand what "sexual acts" were); 69:25-71:16 (pretending she doesn't know what "sex toys" are); 87:8-91:3 (pretending that the dozens of police reports made by underage girls abused by Epstein were all "lies").

Defendant also repeatedly asked for simple questions to be rephrased, pretending that she did not understand. Specifically, she requested that questions be repeated or re-asked at least twenty-eight times. *See* McCawley Decl. at Exhibit 1, Maxwell's April 22, 2016 Dep. Tr. at 9, 13, 22, 26, 39, 50, 85, 93, 97, 98, 105, 121, 168-169, 187, 189, 201, 221 (two times), 239, 241, 257, 267, 278-279, 287, 289, 291, 336, and 377.  Sometimes changing tact, she also asked for the questions to be broken down/apart. *See* McCawley Decl. at Exhibit 1, Maxwell's April 22, 2016 Dep. Tr. at 26, 93-94, 168-169, 170.  Defendant is correct that there was much repetition in her deposition: many questions were asked multiple times when Defendant did not provide an answer, and many were asked multiple times at Defendant's own request.

---

[16] *See* McCawley Decl. at Exhibit 1, Maxwell's April 22, 2016 Dep. Tr. at 50:18-24.

Defendant complains in her brief about the length of time she was deposed. That, too, was her own-doing. Her deposition would have been much shorter (and the second one avoided entirely) if she answered the questions posed to her the first time. Indeed, she was playing games, giving non-answers, and feigning incomprehension. It was Defendant's refusal to answer questions that caused this Court to order her to sit for a second deposition. That could have been avoided by simply answering the questions the first time. Defendant's behavior not only wasted everyone's time, but revealed that she could provide no answer to those questions that could aid in her defense.

Moreover, Defendant put forth a detailed chart to show that certain questions were "duplicative or redundant," but, tellingly, did not include Defendant's responses in the chart. The reason is clear: Defendant's non-communicative "non-answers" from her first deposition necessitated their repetition.

## II.   DISCUSSION

The Court's Order was clear. Among other things, the Court ordered Defendant to answer questions related to her knowledge of the sexual activities of others with or involving Epstein.

> Defendant is ordered to answer questions relating to ***Defendant's own sexual activity*** (a) with or involving Jeffrey Epstein ("Epstein"), (b) with or involving Plaintiff, (c) with or involving underage females known to Epstein or who Defendant believed or intended might become known to Epstein, or (d) involving or including massage with individuals Defendant knew to be, or believed might become, known to Epstein. Defendant is also directed to answer questions relating to ***her knowledge of sexual activities of others*** (a) with or involving Epstein, (b) with or involving Plaintiff, (c) with or involving underage females known to Epstein or who Defendant believed were known or might become known to Epstein, or (d) involving or including massage with individuals Defendant knew to be or believed might become known to Epstein. (FN. Each of the aforementioned lists are disjunctive.) The scope of Defendant's answers are not bound by time period, though Defendant need not answer questions that relate to none of these subjects or that is clearly not relevant, such as sexual activity of third-parties who bear no knowledge or relation to the key events, individuals, or locations of this case.

*See* McCawley Decl. at Exhibit 2, June 20, 2016 Sealed Order at p. 10 (Emphasis added).

As articulated in the moving brief, Defendant refused to answer four categories of questions that were directly within the ambit of this Court's Order.

First, Defendant refused to answer many questions about Johanna Sjoberg, who was recruited by Defendant, and subsequently abused by and had sex with Jeffrey Epstein. Questions relating to her involvement with Epstein and Defendant are directly within the ambit of the Court's Order. The Court should direct the Defendant to answer questions relating to Johanna Sjoberg because they are "questions relating to [Defendant's] knowledge of sexual activities of others with or involving Epstein."

Second, Defendant refused to answers concerning Maria and Annie Farmer. Defendant was involved in Epstein's sexual abuse, and grooming for sexual abuse, of Maria Farmer and Annie Farmer, respectively. Notably, Annie Farmer was only 16 years old at the time: a familiar yet still disturbing theme running through Defendant and Epstein's lifestyle. Therefore, questions relating to Defendant's involvement with, knowledge of, and observations of both Annie and Maria Farmer are within the ambit of this Court's Order because they are "questions relating to [Defendant's] knowledge of sexual activities of others with or involving Epstein."

Third, Defendant refused to answer questions regarding girls brought to "massage" Epstein by Tony Figueroa. Questions regarding the girls who Defendant asked Mr. Figueroa to bring to the house to "massage" Epstein are also directly within the ambit of this Court's Order.

Fourth, and related to the third topic, questions about Maxwell's knowledge of, and interactions with, any of the girls who came over to "massage" Epstein are all within the ambit of the Court's Order. Questions concerning Defendant's knowledge of and involvement with these girls are (1) "questions relating to [Defendant's] knowledge of sexual activities of others with or

8

involving Epstein;" (2) "questions relating to [Defendant's] knowledge of sexual activities of others . . . with or involving underage females known to Epstein or who Defendant believed were known or might become known to Epstein;" (3) "questions relating to [Defendant's] knowledge of sexual activities of others . . . involving or including massage with individuals Defendant knew to be or believed might become known to Epstein."

Defendant also refused to answer foundational questions that are necessary precedent to the question authorized by this Court. The Court should direct Defendant to answer those questions, and all related questions that arise out of any response Defendant provides within the parameters of the Court's June 20, 2016 Sealed Order.

As recounted more fully in the moving brief, the questions Defendant refused to answer fall squarely within this Court's earlier order. Defendant can have no legitimate basis for obstructing the search for truth by refusing to answer. The Court should, again, compel Defendant to answer all these questions.

Defendant claims that "[i]t is difficult to discern precisely what questions Plaintiff is complaining about in her Motion because of her generalized and non-specific complaints." Br. at 9. To the contrary, Ms. Giuffre set forth excerpts from the deposition transcript showing exactly what questions Defendant refused to answer. To wit, Defendant failed to answer "So is it fair to say that Johanna was initially hired to answer telephones, according to your testimony?" (Plaintiff's Brief at 4); "So, how did it happen, Ms. Maxwell, that Joanna, who had been hired to answer the phones, ended up giving massages to you and Mr. Epstein?" (*Id.*); "Did Mr. Epstein pay Johanna for the massages that she gave Mr. Epstein?" (Plaintiff's Brief at 6); and "Do you know whether or not Maria Farmer was ever at Mr. Wexner's property in Ohio?" (Plaintiff's Brief at 7). The brief also set for the instance wherein Mr. Pagliuca instructed the Defendant not

9

to answer any more questions with respect to whether she knows certain girls who came over to Epstein's home to massage him, "Q. Have you ever heard the name Carolyn Andriamo, A-N-D-R-I-A-M-O? A. I don't recollect that name at all. MR. PAGLIUCA: those names are on Exhibit 26, which we have already gone over and she said she didn't recognize those people, so now we are just repeating things that we went over. MR. BOIES: I am in the context of seeing if I can refresh her recollection, because these are women that Mr. Figueroa, who she also does not recall, brought over to Mr. Epstein's residences, and I also want to make a very clear record of what her testimony is and is not right now." (Plaintiff's Brief at 8-9). *See* McCawley Dec. at Exhibit 3, Excerpts from Maxwell July 22, 2016 Dep. Tr. at 154-156.

Defendant cannot make a credible argument that these questions, or their subject matter, are outside the scope of the Court's Order. All of them relate to Defendant's knowledge of individuals who "massaged" Jeffrey Epstein (Johanna Sjoberg), who were brought to their house to "massage" Jeffrey Epstein (Carolyn Andriamo and myriad other girls who Figueroa brought at Defendant's behest); and who were massaged by Defendant herself (Annie Farmer at 16 and Maria Farmer). Mr. Boies' unanswered questions are all directly within the ambit of this Court's Order. Again, Defendant's arguments do not change the language of this Court's Order; nor do they change the questions Defendant refused to answer. Defendant must answer these questions.

### III. CONCLUSION

Based upon the foregoing, Ms. Giuffre respectfully requests that this Court grant her Motion, and direct the Defendant to answer the disposition questions Mr. Boies posed to her.

Dated: August 12, 2016

                                          Respectfully Submitted,
                                          BOIES, SCHILLER & FLEXNER LLP

By: /s/ Sigrid McCawley
    Sigrid McCawley (Pro Hac Vice)
    Meredith Schultz (Pro Hac Vice)
    Boies Schiller & Flexner LLP
    401 E. Las Olas Blvd., Suite 1200
    Ft. Lauderdale, FL 33301
    (954) 356-0011

    David Boies
    Boies Schiller & Flexner LLP
    333 Main Street
    Armonk, NY 10504

    Bradley J. Edwards (Pro Hac Vice)
    FARMER, JAFFE, WEISSING,
    EDWARDS, FISTOS & LEHRMAN, P.L.
    425 North Andrews Avenue, Suite 2
    Fort Lauderdale, Florida 33301
    (954) 524-2820

    Paul G. Cassell (Pro Hac Vice)
    S.J. Quinney College of Law
    University of Utah
    383 University St.
    Salt Lake City, UT 84112
    (801) 585-5202[17]

---

[17] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 12th day of August, 2016, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on the individuals identified below via transmission of Notices of Electronic Filing generated by CM/ECF.

Laura A. Menninger, Esq.
Jeffrey Pagliuca, Esq.
HADDON, MORGAN & FOREMAN, P.C.
150 East 10th Avenue
Denver, Colorado 80203
Tel: (303) 831-7364
Fax: (303) 832-2628
Email: lmenninger@hmflaw.com
       jpagliuca@hmflaw.com

                              /s/ Sigrid S. McCawley
                              Sigrid S. McCawley