# United States District Court
# Southern District of New York

Virginia L. Giuffre,

        Plaintiff,               Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

        Defendant.

_____/


## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S SECOND MOTION TO COMPEL AND FOR SANCTIONS

Sigrid McCawley (Pro Hac Vice)
Meredith Schultz (Pro Hac Vice)
BOIES, SCHILLER & FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................1

II.     DEFENDANT'S ENTIRE MOTION SHOULD BE DENIED.................................1

III.    MOTION TO COMPEL RESPONSES TO INTERROGATORIES SHOULD BE
        DENIED.................................................................................................................2

        A.      Interrogatory No. 5..................................................................................... 2

                1.      Ms. Giuffre's Counsel's Communications With the Media Are
                        Outside the Scope of Rule 26 and Any Attempt at Collection Would
                        be Unduly Burdensome ....................................................................2

                2.      Defendant is Already in Possession of Ms. Giuffre's Communications
                        With the Media ................................................................................3

        B.      Interrogatory No. 6..................................................................................... 5

        C.      Interrogatory No. 7..................................................................................... 8

        D.      Interrogatory No. 8................................................................................... 10

        E.      Interrogatory No. 13................................................................................. 10

                1.      Ms. Giuffre Has Answered This Interrogatory Completely...................10

                2.      This Court Has Already Ruled Against Defendant on Pre-1999
                        Medical Records, so Defendant is Estopped From Bringing This
                        Argument .......................................................................................15

                3.      This Request is Overly Burdensome and Disallowed Under New
                        York Law........................................................................................17

                4.      The Physician-patient Privilege Applies to These Documents ...............19

        F.      Interrogatory No. 14................................................................................. 20

                1.      This Discovery is Barred by FRE 412....................................................20

                2.      This Request if Propounded for Improper Purposes and Harassment......21

                3.      This Request Seeks Irrelevant Information .............................................22

i

4.      Sexual Assault Records are a Medical Event and Are Barred by This
        Court's Order ............................................................................................23

5.      Information About Ms. Giuffre's Sexual Abuse is Protected by
        Florida Statutes ........................................................................................24

6.      Defendant Makes Misrepresentations to the Court ..................................25

7.      Defendant Has Violated the Court's Protective Order (DE 62) ..............25

IV.     PLAINTIFF'S ANSWERS TO DEFENDANT'S REQUESTS FOR ADMISSIONS
        ARE NOT DEFICIENT AND DEFENDANT'S MOTION SHOULD BE DENIED ......26

        A.      Requests for Admission Nos. 1-8 and 13 ............................................ 26

        B.      Requests for Admission Nos. 12 ......................................................... 28

V.      PLAINTIFF'S RESPONSES TO DEFENDANT'S OVERLY BROAD REQUESTS
        FOR PRODUCTION ARE COMPLIANT WITH HER DISCOVERY
        OBLIGATIONS UNDER THE APPLICABLE RULES AND DEFENDANT'S
        MOTION SHOULD BE DENIED ...................................................................30

        A.      Request for Production No. 1 .............................................................. 30

        B.      Request for Production No. 4 .............................................................. 36

        C.      Request for Production No. 9 .............................................................. 36

        D.      Request for Production No. 10 ............................................................ 40

        E.      Requests for Production No. 11 and No. 12 ........................................ 40

VI.     CONCLUSION ............................................................................................42

CERTIFICATE OF SERVICE ................................................................................ 44

## <u>TABLE OF AUTHORITIES</u>

Page

### <u>Cases</u>

*Blodgett v. Siemens Industry, Inc.*,
   2016 WL 4203490 (E.D.N.Y., 2016)............................................................................. 2

*Does 1 and 2 v. United States*,
   817 F. Supp. 2d 1337 (S.D. Fla. 2011) ................................................................... 39

*Does v. United States*,
   749 F.3d 999 (11th Cir. 2014) ................................................................................ 39

*Dubin*,
   125 F.R.D 372 (S.D.N.Y. 1989). ............................................................................ 30

*Elghanian v. Schachter*,
   1997 WL 607546 (S.D.N.Y. 1997)........................................................................... 1

*Evanko v. Electronic Systems Assoc., Inc.*,
   No. 91 Civ. 2851, 1993 WL 14458 (S.D.N.Y. Jan. 8, 1993)................................. 17

*Gibbons v. Food Lion, Inc.*,
   No. 98-1197-CIV-T-23F, 1999 WL 33226474 (M.D. Fla. Feb.19, 1999) ............. 21

*Havenfield Corp. v. H & R Block, Inc.*,
   67 F.R.D. 93 (W.D.Mo.1973).................................................................................. 30

*Jane Doe 1 v. United States*,
   No. 9:08-cv-80736 (S.D. Fla. July 7, 2008)............................................................ 38

*Jane Does 1 and 2 v. United States*,
   950 F. Supp. 2d 1262 (S.D. Fla. 2013) ................................................................... 39

*Manessis v. New York City Dep't of Transp.*,
   No. 02 CIV. 359SASDF, 2002 WL 31115032 (S.D.N.Y. Sept. 24, 2002) ............. 17

*S.E.C. v. Micro-Moisture Controls*,
   21 F.R.D. 164 (S.D.N.Y.1957) .............................................................................. 30

*Sgambellone v. Wheatley*,
   165 Misc.2d 954, 630 N.Y.S.2d 835 (N.Y. Sup.Ct. 1995) ..................................... 17

*Silva v. Pioneer Janitorial Servs., Inc.*,
   No. CIV.A. 10-11264-JGD, 2011 WL 4729783 (D. Mass. Oct. 4, 2011)......................... 21, 22

*Spin Master Ltd. v. Bureau Veritas Consumer Products Service, Inc.*,
2016 WL 690819 (W.D.N.Y., 2016) .......................................................................... 30

*T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc.*,
174 F.R.D. 38 (S.D.N.Y. 1997) .................................................................................. 31

*Thalheim v. Eberheim*,
124 F.R.D. 34 (D.Conn.1988) ...................................................................................... 30

*United States v. Consolidated Edison Co.*,
1988 WL 138275 (E.D.N.Y. Dec. 15, 1988) ............................................................. 30

*Wachtman v. Trocaire College*,
532 N.Y.S.2d 943 (N.Y. App. Div. 1988) ................................................................. 17

## Statutes

18 U.S.C. § 3771 ................................................................................................ 38, 39

18 U.S.C. § 3771(a)(9) ............................................................................................ 39

Fla. Stat. § 39.202(6) .............................................................................................. 25

Fla. Stat. § 480.041 ................................................................................................. 19

Fla. Stat. § 794.026 ................................................................................................. 25

Fla. Stat. § 985.036 ................................................................................................. 25

Fla. Stat. § 985.04 ................................................................................................... 25

Fla. Stat. § 985.054 ................................................................................................. 25

## Rules

Fed. R. Civ. P. 26 ............................................................................................. *passim*

Fed. R. Civ. P. 26(a)(1)(A)(i) ................................................................................... 1

Fed. R. Civ. P. 26(b)(1)...................................................................................... *passim*

Fed. R. Civ.P. 26(c) .............................................................................................. 21

Fed. R. Civ. P. 33.3 .......................................................................................... 9, 35

Fed. R. Civ. P. 35(a)(5) .......................................................................................... 30

Fed. R. Civ. P. 36 ................................................................................................... 30

Fed. R. Civ. P. 36(a)(4)..................................................................................................... 29

Fed. R. Civ. P. 36(a)(5)..................................................................................................... 29

Fed. R. Civ. P. 37 ................................................................................................................ 2

Fed. R. Civ. P. 37.1 .................................................................................................... *passim*

Fed. R. Evid. 412 ........................................................................................................ *passim*

**<u>Other Authorities</u>**

8 C. Wright & A. Miller, Federal Practice and Procedure, § 2258.............................................. 30

Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771 .............................................. 38

Andrew Taslitz, "Rape and the Culture of the Courtroom" (1999)............................................. 26

Pub. L. 114-22, Title I, § 113(a), (c)(1), May 29, 2015, 129 Stat. 240, 241.............................. 39

Plaintiff Virginia Giuffre ("Ms. Giuffre"), by and through her undersigned counsel, hereby files this Response in Opposition to Defendant's Motion to Compel and her baseless Motion for Sanctions (DE 354).

## I.   INTRODUCTION

For the third time, Defendant attempts to elevate a routine discover dispute into something over which she seeks sanctions, despite the complete lack of a basis for sanctions and a complete lack of case law supporting her request.[1] All three of Defendant's requests for sanctions have been frivolous, legally unreasonable, without factual foundation, and for an improper purpose. Rule 11 provides for the imposition of sanctions in those circumstances. *See Elghanian v. Schachter*, 1997 WL 607546, at *2 (S.D.N.Y. 1997) (Sweet, J.)

Indeed, in Defendant's entire "argument" for sanctions, she only cites one case - a case from the District of the District of Columbia - for the proposition that Plaintiff should be sanctioned because her interrogatory responses were unsigned.[2] However, ***Defendant's interrogatory responses are also unsigned***. Defendant's thirty-seven page brief is riddled with these half-truths in a grasping attempt to distort reality as the documentary and testimonial evidence piles up against her. By Defendant's logic, Ms. Giuffre should have already moved for sanctions against Defendant for Defendant's unsigned interrogatories, but unlike Defendant, Ms. Giuffre would not burden the Court with a frivolous request for sanctions.

## II.   DEFENDANT'S ENTIRE MOTION SHOULD BE DENIED

Defendant's motion violates Local Rule 37.1, and should be denied for that reason before the Court even reaches the merits. Local Rule 37.1 states that, "upon any motion or application

---

[1] Defendant's first baseless request for sanctions was improperly raised in a response brief (DE 228) to a routine motion for extension of time - a motion this Court granted (June 23, 2016, Minute Order). Defendant's second baseless request (DE 231) centered on the fact that Ms. Giuffre listed her physicians in response to interrogatories instead of in her Rule 26 disclosures.

[2] Ms. Giuffre has signed her amended interrogatories, and has served them on Defendant.

involving discovery or disclosure requests or responses under Fed. R. Civ. P. 37, the moving party shall specify and quote or set forth verbatim ***in the motion papers*** each discovery request and response to which the motion or application is addressed." For the majority of discovery items upon which Defendant moves, Defendant has wholly failed to do this. Instead, Defendant edits out a great deal of Ms. Giuffre's answers and objections to the interrogatories, skipping entire data sets put forth in response to the interrogatories, and skipping Ms. Giuffre most cogent objections.

This is improper conduct. Upon a motion to compel, a Court is called upon to evaluate the discovery requests ***as well as the responses and objections***. Local Rule 37.1 is designed to protect against the exact type of self-serving editing of the opposing party's objections that Defendant has done in this brief. Accordingly, the Court should deny Defendant's motion in its entirety for failure to comply with Local Rule 37.1. *See Blodgett v. Siemens Industry, Inc.*, 2016 WL 4203490, at *1 (E.D.N.Y., 2016) (denying motion without prejudice for failure to comply with Local Rule 37.1 (which is the same rule in the Eastern District of New York)).

## III.  MOTION TO COMPEL RESPONSES TO INTERROGATORIES SHOULD BE DENIED

### A.  Interrogatory No. 5

1.  <u>Ms. Giuffre's Counsel's Communications With the Media Are Outside the Scope of Rule 26 and Any Attempt at Collection Would be Unduly Burdensome</u>

Interrogatory No. 5 seeks a catalogue of Ms. Giuffre *and her counsel's* communications with the media, broadly defined, and without limitation of time or subject matter. First, the interrogatory request should be denied because Ms. Giuffre already produced her communications with the media, which included production of close to 200 e-mails. Despite having these key communications, Defendant is now pushing for all communications that any of

her counsel ever had with any media without any time or subject matter limitation. The search

for, and production of, all communications involving her counsel and the media is unduly

burdensome and wholly irrelevant. Given the nature of Ms. Giuffre's counsel's practices, the

media reach out to Ms. Giuffre's counsel frequently, regarding a number of issues, and none of

Ms. Giuffre's counsel catalogue or record any of these communications. Complete retrieval

would be inordinately burdensome. Even Defendant's more limited request put forth in the

instant motion seeking communications with the media regarding this case is overly broad. This

would require a marshaling of enormous resources, and under Rule 26(b)(1), there is no need

expressed by Defendant to justify this heavy burden. Notably, Defendant has deposed Ms.

Giuffre in detail on topics relating to media inquiries and she also has of Ms. Giuffre's e-mail

communications with the media produced by Ms. Giuffre. This request should be denied on these

grounds alone.

Though she claims Ms. Giuffre's counsel's communications with the media somehow go

to her defenses, tellingly, Defendant fails to explain how they do, or put forth any case law in

support this proposition. Additionally, there's no explanation (or case law) as to how any such

communications could go to Defendant's damages. Defendant does not explain and does not

elaborate. Defendant has failed to articulate relevance or any supporting case law for this

discovery, and the request should be denied for this reason as well.

    2.    <u>Defendant is Already in Possession of Ms. Giuffre's Communications</u>
                  <u>With the Media</u>

Regarding Ms. Giuffre's communications with the media, Defendant already has them.

And, importantly, Defendant didn't have to hunt and peck for these communications, as she is

trying to lead the Court to believe. Ms. Giuffre's communications with the media consist of

email communications between Ms. Giuffre and Sharon Churcher, and Ms. Giuffre and Jarred

Weissfeld. The overwhelming majority of them were produced in her second rolling production and continued on a rolling basis through the fifth production (all of which were small productions). Specifically, there are approximately 175 of these documents, and all were produced within a narrow Bates range.[3] Defendant had knowledge of these documents as soon as Ms. Giuffre produced them. Moreover, these documents are featured in Defendant's briefs, Defendant issued subpoenas to both Sharon Churcher and Jarred Weissfeld months ago, and Defendant has deposed Ms. Giuffre about her media contacts. *See* McCawley Decl. at Composite Exhibit 1, Defendant's May 31, 2016, Subpoenas to Churcher and Weissfeld.

Yet, Defendant cited a number of cases wherein discovery was buried amid voluminous productions so as to be hidden or to cause delayed or cumbersome discovery of them. They are inapposite. Defendant didn't have to "comb through literally thousands of pages of documents" to "find" these. Again, they were presented to Defendant in small production batches, starting with the second production. Moreover, Defendant can gather all of these documents via an electronic search with a simple keystroke.

By suggesting to the Court that Ms. Giuffre's communications with the media were somehow hidden or buried in her production, Defendant makes an argument in bad faith. Indeed, Defendant's argument is tantamount to making a false representation to the Court.

Finally, all of these communications were email communications. So, on their face, they tell Defendant "the date of any such Communication;" "the form of any such Communication, whether oral or written and if written, the format of any such Communication;" "the identities of all the persons involved in such Communication" (this is revealed from the to/from/cc lines); and the other data. Defendant also knows, very well, the identities of the individuals involved

---

[3] These communications were produced at Giuffre003191-4274; Giuffre004275-4301; Giuffre004302-4371; Giuffre004372-4746; Giuffre004747-5092.

4

(including the identity of the organization with which they are affiliated), particularly as the communicators each received one of Defendant's subpoenas.

At the end of the day, the only thing Ms. Giuffre could do to answer this any more than she already has is to go through the burdensome and redundant exercise of writing down, for each of the approximately 175 emails, (1) the fact that it is an email; (2) what name appears in the "to" field; (3) what name appears in the "from" field; (4) what name appears in the "cc" field; and (5) what date appears on the email. Ms. Giuffre submits to the Court that making such a catalogue is a redundant exercise that is not appropriate under Rule 26(b)(1) which, under the 2015 amendment, takes into account "the parties' relative access to relevant information." Ms. Giuffre also submits to the Court that moving to compel Ms. Giuffre to make such a list based on documents she already produced to the Defendant is frivolous and a waste of resources.

### B.      Interrogatory No. 6

Defendant's Interrogatory No. 6 seeks any "false statements" attributed to Defendant that were published. Defendant also seeks the date, place, and form of publication, publishing entity, the URL address, etc., of all such statements. Ms. Giuffre knows, with certainty, of certain statements made by Defendant, and, together, they are the subject this action. Ms. Giuffre made a listing of various websites that published those statements in response to this interrogatory. This compilation was part of Ms. Giuffre's interrogatory answer that Defendant misleadingly omits from her motion in violation of Local Rule 37.1. Based upon Ms. Giuffre's answer, there is nothing else to compel. Yet, Defendant moves to compel answers that Ms. Giuffre does not have.

Specifically, Ms. Giuffre does not have the knowledge (and certainly does not have the documents relating to) every time Defendant may have defamed her. That is information that lies solely in the possession of the Defendant. Indeed, Ms. Giuffre sought this very information from

Defendant in her Requests Nos. 17 and 18, in which she requested documents "concerning any statement made by You or on Your behalf to the press or any other group or individual, including draft statements, concerning Ms. Giuffre, by You, Ross Gow, or any other individual, from 2005 to the present, including the dates of any publications, and if published online, the Uniform Resource Identifier (URL) address" and "all documents concerning which individuals or entities You or Your agents distributed or sent any statements concerning Ms. Giuffre referenced in Request No. 17 made by You or on Your behalf." Defendant objected to these requests and refused to produce any documents. Ms. Giuffre's motion to compel is pending.

As stated above, Ms. Giuffre knows that Defendant defamed her through the statement issued on her behalf by Ross Gow, and she knows Defendant defamed her when she affirmed that statement on video the next day in New York. But, she doesn't know all Defendant's defamatory statements, nor does she know where Defendant made them, or to whom she issued them. Defendant is trying to turn logic on its head with this request which, essentially, says: "You tell *me* the people to whom I have sent my own defamatory statements." Indeed, Defendant's own language belies her argument. In the instant brief, Defendant says: "The interrogatory required Plaintiff, among other things, to provide each "exact false statement" that she attributes to Ms. Maxwell and that was published anywhere in the world." How Ms. Giuffre can know every person to whom Defendant made defamatory statements is unexplained. For example, if Defendant took her defamatory statements to a media outlet that chose not to publish them, there is no way for Ms. Giuffre to know that. The only person who knows the full extent of Defendant's defamation of Ms. Giuffre is defendant, which is why Ms. Giuffre sent her a request for the same information.

However, to make a good faith effort of a response, Ms. Giuffre compiled many examples of Defendant's defamation, examples that were absent from Defendant's brief, in contravention of Rule 37.1:

| Date | Nature | Publishing Entity | Statement/URL |
|------|--------|-------------------|---------------|
| January 2, 2015 | Internet | Ross Gow | Jane Doe 3 is Virginia Roberts - so not a new individual. The allegations made by Victoria Roberts against Ghislaine Maxwell are untrue. The original allegations are not new and have been fully responded to and shown to be untrue.<br><br>Each time the story is re told it changes with new salacious details about public figures and world leaders and now: it is alleged by Ms. Roberts that Alan Dershowitz is involved in having sexual relations with her, which he denies.<br><br>Ms. Roberts's claims are obvious lies and should be treated as such and not publicized as news, as they are defamatory,<br><br>Ghislaine Maxwell's original response to the lies and defamatory claims remains the same. Maxwell strongly denies allegations of an unsavoury nature, which have appeared in the British press and elsewhere and reserves her right to seek redress at the repetition of such old defamatory claims. |
| January 3, 2015 | Internet | Telegraph | http://www.telegraph.co.uk/news/uknews/theroyalfamily/11323872/Prince-Andrew-denies-having-relations-with-sex-slave-girl.html |
| January 4, 2015 | Internet | Express | http://www.express.co.uk/news/world/550085/Ghislaine-Maxwell-Jeffrey-Epstein-not-madam-paedophile-Florida-court-case-Prince-Andrew |
| January 3, 2015 | Internet | Daily Mail | http://www.dailymail.co.uk/news/article-2895366/Prince-Andrew-lobbied-government-easy-Jeffrey-Epstein-Palace-denies-claims-royal-tried-use-influence-help-billionaire-paedophile-2008-police-probe.html |
| January 3, 2015 | Internet | Huffington Post | http://www.huffingtonpost.co.uk/2015/01/03/duke-of-york-sex-abuse-claims_n_6409508.html |
| January 4, 2015 | Internet | Jewish News Online | http://www.jewishnews.co.uk/dershowitz-nothing-prince-andrews-sex-scandal/ |
| January 2, 2015 | Internet | Bolton News | http://www.theboltonnews.co.uk/news/national/11700192.Palace_denies_Andrew_sex_case_claim/ |
| January 5, 2015 | Internet/ Broadcast | NY Daily News | http://www.nydailynews.com/news/world/alleged-madame-accused-supplying-prince-andrew-article-1.2065505 |

7

| January 5, 2015 | Internet/ Broadcast | AOL UK | http://www.aol.co.uk/video/ghislaine-maxwell-declines-to-comment-on-prince-andrew-allegations-518587500/ |
|---|---|---|---|

Ms. Giuffre recently updated this response to include an additional URL containing defamatory content:

| January 8, 2015 | Internet | The Sun | https://www.thesun.co.uk/archives/news/6754/prince-andrews-pal-ghislaine-groped-teen-girls/?CMP=spklr-128508300-Editorial-TWITTER-TheSunNewspaper-20150108-News |
|---|---|---|---|

Spending hours trolling the Internet for additional examples of entities that have published Defendant's defamatory statements is not appropriate under Rule 26(b)(1), which takes into account "whether the burden or expense of the proposed discovery outweighs the likely benefit." Here, scouring the Internet for additional examples of the publication of the defamatory statements that are already known (and, illogically, for those that are unknown) is not an appropriate discovery request.

If Defendant would respond to Ms. Giuffre's requests, Ms. Giuffre would be able to answer this interrogatory in full. Only Defendant has access to a comprehensive list of her defamatory statements and of the outlets to which she distributed them. Indeed, as the Court knows from the documents it reviewed *in camera* and found were not privileged, Defendant and Dershowitz were regularly communicating regarding how best to attack Ms. Giuffre. Accordingly, the Court should deny Defendant's motion

## C.    Interrogatory No. 7

This interrogatory seeks a catalogue of all of defamatory statements made against Ms. Giuffre. This Interrogatory calls for a legal conclusion as to what statements constitute "defamation," and is, thus, improper, particularly as it is not limited to what has already been determined to be defamatory. Specifically, this interrogatory calls for Ms. Giuffre to search for

8

any statements made about her, throughout the internet and other sources, and determine whether or not they constitute defamation. Accordingly, this request is overly broad. *See* December 29, 2005 Discovery Order, *American Civil Liberties Union, et. al. v. Alberto R. Gonzales*, No. 98--5591, at p. 6 (E.D. Pa. Dec. 29, 2005) ("I find that interrogatory P is over-broad because it is not limited to speech defendant has already determined to be 'harmful to minors' under COPA but appears to command defendant to search for all speech over the entire internet and determine whether it is harmful to minors. As a result, defendant need not response to plaintiffs' interrogatory P."), at McCawley Decl. at Exhibit 2, for ease of reference.

Alan Dershowitz is the only other known person to defame Ms. Giuffre. As with Interrogatory No. 5, there is no way for Ms. Giuffre to know the full extent of Alan Dershowitz's defamation of her. She knows that he has called her a "prostitute" and a "bad mother" during his press conferences. *See* McCawley Decl. at Exhibit 3, Local 10 News article dated January 22, 2015. But, Ms. Giuffre does not know the full extent of Alan Dershowitz's defamation, nor has she conducted legal analysis regarding any such defamation.

Any party could attempt a Google search of such things to locate certain sources on the internet, but that is not what is contemplated by Rule 26(b)(1), Federal Rules of Civil Procedure, as such an exercise is unduly burdensome, and such information is well outside of Ms. Giuffre's possession, custody, and control. Moreover, only Alan Dershowitz (Defendant's joint defense partner) knows the comprehensive list of his defamatory statements and of the outlets to which he distributed them. Rule 26(b)(1) limits the scope of discovery based on an evaluation of "the parties' relative access to relevant information." As Dershowitz himself has admitted, he is actively involved with Defendant in this litigation. Defendant's access to this information relative to Ms. Giuffre's is unparalleled. It is unduly burdensome for Ms. Giuffre to troll the

internet for any instances of Dershowitz defaming her. He is not a party to this action. And, Ms. Giuffre's single count of defamation does not allege in facts in relation to Dershowitz. Accordingly, the Court should deny Defendant's motion.

### D.     Interrogatory No. 8

Defendant seeks a list of all the individuals to whom Epstein trafficked Ms. Giuffre. Under Local Rule 33.3 interrogatories "may only be served (1) if they are a more practical method of obtaining the information sought than a request for production or a deposition, or (2) if ordered by the Court." Defendant has already lit upon "a more practical method of obtaining the information sought." She asked Ms. Giuffre for this information in her deposition. Moreover, Dershowitz, Defendant's joint defense partner, asked for this information when he took her deposition, and Ms. Giuffre produced that deposition transcript to Defendant.

This request is redundant, as this information has already been sought and Ms. Giuffre responded to questions at her May 3, 2016, deposition. *See, e.g.,* May 3, 2016, Giuffre Dep. Tr. at 192-193, 200; 14; 191-193; 193-194; 201-202; 2020-203; 204; January 16, 2016, Giuffre Dep. Tr. at 15; 34; 50-51; 24; 41; 45; 51-54; 6; 38; 24-25; 18-19; 21; 61; 17-18; 20-21; 33; 18; 15-16; and 21.

### E.     Interrogatory No. 13

####     1.     Ms. Giuffre Has Answered Interrogatory No. 13 Completely

As discussed above, Defendant's entire motion violates Local Rule 37.1, but she does so most egregiously here. This interrogatory seeks Ms. Giuffre's health care provider for any physical, mental, or emotional condition, prior to the Defendant's defamation. Defendant does not include Ms. Giuffre's hard-won and fulsome answer, which includes a bevy of providers going back many years. The reason for Defendant's Rule violation with regard to this

interrogatory is quite obvious, and done in bad faith. Ms. Giuffre listed every physician known to her. The list is extensive. It looked like this:

"Health Care Providers known to Ms. Giuffre who may have provided treatment subsequent to the defamation are as follows[4]:

- **Dr. Steven Olson**, ████████████████████████████
  ████████████████████████████████████
  ████████████████████████████████
  ████████████████████████

- **Dr. Chris Donohue**, ████████████████████████
  ████████████████████████████████████
  ████████████████████████████████
  ████████████████████

- **Dr. Peter Del Mar**, ████████████████████████
  ████████████████████████████████████
  ████████████████████████████████████

- **St. Thomas More Hospital**, ████████████████
  ████████████████████████████████████
  ████████████████████████████████
  ████████████████████████████████████
  ████████████████████████████████████
  ████████████████████

- **Ms. Judith Lightfoot**, ████████████████████
  ████████████████████████████████████
  ████████████████████████████████
  ████████████████████████████

---

[4] Health care providers known to have provided treatment both prior to and subsequent to Defendant's January 3, 2015 defamation of Ms. Giuffre are listed in the supplemental responses for both Interrogatories 12 and 13. There may be additional crossover of providers that have treated Ms. Giuffre prior to the defamation, listed in the supplemental response to Integratory 13, who also provided treatment subsequent to the defamation. Ms. Giuffre reserves the right to revise, amend, and supplement her response to Interrogatory No. 12 with providers listed in her supplemental response to Interrogatory 13 if and when she becomes aware of any additional crossover.

11

- **Medicare Australia** ██████████████████████████
██████████████████████████████████████
████████████████████

- **Dr. Rauf Yousaf,** ████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
██████████████████

- **CVS Pharmacy** ████████████████████████████
███████████████████████████████████
██████████████████████

- **Walgreens Pharmacy** ████████████████████████
██████████████████████████████████
██████████████████

"Health Care Providers known to Ms. Giuffre who may have provided treatment prior to

the defamation are as follows[5]:

- **Dr. John Harris** ███████████████████████████
████████████████████████████████████
██████████████████████████████████████
████████████████████████████████
████████████████████████████████████████
████████████████████████████
██████████████████████

- **Dr. Darshanee Majaliyana** ██████████████████
████████████████████████████████████████
███████████████████████████████████
████████████████████████

- **Dr. K. L. Lee** ████████████████████████████
████████████████████████████

---

[5] Health care providers known to have provided treatment both prior to and subsequent to
Defendant's January 3, 2015 defamation of Ms. Giuffre are listed in the supplemental responses
for both Interrogatories 12 and 13. There may be additional crossover of providers that have
treated Ms. Giuffre subsequent to the defamation, listed in the supplemental response to
Integratory 12, who also provided treatment prior to the defamation. Ms. Giuffre reserves the
right to revise, amend, and supplement her response to Interrogatory No. 13 with providers listed
in her supplemental response to Interrogatory 12 if and when she becomes aware of any
additional crossover.

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████

- **Dr. M. Sellathurai** ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

- **Dr. Carol Hayek,** ████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

- **Dr. Ahmed El Moghazi,** ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

- **Dr. Stephen Edmond,** ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████

- **Campbelltown Hospital,** ████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

- **Westmead Hospital,** ████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████

- **Ms. Judith Lightfoot,** ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

- **Royal Oaks Medical Center,** ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

- **Dr. Mona Devanesan**, ██████████████████████████
  ███████████████████████████████████
  ███████████████████████████████████
  █████████████████████████████████
  ██████████████████████████████████
  ███████████████████

- **Dr. Karen Kutikoff** ████████████████████████
  ███████████████████████████████████
  █████████████████

- **Wellington Imaging Associates** ████████████████
  ███████████████████████████████████
  ███████████████████

- **Dr. Ranjit Thind**, ███████████████████████████
  █████████████████████████████████████
  ████████████████████

- **Medicare Australia** ████████████████████████
  █████████████████████████████████
  ███████████████████

- **Dr. Wah Wah San**, ██████████████████████████
  ███████████████████████████████████
  ██████████████████████████████████
  ████████████████████

- **CVS Pharmacy** ██████████████████████████
  ███████████████████████████████████
  ███

- **Walgreens Pharmacy** ███████████████████████
  ██████████████████████████
  █████████████



---

[6] In addition, counsel for Ms. Giuffre made multiple phone calls to potential medical records custodians in and attempt to locate Dr. Kutikoff's records. These efforts were unsuccessful.
[7] On information and belief, this occurred after 1999 and prior to the January 3, 2015 defamation. Based on the uncertainty of the exact date, Ms. Giuffre reserves the right to revise, amend, and supplement her responses to Interrogatories 12 and 13.
[8] Records from Medicare Australia are generally limited to 3 years. Ms. Giuffre is continuing to pursue additional records from prior to July 19, 2013 through their offices in Australia.
[9] Ms. Giuffre has now identified Dr. Wah Wah San and Dr. Wah San to be the same provider to the best of her knowledge. She had previously listed both names.

Additionally, since Ms. Giuffre served this answer, she has learned of three other physicians who may have treated her, and have served Defendant with that information:

- **Dr. Timothy D. Hartwig, D.O.**was identified in records produced by CVS pharmacy. Ms. Giuffre has requested those records, *see* GIUFFRE008346-8348.

- **Dr. James T. Nichols, M.D**. was identified in records produced by CVS pharmacy. Ms. Giuffre has requested those records, *see* GIUFFRE008349-8351.

- **Dr. Rodolfo Torres Jr., M.D.** was identified in records produced by CVS pharmacy. Ms. Giuffre has requested those records, *see* GIUFFRE008352-8354.

Local Rule 37.1 exists for a reason. These answers are nowhere in Defendant's brief. Ms. Giuffre is not withholding any medical records after 1999, including her pediatric records. The Court should deny Defendant's request.

> 2.   <u>This Court Has Already Ruled Against Defendant on Pre-1999 Medical Records, so Defendant is Estopped From Bringing This Argument regarding Interrogatory No. 13</u>

Defendant makes another argument bad faith. Defendant tries to argue - to the very Court that held otherwise - that medical records are discoverable prior to 1999. That is false. That was not the Court's holding. The Court already, and specifically, rejected Defendant's argument:

MS. MENNINGER:  Your Honor, the next topic are plaintiff's medical records.

THE COURT:  I think I understand that. There is one thing, though. Are there any pre '99 medical records?

MS. MENNINGER:  Your Honor, the case law is quite clear that injuries that were preexisting --

THE COURT:  I'm sorry. Excuse me. Go ahead.

MS. MENNINGER:



15



THE COURT:  What's the basis of your statement that we will call it the flashback?

MS. MENNINGER:  Your Honor, I believe --

THE COURT:  Because, quite frankly, I was unaware of that. Is that my error?  Are you telling me something that's not quite right?

*** 

THE COURT: . . . The medical records of the period '99 to 2002 will be produced and the plaintiff will indicate whether that production is complete or, if it isn't complete, when it will be complete.

As for the pre-'99 medical records, based on where we are at the moment, I do not believe that those are relevant. Because the damage issue relates, in my view, solely to the defamation. If that changes in any way, I will revisit that issue.

April 21, 2106 Hr. Tr. at 11:15-12:25; 20:17-25.

Nothing since the hearing has changed. Ms. Giuffre has not added a claim or a new category of damages or made any representations concerning her pre-1999 medical history. The Court has heard Defendant's argument, and correctly rejected it. Defendant puts forth no new argument or facts that should disturb this ruling.

Defendant tries to argue that she only wants the "names" of the physicians, and not the records. This argument is fatally flawed. The names of Ms. Giuffre's physicians are necessarily part of her medical records. Additionally, the identity of a physician's name also gives information regarding the type of medical treatment Ms. Giuffre received, particularly if that physician is specialist or works within a certain field.

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████ The tail is already wagging the dog regarding Ms. Giuffre's search for, and production of, her medical records from 1999 to the present, the overwhelming majority of which are not at all relevant to this defamation case. Again, this Court held that Ms. Giuffre does not have to disclose her pre-1999 medical records, and Defendant gives no reason to disturb that ruling. Defendant is thus estopped from making this argument.

        3.    <u>Interrogatory No. 13 is Disallowed Under New York Law</u>

████████████████████████████████████████████

███████████████████████████████████████████ Being granted some medical discovery is not unlimited under New York law. *See, e.g., Manessis v. New York City Dep't of Transp.*, No. 02 CIV. 359SASDF, 2002 WL 31115032, at *2 (S.D.N.Y. Sept. 24, 2002) (concluding that "ability to pursue discovery regarding [plaintiff's] medical records should be limited in some manner"); *Evanko v. Electronic Systems Assoc., Inc.*, No. 91 Civ. 2851, 1993 WL 14458 at *2 (S.D.N.Y. Jan. 8, 1993) (applying the New York state physician-patient privilege, and **holding that where plaintiff claimed that she suffered emotional distress, defendants did not have "a license to rummage through all aspects of the plaintiff's life in search of a possible source of stress or distress," including plaintiff's medical records**) (emphasis added); *Wachtman v. Trocaire College*, 532 N.Y.S.2d 943, 944 (N.Y. App. Div. 1988) (holding that the scope of a waiver of the physician-patient privilege in personal injury cases is "limited and does not permit discovery of information involving unrelated illnesses and treatment"). Even in a personal injury action (as opposed to a defamation action), the opposing party does not have carte blanche access to all medical records. *See Sgambellone v.*

*Wheatley*, 165 Misc.2d 954, 958, 630 N.Y.S.2d 835, 838 (N.Y. Sup.Ct. 1995) (holding that in a personal injury action, ***plaintiff's waiver of the physician-patient privilege "is not a wholesale waiver of all information about the plaintiff's entire physical and mental conditions but a waiver only of the physical and/or mental condition that is affirmatively placed in controversy***").

        4.     <u>Interrogatory No. 13 is Overly Burdensome</u>

Defendant's request for Ms. Giuffre's pediatric medical records is also overly burdensome. Pursuant to the Federal Rules of Civil Procedure, if requested documents are not yielded in a "reasonable inquiry," Ms. Giuffre is not obligated to expend all of her time and resources on a quest to gather medical files from her birth to the present. Defendant wrongly suggests that it is only burdensome because her "mental condition was so complex or required so much medical attention that it would be unduly burdensome for her to 'track down' all her medical providers." This is mere fiction, like much of Defendant's brief, but even Defendant's fictitious argument cuts against her request: she admits it is burdensome. At any rate, Ms. Giuffre made no such claim about the nature of the burden. It is one thing for Defendant to argue the law, but it is improper to make up facts. Ms. Giuffre's claim of burden is based on the fact that it is burdensome for anyone to track down pediatric medical records from one's childhood because such records are hard if not impossible to find. Like all children, as a child, Ms. Giuffre was not responsible for seeking, arranging, paying for, or managing her health care. She does not remember any physicians or their names or any treatments.[10] There is no practicable or non-burdensome way of obtaining that information. This Court already denied this request for good reason.

---

[10] Ms. Giuffre has provided pediatric records that she was able to collect from the time period she was with Defendant an Epstein including an emergency hospital visit when Ms. Giuffre was underage that Defendant and Epstein took her to in New York City.

Defendant's request for pediatric records is also overly-broad because, as this Court correctly noted, Ms. Giuffre is not seeking damages based on anything prior to Defendant abusing her. Defendant has told the Court that before she was sexually trafficked her as a minor, Tellingly, Defendant does not state upon what basis she makes the claim that they are relevant, nor does she say what relevance it has on Defendant's defamation of her in 2015. Of course, Defendant has no supporting case law.

Finally, Ms. Giuffre does not allege that she was trafficked by Defendant in 1999. Through discovery, Ms. Giuffre has been able to obtain documents that established that Defendant trafficked her starting in the summer 2000. Ms. Giuffre was 16 until August 9 of 2000, and was 17 thereafter. Defendant seems to think that it is much better, or even excusable to traffic a 16 or 17 year old than a 15 year old. Maxwell Dep. Tr. 33:3-4 (April 22, 2016) ("Virginia Roberts who your [sic] are referring to was a masseuse aged 17"). *See* McCawley Dec. at Exhibit 4. Of course, like the other young girls they abused, Ms. Giuffre was not a massage therapist.[11] Despite Defendant's view that being a older than 15 is fine for massaging her convicted pedophile boyfriend, the law makes it illegal to traffic humans at any age; particularly when they are children under the age of 18.

      5.    The Physician-patient Privilege Applies to Information sought by Interrogatory No. 13

The physician patient privilege most certainly applies to an individual's pediatric medical records. The identity of a physician's name also gives information regarding the type of medical treatment Ms. Giuffre received, particularly if that physician is specialist. Defendant cites no case law whatsoever in her argument that no privilege applies to this information.

---

[11] *See* McCawley Decl. at Exhibit 5, Recarey Dep. Tr. at 125:16-23 ("Q. Did you ever ascertain whether or not FP had any formal training in massage therapy? THE WITNESS: She did not. ***None of the high school girls that I interviewed or anyone under the age of 18 had any formal massage training***.")

Defendant says that Ms. Giuffre's claim of medical damages somehow necessitates Defendant having access to Ms. Giuffre's childhood medical records. This argument is without merit. As Defendant knows, as was explained in detail in Ms. Giuffre's Rule 26 disclosures, Ms. Giuffre's claim of damages relates to the harm she suffered by being publically defamed by Defendant, who was also her abuser. Defendant has no case law to back up the claim that Ms. Giuffre's childhood records are necessary for any category of damages; therefore, it should be denied.

**F.    Interrogatory No. 14**

Defendant asks for a list of all of the people who have subjected Ms. Giuffre to sexual abuse prior to 1999. This request is plainly harassing, and covers sexual abuse Ms. Giuffre experienced in the years prior to turning 16.

**1.    This Discovery sought in Interrogatory No. 14 is Barred by FRE 412**

This discovery is not relevant as this evidence is barred under Federal Rule of Evidence 412, which applies to civil cases. Defendant's argument under Federal Rule Evidence 412 is completely misplaced. The Rule absolutely applies in this defamation action. Defendant cannot show evidence of a child being raped in order to show that her defamatory statements are untrue or did not harm Ms. Giuffre's reputation. Such an argument is unsupported by case law, and Defendant cites to none. Defendant defamed Ms. Giuffre when she was thirty-one years old. There is no way that Defendant can make a credible argument that someone raping Ms. Giuffre when she was 14 somehow affects the truth of Defendant's 2015 defamatory statements. Nor can the rape of a child prove an absence of damage to Ms. Giuffre's reputation as an adult. Indeed, Defendant is wrongfully attempting to publicize the fact that Ms. Giuffre was raped as a 14 year old (See Motion for Protection Order DE 335). Neither logic nor case law support this position.

This request is particularly improper as it cannot conceivably lead to admissible evidence. While Federal Rule of Civil Procedure 26 controls the limits of discovery, FRE 412 informs discovery over the boundaries of the proper inquiry into an alleged sexual assault victim's sexual conduct and history. *Silva v. Pioneer Janitorial Servs., Inc.*, No. CIV.A. 10-11264-JGD, 2011 WL 4729783, at *1 (D. Mass. Oct. 4, 2011). *See also Gibbons v. Food Lion, Inc.*, No. 98–1197–CIV–T–23F, 1999 WL 33226474, at *2 (M.D. Fla. Feb.19, 1999) (stating that a majority of courts that have considered whether Fed. R. Evid. 412 is applicable to discovery "have found that Rule 412 has significance in the resolution of a discovery dispute").

"As explained in the Advisory Committee Notes regarding the 1994 amendments to Rule 412, '[t]he rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process.' Moreover, although the Advisory Committee Notes acknowledge that the procedures set forth in the Rule for determining the admissibility of evidence relating to an alleged victim's past sexual conduct or predisposition do not apply to discovery, they nevertheless provide as follows:

> In order not to undermine the rationale of Rule 412 ... courts should enter appropriate orders pursuant to Fed. R. Civ. P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality. Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery. In an action for sexual harassment, for instance, while some evidence of the alleged victim's sexual behavior and/or predisposition in the workplace may perhaps be relevant, non-workplace conduct will usually be irrelevant."

*Silva*, 2011 WL 4729783, at *1. (emphasis added). Accordingly, Ms. Giuffre objects to this request based on the Federal Rules of Evidence and prevailing case law applying such Rules.

    2.    <u>Interrogatory No. 14 is Propounded for Improper Purposes and Harassment</u>

Interrogatory No. 14 seeks information concerning Ms. Giuffre being sexually abused as a child.  It is worth recalling that this request is being propounded by Defendant, who sexually abused Ms. Giuffre as a child. The purpose of this request appears to be nothing other than harassment. Defendant is not entitled to a full-scale production of everything that has happened to Ms. Giuffre through the entire course of her life time, particularly with regard to events that clearly predate Defendant's meeting and abusing Ms. Giuffre. A victim of sexual abuse should not be re-abused by having to disclose to one of her abusers (plus all the abusers who are her joint defense partners, including Jeffrey Epstein) details of other childhood sexual abuse.

This Court's Protective Order allows convicted pedophile Jeffrey Epstein to see all discovery in this case, even that marked confidential. The discovery sought here is not pertinent to any issue in the case and would merely serve to feed Defendant Maxwell and Jeffrey Epstein's prurient and continued interest her.

It has become increasingly clear that Defendant's counsel is seeking these documents for the improper purpose of harassment.  Ms. Giuffre was only 14 years old at the time of the sexual assault.  Yet Defendant's responses to Ms. Giuffre's interrogatories shockingly called this child victim of sexual abuse a "sexually permissive woman." (Defendant's Response to Plaintiff's First Set of Interrogatories). This blame-the-victim strategy is ironic for two reasons. First, Ms. Giuffre was a minor child, not a "woman," when Defendant sexually abused her. Second, it was Defendant and Mr. Epstein who trafficked her to other individuals - therefore, it was Defendant and Mr. Epstein's "permission" given to others to use Ms. Giuffre's sexually. In any event, Defendant can have no legitimate purpose for this discovery.

        3.    <u>Interrogatory No. 14 Seeks Irrelevant Information</u>

Furthermore, discovery concerning Ms. Giuffre's prior sexual assault is not relevant to the claim at issue in this case, the defenses at issue, or the damages claimed, and therefore well

outside the scope of discovery permitted by Fed. R. Civ. P. 26. Specifically, Ms. Giuffre's sexual abuse as minor child neither proves nor disproves Defendant and Epstein's sexual abuse; therefore, it is not within the scope of discovery permitted by Fed. R. Civ. P. 26, particularly since the December 1, 2015, amendments to the Rule. "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Engaging in discovery on such irrelevant, but painful, topics would be extraordinarily embarrassing, oppressive, and traumatic for Ms. Giuffre, and it is wholly irrelevant to any party's claim or defense. Accordingly, such discovery is not sought in good faith.

Additionally, to the extent that it is available to Ms. Giuffre, all of this information is already in the possession of Maxwell as she obtained and produced police reports regarding Ms. Giuffre, which Ms. Giuffre did not have in her possession. Ms. Giuffre was also questioned for seven hours in her May 3, 2016, deposition by Defendant's attorney.

4.     <u>Sexual Assault Records are Records a Medical Event, and Are Barred by This Court's Order - Discovery Related to Interrogatory No. 14 is Inappropriate</u>

Moreover, this Court has excluded the production of medical records from prior to 1999, stating, "the damage issue relates, in my view, solely to the defamation." (April 21, 2016, Hearing Transcript at 20:23-24). This holding applies equally to pre-1999 sexual assault records for two reasons. First, sexual assault is not only a crime, but a physical injury, and an injury for which medical treatment is often needed and for which a forensic medical exam is often

performed. Accordingly, any documentation of sexual assault is necessarily akin to a medical

record, and, therefore, precluded under the Court's April 21, 2016 Order.

     5.     Information Sought in Interrogatory No. 14 related to Ms. Giuffre's
          Sexual Abuse is Protected by Florida Statutes

     Finally, this abuse took place in Florida, and information relating to those events is

protected from disclosure by law. Florida statutes protect "[a]ny information in a videotaped

statement of a minor who is alleged to be or who is a victim of sexual battery . . . which reveals

that minor's identity." Fla. Stat. § 119.071. Additionally, Fla. Stat. § 985.036 protects records

where a juvenile is a victim of a crime. Further, Fla. Stat § 794.026 creates a civil right of action

against an individual who communicates to others, identifying information concerning the victim

of a sexual offense. Additionally, Second, Fla. Stat. § 985.04 and Fla. Stat. § 985.054 make

juvenile law enforcement records confidential from members of the public, and states that

information obtained by a law enforcement agent participating in the assessment of a juvenile is

confidential. Finally, certain of the police reports implicate Ms. Giuffre's involvement with the

Florida Department of Children and Families, see e.g., GM_00750, and if such reports are part of

the State's Department of Children and Families' records, they are confidential pursuant to Fla.

Stat. § 39.202(6).

     While Defendant, a sex abuser of minors, says that the Protective Order is all the privacy

Ms. Giuffre needs regarding being raped as a 14 year old, Federal Rules of Civil Procedure,

Federal Rules of Evidence, Florida statutes, and case law say otherwise. Indeed, Defendant is

engaging in double-speak on the Protective Order: her joint defense partner Alan Dershowitz is

attempting, through his baseless motion to intervene, to challenge the confidential designations

of various documents in the case, and strip away the Protective Order's protections. Finally,

Defendant incorrectly states "[n]one of this illegal or inappropriate sexual contact, conduct or

assault is within the right to privacy." Defendant cites no case law or statutes to back this up. Of course, the opposite is true, as evidenced by the statutes and case law cited above.

      6.     <u>Defendant Makes Misrepresentations to the Court regarding Interrogatory No. 14</u>

Defendant wrongly states, in the public record, there is "an abundance of evidence suggesting that well before she met Ms. Maxwell, Plaintiff had engaged in illegal sex activities or falsely claimed she was the victim of illegal sex activities." This is a lie. There is evidence that Ms. Giuffre was raped as a child and there is evidence that she was abused as a child. There is no evidence that Ms. Giuffre did anything illegal sexually and there is no evidence that she "falsely claimed" she was raped. It is an old story to discredit the victim of sexual abuse by lying about and using that victim's sexual past. *See* "Rape and the Culture of the Courtroom," by Andrew Taslitz (1999). Federal Rule of Evidence 412, and all the rape shield laws, were erected to forbid this inappropriate tactic. *Id*. With no self-reflection, Defendant asserts that she is seeking documents relating to Ms. Giuffre's sexual activities as a child "whether she was a willing participant." However, the time-frame on this request was before Ms. Giuffre' could possibly be a "willing participant," because she was well under the age of consent.

      7.     <u>Defendant Has Violated the Court's Protective Order (DE 62) in Her Argument Concerning Interrogatory No. 14</u>

Defendant's statements about Ms. Giuffre "falsely claiming" to be a victim constitute a misrepresentation to the Court, and it is violation of the Protective Order. Ms. Giuffre has designated police reports concerning her rape as a fourteen year old to be confidential under the Protective Order. In contravention of that Order and in contravention of Ms. Giuffre's designation, Defendant put that in the public realm by her filing DE 354, which did not redact this information. This Court should sanction Defendant for such behavior.

IV.    **PLAINTIFF'S ANSWERS TO DEFENDANT'S REQUESTS FOR ADMISSIONS ARE NOT DEFICIENT AND DEFENDANT'S MOTION SHOULD BE DENIED**

Before rebutting Defendant's unsupported arguments, she notes for the Court that for 27 out of 33 answers to Request for Admission Ms. Giuffre served upon Defendant, Defendant began her answer with the phrase, "Denied in Part." Now, Defendant complains that Ms. Giuffre used the same phraseology in response to some of Defendant's Requests for Admission. Such a complaint is unfounded.

A.    **Requests for Admission Nos. 1-8 and 13**

At the time of filing the Complaint, to the best of her recollection, Ms. Giuffre recollected that she met Defendant in the summer 1999 when she was working at Mar-a-Lago, a club in Palm Beach, Florida. Based on documents produced pursuant to litigation, Ms. Giuffre has learned that, instead, she met Defendant at the Mar-a-Lago club in 2000. During the summer of 2000, Ms. Giuffre was 16 until August 3, when she turned 17. Accordingly, Ms. Giuffre has learned that she did not meet Defendant when she was 15, but, rather, likely at 16. Either way, Ms. Giuffre was indisputably a minor when Defendant recruited her to have sex with convicted pedophile Jeffrey Epstein, with whom Defendant shared a household. Thereafter, Ms. Giuffre flew on Epstein's private jets with over Defendant 23 times while she was a minor.

Defendant makes much ado that she recruited a 16 or 17 year old for sex with Epstein rather than a 15 year old, and makes much ado over Ms. Giuffre's mistaken memory. Ms. Giuffre did not attend middle school or high school in a linear fashion, nor did she have any continuity of residence during those years. Instead, Ms. Giuffre's middle school and high school years were tumultuous. Based on her Palm Beach County, Florida records, it appears that, according to those records, for the 1993-1994 school year, when Ms. Giuffre's was 10, Ms.

Giuffre attended fifth grade in Florida, at the Loxahatchee Elementary School.[12] However, for the 1994-1995 and the 1995-1996 school years, there are no records.[13] Indeed, it appears that for the 1996-1997 school years, when she was 13, Ms. Giuffre attended Crestwood Middle School, but was only present, at most, 40 days of the 180-day school year.[14] For the 1997-1998 school years, when Ms. Giuffre was 14, it appears she attended Royal Palm Beach High School, but was absent 33 days, failed the grade, and had to repeat it. It is unsurprising that school year had so many absences and lack of academic standing: when she was 14 years old, she was raped.  In both January and February of that school year, she was reported missing by her mother. GM_000752-754; GM_00783. Later in February, Ms. Giuffre was the victim of sexual assault. GM_00756-758; GM_00759; GM_00766.

Ms. Giuffre has no records for the following school year. For the 1998-1999 schoolyear, records show that when Ms. Giuffre was supposed to be repeating 9th grade, Ms. Giuffre was absent at least 25 days. GM_00888. After 9th grade, Ms. Giuffre doesn't continue school. In, the next schoolyear, from 1999-2000, the transcript first reflects that there were no courses taken in 1999, and starting in June of 2000, the transcripts reflects a "Grade 30" school code. "Grade 30" means that Ms. Giuffre was supposed to be on a GED course plan. GM_00888; 00893.  After that, flight logs show, and Epstein's pilot testified, that Ms. Giuffre was on 44 flights on Epstein's jet, *before she turned 18*, flying all over the country and internationally. During this time period, according to school records, Ms. Giuffre  attended school for, at most, 13 days at Royal Palm Beach High School (GM_0888) for 10th grade, then spent, at most, possibly 56 days at Survivor's Charter school (out of a 180 day school year). (GM00888). Ms. Giuffre then was

---

[12] *See* McCawley Decl. at Sealed Exhibit 6, School Records, GM_00888.
[13] *Id*.
[14] *Id*. GM_00888.

back with Defendant and Epstein, and went on five more flights on Epstein's plane before finally escaping abroad.

Accordingly, the records and testimony in this case establish that Ms. Giuffre had no continuity of education or residence or other markers that normally anchor specific events in time for a high schooler. Instead, she attended multiple schools sporadically, she was sexually assaulted at 14, she ran away from home multiple times, and then ended up being abused by Defendant and Epstein, traveling all around. It is not surprising that Ms. Giuffre had trouble identifying specific calendar dates.

At any rate, in compliance with Rule 36(a)(4), Ms. Giuffre stated which part of the statement she denies. She denies statements involve her age. She was not 15, but 16, turning 17 in August the summer she was trafficked by Defendant and when she met Epstein. She was sexually trafficked as a minor child by Defendant and Epstein; she did celebrate one of her teenage birthdays with Defendant; Defendant did tell her that she would soon be too old for [convicted pedophile] Jeffrey Epstein's taste; she did work at Mar-a-Lago the summer of 2000 when she was a minor; she did work for Epstein from 2000-2002. Ms. Giuffre will not deny those parts of Defendant's requests for admission; and she did see recall seeing Al Gore during the time she was with Epstein and Defendant.

### B.    Requests for Admission Nos. 12

Ms. Giuffre's objection to Request for Admission No. 12 is correct pursuant to Rule 36(a)(5), Fed. R. Civ. P.[15]  Rule 36(a)(5) states "[t]he grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial." Ms. Giuffre's objections are compliant with this Rule. Here, Defendant has made up a

---

[15] Again, in violation of Local Rule 37.1, Defendant omits the case law that Ms. Giuffre put forth in support of her objection.

fictitious scenario and asks Ms. Giuffre to admit or deny it. This fictitious scenario is not something that Ms. Giuffre has ever alleged. As stated in the objection, Defendant has interposed and comingled facts which comprise the foundation of this request for admission. Specifically, Ms. Giuffre has never alleged that "she had a conversation with Bill Clinton regarding him flying with Ghislaine Maxwell in a helicopter." Instead, Ms. Giuffre has been quoted by a reporter as saying, "I flew to the Caribbean with Jeffrey and then Ghislaine Maxwell went to pick up Bill [Clinton] in a huge black helicopter that Jeffrey had bought her." Sara Nathan, Bill Clinton Pictured with Jeffrey Epstein's Social Fixer, Daily Mail, (12 January 2015).

As a threshold matter, a court must determine whether the statements set forth in a request for admissions satisfy the formal requirements of Rule 36: "(e)ach request for admissions must be direct, simple and 'limited to singular relevant facts,'" *United States v. Consolidated Edison Co.*, 1988 WL 138275 (E.D.N.Y. [Dec. 15, 1988] ) (quoting *S.E.C. v. Micro–Moisture Controls*, 21 F.R.D. 164, 166 (S.D.N.Y.1957)), so that "it can be admitted or denied without explanation." [8 C. Wright & A. Miller,] Federal Practice and Procedure, § 2258 [(1970)]. A request "should not state 'half a fact' or 'half-truths' which require the answering party to qualify responses." *Havenfield Corp. v. H & R Block, Inc.*, 67 F.R.D. 93, 96–97 (W.D.Mo.1973); Dubin, 125 F.R.D. at 375–76. *See also Thalheim v. Eberheim*, 124 F.R.D. 34, 35 (D.Conn.1988) (court must consider phraseology of requests as carefully as that of answers or objections).

At the end of the day, in making a determination under Rule 35(a)(5), "the Court is reminded that ***the 'purpose of the rule is to reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact.***'" *Spin Master Ltd. v. Bureau Veritas Consumer Products Service, Inc.*, 2016 WL 690819, at *18 (W.D.N.Y., 2016)

(emphasis added), quoting *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc.*, 174 F.R.D. 38, 43 (S.D.N.Y. 1997). Admitting or denying this statement does not eliminate the necessity of proving facts, as this is not a fact in dispute. It does not narrow the scope of disputed issues. It does not facilitate the presentation of the case to the trier of fact. Admitting or denying this request for admission no more furthers the case than asking Ms. Giuffre, for example, to admit or deny that the sky is green. Ms. Giuffre has made neither statement - therefore, it is outside the scope of requests for admission.

Of course, what Defendant is attempting with this request for admission is obvious. Defendant has made up a scenario Ms. Giuffre never claimed to have happened in order to induce her to deny it, so that Defendant can, later, falsely claim to a jury that Ms. Giuffre lied about the scenario. The Court should not countenance this type of blatant gamesmanship. Accordingly, Ms. Giuffre had objected to answering this request for admission as it is based on "half-truths," which make it impossible to answer without a qualified response.

## V.   PLAINTIFF'S RESPONSES TO DEFENDANT'S OVERLY BROAD REQUESTS FOR PRODUCTOIN ARE COMPLIANT WITH HER DISCOVERY OBLIGATIONS UNDER THE APPLICABLE RULES AND DFEENDANT'S MOTION SHOULD BE DENIED

### A.   Request for Production No. 1

Defendant puts forth no case law in support of her motion to compel Request No. 1. Request No. 1 seeks "[a]ll communications and documents identified in Interrogatories 5-14, above. Again, in violation of Local Rule 37.1, Defendant fails to tell the Court what those interrogatories are. The Court should know that Defendant's Interrogatories 5-14 are as follows:

> 5.   Identify each Communication that You or Your Attorneys have had with any author, reporter, correspondent, columnist, writer, commentator, investigative journalist, photojournalist, newspaper person, freelance reporter, stringer, or any other employee of any media organization or independent consultant to the same, including:
> a.   the date of any such Communication;

b.    the form of any such Communication, whether oral or written and if written, the format of any such Communication;

c.    the identities of all persons involved in such Communication, including, the identity of the media organization with whom the agent is or was affiliated;

d.    the article title, date of publication, and means of publication of any article, report, or re-printing of any such Communication made by You or Your Attorneys;

e.    the amount of Income that You and/or Your Attorneys received in exchange for any such Communication;

f.    the dates on which You and/or Your Attorneys received any such Income for any such Communication.

6.    Identify any "false statements" attributed to Ghislaine Maxwell which were "published globally, including within the Southern District of New York" as You contend in paragraph 9 of Count I of Your Complaint, including:

a.    the exact false statement;

b.    the date of its publication;

c.    the publishing entity and title of any publication containing the purportedly false statement;

d.    the URL or internet address for any internet version of such publication; and the nature of the publication, whether in print, internet, broadcast or some other form of media.

7.    State whether You believe that You have ever been defamed by anyone other than Ghislaine Maxwell. If so, as to each alleged act of Defamation, state

a. the exact false statement;

b.    the date of its publication;

c.    the publishing entity and title of any publication containing the purportedly false statement;

d.    the URL or internet address for any internet version of such publication; and

e.    the nature of the publication, whether in print, internet, broadcast or some other form of media.

8.    Identify the individuals referenced in Your pleadings filed in the U.S. District Court for the Southern District of Florida, Jane Doe I and Jane Doe 2 v. United States of America, 08-cv-80736-KAM, as the "high-profile non-party individuals" to whom Mr. Jeffrey Epstein sexually trafficked You, "including numerous prominent American politicians, powerful business executives, foreign presidents, a well-known Prime Minister, and other world leaders," including as to each episode of alleged sexual trafficking:

a.    the date of any such sexual trafficking;

b.    the location of any such sexual trafficking;

c.    any witnesses to any such sexual trafficking;

d.    any Income You received in exchange for such sexual trafficking; and

31

e.      any Documents You have to support or corroborate Your claim of such sexual trafficking.

9.      Identify any Employment You have had from 1996 until the present, including without limitation, the name of Your employer or the name of any Person who engaged You for such Employment, the address and telephone number for any such Employment, the beginning and ending dates of any such Employment, Your job title in such Employment, and Your Income from such Employment.

10.     Identify any Income from any source other than Your Employment that You have received from January 1, 1996 until the present, including the Person or entity providing such Income, the amount of the Income, the dates on which any such Income was received, and the nature of the Income, whether a loan, investment proceeds, legal settlement, asset sale, gift, or other source.

11.     Identify any facts upon which You base Your contention that You have suffered as a result of the Alleged Defamation by Ghislaine Maxwell "past and future lost wages and past and future loss of earning capacity and actual earnings – precise amounts yet to be computed, but not less than $5,000,000."

12.     Identify any Health Care Provider from whom You received any treatment for any physical, mental or emotional condition, that You suffered from subsequent to any Alleged Defamation by Ghislaine Maxwell, including:
a.      the Health Care Provider's name, address, and telephone number;
b.      the type of consultation, examination, or treatment provided;
c.      the dates You received consultation, examination, or treatment;
d.      whether such treatment was on an in-patient or out-patient basis;
e.      the medical expenses to date;
f.      whether health insurance or some other person or organization or entity has paid for the medical expenses; and
g.      for each such Health Care Provider, please execute the medical and mental health records release attached hereto as Exhibit A.

13.     Identify any Health Care Provider from whom You received any treatment for any physical, mental or emotional condition, including addiction to alcohol, prescription or illegal drugs, that You suffered from prior to the Alleged Defamation by Ghislaine Maxwell, including:
a.      the Health Care Provider's name, address, and telephone number;
b.      the type of consultation, examination, or treatment provided;
c.      the dates You received consultation, examination, or treatment;
d.      whether such treatment was on an in-patient or out-patient basis;
e.      the medical expenses to date;
g.      whether health insurance or some other person or organization or entity has paid for the medical expenses; and

h.     For each such Health Care Provider, please execute the medical and mental health records release attached hereto as Exhibit A.

14.    Identify any Person who You believe subjected You to, or with whom You engaged in, any illegal or inappropriate sexual contact, conduct or assault prior to June 1999, including the names of the individuals involved, the dates of any such illegal or inappropriate sexual contact, conduct or assault, whether Income was received by You or anyone else concerning such event, whether a police report was ever filed concerning such event and the outcome of any such case, as well as the address and location of any such event.

Regarding documents related to **Interrogatory No. 5**, as described above, Ms. Giuffre has already produced her communications with the media, and a request for communications among her counsel and the media is overly-broad to the point of total impracticality and absurdity. Therefore, this request should be denied.

Regarding documents related to **Interrogatory No, 6**, Ms. Giuffre has already produced documents (or world-wide-web links to documents) in which Defendant has defamed her. Any more exhaustive search of the internet for additional documents, is not something contemplated by the Local Rules. Additionally, Ms. Giuffre has no documents related to any other defamation of Ms. Giuffre Defendant may have caused. Therefore, there is nothing further to "compel," and this request should be denied. Defendant should be producing this responsive material, not Ms. Giuffre.

Regarding documents related to **Interrogatory No. 7**, Ms. Giuffre does not have documents relating to other's defamation of her. She knows of a few statements made by Alan Dershowitz, but causing Ms. Giuffre to go through a time-consuming, burdensome, and, frankly, emotionally upsetting, exercise of searching around for whatever else he may have said is outside the scope of Rule 26, as discussed above, particularly as Ms. Giuffre has not based any part of her claim off of those statements. Accordingly, this request should be denied.

Regarding documents related to **Interrogatory No. 8**, seeking all documents relating to individuals to whom Ms. Giuffre was trafficked, Ms. Giuffre has already produced the documents in her possession. She has produced the photo of her when she was 17, taken inside Defendant's apartment, with Prince Andrew's hand around her bare waist while she was standing next to Defendant, and she has produced the deposition transcript wherein she testified about to whom she was trafficked, in *Edwards v. Cassell*, Broward County Case Number CACE 15-000072 on January 16, 2016. *See* GIUFFRE005094- GIUFFRE007566. Ms. Giuffre additionally testified regarding the subject matter requested in this interrogatory on in the above-captioned case in her deposition on May 3, 2016, and that deposition transcript is also within Defendant's possession. Because Ms. Giuffre has provided an answer to this interrogatory in her deposition, which was a more practical method of obtaining the information sought, this interrogatory is improper under the Local Rules as well as wholly duplicative.

Regarding documents related to **Interrogatory No. 9**, which seeks Ms. Giuffre's employment history, Ms. Giuffre has already answered that, and produced any corresponding documents she has and has obtained since the commencement of litigation. Ms. Giuffre dropped her claim for lost wages in her Amended Rule 26 disclosures rendering this interrogatory irrelevant which seeks over 20 years of employment information. Defendant puts forth no case law for the proposition that she is entitled to this discovery. Accordingly, Defendant's request should be denied.

Regarding documents related to **Interrogatory No. 10** requests information concerning Ms. Giuffre's income. Ms. Giuffre has already produced her responsive document, including bank statements showing electronic funds transfers. Accordingly, there is nothing to compel regarding this Interrogatory, and Defendant's request should be denied.

Regarding documents related to **Interrogatory No. 11**, which concerns facts about Ms. Giuffre's lost wages, Ms. Giuffre has withdrawn her lost wage claim, and therefore, this interrogatory is no longer relevant.

Regarding documents related **to Interrogatory No. 12**, concerns Ms. Giuffre's health care providers subsequent to the defamation. Ms. Giuffre has already produced the documents and medical records associated with these providers, as described above. Accordingly, there is nothing to compel regarding this Interrogatory, and Defendant's request should be denied.

Regarding documents related to **Interrogatory No. 13**, concerns Ms. Giuffre's health care providers prior to the defamation. Not only has Ms. Giuffre disclosed her health care providers from 1999 through the present, but she has retrieved and produced her medical records, and executed and sent releases for each and every one of them. Regarding any documents that may exist relating to any pre-1999 medical records, Ms. Giuffre incorporates her argument regarding the same, above, including the doctor-patient privilege.

Regarding documents related to **Interrogatory No. 14**, which concerns sexual assault Ms. Giuffre experienced as a young teenager, prior to Defendant's sexual assault of her while still a minor, Ms. Giuffre has no documents beyond the police reports that Defendant produced. This request should be denied, anyway, pursuant to the statues and case law set forth above.

Despite Defendant's efforts to hide the vast categories of documents that fall within the ambit of Interrogatory No. 1 (in contravention of Local Rule 37.1), as the Court can see, Interrogatory No. 1 is a sprawling, over-broad, request, that seeks documents that are either (1) non-discoverable pursuant to this Court's April 21, 2016, Order; (2) protected by statutes and case law; (3) protected by the doctor-patient privilege; (4) are wholly irrelevant to this action; and (5) seek documents that are not within the possession, custody or control of Ms. Giuffre, or

are unduly burdensome. As described in full above, Ms. Giuffre has produced what documents she has in response to these requests. This Court should deny Defendant's motion to compel the documents related to this request for all of the foregoing reasons.

**B.     Request for Production No. 4**

Defendant puts forth no case law in support of her motion to compel Request for Production No. 4. In this request, Defendant deliberately targets attorney-client privileged communication by seeking communications between Ms. Giuffre's attorneys and the nearly 100 individuals on Ms. Giuffre's witness list, with no date or subject matter limitations. This is an improper request. Certain attorneys for Ms. Giuffre represent other individuals listed on the Rule 26 Disclosures in separate legal matters, and revelation of such communications would violate privileges that do not belong to Ms. Giuffre, but rather belong to other victims of sexual abuse who have not waived such privileges.

In her brief, Defendant urges the Court to overlook the facial overbreadth of her requests and, instead, read them "reasonably." Based on a reasonable reading of this request, Ms. Giuffre has produced her counsel's communications with the attorneys for witnesses on Ms. Giuffre's disclosures that took place subsequent to filing the complaint,[16] including communications with counsel for Johanna Sjoberg (which is also responsive to Defendant's Request No. 7, seeking those communications specifically). Requiring anything further would be overly burdensome, and would violate the attorney-client privilege of third-parties.

**C.     Request for Production No. 9**

---

[16] The overwhelming majority of Ms. Giuffre's counsel's communications with witnesses' counsel were email communications on which Defendant's counsel were copied. Ms. Giuffre did not produce email communications in which Defendant's counsel were copied, as such an exercise is unnecessary. Instead, Ms. Giuffre's counsel produced communications with witnesses' counsel upon which Defendant's counsel was not copied.

Defendant's Request for Production No. 9 is, possibly, the best example of facial overbreadth in this entire dispute. Therefore, it is unsurprising that Defendant puts forth no case law in support of her motion to compel Request for Production No. 9. In this request, Defendant seeks all documents concerning any communications between Ms. Giuffre's attorneys and "any witness" in the case captioned Jane Doe #1 and Jane Doe #2 v. United States, Case no. 08-cv-90736-KAM, in the United States District Court for the Southern District of Florida (the Crime Victim's Rights Act case, or "CVRA case"). Some background on the CVRA case is necessary to address the overbreadth of this Request.

In 2008, one of Ms. Giuffre's attorneys, Bradley J. Edwards (soon joined by co-counsel, and former United States District Court Judge, Professor Paul Cassell) filed a *pro bono* action in the Southern District of Florida under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771. Filed on behalf of Jane Doe 1 (and later Jane Doe 2) the CVRA action alleged that federal government had failed to protect the rights of Jane Doe 1 and other-situated victims of sex crimes committed by Jeffrey Epstein, a politically-connected billionaire. *See* Complaint filed in *Jane Doe 1 v. United States*, No. 9:08-cv-80736, DE 1 (S.D. Fla. July 7, 2008). It will not surprise the Court that the victims alleged that, while they were underage girls, Epstein and his co-conspirators sexually abused them in his Florida mansion under the guise of obtaining "massages." The victims further alleged that the Government concealed from them a plea bargain under which the federal government extended to Epstein a non-prosecution agreement (NPA) in exchange for Epstein's guilty plea to low level state offenses. The CVRA case has been litigated for nearly eight years, with litigation continuing to date.

Jane Does 1 and 2 have achieved many precedent-setting victories in the case, including a ruling that the CVRA rights of victims could apply before charges were filed, *Does 1 and 2 v.*

*United States*, 817 F. Supp. 2d 1337 (S.D. Fla. 2011); that they had standing to challenge the non-prosecution agreement reached between the Government and Epstein, *Jane Does 1 and 2 v. United States*, 950 F. Supp. 2d 1262 (S.D. Fla. 2013); and that Epstein's plea negotiations were not protected from disclosure by any federal rule of evidence, *Does v. United States*, 749 F.3d 999 (11th Cir. 2014). Congress has also followed the developments in the case closely, recently amending the CVRA to insure that in the future crime victims receive notice of any non-prosecution agreement entered into by the Government. *See* Pub. L. 114-22, Title I, § 113(a), (c)(1), May 29, 2015, 129 Stat. 240, 241 (adding 18 U.S.C. § 3771(a)(9) to give victims "[t]he right to be informed in a timely manner of any plea bargain or deferred prosecution agreement).

With regard to communications by Ms. Giuffre's attorneys, this request seeks clearly privileged materials, because Ms. Giuffre's attorneys represent not only Ms. Giuffre (Jane Doe 3) in the CVRA matter, but also Jane Doe 1, Jane Doe 2, and Jane Doe 4. Any communications between the four Jane Does, via Ms. Giuffre's attorneys, plainly would be subject to attorney-client protection, joint prosecution protection, and work product protection as well.

With regard to contact with "witnesses," the request is vague, unduly burdensome, and overbroad. The CVRA case centers on issues surrounding whether the U.S. Government failed to confer and otherwise protect the rights of victims (including Janes Does 1, 2, 3, and 4) during plea negotiations with Jeffrey Epstein. Accordingly, some of the main "witnesses" in the case are the Government prosecutors who handled the plea negotiations. Several of the same prosecutors who handled the plea negotiations are also involved in defending the CVRA case. The CVRA has been in litigation for nearly eight years, and there have extensive communications with the prosecutors (including communications concerning approximately 10,000 pages of documents that were requested by victims' counsel and provided to Judge Marra for in camera review). The

38

request appears designed to target all of these communications, and such communications, *going back eight years*, would necessitate a review of several hundreds of thousands of emails over that time to identify communications with the Government prosecutors. The burden would be substantial and the relevance would be essentially non-existent. Whatever communications Ms. Giuffre's attorneys would have had with government prosecutors about CVRA notifications concerning a prosecution of Epstein would not shed light on whether Defendant Maxwell defamed Ms. Giuffre.

Moreover, many materials related to this case remain under Judge Marra's protective order. Accordingly, before Ms. Giuffre's counsel could even have the option to release certain materials that the Government has provided to him as an attorney in the case, defendant Maxwell would have to approach Judge Marra and seek a modification of the protective order.

The request is also vague because it is not clear precisely what "witnesses" Defendant Maxwell is concerned about. There have, for example, been communications between Ms. Giuffre's lawyers and lawyers for Mr. Epstein and Mr. Dershowitz connected with procedural and other aspects of this case. Again, the relevance of such communications seems basically non-existent to the action. But because the case has spanned eight years, collecting such communications would be difficult and overly burdensome. Moreover, Defendant Maxwell has a close working relationship and/or joint defense arrangement with both Mr. Epstein and Mr. Dershowitz. There is no reason to burden Ms. Giuffre's attorneys will collecting such communications when she can collect them in other ways.

Defendant fails to make an argument addressing Ms. Giuffre's overbreadth argument and undue burden argument. Defendant also fails to make an argument explaining any relevance of

these documents. And, again, Defendant puts forth no case law in support of her position to compel. The Court should deny this request.

**D.      Request for Production No. 10**

This request seeks the same documents as Request No. 9 with regard to the Dershowitz litigation.[17] Defendant sets forth no new or differentiated argument with regard to this request, and Defendant puts forth no case law in support of her motion to compel Request for Production No. 10. This request has nearly all of the same defects as Request No. 9. For the reasons stated above, it should be denied.

**E.      Requests for Production No. 11 and No. 12**

With these requests, Defendant seeks "statements" obtained from witnesses in the CVRA case and the Dershowitz case, described above. This request directly targets privileged documents. In this discussion, Defendant puts forth her one and only example of case law. However, Defendant's District of Ohio case is not applicable. It holds that affidavits are not normally protected as work product. Even should this Court adopt this premise, **_and_** adopt Defendant's argument, there are not affidavits to produce. Based on the best of their recollection, Ms. Giuffre's counsel do not have any affidavits that are (1) not part of the docket/filings in the CVRA case in the Southern District of Florida, or (2) not already produced to Defendant in this litigation.

Even looking for such documents it would require the review of hundreds of thousands of documents which would take hours upon hours of attorney time. Again, the CVRA case centers

---

[17] While the CVRA case was moving forward in the Southern District of Florida on behalf of Jane Does 1 and 2, separate litigation developed between the *pro bono* attorneys who had filed the lawsuit (Cassell and Edwards) and Dershowitz. After Cassell and Edwards filed the joinder motion in the CVRA case, Dershowitz took the airwaves to attack not only Jane Doe 3's allegations against him, but also Cassell and Edwards' decision to file the allegations. Cassell and Edwards then filed a state law defamation action against Dershowitz in Broward County, Florida. Ultimately, Cassell, Edwards, and Dershowitz agreed to settle their defamation case.

on issues surrounding whether the U.S. Government failed to confer and otherwise protect the rights of victims (including Janes Does 1, 2, 3, and 4) during plea negotiations with Jeffrey Epstein. It has been in litigation for nearly eight years, and there have been extensive communications with the prosecutors (including communications concerning approximately 10,000 pages of documents that were requested by victims' counsels and provided to Judge Marra for in camera review). It is not clear whether the request is designed to request all of these communications as "statements," but if it does capture these communications going back eight year, it would involve a review of several hundreds of thousands of emails over that time to identify communications with the Government prosecutor. The burden would be substantial and the relevance would be essentially non-existent. Whatever statements Ms. Giuffre's attorneys obtained from government prosecutors about CVRA notifications concerning a prosecution of Epstein would not shed light on whether Defendant Maxwell defamed Ms. Giuffre. Moreover, many materials remain under Judge Marra's protective order. Accordingly, before Ms. Giuffre's counsel could even have the option to release certain materials that the Government has provided to him as an attorney in the case, defendant Maxwell would have to approach Judge Marra and seek a modification of the protective order.

The request is also vague because it is not clear precisely what "statements" Defendant Maxwell is concerned about. There have, for example, been communications between Ms. Giuffre's lawyers and lawyers for Mr. Epstein and Mr. Dershowitz connected with procedural and other aspects of this case. Again, the relevance of such communications seems basically non-existent to the action. But because the case has spanned eight years, collecting such communications would be difficult.

Finally, if Defendant is now seeking sworn affidavits, there is no practicable way to search for those things. As stated above, upon counsel's best memory, any affidavits are part of the CVRA case docket or already produced in this litigation. If there happen to be others, to search for them, through 8 years of litigation, would certainly be a Herculean task, and not one that would necessarily yield any responsive documents. Defendant's requests are poorly drafted. Defendant's arguments are unavailing. And, Defendant's sole case does not go to this request regarding "statements." Even an attempt at compliance would be grossly overly burdensome. The Court should deny Defendant's motion to compel with regard to these requests.

## VI.    CONCLUSION

Defendant's brief is bereft of case law, lacking the authority upon which this Court can grant her overly-broad requests, many of which have already been fully satisfied. Similarly, Defendant's motion for sanctions is completely baseless, and should be denied. For the foregoing reasons, Ms. Giuffre respectfully requests Defendant's Motion to Compel and for Sanctions be denied in its entirety.

DATED:  August 17, 2016.

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By:  /s/ Meredith Schultz
     Sigrid McCawley (Pro Hac Vice)
     Meredith Schultz (Pro Hac Vice)
     Boies Schiller & Flexner LLP
     401 E. Las Olas Blvd., Suite 1200
     Ft. Lauderdale, FL 33301
     (954) 356-0011

     David Boies
     Boies Schiller & Flexner LLP
     333 Main Street
     Armonk, NY 10504

Bradley J. Edwards (Pro Hac Vice)
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
 (954) 524-2820

Paul G. Cassell (Pro Hac Vice)
S.J. Quinney College of Law
University of Utah
383 University St.
Salt Lake City, UT 84112
(801) 585-5202[18]

---

[18] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on August 17, 2016, I electronically filed the foregoing

document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing

document is being served to all parties of record via transmission of the Electronic Court Filing

System generated by CM/ECF.

> Laura A. Menninger, Esq.
> Jeffrey Pagliuca, Esq.
> HADDON, MORGAN & FOREMAN, P.C.
> 150 East 10th Avenue
> Denver, Colorado 80203
> Tel: (303) 831-7364
> Fax: (303) 832-2628
> Email: lmenninger@hmflaw.com
>        jpagliuca@hmflaw.com

/s/ Meredith Schultz
Meredith Schultz