UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

VIRGINIA L. GIUFFRE,

    Plaintiff,

v.

GHISLAINE MAXWELL,

    Defendant.

15-cv-07433-RWS

---------------------------------------------------X

# DEFENDANT'S MOTION FOR LEAVE TO FILE A SUR-REPLY OR, ALTERNATIVELY, TO STRIKE PLAINTIFF'S MISREPRESENTATIONS OF FACT TO THE COURT

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
303.831.7364

Defendant Ghislaine Maxwell ("Ms. Maxwell") files this Motion for Leave to File a Sur-Reply or, Alternatively, to Strike Plaintiff's Misrepresentations of Fact from her Reply In Support of Motion For Protective Order And To Direct The Defendant To Disclose All Individuals To Whom Defendant Has Disseminated (sic) Confidential Information (Doc. #388), and states as follows:

## INTRODUCTION

Plaintiff's Reply makes material misrepresentations of fact. Those misstatements cannot stand in a filed, albeit redacted, pleading. Ms. Maxwell has never "admitted" to having "threesomes with multiple different girls." (Reply at 4). That is a misstatement of fact compounded by Plaintiff's intentional omission of the previous page of deposition testimony which exposes the falsehood. Similarly, Detective Joe Recarey never "testified that Defendant procured underage girls for Epstein." (Reply at 4) To the contrary, he testified that *all* of the underage girls he interviewed never mentioned Ms. Maxwell at all.

These are but a few of the misrepresentations of fact contained in Plaintiff's Reply. Accordingly, Ms. Maxwell seeks leave of the Court to file a Sur-Reply or, alternatively, moves the Court to strike from Plaintiff's Reply the misstatements of fact.

## PLAINTIFF'S MISSTATEMENTS OF FACT

1. *"Defendant's own admission of how she and Epstein had threesomes with **multiple different girls** whose names she can't even remember…"* (Reply at 4). Ms. Maxwell testified that on a "few occasions" she engaged in sexual activity with Jeffrey Epstein and another *adult woman*. Specifically, when asked to describe the woman, Ms. Maxwell testified:

> Q. Can you describe any of the people with whom you engaged in sexual activities at Mr. Epstein's home in Palm Beach?
> A. The description that I have is **somebody who is roughly my age**, and I recall a blond and I recall a brunette, and that's pretty much what I recall.

1

(Tr. at 57:5-13).

> Q. The women with whom you engaged in sexual activities with Mr. Epstein and yourself and the other women, were they older or younger than you?
>
> A. **Same age as me.**

(Tr. at 62:10-14).

It is an outright misrepresentation to this Court that Ms. Maxwell admitted to any sexual contact with a "multiple different girls." A "girl" is a female child. *See, e.g.,* Cambridge University Dictionary, "Girl: a female child or young woman, especially one still at school" (http://dictionary.cambridge.org/dictionary/english/girl) (last accessed August 25, 2016). Ms. Maxwell described these few occasions as occurring in the late 1990s when she was in her late 30s, with women who were the "same age as me." Plaintiff well knows that it is irrelevant to this lawsuit whether Ms. Maxwell engaged in consensual, adult sexual activities with women. There is no allegedly defamatory statement that has anything to do with Ms. Maxwell's private adult sex life. It is an abuse of this litigation process to even ask Ms. Maxwell such questions.

Instead, Plaintiff's flagrant misrepresentation is designed to support her false assertion that Ms. Maxwell participated in sexual activities with underage girls, which she did not and indeed, no witness other than Plaintiff has claimed that she has. Plaintiff intentionally omitted the deposition pages from Ms. Maxwell's testimony which clarified the age and misstated in her Reply that she "admitted" to "threesomes with multiple girls." This was an intentional misrepresentation of fact.

2. *"Ms. Giuffre was the child victim of sexual abuse, which is undisputed."* (Reply at 9) If there is one thing this litigation makes clear, it is heavily disputed that Ms. Giuffre was the child victim of sexual abuse. Ms. Maxwell has absolutely no evidence whatsoever that Ms. Giuffre was the child victim of any sexual abuse. As she testified at her deposition:

2

> Q. Do you know what happened during the massage appointments with Jeffrey Epstein and Virginia Roberts?
>
> A. No.
>
> Q. Were you ever present to view a massage between Jeffrey Epstein and Virginia Roberts?
>
> A. I don't recollect ever seeing Virginia and Jeffrey in a massage situation.
>
> Q. Do you ever recollect seeing them in a sexual situation?
>
> A. I never saw them in a sexual situation.
>
> Q. Did you ever participate in sex with Virginia Roberts and Jeffrey Epstein?
>
> A. I never ever at any single time at any point ever at all participated in anything with Virginia and Jeffrey. And for the record, she is an absolute total liar and you all know she lied on multiple things and that is just one other disgusting thing she added.

(4/22/16 Tr. at 75-76).  The Palm Beach State's Attorney's Office, the Palm Beach Police Department and the Royal Palm Beach Police Departments all likewise have never concluded that Plaintiff was a "child victim of sexual abuse."  Rather their reports reflect Plaintiff's false allegations of being a "child victim of sexual abuse" in situations such as getting in trouble for running away from home, getting in trouble for not attending school, getting in trouble for using alcohol and marijuana.  There is absolutely nothing "undisputed" about Plaintiff's claim of victimhood.

Furthermore, Plaintiff left unredacted her assertion that it is "undisputed" that Ms. Roberts was the child victim of sexual abuse, leaving the mis-impression with the public that Ms. Maxwell has in some way conceded that to be true.  She has not.

3.        *"Detective Joseph Recarey ... testified that Defendant procured underage girls for Epstein"* (Reply at 3, n.4).  In fact, Detective Recarey testified that *none* of the underage girls interviewed in connection with his investigation into Epstein claimed to have been hired by Maxwell; in fact, none of them mentioned Ms. Maxwell at all.  The two *women* he interviewed who were hired by Ms. Maxwell both said they gave professional, adult massages to Epstein.

3

>Q. So out of your entire report, the only two people who ever said anything about Ms. Maxwell were Ms. Sjoberg, who I believe was 23 when you interviewed her?
>
>A. Right, but she was -- She was -- she had worked there for quite some time, so you would have to back up, I think, a year or two.
>
>Q. She was an adult when she worked there?
>
>A. Right. She was over the age of 18, right, let's put it that way.
>
>Q. And she was not listed by you as a victim as part of this case, right?
>
>A. Correct, because it was between two consenting adults.
>
>Q. Exactly. And so that's Ms. Sjoberg, and then the other individual, I think you said Bolero; is that right?
>
>A. Venero, Christina Venero. She's a –
>
>Q. Adult masseuse, correct?
>
>A. Yes. I remember she had lots of tattoos.
>
>Q. Tatts, right. But the 17 individuals that you listed in Exhibit 1, none of those individuals ever said the word -- the words "Ghislaine Maxwell" during the course of this investigation to you, correct?
>
>A. I don't believe so. It would be on the tapes if they did.

(Tr. 194-195).

4. *"Ms. Sjoberg's testimony of how Defendant lured her from her school to have sex with Epstein under the guise of answering phones…"* (Reply at 4). In truth, Ms. Sjoberg (an adult at the time, attending *college*) testified that Ms. Maxwell asked her to "massage feet," which is something she had recently been doing on her mission trip, that she later became a professional masseur, that she came to engage in "consensual, adult" sexual contact with Epstein through no involvement of Ms. Maxwell, that any sexual intercourse with Epstein took place in 2005 when Ms. Maxwell was no longer around, and that Ms. Maxwell never participated in nor asked her to participate in any sexual conduct. (Tr. at 8, 13, 49, 50-52, 99, 101, 147).

5. *"Mr. Rizzo's testimony about how Defendant took the passport of a 15-year-old Swedish girl and threatened her when she refused to have sex with Epstein"* (Reply at 4). Plaintiff's continued reliance on the testimony of Mr. Rizzo is tantamount to suborning perjury.

4

Mr. Rizzo's testimony is vehemently denied by all individuals involved, including his former employers, a respected medical professional and her husband a well-respected businessman. His account does not accord with *any* reports made to law enforcement (Mr. Rizzo himself did not make any reports to law enforcement regarding the events that he says occurred 12 years ago). Further, Mr. Rizzo said the events were so "shocking" that he quit his job, but he later admitted he returned to the same job a short time later. Mr. Rizzo has been in litigation against his employers and admitted he contacted Mr. Edwards to represent him hoping he could make more money from this case.

      6.    "Mr. Alessi's testimony about how Defendant brought girls over for Epstein" (Reply at 4). In truth, Mr. Alessi testified that the massage therapists for Mr. Epstein were over the age of 18 and that he only assisted Ms. Maxwell in hiring *adult* massage therapists from high end spas such as Breakers Hotel, Mar-a-Lago, or Boca Raton Resort and Hotel. The only underage person he saw at the house was ▮▮▮▮▮▮▮▮ and she was never naked or participating in massages. (Tr. at 165, 182, 188).

      7.    "Mr. Figueroa's testimony about how Defendant would call him to bring over underage girls and how Defendant and Epstein would have threesomes with Ms. Giuffre" (Reply at 4). In fact, convicted felon Tony Figueroa *denied* that Ms. Maxwell called him at all.

> Q: Did you ever bring a girl to Ms. Maxwell?
> A: No.
> Q: Did Ms. Maxwell ever call you and ask you to bring a girl to her?
> A: No.
> Q: Did Ms. Maxwell ever call you and ask you to bring a girl to Jeffrey?
> A: No.

(Tr. at 106-07).

5

He had no personal knowledge whether anything other than massage occurred with the females that went over to Mr. Epstein's home:

> Q. Well, you said you observed bringing a girl over.
>
> A. No. I'm just saying -- like, I brought them over, yes. But I have never observed anything, like, sexual. Never anything -- like to where it would be an illegal activity. Like, any time I was there, everybody was dressed. They were all talking like it was just, like, people hanging out in a room, you know what I mean? There was never anything going on when I was there, so...
>
> Q Do you have any personal knowledge as to whether anything other than a massage took place between Jeffrey and these girls?
>
> A No.
>
> Q You did not see anything?
>
> A Nope.
>
> Q They didn't tell you afterwards anything happened?
>
> A Nope.

(Tr. at 116). He testified that all of the females he brought over were his age, or at most a year younger, and he was 20. (Tr. at 234) Further, he never saw any sexual activity occur between Plaintiff and Mr. Epstein:

> Q Ms. Roberts described sexual acts that she participated in with Jeffrey; correct?
>
> A Yes.
>
> Q And you did not observe that?
>
> A No.

(Tr. at 121).

8. *"Defendant and/or Her Joint Defense Partners Previously Fed [Plaintiff's False Claims of Sexual Assault] to the Media"* (Reply at 9). Ms. Maxwell, and her "joint defense partners," have never "fed" to the media anything about Plaintiff's various false claims of sexual abuse. To the contrary, all of the email exchanges between Ms. Maxwell, Mr. Gow, Mr. Epstein and others indicate Ms. Maxwell's extreme reluctance to be involved with the media. The email quoted by Plaintiff in her Reply at page 5 simply shows that Mr. Gow picked up on the media's

6

independent reports of Plaintiff's false allegations of sexual assault and sent that information to Ms. Maxwell.  There is nothing in Mr. Gow's email then or afterwards which suggests *he* or Ms. Maxwell or anyone else they know "leaked" the story.  Indeed, there is nothing to suggest that Ms. Maxwell had access to Plaintiff's police reports in February 2015.  The police reports were obtained, by Plaintiff's admission, in April 2016.  This is pure unsupported speculation and slander on the part of Plaintiff's counsel, ironically, the very people who misrepresented to the press the contents of the police reports and hid from production all of the other instances of Plaintiff's contact with law enforcement.

## ARGUMENT

None of these factual assertions bear on the issue before the Court -- whether Plaintiff's publicly available criminal files should be deemed "confidential" under the Protective Order.  None of the witnesses has anything to do with Plaintiff's false claims of sexual assault as a child, nor her domestic violence.  Indeed, in what is an almost daily occurrence in this case, Plaintiff has selectively misquoted portions of deposition transcript testimony in an effort to mislead the Court into believing there is evidence of Ms. Maxwell's guilt, a topic in the exclusive province of the jury, so as to improperly influence the Court's discovery rulings.

Ms. Maxwell cannot stand idly by while Plaintiff *misrepresents to the Court* and says, for example, that she confessed to participating in threesomes with "girls."  Reply at 4.  No such admission occurred.  It is a violation of candor to the Court to claim otherwise.  Likewise, Detective Recarey never concluded in his investigation that Ms. Maxwell "procured underage girls for Epstein."  In fact, quite the opposite, Detective Recarey found <u>no evidence</u> that Ms. Maxwell ever even met any of the underage girls he interviewed.

7

Ms. Maxwell seeks leave of the Court to file a Sur-Reply to refute these baseless, false misrepresentations to the Court that Plaintiff included within her Reply, if Plaintiff does not honor her obligations under Rule of Professional Conduct 3.3 to withdraw them of her own accord.

Dated: August 25, 2016.

Respectfully submitted,

/s/ Laura A. Menninger
Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:   303.831.7364
Fax:       303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*

8

## CERTIFICATE OF SERVICE

I certify that on August 25, 2016, I electronically served this *Defendant's Motion For Leave To File A Sur-Reply Or, Alternatively, To Strike Plaintiff's Misrepresentations Of Fact To The Court* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

J. Stanley Pottinger
49 Twin Lakes Rd.
South Salem, NY 10590
StanPottinger@aol.com

*/s/ Nicole Simmons*
Nicole Simmons