United States District Court
Southern District of New York

Virginia L. Giuffre,

    Plaintiff,               Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

    Defendant.

_____/

### PLAINTIFF'S MOTION TO REOPEN DEFENDANT'S DEPOSITION BASED ON DEFENDANT'S LATE PRODUCTION OF NEW, KEY DOCUMENTS

    Plaintiff, Virginia Giuffre, by and through her undersigned counsel, files this Motion to Reopen Defendant's Deposition Based on Defendant's Production of New, Key Documents because Defendant produced documents subsequent to her deposition about which she should answer questions. The Court has already ruled that reopening a party deposition is appropriate where important documents are produced after the deposition is completed. Accordingly, the Court should grant Ms. Giuffre's request to reopen Defendant's deposition to answer questions relating to her lately produced documents.

    **I.**    **BACKGROUND**

    The Court will recall Defendant's case-long, unjustified recalcitrance regarding her testimony. She first attempted to avoid her deposition (causing unnecessary motion practice), and, then, she failed to answer questions at her deposition, upon which the Court ordered her to sit for her deposition again. Specifically, Ms. Giuffre started her quest to obtain Defendant's deposition back on February 2, 2016, by serving a Notice of Deposition. Defendant filed a

1

Motion for Protective Order trying to avoid her deposition. After a hearing on the issue, the Court directed Maxwell to sit for her deposition on April 22, 2016. During her deposition Defendant refused to answer the majority of the questions asked or stated that she had no memory of any of the events. As a result, Ms. Giuffre was forced to file a Motion to Compel Defendant to Answer Deposition Questions Filed under Seal (DE 143). On June 20, 2016, this Court granted Ms. Giuffre's Motion and directed Defendant to sit for a second deposition to answer the questions she originally failed to answer. (June 20, 2016 Sealed Order, filed in redacted version DE 264-1).

Yet again at her second deposition, she continued to refuse to answer key questions. As a result, on July 29, 2016, Ms. Giuffre was forced to file a Motion to Enforce the Court's Order and Direct Defendant to Answer Deposition Questions Filed under Seal. (DE 314/356). That motion is still pending before this Court.

Discovery closed in this case on July 31, 2016. On August 16, 2016, after the close of discovery, and after Defendant's second deposition was taken, Defendant produced two critical documents which were e-mail communications: one between her and her press agent, Ross Gow, and another between her and her former boyfriend, convicted pedophile Jeffrey Epstein. *See* McCawley Decl. at Sealed Composite Exhibit 1, August 16, 2016, email from Laura Menninger; November 10, 2015, Email from Ross Gow to Defendant, GM_01141-01142; Email between Defendant and Epstein, GM_01143-1144.

It is important for Ms. Giuffre to ask questions about these newly-produced communications with Gow and Epstein. In the former, Gow asks Defendant, "Please advise how you wish to respond [to a press inquiry regarding Ms. Giuffre]." As the Court will recall, Ross Gow is Defendant's English press agent who shares an attorney with Defendant. The history of

Ms. Giuffre's multiple and expensive attempts to serve Mr. Gow with a Rule 45 subpoena through the Hague Convention and various other means (Defendant's attorney refused to accept service) recently culminated in an English Court commanding Gow to sit for his deposition by November 1, 2016.

Accordingly, a follow up deposition of Defendant is critical. It is necessary both to ensure that she answers the questions she refused to answer, (as set forth in Plaintiff's Motion to Direct Defendant to Answer Deposition Questions (DE 314/356)), and to ensure that Ms. Giuffre can ask Defendant questions about the critical and late produced e-mail communications with her press agent, Ross Gow, and with her former boyfriend, convicted pedophile Jeffrey Epstein.

Indeed, Defendant cannot credibly oppose Ms. Giuffre's request because Defendant herself previously sought and received a deposition based on newly produced documents. Defendant previously argued before this Court that Ms. Giuffre's deposition should be reopened, in part, because Ms. Giuffre obtained and produced certain documents that Defendant wanted to ask her about *after* Ms. Giuffre's deposition was taken. Specifically, Defendant's motion stated "Plaintiff's production of key documents after her deposition necessitates additional examination." See (DE 230) at 3. Defendant's brief continued: "All of the new information that has come to light . . . justifies the reopening of Plaintiff's deposition." Id. at 5-6.

The Court granted Defendant's motion in a sealed Order that stated: "The deposition of the Plaintiff was held on May 3, 2016, and thereafter the Plaintiff produced additional documents and made supplemental responses . . . The Plaintiff may be questioned about any documents produced subsequent to the May 3 deposition relating to employment and education." See Sealed August 30, 2016 Order. As the Court has already ruled that reopening a deposition is appropriate

when where important documents are produced after the deposition is completed, the same relief is appropriate for Ms. Giuffre upon this motion.

II.     ARGUMENT

The same standard set forth in the Court's August 30, 2016, Order applies to Defendant's post-deposition production of key documents. Defendant's late production of two key documents similarly "necessitates" and "justifies" the reopening of Defendant's deposition for questioning upon them. Therefore, Ms. Giuffre should receive the same relief from the Court that Defendant obtained: the reopening of Defendant's deposition to answer questions about these key documents. *See Wesley v. Muhammad*, 2009 WL 1490607, at *5 (S.D.N.Y. 2009) ("while defendants' delay in producing documents may have interfered with the completeness of depositions, plaintiff will be free to reopen any depositions for which he deems the newly produced documents to be a relevant source of questions"); *Ganci v. U.S. Limousine Serv., Ltd.*, 2011 WL 4407461 at *2 (E.D.N.Y. Sept. 21, 2011) ("Courts will typically reopen a deposition where there is new information on which a witness should be questioned").

Moreover, it was after Defendant's deposition was complete, ***and after*** the briefing to reopen her deposition (on other grounds) was complete, and after discovery closed, that Defendant produced these key documents. Ms. Giuffre should be allowed to ask Defendant questions concerning them.

A.     The Gow Email

These documents are of particular importance because one is an email communication from her agent, Ross Gow to Defendant that took place *after the commencement of this litigation*. It states: "Hi Ghislaine and Philip [sic] Please advise how you wish to respond… Best Ross." GM_01141. Ms. Giuffre did not have the opportunity to question Defendant about the

4

content of that email, a communication with a key witness, nor did she have the opportunity to use it to cross some of Defendant's evasive answers. Additionally, due to the late production, Ms. Giuffre did not have the opportunity to include these facts in her briefing related to her Motion to Enforce the Court's Order and Direct Defendant to Answer Deposition Questions Filed under Seal (DE 315).

      a.      <u>Gow Deposition Testimony</u>

Defendant refused to give a straight answer regarding Mr. Gow at her first deposition, making a line of questions related to the lately-produced email communication important and non-redundant. For example, when asked about Mr. Gow, Defendant gave evasive, and non-responsive answers:

> Q. Did you issue a statement to your press agent, Ross Gow in 2015, stating that Virginia Roberts' claims were, quote, obvious lies?
> Q. You can answer.
> A. *You need to reask me the question*.
> Q. Sure.
> Did you issue a press statement through your press agent, Ross Gow, in January of 2015, stating that Virginia Roberts' claims were, quote, obvious lies?
> A. *Can you ask it a different way, please?*
> Q. I will ask it again and you can listen carefully. Did you issue a press statement through your press agent, Ross Gow, in January of 2015, where you stated that Virginia Roberts' claims were, quote, obvious lies?
> A. So my lawyer, Philip Barden instructed Ross Gow to issue a statement.

*See* McCawley Decl. at Sealed Composite Exhibit 2, Maxwell Depo. Tr. at 201:17-202:11.

> Q. Are you saying that it's an obvious lie that Jeffrey Epstein engaged in sexual conduct with Virginia while Virginia was underage?
> A. *Again, I'm telling you, first of all, it was a statement that was issued by my lawyer and -- through my lawyer to Ross Gow.*
> Q. I understand that. I'm asking you, are you saying that it's an obvious lie that Jeffrey Epstein engaged in sexual conduct with Virginia while Virginia was underage. Is that a lie?
> Q. You can answer.
> A. *So I cannot testify to what Ross Gow and Philip Barden decided to put* -- I can testify to what Virginia's obvious lies are as regards to me. I cannot make representations about all the many lies she may or may not have told about Jeffrey.

5

*See* McCawley Decl. at Sealed Composite Exhibit 2, Maxwell Depo. Tr. at 202:24-204:6. Ms. Giuffre should not be prejudiced or penalized by Defendant's late production, just as Defendant was not prejudiced nor penalized by Ms. Giuffre late production.

          b.        <u>Gow Requests for Admission Responses</u>

Importantly, Defendant's evasive responses regarding Ross Gow in her Answers to Ms. Giuffre's Requests for Admission[1] necessitate reopening of questioning regarding the ***newly-produced, post-lawsuit communication with Mr. Gow.*** For example, Defendant stated as follows:

> **1. Admit that Ross Gow was authorized by You or your agents to make statements to the public on your behalf.**
>
> Ms. Maxwell objects to this Request based on the vagueness of the terms "authorized", "statements to the public," and "agents". Without waiver of the foregoing, Ms. Maxwell responds as follows:
>
> Denied in part. Ms. Maxwell admits that she has worked with Mr. Gow on occasion for several years and that she has corresponded with Mr. Gow regarding communications to members of the British press to reserve her right to seek redress for their repetition of defamatory statements about Ms. Maxwell.

*See* McCawley Decl. at Sealed Exhibit 3, Defendant's Responses to Plaintiff's Requests for Admission at 3. Defendant's evasive response claims the word "authorize" is too "vague," but, at the same time, she appears to deny "inpart" that she authorized Gow to make the defamatory statement. However, the newly-produced communication with Gow shows an ongoing and continuing working relationship, where Gow is seeking Defendant's approval and input on issuing a statement to the press. Ms. Giuffre should be entitled to ask Defendant questions about that communication, wherein Gow asks her: "Please advise how you wish to respond." Notably,

---

[1] Plaintiff attempted to meet and confer with Defendant in order to obtain a follow up deposition regarding these newly produced documents without Court intervention. Defendant refused stating that she would consider responding to written questions. However, as the Court can see from Defendant's pattern of evasive written responses, an oral deposition is necessary in order to attempt to obtain a complete response.

Defendant did not produce her response to Gow's email. Additionally, since the communication appears to directly contradict her deposition testimony as well as her responses to Requests for Admission, Ms. Giuffre should be entitled to use this post-litigation communication, where Gow asks Defendant, "Please advise how you wish to respond," to cross Defendant on her prior deposition answers. An email in which Gow is actively soliciting instructions for how to make a public response to the media is evidence that Defendant is, in fact, involved in, and consulted about, what her press agent says on her behalf.

      B.    <u>Communication with Jeffrey Epstein</u>

Similarly, the email with Epstein regarding a reply to "one further allegation," shows that Defendant is active in shaping her public statements regarding Ms. Giuffre, and giving drafts to Epstein for his approval. Accordingly, Defendant was never deposed on (1) why she was seeking Epstein's permission for having Barden make a "reply;" (2) what Epstein's relationship was with Barden; (3) or who drafted the original communication at the bottom of the email, as it does not appear to have been created by either Defendant or Epstein.

      C.    <u>Ms. Giuffre Did Not Oppose the Relief Sought When Defendant Brought The Same Motion and the Court Ruled that this Relief was Appropriate</u>

As the Court will recall, Ms. Giuffre ***did not oppose*** the relief sought in Defendant's motion to reopen her deposition. ("Ms. Giuffre agrees to reopen the deposition for a limited amount of time, and for discrete lines of questioning." DE 259 at 1). And, Ms. Giuffre specifically agreed to the relief of answering questions about, *inter alia*, documents produced after her deposition: "Ms. Giuffre agrees to reopening the deposition for certain questions related to the following: 1) Any medical care records that were produced subsequent to her deposition." (DE 259 at 12). Accordingly, as Defendant sought and received the same relief upon her motion, which was unopposed by Ms. Giuffre, Defendant can put forth no valid argument against re-

7

opening Defendant's deposition to ask questions about these newly-produced documents, particularly given the case law that also requires the re-opening of a deposition in these circumstances.

### III.    CONCLUSION

Therefore, based on the foregoing, Ms. Giuffre respectfully requests that the Court Reopen Defendant's deposition to (1) answer lines of questions discussed in Ms. Giuffre's Motion to Enforce the Court's Order and Direct Defendant to Answer Deposition Questions Filed under Seal (DE 315) which is pending before the Court; and (2) answer questions related to the two key documents produced by Defendant after her deposition.

Dated: October 13, 2016.

        Respectfully Submitted,

        BOIES, SCHILLER & FLEXNER LLP

    By:  /s/ Sigrid McCawley
        Sigrid McCawley (Pro Hac Vice)
        Meredith Schultz (Pro Hac Vice)
        Boies Schiller & Flexner LLP
        401 E. Las Olas Blvd., Suite 1200
        Ft. Lauderdale, FL 33301
        (954) 356-0011

        David Boies
        Boies Schiller & Flexner LLP
        333 Main Street
        Armonk, NY 10504

        Bradley J. Edwards (Pro Hac Vice)
        FARMER, JAFFE, WEISSING,
        EDWARDS, FISTOS & LEHRMAN, P.L.
        425 North Andrews Avenue, Suite 2
        Fort Lauderdale, Florida 33301
         (954) 524-2820

        Paul G. Cassell (Pro Hac Vice)
        S.J. Quinney College of Law

> University of Utah
> 383 University St.
> Salt Lake City, UT 84112
> (801) 585-5202[2]

---

[2] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 13, 2016, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served to all parties of record via transmission of the Electronic Court Filing System generated by CM/ECF.

>   Laura A. Menninger, Esq.
>   Jeffrey Pagliuca, Esq.
>   HADDON, MORGAN & FOREMAN, P.C.
>   150 East 10th Avenue
>   Denver, Colorado 80203
>   Tel: (303) 831-7364
>   Fax: (303) 832-2628
>   Email: lmenninger@hmflaw.com
>              jpagliuca@hmflaw.com

>                         /s/ Meredith Schultz
>                            Meredith Schultz