# COMPOSITE

# EXHIBIT 1

(File Under Seal)

FILED BY _____ D.C.

SEP 2 0 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT
S.D. OF FLA. FT. LAUD.

**United States District Court**
**Southern District of Florida**

Virginia L. Giuffre,

        Plaintiff,

                            Case No.: _____

                            Underlying Case No.: 15-cv-07433-RWS

                            (Southern District of New York) (Sweet, J.)

v.

Jeffrey Epstein,

        Defendant.

_____/

## PLAINTIFF'S SEALED AGREED MOTION TO FILE MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND TESTIMONY FROM JEFFREY EPSTEIN UNDER SEAL PURSUANT TO LOCAL RULE 5.4(b) AND MOTION TO PLACE THE ENTIRE DOCKET UNDER SEAL

        Plaintiff Virginia Giuffre, by and through her undersigned counsel, respectfully submits this Unopposed Motion to file her Motion to Compel the Production of Documents and Testimony from Jeffrey Epstein under Seal Pursuant to Local Rule 5.4(b) and Motion to Place the Entire Docket Under Seal, and hereby states as follows.

### I.    FACTUAL BACKGROUND

        The motion to compel seeks to compel production pursuant to a valid Rule 45 subpoena issued to Jeffrey Epstein in the above-styled case, pending in the Southern District of New York (the "New York case"). The case concerns a defamation action brought by a child victim of convicted pedophile Jeffrey Epstein against his live-in girlfriend who assisted him in procuring underage girls, including the plaintiff, Ms. Giuffre.  Because of Epstein's central role in the New York case, it is important for Ms. Giuffre to have the requested documents from him in discovery.

1

**United States District Court**
**Southern District of Florida**

Virginia L. Giuffre,

Plaintiff,

Case No.: _____
Underlying Case No.: 15-cv-07433-RWS
(Southern District of New York) (Sweet, J.)

v.

Jeffrey Epstein,

Defendant.
_____/

## PLAINTIFF'S SEALED AGREED MOTION TO FILE MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND TESTIMONY FROM JEFFREY EPSTEIN UNDER SEAL PURSUANT TO LOCAL RULE 5.4(b) AND MOTION TO PLACE THE ENTIRE DOCKET UNDER SEAL

Plaintiff Virginia Giuffre, by and through her undersigned counsel, respectfully submits this Unopposed Motion to file her Motion to Compel the Production of Documents and Testimony from Jeffrey Epstein under Seal Pursuant to Local Rule 5.4(b) and Motion to Place the Entire Docket Under Seal, and hereby states as follows.

### I.     FACTUAL BACKGROUND

The motion to compel seeks to compel production pursuant to a valid Rule 45 subpoena issued to Jeffrey Epstein in the above-styled case, pending in the Southern District of New York (the "New York case"). The case concerns a defamation action brought by a child victim of convicted pedophile Jeffrey Epstein against his live-in girlfriend who assisted him in procuring underage girls, including the plaintiff, Ms. Giuffre. Because of Epstein's central role in the New York case, it is important for Ms. Giuffre to have the requested documents from him in discovery.

1

During his deposition, Epstein failed to answer questions or produce documents in response to a Rule 45 subpoena in the New York case. The instant motion seeks to compel production from Epstein in three areas, detailed more fully in the Motion to Compel, based on his improper invocation of the Fifth Amendment in refusing to comply with the subpoena. Epstein's invocation of the Fifth Amendment was invalid for several reasons, as discussed in detail in the Motion to Compel. One of those reasons, however, goes to the instant request to file the motion to compel under seal and to place the docket under seal.  In should be noted that the entire deposition of Epstein is confidential, having been placed under the confidentiality order that exists in the case.

## II.   LEGAL ARGUMENT

The parties agree this case should be placed under seal because of the need for confidentiality.  There is no valid invocation of the Fifth Amendment when there is no threat to self-incrimination, and there can be no threat to self-incrimination if the government is not aware of the information Ms. Giuffre seeks pursuant to her valid Rule 45 subpoena. Because Ms. Giuffre seeks to have *all* of the relevant proceedings to her motion to compel - including the motion itself - be placed under seal at this time, the Government will not be aware of Epstein's disclosure of materials, much less be in position to even file a motion to attempt alter the protective order.  In such circumstances, Epstein faces no "real and substantial hazard" of his act of producing documents to Ms. Giuffre's counsel incriminating himself. *See United States v. Kowalik*, 809 F. Supp. 1571, 1577 (S.D. Fla. 1992), *aff'd,* 12 F.3d 218 (11th Cir. 1993), and *aff'd,* 12 F.3d 218 (11th Cir. 1993). Accordingly, by placing this case under seal, this Court can grant Ms. Giuffre's motion to compel and direct Epstein to produce the relevant documents over his

improper Fifth Amendment objections because there is no risk of incrimination because these proceedings will be under seal.

Moreover, under the Protective Order issued by the New York case, Ms. Giuffre's counsel (and counsel for Ms. Maxwell,[1] the Defendant in the New York case) are forbidden to disclose the materials for "any purpose except the preparation and trial of this case." Protective Order, ¶ 4. Under the terms of the protective order, all materials secured in the case will be destroyed at the end of the case. Protective Order, ¶ 12. And while the Protective Order does not bar the use of confidential materials at trial, Protective Order ¶ 13, Ms. Giuffre's counsel represent that they will not use at trial any documents that Epstein produces without first notifying Epstein and seeking leave of Court to do so. As a result, Epstein can provide documents to Ms. Giuffre, allowing her to investigate this case without compromising any interest that Epstein may have in avoiding self-incrimination.

Additionally, the entire deposition has already been designated as "confidential" by defendant Maxwell, making these proceedings subject to a protective order. *See* Motion to Compel at Addendum A (copy of protective order). To enforce that previously-entered confidentiality order from the Southern District of New York, these proceedings should be confidential as well. Moreover, in such circumstances, there is no substantial risk of incrimination from the mere production of documents to Ms. Giuffre's counsel, who are subject to the protective order. *See generally* Marc Youngelson, *The Use of 26(c) Protective Orders: "Pleading the Fifth" Without Suffering "Adverse" Consequences*, 1994 Ann. Surv. Am. L. 245 (1995); *see also Palmieri v. State of New York*, 779 F.2d 861 (2d Cir. 1985).

---

[1] It may be relevant to note that defendant Maxwell has not sought any documents from Epstein, and thus the only issue presented here is the extent to which Ms. Giuffre can use the documents.

Federal Rule of Civil Procedure 26 authorizes a court, for good cause, to enter a protective order to seal or to limit disclosure. Indeed, courts have the discretion to place entire cases under seal. *See e.g. Beaches MLS, Inc. v. Miami Association of Realtors, Inc.*, 2015 WL 11170925, at *3 (S.D.Fla. 2015) (Marra, J.) (granting motion to file under seal and sealing the case). Local Rule 5.4(b) provides the procedure to follow when a party seeks to file something under seal: the party must file a motion, "setting forth a reasonable basis for departing from the general policy of a public filing," and courts in this district routinely grant parties' motions to file under seal for good cause. *See e.g. Shire Development LLC v. Watson Pharmaceuticals, Inc.*, 932 F.Supp.2d 1349, 1359 (S.D.Fla. 2013) (Middlebrooks, J.); *Air Turbine Technology, Inc. v. Atlas Copco AB*, 2003 WL 22939256, at *1 (S.D.Fla. 2003) (Marra, J.).

Ms. Giuffre has articulated good cause to grant her motion to file under seal and to seal this case, as it would facilitate the execution of a valid Rule 45 subpoena issued upon Jeffrey Epstein and follow the confidentiality order previously entered in this case by the U.S. District Court for the Southern District of New York. Counsel for Ms. Giuffre has conferred with counsel for Epstein, and counsel for Epstein has agreed to the filing of the Motion to Compel under seal.

III.   **CONCLUSION**

For the reasons set forth above, plaintiff, Virginia Giuffre, respectfully requests that the Court grant her Agreed Motion to file her Motion to Compel the Production of Documents and Testimony from Jeffrey Epstein under Seal Pursuant to Local Rule 5.4(b) and Motion to Place the Entire Docket Under Seal for the reasons set forth above.

Dated: September 20, 2016                    Respectfully Submitted,

4

BOIES, SCHILLER & FLEXNER LLP

By: _____

Sigrid McCawley
Meredith Schultz
Boies Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

David Boies
Boies Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Bradley J. Edwards
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 20th day of September, 2016, I served the foregoing

document this day on the individuals identified below via email:

Laura A. Menninger, Esq.
Jeffrey Pagliuca, Esq.
HADDON, MORGAN & FOREMAN, P.C.
150 East 10th Avenue
Denver, Colorado 80203
Tel: (303) 831-7364
Fax: (303) 832-2628
Email: lmenninger@hmflaw.com
        jpagliuca@hmflaw.com

*Counsel for Ghislaine Maxwell*

Jack Alan Goldberger
Atterbury, Goldberger & Weiss, P.A.
250 Australian Avenue South, #1400
West Palm Beach, FL 33401
(561)-659-8305
(561)-835-8691 (fax)
jgoldberger@agwpa.com

*Counsel for Jeffrey Epstein*

Sigrid S. McCawley

JS 44 (Rev. 07/16) FLSD Revised 07/01/2016

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

## I. (a) PLAINTIFFS Virginia L. Giuffre

### DEFENDANTS Jeffrey Epstein

(b) County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Palm Beach
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Sigrid L. McCawley, Esq., Boies, Schiller & Flexner, LLP, 401 E. Las Olas Blvd., #1200, Ft. Lauderdale, FL 33301 954-356-0011

Attorneys *(If Known)*
Jack Alan Goldberger, Esq., Atterbury, Goldberger & Weiss, PA, 250 Australian Ave So., #1400, W. Palm Beach, FL 33401 561-659-8305

(d) Check County Where Action Arose: ☐ MIAMI-DADE ☐ MONROE ☐ BROWARD ☑ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question *(U.S. Government Not a Party)*
☐ 2 U.S. Government Defendant
☑ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)* *(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | PROPERTY RIGHTS | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | Liability | LABOR | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | PERSONAL PROPERTY | ☐ 710 Fair Labor Standards Act | SOCIAL SECURITY | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Empl. Ret. Inc. | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | Habeas Corpus: | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | Other: | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | IMMIGRATION | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee – Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Re-filed (See VI below) ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district *(specify)* ☐ 6 Multidistrict Litigation Transfer ☐ 7 Appeal to District Judge from Magistrate Judgment ☐ 8 Multidistrict Litigation – Direct File ☐ 9 Remanded from Appellate Court

## VI. RELATED/ RE-FILED CASE(S)

*(See instructions)*: a) Re-filed Case ☐ YES ☐ NO   b) Related Cases ☑ YES ☐ NO
JUDGE: Kenneth A. Marra   DOCKET NUMBER: 9:08-CV-80736-KAM

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:
Miscellaneous Action to Enforce Rule 45 Subpoena
LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
DATE  September 20, 2016
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT #_____ AMOUNT_____ IFP_____ JUDGE_____ MAG JUDGE_____

**United States District Court**
**Southern District of Florida**

FILED BY _____ D.C.

SEP 2 0 2016

STEVEN M. LARIMORE
CLERK U.S DIST CT
S.D. OF FLA. FT. LAUD.

Virginia L. Giuffre,

      Plaintiff,

                    Case No.: _____
                    Underlying Case No.: 15-cv-07433-RWS
                    (Southern District of New York) (Sweet, J.)

v.

Jeffrey Epstein,

      Defendant.

_____/

## PLAINTIFF'S SEALED MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND TESTIMONY FROM JEFFREY EPSTEIN

Plaintiff Virginia Giuffre, by and through her undersigned counsel, respectfully submits this motion to compel Jeffrey Epstein to produce documents and testimony in response to his repeated invocations of the Fifth Amendment at his recent deposition.

This motion seeks to compel production from Epstein in three areas. First, at his deposition, Epstein asserted that the Fifth Amendment allowed him to decline to produce any documents whatsoever. Epstein has the burden of demonstrating the applicability of the Fifth Amendment privilege, and he cannot carry that burden. He should be required to produce documents or, at the very least, a privilege log so that the Court (and opposing counsel) can assess the validity of his claims.

Second, Epstein was asked approximately 500 hundred substantive questions at his deposition, and he took the Fifth rather than answer even a single one of them (other than the question about his name). Some of the questions he refused to answer pose no substantial risk of

1



FILED BY _____ D.C.

SEP 2 0 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

**United States District Court**
**Southern District of Florida**

Virginia L. Giuffre,

             Plaintiff,

                                Case No.: _____
                                Underlying Case No.: 15-cv-07433-RWS
                                   (Southern District of New York) (Sweet, J.)

v.

Jeffrey Epstein,

             Defendant.

_____/

### PLAINTIFF'S SEALED MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND TESTIMONY FROM JEFFREY EPSTEIN

      Plaintiff Virginia Giuffre, by and through her undersigned counsel, respectfully submits this motion to compel Jeffrey Epstein to produce documents and testimony in response to his repeated invocations of the Fifth Amendment at his recent deposition.

      This motion seeks to compel production from Epstein in three areas. First, at his deposition, Epstein asserted that the Fifth Amendment allowed him to decline to produce any documents whatsoever. Epstein has the burden of demonstrating the applicability of the Fifth Amendment privilege, and he cannot carry that burden. He should be required to produce documents or, at the very least, a privilege log so that the Court (and opposing counsel) can assess the validity of his claims.

      Second, Epstein was asked approximately 500 hundred substantive questions at his deposition, and he took the Fifth rather than answer even a single one of them (other than the question about his name). Some of the questions he refused to answer pose no substantial risk of

1

incrimination. He should be ordered to answer these specific questions, which are enumerated in Section II, below.

Third, Epstein also took the Fifth when asked questions about Ghislaine Maxwell's interactions with females overseas. Maxwell was Epstein's live-in girlfriend who assisted him in procuring underage girls. The Supreme Court has made clear that a Fifth Amendment privilege cannot be asserted with respect to incrimination in a foreign crime. And certainly Epstein has no Fifth Amendment privilege involving sex crimes committed by another person. Epstein should be ordered to answer specific questions identified in Section III, below about Maxwell's actions in foreign countries.

## FACTUAL BACKGROUND

1.    Ms. Giuffre has filed a defamation action in the Southern District of New York against Ghislaine Maxwell. In brief, Ms. Giuffre alleges that defendant Ms. Ghislaine Maxwell defamed her by calling her a "liar" for filing documents alleging that Maxwell and her boyfriend, Jeffrey Epstein, had sexually abused her and trafficked her for sexual purposes. *See* McCawley Decl., Exhibit 1 (complaint in *Giuffre v. Maxwell*).

2.    As discovery in this case has proceeded, Defendant initially suggested she would take the Fifth and refuse to answer questions. During her deposition, however, Defendant did not take the Fifth. Instead, she testified that she suffered from a series of memory lapses and could not recall many of the key issues in dispute in this case. For example, at her deposition, Defendant indicated that she lacked recollection of or was otherwise unable to specifically answer the following questions:[1]

- Whether Defendant observed a female under the age of 18 at Jeffrey Epstein's home in Palm Beach. *See* McCawley Decl., Ex. 2 (Maxwell Depo.) at 29;

---

[1] Maxwell has designated the entire contents of her deposition as confidential pursuant to the Protective Order entered in that case, and, therefore, the contents must be filed under seal.

- Whether Defendant had meet Ms. Giuffre and introduced her to Epstein. *Id.* at 33;

- Whether massage therapists at Epstein's mansions performed sexual acts. *Id.* at 52-54.

- Whether Defendant was ever present to view Ms. Giuffre massaging Epstein. *Id.* at 75;

- Whether Defendant could recall Ms. Giuffre staying at any of Epstein's six homes. *Id.* at 81.

- Whether Defendant remembered taking a trip with Ms. Giuffre to travel over to Europe, including London. *Id.* at 108.

- Whether Defendant ever flew on one of Epstein's planes with a 17 year old. *Id.* at 121-22.

- Whether the notation "GM" on flight logs for passengers on Epstein's planes represented the Defendant (*i.e.*, Ghislaine Maxwell). *Id.* at 122-23.

- Whether Defendant could recall ever being on a flight on one of Epstein's planes with Ms. Giuffre. *Id.* at 132-33.

- Whether Defendant could explain why a minor would be calling Epstein to say they had a female for him. *Id.* at 164.

- Whether Defendant was aware of any interstate or international transportation of women, aged 18 to 28, for purposes of having sex with Epstein where they would receive compensation. *Id.* at 278-79.

- Whether Defendant could recall interacting with anyone, other than Ms. Giuffre, under the age of 18 on any of Epstein's properties. *Id.* at 384.

*See* McCawley Decl. at Exhibit 2.

3.       As this Court is aware from another pending case, Epstein is a registered sex offender who entered into a non-prosecution agreement (NPA), barring his prosecution for federal crime for his sexual abuse of Ms. Giuffre and multiple other victims. Several of Epstein's sexual abuse victims have filed a suit alleging that they were not properly notified of

the NPA and the associated guilty plea that Epstein entered. The victims allege that Epstein sexually abused them and that the Government violated their rights under the Crime Victims' Rights Act (CVRA), 18 U.S.C. 3771, by not conferring with them about the deal that the Government reached with Epstein on that sex abuse. The case is currently pending. *See Jane Does v. United States*, No. 9:08-c-v-80736, DE 361 (S.D. Fla.).

4.      Because of Epstein's central role in the sexual abuse of Ms. Giuffre, Ms. Giuffre has long been attempting to depose him in the action. Epstein, who is generally regarded as having vast financial resources, evaded those efforts to be served. Accordingly, on May 25, 2016, Ms. Giuffre sought leave to serve Epstein by alternative means. *Giuffre v. Maxwell*, No. 1:15-cv-07433, DE 160 (S.D.N.Y.). Shortly thereafter, Epstein agreed through counsel to voluntarily appear for a deposition.

5.      On August 25, 2016, Ms. Giuffre served a subpoena on Epstein through his counsel. *See* McCawley Decl., Exhibit 3 (Epstein subpoena). The document sought production of 22 categories of documents directly linked to the underlying lawsuit. For example, request for production ("RFP") 1 sought all photographs of Epstein in the presence of either Ms. Giuffre or Ms. Maxwell. RFP 6 sought Epstein's documents relating to Ms. Giuffre. RFP 7 sought Epstein's documents relating to Ms. Maxwell. The subpoena requested Epstein make the production of documents within the Southern District of Florida

6.      On September 2, 2016, Epstein's legal counsel sent a letter to Ms. Giuffre's legal counsel  raising various objections to production of documents, including a Fifth Amendment privilege. *See* McCawley Decl., Exhibit 4 (Goldberger letter). (Because the letter was sent via conventional mail, counsel did not receive it until September 8, 2016.)

4

7.      On September 9, 2016, Epstein appeared pursuant to the subpoena and was deposed. *See* McCawley Dec., Exhibit 5 (transcript of Epstein's deposition). The deposition took place in West Palm Beach, Florida.

8.      After Epstein was sworn in, he invoked his Fifth Amendment right on every single substantive question he was asked, except the question asking his name. He was asked approximately 500 substantive questions by counsel for Ms. Giuffre and approximately 100 substantive questions by counsel for defendant Maxwell. He did not answer a single one.[2]

9.      Counsel for Ms. Giuffre attempted to confer with Epstein's counsel regarding the basis for the privilege objections, but Epstein's counsel declined to elaborate. Epstein Depo. Tr. at 10.

10.     With regard to the subpoena producing documents, Epstein took the Fifth rather than answer questions about whether he had substantial financial resources that could minimize any burden in responding to the document production request. *Id.* at 164:22-25.

11.     With regard to producing document, Epstein and his lawyers asserted a Fifth Amendment privilege:

Q. Did you bring any documents with you today pursuant to this subpoena?

A.  Fifth.

MR. WEINBERG [counsel for Epstein]:  We would assert the Fifth Amendment as well as the act of production for the protections against responding to that question or producing any documents, relying on the Supreme Court decision in Hubble, the second circuit August 1st decision in Greenfield.

Q.  MR. CASSELL:  Understood.  I'll assume you have a standing objection based on the grounds that you just described to all my questions with regard to this subpoena?

---

[2] Maxwell has designated the entire contents of Epstein's deposition as confidential pursuant to the Protective Order entered in that case, and, therefore, the contents must be filed under seal.

MR. GOLDBERGER:  Just so we're clear, the Fifth Amendment objection as to act of      production is going to apply to everything that --

MR. CASSELL:  Yeah.  We disagree.  You have an Fifth Amendment and act of production.

BY MR. CASSELL:
Q.   You have made no effort to collect any of the documents requested here, right? . . .[3]

THE WITNESS: Fifth Amendment.

BY MR. CASSELL:
Q.   In of the last three weeks you made no search at all for the 22 categories of documents requested here, right? . . .

THE WITNESS: Fifth.

BY MR. CASSELL:
Q.   Where are the documents requested by these 22 requested categories?

A.   Fifth.

Q.   You have not produced a privilege log for these items, have you?

A.   Fifth.

Q.   It would not be burdensome for you to search for any of these documents, would it? . . .

THE WITNESS: Fifth.

BY MR. CASSELL:

Q.   It would be quite simple for you[] to run search terms, such as Virginia, through your e-mail   accounts, right? . . .

THE WITNESS: Fifth.
BY MR. CASSELL:

Q.   And you have plenty of money to fund any of the searches that would be required to produce these documents, right? . . .

_____

[3] Defense counsel for Ms. Maxwell raised various "form and foundation" objections to these questions, which are omitted for purposes of this motion, which seeks to compel actions by Epstein, not Maxwell.

THE WITNESS: Fifth.

*Id.* at 226-29.

12.     Epstein was also asked specific questions with regard to his failure to produce

certain records, such as telephone records regarding his communications with Maxwell. Epstein

also took the Fifth rather than answer any such question. *Id.* at 229-30.

13.     Epstein was also asked various questions about Maxwell's interactions with

females overseas. In particular, he was asked about actions in England (*id.* at 140-47), France

(*id.* at 152-54), Thailand (*id.* at 154-57), Brunei (*id.* at 157-59), the Czech Republic (and former

Czechoslovakia) (*id.* at 159-63), and other foreign countries (*id.* at 163-64). Epstein refused to

answer any of these questions. In latter questioning, Epstein took the Fifth rather than admit that

part of his basis for asserting the Fifth Amendment privilege was fear of foreign prosecutions.

*Id.* at 343.

14.     Ms. Giuffre now files the motion to compel production of the documents pursuant

to her duly-issued subpoena.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 45, a party may request any person to appear for a

deposition to answer questions and to produce documents within his possession. Under Fed. R.

Civ. P. 45(d)(2)(B), a person who objects to production can lodge an objection. At that point, the

party seeking production can move for an order compelling production of the documents, Fed. R.

Civ. P. 45(d)(2)(B)(i), which is the step that Ms. Giuffre is now taking. The motion for

production of documents must be filed in the Court where production is required – *i.e.*, in this

Court. Similarly, with regard to production of testimony, a party seeking discovery can move for

an order requiring disclosure. Fed. R. Civ. P. 37(a)(1).  The motion must also be made in the Court where the discovery is to be taken – *i.e.*, in this Court. Fed. R. Civ. P. 37(a)(1).

A party contending that a subpoena should be quashed pursuant to Rule 45(c) (3)(A)(iv) must demonstrate that compliance with the subpoena would be unduly burdensome." *Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05CIV.6430(VM)(JCF), 2007 WL 4410405, at *1 (S.D.N.Y. Dec. 17, 2007).  In addition, a party asserting that he is privileged not to produce a document has the burden of establishing that privilege. *See MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 583 (S.D. Fla. 2013) (applying Florida law) ("the burden of demonstrating that a privilege applies to a particular communication . . . is on the proponent of the privilege"); *United States v. Bright*, 596 F.3d 683, 691 (9th Cir. 2010) (witness asserting Fifth Amendment privilege "bears the burden of showing testimony or documents are privileged").

While Epstein can assert a Fifth Amendment privilege in this civil case, "it is not for the witness to determine whether the answers are protected; it is a decision left to the sound discretion of the trial court after considering the circumstances of the case.  [T]o assert the privilege there must be a "substantial and 'real' " threat of incrimination and not one that is "merely trifling or imaginary." *Taubert v. State, Office of Atty. Gen.*, 79 So. 3d 77, 81 (Fla. Dist. Ct. App. 2011) (*citing Marchetti v. United States*, 390 U.S. 39, 53 (1968); *State v. Mitrani*, 19 So.3d 1065, 1068 (Fla. 5th DCA 2009) (other internal citations omitted)).  After Epstein explains the basis for his invocation, and Ms. Giuffre responds, this Court then makes findings on a question-by-question basis. *See, e.g., Capitol Prod. Corp. v. Hernon*, 457 F.2d 541, 544 (8th Cir. 1972) ("To protect the right of both parties and assure satisfactory review, the court should

clearly state the basis on which it sustains or rejects the defendant's objection to a particular question.").

Because this case is a diversity action state law generally provides the rule of decision for substantive privilege issues. *See Giuffre v. Maxwell*, DE 135 at 6, 2016 WL 175918 at * 6 (applying New York privilege law) (*citing Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 102 (S.D.N.Y. 2007) ("Because this Court's subject matter jurisdiction is based upon diversity . . . state law provides the rule of decision concerning the claim of attorney-client privilege.")). In this case, Epstein's inability to provide a basis for Fifth Amendment invocations does not turn on peculiarities of the law of any one jurisdiction, and thus authorities from various jurisdictions are cited interchangeably.

## ARGUMENT

### I.    EPSTEIN SHOULD BE COMPELLED TO PRODUCE THE REQUESTED DOCUMENTS.

#### A.    It is Not Unduly Burdensome for Epstein to Produce the Requested Documents.

If Epstein wishes to establish undue burdensomeness in producing documents, it is his burden to carry. As recounted above, however, Epstein has refused to answer questions regarding undue burdensomeness. *See* Statement of Fact, **at ¶ 10.** Presumably this is because his vast wealth would make it difficult from him to prove that point.

In any event, even were Epstein to attempt to show undue burdensomeness, he could not establish that any burden is "undue." Epstein is a central figure in this case – the most central figure, apart from the two parties, the plaintiff and the defendant. And the defendant is feigning memory loss over many of the most significant events in this case – including many events that involved Epstein. Because of his central role in the case, it is important for Ms. Giuffre to have the requested documents from him. No undue burden exists.

**B.**      **Epstein Cannot Assert a Fifth Amendment Privilege in the Documents Themselves.**

As reflected in the transcript quoted above, Epstein asserted both a Fifth Amendment privilege not to produce the documents as well as a Fifth Amendment act-of-production privilege. The act of production issues will be addressed in the next section below. But Epstein's Fifth Amendment objection is frivolous.

The contents of pre-existing documents are not protected by the Fifth Amendment. The Fifth Amendment only protects a witness against *testifying* about certain events, not producing documents already in his position. In his deposition, Epstein's legal counsel referenced two cases: *United States v. Hubbell*, 530 U.S. 27 (2000); and *United States v. Greenfield*, --- F.3d ---, 2016 WL 4073250 (2d Cir. Aug. 2, 2016). But as both of those cases make clear, a defendant does not have a Fifth Amendment privilege to refuse to produce documents (as opposed to the privilege that does exist to refuse to give testimony verbally). The Supreme Court in *Hubbell* specifically noted "the settled proposition that a person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the [Fifth Amendment] privilege." *Hubbell*, 530 U.S. at 35–36 (*citing Fisher v. United States*, 425 U.S. 391 (1976)). Similarly, the Second Circuit in *Greenfield*, following the Supreme Court's lead, held that "the *contents* of the records [do] not implicate the Fifth Amendment." --- F.3d ---, 2016 WL 4073250 at *5 (reviewing *Fisher*, 425 U.S. at 409-10). *See also Braswell v. United States,* 487 U.S. 99, 102 (1988) ("There is no question but that the contents of subpoenaed business records are not privileged."); *United States v. Doe*, 465 U.S. 605, 612 n. 10 (1984) ("If the party asserting the Fifth Amendment privilege has voluntarily compiled the document, no compulsion is present and the contents of the document are not privileged.").

10

In light of these controlling authorities, Epstein cannot rely on a Fifth Amendment self-incrimination argument to withhold the documents.

C.   **Epstein Cannot Assert an Act of Production Privilege to Refuse to Produce the Documents to Ms. Giuffre.**

Epstein cannot demonstrate that the act of producing documents in incriminating for two separate and independent reasons. First, he will not be producing anything publicly or to the Government, but only confidentially to Ms. Giuffre – a private party. Because any such production will be confidential and pursuant to a protective order, Epstein faces no substantial threat of prosecution from making the disclosure. Second, Epstein's act of production (as opposed to the documents themselves) is not incriminating.

1.   Producing Documents Confidentially to a Private Party Under a Protective Order Does Not Create a Substantial Risk of Incrimination.

During his deposition, Epstein cited two cases as supporting his Fifth Amendment invocations: *United States v. Hubbell*, 530 U.S. 27 (2000); and *United States v. Greenfield*, --- F.3d ---, 2016 WL 4073250 (2d Cir. Aug. 2, 2016). But as even a cursory review of the case captions in those cases makes clear, both of those cases involved litigation in which *the Government* was attempting to force a witness to disclose information *to it*. In *Hubbell*, the issue was whether the Government could issue a subpoena to force a witness to turn over documents to a grand jury investigating criminal charges. 530 U.S. at 30-31. In *Greenfield*, the issue was similarly whether the Government (specifically the Internal Revenue Service or IRS) could force a taxpayer to turn over records demonstrating possible tax evasion to it.

Here, no such disclosure to the Government will occur if Epstein is compelled to provide answers to Ms. Giuffre's questions. Moreover, the entire deposition has already been designated as "confidential" by defendant Maxwell, making the proceedings subject to a protective order. *See* Addendum A (copy of protective order). In such circumstances, there is no substantial risk

11

of incrimination from the mere production of documents to Ms. Giuffre's counsel. *See generally* Marc Youngelson, *The Use of 26(c) Protective Orders: "Pleading the Fifth" Without Suffering "Adverse" Consequences*, 1994 Ann. Surv. Am. L. 245 (1995); *see also Palmieri v. State of New York*, 779 F.2d 861 (2d Cir. 1985).

Pursuant to the protective order, Ms. Giuffre's counsel (and Ms. Maxwell's counsel[4]) are forbidden to disclose the materials for "any purpose except the preparation and trial of this case." Protective Order, ¶ 4. Under the terms of the protective order, all materials secured in the case will be destroyed at the end of the case. Protective Order, ¶ 12. And while the Protective Order does not bar the use of confidential materials at trial, Protective Order ¶ 13, Ms. Giuffre's counsel represent that they will not use at trial any documents that Epstein produces without first notifying Epstein and seeking leave of Court to do so. As a result, Epstein can provide documents to Ms. Giuffre, allowing her to investigate this case without compromising any interest that Epstein may have in avoiding self-incrimination. And most important, because *all* of the relevant proceedings to this motion – including this motion itself – are under seal at this time, the Government will not even be aware of Epstein's disclosure of materials, much less be in position to even file a motion to attempt alter the protective order. In such circumstances, Epstein faces no "real and substantial hazard" of his act of producing documents to Ms. Giuffre's counsel incriminating himself. *United States v. Kowalik*, 809 F. Supp. 1571, 1577 (S.D. Fla. 1992), *aff'd,* 12 F.3d 218 (11th Cir. 1993), and *aff'd,* 12 F.3d 218 (11th Cir. 1993).

     2.    Epstein's Mere Act of Producing Documents Does Not Incriminate Himself.

Epstein's act of producing documents to Ms. Giuffre's counsel will not only be unknown to the Government, but it is, in any event, not incriminating. It bears emphasizing – again – that

---

[4] It may be relevant to note that defendant Maxwell has not sought any documents from Epstein, and thus the only issue presented here is the extent to which Ms. Giuffre can use the documents.

the only possible claim Epstein can raise is not that the document he possesses are in some sense incriminating, but only that the act of producing those documents is incriminating. *See United States v. Doe*, 465 U.S. 605, __ (1984) (O'Connor, J., concurring) ("the Fifth Amendment provides absolutely no protection for the contents of private papers of any kind."); *United States v. Hubbell*, 530 U.S. 27, 35–36 (2000) (noting that it is a "settled proposition that a person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege"); *Sallah v. Worldwide Clearing LLC*, 855 F. Supp. 2d 1364, 1371 (S.D. Fla. 2012) ("Where documents are voluntarily prepared before they are requested, for example, the Supreme Court has held that such documents do not contain 'compelled testimonial evidence' within the meaning of the Fifth Amendment, even if the contents are incriminating."). The so-called "act of production doctrine" extends protection only to "communicative elements" of production, specifically where compliance with a subpoena could disclose to the Government incriminating information about "(1) the existence of the documents; (2) the [witness's] possession or control of the documents; and (3) the authenticity of the documents." *United States v. Greenfield*, 2016 WL 4073250 at *5 (*citing Fisher v. United States*, 425 U.S. 391, 411 (1976)).

Once again, Epstein will not be making any act of production to the Government. And, in any event, for many documents of the subpoenaed documents, no plausible claim of act-of-production testimony and incrimination[5] are possible. While Ms. Giuffre will respond to any effort that Epstein makes to carry *his* burden of establishing his privilege, a few simple

---

[5] Under the act of production doctrine, Epstein bears the burden of showing *both* that the production is incriminating and the testimony is incriminating.

illustrations will demonstrate that Epstein's claim that he need not produce even a single document is vastly overbroad.

### a.   Records Reflecting Communications with Maxwell

One simple example is the request for records reflecting communications between Epstein and defendant Maxwell, including cellular telephone records. *See* Subpoena, ¶¶ 7, 13. Cell phone records, which would obviously have been sent to Epstein by his carrier, can be easily authenticated by people other than Epstein – including representatives of the carrier or others knowledgeable in cell phone records. *See Sallah*, 855 F. Supp. 2d at 1374 (requiring production of contracts because "any contracts could be authenticated by someone other than [the person invoking the Fifth Amendment]"). As a result, such records are the kind of regularly-sent business records for which act of production claims are regularly rejected. *See Greenfield*, 2016 WL 4073250 at *11 (noting that "large commercial financial institutions . . . naturally would have sent regular account statements and other disclosures to account holders . . . ") (*citing United States v. Norwood*, 420 F.3d 888, 895-96 (8th Cir. 2005) (allowing production of documents "possessed by the owners of financial accounts as a matter of course" associated with specific identified accounts)); *see Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d 1158, 1165 (2d Cir. 1992) ("the act of producing copies of the telephone company statements and bills would not cause Doe to incriminate himself").

### b.   Bank Records Reflecting Payments

Another similar example is the request for financial records involving payments made to defendant Maxwell. *See* Subpoena, ¶ 21. Here again, the simple act of producing the bank records involved in such payments cannot be recorded as either testimonial or incriminating. This is a case where it can be shown "with reasonable particularity that, at the time that the act of production was sought to be compelled, . . . the materials were already known of, thereby

making any testimonial aspect [of the production] a 'foregone conclusion.'" *Sallah v. Worldwide Clearing LLC*, 855 F. Supp. 2d 1364, 1372 (S.D. Fla. 2012) (*quoting In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011*, 670 F.3d 1335, 1346 (11th Cir.2012) (some internal citations omitted). Indeed, this Court has recently required the production of bank records over a Fifth Amendment objections. *See Sallah*, 855 F.Supp.2d at 1375 ("The Fifth Amendment does not shield [the witness's] act of production in response to this request [seeking monthly bank account records]."). Moreover, because the documents involve payments to one specifically identified person – *i.e.*, Maxwell – the request calls for Epstein to produce "an objectively determinable universe[] of documents and do[es] not require [him] to employ the contents of his mind to choose what documents might be responsive to the requests. *Sallah*, 855 F.Supp.2d at 1373 (internal quotations omitted).

### c.   *Photographs Depicted Nude Females*

Epstein also lacks any self-incrimination claim for failing to produce photographs of nude or partially nude females. *See* Subpoena, ¶ 5.[6] A photograph obviously does not involve testimony. And the authenticity of photographs can be established in different ways not involving Epstein. For example, if a photograph fairly and accurately depicts Ms. Giuffre, she herself could authenticate the photograph.

### 3.   Epstein Must, at a Minimum, Produce a Privilege Log.

These examples of documents that could be produced without risk of incrimination could be easily multiplied – and Ms. Giuffre, by filing this motion, seeks to compel Epstein to respond to all 22 of her document requests. But in considering Fifth Amendment issues, a broader point

---

[6] If Epstein possesses particular photographs that are "child pornography," then production of those particular photographs could itself be incriminating. However, child pornography is narrowly defined as images of a minor "engaging in sexually explicit conduct." *See* 18 U.S.C. 2256(8)(A). Ms. Giuffre is not seeking the production of any such contraband materials from Epstein.

becomes relevant. Epstein does not appear to have even bothered to first collect responsive documents before asserting a Fifth Amendment claim. For example, during his deposition, Epstein took the Fifth rather than answer a question about whether he had produced a privilege log. Epstein Depo. Tr. at 228.

Under the Federal Rules of Civil Procedure, Epstein is required to produce a privilege log for the communications he is withholding. Fed. R. Civ. P. 45(e)(2)(A) provides that "[a] person withholding subpoenaed information under a claim that it is privileged . .. must describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Epstein should have provided this log at the time of his deposition so that he could be questioned about it. He certainly should produce a log immediately, if he hopes to sustain his claim.

The "general rule" in this Court is that a "blanket refusal to produce records or to testify is simply insufficient to support a Fifth Amendment claim." *United States v. Kowalik*, 809 F. Supp. 1571, 1577 (S.D. Fla. 1992), *aff'd*, 12 F.3d 218 (11th Cir. 1993), and *aff'd*, 12 F.3d 218 (11th Cir. 1993). Instead, a witness who has been subpoenaed to produce documents "must present himself with his records for questioning, and as to each question and each record elect to raise or not to raise the defense." *Id.* (discussing taxpayer's refusal to respond to IRS summons). In addition, the Court's local rules require the production of a privilege log whenever materials are withheld on the basis of privilege. *See* Local 26.1(e)(2)(C) ("This rule requires preparation of a privilege log with respect to all documents, electronically stored information, things and oral communications withheld on the basis of a claim of privilege . . . .except [attorney-client communications or work product materials created after the lawsuit].").

16

Epstein was served with a subpoena from the U.S. District Court for the Southern District of New York. That Court also requires production of a privilege log at the time of any objection to a subpoena. As that Court has explained:

> Both Fed. R. Civ. P. 26(b)(5) and 45(c) and S.D.N.Y. Civ. R. 26.2 require the submission of a privilege log where a person served with a document request or subpoena objects to the production of requested documents on the ground of privilege. Rule 26(b)(5) does not explicitly state exactly when the privilege log must be provided. Rule 45 is more precise, requiring that a person objecting to a subpoena must serve either written objections or move to quash within the earlier of the time fixed for compliance or fourteen days after service and, if withholding subpoenaed material on the ground of privilege, must provide a privilege log.[46] It thus suggests strongly that the privilege log, absent judicial relief, must accompany any objections or motion to quash. But Local Rule 26.2 is even more explicit. Paragraph (c) states:
>
> > "Where a claim of privilege is asserted in response to discovery or disclosure other than a deposition, and information is not provided on the basis of such assertion, the information set forth in paragraph (a) above shall be furnished in writing *at the time of the response to such discovery or disclosure, unless otherwise ordered by the court.*"
>
> This reflects a 1997 modification to the local rules "to specifically require that the privilege list ... be furnished at the time of the response unless otherwise ordered by the court."[48]

*In re Chevron Corp.*, 749 F. Supp. 2d 170, 180–81 (S.D.N.Y.), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010).

Epstein should, at a minimum, be required to produce a privilege log for each of the 22 questions in the subpoena and explain the basis for his Fifth Amendment invocations. At that point, Ms. Giuffre will be in a position to further respond and show why his invocations are not well-founded.

## II.   EPSTEIN SHOULD BE COMPELLED TO ANSWER QUESTIONS THAT FACIALLY POSE NO REAL AND SUBSTANTIAL RISK OF SELF-INCRIMINATION.

Epstein also took the Fifth with regard to many questions for which there was no realistic risk of self-incrimination. As the Eleventh Circuit has explained, "[t]he central standard for the ... application [of the fifth amendment privilege against self-incrimination is] whether the claimant is confronted by substantial and 'real', and not merely trifling or imaginary, hazards of incrimination." *United States v. Argomaniz*, 925 F.2d 1349, 1353 (11th Cir. 1991) (*citing Marchetti v. United States*, 390 U.S. 39, 53 (1968). Thus, the privilege applies only in "instances where the witness has reasonable cause to apprehend danger" of criminal liability. *Argomaniz*, 925 F.2d at 1353 (*citing Hoffman v. United States*, 341 U.S. 479, 486 (1951)).

Not only does Epstein bear the burden of establishing the validity of his privilege claim, but a "court must make a particularized inquiry, deciding, in connection with each specific area that the questioning party wishes to explore, whether or not the privilege is well-founded." *Argomaniz*, 925 F.2d 1349, 1355 (11th Cir. 1991). Here, there are a number of questions that does not appear to pose any "substantial and real" risk of incrimination. These questions include the following:

1. Q. Is there anything, including any physical conditions or ailments, that would prevent you from giving truthful testimony today? (*Id.* at 15).

2. Q. What state do you consider yourself to be a citizen of? (*Id.* at 15-16).

3. Q. You know the Defendant in this case, Ghislaine Maxwell, true? (*Id.* at 16).

4. Other questions of a similar nature about interactions with Maxwell. (*Id.* at 16-20).

5. Epstein has a joint defense agreement and common interest agreement with Maxwell. (*Id.* at 20-21).

6. Without going into the substance of any communications that you have had, you have communicated with Maxwell since September 21st, 2015, true? (*Id.* at 26.)

7. Q. What e-mail accounts has Maxwell used in her communications with you? (*Id.* at 27).

8.      Q. In June 2008, in open court, you pled guilty to two Florida State felonies, correct?  (*Id.* at 28.)

9.      Other similar questions relating to the state crime to which Epstein has already plead guilty.  (*Id.* at 28-42).

10.     Q. In fact, at that time [around 2005], Maxwell was regularly at your Palm Beach mansion, true?  (*Id.* at 43.)

11.     Q. Sir, isn't it true that Mas. Maxwell was running your Palm Beach mansion in 2000 [and other years]?  (*Id.* at 44-47.)

12.     [Following a break in the deposition] Q.  Without going into the substance of any communication, who[m] did you speak to during the break?  (*Id.* at 48.)

13.     Q. You have millions and millions of dollars available to your disposal to satisfy any need for assistance in responding to discovery in this case, true?  (*Id.* at 165.)

14.     Q. How much money have you given Maxwell since 1996?  (*Id.* at 166.)

15.     Other similar questions regarding financial payments to or transactions with Maxwell.  (*Id.* at 166-69).

16.     Q. In the period 1999 to 2005, what kind of donations did you make to the Palm Beach Police Department or to any organization associated with the Palm Beach Police Department?  (*Id.* at 172.)

17.     Q. Please describe all dinners you've ever had with Bill Clinton.  (*Id.* at 176.)

18.     Q. If we wanted to serve you with legal process in the future, what would be the simplest way to do that?  (*Id.* at 179.)

19.     Q. Please describe all your overseas travel in the last two years.  (*Id.* at 179-80.)

20.     Q. It's a matter of public record that you later settled that lawsuit [filed against you by Ms. Giuffre], right?  (*Id.* at 196.)

21.     Q. Sir, you are [un]willing to sign an unconditional waiver allowing Virginia to turn over the settlement agreement to Maxwell, right?  (*Id.* at 198.)[7]

22.     Q. Sir, you know Harvard Law Professor, now former law professor, Alan Dershowitz?  (*Id.* at 199.)

---

[7] The transcript errantly uses the term "willing," but in context the term should have been recorded by the stenographer as "unwilling."  In either event, the point remains that Epstein took the Fifth rather than answer this question.

19

23.     Q. Alan Dershowitz has sent drafts of books he was writing for you to review, right? (*Id.* at 200.)

24.     Q. Without discussing any particular attorney-client communications, what was the general type of legal work [Dershowitz] did for you? (*Id.* at 200.)

25.     Q. When did Dershowitz first become your lawyer? (*Id.* at 201.)

26.     Q. Has Dershowitz ever provided you business advice of a nonlegal nature? (*Id.* at 201-02.)

27.     Q. [Shortly after December 30, 2014] Did you authorize Dershowitz to make any public statements on your behalf? (*Id.* at 204.)

28.     Q. Was that [statement to the media that "He's as outraged as I am," referring to Epstein] an authorized statement on your behalf by Alan Dershowitz? (*Id.* at 206).

29.     Related questions about Dershowitz's statement to the media describing a statement made by Epstein. (*Id.* at 205-06.)

30.     Q. In 2000 and 2001, Dershowitz came to visit you in your New York mansion, true? (*Id.* at 206.)

31.     Q. If we focus in on the years 2000 and 2001, how many times did Dershowitz visit you in your various homes? (*Id.* at 207.)

32.     Q. While you were negotiating with the U.S. Attorney's Office, you were also working with [Assistant U.S. Attorneys] Menchel and Lurie to help them secure lucrative employment when they left the office, right? (*Id.* at 213.)

33.     Q. Bill Clinton flew on your jet a number of times in 2002, right? (*Id.* at 219.)

34.     Q. Maxwell frequently flew a helicopter in the U.S. Virgin Islands, right? (*Id.* at 221.)

35.     Q. Please list every place you and Bill Clinton have ever been together. (*Id.* at 222-23.)

36.     Q. Please describe all of your interactions with the Clinton Foundation. (*Id.* at 225.)

37.     Q. Sir, you've made no effort to collect any of the documents requested here [in the subpoena for the deposition], right? (*Id.* at 227.)

38.   Q. It would not be burdensome for you to search for any of these documents [requested in the deposition subpoena], would it? (*Id.* at 228.)

39.   Q. I want to direct your attention to the item 13, which requests all -- . . .telephone records associated with you, including cell phone records, from 1999 to present that show[] communications with Maxwell, Ghislaine Maxwell. You've taken no steps to secure those documents, right? (*Id.* at 229.)

40.   Q. You have seen Ms. Maxwell commit crimes, right? (*Id.* at 231.)

41.   Q. When Rodriguez was describing Maxwell's involvement with underage girls, your attorneys had an interest in attacking that testimony, right? (*Id.* at 254.)

42.   Q. In fact, Maxwell has been a partner with you in several of your business enterprises, right? (*Id.* at 264.)

43.   Q. You hope that Maxwell prevails in this litigation, right? (*Id.* at 265.)

44.   Q. In fact, you and your attorney actually got together on the phone with Virginia in about 2007, right? (*Id.* at 269-70.)

45.   Q. Which of your attorneys was on the phone with Virginia in about 2007? (*Id.* at 270.)

46.   Q. This litigation will affect the reputation of associates of yours, won't it? (*Id.* at 333.)

47.   Q. In fact, as a pragmatic matter, you are essentially a Defendant in this action, right? (*Id.* at 335.)

48.   Q. Please describe the way yours and Maxwell's business affairs are intertwined currently. (*Id.* at 338.)

49.   Q. What is your arrangement with Ms. Maxwell with regard to paying any . . . judgment that might be reached against her in this case? (*Id.* at 370.)

It is up to Epstein to show that each of these questions that he refused to answer posed a substantial risk of self-incrimination. Moreover, if Epstein can provide even some information in answer to the question without incriminating himself, he must provide that partial answer. *See, e.g., Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 811 F. Supp. 2d 713, 740 (S.D.N.Y. 2011), *amended on reconsideration* (Aug. 8, 2011) (discussing

documents "redacted to different degrees" to provide information without violating privilege);

*Jones v. B. C. Christopher & Co.*, 466 F. Supp. 213, 223 (D. Kan. 1979) (noting that witness

"may make partial answers and stop when he believes further comment would incriminate him").

A "witness is not exonerated from answering merely because he declares that in so doing he

would incriminate himself; his say-so does not of itself establish the hazard of incrimination."

*Martin-Trigona v. Gouletas*, 634 F.2d 354, 360 (7th Cir. 1980). Because Epstein cannot

establish the hazard of incrimination with respect to each of the questions above, the Court

should compel him to answer each of these questions (and permit counsel to ask reasonable

follow-up questions in the same vein).

### III.   EPSTEIN SHOULD BE COMPELLED TO ANSWER QUESTIONS ABOUT MAXWELL'S INVOLVEMENT WITH FEMALES IN FOREIGN COUNTRIES.

Epstein should also be compelled to answer questions about Maxwell's involvement with

females in foreign countries. The Supreme Court has made very clear that a witness may not

invoke a Fifth Amendment privilege to refuse to answer questions that pose a risk of prosecution

in foreign countries. *United States v. Balsys*, 524 U.S. 666 (1998). The Court reasoned that the

Fifth Amendment creates rights only against the federal government (and, via incorporation

through the Fourteenth Amendment, against state governments). *Id.* at 672-74. As a result, any

argument that the Fifth Amendment has extra-territorial application has been foreclosed.

*Valenzuela v. United States*, 286 F.3d 1223, 1229 (11th Cir. 2002).

In light of this controlling legal authority, Ms. Giuffre asked Epstein a series of very

narrow and specific questions about purely foreign activities. The questions began with the

limitation that Epstein was "to understand that the next series of questions we'll be dealing just

with your actions in England, not with any of your actions in the United States." Epstein Depo.

Tr. at 140. Epstein was then asked a series of questions – including a number of questions

22

involving "English females." This limitation is important because Epstein may seek to invoke a
Fifth Amendment privilege with regard to his trafficking of American girls into England. *See,
e.g.*, 18 U.S.C. § 2421(a). But no such trafficking concerns exist with regard to females already
located in England.

For these reasons, Ms. Giuffre is entitled to force Epstein to disclose even *his* activities
with foreign females in foreign countries. But in this motion, Ms. Giuffre does not go so far.
Instead, she moves the Court to compel answers to a much narrower set of questions –
specifically, Maxwell's interactions with females overseas in specific countries. The specific
questions Ms. Giuffre moves to compel Epstein to answer are:

### England

1.  Q. While in England, in Miss Maxwell's private residence, you observed Maxwell
    in the presence of English females under the age of 18, true? (*Id.*)

2.  Q. While in England, Ms. Maxwell brought you English females to satisfy your
    sexual purposes, true? (*Id.*)

3.  Q. Please describe how many times you have seen Maxwell in private locations
    with girls under the age of 18 in England? (*Id.* at 142)

4.  Q. Based on your understanding of English criminal law, you have observed
    Maxwell commit English criminal offenses of a sexual nature in England, true?
    (*Id.*)

5.  Q. Have you ever observed Maxwell commit a crime in England? (*Id.* at 143.)

6.  Q. Please describe for me all the crimes you have seen Maxwell commit in
    England. (*Id.* at 144.)

7.  Q. Please describe Maxwell's interactions in England with females under the age
    of 18. (*Id.* at 144.)

### France

8.     Q. Maxwell has frequently been to your apartment in Paris, France, true?  (*Id.* at 153.)

### Thailand

9.     Q. You saw Maxwell in the presence of Thai females under the age of 18 in Thailand, true? (*Id.* at 155.)

### Brunei

10.    Q. In 2002, you flew to Brunei with Maxwell on your private jet, true?  (*Id.* at 157.)

11.    Q. Are you aware of . . . interaction by Maxwell with women in Brunei?  (*Id.* at 159.)Q. Are you aware of any interaction by Maxwell with girls under the age of 18 in Brunei?  (*Id.*)

12.    Q. Please describe all the interactions you saw between Maxwell and girls from Brunei in Brunei. (*Id.*)

### Czech Republic/Czechoslavakia

13.    Q. Was Maxwell ever with you when you were in the presence of girls under the age of 18 in the Czech Republic?  (*Id.* at 161.)

14.    Q. Has Maxwell ever interacted with minor girls from the former country known as Czechoslovakia? (Id. at 163.)

### Other Countries

15.    Q. Please name all of the countries, not including the United States, where you have seen Maxwell in the presence of females who lived in those countries under the age of 18.  (*Id.* at 162.)

16.    Q. Please describe for me Maxwell's sexual interactions with females under the age of 18 in foreign countries with citizens of those countries.  (*Id.* at 162.)

17.    Q. Has Maxwell ever interacted with females under the age of 18 in foreign countries?  (*Id.* at 162-63.)

18.    Q. Based on your understanding of the criminal laws of other countries, has Maxwell ever committed a crime of a sexual nature in another country?  (*Id.* at 164.)

19.　　Q. Please describe all the crimes of a sexual nature that you understand Maxwell has committed foreign countries. (*Id.* at 164.)

20.　　Q. Epstein cannot claim a realistic risk of incriminating himself by discussing these specific events regarding *Maxwell*.

## CONCLUSION

For the reasons set forth above, plaintiff, Virginia Giuffre, respectfully requests that the Court grant her Motion to Compel and direct Jeffrey Epstein to: (1) produce the documents that he has been subpoenaed to produce (or, at the very least, produce a privilege log for each of the categories for which documents are sought); (2) answer the specific, identified questions identified in Section II above (and reasonable follow up questions) that pose no substantial and real risk of incrimination; and (3) answer specific questions about Maxwell's interactions with females in other countries (and reasonable follow up questions), as identified in Section III above.

Dated: September 20, 2016　　　　　Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By: _____

Sigrid McCawley
Meredith Schultz
Boies Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

David Boies
Boies Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Bradley J. Edwards
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 20th day of September, 2016, I served the foregoing

document this day on the individuals identified below via email:

Laura A. Menninger, Esq.
Jeffrey Pagliuca, Esq.
HADDON, MORGAN & FOREMAN. P.C.
150 East 10th Avenue
Denver, Colorado 80203
Tel: (303) 831-7364
Fax: (303) 832-2628
Email: lmenninger@hmflaw.com
        jpagliuca@hmflaw.com

*Counsel for Ghislaine Maxwell*

Jack Alan Goldberger
Atterbury, Goldberger & Weiss, P.A.
250 Australian Avenue South, #1400
West Palm Beach, FL 33401
(561)-659-8305
(561)-835-8691 (fax)
jgoldberger@agwpa.com

*Counsel for Jeffrey Epstein*


Sigrid S. McCawley

ADDENDUM A

United States District Court
Southern District Of New York.

---------------------------------------------------X

Virginia L. Giuffre,

    Plaintiff,

v.

Ghislaine Maxwell,

    Defendant.

---------------------------------------------------X

DATE FILED: 3/18/16

15-cv-07433-RWS

## PROTECTIVE ORDER

Upon a showing of good cause in support of the entry of a protective order to protect the discovery and dissemination of confidential information or information which will improperly annoy, embarrass, or oppress any party, witness, or person providing discovery in this case, **IT IS ORDERED**:

1.    This Protective Order shall apply to all documents, materials, and information, including without limitation, documents produced, answers to interrogatories, responses to requests for admission, deposition testimony, and other information disclosed pursuant to the disclosure or discovery duties created by the Federal Rules of Civil Procedure.

2.    As used in this Protective Order, "document" is defined as provided in FED.R.CIV.P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

3. Information designated "CONFIDENTIAL" shall be information that is confidential and implicates common law and statutory privacy interests of (a) plaintiff Virginia Roberts Giuffre and (b) defendant Ghislaine Maxwell.

4. CONFIDENTIAL information shall not be disclosed or used for any purpose except the preparation and trial of this case.

5. CONFIDENTIAL documents, materials, and/or information (collectively "CONFIDENTIAL INFORMATION") shall not, without the consent of the party producing it or further Order of the Court, be disclosed *except that* such information may be disclosed to:

   a. attorneys actively working on this case;

   b. persons regularly employed or associated with the attorneys actively working on this case whose assistance is required by said attorneys in the preparation for trial, at trial, or at other proceedings in this case;

   c. the parties;

   d. expert witnesses and consultants retained in connection with this proceeding, to the extent such disclosure is necessary for preparation, trial or other proceedings in this case;

   e. the Court and its employees ("Court Personnel") in this case;

   f. stenographic reporters who are engaged in proceedings necessarily incident to the conduct of this action;

   g. deponents, witnesses, or potential witnesses; and

2

     h. other persons by written agreement of the parties.

6.    Prior to disclosing any CONFIDENTIAL INFORMATION to any person listed above (other than counsel, persons employed by counsel, Court Personnel and stenographic reporters), counsel shall provide such person with a copy of this Protective Order and obtain from such person a written acknowledgment stating that he or she has read this Protective Order and agrees to be bound by its provisions. All such acknowledgments shall be retained by counsel and shall be subject to *in camera* review by the Court if good cause for review is demonstrated by opposing counsel.

7.    Documents are designated as CONFIDENTIAL by placing or affixing on them (in a manner that will not interfere with their legibility) the following or other appropriate notice: "CONFIDENTIAL." Discovery material designated CONFIDENTIAL shall be identified by Bates number. To the extent practical, the respective legend shall be placed near the Bates number.

8.    Designation of a document as CONFIDENTIAL INFORMATION shall constitute a representation that such document has been reviewed by an attorney for the designating party, that there is a valid and good faith basis for such designation, made at the time of disclosure or production to the receiving party, and that disclosure of such information to persons other than those permitted access to such material would cause a privacy harm to the designating party.

3

Case 1:15-cv-07433-LAP   Document 1330-15   Filed 01/05/24   Page 41 of 43
Case 1:15-cv-07433-RWS   Document 62   Filed 03/18/16   Page 4 of 6
Case 1:15-cv-07433-RWS   Document 39-1   Filed 03/02/16   Page 5 of 7

9.   Whenever a deposition involves the disclosure of CONFIDENTIAL INFORMATION, the deposition or portions thereof shall be designated as CONFIDENTIAL and shall be subject to the provisions of this Protective Order. Such designation shall be made on the record during the deposition whenever possible, but a party may designate portions of depositions as CONFIDENTIAL after transcription, provided written notice of the designation is promptly given to all counsel of record within thirty (30) days after notice by the court reporter of the completion of the transcript, and until the expiration of such thirty (30) days after notice by the court reporter of the completion of the transcript, no party or counsel for any such party may share the contents of the deposition outside the limitations of this Protective Order.

10.   Whenever a party seeks to file any document or material containing CONFIDENTIAL INFORMATION with the Court in this matter, it shall be accompanied by a Motion to Seal pursuant to Section 6.2 of the Electronic Case Filing Rules & Instructions for the Southern District of New York.

11.   A party may object to the designation of particular CONFIDENTIAL INFORMATION by giving written notice to the party designating the disputed information. The written notice shall identify the information to which the objection is made. If the parties cannot resolve the objection within ten (10) business days after the time the notice is received, it shall be the obligation of the party designating the information as CONFIDENTIAL to file an

4

Case 1:15-cv-07433-LAP   Document 1330-15   Filed 01/05/24   Page 42 of 43

Case 1:15-cv-07433-RWS   Document 62   Filed 03/18/16   Page 5 of 6
Case 1:15-cv-07433-RWS   Document 39-1   Filed 03/02/16   Page 6 of 7

appropriate motion requesting that the Court determine whether the disputed information should be subject to the terms of this Protective Order. If such a motion is timely filed, the disputed information shall be treated as CONFIDENTIAL under the terms of this Protective Order until the Court rules on the motion. If the designating party fails to file such a motion within the prescribed time, the disputed information shall lose its designation as CONFIDENTIAL and shall not thereafter be treated as CONFIDENTIAL in accordance with this Protective Order. In connection with a motion filed under this provision, the party designating the information as CONFIDENTIAL shall bear the burden of establishing that good cause exists for the disputed information to be treated as CONFIDENTIAL.

12.   At the conclusion of this case, unless other arrangements are agreed upon, each document and all copies thereof which have been designated as CONFIDENTIAL shall be returned to the party that designated it CONFIDENTIAL, or the parties may elect to destroy CONFIDENTIAL documents. Where the parties agree to destroy CONFIDENTIAL documents, the destroying party shall provide all parties with an affidavit confirming the destruction.

13.   This Protective Order shall have no force and effect on the use of any CONFIDENTIAL INFORMATION at trial in this matter.

Case 1:15-cv-07433-LAP   Document 1330-15   Filed 01/05/24   Page 43 of 43
Case 1:15-cv-07433-RWS   Document 62   Filed 03/18/16   Page 6 of 6
Case 1:15-cv-07433-RWS   Document 39-1   Filed 03/02/16   Page 7 of 7

14.    This Protective Order may be modified by the Court at any time for good cause

shown following notice to all parties and an opportunity for them to be heard.

BY THE COURT

_____

UNITED STATES DISTRICT JUDGE

3-17-16