UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

VIRGINIA L. GIUFFRE,

     Plaintiff,

v.

GHISLAINE MAXWELL,

     Defendant.

**15-cv-07433-RWS**

---------------------------------------------------X

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO
REOPEN DEFENDANT'S DEPOSTION**

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
303.831.7364

Defendant Ghislaine Maxwell ("Ms. Maxwell") files this Response to Plaintiff's Motion to Reopen Defendant's Deposition, and states as follows:

## INTRODUCTION

Plaintiff comes to this Court – for the third time – seeking to reopen the deposition of Ms. Maxwell based on the production of two innocuous documents which she received more than two months ago on August 16, 2016. Ms. Maxwell has twice sat for deposition, approaching 13 hours on the record, far more than the presumptive 7 hour limit under the Federal Rules. During that time, Plaintiff has had a full and fair opportunity to depose Ms. Maxwell on the subject matters she claims are raised by these two emails, and Plaintiff did in fact question Ms. Maxwell on the subjects covered by the emails. Moreover, despite having access to other email communications that are similar in nature and substance to the two email communications Plaintiff now claims are "key" documents, Plaintiff elected to *not* examine Ms. Maxwell on those similar documents for the purposes she now claims necessitate reopening the deposition. The deposition questions Plaintiff proposes are cumulative, duplicative and Plaintiff had the opportunity to and did obtain the information from other sources making a third deposition of Ms. Maxwell improper.

## LEGAL STANDARD

"A person who has previously been deposed in a matter may be deposed again, but only with leave of the court." *Sentry Ins. v. Brand Mgmt. Inc.,* No. 10 Civ. 347, 2012 WL 3288178, at *8 (E.D.N.Y. Aug. 10, 2012) (citing Fed.R.Civ.P. 30(a)(2)(A)(ii)). "Leave should be granted to the extent that doing so is consistent with the factors set forth in Rule 26(b)(2), such as 'whether the second deposition of the witness would be unnecessarily cumulative, whether the party requesting the deposition has had other opportunities to obtain the same information, and whether the burden of a second deposition outweighs its potential benefit.'" *Id.* (quoting *Ganci,*

2011 WL 4407461, at *2) (collecting cases); *Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 112 (S.D.N.Y. 2005) (same); *see also Dash v. Seagate Tech. (US) Holdings, Inc.*, No. CV 13-6329 LDW AKT, 2015 WL 4257329, at *6 (E.D.N.Y. July 14, 2015) (refusing to reopen deposition where party neglected to or affirmatively opted not to inquire about information available at prior deposition and had or could obtain the information through other discovery devices).

Here, Plaintiff's sole justification for an extraordinary *third* deposition are two irrelevant documents that are cumulative of information previously produced, covering topics on which Ms. Maxwell already has been deposed at length, relating to lines of inquiry covered in other written discovery that have been fully responded to, making reopening the deposition cumulative and duplicative.  Moreover, Ms. Maxwell has offered to provide responses to specific questions in writing (despite the fact that discovery has closed) which is the least burdensome and less expensive means of obtaining responses to the limited inquiry proposed regarding the two documents.

## ARGUMENT

### A.      The Motion is Untimely

Pursuant to the Initial Scheduling Order entered in this matter, motions on discovery issues would not be considered after the date scheduled for disclosure of expert witnesses absent "showing of special circumstances."  *See* DE 13, ¶ 2.  By agreement of the parties and with approval of the court, that deadline was modified and occurred on September 8, 2016.  No special circumstances exist to permit this additional discovery, well after the close of discovery on July 31, 2016.  Plaintiff had the documents at issue in advance of September 8, 2016 and could have moved at any time between August 16, 2016 and September 8, but chose not to do so.

The Motion is untimely and no special circumstance exists, nor have any been claimed, requiring denial of the motion.

**B.    November 2015 Communication from Mr. Gow Concerning a Press Inquiry is Cumulative and Duplicative of Prior Discovery and Irrelevant to the Claimed Questions**

Plaintiff's claim regarding the relevance of the Gow email is perplexing. It is a single line email *from* Gow *to* Ms. Maxwell to which Ms. Maxwell never responded. Plaintiff correctly points out that Ms. Maxwell's response is not included *precisely because she did not respond*. The email does not, as Plaintiff suggests, demonstrate that Ms. Maxwell was "in fact, involved in, and consulted about, what her press agent says on her behalf." Rather, it shows she did not respond to an inquiry for comment.

Plaintiff's Motion itself proves that Ms. Maxwell has already fully submitted to numerous discovery requests concerning whether she was "involved in, and consulted about" press communications issued by Mr. Gow, including Mr. Gow's January 2, 2015 email to the press that forms the basis of this lawsuit. Indeed, the question has been asked and answered in every conceivable form of discovery under the Federal Rules. She has answered a specific Request for Admissions on the issue, stating:

> Maxwell admits that she has worked with Mr. Gow on occasion for several years and that she has corresponded with Mr. Gow regarding communications to members of the British press to reserve her right to seek redress for their repetition of defamatory statements about Ms. Maxwell.

*See* McCawley Decl., Ex. 3, Defendant's Responses to Plaintiff's Requests for Admission at 3.

Likewise, Plaintiff extensively questioned Ms. Maxwell in her depositions about her involvement and communications with Mr. Gow regarding press inquiries, all of which makes clear that the alleged "defamatory" statement at issue was composed by Mr. Gow and Ms. Maxwell's counsel Philip Barden and issued at the advice of counsel based on the requirements

of British law.  This is evidenced by the deposition testimony cited by Plaintiff (McCawley Decl., Ex. 2), as well as multiple additional pages of testimony that Plaintiff conveniently ignores.  Ms. Maxwell clearly testified on this issue during her deposition (Menninger Decl., Ex. A at 272-274):

Q.  I provided you with and I'm sorry, I don't know all the numbers, but the statement that was issued by Ross Gow that should be a single page still in your stack 4 of exhibits there.

MR. PAGLIUCA:  Exhibit 10.

Q.  Did you authorize Ross Gow to issue that statement on your behalf in January of 2015?

A.  I already testified that that was done by my lawyers.

Q.  So did you authorize your lawyers to issue a statement on your behalf through Ross Gow in January of 2015?

A.  It was determined that I had to make a statement in the United Kingdom because of the appalling lies and I just thought of some new ones. Virginia's statement that I celebrated her 16 birthday with her.  We can all agree that that's entirely impossible.  I didn't meet her until she was 17 and other lies she perpetrated that she had a diary and we all know is a complete fake.  That's not a diary.  It was just a book she was writing that you helped sell to the press, as if it was a diary, when it was just a story that she is writing of fiction, fictional story for money.

Q.  How did you arrive at the words that were put in that statement?

MR. PAGLIUCA:  I'm going to object and instruct you to the extent this calls for any privileged communications between yourself and Mr. Barden or another lawyer representing you, we're asserting privilege.  If you can answer that without that, feel free to answer.

Q.  So what your counsel is saying, and I will exclude any privileged communications you had with your lawyers. The question is, how did you arrive at the words that were put in that statement, if you can tell me without disclosing privileged communications?

A.  I'm not sure that I can.

She was questioned for a third time on the same subject, again answering fully to all non-privileged information (Menninger Decl., Ex. A at 360-363).

I will mark this as Maxwell 17.

Q. This is an email from you on January 10, 2015 to Philip Barden and Ross Gow.  The statement you had before you earlier, that, if you can pull that in front of you, the one page press release that you gave.  You might know from memory. Was the press release that you issued with the statement about Virginia issued in or around January 2, 2015?

A. As best as I can recollect.

Q. I want to turn your attention to the document I just handed you which is Bates No. 001044, from you to Philip Barden and Ross Gow.  It says in the first sentence, I'm out of my depth to understand defamation, other legal hazards and I don't want to end up in a lawsuit aimed at me from anyone, if I can help it.  Apparently, even saying Virginia is a liar has hazards. You knew at the time you called Virginia a liar in early January of 2015 that that was something that would result in a lawsuit, is that correct?

A. I have legal advice that I took.

Q. But you knew in early January by making a statement calling Virginia a liar that you were subjecting yourself to a legal  dispute with her?

Q. I took legal advice as to what should be said and not be said and the legal advice that came from the United Kingdom was –

A. Sorry.

Q. So is it correct without telling me what you talked to your lawyers about that you knew because this is dated January 10 that when you made this statement in early January, January 2 of 2015 you knew that calling Virginia a liar would subject you to a legal action, isn't that correct?

A. All I can say is I asked a question and received legal advice.

Likewise, all the communications between Mr. Gow and Ms. Maxwell pre-dating the statement issued by Mr. Gow on January 2, 2015 that form the basis of this suit were produced in advance of *both* of Ms. Maxwell's depositions.  *See* Menninger Decl., Ex. B, [GM_01036-01044].  Any questioning concerning Ms. Maxwell's involvement or input into the content of the single statement was available for exploration.  Yet, Plaintiff either neglected to or decided not to question Ms. Maxwell about the majority of these documents at their own option, which cannot form the basis for reopening a deposition.  *Dash,* 2015 WL 4257329, at *6 (refusing to reopen deposition where party neglected to or affirmatively opted not to inquire about information available at prior deposition).

Finally, Mr. Gow himself is scheduled to sit for a deposition himself during November on topics to include his correspondence with Ms. Maxwell and with the press concerning Ms. Maxwell, presumably to include the very email that forms the subject of this motion.  Plaintiff will have a full and fair opportunity to question him under oath regarding the email that he wrote to Ms. Maxwell.

Finally, Plaintiff claims relevance and prejudice based on a one-line email, received by Ms. Maxwell and to which she never responded, on November 15, 2015 – almost a year after the alleged defamatory statement was issued by Mr. Gow.  This document has no bearing on the issue Plaintiff claims requires reopening of her deposition – Ms. Maxwell's input into the content of the January 2, 2015.  And, again, nearly identical emails requesting input from Ms. Maxwell based on media and media inquiries post-dating January 2, 2015, including press inquiries after the filing of this lawsuit, were produced prior to the deposition and Plaintiff chose not to question Ms. Maxwell about these emails for the purposes she now claims are relevant. Menninger Decl., Ex. C [GM_01060-01068, 00594].

Ms. Maxwell has fully testified regarding the consultation she had on the January 2, 2015 email, produced all non-privileged documents prior to her depositions, and this later dated email is irrelevant to Ms. Maxwell's clear sworn responses on the subject matter.

### C.    Plaintiff Misrepresents Previous Discovery Concerning Ms. Maxwell's Communications with Jeffery Epstein

Plaintiff's half-hearted attempt to claim that a communication between Ms. Maxwell and Mr. Epstein related to a possible response to Plaintiff's published false claims concerning Ms. Maxwell is somehow "new," not previously explored, or relevant is provably inaccurate.  The entirety of Plaintiff's argument concerning the "key" nature of this email is:

> [T]he email with Epstein regarding a reply to "one further allegation," shows that
> Defendant is active in shaping her public statements regarding Ms. Giuffre, and

giving drafts to Epstein for his approval. Accordingly, Defendant was never deposed on (1) why she was seeking Epstein's permission for having Barden make a "reply;" (2) what Epstein's relationship was with Barden; (3) or who drafted the original communication at the bottom of the email, as it does not appear to have been created by either Defendant or Epstein.

As Plaintiff is fully aware, Ms. Maxwell already fully deposed on "(1) why she was seeking Epstein's permission for having Barden make a 'reply'"; any claim to the contrary is simply false. Ms. Maxwell produced (prior to her depositions) several similar communications between herself and Mr. Epstein in which she sought input from Mr. Epstein on having her attorney, Mr. Barden, respond to allegations made by Plaintiff concerning Ms. Maxwell. Indeed in one email, Mr. Epstein advised Ms. Maxwell to go out and hold her head high because she had done nothing wrong. *See* Menninger Decl., Ex. D [GM_01069-01072; 01075; 01084-01099]. Further, Ms. Maxwell was specifically deposed on this issue:[1]

> (Maxwell Exhibit 23, email, marked for identification.)
>
> Q. This is an email from, if you look at the chain at the top, you will see it's from you to Jeffrey on January 27 and the email at the bottom of the chain is from Jeffrey to you on January 27. He states, What happened to you and your statement, question mark, question mark. And you put at the top, I have not decided what to do.
>
> A. Uh-huh.
>
> Q. Why was Jeffrey interested in you making a statement to the press?
>
> A. I don't know that he was interested. We made a statement and then I was being advised to make an additional statement and I never did.
>
> Q. Was Jeffrey communicating with you regularly on what additional statement you might make?
>
> A. No, I've communicated with him very little, as little as possible.
>
> Q. Why did you feel you had to keep him informed of statements you were making to the press?
>
> A. I didn't feel I had to.

---

[1] As to the substance of the email – Plaintiff's fabricated claim that Mr. Epstein and Ms. Maxwell requested Plaintiff to bear a child for them – Ms. Maxwell was extensively questioned in her first deposition. Menninger Decl. Ex. A, at 337-39.

> Q.  Then why you were communicating with him about statements you were making to the press?
>
> A.  Insofar as this is the case, it's really all about Jeffrey, it's not a case about me.

Menninger Decl., Ex. A at 392-94.

As to the second point, there is simply no basis for claiming any "relationship" exists between Mr. Barden and Mr. Epstein – there is none.  Again, numerous communications were produced in advance of Ms. Maxwell's depositions relating to Ms. Maxwell's request for input on Mr. Barden's draft statements to the press (Menninger Decl., Ex. D), thus making any line of inquiry available to Plaintiff had she believed it were actually relevant or "key."  Regardless, Plaintiff provides no reason to claim that there is any relevance to a line of inquiry regarding an alleged relationship between Mr. Epstein and Mr. Barden.

As for the final point, it is obvious from the subject line and content of the email that Ms. Maxwell was forwarding a non-privileged excerpt of a privileged communication from her attorney, Mr. Barden, to Mr. Epstein.  This is certainly no basis to reopen a deposition as the document speaks for itself.

**D.      The Reopening of Plaintiff's Deposition is Irrelevant**

Plaintiff attempts to distract the Court form the legal standards required to reopen a deposition, instead arguing that she did not oppose reopening her own deposition.  Of course, Plaintiff did not simply inadvertently miss two irrelevant documents in a 1,200 page production.  Rather, prior to her deposition she failed to identify over thirteen (13) healthcare providers and failed to produce hundreds of pages of medical records, work records and educational records, all of which were requested prior to her deposition.  She even omitted records from her *current* therapist and from the doctor who was (and is, apparently) prescribing substantial quantities of drugs at the time of her deposition.  Indeed, Plaintiff's second deposition still cannot be

scheduled because Plaintiff persists in her failures to provide complete medical records.  Despite Plaintiff's September 21, 2016 Motion for Court Approval of Plaintiff's Certification of Production claiming that she has completed production of medical records and emails, Plaintiff sent a release for health care information from her insurance companies on October 10, 2015 (Menninger Decl., Ex. E [GIUFFRE009094-009102])– a release and records that were requested in April.  To date, those (and many other) records have not been produced.

Moreover, Plaintiff made substantive and completely contradictory changes to her deposition testimony in errata sheets after the conclusion of her deposition.  As well, she was instructed by counsel not to answer questions about false statements published in the media attributed to her that were critically relevant and she refused to answer the questions.  She later conceded no privilege precluded her answers, and that is among the reasons she agreed to sit for a second deposition.  Unlike Plaintiff, Ms. Maxwell had no opportunity to depose Plaintiff on multiple and critical issues including unproduced medical records, and undisclosed treatment providers, undisclosed educational history, undisclosed employment, undisclosed intervening causes of her alleged emotional distress, her material contradictory changes to testimony, and any statements published and attributed to her by the media she admits are false.  Ms. Maxwell did not request to reopen the deposition to seek cumulative, duplicative and/or irrelevant information.  The two situations are vastly different and cannot be compared.

**WHEREFORE**, Defendant Ghislaine Maxwell requests that Plaintiff's Motion to Reopen her Deposition and permit a third deposition be denied.

Dated: October 24, 2016

Respectfully submitted,


/s/ Laura A. Menninger
Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice)*
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:   303.831.7364
Fax:       303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*

10

## CERTIFICATE OF SERVICE

I certify that on October 24, 2016, I electronically served this *Defendant's Response to Plaintiff's Motion to Reopen Defendant's Deposition* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

J. Stanley Pottinger
49 Twin Lakes Rd.
South Salem, NY 10590
StanPottinger@aol.com

*/s/ Nicole Simmons*
Nicole Simmons