# EXHIBIT A

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - x
VIRGINIA L. GIUFFRE,

        Plaintiff,

                              Case No.:
  -against-                15-cv-07433-RWS

GHISLAINE MAXWELL,

        Defendants.

- - - - - - - - - - - - - - - - - - - - x

              **CONFIDENTIAL**

      Videotaped deposition of GHISLAINE
MAXWELL, taken pursuant to subpoena, was
held at the law offices of BOIES
SCHILLER & FLEXNER, 575 Lexington
Avenue, New York, New York, commencing
April 22, 2016, 9:04 a.m., on the above
date, before Leslie Fagin, a Court
Reporter and Notary Public in the State
of New York.

                - - -
       MAGNA LEGAL SERVICES
   1200 Avenue of the Americas
    New York, New York 10026



Page 272

```
 1         G Maxwell - Confidential
 2     Q.   Is it your testimony that [redacted]
 3   [redacted] knows Jeffrey Epstein through the work
 4   that she does for you?
 5         MR. PAGLIUCA:  Objection to the
 6   form and foundation.
 7     A.   I don't recollect, and I don't
 8   recollect how I met [redacted] and I can't testify
 9   to what [redacted] relationship is or is not with
10   Jeffrey.
11     Q.   Have you ever talked to Jeffrey
12   about [redacted]
13     A.   I don't know what you mean.
14     Q.   In any way, have you ever had a
15   conversation with Jeffrey about [redacted]
16     A.   In what context.
17     Q.   In any context.  Have you ever
18   talked to Jeffrey Epstein about [redacted]
19     A.   [redacted] works for me so it's entirely
20   possible that in the course of conversations
21   since 2002, 2003 that a conversation in which
22   [redacted] name would have come up is entirely
23   possible.
24     Q.   I provided you with and I'm sorry,
25   I don't know all the numbers, but the
```



Page 273

```
 1              G Maxwell - Confidential
 2     statement that was issued by Ross Gow that
 3     should be a single page still in your stack
 4     of exhibits there.
 5              MR. PAGLIUCA:  Exhibit 10.
 6         Q.   Did you authorize Ross Gow to issue
 7     that statement on your behalf in January of
 8     2015?
 9         A.   I already testified that that was
10     done by my lawyers.
11         Q.   So did you authorize your lawyers
12     to issue a statement on your behalf through
13     Ross Gow in January of 2015?
14         A.   It was determined that I had to
15     make a statement in the United Kingdom
16     because of the appalling lies and I just
17     thought of some new ones.
18              Virginia's statement that I
19     celebrated her 16 birthday with her.  We can
20     all agree that that's entirely impossible.  I
21     didn't meet her until she was 17 and other
22     lies she perpetrated that she had a diary and
23     we all know is a complete fake.  That's not a
24     diary.  It was just a book she was writing
25     that you helped sell to the press, as if it
```



Page 274

```
 1            G Maxwell - Confidential
 2     was a diary, when it was just a story that
 3     she is writing of fiction, fictional story
 4     for money.
 5         Q.    How did you arrive at the words
 6     that were put in that statement?
 7            MR. PAGLIUCA:  I'm going to object
 8         and instruct you to the extent this
 9         calls for any privileged communications
10         between yourself and Mr. Barden or
11         another lawyer representing you, we're
12         asserting privilege.  If you can answer
13         that without that, feel free to answer.
14         Q.    So what your counsel is saying, and
15     I will exclude any privileged communications
16     you had with your lawyers.
17            The question is, how did you arrive
18     at the words that were put in that statement,
19     if you can tell me without disclosing
20     privileged communications?
21         A.    I'm not sure that I can.
22         Q.    Is the statement that you issued
23     true?
24         A.    What do you mean by that?
25         Q.    Is the statement that you issued,
```



Page 337

```
 1          G Maxwell - Confidential
 2      Q.   To become pregnant, did you or
 3   Jeffrey Epstein ever ask any female to become
 4   pregnant and carry Jeffrey Epstein's baby for
 5   you or for Jeffrey?
 6           MR. PAGLIUCA:  Objection to form
 7       and foundation.
 8      A.   You need to be very specific.  I
 9   have no idea what you are talking about.
10   That's completely rubbish.
11      Q.   Did you or Jeffrey Epstein ask any
12   female to become pregnant and carry his baby
13   for either him or you?
14           MR. PAGLIUCA:  Objection to the
15       form and foundation.  Go ahead.
16      A.   I can't testify to anything Jeffrey
17   did or didn't do when I am not present, but I
18   have never asked anybody to carry a baby for
19   me.
20      Q.   Or anything along those lines?
21           MR. PAGLIUCA:  Object to the form
22       and foundation.
23      Q.   I want to make sure we are talking
24   about the same thing, not physically carry a
25   baby, I mean become pregnant with a baby?
```



Page 338

```
 1          G Maxwell - Confidential
 2              MR. PAGLIUCA:  Objection to the
 3      form and foundation.
 4      Q.   I want to make sure we are clear.
 5      A.   I don't know what you are asking.
 6      Q.   That's why I want to make sure we
 7   are clear.
 8      A.   We are clear.  I never asked
 9   anybody to carry a baby for me.
10      Q.   Do you know if Jeffrey ever asked
11   anybody to carry a baby for him?
12      A.   I'm not going to characterize any
13   conversation Jeffrey had with somebody else.
14      Q.   You are not aware of that, is that
15   your testimony?
16      A.   I am testifying I never have and I
17   will not testify for anything for Jeffrey.
18      Q.   Did you ever hear Jeffrey ask
19   anybody to carry a baby for him?
20      A.   I don't recollect conversation
21   about Jeffrey and babies in any form.
22      Q.   Did Jeffrey ever tell he wanted to
23   have a baby?
24      A.   I don't recollect baby
25   conversations with Jeffrey.
```



```
 1         G Maxwell - Confidential
 2      Q.   So he never told you he wanted to
 3   have a baby?
 4      A.   I don't recollect any baby
 5   conversations with him saying he wanted to
 6   have a baby.
 7      Q.   Did you ever bring any females to
 8   the Dubin's house that were not your friends'
 9   children that were under the age of 18?
10          MR. PAGLIUCA:  Objection to form
11      and foundation.
12      A.   I have never, to my knowledge,
13   brought anybody under the age of 18 that's
14   not a friend of my family or my nieces or
15   nephews to the Dubin household.
16      Q.   Earlier today you testified, I
17   believe, that with respect to your town home
18   Jeffrey paid for some of that and then gave
19   you a loan, is that correct?
20          MR. PAGLIUCA:  Objection to the
21      form and foundation.
22      A.   I said, actually I think it was a
23   loan, I believe it was a loan.
24      Q.   The whole thing?
25      A.   As best as I can recollect.
```



Page 360

```
 1           G Maxwell - Confidential
 2              MR. PAGLIUCA:  Objection to the
 3       form and foundation.
 4       A.    I was not coordinating with
 5   Jeffrey.  He had details that I did not have.
 6   I was not party to his case.  I needed to
 7   have information in order to be able to
 8   respond so I was not coordinating with him.
 9   I was merely asking for details that I could
10   have.
11       Q.    Did Jeffrey write any of your press
12   statements for you?
13       A.    No.
14       Q.    He didn't draft any of them?
15       A.    I have a lawyer who was working on
16   this and that was -- I asked, I believe as I
17   recollect asked him for information to make
18   sure I was being accurate in the
19   representations for whatever I was
20   discussing.
21       Q.    Did Jeffrey provide you with any
22   drafts of statements to provide to the press?
23       A.    I only recall drafts from my
24   lawyer.
25       Q.    I will mark this as Maxwell 17.
```



Page 361

```
 1              G Maxwell - Confidential
 2              (Maxwell Exhibit 17, email, marked
 3         for identification.)
 4        Q.   This is an email from you on
 5   January 10, 2015 to Philip Barden and Ross
 6   Gow.  The statement you had before you
 7   earlier, that, if you can pull that in front
 8   of you, the one page press release that you
 9   gave.  You might know from memory.
10              Was the press release that you
11   issued with the statement about Virginia
12   issued in or around January 2, 2015?
13        A.   As best as I can recollect.
14        Q.   I want to turn your attention to
15   the document I just handed you which is Bates
16   No. 001044, from you to Philip Barden and
17   Ross Gow.  It says in the first sentence, I'm
18   out of my depth to understand defamation,
19   other legal hazards and I don't want to end
20   up in a lawsuit aimed at me from anyone, if I
21   can help it.  Apparently, even saying
22   Virginia is a liar has hazards.
23              You knew at the time you called
24   Virginia a liar in early January of 2015 that
25   that was something that would result in a
```



```
 1          G Maxwell - Confidential
 2   lawsuit, is that correct?
 3          MR. PAGLIUCA:  Objection to the
 4      form and foundation.
 5      A.   I have legal advice that I took.
 6      Q.   But you knew in early January by
 7   making a statement calling Virginia a liar
 8   that you were subjecting yourself to a legal
 9   dispute with her?
10          MR. PAGLIUCA:  Objection to the
11      form and foundation.
12      A.   I took legal advice as to what
13   should be said and not be said and the legal
14   advice that came from the United Kingdom
15   was --
16          MR. PAGLIUCA:  You are not allowed
17      to talk about any legal advice that you
18      got from anybody that's a lawyer.
19      A.   Sorry.
20      Q.   So is it correct without telling me
21   what you talked to your lawyers about that
22   you knew because this is dated January 10
23   that when you made this statement in early
24   January, January 2 of 2015 you knew that
25   calling Virginia a liar would subject you to
```



Page 363

```
 1            G Maxwell - Confidential
 2     a legal action, isn't that correct?
 3            MR. PAGLIUCA:  Objection to the
 4        form and foundation.  As to what you
 5        knew -- whatever she knows would be
 6        privileged.
 7            MS. McCAWLEY:  I'm asking if she
 8        knows.  I'm not asking her to tell me
 9        about her privileged communications.
10        A.    All I can say is I asked a question
11     and received legal advice.
12            (Maxwell Exhibit 18, email, marked
13        for identification.)
14        Q.    This is an email dated January 15,
15     2015 from Jeffrey Epstein to you?
16        A.    Uh-huh.
17        Q.    It states in the first line, do you
18     want          to come out and say she was the
19     girlfriend during the time?
20            MR. PAGLIUCA:  Objection to the
21        form and foundation of the question and
22        actually the word is              , there
23        is no vowel in there.
24            MS. McCAWLEY:  I was just trying to
25        pronounce it.
```



Page 392

```
 1          G Maxwell - Confidential
 2   This will now end?
 3           MR. PAGLIUCA:  Objection to the
 4       form and foundation.
 5       A.   I have no idea.
 6       Q.   Did you discuss with him what he
 7   meant by the statement, This will now end?
 8       A.   I don't recall.
 9       Q.   Was he taking any action to ensure
10   that, quote, this will now end?
11       A.   I have no idea.
12           (Maxwell Exhibit 23, email, marked
13       for identification.)
14       Q.   This is an email from, if you look
15   at the chain at the top, you will see it's
16   from you to Jeffrey on January 27 and the
17   email at the bottom of the chain is from
18   Jeffrey to you on January 27.
19           He states, What happened to you and
20   your statement, question mark, question mark.
21   And you put at the top, I have not decided
22   what to do.
23       A.   Uh-huh.
24       Q.   Why was Jeffrey interested in you
25   making a statement to the press?
```



Page 393

```
 1          G Maxwell - Confidential
 2              MR. PAGLIUCA:  Objection to the
 3       form and foundation.
 4       A.   I don't know that he was
 5  interested.  We made a statement and then I
 6  was being advised to make an additional
 7  statement and I never did.
 8       Q.   Was Jeffrey communicating with you
 9  regularly on what additional statement you
10  might make?
11              MR. PAGLIUCA:  Objection to the
12       form and foundation.
13       A.   No, I've communicated with him very
14  little, as little as possible.
15       Q.   Why did you feel you had to keep
16  him informed of statements you were making to
17  the press?
18              MR. PAGLIUCA:  Objection to the
19       form and foundation.
20       A.   I didn't feel I had to.
21       Q.   Then why you were communicating
22  with him about statements you were making to
23  the press?
24              MR. PAGLIUCA:  Objection to the
25       form and foundation.
```



Page 394

```
 1            G Maxwell - Confidential
 2       A.   Insofar as this is the case, it's
 3   really all about Jeffrey, it's not a case
 4   about me.
 5       Q.   In 2009, did you direct your
 6   lawyer, either directly or indirectly, to
 7   tell Brad Edwards that you were unavailable
 8   to attend a deposition?
 9            MR. PAGLIUCA:  Objection to the
10       form and foundation.  And this is a
11       privileged communication as I understand
12       the question, what someone said or
13       didn't say to their lawyer.  So don't
14       answer the question.
15       Q.   Can you answer that question
16   without revealing a privileged communication?
17       A.   Can you ask the question again?
18       Q.   In 2009, did you direct your lawyer
19   to tell Brad Edwards that you were
20   unavailable to attend a deposition?
21            MR. PAGLIUCA:  Same instruction.
22       Q.   Did you make any statement in 2009
23   to anybody that you were unavailable to
24   attend a deposition?
25       A.   My mother was sick and I don't
```

