**United States District Court**
**Southern District of New York**

Virginia L. Giuffre,

           Plaintiff,                  Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

           Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR SANCTIONS**

BOIES SCHILLER & FLEXNER LLP
Sigrid S. McCawley (Pro Hac Vice)
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Telephone:  (954) 356-0011
Facsimile:   (954) 356-0022

## **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................. 1

II.    LEGAL ARGUMENT ........................................................... 5

    A.     Defendant's Motion Should Be Denied Because it is Untimely and Defendant is Merely Trying to Deflect from Her Own Discovery Misconduct.......................5

    B.     There Was No Duty to Preserve The Journal Because There Was No Pending or Reasonably Foreseeable Litigation to Which Ms. Giuffre Was a Party.............6

    C.     There Was No Willful Destruction of Evidence........................................8

    D.     Defendant Cannot Show That The Journal Was Favorable to Her.........................9

    E.     No Alleged Spoliation in the Context of an Unrelated Claim Attaches to a Future Defamation Claim .......................................................13

    F.     Defendant Can Show No Prejudice and She Has the "Best Evidence"................14

III.   CONCLUSION ................................................................. 16

CERTIFICATE OF SERVICE ...................................................... 18

## <u>TABLE OF AUTHORITIES</u>

Page

**<u>Cases</u>**

*Brigham Young Univ. v. Pfizer, Inc.*,
   282 F.R.D. 566 (D. Utah 2012) .......................................................................... 14

*Cedar Petrochemicals, Inc. v. Dongbu Chem. Co.*,
   769 F. Supp. 2d 269 (S.D.N.Y. 2011) ................................................................. 9

*Gutman v. Klein*,
   2010 WL 4916722 (E.D.N.Y. Nov. 24, 2010) ..................................................... 6

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
   643 F. Supp. 2d 482 (S.D.N.Y. 2009) ................................................................. 8

*In re Pfizer Inc. Securities Litigation*,
   288 F.R.D. 297 (S.D.N.Y. 2013) .............................................................. 9, 13, 14

*Jane Doe No. #1 and #2 v. United States*,
   No. 9:08-cv-80736-KAM, S.D. Fla. [at DE 324] ................................................ 7

*Kraus v. General Motors Corp.*,
   2007 WL 3146911 (S.D.N.Y. Oct. 24, 2007) ................................................ 6, 13

*Mercy v. County of Suffolk*,
   748 F.2d 52 (2d Cir.1984) ................................................................................... 5

*Orbit One Commc'ns. v. Numerex Corp.*,
   271 F.R.D. 429 (S.D.N.Y. 2010) ...................................................................... 10

*Treppel v. Biovail Corp.*,
   233 F.R.D. 363 (S.D.N.Y. 2006) ...................................................................... 15

*United States v. Aleshire*,
   2014 WL 11394905 (W.D. Wis. Oct. 20, 2014) .............................................. 15

**<u>Statutes</u>**

18 U.S.C. § 3771 ........................................................................................................ 6

18 U.S.C. § 3771(a) .................................................................................................... 6

18 U.S.C. § 3771(a)(8) ............................................................................................... 7

**<u>Rules</u>**

Fed. Rul. Evid. 401 .................................................................................................... 9

By and through her undersigned counsel, Ms. Giuffre hereby submits her Response in Opposition to Defendant's Motion for Sanctions.  Defendant's frivolous motion should be denied.  As part of a therapeutic exercise, Ms. Giuffre burned a personal journal with memories of her sexual abuse in 2013 – two years before the defamation in this case occurred and three years before this litigation began.  Sanctions are, accordingly, obviously not appropriate.

## I.    INTRODUCTION

On November 2, 2016, this Court entered an Order granting Ms. Giuffre an adverse inference instruction due to Defendant's willful refusal to turn over electronic discovery.  Just one month later, the Defendant filed this frivolous motion, asking for an adverse inference against Ms. Giuffre because Ms. Giuffre burned an emotionally painful journal as part of a healing process – healing from Defendant's sex abuse – *two years before* this defamation cause of action accrued and *three years before* the start of this litigation,[1] and because Ms. Giuffre could not find a notebook in which she recorded her dreams, an item for which there is no evidence of having evidentiary value whatsoever.  Significantly, there is no evidence that the dream journal became missing *after* she had a duty to preserve it, and Defendant has made no showing that Ms. Giuffre had this dream journal in her possession while she had a duty to preserve. Ms. Giuffre testified that she thought it was located in her child's closet, but upon searching for it, she was not able to find it.  It is unknown even to Ms. Giuffre when it was lost.

The basic facts appear to be uncontested.  As Ms. Giuffre testified in her depositions, she was sexually abused by Epstein and the Defendant in and around 2000. Then, a decade after her sexual abuse, in around 2011 and 2012, she wrote some memories of that sexual abuse in a journal.  Then in 2013, she burned that journal as a "spiritual" exercise to help her heal from the

---

[1] Indeed, Defendant raised this same issue at this Court's hearing back in May of 2016, yet Defendant waited seven months, until after the Court issued an adverse inference against her, to file this motion for sanctions.

sexual abuse.  Of course, the facts at issue in this case began in January 2015, when Defendant

defamed Ms. Giuffre, leading to this lawsuit, filed in September 2015.  Ms. Giuffre also testified

that, at one point, she had a dream journal, but never testified that she had her dream journal

during the pendency of this litigation or that her dream journal had anything related to this

litigation within it.

Ms. Giuffre performed a diligent search for all documents even potentially connected to

this case.  She produced a 141 page manuscript from her electronic files, which was also written

in 2011; she produced a huge number of photographs and travel documents from the time

Defendant and Epstein abused her; and she produced a copious amount of ESI from various

sources.  To leave no stone unturned, Ms. Giuffre paid $600 to retrieve storage boxes from a

remote location and produced additional photographs found within those boxes.  After a diligent

search with the assistance of her attorneys, Ms. Giuffre was unable to locate the spiral bound

notebook into which she used to record some of her dreams.  However, the great number of

documents produced by Ms. Giuffre, and those produced by third-parties, unambiguously point

to the conclusion that this dream book would not have been useful to Defendant, because if it

included anything related to this matter, it would likely have simply contained additional notes

about Defendant's involvement with Epstein in abusing her.

From these simple facts, Defendant now seeks to spin a claim of "intentional destruction

of evidence."  That the Defendant is asking the Court to somehow penalize Ms. Giuffre for

taking a step to heal from Defendant's sexual abuse is perverse.  In any event, it is wholly

unsupported in law, as no duty exists to preserve documents before a cause of action accrues.  Of

course, Ms. Giuffre could not predict in 2013 that Defendant would later defame her in 2015.

Therefore, Ms. Giuffre had no duty to preserve anything at that point in time.  And, in any event,

she has performed a diligent search to locate all potentially relevant documents.  Ms. Giuffre was unable to find anything connected with the dream journal, which is obviously why she could not produce it.

Defendant is unable to cite even a single case in which any court has imposed a "sanction" for document destruction entirely unrelated to the case before the court.  Seeming to recognize this problem, Defendant claims that Ms. Giuffre somehow was obligated to preserve her journal in 2013 because she was contemplating joining a case involving the Crime Victims Rights Act (CVRA) against the federal government then pending in the Southern District of Florida.  If we understand the chain of reasoning correctly, Defendant apparently argues that (1) Ms. Giuffre's mere interest in the CVRA case in 2013, which later matured into a motion to join in 2014, somehow triggered some duty to preserve the notes about sex abuse (which she had made earlier in her journal in 2011 and 2012) when she was considering burning the notes in 2013; (2) that duty to preserve those notes in 2013 potentially related to the motion she filed in the CVRA case in 2014; and (3) that such a duty, somehow, attaches to a defamation claim due to statements made by the Defendant in 2015.  This contrived argument is wholly without merit for several reasons.  First, Ms. Giuffre had no duty to preserve her journal in 2013.  Second, even if any duty arose (which it did not), the duty would have been to the U.S. Attorney's Office – which has not made any argument that its interests have been impaired.  Third, any duty to preserve the journal would have been in connection with *that* litigation, not this defamation case which arose several years later.  Fourth, in any event, Ms. Giuffre has produced a lengthy, 141-page draft manuscript that was written in 2011, the same year she was writing in her journal, as well as the notes from her treating psychologist from the same year.

3

Tellingly, Defendant cites no case law – in any jurisdiction – to support the proposition that any duty to preserve materials for a federal crime victim's right case in the past (let alone one that involved wholly different parties and wholly different causes of action) somehow transfers to a New York state law defamation claim involving a different party that arose years later. To the contrary, even rulings in the Southern District of New York hold the opposite, but Defendant failed to cite those rulings. Instead, Defendant's brief quotes extensively from cases in which parties destroyed evidence **after** the cause of action accrued and **after** the parties had notice of a duty to preserve. Those are inapposite.

Because this is a losing argument for the Defendant, unsupported by law or logic, Defendant's brief turns to fiction and fancy, making inflammatory claims against Ms. Giuffre and her attorneys that have absolutely no basis in fact. For example, Defendant's brief states that "there is reason to suspect that Plaintiff acted in concert with or was encouraged by her attorneys to embellish her story." Motion at 12. Tellingly absent from Defendant's brief are any "reasons" or supporting facts for that allegation.

This Court has previous instructed Defendant to discontinue filing "frivolous or vexatious motions" based upon nothing but "a supposing of bad faith," "lacking sufficient factual support to support a colorable argument:"

> Having provided no grounds to doubt the sworn representations of Plaintiff's counsel, Defendant's motion to compel these communications is denied. Defendant is granted leave to refile the motions with respect to media and business advice on the basis of relevant and non-specious factual support. Court intervention should not be invoked to resolve routine discovery matters on the basis of a supposition of bad faith. Further filing of frivolous or vexatious motions lacking sufficient factual support to support a colorable argument (or on the basis of misrepresented or false facts or law) will be met with sanctions.

June 20, 2016, Sealed Order at 13-14. The Defendant ignored this Order, and her motion should be denied.

4

## II.   LEGAL ARGUMENT

### A.   Defendant's Motion Should Be Denied Because it is Untimely and Defendant is Merely Trying to Deflect from Her Own Discovery Misconduct

The first reason the Court should deny this motion is that it is simply and obviously untimely.  Defendant complained to this Court at least as early as May 2016, that Ms. Giuffre had a bonfire two years prior to Defendant's defamation.  As counsel for Ms. Giuffre said at the time:

> There is absolutely no reason why my client should reasonably anticipate that her sex abuser would defame her in the global stage at that point [when she held the bonfire].  She is a child victim of sex abuse at the hands of the defendant [and] co-conspirators, and she decided to burn certain memories as a step toward the healing process.  That is outside the control of counsel and certainly unrelated to anything going on in an action filed in 2015.

May 12, 2016 Hr. Tr. at 10:1-8.

Yet while these issues were before the Court by (at least) May, Defendant waited an additional *seven months* to file this motion that she claims should result in *the complete dismissal* of this action.  Such delay is unreasonable.  The Second Circuit has held that "a motion for Rule 37 sanctions should be promptly made thereby allowing the judge to rule on the matter when it is still fresh in his mind."  *Mercy v. County of Suffolk*, 748 F.2d 52, 56 (2d Cir.1984).  Defendant gives no reason why she did not present this issue to the Court last May, and she cites no new information in her brief that developed during that time.  Instead, the only intervening development with some connection to the motion may be this Court's November 2, 2016, Order, which concluded that the Defendant had withheld discovery materials.  A few weeks later, the Defendant filed this motion accusing Ms. Giuffre of withholding discovery materials.[2]

---

[2] Defendant appears to have a pattern of filing seemingly tit-for-tat motions. In many such motions, Defendant copies the language of Plaintiff's briefs word-for-word, despite there being few, if any, factual similarities.  *See*, *e.g.*, Plaintiff's Motion to Compel for Improper Claim of

The key fact is that Defendant fails to offer any explanation whatsoever for her delay in bringing this motion. Therefore, this Court should reject Defendant's motion as untimely.  *See Gutman v. Klein*, 2010 WL 4916722, at *8 (E.D.N.Y. Nov. 24, 2010) (denying sanctions motion, in part, as untimely).

**B.      There Was No Duty to Preserve The Journal Because There Was No Pending or Reasonably Foreseeable Litigation to Which Ms. Giuffre Was a Party**

Turning to the merits of Defendant's motion, Ms. Giuffre could not have violated any duty to preserve her journal because no such duty existed.  "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Kraus v. General Motors Corp.*, 2007 WL 3146911, at *1 (S.D.N.Y. Oct. 24, 2007) (denying sanctions).  Defendant fails to meet her burden because when Ms. Giuffre burned her journal in 2013, this litigation (filed in 2015) was not "pending."  Nor was this litigation "reasonably foreseeable."  In 2013, Ms. Giuffre had no way of foreseeing that, two years later in 2015, the Defendant would maliciously defame her. Defendant's motion should be denied on this ground alone.

Attempting to manufacture such a duty, Defendant points to the fact that in 2013, Ms. Giuffre was considering joining the CVRA case in Florida.  It is also important to understand the context of that case.  As the Court will recall from earlier briefing, in 2008, two child sexual abuse victims of Jeffrey Epstein brought suit against the United States Attorney for the Southern District of Florida under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771.  The cause of action was premised upon the U.S. Attorney Office's failure to timely notify Epstein's victims of Epstein's non-prosecution agreement, as required under 18 U.S.C. § 3771(a).  Six years after the lawsuit's inception, on December 30, 2014, Ms. Giuffre filed a motion to join the CVRA

Privilege (DE 33) (granted in part), and Defendant's Motion to Compel for Improper Claim of Privilege (DE 155) (denied).

case.  Several months later, Judge Marra denied Ms. Giuffre's motion.  *See* April 7, 2015, Order

Denying Petitioners' Motion to Join under Rule 21 and Motion to Amend under Rule 15, *Jane*

*Doe No. #1 and #2 v. United States*, No. 9:08-cv-80736-KAM, S.D. Fla. at DE 280 and DE 324.

 This ruling alone eliminates any duty that even arguably could have attached to Ms.

Giuffre in 2013 – any contemplated litigation simply never later materialized.  But, in any event,

any duty that Ms. Giuffre may have had related to the CVRA case would have run to the sole

defendant in that case – the U.S. Attorney's Office.  The Office had years earlier (in 2008)

identified Ms. Giuffre as a protected "victim" of Jeffrey Epstein's sex abuse, even mailing to Ms.

Giuffre a notice of her rights as a crime victim under the CVRA.  *See* Schultz Dec. at Exhibit 1,

Victim Notification Letter. Accordingly, Ms. Giuffre's status as a "victim" could never have

been an issue in the CVRA case.  The limited issue in the CVRA case is whether the

Government properly discharged its duties to the victims to confer with them and notifying them

of the non-prosecution agreement it signed with Jeffrey Epstein.  The journal could only have

related to issues about Ms. Giuffre's victimization, and thus even in the unrelated CVRA case,

which Ms. Giuffre was not allowed to join, the journal was not relevant.

 Beyond these problems for Defendant's argument here, in 2014 the only duty that Ms.

Giuffre could have had would have been to the U.S. Attorney's Office.  That Office presumably

would have encouraged Ms. Giuffre to undertake whatever steps were needed to facilitate her

healing from the terrible crimes Epstein and his co-conspirators inflicted on her.  *See* 18 U.S.C.

§ 3771(a)(8) (requiring federal government to treat crime victims "with fairness and with respect

for the victim's dignity and privacy").  Defendant's claim here necessarily requires that

Defendant step into the Government's shoes to establish a breach of duty.  Ms. Giuffre has

violated no duty she directly owed to the Government, and thus violated no duty she (arguably) indirectly owed to the Defendant.

### C.     There Was No Willful Destruction of Evidence

An additional reason for denying the motion is that Ms. Giuffre lacked any "culpable" state of mind.  "A party must have acted in bad faith – intentionally or willfully – in order to have a sufficiently culpable state of mind warranting an adverse inference . . . [which] may be met through ordinary negligence."  *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 643 F. Supp. 2d 482, 495-96 (S.D.N.Y. 2009) (denying sanctions) (internal quotations omitted).  In burning her journal, in which she had written painful memories of repeated sexual abuse, Ms. Giuffre did not have a culpable state of mind, nor was she negligent.  To the contrary, as Defendant conceded in her moving brief, Ms. Giuffre testified – at two depositions - that she burned her journal as a "spiritual" act of healing from her sexual abuse in an effort to move forward with life.  Specifically, as Defendant notes, Ms. Giuffre testified, "I was burning like memories, thoughts, dreams that I had, just everything that was kind of affiliated with the abuse I endured".  *See* Schultz Decl. at Exhibit 2, January 16, 2016, Giuffre Dep. Tr. at 64:24-65:3.  Ms. Giuffre also testified, ". . . it was not under the instruction of my lawyers to do this.  My husband and I were pretty spiritual people and we believed that these memories were worth burning."  *See* Schultz Decl. at Exhibit 3, May 3, 2016, Giuffre Dep. Tr. at. 205:25-206:3.

Accordingly, Ms. Giuffre's state of mind was that of a child sex abuse victim who later, in pain, attempted to achieve spiritual recovery by burning memories she had recently recorded of the sex abuse – abuse, it is worth recalling, she endured at the hands of Defendant and Epstein.  Importantly, as Defendant concedes, this journal was not created at the time Defendant and Epstein subjected her to sexual abuse.  (Q. "So you did not write this journal at the time it happened?"  A. "No."  Q. "You started writing this journal approximately a decade after you

claim you finished being sexually trafficked, correct?"  A. "Yes."  *Id*. at 206:16-22).  Even if Ms. Giuffre contemplated any litigation having anything to do whatsoever with what was in that journal, she had no notice of any duty to preserve notes she had written as a healing exercise. Accordingly, Defendant's motion fails for this reason as well.

### D.  Defendant Cannot Show That the Journal Was Favorable to Her

Ms. Giuffre did not act willfully (or even negligently in 2013) when she burned some memories she wrote down as a healing exercise from her childhood sexual abuse, an exercise undertaken long before becoming at all involved in any litigation, and long before Defendant defamed her.  However, even if we assume that Ms. Giuffre was negligent (which she wasn't), Defendant is only entitled to pursue relief if the materials destroyed were favorable to her case. Defendant cannot come close to meeting that burden.

"If the spoliating party has acted only negligently, the moving party can satisfy the final requirement of the spoliation analysis if it can show that the lost materials were relevant."  *In re Pfizer Inc. Securities Litigation*, 288 F.R.D. 297, 315 (S.D.N.Y. 2013) (denying sanctions).[3] "[T]he Court of Appeals has held that for the destroyed evidence to be 'relevant' it must be 'more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence.'"  *Id*.  A party may establish relevance by "'adduc[ing] sufficient evidence from which a reasonable trier of fact could infer that 'the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction.'"  *Id*.  Put more succinctly, a plaintiff must present extrinsic evidence that tends to show that the destroyed documents would have been favorable to her case.  *See Cedar Petrochemicals, Inc. v. Dongbu Chem. Co.*, 769 F. Supp. 2d 269, 292 (S.D.N.Y. 2011) (denying sanctions).  Indeed, "relevance requires a showing beyond

---

[3] The *Pfizer* Court applies a negligence standard which is applicable to the documents at issue here, should this Court find that any duty attaches, which it does not, as explained above.

the straightforward assertion that the opposing party has failed to produce requested

information." *Id.* at 293 (quoting *Orbit One Commc'ns. v. Numerex Corp.*, 271 F.R.D. 429, 440

(S.D.N.Y. 2010) (denying sanctions)).

Defendant fails to show that the materials are "relevant" – that is, that the writings in Ms.

Giuffre's journal would be favorable to Defendant.  To the contrary, all evidence in the record

indicates that this journal would be highly unfavorable to Defendant.

First, Ms. Giuffre has testified that it contains her recollections of her sex abuse, and Ms.

Giuffre has testified that Defendant abused her:

> Q. So you burned notes of the men with whom you had sex while you were
> represented by counsel in litigation, correct?
> A. This wasn't anything that was a public document.  This was my own private
> journal, and I didn't want it anymore.  So we burned it.

*See* Giuffre May 3, 2016 Dep. Tr. at 206.  Indeed, a contemporaneous document, the manuscript,

stated the same thing:

> Nobody ever stopped to ask if I was comfortable or if I wanted to stop, no,
> instead, Ghislane [sic] only directed me to conclude the massage session by
> climbing up on the table to be fixated on Jeffrey, straddling him so he could
> [EXPLICIT] me . . . Jeffrey moaned in pleasure and Ghislane [sic] started to
> undress me from behind.  Within moments I was completely naked and Ghislane
> [sic] had her top off . . . she sure did act like she loved having the control over me
> telling me what to do throughout the entire threesome.

Manuscript at p. 25-26; 29 (GIUFFRE004l58-4159).  Accordingly, the evidence shows that the

journal would implicate Defendant in sexual abuse.

The evidence does not end there.  Documents created contemporaneously with Ms.

Giuffre authoring the journal – documents produced to Ms. Giuffre *by a third party* – strongly

indicate that the journal's contents would be highly unfavorable to Defendant.  Indeed, in the

moving brief, Defendant recounts testimony that this journal was authored in 2011 and 2012.  At

the same time, in 2011, Ms. Giuffre received treatment for her past sex abuse from her

psychologist, Judith Lightfoot.  Ms. Lightfoot's own records, ***written in 2011***, describe

Defendant as Ms. Giuffre's abuser:

> . . . was approached by Ghislaine Maxwell who said she could help her get a job
> as a massage therapist . . . seemed respectable . . . was shown how to massage,
> etc., Geoff [sic] Epstein.  Told to undress and perform sexual acts on person.
> Miss Maxwell promised her $200 a job.

*See* Schultz Decl. at Exhibit 4, June 9, 2011 Lightfoot Records at GIUFFRE005437.

 As the Court can see, the same year Ms. Giuffre wrote in her journal about the abuse she

endured, she wrote a manuscript detailing that abuse, and ***confided in her treating psychologist***

***that Maxwell recruited her for sex with Epstein***.  Therefore, the contemporaneous records

evidence Defendant's guilt, and indicate that similar statements would be in Ms. Giuffre's

journal.  Accordingly, this journal would merely be cumulative with the volumes of other

evidence showing Defendant's involvement in the sexual abuse of Ms. Giuffre.

 Indeed, contemporaneous with Defendant's abuse in the 2000-2002 time period, Tony

Figueroa testified that Virginia confided in him that Defendant required her to participate in

threesomes with Defendant and Epstein during the time it happened:

> Q. I guess my question is:  Did she ever tell you that she had started as a regular
> masseuse for him and then transitioned to something other than a masseuse?
>
> A. No.  She never said that it transitioned.  But she ended up explaining to me
> what had happened before, so...
>
> Q. What has -- what is that?
>
> A. That her and Ms. Maxwell and Jeffrey would obviously be doing stuff, all
> three of them together.  Like I said, that they would all go out to clubs to pick up
> girls and try and find them to bring back for Jeffrey.  And then she told me about
> how, like I said, her and Ms. Maxwell and Jeffrey were all intimate together on
> multiple occasions.
>
> Q. When did she tell you this?
>
> A. I'm not exactly sure on the dates.

Q. Was it while you were still together?

A. Yes.

Figueroa Dep. Tr. at 96:1-19.

When Defendant argues that the journal or the dream journal would be unfavorable to Ms. Giuffre, Defendant ignores these and other damning facts. Defendant, again, fails to cite any countervailing fact, fails to point to any other evidence, and quotes no other testimony to support her argument that the journals would somehow be favorable to her. Instead, Defendant engages in wild speculation upon a mere "supposition of bad faith." *See* Motion at 12, second paragraph. Defendant does not attempt to cite any evidence to support these conspiracy theories, as Ms. Giuffre herself has described the contents of one her journal as memories of her sex abuse and the contents of the other "dream"[4] journal of her (literal) dreams (that they occurred while she was asleep). Defendant does not explain what the evidentiary value of a party's dreams may have regarding a defamation claim, nor could she.

Accordingly, Defendant's motion should fail for this reason as well – she cannot make any showing whatsoever (much less carry her burden of proof) that the journal would be favorable to her. And, she completely ignores the blindingly obvious fact that the journal would likely be, if anything, highly favorable to Ms. Giuffre, it would simply contain more documentation of Defendant's involvement in sexual abuse.

---

[4] Q. What do you do with those notes?

A. Nothing, literally nothing. They're in a notebook that if I need to write it down. I have a dream notebook as well where I'll just write down my dreams and stuff.

January 16, 2016, Giuffre Tr. at 195:15-19.

E.     **No Alleged Spoliation in the Context of an Unrelated Claim Attaches to a Future Defamation Claim**

Yet another fatal problem for Defendant's motion is that it rests on the premise that Ms. Giuffre violated a duty to preserve evidence that arose in a ***different*** *case*.  The attenuated chain of reasoning is that Ms. Giuffre's duty to preserve this journal with respect to ***this*** case arose in 2013, when she heard about ***another*** case – the CVRA case (long before she and her attorneys made the decision to attempt to join that litigation). However, Southern District of New York courts have rejected this very argument that a duty to preserve can arise from unrelated litigation. *See, e.g., In re Pfizer Inc. Securities Litigation*, 288 F.R.D. at 316 (holding no breach in duty to preserve where documents allegedly relevant to a previous litigation were not retained).  In *Pfizer*, this Court explained:

> I conclude that Pfizer's duty to preserve in this case arose in 2004, not in 2001. The 2001 lawsuit was a patent action related to the identification of the enzyme that led to the development of Celebrex and Bextra.  As such, it raised different factual issues from the instant action and would not have given Pfizer reasonable notice of the foreseeability of this securities fraud litigation.

*Id*. at 316.  Similarly, in 2013, Ms. Giuffre had not even made her application to join the CVRA case, a case that raises different factual issues from the instant action, namely, whether the United States District Attorney for the Southern District of Florida failed to discharge its statutorily-mandated duty to Epstein's victims upon entering into a plea agreement with Epstein. Ms. Giuffre's supposed 2013 contemplation of the CVRA litigation against the government under an unfamiliar federal victims' rights statute would not have given Ms. Giuffre (a non-lawyer who was not a party to that action) reasonable notice of the foreseeability of Ms. Maxwell defaming her on a global stage two years later.  *Cf. Kraus v. Gen. Motors Corp.*, 03 Civ. 4467 (CM), 2007 WL 3146911, at *2 (S.D.N.Y. Oct. 24, 2007) (McMahon, D.J.) (defendant was under no duty to preserve a car as evidence in products liability suit before complaint was filed

13

because it had not been previously notified of any injury that might reasonably lead to litigation and no litigation had been threatened); *Brigham Young Univ. v. Pfizer, Inc.*, 282 F.R.D. 566, 572 (D. Utah 2012) (rejecting argument that Pfizer's duty to preserve extended back to earlier, unrelated litigations).

The *Pfizer* court further explained: "In addition, the duty to preserve only extends to documents relevant to the claim *of which the party has notice.*" *In re Pfizer Inc. Securities Litigation*, 288 F.R.D. at 317 (emphasis added). To the extent Ms. Giuffre's 2011-2012 journal is somehow relevant to the claim at issue in this case, there was no duty to preserve because the defamation claim against Defendant did not arise until 2015 and the earlier case involved a different issue. Similarly, Defendant makes no showing that Ms. Giuffre had possession of the dream journal during 2015, nor that it is relevant such that any duty attaches to it.

**F.      Defendant Can Show No Prejudice and She Has the "Best Evidence"**

Still another fatal problem for Defendant's argument is that she has received substantial information parallel to the journal Ms. Giuffre kept. Defendant has thus suffered no prejudice. As the Court is aware from previous discovery motions, Ms. Giuffre has produced a vast amount of material in this matter, including materials from the time of her abuse and from the time she kept her journal. Of particular note are a 141-page draft manuscript she wrote in 2011, around the same time as the journal, as well as numerous e-mail communications, and even pictures and travel receipts from the years 2000-2002. Of course, the materials from 2000-02 (photos, travel records, flight logs, etc.) were all created contemporaneously with Ms. Giuffre's abuse, and would thus serve as the "best evidence" of what was happening then. (The Court will no doubt recall Defendant's failing memory concerning events that happened at that time, such as Defendant's failure to be able to recollect even one of the 23 flights on which she is listed as having traveled with Epstein and Ms. Giuffre, during the time Ms. Giuffre was a minor child.)

14

Even turning to the later time period when Ms. Giuffre wrote her journal, Defendant has better records than the journal which she can review – .e.g., the psychological records specifically naming the Defendant as involved in Ms. Giuffre's sexual abuse and Ms. Giuffre's 141-page manuscript.  Against this backdrop of many other available materials, the burned journal is obviously nothing more than cumulative corroborating evidence.

Second, with regard to Defendant's second, fallback argument regarding the dream journal (which Ms. Giuffre has diligently searched for but been unable to locate), nothing suggests it contains any relevant content.  Perhaps Defendant is going to argue that Ms. Giuffre's dreams are somehow inconsistent with her sworn testimony, but this would be pseudo-science that has no place before the jury.  *Cf.* SIGMUND FREUD, THE INTERPRETATION OF DREAMS (1889) (developing theory of the unconscious with respect to dream interpretation).  Defendant's brief gives no hint as to what purpose notes about dreams could have in this litigation.  *Cf. United States v. Aleshire*, 2014 WL 11394905, at *6 (W.D. Wis. Oct. 20, 2014) ("dreams themselves, however, would not be admitted").  In any event, Ms. Giuffre diligently attempted to locate these notes but could not find them.  *C.f. Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) ("Even in a case involving exclusively hard copy documents, there is no obligation on the part of a responding party to examine every scrap of paper . . . Rather, it must conduct a diligent search, which involves developing a reasonably comprehensive search strategy.").  And there is no evidence that the dream journal was lost during (or even shortly before) the pendency of this litigation.

If anything, Defendant's argument about the dream notes shows how far afield she had to go from the core issues in this case. Recall the basic outlines of this case:  Ms. Giuffre filed a court document alleging that she had been sexually abused by Defendant and others.  Defendant

called Ms. Giuffre a liar. Ms. Giuffre then filed this defamation suit, alleging that her allegations

of sexual abuse were true.  Ms. Giuffre gave her sworn testimony that the allegations were true

and deposed multiple witnesses who supported her position.  On the other hand, Defendant gave

her sworn testimony that she, quite conveniently, could not remember the important events of the

time (such as flying on 23 flights with Ms. Giuffre as a minor child and Epstein).  Having failed

to remember the critical events – and having failed to produce important documents about these

events[5] – Defendant propounded extensive discovery to Ms. Giuffre, to which Ms. Giuffre has

diligently attempted to respond. Now, as the trial for this case is approaching, Defendant has

filed a last ditch motion to dismiss, claiming that Ms. Giuffre' missing notes of her dreams are

somehow such critical information that the defamation case should be dismissed.  To simply

describe the argument is to show how far-fetched Defendant's position has become.  The Court

should deny this frivolous motion and prepare to try this case on March 13, 2017.

## III.   CONCLUSION

The Defendant's motion for sanctions due to Ms. Giuffre's destruction of materials for

entirely benign reasons, long before this litigation ever arose, should be denied in its entirely.

---

[5] A conveniently failing memory is not the only way in which Defendant has kept evidence of involvement in sexual abuse from being discovered.  The day that the Palm Beach Police executed the warrant on Defendant and Epstein's home, Defendant called the housekeeper and told her not to come in that morning.  *See* Schultz Decl.at Exhibit 5, Louella Rabuyo's October 20, 2009 Dep. Tr. at 9; 11; 81-82Once the police arrived, they found that the computers had been ripped out of their places, leaving the monitors, mice, keyboards, and wires behind.  *See* Schultz Dec. at Composite Exhibit 6, Police Report at p. 63, GIUFFRE000064; Recarey Dep. Tr. 72:25-73:18.  This Court is also aware of multiple events triggering Defendant's duty to preserve documents.  For example, Defendant avoided her 2009 deposition in a case concerning Epstein by falsely claiming to be out of the country (she was, instead, photographed at Chelsey Clinton's New York wedding).  Additionally, in her Motion to Dismiss, Defendant claimed that in both 2011 and 2015, she anticipated bringing litigation against tabloids.  Defendant has not produced documents that she should have preserved pursuant to the police investigation, the 2009 litigation, and her purported anticipated suits against the press as recently as 2015.  And, on top of all this, the Court is aware of the Defendant's failure to produce discovery, which lead to sanctions as ordered in November.

Dated:  December 16, 2016

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By:  /s/ Meredith Schultz
　　　Sigrid S. McCawley (Pro Hac Vice)
　　　Boies Schiller & Flexner LLP
　　　401 E. Las Olas Blvd., Suite 1200
　　　Ft. Lauderdale, FL 33301
　　　(954) 356-0011

　　　David Boies
　　　Boies Schiller & Flexner LLP
　　　333 Main Street
　　　Armonk, NY 10504

　　　Bradley J. Edwards (Pro Hac Vice)
　　　FARMER, JAFFE, WEISSING,
　　　EDWARDS, FISTOS & LEHRMAN, P.L.
　　　425 North Andrews Avenue, Suite 2
　　　Fort Lauderdale, Florida 33301
　　　(954) 524-2820
　　　Paul G. Cassell (Pro Hac Vice)
　　　S.J. Quinney College of Law
　　　University of Utah
　　　383 University St.
　　　Salt Lake City, UT 84112
　　　(801) 585-5202[6]

---

[6] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

17

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 16th day of December, 2016, I electronically filed the

foregoing document with the Clerk of Court by using the CM/ECF system. I also certify that the

foregoing document is being served to all parties of record via transmission of the Electronic

Court Filing System generated by CM/ECF.

> Laura A. Menninger, Esq.
> Jeffrey Pagliuca, Esq.
> HADDON, MORGAN & FOREMAN, P.C.
> 150 East 10th Avenue
> Denver, Colorado 80203
> Tel: (303) 831-7364
> Fax: (303) 832-2628
> Email: lmenninger@hmflaw.com
>         jpagliuca@hmflaw.com

> /s/ Meredith L. Schultz
> Meredith L. Schultz

18