**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------X
: 
VIRGINIA L. GIUFFRE, :
: 
      Plaintiff, :
: 
v. :
:     **15-cv-07433-RWS**
GHISLAINE MAXWELL, :
: 
      Defendant. :
: 
--------------------------------------------------X

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE *IN TOTO* CERTAIN**
**DEPOSITIONS DESIGNATED BY PLAINTIFF FOR USE AT TRIAL**

Laura A. Menninger
Jeffrey S. Pagliuca
HADDON, MORGAN, AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
303.831.7364

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

I.   PLAINTIFF CANNOT SATSIFY THE LEGAL REQUIREMENTS FOR USE OF
     CERTAIN DEPOSITIONS AT TRIAL .................................................................... 1

   A.   Jeffrey Epstein and Rinaldo Rizzo Are Not Unavailable ..................................... 2

   B.   As a Retained Expert, Phillip Esplin Cannot Be Deemed Unavailable ................ 3

II.  TESTIMONY IN WHICH WITNESS REFUSED TO RESPOND TO QUESTIONS
     POSED IS IRRELEVANT, MORE PREJUDICIAL THAN PROBITIVE, AND MUST BE
     EXCLUDED FROM TRIAL ....................................................................................... 5

   A.   Jeffrey Epstein ........................................................................................................ 5

   B.   ██████████ ........................................................................................................ 12

   C.   Phillip Esplin ........................................................................................................ 14

III. TESTIMONY AND STATEMENTS MADE IN OTHER MATTERS TO WHICH MS.
     MAXWELL WAS NOT A PARTY, WAS NOT PRESENT, HAD NO NOTICE, AND
     DID NOT PARTICIPATE CANNOT BE DESIGNATED IN THIS CASE ................ 14

CONCLUSION ................................................................................................................. 18

CERTIFICATE OF SERVICE ....................................................................................... 19

Defendant Ghislaine Maxwell ("Ms. Maxwell") hereby moves to in *limine* to exclude *in toto* certain depositions designated by Plaintiff for use at trial, specifically those of Alfredo Rodriguez, Jeffrey Epstein, ███████ and Dr. Phillip Esplin.  She simultaneously files her specific objections to portions of these and other depositions designated by Plaintiff.  She further states as follows:

## INTRODUCTION

Plaintiff has filed deposition designations for 14 witnesses for use in her case in chief at trial.  With respect to four of the witness, the use of their deposition testimony must be precluded entirely pursuant to Fed. R. Civ. P. 32 and Fed. R. Evid. 804(b)(1) because either (a) the witnesses are not unavailable and/or (b) the requirements for use of deposition in lieu of live testimony cannot be met.  As separately filed in her specific objections, with respect to the remaining ten (10) witnesses, the Federal Rules of Evidence require portions or all of the designated testimony to be excluded.

**I.**    **PLAINTIFF CANNOT SATSIFY THE LEGAL REQUIREMENTS FOR USE OF CERTAIN DEPOSITIONS AT TRIAL**

The use of deposition at trial is governed by Fed. R. Civ. P. 32.  Under that rule, Plaintiff must establish the following to use all or part of any deposition at trial:

> (a) Using Depositions.
> (1) *In General.* At a hearing or trial, all or part of a deposition may be used against a party on these conditions:
>> (A) the party was present or represented at the taking of the deposition or had reasonable notice of it;
>> (B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; *and*
>> (C) the use is allowed by Rule 32(a)(2) through (8).

To affirmatively offer evidence in her case in chief through deposition testimony under Rule 32(a)(4), the plaintiff must establish that the witness is unavailable.  Specifically, the rule provides:

(4) *Unavailable Witness.* A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:

  (A) that the witness is dead;

  (B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition;

  (C) that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment;

  (D) that the party offering the deposition could not procure the witness's attendance by subpoena; or

  (E) on motion and notice, that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used.

Fed. R. Evid. 804(b)(1) echoes this requirement, providing an exception to the hearsay rule for use of deposition testimony only when a witness is unavailable.

### A.      Jeffrey Epstein and Rinaldo Rizzo Are Not Unavailable

Plaintiff has made deposition designation based on the alleged "understanding that [witnesses] are not able to appear live to provide trial testimony."  With respect to Jeffrey Epstein and Rinaldo Rizzo, she offered no basis for her claim that these two witnesses are not able to appear live to provide testimony.  Both witnesses reside within 100 miles of the courthouse at which the trial is to be held, and she has neither articulated nor argued any other basis for a finding of "unavailability."  Indeed, no such argument could be maintained.[1]

"[D]eposition testimony is only a substitute, not to be resorted to if the witness can appear in person."  *Banks v. Yokemick*, 144 F. Supp. 2d 272, 288 (S.D.N.Y. 2001).  Plaintiff's own investigator has stated in his affidavit regarding attempted service of the deposition subpoena on Mr. Epstein that he has three known addresses in New York, including his permanent residence, all of which are within 100 miles of the courthouse.  See ECF No. 161, Ex. 4.  The fact that Mr.

---

[1] The remaining fact witnesses for whom Plaintiff has designated deposition testimony reside outside the 100-mile radius, and therefore may be unavailable under 32(a)(4).  Defendant reserves all rights to object to use of any deposition testimony should the availability of such witness change.

Epstein will invoke the Fifth Amendment, if permitted by this Court, does not constitute exceptional circumstances that would permit use of his deposition at trial. *Id.*

Likewise, Mr. Rizzo, who lives in North Salem, New York, was served with a deposition subpoena in New York, and his deposition was conducted in New York, all within 100 miles of the courthouse. *See* Menninger Decl. Ex. A 2:2-4:18 (Rizzo Dep.)  There is no basis to claim that either of these witnesses cannot be procured for trial through subpoena, nor is there any indication that Plaintiff has unsuccessfully attempted to issue such subpoenas.

Having failed to establish the essential element of unavailability, Mr. Epstein and Mr. Rizzo's depositions cannot be used affirmatively as evidence at trial and all such testimony is hearsay – an out of court statement offered for the truth of the matter – to which no exception or exclusion applies under Federal Rules of Evidence 804(a) and (b)(1).

**B.     As a Retained Expert, Phillip Esplin Cannot Be Deemed Unavailable**

Phillip Esplin is a rebuttal expert, retained by the Defendant in rebuttal of the improper credibility opinions offered by Plaintiff's experts Dr. Gilbert Kliman and Professor Terry Coonan, both of which are subject to pending motions *in limine*.  Plaintiff has attempted to designate portions of Dr. Esplin's deposition for use in her case in chief.  All of the proposed testimony concerns matters which were outside of the scope of Dr. Esplin's opinion, as discussed in more detail below.  As a preliminary matter, however, the attempt to introduce the deposition testimony of Dr. Esplin is improper under Second Circuit law because, as an expert, he is not deemed unavailable simply because he resides outside of the 100-mile radius of the courthouse. Rather, in the Second Circuit, to use the deposition or other sworn testimony of an expert based on alleged unavailability of that expert, the Plaintiff must prove that 1) she attempted to secure the voluntary attendance of the witness, and 2) that no similar expert is available.

The Second Circuit first addressed this issue in *Carter-Wallace, Inc. v. Otte*, 474 F.2d 529, 536 (2d Cir. 1972).  In that case, Judge Friendly observed that "there is something unusual about the use of the prior testimony of an expert witness that calls for further scrutiny of his unavailability." 474 F.2d at 536 (citations omitted). As a result, this Circuit imposed two additional requirements on parties seeking to offer prior expert testimony at trial.  First, the proponent of the prior expert testimony must "attempt to secure the voluntary [trial] attendance of a witness who lives beyond the subpoena power of the court." *Id.* at 536. The reason for this additional requirement is that "unlike the typical witness whose involvement with the case may depend on the fortuity of his observing a particular event and whose presence at trial is often involuntary, a party ordinarily has the opportunity to choose the expert witness whose testimony he desires and invariably arranges for his presence privately, by mutual agreement, and for a fee." *Id*.

Second, "before former testimony of an expert witness can be used, there should be some showing, not only that the witness is unavailable, but that no other expert of similar qualifications is available or that the unavailable expert has unique testimony to contribute." *Id*. at 536-37. The reason for this additional requirement is that, unlike an ordinary fact witness, "the expert witness generally has no knowledge of the facts of the case. . . . Thus, even if one particular expert is unavailable…there will usually be other experts available to give similar testimony orally." *Id*. at 536.  In sum, under *Carter-Wallace*, prior expert testimony is only admissible in the place of live expert testimony if the proponent of the testimony tries to secure the expert's voluntary attendance and demonstrates that no similar expert is available. These judicially-created requirements have been applied in addition to the requirements of Fed. R. Evid. 804(b)(1) and Fed. R. Civ. P. 32.  Plaintiff has failed to demonstrate that either of these

4

requirements have been met, mandating that the designated portions of Dr. Esplin's testimony

should be ruled inadmissible at trial. *Id.*; *see also Aubrey Rogers Agency, Inc. v. AIG Life Ins.*

*Co.,* 2000 WL 135129 (D. Del. 2000) (finding expert deposition testimony inadmissible where

there was nothing in the record to indicate that the proponent had made any effort to secure the

expert's attendance at trial or had even contacted the expert to "offer him his usual expert witness

fee, and request his attendance at trial").

## II.   TESTIMONY IN WHICH WITNESS REFUSED TO RESPOND TO QUESTIONS POSED IS IRRELEVANT, MORE PREJUDICIAL THAN PROBITIVE, AND MUST BE EXCLUDED FROM TRIAL

Plaintiff designates the deposition testimony of three witnesses who refused to or could

not respond to the questions posed to them.  The first, Mr. Epstein, invoked his Fifth Amendment

right against self-incrimination.  The second, ███████████ was reluctant to be deposed and

failed to answer questions based on lack of memory, repeatedly stating that she was unable to

respond to the questions posed.  The third, Dr. Phillip Esplin, explained repeatedly that he could

not respond to the questions posed because they were outside the scope of his opinion and there

was insufficient information in the record to permit response.  All of this testimony is irrelevant,

more prejudicial than probative and must be excluded.

### A.   Jeffrey Epstein

As the Court is aware, Jeffrey Epstein was compelled to sit for a deposition during which

he invoked his Fifth Amendment rights as to each and every question posed to him by counsel

for both Plaintiff and the Defendant.  Both Plaintiff and Defendant have motions pending to

require Mr. Epstein to respond fully to questions.  If these motions are granted, the current

deposition in which no questions were answered is irrelevant.  Only actual questions that

eventually are answered should be presented to the jury, subject to other rules of admissibility,

including whether Plaintiff can establish that Mr. Epstein is unavailable to testify live at trial.

5

Because of his invocation of his Fifth Amendment right to remain silent, there actually is no deposition *testimony* to designate. Each designation reflects a leading question by Plaintiff's counsel (which is improper on direct examination, FRE 611(c)), followed by Mr. Epstein's one word response – "Fifth." Of course, Plaintiff's counsel's questions are not testimony. Mr. Epstein's responses have no "tendency to make a fact more or less probable than it would be without the evidence"; the answer to the questions is a non-answer, and the answer could be yes, no or something entirely different.

Moreover, with respect to many of the unanswered questions, they do not relate to any "fact [] of consequence in determining the action." Fed. R. Evid 401. By way of one limited example, Plaintiff designated the following leading question and non-answer: "Q. In June 2008, in open court, you pled guilty to two Florida State felonies, correct? A. Fifth." The investigation and ultimate plea deal reached by Mr. Epstein bears absolutely no relevance to this case. As the investigating detective, Joseph Recarey testified, Ms. Maxwell was not the subject of the investigation in 2005 and 2006, was not identified in the probable cause affidavit, and was not a subject of the grand jury proceedings against Mr. Epstein. Menninger Decl. Ex. B, 203:4-25; 210:24-212:6. Moreover, Plaintiff voluntarily departed this country three years prior to the investigation, was not identified as a witness in the investigation nor was she interviewed by the investigators. Id. 259:17-25. Simply put, the investigation of Mr. Epstein, which resulted in his indictment and plea deal, have nothing to do with either the Plaintiff or the Defendant in this action, and have no bearing on any fact that is of consequence in this case. This one limited example demonstrates the completely irrelevant inquiry put to Mr. Epstein. As such, the designated testimony fails the relevance standards of Fed. R. Evid. 401, is not admissible under Fed. R. Evid. 402, and certainly is more prejudicial than probative under Fed. R. Evid. 403.

Likewise, the designated invocation testimony of Mr. Epstein violates the requirements of Fed. R. Evid. 403, as any probative value of the testimony is outweighed by unfair prejudice, confusion of the issues, will tend to mislead the jury, cause undue delay, waste time, and present cumulative evidence.  To permit this testimony, which in fact reflects only Plaintiff's attorney presenting prejudicial and unproven statements in the form of unanswered questions, serves only one purpose which is to confuse the jury by claiming that the failure to answer the questions must mean the answer is harmful to both Mr. Epstein *and* to Ms. Maxwell.  In truth, and as Ms. Maxwell has stated in her pending motion to compel, Mr. Epstein's truthful answers to the questions posed by both parties would in fact vindicate Ms. Maxwell, proving that Ms. Maxwell's press statement were substantially true.  Even allowing the reading of the designated testimony will, without question, confuse the jury by leading them to believe that there is some evidentiary value to the questions, causing significant and incurable prejudice to Ms. Maxwell.

It is apparent that Plaintiff intends to request that the Court instruct the jury that it may draw an adverse inference against Ms. Maxwell based on Jeffrey Epstein, a non-party witness's, invocation of the Fifth Amendment.  Such an adverse inference is impermissible in this case.

Under Fed. R. Evid. 501 and this Court's prior rulings, New York State law governs the privilege law in this case.  *See* ECF No. 135.  Under New York law, the general rule is that a non-party's invocation of the Fifth Amendment privilege cannot be used as to create an adverse inference against a party. *Access Capital, Inc. v. DeCicco*, 302 A.D.2d 48, 52 (2002) ("the privilege being personal, the consequences are limited to the witness that invokes it. Thus, where the privilege is asserted by a nonparty witness, no adverse inference may be drawn") (citing *State v. Markowitz*, 273 A.D.2d 637, 646 (2000)).

In New York, there are two exceptions to this general rule: 1) where the non-party witness is an alter ego of a party; and 2) when a party controls the non-party material witness and could force them to testify.  *Andrew Carothers, M.D., P.C. v. Ins. Companies Represented by Bruno, Gerbino & Soriano, LLP*, 26 Misc. 3d 448, 461-62, 888 N.Y.S.2d 372 (Civ. Ct. 2009):

> While it is true that an adverse inference may not generally be drawn against a party when a nonparty asserts the privilege (*see Access Capital v DeCicco*, 302 AD2d 48, 52 [1st Dept 2002]; *State of New York v Markowitz*, 273 AD2d 637, 646 [3d Dept 2000], *lv denied* 95 NY2d 770 [2000]), the courts in this state have recognized several exceptions to this rule . . .. One of these exceptions deals with the situation where a corporate employee, who is the alter ego of his or her corporate employer, refuses to testify on Fifth Amendment grounds.
> . . .
> The second of these exceptions deals with the situation when the nonparty who asserts his or her Fifth Amendment privilege and refuses to testify is a material witness in a particular party's control. In *Califano v City of New York* (212 AD2d 146 [1st Dept 1995]), the Court held that "[t]he inference to be charged in a civil case by a [nonparty] witness's invocation of the privilege against self-incrimination is 'akin to that arising when a party fails or refuses to produce a material witness who is within his control'"

*Id.* at 461-462.

Neither of these two exceptions is applicable in this instance.  Ms. Maxwell is not a corporation and she has no corporate employees.  Mr. Epstein is not, and has never been, an employee or even an agent of Ms. Maxwell.  In fact, it was Mr. Epstein who employed Ms. Maxwell in the late 90's and early 2000's; it was he who had employment control over her, not the opposite.  In this circumstance, the purpose of the exception is not served because the non-testifying employer does not have the ability to bind his subservient former employee, nor is there any basis to believe that an employer would act to protect his employee because he has nothing (such as his job) to lose.

The second exception is equally inapplicable.  Ms. Maxwell has no control of Mr. Epstein and no ability to command his testimony.[2]  This fact is made obvious by virtue of Mr. Epstein's refusal to respond to the questions posed at the deposition by Ms. Maxwell's counsel, requiring her to file a motion to compel his testimony. ECF No. 449.  Thus, under controlling New York law, use of Mr. Epstein's testimony and the concomitant adverse inference based on that testimony is prohibited.

Federal law requires the same result.  The Second Circuit first addressed the question of whether an adverse inference against a party to a civil action is permitted based on a non-party's invocation of the Fifth Amendment in *LiButti v. United States*, 107 F.3d 110, 124 (2d Cir. 1997). In that case, during a bench trial the question arose whether the trial court should have drawn an adverse inference against the Plaintiff based on her father's invocation of the Fifth Amendment Privilege.  The Court held that the "issue of the admissibility of a non-party's invocation of the Fifth Amendment privilege against self-incrimination in the course of civil litigation and the concomitant drawing of adverse inferences appropriately center on the circumstances of the case." *Id.* at 123. The Court then set forth a list of four non-exclusive factors that should guide a court in determination of the relevance of any testimony: 1) the nature of the relevant relationships; 2) the degree of control of the party over the non-party witness; 3) the compatibility of the interests of the party and non-party witness in the outcome of the litigation; 4) the role of the non-party witness in the litigation.  *Id.* at 123-124. The Court made clear that the key consideration is trustworthiness: "[w]hether these or other circumstances unique to a

---

[2] To the extent Plaintiff claims control based on the existence of a joint defense agreement, courts have specifically ruled that such an agreement alone does not establish privity or control for purposes of the exceptions to the prohibition on giving an adverse inference instruction based on invocation by a non-party.  *Omni Food Sales v. Boan*, No. 06 CIV. 119 (PAC), 2007 WL 2435163, at *4 (S.D.N.Y. Aug. 24, 2007) (discussing collateral estoppel stating joint defense agreement alone "however, it would prove only a litigation alliance; it alone would not create privity.").

particular case are considered by the trial court, the overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *Id.* at 124.

As under New York law, the nature of the relationship (Mr. Epstein employing Ms. Maxwell rather than vice versa) and the lack of her control over him weigh against the trustworthiness of an adverse inference.  Likewise, Mr. Epstein has no stake in the outcome of this litigation, financial or otherwise.  Nor has he participated in this litigation in anyway. Rather, he completely refused to participate, moving to quash his deposition, pleading the fifth and refusing to produce documents or provide testimony.

While the *LiButti* Court was considering an adverse inference during a bench trial, it was cognizant that, after conducting the relevance evaluation, courts would also need to assess the issue of undue prejudice under Fed. R. Evid. 403, an issue not presented there because of the nature of a bench trial. *Id.* at 124.  As discussed above, there is insurmountable unfair prejudice caused by presenting Plaintiff's counsel's "testimony" (in the form of questions) and Mr. Epstein's invocation, even if no adverse evidence instruction is given.  Plaintiff's entire point is to confuse and mislead the jury to believe that the answers to each of the self-serving questions would be yes, even though there is no proof on the question.  This is in essence simply allowing Plaintiff's counsel to testify to their own theories, not actual facts.

If anything, an adverse inference against Plaintiff and in favor of Ms. Maxwell based on Mr. Epstein's invocation of the Fifth Amendment is the only proper adverse inference.  Plaintiff previously sued Mr. Epstein for the conduct about which he refused to answer in his deposition. As a result of that lawsuit Plaintiff received a $500,000 settlement payment from Mr. Epstein, a matter about which Mr. Epstein refused to testify.  *See* Menninger Decl. Ex. C 283:5-284:17

(Epstein Depo.).  The amount of that payment, the reasons for the settlement, the nature of the claims, and the release of claims for emotional distress and other damages that mirror the alleged damages sought by Plaintiff in this matter are relevant to apportionment of any cause of Plaintiff's claimed injuries.  *See Bikowicz v. Sterling Drug, Inc.*, 161 A.D.2d 982, 985, 557 N.Y.S.2d 551 (1990) (an adverse inference in favor of the defendant should have been given based on a settling joint-tortfeasors invocation of the Fifth Amendment because it was relevant to apportionment of fault and damages).  If any adverse inference instruction is proper it should be an instruction that the jury should assume that Mr. Epstein's refusal to answer questions concerning his conduct toward Plaintiff should be constituted as an admission that Mr. Epstein engaged in that conduct on his own, and without the participation or knowledge of Ms. Maxwell. Plaintiff previously sued Mr. Epstein for these actions.  In that action, Plaintiff claimed damages for:

> Past and future phsyical injury, pain and suffering, emotional distress, pyscological and/or psychiatric trauma, mental anguish, humiliation, confusion, embarrassment, loss of educational opportunity, loss of self-esteen, loss of dignity, invasion of privacy, separation from her family; medical and psychological expenses; loss of income, loss of capacity to earn income, and loss of the capacity to enjoy life.

The jury should assume that Plaintiff valued her damages at $500,000 for these alleged injuries, and has received payment for her injuries from Mr. Epstein.

The designated testimony of Mr. Epstein is also fatally flawed in that it lacks any evidentiary foundation, which is impermissible when testimony of invocation is presented to a jury.  Courts addressing the issue of permitting an adverse inference against a party based on the party's own invocation of their Fifth Amendment rights still permit that inference only if "independent evidence exists of the fact to which the party refuses to answer." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000); *see also LaSalle Bank Lake View v.*

11

*Seguban,* 54 F.3d 387, 391 (7th Cir.1995); *Peiffer v. Lebanon Sch. Dist.,* 848 F.2d 44, 46 (3d

Cir.1988). Thus, silence can only result in any inference when it "is countered by *independent*

*evidence* of the fact being questioned, but that same inference cannot be drawn when, for

example, silence is the answer to an allegation contained in a complaint." *Doe ex rel. Rudy-*

*Glanzer*, 232 F.3d at 1264 (*citing Nat'l Acceptance Co. v. Bathalter,* 705 F.2d 924, 930 (7th

Cir.1983). "In such instances, when there is no corroborating evidence to support the fact under

inquiry, the proponent of the fact must come forward with evidence to support the allegation,

otherwise no negative inference will be permitted." *Id.* (*citing LaSalle Bank,* 54 F.3d at 391); *see*

*also OS Recovery, Inc. v. One Groupe Int'l, Inc.*, No. 02 CIV. 8993LAK, 2005 WL 850830, at *1

(S.D.N.Y. Apr. 13, 2005) ("inference from invocation of the privilege may be appropriate only

where there is independent evidence corroborating the proposition sought to be inferred"). Here,

the vast majority of questions posed to Mr. Epstein lack any foundation or corroboration other

than being allegations and assertions of the Plaintiff in this matter.  It is Plaintiff's burden to

come forward with independent corroborating evidence for each question posed to Mr. Epstein

before the court can even consider allowing presentation of the questions and invocation to a

jury.  Plaintiff's complete failure to provide such evidence for the designated testimony requires

that it be excluded from trial.

      **B.**    ███████████

      ███████████ was a witness in the investigation and indictment of Jeffrey Epstein in

2006.  She very clearly testified in her deposition in this matter that she has little or no memory

of most or all of the events surrounding the time she knew Mr. Epstein, and specifically testified

that she is in therapy for the purpose of repressing any memories concerning Mr. Epstein.  *See*

Menninger Decl. Ex. D 8:8-9:7; 57:16-58:25.  As such, the vast majority of her testimony is that

she has no present recollection of events so that she cannot respond to the questions posed to her.

Plaintiff's counsel provided ████████ with a copy of a statement she gave to the police in October 2005 concerning Mr. Epstein. ████████ refused to look at the statement and did not authenticate it in any way.  The statement itself is by definition hearsay – an out of court statement made by ████████ that Plaintiff would like to offer for the truth of the matter.  The only possible permissible use of the statement was for purposes of refreshing recollection under Fed. R. Evid. 612.  However, ████████ refused to look through the statement and had no independent recollection of events, as explained by her attorney.  *See* Menninger Decl. Ex. D 16:5-18-21:23. Plaintiff's counsel made clear that he did not intend to attempt to use the police statement to refresh ████████ recollection, and ████████ counsel made clear that the statement would not refresh her recollection.  *Id*.  As such, the police report is simply an out of court statement, at best consistent with the few items of testimony that ████████ could recall.  Under Fed. R. Evid. 612 and 801(d)(1), no portion of the statement, including those portions read into the deposition record, are admissible into evidence.

With respect to ████████ response of being unable to recall events or testify, none of the questions or answers is probative of any fact at issue in this matter, requiring exclusion under Fed. R. Evid. 401, 402 and 602 based on lack of personal knowledge.  To permit the designation of leading questions with the answer that ████████ could not recall violates the principles of Fed. R. Evid. 403 and 611 as well, in that the suggestive question with a non-answer confuses and misleads the jury into a belief that the attorney's question should be taken as testimonial evidence.  All testimony of ████████ designated testimony that 1) refers to or references the police report or contents of that report; 2) that poses a leading question; or 3) that results in a response that the witness does not recall must be excluded.  Likewise, the police report itself, Exhibit 1 in the deposition, is inadmissible under Fed. R. Evid. 801 and 612.

### C.    Phillip Esplin

As previously explained, Dr. Esplin is a retained rebuttal expert, responding to the improper credibility opinions of Dr. Kliman and Professor Coonan.  His opinions are quite limited in scope, and merely point to the deficiencies in information, studies and the evaluations of Plaintiff's two experts.  Plaintiff has improperly designated testimony that relates to questions, matters and fact outside the scope of Mr. Esplin's opinion, or about which he had no factual predicate to provide testimony.  For instance, he was asked questions regarding the definitions of pedophilia and if it could be cured, a matter nowhere addressed in his rebuttal opinion. If Mr. Esplin is proffered as a witness at all, Plaintiff may only cross-examine him on matters within the scope of his opinion and his direct examination.    Fed. R. Evid. 611(b);  *Bristol–Myers Squibb Co. v. Rhone–Poulenc Rorer, Inc.,* 2000 WL 356412, at *2 (S.D.N.Y. Apr.2, 2000) (holding that "direct testimony by any expert witness at trial shall be limited to the contents of the Expert Report").  The designated deposition testimony, all outside the scope of Dr. Esplin's expert opinion in this matter, must be precluded.

### III.    TESTIMONY AND STATEMENTS MADE IN OTHER MATTERS TO WHICH MS. MAXWELL WAS NOT A PARTY, WAS NOT PRESENT, HAD NO NOTICE, AND DID NOT PARTICIPATE CANNOT BE DESIGNATED IN THIS CASE

Plaintiff has attempted to designate the testimony of Alfredo Rodriguez from a deposition conducted of him on July 29, 2009 in connection with a series of cases brought by various "Jane Does" (none this Plaintiff) against Jeffrey Epstein.  Mr. Rodriguez is now deceased, and thus not deposed in conjunction with the present litigation.  These designations are prohibited by the Federal Rules of Evidence and Procedure.  Again, Fed. R. Civ. P. 32 and Fed. R. Evid. 804 are controlling.

Under Fed. R. Civ. P. 32, a prerequisite to use of a deposition at trial is "(A) the party was present or represented at the taking of the deposition or had reasonable notice of it; (B) it is

used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and (C) the use is allowed by Rule 32(a)(2) through (8)."

Neither condition A nor C exist in this case. Ms. Maxwell was not a party to any of the litigations in which Mr. Rodriguez was deposed; Ms. Maxwell was neither present or given notice of the deposition. Likewise, under Rule 32(a)(8), use of a deposition from a prior proceeding is only permitted if the prior proceeding was between the same parties (it was not) and dealing with the same subject matter (it was not).

Mr. Rodriguez's prior testimony also fails to meet the hearsay exception requirements of Fed. R. Evid. 804(b)(1). Under that rule, an unavailable witness's testimony may be used only if it is "testimony that (a) was given as a witness at a trial, hearing or lawful deposition, whether given during the current proceeding or a different one; and (b) is now offered against a party who had – or in a civil case, whose predecessor in interest had – an opportunity and similar motive to develop it by direct, cross-, or redirect examination." *Id.* Plaintiff here seeks to enter the deposition testimony of Mr. Rodriguez against Ms. Maxwell, a non-party to the prior civil cases. Ms. Maxwell has no predecessor in interest in those matters, let alone ones with an opportunity or motive to develop testimony relating to a defamation case that did not arise until over 6 years later. Mr. Rodriguez's testimony through a 2009 deposition is completely unrelated to this action, is pure hearsay and does not fall under any exceptions to the hearsay rules. Fed. R. Evid. 801, 802 & 804.

One key issue about which Mr. Rodriguez was not cross-examined was his own criminal conduct which occurred after the deposition testimony he gave in those matters. Subsequent to the deposition Plaintiff proffers, Mr. Rodriguez contacted the attorneys representing the Jane Does in those matters and attempted to sell them a 97-page document. One such attorney was

15

Mr. Bradley Edwards, counsel in this case.  According to the Criminal Complaint filed against Mr. Rodriguez in 2009, Mr. Rodriguez approached one of the lawyers and offered to sell the lawyer evidence against Mr. Epstein.  *United States v. Rodriguez*, United States District Court for the Southern District of Florida, Case No. 9:09-mj-08308-LRJ, EFC No. 3, ¶¶3-7.  Mr. Rodriguez "explained that he had compiled lists of additional victims in the case and their contact information" *Id.* ¶6. A sting operation was set up by the FBI during which the 97 pages purportedly were provided to an undercover officer in exchange for $50,000.  *Id.* at ¶¶ 8-11.  Mr. Rodriguez subsequently was prosecuted and imprisoned for this bribery and obstruction scheme. These actions and conviction, which did not occur until after the deposition Plaintiff seeks to proffer, are quintessential character impeachment evidence that no one has ever examined Mr. Rodriguez about.  Given Mr. Rodriguez's death in 2015, it is now impossible cross examine him on these issues.  Submission of Mr. Rodriguez's testimony without the ability to confront the witness or cross-examine on him on his credibility is improper under Fed. R. Civ. P. 32(a)(8), Fed. R. Evid. 403, 405, 609, 801, 802 & 804.

The format and content of the copy of deposition produced also makes its admission improper.  While nine deposition exhibits were marked for identification, only one of the exhibits has been produced.  Thus, it is impossible to determine the probative value, if any, of the questioning concerning deposition exhibits (including the identification of pictures) because they are unavailable.  Similarly, throughout the deposition, the persons being discussed are referred to only by a first initial or first and last initial.  From the content, it is impossible to determine who is being discussed or the age of any particular individual.  Under 401, 402 and 403, any admission of this incomplete deposition would be improper.

Like ▆▆▆▆ Mr. Rodriguez was expansively questioned based on counsel's recitation of the alleged content of a recorded statement from Mr. Rodriguez to Detective Recarey and then he was asked questions regarding such statement. He was not shown the recorded statement, nor was he asked any question of his present memory prior to the reading of these statement which resulted in a need to have his recollection refreshed. Plaintiff is attempting to introduce as evidence the content of the prior consistent statement through counsel's questions, which is improper under Fed. R. Evid. Fed. R. Evid. 612 and 801(d)(1).

Further, the questions posed to Mr. Rodriguez that have been designated are almost exclusively leading questions of a non-party witness who Plaintiff intends to use as a direct witness in her case in chief. All of these questions violate Fed. R. Evid. 611(c), making these portions of the deposition inadmissible under 32(a)(1)(b).

The testimony of Mr. Rodriguez is also impermissible under 401, 401, 403 and 602 because Mr. Rodriguez has absolutely no personal knowledge of any matter at issue in this case. He testified that he worked for Mr. Epstein from September 2004 to March 2005, a full two years after Plaintiff in this matter had left the country. He stated that he had never heard of or met "V.R." (presumably Virginia Roberts) *Id.* Menninger Decl. Ex. E at 441:19-21. Based on his dates of employment, he has no personal knowledge of any events concerning Plaintiff, as pointed out to counsel in the deposition. *Id.* 277:15-278:5. Indeed, Mr. Rodriguez was very clear in testifying that he had absolutely no personal knowledge about *anything* that happened between Mr. Epstein and any of the women who came to give him massages and that his testimony is pure speculation. *Id,* 466:7-467:2. With no personal knowledge of the veracity of the allegations that were called untrue (or any other matter to which he testified) his testimony is completely irrelevant to this litigation.

**CONCLUSION**

For the foregoing reasons, Ms. Maxwell respectfully requests an Order of this Court

excluding the deposition testimony of witnesses Jeffrey Epstein, ███████, Dr. Phillip

Esplin, and Rinaldo Rizzo from being introduced by Plaintiff at trial.

Dated: January 27, 2017

Respectfully submitted,

*/s/ Laura A. Menninger*
Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:   303.831.7364
Fax:       303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*

18

## CERTIFICATE OF SERVICE

I certify that on January 27, 2017, I electronically served this *DEFENDANT'S MOTION IN LIMINE TO EXCLUDE IN TOTO CERTAIN DEPOSITIONS DESIGNATED BY PLAINTIFF FOR USE AT TRIAL* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

J. Stanley Pottinger
49 Twin Lakes Rd.
South Salem, NY 10590
StanPottinger@aol.com

*/s/ Nicole Simmons*
Nicole Simmons

19