# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO. 15-CV-07433-RWS

-----------------------------------------x

VIRGINIA L. GIUFFRE,

Plaintiff,

v.

GHISLAINE MAXWELL,

Defendant.

-----------------------------------------x

June 20, 2016
9:12 a.m.

C O N F I D E N T I A L

Deposition of [REDACTED], pursuant to notice, taken by Plaintiff, at the offices of Podhurst Orseck, 25 West Flagler Street, Suite 800, Miami, Florida, before Kelli Ann Willis, a Registered Professional Reporter, Certified Realtime Reporter and Notary Public within and for the State of Florida.



A P P E A R A N C E S:

BOIES SCHILLER & FLEXNER, LLP
Attorneys for Plaintiff
401 East Las Olas Boulevard
Fort Lauderdale, Florida 33301
BY: BRADLEY EDWARDS, ESQ.

HADDON MORGAN & FOREMAN, P.C.
Attorneys for Defendant
150 East 10th Avenue
Denver, Colorado 80203
BY: JEFFREY PAGLIUCA, ESQ.

PODHURST ORSECK, P.A.
Attorneys for Deponent
25 West Flagler Street
Suite 800
Miami, Florida 33130
BY: ROBERT JOSEFSBURG, ESQ.



INDEX

Examination by Mr. Edwards .................... 4
Examination by Mr. Pagliuca .................... 57
Further Examination by Mr. Edwards ............. 68

EXHIBITS

Deposition Exhibit 1 .......................... 6
Police Interview



██████ - CONFIDENTIAL

spoke to police?

A. No, sir. I just want to make it very -- pardon me. I didn't mean to interrupt.

MR. JOSEFSBURG: Let me explain something to both of you.

MR. EDWARDS: Sure.

MR. JOSEFSBURG: And for the record, ███ has, since these events of 12 years ago, received a lot of professional advice and gone through an awful lot based upon what happened 12 years ago.

She has been advised and has followed the advice to forget, suppress, repress what happened, and that's how she goes on with her life.

So she doesn't remember a lot of things, and she doesn't want to remember them. So you might interpret in other matters as hostility from a witness. This is called self-preservation and mental health.

So both her attitude and her memory is based on that. We have someone who is badly injured and is very frail and wants to take care of herself. So you might think it's



[redacted] - CONFIDENTIAL

snippy, but it's just that she --

THE WITNESS: I truly don't know the answers to your questions if I say I don't. I'm trying to answer everything I know.

BY MR. EDWARDS:

Q. I can appreciate that.

When you spoke with police officers back in October of 2005, did you tell them the truth?

MR. PAGLIUCA: Object to form and foundation.

THE WITNESS: Of course, yes.

BY MR. EDWARDS:

Q. Okay. And do you remember someone named -- I think it's spelled phonetically in here -- Shana Jasmine or something along those lines, Shana Casman?

A. No, I do not recall.

Q. Do you remember a friend of yours being in the room when you spoke with the police?

A. No, I do not.

Q. Do you remember how many police officers you spoke with?

A. Over the course of all the years?

Q. That particular investigation.



[redacted] - CONFIDENTIAL

know the extent of their relationship. But she would schedule his appointments and handle clerical things for him as far as I can see.

Q. All right.

And when you first went to his house, where did -- where were you taken within the house?

MR. PAGLIUCA: Object to form and foundation.

THE WITNESS: Kitchen, up to the room, up to his master suite.

BY MR. EDWARDS:

Q. And which stairwell did you go up to his suite?

A. I do not remember.

Q. Was it the stairs off by the kitchen?

A. I do not recall.

Q. And when you went into his bedroom, were you under the belief that it was going to be you providing some sort of a massage?

A. It certainly didn't involve any sexual activity. That's what I was under the assumption. I don't recall exactly how I was propositioned to get there. I just was there, and all of a sudden something horrible happened to me.



Q. Did you, at 16 years old or 17 years old, have any massage training or experience?

A. No.

Q. Did [REDACTED] have any massage experience?

A. I do not -- I can't speak to her experience. I do not know. She was not really a friend of mine. Barely an acquaintance. We maybe spoke three times in our entire going to school together and everything.

Q. Did you ever learn what her incentive was to bring you to Jeffrey Epstein's house?

A. Later I found out that they would get kickbacks for bringing people over.

Q. Do you remember seeing Jeffrey Epstein give her money that day?

A. I don't recall, no.

Q. If you said that in your statement, that you remember [REDACTED] getting money for bringing you here that day, would that be a true statement?

A. Yes, absolutely. Everything in there is the truth. I do not remember from years ago at this point.

MR. PAGLIUCA: Object to form and



foundation.

BY MR. EDWARDS:

Q. If you want to --

A. I don't. It's okay.

Q. I understand.

A. Thank you.

Q. On page 6, you're telling the police that "█████ and me were waiting on the couch in the bathroom, and Jeffrey comes up and says -- he's like, Hey, I'm Jeffrey. He just introduced himself, and he hands █████ -- I remember this because I was pissed off that she got paid to bring me. He hands her a wad of hundred dollar bills and says, Thank you. And she says, I'll wait for you downstairs. And I was like, All right, I'll see you in a little bit."

Does that remind you of █████ getting paid to bring you?

MR. PAGLIUCA: Object to form and foundation.

THE WITNESS: It sounds like a familiar scenario. I do not recall at this time.

BY MR. EDWARDS:

Q. Okay.



```
                                                        Page 19
 1                     ▆▆▆▆▆▆▆▆▆  - CONFIDENTIAL
 2       A.   I don't remember.
 3       Q.   I appreciate that.
 4            MR. JOSEFSBURG:  I'll make it easier for
 5       both of you.  Here's her testimony.  As you
 6       notice, she's not looking at this.  She doesn't
 7       want to look at it.
 8            MR. EDWARDS:  Yeah.
 9            MR. JOSEFSBURG:  She doesn't want to read
10       it.  But this is a statement that she gave to
11       the police.  She's saying that whatever she
12       said in it is true.  Does she remember it now?
13       No, because she has done a good job of
14       forgetting it.  But if she said it, she said
15       the truth.  And when you read it to her now --
16            THE WITNESS:  These are things I forgot.
17            MR. EDWARDS:  It's not going to refresh
18       her.
19            MR. JOSEFSBURG:  She doesn't want to
20       remember.  So everything in it is true; she can
21       tell you without looking at it.  She doesn't
22       want to look at it and she doesn't remember it.
23            Most of the important details that either
24       of you are looking for, she'll say it's the
25       truth but I don't remember that.
```



MAGNA
LEGAL SERVICES

██████████ - CONFIDENTIAL

MR. EDWARDS: Okay. I can appreciate that.

MR. PAGLIUCA: Counsel, I appreciate the record and I appreciate the clarification. So as you know, I mean, there may be an attempt to use any of this transcript as substantive evidence at trial. So while I accept your representation, I don't believe it lays any foundation for any of the statements to the police department. It doesn't lay any foundation as to the truth or non-truth as to the statement.

As I understand it, the witness has no present recollection of these events. Looking at this statement would not refresh her recollection, is what has been established on the record. The witness doesn't want to look at the statement. And the witness' testimony will be that she has no recollection of these events; is that correct?

MR. JOSEFSBURG: Everything you said is correct, with one other addition: That whatever she said to the police back then was the truth.



[redacted] - CONFIDENTIAL

MR. PAGLIUCA: That's where we may have a disagreement.

MR. JOSEFSBURG: Okay, but that's what she said.

MR. PAGLIUCA: I understand, but she did testify to that earlier. I accept that.

MR. JOSEFSBURG: Right. She doesn't remember and doesn't want to.

MR. PAGLIUCA: Understood.

MR. EDWARDS: I will proceed under those parameters. I got it.

MR. JOSEFSBURG: By the way, just so -- is what I just said correct?

THE WITNESS: Absolutely, yes. Thank you.

BY MR. EDWARDS:

Q. When you gave the statement to the police, was your motivation to tell the truth?

A. Yes.

MR. PAGLIUCA: Object to the form and foundation.

THE WITNESS: Yes, it was, absolutely.

BY MR. EDWARDS:

Q. Did you have any motivation in any part of it not to tell the truth?



[REDACTED] - CONFIDENTIAL

Epstein?

MR. PAGLIUCA: Object to form and foundation.

THE WITNESS: Yes.

MR. EDWARDS: All right. I don't have anything further for you. I apologize that we even had to go through this, all right?

THE WITNESS: Okay.

E X A M I N A T I O N

BY MR. PAGLIUCA:

Q. [REDACTED] [REDACTED] by name is Jeff Pagluica. I live in Denver, Colorado. And, like you, I don't want to be here today either, okay? I would rather be in Denver.

I just want to -- as I understand it, and I'm not trying to get into any of your treatment over the last, let's say, 10 years, because I don't know how long it's been, but as I understand what you and your lawyer have said here today, you have been involved in some number of years of therapy, in which the purpose -- part of the purpose of the therapy has been to forget all of these events that Mr. Edwards was asking you questions about; is that correct?



█████████ - CONFIDENTIAL

A. How specific do I have to get about my doctors' appointments? I don't really --

Q. I'm not asking --

MR. JOSEFSBURG: Not at all.

BY MR. PAGLIUCA:

Q. I'm not asking those questions. I'm just asking, if, as your lawyer has said --

A. I understand the question.

Part of the therapy, yes, it did encompass copings skills, and this is the one I have chosen to use.

Q. Which is, I don't want to remember anything?

A. Yes. Repression. I don't want to reminisce.

Q. And you indicated as you sit here today, you don't recall specifics related to these events?

A. That's correct. I have worked very hard not to.

Q. Back in 2005, and, again, if you have no recollection of these things, that's fine, you were contacted by a Detective Recarey.

Do you recall that or not?

A. No, I don't.



[REDACTED] - CONFIDENTIAL

CERTIFICATE OF OATH

STATE OF FLORIDA )
COUNTY OF MIAMI-DADE )

I, the undersigned authority, certify that [REDACTED] personally appeared before me and was duly sworn.

WITNESS my hand and official seal this 23rd day of June, 2016.

Kelli Ann Willis, RPR, CRR
Notary Public, State of Florida
Commission FF928291, Expires 2-16-20

\+ + + + + + + + + + + + + + + + + +

CERTIFICATE

STATE OF FLORIDA )
COUNTY OF MIAMI-DADE )

I, Kelli Ann Willis, Registered Professional Reporter and Certified Realtime Reporter do hereby certify that I was authorized to and did stenographically report the foregoing deposition of [REDACTED]; that a review of the transcript was not requested; and that the transcript is a true record of my stenographic notes.

I FURTHER CERTIFY that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the action.

Dated this 23rd day of June, 2016.

KELLI ANN WILLIS, RPR, CRR

