# BOIES,  SCHILLER  &  FLEXNER  LLP

401 EAST LAS OLAS BOULEVARD • SUITE 1200 • FORT LAUDERDALE, FL 33301-221 • PH 954 356 0011 • FAX 954 356 0022

Sigrid McCawley, Esq.
smccawley@bsfllp.com

January 30, 2017

*Confidential Sealed Filing*

**VIA EMAIL & FACSIMILE: (212) 805-7925**

Honorable Judge Robert W. Sweet
District Court Judge
United States District Court
500 Pearl Street
New York, NY 10007
SweetNYSDChambers@nysd.uscourts.gov

Re:   ***Giuffre v. Maxwell,***
         Case No.: 15-cv-07433-RWS

Dear Judge Sweet,

      This is a reply letter in support of Ms. Giuffre's letter motion to allow for the newly-discovered witness, Sarah Ransome, to be called as a witness at trial because she can testify about Defendant's involvement in Epstein's sex trafficking ring based on first-hand experiences and first-hand observations.

## Defendant Violated Rule 26 By Failing To Disclose This Critical Witness

      Defendant argues that Ms. Giuffre is somehow to blame for the fact that Sarah Ransome is only now being discussed as a witness in this case. But Ms. Giuffre only recently learned about this witness because Defendant failed to properly disclose her months earlier. In her response, Defendant does not address the fact that Ms. Ransome and Ms. Maxwell know each other. Indeed, Defendant does not address the fact that Ms. Ransome and she spent time together on Mr. Epstein's private island, as reflected in the flight logs showing Ms. Ransome flying to and from the island (where Ms. Maxwell was present):

BOIES,  SCHILLER  &  FLEXNER  LLP

Honorable Judge Robert Sweet
United States District Court
Page -2-                                                        *Confidential Sealed Filing*

As reflected in the above flight log, on December 10, 2006 (Flight #1919), Sarah
Ransome flew from EWR (Newark, NJ) to TIST (USVI) with Jeffrey Epstein, Jennifer Kalin,
and Natalya Malyshev.  On December 14, 2006 (Flight #1920), Sarah Ransome flew from TIST
(USVI) to EWR (Newark, NJ) with Jeffrey Epstein and Nadia Marcinkova. *See* Giuffre 07139.
Ms. Ransome was also flown commercially to Jeffrey Epstein's Island several times.

Defendant was obligated under Rule 26 to include Ms. Ransome in her Rule 26
disclosures: Defendant *knows* that Ms. Ransome is an "individual likely to have discoverable
information." Fed. R. Civ. P. 26(a)(A)(i). As Ms. Ransome will testify, Defendant was on the
island with her and interacted with her on a regular basis.  Defendant's refusal to disclose her is
not only (yet another) discovery violation, but also a part of the secrecy that Defendant and
Epstein strove to maintain surrounding their sex trafficking ring. Defendant should not be
allowed to participate in a sex trafficking ring, conceal the witnesses (and victims) of that ring,
and then proclaim "surprise" when Ms. Giuffre succeeds in locating one of the victims.  Simply
put, she should not be allowed to benefit from her obvious failure to properly disclose Ms.
Ransome.

### Ms. Ransome's Testimony is Not Cumulative And Has Highly Relevant Evidence

Defendant also advances the remarkable argument that it is "unlikely" that Ms. Ransome
will have relevant information. Yet Ms. Ransome witnessed – first hand – Defendant's
involvement in sex trafficking with Jeffrey Epstein.  Nor will her testimony be cumulative. First,
at the heart of this case is Defendant's sworn testimony that she was not involved in sex
trafficking with Epstein.  Ms. Ransome can directly refute Defendant's sworn testimony under
oath in numerous ways.

> …the primary purpose of those visits was to have me have sexual relations with Jeffrey,
> Nadia Marcinkova, and various other girls and guests brought to the island…During one
> of my first visits to the island I met Ghislaine Maxwell.  Watching her interact with the
> other girls on the island, it became clear to me that she recruited all or many of them to
> the island.  Once they were there, she appeared to be in charge of their activities,
> including what they did, who they did it with, and how they were supposed to stay in line.
> She assumed the same supervisory role with me as soon as I arrived. Some of the girls
> appeared to be 18 or older but many appeared to be young teenagers.

Exhibit A, Affidavit of Sarah Ransome.  In addition, Defendant has made known her plan to put
forth Alan Dershowitz as a witness at trial to testify that Ms. Giuffre is lying, and that he never
had sex with her or anyone else provided by Jeffrey Epstein.  While Ms. Giuffre contends that
Dershowitz's testimony is not relevant to this case concerning Defendant, in the event that the
Court disagrees, Ms. Ransome directly contradicts this testimony because, as part of her

BOIES, SCHILLER & FLEXNER LLP

Honorable Judge Robert Sweet
United States District Court
Page -3-                                                                *Confidential Sealed Filing*

involvement in the sex trafficking ring, like Ms. Giuffre, Ms. Ransome was also required to
engage in sexual acts with Jeffrey Epstein and Alan Dershowitz.

> In addition to spending time with Jeffrey on his island, I spent time with him in New
> York City…Among the people he lent me to was his friend Alan Dershowitz.  On one
> occasion I was in a bedroom at Jeffrey's New York townhouse with Jeffrey and Nadia
> Marcinkova. After a short time, Alan Dershowitz entered the room after which Jeffrey
> left the room and Nadia and I had sex with Dershowitz…

*See* Exhibit A. Affidavit of Sarah Ransome.  The testimony of Ms. Ransome goes to the heart of
this defamation claim – whether or not Ms. Giuffre was truthful in her claims about Defendant's
involvement in Epstein's sex trafficking ring, and the Court should allow the jury to hear her.

### Ms. Giuffre Has Diligently Participated In Discovery And Promptly Disclosed Ms. Ransome After Conducting Due Diligence

Defendant also insinuates that Ms. Giuffre has delayed in disclosing Ms. Ransome.  But
as the Court is well aware, Ms. Giuffre has previously diligently disclosed close to 100
individuals who may have relevant information in her Rule 26 disclosures.  By contrast,
Defendant's Rule 26 disclosures never listed Ms. Ransome as a witness, despite the fact that
Defendant was in her company on several occasions including on Epstein's island, where Ms.
Ransome was one of several girls being sexually trafficked for Epstein upon the direction and
insistence of Defendant.  After being contacted by Ms. Ransome, counsel for Ms. Giuffre
properly conducted a due diligence investigation into whether the information she provided had
merit.  Specifically, Ms. Giuffre's counsel undertook the expense to fly to Europe to meet in
person with this newly disclosed witness on January 4, 2017, returning on January 6, 2017, to
fully evaluate her credibility.  Upon evaluating the witness and upon the witness confirming that
she was willing to sign an affidavit under oath regarding her testimony, Ms. Giuffre arranged to
have a sworn affidavit executed at the U.S. Embassy in the country where Ms. Ransome resides.
Ms. Giuffre then issued revised Rule 26 disclosures on January 13, 2017 and informed
Defendant that she would produce Ms. Ransome for a deposition as a newly-disclosed witness
immediately so as to avoid any prejudice or delay in the March 13, 2017 trial date.  In short, Ms.
Giuffre acted promptly and reasonably after being contacted by this victim of Epstein's and
Defendant's sex trafficking ring.

### Defendant Will Not Be Prejudiced Because Ms. Ransome is Readily Available for Deposition

BOIES,   SCHILLER   &   FLEXNER   LLP

Honorable Judge Robert Sweet
United States District Court
Page -4-                                              *Confidential Sealed Filing*

Defendant's argument about her alleged burden from allowing this one additional witness also rings hollow.[1] Defendant complains about her alleged lack of resources, but as this Court is aware, Defendant is a wealthy socialite (who recently sold her New York Townhome for $15 million dollars) who has heavily litigated this case in ways that were completely unnecessary.[2]

Moreover, deposition discovery is still ongoing in this case. Ms. Kellen sat for her deposition last week (wherein she invoked the Fifth Amendment when asked about Defendant's involvement in Epstein's sex trafficking ring) along with Ms. Marcinkova who was recently deposed on January 17, 2017. Due to Defendant's unwillingness to produce her agent, Ross Gow for deposition, Ms. Giuffre did not get to depose him until November 18, 2017 at which time he produced never-before-seen documents that are critical to this case. Defendant has yet to sit for her follow-up deposition that was directed by the Court but for which Defendant filed a "Motion for Reconsideration" on November 16, 2016, which is still pending. Needless to say, while the official discovery deadline has closed, certain depositions have been taken more recently due to issues with witness cooperation. Of course, if Defendant does not desire to take Ms. Ransome's deposition, then Ms. Giuffre is content simply calling her at trial. But Defendant will hardly be prejudiced by allowing a witness to testify who is available for deposition.

---

[1] Defendant argues that because Jane Doe 43 (who for purposes of this sealed filing we can identify as Ms. Ransome) has recently filed a complaint against multiple defendants for violations of sex trafficking laws that Defendant should get to reopen discovery and further investigate everyone named as a Defendant. Notably, these are all individuals that were part of the sexual trafficking ring that Defendant was a party to and she has known about them and interacted with them for years. Ms. Ransome's claim had to be filed swiftly because her statute of limitations was continuing to run and the details of her allegations only recently became known to counsel. In any event, the questions that need to be asked of Ms. Ransome are simply and straightforward: Was Defendant involved in Epstein's sex trafficking ring? That question has been at the heart of this case for many months and exploring it does not raise any new issues.

[2] For example, Defendant litigated over the production of facially non-privileged documents; Defendant filed no fewer than three frivolous sanctions motions; Defendant filed *Daubert* challenges to all six of Ms. Giuffre's expert witnesses; and Defendant has filed discovery motions without even conferring with Ms. Giuffre in advance, including one for which Ms. Giuffre did not oppose the relief sought (Defendant's motion to reopen Ms. Giuffre's deposition). Further, Defendant apparently had the resources to file approximately 100 pages of single-spaced objections to Ms. Giuffre deposition designations, an unorthodox volume that stands out not simply because this is a one-count defamation claim, but because she objects to the same type of testimony that she has designated for admission.

BOIES,   SCHILLER   &   FLEXNER   LLP

Honorable Judge Robert Sweet
United States District Court
Page -5-                                                          ***Confidential Sealed Filing***

### The Case Law Supports Allowing Ms. Ransome As A Trial Witness

Ms. Giuffre has offered Defendant, subject to this Court's approval, the opportunity to take Ms. Ransome's deposition. And, as this Court has already explained, taking the deposition of a newly-discovered witness cures any prejudice: "[t]his and other courts have adopted the taking of depositions as an appropriate mechanism to address late-disclosed witnesses." *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 201 WL 2568972, at *14-15 (S.D.N.Y. Sept. 29, 2003) (concluding that plaintiff should be given the opportunity to depose a late-identified witness).

The cases that Defendant cites are all vastly different from the case before this Court and are easily distinguishable. In *Gray v. Town of Darien*, 927 F.2d 69 (2d Cir.1991), the court denied the motion to reopen discovery and granted summary judgment because the plaintiff failed to seek any discovery during the six-month discovery period set forth by the court. In stark contrast, Ms. Giuffre has actively engaged in discovery. The fact that this witness had critical information as a victim of Epstein and Defendant's sex trafficking ring could not have been known by Ms. Giuffre until the witness contacted Ms. Giuffre's lawyers. In *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506 (2d Cir. 1989), a case involving a statute of frauds issue, the court would not let the parties re-open discovery because there was no reason to believe that they would find a missing written agreement. Here, Ms. Giuffre has found a witness who has will provide to the jury critical information about Defendant's involvement in sex trafficking that directly contradicts Defendant's sworn testimony. In *Smith v. United States*, 834 F.2d 166 (10th Cir. 1987), the plaintiff made his request for a new witness on *the morning of trial*, having had eight months to conduct depositions. Additionally, the Tenth Circuit found that the new witness would not even be relevant to the narrow issue being addressed at trial. *Id.* at 169. In contrast, Ms. Giuffre has provided Defendant ample time to conduct discovery on Ms. Ransome, a witness who has vital evidence on the central issues in this case. In *Vineberg v. Bissonnette*, 548 F.3d 50, 55 (1st Cir. 2008), the First Circuit found that the defendant failed to point to any "relevant leads" that she might have obtained had the court reopened discovery. Here, it is patently obvious that Ms. Ransome holds a wealth of valuable information and is, as Defendant herself admits, a significant witness. Finally, in *Jeannite v. City of N.Y. Dept., of Buildings*, 2010 WL 2542050, at *2 (S.D.N.Y. June 21, 2010), plaintiff waited until the very end of discovery to make the request and had not sent any document requests or sought to depose any witnesses, which is in contrast to Ms. Giuffre having actively participated in discovery. Furthermore, there was no way for Ms. Giuffre to know that Ms. Ransome had such critical information until she called us *because Defendant never disclosed her*. Accordingly, Defendant fails to accurately support her claims with any relevant case law.

### Conclusion

BOIES, SCHILLER & FLEXNER LLP

Honorable Judge Robert Sweet
United States District Court
Page -6-                                                    *Confidential Sealed Filing*

     For the foregoing reasons, this Court should allow Ms. Giuffre to include Ms. Ransome as a witness to be called at the trial scheduled to begin on March 13, 2017. Again, Ms. Giuffre commits to making Ms. Ransome available for deposition at the reasonable convenience of Defendant's counsel.

                        Respectfully submitted,


                        s/Sigrid McCawley
                        Sigrid McCawley


SM/

cc:    Counsel of Record

# EXHIBIT A

# CONFIDENTIAL





## United States District Court
## Southern District of New York

Virginia L. Giuffre,

        Plaintiff,           Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

        Defendant.

---

## AFFIDAVIT

I, Sarah Ransome, swear and affirm as follows:

1.    I am currently over the age of 18 and presently reside in the country of Spain.

2.    In the summer of 2006, when I was twenty-two years old and living in New York, I was introduced to Jeffrey Epstein by a girl I had met named Natalya. Malyshov. Shortly after meeting Jeffrey he invited me to fly to his private island in the US Virgin Islands, which I did. After that first trip I traveled to the island several more times, usually on one of Jeffrey's private airplanes, and always at his direction. I am told that my name appears on the flight logs of one or more of those trips. On a few occasions, Jeffrey also arranged to have me flown to the island on commercial flights. As it turned out, the primary purpose of those visits was to have me have sexual relations with Jeffrey, Nadia Macinkova, and various other girls and guests he brought to the island.

3.    During one of my visits to the island I met Ghislaine Maxwell. Watching her interact with the other girls on the island, it became clear to me that she recruited all or many of them to the island. Once they were there, she appeared to be in charge of their activities, including what they did, who they did it with, and how they were supposed to stay in line. She assumed the same supervisory role with me as soon as I arrived. Some of the girls appeared to be 18 or older, but many appeared to be young teenagers. I recall seeing a particularly young, thin girl who looked well under 18 and recall asking her her age. I later learned was a ballerina. She refused to tell me or let me see her passport.

4.    In addition to spending time with Jeffrey on his island, I spent time with him in New York City. At his town house I was also lent out by him to his friends and

CONFIDENTIAL

associates to have sex. Among the people he lent me to was his friend, Alan Dershowitz. On one occasion I was in a bedroom at Jeffrey's New York townhouse with Jeffrey and Nadia Marcinkova. After a short time, Alan Dershowitz entered the room, after which Jeffrey left the room and Nadia and I had sex with Dershowitz. I recall specific, key details of his person and the sex acts and can describe them in the event it becomes necessary to do so.

I affirm under penalty of perjury that the foregoing is true and correct.

Dated: _05 - 01 - 2017_

Sarah Ransome

CONFIDENTIAL

# CERTIFICATE OF ACKNOWLEDGMENT OF EXECUTION OF AN INSTRUMENT

The Kingdom of Spain
*(Country)*

Province of Barcelona
*(County and/or Other Political Division)*

City of Barcelona
*(County and/or Other Political Division)*



SS:

Consulate Gral.of the United States of America
*(Name of Foreign Service Office)*

I,                                    Hsiao-Ching Chang,Vice Consul

*of the United States of America at*          Barcelona, Spain

*duly commissioned and qualified, do hereby certify that on this day of*     01-05-2017          *, before me personally appeared*
Date *(mm-dd-yyyy)*

Sarah Emma Ashley RANSOME----------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------------------------------------

~~to me personally known, and~~ *known to me to be the individual described in, whose name*          is          *subscribed to,*

*and who executed the annexed instrument, and being informed by me of the contents of said instrument*          she

*duly acknowledged to me that*          she          *executed the same freely and voluntarily for the uses and purposes*

*therein mentioned.*

[SEAL]

*In witness whereof I have hereunto set my hand and*

*official seal the day and year last above written.*

Hsiao-Ching Chang

Vice Consul  *of the United States of America.*

This document consists of  4  pages, including the Acknowledgement certificate.

**NOTE:** Wherever practicable all signatures to a document should be included in one certificate.

OF-175 *(Formerly FS-88)*
01-2009