**United States District Court**
**Southern District of New York**

Virginia L. Giuffre,

       Plaintiff,                Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

       Defendant.
_____/

## PLAINTIFF'S MOTION TO COMPEL ALL WORK PRODUCT AND ATTORNEY CLIENT COMMUNICATIONS WITH PHILIP BARDEN

 

Meredith Schultz
BOIES, SCHILLER & FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

Plaintiff Virginia Giuffre, argued in her Opposition to Summary Judgment that Defendant had waived her attorney-client and work-product privilege by submitting a lengthy self-serving affidavit by her attorney Philip Barden in support of her motion for Summary Judgment that discussed Mr. Barden's "intent" in allegedly being the main drafter of Defendant's January 2, 2015 press release. (DE 586 at p. 34) In Reply, Defendant conceded that in submitting Barden's declaration, she had waived the work-product privilege, but denied a waiver of the attorney-client privilege. (DE 620 at p. 11) Despite admitting that Mr. Barden waived the work-product privilege, Defendant failed to produce all other work product documents. This Motion seeks production of those documents along with production of all documents previously withheld on the ground of attorney-client privilege because those, too, were waived by Defendant's approval to submit Mr. Barden's self-serving declaration in support of Summary Judgment. Specifically, Ms. Giuffre, hereby moves this Court to Order Defendant to produce all work product documents (including any internal e-mail communications) and all attorney-client communications she has had with her attorney, Philip Barden, relating to his representation of her, as well as all documents drafted, edited, or considered by Philip Barden in relation to his representation of Ghislaine Maxwell, which would include, but not be limited to, those privileged documents Defendant listed on her privilege log and order Mr. Barden to sit for his deposition in New York relating to the subject matter of his waiver. *See* Schultz Dec. at Composite Exhibit 1.

I.  **BACKGROUND**

In her Motion for Summary Judgment, Defendant relies on a *post hoc*, self-serving Declaration ("Barden Declaration") from her English attorney Philip Barden. *See* Schultz Dec at Exhibit 2, Barden Declaration. Both the Declaration and the briefing for which it was drafted

reference Barden's "intent" (and other synonymous phrases) regarding his legal advice to Defendant *at least 62 times*. The Declaration also reveals attorney client legal advice given to Defendant, such as:

> "I did not ask Ms. Maxwell to respond point by point…what we needed to do was…" (…)

Moreover, throughout (1) the Barden Declaration; (2) Defendant's summary judgment briefing; and (3) Defendant's attorney's statements at oral argument heard on February 16, 2017, Defendant represented to this Court that Barden issued the defamatory statement to the press. Defendant repeatedly made that false statement despite the fact that the documents show that Defendant authorized the statement and gave express approval to her press agent to publish the press release – not Barden – with Barden nowhere to be found on any of these communications. Defendant persists with this false representation not only despite the documents that prove otherwise, but also despite the fact that Defendant's press agent's sworn testimony states otherwise. Ross Gow testified that Defendant authorized the statement, "command[ed]" him to release it, and that Barden was wholly out of the loop during the lead up to Defendant's decision to publish her defamatory statement. Gow's testimony is backed up by the email communications among Defendant and Gow. Yet, despite both documentary and testimonial evidence that *Barden did not issue the defamatory statement to the press*, Defendant persists in making these representations to the Court. By submitting Barden's declaration, Defendant has clearly waived the privilege.

As the Court will recall, Defendant has claimed a privilege in this litigation as to all email communications between herself and Barden, claiming attorney-client privilege, a privilege that this Court explicitly upheld. *See* DE 135 March 2, 2016 Opinion Granting in Part and Denying in Part Plaintiff's Motion to Compel for Improper Claim of Privilege.

3

Significantly, Defendant attempts to blame the defamatory press release entirely on Barden. Giving false testimony at her deposition, in an evasive manner, Defendant said ***Barden was the one who actually released the defamatory statement,*** pretending that she had nothing to do with it at all:

> Q. Did you issue a statement to your press agent, Ross Gow in 2015, stating that Virginia Roberts' claims were, quote, obvious lies?
>
> A. You need to reask me the question.
>
> Q. Sure. Did you issue a press statement through your press agent, Ross Gow, in January of 2015, stating that Virginia Roberts' claims were, quote, obvious lies?
>
> A. Can you ask it a different way, please?
>
> (…)
>
> Q. Did you issue a press statement through your press agent, Ross Gow, in January of 2015, where you stated that Virginia Roberts' claims were, quote, obvious lies?
>
> A. So my lawyer, **Philip Barden instructed Ross Gow to issue a statement.**

See Schultz Dec., Exhibit 3, Maxwell Depo. Tr. at 201:8-202:11.

Because of this denial in her sworn testimony (which was plainly untrue), Ms. Giuffre sought to depose her press agent to establish that Defendant (not her attorney or anyone else) authorized the release of the defamatory statement.

Months later, on the eve of his deposition, Ross Gow produced the "smoking gun" email in which Defendant explicitly "command[ed]" him to publish the defamatory statement. *See* Schultz Dec. at Exhibit 4, Defendant's Email to Gow Authorizing Press Release. (As the Court is aware, Defendant defied this Court's Order in her refusal to produce this email she sent Gow, despite it being responsive to multiple requests for production, and containing six court-ordered search terms.)

4

The next day, Gow testified that Defendant authorized the release of the defamatory material, and that Barden was not part of their discussions in the lead-up to its release. The documentary evidence – the emails exchanged between Defendant and Gow – supports this testimony:

> Q. The subject line does have "FW" which to me indicates it's a forward. Do you know where the rest of this email chain is?
>
> A. My understanding of this is: It was a holiday in the UK, but **Mr. Barden was not necessarily accessible** at some point in time, so **this had been sent to him originally by Ms. Maxwell, and because he was unavailable, she forwarded it to me for immediate action**. I therefore respond, "Okay, Ghislaine, I'll go with this."

*See* Schultz Dec. at Exhibit 5, Gow Depo Tr. at 44:24-45:8

## II.   LEGAL ARGUMENT

### A. Defendant Must Produce All Documents And Communications Relating to the Waived Work Product And Sit For A Deposition.

"The work-product doctrine is waived when documents are voluntarily shared with an adversary or when a party possessing the documents seeks to selectively present the materials to prove a point, but then attempts to invoke the privilege to prevent an opponent from challenging the assertion." *Niagara Mohawk Power Corp. v. Stone & Webster Eng. Corp.*, 125 F.R.D. 578, 587 (S.D.N.Y.1989). "Generally, the work product privilege is waived when protected materials are disclosed in a manner which is either inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a potential adversary to obtain the protected information." *Id.* at 590. Additionally, "[t]he work product privilege is waived when a party to a lawsuit uses it in an unfair way that is inconsistent with the principles underlying the doctrine of privilege. It is well settled that waiver may be imposed when the privilege-holder has attempted to use the privilege as both 'sword' and 'shield.' *Granite Partners, L.P. v. Bear Stearns & Co. Inc.*, 184 F.R.D. 49, 54 (S.D.N.Y.1999) (Sweet, D.J.); *see also Coleco Indus., Inc.*

5

*v. Universal City Studios, Inc.*, 110 F.R.D. 688, 691 (S.D.N.Y.1986) (Sweet, D.J.) ("[Defendant's] affidavit and attached work product were proffered as a 'testimonial use' of materials otherwise privileged. Fairness requires that discovery not be limited only to those documents which have selectively been disclosed.").

When a party voluntarily waives its work product privilege in an attempt to use her attorney's work product to her advantage, the party must also produce all related documents including drafts, e-mail communications relating to the work product, documents considered relating to the work product and any other materials created, received, used or considered relating in any way to Ms. Giuffre or this litigation, which is the very subject-matter of the disclosed work-product. *See, e.g., Hickman v. Taylor*, 329 U.S. 495, 511, 67 S. Ct. 385, 393, 91 L. Ed. 451 (1947) (work product includes "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways"); *Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*, 240 F.R.D. 78, 87 (S.D.N.Y. 2006) (partial waiver of work product demanded waiver of all work-product related to the subject matter of the initial disclosure); *Coleco Indus., Inc. v. Universal City Studios, Inc.*, 110 F.R.D. 688 (S.D.N.Y. 1986) (finding defendant waived work-product privilege in disclosing documents that contained legal opinion of defendant's attorney in order to show reliance on attorney's advice, which also waived privilege for other documents containing work product on same issue); *cf. In re Sealed Case*, 676 F.2d 793, 817–18 (D.C. Cir. 1982) (disclosure required "when a party seeks greater advantage from its control over work product than the law must provide to maintain a healthy adversary system").

As explained above, Defendant admitted in her reply brief to waiving the work product privilege with respect to Mr. Barden's work for the Defendant relating to the issues in this case,

6

yet has failed to produce any of the related documents. Accordingly, Ms. Giuffre respectfully requests that this Court direct the Defendant to produce all work product documents, including but not limited to all drafts, e-mail communications relating to the work product, documents considered relating to the work product and any other materials created, received, used or considered that relate in any way to this litigation or Ms. Giuffre and direct Mr. Barden to sit for his deposition in New York.

### B. Defendant Waived Her Attorney Client Privilege By Submitting the Barden Declaration In Support of Her Motion for Summary Judgement.

Just as with the work-product privilege, the attorney-client privilege cannot be used as a sword and a shield. *See, e.g., United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("attorney-client privilege cannot at once be used as a shield and a sword"); *McGrath v. Nassau County Health Care Corp.*, 204 F.R.D. 240, 245 (E.D.N.Y.2001) (attorney-client privilege and work-product privilege are governed by the "same fairness concerns"); *Granite Partners*, 184 F.R.D. at 54 (Sweet J.) ("waiver may be invoked where 'a litigant makes selective use of privileged materials, for example, by releasing only those portions of the material that are favorable to his position, while withholding unfavorable portions.'" (internal citations omitted)).

The Second Circuit has held that "the [attorney-client] privilege may be implicitly waived when [a party] asserts a claim that in fairness requires examination of protected communications." *Bilzerian*, 926 F.2d at 1292. Thus, "even if the privilege holder does not attempt to make use of the privileged communication[,] he may waive the privilege if he makes factual assertions the truth of which can only be assessed by examination of the privileged communication." *In re Kidder Peabody Secs. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996).

Moreover, countless district courts have found that the filing of privileged communications also waives the attorney-client privilege. *See Curto v. Med. World Commc'ns,*

*Inc.*, 783 F. Supp. 2d 373, 380 (E.D.N.Y. 2011) (waiver where party filed attorney-client communications on "publically-accessible electronic docket" and voluntarily sent copy to opposing counsel); *accord First Am. CoreLogic, Inc. v. Fiserv, Inc.*, 2010 WL 4975566, at *2 (E.D.Tex. Dec. 2, 2010) (finding waiver of attorney-client privilege when party attached privileged communications to motion for protective order and served the documents on all parties); *Tardiff v. Knox Cnty.*, 2007 WL 2413033, at **1–2 (D.Me. Aug. 21, 2007) (noting party's concession of waiver of attorney-client privilege when party submitted privileged email communications as an exhibit to court filing); *Malkovich v. Best Buy Enter. Servs., Inc.*, 2006 WL 1428228, at *1 (D. Minn. May 22, 2006) ("By submitting the affidavit and accompanying exhibits, Plaintiff has waived the attorney-client privilege....").

Defendant has withheld communications between herself and her attorney Mr. Barden on the basis of "attorney-client privilege." That privilege was waived by her affirmative submission of Mr. Barden's declaration which included references to attorney-client communications between Maxwell and Mr. Barden. Accordingly, all communications, whether they are logged or not, between Defendant and Mr. Barden and any related communications Defendant has withheld from production based on a claim of attorney- client privilege must be produced and the Court direct Mr. Barden to sit for a deposition in New York regarding this subject matter.

As articulated in Ms. Giuffre's Response in Opposition to Defendant's Motion for Summary Judgment, if the Court were to consider the Barden Declaration (which it should not), it would be ruling on a less than complete record because, based on this Declaration, it is necessary that Defendant disclose all communications with him and possibly others. Ms. Giuffre doesn't have those communications, the Court doesn't have those communications. It is highly prejudicial to allow Defendant to attempt to take advantage of a work product waiver through the

submission of Mr. Barden's declaration without producing **all** related work product documents and communications. As of yet, she has produced none.

## III. CONCLUSION

Ms. Giuffre respectfully requests the following relief: (1) As a result of the admitted waiver of the work-product privilege, the Court direct the Defendant and all parties she controls including Mr. Barden, to produce within ten (10) days all work product documents, including but not limited to all drafts, e-mail communications relating to the work product, documents considered relating to the work product and any other materials created, received, used or considered that relate in any way to this litigation or Ms. Giuffre and direct Mr. Barden to sit for a deposition in New York on this subject matter; and (2) As a result of submitting the Barden Declaration containing legal advice affirmatively in support of Defendant's Motion for Summary Judgment, the Court direct the Defendant, and all parties she controls including Mr. Barden, to produce within ten (10) days, all communications, whether they are logged or not, between Defendant and Mr. Barden and any related communications for which Defendant has withheld from production based on a claim of attorney client privilege and direct Mr. Barden to sit for a deposition in New York on this subject matter.

Dated: February 22, 2017

                    Respectfully Submitted,

                    BOIES, SCHILLER & FLEXNER LLP

              By: /s/ Meredith Schultz
                  Meredith Schultz (Pro Hac Vice)
                  Sigrid McCawley (Pro Hac Vice)
                  Boies Schiller & Flexner LLP
                  401 E. Las Olas Blvd., Suite 1200
                  Ft. Lauderdale, FL 33301
                  (954) 356-0011

David Boies
Boies Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Bradley J. Edwards (Pro Hac Vice)
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820

Paul G. Cassell (Pro Hac Vice)
S.J. Quinney College of Law
University of Utah
383 University St.
Salt Lake City, UT 84112
(801) 585-5202[1]

---

[1] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

10

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on the 22nd of February, 2017, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on the individuals identified below via transmission of Notices of Electronic Filing generated by CM/ECF.

> Laura A. Menninger, Esq.
> Jeffrey Pagliuca, Esq.
> HADDON, MORGAN & FOREMAN, P.C.
> 150 East 10th Avenue
> Denver, Colorado 80203
> Tel: (303) 831-7364
> Fax: (303) 832-2628
> Email: lmenninger@hmflaw.com
>        jpagliuca@hmflaw.com

/s/ Meredith Schultz
Meredith Schultz

**CERTIFICATE OF CONFERRAL**

Undersigned counsel certifies that she raised the failure to produce issue in opposition to Defendant's Summary Judgment and also raise it at oral argument with the Court. To date, Defendant has not produced any of the documents relating to her waiver of the work product or attorney client privilege.

/s/ Meredith Schultz
Meredith Schultz