UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------X

VIRGINIA L. GIUFFRE,

    Plaintiff,

v.

GHISLAINE MAXWELL,

    Defendant.

15-cv-07433-RWS

----------------------------------------------------X

**Defendant's Response to "Motion to Compel" Work Product
and Attorney-Client Communications with Philip Barden**

Laura A. Menninger
Jeffrey S. Pagliuca
Ty Gee
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
303.831.7364

Defendant Ghislaine Maxwell, through counsel, submits this Response to plaintiff's "Motion to Compel All Work Product and Attorney Client [sic] Communications with Philip Barden" (Doc.637).

## PROCEDURAL BACKGROUND

On February 24, 2016, we served on plaintiff's counsel Ms. Maxwell's Initial Fed. R. Civ. P. 26(a)(1)(A) Disclosures. The third-listed individual we identified who "likely [has] discoverable information" was Philip Barden, who, we disclosed, had information "concerning press statements . . . at issue in this matter":

> 3. Philip Barden
> Devonshires Solicitors LLP
> 30 Finsbury Circus
> London, United Kingdom
> EC2M 7DT
> DX: 33856 Finsbury Square
> (020) 7628-7576
> Philip.Barden@devonshires.co.uk
>
> Mr. Barden has knowledge concerning press statements by Plaintiff and Defendant in 2011-2015 at issue in this matter.

Menninger Decl., Ex.A. Plaintiff never sought to depose Mr. Barden.

On June 23, 2016, this Court ordered that the parties complete all fact discovery by July 29, 2016. *See* Doc.317 at 2.

Plaintiff propounded discovery requests as follows:

| | |
|---|---|
| 10/27/2015 | Plaintiff's First Set of Requests for Production |
| 4/14/2016 | Plaintiff's Second Set of Requests for Production |
| 5/27/2016 | Plaintiff's First Set of Interrogatories |
| 5/27/2016 | Plaintiff's Request for Admissions |

The First Set propounded thirty-nine (39) requests for production. The Second Set propounded an additional forty-three (43) requests for production. None requested Mr. Barden's

1

attorney work product. Nor did plaintiff's interrogatories and requests for admissions propounded on May 27, 2016.

On January 6, 2017, Mr. Barden submitted a declaration in support of Ms. Maxwell's motion for summary judgment. In the declaration, he stated, "I am not authorised to and do not waive Ms. Maxwell's attorney-client privilege." Doc.542-7, Ex.K ¶ 3. Mr. Barden did not reference any communications with his client Ms. Maxwell, let alone disclose any attorney-client communications. *See generally id.*, Ex.K. He did disclose his intent and strategy underlying his preparation of the statement he caused to be transmitted January 2, 2015, via press agent Ross Gow to various journalists. *See id.*, Ex.K ¶¶ 12-24, 26-30.

## PLAINTIFF'S FACTUAL ERRORS

Plaintiff makes numerous factual errors in her motion's factual "Background."

1. Plaintiff says Mr. Barden's submission is "a *post hoc*, self-serving declaration." Mot. 2. Of course every declaration submitted in this litigation by witnesses to events that took place in 2012-2015 by definition is *post hoc*. Since Mr. Barden is a third-party witness and not one of the parties, by definition his declaration is not "self-serving." In any event, calling a declaration "self-serving" is a legal canard. There is nothing improper even for litigants suing for money, such as plaintiff, to submit "self-serving" declarations so long as they are truthful, and there is nothing improper about a court's considering—and giving due weight—to "self-serving" testimony. *See Lupyan v. Corinthian Colls.*, 761 F.3d 314, 321 n.2 (3d Cir. 2014) ("As with any other kind of evidence, the declarant's interest in the outcome is merely one factor . . . to weigh in determining the reliability of the evidence. It is not a reason to automatically reject the evidence. Indeed, the testimony of a litigant will almost always be self serving since few litigants will knowingly volunteer statements that are prejudicial to their case. However that has never meant that a litigant's evidence must be categorically rejected by the fact finder.").

2.  Plaintiff says Mr. Barden's declaration "and the briefing" to which it was attached reference his "'intent' (and other synonymous phrases) . . . at least 62 times." Mot. 3 (emphasis omitted). She suggests it is improper for a declaration and the briefs to which it is attached to reference or discuss intent. The suggestion is misguided. If intent is a relevant question of fact, of course there is nothing wrong with discussing it.

3.  Plaintiff says Mr. Barden's declaration "reveals attorney client [sic] legal advice given to Defendant, *such as*"[1] these two sentences in the declaration: "I did not ask Ms. Maxwell to respond point by point to Ms. Giuffre's factual allegations in the CVRA joinder motion. What we needed to do was issue an immediate denial and that necessarily had to be short and to the point." Doc.542-7, Ex.K ¶ 13. Neither of the two sentences "reveals" attorney-client communications. To the contrary, the first sentence references a **_non_**-communication with Ms. Maxwell, i.e., what Mr. Barden did *not* talk to Ms. Maxwell about. The second sentence simply discloses attorney Barden's thought process, which by definition is not an attorney-client communication. We italicize plaintiff's use of "such as," connoting—disingenuously, we submit—the introduction of an example. Besides these two frivolous examples of attorney-client communications, plaintiff identifies no others.

4.  Supplementing her lengthy summary-judgment brief and oral argument, plaintiff re-urges her point that really it was Ms. Maxwell personally, and not Mr. Barden, who directed Mr. Gow to issue the January 2015 statement. Mot. 3. We suggest plaintiff's persistent repetition of her arguments—as with any repetition, they have become familiar, but not more persuasive—suggests her recognition that we have advanced meritorious and weighty arguments for summary

---

[1] Mot. 3 (emphasis supplied).

3

judgment. On her third try, plaintiff makes no further headway. We address here each piece of "documentary and testimonial evidence" plaintiff alleges supports her argument.

    a.    As plaintiff acknowledges, Ms. Maxwell's testimony is completely consistent with Mr. Barden's testimony; "So my lawyer, Philip Barden[,] instructed Ross Gow to issue a statement." Mot. 4 (emphasis omitted).

    b.    Plaintiff argues Mr. Gow produced a "smoking gun" email chain in which Ms. Maxwell personally directed him to distribute the January 2015 statement. Mot. 4. The "smoking gun" is a dud. It too is consistent with—corroborates—Mr. Barden's testimony. The earlier email is from Ms. Maxwell to Mr. Gow with Mr. Barden copied on the email. *See* Doc.638-4. There is *no instruction* in the email. It merely contains the January 2015 statement. In the subject line is this text: "FW: URGENT – this is the statement." The "FW" is important—it is the abbreviation for "Forward," indicating an email has been *forwarded* by the sender, in this case Ms. Maxwell. The email does not disclose who *originally* sent the email to Ms. Maxwell that she then *forwarded* to Mr. Gow. The later, reply email—from Mr. Gow to Ms. Maxwell, copying Mr. Barden, is notable. Its text reads: "OK G going with this, *thanks Philip*." (Emphasis supplied.) This suggests Mr. Barden was intimately involved with Mr. Gow's action of sending the January 2015 statement to journalists.[2] It also suggests ("going with this, thanks Philip") that, notwithstanding the absence of any direction in the earlier email from Ms. Maxwell, Mr. Gow *knew what to do*, which itself suggests *prior direction* from someone.

---

[2]Plaintiff asserts that Mr. Barden is "nowhere to be found on any of these communications" between Ms. Maxwell and Mr. Gow. Mot. 3. That is incorrect. Mr. Barden was copied on both the email from Ms. Maxwell to Mr. Gow and on the email from Mr. Gow to Ms. Maxwell. *See* Doc.638-4.

4

  c. Plaintiff next asserts Mr. Gow's testimony supports her argument Mr. Barden did not direct Mr. Gow to send the January 2015 statement. She points to Mr. Gow's testimony that "[m]y understanding . . . is"³ Ms. Maxwell sent the earlier email to Mr. Barden originally and because he was unavailable, she forwarded it to Mr. Gow. Plaintiff's reliance on this testimony is misplaced. Even if Mr. Gow's speculation about how he came to receive the email were admissible, it hardly makes plaintiff's point. One, there is no *direction*—no *instruction*—given in the email. The words in the *subject line* "this is the statement" is hardly a "command," as plaintiff argues, let alone direction to take action. Two, since the email contains no direction, it begs the question, how did Mr. Gow know to issue the January 2015 statement upon receiving the email? The answer is found in Mr. Barden's declaration. Before Mr. Gow received the email he *already knew* he was to issue the statement. In Mr. Barden's words: "In liaison with Mr. Gow and my client, on January 2, 2015, I prepared a further statement . . ., and *I instructed Mr. Gow to transmit it* via email to" the journalists. Doc.542-7, Ex.K ¶ 10 (emphasis supplied). The answer also is found in Ms. Maxwell's April 22, 2016, testimony: "*[M]y lawyer, Philip Barden[,] instructed Ross Gow to issue a statement.*" Mot. 4 (boldface omitted).

 5. Plaintiff also argues Ms. Maxwell "attempts to blame the defamatory press release entirely on [Mr. Barden]." Mot. 4. There is no "blaming." The facts are not in dispute. Ms. Maxwell engaged Mr. Barden as her lawyer; Mr. Barden engaged Mr. Gow as his agent. *See* Doc.542-7, Ex.K ¶¶ 9-10. Ms. Maxwell has not disclaimed legal responsibility for the January

---

³Mot. 5.

5

2015 statement prepared on her behalf by Mr. Barden and issued on her behalf by Mr. Gow at Mr. Barden's direction.

## ARGUMENT

**Plaintiff is entitled to no discovery of Mr. Barden's work product or Ms. Maxwell's attorney-client communications.**

    A.    **Plaintiff has violated every rule governing motions to compel, including the one requiring the existence of an unsatisfied request for production.**

Federal Rule of Civil Procedure 37(a)(1) provides that any motion to compel must be accompanied by a certification that the movant has in good faith conferred with the "party *failing to make . . . discovery*" (emphasis supplied).

Rule 37(a)(3) provides that "[a] party seeking discovery may move for an order compelling . . . production . . . if . . . a party fails to produce documents . . . *as requested under Rule 34*" (emphasis supplied).

Local Civil Rule 37.1 provides that in any motion brought under Rule 37, including a motion to compel, "the moving party shall specify and *quote or set forth verbatim in the motion papers each discovery request and response to which the motion . . . is addressed*" (emphasis supplied).

Plaintiff failed to comply with any of these rules.

On the last page of the motion plaintiff counsel certifies she "*raised*" "the failure to produce issue [sic]" when she "oppos[ed]" Ms. Maxwell's summary judgment and when she presented "oral argument" on summary judgment. Mot. 12 (emphasis supplied). That is not a Rule 37(a)(1) certification. Plaintiff's counsel fails to certify she (a) "in good faith" (b) "conferred" with the defense. Instead, she certifies she (a) "raised" (b) an "issue." The failure to comply with Rule 37(a)(1) warrants denial of the motion. *Dorchester Fin. Holdings Corp. v. Banco BRJ, S.A.*, 11-CV-1529 KMW KNF, 2014 WL 3747160, at *5 (S.D.N.Y. July 3, 2014).

6

Rule 37(a)(3) requires that a motion to compel the production of a document be grounded on the *existence of an unsatisfied request for production*. So too does Local Civil Rule 37.1. Plaintiff has identified no unsatisfied request for production. That violates both rules. Her motion must be denied on this basis alone, as a legion of cases confirms. *See, e.g.*, *Hassan v. Town of Brookhaven*, No. 13-CV-4544 JMA SIL, 2015 WL 3455108, at *4 (E.D.N.Y. May 29, 2015) (rejecting motion to compel: "Even more troubling, it appears that Hassan did not prepare or serve any requests for discovery in this action, and simply made a motion to compel as his first and only method of obtaining discovery."); *Brown v. Chappius*, No. 13-CV-00105A F, 2015 WL 5316356, at *3 (W.D.N.Y. Sept. 10, 2015) (denying motion to compel production of documents: "Plaintiff has failed to serve formal discovery demands requesting such materials.").

The meritlessness of a motion to compel combined with failure to confer warrants denial and a sanction. *Window Headquarters, Inc. v. Mat Basic Four, Inc.*, No. 91 CIV. 1816 (MBM), 1996 WL 63046, at *1 (S.D.N.Y. Feb. 9, 1996) ("Because the motion was without basis and was filed by Fagan without consulting his adversary, Fagan will pay to counsel for Ventech a sanction in the amount of $200, that being the minimum reasonable cost of responding to this meritless motion.").

### B. Even if plaintiff had a pending discovery request and had complied with the rules, she would be barred from access to Ms. Maxwell's attorney-client communications.

The attorney-client privilege "belongs solely to the client and may only be waived by him. An attorney may not waive the privilege without his client's consent." *In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987); *accord, e.g.*, *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 66 F. Supp. 3d 406, 410 (S.D.N.Y. 2014).

Plaintiff cites a bevy of cases from New York to Minnesota to Texas for the proposition that the attorney-client can be waived. That is not in question. What is in question is whether

7

Ms. Maxwell's attorney-client privilege has been waived. Plaintiff makes a one-sentence argument: The privilege "was waived by her affirmative submission of Mr. Barden's declaration which included *references* to attorney-client communications between [Ms. Maxwell] and Mr. Barden." Mot. 8 (emphasis supplied). We italicize the plural "references" to accentuate the disingenuousness of the argument, which identifies *no* "reference," let alone "references," to attorney-client communications in Mr. Barden's declaration. *See id.*

Five pages earlier, in the "Background" section of the motion, plaintiff does identify two sentences in Mr. Barden's declaration that she says effected a waiver of the attorney-client privilege: "I did not ask Ms. Maxwell to respond point by point to Ms. Giuffre's factual allegations in the CVRA joinder motion. What we needed to do was issue an immediate denial and that necessarily had to be short and to the point." Doc.542-7, Ex.K ¶ 13.

As we suggested above, *see* This Resp. 3, the contention that these two sentences effected an attorney-client privilege waiver is nonsense. It is well established that "absent a client's consent or waiver, the publication of confidential communications by an attorney does not constitute a relinquishment of the privilege by the client." *von Bulow*, 828 F.2d at 100. Mr. Barden stated explicitly in his declaration, "I am not authorised to and do not waive Ms. Maxwell's attorney-client privilege." Doc.542-7, Ex.K ¶ 3. Regardless, a lawyer cannot waive his client's attorney-client privilege by stating what he did *not* say to his client; it is frivolous to suggest otherwise.

## CONCLUSION

The Court should deny the motion to compel, and award sanctions.

Dated:  March 2, 2017

        Respectfully submitted,

        */s/ Laura A. Menninger*
        Laura A. Menninger (LM-1374)
        Jeffrey S. Pagliuca (*pro hac vice*)
        Ty Gee (*pro hac vice*)
        HADDON, MORGAN AND FOREMAN, P.C.
        150 East 10th Avenue
        Denver, CO 80203
        Phone:   303.831.7364
        Fax:       303.832.2628
        lmenninger@hmflaw.com

        *Attorneys for Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on March 2, 2017, I electronically served this *Defendant's Response to "Motion to Compel" Work Product and Attorney-Client Communications with Philip Barden* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

J. Stanley Pottinger
49 Twin Lakes Rd.
South Salem, NY 10590
StanPottinger@aol.com

*/s/ Nicole Simmons*
Nicole Simmons