UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Virginia L Giuffre,
    Plaintiff

Case No. 15-cv-07433-RWS

v.

Ghislaine Maxwell,
    Defendant
_____/

**JEFFREY EPSTEIN'S MOTION TO QUASH TRIAL SUBPOENA**

Jeffrey Epstein, a non-party to the above captioned action, has been subpoenaed to testify at the trial of this case, being commanded to appear on May 15, 2017.[1] He now moves to quash that subpoena for the reasons set forth herein.

Mr. Epstein was deposed by the parties on November 10, 2016. At that deposition, he asserted his Fifth Amendment privilege and declined to answer all substantive questions posed to him during the deposition. The validity of his assertion of the privilege has already been the subject of extensive litigation in this case, with this Court ruling that, as to questions which the parties sought to compel him to answer, Mr. Epstein's assertion of the privilege was valid and proper. Order, February 2, 2017 (under seal).[2] Mr. Epstein's good faith basis for his assertion of his Fifth Amendment privilege remains unabated. As plaintiff is well aware, it is Mr. Epstein's intention, if he is called as a witness at the trial of this case, to once again assert his Fifth Amendment privilege

---

[1] Mr. Epstein agreed to have his attorney accept service of the subpoena but, in so doing, reserved his rights to move to quash the subpoena on any and all grounds.

[2] As to other questions that the parties sought to compel Mr. Epstein to answer, the Court concluded that the information sought was irrelevant. *Id.* at 13. The upshot of the Court's ruling was that Mr. Epstein was not required to answer any of the questions to which the parties sought to compel his answers.

in response to questioning, and his assertion of the privilege at trial will be no less valid than it was at his deposition. Under the circumstances of this case, this Court should not require Mr. Epstein to physically appear to assert his Fifth Amendment privilege in front of the jury.

While it may be true that there is no blanket prohibition in all civil cases against calling a witness who will assert his Fifth Amendment privilege, *see, e.g., Brinks, Inc. v. City of New York*, 717 F.2d 700, 708-10 (2d Cir. 1983); *see also LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997), neither is it the rule that it should be permitted in all such cases. Instead, the propriety of requiring a witness to appear at trial to invoke his Fifth Amendment rights in front of a jury must be evaluated on a case-by-case basis. "The trial judge maintains discretion under Fed. R. Evid. 403 to control the way in which non-party claims of privilege reach the jury." *RAD Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 272 (3d Cir. 1986), *quoted in LiButti*, 107 F.3d at 122. *See Evans v. City of Chicago*, 513 F.3d 735, 740-41 (7th Cir. 2008)(finding no abuse of discretion in district court's refusal to permit plaintiff to "maximize and dramatize the moment" by calling witness to assert Fifth Amendment privilege in front of jury); *see also Brinks*, 717 F.2d at 715 (Winter, J., dissenting)(decrying the "invitation to sharp practice" inherent in "permitting the systematic interrogation of witnesses on direct examination by counsel who knows they will assert the privilege against self-incrimination").

Here, Mr. Epstein submitted to deposition under oath and recorded on video. At that deposition, the parties had an unlimited opportunity to examine him at length, asking approximately 600 separate questions, to all of which Mr. Epstein asserted his Fifth Amendment privilege. No different result would obtain were Mr. Epstein forced to take the stand and assert his Fifth Amendment privilege in front of the jury. Plaintiff seeks to call Mr. Epstein as a witness in the hope

not of eliciting substantive testimony but of obtaining adverse inferences against defendant Maxwell based on Mr. Epstein's assertion of the Fifth Amendment privilege with respect to various questions. Whether or not such adverse inferences are appropriate under the circumstances of this case is currently being litigated between the parties and will be decided by this Court. As explained below, requiring Mr. Epstein to appear before a jury to answer the very same questions as to which he has already asserted his Fifth Amendment privilege during sworn video-recorded testimony will add nothing to the ultimate issue of whether any adverse inference should be permitted, nor would it make any potential adverse inference any more or less valid.

The Second Circuit has identified four factors which are relevant to the determination as to whether courts should permit juries to draw adverse inferences against a party based on a witness' invocation of his Fifth Amendment privilege:

*1. The Nature of the Relevant Relationships:* While no particular relationship governs, the nature of the relationship will invariably be the most significant circumstance. It should be examined, however, from the perspective of a non-party witness' loyalty to the plaintiff or defendant, as the case may be. The closer the bond, whether by reason of blood, friendship or business, the less likely the non-party witness would be to render testimony in order to damage the relationship.

*2. The Degree of Control of the Party Over the Non-Party Witness:* The degree of control which the party has vested in the non-party witness in regard to the key facts and general subject matter of the litigation will likely inform the trial court whether the assertion of the privilege should be viewed as akin to testimony approaching admissibility under Fed. R. Evid. 801(d)(2), and may accordingly be viewed, as in *Brink's,* as a vicarious admission.

*3. The Compatibility of the Interests of the Party and Non-Party Witness in the Outcome of the Litigation:* The trial court should evaluate whether the non-party witness is pragmatically a noncaptioned party in interest and whether the assertion of the privilege advances the interests of both the non-party witness and the affected party in the outcome of the litigation.

*4. The Role of the Non-Party Witness in the Litigation:* Whether the non-party witness was a key figure in the litigation and played a controlling role in respect to any of its underlying aspects also logically merits consideration by the trial court.

*LiButti*, 107 F.3d at 123-24 (italics in original). In her motion seeking to present Mr. Epstein's assertions of his Fifth Amendment privilege in response to various questions, plaintiff has argued why these factors should result in adverse inferences against defendant Maxwell, *see* Plaintiff Giuffre's Motion to Present Testimony from Jeffrey Epstein for Purposes of Obtaining an Adverse Inference ("Motion to Present Epstein Testimony") at 10-13, and defendant Maxwell has argued why they should not, *see* Defendant's Response in Opposition to Plaintiff Giuffre's Motion to Present Testimony from Jeffrey Epstein for Purposes of Obtaining an Adverse Inference ("Opposition to Motion to Present Epstein Testimony") at 2-11. Requiring Mr. Epstein to appear personally to assert his Fifth Amendment privilege in front of the jury has no potential whatsoever to add to or detract from either plaintiff's arguments in favor of an adverse inference or arguments in opposition presented by defendant Maxwell. These factors all present questions which can be determined entirely independently of Mr. Epstein's appearance as a witness at trial. Plaintiff appears to recognize as much, as she makes no distinction in her motion between live testimony and deposition testimony; indeed, plaintiff indicates in her motion that, if Mr. Epstein were to appear as a witness, she would put the very same questions to him as she did at his deposition. *See id.* at 4 ("Ms. Giuffre now intends to call Epstein to ask him *these same questions*, either live an in-person if he honors a trial subpoena served on his legal counsel, or, if he fails to appear, via deposition testimony such as the designations just discussed" (emphasis added)). Indeed, in *LiButti* itself, the issue was the admissibility of the witness' deposition testimony and the extent to which, if any, adverse inference inferences should be drawn from the witness' invocation of the Fifth Amendment at his deposition. Nothing will be added to the adverse inference inquiry by requiring Mr. Epstein to appear personally and reassert his Fifth Amendment privilege in front of the jury, nor would the jury be aided in

4

determining whether to draw any adverse inferences it is permitted to consider by seeing Mr. Epstein assert the privilege in live testimony in front of it, rather than by seeing him do the same thing in his video deposition.

Adverse inference issues are often submitted to the jury based on deposition testimony rather than on live invocation of the privilege in front of the jury, *see, e.g., SEC v. Jasper*, 678 F.3d 1116, 1125 (9th Cir. 2012); *RAD*, 808 F.2d at 272; *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 825 F. Supp. 340, 352 (D. Mass. 1993); *East Coast Novelty Co. v. City of New York*, 842 F. Supp. 117, 121 (S.D.N.Y. 1994); *Penfield v. Venuti*, 589 F. Supp. 250, 255-56 (D.Conn. 1984), and, should this Court determine that the jury may consider whether an adverse inference is appropriate with respect to any particular questions asked of Mr. Epstein, then the use of Mr. Epstein's video deposition testimony is the procedure which should be followed in this case.

While requiring Mr. Epstein to invoke his Fifth Amendment privilege in front of the jury will yield not even a marginal benefit to either party, there are substantial countervailing concerns that weigh heavily against requiring Mr. Epstein to appear at trial. First, Mr. Epstein's personal appearance would likely generate substantial media attention which would threaten to undermine the parties' rights to a fair trial, a result which neither plaintiff or defendant could legitimately welcome. Second, requiring Mr. Epstein's personal appearance would impose an undue and unnecessary burden on him. Mr. Epstein is not a resident of New York; on the contrary, as both parties know, he resides in the Virgin Islands.[3] Because Mr. Epstein's assertion of his Fifth Amendment privilege at

---

[3] Mr. Epstein's residence in the Virgin Islands provides an additional reason why Mr. Epstein should not be required to appear at the trial of this case. Mr. Epstein spends a majority of his time in the Virgin Islands, which is his legal residence. He does not, therefore, reside within 100 miles of the place of this trial. *See generally* Fed. R. Civ. P. 45(c)(1)(A).

his video deposition is the functional equivalent of an in-person assertion, the distance of travel required and the expenses which would be incurred—here, not just the cost of travel to New York but also additional legal fees for representation during his testimony—would impose a substantial and unwarranted burden on Mr. Epstein.

Fed. R. Civ P. 45(d)(3)(A)(iv) provides that the court for the district where compliance is required must quash a subpoena that "subjects a person to undue burden." "An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party." *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005). "Whether a subpoena subjects a witness to undue burden within the meaning of [Rule 45(d)(3)(A)(iv)] 'depends upon such factors as relevance . . . and the burden imposed.'" *Garneau v. Paquin*, 2015 WL 3466833, at *3 (D. Conn. June 1, 2015), *quoting In re Application of Operacion y Supervision de Hoteles, S.A.*, 2015 WL 82007, at *4 (S.D.N.Y. Jan. 6, 2015). *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs"). Here, forcing Mr. Epstein, a nonparty, to travel to New York to assert his Fifth Amendment privilege in front of the jury would add no "value" to either plaintiff's or defendant's case beyond whatever may be afforded by Mr. Epstein's assertion of his Fifth Amendment privilege at his video deposition,  nor would Mr. Epstein's personal appearance at trial add anything of relevance to the parties' cases beyond that which the jury could observe in Mr. Epstein's video deposition testimony. Given the wholesale lack of value or relevance of Mr. Epstein's personal appearance before the jury, the burdens to which such an appearance would subject him should be controlling. This is

particularly true when the spectre of this trial's becoming even more of a media event is factored into the analysis.[4]

Plaintiff also argues in her motion that she should be permitted to call Mr. Epstein as a witness to forestall the possibility that the jury would find it odd that she had not called Mr. Epstein to testify. Motion to Present Epstein Testimony at 13-15. As defendant argues in the Opposition to Motion to Present Epstein Testimony:

> To the extent a jury wonders why Mr. Epstein is not called by Plaintiff, they will also wonder why Ms. Maxwell is not calling him if he has exonerating information. There are a myriad of reasons why a witness may or may not testify or why evidence may or may not be presented at trial. Fortunately, this is a problem that is easily remedied through jury instructions.

---

[4] Mr. Epstein has been, and continues to be, the subject of extensive publicity, much of it salacious. A Google search for "Jeffrey Epstein" returns 508,000 entries, the most recent of which center on the new nominee for Secretary of Labor, Alexander Acosta, who, when he was United States Attorney for the Southern District of Florida, approved Mr. Epstein's nonprosecution agreement. *See, e.g.*, New York Daily News, "Labor Secretary nominee Alexander Acosta gave 'sweetheart deal' to sex offender Jeffrey Epstein," February 16, 2017, available at http://www.nydailynews.com/news/national/labor-pick-acosta-gave-sweetheart-deal-sex-offender-epstein-article-1.2975065 (last visited February 17, 2017); Politico, "Trump's Labor nominee oversaw 'sweetheart plea deal' in billionaire's underage sex case," February 16, 2017, available at http://www.politico.com/story/2017/02/alexander-acosta-trump-jeffrey-epstein-plea-235096 (last visited February 17, 2017). Mr. Epstein's name has been widely linked in the press with prominent individuals such as Donald Trump, Bill Clinton, Prince Andrew. *See, e.g.*, New York Post, "The 'sex slave' scandal that exposed pedophile billionaire Jeffrey Epstein," October 9, 2016, available at http://nypost.com/2016/10/09/the-sex-slave-scandal-that-exposed-pedophile-billionaire-jeffrey-epstein/ (last visited February 17, 2017); Newsweek, "Jeffrey Epstein: the Sex Offender Who Mixes with Princes and Premiers," January 29, 2015, available at http://www.newsweek.com/2015/02/06/sex-offender-who-mixes-princes-and-premiers-302877.html (last visited February 17, 2017). He is the subject of a recently released book by best-selling author James Patterson titled *Filthy Rich: A Powerful Billionaire, the Sex Scandal that Undid Him, and All the Justice that Money Can Buy - The Shocking True Story of Jeffrey Epstein* (Little, Brown & Co. October 10, 2016). His personal appearance at the trial of this case would predictably be the focus of massive media attention, of both the mainstream and gutter variety.

Opposition to Motion to Present Epstein Testimony at 15.  Moreover, presenting Mr. Epstein's deposition testimony in which he asserted his Fifth Amendment privilege in response to questioning regarding plaintiff's allegations would completely alleviate this concern, as the jury would know from that testimony exactly "what Epstein . . . has to say about all this." Motion to Present Epstein Testimony  at 14. There is no indication in *Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.*, 819 F.2d 1471 (8th Cir. 1987), on which plaintiff relies, *id.* at 14-15, that deposition testimony of the witness was available in lieu of personal appearance before the jury to assert the Fifth Amendment privilege. The Court, stressing that the determination must be made on a case-by-case basis, *id.* at 1481, concluded that there was no error in permitting the witness to be called even though he had indicated that he would assert the privilege because

> [h]earing Richards invoke the privilege informed the jury why the parties with the burden of proof, i.e., the insurance companies, resorted to less direct and more circumstantial evidence than Richards' own account of what had occurred. . . . Otherwise, the jury might have inferred that the companies did not call Richards to testify because his testimony would have damaged their case.

*Id.* at 1482. Even a limited use of Mr. Epstein's deposition testimony would serve these purposes equally well, as the jury would be left in no doubt as to why the plaintiff had not called Mr. Epstein as a witness.

  Finally, defendant Maxwell has argued in her Opposition to Motion to Present Epstein Testimony that to the extent any questions posed to Mr. Epstein in his deposition might have been relevant to the issues in this case, presenting those questions and Mr. Epstein's responsive Fifth Amendment invocation to the jury would be substantially more prejudicial than probative:

> As to any questions regarding Ms. Maxwell or Plaintiff, the questions are severely more prejudicial than probative, designed only to confuse and mislead the jury into making a determination on an improper basis. The *LiButti* court and subsequent decisions have been

8

quite clear that the types of questions posed to Mr. Epstein, leading pejorative questions, designed to suggest that the answer would be yes, are precisely the types of questions that should be excluded from evidence under 403.

Opposition to Motion to Present Epstein Testimony at 12. Requiring Mr. Epstein's live Fifth Amendment invocation in front of the jury in response to the very same questions would be no less prejudicial and no more probative and would provide no independent basis to justify the burdens it imposes on Mr. Epstein or the damage to the integrity of the trial which will likely result from the media circus generated by Mr. Epstein's personal appearance.

## CONCLUSION

For all the foregoing reasons, Mr. Epstein's Motion to Quash should be granted.

Respectfully submitted,
JEFFREY EPSTEIN
By his attorneys,

**/s/ Jack Alan Goldberger**
Jack Alan Goldberger
Atterbury, Goldberger & Weiss, P.A.
250 Australian Avenue South, #1400
West Palm Beach, Florida 33401
(561) 659-8305
(561) 835-8691 (fax)
jgoldberger@agwpa.com


**/s/ Martin G. Weinberg**
Martin G. Weinberg
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
(617) 227-3700
(617) 338-9538 (fax)
owlmgw@att.net

## CERTIFICATE OF SERVICE

      I, Martin G. Weinberg, hereby certify that on this 3rd day of March, 2017, I electronically filed the foregoing Motion with the Clerk of the Court using the CM/ECF system, thus effecting service on counsel of record:

Sigrid McCauley
Boies, Schiller & Flexner LLP
401 E. Las Olas Bivd., Suite 1200
Ft. Lauderdale, FL 33301

Jeffrey S. Pagliucca
Laura A. Menninger
Haddon, Morgan and Foreman, P.C.
150 East Tenth Ave.
Denver CO 80203

Bradley James Edwards
Farmer, Jaffe, Weissing. Edwards, Fistos, Lehrman, P.L.
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301

Paul G. Cassell
S.J. Quinney College of Law At The University of Utah
383 S. University Street
Salt Lake City, UT 84112-0730