**United States District Court**
**Southern District of New York**

Virginia L. Giuffre,

               Plaintiff,                          Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

               Defendant.

_____/

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL ALL WORK PRODUCT AND ATTORNEY-CLIENT COMMUNICATIONS WITH PHILIP BARDEN

Sigrid McCawley
BOIES, SCHILLER & FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ....................................................................................................................... 3

I.      DEFENDANT HAS FAILED TO PRODUCE RESPONSIVE DISCOVERY
        MATERIALS BASED ON ASSERTIONS OF ATTORNEY-CLIENT PRIVILEGE.......3

II.     MS. GIUFFRE HAS NOT FAILED TO CONFER. ..........................................................5

III.    DEFENDANT HAS WAIVED WORK PRODUCT PROTECTIONS AND
        ATTORNEY-CLIENT PRIVILEGE OVER HER COMMUNICATIONS WITH
        BARDEN. .......................................................................................................................7

        A.      Defendant Admitted that She Waived Work Product Privilege with Barden......... 7

        B.      Defendant Also Waived Attorney-Client Privilege. ............................................... 8

                1.      Defendant Waived Attorney-Client Privilege by Placing
                        Communications with Her Attorney at Issue................................................8

                2.      Defendant Also Waived Attorney Client Privilege by Willfully Failing
                        to Include Communications on Her Privilege Log, therefore Forfeiting
                        Any Potential Privilege. ............................................................................12

CONCLUSION.................................................................................................................. 15

CERTIFICATE OF SERVICE ........................................................................................... 17

# TABLE OF AUTHORITIES

Page

**Cases**

*Baron Philippe de Rothschild v. Paramount Distillers, Inc.*,
   No. 87 Civ. 6820, 1995 WL 86476 (S.D.N.Y. March 1, 1995).............................................. 14

*Coleco Indus., Inc. v. Universal City Studios, Inc.*,
   110 F.R.D. 688 (S.D.N.Y.1986) ....................................................................................... 11

*Granite Partners, L.P. v. Bear Stearns & Co. Inc.*,
   184 F.R.D. 49 (S.D.N.Y.1999) ......................................................................................... 11

*Guiffre v. Maxwell*,
   2016 WL 1756918 (S.D.N.Y. 2016)................................................................................... 9

*Hickman v. Taylor*,
   329 U.S. 495 (1947)........................................................................................................ 12

*In re Air Crash at Belle Harbor, New York on November 12, 2001*,
   241 F.R.D. 202 (S.D.N.Y. 2007) ..................................................................................... 14

*In re Pioneer Hi-Bred Intl. Inc.*,
   238 F.3d 1370 (Fed. Cir. 2001)........................................................................................ 10

*In re Refco Inc. Securities Litigation*,
   2012 WL 678139 (S.D.N.Y. 2012)..................................................................................... 8

*In re Subpoena Duces Tecum*,
   99 F.R.D. 582 (D.D.C. 1983)........................................................................................... 11

*Kleiman ex rel. Kleiman v. Jay Peak, Inc.*,
   2012 WL 2498872 (D. Vt. 2012)....................................................................................... 8

*Leybold-Heraeus Technologies, Inc. v. Midwest Instrument Co., Inc.*,
   118 F.R.D. 609 (E.D. Wis. 1987) .................................................................................... 10

*Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*,
   1996 WL 668862 (S.D.N.Y. 1996).................................................................................... 14

*Norton v. Town of Islip*,
   2015 WL 5542543 (E.D.N.Y. 2015).................................................................................. 11

*S.E.C. v. Gupta*,
   281 F.R.D. 169 (S.D.N.Y. 2012) ....................................................................................... 8

*Strougo v. BEA Associates*,
   199 F.R.D. 515 (S.D.N.Y. 2001) ........................................................................... 14

*von Bulow v. von Bulow*,
   114 F.R.D. 71 (S.D.N.Y. 1987) ............................................................................. 9

## **Rules**

Fed. R. Civ. P. 26(b)(5) ............................................................................................... 14

Fed. R. Civ. P. 37(a)(1) ................................................................................................. 5

Fed. R. Civ. P. 37(a)(3) ................................................................................................. 6

## **Other Authorities**

ABA Model Rules of Professional Conduct Rule 1.6(a) ............................................... 9

Plaintiff, Virginia Giuffre, hereby files this Reply in Support of her Motion to Compel Work Product and Attorney Client Communications with Philip Barden and states as follows.

## PRELIMINARY STATEMENT

Defendant does not seriously contest that her attorney, Philip Barden, has explicitly and implicitly disclosed communications with her. Instead, she argues that "absent a client's consent or waiver, the publication of confidential communications by an attorney does not constitute a relinquishment of the privilege by the client." Defendant's Response to "Motion to Compel" Work Product and Attorney-Client Communications with Philip Barden at 8 (hereinafter "Response"). Defendant then maintains that because Barden stated in his Declaration that he was not authorized to waive any privilege, this bars the Court from finding any waiver of attorney-client privilege.

But Defendant cannot have her cake and eat it too. She has placed Barden's declaration into evidence in this case in support of her pending-summary judgment motion. It is thus not Barden who has waived attorney-client privilege in his declaration, but it is Defendant herself, acting through her attorneys in this very case, who waived privilege.

Defendant's publication of Barden's Declaration reveals communications that would otherwise be protected by the attorney-client privilege. For example, consider the following statements found in Barden's Declaration (emphases added):

- In liaison with Mr. Gow *and my client,* on January 2, 2015, I prepared a further statement denying the allegations, and I instructed Mr. Gow to transmit it via email to members of the British media who had made inquiry about plaintiff's allegations about Ms. Maxwell. Schultz Decl., Exh. 2, Barden Declaration, at 2 ¶ 10;

- I did not ask *Ms. Maxwell* to respond point by point to Ms. Giuffre's factual allegations in the CVRA joinder motion. What we needed to do was issue an immediate denial and that necessarily had to be short and to the point. *Id.* at 3 ¶ 13;

- In this sense, the statement was very much intended as a cease and desist letter to the media-recipients, letting the media-recipients understand the seriousness *with which Ms. Maxwell* considered the publication of plaintiff's obviously false allegations and the legal indefensibility of their own conduct. *Id.* at 4 ¶ 17;

- Consistent with those two purposes, Mr. Gow's emails prefaced the statement with the following language: "Please find attached a *quotable statement on behalf of Ms. Maxwell*" (italics supplied). The statement was intended to be a single, one-time-only, comprehensive response—quoted in full, if it was to be used—to plaintiff's December 30, 2014, allegations that would give the media *Ms. Maxwell's* response. *Id.* at 5 ¶ 19;

- I directed that the statement indicate *Ms. Maxwell "strongly denie[d] the allegations* of an unsavoury nature," declare the allegations to be false, give the press-recipients notice that the publications of the allegations "are defamatory," and inform them that *Ms. Maxwell was "reserv[ing] her right to seek redress." Id.* at 7 ¶ 30.

Lest there be any doubt as to the source of this information, Barden specifically added that the source was "entirely" his client – the Defendant: "The content of the statement *was entirely based on information I acquired in connection with my role as counsel for Ms. Maxwell." Id.* at 7 ¶ 30.

Defendant then doubled down on the waiver by relying very specifically on these communications in her (currently-pending) summary judgment motion. Here again, some highlight will serve to illustrate the point (internal citations to Barden Declaration omitted and emphasis added):

- Consistent with Mr. Barden's purposes for the statement, Mr. Gow's emails prefaced the statement with the following language: "Please find attached a *quotable statement* **on behalf of Ms. Maxwell**" (emphasis supplied). Summary Judgment Motion at 25;

- After plaintiff filed the CVRA motion, some thirty reporters contacted Ms. Maxwell's press representative, Mr. Gow, for Ms. Maxwell's response. **As Ms. Maxwell's lawyer**, Mr. Barden undertook that task. Relying on his knowledge of the 2011 articles publishing plaintiff's allegations and ***drawing on his experience and training as a lawyer, Mr. Barden crafted a response with the goal of*** discrediting plaintiff and what the statement called plaintiff's new" allegations. Summary Judgment Motion at 27;

- By January 2015 **Ms. Maxwell had retained** British Solicitor Philip Barden to represent and advise her in connection with plaintiff's publication in the British press of

salacious, defamatory allegations of criminal sexual abuse during the period 1999-2002. Summary Judgment Motion at 35;

- Second, Mr. Barden intended the January 2015 statement to be "a shot across the bow" of the media, which he believed had been unduly eager to publish plaintiff's allegations without conducting any inquiry of their own. This was the purpose of repeatedly stating that plaintiff's allegations were "defamatory." The statement was intended as a cease and desist letter to the media-recipients, letting the media-recipients understand the **seriousness with which Ms. Maxwell considered the publication of plaintiff's obviously false allegations** and the legal indefensibility of their own conduct. Summary Judgment Motion at 35-36; and

- At the time Mr. Barden directed the issuance of the statement, he was contemplating litigation against the media-recipients as an additional means to mitigate and prevent harm to Ms. Maxwell. Toward this end, he prepared the statement so **that it made clear Ms. Maxwell "strongly denie[d] the allegations of an unsavoury nature,"** declared the republications of the allegations to be false, gave the press-recipients notice that the republications of the allegations "are defamatory," and **informed them that Ms. Maxwell was "reserv[ing] her right to seek redress."** Summary Judgment Motion at 35-36.

Based on Defendant's disclosures, both in the Barden Declaration and in Defendant's Summary Judgment papers, Ms. Giuffre is entitled to have the Court compel production of communications and documents related to these disclosures. Some of those documents are specifically identified in the privilege logs prepared by Defendant, while Defendant has withheld other documents and communications. Defendant provides no good reason why she should not be compelled to produce that information, along with her attorney for a deposition. Accordingly, the motion to compel should be granted.

## ARGUMENT

**I.    DEFENDANT HAS FAILED TO PRODUCE RESPONSIVE DISCOVERY MATERIALS BASED ON ASSERTIONS OF ATTORNEY-CLIENT PRIVILEGE.**

In her motion, Ms. Giuffre explained that she sought production of communications between Defendant and her attorney, Philip Barden, which "Defendant listed on her privilege log." Plaintiff's Motion to Compel All Work Product and Attorney Client Communications with Philip Barden at 2 (hereinafter "Mot."). Ms. Giuffre also sought deposition on these

communications and related subjects. *Id.* Ms. Giuffre also attached, as Exhibit 1 to her motion, a list of documents over which Defendant had waived privilege. *Id.* & Ex. 1.

In response, Defendant initially makes the implausible argument that no communications by Barden have been withheld based on any assertion of attorney-client privilege or work product protection. To the contrary, Defendant boldly asserts the position that there is "no unsatisfied request for production" that would warrant granting Ms. Giuffre's motion to compel. Response at 7. This is a remarkable argument, since Defendant has obviously withheld production documents identified based on attorney-client privilege, as Exhibit 1 to the Schultz Declaration to Ms. Giuffre's motion clearly establishes. Presumably the reason Defendant has raised privilege with Barden is that documents exist that are responsive to Ms. Giuffre's request for production.

Numerous discovery requests in this case cover Barden documents. More obviously, Ms. Giuffre asked for all documents concerning statements concerning Ms. Giuffre made on behalf of Defendant by "any . . . individual":

> Produce all documents concerning any statement made by You or on Your behalf to the press or any other group or individual, including draft statements, concerning Ms. Giuffre, by You, Ross Gow, or any other individual, from 2005 to the present, including the dates of any publications, and if published online, the Uniform Resource Identifier (URL) address.[1]

In addition, Ms. Giuffre asked for all documents concerning Ms. Giuffre distributed by Defendant or her "agents":

> Produce all documents concerning which individuals or entities You or Your agents distributed or sent any statements concerning Ms. Giuffre referenced in Request No. 18 made by You or on Your behalf.[2]

---

[1] Request No. 17 form Plaintiff's Second Request for Production.
[2] Request No. 18 from Plaintiff's Second Request for Production.

4

There are other requests to which Barden documents are responsive, including:

- **Document Request No. 17**: All documents relating to communications with you and Ross Gow from 2005–Present;

- **Document Request No. 36**: All documents you rely upon to establish that (a) Giuffre's sworn allegations "against Ghislaine Maxwell are untrue."; (b) the allegations have been "shown to be untrue."; and (c) Giuffre's "claims are obvious lies.";

- **Document Request No. 8:** Produce any documents concerning any of Your, or Your attorneys or agent's, communications with Jeffrey Epstein's attorneys or agents from 1999 to the present relating to the issue of sexual abuse of females, or any documents concerning any of Your, Your attorneys or agent's, communications with Jeffrey Epstein's attorneys or agents from 1999 to the present relating to the recruitment of any female under the age of 18 for any purpose, including socializing or performing any type of work or services; and

- **Document Request No. 12:** Produce all documents concerning Virginia Giuffre (a/k/a Virginia Roberts), whether or not they reference her by name. This request includes, but is not limited to, all communications, diaries, journals, calendars, blog posts (whether published or not), notes (handwritten or not), memoranda, mobile phone agreements, wire transfer receipts, or any other document that concerns Plaintiff in any way, whether or not they reference her by name.

Defendant is clearly withholding Barden documents that are responsive to Ms. Giuffre's discovery requests.

## II.    MS. GIUFFRE HAS NOT FAILED TO CONFER.

During discovery, rather than contend that there were no Barden documents responsive to these requests, Defendant asserted attorney-client privilege. Thus, this is not a case where a party has simply failed to make discovery – something that a simple conferral might resolve. *Cf.* Fed. R. Civ. P. 37(a)(1) (requiring certification of conferral with a party "failing to make disclosure"). Instead, this is a case in which Defendant has made a disclosure – i.e., a privilege log asserting privilege over various documents. While that assertion may have been appropriate earlier in this case, when during summary judgment briefing and argument Defendant reversed course and made Barden's legal strategy, plans, advice, mental impressions, and work product the keystone

of her argument, things changed. Ms. Giuffre is entitled to present those changed circumstances to the Court.

In an effort to deflect attention from the merits of attorney-client issues, Defendant raises the procedural argument that somehow Ms. Giuffre has failed to provide an appropriate certificate of conferral. Resp. at 6. Yet, as Defendant concedes, Ms. Giuffre provided a certificate, explaining that she raised this very issue during the Court's recent oral argument on the summary judgment motion. *See* Resp. at 6 (citing Ms. Giuffre's "Certificate of Conferral" found in Mot. at 12). Of course, Defendant took the position at that time that no further production was required – a position that she continues to maintain in her current briefing. In claiming that Ms. Giuffre has somehow failed to confer, Defendant does not suggest that any conferral would have narrowed the disputed issues before the Court. Ms. Giuffre believes Defendant has waived privilege; Defendant simply disagrees.

Defendant also cites provisions in Fed. R. Civ. P. 37(a)(3) and Local Civil Rule 37.1 concerning identifying the discovery materials in dispute. Defendant claims that the documents at issue in this motion to compel have not been identified with sufficient precision. Defendant, however, fails to address Exhibit 1 to the Schultz Declaration to Ms. Giuffre's motion – which attached three privilege logs from Defendant, all of which specifically identified by Bates number Barden documents which Defendant had chosen to withhold based on attorney-client issues. It is hard to understand how Ms. Giuffre's motion could have been more precise with regard to these communications. And, as discussed below, there appear to be a number of additional communications with Barden that Defendant has deliberately failed to include on her privilege log. Here again, those communications has been specifically identified.

6

III.   **DEFENDANT HAS WAIVED WORK PRODUCT PROTECTIONS AND ATTORNEY-CLIENT PRIVILEGE OVER HER COMMUNICATIONS WITH BARDEN.**

Now that Defendant has put forth Barden's legal strategy plans, advice, and work product as her primary defense in this action, case law dictates that not only has she waived work product doctrine protection over Barden's work product documents, but she has also waived attorney-client privilege. Accordingly, the Court should compel Defendant to produce communications with Barden and require him to sit for deposition concerning those communications.

A.   **Defendant Admitted that She Waived Work Product Privilege with Barden.**

Defendant's response brief is silent on the fact that Defendant admitted to this Court that her "Barden Declaration" constitutes a waiver of the work product doctrine. As this Court will recall from Defendant's reply in support of her motion for summary judgment, Defendant directly acknowledges work product waiver:

> His intent and purposes are by definition *not* attorney-client communications and do not implicate such communications; they are attorney work product, which he is free to disclose.

Defendant's Reply in Support of Motion for Summary Judgment at 11. Accordingly, Defendant has admitted that she waived her work product privilege with regard to Barden's alleged legal strategy, "intent," and the like. The documents Barden created and considered (including drafts) should be produced, because their protection has been waived, as Defendant admits.

Until Defendant filed her motion for summary judgment along with the Barden affidavit, Barden's work product and legal advice were protected from disclosure. However, in her attorney's efforts to fall on the proverbial sword and attempt to convince the court that it was Defendant's attorney, not Defendant, who issued the defamatory press release, (a press release that she explicitly approved and directed her press agent to publish), Barden set forth his legal

strategy. His various "plans" and his various "intents" are his legal strategy. And, case law clearly recognizes *legal strategy is work product* – therefore, it is waived. *See Kleiman ex rel. Kleiman v. Jay Peak, Inc.*, 2012 WL 2498872, at *2 (D. Vt. 2012) ("Opinion work product includes such items as an attorney's legal strategy") (internal citations omitted); *In re Refco Inc. Securities Litigation*, 2012 WL 678139, at *3 (S.D.N.Y. 2012) ("plaintiffs cannot invoke the work product doctrine, as plaintiffs' attorneys shared their legal strategy with a non-party"). *Cf. S.E.C. v. Gupta*, 281 F.R.D. 169, 173 (S.D.N.Y. 2012) ("When an attorney discloses work product . . . [and] there has been a deliberate, affirmative and selective use of work product that waives the privilege. Therefore, [the waiving party] *waived any work product protection they had over legal strategy* . . .") (emphasis added).

Barden's Declaration revealed his intentions on how he was to render legal representation of Defendant. In short, he revealed his legal strategy. Legal strategy is work product, as defined both by logic and by the cases above. Accordingly, when a party reveals legal strategy, she has waived privilege under the work product doctrine. And, a lengthy "Declaration," detailing Barden's legal strategy, put forth in a last ditch attempt to defeat the claim against Defendant, most certainly waives any work product protections that may have applied. Accordingly, this Court should direct Defendant to produce all work product related to Barden's representation of her and direct Barden to sit for a deposition in New York.

### B.   Defendant Also Waived Attorney-Client Privilege.

#### 1.   Defendant Waived Attorney-Client Privilege by Placing Communications with Her Attorney at Issue.

Earlier in this case, Defendant claimed attorney-client privilege over her email communications with Barden. And earlier in this case, this Court upheld that assertion of privilege. That attorney-client privilege only applies to attorney-client communications

"primarily or predominately of a legal character." *Giuffre v. Maxwell*, 2016 WL 1756918, at *5 (S.D.N.Y. 2016) (Sweet, J.). Accordingly, it stands to reason that Barden gave legal advice to Defendant regarding matters that are responsive to Plaintiff's requests for production because this Court allowed Defendant to withhold such responsive documents from production.

Now Defendant has waived that attorney-client protection. In her opening motion, Ms. Giuffre gave one illustration of that waiver. In his declaration, Ms. Barden explains specifically what he communicated to Defendant: "I did not ask Ms. Maxwell to respond point by point to Ms. Giuffre's factual allegations in the CVRA joinder motion. What we needed to do was issue an immediate denial and that necessarily had to be short and to the point." Resp. at 8 (citing DE 542-7, Ex. K ¶ 13.

Defendant first argues that, in providing this one illustration, Ms. Giuffre's argument was somehow "disingenuous[]" because she did not take the time to specifically list other illustrations. Resp. at 8. Given Defendant's suggestion that no other illustrations exist, the Court should be aware of the following other, parallel examples of waiver, some of which are recounted above, in an individualized, bullet point listing from both the Barden Declaration and the later Summary Judgment Motion.

Defendant also argues that such examples cannot serve to waive Defendant's privilege. But an attorney has implied authority to assert or waive the privilege on the client's behalf in the course of legal representation. *See* ABA Model Rules of Professional Conduct Rule 1.6(a) (lawyer has authority to reveal confidential information when the disclosure is "impliedly authorized in order to carry out the representation"). If the client fails to object to disclosure of privilege information by the attorney, the client impliedly consents. *See von Bulow v. von Bulow*, 114 F.R.D. 71, 76 (S.D.N.Y. 1987) (privilege waived where client encouraged lawyer to write a

book about legal representation and reveal other confidences on television program), *modified*, 828 F.2d 94 (2d Cir. 1987). Here, the communications are being revealed not accidentally but rather as part of a deliberate legal strategy on behalf of the Defendant in an effort to obtain summary judgment. It is Defendant's attorneys in this very case who have placed the Barden Declaration into evidence and later moved for summary judgment. And, of course, Defendant has not made any effort to withdraw that Declaration, even after the attorney-client waiver issue was raised at oral argument during the summary judgment hearing and later through the filing of this motion.

In these circumstances, the privilege has obviously been waived. *See In re Pioneer Hi-Bred Intl. Inc.*, 238 F.3d 1370, 1376 (Fed. Cir. 2001) (counsel for party may be deposed by opposing party as fact witness without waiving attorney-client privilege, but privilege is waived if counsel discloses privileged matters); *Leybold-Heraeus Technologies, Inc. v. Midwest Instrument Co., Inc.*, 118 F.R.D. 609, 614 (E.D. Wis. 1987) (where attorney took stand, privilege waived for information necessary to cross-examine attorney).

To be sure, parts of Barden's Declaration appear to have been cleverly written in an attempt obscure the fact that he is revealing attorney-client communications. But just as using the words "plan" and "intent" as a coy proxy for the phrase "legal strategy" does not render that "plan" or "intent" something other than legal strategy, swapping the word "intended" for "advised" and does not change the fact that Barden's "intentions" were rendered as legal advice to his client. To the extent that any of Barden's communications with Defendant revealed his legal strategy work product (which the Court can easily determine based on its previous *in camera review*), the disclosures in the Barden Declaration waive the privilege over those

communications as well. Moreover, "legal strategies [also] fall within the attorney-client privilege." *Norton v. Town of Islip,* 2015 WL 5542543, at *1 (E.D.N.Y. 2015).

Perhaps recognizing that his declaration was, in fact, waiving attorney-client, privilege, Barden included in his declaration the statement: "I am not authorized to and do not waive Ms. Maxwell's attorney-client privilege." Schultz Dec. Exhibit 1, Barden Declaration, at 1 ¶ 3. But whatever the effect of this statement at the time Barden signed his declaration, it clearly had no effect when Defendant, through her attorneys in this case, chose to place the Declaration into evidence. At that time, disclosure of confidential communications, and thus waiver, took place. *See, e.g.*, *In re Subpoena Duces Tecum*, 99 F.R.D. 582, 584-86 (D.C. 1983) (disclosing party waived privilege even though it stated in transmittal letter to SEC that it did not waive privilege by submission of information), *aff'd*, 738 F.2d 1367, 1370 (D.C. Cir. 1984).

As Defendant makes no claim that Barden's legal strategies were not communicated to her in his rendering of legal advice to her, she has waived privilege over those communications. Therefore, because Defendant has revealed her attorney's legal strategies, plans, and intentions – strategies he communicated to her in giving her legal advice – she has waived attorney-client privilege. Accordingly, the Court should require Defendant to produce all of her communications with Barden and direct Defendant to have Barden sit for a deposition in New York.

As articulated in the moving brief, it is well settled that waiver may be imposed when the privilege-holder has attempted to use the privilege as both "sword" and "shield." *Granite Partners, L.P. v. Bear Stearns & Co. Inc.*, 184 F.R.D. 49, 54 (S.D.N.Y. 1999) (Sweet, J.); *see also Coleco Indus., Inc. v. Universal City Studios, Inc.*, 110 F.R.D. 688, 691 (S.D.N.Y. 1986) (Sweet, J.). Here, Defendant has made her attorney's advice and legal strategies the keystone of her motion for summary judgment. Her decision ends any privilege that previously protected her

11

communications with Barden. Indeed, when a party voluntarily waives its work product privilege in an attempt to use her attorney's work product to her advantage, the party must also produce all related documents, including drafts, e-mail communications relating to the work product, documents considered relating to the work product and any other materials created, received, used or considered relating in any way to Ms. Giuffre or this litigation, which is the very subject-matter of the disclosed work-product. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). The Court should accordingly order disclosure of all related communications here.

> **2.      Defendant Also Waived Attorney Client Privilege by Willfully Failing to Include Communications on Her Privilege Log, therefore Forfeiting Any Potential Privilege.**

Defendant also waived her attorney-client privilege for a separate, independent reason: she failed to properly log communications on her privilege log.

A bit of factual background is necessary on this point. In both her earlier (rejected) Motion to Dismiss and her pending Motion for Summary Judgment, Defendant asserted that the qualified pre-litigation privilege shields her defamatory press release from liability. Specifically, Defendant has argued that because she was contemplating an (unspecified and never-filed) lawsuit involving the British Press, she somehow had a "green light" to make whatever defamatory statements she wanted about Ms. Giuffre at the time she issued her press release, i.e., on January 3, 2015.

Of course, if Defendant actually contemplated litigation prior to and on January 3, 2015, *at the time she issued the defamatory press release*, and if Barden was actually as involved in that process as Defendant claims, where are the communications with Barden concerning this contemplated lawsuit that pre-date the issuance of the press release? Put another way, if there was a good-faith anticipated litigation (as the law requires for this defense to apply), and Defendant was working with Barden to issue a statement in relation to that good-faith anticipated

litigation, why are there no communications among Defendant and Barden until *after* Defendant issued the statement? They are certainly not in her privilege log.[3]

The Court should be aware that, in all three of Defendant's various iterations of her privilege log, there is no entry for *any* communication with Barden prior to January 10, 2015 – a week *after* Defendant issued the defamatory press release. *See* Composite Exhibit 2, Defendant's three privilege logs.

**United States District Court**
**For The Southern District of New York**

*Giuffre v. Maxwell*
15-cv-07433-RWS
**Ghislaine Maxwell's Privilege Log Amended as of May 16, 2016**

***Per Local Rule 26.2, the following privileges are asserted pursuant to British law, Colorado law and NY law.

| Log ID | DATE | DOC. TYPE | BATES # | FROM | TO | CC | RELATIONSHIP OF PARTIES | SUBJECT MATTER | PRIVILEGE |
|---|---|---|---|---|---|---|---|---|---|
| 1. | 2011.03.15 | E-Mails | 1000-1013 | Ghislaine Maxwell | Brett Jaffe, Esq. | | Attorney / Client | Communication re: legal advice | Attorney-Client |
| 2. | 2011.03.15 | E-Mails | 1014-1019 | Brett Jaffe, Esq. | Ghislaine Maxwell | | Attorney / Client | Communication re: legal advice | Attorney-Client |
| 3. | 2015.01.02 | E-Mails | 1020-1026 | Ross Gow | Ghislaine Maxwell | | Attorney Agent / Client | Communication re: legal advice | Attorney-Client |
| 4. | 2015.01.02 | E-Mail | 1024-1026 | Ghislaine Maxwell | Ross Gow | | Attorney Agent / Client | Communication re: legal advice | Attorney-Client |
| 5. | 2015.01.02 | E-Mail | 1027-1028 | Ross Gow | Ghislaine Maxwell | Brian Basham | Attorney Agent / Client | Communication re: legal advice | Attorney-Client |
| 6. | 2015.01.06 | E-Mail | 1029 | Ghislaine Maxwell | Jeffrey Epstein | | Common Interest | Communication re: legal advice | Common Interest |
| 7. | 2015.01.06 | E-Mail | 1030-1043 | Ghislaine Maxwell | Jeffrey Epstein, Alan Dershowitz, Esq. | | Attorney / Client | Communication re: legal advice | Common Interest |
| 8. | 2015.01.10 | E-Mail | 1044 | Ghislaine Maxwell | Philip Barden, Esq., Ross Gow | | Attorney / Client | Communication re: legal advice | Attorney-Client |
| 9. | 2015.01.10 | E-Mail | 1045-1051 | Ghislaine Maxwell | Philip Barden, Esq. | | Client / Attorney | Communication re: legal advice | Attorney-Client |

If Defendant was actually contemplating litigation with Barden in advance of issuing the January 3, 2015 press release (as she repeatedly claims), then there must be email

---

[3] As the Court is aware, this is not the first time that Ms. Giuffre has found evidence of documents that Defendant willfully withheld in violation of her discovery obligations. There is evidence that Defendant failed to produce documents from email accounts she used during the relevant period, and there are (important, responsive) documents, produced by a third party (Gow), that are in Defendant's possession that she both willfully failed to produce and denied the existence of at her deposition. The pre-January 10, 2015 emails she had with Barden to discuss her purported anticipation litigation are not produced and not logged, but this time, the evidence of their existence comes from Defendant's own argument about the pre-litigation privilege applying to her January 3, 2015 press release. This Court has already ordered one adverse inference jury instruction for Defendant's willful discovery non-compliance, and, at this point, Defendant's continued willful discovery failures warrant a second adverse inference jury instruction, pursuant to the renewed motion filed by Ms. Giuffre on March 3, 2017.

communication that pre-date Defendant's issuance of the statement – yet these communications never appeared on any of Defendant's privilege logs.

Either Defendant wrongfully failed to log those communications in an attempt to withhold them from this litigation (thus waiving any privilege over them), or all the claims she and Barden make about any pre-litigation privilege are untrue. At any rate, it appears that Defendant has withheld email communications with Barden from before January 10, 2015 – withheld even from her privilege log.

It is well settled law that when a party fails to log purportedly privileged communications, that party waives any privilege. *See In re Air Crash at Belle Harbor, New York on November 12, 2001*, 241 F.R.D. 202, 204 (S.D.N.Y. 2007) (Sweet, J.). ("Even if attorney-client and work-product privileges had been established, th***e privileges would have been waived due to Golan's failure to submit a privilege log*** in accordance with the requirements of Local Rule") (emphasis added); *Strougo v. BEA Associates*, 199 F.R.D. 515, 521 (S.D.N.Y. 2001) (Sweet, J.) ("The failure to provide a timely privilege log or to describe the documents in conformity with the Local Rules may result in a waiver of the privilege. *See, e.g.*, Fed. R. Civ. P. 26(b)(5), Advisory Committee Notes ("To withhold materials without such notice is contrary to the rule ... and may be viewed as a waiver of the privilege or protection.")"); *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 1996 WL 668862, at *4 (S.D.N.Y. 1996) (Sweet, J.), citing *Baron Philippe de Rothschild v. Paramount Distillers, Inc.*, No. 87 Civ. 6820, 1995 WL 86476 at *1 (S.D.N.Y. March 1, 1995) (potential privilege waived by failure to produce privilege log describing allegedly privileged documents).

Accordingly, Defendant has waived attorney-client privilege by failing to log her communications with Barden before January 10, 2015.

## **CONCLUSION**

Defendant has used her attorney's legal strategy as her primary defense in this case; accordingly, she has waived all privilege that may otherwise attach to communications with Barden and his work product. Additionally, Defendant has failed to log all of her communications with Barden, which also triggers waiver of any privilege over the email communications she failed to log. The Court should direct Defendant to produce all of Barden's communications and work product (as defined in the moving brief), as such documents are responsive to multiple discovery requests. In addition, the Court should direct Defendant to have Barden sit for deposition in New York to answer questions about these communications.

Dated:  March 7, 2017

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By:  /s/ Meredith Schultz
Meredith Schultz (Pro Hac Vice)
Boies Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

David Boies
Boies Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Bradley J. Edwards (Pro Hac Vice)
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820

Paul G. Cassell (Pro Hac Vice)
S.J. Quinney College of Law
University of Utah
383 University St.
Salt Lake City,
UT 84112(801) 585-5202[4]

---

[4] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on the 7th day of March, 2017, I electronically filed the

foregoing document with the Clerk of Court by using the CM/ECF system. I also certify that the

foregoing document is being served this day on the individuals identified below via transmission

of Notices of Electronic Filing generated by CM/ECF.

> Laura A. Menninger, Esq.
> Jeffrey Pagliuca, Esq.
> HADDON, MORGAN & FOREMAN, P.C.
> 150 East 10th Avenue
> Denver, Colorado 80203
> Tel: (303) 831-7364
> Fax: (303) 832-2628
> Email: lmenninger@hmflaw.com
>        jpagliuca@hmflaw.com

> /s/ Meredith Schultz
> Meredith Schultz, Esq.