UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

VIRGINIA L. GIUFFRE,

    Plaintiff,

v().                                                    15-cv-07433-RWS

GHISLAINE MAXWELL,

    Defendant.

-------------------------------------------------X

**Defendant's Reply in Support of Motion to Compel Non-Party Witness
to Produce Documents and Respond to Deposition Questions**

Laura A. Menninger
Jeffrey S. Pagliuca
Ty Gee
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
303.831.7364

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

I.   MS. RANSOME UNJUSTIFIABLY FAILED TO PRODUCE A PRIVILEGE LOG, RESULTING IN A WAIVER OF HER PRIVILEGE ............................................................ 1

II.  MS. RANSOME REFUSED TO PRODUCE RELEVANT, RESPONSIVE DOCUMENTS WITHOUT BASIS ................................................................................................................ 3

   A.   Requests 1, 4, 5, 14: Communications with Witnesses Related to this Case ....................... 3

   B.   Request 2:  Fee Agreements ................................................................................................. 4

   C.   Request 6-7:  Photographs .................................................................................................... 5

   D.   Request 9-12:  Passports, Visas and Other Travel Documents ............................................ 6

   E.   Request 15-16:  Financial Records to Support Her Claims .................................................. 7

   F.   Request 18:  Driver's License ............................................................................................... 8

   G.   Request 19-20:  Education Records ..................................................................................... 9

   H.   Request 21-22:  Modeling Contracts .................................................................................... 9

   I.   Request 30:  Social Media ..................................................................................................... 9

III. MS. RANSOME UNJUSTIFIABLY REFUSED TO ANSWER RELEVANT DEPOSTION QUESTIONS, AND SHE MUST BE COMPELLED TO RE-APPEAR AND RESPOND  10

CONCLUSION ........................................................................................................................... 11

CERTIFICATE OF SERVICE .................................................................................................... 13

Defendant Ghislaine Maxwell ("Ms. Maxwell") files this Reply in Support of her Motion to Compel Non-Party Witness to Produce Documents and Respond to Deposition Questions (Doc. 655) and further states as follows:

## INTRODUCTION

Ms. Ransome's Opposition to Defendant's Combined Motion to Compel ("Opposition") (Doc. 700), fell woefully short of actually addressing the categories of documents and deposition questions sought by the Motion. While Ms. Ransome touts her "robust" production, in fact she produced 18 pages of documents (three after the Motion to Compel was filed), an incomplete copy of one of her old passports, and 150 photographs which were given to her by Jean Luc Brunel. In short, the Opposition seems to suggest because she produced these pages, she should not have to answer other of the subpoena requests nor answer deposition questions which are designed to lead to admissible evidence and which, concededly, do not call for privileged answers. The Opposition, long on screenshots of photos and documents, but short on law or argument aimed at the Motion to Compel, fails to articulate any actual basis for refusal to produce or to answer, and Ms. Ransome should be ordered to comply.

## ARGUMENT

**I.   MS. RANSOME UNJUSTIFIABLY FAILED TO PRODUCE A PRIVILEGE LOG, RESULTING IN A WAIVER OF HER PRIVILEGE**

Ms. Ransome concedes she produced no privilege log, despite her assertion of privilege as to Requests 1, 2, 3 and 5. Menninger Decl. Ex. E at Responses 1-3, 5. In the face of the plain language in Rule 45(e)(2)(A), as well as the legion of cited cases requiring a privilege log (Motion at 4-5), Ms. Ransome submits two unpersuasive and inapposite arguments: (1) a log would be "burdensome", and (2) witness interviews are subject to work product protection.

1

Regarding "burdensomeness," Ms. Ransome is represented by at least five attorneys from three different firms.[1] She first spoke to those attorneys sometime in October or November 2016, so the entire volume of their communications cannot be significant, and she submits no proof to the Court that it is. She has offered no explanation as to why her five (or six) attorneys are unable to prepare a privilege log as to their communications with her, or any other documents withheld as privileged.

The cases cited by Plaintiff do not support her position. For example, *Wells Fargo Bank, N.A.* has nothing to do with privilege logs and, in fact, holds to the contrary: "The permissible scope of discovery from a non-party is generally the same as that applicable to discovery sought from parties." *Wells Fargo Bank, N.A. v. Konover*, No. 3:05CV1924 CFD/WIG, 2009 WL 585434, at *4 (D. Conn. Mar. 4, 2009). The non-party witness in *Med. Components, Inc. v. Classic Med., Inc.*, 210 F.R.D. 175, 180 (M.D.N.C. 2002), actually offered to provide a privilege log. And the non-party witness in *Tucker v. Am. Int'l Grp, Inc.,* 281 F.R.D. 85 (D. Conn. 2012), fully complied with two previous discovery requests but objected to inspection of its electronic servers to locate emails whose existence was speculative.

Ms. Ransome's second argument, the unremarkable position that witness interviews are covered by work product protection, does nothing to address the issue in question, i.e., whether she should have provided a privilege log identifying any such privileged documents. Rule 45(e)(2)(A) requires as to any withheld document "subject to protection as trial-preparation material," a non-party witness must "(i) expressly make the claim; and (ii) describe the nature of

---

[1] It is "at least" five attorneys because, when asked, Ms. Ransome testified that she is represented by Mr. Guirguis (who appeared at her deposition but has not entered an appearance in this case), Mr. Boies, Ms. McCawley, Mr. Pottinger and Mr. Edwards, but she denied being represented by Mr. Cassell, despite the fact that she has a signed fee agreement with him. Pottinger Decl. (Doc. 701) Ex. 1 at 19-20; Menninger Decl. Ex. C. She testified also that she is not represented by Meredith Schultz, though Ms. Schultz entered her appearance on Ms. Ransome's behalf. *Compare* Pottinger Decl. Ex. 1 at 23 with Docket, 17-cv-00616.

the withheld documents…in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Ms. Ransome and her five attorneys admittedly did not expressly make any such claim nor did they describe the nature of the withheld documents.

The witness's unjustified failure to provide a privilege log as to Responses 1-3 and 5 effected a waiver of any privilege. *See* Mot. at 4-5; *OneBeacon Ins. Co. v. Forman Int'l Ltd.,* 04 CIV. 2271(RWS), 2006 WL 3771010, at *7–8 (S.D.N.Y. Dec. 15, 2006); *In re Application for Subpoena to Kroll,* 224 F.R.D. 326, 328 (E.D.N.Y. 2004); *Labatt Ltd. v. Molson Breweries,* Nos. 93 CV 75004, 94 CV 71540(RPP), 1995 WL 23603 (S.D.N.Y. Jan. 20, 1995); *In re Grand Jury Subpoena,* 274 F.3d 563, 575-76 (1st Cir. 2001).

## II.   MS. RANSOME REFUSED TO PRODUCE RELEVANT, RESPONSIVE DOCUMENTS WITHOUT BASIS

### A.   Requests 1, 4, 5, 14: Communications with Witnesses Related to this Case

Requests 1, 4, 5 and 14 requested communications between Ms. Ransome and a number of different witnesses in this case. In response, Ms. Ransome produced 18 pages emails. She testified that she conducted the search for responsive emails herself, of her Yahoo account inbox. Pottinger Dep. Ex. 1 at 378-83, 386. Ms. Ransome did not search any other accounts for responsive communications, no forensic search was conducted of the account, nor did her attorneys conduct a search of her computer (including the attorneys representing her in her *Jane Doe* complaint).

According to Ms. Ransome at her deposition, she possesses other responsive communications. For example, she testified that she wrote to the NY Post reporter, Maureen Callahan, in an attempt to sell her story to the media, in or about October 2016. Pottinger Ex. 1 at 38 ("I emailed her after I read an article that she had written about Jeffrey Epstein."); *id.* at 50

("There were, I think, a few emails exchanged, but nothing ever came about it.  Q:  And, again, those emails from your Yahoo account?  A:  Yes.").  She testified that those emails are still on her computer in her Yahoo account. *Id.* at 39  (Q:  Where is the email that you wrote her?  A:  It's on a—it's on my computer.  Q:  Okay.  In your Yahoo account?  A:  Yes.").  They were not produced. *Compare* Menninger Decl. Ex. I, Request No. 3 (seeking documents that reference "Ghislaine Maxwell, Jeffrey Epstein" and others).

She also possesses emails with witness Pumla Grizell, to whom she allegedly had complained about Jeffrey Epstein, but only produced selected emails within the same email chain.

Because a thorough search of email communications was not performed within the Yahoo account or any other account used by Ms. Ransome, there is no guarantee that all responsive documents have been produced.  After counsel for Ms. Maxwell raised during conferral the incomplete production of communications, Ms. Ransome's lawyers were able to locate additional responsive documents which have been produced in 3 different batches.  The Court should order a thorough and complete search of Ms. Ransome's emails and accounts to ensure that there are no other missing communications and that the identified communications with Ms. Callahan and Ms. Grizell are produced.

**B.    Request 2:  Fee Agreements**

In response to Request 2, Ms. Ransome produced her fee agreement with Messrs. Edwards, Pottinger and Cassell, purporting to reflect their pro bono representation of her as a witness in this matter.  She has not produced, nor indicated any basis for withholding, her fee agreement associated with her civil complaint in *Jane Doe 43 v. Epstein et al.,* including any for Mr. Cassell, Mr. Edwards, Mr. Boies, Ms. McCawley or Ms. Schultz, all of whom have entered appearances in that matter.  *See Docket Report*, *Jane Doe 43 v. Epstein et al.,* 17-cv-00616-JGK.

4

She also did not produce any writing reflecting her engagement of Mr. Guirguis as her counsel. Ms. Ransome's interconnected legal representations, her financial motive for testifying, and her financial arrangements with those counsel all are relevant and discoverable.

### C.  Request 6-7:  Photographs

Ms. Ransome produced *some* photographs which she claims documents her time on the island. Some photos, in fact, capture her image on what appears to Little St. James Island. Indeed, she inserted photographs in her Response and suggested that such photographs of Ms. Maxwell had been taken by her. *See* Opp'n at 1-4 (Doc. 700). Any such implication would be false. As Ms. Ransome testified and as subsequent investigation has revealed, the photographs of Ms. Maxwell were actually taken by Jean Luc Brunel, placed on a disk, and *given to Ms. Ransome*. Pottinger Decl. Ex. 1 at 335-336 ("Jean Luc took these specific photos…I had a disk that Jean Luc had given me as a present and memento of that holiday."). Some of the photos were taken when Ms. Ransome was not even on the island.

In any event, the photographs produced are incomplete. The "gift" disk of photographs, jumps sequential numbers thereby having omitted a number of photos, purportedly taken on the island.

| File | Date | Type | Size |
|---|---|---|---|
| DSC00243 | 1/2/2007 1:38 PM | JPG File | 2,081 KB |
| DSC00244 | 1/2/2007 1:39 PM | JPG File | 2,209 KB |
| DSC00246 | 1/2/2007 1:40 PM | JPG File | 2,052 KB |
| DSC00250 | 1/2/2007 1:42 PM | JPG File | 1,982 KB |
| DSC00251 | 1/2/2007 1:43 PM | JPG File | 2,322 KB |
| DSC00254 | 1/2/2007 1:43 PM | JPG File | 2,265 KB |
| DSC00255 | 1/2/2007 1:43 PM | JPG File | 2,200 KB |
| DSC00256 | 1/2/2007 1:43 PM | JPG File | 1,971 KB |

5

| | | | |
|---|---|---|---|
| DSC00272 | 1/2/2007 1:46 PM | JPG File | 2,152 KB |
| DSC00273 | 1/2/2007 1:47 PM | JPG File | 2,100 KB |
| DSC00274 | 1/2/2007 1:47 PM | JPG File | 2,370 KB |
| DSC00283 | 1/2/2007 1:49 PM | JPG File | 2,370 KB |
| DSC00284 | 1/2/2007 1:49 PM | JPG File | 2,361 KB |
| DSC00285 | 1/2/2007 1:49 PM | JPG File | 2,370 KB |
| DSC00286 | 1/2/2007 1:49 PM | JPG File | 2,270 KB |
| DSC00293 | 1/2/2007 2:09 PM | JPG File | 2,266 KB |
| DSC00296 | 1/2/2007 2:10 PM | JPG File | 2,088 KB |

*See, e.g.,* Menninger Decl. Ex. J (screenshots of contents of disk produced).

Furthermore, Plaintiff was asked to produce the photos in "native format." As to print photographs, she provided some copies of the fronts of photos and some backs of photos, but she produced the fronts and backs separately so there is no way to discern which front goes with which back.

Ms. Ransome should be ordered to produce *all* responsive photographs in their native format, or permit inspection of the same.

**D.     Request 9-12:  Passports, Visas and Other Travel Documents**

In Response 9, Ms. Ransome promised that her "current passport is attached." Pottinger Decl. Ex. 1 at 10. It was not. Ms. Ransome instead produced <u>one</u> of her <u>expired</u> passports, specifically her British passports. She did not produce her South African passport from 2006-07, nor did she produce either her current or her prior South African passports. In fact, Ms. Ransome had her current passport both in NY and she presented it at the time she signed her declaration in Barcelona.

Ms. Ransome also produced no documents either reflecting her visas to travel, work or study in the US (Request 10) or any communication regarding such visas (Request 11).

These documents are calculated to lead to admissible discovery, not, as the witness baldly proclaims, intended to "harass" her. Ms. Ransome's story is premised on the notion that she

6

wanted to "further her education" in the U.S., which is why she traveled here in late 2006. She also has alleged that she was "promised" that Mr. Epstein would help her gain admission to FIT, and that Ms. Maxwell also made such extraordinary promises. Whether Ms. Ransome had permission to attend school in the U.S., or to work here, bears directly on whether she reasonably could have relied on any such alleged promise. Moreover, the dates of Ms. Ransome's travel to and from the U.S., to and from South Africa, and to and from other countries relates directly to whether or not she was in fact present in the U.S. when she claims that she was. The requested documents should be produced.

E.        **Request 15-16: Financial Records to Support Her Claims**

In her *Jane Doe 43* complaint, Ms. Ransome averred that "Defendants Epstein and Maxwell continued to provide [her] with things of value in exchange for [her] continued compliance with Epstein's sexual demands; however, they failed and refused to perform their promises to help [her] be admitted to F.I.T. or another school, or to provide financial support for college admission or on-going education." *See Jane Doe 43 v. Epstein et al.,* 17-cv-00616, Complaint (Doc. 1) at 16-17. The subpoena thus called for Ms. Ransome to produce documents reflecting any payments received by her from Mr. Epstein (or his associates) and her financial records from the years 2006-07 when she claims she was receiving remuneration from Mr. Epstein.

In response, Ms. Ransome contends that these records are a "complete invasion of her privacy" and have "no relevance." Apart from "relevance" not being the applicable standard, it is hard to imagine documents reflecting her financial payments from Mr. Epstein being any more relevant. During her deposition, Ms. Ransome testified that she had a bank account in NY in 2006-07 and her counsel instructed her not to answer the question "with which bank?" Pottinger Decl. Ex. 1 at 414-15. She testified that in that account she placed her earnings from her

7

"modeling contracts." *Id. S*he also testified that during the operative time frame she was making money working for an agency in New York who arranged to have her paid $1,500 to "entertain" or "spend time" with "gentlemen" with whom she sometimes engaged in sexual relations on her "own accord." *Id.*at 86-88. Finally, she claims she had "savings" from her previous modeling jobs.

All of Ms. Ransome's financial circumstances at the time, including whether she received money from Mr. Epstein, when and how much, all bear signifcant relevance to her claims that she was given financial incentives by Epstein and Maxwell in exchange for sexual compliance. The subpoena is narrowly tailored to (a) money directly from Epstein or his associates, or (b) from the time frame 2006-07. Any privacy concerns can be alleviated based on the protective order entered in this case.

F.    **Request 18: Driver's License**

Response to Request No. 18 promised that "Sarah Ransome's driver's license will be produced at her (February 17) deposition in this matter." Pottinger Dec. Ex. 1 at 17. It was not. Ms. Ransome now contends that she is "fearful for her life" based on her sharing her story with a news reporter from the New York Post.[2] A driver's license contains important identifying information from which background checks and other investigation can occur. It is primarily a public document. But for the fact that Ms. Ransome lives in Spain, and has dual citizenships with the UK and South Africa, such document could be obtained by a simple visit to the Department of Motor Vehicles. Any newfound privacy concerns can be alleviated by a "confidential" designation on the production.

---

[2] Ms. Ransome testified that she was "followed at least once," but that was after she contacted the New York Post reporter and blames that reporter for sharing her secret. The supposed "following" occurred prior to Ms. Ransome's name being identified publicly or to counsel for Ms. Maxwell, and Ms. Ransome admits she did not report the alleged following to any law enforcement authorities.

8

G.     **Request 19-20: Education Records**

Ms. Ransome was requested to produce her other post-secondary education degrees, transcripts, and attendance and grade records, as well as her applications to fashion college, modeling or other technical colleges. Ms. Ransome testified at her deposition, and noted in her *Jane Doe 43* complaint that she filled out an application for acceptance at the Fashion Institute of Technology ("FIT") and that, she says, Mr. Epstein and Ms. Maxwell promised to help her gain admission, but they did not which forms the basis of her claim that her sexual favors to Mr. Epstein amounted to "trafficking."

She failed to produce her FIT application, without justification. She also failed to produce any other records concerning her other post-secondary training or applications. These documents relate to the allegations in her Jane Doe complaint (paragraphs 37, 53-55) and also her financial motivation to testify in this case.

H.     **Request 21-22: Modeling Contracts**

Similarly, Ms. Ransome refused to produce her modeling contracts or earnings, which directly relate to Paragraph 38 of her *Jane Doe* complaint. She did not indicate she searched for any such documents, indeed she refused to answer questions about her modeling earnings, as discussed *infra*.

I.     **Request 30: Social Media**

Finally, Ms. Ransome was asked to produce her social media postings. She denied having any such accounts. Pottinger Dec. Ex. 1 at 61 ("I don't have any social media platforms."). This testimony was false. Menninger Decl. Ex. K. Ms. Ransome has, at least, a Twitter account as well as an Instagram account. While some posts are public, others are only shared with her friends. Ms. Ransome should be required to produce any of her postings on any social media platform.

9

### III. MS. RANSOME UNJUSTIFIABLY REFUSED TO ANSWER RELEVANT DEPOSTION QUESTIONS, AND SHE MUST BE COMPELLED TO RE-APPEAR AND RESPOND

During her deposition, Ms. Ransome's counsel (and Plaintiff's counsel) instructed her not to answer a number of non-privileged questions. The record of the deposition is replete with such frivolous objections. For example, at page 7, her attorney instructed her not to give her "current address," whether she "has any source of income," "her family's location, things of that nature," and her partner's "cellphone number." None of these questions call for privileged information. Pottinger Dec. Ex. 1 at 7, 10-12, 15. When asked who was paying for her hotel in New York, Mr. Guirguis instructed Ms. Ransome not to answer, and then Ms. McCawley (appearing on behalf of Plaintiff and NOT on behalf of Ms. Ransome), instructed her to answer. *Id.* at 31-33. Her attorneys (and Plaintiff's counsel) took breaks while questions were pending to consult with Ms. Ransome before she answered. In sum, there were a significant number of deposition questions posed to Ms. Ransome that she was improperly instructed not to answer and for which she should be compelled to return to a deposition and answer.

**Category 1 - Personal current financial information.**

In opposition, Ms. Ransome asserts, without factual or legal support, that her financial information is being sought "for the purpose of harassment and intimidation." Because Ms. Ransome failed to address the relevance argument asserted by the Motion, this issue should be deemed admitted. *Compare* Motion at 10-11; Opp'n at 19.

**Category 2 - the cell phone number of her partner**.

In opposition, Ms. Ransome asserts, without factual or legal support, that her partner's cellphone number is being sought "for the purpose of harassment and intimidation." Because Ms. Ransome failed to address the relevance assertion asserted by the motion, this issue should be deemed admitted. *Compare* Motion at 11; Opp'n at 19.

**Category 3 – Allegedly privileged communications with Alan Dershowitz**

In opposition, Ms. Ransome has now backtracked from her deposition testimony and claims she "believed" that Alan Dershowitz was her attorney, even though she then testified that a third person, Mr. Epstein, was in the room during her conversations with Mr. Dershowitz. Because there was an improper assertion of privilege by her attorneys to the questions posed, Ms. Ransome should be ordered to respond to those deposition questions. *See* Motion at 11-12; Opp'n at 19-20.

**The Witness's Abandoned Objections**

Ms. Ransome did not oppose the specific requests that she answer the following deposition questions, all of which she was instructed not to answer without any claim of privilege or protection. *See* Mot. at 12. Ms. Ransome should also be required to answer these questions:

1. Her partner's occupation (motivation for fabrication)
2. Her parents' addresses (she claims that they spoke with Ms. Maxwell and Mr. Epstein and have knowledge of her "coming forward")
3. Where she was staying while in NY (paid for by Plaintiff's Counsel, motive for fabrication and bias)
4. Whether Alan Dershowitz contacted anyone on her behalf (communications with others by counsel not privileged)
5. Her stepmother's phone number and email address and physical address (she claims that they spoke with Ms. Maxwell and Mr. Epstein)
6. When she provided her photos to her lawyer (*date* of communication and production to attorney not privileged)

**CONCLUSION**

For the reasons articulated in the Motion to Compel and further supported in this Reply, Defendant requests the entry of an Order:

1. Compelling production of all documents responsive to the subpoena, including communications with counsel because privilege has been waived. These include specifically, but are not limited to:

11

   a. Her current passport, her South African passports, and all missing pages excluded from the passport produced
   b. Her emails with Maureen Callahan, including ones wherein she sent photograph of her and her boyfriend referenced in her deposition
   c. Her fee agreements
   d. Her FIT application
   e. The disc of photos provided to her by Jean Luc Brunel – containing the metadata
   f. All photographs either previously produced or withheld, with metadata or, if in hard copy, including the front and back of the photo
   g. All emails from ▮▮▮▮▮▮▮▮▮▮ by, between, or referencing any Defendant in Jane Doe 43, or communicating with any person Ms. Ransome knew through Jeffrey Epstein, or that related to her claims in this case and the *Jane Doe 43* complaint.
   h. Her financial records from Epstein or from 2006-07
   i. Her modeling contracts, and
   j. Her social media

2. Requiring Ms. Ransome to re-appear for deposition and respond to all questions as to which she was instructed not to answer in her first deposition, excluding the name of her current prescribing doctor;

Dated: March 14, 2017

Respectfully submitted,

/s/ Laura A. Menninger
Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
*Ty Gee (pro hac vice)*
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:   303.831.7364
Fax:     303.832.2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on March 14, 2017, I electronically served this *Defendant's Reply in Support of Motion to Compel Non-Party Witness to Produce Documents and Respond to Deposition Questions* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
FARMER, JAFFE, WEISSING, EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

J. Stanley Pottinger
49 Twin Lakes Rd.
South Salem, NY 10590
StanPottinger@aol.com

*/s/ Nicole Simmons*
Nicole Simmons