United States District Court
Southern District of New York

Virginia L. Giuffre,

       Plaintiff,              Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

       Defendant.
_____/

**JOINT RESPONSE IN OPPOSITION TO PROPOSED INTERVENORS' MOTION FOR LEAVE TO INTERVENE AND TO MODIFY THE PROTECTIVE ORDER**

Non-Party Jane Doe 43 in the captioned matter *Jane Doe 43 v. Epstein, et al*, No. 17 Civ. 616 (JGK) and Plaintiff Virginia Giuffre oppose the Proposed Intervenors' Motion for Leave to Intervene and to Modify the Protective Order for the reasons set forth below. The Proposed Intervenors are two non-parties, Jeffrey Epstein and Leslie Groff ("Epstein Defendants").

**PRELIMINARY STATEMENT**

This Court has twice held that non-parties, such as Jeffrey Epstein and Leslie Groff, cannot challenge this Court's Protective Order. Therefore, the Court should summarily deny this motion.

**PROCEDURAL HISTORY**

On March 18, 2016, this Court entered a Protective Order (DE 62) for the privacy of the parties and deponents. Non-Party Jane Doe 43 was a fact witness and deponent in the *Giuffre v. Maxwell* case. She provided both deposition testimony and documents in this case which were designated as "confidential" under the terms of the Protective Order. On January 26, 2017, Non-

1

Party Jane Doe 43 filed her own action against Jeffrey Epstein and others for violations of 18 U.S.C. § 1595 for engaging in commercial sex trafficking. Despite the fact that it is well settled that a Court should not consider documents beyond the four corners of the complaint in evaluating a Motion to Dismiss, the Epstein Defendants seek to utilize documents produced by Jane Doe 43 in this matter for purposes of supporting their Motion to Dismiss in the matter before Judge Koeltl. The Epstein Defendants argue that the materials can be used to establish that Jane Doe 43's claims should be barred because they are outside the ten (10) year statute of limitation period and also that they somehow establish that Epstein is not within the New York Court's jurisdiction.

Accordingly, the Epstein Defendants came before this Court seeking to intervene to gain access to documents that were marked confidential under the Protective Order. In an effort to avoid any unnecessary motion practice before this Court, Non-Party Jane Doe 43 and Virginia Giuffre agreed to the release of her deposition transcript and any of the documents that could remotely be related to the challenges to jurisdiction and statute of limitations (56 documents) which the Epstein Defendants desire to present at the Motion to Dismiss stage. The Epstein Defendants were not satisfied with the disclosure agreement, and are therefore before this Court seeking additional documents.

At the outset, it is critical to note that the Court, in its November 2, 2016 order, has already held in this case that a non-party cannot seek to overturn the protective order as follows:

> "The Protective Order states that parties can object to the confidentiality designations: "A party may object to the designation of particular CONFIDENTIAL INFORMATION by giving written notice to the party designating the disputed information… it shall be the obligation of the party designating the information as CONFIDENTIAL to file an appropriate motion requesting that the Court determine whether the disputed information should be subject to the terms of this Protective Order." This Court's Protective Order does not allow for non-parties to challenge these designations.

2

> The Movant agreed to be bound by the provisions of the Protective Order in exchange for receiving the Requested Documents. Accordingly, he has agreed to the confidentiality restrictions placed on the documents, no matter what the documents contained so that he could be privy to all of the discovery in this case. He is thereby bound by its confidentiality provisions, as well as the provisions ***that only allows parties to bring challenges to the Protective Order.***

November 2, 2016 Sealed Opinion (emphasis added).

Similarly here, the Epstein Defendants only have possession of these documents because Epstein was a witness in this matter bound by the Protective Order. As such, he cannot move to release those documents because he is not a party to this action. Defendant Maxwell has not joined Epstein's Motion. Accordingly, it is the law of the case that his motion must be denied.

## ARGUMENT

It is well settled that a Court should not consider documents outside the four corners of the Complaint at the Motion to Dismiss stage. *See, e.g., In re Giant Interactive Grp., Inc. Sec. Litig.*, 643 F. Supp. 2d 562, 573 (S.D.N.Y. 2009) (Sweet, J.) (Court not considering evidence outside of complaint in deciding motion to dismiss, denying motion) ("'[T]he evidence advanced by Defendants is not within the four corners of the Complaint, and cannot be considered here.'" (citing *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988))); *Bill Diodato Photography LLC v. Avon Prod., Inc.*, No. 12 CIV. 847 RWS, 2012 WL 3240428, at *4 (S.D.N.Y. Aug. 7, 2012), on reconsideration, No. 12 CIV. 847 RWS, 2012 WL 4335164 (S.D.N.Y. Sept. 21, 2012) (Sweet, J.) ("A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading. Thus, in deciding such a motion to dismiss, 'the Court must limit its analysis to the four corners of the complaint.'" (internal citations omitted)). Yet the Epstein Defendants seek to intervene in this case for the exact purpose of obtaining relief from documents marked as "confidential" to admittedly utilize in support of their Motion to Dismiss.

3

Furthermore, Jane Doe 43 has good reason to believe that the Epstein Defendants also have the nefarious purpose of utilizing the confidential documents to humiliate and embarrass her in a public filing. This tactic should not be tolerated, and for that, their motion to modify should be denied.

> I.     **Jane Doe 43 and Virginia Giuffre Have Already Agreed to Disclose Any Remotely Relevant Testimony and Documents**

As an initial matter, Jane Doe 43 and Virginia Giuffre have already agreed to release Jane Doe 43's deposition transcript and 56[1] documents that she produced from the confines of the Protective Order. Epstein Defendants spend a substantial amount of time in their Motion to Intervene trying to convince this Court that Jane Doe 43's testimony, which they label the "Agreed Evidence," establishes that she was not trafficked during the statute of limitations period. That could not be further from the truth. Jane Doe 43's testimony clearly establishes that her abuse continued within the ten (10) year statute of limitations period:

- She provided testimony demonstrating that Epstein's abuse of Jane Doe 43 continued during the ten (10) year window before she filed her lawsuit against him. Jane Doe 43 Dep. Tr. 216; 250-251; Jane Doe 43000002-15.

- She testified that she and the other girls were frightened of Epstein and Ghislaine Maxwell. Jane Doe 43 Dep. Tr. 44; 283.

- She testified that she was held against her will on Epstein's island. Jane Doe 43 Dep. Tr. 209.

- She testified that Epstein and Maxwell, knowing Jane Doe 43 was financially destitute, and was suffering from depression, lured her into their commercial sex trafficking ring with the false promises of taking care of her and paying for her education if she complied with their demands. Jane Doe 43 Dep. Tr. 112; 233; 250-251.

---

[1] Jane Doe 43 inadvertently failed to include Document 000425-426 and hereby incorporates that email, which is from 2007, into the documents she has agreed to release.

- Jane Doe 43 testified that she interacted with Maxwell after Epstein flew her back from South Africa which was within the ten (10) year statute of limitations period and that she "frequently" was summoned to Epstein and Maxwell's office in New York.  Jane Doe 43 Dep. Tr. 171, 172, 176, 177, 294- 295, 374; 396.

- She testified that Epstein purchased a cell phone for her so he could keep track of her at all times and if she did not come when called he would come find her. Jane Doe 43 Dep. Tr. 177; 257.

- She was forced by Epstein to have sex with other girls and with a colleague of Epstein's in his New York mansion. Jane Doe 43 Dep. Tr. 187-192.

- During the ten (10) year statute of limitations period, Epstein used threats to ensure Jane Doe 43 complied with his physical demands including forcing her to stop eating so she could meet his demands. Jane Doe 43 Dep. Tr. 221, 224, 230, 417.

- During the ten (10) year statute of limitation period, she testified she was actively working on her FIT application based on the false promises that Epstein and Maxwell would assist in her enrollment and pay for her schooling. Jane Doe 43 Dep. Tr. 233; 376; 408.

- In February 2007, Epstein asked Jane Doe 43 to find him a personal assistant in South Africa to bring back to him who was "very young looking, pretty."  Jane Doe 43 Dep. Tr. 218-220; 418.

- She testified that she was with Epstein until April 2007, which is well within the ten (10) year statute of limitations period. Jane Doe 43 Dep. Tr. 412.

- When asked if she tried to break away from Epstein in February 2007, she responded saying: "No. I didn't decide to make a break with Jeffrey Epstein." Jane Doe 43 Dep. Tr. 43 at 416.

Jane Doe 43 was questioned in this deposition by Defendant Maxwell's lawyers for purposes of the *Maxwell* case.  However, she was not asked many key questions that are highly relevant to the case pending before Judge Koeltl. For example, she was not asked whether during the period of January 2007 to April 2007 she believed that she was able to leave Epstein without being subject to harm.  She was not asked about the specifics of the multiple times she was abused during the period of January 2007 to April 2007 by Epstein.  And she was not asked

5

about how Epstein continued to manipulate her in order to keep her compliant in his sexual trafficking ring. And, again, pursuant to this Court's Orders, the movants do not have the right under the Protective Order to bring this motion.

## II.     The Disputed Documents Should Remain Protected

Despite the fact that Jane Doe 43 and Virginia Giuffre agreed to release her deposition and 56 different documents, including communications from the time period she was abused by the Epstein Defendants, the Epstein Defendants are still insisting on coming before this Court to fight over the so-called "Disputed Documents" that the Epstein Defendants improperly and impermissibly seek to remove from this Court's Protective Order.  These documents have nothing to do with any of the Epstein Defendants' alleged arguments in their Motion to Dismiss arguments that relate to jurisdiction and statute of limitations challenges. To the contrary, the Epstein Defendants are merely trying to publicly smear Jane Doe 43 by attaching salacious emails to a public filing, despite the fact that the documents have no relationship to the Motion to Dismiss.

The "Disputed Documents" can be categorized in two groups.  The first group is a collection of photographs of various people including Jane Doe 43, Epstein, Maxwell, and other females (Jane Doe 43 000204-235). The photographs are not dated and have no bearing on the statute of limitations or jurisdiction arguments that the Epstein Defendants want to make.  The second group includes a series of **2016** communications that Jane Doe 43 had with a reporter (Jane Doe 43 000428-557).  These communications are not relevant to either the issue of statute of limitations or the issue of whether the court has jurisdiction over the *Epstein* matter in New York.  They do, however, include highly *irrelevant* items that could only serve the Epstein Defendants by smearing and embarrassing Jane Doe 43, such as pictures of Jane Doe 43 after a

suicide attempt. Those could only be used to publicly humiliate and intimidate her. Again, none of that evidence should be considered at the Motion to Dismiss stage. Of course, the Court need not reach such details for consideration on the instant motion as it has already held that non-parties cannot challenge the Protective Order.

### III.     The Court Should Not Modify the Protective Order as to These Documents

The Court took care to have the parties enter into the Protective Order in this case given the sensitive nature of the sexual abuse allegations at issue. Jane Doe 43 courageously gave her testimony in this action, and voluntarily produced documents even though she was not subject to a subpoena in Spain. The documents that she produced contain sensitive information, and the Epstein Defendants have failed to set forth a sufficient basis justifying a modification to the Protective Order. As the Court is aware, even if the Epstein Defendants did set forth a sufficient basis, this Court still could not grant the relief sought because, as it previously held, non-parties cannot move the Court to modify the Protective Order. The Court need not reach **any** of the arguments put forth by these non-parties. This Court's November 2, 2016 Order makes clear that a non-party, like Epstein here, who obtains Confidential materials only through his participation in this case, is bound by the terms of the Protective Order which only allows modification by a "party." Order at 24-25.

There is a "strong presumption against the modification of a protective order," in the Second Circuit, and "orders should not be modified absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need." *In re Teligent, Inc.*, 640 F.3d 53, 59 (2d Cir. 2011); *see also In re September 11 Litigation*, 262 F.R.D. 274 (S.D.N.Y. 2009). The Second Circuit has been hesitant to permit modifications that might "unfairly disturb the legitimate expectations of the parties or deponents." *Dorsett v. County of*

*Nassau*, 289 F.R.D. 54, 64 (E.D.N.Y. 2012). Indeed, "[i]t is presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." *Id.* (internal citations and quotations omitted); *see also Medical Diagnostic Imaging, PLLC v. Carecore Nat., LLC*, 2009 WL 2135294, at *4 (S.D.N.Y. 2009) (denying motion to modify protective order because parties and third parties have reasonably relied upon the terms of the protective order).

As discussed in detail in this Court's previous Order, "[t]he Protective Order provided confidentiality for information the parties determine would 'improperly annoy, embarrass or oppress any party, witness or person providing discovery in this case.'" May 2, 2017 Order Denying Modification of Protective Order (DE 892) at 4 (quoting Protective Order). Further, "[t]his Court has, three times, found the issues presented in the action warrant a Protective Order, and has specifically expressed concern for its ongoing efficacy." *Id.* at 5.

Moreover, the Protective Order (DE 62) does not allow non-parties, like Epstein, to challenge the confidentiality designations or the efficacy of the Order. The Protective Order only states that *parties* can object to the confidentiality designations: "A party may object to the designation of particular CONFIDENTIAL INFORMATION by giving written notice to the party designating the disputed information . . . it shall be the obligation the party designating the information as CONFIDENTIAL to file an appropriate motion requesting that the Court determine whether the disputed information should be subject to the terms of this Protective Order." (DE 62 at ¶ 11, p. 4). This Court's Protective Order does not allow for non-parties to challenge these designations and therefore this Motion to Intervene, filed by Epstein and Groff, both non-parties to this case, should be rejected.

Notably, the cases that the Epstein Defendants relies upon are inapposite. None of the cases that the Epstein Defendants cite involve the modification of a protective order for purposes of a defendant moving to dismiss a different case. More specifically, none of the cases that they cite relate to a protective order in a sexual abuse case. In *Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, No. 05 CIV. 2745 JGK RLE, 2010 WL 779314, at *4 (S.D.N.Y. Mar. 2, 2010), the court granted the motion to intervene, but denied the motion to modify the confidentiality order, just as this Court has done two times before. In *Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc.*, 287 F.R.D. 130, 134 (E.D.N.Y. 2012), the plaintiff, not a third-party, moved to modify the order for a separate third-party in another case. In *Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004), the court *sua sponte* publicly disclosed settlement terms. *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 313 (D. Conn. 2009) involves a Canadian class action lawsuit that is virtually identical to its American counterpart. And in *In re Visa Check/MasterMoney Antitrust Litig.*, 190 F.R.D. 309 (E.D.N.Y. 2000), the United States Department of Justice sought to intervene in an antitrust case.

Finally, "a litigant's purpose in seeking modification of an existing protective order is also relevant for determining whether to grant a modification. Requests to modify protective orders so that the public may access discovery materials is arguably subject to a more stringent presumption against modification because there is no public right of access to discovery materials." *Dorsett*, 289 F.R.D. at 65 (E.D.N.Y. 2012). There can be no legitimate purpose for the movants seeking pictures of Jane Doe 43 after her attempted suicide and these are documents they can seek through the normal courses of discovery before Judge Koeltl. As with other non-party attempted intervenors, the Epstein Defendants are seeking to humiliate and embarrass Jane

9

Doe 43 by attaching confidential materials to a public filing, and for that their motion must be denied. And, again, the Court need not reach merits of this motion because the Court previously, and unambiguously, held that non-parties cannot disturb this Court's Protective Order.

## CONCLUSION

For all the foregoing reasons, the Court should deny the Proposed Intervenors' Motion for Leave to Intervene and to Modify the Protective Order.

Dated: October 19, 2017

                                          Respectfully Submitted,

                                          BOIES SCHILLER FLEXNER LLP

                       By:  /s/ Sigrid McCawley
                              Sigrid McCawley (Pro Hac Vice)
                              Meredith Schultz (Pro Hac Vice)
                              Boies Schiller Flexner LLP
                              401 E. Las Olas Blvd., Suite 1200
                              Ft. Lauderdale, FL 33301
                              (954) 356-0011

                              David Boies
                              Boies Schiller Flexner LLP
                              333 Main Street
                              Armonk, NY 10504

                              Bradley J. Edwards (Pro Hac Vice)
                              FARMER, JAFFE, WEISSING,
                              EDWARDS, FISTOS & LEHRMAN, P.L.
                              425 North Andrews Avenue, Suite 2
                              Fort Lauderdale, Florida 33301
                              (954) 524-2820

                              Paul G. Cassell (Pro Hac Vice)
                              S.J. Quinney College of Law
                              University of Utah
                              383 University St.
                              Salt Lake City, UT 84112

(801) 585-5202[2]

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 19th day of October, 2017, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served to all parties of record via transmission of the Electronic Court Filing System generated by CM/ECF.

    Michael C. Miller, Esq.
    Justin Y.K. Chu, Esq.
    STEPTOE & JOHNSON LLP
    1114 Avenue of the Americas
    New York, NY 10036
    Email: mmiller@steptoe.com
    Email: jchu@steptoe.com
    *Counsel for Jeffrey Epstein and Lesley Groff*

                                                   /s/ Sigrid McCawley
                                                     Sigrid McCawley

---

[2] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.