# United States District Court
# Southern District of New York

Virginia L. Giuffre,

       Plaintiff,               Case No.: 15-cv-07433-RWS

v.

Ghislaine Maxwell,

       Defendant.
_____/

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND TO DIRECT THE DEFENDANT TO DISCLOSE ALL INDIVIDUALS TO WHOM DEFENDANT HAS DISSIMINATED CONFIDENTIAL INFORMATION (DE 335)**

 

Sigrid McCawley (Pro Hac Vice)
Meredith Schultz (Pro Hac Vice)
BOIES, SCHILLER & FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

Plaintiff Virginia Giuffre, by and through her undersigned counsel, hereby files this Reply in Support of her Motion for Protective Order and Motion for the Court to Direct Defendant to Disclose All Individuals to whom Defendant has Disseminated Confidential Information (DE 335).

I.  **INTRODUCTION**

*"The nature of this case concerns highly personal and sensitive information from both parties. In this action, both parties have sought and will seek confidential information in the course of discovery from the other party and from non-party witnesses. Release of such confidential information outside of the litigation could expose the parties to 'annoyance, embarrassment, [and] oppression and result in significant injury to one or more of the parties' business or privacy interests."*

- Defendant, Ghislaine Maxwell, March 2, 2016[1]

Less than six months after representing to this Court that this case involves "highly personal and sensitive information" warranting a broad protective order, Defendant now wants to publicize police reports concerning Ms. Giuffre - most of them from when she was a child, some of them concerning her being raped when only 14 years. Defendant's challenge to Ms. Giuffre's confidentiality designation is without merit, and it is for improper purposes. Therefore, it should be denied.

Ms. Giuffre moved to maintain her confidentiality of highly sensitive documents. They are police reports involving Ms. Giuffre, including two police reports describing Ms. Giuffre as **_a fourteen-year-old victim of rape_**. Other police reports show her to be the victim of other crimes, including domestic violence. Defendant should not be allowed to make these police reports public, nor disseminate them to third parties. Defendant's Response brief is devoid of any argument to allow her to make these documents public, and completely devoid of any case law.

---

[1] DE 38 at 1.

1

Instead, Defendant mischaracterizes the police reports at issue.  For example, in her "Factual Background," what Defendant characterizes as a "simulated sex act" for which Ms. Giuffre "cried rape," actually is a police report as follows:

> "I then had [REDACTED] get off of [REDACTED].  I observed that [REDACTED] was very intoxicated, and she was unable to stand on her legs.  She was unable to crawl . . .Based on [REDACTED] intoxicated condition, a [sic] ambulance was called to transport her to [REDACTED] to check on her condition. I then met with [REDACTED] and his mother.  I advised [REDACTED] of his Miranda rights . . . Upon arrival, at the E.R., I met with [REDACTED] who stated that while enroute to the E.R. she was conducting a head to toe evaluation when the patient stated that she had to urinate.  [REDACTED] was assisting [REDACTED] remove her panties when she noticed grass and twig particles in the crotch area of [REDACTED] panties as well as a small amount of blood, an unknown clear substance, and a substance which appeared to be semen.  She also saw abrasions on [REDACTED] buttocks. "

*See* GM 00790-801.

To be clear, Defendant will be able to use this report in these proceedings – if she can prove it relevant and otherwise admissible.  Indeed, under the protective order, she is permitted to share it with witnesses.  Thus, the confidentiality designation made by Ms. Giuffre merely prevent Defendant from running to the press with these reports, which is, of course, what she seeks to do.[2]

As is in some of her other briefs, Defendant fails to cite a single case supporting her position. Nor does she respond in any way to the case law advanced by Ms. Giuffre in the instant motion. Instead, Defendant says that the police report documenting Ms. Giuffre's rape while a minor has her name redacted. Of course, such a redaction does Ms. Giuffre little good when Defendant and her cohorts distribute it to the press - the identity of the victim in the police report will presumably be supplied by Defendant.  Indeed, Defendant and/or her joint defense partners have already made it known to the media that this very police report concerns Ms. Giuffre, s*ee*

---

[2] This plan was admitted by her joint defense partner, Alan Dershowitz, in his baseless Motion to Intervene (DE 362).

2

Defendant's brief at p. 5, which is why Ms. Giuffre's counsel had to respond to the media inquiry about it in the first place. A redacted name does nothing to protect Ms. Giuffre's identity when Defendant is the one leaking the report to the press.

Since Ms. Giuffre filed her motion for a Protective Order, Defendant's joint defense partner, Alan Dershowitz, has also made distorted representations to the Court and asks, without standing, for this Court to strip away designations made under its order so that he, too, can take confidential litigation materials to the press.[3] As the adverse testimonial evidence piles up against Defendant,[4] it appears she and Dershowitz are planning another media blitz in an attempt to discredit and defame Ms. Giuffre.

The Court is aware that a mountain of testimonial evidence, from multiple witnesses, firmly establishes Defendant operated as convicted pedophile Jeffrey Epstein's procurer of underage girls. The Court is also aware that, as things stand today, all of this testimony is under

---

[3] *Id*. Ms. Giuffre will be filing an opposition to Dershowitz's motion to intervene shortly.

[4] *See* McCawley Decl. at Composite Exhibit 1, Figueroa June 24, 2016 Dep. Tr. Vol. 1 at 96-97 and 103 (Figueroa testified that Plaintiff told him about threesomes with Defendant and Epstein which included the use of strap-ons); and Vol. 2 at 200 (Figueroa testified that Defendant called him inquiring if he had found any other girls for Epstein); Johanna Sjoberg's May 18, 2016 Dep. Tr. at 8-9, 13, 33-35, 142-143(testifying that Defendant recruited her for sex with Epstein under the guise of answering phones, a job that lasted one day, because her second day Defendant asked her to start giving massages, and it soon made it clear that Sjoberg's purpose was to bring Epstein to orgasm so Defendant didn't have to all of the time); Rinaldo Rizzo's June 10, 2016 Dep. Tr. at 52-60 (Defendant's friend's house manager, through tears, described how Defendant tried to force a 15 year old Swedish girl to have sex with Epstein through threats and stealing her passport); Juan Alessi's June 1, 2016 Dep. Tr. at 28, 52-54 (Epstein's house manager, testified that Defendant was one of the people who procured the over 100 girls he witnessed visit Epstein, and that he had to clean Defendant's sex toys); Lynn Miller's May 24, 2016 Dep. Tr. at 115 (testified that Defendant became Ms. Giuffre's "new momma"); Detective Joseph Recarey's June 21, 2016 Dep. Tr. at 29-30 (the detective who led the investigation of Epstein, testified that Defendant procured underage girls for Epstein); David Rodgers' June 3, 2016 Dep. Tr. at 18, 34-36; *see also* Exhibit 2 Excerpted Rodgers Dep. Ex. 1 at flight #s 1433-1434, 1444-1446, 1464-1470, 1478-1480, 1490-1491, 1506, 1525-1526, 1528, 1570 and 1589 (Epstein's pilot testified that the passenger listed on his flight log bearing the initials – GM – was in fact Ghislaine Maxwell and Rodgers was the pilot on at least 23 of the flights in which Defendant flew with Plaintiff), etc.

3

this Court's Protective Order, and cannot be disclosed to the public. For instance, Ms. Sjoberg's testimony of how Defendant lured her from her school to have sex with Epstein under the guise of answering phones cannot be given to the media[5]. Similarly, Mr. Rizzo's testimony about how Defendant took the passport of a 15-year-old Swedish girl and threatened her when she refused to have sex with Epstein cannot be given to the media.[6] Likewise Mr. Alessi's testimony about how Defendant brought girls over for Epstein is also under a confidentiality order.[7] So too with Mr. Figueroa's testimony about how Defendant would call him to bring over underage girls and how Defendant and Epstein would have threesomes with Ms. Giuffre.[8] Defendant's own admission of how she and Epstein had threesomes with multiple different girls whose names she can't even remember[9] also has been designated as confidential.[10]

      Ms. Giuffre has never sought to challenge Defendant's sweeping confidentiality designations, which Defendant has freely employed to hide the voluminous incriminating evidence in this case.  Defendant, on the other hand, appears to operating from different premises.  Knowing that the documentary and testimonial evidence in this case are fatal to all her purported defenses, Defendant appears to be planning a preemptive and one-sided media strike to try to discredit Ms. Giuffre.[11] Indeed, a recent brief before this Court makes clear that Defendant

---

[5] *Id*.
[6] *Id*.
[7] *Id*.
[8] *Id*.
[9] *See* McCawley Dec. at Exhibit 3, Maxwell Dep. Tr. at 59:3-17 (July 22, 2016).
[10] Interestingly despite that admission, Defendant has the gall to publically call Ms. Giuffre, a longtime-married, mother of three, a "sexually permissive woman."
[11] Tellingly, nowhere in her brief does Defendant mention to the court why she wants to make these documents public.

is not acting alone in this effort, but is teaming up with Alan Dershowitz[12] to ask this Court to release additional documents (but, naturally, none of the condemning documents Defendant has marked confidential).

Part of Defendant's frantic attempt to discredit Ms. Giuffre is to publicly reveal that she was sexually assaulted as a 14 year old, yet announce to the world that she "cried rape,"[13] and to humiliate her family (including three minor children) by publicizing she was the victim of domestic abuse in 2015. As the Court saw during its *in camera* review, Defendant and Mr. Gow previously exchanged emails about how to leak information to the press to discredit Ms. Giuffre by saying that she "cried rape" when she was 14 (GM_00577):

```
From:        Ross Gow
Sent:        Tuesday, February 24, 2015 3:36 AM
To:          G Max; Philip Barden
Subject:     VR cried rape - prior case dismissed as prosecutors found her 'not credible'
```

Ghislaine

Some helpful leakage...

Defendant has been liberal with her own confidentiality designations. In fact, Defendant has even requested that significant parts of this Court's Orders be treated as "confidential." For example, when this Court issued its June 20, 2016, Order directing Defendant to turn over documents that she improperly claimed as "privileged," Defendant redacted the public version of the Order to erase all reference to her extensive communications with her boyfriend, convicted pedophile Jeffrey Epstein. While seeking to publicize confidential information about Ms. Giuffre, Defendant apparently does not want the world not know that she continues to maintain

---

[12] Defendant has even filed an Affidavit from Dershowitz's attorney which states that there is a common interest between them. Curiously, the name of Dershowitz's attorney, as is the name of Dershowitz himself, is redacted in the public version of these briefs. *See* (DE 387).

[13] As the Court saw during its *in camera* review, Defendant and Mr. Gow exchanged emails about how to discredit her by saying that she "cried rape" when she was 14.

5

her close relationship with Jeffrey Epstein and plotted with him to defame Ms. Giuffre. Defendant has also chosen to designate as confidential the fact that she has a DUI conviction,[14] so that her own criminal activity for which she has been convicted is not in the media.

## II. DISCUSSION

Ms. Giuffre has not challenged any of Defendant's self-serving confidentiality designations - designations that do not protect legitimate interests (such as trademark or copyright information) but rather conceal shameful aspects of Defendant's life, including all the testimony regarding the specifics on just how she recruited underage girls for sex with convicted pedophile Jeffrey Epstein But now Defendant challenges Ms. Giuffre's designation of a police report involving rape as confidential. The Court should not countenance the one-sided attempt at gamesmanship by Defendant (and Dershowitz), who use confidentiality designations as a shield to block release of information about Epstein's sex trafficking while attempting to strike down Ms. Giuffre designations about such things as being sexually assaulted while a child.

Given the extremity of the position she is staking out, it is unsurprising that Defendant's entire brief cites no case law, and presents no argument to refute Ms. Giuffre's case law. The material Defendant seeks to send to the press is exactly the type of information that Protective Orders are meant to protect, and this Court should deem these documents as confidential.

### A. The Court can Order that these Documents be Made Confidential Either Under the Existing Protective Order or Independent of the Protective Order

Ms. Giuffre explained in detail why her application to the Court is timely filed under the Protective Order [DE 62], and will not burden the Court with a recitation of such details and arguments. The simple fact remains that these materials should remain confidential, and

---

[14] *See* McCawley Dec. at Exhibit 4, Maxwell Dep. Tr. at 390:13-15 (April 22, 2016).

Defendant cannot articulate one legitimate purpose for making them public. Accordingly, they should remain confidential under the existing protective order.

In addition, even if the Court were to find, for some reason, that the motion is untimely under the Protective Order, or that these documents do not come within the ambit of the existing protective Order, this Court still clearly has the inherent power to determine that these documents are confidential and should be kept under seal. Rule 26(c) of the Federal Rules of Civil Procedure permits a district court to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of good cause. In her moving brief, Ms. Giuffre has established "good cause" for these documents to remain and/or be deemed confidential by the Court. Therefore, the Court should grant the instant motion independent of the language of the Protective Order (drafted by Defendant).

As this Court will remember, the Court twice allowed the parties to make suggested redactions to the public versions of its Orders (*see, e.g.,* DE 135). While the redactions were agreed upon by the parties, they were solely at Defendant's request. This is a case concerning sex abuse of minors, brought by a minor victim of sex abuse. If any civil case cries out for protective treatment, it is this one.

As the Defendant explained to this Court back in March of 2016, the materials in this case, and the materials at issue in the instant motion, are sensitive in nature, and therefore fall squarely into the categories of material over which courts routinely grant protection. *C.F. Strategic Growth Intern., Inc. v. Remote MDX, Inc.*, 2007 WL 3341522, at *3 (S.D.N.Y., Nov. 9, 2007) (Sweet, J.) ("To the extent that RMDX is concerned about the sensitive nature of the

7

redacted information, those concerns should be allayed by the September 13, 2007 Stipulated Protective Order").

In this case, unlike Maxwell who has refused to produce documents, Ms. Giuffre has produced a number of documents including turning over personal, embarrassing documents that bear no relation to the claim at issue in this case. Indeed, Defendant has procured other documents with the same issues, including those documenting her being raped as a 14 year old and being beaten by her husband, the father of her three minor children. These are the types of documents for which confidentiality treatment during pre-trial proceedings is appropriate.

**B.     Defendant's Challenge of these Materials (and her Joint Defense Partner's Challenge of Other Materials) Frustrate this Court's Ability to Resolve the Claim at Issue, and is a Waste of Judicial Economy**

Defendant and her joint defense partner, Dershowitz, for no apparent reason than their media smear campaign, are now tying-up this Court's docket, asking the Court to engage in a document-by-document determination of confidentiality of the discovery in this case. This is a waste of judicial resources, as it in no way furthers the resolution of the claim before this court. *Cf. In re Terrorist Attacks on September 11, 2001*, 454 F.Supp.2d 220, 223 (S.D.N.Y.2006) ("document-by-document confidentiality determinations . . . would impose an enormous burden upon the Court and severely hinder its progress toward resolution of pretrial matters").

Moreover, should Defendant and her joint defense partner prevail in these baseless efforts, Ms. Giuffre would be forced to apply to the Court to lift the confidentiality designations from parallel discovery materials in this case that refute what Defendant and her proxies say in the media (materials that are present in abundance in this case). None of this motion practice aids in the resolution of the claim before this Court, but would merely frustrate that resolution. Accordingly, the Court should grant Ms. Giuffre's motion.

8

**C.   Details Concerning Ms. Giuffre's Rape as a 14 Year Old Are Only in The Public Realm Because, Upon Information and Belief, Defendant and/or Her Joint Defense Partners Previously Fed Them to The Media**

Defendant incorporated into her Response brief the media inquiry about Ms. Giuffre's sexual assault and Sigrid McCawley's response made on Ms. Giuffre's behalf. This exchange illustrates exactly why Ms. Giuffre's motion should be granted. The Court has seen the email from Ross Gow, Defendant's public relations agent, informing her of the strategy of leaking the information to the press for the purpose of discrediting Ms. Giuffre by falsely claiming that she "cried rape" as a 14 year old.[15] Unsurprisingly, the media was then tipped off to Defendant's false and twisted version of the events, to which Ms. McCawley made a response. The Court has seen Defendant's play book in action. Significantly, there is not a single word in Defendant's brief refuting the fact that she challenges this confidentiality designation for improper purposes.

### III.   CONCLUSION

Ms. Giuffre was a child victim of sexual abuse, which is undisputed. Upon Defendant's own motion, this Court entered a Protective Order in this matter. Ms. Giuffre has shown good cause for confidentiality of the materials at issue. Therefore, the Court should hold that these materials are confidential. This Court should also direct Defendant to disclose all the individuals to whom she has already disseminated the material at issue, and direct the Defendant to recall such material forthwith.

DATED:  August 23, 2016.

                        Respectfully Submitted,

                        BOIES, SCHILLER & FLEXNER LLP

                        By: /s/ Meredith Schultz
                            Sigrid McCawley (Pro Hac Vice)

---

[15] *See* GM_00577, above.

Meredith Schultz (Pro Hac Vice)
Boies Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

David Boies
Boies Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Bradley J. Edwards (Pro Hac Vice)
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
 (954) 524-2820

Paul G. Cassell (Pro Hac Vice)
S.J. Quinney College of Law
University of Utah
383 University St.
Salt Lake City, UT 84112
(801) 585-5202[16]

---

[16] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on August 23, 2016, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served to all parties of record via transmission of the Electronic Court Filing System generated by CM/ECF.

    Laura A. Menninger, Esq.
    Jeffrey Pagliuca, Esq.
    HADDON, MORGAN & FOREMAN, P.C.
    150 East 10th Avenue
    Denver, Colorado 80203
    Tel: (303) 831-7364
    Fax: (303) 832-2628
    Email: lmenninger@hmflaw.com
           jpagliuca@hmflaw.com

                                          /s/ Meredith Schultz
                                              Meredith Schultz