BSF | BOIES SCHILLER FLEXNER

January 30, 2026

**VIA ECF**

The Honorable Loretta A. Preska
District Court Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re: *Giuffre v. Maxwell*,**
**Case No. 15-cv-7433-LAP**

Dear Judge Preska,

The Parties, Julie Brown, and the Miami Herald Company, jointly write in response to the Court's January 13, 2026 Order (Dkt. 1352) to submit their respective proposals for proceeding in light of the Second Circuit's recent opinion. *See Giuffre v. Maxwell*, 146 F.4th 165 (2d Cir. 2025) (hereinafter "2d Cir. Op.").

The documents impacted by the Second Circuit's decision fall into three categories: (i) documents filed in connection with undecided motions, as decided in the Court's December 16, 2019 (Dkt. 1016) and January 13, 2020 (Dkt. 1018) orders, *see* 2d Cir. Op. at 176–79; (ii) Virginia Giuffre's Florida Deposition (Dkt. 363-7), as decided in the Court's November 18, 2022, Order (Dkt. 1283), *see* 2d Cir. Op. at 179–80; and (iii) all briefs, exhibits, and other submissions provided by Objecting Does, which were submitted directly to the Court and never filed on the public docket, *see* 2d Cir. Op. at 180–82.

**1. Undecided Motions**[1]

**Plaintiff's Position**: Mindful of the Court's directive that "the parties' proposals should accord with the Unsealing Protocol previously issued by this Court, including with respect to identification and notification of any affected non-parties," Dkt. 1352 at 1, Plaintiff respectfully submits that the notice and objection procedures that this Court previously implemented for non-parties is no longer appropriate. Plaintiff respectfully requests that the Parties be permitted to review and publish the sealed materials subject to redactions to protect the names and personally identifiable information of victims only, which would greatly expedite the unsealing process.

In its initial 2019 opinion, the Second Circuit suggested in dicta that "[t]he District Court may also order the parties to identify and notify additional parties whose privacy interests would likely be

[1] Based on lessons learned from past rounds of unsealing, the Parties do not believe that the unsealing should occur in rounds or divided by motion and instead propose one round of briefing applicable to all documents in this category.



implicated by disclosure of these materials." *Brown v. Maxwell*, 929 F.3d 41, 54 (2d Cir. 2019). The notification and identification that the Second Circuit suggested in 2019 was never a requirement, however, and in the intervening years courts in this District have presided over numerous Epstein-related cases and handled sealing (and unsealing) motions without soliciting objections from third parties who were mentioned in the documents. *See, e.g.*, *Jane Doe v. JPMorgan Chase Bank, N.A.*, Case Number 1-22-cv-10018 (S.D.N.Y.); *Jane Doe v. Deutsche Bank*, Case Number 1-22-cv-10019 (S.D.N.Y.); *Allyson Ward v. Darren K. Indyke, et al.*, No. 24-CV-1204-AS (S.D.N.Y.). Instead, those courts allowed the *parties* to advocate for sealing and unsealing and resolved any disputes expeditiously. These courts have generally permitted redactions and sealing to protect the names and personally identifiable information of victims, which is what Plaintiff seeks here.

Much has changed since 2019 and the initial unsealing protocol. The Defendant in this case, Ghislaine Maxwell, was convicted after a public trial; classes of victims have litigated public lawsuits against Jeffrey Epstein and his co-conspirators (including against several of his financial institutions); and the public and its elected officials have made uncovering details about Epstein's sex-trafficking operation a top priority. Over the past two years, documents relevant to this case (including concerning many Does at issue here) have been released to the public as part of a bipartisan effort in Congress. Responding to the public's desire for transparency, the House Oversight Committee released tens of thousands of Epstein-related records from the U.S. Department of Justice ("DOJ") and the Epstein Estate in September and November of 2025.[2] On November 19, 2025, Congress passed the Epstein Files Transparency Act, requiring that the DOJ publicly release all unclassified records, documents, communications, and investigative materials that relate to the investigation and prosecution of Epstein, including materials that relate to Maxwell. In response, the DOJ released tens of thousands of records in December 2025 and is continuing to review and release documents.[3]

Accordingly, Plaintiff submits that the notification and objection procedure is unnecessary because, (i) under Plaintiff's proposal, victims would be fully protected by having their names and identifying information redacted, and (ii) there is no articulable value in allowing the often wealthy and powerful men who would be the "Objecting Does" a forum to deny their involvement with Epstein.[4] In the alternative, if the Court believes that a motion to modify the Protective Order

---

[2] *Oversight Committee Releases Epstein Records Provided by the Department of Justice* (Sept. 2, 2025), https://oversight.house.gov/release/oversight-committee-releases-epstein-records-provided-by-the-department-of-justice/; *Oversight Committee Releases Records Provided by the Epstein Estate, Chairman Comer Provides Statement* (Sept. 8, 2025), https://oversight.house.gov/release/oversight-committee-releases-records-provided-by-the-epstein-estate-chairman-comer-provides-statement/; *Oversight Committee Releases Additional Epstein Estate Documents* (Nov. 12, 2025), https://oversight.house.gov/release/oversight-committee-releases-additional-epstein-estate-documents/.

[3] *DOJ Disclosures*, https://www.justice.gov/epstein/doj-disclosures. Earlier today, the DOJ released an additional three million pages of Epstein-related records.

[4] Maxwell's counsel asserts that many John Does "relied" on the Protective Order (Dkt. 62) in this case and therefore require an opportunity to object. But most of the individuals appearing in the sealed materials neither produced documents nor provided testimony and therefore do not fall under the Protective Order's protections. Moreover, to the extent any John Doe "relied" on the Protective Order, that order made clear that "it may be modified by the Court at any time for good cause shown following notice to all *parties* and an opportunity for them to be heard." Dkt. 62 ¶



would be appropriate in light of the intervening change in law with the passage of the Epstein Files Transparency Act, Plaintiff can make said motion. The Court can also, of course, *sua sponte* order modification to the Protective Order to align with the language of the Epstein Files Transparency Act, which directs the complete release of the Epstein-related materials with only minimal redactions to protect victim identifying information and disallows withholding on the basis of embarrassment, reputational harm, or public sensitivity to government officials or public figures.[5]

Finally, Ms. Maxwell incorrectly argues that Ms. Giuffre's Estate has not been substituted for Ms. Giuffre. But Ian Torrington Blatchford, the Administrator of Ms. Giuffre's Estate, has been substituted for Ms. Giuffre in the Second Circuit prior to this case being remanded to this Court. *See* Order Granting Motion for Substitution, *Giuffre v. Maxwell*, 24-182 (2d Cir.), Dkt. 100. That order granted Mr. Blatchford's motion in its entirety, including Mr. Blatchford's retention of Boies Schiller Flexner as his Counsel. It also does not limit substitution to the Second Circuit case.

In any case, Ms. Maxwell's arguments about any conflict of interest between Counsel's interests and Ms. Giuffre's interests are unfounded. Ms. Giuffre has repeatedly confirmed that her interest was that all of the filings in the district court docket should be unsealed so that the public may have a complete picture of the abuse she suffered. (Dkt. 945). This was in large part because of her interest in being able to defend against the horrific public attacks that she has suffered at the hands of the same people who caused and enabled her abuse. In her own words, "In March 2018, I sat down for a video interview with [Julie] Brown. We'd meet more than once, but at the end of the first interview, I told her I was fighting not just for myself, but for every Epstein victim. 'I'm not going to stop' I said, 'until all these girls get justice.'"[6]

**Ms. Maxwell's Position**: As a threshold matter, Ms. Maxwell believes the parties need to brief, and this Court needs to decide, whether Ms. Giuffre's Estate—which has yet to be substituted in place of Ms. Giuffre, *see* Fed. R. Civ. P. 25—has a stake in this case sufficient to allow its continued participation in the remand proceedings. In the Second Circuit, Ian Torrington Blatchford, Administrator of Virginia L. Giuffre's Estate, was substituted as Plaintiff-Appellant for Ms. Giuffre. The Miami Herald also adopted all the arguments made in Ms. Giuffre's briefs. Thus, despite Ms. Giuffre's unfortunate passing, there continued to be adversity as to all the issues on appeal, allowing the Second Circuit to retain jurisdiction over all the parties' arguments.

On remand, however, the same might not be true. Whether, to what extent, and in what manner Ms. Giuffre's Estate has an interest in remand proceedings is unclear. Until that issue is resolved, Ms. Maxwell believes it would be inappropriate for this Court to permit counsel Boies Schiller to participate in the unsealing process. "A decedent's attorney is not a party to the action and, perforce

---

14 (emphasis added). Maxwell remains fully able to advocate for the continued sealing of any John Does she wishes to protect, and recent federal legislation concerning the unsealing of Epstein-related materials constitutes good cause to modify any provision of the Protective Order that either Maxwell or a John Doe may invoke to further delay the publication of documents the Second Circuit ordered unsealed over six years ago.

[5] *See* Epstein Files Transparency Act, H.R. 4405, 119th Cong. (2025), https://www.congress.gov/bill/119th-congress/house-bill/4405/text.

[6] VIRGINIA ROBERTS GIUFFRE, NOBODY'S GIRL: A MEMOIR OF SURVIVING ABUSE AND FIGHTING FOR JUSTICE (2025)



of the decedent's death, ceases to represent h[er]." *Morales v. CT Holdings, Inc.*, 2001 WL 1204011, at *1 (S.D.N.Y. Oct. 10, 2001). Thus, Boies Schiller is not a party to this case, nor is Ms. Giuffre anymore. And if her Estate is substituted, then counsel will have to enter on behalf of the Estate.

The issue is not simply a mere formality: It bears noting that Boies Schiller (serving here as "Plaintiff's Counsel") also represents numerous other accusers in numerous other litigations against Epstein and his Estate.[7] Ms. Giuffre's Estate may not stand to benefit from further disclosures about Ms. Giuffre, her past, her history, her family's history, her medical records, and so forth that may be contained in still-sealed documents. These records may also contain information about Ms. Giuffre's Estate's beneficiaries. Boies Schiller, on the other hand, appears to have a substantial financial interest in pursuing claims on behalf of its other clients against numerous other individuals and institutions related to Mr. Epstein's Estate. In this sense, Boies Schiller may be laboring under a real conflict of interest in participating in this unsealing process on behalf of Ms. Giuffre's Estate. Their position above -- to rush to release documents about other accused individuals -- notwithstanding their privacy rights, seems indicative of their ultimate interest in the outcome of this unsealing.

As to the unsealing process, this Court ordered the parties to comply with the previously entered unsealing protocol. Dkt. 1352 at 1. Ms. Maxwell agrees with that determination. The protocol was the product of significant work by the Court and the parties, and it was relied upon by numerous Does and Ms. Maxwell, all of whom have privacy interests at stake.

While much has changed since this Court completed the first remand, none of that justifies depriving every Doe of the chance to be heard. And none of that changes whether the undecided motions qualify as "judicial documents;" as the Second Circuit held, "a judicial document determination is properly made by evaluating the relevant materials *at the time of their filing with the court*." *Giuffre v. Maxwell*, 146 F.4th 165, 175 (2d Cir. 2025) (emphasis added).

Because neither Ms. Giuffre nor the Herald argued in the Second Circuit that this Court abused its discretion in establishing the protocol, this Court should adhere to the protocol under the mandate rule and as law of the case. *Cnty. of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997) ("Under [the law-of-the-case] doctrine, a decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case; the parties are deemed to have waived the right to challenge that decision, for it would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." (cleaned up)). If Ms. Giuffre's Estate or Plaintiff's Counsel believe the Epstein Files Transparency Act materially changes the

---

[7] *See, e.g., Jane Doe 3 v. Indyke*, 24-cv-01204-AS (S.D.N.Y) (currently pending); *Doe v. Bank of America*, 25-cv-08520-JSR (S.D.N.Y.) (currently pending); *Doe v. The Bank of New York Mellon Corp.,* 25-cv-08525-JSR (S.D.N.Y.) (currently pending); https://www.courthousenews.com/epstein-victim-accuses-bank-of-america-of-assisting-sex-trafficking-operation/ ; *see also* https://www.bsfllp.com/news-events/us-district-judge-grants-final-settlement-approval-for-jeffrey-epstein-survivors.html (publicizing the massive fee awards secured by Boies Schiller in other Epstein litigations).



landscape, that legal issue must be briefed by the parties and ruled on by the Court; it's not properly resolved via a joint status letter.[8]

At the very least, participating Does should be permitted to respond to the arguments that the protocol should be discarded entirely.

Finally, before Ms. Maxwell can take a position on the merits of any particular unsealing request, the parties and the Court need clarity on the universe of "undecided motions." The parties should first be tasked with compiling and submitting a list of those undecided motions to this Court. Ms. Maxwell does not oppose omnibus briefing on the undecided motions, once they have been properly identified.

In the end, as everyone agrees, all unsealing decisions are committed to this Court's sound discretion. *Giuffre v. Maxwell*, 146 F.4th 165, 175 (2d Cir. 2025); *Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019). But this Court must exercise that discretion in the first instance, and wholesale unsealing without any process—what Plaintiff's Counsel essentially proposes—is inappropriate. If that's what the Second Circuit had wanted, it could have ordered the immediate unsealing of the undecided motions, or it could have released those motions itself, as it did with the summary judgment material in the first appeal. *Brown*, 929 F.3d at 48 & n.22.

**Herald's Position**: Julie Brown and the Miami Herald (collectively, the "Herald") agrees with Plaintiff's position.

**2. Giuffre's Deposition (ECF No. 363-7)**

**Plaintiff's Position**: Document 363-7 is Plaintiff's deposition excerpt from a Florida state litigation that was attached by Alan Dershowitz to his motion to intervene in this case. The Court has reviewed this Document several times, and versions of it have been released with redactions twice since it was filed (Dkts. 1218-12, 1257-12). During the November 18, 2022, hearing, the Court noted that it had conducted a particularized review of this document and preliminarily ruled that only Does 28 and 97, could remain under seal, before holding that "any presumption of public access to this document is barely cognizable." *See* Nov. 18, 2022, Tr. at 9. As this document has already been fully briefed and considered, Plaintiff believes Document 363-7 is ripe for ruling pursuant to the Second Circuit's order without further procedure.[9]

**Ms. Maxwell's Position**: Subject to Ms. Maxwell's position about the continued participation of Boies Schiller, the use of the already adopted unsealing protocol, the rights of Does to notice and an opportunity to be heard, all outlined above, Ms. Maxwell suggests that the parties be allowed to file letter briefs addressing the request to unseal Document 363-7 in light of the Second Circuit's

[8] Just today, for example, the Government filed a Motion in this Court making clear the Government's view that the Epstein Files Transparency Act only applies to documents in its possession, not the possession of this Court or the parties. (Dkt. 1353, p 5 (noting that "documents . . not in the Government's possession . . . are . . . not subject the Act")).

[9] While the Court ruled on November 18, 2022, that Doe 107's name be unsealed in part because "the information contained in these excerpts is not particularly salacious," *id*. at 12–13, Plaintiff believes that her status as a victim of Jeffrey Epstein warrants sealing to the extent Dkt. 363-7 is published.



order. Although Document 363-7 was the subject of prior briefing, the parties have not had a chance to address whether it should be unsealed in light of the Second Circuit's most recent decision. Again, the parties and any relevant Does should have the chance to express their views before this Court exercises its discretion.

**Herald's Position**: The Herald agrees with Plaintiff's position.

**3. Does' Sealing Motions**

**Plaintiff's Position**: Plaintiff agrees with the position set forth by Brown and the Miami Herald.

**Ms. Maxwell's Position**: Subject to Ms. Maxwell's position about the continued participation of Boies Schiller, the use of the already adopted unsealing protocol, the rights of Does to notice and an opportunity to be heard, all outlined above, Ms. Maxwell takes no position on this category of documents.

**Herald's Position**: The Second Circuit held that the objecting Doe submissions previously submitted in this case are judicial documents, and therefore a presumption of public access applies to them. 2d Cir. Op. at 27. On remand, it directed this Court to complete the second and third steps of the analysis—determining the weight of the presumption and balancing it against any countervailing interests. 2d Cir. Op. at 27-28. The Second Circuit also instructed the Court to determine which Doe submissions, or portions of the submissions, may be unsealed.

With respect to the prior submissions from the objecting Does, the Herald submits that the Court should apply the same analysis to the Does' submissions that it applied to the documents it previously ruled on, having already determined whether each objecting Doe's privacy interests outweighed the presumption of public access. Accordingly, for each Doe whose name this Court previously ordered unsealed, the Herald respectfully submits that the corresponding Doe's submission should likewise be unsealed in full and placed on the docket. Conversely, for those Does whose privacy interests the Court found sufficient to overcome the presumption, the Herald requests that the Court apply targeted redactions to protect the specific privacy interests recognized in the Court's prior rulings and then place the redacted submissions on the docket.

As to any forthcoming Doe submissions, to the extent the Court receives submissions, the Herald submits that the Court should make a record on the public docket each time a submission is received. The Herald does not object to having objecting Does email their submissions directly to the Court if they do not have counsel. However, consistent with the Second Circuit's ruling, the Court should provide a redacted version of the submission on the docket or, at a minimum, a docket entry summarizing the submission consistent with the Doe summaries the Court provided in its November 18, 2022 and December 18, 2023 orders. *See* Dkt. 1284, 1315. Specifically, each notification should identify (1) the Doe identifier number; (2) how the Doe is connected to the case (e.g. victim, alleged perpetrator, witness, someone named in flight logs, or an individual whose association has been publicly reported, etc.); and (3) a brief description of the privacy interest asserted.



Sincerely,

*/s/ Sigrid S. McCawley*
Sigrid S. McCawley, Esq.

*/s/ Laura A. Menninger*
Laura A. Menninger, Esq.

*/s/ Cindy Gierhart*
Cindy Gierhart, Esq.