# EXHIBIT 3

1

Xj3q1gra                          SEALED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x

In re:  Grand Jury Proceedings

                                    *Ex Parte* Conference

--------------------------------x

                                    New York, N.Y.
                                    March 26, 2019
                                    4:04 p.m.

Before:

                    HON. COLLEEN McMAHON,

                                    District Judge

                        APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
BY:  ███████████████
     Assistant United States Attorney

EFTA00084766

2

Xj3q1gra                    SEALED

(In the robing room)

THE COURT:  The following proceeding is being conducted *ex parte* and under seal.

The problem is, it's not being conducted in a matter, and that is one of my first questions to Mr. ████████:  Why was this not filed on the Court's docket with a miscellaneous number?  We don't file things under U.S. Attorney numbers. This should have been brought as a miscellaneous matter.

MR. ████████:  So, your Honor, it was originally submitted with Judge Sweet --

THE COURT:  I understand what he did, but I will tell you that in the opinion that will never issue, because Judge Sweet died, but he had written, and now I'm stuck with this, Judge Sweet questioned why you had not made this an "In re: The Matter of Application of the Grand Jury" or something or other, with a proper miscellaneous docket number.  The fact that it would have gone to Judge Sweet doesn't mean anything.  I have no way to docket USAO No. 2018R01618.  That's your reference number, not ours.

MR. ████████:  I understand, your Honor.  I think we had understood that the submission should be made to the court that had entered the protective order and that --

THE COURT:  That's true, but that doesn't mean it doesn't get a miscellaneous docket number.

The first thing that's going to happen, this is going

SDNY_GM_00000854

EFTA00084767

3

Xj3q1gra                          SEALED

to be re-legended and it's going to get a miscellaneous docket number.

MR. ███████: Understood, your Honor. I apologize for that oversight.

THE COURT: It's okay.

All right. Now my second question, which is a procedural question, the government here has moved for relief on behalf of a third party to whom a grand jury subpoena has issued, and that third party would like to be relieved of its obligations under the protective order, and that third party is a law firm full of brilliant lawyers that are fully capable of making a motion bringing a proceeding to be relieved from the provisions of the protective order. Why are you doing this for them?

Why doesn't Boies Schiller make an application for permission to be relieved from the protective order? Because it thought it was going to violate some duty that it had to its client in the underlying actions? Did they give you a reason why they weren't willing to come to court and --

MR. ███████: No, your Honor. So I can't speak to why Boies Schiller in particular didn't make their own application.

THE COURT: Because I understand that you don't think that *Martindell* is applicable here, but I do, and now I'm the judge. I wish I weren't. You know that the Second Circuit has

SDNY_GM_00000855

EFTA00084768

4

Xj3q1gra                    SEALED

very clearly said that, and Judge Broderick said in *Chemical Bank* the proper procedure is for somebody to make a motion to be relieved from the terms of the protective order.  And it ain't you; it's somebody who's subject to the protective order.

MR. ████████:  I think a little bit of context may help explain how the procedure developed, your Honor.

Originally we had submitted an All Writs Act application to Judge Sweet, which we believe was appropriate given the sort of catch-all function of that --

THE COURT:  Yes, I understand that, but it still has to have a docket number in order to be a proceeding in this court.

MR. ████████:  Totally understand, your Honor.  But just with respect to our supplemental submission, Judge Sweet had reached out to us and asked us to submit an argument in connection with our application, and so I think whether that was sort of past experience or his preference, that is why we proceeded --

THE COURT:  So here's why I'm being so persnickety.  Forgive me.  Not only do I have to like come up to speed pretty quickly, but you know -- I assume you know, but I certainly know, and everybody who follows civil litigation knows -- that Judge Sweet is about to get reversed in connection with this protective order in the Second Circuit.  I mean, I don't have

SDNY_GM_00000856

EFTA00084769

5

Xj3q1gra                              SEALED

that on any authority other than my reading of the tea leaves after the extensive press reporting and the fact that the Second Circuit has already issued an order giving the parties until last week to say why the summary judgment papers and all the supporting papers should not be unsealed by the Second Circuit and indicating that there would be a further order with respect to all the rest of the, I don't know, 150 or so sealed documents in connection with the underlying litigation, but you can hear it in the questioning, you can read it in the press reports, you can intuit it from the order.  I don't know if you've seen the Second Circuit's order that issued last week, but --

MR. ████████:  I have, your Honor.

THE COURT:  Okay.  You can intuit that something kind of unfavorable to Judge Sweet is happening, it's in the process of happening, it seems to me it's about to be happening, in connection with this protective order and its enforceability. Doesn't seem that way to you, Mr. ████████?

MR. ████████:  Your Honor, I've read the same articles and --

THE COURT:  I mean, really, Mr. ████████?

MR. ████████:  So I would say, your Honor, that I would expect that any order to disclose materials that were filed in connection with, for example, the summary judgment papers, if in fact they are released or if in fact the

EFTA00084770

6

Xj3q1gra                      SEALED

protective order is overturned in some way, that those would be redacted as to individuals' names, personally identifying information --

THE COURT:  Probably.

MR. ████████:  -- which I would expect, your Honor. I don't believe that any indication is that the underlying discovery materials are likely to be unsealed, and I'm not sure whether that's at issue, but in any event --

THE COURT:  I don't think it is.  I think the only thing that's at issue in the case that the Second Circuit has heard is the publicly -- only here, not publicly -- filed litigation documents, which is essentially a lawsuit, a libel action that has been filed and litigated under seal.  It was settled by terms that would have expired because the protective order doesn't extend until it goes on to a trial, but there wasn't a trial.

And I'm struggling with this for two reasons.

First of all, it's like how much deference to give to this protective order that was issued by some judge, not myself, on the basis of I don't know what, except that from the questions that the Second Circuit asked about the litigation documents, it seemed like they were being critical of Judge Sweet for not having a particularized inquiry into each document that was sought to be filed in accordance with the protective order as to why this contained confidential

EFTA00084771

Xj3q1gra                          SEALED

information and what was confidential about this, and just reading the tea leaves, I'm thinking to myself, what am I supposed to do with this protective order that looks like it stands on precarious footing to begin with? Is this the so-called improvidently granted protective order? How could I know that? I'm trying to go back in the files to see what Judge Sweet relied on in granting the protective order. I have no idea if there was an opinion. I have no idea if there was -- I mean, he recited the magic words at the beginning of the protective order. But, you know, he was doing this for five years, and he's dead, and I can't ask him. And his law clerks weren't around when he did it, although they're trying to help me find stuff in the files. So I'm just trying to figure out if there's something that's going to happen in the Second Circuit that would help you out here or that would further your investigation in a way that would make it not necessary to deal with it.

MR. ██████████: Your Honor, I'm very sympathetic to that consideration. I think that even were the Second Circuit to unseal the entirety of what I believe is at issue, which is, as the Court noted, as the Court just noted --

THE COURT: 150 litigation documents, and I don't think the Second Circuit is going to take the time that would be required to make the inquiry. I'm going to guess that, you know, some poor schlub in the district court is going to have

EFTA00084772

Xj3qlgra                    SEALED

to do that.  And I hope it's not me.  But --

MR. ███████:  And I believe it will apply to the docketed filings in the case and not, for example, the underlying discovery materials, deposition materials, investigation materials.

THE COURT:  Okay.

MR. ███████:  And so I think that, unfortunately, for the circumstances, for perhaps all of us, that even were the Second Circuit to grant sort of the most expansive invalidation of the protective order or sort of release of these materials, that our application would still be relevant and pending and active.

THE COURT:  Would still be relevant and pending and active.  Okay.

And you can't explain to me why Boies Schiller didn't make a motion.  Because there's no question in my mind that were this to be disclosed to the parties -- and I appreciate that we're not going to do that, but were this to be disclosed to the parties, Maxwell would protest, and the first thing that Maxwell would do would be to say the government lacks standing, it's not a party of the protective order, the issue can be litigated, if Boies Schiller chooses to make a motion to seek to be relieved from the protective order, or to quash the subpoena or to do something, but the government has no standing.  It hasn't moved to intervene in the civil action.

Xj3q1gra                    SEALED

It hasn't done any of those things. So under *Martindell*, the government lacks standing, because remember, in *Martindell*, the government only had standing because all the parties were familiar with the government's application. It wasn't a secret. I don't know why it wasn't a secret, but it wasn't a secret. And nobody objected. And so they said, ah, okay, objection to standing waived.

So, you know, once again, Judge Sweet, I can tell you, was somewhat troubled by the procedural posture of the case even though, as I understand it, he was perhaps partly to blame for the procedural posture of the case, but it's not like Boies Schiller came in here and asked for relief from the protective order. And I am curious about why Boies Schiller didn't do that.

MR. ████████: Your Honor, what I can tell you about that is we, the government, thought that we were in a position to make the application via the All Writs Act submission that we originally made, that that would be an appropriate vehicle for the relief that we, as the government, were seeking in connection with the protective order. So I'm not sure --

THE COURT: You're seeking to have a third party, to have Boies Schiller, who were counsel for the plaintiffs in the Maxwell action, be relieved from the protective order, but if there's anybody on this planet who is capable of asking, "Please relieve us from the strictures of this protective

SDNY_GM_00000861

EFTA00084774

10

Xj3q1gra                              SEALED

order," it is David Boies and his partners.  I mean, really.

          MR. ██████████:  I'm sure you're right, your Honor,

and --

          THE COURT:  They don't need the government's

protection.

          MR. ██████████:  Not that I don't begrudge the dozens

of hours that I have spent on it in lieu of Boies Schiller, but

I think -- and with apologies of perhaps being persnickety

myself, but the relief that we are seeking is not precisely to

allow Boies Schiller to do something but rather for the

modification of the protective order that would then allow

that, but we did think that we were able to make the

application via the All Writs Act, and I think it was our

general understanding from Judge Sweet's response asking us for

support for our submission, rather than, for example, denying

it based on lack of standing at the outset or simply asking us

to have Boies Schiller make the application.  I don't know

what, if any, difference there would be in terms of the legal

analysis from Boies Schiller, but I can say that I think the

current posture does allow the government to explain why the

investigation is extraordinary in the sense of how other

decisions and courts have described it and where we, the

government, are better able to explain --

          THE COURT:  But what do you mean by what you just

said?  I mean, you have an investigation into an allegation of

EFTA00084775

11

Xj3q1gra                         SEALED

human trafficking.  I have no idea if you're up against a statute of limitations so that I could take the time that really is needed to kind of grapple with the procedural issues, because you haven't told me that you're up against a statute of limitations.

MR. ████████:  I can tell your Honor -- I'm sorry. I didn't mean to interrupt.  But I can tell you that, as most of our investigations do, this is moving sort of as fast as possible.  This was a significant application that we thoroughly considered before making and made originally nearly two months ago, so we are hopeful to get an answer soon. Nevertheless, let me say that --

THE COURT:  Unfortunately, but for the dead judge opinion and the Supreme Court last month, you would have gotten an answer, but --

MR. ████████:  That said, I would not describe this as an emergency application.  There's not a particular day by which we are requesting a response.  We had hoped to hear back from Judge Sweet --

THE COURT:  Before.

MR. ████████:  Before.  Yes, your Honor.

THE COURT:  Would that that had happened.

MR. ████████:  And if I may, just very briefly.  I think with respect to the postural question, particularly regarding Boies Schiller, Boies Schiller simply isn't in a

SDNY_GM_00000863

EFTA00084776

Xj3q1gra                    SEALED

position to be able to describe the investigation in the way that we have in our submission.

THE COURT: Well, that's clear. That's clear. I mean, were I Boies Schiller, I would have -- never mind. We won't say what I would have done.

So I'm looking at the protective order itself, and of course not having been privy to any of the materials in the case -- and they're all under seal, so, I mean, I can dissolve the seal and get them, but there are 150 documents there that are under seal for filings, there are multiple documents that are under seal.

MR. ████████: Not to mention all the underlying materials, of course.

THE COURT: Not to mention all the underlying materials.

So you argue there isn't any truly confidential material in this, this isn't a trade secrets case, and obviously it's not a trade secrets case. It's a libel case. It would seem that the most scurrilous of accusations would have already floated across the face of the complaint. But since Maxwell can't object, how can I know that all this is about is information that would be, you know, embarrassing?

MR. ████████: I would point the Court in the first instance to the definition of "confidential materials" in the protective order itself, which describes "confidential

SDNY_GM_00000864

EFTA00084777

13

Xj3q1gra                    SEALED

materials" as "information that is confidential and implicates common law and statutory privacy interests of plaintiff ██████████."

THE COURT:  I have absolutely no idea what that means, and you don't either, and none of us does.

MR. ████████:  I don't, your Honor, but I think we argued in our submission that it, at least on its face, does not implicate the type of materials that are confidential business materials, trade secrets --

THE COURT:  Ordinarily the subject of --

MR. ████████:  -- ordinarily the subject of the considerations developed in some of the cases that we cited.

THE COURT:  Okay.

MR. ████████:  And I should also say that in responding to the subpoena, Boies Schiller has the ability to say that they will not produce certain materials because they are privileged, because they believe that there is some larger overarching confidentiality issue, at which point we would be in a different posture.  I am not aware that they have identified any materials as confidential that they would withhold, but I do note that we would not ask for and would not expect to receive privileged materials.

THE COURT:  Okay.  Did you provide Judge Sweet with a proposed order?

MR. ████████:  We did, yes, your Honor.

SDNY_GM_00000865

EFTA00084778

14

Xj3q1gra                           SEALED

THE COURT: Could I see what you provided Judge Sweet.

MR. ██████████: Yes, of course.

And your Honor, just for the record, I'm handing over what was our initial sealed affirmation and application to the Court for an order under the All Writs Act, and that includes an affirmation and application that I signed with an exhibit attached of the original protective order, followed by which is a proposed order for entry by Judge Sweet, which we of course would be happy to submit to the Court in Word form or in revised form, subject to the Court's views.

THE COURT: Right. I just wanted to see if it had a certain provision.

MR. ██████████: If there is a provision that the Court thinks would address some of these issues, we would of course be happy to hear it.

THE COURT: Of course I'm not Judge Sweet, so I don't know exactly what was going on in his head.

I assume it would be the government's position that reliance on the nondisclosure of confidential materials to law enforcement in connection with a grand jury subpoena that has been duly authorized would be unreasonable. It wouldn't be reasonable reliance to assume that the protective order could never be modified to allow -- I mean, the parties to this negotiated the protective order, and the protective order does not contain the provision that is in every protective order I

SDNY_GM_00000866

EFTA00084779

15

Xj3q1gra                    SEALED

sign, which is, you can disclose it without the permission of the Court if, you know, law enforcement puts a gun to your head and says produce it. That's not in here.

MR. ███████: That's right, your Honor.

THE COURT: I don't know. It's my understanding that it may have been negotiated out.

MR. ███████: It may have been. I will only say that I believe that -- I'm on less firm ground than in the cases that we discussed specifically, but I believe that the converse would be void for public policy; in other words, you would not be able to put in --

THE COURT: That was my question.

MR. ███████: -- you may not disclose this to law enforcement even given a duly authorized grand jury subpoena.

THE COURT: Thank you for saying the words "void for public policy," because I was going there. I take it it would be the government's position that because it would be void as against public policy to absolutely prohibit the disclosure of information to law enforcement, that if a party were to say, "But I relied on this, that it would not be disclosed to law enforcement," that that would not, in your view, be reasonable reliance.

MR. ███████: Yes, your Honor, I think that's correct, and I think that that is borne out by the opinion in *Chemical Bank*, which essentially says: You should have asked,

EFTA00084780

Xj3q1gra                    SEALED

but of course this is fine for you to disclose this information to the government based on the validly issued grand jury subpoena, I think for the same type of reasons that the Court is describing.

THE COURT:  Okay.  So let me see what other million questions that I have.

It's a general subpoena.  Did you take them for all discovery materials?  I mean, everything that's in Boies Schiller's files, other than privileged documents, which of course you don't exclude from your subpoena but presumably they will exclude from their production.  But it's literally everything.  So remember, I know very little about the Maxwell case, both because it wasn't my case and, to the shock of nearly everyone that I talk to, we're all too busy to worry about some litigation that's being handled by somebody else; and second, it seems to have been litigated entirely under seal so how could I have found out anything about it.  Everything I know about this case I learned from reading about the Second Circuit argument.  Literally, everything.

So what assurance do I have that so broad a grand jury subpoena -- given that I have these competing interests between the terms of the protective order and the government's interest in conducting an investigation, what assurance do I have that you need all that stuff, that that's all somehow going to be relevant to your investigation?  That is a concern from me

Xj3q1gra                    SEALED

because I don't know anything about the case.

MR. ████████:  Okay, your Honor, and I think the answer to that is in a couple parts.  The first is, I would point the Court towards some of the opinions that have talked about the government's investigative ability and authority being broad, and it is the case that sometimes we issue grand jury subpoenas --

THE COURT:  But that was true in *Martindell* too.

MR. ████████:  Yes, of course, your Honor, but I just need to say that it is entirely possible that, in any grand jury subpoena, that materials will come back that are not helpful to our investigation, are not relevant, for whatever reason, that it was, however unintentionally, overbroad or included unnecessary aspects.  Here, we are essentially unable to significantly narrow the request for information in part for exactly the reasons that you describe.  We have either little or no additional information than the Court does in terms of what materials there are, who was deposed, and that is in marked contrast to some of the other cases.

THE COURT:  Every other case in the whole world.

MR. ████████:  Of course, your Honor.  Exactly.  For exactly the reasons we described.

So what I can say in terms of assurance is, we are not sort of an ordinary third-party intervenor.  All of these materials will be subject to the extraordinary protections of

18

Xj3q1gra                         SEALED

Rule 60. We will be extremely restricted in our use of them. To the extent that we receive materials that otherwise wouldn't have been narrowly connected with our investigation, they will not go anywhere that they shouldn't; they will not be treated in any way they should not be.

THE COURT: Let me ask a question that you may not wish to answer, and I'll appreciate it if you don't.

I know who the target of your investigation is, at least the one that you've identified. Is there any expectation that these materials would be used to commence criminal proceedings against either of the parties to the libel case?

MR. █████: I can say that just as a general matter, that any materials that we gather in any part of any investigation that appear to give rise to criminal liability for individuals implicated in those materials could cause us to proceed with an investigation of any such individual. That's a little broad, your Honor, obviously, but --

THE COURT: Oh, no. I understand what you're saying. And I think Judge Sweet had some concerns about that.

MR. █████: But I don't think that there's any additional protection for the parties of the lawsuit as opposed to nonparties' information.

THE COURT: They're the ones who relied on the protective order. Of course you say it's not reasonable to rely, but they're the ones who relied on the protective order

EFTA00084783

19

Xj3q1gra                    SEALED

in order to give whatever in discovery they gave, whether it was deposition testimony they gave or -- then again, I can't fathom why anybody who has any criminal exposure would not have taken the Fifth Amendment in response to questions in a civil deposition, but I don't know.

MR. ███████: So just taking that very briefly in order, your Honor, I do not know, but I think it is entirely possible that what we are seeking is page after page of people taking the Fifth. That is entirely possible. But to the extent that it is not or there are other materials -- and this may be bad for our argument, but in all transparency and candor, I think there may be other individuals who also relied on the protective order. In other words, anyone other than the parties who were deposed may have, in theory, and perhaps unreasonably, relied on it.

THE COURT: For example, the target of your investigation.

MR. ███████: For example, the target of our investigation. But I don't think that the parties would be differently situated in terms of their rights, and there are certainly many cases that talk about how the government has the ability to grant immunity in a criminal investigation, but not, of course, through restricting materials --

THE COURT: But that's the whole point of the government needing to follow the procedure, the proper

EFTA00084784

Xj3q1gra                    SEALED

procedure of either having the target of the subpoena make a motion to quash or a motion for relief or the government moving for relief to intervene, instead of engaging in self-help. There isn't an application like this in any case except the *Chemical Bank* case, and in the *Chemical Bank* case, it all was ex post facto and it all happened.

MR. █████: Right. And I'll just note, without wanting to be defensive at all about the posture -- I understand the Court's questions about that -- I cannot recall whether it was *Martindell* or one of the other cases, but one of the original cases in this line, one of the issues was that the court had gotten on the phone with the judge and requested it, you know, sort of informally, right?

THE COURT: Yes.

MR. █████: Despite our errors in the precise procedure, we did want to have a formal application with reasons and then subsequently, at the request of Judge Sweet, supporting law. And so I do apologize for the precise posture. We took the approach that we did in the hopes that we could avoid the types of problems that had been engendered by other types of applications which I think were made by the government in other cases, and so that's what we did here as well.

THE COURT: Okay. All right. Well, I'll tell you one thing that I am going to do. I am going to ask the clerk of the court to assign a miscellaneous number to this case and

EFTA00084785

21

Xj3q1gra                    SEALED

everything will be filed under seal, and it will be "In Re Grand Jury," you know, the usual, and it will have the treatment that "In Re Grand Jury" materials get, and everything will be filed under seal.  But that way I at least have a place to put this, okay?

MR. ███████:  I appreciate that, your Honor.  I think we had expected that had the order been either granted or denied, that consistent with our usual All Writs application, that it would have then been identified with a number, but frankly, I'm not in the clerk's office, so --

THE COURT:  Okay.  But it has to have one, and I'm particularly acutely desirous of making sure that this is filed under a docket number with this court because I am concerned about the way everything has happened to date, given the Second Circuit's kind of, it seems to me, obvious displeasure with the fact that this whole thing has been litigated under seal.  So grand jury material, absolutely.  But let's be sure that there is a docket, you know, that we don't have something that's off the radar screen.

MR. ███████:  Totally understood, your Honor, and I appreciate that, and we're grateful to the Court for that.

THE COURT:  Great.  Okay.  And you'll get your answer by early next week.  I have to go to the annual meeting of the chief district judges.

MR. ███████:  I don't envy the Court that.

EFTA00084786

22

Xj3q1gra                          SEALED

THE COURT:  It would be fine, but my biggest problem, frankly, is I don't know when Judge Sweet's funeral is and I'm trying to figure out when I need to be here for Judge Sweet's funeral.

MR. ██████████:  We're very grateful --

THE COURT:  This goes to the top of the pile.  I appreciate that this should have been dealt with sooner, and I'm sorry that it wasn't dealt with a week sooner or you would have had an answer.

MR. ██████████:  We're grateful for the Court's attention and certainly appreciate the opportunity to explain how we ended up here.

THE COURT:  Okay.  Thank you.

MR. ██████████:  Thank you, your Honor.

THE COURT:  I appreciate it, Mr. ██████████.

oOo

EFTA00084787