UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Virginia L. Giuffre,

                              Plaintiff,          15-CV-07433 (LAP)

-against-

Ghislaine Maxwell,                                OPINION AND ORDER

                              Defendant.

---

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court are the Government's Motion for Disclosure, (Dkt. 1353), and nonparty George W. Poncy, Jr.'s Motion to Intervene, (Dkt. 1358.)  For the following reasons, the Government's Motion for Disclosure is GRANTED, and Mr. Poncy's Motion to Intervene is DENIED WITHOUT PREJUDICE.

## I.   BACKGROUND

The complete history of this litigation has been set out at length in the Court's prior opinions and those of the Court of Appeals.  Thus, the Court recounts only those aspects of the case's history necessary to resolve the instant motions.

### A.   The Protective Order and Settlement

On March 18, 2016, the late Judge Sweet issued a protective order (the "Protective Order") barring Plaintiff Virginia Giuffre, Defendant Ghislaine Maxwell, and their attorneys from sharing

confidential discovery information produced as part of this case with any third party, including the Government.  (Dkt. 62; see also Dkt. 1353 at 1; Dkt. 1360 at 2.)  The Protective Order allowed the parties' attorneys, by designating a document as confidential, to represent that the document's contents implicated one or both of the parties' privacy interests and thus keep the document under seal unless the opposing party objected.  (See id.)  The parties were thereafter permitted to file dozens of documents and motions largely or entirely under seal.  (See Dkt. 936 at 9-10.)

Paragraph 12 of the Protective Order provided that, at the conclusion of the case, all confidential documents and copies thereof were either to be returned to the party that designated it confidential or destroyed.  (Dkt. 62.)  However, Paragraph 14 of the Protective Order also provided that the "Protective Order may be modified by the Court at any time for good cause shown following notice to all parties and an opportunity for them to be heard." (Id.)

While subject to the Protective Order, Maxwell was deposed in April and July of 2016.  (Dkt. 1360 at 5-6.)  Plaintiff and Maxwell subsequently settled on confidential terms in May of 2017.  Giuffre v. Maxwell, 325 F. Supp. 3d 428, 436 (S.D.N.Y. 2018), vacated and remanded sub nom. Brown v. Maxwell, 929 F.3d 41 (2d Cir. 2019). All documents subject to the Protective Order remained under seal following the settlement.

**B.    The Government's Investigation and Subsequent Disclosure Obligations**

**1.    The Government's Subpoena and Original Modification of the Protective Order**

In late 2018, after this litigation was settled, the United States Attorney's Office for this District began investigating Jeffrey Epstein for the unlawful trafficking of minors, among other crimes. In re Grand Jury Subpoena, No. 19-MC-149 (CM) ("In re Grand Jury Subpoena"), Dkt. 14 at 5 (S.D.N.Y. Mar. 29, 2021). As part of its investigation, the Government issued a grand jury subpoena ("the Subpoena") to Ms. Giuffre's attorneys at Boies Schiller Flexner LLP ("Boies Schiller") requiring Boies Schiller to produce discovery materials from this matter. Id. Boies Schiller informed the Government that it would not contest compliance with the Subpoena but was bound by the provision of the operative Protective Order prohibiting disclosure to third parties. In re Grand Jury Subpoena, Dkt. 11 at 3.

Seeking to relieve Boies Schiller from the Protective Order and facilitate its compliance with the Subpoena, the Government made an ex parte, in camera application to Judge Sweet under the All Writs Act, 28 U.S.C. § 1651(a), asking Judge Sweet to modify the Protective Order to allow Boies Schiller to comply with the Subpoena. In re Grand Jury Subpoena, Dkt. 14 at 5-6. Judge

3

McMahon[1] subsequently granted the Government's application, modifying the Protective Order to permit Boies Schiller to comply with the Subpoena. Id. at 26. Boies Schiller then provided the subpoenaed materials ("the Materials") to the Government pursuant to the Subpoena. (Dkt. 1353 at 2.)

### 2. The Government's Instant Motion and Maxwell's Opposition

The Government now moves the Court to unseal any remaining portions of the Materials still under seal in this matter so it may comply with the Epstein Files Transparency Act, Pub. L. 119-38, 139 Stat. 656 (Nov. 19, 2025) (the "Act"). (Dkt. 1353 at 1.) The Act requires the Government "to 'make publicly available . . . all unclassified records, documents, communications, and investigative materials in the possession of the Department of Justice, including the Federal Bureau of Investigation and United States Attorneys' Offices' that relate to nine topics, including 'Jeffrey Epstein' and 'Ghislaine Maxwell.'" (Id. at 2 (citation omitted).) Pursuant to the Act, the Government asks that the Court issue the following order:

> Notwithstanding any other order or action of this Court, including this Court permitting the parties to file certain documents under seal, the Government may produce any and all documents that it received from Boies Schiller & Flexner LLP, in response to a grand jury subpoena and pursuant to the April 9, 2019, order issued

---

[1] Following Judge Sweet's death, the application was referred to Judge McMahon.

4

in In re Grand Jury Subpoena, No. 19-MC-149 (CM) (S.D.N.Y.), in accordance with the Government's obligations under the Epstein Files Transparency Act, Pub. L. 119-38, 139 Stat. 656 (Nov. 19, 2025) (the "Act"), and subject to the Government's withholding and/or redaction obligations under Section 2(c) of the Act.

(Id. at 5.)

Maxwell opposes the Government's motion. In doing so, Maxwell has hurled a smorgasbord of procedural, statutory, and constitutional arguments at the Court in the hope that one might stick. Notwithstanding that Maxwell has "filled the proverbial kitchen sink with arguments," the Court need not address each one "because the basic question and the dispositive legal principles do not require descent into those waters—or into that sink, to mix metaphors." Peterson v. Islamic Republic of Iran, 2013 WL 1155576, at *29 (S.D.N.Y. Mar. 13, 2013) (Forrest, J.).

Broadly speaking, however, Maxwell offers seven cognizable arguments. First, Maxwell argues that the Government has no right to ask the Court to modify the Protective Order and unseal documents because the Government is a nonparty and has not moved to intervene. (Dkt. 1360 at 11-12.) Second, Maxwell argues that the Act does not override grand jury secrecy as enshrined in Federal Rule of Criminal Procedure 6(e). (Id. at 12.) Third, Maxwell argues the Act is unconstitutional because it violates the Constitution's separation of powers by: (1) requiring federal courts to reopen final judgments; (2) prescribing rules of decision

5

to the judiciary; and (3) vesting in officials of the Executive Branch the power to review decisions of Article III courts. (Id. at 15.) Fourth, Maxwell argues the Act violates due process as applied to this case. (Id. at 21.) Fifth, Maxwell argues the Court should deny the Government's Motion under the law-of-the-case doctrine and the mandate rule. (Id. at 22.) Sixth, Maxwell argues the Court should deny the Motion because the ex parte proceeding in In re Grand Jury Subpoena denied Maxwell due process. (Id. at 23.) Finally, Maxwell argues for denial because unsealing is improper under Second Circuit precedent governing the unsealing of documents. (Id. at 25.)

## C.    Nonparty Intervention

### 1.    The Miami Herald's Motion to Intervene and Unseal

On April 6, 2018, the Miami Herald ("the Herald") filed a Motion to Intervene and Unseal, seeking an order unsealing all documents filed under seal or redacted in this action. (Dkt. 935.) The Herald sought to intervene "[a]s a representative of the public interest in the transparency of our courts," (Dkt. 936 at 11), arguing that "the law affords the presumption of openness" of judicial proceedings and documents more weight than the parties' privacy interests in the sensitive material at issue, (id.). Judge Sweet granted the Herald's motion to intervene, (Dkt. 953 at 15), but initially denied the Herald's motion to unseal, (id. at 41.) After zealous litigation by the Herald and other intervenors,

6

however, the Court of Appeals vacated this denial, ordered the unsealing of the summary judgment record in this matter, and remanded the case to the Court for further particularized review of the remaining files held under seal pursuant to the Protective Order.  Brown v. Maxwell, 929 F.3d 41, 54 (2d Cir. 2019) ("Maxwell I").

### 2.   Subsequent Unsealing Proceedings and Mr. Poncy's Motion to Intervene

Following the 2019 remand by the Court of Appeals—but prior to the enactment of the Act—the Court, in consultation with the parties and the Herald, reviewed many volumes of sealed documents for release into the public record.  Giuffre v. Maxwell, 146 F.4th 165, 172 (2d Cir. 2025) ("Maxwell II").  On December 18, 2023, the Court issued a final unsealing order concluding that the majority of the relevant materials should be unsealed in full, save for the names and identifying information of specific victims and other individuals whose privacy interests, at least in the pre-Act landscape, outweighed the presumption of public access.  (Dkt. 1315.)  The Court of Appeals affirmed these unsealing decisions in some respects and vacated others, after which the Court of Appeals remanded the case to this Court for further individualized review as to the vacated orders.  Maxwell II at 182–83.  On remand, the Herald and Ms. Giuffre's estate have continued to advocate for the unsealing of any remaining documents over Maxwell's objections. (See Dkt. 1354 at 1, 6.)

Notwithstanding the <u>Herald's</u> well-documented advocacy, on February 12, 2026, George W. Poncy, Jr., a Florida resident and member of the public, moved the Court to intervene in this matter "for the limited purpose of seeking enforcement of the Court's unsealing orders and the public's right of access to judicial documents." (Dkt. 1358 at 1.)

## II.   THE GOVERNMENT'S MOTION FOR DISCLOSURE

### A.   The Court Has Discretion to Modify the Protective Order

As noted above, Maxwell has lodged a veritable kitchen sink of objections to the Government's request to publish the sealed materials in compliance with the Act.  The Court finds that all of Maxwell's objections are meritless and that, in light of the Act, any remaining materials in the Government's possession should become part of the public record, subject to any victim-protecting redactions authorized by the Act.

#### 1.   The Government's Motion Is Properly Before the Court

As a threshold matter, Maxwell objects that the Government's disclosure motion is improper because the Government has not moved to intervene.  Maxwell's procedural objection is entirely without merit.[2]

---

[2] Maxwell has separately argued that Plaintiff Virginia Giuffre's estate has not been substituted properly for Plaintiff, who is now deceased.  See FED. R. CIV. P. 25.  Maxwell does not dispute, however, that Giuffre's estate was substituted by the Court of Appeals during the prior appeal.  (cont'd)

Although the Government is not a party to this case and has not moved for permissive intervention, it may nevertheless seek a modification of the Protective Order and related unsealing of documents.  Normally, the proper procedure for a nonparty to seek modification of a protective order in a private suit is permissive intervention under Rule 24(b).  (Dkt. 1161 at 4); see also In re Grand Jury Subpoena, Dkt. 14 at 6-7 (noting that the standard procedure for the Government to seek its original modification of the Protective Order might have included seeking permissive intervention).  However, even where the Government declines to intervene formally in a private litigation, "procedurally puzzling applications by the Government to unseal materials," such as this one, may still be granted in this Circuit.  In re Grand Jury Subpoena, Dkt. 14 at 8.  For example, in United States v. Davis, the Court of Appeals held that a federal bankruptcy court's

---

(cont'd) See Giuffre v. Maxwell, No. 24-182, Dkt. 101.1 (2d Cir. Dec. 19, 2025).  Plaintiff's counsel notes that at least one other court in this District has impliedly adopted on remand a substitution order made by the Court of Appeals.  See Castorina v. Kijakazi, No. 19-CV-991, Dkt. 44 (S.D.N.Y. Aug. 23, 2023).  Independently, the Court has located no precedent to suggest that a party must invoke the Rule 25 substitution process on remand after a party has been duly substituted by the Court of Appeals.  Accordingly, the Court concludes that Giuffre's estate has been properly substituted and rejects Maxwell's arguments to the contrary.  The Court also invites Plaintiff's counsel to submit a proposed order formally amending the case caption of these proceedings.

modification of a sealing order in a private suit pursuant to a motion by the Government was not an abuse of discretion.  702 F.2d 418, 423 (2d Cir. 1983).  On the contrary, the Davis court held that under such circumstances, "[a] Court may direct access to [sealed materials] upon a proper showing of need" and that failure to do so may itself constitute an abuse of discretion.  Id.

Here, the Government easily demonstrates its need for modification.  The Government's motion makes clear that it requests the unsealing "to permit the Government to comply with its obligations under [the Act]."  (Dkt. 1353 at 5.)  A statutory mandate such as that prescribed by the Act certainly provides no less "need" than the Government asserted in Davis to procure sealed materials as part of a grand jury investigation.  Accordingly, the Court may consider (and grant, as it may be) the Government's Motion notwithstanding the fact that the Government has not formally intervened.

### 2.    The Epstein Files Transparency Act Overrides Rule 6(e) and Grand Jury Secrecy

Maxwell also argues that, to the extent the Government seeks to publish materials gathered pursuant to a grand jury subpoena, Federal Rule of Criminal Procedure 6(e) prohibits such disclosure. Maxwell is correct that, insofar as the Act requires publication of materials gathered pursuant to a grand jury subpoena, the Act and Rule 6(e) would appear to conflict.  However, two courts in this District have already concluded that the Act overrides Rule

10

6(e).  See United States v. Epstein, No. 19-CR-490 (RMB), Dkt. 92 at 3 (S.D.N.Y. Dec. 10, 2025); United States v. Maxwell, 811 F. Supp. 3d 667, 678 (S.D.N.Y. 2025).  For several reasons, the Court agrees with its counterparts.

Rule 6(e)(2)(B) bars disclosure of "a matter occurring before the grand jury" by those involved in grand jury proceedings.  FED. R. CRIM. P. 6(e)(2)(B).  In doing so, Rule 6(e) codifies centuries of English common law grand jury practices.  See Mark Kadish, Behind the Locked Door of an American Grand Jury: Its History, Its Secrecy, and Its Process, 24 FLA. ST. U. L. REV. 1, 12-14, 23-25 (1996).  "Indeed, the same rationales articulated by the English grand jurors in 1681 remain the basis for grand jury secrecy today: secrecy ensures candor from witnesses, encourages those hesitant to come forward, deters improper influence or tampering, and protects the reputations of innocents from public exposure should the grand jury exonerate them."  United States v. García, No. 25-CR-370 (LAP), 2026 WL 2111868, at *1 (S.D.N.Y. July 22, 2026) (citing Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979)).  Accordingly, materials gathered pursuant to grand jury subpoenas always receive a presumption of secrecy and closure. Id.

On the other hand, grand jury secrecy is not absolute.  Rule 6(e) already authorizes grand jury disclosures in limited circumstances, and "Congress . . . has the power to modify the

11

rule of secrecy" through legislation.    Illinois v. Abbott &
Assocs., Inc., 460 U.S. 557, 572 (1983).  Of course, "the rule [of
secrecy] is so important, and so deeply-rooted in our traditions,
that we will not infer that Congress has exercised such a power
without affirmatively expressing its intent to do so."    Id.
Nonetheless, the Court finds that Congress has done so here.

To begin with, the Act plainly applies to the Materials in
DOJ's possession.  The Act requires disclosure of "all unclassified
records, documents, communications and investigative materials in
the possession of [DOJ] . . . that relate to . . . Maxwell."  Act
§ 2(a)(2).  There is simply no world in which such "strikingly
broad" language could not apply to the grand jury materials in
DOJ's possession, Maxwell, 811 F. Supp. 3d at 676, and the Court
will not engage in the linguistic gymnastics that Maxwell invites
to conclude otherwise.  "[W]hen [a] statute's language is plain,"
as it is here, "the sole function of the courts—at least where the
disposition required by the text is not absurd—is to enforce it
according to its terms."  Lamie v. United States Trustee, 540 U.S.
526, 534 (2004) (collecting cases).  Because the Materials the
Government now seeks to unseal are "documents" and "investigative
materials" that relate to Maxwell, see Act § 2(a), they are plainly
captured by the Act.

The Act's recency and specificity also indicate that the Act
must supersede any contrary rule of grand jury secrecy.  "As a

12

general rule, 'later statutes receive precedence over earlier statutes and specific statutes receive precedence over more general statutes.'" Maxwell, 811 F. Supp. 3d at 677 (quoting United States v. Mohammed, 27 F.3d 815, 820 (2d Cir. 1994)). Both canons apply with force here. The Act focuses specifically on the disclosure of evidence surrounding Epstein and Maxwell, while Rule 6(e) generally provides for secrecy in grand jury proceedings. See Maxwell, 811 F. Supp. 3d at 677. The Act was passed only in November of 2025; Rule 6(e) dates to the 1940s, with its most consequential amendment in 1977. See id. In sum, the Act's plain text alone is sufficient to conclude that the Act overcomes Rule 6(e).

Even if the Court were to delve further, other elements of the Act confirm that Congress made a considered judgment to override grand jury secrecy. Notably, § 2(b)(1)'s provision that "[n]o record shall be withheld, delayed, or redacted on the basis of embarrassment, reputational harm, or political sensitivity" evinces Congress's intent to override grand jury secrecy by effectively discarding its core purpose: protecting "unindicted individuals from the anxiety, embarrassment and public castigation that may result from disclosure." In re Am. Hist. Ass'n, 62 F. Supp. 2d 1100, 1103 (S.D.N.Y. 1999); see also Maxwell, 811 F. Supp. 3d at 677. In other words, while the Act does not explicitly mention grand jury secrecy, it expressly disavows the fundamental

13

rationale underpinning the practice,[3] thus reinforcing that the Act should override Rule 6(e).

Accordingly, the Court joins its counterparts in concluding that Rule 6(e) does not bar the Government from making the Materials public.

### 3.    The Act Does Not Violate the Constitution's Separation of Powers

Maxwell separately argues that the Act violates the Constitution's separation of powers in three ways:[4] (1) it demands that courts reopen final judgments; (2) it prescribes rules of decision; and (3) it vests in the Executive Branch the authority to review the decisions of Article III courts.  The Court rejects each of these constitutional arguments in turn.

---

[3] Indeed, as Judge Engelmayer observed, the Act's legislative history independently suggests Congress was aware that the Act could abrogate Rule 6(e)'s secrecy protections. See Maxwell, 811 F. Supp. 3d at 676 n.8.

[4] Citing the canon of constitutional avoidance, Maxwell also urges the Court to decline to decide the constitutional issue by denying the Government's Motion on the basis that the Act does not explicitly refer to this lawsuit or grand jury materials. (Dkt. 1360.)  That argument borders on frivolous.  As the Court has explained, the Act clearly applies to the Materials and even mentions Maxwell by name.  Act § 2(a)(2); see also Maxwell, 811 F. Supp. 3d at 676 ("Congress undeniably was aware . . . that the prosecution of Maxwell entailed grand jury materials.").

14

### a.    The Act Does Not Reopen a Final Judgment

Maxwell's argument that the Act violates separation of powers by requiring the Court to reopen a final judgment falls short for three reasons: there has not been a "final judgment" as to modifying the Protective Order, the Act does not command the Court to do anything, and the relevant standard does not apply in this case.

As a general rule, Congress cannot retroactively "command[] the federal courts to reopen final judgments." Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 219 (1995).  However, the Court of Appeals has since clarified that Plaut more precisely stands for the proposition that "under the separation of powers, Congress lacks the authority to alter a finally rendered judgment ordering the payment of money." Benjamin v. Jacobson, 172 F.3d 144, 161 (2d Cir. 1999) (emphasis added); see also Miller v. French, 530 U.S. 327, 347 (2000) (echoing the Benjamin Court's analysis and explaining that "Plaut and [Pennsylvania v. Wheeling & Belmont Bridge Co., 59 U.S. 421, 432 (1855)] instruct [that] when Congress changes the law underlying a judgment awarding prospective relief, that relief is no longer enforceable to the extent it is inconsistent with the new law").  To that end, when a court's final judgment consists of an injunction or other prospective relief, "Congress may require alteration or termination of its future effect if the law on which the injunction

15

was predicated has been changed." Benjamin, 172 F.3d at 161; see also Miller, 530 U.S. at 347. Courts thus have the authority to modify injunctions and other prospective relief in response to changes in the relevant underlying law, including orders entered on consent of the parties. Benjamin, 172 F.3d at 161–62.

As a threshold matter, the Court is perplexed by Maxwell's suggestion that there is any such "final judgment" to undo. Paragraph 14 of the Protective Order clearly provides that the "Protective Order may be modified by the Court at any time for good cause shown." (Dkt. 62 (emphasis added).) Far from constituting a final judgment, the Protective Order's language expressly empowers the Court to modify the Protective Order as circumstances evolve.

The Court also rejects Maxwell's argument that the Act "commands" the Court to do anything. Instead, through the Motion, the Government merely requests that the Court exercise its discretion to modify the Protective Order to permit the Government to comply with its obligations under the Act. (Dkt. 1353 at 5.) Accordingly, the Court rejects the suggestion that the Government's motion implicates any separation of powers limitations related to final judgments.

Even if the Act were somehow binding on this Court, which it is not, Plaut would still not apply because the order requested by the Government to comply with the Act involves adjusting a

16

protective order (a form of prospective relief) so the Government is no longer barred from making the Materials public.  See Rio Tinto PLC v. Vale S.A., 2016 WL 900652, at *1 (S.D.N.Y. Mar. 9, 2016), ("[A] protective order, like any ongoing injunction, is always subject to the inherent power of the district court to relax or terminate the order, even after judgment.") (quoting Gambale v. Deutsche Bank AG, 377 F.3d 133, 141 (2d Cir. 2004)).  This requested order is plainly different from the action improperly demanded of the trial court in Plaut: reopening time-barred suits for damages that were previously dismissed with prejudice.  See Plaut, 514 U.S. at 214–15.

Accordingly, the Act does not require the Court to reopen a final judgment and thus does not violate separation of powers.

### b.   The Act Does Not Prescribe Rules of Decision

Maxwell's argument that the Act prescribes rules of decision to the Court is equally unavailing.  Noting that Congress may not "prescribe rules of decision to the Judicial Department," United States v. Klein, 80 U.S. 128, 146 (1871), Maxwell argues that § 2(b)(1) of the Act, which requires that "[n]o record shall be withheld, delayed, or redacted on the basis of embarrassment, reputational harm, or political sensitivity," prescribes a rule which conflicts with the Court's "supervisory function" through which it exercises discretion to "protect the integrity of the

17

judicial process." (Dkt. 1360 at 19 (citing Maxwell I, 929 F.3d at 51–52).)

The Act prescribes no such rule to the Court. Instead, the Act makes demands only of the Executive Branch. See Act § 2(a) (commanding "the Attorney General [to] make publicly available" the relevant documents subject to permitted withholdings). Because the Act's commands are directed solely at the Attorney General, it does not violate the separation of powers by prescribing a rule of decision in a pending litigation.

### c. The Act Does Not Vest the Power to Review Decisions in Executive Officers

Nor does the Act violate the separation of powers by "vest[ing] review of the decisions of Article III courts in officials of the Executive Branch." Plaut, 514 U.S. at 218. Contrary to Maxwell's suggestions, the Act does not obviate or abrogate the Court's discretionary authority to seal and unseal documents. The decision as to whether documents are unsealed and how they are to be redacted remains within the Court's discretion.[5] The Act's provisions governing redaction of the materials apply

---

[5] Another court in this District, when addressing a similar motion by the Government, expressly exercised this discretion by including a provision in its modification demanding particular attention be paid to victims' interests in redaction. See Maxwell, 811 F. Supp. 3d at 679–81.

only to the Attorney General and only after the Court has allowed the Government to make the Materials public.

### 4.    The Act Does Not Violate Due Process

Maxwell also argues that the Act violates her due process rights by depriving her of a right vested in her by the Court's sealing decisions not at issue on remand.  (See Dkt. 1360 at 21–22.)  "The 'vested rights' doctrine [recognizes] 'that rights fixed by judgment are, in essence, a form of property over which legislatures have no greater power than any other [property].'"  Axel Johnson Inc. v. Arthur Andersen & Co., 6 F.3d 78, 83 (2d Cir. 1993) (citation omitted).

Maxwell concedes that this argument "is analogous to the separation-of-powers rule that Congress may not mandate the reopening of final judgments."  (Dkt. 1360 at 21.)  The Court has already explained why the Government's current request does not seek to reopen a "final judgment" but instead seeks to modify a protective order which, by its own terms, may be adjusted with the passage of time.  At no point did Maxwell ever acquire a vested right to total and perpetual secrecy of the materials generated by this litigation.  Accordingly, the Act does not deprive Maxwell of any vested rights and does not violate due process.

5.   **Neither the Law-of-the-Case Doctrine nor the Mandate Rule Prevent the Court from Exercising Discretion to Modify the Protective Order**

Maxwell also claims that the Materials cannot be unsealed under the law-of-the-case doctrine and the mandate rule.  (Dkt. 1360 at 22.)  That argument is baseless.

"[L]aw of the case is an amorphous concept."  Arizona v. California, 460 U.S. 605, 618 (1983).  "As most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  Id.  However, "the law-of-the-case doctrine 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.'"  Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) (quoting Messinger v. Anderson, 225 U.S. 436, 444 (1912)).  Indeed, "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance," though it should generally only do so in extraordinary circumstances.  Id.

Similar to the law-of-the-case doctrine, "[t]he mandate rule 'compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court.'"  United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001) (emphasis in original) (citation omitted).  "To determine whether an issue remains open for

20

reconsideration on remand, the trial court should look to both the specific dictates of the remand order as well as the broader 'spirit of the mandate.'" <u>Id.</u> at 95 (citation omitted).

Neither doctrine forecloses the Government's request here. The Government does not raise a new argument in favor of public access that was either previously rejected by the Court or the Court of Appeals. Rather, the Motion addresses an entirely distinct issue—modification of the Protective Order—in light of a new statute that did not exist when this Court or the Court of Appeals issued prior decisions in this case. Accordingly, the Court concludes that neither the law-of-the-case doctrine nor the mandate rule prohibits modification of the Protective Order.

### 6. The Government's Prior <u>Ex Parte</u> Application Did Not Violate Maxwell's Due Process Rights

Maxwell independently asks the Court to deny the Motion because, according to Maxwell, the original <u>ex parte</u> application before Judge McMahon violated Maxwell's due process rights and was thus unlawful. (Dkt. 1360 at 23.) The Court is skeptical that, even if true, this would provide any basis to deny the Government's motion. But the Court also disagrees on the merits.

The All Writs Act provides that courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). That extends to modifications of protective orders, which are governed in this Circuit by <u>Martindell v. International</u>

21

Telephone and Telegraph Corp., 594 F.2d 291 (2d Cir. 1979), and its progeny.  Martindell provides that, once a party reasonably relies upon a protective order, it should be entitled to rely on that protective order "absent a showing of improvidence in the grant of [the] protective order or some extraordinary circumstance or compelling need."  Id. at 296.  When faced with a Martindell application, "due process does not categorically bar an ex parte modification to a protective order."  United States v. Maxwell, 545 F. Supp. 3d 72, 86 (S.D.N.Y. 2021).  The Government's ex parte application was no doubt proper under the Court of Appeals' precedent allowing procedurally unusual applications for access to sealed materials upon a showing of need.  See In re Grand Jury Subpoena, Dkt. 14 at 8-9 (collecting cases).  Judge McMahon found, after thoroughly scrutinizing the Government's application, that the Government had "persuasively demonstrated extraordinary circumstances," id. at 22, entitling it to an ex parte modification.

Maxwell also suggests that the ex parte proceeding violated due process in part because the Government misrepresented the facts before Judge McMahon, and Judge McMahon might otherwise not have found Maxwell's reliance on the Protective Order unreasonable. (Dkt. 1360 at 24.)  Putting aside whether Maxwell's theory has any basis in reality, Judge McMahon's finding of extraordinary circumstances means that the modification of the Protective Order

22

would have been properly granted regardless of whether Maxwell's reliance was reasonable.  See Maxwell, 545 F. Supp. 3d at 85 (discussing much of the same issue raised by Maxwell in the context of suppressing subpoenaed evidence in a criminal proceeding). Accordingly, the Court rejects the notion that the original modification violated Maxwell's due process rights.

**B.    The Court Exercises Its Discretion to Modify the Protective Order**

Having concluded that Maxwell's objections do not bar the Court from exercising its discretion to modify the Protective Order, the Court next determines whether modification of the Protective Order is appropriate.

On this issue, Maxwell deploys yet another legal smokescreen, arguing that multiple different standards governing unsealing and modification must govern the Court's exercise of its discretion. The Court rejects Maxwell's efforts to confuse the issue and concludes that, for the reasons discussed below, only one of these standards—that expressed in Martindell—applies to the Government's request.  After applying that well-settled Martindell standard, the Court concludes that modification of the Protective Order to permit disclosure is plainly appropriate and overwhelmingly serves the public interest.

### 1. The Court of Appeals' Three-Step Unsealing Inquiry Does Not Apply to the Government's Motion

Seeking to heighten the Government's burden, Maxwell insists that the three-step inquiry governing the public right of access to judicial documents applies to the Government's motion. The Court disagrees.

The law specifically "governing public access to [judicial] materials is largely settled" in this Circuit. Maxwell I, 929 F.3d at 47 (emphasis added). Beginning in United States v. Amodeo, 44 F.3d 141 (2d Cir. 1995) ("Amodeo I"), the Court of Appeals has held that there is a presumption in favor of public access to "judicial documents." Id. at 145. When a movant argues that documents should be unsealed because the presumption of public access outweighs relevant privacy interests, the analysis proceeds as follows:

> First, the court determines whether the record at issue is a 'judicial document'—a document to which the presumption of public access attaches." Second, "if the record sought is determined to be a judicial document, the court proceeds to determine the weight of the presumption of access to that document." Third, "the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access.

Stafford v. Int'l Bus. Machines Corp., 78 F.4th 62, 69–70 (2d Cir. 2023) (cleaned up). However, the Court of Appeals has made clear that Amodeo I left Martindell and its rule governing motions by the Government for modification of a protective order

24

"undisturbed."   S.E.C. v. TheStreet.Com, 273 F.3d 222, 231 (2d Cir. 2001) ("TSC").

Amodeo's associated three-step public access inquiry has generally been applied only in cases where movants, typically from the news media, seek to vindicate the public right of access to sealed documents.   See, e.g., Amodeo I, 44 F.3d at 144 (news reporter); TSC, 273 F.3d at 226-27 (online news publication); Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 114, 119-20 (2d Cir. 2006) (multiple newspapers); Mirlis v. Greer, 952 F.3d 51, 57 (2d Cir. 2020) (blogger).   But when a movant seeks to unseal documents or modify a protective order to vindicate its own interests rather than that of public access generally, courts in this circuit have applied Martindell without fail.   See, e.g., United States v. Davis, 702 F.2d 418, 420-22 (2d Cir. 1983) (considering a government motion to unseal/modify a protective order to produce sealed bankruptcy materials for a grand jury investigation under the Martindell standard); In re Grand Jury Subpoena Duces Tecum Dated Apr. 19, 1991, 945 F.2d 1221, 1223 (2d Cir. 1991) (applying Martindell to motion to quash subpoena based on protective order); Iridium India Telecom Ltd. v. Motorola, Inc., 165 F. App'x 878, 880 (2d Cir. 2005) (considering private movant's motion to unseal under Martindell because movant's interest was not that of public access to judicial documents).

25

Here, the Government does not seek unsealing and modification of the Protective Order to vindicate a general public right of access. Instead, the Government seeks modification to vindicate a specific interest in complying with its obligations under the Act. (Dkt. 1353 at 5.)

In the absence of any Court of Appeals precedent to the contrary, the Court concludes that the three-step inquiry outlined in Stafford does not apply and that Martindell alone governs the Court's discretion.

## 2.   Modification of the Protective Order is Appropriate Under the Martindell Factors

Having determined that the Stafford standard does not apply to the Government's motion, the Court instead turns to the discretionary factors under the traditional Martindell test.

Generally, "[w]hether to lift or modify a protective order is a decision committed to the sound discretion of the trial court." In re Agent Orange Prod. Liab. Litig., 821 F.2d 139, 147 (2d Cir. 1987). However, once a party has reasonably relied on the confidentiality provided by a protective order, a court should not modify the order unless the Government can show (1) "improvidence in the grant" of the protective order, (2) extraordinary circumstances warranting modification, or (3) compelling need for a modification. Martindell, 594 F.2d at 296. A court may also consider the movant's purpose in seeking a modification when determining whether to grant the requested modification. In re

Ethylene Propylene Diene Monomer Antitrust Litig., 255 F.R.D. 308, 318 (D. Conn. 2009).

The Court has previously held that Maxwell's reliance on the Protective Order was reasonable.  (See Dkt. 1071 at 11-12; Dkt. 1113 at 5.)  Further, the Court can identify no evidence that Judge Sweet's original granting of the Protective Order was in any way "improvident."  See In re Grand Jury Subpoena, Dkt. 14 at 15. Modification of the Protective Order is thus appropriate only in the face of extraordinary circumstances or compelling need.

The Martindell court "provided no guidance as to . . . what circumstances might be deemed sufficiently 'extraordinary' or 'compelling' to require modification."  United States v. Talco Contractors, Inc., 153 F.R.D. 501, 511 (W.D.N.Y. 1994).  Instead, much of the relevant caselaw in the Court of Appeals delineates what is not extraordinary circumstances or compelling need rather than what is.  See Minpeco S.A. v. Conticommodity Servs., Inc., 832 F.2d 739, 743 (2d Cir. 1987) (holding that agency's desire to compare the fruits of investigation to civil discovery was not a "compelling need"); Nosik v. Singe, 40 F.3d 592, 595 (2d Cir. 1994) (holding that possible unavailability of certain evidence or testimony at trial was not an extraordinary circumstance or compelling need).  The extraordinary circumstances and compelling need analyses are thus necessarily highly fact-bound and case-specific.

27

Notwithstanding the paucity of case law on this issue, the Court finds that the Government satisfies both criteria.  The Act reflects Congress's considered judgment that the materials gathered through the Government's investigation of Maxwell and Epstein's criminal conduct are of such extraordinary public importance that almost all other privacy interests, including those enshrined in our centuries-old tradition of grand jury secrecy, must fall to the wayside.  By requiring the Attorney General to make the Materials public, the Act has no doubt created a "compelling need" for modification of the Protective Order— without which the Government will be unable to comply with its statutory obligations and vindicate the public interest that Congress believes the statute will further.

The Court is also faced with an additional "extraordinary circumstance" here in that the Act has already led to broad disclosures of materials relating to Epstein and Maxwell.  In this highly unusual situation, where a haystack of once-secret materials has already become part of the public domain, Maxwell can claim little to no privacy interest in the needles at issue here.  Instead, a new interest arises for both the Government and the public that militates towards disclosure: if relevant documents are withheld, the public will be left with an incomplete and potentially misleading picture of Maxwell and Epstein's

criminal activities, which would risk undermining the public trust Congress sought to promote through the Act.

In sum, the Court finds that the Government's "compelling need" for modification spurred by its disclosure mandate under the Act, together with "extraordinary circumstances" created by the Act and the disclosures that have followed, amply satisfy Martindell's stringent requirements. Accordingly, modification of the Protective Order is more than appropriate, and the Court will modify the Protective Order as proposed by the Government.[6]

### III. MR. PONCY'S MOTION TO INTERVENE

The Court next turns to Mr. Poncy's Motion to Intervene. As set forth below, the Court concludes that Mr. Poncy has not satisfied all the requirements to intervene as of right because his interest in this matter is already adequately represented. Further, the Court declines to exercise its discretion to allow Mr. Poncy to intervene permissively.

---

[6] The Court is deeply sympathetic to the privacy interests of victims, which the Act seeks to protect through appropriate redactions. For that reason, the Court previously warned those victims who may have cognizable privacy interests to contact the Government and request redactions authorized by the Act. As several months have now passed, any such parties have had ample time to contact DOJ and prepare appropriate redactions. The Court has full faith that the United States Attorney for this District will ensure that any affected records are diligently reviewed and redacted for sensitive victim information.

**A.    Intervention As of Right Would Be Improper Because the Herald Already Adequately Represents the Movant's Stated Interest**

For Mr. Poncy to intervene as of right, he must establish that (1) his intervention is timely, (2) he has an interest in the action, (3) disposition of the action without him might as a practical matter impair that interest, and (4) the interest is not adequately represented by the existing parties. U. S. Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978); FED. R. CIV. P. 24(a)(2).

Mr. Poncy's motion is certainly timely. And as a member of the public, Mr. Poncy undoubtedly has an interest in the public's right of access to judicial documents, including those subject to the Court's present unsealing proceedings. Lugosch, 435 F.3d at 119. As Mr. Poncy notes, it is for this very reason the Court allowed the Herald to intervene in this matter back in 2018. (See Dkt. 1359 at 3; Dkt. 953 at 15 (allowing the Herald to intervene to vindicate its interest in the public right of access to judicial documents).)

Here, however, the Herald more than adequately represents this public interest in this matter. "An applicant for intervention as of right has the burden of showing that representation may be inadequate, although the burden 'should be treated as minimal.'" Brennan, 579 F.2d at 191 (quoting Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972)). "The

30

applicant must at least overcome the presumption of adequate representation that arises when it has the same ultimate objective as a party to the existing suit." Id.

Mr. Poncy describes his interest in this matter as aimed at vindicating the "First Amendment right of access to judicial documents" and "enforcement of this Court's unsealing order" to prevent "the erosion of the public's access rights." (Dkt. 1359 at 3.) This is precisely the interest the Herald originally sought to protect by intervening and continues to protect to this day. See generally Maxwell II; (Dkt. 1354 (arguing for an expedited and expansive unsealing of the remaining documents).) Thus, Mr. Poncy need not fear that "[t]he existing parties have no incentive to challenge the current redactions." (Dkt. 1359 at 3.) Indeed, the Herald is not the only party seeking to maximize disclosure—Ms. Giuffre and her estate have "consistently taken the position that if anything is going to be unsealed in this matter . . . all filings must be unsealed." (Dkt. 945 at 2; see Dkt. 1354 at 3.)

Because the Herald continues to represent the public's interest zealously in access to judicial documents and Ms. Giuffre's estate also supports the most expansive disclosure possible, Mr. Poncy's stated interest in this matter is already adequately represented. Accordingly, Mr. Poncy has no right to intervene under Rule 24(a)(2).

31

### B.    Permissive Intervention is Unwarranted

The Court also declines to exercise its discretion to allow Mr. Poncy to intervene permissively.

The Court may, but need not, permit a movant to intervene who "has a claim or defense that shares with the main action a common question of law or fact."   FED. R. CIV. P. 24(b)(1)(B).   In exercising its discretion over permissive intervention, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  FED. R. CIV. P. 24(b)(3).  In addition, courts may also consider factors such as: (1) whether the applicant will benefit by intervention; (2) the nature and extent of the intervenor's interests; (3) whether the intervenor's interests are adequately represented by other parties; and (4) whether the intervenor "will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."  Brennan, 579 F.2d at 191–92 (citing Spangler v. Pasadena City Bd. of Educ., 552 F.2d 1326, 1329 (9th Cir. 1977)).

These factors weigh against intervention.  To begin with, intervention by Mr. Poncy would unduly delay adjudication of the matter presently before the Court.  Mr. Poncy moves to intervene so he may request that the Court "conduct an in camera review of redacted documents to verify compliance" with the Court's

32

unsealing order.  (Dkt. 1359 at 1-2.)  Given the vast extent of the documents unsealed in this matter, such review would be remarkably time-consuming and add to the panoply of other motions briefed by the parties, the Government, and the Herald.

The remaining factors all also counsel against permitting intervention.  Mr. Poncy's stated interest is wholly coextensive with the interest in public access represented by the Herald and Ms. Giuffre's estate.  Certainly, Mr. Poncy's interest in public access has already been (and continues to be) ably represented by the Herald.  While the Court appreciates Mr. Poncy's dedication to the First Amendment and the right of public access, the Court is fully confident that the talented counsel representing the Herald and Ms. Giuffre's estate are more than capable of vindicating those rights.  Should they fail to do so, Mr. Poncy is free to seek leave to intervene in the future.

Accordingly, Mr. Poncy's motion to intervene is DENIED without prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the Government's Motion for Disclosure is GRANTED.  The Court hereby ORDERS that the Protective Order be modified to include the following paragraph:

15. Notwithstanding any other order or action of this Court, including this Court's permitting the parties to file certain documents under seal, the Government may produce any and all documents that it received from Boies Schiller & Flexner LLP, in response to a grand jury subpoena and pursuant to the April 9, 2019, order issued

in In re Grand Jury Subpoena, No. 19-MC-149 (CM) (S.D.N.Y.), in accordance with the Government's obligations under the Epstein Files Transparency Act, Pub. L. 119-38, 139 Stat. 656 (Nov. 19, 2025) (the "Act"), and subject to the Government's withholding and/or redaction obligations under Section 2(c) of the Act.

Mr. Poncy's Motion to Intervene is DENIED WITHOUT PREJUDICE.

By August 28, 2026, the parties and the Herald shall confer and submit a joint letter proposing next steps for the review of any remaining sealed documents not captured by the Act. Plaintiff shall also file a proposed order of substitution that amends the caption of this case.

The Clerk of Court shall close Dkts. 1353 and 1358.

**SO ORDERED.**

Dated: Aug 11, 2026
New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge

34